FILED

2013 Jan-09 PM 05:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

# ATTACHMENT A

**U.S. District Court**
**Southern District of Florida (Miami)**
**CIVIL DOCKET FOR CASE #: 1:13-cv-20050-XXXX**

**\*\*\* This case is in the process of being opened, please check back later for additional information.\*\*\***

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

Case No. _____

|  |  |  |
|---|---|---|
| COREY MUSSELMAN, M.D., RICK LOVE, M.D., and CHARLES SHANE, M.D., | ) ) ) | |
| Plaintiffs, | ) ) | **COMPLAINT FOR** |
| v. | ) ) | **DECLARATORY RELIEF** |
| BLUE CROSS BLUE SHIELD OF ALABAMA, PREMERA BLUE CROSS AND BLUE SHIELD OF ALASKA, ANTHEM BLUE CROSS AND BLUE SHIELD OF CONNECTICUT, BLUE CROSS AND BLUE SHIELD OF FLORIDA, BLUE CROSS AND BLUE SHIELD OF GEORGIA, HAWAII MEDICAL SERVICE ASSOCIATION D/B/A BLUE CROSS AND BLUE SHIELD OF HAWAII, HEALTH CARE SERVICE CORPORATION D/B/A/ BLUE CROSS AND BLUE SHIELD OF ILLINOIS, ANTHEM BLUE CROSS AND BLUE SHIELD OF INDIANA, INC. D/B/A/ WELLMARK/ BLUE CROSS AND BLUE SHIELD OF IOWA, BLUE CROSS AND BLUE SHIELD OF LOUISIANA, ANTHEM HEALTH PLANS OF MAINE, CAREFIRST BLUE CROSS AND BLUE SHIELD OF MARYLAND, BLUE CROSS AND BLUE SHIELD OF MASSACHUSETTS, BLUE CROSS AND BLUE SHIELD OF MICHIGAN, BLUE CROSS AND BLUE SHIELD OF MINNESOTA, BLUE CROSS AND BLUE SHIELD OF MISSISSIPPI, ANTHEM BLUE CROSS AND BLUE SHIELD OF MISSOURI, ANTHEM BLUE CROSS AND BLUE SHIELD OF NEW HAMPSHIRE, HORIZON BLUE CROSS AND BLUE SHIELD OF NEW JERSEY, BLUE CROSS AND BLUE SHIELD OF NEW MEXICO, EXCELLUS BLUECROSS BLUESHIELD OF NEW YORK, BLUE CROSS AND BLUE SHIELD OF NORTH | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |

CAROLINA, BLUE CROSS AND BLUE )
SHIELD OF OKLAHOMA, BLUE CROSS OF )
NORTHEASTERN PENNSYLVANIA – )
WILKES-BARRE, HIGHMARK, INC., )
INDEPENDENCE BLUE CROSS, TRIPLE S – )
SALUD, INC., BLUE CROSS AND BLUE )
SHIELD OF RHODE ISLAND, BLUE CROSS )
AND BLUE SHIELD OF SOUTH CAROLINA, )
WELLMARK, INC. OF SOUTH DAKOTA, )
INC. D/B/A WELLMARK BLUE CROSS AND )
BLUE SHIELD OF SOUTH DAKOTA, BLUE )
CROSS AND BLUE SHIELD OF TENNESSEE, )
BLUE CROSS AND BLUE SHIELD OF )
TEXAS, ANTHEM BLUE CROSS AND BLUE )
SHIELD OF VIRGINIA, HIGHMARK BLUE )
CROSS AND BLUE SHIELD OF WEST )
VIRGINIA, WELLPOINT, INC. AND THE )
BLUE CROSS AND BLUE SHIELD )
ASSOCIATION, )
                  **Defendants.** )
_____ )

## INTRODUCTION

1.      Corey Musselman, M.D., Rick Love, M.D., and Charles Shane, M.D. ("Plaintiffs"), bring this action against Defendants, Blue Cross and Blue Shield of Alabama, Premera Blue Cross and Blue Shield of Alaska, Anthem Blue Cross and Blue Shield of Connecticut, Blue Cross and Blue Shield of Florida, Blue Cross and Blue Shield of Georgia, Hawaii Medical Service Association d/b/a Blue Cross and Blue Shield of Hawaii, Health Care Service Corporation d/b/a/ Blue Cross and Blue Shield of Illinois, Anthem Blue Cross and Blue Shield of Indiana, Wellmark, Inc. d/b/a/ Blue Cross and Blue Shield of Iowa, Blue Cross and Blue Shield of Louisiana, Anthem Health Plans of Maine, CareFirst Blue Cross and Blue Shield of Maryland, Blue Cross and Blue Shield of Massachusetts, Blue Cross and Blue Shield of Michigan, Blue Cross and Blue Shield of Minnesota, Blue Cross and Blue Shield of Mississippi, Anthem Blue Cross and Blue Shield of Missouri, Anthem Blue Cross and Blue Shield of New

Hampshire, Horizon Blue Cross and Blue Shield of New Jersey, Blue Cross and Blue Shield of New Mexico, Excellus BlueCross BlueShield of New York, Blue Cross and Blue Shield of North Carolina, Blue Cross and Blue Shield of Oklahoma, Blue Cross of Northeastern Pennsylvania – Wilkes-Barre, Highmark, Inc., Independence Blue Cross, Triple S – Salud, Inc., Blue Cross and Blue Shield of Rhode Island, Blue Cross and Blue Shield of South Carolina, Wellmark, Inc. of South Dakota, Inc. d/b/a Wellmark Blue Cross and Blue Shield of South Dakota, Blue Cross and Blue Shield of Tennessee, Blue Cross and Blue Shield of Texas, Anthem Blue Cross and Blue Shield of Virginia, Highmark Blue Cross and Blue Shield of West Virginia, WellPoint, Inc. (collectively, "BCBS Defendants") and the Blue Cross and Blue Shield Association ("BCBSA" or the "Association"), seeking declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.

