**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| IN RE:  BLUE CROSS BLUE SHIELD | ) | |
| ANTITRUST LITIGATION | ) | **Master File No. 2:13-CV-20000** |
| | ) | |
| (MDL No. 2406) | ) | This document relates to all cases. |
| _____ | ) | |

**APPLICATION OF DAVID BOIES AND WILLIAM ISAACSON OF
BOIES, SCHILLER & FLEXNER LLP TO SERVE AS INTERIM LEAD COUNSEL
FOR THE SUBSCRIBER TRACK ACTIONS**

Pursuant to the Order filed February 21, 2013 (Dkt. # 13) and Fed. R. Civ. P. 23(g), David Boies and William Isaacson of Boies, Schiller & Flexner LLP respectfully apply for the position of Interim Lead Class Counsel for the subscriber track actions.  In their proposed leadership roles, counsel would also work cooperatively with counsel from other firms that have filed federal antitrust complaints on behalf of insureds in this MDL, and would also work cooperatively and coordinate with counsel for the provider plaintiffs.

**I.      Rule 23(g)(1)(A) Standards for Appointing Class Counsel**

Rule 23(g)(1)(A)(i)-(iv) requires that courts must consider the following four factors in appointing class counsel (or interim class counsel, *see* Rule 23(g)(2)):

a.      "the work counsel has done in identifying or investigating potential claims in the action";

b.      "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action";

c.      "counsel's knowledge of the applicable law; and"

d.      "the resources that counsel will commit to representing the class."

The leadership structure proposed herein readily satisfies these standards.

**A.  The Work Counsel Have Performed in Identifying or Investigating the Claims in the Action**

The Boies firm, including David Boies and William Isaacson, originated the legal theories and performed the initial factual investigation in support of this case. They, along with Hausfeld LLP and Zuckerman Spaeder LLP, filed the first complaint against a Blue Cross entity, alleging illegal horizontal conduct in the Western District of North Carolina, on February 7, 2012. Complaint (Dkt. 1), *Cerven v. Blue Cross and Blue Shield of North Carolina et al*, No. 5:12-cv-17 (W.D.N.C. Feb. 7, 2012). The North Carolina case does involve different insurance laws, different markets, different classes, and other different analyses than the cases in this MDL originating from other states, but there is no question that the illegal conduct alleged here was uncovered by the Boies firm in the North Carolina action.

The North Carolina case preceded the filing of the other actions in this MDL, including the Alabama actions, by several months. Motions to dismiss addressing defenses anticipated in this litigation were fully briefed in the North Carolina case, but stayed due to the MDL.

That initial complaint in North Carolina was the product of extensive factual and economic research, investigation, internal dialogue, and strategic planning by the Boies firm and its co-counsel. A comparison of that complaint with the later-filed complaints in this litigation will show their reliance on facts and legal theories and strategies first developed in the North Carolina complaint by the Boies firm.

Following filing of the North Carolina complaint, and before filing of the first complaint in Alabama, the Boies Firm and co-counsel Hausfeld LLP and Zuckerman Spaeder LLP began to work with the firms of Pittman, Dutton & Hellums, P.C. and Provosty & Gankendorff, L.L.C. to prepare an action for filing in Alabama. The work of these firms was initially reflected in the *One Stop* complaint filed by the Boies firm and its co-counsel in this Court. Complaint (Dkt. 1),

*One Stop Environmental, LLC et al v. Blue Cross and Blue Shield of Alabama et al*, No. 2:12-cv-01910-RDP (N.D. Al. May 17, 2012). The Boies firm and its co-counsel have since filed three other complaints that are part of this MDL. Complaint (Dkt. 1), *Bajalieh et al v. Blue Cross and Blue Shield of Alabama et al*, 2:12-cv-02185 (N.D. Al. June 15, 2012); Complaint (Dkt. 1), *Galactic Funk Touring, Inc. et al v. Blue Cross and Blue Shield of Louisiana et al*, 2:12-cv-00709 (M.D. La. Nov. 13, 2012); and Complaint (Dkt. 1), *Shred 360 LLC v. Blue Cross and Blue Shield of South Carolina et al*, 3:12-cv-03519 (D.S.C. Dec. 13, 2012).

