FILED
2013 Sep-30  PM 04:22
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| IN RE:  BLUE CROSS BLUE SHIELD ANTITRUST LITIGATION (MDL No. 2406) | ) ) ) ) ) ) | **Master File No. 2:13-CV-20000-RDP** <br><br> This document relates to all cases. |

## DEFENDANT BLUE CROSS BLUE SHIELD OF MICHIGAN'S
## MOTION TO DISMISS

COMES NOW Defendant Blue Cross Blue Shield of Michigan (hereinafter "BCBSM"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and respectfully moves this Court to dismiss with prejudice Provider and Subscriber Plaintiffs' claims based on any rates charged to subscribers by BCBSM or reimbursements paid to providers by BCBSM for failure to state a claim upon which relief can be granted. In support thereof, BCBSM relies on the Memorandum of Law filed simultaneously herewith and the Memorandum of Law filed in support of Defendants' Joint Motion to Dismiss.

Respectfully submitted,

/s/ Andrew P. Campbell_____
Andrew P. Campbell (CAM006)
LEITMAN, SIEGAL, PAYNE & CAMPBELL PC
420 20th Street North, Suite 200
Birmingham, Alabama 35203
Telephone: (205) 986-5040
Fax: (205) 986-5080
acampbell@lspclaw.com

September 30, 2013

*Counsel for Defendant Blue Cross Blue Shield of Michigan*

## <u>CERTIFICATE OF SERVICE</u>

  I hereby certify that on September 30, 2013 the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record in the above listed matter.


          /s/ Andrew P. Campbell_____

          Andrew P. Campbell

          September 30, 2013

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| ) | |
| IN RE:  BLUE CROSS BLUE SHIELD ) | **Master File No. 2:13-CV-20000-RDP** |
| ANTITRUST LITIGATION ) | |
| (MDL No. 2406) ) | This document relates to all cases. |
| ) | |
| ) | |

**MEMORANDOM OF DEFENDANT BLUE CROSS BLUE SHIELD OF MICHIGAN
IN SUPPORT OF MOTION TO DISMISS**

## <u>TABLE OF CONTENTS</u>

I.      TABLE OF AUTHORITIES…………………………………………………………...ii

II.     INTRODUCTION……………………………………………………………………...1

III.    STATEMENT OF FACTS…………………………………………………………......2

        A.  The Nonprofit Health Care Corporation Reform Act mandated extensive review and
            approval of BCBSM's rates by the Michigan Insurance Commissioner……………...2

        B.  The Nonprofit Health Care Corporation Reform Act establishes rights and remedies
            for subscribers and providers who wish to challenge BCBSM's rates………………4

        C.  Subscriber and Provider Plaintiffs' claims for damages are based on filed rates…….6

IV.     ARGUMENT……………………………………………………………………………..7

        A.  Plaintiffs' claims are barred because the Nonprofit Health Care Corporation Reform
            Act establishes the exclusive remedy by which Plaintiffs may challenge BCBSM's
            rates…………………………………………………………………………………...8

        B.  Subscriber and Provider Plaintiffs' damages relating to BCBSM premiums or
            reimbursements are barred by the filed rate doctrine as a matter of law……………10

            i.   BCBSM is extensively regulated by Michigan law, which requires approval of
                 all rates relating to BCBSM's underwritten products by the Commissioner of
                 Insurance and review of BCBSM's provider reimbursement arrangements...12

            ii.  Subscriber and Provider Plaintiffs' claims implicate the filed rate doctrine by
                 demanding damages for payments made under rates approved by a regulatory
                 agency………………………………………………………………………..18

V.      CONCLUSION………………………………………………………………………20

## TABLE OF AUTHORITIES

**CASES**

*Allen v. State Farm Fire & Cas. Co.*, 59 F. Supp. 2d 1217 (S.D. Ala. 1999)......................... 13, 21

*Blakewoods Surgery Ctr., L.L.C. v. Mich. Ins. Comm'r*, No. 221494, 2001 WL 776565 (Mich. Ct. App. Jan. 19, 2001) ................................................................................................................. 10

*Blue Cross & Blue Shield of Mich. v. Governor*, 367 N.W.2d 1 (Mich. 1985) ............................. 4

*Blue Cross & Blue Shield of Mich. v. Ins. Comm'r*, 270 N.W.2d 845 (Mich. 1978), *reh'g denied*, 405 Mich. 1001 ........................................................................................................................... 4

*BPS Clinical Labs. v. Blue Cross & Blue Shield of Mich.*, 552 N.W.2d 919 (Mich. Ct. App. 1996)........................................................................................................................................... 10

*Bryant v. Avado Brands, Inc.*, 187 F.3d 1271 (11th Cir. 1999)...................................................... 7

*Calico Trailer Mfg. Co., Inc. v. Ins. Co. of N. Am.*, No. LR-C-93-717, 1994 WL 823554 (E.D. Ark. Oct. 12, 1994) ................................................................................................................... 22

*ChevronTexaco Exploration & Prod. Co., a Div. of Chevron U.S.A. Inc. v. F.E.R.C.*, 387 F.3d 892 (D.C. Cir. 2004) ................................................................................................................. 11

*Genesis Ctr., PLC v. Blue Cross & Blue Shield of Mich.*, 625 N.W.2d 37 (Mich. Ct. App. 2000) ................................................................................................................................................... 10

*Genord v. Blue Cross & Blue Shield of Mich.*, 440 F.3d 802 (6th Cir. 2006) ....................... 14, 21

*Hill v. BellSouth Telecomm., Inc.*, 364 F.3d 1308 (11th Cir. 2004) ............................................ 13

*In re Title Insurance Antitrust Cases*, 702 F. Supp. 2d 840 (N.D. Ohio 2010) ........................... 21

*Kirksey v. Am. Bankers Ins. Co.*, 114 F. Supp. 2d 526 (S.D. Miss. 2000)................................... 22

*Korte v. Allstate Ins. Co.*, 48 F. Supp. 2d 647 (E.D. Tex. 1999) ................................................ 22

*McClements v. Ford Motor Co.*, 702 N.W.2d 166 (Mich. 2005) .......................................... 11, 12

*McLiechey v. Bristol West Ins. Co.*, 474 F.3d 897 (6th Cir. 2007)............................................... 12

*McLiechey v. Bristol West Insurance Co.*, 408 F. Supp. 2d 516 (W.D. Mich. 2006).................. 12

*Monroe Beverage Co., Inc. v. Stroh Brewery Co.*, 559 N.W.2d 297 (Mich. 1997).................... 11

*Morales v. Attorney's Title Ins. Fund, Inc.*, 983 F. Supp. 1418 (S.D. Fla. 1997) ........................ 22

*Mullinax v. Radian Guar. Inc.*, 311 F. Supp. 2d 474 (M.D.N.C. 2004) ...................................... 22

