# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

|  |  |
|---|---|
| **IN RE: BLUE CROSS BLUE SHIELD ANTITRUST LITIGATION (MDL NO. 2406)** | ) ) ) ) ) Master File No. 2:13-CV-20000-RDP<br><br>This document relates to all cases. |

## PROVIDER PLAINTIFFS' RESPONSE TO DEFENDANT BLUE CROSS BLUE SHIELD OF MICHIGAN'S MOTION TO DISMISS (Doc. 114)

## **TABLE OF CONTENTS**

        **Page**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ................................................................................................................ 1

ARGUMENT ........................................................................................................................ 2

    I.     NO REMEDY UNDER STATE LAW PRECLUDES THIS SUIT ....................... 2

    II.    THE FILED RATE DOCTRINE IS INAPPLICABLE TO THE
           PROVIDER PLAINTIFFS' REIMBURSEMENT RATES ................................. 5

CONCLUSION ..................................................................................................................... 8

CERTIFICATE OF SERVICE .............................................................................................. 12

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*Allen v. State Farm Fire & Cas. Co.*,
   59 F. Supp. 2d 1217 (S.D. Ala. 1999) ....................................................................................... 5

*Ark. La. Gas Co. v. Hall*,
   453 U.S. 571 (1981)................................................................................................................... 6

*Blakewoods Surgery Ctr., L.L.C. v. Mich. Ins. Comm'r*,
   No. 221494, 2001 Mich App. LEXIS 2251 (Mich. Ct. App. Jan. 19, 2001).............................. 5

*Blue Cross & Blue Shield of Mich. v. Ins. Comm'r*,
   270 N.W.2d 845 (Mich. 1978).................................................................................................. 1

*Blue Cross & Blue Shield of Mich. v. Milliken*,
   367 N.W.2d 1 (Mich. 1985)...................................................................................................... 1

*BPS Clinical Labs. v. Blue Cross & Blue Shield of Mich.*,
   552 N.W.2d 919 (Mich. Ct. App. 1996) ................................................................................... 5

*Genesis Ctr., PLC v. Blue Cross & Blue Shield of Mich.*,
   625 N.W.2d 37 (Mich. Ct. App. 2000) ..................................................................................... 5

*Genord v. Blue Cross & Blue Shield of Mich.*,
   440 F.3d 802 (6th Cir. 2006) .................................................................................................... 6

*Hi-Lex Controls Inc. v. Blue Cross & Blue Shield of Mich.*,
   No. 11-12557, 2013 U.S. Dist. LEXIS 73043 (E.D. Mich. May 23, 2013) .............................. 7

*Keogh v. Chi. & Nw. Ry. Co.*,
   260 U.S. 156 (1922)................................................................................................................... 6

*Massachusetts v. Mylan Laboratories*,
   357 F. Supp. 2d 314 (D. Mass. 2005).................................................................................... 6, 7

*Taffet v. S. Co. Servs.*,
   967 F.2d 1483 (11th Cir. 1992) ................................................................................................. 6

*United States v. Blue Cross Blue Shield of Mich.*,
   809 F. Supp. 2d 665 (E.D. Mich. 2011)............................................................................ passim

**Statutes**

Mich. Comp. Laws § 550.1102(2) .................................................................................................. 1

Mich. Comp. Laws § 550.1107(7) .................................................................................................. 3

Mich. Comp. Laws § 550.1504(1) ............................................................................................... 3

Mich. Comp. Laws § 550.1506(2) ........................................................................................... 3, 4

Mich. Comp. Laws § 550.1515(1) ............................................................................................... 2

Mich. Comp. Laws §§ 550.1101–550.1704................................................................................. 1

**Other Authorities**

Department of Justice, *Justice Department Files Motion to Dismiss Antitrust Lawsuit Against Blue Cross Blue Shield of Michigan After Michigan Passes Law to Prohibit Health Insurers from Using Most Favored Nation Clauses in Provider Contracts: Michigan Consumers Likely to Benefit from Increased Health Insurance Competition*, http://www.justice.gov/opa/pr/2013/March/13-at-345.html....................................................... 3

# INTRODUCTION

This brief addresses the separate motion to dismiss filed by Defendant Blue Cross Blue Shield of Michigan ("Blue Michigan").  (Doc. 114 ("Blue Michigan Br.").)  In response to Provider Plaintiffs' allegations that Blue Michigan has conspired with the other Blue plans to allocate markets and fix prices, resulting in lower reimbursement rates for healthcare providers, Blue Michigan argues that

> because it is subject to a unique regulatory scheme under the Michigan Nonprofit Health Care Corporation Reform Act (the 'Act' or 'PA 350')[,] Michigan's regulatory scheme and rate approval process warrant separate consideration by this Court and independently requires dismissal of all claims based on . . . reimbursements paid to providers by [Blue Michigan].

