IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| BLUE CROSS BLUE SHIELD ) | Case No. 2:13-cv-20000-RDP |
| ANTITRUST LITIGATION ) | (All Related Cases) |
| (MDL No. 2406) ) | |

# DISCOVERY MEMORANDUM NO. 1

Pursuant to Section D.2. of Discovery Order No. 1, the court held its first discovery status conference with the parties on January 22, 2015.[1] As required by the Discovery Order, the parties submitted to the court their respective letters identifying three discovery issues or questions ripe for discussion at the conference. Prior to convening the conference, the parties notified that court that they had agreed to defer discussion of one issue to a later date in order to give themselves additional time to meet and confer about the issue before bringing it to the court. The remaining two discovery issues can be summarized as following:

    1. In response to certain requests for production of documents propounded by the Plaintiffs and pursuant to the Defendants' Rule 26(a) obligation for initial disclosures, should Defendants be required to identify *all* structured data systems in order for Plaintiffs to determine which of the data systems may contain information relevant to some issue in this matter?; and

---

[1] Section D.2. provides that the undersigned magistrate judge will convene either a status telephone conference or an in-person status conference with the parties at 3:00 p.m. Central on the fourth Thursday of each month. At the request of the parties, the conference on January 22, 2015, was moved up to 1:30 p.m.

2. In response to certain requests for production of documents propounded by the Plaintiffs, should Defendants be required to provide responses for relevant information for the period of time prior to the earliest date covered by the statute of limitations, back to January 1, 1995.

At the outset, it is important to explore the proper purpose of the monthly discovery status conference. As the parties recognize, particularly in relation to these two described discovery issues, there is no pending motion to compel pursuant to Rule 37 before the court. Thus, the court at this point has not been asked to rule on a discovery dispute. Rather, the proper purpose of the discovery conference is to give the court the opportunity to confer with the parties on discovery issues and perhaps offer suggestions as to how some issues may be resolve short of formal motions. The suggestions by the court, however, cannot be regarded as traditional orders enforceable under the Federal Rules of Civil Procedure. For that reason, the court has denominated this filing as a Discovery Memorandum, not an Order. The purpose of the Memorandum is to memorialize the discussions that occurred and the suggestions the court offers the parties, but it should not be construed are entering any binding order or vesting any enforceable right or claim in any party.

As described above, the two discovery questions addressed at the conference are interrelated in the sense that both seek to set the boundaries for document production of structured (and perhaps unstructured) data systems by the

defendants. An earlier effort by the parties at setting such boundaries resulted in an agreed <u>Protocol for Data Systems Disclosures by All Parties</u>, dated February 27, 2014, which identified relevant areas of inquiry for data systems. Paragraph 6 of the agreed <u>Protocol</u> states in parts relevant to these questions, the following:

> Each Party will identify the computer systems, databases, and other data storage systems that are likely to contain Discoverable Information in these Proceedings. Without waiving any of their respective positions with respect to the proper scope of discovery or timeframe for preservation and discovery, each Party will provide information regarding the data systems listed in Subparagraphs (a)-(c) below for the time period of 2007 to 2013. If a Party is aware of any additional data system that (a) was used at any time during the 2004 through 2006 time period (b) would fall within the scope of paragraphs 6(c)(i)-(iii) if it had been used at any time during the 2007 through 2013 time period, (c) is reasonably accessible, and (d) relevant information within the scope of paragraphs 6(c)(i)-(iii) were not migrated into a successor system, then the Party will identify the system(s) and produce available information related to that system as called for in Paragraphs 7 and 8 below.
>     a. The email system(s) used by the Party for business communications.
>     b. The network and/or shared storage systems for unstructured data (e.g., Microsoft Office documents) that the disclosing Party believes most likely contain Discoverable Information.
>     c. The following structured data systems most likely to contain Discoverable Information in these Proceedings, to the extent such systems exist:
> > i. For Defendants, the principal structured data systems related to: actuarial data; logging of agreements between healthcare providers and Defendants and addenda to such agreements; claims data or other data showing payments to providers and subscribers for provider services; subscriber insurance coverage application data; logging of agreements between the Blues and addenda to such agreements; data showing payments to Defendants by

> subscribers; data showing geographic locations of subscribers; provider directories; financial data (meaning underwriting (rates, charges), costs, reserves, reserve requirements, profits/Medical Loss Ratio, market share reporting); data analyzing Defendants' market share, or the market supply of, or market demand for commercial health insurance or administrative services only contracts for the plan's members, data analyzing the market demand and supply for provider services.

