FILED
2015 Jun-04  AM 10:26
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| IN RE:  BLUE CROSS BLUE | ) | |
| SHIELD ANTITRUST | ) | **Master File No.: 2:13-CV-20000-RDP** |
| LITIGATION (MDL No.:  2406) | ) | |
| | ) | |
| | ) | This document relates to all cases. |
| | ) | |
| | ) | |

_____

## CASE MANAGEMENT AND DISCOVERY ORDER No. 8

Pursuant to Section II.D.2. of Discovery Order No. 1, the court held a status conference with the parties on May 28, 2015.  As required by the Discovery Order, the parties submitted to the court their respective letters identifying discovery issues or questions ripe for discussion at the conference.[1]

### 1.  *Time Periods Relevant to Plaintiffs' Requests for Production*

On January 20, 2015, the plaintiffs served on the defendants 159 requests for production of documents ("RFPs").  The parties have been unable to reach an agreement as to the appropriate time frame for which responsive documents should

---

[1]  The topic of special discovery regarding *in personam* jurisdiction and alleged pawn liability on the parts of NASCO and CHP was raised by the court during the conference.  The parties indicated to the court that no guidance is needed on those matters at this time.

be produced.  The parties agree that certain RFPs necessitate the production of responsive documents spanning the history of some of these defendant companies, unbound by time limitation.  The plaintiffs assert that, where unlimited document production is not appropriate, responsive documents should be produced dating back *at least* to 1995.  The defendants, however, argue that documents only are discoverable dating back to 2008 – the beginning of the limitation period four years before the first actions were filed.  During the "meet and confer" process, the defendants submitted to the plaintiffs a proposal grouping the RFPs into specific categories such as "plan-specific organizational documents" and "blue system organizational/historical documents," and setting a relevant production time period for each category.  According to the defendants, the plaintiffs have not yet offered a counter-proposal.

A careful review of Appendix A of the Hogan Lovells Defendants'[2] proposed response to the RFPs indicates that there are a number of RFPs that the defendants have agreed to respond to (subject to burdensomeness and *substantive* relevance objections) without regard to any time limitation.  These include RFP

---

[2]  Although Appendix A is identified as being part of the proposed response of the "Hogan Lovells Defendants," the defendants more broadly have suggested that this proposal is acceptable to all of them.  When the proposal was discussed at the discovery conference on May 28, no defendants objected or disclaimed that it did not reflect their views as well.

Nos. 4, 7-15, 22-23, 24-27[3], 30-34, 36-37, 48-49, 52, 121, and 157-159.[4]   In addition to these RFPs identified in Appendix A for which the defendants agree to response without regard to a time limitation, several others, including RFP Nos. 5, 38, 39, and 40, while nominally categorized as requiring a response only for a "relevant time period," seem to come within the types of documents defendants stated in their letter brief to the court that they have agreed to produce without a time limitation.  In the letter brief submitted to the court and to which Appendix A was attached, the defendants asserted the following:

> Defendants agreed to produce, subject to burden and scope objections, certain categories of documents for *an unlimited time period* --- the very categories that Plaintiffs claim lie at the heart of their claims, including: … (c) the creation of Blue Card and National Accounts; …. [Italics in original].

Thus, notwithstanding the contention in Appendix A that requests 5, 38, 39, and 40 should be subject only to a "relevant" timeframe, the letter brief takes a different

---

[3]   In Appendix A, under the category entitled "License agreements (including membership standards & guidelines)," defendants agreed to respond to RFP Nos. 24, 25, and 26 without regard to time limitations because they relate to standards and requirements for membership in BCBSA.  Also, RFP No. 27 relates to the historical membership in two particular BCBSA committees, which seems to fall within the Appendix A category entitled "Blue system organizational/historical documents," for which there is agreement for an unlimited timeframe.

[4]   Although Appendix A makes no representation with respect to RFP Nos. 157 and 158, these seem to fall within the unlimited timeframe identified for the Appendix A category entitled "Blue system organizational/historical documents," specifically those related to "Litigation or arbitration with BCBSA or another Blue plan" and "Communications with a state or federal regulator…."

tack and agrees to a response without a time limitation.  As to these 30 RFPs[5], therefore, there is no controversy and defendants may begin preparing their responses.

The appropriate timeframe for the remaining RFPs is in dispute.  Defendants contend that, with only very limited exceptions, they should be required to locate and produce only those responsive documents from 2008 and later, the time period corresponding to the statute of limitation.  Plaintiffs assert that there are relevant documents responsive to these requests much further back in time, even into the 1940s.  As a baseline, however, they have suggested a relevant time period back to 1995.[6]  Having reviewed all of the plaintiffs' RFPs, it is clear that the relevant timeframe varies from RFP to RFP.  Some may well require responsive documents back to 1995 or even longer, while others are more reasonably limited to the time period immediately before the statutory limitation period.  For example, RFPs requesting documents reflecting current revenues, current policy manuals, and current practices necessarily should be limited in timeframe, while documents

---

[5]  RFP Nos. 4, 7-15, 22-23, 24-27, 30-34, 36-37, 48-49, 52, 121, and 157-159, as well as 5, 38, 39, and 40.

[6]  Insofar as the plaintiffs argue that the court previously determined that 1995 and after was the proper relevant timeframe, the court's earlier order dealt simply with identifying potentially relevant data systems, not actual responsive documents and records. Identification of substantive documents, such as emails, memoranda, correspondence, meeting minutes, contracts, agreements, plans, and strategic research, requires a much more probing search and careful review for privilege issues, which may justify a shorter timeframe.

recording historical events with arguably continuing anti-competitive effects may be much older. Plaintiffs have not attempted to assign such relevant and reasonable time limitations to individual RFPs or categories of RFPs, but simply say that defendants should produce all responsive documents since 1995. The court believes the plaintiffs should more carefully define for each RFP the necessary timeframe for document production.

The plaintiffs, therefore, are DIRECTED to submit to the defendants, within twenty (20) days of this order, a proposal grouping the remaining requests for production of documents (i.e., those other than the ones identified herein as to which the defendants have agreed should have an unlimited timeframe) into categories identifying those RFPs for which: 1) documents dating back to 2005 are sufficiently responsive, 2) documents dating back to 1995 are sufficiently responsive, and 3) documents for which no time limitations should apply. Within twenty (20) days of the plaintiffs' proposal, the parties SHALL submit to the court a joint proposal indicating any requests for production for which an agreement regarding the appropriate document time period could not be reached.

### 2. Blue Cross Blue Shield Association Chief Medical Officers

The plaintiffs wish to designate BCBSA's current and immediate-past Chief Medical Officers ("CMO") as production custodians. Discovery Order No. 1

discusses production custodians pursuant to the discovery of selected unstructured data, stating that "[t]he specific number of custodians for each party . . . will be negotiated, taking into consideration the specific party producing the custodian." (Discovery Order No. 1, section III.C.2.).  It appears that the parties have agreed on all other production custodians.

The plaintiffs argue that CMOs are involved in "virtually every aspect of the Blues' relationship with health care providers" and that CMOs are instrumental in setting medical policies that affect the extent to which providers are reimbursed for certain medical procedures.  The defendants dispute the assertion, indicating that the medical policies developed by the CMO and his or her staff merely are models that consolidate research and suggest whether certain medical technologies or procedures are medically necessary.  These models are not binding on any Blue plan, and the individual plans are free to accept or reject the models at will.  The defendants further claim that, even if the models are accepted by a Blue plan, the models have no impact on the reimbursement rates of the plan.  However, the argument that the CMO has no influence beyond model medical policies is unconvincing.  The plaintiffs have adequately asserted that information held by the current and immediate past CMO is "relevant to [the plaintiffs'] claims."  Fed. R. Civ. P. 26(b)(1).  Accordingly, the parties are DIRECTED to designate the current

6

and immediate-past CMOs for the Blue Cross Blue Shield Association as production custodians for purposes of unstructured data discovery.

### 3. Discovery Limits

Finally, the parties are ORDERED to adhere to the following discovery limits, subject to alteration by court order for good cause:

- Interrogatories: 100 per side;

- Requests for production:
    - Given that the plaintiffs already have propounded 159 requests for production of documents, plaintiffs must seek leave of the court to propound additional RFPs,
    - Defendants shall have 100 requests for production;

- Requests for admission:
    - To the extent requests for admission serve the *sole* purpose of authenticating exhibits, the court imposes no limit,
    - To the extent requests seek admissions regarding the merits, facts, or substance of the case, the parties are limited to 100 per side;

- Depositions: 850 hours per side, not to exceed 100 depositions per side.[7]

DONE this 4th day of June, 2015.

T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE

---

[7] The discovery limitations set forth herein apply only to factual discovery. Limits for expert discovery shall be set at a later time pursuant to Section VI of Discovery Order No. 1.

7