FILED
2015 Nov-03 PM 02:46
U.S. DISTRICT COURT
N.D. OF ALABAMA

1

```
 1                UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF ALABAMA
 2                    SOUTHERN DIVISION

 3

 4   IN RE:

 5   BlUE CROSS BLUE SHIELD          2:13-20000-RDP

 6   ANTITRUST LITIGATION,           SEPTEMBER 17, 2015

 7   MDL 2406.                       BIRMINGHAM, ALABAMA

 8   * * * * * * * * * * * *

 9       TRANSCRIPT OF MONTHLY DISCOVERY/STATUS CONFERENCE
            BEFORE THE HONORABLE T. MICHAEL PUTNAM,
10                UNITED STATES MAGISTRATE JUDGE

11   APPEARANCES:
12

13   FOR BLUE CROSS BLUE SHIELD
14   ANTITRUST LITIGATION MDL 2406:
15   ANDREW PHILLIP CAMPBELL, ESQ.
16   CAMPBELL, GUIN, WILLIAMS, GUY AND
17   GIDIERE, LLC
18   BIRMINGHAM, ALABAMA
19

20   SPECIAL MASTER:
21   EDGAR C. GENTLE, III
22   GENTLE, TURNER, SEXTON & HARBISON
23   HOOVER, ALABAMA
24

25
```

```
 1  APPEARANCES (CONTINUED)

 2

 3  BARRY RAGSDALE, ESQ.

 4  CHRIS HELLUMS, ESQ.

 5  TUCKER BROWN, ESQ.

 6  KIM WEST, ESQ.

 7  TODD STENERSON, ESQ.

 8  JASON GOURLEY, ESQ.

 9  MEGAN JONES, ESQ.

10  JOSEPH WEBSTER, ESQ.

11

12  COURT REPORTER:

13  LINDY M. FULLER, RMR, CRR

14  BIRMINGHAM, ALABAMA  35203

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              P R O C E E D I N G S
 2            (IN OPEN COURT, 10:07 A.M.)
 3            THE CLERK:  PLEASE REMAIN SEATED AND
 4    COME TO ORDER.
 5            THE COURT:  GOOD MORNING.  THIS IS IN
 6    THE IN RE BLUE CROSS BLUE SHIELD ANTITRUST
 7    LITIGATION, MDL NUMBER 2406, AND THAT'S MASTER
 8    FILE NUMBER HERE IN THE NORTHERN DISTRICT 13-CV-
 9    20000-RDP.
10            AND WE HAVE SCHEDULED FOR HEARING THIS
11    MORNING A MOTION FOR PROTECTIVE ORDER BY BLUE
12    CROSS BLUE SHIELD OF MICHIGAN AS WELL AS A MOTION
13    TO COMPEL PRODUCTION OF DOCUMENTS THAT THEY BOTH
14    MOTIONS RELATE TO THE SAME ISSUE; THAT IS,
15    DOCUMENT MADE BY THE PLAINTIFFS ARISING OUT OF
16    THE NOW-COMPLETED BLUE CROSS BLUE SHIELD AETNA
17    LITIGATION IN MICHIGAN.
18            I AM GOING TO START, BECAUSE THE ISSUE
19    FIRST GOT STARTED WITH THE PROTECTIVE ORDER, I
20    GUESS I WILL START WITH BLUE CROSS BLUE SHIELD
21    MICHIGAN'S ARGUMENT ON THAT PROTECTIVE ORDER.
22            MS. WEST:  GOOD MORNING, YOUR HONOR.
23    MR. CAMPBELL WILL BE ADDRESSING THAT MOTION.
24            THE COURT:  GOOD MORNING.  THANK YOU.
25            MR. CAMPBELL:  YOUR HONOR, MAY IT
```

1   PLEASE THE COURT, WE ALSO HAVE TODD STENERSON,

2   WHO IS LEAD COUNSEL IN THE AETNA CASE, AND JASON

3   GOURLEY HERE AS WELL, YOUR HONOR, AND THEY MAY

4   SPEAK AS WELL.

5          YOUR HONOR, THE ISSUES OVERLAP AND ARE

6   INTERRELATED BETWEEN THE MOTION TO COMPEL AND THE

7   MOTION FOR PROTECTIVE ORDER.  BUT WE FILED A

8   MOTION FOR PROTECTIVE ORDER, YOUR HONOR, BECAUSE,

9   RATHER THAN STREAMLINING THIS CASE AND DISCOVERY

10  PROCESS IN THE CASE, WE STRONGLY BELIEVE THAT OUR

11  BRIEF SET THIS OUT, YOUR HONOR, WHICH THE COURT

12  HAS, THAT ALLOWING OR GRANTING AN ORDER

13  COMPELLING ANY PORTION OF THESE DOCUMENTS, A

14  TOTAL OF 11 MILLION DOCUMENTS WHICH THE

15  PLAINTIFFS ULTIMATELY SEEK, AND THEY MADE NO

16  BONES ABOUT THAT.  OR THE SO-CALLED STREAMLINED

17  DOCUMENTS, WHICH, AS I WILL SHOW THE COURT IN A

18  SECOND, REPRESENTS HUNDREDS OF THOUSANDS OF

19  DOCUMENTS, WOULD HAVE POSED AN ONEROUS BURDEN ON

20  BLUE CROSS TO THE POINT OF BEING PUNITIVE, YOUR

21  HONOR.  IT WOULD BASICALLY NOT STREAMLINE

22  DISCOVERY, IT WOULD FORCE US TO REDACT BETWEEN

23  CONFIDENTIAL AND NON-CONFIDENTIAL MATTERS AND RUN

24  AFOUL OF PROTECTIVE ORDERS OTHERWISE.  AND, IN

25  EFFECT, HAVE BLUE CROSS REDO THE DISCOVERY

1    PROCESS WITHOUT ANY COUNTER VEILING BENEFIT.

2            PART OF THE PURPOSE OF STREAMLINING IS

3    RECIPROCITY, THERE IS SOME WAY TO SAVE ONE OF THE

4    PARTIES SOME AMOUNT OF EXPENSE OR TIME IN

5    RESPONDING.  THIS REQUIRES US TO DO IT TWICE.

6    AND IT IS NOTEWORTHY, YOUR HONOR, THAT RIGHT NOW,

7    MANY OF THE CATEGORIES BEING SOUGHT ARE SUBJECT

8    TO THE REQUEST FOR PRODUCTION THAT WERE FILED IN

9    JANUARY AND SUBJECT TO NEGOTIATIONS OVER SCOPE,

10   THOSE DOCUMENTS WILL BE PRODUCED.

11            THE COURT:  I GUESS I AM NOT

12   UNDERSTANDING WHY, IF YOU GO THROUGH A CERTAIN --

13   SMALLER AND SMALLER MAY BE A RELEVANT TERM

14   HERE -- BUT YOU GO THROUGH A SMALLER SUBSET OF

15   DOCUMENTS AND WHATEVER YOU DO WITH THOSE, REDACT

16   THEM, WHATEVER YOU DO, AND PRODUCE THOSE, AND

17   THEN YOU MOVE ONTO THE REMAINING DOCUMENTS, WHY

18   DO YOU HAVE TO REDO THE EARLIER SET OF DOCUMENTS?

19            MR. CAMPBELL:  WELL, THAT'S THE

20   PROBLEM, YOUR HONOR, BECAUSE THE AETNA LITIGATION

21   DOESN'T COVER THE WATERFRONT OF THE DOCUMENTS

22   REQUESTED HERE.  AND MANY OF THE AETNA DOCUMENTS

23   HAVE NOTHING TO DO WITH THIS CASE BECAUSE AETNA,

24   THE COURT IS AWARE FROM READING THE COMPLAINT,

25   BASICALLY INVOLVED AN ATTACK ON MFNs IN THE STATE

1    OF MICHIGAN WITH ABOUT 132 MICHIGAN HOSPITALS.

2    AND THERE IS NO ALLEGATIONS OF TERRITORY

3    RESTRAINTS, THERE ARE NO ALLEGATIONS OF PRICE

4    FIXING.  IN FACT, THE THEORY THERE WAS THAT

5    BECAUSE OF THESE MFNs IN THE STATE OF MICHIGAN,

6    MICHIGAN HOSPITALS WERE CHARGING MORE TO AETNA.

7    THE CLAIM WAS NOT BROUGHT BY A PROVIDER OR A

8    SUBSCRIBER, IT'S BROUGHT BY A COMPETITOR.

9         SO WHAT WE HAVE, YOUR HONOR, IS A

10   SITUATION WHERE, IN THIS CASE, IF YOU LOOK AT THE

11   REQUESTS, WHICH ARE SPECIFICALLY 68, 90, 136,

12   157, 80, AND 71, OF THEIR REQUESTS FOR

13   PRODUCTION, THEY HIT THE SAME DOCUMENTS THAT ARE

14   RELEVANT IN THIS CASE, WE ARE GOING TO RESPOND TO

15   AND REQUEST.  BUT WHAT THEY ARE SEEKING OR

16   REQUIRE US TO DO, YOUR HONOR, IS GO OFF ON A

17   TANGENT AND JUST PALL MALL PRODUCE EXHIBITS.  FOR

18   EXAMPLE, ON LOSS PROFITS IN MICHIGAN, WHICH HAVE

19   NOTHING TO DO WITH THIS CASE AND INVOLVE A

20   COMPETITOR'S CLAIM OF LOST PROFITS BASED ON THESE

21   MFNs.

22        SO, IT'S APPLES AND ORANGES.  AND, YOUR

23   HONOR, BEFORE WE GET TO THE ELEPHANT IN THE ROOM,

24   THE PROTECTIVE ORDER, I WILL SAY THAT COURTS

25   UNIFORMLY AROUND THIS COUNTRY HAVE REJECTED THIS

1    IDEA OF A LITIGANT COMING IN, SAYING GIVE ME THIS

2    FILE AND ALL THE FILES OR THE EXPERT LIST FROM

3    ANOTHER PIECE OF LITIGATION.

4            THE CASE WE CITED INVOLVING THE TYSON

5    FOOD CASE IS VERY CLEAR, YOUR HONOR, AS WELL AS

6    THE OTHER CASE CASES WE CITED.  THERE ARE SIX OR

7    SEVEN OF THEM:  CHEN, PAYNE --

8            THE COURT REPORTER:  SLOW DOWN, PLEASE.

9            MR. CAMPBELL: -- I'M SORRY.  MURPHY.

10   MAGISTRATE JUDGE KELLY'S DECISION IN THE KELLY

11   CASE -- OR MAGISTRATE JUDGE CHAPPELL'S IN THE

12   KELLY CASE ALL STAND FOR THE PROPOSITION IF YOU

13   HAVE OUTSTANDING REQUESTS FOR PRODUCTION IN THIS

14   CASE THAT GO AFTER THOSE MATERIALS, YOU NEED TO

15   DO THAT.  YOU CANNOT COME IN AND REQUEST PALL

16   MALL A FILE, EVEN THOUGH IT'S A REDUCED FILE FROM

17   A PRIOR CASE.  THERE IS JUST NO BASIS FOR DOING

18   THAT.  IT'S OVER BROAD, ITS ONEROUS ON THE

19   DEFENDANT BECAUSE THE DEFENDANT STILL HAS TO

20   RESPOND TO THESE REQUESTS FOR PRODUCTION.

21           AND, YOUR HONOR, IF I MAY APPROACH, I

22   WOULD LIKE TO HAND THE COURT A CHART OF WHAT WE

23   ARE DEALING WITH --

24           THE COURT:  SURE?

25           MR. CAMPBELL:  -- IN TERMS OF THE

```
1    PROTECTIVE ORDERS AND THE CONFIDENTIALITY.
2            THIS WAS PREPARED AFTER SPENDING MANY
3    HOURS GOING THROUGH WHAT IS REQUESTED AS A,
4    QUOTE, STREAMLINED VERSION BEFORE YOU TODAY.  AND
5    I WOULD STATE THAT THE PLAINTIFFS, YOUR HONOR,
6    ARE SAYING THEY WANT 11 MILLION DOCUMENTS.  THEY
7    ARE JUST SEEKING ABOUT THREE MILLION TODAY -- NOT
8    THREE MILLION, SEVERAL HUNDRED THOUSAND TODAY
9    PUBLIC FILES, TRIAL EXHIBITS, AND THE DEPOSITION
10   TRANSCRIPTS.
11           FOR EXAMPLE, YOUR HONOR, IF YOU LOOK
12   AT THE TOTAL TRIAL EXHIBITS, THERE ARE 6,926 ON
13   THE PRELIMINARY EXHIBIT LIST IN THE AETNA CASE.
14   THE FINAL EXHIBIT LIST WAS NEVER EXCHANGED, YOUR
15   HONOR.  SO WE DON'T KNOW WHAT THAT WOULD HAVE
16   BEEN.  BUT THE PRELIMINARY EXHIBIT LIST OF THAT
17   6,926 DOCUMENTS -- 6,400 DOCUMENTS ARE PROTECTED
18   BY THE PROTECTIVE ORDER, WHICH IS STILL IN
19   EXISTENCE.
20           AND, YOUR HONOR, BY THE WAY, THE
21   CONSOLIDATING CASE OF SHANE GROUP IS STILL OPEN.
22   IT'S ON APPEAL, AND OPT-OUTS IN THAT CASE HAS
23   FILED ANOTHER CASE AGAINST BLUE CROSS, SO THAT
24   CASE IS PREPARING THESE PRELIMINARY ORDERS AS THE
25   TUCKER CASE AND OTHER CASES WE HAVE CITED FOR THE
```

1    COURT REMAIN INTACT AND APPLICABLE.  AND THE

2    PLAINTIFFS HAVE NOT ADDRESSED THEM EXCEPT TO THE

3    EXTENT OF AETNA, THEY SAY AETNA'S FREE, HAS

4    CONSENTED TO PRODUCTION.

5         WE HAVE BEEN IN TOUCH WITH AETNA.

6    THAT'S NOT EXACTLY WHAT AETNA HAYES SAID.  AETNA

7    HAS SAID, WITH RESPECT TO EXHIBITS, WE, OUR

8    EXHIBITS THAT WE PRODUCED THAT NOBODY ELSE IS

9    INVOLVED WITH, WE MIGHT AGREE TO THAT, AND

10   THAT'S, AS FAR AS THAT'S GONE.

11        I WANT TO MAKE A POINT ABOUT THAT,

12   YOUR HONOR.  THIS IS PRACTICALITY POINT NOT

13   ADDRESSED IN THE BRIEFS.  PLAINTIFFS' COUNSEL IN

14   THIS CASE WERE ALSO PLAINTIFFS' COUNSEL IN THAT

15   CASE.  THAT ARGUMENT THAT THEY NEED TO DISCOVER

16   OUR STRATEGIES IN THAT CASE, WHAT OUR ROAD MAP

17   WAS, THEY KNOW THAT ALREADY.  GUSTAVSON FIRM,

18   WHICH IS INVOLVED IN THIS CASE, THE SUMMER

19   SCHWARTZ FIRM, WHICH IS PLAINTIFF'S COUNSEL IN

20   THIS CASE, THEY WERE PLAINTIFF'S COUNSEL IN

21   MICHIGAN.  THEY HAVE, NUMBER ONE, THEY ARE

22   FAMILIAR WITH WHAT THE STRATEGY WAS, AND THAT'S A

23   RED HERRING HERE BECAUSE THEY WERE IN THAT CASE.

24   THEY NEGOTIATED, IN FACT, THE GUSTAVSON FIRM

25   NEGOTIATED THE SHANE SETTLEMENT.  SO THE ARGUMENT

1   THEY NEED TO KNOW OUR STRATEGY IS A RED HERRING.

2   THEY KNOW THAT ALREADY BECAUSE THEY ARE IN THIS

3   CASE.

4            SECONDLY, THEIR ARGUMENT, WELL, THE

5   BURDEN IS ON BLUE CROSS TO GO TO ALL OF THOSE

6   THIRD PARTIES AND GET THEIR CONSENT.  THEY KNOW

7   WHO ALL THOSE THIRD PARTIES ARE; THEY GOT

8   SUBPOENAS.  COUNSEL IN THIS CASE SAT THROUGH THE

9   DEPOSITIONS.  THEY ARE FAMILIAR WITH THOSE

10  SUBPOENAS.  THEY ARE CAPABLE OF SUBPOENAING THOSE

11  THIRD PARTIES AND THE BURDEN IS NOT ON BLUE CROSS

12  UNDER THE CASE LAW TO GO THROUGH AND FERRET OUT

13  AND TRY TO DO CONSENT FOR THEM.  THE BURDEN IS ON

14  THEM TO GET CONSENT OR TO FILE A SUBPOENA.

15           BUT, YOUR HONOR, I HAVE CITED THE

16  LAW -- IN FACT, THE RULE AROUND THE COUNTRY IS

17  THAT, I THINK, THE QUICKEST WAY FOR THEM TO DEAL

18  WITH THESE DOCUMENTS THAT ARE PROTECTED, AS THE

19  COURT CAN SEE, IT'S ALMOST ALL OF THE

20  DEPOSITIONS, 199 OUT OF 211, EITHER COMPLETELY

21  SEALED PROTECTIVE ORDERS OR CONTAINED

22  CONFIDENTIAL MATERIAL, ALMOST ALL OF THEM EXCEPT

23  FOR 500 TRIAL EXHIBITS, EVEN PUBLIC FILINGS, HAVE

24  ALMOST 200 UNDER SEAL OR UNDER PROTECTIVE ORDERS.

25  THE QUICKEST WAY FOR THEM TO GET RELIEF FROM

1    THAT, IF THEY ARE SERIOUS, YOUR HONOR, IS TO FILE

2    A MOTION TO INTERVENE IN FRONT OF JUDGE DENISE

3    HOOD.

4              I HAVE CITED TO YOU THE SNYDER CASE IN

5    FLORIDA, YOUR HONOR, A CASE I WAS INVOLVED IN,

6    WITH -- BILL PRYOR WAS THE LEAD PLAINTIFF'S

7    LAWYER AT THAT TIME IN THAT CASE, JUDGE SNYDER'S,

8    AND THE BUTTERWORTH CASE HELD THEM TO PROPER

9    MEANS OF TRYING TO GO AROUND A PROTECTIVE ORDER

10   ENTERED IN ANOTHER JURISDICTION, IN THIS CASE,

11   MICHIGAN, BY JUDGE HOOD, IS TO FILE A MOTION TO

12   INTERVENE THERE.

13             THE TUCKER CASE SAYS THAT, THE SSL

14   CASE SAYS THAT, THE MIDI'S GAS CASE SAYS THAT.

15   THAT IS THE WAY TO DO IT.  YOU FILE A MOTION TO

16   INTERVENE UNDER RULE 24-A WITH THE MICHIGAN COURT

17   AND YOU SEEK TO HAVE THE PROTECTIVE ORDER

18   MODIFIED.  NO ONE HAS ATTEMPTED THAT REMEDY IN

19   THIS CASE.

20             NOW, YOUR HONOR, I WILL SAY THIS.  THE

21   DEFENDANTS ARE NOT HERE TO DELAY DISCOVERY.  WE

22   ARE NOT HERE TO THROW DOWN A MARKER AND SAY WE

23   WANT TO DELAY.  THE SUGGESTION IN THE BRIEF THAT

24   WE ARE TRYING TO HIDE THE BALL AND AVOID OUR

25   OBLIGATIONS IS OFFENSIVE TO ME.  WE ARE FULLY

1    GOING TO REPLY WITH THE REQUESTS OUTSTANDING.

2            IN FACT, YOUR HONOR, IF YOU LOOK AT

3    REQUEST NUMBER 68, IT ASKS FOR ALL DOCUMENTS

4    RELATING TO PRICING, MARKET POWER, MARKET ENTRY.

5    WE ARE GOING TO RESPOND TO THAT.  THAT'S GOING TO

6    COVER THE DOCUMENTS THEY WANT.  RULES, REQUEST

7    NUMBER 71, COMPETITION WITH OTHER COMPANIES.

8    NUMBER 80, AND NUMBER 93, ALL DOCUMENTS RELATING

9    TO GO MFNs.  THE PROBLEM WITH SAYING YOU CAN DO

10   IT THAT WAY LIKE THEY ARE TRYING TO DO NOW, GET

11   ALL THE AETNA STUFF AND GO THIS ROUTE, TOO, IS

12   THAT IS TERRIBLY -- THESE CASES HAVE POINTED OUT,

13   LIKE THE EDMONDSON CASE INVOLVING TYSON FOODS

14   ONLY INVOLVE 50,000 DOCUMENTS FROM EARLIER

15   LITIGATION.  KELLY ONLY INVOLVED THE EXPERT

16   REPORTS.  BUT IN THOSE CASES, THE COURTS NOTED,

17   YOU HAVE OUTSTANDING REQUEST FOR PRODUCTION THAT

18   GO TO THESE ISSUES.  YOU FOLLOW THAT COURSE.

19   LET'S DON'T GIVE UP THE RULES OF DISCOVERY IN

20   ORDER TO HAVE EXPEDIENCY.

21            THE COURT:  WELL, ALONG THAT LINE,

22   THOUGH WE HAVE A MOTION TO COMPEL PENDING, WHY

23   SHOULDN'T I JUST ORDER BLUE CROSS MICHIGAN TO

24   RESPOND TO THOSE QUESTIONS?  YOU HAVE GOT 20 DAYS

25   TO RESPOND.  WHY SHOULDN'T I DO THAT?

1           MR. CAMPBELL:  WELL, YOUR HONOR, THE

2    REQUESTS OUTSTANDING ARE BEING RESPONDED TO --

3           THE COURT:  I KNOW.  BUT THE REQUEST

4    HAS BEEN OUTSTANDING SINCE JANUARY.

5           MR. CAMPBELL:  -- AS I UNDERSTAND IT.

6           THE COURT:  NOW, IT'S BEEN TEED UP.

7    THERE IS A MOTION TO COMPEL THAT'S BEEN FILED BY

8    THE PLAINTIFF.  WHY DON'T I JUST COMPEL YOU TO

9    RESPOND?

10           MR. CAMPBELL:  HASN'T BEEN A MOTION TO

11    COMPEL SIGNED, YOUR HONOR, ON THOSE REQUESTS THAT

12    I AM GOING THROUGH BECAUSE THAT'S STILL BEING

13    NEGOTIATED IN TERMS OF SCOPE.  BUT THE COURT

14    ENTERED AN ORDER THAT DISCOVERY WILL BE COMPLETED

15    BY JULY.  WHAT THEY ARE MOVING TO COMPEL YOU ON

16    IS AN INFORMAL REQUEST WHICH THEY SAY IS AN

17    EXTENSION OF 157, WHICH WE DISAGREE WITH, WHICH

18    BASICALLY IS FOR ALL THE AETNA LITIGATION

19    MATERIALS.  IRREGARDLESS OF WHETHER THEY FIT

20    WITHIN THESE REQUESTS OR NOT.  ALL 11 MILLION

21    DOLLARS, ALL 11 MILLION AETNA FILES.

22           NOW, THEY HAVE REDUCED IT TO THE

23    EXHIBITS, EXPERT REPORTS, DEPOSITIONS.  THE

24    PROBLEM WITH THAT, YOUR HONOR, IN OUR VIEW, IS

25    RELEVANCY.  IT'S BASICALLY NOT GETTING TO WHAT'S

1   RELEVANT IN THIS CASE.  IT'S GOING TO BASICALLY

2   REQUIRE US TO PRODUCE DOCUMENTS THAT HAVE NO

3   RELEVANCE BECAUSE THAT IS A TOTALLY DIFFERENT

4   CASE TO THIS CASE.

5          AND I WOULD ADD, YOUR HONOR, THERE IS

6   NO CLAIM IN THIS CASE RELATED TO FMNS (SIC) AS

7   FAR AS MICHIGAN IS CONCERNED, THERE ARE TWO LINES

8   THE PROVIDERS COMPLAINT ABOUT IT.  THERE IS NO

9   ARGUMENT THAT OUR MFNS IN MICHIGAN IN ANY WAY TO

10  RESTRICT COMMERCE OR TO ALLOCATE TERRITORY

11  OUTSIDE OF MICHIGAN.  SO IT'S A RELEVANCE --

12         THE COURT:  THEY WERE BARRIERS TO

13  COMPETITION, THOUGH.  THAT WAS ONE OF SEVERAL

14  THINGS THAT WERE BARRIERS TO COMPETITION.

15         MR. CAMPBELL:  THEY SAY THAT, YOUR

16  HONOR, BUT THEY HAVE ALSO REQUESTED THAT IN THE

17  JANUARY REQUESTS, IN FACT, REQUEST NUMBER 68,

18  WHICH WE HAVE NOT HAD AN OPPORTUNITY TO RESPOND

19  TO.  AND WE ARE GOING TO PRODUCE THOSE DOCUMENTS.

20  AND YOUR HONOR --

21         THE COURT:  I UNDERSTAND THERE HAS BEEN

22  LOTS OF MEET AND CONFERS, MEET AND CONFERS, AND

23  DISCUSSIONS.  BUT THOSE REQUESTS WENT OUT IN

24  JANUARY.  WE ARE NOW IN SEPTEMBER, NINE MONTHS

25  LATER.  I AM JUST NOT REALLY SYMPATHETIC TO THE

1    NOTION THAT YOU HAVEN'T HAD AN OPPORTUNITY TO

2    RESPOND TO THOSE REQUESTS FOR PRODUCTION.  IT'S

3    BEEN NINE MONTHS.

4              MR. CAMPBELL:  YOUR HONOR, I AM NOT

5    SAYING WE HAVEN'T RESPONDED.  I THINK THE, WE ARE

6    BASICALLY GATHERING THOSE DOCUMENTS TO PRODUCE

7    NOW.  BUT IT'S NOT A SHORTCUT TO REQUIRE US TO

8    START OVER IN MICHIGAN AND VIOLATE PROTECTIVE

9    ORDER TO TRY TO PULL THE SAME DOCUMENTS.  I MEAN,

10   THE PROBLEM IS THOSE DOCUMENTS IN MICHIGAN,

11   LARGELY, MANY OF THEM ARE IRRELEVANT.  FOR

12   EXAMPLE, THE EXPERT'S TESTIMONY.

13             AND I UNDERSTAND THE COURTS

14   FRUSTRATION, YOUR HONOR, AND WE ARE UNDER A

15   DEADLINE TO PRODUCE THOSE DOCUMENTS AND WE ARE

16   GATHERING THEM NOW.  WE ARE SPENDING, MR. GOURLEY

17   CAN TELL YOU THIS, FULL TIME, PULLING THOSE

18   DOCUMENTS AND PRODUCING THEM.

19             BUT, YOUR HONOR, TO SHORTCUT THE RULES

20   AND SIMPLY SAY YOU GET A FILE WE JUST COMPLETED

21   WHEN IT DOESN'T INVOLVE THE ISSUES THAT ARE

22   INVOLVED IN THIS CASE IN TERMS OF BARRIER ENTRY,

23   JUDGE, THERE ARE SOME DOCUMENTS THERE THAT ARE

24   CLEARLY RELEVANT AND GOING TO BE PRODUCED IN THIS

25   CASE.  BUT THAT DOESN'T SOLVE THE ISSUES WE HAVE

1    IN FRONT OF US TODAY DEALING WITH PRODUCING

2    LARGELY CONFIDENTIAL DOCUMENTS PROTECTED UNDER A

3    PROTECTIVE ORDER.  FRANKLY, IF THERE IS A CONSENT

4    FROM THE THIRD PARTIES, IT'S NOT A PROBLEM.  THE

5    BURDEN'S NOT ON US TO GET THAT UNDER THE LAW.

6    AND THEY REPRESENT THOSE PEOPLE.  MANY OF THEM,

7    THOSE INSTITUTIONS IN THIS CASE, THE PROVIDER

8    HOSPITALS.  THEIR LAWYERS ARE LAWYERS IN THOSE

9    CASES.

10                  THE COURT:  IF THEY WERE TO GO TO AETNA

11   AND VARIOUS OTHER THIRD PARTIES AND GET THOSE

12   PARTIES TO SIGN SOMETHING SAYING WE CONSENT TO

13   ALLOW BLUE CROSS MICHIGAN TO PRODUCE, SUBJECT TO

14   THE PROTECTIVE ORDER IN THE NORTHERN DISTRICT OF

15   ALABAMA, BECAUSE THERE IS A PROTECTIVE ORDER HERE

16   AS WELL --

17                  MR. CAMPBELL: YES, SIR.

18                  THE COURT:  -- WE ALLOW BLUE CROSS OF

19   MICHIGAN TO PRODUCE THOSE DOCUMENTS TO THE

20   PLAINTIFF.  THAT SOLVES YOUR, AT LEAST YOUR

21   PROTECTIVE ORDER PROBLEM?

22                  MR. CAMPBELL:  RIGHT.

23                  THE COURT:  MAYBE IT DOESN'T SOLVE THE

24   RELEVANT --

25                  MR. CAMPBELL:  DOESN'T SOLVE THE

1     RELEVANCE ISSUE.  BUT THAT'S WHY I SAID AT THE

2     LAST HEARING, WE ARE PUTTING THE CART BEFORE THE

3     HORSE HERE, YOUR HONOR.

4              ONE, IF THE COURT IS FRUSTRATED ABOUT

5     THE SLOWNESS IN US RESPONDING, THE PROCESS WOULD

6     BE TO FILE A MOTION TO INTERVENE WHICH COVERS THE

7     WHOLE WATERFRONT WITH JUDGE HOOD, WHICH CAN BE

8     DONE TOMORROW OR THE NEXT DAY, AND SHE WOULD

9     PROBABLY EXTRADITE A HEARING ON IT.  OR GO TO

10    THOSE THIRD PARTIES, MANY OF WHOM -- THEY KNOW

11    ALL OF THEM.  AND, FRANKLY, BECAUSE THEY WERE IN

12    THE MICHIGAN CASE, BOTH THE AETNA CASE AND THE

13    SHANE CASE, OR, SECONDLY -- SECONDLY, GET THEIR

14    CONSENTS OR SUBPOENA THEM.  THEY CAN SUBPOENA

15    THOSE THIRD PARTIES.

16              I MEAN, THIS IS NOT, THIS IS NOT A

17    DIFFICULT TASK FROM THE PLAINTIFFS, YOUR HONOR,

18    FROM THAT STANDPOINT.  THEY CAN EITHER GET

19    CONSENT OR SUBPOENA THEM.  THEY SAY THEY HAVE

20    CONSENT FROM AETNA.  WE ARE GETTING CONFLICTING

21    SIGNALS FROM AETNA BUT NOBODY HAS SEEN ANYTHING

22    IN WRITING.  BUT AS FAR AS BLUE CROSS DOCUMENTS,

23    YOUR HONOR, MANY OF THOSE, AND I WILL BE HONEST

24    WITH THE COURT, MANY OF THOSE ARE, THAT BLUE

25    CROSS DEEMS CONFIDENTIAL, ARE CORRESPONDENCE AND

1    AGREEMENTS WITH THE HOSPITALS, 132 HOSPITALS IN

2    MICHIGAN.  THE HOSPITALS IN THAT CASE RAISED CANE

3    THROUGHOUT THAT CASE BECAUSE THEY DIDN'T WANT

4    THEIR PRICING AND THEIR RATES INFORMATION

5    DISCLOSED.

6              NOW THEIR OWN -- THEY WERE IN BLUE

7    CROSS'S PRELIMINARY EXHIBIT LIST IN THAT CASE AND

8    THEY WERE ON BLUE CROSS, TO SOME EXTENT, THE

9    DOCUMENTS BLUE CROSS PRESENTED.  THE HOSPITALS

10   WERE AUDIBLY OPPOSED, YOUR HONOR.  AND WE ARE

11   ASKING, FORGET CONSENT FROM THE HOSPITALS,

12   SUBPOENA FROM THE HOSPITALS, AND WE WILL COMPLY

13   TO THE EXTENT IT'S RELEVANT.  AND WE TAKE A BROAD

14   VIEW OF RELEVANCY OF THE DOCUMENTS IN THIS CASE

15   THAT HAVE TO BE PRODUCED, YOUR HONOR, SUBJECT TO

16   THE PROTECTIVE ORDER.

17             THIS IS NOT GAMES PLAYING.  THIS IS

18   FOLLOWING THE RULES.  BUT WE CAN'T PALL MALL

19   DISREGARD THOSE PROTECTIVE ORDERS, YOUR HONOR,

20   WITHOUT BEING IN CONTEMPT OF THE COURT IN

21   MICHIGAN.  THAT'S WHY EVERY COURT THAT ADDRESSES,

22   WITH THE EXCEPTION OF ABOUT TWO, INCLUDING THE

23   DISTRICT COURTS IN THIS DISTRICT, IN THIS

24   CIRCUIT, HAVE SAID FILE A MOTION TO INTERVENE

25   WITH JUDGE HOOD AND GET THOSE DOCUMENTS.

1               SO, I AM NOT HERE SAYING, YOUR HONOR,

2    THAT WE ARE GOING TO CONTINUE NOT PRODUCING.  WE

3    ARE UNDER A DEADLINE OF JULY OF NEXT YEAR.  I

4    WOULD SAY, AND MR. GOURLEY CAN SPEAK MORE OF

5    THIS, BUT WE ANTICIPATE PRODUCTION BEGINNING VERY

6    QUICKLY.  AND WE ARE GOING TO RESPOND TO EACH ONE

7    OF THESE REQUESTS, YOUR HONOR, IN A TIMELY, IN A

8    RELEVANT FASHION, PRODUCING THOSE DOCUMENTS.  BUT

9    TO GO OFF AND JUST REQUIRE PALL MALL THE

10   PRODUCTION OF THIS WHOLE FILE FROM MICHIGAN, WE

11   THINK, IS THE WRONG WAY TO APPROACH IT.  IT PUTS

12   US IN A QUAGMIRE, YOUR HONOR.

13              IF YOU ORDER US TO PRODUCE THOSE

14   DOCUMENTS THAT ARE NOT COVERED BY PROTECTIVE

15   ORDER, IT WILL TAKE A WORLD OF TIME TO GO THROUGH

16   AND SIPHON THROUGH THERE AND FIND WHAT IS

17   CONFIDENTIAL, WHAT IS NOT CONFIDENTIAL.  I MEAN,

18   THE EXPERT REPORTS, FOR EXAMPLE, ARE FULL OF

19   REFERENCE TO CONFIDENTIAL AND LOTS OF

20   CONFIDENTIAL INFORMATION.  IT'S IMPOSSIBLE TO DO

21   WITHOUT DOUBLING OR TRIPLING OUR DISCOVERY BURDEN

22   IN THIS CASE.

23              AND FOR ALL THOSE REASONS, YOUR HONOR,

24   WE FEEL LIKE THE MOTION FOR PROTECTIVE ORDER

25   SHOULD BE GRANTED SUBJECT TO THE PLAINTIFF GOING

1    AND GETTING CONSENT OR SUBPOENAING THOSE THIRD

2    PARTIES, OR INTERVENING IN MICHIGAN.  AND IN THE

3    MEANTIME, THE DOCUMENTS THEY SEEK IN THIS CASE,

4    YOUR HONOR, AS AN OFFICER OF THIS COURT, THEY

5    WILL GET, AND THEY WILL GET TIMELY, YOUR HONOR,

6    AND WE WILL COMPLY.

7             THE COURT:  ALL RIGHT.  ANYONE ELSE

8    WISH TO ADDRESS ANYTHING FROM THE MICHIGAN

9    STANDPOINT?

10            MR. STENERSON:  NO, YOUR HONOR.

11            THE COURT:  ALL RIGHT.  THANK YOU.

12            MR. RAGSDALE:  JUDGE, YOU KNOW THE LAST

13   THING THAT I WOULD EVER WANT TO DO WOULD BE TO

14   OFFEND MR. CAMPBELL OR ANY OF THE DEFENDANTS.

15   BUT THIS IS ABOUT FOOT DRAGGING.  THIS IS ABOUT

16   NOT RESPONDING.  THEIR RESPONSE IS THAT THEY WILL

17   RESPOND TO THOSE REQUESTS.  I DIDN'T HEAR HIM SAY

18   THEY WILL PRODUCE ANY DOCUMENTS.  AND THAT'S

19   WHERE WE REALLY ARE AT THIS POINT IS ARE THEY

20   GOING TO PRODUCE A SINGLE DOCUMENT TO US?

21   BECAUSE RIGHT NOW, AND I WANTED TO START WITH

22   THIS.  I WANTED TO START WITH, JUDGE, WHY DON'T

23   WE JUST FOCUS ON WHAT THEY HAVE AGREED TO

24   PRODUCE?

25            WELL, IN RESPONSE TO THIS MOTION, TO

```
 1    THIS REQUEST TO THE LETTERS THAT WE WROTE, THEY
 2    HAVE NOT AGREED TO PRODUCE A SINGLE PAGE OF ANY
 3    DOCUMENT IN THE AETNA LITIGATION.  NONE OF THEM.
 4    SO THERE IS NOTHING TO TALK ABOUT IN TERMS OF
 5    WHAT THEY WOULD COMPLY ABOUT.  THEY HAVE NOT EVEN
 6    AGREED, JUDGE, AND I THINK THIS IS IMPORTANT,
 7    THAT THEY WILL PRODUCE THOSE DOCUMENTS IN
 8    RESPONSE TO THE REQUEST FOR PRODUCTION THAT HAVE
 9    BEEN PENDING SINCE JANUARY.  IN FACT, THEIR
10    POSITION, WHICH WAS REPEATED TODAY, IS THAT ALL
11    OF THOSE DOCUMENTS ARE IRRELEVANT AND THEREFORE
12    WOULDN'T BE PRODUCED IN RESPONSE TO OUR REQUEST
13    FOR PRODUCTION IF THEY STAND ON THEIR RELEVANCY
14    OBJECTION.  WHICH MEANS EVEN IF WE GO THROUGH
15    THIS OTHER PROCESS AND WAIT UNTIL NEXT JULY, WE
16    STILL MAY NOT HAVE ANY OF THE DOCUMENTS THAT WE
17    ARE TALKING ABOUT AND THAT WE HAVE IDENTIFIED.
18            I THINK IT IS IMPORTANT TO FOCUS ON THE
19    FACT THAT THEY HAVEN'T EVEN AGREED, JUDGE, TO
20    PRODUCE DOCUMENTS TO WHICH THEY CAN'T POSSIBLY
21    HAVE AN OBJECTION.  THEIR OWN DOCUMENTS IN THE
22    AETNA LITIGATION.  THEIR LISTS THAT THEY
23    COMPILED, WHICH WE HAVE SEEN TODAY -- I GUESS THE
24    ADVANTAGE IS THIS IS THE MOST INFORMATION WE HAVE
25    GOTTEN OUT OF THEM SINCE WE START TALKING ABOUT
```

```
 1    THIS -- DOESN'T TELL YOU HOW MANY OF THESE
 2    DESIGNATED CONFIDENTIAL DOCUMENTS WERE DESIGNATED
 3    CONFIDENTIAL BY BLUE CROSS.  IF BLUE CROSS
 4    DESIGNATED THEM AS CONFIDENTIAL, AND, FRANKLY, I
 5    WOULD BE SURPRISED IF THEY DIDN'T DESIGNATE EVERY
 6    DOCUMENT CONFIDENTIAL, BECAUSE THE DOCUMENTS THAT
 7    WE HAVE HAD PRODUCED, THE SMALL AMOUNT WE HAVE
 8    GOTTEN FROM THE ASSOCIATION IN THIS CASE, ALL OF
 9    THEM HAVE BEEN DESIGNATED SUBJECT TO THE
10    PROTECTIVE ORDER.  THAT'S STANDARD OPERATING
11    PROCEDURE FOR BLUE CROSS.
12            SO, AS A CONSEQUENCE, WE CAN'T TELL
13    FROM THIS LIST HOW MANY OF THE DOCUMENTS SUBJECT
14    TO THE PROTECTIVE ORDER ARE ONLY SUBJECT TO THE
15    PROTECTIVE ORDER BECAUSE OF THE ACTIONS OF BLUE
16    CROSS.  IF BLUE CROSS DESIGNATES THEM AS SUBJECT
17    TO CONFIDENTIALITY REQUIREMENTS, WE DON'T NEED TO
18    GET ANYBODY'S WAIVER.  THEY ARE THE PARTY THAT
19    HAS THAT WITHIN THEIR CONTROL AND THEY ARE STILL
20    SUBJECT TO THAT.  SO, I WOULD ASSUME THEY CAN
21    TELL US HOW MANY OF THESE CONFIDENTIALITY
22    DESIGNATIONS WERE MADE BY AETNA OR MADE BY A
23    THIRD PARTY OR MADE SOLELY BY BLUE CROSS BECAUSE
24    IF THEY WERE MADE SOLELY BY BLUE CROSS, THE
25    PROTECTIVE ORDER ARGUMENT IS A RED HERRING.  IT
```

1   IS A RUSE TO MAKE YOU NOT BE ABLE TO NOTICE THAT

2   IT IS THEM THAT IS STOPPING THOSE DOCUMENTS FROM

3   BEING PRODUCED.

4            IN ADDITION TO THAT, JUDGE -- AND LET

5   ME SAY THIS.  I THINK THIS IS IMPORTANT.  ALL OF

6   THESE DOCUMENTS ARE IN THE POSSESSION OF THE

7   ATTORNEYS.  THOSE DOCUMENTS HAVE ALREADY BEEN

8   GATHERED, THEY HAVE ALREADY BEEN CLEANSED AND

9   LOOKED THROUGH IN TERMS OF PRIVILEGE, AND THEY

10  ARE IN THE HAND OF THE LAWYERS.  THE LAWYERS HERE

11  TODAY AND SOME OTHERS THAT ARE IN THIS CASE.

12  THEY ARE NOT SITTING BACK AT BLUE CROSS.  THEY

13  DON'T HAVE TO BE GATHERED AGAIN FROM THE CLIENT.

14  THEY ARE ALREADY IN THE POSSESSION OF LAWYERS IN

15  THIS CASE.  THEY DIDN'T GIVE THOSE FILES BACK AND

16  THEY CERTAINLY DIDN'T SHRED THEM AFTER THE AETNA

17  LITIGATION.  THEY STILL HAVE THEM IN THEIR

18  OFFICES, PROBABLY ON THEIR COMPUTERS.  THERE IS

19  NO ADDITIONAL BURDEN TO GATHERING THOSE DOCUMENTS

20  BECAUSE THEY HAVE ALREADY BEEN GATHERED AND THEY

21  HAVE ALREADY BEEN COLLECTED BY THESE ATTORNEYS.

22            IN ADDITION TO THOSE, A SUBSTANTIAL

23  NUMBER OF THEM HAVE ALREADY BEEN DESIGNATED ON

24  THE PRELIMINARY EXHIBIT LIST.  AT A MINIMUM,

25  JUDGE, IT SEEMS TO ME, THEY OUGHT TO BE ABLE TO,

```
1    AND OUGHT TO BE REQUIRED TO PROVIDE US THAT
2    PRELIMINARY EXHIBIT LIST WHICH THEY USED FOR
3    PUTTING TOGETHER THIS CHART.  BUT WE HAVE NOT
4    EVEN SEEN THE EXHIBIT LIST.
5              THE COURT:  THE LIST AS DISTINCT FROM
6    THE UNDERLYING DOCUMENTS THEMSELVES?
7              MR. RAGSDALE:  CORRECT, YES.
8              THE COURT:  SURE.
9              MR. RAGSDALE:  AT A MINIMUM, IT SEEMS
10   TO ME, WE OUGHT TO BE ABLE TO HAVE THAT AND BE
11   ABLE TO MAKE THE ARGUMENTS.  BECAUSE WE ARE,
12   DESPITE THE ARGUMENT MR. CAMPBELL MADE THAT THE
13   LAWYERS IN THIS CASE ARE THE SAME LAWYERS IN THE
14   AETNA CASE, THAT'S NOT TRUE.  NO PROVIDER
15   COUNSEL, FOR EXAMPLE, WAS IN THAT AETNA CASE.
16             AND IN ADDITION, CERTAINLY THERE WERE
17   SOME LAWYERS INVOLVED IN THAT CASE BUT THEY ARE
18   NOT CERTAINLY THE LEAD COUNSEL AND NOT DISCOVERY
19   COUNSEL IN THIS CASE.  BUT WE DO KNOW THAT THE
20   LAWYERS IN THAT CASE THAT REPRESENTED BLUE CROSS
21   ARE THE SAME LAWYERS IN THIS CASE, THE LAWYERS
22   THAT HAVE POSSESSION OF THOSE DOCUMENTS.
23             THE COURT:  THE HOSPITALS IN THE
24   MICHIGAN CASE, SURELY, SOME OR PERHAPS ALL OF
25   THOSE ARE THE SAME HOSPITALS THAT ARE PROVIDERS,
```

1    THAT ARE PART OF THE PROVIDERS CLASS IN THIS

2    LITIGATION THOUGH, AREN'T THEY?

3            MR. RAGSDALE:  CERTAINLY, THEY ARE

4    UNNAMED CLASS MEMBERS.

5            THE COURT:  YEAH.

6            MR. RAGSDALE:  I THINK THAT IS

7    ABSOLUTELY TRUE.  SO, AGAIN, YOU ARE TALKING

8    ABOUT PROVIDER COUNSEL BEING THEIR LAWYERS IN

9    THIS CASE --

10           THE COURT:  BUT BEING UNNAMED, THAT IS

11   A FAR CRY FROM SAYING THERE IS ALREADY AN

12   ATTORNEY WITH AN ESTABLISHED CLIENT RELATIONSHIP.

13   SOME OF THESE HOSPITALS MAY NOT ACTUALLY HAVE ANY

14   CONTACT WITH THE LAWYERS IN THIS CASE, SO FAR.

15           MR. RAGSDALE:  I WOULD THINK THE VAST

16   MAJORITY OF THEM DON'T HAVE ANY CONTACT WITH

17   COUNSEL IN THIS CASE SO FAR.

18           IN ADDITION TO THAT, JUDGE, THE FACT

19   THEY HAVE NOT EVEN BEEN WILLING TO PRODUCE

20   DOCUMENTS THAT THEY ARE THE ONLY ONES DESIGNATED

21   THEM AS CONFIDENTIAL, AND I SUSPECT THERE ARE

22   SUBSTANTIAL NUMBERS OF THOSE THAT HAVEN'T

23   DISCLOSED THAT TO US.

24           IN ADDITION, THEY HAVE NOT AGREED TO

25   PRODUCE DEPOSITION TRANSCRIPTS AT ALL.  EVEN ONES

1    OF THEIR WITNESSES.  EVEN DEPOSITIONS THAT WERE

2    TAKEN THAT WERE ONLY DESIGNATED AS CONFIDENTIAL

3    BY BLUE CROSS.  AGAIN, THERE IS NO THIRD PARTY

4    THAT HAS TO BE CONSULTED ABOUT THAT.  IF BLUE

5    CROSS'S EMPLOYEE OR REPRESENTATIVE GOT DEPOSED

6    AND BLUE CROSS SAID I WANT TO DESIGNATE THAT

7    CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER, AND I

8    WOULD BE AMAZED IF THEY DIDN'T DO THAT --

9              THE COURT:  COULDN'T IT ALSO BE A

10   SITUATION, THOUGH, THAT YOU MAY HAVE A BLUE CROSS

11   WITNESS WHO IS BEING DEPOSED AND SOMEBODY SAYS

12   TAKE A LOOK AT THIS DOCUMENT, MR. WITNESS.  AND

13   THAT DOCUMENT THAT HE IS LOOKING AT WAS

14   DESIGNATED CONFIDENTIAL BY SOME OTHER THIRD

15   PARTY?

16             MR. RAGSDALE:  CERTAINLY, THAT IS

17   POSSIBLE.  AND IT SEEMS TO ME THAT THAT COULD BE

18   DEALT WITH IN ONE OF TWO WAYS.  ONE IS BY -- AND

19   AT THIS POINT, IT SEEMS TO ME, AND I AM

20   SEPARATING THE DEPOSITION TRANSCRIPTS FROM THE

21   DEPOSITION EXHIBITS.

22             THE COURT:  ALL RIGHT.

23             MR. RAGSDALE:  THE DEPOSITION

24   TRANSCRIPT IS NOT CONFIDENTIAL.  NOW, IF HE IS

25   DISCUSSING THE CONTENTS OF A CONFIDENTIAL

1  DOCUMENT, THAT'S EASY ENOUGH TO REDACT THAT OUT

2  UNTIL WE HAVE AN OPPORTUNITY TO FIND OUT WHAT WE

3  ARE TALKING ABOUT.  SO THERE IS SOME PORTION,

4  FRANKLY, THE VAST MAJORITY OF THE DOCUMENT OR THE

5  DEPOSITION TRANSCRIPTS ARE NOT GOING TO BE THAT

6  KIND OF DISCUSSION, BUT THEY HAVE REFUSED TO EVEN

7  PROVIDE ONE PAGE.

8          THE COURT:  BUT IT WOULD TAKE THEM

9  THEN, EVEN IF I SAID PRODUCE ALL THE DEPOSITION

10  TRANSCRIPTS, BLUE CROSS MICHIGAN WOULD STILL HAVE

11  TO GO THROUGH ALL THOSE TRANSCRIPTS TO TRY TO

12  LOCATE ANY INSTANCE WHERE A CONFIDENTIAL DOCUMENT

13  WAS DISCUSSED WHERE THAT CONFIDENTIAL DOCUMENT

14  WAS DESIGNATED BY SOME THIRD PARTY.

15          I THINK I TEND TO AGREE WITH YOU THAT

16  TO THE EXTENT BLUE CROSS SAYS THIS IS A

17  CONFIDENTIAL DOCUMENT, WE WANT TO IT PROTECTED,

18  THAT WOULD NOT IMPLICATE THE PROTECTIVE ORDER IN

19  MICHIGAN BECAUSE THOSE SAME DOCUMENTS ARE SUBJECT

20  TO PROTECTIVE ORDER HERE.  BUT YOU STILL RUN INTO

21  THE PROBLEM OF THIS SORT OF BOUILLABAISSE OF

22  INFORMATION THAT'S MADE UP OF CONFIDENTIAL

23  INFORMATION FROM LOTS OF DIFFERENT SOURCES.

24          MR. RAGSDALE:  I AGREE, JUDGE.  BUT

25  KEEP IN MIND, WE HAVE THE PEOPLE THAT KNOW THAT

1   ALREADY IN THIS CASE.  THOSE LAWYERS KNOW WHO

2   DESIGNATED DOCUMENTS CONFIDENTIAL.  THEY KNOW

3   WHETHER OR NOT THEY DESIGNATED IT AS

4   CONFIDENTIAL.  SO, FROM THAT STANDPOINT, IT'S,

5   FRANKLY, MUCH EASIER FOR THEM TO DO THAT THAN

6   ANYBODY ELSE.  THEY HAVE THE PEOPLE INVOLVED IN

7   THAT.

8            I WOULD ALSO SUGGEST TO YOU, JUDGE,

9   THAT TO THE EXTENT THEY CAN IDENTIFY FOR US --

10   RIGHT NOW, WE DON'T EVEN KNOW WHO THE THIRD

11   PARTIES ARE THAT THEY ARE PURPORTEDLY STANDING IN

12   FOR.  IN OTHER WORDS, WHO ARE THEY TRYING TO

13   PROTECT?  AETNA --

14            THE COURT:  MR. CAMPBELL SUGGESTS IT'S

15   A BUNCH OF HOSPITALS, THAT THE HOSPITALS

16   UNALTERABLY ARE OPPOSED TO HAVING THEIR RATE

17   STRUCTURES RELEASED.

18            MR. RAGSDALE:  I NOTICED THAT I HAVE

19   NOT SEEN ANY EVIDENCE OF THAT.  AND ALTHOUGH I

20   WOULD ALWAYS TAKE ANDY'S WORD ON ANYTHING, IT

21   SEEMS TO ME THERE IS SOME OBLIGATION FOR THEM TO

22   SUGGEST IT'S MORE THAN JUST THEM THAT ARE

23   OBJECTING TO THE PRODUCTION OF THESE DOCUMENTS.

24   I THINK, FOR EXAMPLE, THIS COURT COULD CONSIDER

25   AND CREATE A STRUCTURE WHEREBY A SHOW CAUSE ORDER

1    WAS ISSUED BY THIS COURT THAT BASICALLY SETS OUT

2    THE LIST OF DOCUMENTS WITHIN OUR MUCH-NARROWED

3    REQUEST, AND WITHIN THE NARROWED REQUEST THAT THE

4    COURT HAS THAT THESE WILL BE PRODUCED BY BLUE

5    CROSS WITHIN X-NUMBER OF DAYS UNLESS ANY THIRD

6    PARTY WANTS TO OBJECT TO THAT.  THAT THEN PUTS

7    THE ONUS ON THOSE THIRD PARTIES TO BE ABLE TO

8    SAY, YES, WE DO STAND AND OBJECT TO THAT.  WE CAN

9    SIMPLIFY TO PROCESS WHERE THEY DON'T HAVE TO COME

10   DOWN HERE AND APPEAR IN COURT DOWN HERE, BUT IT

11   WOULD PROVIDE A DEADLINE BY WHICH ANY THIRD PARTY

12   WHO HAD A REAL OBJECTION, NOT JUST BLUE CROSS

13   USING THAT AS AN EXCUSE, WOULD HAVE AN

14   OPPORTUNITY TO TELL THIS COURT, YEAH, WE DON'T

15   WANT OUR DOCUMENTS PRODUCED.

16           THE COURT:  WELL, WE HAVE TO ARRANGE

17   SOME KIND OF WAY OF GIVING NOTICE TO ALL THOSE

18   THIRD PARTIES, AND ASK THE QUESTION DO WE KNOW

19   WHO ALL THE THIRD PARTIES ARE?

20           MR. RAGSDALE:  WELL, THEY DO.  BLUE

21   CROSS DOES.  THAT'S ONE OF THE THINGS, JUDGE,

22   THAT WE ALSO THINK THAT WE ASKED FOR AND NOT BEEN

23   PROVIDED WITH, I GIVE US A LIST OF WHO WE ARE

24   SUPPOSED TO TALK TO.

25           NOW, THEY MAKE THE ARGUMENT THAT'S NOT

1    THEIR BURDEN, IT'S NOT THEIR BURDEN TO GO GET A

2    WAIVER FROM THOSE PEOPLE.  I, FRANKLY, EVEN AGREE

3    WITH THAT.  BUT WE WILL BE HAPPY TO DO THAT IF

4    THEY WILL TELL US WHO THEY ARE.  AT THIS POINT,

5    THEY ARE UNNAMED SOURCES WHO MAY OR MAY NOT

6    OBJECT.  BUT AT THIS POINT, WE DON'T EVEN KNOW

7    WHETHER OR NOT THERE ARE A SIGNIFICANT NUMBER OF

8    THESE DOCUMENTS THAT WERE DESIGNATED CONFIDENTIAL

9    BY ANYBODY OTHER THAN BLUE CROSS.  AT A MINIMUM,

10   I THINK WE SHOULD BE ALLOWED TO HAVE ANY

11   DOCUMENTS DESIGNATED CONFIDENTIAL SOLELY BY BLUE

12   CROSS, AND AN IDENTIFICATION OF, WITH THIS

13   PRELIMINARY EXHIBIT LIST, FOR EXAMPLE, THAT

14   SHOULD BE GIVEN TO US, A DESIGNATION OF WHO

15   DESIGNATED ANY OF THOSE EXHIBITS SUBJECT TO THE

16   PROTECTIVE ORDER, AND WE'LL SECURE THOSE WAIVERS.

17   WE FRANKLY THINK THAT WOULD BE SIMPLE TO DO.

18   TALKING TO AETNA WAS SIMPLE ENOUGH TO DO IN TERMS

19   OF THEIR SPECIFIC EXHIBITS AND THEY WANT SOME

20   CONTROL ON INPUT.  BUT KEEP IN MIND, I THINK, AS

21   THIS COURT HAS ALREADY RECOGNIZED, ANYTHING

22   THAT'S PRODUCED IN THIS CASE IS SUBJECT TO OUR

23   PROTECTIVE ORDER.  SO IT'S NOT GOING ANY FURTHER

24   THAN JUST COUNSEL'S EYES IN THIS CASE EVEN IF

25   IT'S PRODUCED.  IF THERE A FURTHER DISCUSSIONS TO

1    HAVE WITH THESE THIRD PARTIES, WE WELCOME THE

2    OPPORTUNITY TO DO THAT, BUT IT'S VERY HARD TO DO

3    WHEN WE DON'T KNOW WHO THEY ARE.

4              IN ADDITION, JUDGE, I WOULD SAY IN

5    TERMS OF THE EXPERT REPORT, THE SAME ANALYSIS

6    APPLIES.  THEY HAVE NOT EVEN IDENTIFIED FOR US

7    WHO THE EXPERTS THAT WERE GIVEN REPORTS, WHETHER

8    OR NOT THOSE REPORTS CONTAINED CONFIDENTIAL

9    INFORMATION.  AND, AGAIN, IF THEY WERE DESIGNATED

10   CONFIDENTIAL SOLELY BY BLUE CROSS, THERE ARE NO

11   GROUNDS TO WITHHOLD THE PRODUCTION OF THAT.  BUT

12   MICHIGAN'S TAKING THE POSITION WE GET NOTHING OUT

13   OF THAT CASE.  AND THAT'S COMBINED WITH THEIR

14   PROMISE THAT THEY WILL RESPOND, HOPEFULLY BY NEXT

15   JULY, TO THE REQUEST FOR PRODUCTION THAT ASKS FOR

16   THESE VERY SAME DOCUMENTS.  NOT THAT THEY WILL

17   PRODUCE THEM, BUT THEY WILL RESPOND TO THOSE

18   REQUESTS.  THAT IS WHY WE SAW THIS AS A WAY IN

19   WHICH TO AT LEAST GO THROUGH THE PROCESS OF

20   DOCUMENTS THAT HAVE ALREADY BEEN GATHERED, THAT

21   HAD ALREADY BEEN ACCUMULATED, THAT HAD ALREADY

22   BEEN REVIEWED FOR PRIVILEGE.  IN MOST CASES, HAD

23   ALREADY BEEN MARKED AS EXHIBITS TO BE PLACED INTO

24   TRIAL, AND THAT ARE ALREADY IN THE POSSESSION OF

25   THE LAWYERS IN THIS CASE.  AND THAT IS THE SUBSET

1    OF DOCUMENTS THAT WE HAVE REQUESTED HERE.

2              BUT, JUDGE, I DO THINK THIS CHART

3    DOESN'T -- IS NOT HELPFUL.  IT DOES INVOLVE A LOT

4    OF PAGES.  GUESS WHAT?  EVERYTHING IN THIS CASE

5    INVOLVES A LOT OF PAGES.  THERE ARE A LOT OF

6    DOCUMENTS TO BE REACHED.  AND THE FACT WE MAY

7    MAKE SUPPLEMENTAL REQUESTS AFTER WE GET THESE

8    DOCUMENTS DOESN'T MEAN THOSE DOCUMENTS ARE NOT

9    DISCOVERABLE.

10              THE COURT:  ALL RIGHT.  THANK YOU.

11    MR. CAMPBELL?

12              MR. CAMPBELL:  FIRST OF ALL, YOUR

13    HONOR, SPEAKING TO THE REQUESTS IN THIS CASE,

14    YOUR HONOR, WE ARE GOING TO PRODUCE MILLIONS OF

15    DOCUMENTS IN THIS CASE.  TO SAY THAT WE HAVE NOT

16    AGREED TO DO THAT, TO SAY WE ARE FIGHTING THAT,

17    WHAT, AS I UNDERSTAND IT, SEARCH TERMS ARE BEING

18    NEGOTIATED NOW.  THE PROCESS IS ONGOING, IS GOING

19    TO BE COMPLETED, AND THEY ARE GOING TO BE

20    PRODUCED.  A DEADLINE FOR PRODUCTION IS NEXT

21    JULY.  THIS COURT HAS SET THOSE STANDARDS.

22              BUT THE PLAINTIFF IS SAYING, ADD TO

23    THAT BURDEN.  GO THROUGH ALL THESE DOCUMENTS IN

24    MICHIGAN WITHOUT ANY COUNTER VEILING OFFER OF

25    CUTTING DOWN OUR BURDEN IN THIS CASE, GO THROUGH

1    THOSE DOCUMENTS IN MICHIGAN -- FOR EXAMPLE, THE

2    DEPOSITIONS -- AND TELL US THE ONES THAT ARE

3    DESIGNATED BY WHOM AND PRODUCE THE ONES -- THE

4    PROBLEM WITH THAT, YOUR HONOR, IF YOU LOOK AT IT,

5    THE DEPOSITION TRANSCRIPTS ARE 211.  THEY

6    CONTAINED THOUSANDS OF PAGES OF CONFIDENTIAL

7    MATERIAL PROTECTED BY THE PROTECTIVE ORDERS.

8    BLUE CROSSES, AETNA'S, AND THIRD PARTIES.

9    EXHIBITS ARE ATTACHED THAT WERE THEN, QUESTIONS

10   WERE ASKED ABOUT.  WHAT BARRY'S SOLUTION IS, MAKE

11   US GO THROUGH THAT AND SPEND HUNDREDS OF HOURS

12   DOING THAT AND THEN PRODUCE SOME LIMITED PORTION

13   OF IT.  AND, YOUR HONOR, THAT VIOLATES THE

14   DISCOVERY RULES.  THAT'S OVER BURDENSOME WHEN

15   THEY ARE GOING TO GET THE SAME RESPONSIVE

16   MATERIAL HERE.  THEY HAVE ASKED FOR A SPECIFIC

17   REQUEST, DEPOSITION TRANSCRIPTS TO GO WITH THESE

18   VARIOUS ISSUES --

19          THE COURT:  BUT YOU ARE GOING TO STILL

20   HAVE SAME PROTECTIVE ORDER PROBLEM EVEN IF I

21   AGREE WITH YOU AND WE WAIT AND, SAY, ALL RIGHT,

22   PRODUCE THOSE DOCUMENTS NEXT JULY.  YOU ARE STILL

23   GOING TO HAVE THE SAME PROTECTIVE ORDER PROBLEMS,

24   AREN'T YOU?

25          MR. CAMPBELL:  YOUR HONOR, THE ISSUE

```
1    IS, ON THE PROTECTIVE ORDER ENTERED IN MICHIGAN,
2    YES, THAT ISSUE EXISTS AND THAT DOESN'T SIMPLY
3    BELONG TO US.  THAT BELONGS TO THESE THIRD
4    PARTIES.
5              THE COURT:  I GUESS THAT'S WHAT I AM
6    TRYING TO FIGURE OUT IS INSOFAR AS THE BURDEN OF
7    TRYING TO ISOLATE THAT WHICH IS SUBJECT TO THE
8    PROTECTIVE ORDER IN MICHIGAN FROM THAT WHICH IS
9    NOT AND PRODUCING WHAT'S NOT PROTECTED, THAT
10   BURDEN IS GOING TO EXIST WHETHER IT'S TODAY OR
11   WHETHER IT'S A YEAR FROM NOW.
12             MR. CAMPBELL:  I DON'T BELIEVE IT
13   WILL, YOUR HONOR.  AND THE REASON -- TWO THINGS.
14   RATHER THAN GOING THROUGH A PROCEDURE SAYING GIVE
15   US THE NAMES OF THE THIRD PARTIES AND THEN GIVE
16   SOME NOTICE FROM THE COURT, THE COURTS THROUGHOUT
17   THE COUNTRY HAVE RECOGNIZED THE APPROPRIATE
18   VEHICLE IS TO FILE A RULE 24 MOTION WITH JUDGE
19   HOOD, SAYING RELEASE THEM ALL, JUDGE, THE CASE IS
20   OVER.  AND I HAVE SEEN THAT HAPPEN AS IN JUDGE
21   PRYOR'S CASE WE HAD IN FLORIDA AND THE JUDGE DID
22   THAT, TO A LARGE EXTENT.
23             BUT IN THIS PARTICULAR CASE, YOUR
24   HONOR, WE ARE BASICALLY DEALING WITH A SITUATION
25   WHERE IF WE RESPOND AND PRODUCE IT IN ALABAMA, WE
```

1   DO IT ONE TIME IN RESPONSE TO THOSE REQUESTS.

2   AND, YOUR HONOR, THE PROTECTIVE ORDER ISSUE WILL

3   HAVE TO BE DECIDED, FRANKLY.  I THINK IT'S WITHIN

4   THE JURISDICTION OF THE MICHIGAN JUDGE, AND I

5   DON'T THINK YOU CAN CARVE OUT A WAY TO GO AROUND

6   THAT IN THIS COURT.  I THINK THAT'S FROWNED UPON

7   THROUGHOUT THE COUNTRY AND MOST OF THE COURTS SAY

8   YOU CAN'T DO THAT.

9        BUT THE STATEMENT BARRY SAYS, THAT HE

10   KEEPS SAYING IS INCORRECT.  THEY HAVE THE LIST

11   ALREADY.  THE PLAINTIFF'S COUNSEL, THE GUSTAVSON

12   FIRM, WHO IS IN THIS CASE, THEY KNOW ALL OF THOSE

13   NON-PARTIES.  THEY NEGOTIATE THIS SETTLEMENT IN

14   THE SHANE CASE.  ACCORDING TO TODD STENERSON, MY

15   CO-COUNSEL, THEY HAVE ALL THE DOCUMENTS.  THAT'S

16   WHY THIS IS SOMEWHAT OF AN ELABORATE GAME, YOUR

17   HONOR.  THEY DON'T NEED A LIST -- THEY HAVE GOT

18   THE LIST.

19        THE COURT:  YOU ARE SAYING THAT ONE OF

20   THE PLAINTIFF'S COUNSEL FIRM IS IN THIS CASE, IN

21   THE BLUE CROSS BLUE SHIELD MULTIDISTRICT

22   LITIGATION CASE ALREADY HAS ALL THESE DOCUMENTS?

23        MR. STENERSON:  YES, YOUR HONOR.  TODD

24   STENERSON.  THE GUSTAVSON FIRM WAS CO-LEAD

25   COUNSEL.  THERE ARE THREE CASES IN MICHIGAN, THE

```
1    GOVERNMENT CASE, THE CUSTOMER CLASS ACTION, AND

2    THE AETNA CASE.  ALL THE CASES, DISCOVERY WAS

3    CONSOLIDATED.  THE GUSTAVSON FIRM, MR. HEADLEY

4    AND MR. GUSTAVSON WERE IN THAT CASE, LEAD

5    COUNSEL, NEGOTIATED THE SETTLEMENT, ATTENDED

6    DEPOSITIONS.  THEY HAVE ALL THE DOCUMENTS.  THEY

7    SERVED SUBPOENAS.  THEY ATTENDED DEPOSITIONS,

8    THEY ASKED QUESTIONS IN THE DEPOSITIONS.

9             THE COURT:  YOU ARE TELLING ME THAT --

10   LET'S ASSUME THAT I AGREE WITH MR. RAGSDALE AND I

11   AM GOING TO SAY PRODUCE THIS WHOLE BODY OF

12   DOCUMENTS, THAT THAT WOULD BE ESSENTIALLY

13   DUPLICATIVE OF SOMETHING THAT THIS PLAINTIFF'S

14   FIRM ALREADY HAS?

15             MR. STENERSON:  YES, SIR.

16             THE COURT:  OKAY.

17             MR. CAMPBELL:  TO THE EXTENT THEY

18   ATTENDED DEPOSITIONS AND GOT TRANSCRIPTS, AND

19   THEY SUBPOENAED SOME OF THESE SAME NON- PARTIES.

20             MR. STENERSON:  AGAIN, I WOULD THINK

21   THEY CAN USE THOSE DOCUMENTS --

22             MR. CAMPBELL:  THE POINT, YOUR HONOR,

23   THEY KNOW THE THIRD PARTIES -- THEY KNOW THE

24   THIRD PARTIES, YOUR HONOR, AND THEY CAN GET

25   CONSENT OR THEY CAN SUBPOENA THEM.  AND I DON'T
```

1    THINK THEY ARE DENYING THAT.

2              THE COURT:  A MIRAGE.  JUST A MIRAGE.

3              MR. CAMPBELL:  YOUR HONOR, IN CLOSING,

4    I WOULD JUST MAKE TWO POINTS.  THE DOCUMENTS THEY

5    SEEK FROM BLUE CROSS ALONE ARE SEVEN MILLION

6    DOCUMENTS IN THE AETNA CASE, THE THREE

7    CONSOLIDATED CASES.  IN THOSE, MANY OF THESE

8    DOCUMENTS, AND THE SUGGESTION IS THOSE ARE JUST

9    YOUR INTERNAL DOCUMENTS -- NO.  MANY OF THOSE

10   DOCUMENTS ARE COMMUNICATIONS WITH HOSPITALS.  AND

11   WHEN THE SHANE PLAINTIFFS AND OTHER NON-PARTIES

12   TRIED TO INTERVENE AND GET THOSE DOCUMENTS, MOST

13   OF THE HOSPITALS OBJECTED.  THEY HAVE A STAKE IN

14   THOSE.  THEY DID NOT WANT THEIR CONFIDENTIAL

15   PRICING AND RATE INFORMATION DISCLOSED.

16             THE COURT:  WELL, I GUESS TELL ME IF I

17   AM WRONG HERE, BECAUSE, AGAIN, I AM MORE IN THE

18   DARK ABOUT THIS THAN ANY OF YOU.

19             MR. CAMPBELL:  I KNOW.

20             THE COURT:  BUT SURELY THERE IS A BODY

21   OF THESE DOCUMENTS THAT ARE ENTIRELY IN THE

22   POSSESSION OF BLUE CROSS BLUE SHIELD OF MICHIGAN.

23   THEY ARE CREATED, THEY WERE INTERNAL DOCUMENTS.

24   THE ONLY PARTY THAT WANTED TO DESIGNATE THEM OR

25   HAD THE RIGHT TO DESIGNATE THEM AS CONFIDENTIAL

```
1     WOULD JUST BE BLUE CROSS MICHIGAN, RIGHT?
2              MR. CAMPBELL:  THERE WOULD BE SOME,
3     YES, SIR.  MR. GOURLEY CAN SPEAK TO THAT.
4              MR. GOURLEY:  GOOD MORNING, YOUR HONOR.
5              THE COURT:  GOOD MORNING.
6              MR. GOURLEY:  THERE IS A PROCESS IN
7     PLACE WHEREBY WE ARE NEGOTIATING WITH PLAINTIFFS
8     THROUGH MEET AND CONFER PROCESS.  THERE IS A
9     SEARCH METHODOLOGY PROTOCOL IN PLACE, LIKE A
10    45-DAY WINDOW IN WHICH TO AGREE TO SEARCH TERMS
11    OR TECHNOLOGY ASSISTED REVIEW OR HOWEVER WE ARE
12    GOING TO APPROACH THE MOST EFFICIENT WAY OF
13    FINING THE DOCUMENTS.  GOING THROUGH THAT WITH
14    PRODUCTION CUSTODIANS AND SO FORTH.  SO, ANYTHING
15    THAT WAS -- IF THERE IS ANYTHING FROM THE AETNA
16    CASE THAT WAS MARKED EXCLUSIVELY BY BLUE CROSS OF
17    MICHIGAN THAT MIGHT BE RELEVANT TO ONE OF THEIR
18    REQUESTS, THAT WILL BE IDENTIFIED BY A CUSTODIAN,
19    BY A SEARCH TERM, BY A WHATEVER THROUGH THE
20    NORMAL PROCESS --
21              THE COURT:  BUT MR. RAGSDALE SAYS BUT
22    FOR THIS MICHIGAN LITIGATION, HE SAYS THAT YOU
23    ALREADY HAVE THIS BODY OF DOCUMENTS PULLED ASIDE,
24    SEGREGATED, REVIEWED FOR PRIVILEGE, AND IT'S
25    SITTING THERE IN THE LAWYERS' OFFICES.
```

```
1            MR. GOURLEY:  WE HAVE A SET OF SEVEN
2     MILLION DOCUMENTS THAT ARE WITHOUT ANY
3     JUSTIFICATION OF RELEVANCE PLAINTIFFS WANT US TO
4     TURN OVER.  NOW --
5            THE COURT:  AND AGAIN, HERE, EVERYBODY
6     KEEPS FLIPPING AND FLOPPING BACK BETWEEN
7     RELEVANCE AND BURDENSOMENESS.  LET'S DEAL WITH
8     BURDENSOMENESS FIRST.
9            IF THE DOCUMENTS HAVE BEEN SEGREGATED,
10    REVIEWED, AND ARE ALREADY SITTING THERE
11    SOMEWHERE, WHAT'S THE BURDEN?
12           MR. GOURLEY:  THAT GOES TO WHAT
13    MR. CAMPBELL WAS SPEAKING TO IN THAT THERE IS
14    STILL WITHIN THAT SEVEN MILLION PAGES OF
15    DOCUMENTS CERTAIN INFORMATION THAT INCLUDES
16    CORRESPONDENCE WITH HOSPITALS OR OTHER THIRD
17    PARTIES THAT WOULD BE --
18           THE COURT:  AND TO THE EXTENT SOME OF
19    THOSE THIRD PARTIES CONTINUE TO INSIST ON A
20    PROTECTIVE ORDER IN MICHIGAN, YOUR GOING TO HAVE
21    TO PROTECT THAT SOME SORT OF WAY, YOU ARE GOING
22    TO HAVE TO REDACT IT OR DO SOMETHING.  I SEE THAT
23    POINT.
24           MR. CAMPBELL:  IF YOU'RE ASKING US IF
25    THERE ARE SOME INTERNAL DOCUMENTS IN THAT SEVEN
```

```
1    MILLION THAT ONLY BLUE CROSS WOULD BE CONCERNED

2    ABOUT, YES, YOUR HONOR, THERE ARE.  BUT WE

3    HAVEN'T GONE THROUGH THEM, MAN AND WOMAN HOURS,

4    TO TRY TO SEGREGATE ALL THAT BECAUSE WE INTENDED

5    TO RESPOND AND PRODUCE THOSE THAT WERE RELEVANT

6    IN THIS CASE?

7              THE COURT:  SEGREGATE THEM APART FROM

8    THE DOCUMENTS THAT MIGHT INCLUDE INFORMATION FROM

9    A THIRD PARTY?

10             MR. CAMPBELL:  YES, SIR.  ARE TALKING

11   ABOUT SEVEN MILLION DOCUMENTS.  AND I WOULD DARE

12   SAY, SEVERAL MILLION OF THEM IMPLICATE THE

13   INTEREST OF PROPRIETARY INFORMATION ON PRICING

14   AND RATES WITH HOSPITALS THAT THE HOSPITALS IN

15   THE CASES CONSOLIDATED CASES IN MICHIGAN MOVED

16   INTO COURT TO TRY TO STOP ANYBODY FROM GETTING

17   ACCESS TO.  ONE HOSPITAL IN ANN ARBOR DOESN'T

18   WANT TO KNOW, DOESN'T WANT ANYONE TO KNOW THAT'S

19   COMPETING WITH IT, HOSPITAL-WISE, WHAT THEY ARE

20   GETTING.  THEY DON'T WANT BLUE CROSS TO KNOW OR

21   AETNA TO KNOW WHAT BLUE CROSS IS CHARGING.  AND

22   THEY HAVE AN INTEREST IN THOSE DOCUMENTS.

23             CAN WE SEGREGATE SOLELY INTERNAL

24   DOCUMENTS?  PROBABLY, YOUR HONOR.  IF YOU INSIST

25   ON US DOING IT.  BUT WE ARE DOUBLING THE BURDEN
```

1    BECAUSE WE ARE GOING TO PRODUCE THEM IN THIS CASE

2    TO THE EXTENT THEY ARE RELEVANT.  AND I WOULD

3    DARE SAY, A GOOD MANY OF THEM ARE, YOUR HONOR.

4              THE COURT:  I GUESS THAT GETS BACK TO

5    THE EARLIER QUESTION I ASKED.  IF YOU DO IT NOW,

6    WHY DO YOU HAVE TO REDO IT A YEAR FROM NOW?

7              MR. GOURLEY:  BECAUSE OF THE TIME

8    PERIOD ISSUES IN THE CASE.  SO, WE ARE STILL

9    NEGOTIATING SCOPE, STILL NEGOTIATING TIME PERIOD.

10   THEY ARE ASKING FOR THINGS THAT GO WAY BACK.

11   THIS CASE DOESN'T GO BACK TO THE 50S.  WE ARE

12   GOING TO RENEGOTIATE CUSTODIANS, WE ARE GOING TO

13   RENEGOTIATE SEARCH TERMS, WE ARE GOING TO

14   RENEGOTIATE TIME FRAMES.  WE ARE GOING TO DO

15   EVERYTHING SIX TIMES.

16             THERE IS A PROCESS IN PLACE WHEREBY WE

17   CAN IDENTIFY THE CUSTODIANS, IDENTIFY SEARCH

18   TERMS THAT BOTH PARTIES AGREE ON THAT WILL LEAD

19   TO THE DISCOVERY OF THE DOCUMENTS THEY WANT.

20             THE COURT:  AND I UNDERSTAND THAT, I

21   UNDERSTAND THERE IS A PROCESS THAT'S BEEN IN

22   PLACE BUT I ALSO UNDERSTAND THAT JUDGE PROCTOR

23   HAS NOW GIVEN US ESSENTIALLY SOME MARCHING ORDERS

24   SAYING FIND SOME WAYS TO STREAMLINE THE DISCOVERY

25   IN THIS CASE.  I CAN'T GO BACK TO JUDGE PROCTOR

```
1    AND SAY, WELL, YOU KNOW, JUDGE, I CAN'T HELP YOU

2    WITH THAT BECAUSE WE HAVE THIS PROCESS IN PLACE.

3    WHAT AM I SUPPOSED TO DO?

4              MR. CAMPBELL:  YOUR HONOR, IF, FOR

5    EXAMPLE, IF THEY WANT THE, I GUESS THE LIST OF

6    POSSIBLE EXHIBITS, THAT'S SOMETHING WE CAN

7    PRODUCE TO THEM.  THAT ITSELF IS NOT PROTECTED BY

8    THE PROTECTIVE ORDER.

9              THE COURT:  SURE, JUST A WITNESS LIST

10   OR AN EXHIBIT LIST.  THE LIST ITSELF.

11             MR. CAMPBELL:  BUT WHEN YOU GET INTO

12   THE GUTS OF HAVING TO DECIPHER THE PROBLEM IS WE

13   JUST CAN'T TURN OVER.  THE COURT CAN ORDER US TO

14   DO IT, BUT WITHOUT IMPUGNING THE INTEREST OF

15   THESE HOSPITALS IN MICHIGAN, IT'S NOT A SIMPLE

16   MATTER.

17             THE COURT:  AND I WILL MAKE CLEAR TO

18   EVERYBODY HERE THAT I AM NOT IN ANY SORT OF WAY

19   GOING TO TRY TO INFRINGE UPON THE PROTECTIVE

20   ORDERS ENTERED BY THE MICHIGAN COURT.  I HAVE A

21   VIEW OBLIGATION TO RESPECT THOSE PROTECTIVE

22   ORDERS JUST LIKE ANYBODY ELSE DOES.

23             MR. CAMPBELL:  IF YOU WANT US TO TURN

24   OVER A LIST OF POTENTIAL EXPERTS FROM BLUE CROSS'

25   STANDPOINT, IF IT'S NOT PROTECTED, IF YOU WANT US
```

43

```
 1    TO TURN OVER, WE CAN DO THOSE THINGS, YOUR HONOR.
 2    BUT THE PROBLEM IS, I WOULD SUGGEST, THAT WE HAVE
 3    TO TURN OVER A LIST OF ALL THESE THIRD PARTIES,
 4    THAT KNOWLEDGE IS ALREADY WITHIN THE HANDS OF THE
 5    PLAINTIFF'S ATTORNEYS.  IF YOU ORDER US TO DO IT,
 6    WE'LL DO IT.  BUT IF THEY HAVE ALREADY GOT IT,
 7    WHY DO WE HAVE TO GO BACK AND SEARCH THROUGH
 8    THAT?  BECAUSE MANY OF THOSE PEOPLE, OR THOSE
 9    INSTITUTIONS, THEY SERVED THE SUBPOENAS IN THAT
10    CASE AS NON-PARTIES.
11            SO, YOUR HONOR, WE UNDERSTAND THE
12    COURT'S FRUSTRATION.  WE THINK IT CAN BE DEALT
13    WITH IN THIS CASE WITHOUT DOUBLING THE BURDEN OR
14    TRIPLING THE BURDEN ON THE DEFENDANT.  AND THAT'S
15    WHAT WE ARE ASKING THE COURT TO DO.  WE HAVE GOT
16    TO DEAL WITH THAT ISSUE, YOUR HONOR, AND WE
17    ARE -- DISCOVERY IN THIS CASE, THE REQUEST JUST
18    TO GO BACK 25 YEARS OR 20 YEARS, WE ARE TRYING TO
19    NEGOTIATE THAT DOWN.  THE AETNA LITIGATION
20    DOCUMENTS, THE SERVING OF THEM GO BACK YEARS.
21    MANY HAVE NOTHING TO DO WITH THIS CASE.  BUT,
22    YOUR HONOR, WE ARE WILLING TO TRY TO COMPLY WITH
23    AN ORDER THE COURT GRANTS US TO DO.  BUT WE THINK
24    FOR US TO HAVE TO SPEND HOUR AFTER HOUR
25    DECIPHERING THROUGH SEVEN MILLION DOCUMENTS IS
```

```
1    UNFAIR.  UNTIL WE AT LEAST SEE HOW THIS PROCESS
2    IN THIS COURT WORKS AND IF THIS CAN BE MOVED
3    ALONG.  AND THAT'S WHAT WE ASK FOR, YOUR HONOR.
4              THE COURT:  ALL RIGHT.
5              MR. CAMPBELL:  WE ASK FOR A FAIR
6    BURDEN, NOT AN UNFAIR BURDEN.
7              THE COURT:  I UNDERSTAND.
8              MR. CAMPBELL:  THANK YOU.
9              THE COURT:  I WILL DO MY BEST TO TRY TO
10   ACCOMMODATE THAT.
11             MR. RAGSDALE?  IS IT TRUE THAT ONE OF
12   YOUR PLAINTIFF'S COUNSEL EFFECTIVELY COULD PUT
13   TOGETHER THE LIST OF THE THIRD PARTY HOSPITALS OR
14   ENTITIES THAT YOU WOULD NEED TO GET PERMISSION
15   FROM?
16             MR. RAGSDALE:  THE FIRST TIME I HAVE
17   HEARD THAT WAS TODAY.  I HAVE NOT SPOKEN WITH THE
18   GUSTAVSON FIRM.  I WILL BE HAPPY TO.  I THINK THE
19   MOST IMPORTANT INFORMATION WAS THE FACT THAT YOU
20   WERE ABLE TO ELICIT THE FACT THEY CAN'T USE ANY
21   OF THAT INFORMATION FOR THE SAME REASONS BLUE
22   CROSS, IN MY MIND, THE PROTECTIVE ORDER IS THAT
23   INFORMATION IS PROTECTED.  NOW, WHETHER OR NOT
24   THEY CAN JUST TELL US HERE WITH THE 15 THIRD
25   PARTIES THAT PRODUCED INFORMATION OR NOT, WE CAN
```

1    CERTAINLY ASK.  I DON'T KNOW THE ANSWER TO THAT,

2    FRANKLY.

3              THE COURT:  DO WE EVEN HAVE A JUDGMENT

4    ABOUT, YOU SAY 15, ARE WE TALKING ABOUT PERHAPS

5    15 WHO ARE, I SORT OF IMAGINE, IT MAY BE SEVERAL

6    HUNDRED?

7              MR. RAGSDALE:  WE DON'T KNOW THE

8    ANSWER TO THAT.  THAT INFORMATION, IT SEEMS TO

9    ME, IS IN THE POSSESSION OF BLUE CROSS.  IT COULD

10   HAVE BEEN INCLUDED ON THIS HANDY CHART BUT WAS

11   NOT.  FOR EXAMPLE, JUDGE -- LET ME JUST SAY, IF

12   YOU JUST LOOK AT THE TRIAL EXHIBITS WHICH IS THE

13   HEART OF WHAT WE ARE ASKING FOR, THAT'S ONLY

14   7,000, 6,900 DOCUMENTS.  THAT MAY SEEM LIKE A

15   LOT, MAYBE IN A CAR WRECK CASE, BUT IT'S A DROP

16   IN THE SOMETHING, NOT EVEN A BUCKET IN THIS CASE.

17   6,900 HUNDRED -- AND LET ME POINT OUT, OF THOSE,

18   ACCORDING TO THE CHART, 1,785 ARE BLUE CROSS

19   EXHIBITS DESIGNATED AS CONFIDENTIAL.

20             NOW, I DON'T KNOW WHETHER THAT MEANS

21   BLUE CROSS IS WHO DESIGNATED THEM AS

22   CONFIDENTIAL --

23             THE COURT:  THAT'S WHY IT'S HARD TO

24   TELL ABOUT THAT.  MIGHT AS WELL BE 1,785 IS JUST

25   THE NUMBER OF EXHIBITS BLUE CROSS DESIGNATED AS

1    EXHIBITS AND SOME OF THOSE MAY WELL BE SOMETHING

2    THEY OBTAINED FROM A THIRD PARTY UNDER THE

3    PROTECTIVE ORDER.  I MEAN, WHO KNOWS?

4              MR. RAGSDALE:  BUT I WOULD SAY THIS,

5    JUDGE.  SOMEBODY HAD TO COMPILE THIS LIST.

6    SOMEBODY HAD TO GO THROUGH AND LOOK AT THE

7    EXHIBITS AND SAY HAS IT BEEN DESIGNATED AS

8    CONFIDENTIAL?  HOW HARD WAS IT TO SAY "AND BY

9    WHOM?"  BECAUSE THAT'S THE CRITICAL FACT.  IF

10   AETNA, IN FACT, MR. CAMPBELL SAYS HIS UNDERSTAND

11   FROM TALKING TO AETNA IS AETNA HAS NO PROBLEM

12   WITH ITS EXHIBITS, I DON'T WANT TO REPRESENT WHAT

13   AETNA SAID OR HASN'T SAID.  BUT IF THAT'S TRUE,

14   YOU HAVE GOT, OF THAT 6,900, 4,500 OF THOSE

15   EXHIBITS BELONG TO BLUE CROSS AND AETNA.  IF

16   AETNA HAS NO OBJECTION, BLUE CROSS CAN'T HAVE AN

17   OBJECTION TO THINGS THAT THEY ARE THE ONLY ONES

18   THAT ARE DESIGNATING THEM AS CONFIDENTIAL.

19             LET ME SPEAK FOR A MOMENT TO THESE

20   LETTERS INVOLVING THE HOSPITALS.  ASIDE FROM THE

21   FACT THOSE HOSPITALS ARE PUTATIVE CLASS MEMBERS

22   REPRESENTED BY PROVIDERS' COUNSEL IN THIS CASE,

23   IF THEY DIDN'T DESIGNATE THOSE LETTERS AS

24   CONFIDENTIAL AND BLUE CROSS IS THE ONLY ONE THAT

25   DID, THEY HAVE GOT NO GROUNDS TO OBJECT TO THOSE

1    DOCUMENTS BEING PRODUCED IF BLUE CROSS IS THE

2    ONLY ONE WHO FELT THEY WERE SUBJECT TO PROTECTIVE

3    ORDER, AND THAT'S TRUE OF ALL THESE THIRD

4    PARTIES.  IF BLUE CROSS IS THE ONLY PARTY THAT

5    DESIGNATED THEM AS CONFIDENTIAL, THEY SHOULD BE

6    PRODUCED IN THIS CASE SUBJECT TO THE PROTECTIVE

7    ORDER THAT EXISTS HERE.

8            WHAT I DID NOT HEAR, JUDGE, IS WHEN

9    THEY GET AROUND TO, SOMETIME BEFORE NEXT JULY, TO

10   OUR REQUEST FOR PRODUCTION, THAT THEY WILL NOT

11   OBJECT BASED ON THE PROTECTIVE ORDER IN THE

12   MICHIGAN CASE.  BECAUSE IF THEY DO, YOU'RE RIGHT,

13   WE ARE RIGHT BACK WHERE WE ARE NOW.  IF THEY WILL

14   STIPULATE TODAY THAT THEY WILL RAISE NO

15   OBJECTIONS BASED ON THAT PROTECTIVE ORDER THEN

16   MAYBE WE SOLVE THAT PROBLEM.  I SUSPECT YOU WON'T

17   GET THAT STIPULATION.

18            YOU ALSO WON'T GET A STIPULATION THESE

19   SAME DOCUMENTS AREN'T GOING TO BE OBJECTED TO ON

20   THE SAME RELEVANCY GROUNDS THAT THEY FILTER IN

21   AND OUT DEPENDING WHETHER OR NOT THEY WANT TO

22   TALK ABOUT BURDEN OR WHETHER THEY WILL PRODUCE

23   THEM.  IN WHICH CASE, WE MAY NEVER SEE THESE

24   DOCUMENTS PRODUCED FOR MONTHS AND MONTHS AND

25   MONTHS, AND THAT'S CONTRARY TO WHAT JUDGE PROCTOR

1    AND WHAT THIS COURT HAS BEEN TRYING TO DO IN THIS

2    CASE.

3            I WOULD SAY THAT, JUDGE, IN THIS

4    INSTANCE, THERE IS CERTAINLY A LARGE -- LET ME

5    JUST SAY THE OFFER TO GIVE US AN EXHIBIT LIST OR

6    A LIST OF THE PERSPECTIVE EXPERTS, FIRST TIME WE

7    HAVE HEARD THAT IS TODAY.  THAT'S THE FIRST

8    GLIMPSE WE HAD OVER THE STONE WALL ON THIS ISSUE

9    AT ALL.  AND I THINK IF THIS COURT CAN IDENTIFY

10   THOSE DOCUMENTS WHICH ARE CLEARLY OUTSIDE THE

11   PROTECTIVE ORDER, OR AT LEAST OUR ONLY SUBJECT OF

12   PROTECTIVE ORDER BECAUSE BLUE CROSS PUT THEM

13   SUBJECT TO THE PROTECTIVE ORDER, AND PROVIDE US

14   WITH THE PRELIMINARY EXHIBIT LIST AND MAKE THEM

15   SUPPLEMENT THIS LIST TO PROVIDE US WITH THE

16   IDENTITY OF WHOEVER DESIGNATED THOSE DOCUMENTS AS

17   CONFIDENTIAL, THEN WE GO A LONG WAY TO FINDING

18   OUT WHETHER OR NOT THESE ARE REAL OBJECTIONS OR

19   WHETHER THIS IS WHAT WE THINK IT IS, WHICH IS AN

20   EFFORT TO MAKE SURE THAT THEY CAN HIDE WITHIN THE

21   LARGER PROCESS THAT WE ARE GOING THROUGH THAT'S

22   TAKEN MONTHS, LARGELY BECAUSE THEY ARE ONE OF

23   MANY DEFENDANTS THAT WE HAVE TO DEAL WITH.  AND

24   THAT GIVES US AN OPPORTUNITY TO GET TO THE REAL

25   CORE DOCUMENTS THAT WE FEEL LIKE WE ARE ENTITLED

1    TO FROM THE MICHIGAN LITIGATION.

2              THE COURT:  ALL RIGHT.

3                 ANYTHING ELSE, MR. CAMPBELL?

4              MR. CAMPBELL:  JUST ONE OR TWO POINTS,

5    YOUR HONOR.

6              THE COURT:  SURE.

7              MR. CAMPBELL:  NUMBER ONE, DURING THE

8    CASE IN MICHIGAN, NUMEROUS HOSPITALS OBJECTED TO

9    INTERVENTION PETITIONS SEEKING THESE DOCUMENTS.

10   AND THEY OBJECTED TO THE BLUE CROSS DESIGNATED

11   DOCUMENTS --

12             THE COURT:  I WILL ASK YOU THE SAME

13   GENERALS QUESTION AS MR. RAGSDALE.  DO WE HAVE A

14   JUDGMENT HOW MANY THIRD PARTIES WE ARE TALKING

15   ABOUT?  ARE WE TALKING ABOUT 25 OR TALKING ABOUT

16   350?

17             MR. STENERSON:  BETWEEN 2- AND 300,

18   YOUR HONOR.

19             MR. CAMPBELL:  BARRY HIT THE NAIL ON

20   THE HEAD.  MANY OF THE HOSPITALS ARE HIS PUTATIVE

21   CLIENTS, AND HE KNOWS WHO THEY ARE IN MICHIGAN.

22   IT'S EASY TO FIND THEM IF THEY ARE IN THIS CLASS

23   OR THIS PUTATIVE CLASS.  WHY CAN'T THEY GET

24   CONSENT FROM THEM?  OR WHY CAN'T THEY SUBPOENA

25   THEM?  THEY ARE PUTATIVE CLASS OF PROVIDERS IN

1    MICHIGAN --

2              THE COURT:  I GUESS THE FLIP SIDE OF

3    THE QUESTION, HOW DIFFICULT IS IT FOR YOU TO GIVE

4    HIM A LIST OF 250 NAMES?

5              MR. CAMPBELL:  YOUR HONOR, YOU KNOW, WE

6    CAN GIVE IT TO HIM.  OUR POSITION IS THEY ALREADY

7    HAVE IT.  THEY HAVE HAD IT, THEY HAD IT IN THAT

8    CASE, AND IT'S, AGAIN, IT'S PART OF THE PILING ON

9    THE BURDENS ON THE DEFENDANT BECAUSE WE ARE

10   FRUSTRATED, CAN'T GET DOCUMENTS AS QUICKLY AS WE

11   WANT.  I DON'T HEAR ANY OFFER TO REDUCE THOSE

12   BURDENS.  I'M SAYING, YOUR HONOR, IF BARRY COMES

13   BACK AND REPRESENTS TO THIS COURT WE DON'T HAVE

14   THE LIST, THEN, SURE, WE CAN GIVE THEM THE LIST.

15   BUT IF THEY HAVE GOT IT ALREADY AND IT'S PART OF

16   THEIR PUTATIVE CLASS, WHY CAN'T THEY GET CONSENT

17   FROM ALL OF THEIR CLIENTS?

18              I WILL SAY THOSE HOSPITALS ARE SO

19   INFLAMED ABOUT THE PRODUCTION OF THAT INFORMATION

20   THOUGH YOUR HONOR AND THE SETTLEMENT HEARING ON

21   THE SHANE CLASS SETTLEMENT, 29 OBJECTED TO ANY,

22   ANY, AND THE SETTLEMENT DOCUMENTS, ANY DISCLOSURE

23   OF ANY OF THEIR INFORMATION.  TWENTY-NINE

24   DIFFERENT HOSPITALS FILED PLEADINGS IN THE COURT,

25   AND DURING THE CLASS SETTLEMENT HEARING.  SO

1    THAT'S HOW STRONG THIS ISSUE IS.

2              I AM SPEAKING ABOUT THEIR PUTATIVE

3    CLIENT.  IT SEEMS LIKE TO ME THERE ARE TWO.

4    THERE ARE REALLY TWO ALTERNATIVES, AND THEY ARE

5    SOMEWHAT QUICK.  SEEK TO INTERVENE AND GET THE

6    JUDGE TO LIFT IT AS TO EVERYTHING OR WHOEVER YOU

7    WANT TO HAVE IT LIFTED AS TO, OR GET THE CONSENT

8    FROM YOUR CLIENTS.

9              AND, YOUR HONOR, IF THEY REPRESENT WE

10   DON'T KNOW WHO OUR CLIENTS ARE, WE DON'T KNOW WHO

11   THOSE THIRD PARTIES WERE, SURE, I THINK WE MAY

12   HAVE A BURDEN TO GIVE THEM A LIST IF YOU ORDER US

13   TO DO SO.  AND I AM PREPARED TO DO THAT, YOUR

14   HONOR.  BUT I THINK THEY ALREADY HAVE IT.

15             AND MR. STENERSON IS GIVING YOU HIS

16   REPRESENTATION OF THEIR INVOLVEMENT.  THEY WERE

17   INVOLVED AND THEY KNEW THEM.  THEY SAT IN

18   DEPOSITIONS, THEY NEGOTIATED THE SHANE

19   SETTLEMENT.  I DON'T KNOW HOW THEY COULD COME

20   INTO COURT AND SAY WE DON'T KNOW IF WE HAVE IT OR

21   NOT OR WE DON'T HAVE IT, BECAUSE THEY WERE THERE

22   IN MICHIGAN IN AN ACTIVE ROLE ALL THE WAY

23   THROUGH, YOUR HONOR.

24             THANK YOU.

25                THE COURT:  THANK YOU.  ANYTHING ELSE?

1          MR. RAGSDALE:  THE ONLY OTHER THING

2     THAT I WOULD ADD IS NOT ON THIS MOTION, JUDGE.

3     WE HAVE NOW FILED THREE DISCOVERY MOTIONS; THE

4     DEFENDANT HAVE FILED A DISCOVERY MOTION.  WE

5     WOULD LIKE ALL THOSE MOTIONS HEARD AT THE OCTOBER

6     5TH STATUS CONFERENCE, IF THAT'S A POSSIBILITY.

7     I DIDN'T KNOW HOW TO RAISE THAT.

8               THE COURT:  AMBER WAS POINTING OUT TO

9     ME WE GOT A NEW MOTION JUST THIS MORNING

10    APPARENTLY DEALING WITH SOME PROCEDURAL ASPECT.

11    I HAVEN'T SEEN IT BUT SHE WAS TELLING ME THIS IS

12    A QUESTION RAISED ABOUT PROCEDURAL ASPECTS WITH

13    30(B)(6) DEPOSITIONS.

14               MR. RAGSDALE:  WE HAVE TWO MOTIONS TO

15    COMPEL WHICH ARE THE FORMALIZED VERSIONS OF THE

16    ISSUES WE RAISED PREVIOUSLY.  WE HAVE ALSO FILED

17    THE MOTION TO AMEND THE PREVIOUS DISCOVERY ORDER

18    DEALING WITH 30(B)(6) MOTIONS.  AND THEN THE

19    DEFENDANTS HAVE FILED A MOTION ASKING YOU TO

20    RECONSIDER THE SOUTH CAROLINA ISSUE INVOLVING --

21               THE COURT:  THE SOUTH CAROLINA ISSUE, I

22    GUESS I AM JUST GOING TO HAVE TO LOOK AT THAT.

23    BECAUSE THAT'S ONE OF THOSE CURIOUS SORTS OF

24    DEALS WHERE -- ARE THEY ASKING ME TO RECONSIDER?

25    OR ARE THEY RELYING ON THE LANGUAGE OF 636 (B)(1)

1    TALKS ABOUT THE DISTRICT JUDGE, QUOTE,

2    RECONSIDERING WHAT I HAVE DONE?  ARE THEY ASKING

3    ME -- THE SIMPLE QUESTION IS, DOES SOUTH CAROLINA

4    WANT ME TO LOOK AT IT AGAIN OR ARE THEY WANTING

5    TO GO APPEAL THAT TO JUDGE PROCTOR?

6              MR. RAGSDALE:  I HESITATE TO SPEAK FOR

7    THEM BUT I WILL.  MY UNDERSTANDING IS THEY WANT

8    YOU TO RECONSIDER THAT, SOME ASPECT OF YOUR

9    ORDER.  BUT I THINK WE CAN GET THAT CLARIFIED FOR

10   YOU.

11             THE COURT:  I GUESS THIS IS

12   PROCEDURALLY PROPER.  I INTEND TO GO BACK THROUGH

13   MR. GENTLE, THE SPECIAL MASTER, TO TRY TO CLARIFY

14   THAT WITH SOUTH CAROLINA.

15             YOU KNOW, I AM HAPPY TO DO WHATEVER, I

16   JUST WANT TO KNOW WHAT YOU WANT.

17             MR. RAGSDALE:  SURE.

18             THE COURT:  DO YOU WANT ME TO LOOK AT

19   IT OR DO YOU WANT JUDGE PROCTOR TO LOOK AT IT?

20             MS. GAINER (VIA TELEPHONE):  YOUR

21   HONOR, THIS IS EMILY GAINER.  I DON'T KNOW IF YOU

22   CAN HEAR ME.

23             THE COURT:  YES, I CAN.

24             MS. GAINER:  YEAH.

25             THE COURT:  A VOICE FROM THE EITHER.

```
 1              MS. GAINER:  GOOD POINT.  WE ARE
 2    ASKING YOUR HONOR TO HANDLE THAT.  WE FILED A
 3    MOTION WITH JUDGE PROCTOR, GRANTED, EXTENDING THE
 4    TIME FOR OUR RECONSIDERATION SO THAT WE COULD
 5    PURSUE THIS WITH YOUR HONOR.
 6              THE COURT:  OKAY.  ALL RIGHT.  DO YOU
 7    HAVE ANY PROBLEM WITH THAT RECONSIDERATION BEING
 8    SET ON THE OCTOBER 5TH DATE?
 9              MS. GAINER:  NO, YOUR HONOR, WE DON'T
10    HAVE ANY PROBLEM WITH THAT.
11              THE COURT:  OKAY.  ALL RIGHT.
12                   ANYTHING ELSE THEN, MR. RAGSDALE?
13              MR. RAGSDALE:  NOTHING FOR THE
14    PLAINTIFFS.
15              THE COURT:  MR. CAMPBELL, ANYTHING
16    ELSE?
17              MR. CAMPBELL:  NO, SIR, YOUR HONOR.
18    THANK YOU, YOUR HONOR.
19              THE COURT:  THANK YOU VERY MUCH.  I AM
20    GOING TO BE TRAVELING NEXT WEEK BUT HOPEFULLY
21    WEEK AFTER NEXT, CERTAINLY BY THE TIME, HOPEFULLY
22    THE OCTOBER FIFTH, I AM GOING TO GET YOU
23    SOMETHING OUT ON THIS.  OKAY?  THANK YOU.
24                   (COURT IN RECESS.)
25
```

```
1   ****************************************************

2              C E R T I F I C A T E

3   ****************************************************

4   IN RE:  BLUE CROSS BLUE SHIELD ANTITRUST

5   LITIGATION MDL 2406

6   CASE #:  2:13-CV-20000-RDP-TMP

7

8       I HEREBY CERTIFY THAT THE FOREGOING

9   TRANSCRIPT IN THE ABOVE-STYLED CAUSE IS TRUE AND

10  ACCURATE.

11  _____      OCTOBER 30, 2015

12  LINDY M. FULLER, RMR, CRR, CBC       DATE

13  FEDERAL OFFICIAL COURT REPORTER

14  HUGO L. BLACK U.S. COURTHOUSE

15  1729 5TH AVENUE NORTH, SUITE 207

16  BIRMINGHAM, ALABAMA  35203

17

18

19

20

21

22

23

24

25
```