FILED
2015 Dec-08  PM 02:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

1

```
 1                UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF ALABAMA
 2                    SOUTHERN DIVISION

 3

 4   IN RE:

 5   BlUE CROSS BLUE SHIELD          2:13-20000-RDP

 6   ANTITRUST LITIGATION,           NOVEMBER 19, 2015

 7   MDL 2406.                       BIRMINGHAM, ALABAMA

 8   * * * * * * * * * * * *

 9       TRANSCRIPT OF MONTHLY DISCOVERY/STATUS CONFERENCE
            BEFORE THE HONORABLE T. MICHAEL PUTNAM,
10              UNITED STATES MAGISTRATE JUDGE

11
     APPEARANCES:
12

13
     FOR BLUE CROSS BLUE SHIELD
14
     ANTITRUST LITIGATION MDL 2406:
15
     ANDREW PHILLIP CAMPBELL, ESQ.
16
     CAMPBELL, GUIN, WILLIAMS, GUY AND
17
     GIDIERE, LLC
18
     BIRMINGHAM, ALABAMA
19

20
     SPECIAL MASTER:
21
     EDGAR C. GENTLE, III
22
     GENTLE, TURNER, SEXTON & HARBISON
23
     HOOVER, ALABAMA
24

25
```

```
 1  APPEARANCES (CONTINUED)

 2

 3  FOR THE PLAINTIFFS:

 4  BARRY RAGSDALE, ESQ.

 5  MEGAN JONES, ESQ.

 6  CHRIS HELLUMS, ESQ.

 7  TUCKER BROWN, ESQ.

 8  GREG DAVIS, ESQ.

 9  NICK ROTH, ESQ.

10

11  FOR THE DEFENDANTS:

12  KIM WEST, ESQ.

13  J.T. MATESTA, ESQ.

14  CARL BURKHALTER, ESQ.

15  DAN LAYTIN, ESQ.

16  EMILY YINGER, ESQ.

17  TRACY ROMAN, ESQ.

18

19  COURT REPORTER:

20  LINDY M. FULLER, RMR, CRR, CBC

21  FEDERAL OFFICIAL COURT REPORTER

22  BIRMINGHAM, ALABAMA

23

24

25
```

```
 1                P R O C E E D I N G S
 2                  (IN OPEN COURT)
 3              THE CLERK:  PLEASE REMAIN SEATED AND
 4     COME TO ORDER.
 5              THE COURT:  GOOD AFTERNOON.  THIS IS IN
 6     THE CASE OF, IN RE:  BLUE CROSS BLUE SHIELD
 7     MULTI-DISTRICT ANTITRUST LITIGATION, MULTI-
 8     DISTRICT LITIGATION NUMBER 2406, A NORTHERN
 9     DISTRICT OF ALABAMA NUMBER 2:13-20000.  AND WE
10     ARE SCHEDULED AT THIS TIME FOR OUR USUAL MONTHLY
11     DISCOVERY CONFERENCE.
12              AND I HAVE PREPARED A LITTLE BIT OF AN
13     AGENDA, AND I AM NOT SURE EXACTLY WHERE THE
14     PARTIES WANT TO GO AS FAR AS DISCUSSIONS, BUT
15     SOME OF THE THINGS THAT I WOULD LIKE TO TAKE UP,
16     FIRST THING I WOULD LIKE TO TAKE UP IS JUST TO
17     GET A REPORT ABOUT THE ONGOING MEET AND CONFER
18     PROCESS.
19              THERE WAS SOME STILL SOME MEETING AND
20     CONFERRING GOING ON ABOUT THE SCOPE OF DOCUMENT
21     PRODUCTION, RELEVANCE OF DOCUMENT PRODUCTION,
22     THINGS OF THAT SORT, AND I WOULD LIKE TO GET SOME
23     INDICATION WHETHER THERE IS PROGRESS BEING MADE
24     ON THAT.  MR. RAGSDALE?
25              MR. RAGSDALE:  THE EASY ANSWER IS YES,
```

```
1    THERE IS PROGRESS BEING MADE.

2              THE COURT:  OKAY.

3              MR. RAGSDALE:  WE HAVE AND CONTINUE TO

4    MEET SINCE OUR LAST VISIT HERE.  IN ADDITION TO

5    THAT, WE ARE WORKING ON SCHEDULING ADDITIONAL

6    MEET AND CONFERS.

7              IN ADDITION, AND I THINK THIS MAY OR

8    MAY NOT BE THE FOCUS OF YOUR QUESTION, BUT WE

9    HAVE SPECIFICALLY ACCELERATED THE MEET AND CONFER

10   PROCESS WITH BLUE CROSS OF ALABAMA, AND THE

11   ASSOCIATION, IN PARTICULAR, IN ORDER AND IN

12   REACTION TO JUDGE PROCTOR'S ORDER.

13             THE COURT:  THAT'S ONE OF THE THINGS

14   THAT I WANTED TO HEAR GENERALLY FROM THE PARTIES

15   ABOUT AS WELL IS DO YOU VIEW THE DISCOVERY

16   PROCESS IN SOMEWHAT OF A DIFFERENT LIGHT NOW,

17   CONSIDERING JUDGE PROCTOR'S MOST RECENT ORDER IN

18   THE CASE?

19             MR. RAGSDALE:  TO BE HONEST, I THINK

20   EVERYBODY IS STILL DIGESTING EXACTLY ITS IMPACT,

21   AND THAT PROBABLY IS A CONTINUING PROCESS.  BUT

22   WE CERTAINLY HAVE VIEWED IT AS AN OPPORTUNITY TO

23   PRIORITIZE SOME OF THE DISCOVERY.  AND, REALLY,

24   BY THAT, I MEAN PRIORITIZE THE RESOURCES AND THE

25   FOCUS OF WHAT WE WANT TO TRY TO GET MORE QUICKLY
```

1    THAN OTHERS.

2            WE DON'T BELIEVE IT MEANS THAT

3    DISCOVERY OUGHT TO SLOW DOWN IN ANY WAY, BUT THE

4    PARTICULAR ASPECTS OF IT CERTAINLY MAY NEED TO BE

5    ACCELERATED, AND WE HAVE BEGUN THOSE DISCUSSIONS,

6    AS I SAID, IN PARTICULAR WITH BLUE CROSS OF

7    ALABAMA.

8            WE HAVE HAD TWO MEET AND CONFERS, AT

9    LEAST, I THINK, IN THE LAST TWO WEEKS; ONE WITH

10   THE ASSOCIATION AND WITH BLUE CROSS OF ALABAMA

11   JOINED BY AND PARTICIPATED IN BY THE OTHER

12   DEFENDANTS AS WELL HERE IN BIRMINGHAM.  AND THEN

13   JUST YESTERDAY, WE HAD A LOVELY STAY INSIDE

14   DURING THE RAIN STORM MEETING WITH BLUE CROSS OF

15   ALABAMA IN WHICH I THINK SIGNIFICANT PROGRESS WAS

16   MADE.

17           I WOULD SAY THAT THERE ARE A LOT OF

18   ISSUES STILL TO BE RESOLVED.  THAT PROBABLY WON'T

19   SURPRISE THE COURT, BUT I WILL SAY THAT WE HAVE

20   EXPERIENCED A HEIGHTENED DEGREE OF COOPERATION

21   AND AN ABILITY TO GET MOVEMENT, PROGRESS TO BE

22   MADE WITH OF ALABAMA AND THE ASSOCIATION.

23           I THINK YOU ARE GOING TO HEAR WE ARE

24   ALSO WORKING ON AN ADDITIONAL MEET AND CONFER

25   WITH THE ASSOCIATION THE WEEK AFTER THANKSGIVING

```
1    AS WELL.
2             THE COURT:  MS. WEST?
3             MS. WEST:  YOUR HONOR, FOR THE
4    ASSOCIATION, MS. SARAH DONNELL, MR. LAYTIN.
5             MR. LAYTIN:  THANK YOU, YOUR HONOR.
6    SARAH DONNELL WILL ADDRESS THE COURT WHEN IT
7    COMES TO THE CONFIDENTIALITY MOTION.
8             WE GENERALLY AGREE THAT WE HAVE BEEN
9    HAVING PRODUCTIVE CONVERSATIONS BETWEEN THE
10   PLAINTIFFS' AND THE ASSOCIATION.  WE SEE IT AS AN
11   OPPORTUNITY TO START PRODUCING DOCUMENTS WITH
12   EVEN MORE, EVEN MORE EXPEDITED, ACCELERATED
13   SCHEDULE.  WE HAVE BEEN MEET AND CONFERRING WITH
14   PLAINTIFFS IN WAYS THAT WE CAN STREAMLINE AND
15   EXPEDITE AND MAKE MORE EFFICIENT THE DISCOVERY
16   PROCESS.  IN PARTICULAR, THINGS LIKE EXPEDITED
17   MEET AND CONFER PROCESS REGARDING THE SEARCH
18   METHODOLOGY THAT WE'LL USE, THE APPROPRIATE END
19   DATE FOR DISCOVERY CUT OFF, AND THE APPROPRIATE
20   CUSTODIAN LIST.
21            WE HAVE MET AND CONFERRED WITH THEM ON
22   THE SUBJECTS.  WE HAVE BEEN AWAY, GIVEN
23   PLAINTIFFS A COMPREHENSIVE PROPOSAL IN THAT
24   REGARD.  WE HAVE BEEN WAITING FOR A RESPONSE.  WE
25   ARE HAPPY TO MEET AND CONFER WITH THEM THE WEEK
```

```
1    AFTER THANKSGIVING AND WE HAVE A PROPOSAL IN THAT
2    REGARD BECAUSE WE WOULD LIKE TO DO EVERYTHING WE
3    CAN TO MEET THE JANUARY 2017 DATE THAT JUDGE
4    PROCTOR HAS ORDERED, AND WE WILL MEET IT.  IN
5    ORDER TO DO THAT THOUGH, WE NEED CLARITY ON
6    THINGS, IN THE EVENT WE ARE NOT ABLE TO REACH AN
7    AGREEMENT.
8            SO, WHAT WE PROPOSE IN THAT REGARD
9    SUBJECT TO, OF COURSE, ANYTHING THAT YOUR HONOR
10   WANTS TO ORDER IS THAT THE NEXT DISCOVERY
11   CONFERENCE IN DECEMBER THAT WE HAVE DECIDED ANY
12   OF THOSE ISSUES RELATING TO SEARCH METHODOLOGY,
13   TIME PERIOD, AND CUSTODIANS, THAT WE WOULD BE
14   HAPPY TO, SAY, DO A DECEMBER 10TH EXCHANGE WITH
15   PLAINTIFFS ON OUR JUST POSITION PAPERS AND TO
16   HAVE THOSE ISSUES DEALT WITH SO THAT WE CAN MOVE
17   FORWARD.
18           THE COURT:  MR. RAGSDALE, HAS ANYBODY,
19   THE PLAINTIFF'S SIDE HAVE ANY KIND OF FEELING
20   ABOUT ESTABLISHING A DECEMBER 10TH DEADLINE FOR
21   HAVING -- I HESITATE TO SAY COMPETING PROPOSALS,
22   BUT PROPOSALS FOR THE SEARCH METHODOLOGIES,
23   CUSTODIANS, THINGS OF THAT SORT?
24           MR. LAYTIN:  ONE POINT OF
25   CLARIFICATION.  I AM SPEAKING NOW ON BEHALF OF
```

```
 1    THE ASSOCIATION.
 2              THE COURT:  SURE.
 3              MR. RAGSDALE:  WE ARE IN FAVOR OF
 4    EXPEDITING ANYTHING AND EVERYTHING.  AND
 5    DEPENDING ON WHEN WE HAVE THAT MEET AND CONFER,
 6    WE THINK DECEMBER 10TH IS A REASONABLE
 7    OPPORTUNITY TO GET THAT INFORMATION TO YOU.  AND
 8    WE EMBRACE THE ASSOCIATION'S PROPOSAL REGARDING
 9    THAT.
10              THE COURT:  OF COURSE, AS MENTIONED
11    ALREADY, THE NEXT DISCOVERY CONFERENCE IS
12    DECEMBER 15TH.  SO WHY DON'T WE THEN PLAN TO
13    HAVE, HOPEFULLY, A VERY PRODUCTIVE MEET AND
14    CONFER IN THE FIRST WEEK OF DECEMBER RIGHT AFTER
15    THANKSGIVING?  AND THEN DEPENDING ON WHAT'S LEFT
16    OVER IN CONTROVERSY, HAVE TWO PROPOSALS SUBMITTED
17    IN EXCHANGE BETWEEN THE PARTIES, BETWEEN THE
18    ASSOCIATION AND THE PLAINTIFFS, AND PRESENTED TO
19    THE COURT BY DECEMBER 10TH.  AND THEN WE'LL SEE
20    WHERE WE ARE WHEN WE CONFER, WHEN WE HAVE OUR
21    CONFERENCE ON THE 15TH THEN.
22              MR. LAYTIN:  IT WOULD BE HELPFUL TO GET
23    A PROPOSAL FROM PLAINTIFFS IN ADVANCE OF OUR MEET
24    AND CONFER WHERE WE CAN UNDERSTAND WHAT THE
25    PARTIES' POSITIONS ARE.
```

```
1              MR. RAGSDALE:  WE DO PLAN ON

2    CELEBRATING THANKSGIVING THIS YEAR.

3              THE COURT:  I UNDERSTAND.  THANK YOU.

4    ANYTHING ELSE?

5              MR. LAYTIN:  NO.  THANK YOU, YOUR

6    HONOR.

7              THE COURT:  MS. YINGER?

8              MS. YINGER:  THANK YOU, YOUR HONOR.

9    EMILY YINGER ON BEHALF OF THE OTHER DEFENDANTS,

10   THE OTHER DEFENDANTS OTHER THAN THE ASSOCIATION

11   AND THE ALABAMA PLAN.

12             WE CONTINUE TO WORK WITH THE PLAINTIFFS

13   ON COMING TO AGREEMENTS ON STRUCTURED DATA AND

14   UNSTRUCTURED DATA.  WITH THE PROVIDER PLANS, WE

15   HAVE ACTUALLY REACHED ON BEHALF OF THE HOGAN

16   LEVELS DEFENDANT'S, SUBSTANTIAL AGREEMENT ON

17   STRUCTURED DATA FIELDS THAT WE WILL NOW APPLY TO

18   SPECIFIC CLIENTS DATA SYSTEMS.  AND AS WE HAVE

19   REPORTED BEFORE, WE ARE SUBSTANTIALLY AGREED ON

20   THE SCOPE OF 159 UNSTRUCTURED RFPs.

21             WE ALSO ARE INTERESTED IN WHAT THE

22   PLAINTIFFS WOULD LIKE TO PRIORITIZE IN TERMS OF

23   DISCOVERY IN LIGHT OF THE STREAMLINING ORDER AND

24   WE ARE AWAITING THEIR PROPOSAL ON THAT.  WE HAVE

25   TALKED TO THEM ABOUT THAT AND THEY HAVE AGREED
```

1    THEY WILL GIVE US SOMETHING.  WE ARE HOPING WE'LL

2    GET SOMETHING RIGHT AT THE BEGINNING OF DECEMBER.

3    SO WE CAN ADJUST RESOURCES AND FOCUS, AS MR.

4    RAGSDALE MENTIONED, IN THE RIGHT DIRECTION.

5              SO, WE ARE MAKING PROGRESS.  ONE OF THE

6    THINGS THAT THE PARTIES DISCUSSED, THE RECENT

7    MEET AND CONFER IN BIRMINGHAM WAS AN AGREED UPON,

8    WAS MOVING ONE OF THE DEADLINES IN DISCOVERY

9    ORDER NUMBER ONE.  THERE IS A DECEMBER 14TH

10   DEADLINE FOR SUPPLEMENTING WITNESS DISCLOSURES

11   AND WE ALL RECOGNIZE THAT THAT IS SOMETHING THAT

12   NEEDS TO BE ADJUSTED NOW.

13             WE HAVE PROVIDED OUR PROPOSAL TO THE

14   PLAINTIFFS AND THEY ARE LOOKING AT THAT AND HAVE

15   PLEDGED TO GET BACK TO US SOON ON WHAT THOSE NEW

16   DATES SHOULD BE.  BUT WE ARE IN AGREEMENT AND,

17   THAT THAT DECEMBER 14TH DATE SHOULD BE MOVED.

18             THE COURT:  ALL RIGHT.  I AM ASSUMING,

19   BECAUSE THAT COMES UP ON DECEMBER 14TH, THAT TO

20   THE EXTENT THE PARTIES CAN REACH SOME KIND OF

21   AGREEMENT FOR AN EXTENDED DATE ON THAT, THEN I

22   SHOULD BE GETTING THAT THE FIRST WEEK OF

23   DECEMBER, I WOULD THINK.

24             MS. YINGER:  I WOULD THINK SO, TOO.

25                  DOES THAT WORK?

1             MR. RAGSDALE:  YES.

2             MS. YINGER:  THANK YOU, YOUR HONOR.

3             THE COURT:  THANK YOU.

4             MS. ROMAN:  YOUR HONOR?

5             THE COURT:  YES, MA'AM.

6             MS. ROMAN:  TRACY ROMAN ON BEHALF OF

7  FIVE OF THE DEFENDANTS WHO MOVE TO DISMISS ON

8  PERSONAL JURISDICTION AND VENUE GROUND IN THE

9  ALABAMA CASES IN CONWAY AND A.M.

10           AND I JUST WANTED TO MENTION TO THE

11  COURT THAT IN OUR PROPOSAL TO THE PLAINTIFFS FOR

12  THE ACCELERATED DISCOVERY PROCESS, WE HAVE ASKED

13  THAT THEY CONSIDER INCLUDING IN THAT ACCELERATED

14  DISCOVERY, DISCOVERY RELATING TO PERSONAL

15  JURISDICTION VENUE IN THE ALABAMA CASES AND THEY

16  ARE LOOKING AT THAT NOW.  BUT I DID WANT TO

17  MENTION THAT TO THE COURT.  WE WOULD LIKE TO GET

18  THAT DONE.  IT SHOULDN'T TAKE LONG.  THEY ISSUED

19  THEIR WRITTEN REQUESTS IN THE SUMMER.  I THINK

20  MOST OF US RESPONDED IN EARLY AUGUST, SO WE NEED

21  TO JUST MEET AND CONFER AND GET THAT DONE.  AND

22  WE THINK A 60-DAY PERIOD WOULD BE REASONABLE BUT

23  WE WOULD LIKE TO GET THAT COMPLETED.

24           THE COURT:  IS THERE A PLAN OR SCHEDULE

25  FOR ANOTHER MEET AND CONFER ABOUT THAT ISSUE.

```
1              MS. ROMAN:  THAT IS PART OF THE
2   PROPOSAL THAT MS. YINGER MENTIONED THAT WE SENT
3   OVER TO THE PLAINTIFFS, SO WE ARE WAITING FOR
4   RESPONSE ON THAT.
5              THE COURT:  OKAY.
6               MS. ROMAN:  BUT I WANTED THE COURT TO
7   BE AWARE OF IT.
8               THE COURT:  ALL RIGHT.  GOOD.  THANK
9   YOU.
10              GIVEN THE STREAMLINING ORDER THAT SORT
11  OF FOCUSES ON BLUE CROSS OF ALABAMA, DOES ANYONE
12  WISH TO SPEAK ABOUT DISCOVERY FOR BLUE CROSS
13  ALABAMA?
14              MR. MATESTA:  YES, SIR.  YOUR HONOR,
15  J.T. MATESTA.   YOUR HONOR, I WILL ECHO MR.
16  RAGSDALE'S  COMMENTS THAT WE ARE MAKING
17  TREMENDOUS PROGRESS WITH RESPECT TO THE
18  PLAINTIFFS ON APPROPRIATE DISCOVERY PARAMETERS ON
19  BEHALF OF ALABAMA.  WE HAD A FIVE HOUR MEET AND
20  CONFER YESTERDAY WHERE WE MADE A LOT OF PROGRESS.
21  BOTH PARTIES LEFT WITH SPECIFIC ACTION ITEMS.
22  AND I THINK WE HAVE DISCUSSED WE ARE HAVING A
23  STANDING MEETING EVERY TWO WEEKS TO REVISIT THOSE
24  ISSUES.
25              WE HAVE INFORMED THE PLAINTIFFS IT'S
```

1    OUR EXPECTATION THAT THOSE MEET AND CONFERS WILL

2    BE COMPLETED BY THE END OF THE YEAR SO THAT WE

3    ARE IN A POSITION TO BEGIN DEVELOPING QUERIES IN

4    PARTICULAR FOR OUR STRUCTURED DATA SYSTEMS AND

5    BEGIN TO GET THAT DATA OUT TO THE PLAINTIFFS.

6             THIS WEEK, WE BEGAN OUR UNSTRUCTURED

7    DOCUMENT PRODUCTION FOR THOSE REQUESTS FOR WHICH

8    WE HAVE REACHED AGREEMENT.  AND IT'S OUR

9    INTENTION TO CONTINUE TO MAKE A ROLLING

10   PRODUCTION OF THOSE DOCUMENTS FOR THOSE RFPs

11   WHERE WE HAVE AGREEMENT.  FROM MY VANTAGE POINT,

12   WE HAVE ABOUT 90 PERCENT OF THE REQUESTS WE HAVE

13   AGREED AS TO THE PROPER SCOPE.  WE HAVE STILL GOT

14   A COUPLE OF THRESHOLD ISSUES THAT WE INTEND TO

15   RESOLVE IN THE COMING WEEKS.  BUT IT'S OUR

16   EXPECTATION THAT WE'LL PRESENT TO THE COURT BY

17   THE END OF THE YEAR THAT WE HAVE REACHED

18   AGREEMENT OR HERE ARE THE SHORT LIST OF ISSUES

19   THAT WE NEED YOU TO RESOLVE.

20            THE COURT:  YOU DON'T ANTICIPATE THAT

21   THAT WILL BE RESOLVED BY THE NEXT CONFERENCE ON

22   DECEMBER 15TH?  YOU ARE LOOKING AT END OF THE

23   YEAR SORT OF THING, PERHAPS IT'S OVER INTO

24   JANUARY BEFORE WE HAVE ANY KIND OF CONFERENCE

25   ABOUT IT?

```
1              MR. MATESTA:  I THINK THERE MAY BE ONE
2    OR TWO ISSUES THAT GET PRESENTED AT THE DECEMBER
3    HEARING.  WE DISCUSSED OFF LINE YESTERDAY WHETHER
4    OR NOT IT MADE SENSE TO PERHAPS HAVE A SPECIAL
5    SETTING WITH YOUR HONOR TOWARD THE END OF THE
6    YEAR.  I THINK WE HAVE GOT A SORT OF MEET IN THE
7    NEXT TWO WEEKS AND SEE WHERE THE STATUS LIES WITH
8    RESPECT TO THE OUTSTANDING MATTERS, AND THEN
9    WE'LL COME BACK TO THE COURT AND ADVISE YOU AS TO
10   WHERE WE THINK WE ARE.
11              THE COURT:  ALL RIGHT.  ANYONE ELSE
12   WISH TO REPORT JUST GENERALLY ABOUT THE MEET AND
13   CONFER PROCESS, WHAT MAY BE ON THE HORIZON FOR A
14   MEET AND CONFER?
15              AND I GUESS, DOVETAILING INTO THAT, AND
16   I THINK WE HAVE HEARD SOME ALREADY, WHAT SORT OF
17   ISSUES DO PARTIES ANTICIPATE COMING UP FOR THE
18   DECEMBER CONFERENCE?
19              WE ALREADY HAVE THE POSSIBILITY OF
20   COMPETING PLANS FOR BLUE CROSS BLUE SHIELD
21   ASSOCIATION DOCUMENT PRODUCTION DISCOVERY.
22   HOPEFULLY, THAT WILL BE SOMETHING THAT WILL BE
23   READY TO BE DISCUSSED IN DECEMBER.  BUT ARE THERE
24   OTHER ISSUES THAT MAY COME UP FOR DISCUSSION IN
25   DECEMBER?  MR. RAGSDALE?
```

1          MR. RAGSDALE:  I WOULD SAY INEVITABLY

2     THERE ARE.  I MEAN, I AM AN OPTIMIST, BUT I AM

3     NOT THAT MUCH OF AN OPTIMIST.

4          THE COURT:  TURKEY IS A GOOD WAY OF

5     REACHING PEACE AMONG PEOPLE.

6          MR. RAGSDALE:  I AGREE WITH THAT.  AND

7     I THINK THERE IS SOMETHING TO BE SAID FOR THAT.

8     YOU KNOW, THERE WILL BE ISSUES IN THE BIG

9     PICTURE, AND I THINK THE COURT IS AWARE OF THIS.

10    ONE OF THE ISSUES THAT HAS CONFOUNDED US A LITTLE

11    BIT IS THE AMOUNT OF TIME THAT IT WILL TAKE

12    PARTICULAR DEFENDANTS TO PRODUCE SOME OF THE DATA

13    THAT WE NEED TO HAVE PRODUCED.  AND WE ARE

14    WORKING, FOR EXAMPLE, WITH BLUE CROSS OF ALABAMA

15    ON THOSE DATE QUESTIONS TO TRY TO GET THEM SOONER

16    RATHER THAN LATER.

17          THE COURT:  TALKING ABOUT STRUCTURED

18    DATA --

19          MR. RAGSDALE:  YES.

20          THE COURT:  -- CLIENT-INSURED

21    PRINTOUTS, THINGS OF THAT SORT, PRINTOUTS OF

22    INSURED ACCOUNTS, INSURED CLAIMS?

23          MR. RAGSDALE:  YES.  AND THE ISSUE,

24    FRANKLY, IS THAT WE HAVE, BASED ON JUDGE

25    PROCTOR'S ORDER, A SET AMOUNT OF TIME OBVIOUSLY

1    TO GET THE CASE READY FOR TRIAL.  WE WOULD PREFER

2    THAT MOST OF THAT TIME NOT BE TAKEN UP ON WAITING

3    FOR THE DEFENDANTS TO PRODUCE THE DATA BUT WE

4    ALSO RECOGNIZE THERE ARE TECHNICAL LIMITATIONS ON

5    THEIR ABILITY, AND WE HAVE DISCUSSED THOSE WITH

6    THEM.

7            BUT WE, AT SOME POINT, ARE GOING TO

8    HAVE TO, I THINK, SET SOME INTERIM DEADLINES.  WE

9    ARE NEGOTIATING AND TALKING ABOUT THOSE,

10   CERTAINLY NOT PREPARED TO GIVE THOSE TO YOU

11   TODAY.  WE MAY BE IN A POSITION TO AT LEAST

12   DISCUSS THOSE AS PART OF OUR COMPETING PROPOSALS

13   BUT THAT IS AN ISSUE THAT'S ONGOING AND NOT RIPE

14   FOR PRESENTATION TO THE COURT.  BUT AT SOME

15   POINT, WE'RE GOING TO HAVE TO CONFRONT THE NOTION

16   OF THE TECHNICAL LIMITATION TIME PERIODS, HOW

17   LONG THAT'S GOING TO TAKE, AND HOW LONG IT'S

18   GOING TO TAKE FOR US ONCE WE GET THAT DATA FOR

19   OUR EXPERTS TO BE PREPARED.

20           THOSE KIND OF ISSUES ARE GOING TO HAVE

21   RAMIFICATIONS UP AND DOWN THROUGH THE SCHEDULE

22   THAT I HOPE WE'LL BE ABLE TO NARROW THOSE WHEN WE

23   PRESENT THEM TO YOU IN DECEMBER.

24           ONE OTHER ISSUE THAT I KNOW IS

25   PRESENTLY BEFORE THE COURT IS THE QUESTION OF

1   30(B)(6) DEPOSITIONS.  THAT ISSUE WE CONTINUE TO

2   TALK ABOUT IN ADDITION TO OBVIOUSLY ANTICIPATING

3   THE COURT'S RULING ON THAT, BUT THAT WILL START

4   TO PERCOLATE AFTER THE FIRST OF THE YEAR.

5            THE COURT:  ARE THE PLAINTIFFS READY TO

6   START TAKING 30(B)(6) DEPOSITIONS IN CERTAIN

7   AREAS?  I RECOGNIZE YOU STILL HAVE DOCUMENT,

8   ROLLING DOCUMENT PRODUCTION COMING TO YOU.  BUT

9   ARE THERE AREAS OF INQUIRY WHERE THE PLAINTIFFS

10   ARE READY IN THE NEXT 20 DAYS, 30 DAYS, TO

11   ACTUALLY START TAKING DEPOSITIONS?

12            MR. RAGSDALE:  WELL, KEEP IN MIND THERE

13   ARE OBVIOUSLY DEADLINES FOR NOTICE TO GO OUT.

14            THE COURT:  SURE; SURE.

15            MR. RAGSDALE:  WE HAVE NOT NOTICED

16   THOSE DEPOSITIONS WITH THE EXCEPTION OF THE SOUTH

17   CAROLINA DEPOSITIONS.  WE ARE READY TO BEGIN

18   TAKING THOSE AND WE ARE READY TO BE BEING TAKING

19   OTHER 30(B)(6) DEPOSITIONS.

20            THE COURT:  OKAY.

21            MR. RAGSDALE:  BUT OBVIOUSLY, WE DON'T

22   WANT TO WALK INTO A SITUATION WHERE WE ONLY GET

23   TO TAKE ONE OR WE MAY BE IN A SITUATION WHERE WE

24   DON'T WANT TO FORECLOSE THE POSSIBILITY TO

25   ADDRESS DISCREET TOPICS.

1           SO THE ANSWER IS YES, WE ARE READY,

2    BUT THAT WILL PROBABLY AGAIN COME IN MORE AFTER

3    THE FIRST OF YEAR.

4           THE COURT:  JUST AS A, THIS MAY BE

5    JUMPING TO A DIFFERENT SUBJECT.  BUT JUST AS A --

6    AND I CERTAINLY DON'T MEAN TO SUGGEST THIS IS

7    NECESSARILY THE COURT'S VIEW OF IT, BUT THINKING

8    ABOUT THE 30(B)(6) DEPOSITIONS, IF WE WERE TO

9    STRUCTURE 30(B)(6) DEPOSITIONS TO SAY, IN EFFECT,

10   ALL RIGHT, PLAINTIFFS, YOU CAN BREAK YOUR

11   30(B)(6) DEPOSITIONS UP INTO THREE SESSIONS

12   WITHOUT LEAVE OF COURT.  IF YOU WANT TO TAKE BLUE

13   CROSS OF SHANGRI-LA, THEIR DEPOSITION, YOU CAN DO

14   IT IN THREE SESSIONS.  YOU HAVE TO TELL SHANGRI-

15   LA AHEAD OF TIME WHAT THE AREAS OF INQUIRY IS

16   GOING TO BE IN EACH OF THOSE THREE SECTIONS SO

17   THAT THERE CAN BE ASSESSMENT ABOUT WHETHER THERE

18   IS ANY KIND OF UNDUE OVERLAP BETWEEN THEM.  THEN

19   AFTER THAT, TO THE EXTENT THAT YOU USE UP YOUR

20   THREE AND THEN YOU FEEL LIKE YOU STILL NEED TO

21   TAKE IT ONE MORE TIME, IT WOULD BE LEAVE OF COURT

22   THEN AT THAT POINT.  YOU HAVE GOT TO COME AND GET

23   LEAVE OF COURT.  IS THAT SOMETHING THAT COULD

24   WORK AS FAR AS PLAINTIFFS ARE CONCERNED?

25           MR. RAGSDALE:  YES.  YES.  SORRY, I

1    DIDN'T MEAN TO INTERRUPT YOU.

2              THE COURT:  THAT'S FINE.

3              MR. RAGSDALE:  YES, THAT WOULD WORK.

4    I THINK THAT WOULD ADDRESS A LOT OF THE CONCERNS,

5    FRANKLY, ALL THE CONCERNS THE DEFENDANTS HAVE

6    RAISED AND SOLVE THE QUANDARY WE FIND OURSELVES

7    IN.

8              THE COURT:  ALL RIGHT.

9              MR. RAGSDALE:  LET ME SAY THERE ARE

10   ALSO PROBABLY LIKELY TO BE A NUMBER OF ISSUES

11   REGARDING SCOPE, REGARDING -- MR. LAYTIN

12   MENTIONED AN END DATE.  WE ARE GOING TO MAKE

13   PROGRESS ON THOSE.  AS I SAID, THE ASSOCIATION

14   HAS BEEN FORTHCOMING IN THEIR WILLINGNESS TO TALK

15   ABOUT THOSE.

16             THE PROGRESS WE HAVE MADE, I WANT TO

17   MAKE SURE THAT THE COURT DOESN'T UNDERSTAND THAT

18   TO MEAN THERE WILL NOT BE DISPUTES.  ONE OF THE

19   THINGS WE HAVE MADE PROGRESS ON IS IDENTIFYING

20   THOSE THINGS THAT WE CAN'T AGREE ON.  BUT THAT'S

21   HELPFUL, TOO, FRANKLY.

22             THE COURT:  IN ALL SERIOUSNESS, IT IS

23   HELPFUL TO UNDERSTAND THE NATURE OF THE

24   DISAGREEMENTS BETWEEN THE PARTIES AND WHAT THEY

25   ARE REALLY ABOUT.  IT REALLY IS.

```
 1            MS. YINGER, DO YOU WISH TO COMMENT

 2     ABOUT THE -- I AM NOT SAYING PROPOSAL, BUT THE

 3     30(B)(6) DEPOSITIONS BEING BROKEN INTO THREE

 4     SECTIONS?

 5            MS. YINGER:  WELL, I THINK THE ISSUE,

 6     YOUR HONOR, AGAIN, THAT WOULD BE A RULE THAT

 7     APPLIES ACROSS THE BOARD WHEN WE THINK THAT IT IS

 8     MUCH BETTER FOR THESE KIND OF USES WITH RESPECT

 9     TO CONCRETE NOTICE OF DEPOSITION INSTEAD OF IN

10     THE ABSTRACT.  SO, FOR EXAMPLE, THE SOUTH

11     CAROLINA DEPOSITION IS A GREAT EXAMPLE.  WE HAVE

12     NOT TAKEN THE POSITION THAT THAT IS THE ONE AND

13     ONLY 30(B)(6) OF SOUTH CAROLINA.  WE RECOGNIZE

14     THIS IS A SEPARATE ISSUE --

15            THE COURT:  RIGHT.

16            MS. YINGER:  -- INVOLVES SEPARATE

17     WITNESSES.  AND WHAT WE THINK SHOULD HAPPEN,

18     WHICH IS HOW WE HAVE WORKED WITH MANY OF THE

19     COUNSEL REPRESENTING PLAINTIFFS IN THIS CASE AND

20     OTHER CASES IS THAT WE SHOULD MEET AND CONFER.

21     IF THEY ARE CONCERNED THAT THEY NEED TO TAKE A

22     SPECIFIC DEPOSITION THAT IS SOMEWHAT SHORT OF THE

23     WHOLE 30(B)(6), THEY SHOULD TALK TO US ABOUT IT,

24     WE SHOULD FIND OUT WHAT THE AREA IS SPECIFICALLY

25     SO THAT WE CAN EVALUATE WHETHER IT'S A SEPARATE
```

1    TOPIC OR LEAD TO OVERLAP AND DUPLICATION AND

2    REPEATED DEPOSITIONS OF SAME WITNESSES OR THINGS

3    LIKE THAT WHICH REALLY NEEDS TO BE AVOIDED.

4              SO REALLY, ALL WE ARE SAYING IS WE

5    WANT TO ADDRESS THIS WITH A SPECIFIC SITUATION

6    BEFORE US, BEFORE THE PARTIES, SO WE CAN EVALUATE

7    WHAT THE PLAINTIFFS ARE ACTUALLY ASKING FOR.  WE

8    HAVE WORKED THESE OUT IN THE PAST WITH THESE SAME

9    LAWYERS AND WE HAVEN'T HAD TO HAVE KIND OF AN

10   OVER-ARCHING RULE THAT JUST MAY BE INAPPROPRIATE,

11   GIVEN THE HUGE VARIETY OF PARTIES IN THIS CASE.

12             THE COURT:  AND I AM NOT SURE,

13   CERTAINLY I DON'T KNOW WHETHER, WITH RESPECT TO

14   ALL OF THE DEFENDANTS IN THE CASE WHETHER THE

15   PLAINTIFFS WOULD WANT TO BREAK UP THEIR 30(B)(6)

16   DEPOSITIONS INTO MULTIPLE SECTIONS FOR ALL OF

17   THEM.  MAY BE FOR SOME DEFENDANTS, THEY MAY WANT

18   TO TAKE A SINGLE 30(B)(6) DEPOSITION.  I DON'T

19   KNOW THAT.

20             BUT, IF, FOR EXAMPLE, THE PROCEDURE

21   WERE THAT THE PLAINTIFFS WANTED TO UTILIZE A

22   MULTIPLE SESSION FORMAT FOR TAKING A 30(B)(6)

23   DEPOSITION, THAT BEFORE THEY START THEY GIVE YOU

24   THE BREAKDOWN OF AREAS OF INQUIRY, THE TYPICAL

25   30(B)(6), THIS IS WHAT WE ARE GOING TO ASK ABOUT,

```
 1   BUT THEY DO IT SHOWING YOU THE THREE DIFFERENT
 2   SESSIONS.  AND TO THE EXTENT THEN THAT YOU
 3   BELIEVE THERE IS UNDUE OVERLAP, THERE CAN BE A
 4   MEET AND CONFER BEFORE THE DEPOSITIONS START OR
 5   YOU CAN SEEK SOME KIND OF RELIEF FROM THE COURT
 6   OF SOME SORT.
 7            BUT IF YOU GET THAT IN ADVANCE,
 8   PLAINTIFFS SAY IN SESSION ONE WE ARE GOING TO ASK
 9   ABOUT A, B, C.  IN SESSION TWO, WE ARE GOING TO
10   ASK ABOUT C, D, E.  AND IN SESSION THREE, WE ARE
11   GOING TO ASK ABOUT X, Y, Z.  YOU GET THAT IN
12   ADVANCE.  DOES THAT GIVE YOU ANY KIND OF SORT OF
13   FOUNDATION FOR EVALUATING OVERLAP, DUPLICATION,
14   THAT SORT OF THING?
15            MS. YINGER:  IT DOES.  IT DOES.  IF WE
16   HAVE THAT IN ADVANCE, IT SOUNDS TO ME LIKE IT'S
17   REALLY THEIR COMPLETE 30(B)(6) NOTICE ANYWAY AND
18   THEN WE CAN MEET AND CONFER WITH THEM AND TALK
19   ABOUT THEY SEE THESE PARTICULAR AREAS AS SEPARATE
20   AND DISTINCT.  WELL, HERE'S WHY SOME OF THEM ARE,
21   HERE'S WHY SOME OF THEM AREN'T.  AND WE CAN WORK
22   THAT OUT.
23            SO, I THINK WE ARE THINKING ABOUT THE
24   SAME THING.  IT'S JUST INSTEAD OF IMPOSING SOME
25   RULE WHICH GIVES THEM FREE REIN TO AUTOMATICALLY
```

1    DO THREE WHERE IT MAY BE INAPPROPRIATE TO DO

2    THREE, WE THINK WE SHOULD FOLLOW THE REGULAR RULE

3    AND GET THE NOTICE, MEET AND CONFER.  IF THEY

4    REALLY FEEL THERE'S SOMETHING THAT NEEDS TO BE

5    BROKEN OFF, THEN LETS TALK ABOUT IT AND LETS

6    STRUCTURE IT IN A WAY SO THERE ISN'T THAT SORT OF

7    OVERLAP AND WE'RE NOT SUBJECTING PEOPLE TO

8    MULTIPLE DEPOSITIONS.

9         THE COURT;  YOU RARELY SEE IT, BUT

10   THEORETICALLY 30(B)(6) AUTHORIZES TAKING

11   DEPOSITIONS FROM MULTIPLE WITNESSES.  TYPICALLY,

12   THE 30(B)(6) DEPOSITION, THE CORPORATE ENTITY

13   PUTS UP ONE PERSON TO SPEAK FOR IT.  BUT IN

14   THEORY 30(B)(6) SAYS THE CORPORATE ENTITY CAN

15   DESIGNATE ONE OR MORE PERSONS TO TESTIFY.  SO

16   IT'S THEORETICALLY POSSIBLE THAT IN ANY 30(B)(6)

17   DEPOSITION SITUATION YOU MIGHT HAVE TWO OR THREE

18   OR FOUR DIFFERENT WITNESSES THAT ARE EXAMINED

19   WHICH WOULD OPEN THE POSSIBILITY THAT THOSE

20   WITNESSES COULD BE EXAMINED AT DIFFERENT TIMES.

21        MS. YINGER:  THAT'S RIGHT.  THOSE ARE

22   PRECISELY THE KIND OF SITUATIONS WE HAVE DEALT

23   WITH SOME OF THESE SAME PLAINTIFF'S COUNSEL

24   BEFORE.  I EXPECT THERE WILL BE DEPOSITIONS IN

25   THIS CASE WHERE WE PUT UP MORE THAN ONE WITNESS

1    BECAUSE THE ISSUES COVER A BROAD RANGE OF

2    DIFFERENT BUSINESS FUNCTIONS.

3           THE COURT:  RIGHT.

4           MS. YINGER:  THAT'S TRUE WITH OTHER

5    CASES WE HAVE WORKED ON WITH THEM AND WE HAVE

6    WORKED THAT OUT.  THAT'S WHY I AM OPTIMISTIC THAT

7    WE CAN DO THIS IN A WAY THAT MAKES SENSE FOR

8    EVERYONE AND AVOID ANY SORT OF ABUSE OR

9    DUPLICATION OR OVERLAP WITHOUT A RULE THAT MIGHT

10   NOT BE APPROPRIATE IN SOME INSTANCES.

11          THANK YOU.

12          THE COURT:  ANYONE ELSE HAVE ANY

13   COMMENT ABOUT THAT?  MR. MATESTA, ANYONE?

14          MR. MATESTA:  YOUR HONOR, I HAVE GOT A

15   COMMENT ABOUT TECHNICAL LIMITATIONS BUT NOT THE

16   30 (B)(6).

17          THE COURT:  GO AHEAD.

18          MR. MATESTA:  IF I MAY BRIEFLY VISIT

19   THAT POINT BECAUSE I DON'T WANT THE COURT TO

20   LEAVE WITH THE IMPRESSION FROM THIS HEARING THAT

21   ALABAMA HAS BEEN DELAYING DISCOVERY ON THAT

22   FRONT.

23          WE HAD A MEET AND CONFER IN JUNE OF

24   THIS YEAR WHERE I INFORMED BOTH PLAINTIFFS THAT

25   WE WOULD NEED A FULL NINE MONTHS TO PROCESS

1    EXECUTIVE DATA FROM OUR CLAIM SYSTEM.  WE ARE

2    TALKING ABOUT TENS OF MILLIONS OF CLAIMS, AND WE

3    HAVE GOT A LIMITED AMOUNT OF OPERATIONAL CAPACITY

4    TO FACILITATE THAT REQUEST.  THAT WAS A REQUEST

5    WE MADE IN JUNE OF THIS YEAR TO GIVE THEM

6    VISIBILITY INTO THE TIME TABLES WE ARE TALKING

7    ABOUT HERE.  I DID NOT RECEIVE A RESPONSE TO THAT

8    REQUEST.  AND I FOLLOWED UP WITH A LETTER IN

9    SEPTEMBER OF THIS YEAR SAYING, GUYS, WE HAVE TO

10   HAVE YOUR FEEDBACK ON WHAT INFORMATION YOU WANT

11   OUT OF OUR CLAIM SYSTEM.  AND IT'S OUR

12   EXPECTATION THAT WE NEED TO RESOLVE THIS BY THE

13   END OF THE YEAR SO WE CAN BEGIN TO DEVELOP THOSE

14   QUERIES AND PRODUCE IT OUT.

15            SO NOW, IN DECEMBER, WE ARE GOING TO

16   BE FACED WITH SOME LIMITATIONS ABOUT HOW DO WE

17   PUSH THAT OUT.  BUT THIS IS AN ISSUE WE HAVE

18   GIVEN VISIBILITY TO FOR SIX MONTHS NOW.  AND SO

19   IT'S OUR EXPECTATION THAT IF WE DON'T HAVE

20   AGREEMENT WITH THEM ON WHAT'S THE RIGHT SCOPE OF

21   OUR CLAIMS DATA, WE WILL PRESENT TO YOU A MOTION

22   REQUESTING APPROVAL FOR THE FIELDS THAT WE INTEND

23   TO EXPORT FROM THAT SYSTEM SO WE CAN GET THAT

24   DATA OUT IN SUFFICIENT TIME TO COMPLY WITH THE

25   COURT'S SCHEDULING ORDER.

```
 1              THE COURT:  ALL RIGHT.  MR. RAGSDALE,
 2    ANY COMMENTS ABOUT THAT?
 3              MR. RAGSDALE:  ONLY THAT I DON'T THINK
 4    I MEANT TO IMPLY THAT THEY HAD BEEN DRAGGING
 5    THEIR FEET.  TO THE EXTENT IT SOUNDED  THAT WAY,
 6    I'M SORRY.
 7              THE COURT:  CERTAINLY, I RECOGNIZE THAT
 8    WE ARE TALKING HERE ABOUT LARGE COMPUTER SYSTEMS.
 9    SOME OF WHICH ARE, PERHAPS, WELL, IN COMPUTER
10    YEARS, QUITE OLD, IF THEY ARE TEN YEARS OLD.
11    THAT'S QUITE OLD FOR A COMPUTER SYSTEM.  AND WE
12    ARE TALKING ABOUT MASSIVE AMOUNTS OF INFORMATION.
13    SO I UNDERSTAND THERE ARE PROBLEMS WITH.  I DO
14    WANT TO MAKE SURE WE PROCEED IN AS EXPEDITIOUS
15    MANNER AS POSSIBLE.  I UNDERSTAND THAT IT MAY BE
16    AN ESTIMATE FOR NINE MONTHS BUT IF WE CAN CUT
17    THAT DOWN TO SEVEN MONTHS, THEN WE NEED TO SEE
18    WHAT WE CAN DO ABOUT THAT.
19              MR. RAGSDALE:  IF WE CAN DO IT IN A
20    MONTH, WE WOULD DO IT.  IT'S JUST REALITIES WE
21    ARE FACING.  SO I THINK WHAT YOU ARE GOING TO SEE
22    IS IT PUTS SOME PRESSURE ON THE EXPERTS IN TERMS
23    OF THE AMOUNT OF TIME THEY HAVE TO ADJUST THAT
24    INFORMATION.  WE ARE GOING TO PUSH IT OUT AS
25    QUICKLY AS WE CAN, JUST THE REALITY OF THE
```

1    LIMITATIONS WE HAVE GOT.

2            MR. RAGSDALE:  I WOULD SAY THIS THOUGH.

3    AND WE HAVE HAD THESE DISCUSSIONS WITH THE

4    LAWYERS FOR BLUE CROSS OF ALABAMA.  SOMETIMES,

5    COURT DEADLINES TEND TO FOCUS THE ATTENTION OF

6    THE PARTIES TO MOVE EVEN MORE SWIFTLY THAN THEY

7    THOUGHT THEY WERE CAPABLE OF MOVING.  SO, FOR

8    THAT REASON, WE MAY REVISIT THAT.  BUT WE HAVE

9    BEEN, FRANKLY, HAVING VERY EFFECTIVE DIALOGUES

10   WITH BLUE CROSS OF ALABAMA IN PARTICULAR.  WE ARE

11   TALKING ABOUT 65 THOUSAND FIELDS OF DATA.  WE

12   RECOGNIZE THOSE TECHNICAL LIMITATIONS.  WE

13   RESPECT THEM.  WE ARE TRYING TO WORK WITH THEM.

14           THE COURT:  WE HAVE ALREADY TOUCHED ON

15   IT A LITTLE BIT ALREADY, AND THAT IS THE

16   STREAMLINING ORDER THAT JUDGE PROCTOR HAS ENTERED

17   IN THE CASE THAT TENDS TO FOCUS VERY CLEARLY ON

18   BLUE CROSS OF ALABAMA.  ARE THERE ANY OTHER

19   DIFFERENCES, CHANGES ABOUT THAT STREAMLINING,

20   THAT, FOCUSING THAT IMPACT DISCOVERY IN THE CASE?

21           I MEAN, IT SEEMS TO ME READILY APPARENT

22   THAT DISCOVERY FROM BLUE CROSS OF ALABAMA AND TO

23   A CERTAIN EXTENT THE ASSOCIATION SORT OF MOVES TO

24   THE HEAD OF THE LINE.  I UNDERSTAND THAT.  BUT

25   ARE THERE OTHER IMPACTS ON IT THAT I AM NOT

1    SEEING?

2            MR. RAGSDALE:  I SUSPECT YOU SEE THEM

3    BUT I MAY HELP REMIND YOU.

4            ONE OF THE ISSUES I THINK IT FOCUSES

5    ON IS THE DEFENSE SOLELY TO THE SUBSCRIBERS

6    COMPLAINT INVOLVING THE FILE RATE DOCTRINE.  AND

7    WE BELIEVE BECAUSE WE ARE NOW FOCUSED ON ALABAMA

8    AS THE FIRST STATE TO GO FORWARD WITH TRIAL THAT

9    THAT ALSO FOCUSES ON THE FILE RATE DOCTRINE AS IT

10   APPLIES IN ALABAMA.  WE ANTICIPATE, NOT BECAUSE

11   WE ARE CLAIRVOYANT, BUT BECAUSE WE HAVE BEEN TOLD

12   THAT THE DEFENDANTS INTEND TO FILE A MOTION

13   FAIRLY SOON, MAYBE BY THE FIRST OF THE YEAR OR

14   SOMETHING ALONG THOSE LINES ON THE FILE RATE

15   DOCTRINE.  THAT WILL, IN OUR OPINION, NECESSITATE

16   SOME EXPEDITED DISCOVERY, BUT THE GOOD NEWS IS,

17   IT SEEMS TO ME, IT WILL BE FOCUSED ON ALABAMA.

18   AND WE ANTICIPATE BEING ABLE TO IDENTIFY FOR THE

19   DEFENDANTS EXACTLY WHAT ADDITIONAL DISCOVERY WE

20   NEED ON THAT PARTICULAR ISSUE.

21            THERE MAY BE OTHER DISCREET ISSUES

22   INVOLVING ALABAMA BUT AT THIS POINT I AM NOT

23   AWARE OF THEM.

24            THE COURT:  YES.

25            MR.  BURKHALTER:  CARL BURKHALTER BLUE

1    CROSS BLUE SHIELD OF ALABAMA.

2             JUDGE, I WANT TO SPEAK TO YOUR

3    QUESTION DIRECTLY ABOUT DOES THE STREAMLINING

4    ORDER HAVE AN IMPACT ON DISCOVERY OUTSIDE OF

5    ALABAMA, WHICH IS HOW I TOOK YOUR QUESTION.

6             THE COURT:  YEAH.  I GUESS WHAT I AM

7    TRYING TO FIGURE OUT IS, DO I NEED TO RETHINK THE

8    PRIORITIES OF DISCOVERY IN LIGHT OF WHAT HAS

9    CHANGED WITH THE STREAMLINE ORDER?  CERTAINLY,

10   THERE IS GOING TO BE, SEEMS TO ME, TO BE A

11   GREATER SENSITIVITY TO MOVING ALONG THINGS THAT

12   IMPACT DISCOVERY ON THE BLUE CROSS OF ALABAMA

13   ISSUES.

14            MR. BURKHALTER:  THAT'S RIGHT, JUDGE.

15   AND I THINK MY RESPONSE TO THAT IS THAT THE

16   PARTIES HAVE AN UNDERSTANDING THAT THE ALABAMA

17   CENTRIC DISCOVERY NEEDS TO BE DONE ON AN

18   ACCELERATED BASIS.  AND WE ARE GOING TO WORK WITH

19   THEM AND COOPERATE WITH PLAINTIFFS TO MAKE SURE

20   THAT THAT IS DONE.

21            WE HAVE HAD, FOR EXAMPLE, SOME

22   DISCUSSIONS WITH PLAINTIFF'S COUNSEL ABOUT THE

23   TIME TABLE PROVISIONS, IN DISCOVERY ORDER NUMBER

24   ONE, THAT REQUIRES 90 DAYS NOTICE OR A CERTAIN

25   PERIOD OF NOTICE FOR DEPOSITION, PRODUCTION

1   REQUESTS, ET CETERA.  AND WE ARE OPEN TO WORKING

2   WITH THEM TO RESOLVE THAT PROCESS INFORMALLY AND

3   SPEED THINGS UP AS NECESSARY.  SO WE ARE NOT

4   GOING TO STAND ON CIRCUMSTANCE OR FORMALITY.  WE

5   WANT TO GET THIS DONE AS QUICKLY AS POSSIBLE.

6              TWO THINGS, YOUR HONOR.  FIRST, TO GO

7   BACK TO THE POINT ABOUT NEED FOR DISCOVERY.

8   WOULD THAT IT WERE SO THAT THE STREAMLINING ORDER

9   HAD THE EFFECT OF REDUCING, SIGNIFICANTLY

10  REDUCING THE AMOUNT OF DISCOVERY THAT'S GOING TO

11  BE REQUIRED IN THIS CASE.  THE UNFORTUNATE

12  REALITY IS IT DOES NOT.  THAT'S TRUE, I THINK,

13  FOR TWO REASONS.

14             THE FIRST REASON IS THAT, OF COURSE,

15  THE OTHER CASES ARE STILL OUT THERE.

16             THE COURT:  CORRECT.

17             MR. BURKHALTER:  THEY ARE NOT STAYED,

18  THEY ARE GOING FORWARD.  SO IT IS A QUESTION OF

19  PRIORITIZATION.

20             THE SECOND, I DO WANT THE COURT TO

21  UNDERSTAND THAT THE DISCOVERY THAT THE

22  DEFENDANT'S ARE GOING TO NEED TO DEFEND AGAINST

23  THE ALABAMA CLASSES IS GOING TO BE NATION WIDE IN

24  SCOPE.  IT'S GOING TO REQUIRE TO US PROVE OUR

25  POSITION IN THE CASE, TO CONDUCT DISCOVERY OF

1    OTHER BLUE PLANS, TO CONDUCT DISCOVERY TO SHOW

2    HOW THE BLUE CARD SYSTEM WORKS, CONDUCT DISCOVERY

3    TO SHOW ON THE QUESTION OF IN A WORLD WITHOUT THE

4    ESAs TO SHOW OTHER BLUES PROBABLY WOULDN'T ENTER

5    ALABAMA.  DISCOVERY OF MARKETS WHERE THERE HAS

6    BEEN ENTRY BY AN INSURANCE COMPANY TO SHOW THE

7    EFFECT OF THAT, THAT THERE ARE WINNERS AND

8    LOSERS.  IT'S A COMPLICATED STORY.

9            SO THAT'S A LONG-WINDED WAY, JUDGE, OF

10   SAYING WE UNDERSTAND THE PRIORITIZATION PRINCIPLE

11   BUT DISCOVERY THAT WE NEED TO CONDUCT IS

12   CERTAINLY GOING TO BE OUTSIDE OF ALABAMA IN

13   ADDITION TO IN ALABAMA.

14           THE COURT:  SO THERE ARE GOING TO BE

15   RIPPLE EFFECTS -- WE CAN'T LOOK AT THIS CASE AS

16   JUST BEING LETS GET ALABAMA BLUE CROSS CRANKED UP

17   AND GET THAT DISCOVERY DONE BECAUSE IT'S GOING TO

18   HAVE RIPPLE EFFECTS ACROSS NOT ONLY THE

19   ASSOCIATION BUT OTHER BLUES AS WELL.

20           MR. BURKHALTER:  THAT'S ABSOLUTELY

21   TRUE, YOUR HONOR.

22           THE COURT:  AND I GUESS PARTICULARLY

23   GEOGRAPHICALLY NEAR GEORGIA, MISSISSIPPI, PLACES

24   LIKE THAT, MORE SO THAN MONTANA, SOMETHING OF

25   THAT SORT.

1          MR. BURKHALTER:  THAT REMAINS TO BE

2     SEEN, YOUR HONOR.  AN ISSUE OF GREAT IMPORTANCE

3     IN THIS CASE, AS I HAVE SAID, IN A BUT-FOR WORLD

4     WHERE YOU DIDN'T HAVE THESE ESAs, CAN THE

5     PLAINTIFFS DEMONSTRATE THAT ANOTHER BLUE PLAN

6     WOULD ENTER THE ALABAMA MARKET USING THE BLUE

7     TRADEMARK TO SELL INSURANCE, HEALTH INSURANCE, IN

8     CERTAIN --

9          THE COURT:  COULDN'T WE PERHAPS SEE THE

10    MARKET IN ALABAMA BEING BLUE CROSS BLUE SHIELD OF

11    ALABAMA AND BLUE CROSS OF MONTANA?

12         MR. BURKHALTER:  THAT'S EXACTLY RIGHT.

13    AND ARGUED  -- CERTAINLY ONE WAY OF LOOKING AT

14    IT, YOUR HONOR, IS THAT POSSIBLY THE MOST LIKELY

15    CANDIDATES OF ENTRY WOULD BE THE ONES THAT WOULD

16    ARE CONTIGUOUS TO ALABAMA BUT THAT ISN'T

17    NECESSARILY THE CASE.  AND SO WE NEED TO PROBE

18    INTO THAT AND I THINK THE PLAINTIFFS ARE GOING TO

19    WANT TO PROBE INTO THAT AS WELL TO TRY TO

20    DISCOVER WHAT THE WORLD WOULD LOOK LIKE ABSENT

21    THESE LICENSING RESTRICTIONS.

22         THANK YOU, JUDGE.

23         THE COURT:  THANK YOU.

24         MS. JONES:  YOUR HONOR, MEGAN JONES

25    FOR THE SUBSCRIBER PLANS.

```
 1              I JUST HAVE A COUPLE THOUGHTS ABOUT
 2      YOUR HONOR'S QUESTION ABOUT HOW WE SHOULD THINK
 3      ABOUT THE PRIORITIES OF DISCOVERY.  THESE ARE
 4      KIND OF AT THE 50,000 FOOT LEVEL BUT I JUST
 5      WANTED TO THROW THEM OUT THERE --
 6              THE COURT:  SURE.
 7              MS. JONES:  -- IN THE EARLY DAYS WHILE
 8      WE ARE THINKING ABOUT THIS.
 9              ONE OF THE THINGS WE ARE REALLY
10      CONCERNED ABOUT ON THE SUBSCRIBER SIDE AND THE
11      PROVIDER SIDE IS A CONCEPT ABOUT IF YOU ARE GOING
12      TO USE IT, PRODUCE IT.  SO WHAT WE FLAGGED FOR
13      THE DEFENDANTS IN THESE EARLY DAYS IS IN THE NEXT
14      YEAR, IF YOU ANTICIPATE USING THAT DATA OR
15      DOCUMENT ON ECONOMICS DAY OR EXPERT REPORT DAY,
16      WE CERTAINLY DON'T WANT TO SEE IT FOR THE FIRST
17      TIME IN 2017.  THAT'S SOMETHING I THINK WILL
18      BENCH MARK THIS ARGUMENT TODAY, WE ARE GOING TO
19      COME BACK TO THAT MANY TIMES.  BUT THAT'S
20      SOMETHING WE HAVE SENT OVER SOME INFORMATION TO
21      THE DEFENDANTS ABOUT THAT, THAT WE WANT TO
22      DISCUSS THE PROCESS OF HOW WE CAN LIMIT THAT IN A
23      MEANINGFUL WAY.
24              THE OTHER ISSUE THAT WE FLAGGED FOR
25      DEFENDANTS, WE KNOW THAT ALABAMA FILE RATE
```

```
 1    DOCTRINE MOTION IS COMING BUT IS THERE GOING TO
 2    BE A GIANT RUSH OF 16 OTHER MOTIONS BEHIND IT?
 3    AND WE HAVE ASKED IF THE DEFENDANTS KNOW THAT
 4    THAT'S COMING TO LET US KNOW SO THAT WE CAN
 5    REASONABLY SCHEDULE SOME DISCOVERY IN FRONT OF
 6    YOUR HONOR SO WE DON'T HAVE THIS CHAOS OF MOTIONS
 7    AND THEN COMING TO YOU AND ASKING HOW TO DO THAT.
 8    SO WE HAVE ASKED DEFENDANTS TO IDENTIFY
 9    THEMSELVES IF THEY ARE GOING TO FILE RATE
10    DOCTRINE IN 2016.
11              WE ARE NOT ASKING FOR A DATE CERTAIN
12    BUT WE WANT TO AT LEAST PUT A MARKER DOWN IF
13    THERE IS SOMETHING WE ARE GOING TO HAVE TO DEAL
14    WITH IN THE NEXT YEAR, LET'S OWN IT AND TRY TO
15    SCHEDULE IT.
16              AND SO THE OTHER THING THAT WE HAVE
17    ASKED DEFENDANTS TO DO IS IF YOU CAN FORECAST FOR
18    US, IF YOU WANT TO BE HEARD ON ECONOMICS DAY, LET
19    US KNOW.  AND THE REASON WHY WE ARE DOING THAT IS
20    SO THAT WE AS SUBSCRIBER PLAINTIFFS AND PROVIDER
21    PLAINTIFFS CAN NOW, IN THE CALM OF 2016 AND EARLY
22    2017, ANTICIPATE WHAT KIND OF DISCOVERY WE NEED.
23              IF IN RESPONSE TO OUR REQUEST WE HEAR
24    THAT BLUE CROSS MONTANA WANTS TO BE HEARD ON
25    ECONOMICS DAY, THAT CERTAINLY CHANGES OUR
```

```
1    APPROACH TO BLUE CROSS MONTANA.  SO WHAT WE ARE

2    TRYING TO DO IS GET EVERYBODY TO PUT THEIR CARDS

3    ON THE TABLE IN A FAIR WAY THAT THEY MAY WANT TO

4    BE HEARD SO THERE IS NOT THIS GIANT RUSH IN

5    NOVEMBER 2016 THAT, ALL OF A SUDDEN, WE HAVE

6    FOCUSED ON ALABAMA AND BCBSA AND 16 DEFENDANTS

7    SAYING HERE'S OUR EXPERT REPORTS.  SO YOUR HONOR

8    CAN SENSIBLY PLAN WHAT'S COMING.

9              THE COURT:  CERTAINLY I RECOGNIZE THAT

10   SOME KIND OF PROCEDURE FOR THE FILING OF

11   SUBSTANTIVE MOTIONS IMPLICATES DISCOVERY

12   SCHEDULING AS WELL.  BUT TO THE EXTENT THAT THERE

13   NEEDS TO BE SOME KIND OF SCHEDULING ORDER OF SOME

14   SORT THAT SAYS, OKAY, WE UNDERSTAND WHERE THE

15   COURT SAYS BLUE CROSS BLUE SHIELD OF ALABAMA, YOU

16   FILED YOUR RATE DOCTRINE --

17             MS. JONES:  RIGHT.

18             THE COURT:  -- MOTION, OTHER

19   DEFENDANTS CANNOT DO SO UNTIL OCTOBER FIRST OR

20   SOMETHING OF THAT SORT SO IT CREATES SOME KIND OF

21   WINDOW FOR YOU TO DEAL WITH ONE PARTICULAR ONE.

22   THAT'S GOING TO BE PRETTY MUCH UP TO JUDGE

23   PROCTOR TO DO SOMETHING LIKE THAT BECAUSE IT

24   DEALS WITH FILING OF SUBSTANTIVE MOTIONS.

25             I AGREE WITH YOU THAT HOW THAT PLAYS
```

1    OUT IMPLICATES THE DISCOVERY THAT I AM TRYING TO

2    OPERATE, BUT I THINK THAT PRETTY MUCH WE ARE

3    GOING TO HAVE TO WAIT AND SEE WHAT KIND OF

4    MARCHING ORDERS --

5              MS. JONES:  WE ARE NOT ASKING YOUR

6    HONOR FOR RELIEF ON THAT --

7              THE COURT:  SURE.

8              MS. JONES:  -- WE ARE FORECASTING

9    THAT MAY BE COMING YOUR WAY.

10             THE COURT:  I UNDERSTAND.

11             MS. JONES:  THEN THE LAST THING THAT I

12   WANT TO PUT SQUARE IN FRONT OF YOU IS I THINK

13   THERE IS GOING TO BE CENTRAL TO A LOT OF OUR

14   DISCOVERY DISPUTES IN THE NEXT YEAR IS WE ALL

15   WERE HEARING FROM A LOT OF THE DEFENDANTS IS WE

16   WANT TO DO THIS ONCE.  WE WANT TO DO THIS ONCE.

17   DON'T COME BACK TO ME, DON'T COME BACK TO ME.  WE

18   ARE GOING TO DO THIS ONCE, IT'S EXPENSIVE,

19   RESOURCES.

20             I JUST WANT TO EXPLAIN TO YOU THAT THE

21   BOX THAT PUTS THE PLAINTIFFS IN BECAUSE WE ARE AT

22   THE BEGINNING OF OUR CASE, WE'RE JUST GETTING

23   DISCOVERY.  AND I WANT TO FORECAST FOR YOU  THAT

24   IT'S GOING TO BE HARD FOR US TO SAY HANDS DOWN,

25   WE ARE NEVER COMING BACK IN, BY JANUARY 2016.

```
 1               SO I THINK THAT'S GOING TO BE
 2     SOMETHING WE ARE GOING TO HAVE TO WORK THROUGH
 3     TOGETHER IN THE CASE.  I THINK WITH 30(B)(6)
 4     SOLUTION YOU OUTLINED IS VERY HELPFUL, BECAUSE
 5     WHAT THAT ALLOWS US TO DO IS TAKE A 30(B)(6)
 6     ISSUE ON DATA, WHICH IS SOMETHING WE ARE ALL
 7     STRUGGLING WITH AND TRYING TO GET IN LINE.  AND
 8     IF WE CAN GET SOME INFORMATION ABOUT DATA EARLY
 9     THEN WE HAVE A BETTER CHANCE OF SAYING THIS IS
10     WHAT WE WANT AND GO DO IT.
11               THOSE ARE MY GENERAL THOUGHTS.
12               THE COURT:  PERHAPS BY DOING IT THAT
13     WAY, IT INCREASES THE CHANCE THAT WE CAN DO THIS
14     ONCE.
15               MS. JONES:  CORRECT.
16               THE COURT:  MS. YINGER.
17               MS. YINGER:  THANK YOU, YOUR HONOR.  I
18     JUST WANTED TO RESPOND TO A COUPLE OF POINTS,
19     TOTALLY, WE TOTALLY UNDERSTAND THE NOTION THAT IF
20     WE ARE GOING TO RELY ON DOCUMENTS IN SUPPORT OF
21     ITEMS WE ARE BRINGING TO THE COURT OR DEFENSE,
22     WHAT HAVE YOU, THAT WE NEED TO PRODUCE THOSE TO
23     THE OTHER SIDE.  WE UNDERSTAND THAT.
24               WE HAVE MADE A PROPOSAL TO THE
25     PLAINTIFF REGARDING THE FILE RATE MOTIONS.  WE
```

```
1    UNDERSTAND THAT THE, THE MOTION WITH RESPECT TO
2    ALABAMA SUBSCRIBERS, A MOTION FOR SUMMARY
3    JUDGMENT BASED ON THE FILE RATE DOCTRINE BARRING
4    THE CLAIMS OF THE ALABAMA SUBSCRIBERS IS GOING TO
5    BE IN THE NEAR TERM.  AND THEN WE UNDERSTAND THAT
6    WAS THE INTENT OF PART OF THE STREAMLINING ORDER.
7              WE ALSO SUSPECT THAT OTHERS ARE GOING
8    TO WANT TO BRING FILE RATE MOTIONS AND WE HAVE
9    TOLD PLAINTIFFS THAT AS THOSE DEFENDANTS ARE
10   READY TO BRING MOTIONS WITH RESPECT TO OTHER
11   SUBSCRIBER PLAINTIFFS IN OTHER STATES, WE WILL
12   MEET AND CONFER WITH THEM.  WE WILL FIND OUT WHAT
13   DISCOVERY THEY THINK THEY NEED THAT HASN'T
14   ALREADY GONE OUT TO THEM.  A NUMBER OF PLAINTIFFS
15   HAVE ALREADY PRODUCED RATE FILING DISCOVERY.
16   WE'LL MEET AND CONFER AND WE'LL SET A DISCOVERY
17   SCHEDULE.  SO WE UNDERSTAND THAT'S AN ISSUE.  WE
18   HAVE MADE A PROPOSAL.
19             REGARDING THE ISSUE ABOUT LET'S DO THIS
20   ONCE, MS. JONES JUST SAID, FOR EXAMPLE, THEY
21   WOULD LIKE TO DO A DATA DEPOSITION,
22   30(B)(6) DEPOSITION.  IF THAT'S THEIR STRATEGIC
23   DECISION AND THEY WANT TO GO AHEAD, WE HAVE BEEN
24   GIVING THEM A LOT OF INFORMATION WITHOUT THEM
25   HAVING TO TAKE DEPOSITIONS OR PROPOUND
```

```
1    INTERROGATORIES OR ANYTHING OF THAT NATURE.  BUT

2    IF THEY DECIDE THEY WANT TO GO AHEAD AND TAKE A

3    DEPOSITION, AGAIN THAT'S SOMETHING WE SHOULD MEET

4    AND CONFER ABOUT.

5              JUST LIKE THE SOUTH CAROLINA DEPOSITION

6    IS A SEPARATE ISSUE.  IT COULD EASILY BE THAT A

7    DATA DEPOSITION ABOUT A SPECIFIC DATA SYSTEM OR

8    SPECIFIC DATA ISSUE IS A SEPARATE DEPOSITION.

9              THE COURT:  I MEAN, I ENVISION THE DATA

10   DEPOSITIONS AS BEING MORE SORT OF EDUCATIONAL

11   THAN ANYTHING ELSE.  HOW DO WE COME TO UNDERSTAND

12   WHAT YOUR DATA SYSTEM LOOKS LIKE, WHAT IT

13   OPERATES ON, HOW IT CAN BE SEARCHED, ALL THAT

14   SORT OF STUFF?  AND THAT ENABLES US AT THAT POINT

15   TO BETTER UNDERSTAND HOW WE CAN GET TO WHAT WE

16   ARE LOOKING FOR.

17             MS.  YINGER:  THAT'S RIGHT, YOUR

18   HONOR.

19             THE COURT:  THAT'S MORE EDUCATIONAL.

20             MS. YINGER:  THAT'S RIGHT;

21   EDUCATIONAL.  IN FACT, THAT'S THE KIND OF

22   INFORMATION WE HAVE BEEN PROVIDING, WE WILL

23   CONTINUE TO BE PROVIDING.  AND THE REASON WHY WE

24   ARE DOING THAT, THE REASON WHY WE ARE TRYING TO

25   MAKE PROGRESS ON THINGS LIKE RELEVANT DATA FIELDS
```

1    AND RELEVANT SYSTEMS IS SO WE CAN BE AS EFFICIENT

2    AS POSSIBLE.  WE ARE TALKING ABOUT AN ENORMOUS

3    AMOUNT OF DATA.

4              AS MR. MATESTA MENTIONED, IT'S GOING

5    TO TAKE BLUE CROSS BLUE SHIELD OF ALABAMA NINE

6    MONTHS WORKING DILIGENTLY, MAXING OUT THEIR

7    SYSTEM, TO ROLL OUT JUST CLAIMS DATA.  THAT'S

8    JUST CLAIMS DATA.  SO THE ONLY DO IT ONCE THING,

9    WE ARE TALKING ABOUT MILLIONS AND MILLIONS AND

10   MISSION OF DOLLARS.  IT'S NOT JUST BECAUSE THAT'S

11   CONVENIENT FOR OUR CLIENTS.  WE'RE TALKING ABOUT

12   A HUGE AMOUNT OF RESOURCE AND EXPENSE AND BURDEN.

13   SO THE IDEA THAT YOU WOULD DO THIS MULTIPLE TIMES

14   REALLY IS NOT THE WAY MODERN DISCOVERY SHOULD

15   WORK.

16             AND WE ARE WILLING TO BE -- WE ARE

17   WILLING TO GIVE THEM INFORMATION WITH OR WITHOUT

18   DEPOSITION, HOWEVER THEY WANT TO PROCEED SO THAT

19   WE CAN BE AS EFFICIENT AS POSSIBLE.

20             MS. JONES:  AND WE ECHO THAT.  WE HAVE

21   NO INTEREST IN DOING THIS MULTIPLE TIMES.

22             THE COURT:  I ASSUME IT'S COSTING THE

23   PLAINTIFFS MONEY AS WELL TO DO THINGS MULTIPLE

24   TIMES.  AND I SAY THAT WITH ALL DUE REGARD FOR

25   THE LEGITIMACY OF IT.  THE FINANCES HERE IS AN

1    IMPORTANT ISSUE FOR BOTH SIDES IN THIS CASE.  WE

2    FORGET RULE ONE TALKS ABOUT DOING THINGS

3    INEXPENSIVELY.  THAT'S NOT HAPPENING HERE.

4              MS. YINGER:  WE HOPE WE CAN GET TO A

5    POINT WHERE THE SCOPE IS A LITTLE MORE NARROW AND

6    THAT, I THINK, WILL ENABLE BOTH SIDES TO COMPLY

7    WITH THE EXPEDITED DISCOVERY SCHEDULE.

8              THE COURT:  ANYONE ELSE WISH TO COMMENT

9    ABOUT HOW DISCOVERY MAY BE DIFFERENT -- IF YOU

10   THINK ABOUT IT DIFFERENTLY IN LIGHT OF THE

11   STREAMLINING ORDER?

12             ALL RIGHT.  ANOTHER ITEM THAT I HAD ON

13   MY AGENDA IS TO JUST CHECK WITH THE MOTION, CHECK

14   WITH PARTIES ABOUT THE MOTION TO AMEND DISCOVERY

15   ORDER NUMBER ONE.  IT'S BEEN PRESENTED AS BEING A

16   JOINT MOTION.  I JUST WANTED TO MAKE SURE

17   EVERYBODY IS STILL HAPPY WITH WHATEVER THE

18   AMENDED MOTION IS.

19             MR. RAGSDALE:  YOUR HONOR, I KNOW WE

20   ARE.  I THINK IT'S READY TO BE ENTERED.  WE SENT

21   A PROPOSED ORDER, I HOPE?

22             THE COURT:  WE DID.  JUST WANT TO MAKE

23   SURE EVERYBODY IS STILL ON BOARD WITH IT RIGHT

24   NOW.

25             MS. WEST:  YES, SIR.

```
 1            THE COURT:  WE'LL TAKE CARE OF THAT
 2     THEN.
 3            THE NEXT IS THE MOTION TO AMEND
 4     DISCOVERY ORDER NUMBER THREE, WHICH IS THE
 5     30(B)(6) DEPOSITION ISSUE.  WE SORT OF KICKED
 6     THAT AROUND A LITTLE BIT.  BUT DOES EITHER SIDE
 7     WISH TO ADD ANYTHING TO THAT?  MR. RAGSDALE?
 8            MR. RAGSDALE:  NO, YOUR HONOR.
 9            THE COURT:  MS. YINGER?
10            MS. YINGER:  NO, THANK YOU.
11            THE COURT:  THE NEXT ITEM I HAVE THEN
12     IS BLUE CROSS BLUE SHIELD MICHIGAN'S MOTION FOR
13     CLARIFICATION OF THE PREVIOUS DISCOVERY ORDER
14     THAT I ENTERED ABOUT THE ANTITRUST LITIGATION
15     THERE IN MICHIGAN.
16            MR. CAMPBELL?
17            MR. CAMPBELL:  MAY IT PLEASE THE COURT:
18     GOOD AFTERNOON, YOUR HONOR.  THANKS FOR HEARING
19     THIS.
20            YOUR HONOR, I FIRST WANT TO PUT THIS IN
21     THE CONTEXT OF ORDER NUMBER 10 WHERE WE ARE ON
22     THAT.
23            AS YOU RECALL, YOUR HONOR, YOU ORDERED
24     US TO PRODUCE ALL OF THE NON-PARTIES SO THAT THE
25     PLAINTIFFS CAN BEGIN THE JOURNEY OF TRYING TO GET
```

1    CONSENTS.  WE HAVE DONE THAT.  WE HAVE PRODUCED

2    THOSE IN FULL.  WE HAVE ALSO PRODUCED THE

3    ATTORNEYS AT THE TIME THAT WE ARE AWARE OF, YOUR

4    HONOR, SO THAT CONSENT CAN BE FACILITATED.

5         SOMEWHAT CONTRARY TO WHAT WAS SUGGESTED

6    IN THE BRIEF FILED YESTERDAY, THE MOTION TO

7    CLARIFY IS A VERY LIMITED MOTION, YOUR HONOR, AND

8    IT DOES NOT AFFECT WHAT WE ARE DOING UNDER YOUR

9    ORDER NUMBER 10 OTHERWISE.  WE, FRANKLY, HAVE AN

10   OBLIGATION ON JANUARY 14TH TO PRODUCE A

11   SUBSTANTIAL NUMBER OF PUBLIC FILINGS.  WE ARE

12   ACTUALLY GOING TO PRODUCE THOSE IN DECEMBER,

13   EARLY.  WE ARE GOING TO CONTINUE WORKING WITH THE

14   PLAINTIFFS TO FACILITATE THE PRODUCTION AS SOON

15   AS WE RECEIVE THE CONSENTS.  OR IN THE CASE WHERE

16   WE DON'T RECEIVE THE CONSENTS, THE REDACTED

17   MATERIAL AS YOU HAVE ORDERED IT.

18        WHAT WE HAVE TODAY, YOUR HONOR, IS A

19   MOTION TO CLARIFY OVER WHETHER, I THINK ONE ISSUE

20   IS ORDER NUMBER 10, MICHIGAN IS REQUIRED TO

21   PRODUCE ELEVEN EXPERT REPORTS AND EIGHT

22   DEPOSITION OF EXPERTS.  OUT OF THE HUNDREDS OF

23   THOUSANDS OF PAGES THAT WE ARE IN THE PROCESS OF

24   PRODUCING, YOUR HONOR, THAT IS WHAT THE ISSUE IS

25   TODAY.  THE REASON WE HAVE RAISED IT AT THIS TIME

44

```
 1    RATHER THAN LETTING IT LINGER AND THERE BE
 2    UNCERTAINTY, YOUR HONOR, IS YOUR ORDER DID NOT
 3    EXPLICITLY ADDRESS IT EITHER IN THE FORM OF THE
 4    EXPERT DEPOSITION OR THE REPORTS.  THERE ARE 11
 5    REPORTS IN THE AETNA CASE, THERE ARE 8
 6    DEPOSITIONS.  OUR POSITION, YOUR HONOR, IS THAT
 7    WHILE WE ARE PRODUCING  ALL OF THE UNDERLYING
 8    FACTS AND EVIDENCE ON WHICH THOSE REPORTS WERE
 9    BASED AND THOSE OPINIONS WERE BASED SUBJECT TO
10    THE CONFIDENTIALITY ORDERS, WHICH MAY BE WAIVED,
11    WE DO NOT BELIEVE THE EXPERT OPINIONS THEMSELVES
12    SHOULD BE PRODUCED.
13              WE HAVE CITED A NUMBER OF CASES, YOUR
14    HONOR, IN OUR BRIEF.  I WON'T SPEND A LOT OF TIME
15    ON THIS.  I KNOW WE HAVE A LOT ON THE PLATE THIS
16    AFTERNOON.  BUT UNDER SSL SERVICES CASE, THE
17    ARROWHEAD CASE AND THE OTHER CASES IN OUR BRIEF,
18    IT'S CLEAR THOSE REPORTS SHOULD NOT BE ORDERED
19    WHERE, NUMBER ONE, THE EXPERTS IN THAT CASE, IN
20    THE AETNA CASE, ARE NOT EXPERTS IN THIS CASE.  SO
21    YOU DON'T HAVE IDENTITY OF EXPERTS --
22              THE COURT:  THEY ARE COMPLETELY
23    DIFFERENT PEOPLE.
24              MR. CAMPBELL:  AS FAR AS I KNOW AT THIS
25    POINT, YOUR HONOR.  AS FAR AS I KNOW AT THIS
```

1    POINT.  FACTUAL DATA IS GOING TO BE COMPLETELY

2    PRODUCED ON WHICH THOSE REPORTS WERE BASED

3    SUBJECT TO YOUR ORDER NUMBER 10.

4              NOW, THE THREE CASES THE PLAINTIFFS

5    HAVE CITED, THE ONLY THREE CASES THEY HAVE CITED,

6    THE JENKS CASE, THE HUSSEY CASE AND THE OTHER

7    CASE THEY HAVE CITED WERE CASES WHERE YOU HAD THE

8    IDENTICAL EXPERT IN THE PRIOR CASE ALSO BE USED

9    IN THE CASE BEFORE THE COURT ON THAT DISCOVERY

10   MOTION.  AND IN THAT CASE, THE COURT CARVED OUT A

11   LIMITED EXCEPTION BASED ON THE FACT THAT THE

12   PARTIES WERE ENTITLED TO THE PRIOR EXPERT REPORTS

13   FOR IMPEACHMENT PURPOSES TO DETERMINE WHETHER THE

14   EXPERT HAD CHANGED HIS OR HER OPINIONS AND TO SEE

15   IF THEY HAD CHANGED THEIR METHODOLOGY.

16             THE COURT:  ONE OF THOSE THINGS THAT'S

17   SORT OF IMPLIED BY THE EXPERT REPORT IN 26(A)(2)

18   WHEN IT TALKS ABOUT THE CONTENTS OF THE REPORT

19   INCLUDING THE IDENTIFICATION OF THE CASES WHERE

20   THE EXPERT HAS TESTIFIED LIVE OR BY DEPOSITION

21   FOR THE LAST FOUR YEARS PRIOR TO THAT, THE WHOLE

22   PURPOSE OF THAT IS TO GET TO THE IMPEACHMENT

23   SITUATION.  IT'S SORT OF IMPLIED IN THE RULE.

24             MR. CAMPBELL:  YES, SIR.  AND UNDER

25   RULE 26 IT REQUIRES A LIST OF THOSE PRIOR

1    TESTIMONIES AND IN CERTAIN CASES, YOUR HONOR, THE

2    COURTS HAVE SAID WE ARE GOING TO ALLOW YOU TO

3    HAVE THOSE REPORTS TO TEST THAT EXPERT'S

4    CREDIBILITY.  TO BE HONEST WITH THE COURT, THERE

5    IS A SPLIT OF AUTHORITY EVEN ON THAT WHERE YOU

6    HAVE AN IDENTITY OF EXPERTS.  IN THE SURLESS CASE

7    WE CITED, IN THE TRUMP CASE YOU HAD, EVEN IN

8    THOSE CASES USING THE SAME IDENTICAL EXPERT, THE

9    COURT SAID WE WILL LET YOU IDENTIFY THE CASES BUT

10   I WILL NOT GIVE YOU THE REPORTS.  BUT IN THIS

11   CASE, IT'S UNPRECEDENTED WHAT THEY ARE ASKING

12   FOR, YOUR HONOR, AND THEY HAVEN'T CITED A CASE

13   WHERE YOU HAVE A DIFFERENCE -- YOU DON'T HAVE

14   SAME EXPERTS, IT'S A DIFFERENT CASE AND THEY ARE

15   GETTING ALL THE FACTUAL DATA THAT WE ARE

16   PRODUCING, YOUR HONOR.

17           NOW, THEY SAY, WELL, WE NEED TO KNOW

18   WHAT THE EXPERT'S POSITION WAS IN MICHIGAN.  MY

19   POSITION ON THAT, YOUR HONOR, IT'S IRRELEVANT.

20   IT'S IRRELEVANT AND IT'S NOT CALCULATED REDOING

21   THIS FOR EVIDENCE.  THE UNDERLYING FACTUAL DATA

22   IS IRRELEVANT AS YOU HAVE FOUND IN ORDER NUMBER

23   10 AND WE ARE PRODUCING IT.  BUT THE OPINION IS

24   NOT ADMISSIBLE, THE PRIOR OPINIONS ARE NOT

25   ADMISSIBLE FOR ANY PURPOSE UNLESS SOMETHING

1    CHANGES AND THOSE EXPERTS GET HIRED --

2              THE COURT:  IF THOSE EXPERTS SHOW UP IN

3    THIS CASE IT BECOMES A DIFFERENT BALL GAME.

4              MR. CAMPBELL:  BECOMES A DIFFERENT

5    BALL GAME.

6              THE COURT:  YEAH.

7              MR. CAMPBELL:  WHERE WE STAND TODAY,

8    AND YOUR HONOR, UNDER, IF IT CHANGES, THERE IS

9    GOING TO BE PLENTY OF TIME FOR YOU TO DEAL WITH

10   THIS BECAUSE IT'S GOING TO BE IN THE SPRING

11   BEFORE ALL OF THIS IS COMPLETED, SPRING OF 2016.

12             BUT WHERE WE STAND TODAY, YOUR HONOR,

13   WE STRONGLY BELIEVE THAT THOSE REPORTS AND THOSE

14   DEPOSITIONS ARE DIFFERENT EXPERTS IN A DIFFERENT

15   CASE ARE IRRELEVANT BECAUSE THEY ARE NOT

16   ADMISSIBLE FOR ANY PURPOSE AND NOT GOING TO LEAD

17   TO ADMISSIBLE EVIDENCE, DISCOVERY OF ADMISSIBLE

18   EVIDENCE, AND THEY HAVE ALL OF THE ACTUAL

19   UNDERPINNINGS AND THE DATA AND THE EVIDENCE.

20             SO FOR TODAY'S PURPOSES, YOUR HONOR,

21   WE WOULD SIMPLY LIKE A CLARIFICATION THAT THE

22   ELEVEN EXPERT REPORTS AND THE EIGHT DEPOSITIONS

23   DO NOT HAVE TO BE  PRODUCED AT THIS TIME.

24             NOW, IF THOSE EXPERTS GET HIRED, THE

25   COURT CAN REVISIT IT IN THIS CASE.  IN THE

1    MEANTIME, YOUR HONOR, WE ARE GOING FORWARD

2    PRODUCING ALL THE OTHER DOCUMENTS AND WE HOPE TO

3    HAVE THAT COMPLETED AS THE COURT ANTICIPATES

4    SOMETIME IN MARCH OR EARLY IN THE SPRING.  BUT

5    THAT WILL CONTINUE.  BUT WE DO BELIEVE THIS IS

6    IMPORTANT, YOUR HONOR.  ONE OF THE POSITIONS THE

7    PLAINTIFFS RAISED BUT WE DIDN'T ARGUE THIS BEFORE

8    BUT IT IS SET OUT EXPLICITLY IN OUR BRIEF IN

9    OPPOSITION TO THE MOTION TO COMPEL AT PAGES SIX

10   AND SEVEN.  IN FACT, WE CITE THE SAME CASES THERE

11   THAT WE HAVE CITED IN THE BRIEF THAT WE ARE

12   ARGUING FROM TODAY, YOUR HONOR.

13          SO FOR THOSE REASONS, WE ASK AT THIS

14   POINT THAT PART OF THE DISCOVERY PROCESS OF THESE

15   DOCUMENTS NOT BE REQUIRED TO BE PRODUCED SUBJECT

16   TO IF THE EXPERTS SHOULD BE HIRED IN THIS CASE OR

17   ONE OR MORE OF THEM, WE CAN COME BACK AND REDUCE

18   THEM.

19          THANK YOU, YOUR HONOR.

20          THE COURT:  MR. RAGSDALE?

21          MR. RAGSDALE:  I AM AFRAID WE ARE

22   SEEING A TREND, AND NOT A GOOD ONE.  AND THAT IS

23   THIS COURT RULES ON DISCOVERY MOTIONS AFTER THEY

24   ARE FULLY BRIEFED, FULLY ARGUED.  IN THIS CASE,

25   IT WAS FULLY ARGUED MORE THAN ONCE.  AND THEN

1    AFTER THIS COURT TAKES THE TIME AND MAKES THE

2    COMPREHENSIVE RULING, THE DEFENDANTS ASK YOU TO

3    RECONSIDER THAT.  AND THAT'S REALLY WHAT THIS

4    MOTION IS.  NOT A MOTION TO CLARIFY BUT A MOTION

5    TO RECONSIDER.

6          AT THE LAST ARGUMENT, WE EXPRESSLY SAID

7    AND MR. CAMPBELL EXPRESSLY SAID WHAT THEY ARE

8    SEEKING IS EXPERT REPORTS AND EXPERT DEPOSITIONS.

9    AND THIS COURT GRANTED THAT MOTION, FINDING THAT

10   THOSE DOCUMENTS WERE DISCOVERABLE AND THAT THEY

11   WERE NOT PRIVILEGED IN ANY FASHION.

12          I BELIEVE THAT WE NEED TO RESOLVE

13   DISCOVERY MOTIONS ONCE, NOT MULTIPLE TIMES, AND I

14   THINK THAT IS WHAT'S BEING ASKED HERE.

15          IN ADDITION, THE ARGUMENT HAS EVOLVED

16   FAIRLY DRAMATICALLY ON THE PART OF MICHIGAN IN

17   THIS CASE.  ORIGINALLY, THE ARGUMENT WAS THIS HAS

18   NOTHING TO DO WITH THIS CASE BECAUSE IT DOESN'T

19   INVOLVE MFN.  THIS COURT MADE THAT SHRIFT

20   RELATIVELY SHORT IN ITS ORDER IN WHICH IT

21   RECOGNIZED MFNs WERE OBVIOUSLY AN ISSUE THAT

22   WOULD REQUIRE SOME DISCOVERY IN THIS CASE.  AND

23   THAT THE ARGUMENT BY MICHIGAN WAS THEY WERE NOT

24   RELEVANT TO ANY CLAIM THAT WOULD HAVE TO GO

25   FORWARD.  THEIR ARGUMENT NOW IS THAT SOMEHOW IT

1    WOULD BE UNFAIR FOR US TO SEE THOSE DOCUMENTS AND

2    EXPERT REPORTS.  AND THE STATEMENT THAT THEY HAVE

3    IN THEIR BRIEF IS THAT IT WOULD PREJUDICE THEM

4    FOR US TO HAVE THOSE REPORTS WITHOUT ANY

5    EXPLANATION HOW THEY WOULD BE PREJUDICED IN THIS

6    CASE.  AND HOW US HAVING ACCESS TO THOSE EXPERT

7    REPORTS AND EXPERT DEPOSITIONS WOULD CAUSE THEM

8    ANY HARM AT ALL IN THIS CASE.

9            IN FACT, WHAT THEY DO IS DEMONSTRATE IT

10   WOULD HELP TO EXPEDITE MATTERS IF WE HAD THOSE

11   EXPERT REPORTS AND EXPERT DEPOSITIONS BECAUSE

12   THEY SPECIFICALLY SAY THAT WE SHOULD HAVE TO DO

13   OUR OWN WORK, WHICH I GOT TOLD A LOT AS A CHILD

14   AND MAYBE AS A LAWYER AS WELL.  BUT THEIR WHOLE

15   POINT IS THAT THEY SHOULD NOT HAVE TO GIVE US

16   THEIR WHEEL, WE SHOULD HAVE TO REINVENT OUR OWN.

17   AND IN THIS INSTANCE, ALL WE ARE SAYING IS HAVING

18   ACCESS TO THAT INFORMATION, THE ARGUMENTS ABOUT

19   ADMISSIBILITY, HEARSAY, ANY OF THOSE KIND OF

20   THINGS FRANKLY ARE RED HERRINGS.  THEY DON'T HAVE

21   ANYTHING TO DO WITH WHETHER OR NOT THE

22   INFORMATION MIGHT BE DISCOVERABLE.

23            IN THIS CASE, WHERE THERE IS NO

24   PREJUDICE TO MICHIGAN TO PROVIDING THOSE EXPERTS

25   REPORTS AND DEPOSITIONS AND IN WHICH THEY WOULD

1    SERVE TO EXPEDITE SOME OF THE INFORMATION, I

2    WOULD ALSO NOTE THAT THE ANSWER THAT YOU GOT TO

3    WHETHER OR NOT THESE INDIVIDUALS ARE EXPERTS,

4    WELL, AT THIS POINT, NO ONE IS DESIGNATED

5    EXPERTS.  I DIDN'T HEAR MICHIGAN COMMITTING TO

6    THE FACT THAT THEY WOULD NOT USE THESE

7    INDIVIDUALS AS EXPERTS, SIMPLY THAT WE WOULD LIKE

8    TO DELAY MAKING THAT DISCLOSURE AND HOPEFULLY

9    DELAY HAVING TO PROVIDE THIS INFORMATION.

10         WE BELIEVE THAT PROVIDING THE

11   INFORMATION, THE EXPERT DEPOSITIONS, AND EXPERT

12   REPORTS WOULD HELP US FOCUS THE ISSUES,

13   PARTICULARLY AS REGARDS THE ISSUES THAT WERE

14   PREVALENT IN THAT LITIGATION WHICH OVERLAPPED

15   WITH THE ISSUES THAT EXIST IN THIS LITIGATION

16   WITHOUT CAUSING ANY PREJUDICE TO MICHIGAN.  HOW

17   ARE THEY HURT BY US HAVING ACCESS TO THOSE EXPERT

18   REPORTS UNLESS IT'S BECAUSE THEIR EXPERTS IN THIS

19   CASE ARE GOING TO TAKE OPPOSITE OR DIFFERENT OR

20   DIFFERING APPROACHES TO IT.  THEN THEY'RE

21   PREJUDICED BY THE FACT THAT THEY ARE NOT ALLOWED

22   TO TAKE CONFLICTING POSITIONS IN THE TWO CASES,

23   AND THAT'S NOT THE KIND OF PREJUDICE THAT SHOULD

24   BE PROTECTED BY THEIR COURT.

25         THE LAST THING THAT I WOULD SAY IS THAT

```
 1    IN THIS INSTANCE WHERE I THINK THE COURT TOOK THE
 2    TIME TO ADDRESS THIS ISSUE, THAT REVISITING IT
 3    AGAIN AND AGAIN WITH THE POSSIBILITY, FRANKLY,
 4    THAT THIS ISSUE MAY ALSO, FRANKLY, GO UP TO JUDGE
 5    PROCTOR AFTER THIS,  AS IS TRUE OF ANY ISSUE THAT
 6    YOU ADDRESS, BUT THIS ISSUE NEEDS TO BE AND WAS
 7    PUT TO BED PREVIOUSLY.
 8              THE COURT:  MR. CAMPBELL.
 9              MR. CAMPBELL:  VERY BRIEFLY, YOUR
10    HONOR.
11              NUMBER ONE, YOUR HONOR, WE RAISE THIS
12    BECAUSE FRANKLY THE LAWYERS AT THE LAST HEARING
13    MAY NOT HAVE DONE A GOOD ENOUGH JOB FOCUSING ON
14    EXPERT REPORTS AND DEPOSITIONS AND THAT'S LARGELY
15    MY FAULT.  BUT, WE RAISED IT BECAUSE EXPERT
16    REPORTS AND EXPERT DEPOSITIONS ARE NOT MENTIONED
17    IN THE COURT'S ORDER.  I THINK IT'S DUE TO BE
18    RAISED.  IF YOU LOOK AT PAGE FIVE AND SIX WHERE
19    YOUR HONOR ADDRESSES DEPOSITIONS BY THEMSELVES,
20    EXPERT DEPOSITIONS ARE NOT ADDRESSED  ON PAGES
21    FIVE AND SIX.  YOU DEAL WITH OTHER DEPOSITIONS.
22              WE SIMPLY BELIEVE YOUR HONOR THAT THE
23    LAW UNDER RULE 26 DOES NOT SUPPORT THE
24    PLAINTIFF'S POSITION AT THIS POINT BECAUSE THERE
25    IS NOT IDENTITY OF EXPERTS.  THERE IS NO CASE LAW
```

```
 1    THEY HAVE CITED, NOT ONE SINGLE CASE, THAT SAYS
 2    YOU CAN HAVE PRODUCED IN A SEPARATE CASE REPORTS
 3    OF A DIFFERENT EXPERT IN A DIFFERENT CASE.  AND
 4    WHERE WE ARE, YOUR HONOR, AT THIS POINT IS THE
 5    COURT HAS ORDERED A VERY WELL THOUGHT OUT,
 6    RATIONAL SCHEME FOR US TO PRODUCE DOCUMENTS UPON
 7    CONSENT.  IF THE EXPERTS TURNS OUT TO BE SOME
 8    IDENTITY, YOUR HONOR, DOWNSTREAM, WE ARE TALKING
 9    ABOUT ELEVEN REPORT AND EIGHT DEPOSITIONS.  WE
10    ARE NOT TALKING ABOUT INTERFERING WITH THE FLOW
11    OF WHAT WE ARE PRODUCING HERE.  AND WE ARE NOT
12    HERE TO REVISIT WHAT WE ARGUED BEFORE.  THIS IS
13    NOT ADDRESSED, WE DON'T THINK, YOUR HONOR, IN THE
14    ORDER AND WE FEEL LIKE AT THIS POINT IN TIME
15    THESE PARTICULAR DOCUMENTS UNDER THE LAW SHOULD
16    NOT BE PRODUCED.
17         BASED ON ALL THE CASES WE HAVE CITED,
18    PARTICULARLY SSL CASE WHICH CLEARLY SAYS
19    PLAINTIFFS ARE NOT ENTITLED TO GET A SEPARATE
20    EXPERT'S REPORT.  AND SOME OF THE CASES EVEN SAY
21    WHERE THERE IS AN IDENTITY YOU ARE NOT ENTITLED
22    TO GET THEM.
23         AS FAR AS PREJUDICE, YOUR HONOR, YOU
24    KNOW, IF YOU ORDER US TO PRODUCE THESE,  WE DON'T
25    KNOW WHERE IT LEADS.  THEY ARE NOT GOING TO BE
```

1    ADMISSIBLE.  LET'S ASSUME, FOR EXAMPLE, AN

2    EXPERT IN THE MICHIGAN AETNA CASE AND A DIFFERENT

3    EXPERT IN ALABAMA COME UP WITH DIFFERENT

4    OPINIONS.  THEY'RE INDEPENDENT EXPERTS.  THAT'S

5    NOT AN ADMISSION OF BLUE CROSS MICHIGAN.  THAT

6    INCONSISTENT LEGAL POSITION, INDEPENDENT EXPERTS

7    COME UP WITH DIFFERENT OPINIONS ALL THE TIME.  IF

8    THEY ARE THE SAME EXPERT, IT BECOMES RELEVANT FOR

9    IMPEACHMENT.  BUT WE DON'T HAVE THAT.  THAT'S A

10   MISSING COG NOW, YOUR HONOR.  THAT'S WHY THEY

11   CAN'T CITE ANY CASE LAW BECAUSE THERE IS NOT ANY

12   TO SUPPORT THEIR POSITION.  AND FOR THOSE

13   REASONS, YOUR HONOR, AT THIS POINT IN TIME WHILE

14   WE ARE GOING FORWARD THIS, WE ASK THE COURT TO

15   SIMPLY CLARIFY YOUR ORDER AND SAY THOSE FEW

16   DOCUMENTS, THOSE ELEVEN REPORTS AND EIGHT

17   DEPOSITIONS DO NOT HAVE TO BE PRODUCED AT THIS

18   TIME.  THE PARTIES CAN COME BACK AND VISIT THIS

19   AS WE ARE GOING TO BE GOING ALONG IN THIS PROCESS

20   FOR THE NEXT SIX MONTHS.  AND I APPRECIATE IT,

21   YOUR HONOR.

22           THE COURT:  LET ME MAKE SURE I

23   UNDERSTAND THE PROCEDURAL POSTURE OF WHAT

24   HAPPENED IN THE MICHIGAN CASE.  MY UNDERSTANDING

25   IS WHILE THESE EXPERT REPORTS WERE GENERATED,

```
 1    EXPERTS WERE DEPOSED, THE MICHIGAN CASE WAS
 2    SETTLED SHORT OF TRIAL.  SO IT'S NOT LIKE ANY OF
 3    THEM TESTIFIED IN FRONT OF A JURY OR JUDGE OR
 4    ANYTHING OF THAT SORT.
 5              MR. CAMPBELL:  NOT ONLY DID NONE OF
 6    THEM TESTIFY, YOUR HONOR, THERE WERE DAUBERT
 7    MOTIONS PENDING AT THE TIME OF THE SETTLEMENT.
 8    THERE HAD NEVER BEEN A RULING IN THAT CASE
 9    WHETHER ANY OF THESE EXPERT OPINIONS CAN EVEN BE
10    OFFERED INTO EVIDENCE.  EVEN BEFORE THE DAUBERT
11    HEARINGS THAT THE CASE WAS SETTLED.  SO THAT IS
12    THE RISK OF PREJUDICE IS THAT THEY GET THESE
13    PARTICULAR OPINIONS WHICH HAVE NEVER BEEN RULED
14    ADMISSIBLE AND THEY CAN BE INFECTED OR PUT INTO
15    AN EXPERT'S OPINION HERE AND HAVING TO FERRET
16    THAT OUT DOWNSTREAM IN A MOTION IN LIMINE BASED
17    ON EXPERIENCE, YOUR HONOR,  IS VERY DIFFICULT, IF
18    NOT IMPOSSIBLE, FOR A DEFENDANT.  THAT'S WHY THE
19    COURTS SPEAK OF PREJUDICE.  WHAT GOOD DOES IT
20    SERVE THE PLAINTIFF BECAUSE IT'S NOT ADMISSIBLE,
21    AND IT COULD PREJUDICE DEFENDANT BY BEING
22    INFECTING SOME EXPERT'S REPORT DOWNSTREAM.  IT'S
23    BETTER IF YOU WAIT AND SEE IF YOU HAVE AN
24    IDENTITY OF EXPERTS YOU CAN REVISIT IT.  BUT AT
25    THIS POINT IN TIME, YOUR HONOR, THERE IS NOT ANY
```

1    CASES THAT SUPPORT THEIR POSITION BUT THEY SIMPLY

2    GET IT PELL MELL AS PART OF THIS PRODUCTION.

3            THE COURT:  WELL, IN THIS --

4            MR. CAMPBELL: -- NONE OF THOSE

5    OPINIONS WERE EVER VETTED BY THE COURT BY JUDGE

6    HOOD ARE FOUND TO BE ADMISSIBLE.

7            THE COURT:  THAT'S WHY I WANT TO BE

8    SURE WHAT HAPPENED IN THE MICHIGAN CASE.  WHILE

9    THE REPORTS WERE GENERATED, DEPOSITIONS  WERE

10   TAKEN, FROM A STANDPOINT OF A COURT USING THEM AS

11   EVIDENCE, AS AN EVIDENTIARY FOUNDATION FOR A

12   RULING, WHETHER THAT BE IN A PRETRIAL MOTION OR

13   WHETHER IT BE PRESENTATION OF EVIDENCE TO A JURY

14   OR ANOTHER FACT FINDER IN THE CASE, MY

15   UNDERSTANDING IS THOSE REPORTS WERE NEVER

16   UTILIZED IN A WAY THAT A COURT RELIED UPON.

17           MR. CAMPBELL:  THAT IS CORRECT, YOUR

18   HONOR.  THAT IS ABSOLUTELY CORRECT.  IT NEVER

19   REACHED THAT STAGE.  SETTLEMENT WAS REACHED

20   BEFORE THAT.

21           THE COURT:  RIGHT.  ALL RIGHT.

22           MR. CAMPBELL:  THANK YOU, YOUR HONOR.

23           THE COURT:  MR. RAGSDALE?

24           MR. RAGSDALE:  VERY BRIEFLY, YOUR

25   HONOR.

1            FIRST, MY UNDERSTANDING, AND I WAS

2    OBVIOUSLY NOT IN THE MICHIGAN CASE BUT NEITHER

3    WAS MR. CAMPBELL, IS THAT THERE WAS A MOTION FOR

4    SUMMARY JUDGMENT THAT WAS ARGUED.  AND TO THE

5    EXTENT ANY OF THOSE EXPERT REPORTS WERE RELIED

6    UPON BY EITHER SIDE IN THAT MOTION FOR SUMMARY

7    JUDGMENT, WE THINK THAT WOULD PUT THEM IN THE --

8            THE COURT:  WAS SUMMARY JUDGMENT MOTION

9    RULED ON BY THE COURT?

10            MR. RAGSDALE:  MY UNDERSTANDING IS

11    THEY SURVIVED AT SUMMARY JUDGMENT.

12            THE COURT:  ALL RIGHT.

13            MR. RAGSDALE:  IN ADDITION TO THAT, I

14    THINK WE HAVE JUST HEARD THAT THOSE MOTIONS, THAT

15    THE EXPERT REPORTS WERE ATTACHED TO DAUBERT

16    MOTIONS THAT WERE FILED.  SO AS A CONSEQUENCE, WE

17    BELIEVE IF THEY WERE REQUIRED TO PRODUCE THOSE

18    MOTIONS WITH THE ATTACHMENTS, THAT SATISFIES IN

19    OUR ABILITY TO GET THOSE EXPERT REPORTS WHICH

20    WERE, IN FACT, SUBMITTED TO THE COURT WITH THOSE

21    PENDING MOTIONS.

22            THE COURT:  MR. CAMPBELL, ANYTHING

23    ELSE?

24            MR. CAMPBELL:  JUST THAT MY

25    UNDERSTANDING, YOUR HONOR, THE COURT DID NOT RELY

```
 1    ON THOSE EXPERT OPINIONS IN ANY WAY IN ITS
 2    RULINGS.  AS THE COURT FOUND, THERE WERE MATERIAL
 3    FACTS IN DISPUTE AND ALLOWED THE CASE TO GO
 4    FORWARD.  IT WAS THEN THAT THE CASE WAS SETTLED.
 5              THE COURT:  ALL RIGHT.
 6              MR. CAMPBELL:  THANK YOU, YOUR HONOR.
 7              MR. STENERSON:  YOUR HONOR, TODD
 8    STENERSON FROM MICHIGAN.  THE COURT IN THE AETNA
 9    CASE DID NOT RULE ON SUMMARY JUDGMENT BEFORE THE
10    CASE WAS SETTLED.
11              THE COURT:  SO SUMMARY JUDGMENT
12    REMAINED PENDING BEFORE IT WAS SETTLED?
13              MR. STENERSON:  YES, YOUR HONOR.
14              THE COURT:  THANK YOU.  ALL RIGHT.
15    ANYTHING ELSE ANYONE WANTS TO ADD TO THE MICHIGAN
16    ISSUE?
17              ALL RIGHT.  THANK YOU.  WE'LL TAKE
18    THAT AND DO SOMETHING WITH IT, HOPEFULLY WITH NOT
19    CRANBERRY STAINS ALL OVER IT.
20              THE FINAL THING THAT I HAVE ON MY LIST
21    FOR DISCUSSION THIS AFTERNOON IS THE
22    ASSOCIATION'S MOTION -- RATHER THE PLAINTIFF'S
23    MOTION TO COMPEL THE ASSOCIATION TO DE-DESIGNATE
24    CERTAIN DOCUMENTS AS HAVING PREVIOUSLY BEEN
25    DESIGNATED AS CONFIDENTIAL.
```

1          MR. RAGSDALE?

2          MR. RAGSDALE:  THANK YOU, YOUR HONOR.

3     WE START WITH THE PREMISE THAT WE BELIEVE IN THIS

4     COURT AND OTHERS THAT CONFIDENTIALITY SHOULD BE

5     THE EXCEPTION, NOT THE RULE.  AND THAT THERE HAS

6     TO BE GOOD CAUSE SHOWN FOR DOCUMENTS TO BE

7     WITHHELD FROM A PUBLIC PROCEEDING.  WE THINK THAT

8     IS PARTICULARLY TRUE IN THIS LITIGATION WHICH

9     BOTH THE DEFENDANTS AND, FRANKLY, THE PLAINTIFFS

10    HAVE REPEATEDLY NOTED THE PUBLIC INTEREST

11    INVOLVED IN THIS WIDE RANGING LITIGATION DEALING

12    WITH THE HEALTH CARE SYSTEM AND ALL THE ISSUES

13    THAT GO WITH THAT.  AND AS A CONSEQUENCE, WE

14    BELIEVE THERE IS A PUBLIC INTEREST THAT SHOULD BE

15    TAKEN INTO ACCOUNT.  BUT EVEN APART FROM THAT, WE

16    BELIEVE THAT AT THIS POINT, AND THIS ALSO,

17    FRANKLY, DEALS WITH THE ISSUE OF WE WANT TO MAKE

18    SURE SOMETHING DOESN'T BECOME A TREND ANY MORE

19    THAN IT ALREADY HAS, IS THAT THERE SHOULD NOT BE

20    WHOLESALE, BLANKET CONFIDENTIALITY APPLIED TO ALL

21    DOCUMENTS SIMPLY BECAUSE THAT'S THE EASIEST THING

22    TO DO.

23          AND IN THIS INSTANCE, WE CONTEND THAT

24    THE DOCUMENTS THAT WE HAVE IDENTIFIED THAT WERE

25    PRODUCED BY THE ASSOCIATION, THAT WERE ALL GIVEN

1   A DESIGNATION OF CONFIDENTIALITY WAS UNWARRANTED.

2   THAT THERE IS NOT A REASON FOR THOSE DOCUMENTS TO

3   BE KEPT CONFIDENTIAL.  WE START WITH THE PREMISE

4   THAT THEY ARE NOT TRADE SECRETS, DON'T INVOLVE,

5   WE BELIEVE, CONFIDENTIAL RESEARCH OR DEVELOPMENT

6   OR THE KIND OF THINGS THAT ARE DEFINED NOT ONLY

7   IN THE RULES BUT IN THIS COURT'S PROTECTIVE ORDER

8   THAT WAS ENTERED IN ORDER TO PROTECT THOSE.

9        AS A CONSEQUENCE, THAT'S WHY WE

10   CONTACTED THE ASSOCIATION AND ASKED THAT THEY

11   RECONSIDER THE DESIGNATION OF THOSE WHOLESALE

12   DOCUMENTS AS BEING CONFIDENTIAL.  AT THAT POINT,

13   I THINK BOTH THE LAW AND THE PROTECTIVE ORDER

14   MAKES IT CLEAR THAT THE BURDEN SHIFTS TO THE

15   DEFENDANT TO SHOW A REASON WHY THOSE DOCUMENTS

16   HAVE TO BE CONFIDENTIAL.  AND IN THIS INSTANCE, I

17   DO THINK IT'S IMPORTANT TO POINT OUT, MOST IF NOT

18   ALL OF THESE DOCUMENTS ARE DECADES OLD.  MOST OF

19   THEM ARE MORE THAN 30 YEARS OLD.  THEY INVOLVE

20   HISTORICAL ASPECTS WHICH ARE RELEVANT TO THIS

21   CASE, OBVIOUSLY, AND ALSO RELEVANT TO THE

22   DETERMINATION OF WHETHER OR NOT THEY REALLY

23   INVOLVE THE KIND OF CONFIDENTIALITY THAT BOTH THE

24   PROTECTIVE ORDER AND THE RULES OF CIVIL PROCEDURE

25   INTENDED TO PROTECT, PARTICULARLY GIVEN THE

```
 1   HISTORICAL NATURE.  EVEN DOCUMENTS REGARDING THE
 2   KENNEDY ASSASSINATION ARE EVENTUALLY MADE PUBLIC.
 3   I DO WANT TO MAKE IT CLEAR I AM NOT ACCUSING THEM
 4   OF ANY COMPLICITY AT THIS POINT IN THAT.
 5            THE COURT:  SOMEBODY WAS THE MAN WITH
 6   THE UMBRELLA.
 7            MR. RAGSDALE:  THAT'S EXACTLY RIGHT.
 8   AS A CONSEQUENCE, WE BELIEVE THESE DOCUMENTS DO
 9   NOT FALL INTO THE KIND OF CATEGORY WHERE THE
10   LIMITED EXCEPTION OF CONFIDENTIALITY OUGHT TO
11   APPLY IN PUBLIC PROCEEDINGS LIKE THIS LITIGATION.
12   REGARDLESS OF THE FACT THAT THE PARTIES MAY BE
13   PRIVATE PARTIES, THIS LITIGATION IS NOT PRIVATE
14   AND IT OBVIOUSLY INVOLVES THIS COURT AND THE
15   PUBLIC INTEREST.  MORE IMPORTANTLY, WE BELIEVE
16   THESE HISTORICAL DOCUMENTS, IN PARTICULAR, ARE
17   SUBJECT TO SCRUTINY BECAUSE OF THE WAY THEY WERE
18   TREATED BY BLUE CROSS.  AND THERE IS MUCH
19   DISCUSSION IN THE PAPERS ABOUT THE CUNNINGHAM'S
20   BOOK.  I DO BELIEVE WE SHOULD PROBABLY GET SOME
21   ROYALTIES FOR THE NUMBER OF BOOKS WE HAVE MANAGED
22   TO SELL FOR THAT.  IT MAY BE BACK ON THE BEST
23   SELLER LIST.
24            BUT IN THIS INSTANCE, THOSE DOCUMENTS
25   REFERENCE EVENTS THAT WERE DISCUSSED AT LENGTH BY
```

1    THE CUNNINGHAMS IN THEIR BOOK.  AND WE POINT OUT

2    MAYBE THE CUNNINGHAMS' BOOK IS NOT THE DETACHED

3    DISSERTATION IT MIGHT HAVE BEEN REPRESENTED TO

4    BE.  AND, IN FACT, MIGHT BE A PROPAGANDA PIECE

5    THAT WAS PAID FOR BY BLUE CROSS.  I DON'T THINK

6    THAT'S NECESSARILY A CONCLUSION THAT THIS COURT

7    HAS TO REACH.  BUT WHAT I DO THINK THIS COURT AND

8    IT'S MADE MANIFEST BY A COMPARISON OF THE

9    EXCERPTS WE HAVE PROVIDED FROM THE CUNNINGHAMS

10   BOOK AND THE DOCUMENTS THAT WE ARE TALKING ABOUT

11   IS THESE VERY SUBJECTS, THE SUBJECTS THAT WE ARE

12   DISCUSSING IN TERMS OF THE BUSINESS PLAN AND THE

13   ASPECTS THAT OCCURRED 30 OR MORE YEARS AGO ARE

14   NOT CONFIDENTIAL.  THEY ARE NOT THE KIND OF TRADE

15   SECRET INFORMATION THAT WOULD NORMALLY BE SUBJECT

16   TO CONFIDENTIALITY.  INSTEAD, THEY WOULD HAVE

17   BEEN DISCUSSED OPENLY NOT ONLY IN THIS BOOK BUT

18   IN THE COURT DECISION THAT WE CITED AS WELL.  AND

19   THEY ARE NOT SUBJECTS TO THE NEED FOR THE KIND OF

20   PROTECTION THAT BLUE CROSS WOULD AFFIX TO THESE

21   PARTICULAR DOCUMENTS.

22          WE WOULD ALSO POINT OUT, AND I THINK

23   IT IS WORTH NOTING THAT THE CUNNINGHAM CONSULTING

24   CONTRACT IN WHICH BLUE CROSS REPEATEDLY POINTS

25   OUT WAS SUBJECT TO A CONFIDENTIALITY  AGREEMENT,

1  THAT THAT AGREEMENT ITSELF EXPIRED MORE THAN 20

2  YEARS AGO.  IT EXPIRED IN 1991.  AND AS A

3  CONSEQUENCE, WE ARE REALLY TALKING ABOUT BLUE

4  CROSS'S HISTORY.  AND THE FACT THAT THOSE

5  DOCUMENTS ARE A HISTORICAL NATURE AND WERE MADE

6  AVAILABLE TO HISTORIANS TO REPORT UPON.  NOW,

7  BLUE CROSS DOESN'T WANT THEM AND WANTS TO BE ABLE

8  TO EXERCISE THE SAME KIND OF CONTROL THAT THEY

9  EXERCISED OVER THE CUNNINGHAMS IN TERMS OF WHAT

10  COULD BE WRITTEN AND WHAT COULD NOT BE WRITTEN.

11          THE LAST THING I WOULD SAY, JUDGE,

12  THIS IS NOT AN IDLE EXERCISE ALTHOUGH WE DO THINK

13  IT'S AN IMPORTANT POINT THAT WE NOT GET IN A

14  SITUATION WHERE EVERY DOCUMENT THAT IS PRODUCED

15  OR MOST DOCUMENTS THAT ARE PRODUCED ARE JUST

16  ROUTINELY MARKED CONFIDENTIAL WHEN THERE IS NO

17  NEED FOR THAT TO OCCUR.  BUT IN ADDITION TO THAT,

18  THERE ARE REAL WORLD PROBLEMS WITH THE FACT THAT

19  CONFIDENTIAL DOCUMENTS CANNOT BE SHOWN TO NON-

20  PARTIES.  AN ASPECT OF THIS CASE THAT I THINK IS

21  IMPORTANT TO TAKE INTO ACCOUNT IS THAT THERE IS A

22  NEED FOR US TO TALK ABOUT THIS CASE AND ABOUT

23  THIS LITIGATION, ABOUT THE IMPORT OF THIS

24  LITIGATION AND ABOUT THE EFFECT OF THIS

25  LITIGATION WITH PEOPLE WHO ARE NOT YET PARTIES TO

1    THIS CASE AND MAY NEVER BE PARTIES TO THIS CASE

2    BUT MAY HAVE AN INTEREST IN TALKING ABOUT IT, WHO

3    MAY BE CLIENTS OF THE VARIOUS PLAINTIFFS' FIRMS

4    OR POTENTIAL CLIENTS OF THE PLAINTIFFS' FIRMS SO

5    THERE ARE PRACTICAL CONSEQUENCES AND

6    ADMINISTRATIVE CONSEQUENCES OF THAT.

7              I THINK MAYBE THE MOST TELLING ASPECT

8    OF THAT IS WHEN WE WERE WITH JUDGE PROCTOR

9    RECENTLY, WE COULD NOT INCLUDE SOME OF THESE

10   EXHIBITS IN OUR POWER POINT PRESENTATION MADE TO

11   THE COURT BECAUSE OF THE FACT THEY HAD BEEN

12   DESIGNATED AS CONFIDENTIAL BY THE DEFENDANTS.  WE

13   WERE REQUIRED INSTEAD TO PRINT OFF THAT POWER

14   POINT PRESENTATION AND PRESENT IT TO JUDGE

15   PROCTOR DIRECTLY AS OPPOSED TO BEING ABLE TO EVEN

16   DISCUSS IT.  SO THERE ARE ADMINISTRATIVE

17   INCONVENIENCES, OTHER REASONS WHY THESE DOCUMENTS

18   SHOULD BE AVAILABLE TO THE PUBLIC THAT HAVE

19   NOTHING TO DO WITH THE DIRE THREATS THAT BLUE

20   CROSS HAS SUGGESTED.

21              AND WE WOULD SIMPLY SAY THAT NOW IS

22   THE TIME FOR THIS COURT, WE THINK, TO MAKE A

23   CLEAR DECLARATION THAT CONFIDENTIALITY SHOULD BE

24   THE RARE EXCEPTION AND NOT THE RULE THAT'S

25   APPLIED BY THE DEFENDANTS WHEN THEY RESPOND TO

1    DISCOVERY REQUESTS.

2                 THE COURT:  MS. DONNELL.

3                 MS. DONNELL:  GOOD AFTERNOON, YOUR

4    HONOR.  SARAH DONNELL AGAIN FOR THE ASSOCIATION.

5    IT'S CLEAR HERE WHEN WE TALKED ABOUT HALF AN HOUR

6    AGO ABOUT WHAT SHOULD BE PRIORITIZED IN THIS

7    CASE, WHETHER CERTAIN DOCUMENTS ARE CONFIDENTIAL

8    IS NOT A PRIORITY WHEN WE ARE REALLY TRYING TO

9    MOVE FORWARD, GET DOCUMENTS OUT, MOVE QUICKLY.

10   THAT BEING SAID, PLAINTIFFS ARE NOT BEING

11   PREJUDICED IN THEIR CASE PREPARATION BY THE

12   MARKING OF DOCUMENTS AS CONFIDENTIAL.  THEIR

13   COMPLAINT IS NOT THAT WE ARE NOT PRODUCING

14   DOCUMENTS.  AGAIN, WE MADE OUR FIFTH PRODUCTION

15   OF UNSTRUCTURED HISTORICAL DOCUMENTS LAST FRIDAY.

16   WE KNOW HAVE 88,000 DOCUMENTS, PAGES OF DOCUMENTS

17   OUT.  CONTRARY TO PLAINTIFFS' STATEMENT THERE HAS

18   NOT BEEN A BLANKET DESIGNATION OF CONFIDENTIALITY

19   ON THOSE 88,000 PAGES OF DOCUMENTS.

20                DOCUMENTS HAVE BEEN PRODUCED WITHOUT A

21   CONFIDENTIALITY DESIGNATION.  PLAINTIFFS FOCUS

22   MERELY ON THESE 6,000 PAGES OF DOCUMENTS OUT OF

23   THAT LARGER SET AND CALLED THAT A BLANKET

24   DESIGNATION.  THAT'S NOT ACCURATE WITH RESPECT TO

25   OUR PRODUCTION IN TOTAL.

1            THE PREMISE OF PLAINTIFFS' MOTION IS

2    THERE IS SOME PUBLIC INTEREST THAT REQUIRES THESE

3    DOCUMENTS TO BE NOT CONFIDENTIAL AND I THINK

4    THAT'S CONTRARY TO ELEVENTH CIRCUIT LAW IN THE

5    ALEXANDER GRANT CASE, THE ANDERSON CASE, WHICH

6    BOTH RECOGNIZE THAT DISCOVERY IS A PRIVATE

7    PROCESS.  IT MIGHT TAKE PLACE IN A PUBLIC FORUM

8    IN THE COURT BUT WHILE THE PARTIES ARE EXCHANGING

9    DOCUMENTS, THOSE DISCOVERY DOCUMENTS ARE NOT PART

10   OF THE PUBLIC RECORD.  EVEN WHEN THEY ARE, AND

11   THE PURPOSE OF THAT DISCOVERY AS THOSE CASES

12   RECOGNIZE IS TO PREPARE THE PARTIES TO GO TO

13   TRIAL.  IT'S NOT TO USE THEM FOR SOME BROADER

14   AGENDA FOR PUBLIC INTEREST, PUBLIC PURPOSE.  AND,

15   SO, THE COMMON LAW RIGHT OF ACCESS DOESN'T EVEN

16   ATTACH, IF AT ALL, UNTIL DOCUMENTS BECOME A

17   SUBSTANTIVE PART OF A DISPOSITIVE MOTION OR FOR

18   TRIAL.  SO THE FUNDAMENTAL PREMISE THAT THERE IS

19   SOME PUBLIC RIGHT OR PUBLIC INTEREST TO THESE

20   DISCOVERY DOCUMENTS IS FLAWED AND CONTRARY TO

21   ELEVENTH CIRCUIT LAW.

22            AND THIS IS A REAL CONCERN FOR US IN

23   THIS CASE.  WE HAVE, PLAINTIFFS'  HAVE A WEB SITE

24   DEVOTED TO THIS LITIGATION.  REAL CONCERN FOR US

25   THAT DOCUMENTS WE PRODUCE IN THIS LITIGATION THAT

1     ARE MEANT TO AID FOR PREPARATION OF TRIAL AND END

2     UP ON THAT WEB SITE.  REAL CONCERN AS WELL,

3     WEEKLY, FREQUENT ARTICLES IN THE BIRMINGHAM

4     BUSINESS JOURNAL ON THIS CASE.  AGAIN, A LARGE

5     CONCERN FOR US THAT THESE DOCUMENTS END UP OUT

6     THERE WITHOUT CONTEXT WITH PLAINTIFFS' VIEW POINT

7     AND BECOME SOMETHING THAT POTENTIAL JURORS SEE

8     AND INFLUENCE THEIR VIEW OF THE CASE WELL IN

9     ADVANCE OF ANY TRIAL IN THIS MATTER.

10           SO, I THINK THERE IS MANY CASES,

11    ALEXANDER GRANT, ANDERSON, CASES WE CITED THAT

12    REJECT SOME BIG NOTION THERE IS A PUBLIC

13    INTEREST, PARTICULARLY WHERE THERE IS NO THIRD

14    PARTY COMING IN SEEKING THESE DOCUMENTS, SUCH AS

15    THE PRESS, AS YOU MIGHT HAVE IN THOSE CASES.

16           AS A PREMISE, THE ASSOCIATION HAS GONE

17    THROUGH AND WHILE REVIEWING DOCUMENTS, DONE A

18    DOCUMENT BY DOCUMENT REVIEW OF THE

19    CONFIDENTIALITY.  THE DOCUMENTS THAT WERE MARKED

20    CONFIDENTIAL IN THESE 6,000 PAGES RELATED TO THE

21    ASSEMBLY OF PLANS IN LONG TERM BUSINESS STRATEGY.

22    BOTH OF THOSE INITIATIVES WERE THE UNDERLYING

23    INITIATIVES, THE DOCUMENTS RELATED TO THEM WERE

24    CONFIDENTIAL.  THEY WERE NOT DISCLOSED TO

25    COMPETITORS.

1            THE FACT THAT THEY, THE MERE FACT THEY

2    WERE DISCLOSED AS SIMILAR PLANS MENTIONED IN ONE

3    SENTENCE IN ESSENTIAL BENEFITS DECISION, NOTHING

4    MORE, NOTHING LESS.  IT SAYS THERE IS ASSEMBLY OF

5    PLANS GOING ON RIGHT NOW.  THAT CAN'T BE CONFUSED

6    WITH THE WAIVER OF CONFIDENTIALITY BECAUSE THE

7    DETAILS OF THE ASSEMBLY OF PLANS WERE NOT MADE

8    PUBLIC IN THAT OPINION.

9            NOR IF YOU REALLY LOOK AT THE

10    CUNNINGHAMS BOOK, CUNNINGHAM DISCUSSING THE

11    EFFECT OF LONG TERM BUSINESS STRATEGY AND THE

12    EFFECT OF ASSEMBLY OF PLANS.  IF YOU REALLY LOOK

13    AT THE PARAGRAPH THAT THE PLAINTIFFS CITE IN

14    THEIR MOTION, MAY BE LESS THAN A HANDFUL OF

15    SENTENCES THAT COME FROM ANY DOCUMENT FROM THE

16    ASSEMBLY OF PLANS.

17            AND SO WITH RESPECT TO THEIR ARGUMENT

18    THAT THAT SOMEHOW AMOUNTED TO A WAIVER BECAUSE

19    INITIATIVES ARE MENTIONED IN THOSE MATERIALS,

20    THAT DOESN'T HOLD WATER, YOUR HONOR.

21            WITH RESPECT TO THEIR --

22            THE COURT:  THESE ARE ALL 30 OR 40 YEAR

23    OLD DOCUMENTS NOW.

24            MS. DONNELL:  -- THEY ARE NOT 40 YET.

25    THEY ARE OLDER DOCUMENTS, YOUR HONOR.

1           WITH RESPECT TO, I HAVEN'T SEEN

2   PLAINTIFFS CITE ANY CASE LAW THAT THERE IS A

3   BRIGHT LINE RULE AS TO WHETHER DOCUMENTS LOSE

4   THEIR CONFIDENTIALITY.  AND I AM NOT AWARE OF ANY

5   SUCH LAW.

6           I WOULD ALSO NOTE, AS WE NOTED IN THE

7   BRIEF, THE ASSEMBLY OF -- APOLOGIES.  THE

8   ASSEMBLY OF PLANS AND LONG TERM BUSINESS

9   STRATEGY, CONSIDER HOW THE BLUES COULD BETTER

10  COMPETE IN THE NATIONAL MARKET PLACE.  THEY

11  CONSIDERED HOW TO BETTER PROTECT THE SERVICE

12  MARKS.  THOSE SERVICE MARKS ARE STILL IN USE

13  TODAY.  THEY CONSIDERED HOW THE BLUES COULD

14  BETTER STRUCTURE THEIR LICENSE AGREEMENTS AND

15  THEIR MEMBERSHIP STANDARDS.  THOSE AGREEMENTS AND

16  MEMBERSHIP STANDARDS THAT CAME OUT OF THE

17  ASSEMBLY OF PLANS, CAME OUT IN 1991, WE STILL USE

18  THOSE LICENSING AGREEMENTS AND MEMBERSHIP

19  STANDARDS.  TO SAY THAT DISCUSSIONS ABOUT THOSE

20  IS STALE NOW IS INCORRECT.  I THINK THEY ARE

21  STILL RELEVANT TO HOW WE OPERATE COMMERCIALLY

22  TODAY.  I DON'T THINK SIMPLY BECAUSE THEY ARE

23  OLDER MEANS THEY HAVE LOST THEIR CONFIDENTIALITY

24  AT THIS POINT.

25          AGAIN, WITH RESPECT TO PLAINTIFFS'

```
 1    STATEMENT THAT SOMEHOW THE CUNNINGHAMS' USE OF
 2    THESE DOCUMENTS PUT IN THE PUBLIC DOMAIN, IT'S
 3    CLEAR THAT THE ASSOCIATION TOOK REASONABLE STEPS
 4    TO MAINTAIN THE CONFIDENTIALITY OF THOSE
 5    DOCUMENTS.  WE ASKED THE CUNNINGHAMS TO ENTER
 6    INTO A CONFIDENTIALITY AGREEMENT.  THAT
 7    CONFIDENTIALITY AGREEMENT DIDN'T HAVE ANY
 8    EXPIRATION DATE -- THE CONFIDENTIALITY PROVISION
 9    DID NOT HAVE AN EXPIRATION DATE.  SO WHILE
10    MR. CUNNINGHAM WAS REQUIRED TO FINISH THE BOOK BY
11    1991, THERE IS NOTHING THAT LIMITED, THAT ALLOWED
12    HIM TO DISCLOSE THE DOCUMENTS AFTER THAT EXPIRED.
13              SO, THAT ARGUMENT AGAIN, THE
14    CONFIDENTIALITY STILL CONSTRAINS THEM.  THE
15    DOCUMENTS HAVE NOT BEEN -- THERE IS NO EVIDENCE
16    THE DOCUMENTS HAVE BEEN PUT OUT INTO THE PUBLIC
17    DOMAIN BY THE CUNNINGHAMS EXCEPT FOR THE FEW
18    BRIEF CITATIONS THAT MAY APPEAR IN THE BOOK.  AND
19    AS YOUR HONOR HAD RECOGNIZED AND AS WE HAVE
20    DISCUSSED AT THE PRIOR TWO HEARINGS, THE
21    CUNNINGHAMS, WE DON'T KNOW WHAT THEY SAW.  WE
22    DON'T KNOW THAT THEY SAW ANY OR ALL THESE
23    DOCUMENTS.  WE KNOW THEY PROBABLY SAW THE FEW
24    THAT ARE CITED IN THE BOOK BUT BEYOND THAT, WE
25    DON'T KNOW WHAT OF THE 6,000 PAGES THAT
```

1    CUNNINGHAMS SAW.  SO AGAIN, THAT'S ANOTHER REASON

2    WHY THERE HAS BEEN NO WAIVER HERE.

3              THE ASSOCIATION, AGAIN, ACTED IN GOOD

4    FAITH IN DESIGNATING THESE.  THE PROTECTIVE

5    ORDER, CONTRARY TO MR. RAGSDALE'S ARGUMENT, DOES

6    NOT LIMIT WHAT CAN BE DESIGNATED AS CONFIDENTIAL

7    OR SIMPLY TRADE SECRET.  IT ALSO ALLOWS THE

8    ASSOCIATION OR ANY PARTY TO DESIGNATE WHAT IS

9    CALLED CONFIDENTIAL COMMERCIAL INFORMATION.  AND

10   THERE IS CASE LAW THAT EXTENDS CONFIDENTIAL

11   COMMERCIAL INFORMATION TO MARKET RESEARCH

12   STUDIES, TO MARKETING STRATEGIES, TO THINGS THAT

13   ARE JUST  BEYOND WHAT MIGHT BE OTHER STRATEGIC

14   INITIATIVES ABOUT HOW THEY MIGHT OPERATE.  SO

15   IT'S --

16             THE COURT:  I HAVE NO QUESTION THAT

17   BUSINESS STRATEGIES OF BUSINESSES ARE THE TYPE OF

18   THING THAT A BUSINESS CAN SEEK TO PROTECT IN A

19   PROTECTIVE ORDER.  AND I GUESS THE QUESTION I AM

20   TRYING TO FIGURE OUT IS MUCH MORE PRACTICAL THAN

21   THAT.  WHEN WE HAVE A DISPUTE AS TO WHETHER A

22   MASS OF DOCUMENTS -- NOW, IF WE ARE TALKING ABOUT

23   A FEW DOCUMENTS, GRANTED, I CAN REVIEW THOSE.

24   BUT WE ARE TALKING ABOUT A MASS OF DOCUMENTS.

25   AND, BELIEVE ME, I AM NOT SEEKING AN INVITATION

```
 1    TO REVIEW 6,000 DOCUMENTS.  BUT WHEN THERE IS A
 2    MASS OF DOCUMENTS, WHO SHOULD HAVE TO JUSTIFY
 3    THAT THE DOCUMENTS EITHER ARE OR ARE NOT
 4    CONFIDENTIAL FOR DISCOVERY PURPOSES?
 5            MS. DONNELL:  WELL, UNDER THE
 6    PPROTECTIVE ORDER, THE PARTY CHALLENGING THE
 7    CONFIDENTIALITY DESIGNATION HAS THE BURDEN TO
 8    COME FORWARD IDENTIFYING SPECIFIC DOCUMENTS BY
 9    BATES NUMBER THAT THEY ARE CHALLENGING.  AND WE
10    BELIEVE THAT WASN'T FILED HERE.  WE AGREE THAT
11    UNDER THE PROTECTIVE ORDER AND GENERALLY IN THE
12    CASE LOG, ONCE THEY HAVE MADE THAT IDENTIFICATION
13    OF A SPECIFIC DOCUMENT, WE BEAR THE BURDEN OF
14    ESTABLISHING CONFIDENTIALITY, PROVING THE
15    CONFIDENTIALITY DOCUMENT.  IT'S VERY DIFFICULT
16    HERE TO DO THAT WHEN THEY HAVEN'T CHALLENGED A
17    SPECIFIC DOCUMENT.
18            THE COURT:  HOW DO I PROTECT AGAINST
19    WHAT MR. RAGSDALE SAYS IS THE TREND HERE --
20    AND YOU TELL ME IT'S NOT,  AND I UNDERSTAND THAT.
21    THE TREND HERE IS THAT THE EASIEST THING TO DO IS
22    JUST DESIGNATE EVERYTHING CONFIDENTIAL AND PUT
23    THE BURDEN ON THEM TO COME FORWARD AND IDENTIFY
24    THOSE DOCUMENTS THAT THEY THINK SHOULD NOT BE
25    DESIGNATED.
```

1            MS. DONNELL:  AGAIN, AS I SAID, WE

2   HAVEN'T BEEN DOING BLANKET DESIGNATION SO I THINK

3   CASE LAW THAT SUGGESTS WHERE A PARTY DESIGNATES

4   150,000 DOCUMENTS AS CONFIDENTIAL, THE BURDEN

5   DOESN'T SHIFT TO THE PARTY TO CHALLENGE IT.

6   THAT'S NOT THE SITUATION WE HAVE HERE.  6,000

7   PAGES -- WHICH PROBABLY AMOUNTS TO A COUPLE

8   HUNDRED DOCUMENTS.

9            I THINK IT'S TELLING THAT PLAINTIFF

10  INCLUDED EXAMPLES IN THEIR MOTION FROM A

11  SUBSEQUENT PRODUCTION.  NOW, THEY WERE ABLE TO GO

12  IN AND SAY, HEY, I DON'T THINK THIS SHOULD HAVE

13  BEEN, WHY WAS THIS DONE?  IT'S TELLING TO ME THEY

14  DIDN'T DO THAT WITH THE ASSEMBLY OF PLANS AND

15  LONG TERM BUSINESS STRATEGY DOCUMENTS.  THEY

16  DIDN'T COME FORWARD WITH ANY OF THOSE WHEN THEY

17  DID SO WITH RESPECT TO ANOTHER PRODUCTION.

18            SO I THINK HERE, PARTICULARLY WHERE WE

19  HAVEN'T DESIGNATED EVERY DOCUMENT AS

20  CONFIDENTIAL, WE HAVE CERTAINLY PRODUCED

21  DOCUMENTS WITHOUT CONFIDENTIALITY DESIGNATIONS.

22  THE BURDEN IS STILL ON THEM TO COME FORWARD TO

23  IDENTIFY SPECIFIC DOCUMENTS.  AND THAT MAKES IT,

24  FACILITATES OUR ABILITY TO SAY, YOU KNOW WHAT, WE

25  AGREE WITH YOU.  THEY ARE TRADEMARK DOCUMENTS,

1    THAT WAS AN ERRONEOUS DESIGNATION.  LETS DON'T

2    BOTHER THE COURT, WE'LL DE-DESIGNATE.  THAT'S HOW

3    THE PROCEDURE SHOULD GO.  IF THEY HAD COME TO US

4    AND SAID HERE'S SPECIFIC DOCUMENTS, WE DON'T

5    THINK THEY SHOULD BE CONFIDENTIAL, WE WOULD BE

6    HAPPY TO CONSIDER THAT.  AND WE HAVE OFFERED TO

7    DO THAT.

8           I THINK PARTICULARLY HERE WHERE THERE

9    IS NO CASE PREPARATION BEING HAMPERED, THEY CAN

10   USE THE DOCUMENTS WITH THE PARTIES, THEY CAN USE

11   THEM WITH ANY OF THEIR COUNSEL, THEY CAN USE IT

12   WITH THEIR EXPERTS.  IT'S NOT AS ATTORNEYS' EYES

13   ONLY CASES THAT THEY HAVE CITED WHERE A CLIENT

14   COULDN'T REVIEW A DOCUMENT SO THE CLIENT COULDN'T

15   ASSIST IN PREPARING FOR MEDIATION AND SUMMARY

16   JUDGMENT MOTION.  THAT'S NOT WHAT WE HAVE HERE.

17   WE SIMPLY HAVE DOCUMENTS THAT ARE MARKED

18   CONFIDENTIAL.  AND MR. RAGSDALE STATED WE

19   COULDN'T USE THEM IN A HEARING BEFORE JUDGE

20   PROCTOR.  THAT'S EXACTLY THE SITUATION WHERE WE

21   SAID IF YOU'RE GOING TO USE IT, WANT TO USE A

22   DOCUMENT IN OPEN COURT, YOU'RE GOING TO WANT TO

23   USE IT WITH THE DISPOSITIVE MOTION, BRING IT TO

24   US.  WE ARE HAPPY TO DO THAT.  BUT HERE, WHERE WE

25   HAVE THOUSANDS UPON THOUSANDS OF PAGES THAT ARE

```
 1    BEING PRODUCED, AGAIN, NOT ALL CONFIDENTIALITY
 2    DESIGNATIONS TO GO THROUGH THE BURDEN WHILE WE
 3    ARE TRYING TO PRODUCE DOCUMENTS QUICKLY OF
 4    REDESIGNATING, FOR EXAMPLE, WHEN MOST OF THOSE
 5    DOCUMENTS ARE NOT GOING TO BE GERMANE TO ANY
 6    DISPOSITIVE MOTION OR TRIAL SEEMS CONTRARY TO THE
 7    SPIRIT OF THE COURT'S STREAMLINING ORDER AND THE
 8    WORK THAT WE NEED TO GET DONE IN THE NEXT 13
 9    MONTHS.
10              THE COURT:  OF THE 88,000 PAGES
11    APPROXIMATELY THAT HAVE BEEN PRODUCED, WHAT'S
12    YOUR BEST GUESS WHAT PERCENTAGE OF THEM HAVE BEEN
13    DESIGNATED CONFIDENTIAL?
14              MS. DONNELL:  I THINK 80-SOMETHING
15    PERCENT HAVE BEEN DESIGNATED AS CONFIDENTIAL.
16    AND AGAIN, THERE IS SOME THAT HAVE BEEN
17    DESIGNATED AS ATTORNEYS' EYES ONLY.  A VERY, VERY
18    SMALL PERCENTAGE  SIMPLY BECAUSE OF ACTUALLY
19    INNER PLAN, PLANS INDEPENDENT COMPANIES CAN'T
20    NECESSARILY USE EACH OTHER'S DATA.
21              THEN THERE IS A SIGNIFICANT PERCENTAGE
22    THAT HAVING BEEN PRODUCED WITHOUT ANY
23    CONFIDENTIALITY DESIGNATION.  AND PLAINTIFFS HAVE
24    POINTED OUT IN THEIR MOTION, PERHAPS THIS
25    TRADEMARK DOCUMENT SHOULD HAVE BEEN PRODUCED AS
```

1    CONFIDENTIAL.  AND TO THE EXTENT THEY COME

2    FORWARD AND WE AGREE WITH ITEMS LIKE THAT, WE ARE

3    HAPPY TO CONSIDER IT AND REPRODUCE WITHOUT A

4    DESIGNATED.  BUT WE NEEDS THAT COOPERATION AS

5    OUTLINED IN THAT PROTECTIVE ORDER.  IT MAKES

6    SENSE.

7           THE COURT:  I GUESS, I AM TRYING TO BE

8    FAIR, MY CONCERN HERE IS I DON'T WANT TO

9    ENCOURAGE THE ABUSE OF A CONFIDENTIAL

10   DESIGNATION.  AND I TRY TO MAKE THAT CLEAR TO

11   EVERYBODY THAT IF YOU THINK THAT YOU CAN SIMPLY

12   DESIGNATE EVERYTHING CONFIDENTIAL AND THEN SAY,

13   OKAY, PLAINTIFFS, NOW YOU GO THROUGH THE 88 PAGES

14   AND PICK OUT WHAT YOU THINK SHOULD NOT BE

15   CHANGED, EVENTUALLY, MAYBE NOT NOW, BUT

16   EVENTUALLY THAT'S GOING TO BE VIEWED AS BEING AN

17   ABUSE.  AND IT MAY RESULT IN A CHANGE IN THE

18   PROTECTIVE ORDER.

19           MS. DONNELL:  UNDERSTOOD, YOUR HONOR.

20   AND WE HAVE CERTAINLY INSTRUCTED OUR REVIEWERS TO

21   TAKE CAREFUL LOOKS AT CONFIDENTIALITY AS YOU

22   MENTIONED, SO WE DON'T GET TO THAT POINT.

23           I WILL SAY THAT THE NOTION THAT

24   CONFIDENTIALITY SHOULD BE THE EXCEPTION RATHER

25   THAN THE NORM IS HARD.  THERE IS LOT OF COMMITTEE

1    MEETINGS THAT ARE GOING TO BE PRODUCED.  WE'RE

2    GOING TO BE PRODUCING BOARD MINUTES.  THOSE ARE

3    CLEARLY CONFIDENTIAL DOCUMENTS.  THERE IS GOING

4    TO BE -- WE ARE PRODUCING DOCUMENTS FROM BACK TO

5    2005, THEY ARE VERY RECENT DOCUMENTS DISCUSSING

6    CURRENT INITIATIVES, HOW WE STRUCTURED BLUE

7    CARDS, HOW OUR NATIONAL PROGRAMS WORK.  SO THE

8    NOTION THAT IT'S THE EXCEPTION I DON'T THINK IS

9    CORRECT JUST BY THE NATURE OF THE DOCUMENTS THAT

10   WE ARE GOING TO BE PRODUCING.

11            AND AGAIN, CERTAINLY THIS IS VERY

12   DIFFERENT THAN THE CASES THEY CITE WHERE IT'S

13   ATTORNEYS' EYES ONLY AND IT'S 95 PERCENT

14   ATTORNEYS' EYES ONLY.  THAT'S NOT WHERE WE ARE

15   AND INTEND TO BE.

16            THE COURT:  I UNDERSTAND THAT.  AND I

17   AM JUST TRYING TO THINK -- AND I DON'T WANT TO

18   KEEP BEATING A DEAD HORSE -- BUT I WANT TO BE

19   CLEAR TO THE PARTIES THAT IT WILL BE ABUSE OF THE

20   PROTECTIVE ORDER TO SIMPLY DESIGNATE A LARGE BODY

21   OF DOCUMENTS WHERE IF AT SOME POINT I AM FORCED

22   TO GO BACK AND REVIEW THEM AND IT TURNS OUT THERE

23   IS NOT SOME PRACTICAL NEED FOR CONFIDENTIALITY OF

24   THESE DOCUMENTS, IT'S GOING TO BE REGARDED AS AN

25   ABUSE.  SO I THINK YOU BETTER VERY CAREFULLY LOOK

1    AT WHAT GETS DESIGNATED AS CONFIDENTIAL IF YOU

2    WANT TO TRY TO KEEP THE PROTECTIVE ORDER IN

3    PLACE.

4              MS. DONNELL:  UNDERSTOOD, YOUR HONOR.

5    WE ARE CERTAINLY -- YEAH.

6              THE COURT:  THE OLDER A DOCUMENT IS,

7    THE LESS LIKELY, IT SEEMS TO ME, I GUESS THEY ARE

8    STILL SOME THINGS THAT ARE TOP SECRET FROM WORLD

9    WAR II, I GUESS.  BUT THE OLDER A DOCUMENT IS

10   SEEMS TO ME THE LESS LIKELY, THE LESS THERE IS A

11   NEED FOR IT TO BE CONFIDENTIAL.  THE PASSAGE OF

12   TIME, AS YOU SAY,  MAKES SOMETHING STALE AFTER A

13   WHILE.   MAYBE THAT'S NOT THE CASE HERE.  BUT

14   THAT'S ONE OF THOSE PRACTICAL CONSIDERATIONS TO

15   LOOK AT IF WE ARE TALKING ABOUT A 30 YEAR OLD

16   DOCUMENT, DOES IT REALLY IMPLICATE THE INTEREST

17   OF THE PARTIES TODAY?

18             MS. DONNELL:  WE'LL PASS THAT ALONG,

19   YOUR HONOR, CERTAINLY KEEP THAT IN MIND AS WE ARE

20   REVIEWING DOCUMENTS MOVING FORWARD.

21             I THINK, AGAIN, AS I SAID, WE DO THINK

22   THAT THEIR CASE HAS NOT BEEN HAMPERED AND WE ARE

23   CERTAINLY FOCUSED ON CONTINUING THIS FORM OF

24   PRODUCTION RATHER THAN RE-REVIEW PAST

25   PRODUCTIONS.  BUT AGAIN, AS WE ARE MOVING FORWARD

1    WITH OUR PRODUCTIONS, WE ARE GOING TO CONTINUE TO

2    RULE OUT HOPEFULLY EACH MONTH MOVING FORWARD, WE

3    WILL ABSOLUTELY KEEP IN MIND YOUR HONOR'S

4    INSTRUCTIONS.

5              THE COURT:  ALL RIGHT.

6              MS. DONNELL:  THANK YOU.

7              THE COURT:  MR. RAGSDALE.

8              MR. RAGSDALE:  YOUR HONOR THE

9    DEFINITION OF CONFIDENTIAL INFORMATION HAS A

10   SECOND PART, AND THAT IS THEY HAVE TO BE ABLE TO

11   DEMONSTRATE THAT THEY HAVE MAINTAINED THOSE

12   DOCUMENTS AS CONFIDENTIAL OR MADE EFFORTS TO DO

13   THAT.  AND THAT SIMPLY IS NOT TRUE ABOUT THE

14   DOCUMENTS THAT WERE PROVIDED HERE, THE HISTORICAL

15   ARCHIVES, ET, CETERA WITH THE CUNNINGHAMS.  IT

16   WAS SEPTEMBER OF 2015 WHEN WE WERE FIRST INFORMED

17   THAT BLUE CROSS HAD DISCOVERED THAT THE

18   CUNNINGHAMS HAD TAKEN A BUNCH OF DOCUMENTS WITH

19   THEM HOME.  THESE WERE NOT DOCUMENTS THAT WERE

20   MAINTAINED UNDER STRICT SECRECY IF THE

21   CUNNINGHAMS COULD TAKE BOXES OF THEM WITH THEM

22   THAT STAYED WITH THEM FOR 30 YEARS BEFORE BLUE

23   CROSS EVEN DISCOVERED THAT THEY HAD GONE WITH

24   THOSE OFFERS.

25              I WOULD ALSO MAKE THIS COMMENT, JUDGE,

1    AND I THINK IT IS IMPORTANT TO NOTE THAT THE

2    NOTION THAT WE WERE REQUIRED TO GIVE THEM

3    SPECIFIC BATES STAMPS NUMBERS OF DOCUMENTS, WE

4    DID GIVE THEM THE RANGE OF THE 6,000 DOCUMENTS

5    WHICH, DEPENDING ON THEIR ARGUMENT, IS EITHER A

6    LOT OR NOT VERY MANY AT ALL.  BUT 6,000 DOCUMENTS

7    MAY NOT BE A BLANKET DESIGNATION BUT IT'S AT

8    LEAST LIKE AN AFGHAN OR COVERLET.  IT'S A LOT OF

9    DOCUMENTS TO BE THROWN INTO THAT CATEGORY WITHOUT

10   SPECIFIC JUSTIFICATION.  THAT'S WHY WE ASKED THEM

11   TO RECONSIDER THE DESIGNATION OF THOSE 6,000

12   DOCUMENTS BY BATES NUMBERS.  NOTHING WOULD BE

13   SERVED FOR US TO HAVE GONE THROUGH EACH DOCUMENT

14   AND SAID THE SAME THING 6,000 TIMES TO SAY THAT

15   THOSE NEEDED TO BE RECONSIDERED AND THAT WAS THE

16   PURPOSE BEHIND WHY WE DID THAT.

17              ANOTHER POINT I THINK IS IMPORTANT TO

18   BE NOTED, THE NOTION THAT THE PLAINTIFFS INVOLVED

19   IN THIS HAVE A WEB SITE, THAT IS CERTAINLY TRUE.

20   THE NOTION THAT WE ARE TRYING TO INFLUENCE

21   POTENTIAL JURORS IS NOT TRUE.  BUT I WOULD SAY

22   THIS.  BLUE CROSS HAS A TINY LITTLE PUBLIC

23   RELATIONS EFFORT AS WELL GOING ON.  I BELIEVE

24   THEY HAVE THEIR OWN WEB SITE AS WELL AS DAILY

25   ADVERTISING THAT GOES ON TO THOSE POTENTIAL

1    JURORS.  WE WOULDN'T SUGGEST THAT THIS COURT

2    RESTRICT THAT.

3         THE COURT:  I AM SHOCKED THERE IS AN

4    ALEXANDER SHUNNARAH WEB SITE OUT THERE SOMEWHERE.

5         MR. RAGSDALE:  I AM SHOCKED, TOO.  I

6    AM SHOCKED THERE IS AN ALEXANDER SHUNNARAH.  IT'S

7    PROBABLY A DISCUSSION FOR ANOTHER TIME.

8         BUT I WOULD SAY TO MAYBE DEMONSTRATE

9    HOW THEY HAVE GONE TOO FAR WITH THE DESIGNATION,

10   EVEN THE DOCUMENT THEY SUBMITTED, THAT THEY SAID

11   THEY WANTED THE COURT TO LOOK AT ITS ENTIRETY

12   THAT WAS SUBMITTED TO THIS COURT WITH MR. ZOCK'S

13   DECLARATION YESTERDAY.  IT CONTAINS REFERENCES TO

14   BLUE CROSS'S SUPPORT FOR THE OLYMPICS.  IT

15   CONTAINS REFERENCES TO EMPLOYEE INCENTIVE AWARDS

16   THAT WERE MADE FOR EMPLOYEES OF THE MONTH.  THOSE

17   KIND OF THINGS SHOULD NOT BE DESIGNATED AND THERE

18   IS NO REASON FOR THEM TO BE CONFIDENTIAL.

19         I DON'T THINK BLUE CROSS WAS AFRAID

20   THEIR SUPPORT OF THE OLYMPICS WOULD SOMEHOW BE

21   KNOWN TO THEIR COMPETITORS IN A WAY THAT WOULD

22   HARM THEM COMMERCIALLY.

23         SO, OUR POINT IS THOSE DESIGNATIONS

24   HAVE BEEN OVERREACHING.  AND THE NOTION THAT IT

25   IS OUR RESPONSIBILITY TO GO THROUGH THOUSANDS OF

1    PAGES OF DOCUMENTS RATHER THAN THE DEFENDANT'S

2    RESPONSIBILITY TO SHOW, IN FACT, THAT THEY MEET

3    THE DEFINITION OF A CONFIDENTIAL,

4    PROPERLY-DESIGNATED CONFIDENTIAL DOCUMENT.

5    THAT'S WHY WE ARE HERE TODAY.

6             THE LAST THING THAT I WOULD SAY IS

7    THIS.  THE 11TH CIRCUIT HAS SAID THAT THE PURPOSE

8    OF DISCOVERY IS TO HELP WITH PREPARATION FOR

9    TRIAL.  THAT'S ITS PURPOSE.  AND WE BELIEVE THAT

10   THE OVERUSE BY THE DEFENDANT, PARTICULARLY THE

11   ASSOCIATION IN THIS CASE, BUT I DON'T THINK THIS

12   IS THE LAST TIME, FRANKLY, THAT WE WILL BE IN

13   FRONT OF YOU ON THIS VERY ISSUE.  MAYBE YOUR

14   ADMONITION WILL HELP CUT DOWN ON THAT.  I HOPE

15   SO.  BUT THAT IS THAT THE OVERUSE OF THE

16   DESIGNATION FOR CONFIDENTIALITY AND OTHER

17   DESIGNATION HAMPERS OUR ABILITY TO PREPARE THIS

18   CASE FOR TRIAL.  AND IT IS NOT A QUESTION OF

19   WHETHER OR NOT THIS COMPETES WITH THE

20   STREAMLINING.  I THINK THAT'S A FALSE CHOICE.  IT

21   IS NOT THE ONLY THING.  EVERY ONE OF THESE

22   DEFENSE LAWYERS, I BELIEVE, CAN WALK AND CHEW GUM

23   AT THE SAME TIME SO THAT I DON'T THINK THIS

24   INTERFERES IN ANY WAY OR DIMINISHES THE

25   IMPORTANCE OF THE FACT THAT THESE DOCUMENTS,

1    PARTICULARLY HISTORICAL DOCUMENTS, PARTICULARLY

2    DOCUMENTS THEY SELECTIVELY PROVIDED TO THEIR

3    SELECTIVELY-CHOSEN HISTORIAN TO WRITE A VERY

4    CLEVERLY ATTENUATED HISTORY OF BLUE CROSS SHOULD

5    NOT BE THE ONLY STORY THAT'S OUT THERE.

6          TO THE EXTENT THAT THE INFORMATION HAS

7    BEEN MADE PUBLIC WHICH THEY CHOSE TO MAKE IT

8    PUBLIC, IT SHOULD NOT BE ONLY THEIR SIDE OF THE

9    STORY THAT IS PROVIDED TO THOSE PEOPLE THAT WE

10   FEEL IT'S NECESSARY TO PROVIDE IT TO.

11          SO, WE APPRECIATE THE COURT'S

12   INDULGENCE ON THIS ISSUE.  WE DON'T, AS I SAID,

13   THESE DOCUMENTS ARE IMPORTANT BUT, FRANKLY, IT IS

14   THE FUTURE USE BY THESE DEFENDANTS THAT WE ARE

15   MORE CONCERNED ABOUT.

16          THE COURT:  OTHER RESPONSE?

17          MS. DONNELL:  NOTHING, YOUR HONOR,

18   UNLESS YOUR HONOR HAS ANY FURTHER QUESTIONS.

19          THE COURT:  ANY OTHER PARTY WISH TO --

20   I KNOW THIS FOCUSES ON THE ASSOCIATION'S

21   DOCUMENTS.  BUT ANYBODY ELSE HAVE ANY THOUGHTS

22   ABOUT DESIGNATION OF CONFIDENTIALITY?

23          ALL RIGHT.  THAT'S ALL THE ITEMS THAT I

24   HAVE ON MY AGENDA.

25          MR. RAGSDALE, DO YOU HAVE ANY OTHER

1    ITEMS THAT NEED TO BE TAKEN UP?

2              MR. RAGSDALE:  NO, YOUR HONOR.

3              THE COURT:  MS. WEST, ANYTHING ELSE?

4              MS. WEST:  NO, SIR.

5              THE COURT:  I HAVE GOT A COUPLE OF

6    MOTIONS UNDER SUBMISSION THEN AND I WILL TRY TO

7    GET YOU SOMETHING OUT ON THOSE HOPEFULLY RIGHT

8    AFTER THANKSGIVING, THE WEEK AFTER THANKSGIVING

9    SOMETIME, AND TRY TO GET THOSE.  I AM ASSUMING

10   THAT WE ARE STILL FINE FOR, BASED ON THE

11   DISCUSSIONS, FOR DECEMBER 15TH.  I HAVE IT

12   SCHEDULED AT 2:00.

13             IS THE 2:00 TIME FRAME, IS THAT

14   ACCEPTABLE TO EVERYBODY?  ANYBODY WANT TO CHANGE

15   IT?  GOING ONCE, GOING TWICE.

16             MR. RAGSDALE:  WORKS FOR US.

17             MS. WEST:  IT SEEMS TO BE FINE FOR US,

18   YOUR HONOR.  THANK YOU.

19             THE COURT:  VERY GOOD.  ALL RIGHT THEN.

20   WE WILL BE ADJOURNED THEN.  I WILL SEE YOU ON

21   DECEMBER 15TH AT 2:00.

22             THANK YOU.

23                  (COURT IN RECESS.)

24

25

1    ***************************************************

2                    C E R T I F I C A T E

3    ***************************************************

4    IN RE:  MDL 2406

5    CASE #:  2:13-CV-20000-RDP

6

7         I HEREBY CERTIFY THAT THE FOREGOING

8    TRANSCRIPT IN THE ABOVE-STYLED CAUSE IS TRUE AND

9    ACCURATE.

10   _____        DECEMBER 7, 2015

11   LINDY M. FULLER, RMR, CRR, CBC        DATE

12   FEDERAL OFFICIAL COURT REPORTER

13   HUGO L. BLACK U.S. COURTHOUSE

14   1729 5TH AVENUE NORTH, SUITE 207

15   BIRMINGHAM, ALABAMA  35203

16

17

18

19

20

21

22

23

24

25