Case 2:13-cv-20000-RDP   Document 775-14   Filed 09/23/16   Page 1 of 19

FILED
 2016 Sep-23 PM 04:59
 U.S. DISTRICT COURT
 N.D. OF ALABAMA

EXHIBIT 14

**Reilly, Cecilia F**

| | |
|---|---|
| From: | Ostlund, Steven <Steven.Ostlund@insurance.alabama.gov> |
| Sent: | Friday, March 04, 2016 1:32 PM |
| To: | HHS Rate Review (HHS) (RateReview@cms.hhs.gov) |
| Cc: | 'Lorenz, Samara A. (CMS/CCIIO)'; 'Plemons, Brent R. (CMS/CCIIO)'; Cones, Kimberly C. (CMS/CCIIO); Healey, Kathleen |
| Subject: | Alabama Rate Review response |
| Attachments: | Rate Review Response 03042016.pdf |

Attached is our response to your survey. Appended to the response is a draft work plan developed in consultation with our contractor. As per our agreement, we did not respond to questions 15 and 16 because CMS performed the official reviews.

Would it be possible to have a call Tuesday morning to determine if we have been responsive to your concerns? As we have mentioned before, our legislature has only a limited number of days in session and will reach the half way point this next week with only 15 days remaining.

We are available before 12 ET, 11 CT on Tuesday. Thank you, Steve

Steven Ostlund
L and H Actuary
Alabama Department of Insurance
Rates and Forms Division
Email steven.ostlund@insurance.alabama.gov
Ph 334-240-4424

message and any attachments transmitted herewith are intended solely for the use of the addressee and should otherwise be considered confidential. If you have received this message in error, please notify the message sender immediately via reply e-mail, or by telephone at (334)240-4424. Please also be advised that any views or opinions presented in this message are solely those of the author and do not necessarily represent the views or opinions of the Alabama Department of Insurance. The recipient of this message should check it and any attachment for the presence of viruses. The Alabama Department of Insurance accepts no liability for damage caused by any virus transmitted by this electronic message.


EXHIBIT PX-Ostlund 004



# U.S. Department of Health and Human Services
# Effective Rate Review Survey

**State Authority to Review Rates and State Definitions**

| | Questions | Answers & Supporting Materials (Links, Citations, etc.) |
|---|---|---|
| 1) | Cite the specific authority that permits the State to collect and review issuer's data and documentation in connection with rate increases in order to comply with the requirements of 45 CFR 154.301(a)(1).<br><br>Include links, provide relevant excerpts, and/or provide supporting documentation at RateReview@cms.hhs.gov. | Here is the Bulletin regarding the ACA enforcement:<br>http://www.aldoi.gov/PDF/Legal/2010-08-PatientProtectAct.pdf<br>Here is the section of our BCBS law requiring rate:<br>review: http://alisondb.legislature.state.al.us/alison/codeofalabama/1975/10A-20-6.10.htm<br>Here is the section of our HMO law requiring rate:<br>review: http://alisondb.legislature.state.al.us/alison/CodeOfAlabama/1975/27-21A-7.htm<br>Here is our examination authority:<br>http://alisondb.legislature.state.al.us/alison/codeofalabama/1975/27-2-21.htm<br>Here is our general filing regulation: http://www.aldoi.gov/PDF/Legal/024r-2003.pdf |

| | Questions | Answers & Supporting Materials (Links, Citations, etc.) |
|---|---|---|
| 2) | Explain whether or not the State adopts the federal definitions of individual and small group markets, as defined in 45 CFR 154.102, which specifies that:<br>• coverage not sold through an association is subject to rate review as individual or small group market coverage; and<br>• the definition of the individual and small group markets has the meaning given in section 2791(e)(1)(A) and 2791(e)(5) of the PHS Act when State law does not define the terms.<br><br>If not, explain how the State's definition of the individual and small group markets differ from the federal definition of these markets. | Small group employer is defined in Ala. Code § 27-52-20. We will continue to use federal definitions of "individual" and "small group" as well as continue to define "bona fide association" as individual insurance for purposes for the ACA and major medical insurance products. |

**Review of Unreasonable Rate Increases for Single Risk Pool Submissions**

| | Questions | Answers & Supporting Materials (Links, Citations, etc.) |
|---|---|---|
| 3) | Explain whether or not the State reviews single risk pool submissions that meet or exceed the threshold rate increases of 10%. | Yes. We review what is filed with us and review the submission for reasonableness of the rate regardless of the increase. We do not limit our review to those plans/products where the increase meets or exceeds 10 percent. |

| | | |
|---|---|---|
| | If so, indicate how the State complies with the requirements of 45 CFR 154.210(b)(2) for single risk pool submissions that are subject to review.<br><br>Include links, provide relevant excerpts, and/or provide supporting documentation at RateReview@cms.hhs.gov. | As far as the single risk pool submissions, we will work with the CMS rate review team to have the operational procedures in place. Our rate review process includes evaluation of the criteria for reasonableness as outlined in 45 CFR 154.210(b)(2) for the individual and small group markets, excluding grandfathered plans. We evaluate the index rate and any adjustments to the index rate for compliance with the federal law as well as any Alabama-specific requirements. A sample workplan for our rate review process is attached. |

| | Questions | Answers & Supporting Materials (Links, Citations, etc.) |
|---|---|---|
| 4) | Explain whether or not the State incorporates the following into its review process, when reviewing the rate increases that meet or exceed the threshold for review:<br>• Part I of the Rate Filing Justification (Unified Rate Review Template (URRT)),<br>• Part II of the Rate Filing Justification (Written Description Justifying the Rate Increase), and<br>• Part III of the Rate Filing Justification (Actuarial Memorandum)<br><br>If so, explain how the State uses Parts I, II, and III.<br><br>OR<br><br>If not, provide a detailed explanation and examples of what the State does collect that is at least equivalent to the aforementioned documents for review.<br><br>Include links, provide relevant excerpts, and/or provide supporting documentation at RateReview@cms.hhs.gov. | We have reviewed all three parts of the rate filing. When further clarification is necessary, we have requested it from the issuer. Details regarding how each of these items are used, and the components that are reviewed for reasonableness, is detailed in our sample workplan attached. |

**Review of Unreasonable Rate Increases for Non-Grandfathered Plans**

| Questions | Answers & Supporting Materials (Links, Citations, etc.) |
|---|---|
| | |

| | | |
|---|---|---|
| 5) | Explain whether or not the State reviews threshold rate increases of 10% or more for non-grandfathered plans that were purchased prior to 2014 and continue under the transitional policy (if applicable).<br><br>If so, indicate whether the State complies with the requirements for transitional plan submissions that are subject to review. | Yes. We review what is filed with us and review the submission for reasonableness of the rate regardless of the increase. We do not limit our review to those plans/products where the increase is 10% or more. |

| | Questions | Answers & Supporting Materials (Links, Citations, etc.) |
|---|---|---|
| 6) | Explain whether or not the State incorporates the following parts of the Preliminary Justification into its review process, when reviewing the rate increases for transitional plans.<br>• Part I (Rate Increase Summary Form),<br>• Part II (Written Explanation of the Rate Increase), and<br>• Part III (Rate Filing Documentation)<br><br>If so, explain how the State uses the Preliminary Justification Parts I, II, and III (or other equivalent documents) when issuers propose rate increases subject to review for transitional plans.<br><br>OR<br><br>If not, provide a detailed explanation and examples of what the State does collect that is at least equivalent to the aforementioned documents for review.<br><br>Include links, provide relevant excerpts, and/or provide supporting documentation at RateReview@cms.hhs.gov. | We do not differentiate between new plans or transitional plans. We have reviewed all three parts of the rate filing for the past three years. When further clarification is necessary, we have requested it from the issuer. |

**Review of Authority to Require Changes**

| Questions | Answers & Supporting Materials (Links, Citations, etc.) |
|---|---|
| | |

| | | | |
|---|---|---|---|
| 7) | | Provide links, citations, or bulletins to describe the State authority as it pertains to modification of an issuer's rates. | |
| | 7a) | Explain whether or not the State has the authority to require or enforce rates that differ from what was originally submitted. | Here is the Bulletin regarding the ACA enforcement: http://www.aldoi.gov/PDF/Legal/2010-08-PatientProtectAct.pdf<br>Here is the section of our BCBS law requiring rate: review: http://alisondb.legislature.state.al.us/alison/codeofalabama/1975/10A-20-6.10.htm<br>Here is the section of our HMO law requiring rate review: http://alisondb.legislature.state.al.us/alison/CodeOfAlabama/1975/27-21A-7.htm<br>Here is our examination authority: http://alisondb.legislature.state.al.us/alison/codeofalabama/1975/27-2-21.htm<br>Here is our general filing regulation: http://www.aldoi.gov/PDF/Legal/024r-2003.pdf |
| | 7b) | Provide a detailed explanation as to the State's authority to require a revision in the submission to come into compliance with State or federal rating or risk pool rules. | The Commissioner has the authority to enter into contracts and agreements with the federal government under Ala. Code § 27-2-7(5).<br>Additionally, here is our examination authority: http://alisondb.legislature.state.al.us/alison/codeofalabama/1975/27-2-21.htm<br>Here is the Bulletin regarding the ACA enforcement: http://www.aldoi.gov/PDF/Legal/2010-08-PatientProtectAct.pdf |
| | 7c) | Provide a detailed explanation as to:<br>• The State's process to require or request revision or resubmission under either of the above circumstances, and<br>• How the State ensures that CMS also receives any revisions or resubmissions where dual submission to CMS and the State is required. | We use SERFF and will work with HIOS. We will develop operational guidelines for rate filing in consultation with CMS' rate review team and our contractor. |

**Review of All Rate Increases**

| | Questions | Answers & Supporting Materials (Links, Citations, etc.) |
|---|---|---|
| 8) | Describe the State's specific actuarial standards, methods and procedures (including, but not limited to, how the State tests issuer actuarial assumptions, data, future financial projections, and past assumptions or data for accuracy). | These standards will be documented in consultation with CMS and our contractor to establish a more formalized process to comply with federal requirements. This will include the development of operational guidelines. Some of the ways we are currently evaluating assumptions, data, and projections are described in our attached sample workplan. For example, how historical data used was adjusted to reflect expected changes in the population or environment, and how trend assumptions were developed to take into |

| | |
|---|---|
| If the State has a manual, standard operating procedures, or other supporting documentation that it uses in its review, provide such supporting documentation at RateReview@cms.hhs.gov. | account items such as demographic adjustments, morbidity adjustments, medical cost trend adjustments, and benefit changes. |

**Review of All Rate Increases**

<table>
<tr><th colspan="3">Questions</th><th colspan="2">Answers & Supporting Materials (Links, Citations, etc.)</th></tr>
<tr><td rowspan="2" colspan="3">9) Explain whether or not the State meets the following criteria for the review of rates for both the small group market and the individual market.</td><td colspan="2">Markets</td><td rowspan="2">If not, please explain</td></tr>
<tr><td>Individual Y/N?</td><td>Small Group Y/N?</td></tr>
<tr><td>9a)</td><td colspan="4">Explain whether or not the State's rate review process includes an examination of each of the following.</td></tr>
<tr><td></td><td>9ai)</td><td>The reasonableness of the assumptions used by the health insurance issuer to develop the proposed rate increase and the validity of the historical data underlying the assumptions.</td><td>Yes</td><td>Yes</td><td></td></tr>
<tr><td></td><td>9aii)</td><td>The health insurance issuer's data related to past projections and actual experience.</td><td>Yes</td><td>Yes</td><td></td></tr>
<tr><td></td><td>9aiii)</td><td>The reasonableness of assumptions used by the health insurance issuer to estimate the rate impact of the reinsurance and risk adjustment programs under sections 1341 and 1343 of the Affordable Care Act.</td><td>Yes</td><td>Yes</td><td></td></tr>
</table>

| | | | | | |
|---|---|---|---|---|---|
| | 9aiv) | The health insurance issuer's data related to implementation and ongoing utilization of a market-wide single risk pool, essential health benefits, actuarial values and other market reform rules as required by the Affordable Care Act. | Yes | Yes | |
| 9b) | colspan | Explain whether or not the examination takes into consideration the following factors to the extent applicable to the filing under review. | | | |
| | 9bi) | The impact of medical trend changes by major service categories. | Yes | Yes | |
| | 9bii) | The impact of utilization changes by major service categories. | Yes | Yes | |
| | 9biii) | The impact of cost-sharing changes by major service categories, including actuarial values. | Yes | Yes | |
| | 9biv) | The impact of benefit changes, including essential health benefits and non-essential health benefits. | Yes | Yes | |
| | 9bv) | The impact of changes in enrollee risk profile and pricing, including rating limitations for age and tobacco use under section 2701 of the Public Health Service Act. | Yes | Yes | |
| | 9bvi) | The impact of any overestimate or underestimate of medical trend for prior year periods related to the rate increase. | Yes | Yes | |
| | 9bvii) | The impact of changes in reserve needs. | Yes | Yes | |

| | | | | |
|---|---|---|---|---|
| | 9bviii) | The impact of changes in administrative costs related to programs that improve health care quality. | Yes | Yes | |
| | 9bix) | The impact of changes in other administrative costs. | Yes | Yes | |
| | 9bx) | The impact of changes in applicable taxes, licensing or regulatory fees. | Yes | Yes | |
| | 9bxi) | Medical loss ratio. | Yes | Yes | |
| | 9bxii) | The health insurance issuer's capital and surplus. | Yes | Yes | |
| | 9bxiii) | The impacts of geographic factors and variations. | Yes | Yes | |
| | 9bxiv) | The impact of changes within a single risk pool to all products or plans within the risk pool. | Yes | Yes | |
| | 9bxv) | The impact of reinsurance and risk adjustment payments and charges under sections 1341 and 1343 of the Affordable Care Act. | Yes | Yes | |

| | Questions | Answers & Supporting Materials (Links, Citations, etc.) |
|---|---|---|
| 10) | Explain how the State ensures issuer compliance with federal requirements regarding the elements listed during the State review process at 45 CFR 154.301(a)(3)(iii) and (iv). | |

| | | | |
|---|---|---|---|
| | 10a) | How the State reviews rate submissions for compliance with the single risk pool rule under §156.80 and the various federal laws and regulations that define how plans are to be developed, rated and priced (including but not limited to essential health benefits, actuarial values, risk adjustment, reinsurance, medical loss ratios and other similar laws and regulations). | We will document operational procedures and guidelines to implement this area of review in consultation with CMS and our contractor. Our rate review process considers the requirements of §156.80, including the development of the index rate, whether adjustments to that rate are permitted and with what frequency. It also considers other requirements of federal law such as §154.301, state rating requirements, and the requirements of actuarial standards of practice. A sample workplan documenting our typical review process is attached. |
| | 10b) | How the State reviews for and enforces the annual plan year, index rate, allowable premium adjustments, and other requirements for the <u>individual market</u>. | We will document operational procedures and guidelines to implement this area of review in consultation with CMS and our contractor. |
| | 10c) | How the State reviews for and enforces the annual index rate, allowable quarterly index rate, allowable premium adjustments, and other requirements of the <u>small group market.</u> | We will document operational procedures and guidelines to implement this area of review in consultation with CMS and our contractor. |
| | 10d) | Whether or not the State allows for quarterly or semi-annual index rate changes in the <u>small group market</u>.<br><br>If so, specify whether rate changes are accepted on a quarterly or semi-annual basis. | We have been allowing quarterly rate changes in the small group market. |

| | | |
|---|---|---|
| 10e)<br><br>**Applies only to States that have a Merged Market (as federally defined):** | How the State reviews and ensures that issuers selling to small employers are following the same rules as the individual portion of the market for: open enrollment, annual index rate setting and changes, annual plan years (i.e., if a plan is purchased by a small employer after January 1 or each year, it will renew effective the next January 1, in the same way that individual market plans are required to renew), and other requirements for the <u>merged markets</u> under federal rules. | N/A |

| | Questions | Answers & Supporting Materials (Links, Citations, etc.) |
|---|---|---|
| 11) | Explain how the State ensures issuers comply with 45 CFR 154.215(c), which requests issuers to submit the following part of the Rate Filing Justification to the State and to CMS:<br>• Part I (Unified Rate Review Template (URRT)),<br>• Part II (Written Description Justifying the Rate Increase) (when applicable), and<br>• Part III (Actuarial Memorandum)<br><br>Explain if, and how, the State works with issuers to meet 45 CFR 154.220(a), which requests issuers to submit the Rate Filing Justification to CMS on the date the issuer submits the proposed rate increase to the State. | We utilize SERFF for rate filings. We will work with CMS and our consultant to develop the steps we need to implement for HIOS transfer of information. |

| | Questions | Answers & Supporting Materials (Links, Citations, etc.) |
|---|---|---|
| 12) | Provide the citation(s) regarding the timeframes the State has in statute, regulation or official written guidance for the review of rate submissions.<br><br>Include links, provide relevant excerpts, and/or provide supporting documentation through at RateReview@cms.hhs.gov. | Initial rate review is to be completed within 30 days. If the filing is incomplete and requires supplementation or answers to questions from the department the 30 days does not apply.<br>HMOs have 30 days per Ala. Code§27-21A-7(c)<br>Health care service plans have 30 days per Ala. Code 10A-20A-6.10 |

| | | | Average length of time to conduct reviews of rate submissions (in days)* | Shortest review conducted during the past two years (in days)* | Longest review conducted over the past two years (in days)* |
|---|---|---|---|---|---|
| 12a) | | Provide the following:<br>• The average number of days* it takes the State to conduct reviews of rate submissions and<br>• The factors that impact the length of the review for the following:<br>   o Shortest review conducted during the past two years (in days)*<br>   o Longest review conducted over the past two years (in days)*<br><br>*Estimates for the number of days to conduct a review are acceptable when actual numbers are not readily available. | As we have not been an effective rate review state in the past we do not have a history to show how we would do this. We have a contract with a firm that has performed rate reviews for other states that are effective rate review states. | As we have not been an effective rate review state in the past we do not have a history to show how we would do this. We have a contract with a firm that has performed rate reviews for other states that are effective rate review states. | As we have not been an effective rate review state in the past we do not have a history to show how we would do this. We have a contract with a firm that has performed rate reviews for other states that are effective rate review states. |

| | | Questions | Answers & Supporting Materials (Links, Citations, etc.) |
|---|---|---|---|
| 13) | | Explain how the State complies with the requirement of 45 C.F.R. §154.301(b) to post rate submissions on the State website and to accept public comments. | |
| | 13a) | Explain whether or not the State makes the submission public on a State-supported website when a new rate submission is received by the State. | We do not publicize new rate submissions. |
| | 13ai) | If so, explain when the submission is made public (e.g., immediately, within a certain number of days after receipt, after a determination is made, when a rate increase subject to review is included in the submission, etc.). | The rate is made public through the Department website after a determination is made. |
| | 13b) | Explain whether or not the State adheres to 45 CFR § 154.301(b)(3), which requires States to ensure that the information released to the public is made available at a uniform time for all proposed and final rate increases for single risk | We will adopt the requirements issued by CMS in the annual NBPP or other guidance. |

| | | | |
|---|---|---|---|
| | | pool compliant coverage, as applicable, in the relevant market segment (including QHPs and non-QHPs) and without regard to whether coverage is offered through or outside of an Exchange. | |
| | 13c) | Explain whether or not the State has a mechanism for receiving public comments on submitted rates either prior to determination or after determination is made. And, if so, specify which (i.e., prior, after, or both). | We will provide a link to the federal website. |
| | | 13ci) Explain how the State allows consumers to comment (e.g., by telephone, mail, email, webmail, public hearings, etc.). | We are still considering how best to do this. At the moment, we do not have a mechanism for public comment on our website. As other states have done, we may utilize the CMS website for the public to comment and work in tandem with CMS in responding to these comments. |

| | Questions | Answers & Supporting Materials (Links, Citations, etc.) |
|---|---|---|
| 14) | Explain whether or not the State has any State-specific laws or regulations that require issuers to take additional steps, in addition to 45 CFR 5.65, to maintain or limit confidentiality of Actuarial Memorandums under State law.<br><br>Include links, provide relevant excerpts, and/or provide supporting documentation at RateReview@cms.hhs.gov. | We do have a trade secrets law in Ala. Code §8-27-2, however, after review of 45 CFR 5.65 we do not see any issues in conflict with the federal provisions. |

**Total Rate Submissions Received and Reviewed by the State in the Previous Calendar Year**

| | Questions | Answers & Supporting Materials (Links, Citations, etc.) | | | | |
|---|---|---|---|---|---|---|
| 15) | For the previous calendar year, provide the following information for each Market: | Markets | | | | |
| | | Single Risk Pool | | | Non-Grandfathered Transitional | |
| | | Individual | Small Group | Merged (as federally defined) | Individual | Small Group |
| | 15a) Number of single risk pool submissions that were received and reviewed for each Single Risk Pool | | | | Please only respond for Single Risk Pool | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | Market (Individual, Small Group, and Merged (as federally defined)) | | | | | ■ |
| | 15b) | Number of non-grandfathered plan submissions that were received and reviewed for plans purchased prior to January 1, 2014 and that continued under the transitional policy (if applicable) for each Market (Individual and Small Group) | Please only respond for Non-Grandfathered Transitional | | | | |
| | 15c) | For each Market, provide the following information: | | | | | |
| | | 15ci) Average rate change (percent compared to previous year) | | | | | |
| | | 15cii) Number of submissions with overall <u>increases</u> | | | | | |
| | | 15ciii) Number of submissions with overall <u>decreases</u> | | | | | |

**State Actions for Rate Submissions Received and Reviewed in the Previous Calendar Year for both Single Risk Pool and Transitional Plans**

| | Questions | | Answers & Supporting Materials (Links, Citations, etc.) | | | | | |
|---|---|---|---|---|---|---|---|---|
| 16) | For the previous calendar year, provide the number of submissions from each Market that were: | | Submissions | | | | | |
| | | | Single Risk Pool | | | Non-Grandfathered Transitional | | |
| | | | Individual | Small Group | Merged (as federally defined) | Individual | Small Group | Merged (as federally defined) |
| | 16a) | Approved/Accepted as submitted <u>without</u> an unreasonable determination or modification. | | | | | | |
| | 16b) | Modified from the original submission <u>without</u> an unreasonable determination. | | | | | | |
| | 16c) | Modified from the original submission <u>with</u> an unreasonable determination. | | | | | | |

|  |  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|---|
| **16d)** | Rejected or disapproved (requiring a complete resubmission). |  |  |  |  |  |  |
|  | **16di)** | Number of issuers that did not resubmit after being rejected or disapproved. |  |  |  |  |  |
|  | **16dii)** | Number of issuers that did a market withdrawal. |  |  |  |  |  |
| **16e)** | Required to be modified due to non-compliance with State or federal rating rules. |  |  |  |  |  |  |
|  | **16ei)** | Number modified due to State rules violations. |  |  |  |  |  |
|  | **16eii)** | Number modified due to federal rules violations (if both, just count once as federal). |  |  |  |  |  |

**General Health Market in State**

| | Questions | Answers & Supporting Materials (Links, Citations, etc.) | | | |
|---|---|---|---|---|---|
| 17) | Provide the number of issuers that were in the State's Market at each point of the previous calendar year. | **Number of Issuers** | | | |
| | | Beginning of Year Total | New Entrants during Year | Withdrawals during Year | End of Year Total |
| | | 4 | 0 | 0 | 4 |

**Student Health Plans**

| | Questions | Answers & Supporting Materials (Links, Citations, etc.) |
|---|---|---|
| 18) | Explain whether or not the State reviews rate filings for student health plans.<br><br>Include links, provide relevant excerpts, and/or provide supporting documentation at RateReview@cms.hhs.gov. | Yes, we have treated student health plans the same as other plan filings. |

Below is a high level summary of the steps performed for each rate review, as well as approximate timing. Reviews can typically be completed in three weeks or less, assuming information is provided in good order and responses to questions are provided in a timely manner. Additional details regarding each step is below. Red diamonds in the flowchart represent key output from the reviewing actuary during the process while green circles represent key points of interaction with the filing insurer and reviewers of the work product.

| Project Phase/Step | Prep | Week 1 | Week 2 | Week 3 | |
|---|---|---|---|---|---|
| Planning | | ◾Final plan | | | |
| Data Review/Completeness Determination | Receive data | | | | |
|    Review data provided for completeness | ◾ | | | | |
|    Completeness Determination | | | ◆ Completeness determination | | |
| Actuarial Analysis | | | | | |
|    Review submitted data | | | ◾ | | |
|    Analyze compliance with regulations | | | ◾ | | |
|    Evaluate actuarial soundness of rates | | | | ◾ | |
|    Raise any issues/concerns with filer | | | | ◾ | |
|    Filer investigation and response | | | | ● Filer response | |
| Reporting | | | | | |
|    Draft opinion | | | | ◾ Draft opinion | |
|    Review and approval | | | | | ◾ Review & approval |
|    Finalize opinion | | | | | ◆ Final opinion |
| Project Management | | ◾◾◾◾◾◾◾◾◾◾ | | | |

**Step I – Planning**

We recognize that planning, especially related to complex and time-sensitive health rate reviews, is critical and we are sensitive to the need to effectively manage the planning process to ensure the work is conducted in a timely and cost efficient manner. During the planning step the Lead Reviewer collaborates with other key stakeholders to discuss and confirm the planned approach, and discuss any special considerations for the specific filing.

**Step II – Data Review/Completeness Determination**

In this step, we review the data uploaded by the insurer to SERFF for completeness. To evaluate completeness, we compare the uploaded information to the filing requirements per the rating checklist, also considering state rating laws as well as the requirements of the federal regulations under the Affordable Care Act (CFR 154), as applicable. This review is performed at a high level, however it involves review of the documentation provided relative to the requirements and a cursory review of the documents themselves, to identify any potential issues with the completeness of their contents. For example, we review the actuarial memorandum provided in support of the Unified Rate Review Template (URRT) to evaluate whether all assumptions used are justified with supporting data or other

relevant support, considering the federal requirements as well as applicable actuarial standards of practice.

Upon completion of this review, we develop a written assessment of completeness, either confirming that the data is complete or identifying any gaps or issues that must be remedied by the insurer. This review and written assessment is typically completed within one week of receipt of the data.

**Step III – Actuarial Analysis**

We review in detail the information submitted, including items such as the following:

- Rating checklist
- Unified Rate Review Template (URRT)
- Actuarial certification and memorandum
- Manual rate pages
- Rate filing justification
- Network information

We consider whether the ultimate rates to be charged are consistent with actuarial experience data as applicable, appropriately consider the changes occurring in the marketplace, and are actuarially sound. Considerations in this evaluation include, depending on the type of filing, the following:

- Overall consistency with the requirements of the ACA, including minimum loss ratio requirements, application of the "metal" tiers using the actuarial value calculator (AV calculator) or alternative methods, development of the index rate, market adjustments, issuer adjustments, and calibration factors

- Assessment of whether premiums and claims resemble the Supplemental Health Care Exhibit for the selected market

- Justification of rate increases, including specifics regarding the drivers of the increase and evidence of the appropriateness of the increase in light of the drivers

- Appropriateness of experience data used, including any adjustments needed and/or made related to differences in the experience data and the expected future claims due to enrollment changes and transitional provisions of the ACA

- Appropriateness of any other adjustments to the experience data

- Accuracy and completeness of historical data used

- Evaluation of methodology for developing ultimate incurred claims, including any special considerations regarding changes to claim payment and premium patterns introduced by the ACA and associated transitional period

- Methodology used to assign claims to the applicable URRT benefit categories

- Use of trend to project experience benefits to the rating period, including demographic adjustments, morbidity adjustments, medical cost trend adjustments, and benefit changes

- Assessment of the credibility of the data and credibility methods used

- Effect of the reinsurance and risk adjustment mechanisms on claims costs, including consideration of statewide experience for risk adjustment and nationwide experience for reinsurance, which impact the overall level of payment/reimbursement expected

- Expenses and profit charges, including documentation of the expense allocation methodology as applicable

- Details of the development of the index rate and market-adjusted index rate

- Details of the development of the plan adjusted index rate, including actuarial and cost sharing adjustments, network, delivery system, and utilization management adjustments, adjustments for benefits other than essential health benefits, adjustments for distribution and administrative costs and adjustments for catastrophic plan eligibility categories

- Consideration of state regulatory requirements, including age, tobacco, family tier, per member, and geographic rating requirements as well as composite rate requirements

- Appropriateness of consumer level adjustments

- Lifetime loss ratio, and approach to incorporating reserves in the analysis

- Consideration of moderately adverse experience in the analysis

- Compliance with applicable Actuarial Standards of Practice

Ongoing communication is an important part of the process. We conduct regular discussions among key stakeholders and to the extent clarification is needed with the company, make requests for additional information as needed. The timing of this work is dependent on the responsiveness of the filer.

**Step 4 - Reporting**

Our work product is summarized in a formal opinion, which includes a record of work performed, the conclusion statement of the reviewing actuary, as well as any findings.

The draft opinion is issued upon completion of the review, typically within 2 weeks after the completeness determination.

The work carried out is under the active direction and supervision of a Fellow of the Society of Actuaries and the report is signed by the lead reviewing actuary.

Case 2:13-cv-20000-RDP    Document 775-14    Filed 09/23/16    Page 19 of 19