Case 2:13-cv-20000-RDP    Document 775-16    Filed 09/23/16    Page 1 of 13

FILED
2016 Sep-23 PM 04:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

**EXHIBIT 16**

Final

Report on the

Medical Loss Ratio Examination

of

Blue Cross and Blue Shield of Alabama
(Birmingham, Alabama)

for the

2013 MLR Reporting Year



DEPARTMENT OF HEALTH & HUMAN SERVICES
Centers for Medicare & Medicaid Services
Center for Consumer Information and Insurance Oversight
200 Independence Avenue SW
Washington, DC 20201



CENTERS FOR MEDICARE & MEDICAID SERVICES
CENTER FOR CONSUMER INFORMATION
& INSURANCE OVERSIGHT

**OVERSIGHT GROUP**

May 3, 2016

In accordance with Title 45 of the Code of Federal Regulations (CFR), section 158.402, the Center for Consumer Information and Insurance Oversight (CCIIO) has completed an examination of the Medical Loss Ratio (MLR) Annual Reporting Form submitted by Blue Cross and Blue Shield of Alabama (the Company) for the 2013 reporting year, including 2012 and 2011 data reported on that form. Following an exit conference, Blue Cross and Blue Shield of Alabama responded to each finding and recommendation. This final report, which will be made publicly available, incorporates those responses and CCIIO's evaluation of them.

*(signed)* Christina N Whitefield

Christina A. Whitefield, Acting Director
Medical Loss Ratio Division
Office of Oversight
Center for Consumer Information and Insurance Oversight
Centers for Medicare and Medicaid Services
US Department of Health and Human Services

## Table of Contents

I. Executive Summary ........................................................................................... 1
II. Scope of Examination ....................................................................................... 1
III. Summary of Key Findings ................................................................................ 2
IV. Company Overview .......................................................................................... 2
    A. Description, Territory, and Plan of Operation ............................................ 3
    B. Management ................................................................................................ 3
    C. Ownership ................................................................................................... 5
    D. Agreements ................................................................................................. 5
    E. Reinsurance ................................................................................................. 5
V. Accounts and Records ....................................................................................... 5
VI. Examination Results ......................................................................................... 6
    A. MLR Data .................................................................................................... 6
    B. Credibility-Adjusted MLR and Rebate Amount ......................................... 8
    C. Rebate Disbursement and Notice ................................................................ 8
    D. Compliance with Previous Recommendations ........................................... 8
VII. Impact of Findings ............................................................................................ 9
VIII. Subsequent Events ............................................................................................ 9
IX. Conclusion, Summary of Recommendations, and Company Responses ..... 9-10

## I. Executive Summary

The Center for Consumer Information and Insurance Oversight (CCIIO) has performed an examination of the 2013 Medical Loss Ratio (MLR) Annual Reporting Form for Blue Cross and Blue Shield of Alabama (the Company) to assess the Company's compliance with the requirements of 45 CFR Part 158. We determined that the Company's 2013 MLR Annual Reporting Form contains some elements that are not fully compliant with the requirements of 45 CFR Part 158. Due to the lack of accurate documentation supporting group size and market classification determinations, we cannot conclusively assess the impact of this examination finding on the Company's MLRs or whether there would be any impact on its rebate liability in the small group and large group markets. Nothing came to our attention that caused us to believe that the Company's individual market MLR or rebate liability required adjustment. We recommend that the Company implement corrective actions to comply with various sections of 45 CFR Part 158, including obtaining accurate information to determine group size and market classification of policies, as well as properly determining the market classification of policies.

## II. Scope of Examination

CCIIO examined the Company's 2013 MLR Annual Reporting Form to determine compliance with 45 CFR Part 158. 45 CFR Part 158 implements section 2718 of the Public Health Service Act (PHS Act). Section 2718 of the PHS Act, as added by the Affordable Care Act, generally requires health insurance companies to submit to the Secretary an annual report on their MLRs. The MLR is the proportion of premium revenue expended by a company on clinical services and activities that improve health care quality in a given state and market. Section 2718 also requires a company to provide rebates to consumers if it does not meet the MLR standard (generally 80% in the individual and small group markets and 85% in the large group market).

This is the first examination of the Company's MLR Annual Reporting Form performed by CCIIO. The examination covered the reporting period of January 1, 2011 through December 31, 2013, including 2011 and 2012 experience and claims run-out through March 31, 2014. We conducted the examination in accordance with the CCIIO Medical Loss Ratio Examination Handbook (the Handbook). The Handbook sets forth the guidelines and procedures for planning and performing an examination to evaluate the validity and accuracy of the data elements and calculated amounts reported on the MLR Annual Reporting Form, and the accuracy and timeliness of any rebate payments. The examination included assessing the principles used and significant estimates made by the Company, evaluating the reasonableness of expense allocations, and determining compliance with relevant statutory accounting standards, MLR regulations and guidance, and the MLR Annual Reporting Form Filing Instructions.

The Company's response to each finding appears after the finding in the Conclusion and Summary of Recommendations section of this Report. The Company's corrective action was not reviewed for proof of implementation or subjected to any procedures applied during the examination. CCIIO's response is based solely on a review of the Company's response. CCIIO reserves the right to review the actual implementation of the Company's corrective action for each finding and

proposed action plan in future MLR Annual Reporting Forms, examinations or as otherwise may be appropriate.

### III. Summary of Key Findings

| Page | Summary of Key Findings |
|---|---|
| 7 | **Failure to employ standards consistent with the requirements of 45 158.220(a) in assigning correct market classifications to its policies** – The Company did not correctly obtain the number of employees of each group policyholder at the time of initial application or policy renewal and therefore could not correctly determine each group's size and market classification. Incorrect market classification resulted in misallocation of the Company's earned premium, incurred claim and life-year experience between the small and large group markets of eight group policies in the sample tested and which were in effect during 2011, 2012 and 2013. |

**This finding did not result in any change to the Company's reported MLR for the individual, small group or large group markets for the 2013 reporting year, but due to the lack of accurate documentation supporting group size and market classification determinations, we cannot, at this time, conclusively assess whether there were errors that impacted the Company's MLR in the small group and large group markets.** The three-year adjusted, aggregated numerator and denominator, along with resulting credibility-adjusted MLR for 2013, are shown in the following table.

**Recalculated Individual, Small Group and Large Group Market MLRs for the 2013 Reporting Year**

|  | Individual Market | | | Small Group Market | | |
|---|---|---|---|---|---|---|
|  | Numerator | Denominator | MLR | Numerator | Denominator | MLR |
| As Filed | $942,418,447 | $974,784,779 | 96.7% | $3,054,060,444 | $3,418,026,877 | 89.4% |
| As Recalculated | $942,418,447 | $974,784,779 | 96.7% | $3,052,405,915 | $3,415,575,462 | 89.4% |
| Difference | $0 | $0 | 0.0% | ($1,654,529) | ($2,451,415) | 0.0% |

|  | Large Group Market | | |
|---|---|---|---|
|  | Numerator | Denominator | MLR |
| As Filed | $5,014,557,621 | $5,405,598,818 | 92.8% |
| As Recalculated | $5,016,212,150 | $5,408,050,233 | 92.8% |
| Difference | $1,654,529 | $2,451,415 | 0.0% |

The recalculated amounts did not impact the Company's rebate liability for the 2013 reporting year as the recalculated MLRs for the individual and small group markets continue to be above the

MLR standard of 80% and the recalculated MLR for the large group market continues to be above the MLR standard of 85%.

## IV. Company Overview

### A. Description, Territory, and Plan of Operation

The Company is a non-stock not-for-profit corporation that sells hospital and medical health insurance in the individual and group markets in the state of Alabama. They also contract with self-funded group plans to provide health benefits, including claims processing, actuarial and reporting services, network access, medical cost management and other administrative services. Additionally, the Company sells a range of other products, such as dental, vision, prescription drugs, and mental health. The Company is an independent licensee of the Blue Cross Blue Shield Association.

During the 2011, 2012 and 2013 MLR reporting years, the Company operated in the individual, small group and large group markets that were subject to the MLR reporting requirements under 45 CFR Part 158. As of December 31, 2013, the Company reported a total of 882,284 covered lives and $3,359,753,316 in direct earned premium from policies subject to the MLR reporting and rebate requirements and a total of 3,603,423 covered lives and $4,139,330,425 in direct earned premium from all health lines of business. Lines of business not subject to the MLR regulations at 45 CFR Part 158 include Medicare Advantage, Medicare Part D, dental policies and mental health products.

To the best of our knowledge, the Company is not currently under either financial or market conduct sanctions by a state regulatory agency in the state in which it does business.

### B. Management

The corporate officers and board of directors of the Company as of December 31, 2013 were:

**Officers**

| Name | Title |
|---|---|
| Terry D. Kellogg | President and CEO |
| Timothy L. Kirkpatrick | Executive Vice President |
| Dick D. Briggs III, MD | Senior Vice President |
| Jeffrey A. Ingrum | Senior Vice President |
| Brian S. McGlaun | Senior Vice President |
| Vickie L. Saxon | Senior Vice President |
| Timothy T. Sexton | Senior Vice President |
| Cynthia M. Vice | Senior Vice President, Chief Financial Officer and Corporate Treasurer |
| Timothy Vines | Senior Vice President |
| Noel W. Carden | Vice President and Chief Actuary |

| | |
|---|---|
| Michael L. Patterson | Vice President, General Counsel and Corporate Secretary |
| Tony H. Carter | Vice President |
| Joseph E. Dunsmore | Vice President |
| Brian D. Edwards | Vice President and Controller |
| Rebekah Elgin-Council | Vice President |
| Joseph J. Hall | Vice President |
| Edward O. Harris | Vice President |
| James S. Hill | Vice President |
| Eugene E. Linton, Jr. | Vice President |
| Carol D. Mackin | Vice President |
| Douglas E. McIntyre | Vice President |
| Ashley S. Mosko | Vice President |
| Robert R. Orr, Jr. | Vice President |
| J. Robin Stone | Vice President |
| Brandon S. Ward | Vice President |

**Directors**

| **Name** | **Name** |
|---|---|
| Marvell Bivins Jr. | Raymond J. Browne, MD |
| Clark P. Christianson | Barry S. Cochran |
| Edward F. Crowell | Phillip C. Dotts |
| Reid B. Dove | Howard J. Falgout, MD |
| Richard M. Freeman, MD | James D. Gifford, MD |
| Carol F. Gordy | Leonidas K. Granger |
| George S. Hammer | Walter Howlett Jr. |
| Kenneth E. Hubbard | Fred D. Hunker M.D. |
| Donald L. Large Jr. | Susan W. Matlock |
| Manly E. Moor Jr. | Paul M. Nagrodzki, MD |
| James M. Segrest | Glenn C. Sisk |
| William J. Stevens | Michael D. Thompson |
| Timothy J. Thornton | James D. Weidner |

Company management and corporate-level personnel responsible for the preparation, submission and attestation of the 2013 MLR Annual Reporting Form were:

| **Name** | **Title** |
|---|---|
| Noel Carden | CEO Attester |
| Cynthia M. Vice | CFO Attester |

### C. Ownership

The Company is a member of an insurance holding group system.



Blue Cross and Blue Shield of Alabama
Organizational Chart
December 31, 2013

### D. Agreements

As of December 31, 2013, the Company had entered into the following intercompany agreements that are pertinent to a review of its MLR Annual Reporting Form:
1. An Administrative Services Agreement with various subsidiary companies.
2. An Income Tax Allocation Agreement with various subsidiary companies.
3. A Network Marketing Services Agreement with Able Benefit Solutions, Inc.
4. A Pharmacy Benefit Management Services Agreement with Prime Therapeutics, LLC.

### E. Reinsurance

During 2011, 2012 and 2013, the Company had a reinsurance agreement in place with its affiliate United Trust Insurance Company in relation to Long Term Care business, a product not subject to the MLR reporting requirements. The Company does not have any assumed reinsurance agreements.

## V. Accounts and Records

The Company's main administrative and financial reporting office is located at 450 Riverchase Parkway East, Birmingham, AL 35244. The Company provided adequate access to its accounts and records, including computer and other electronic systems, as required by §158.501.

Except as noted below, the procedures performed did not identify any errors or irregularities in the data reported on the MLR Annual Reporting Form with regard to rebates and the provision of notices for the 2013 reporting year. As noted below, documentation regarding the employee count of group policyholders, which is necessary to determine group size and market classification, was not obtained from the Company's employer group policyholders in a manner that would accurately support its market classification determinations.

## VI. Examination Results

Except as noted in this report, the Company's 2011, 2012 and 2013 MLR Annual Reporting Forms were filed on the form and in the manner prescribed by the Secretary by or before the required due date.

During all three years under Examination, the Company met the MLR standard of 80% for the individual and small group markets and 85% for the large group market, and thus was not required to pay rebates to its enrollees.

### A. MLR Data

**Market Classification Policies and Procedures**

*Incorrect Procedures for Determining Group Size and Market Classification*
The Company has adopted policies and procedures for determining group size and market classification that are inconsistent with the requirements of §158.220, which stipulates that an issuer's MLR must be calculated separately for the large group market, small group market and individual market within each state.

The Company did not obtain the necessary information to support its group size and market classification determinations for the period covered in this examination. The documentation available to the examiners consisted, in some cases, of a copy of a recent billing invoice evidencing the number of subscribers on a particular policy, as well as, in some other cases, a copy of the original application for coverage indicating the total number of employees at the time of policy application. In many instances, the original application was dated five or more years prior to 2013, the year under the examination. Therefore, based on the available documentation, the Company incorrectly determined the group size, and consequently the market classification, of its policies based on the *number of enrollees* in some cases, and in other cases based on the *total number of employees* at the time of either the initial application or policy renewal. Section 158.103 employs the definition of Large Employer, Large Group Market, Small Employer and Small Group Market in section 2791 (e) of the Public Health Service Act (PHS Act). Section 2791 (e) of the PHS Act requires that small and large group market classifications be based on the *average number of employees on the business days of the calendar year preceding the coverage effective date*. As described above, the Company did not obtain information regarding the average number of total employees for the calendar year preceding the effective date of coverage, and therefore was not

able to accurately determine group size and market classification in accordance with §158.220 and the definitions at §158.103.

The precise impact of the failure to accurately determine group size and market classification cannot be conclusively determined due to the Company's lack of the information necessary to support its determinations.

**Reporting Based on Market Classification**

*Incorrect Determination of Group Size and Market Classification*
In addition to not employing procedures to correctly determine the number of employees of its group policyholders, the Company did not consistently assign policies to the correct market classification based on the (possibly incorrect) group size information available to the Company. Based on testing of the Company's market classification of its policies, eight group policies in the sample selected were incorrectly classified by the Company as small group market policies, when, based on the limited information available and the Company's group size determination processes, the policies should have been reported in the large group market as they each had more than 50 subscribers. Consequently, $1,654,529 in 2013 incurred claims and $2,451,415 in 2013 earned premium were reallocated from the small group to the large group market.

**Aggregation**
Other than the possibly incorrect group size and market classification determinations noted above, the samples of policies, claims and other items tested during the examination were correctly assigned to the appropriate state, markets, and lines of business in accordance with §158.120.

**Incurred Claims**
Other than the incorrect group size and market classification determinations noted above, based upon substantive testing and validation of the incurred claims (as defined by §158.140) reported by the Company, the incurred claims were accurately reported.

**Claims Recovered Through Fraud Reduction Efforts**
Other than the incorrect market classification determinations noted above, the Company accurately reported recoveries of paid fraudulent claim, which §158.140(b) allows as an adjustment to incurred claims up to the amount of fraud reduction expenses.

**Quality Improvement Activities**
The expenses and programs for quality improvement activities (QIA) identified by the Company met the definition of a QIA in §158.150. Other than the incorrect group size and market classification determinations noted above, based on substantive sample testing, QIA expenses were accurately reported and reasonably allocated among the Company's states and markets, as required by §158.170.

**Earned Premium**
Other than the incorrect group size and market classification determinations noted above, based on substantive testing, earned premium was properly reported on a direct basis and the data

elements underlying 2011, 2012 and 2013 premium as reported on the Company's 2013 MLR Annual Reporting Form were compliant with §158.130.

**Taxes**
Based on substantive testing, the taxes and regulatory fees excluded from 2011, 2012 and 2013 earned premium on the Company's 2013 MLR Annual Reporting Form complied with §158.161 and §158.162. Also based on substantive testing, taxes and regulatory fees were accurately reported and were reasonably allocated among the Company's markets, as required by §158.170 and in accordance with its federal tax allocation agreement with various subsidiaries. In its 2013 MLR Annual Reporting Form, the Company reported that it allocated its federal income and other taxes to each market based on pre-tax operating income, which the examiner confirmed during the examination.

### B. Credibility-Adjusted MLR and Rebate Amount

Based on substantive testing, the Company correctly applied the credibility adjustment when the Company calculated and reported its MLRs, in accordance with §158.221. The Company's final, credibility-adjusted MLRs were calculated correctly in accordance with 45 CFR Part 158 and the applicable MLR Annual Reporting Form Filing Instructions. Because the Company's final MLRs exceeded the applicable standards in the individual, small group and large group markets, it determined that no rebates were due for 2011, 2012 or 2013. However, due to the lack of accurate documentation supporting group size and market classification determinations, we cannot conclusively assess at this time whether the Company was required to issue any Notice of rebate (and any rebates) in the small group or large group markets for the 2011, 2012 or 2013 reporting years.

### C. Rebate Disbursement and Notice

According to its 2011, 2012 and 2013 MLR Annual Reporting Forms, the Company did not owe any rebates as a result of the MLR calculation. Based on substantive testing, the Company timely issued the 2011 Notice (of no rebate) in accordance with §158.251 but due to the lack of accurate documentation supporting group size and market classification determination, we cannot conclusively assess at this time whether the Company was required to issue any Notice of rebate (and any rebates) in the small group or large group markets for the 2011, 2012 or 2013 reporting years.

### D. Compliance with Previous Recommendations

The Company indicated that neither CCIIO nor any state regulatory entity has previously performed an examination of the Company's MLR processes and reporting. However, we were informed that the Alabama Department of Insurance performed a financial examination of the Company in 2013 covering the period January 1, 2008 through December 31, 2012. The financial examination resulted in four findings, none of which appear to impact the Company's federal MLR calculation or reporting.

## VII. Impact of Findings

Because of the lack of accurate documentation supporting group size and market classification determinations, we cannot conclusively assess the impact of these examination findings on the Company's MLR or whether there would be any impact on the Company's rebate liability the small group and large group markets for the time period covered by this examination. Nothing came to our attention that caused us to believe that the Company's individual market MLR or rebate liability required adjustment.

## VIII. Subsequent Events

The Company is required to inform CCIIO of any subsequent events that may affect the currently attested 2013 MLR Annual Reporting Form. No post-December 31, 2013 significant events have been brought to CCIIO's attention.

## IX. Conclusion, Summary of Recommendations, and Company Responses

CCIIO has examined Blue Cross Blue Shield of Alabama's 2013 MLR Annual Reporting Form to assess the Company's compliance with the requirements of 45 CFR Part 158. The examination involved determining the validity and accuracy of the data elements and calculated amounts reported on the 2013 MLR Annual Reporting Form, and the accuracy and timeliness of any rebate payments. The Company's 2013 MLR Annual Reporting Form did not comply with some of the requirements of 45 CFR Part 158. The effect of the examination findings and resultant recalculation of the Company's MLR did not result in any substantive change to its reported MLR for any of the markets in which it operates. However, as noted above, because of the lack of accurate documentation supporting the Company's group size and market classification determinations, we cannot conclusively assess the impact of this examination finding on the Company's MLR or whether there would be any impact on the Company's rebate liability in any of the small group and large group markets.

As a result of this examination, CCIIO recommends the following:

### Recommendation #1
The Company should adopt and implement procedures to ensure that it obtains and maintains accurate information from its employer groups at the time of policy application and at renewal in order to determine the correct group size and market classification of its group policies, as defined by section 2791 of the PHS Act and the applicable requirements of 45 CFR Part 158 and related technical guidance. This should include, but not be limited to, obtaining and maintaining accurate documentation related to the average number of employees for the calendar year preceding the coverage effective (or renewal) date. The Company should utilize this information to properly determine the market classification of its policies, in accordance with the requirements of §158.220(a).

*Company Response*

The Company accepts the recommendation as provided and in recent years has increased efforts to collect and store group size and market classification of its group policies. For the examination period, the Company's reported MLRs were significantly higher than the rebate threshold. Based on additional scenario testing performed internally, we have concluded that this recommendation and the related findings would have no impact on the Company's rebate liability.

*CCIIO Reply*
CCIIO accepts the Company's response and the corrective action plan.

**Recommendation #2**
The Company should re-file its 2013 MLR Annual Reporting Form to rectify the errors and reflect the findings stated herein, adjusting both the current year (CY) and prior year (PY) columns as applicable. In the alternative, the Company should rectify the errors to reflect the findings stated herein in its 2015 MLR Annual Reporting Form. The Company should make the corrections in the prior year column of its 2015 MLR Annual Reporting Form (Part 3, Column PY2). Additionally, the Company should upload supplemental documentation with their 2015 MLR Annual Reporting Form noting that the discrepancy between the data reported on the 2013 MLR Annual Reporting Form and the corresponding prior year data reported on the 2015 MLR Annual Reporting Form resulted from CCIIO's examination findings.

*Company Response*
The Company will make the correction in the prior year column of its 2015 MLR Annual Reporting Form and will upload supplemental documentation noting the differences between the 2013 reports and the corresponding prior year date on the 2015 MLR Report.

*CCIIO Reply*
CCIIO accepts the Company's response and the corrective action plan.


CCIIO thanks the Company and its staff for its cooperation with this Examination.