# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| IN RE: BLUE CROSS BLUE SHIELD ANTITRUST LITIGATION<br><br>(MDL No. 2406) | Master File No. 2:13-CV-20000-RDP<br><br>This document relates to Subscriber track cases.<br><br>Filed Under Seal (ECF No. 145) |

## PRIME THERAPEUTICS LLC'S OPPOSITION TO SUBSCRIBER PLAINTIFFS' MOTION TO COMPEL PRIME THERAPEUTICS LLC TO PRODUCE DOCUMENTS

This subpoena is a last-minute fishing expedition before the close of a nearly three-year discovery period. Subscriber Plaintiffs ask Non-Party Prime Therapeutics LLC ("Prime") to review and produce hundreds of thousands of documents to indulge a shot-in-the-dark theory that Blue Cross Blue Shield of Alabama ("BCBS-AL") is hiding assets in Prime to conceal its true profitability. Subscriber Plaintiffs have not introduced a shred of evidence to suggest that BCBS-AL is engaging in any such conduct. Instead, they appear to contend that they have the right to force Prime to undertake a massive document review and production, which includes commercially sensitive documents, to find out if there is any "there" there. Further, Subscriber Plaintiffs' theory does not even make sense. They allege that BCBS-AL is hiding assets by overpaying Prime, in which it only holds a 13.5% interest, for services. Subscriber Plaintiffs' newly manufactured theory is thus premised on BCBS-AL taking more than an 85% loss

on these assets it is purportedly hiding. This Court should reject Subscriber Plaintiffs' nonsensical relevancy argument.

The Federal Rules of Civil Procedure do not require Prime to accept Subscribers Plaintiffs' whims and fantastical theories.  To the contrary, the rules and courts enforcing them take special care to protect non-parties and limit their obligations solely to what is necessary to move a case forward, and even then only where doing so would not be unduly burdensome.  Indeed, this Court has repeatedly cited these principles in this case and in doing so has significantly reduced the burdens that parties to this case have attempted to impose on subpoenaed non-parties.  The Court should act similarly here and deny Subscriber Plaintiffs' motion to compel.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I.     Subpoena Procedural History

On July 17, 2017, Subscriber Plaintiffs served a subpoena on Prime requesting that Prime produce certain documents in this action. Prime's in-house counsel spoke with Subscriber Plaintiffs' counsel regarding the subpoena on July 26 and August 2, and Prime served objections on August 9.  The next day, without any attempt to confer with Prime, Subscriber Plaintiffs filed this motion.

### II.    The Subpoena Requests

Subscriber Plaintiffs have moved to compel Prime to produce documents in response to the following subpoena requests, each with a period of January 1, 2005

to the present[1] unless otherwise specified:

- Request No. 1: Prime's annual audited financial statement for each year.

- Request No. 2: All valuations of Prime, whether done internally or otherwise.

- Request No. 4: All revenue, expense, and income forecasts for Prime.

- Request No. 5: All contracts between BCBS-AL and Prime.

- Request No. 6: All documents showing inter-company charges, mark-ups on such charges, or payments between BCBS-AL and Prime.

- Request No. 7: All of Prime's Board minutes.

- Request No. 8: From 2010 to the present, all agreements (contracts) Prime has with Major Chains[2] under which Major Chains fill prescriptions for BCBS-AL subscribers.

- Request No. 9: From 2010 to the present, on a per prescription basis, all documents showing ingredient and dispensing fee charges/payments broken down by mail versus retail and class of prescription between Prime and BCBS-AL.

- Request No. 10: From 2010 to the present, all documents showing the difference between the amount for mail versus retail BCBS-AL pays Prime per prescription and Prime's expense for filling the prescription by class of prescription and in total.

Subscriber Plaintiffs' motion to compel does not seek production of documents in response to requests Nos. 3 and 11 and therefore, they should be

---

[1] Subscriber Plaintiffs revised the temporal scope of the subpoena through their motion to compel which now seeks documents from January 1, 2010 to present. The initial twelve year date range was one of the main reasons Prime objected to the scope of the subpoena.

[2] Defined as "all regional or national retail outlets that are pharmacies, have pharmacy departments and/or sell drugs and medicines, including Walgreens, CVS, Rite Aid, Walmart, Target, Kmart, Winn-Dixie, Publix, and Kroger's, and other similar retailers or pharmacies."

considered withdrawn.

### III. Prime's Proposed Production in Response to the Subpoena Requests

Following Subscriber Plaintiffs' filing their motion (which occurred the day after Prime served its objections, and which effectively prevented any meet and confer before filing the motion), the parties conferred, culminating in the following proposal from Prime:

- Request No 1:  Prime will produce the audited financial statements within the temporal scope of 1/1/2011-12/31/2016.

- Request No 2:  Prime will agree to produce valuations which are defined to mean valuations provided by a third party, i.e., an investment bank within the temporal scope of 1/1/2011-12/31/2016.

- Request No. 4: If Prime produces the audited financial statements (Request No. 1) and if the statements provide the information sought by No. 4 (revenue, expense and income forecasts), then Subscriber Plaintiffs will withdraw this request.  Subscriber Plaintiffs asked for an opportunity to review the audited financial statements produced by Prime before making a final decision.

- Request Nos. 5, 6 and 9:  Subscriber Plaintiffs will seek these documents from BCBS-AL, with the caveat that if BCBS-AL agrees to produce these documents or is ordered to do so and the documents are not in their possession or no longer accessible or otherwise unable to be produced, then Subscriber Plaintiffs may re-raise a specific request with Prime.

- Request No. 7: Prime will produce board minutes within the temporal scope of 1/1/2010-12/31/2016 which discuss valuations or BCBS-AL and its

financial relationship with Prime or valuations.

- Request No. 8: Withdrawn.

- Request No. 10: Withdrawn.

Opposing counsel rejected Prime's proposal.  Therefore, Prime now respectfully requests that the Court deny Subscriber Plaintiffs' motion to compel and limit Prime's response to that proposed above.

## IV.   Requests That Prime Demanded be Withdrawn

### A.   Request No. 8

This Request seeks commercially sensitive contracts between Prime and various large chain pharmacies around the country.  The disclosure of both the identities of the pharmacies who are the subject of each respective contract as well as the terms of each contract could negatively impact Prime's ability to compete.  Because Prime does not make a single penny of profit from the amounts it charges BCBS-AL for drugs dispensed through retail or mail networks (*See* Declaration of Kyle Brua ("Brua Dec.), ¶ 4) (attached as Exhibit A), there is no basis whatsoever to require Prime to produce this highly sensitive business information.

### B.   Request No. 10

Put simply, Request No. 10 seeks two things: (1) documents reflecting the difference between what Prime pays for a prescription and the amount that Prime charges BCBS-AL for that prescription; and (2) documents reflecting the expenses

Prime incurs filling prescriptions for BCBS-AL.

Prime cannot feasibly respond to either of the requests encompassed in Request No. 10.  With respect to (1), there is simply nothing to provide—Prime charges BCBS-AL the amount for a prescription that Prime pays, there is no "spread," as Subscriber Plaintiffs' seem to suspect.  (Brua Dec., ¶ 4.)

As to (2), Prime does not maintain records that break down its expenses on a customer-by-customer basis, including BCBS-AL.  (Brua Dec., ¶ 6.)  As such, Prime cannot easily identify the amount of expenses it incurs filling prescriptions for BCBS-AL.  (*Id.* at ¶ 7.)  In order to even estimate this information as requested in the subpoena, Prime would need to collect and examine all of its financial records where expense information is recorded and review all of those records in order to determine if they are responsive.  (*Id.* at ¶ 8.) This would require collecting and reviewing hundreds of thousands of documents and would entail hundreds of hours in attempting to assign specific costs or portions of costs to BCBS-AL and would be disruptive to Prime's business operations.  (*Id.* at ¶ 9.)

## LEGAL ARGUMENT

### I.     Legal Standard

A Court may not order a party to comply with a subpoena that subjects that party to an undue burden.  *See* Fed. R. Civ. P. 45(d)(3)(iv).  Courts consider the following factors to determine whether a subpoena imposes such a burden: (1)

relevance; (2) the requesting party's need for the documents; (3) the breadth of the document request; and (4) the time-period covered by the request. (*E.g.*, Order Regarding Objections to Discovery Order No. 44, Dkt. No. 1116, at 4 (May 1, 2017) ("May 1 Order").)

## II. The Relevance of the Requests is Wholly Speculative and Therefore Not Proportional to the Needs of this Case.

Notwithstanding Prime's proposal, Prime's position remains that Subscriber Plaintiffs' subpoena as a whole is unwarranted. Under Rule 26 as amended in 2015, discovery requested must be proportional to the needs of the litigation. Fed. R. Civ. P. 26(b)(1). Even in a case as large and high-stakes as this one, the proportionality rule still places limits on discovery. Namely, the requesting party must have some factual basis to believe that the request will turn up relevant documents. *See, e.g.*, *McCall v. State Farm Mut. Auto. Ins. Co.*, Case No.: 2:16-cv-01058-JAD-GWF, 2017 WL 3174914, at *9 (D. Nev. July 26, 2017) ("If the requirement for proportionality in discovery means anything . . . it must mean that burdensome, tangential discovery should not be permitted based on the mere possibility that something may turn up to support what is otherwise only speculation."); *Henry v. Morgan's Hotel Grp., Inc.*, 15–CV–1789 (ER)(JLC), 2016 WL 303114, at *4 n.2 (S.D.N.Y. Jan. 25, 2016) ("Especially in light of the Court's gate-keeping role on proportionality in discovery, defendants have to advance more than mere speculation to justify production of information from non-

7

parties.")[3]

Here, Subscriber Plaintiffs have failed to articulate any support for the theory underlying their requests to Prime—they have all but admitted this is a fishing expedition.  They have never even suggested that they have any basis to expect that any documents produced by Prime will actually support their theories.  Instead, they merely contend that they are entitled to obtain the requested documents to find out one way or the other.  Such a contention does not justify Prime even lifting a finger to respond to the requests, let alone, in the case of Request No. 10, undertaking a massive document collection and review with the additional step of calculating the allocation of previously unallocated costs.

### III. The Massive Burden to Prime in Responding to Request No. 10 Outweighs Any Potential Benefit to Subscriber Plaintiffs.

The Court should deny discovery requests where the benefit of the information sought is outweighed by burden and harm to the producing party.  *See, e.g.*, *Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 926 (8th Cir. 1999) (quoting *Micro Motion, Inc. v. Kane Steel Co.*,

---

[3] *See also Neogenix Oncology, Inc. v. Gordon*, CV 14-4427 (JFB) (AKT), 2017 WL 1207558, at *12 (E.D.N.Y. Mar. 31, 2017) (denying motion to compel enforcement of subpoena supported by "nothing more than conjecture and supposition"); *Marsden v. Nationwide Biweekly Administration, Inc.*, No. 3:14CV00399, 2016 WL 471364, at *2 (S.D. Ohio Feb. 8, 2016) (holding that party's "general allegation, with no factual support, does not justify production"); *Pepperwood of Naples Condominium Ass'n, Inc. v. Nationwide Mut. Fire Ins. Co.*, No. 2:10–cv–753–FtM–36SPC, 2011 WL 4596060, at *11 (M.D. Fla. Oct. 3, 2011) (labeling discovery request a disfavored "fishing expedition" where it was based on theory supported by "virtually no showing . . . other than more than a general hunch").

894 F.2d 1318, 1323 (Fed. Cir. 1990)); *see also* (Discovery Order No. 57, Dkt. No. 1317, at 9 (July 6, 2017) (subpoena requests directed to non-parties must comply with Rule 26(b)(1)'s proportionality requirement).)  Additionally, courts give special consideration to the burden imposed on a non-party in responding to document requests.  (*See* May 1 Order, at 4-5 (collecting cases)); *see also Solomon v. Nassau Cnty.*, 274 F.R.D. 455, 460 (E.D.N.Y. 2011) (quoting *Watts v. SEC*, 482 F.3d 501, 509 (D.C. Cir. 2007)) ("'[T]he 'undue burden' standard requires district courts supervising discovery to be generally sensitive to the costs imposed on third parties."); *see also United States v. Crumb*, CIVIL ACTION NO. 15-655-WS-N, 2016 WL 6997122, at *3 (S.D. Ala. Oct. 4, 2016) (holding that non-party had demonstrated that documents would be more convenient and less costly to obtain from party to the case due to number of potentially responsive documents, the time required to respond to the subpoena, the need to retain independent counsel, and the cost of responding to the subpoena)

As explained *supra* at 5-6, responding to Request No. 10 would impose a spectacular burden on Prime and require it to engage in what is likely to be a Sisyphean task, attempting to allocate to BCBS-AL portions of expenses by deciphering documents that do not break the expenses down by customer.  (*See* Brua Dec., ¶¶ 5-9.)  Further, the scale of this review would be substantial, spanning hundreds of thousands of documents. All this so that Subscriber Plaintiffs can test a

theory for which they have not articulated a factual basis.

Subscriber Plaintiffs' "Hail Mary" attempt to help their case at the tail end of discovery by asking Prime to locate and potentially dig through hundreds of thousands of documents to provide information that *might* be relevant to a marginal issue in this case flies in the face of the Court's admonition that requests to non-parties be "necessary, narrowly focused, and easily responded to without unnecessary burden and expense." (Discovery Order No. 57, at 8-9.)  Moreover, because Prime does not track expenses incurred by customer, this request will force Prime to create new records, which this Court has recognized is beyond a third party's obligation in responding to a subpoena.  ((Discovery Order No. 34, Dkt. No. 832, at 7-8 (Nov. 2, 2016); Discovery Order No. 44, Dkt. No. 1040 at 4 n.8 (Mar. 22, 2017).) Finally, as noted *supra* at 1, Subscriber Plaintiffs' theory that BCBS-AL is hiding assets at more than a 85% loss is simply not believable. This lack of benefit cuts strongly against requiring Prime to produce documents to indulge Subscriber Plaintiffs' last-ditch theory.

## IV. Request No. 8 Threatens Prime's Ability to Compete and Should be Denied on That Basis.

As explained *supra* at page 5, the contracts responsive to this request are commercially sensitive and could impact Prime's ability to compete.  The potential harm to Prime if these documents were to be produced is thus heightened. Therefore this Court should deny the motion with respect to this request on

grounds it has repeatedly cited during this litigation—protecting non-parties from producing current information[4] that could affect their ability to compete.  *See* Fed. R. Civ. P. 45(d)(3)(B)(i); (Discovery Order No. 34, at 6-7; Discovery Order No. 44, at 6-7; May 1 Order, at 6; Discovery Order No. 60, Dkt. No. 1393, at 5-6 (Aug. 1, 2017).)

### V. The Court Should Not Compel Prime to Produce Documents in the Possession of BCBS-AL.

Rule 26 requires the Court to limit discovery to the extent the Court finds that discovery can be sought from another source that is more convenient, less burdensome, and less expensive.  Fed. R. Civ. P. 26(b)(2)(C)(i).  This rule applies with particular force where a party seeks documents or information from a third party via subpoena that could also be obtained from another party to the litigation.  *See, e.g.*, *Crumb*, 2016 WL 6997122, at \*3; *In re Cantrell v. U.S. Bioservices Corp.*, No. 09-mc-0158-CV-W-GAF, at \*2 (W.D. Mo. Apr. 21, 2009) (subpoena imposed an undue burden where information was available from parties to the case and subpoenaed party represented that cost and resources to produce information in response would be "substantial").  Here, Subscriber Plaintiffs have requested documents from Prime which are more appropriately requested from BCBS-AL; Request Nos. 5, 6 and 9.   As such, the Court should deny Subscriber Plaintiffs'

---

[4] This Request only seeks current information, as it seeks all agreements that Prime "*has*" with Major Chains.

11

motion to the extent it seeks to compel production of documents responsive to these three Requests. Additionally, the information contained in Request No. 8 should be encompassed within the information found within Request No. 9, and given the high level of sensitivity of documents responsive to Request No. 8, the Court should deny Subscriber Plaintiffs' motion to compel a response to Request No. 8 on that basis as well.

### VI. The Court Should Not Compel Prime to Respond to Request No. 4 Because it is Duplicative of Request No. 1.

To the extent the Court determines that Prime must respond to the subpoena at all, the Court should limit Prime's required response such that Prime does not need to produce duplicative information. Fed. R. Civ. P. 26(b)(2)(C)(i) (the Court should limit duplicative discovery). Here, Request No. 4 is duplicative of Request No. 1, and therefore Prime should not have to produce separate documents to respond to both requests. Request No. 1 seeks audited financial statements, while Request No. 4 seeks revenue, expense and income forecasts.

The financial statements sought by Request No. 1 contain within them the forecasts sought in Request No. 4. Therefore, any additional documents that Prime would need to produce in response to Request No. 4 would be duplicative of the information contained in the financial statements and therefore unnecessarily impose an additional burden on Prime. (*See* Discovery Order No. 57, at 8-9.) Further, limiting Prime's required response in this way would be consistent with

this Court's earlier orders in this case narrowing requests directed to non-parties to documents "sufficient to identify" the subject of the particular request. (*See* Discovery Order No. 57, at 6-9 (narrowing certain requests directed to non-parties to documents sufficient to identify requested information as opposed to all documents "related" to each category); Discovery Order No. 60, at 4 and n.4 (noting that numerous categories of documents sought from other non-parties had been reduced from seeking a full document production to "documents sufficient to show" the information sought).)

## **CONCLUSION**

For the reasons explained above, Prime respectfully requests that the Court deny Subscriber Plaintiffs' motion to compel and limit Prime's production to that proposed herein at pages 4-5.

Dated:  August 28, 2017

 */s/ Matthew H. Lembke*_____
Matthew H. Lembke
Bradley Arant Boult Cummings LLP
1819 5th Avenue No.
Birmingham, AL  35203
Telephone:  205.521.8000
Facsimile:  205.521.8800
Email:  mlembke@bradley.com

Jeffrey J. Bouslog  (MN Atty ID 174671)
Christine N. Lindblad  (MN Atty ID 277666)
Fox Rothschild LLP
222 South Ninth Street, Suite 2000
Minneapolis, MN  55402
Telephone:  612.607.7000

Facsimile:  612.607.7100
Email:  jbouslog@foxrothschild.com
clindblad@foxrothschild.com

**ATTORNEYS FOR
PRIME THERAPEUTICS LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on August 28, 2017, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Matthew H. Lembke*
Matthew H. Lembke