# EXHIBIT A

```
                  UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF ALABAMA
                       SOUTHERN DIVISION




  IN RE:


        BLUE CROSS/BLUE SHIELD

        ANTITRUST LITIGATION


        MDL 2406



  * * * * * * * * * * * * * * * * * * * * * * * * *

            REPORTER'S OFFICIAL TRANSCRIPT OF
                     STATUS CONFERENCE


          BEFORE THE HONORABLE MICHAEL PUTNAM
             UNITED STATES MAGISTRATE JUDGE


                    NOVEMBER 30, 2016

                       9:00 a.m.
```

COURT REPORTER:
Teresa Roberson, RMR
Federal Official Court Reporter
1729 Fifth Avenue North
Birmingham, Alabama  35203

1          I was planning, at least, to take up both motions
2    together; is that okay with the Court and everybody else?
3          THE COURT: Sure.
4          MR. RAGSDALE: Sure.
5          MR. BURKHALTER: Your Honor, I have said before
6    you many times over the last several months and referred to
7    something that at least I have called meet and confer
8    fatigue, and of course the Court knows exactly what I'm
9    talking about.
10         And by my lights, what that really means is when
11   you have serial meet and confers, right, meet and confer
12   after meet and confer after meet and confer and, you know,
13   here the parties are eight months later and the ball really
14   hasn't gotten across the goal line.
15         That's not what we're talking about here, Your
16   Honor. I mean, this is a modest request. They have refused
17   to meet with us once, once on the very issues that are
18   addressed in both of their motions. Rule 37(a) is there for
19   a reason, Lord knows, the Court knows it better than anybody
20   else in this room, it is not permissive, it doesn't say
21   maybe you should have a cup of coffee and talk about your
22   differences before filing a motion to compel. No. It uses
23   the word "shall". And again, there is a reason for that.
24         You know, we were willing to meet and confer with
25   them on these issues. We are willing to meet and confer on

1  them -- with them on these issues.
2         As a matter of fact, we have scheduled a meet and
3  confer on their motion that relates to search terms, which I
4  call unstructured data, we have a meet and confer scheduled
5  Friday on that.
6         So with that as sort of the prelude, let me go
7  into just a little bit more detail about why these two
8  motions are so brazenly premature and, unfortunately, this
9  ain't the first time, we've seen this before.  It's happened
10 and it's becoming a serial issue.
11        With respect to their motion to compel
12 unstructured data and search terms:  Your Honor, I would
13 refer the Court to Page 5 of the brief that we filed.  And
14 apologies for not getting that in on Friday.  It was a state
15 holiday.  We didn't mean to jam the Court up by any stretch.
16        But on Page 5, and this is one of the shortest
17 briefs we filed in this case because these timelines speak
18 for themselves.
19        Let's just walk through this.  Okay.  October 7th
20 of this year, we received a letter from plaintiffs taking
21 issue with some of our search terms.  So what do we do?
22        October 13th, we have a meet and confer.  And it's
23 a productive meet and confer.  I don't think they will deny
24 that it was a productive meet and confer.  And we say, you
25 know what, we're willing to consider additional search

1  terms.  Okay?  We want to work with you on this.  You have
2  got additional search terms, give them to us.
3           Then, the next day, just in case we weren't clear
4  enough, we reiterate, hey, folks, we're willing to work with
5  you on search terms.  Give us some search terms, we'll talk.
6           Now, what's striking is, do you see that gap
7  between October 14th and November 15th, precisely a month, a
8  month goes by, not a peep from them about search terms.  And
9  then what do we get?
10          On November 15th, they throw three hundred search
11 terms at us, blunderbuss like, and say, you know what, this
12 is a lot of information, so we'll give you seven days to
13 digest it.
14          The next day, six days before the end of their own
15 seven day period, they file a motion to compel.  One day
16 after giving us all this stuff and one day after saying you
17 got a week.
18          But it gets richer.  The next day they say, hey,
19 let's have a meet and confer.  We take you up on your offer.
20 And again, that's the meet and confer that's going to happen
21 this Friday.  I have -- this chronology is stunning.  I have
22 never seen anything like it.
23          Now let's go to the next motion, which itself is
24 full of unfortunate surprises.  That's the motion to compel
25 structured data, which my friend Mr. Ragsdale just talked

1  about.  Here, our brief is even shorter because, again, one
2  paragraph is enough to explain why this is ridiculously in
3  violation of Rule 37.
4          Mr. Malatesta, my partner, sends an email to
5  Mr. Lemmon on November 4th regarding the structured data
6  issues and gives some explanation for the situation, and
7  then says, you know what, we are willing to work with you
8  here.  We're willing to work with you.  And I'm in the
9  office next week if you would like to discuss.  Silence.
10 Radio silence.  No acceptance of that offer.
11         And instead, they haul off, the next response we
12 get is their motion to compel filed twelve days later.
13         Now, when you do stuff like this, you get sloppy.
14 And that's what's happened here with respect to their motion
15 to compel structured data.  You know, they -- maybe they
16 didn't read Mr. Malatesta's email, maybe they didn't read
17 our brief.  But in our brief, we point out -- and here,
18 let's  go to their motion to compel structured data, which
19 is 849, Your Honor.
20         On Page 3, they include the same grid that they
21 just gave the Court.  All right.  And they say,
22 rhetorically, almost, on the next page, you know, how can
23 Subscriber Plaintiffs' experts understand a record having a
24 place of treatment reported as a one from one where there's
25 a B, you know, the patient's sex category, what's a one,

1  what's a four, so on and so forth.
2              How can they figure that out?  By looking at the
3  reference tables we gave them six months ago.  Six months
4  ago.  To the day.  They received these reference tables.
5  They've had them, they haven't looked at them.  They don't
6  even know that they have them.
7              Instead, they want to move to compel us to produce
8  them.  Again?
9              I have been doing this only twenty-five years, and
10 I say that in all seriousness because there are so many
11 folks in this room who have been practicing law a heck of a
12 lot longer than I have and who are better at it than I am.
13 But in my experience, I can count on two hands the number of
14 times where I have been involved in a case where a party
15 filed a completely premature off-the-rails discovery motion.
16             I have never heard of or seen a case where four
17 such motions have been filed by the same sets of plaintiffs.
18             And we refer to this in our opposition, Your
19 Honor, in March.  March of this year.  Provider Plaintiffs
20 send us a letter or email or something like that, and they
21 said, you know what, we want twenty-one categories, in the
22 brief we say seventeen, but I was under counting by four, we
23 want twenty-one categories of documents to be expedited and
24 produced within thirty days.  If the Court were to go back
25 and look at those categories, they're not focused, they're

1  the -- all documents related to this category, all documents
2  related to that category.  Just tons of documents.  They
3  want us to produce them in thirty days.
4           So what do we do?  We say, hey, let's talk about
5  it.  We, you know, we have a meet and confer that is
6  productive.  Lasted an hour.  Didn't cover remotely all of
7  the issues that they raised, all the twenty-one topics, but
8  it was productive.  We just ran out of time.  And we say,
9  okay, hey, let's keep talking.  Instead, they file a motion
10 to compel, when we haven't even talked about a lot of the
11 terms or requests that they want expedited.
12          And lo and behold, guess what, we go ahead and
13 have meet and confers after they file their motion to compel
14 and we resolve the issue.  So we roll in to Your Honor's
15 courtroom and stand up and say, well, that motion to compel
16 that they filed that we had to respond to, that the Court
17 had to read, that we had to gear up for, it's moot.  Don't
18 worry about it.  That was transgression number one.
19          Number two, which is the one that -- oh, by the
20 way, I went back and I looked at the brief that we filed in
21 March in opposition to their motion to compel that dealt
22 with these twenty-one categories of documents.  And I could
23 have saved myself some time and effort.  I could have just
24 cut and pasted what we wrote in our opposition to that
25 motion and put it in this motion.

1            Provider Plaintiffs have shamelessly violated Rule
2    37 right out of the gate, failed to meet their obligations
3    under Rule 37(a) to meet and confer.  The rule requires that
4    the party moving to compel discovery can certify that they
5    have conferred in good faith with the other side before
6    going to the Court.  A motion to compel is premature without
7    this requisite good faith conferral.
8            Should have gone to that, cut and pasted, put it
9    in this opposition brief.
10           Anyway, Your Honor, and I'm about to wrap up here.
11   The second of the four violations is the one that really, if
12   I were to -- if I were to rank them one to four, I would
13   rank this one as the most egregious; and that is, the
14   Subscriber Plaintiffs, in July of this year, said we want
15   you to produce the filed rate material that we think we're
16   entitled to by August 12th.  And we said, okay.  We agree
17   with you on that.  Deadline they picked, but we're fine.  We
18   will do that.
19           So what happens next?  On August 7th, five days
20   before their own deadline, they file a motion that asks that
21   we be held in contempt of court because they think we're not
22   going to be able to meet their deadline.
23           THE COURT:  Anticipatory.
24           MR. BURKHALTER:  Yes.  Right.  And guess what
25   happens to that anticipatory motion?  Judge Proctor

1  administratively removed it from the docket because when we
2  got to the 12th, we had met the deadline.
3          So, Your Honor, we want to meet and confer.  We
4  told them we wanted to meet and confer.  We are meeting and
5  conferring on Friday on one of their motions.
6          The Court should deny both these motions.  And if
7  it wants to order us to meet and confer, certainly we'll --
8  that is the Court's prerogative, but we don't need an order.
9  We'll willing to do it.  And we'll willing to do it this
10 week.
11         But that is not enough.  Fool me once, shame on
12 you.  Fool me twice, shame on me.  And now we're at number
13 four.  And unless the Court does something, five, six and
14 seven are in -- they're in the line, they're in the cue
15 ready to come in.
16         What we ask for is that we be awarded our expenses
17 in responding to these motions.  But I'll be very frank,
18 Your Honor, I'm not caught up in that, my client isn't that
19 caught up in it.  We just want some clear admonition to
20 these folks to stop doing this stuff, you know, we have
21 enough stuff going on in this case, it's a big case, it's a
22 massive case, there are all kinds of complicated issues, we
23 don't need to be responding to phantom motions to compel
24 that they haul off and file without even meeting with us in
25 good faith.