FILED

2018 May-24  PM 07:10
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| IN RE:<br>**BLUE CROSS BLUE SHIELD**<br>**ANTITRUST LITIGATION**<br>**(MDL NO. 2406)** | **Master File No. 2:13-CV-20000-RDP**<br><br>**This Document Relates to**<br>**Provider Track Cases** |

## PROVIDER PLAINTIFFS' MEMORANDUM REGARDING THE EFFECT OF THE STANDARD OF REVIEW ON CLASS CERTIFICATION OF PLAINTIFFS' SECTION 1 CLAIMS

# TABLE OF CONTENTS

I.  INTRODUCTION ..................................................................................1

II.  CERTIFICATION OF PROVIDER PLAINTIFFS' CLAIMS WILL BE
     APPROPRIATE UNDER EITHER STANDARD ........................................4

     A.  Legal Standards Regarding *Per Se* and Rule of Reason ......................5

     B.  Common Issues Will Predominate Under Either
         Standard of Review ..............................................................................7

     C.  Class Certification of Provider Plaintiffs' Antitrust Claims
         is Also the Superior Method of Adjudication ....................................15

III.  ALTERNATIVE TRIAL PROPOSAL .........................................................17

IV.  CONCLUSION..............................................................................................20

# TABLE OF AUTHORITIES

## Cases

*Am. Needle, Inc. v. Natl. Football League*,
    560 U.S. 183 (2010)............................................................................................8

*Atl. Richfield Co. v. USA Petroleum Co.*,
    495 U.S. 328 (1990)........................................................................................5, 6

*Behrend v. Comcast Corp.*,
    655 F.3d 182 (3d Cir. 2011), *rev'd on other grounds,* 569 U.S. 27 (2013) .......13

*Bhan v. NME Hosps., Inc.*,
    929 F.2d 1404 (9th Cir.), *cert. denied,* 502 U.S. 994,
    112 S.Ct. 617, 116 L.Ed.2d 639 (1991).............................................................6

*Chicago Bd. of Trade v. United States*,
    246 U.S. 231 (1918).........................................................................................10

*Continental T.V., Inc. v. GTE Sylvania Inc.*,
    433 U.S. 36, 97 S.Ct. 2549, 53 L.Ed.2d 568 (1977)...........................................6

*Copperweld Corp. v. Indep. Tube Corp.*,
    467 U.S. 752 (1984)............................................................................................8

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*,
    504 U.S. 451 (1992)............................................................................................6

*FTC v. Ind. Fed'n of Dentists*,
    476 U.S. 447, 106 S.Ct. 2009, 90 L.Ed.2d 445 (1986)................................. 6, 11

*Graphic Prods. Distribs., Inc. v. ITEK Corp.*,
    717 F.2d 1560 (11th Cir. 1983) ................................................................. 10, 14

*In re Conagra Peanut Butter Prods. Liab. Litig.*,
    251 F.R.D. 689 (N.D.Ga.2008) .........................................................................15

*In re Delta/AirTran Baggage Fee Antitrust Litig.*,
    317 F.R.D. 675 (N.D. Ga. 2016) .......................................................................15

*In re Elec. Books Antitrust Litig.*,

11 MD 2293 DLC, 2014 WL 1282293 (S.D.N.Y. Mar. 28, 2014) ...................15

*In re Mushroom Direct Purchaser Antitrust Litig.*,
319 F.R.D. 158 (E.D. Pa. 2016), *reconsideration denied*,
06-0620, 2017 WL 6966983 (E.D. Pa. Feb. 22, 2017)......................................13

*In re Terazosin Hydrochloride*,
220 F.R.D. 672 (S.D. Fla. 2004).........................................................................13

*In re Theragenics Corp Secs. Litig.*,
205 F.R.D. 687 (N.D. Ga. 2002) .........................................................................7

*Klay v. Humana*,
382 F.3d 1241 (11th Cir. 2004) ................................................................... 7, 16

*Laumann v. Natl. Hockey League*,
105 F. Supp. 3d 384 (S.D.N.Y. 2015) ...............................................................14

*Levine v. Cent. Fla. Med. Affiliates, Inc.*,
72 F.3d 1538 (11th Cir. 1996) .............................................................................5

*McDonough v. Toys R Us, Inc.*,
638 F. Supp. 2d 461 (E.D. Pa. 2009)..................................................................15

*McFarlin v. Conseco Servs., LLC*,
381 F.3d 1251 (11th Cir. 2004) ...........................................................................1

*McWane, Inc. v. F.T.C.*,
783 F.3d 814 (11th Cir. 2015) .............................................................................6

*Merenda v. VHS of Mich., Inc.*,
296 F.R.D. 528 (E.D. Mich. 2013), *opinion reinstated on reconsideration
sub nom. Cason-Merenda v. VHS of Mich., Inc.*,
06-15601, 2014 WL 905828 (E.D. Mich. Mar. 7, 2014) ...................................13

*Nat'l Coll. Athletic Ass'n v. Bd. of Regents of Univ. of Okla.*,
486 U.S. 85 (1984)...............................................................................................8

*Nat'l Society of Prf'l Eng'rs v. United States*,
435 U.S. 679, 98 S.Ct. 1355, 55 L.Ed.2d 637 (1978)................................... 6, 14

*Procaps S.A. v. Patheon, Inc.*,
845 F.3d 1072 (11th Cir. 2016) .........................................................................10

*Schering-Plough Corp. v. F.T.C.*,
  402 F.3d 1056 (11th Cir. 2005) ..............................................................................6

*Tyson Foods, Inc. v. Bouaphakeo*,
  136 S. Ct. 1036 (2016) ............................................................................................7

*Weisfeld v. Sun Chem. Corp.*,
  84 Fed. App'x. 257 (3d Cir. 2004) (unpublished) ................................................5

*White v. Nat'l Collegiate Athletic Ass'n*,
  CV 06-0999-RGK MANX, 2006 WL 8066803 (C.D. Cal. Oct. 19, 2006) .......15

## Statutes

§ 1 of the Sherman Act ..............................................................................................5

§ 4 of the Clayton Act ...............................................................................................5

## Other Authorities

7AA C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure*
  § 1778, pp. 123-124 (3d ed. 2005).........................................................................7

Manual for Complex Litigation § 22.315 (2004) ...................................................18

## Rules

Fed. R. Civ. Proc. 23(b)(3) .....................................................................................19

Provider Plaintiffs file this report in response to the Court's May 9, 2018

Order requiring the parties to address the effect on class certification of the Court's

determinations regarding the standard of review to be applied to Plaintiffs' Section

1 claims. Doc. No. 2159.

## I.     INTRODUCTION

As the Court indicated at the Status Conference on April 19, 2018, it was

initially inclined to defer ruling on Defendants' 1292(b) motion until after a ruling

on class certification. Doc. No. 2110 (4/19/18 Hearing Tr.) at 14:23–15:19. For a

number of reasons, the Court's initial inclination was correct: presenting and

deciding class certification under both the *per se* and rule of reason standards will

be more efficient than granting an immediate appeal, and is consistent with the

Eleventh Circuit's guidance that "permitting piecemeal appeals is bad policy."

*McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004).

Allowing an interlocutory appeal before class certification will add years to

this case. If the 1292(b) motion is granted by this Court, and the Court of Appeals

agrees to hear the appeal, Defendants have acknowledged that they will seek a stay

of the case until the Court of Appeals rules. Doc. No. 2110 at 19:7–22.[1] With

---

[1] This case is not the only one where the Blues have sought delay when faced with antitrust claims. Just last week, a District Court denied Blue Cross and Blue Shield of Rhode Island's request to appeal the Court's order denying summary judgment. The Court said a jury must decide if Blue Cross's decision to remove Landmark Medical Center from its provider list and its negotiating stance with the Steward Health Care system were simply "hard-core" business moves

briefing, oral argument, and the time cases normally remain under submission in the Court of Appeals, one could expect any such stay to last two years or longer. Putting aside any petitions for rehearing or certiorari, class certification proceedings would take place in the last half of 2020, and based upon the schedule being urged by Defendants, the Court would not issue a decision until at least 2021. At that point, one or more parties will certainly file a petition to appeal under Rule 23(f) of the Federal Rules of Civil Procedure. If such an appeal is granted, there will likely be another two-year delay, again putting aside petitions for rehearing or certiorari, taking us to 2023 at the least. The Court will then have summary judgment and Daubert issues to address before trial, which would take us to 2024 for the earliest trial date of the prioritized proceeding in a case that was filed in 2012. An additional problem at that point will be that the data that the parties have produced and that the experts are using ended in 2015. As a result, we would have a trial using nine-year-old data or additional costly data discovery and expert analysis because of the delays inherent in the multiple appeals that granting the 1292(b) Motion would create.

Provider Plaintiffs have previously informed the Court of the costs of delay, such as the extra costs of the litigation and the ongoing injury to healthcare

---

or an attempt to keep Steward out of the Rhode Island market by preventing it from buying Landmark. *See* Ex. 1, https://www.law360.com/competition/articles/1043829/.

providers, including hospitals going out of business. Since this Court ordered the filing of this Report, yet another Alabama hospital – this time in Jacksonville – has announced that it is going out of business.[2] Throughout the pendency of this case since its filing in 2012, Defendants have attempted to make this case a war of attrition with as many delays as possible. Plaintiffs are concerned that Defendants' motion is a continuation of their effort to make this case a war of attrition with as many delays as possible.

By contrast, the burden involved in deciding class certification under both standards is minimal because there are few issues for which the standard makes a difference, and even when it does make a difference, the extra analysis is limited. First, it is likely that however the Court decides the motions for class certification, that decision will be appealed under Rule 23(f).  If the Court decides class certification under both standards, questions about the standard of review and Plaintiffs' entitlement to class certification can be heard in the same appeal. Second, one of the few issues in class certification that depends on the standard of review is market definition. At this point, class certification proceedings will involve only Alabama Subscribers and Providers. Because of the enormous market share of Blue Cross and Blue Shield of Alabama ("BCBS-AL"), it has market

---

[2] *See*, https://www.annistonstar.com/news/jacksonville/after-denials-rmc-to-close-jacksonville-hospital-june/article_7dbbdeda-59d8-11e8-ae48-c36cf703e5c2.html.

power in every market in the State regardless of how one might define the markets. Thus, the threshold showing under the rule of reason standard is readily apparent, hardly in dispute, and common to every class member of both Provider and Subscriber classes. Third, other issues present only in a rule of reason claim, such as Defendants' alleged efficiencies, and Plaintiffs' proof that Defendants' conduct is harming competition and is not necessary to achieve procompetitive purposes, present issues common to every class member. Any one of these points justifies the denial or deferral of Defendants' motion, especially when considered in light of the delay that granting the motion would create. The Court should weigh the real and serious costs of more delay against this minimal burden of deciding class certification under both standards.

In the last section of this brief, Provider Plaintiffs propose a bellwether trial that the Court should order regardless of whether it grants the 1292(b) motion.

## II.   CERTIFICATION OF PROVIDER PLAINTIFFS' CLAIMS WILL BE APPROPRIATE UNDER EITHER STANDARD[3]

Class certification will be warranted under either a *per se* or rule of reason analysis. The standard of review will not impact proof of ascertainability, numerosity, typicality, or adequacy of representation. Under Rule 23(b)(3), Provider Plaintiffs must show not only that common issues exist but also that

---

[3] This argument supports denial of the motion regardless of whether the Court applies the *per se* or rule of reason standard to the Blue Card claims.

4

"questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." As Provider Plaintiffs explain in Parts B and C below, under either standard, common issues clearly predominate, including whether Defendants are a single entity and whether they conspired, and the "additional" evidence necessary for class certification under the rule of reason (but not the *per se* rule) will be limited.

### A.   Legal Standards Regarding *Per Se* and Rule of Reason

As the Supreme Court has explained, "*Per se* and rule-of-reason analysis are but two methods of determining whether a restraint is 'unreasonable,' *i.e.,* whether its anticompetitive effects outweigh its procompetitive effects." *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 342 (1990).[4] Under a *per se* analysis, "the unreasonableness of the restraint is presumed." *Levine v. Cent. Fla. Med. Affiliates, Inc.*, 72 F.3d 1538, 1546 (11th Cir. 1996). Under a rule of reason test, a determination of unreasonableness requires consideration of anticompetitive

---

[4] Of course, the distinction between *per se* and rule of reason cases applies only to proof of a violation of Section 1 of the Sherman Act and does not vary the proof necessary to establish the elements of Section 4 of the Clayton Act – antitrust injury and damages. *Atl. Richfield*, 495 U.S. at 341-42 ("The *per se* rule is a method of determining whether § 1 of the Sherman Act has been violated, but it does not indicate whether a private plaintiff has suffered antitrust injury and thus whether he may recover damages under § 4 of the Clayton Act."); s*ee also Weisfeld v. Sun Chem. Corp.*, 84 F. App'x. 257, 260 (3d Cir. 2004) (unpublished) ("While Weisfeld argues a *per se* violation occurred in this case, we conclude that the issue is irrelevant to whether the requirements of Rule 23(b)(3) are met for class certification purposes.).

effects and pro-competitive justifications. The Eleventh Circuit has set forth a

balancing test to determine whether a violation of Section 1 has occurred under a

rule of reason analysis:

> The traditional rule of reason analysis requires the factfinder to "weigh all of the circumstances of a case in deciding whether a restrictive practice should be prohibited as imposing an unreasonable restraint on competition." *Continental T.V., Inc. v. GTE Sylvania Inc.,* 433 U.S. 36, 49, 97 S.Ct. 2549, 2557, 53 L.Ed.2d 568 (1977). The plaintiff bears an initial burden of demonstrating that the alleged agreement produced adverse, anti-competitive effects within the relevant product and geographic markets, i.e., market power. *See FTC v. Indiana Federation of Dentists,* 476 U.S. 447, 460–61, 106 S.Ct. 2009, 2019, 90 L.Ed.2d 445 (1986).
>
> Once the plaintiff meets the burden of producing sufficient evidence of market power, the burden then shifts to the defendant to show that the challenged conduct promotes a sufficiently pro-competitive objective. A restraint on competition cannot be justified solely on the basis of social welfare concerns. *See, e.g., National Society of Professional Engineers v. United States,* 435 U.S. 679, 98 S.Ct. 1355, 55 L.Ed.2d 637 (1978); *Indiana Dentists,* 476 U.S. at 463, 106 S.Ct. at 2020. In rebuttal then, the plaintiff must demonstrate that the restraint is not reasonably necessary to achieve the stated objective. *Bhan v. NME Hospitals, Inc.,* 929 F.2d 1404, 1413 (9th Cir.), *cert. denied,* 502 U.S. 994, 112 S.Ct. 617, 116 L.Ed.2d 639 (1991).

*Schering-Plough Corp. v. F.T.C.*, 402 F.3d 1056, 1064–65 (11th Cir. 2005); *see

also McWane, Inc. v. F.T.C.*, 783 F.3d 814, 833 (11th Cir. 2015) (citing *Schering-

Plough* as applying a "burden-shifting approach" in a "traditional rule of reason

analysis"). Such a balancing test accords with Supreme Court precedent and the

underlying rationale of the rule of reason test; *Eastman Kodak Co. v. Image Tech.

Servs., Inc.*, 504 U.S. 451, 486–87 (1992) (referring to "the judicial inquiry into the

6

balance between the behavior's procompetitive benefits and its anticompetitive costs" in a rule of reason analysis); *Atl. Richfield Co.,* 495 U.S. at 342 (explaining that the point of a rule of reason analysis is to determine "whether a restraint is 'unreasonable', i.e. whether its anticompetitive effects outweigh its procompetitive effects").

### B.    Common Issues Will Predominate Under Either Standard of Review

Regardless of the standard of review applied, Plaintiffs will be able to establish that common issues predominate over individual questions. "Under 23(b)(3), '[i]t is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions.'" *Klay v. Humana*, 382 F.3d 1241, 1254 (11th Cir. 2004) (quoting *In re Theragenics Corp Secs. Litig.*, 205 F.R.D. 687, 697 (N.D. Ga. 2002)). "When 'one of more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately. . . .'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting 7AA C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 1778, pp. 123-24 (3d ed. 2005)).

Common issues clearly predominate over any individualized inquiries with regard to Section 1 liability, including the following questions: whether Defendants

constitute a single entity; whether Defendants conspired to allocate the United States healthcare market and agreed not to compete; whether Defendants agreed to national best efforts or local best efforts restrictions; whether Defendants agreed to fix prices; and, whether Defendants agreed to a group boycott. If the Court holds that the Blues' agreements are subject to the *per se* rule, then Provider Plaintiffs will only have to prove Defendants conspired and will not be required to prove harm to competition in a particular market. *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 768 (1984) (*per se* rule applies "without inquiry into the harm [the restraint] has actually caused," while the rule of reason requires "an inquiry into market power and market structure").

An analysis under the rule of reason standard requires two additional issues as compared to a *per se* analysis: (1) whether Defendants' conduct produced anti-competitive effects, and (2) whether Defendants can show any legitimate procompetitive justifications for their conspiratorial conduct that outweighs the anticompetitive effects. As the Supreme Court has explained, "depending upon the concerted activity in question, the Rule of Reason may not require a detailed analysis; it 'can sometimes be applied in the twinkling of an eye.'" *Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 203 (2010) (quoting *Nat'l College Athletic Assn. v. Bd. of Regents of Univ. of Okla.*, 486 U.S. 85, 109 n. 39 (1984)). Defendants' conduct in this case should be readily condemned under either

standard. A rule of reason violation will require proof of additional common issues including the following: whether the Blues' conduct is anticompetitive; if there is no direct evidence of anticompetitive conduct, whether BCBS-AL has market power in a particular market; whether Defendants can prove any possible procompetitive justifications for their conduct; and, if Defendants can proffer any potential procompetitive justifications, whether those justifications outweigh the harm to competition caused by that conduct. Not only do common issues predominate under either standard but class certification is also far superior to repetitive individualized proceedings.

Pursuant to the Court's current rulings regarding the standard of review, Plaintiffs will proceed on both rule of reason and *per se* Section 1 claims. However, even if the Court applies a *per se* analysis to all of Plaintiffs' Section 1 claims, Plaintiffs will still have to establish class-wide proof regarding the relevant market and BCBS-AL's market power because Provider Plaintiffs are also pursuing Section 2 claims, including conspiracy-to-monopsonize claims. In addition, Plaintiffs will have to establish Defendants' intent. Undoubtedly, Defendants will attempt to counter Plaintiffs' evidence utilizing the same purported procompetitive justifications. Plaintiffs intend to establish the elements of their Section 2 claims through expert testimony and other common evidence and will proceed in the same manner with regard to any Section 1 claims the Court

finds to be subject to the rule of reason. Therefore, much of the "additional" evidence required under the rule of reason will not be additional at all.

### 1. Plaintiffs Can Establish Anticompetitive Effects Utilizing Common Evidence

Proving anticompetitive effects will not be demanding. Anticompetitive effects are obvious and overwhelming in this case, where the Court has recognized that the Blues are among the largest insurers in the country, that BCBS-AL is the largest insurer in Alabama, and that Defendants have agreed not to compete.

A plaintiff may prove anticompetitive effects by "establish[ing] either (1) that the restraint had an 'actual detrimental effect' on competition, or (2) that the restraint had the potential for genuine anticompetitive effects and that the conspirators had market power in the relevant market." *Procaps S.A. v. Patheon, Inc.*, 845 F.3d 1072, 1084 (11th Cir. 2016). Defendants' anticompetitive intent is also "highly probative 'not because a good intention will save an otherwise objectionable regulation or the reverse; but because knowledge of intent may help the court to interpret facts and to predict consequences.'" *Graphic Prods. Distribs., Inc. v. ITEK Corp.*, 717 F.2d 1560, 1573 (11th Cir. 1983) (quoting *Chicago Bd. of Trade v. United States*, 246 U.S. 231, 238 (1918)). As the Court noted in its standard of review opinion,

> "a summary of conversations with four Blue CEOs in 1986 recognized that "[t]he major advantage of an exclusive franchise area was seen in the lessening of competition as well as the opportunity to

> discuss plans and proposals with companies in the same industry
> knowing that those ideas would be used against you." (Doc. #
> 1436-12). And in interviews conducted by the Association in which
> questions about ESAs were asked, Plan CEOs stated that ESAs create
> "[l]arger market share because other Blues stay out and do not
> fragment the market" (Doc. # 1350-22 at 3), and allow for aggressive
> bargaining. (Doc. # 1350-23 at 3). "In turn, national accounts enjoy
> local discounts." (*Id*.). One CEO reported that "Plans benefit from the
> exclusive service areas because it eliminates competition from other
> Blue Plans" and that without service areas, "there would be open
> warfare." (Doc. # 1350-24 at 2).

Doc. 2063 at 13.  The intent behind protecting and continuing the service areas was

clearly to reduce competition among the Blues.

Plaintiffs can prove that Defendants' conduct has had an actual detrimental

effect on competition. Common and direct evidence will establish that the Blues'

market division has led to a world where the market power of BCBS-AL has in and

of itself further restricted competition, but has also acted to stifle innovation across

the state of Alabama. Because Plaintiffs can present direct evidence of

anticompetitive effect, Plaintiffs should not be required to identify a market

definition or to establish market power. *F.T.C. v. Ind. Fed'n of Dentists*, 476 U.S.

447, 460–61 (1986) ("Since the purpose of the inquiries into market definition and

market power is to determine whether an arrangement has the potential for genuine

adverse effects on competition, 'proof of actual detrimental effects, such as a

reduction of output,' can obviate the need for an inquiry into market power, which

is but a 'surrogate for detrimental effects.'")

However, if necessary, Plaintiffs can also prove that BCBS-AL has market

power in the market for the sale of commercial healthcare financing services and

the market for the purchase of private healthcare goods and services in Alabama.

As the Court has recognized, the Blues have tremendous market power:

> In 2015, fifteen of the Blue Plans were within the top twenty-five
> insurers in the United States as measured by total membership.
> Anthem was the second largest insurer in the country by membership
> and held Blue Cross and/or Blue Shield licenses in fourteen different
> states. HCSC was the fourth or fifth largest insurer in the country by
> membership and held Blue Cross and Blue Shield licenses in five
> states. Other Blue Plans are among the top ten insurers by
> membership. Blue Cross and Blue Shield of Alabama is the largest
> insurer in Alabama, and the sixteenth largest insurer in the nation by
> membership.

Doc. No. 2063 at 19–20 (citations omitted). BCBS-AL has market power

throughout the state of Alabama in the market for the sale of commercial health

insurance and in every geographic area within Alabama, no matter how Defendants

or the Court try to slice those markets. In Alabama, the Blues collectively control

approximately 90% of the market. ██████████████████████████

██████████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

██████████████ Ex. 3, Madrecki 8/25/17 Tr. at 111:1-15 (BCBS-AL is

"the dominant carrier" in Alabama); ████████████████████████████

Alternatively, Plaintiffs can establish that BCBS-AL has market power in these product markets in Core-Based Statistical Areas or in counties where CBSAs are not defined. By definition, questions regarding the relevant market and BCBS-AL's market power within the relevant market cannot be based on individualized facts but must instead be common to all class members. *See Behrend v. Comcast Corp.*, 655 F.3d 182, 192 (3d Cir. 2011), *rev'd on other grounds,* 569 U.S. 27 (2013) (affirming the district court's determination that the relevant geographic market is "'susceptible to proof at trial through available evidence common to the class'"); *In re Mushroom Direct Purchaser Antitrust Litig*., 319 F.R.D. 158, 190 (E.D. Pa. 2016), *reconsideration denied*, 06-0620, 2017 WL 6966983 (E.D. Pa. Feb. 22, 2017) (finding the plaintiffs had shown "that evidence common to the class is capable of answering the question of whether the relevant geographic market is the non-Western United States"); *Merenda v. VHS of Mich., Inc.*, 296 F.R.D. 528, 546–47 (E.D. Mich. 2013), *opinion reinstated on reconsideration sub nom. Cason-Merenda v. VHS of Michigan, Inc.*, 06-15601, 2014 WL 905828 (E.D. Mich. Mar. 7, 2014) (agreeing with the plaintiffs that "'[d]efining a relevant market cannot, by definition, *ever* be an individual question—there is not one relevant market for Ms. Cason–Merenda, another for Mr. Suhre, and yet another for a third nurse'") (citations omitted); *In re Terazosin Hydrochloride*, 220 F.R.D.

672, 695–96 (S.D. Fla. 2004) (finding in a Section 2 monopoly case that both "the definition of the relevant market for determining market power" and whether the defendant, in fact, possessed monopoly power in the relevant markets were common issues).

### 2.   Proof Regarding the Purported Procompetitive Benefits of Defendants' Conduct Will Not Involve Individualized Inquiries

With regard to pro-competitive benefits, the only relevant question is whether Defendants' agreements have made the markets more competitive. The rule of reason "does not open the field of antitrust inquiry to any argument in favor of a challenged restraint that may fall within the realm of reason." *Natl. Soc. of Prof'l. Eng'rs v. U. S.*, 435 U.S. 679, 688 (1978). "Instead, it focuses directly on the challenged restraint's impact on competitive conditions." *Id.* "[M]erely offering a rationale for a ... restraint will not suffice; the record must support a finding that the restraint in fact is necessary to enhance competition and does indeed have a pro-competitive effect." *Graphic Prods. Distribs., Inc.*, 717 F.2d at 1576.

Any purported benefits will present common questions with regard to all Provider Plaintiff class members, as the evidence will relate solely to Defendants' purported justifications for their agreement not to compete. As the Court in *Laumann v. National Hockey League*, 105 F. Supp. 3d 384, 403 (S.D.N.Y. 2015) explained, the questions of whether procompetitive benefits exist and whether, on

balance, the conduct is anticompetitive present common questions:

> Defendants believe that the complained-of restraints, though
> anticompetitive to the extent that they preclude the existence of a la
> carte channels, are also procompetitive to the extent that they facilitate
> the existence of a well-priced OMP. If defendants can convince the
> trier-of-fact of this point, they will have a strong defense against
> antitrust liability – a strong argument for why the restraints satisfy the
> Rule of Reason and may continue to exist. If this is true, it is true
> across the class.

*See also In re Elec. Books Antitrust Litig.*, 11 MD 2293 DLC, 2014 WL 1282293, at *16 (S.D.N.Y. Mar. 28, 2014) ("But, even if Apple were entitled to litigate these issues at trial and if it also had sufficient evidence to suggest that these purported benefits existed and could be attributed to the price-fixing conspiracy, the existence or non-existence of each of these offsetting benefits would constitute a common issue for the class to litigate"); *McDonough v. Toys R Us, Inc.*, 638 F. Supp. 2d 461, 482 (E.D. Pa. 2009) (finding that proof of procompetitive or anticompetitive effects would not require individual evidence); *White v. Nat'l Collegiate Athletic Ass'n*, CV 06-0999-RGK MANX, 2006 WL 8066803, at *6 (C.D. Cal. Oct. 19, 2006) (recognizing that questions regarding unreasonable restraint and pro-competitive benefits are common questions).

### C.   Class Certification of Provider Plaintiffs' Antitrust Claims is Also the Superior Method of Adjudication

In order to establish a lack of superiority, Defendants must show that there are other alternative "superior" methods of resolving the claims of class members.

*See In re Delta/AirTran Baggage Fee Antitrust Litig.*, 317 F.R.D. 675, 699–700 (N.D. Ga. 2016) (quoting *In re Conagra Peanut Butter Prods. Liab. Litig.*, 251 F.R.D. 689, 699 (N.D.Ga.2008)) ("'[T]he focus is on the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs'").

As the Eleventh Circuit has observed, "[T]he more common issues predominate over individual issues, the more desirable a class action lawsuit will be for adjudicating the plaintiffs' claims." *Klay v. Humana*, 382 F.3d 1241, 1269 (11th Cir. 2004). Common issues predominate, by a wide margin, over individual issues in this action. Accordingly, it would be difficult for Defendants to argue that any alternative means of adjudicating Class members' claims, if any were available, would be a more desirable method than a class action.

Moreover, this case is manageable. As the Eleventh Circuit noted in *Klay*, the relevant inquiry is not "whether the class action will create significant management problems" but instead the question is "whether it will create relatively more management problems than any of the alternatives." *Klay*, 382 F.3d at 1273. In *Klay*, the Eleventh Circuit found "the district court acted well within its discretion in concluding that it would be better to handle this case as a class action instead of clogging the federal courts with innumerable individual suits litigating the same issues repeatedly." *Id.* In this litigation, the only alternative to class

certification is a multitude of long, expensive individual trials to repeatedly prove the same facts. Considering how long this litigation has taken to-date and how much more protracted litigation Defendants desire before this case nears resolution, there can be no question that individualized trials will clog the federal courts for years to come. No difficulties are likely to be encountered in the management of this case that cannot be resolved or that outweigh the clear benefit of maintaining this case as a class action.

## III.   ALTERNATIVE TRIAL PROPOSAL

Provider Plaintiffs propose that the Court set a prompt bellwether trial for one or more class representative hospitals chosen by Plaintiffs' counsel. In the trial the Court can submit both *per se* and rule of reason claims with special interrogatories to the jury. Since the trial would be on a non-class basis, there can be an expedited schedule for the submission of expert reports. If the Court believes that any additional summary judgment motions are appropriate, it can hear them during the same time, although Provider Plaintiffs submit that it would be far more efficient to decide such issues in the context of and with the benefit of a bellwether trial. There is no reason that the trial cannot be set within 90 days and certainly no later than a starting date that will permit completion before the end of the year. To achieve that end, Provider Plaintiffs would agree to the use of a trial or chess clock in the manner the late Judge Nelson used in this Courthouse in the trial of a major

class action.

There are many reasons for the Court to schedule such a trial. First, a bellwether trial is widely recognized as one of the best methods for setting a value on cases that will help parties reach settlement. Manual for Complex Litigation § 22.315 (2004) (bellwether trials "enable the parties and the court to determine the nature and the strength of the claims, whether they can fairly litigated on a group basis', and what range of values the cases may have if resolution is attempted on a group basis."). In their 1292(b) motion, Defendants said they are trying to achieve settlement. If their hope is genuine, they should join Provider Plaintiffs' suggestion that a bellwether trial proceed to assist the parties in assessing their risks of continued litigation versus a negotiated resolution of this important case.

Second, the bellwether trial would inform the parties and the Court whether the appeal that Defendants propose is meaningful. If the jury rules for Plaintiffs on the rule of reason claims, as Plaintiffs believe it will, then the standard of review will not matter in this case.

Third, the bellwether trial will allow the Court to hear and consider the parties' theories and experts in the context of a trial. The Court could engage in a much more meaningful *Daubert* analysis and summary judgment analysis in preparation for future proceedings.

Fourth, the bellwether trial would allow the Court to begin crafting

appropriate injunctive relief. Since the Court is not required to certify a class in order to enter injunctive relief, a judgment in Plaintiffs' favor in such a trial, would allow the entry of appropriate injunctive relief, which the Court might need to modify or expand in light of future proceedings.

Finally, and perhaps most importantly, a bellwether trial will provide important lessons with respect to class certification. After the Court has heard such a trial, it can decide in an informed way whether a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy," as set forth in Rule 23(b)(3) of Federal Rules of Civil Procedure. For example, would the Court decide to proceed with a class trial instead of having hundreds of individual trials? Therefore, while the parties are proceeding with the bellwether trial, some of the many other lawyers representing the parties could begin the class certification process.

Provider Plaintiffs submit that the Court should have such a bellwether trial before granting any 1292(b) certification. However, we must acknowledge that the Court could grant the 1292(b) certification and proceed with the bellwether trial at the same time. The trial would be complete long before the normal timeline for an appeal before the Eleventh Circuit, and could also assist the Court of Appeals in deciding whether it should grant an appeal to review the issues presented by Defendants. Proceeding with such a trial would avoid some of the prejudice that

will be caused by the delay inherent in the interlocutory appeal. Since the Court entered its order calling for this brief, the Court should be aware that another hospital in Alabama – this time in Jacksonville – has announced its closing, the twelfth since 2011. Healthcare providers and the citizens of Alabama need timely relief that a bellwether trial can begin to provide.

While Provider Plaintiffs are making this alternative proposal in a continuing effort to be productive regardless of the Court's ruling on any motion, the Court should not construe the alternative proposal as an admission that class certification is not appropriate. Indeed, Provider Plaintiffs submit that a bellwether trial will itself demonstrate that class certification is the superior method for resolving this dispute.

## IV.    CONCLUSION

For all the reasons set forth herein, the Court should either deny or defer ruling on Defendants' 1292(b) Motion until the Court reaches a determination with regard to class certification. In addition, the Court should promptly schedule a bellwether trial for one or more class representative hospitals chosen by Plaintiffs' counsel. Defendants have, at every stage, sought to delay this litigation. The case simply cannot suffer another protracted delay at the behest of Defendants.

Dated: May 24, 2018                        Respectfully submitted,

*/s/ Edith M. Kallas*                       */s/ Joe R. Whatley, Jr.*
Edith M. Kallas – ***Co-Lead Counsel***     Joe R. Whatley, Jr. – ***Co-Lead Counsel***
WHATLEY KALLAS, LLP                         W. Tucker Brown
1180 Avenue of the Americas, 20th Floor     Helen L. Eckinger
New York, NY 10036                          WHATLEY KALLAS, LLP
Tel:  (212) 447-7060                        2001 Park Place North
Fax:  (800) 922-4851                        1000 Park Place Tower
Email: ekallas@whatleykallas.com            Birmingham, AL 35203
                                            Tel:  (205) 488-1200
                                            Fax:  (800) 922-4851
                                            Email: jwhatley@whatleykallas.com
                                                   tbrown@whatleykallas.com
                                                   heckinger@whatleykallas.com


Patrick J. Sheehan                          Deborah J. Winegard
WHATLEY KALLAS, LLP                         WHATLEY KALLAS, LLP
60 State Street, 7th Floor                  1068 Virginia Avenue, NE
Boston, MA 02109                            Atlanta, GA 30306
Tel:  (617) 573-5118                        Tel:  (404) 607-8222
Fax:  (617) 371-2950                        Fax:  (404) 607-8451
Email: psheehan@whatleykallas.com           Email: dwinegard@whatleykallas.com

Henry C. Quillen                            E. Kirk Wood, Jr. – ***Local Facilitating***
WHATLEY KALLAS, LLP                         ***Counsel***
159 Middle Street, Suite 2C                 WOOD LAW FIRM LLC
Portsmouth, NH  03801                       P. O. Box 382434
Tel:  (603) 294-1591                        Birmingham, AL 35238
Fax:  (800) 922-4851                        Tel:  (205) 612-0243
Email: hquillen@whatleykallas.com           Fax:  (205) 705-1223
                                            Email: ekirkwood1@bellsouth.net

Charles Clinton Hunter
HAYES HUNTER PC
4265 San Felipe, Suite 1000
Houston, TX 77027
Tel:  (281) 768-4731
Fax: (713) 583-7047
Email: chunter@hayeshunterlaw.com

Aaron S. Podhurst – ***Plaintiffs' Steering Committee***
Peter Prieto – ***Chair, Expert Committee***
PODHURST ORSECK, P.A.
25 West Flagler Street, Suite 800
Miami, FL 33130
Tel:  (305) 358-2800
Fax:  (305) 358-2382
Email: apodhurst@podhurst.com
        pprieto@podhurst.com

Dennis Pantazis – ***Plaintiffs' Steering Committee***
Brian Clark – ***Discovery Committee***
WIGGINS CHILDS PANTAZIS FISHER
  GOLDFARB
The Kress Building
301 Nineteenth Street North
Birmingham, AL 35203
Tel:  (205) 314-0500
Fax:  (205) 254-1500
Email: dgp@wcqp.com
        bclark@wcqp.com

U.W. Clemon – ***Plaintiffs' Steering Committee***
U. W. Clemon, LLC
5202 Mountain Ridge Parkway
Birmingham, AL  35222
Tel: (205) 837-2898
Email: clemonu@bellsouth.net

Dennis C. Reich – ***Chair, Damages Committee***
REICH & BINSTOCK, LLP
4265 San Felipe, Suite 1000
Houston, TX 77027
Tel:  (713) 622-7271
Fax:  (713) 623-8724
Email:  dreich@rbfirm.net

J. Mark White – ***Litigation Committee***
Augusta S. Dowd – ***Chair, Litigation Committee***
Linda G. Flippo – ***Discovery Committee***
WHITE ARNOLD & DOWD, P.C.
The Massey Building
2025 Third Avenue North, Suite 500
Birmingham, AL 35203
Tel:  (205) 323-1888
Fax:  (205) 323-8907
Email: mwhite@whitearnolddowd.com
        adowd@whitearnolddowd.com
        lflippo@whitearnolddowd.com

Nicholas B. Roth – *Chair, Discovery Committee*
Julia Smeds Roth – *Discovery Committee*
EYSTER KEY TUBB ROTH MIDDLETON
  & ADAMS, LLP
402 East Moulton Street, SE
Decatur, AL 35602
Tel:  (256) 353-6761
Fax:  (256) 353-6767
Email: nbroth@eysterkey.com
        jroth@eysterkey.com

Van Bunch – *Chair, Class Certification Committee*
BONNETT FAIRBOURN FRIEDMAN &
  BALINT, P.C.
2325 E. Camelback Road, Suite 300
Phoenix, AZ 85016
Tel:  (602) 274-1100
Fax:  (602) 274-1199
Email: vbunch@bffb.com

David A. Balto – *Expert Committee*
THE LAW OFFICES OF DAVID A. BALTO
1350 I Street, N.W., Suite 850
Washington, DC 20005
Tel:  (202) 789-5424
Fax:  (202) 589-1819
Email: david.balto@dcantitrustlaw.com

Robert J. Axelrod – *Chair, Written Submissions Committee*
AXELROD & DEAN LLP
830 Third Avenue, 5th Floor
New York, NY 10022
Tel:  (646) 448-5263
Fax:  (212) 840-8560
Email: rjaxelrod@axelroddean.com

Joey K. James – *Litigation Committee*
BUNCH & JAMES
P. O. Box 878
Florence, AL 35631
Tel:  (256) 764-0095
Fax:  (256) 767-5705
Email: joey@bunchandjames.com

W. Daniel Miles, III – *Written Submissions Committee*
BEASLEY ALLEN CROW METHVIN PORTIS
  & MILES, P.C.
218 Commerce Street
Montgomery, AL 36104
Tel:  (800) 898-2034
Fax:  (334) 954-7555
Email: dee.miles@beasleyallen.com

Richard S. Frankowski – *Discovery Committee*
THE FRANKOWSKI FIRM, LLC
231 22nd Street South, Suite 203
Birmingham, AL  35233
Tel:  (205) 390-0399
Fax: (205) 390-1001
Email: richard@frankowskifirm.com

Peter H. Burke – *Class Certification Committee*
J. Allen Schreiber – *Litigation Committee*
BURKE HARVEY, LLC
3535 Grandview Parkway
Suite 100
Birmingham, AL  35243
Tel:  (205) 930-9091
Fax:  (205) 930-9054
Email:  pburke@burkeharvey.com
           aschreiber@burkeharvey.com

John C. Davis – *Written Submissions Committee*
LAW OFFICE OF JOHN C. DAVIS
623 Beard Street
Tallahassee, FL 32303
Tel:  (850) 222-4770
Email: john@johndavislaw.net

Michael C. Dodge – *Expert Committee*
GLAST PHILLIPS & MURRAY, P.C.
14801 Quorum Drive, Suite 500
Dallas, TX 75254
Tel:  (972) 419-7172
Email: mdodge@gpm-law.com

Mark K. Gray – *Discovery Committee*
GRAY & WHITE
713 E. Market Street, Suite 200
Louisville, KY 40202
Tel:  (502) 805-1800
Fax:  (502) 618-4059
Email: mgray@grayandwhitelaw.com

Michael E. Gurley, Jr. – *Discovery Committee*
Attorney at Law
24108 Portobello Road
Birmingham, AL 35242
Tel:  (205) 908-6512
Email: mgurleyjr@yahoo.com

Stephen M. Hansen – *Class Certification Committee*
LAW OFFICE OF STEPHEN M. HANSEN
1821 Dock Street
Tacoma, WA 98402
Tel:  (253) 302-5955
Fax:  (253) 301-1147
Email: steve@stephenmhansenlaw.com

Lynn W. Jinks, III – *Expert Committee*
Christina D. Crow – *Discovery Committee*
JINKS CROW & DICKSON, P.C.
219 North Prairie Street
Union Springs, AL 36089
Tel:  (334) 738-4225
Fax:  (334) 738-4229
Email: ljinks@jinkslaw.com
           ccrow@jinkslaw.com

24

Harley S. Tropin – *Damages Committee*
Javier A. Lopez – *Discovery Committee*
KOZYAK TROPIN &
   THROCKMORTON, P.A.
2525 Ponce De Leon Boulevard, 9th
Floor
Miami, FL 33134
Tel:  (305) 372-1800
Fax:  (305) 372-3508
Email: hst@kttlaw.com
        jal@kttlaw.com

Myron C. Penn – *Discovery Committee*
PENN & SEABORN, LLC
53 Highway 110
Post Office Box 5335
Union Springs, AL 36089
Tel:  (334) 738-4486
Fax:  (334) 738-4432
Email: myronpenn28@hotmail.com

C. Wes Pittman – *Settlement Committee*
THE PITTMAN FIRM, P.A.
432 McKenzie Avenue
Panama City, FL 32401
Tel:  (850) 784-9000
Fax:  (850) 763-6787
Email: wes@pittmanfirm.com

J. Preston Strom, Jr. – *Litigation Committee*
STROM LAW FIRM, LLC
2110 N. Beltline Boulevard, Suite A
Columbia, SC 29204-3905
Tel:  (803) 252-4800
Fax:  (803) 252-4801
Email: petestrom@stromlaw.com

Robert B. Roden – *Litigation Committee*
SHELBY RODEN, LLC
2956 Rhodes Circle
Birmingham, AL 35205
Tel:  (205) 933-8383
Fax:  (205) 933-8386
Email: rroden@shelbyroden.com

Thomas V. Bender – *Discovery Committee*
Dirk L. Hubbard
HORN AYLWARD & BANDY, LLC
2600 Grand Blvd., Suite 1100
Kansas City, MO 64108
Tel:  (816) 421-0700
Email:  tbender@hab-law.com
        dhubbard@hab-law.com

Gary E. Mason – *Class Certification Committee*
WHITFIELD BRYSON & MASON, LLP
1625 Massachusetts Ave. NW, Suite 605
Washington, DC 20036
Tel:  (202) 429-2290
Fax:  (202) 640-1160
Email: gmason@wbmllp.com

Gregory S. Cusimano – *Litigation Committee*
CUSIMANO, ROBERTS & MILLS, LLC
153 South 9th Street
Gadsden, AL  35901
Phone: (256) 543-0400
Fax: (256) 543-0488
Email:  greg@alalawyers.net

Michael L. Murphy – ***Discovery Committee***
BAILEY GLASSER LLP
910 17th Street, NW, Suite 800
Washington, DC  20006
Tel:  (202) 463-2101
Fax: (202) 463-2103
Email: mmurphy@baileyglasser.com

Brian E. Wojtalewicz
WOJTALEWICZ LAW FIRM, LTD.
139 N. Miles Street
Appleton, MN 56208
Tel:  (320) 289-2363
Fax:  (320) 289-2369
Email: brian@wojtalewiczlawfirm.com

Lance Michael Sears
SEARS & SWANSON, P.C.
First Bank Building
2 North Cascade Avenue, Suite 1250
Colorado Springs, CO 80903
Tel:  (719) 471-1984
Fax:  (719) 577-4356
Email: lance@searsassociates.com

Archie C. Lamb, Jr.
ARCHIE LAMB & ASSOCIATES, LLC
301 19th Street North, Suite 585
The Kress Bldg.
Birmingham, AL 35203-3145
(205) 458-1210
Email: alamb@archielamb.com

Jessica Dillon
Ray R. Brown
Molly Brown
DILLON & FINDLEY, P.C.
1049 W. 5th Avenue, Suite 200
Anchorage, AK  99501
Tel:  (907) 277-5400
Fax:  (907) 277-9896
Email:  Jessica@dillonfindley.com
        Ray@dillonfindley.com
        Molly@dillonfindley.com

Paul Lundberg
LUNDBERG LAW, PLC
600 4TH Street, Suite 906
Sioux City, IA  51101
Tel:  (712) 234-3030
Fax:  (712) 234-3034
Email:  paul@lundberglawfirm.com

Cynthia C. Moser
HEIDMAN LAW FIRM
1128 Historic 4th Street
P. O. Box 3086
Sioux City, IA  51101
Tel:  (712) 255-8838
Fax  (712) 258-6714
Email:  Cynthia.Moser@heidmanlaw.com

Gwen Simons
Simons & Associates Law, P.A.
P.O. Box 1238
Scarborough, ME 04070-1238
Tel: (207) 205-2045
Fax: (207) 883-7225
Email: gwen@simonsassociateslaw.com

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this the 24th day of May, 2018 electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ Joe R. Whatley, Jr.*
Joe R. Whatley, Jr.

27