# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| IN RE: BLUE CROSS BLUE SHIELD § | |
| § | **Master File** |
| § | **No. 2:13-CV-20000-RDP** |
| § | |
| ANTITRUST LITIGATION § | |
| (MDL NO.: 2406) § | |

## REPORT & RECOMMENDATION OF SPECIAL PRIVILEGE MASTER REGARDING SAMPLE DOCUMENTS FROM DEFENDANT HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY

R. Bernard Harwood, Jr., as the Court-appointed Special Privilege Master, submits the following report and recommendation as to the sample documents selected by Plaintiffs and provided by Defendants from Defendant Horizon Blue Cross Blue Shield of New Jersey's privilege log for which Defendant still maintains its assertion of privilege. Therefore, this "R&R" is complete for this set of samples.

## SUMMARY OF PERTINENT FACTS

On November 20, 2017, this Court requested that I "conduct an *ex parte* examination of documents identified for sampling under Discovery Order No. 76 to determine whether the claims of privilege have been made appropriately." (Doc. 1763). Subsequently, I have participated in various telephone conferences and in-person conferences with the parties and court. On December 15, 2017, I requested certain additional information from the Defendants as to the documents produced.

Plaintiffs were given the opportunity to respond to the information provided by Defendants. Further description of the general approach taken in my review can be found in my first Report & Recommendation (Doc. 1870).

Based on the information and process described above, I submit the following report and recommendation as to documents provided by Defendant Horizon Blue Cross Blue Shield of New Jersey:

[remainder of page intentionally blank]

| Doc. No. | Privilege Claimed: | Document Status: | Recommendation: | Comments: |
|---|---|---|---|---|
| HBCBSNJ-INCAMERA-00071585 | A-C | Withheld | Privilege Not Substantiated | First email in a string is from HBCBS Deputy General Counsel to two lay company officials, providing information on proposed changes to certain fees, and requesting "feedback" for transmission to "Bob" (unidentified) for his use as (per the Privilege Log) "Material for BCBSA CEO Working Group." The information on the fees which was indicated as being provided with the email is not now included. One of the recipient officials then emails a "Robert A. Marino" (not listed in the supplemental personal roster provided for this document but located by the Privilege Master in the roster for another HBCBNJ document, as the company's Chairman & Chief Executive Officer), with "cc" to the Deputy General Counsel and the other initial recipient, to express the sending official's views on the structure of the fees in question. The second company official forwards that email to the company Controller, who, in turn, provides information to a third official relating to costs relevant to the fee structure. The Deputy General Counsel is not copied on those last two emails, and his role in the earlier sequence of communications was simply to forward information with his first email that apparently wasn't compiled by him and which also apparently involved no legal advice or legal service purposes, as opposed to business and administrative matters. The actual content of his email and those to him reflect mere business content. |
| HBCBSNJ-INCAMERA-00076412 | A-C | Withheld | Privilege Not Substantiated | This document comprises a sequence of six emails. The first, sent by Cort Adelman, HBCBSNJ "Associate, State Government Affairs," who is also shown by the Privilege Log to be an attorney, served to forward a newspaper article to several company officials. The Privilege Log lists the "File Name" as "Re: MLR rebates from NJ insurers." The article lists amounts certain health insurers, including HBCBSNJ, might owe customers by way refunds for excess allocation of premium dollars to fund things other than actual medical care. Such rebates were to be pursuant to a federal "MLR Calculation." The Privilege Log lists "John Rogers, Esq.," a "cc" recipient |

| Doc. No. | Privilege Claimed: | Document Status: | Recommendation: | Comments: |
|---|---|---|---|---|
| | | | | of the email, as one of the "attorneys" involved, but he is listed in the supplemental personnel roster simply as "Manager, Government Affairs" with no "Esq." appended to his name, and he is not listed in any other document personnel roster for this company. At any rate, this initial email simply forwards the article without comment. The second email in the sequence is from Joanne Ryan, "Director, Actuarial," to Adelman, with "cc's" to others, explaining where the numbers in the article may have come from. The third email is from Gary Lin, "Vice President, Chief Actuary," to Ryan, with a "cc" to Adelman and other company officials, commenting on the misinterpretation of underlying data by the author of the article. Adelman then emails Lin to advise that certain non-company groups were planning to disseminate corrective information, and to ask Lin for some "context" for the numbers, for use if there were inquiries from "policy makers." By way of a fifth email, Lin advises Adelman, with cc's to others, about the sources and nature of the federal MLR calculation. The final email is from the company "PR Manager" to Lin, with Adelman and others copied, advising of efforts to communicate with the reporter of the news article to correct the errors in the article. Adelman's involvement seems to have been with respect to his stated company position, and not his incidental status as an attorney. In any event, no legal advice or services were offered by, or solicited from, him at any point. |
| HBCBSNJ-INCAMERA-00078212 | A-C | Withheld | Privilege Not Substantiated | An email from Defendant's "DPMO Manager 1, PMP" to 26 individuals, five of whom are shown by the supplemental personnel roster to be with "McKinsey" (about which no other information is provided) and the rest of whom are shown to be officials of Defendant, including its Deputy General Counsel. The "File Name" listed by the Privilege Log is "Meeting minutes from 3/8 Network Strategy session." This email simply transmits the meeting minutes, asks for review and reply if there are questions or concerns, and states the date of the next "Core Team" meeting. The minutes |

| Doc. No. | Privilege Claimed: | Document Status: | Recommendation: | Comments: |
|---|---|---|---|---|
| | | | | are not themselves now included. The Deputy General Counsel was simply one recipient email among many of the emails and no legal opinion was solicited from him. |
| HBCBSNJ-INCAMERA-00136546 | A-C | Withheld | Privilege Not Substantiated | The Privilege Log states "Redacted Document Previously Provided to Plaintiffs. The document, as submitted, consists of a blank "cover" page on which the hand-written notation "See pgs C7-C12" appears, followed by pages C1-C12 of a 1997 Report of an ad hoc committee of the Board of Directors. The single redaction designated appears on page C9, in the form of a two-line sentence referencing certain New Jersey litigation and its effect on limiting certain types of transactions. The "Attorneys" listed by the Privilege Log are simply "Legal Department" but no specific attorney is identified. 99% of the report having been produced in unredacted form, thereby indicating non-lawyer authorship, the isolated reference to the pendency of litigation about certain litigation pending in New Jersey, and the resultant limiting effect on a certain class of transactions, can easily be viewed as having lay authorship. No legal services or advice is reflected. |
| HBCBS-INCAMERA-00102409 | A-C; Work Product | Withheld | Privilege Substantiated in Part and Privilege Not Substantiated in Part | The "document" is a sequence of approximately 45 emails sent over a six-month period commencing November 26, 2016. The initiating email was from the Business Office Manager at a cardiology provider practice, inquiring about perceived coding and contracted fee schedule issues, particularly as impacted by a recent "Settlement Agreement" for certain litigation. Thereafter, over the course of approximately 38 emails extending up through May 20, 2009, various company officials weigh in to offer opinions, ask questions, reference data and discuss coding practices. No attorney copied or consulted up to that point. In an April 23, 2009 email the sending official notes that "the email chain is long and confusing." (That is in no small part due to the overlapping and partially repetitive format in which the emails are arranged, which is why the Privilege Master refers to |

| Doc. No. | Privilege Claimed: | Document Status: | Recommendation: | Comments: |
|---|---|---|---|---|
| | | | | there being "approximately" 45 emails in total.) Finally, in an email sent by the "Director, Actuarial" to several other officials on May 21, 2009, the query was made "who is the legal contact" for the coding and payment issues under discussion. Thirty-five minutes later on that same day (4:49 pm), another official sends an email reply to that director and two other officials, including Ann Marie Gibney, identified in the supplemental personnel roster as "Director, Clinical Code Integration," with copies to four other officials, including Colleen Brennan, listed in the roster as "Deputy General Counsel & Director of Corporate Compliance." The body of this email starts off, "Colleen/Ann Marie," and continues with a request for guidance and a specific query as to how the "Settlement" of the previously referenced litigation might impact possible coding edits. To the extent this email directs the request and query to Ms. Brennan, it represents a request for legal advice and is due protection under the attorney-client privilege. Although Ms. Brennan is "cc'd" on the emails thereafter exchanged among various officials, the email chain contains no response by her and none of the succeeding emails attribute any advice, opinion or other input to her. The various requests and information thereafter expressed in emails are simply factual and business oriented, with no apparent overlay of legal analysis. Therefore, the May 21, 2009, 4:49 pm email will be redacted but none of the other emails are shown to be eligible for the attorney-client privilege. The second privilege asserted, attorney work product, finds no support from any content of any email. |
| HBCBSNJ-INCAMERA-00123468 | A-C | Withheld | Privilege Substantiated in Part and Privilege Not Substantiated in Part | The first of the two emails constituting this document was sent by Defendant's Director, National Account Manager to the Senior Vice President, with copies to two other officials and the Assistant General Counsel, Neil Sullivan. The File Name stated in the Privilege Log is "Fw: Memorandum of Understanding regarding the Tyco, BCBSAL & Horizon arrangement." Attached to the email, but not now included, were |

| Doc. No. | Privilege Claimed: | Document Status: | Recommendation: | Comments: |
|---|---|---|---|---|
| | | | | "comments" by BCBSAL on the proposed memorandum of understanding. In addition to posing a question to the Senior Vice President, the sender solicited from "Neil" his opinion on the content and implications of BCBSAL's comments.  The second email is the Senior Vice President's reply to the Director, National Account Manager, with copies to the rest of the original recipients.  In his email, the Senior Vice President expresses a range of objections to the BCBSAL's comments and directs the Director to advise BCBSAL that the changes they incorporated were totally unacceptable.  The positions stated by the Senior Vice President appear to be purely business-based with no overtones of legal analysis.  The two sentences of the first email starting with "Neil," and representing legal advice queries to the Assistant General Counsel, are entitled to protection as attorney-client communication, and are to be redacted.  The rest of that first email, and the entire of the second email, do not qualify for such protection. |
| HBCBSNJ-INCAMERA-00239040 | A-C | Withheld | Privilege Substantiated as to the Redactions | Two redactions in a four-email sequence concerning "Geo Maps."  In the first one the "Provider Strategy Coordinator" advises the "Manager, Informatics" that she "needs the revised maps ASAP" and "Also, legal would like [description redacted, but relating to particularly specialized additional maps]."  The second and third emails are between those two employees and discuss the exact types and number of maps needed.  The final email is from the Provider Strategy Coordinator to the company Associate General Counsel, delivering to him the requested specialized maps.  The Manager and two other company personnel in the "Informatics" department are copied.  The very short accompanying message is redacted.  The request transmitted in the first email on behalf of "Legal" may reasonably be inferred to have originated with the Associate General Counsel and the following emails all facilitated the development and delivery of the materials he needed for the rendition of his legal services. |

| Doc. No. | Privilege Claimed: | Document Status: | Recommendation: | Comments: |
|---|---|---|---|---|
| HBCBSNJ-INCAMERA-00243291 | A-C | Withheld | Privilege Not Substantiated | The first of two emails is from "cobranding" at BCBSA and attaches a memorandum (not now provided) inviting feedback on certain preliminary recommendations regarding seven co-branding entities. The second email is from an "Attorney Agent" in the "Legal Affairs" department of Defendant, relaying the BCBSA memorandum to six upper level company officials, including the Assistant General Counsel and the Deputy General Counsel. (Recipient official Thomas Rubino is shown in the supplemental personnel roster to be the "Director, Public Affairs & Advertising," with no "Esq." added to his name, but the Privilege Log, in addition to appending "Esq." to the names of the Assistant and Deputy General Counsels, appends it to Mr. Rubino's name. The "Attorneys" listed at the bottom of the log are only the Assistant and Deputy General Counsels. The Privilege Master concludes Mr. Rubino was not acting as an attorney in connection with this document.) (Addendum: In an email chain later encountered by the Privilege Master in his analysis of document HBCBSNJ-INCAMERA-00243637, an email sent by Mr. Rubino is signed "Thomas W. Rubino, Esq., Director, Public Affairs & Advertising." Thus, it appears that he has his law degree, but is not generally functioning as a lawyer in his position with HBCBSNJ.) The email from the Attorney Agent to six of Defendant's officials noted that "Elitza" (not identified otherwise for this sample) had suggested that the Assistant General Counsel provide his "view" of the "first recommended" entity. There is no indication that the two counsel were being asked to provide legal opinions or evaluations of the entities being vetted, but rather that they, the same as the other four officials, were simply being asked to provide assessments and comments based on their respective knowledges of the entities, drawn from whatever experience and sources of information they each had. |

| Doc. No. | Privilege Claimed: | Document Status: | Recommendation: | Comments: |
|---|---|---|---|---|
| HBCBSNJ-INCAMERA-00243635 | A-C | Withheld | Privilege Not Substantiated | This document is an email from Defendant's Deputy General Counsel to company officials Christopher Lepre and William Georges. The Email Subject section of the Privilege Log states "FW: BEPC." The supplemental personnel roster identifies Mr. Lepre as "Senior Vice President, Market Business Units" and Mr. Georges as "Vice President, Marketing & Product Development." No "Esq." is appended to Mr. Georges' name in the roster, but the Privilege Log reference to him as a recipient of the email puts that appellation opposite his name. The "Attorneys" section of that log lists only the Deputy General Counsel. Therefore, the Privilege Master considers Mr. Georges not to be presented as an attorney for the purposes of the analysis of this document. The Deputy General Counsel's email notes that he is preparing a summary document for "Bob" of material for an upcoming "BFPC" meeting, said material stated to be attached to the email but not now provided. ("Bob" is not identified in the subject personnel roster or otherwise for this sample, but a search of other personnel rosters submitted with this set of samples locates various Roberts and Bobs, including "Bob Kolodgy," identified at one place as executive vice president and CEO and at another as executive vice president and CFO.) While the "summary document" the Deputy General Counsel was going to prepare for "Bob" might include input of legal advice or opinion, the Privilege Master is left just to speculate about that. Certainly, the solicitation of comments and concerns about the materials from the two lay officials calls into question the purpose and focus of the summary. This is an ambiguous situation, but on the basis of the four corners of what is before the Privilege Master, and in light of it being Defendant's burden to show entitlement to the protection of the attorney-client privilege, the Privilege Master deems the claim of that privilege not to be substantiated by what is before him. |

| Doc. No. | Privilege Claimed: | Document Status: | Recommendation: | Comments: |
|---|---|---|---|---|
| HBCBSNJ-INCAMERA-00243637 | A-C | Withheld | Privilege Not Substantiated | A six-email sequence with three redacted segments.  The first email is from Linda Willett, HBCBSNJ "Senior Vice President, General Counsel & Secretary," to six company officials.  The purpose of the email was to forward to the recipients a list of BCBSA activities and programs, for which BCBSA was requesting feedback from HBCBSNJ to see if those activities/programs could operate more efficiently.  Ms. Willett was serving as HBCBSNJ Liaison to BCBSA and the list had been sent to her by the General Counsel of BCBSA, in his capacity as the Associations' Plan Liaison for HBCBSNJ.  The entire text of her email is redacted.  The second email is from a recipient of the first one to a non-recipient company official, asking him to "handle this."  The third email is from that new recipient to another new recipient, Thomas Rubino, asking him to prepare answers for "item #1."  Mr. Rubino emails back the same day to provide answers to that item.  He signs his email by appending "Esq." to his name, followed by the title "Director, Public Affairs & Advertising."  The Privilege Log lists only Ms. Willett as an involved attorney.  The entire text of Mr. Rubino's email is redacted.  He copied the "Director, Marketing Strategy" on his email and the main recipient of that email then emailed that copied recipient to ask if he had anything to add.  That recipient promptly replied, with a copy to Mr. Rubino, to express his agreement with Rubino's comments and to add some of his own.  This text is also redacted.  Despite Ms. Willett's involvement in the process, the Privilege Master discerns no legal services, analysis, opinion or advice in any of the redacted email portions, nor any request for such by anyone participating.  The list of BCBSA activities for which feedback was requested, described various areas of Association-Plan interactions, and Association services and programs, but none of the descriptions implicated legal issues.  The Privilege Master's review of all of the redacted texts detects no legal services, analysis, opinion or advice sought or offered, with all of the activities/programs described and all of the "feedback" answers and observations, seemingly relating only to business, administrative and strategic practices. |

| Doc. No. | Privilege Claimed: | Document Status: | Recommendation: | Comments: |
|---|---|---|---|---|
| HBCBSNJ-INCAMERA-00406050 | A-C | Withheld | Privilege Substantiated | The first of three emails in a sequence generated March 25, 2014, is from HBCBSNJ Deputy General Counsel jointly to the company's Senior Vice President, Market Business Units, and its Senior Vice President, General Counsel & Secretary, with the Senior Vice President, Service, and the Director, Government & Regulatory Affairs, being copied. The email subject, per the Privilege Log, is "Meeting with DOBI – Discussion on Small Group Product Designs." Although the "DOBI" is not otherwise identified, the description of the meeting in this first email indicates it is a regulatory agency, perhaps "Department of _____ Insurance." At any rate, the summary of the views and advisements expressed during the meeting reflect in some places a legal-based analysis of implications for the subject at hand of provisions of the Affordable Care Act. Although the attorneys directly involved in this email are only the aforementioned two, the summary describes various views and advice expressed by "Neil Sullivan," who the Privilege Master knows from the personnel roster for another document in this set of samples, to be the Assistant General Counsel of HBCBSNJ. At one point in this email the sending Deputy General Counsel reminds the recipients of research the legal department had done on "possible actions against DOBI and/or our competitors related to this matter," which course of action ultimately was not pursued. The second email is the response from the Director, Government & Regulatory Affairs, commenting on his perception of certain aspects of the meeting with DOBI and noting an opinion expressed by Neil Sullivan. The third email, sent by the Senior Vice President, Market Business Units to a variety of company officials, is reproduced only to the extent of its date and time, the sender's name, the recipients, and the repeated email subject; no text is shown. Taken as a whole and in context, the emails represent communications designed to facilitate the renditions of legal services, and are entitled to protection as such. |

| Doc. No. | Privilege Claimed: | Document Status: | Recommendation: | Comments: |
|---|---|---|---|---|
| HBCBSNJ-INCAMERA-00514557 | A-C | Withheld | Privilege Substantiated | The lead email to this three-email string was sent by Michael Kaplan, identified in the supplemental personnel roster as "Esq." and the company's Deputy General Counsel. The Privilege Log "Email Subject" entry is "Re: Application for Exemption from BCBSA Uncoupling Regulations." The recipients of this initial email three company officials, including John Campbell, "Senior Vice President, General Counsel & Secretary," designated an "Esq." For some reason, the Privilege Log lists as the "Attorneys" only Mr. Campbell. Mr. Kaplan's email recites the details of a telephone call he'd received from "Paula Taffe," who is not identified in connection with this sample, but the Privilege Master knows from numerous other sample sets of other defendants that she was the Chief Brand Counsel for BCBSA. Mr. Kaplan recounts various features of the discussion between him and Ms. Taffe, noting at one point that "we had a complicated legal discussion" about a principle underlying "test." The primary purpose of the Kaplan email is to provide legal services to client officials in the form of explanations of certain issues, principally legal ones. The second email is simply Mr. Kaplan's forwarding of the first email to the company's Vice President, Office of Healthcare Reform, whom he'd neglected to include on the first transmission. The final email is from that official to Kaplan, with copies to the recipients of the original email from Kaplan, offering an observation and recommendation about a next step. All in all, this email sequence represents communications from and to a company lawyer to a select group of company officials including Mr. Campbell, about matters involving Mr. Kaplan's rendition of legal services. |

Contemporaneous with the filing of this Report & Recommendation, the samples discussed herein will be delivered to the court to be maintained *in camera*, in accordance with this Court's order. (Doc. 1763).

Done this the 30th day of May, 2018.

                                    Respectfully submitted,

                                    *R. Bernard Harwood, Jr.*
                                    **R. Bernard Harwood, Jr.**

Rosen Harwood, P.A.
2200 Jack Warner Pkwy
Suite 200
Tuscaloosa, AL 35401
Telephone: (205) 344-5000
Facsimile:  (205) 758-8358
bharwood@rosenharwood.com