## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **IN RE: BLUE CROSS BLUE SHIELD** | ) | **Master File No. 2:13-CV-20000-RDP** |
| **ANTITRUST LITIGATION** | ) | |
| **(MDL No. 2406)** | ) | **This document relates to all cases.** |

## MEMORANDUM OPINION REGARDING CERTIFICATION
## UNDER 28 U.S.C. § 1292(b)

This matter is before the court on Defendants' Motion for Certification under 28 U.S.C. § 1292(b). (Doc. # 2085). The Motion has been fully briefed. (Docs # 2085-1, 2122, 2124, 2139). The court has also reviewed the reports it ordered the parties to submit related to Defendants' Motion. (Docs. # 2181, 2182, 2184).

In their Motion, Defendants ask the court to amend and certify its April 5, 2018 Memorandum Opinion and Order Regarding Section 1 Standard of Review and Single Entity Defense[1] for immediate interlocutory appeal to the Eleventh Circuit. (Doc. # 2085). Specifically, Defendants request that the court amend its April 5, 2018 Order to state that the following question meets Section 1292(b)'s requirements:

> Whether territorial restraints or output restrictions, in isolation or in aggregation, that are not the result of a naked, horizontal agreement must be evaluated under the per se rule.

(Doc. # 2085). Defendants further request that the court permit an immediate interlocutory appeal of the Order. (*Id.*). Plaintiffs oppose the motion. (Docs. # 2122, 2124). For the following reasons, Defendants' Motion is due to be granted in part. The court will permit a § 1292(b) appeal but will certify a rephrased, clarified question.

---

[1] (Docs. # 2063 and 2064).

## I.      Background

The Blue Cross Blue Shield System facilitates health care coverage for more than 100 million Americans. (Doc. # 2085-1 at 6). Today, it is often the only health insurance option in rural areas and on many public exchanges under the Affordable Care Act. (*Id.*).

This multidistrict litigation involves allegations by two separate putative class tracks that Defendants have, among other things, violated the Sherman Act by agreeing to allocate exclusive geographic service areas, imposing output restrictions, fixing prices for certain products and services secured from health care providers, and boycotting health care providers who reside outside of a Plan's allocated geographic service area. Eighty-four cases, many of them class actions, have been filed and consolidated in this MDL, and fifty-seven remain pending. Plaintiffs in this MDL estimate that the alleged classes cover approximately 110 million people, or one in every three Americans. Plaintiffs seek billions of dollars in damages. This MDL is reportedly one of the largest (if not the largest) antitrust litigations ever filed.

In its April 5, 2018 Memorandum Opinion and Order, the court held that "Defendants' aggregation of a market allocation scheme together with certain other output restrictions is due to be analyzed under the per se standard of review, " and that "BlueCard and other alleged Section 1 violations are due to be analyzed under the Rule of Reason." (Doc. # 2063 at 59).

## II.     Standard of Review

28 U.S.C. § 1292(b) provides, in relevant part:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

28 U.S.C. § 1292(b). If the district judge certifies an order in this manner, the court of appeals has discretion to permit an appeal. *Id.*

This court fully understands that appellate review is generally postponed until after the entry of final judgment in a case. Certification of an issue for interlocutory appeal is reserved for truly exceptional cases. *Judicial Watch v. Nat'l Energy Policy Dev.*, 233 F.Supp.2d 16, 20 (D. D.C. 2002). It is a "rare exception" to the rule that appellate review is to be conducted after final judgment. *See McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1264 (11th Cir. 2004); *see also OFS Fitel, LLC v. Epstein, Becker & Green, P.C.*, 549 F.3d 1344, 1359 (11th Cir. 2008) (noting that § 1292(b) "sets a high threshold for certification to prevent piecemeal appeals" and that "[m]ost interlocutory orders do not meet this test").

To obtain certification of an interlocutory order under § 1292(b), a party must demonstrate that (1) the order presents controlling questions of law (2) over which there is a substantial ground for difference of opinion among courts, and (3) the immediate resolution of the issues would materially advance the ultimate termination of the litigation. *See McFarlin*, 381 F.3d at 1257-59; 28 U.S.C. § 1292(b). A question of law is controlling if its resolution will "determine the outcome or even the future course of the litigation." *Judicial Watch*, 233 F.Supp.2d at 19 (internal citations omitted).

Defendants shoulder the burden of persuading the court "that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978) (citation and internal quotation marks omitted). "Certification is appropriate in 'situations in which the court of appeals can rule on a pure, controlling question of law without having to delve beyond the surface of the

record in order to determine the facts' and resolution of that question 'could shorten the time, effort, and expense of the litigation.'" *Colonial BancGroup Inc. v. PricewaterhouseCoopers LLP*, 2017 WL 4176468, at *2 (M.D. Ala. Sept. 1, 2017) (quoting *McFarlin*, 381 F.3d at 1259).

The decision whether to certify the April 5, 2018 Order for immediate appeal is within the sound discretion of this court. See *OFS Fitel, LLC*, 549 F.3d at 1359 (noting the § 1292(b) certification is "wholly discretionary" with both the district and the circuit court). Similarly, if a district court certifies a question for interlocutory appeal, the court of appeals has the discretion to grant or deny the request. Of course, even when it agrees to answer a question, the circuit court is free to rephrase the question. *Drummond Co., Inc. v. Conrad & Scherer, LLP*, 885 F.3d 1324, 1337 (11th Cir. 2018).

With these principles in mind, the court addresses each of these § 1292(b) elements, in turn.

## III.    Discussion

The relevant questions before the court are whether (1) the court's April 5 Order presents a controlling question of law (2) over which there is a substantial ground for difference of opinion among courts, and (3) the immediate resolution of the issues would materially advance the ultimate termination of the litigation.

### A.    Controlling Question of Law

Defendants argue that their proposed question and the issue of the applicable standard of review is a controlling question of law. (Doc. # 2085-1 at 9-10; Doc. # 2139 at 13-14). Subscriber Plaintiffs assert that Defendants' proposed question is not purely legal and is not determinative of the outcome or future course of the case. (Doc. # 2124 at 10-11). Provider Plaintiffs assert that

4

Defendants' proposed question is not sufficiently implicated by the court's April 5 Opinion and Order. (Doc. # 2122 at 7).

The Supreme Court, the Eleventh Circuit, and other courts of appeal have all accepted interlocutory appeal questions under 28 U.S.C. § 1292(b) regarding whether certain agreements are illegal per se under section 1 of the Sherman Act. *See*, *e.g.*, *Arizona v. Maricopa Cty. Med. Soc.*, 457 U.S. 332, 335-36 (1982); *Valley Drug Co. v. Geneva Pharm., Inc.*, 344 F.3d 1294, 1295 (11th Cir. 2003) (accepting interlocutory appeal from the district court's order granting plaintiffs' motion for partial summary judgment and holding that the agreements among the defendants were per se violations of § 1 of the Sherman Act); *In re Cardizem CD Antitrust Litig.*, 332 F.3d 896, 900 (6th Cir. 2003) (accepting interlocutory appeal on the question of whether a particular agreement constitutes a restraint of trade that is illegal per se under section 1 of the Sherman Antitrust Act). In fact, in *McFarlin*, the Eleventh Circuit explained that § 1292(b) was prompted by a proposal from a committee of judges appointed by the Chief Justice to study the matter of interlocutory appeals which cited "antitrust and similar protracted cases" as examples of cases where interlocutory orders should be allowed. *McFarlin,* 381 F.3d at 1256.

Here, determining the appropriate standard of review will drive virtually every future key judicial decision that this MDL transferee court will make. It will, at a minimum, affect the court's *Daubert,* class certification, and summary judgment rulings. Candidly, the court and the parties are at a crossroad, and the standard of review ruling will literally direct them as to which way to continue this litigation. Therefore, the court finds that there is little doubt that the standard of review applicable to a Sherman Act claim is a controlling question of law which is determinative of the future course of this litigation.

### B.    Substantial Ground for Difference of Opinion

Defendants argue that "this is not a case in which there is 'complete and unequivocal agreement' or that the 'resolution [is] so clear.'" (Doc. # 2085-1 at 12). They contend that the "evolving authority" regarding the application of the per se rule to horizontal market allocations confirms that there is room for a difference of opinion on that issue. (*Id.*). Plaintiffs argue that there is no substantial ground for a difference of opinion because *United States v. Topco Associates., Inc.*, 405 U.S. 596 (1972) and *United States v. Sealy, Inc.*, 388 U.S. 350 (1967) are valid, binding precedent and compelled the result which the court reached. (Docs. # 2122 at 10-11; 2124 at 13-14).

To be clear, the court is confident that its decision regarding the applicable standard of review is correct. However, the court understands why Defendants contend that there is substantial ground for a difference of opinion regarding application of the per se standard of review. Since *Sealy* and *Topco* were decided, the Supreme Court has held that courts must "presumptively appl[y] rule of reason analysis." *Texaco Inc. v. Dagher*, 547 U.S. 1, 5 (2006). And, the Court has criticized a "literal approach" of applying the per se standard of review to any practice that can be labeled a per se category. *Broad. Music, Inc. v. Columbia Broad. Sys., Inc.*, 441 U.S. 1, 9 (1979).

In *Rothery Storage & Van Co. v. Atlas Van Lines, Inc.*, Judge Bork of the District of Columbia Circuit specifically questioned the ongoing precedential value of *Topco* and *Sealy*. 792 F.2d 210, 226 (D.C. Cir. 1986) ("An examination of more recent Supreme Court decisions, however, demonstrates that, to the extent that *Topco* and *Sealy* stand for the proposition that all horizontal restraints are illegal per se, they must be regarded as effectively overruled."). The *Rothery* court found that, in *Broadcast Music, Inc. v. Columbia Broadcasting System*, 441 U.S. 1

6

(1979), *National Collegiate Athletic Association v. Board of Regents*, 468 U.S. 85 (1984), and

*Northwest Wholesale Stationers, Inc. v. Pacific Stationery & Printing Co*., 472 U.S. 284 (1985),

"[t]he Supreme Court reformed the law of horizontal restraints." *Rothery*, 792 F.2d at 226; *see also*

*Addamax Corp. v. Open Software Found., Inc.*, 152 F.3d 48, 51–52 (1st Cir. 1998) (quoting *U.S.*

*Healthcare, Inc. v. Healthsource, Inc*., 986 F.2d 589, 593 (1st Cir. 1993)) (describing the "ever

narrowing per se niche").

Commentators have also observed, more recently, that the Supreme Court has narrowed its

application of the per se rule. Herbert Hovenkamp & Christopher R. Leslie, *The Firm as Cartel*

*Manager*, 64 Vand. L. Rev. 813, 864-65 (2011) (explaining that *Topco* and *Sealy* "have been

rightfully criticized for applying an overly aggressive per se rule"); Benjamin Klein, *Single Entity*

*Analysis of Joint Ventures After* American Needle*: An Economic Perspective*, 78 Antitrust L.J.

669, 684 (2013) ("The territorial market allocation between Sealy licensees, which the Supreme

Court found was per se unlawful in 1967, certainly would not be considered a per se offense

today.").

Again, the court recognizes all these arguments. Although the court considered and

rejected them (and others like them)[2], it also acknowledges that the question here is not whether

the court believes that it erred in its conclusion. *Reese v. BP Expl. (Alaska) Inc*., 643 F.3d 681, 688

(9th Cir. 2011). Moreover, the court comprehends that even though it has little (if any) question

about the application of the per se rule to the aggregation of restrictions at issue here, "[t]he level

---

[2] Although it goes without saying that the court earnestly believes it "got it right," the court also understands that a lot is riding on the standard of review ruling. Judicial modesty and common sense call the court to this reality: "aggregation of [this many critical class actions] means aggregation of the amount at stake," Andrew S. Pollis, *The Need for Non-Discretionary Interlocutory Appellate Review in Multidistrict Litigation*, 79 Fordham L. Rev. 1643, 1668 (2011), and this type of pretrial ruling in this MDL litigation has a "dramatically larger impact" than a similar ruling would have in non-aggregated litigation. *Id.*

of uncertainty required to find a substantial ground for difference of opinion should be adjusted to meet the importance of the question in the context of the specific [litigation]." 16 Charles Allen Wright, et al., *Federal Practice & Procedure* § 3930 (3d ed. 2012).

The stakes in this multidistrict litigation are high. The parties estimate that one out of every three Americans has health coverage through the Blues. The parties have poured millions of dollars and untold hours into this litigation. If the Eleventh Circuit were to disagree with the court's ruling, finding out sooner (rather than later) would save millions more dollars and, potentially, years of full-scale litigation, not to mention the potential for avoiding the need for re-trial of a number of protracted bellwether trials. Therefore, the court concludes that this element is met.

### C.    Materially Advance the Termination of the Litigation

Recently, the Eleventh Circuit held that, in order for an interlocutory appeal on a particular question to be appropriate, it must be the case that "resolution of the question may reduce the amount of litigation necessary on remand." *Drummond Co.*, 885 F.3d at 1336 (citing *McFarlin*, 381 F.3d at 1259). Defendants argue that this element is satisfied because, as noted above, "[t]he consequences of applying the wrong standard here are particularly severe: years of litigation would have to be redone and a lengthy case tried again." (Doc. # 2085-1 at 21). They further argue that "[e]fficiency would be best served by getting definitive guidance on the standard of review now so that class certification, merits expert, and summary judgment proceedings can occur with the benefit of that guidance rather than having to be redone after the Eleventh Circuit rules." (Doc. # 2139 at 20).

8

Subscriber Plaintiffs respond that "the possibility of retrial is present in virtually every case involving a disputed legal issue (or jury instruction) that goes to trial, and that does not justify routine departure from the final judgment rule." (Doc. # 2124 at 19). Both Plaintiff tracks appear to be willing to prepare class certification motions and briefing, expert reports, and dispositive motions under both standards of review, on an alternative basis, so that "nothing will have to be redone" if the Eleventh Circuit ultimately determines the court was wrong on the standard of review.[3]  (Doc. # 2122 at 17). But this approach simply does not adequately account for the unique size and scope of this litigation.

In fact, this concession itself illustrates that a decision now on the standard of review "may reduce the amount of litigation necessary." *Drummond*, 885 F.3d at 1336. The elements of Plaintiffs' § 1 claims depend on whether the rule of reason or per se rule applies. Under either standard of review, Plaintiffs must prove an agreement, antitrust impact, and damages. *See, e.g., Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 341-42 (1990); *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 107-08 (2d Cir. 2007). In a per se case, evidence of a formal antitrust market definition is generally not required. *See NCAA*, 468 U.S. at 100. But, rule of reason claims require Plaintiffs to present evidence on the following additional elements: (1) properly defined product and geographic markets; (2) actual or potential harm to competition in each of those properly defined markets; and (3) a balancing of procompetitive benefits against that purported anticompetitive harm. *See, e.g., Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1336 (11th Cir. 2010) (stating that "[u]nder rule of reason analysis, a plaintiff may show either actual or

---

[3] In their memorandum discussing class certification, Provider Plaintiffs have proposed a shortcut. They suggest the court conduct a "bellwether" trial to be conducted this year before this court considers *Daubert* motions (for the bevy of experts likely to be brought before the court), class certification, or other motion practice that typically precedes trial. As explained during the June 11, 2018 telephone conference with the parties, though, the court believes the best course is to bellwether the Alabama litigation, not just an early Alabama trial.

potential harm to competition" and "must identify the relevant market in which the harm occurs"); *Levine v. Cent. Fla. Med. Affiliates, Inc.*, 72 F.3d 1538, 1551 (11th Cir. 1996) ("Rule of reason analysis requires the plaintiff to prove . . . an anticompetitive effect of the defendant's conduct on the relevant market[.]"); *In re Pharmacy Benefit Managers Antitrust Litig.*, 2017 WL 275398, at *2 (E.D. Pa. Jan. 18, 2017), *reconsideration denied*, 2017 WL 1493029 (E.D. Pa. Apr. 26, 2017) ("product and geographic market definitions and market power [are relevant] only to the rule of reason claim."). Under Plaintiffs' current proposal, the court would be called upon to address, at the class certification phase, whether these rule of reason issues are capable of common proof, even the court has found the standard of review is per se. *See In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 20 (1st Cir. 2008) ("[A] district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case [and] [i]n antitrust class actions, common issues do not predominate" if they "cannot be established through common proof.").

Without certification of the court's April 5 Order and an appellate ruling on the standard of review, the parties and the court will be performing expensive, duplicative work. They will obtain alternative expert reports and brief different class certification issues which would be otherwise unnecessary or inapplicable if the Eleventh Circuit affirms the April 5 Order. They will present the court with additional *Daubert* and summary judgment arguments. They may be called upon to present to multiple juries in separate bellwether trials issues that would not be in play if the per se rule (or, for that matter, the rule of reason) applied. As Defendants correctly argue, "[r]ather than double the work for all parties and the [c]ourt under two different standards, it is far more sensible

to obtain a definitive ruling on the appropriate standard of review now." (Doc. # 2139 at 22).[4]  This litigation is already incredibly expensive for the parties and time-consuming for everyone. Therefore, the court unhesitatingly finds that the reduction of any duplication of effort and expense materially advances the litigation.[5]

Finally, "a decision on this issue may help to advance settlement, a factor that courts have found significant in permitting interlocutory appeals to proceed." *Scott v. Ruston Louisiana Hosp. Co., LLC*, 2017 WL 1364219, at *5 (W.D. La. Apr. 12, 2017) (citing *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536 (7th Cir. 2012) ("uncertainty about [the issue in the interlocutory appeal] may delay settlement . . . and by doing so further protract the litigation. That is enough to satisfy the 'may materially advance' clause of section 1292(b)")). The court finds that resolution of the applicable standard of review question by the Eleventh Circuit would materially advance the termination of this litigation (as well as bring clarity in other cases). Given the nationwide scope and importance of this multidistrict litigation, the need for § 1292(b) review is particularly compelling. [6]

---

[4]  Subscriber Plaintiffs' lead counsel, Mr. Boies, has conceded that class certification issues will be informed and affected by the standard of review. (Docs. # 1469 at 6 ("I think the Court's consideration of [class certification] is going to be more orderly, if the Court has the benefit of the standard of review decision."); 2110 at 25)) ("some of the arguments made [on class certification] may be affected by the standard of review"). The court always appreciates that type of candor.

[5]  Separate and apart from the effect the court's ruling will have on these cases as they proceed down a litigation track, it is equally plain that the court's conclusion will likely affect the parties' settlement prospects. In MDL litigation, particularly MDL litigation of this size and complexity, it makes sense for parties to have key rulings which impact case values reviewed by an appellate panel before deciding whether to "call or raise."

[6]  The court understands that the question of appeals of MDL transferee court rulings has garnered substantial attention lately. Academics and certain segments of the Bar have weighed in, arguing that there should be immediate, non-discretionary appeals of certain interlocutory orders in Multidistrict Litigation. *See. E.g.* A. Pollis, 79 Fordham L. Rev. 1643. And, a bill passed by the United States House of Representatives in 2017 would *require* a federal appeals court to accept an interlocutory appeal of an order made in an MDL proceeding if the order is applicable to any action seeking personal injuries and the immediate appeal "may materially advance the ultimate termination of one or more civil actions in the proceedings." Fairness in Class Action Litigation and Furthering Asbestos Claim Transparency Act of 2017, H.R. 985, 115th Congress § 104 (2017) (proposed amendment to 28 U.S.C. § 1407). It also would *require* a

## IV.     Conclusion

For the reasons discussed above, the court believes an interlocutory appeal of the April 5, 2018 Order under § 1292(b) is appropriate. The governing legal standard will have a controlling effect on this case. Having said that, the court agrees with Provider Plaintiffs that an answer to Defendants' proposed question (Doc. # 2085) will not necessarily address the substance of the court's April 5 Opinion and Order. (Doc. # 2122 at 7).[7] Accordingly, the court rephrases the question as follows:

> Whether *Topco*, *Sealy*, and *Palmer* remain viable and require the application of the per se rule to a combination of restraints, involving horizontal market allocation and horizontal output restrictions, agreed to by competitors and potential competitors, where Defendants claim, under *BMI*, that there are at least arguable procompetitive benefits to the combination?

This inquiry presents a pure question of law which the Eleventh Circuit "can decide quickly and cleanly without having to study the record." *McFarlin*, 381 F.3d at 1258 (quoting *Ahrenholz*, 219 F.3d at 677).

The court will amend the April 5 Order (Doc. # 2064) to provide the §1292(b) certification.

**DONE** and **ORDERED** this June 12, 2018.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE

---

federal appeals court to accept an appeal from an order granting or denying class certification. *Id* at § 103. The court's strongly held position is that the procedure provided for by § 1292(b) is the correct one. The district court is in the best position to strike the balance between the need to gain certainty as to a ruling on a legal question (on the one hand), and the concern that such an appeal is sought for an illegitimate purpose or will disrupt the litigation (on the other). Here, the court is convinced interlocutory appellate review will aid the parties and the court.

[7] Similarly, the court disagrees in substantial part with the Blues' characterization of its partial summary judgement ruling in its April 5 Opinion. Suffice it to say that the court believes the opinion speaks for itself.