FILED

2019 Feb-22  PM 04:51
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

|  |  |  |
|---|---|---|
| IN RE:  BLUE CROSS BLUE SHIELD ANTITRUST LITIGATION (MDL No. 2406) | ) ) ) ) ) ) | **Master File No. 2:13-CV-20000-RDP**  This document relates to all cases. |

# DEFENDANTS' RESPONSE TO PLAINTIFFS' JOINT MOTION TO SET CASE SCHEDULE

Defendants have proposed an efficient, common-sense schedule that allows the Court to decide class certification by January 2020 and hold a single trial on all issues in 2021.   By contrast, Plaintiffs propose a piecemeal schedule that contemplates multiple class certification and trial phases for several more years into the future.   Plaintiffs' proposal should be rejected because it is inefficient, prejudicial and contrary to law.

**First**, Plaintiffs' schedule is inefficient.  Plaintiffs propose to simultaneously brief merits and class certification, which could require the parties to relitigate their class-dependent motions following the Court's class certification ruling.   For example, under Plaintiffs' schedule, a summary judgment motion based on no classwide impact must be filed before class certification is issued.  That makes no sense.  Moreover, Plaintiffs themselves cannot agree on an approach.  Subscriber

Plaintiffs seek two trials to bifurcate liability and damages that would extend out to 2023, while Provider Plaintiffs propose a single trial.

**Second**, Subscriber Plaintiffs' proposal is highly prejudicial.  As an initial matter, Subscribers' assertion that this bifurcation is required by insufficient data is a pretext; indeed, even Provider Plaintiffs acknowledge they have enough data to proceed.  Rather, Subscriber Plaintiffs propose this schedule to delay as long as possible adjudication of the significant problems with class certification on damages.  Subscribers should not be allowed to use bifurcation to shirk their burden of proving classwide damages.

**Third**, Plaintiffs' proposals contravene established law in several respects. Plaintiffs' proposal to bifurcate liability and damages would run afoul of the Seventh Amendment's Reexamination Clause by requiring two different juries to consider the interwoven issues of impact and damages.  Further, as discussed in Defendants' status report (and confirmed by the very cases Plaintiffs cite), Plaintiffs' schedule invites a violation of the rule against one-way intervention.

**Fourth**, Plaintiffs are not helped by Providers' citation to articles discussing hospital closures.  Those articles are inapposite, and the conclusions that Plaintiffs seek to draw from them are incorrect in any event.

## I.    PLAINTIFFS' PROPOSAL IS INEFFICIENT.

### A.    Plaintiffs' Proposed Schedule Is Significantly Longer Than Defendants' Proposal.

Plaintiffs wrongly claim that Defendants are seeking indefinite delay in this case.  Subscriber Pls.' Joint Mem. of Law in Supp. of Mot. to Set Case Sched., Dkt. 2381 ("Pls.' Br.") at 1.  In fact, as shown in the timeline below, it is *Plaintiffs* who would delay the resolution of this case until at least 2023:



This timeline demonstrates that Plaintiffs' schedule is significantly longer than what Defendants propose.[1]  In order to mask this delay, Plaintiffs make a number of assertions about Defendants' schedule that are just wrong.

---

[1] Plaintiffs claim that a trial could occur in mid-2020 immediately following a decision on class certification.  Pls.' Br. at 2.  But this assumes that a trial would go forward while a Rule 23(f) petition is pending, and it also ignores the need to address class notice and opt outs before any trial.  Accounting for these factors, a trial under Plaintiffs' proposal could not occur until January

*Early Summary Judgment*.  Plaintiffs also wrongly assert that "Defendants want to wait until after class certification and a Rule 23(f) decision" to file any summary judgment motions, including a motion based on *Amex*.  Pls.' Br. at 16.  In fact, Defendants' proposal allows for early summary judgment motions that are not dependent on the Court's class certification ruling.[2]

*Multiple Class Certification Proceedings.*  Plaintiffs assert that "[i]n response to a motion to certify an Alabama damages class from 2008 until the present, Defendants would likely argue that Subscriber Plaintiffs do not have the data for such a damages model and require Subscribers to undergo another round of class certification once that additional discovery takes place."  Pls.' Br. at 12.  According to Plaintiffs, this results in "hidden delay in the possibility of an entire second round of damages class certification that would need to be conducted before trial."  *Id.*  Wrong again.  Defendants have never suggested that there would need to be multiple rounds of class certification briefing; to the contrary, Defendants' position—stated on the record in court—is that class certification should be decided on the current record and any data update would only be

2021 at the earliest.  And an Eleventh Circuit decision to review the class certification decision and hear a Rule 23(f) appeal would further extend this and other subsequent dates.

[2] Plaintiffs also claim that Defendants sought a stay during their 1292(b) appeal.  Pls.' Br. at 7.  That too is wrong.  Defendants never sought a stay—and in fact committed to the Court that the parties would continue to litigate various issues throughout the pendency of the 1292(b) appeal.  *See* Jun. 12, 2018 Telephone Hr'g Tr. at 5-6.

necessary for trial.[3]   Instead, it is *Subscribers* who are angling for multiple class proceedings (and multiple trials).  *See* Pls.' Br. at 12 ("[A]dditional structured data discovery *and damages class certification* would not occur until *after* exhaustion of all appeals on liability." (emphasis added)).  As explained below, this is not only inefficient, it is also contrary to law.

***Consistency With Court's Prior Orders***.  Providers claim that their proposal is "consistent with the Court's prior schedule."   Provider Pls.' Submission on Sched., Dkt. 2380 at 2.  They are again wrong.  The Court's prior schedule did not require class certification and dispositive motions to be conducted simultaneously. *See* Third Am. Sched. Order, Dkt. 1567.  In fact, in recent hearings, the Court has indicated that the parties and Court should first focus on class certification.  *See* Jan. 15, 2019 Judge Proctor Hr'g Tr. at 14:8-9 ("[T]he next thing we need to really focus on is class certification."); *see also* Apr. 19, 2018 Judge Proctor Hr'g Tr. at 7:5-6 ("I'm not going to make you work on two tracks simultaneously.").

**B.     Plaintiffs' Simultaneous Briefing Schedule Is Unworkable.**

Plaintiffs' proposal improperly requires the parties to engage in class certification and all summary judgment briefing simultaneously.   That does not make sense.   Certain dispositive motions will depend on the Court's class

---

[3] *See* Aug. 30, 2018 Judge Proctor Hr'g Tr. at 43:1-10 ("The record is perfected.  Discovery is closed.  Class cert can proceed on the basis of the record to date. . . . When we're getting ready for trial, that's when there should be a reasonable conversation about the scope and the timing of any update to structured data.").

certification ruling, and thus cannot be made until class certification is complete. For example, whether Plaintiffs can show impact across a given class is a summary judgment issue.  *See In re Fla. Cement & Concrete Antitrust Litig.*, 278 F.R.D. 674, 682 (S.D. Fla. 2012) (impact is "an essential element" of an antitrust claim).  But that issue can only be briefed (and the supporting expert work can only be done) after the parties know what class(es), if any, are certified.  Indeed, it is common practice for courts to phase class certification and dispositive motion briefing, rather than to force the parties to do everything at once.  *See* Defs.' Status Report, Dkt. 2379 at 3-4.  Plaintiffs' cases are not to the contrary.  *See* Pls.' Br. at 14.[4]  Indeed, Plaintiffs' cases simply do not support courts *compelling* the parties to undertake the massive burden of briefing class certification and all summary judgment motions (along with related expert work and *Daubert* motions) at once.

---

[4] *See Villa v. San Francisco Forty-Niners, Ltd.*, 104 F. Supp. 3d 1017, 1020 (N.D. Cal. 2015) (although plaintiffs filed motion for summary judgment concurrently with motion for class certification, Court denied the summary judgment motion without prejudice based on one-way intervention principles); *In re: Disposable Contact Lens Antitrust Litig.*, 3:15-md-02626-HES-JRK (M.D. Fla.) (The original deadline to file motion for class certification was December 7, 2016, and deadline to file motions for summary judgment was set for December 22, 2017, over a year later. Dkt. 204); *Corcoran v. CVS Health Corp.*, 4:15-cv-03504-YGR (N.D. Cal.) (The original scheduling did not require simultaneous briefing of class certification and summary judgment, Dkt. 61, and no summary judgment motions were filed before the court's initial ruling on class certification.  After the court denied class certification without prejudice, Dkt. 249, the defendants took the position that the court should decide their forthcoming motion for summary judgment *before* the plaintiffs' renewed motion for class certification.  Dkt. 262 at 3.); *In re Domestic Drywall Antitrust Litig.*, 2:13-md-2437 (E.D. Pa.) (Initial scheduling order, which the parties submitted by agreement, addressed only summary judgment deadlines.  Dkt. 171. Plaintiffs filed motions for class certification over a year after motions for summary judgment were filed. Dkts. 204, 431, 472.); *Cruz v. Am. Airlines*, 150 F. Supp. 2d 103, 110 (D.D.C. 2001) (no indication of defendants' objection to briefing schedule or order of ruling).

## II.   PLAINTIFFS' PROPOSAL IS PREJUDICIAL.

Although Subscriber Plaintiffs attempt to gloss over this fact, their proposal contemplates multiple rounds of class certification: one round on Subscriber liability and Provider liability and damages, and a second round on Subscriber damages that would occur *after* an initial trial and any appeals.  *See* Pls.' Br. at 12 ("Pursuant to [Plaintiffs'] schedule, additional structured data discovery *and damages class certification* would not occur until *after* exhaustion of all appeals on liability." (emphasis added)).   It is clear why Subscribers want to impose this nonsensical, drawn-out approach:  they are going to have serious problems with class certification requirements on damages.   For that very same reason, Defendants would be severely prejudiced if Subscribers are allowed to defer indefinitely a ruling on this critical issue.

Subscribers have previously recognized the importance of certification of a damages class.  In response to a question from the Court in April 2018, counsel admitted that the "damages class . . . is obviously the thing that's most important to the class certification stage," and that the injunctive class is "much less significant" for class certification purposes.  Apr. 19, 2018 Judge Proctor Hr'g Tr. at 68:9-16.  Yet now Subscribers seek to certify a "liability only" class, relegating proposed certification of a damages class until 2023 or beyond.  All that does is allow Subscribers to litigate this case *for years* under the false pretense that they may,

one day down the road, certify the critically important damages class.  That would significantly prejudice Defendants by forcing them to defend a substantial portion of this case—through trial and even appeal—before Subscriber Plaintiffs are asked to show that they can do something as fundamental as establish damages through classwide evidence.  That is wrong.  *See Castano v. Am. Tobacco Co.*, 84 F.3d 734, 750 n.21 (5th Cir. 1996) (cautioning against severing defendants' conduct from classwide harm in an attempt to "manufacture predominance through the nimble use of subdivision (c)(4)"); *Fisher*, 238 F.R.D. at 316 ("[C]ourts have emphatically rejected attempts to use the (c)(4) process for certifying individual issues as a means for achieving an end run around the (b)(3) predominance requirement."); *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, n.10 (11th Cir. 1983) (cautioning (b)(3) should not be subverted by recasting and bifurcating every damages class suit into an injunctive (liability) class and then, later, a damages class).

Subscribers' newfound claim that they must delay certification of a damages class because of allegedly out-of-date data (*e.g.* Pls.' Br. at 11-13), must thus be seen for what it is:  an excuse not to have to face one of the most significant hurdles in their case.  *D.C. by & through Garter v. Cty. of San Diego*, No. 15CV1868-MMA (NLS), 2018 WL 692252, at *3 (S.D. Cal. Feb. 1, 2018) ("Courts often decline to certify a liability class where plaintiffs fail to show any [classwide] model for calculating damages" (internal quotation marks omitted)).

Subscribers should not be allowed to use creative scheduling to end-run around their obligation to prove their entire case—liability and damages—through classwide evidence. *See Fisher*, 238 F.R.D. at 316 (rejecting bifurcation of liability and damages and certification of a liability-only class and noting that "a class action *as a whole* [e.g., liability *and* damages] must satisfy the Rule 23(b)(3) predominance requirement" (emphasis added)); *Teggerdine v. Speedway, LLC*, No. 8:16-CV-03280, 2018 WL 2451248, at *8 (M.D. Fla. May 31, 2018) (holding that 23(c)(4) "assumes that the action as a whole satisfies the predominance requirement" and rejecting certification of "common" issues); *Atlas Roofing Corp. Chalet Shingle Prod. Liab. Litig.*, 321 F.R.D. 430 (N.D. Ga. 2017) (same); *Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679, 700 (S.D. Fla. 2014) (same). That Providers do not join in this request speaks volumes.

## III.   PLAINTIFFS' PROPOSAL IS CONTRARY TO APPLICABLE LAW.

### A.   Plaintiffs' Bifurcation Proposal Would Violate the Seventh Amendment.

Plaintiffs' proposed bifurcation of liability and damages creates an inescapable violation of Defendants' rights under the Seventh Amendment's Reexamination Clause, which prohibits overlapping issues from being reexamined by different juries.

As Plaintiffs admit, bifurcation is unconstitutional "where the damage issue is so interwoven with the other issues that it cannot be submitted to the jury independently of the others without confusion and uncertainty, which would amount to a denial of a fair trial." *Swofford v. B & W, Inc.*, 336 F.2d 406, 415 (5th Cir. 1964) (citations omitted); *see Gasoline Prods. Co. v. Champlin Ref. Co.*, 283 U.S. 494, 500 (1931) ("unless it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice," bifurcation is improper); *Matter of Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1303 (7th Cir. 1995) ("[T]he judge must not divide issues between separate trials in such a way that the same issue is reexamined by different juries."). Issues are not distinct when successive juries will be required to consider factual issues that are common to both trials and essential to the outcome. *See Hoover v. Fla. Hydro, Inc.*, No. 07-1100, 2009 WL 2163128, at *4 (E.D. La. July 16, 2009). That is exactly what would happen here.

Plaintiffs contend that they can solve the problem through a "carefully parsed" proceeding. *See* Pls.' Br. at 22. That is wrong. Taking Plaintiffs at their word, the first trial would include the fact of damages (*i.e.*, to show the existence of antitrust injury by way of proving liability), while the second trial would include the "quantum of damages." But when determining the amount of damages, the second jury would necessarily have to reconsider whether damage occurred in the

first place.  That is improper under the Seventh Amendment, as numerous courts have recognized in the antitrust context.  *See State of Ala. v. Blue Bird Body Co.*, 573 F.2d 309, 318 (5th Cir. 1978) (noting that "in a private antitrust suit there is no neat dividing line between the issue of liability and damages," and further explaining that "bifurcation to separate juries of liability and damages . . . inevitably introduces the possibility that in the liability phase the first jury might find that there was such injury, while the second jury might on the same evidence of injury in the damage phase, find none" (quoting *Terrell v. Household Goods Carriers' Bureau*, 494 F.2d 16, 21 (5th Cir. 1974))); *see also In re Indus. Gas Antitrust Litig.*, 100 F.R.D. 280, 303 (N.D. Ill. 1983) (explaining that the potential that bifurcated fact-of-injury and damage inquiries would overlap "is very great; both inquiries concern themselves with the presence of an alleged overcharge; one inquiry is simply a more particularized variant of the other").  Subscribers do not cite a single antitrust decision supporting their claim that bifurcation would be permissible under the Seventh Amendment here.  Indeed, none of Plaintiffs' cases grapple with the fact that fact-of-injury and quantum of damages are inextricably interwoven in an antitrust case.[5]  That is telling.

---

[5] Plaintiffs rely on decisions upholding bifurcation in the context of Title VII discrimination claims, *Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147 (2d Cir. 2001), a mass tort action against cigarette manufacturers, *Simon v. Philip Morris Inc.*, 200 F.R.D. 21 (E.D.N.Y. 2001), and a mass tort action against manufacturers of silicone implants, *In re Dow Corning Corp.*, 211 B.R. 545 (Bankr. E.D. Mich. 1997).  *See* Pls.' Br. at 23–24.

**B.     Plaintiffs' Proposed Briefing Schedule Risks Violation of the One-Way Intervention Rule.**

Plaintiffs' effort to litigate class certification and all dispositive motions at the same time plainly runs afoul of the rule against one-way intervention.

As one of Plaintiffs' own cases acknowledges, Rule 23(c)(2) exists in part "to protect defendants from unfair 'one-way intervention,' where the members of a class not yet certified can wait for the court's ruling on summary judgment and either opt in to a favorable ruling or avoid being bound by an unfavorable one." *Villa v. San Francisco Forty-Niners*, 104 F. Supp. 3d 1017, 1021 (N.D. Cal. 2015). For this reason, several courts have denied a plaintiff's motion for summary judgment where that motion is made before the court has ruled on plaintiff's motion for class certification, including the one cited by Plaintiffs.  *Id.*; *see also Alhassid v. Bank of Am., N.A.*, No. 14-CIV-20484, 2015 WL 11216720, at *1 (S.D. Fla. May 29, 2015); *Cuzco v. Orion Builders, Inc.*, 262 F.R.D. 325, 335 (S.D.N.Y. 2009).

The other cases cited by Plaintiff are not to the contrary.  *See* Pls.' Br. at 14. The court in *In re: Disposable Contact Lens Antitrust Litig.*, made summary judgment motions due a year after motions for class certification and ruled on class certification first.   *See* 3:15-md-02626-HES-JRK, Dkts. 204, 940 (M.D. Fla.). Plaintiffs' other three cases address the situation—not present here—where the

defendants waived their right to the protections against one-way intervention. *See Corcoran v. CVS Health Corp.*, 4:15-cv-03504-YGR, Dkt. 262 at 3 (N.D. Cal.) (defendants asked court to consider summary judgment motion prior to class certification); *In re Domestic Drywall Antitrust Litig.*, 2:13-md-2437, Dkt. 171 (E.D. Pa.) (parties submitted an agreed schedule setting deadlines on summary judgment only); *Cruz v. Am. Airlines*, 150 F. Supp. 2d 103, 110 (D.D.C. 2001) (noting that plaintiffs, not defendants, "urge[d] the Court to consider their certification motion first," and deciding to address summary judgment motions first because they could "moot" the class certification question). Defendants make no such waiver in this case.

For that reason, if Plaintiffs were to file dispositive motions before the Court has ruled on class certification (as their proposal would require them to do), the Court would either have to deny the motions outright or hold them in abeyance until after deciding class certification and issuing notice to the class. Either way, making the parties brief class certification and dispositive motions at the same time would be a waste of resources.

## IV. PROVIDERS' DISCUSSION OF HOSPITAL CLOSURES IS INCORRECT AND IRRELEVANT.

Providers point to a number of articles discussing Alabama hospital closures, and insist that "[a] significant part of the problem . . . is the low reimbursement paid by the local Blue." Provider Pls.' Sub. on Sched., Dkt. 2380 at 2-3. Based on

nothing more than this say-so, Providers contend that it is thus "crucial that at least the hospital portion of the Provider Plaintiffs complete this litigation . . . before many more of them go out of business." *Id.* at 3. These articles are irrelevant to this scheduling motion, and the conclusions that Providers seek to draw from them are incorrect in any event.

Providers ask this Court to resolve a fundamental factual dispute in this case—why (if at all) are Alabama hospitals struggling—through a five-page submission on a scheduling dispute. That is improper. Indeed, as Plaintiffs' own articles show, there are numerous reasons ascribed to Alabama hospital closures[6]— and not one of them is "reimbursements paid by the local Blue." Plaintiffs' attempt to convince the Court to overreach on this point is without merit and should be denied.

## CONCLUSION

Defendants respectfully request that the Court adopt Defendants' proposed schedule.

Dated: February 22, 2019                    Respectfully submitted,

                                            /s/ Craig A. Hoover

---

[6] There are also success stories, as reflected in the AL.com article from the same week noting the expansion of Huntsville Hospital. *See* Exhibit 1, Paul Gattis, *Huntsville growth supers growth at Huntsville Hospital*, AL.com (Feb. 13, 2019), https://www.al.com/news/2019/02/huntsville-growth-spurs-growth-at-huntsville-hospital.html.

Craig A. Hoover
E. Desmond Hogan
Justin Bernick
Peter Bisio
Elizabeth Jose
HOGAN LOVELLS US LLP
Columbia Square
555 13th Street, N.W.
Washington, DC 20004
Tel: (202) 637 5600
Fax: (202) 637 5910
craig.hoover@hoganlovells.com
desmond.hogan@hoganlovells.com
justin.bernick@hoganlovells.com
peter.bisio@hoganlovells.com
elizabeth.jose@hoganlovells.com
*Co-Coordinating Counsel for the Defendants*

Cavender C. Kimble
BALCH & BINGHAM LLP
1901 6th Avenue North, Suite 1500
Birmingham, AL 35203-4642
Tel: (205) 226-3437
Fax: (205) 488-5860
ckimble@balch.com

John Martin
Lucile H. Cohen
NELSON MULLINS RILEY &
SCARBOROUGH LLP
1320 Main Street, 17th Floor
Columbia, SC 29201
Tel: (803) 255-9421
Fax: (803) 255-9054
john.martin@nelsonmullins.com

David J. Zott, P.C.
Daniel E. Laytin, P.C.
Sarah J. Donnell
Christa C. Cottrell, P.C.
Zachary Holmstead
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Tel: (312) 862-2000
Fax: (312) 862-2200
david.zott@kirkland.com
daniel.laytin@kirkland.com
sdonnell@kirkland.com
ccottrell@kirkland.com
zachary.holmstead@kirkland.com

*Co-Coordinating Counsel*

lucie.cohen@nelsonmullins.com

*With Hogan Lovells, counsel for
Blue Cross and Blue Shield of
North Carolina, Inc.; Blue Cross and
Blue Shield of Florida, Inc.; Louisiana
Health Service & Indemnity Company
(Blue Cross and Blue Shield of
Louisiana); Blue Cross and Blue Shield
of Massachusetts, Inc.; BCBSM, Inc.
(Blue Cross and Blue Shield of
Minnesota); Blue Cross and Blue Shield
of South Carolina; Horizon Healthcare
Services, Inc. (Horizon Blue Cross and
Blue Shield of New Jersey); Blue Cross
& Blue Shield of Rhode Island;
Blue Cross and Blue Shield of Vermont;
Cambia Health Solutions, Inc.; Regence
Blue Shield of Idaho; Regence
Blue Cross Blue Shield of Utah;
Regence Blue Shield (of Washington);
Regence Blue Cross Blue Shield of
Oregon*

Christine Varney
Evan Chesler
Karin DeMasi
Lauren Kennedy
CRAVATH SWAINE & MOORE LLP
825 Eighth Avenue
New York, NY 10019
Tel: (212) 474-1000
Fax: (212) 474-3700
cvarney@cravath.com
echesler@cravath.com
kdemasi@cravath.com

*for the Defendants*

Kimberly R. West (Liaison Counsel)
Mark M. Hogewood
WALLACE JORDAN RATLIFF &
BRANDT LLC
First Commercial Bank Building
800 Shades Creek Parkway, Suite 400
Birmingham, AL 35209
Tel: (205) 870-0555
Fax: (205) 871-7534
kwest@wallacejordan.com
mhogewood@wallacejordan.com

*Defendants' Liaison Counsel*

*With Kirkland & Ellis, counsel for
Defendant, Blue Cross and Blue Shield
Association*

James L. Priester
Carl S. Burkhalter
John Thomas A. Malatesta, III
MAYNARD COOPER & GALE PC
1901 6th Avenue North, Suite 2400
Regions Harbert Plaza
Birmingham, AL 35203
Tel: (205) 254-1000
Fax: (205) 254-1999
jpriester@maynardcooper.com
cburkhalter@maynardcooper.com
jmalatesta@maynardcooper.com

Pamela B. Slate
HILL HILL CARTER FRANCO COLE
& BLACK, P.C.

lkennedy@cravath.com

*Counsel for Defendant Blue Cross and*
*Blue Shield of Tennessee, Inc.;*
*Blue Cross Blue Shield of Alabama*

Robert R. Riley, Jr.
RILEY & JACKSON, P.C.
3530 Independence Drive
Birmingham, AL 35209
Tel: (205) 879-5000
Fax: (205) 879-5901
rob@rileyjacksonlaw.com

*Counsel for Defendant Blue Cross and*
*Blue Shield of Tennessee, Inc.*

Brian K. Norman
SHAMOUN & NORMAN, LLP
1800 Valley View Lane, Suite 200
Farmers Branch, TX 75234
Tel: (214) 987-1745
Fax: (214) 521-9033
bkn@snlegal.com

H. James Koch
ARMBRECHT JACKSON LLP
63 South Royal Street, 13th Floor
Riverview Plaza
Mobile, AL 36602
Tel: (251) 405-1300
Fax: (251) 432-6843
hjk@ajlaw.com

*Counsel for Defendants, Carefirst, Inc.;*
*Carefirst of Maryland, Inc.; Group*

425 South Perry Street
Montgomery, AL 36104
Tel: (334) 834-7600
Fax: (334) 386-4381
pslate@hillhillcarter.com

*Counsel for Defendant,*
*Blue Cross Blue Shield of Alabama*

Helen E. Witt, P.C.
Jeffrey J. Zeiger, P.C.
Erica B. Zolner
Casey R. Fronk
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Tel: (312) 862-2000
Fax: (312) 862-2200
hwitt@kirkland.com
jzeiger@kirkland.com
ezolner@kirkland.com
cfronk@kirkland.com

Kimberly R. West (*Liaison Counsel*)
Mark H. Hogewood
WALLACE JORDAN RATLIFF &
BRANDT LLC
First Commercial Bank Building
800 Shades Creek Parkway, Suite 400
Birmingham, AL 35253
Tel: (205) 870-0555
Fax: (205) 871-753
kwest@wallacejordan.com
mhogewood@wallacejordan.com

*Counsel for Defendants, Health Care*

Hospitalization and Medical Services,
Inc.; CareFirst BlueChoice, Inc.

R. David Kaufman
M. Patrick McDowell
BRUNINI, GRANTHAM, GROWER
& HEWES, PLLC
190 East Capitol Street
The Pinnacle Building, Suite 100
Jackson, MS 39201
Tel: (601) 948-3101
Fax: (601) 960-6902
dkaufman@brunini.com
pmcdowell@brunini.com

Cheri D. Green
BLUE CROSS BLUE SHIELD OF
MISSISSIPPI
P. O. Box 1043
Jackson, MS 39215
Tel: (601) 932-3704
cdgreen@bcbsms.com

John Martin
Lucile H. Cohen
NELSON MULLINS RILEY &
SCARBOROUGH LLP
1320 Main Street, 17th Floor
Columbia, SC 29201
Tel: (803) 255-9421
Fax: (803) 255-9054
john.martin@nelsonmullins.com
lucie.cohen@nelsonmullins.com

*Counsel for Defendant, Blue Cross
Blue Shield of Mississippi, a Mutual*

*Service Corporation, an Illinois Mutual
Legal Reserve Company, including its
divisions Blue Cross and Blue Shield of
Illinois, Blue Cross and Blue Shield of
Texas, Blue Cross and Blue Shield of
New Mexico, Blue Cross and
Blue Shield of Oklahoma, and
Blue Cross and Blue Shield of Montana;
Caring for Montanans, Inc., f/k/a
Blue Cross and Blue Shield of Montana,
Inc.; Highmark Inc., f/k/a Highmark
Health Services; Highmark West
Virginia Inc.; Highmark Blue Cross
Blue Shield Delaware Inc.; California
Physicians' Service d/b/a Blue Shield of
California*

Jonathan M. Redgrave
Victoria A. Redgrave
REDGRAVE, LLP
14555 Avion Parkway, Suite 275
Chantilly, VA 20151
Tel: (703) 592-1155
Fax: (612) 332-8915
jredgrave@redgravellp.com
vredgrave@redgravellp.com

*Additional Counsel for HCSC and
Highmark Defendants*

Andy P. Campbell
Stephen D. Wadsworth
A. Todd Campbell
Yawanna N. McDonald
CAMPBELL, GUIN, WILLIAMS,
GUY & GIDIERE LLC

*Insurance Company*

Michael A. Naranjo
FOLEY & LARDNER LLP
555 California Street, Suite 1700
San Francisco, CA 94104-1520
Tel: (415) 984-9847
Fax: (415) 434-4507
mnaranjo@foley.com

Alan D. Rutenberg
Benjamin R. Dryden
FOLEY & LARDNER LLP
3000 K Street, N.W., Suite 600
Washington, D.C. 20007-5109
Tel: (202) 672-5300
Fax: (202) 672-5399
arutenberg@foley.com
bdryden@foley.com

*Counsel for Defendant, USAble Mutual
Insurance Company, d/b/a Arkansas
Blue Cross and Blue Shield*

Charles L. Sweeris
Law Department
BLUE SHIELD OF CALIFORNIA
50 Beale Street
San Francisco, CA 94105
Tel: (415) 229-5107
Fax: (415) 229-5343
charles.sweeris@blueshieldca.com

*Counsel for California Physicians'
Service d/b/a Blue Shield of California*

505 20th Street North, Suite 1600
Birmingham, AL 35203
Tel: (205) 224-0750
Fax: (205) 224-8622
andrew.campbell@campbellguin.com
stephen.wadsworth@campbellguin.com
todd.campbell@campbellguin.com
yawanna.mcdonald@campbellguin.com

Sarah L. Cylkowski
Thomas J. Rheaume, Jr.
BODMAN PLC
201 South Division Street, Suite 400
Ann Arbor, MI 48104
Tel: (734) 761-3780
Fax: (734) 930-2494
scylkowski@bodmanlaw.com
trheaume@bodmanlaw.com

Todd Stenerson
SHEARMAN & STERLING LLP
401 9th Street, NW
Suite 800
Washington, DC 20004-2128
Tel: (202) 508-8000
Fax: (202) 508-8100
todd.stenerson@shearman.com

*Counsel for Defendant, Blue Cross and
Blue Shield of Michigan*

John Briggs
Rachel Adcox
AXINN, VELTROP & HARKRIDER,
LLP
950 F Street, N.W.

Robert K. Spotswood
Michael T. Sansbury
Joshua K. Payne
Mary G. Menge
Morgan B. Franz
Jess R. Nix
SPOTSWOOD SANSOM &
SANSBURY LLC
One Federal Place
1819 5th Avenue North, Suite 1050
Birmingham, AL 35203
Tel: (205) 986-3620
Fax: (205) 986-3639
rks@spotswoodllc.com
msansbury@spotswoodllc.com
jpayne@spotswoodllc.com
mmenge@spotswoodllc.com
mfranz@spotswoodllc.com
jnix@spotswoodllc.com
*Counsel for Defendant Capital
BlueCross*

Gwendolyn Payton
KILPATRICK TOWNSEND &
STOCKTON LLP
1420 Fifth Ave, Suite 3700
Seattle, WA 98101
Tel: (206) 626-7714
Fax: (206) 299-0414
gpayton@kilpatricktownsend.com

J. Bentley Owens, III
WALLACE, ELLIS, FOWLER, HEAD
& JUSTICE
113 North Main Street
Columbiana, AL 35051-0587

Washington, DC 20004
Tel: (202) 912-4700
Fax: (202) 912-4701
jbriggs@axinn.com
radcox@axinn.com

Stephen A. Rowe
Aaron G. McLeod
ADAMS AND REESE LLP
Regions Harbert Plaza
1901 6th Avenue North, Suite 3000
Birmingham, AL 35203
Tel: (205) 250-5000
Fax: (205) 250-5034
steve.rowe@arlaw.com
aaron.mcleod@arlaw.com

*Counsel for Defendant,
Independence Blue Cross*

Edward S. Bloomberg
John G. Schmidt
Anna Mercado Clark
PHILLIPS LYTLE LLP
One Canalside
125 Main Street
Buffalo, NY 14203
Tel: (716) 847-7096
Fax: (716) 852-6100
ebloomberg@phillipslytle.com
jschmidt@phillipslytle.com
aclark@phillipslytle.com

Stephen A. Walsh
ADAMS and REESE LLP
1901 Sixth Avenue North, Suite 3000

Tel: (205) 669-6783
Fax: (205) 669-4932
bowens@wefhlaw.com

*Counsel for Defendants, Premera*
*Blue Cross d/b/a Premera Blue Cross*
*Blue Shield of Alaska*

David J. Zott, P.C.
Daniel E. Laytin, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Tel: (312) 862-2000
Fax: (312) 862-2200
david.zott@kirkland.com
daniel.laytin@kirkland.com

*Counsel for Defendants Wellmark of*
*South Dakota, Inc. (Wellmark*
*Blue Cross and Blue Shield of South*
*Dakota); Wellmark, Inc. (Wellmark*
*Blue Cross and Blue Shield of Iowa);*
*Hawaii Medical Service Association*
*(Blue Cross and Blue Shield of Hawaii);*
*Triple-S Salud, Inc.*

Kimberly R. West (Liaison Counsel)
Mark M. Hogewood
WALLACE, JORDAN, RATLIFF &
BRANDT, LLC
First Commercial Bank Building
800 Shades Creek Parkway, Suite 400
Birmingham, AL 35209
Tel: (205) 870-0555
Fax: (205) 871-7534
kwest@wallacejordan.com

Birmingham, AL 35203
Tel: (205) 250-5000
Fax: (205) 250-5091
Stephen.walsh@arlaw.com

*Counsel for Defendant, Excellus Health*
*Plan, Inc., d/b/a Excellus BlueCross*
*BlueShield, incorrectly sued as Excellus*
*BlueCross BlueShield of New York*

Kathleen Taylor Sooy
Tracy A. Roman
April N. Ross
Michael W. Lieberman
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: (202) 624-2500
Fax: (202) 628-5116
ksooy@crowell.com
troman@crowell.com
aross@crowell.com
mlieberman@crowell.com

John M. Johnson
Brian P. Kappel
LIGHTFOOT FRANKLIN & WHITE
LLC
The Clark Building
400 20th Street North
Birmingham, AL 35203
Tel: (205) 581-0716
Fax: (205) 380-9116
jjohnson@lightfootlaw.com

*Counsel for Defendants, Blue Cross of*

21

mhogewood@wallacejordan.com

*Counsel for Defendants Wellmark of South Dakota, Inc. (Wellmark Blue Cross and Blue Shield of South Dakota); Wellmark, Inc. (Wellmark Blue Cross and Blue Shield of Iowa); Hawaii Medical Service Association (Blue Cross and Blue Shield of Hawaii)*

*Idaho Health Service, Inc.; Blue Cross and Blue Shield of Kansas, Inc.; Blue Cross and Blue Shield of Kansas City; Blue Cross and Blue Shield of Nebraska; Blue Cross Blue Shield of Arizona; Blue Cross Blue Shield of North Dakota; Blue Cross Blue Shield of Wyoming; HealthNow New York Inc.; BlueShield of Northeastern New York; BlueCross BlueShield of Western New York*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 22, 2019, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.


/s/ Craig A. Hoover
Craig A. Hoover