1    IN THE UNITED STATES DISTRICT COURT
     FOR THE NORTHERN DISTRICT OF ALABAMA
2              SOUTHERN DIVISION

3  IN RE:  BLUE CROSS BLUE SHIELD     CASE NO.:  2:13-cv-20000-RDP
   ANTITRUST LITIGATION MDL 2406
4

5                   * * * * * * * * * *

6                   STATUS CONFERENCE

7                   * * * * * * * * * *

8        BEFORE THE HONORABLE R. DAVID PROCTOR, UNITED STATES

9  DISTRICT JUDGE, at Birmingham, Alabama, on Thursday, June 20,

10 2019, commencing at 9:41 a.m.

11 APPEARANCES:

12 SPECIAL MASTER:        Mr. Edgar C. Gentle III
                          Attorney at Law
13                        GENTLE TURNER SEXTON & HARBISON
                          501 Riverchase Parkway East, Suite 100
14                        Hoover, Alabama  35244

15 FOR THE PLAINTIFFS:    David Boies
                          W. Tucker Brown
16                        Kathleen Currie Chavez
                          Charles J. Cooper
17                        Gregory L. Davis
                          Douglas A. Dellaccio Jr.
18                        Augusta S. Dowd
                          John Gravante III
19                        Mark K. Gray
                          David Guin
20                        Michael E. Gurley Jr.
                          Christopher T. Hellums
21                        Craig A. Hoover
                          Megan Jones
22                        Edith M. Kallas
                          Jonathan S. Mann
23                        Patricia Melville
                          R. G. Methvin Jr.
24                        W. Daniel Miles III
                          Dennis G. Pantazis
25                        Barry A. Ragsdale

```
 1   FOR THE PLAINTIFFS:        Robert B. Roden
                                Patrick J. Sheehan
 2                              Tammy McClendon Stokes
                                Joe R. Whatley Jr.
 3                              J. Mark White
                                Edward Kirk Wood Jr.
 4
     FOR THE DEFENDANTS:        Carl S. Burkhalter
 5                              Evan Chesler
                                Karin DeMasi
 6                              E. Desmond Hogan
                                Kail J. Jethmalani
 7                              John M. Johnson
                                Cavender C. Kimble
 8                              Patrick McDowell
                                Joshua K. Payne
 9                              Gwendolyn C. Payton
                                Stephen A. Rowe
10                              Kathleen Taylor Sooy
                                Robert K. Spotswood
11                              Todd M. Stenerson
                                Kimberly R. West
12                              David J. Zott

13   PRESENT VIA TELEPHONE
     FOR THE PLAINTIFFS:        Eric R. Belin
14                              Katherine R. Brown
                                Virginia M. Buchanan
15                              Christina D. Crow
                                Gregory Cusimano
16                              Nathan A. Dickson II
                                Michael J. Fleming
17                              Edgar Dean Gankendorff
                                William David George
18                              Stephanie Goldman
                                Archibald I. Grubb II
19                              Andrew Allen Lemmon
                                Casey L. Lott
20                              Hope S. Marshall
                                Lee McGartland
21                              Mario A. Pacella
                                Myron C. Penn
22                              Elizabeth Pollock-Avery
                                Henry C. Quillen
23                              Dennis Craig Reich
                                L. Shane Seaborn
24                              Ami Swank
                                Greg Wright
25
```

```
 1   PRESENT VIA TELEPHONE
     FOR THE DEFENDANTS:        Norman E. Bailey
 2                              Edward S. Bloomberg
                                Travis A. Bustamante
 3                              Reed M. Coleman
                                Don Karl
 4                              Michael A. Naranjo
                                Mark Newcomer
 5                              Elaine Nichenko
                                Brian K. Norman
 6                              Tracy A. Roman
                                John G. Schmidt Jr.
 7                              Helen Witt
                                Michael Zipfel
 8
                      Proceedings reported stenographically;
 9                        transcript produced by computer.

10                       * * * * * * * * * *

11      (The following proceedings were heard before the Honorable

12      R. David Proctor, United States District Judge, at

13      Birmingham, Alabama, on Thursday, June 20, 2019, commencing

14      at 9:41 a.m.:)

15           THE CLERK:  Remain seated, please, and come to order.

16           THE COURT:  All right.  Good morning, everyone.

17           COUNSEL IN UNISON:  Good morning, Your Honor.

18           THE COURT:  Well, we have a chipper group today.

19           All right.  We have an agenda that the special master

20   has circulated and I think the parties have signed off on.

21   Start off with the obligatory update on class certification.

22           MR. HOOVER:  Good morning, Your Honor.  Craig Hoover

23   for defendants.

24           THE COURT:  Good morning.

25           MR. WHATLEY:  And Joe Whatley for the provider
```

 1  plaintiffs.

 2        THE COURT:  Yes.

 3        MR. HOOVER:  So we've conferred, and I think we're in

 4  agreement that the status is on track.

 5        THE COURT:  Okay.

 6        MR. HOOVER:  So just to give you a little detail, the

 7  class expert depos of plaintiffs was completed on time and -- by

 8  May 15th.  We're overlapping a little bit with the merits, so

 9  the merits ones were completed on time last week.  And in terms

10  of next steps, there will be *Daubert* motions on class experts by

11  July 1.

12        MR. WHATLEY:  If there are any.

13        MR. HOOVER:  If -- well, Joe is saying if any.

14        THE COURT:  Yes.  If any.  We're holding our breath to

15  see how that turns out.

16        MR. HOOVER:  Right.  Exactly.

17        Hope springs eternal, Joe.

18        MR. WHATLEY:  We're ready to respond just in case they

19  file, Your Honor.

20        MR. HOOVER:  And then we would be filing our class cert

21  opp and our expert reports, class expert reports, by mid-July.

22        THE COURT:  Okay.

23        MR. WHATLEY:  All agreed.

24        THE COURT:  Would this be an appropriate juncture to

25  discuss document 2452, which was the joint report regarding

1  dispositive motions?

2          MR. WHATLEY:  It is, Your Honor.  I think one thing

3  we're in agreement on is that we would brief that and have it

4  addressed by the next status conference.  Is that --

5          THE COURT:  I'm not going to pretermit that, but it

6  seems to me that the Blues' position all along is that there are

7  certain aspects of dispositive motions that will depend upon

8  what class certification looks like; right?

9          MR. HOOVER:  Yeah.  We briefed that last time, Your

10 Honor -- took briefing.  The plaintiffs said everything should

11 be filed up-front.  We said certain motions should be filed

12 up-front and certain later.  You did bifurcate that in your

13 order.

14         THE COURT:  Right.

15         MR. HOOVER:  And it appears that plaintiffs are now

16 saying that they should all be filed up-front.

17         THE COURT:  Yes.  So I'm just wondering, is this a

18 request to back up and address --

19         MR. WHATLEY:  No, Your Honor.  It's not a request to

20 back up.  They addressed two specific issues.

21         THE COURT:  Lack of impact and market definition?

22         MR. WHATLEY:  Lack of impact and market definition.

23 And it has to be taken into consideration in light of the record

24 that's been made.  And we have filed expert reports that address

25 the market definition and address impact, both methodology and

 1   applying that methodology.  So our point is now in light of --
 2   not asking you to go back, but in light of the record that has
 3   developed, the market definitions that are there, the impact
 4   that is demonstrated in the expert reports, both methodology and
 5   applying that methodology, then it's ripe.  That's our point,
 6   Your Honor, and to consider it in light of the record that's
 7   here and address it that way.
 8          MR. HOOVER:  Which, Your Honor, ignores all the
 9   arguments that we made as to why, for certain motions, class
10   would need to have been decided.  If we want to get into more
11   detail on that, I think Mr. Zott is prepared to address it.  But
12   our position is this was all litigated.  You decided that
13   certain class-dependent motions could be brought later.  And
14   plaintiffs now are saying no, no motions should be brought
15   later, all of them should be filed up-front on September 15th.
16          MR. WHATLEY:  No, Your Honor.  We're --
17          THE COURT:  Well, hold on.  Let me hear from Mr. Boies,
18   because I think he was trying to get a word in edgewise.
19          MR. BOIES:  Yes.  Your Honor, I think our position is a
20   little different than that.  The Court told the parties that
21   they should identify those motions that they believed were class
22   certification dependent.  What we're asking is that those
23   motions be identified.  And to say market definition and impact,
24   that's not identifying what motion you're going to make.  And I
25   think that what we're saying --

                THE COURT:  You would like a little bit more flesh on

those bones?

                MR. BOIES:  We would, Your Honor, for two reasons.

                THE COURT:  Well, let me ask you this.  What's the

benefit of that if we already have a schedule where these

motions will be filed and you'll have a full, fair, and adequate

opportunity to respond to the motions once they are filed?

                MR. BOIES:  Well, I think there are two issues, Your

Honor.  One -- and this is -- this is entirely up to the Court,

just in terms of managing your docket.  But we think that some

specificity in advance might be useful to allow the Court to

make a judgment as to whether these motions that they intend to

delay are actually class certification dependent or not.  As I

say, I think that's something that's entirely up to the Court.

But we would suggest to the Court that a look at it before it's

a fait accompli might be useful.

                The second point is something that is important to us,

and that is that we have motions for summary judgment as well.

And one of the things that we would like to get some

understanding on is what the guide rails are in terms of which

motions we bring now and which motions we bring later.  From our

standpoint, we think there's very little that's really class

certification dependent.  On the other hand, we think what's

important is whatever the rule is, it applies to both sides.

And so having some knowledge about that, some insight, some

1  clarification on that would be helpful to us before the filing.

2         THE COURT:  And I appreciate that.  I guess my reaction

3  to all this is at the time that I set the scheduling order

4  previously, I was -- at least, I thought I was cognizant of the

5  fact that what classes ultimately get certified by the Court

6  will necessarily have some effect on how these motions in

7  particular areas get set up, briefed, what evidentiary record we

8  have to consider, particularly when it comes to methodologies

9  demonstrating harm to a class rather than just a putative class.

10  It seems to me it doesn't matter what methodologies demonstrate

11  harm to a putative class because it's not a class yet.  The

12  question is once the class is certified, we take a look through

13  that lens of how does this change, if at all.

14         And you're right.  It may not be -- it may not --

15  depending on what class is certified, it may or may not change

16  significantly the motion practice; but we can't know that until

17  we actually see what's certified.  I'm just taking a very

18  simplistic helicopter ride over the issues and saying, yes, I

19  can see where what class gets certified perhaps, particularly on

20  the provider side, may speak to questions like demonstrable

21  harm, the market definition that gets played out on a

22  rule-of-reason analysis, all sorts of things like that.  Again,

23  maybe I'm just being overly simplistic, but I'm also trying to

24  keep an open mind as well.

25         MR. BOIES:  Your Honor, I think that it's possible,

1   depending on what decision the Court makes on what class, that

2   there could be some -- there could be some impact with respect

3   to certain motions.  And I think -- I think the Court recognized

4   that when it said to the defendants -- and I think maybe to the

5   plaintiffs as well -- identify those motions that you think are

6   class certification dependent.

7        THE COURT:  So let me ask Mr. Hoover and Mr. Zott.  One

8   thing that Mr. Boies just said that's appealing to me is there's

9   no harm with y'all continuing to dialogue and meet and confer

10  about what this is going to look like and keep those lines of

11  communication open and keep the Court abreast of those

12  discussions, as appropriate.  Any problem with doing just that?

13       MR. ZOTT:  Your Honor, David Zott.  Good morning.

14       No.  We have no problem dialoguing.  Just to be clear,

15  we have dialogued, and we're happy to continue to dialogue.  I

16  know we had hearings in front of Your Honor prior to the

17  scheduling order where we laid out in some detail what we

18  thought those motions would be.  We also had a meet-and-confer

19  per the scheduling order that -- we also laid out what those

20  motions would likely be.  And quite honestly, what Your Honor

21  has just said is very much exactly the way we're thinking about

22  it, that there are certain motions that are class dependent.

23  And there's two categories, the common impact and markets, both

24  of which will turn on, to some degree, what classes, if any, are

25  ultimately certified.  And I stress "if any."  So --

 1          THE COURT:  Is there a case out there in the

 2   hinterlands somewhere that gives me a blueprint of what this

 3   class certification process is going to look like?

 4          MR. ZOTT:  I'm sure there are.

 5          Mr. Boies, would you like to take it?

 6          THE COURT:  I'm thinking it's going to be a -- there

 7   aren't that many of them, if there are.

 8          MR. ZOTT:  No.  It's --

 9          MR. HOOVER:  I think there have been other cases where

10   there were provider- and subscriber-side claims, but I don't

11   think there has been a case exactly like this one, Your Honor.

12          THE COURT:  Where you've got per se and rule of reason

13   -- issues rolled in.

14          MR. HOOVER:  Right.

15          THE COURT:  You've got the number of markets that we're

16   dealing with here.  And I know -- I realize we may be focusing

17   on particular markets.  We've got different levels of

18   competition even called for by the ESA provisions.  It just

19   seems like there's a lot of variables that I don't know how I

20   can possibly say the plaintiffs are right, that there are just

21   not going to be that many issues that crop up after class

22   certification that we can't identify before class certification.

23   That's just my, again, simplistic -- I keep using that word, but

24   I think it's apt -- my simplistic approach to this.

25          MR. ZOTT:  There's a big efficiency issue.  You know,

1  right now, the way the class briefing comes, there's numerous

2  potential markets, for example.  And we don't know what markets

3  the Court is ultimately going to decide are susceptible to class

4  proof.  It may be none.  May be a narrow market; may be a broad

5  market.  Why would we, you know, target a motion before we

6  even get guidance from the Court on your thoughts?  And at that

7  point, we can be much more targeted and much more focused on

8  exactly what remains at issue in the case, if anything.

9       THE COURT:  Okay.  Well, I appreciate the report.

10 Anything else I need to know for now?

11      I'm not inclined to change the current scheduling

12 order, if anybody is asking me to do that.  I am fine with

13 Mr. Boies's suggestion that maybe this report gets fleshed out a

14 little bit more and we start getting into the nitty-gritty of,

15 all right, which particular class issues could make a difference

16 and alert the Court to that at an appropriate time.  I don't

17 know that I necessarily want to know what the -- I'm going to

18 try to be very process-driven in how we approach Rule 23 issues

19 in this case.  It's not going to be what should it look like

20 after we get done.  It's what does it look like in light of the

21 process as we work through the Rule 23 issues.

22      So I don't know that knowing all this in advance is

23 going to help me.  I think it could substantially help you to

24 have a good game plan for tackling it, in the limited amount of

25 time I did provide in the scheduling order, how to get these

1   issues teed up and what work needs to be done as they're being

2   teed up after class certification rulings are made.  Does that

3   make sense?

4           MR. HOOVER:  Yes.

5           MR. WHATLEY:  That's why we should meet and confer and

6   see if we can flesh it out some and report back to you next

7   time.

8           THE COURT:  Sure.  I think a continuing dialogue about

9   this would be very helpful, and I don't -- I'm certainly going

10  to encourage that.  It sounds like I don't have to encourage it

11  much.  It sounds like everybody is interested in trying to

12  realize efficiencies to scale once a class certification

13  decision is made on these various motions.  And we'll see where

14  we are.

15          MR. HOOVER:  Thank you, Your Honor.

16          MR. ZOTT:  Thank you, Your Honor.

17          THE COURT:  Okay.

18          All right.  Well, Judge Putnam is now in retirement.

19          MS. JONES:  Lucky guy.

20          THE COURT:  He is beckoning me there, but I told him

21  it's not my time yet.  So the question then becomes -- and Judge

22  Borden started with us.  He's not -- I don't think he's

23  officially a -- he is on -- working on an interdistrict

24  assignment with us now.  He's already magistrate judge in the

25  Middle.  He's not fully Northern yet.  I think that's still to

1  come, hopefully in a couple weeks.  He asked me, am I picking up

2  any of this from Judge Putnam?  And I told him no, not until,

3  you know, further notice.  And I don't think you'll get any

4  further notice.  I think the idea was that at least for now, the

5  Court, meaning me, would handle discovery matters going forward.

6  First, does everybody agree that was the game plan?

7          MR. RAGSDALE:  Yes, sir.

8          THE COURT:  So the question is -- two subissues under

9  discovery issues, then, in terms of what the big fruit is on the

10 vine still, when and how to update discovery -- that's been a

11 constant discussion point throughout the case -- and the Anthem

12 depositions.  So take them in whatever order you two wish.

13         MR. RAGSDALE:  I think they can actually be grouped

14 together.  The parties are working on both of these issues,

15 continue to dialogue, meet and confer, discuss.  There's been

16 good communication between us.  We expect -- anticipate being

17 able to give you a scheduling order on these issues, to the

18 extent we can reach agreement, in July.

19         MR. HOGAN:  The good news is there's nothing to decide,

20 Your Honor.  Nothing is ripe.  We need to meet and confer on

21 these issues.

22         On the Anthem deposition issue, I believe it's actually

23 resolved.  There's a process in place.

24         With regard to the other issue, we have talked about it

25 numerous times.  We have a strong view that is consistent with

1   what the Court said about updating before trial on structured

2   data, and we're just waiting to talk about any other issues.  So

3   more to come next time, I think.

4         THE COURT:  All right.  It was interesting to me to

5   note, as we were getting ready for this, is one item not on the

6   agenda is anything about privilege or seal issues.  I think that

7   speaks to how well our seal team and privilege team have done.

8   Mr. Hogewood is not here, so I'll brag on him.  I think he and

9   the others on that group have done well.  He's got a good reason

10   for not being there.  Make sure you ask him about it.  So I'm

11   very pleased with a lot of things about how the lawyers have

12   done in this case, but that's certainly one of them.

13         MR. HOGAN:  Great.

14         THE COURT:  All right.  What else?

15         MR. RAGSDALE:  I think that's all.  We'll try to have

16   you some really spicy discovery motions later if you want.

17         THE COURT:  You know, I would feel a little

18   shortened -- short-strawed if you didn't bring at least one of

19   those.

20         MR. RAGSDALE:  I don't think that feeling will last

21   very long.

22         MR. HOGAN:  I'm sorry.  I hope to disappoint you, Your

23   Honor.

24         THE COURT:  We'll see if I can't violate certain

25   Alabama statutes, then.

1          MR. RAGSDALE:  Look forward to it.

2          THE COURT:  If you didn't get that reference, ask Barry

3    about his remarks at Judge Putnam's retirement reception last

4    month.

5          MR. HOGAN:  Thank you, Your Honor.

6          THE COURT:  Okay.  Thank you.

7          All right.  Date and venue for the July 2019 status

8    conference.  At the last status conference, I introduced this

9    idea that I think is somewhat lawyer-friendly to maybe look at

10   the three cities where the biggest component of lawyers in this

11   case reside -- and I think we said those are Chicago, New York,

12   and D.C. -- and maybe think about having status conferences not

13   consistently, but somewhat periodically, rotate there so we can

14   cut down on everyone's travel schedule and take turns doing

15   that.

16         For July, I've got a three- to five-week criminal trial

17   starting Monday that I think will be done by our next

18   conference, but there are no guarantees.  And then I depart the

19   following week after that to Portland, Oregon, for a panel

20   hearing.  So I'm not inclined to -- I'm inclined to have July in

21   Birmingham.  Any problems with that if we defer the dream of you

22   getting to stay home at least one week every once in a while?

23         MS. JONES:  Confirming that on the 22nd, Your Honor?

24         THE COURT:  Yes.  The 22nd is the day we're -- Ed?

25         MR. GENTLE:  Yes, sir.

1    THE COURT:  Still looking at the 22nd; right?

2    MS. JONES:  No problem with us in Birmingham.

3    THE COURT:  Okay.  That's the update there.

4    What I think the best thing to do is -- I threw this

5  idea out.  I don't have -- I'm not wedded to what we're going to

6  do about -- I wasn't even wedded to that we would do it.  I

7  think this is very much something that would benefit counsel and

8  hold down costs from time to time.  I'm going to let you

9  continue to meet and confer with the special master, and he can

10  interact with me about when we can do it and where.  So maybe

11  we'll start looking at as early as August doing one of these,

12  but we'll come up -- it seems to me what we ought to do is come

13  up with a reasonable schedule.  I don't want to -- I don't want

14  to lose sight of the fact that this case is assigned to this

15  district.  So this is more of temporary relief than a seismic

16  shift in where we will do our business.  Okay?  That was the

17  idea.

18    Other issues?

19    No other issues.  Okay.  Do we want to sit -- is

20  anybody -- I don't usually do this, but I think probably I

21  should have done this.  Anybody sitting behind the bar that has

22  another issue?  Feel free to get with Ed if you don't want to

23  speak up now.  I think it's been clear to everyone -- and if it

24  wasn't, it should have been -- that we use the counsel of 12 and

25  the steering committees and all that as facilitating

1    communication of the Court; but that's not -- if you have other

2    issues -- and I'm not suggesting you do, but if you do, Ed is

3    always available to touch base.

4           All right.  What else do I need to take up for now?

5           All right.  So I think what I'd like to do is meet in

6    this order, as far as our caucuses:  subscribers, then Blues,

7    then providers.  Okay?

8           And subscribers, we'll just start in the conference

9    room next door.  Next door.  No, next door.  It's somewhere --

10   it's somewhere in that direction.  You've been there before.

11   Okay?

12          MR. COOPER:  Thank you, Your Honor.

13          THE COURT:  Thank you.  I appreciate -- I say this

14   every time.  I try to remember to say it every time, anyway.  I

15   appreciate all your hard work and your professionalism.

16      (Proceedings concluded at 10:02 a.m.)

17                   * * * * * * * * * *

18

19

20

21

22

23

24

25

```
 1                    COURT REPORTER'S CERTIFICATE

 2             I certify that the foregoing is a correct transcript

 3   from the record of proceedings in the above-entitled matter.

 4             This 21st day of June, 2019.

 5

 6                                  Risa L. Entrekin

 7                                  Risa L. Entrekin
                                    Registered Diplomate Reporter
 8                                  Certified Realtime Reporter
                                    Official Court Reporter
 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```