FILED

2020 Apr-24  AM 09:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

FILED

2019 JUL 15  P 3: 31

U.S. DISTRICT COURT
N.D. OF ALABAMA

|  |  |
|---|---|
| IN RE:  BLUE CROSS BLUE SHIELD ANTITRUST LITIGATION (MDL No. 2406) | )<br>)<br>)<br>)<br>)<br>)<br>) |

**Master File No. 2:13-CV-20000-RDP**

This document relates to Subscriber and Provider Track cases.

**[FILED UNDER SEAL]**

## EXECUTIVE SUMMARY OF EXPERT REPORT OF DR. KEVIN R. MURPHY, PH.D.

1641071.1

1.      Defendants submit the expert report of Professor Kevin Murphy.  Defendants asked Professor Murphy to analyze whether the challenged rules have injured members of the proposed classes by reducing competition.  As discussed below, Professor Murphy finds no basis in economic theory or empirical evidence to support Plaintiffs' claims that the challenged rules have caused anticompetitive injury to members of the proposed classes.

**I.      There is no economic evidence that, but for the challenged rules, a Blue or Green Plan would have entered Alabama.**

2.      To prove injury or harm, Plaintiffs must demonstrate that, but for the challenged rules, a Blue Plan would have entered Alabama as a Blue or Green.  (Murphy Rpt. ¶ 24.)  If the challenged rules did not prevent such entry, Plaintiffs have not suffered harm.  Professor Murphy finds no economic evidence that Blue Plans would have entered Alabama but for ESAs or NBE.

3.      Professor Murphy explains that Plaintiffs ignore the most important piece of economic evidence about the likelihood of entry: the behavior of non-Blue and Green insurers.  (*Id.* ¶ 71.)  These insurers are sophisticated, well-capitalized, and profit-maximizing.  And they are not bound by the challenged rules.  If entering Alabama were as profitable as Plaintiffs claim, non-Blue insurers would have rushed to enter.  Yet none did so; in fact, non-Blue insurers have been actively *shrinking* their presence in Alabama for years.  (*E.g.*, *id.* ¶¶ 80–83, 251–54.)  Professor Pakes admits that he has no explanation why, if entry into Alabama were as profitable as he opines, no other insurer has even *attempted* to capture those profits.  (*Id.* ¶ 11.)

4.      The same is true for Blue Plans using non-Blue (i.e., Green) business.  (*Id.* ¶¶ 126–29, 255–62.)  As of 2005, when Professor Pakes assumes entry, 28 Plans could have entered Alabama on a Green basis, earned all of the revenue Professor Pakes predicts a Green entrant would earn, and still fully comply with NBE.  (*Id.* ¶ 128, Exhibit 32.)  This includes every Plan adjacent to Alabama.  Plans continue to have the ability to enter Alabama on a Green

basis—in 2015, all but two Plans could have entered Alabama and captured all of Dr. Pakes' purported revenue. (*Id.* ¶ 129, Exhibit 33.)



**Exhibit 32**

**Without Violating National Best Efforts 28 Plans in 2005 Could Have Earned Professor Pakes' Predicted Green Entrant's 2013 Revenue**

5.      Professor Murphy explains that one reason why insurers have not rushed to enter Alabama is that Alabama ranks near the bottom in demographic characteristics that make entry attractive. For example, Alabama has a high poverty rate and low median income. (*Id.* ¶¶ 77–85.) Tellingly, in 2007—two years after NBE was adopted and two years after Dr. Pakes opines that Anthem would have entered Alabama—Anthem ranked Alabama near the bottom of the United States in attractiveness for potential entry. (*Id.* ¶ 85.)

6.      In addition, BCBS-AL operates with an extremely small profit margin. From 2010–2018, BCBS-AL paid roughly 92% of its premium revenue to providers. (*Id.* ¶¶ 65–66.) Only 2.6% went to profits. (*Id.* ¶ 65, Exhibit 3.) This leaves little if any profit opportunity for a potential entrant. (*Id.* ¶¶ 60–61, 65–66.) Dr. Pakes' prediction that entry would be profitable is based on predicted premiums drastically *higher* than BCBS-AL's actual premiums. (*Id.* ¶ 291–

2

92, 294.) No expert in this case has even tried to show that an entrant could charge premiums lower than BCBS-AL's *actual* premiums and make a profit.

**Exhibit 3**

**BCBS-AL Premium Breakdown**
2010-2018

Payments to Providers 91.8%

Underwriting Gain: **2.6%**

Administrative Expenses: **3.4%**

Claims Adjustment Expenses and Investments to Improve Healthcare: **2.2%**

## II.    Even assuming entry were to occur, it likely would make Plaintiffs worse off.

7.    Professor Murphy explains that both sets of Plaintiffs fail to define a proper but-for world for analyzing potential injury. In particular, Plaintiffs assume without analysis that they would receive the alleged benefits of increased competition without considering the likely loss of the benefits created by the challenged rules. (*E.g.*, *id.* ¶¶ 92–94.)

8.    *First*, Plaintiffs ignore that any entry likely would be targeted to specific geographies, providers, and subscribers. ESAs historically incentivized Blue Plans to invest in their entire service area, serving almost all geographies and contracting with almost all providers. Absent ESAs, Blue Plans would be far more likely to behave like non-Blue competitors, which often enter a state in limited geographic areas with narrower provider networks and exit if an area proves unprofitable. Such entry would not benefit subscribers or providers. (*E.g.*, *id.* ¶¶ 80–83, 98–103.)

3

9.      *Second*, Plaintiffs' experts simplistically assume that, without the challenged rules, the historical cooperation among Blue Plans would remain unchanged.   But competitors have little incentive to collaborate on a joint product; "[w]ithout ESAs, BlueCard and other products that require cooperation among Plans likely would not exist in their current form, or at all." (*Id.* ¶ 106.)   Without BlueCard, subscribers would lose access to a nationwide Blue network and protections against price-discrimination by providers.   (*Id.* ¶¶ 104–12, 136–43.)   Providers would lose access to nationwide patient volume and efficient claims-processing, one reason Alabama providers are satisfied with both BlueCard and BCBS-AL. (*See id.* ¶ 76, Exhibits 8 and 9.)

10.      *Third*, experience from the few areas with Blue-on-Blue competition does not support Plaintiffs' claims.   The handful of areas of long-established Blue-branded competition is unrepresentative of a but-for world with potential unlimited competition among 36 Blue Plans. (*Id.* ¶¶ 115–18.)   And evidence from current areas of limited Blue-on-Blue competition does not support Plaintiffs' claims.   For example, in Pennsylvania, premiums on the exchange are substantially *higher* in the areas with Blue-on-Blue competition.   (*Id.* ¶ 281, Exhibit 54.)

**Exhibit 54**

| | Year | | | | | | All |
|---|---|---|---|---|---|---|---|
| Rating Area | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | Years |
| 1 | $195 | $191 | $220 | $271 | $415 | $399 | $282 |
| 2 | $218 | $220 | $254 | $293 | $451 | $438 | $312 |
| 3 | $227 | $239 | $296 | $402 | $531 | $473 | $361 |
| 4 | $170 | $182 | $207 | $262 | $395 | $374 | $265 |
| 5 | $217 | $214 | $232 | $276 | $424 | $408 | $295 |
| 6 | $197 | $226 | $297 | $486 | $670 | $597 | $412 |
| 7 | $204 | $237 | $292 | $545 | $760 | $604 | $440 |
| 8 | $300 | $268 | $276 | $418 | $636 | $525 | $404 |
| 9 | $199 | $231 | $281 | $501 | $701 | $591 | $417 |
| | | | | | | | |
| Overlap | $199 | $230 | $291 | $502 | $697 | $596 | $419 |
| Non-Overlap | $215 | $216 | $249 | $324 | $471 | $432 | $318 |
| | | | | | | | |
| Pct. Diff. | -7% | 6% | 17% | 55% | 48% | 38% | 32% |

**Premiums Are Not Lower in the Area of Pennsylvania Where Blue Plans Overlap** — Second-Lowest Cost Silver Plan Premius, Age 40 Individual

## III.    BlueCard and other challenged Blue Rules have strong procompetitive benefits.

11.    Plaintiffs challenge several Blue Rules besides ESAs and NBE under the rule of reason.    Professor Murphy concludes that each rule has strong procompetitive benefits.    For example, BCBSA adopted BlueCard to solve longstanding inefficiencies in serving national accounts.    (*Id.* ¶¶ 136–48.)    In the 1980s and early 1990s, Blue Plans' national account membership declined by over 40 percent.    (*Id.* ¶¶ 107, 140.)    After BlueCard was implemented, this trend abruptly reversed.    (*Id.* ¶¶ 142–43.)    Thus, BlueCard increases interbrand competition by allowing Plans to better compete for large multi-state accounts—a segment served by only three other insurers—and better serve subscribers who value nationwide coverage.    (*Id.* ¶ 144–45.)

12.    The Local Best Efforts, acquisition, and uncoupling rules likewise yield strong procompetitive benefits to subscribers and providers, including by preserving Blue Plan dedication to local areas and the cooperation necessary to maintain BlueCard and other collaborative products. (*Id.* ¶¶ 149–63.)

5

**IV.    Providers have not shown that BCBS-AL has exercised monopsony power.**

13.    Professor Murphy explains that, as a matter of economics, a firm has not exercised monopsony power unless it lowers the price it pays a supplier *and* leads to reduced output.    (*Id.* ¶¶ 164–69, 172–74.)    Reduced prices and increased output are consistent with volume discounts, not monopsony.    (*Id.* ¶¶ 181–83.)    Thus, absent a reduction in quality-adjusted output, Blue Plans' ability to negotiate lower reimbursement rates is not consistent with monopsony.    (*Id.* ¶ 164.)    Yet neither Professor Frech nor Professor Haas-Wilson has shown (or even attempted to show) that the challenged rules reduce output.    (*Id.* ¶¶ 167, 170.)

14.    In fact, the empirical evidence shows no evidence of monopsony.    (*See id.* ¶¶ 184–98.)    For example, Alabama physician salaries are higher than the U.S. average, and even more so after adjusting for cost of living.    (*Id.* ¶¶ 187–91, Exhibit 38.)

**Exhibit 38**



15.    Moreover, high Blue Plan market share is *not* correlated with having less supply in a given area.    (*Id.* ¶¶ 192–98.)    In fact, Alabama has more hospital beds per capita than all

states with current Blue-on-Blue competition, and Blue Plan share appears to be correlated with *more* hospital beds per capita, not fewer. (*Id.* ¶ 198, Exhibit 43.)

**Exhibit 43**

**Hospital Beds per Capita vs. Blue Share**
Year 2017

### V. Plaintiffs' experts provide no economic evidence that subscribers or providers have been harmed by ESAs or NBE.

16.    Professor Murphy shows that Professor Pakes' structural model—the primary basis of his analysis and opinions—is unreliable. (*Id.* ¶¶ 287–312.) Like all structural models, Professor Pakes' model is wholly reliant on the assumptions provided to it. (*Id.* ¶ 287.) Here, Professor Pakes' assumptions lack any basis in real-world evidence. For example, Professor Pakes spends pages explaining that an entrant could be successful by offering innovative, new products and networks, yet instructs his model to assume that the entrant is the near mirror image of BCBS-AL. (*Id.* ¶ 300–04.)

17.    These unreliable assumptions lead to unreliable outputs. To start, his prediction that entry would be profitable contradicts real-world evidence from insurers unconstrained by the challenged rules, which have been actively exiting from Alabama for years. (*Id.* ¶¶ 248–262.)

18.    The model's predictions regarding the impact of such assumed entry are equally unreliable.    An economist must validate a model's ability to predict real-world outcomes before relying on its predictions regarding but-for world outcomes.  (*Id.* ¶ 288.)  Professor Pakes' model fails at that rudimentary step.   The model predicts pre-entry premiums, market shares, and profit margins that bear little resemblance to what occurred in the real world.   (*Id.* ¶¶ 289–93.) Because Professor Pakes' model cannot replicate the actual world, he has no basis for asserting that the model has any predictive power about the but-for world.  (*Id.* ¶¶ 294–96.)

19.    According to Professor Pakes' model's predictions, just before the assumed entry in 2005, BCBS-AL supposedly had significantly higher premiums, higher margins, and lower market share than it really did.   (*Id.* ¶¶ 289–93; Exhibit 58.)   (Professor Pakes refers to these predicted pre-entry premiums, margins, and market shares as "baseline" figures.)    In fact, according to Professor Pakes' model, in 2005, *United* was the number one competitor in the individual market, with a 67 percent share compared to BCBS-AL's 31 percent.  (*Id.* ¶ 289, Exhibit 56.)

**Exhibit 58**



**Professor Pakes' Baseline Premiums Differ Considerably from Actual Premiums**

Individual

**Exhibit 56**



**Professor Pakes' Baseline Shares Differ Considerably from Actual Shares**

Individual

20.    A hypothetical BCBS-AL with high premiums, high margins, and low market share is nothing like the real BCBS-AL that an entrant actually would have had to compete against, rendering the model's predictions meaningless. (*Id.* ¶¶ 294–96.)   Professor Pakes' "approach is equivalent to concluding that it would be profitable to open a gasoline station across the street from another gasoline station based on an assumption that the existing gas station sells

9

gas at \$2.00 per gallon, a 60 percent markup over \$1.25 per gallon cost, and serves 2,000 cars per day, when in reality the existing gasoline station sells gas at \$1.30 per gallon (a four percent markup) and serves 150 cars daily. Decisions based on such a hypothetical 'actual' competitor will not help a potential entrant make a profitable decision." (*Id.* ¶ 246.)

21.     The model's post-entry outputs are similarly nonsensical. As just one example, for individual products, Professor Pakes' model predicts that an entrant would enroll *46 times more* subscribers from the pool of *uninsured* Alabamians than from BCBS-AL's subscriber base. (*Id.* ¶¶ 297–98.)

22.     Professor Murphy finds that Professor Haas-Wilson's analysis is similarly unreliable. First, Professor Haas-Wilson assumes *without analysis* entry into every Alabama county. (*Id.* ¶¶348–56.) She further claims that the entrant would capture an identical 34.2% of BCBS-AL's current market share. (*E.g.*, *id.* ¶¶ 297, 359.) These baseless assertions drive her prediction that acute-care hospitals would have been paid significantly higher rates absent service areas. (*See id.* ¶¶ 356.)

23.     Professor Haas-Wilson also fails to prove that providers suffered monopsony harm. She does not attempt to show that the challenged rules reduced output, which is a necessary element of monopsony. And the economic evidence discussed above shows that physicians in Alabama are compensated well and that there is no relationship between the number of physicians or hospital beds and Blue Plan market share. (*Id.* ¶¶ 172–80, 357–58.)

## VI.     Plaintiffs' damages theories are fundamentally inconsistent.

24.     Finally, Professor Murphy illustrates that Subscriber and Provider Plaintiffs' damages analyses are in irreconcilable conflict. (*Id.* ¶¶ 364–68.) For example, Professor Pakes' predicted premium decrease and Professor Haas-Wilson's predicted hospital reimbursement rate

increase would completely eliminate BCBS-AL's surplus in just over two years. (*Id.* ¶ 367, Exhibit 66.)

**Exhibit 66**



Dated: July 15, 2019

Respectfully submitted,

Craig A. Hoover
E. Desmond Hogan
Justin Bernick
Peter Bisio
Elizabeth Jose
HOGAN LOVELLS US LLP
Columbia Square
555 13th Street, N.W.
Washington, DC 20004
Tel: (202) 637 5600
Fax: (202) 637 5910
craig.hoover@hoganlovells.com
desmond.hogan@hoganlovells.com
justin.bernick@hoganlovells.com
peter.bisio@hoganlovells.com
elizabeth.jose@hoganlovells.com

*Co-Coordinating Counsel for the Defendants*

Cavender C. Kimble
BALCH & BINGHAM LLP
1901 6th Avenue North, Suite 1500
Birmingham, AL 35203-4642
Tel: (205) 226-3437
Fax: (205) 488-5860
ckimble@balch.com

*With Hogan Lovells, counsel for Blue Cross and Blue Shield of North Carolina, Inc.; Louisiana Health Service & Indemnity Company (Blue Cross and Blue Shield of Louisiana); BCBSM, Inc. (Blue Cross and Blue Shield of Minnesota); Blue Cross and Blue Shield of South Carolina; Horizon Healthcare Services, Inc. (Horizon Blue Cross and Blue Shield of New Jersey); Blue Cross & Blue Shield of Rhode Island; Blue Cross and Blue Shield of Vermont; Cambia Health Solutions, Inc.; Regence Blue Shield of Idaho; Regence Blue Cross Blue Shield of Utah; Regence Blue Shield (of Washington); Regence Blue Cross Blue Shield of Oregon; Anthem, Inc., f/k/a WellPoint, Inc., and all of its named*

David J. Zott, P.C.
Daniel E. Laytin, P.C.
Sarah J. Donnell
Christa C. Cottrell, P.C.
Zachary Holmstead
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Tel: (312) 862-2000
Fax: (312) 862-2200
david.zott@kirkland.com
daniel.laytin@kirkland.com
sdonnell@kirkland.com
ccottrell@kirkland.com
zachary.holmstead@kirkland.com

*Co-Coordinating Counsel for the Defendants*

Kimberly R. West (Liaison Counsel)
Mark M. Hogewood
WALLACE JORDAN RATLIFF &
BRANDT LLC
First Commercial Bank Building
800 Shades Creek Parkway, Suite 400

12

*subsidiaries in this consolidated action*

John D. Martin
Lucile H. Cohen
Travis A. Bustamante
NELSON MULLINS RILEY &
SCARBOROUGH LLP
1320 Main Street, 17th Floor
Columbia, SC 29201
Tel: (803) 255-9421
Fax: (803) 255-9054
john.martin@nelsonmullins.com
lucie.cohen@nelsonmullins.com
travis.bustamante@nelsonmullins.com

*Counsel for Blue Cross and Blue Shield of
North Carolina, Inc.; Louisiana Health Service
& Indemnity Company (Blue Cross and
Blue Shield of Louisiana); BCBSM, Inc.
(Blue Cross and Blue Shield of Minnesota);
Blue Cross and Blue Shield of South Carolina;
Horizon Healthcare Services, Inc. (Horizon
Blue Cross and Blue Shield of New Jersey);
Blue Cross & Blue Shield of Rhode Island;
Blue Cross and Blue Shield of Vermont;
Cambia Health Solutions, Inc.; Regence
Blue Shield of Idaho; Regence Blue Cross
Blue Shield of Utah; Regence Blue Shield (of
Washington); Regence Blue Cross Blue Shield
of Oregon; Anthem, Inc., f/k/a WellPoint, Inc.,
and all of its named subsidiaries in this
consolidated action.*

Christine Varney
Evan Chesler
Karin DeMasi
Lauren Kennedy
CRAVATH SWAINE & MOORE LLP
825 Eighth Avenue
New York, NY 10019
Tel: (212) 474-1000
Fax: (212) 474-3700
cvarney@cravath.com
echesler@cravath.com
kdemasi@cravath.com
lkennedy@cravath.com

Birmingham, AL 35209
Tel: (205) 870-0555
Fax: (205) 871-7534
kwest@wallacejordan.com
mhogewood@wallacejordan.com

*Defendants' Liaison Counsel*

*With Kirkland & Ellis, counsel for Defendant,
Blue Cross and Blue Shield Association*

James L. Priester
Carl S. Burkhalter
John Thomas A. Malatesta, III
MAYNARD COOPER & GALE PC
1901 6th Avenue North, Suite 2400
Regions Harbert Plaza
Birmingham, AL 35203
Tel: (205) 254-1000
Fax: (205) 254-1999
jpriester@maynardcooper.com
cburkhalter@maynardcooper.com
jmalatesta@maynardcooper.com

Pamela B. Slate
HILL HILL CARTER FRANCO COLE &
BLACK, P.C.
425 South Perry Street
Montgomery, AL 36104
Tel: (334) 834-7600
Fax: (334) 386-4381
pslate@hillhillcarter.com

*Counsel for Defendant, Blue Cross Blue Shield
of Alabama*

Helen E. Witt, P.C.
Jeffrey J. Zeiger, P.C.
Erica B. Zolner
Casey R. Fronk
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Tel: (312) 862-2000
Fax: (312) 862-2200
hwitt@kirkland.com

13

*Counsel for Defendants Blue Cross and
Blue Shield of Tennessee, Inc.;
Blue Cross Blue Shield of Alabama;
Blue Cross and Blue Shield of Florida, Inc.;
Blue Cross and Blue Shield of Massachusetts,
Inc.*

John D. Martin
Lucile H. Cohen
Travis A. Bustamante
NELSON MULLINS RILEY &
SCARBOROUGH LLP
1320 Main Street, 17th Floor
Columbia, SC 29201
Tel: (803) 255 9421
Fax: (803) 255 9054
john.martin@nelsonmullins.com
lucie.cohen@nelsonmullins.com
travis.bustamante@nelsonmullins.com

*Counsel for Defendants Blue Cross and Blue
Shield of Tennessee, Inc.; Blue Cross and Blue
Shield of Florida, Inc.; Blue Cross and
Blue Shield of Massachusetts, Inc.*

Robert R. Riley, Jr.
RILEY & JACKSON, P.C.
3530 Independence Drive
Birmingham, AL 35209
Tel: (205) 879-5000
Fax: (205) 879-5901
rob@rileyjacksonlaw.com

*Counsel for Defendants Blue Cross and
Blue Shield of Tennessee, Inc.; Blue Cross and
Blue Shield of Florida, Inc.; Blue Cross and
Blue Shield of Massachusetts, Inc.*

Brian K. Norman
SHAMOUN & NORMAN, LLP
1800 Valley View Lane, Suite 200
Farmers Branch, TX 75234
Tel: (214) 987-1745
Fax: (214) 521-9033
bkn@snlegal.com

jzeiger@kirkland.com
ezolner@kirkland.com
cfronk@kirkland.com

Kimberly R. West (*Liaison Counsel*)
Mark H. Hogewood
WALLACE JORDAN RATLIFF &
BRANDT LLC
First Commercial Bank Building
800 Shades Creek Parkway, Suite 400
Birmingham, AL 35253
Tel: (205) 870-0555
Fax: (205) 871-753
kwest@wallacejordan.com
mhogewood@wallacejordan.com

*Counsel for Defendants, Health Care Service
Corporation, an Illinois Mutual Legal Reserve
Company, including its divisions Blue Cross
and Blue Shield of Illinois, Blue Cross and
Blue Shield of Texas, Blue Cross and
Blue Shield of New Mexico, Blue Cross and
Blue Shield of Oklahoma, and Blue Cross and
Blue Shield of Montana; Caring for
Montanans, Inc., f/k/a Blue Cross and
Blue Shield of Montana, Inc.; Highmark Inc.,
f/k/a Highmark Health Services; Highmark
West Virginia Inc.; Highmark Blue Cross
Blue Shield Delaware Inc.; California
Physicians' Service d/b/a Blue Shield of
California*

Jonathan M. Redgrave
Victoria A. Redgrave
REDGRAVE, LLP
14555 Avion Parkway, Suite 275
Chantilly, VA 20151
Tel: (703) 592-1155
Fax: (612) 332-8915
jredgrave@redgravellp.com
vredgrave@redgravellp.com

*Additional Counsel for HCSC and Highmark
Defendants*

Andy P. Campbell

14

H. James Koch
ARMBRECHT JACKSON LLP
63 South Royal Street, 13th Floor
Riverview Plaza
Mobile, AL 36602
Tel: (251) 405-1300
Fax: (251) 432-6843
hjk@ajlaw.com

*Counsel for Defendants, Carefirst, Inc.;*
*Carefirst of Maryland, Inc.; Group*
*Hospitalization and Medical Services, Inc.;*
*CareFirst BlueChoice, Inc.*

R. David Kaufman
M. Patrick McDowell
BRUNINI, GRANTHAM, GROWER
& HEWES, PLLC
190 East Capitol Street
The Pinnacle Building, Suite 100
Jackson, MS 39201
Tel: (601) 948-3101
Fax: (601) 960-6902
dkaufman@brunini.com
pmcdowell@brunini.com

Cheri D. Green
BLUE CROSS BLUE SHIELD OF
MISSISSIPPI
P. O. Box 1043
Jackson, MS 39215
Tel: (601) 932-3704
cdgreen@bcbsms.com

John D. Martin
Lucile H. Cohen
Travis A. Bustamante
NELSON MULLINS RILEY &
SCARBOROUGH LLP
1320 Main Street, 17th Floor
Columbia, SC 29201
Tel: (803) 255-9421
Fax: (803) 255-9054
john.martin@nelsonmullins.com
lucie.cohen@nelsonmullins.com

Stephen D. Wadsworth
A. Todd Campbell
Yawanna N. McDonald
CAMPBELL, GUIN, WILLIAMS, GUY
& GIDIERE LLC
505 20th Street North, Suite 1600
Birmingham, AL 35203
Tel: (205) 224-0750
Fax: (205) 224-8622
andrew.campbell@campbellguin.com
stephen.wadsworth@campbellguin.com
todd.campbell@campbellguin.com
yawanna.mcdonald@campbellguin.com

Sarah L. Cylkowski
Thomas J. Rheaume, Jr.
BODMAN PLC
201 South Division Street, Suite 400
Ann Arbor, MI 48104
Tel: (734) 761-3780
Fax: (734) 930-2494
scylkowski@bodmanlaw.com
trheaume@bodmanlaw.com

Todd Stenerson
SHEARMAN & STERLING LLP
401 9th Street, NW
Suite 800
Washington, DC 20004-2128
Tel: (202) 508-8000
Fax: (202) 508-8100
todd.stenerson@shearman.com

*Counsel for Defendant, Blue Cross and*
*Blue Shield of Michigan*

John Briggs
Rachel Adcox
AXINN, VELTROP & HARKRIDER, LLP
950 F Street, N.W.
Washington, DC 20004
Tel: (202) 912-4700
Fax: (202) 912-4701
jbriggs@axinn.com
radcox@axinn.com

15

travis.bustamante@nelsonmullins.com

*Counsel for Defendant, Blue Cross Blue Shield of Mississippi, a Mutual Insurance Company*

Michael A. Naranjo
FOLEY & LARDNER LLP
555 California Street, Suite 1700
San Francisco, CA 94104-1520
Tel: (415) 984-9847
Fax: (415) 434-4507
mnaranjo@foley.com

Alan D. Rutenberg
Benjamin R. Dryden
FOLEY & LARDNER LLP
3000 K Street, N.W., Suite 600
Washington, D.C. 20007-5109
Tel: (202) 672-5300
Fax: (202) 672-5399
arutenberg@foley.com
bdryden@foley.com

*Counsel for Defendant, USAble Mutual Insurance Company, d/b/a Arkansas Blue Cross and Blue Shield*

Charles L. Sweeris
Law Department
BLUE SHIELD OF CALIFORNIA
50 Beale Street
San Francisco, CA 94105
Tel: (415) 229-5107
Fax: (415) 229-5343
charles.sweeris@blueshieldca.com

*Counsel for California Physicians' Service d/b/a Blue Shield of California*

Robert K. Spotswood
Michael T. Sansbury
Joshua K. Payne
Mary G. Menge
Morgan B. Franz
Jess R. Nix
SPOTSWOOD SANSOM & SANSBURY

Stephen A. Rowe
Aaron G. McLeod
ADAMS AND REESE LLP
Regions Harbert Plaza
1901 6th Avenue North, Suite 3000
Birmingham, AL 35203
Tel: (205) 250-5000
Fax: (205) 250-5034
steve.rowe@arlaw.com
aaron.mcleod@arlaw.com

*Counsel for Defendant, Independence Blue Cross*

Edward S. Bloomberg
John G. Schmidt
Anna Mercado Clark
PHILLIPS LYTLE LLP
One Canalside
125 Main Street
Buffalo, NY 14203
Tel: (716) 847-7096
Fax: (716) 852-6100
ebloomberg@phillipslytle.com
jschmidt@phillipslytle.com
aclark@phillipslytle.com

Stephen A. Walsh
ADAMS and REESE LLP
1901 Sixth Avenue North, Suite 3000
Birmingham, AL 35203
Tel: (205) 250-5000
Fax: (205) 250-5091
Stephen.walsh@arlaw.com

*Counsel for Defendant, Excellus Health Plan, Inc., d/b/a Excellus BlueCross BlueShield, incorrectly sued as Excellus BlueCross BlueShield of New York*

Kathleen Taylor Sooy
Tracy A. Roman
April N. Ross
Michael W. Lieberman
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.

LLC
One Federal Place
1819 5th Avenue North, Suite 1050
Birmingham, AL 35203
Tel: (205) 986-3620
Fax: (205) 986-3639
rks@spotswoodllc.com
msansbury@spotswoodllc.com
jpayne@spotswoodllc.com
mmenge@spotswoodllc.com
mfranz@spotswoodllc.com
jnix@spotswoodllc.com

*Counsel for Defendant Capital BlueCross*

Gwendolyn Payton
KILPATRICK TOWNSEND & STOCKTON
LLP
1420 Fifth Ave, Suite 3700
Seattle, WA 98101
Tel: (206) 626-7714
Fax: (206) 299-0414
gpayton@kilpatricktownsend.com

J. Bentley Owens, III
WALLACE, ELLIS, FOWLER, HEAD
& JUSTICE
113 North Main Street
Columbiana, AL 35051-0587
Tel: (205) 669-6783
Fax: (205) 669-4932
bowens@wefhlaw.com

*Counsel for Defendants, Premera Blue Cross
d/b/a Premera Blue Cross Blue Shield of
Alaska*

David J. Zott, P.C.
Daniel E. Laytin, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Tel: (312) 862-2000
Fax: (312) 862-2200
david.zott@kirkland.com
daniel.laytin@kirkland.com

Washington, D.C. 20004
Tel: (202) 624-2500
Fax: (202) 628-5116
ksooy@crowell.com
troman@crowell.com
aross@crowell.com
mlieberman@crowell.com

John M. Johnson
Brian P. Kappel
LIGHTFOOT FRANKLIN & WHITE LLC
The Clark Building
400 20th Street North
Birmingham, AL 35203
Tel: (205) 581-0716
Fax: (205) 380-9116
jjohnson@lightfootlaw.com

*Counsel for Defendants, Blue Cross of Idaho
Health Service, Inc.; Blue Cross and
Blue Shield of Kansas, Inc.; Blue Cross and
Blue Shield of Kansas City; Blue Cross and
Blue Shield of Nebraska; Blue Cross
Blue Shield of Arizona; Blue Cross Blue Shield
of North Dakota; Blue Cross Blue Shield of
Wyoming; HealthNow New York Inc.;
BlueShield of Northeastern New York;
BlueCross BlueShield of Western New York*

17

*Counsel for Defendants Wellmark of South Dakota, Inc. (Wellmark Blue Cross and Blue Shield of South Dakota); Wellmark, Inc. (Wellmark Blue Cross and Blue Shield of Iowa); Hawaii Medical Service Association (Blue Cross and Blue Shield of Hawaii); Triple-S Salud, Inc.*

Kimberly R. West (Liaison Counsel)
Mark M. Hogewood
WALLACE, JORDAN, RATLIFF &
BRANDT, LLC
First Commercial Bank Building
800 Shades Creek Parkway, Suite 400
Birmingham, AL 35209
Tel: (205) 870-0555
Fax: (205) 871-7534
kwest@wallacejordan.com
mhogewood@wallacejordan.com

*Counsel for Defendants Wellmark of South Dakota, Inc. (Wellmark Blue Cross and Blue Shield of South Dakota); Wellmark, Inc. (Wellmark Blue Cross and Blue Shield of Iowa); Hawaii Medical Service Association (Blue Cross and Blue Shield of Hawaii)*

John D. Martin
Lucile H. Cohen
Travis A. Bustamante
NELSON MULLINS RILEY &
SCARBOROUGH LLP
1320 Main Street, 17th Floor
Columbia, SC 29201
Tel: (803) 255 9421
Fax: (803) 255 9054
john.martin@nelsonmullins.com
lucie.cohen@nelsonmullins.com
travis.bustamante@nelsonmullins.com

*Counsel for Defendants Wellmark of South Dakota, Inc. (Wellmark Blue Cross and Blue Shield of South Dakota); Wellmark, Inc. (Wellmark Blue Cross and Blue Shield of Iowa); Hawaii Medical Service Association*

18

*(Blue Cross and Blue Shield of Hawaii); Triple S Salud, Inc.*

19

## CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2019, the foregoing was electronically filed with the

Clerk of Court using the CM/ECF system which will send notification of such filing to all

counsel of record.

Craig A. Hoover

20