FILED
2020 Apr-24 PM 04:06
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| IN RE: BLUE CROSS BLUE SHIELD ANTITRUST LITIGATION (MDL No. 2406) | **Master File No. 2:13-CV-20000-RDP**<br>FILED UNDER SEAL<br>This document relates to Provider Track Cases. |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO <u>EXCLUDE PROVIDER PLAINTIFFS' EXPERT DR. DANIEL J. SLOTTJE</u>**

## TABLE OF CONTENTS


**PRELIMINARY STATEMENT** .......... **1**

**SUMMARY OF DR. SLOTTJE'S "DAMAGES" CALCULATION** .......... **3**

**LEGAL STANDARD** .......... **3**

**ARGUMENT** .......... **4**

**I. DR. SLOTTJE'S TESTIMONY MUST BE EXCLUDED BECAUSE IT TRIES TO VOUCH FOR ANOTHER EXPERT'S OPINION** .......... **4**

A. *Dr. Slottje's testimony tries to vouch for Dr. Haas-Wilson's report and is therefore inadmissible.* .......... 5

B. *Despite Dr. Slottje's impermissible vouching, he did no analysis to verify any of the critical assumptions underlying Dr. Haas-Wilson's model.* .......... 7

**II. DR. SLOTTJE'S ROUTINE MATHEMATICAL EXERCISE IS NOT AN EXPERT OPINION AND IS NOT BEYOND THE COMPREHENSION OF THE FACTFINDER.** .......... **10**

**III. DR. SLOTTJE'S TESTIMONY SHOULD BE EXCLUDED BECAUSE THE DAMAGES HE CALCULATES ARE ENTIRELY SPECULATIVE.** .......... **12**

A. *Dr. Haas-Wilson's failure to provide any opinion on an entry date is fatal to Dr. Slottje's damages calculations.* .......... 13

B. *Because Dr. Slottje does not calculate damages based on any identified overt act, he has not measured damages for which Plaintiffs are entitled to recover.* .......... 15

**IV. DR. SLOTTJE DOES NOT CALCULATE DAMAGES IN A METHOD APPROPRIATE FOR A CLASS ACTION.** .......... **17**

**V. DR. SLOTTJE'S "RELIANCE MATERIALS" SHOULD BE STRICKEN BECAUSE DR. SLOTTJE TESTIFIED THAT HE DID NOT ACTUALLY RELY ON THEM.** .......... **19**

**CONCLUSION** .......... **20**

**CERTIFICATE OF SERVICE** .......... **27**

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Bigelow v. RKO Radio Pictures*,
327 U.S. 251 (1946) ........ 14, 16

*Brown v. Electrolux Home Prods., Inc.*,
817 F. 3d 1225 (11th Cir. 2016) ........ 17

*Burnett v. New York Cent. R.R. Co.*,
380 U.S. 424 (1965) ........ 16

*Bussey v. Macon Cty. Greyhound Park, Inc.*,
562 F. App'x 782 (11th Cir. 2014) ........ 17

*Cantrell v. BNSF Ry. Co.*,
No. CIV 12-0129, 2013 WL 8632378 (D.N.M. June 28, 2013) ........ 19

*Estate of Cape v. United States*,
No. 11–C–0357, 2013 WL 4522933 (E.D. Wis. Aug. 27, 2013) ........ 7

*Columbia Steel Casting Co. v. Portland Gen. Elec. Co.*,
111 F.3d 1427 (9th Cir. 1996) ........ 15

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) ........ 17

*Concord Boat Corp. v. Brunswick Corp.*,
207 F.3d 1039 (8th Cir. 2000) ........ 14

*Daubert v. Merrell Dow Pharm., Inc.*,
509 U.S. 579 (1993) ........ 3, 4

*Finestone v. Fla. Power & Light Co.*,
272 F. App'x 761 (11th Cir. 2008) ........ 4

*Goldman v. Healthcare Mgmt. Sys.*,
559 F. Supp. 2d 853 (W.D. Mich. 2008) ........ 17

*Grp. Health Plan, Inc. v. Philip Morris, Inc.*,
188 F. Supp. 2d 1122 (D. Minn. 2002) ........ 14

*Hartle v. FirstEnergy Generation Corp.*,
7 F. Supp. 3d 510 (W.D. Pa. 2014) ........ 5, 6, 7

*Jones Creek Inv'rs, LLC v. Columbia Cty.*
No. CV 111-174, 2013 WL 12141348 (S.D. Ga. Dec. 23, 2013)....11

*Jones v. Anderson*,
No. 5:17-cv-77, 2018 WL 2717221 (S.D. Ga. June 6, 2018)....19

*Juarez v. Friess*,
No. 13-145 Erie, 2016 WL 3551690, (W.D. Pa. June 30, 2016)....7

*Klehr v. A.O. Smith Corp.*,
521 U.S. 179 (1997)....15, 16

*Loughlin v. Amerisave Mortg. Corp.*,
No. 1:14-cv-3497, 2018 WL 1896409 (N.D. Ga. Feb. 7, 2018)....17

*McCall v. Skyland Grain LLC*,
No. 08-CV-01128, 2010 WL 1435369 (D. Colo. Apr. 9, 2010)....12

*Morton's Market, Inc. v. Gustafson's Dairy, Inc.*,
198 F. 3d 823 (11th Cir. 1999)....15

*PODS Enters. Inc. v. U-Haul Int'l Inc.*,
No. 8:12-cv-01479-T-27MAP, 2014 WL 12628662 (M.D. Fla. Jul. 2, 2014)....7

*Randle v. Chase Bank*,
Case No. 1:13-cv-1503, 2018 WL 846047 (C.D. Ill. Feb. 13, 2018)....16

*Richard Parks Corrosion Tech., Inc. v. Plas-Pak Indus., Inc.*,
No. 3:10-cv-437, 2015 WL 5708541 (D. Conn. 2015)....10

*Rink v. Cheminova, Inc.*,
400 F.3d 1286 (11th Cir. 2005)....9

*Rossi v. Darden*,
No. 16-21199-CIV, 2017 WL 2129429 (S.D. Fla. May 17, 2017)....10, 11

*Schwartz v. Fortune Magazine*,
193 F.R.D. 144 (S.D.N.Y. 2000)....10

*Scott v. City of Sioux City*,
68 F. Supp. 3d 1022 (N.D. Iowa 2014)....16

*Sher v. Raytheon Co.*,
419 F. App'x. 887 (11th Cir. 2011)....4

*Sunbeam Television Corp. v. Nielsen Media Research, Inc.*,
711 F.3d 1264 (11th Cir. 2013)....16

*In re Travel Agent Comm'n Antitrust Litig.*,
583 F. 3d 896 (6th Cir. 2009) ....................16

*Tunis Bros. Co. v. Ford Motor Co.*,
124 F.R.D. 95 (E.D. Pa. 1989)....................6, 7

*U.S. Bank Nat'l Ass'n v. James*,
741 F. Supp. 2d 337 (D. Me. 2010) ....................6, 12

*United States v. Frazier*,
387 F.3d 1244 (11th Cir. 2004) ....................6, 7, 12

*United States v. O'Keefe*,
825 F.2d 314 (11th Cir. 1987) ....................5

*Va. Power Energy Mktg., Inc. v. EQT Energy, LLC*,
No. 3:11CV630, 2012 WL 13034278 (E.D. Va. May 9, 2012)....................5

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)....................17

*Waymo LLC v. Uber Techs., Inc.*,
No. C 17-00939, 2017 WL 5148390 (N.D. Cal. Nov. 6, 2017)....................6, 12

*Williamson Oil Co. v. Philip Morris USA*,
346 F.3d 1287 (11th Cir. 2003) ....................4

*In re Wireless Tel. Servs. Antitrust Litig.*,
385 F. Supp. 2d 403 (S.D.N.Y. 2005)....................15

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
401 U.S. 321 (1971)....................12

**Statutes**

15 U.S.C. § 15....................15

**Other Authorities**

FED. R. CIV. P. 23(b)(3)....................17

FED. R. EVID. 403 ....................7

FED. R. EVID. 702 ....................3

## PRELIMINARY STATEMENT

Providers submitted the expert report of Daniel J. Slottje, Ph.D. in an attempt to legitimize their far-fetched $4.3 billion damages figure for Alabama hospitals. Though Dr. Slottje, who holds himself out as an inductee into the Econometrician Hall of Fame, may be qualified to offer opinions in other litigations, he fails to provide any *expert opinion* at all in this case. His testimony must therefore be excluded.

Dr. Slottje's opinion is designed to accomplish two goals: to vouch for the credibility of Dr. Haas-Wilson's opinion, and to serve as a mouthpiece for Providers' multi-billion dollar damages claim. Neither of these goals is permissible. Nor are they expert opinion. Dr. Slottje does not use any of his self-proclaimed economic expertise to offer an expert opinion on who, when, where, how, or if any Defendants would have entered Alabama to sell insurance or contract with providers but for the challenged rules. But those opinions are critical to ascertaining how, if at all, the challenged rules caused monetary damages to any named Plaintiffs or any putative class members.

Instead of offering these critical opinions, Dr. Slottje simply multiplies the "estimates of harm" calculated by another of Providers' experts (Dr. Haas-Wilson) by the amounts BCBSAL actually paid to each hospital in Alabama—simple math. This type of basic mathematical calculation is not an opinion at all, much less an admissible expert opinion under *Daubert*. It is also extremely prejudicial to Defendants to permit a highly-qualified economist such as Dr. Slottje to testify to the jury that he, directly or indirectly, vouches for the reliability of Dr. Haas-Wilson's opinion and that Alabama hospitals have incurred $4.3 billion in damages (approximately $13 billion trebled), especially when he has done no independent economic analysis to reach those conclusions.

Moreover, the individual damages that he has calculated are speculative and must be excluded for that reason alone. Dr. Slottje, relying upon Dr. Haas-Wilson, assumes that whatever Defendant(s) would have entered Alabama to sell insurance would have done so before the class period started (and potentially decades earlier), remained in Alabama until the class period started, been at full competitive maturity on Day 1 of the class period, sold a wide-network product (so as to include all hospitals in the class) in every county or core-based statistical area ("CBSA") in the state, and remained in Alabama throughout the entire class period. Neither Dr. Slottje nor Dr. Haas-Wilson point to anything in the record to support those assumptions—indeed, Dr. Haas-Wilson testified that it is not necessary to identify even the *decade* in which a Defendant might have entered Alabama absent the challenged agreements.

But from a legal perspective, Providers' theory of the case requires damages to stem from blocked entry. Dr. Slottje's calculations are, however, based on both *assumed* entry and *assumed* growth occurring at an unspecified time. His "damages model" therefore is speculative. To permit the recovery of damages based on assumed blocked entry that occurred years or decades before the class period would unduly prejudice Defendants who would have no way to refute an expert's soothsaying about how the world would have developed if a single event was different in the undefined and unidentified distant past.

Dr. Slottje's testimony separately should also be excluded because he effectively treats this case—even if a class is certified—as 106 individual cases instead of one involving common proof. Dr. Slottje does not account for evidence in the record showing that insurer entry and exit decisions are highly individualized, and how any given insurer impacts providers will vary wildly by putative class member. While Dr. Slottje may have provided an individualized formula for calculating

damages, he admits that he does not provide a method for answering these critical questions using common proof.

Because Dr. Slottje offers no expert opinion at all in calculating damages, and those calculations are speculative, his testimony must be excluded.[1]

## SUMMARY OF DR. SLOTTJE'S "DAMAGES" CALCULATION

Dr. Slottje's purpose in this litigation is to calculate damages for the putative Acute Care Hospital Provider class. Slottje Report ¶ 9. He purported to do this using the following four steps that he illustrates for a single Plaintiff, Jackson Medical Center:

1. *Step A:* The allowed amounts BCBSAL paid to Jackson Medical Center using BCBSAL's claims data are "**summed**."

2. *Step B*: BCBSAL's "retroactive settlements," which are designed to reconcile the amounts BCBSAL pays to a given hospital to align with the services the hospital actually performed, are "**summed**." Retroactive settlements could result in BCBSAL paying the hospital more money or the hospital refunding BCBSAL.

3. *Step C*: The "allowed amount totals from Step A are **adjusted** [(*i.e.*, added or subtracted)] to account for the retroactive settlements from Step B."

4. *Step D*: The "adjusted allowed amount totals from Step C are **multiplied** by estimates of harm . . . as reported in the Haas-Wilson Report."

Slottje Report ¶ 74 (emphasis added). As Dr. Slottje testified, "[m]y model takes the harm estimates from [Dr. Haas-Wilson's] model and multiplies them by the actual allowed amounts and determines damages." Slottje Tr. (Ex. 1) na124:22–25.

## LEGAL STANDARD

A party offering expert testimony bears the burden of proving that such testimony meets the standards set out in Federal Rule of Evidence 702 and described in *Daubert v. Merrell Dow*

[1] Dr. Slottje testified that he submitted his report "[a]s an expression of [his] opinions . . . with respect to both class certification and merits." Slottje Tr. 18:10 –12. Defendants' motion to exclude thus seeks to exclude Dr. Slottje at all stages of the case.

*Pharm., Inc.*, 509 U.S. 579 (1993); *Sher v. Raytheon Co.*, 419 F. App'x. 887, 890–91 (11th Cir. 2011). District courts must act as "gatekeepers, admitting expert testimony only if it is both reliable and relevant." *Finestone v. Fla. Power & Light Co.*, 272 F. App'x 761, 767 (11th Cir. 2008) (internal citations omitted). Expert testimony must satisfy all three prongs of the *Daubert* standard, which are that: "(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *Williamson Oil Co. v. Philip Morris USA*, 346 F.3d 1287, 1322 (11th Cir. 2003).

## ARGUMENT

### I. DR. SLOTTJE'S TESTIMONY MUST BE EXCLUDED BECAUSE IT TRIES TO VOUCH FOR ANOTHER EXPERT'S OPINION.

Providers impermissibly attempt to use Dr. Slottje to vouch for the reliability of Dr. Haas-Wilson's report. Dr. Slottje tries to vouch both directly, by saying that he reviewed her report "as if [he were] refereeing a journal article," and that he "would publish it," Slottje Tr. 41:3–5, 11, and indirectly, by referring to her report more than 100 times in his own report and adopting her calculations without modification. Vouching for another expert's testimony is not an acceptable expert opinion and this Court should not admit it. Nor did Dr. Slottje actually review Dr. Haas-Wilson's report as if he were a journal referee, because he did not examine any of the flawed assumptions underlying her report or provide feedback on it. *See infra* § I.B. Courts routinely exclude expert testimony that merely restates the opinions of others, as Dr. Slottje has done in this case. This Court should do the same.

A. *Dr. Slottje's testimony tries to vouch for Dr. Haas-Wilson's report and is therefore inadmissible.*

It is well-settled that an expert cannot vouch for the credibility or reliability of another expert's report. *See, e.g.*, *United States v. O'Keefe*, 825 F.2d 314, 319 (11th Cir. 1987) (affirming district court's exclusion of expert testimony that was cumulative and "nothing more than a personal vouching of one expert for another expert"); *Hartle v. FirstEnergy Generation Corp.*, 7 F. Supp. 3d 510, 526 (W.D. Pa. 2014) (excluding opinion because "[e]xpert opinion about the credibility of other [expert] witnesses generally is not helpful as it undermines the jury's credibility-finding function"); *Va. Power Energy Mktg., Inc. v. EQT Energy, LLC*, No. 3:11CV630, 2012 WL 13034278, at *1 (E.D. Va. May 9, 2012) (excluding section of expert report that was merely a "comment upon the opinion of another expert and is nothing more than vouching for the opinion of the other expert . . . and therefore is not a proper subject for expert opinion evidence"). Despite this black letter prohibition, Providers try to use Dr. Slottje as a vehicle to try to enhance the credibility of Dr. Haas-Wilson's report.

Dr. Slottje unabashedly embraces this inappropriate vouching function. At his deposition, Dr. Slottje claimed that Dr. Haas-Wilson's report is "very high quality work" and "very robust," and stated that he "would publish it." Slottje Tr. 41:3–11. And these were not just off-the-cuff statements during a deposition. Dr. Slottje repeatedly opined on the purported reasonableness and reliability of Dr. Haas-Wilson's report. *See, e.g.*, Slottje Tr. 40:11–15; 48:19–21 ("I assume her analysis is correct, and I have already told you that I also believe it is reliable and well done."); 67:5–14 (claiming Dr. Haas-Wilson developed an "amazing" model); 78:2–20 (describing one of Dr. Haas-Wilson's key assumptions as "reasonable"); 143:2–12 (responding that his testimony "absolutely" involved an opinion about the reasonableness of Dr. Haas-Wilson's work); 147:15–

148:1 ("I relied on [my over forty years of experience] to come to the conclusion I believe [Dr. Haas-Wilson's] work is reasonable.").[2]

However, neither Dr. Slottje's belief that he would publish Dr. Haas-Wilson's report in some hypothetical journal nor his opinions about the reasonableness or reliability of her opinions are admissible because it is the factfinder's role, not Dr. Slottje's, to determine whether Dr. Haas-Wilson's opinions are credible. *See, e.g.*, *Hartle*, 7 F. Supp. 3d at 526; *Tunis Bros. Co. v. Ford Motor Co.*, 124 F.R.D. 95, 98 (E.D. Pa. 1989) ("It is the jury's function to determine the validity of Mr. Oxman's opinions and not to judge Dr. Kursh's opinions of Mr. Oxman's opinions."). And it is prejudicial to Defendants to permit Dr. Slottje, a self-described expert academic with "over forty years of experience . . . that's published over a hundred and sixty papers in rigorous journals," Slottje Tr. 147:17–19, to opine on the credibility of Dr. Haas-Wilson's report. *See, e.g., Waymo LLC v. Uber Techs., Inc.*, No. C 17-00939, 2017 WL 5148390, at *5 (N.D. Cal. Nov. 6, 2017); *U.S. Bank Nat'l Ass'n v. James*, 741 F. Supp. 2d 337, 343 (D. Me. 2010); *see also United States v. Frazier*, 387 F.3d 1244, 1263 (11th Cir. 2004) (holding that expert testimony can be given inappropriate "talismanic significance").

Dr. Slottje's attempts to vouch for Dr. Haas-Wilson are not limited to his direct (and unsupported) testimony about the reasonableness or reliability her opinion. Throughout his report, Dr. Slottje extensively summarizes Dr. Haas-Wilson's work. Slottje Report ¶¶ 50–61, 67; *see also* Slottje Tr. 49:12–16 (Q: "How did you learn about Dr. Haas-Wilson's expectations of the but-for world?" A: "Because she expressed them. I'm simply relating here what she expressed."). Experts are not, however, permitted to act as a mouthpiece for another expert and parrot the other expert's

[2] At his deposition, Dr. Slottje confirmed that his report contains all of his opinions in this case. Slottje Tr. 394:24–395:4. Because Dr. Slottje did not disclose in his report any method he used to assess the reliability of Dr. Haas-Wilson's opinion, other than repeat the steps in her report, his attempt to vouch for her opinion should be excluded.

opinion to the jury. *See PODS Enters. Inc. v. U-Haul Int'l Inc.*, No. 8:12-cv-01479-T-27MAP, 2014 WL 12628662, at *2 (M.D. Fla. Jul. 2, 2014) (finding expert's references to another expert's surveys "inadmissible because [the expert] d[id] nothing more than parrot [his counterpart's] findings and opinions, suggesting that they 'corroborate' his own opinion") (citing *O'Keefe*, 825 F.2d at 319); *Estate of Cape v. United States*, No. 11–C–0357, 2013 WL 4522933, at *5 (E.D. Wis. Aug. 27, 2013). Permitting Dr. Slottje to re-explain Dr. Haas-Wilson's work would be prejudicial to Defendants because it would provide an unsubstantiated aura of credibility around her opinion.[3] To prevent this prejudice, the Court must exclude Dr. Slottje's testimony about the reliability or credibility of Dr. Haas-Wilson's report and his attempts to explain her methodology.

B. *Despite Dr. Slottje's impermissible vouching, he did no analysis to verify any of the critical assumptions underlying Dr. Haas-Wilson's model.*

Dr. Slottje's vouching for Dr. Haas-Wilson's work is impermissible. But even if it were allowed, Dr. Slottje did not actually conduct the sort of review of Dr. Haas-Wilson's report that he claims to have undertaken. Although his calculations rely entirely on the output from Dr. Haas-Wilson's model,[4] Dr. Slottje did nothing at all to verify, and has no opinions on, any of the key assumptions in her report. *See, e.g., Estate of Cape*, 2013 WL 4522933, at *5; *Frazier*, 387 F.3d at 1255 (excluding expert's opinion where "there was no basis for assessing the reliability of [the expert's] opinion"). Indeed, Dr. Slottje tries to prop up the credibility of Dr. Haas-Wilson's work

[3] Dr. Slottje's explanation of Dr. Haas-Wilson's testimony would also be unnecessarily cumulative of Dr. Haas-Wilson's testimony and should be excluded on that additional basis. *See, e.g., Juarez v. Friess*, No. 13-145 Erie, 2016 WL 3551690, at *1 (W.D. Pa. June 30, 2016) (noting that use of reports whose "material aspects" were "substantially identical" amounts to improper vouching, "justif[ying] exclusion under Rule 403"); *PODS Enters.*, 2014 WL 12628662, at *2; *Hartle*, 7 F. Supp. 3d at 525 (emphasizing the cumulative effect of "vouching" opinions); *Tunis Bros. Co.*, 124 F.R.D. at 98 (expert reports that "appear to vouch for previous experts violate[] Fed. R. Evid. 403 and [] needlessly present cumulative evidence, waste time, and mislead the jury").

[4] Slottje Tr. 237:11–17 ("Q: But as – Regard to the estimate of harm, you do nothing with that except plug it into your formula; correct? A: I put it into my formula. Q: Right. Do you do anything else to the estimate of harm? A: No."); *see also* Slottje Tr. 35:24–36:2; 145:9–15.

with a glib assertion that he read her report, relied on his experience as an economist, and treated this as if he were refereeing a journal. Adopting her assumptions, however, required him (and would require the Court) to turn a blind eye to the fact that no insurer other than BCBSAL, including any non-Blue insurer, has ever competed in Alabama in the way that he or Dr. Haas-Wilson assumes would have happened but for the challenged rules.

For example, Dr. Slottje admits that he did no testing and has no opinion on any of the key assumptions that would be required to give a reliable damages opinion in this case, including:

- Dr. Slottje "did not independently come to the judgments that Dr. Haas-Wilson came to." Slottje Tr. 32:5–8.
- Dr. Slottje did not determine that BCBSAL's market share would be lower but for the challenged rules. *Id.* at 55:14–56:3.
- Dr. Slottje did not determine that any Defendant would have entered Alabama to sell insurance but for the challenged rules. *Id.* at 56:15–57:1.
- Dr. Slottje has no opinion about which of the Defendants would have entered Alabama to sell insurance but for the challenged agreements. *Id.* at 58:9–14.
- Dr. Slottje does not know whether the Blue entrant(s) into Alabama that Dr. Haas-Wilson assumes is a single Defendant or several different Defendants. *Id.* at 66:11–21.
- Dr. Slottje has no opinion on what types of products Dr. Haas-Wilson's assumed entrant would have sold in any CBSA or county in Alabama. *Id.* at 75:22–76:4.
- Dr. Slottje has no opinion on whether Dr. Haas-Wilson's model would show harm to hospitals in a given CBSA or county in Alabama if no Defendant entered that area. *Id.* at 125:25–126:19; 128:20–129:3.
- Dr. Slottje has no opinion about which hospitals would be in the network of any Defendant that Dr. Haas-Wilson assumes would have entered Alabama. *Id.* at 160:17–22; 243:8–12.
- Dr. Slottje has no opinion on how Dr. Haas-Wilson's assumed entrant would have built provider networks or how long that might have taken. *Id.* at 241:12–21.
- Dr. Slottje has no opinion on the strategy Dr. Haas-Wilson's assumed entrant would have used to compete in Alabama. *Id.* at 159:4–12.

- Dr. Slottje has no opinion on when Dr. Haas-Wilson's assumed entrant would have entered Alabama other than that it would have occurred long before the class period. *Id.* at 242:11–243:5.

Dr. Slottje has no opinions on these key issues even though he had access to record evidence from all of the Defendants and numerous non-Blue insurers in this case that he could have used to test and challenge Dr. Haas-Wilson's assumptions. *Id.* at 136:10–17. The record is replete with evidence from insurers that are not subject to the challenged rules that such insurers do not view Alabama as an attractive market to enter; the limited entry that has occurred is narrow in terms of geography, products, and networks; and non-Blue insurers frequently exit Alabama markets.[5] Dr. Slottje ignored all of this evidence in simply accepting everything Dr. Haas-Wilson said as gospel. Even if vouching were permissible—and it is not—without reviewing the voluminous evidence explaining how insurers actually enter markets, build networks, and compete with one another, Dr. Slottje cannot have reached any relevant conclusion that Dr. Haas-Wilson's model was reliable. Because Dr. Slottje has not taken a critical look at Dr. Haas-Wilson's assumptions, and his calculations entirely rely on the viability of her model, his report and testimony must be excluded.[6]

[5] *See, e.g.*, Cigna Tr. (Ex. 2) 84:13–85:5 [redacted] Aetna Tr. (Ex. 3) 226:15–24 [redacted] Humana Tr. (Findlay) (Ex. 4) 131:10–11;104:22–105:1 (discussing exiting Alabama ACA exchanges due to poor financial performance); *see also* Mem. Op., Section 1 Standard of Review and Single Entity Defense at 19 n.9 (Apr. 5, 2018), ECF No. 2063 ("Unlike the Blue Plans, who are dedicated to their local markets, the national insurers have demonstrated a willingness to pull out of markets and leave populations uninsured."). This topic will be discussed in far more detail in contemporaneous motions and motions to be filed in the near future.

[6] In addition, because Dr. Slottje's opinion is based entirely on Dr. Haas-Wilson's data, if Dr. Haas-Wilson's opinion is excluded, Dr. Slottje's opinion must also be excluded. *See Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005) (trial court properly excluded opinions of expert offered at summary judgment who based his opinions on data the court found to be inadmissible due to lack of reliability).

## II. DR. SLOTTJE'S ROUTINE MATHEMATICAL EXERCISE IS NOT AN EXPERT OPINION AND IS NOT BEYOND THE COMPREHENSION OF THE FACTFINDER.

Stripped of all of its inadmissible vouching, Dr. Slottje's report is, at its core, a simple mathematical exercise that is not an expert opinion at all. As Dr. Slottje succinctly explained: "My model takes the harm estimates from [Dr. Haas-Wilson's] model and multiplies them by the actual allowed amounts and determines damages." Slottje Tr. 124:22–25.[7] Another of Providers' experts, Dr. Frech, concurred and described Dr. Slottje's opinion as "basically [doing] some mathematical functions on what Dr. Haas-Wilson had done."[8] Frech Tr. (Ex. 5) 46:6–8. But it is well-settled that arithmetic is not expert opinion—indeed, it is not an opinion at all. *See Rossi v. Darden*, No. 16-21199-CIV, 2017 WL 2129429, at *9 (S.D. Fla. May 17, 2017) (excluding opinion of mechanical engineer whose methodology "largely consists of identifying and comparing numbers, and then inputting th[ose] numbers into a simple division equation"). Nor is it beyond the comprehension of the factfinder. *Richard Parks Corrosion Tech., Inc. v. Plas-Pak Indus., Inc.*, No. 3:10-cv-437, 2015 WL 5708541, at *7 (D. Conn. 2015) (excluding expert testimony because plaintiff "failed to show how these calculations are more than simple math that a jury could do without the assistance of an expert"); *Schwartz v. Fortune Magazine*, 193 F.R.D. 144, 147 (S.D.N.Y. 2000).

Perhaps recognizing that all he had done was some arithmetic, Dr. Slottje tried to make his work sound complicated by saying that:

> I take a database that has tens of millions of claims in it and put it in a form that it can be analyzed and make a lot of analyses with respect to what's

---

[7] *See* Summary of Dr. Slottje's "Damages" Calculation, *supra* at 3.

[8] Dr. Frech reaffirmed this position when he explained that Dr. Slottje did not construct an econometric model, but that "ultimately [Dr. Slottje's calculations are] a matter of mathematics." Frech Tr. 60:23–61:11.

> covered and what's not covered. And then you take those numbers and put them in a form that are then cogently divided up by these various scenarios and calculate all that. And if you want to characterize that as just doing long math, that's fine. That's not my view of long math, and I do a lot of math.

Slottje Tr. 236:22–237:7. However, this obfuscates that Dr. Slottje applied no expertise or methodology in making his calculations. Dr. Slottje mentions "analyz[ing]" "what's covered and what's not covered," but he admitted that this process was not his opinion because Providers' counsel told him what was and was not covered, and he simply instructed his team to implement those assumptions of counsel without modification. *Id.* at 22:4–23:14; *see also id.* at 261:23–262:3 ("Literally every exclusion I'm doing, I've told you, was based on guidance. I didn't make an independent assessment of [what is] chipped out of network; all of the things that I excluded were things that I was instructed to exclude."). And then he talks about "cogently . . . divid[ing] up [the data] by these various scenarios." *Id.* at 237:1–3. That, too, was not Dr. Slottje's opinion because Dr. Haas-Wilson is the one that created all the scenarios and provided the estimates of harm for each without input from Dr. Slottje. *Id.* at 89:7–15. By the time Dr. Slottje got to it, all he had to do was multiply Dr. Haas-Wilson's numbers by BCBSAL's payments. *Id.* at 124:22–25.

Such a "basic arithmetic exercise is not beyond the understanding of the average layperson and therefore does not assist the trier of fact through application of an expert's specialized knowledge or technique." *Rossi*, 2017 WL 2129429, at *9 (internal quotation marks and citation omitted). Courts routinely exclude simple math masquerading as an expert opinion—particularly where the opinion "consist[ed] entirely of information provided to [the expert] by other witnesses and the application of simple arithmetic," rendering the expert's testimony "nothing more than parroted statements . . . and the application of simple math to arrive at damage figures." *Jones Creek Inv'rs, LLC v. Columbia Cty.* No. CV 111-174, 2013 WL 12141348, at *19 (S.D. Ga. Dec.

23, 2013); *see also McCall v. Skyland Grain LLC*, No. 08-CV-01128, 2010 WL 1435369, at *3 (D. Colo. Apr. 9, 2010) (excluding expert whose methodology "consisted of adding, subtracting, multiplying and dividing numbers provided by plaintiffs and another expert," noting that "[p]laintiffs have not explained why a jury will need the testimony of a damages expert to perform such arithmetic").

Because Dr. Slottje's methodology amounts to little more than arithmetic on top of statements parroting Dr. Haas-Wilson's report, it is prejudicial to allow Dr. Slottje to tell the jury that it is his "opinion" that there are $4.3 billion in damages (approximately $13 billion trebled) when he has no actual expert opinion at all. *See, e.g., Waymo LLC v. Uber Techs., Inc.*, No. C 17-00939, 2017 WL 5148390, at *5 (N.D. Cal. Nov. 6, 2017); *U.S. Bank Nat'l Ass'n v. James*, 741 F. Supp. 2d 337, 343 (D. Me. 2010); *see also United States v. Frazier*, 387 F.3d 1244, 1263 (11th Cir. 2004). The Court should exclude Dr. Slottje's report and testimony, as it is just a mathematical exercise masquerading as an expert opinion of a Ph.D. economist.

## III. DR. SLOTTJE'S TESTIMONY SHOULD BE EXCLUDED BECAUSE THE DAMAGES HE CALCULATES ARE ENTIRELY SPECULATIVE.

The Court should also exclude Dr. Slottje's damages calculations because they are based on Dr. Haas-Wilson's speculation about events she assumes would have occurred at some unidentified point in the distant past and how the world would have potentially developed over decades. Because Dr. Slottje uncritically accepts Dr. Haas-Wilson's unsupported assumptions that she uses to generate her estimates of harm, any "damages" Dr. Slottje calculates are speculative and must be excluded. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 339 (1971).

A. *Dr. Haas-Wilson's failure to provide any opinion on an entry date is fatal to Dr. Slottje's damages calculations.*

One of the key questions in this case—the "Alabama case"—is whether the challenged rules blocked Defendants from entering parts or all of Alabama. Dr. Haas-Wilson makes no attempt to identify when any supposedly blocked entry into Alabama might have occurred—indeed, she contends that she need not even identify the *decade* in which it occurred. Haas-Wilson Tr. (Ex. 6) 122:8–18. Instead, Dr. Haas-Wilson assumes, with no citation to any fact in the record, that one or more Defendants would have entered every CBSA and county in Alabama *at some unidentified point in history* and been at full competitive maturity in all of those areas by the start of the class period. *See* Haas-Wilson Report ¶¶ 447–49; Haas-Wilson Tr. 102:13–23; 104:7–21; 119:18–120:10; 127:4–22.

But Dr. Haas-Wilson's failure to provide any opinion on an entry date is fatal for Dr. Slottje's damages calculations. Relying again on Dr. Haas-Wilson, Dr. Slottje also professes, without support, that it is not necessary to identify an entry date for competitors in the Alabama market. *See, e.g.*, Slottje Tr. 191:14–194:8. Neither Dr. Haas-Wilson nor Dr. Slottje offers an opinion on when a Defendant might have entered Alabama but for the challenged agreements, the strategy it would have used to grow, and the likelihood that it would have been profitable *such that it would have been in the market at the start and throughout the class Period.* Yet, Dr. Haas-Wilson acknowledges that it takes significant time and investment for an insurer to enter a new market, Haas-Wilson Report ¶ 292, and that profitability and performance in a market could very well lead an insurer to exit a market, Haas-Wilson Tr. 131:6–19. Thus, without a record-based opinion on the entry date, Dr. Haas-Wilson's assumption that there would have been at least one more insurer everywhere in Alabama at full competitive strength throughout the class period is

pure speculation.[9] *See id.* at 119:3–120:10. And the "damages" Dr. Slottje calculates are, by extension, speculative. Slottje Tr. 145:14–15 (acknowledging that "[i]f [Dr. Haas-Wilson's opinions] weren't [reliable], then mine couldn't be.").

Dr. Haas-Wilson admits that she has no opinion about whether exclusive service areas impacted any given hospital without her assumption that two Defendants would have been operating in the hospital's CBSA or county—such as if another Defendant never entered to sell insurance or if it exited. *See* Haas-Wilson Tr. 199:24–200:11. Similarly, Dr. Haas-Wilson admits that if a Defendant would have entered only shortly before the class period or during the class period, her model provides no way to account for how the hypothetical entrant would have competed, grown, or built its provider networks. *See id.* at 120:21–122:7.

Absent any opinions on these real world issues facing insurance markets and without any support in the record, Dr. Haas-Wilson's model cannot generate anything but speculative results. *See, e.g.*, *Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 580–81 (1946) ("[T]he jury may not render a verdict based on speculation or guesswork."); *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1057 (8th Cir. 2000) (excluding expert's model that was based on assumptions not established by evidentiary facts); *Grp. Health Plan, Inc. v. Philip Morris, Inc.*, 188 F. Supp. 2d 1122, 1132–33 (D. Minn. 2002) (excluding expert who, although he used a generally accepted methodology, based his opinion on unsupported assumptions about historical events). And because Dr. Slottje's model is entirely reliant on Dr. Haas-Wilson's, the damages Dr. Slottje calculates are entirely speculative and must be excluded.[10]

---

[9] Though Subscribers' opinion about the hypothetical date of entry (early 2005) is marked by other legal infirmities that will be described in other motions, the fact is that even Subscribers recognize that because of the way insurance markets work, the date of assumed entry is critical to any analysis in this case. *See, e.g.*, Mem. of Law in Supp. of Defs.' Mot. to Exclude or Strike the Expert Report, Op., & Test. of Dr. Ariel Pakes, filed contemporaneously herewith.

[10] Dr. Slottje's model should also be excluded because it fails to take into account key variables—including volume changes or the substitution effect that would occur due to changes in price—and neither does Dr. Haas-Wilson's. *See*

B. *Because Dr. Slottje does not calculate damages based on any identified overt act, he has not measured damages for which Plaintiffs are entitled to recover.*

Relatedly, because the assumed entry and growth in Dr. Haas-Wilson's model occurs before the class period, Providers do not—and cannot—identify the occurrence of any overt act (*i.e.*, blocked entry) from which they are entitled to collect damages. *See* 15 U.S.C. § 15 (allowing a person who has been "injured . . . by reason of anything forbidden in the antitrust laws" to recover treble damages); *Morton's Market, Inc. v. Gustafson's Dairy, Inc.*, 198 F. 3d 823, 827 (11th Cir. 1999) ("A[n antitrust] plaintiff must file his claim within four years following defendant's injurious act."). By failing to identify any specific time of entry into Alabama, Dr. Haas-Wilson (and Dr. Slottje, by extension) merely measures the hypothetical effect of entry before the class period. But Plaintiffs may only recover from overt acts that occur within the limitations period.[11] *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 190 (1997) ("[P]laintiff[s] cannot use an independent, new act as a bootstrap to recover for injuries caused by other predicate acts that took place outside the limitations period."); *see also Morton's Market,* 198 F. 3d at 828; *Columbia Steel Casting Co. v. Portland Gen. Elec. Co.*, 111 F.3d 1427, 1444 (9th Cir. 1996) (an electric company's "refusal to wheel [its competitor's] electricity to [the plaintiff's] plant" outside of its exclusive service area set by a previous market allocation agreement "was an overt act that restarted the statute of limitations").

---

*In re Wireless Tel. Servs. Antitrust Litig.*, 385 F. Supp. 2d 403, 428 (S.D.N.Y. 2005) (refusing to consider expert opinion at summary judgment and holding "[w]here an expert conducts a regression analysis and fails to incorporate major independent variables, such analysis may be excluded as irrelevant"); Slottje Dep. Tr. 310:19–23 (agreeing that "when analyzing the but-for world price and quantity[] adjustments can be very important."); *see also id.* at 315:7–316:1 (admitting that he did not "conduct any analysis of the impact of [his] calculated provider price increase on utilization" and that he does not know whether Dr. Haas-Wilson analyzed the impact either).

[11] As Providers concede by limiting their claimed damages to the four-year period before the complaint was filed, there is no argument that the challenged agreements were fraudulently concealed in a way that might extend the limitations period.

Here, because Dr. Slottje does not calculate damages based on any identified overt act, let alone one that occurred during the class period, he has not measured damages for which Plaintiffs are entitled to recover. *Klehr*, 521 U.S. at 190; *see Sunbeam Television Corp. v. Nielsen Media Research, Inc.*, 711 F.3d 1264, 1272–73 (11th Cir. 2013) (to demonstrate a causal relationship between the alleged violation and the alleged injury, a customer must provide evidence that "a potential competitor had the intent and was prepared to enter . . . the market"). Indeed, allowing such damages would effectively eliminate the statute of limitations and open the floodgates to precisely the sort of rank speculation and prejudice to Defendants that statutes of limitation were designed to avoid. *See In re Travel Agent Comm'n Antitrust Litig.*, 583 F. 3d 896, 902 (6th Cir. 2009); *see also Burnett v. New York Cent. R.R. Co.*, 380 U.S. 424, 428 (1965) ("Statutes of limitations are primarily designed to assure fairness to defendants. Such statutes promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared.") (citations and quotations omitted).

For this additional but related reason, Dr. Slottje's damages testimony must be excluded as based upon impermissible speculation and guesswork. *See Bigelow*, 327 U.S. at 264; *see also Randle v. Chase Bank*, Case No. 1:13-cv-1503, 2018 WL 846047 at *8 (C.D. Ill. Feb. 13, 2018) (finding expert's opinion inadmissible where there was "nothing in her deposition to indicate that [the expert's] opinions were formed based upon just those allegations falling within the statute of limitations"); *Scott v. City of Sioux City*, 68 F. Supp. 3d 1022, 1042 (N.D. Iowa 2014) (expert's damages scenarios were "simply []not relevant to any element of [plaintiff's] remaining retaliation claim" where they accounted for acts outside of the limitations period); *Goldman v. Healthcare*

*Mgmt. Sys.*, 559 F. Supp. 2d 853, 863 (W.D. Mich. 2008) (noting that damages calculations that account for acts outside of the statute of limitations are "barred from presentation to the Jury").

## IV. DR. SLOTTJE DOES NOT CALCULATE DAMAGES IN A METHOD APPROPRIATE FOR A CLASS ACTION.

Dr. Slottje's report was offered to show that damages for the Providers' proposed class of Acute Care Hospital Providers under Rule 23(b)(3) could be calculated on a class-wide basis. Slottje Report ¶ 7. It falls short. To succeed in this task, Dr. Slottje must, among other things, offer a method or model showing that the named plaintiffs and class members can establish their damages with common evidence or proof to generate a class-wide result. *See Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013); *Brown v. Electrolux Home Prods., Inc.*, 817 F. 3d 1225, 1240 (11th Cir. 2016) ("[I]ndividual damages defeat predominance if computing them 'will be so complex, fact-specific, and difficult that the burden on the court system would be simply intolerable.'"); *see also Bussey v. Macon Cty. Greyhound Park, Inc.*, 562 F. App'x 782, 790 (11th Cir. 2014) (reversing a grant of class certification due to "shortcomings" in appellees' damages model); *Loughlin v. Amerisave Mortg. Corp.*, No. 1:14-cv-3497, 2018 WL 1896409, at *25 (N.D. Ga. Feb. 7, 2018) (holding that plaintiffs' inability to calculate damages on a class-wide basis defeated class certification). An expert's opinion at the class certification stage may be excluded if it is not helpful to that inquiry. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 354–55 (2011). Because Dr. Slottje does not provide a method to calculate damages using common proof, his report and testimony should be excluded.

In this case, Dr. Slottje has provided a formula showing how he would calculate damages to individual hospitals in the class (*i.e.*, multiplying payments to each hospital by Dr. Haas-Wilson's estimates of harm, *see supra* § II), but this formula does not use *common proof* to show those damages (even ignoring all of the reliability issues with his and Dr. Haas-Wilson's opinions).

Indeed, Dr. Slottje's damages model ignores the reality that damages for each of the 106 Alabama hospitals in Providers' putative class turn on *independent entry decisions* throughout the state of Alabama.

By way of example, Dr. Slottje confirmed that there is more than one hospital in the Birmingham CBSA, but also testified that he "d[id not] know that his model would be impacted" by a finding "that a particular hospital in Birmingham was not in the insurance network of the second hypothetical Blue entrant," and that he had no opinion on whether exclusion from a hypothetical entrant's network would change Dr. Haas-Wilson's or his calculations. Slottje Tr. 172:13–173: 22. But the evidence in the record—some of which was presented to Dr. Slottje at his deposition (as he cited it in his reliance material)—establishes that insurers' decisions on whether to enter Alabama are highly individualized and vary based on a number of factors. And, when insurers *have* entered Alabama, they have entered narrowly in terms of geography, products, and provider networks. *See, e.g.*, CIGBLU-0001180, 1181 (Ex. 7) [redacted] Cigna Tr. 84:13–85:5; Humana (Davis) Tr. (Ex. 8) 73:1–4. There is simply no factual basis to assume that the hypothetical Blue entrant(s) would not have faced the same entry considerations as these other insurers. Therefore, there is no basis to conclude that these hypothetical entrants would build networks and compete in a way that no other insurer does.

What is required at the class certification stage is a model that uses *common proof* to generate a class-wide result—which Slottje's model does not. Such a model—where damages calculations for the various putative class member hospitals rely on highly individualized entry decisions—by definition does not use common proof. As such, Dr. Slottje's testimony regarding his calculation of damages should be excluded.

## V. DR. SLOTTJE'S "RELIANCE MATERIALS" SHOULD BE STRICKEN BECAUSE DR. SLOTTJE TESTIFIED THAT HE DID NOT ACTUALLY RELY ON THEM.

Furthermore, Dr. Slottje claims to have relied on over 2,700 documents in assembling his report. Slottje Report Ex. 3. However, Dr. Slottje testified at his deposition that he did not in fact rely on these materials. Dr. Slottje testified that "[n]one" of these documents impacted his economic damages calculation for any of the Alabama hospitals. *See* Slottje Tr. 135:17–136:5.[12] When pressed, Dr. Slottje said that he and his team selected these 2,700 documents for him "to take a look at," and that a decision was made to select these documents when he and his team thought the report would include a voluminous background section that never came to fruition. *Id.* at 136:14–137:3. These admissions alone are enough to warrant exclusion. *See, e.g., Jones v. Anderson*, No. 5:17-cv-77, 2018 WL 2717221, at *8 (S.D. Ga. June 6, 2018) (striking majority of expert report, cautioning that "[p]laintiff cannot establish the reliability of an expert's opinions by simply referring to a general list of unexplained materials the expert reviewed"); *Cantrell v. BNSF Ry. Co.*, No. CIV 12-0129, 2013 WL 8632378, at *7 (D.N.M. June 28, 2013) (excluding opinion where expert testified that "despite the representations in the final report, he did not review many of the documents referenced in the report or draft critical portions of the report"). Accordingly, this Court should strike the over 2,700 "reliance" materials that Slottje listed in his report, but did not in fact rely upon, and should exclude Slottje's related testimony because it is unreliable.

---

[12] Dr. Slottje also confirmed that he did not read all (or possibly any) of the documents cited in Exhibit 3 to his report other than the handful that appear in the footnotes to his actual report. *See id.* at 138:5–9; *see also id.* at 151:8–152:3 (confirming that he relied only on the documents cited in the footnotes of his report, not the more than 2,700 documents he included in Exhibit 3). Because these documents have no bearing on Dr. Slottje's mathematical exercise, and, by his own admission, related to a section that he ultimately did not include in his report, the Court should strike any of the reliance materials cited in Exhibit 3 not referenced in the footnotes of Dr. Slottje's report.

## CONCLUSION

The Court should exclude Dr. Slottje from testifying at class certification, trial, or in any other proceeding relating to this case for each of the following separate and independent reasons:

a) Dr. Slottje's report and testimony merely vouch for another expert's opinion;

b) He offers no expert opinion, but instead performs a simple mathematical exercise that is not beyond a jury's comprehension;

c) The "damages" he calculates are entirely speculative;

d) His "damages model" does not use common proof and is irrelevant to the Court's class certification analysis; and

e) He purports to rely on thousands of documents he did not review.

Dated: July 1, 2019

Respectfully submitted,

/s/

Todd M. Stenerson
SHEARMAN & STERLING LLP
401 9th Street, N.W., Suite 800
Washington, DC 20004
Tel: (202) 508-8000
Fax: (202) 508-8100
todd.stenerson@shearman.com

Sarah L. Cylkowski
Thomas J. Rheaume, Jr.
BODMAN PLC
1901 Saint Antoine Street
6th Floor at Ford Field
Detroit, MI 48226
Tel: (313) 259-7777
Fax: (734) 930-2494
scylkowski@bodmanlaw.com
trheaume@bodmanlaw.com

Andy P. Campbell
Yawanna N. McDonald
CAMPBELL PARTNERS LLC
505 North 20th Street, Suite 1600

Birmingham, AL 35203
Tel: (205) 224-0750
Fax: (205) 224-8622
andy@campbellpartnerslaw.com
yawanna@campbellpartnerslaw.com

*Counsel for Defendant Blue Cross and Blue Shield of Michigan*

Craig A. Hoover
E. Desmond Hogan
Justin Bernick
Peter Bisio
Elizabeth Jose
HOGAN LOVELLS US LLP
Columbia Square
555 13th Street, N.W.
Washington, DC 20004
Tel: (202) 637-5600
Fax: (202) 637-5910
craig.hoover@hoganlovells.com
desmond.hogan@hoganlovells.com
justin.bernick@hoganlovells.com
peter.bisio@hoganlovells.com
elizabeth.jose@hoganlovells.com

*Co-Coordinating Counsel for the Defendants*

David J. Zott, P.C.
Daniel E. Laytin, P.C.
Sarah J. Donnell
Christa C. Cottrell, P.C.
Zachary Holmstead
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Tel: (312) 862-2000
Fax: (312) 862-2200
david.zott@kirkland.com
daniel.laytin@kirkland.com
sarah.donnell@kirkland.com
christa.cottrell@kirkland.com
zachary.holmstead@kirkland.com

*Co-Coordinating Counsel for the Defendants*

John D. Martin
Lucile H. Cohen
Travis A. Bustamante
NELSON MULLINS RILEY & SCARBOROUGH LLP
1320 Main Street, 17th Floor
Columbia, SC 29201
Tel: (803) 255-9421
Fax: (803) 256-7500
john.martin@nelsonmullins.com
lucie.cohen@nelsonmullins.com
travis.bustamante@nelsonmullins.com

Kimberly R. West *(Liaison Counsel)*
Mark M. Hogewood
WALLACE, JORDAN, RATLIFF & BRANDT, LLC
First Commercial Bank Building
800 Shades Creek Parkway, Suite 400
Birmingham, AL 35209
Tel: (205) 870-0555
Fax: (205) 871-7534
kwest@wallacejordan.com
mhogewood@wallacejordan.com

*Defendants' Liaison Counsel*

Cavender C. Kimble
BALCH & BINGHAM LLP
1901 6th Avenue North, Suite 1500
Birmingham, AL 35203-4642
Tel: (205) 226-3437

*With Kirkland & Ellis LLP, counsel for Defendant Blue Cross Blue Shield Association*

Christine Varney
Evan Chesler
Karin DeMasi

Fax: (205) 488-5860
ckimble@balch.com

*With Hogan Lovells, counsel for Anthem, Inc., f/k/a WellPoint, Inc., and all of its named subsidiaries in this consolidated action; Blue Cross and Blue Shield of North Carolina, Inc.; Louisiana Health Service & Indemnity Company (Blue Cross and Blue Shield of Louisiana); BCBSM, Inc. (Blue Cross and Blue Shield of Minnesota); Blue Cross and Blue Shield of South Carolina; Horizon Healthcare Services, Inc. (Horizon Blue Cross and Blue Shield of New Jersey); Blue Cross & Blue Shield of Rhode Island; Blue Cross and Blue Shield of Vermont; Cambia Health Solutions, Inc.; Regence Blue Shield of Idaho; Regence Blue Cross Blue Shield of Utah; Regence Blue Shield (of Washington); Regence Blue Cross Blue Shield of Oregon*

Gwendolyn Payton
KILPATRICK TOWNSEND & STOCKTON LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
Tel: (206) 626-7714
Fax: (206) 299-0414
gpayton@kilpatricktownsend.com

J. Bentley Owens, III
ELLIS, HEAD, OWENS & JUSTICE
113 North Main Street
Columbiana, AL 35051-0587
Tel: (205) 669-6783
Fax: (205) 669-4932
bowens@wefhlaw.com

*Counsel for Defendants Premera Blue Cross, d/b/a Premera Blue Cross Blue Shield of Alaska*

Brian K. Norman
SHAMOUN & NORMAN, LLP
1800 Valley View Lane, Suite 200
Farmers Branch, TX 75234
Tel: (214) 987-1745
Fax: (214) 521-9033
bkn@snlegal.com

H. James Koch
ARMBRECHT JACKSON LLP

Lauren Kennedy
CRAVATH SWAINE & MOORE LLP
825 8th Avenue
New York, NY 10019
Tel: (212) 474-1000
Fax: (212) 474-3700
cvarney@cravath.com
echesler@cravath.com
kdemasi@cravath.com
lkennedy@cravath.com

James L. Priester
Carl S. Burkhalter
John Thomas A. Malatesta, III
MAYNARD COOPER & GALE PC
1901 6th Avenue North, Suite 2400
Regions Harbert Plaza
Birmingham, AL 35203
Tel: (205) 254-1000
Fax: (205) 254-1999
jpriester@maynardcooper.com
cburkhalter@maynardcooper.com
jmalatesta@maynardcooper.com

Pamela B. Slate
HILL HILL CARTER FRANCO COLE & BLACK, P.C.
425 South Perry Street
Montgomery, AL 36104
Tel: (334) 834-7600
Fax: (334) 386-4381
pslate@hillhillcarter.com

*Counsel for Defendant Blue Cross Blue Shield of Alabama*

Helen E. Witt, P.C.
Jeffrey J. Zeiger, P.C.
Erica B. Zolner
Casey R. Fronk
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Tel: (312) 862-2000
Fax: (312) 862-2200
hwitt@kirkland.com
jzeiger@kirkland.com
ezolner@kirkland.com
cfronk@kirkland.com

RSA Tower, 27th Floor
11 North Water Street
Mobile, AL 36602
Tel: (251) 405-1300
Fax: (251) 432-6843
hjk@ajlaw.com

*Counsel for Defendants Carefirst, Inc.; Carefirst of Maryland, Inc.; Group Hospitalization and Medical Services, Inc.; CareFirst BlueChoice, Inc.*

R. David Kaufman
M. Patrick McDowell
BRUNINI, GRANTHAM, GROWER & HEWES, PLLC
190 East Capitol Street
The Pinnacle Building, Suite 100
Jackson, MS 39201
Tel: (601) 948-3101
Fax: (601) 960-6902
dkaufman@brunini.com
pmcdowell@brunini.com

John D. Martin
Lucile H. Cohen
Travis A. Bustamante
NELSON MULLINS RILEY & SCARBOROUGH LLP
1320 Main Street, 17th Floor
Columbia, SC 29201
Tel: (803) 255-9421
Fax: (803) 256-7500
john.martin@nelsonmullins.com
lucie.cohen@nelsonmullins.com
travis.bustamante@nelsonmullins.com

Cheri D. Green
BLUE CROSS BLUE SHIELD OF MISSISSIPPI
P.O. Box 1043
Jackson, MS 39215
Tel: (601) 932-3704
cdgreen@bcbsms.com

*Counsel for Defendant Blue Cross Blue Shield of Mississippi, a Mutual Insurance Company*

Michael A. Naranjo
FOLEY & LARDNER LLP
555 California Street, Suite 1700

Kimberly R. West (*Liaison Counsel*)
Mark M. Hogewood
WALLACE, JORDAN, RATLIFF & BRANDT, LLC
First Commercial Bank Building
800 Shades Creek Parkway, Suite 400
Birmingham, AL 35209
Tel: (205) 870-0555
Fax: (205) 871-7534
kwest@wallacejordan.com
mhogewood@wallacejordan.com

*Counsel for Defendants Health Care Service Corporation, an Illinois Mutual Legal Reserve Company, including its divisions Blue Cross and Blue Shield of Illinois, Blue Cross and Blue Shield of Texas, Blue Cross and Blue Shield of New Mexico, Blue Cross and Blue Shield of Oklahoma, and Blue Cross and Blue Shield of Montana; Caring for Montanans, Inc., f/k/a Blue Cross and Blue Shield of Montana, Inc.; Highmark Inc., f/k/a Highmark Health Services; Highmark West Virginia Inc.; Highmark Blue Cross Blue Shield Delaware Inc.; California Physicians' Service d/b/a Blue Shield of California*

Jonathan M. Redgrave
Victoria A. Redgrave
REDGRAVE, LLP
14555 Avion Parkway, Suite 275
Chantilly, VA 20151
Tel: (703) 592-1155
Fax: (612) 332-8915
jredgrave@redgravellp.com
vredgrave@redgravellp.com

*Additional Counsel for HCSC and Highmark Defendants*

Charles L. Sweeris
Law Department
BLUE SHIELD OF CALIFORNIA
50 Beale Street
San Francisco, CA 94105
Tel: (415) 229-5107
Fax: (415) 229-5343
charles.sweeris@blueshieldca.com

San Francisco, CA 94104
Tel: (415) 984-9847
Fax: (415) 434-4507
mnaranjo@foley.com

Alan D. Rutenberg
Benjamin R. Dryden
FOLEY & LARDNER LLP
3000 K Street, N.W., Suite 600
Washington, DC 20007
Tel: (202) 672-5300
Fax: (202) 672-5399
arutenberg@foley.com
bdryden@foley.com

*Counsel for Defendant USAble Mutual Insurance Company, d/b/a Arkansas Blue Cross and Blue Shield*

Robert K. Spotswood
Michael T. Sansbury
Joshua K. Payne
Jess R. Nix
Mary G. Menge
Morgan B. Franz
SPOTSWOOD
SANSOM &
SANSBURY LLC
One Federal Place
1819 5th Avenue
North, Suite 1050
Birmingham, AL
35203
Tel: (205) 986-3620
Fax: (205) 986-3639
rks@spotswoodllc.com
msansbury@spotswood
llc.com
jpayne@spotswoodllc.c
om
jnix@spotswoodllc.co
m
mmenge@spotswoodll
c.com
mfranz@spotswoodllc.
com

*Counsel for Defendant Capital BlueCross*

*Counsel for California Physicians' Service d/b/a Blue Shield of California*

John Briggs
Rachel Adcox
AXINN, VELTROP & HARKRIDER, LLP
950 F Street, N.W.
Washington, DC 20004
Tel: (202) 912-4700
Fax: (202) 912-4701
jbriggs@axinn.com
radcox@axinn.com

Stephen A. Rowe
Aaron G. McLeod
ADAMS AND REESE LLP
Regions Harbert Plaza
1901 6th Avenue North, Suite 3000
Birmingham, AL 35203
Tel: (205) 250-5000
Fax: (205) 250-5034
steve.rowe@arlaw.com
aaron.mcleod@arlaw.com

*Counsel for Defendant Independence Blue Cross*

Kathleen Taylor Sooy
Tracy A. Roman
April N. Ross
Michael W. Lieberman
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004
Tel: (202) 624-2500
Fax: (202) 628-5116
ksooy@crowell.com
troman@crowell.com
aross@crowell.com
mlieberman@crowell.com

John M. Johnson
Brian P. Kappel
LIGHTFOOT FRANKLIN & WHITE LLC
The Clark Building
400 20th Street North
Birmingham, AL 35203
Tel: (205) 581-0700
Fax: (205) 581-0799
jjohnson@lightfootlaw.com

Christine Varney
Evan Chesler
Karin DeMasi
Lauren Kennedy
CRAVATH SWAINE & MOORE LLP
825 8th Avenue
New York, NY 10019
Tel: (212) 474-1000
Fax: (212) 474-3700
cvarney@cravath.com
echesler@cravath.com
kdemasi@cravath.com
lkennedy@cravath.com

John D. Martin
Lucile H. Cohen
Travis A. Bustamante
NELSON MULLINS RILEY & SCARBOROUGH LLP
1320 Main Street, 17th Floor
Columbia, SC 29201
Tel: (803) 255-9421
Fax: (803) 256-7500
john.martin@nelsonmullins.com
lucie.cohen@nelsonmullins.com
travis.bustamante@nelsonmullins.com

Robert R. Riley, Jr.
RILEY & JACKSON, P.C.
3530 Independence Drive
Birmingham, AL 35209
Tel: (205) 879-5000
Fax: (205) 879-5901
rob@rileyjacksonlaw.com

*Counsel for Defendant Blue Cross and Blue Shield of Tennessee, Inc.; Blue Cross and Blue Shield of Florida, Inc.; Blue Cross and Blue Shield of Massachusetts, Inc.*

Edward S. Bloomberg
John G. Schmidt
Anna Mercado Clark
PHILLIPS LYTLE LLP
One Canalside
125 Main Street
Buffalo, NY 14203
Tel: (716) 847-8400
Fax: (716) 852-6100
ebloomberg@phillipslytle.com
bkappel@lightfootlaw.com

*Counsel for Defendants Blue Cross of Idaho Health Service, Inc.; Blue Cross and Blue Shield of Kansas, Inc.; Blue Cross and Blue Shield of Kansas City; Blue Cross and Blue Shield of Nebraska; Blue Cross Blue Shield of Arizona; Blue Cross Blue Shield of North Dakota; Blue Cross Blue Shield of Wyoming; HealthNow New York Inc.; BlueShield of Northeastern New York; BlueCross BlueShield of Western New York*

David J. Zott, P.C.
Daniel E. Laytin, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Tel: (312) 862-2000
Fax: (312) 862-2200
david.zott@kirkland.com
daniel.laytin@kirkland.com

John Martin
Lucile H. Cohen
Travis A. Bustamante
NELSON MULLINS RILEY & SCARBOROUGH LLP
1320 Main Street, 17th Floor
Columbia, SC 29201
Tel: (803) 255-9421
Fax: (803) 256-7500
john.martin@nelsonmullins.com
lucie.cohen@nelsonmullins.com
travis.bustamante@nelsonmullins.com

*Counsel for Defendants Wellmark of South Dakota, Inc. (Wellmark Blue Cross and Blue Shield of South Dakota); Wellmark, Inc. (Wellmark Blue Cross and Blue Shield of Iowa); Hawaii Medical Service Association (Blue Cross and Blue Shield of Hawaii); Triple-S Salud, Inc.*

Kimberly R. West (*Liaison Counsel*)
Mark M. Hogewood
WALLACE, JORDAN, RATLIFF & BRANDT, LLC
First Commercial Bank Building
800 Shades Creek Parkway, Suite 400
Birmingham, AL 35209

jschmidt@phillipslytle.com
aclark@phillipslytle.com

Stephen A. Walsh
ADAMS AND REESE LLP
1901 Sixth Avenue North, Suite 3000
Birmingham, AL 35203
Tel: (205) 250-5000
Fax: (205) 250-5091
stephen.walsh@arlaw.com

*Counsel for Defendant Excellus Health Plan, Inc., d/b/a Excellus BlueCross BlueShield, incorrectly sued as Excellus BlueCross BlueShield of New York*

Tel: (205) 870-0555
Fax: (205) 871-7534
kwest@wallacejordan.com
mhogewood@wallacejordan.com

*Counsel for Defendants Wellmark of South Dakota, Inc. (Wellmark Blue Cross and Blue Shield of South Dakota); Wellmark, Inc. (Wellmark Blue Cross and Blue Shield of Iowa); Hawaii Medical Service Association (Blue Cross and Blue Shield of Hawaii)*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 1, 2019 the foregoing was manually filed under seal with the Clerk of Court, and was served via electronic mail on the following counsel.

*/s/ Todd M. Stenerson*
Todd M. Stenerson

Barry A. Ragsdale
SIROTE & PERMUTT, PC
2311 Highland Avenue South
Birmingham, AL 35205
Tel: 205-930-5114
Fax: 205-212-2932
bragsdale@sirote.com
*Plaintiffs' Liaison Counsel and Discovery Liaison Counsel*

Dennis Pantazis
WIGGINS CHILDS PANTAZIS FISHER GOLDFARB
301 Nineteenth Street North
Birmingham, AL 35203
Tel: 205-314-0500
DPantazis@wcqp.com
*Plaintiffs' Steering Committee*

Patrick J. Sheehan
WHATLEY KALLAS, LLP
2001 Park Place North
1000 Park Place Tower
Birmingham, AL 35203
Tel: 205-488-1200
Fax: 800-922-4851
psheehan@whatleykallas.com

W. Tucker Brown
WHATLEY KALLAS, LLP
2001 Park Place Notrth
1000 Park Place Tower
Birmingham, AL 35203
Tel: 205-488-1200
tbrown@whatleykallas.com

Megan E. Jones
HAUSFELD LLP
600 Montgomery Street
Suite 3200 San Francisco, CA 94111
Tel: 415-633-1908
Fax: 415-358-4980
mjones@hausfeld.com