FILED

2020 Oct-30  PM 09:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT

# A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **IN RE: BLUE CROSS BLUE SHIELD** | : | |
| **ANTITRUST LITIGATION** | : | **Master File No. 2:13-cv-20000-RDP** |
| **MDL 2406** | : | |
| | : | |
| | : | |
| | : | **This document relates to** |
| | : | **Subscriber Track cases** |

## SETTLEMENT AGREEMENT

# TABLE OF CONTENTS

**PREAMBLE** ............................................................................................................. 1

**A.   DEFINITIONS** ................................................................................................ **3**
    1.   **Definitions** ............................................................................................. 3

**B.   APPROVAL OF SETTLEMENT AGREEMENT AND DISMISSAL OF
    CLAIMS** ......................................................................................................... **21**
    2.   **Reasonable Best Efforts** ..................................................................... 21
    3.   **Preliminary Approval Motion** .......................................................... 21
    4.   **Preliminary Approval and Preliminary Fairness Hearing** ............. 21
    5.   **Notice Motion** ..................................................................................... 22
    6.   **Final Approval Motion** ...................................................................... 23
    7.   **Review of Filings and Other Settlement-Related Documents** ......... 24
    8.   **Finality of Agreement** ........................................................................ 24
    9.   **No Admission of Wrongdoing or Liability by Settling Defendants** ... 26

**C.   CLASS INJUNCTIVE RELIEF** ................................................................... **27**
    10.   **National Best Efforts** ......................................................................... 27
    11.   **Local Best Efforts** .............................................................................. 27
    12.   **Self-Funded Account Vendors** ........................................................... 27
    13.   **Service Areas** ...................................................................................... 28
    14.   **National Accounts** .............................................................................. 29
    15.   **Second Blue Bid** .................................................................................. 29
    16.   **Additional Brand-Protection Mechanisms** ....................................... 30
    17.   **Acquisitions** ........................................................................................ 32
    18.   **Most Favored Nations Clauses** .......................................................... 32
    19.   **Implementation of Class Injunctive Relief** ...................................... 33
    20.   **Monitoring and Reporting** ................................................................ 33
    21.   **Monitoring Fees and Expenses** ......................................................... 35

**D.   SETTLEMENT AMOUNT** ............................................................................ **36**
    22.   **Settlement Amount** ............................................................................ 36
    23.   **Payment Timing** ................................................................................. 36
    24.   **Failure to Fund** .................................................................................. 36
    25.   **Tax Benefits and Consequences** ........................................................ 37
    26.   **Escrow Account** .................................................................................. 38
    27.   **Distribution of Net Settlement Fund to Classes** ............................... 40
    28.   **Attorneys' Fees and Expenses and Service Awards** ......................... 41
    29.   **Distributions of the Settlement Fund** ................................................ 43
    30.   **Balance Remaining in Settlement Fund** ........................................... 43
    31.   **Amounts Paid Not a Penalty** ............................................................. 44

**E.   RELEASE, DISCHARGE, AND COVENANT NOT TO SUE** ................... **44**
    32.   **Released Claims and Covenant Not to Sue** ....................................... 44
    33.   **California Civil Code** ......................................................................... 45
    34.   **All Claims Satisfied by Settlement Fund** .......................................... 46

      35.     **Enforcement of Release** ......................................................... 46

**F.**    **ADMINISTRATION OF SETTLEMENT** ...................................... **46**
      36.     **Claims and Release** ............................................................... 46
      37.     **Claims Administrator** ............................................................ 46
      38.     **Written Exclusion for Opt-Outs from Damages Classes** ............ 47
      39.     **Failure to Properly Exclude** ................................................... 47
      40.     **Identification of Opt-Outs** ..................................................... 47
      41.     **Settling Defendants' Right to Rescind** .................................... 48

**G.**    **STAY OF PROCEEDINGS** ......................................................... **48**
      42.     **Stay** ...................................................................................... 48

**H.**    **RESCISSION IF AGREEMENT IS NOT APPROVED OR FINAL JUDGMENT NOT ENTERED** .................................................... **48**
      43.     **Rescission** ............................................................................ 48
      44.     **Return of Settlement Funds** ................................................... 49
      45.     **Resumption of Litigation** ...................................................... 49

**I.**    **MISCELLANEOUS** ................................................................. **49**
      46.     **Confidentiality; Third-Party Communications** ......................... 49
      47.     **California Health and Safety Code** .......................................... 51
      48.     **Communications with Class Members** ..................................... 51
      49.     **Binding Effect** ..................................................................... 51
      50.     **Notice** .................................................................................. 51
      51.     **Integrated and Final Agreement** ............................................. 55
      52.     **CAFA** .................................................................................. 55
      53.     **Future Rules** ........................................................................ 56
      54.     **Headers** ............................................................................... 56
      55.     **No Party Is the Drafter** ......................................................... 56
      56.     **Choice of Law** ...................................................................... 56
      57.     **Consent to Jurisdiction** ......................................................... 56
      58.     **Non-Disparagement** .............................................................. 57
      59.     **Voluntary Settlement and Agreement; Advice of Counsel** ......... 57
      60.     **Authorization to Enter Agreement** ......................................... 57
      61.     **Non-Assignment** .................................................................. 57
      62.     **Inconsistency with the Settlement Agreement** ......................... 58
      63.     **Privilege** ............................................................................. 58
      64.     **Execution in Counterparts** .................................................... 58

**Appendix A** ......................................................................................... **64**
**Appendix B** ......................................................................................... **66**
**Appendix C** ......................................................................................... **68**
**Appendix D** ......................................................................................... **82**
**Appendix E** ......................................................................................... **85**

## PREAMBLE

This Settlement Agreement[1] is made and entered into on October 16, 2020, by and among Settling Defendants and Class Representatives, for themselves and on behalf of each Settlement Class Member.

WHEREAS, the Class Representatives are prosecuting the Subscriber Actions (including other individual and/or consolidated lawsuits);

WHEREAS, the Class Representatives allege, *inter alia*, that Settling Defendants violated Sections 1 and 2 of the Sherman Antitrust Act, 15 U.S.C. §§ 1–2, in addition to state law(s), by illegally entering into a geographic market allocation agreement prohibiting competition in the market for health insurance and administration of Commercial Health Benefit Products in the United States and its territories, as well as agreeing to other means of restricting competition in the market for health insurance and administration of Commercial Health Benefit Products;

WHEREAS, Class Representatives have contended that they and the Settlement Classes are entitled to actual damages, treble damages, and injunctive relief for loss or damage, and threatened loss or damage, as a result of violations of the laws as alleged in the Subscriber Actions, arising from Settling Defendants' conduct;

WHEREAS, Settling Defendants deny any and all purported wrongdoing in connection with the facts and claims that have been or could have been alleged against them in the Subscriber Actions, and have asserted a number of defenses to Class Representatives' claims;

WHEREAS, this action has involved substantial discovery, including obtaining and analyzing over 14 million pages of documents and over 100 depositions, and the investigation and analysis of the facts and underlying events relating to the subject matter of their claims and the applicable legal principles;

WHEREAS, Class Representatives, through Settlement Class Counsel and Self-Funded Sub-Class Settlement Counsel, have conducted an investigation into the facts and the law and have

---

[1] All capitalized terms shall have the meaning set forth in Paragraph 1 or the text of this Agreement.

concluded that resolving the claims against Settling Defendants, according to the terms set forth below, is in the best interests of the Settlement Classes in order to avoid the substantial uncertainties of litigation and assure that the benefits reflected herein are obtained for the Settlement Classes;

WHEREAS, Settlement Class Counsel and Self-Funded Sub-Class Settlement Counsel consider the settlement herein to be fair, reasonable, and adequate, and in the best interests of the Settlement Classes because of the substantial uncertainties of litigation, payment of the Settlement Amount, and the value of the Injunctive Relief that Settling Defendants have agreed to provide pursuant to this Agreement;

WHEREAS, Settling Defendants, despite their beliefs that the claims asserted lack merit and that they have valid defenses to such claims, have nevertheless agreed to enter into this Agreement to avoid further expense, inconvenience, and distraction to their business of burdensome and protracted litigation, and to obtain the releases, orders, and judgment contemplated by this Agreement, and to put to rest with finality this controversy, including releases of all claims that have been or could be asserted against Settling Defendants based on the allegations in the Subscriber Actions;

WHEREAS, vigorous, arm's length settlement negotiations have taken place between Settlement Class Counsel, Self-Funded Sub-Class Settlement Counsel, and counsel for Settling Defendants and with the assistance of four mediators at different times, and this Agreement embodies all the terms and conditions of the settlement between Settling Defendants and Class Representatives, both individually and on behalf of each Class Member;

WHEREAS, Settling Defendants, Settling Defendants' Counsel, Settlement Class Counsel, Self-Funded Sub-Class Settlement Counsel, and Class Representatives have had a full opportunity to examine the facts and circumstances surrounding their respective decisions to accept the terms of this Agreement and have not relied on any representations (or the lack thereof) made by any other Party concerning the facts and circumstances leading to this Agreement;

NOW, THEREFORE, in consideration of the covenants, agreements, and releases set forth herein and for other good and valuable consideration, the adequacy of which is hereby

acknowledged, it is agreed by and among the undersigned that the Subscriber Actions be settled, compromised, and dismissed on the merits with prejudice as to the Releasees and except as hereinafter provided, without costs to Class Representatives, the Settlement Classes, or Settling Defendants, subject to the approval of the Court and any appellate review, on the following terms and conditions:

## A.   DEFINITIONS

1.   **Definitions.**  As used in this Agreement, the following capitalized terms have the meanings specified below:

a.   "Account Benchmarking or Analytic Services" means data-driven services to help Employers analyze their costs, benefits, and/or populations, including assessments of: drivers of past and potential spending; comparison of spend, utilization, and health metrics to similar companies; and impact of past and potential benefit changes.

b.   "Agreement" means this Settlement Agreement and the *In Camera* Supplement together.

c.   "Authorized Claimant" means any Settlement Class Member who is entitled to a distribution from the Settlement Fund pursuant to the Plan of Distribution approved by the Court in accordance with the terms of this Agreement.

d.   "Bank" means Huntington National Bank.

e.   "BCBSA" means the Blue Cross Blue Shield Association.

f.   "Blue-Branded" means a product or service marketed, offered, or sold under any of the Blue Marks.

g.   "Blue Marks" means the Blue Cross and/or Blue Shield service marks, trademarks, names, and/or symbols.

h.   "Blue System" means BCBSA, all Settling Individual Blue Plans, and the system of governance among those entities, as reflected through the License Agreements issued by BCBSA and BCBSA policies, rules, and procedures.

3

i.      "Claim Process" means any process approved by the Court by which any eligible Settlement Class Member may make a claim against the Net Settlement Fund.

j.      "Claims Administrator" means the third party to be retained by the Settlement Classes, through their respective counsel, and approved by the Court, to manage and administer the process by which Class Members are notified of and paid pursuant to this Agreement. Claims Administrator shall effectuate the Notice Plan, shall administer and calculate the claims submitted by Settlement Class Members in accord with the Class Distribution Order entered by the Court, and shall oversee distribution of the Net Settlement Fund to Authorized Claimants in accordance with the Plan of Distribution.

k.      "Class Distribution Order" means the Court order approving the distribution of the Settlement Fund, as described in Paragraph 27.

l.      "Class Member" means any person or entity within the definition of the Injunctive Relief Class or Damages Class.

m.      "Class Notice" means the notice to Class Members approved by the Court.

n.      "Class Representatives" means Subscriber Class Representatives and Self-Funded Sub-Class Representatives.

o.      "Commercial Health Benefit Product" means any product or plan providing for the payment or administration of health care services (including but not limited to medical, pharmacy, dental, and vision products and services) or expenses through insurance, reimbursement, or other similar healthcare financing mechanism, for Members in the U.S. (however funded, including insured or self-funded) other than a product or plan offered under the Children with Special Health Care Needs Program (CSHCN); Children's Health Insurance Program (CHIP); Civilian Health and Medical Program of the Department of Veteran's Affairs (CHAMPVA); Civilian Health and Medical Program of the Uniformed Services (CHAMPUS); Indian Health Service, Tribal, and Urban Indian Health Plan; Medicaid; Medicare; Medicare Advantage (including but not limited to Medicare Advantage Prescription Drug Plans and Special Needs Plans, including but not limited to Medicare-Medicaid or Dual-Eligible Plans); Medicare Stand-Alone Prescription

4

Drug Plans; Refugee Medical Assistance Program; State Maternal and Child Health Program (MCH); or TriCare.  For purposes of clarity, it excludes any product or plan purchased or offered by a Government Account.

p.      "Commercial Health Insurance" means any Commercial Health Benefit Product which (1) an insurer, carrier, or health plan underwrites, issues, insures, or reinsures (*e.g.*, through a stop-loss policy) to cover healthcare costs and/or utilization risk, or (2) is filed with the applicable state regulator as, or is considered by the applicable state regulator to be, an insured product.

q.      "Confidential" means information or material that (1) any Party designates or has designated as "Confidential," "Confidential—Attorney Eyes Only," or "Confidential—Outside Counsel Only" in the Subscriber Actions or in connection with this Agreement, including without limitation under the Qualified Protective Order (Dkt. 550), or (2) this Agreement identifies as "Confidential."  Confidential information or material shall not be disclosed beyond what is allowed by the terms of this Agreement, Court order, or through mutual agreement of the Parties.

r.      "Control Plan" means the Settling Individual Blue Plan from which an Individual Member, Insured Group, or Self-Funded Account purchases a Blue-Branded Commercial Health Benefit Product.

s.      "Controlled Affiliate Licensee" means a company operating under the control of a Primary Licensee that is licensed to use the Blue Marks pursuant to a Controlled Affiliate License Agreement (Larger or Smaller) granted by BCBSA.

t.      "Court" means the United States District Court for the Northern District of Alabama, Southern Division.

u.      "D&B Analysis" means the process that will be used to identify Qualified National Accounts.  Such Qualified National Accounts will have 33 million Members in the aggregate.  This number of Members in Qualified National Accounts approximates half of Members of Employers that have at least 5,000 employees in the U.S. and offer a Self-Funded Health Benefit Plan to their employees, and approximately 31% of Members of

Self-Funded Accounts.  The D&B Analysis is objective and verifiable, and comprises the following steps: (1) using data from Dun & Bradstreet, identify Employers with at least 5,000 total U.S. employees; (2) compute each Employer's estimated Members, using data from Dun & Bradstreet, the Medical Expenditure Panel Survey promulgated by the U.S. Department of Health & Human Services' Agency for Healthcare Research and Quality, and Individual Blue Plans' aggregate average contract-to-member rate; (3) include Employers with the highest Dispersion Percentages up to and only until the aggregate number of estimated Members of such Employers totals at least 33 million after accounting for an estimate of Members of fully insured Employers in the Dun & Bradstreet data.  The resulting Employers, whose aggregate estimated membership totals at least 33 million, are the Qualified National Accounts.  The initial list of Qualified National Accounts, subject to removal of Opt-Outs as contemplated by Paragraph 1.z, is included as Appendix C. Included in the list of Qualified National Accounts are all Employers that have at least 5,000 employees in the U.S. and are headquartered in overlapping Settling Individual Blue Plans' Service Areas based on the analysis in Paragraph 1.v, as designated in Appendix C. BCBSA will refresh this list once every two years after the Effective Date using the methodology described in this Paragraph 1.u.

v.      "Damages Class" means all Individual Members (excluding dependents and beneficiaries), Insured Groups (including employees, but excluding non-employee Members), and Self-Funded Accounts (including employees, but excluding non-employee Members) that purchased, were covered by, or were enrolled in a Blue-Branded Commercial Health Benefit Product (unless the person or entity's only Blue-Branded Commercial Health Benefit Product during the Settlement Class Period was a stand-alone vision or dental product) sold, underwritten, insured, administered, or issued by any Settling Individual Blue Plan during the Settlement Class Period.  Excluded from the Damages Class are Government Accounts, Medicare Accounts of any kind, Settling Defendants themselves, and any parent or subsidiary of any Settling Defendant (and their covered or enrolled employees).  Also excluded from the Damages Class are Opt Outs, the judge presiding over this matter, and any members of his judicial staff, to the extent such staff were covered by a Commercial Health Benefit Product not purchased by a Government Account during the Settlement Class Period.  For purposes of this Paragraph

1.v, "employee" means any current or former employee, officer, director, partner, or proprietor of an entity.

     w.    "Dispersion Percentage" means the percentage of an Employer's employees that are located outside the Service Area that contains an Employer site meeting the first of the following criteria in the Dun & Bradstreet data: (1) the only location flagged as a U.S. headquarter; (2) the U.S. location with the highest employee count, with one exception:  if multiple locations are flagged as a U.S. headquarter and one portion of a Service Area up to a single state contains more headquarter locations than any other portion of a Service Area up to a single state, the U.S. headquarter for purposes of the Dispersion Percentage will be the location with the highest employee count within the Service Area that has the most headquarter locations. The Dispersion Percentage is calculated by dividing the number of employees that are located outside the Service Area by the total number of employees.

     x.    "Drug Screening Services" means testing and providing results of tests of employees and contractors for illicit drugs in (1) freestanding centers, (2) medical offices and facilities, or (3) workplaces.

     y.    "Effective Date" has the meaning given to it in Paragraph 8.

     z.    "Employer" means entities (other than Settling Defendants) which are identified by Dun and Bradstreet as employers.  For clarity, Government Accounts, Taft-Hartley trusts, multiple employer welfare arrangements, association health plans, retiree groups, and Opt-Outs are not Employers.

     aa.    "Escrow Account" means the account into which the Settlement Amount, Notice and Administration Fund, and Fee and Expense Award(s) will be deposited, held, and ultimately distributed, as further described in Paragraph 26.  The Escrow Account is intended to be a separate taxable entity and is intended to qualify as a "qualified settlement fund" within the meaning of Section 1.468B-1(c) of the Treasury Regulations promulgated under Section 468B of the Internal Revenue Code of 1986, as amended from time to time.

bb.     "Escrow Agent" means the agent responsible for the Escrow Account, as further described in Paragraph 26.

cc.     "Execution Date" means the latest date of the execution of this Agreement by counsel for Settling Defendants and Settlement, Class Counsel, and Self-Funded Sub-Class Settlement Counsel.

dd.     "Fee and Expense Award" means the attorneys' fees and expenses awarded by the Court upon an application or applications, as further described in Paragraph 28.

ee.     "Final Approval Motion" means the motion submitted to the Court seeking final approval of this Agreement, as further described in Paragraph 6.

ff.     "Final Fairness Hearing" means the hearing to be held by the Court to determine whether the settlement set forth in this Agreement shall receive final approval pursuant to Federal Rule of Civil Procedure 23.

gg.     "Final Judgment and Order of Dismissal" means the order of the Court providing final approval of the settlement set forth in this Agreement and dismissing with prejudice the claims of the Class Representatives and Settlement Class Members against Settling Defendants.

hh.     "Government Account" means only a state, a county, a municipality, an unincorporated association performing municipal functions, a Native American tribe, or the federal government (including the Federal Employee Program).   A Government Account includes all Members of the Government Account.  No other entity that is not a state, county, municipality, unincorporated association performing municipal functions, Native American tribe or the federal government is a Government Account, unless it is required by law to provide any health care coverage it makes available to Members only under, or as a participant in, a Commercial Health Benefit Product approved, selected, procured, sponsored or purchased by a Government Account.  Entities that are not Government Accounts (e.g., utility companies, school districts, government-funded hospitals, public retiree benefit plans, public libraries, port authorities, transportation authorities, waste disposal districts, police departments, fire departments) will receive

notice and an opportunity to submit a claim form to the extent they are otherwise within the definition of the Damages Class.

ii.     "Headquarters" means a group or account's principal business address, as further defined in BCBSA rules and policies in place on the Execution Date.  If subsequent changes are made to the definition of Headquarters under BCBSA rules and policies, such definition shall apply to this Agreement only if approved by the Monitoring Committee Process.

jj.     "Health Care Delivery Network" means the group of Providers, including professional medical practitioners, healthcare facilities, labs and other organizations that provide health care services to patients through written contracts with an entity that offers a Commercial Health Benefit Product.

kk.     "*In Camera* Supplement" means the agreement containing certain Confidential terms allowing rescission of the Settlement Agreement that will be submitted *in camera* to the Court.

ll.      "Independent Health Benefit Decision Location" means any location of a national account which makes decisions for the purchase of a Commercial Health Benefit Product for its local employees independently from the Headquarters of the account.

mm.     "Individual Member" means a person (including dependents and beneficiaries under the policy) covered by an individual Commercial Health Insurance policy (*i.e.*, a non-group Commercial Health Insurance policy).

nn.     "Initial Control Plan" means a Settling Individual Blue Plan that has the right to bid on an account using the Blue Marks under current BCBSA rules and policies.

oo.     "Injunctive Relief" refers to the provisions in Paragraphs 10–18.

pp.     "Injunctive Relief Class" means all Individual Members, Insured Groups, Self-Funded Accounts, and Members that purchased, were covered by, or were enrolled in a Blue-Branded Commercial Health Benefit Product sold, underwritten, insured,

administered, or issued by any Settling Individual Blue Plan during the Settlement Class Period.

qq.    "Insured Group" means a health benefit plan, group account, or employer, including all Members, sponsors, administrators, and fiduciaries thereof, that purchases, subscribes to, or is covered by Commercial Health Insurance.  For associational entities (e.g., trade associations, unions, etc.), this includes any member entity which is covered by, enrolled in, or included in the associational entity's Blue-Branded Commercial Health Benefit Product.  For clarity, this definition excludes all Government Accounts.

rr.    "Joint Venture" means a written contractual arrangement involving a Provider or its affiliates and a Settling Individual Blue Plan representing that the parties have agreed to share resources to provide health services to Individual Members, Insured Groups, or Self-Funded Accounts.

ss.    "License Agreement" means the written document between BCBSA and a Settling Individual Blue Plan (and its Controlled Affiliate Licensees, if applicable) conferring permission to use the Blue Marks in accordance with the Membership Standards and other BCBSA rules and requirements.

tt.    "Local Best Efforts Requirement" means the requirement contained, as of the Execution Date, in the BCBSA Guidelines to Administer the Membership Standards, Standard 10, Guideline 2.2.1, including that at least 80% of the annual combined local net revenue of a Settling Individual Blue Plan and its licensable controlled affiliates attributable to health care plans and related services and hospital services offered within the designated Service Area must be sold, marketed, administered, or underwritten under the Blue Marks.

uu.    "Member" means any individual enrolled in or covered by a Commercial Health Benefit Product regardless what term or title is used to refer to the individual in documents that pertain to the Commercial Health Benefit Product, including employees, their spouses and dependents, beneficiaries, and ERISA participants.

vv.    "Member Concierge Services" means health advocacy and navigation services that help Members make healthcare and healthcare benefit decisions and choose Providers.

ww.    "Membership Standards" means the membership requirements included in the License Agreement, including the standards and rules applicable to the Settling Individual Blue Plan contained within the BCBSA Guidelines to Administer the Membership Standards as of the Execution Date.

xx.    "Monitoring Committee" means the committee established by the Final Judgment and Order of Dismissal to serve during the Monitoring Period, which shall be made up of (1) two members appointed collectively by Settling Defendants, (2) one member appointed collectively by Settlement Class Counsel, (3) one member appointed by Self-Funded Sub-Class Settlement Counsel, and (4) one member appointed by the Court.

yy.    "Monitoring Committee Process" means all of the review and actions by the Monitoring Committee as well as the arbitrations of issues originally submitted to the Monitoring Committee.

zz.    "Monitoring Period" means the period of five (5) years from the Court's entry of the Final Judgment and Order of Dismissal.

aaa.    "Most Favored Nations" or "MFN" means a contract provision which requires a Provider to offer to a health plan payment rates that are as favorable as or more favorable than those that the Provider offers to any comparable health plan during the performance period of the contract.  A requirement or representation at or before the time of execution of a contract that the Provider's offer is as favorable as or more favorable than the terms the Provider is currently offering other health plans is not an MFN.

bbb.    "Most Favored Nations-Differential" or "MFN-Differential" means an MFN which requires that the Provider offer a health plan financial terms that are more favorable by a specified rate than those it offers any comparable health plan during the performance period of the contract.

ccc.    "National Best Efforts Requirement" means the requirement, as of the Execution Date, that is contained in the BCBSA Guidelines to Administer the Membership Standards, Standard 10, Guideline 2.2, including that at least 66-2/3% of the annual combined national net revenue or annual combined national enrollment of a Settling Individual Blue Plan and its licensable controlled affiliates attributable to health care plans and related services must be sold, marketed, administered, or underwritten under the Blue Marks.

ddd.    "Net Settlement Fund" means the Settlement Fund less payments relating to:  (1) the Monitoring Committee, as set forth in Paragraphs 20 and 21, (2) the Escrow Account (including Taxes and Tax Expenses), as set forth in Paragraph 26, (3) the Notice and Administration Fund, as set forth in Paragraph 23, and (4) the Fee and Expense Awards and Service Awards, as set forth in Paragraph 28.

eee.    "Non-Provider Vendor" means a vendor providing services to Self-Funded Accounts outside the Blue-Branded Health Care Delivery Network or not covered by a Blue-Branded Commercial Health Benefit Product, to include only Member Concierge Services, Provider Analytic Services, Drug Screening Services, and Account Benchmarking or Analytic Services.

fff.    "Notice and Administration Costs" means all Court-approved costs reasonably incurred or assessed by the Special Master, Claims Administrator, Escrow Agent, Section 468B Administrator, Settlement Class Counsel, Self-Funded Sub-Class Settlement Counsel, and Settlement Administrator in connection with providing notice to the Settlement Classes, locating Class Members, administering and distributing the Settlement Fund and Escrow Account, purchasing an insurance policy for the members of the Monitoring Committee, as well as costs reasonably and actually incurred by the Monitoring Committee, the Special Master, Settlement Class Counsel, and Self-Funded Sub-Class Settlement Counsel in connection with monitoring under Paragraph 20 (including but not limited to costs of arbitration pursuant to Appendix D, Paragraph 2(e)).

ggg.    "Notice and Administration Fund" means the amount used to pay for Notice and Administration Costs.  The Notice and Administration Fund shall be funded by Settling

Defendants in the amount of $100 million ($100,000,000.00).  Any amount remaining at the expiration of the Monitoring Period and the completion of Settlement administration (including accrued income on the Notice and Administration Fund) will revert to Settling Defendants within 10 calendar days of such expiration.  Settlement Class Counsel and Self-Funded Sub-Class Settlement Counsel may petition the Court for replenishment from Settling Defendants upon a showing of a necessity (after using accrued income on the Notice and Administration Fund to pay Notice and Administration Costs).

hhh.   "Notice Motion" means the motion(s) that Settlement Class Counsel and Self-Funded Sub-Class Settlement Counsel shall submit to the Court for authorization to disseminate Class Notice of the settlement and the Final Judgment and Order of Dismissal contemplated by this Agreement to all Settlement Class Members.  It shall be filed simultaneously with the Preliminary Approval Motion.

iii.   "Notice Plan" means any plan and methodology used to notify Class Members that is approved by the Court.

jjj.   "Opt-Out" means only persons and entities within the Damages Class who file a timely and appropriate written request for exclusion from the settlement in accordance with the exact procedures set forth in the Class Notice or are excluded from the Damages Class.

kkk.   "Opt-Out Deadline" means the Court-ordered date(s) by which all persons and entities seeking exclusion from the Damages Class must submit a written request for exclusion as set forth in the Class Notice.

lll.   "Party" means any Class Representative, Settlement Class Member, BCBSA, or Settling Individual Blue Plan.  "Parties" means the collective of all Class Representatives, all Settlement Class Members, BCBSA, and all Settling Individual Blue Plans.

mmm. "Plan of Distribution" means the plan of allocation of the Settlement Fund whereby the Net Settlement Fund shall be distributed to Authorized Claimants after payment of Notice and Administration Costs, Taxes and Tax Expenses, Fee and Expense

Award(s), and Service Awards.  At a time and in a manner determined by the Court, Settlement Class Counsel and Self-Funded Sub-Class Settlement Counsel shall submit for Court approval a Plan of Distribution for each of the Settlement Classes that will provide for the distribution of the applicable Net Settlement Fund and the foundation for the requested allocation.  Each Plan of Distribution shall be devised and implemented with the assistance of the Claims Administrator, and shall contemplate the refund of the Net Settlement Fund under Paragraphs 8, 24, 28, 41, or 43.

nnn.   "Preliminary Approval Motion" means the motion submitted to the Court seeking preliminary approval of this Agreement, as further described in Paragraph 3.

ooo.   "Preliminary Approval Order" means the Court order preliminarily approving this Agreement.

ppp.   "Primary Licensee" means an entity that has been granted a Primary License Agreement by BCBSA.  Primary Licensees are listed by name in Appendix A.

qqq.   "Provider" means any person or entity that provides health care services in the U.S., including but not limited to a physician, group practice, or facility.

rrr.   "Provider Analytic Services" means data-driven services to support Employers in independent assessment of Provider performance, including relative costs, utilization, and quality or outcomes to support decisions about benefit design.

sss.   "Qualified National Account" means a Self-Funded Account that (i) is an Employer with at least 5,000 employees in the U.S., and (ii) satisfies the D&B Analysis. The initial list of Qualified National Accounts, subject to removal of Opt-Outs as contemplated by Paragraph 1.z, is included as Appendix C.

ttt.   "Re-Establishment Fee" means the fee required by the License Agreement by which a Settling Individual Blue Plan is required to compensate BCBSA for the cost of re-establishing a new licensee in the event the Settling Individual Blue Plan's License Agreement is terminated.

uuu.    "Released Claims" means any and all known and unknown claims, causes of action, cross-claims, counter-claims, charges, liabilities, demands, judgments, suits, obligations, debts, setoffs, rights of recovery, or liabilities for any obligations of any kind whatsoever (however denominated), whether class or individual, in law or equity or arising under constitution, statute, regulation, ordinance, contract, or otherwise in nature—including without limitation any and all actual or potential actions, losses, judgments, fines, debts, liabilities (including joint and several), liens, causes of action, demands, rights, damages, penalties, punitive damages, costs, expenses (including attorneys' fees and legal expenses), indemnification claims, contribution claims, obligations, compensation, and claims for damages or for equitable or injunctive relief of any nature (including but not limited to antitrust, RICO, contract, tort, conspiracy, unfair competition, or unfair trade practice claims)—known or unknown, suspected or unsuspected, asserted or unasserted, direct or derivative, based upon, arising from, or relating in any way to:  (i) the factual predicates of the Subscriber Actions (including but not limited to the Consolidated Amended Class Action Complaints filed in the Northern District of Alabama) including each of the complaints and prior versions thereof, or any amended complaint or other filings therein from the beginning of time through the Effective Date; (ii) any issue raised in any of the Subscriber Actions by pleading or motion; or (iii) mechanisms, rules, or regulations by the Settling Individual Blue Plans and BCBSA within the scope of Paragraphs 10 through 18 approved through the Monitoring Committee Process during the Monitoring Period.  Nothing in this Release shall release claims, however asserted, that arise in the ordinary course of business and are based solely on (i) whether a particular product, service or benefit is covered by the terms of a particular Commercial Health Benefit Product, (ii) seeking resolution of a benefit plan's or a benefit plan participant's financial responsibility for claims, based on either the benefit plan document or statutory law, or (iii) challenging a Releasee's administration of claims under a benefit plan, based on either the benefit plan document or statutory law.  Any claim, however asserted, (i) that a product, service, or benefit should be or should have been covered, but was not covered, (ii) seeking resolution of a benefit plan's or benefit plan participant's financial responsibility for claims, or (iii) challenging a Releasee's administration of claims under a benefit plan, based in whole or in part on the factual predicates of the Subscriber Actions

or any other component of the Released Claims discussed in this Paragraph, is released. Notwithstanding any other provision of this Agreement, a Provider who is a Settlement Class Member as defined in this Agreement does not release any claims arising from his, her or its sale or provision of health care products or services (as opposed to the purchase of a Commercial Health Benefit Product). Settling Defendants agree not to raise Providers' releases under this Agreement as a defense to Providers' claims brought in their capacity as Providers of health care products or services in MDL No. 2406. For purposes of clarity, Released Claims include, but are not limited to, claims that arise after the Effective Date.

vvv. "Releasees" means (i) Settling Individual Blue Plans; (ii) BCBSA; (iii) NASCO; (iv) Consortium Health Plans, Inc.; and (v) for each of the persons and entities listed in subparts (i)–(iv) of this Paragraph 1.vvv, any and all of their past, present, and future, direct and indirect, parent companies, subsidiary companies, affiliated companies, affiliated partnerships, and joint venturers, including all of their respective predecessors, successors and assigns, and each and all of their present, former and future principals, partners, officers, directors, supervisors, employees, agents, stockholders, members, representatives, insurers, attorneys, heirs, executors, administrators, beneficiaries, and representatives of any kind.

www. "Releasors" means the Class Representatives and each and every Settlement Class Member and all of their predecessors, successors, heirs, administrators, and assigns. Each Releasor releases Released Claims on behalf of themselves and on behalf of any party claiming by, for, under, or through the Releasors or the Commercial Health Benefit Product that Releasors purchased, were covered by, or were enrolled in, with such claiming parties to include any and all of Releasors' past, present and future officers, directors, supervisors, employees, agents, stockholders, members, attorneys, servants, representatives, accounts, plans, groups, parent companies, subsidiary companies, affiliated companies, divisions, affiliated partnerships, joint venturers, principals, partners, wards, heirs, assigns, beneficiaries, estates, next of kin, family members, relatives, personal representatives, administrators, agents, representatives of any kind, insurers, and all other persons, partnerships, or corporations with whom any of the foregoing have been, or are now or

16

become, affiliated, and the predecessors, successors, heirs, executors, administrators, and assigns of any of the foregoing.

xxx.    "RFP" means any account-specific request for information, request for proposal, or request for a bid related to a Commercial Health Benefit Product.

yyy.    "Second Blue Bid" means any response to an eligible Second Blue Bid Request provided to a Qualified National Account other than to decline the Request.

zzz.    "Second Blue Bidder" means the Settling Individual Blue Plan that provides a Qualified National Account with a Second Blue Bid pursuant to the terms of this Agreement and Appendix D.

aaaa.    "Second Blue Bid Request" means an RFP from a Qualified National Account to a Settling Individual Blue Plan in addition to an Initial Control Plan for the Qualified National Account's Self-Funded Health Benefit Plan contract for a specific benefits period.

bbbb.    "Section 468B Administrator" means the administrator of the Escrow Account for the purpose of Section 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder.

cccc.    "Self-Funded Account" means any account, employer, health benefit plan, ERISA plan, non-ERISA plan, or group, including all sponsors, administrators, fiduciaries, and Members thereof, that purchases, is covered by, participates in, or is enrolled in a Self-Funded Health Benefit Plan.  For associational entities (*e.g.*, trade associations, unions, etc.), this includes any member entity which is covered by, enrolled in, or included in the associational entity's Blue-Branded Commercial Health Benefit Product.  A Self-Funded Account that purchases a Blue-Branded Self-Funded Health Benefit Plan and Blue-Branded stop-loss coverage remains a Self-Funded Account.  For clarity, Self-Funded Account also excludes all Government Accounts.

dddd.    "Self-Funded Sub-Class Representative" means Hibbett Sports, Inc.

eeee.   "Self-Funded Sub-Class Settlement Counsel" shall mean Burns Charest LLP, as appointed by the Court.

ffff.   "Self-Funded Health Benefit Plan" means any Commercial Health Benefit Product other than Commercial Health Insurance, including administrative services only ("ASO") contracts or accounts, administrative services contracts or accounts ("ASC"), and jointly administered administrative services contracts or accounts ("JAA").

gggg.   "Service Area" means the area in which a Settling Individual Blue Plan is granted rights to use the Blue Marks under its License Agreement(s) with BCBSA as of the Execution Date.

hhhh.   "Service Award" means the Court-approved monetary award for Class Representatives paid from the Settlement Amount, as further defined in Paragraph 28.c.

iiii.   "Settlement Administrator" means the settlement administrator selected by the Court, who will assist in the implementation of the Plan of Distribution and the resolution of any disputes between Settlement Class Members and the Claims Administrator pursuant to the Plan of Distribution.

jjjj.   "Settlement Amount" shall be $2.67 billion.   The Settlement Amount includes Notice and Administration Costs, and any Fee and Expense Award and Service Awards.

kkkk.   "Settlement Class Counsel" means the Co-Lead Counsel law firms appointed by this Court:  (1) Hausfeld LLP and (2) Boies Schiller Flexner LLP.

llll.   "Settlement Class Members" means collectively any person or entity within the definition of the Injunctive Relief Class or Damages Class, excluding Government Accounts and Opt-Outs.

mmmm.   "Settlement Classes" means collectively the Injunctive Relief Class and the Damages Class.

nnnn.   "Settlement Class Period" means February 7, 2008, through the Execution Date, except for Self-Funded Accounts, for whom the Settlement Class Period is September 1, 2015 through the Execution Date.

oooo.   "Settlement Fund" means the amount paid by Settling Defendants for the Settlement Amount, which includes the Notice and Administration Fund, the Service Awards, and the Fee and Expense Award(s) plus any income or accrued interest earned on those monies.   In no event shall Settling Defendants be required to contribute more than $2.67 billion ($2,670,000,000.00) to the Settlement Fund, except as modified by the procedure set forth in Paragraph 1.ggg.

pppp.   "Settling Defendants" means all Settling Individual Blue Plans and BCBSA collectively.

qqqq.   "Settling Individual Blue Plan" means a Primary Licensee, including Controlled Affiliates Licensees.

rrrr.   "Settling Individual Blue Plans" means all Settling Individual Blue Plans collectively.

ssss.   "Specialty Service Provider Vendor" means a vendor offering a network of Providers delivering primarily radiology, vision, or dental services.

tttt.   "Standard of Review Order" means the April 5, 2018 Memorandum Opinion Regarding Section 1 Standard of Review and Single Entity Defense (Dkt. 2063) and the accompanying Order (Dkt. 2064).

uuuu.   "Subscriber Actions" means the lawsuits brought by persons and entities within the Settlement Classes and consolidated in *In re Blue Cross Blue Shield Antitrust Litigation*, Case No. 13-cv-20000-RDP (MDL No. 2406), including the Consolidated Amended Class Action Complaint, which is currently pending in the Court, all actions that may be transferred or consolidated prior to the time Class Notice is mailed, and all actions that are otherwise based, in whole or in part, on the conduct alleged in MDL No. 2406, including *Piercy v. Health Care Service Corp.*, Case No. 124-28, in the Circuit Court for

the First Judicial Circuit, Union County, Illinois.  Appendix B lists such actions as of the Execution Date.

vvvv.  "Subscriber Class Representatives" means Galactic Funk Touring, Inc.; American Electric Motor Services, Inc.; CB Roofing, LLC; Pearce, Bevill, Leesburg, Moore, P.C.; Pettus Plumbing & Piping, Inc.; Consumer Financial Education Foundation of America, Inc.; Fort McClellan Credit Union; Rolison Trucking Co., LLC; Conrad Watson Air Conditioning, Inc.; Linda Mills; Frank Curtis; Jennifer Ray Davidson; Pete Moore Chevrolet, Inc.; Jewelers Trade Shop; Saccoccio & Lopez; Angel Foster (*fka* Angel Vardas); Monika Bhuta; Michael E. Stark; G&S Trailer Repair Incorporated; Chelsea L. Horner; Montis, Inc.; Renee E. Allie; John G. Thompson; Avantgarde Aviation, Inc.; Hess, Hess & Daniel, P.C.; Betsy Jane Belzer; Bartlett, Inc., d/b/a Energy Savers; Matthew Allan Boyd; Gaston CPA Firm; Rochelle and Brian McGill; Sadler Electric; Jeffrey S. Garner; Amy MacRae; Vaughan Pools, Inc.; Casa Blanca, LLC; Jennifer D. Childress; Clint Johnston; Janeen Goodin and Marla S. Sharp; Erik Barstow; GC/AAA Fences, Inc.; Keith O. Cerven; Teresa M. Cerven; Sirocco, Inc.; Kathryn Scheller; Iron Gate Technology, Inc.; Nancy Thomas; Pioneer Farm Equipment, Inc.; Scott A. Morris; Tony Forsythe; Joel Jameson; Ross Hill; Angie Hill; Kevin Bradberry; Christy Bradberry; Tom Aschenbrenner; Juanita Aschenbrenner; Free State Growers, Inc.; Tom A. Goodman; Jason Goodman; Comet Capital, LLC; Barr, Sternberg, Moss, Lawrence, Silver & Munson, P.C.; Mark Krieger; Deborah Piercy; and Lisa Tomazzoli.

wwww.       "Taxes" means any and all federal, state and local income taxes, excise taxes, estimated taxes, gross receipt taxes, or any other taxes, as well as interest, penalties, tax detriments, and any other additions to taxes, arising with respect to the income of the Escrow Account or the operations of the Escrow Account, including any such federal, state and local taxes (and interest, penalties, tax detriments, and additions to tax) to which Settling Defendants or any other Releasee may be subject with respect to (i) any income earned by the Escrow Account for any period during which the Escrow Account is not treated, or does not qualify, as a "qualified settlement fund" for federal or state income tax purposes, and (ii) the payment or reimbursement by the Escrow Account of any amounts described in clause (i) of this Paragraph 1.wwww.

20

xxxx.   "Tax Expenses" means expenses and costs incurred in connection with the operation and implementation of the Escrow Account (including expenses of attorneys and/or accountants and mailing and distribution costs and expenses relating to filing, or failing to file, any Tax returns, including any such costs and expenses relating to filing, or failing to file, returns in respect of distributions from the Escrow Fund).

yyyy.   "Term Sheet" refers to any and all term sheets proposed or negotiated between or among the Parties, including the final consolidated term sheet executed on November 14, 2019.

zzzz.   "U.S." means all fifty states, the District of Columbia, and Puerto Rico.

## B.   APPROVAL OF SETTLEMENT AGREEMENT AND DISMISSAL OF CLAIMS

2.   **Reasonable Best Efforts.**   For each term in this Agreement, Settlement Class Counsel, Self-Funded Sub-Class Settlement Counsel, and Settling Defendants shall use their reasonable best efforts to effectuate this Agreement, including but not limited to cooperating in seeking the Court's approval for the establishment of procedures (including providing Class Notice under Federal Rules of Civil Procedure 23(c) and (e)) to secure the complete and final dismissal with prejudice of the Subscriber Actions as to the Releasees.

3.   **Preliminary Approval Motion.**   Unless the schedule is modified by the Court, within 30 days of executing this Agreement, Class Representatives shall submit to the Court a Preliminary Approval Motion.  The Preliminary Approval Motion shall include (i) the proposed form of an order preliminarily approving this Agreement, and (ii) a proposed Final Judgment and Order of Dismissal that shall include, at a minimum, the terms set forth in Paragraph 6.

4.   **Preliminary Approval and Preliminary Fairness Hearing.**  Settling Defendants, Settlement Class Counsel, and Self-Funded Sub-Class Settlement Counsel agree to collaborate in their presentations at the preliminary approval and preliminary fairness hearing, with Settling Defendants, Class Representatives, Settlement Class Counsel, and Self-Funded Sub-Class Settlement Counsel using their reasonable best efforts to establish that this settlement is in the best interests of the Settlement Classes.

5.      **Notice Motion.**  Simultaneously with the Preliminary Approval Motion, Settlement Class Counsel and Self-Funded Sub-Class Settlement Counsel shall submit to the Court all Notice Motion(s).  The Notice Motion(s) shall include a proposed form of, method for, and date of dissemination of Class Notice.

a.      Class Notice and procedures governing dissemination of the Notice will be reasonably calculated to apprise Class Members of the pendency of the Subscriber Actions, the Agreement, and their opportunity to be heard and to opt out (where applicable).

b.      At their own expense, Settling Defendants agree to, within the later of 5 days after Court approval of the Notice Plan or 45 days after agreement between the Parties regarding the scope and methodology of Class Notice, supply to the Claims Administrator in electronic format data in their possession and kept in the ordinary course of business regarding the last known contact information of Class Members ("Class Member Data"). The Class Member Data will cover the entire Settlement Class Period and with respect to each Class Member will at least include: a to-be-agreed personal identifier (that can be cross referenced with a Member's first name, last name, and date of birth), last-known phone number (if any), last-known mailing address, and, if ordered by the Court, last-known email address (if any).  The Claims Administrator may request any other data reasonably necessary to effectuate the Notice and Claims Administration ordered by the Court, and Settling Defendants will not unreasonably deny any such additional requests or fail to timely produce such data.  Nothing in this Paragraph shall prevent Settlement Counsel from requesting samples of data from Settling Defendants to be produced prior to submission of the Notice Plan, and requests for such samples shall not be unreasonably denied.

i.      Any delay in the production of Class Member data that will affect the Court-ordered Notice Plan shall be timely reported to the Court by Settling Defendants.

c.      Settling Defendants agree to use reasonable best efforts to identify and promptly produce such information for the entirety of the Settlement Class Period, and to

work with the Claims Administrator to resolve any issues with the format of the information or its use by the Claims Administrator.

        d.     Such information shall be provided directly to the Claims Administrator to maintain Confidentiality.

       6.     **<u>Final Approval Motion.</u>**  If the Court preliminarily approves this Agreement, Class Representatives shall submit a Final Approval Motion to the Court, after appropriate notice to the Settlement Classes, and shall seek entry of a Final Judgment and Order of Dismissal.  The Final Approval Motion and proposed Final Judgment and Order of Dismissal shall state that, upon Final Approval of the Settlement Agreement, the Court's Standard of Review Order does not apply to the Blue System, as revised by this Settlement Agreement. The proposed Final Judgment and Order of Dismissal shall include, at a minimum, the substance of the following provisions:

        a.     Certifying the Settlement Classes, pursuant to Rule 23 of the Federal Rules of Civil Procedure, solely for the purposes of this settlement;

        b.     Providing final approval of this settlement and its terms as being fair, reasonable, and adequate within the meaning of Rule 23 and directing its consummation according to its terms;

        c.     Directing that all Releasors shall, by operation of law, be deemed to have released all Releasees from the Released Claims;

        d.     Directing that the Subscriber Actions be dismissed with prejudice and, except as provided for in this Agreement, without costs;

        e.     Reserving exclusive jurisdiction over the settlement and this Agreement, including the interpretation, administration, and consummation of this settlement, to the Court, and including any Fee and Expense Award and/or Service Awards;

        f.     Determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment of dismissal of the Subscriber Actions shall be final; and

g.       Enjoining all Releasors from asserting any Released Claim against any Releasee.

7.       **Review of Filings and Other Settlement-Related Documents.**   All motions, pleadings, filings, reports, forms, and other documents related to approval or performance of the settlement shall be submitted to Settling Defendants for reasonably prompt comment as to form and content prior to submission or transmission to the Court and/or Class Members.  This includes, but is not limited to, the Preliminary Approval Motion, the Notice Motion, the Claim Process, the Final Approval Motion, the proposed Final Judgment and Order of Dismissal, and all exhibits thereto.

8.       **Finality of Agreement.**

a.       The Effective Date of the settlement shall be the latest date when all of the following events shall have occurred and shall be conditioned on the occurrence of all of the following events, and the Agreement shall become final upon the occurrence of all of the following events:

i.       Execution of this Agreement;

ii.       All monies to the Settlement Fund have been paid by Settling Defendants pursuant to this Agreement;

iii.       Entry of the Preliminary Approval Order;

iv.       Entry of the Class Notice Approval Order;

v.       The deadline for Class Members to request exclusion from the settlement has passed;

vi.       Entry of the Final Judgment and Order of Dismissal, following dissemination of Class Notice and the Final Fairness Hearing;

vii.       The Final Judgment and Order of Dismissal becoming final per Paragraph 8.a.viii below;

viii.    The time for appeal or to seek permission to appeal from the Final Judgment and Order of Dismissal expires, or if appealed, (1) such appeal is finally dismissed prior to resolution by the applicable court; (2) the Final Judgment and Order of Dismissal is affirmed in its entirety by the court of last resort to which such appeal may be taken; or (3) the Final Judgment and Order of Dismissal is modified, the Parties agree to the modifications and withdraw any pending appeals, and such document is finally entered; and

ix.    Neither Class Representatives nor Settling Defendants have availed themselves of their respective rights to cancel and rescind the Agreement pursuant to this Paragraph 8 or Paragraphs 24, 28, 41, or 43 and the deadlines for doing so have passed.

b.    For purposes of this Paragraph 8, an appeal of the Final Judgment and Order of Dismissal includes but is not limited to appeals as of right, discretionary appeals, interlocutory appeals, proceedings involving writs of certiorari or mandamus, and legally comparable appellate proceedings regardless of nomenclature (excluding any appeal related to the Fee and Expense Application or the Monitoring Committee Process).

c.    Notwithstanding any other provision in this Paragraph 8, any proceeding, order, or motion for reconsideration, appeal, petition for a writ of certiorari or its equivalent, pertaining solely to any Plan of Distribution, Fee and Expense Application, and/or the actions of the Monitoring Committee shall not in any way delay or preclude the Effective Date.

d.    Notwithstanding any other provision in this Paragraph 8, if the Final Judgment and Order of Dismissal as set forth in Paragraph 6 is modified by any court in a material way (*i.e.*, except solely as to any Plan of Distribution, Notice Plan, and/or Fee and Expense Application that does not have the effect of increasing Settling Defendants' financial obligation under this Agreement), Settling Defendants or Settlement Class Counsel (on behalf of the Settlement Classes) may rescind this Agreement subject to Paragraph 44.

e. For purposes of this Paragraph 8, this Agreement will become final upon the occurrence of all of the events listed in Paragraph 8.a even if the Monitoring Period has not concluded.

9. **No Admission of Wrongdoing or Liability by Settling Defendants.**

a. Nothing in this Agreement will constitute or be construed as an admission of liability or wrongdoing by any Settling Defendant. Neither this Agreement (regardless whether it becomes final), nor the Final Judgment and Order of Dismissal, nor any and all negotiations, documents, or discussions associated with them, nor any proceedings undertaken in accordance with the terms set forth herein, shall be deemed or construed to be (i) an admission or concession by any of the Settling Defendants (or evidence thereof) in any action or proceeding of any kind whatsoever, civil, criminal, or otherwise, before any court, arbitrator, administrative agency, regulatory body, or any other body or authority, present or future, (ii) evidence of any violation of any statute or law or of any liability or wrongdoing whatsoever by any Settling Defendant, or (iii) evidence of the truth or validity of any of the claims or allegations contained in any complaint or any other pleading that Class Representatives or Class Members have or could have asserted against Settling Defendants, including without limitation that Settling Defendants have engaged in any conduct or practice that violates any antitrust statute, or other law, regulation, or obligation. Settling Defendants expressly deny any wrongdoing or liability whatsoever for any and all such claims and allegations.

b. Neither this Agreement, nor any of its terms or provisions, nor any statement or document made or filed in connection herewith, nor the fact of this Agreement, nor any of the negotiations or proceedings connected with it, nor any other action taken to carry out this Agreement by any Settling Defendant, shall be discoverable or be filed, referred to, offered as evidence or received in evidence, or otherwise used against Settling Defendants in any way, directly or indirectly, in any pending or future civil, criminal, or administrative action, arbitration, or proceeding whatsoever, except in a proceeding (i) to enforce this Agreement, (ii) to defend against the assertion of Released Claims, or (iii) regarding a Settling Individual Blue Plan's own insurance coverage related

to the Subscriber Actions; and even in such circumstances, such documents continue to be subject to their Confidentiality designations pursuant to the Qualified Protective Order (Dkt. 550).

## C.   CLASS INJUNCTIVE RELIEF

10.   **National Best Efforts.**  BCBSA and Settling Individual Blue Plans will eliminate and no longer enforce the National Best Efforts Requirement.  Further, BCBSA and Settling Individual Blue Plans will not adopt or implement any equivalent requirement or any rule in any future License Agreement or Membership Standard that imposes a cap, ratio, or other quantitative limit on a Settling Individual Blue Plan's non-Blue-Branded healthcare business outside of its Service Area.

11.   **Local Best Efforts.**  Compliance with the Local Best Efforts Requirement shall be based on a geographic area no larger than a state level.  The Local Best Efforts Requirement shall not exceed 80%.

12.   **Self-Funded Account Vendors.**

a.   BCBSA and Settling Individual Blue Plans agree not to prohibit direct contracting between Non-Provider Vendors and Self-Funded Accounts, provided however that BCBSA and Settling Individual Blue Plans shall not be required to communicate with or administer claims for any Non-Provider Vendors.

b.   BCBSA and Settling Individual Blue Plans agree not to prohibit Settling Individual Blue Plans from doing business with Self-Funded Accounts that contract directly with Specialty Service Provider Vendors, provided that any obligations under such contracting between a Self-Funded Account and a Specialty Service Provider Vendor are separate from, and completely carved out of, the Settling Individual Blue Plan's benefits, services, obligations, and use of the Blue Marks, and neither BCBSA, nor any Settling Individual Blue Plan shall be required to communicate with or administer claims for any Specialty Services Provider Vendor.  Nothing in this provision shall limit a Settling Individual Blue Plan's discretion to independently choose the Self-Funded Accounts with which it will contract.

27

c.      When Settling Individual Blue Plans report allowed amounts for covered services to Self-Funded Accounts, they will do so accurately in all material respects in accordance with the terms of the contract with the Self-Funded Account and any mutually agreed-upon definition of "allowed amounts."   Any dispute between a Self-Funded Account and a Settling Individual Blue Plan regarding the definition of allowed amounts shall be handled in the ordinary course of business between the Settling Individual Blue Plan and the Self-Funded Account and is not covered by the releases defined in Paragraphs 32 and 33.

d.      During the Monitoring Period and unless otherwise agreed to by the Settling Individual Blue Plan and Self-Funded Account, for a given contracted Provider, the Settling Individual Blue Plan will not enter into different standard commercial fee schedules for medical and surgical claims for its Self-Funded Accounts, on the one hand, and Insured Groups (other than Insured Groups who purchase an ACA-compliant individual or small-group product), on the other hand, if the products, networks, administrative services, and plan designs are the same, excluding differences in reimbursement rates individually negotiated with a contracted Provider.

13.     **Service Areas.**  Subject to the provisions of Paragraphs 10–12 and 14–18, nothing in this Agreement shall prevent any Settling Individual Blue Plan from continuing to operate its Blue-Branded business only in its Service Area, in accordance with the License Agreement(s) and Membership Standards as of the Execution Date.  Any material qualitative changes to the system of Settling Individual Blue Plan Service Areas after the Effective Date will not be covered by the releases defined in Paragraphs 32 and 33 unless such changes are approved by the Monitoring Committee pursuant to Paragraph 20 or Court order.  For the avoidance of doubt, mergers or consolidations among Settling Individual Blue Plans, termination of a Settling Individual Blue Plan's License Agreement, and/or the issuance of License Agreements to replacement Settling Individual Blue Plans do not constitute such material qualitative changes.

14.     **National Accounts.**

a.     When a Settling Individual Blue Plan bids a multi-Service Area account with more than 250 total Members and with Headquarters in its Service Area, the Settling Individual Blue Plan will only use the Blue Mark(s), provided however:

i.     A Settling Individual Blue Plan may choose to bid such an account solely under a non-Blue Brand.  If it does so, it must cede the right to submit a Blue-Branded bid to another Settling Individual Blue Plan.  The ceded right will be awarded to another Settling Individual Blue Plan in the following order:

a.     Any other Settling Individual Blue Plan in whose Service Area the account is Headquartered;

b.     The Settling Individual Blue Plan in whose Service Area resides the greatest number of the account's employees, provided that, for multi-state Settling Individual Blue Plans, the account's employees are to be counted separately in each state or portion of a state when the Service Area is not state-wide (*i.e.*, a single state is the largest possible unit of employee count).

b.     Accounts with Independent Health Benefit Decision Locations outside the Initial Control Plan's Service Area can request a bid for the employees covered by such a decision location from the Settling Individual Blue Plan in whose Service Area the decision location is situated rather than from the Initial Control Plan.  BCBSA and Settling Defendants will not prohibit requests for such bids based on any rules related to Service Areas.

15.     **Second Blue Bid.**   A Qualified National Account shall have the right to send a Second Blue Bid Request to any one Settling Individual Blue Plan, in addition to an Initial Control Plan, for a total of two bids.  Under all circumstances, the Qualified National Account shall have the right to select the Settling Individual Blue Plan bidder from these two bids.  Where the Qualified National Account has the right to request a bid from more than one Settling Individual Blue Plan under the current BCBSA rules (*e.g.*, the Qualified National Account's Headquarters is

located in multiple Settling Individual Blue Plans' Service Areas), this term is satisfied, and the Qualified National Account shall not have the right to request any additional bids from other Settling Individual Blue Plans. Rules governing the Second Blue Bid for Qualified National Accounts whose Headquarters is not located in multiple Settling Individual Blue Plans' Service Areas are contained in Appendix D.

  a. If any Employer contends that the data BCBSA used for that particular Employer are different from the data that Dun & Bradstreet ("D&B") provided to BCBSA as provided in Paragraph 1.u, such Employer shall have the right to appeal its status to the Monitoring Committee. The Monitoring Committee will decide any appeals based solely on whether BCBSA used the data provided by D&B for that Employer as of the date BCBSA received the data from D&B. Such decision will be made within 14 days of receipt of the appeal. The decision of a majority of the Monitoring Committee will be final and binding with respect to the Employer. If a majority of the Monitoring Committee decides in favor of the Employer, the Employer will be added to the list of Qualified National Accounts.

  16. **Additional Brand-Protection Mechanisms.** Nothing in this Agreement shall prevent Settling Defendants from adopting reasonable mechanisms designed to promote and build the competitiveness or efficiency of the Blue-Branded business or of the Blue Marks that they in good faith adopt consistent with the terms of this Agreement and all state and federal antitrust and trademark laws. These mechanisms include but are not limited to the following:

  a. Adopting reasonable mandatory metrics relating to membership, revenue, and financial stability tailored to each Settling Individual Blue Plan;

  b. Requiring reasonable additional or increased affirmative uses of the Blue Marks by Settling Individual Blue Plans within their Service Areas;

  c. Adopting reasonable requirements that protect non-public assets or information of or developed by Settling Individual Blue Plans collectively or BCBSA. A Settling Individual Blue Plan may use, in connection with any of its non-Blue-Branded business, its own assets or information. With respect to assets or information of or

30

developed by other Settling Individual Blue Plans or BCBSA, such requirements may include, but are not limited to, rules that prohibit Settling Individual Blue Plans, in connection with any non-Blue-Branded business, from:

      i.     Using the Blue Marks (*e.g.*, co-branding);

      ii.     Appropriating or using data that includes, reflects, or incorporates non-public information relating to any other Settling Individual Blue Plan's Members or contracted Providers; and

      iii.     Appropriating or using non-public plans developed by or among Settling Individual Blue Plans and/or BCBSA.

d.     Increasing the Re-Establishment Fee by a reasonable amount;

e.     Requiring a Settling Individual Blue Plan to spend a reasonable minimum annual expenditure on media advertising and other promotional efforts to affirm and/or enhance the value of the licensed Blue Marks;

f.     Requiring a Settling Individual Blue Plan to pay reasonable minimum annual royalties for use of the licensed Blue Marks; and

g.     Instituting intermediate remedial measures (including cure periods) for non-compliance by a Settling Individual Blue Plan with BCBSA rules and regulations, including newly adopted reasonable mechanisms.  A Settling Individual Blue Plan may be subject to termination of its License Agreement if it is found to have acted in a manner which failed to protect, maintain, and promote the value and goodwill of the Blue Marks consistent with the terms of this Agreement or has otherwise breached its commercial obligations or responsibilities under its respective contracts.  Before any termination decision is made, a Settling Individual Blue Plan will be extended the opportunity, if appropriate, to remedy the alleged failure.

h.     Nothing in this Agreement shall prevent BCBSA from making additional changes it deems appropriate in the future governance of the Blue System as long as such changes are not prohibited by this Agreement.  Such changes will not be covered by the

releases defined in Paragraphs 32 and 33 unless Settling Defendants comply with the notice and monitoring mechanisms in Paragraph 20 below or the changes are ordered by the Court.

17.   **Acquisitions.**   BCBSA and Settling Individual Blue Plans can collectively impose legal and reasonable conditions on the acquisition of a Settling Individual Blue Plan, but only to the extent that those conditions are reasonably necessary to prevent impairment of (1) the value of the Blue Marks, or (2) the competitiveness or efficiency of the Blue-Branded business or of the Blue Marks.   Any conditions imposed or required by BCBSA on the acquisition of a Settling Individual Blue Plan shall include a provision allowing a potential acquirer of an Individual Plan or the target Settling Individual Blue Plan to challenge any rejection by BCBSA of a formal acquisition bid during the Monitoring Period through a mediation by the Monitoring Committee, followed by binding arbitration (if the mediation is unsuccessful).   Rules related to such arbitration are contained in Appendix E.   If the arbitrators determine that the rejection was based on a reasonable need to prevent impairment of (1) the value of the Blue Marks, or (2) the competitiveness or efficiency of the Blue-Branded business or of the Blue Marks, the rejection may be upheld.   If the arbitrators instead determine that the rejection has the purpose or effect of unreasonably restricting or foreclosing competition generally for Commercial Health Insurance or Self-Funded Health Benefit Plans, the rejection may not be upheld.   Otherwise, the rejection may be upheld.   Nothing in this Paragraph 17 is intended to affect or restrict the conditions that a Settling Individual Blue Plan may unilaterally impose on an acquisition to which it is a party, or a Settling Individual Blue Plan's unilateral rejection of an acquisition bid.

18.   **Most Favored Nations Clauses**

a.   Where state law, or any existing written agreement between a Settling Individual Blue Plan and a state regulatory agency or subdivision as of November 2019, expressly regulates the use of MFNs and/or MFN-Differentials in Provider contracts and such existing written agreement has been disclosed to Settlement Class Counsel, a Settling Individual Blue Plan will abide by state law or said agreement.

b.   Where state law does not expressly regulate the use of MFNs and/or MFN Differentials, MFNs and/or MFN-Differentials may be negotiated between a Settling

32

Individual Blue Plan and any Provider to the extent permitted by law except as set forth in this Paragraph.

      c.     If a Settling Individual Blue Plan enters into an MFN-Differential under any portion of this Paragraph 18, the Settling Individual Blue Plan shall provide the Monitoring Committee proof that it is not prohibited by the terms of Paragraph 18.d.i.

      d.     During the Monitoring Period, and subject to the monitoring provisions in Paragraph 20, where state law does not expressly regulate the use of MFNs and/or MFN-Differentials in Provider contracts, a Settling Individual Blue Plan agrees not to enter into MFN Differentials where:

          i.     the number of the Settling Individual Blue Plan's enrollees in Blue-Branded Commercial Health Benefit Products in a state, Puerto Rico, or Washington, D.C., is greater than 40% of all enrollees in Commercial Health Benefit Products in that state other than Government Accounts, except where (A) the Provider has agreed to such provisions with one or more other payers, (B) the Provider offers a Commercial Health Benefit Product in competition with the Settling Individual Blue Plan, (C) the Settling Individual Blue Plan made an investment of at least $100,000 in the Provider or has entered into a Joint Venture with the Provider, or (D) the Settling Individual Blue Plan has agreed to an accountable care organization, narrow network, cost sharing, capitation, or value-based arrangement with the Provider.

     19.    **Implementation of Class Injunctive Relief.**  Settling Defendants shall begin taking steps necessary to implement Paragraphs 10–15 and 17–18 upon entry of the Preliminary Approval Order.  Settling Defendants shall implement as soon as practicable, but in no event later than 60 calendar days after the Effective Date for Paragraphs 10–14 and 17–18, and the later of three months after the Effective Date or April 1, 2022, for Paragraph 15.  These deadlines may be extended only by unanimous vote of the Monitoring Committee or Court approval.

     20.    **Monitoring and Reporting.**  During the Monitoring Period, BCBSA may advise Settlement Class Counsel, Self-Funded Sub-Class Settlement Counsel, and the Monitoring

Committee of BCBSA Board actions to be taken adopting rules or regulations that are within the scope of Paragraphs 10–18. The communications shall remain Confidential. During the Monitoring Period, Settlement Class Counsel, Self-Funded Sub-Class Settlement Counsel, and Settlement Class Members will report to the Monitoring Committee any and all disputes related to the Agreement, and Settling Defendants will report drafts of new rules or measures for approval under Paragraphs 10 through 18 to the extent Settling Defendants advise of such potential rules or measures and disputes related to obligations created by this Agreement. Any reporting obligation and the authority of the Monitoring Committee shall cease at the conclusion of the Monitoring Period.

a. As to drafts of new rules or measures for approval under Paragraphs 10 through 18, the following rules shall apply to the reporting and resolution of disputes:

i. Settlement Class Counsel and Self-Funded Sub-Class Settlement Counsel must raise to the Monitoring Committee in writing any dispute to Settling Defendants' actions within 90 calendar days of notice by Settling Defendants to Settlement Class Counsel and Self-Funded Sub-Class Settlement Counsel.

ii. If Settlement Class Counsel or Self-Funded Sub-Class Settlement Counsel raises a dispute within 90 calendar days, the Parties will attempt to resolve the dispute through good-faith negotiation. If the Parties agree that the rule, regulation, or action is within the scope of Paragraphs 10–18, the rule, regulation, or action will constitute a Released Claim. If the Parties cannot agree about whether a rule, regulation, or action is within the scope of Paragraphs 10–18, the Monitoring Committee will attempt to mediate the dispute. If the dispute is not resolved within 90 days following the date that Settlement Class Counsel or Self-Funded Sub-Class Settlement Counsel raises the dispute, it will be deemed unresolved, with the mediation being unsuccessful.

iii. If the mediation is unsuccessful, any Party to the dispute may take the dispute to arbitration as described in Appendix E. Further rules related to the Monitoring Committee and such arbitration are contained in Appendix E. If the arbitrators find that the rule, regulation, or action is outside the scope of

Paragraphs 10–18, the rule will not constitute a Released Claim.  Otherwise, the rule, regulation, or action will constitute a Released Claim.

iv.      Any newly adopted rule or regulation for which Settling Defendants do not provide notice to Settlement Class Counsel and Self-Funded Sub-Class Settlement Counsel initiating the process described in this Paragraph 20 during the Monitoring Period or receive a Court order will not constitute a Released Claim.

b.      The Parties will attempt to resolve all disputes related to obligations created by this Agreement through good-faith negotiation.  If the Parties cannot resolve an issue informally, the Monitoring Committee will attempt to mediate the dispute upon the request of any Party.  If the mediation is unsuccessful, any Party to the dispute may take the dispute to arbitration as described in Appendix E; provided that any unresolved dispute related to the Release, including the scope of the Released Claims, Releasors, or Releasees, will be submitted to the Court instead of to arbitration.   Further rules related to the Monitoring Committee and such arbitration are contained in Appendix E.

c.      Good-faith disputes over the interpretation or implementation of this Agreement shall not vitiate the releases described in Paragraphs 32 and 33.

d.      Nothing in this Paragraph 20 shall apply to disputes regarding the applicability of the releases described in Paragraphs 32 and 33.

21.      **Monitoring Fees and Expenses.**   Fees and expenses actually and reasonably incurred in connection with monitoring under Paragraph 20 shall be paid from the Notice and Administration Fund upon approval by the Court.  These include the actual and reasonable fees and expenses of the Monitoring Committee and neutral arbitrator, and actual and reasonable Settlement Class Counsel and Self-Funded Sub-Class Settlement Counsel monitoring fees and expenses.  For purposes of clarity, no attorneys' fees or attorney expenses for Settling Defendants shall be paid from the Notice and Administration Fund.  Any money remaining in the Notice and Administration Fund at the expiration of the Monitoring Period and the completion of Settlement administration will immediately revert to Settling Defendants.

## D.   SETTLEMENT AMOUNT

22.   **Settlement Amount.**   Subject to the provisions hereof, and in full, complete, and final settlement of the Subscriber Actions as provided herein, Settling Defendants shall pay or cause to be paid the Settlement Amount of $2.67 billion ($2,670,000,000.00), subject to increase only for potential replenishment of the Notice and Administration Fund pursuant to Paragraph 1.ggg.  The Settlement Amount shall be paid in U.S. dollars into the Escrow Account.

23.   **Payment Timing.**   The Settlement Amount shall be paid in the following installments:

a.   Within 30 calendar days of entry of the Preliminary Approval Order, Settling Defendants shall cause to be transferred into the Escrow Account (1) the $100 million ($100,000,000.00) Notice and Administration Fund, and (2) an advance of $300 million ($300,000,000.00) of the remaining Settlement Amount.

b.   Within 30 calendar days of the Court's entry of the Final Judgment and Order of Dismissal, Settling Defendants shall cause the remaining portion of the Settlement Amount to be transferred into the Escrow Account.

c.   All (1) Notice and Administration Costs, (2) Fee and Expense Awards, (3) Service Awards, (4) Taxes and Tax Expenses, and (5) any other Court-approved costs of implementing the settlement shall be paid solely from the Escrow Account, as further specified in Paragraph 26.  Amounts in the Escrow Account shall be paid and distributed only in accordance with the terms of this Agreement and the terms of a mutually agreed upon Escrow Agreement entered into by the parties, to be overridden only by Court order.

24.   **Failure to Fund.**   Without prejudice to Settlement Class Members' right to seek enforcement of this Agreement, if the Settlement Amount is not timely transferred to the Escrow Account in accordance with the terms of Paragraph 23, Settlement Class Counsel and Self-Funded Sub-Class Settlement Counsel may rescind this Agreement if:  (i) Settlement Class Counsel and Self-Funded Sub-Class Settlement Counsel have notified Settling Defendants' counsel in writing of their intention to rescind this Agreement; and (ii) the entire Settlement Amount is not transferred

to the Escrow Account within thirty (30) business days after Settlement Class Counsel and Self-Funded Sub-Class Settlement Counsel have provided such written notice of insufficient payment.

25.   **Tax Benefits and Consequences.**

a.    Settling Defendants, Settlement Class Counsel, and Self-Funded Sub-Class Settlement Counsel do not warrant to Class Representatives or Settlement Class Members any tax benefits or consequences arising from this Agreement or any of the payments made to Class Representatives and Settlement Class Members pursuant to this Agreement.  All federal, state, and local taxes owed by Class Representatives and Settlement Class Members on any of the amounts paid pursuant to this Agreement are the responsibility of Class Representatives and Settlement Class Members, and not the Releasees, Settlement Class Counsel, or Self-Funded Sub-Class Settlement Counsel.

b.    Settling Defendants do not warrant to Settlement Class Counsel or Self-Funded Sub-Class Settlement Counsel any tax benefits or consequences arising from this Agreement or any of the payments made to Settlement Class Counsel or Self-Funded Sub-Class Settlement Counsel pursuant to this Agreement.  All federal, state, and local taxes owed by Settlement  Class Counsel or Self-Funded Sub-Class Settlement Counsel on any of the amounts paid pursuant to this Agreement are the responsibility of Settlement Class Counsel and Self-Funded Sub-Class Settlement Counsel, and not the Releasees.

c.    Class Representatives, Settlement Class Members, Settlement Class Counsel, and Self-Funded Sub-Class Settlement Counsel acknowledge that Settling Defendants and the Section 468B Administrator will engage in reporting to the Internal Revenue Service and such other state and local taxing authorities as may be required by law.  Class Representatives, Settlement Class Members, Settlement Class Counsel, and Self-Funded Sub-Class Settlement Counsel further acknowledge that the Section 468B Administrator and the Escrow Agent will comply with all withholding obligations as required under the applicable provisions of the Internal Revenue Code and such other state and local laws as may be applicable, and the regulations promulgated thereunder.

26.     **Escrow Account.**  The Escrow Account shall be selected by the Parties and will be established at the Bank with such Bank serving as Escrow Agent subject to escrow instructions regarding investment types and reinvestment of income and proceeds mutually acceptable to Settlement Class Counsel, Self-Funded Sub-Class Settlement Counsel, and Settling Defendants. Such Escrow Account is to be administered by the Escrow Agent under the Court's continuing supervision and control.

a.      No monies shall be paid from the Escrow Account without the specific written authorization of Settlement Class Counsel, Self-Funded Sub-Class Settlement Counsel, and a designated representative of the Settling Defendants, and such authorization shall not be unreasonably withheld.  Counsel for the Parties agree to cooperate, in good faith, to negotiate and execute an appropriate and separate Confidential escrow agreement in conformance with this Agreement prior to the date on which any portion of the Settlement Amount is required to be paid pursuant to Paragraph 23 of this Agreement.

b.      The Escrow Agent shall cause the funds deposited in the Escrow Account to be invested in short-term instruments backed by the full faith and credit of the U.S. Government or fully insured in writing by the U.S. Government, or money market funds rated Aaa and AAA, respectively by Moody's Investor Services and Standard and Poor's, invested substantially in such instruments, and shall reinvest any income from these instruments and the proceeds of these instruments as they mature in similar instruments at their then-current market rates.  The Parties shall bear no risk related to the management and investment of the Settlement Fund or Escrow Account.  Settling Defendants shall not be required to deposit additional funds as a result of investment or other losses to the Settlement Fund or Escrow Account.

c.      All funds held in the Escrow Account shall be deemed and considered to be in *custodia legis* of the Court and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to the terms of this Agreement and/or order(s) of the Court.

d.      Class Representatives and Settling Defendants agree to treat the Escrow Account as being at all times a "qualified settlement fund" within the meaning of Treas.

Reg. § 1.468B-1.  In addition, the Section 468B Administrator and, as required, the Parties, shall timely make such elections and filings as necessary or advisable to carry out the provisions of this Paragraph 26.  Such elections shall be made in accordance with the procedures and requirements contained in the regulations promulgated under Internal Revenue Code Section 468B.  It shall be the responsibility of the Section 468B Administrator to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur. All provisions of this Agreement shall be interpreted in a manner that is consistent with the Escrow Account being a "qualified settlement fund" within the meaning of Treasury Regulation § 1.468B-1.

e.       The Section 468B Administrator shall timely and properly file all information and other Tax returns necessary or advisable with respect to the Escrow Account (including without limitation the returns described in Treas. Reg. § 1.468B-2(k), (1)).  Such returns shall be consistent with subparagraph (d) and in all events shall reflect that all Taxes shall be paid out of the Escrow Account as provided in subparagraph (g) hereof.

f.       Each Settling Defendant shall timely deliver to the Section 468B Administrator a "Section 1.468B-3 Statement" (as provided in Treas. Reg. § 1.468B-3(e)) with respect to any transfers it makes to the Escrow Account.

g.       The Escrow Account is intended to be a separate taxpaying entity for purposes of federal and state tax law.  All Taxes and Tax Expenses arising from the operation and income of the Escrow Account shall be paid out of the Escrow Account.

h.       Unless otherwise set forth in this Agreement, the Section 468B Administrator shall be solely responsible for directing the filing of all informational and other Tax returns necessary to report any income earned by the Escrow Account.

i.       Settling Defendants makes no representation to Settlement Class Counsel or Self-Funded Sub-Class Settlement Counsel regarding the appropriate tax treatment of the Settlement Fund, income earned on the Settlement Fund, or any distribution taken from

the Settlement Fund.  Neither Settling Defendants nor any other Releasee nor their respective counsel shall have any liability or responsibility for the Taxes or the Tax Expenses.  Settling Defendants shall have no responsibility to make any filings relating to the Settlement Fund and will have no responsibility to pay tax on any income earned by the Settlement Fund or to pay any taxes on the Settlement Fund unless the settlement is not consummated and the Settlement Fund is returned to Settling Defendants.  Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Escrow Account and shall be timely paid or reimbursed out of the Escrow Account without prior order from the Court.  The Escrow Agent shall reimburse Settling Defendants out of the Escrow Account for any Taxes and Tax Expenses to which Settling Defendants are subject.  The Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to any claimants authorized by the Court any funds necessary to pay such amounts including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(l)(2)).  Class Representatives, Settlement Class Counsel, Self-Funded Sub-Class Settlement Counsel, and Settling Defendants agree to cooperate with the Section 468B Administrator, the Escrow Agent, each other, and their attorneys and accountants to the extent reasonably necessary to carry out the provisions of subparagraphs (d)–(g).

27.    **Distribution of Net Settlement Fund to Classes.**  After this Agreement becomes final on the Effective Date and the Court enters a Class Distribution Order, the amounts in the Escrow Account consisting of the Net Settlement Fund shall be distributed to Authorized Claimants in accordance with the Plan of Distribution, which shall include the foundation for the requested allocation, to be submitted to the Court at the appropriate time by Settlement Class Counsel and Self-Funded Sub-Class Settlement Counsel, subject to approval by the Court in the Class Distribution Order.  The Plan of Distribution will provide an opportunity to submit a claim for monetary payments by all members of the Damages Class.  In no event shall any Settling Defendant or any other Releasee have any responsibility, financial obligation, or liability whatsoever with respect to the allocation, investment, distribution, or administration of the Escrow Account, including, but not limited to, the costs and expenses of such distribution and

administration except as expressly otherwise provided in Paragraphs 23 through 26 to be borne by the Notice and Administration Fund.

28.   **<u>Attorneys' Fees and Expenses and Service Awards.</u>**   Settlement Class Counsel and Self-Funded Sub-Class Settlement Counsel shall be reimbursed and indemnified solely out of the Escrow Account for all attorneys' fees, expenses, and costs, in amounts not to exceed those provided by Court order.   Settlement Class Counsel and Self-Funded Sub-Class Settlement Counsel shall file their Fee and Expense Application(s), and provide notice to Class Members, in accordance with Eleventh Circuit practice.   All such expenses as are approved by the Court shall be solely paid out of the Escrow Account.   In the event that the Effective Date does not occur, only actually and reasonably incurred Notice and Administration Costs may be payable from the Escrow Account, and such amounts shall not be refunded to Settling Defendants**.**

a.   Settlement Class Counsel may submit an application(s) to the Court ("Fee and Expense Application") for: (i) an award of attorneys' fees plus (ii) reimbursement of expenses and costs reasonably and actually incurred in connection with prosecuting the Subscriber Actions, up to a combined total of 25% of $2.67 billion (*i.e.*, $667,500,000.00), which shall include Self-Funded Sub-Class Settlement Counsel's application.

b.   If the Fee and Expense Award exceeds 25% of $2.67 billion, Settling Defendants may rescind the settlement.

c.   Settlement Class Counsel and Self-Funded Sub-Class Settlement Counsel may also seek Service Awards for Class Representatives as part of their Fee and Expense Application in accordance with Eleventh Circuit practice.   Any Service Awards approved by the Court shall be payable from the Settlement Amount.

d.   A partial award of seventy-five million ($75,000,000) of the total attorneys' fees, expenses, and interest as are awarded by the Court shall be paid from the Escrow Account no later than 31 days after the entry of an order preliminarily approving the Settlement.   The partial award shall be distributed at the discretion of Settlement Class Counsel.   The partial award shall be subject to Plaintiffs' Counsel's provision of an irrevocable letter of credit from the Bank securing the amount of the partial award.

41

Plaintiffs' counsel shall be required to repay those amounts to the Escrow Account, plus accrued interest at the same net rate as is earned by the Escrow Account, and subject to an appropriate undertaking, if and when, as a result of any appeal and further proceedings on remand, or successful collateral attack, and after the exhaustion of all appeals, the Fee and Expense Award is reduced or reversed below seventy-five million ($75,000,000), or return of the Escrow Account is required.

e.       Neither Settling Defendants nor any other Releasee under this Agreement shall have any responsibility for, interest in, or liability whatsoever with respect to any payment to Settlement Class Counsel, Self-Funded Sub-Class Settlement Counsel, and/or Class Representatives of any Fee and Expense Award or Service Award.

f.       Notwithstanding any other provision of this Agreement to the contrary, the Fee and Expense Application shall be considered by the Court separate and apart from its consideration of the fairness, reasonableness, and adequacy of the settlement, and any order or proceeding relating to the Fee and Expense Application, or any appeal of any order relating thereto or reversal or modification thereof, that does not have the effect of increasing Settling Defendants' financial obligation under this Agreement, shall not operate to terminate or cancel this Settlement Agreement or the settlement of the Action, or affect the finality or binding nature of any of the releases granted hereunder.  Nothing in this Paragraph affects Settling Defendants' rights under Paragraph 28.b.

g.       Other than as set forth in this Paragraph, Settling Defendants and the other Releasees shall not be liable for any costs, fees, or expenses of any of Class Representatives or the Settlement Classes, including without limitation attorneys' fees and expenses, attorneys' fees and expenses associated with the provision of Class Notice, attorneys' fees and expenses incurred in administering the Escrow Account, attorneys' fees and expenses of expert witnesses and consultants, and attorneys' fees and expenses associated with discovery, motion practice, hearings before the Court, and appeals.

h.       Separate and apart from the Fee and Expense Award, Settling Defendants further agree to reimburse plaintiffs' counsel's actual and reasonable fees and expenses incurred for Notice and Administration in an amount not to exceed seven million dollars

($7,000,000).  Such reimbursements shall further be limited to no more than 2.33 million dollars ($2,330,000) per year, with any remainder of that amount rolling over year over year for final accounting upon completion of the process.  Such reimbursements will be paid from the Notice and Administration Fund.

29.     **Distributions of the Settlement Fund.**  The Parties agree that the Escrow Account shall be paid out as follows:

a.      After entry of an order approving such distribution, the Claims Administrator and Settlement Administrator shall be paid Notice and Administration Costs.

b.      After the Effective Date, the Fee and Expense Award and Service Awards shall be paid; provided, however, that any amounts in the Escrow Account necessary for Taxes and Tax Expenses shall remain in the Escrow Account.

c.      After (1) the Effective Date, (2) written certification by Settling Defendants, Settlement Class Counsel, and Self-Funded Sub-Class Settlement Counsel that the Agreement is final pursuant to Paragraph 8 (which may occur before the conclusion of the Monitoring Period), and (3) receipt of Court order approving distribution of the Net Settlement Fund to Authorized Claimants, the Net Settlement Fund shall be distributed as ordered by the Court; provided, however, that any amounts in the Escrow Account necessary for Taxes and Tax Expenses shall remain in the Escrow Account.

30.     **Balance Remaining in Settlement Fund.**  Any funds remaining in the Notice and Administration Fund, plus income accrued on the Notice and Administration Fund (but not any other portion of the Settlement Fund), will be immediately returned to Settling Defendants when the administration and monitoring during the Monitoring Period is completed and Settlement administration is completed.  Each Settling Defendant will be paid in proportion to its respective contribution to the Settlement Fund.  If there is any balance remaining in the Escrow Account after distributions to Authorized Claimants, the Fee and Expense Award, and Service Awards, and after any payment in full of the remaining balance of the Notice and Administration Fund to Settling Defendants (including accrued income), the Claims Administrator will, subject to Court

approval, reallocate the Settlement Fund among Settlement Class Members in an equitable and economic fashion.  Following such distributions, if it is not economical to distribute to Settlement Class Members any residual amounts, then, subject to Court approval, the Claims Administrator may follow the directions set forth in the Plan of Distribution approved by the Court.  Other than the remaining balance of the Notice and Administration Fund (including accrued income), which shall be distributed to the Settling Defendants as described herein, in no event shall any portion of the Settlement Fund be paid to Settling Defendants (except in the event of rescission in accordance with Paragraphs 8, 24, 28, 41, or 43 of this Agreement).  In no event shall any portion of the Net Settlement Fund be distributed to Settlement Class Counsel or Self-Funded Sub-Class Settlement Counsel.

31.   **Amounts Paid Not a Penalty.**  It is understood and agreed that no consideration or amount or sum paid, credited, offered, or expended by Settling Defendants in performance of this Agreement constitutes a penalty, fine, punitive damages, or other form of assessment for any alleged claim or offense.

## E.   RELEASE, DISCHARGE, AND COVENANT NOT TO SUE

32.   **Released Claims and Covenant Not to Sue.**  In addition to the effect of any final judgment entered in accordance with this Agreement, upon the Effective Date as set out in Paragraph 8, and in consideration of the Injunctive Relief and payment of the Settlement Amount into the Settlement Fund, and for other valuable consideration, the Releasors shall be deemed to have, and by operation of the Final Judgment and Order of Dismissal shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims against any and all of the Releasees.  Persons or entities in both the Injunctive Relief Class and the Damages Class release all Released Claims.  Persons or entities in the Injunctive Relief Class but not the Damages Class, release only claims for equitable or injunctive relief, provided that persons or entities that are within the definition of the Damages Class release any claims for damages that may be asserted by persons or entities (including dependents and beneficiaries) who claim by, for, under, or through a Damages Class member or the Commercial Health Benefit Product that a Damages Class member purchased, was covered by, or was enrolled in.

The Parties intend that the releases in this Agreement be interpreted and enforced broadly and to the fullest extent permitted by law.  Each Releasor shall be deemed to have released all Released Claims against the Releasees regardless whether any such Releasor ever seeks or obtains by any means, including without limitation through the Claim Process, any distribution from Settlement Fund.   Class Representatives and Settling Defendants acknowledge, and Settlement Class Members shall be deemed by operation of the Final Judgment and Order of Dismissal to have acknowledged, that the foregoing waivers and releases were separately bargained for and a key element of the settlement of which these releases are part.

a.      All Releasors also covenant not to sue any Releasee with respect to any Released Claim, and agree that all Releasors shall be permanently barred and enjoined from commencing, maintaining, prosecuting, causing, cooperating with, advising to be commenced or maintained, or encouraging any action, suit, proceeding, or claim in any court, tribunal, administrative agency, regulatory body, arbitrator, or other body in any jurisdiction against any Releasee based in whole or in part upon, arising out of, or in any way connected or related to any Released Claim.

b.      Each Releasor may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims which are the subject matter of the provisions of this Paragraph 32 and Paragraph 33.  Nevertheless, each Releasor hereby expressly waives and fully, finally, and forever settles and releases, upon this Agreement becoming final, any known or unknown, suspected or unsuspected, contingent or non-contingent claim with respect to the subject matter of the provisions of this Paragraph 32, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

33.     **California Civil Code.**  In addition to the provisions of Paragraph 32, Releasors expressly waive and release, upon this Agreement becoming final, any and all provisions, rights, and benefits conferred by § 1542 of the California Civil Code, which states:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, AND THAT, IF

KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY
AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR
OR RELEASED PARTY;

or by any law of any state or territory of the U.S., or principle of common law, which is similar,

comparable, or equivalent to § 1542 of the California Civil Code.

34.    **All Claims Satisfied by Settlement Fund.**  Each Releasor shall look solely to the

Plan of Distribution and Net Settlement Fund as deposited in the Escrow Account for settlement

and satisfaction, as provided herein, of all Released Claims for any form of monetary

compensation or relief (including attorneys' fees and costs). Except as provided by order of the

Court pursuant to this Agreement, no Class Member shall have any interest in the Escrow Account

or the Settlement Funds deposited therein, or any portion thereof.

35.    **Enforcement of Release.**  Notwithstanding any other provision of this Agreement,

nothing in this Agreement will prevent Releasees from pleading this Settlement Agreement as a

full and complete defense to any action, suit, or other proceeding that has been or may be instituted,

prosecuted, or attempted with respect to any of the Released Claims and may be filed, offered, and

received into evidence, and otherwise used for such defense.

F.    **ADMINISTRATION OF SETTLEMENT**

36.    **Claims and Release.**  Any Settlement Class Member who does not follow the

instructions of the Notice Program will not be entitled to any of the proceeds under the Plan of

Distribution and from the Net Settlement Fund, but will otherwise be bound by all of the terms of

this Agreement, including the terms of the Final Judgment and Order of Dismissal to be entered in

the Subscriber Actions and the releases provided for herein, and will be barred from bringing any

action or proceeding against the Releasees based in whole or in part upon, arising out of, or in any

way connected or related to the Released Claims.

37.    **Claims Administrator.**  The Claims Administrator shall process the Settlement

Fund in accord with the Notice Plan submitted in connection with the settlement, and, after entry

of the Class Distribution Order, distribute the Net Settlement Fund in accordance with the Class

Distribution Order.  Except for their obligation to fund the settlement or cause it to be funded as

detailed in this Agreement, Settling Defendants shall have no liability, obligation, or responsibility

for the administration of the settlement or disbursement of the Net Settlement Fund.  Settlement Class Counsel and Self-Funded Sub-Class Settlement Counsel shall have the right, but not the obligation, to advise the Claims Administrator to waive what Settlement Class Counsel and Self-Funded Sub-Class Settlement Counsel reasonably deem to be formal or technical defects in any proofs of claim submitted, including without limitation failure to submit a document by the submission deadline, in the interests of achieving substantial justice.

38.   **Written Exclusion for Opt-Outs from Damages Classes.**   Subject to Court approval, persons and entities within the Damages Class shall have the right to exclude themselves from their respective Damages Classes pursuant only to the procedure set forth in the Class Notice and approved by the Court.  Any person or entity seeking exclusion from any Damages Class must serve a written request for exclusion by the Opt-Out Deadline.  Any Class Member that serves such a request shall be excluded from the applicable Damages Class and shall have no rights with respect to the Damages Class (or Classes) from which such Class Member has requested to be excluded.  Settling Defendants reserve their legal rights and defenses, including, but not limited to, any defenses relating to whether any excluded Class Member is a Class Member or has standing to bring a claim against any Settling Defendant.  Each person or entity in the Damages Class that does not file a timely and appropriate written request for exclusion in accordance with the procedures set forth in the Class Notice shall be bound by all of the terms of this Agreement, including the releases defined in Paragraphs 32 and 33, and by all proceedings, orders, and judgments in this Action, even if any such person or entity has pending, or subsequently initiates, litigation, arbitration, or any other claim, action, or proceeding against any or all of the Releasees relating to any Released Claim.

39.   **Failure to Properly Exclude.**   Subject to Court approval, a request for exclusion that does not comply with all of the provisions set forth in the applicable Class Notice will be invalid, and the person(s) or entity(ies) serving such an invalid request shall be deemed a Settlement Class Member of the applicable Settlement Class (or Classes) and shall be bound by the Agreement upon entry of the Final Judgment and Order of Dismissal.

40.   **Identification of Opt-Outs.**  Settlement Class Counsel and Self-Funded Sub-Class Settlement Counsel shall, within 20 business days of the Opt-Out Deadline, provide Settling

Defendants with a list and copies of all opt-out requests they received in the Subscriber Actions and shall file with the Court a list of all persons and entities who timely and validly opted out of the settlement.

41.   **Settling Defendants' Right to Rescind.**   Settling Defendants shall have the right to rescind this Agreement under the terms of the *In Camera* Supplement.   If Settling Defendants do not rescind this Agreement, there shall be no reduction of the Settlement Fund to the Damages Class by reason of any Opt-Outs.

## G.   STAY OF PROCEEDINGS

42.   **Stay.**   Upon execution of this Agreement, the Parties agree to stay any and all proceedings against Settling Defendants in the Subscriber Actions, other than those incident to the settlement process, and agree to extensions of time with respect to any court filings necessary to effectuate such stays.

## H.   RESCISSION IF AGREEMENT IS NOT APPROVED OR FINAL JUDGMENT NOT ENTERED

43.   **Rescission.**   The Class Representatives and Settling Defendants shall each, in their sole discretion, have the option to rescind this Agreement in its entirety if any of the following occurs:

a.   The Court refuses to approve this Agreement or any part hereof, including if the Court does not certify the Settlement Classes in accordance with the specific Settlement Class definitions set forth in this Agreement;

b.   Such approval is modified or set aside on appeal;

c.   The Court does not enter the Final Judgment and Order of Dismissal provided for in Paragraph 8; or

d.   The Court enters the Final Judgment and Order of Dismissal and appellate review is sought, and on such review, such Final Judgment and Order of Dismissal is not affirmed in its entirety.

e.     Written notice of the exercise of any such right to rescind shall be given to the Parties according to the terms of Paragraph 50 and to the Escrow Agent within 30 business days following the occurrence of such an event.  A modification or reversal on appeal of any Fee and Expense Award or any Service Awards awarded by the Court from the Settlement Fund shall not be deemed a modification of all or a part of the terms of this Agreement or such Final Judgment and Order of Dismissal, unless such modification or reversal has the effect of increasing Settling Defendants' financial obligation under this Agreement.

44.     **Return of Settlement Funds.**  In the event that this Agreement does not become final as set forth in Paragraph 8, or this Agreement otherwise is rescinded or terminated, then this Agreement shall be of no force or effect and any and all parts of the Settlement Fund caused to be deposited in the Escrow Account (other than Notice and Administration Costs reasonably and actually incurred), along with any income accrued thereon, shall be returned to the entities that paid such amounts into the Escrow Account.  Each entity will be paid in proportion to its respective contribution to the Settlement Fund.  Such payments will be made from the Escrow Account by the Escrow Agent within ten (10) calendar days of rescission, termination, or a court's final determination denying final approval of the Agreement and/or any of the Settlement Classes, whichever occurs first.  The Parties expressly reserve all of their rights if this Agreement is rescinded or does not become final.

45.     **Resumption of Litigation.**  The Parties agree, subject to approval of the Court, that in the event the Agreement is not approved by the Court, the Agreement does not become final pursuant to Paragraph 8, or the Agreement is otherwise rescinded, litigation of the Subscriber Actions against Settling Defendants will resume in a reasonable manner to be approved by the Court upon application by the Parties.  The Parties expressly reserve all of their rights if this Agreement is rescinded or does not otherwise become final.

I.     **MISCELLANEOUS**

46.     **Confidentiality; Third-Party Communications.**

a.     All Parties and counsel agree that all orders entered during the course of the Subscriber Actions relating to the Confidentiality of information shall survive this

Agreement.  All Parties and counsel agree to maintain the Confidentiality of the *In Camera* Supplement at all times and agree to take such steps as may be necessary to accomplish this.

b.      No Confidentiality obligation prevents Settling Defendants from asserting any release as a defense.

c.      No Class Representative, Settlement Class Counsel, Self-Funded Sub-Class Settlement Counsel, or other agent for or representative of Class Representatives or Class Members will make or cause to be made any public statement or comment regarding this settlement or Agreement until after the earlier of (i) the filing of the Preliminary Approval Motion or (ii) any public disclosures by Settling Defendants regarding this settlement or Agreement other than Defendants' communications with their employees, auditors, and regulatory bodies.  Settling Defendants shall be entitled to make such disclosures to their employees, auditors, and regulatory bodies of the Agreement as they, in their sole discretion, determine are appropriate.  The Parties will coordinate regarding any public statement or comment regarding this settlement or Agreement before the filing of the Preliminary Approval Motion.  This provision does not apply to statements made in judicial filings necessary to obtain preliminary Court approval of the settlement or effectuate the Notice Plan approved by the Court.

d.      Excluding the communications authorized by the Court-approved Notice Plan, during the Monitoring Period, all Parties and their counsel will mutually agree upon the content of all website postings and communications to public-facing third parties regarding any matter related to this Agreement or any of the allegations in the Consolidated Amended Class Action Complaint or answers.  The Parties shall use best efforts to give each other at least two business days' notice of any draft posting or communication.  In the event such notice is not practicable, the Party shall contact the other Party's designee as early as possible regarding the communication and shall rely upon previously agreed-upon materials in any event.  The foregoing does not apply to Defendants' communications with their employees, auditors, or regulatory bodies.  Quoting materials in the public record is

permissible and does not require agreement under this Paragraph.  The Special Master appointed by the Court is the arbiter of what is contained in the public record.

e.       Nothing in this Paragraph 46 limits the communications Settling Defendants may have with third parties regarding the operations of their business under the terms of this Agreement.

47.    **California Health and Safety Code.**  **Nothing in this arbitration decision (or settlement agreement) prohibits or restricts the enrollee from discussing or reporting the underlying facts, results, terms and conditions of this decision (or settlement agreement) to the Department of Managed Health Care.**

48.    **Communications with Class Members.**  Settlement Class Counsel and Self-Funded Sub-Class Settlement Counsel acknowledge and agree that Settling Defendants have the right to communicate with Class Members for the purpose of encouraging them to remain in the Settlement Classes, as well as for other legitimate business purposes, provided that, if any Class Member raises a question about the terms of the Agreement, Settling Defendants shall, as part of the communication, refer such Class Member to the toll-free number or website established by the Claims Administrator.

49.    **Binding Effect.**  Each and every covenant and agreement in this Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of all Class Representatives, Settling Defendants, Releasors, Settlement Class Members, and their counsel.

50.    **Notice.**  Any and all notices, requests, consents, directives, or communications by any Party intended for any other Party related to this Agreement shall be in writing and shall, unless expressly provided otherwise herein, be given by e-mail, to the following persons, and shall be addressed as follows:

**TO THE CLASS
REPRESENTATIVES and
SETTLEMENT CLASSES:**

Michael Hausfeld
Megan Jones
Swathi Bojedla
HAUSFELD LLP
mhausfeld@hausfeldllp.com
mjones@hausfeld.com
sbojedla@hausfeld.com


David Boies
Hamish Hume
Jonathan Shaw
BOIES SCHILLER FLEXNER
LLP
dboies@bsfllp.com
hhume@bsfllp.com
jshaw@bsfllp.com


William A. Isaacson
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
wisaacson@paulweiss.com


Warren Burns
Christopher Cormier
BURNS CHAREST
wburns@burnscharest.com
ccormier@burnscharest.com

**TO SETTLING DEFENDANTS:**


David J. Zott, P.C.
Daniel E. Laytin, P.C.
Zachary D. Holmstead
KIRKLAND & ELLIS LLP
david.zott@kirkland.com
daniel.laytin@kirkland.com
zachary.holmstead@kirkland.com


*Blue Cross Blue Shield Association; Wellmark of South
Dakota, Inc. (Wellmark Blue Cross and Blue Shield of
South Dakota); Wellmark, Inc. (Wellmark Blue Cross and
Blue Shield of Iowa); Hawaii Medical Service Association
(Blue Cross and Blue Shield of Hawaii); Triple-S Salud,
Inc.*

Craig A. Hoover
E. Desmond Hogan
HOGAN LOVELLS US LLP
craig.hoover@hoganlovells.com
desmond.hogan@hoganlovells.com


*Anthem, Inc., f/k/a WellPoint, Inc., and all of its named
subsidiaries in this consolidated action; Blue Cross and
Blue Shield of North Carolina, Inc.; Louisiana Health
Service & Indemnity Company (Blue Cross and Blue
Shield of Louisiana); BCBSM, Inc. (Blue Cross and Blue
Shield of Minnesota); Blue Cross and Blue Shield of South
Carolina; Horizon Healthcare Services, Inc. (Horizon
Blue Cross and Blue Shield of New Jersey); Blue Cross &
Blue Shield of Rhode Island; Blue Cross and Blue Shield
of Vermont; Cambia Health Solutions, Inc.; Regence Blue
Shield of Idaho; Regence Blue Cross Blue Shield of Utah;
Regence Blue Shield (of Washington); Regence Blue
Cross Blue Shield of Oregon*

Helen E. Witt, P.C.
Jeffrey J. Zeiger, P.C.
KIRKLAND & ELLIS LLP
hwitt@kirkland.com
jzeiger@kirkland.com

*Health Care Service Corporation; Highmark Inc.; Blue
Shield of California*

Kathleen Taylor Sooy
Tracy A. Roman
Sarah Gilbert
CROWELL & MORING LLP
ksooy@crowell.com
troman@crowell.com
sgilbert@crowell.com

*Blue Cross of Idaho Health Service, Inc.; Blue Cross and
Blue Shield of Kansas, Inc.; Blue Cross and Blue Shield of
Kansas City; Blue Cross and Blue Shield of Nebraska;
Blue Cross Blue Shield of Arizona; Blue Cross Blue
Shield of North Dakota; Blue Cross Blue Shield of
Wyoming; HealthNow New York Inc.; BlueShield of
Northeastern New York; BlueCross BlueShield of Western
New York*

Evan R. Chesler
Karin A. DeMasi
Lauren R. Kennedy
CRAVATH SWAINE & MOORE LLP
echesler@cravath.com
kdemasi@cravath.com
lkennedy@cravath.com

*Blue Cross and Blue Shield of Alabama; BlueCross
BlueShield of Tennessee, Inc.; Blue Cross and Blue Shield
of Florida, Inc.; Blue Cross and Blue Shield of
Massachusetts, Inc.*

Carl S. Burkhalter
MAYNARD COOPER & GALE, P.C.
cburkhalter@maynardcooper.com

*Blue Cross and Blue Shield of Alabama*

Michael A. Naranjo
Alan D. Rutenberg
FOLEY & LARDNER LLP
mnaranjo@foley.com
arutenberg@foley.com

*USAble Mutual Insurance Company, doing business as Arkansas Blue Cross and Blue Shield and as Blue Advantage Administrators of Arkansas*

Todd Stenerson
SHEARMAN & STERLING LLP
todd.stenerson@shearman.com

*Blue Cross Blue Shield of Michigan Mutual Insurance Company*

M. Patrick McDowell
BRUNINI, GRANTHAM,GROWER & HEWES, PLLC
pmcdowell@brunini.com

*Blue Cross & Blue Shield of Mississippi, A Mutual Insurance Company*

Robert K. Spotswood
Joshua K. Payne
SPOTSWOOD SANSOM & SANSBURY LLC
rks@spotswoodllc.com
jpayne@spotswoodllc.com

*Capital BlueCross*

Brian K. Norman
SHAMOUN & NORMAN, LLP
bkn@snlegal.com

*Carefirst, Inc.; Carefirst of Maryland, Inc.; Group Hospitalization and Medical Services, Inc.; CareFirst BlueChoice, Inc.*

John G. Schmidt
Edward S. Bloomberg
Anna Mercado Clark
PHILLIPS LYTLE LLP
jschmidt@phillipslytle.com
ebloomberg@phillipslytle.com
aclark@phillipslytle.com

*Excellus Health Plan, Inc.*

John Briggs
AXINN, VELTROP & HARKRIDER, LLP
jbriggs@axinn.com

*Independence Blue Cross*

Gwendolyn Payton
KILPATRICK TOWNSEND & STOCKTON LLP
gpayton@kilpatricktownsend.com

*Premera Blue Cross, d/b/a Premera Blue Cross Blue Shield of Alaska*

51.     **Integrated and Final Agreement.**   This Agreement comprises the entire, complete, and integrated statement of each and every term and provision agreed to by and among the Parties, and is not subject to any condition except as explicitly provided herein.   This Agreement supersedes any prior agreements, representations, warranties, statements, and/or understandings, whether written or oral, between or among the Parties regarding the subject matter of the Subscriber Actions.   The Parties hereby disclaim reliance on any prior agreements, representations, warranties, statements, and/or understandings, whether written or oral, in entering into and performing in accordance with this Agreement. Any and all prior Term Sheets are rendered null and void upon full execution of this Agreement.  In no event is any prior Term Sheet deemed to be the Agreement.  This Agreement may not be modified or amended except in writing executed by all Class Representatives and Settling Defendants, and approved by the Court.

52.     **CAFA.**   Defendants shall timely submit all materials required to be sent to appropriate federal and state officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, and notify the Court that CAFA compliance has been accomplished.

53.     **Future Rules.**  Future BCBSA and Individual Blue Plan rules will comply with this Agreement.

54.     **Headers.**  The headings used in this Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Agreement.

55.     **No Party Is the Drafter.**  This Agreement was jointly negotiated, prepared, and drafted by Settlement Class Counsel, Self-Funded Sub-Class Settlement Counsel, and counsel for Settling Defendants.  This Agreement shall be construed and interpreted to effectuate the intent of the Parties, which is to provide for a complete resolution of the Released Claims with respect to the Releasors.  None of the Parties hereto shall be considered to be the drafter of this Agreement or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter thereof.

56.     **Choice of Law.**  All terms of this Agreement shall be governed by and interpreted according to the substantive laws of the State of New York without regard to its choice-of-law or conflict-of-laws principles.

57.     **Consent to Jurisdiction.**  Settling Defendants and each Settlement Class Member hereby irrevocably submit to the exclusive jurisdiction of the Court for any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement (except those arising under Paragraphs 17 and 20 during the Monitoring Period, which are subject to binding arbitration as further described in those Paragraphs) to resolve any disputes or controversies, including but not limited to enforcement regarding Released Claims and Paragraphs 32 and 33.

        a.     Settling Defendants and Class Members (including those who challenge their inclusion in the Settlement Classes) also agree that, in the event of such dispute, they are and shall be subject to the jurisdiction of the Court and that the Court is a proper venue and convenient forum.  Settling Defendants, Settlement Class Members, Settlement Class Counsel, and Self-Funded Sub-Class Settlement Counsel shall jointly urge the Court to include the provisions of this Paragraph 57 in its Final Judgment and Order of Dismissal.

58.     **Non-Disparagement.**   All Parties and their counsel agree not to disparage, criticize, or denigrate opposing Parties (individually or collectively) to any person or entity (including but not limited to any media outlet, television station or program, radio station or program, newspaper, magazine, website, editor, reporter, journalist, photo-journalist, interviewer, author, columnist, blogger, mobile application (*e.g.*, Facebook, Twitter, Instagram), writer, or current or former employee or customer of any Settling Defendant) regarding any matter related to the Agreement or any of the allegations, claims, or defenses in the Consolidated Amended Class Action Complaint, answers, or other filings in the Subscriber Actions.  Quoting materials currently in the public record as of the Execution Date would not constitute a violation of this Paragraph. Nothing in this Paragraph shall limit a party's ability to challenge conduct and/or provisions through the Monitoring Committee or in a court of law.

59.     **Voluntary Settlement and Agreement; Advice of Counsel.**   Each Party agrees and acknowledges that it has (1) thoroughly read and fully understands this Agreement and (2) received or had an opportunity to receive independent legal advice from attorneys of its own choice with respect to the advisability of entering into this Agreement and the rights and obligations created by this Agreement.  Each Party agrees that this Agreement was negotiated in good faith by the Parties under the supervision and with the assistance of court-appointed mediators, and reflects a settlement that was reached voluntarily after consultation with competent legal counsel.  Each Party enters into this Agreement knowingly and voluntarily, in consideration of the promises, obligations, and rights set forth herein.

60.     **Authorization to Enter Agreement.**   The undersigned Settling Defendants' counsel represent that they are fully authorized to enter into and to execute this Agreement on behalf of the Settling Defendants on whose behalf they sign.  The undersigned Settlement Class Counsel and Self-Funded Sub-Class Settlement Counsel represent that they are fully authorized to enter into and to execute this Agreement on behalf of Settlement Class Counsel, Self-Funded Sub-Class Settlement Counsel, Class Representatives, and the Settlement Classes, subject to Court approval.

61.     **Non-Assignment.**  Class Representatives represent and warrant that they have not assigned, transferred, conveyed, released, or discharged, voluntarily or involuntarily, or by

operation of law, to any other person or entity any interest in the claims, actions, or disputes which are the subject of this Agreement.

62. **<u>Inconsistency with the Settlement Agreement.</u>**  In the event of a conflict between the terms of this Settlement Agreement, the *In Camera* Supplement, any escrow agreement, or any other document arising out of this Settlement Agreement, the terms of the Settlement Agreement, including the Appendices hereto, shall control.

63. **<u>Privilege.</u>**  Nothing in this Settlement Agreement is intended to waive any right to assert that any information or material is protected from discovery by reason of any individual or common interest privilege, attorney-client privilege, work product protection, or other privilege, protection or immunity, or is intended to waive any right to contest any such claim of privilege, protection or immunity.

64. **<u>Execution in Counterparts.</u>**  This Agreement may be executed in counterparts. Facsimile or .pdf signatures shall be considered valid signatures as of the date thereof, although the original signature pages shall thereafter be appended to this Agreement and filed with the Court.  On the Execution Date, Class Representatives, Settlement Class Members, and Settling Defendants shall be bound by the terms of this Agreement, and this Agreement shall not be rescinded except in accordance with Paragraphs 8, 24, 28, 41, or 43 of this Agreement.

Dated:  October 16, 2020

**For the Settling Defendants:**


David J. Zott, P.C.
Daniel E. Laytin, P.C.
Zachary D. Holmstead
KIRKLAND & ELLIS LLP
david.zott@kirkland.com
daniel.laytin@kirkland.com
zachary.holmstead@kirkland.com

Blue Cross Blue Shield Association; Wellmark of South Dakota, Inc. (Wellmark Blue Cross and
Blue Shield of South Dakota); Wellmark, Inc. (Wellmark Blue Cross and Blue Shield of Iowa);
Hawaii Medical Service Association (Blue Cross and Blue Shield of Hawaii); Triple-S Salud,
Inc.


Craig A. Hoover
E. Desmond Hogan
HOGAN LOVELLS US LLP
craig.hoover@hoganlovells.com
desmond.hogan@hoganlovells.com

Anthem, Inc., f/k/a WellPoint, Inc., and all of its named subsidiaries in this consolidated action;
Blue Cross and Blue Shield of North Carolina, Inc.; Louisiana Health Service & Indemnity
Company (Blue Cross and Blue Shield of Louisiana); BCBSM, Inc. (Blue Cross and Blue Shield
of Minnesota); Blue Cross and Blue Shield of South Carolina; Horizon Healthcare Services, Inc.
(Horizon Blue Cross and Blue Shield of New Jersey); Blue Cross & Blue Shield of Rhode
Island; Blue Cross and Blue Shield of Vermont; Cambia Health Solutions, Inc.; Regence Blue
Shield of Idaho; Regence Blue Cross Blue Shield of Utah; Regence Blue Shield (of
Washington); Regence Blue Cross Blue Shield of Oregon

Dated:  October 16, 2020

**For the Settling Defendants:**

_____

David J. Zott, P.C.
Daniel E. Laytin, P.C.
Zachary D. Holmstead
KIRKLAND & ELLIS LLP
david.zott@kirkland.com
daniel.laytin@kirkland.com
zachary.holmstead@kirkland.com

Blue Cross Blue Shield Association; Wellmark of South Dakota, Inc. (Wellmark Blue Cross and
Blue Shield of South Dakota); Wellmark, Inc. (Wellmark Blue Cross and Blue Shield of Iowa);
Hawaii Medical Service Association (Blue Cross and Blue Shield of Hawaii); Triple-S Salud,
Inc.

_Craig G. Hoover_ (10-27-20)

Craig A. Hoover
E. Desmond Hogan
HOGAN LOVELLS US LLP
craig.hoover@hoganlovells.com
desmond.hogan@hoganlovells.com

Anthem, Inc., f/k/a WellPoint, Inc., and all of its named subsidiaries in this consolidated action;
Blue Cross and Blue Shield of North Carolina, Inc.; Louisiana Health Service & Indemnity
Company (Blue Cross and Blue Shield of Louisiana); BCBSM, Inc. (Blue Cross and Blue Shield
of Minnesota); Blue Cross and Blue Shield of South Carolina; Horizon Healthcare Services, Inc.
(Horizon Blue Cross and Blue Shield of New Jersey); Blue Cross & Blue Shield of Rhode
Island; Blue Cross and Blue Shield of Vermont; Cambia Health Solutions, Inc.; Regence Blue
Shield of Idaho; Regence Blue Cross Blue Shield of Utah; Regence Blue Shield (of
Washington); Regence Blue Cross Blue Shield of Oregon

Helen E. Witt, P.C.
Jeffrey J. Zeiger, P.C.
KIRKLAND & ELLIS LLP
hwitt@kirkland.com
jzeiger@kirkland.com

Health Care Service Corporation; Highmark Inc.; Blue Shield of California

Kathleen Taylor Sooy
Tracy A. Roman
Sarah Gilbert
CROWELL & MORING LLP
ksooy@crowell.com
troman@crowell.com
sgilbert@crowell.com

Blue Cross of Idaho Health Service, Inc.; Blue Cross and Blue Shield of Kansas, Inc.; Blue Cross
and Blue Shield of Kansas City; Blue Cross and Blue Shield of Nebraska; Blue Cross Blue
Shield of Arizona; Blue Cross Blue Shield of North Dakota; Blue Cross Blue Shield of
Wyoming; HealthNow New York Inc.; BlueShield of Northeastern New York; BlueCross
BlueShield of Western New York

Evan R. Chesler
Karin A. DeMasi
Lauren R. Kennedy
CRAVATH SWAINE & MOORE LLP
echesler@cravath.com
kdemasi@cravath.com
lkennedy@cravath.com

Blue Cross and Blue Shield of Alabama; BlueCross BlueShield of Tennessee, Inc.; Blue Cross
and Blue Shield of Florida, Inc.; Blue Cross and Blue Shield of Massachusetts, Inc.

Helen E. Witt, P.C.
Jeffrey J. Zeiger, P.C.
KIRKLAND & ELLIS LLP
hwitt@kirkland.com
jzeiger@kirkland.com

Health Care Service Corporation; Highmark Inc.; Blue Shield of California


Kathleen Taylor Sooy
Tracy A. Roman
Sarah Gilbert
CROWELL & MORING LLP
ksooy@crowell.com
troman@crowell.com
sgilbert@crowell.com

Blue Cross of Idaho Health Service, Inc.; Blue Cross and Blue Shield of Kansas, Inc.; Blue Cross
and Blue Shield of Kansas City; Blue Cross and Blue Shield of Nebraska; Blue Cross Blue
Shield of Arizona; Blue Cross Blue Shield of North Dakota; Blue Cross Blue Shield of
Wyoming; HealthNow New York Inc.; BlueShield of Northeastern New York; BlueCross
BlueShield of Western New York


Evan R. Chesler
Karin A. DeMasi
Lauren R. Kennedy
CRAVATH SWAINE & MOORE LLP
echesler@cravath.com
kdemasi@cravath.com
lkennedy@cravath.com

Blue Cross and Blue Shield of Alabama; BlueCross BlueShield of Tennessee, Inc.; Blue Cross
and Blue Shield of Florida, Inc.; Blue Cross and Blue Shield of Massachusetts, Inc.

_____

Helen E. Witt, P.C.
Jeffrey J. Zeiger, P.C.
KIRKLAND & ELLIS LLP
hwitt@kirkland.com
jzeiger@kirkland.com

Health Care Service Corporation; Highmark Inc.; Blue Shield of California

_____

Kathleen Taylor Sooy
Tracy A. Roman
Sarah Gilbert
CROWELL & MORING LLP
ksooy@crowell.com
troman@crowell.com
sgilbert@crowell.com

Blue Cross of Idaho Health Service, Inc.; Blue Cross and Blue Shield of Kansas, Inc.; Blue Cross and Blue Shield of Kansas City; Blue Cross and Blue Shield of Nebraska; Blue Cross Blue Shield of Arizona; Blue Cross Blue Shield of North Dakota; Blue Cross Blue Shield of Wyoming; HealthNow New York Inc.; BlueShield of Northeastern New York; BlueCross BlueShield of Western New York

_____

Evan R. Chesler
Karin A. DeMasi
Lauren R. Kennedy
CRAVATH SWAINE & MOORE LLP
echesler@cravath.com
kdemasi@cravath.com
lkennedy@cravath.com

Blue Cross and Blue Shield of Alabama; BlueCross BlueShield of Tennessee, Inc.; Blue Cross and Blue Shield of Florida, Inc.; Blue Cross and Blue Shield of Massachusetts, Inc.

_____

Carl S. Burkhalter
MAYNARD COOPER & GALE, P.C.
cburkhalter@maynardcooper.com

Blue Cross and Blue Shield of Alabama

_____

Todd Stenerson
SHEARMAN & STERLING LLP
todd.stenerson@shearman.com

Blue Cross Blue Shield of Michigan Mutual Insurance Company

_____

Michael A. Naranjo
Alan D. Rutenberg
FOLEY & LARDNER LLP
mnaranjo@foley.com
arutenberg@foley.com

USAble Mutual Insurance Company, doing business as Arkansas Blue Cross and Blue Shield
and as Blue Advantage Administrators of Arkansas

_____

M. Patrick McDowell
BRUNINI, GRANTHAM,GROWER & HEWES, PLLC
pmcdowell@brunini.com

Blue Cross & Blue Shield of Mississippi, A Mutual Insurance Company

Carl S. Burkhalter
MAYNARD COOPER & GALE, P.C.
cburkhalter@maynardcooper.com

Blue Cross and Blue Shield of Alabama

Todd Stenerson
SHEARMAN & STERLING LLP
todd.stenerson@shearman.com

Blue Cross Blue Shield of Michigan Mutual Insurance Company

Michael A. Naranjo
Alan D. Rutenberg
FOLEY & LARDNER LLP
mnaranjo@foley.com
arutenberg@foley.com

USAble Mutual Insurance Company, doing business as Arkansas Blue Cross and Blue Shield
and as Blue Advantage Administrators of Arkansas

M. Patrick McDowell
BRUNINI, GRANTHAM,GROWER & HEWES, PLLC
pmcdowell@brunini.com

Blue Cross & Blue Shield of Mississippi, A Mutual Insurance Company

_____
Carl S. Burkhalter
MAYNARD COOPER & GALE, P.C.
cburkhalter@maynardcooper.com

Blue Cross and Blue Shield of Alabama

_____
Todd Stenerson
SHEARMAN & STERLING LLP
todd.stenerson@shearman.com

Blue Cross Blue Shield of Michigan Mutual Insurance Company

_____
Michael A. Naranjo
Alan D. Rutenberg
FOLEY & LARDNER LLP
mnaranjo@foley.com
arutenberg@foley.com

USAble Mutual Insurance Company, doing business as Arkansas Blue Cross and Blue Shield
and as Blue Advantage Administrators of Arkansas

_____
M. Patrick McDowell
BRUNINI, GRANTHAM,GROWER & HEWES, PLLC
pmcdowell@brunini.com

Blue Cross & Blue Shield of Mississippi, A Mutual Insurance Company

Carl S. Burkhalter
MAYNARD COOPER & GALE, P.C.
cburkhalter@maynardcooper.com

Blue Cross and Blue Shield of Alabama


Todd Stenerson
SHEARMAN & STERLING LLP
todd.stenerson@shearman.com

Blue Cross Blue Shield of Michigan Mutual Insurance Company


Michael A. Naranjo
Alan D. Rutenberg
FOLEY & LARDNER LLP
mnaranjo@foley.com
arutenberg@foley.com

USAble Mutual Insurance Company, doing business as Arkansas Blue Cross and Blue Shield
and as Blue Advantage Administrators of Arkansas

M. Patrick McDowell
BRUNINI, GRANTHAM,GROWER & HEWES, PLLC
pmcdowell@brunini.com

Blue Cross & Blue Shield of Mississippi, A Mutual Insurance Company

Robert K. Spotswood
Joshua K. Payne
SPOTSWOOD SANSOM & SANSBURY LLC
rks@spotswoodllc.com
jpayne@spotswoodllc.com

Capital BlueCross


Brian K. Norman
SHAMOUN & NORMAN, LLP
bkn@snlegal.com

Carefirst, Inc.; Carefirst of Maryland, Inc.; Group Hospitalization and Medical Services, Inc.;
CareFirst BlueChoice, Inc.


John G. Schmidt
Edward S. Bloomberg
Anna Mercado Clark
PHILLIPS LYTLE LLP
jschmidt@phillipslytle.com
ebloomberg@phillipslytle.com
aclark@phillipslytle.com

Excellus Health Plan, Inc.


John Briggs
AXINN, VELTROP & HARKRIDER, LLP
jbriggs@axinn.com

Independence Blue Cross

---

Robert K. Spotswood
Joshua K. Payne
SPOTSWOOD SANSOM & SANSBURY LLC
rks@spotswoodllc.com
jpayne@spotswoodllc.com

Capital BlueCross

---

Brian K. Norman
SHAMOUN & NORMAN, LLP
bkn@snlegal.com

Carefirst, Inc.; Carefirst of Maryland, Inc.; Group Hospitalization and Medical Services, Inc.; CareFirst BlueChoice, Inc.

---

John G. Schmidt
Edward S. Bloomberg
Anna Mercado Clark
PHILLIPS LYTLE LLP
jschmidt@phillipslytle.com
ebloomberg@phillipslytle.com
aclark@phillipslytle.com

Excellus Health Plan, Inc.

---

John Briggs
AXINN, VELTROP & HARKRIDER, LLP
jbriggs@axinn.com

Independence Blue Cross

Robert K. Spotswood
Joshua K. Payne
SPOTSWOOD SANSOM & SANSBURY LLC
rks@spotswoodllc.com
jpayne@spotswoodllc.com

Capital BlueCross

Brian K. Norman
SHAMOUN & NORMAN, LLP
bkn@snlegal.com

Carefirst, Inc.; Carefirst of Maryland, Inc.; Group Hospitalization and Medical Services, Inc.;
CareFirst BlueChoice, Inc.

John G. Schmidt
Edward S. Bloomberg
Anna Mercado Clark
PHILLIPS LYTLE LLP
jschmidt@phillipslytle.com
ebloomberg@phillipslytle.com
aclark@phillipslytle.com

Excellus Health Plan, Inc.

John Briggs
AXINN, VELTROP & HARKRIDER, LLP
jbriggs@axinn.com

Independence Blue Cross

Robert K. Spotswood
Joshua K. Payne
SPOTSWOOD SANSOM & SANSBURY LLC
rks@spotswoodllc.com
jpayne@spotswoodllc.com

Capital BlueCross

Brian K. Norman
SHAMOUN & NORMAN, LLP
bkn@snlegal.com

Carefirst, Inc.; Carefirst of Maryland, Inc.; Group Hospitalization and Medical Services, Inc.;
CareFirst BlueChoice, Inc.

John G. Schmidt
Edward S. Bloomberg
Anna Mercado Clark
PHILLIPS LYTLE LLP
jschmidt@phillipslytle.com
ebloomberg@phillipslytle.com
aclark@phillipslytle.com

Excellus Health Plan, Inc.

John Briggs
AXINN, VELTROP & HARKRIDER, LLP
jbriggs@axinn.com

Independence Blue Cross

Gwendolyn Payton
KILPATRICK TOWNSEND & STOCKTON LLP
gpayton@kilpatricktownsend.com

Premera Blue Cross, d/b/a Premera Blue Cross Blue Shield of Alaska

**For the Class Representatives and Settlement Class:**

Michael Hausfeld
Megan Jones
Swathi Bojedla
HAUSFELD LLP
mhausfeld@hausfeldllp.com
mjones@hausfeld.com
sbojedla@hausfeld.com

David Boies
Hamish Hume
Jonathan Shaw
BOIES SCHILLER FLEXNER LLP
dboies@bsfllp.com
hhume@bsfllp.com
jshaw@bsfllp.com

Warren Burns
Christopher Cormier
BURNS CHAREST
wburns@burnscharest.com
ccormier@burnscharest.com

_____
Gwendolyn Payton
KILPATRICK TOWNSEND & STOCKTON LLP
gpayton@kilpatricktownsend.com

Premera Blue Cross, d/b/a Premera Blue Cross Blue Shield of Alaska


**For the Class Representatives and Settlement Class:**


_____
Michael Hausfeld
Megan Jones
Swathi Bojedla
HAUSFELD LLP
mhausfeld@hausfeldllp.com
mjones@hausfeld.com
sbojedla@hausfeld.com




_____
David Boies
Hamish Hume
Jonathan Shaw
BOIES SCHILLER FLEXNER LLP
dboies@bsfllp.com
hhume@bsfllp.com
jshaw@bsfllp.com




_____
Warren Burns
Christopher Cormier
BURNS CHAREST
wburns@burnscharest.com
ccormier@burnscharest.com

_____
Gwendolyn Payton
KILPATRICK TOWNSEND & STOCKTON LLP
gpayton@kilpatricktownsend.com

Premera Blue Cross, d/b/a Premera Blue Cross Blue Shield of Alaska

**For the Class Representatives and Settlement Class:**

_____
Michael Hausfeld
Megan Jones
Swathi Bojedla
HAUSFELD LLP
mhausfeld@hausfeldllp.com
mjones@hausfeld.com
sbojedla@hausfeld.com

_____
David Boies
Hamish Hume
Jonathan Shaw
BOIES SCHILLER FLEXNER LLP
dboies@bsfllp.com
hhume@bsfllp.com
jshaw@bsfllp.com

_____
Warren Burns
Christopher Cormier
BURNS CHAREST
wburns@burnscharest.com
ccormier@burnscharest.com

63

Gwendolyn Payton
KILPATRICK TOWNSEND & STOCKTON LLP
gpayton@kilpatricktownsend.com

Premera Blue Cross, d/b/a Premera Blue Cross Blue Shield of Alaska

**For the Class Representatives and Settlement Class:**

Michael Hausfeld
Megan Jones
Swathi Bojedla
HAUSFELD LLP
mhausfeld@hausfeldllp.com
mjones@hausfeld.com
sbojedla@hausfeld.com

David Boies
Hamish Hume
Jonathan Shaw
BOIES SCHILLER FLEXNER LLP
dboies@bsfllp.com
hhume@bsfllp.com
jshaw@bsfllp.com

Warren Burns
Christopher Cormier
BURNS CHAREST
wburns@burnscharest.com
ccormier@burnscharest.com

**Appendix A:  List of Primary Licensees**

| Legal Name | Principal Licensed State(s) |
|---|---|
| Anthem, Inc. | CA, CO, CT, GA, IN, KY, ME, MO, NV, NH, NY, OH, VA, WI |
| Aware Integrated, Inc. | MN |
| Blue Cross and Blue Shield of Alabama | AL |
| Blue Cross and Blue Shield of Arizona, Inc. | AZ |
| Blue Cross and Blue Shield of Florida, Inc. | FL |
| Blue Cross and Blue Shield of Kansas City | MO |
| Blue Cross and Blue Shield of Kansas, Inc. | KS |
| Blue Cross and Blue Shield of Massachusetts, Inc. | MA |
| Blue Cross Blue Shield of Michigan Mutual Insurance Company | MI |
| Blue Cross & Blue Shield of Mississippi, a Mutual Insurance Company | MS |
| Blue Cross and Blue Shield of North Carolina | NC |
| Blue Cross & Blue Shield of Rhode Island | RI |
| Blue Cross and Blue Shield of South Carolina | SC |
| BlueCross BlueShield of Tennessee, Inc. | TN |
| Blue Cross and Blue Shield of Vermont | VT |
| Blue Cross and Blue Shield of Wyoming | WY |
| Blue Cross of Idaho Health Service, Inc. | ID |
| California Physicians' Service | CA |
| Cambia Health Solutions, Inc. | OR, UT, WA |
| Capital Blue Cross | PA |
| CareFirst, Inc. | DC, MD, VA |
| GoodLife Partners, Inc. | NE |
| GuideWell Mutual Holding Corporation | FL |
| Hawaii Medical Service Association | HI |
| Health Care Service Corporation, a Mutual Legal Reserve Company | IL, MT, NM, OK, TX |

| Legal Name | Principal Licensed State(s) |
|---|---|
| HealthNow Systems, Inc. | NY |
| HealthyDakota Mutual Holdings | ND |
| Highmark Health | DE, PA, WV |
| Horizon Healthcare Services, Inc. | NJ |
| Independence Health Group, Inc. | PA |
| Lifetime Healthcare, Inc. | NY |
| Louisiana Health Service & Indemnity Company | LA |
| PREMERA | AK, WA |
| Regence BlueShield of Idaho | ID |
| Triple-S Management Corporation | PR |
| USAble Mutual Insurance Company | AR |
| Wellmark, Inc. | IA, SD |

**Appendix B:  List of Subscriber Actions**

| Name | Court | Case No. |
|------|-------|----------|
| Allen v. Blue Cross of Idaho Health Services Inc. | USDC N.D. Ala. | 2:13-cv-00002 |
| Am. Elec. Motor Serv., Inc., et al. v. Blue Cross & Blue Shield of Ala., et al. | USDC N.D. Ala. | 2:12-cv-02169 |
| Aschenbrenner, et al. v. Blue Cross Blue Shield of Ala., et al. | USDC N.D. Ala. | 2:16-cv-01203 |
| Barr, Sternberg, Moss, Lawrence, Silver & Munson, P.C. v Blue Cross Blue Shield of Ala., et al. | USDC N.D. Ala. | 2:16-cv-00744 |
| Belzer, et al. v. Blue Cross Blue Shield of Ala., et al. | USDC N.D. Ala. | 2:16-cv-00570 |
| Cerven, et al. v. Blue Cross & Blue Shield of N.C., et al. | USDC N.D. Ala. | 2:12-cv-04169 |
| Comet Capital LLC v. Blue Cross Blue Shield of Ala., et al. | USDC N.D. Ala. | 2:16-cv-00508 |
| Davidson v. Blue Cross & Blue Shield of Ala., et al. | USDC N.D. Ala. | 2:12-cv-04171 |
| DK Ltd, et al. v. Blue Cross Blue Shield of Ala., et al. | USDC N.D. Ala. | 2:16-cv-00507 |
| Forsythe v. Blue Cross & Blue Shield of Tenn. Inc., et al. | USDC N.D. Ala. | 2:13-cv-00719 |
| Galactic Funk Touring Inc. et al. v. Triple S Salud | USDC N.D. Ala. | 2:15-cv-00701 |
| Galactic Funk Touring, Inc. v. Blue Cross & Blue Shield of Kan. | USDC N.D. Ala. | 2:15-cv-00575 |
| Galactic Funk Touring, Inc. v. HealthNow New York, Inc., et al. | USDC N.D. Ala. | 2:15-cv-00576 |
| Galactic Funk Touring, Inc. v. Noridian Mutual Insurance Co. | USDC N.D. Ala. | 2:15-cv-00577 |
| Galactic Funk Touring, Inc., et al. v. Blue Cross & Blue Shield of Ariz. | USDC N.D. Ala. | 2:15-cv-00574 |
| Galactic Funk Touring, Inc., et al. v. Blue Cross & Blue Shield of La., et al. | USDC N.D. Ala. | 2:12-cv-04177 |
| Galactic Funk Touring, Inc., et al. v. Capital Blue Cross, et al. | USDC N.D. Ala. | 2:15-cv-00578 |
| Garner v. Blue Cross & Blue Shield Association, et al. | USDC N.D. Ala. | 2:13-cv-00718 |
| Gaston CPA Firm, et al. v. Blue Cross & Blue Shield of Miss., et al. | USDC N.D. Ala. | 2:12-cv-04179 |
| Gaston CPA Firm, PC v. Blue Cross & Blue Shield Miss. | USDC N.D. Ala. | 2:13-cv-00665 |
| GC/AAA-Fences, Inc., et al. v. Anthem Health Plans of New Hampshire, Inc., et al. | USDC N.D. Ala. | 2:13-cv-00992 |
| Goodman, et al. v. Blue Cross Blue Shield of Ala., et al. | USDC N.D. Ala. | 2:16-cv-00370 |
| Hill, et al. v. Blue Cross Blue Shield of Ala., et al. | USDC N.D. Ala. | 2:16-cv-00743 |
| Horner, et al. v. Blue Cross Blue Shield of Ala., et al. | USDC N.D. Ala. | 2:16-cv-00628 |

| Name | Court | Case No. |
| --- | --- | --- |
| In re Blue Cross Blue Shield Antitrust Litigation | USDC N.D. Ala. | 2:13-cv-20000 |
| Jameson v. Blue Cross Blue Shield of Ala., et al. | USDC N.D. Ala. | 2:16-cv-01000 |
| Mark Krieger v. Blue Cross Blue Shield of Ala., et al. | USDC N.D. Ala. | 2:16-cv-00369 |
| McGill, et al v. Blue Cross Blue Shield of Ala., et al. | USDC N.D. Ala. | 2:16-cv-00742 |
| Mills, et al. v. USAble Mutual Insurance Co., et al. | USDC N.D. Ala. | 2:13-cv-00717 |
| Morrissey v. Blue Cross & Blue Shield of Tenn. Inc. | USDC N.D. Ala. | 2:12-cv-04170 |
| Pearce, Bevill, Leesburg, Moore, PC v. Blue Cross Blue Shield of Ala., et al. | USDC N.D. Ala. | 2:16-cv-00464 |
| Pettus Plumbing & Piping, Inc. v. Blue Cross Blue Shield of Ala., et al. | USDC N.D. Ala. | 3:16-cv-00297 |
| Piercy, et al. v. Health Care Serv. Corp., et al. | 1st Cir. Union Cnty., Illinois | 12-L-28 |
| Ray, et al. v. Wellpoint, Inc. | USDC N.D. Ala. | 2:15-cv-00052 |
| Saccoccio & Lopez, et al. v. Hawaii Med. Serv. Ass'n, et al. | USDC N.D. Ala. | 2:13-cv-00991 |
| Scheller, et al. v. Highmark, Inc., et al. | USDC N.D. Ala. | 2:13-cv-01078 |
| Sheridan v. Blue Cross of Cal., et al. | USDC N.D. Ala. | 2:13-cv-00990 |
| Shred 360 LLC v. Blue Cross & Blue Shield of S.C., et al. | USDC N.D. Ala. | 2:13-cv-00003 |
| Stark, et al. v. Healthcare Service Corp., et al. | USDC N.D. Ala. | 2:13-cv-01157 |
| Thomas v. Blue Cross & Blue Shield of R.I., et al. | USDC N.D. Ala. | 2:13-cv-01079 |
| Thompson v. Blue Cross & Blue Shield of Mich., et al. | USDC N.D. Ala. | 2:12-cv-04178 |
| Watts v. Blue Cross & Blue Shield of Tex., et al. | USDC N.D. Ala. | 2:12-cv-04180 |

**Appendix C:  List of Qualified National Accounts,
Subject to Removal of Opt-Outs, As of June 30, 2020**

| Company Name Per Dun & Bradstreet | Company Name Per Dun & Bradstreet |
|---|---|
| 2100 Trust, LLC* | Ahmc Healthcare Inc.* |
| 24 Hour Fitness Worldwide, Inc.* | Aip, LLC |
| Aaron's, Inc. | Air Products and Chemicals, Inc.* |
| AB SKF* | AISIN SEIKI CO., LTD. |
| ABB Ltd | Akzo Nobel N.V. |
| Abbott Laboratories | Alaska Air Group, Inc.* |
| Abercrombie & Fitch Co. | Albany Capital Center* |
| ABM Industries Incorporated | Albany Medical Center* |
| Abry Partners, Inc. | Albert Einstein Healthcare Network* |
| Acadia Healthcare Company, Inc. | Albert Einstein Medical Associates, Inc.* |
| ACCENTURE PUBLIC LIMITED COMPANY | Albertsons Investor Holdings LLC |
| ACCOR* | Alecto Healthcare Services LLC* |
| Ace Hardware Corporation | Alfa, S.A.B. de C.V. |
| Acg Seattle, Inc.* | Alimentation Couche-Tard Inc. |
| Acon Investments, L.L.C. | Alliance Data Systems Corporation |
| Acosta Inc. | Allianz SE |
| ACS, ACTIVIDADES DE CONSTRUCCION Y SERVICIOS, SA | Allied Universal Topco LLC* |
| Activision Blizzard, Inc.* | Allscripts Healthcare Solutions, Inc. |
| Acts Retirement-Life Communities, Inc.* | Ally Financial Inc. |
| Adecco Group AG | Alorica Inc.* |
| adidas AG | Alphabet Inc.* |
| Adobe Inc.* | Alsco Inc. |
| Advance Auto Parts, Inc. | Alstom Signaling Operation, LLC |
| Advantage Sales & Marketing Inc.* | Altamont Capital Partners LLC* |
| Adventist Health System/West* | Amazon.com, Inc.* |
| Aecom* | AMCOR PLC |
| AEGON N.V. | Amedisys, Inc. |
| Aerojet Rocketdyne Holdings, Inc.* | América Móvil, S.A.B. de C.V. |
| Afognak Native Corporation | American Eagle Outfitters, Inc. |
| AGC INC.* | American Express Company |
| AGCO Corporation | American Property-Management Corporation* |
| AGENCE DES PARTICIPATIONS DE L'ETAT | American Residential Services LLC |
| Agilent Technologies, Inc.* | American Water Works Company, Inc. |
| Agnaten SE | Americold Realty Trust |
|  | AmeriGas Partners, L.P.* |

* Indicates Employers who are eligible to receive two Blue bids because their headquarters is located in multiple Settling Individual Blue Plans' Service Areas.

| Company Name Per Dun & Bradstreet | Company Name Per Dun & Bradstreet |
|---|---|
| Ameriprise Financial, Inc. | Automobile Club of Southern California* |
| Ameriquest Capital Corporation* | Autonation, Inc. |
| Amerisourcebergen Corporation* | Autozone, Inc. |
| Ametek, Inc.* | Avantor, Inc. |
| Amgen Inc.* | Avaya Holdings Corp.* |
| Amn Healthcare Services, Inc.* | Aveanna Healthcare, LLC |
| Andrews International, Inc.* | Avery Dennison Corporation* |
| APAX PARTNERS LLP | Axalta Coating Systems Ltd.* |
| API Group Inc. | B&D HOLDING SPA |
| Apple Inc.* | BALFOUR BEATTY PLC* |
| Applied Materials, Inc.* | BANCO SANTANDER SA |
| Aptim Holdings LLC | Bank of America Corporation |
| ArcelorMittal | Baptist Health |
| Archdiocese of Philadelphia* | Baptist Health System, Inc. |
| Arconic Inc. | Barnes & Noble Education, Inc. |
| Arctic Slope Regional Corporation | Battelle Memorial Institute Inc. |
| Ares Management Corporation* | Bausch Health Companies Inc. |
| Argos Holdings Inc. | Bayer AG |
| Aro Liquidation, Inc. | Bayerische Motoren Werke AG* |
| ARRIS INTERNATIONAL LIMITED* | BB&T Corporation |
| ARYZTA AG* | BBA AVIATION PLC |
| ASAHI KASEI CORPORATION | Beacon Roofing Supply, Inc. |
| Asbury Automotive Group, Inc. | Becton, Dickinson and Company |
| Ascena Retail Group, Inc. | Bed Bath & Beyond Inc. |
| Ascension Health Alliance | Benchmark Electronics, Inc. |
| Asgn Incorporated* | Berkshire Hathaway Inc. |
| Ashland Global Holdings Inc. | Berry Global Group, Inc. |
| ASHTEAD GROUP PUBLIC LIMITED COMPANY | Berwind Corporation* |
| Asp AMC Intermediate Holdings, Inc. | Best Buy Co., Inc. |
| Asplundh Tree Expert, LLC* | Big 5 Sporting Goods Corp* |
| ASSA ABLOY AB* | Biglari Holdings Inc. |
| Assurant, Inc. | Bilfinger SE |
| Assuredpartners, Inc. | Bioscrip, Inc. |
| ASTRAZENECA PLC | BJ's Restaurants, Inc.* |
| AT&T Inc. | BJ's Wholesale Club Holdings, Inc. |
| Atlas Copco AB | Blackberry Limited* |
| Atlas Holdings, LLC | Blackrock, Inc. |
| ATOS SE | BLUESCOPE STEEL LIMITED* |
| Atrium Hotels, Inc. | Bluestem Group Inc. |
| Aurora Capital Partners, L.P.* | BMC Stock Holdings, Inc. |

| Company Name Per Dun & Bradstreet | Company Name Per Dun & Bradstreet |
|---|---|
| BNP PARIBAS | CCL Industries Inc. |
| Boise Cascade Company* | CDM Smith Inc. |
| Bombardier Inc. | Cdw Corporation |
| Boscov's, Inc.* | Cedars-Sinai Medical Center* |
| Boston Consulting Group | Celtic Intermediate Corp. |
| Boston Market Holding Corp | Cemex, S.A.B. de C.V. |
| Boston Scientific Corporation | Centerbridge Partners, L.P. |
| Bowlero Corp. | Central Garden & Pet Company* |
| Brand Industrial Services, Inc. | CENTRAL GLASS CO., LTD. |
| Briad Restaurant Group L.L.C. | Central Purchasing, LLC* |
| BRIDGESTONE CORPORATION | Centre Partners Management LLC |
| Brightview Parent, L.P.* | CENTRICA PLC |
| Bristol-Myers Squibb Company | Centurylink, Inc. |
| BRITISH AMERICAN TOBACCO P.L.C. | Cfj Properties LLC |
| Broadcom Inc.* | Chemed Corporation |
| Brookdale Senior Living | Chevron Corporation* |
| Brown & Brown, Inc. | Chicago Growth Partners II, LP |
| Brunswick Corporation | Chico's Fas, Inc. |
| Buckeye Partners, L.P. | Chief Seattle Council, Boy Scouts of America* |
| Builders Firstsource, Inc. | China National Chemical Corporation Limited |
| BUNZL PUBLIC LIMITED COMPANY* | Chipotle Mexican Grill, Inc.* |
| Butler International, Inc.* | Christopher & Banks Corporation |
| C&S Wholesale Grocers, Inc. | CHS Inc. |
| C.H. Robinson Worldwide, Inc. | Chubb Limited* |
| C3/Customercontactchannels, Inc. | CINEWORLD GROUP PLC |
| CAISSE DES DEPOTS ET CONSIGNATIONS | Cisco Systems, Inc.* |
| Caliber Home Loans, Inc. | CIT Group Inc. |
| California Physicians' Service* | Citigroup Inc. |
| Campbell Soup Company | Citizens Financial Group, Inc. |
| CANON INC.* | CJ CHEILJEDANG CORP. |
| CAPGEMINI | Claire's Inc. |
| Cardinal Glass Industries Inc. | Clean Harbors, Inc. |
| Cargill, Incorporated | Cme Group Inc. |
| Carlisle Companies Incorporated | Coast Community College District Enterprise, Inc.* |
| CARNIVAL PLC | Cogswell Education, LLC* |
| Cascade Investment, L.L.C.* | Colfax Corporation |
| Cascades Inc. | Columbia Sussex Corporation |
| Castle & Cooke, Inc.* | Comcast Corporation* |
| Cbre Group, Inc.* | Comfort Systems Usa, Inc. |
| CBS Television Distribution Corp* | Commonspirit Health |

| Company Name Per Dun & Bradstreet |
|---|
| Community Health Systems, Inc. |
| Community Hospitals of Central California* |
| COMPAGNIE DE SAINT-GOBAIN* |
| Compass Diversified Holdings |
| COMPASS GROUP PLC |
| COMPUTERSHARE LIMITED |
| Conagra Brands, Inc. |
| Consolidated Electrical Distributors, Inc. |
| Constellation Brands, Inc. |
| Constellation Software Inc.* |
| Constellis Holdings, LLC |
| Cooper-Standard Holdings Inc. |
| Corecivic, Inc. |
| Corelogic, Inc.* |
| Coreslab International Inc. |
| Cornerstone Building Brands, Inc. |
| Corporate Personnel Network, Inc.* |
| Corporation of The President of The Church of Jesus Christ of Latter-Day Saints |
| Costco Wholesale Corporation* |
| Cott Corporation |
| Cracker Barrel Old Country Store, Inc. |
| Craftworks Restaurants & Breweries, Inc. |
| Crane Co. |
| Creative Hairdressers, Inc. |
| Crestline Hotels & Resorts, LLC |
| CRH PUBLIC LIMITED COMPANY* |
| Crown Castle International Corp. |
| Crown Holdings Inc.* |
| Crr Holdings, LLC* |
| CSC Serviceworks Holdings, Inc. |
| CSL LIMITED* |
| CSX Corporation |
| Cubic Corporation* |
| Curtiss-Wright Corporation |
| CUSHMAN & WAKEFIELD PLC* |
| CVC CAPITAL PARTNERS FINANCE LIMITED |
| CVS Health Corporation |
| Cygnus Home Service, LLC* |
| DAIKIN INDUSTRIES, LTD. |

| Company Name Per Dun & Bradstreet |
|---|
| Daimler AG |
| Dairy Farmers of America, Inc. |
| Danaher Corporation |
| Darden Restaurants, Inc. |
| Darling Ingredients Inc. |
| Daseke, Inc. |
| David's Bridal, Inc.* |
| Dean Foods Company |
| Deere & Company |
| Del Taco Restaurants, Inc.* |
| Delaware North Companies Incorporated |
| Deluxe Corporation |
| Denny's Corporation |
| DENSO CORPORATION |
| Deutsche Lufthansa AG |
| Devereux Foundation* |
| Dfc Holdings, LLC* |
| Dhm Holding Company, Inc.* |
| Diakon* |
| Diane M Hendricks Enterprises Inc. |
| DIC CORPORATION |
| Dick's Sporting Goods, Inc. |
| Digital First Media, LLC |
| Dillard's Inc. |
| Dine Brands Global, Inc.* |
| Diversicare Healthcare Services, Inc. |
| Dollar General Corporation |
| Dollar Tree, Inc. |
| Domtar Corporation |
| Dover Corporation |
| Dow Inc.* |
| Dsv A/S |
| Dufry AG |
| Dupont De Nemours, Inc. |
| Dycom Industries, Inc. |
| E. & J. Gallo Winery* |
| Earl Enterprises |
| East Penn Manufacturing Co.* |
| Ebay Inc.* |
| Ecolab Inc. |

| Company Name Per Dun & Bradstreet |
|---|
| Edge Acquisition, LLC |
| Edgewell Personal Care Company |
| Edison International* |
| EDIZIONE SRL |
| Edwards Lifesciences Corp* |
| Egg Parent Inc. |
| Einhorn Verwaltungses. mbH* |
| El Pollo Loco Holdings, Inc.* |
| Element Solutions Inc. |
| ELIOR GROUP |
| Emera Incorporated |
| Employbridge Holding Company |
| Encompass Health Corporation |
| Encore Capital Group, Inc.* |
| ENDO INTERNATIONAL PUBLIC LIMITED COMPANY* |
| Enersys* |
| Ennis, Inc. |
| Entercom Communications Corp.* |
| Enterprise Parent Holdings Inc. |
| Epam Systems, Inc.* |
| Erie Indemnity Company |
| ESSILORLUXOTTICA |
| Eurofins Scientific |
| Evergy, Inc. |
| Eversource Energy |
| Exide Technologies |
| Expedia Group, Inc.* |
| Expeditors International of Washington, Inc.* |
| EXPERIAN PLC* |
| Facebook, Inc.* |
| Factory Connection, LLC |
| Fairfax Financial Holdings Limited |
| Family Acquisition Holdings, Inc. |
| Fastenal Company |
| FAURECIA |
| Fedex Corporation |
| Fenway Partners, LLC |
| FERGUSON PLC |
| FHC Health Systems, INC. |
| Fidelity National Financial, Inc. |

| Company Name Per Dun & Bradstreet |
|---|
| Fifth Third Bancorp |
| Fillmore Capital Partners, LLC* |
| Finn Holding Corporation* |
| Fire Insurance Exchange* |
| First American Financial Corporation* |
| First American Title Company* |
| Five Below, Inc.* |
| Five Star Senior Living Inc. |
| FLEX LTD.* |
| Flex-N-Gate LLC |
| Flowers Foods, Inc. |
| Flowserve Corporation |
| Fluor Corporation |
| Flynn Restaurant Group LP |
| Fog Cutter Capital Group Inc.* |
| Follett Corporation |
| Food Management Partners, Inc. |
| Forever 21, Inc.* |
| Forterra US Holdings, LLC |
| Fortive Corporation* |
| Fortune Brands Home & Security, Inc. |
| Forward Air Corporation |
| Foster Poultry Farms* |
| Foundation Building Materials, Inc.* |
| Francisco Partners Management, L.P.* |
| Franklin Resources, Inc.* |
| Freeman Spogli & Co. LLC* |
| Fresenius Medical Care AG & Co. KGaA |
| Fresh-G Restaurant Intermediate Holding, LLC* |
| Freudenberg & Co. KG |
| Frontier Communications Corporation |
| Frs Capital Corp.* |
| FUJIFILM HOLDINGS CORPORATION* |
| FUJITSU LIMITED* |
| G A M Inc. |
| G P Kk |
| G4S PLC |
| G6 Hospitality LLC |
| Gamestop Corp. |
| Gaming and Leisure Properties, Inc.* |

| Company Name Per Dun & Bradstreet | Company Name Per Dun & Bradstreet |
|---|---|
| Gannett Co., Inc. | Haggen Operations Holdings LLC* |
| Gebr. Knauf KG | Hainan Jiaoguan Holding Co., Ltd. |
| Geisinger Health* | Hanger, Inc. |
| General Atomic Technologies Corporation* | Harbor Freight Tools Usa, Inc.* |
| General Dynamics Corporation | Harden Healthcare Services, LLC |
| General Electric Company | Harman Management Corporation* |
| General Mills, Inc. | Harsco Corporation* |
| Genesco Inc. | Harvest Partners, LP |
| Genesee & Wyoming Inc. | Hawk Holding Company, LLC |
| Genesis Healthcare, Inc.* | Hawkwood Energy, LLC |
| Gentiva Health Services, Inc. | HCA Healthcare, Inc. |
| Ggc Acquisition Holdings Corp.* | HCL TECHNOLOGIES LIMITED* |
| Ggc Administration, L.L.C.* | Hdr, Inc. |
| G-III Apparel Group, Ltd. | Healthcare Services Group Inc.* |
| Gildan Activewear Inc.* | Hearthside Food Solutions, LLC |
| Gilead Sciences, Inc.* | HeidelbergCement AG* |
| Giraffe Holding, Inc.* | Hellman & Friedman LLC* |
| Global Medical Response, Inc. | Henry Crown and Company |
| Global Payments Inc. | Hercules Holding II, LLC |
| Golden Gate Capital LP* | Hershey Company* |
| Golden Gate Private Equity Incorporated* | Hershey Entertainment & Resorts Company* |
| Golden Living LLC | Hertz Global Holdings, Inc. |
| Gpv III, Inc. | Hewlett Packard Enterprise Company* |
| Graham Holdings Company | Hibbett Sports, Inc. |
| Granite Construction Incorporated* | HIBU BIDCO LIMITED |
| Gray Vestar Investors LLC* | Hig Capital Management, Inc. |
| Green Equity Investors IV, L.P.* | Hill-Rom Holdings, Inc. |
| Greystar Real Estate Partners LLC | Hilltopper Holding Corp. |
| GRIFOLS SA* | HITACHI, LTD.* |
| Groupe SNC-Lavalin Inc. | HNA Technology Co., Ltd.* |
| Groupe WSP Global Inc. | Hobby Lobby Stores, Inc. |
| Groupon, Inc. | Honeywell International Inc. |
| Grupo Bimbo, S.A.B. de C.V. | Hooters of America, LLC |
| Grupo Elektra, S.A.B. de C.V. | Host Hotels & Resorts, Inc. |
| Gryphon Investors, Inc.* | HP Hood LLC |
| Guess, Inc.* | HP Inc.* |
| Guitar Center Holdings, Inc.* | HSBC HOLDINGS PLC |
| GW Intermediate Holdco Corporation | Hunter Douglas N.V.* |
| Gymboree Intermediate Corporation* | Huntsman Corporation |
| H&R Block, Inc. | Husqvarna AB |

73

| Company Name Per Dun & Bradstreet |
|---|
| Hyatt Hotels Corporation |
| IBERDROLA, SOCIEDAD ANONIMA |
| Ic Compliance LLC* |
| ICON PUBLIC LIMITED COMPANY* |
| IDEMITSU KOSAN CO.,LTD. |
| Idex Corporation |
| Iheartmedia, Inc. |
| IHS Markit Ltd |
| Illinois Tool Works Inc. |
| Illumina, Inc.* |
| Inc.eption Parent, Inc. |
| Independence Health Group, Inc.* |
| Infineon Technologies AG* |
| INFOSYS LIMITED* |
| INGERSOLL-RAND PUBLIC LIMITED COMPANY |
| Ingredion Incorporated |
| In-N-Out Burgers* |
| Integer Holdings Corporation |
| Intel Corporation* |
| Inteplast Group Corporation |
| INTERCONTINENTAL HOTELS GROUP PLC |
| International Flavors & Fragrances Inc. |
| International Paper Company |
| Intuit Inc.* |
| Investors Management Corporation |
| Iqor Holdings Inc. |
| Iron Mountain Incorporated |
| ISS A/S |
| ITOCHU CORPORATION* |
| Itron, Inc. |
| ITT Inc. |
| J.R. Simplot Company* |
| J.W. Childs Associates, L.P. |
| Jack Henry & Associates, Inc. |
| Jack In The Box Inc.* |
| Jacobs Engineering Group Inc. |
| Jefferson County Schools |
| Jo-Ann Stores Holdings Inc. |
| JOHN SWIRE & SONS LIMITED |

| Company Name Per Dun & Bradstreet |
|---|
| Johnson & Johnson |
| JOHNSON CONTROLS INTERNATIONAL PUBLIC LIMITED COMPANY |
| Jolina Capital Inc. |
| Jones Lang Lasalle Incorporated |
| Juniper Networks, Inc.* |
| Kar Auction Services, Inc. |
| Kemper Corporation |
| Keurig Dr Pepper Inc. |
| Keysight Technologies, Inc.* |
| KG ATLAS Vermögensverwaltungsgesellschaft & Co. |
| KIK Custom Products Inc. |
| Kimberly-Clark Corporation |
| Kindercare Education LLC |
| KINTETSU WORLD EXPRESS, INC. |
| Kirkland's, Inc. |
| Kiwanis International, Inc. |
| Knight-Swift Transportation Holdings Inc. |
| Koch Foods Incorporated |
| Koch Industries, Inc. |
| KOMATSU LTD. |
| KONICA MINOLTA, INC. |
| Koninklijke Philips N.V. |
| Korn Ferry* |
| KOTOBUKI REALTY CO., LTD. |
| Kpmg LLP |
| Kps Capital Partners, LP |
| Kratos Defense & Security Solutions, Inc.* |
| KYOCERA CORPORATION* |
| L3harris Technologies, Inc. |
| Laboratory Corporation of America Holdings |
| LafargeHolcim Ltd |
| Lamb Weston Holdings Inc.* |
| Land O'Lakes, Inc. |
| La-Z-Boy Incorporated |
| Lee Enterprises, Incorporated |
| LEGRAND |
| Lehigh Valley Health Network, Inc.* |
| Leidos Holdings, Inc. |
| Leland Stanford Junior University* |

| Company Name Per Dun & Bradstreet | Company Name Per Dun & Bradstreet |
|---|---|
| Lennar Corporation | Marriott International, Inc. |
| LENOVO GROUP LIMITED | Mars, Incorporated |
| Leonard Green & Partners, L.P.* | Martin Marietta Materials Inc. |
| Levi Strauss & Co.* | MARUBENI CORPORATION |
| Lhc Group, Inc. | Masco Corporation |
| Liberty Media Corporation | Masonite International Corporation |
| Liberty Mutual Holding Company Inc. | Mastec, Inc. |
| Life Care Centers of America, Inc. | Mattel, Inc.* |
| Lincare Holdings Inc. | Matthews International Corporation |
| Lincoln National Corporation* | Maxar Technologies Inc. |
| Lithia Motors, Inc. | Maxim Healthcare Services, Inc. |
| Live Nation Entertainment, Inc.* | Maxim Integrated Products, Inc.* |
| LIXIL GROUP CORPORATION | McKesson Corporation |
| Lkq Corporation | McWane, Inc. |
| Lockheed Martin Corporation | MDU Resources Group, Inc. |
| Loews Corporation | Medical Management Consultants, Inc.* |
| Loma Linda University Medical Center* | Medline Industries, Inc. |
| Loma Linda University* | Mednax, Inc. |
| Lone Star Partners V, L. P. | MEGGITT PLC* |
| Long John Silver's, LLC | MELROSE INDUSTRIES PLC |
| Lonza Group AG | Memorial Health Services* |
| Loomis AB | Merakey USA* |
| Los Angeles County Metropolitan Transportation Authority* | MERCK KG auf Aktien |
| Los Angeles Department of Water and Power* | Mercury General Corporation* |
| Lowe Enterprises, Inc.* | Meredith Corporation |
| Lowe's Companies, Inc. | MERIT CORPORATION SAL |
| Lsc Communications, Inc. | Methodist Hospital |
| Lululemon Athletica Canada Inc. | Metromedia Company |
| LVMH MOET HENNESSY LOUIS VUITTON | Michael Baker International, LLC |
| M&T Bank Corporation | MICRO FOCUS INTERNATIONAL PLC* |
| Macandrews & Forbes Incorporated | Microchip Technology Inc. |
| Madison Dearborn Partners IV LP | Micron Technology, Inc.* |
| Madison Dearborn Partners, LLC | Microsoft Corporation* |
| Magic Johnson Enterprises, Inc.* | Mid-America Apartment Communities, Inc. |
| Main Line Health System* | MITSUBISHI CHEMICAL HOLDINGS CORPORATION |
| Management & Training Corporation | MITSUBISHI UFJ FINANCIAL GROUP, INC. |
| Manulife Financial Corporation* | Mmodal Services Inc. |
| Marfrig Global Foods S/A | Modine Manufacturing Company Inc. |
| Marlin Equity Partners, LLC* | Molina Healthcare, Inc.* |

| Company Name Per Dun & Bradstreet | Company Name Per Dun & Bradstreet |
|---|---|
| Mom Holding Company* | Nvidia Corporation* |
| Monro, Inc. | Oak Hill Capital Partners, L.P. |
| Moog Inc. | Oaktree Capital Group, LLC* |
| Moose International, Incorporated | Ocm Pe Holdings, L.P.* |
| Morgan Stanley | Ocwen Financial Corporation |
| MOTHERSON SUMI SYSTEMS LIMITED | Office Depot, Inc. |
| Mount Olympus Holdings, Inc. | Old Dominion Freight Line Inc. |
| Mountaire Corporation | Old Republic International Corporation |
| Multicare Health System* | Ollie's Bargain Outlet Holdings, Inc.* |
| Muy Hamburger Partners, LLC | Open Text Corporation* |
| N A Zions Bancorporation | Opko Health, Inc. |
| Nana Regional Corporation, Inc., | Oracle Corporation* |
| NATIONAL EXPRESS GROUP PLC | OSRAM Licht AG |
| National General Holdings Corp. | P.F. Chang's China Bistro, Inc. |
| National Senior Care, Inc. | Paccar Inc.* |
| Navient Corporation | Packaging Corporation of America |
| Navigant Consulting, Inc. | PACKAGING HOLDINGS LIMITED* |
| Nemours Foundation | Pae Holding Corporation |
| Nestlé S.A. | Palladium Equity Partners III, L.P. |
| Netapp, Inc.* | PALOMA CO.,LTD. |
| Netflix, Inc.* | Panda Restaurant Group, Inc.* |
| New Asurion Corporation | Park Hotels & Resorts Inc. |
| New Media Investment Group Inc. | Parsons Brinckerhoff Holdings Inc. |
| Newell Brands Inc. | Path* |
| Newmont Goldcorp Corporation | Patterson Companies, Inc. |
| Nexstar Media Group, Inc. | Pattison, Jim Group Inc.* |
| Nextera Energy, Inc. | Paychex, Inc. |
| NIPPON TELEGRAPH AND TELEPHONE CORPORATION* | Paypal Holdings, Inc.* |
| NIPPON YUSEN KABUSHIKI KAISHA | Peak Resorts, Inc. |
| Nokia Oyj* | Pella Corporation |
| Norbord Inc. | Penn National Gaming, Inc.* |
| Nordstrom, Inc.* | Penske Automotive Group, Inc. |
| Norsk Hydro ASA | Penske Corporation |
| Northrop Grumman Corporation | Penske Truck Leasing Co., L.P.* |
| Npc International Holdings, Inc. | PENTAIR PUBLIC LIMITED COMPANY |
| Nuance Communications, Inc. | Pepsico, Inc. |
| Nucor Corporation | Perdue Farms Inc. |
| Number Holdings, Inc.* | Perkinelmer, Inc. |
| Nutrien Ltd | Perkins & Marie Callender's Holding, LLC |
|  | PERMIRA ADVISERS LLP* |

| Company Name Per Dun & Bradstreet | Company Name Per Dun & Bradstreet |
|---|---|
| PERRIGO COMPANY PUBLIC LIMITED COMPANY* | RECRUIT HOLDINGS CO., LTD.* |
| Peter Kiewit Sons', Inc. | Red Coats, Inc. |
| Pfizer Inc. | Red Robin Gourmet Burgers Inc. |
| PG&e Corporation* | Regions Financial Corporation |
| Physiotherapy Corporation* | Regis Corporation |
| Planet Hollywood International, Inc. | Reliance Steel & Aluminum Co.* |
| Platinum Equity, LLC | RELX PLC |
| Polaris Industries Inc. | Rent-A-Center, Inc. |
| Power Corporation du Canada | Republic Services, Inc. |
| PPG Industries, Inc. | Resolute Forest Products Inc. |
| Ppl Corporation* | Rev Group, Inc. |
| Pratt Industries, Inc. | REXEL |
| Pride Industries* | Reyes Holdings, L.L.C. |
| Prime Healthcare Foundation, Inc.* | Rh* |
| Primerica, Inc. | Rhodes Sub, L.L.C. |
| Principal Financial Group, Inc. | Rich Products Corporation |
| Prospect Medical Holdings, Inc.* | RICOH COMPANY, LTD.* |
| Providence St. Joseph Health* | Rimrock Partners, LLC |
| Psav Holdings LLC* | Rite Aid Corporation* |
| PSC Industrial Outsourcing, LP | Roark Capital Group Inc. |
| Public Storage* | Robert Bosch Stiftung Gesellschaft mit beschränkter Haftung |
| PUBLICIS GROUPE S.A. | Robert Half International Inc.* |
| Pultegroup, Inc. | Roche Holding AG |
| Qualcomm Incorporated* | Roper Technologies, Inc. |
| QUANTA COMPUTER INC.* | Rose Management Services* |
| Queso Holdings Inc. | Ross Stores, Inc.* |
| Quest Diagnostics Incorporated | Royal Bank Of Canada |
| Quorum Health Corporation | RSM US LLP |
| Qurate Retail, Inc. | Ryder System, Inc. |
| R. R. Donnelley & Sons Company | SAFRAN* |
| Radnet, Inc.* | Saia, Inc. |
| Raley's* | Salesforce.com, Inc.* |
| Ramsbury Invest AB | Saltchuk Resources, Inc.* |
| Raytheon Company | Samsung Electronics Co., Ltd.* |
| Rcch Healthcare Partners | San Francisco Forty Niners* |
| Real Mex Restaurants, Inc.* | SANDVIK AB |
| Realogy Holdings Corp.* | Sanford |
| RECKITT BENCKISER GROUP PLC | Sanmina Corporation* |
| Recreational Equipment, Inc.* | SANOFI |

| Company Name Per Dun & Bradstreet |
|---|
| SAP SE* |
| Savaseniorcare, LLC |
| Save Mart Supermarkets* |
| Savers, Inc.* |
| Sbm Site Services, LLC* |
| Scheels All Sports, Inc. |
| Schindler Holding AG |
| SCHNEIDER ELECTRIC SE |
| Scripps Health* |
| Seaboard Corporation |
| SEAGATE TECHNOLOGY PUBLIC LIMITED COMPANY* |
| Sears Holdings Corporation |
| Securitas AB |
| Sedgwick Claims Management Services, Inc. |
| Select Medical Holdings Corporation* |
| Sempra Energy* |
| Sentinel Capital Partners LLC |
| ServiceMaster Global Holdings, Inc. |
| Servicenow, Inc.* |
| SEVEN & I HOLDINGS CO., LTD. |
| SGS SA |
| Sharp Healthcare* |
| SHIRE PLC |
| Shoe Show, Inc. |
| Shriner's International Headquarters Inc. |
| Shutterfly, Inc.* |
| Silgan Holdings Inc. |
| SIMS METAL MANAGEMENT LIMITED |
| Sinclair Broadcast Group, Inc. |
| Sirva, Inc. |
| Skanska AB |
| Skechers U.S.A., Inc.* |
| Sky Acquisition LLC |
| Skywest, Inc. |
| Smart & Final Stores, Inc.* |
| SMITHS GROUP PLC |
| SOCIETE DE NEGOCE ET DE PARTICIPATION |
| SODEXO |
| SOFTBANK GROUP CORP. |

| Company Name Per Dun & Bradstreet |
|---|
| Solvay |
| Sonic Automotive, Inc. |
| Sonoco Products Company |
| SONY CORPORATION* |
| Southeastern Freight Lines, Inc. |
| Southeastern Pennsylvania Transportation Authority* |
| Southern California Permanente Medical Group* |
| Southern Glazer's Wine and Spirits, LLC |
| Sp Plus Corporation |
| Spring Education Group, Inc.* |
| Sprouts Farmers Market, Inc. |
| SPX Corporation |
| SS&c Technologies Holdings, Inc. |
| St Luke's Hospital & Health Network Inc.* |
| St Luke's Physicians Group* |
| St. Luke's Health System, Ltd.* |
| STANDARD CHARTERED PLC |
| Standard General L.P. |
| Stanley Black & Decker, Inc. |
| Stantec Inc.* |
| Starbucks Corporation* |
| State Farm Mutual Automobile Insurance Company |
| Stater Bros. Holdings Inc.* |
| Stein Mart, Inc. |
| Stichting INGKA Foundation |
| Stifel Financial Corp. |
| Stitch Fix, Inc.* |
| Stone Canyon Industries LLC* |
| Strategic Restaurants Acquisition Company, LLC* |
| Stryker Corporation |
| Student Transportation of America, Inc. |
| Suburban Propane Partners, L.P. |
| SUEZ |
| SUMITOMO CORPORATION |
| Sun Capital Partners, Inc. |
| SURCREHOL |
| Sutter Health* |
| Suzhou Dongshan Precision Manufacturing Co., Ltd.* |

| Company Name Per Dun & Bradstreet | Company Name Per Dun & Bradstreet |
|---|---|
| Swiss Re AG | The American National Red Cross |
| Sycamore Partners Management, L.P. | The Bank of New York Mellon Corporation |
| Sykes Enterprises Incorporated | The Boeing Company |
| Symantec Corporation* | The Bon-Ton Stores Inc.* |
| Synnex Corporation* | The Brink's Company |
| Synopsys, Inc.* | The Buckle Inc. |
| Sysco Corporation | The Carlyle Group L P |
| Talen Energy Corporation* | The Cato Corporation |
| Tapestry, Inc. | The Charles Schwab Corporation* |
| Target Corporation | The Cheesecake Factory Incorporated* |
| Tarrant Capital Ip, LLC* | The Children's Hospital of Philadelphia Foundation* |
| Taylor Fresh Foods, Inc.* | The Children's Hospital of Philadelphia* |
| Tbc Corporation | The Children's Place Inc. |
| TCF National Bank | The Clorox Company* |
| TDK CORPORATION* | The Cooper Companies Inc.* |
| TE Connectivity Ltd.* | The Davey Tree Expert Company |
| Team-One Staffing Services, Inc.* | The Day & Zimmermann Group Inc.* |
| TECHNICOLOR* | The Dream Center Foundation A California Nonprofit Corporation* |
| TECHTRONIC INDUSTRIES COMPANY LIMITED | The Ensign Group Inc.* |
| Telecare Corporation* | The Gap Inc.* |
| Teledyne Technologies Inc.* | The Golub Corporation* |
| Teleflex Incorporated* | The Gores Group LLC* |
| Telemark Corporation, S.A. de C.V. | The Home Depot Inc. |
| TELEPERFORMANCE SE | The Judge Group Inc.* |
| Temple University-Of The Commonwealth System of Higher Education* | The Kraft Heinz Company |
| Tempo Acquisition, LLC | The McClatchy Company* |
| Tempur Sealy International, Inc. | The Parsons Corporation |
| Tenet Healthcare Corporation | The PNC Financial Services Group Inc. |
| Tennessee Parent, Inc. | The Renco Group Inc. |
| Teradata Corporation* | The Roman Catholic Archbishop of Los Angeles* |
| Terex Corporation | The Roman Catholic Diocese of Orange* |
| Tesla, Inc.* | The Salvation Army National Corporation |
| Tetra Tech, Inc.* | The TJX Companies Inc |
| TEVA PHARMACEUTICAL INDUSTRIES LIMITED* | The Toro Company |
| Texas Home Health of America, LP* | The Vanguard Group Inc.* |
| Textron Inc. | The Walt Disney Company* |
| TFI International Inc.* | The Wendy's Company |
| THALES* | The Wonderful Company LLC* |
|  | Thermo Fisher Scientific Inc. |

| Company Name Per Dun & Bradstreet | Company Name Per Dun & Bradstreet |
|---|---|
| Thryv, Inc. | Universal Forest Products, Inc. |
| Tlb Holdings LLC | Universal Health Services, Inc.* |
| TOKIO MARINE HOLDINGS, INC. | Universal Protection Gp, LLC* |
| Topbuild Corp. | UNUM Group |
| TOSHIBA CORPORATION | Urban Outfitters, Inc.* |
| Tower Health* | US Foods Holding Corp. |
| Town Sports International Holdings, Inc. | Usi, Inc. |
| TOYOTA MOTOR CORPORATION* | V.F. Corporation |
| Tpg Capital Management, L.P. | Valitas Holdings, Inc. |
| Tractor Supply Company | Valmont Industries, Inc. |
| Trader Joe's Company* | Vcvh Holding Corp. |
| Trans World Entertainment Corporation* | VEOLIA ENVIRONNEMENT |
| Transdigm Group Incorporated | Veritiv Corporation |
| Treehouse Foods, Inc. | Vertiv JV Holdings, LLC* |
| Trg Customer Solutions, Inc. | Viking Brand Upper Holdings LP |
| Tribune Media Company | Visa Inc.* |
| Trident Seafoods Corporation* | Vishay Intertechnology, Inc.* |
| Trinity Health Corporation | Vista Equity Partners Management, LLC* |
| Triumph Group, Inc.* | Vitro, S.A.B. de C.V. |
| Trueblue, Inc.* | Vps Convenience Store Group, LLC |
| Trugreen Holding Corporation | Vulcan Materials Company |
| TS TECH CO., LTD. | Vxi Global Solutions, LLC* |
| Ttm Technologies, Inc.* | Walmart Inc. |
| Tucson Hotels LP | Wanxiang Group Corporation |
| Tutor Perini Corporation* | Warburg Pincus Private Equity Viii, L.P. |
| Tyco Simplexgrinnell | Waste Connections, Inc. |
| Tyson Foods, Inc. | Wawa, Inc.* |
| Uber Technologies, Inc.* | Weis Markets, Inc.* |
| Ucla Health System Auxiliary* | Welbilt, Inc. |
| UDG HEALTHCARE PUBLIC LIMITED COMPANY* | Wells Fargo & Company* |
| UGI Corporation* | Wellspan Health* |
| UGI Europe, Inc.* | Welltower Inc. |
| Under Armour, Inc. | WENDEL |
| Unifirst Corporation | Wesco International, Inc. |
| Union Pacific Corporation | West Pharmaceutical Services, Inc.* |
| Unisys Corporation* | Western Digital Corporation* |
| United Natural Foods, Inc. | Westinghouse Air Brake Technologies Corporation |
| United Rentals, Inc. | Westlake Chemical Corporation |
| United Technologies Corporation | Westrock Company |
| Unitedhealth Group Incorporated* | |

| Company Name Per Dun & Bradstreet |
|---|
| Weyerhaeuser Company* |
| Whirlpool Corporation |
| Whole Foods Market Sopac* |
| Williams-Sonoma, Inc.* |
| WILLIS TOWERS WATSON PUBLIC LIMITED COMPANY |
| Willow Valley Communities* |
| Winco Holdings, Inc.* |
| Wolters Kluwer N.V. |
| Workday, Inc.* |
| Worldwide Media Services Group Inc. |
| Worldwide Staffing Resources Inc. |
| Wrrh Investments LP |
| Wyndham Destinations, Inc. |
| Xpo Logistics, Inc. |
| YAMAZAKI BAKING CO., LTD.* |
| Yf Art Holdings Gp, LLC* |
| Young Men's Christian Association of The East Bay* |
| Yrc Worldwide Inc. |
| Yucaipa Companies LLC* |
| Yum Brands, Inc. |
| Zebra Technologies Corporation |
| ZENSAR TECHNOLOGIES LIMITED |
| Zumiez Inc.* |
| Zurich Insurance Group AG |

## Appendix D:  Second Blue Bid Rules

The following additional BCBSA rules will govern the Second Blue Bid for Qualified National Accounts whose Headquarters is not located in multiple Settling Individual Blue Plans' Service Areas:

1.      Only a Qualified National Account can request a Second Blue Bid.  A Qualified National Account's subsidiary or affiliated entities cannot independently request a Second Blue Bid.  Nothing in this Paragraph limits the rights any National Account is entitled to under Paragraph 14.b.  Second Blue Bid Requests shall not be submitted until the later of three months after the Effective Date or April 1, 2022.

2.      A Second Blue Bid Request must be identical in all material respects to the RFP issued by the Qualified National Account to the Initial Control Plan.  A Second Blue Bid Request will not be rejected due to its failure to be identical without notification to the Qualified National Account and a chance to cure.  The Qualified National Account shall ensure coordination between its brokers or consultants (if any) to confirm that the Second Bid Request and RFP issued to the Initial Control Plan are identical in material respects and evaluated under the same criteria.

3.      BCBSA will develop or approve accurate materials (each of which will include a link to the settlement website established by the Notice Plan approved by the Court) that Settling Individual Blue Plans will use, directly or through their vendors and partners, when communicating with consultants, brokers, account advisors, or Qualified National Accounts regarding the Second Blue Bid process, including account eligibility.  For materials developed during the Monitoring Period, BCBSA will submit the materials describing the Second Blue Bid Process to the Monitoring Committee prior to use for review and comment.

4.      If an Employer has submitted a request for a Second Blue Bid while on the list of Qualified National Accounts generated by the process described in Paragraph 1.u, but has not signed a contract for a Self-Funded Health Benefit Plan and is no longer on the list by the time the list of Qualified National Accounts is refreshed, the Employer shall be permitted to complete the Second Blue Bid process and choose coverage from either Blue bid.

5.     In order to request a Second Blue Bid, a Qualified National Account must (a) request a bid from the Initial Control Plan, and (b) identify to BCBSA the Second Blue Bidder that it has chosen to submit a Second Blue Bid Request and the broker or consultant it will use in connection with the bids.

6.     The Second Blue Bidder will notify BCBSA in writing within two business days of receiving notice of the Second Blue Bid Request, copying the Qualified National Account on such transmission.

7.     A Settling Individual Blue Plan that receives a Second Blue Bid Request from a Qualified National Account will submit a Second Blue Bid only after BCBSA has confirmed that the Qualified National Account has identified that Plan as the Second Blue Bidder.

8.     Within three business days following notification from BCBSA of a Second Blue Bid Request and receipt from the Qualified National Account of the Second Blue Bid Request, whichever is later, the Second Blue Bidder must inform BCBSA in writing of its decision whether to bid or not; if it declines to bid, the Qualified National Account shall be notified of its right to select a replacement Second Blue Bidder.  Any replacement Second Blue Bid Request shall be subject to the same rules as the initial Second Blue Bid Request.

9.     Each bidding Settling Individual Blue Plan must offer the other bidding Settling Individual Blue Plan access to (a) any of its Provider networks made available through Inter-Plan Programs, and (b) any new or additional networks that qualify as a Custom Network under BCBSA policies.

10.     To facilitate the Parties' commitment to pro-competitive measures that provide meaningful choice to Qualified National Accounts, to provide appropriate compensation to Initial Control Plans for the investments and costs incurred in their Service Areas that will be relied upon by the Second Blue Bidder, and to provide an objective, verifiable basis for determining the amount of such compensation, a Local Service and Support Fee shall be established and submitted to the Court for approval.  Other than the Court-approved Local Service and Support Fee ("LSSF"), the Initial Control Plan will not be permitted to charge inter-Plan fees to the Second Blue Bidder for covered members residing in the Qualified National Account's headquarter state.  Subject to

final approval by the Court, the LSSF shall approximate but not exceed the national average Standard or default inter-Plan fee for accounts with at least 5,000 Members, as certified and approved annually by the Monitoring Committee.  The 2020 national average Standard inter-Plan fee is approximately $25.00 per covered employee per month.  Further and as to any winning bidder, nothing in this Paragraph shall prevent BCBSA from maintaining existing inter-Plan fees under which a Settling Individual Blue Plan that hosts a Member of a Qualified National Account residing outside the Qualified National Account's headquarter state charges inter-Plan fees not to exceed the historic inter-Plan fees (as of the Execution Date) in the marketplace.

11.     If a Qualified National Account receiving two Blue Bids chooses a Blue-Branded Self-Funded Health Benefit Plan for all or a portion of its business, it shall award that business to only one Blue Plan bidder.  But nothing in this Paragraph shall prohibit a Qualified National Account for awarding any other portion of its business to any other non-Blue-Branded entity.

12.     When any Qualified National Account's contract expires, becomes open for renewal, or is otherwise reopened for bidding, the Qualified National Account may request (a) a bid from the Initial Control Plan, and (b) a Second Blue Bid from any Settling Individual Blue Plan regardless whether that Plan is the account's current Control Plan, so long as the account is a Qualified National Account at the time it requests a Second Blue Bid.

13.     Consistent with current BCBSA rules and policies, in the event of a merger or acquisition involving one or more Qualified National Account, the Settling Individual Blue Plan(s) currently providing coverage will continue to do so until the benefit contract(s) terminates or is opened by the account for re-bidding.  If a Qualified National Account acquires another entity and puts the contract of the Qualified National Account (including the acquired entity) out for bid before the next D&B Analysis, the Qualified National Account may request (a) a bid from its Initial Control Plan, and (b) a Second Blue Bid from any Settling Individual Blue Plan regardless whether that Plan is the current Control Plan for any of the companies that consolidated.

14.     In the event of Plan non-compliance or performance issues, BCBSA may impose penalties on any Settling Individual Blue Plan, including but not limited to financial penalties or any other penalty authorized under BCBSA Rules.  Plan compliance issues will be subject to an expedited dispute-resolution process.

## Appendix E: Monitoring Committee and Arbitration Panel Rules

1.      Monitoring Committee.

a.      The initial members of the Monitoring Committee shall be selected by the Parties and approved by the Court.

b.      Any Party may challenge an opposing Party's proposed Monitoring Committee member(s) for good cause.  Such disputes will be resolved by the Court.

c.      A Party may replace its appointed Monitoring Committee member(s) at any time for any reason.  A new proposed Monitoring Member may be challenged by an opposing Party for good cause, and such disputes will be resolved by the Court.

d.      If a Monitoring Committee member's employment or employment role changes, any opposing Party may challenge the person's continued membership on the Monitoring Committee.

e.      The Monitoring Committee as a whole shall be authorized to retain appropriate subject-matter experts reasonably necessary for advice on their duties.  Such experts shall be required to sign confidentiality agreements as agreed to by the Parties.  The credentials of the expert, an explanation of the need for an expert, as well as the expert's credentials, hourly rate, and estimated annual budget (including anticipated hours of work), shall be presented to the Monitoring Committee for approval thirty days before actual retention of any expert by any Party. Expert expenses will be paid from the Notice and Administration Fund only once such expenses have been submitted to and approved by the Court.  Any Party may challenge the necessity of the retention of an expert approved by the Monitoring Committee and/or the related cost, and such disputes will be resolved by the Court.

f.      Any person that receives any information or materials related to the Monitoring Committee or its activities will keep such information and materials Confidential.

g.      Each year, the Monitoring Committee shall file with the Court a summary report identifying the actions taken by the Monitoring Committee during the prior calendar year.  Such

report shall not disclose any confidential, proprietary, or otherwise commercially sensitive information.

   h.  Unless the Settlement Agreement provides that a non-unanimous decision of the Monitoring Committee is final and binding, any decision of the Monitoring Committee that is not unanimous may be submitted to arbitration.

2.  Arbitration.

   a.  The following rules will govern any arbitrations under Paragraphs 17 or 20 of this Agreement.

   b.  Arbitrable disputes as described in Paragraph 20 will be resolved by a panel of three arbitrators, with (1) one member appointed collectively by Settling Defendants, (2) one member appointed collectively by Settlement Class Counsel and Self-Funded Sub-Class Settlement Counsel, and (3) one neutral member jointly appointed by the other two appointed arbitrators.

   c.  Arbitrable disputes related to acquisitions will be resolved by a panel of three arbitrators, with (1) one member appointed by BCBSA, (2) one member appointed by the Party challenging the denial, and (3) one neutral member jointly appointed by the other two appointed arbitrators.

   d.  A Party to a dispute described in Paragraph 20 may replace its appointed arbitrator for any reason prior to a decision on any issue by the Panel. The new proposed arbitrator may be challenged by the opposing Party for reason, and such disputes will be resolved by the Court.

   e.  The arbitration will be governed by the rules of the JAMS ADR at the time arbitration is commenced. The fees and expenses of the neutral arbitrator will be paid from the Notice and Administration Fund. If the arbitration is initiated by a third party, the third party and Defendants shall bear their own fees and costs. If the arbitration is initiated by Settling Defendants or by a third party, Settlement Class Counsel's reasonable fees and costs actually incurred will be paid from the Notice and Administration Fund. If the arbitration is initiated by a Settlement Class Member, Settlement Class Counsel, or Self-Funded Sub-Class Settlement Counsel, the arbitrators have discretion whether to award fees and costs to Settlement Class Counsel and/or Self-Funded

Sub-Class Settlement Counsel; provided that, in the event of any award of fees or costs, such award shall be limited to reasonable fees and costs actually incurred.

     f.     The arbitration will be held in New York City unless otherwise agreed by the Parties.

     g.     Any person that receives any information or materials related to any arbitration will keep such information and materials Confidential.