2.      In filing this action, Plaintiffs seek a declaration that the antitrust claims asserted in *Conway v. Blue Cross Blue Shield of Alabama, et al,* consolidated into 2:12-cv-01133-RDP, MDL 2406 (N.D. Ala.), which was filed in the Northern District of Alabama on behalf of a class of healthcare providers, to the extent that they are asserted on behalf of Releasing Parties, are not Released Claims as those terms are defined in the Blue Cross, Highmark, and the WellPoint Settlement Agreements, and are not subject to any injunction related to the Settlement Agreements. The Complaint filed by Conway is attached hereto as Exhibit A (hereinafter the "Alabama Blue Cross Antitrust Litigation Complaint"). Plaintiffs seek to join the Alabama Blue Cross Antitrust Litigation as named Representative Plaintiffs or as class members and such a declaration would allow them to proceed.

3.      The Alabama Blue Cross Antitrust Litigation Complaint alleges that the BCBS Defendants have violated the federal antitrust laws by explicitly agreeing not to compete with

each other and conspiring to divide the healthcare market in the United States into geographically defined regions in order to allow each BCBS plan an exclusive, competition-free slice of the healthcare market.

4.     This declaratory judgment action is ripe for decision because it presents issues that are certain to arise and because there is a substantial likelihood that Plaintiffs will be harmed by a delay in determining their rights to join the Alabama Blue Cross Antitrust Litigation. Following this Court's approval of the WellPoint, Blue Cross, and Highmark Settlement Agreements, WellPoint and other BCBS Defendants have routinely and aggressively sought to enjoin any litigation against them based on the releases contained in those Settlement Agreements.  Counsel for Plaintiffs have conferred with Counsel for the WellPoint and BCBS Defendants and have confirmed that they will contend that the claims brought in the Alabama Blue Cross Antitrust Complaint are released in the prior settlements by the members of the settlement classes.  Additionally, Counsel for WellPoint have previously argued to this Court that any member of the settlement classes was obligated to come to this Court and seek permission to file any claim that WellPoint would consider released.  While Counsel for Plaintiffs are willing to have Judge Proctor decide the release issue in MDL 2406, they are filing this action to avoid any contempt proceeding.

**PARTIES**

**Plaintiffs**

5.     Plaintiff Corey Musselman, M.D., is a physician specializing in family medicine who practices with Crescent Family Practice in Cary, North Carolina, a two physician practice. Dr. Musselman is a resident of North Carolina and is licensed to practice medicine in that state. Dr. Musselman has provided services to subscribers enrolled in plans insured or administered by

Blue Cross Defendants and has been damaged by their conduct in the manner described by the allegations in the Alabama Blue Cross Antitrust Litigation Complaint.

6.     Plaintiff Rick Love, M.D., is an otolaryngologist, residing and practicing in Alabama.  During material times, Dr. Love has provided services to subscribers enrolled in plans insured or administered by Blue Cross Defendants and has been damaged by their conduct in the manner described by the allegations in the Alabama Blue Cross Antitrust Litigation Complaint. Dr. Love was a named Plaintiff and settlement signatory in the *Love v. Blue Cross* Litigation.

7.     Plaintiff Charles B. Shane, M.D., is a gynecologist, residing and practicing in Kentucky.  During material times, Dr. Shane has provided services to subscribers enrolled in plans insured or administered by Blue Cross Defendants and has been damaged by their conduct in the manner described by the allegations in the Alabama Blue Cross Antitrust Litigation Complaint.  Dr. Shane was a named Plaintiff and settlement signatory in the *In re Managed Care Litigation* MDL.

8.     Plaintiffs have standing to bring this action because they were class representatives or members of the Settlement Class as that term was defined in the Blue Cross, Highmark, and WellPoint Settlement Agreements.  Plaintiffs did not opt out of any of these Settlement Agreements.

**<u>Defendants</u>**

9.     Defendant Blue Cross and Blue Shield of Alabama is the health insurance plan operating under the Blue Cross and Blue Shield trademarks and trade names in Alabama.   Blue Cross and Blue Shield of Alabama is by far the largest provider of healthcare benefits in Alabama, providing coverage to more than three million people.  The principal headquarters for BCBS-AL is located at 450 Riverchase Parkway East, Birmingham, Alabama.  Blue Cross and

Blue Shield of Alabama is referred to as "Blue Cross and Blue Shield of Alabama" or "BCBS-AL" in this Complaint.

10.    Defendant Premera Blue Cross of Alaska is an Alaska corporation with its corporate headquarters located at 2550 Denali Street, Suite 1404, Anchorage, AK 99503. Premera is the parent corporation of a number of subsidiaries that provide health care services to approximately 1.3 million members in various health care plans. Premera Blue Cross of Alaska, its subsidiaries, and health care plans are collectively referred to as "Blue Cross of Alaska" or "BC-AK" in this Complaint.

11.    Defendant Anthem Blue Cross and Blue Shield of Connecticut is a Connecticut corporation with its corporate headquarters located at 370 Bassett Road, North Haven, Connecticut 06473. It is the parent corporation of a number of subsidiaries that provide health care services to approximately 1.2 million enrollees in various health care plans in Connecticut. Anthem Blue Cross and Blue Shield of Connecticut, its subsidiaries and health plans are collectively referred to as "Blue Cross and Blue Shield of Connecticut" or "BCBS-CT."

12.    Defendant Blue Cross and Blue Shield of Florida is a Florida corporation with its corporate headquarters located at 4800 Deerwood Campus Parkway, Jacksonville, Florida 32246. It is the parent corporation of a number of subsidiaries that provide health care services to approximately 7 million enrollees in various health care plans in Florida. Blue Cross and Blue Shield of Florida, its subsidiaries and health care plans are collectively referred to as "Blue Cross and Blue Shield of Florida" or "BCBS-FL" in this Complaint.

13.    Defendant Blue Cross and Blue Shield of Georgia is a Georgia corporation with its corporate headquarters located at 3350 Peachtree Road, N.E., Atlanta, Georgia 30326. It is the parent corporation of a number of subsidiaries that provide health care services to approximately 2.1 million enrollees in various health care plans in Georgia. Blue Cross and Blue Shield of Georgia, its subsidiaries and health care plans are collectively referred to as "Blue Cross and Blue Shield of Georgia" or "BCBS-GA" in this Complaint.

14.     Defendant Hawaii Medical Service Association d/b/a Blue Cross and Blue Shield of Hawaii is a Hawaii corporation with its corporate headquarters located at 818 Keeaumoku Street, Honolulu, Hawaii 96814.  It is the parent corporation of a number of subsidiaries that provide health care services to approximately 676,000 members in various health care plans in Hawaii.  Hawaii Medical Service Association, its subsidiaries, and health care plans are collectively referred to as "Hawaii Medical Service Association" or "BCBS-HI" in this Complaint.

15.     Defendant Health Care Service Corp. d/b/a Blue Cross and Blue Shield of Illinois is an Illinois corporation with its corporate headquarters located at 300 East Randolph Street, Chicago, Illinois 60601.  It is the parent corporation of a number of subsidiaries that provide health care services to approximately 6.5 million members in various health care plans in Illinois.  Blue Cross and Blue Shield of Illinois, its subsidiaries, and health care plans are collectively referred to as "Blue Cross and Blue Shield of Illinois" or "BCBS-IL" in this Complaint.

16.     Defendant Anthem Blue Cross and Blue Shield of Indiana is an Indiana corporation with its corporate headquarters located at 120 Monument Circle, Indianapolis, Indiana 46204.  It is the parent corporation of a number of subsidiaries that provide health care services to enrollees in various health care plans in Indiana.  Blue Cross and Blue Shield of Indiana, its subsidiaries and health care plans are collectively referred to as "Blue Cross and Blue Shield of Indiana" or "BCBS-IN" in this Complaint.

17.     Defendant Wellmark, Inc. d/b/a Blue Cross and Blue Shield of Iowa is an Iowa corporation with its corporate headquarters located at 1331 Grand Avenue, Des Moines, Iowa 50306.  Blue Cross and Blue Shield of Iowa and its subsidiaries provide health care services to approximately 1.4 million members in Iowa.  Blue Cross Blue Shield of Iowa, its subsidiaries, and health care plans are collectively referred to as "Blue Cross and Blue Shield of Iowa' or "BCBS-IA" in this Complaint.

18.     Defendant Blue Cross and Blue Shield of Louisiana is a Louisiana corporation with its corporate headquarters located at 5525 Reitz Avenue, Baton Rouge, Louisiana 70809.  It

is the parent corporation of a number of subsidiaries that provide health care services to approximately 858,000 enrollees in various healthcare plans Louisiana. Blue Cross and Blue Shield of Louisiana, its subsidiaries and health care plans are collectively referred to as "Blue Cross and Blue Shield of Louisiana" or "BCBS-LA" in this Complaint.

19. Defendant Anthem Health Plans of Maine is a Maine corporation with its corporate headquarters located at 2 Gannett Drive, South Portland, Maine 04016. It is the parent corporation of a number of subsidiaries that provide health care services to approximately 140,000 enrollees in various health care plans in Maine. Anthem Health Plans of Maine, its subsidiaries and health care plans are collectively referred to as "Anthem Blue Cross and Blue Shield of Maine" or "BCBS-ME" in this Complaint.

20. Defendant CareFirst Blue Cross and Blue Shield of Maryland is a Maryland corporation with its corporate headquarters located at 10455 and 10453 Mill Run Circle, Owings Mill, Maryland 21117. It is the parent corporation of a number of subsidiaries that provide health care services to enrollees in various health care plans in Maryland. CareFirst Blue Cross and Blue Shield of Maryland, its subsidiaries and health care plans are collectively referred to as "Blue Cross and Blue Shield of Maryland" or "BCBS-MD" in this Complaint.

21. Defendant Blue Cross and Blue Shield of Massachusetts is a Massachusetts corporation with its corporate headquarters located at 401 Park Drive, Boston, Massachusetts 02215. It is the parent corporation of a number of subsidiaries that provide health care services to approximately 2.4 million enrollees in various health care plans in Massachusetts. Blue Cross and Blue Shield of Massachusetts, its subsidiaries and health care plans are collectively referred to as "Blue Cross and Blue Shield of Massachusetts" or "BCBS-MA" in this Complaint.

22. Defendant Blue Cross and Blue Shield of Michigan is a Michigan corporation with its corporate headquarters located at 600 E. Lafayette Blvd., Detroit, Michigan 48226. It is the parent corporation of a number of subsidiaries that provide health care services to approximately 4.8 million enrollees in various health care plans in Michigan. Blue Cross and

Blue Shield of Michigan, its subsidiaries and health care plans are collectively referred to as "Blue Cross and Blue Shield of Michigan" or "BCBS-MI" in this Complaint.

23.     Defendant Blue Cross and Blue Shield of Minnesota is a Minnesota corporation with its corporate headquarters located at 3535 Blue Cross Road, St. Paul, Minnesota 55164.  It is the parent corporation of a number of subsidiaries that provide health care services to approximately 2 million enrollees in various health care plans in Minnesota.  Blue Cross and Blue Shield of Minnesota, its subsidiaries and health care plans are collectively referred to as "Blue Cross and Blue Shield of Minnesota" or "BCBS-MN" in this Complaint.

24.     Defendant Blue Cross and Blue Shield of Mississippi is a Mississippi corporation with its corporate headquarters located at 3545 Lakeland Drive, Flowood, Mississippi 39232.  It is the parent corporation of a number of subsidiaries that provide health care services to approximately 1 million enrollees in various health care plans in Mississippi.  Blue Cross and Blue Shield of Mississippi, its subsidiaries and health care plans are collectively referred to as "Blue Cross and Blue Shield of Mississippi" or "BCBS-MS" in this Complaint.

25.     Defendant Anthem Blue Cross and Blue Shield of Missouri is a Missouri Corporation with its corporate headquarters located at 1831 Chestnut Street, St. Louis, Missouri 63103.  It is the parent corporation of a number of subsidiaries that provide health care services to approximately 2.8 million enrollees in a various health care plans in Missouri.  Anthem Blue Cross and Blue Shield of Missouri, its subsidiaries and health care plans are collectively referred to as "Blue Cross and Blue Shield of Missouri" or "BCBS-MO" in this Complaint.

26.     Defendant Anthem Blue Cross and Blue Shield of New Hampshire is a New Hampshire corporation with its corporate headquarters located at 300 Goffs Falls Road, Manchester, New Hampshire 03111.  It is the parent corporation of a number of subsidiaries that provide health care services to enrollees in various health care plans in New Hampshire.  Anthem Blue Cross and Blue Shield of New Hampshire, its subsidiaries and health care plans are collectively referred to as "Blue Cross and Blue Shield of  New Hampshire" or "BCBS-NH" in this Complaint.

27.     Defendant Horizon Blue Cross and Blue Shield of New Jersey is a New Jersey corporation with its corporate headquarters located at Three Penn Plaza East, Newark, New Jersey 07105.  It is the parent corporation of a number of subsidiaries that provide health care services to approximately 2 million enrollees in various health care plans New Jersey.  Horizon Blue Cross and Blue Shield of New Jersey, its subsidiaries and health care plans are collectively referred to as "Blue Cross and Blue Shield of New Jersey" or "BCBS-NJ" in this Complaint.

28.     Defendant Blue Cross and Blue Shield of New Mexico is a New Mexico corporation with its corporate headquarters located at 5701 Balloon Fiesta Parkway Northeast, Albuquerque, New Mexico 87113.  It is the parent corporation of a number of subsidiaries that provide health care services to approximately 236,000 enrollees in various health care plans in New Mexico.  Blue Cross and Blue Shield of New Mexico, its subsidiaries and health care plans are collectively referred to as "Blue Cross and Blue Shield of New Mexico" or "BCBS-NM" in this Complaint.

29.     Defendant Excellus BlueCross BlueShield of New York is a New York corporation with its corporate headquarters located at 333 Butternut Drive, Syracuse, New York 13214-1803.  It is the parent corporation of a number of subsidiaries that provide health care services to enrollees in various health care plans in the State of New York.  Excellus Blue Cross Blue Shield of New York, its subsidiaries and health care plans are collectively referred to as "Excellus Blue Cross and Blue Shield of New York" or "BCBS-NY-Excellus" in this Complaint.

30.     Defendant Blue Cross and Blue Shield of North Carolina is a North Carolina corporation with its corporate headquarters located at 5901 Chapel Hill Road, Durham, North Carolina 27707.  It is the parent corporation of a number of subsidiaries that provide health care services to approximately 3.6 million members in various health care plans in North Carolina.  Blue Cross and Blue Shield of North Carolina, its subsidiaries, and health care plans are collectively referred to as "Blue Cross and Blue Shield of North Carolina" or "BCBS-NC."

31.     Defendant Blue Cross and Blue Shield of Oklahoma is an Oklahoma corporation with its corporate headquarters located at 1400 South Boston, Tulsa, Oklahoma 74119.  It is the

parent corporation of a number of subsidiaries that provide health care services to approximately 2.8 million enrollees in various health care plans in Oklahoma. Blue Cross and Blue Shield of Oklahoma, its subsidiaries and health care plans are collectively referred to as "Blue Cross and Blue Shield of Oklahoma" or "BCBS-OK" in this Complaint.

32.     Defendant Blue Cross of Northeastern Pennsylvania – Wilkes-Barre is a Pennsylvania corporation with its corporate headquarters located at 19 North Main Street, Wilkes-Barre, Pennsylvania 18711.  It is the parent corporation of a number of subsidiaries that provide health care services to approximately 570,000 enrollees in various health care plans in Pennsylvania.  Blue Cross of Northeastern Pennsylvania – Wilkes-Barre, its subsidiaries and health care plans are collectively referred to as "Blue Cross of Northeastern Pennsylvania – Wilkes Barre" or "BCBS-NE PA-Wilkes Barre" in this Complaint.

33.     Defendant Highmark, Inc. is a Pennsylvania corporation with its corporate headquarters located at 1800 Center Street, Camp Hill, Pennsylvania 17011.  It is the parent corporation of a number of subsidiaries that provide health care services to approximately 1.9 million enrollees in Pennsylvania.  Highmark, Inc., its subsidiaries and health care plans are collectively referred to as "Highmark" in this Complaint.

34.     Defendant Independence Blue Cross is a Pennsylvania corporation with its corporate headquarters located at 1901 Market Street, Philadelphia, Pennsylvania 19103.  It is the parent corporation of a number of subsidiaries that provide health care services to more than 3 million enrollees in Pennsylvania.  Independence Blue Cross, its subsidiaries and health care plans are collectively referred to as "Independence Blue Cross" in this Complaint.

35.     Defendant Triple S – Salud, Inc. is a Puerto Rico corporation with its corporate headquarters located at 1441 F.D. Roosevelt Avenue, San Juan, Puerto Rico 00920.  It is the parent corporation of a number of subsidiaries that provide health care services to more than 600,000 enrollees in Puerto Rico. Triple S – Salud, Inc., its subsidiaries and health care plans are collectively referred to as "Triple-S of Puerto Rico" in this Complaint.

36.     Defendant Blue Cross and Blue Shield of Rhode Island is a Rhode Island corporation with its corporate headquarters located at 15 LaSalle Square, Providence, Rhode Island 02903.  It is the parent corporation of a number of subsidiaries that provide health care services to approximately 600,000 enrollees in various health care plans in Rhode Island.  Blue Cross and Blue Shield of Rhode Island, its subsidiaries and health care plans are collectively referred to as "Blue Cross and Blue Shield of Rhode Island" or "BCBS-RI" in this Complaint.

37.     Defendant Blue Cross and Blue Shield of South Carolina is a South Carolina corporation with its corporate headquarters located at 2501 Faraway Drive, Columbia, South Carolina 29223.  It is the parent corporation of a number of subsidiaries that provide health care services to approximately one million members in various health care plans in South Carolina. Blue Cross and Blue Shield of South Carolina, its subsidiaries, and health care plans are collectively referred to as "Blue Cross and Blue Shield of South Carolina" or "BCBS-SC."

38.     Defendant Wellmark of South Dakota, Inc. d/b/a Wellmark Blue Cross and Blue Shield of South Dakota is a South Dakota corporation with its corporate headquarters located at 1601 W. Madison, Sioux Falls, South Dakota 57104.  It is the parent corporation of a number of subsidiaries that provide health care services to approximately 250,000 enrollees in South Dakota.  Blue Cross and Blue Shield of South Dakota, its subsidiaries and health care plans are collectively referred to as "Blue Cross and Blue Shield of South Dakota" or "BCBS-SD" in this Complaint.

39.     Defendant Blue Cross and Blue Shield of Tennessee is a Tennessee corporation with its corporate headquarters located at 1 Cameron Hill Circle, Chattanooga, Tennessee 37402. It is the parent corporation of a number of subsidiaries that provide health care services to approximately 2.3 million members in various health care plans in Tennessee.  Blue Cross and Blue Shield of Tennessee, its subsidiaries, and health care plans are collectively referred to as "Blue Cross and Blue Shield of Tennessee" or "BCBS-TN."

40.     Defendant Blue Cross and Blue Shield of Texas is a Texas corporation with its corporate headquarters located at 1001 E. Lookout Drive, Richardson, Texas 75082.  It is the

parent corporation of a number of subsidiaries that provide health care services to approximately 2.9 million enrollees in various health care plans in Texas. Blue Cross and Blue Shield of Texas, its subsidiaries and health care plans are collectively referred to as "Blue Cross and Blue Shield of Texas" or "BCBS-TX" in this Complaint. BCBS-TX exercises market dominance in the state of Texas or within areas of the state.

41.     Defendant Anthem Blue Cross and Blue Shield of Virginia, Inc. is a Virginia corporation with its corporate headquarters located at 2235 Staples Mill Road, Suite 401, Richmond, Virginia 23230. It is the parent corporation of a number of subsidiaries that provide health care services to approximately 2.2 million enrollees in various health care plans in Virginia. Anthem Blue Cross and Blue Shield of Virginia, Inc., its subsidiaries and health care plans are collectively referred to as "Blue Cross and Blue Shield of Virginia" or "BCBS-VA" in this Complaint.

42.     Defendant Highmark Blue Cross and Blue Shield of West Virginia is a West Virginia corporation with its corporate headquarters located at 700 Market Square, Parkersburg, West Virginia 26101. It is the parent corporation of a number of subsidiaries that provide health care services to approximately 250,000 enrollees in various health care plans in West Virginia. Highmark Blue Cross and Blue Shield of West Virginia, its subsidiaries and health care plans are collectively referred to as "Highmark Blue Cross and Blue Shield of West Virginia" or "BCBS-WV" in this Complaint.

43.     Defendant WellPoint, Inc. ("WellPoint") is an Indiana corporation with its corporate headquarters located at 120 Monument Circle, Indianapolis, IN 46204. WellPoint, Inc. was formed in 2004 when WellPoint Health Networks, Inc. and Anthem, Inc. merged to in the words of its website "become the nation's leading health benefits company." It has 33.5 million medical members and serves 65 million individuals through all of its subsidiaries. It is the parent corporation of a number of subsidiaries that provide health care services in various health care plans in California, Colorado, Georgia, Indiana, Kentucky, Maine, Missouri, Nevada, New Hampshire, New York, Ohio, Virginia, and Wisconsin.

44.    Defendant Blue Cross Blue Shield Association ("BCBSA") is a corporation organized in the State of Illinois and headquartered at 225 N. Michigan Avenue, Chicago, Illinois 60601.  It is owned and controlled by 38 health insurance plans that operate under the Blue Cross and Blue Shield trademarks and trade names.  BCBSA was created by these plans and operates as the licensor.  Health insurance plans operating under the Blue Cross and Blue Shield trademarks and trade names provide health insurance coverage for approximately 100 million—or one in three—Americans.  BCBSA itself does not provide health services and does not contract with physicians for the provisions of services, but it operates to create consistency and cooperation among its 38 members.  It is owned and controlled by its members and is governed by a board of directors, two-thirds of which must be composed of either plan chief executive officers or plan board members.  The 38 plans fund Defendant BCBSA.

## JURISDICTION AND VENUE

45.    This action arises under the Declaratory Judgment Act, 28 U.S.C. § 2201, and is being brought for the purpose of declaring the rights and other legal relations of the parties hereto.  An actual, continuing, and substantial controversy exists between the parties because the issues presented are certain to arise and because there is a substantial likelihood that Plaintiffs would be harmed by a delay in determining their rights to join the Alabama Blue Cross Antitrust Litigation.  Following this Court's approval of these Settlement Agreements, WellPoint and other BCBS Defendants have routinely and aggressively sought to enjoin any litigation against them based on the releases contained in the Settlement Agreements.  Therefore, WellPoint and other BCBS Defendants are certain to seek to enjoin Plaintiffs from litigating the claims asserted in the Alabama Blue Cross Antitrust Litigation Complaint, alleging that such claims were

released pursuant to the terms of their respective Settlement Agreements and the Final Approval Orders of those Agreements.

46. In this Court's orders approving the Settlement Agreements, this Court retained continuing jurisdiction over the interpretation, administration, and consummation of the Settlement Agreements, and over the enforcement of the injunctions arising from the Settlement Agreements. Because this action requires interpretation of the Settlement Agreements and concerns this Court's injunctions arising from the Settlement Agreements, this Court has subject matter jurisdiction over this action.

47. Subject matter jurisdiction also arises under 28 U.S.C. § 1331, as Plaintiffs are seeking to file federal antitrust claims pursuant to 15 U.S.C. § 1, and seek a declaration whether the previous settlements' releases can or would bar federal antitrust claims.

48. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b).

49. The Court has personal jurisdiction over the Defendants, as all parties agreed in the Settlement Agreements to submit themselves to this Court's jurisdiction.

## FACTS

50. The Corrected Fifth Amended Complaint in the *Love v. Blue Cross & Blue Shield* litigation was filed on August 14, 2006 ("the *Love* Complaint"). The *Love* Complaint contained three counts; two counts related to RICO and one count was for declaratory and injunctive relief. The *Love* Complaint did not contain any counts or request any relief relating to violations of the Sherman Act, which is the subject of the Alabama Blue Cross Antitrust Litigation Complaint.

51. The allegations in the *Love* Complaint did not address either the illegal territorial restrictions or the restrictions limiting competition set forth in the BCBSA License Agreements and associated governing documents, which are the subject of the allegations in the Alabama

Blue Cross Antitrust Litigation Complaint. These issues were not litigated or otherwise addressed in the *Love* litigation.

52.     In 2007, a settlement agreement was executed in *Love v. Blue Cross & Blue Shield* between a number of Blue Cross entities, the Blue Cross Blue Shield Association, the class representatives and certain Signatory Medical Societies (the "Blue Cross Settlement Agreement").

53.     Section 7 of the Blue Cross Settlement Agreement required the settling Blue Plans to make significant changes to their business practices to address the issues raised by the Class in the *Love* Complaint. For example, the Blue Cross Settlement Agreement required the settling Blue Plans to provide advance notification of material adverse changes, to provide physicians with access to their fee schedules, and to use a clinically based definition of medical necessity. The Blue Cross Settlement Agreement did not address in any way the issues raised in the Alabama Blue Cross Antitrust Litigation Complaint and it did not require any changes to the BCBSA governing documents or to the way the settling Blue Plans interacted with each other or with BCBSA.

54.     Pursuant to the Blue Cross Settlement Agreement, BCBSA and the settling Blue Plans received a release from the Signatory Medical Societies and all Class Members who did not opt out of the Settlement that was limited in the following manner:

>       Upon the Effective Date, the "Released Parties" … shall be released … only to the extent claims are derived by contract or operation of law from the claims of Class Members, (collectively, the "Releasing Parties") from any and all causes of action, judgments, liens, indebtedness, costs, damages, obligations, attorneys' fees, losses, claims, liabilities and demands of whatever kind, source or character whether arising under any federal or state law, which (consistent with the Parties' understanding of the settlements in <u>Shane</u>) includes, but is not limited to, the Racketeer Influenced and Corrupt Organizations Act, antitrust and other statutory and common law claims, intentional or non-intentional, (each a "Claim"),

arising on or before the Effective Date, that are, were or could have been asserted against any of the Released Parties by reason of, arising out of, or in any way related to any of the facts, acts, events, transactions, occurrences, courses of conduct, business practices, representations, omissions, circumstances or other matters referenced in the Action, or addressed in this Agreement, whether any such Claim was or could have been asserted by any Releasing Party on its own behalf or on behalf of other Persons, or to the business practices that are the subject of § 7. This includes, without limitation and as to Released Parties only, any aspect of any fee for service claim submitted by any Class Member to a Blue Plan, and any claims of any Class Member related to or based upon any Capitation agreement between a Blue Plan and any Class Member or other Person or entity, or the delay, nonpayment or amount of any Capitation payments by a Blue Plan, and any allegation that any Blue Party has conspired with, aided and abetted, or otherwise acted in concert with other managed care organizations, other health insurance companies, Delegated Entities and/or other third parties with regard to any of the facts, acts, events, transactions, occurrences, courses of conduct, business practices, representations, omissions, circumstances or other matters related to the Action, or with regard to any Blue Party's liability for any other demands for payment submitted by any Class Member to such other managed care organizations, health insurance companies, Delegated Entities and/or other third parties.

Settlement Agreement § 13.1(a).

55.     "Effective Date" was defined in the following manner in the Blue Cross

Settlement Agreement:

If the Final Order and Judgment is entered by the Court and the time for appeal from all of such orders and judgment has elapsed (including without limitation any extension of time for the filing of any appeal that may result by operation of law or order of the Court) with no notice of appeal having been filed, the "Effective Date" shall be the next business day after the last date on which notice of appeal could have been timely filed. If the Final Order and Judgment is entered and an appeal is filed as to any of them, the "Effective Date" shall be the next business day after the Final Order and Judgment is affirmed, all appeals are dismissed, and no further appeal to, or discretionary review in, any court remains.

Settlement Agreement § 14.4.

56.     The Court entered a final approval order in the Blue Cross Settlement on April 20,

2008.

57.     The Effective Date of the Blue Cross Settlement is June 16, 2009.

58.     The Blue Cross Settlement Agreement terminated by its terms on May 31, 2011.

59.     On October 19, 2007, a separate settlement was executed in *Love v. Blue Cross and Blue Shield* between Highmark, Inc., Highmark West Virginia, Inc. d/b/a Mountain State Blue Cross and Blue Shield, other of their subsidiaries, the class representatives and certain Signatory Medical Societies (the "Highmark Settlement Agreement").

60.     Section 7 of the Highmark Settlement Agreement required the settling Highmark Blue Plans to make significant changes to their business practices to address the issues raised by the Class in the *Love* Complaint.  For example, the Highmark Settlement Agreement required the settling Highmark Blue Plans to provide advance notification of material adverse changes, to provide physicians with access to their fee schedules, and to use a clinically based definition of medical necessity.  The Highmark Settlement Agreement did not address in any way the issues raised in the Alabama Blue Cross Antitrust Litigation Complaint and it did not require any changes to the BCBSA governing documents or to the way the settling Highmark Blue Plans interacted with each other or with BCBSA.

61.     Pursuant to the Highmark Settlement Agreement, the settling Highmark Blue Plans received a release from the Signatory Medical Societies and all Class Members who did not opt out of the Settlement that was limited in the following manner:

> Upon the Effective Date, the "Released Parties,"…shall be released and forever discharged…from any and all causes of action, judgments, liens, indebtedness, costs, damages, obligations, attorneys' fees, losses claims, liabilities and demands of whatever kind, source or character whether arising under any federal or state  law, which (consistent with the Parties' understanding of the settlements in Shane) includes, but is not limited to, the Racketeering Influenced and Corrupt Organizations Act, antitrust and other statutory and common law claims, intentional or non-intentional, (each a "Claim"), arising on or before the Effective Date, that are, were or could have been asserted against any of the Released Parties by reason of,

arising out of, or in any way related to any of the facts, acts, events, transactions, other matters referenced in the Action, or addressed in this Agreement, whether any such Claim was or could have been asserted by any Releasing Party on its own behalf or on behalf of other Persons, or to the business practices that are the subject of § 7. This includes, without limitation and as to Released Parties only, any aspect of any fee for service claim submitted by any Class Member to a Blue Plan, and any claims of any Class Member or other Person or entity, or the delay, nonpayment or amount of any Capitation payments by a Blue Plan, and any allegation that any Blue Plan has conspired with, aided and abetted, or otherwise acted in concert with other managed care organizations, other health insurance companies, Delegated Entities and/or other third parties with regard to any of the facts, acts, events transactions, occurrences, courses of conduct, business practices, representations, omissions, circumstances or other matters related to the Action, or with regard to any Blue Plan's liability for any other demands for payment submitted by any Class Member to such other managed care organizations, health insurance companies, Delegated Entities and/or other third parties.

Settlement Agreement § 13.1

62.    "Effective Date" was defined in the following manner in the Highmark

Settlement Agreement:

If the Final Order and Judgment is entered by the Court and the time for appeal from all of such orders and judgment has elapsed (including without limitation any extension of time for the filing of any appeal that may result by operation of law or order of the Court) with no notice of appeal having been filed, the "Effective Date" shall be the next business day after the last date on which notice of appeal could have been timely filed. If the Final Order and Judgment is entered and an appeal is filed as to any of them, the "Effective Date" shall be the next business day after the Final Order and Judgment is affirmed, all appeals are dismissed, and no further appeal to, or discretionary review in, any court remains.

Settlement Agreement § 14.4.

63.    The Court entered a final approval order in the Highmark Settlement on March 7,

2008.

64.    The Effective Date of the Highmark Settlement was October 3, 2008.

65.    The Highmark Settlement terminated by its terms on October 23, 2011.

66.     On September 1, 2004, an Amended Class Action Complaint was filed in MDL 1334 against several for-profit health plans, including WellPoint Health Networks, Inc. and Anthem, Inc. (the "MDL Complaint").  WellPoint Health Networks, Inc. later merged with Anthem, Inc. to form the company now known as WellPoint, Inc.

67.     The MDL Complaint contained counts relating to RICO, breach of contract, unjust enrichment, breach of state prompt pay laws, breach of certain state deceptive trade practices laws, and for declaratory and injunctive relief.  The MDL Complaint did not contain any counts or request any relief relating to violations of the Sherman Act, which is the subject of the Alabama Blue Cross Antitrust Litigation Complaint.

68.     The allegations in the MDL Complaint did not address either the illegal territorial restrictions or the restrictions limiting competition set forth in the BCBSA License Agreements and associated governing documents, which are the subject of the allegations in the Alabama Blue Cross Antitrust Litigation Complaint.  These issues were not litigated or otherwise addressed in the MDL litigation.

69.     In July 2005, a Settlement Agreement was executed in MDL 1334 between WellPoint, the class representatives, and certain Signatory Medical Societies (the "WellPoint Settlement Agreement").

70.     Section 7 of the WellPoint Settlement Agreement required WellPoint to make significant changes to its business practices to address the issues raised by the Class in the MDL Complaint.  For example, the WellPoint Settlement Agreement required it to provide advance notification of material adverse changes, to provide physicians with access to their fee schedules, and to use a clinically based definition of medical necessity.  The WellPoint Settlement Agreement did not address in any way the issues raised in the Alabama Blue Cross Antitrust

Litigation Complaint and it did not require any changes to the way the WellPoint Blue Plans

interacted with BCBSA or with any non-WellPoint Blue Plan.

71.     Pursuant to the Settlement Agreement, WellPoint received a release from the

Signatory Medical Societies and all Class Members who did not opt out of the Settlement that

was limited in the following manner:

> but only to the extent such Claims are derived by contract or operation of
> law from the Claims of Class Members…from any and all causes of
> action, judgments, liens, indebtedness, costs, damages, obligations,
> attorneys' fees, losses, claims, liabilities, and demands of whatever kind or
> character…, arising on or before the Effective Date, that are, were, or
> could have been asserted against any of the Released Parties by reason of,
> arising out of, or in any way related to any of the facts, acts, events,
> transactions, occurrences, courses of conduct, representations, omissions,
> circumstances or other matters referenced in the Actions, whether any
> such Claim was or could have been asserted by any Releasing Party on its
> own behalf or on behalf of other persons, or to the business practices that
> are the subject of § 7.

72.     "Effective Date" was defined in the following manner in the WellPoint

Settlement Agreement:

> If the Final Order and Judgment is entered by the Court and the time for
> appeal from all of such orders and judgment has elapsed…with notice of
> appeal having been filed, the "Effective Date" shall be the next business
> day after the last date on which notice of appeal could have been timely
> filed.  If the Final Order and Judgment is entered and an appeal is filed as
> to any of them, the "Effective Date" shall be the next business day after
> the Final Order and Judgment, is affirmed, all appeals are dismissed, and
> no further appeal to, or discretionary review in, any Court remains.

73.     The Court entered a final approval order in the WellPoint Settlement in December

2005 and an amended order on January 3, 2006.

74.     The Effective Date of the WellPoint Settlement was September 28, 2006.

75.     The WellPoint Settlement Agreement terminated by its terms in on July 15, 2009.

76.      The Plaintiffs in this Action were Class Members, and, in the case of Drs. Love and Shane, were signatories with respect to both the *Love* and the MDL litigation and did not opt out of the Settlement Agreements.

77.      On July 24, 2012, the Alabama Blue Cross Antitrust Litigation Complaint was filed as a class action against Blue Cross Blue Shield of Alabama, WellPoint, and other Blue Cross Defendants, asserting claims under Section 1 of the Sherman Act for antitrust violations.

78.      The Alabama Blue Cross Antitrust Litigation Complaint alleges that the BCBS Defendants have violated the federal antitrust laws by explicitly agreeing not to compete with each other.   The Complaint further alleges that Defendants have conspired to divide the healthcare market in the United States into geographically defined regions in order to allow each BCBS plan an exclusive, competition-free slice of the healthcare market. These antitrust issues were not litigated or resolved as part of the *Love* or MDL cases or the Blue Cross, WellPoint, or Highmark Settlements in the Southern District of Florida.

79.      The Plaintiffs in the Alabama Blue Cross Antitrust Litigation assert claims arising exclusively after the Effective Dates of the Blue Cross, Highmark, and  WellPoint Settlement Agreements and include allegations solely detailing post-Effective Date overt acts committed with the purpose of denying benefits to insureds.

80.      The MDL Panel has assigned all litigation involving claims of territorial restrictions by Blue Cross entities to Judge R. David Proctor in the United States District Court for the Northern District of Alabama.  *In re Blue Cross Blue Shield Antitrust Litig.*, MDL No. 2406 (J.P.M.L. Dec. 12, 2012) (D.E. 128).  Judge Proctor has appointed a Special Master and is in the process of selecting lead counsel and developing case management procedures.  Discovery in the case is expected to begin in earnest in January, 2013.  Any delay in a determination that

22

the claims asserted in the Alabama Blue Cross Antitrust Litigation are not Released Claims under the Blue Cross, Highmark, and WellPoint Settlement Agreements is likely to hinder Plaintiffs from joining that case and having their rights fully and adequately addressed. Moreover, any delay in such a determination could squander judicial resources to the extent discovery, motions and other proceedings conducted prior to the inclusion of physicians in the Alabama Blue Cross Antitrust Litigation would need to be replicated if they are subsequently permitted to join. In addition, without such a determination, there is a substantial likelihood that Plaintiffs will suffer harm in the future by being subjected to contempt proceedings.

81.     Plaintiffs file this Action in order to finally resolve all issues and uncertainty regarding their ability to pursue their claims in the Alabama Blue Cross Antitrust Litigation, and to avoid being found in contempt of any order this Court may enter. In light of WellPoint's recent attempts to enjoin physicians from pursuing claims against settling Blue Plans in the Blue Cross Settlement Agreement, Plaintiffs felt compelled to bring this Complaint for Declaratory Relief.

82.     The claims asserted in the Alabama Blue Cross Antitrust Litigation are not Released Claims because they did not arise and could not have arisen prior to the Effective Date of the Blue Cross, Highmark or WellPoint Settlement Agreements.

83.     Further, the claims in the Alabama Blue Cross Antitrust Litigation are not released because these claims did not arise "out of, or [are] in any way related to any of the facts, acts, events, transactions, occurrences, courses of conduct, business practices, representations, omissions, circumstances or other matters referenced in the Action, or addressed in this Agreement." The Plaintiffs in the Alabama Blue Cross Antitrust Litigation, and the Classes they

represent, will not assert any claim for services that were provided prior to the Effective Date of any of the three settlements against the parties to those settlements.

84.     The Plaintiffs in the Alabama Blue Cross Antitrust Litigation brought their claims on behalf of the following class:

> All healthcare providers in the United States of America who provided services to any patient who was insured by or who was a member or beneficiary of any plan administered by a BCBS Defendant within four years prior to the date of the filing of this action.

85.     As the Alabama Blue Cross Antitrust Litigation Complaint was filed on July 24, 2012, Plaintiffs in the Alabama Blue Cross Antitrust Litigation assert claims only for services that were provided by providers on or after July 24, 2008.  Thus, no claims are made for services rendered prior to the Effective Date of the WellPoint, Highmark, or Blue Cross Settlement Agreements.

86.     A physician who was not injured until after the Effective Date of these Settlement Agreements did not have a claim that could have been brought as set forth in any of the Settlement Agreements, and thus such claims were not released under the express terms of the Settlement Agreements. Further, the subject matter of the Alabama Blue Cross Antitrust Litigation is expressly outside the scope of claims released in the Blue Cross, Highmark or WellPoint Settlement Agreements.

87.     A judgment declaring the rights of the parties pursuant to the Act will result in a final order and accordingly will result in a definitive resolution of all pending matters, allowing the parties to proceed in a timely fashion based on a final, legally binding court order.

## COUNT I
## DECLARATORY JUDGMENT

88.     Plaintiffs repeat and incorporate paragraphs 1-87 as though set forth herein.

89.     There is a real and actual controversy between the parties regarding whether the claims asserted in the Alabama Blue Cross Antitrust Litigation are Released Claims as the term is defined in the Blue Cross, Highmark, and  WellPoint Settlement Agreements.

90.     Because the claims asserted in the Alabama Blue Cross Antiturst Litigation accrued after the Effective Date and are not "by reason of, arising out of, or in any way related to any of the facts, acts, events, transactions, occurrences, courses of conduct, business practices, representations, omissions, circumstances or other matters referenced" in the *Love* or MDL actions or the Settlement Agreements and not are covered by the Settlement Agreements or the accompanying injunctions, the claims asserted in the Alabama Blue Cross Antitrust Litigation are not Released Claims, as that term is defined in the Settlement Agreements.

91.     In light of the parties' conflicting positions, the certitude that the issues asserted herein will have to be addressed, and the substantial likelihood harm that will result from any delay in a final determination of these issues, an actual and justiciable controversy exists over the parties' respective rights and obligations.

92.     A declaratory judgment in this case would serve a useful purpose in clarifying and finally settling the respective legal rights and obligations of the parties and in mitigating unnecessary waste of judicial resources.

93.     Accordingly, the Plaintiffs ask that this Court determine and adjudge that the claims asserted by the Provider Plaintiffs' claims in the Alabama Blue Cross Antitrust Litigation are not Released Claims under the Blue Cross, Highmark or WellPoint Settlement Agreements. Alternatively, the Plaintiffs request that this Court enter an order deferring the issues raised herein to be decided by Judge Proctor.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment in their favor against the Defendants for the following relief:

(1)      An Order of Judgment that the claims asserted by Plaintiffs, and the Settlement Classes, in the Alabama Blue Cross Antitrust Litigation, to the extent they are asserted on behalf of "Releasing Parties," were not Released Claims pursuant to the terms of the Blue Cross, Highmark or WellPoint Settlement Agreements; and

(2)      Such other relief as the Court may deem just and proper.

Dated: January 7, 2013                       Respectfully submitted,

/s/ Aaron S. Podhurst
Aaron S. Podhurst
Florida Bar No. 63606
Peter Prieto
Florida Bar No. 501492
John Gravante III
Florida Bar No. 0617113
Matthew P. Weinshall
Florida Bar No. 84783
PODHURST ORSECK, P.A.
25 West Flagler Street, Suite 800
Miami, Florida 33130
Tel.: (305) 358-2800
Fax: (305) 358-2382
Email: apodhurst@podhurst.com
       pprieto@podhurst.com
       jgravante@podhurst.com
       mweinshall@podhurst.com

Harley S. Tropin
Florida Bar No. 241253
Gail A. McQuilkin
Florida Bar no. 969338
KOZYAK TROPIN & THROCKMORTON, P.A.
2525 Ponce de Leon Blvd., 9th Flr.
Tel.: (305) 372-1800
Fax: (305) 372-3508
Email: hst@kttlaw.com
       gam@kttlaw.com