It is important in considering the appointment of lead counsel in this action for the Court to compare the actual complaints filed in this action by any respective proposed leadership. Counsel respectfully submits that the complaints filed in the Boies firm and its co-counsel's actions evidence the substantial experience and work of undersigned counsel on the issues in this case. In addition, when compared to other complaints, the *Cerven*, *One Stop*, *Bajalieh*, *Galactic Funk Touring*, and *Shred 360* complaints evidence the unique work of undersigned counsel that has been copied and cloned by other counsel without significant or material addition.

### B. Counsels' Experience in Handling Class Actions, Other Complex Litigation, and the Types of Claims Asserted in the Action

David Boies and William Isaacson's experience in handling complex class actions – and especially antitrust class actions – is extensive.

The Boies firm has been noted for investigating, uncovering, and filing suits disclosing the existence of cartels prior to any government action. *E.g.*, *As China's Trade Clout Grows, So Do Price-Fixing Accusations*, WALL ST. J., Feb. 10, 2006, at A1. The complaint in this case is an example of similar investigative work. In *In re Vitamins Antitrust Litigation*, the Court wrote at the conclusion of the case:

it is clear that Boies Schiller was the driving force behind the initial investigation of the vitamins conspiracy. It was Boies Schiller that led a group of firms to research the industry and uncover the illegal actions of vitamins manufacturers across the globe. It was also Boies Schiller that shared early information with the Department of Justice, enabling the criminal investigation to begin. Once the major defendants pled guilty and agreed to pay record criminal fines, Boies Schiller maintained its prominent role in the litigation and helped lead the settlement process with Boies and Schiller helping to lead the discussions and Bill Isaacson (a member of Boies Schiller) drafting and editing much of the settlement document.

*In re Vitamins Antitrust Litigation*, 398 F. Supp. 2d 209, 226 (D.D.C. 2005).

Further background on the Boies firm can be found in its firm resume (attached as Ex. A).

**Mr. Boies**: Mr. Boies, who has been named Litigator of the Year by the *American Lawyer*, Lawyer of the Year by the *National Law Journal*, Antitrust Lawyer of the Year by the American Bar Association, and runner-up Person of the Year by *Time Magazine*, among other honors, has extensive experience with antitrust class actions. He is a founding partner of the Boies firm. Mr. Boies has also been widely acclaimed for his representation of the United States in *U.S. v. Microsoft*, his representation of presidential candidate and former Vice President Al Gore during the contested 2000 Presidential election, and his representation, with Ted Olson of Gibson, Dunn & Crutcher, of plaintiffs in the landmark suit *Hollingsworth v. Brown*, in which the California Supreme Court struck down California's Proposition 8 as unconstitutional for its discrimination on the basis of sexual orientation, a ruling upheld by the Ninth Circuit and currently on appeal to the Supreme Court. More generally, his record representing major companies prosecuting claims for antitrust violations on their individual behalf includes winning a record $4.05 billion in settlements on behalf of American Express in its antitrust suit against Visa, MasterCard, and several large banks. In *In re Auction Houses Antitrust Litigation*, Mr. Boies achieved a $512

million settlement described by an interim plaintiffs' counsel as "the most outstanding result I have ever heard of in the history of the antitrust laws."

**Mr. Isaacson**: From only 2012 to date, private antitrust cases alleging illegal horizontal conduct, led by Mr. Isaacson, have secured more than $200 million in verdicts and settlements.

As lead counsel or co-lead counsel, Mr. Isaacson has tried several notable antitrust class actions to verdict and as lead counsel or co-lead counsel negotiated a number of antitrust class action settlements. Notably, each of these trials involved defendants whom the government had not prosecuted and who maintained that they were not involved in the subject conspiracies.

For example, in *In re Vitamin C Antitrust Litigation*, this month, Isaacson and the Boies firm obtained a verdict of $162 million in damages (in addition to settlements of over $32 million) in the first U.S. antitrust case against Chinese companies. The defendants, vitamin manufacturers, argued that the Chinese government had forced them to fix prices—an argument the jury rejected. *See, e.g.*, Brent Kendall and Chad Bray, *Chinese Vitamin-C Suppliers Found Liable for Price-Fixing*, WALL ST. J., Mar. 15, 2013, at B1.

In *In re Vitamins Antitrust Litigation*, Isaacson, together with Boies and Michael Hausfeld of Hausfeld LLP, took four non-settling defendants to trial in 2003 before Chief Judge Hogan in the District of Columbia and won a jury verdict of $148.5 million after trebling.

In *In re Scrap Metal Antitrust Litigation,* the Honorable Katherine O'Malley appointed the Boies firm and William Isaacson to act as sole lead counsel and to administer an executive committee of other firms in the case. As lead counsel, Isaacson litigated the issues related to parallel criminal and civil litigation, *In re Scrap Metal Antitrust Litigation,* 2002 WL 31988168 (N.D. Ohio 2002); worked cooperatively with the Cleveland Office of the Antitrust Division; obtained partial settlements totaling more than $10 million; obtained class certification over the

opposition of non-settling defendants, a decision affirmed on appeal in a leading Sixth Circuit case, *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517 (6th Cir. 2008), *cert. denied*, 129 S.Ct. 1673 (2009); and overcame pretrial *Daubert* motions, a decision also affirmed on appeal, *Id.*

As lead counsel in *In re Scrap Metal Antitrust Litig.*, Isaacson and the Boies firm obtained a jury verdict in 2006 for $11.5 million, which, after trebling and judgment reduction for other settlements, was entered as a judgment of $23 million. In a lengthy opinion, the district court denied defendants' post-trial motions and, among other things, held that Isaacson's examination had revealed "conduct tantamount to suborning perjury by a key witness." *In re Scrap Metal Antitrust Litig.*, 2006 WL 2850453, at *3 (N.D. Ohio, Sept. 30, 2006). As noted above, the jury verdict was affirmed on appeal by the Sixth Circuit.

As lead counsel or co-lead counsel, Mr. Isaacson has participated in such notable antitrust class action settlements as *In re Vitamins Antitrust Litigation*, MDL No. 1285 (D.D.C.) (initial settlement of $1.1 billion described by the Court as "unprecedented;" *In re Vitamins Antitrust Litig.,* 2000 U.S. Dist. LEXIS 8931, at *20-21 (D.D.C. 2000) (followed by other settlements); *In re Municipal Derivatives Antitrust Litigation*, 08-cv-02516 (S.D.N.Y.) (2012 settlements of over $ 75 million); *In re Vitamin C Antitrust Litigation*, 1:06-MD-01738 (E.D.N.Y.) (in addition to verdict, settlements totaling more than $32 million); *In re Polyurethane Foam Antitrust Litigation*, 1:10-MD-02196-JZ (N.D. Ohio) (first settlement of $14 million); and *Molecular Diagnostics Labs. v. Hoffman-La Roche Inc.*, No. Civ. A. 04-01649 (D.D.C.) ($33 million settlement) (co-lead counsel).

## C.      Counsels' Knowledge of the Applicable Law

The proposed Interim Lead Counsel could not have obtained the successes mentioned above in complex financial and antitrust class action litigation without a comprehensive

knowledge of class action procedures, the continuing development of antitrust law, management of multiple law firms, and consolidated cases. The results speak for themselves.

### D. The Resources that Counsel Will Commit to Representing the Class

Similarly, Mr. Boies and Mr. Isaacson could not have obtained for their clients and class members the benefits they have obtained in the matters described above and in their firm resume without the resources necessary to fight toe-to-toe with well-heeled defendants. Moreover, they are experienced in managing the work and expenses of multiple participating law firms.

## II. Rule 23(g)(1)(B) Standards for Appointment of Interim Class Counsel

In addition to considering the mandatory requirements of Rule 23(g)(1)(A), the Court also "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). The undersigned applicants suggest that the following additional factors lend further support to their appointment.

### A. Local Knowledge & Experience

This case is premised upon the market for small group and individual health insurance policies sold in each involved state. Although Rule 23(g)(1)(A)(iii) emphasizes the factor of counsels' knowledge of the <u>law</u>, equally important is counsels' knowledge of the background, history, and facts upon which their legal claims are based. As noted above, the Boies firm conducted the initial legwork of investigating the facts, digging up the statistics, researching local insurance and other legal requirements, conducting sophisticated economic analyses, and otherwise conducting the factual background research necessary to support the claims in this and related litigation.

Moreover, Mr. Boies and Mr. Isaacson are willing and able to work closely with local counsel in all states, just as they have worked closely with Birmingham area counsel Pittman Dutton & Hellums and Guin, Stokes & Evans in developing the *One Stop* and *Bajalieh* actions.

**B.      Ability and Willingness to Work With Others**

Both Mr. Boies and Mr. Isaacson have served as Lead Counsel in other actions, managing the teamwork necessary to present a "united front" against sophisticated, well financed defendants and their large firm counsel.  Each has likewise been praised by courts supervising their efforts for their ability to coordinate plaintiff counsels' work.

Mr. Boies and Mr. Isaacson pledge their best efforts to this Court to manage this litigation in a professional manner.  That includes a pledge to involve interested plaintiff firms in an efficient and cost-effective manner that best benefits the putative class, and a pledge to develop and maintain an appropriate litigation fund and to collect and maintain time records from all counsel who might hope to be paid any court-awarded fee in the event of a favorable resolution of the claims.

**C.      Coordination With Provider Class Counsel**

Mr. Boies and Mr. Isaacson have favorable working relationships with the firms who filed the *Conway* action and other related class actions on behalf of providers.  Accordingly, they are confident that they can coordinate with provider class counsel in an efficient and professional manner.

**D.      Class Action Trial Experience**

The singular experience of Mr. Boies, Mr. Isaacson, and the Boies firm in the trial of antitrust class actions is noted above.

**E.      Involvement of Additional Counsel**

Not all counsel who have filed the related cases have agreed to support this application. It is anticipated that some will support counsel from the Cohen Milstein firm, and perhaps others, as Lead or Co-Lead Counsel. The undersigned counsel recognize that there certainly are capable attorneys among the other firms in these cases who have much to contribute to the case. While undersigned counsel have had cordial and professional discussions with other firms, we remain of the opinion that the leadership proposed here provides the most effective means of pursuing the claims asserted in these cases – claims that, as noted above, were first developed and filed by the Boies firm. Undersigned counsel are not aware of any other firm's contention that one or more of the undersigned should not serve as a Lead Counsel.

## III. Disclosure of Any and All Agreements Among the Applicants and Any Other Counsel in These Consolidated Cases

Other than their agreement to submit this application and to conduct the litigation in the manner set forth herein, there are no fee division, work assignment, or other agreements among the applicants or their co-counsel, or with any other counsel in the cases that make up this MDL.

For the foregoing reasons, and having fulfilled the requirements of Rule 23(g) of the Federal Rules of Civil Procedure, David Boies and William Isaacson jointly propose their appointment as Interim Lead Counsel.

*/s/ William Isaacson*_____
William A. Isaacson
David Boies
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue, NW
Washington, D.C. 20015
Telephone: 202.237.2727
Facsimile: 202.237.6131
www.bsfllp.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on March 21, 2013, I filed the foregoing document via the CM/ECF system, which will automatically serve and send email notification of such filing to all registered attorneys of record.

*/s/ Kathleen Kiernan*
Kathleen Kiernan