*Rios v. State Farm Fire & Cas. Co.*, 469 F. Supp. 2d 727 (S.D. Iowa 2007).............................. 22

*Stevens v. Union Planters Corp.*, No. 00-CV-1695, 2000 WL 33128256 (E.D. Pa. Aug. 22, 2000) ................................................................................................................................................... 22

*Taffet v. Southern Co.*, 967 F.2d 1483 (11th Cir. 1992) .............................................................. 12

*Texas Commercial Energy v. TXU Energy, Inc.*, 413 F.3d 503 (5th Cir. 2005).............. 11, 17, 21

*Uniforce Temp. Pers., Inc. v. Nat'l Council on Comp. Ins., Inc.*, 892 F. Supp. 1503 (S.D. Fla. 1995), *aff'd*, 87 F.3d 1296 (11th Cir. 1996)........................................................................... 13

*Universal Express, Inc. v. U.S. S.E.C.*, 177 F. App'x 52 (11th Cir. 2006)................................... 7

*Wegoland Ltd. v. NYNEX Corp.*, 27 F.3d 17 (2d Cir. 1994) ............................................... 13, 22

**STATUTES**

MICH. COMP. LAWS § 500.2242 ............................................................................................... 14

MICH. COMP. LAWS § 500.3529 ........................................................................................... 3, 20

MICH. COMP. LAWS § 500.3855 ............................................................................................... 14

MICH. COMP. LAWS § 550.1102 ........................................................................................... 5, 20

Detroit_3000130_10

MICH. COMP. LAWS § 550.1107 ................................................................. 8, 18
MICH. COMP. LAWS § 550.1201. ................................................................. 5
MICH. COMP. LAWS § 550.1202 ................................................................. 5
MICH. COMP. LAWS § 550.1308 ................................................................. 15
MICH. COMP. LAWS § 550.1401 ................................................................. 5
MICH. COMP. LAWS § 550.1402 ................................................................. 15
MICH. COMP. LAWS § 550.1504 ........................................................... passim
MICH. COMP. LAWS § 550.1504 – 550.1509 ........................................... 6, 7, 18
MICH. COMP. LAWS § 550.1506 ................................................................. 8, 18
MICH. COMP. LAWS § 550.1509 ................................................................. 10, 18
MICH. COMP. LAWS § 550.1515 ................................................................. 8, 11
MICH. COMP. LAWS § 550.1518 ................................................................. 8, 12
MICH. COMP. LAWS § 550.1601 ................................................................. 5
MICH. COMP. LAWS § 550.1602 ................................................................. 17
MICH. COMP. LAWS § 550.1603 ................................................................. 17
MICH. COMP. LAWS § 550.1604 ................................................................. 16
MICH. COMP. LAWS § 550.1607 ...................................................... 10, 14, 15, 17
MICH. COMP. LAWS § 550.1607 – 550.1608 ............................................. 14
MICH. COMP. LAWS § 550.1608 ......................................................... 15, 16, 17
MICH. COMP. LAWS § 550.1609 ......................................................... 5, 15, 16
MICH. COMP. LAWS § 550.1610 ................................................................. 16
MICH. COMP. LAWS § 550.1612 ................................................................. 6
MICH. COMP. LAWS § 550.1613 ....................................................... 7, 11, 16, 17
MICH. COMP. LAWS § 550.1615 ................................................................. 7
MICH. COMP. LAWS § 550.1619 ................................................................. 10
MICH. COMP. LAWS § 550.1620 ................................................................. 14
MICH. COMP. LAWS § 550.53 ................................................................. 3, 20
MICH. COMP. LAWS §§ 500.3501 – 500.3580 ......................................... 19
MICH. COMP. LAWS §§ 550.1101 – 550.1704 ......................................... 14
MICH. COMP. LAWS §§ 550.1607 – 550.1614 ......................................... 6, 14
MICH. COMP. LAWS §§ 550.51 – 550.63 ................................................. 20

Detroit_3000130_10

# INTRODUCTION

BCBSM brings this separate motion because it is subject to a unique regulatory scheme under the Michigan Nonprofit Health Care Corporation Reform Act (the "Act" or "PA 350"). Michigan's regulatory scheme and rate approval process warrants separate consideration by this Court and independently requires dismissal of all claims based on any rates charged to subscribers by BCBSM, or reimbursements paid to providers by BCBSM.

Plaintiffs' claims fail as a matter of law for two reasons:

1.      Subscriber and Provider Plaintiffs' exclusive remedy in this case is to challenge BCBSM's rates under the extensive review process mandated by PA 350 and conducted by the Michigan Commissioner of Insurance;

2.      Subscriber and Provider Plaintiffs' damages claims are barred by the filed rate doctrine.  The Subscriber Plaintiffs' claims for damages arise from the assertion that BCBSM's premium rates were too high as a result of allegedly anticompetitive conduct.  Likewise, the Provider Plaintiffs seek similar damages as a result of reimbursement rates allegedly being set too low. Plaintiffs' damages claims fail because under Michigan law, each and every BCBSM premium rate is filed with the Commissioner of Michigan's Office of Financial and Insurance Regulation ("OFIR," or "the Commissioner"), and what's more, the Commissioner has repeatedly reviewed those rates and expressly found them to be "equitable, adequate, and not excessive." MICH. COMP. LAWS § 550.1607(4)(a). BCBSM's reimbursement rates are also filed with the Commissioner as part of a statutory review process governing BCBSM's provider contracting. §§ 550.1504(1), 500.3529(6), 550.53(3). Therefore, all Plaintiffs seek damages for rates that were filed, which is all that's required for the filed rate doctrine. Indeed, the Michigan regulatory regime exceeds the doctrine's requirements because the rates are actually reviewed

and approved by the Commissioner after thorough examination.[1]

For each of these reasons, BCBSM respectfully requests that this Court dismiss any of Plaintiffs' claims that are based on any BCBSM premiums charged to subscribers or BCBSM reimbursements paid to providers.

## STATEMENT OF FACTS

**A.    The Nonprofit Health Care Corporation Reform Act mandated extensive review and approval of BCBSM's rates by the Michigan Insurance Commissioner.**

Through the entire period covered by both groups of Plaintiffs' claims for damages, BCBSM was subject to uniquely robust regulation by the Commissioner, including review and approval of BCBSM's premium rates and reimbursement rates.[2]  BCBSM, itself, is a creature of statute.[3] BCBSM is the only "health care corporation" regulated by the Commissioner under the Nonprofit Health Care Corporation Reform Act, MICH. COMP. LAWS §§ 550.1101 – 550.1704.

---

[1]  BCBSM incorporates the legal discussion of the filed rate doctrine in Defendants' Joint Motion to Dismiss. BCBSM submits this supplemental brief not to duplicate that discussion, but to explain how Michigan's complex statutory scheme regulating BCBSM's rate-setting process warrants application of the filed rate doctrine.

[2]  Recently, in March of 2013, Michigan substantially amended its insurance laws in general and PA 350 specifically, as a result of which the going-forward regulatory system in Michigan (and the structure of BCBSM) will be different from that described here.  However, this change is irrelevant to the damages claims.

[3]  *See, e.g.*, *Blue Cross & Blue Shield of Mich. v. Governor*, 367 N.W.2d 1, 14 (Mich. 1985) (internal quotation marks omitted) ("BCBSM is a unique statutory creation, distinct from a private insurance company . . . ."); *Blue Cross & Blue Shield of Mich. v. Ins. Comm'r*, 270 N.W.2d 845, 839-50 (Mich. 1978), *reh'g denied*, 405 Mich. 1001 (citations omitted):

BCBSM is not an insurance company in the usual sense of the term.  It is a statutory, non-profit corporation which is regulated within the limits of special enabling legislation by the Commissioner "in order to protect the interests of subscribers.' Although it does operate according to principles similar to those of insurance companies, 'it is not carried on as an insurance business for profit . . . , but rather it provides a method for promoting the public health and welfare in assisting . . . persons to budget" health care costs.

Detroit_3000130_10

Known as Public Act 350, this statute was enacted to:

> . . . promote an appropriate distribution of health care services for all residents of this state, to promote the progress of the science and art of health care in this state, and to assure for nongroup and group subscribers, reasonable access to, and reasonable cost and quality of, health care services, in recognition that the health care financing system is an essential part of the general health, safety, and welfare of the people of this state.  § 550.1102(1).

BCBSM, as a nonprofit, "charitable and benevolent institution" under the Act, is charged with various duties to further the Act's purpose.  §§ 550.1102(1), 550.1201(5). BCBSM is required to provide access to coverage to every Michigan citizen who applies and pays the applicable premium, serving the role as Michigan's health care benefit provider of last resort. §§ 550.1202(1)(d), 550.1401(1).[4]   BCBSM must also effectuate a cost transfer to subsidize the premiums paid by its senior citizen individual Medigap subscribers. § 550.1609(5).

Another purpose of the Act is "to provide for the regulation and supervision of nonprofit health care corporations by the commissioner of insurance so as to secure for all of the people of this state who apply for a certificate, the opportunity for access to health care services at a fair and reasonable price." MICH. COMP. LAWS § 550.1102(2). To carry out this objective, the Michigan Legislature has vested the Commissioner with exclusive oversight of BCBSM. § 550.1601(1). The Commissioner's oversight extends to almost every aspect of BCBSM's business affairs, including its: (1) finances;[5] (2) relationship with subscribers;[6] (3) contracts with

---

[4]  Thus, BCBSM's so-called dominant market share includes a substantial number of high cost individuals that other insurers have declined to cover.

[5]  *See* §§ 550.1204a (requiring BCBSM to maintain an "unimpaired surplus in an amount determined adequate by the commissioner"), 550.1602 (requiring BCBSM to file annual financial statements with the Commissioner and giving the Commissioner the discretion to order monthly or quarterly statements).

Detroit_3000130_10

hospitals and professional providers;[7] and (4) rates and rating methodology.[8]  To ensure access to health care services at a "fair and reasonable price," the Commissioner regulates both BCBSM's rate-setting process for all underwritten business[9] and BCBSM's reimbursement arrangements with providers. *See* §§ 550.1607 – 550.1614, 550.1504 – 550.1509. The regulation of BCBSM's rates are discussed in further detail in Section II of this brief.

> **B.** **The Nonprofit Health Care Corporation Reform Act establishes rights and remedies for subscribers and providers who wish to challenge BCBSM's rates.**

Subscribers such as Subscriber Plaintiffs have the right to challenge BCBSM's rates under PA 350. When BCBSM submits a proposed rate filing to the Commissioner, BCBSM is required to place advertisements giving notice of the filing in at least one newspaper which serves each geographic area in which significant numbers of subscribers reside. Mich. Comp. Laws § 550.1612(1). Under the Act, the Commissioner, the Attorney General, and subscribers "aggrieved by the proposed rate" or who have reasonable grounds to believe that they will be "aggrieved by the proposed rate" may request a hearing challenging BCBSM's proposed rates.  §

---

[6]  *See* §§ 550.1401 – 550.1439 (regulating BCBSM's relationship with subscribers, including issues like access to health care, benefits, and claims).

[7]  *See* §§ 550.1501 – 550.1518 (regulating BCBSM's relationship with hospitals and professional providers, including BCBSM's networks and reimbursement arrangements).

[8]  *See* §§ 550.1601 – 550.1619 (regulating BCBSM's rates and rating methodology).

[9]  Subscriber Plaintiffs only seek damages for underwritten business, specifically small group and individual products.  *See* Sub. Compl. ¶ 270 ("Ninth, Plaintiff John G. Thompson brings this action seeking damages on behalf of himself individually and on behalf of a class pursuant to the provisions of Rule 23(a) and Rule 23(b)(1) and (b)(3) of the Federal Rules of Civil Procedure, with such class (the "Michigan Class") defined as: All persons or entities who, during the period from October 1, 2008 to the present (the "Class Period"), have paid health insurance premiums to BCBS-MI for **individual or small group full-service commercial health insurance**.") (emphasis added).

550.1613(1).[10]  Subscribers who request a rate hearing are entitled to a copy of BCBSM's entire rate filing and the opportunity for reasonable discovery. § 550.1613(1) and (2). Discovery in past rate challenges has been extensive, including as many as eight sets of discovery requests issued by the Attorney General himself.  The Commissioner's final decisions are subject to review by the Ingham County Circuit Court as provided under the Administrative Procedures Act. § 550.1615. In the past ten years, two hearings have been conducted challenging BCBSM's proposed rates, including one challenge by Michigan's then-acting Attorney General. [11]  Both hearings resulted in BCBSM being ordered to modify its rates to meet its statutory requirements.[12]

Similarly, providers such as Provider Plaintiffs have the right to challenge BCBSM's reimbursement rates under PA 350. BCBSM must develop and maintain a provider class plan for each type of health care provider providing services to BCBSM Traditional subscribers. MICH. COMP. LAWS § 550.1505 – 550.1509. These provider class plans must include a detailed description of the reimbursement arrangement between BCBSM and the provider class, and the

---

[10] Persons acting on behalf of those "aggrieved by the proposed rate" may also request a hearing challenging BCBSM's proposed rates. § 550.1613(1).

[11] *See In the Matter of Blue Cross Blue Shield of Michigan's Application for Rate Increases for Nongroup Coverage*, 07-018-BC (July 11, 2008) (Commissioner of Financial and Insurance Regulation Decision), *available at* http://www.michigan.gov/documents/dleg/Final_Decision_2_242042_7.pdf (**Exhibit   A**); *Attorney General Mike Cox and Office of Financial and Insurance Regulation Staff v. Blue Cross Blue Shield of Michigan*, 09-746-BC (Dec. 7, 2009) (Commissioner of Financial and Insurance Regulation Decision), *available at* http://www.michigan.gov/documents/dleg/December_7_2009_09-746-BC_303570_7.pdf (**Exhibit B**). A court may take judicial notice of public records in a 12(b)(6) proceeding without converting the motion to dismiss into a motion for summary judgment. *See Universal Express, Inc. v. U.S. S.E.C.*, 177 F. App'x 52, 53-54 (11th Cir. 2006); *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999).

[12] *See* **Exhibit A** at 9; **Exhibit B** at 11.

Detroit_3000130_10

Commissioner must review provider class plans to ensure that they comply with PA 350's goal of reflecting the "reasonable cost" of health care services. §§ 550.1107(7), 550.1506(2), 550.1504(1). Under the Act, an organization or association representing the affected provider class may appeal the Commissioner's determination concerning a provider class plan. § 550.1515(1). An independent hearing officer presiding over the appeal may: (1) affirm or reverse a determination of the Commissioner concerning the provider class plan; or (2) determine whether the provider class plan complies with PA 350. § 550.1515(3). The independent hearing officer may also order BCBSM to revise its provider class plan if it does not comply with PA 350. § 550.1515(3)(b)(iii). Finally, PA 350 specifies that the appeal process set forth in the Act is the exclusive remedy available to providers who wish to challenge provider class plans. § 550.1518.

### C.    Subscriber and Provider Plaintiffs' claims for damages are based on filed rates.

Subscriber and Provider Plaintiffs have not availed themselves of these remedy schemes available under PA 350. Instead, they have waited years after the approval of BCBSM's premium rates and provider reimbursement arrangements to initiate an improper action in a federal court. Both sets of Plaintiffs allege that BCBSM engaged in anticompetitive conduct by agreeing to suppress competition through the use of territorial market division agreements with the thirty-seven other members of BCBSA. *See* Sub. Compl. ¶ 454; Provider Compl. ¶ 226. Provider Plaintiffs further allege that BCBSM and the member plans engaged in anticompetitive conduct by "accept[ing] the 'host plan' reimbursement rate through the Blue Card Program to increase their profits by decreasing the rates paid to healthcare providers." Provider Compl. ¶ 232.

Michigan Subscriber Plaintiff John G. Thompson is alleged to have been a BCBSM

Detroit_3000130_10

individual policy holder during the relevant class period.  Sub. Compl. ¶ 14. Plaintiff Thompson seeks to recover damages on behalf of himself and the Michigan Class for "inflated and/or supracompetitive premiums for individuals and small groups purchasing BCBS-MI's full-service commercial health insurance in the relevant geographic markets." Sub. Compl. ¶ 454, p. 295. The rates for individual and small group products that Plaintiff Thompson complains of were all filed with and approved by the Commissioner. Provider Plaintiffs, on the other hand, seek to recover, on behalf of themselves and the relevant Class,[13]  damages in the form of "having been paid lower rates, having been forced to accept far less favorable terms, and/or having access to far fewer patients than they would have with increased competition and but for Defendants' anticompetitive agreement." Provider Compl. ¶¶ 227, 233. The reimbursement methodologies Provider Plaintiffs complain of were filed with the Commissioner.

## **ARGUMENT**

The robust regime under which BCBSM is regulated requires dismissal of all claims that are based on rates charged to subscribers by BCBSM, or reimbursements paid to providers by BCBSM.  First, the Nonprofit Health Care Corporation Reform Act establishes the exclusive remedy by which Subscriber and Provider Plaintiffs may challenge the reasonableness of BCBSM's rates.  Plaintiffs are confined to those remedies available under the Act, and cannot challenge BCBSM's rates in a private cause of action.  Second, the filed rate doctrine bars both sets of Plaintiffs' claims because the process by which BCBSM sets its premium rates and

---

[13] The Class is defined as: "All healthcare providers, not owned or employed by any of the Defendants, in the United States of America provided covered services, equipment or supplies to any patient who was insured by, or who was a member or beneficiary of any plan administered by, a Defendant within four years prior to the date of the filing of this action." Provider Compl. ¶ 215.

7

reimbursement rates is extensively regulated by both Michigan law and the Commissioner. As such, Subscriber and Provider Plaintiffs cannot seek retroactively reduced insurance premiums and increased reimbursement rates from this Court instead of following statutory remedy requirements. Nor can Subscriber and Provider Plaintiffs ask this Court to second-guess the Commissioner's determination that BCBSM's premium rates were "equitable, adequate, and not excessive," and its reimbursement rates reflective of "reasonable cost". §§ 550.1607(4)(a), 550.1504(1).

I.      **PLAINTIFFS' CLAIMS ARE BARRED BECAUSE THE NONPROFIT HEALTH CARE CORPORATION REFORM ACT ESTABLISHES THE EXCLUSIVE REMEDY BY WHICH PLAINTIFFS MAY CHALLENGE BCBSM'S RATES.**

Both Plaintiffs' private causes of action are barred because PA 350 establishes the exclusive remedy by which subscribers and providers can challenge the reasonableness of BCBSM's rates. Michigan courts have recognized various provisions of PA 350 as providing the exclusive remedy available to plaintiffs challenging BCBSM's conduct.[14] It is well established under Michigan law that "[w]here a statute gives new rights and prescribes new

---

[14] *See, e.g.*, *BPS Clinical Labs. v. Blue Cross & Blue Shield of Mich.*, 552 N.W.2d 919, 924 (Mich. Ct. App. 1996) (affirming the trial court's grant of summary disposition to BCBSM because the Act "does not grant a health care provider the right to sue a health care corporation directly" and "[t]he relief sought by plaintiffs regarding the enforcement of Act 350 is available through the procedure set forth in M.C.L. § 550.1619(3) . . . Plaintiffs may commence an action in the Ingham Circuit Court to compel the Insurance Commissioner to enforce the act."); *Genesis Ctr., PLC v. Blue Cross & Blue Shield of Mich.*, 625 N.W.2d 37, 39 (Mich. Ct. App. 2000) (holding that the plaintiff surgical center lacked standing to bring an action again BCBSM for alleged violation of PA 350 because the Act did not create a private right of action, the Insurance Commissioner and Attorney General were designated to and could enforce the Act, and the center was not precluded from communicating its concerns to the Attorney General); *Blakewoods Surgery Ctr., L.L.C. v. Mich. Ins. Comm'r*, No. 221494, 2001 WL 776565, at *2 (Mich. Ct. App. Jan. 19, 2001) (granting the Commissioner's motion for summary disposition because the statutory review proceedings under MICH. COMP. LAWS § 550.1509 presented an alternate and adequate remedy to plaintiffs' claims that BCBSM

Detroit_3000130_10

remedies, such remedies must be strictly pursued; and a party seeking a remedy under the act is confined to the remedy conferred thereby and to that only." *McClements v. Ford Motor Co.*, 702 N.W.2d 166, 171 (Mich. 2005) (quoting *Monroe Beverage Co., Inc. v. Stroh Brewery Co.*, 559 N.W.2d 297, 298-99 (Mich. 1997)).  Subscribers are limited to PA 350's statutory remedy because the Act provides an opportunity for subscribers to challenge BCBSM's rates and participate in a hearing to determine whether BCBSM's rates meet the statutory obligations. MICH. COMP. LAWS § 550.1613.  Subscribers have an opportunity to: (1) access the information provided in BCBSM's rate filing; (2) investigate BCBSM's assertions through discovery; (3) have proposed rates reviewed by an expert in the field; and (4) force BCBSM to prove that its rates comply with the Act.

Similarly, providers have the right to challenge BCBSM's reimbursement rates under PA 350 by appealing the Commissioner's decision regarding BCBSM's provider class plans, which set out the methodology by which BCBSM calculates its reimbursement rates.[15] MICH. COMP. LAWS § 550.1515(1). The independent hearing officer presiding over the appeal is required to evaluate whether BCBSM's reimbursement methodology complies with PA 350's "reasonable cost" formula. § 550.1504(1). More importantly, PA 350 specifies that the appeal process set forth in the Act is the exclusive remedy available to providers who wish to challenge provider

---

practices relating to its freestanding ambulatory surgical facility provider class plan were discriminatory and violative of PA 350).

[15] It has long been established law that the filed rate doctrine bars challenges to rates set in accordance with a filed methodology, whether or not the precise rate is filed. *See Texas Commercial Energy v. TXU Energy, Inc.*, 413 F.3d 503, 509-10 (5th Cir. 2005) (applying the doctrine to bar federal antitrust claims where only a market-based methodology was filed with the state agency); *ChevronTexaco Exploration & Prod. Co., a Div. of Chevron U.S.A. Inc. v. F.E.R.C.*, 387 F.3d 892, 894 (D.C. Cir. 2004) ("A method or formula for calculating a rate, also called a 'rate rule,' when enshrined in an approved tariff, is itself a 'filed rate.'").

Detroit_3000130_10

class plans. § 550.1518.

Because PA 350 gives subscribers and providers the right to challenge BCBSM's rates and establishes a process by which to carry out those rights, the Act's scheme "must be strictly pursued" and Subscriber and Provider Plaintiffs are "confined to the remedy conferred thereby and to that [remedy] only."  *McClements*, 702 N.W.2d at 171.[16]  If Subscriber and Provider Plaintiffs wished to challenge the reasonableness of BCBSM's rates, they were required to do so when BCBSM submitted its proposed rates to the Commissioner.  They should not be permitted to "sit out the state's rate-making process and then repair to court to play litigation lottery." *Taffet v. Southern Co.*, 967 F.2d 1483, 1492 (11th Cir. 1992). Because Subscriber and Provider Plaintiffs failed to avail themselves of the exclusive remedy afforded by PA 350, their claims for damages relating to BCBSM premiums or reimbursements should be dismissed.

## II.   SUBSCRIBER AND PROVIDER PLAINTIFFS' DAMAGES CLAIMS RELATING TO BCBSM PREMIUMS OR REIMBURSEMENTS ARE BARRED BY THE FILED RATE DOCTRINE AS A MATTER OF LAW.

Plaintiffs' damages claims for rates charged to subscribers by BCBSM or reimbursements paid to providers by BCBSM are barred by the filed rate doctrine. "Simply

---

[16] Federal courts in Michigan have recognized the application of the exclusive remedy principle in a very similar context.  In *McLiechey v. Bristol West Insurance Co.*, 408 F. Supp. 2d 516, 518 (W.D. Mich. 2006), insureds filed a class action suit alleging the defendant insurance company had violated Chapter 21 of Michigan's Insurance Code by using its insureds' economic circumstances in setting automobile insurance rates.  Like PA 350, the statute at issue in *McLiechey* involved insurance "[r]ates . . . subject to comprehensive rate-making standards" under which an insurer was "required to file its rates with the Commissioner" and those rates were "subject to the Commissioner's review and approval." *Id.* at 518. The district court granted the insurance company's motion to dismiss, holding that Chapter 21 provided subscribers with a remedy by which they could challenge the insurer's rates, and thus barred plaintiffs from bringing a private cause of action. *Id.* at 522. The Sixth Circuit affirmed the district court's dismissal, noting that "[a] remedial scheme is not 'plainly inadequate' merely because it does not provide a plaintiff with the ideal result."  *McLiechey v. Bristol West Ins. Co.*, 474 F.3d 897, 901 (6th Cir. 2007).

Detroit_3000130_10

stated, the doctrine holds that 'any filed rate' – that is, one approved by the governing regulatory agency – is **per se reasonable and unassailable in judicial proceedings** . . . ." *Allen v. State Farm Fire & Cas. Co.*, 59 F. Supp. 2d 1217, 1227 (S.D. Ala. 1999) (quoting *Wegoland Ltd. v. NYNEX Corp.*, 27 F.3d 17, 18 (2d Cir. 1994)) (emphasis added).  As set forth more fully in Defendants' Joint Motion to Dismiss, the doctrine applies "whenever either the nondiscrimination strand or the nonjusticiability strand underlying the doctrine is implicated by the cause of action the plaintiff seeks to pursue." *Hill v. BellSouth Telecomm., Inc.*, 364 F.3d 1308, 1316 (11th Cir. 2004) (internal citations omitted). Claims are thus barred by the doctrine whenever the fact finder would have to "measure the difference between the properly approved [rates] paid by plaintiffs and those mythical rates which would have been applicable but for the defendants' concerted activity."  *Uniforce Temp. Pers., Inc. v. Nat'l Council on Comp. Ins., Inc.*, 892 F. Supp. 1503, 1512 (S.D. Fla. 1995), *aff'd*, 87 F.3d 1296 (11th Cir. 1996); *see also Wegoland*, 27 F.3d at 21 (claims precluded if they "would require determining what rate would have been deemed reasonable absent the [unlawful] acts, and then finding the difference between the two").

Plaintiffs' damages claims are barred by the filed rate doctrine since, according to Plaintiffs, BCBSM's allegedly anticompetitive conduct resulted in higher health insurance premiums and lower reimbursement rates, and the damages Plaintiffs seek are the difference between those actual rates and the rates Plaintiffs imagine would have existed in a market in which there was Blue-on-Blue competition in Michigan. Because the rates at issue are filed with the Commissioner, these claims are barred. And, while not necessary to dismissal, far more than mere filing occurs in Michigan; the entire process by which BCBSM sets its premiums is extensively supervised by the Commissioner, who is charged with ensuring that BCBSM's

Detroit_3000130_10

premiums are "equitable, adequate, and not excessive" and its reimbursements reflective of "reasonable cost".  MICH. COMP. LAWS §§ 550.1607(4)(a), 550.1504(1). As such, the filed rate doctrine requires dismissal of Subscriber and Provider Plaintiffs' damages claims relating to BCBSM premiums and reimbursements.

> **A.** **BCBSM is extensively regulated by Michigan law, which requires approval of all rates relating to BCBSM's underwritten products by the Commissioner of Insurance and review of BCBSM's provider reimbursement arrangements.**

BCBSM is regulated extensively by the Michigan Commissioner of Insurance. *See* MICH. COMP. LAWS §§ 550.1101 – 550.1704. *See also Genord v. Blue Cross & Blue Shield of Mich.*, 440 F.3d 802, 803 (6th Cir. 2006). Under PA 350, the Commissioner regulates BCBSM's rate-setting process for all underwritten business. *See* §§ 550.1607 – 550.1614.[17] The Commissioner must approve the monthly premium BCBSM charges on individual products as well as the methodology used by BCBSM to develop rates for group products.[18] *See* §§ 550.1607 – 550.1608. Commissioner approval is required for initial rates, revisions to existing rates, and

---

[17] As noted above, the regulation of BCBSM's rates, as described in this section, will change effective January 1, 2014, as a result of recently enacted legislation designed to both put Michigan in compliance with the Patient Protection and Affordable Care Act and to transition BCBSM from a nonprofit health care corporation to a nonprofit mutual insurance company. Under this new legislation, BCBSM's rates will be regulated under Michigan's Insurance Code, allowing BCBSM to be regulated by the same standards as insurers in Michigan. *See* MICH. COMP. LAWS § 550.1620(1) ("Notwithstanding any provision of this act to the contrary, a certificate delivered, issued for delivery, or renewed in this state on or after January 1, 2014 by a health care corporation is subject to the policy and certificate issuance and rate filing requirements of the insurance code . . . ."). Under the Insurance Code, BCBSM will still be required to file the rates relating to individual, Medigap, group conversion, and small group products with the Commissioner. *See* § 500.2242 (individual and small group products); § 500.3855(1) (Medigap products).

[18] Individual products include: nongroup products, for individuals who purchase coverage directly from BCBSM; group conversion products, for individuals who were covered under a BCBSM underwritten group plan and lost that coverage; and individual Medigap products, for

Detroit_3000130_10

renewals of existing rates. § 550.1607(1). New rates are deemed "approved if not disapproved by the Commissioner within 30 days." § 550.1607(1).[19] Revisions to rates or rate methodologies for existing products, however, must be expressly approved by the Commissioner. § 550.1608(1), (2).[20] Thus, every allegedly inflated BCBSM premium complained of by Subscriber Plaintiffs was approved by the Commissioner, either in the exact amount or the method by which it was calculated.

The Commissioner's approval is the product of an intense investigation into BCBSM's finances and underwriting practices. The Act orders the Commissioner to ensure that BCBSM's rates are "equitable, adequate, and not excessive," as defined under Michigan law. MICH. COMP. LAWS § 550.1608.[21] The Commissioner must make these determinations based on an extensive

---

individuals who purchase coverage directly from BCBSM to pay Medicare copayments and/or deductibles.

[19] BCBSM does not rely on the "deemer provision" to set its rates. Instead, BCBSM historically has waited until receiving formal approval from the Commissioner, given that the Commissioner also has the power to withdraw any deemed approval. *See* § 550.1607(1).

[20] Subscriber Plaintiffs' claim that "BCBS-MI's actual charged premium rates vary from the base rates it files with the state, for certain policies" is both erroneous and irrelevant. Sub. Compl. ¶ 530(d). It is irrelevant because, as discussed in footnote 15, it has long been established law that the filed rate doctrine bars challenges to rates set in accordance with a filed methodology, whether or not the precise rate is filed. A cursory review of Michigan law shows that Plaintiffs' claim is erroneous. For individual products, there are no discretionary bands by which rates can vary. § 550.1608(1); § 550.1402(2)(c) (stating that "a health care corporation shall not . . . [o]ffer to give or pay, or give or pay, directly or indirectly, a rebate or part of the premium, . . . except as reflected in the rate and expressly provided in the certificate."); § 550.1308(1)(d) (stating that a committee on the health care corporation's board of directors shall not "[a]pprove, adopt, or amend provider contracts, provider class plans, rates charged to subscribers, or a certificate."). For small group products, BCBSM has discretion only to the extent specifically provided for in the approved rating methodologies or through approval by the Commissioner.

[21] A rate is adequate "if the rate is not unreasonably low" relative to: (1) the provision for anticipated benefit costs; (2) the provision for administrative expense; (3) the provision for cost transfers; (4) the provision for contribution to or from surplus that is consistent with the attainment or maintenance of adequate and unimpaired surplus as provided in section 204a;

Detroit_3000130_10

review of data, including: (1) reasonable evaluations of recent claim experience; (2) projected

trends in claim costs; (3) the allocation of administrative expense budgets; and (4) the present

and anticipated unimpaired surplus of the health care corporation.  § 550.1609(1) and (4).  Thus,

BCBSM is required to disclose large amounts of information regarding its business affairs to the

Commissioner when submitting a rate filing.[22]  For rates relating to individual products, for

example, BCBSM is required to supply the Commissioner with: (1) recent claim experience on

the benefits; (2) actual trend experience; (3) prior administrative expenses; (4) projected trend

factors; (5) projected administrative expenses; (6) contributions for risk and contingency reserve

factors; (7) actual health care corporation contingency reserve position; and (8) projected health

care corporation contingency reserve position.  § 550.1610(6).  Moreover, all rate filings must be

made publicly available, allowing not only the Commissioner, but subscribers such as Subscriber

Plaintiffs, to verify BCBSM's rates.  § 550.1610(7).[23]

     Nor is the Commissioner's review of BCBSM's business affairs and rate-setting process

---

(5) the provision for adjustments due to prior experience of groups. § 550.1609(4). A rate is
not excessive if it "is not unreasonably high" relative to those same factors. § 550.1609(1).  A
rate is equitable if it "can be compared to any other rate offered by the health care corporation
to its subscribers, and the observed rate differences can be supported by differences in
anticipated benefit costs, administrative expense cost, differences in risk, or any identified
cost transfer provisions." § 550.1608(3).

[22] *See e.g.*, BCBSM's Proposed Experience Rating Formula Changes and New Experience
Rating Formulas (Sept. 1, 2009), *available at*
http://www7.dleg.state.mi.us/SerffPortal/PDF/2118820303.pdf (**Exhibit C**).

[23] A copy of the proposed rate filing is available to public as of the date of filing, except for: (1)
"personal data which may be associated with an identifiable individual"; (2) "data which
discloses reimbursement levels for specific procedures or services of specific providers and
data which, if disclosed, can be used to calculate those reimbursement levels" if the disclosure
would be harmful to ensuring subscribers reasonable access to, and reasonable cost and
quality of, providers and unless the data is generally known to providers; and (3) trade secrets.
§§ 550.1610(7), 550.1604. A person with a hearing before the Commissioner may examine

Detroit_3000130_10

limited to instances where BCBSM submits rate filings.[24]  PA 350 provides for annual review of proposed or existing rates for BCBSM individual subscribers and review of BCBSM's rating methodologies for group products every three years. MICH. COMP. LAWS § 550.1608(1) and (2). BCBSM is required to file an annual statement with the Commissioner showing the financial condition of the corporation as of the preceding December 31. § 550.1602(1). BCBSM must also file quarterly and monthly financial statements with the Commissioner. § 550.1602(2). The Commissioner has the statutory authority to "visit and examine the affairs" of BCBSM at his or her discretion. § 550.1603. The Commissioner may also audit BCBSM's group subscriber records to "determine proper application of a rating system . . . with respect to any group." § 550.1608(2). Finally, the Commissioner has the authority to disapprove any rate previously approved. §§ 550.1607(1), 550.1613(5). In short, the Commissioner's involvement and control over BCBSM's rates is far from a formality.  It is a statutorily mandated check and balance that requires a near-constant exchange of information between BCBSM and the Commissioner.

The Commissioner's oversight also extends to the provider reimbursement arrangements for all of BCBSM's lines of business, whether through the statutory mechanisms of PA 350, the Insurance Code, and the Prudent Purchaser Act, or through BCBSM's internal procedures established to ensure that BCBSM's statutory goals are met. *See Texas Commercial Energy v. TXU Energy, Inc.*, 413 F.3d 503, 509-10 (5th Cir. 2005) (holding that, although the state utility

---

the reimbursement level data and be subject to the same confidentiality requirements as the Commissioner. § 550.1613(1).

[24] It is worth noting that a search of the Michigan Department of Licensing and Regulatory Affairs' filing database shows that since May 2009 BCBSM has submitted 66 filings to the Commissioner regarding the rates on its products. *See* Search Results for Rate Filings by Blue Cross Blue Shield of Michigan, SERFF Filing Search Portal, LARA Department of Licensing and Regulatory Affairs, *available at* http://www7.dleg.state.mi.us/SerffPortal/ (**Exhibit D**).

Detroit_3000130_10

commission did not set or approve the electricity rates at issue, the commission's "oversight over the market is sufficient to conclude that the BES energy rates are 'filed' within the meaning of the filed rate doctrine."). Under PA 350, the Commissioner is charged with ensuring that BCBSM's provider reimbursement arrangements for Traditional business comply with PA 350's "reasonable cost" formula. *See* MICH. COMP. LAWS § 550.1504(1). PA 350 requires BCBSM to develop and maintain a provider class plan for each type of health care provider providing services to BCBSM Traditional business subscribers. *See* §§ 550.1505 – 550.1509. The Commissioner must review these provider class plans to determine if BCBSM "has substantially achieved" PA 350's goal of establishing "reimbursement arrangements that will assure a rate of change in the total corporation payment per member to each provider class that is not higher than the compound rate of inflation and real economic growth."[25] §§ 550.1509(1), 550.1504(1)(c). To that end, each provider class plan must include a detailed description of the reimbursement arrangement between BCBSM and the provider class and a copy of the provider contract. §§ 550.1107(7), 550.1506(2). The plans' language directs the Commissioner to BCBSM's reimbursement methodology, as evidenced by the following excerpts:

- Hospital Provider Class Plan: "Reimbursement methods are based on hospitals' Peer Group designation. **Specifics of the reimbursement structure can be found in Exhibit B of the attached Participating Hospital Agreement**."[26]

- Medical Doctors Provider Class Plan: "Based on the lower of the MD's billed charge or the BCBSM maximum payment for covered services. **Most maximum payment levels are based on the Resource Based Relative Value Scale developed by the Centers for Medicare and Medicaid Services** in which services are ranked according to the resource costs needed to provide them. Other

---

[25] These terms are further defined in MICH. COMP. LAWS § 550.1504(2).

[26] Blue Cross Blue Shield of Michigan Hospital Provider Class Plan, at 8 (April 2013), *available at* http://www.michigan.gov/documents/difs/BCBSM_PCP_2013_421382_7.pdf?201308070219 24 (**Exhibit E**).

factors that may be used in setting maximum payment levels include comparison to similar services, corporate medical policy decisions, analysis of historical charge data and geographic anomalies."[27]

- Pharmacy Provider Class Plan: "BCBSM reimburses participating chain and independent pharmacies . . . **[t]he sum of drug product cost plus dispensing fee, minus member liability, plus any applicable incentives**."[28]

- Home Health Care Provider Class Plan: For "Freestanding Home Health Care Providers . . . **BCBSM pays the provider the lesser of allowable costs or billed charges, less member deductibles or copayments**." For "Hospital-Based Home Health Care Providers . . . **Reimbursement is determined by the parent hospital's peer group assignment as defined in Exhibit B of the Participating Hospital Agreement (PHA), and as supplemented by the PHA Payment Manual**."[29]

- Ambulatory Surgical Facility Provider Class Plan: "**Reimbursement is limited to the lesser of the facility's charge or BCBSM's maximum payment level**. Maximum payment level for ambulatory procedures is based on BCBSM's established fees . . . Fees for outpatient surgery procedures, which BCBSM determines are not commonly performed in physicians' offices, are aligned with hospital fees for the same procedures. . . ."[30]

Thus, the allegedly low reimbursement rates Provider Plaintiffs complain of relating to BCBSM's Traditional business are calculated with reimbursement methodology previously reviewed and approved by the Commissioner as reflecting the "reasonable cost" of health care.

In addition, BCBSM's PPO and HMO lines of business are subject to extensive supervision by the Commissioner. *See generally* MICH. COMP. LAWS §§ 500.3501 – 500.3580

---

[27] Blue Cross Blue Shield of Michigan Medical Doctor Provider Class Plan, at 1 (Oct. 2012) (**Exhibit F**).

[28] Blue Cross Blue Shield of Michigan Pharmacy Provider Class Plan Detailed Report 2010-2011, at 5 (July 2012), *available at* http://www.michigan.gov/documents/lara/RX_Website_Pt_1_394319_7.pdf (**Exhibit G**).

[29] Blue Cross Blue Shield of Michigan Home Health Care Provider Class Plan, at 8-9 (Dec. 2000), *available at* https://www.michigan.gov/documents/cis/hhc12_00_203770_7.pdf (**Exhibit H**).

[30] Blue Cross Blue Shield of Michigan Ambulatory Surgical Facilities Provider Class Plan Detailed Report 2006-2007, at 4 (Jan. 2009), *available at* http://michigan.michigan.gov/documents/dleg/ASF_Provider_Class_Plan_Detailed_Report_2006-2007_264449_7.pdf (**Exhibit I**).

Detroit_3000130_10

(regulating HMOs), 550.51 – 550.63 (regulating PPOs). The Insurance Code requires that BCBSM submit its HMO provider contracts, as well as any substantive changes to the contracts, to the Commissioner for approval. § 500.3529(6).  "Substantive changes" includes changes to the method of payment or the risk assumed by each party under the contract. § 500.3529(6). Similarly, the Prudent Purchaser Act requires that BCBSM's PPO provider contracts be filed with the Commissioner. § 550.53(3). In practice, the Commissioner's regulation of BCBSM's Traditional provider reimbursement rates impacts BCBSM's PPO reimbursement rates. BCBSM's PPO provider contracts contain the same contractual language and reimbursement methodology found in BCBSM's Traditional provider contracts.[31] In fact, BCBSM cannot always separate its lines of business, thus providing the Commissioner with more information about its provider contracts than required under the Act's provider plan review.[32] If the Commissioner orders changes to BCBSM's Traditional provider contracts, BCBSM applies the changes to its PPO contracts in order to effectuate its goals of cost, quality and access. *See* § 550.1102(1). Thus, BCBSM's HMO and PPO provider reimbursement arrangements fall under the Commissioner's oversight.

### B. Subscriber and Provider Plaintiffs' claims implicate the filed rate doctrine by demanding damages for payments made under rates approved by a regulatory agency.

Subscriber Plaintiffs' damages claims relating to BCBSM rates fail under the filed rate doctrine because they all arise from allegations that premiums filed with and previously

---

[31] As a general practice, BCBSM's PPO provider contracts reimburse at a rate ten percent lower than the provider contracts for Traditional business.

[32] *See* **Exhibit G** at 5 n. 1 ("Although PA 350 requires BCBSM to only report on its Traditional providers, we have included Preferred Rx providers because we cannot separate traditional membership from PPO membership for this provider class.").

Detroit_3000130_10

approved by the Commissioner are too high.[33]   These rates were previously approved as equitable, adequate and not excessive by the Commissioner, who has extensive regulatory authority over BCBSM's rate-setting process.

Provider Plaintiffs' damages claims relating to BCBSM reimbursements for Traditional business similarly fail under the filed rate doctrine because they arise from allegations that the reimbursement methodology previously approved by the Commissioner resulted in reimbursement rates that were too low.[34] These reimbursement methodologies were submitted to the Commissioner for review to ensure that they comply with the "reasonable cost" formula set out in PA 350. Moreover, because BCBSM's HMO and PPO provider contracts are subject to extensive supervision by the Commissioner, and because the Commissioner's decisions impact the HMO and PPO reimbursement rates, these rates should also be considered "filed" within the meaning of the doctrine. *See Texas Commercial Energy v. TXU Energy, Inc.*, 413 F.3d 503, 509-10 (5th Cir. 2005). To allow Subscriber and Provider Plaintiffs' claims to go forward would undermine an agency whose extensive authority has been recognized by the Sixth Circuit, *see Genord*, 440 F.3d at 803, in an industry where federal courts have regularly applied the filed rate doctrine.  *In re Title Insurance Antitrust Cases*, 702 F. Supp. 2d 840, 849 (N.D. Ohio 2010) ("[F]ederal courts have long applied the filed rate doctrine to a wide spectrum of insurance actions.").[35]   Thus, Subscriber and Provider Plaintiffs' claims for damages based on BCBSM

---

[33] *See* Sub. Compl. ¶¶ 454, 455.

[34] *See* Provider Compl. ¶¶ 227, 233.

[35] *See, e.g.*, *Allen v. State Farm Fire & Cas. Co.*, 59 F. Supp. 2d 1217, 1228-29 (S.D. Ala. 1999) (applying the doctrine because "state agencies, such as the Alabama department of insurance, are 'deeply familiar with the workings of the regulated industry and utilize this special expertise in evaluating the reasonableness of rates'" and "[a]llowing the plaintiffs to circumvent the established statutory process . . . would undermine Alabama's current

Detroit_3000130_10

rates charged to subscribers or BCBSM reimbursements paid to providers are precisely the type of actions the filed rate doctrine is meant to prevent and should accordingly be dismissed.

## CONCLUSION

For the reasons stated above, and in Defendants' Motion to Dismiss/BCBSA's Motion to Dismiss, BCBSM respectfully requests that this Court dismissing Plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(6).

Respectfully submitted,

/s/ Andrew P. Campbell
Andrew P. Campbell (CAM006)
LEITMAN, SIEGAL, PAYNE & CAMPBELL PC
420 20th Street North, Suite 200
Birmingham, Alabama 35203
Telephone: (205) 986-5040
Fax: (205) 986-5080
acampbell@lspclaw.com

September 30, 2013                    *Counsel for Defendant Blue Cross Blue Shield of Michigan*

---

regulatory regime, which, . . . is designed to be self-policing." (quoting *Wegoland*, 27 F.3d at 21)); *Morales v. Attorney's Title Ins. Fund, Inc.*, 983 F. Supp. 1418, 1429 (S.D. Fla. 1997) (dismissing plaintiffs' kickback claim against title insurer pursuant to filed rate doctrine because claim was nothing more than challenge to title insurance rates set by state regulators); *Rios v. State Farm Fire & Cas. Co.*, 469 F. Supp. 2d 727, 737 (S.D. Iowa 2007) (applying the filed rate doctrine to common law claim seeking return of insurance premiums); *Mullinax v. Radian Guar. Inc.*, 311 F. Supp. 2d 474, 484 n. 6 (M.D.N.C. 2004) (noting that the filing of rates by defendant mortgage insurer with the North Carolina Department of Insurance would bar plaintiffs from challenging the reasonableness of those rates); *Kirksey v. Am. Bankers Ins. Co.*, 114 F. Supp. 2d 526, 529 (S.D. Miss. 2000) (applying filed rate doctrine to common law claim seeking return of insurance premiums); *Korte v. Allstate Ins. Co.*, 48 F. Supp. 2d 647, 651-52 (E.D. Tex. 1999) (applying the filed rate doctrine to claim that insurer's rates contained an illegal subsidy factor because state agency determined reasonable rates pursuant to statutory scheme); *Stevens v. Union Planters Corp.*, No. 00-CV-1695, 2000 WL 33128256, at *3 (E.D. Pa. Aug. 22, 2000) (holding that an allegation of kickbacks in forced hazard insurance scheme was barred by filed rate doctrine); *Calico Trailer Mfg. Co., Inc. v. Ins. Co. of N. Am.*, No. LR-C-93-717, 1994 WL 823554, at *6 (E.D. Ark. Oct. 12, 1994) (holding that the filed rate doctrine barred plaintiffs' challenge to insurance rates allegedly inflated as result of conspiracy among defendant insurance companies).

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 30, 2013 the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record in the above listed matter.

/s/ Andrew P. Campbell_____
Andrew P. Campbell
September 30, 2013

21

Detroit_3000130_10