(*Id.* 1).[1]  The Act implements the Michigan legislature's intent "to secure for all of the people of this state who apply for a certificate, the opportunity for access to health care services at a fair and reasonable price."  Mich. Comp. Laws § 550.1102(2).  The Act "had a secondary purpose of protecting the public from fraud by placing the health care corporations charged with administering the plans under the regulatory authority of the Commissioner of Insurance."  *Blue Cross & Blue Shield of Mich. v. Milliken*, 367 N.W.2d 1, 9 (Mich. 1985) (citing *Blue Cross & Blue Shield of Mich. v. Ins. Comm'r*, 270 N.W.2d 845 (Mich. 1978)).  According to Blue Michigan, the Act provides that Provider Plaintiffs' exclusive remedy is to challenge Blue Michigan's rates in a state administrative proceeding, and the filed rate doctrine bars Provider Plaintiffs' claims for damages under the antitrust laws.

Blue Michigan has unsuccessfully raised a similar defense before.  In *United States v. Blue Cross Blue Shield of Michigan* (*U.S. v. Blue Michigan*), 809 F. Supp. 2d 665 (E.D. Mich. 2011), the United States and the State of Michigan alleged that Blue Michigan's use of "most

---

[1] This brief also will refer to the Nonprofit Health Care Corporation Reform Act, Mich. Comp. Laws §§ 550.1101–550.1704, as the "Act."

1

favored nation" clauses in its contracts with hospitals violated the Sherman Act. These clauses required hospitals to charge other insurers at least as much as (and in some cases, more than) they charged Blue Michigan. *Id.* at 669. Blue Michigan moved to dismiss, arguing that the Act provided an adequate state remedy, such as review by the state Insurance Commissioner, and that Blue Michigan is immune from the Sherman Act because the State of Michigan heavily regulates the insurance industry. *Id.* at 676. The district court denied the motion to dismiss, noting that "[t]he main goal of the [Act] is to assure access by the people to health care services; not for Blue Cross to enter into contracts with providers which discourages competition with other insurers—for profit or otherwise." *Id.* at 677 (stating that "the Court's review of the statutes governing Blue Cross' actions reveals that the legislature did not clearly articulate nor affirmatively express the act sought to be restrained—using [most favored nations clauses] to deter competition with other insurers").[2] The same is true here: Blue Michigan is not free to violate the antitrust laws simply because it is subject to state regulation.

## ARGUMENT

**I.     NO REMEDY UNDER STATE LAW PRECLUDES THIS SUIT**

Blue Michigan claims that the Provider Plaintiffs' exclusive remedy for any violation of the antitrust laws is to appeal "the [Insurance] Commissioner's decision regarding [Blue Michigan's] provider class plans, which set out the methodology by which [Blue Michigan] calculates its reimbursement rates." (Blue Michigan Br. 9 (citing Mich. Comp. Laws § 550.1515(1)).) Blue Michigan is referring to the Commissioner's duty to review a "provider

---

[2] In *U.S. v. Blue Michigan*, the plaintiffs dismissed the case after the State of Michigan enacted legislation prohibiting health insurers from including "most favored nation" clauses in their contracts. Department of Justice, *Justice Department Files Motion to Dismiss Antitrust Lawsuit Against Blue Cross Blue Shield of Michigan After Michigan Passes Law to Prohibit Health Insurers from Using Most Favored Nation Clauses in Provider Contracts: Michigan Consumers Likely to Benefit from Increased Health Insurance Competition*, http://www.justice.gov/opa/pr/2013/March/13-at-345.html. Many of the Blues still require providers to agree to "most favored nation" clauses. (Prov. Compl. ¶ 181.)

2

class plan," which the Act defines as "a document containing a reimbursement arrangement and objectives for a provider class, and, in the case of those providers with which a health care corporation contracts, provisions that are included in that contract." Mich. Comp. Laws § 550.1107(7). Under the Act, however, the Commissioner's review of the provider class plan is quite limited:

> Upon receipt of a provider class plan, the commissioner shall examine the plan *and shall determine only if the plan contains a reimbursement arrangement and objectives for each goal provided in section 504*, and, for those providers with which a health care corporation contracts, provisions that are included in that contract. For purposes of making the determination required by this subsection only, the commissioner shall liberally construe the items contained in a provider class plan.

*Id.* § 550.1506(2) (emphasis added). Section 504 lists the Act's goals of reimbursement arrangements with health care providers:

> (1) A health care corporation shall, with respect to providers, contract with or enter into a reimbursement arrangement to assure subscribers reasonable access to, and reasonable cost and quality of, health care services, in accordance with the following goals:
>
> > (a) There will be an appropriate number of providers throughout this state to assure the availability of certificate-covered health care services to each subscriber.
> >
> > (b) Providers will meet and abide by reasonable standards of health care quality.
> >
> > (c) Providers will be subject to reimbursement arrangements that will assure a rate of change in the total corporation payment per member to each provider class that is not higher than the compound rate of inflation and real economic growth.

*Id.* § 550.1504(1). According to the plain language of the Act, the Commissioner reviews the provider class plan to determine the *existence* of the reimbursement arrangement, objectives for goals set out in Section 504, and provisions of provider contracts; she does not evaluate those components of the plan on the merits.

3

In *U.S. v. Blue Michigan*, Blue Michigan attempted to convince the court that the Commissioner had broader powers than those listed in the Act and could investigate and modify the provider contracts; the court was not persuaded. 809 F. Supp. 2d at 678. In denying Blue Michigan's motion to dismiss, the court stated:

> Blue Cross' argument that the Insurance Commissioner has the authority to investigate and modify Blue Cross' provider contracts is not found in the statute. There is no provision that mandates the Insurance Commissioner's review of specific contracts and review of [most favored nation] clauses before Blue Cross enters into such contracts with hospitals. The Act only allows the Insurance Commissioner to review provider *plans* and to examine the plan and determine "only if the plan contains a reimbursement arrangement and objectives for each goal provided in section 504[.]" M.C.L. § 550.1506(2).

*Id.* Similarly, the anticompetitive conduct alleged in the Provider Plaintiffs' complaint is outside the scope of the review of and consideration by the Commissioner. The Blues' conduct—an agreement to allocate markets and not to compete with each other, (Doc. 86 ("Prov. Compl.")) ¶ 4)—is not what Blue Michigan asserts it presented to the Commissioner for review. Similarly, Blue Michigan is not alleging, nor can it, that it presented the Commissioner with evidence of its conspiracy to fix prices for healthcare reimbursement through the BlueCard program, resulting in significantly lower reimbursements to healthcare providers. (*Id.* ¶ 7.) Nor has the Commissioner made any finding that Blue Michigan's rates of reimbursement to providers are appropriate, reasonable, or competitive. The Commissioner could not have approved Blue Michigan's anticompetitive behavior, or the low reimbursement rates that resulted from that behavior, so there is no relevant decision for the Provider Plaintiffs to appeal. Thus, no remedy under Michigan law prevents the Provider Plaintiffs from bringing this suit.

Finally, the three cases cited by Blue Michigan for the proposition that "Michigan courts have recognized various provisions of PA 350 as providing the exclusive remedy available to plaintiffs challenging [Blue Michigan's] conduct," (Blue Michigan Br. 8), are easily

distinguished, as the plaintiffs in those cases made claims seeking enforcement of the Act[3]—claims that are not analogous to the Provider Plaintiffs' claims of anticompetitive behavior.

Simply put, the Act does not permit Blue Michigan to engage in anticompetitive conduct that would otherwise be illegal.  The court recognized as much in *U.S. v. Blue Michigan*:  "The purpose of the [Act] is to make certain that the people of Michigan are able to access health care services at a fair and reasonable price.  There is no provision in the [Act] that allows Blue Cross to stifle competition."  809 F. Supp. 2d at 677.

## II. THE FILED RATE DOCTRINE IS INAPPLICABLE TO THE PROVIDER PLAINTIFFS' REIMBURSEMENT RATES

Blue Michigan also claims that the Provider Plaintiffs' claims are barred by the filed rate doctrine, which provides that "any filed rate – that is, one approved by the governing regulatory agency – is per se reasonable and unassailable in judicial proceedings."  (Blue Michigan Br. 11 (quoting *Allen v. State Farm Fire & Cas. Co.*, 59 F. Supp. 2d 1217, 1227 (S.D. Ala. 1999)).)  But the filed rate doctrine applies to rates that a regulated entity charges its consumers, not the rates at which it reimburses service providers.[4]

The filed rate doctrine "forbids a regulated entity *to charge rates for its services* other than those properly filed with the appropriate federal regulatory authority."  *Ark. La. Gas Co. v.*

---

[3] *BPS Clinical Labs. v. Blue Cross & Blue Shield of Mich.*, 552 N.W.2d 919, 922 (Mich. Ct. App. 1996) (plaintiffs "argued for mandamus relief ordering defendant to comply with the Prudent Purchaser Act (PPA), M.C.L. § 550.51 *et seq.*; M.S.A. § 24.650(51) *et seq.*");  *Genesis Ctr., PLC v. Blue Cross & Blue Shield of Mich.*, 625 N.W.2d 37, 38 (Mich. Ct. App. 2000) (plaintiffs "filed a complaint and a request for declaratory judgment, alleging that BCBSM's action violated its enabling statute, the [Act]"); *Blakewoods Surgery Ctr., L.L.C. v. Mich. Ins. Comm'r*, No. 221494, 2001 Mich App. LEXIS 2251, at *1 (Mich. Ct. App. Jan. 19, 2001) (plaintiffs sought declarations from the trial court "that various of BCBSM's practices related to its freestanding ambulatory surgical facility provider class plan were discriminatory and violative of numerous provisions of [the Act]").

[4] By focusing on the filed rate doctrine as it applies to reimbursements to providers, the Provider Plaintiffs are not implying that the doctrine bars the Subscriber Plaintiffs' claims.

5

*Hall,* 453 U.S. 571, 577 (1981) (emphasis added).[5] "The considerations underlying the doctrine . . . are preservation of the agency's primary jurisdiction over reasonableness of rates and the need to ensure that regulated companies *charge only those rates* of which the agency has been made cognizant." *Id.* at 577–78 (emphasis added) (citations omitted). Since 1922, when the doctrine was established, it has applied only to plaintiffs who have *paid* a regulated entity, not plaintiffs who have been paid by a regulated entity. *See Keogh v. Chi. & Nw. Ry. Co.*, 260 U.S. 156, 159–60 (1922) (plaintiff alleged that he was charged unreasonable shipping rates by the defendant railroads); *Hill v. BellSouth Telecomms., Inc.*, 364 F.3d 1308, 1311 (11th Cir. 2004) (stating that the filed rate doctrine "prohibits *customers* from directly challenging . . . filed tariffs in state or federal court" (emphasis added)); *Taffet v. S. Co. Servs.*, 967 F.2d 1483, 1490 (11th Cir. 1992) (en banc) ("[T]he filed rate doctrine recognizes that where a legislature has established a scheme for utility rate-making, the *rights of the rate-payer in regard to the rate he pays* are defined by that scheme." (emphasis added)). Every case Blue Michigan cites in Part II of its brief involved a challenge by ratepayers and only by ratepayers;[6] none involved claims by a plaintiff who provided goods or services to a regulated entity.

Reimbursements to healthcare providers are plainly not "rates" or "tariffs" under the filed rate doctrine. In *Massachusetts v. Mylan Laboratories*, for example, the court considered whether the doctrine barred claims against pharmaceutical manufacturers for alleged fraudulent reporting of the prices manufacturers charged their customers, causing Massachusetts to overpay for generic drugs. 357 F. Supp. 2d 314 (D. Mass. 2005). The court found the filed rate doctrine

---

[5] The doctrine applies to State regulatory authorities as well. *Taffet v. S. Co. Servs.*, 967 F.2d 1483, 1494 (11th Cir. 1992) (en banc).

[6] The only exception is *Genord v. Blue Cross & Blue Shield of Mich.*, 440 F.3d 802 (6th Cir. 2006), which did not involve the filed rate doctrine at all.

6

to be inapplicable, noting that the data submissions did not constitute "rates" or "tariffs." *Id.* at 329. The court observed:

> The reported data do not control the rates which Defendants can charge customers, as a tariff would. The fact that rebates affect the net cost of the drugs to Massachusetts does not transform the data into tariffs. While Defendants have a duty to report accurate data for prices previously charged, this data does not control, or even affect, *prospective* prices, as a tariff would.

*Id.* Similarly, the Provider Plaintiffs' claims are not based on reimbursement rates that were filed with or approved by the Commissioner under the Act. As explained above, the Commissioner's review of a provider class plan is not a review or approval of the actual rate of reimbursement paid by Blue Michigan to contracted providers. Because the provider reimbursement rates are not included in the review authorized by the Act, the doctrine is inapplicable.

Blue Michigan has demonstrated an extraordinary amount of nerve to make its filed rate argument in light of the findings in *Hi-Lex Controls Inc. v. Blue Cross & Blue Shield of Mich.*, No. 11-12557, 2013 U.S. Dist. LEXIS 73043 (E.D. Mich. May 23, 2013). In that case, Blue Michigan was found liable for engaging in a fraudulent scheme to overcharge sponsors of employee benefit plans by misrepresenting the amounts it paid providers on the plans' behalf. Blue Michigan included these misrepresentations in reports that it provided to the plan sponsors, titled "Provider Reimbursement Savings," "Provider Contract Savings," and "Value of Blue."[7] The court found that a reasonably diligent plan sponsor could not have discovered the fraud until Blue Michigan later disclosed accurate information. *Id.* at *47–51. But if Blue Michigan had paid providers according to a publicly available "filed rate," as it claims here, (Blue Michigan Br. 13–14 & n.23), it could not have defrauded the plan sponsors, who would have been able to

---

[7] The Provider Plaintiffs will be requesting reports such as these from all Defendants and are asking that all Defendants preserve any such reports.

7

compare the rates Blue Michigan paid providers with the filed rate. When one compares the findings in *Hi-Lex* with Blue Michigan's motion in this case, one must conclude either that Blue Michigan's fraud in *Hi-Lex* was worse than the court realized, or that Blue Michigan is trying to mislead this Court.

## CONCLUSION

Despite Blue Michigan's apparent belief to the contrary, "[t]here is no provision in the [Act] that allows Blue Cross to stifle competition." *U.S. v. Blue Michigan*, 809 F. Supp. 2d at 677. Because the limited review of the Commissioner under the Act does not include the reimbursement rates paid to providers or the expansive anticompetitive behavior alleged in the Provider Plaintiffs' Complaint, and because the filed rate doctrine does not bar the Provider Plaintiffs' claims, Blue Michigan's motion to dismiss should be denied.

Dated:  January 15, 2014                          Respectfully submitted,


*/s/ Edith M. Kallas*                                         */s/ Joe R. Whatley, Jr.*
Edith M. Kallas – ***Co-Lead Counsel***        Joe R. Whatley, Jr. – ***Co-Lead Counsel***
Henry C. Quillen                                              W. Tucker Brown
WHATLEY KALLAS, LLP                              WHATLEY KALLAS, LLP
380 Madison Avenue, 23rd Floor                   2001 Park Place North
New York, NY 10017                                      1000 Park Place Tower
Tel:  (212) 447-7060                                        Birmingham, AL 35203
Fax:  (800) 922-4851                                       Tel:  (205) 488-1200
Email:  ekallas@whatleykallas.com              Fax:  (800) 922-4851
            hquillen@whatleykallas.com            Email:  jwhatley@whatleykallas.com
                                                                                 tbrown@whatleykallas.com


Barry Alan Ragsdale – ***Plaintiffs' Liaison***     E. Kirk Wood, Jr. – ***Local Facilitating Counsel***
***Counsel and Discovery Liaison Counsel***      WOOD LAW FIRM LLC
SIROTE & PERMUTT P.C.                              P. O. Box 382434
P.O. Box 55727                                                Birmingham, AL 35238
Birmingham, AL 35255-5727                           Tel:  (205) 612-0243
Tel: (205) 930-5114                                          Fax:  (205) 705-1223
Fax: (205) 212-2932                                         Email:  ekirkwood1@bellsouth.net
Email: bragsdale@sirote.com

8

J. Mark White – *Litigation Committee*
Augusta S. Dowd – *Chair, Litigation Committee*
U.W. Clemon – *Plaintiffs' Steering Committee*
Linda G. Flippo – *Discovery Committee*
WHITE ARNOLD & DOWD, P.C.
The Massey Building
2025 Third Avenue North, Suite 500
Birmingham, AL 35203
Tel:  (205) 323-1888
Fax:  (205) 323-8907
Email:  uwclemon@whitearnolddowd.com
            adowd@whitearnolddowd.com
            mwhite@whitearnolddowd.com


Aaron S. Podhurst – *Plaintiffs' Steering Committee*
Peter Prieto – *Chair, Expert Committee*
PODHURST ORSECK, P.A.
25 West Flagler Street, Suite 800
Miami, FL 33130
Tel:  (305) 358-2800
Fax:  (305) 358-2382
Email:  apodhurst@podhurst.com
            pprieto@podhurst.com

Dennis C. Reich – *Chair, Damages Committee*
Debra B. Hayes – *Plaintiffs' Steering Committee*
REICH & BINSTOCK, LLP
4265 San Felipe, Suite 1000
Houston, TX 77027
Tel:  (713) 622-7271
Fax:  (713) 623-8724
Email:  dreich@rbfirm.net
            dhayes@dhayeslaw.com

Dennis Pantazis – *Plaintiffs' Steering Committee*
Brian Clark – *Discovery Committee*
WIGGINS CHILDS QUINN & PANTAZIS, LLC
The Kress Building
301 Nineteenth Street North
Birmingham, AL 35203
Tel:  (205) 314-0500
Fax:  (205) 254-1500
Email: dgp@wcqp.com
            bclark@wcqp.com

9

Nicholas B. Roth – *Chair, Discovery Committee*
Julia Smeds Roth – *Discovery Committee*
EYSTER KEY TUBB ROTH MIDDLETON
 & ADAMS, LLP
402 East Moulton Street
Decatur, AL 35601
Tel:  (256) 353-6761
Fax:  (256) 353-6767
Email: nroth@eysterkey.com
           jroth@eysterkey.com

Robert J. Axelrod – *Chair, Written Submissions Committee*
POMERANTZ LLP
600 Third Avenue, 20th Floor
New York, NY 10016
Tel:  (212) 661-1100
Fax:  (212) 661-8665
Email: rjaxelrod@pomlaw.com

Van Bunch – *Chair, Class Certification Committee*
BONNETT FAIRBOURN FRIEDMAN &
 BALINT, P.C.
2325 E. Camelback Road, Suite 300
Phoenix, AZ 85016
Tel:  (602) 274-1100
Fax:  (602) 274-1199
Email: vbunch@bffb.com

David A. Balto – *Expert Committee*
DAVID A. BALTO LAW OFFICES
1350 I Street, N.W., Suite 850
Washington, DC 20005
Tel:  (202) 789-5424
Fax:  (202) 589-1819
Email: david.balto@dcantitrustlaw.com

10

Peter H. Burke – ***Class Certification Committee***
Richard S. Frankowski – ***Discovery Committee***
BURKE HARVEY & FRANKOWSKI, LLC
One Highland Place
2151 Highland Avenue, Suite 120
Birmingham, AL 35205
Tel:  (888) 880-9046
Fax:  (205) 588-8671
Email: pburke@bhflegal.com
           rfrankowski@bhflegal.com

John C. Davis – ***Written Submissions Committee***
LAW OFFICE OF JOHN C. DAVIS
623 Beard Street
Tallahassee, FL 32303
Tel:  (850) 222-4770
Email: john@johndavislaw.net

Lynn W. Jinks, III – ***Expert Committee***
Christina D. Crow – ***Discovery Committee***
JINKS CROW & DICKSON, P.C.
219 North Prairie Street
Union Springs, AL 36089
Tel:  (334) 738-4225
Fax:  (334) 738-4229
Email: ljinks@jinkslaw.com
           ccrow@jinkslaw.com

11

**CERTIFICATE OF SERVICE**

I hereby certify that I have on this 15th day of January, 2014, electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Joe R. Whatley, Jr.*
Joe R. Whatley, Jr.