*　*　*

(Internal footnotes omitted)

The court recognizes that, notwithstanding Paragraph 6 of the Protocol, Paragraph 3 explicitly provides that Paragraph 6 does not limit the right of any party to propound discovery requests broader in scope than described in Paragraph 6, as the Plaintiffs assert they have and for which they now seek responses. Those requests, Plaintiffs contend, seek identification of *all* data systems back to January 1, 1995, not just those data systems the Defendants themselves deem to be relevant from 2008 forward. Even so, it is court's belief that the Defendants' initial identification of *relevant* data systems is a good first step toward responding to the document requests. The burden of requiring Defendants to identify (and supply descriptive information about) *all* data systems seems unnecessarily time-consuming and expensive at this very early stage of discovery. For example, Blue Cross/Blue Shield of Alabama represented that, even after identifying some 700 data systems, requiring it to identify *all* data

4

systems would require it to examine, identify, and describe approximately 2,200 more systems, which it does not believe have any relevance to the areas of information described in Paragraph 6(c)(i).

Plaintiffs acknowledge that there are many data systems that may be maintained by Defendants that have nothing to do with the issues in this case. Data systems related to employee time-keeping, leave, and compensation and building security and environmental control are just two examples of data systems Plaintiffs admit they do not need. And this is precisely the problem Defendants face. Even though Plaintiffs admit that Defendants do not have to identify clearly irrelevant data systems, they continue to insist that Defendants identify *all* data systems. There appears to be no applicable standard by which Defendants can safely determine that certain data systems are not really sought by Plainitffs. How are they to make the assessment of which systems Plaintiffs might agree are not relevant, except by reference to the Protocol?

Also, to the extent that Defendants' identification of data systems attempts to comply with the initial disclosure requirements of Rule 26(a), Defendants need only identify those systems they "may use to support [their] … defenses."[2]

---

[2] One of the concerns expressed by Plaintiffs is that the Defendants will give their own expert witnesses access to more data systems than they identify to Plaintiffs for review by Plaintiffs' experts. This, they contend, will open Plaintiffs' experts to the criticism that their conclusions are based on incomplete data. Certainly, if Rule 26(a)(1)(A)(ii) means anything, Defendants *are* required to identify any and all data systems their own experts may rely upon "to

Fed.R.Civ.P. 26(a)(1)(A)(ii).  It is not correct to assert that the disclosure rule requires identification of any and all documents relevant to the controversy.  The court does not believe Rule 26(a) adds to Plaintiffs' argument for identification of *all* data systems.  While Plaintiffs are entitled to identification of many more data systems than simply those useful to the Defendants, it is not Rule 26(a) that does so.

For these reasons, the court believes that the initial identification of data systems by the Defendants should be tied to those categories of information described in the Protocol.  This seems to focus discovery efforts on the systems most likely to have relevant information.  Ultimately, if Plaintiffs can show that some other data systems are relevant to the issues in the case, it may be appropriate for discovery to expand beyond the Protocol categories.  But, as a first step, the better practice seems to be to limit data-system identification to those systems potentially containing information of the types described in Paragraph 6(c)(i) of the Protocol.

Having limited the initial identification of data systems to those containing information described in the Protocol, it is not unduly burdensome for the Defendants to identify such data systems in operation since January 1, 1995.  Although the court understands that a 20-year time span is unusually long,

---

support [their] … defenses."  If defense experts are given access to data in a system, Plaintiffs are entitled to identification of the data system.

Plaintiffs have pointed to historical events occurring in the middle 1990s that makes certain information from that time period potentially relevant to this case. For example, Plaintiffs pointed to the experience of the Ohio Blue in the mid- to late-1990s and how that experience may help shed light on the competitive impact of the Blue Association structure. Thus, the court believes it is not inappropriate for Defendants to identify data systems relevant to the descriptions contained in the <u>Protocol</u> back to January 1, 1995.

ENTERED this 6th day of February, 2015.

T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE