FILED
2020 Oct-30  PM 09:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT

# E

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **IN RE BLUE CROSS BLUE SHIELD** | **:** | |
| **ANTITRUST LITIGATION** | **:** | **Master File 2:13-cv-20000-RDP** |
| **MDL 2406** | **:** | |
| | **:** | |
| | **:** | |
| | **:** | **This document relates to** |
| | **:** | **Subscriber Track cases** |

**SETTLEMENT CLASS COUNSEL JOINT DECLARATION IN**
**SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF**
**PROPOSED SUBSCRIBER CLASS SETTLEMENT**

**I, Michael D. Hausfeld, declare:**

1.      I am Chairman of the law firm Hausfeld LLP. By the Court's order dated April 26, 2013, the Court appointed me, along with David Boies, to serve as interim co-lead counsel for the putative Subscriber Plaintiff class in the Subscriber Actions. ECF No. 61. My firm resume is attached hereto as Exhibit A.

2.      I have been actively involved in prosecuting and resolving the Subscriber Actions, am familiar with its proceedings, and have personal knowledge of the matters set forth herein. If called upon and sworn as a witness, I could competently testify thereto.

**I, David Boies, declare:**

3.      I am Charmain of the law firm Boies Schiller Flexner LLP. By the Court's order dated April 26, 2013, the Court appointed me, along with Michael Hausfeld, to serve as interim co-lead counsel for the putative Subscriber Plaintiff class in the Subscriber Actions. ECF No. 61. My firm resume is attached hereto as Exhibit B.

4.      I have been actively involved in prosecuting and resolving the Subscriber Actions, am familiar with its proceedings, and have personal knowledge of the matters set forth herein. If called upon and sworn as a witness, I could competently testify thereto.

**We, Michael D. Hausfeld and David Boies, declare:**

5.      Unless otherwise defined herein, all capitalized terms have the meanings ascribed to them in the Settlement Agreement, attached as Exhibit A to Subscriber Plaintiffs' Motion for Preliminary Approval of Subscriber Class Settlement.

6.      We submit this declaration in support of Subscriber Plaintiffs' Motion for Preliminary Approval of Subscriber Class Settlement, pursuant to Rule 23 of the Federal Rules of Civil procedure.

1

7.     If approved, the Settlement, which provides $2.67 billion in cash and significant injunctive relief relating to competition in the market for health insurance, will resolve the Subscriber Actions.

### Summary of the Litigation

8.     The Subscriber Actions originated in 2012, when Subscriber Plaintiffs filed complaints alleging that Blue Cross Blue Shield Association ("BCBSA") and its member plans using the Blue Cross and Blue Shield names and marks ("Member Plans," and together with BCBSA, "Defendants") engaged in market allocation agreements in violation of Sections 1 and 2 of the Sherman Antitrust Act, as well as related state laws. Among other items, the Subscriber Actions alleged that the agreements resulted in higher premiums and fewer choices for subscribers of Blue Cross Blue Shield health insurance.

9.     On December 12, 2012, the Subscriber Actions were consolidated by the Judicial Panel on Multidistrict Litigation, along with a related set of Provider cases alleging that these same market allocation agreements resulted in lower payments to providers.

10.     After our appointment as interim co-lead counsel for the Subscriber Actions, ECF No. 61, we worked to organize the many related actions and counsel for the Subscriber Plaintiffs ("Subscribers' Counsel"). On July 1, 2013, after conducting extensive investigation, Subscriber Plaintiffs filed the 310-page Class Action Complaint. ECF No. 85.

11.     Over the course of the next four years, Subscriber Plaintiffs filed their Consolidated Amended Class Action Complaint (ECF No. 244), Second Amended Consolidated Class Action Complaint (ECF No. 897), and Third Amended Consolidated Class Action Complaint (ECF No. 1082). Defendants filed over a dozen motions to dismiss the Complaints, based on failure to state

a claim, lack of personal jurisdiction, and improper venue, all of which Subscriber Plaintiffs opposed.

12. Beginning in January 2015, the parties attended monthly discovery conferences with Magistrate Judge Michael T. Putnam and monthly status conferences with the Court. Over the course of the litigation, the parties engaged in over 100 discovery conferences, status conferences, and hearings, most of which required in-person attendance in Birmingham, Alabama.

## **Discovery**

13. Beginning in 2014 and continuing through 2015, Subscribers' Counsel engaged in extensive meet and confers with Defendants regarding each Defendant's data management systems, a prerequisite to negotiating structured data requests. Each Defendant maintains its subscriber data in one or more different databases, and in order to create a useable dataset for damages analysis, Subscribers' Counsel conducted separate meet and confers with each Defendant to understand where and how structured data was stored. ECF No. 229 (Discovery Order No. 1 describing the more than 400 structured data systems maintained by Defendants). This meet and confer process required researching the different data systems and data fields, including requesting and reviewing data dictionaries from each Defendant, to determine how to access relevant data. Subscribers' Counsel then spent the next two years negotiating the scope of the structured data requests and the production of actual data. After the data was produced, multiple rounds of meet and confers took place to test, vet, and understand the numerous fields of data that were produced. This often required discussions about how multiple systems of data interacted, and required technical experts to confer as well.

14. At the same time, Subscribers' Counsel also negotiated document requests with 37 separate Defendants. This process involved researching and identifying custodians for each of the

Defendants, proposing and negotiating Defendant-specific search terms along with overall terms, and negotiating TAR protocols with some Defendants who wished to use that option. The result of these negotiations was significant: Defendants ultimately produced over 15 million pages. Subscribers' Counsel devoted dozens of attorneys to reviewing Defendants' document productions and finding key documents that were used to support Subscriber Plaintiffs' claims in depositions, economic experts' reports, and substantive motions.

15.     Subscribers' Counsel noticed and took depositions for over 120 Defendant witnesses, including over 20 30(b)(6) depositions. Subscribers' Counsel also defended depositions for 16 Subscriber Class Representatives and prepared for and participated in depositions for numerous third party insurers and absent Subscriber class members.

16.     In late 2017, Subscribers' Counsel began reviewing and challenging over 700,000 privilege log entries for documents redacted and withheld by Defendants. Through a months-long process and with the assistance of Special Master R. Bernard Harwood, who issued 45 Reports & Recommendations, Subscribers' Counsel succeeded in de-designating, in whole or in part, over 450,000 documents from Defendants' privilege logs.

17.     On two occasions, December 20, 2016 and June 9, 2017, Subscribers' Counsel engaged in two full-day "Economics Day" presentations, to provide the Court insight into the economic theories of the case. For each session, Subscriber Counsel prepared and presented testimony from multiple expert witnesses, along with presentation of evidence and arguments, for the Court to consider and familiarize itself with the economics and liability theories of the Subscriber case.

## Class Certification and Summary Judgment

18.     The parties briefed two separate rounds of summary judgment followed by Subscriber Plaintiffs' motion for class certification. These motions required both sides to conduct a full and detailed analysis of the evidence, retain experts to provide reports and testimony, and present their respective cases to the Court for the Court's review of each side's claims and defenses.

19.     First, Defendants including BCBS-AL moved for summary judgment against the Alabama Subscriber Plaintiffs based on application of the filed rate doctrine. ECF No. 523, 733. Under the guidance of Magistrate Judge Putnam, the parties engaged in extensive discovery related to Defendants' filed rate defense. The parties litigated the scope, timing and form of Defendants' productions and Defendants produced more than 3 million pages of BCBS-AL's unstructured and structured data. Plaintiffs also obtained thousands of documents from the Alabama Department of Insurance. Plaintiffs deposed BCBS-AL and AL DOI fact witnesses and took 30(b)(6) testimony from BCBS-AL on its filed rate program.

20.     After multiple rounds of briefing and oral argument, the Court determined that the filed rate defense asserted by BCBS-AL applied to a segment of the monetary damages class (those where the charged premiums were in accordance with the filed rates), but did not apply where charged premiums were greater than the filed rate. ECF No. 998. On March 23, 2017, Plaintiffs filed a Motion for Reconsideration of the Court's Order Regarding Filed Rate Summary Judgment (ECF No. 998). ECF No. 1046. After it was fully briefed by parties, while the Court denied the Motion for Reconsideration without prejudice, the Court stated at oral argument that the parties would have an opportunity to revisit portions of its filed rate doctrine decision later in the case

based on further information. ECF No. 1098, ECF No. 1109 (Transcript of April 21, 2017 hearing) at 69–70.

21.    In 2017, both parties moved for summary judgment on two additional issues: (1) whether a *per se* or Rule of Reason standard should apply to the challenged restraints and (2) whether BCBSA and the Member Plans are a single economic enterprise for purposes of the application of the Sherman Act to their collective management and use of the Blue Cross and Blue Shield trademarks. ECF Nos. 1348 (Plaintiffs' Motion for Partial Summary Judgment), 1432 (Defendants' Response to Plaintiffs' Motion for Partial Summary Judgment), 1552 (Reply Memorandum in Further Support of Plaintiffs' Motion for Partial Summary Judgment), and 1353 (Defendants' Motion for Summary Judgment), 1435 (Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendants' Motion for Summary Judgment), and 1551 (Reply in Support of Defendants' Motion for Summary Judgment).

22.    The parties conducted additional discovery that the Court found necessary before determining the standard of review to be applied to the Sherman Act claims. In support of their respective positions and submissions of fact, the parties submitted six briefs with over 500 exhibits, including three expert reports (and related depositions of those experts.) The parties presented evidence in a full day hearing to the Court. Based on the extensive record before it, the Court determined that the *per se* standard of review applied to the "aggregation of competitive restraints" including the restraint on non-Blue-branded business, so long as Plaintiffs could show that the Defendants did not operate as a single economic enterprise for purposes of their use and management of the trademarks.   The Court further rejected both parties' summary judgment arguments as to whether Defendants operate as a single economic enterprise for purposes of the trademarks, finding genuine issues of material fact remained. ECF No. 2063.

23.     On June 22, 2018, Defendants petitioned the Eleventh Circuit Court of Appeals for permission to appeal the Court's *per se* decision under 28 U.S.C. § 1292(b). *In re Blue Cross Blue Shield Antitrust Litigation*, Case No. 18-90020 (June 22, 2018 11th Cir.). On July 2, 2018, Plaintiffs' Counsel filed their brief in Opposition to Defendants' Petition. On December 12, 2018, the Eleventh Circuit denied Defendants' petition for permission to appeal from the District Court's April 5, 2018 memorandum opinion and order under 28 U.S.C. § 1292(b).

24.     Subscriber Plaintiffs moved for certification of an Alabama damages class and a nationwide injunctive class in April 2019. Subscriber Plaintiffs' motion was supported by a damages analysis conducted by expert reports from Dr. Ariel Pakes and Dr. Daniel Rubinfeld.  Dr. Pakes modeled the effects of entry into the Alabama market to demonstrate the impact of the alleged restraints on a classwide basis and showed an average overcharge ranging from 3.4% to 5.5% for the Alabama damages. Dr. Rubinfeld's report outlined the history of the alleged restraints and their anticompetitive effects in Alabama and nationwide, specifically with respect to decreased product availability, consumer choice, and innovation in addition to resulting in supracompetitive premiums.

25.     Subscriber Plaintiffs filed merits expert reports in May 2019 from Dr. Pakes and Dr. Rubinfeld, as well as Professor Christy Chapin, who provided a report contrasting Defendants' behavior with that of a traditional trade association; Leslie Strassberg, opined that BCBS-AL's profitability would entice entry by another Defendant into the Alabama market absent the restraints; and Louis T. Pirkey, whose report opined that, despite Defendants' assertions  to the contrary, the evidence is consistent with the abandonment of the Blue Cross and Blue Shield trademarks.

26.     In total, through summary judgment, class certification, and merits expert discovery, Subscribers Counsel deposed one of Defendants' experts and defended nine expert depositions.

27.     Defendants filed their opposition to Subscriber Plaintiffs' class certification motion in July 2019. Defendants provided expert reports from five experts, vigorously attacking Dr. Pakes' damages model and arguing that impact could not be demonstrated on a classwide basis. Prior to the Court's decision on class certification, the litigation was stayed while mediation was ongoing.

## Summary of the Mediation Process

28.     The parties first began settlement discussions in 2015. The parties engaged Judge Layn R. Phillips as a mediator and participated in several mediation sessions from 2015 through 2017. Those discussions involved counsel for the Subscriber Plaintiffs, Provider Plaintiffs, Defendants, and Defendants' insurers.

29.     Judge Phillips, along with Judge Gary Feess, worked closely with the parties in an attempt to resolve the litigation. The parties exchanged several proposals on injunctive relief and monetary compensation, but despite Judge Phillips' and Judge Feess' able assistance, those discussions ultimately were not successful.

30.     In November 2017 Special Master Edgar C. Gentle began mediating settlement discussions. Over the course of the next two years, Mr. Gentle held dozens of unilateral and bilateral conferences calls, meetings, and in-person mediation sessions. At various times, counsel for Subscriber Plaintiffs, Defendants, and Defendants' insurers were involved in the mediation.

31.     In July 2019, as mediation was ongoing, we approached Warren Burns of Burns Charest LLP to inquire whether he would be willing to serve as counsel for a sub-class of Self-

Funded Accounts and their employees (together, the "Self-Funded Settlement Sub-Class"). Mr. Burns agreed, and was retained by Hibbett Sports, Inc., an Alabama-based, publicly-traded retailer of sporting goods that is a Self-Funded Account. Mr. Burns then became settlement counsel to the putative Self-Funded Sub-Class, with Hibbett as the Self-Funded Sub-Class Representative. The amount of any future split of the Net Settlement Fund between fully insured and self-funded claimants was not a condition of Mr. Burns' possible retention, nor was that split discussed before Mr. Burns was engaged.

32.     Self-Funded Sub-Class Settlement Counsel asked for and received access to the discovery record in the litigation, along with relevant briefing on class certification and summary judgment, and he engaged his own independent experts to conduct analysis of possible damages for the Self-Funded Sub-Class. In September 2019, Self-Funded Sub-Class Settlement Counsel began attending mediation sessions. The parties continued to exchange proposals and finally, in November 2019, the parties (along with Self-Funded Sub-Class Settlement Counsel) agreed on a term sheet. Over the next several months, the parties worked closely with Mr. Gentle to reduce the term sheet to a settlement agreement, involving many additional conferences between the parties and with Mr. Gentle.

33.     Also in November 2019, along with Self-Funded Sub-Class Settlement Counsel, Plaintiffs engaged Kenneth Feinberg as Allocation Mediator to facilitate the determination of an appropriate allocation of the Net Settlement Fund between fully insured Class Members and the Self-Funded Sub-Class. After presentation of the evidence and an in-person mediation, we along with Self-Funded Sub-Class Settlement Counsel agreed that an equitable allocation would distribute 93.5% of the Net Settlement Fund among fully insured Class Members and 6.5% of the Net Settlement Fund among the Self-Funded Sub-Class. We and Self-Funded Sub-Class

Settlement Counsel presented this proposal to Mr. Feinberg, who reviewed it and determined it to be reasonable.

34.     Starting in August 2020, we along with Self-Funded Sub-Class Settlement Counsel engaged Darrell Chodorow and the Brattle Group to assist with designing a Plan of Distribution. We relied on economic analysis conducted by Mr. Chodorow and the Brattle Group, along with an analysis of the data available from Settling Defendants, to design a reasonable and efficient Plan of Distribution that would treat members of the Damages Class equitably and would not overly burden claimants.

35.     In October 2020, in conjunction with development of a Plan of Distribution, along with Self-Funded Sub-Class Settlement Counsel, we again engaged Mr. Feinberg to review the proposed Plan of Distribution for reasonableness. Mr. Feinberg concluded that the proposed Plan of Distribution was reasonable, and that the recommended Default and Alternative options for determining the value of claims submitted by employees, developed and recommended by us and Self-Funded Sub-Class Settlement Counsel based on numerous factors, was appropriate.

36.     The Settlement Agreement was the product of over four years of hard-fought, arm's-length negotiations by counsel highly experienced in complex litigation and antitrust law. The Settlement Agreement was reached with the assistance of three well-respected mediators, culminating with the major sustained effort by Mr. Gentle, and its implementation through a Plan of Distribution was further assisted by Mr. Feinberg's efforts as Allocation Mediator.

## Conclusion

37.     By virtue of our seven years of litigation experience as interim co-lead counsel for the Subscriber Plaintiffs, we are fully informed about the nature of the claims and defenses and the risk and expense of continued litigation. The Settlement Agreement was negotiated at arm's

length in hard fought negotiations. Given the risks inherent in the litigation of the many issues present in this case, in our judgment and based on our decades of experience, the Settlement Agreement provides an excellent resolution for the Settlement Classes, designed to achieve maximum recovery for the Settlement Classes along with significant and historic injunctive relief that will change the market for health insurance to the benefit of all.

I declare under penalty of perjury the foregoing is true and correct.


_____           _____
Michael D. Hausfeld                        David Boies
Hausfeld LLP                               Boies, Schiller & Flexner LLP
Washington, DC                             Armonk, NY

# EXHIBIT

# A

# HAUSFELD

## Hausfeld Firm Resume

www.hausfeld.com

BOSTON
NEW YORK
PHILADELPHIA
SAN FRANCISCO
WASHINGTON, DC
AMSTERDAM
BERLIN
BRUSSELS
DÜSSELDORF
LONDON
PARIS
STOCKHOLM



# Hausfeld Firm Summary

In the last decade, Hausfeld attorneys have won landmark trials, negotiated complex settlements among dozens of defendants, and recovered billions of dollars for clients both in and out of court. Renowned for skillful prosecution and resolution of complex and class-action litigation, Hausfeld is the only claimants' firm to be ranked in the top tier in private enforcement of antitrust/competition law in both the United States and the United Kingdom by *The Legal 500* and *Chambers & Partners*. Our German office was also ranked by *The Legal 500* for general competition law.

From our locations in Washington, D.C., Boston, New York, Philadelphia, San Francisco, Amsterdam, Berlin, Brussels, Paris, Düsseldorf, Stockholm, and London, Hausfeld contributes to the development of law in the United States and abroad in the areas of antitrust/competition, consumer protection, environmental threats, human and civil rights, mass torts, and securities fraud. Hausfeld attorneys have studied the global integration of markets—and responded with innovative legal theories and a creative approach to claims in developed and emerging markets.

Hausfeld was founded by Michael D. Hausfeld, who is widely recognized as one of the country's top civil litigators and a leading expert in the fields of private antitrust/competition enforcement and international human rights. *The New York Times* has described Mr. Hausfeld as one of the nation's "most prominent antitrust lawyers," while *Washingtonian Magazine* characterizes him as a lawyer who is "determined to change the world—and succeeding," noting that he "consistently brings in the biggest judgments in the history of law."

## Antitrust and Competition Litigation

Hausfeld's reputation for leading groundbreaking antitrust class actions in the United States is well-earned. Having helmed more than 40 antitrust class actions, Hausfeld attorneys are prepared to **litigate and manage cases with dozens of defendants** (*In re Blue Cross Blue Shield Antitrust Litigation*, with more than thirty defendants), **negotiate favorable settlements for class members and clients** (*In re Air Cargo Shipping Services Antitrust Litigation*, settlements of more than $1.2 billion), **take on the financial services industry** (*In re Foreign Exchange Antitrust Litigation*, with settlements of more than $2.3 billion), **take cartelists to trial** (*In re Vitamin C Antitrust Litigation*, trial victory of $162 million against Chinese manufacturers of vitamin C), and **push legal boundaries where others have not** (*O'Bannon v. NCAA*, another trial victory in which the court found that NCAA rules prohibiting additional scholarship payments to players as part of the recruiting process are unlawful).

Hausfeld is "the world's leading antitrust litigation firm."

*– Politico*



# Hausfeld: A Global Reach

Hausfeld's international reach enables it to advise across multiple jurisdictions and pursue claims on behalf of clients worldwide. Hausfeld works closely with clients to deliver outstanding results while always addressing their business concerns. Hausfeld does so by anticipating issues, considering innovative strategies, and maximizing the outcome of legal disputes in a way that creates shareholder value. Its inventive cross border solutions work to the benefit of the multinational companies it often represents.

## Creative Solutions to Complex Legal Challenges

Hausfeld lawyers consistently apply forward-thinking ideas and creative solutions to the most vexing global legal challenges faced by clients. As a result, the firm's litigators have developed numerous innovative legal theories that have expanded the quality and availability of legal recourse for claimants around the globe that have a right to seek recovery. Hausfeld's impact was recognized by the *Financial Times,* which honored Hausfeld's European team with the "Innovation in Legal Expertise - Dispute Resolution," award, which was followed up by FT commending Hausfeld's North American team for its innovative work in the same category. In addition, *The Legal 500* has ranked Hausfeld as the only top tier claimants firm in private enforcement of antitrust/competition law in both the United States and the United Kingdom. For example, the landmark settlement that Hausfeld negotiated to resolve claims against Parker ITR for antitrust overcharges on marine hoses represented the first private resolution of a company's global cartel liability without any arbitration, mediation, or litigation—creating opportunities never before possible for dispute resolution and providing a new model for global cartel settlements going forward.

## Unmatched Global Resources

The firm combines its U.S. offices on both coasts and vibrant European presence with a broad and deep network around the globe to offer clients the ability to seek redress or confront disputes in every corner of the world and across every industry. With over 100 lawyers in offices in Washington, D.C., Boston, New York, Philadelphia, San Francisco, Amsterdam, Berlin, Düsseldorf, Brussels, Paris, Stockholm, and London, Hausfeld is a "market leader for claimant-side competition litigation" (*The Legal 500*).

"Hausfeld, which 'commits extensive resources to the most difficult cases,' widely hails as one of the few market-leading plaintiff firms."

*– The Legal 500*

**HAUSFELD**

# Antitrust Litigation

## Hausfeld's antitrust litigation experience is unparalleled

Few, if any, U.S. law firms are litigating more class actions on behalf of companies and individuals injured by anticompetitive conduct than Hausfeld. The firm has litigated cases involving price-fixing, price manipulation, monopolization, tying, and bundling, through individual and class representation and has experience across a wide variety of industries, including automotive, banking, chemicals, construction, manufacturing, energy, financial services, food and beverage, health care, mining and metals, pharmaceuticals and life sciences, retail, sports and entertainment, technology, and transportation. Clients rely on us for our antitrust expertise and our history of success in

> "Hausfeld LLP, 'one of the most capable plaintiffs' firms involved in the area of civil cartel enforcement,' is [w]idely recognised as a market leader for claimant-side competition litigation… [It is the] market leader in terms of quantity of cases, and also the most advanced in terms of tactical thinking."
>
> *– The Legal 500*

the courtroom, and at the negotiation table, and the firm does not shy away from challenges, taking on some of the most storied institutions. Hausfeld is not only trusted by its clients, it is trusted by judges to pursue these claims, as evidenced by the fact that the firm has been appointed as lead or co-lead counsel in over 40 antitrust cases in the last decade. In one example, Judge Morrison C. England of the Eastern District of California praised Hausfeld for having "the breadth of experience, resources and talent necessary to navigate" cases of import.

Recognizing the firm's antitrust prowess, *Global Competition Review* has opined that Hausfeld is "one of—if not the— top Plaintiffs' antitrust firm in the U.S." *The Legal 500* and

*Chambers and Partners* likewise consistently rank Hausfeld among the top five firms in the United States for antitrust litigation on behalf of plaintiffs. And in naming Hausfeld to its Plaintiffs' Hot List, *The National Law Journal* opined that Hausfeld "punches above its weight" and "isn't afraid to take on firms far larger than its size and deliver results, especially in antitrust litigation."

## Hausfeld has achieved outstanding results in antitrust cases

Hausfeld lawyers have achieved precedent-setting legal decisions and historic trial victories, negotiated some of the world's most complex settlement agreements, and have collectively recovered billions of dollars in settlement and judgments in antitrust cases. Key highlights include:

- *In re Foreign Exchange Benchmark Rates Antitrust Litig.*, **13-cv-7789 (S.D.N.Y.)**
  Hausfeld serves as co-lead counsel in this case alleging financial institutions participated in a conspiracy to manipulate a key benchmark in the foreign exchange market. To date, the firm has obtained over **$2.3 billion** in settlements from **fifteen defendants.** The case is ongoing against the remaining defendant.

- *In re LIBOR-Based Financial Instruments Antitrust Litig.*, **No. 11-md-2262 (S.D.N.Y.)**
  Hausfeld serves as co-lead counsel in this case against sixteen of the world's largest financial institutions for conspiring to fix LIBOR, the primary benchmark for short-term interest rates. To date, the firm has obtained **$590 million** in settlements with four defendants. An antitrust class has been certified and the case is ongoing against the remaining defendants.

- *In re Blue Cross Blue Shield Antitrust Litig.*, **No. 13-mdl-2496 (N.D. Ala.)**
  The Court appointed Hausfeld attorneys as co-lead counsel, and to the Plaintiffs' Steering Committee, in this case against Blue Cross Blue Shield entities. This case was brought against over 30 Blue Cross companies and its trade association (BCBSA), and alleges that they illegally agreed not to compete with each other for health insurance subscribers across the United States. After defeating motions to dismiss, Hausfeld marshalled evidence from a

# HAUSFELD

record that consisted of over 14 million documents from more than thirty defendants and won a landmark ruling when the district court ruled that the per se standard would be applied to defendants' conduct. Plaintiffs will next move towards class certification and trial.

• *O'Bannon v. NCAA*, **No. 09-cv-03329 (N.D. Cal.)**
In the landmark O'Bannon litigation, Hausfeld represented college athletes who collectively alleged that the NCAA, its members, and its commercial partners, violated federal antitrust law by unlawfully foreclosing former players from receiving any compensation related to the use of their names, images, and likenesses in television broadcasts, rebroadcasts, and videogames. In 2013, the plaintiffs announced a $40 million settlement agreement with defendant Electronic Arts, Inc., which left the NCAA as the remaining defendant. Following trial in 2014, the Court determined that the NCAA had violated the antitrust laws and issued a permanent injunction. The Ninth Circuit affirmed the NCAA's violation of the antitrust laws and upheld significant injunctive relief—the practical effect of which is that college athletes can now each receive up to $5,000 more every year as part of their scholarship package (to cover their education, travel and medical expenses, and acquire pre-professional training as they enter the work force).

• *In re Vitamin C Antitrust Litig.*, **No. 06-md-01738 (E.D.N.Y.)**
Hausfeld serves as co-lead counsel in the first class antitrust case in the United States against Chinese manufacturers. Hausfeld obtained settlements for the class of **$22.5 million from two of the defendants**—the first after summary judgment, and the second just before closing arguments at trial. Days later, the jury reached a verdict against the remaining defendants, and the court entered a judgment for **$148 million** after trebling the damages awarded. On appeal to the U.S. Supreme Court, our clients prevailed, and the case was remanded for further consideration by the Second Circuit.

• *In re Air Cargo Shipping Services Antitrust Litig.*, **No. 06-md-1775 (E.D.N.Y.)**
Hausfeld served as co-lead counsel in this case alleging over thirty international airlines engaged in a conspiracy to fix the price of air cargo shipping services. The firm negotiated more than **$1.2 billion** in settlements from over 30 defendants for the class, won certification of the class and defeated the defendants' motions for summary judgment.

• *In re Packaged Seafood Products Antitrust Litigation*, **No. 3:15-md-02670-JLS-MDD (S.D. Cal.)**
The Court appointed Hausfeld attorneys as sole interim lead counsel for the putative class of direct purchasers of packaged seafood products, alleging a price-fixing conspiracy among the leading U.S. manufacturers—Chicken of the Sea, StarKist and Bumble Bee. On July 30, 2019, the Honorable District Judge Janis L. Sammartino of the Southern District of California granted class certification to a class of direct purchasers and appointed Hausfeld as class counsel. No trial date has yet been set.

• *In re Disposable Contact Lens Antitrust Litig.*, **No. 3:15-md-2626-J-20JRK (M.D. Fla.)**
Hausfeld serves as one of the three co-lead counsel for a nationwide class of consumers alleging horizontal and vertical conspiracies by the four leading contact lens manufacturers and their primary distributor to impose minimum resale price maintenance policies called "unilateral pricing policies," or "UPPs." On June 16, 2016, the court denied the defendants' motions to dismiss, and on February 21, 2018, the plaintiffs announced that they had reached a settlement with CooperVision. The court preliminarily approved that settlement on July 10, 2018. On December 4, 2018, the court certified a nationwide class of consumers asserting federal antitrust claims, as well as Maryland and California sub-classes. The case is scheduled to go to trial in February 2020.

• *In re International Air Passenger Surcharge Antitrust Litig.*, **No. 06-md-01793 (N.D. Cal.)**
Hausfeld served as co-lead counsel in this case against two international airlines alleged to have fixed fuel surcharges on flights between the United States and United Kingdom. Lawyers at the firm negotiated a ground-breaking **$200 million** international settlement that provides recovery for both U.S. purchasers under U.S. antitrust laws and U.K. purchasers under U.K. competition laws.

• *In re Municipal Derivatives Antitrust Litig.*, **No. 08-cv-2516 (S.D.N.Y.)**
Hausfeld served as co-lead counsel in this case against banks, insurance companies, and brokers accused of rigging bids on derivative instruments purchased by municipalities. The firm obtained over **$200 million** in settlements with more than **ten defendants**.

# HAUSFELD®

- *In re Automotive Aftermarket Lighting Products Antitrust Litig.*, No. 09-ML-2007 (C.D. Cal.)
  Hausfeld served as co-lead counsel in this case against three manufacturers for participating in an international conspiracy to fix the prices of aftermarket automotive lighting products. The firm obtained over **$50 million** in settlements.

- *In re Processed Egg Products Antitrust Litig.*, No. 08-cv-04653 (E.D. Pa.)
  Hausfeld served as co-lead counsel in this case alleging that egg producers, through their trade associations, engaged in a scheme to artificially inflate egg prices by agreeing to restrict the supply of both laying hens and eggs. The firm obtained over **$135 million** in settlements, won certification of a class of shell egg purchasers, and tried the case against the remaining defendants.

- *In re Fresh and Process Potatoes Antitrust Litig.*, No. 10-MD-2186 (D. Idaho)
  Hausfeld served as chair of the executive committee in this case alleging that potato growers, their cooperatives, processors, and packers conspired to manipulate the price and supply of potatoes. In defeating defendants' motion to dismiss, the firm secured a judicial determination that supply restrictions are not protected conduct under a limited federal antitrust exemption available to certain grower associations—a novel question that had never before been decided by any court. The firm obtained **$19.5 million** in settlements and valuable injunctive relief prohibiting future production limitation agreements, achieving global resolution of the case.

- *In re American Express Anti-Steering Rules Antitrust Litig.*, No. 11-md-2221 (E.D.N.Y)
  As lead counsel, Hausfeld represents a class of merchants and retailers against American Express. The merchants allege that American Express violated antitrust laws by requiring them to accept all American Express cards, and by preventing them from steering their customers to other payment methods.

- *In re Domestic Airline Travel Antitrust Litig.*, No. 15-1404 (CKK) (D.D.C.)
  Hausfeld serves as co-lead counsel for a proposed class of domestic air passengers that collectively allege the defendants, the four major U.S. passenger air carriers — United, American, Delta, and Southwest — conspired to fix domestic airfares by colluding to limit their respective capacity. The passengers allege that Defendants, in which a common set of investors owned significant shares during the conspiracy period, carried out the conspiracy through repeated assurances to each other on earnings calls and other statements that they each were engaging in "capacity discipline". In October 2016, the court denied defendants' motion to dismiss. Since that time, the firm has obtained $60 million in settlements with American and Southwest. The litigation against United and Delta is ongoing.



# Litigation Achievements

## Significant Trial Victories

While many law firms like to talk about litigation experience, Hausfeld lawyers regularly bring cases to trial—and win. Among our trial victories are some of the largest antitrust cases in the modern era. For example, in *O'Bannon v. NCAA* **(N.D. Cal.)**, we conducted a three-week bench trial before the chief judge of the Northern District of California, resulting in a complete victory for college athletes who alleged an illegal agreement among the National Collegiate Athletic Association and its member schools to deny payment to athletes for the commercial licensing of their names, images, and likenesses. Our victory in the *O'Bannon* litigation followed the successful trial efforts in *Law v. NCAA* **(D. Kan.)**, a case challenging earning restrictions imposed on assistant college coaches in which the jury awarded **$67 million** to the class plaintiffs that one of our lawyers represented.

In *In re Vitamin C Antitrust Litigation* **(E.D.N.Y.)**, we obtained, on behalf of our direct purchaser clients, a **$148 million** jury verdict and judgment against Chinese pharmaceutical companies that fixed prices and controlled export output of Vitamin C—on the heels of $22.5 million in settlements with other defendants, which represented the first civil settlements with Chinese companies in a U.S. antitrust cartel case. Years earlier, we took on a global vitamin price-fixing cartel in *In re Vitamins* **(D.D.C.)**, in which we secured a **$1.1 billion settlement** for a class of vitamin purchasers and then took the remaining defendants to trial, culminating in a **$148 million jury verdict**.

Our trial experience extends to intellectual property matters and general commercial litigation as well. Recently, we represented entertainment companies that sought to hold internet service provider Cox Communications accountable for willful contributory copyright infringement by ignoring the illegal downloading activity of its users. Following a trial in *BMG Rights Management (US) LLC, v. Cox Enterprises, Inc.* **(E.D. Va.)**, the jury returned a **$25 million verdict** for our client. After the defendants appealed and prior to a new trial, the parties settled.

## Exceptional Settlement Results

Over the past decade, Hausfeld has recouped over $20 billion for clients and the classes they represented. We are proud of our record of successful dispute resolution. Among our settlement achievements, a selection of cases merit special mention.

In the high profile *In re Foreign Exchange Benchmark Rates Antitrust Litigation* **(S.D.N.Y.),** we negotiated settlements totaling more than $2.3 billion with fifteen banks accused of conspiring to manipulate prices paid in the foreign-exchange market. In another case involving allegations of pricefixing among the world's largest airfreight carriers, *In re Air Cargo Shipping Services Antitrust Litigation* **(E.D.N.Y.),** we negotiated settlements with more than 30 defendants totaling over $1.2 billion—all in advance of trial. In the ongoing *In re: LIBOR-Based Financial Instruments Antitrust Litigation* **(S.D.N.Y.)** case, we have secured settlements to date totaling $590 million with Barclays ($120 million), Citi ($130 million), Deutsche Bank ($240 million), and HSBC ($100 million). The court has granted final approval to each of these settlements.

Most recently, Hausfeld served as class counsel in *Hale v. State Farm Mutual Automobile Insurance Co.* **(S.D.Ill.).** This case involved allegations that State Farm worked to help elect an Illinois state supreme court justice in order to overturn a billion-dollar judgment against it. On the day opening statements were to be delivered to the jury, State Farm agreed to settle for $250 million. Finally, in the global *Marine Hose* matter, we broke new ground with the first private resolution of a company's global cartel liability without any arbitration, mediation, or litigation. That settlement enabled every one of Parker ITR's non-US marine-hose purchasers to recover up to 16% of their total purchases.

These cases are just five among dozens of recent landmark settlements across our practice areas.

# HAUSFELD

# Reputation and Leadership in the Antitrust Bar

## Court Commendations

Judges across the country have taken note of Hausfeld's experience and results achieved in antitrust litigation.

"All class actions generally are more complex than routine actions… But this one is a doozy. This case is now I guess nearly more than ten years old. The discovery as I've noted has been extensive. The motion practice has been extraordinary… The recovery by the class is itself extraordinary. The case, the international aspect of the case is extraordinary. Chasing around the world after all these airlines is an undertaking that took enormous courage."

– Judge Brian M. Cogan
*In re Air Cargo Shipping Services Antitrust Litigation*, No. 06-md-1775 (E.D.N.Y.)

Comparing Hausfeld's work through trial to *Game of Thrones*: "where individuals with seemingly long odds overcome unthinkable challenges… For plaintiffs, their trial victory in this adventurous, risky suit, while more than a mere game, is nothing less than a win…"

– Magistrate Judge Nathanael M. Cousins
*O'Bannon v. Nat'l College Athletic Ass'n*, No. 09-cv-3329 (N.D. Cal.)

Hausfeld lawyers achieved "really, an outstanding settlement in which a group of lawyers from two firms coordinated the work… and brought an enormous expertise and then experience in dealing with the case." "[Hausfeld lawyers are] more than competent. They are outstanding."

– Judge Charles R. Breyer
*In re International Air Passenger Surcharge Antitrust Litig.*, No. 06-md-01793 (N.D. Cal.) (approving a ground-breaking $200 million international settlement that provided recovery for both U.S. purchasers under U.S. antitrust laws, and U.K. purchasers under U.K. competition laws.)

Hausfeld has "the breadth of experience, resources and talent necessary to navigate a case of this import." Hausfeld "stands out from the rest."

– District Judge Morrison C. England Jr.
*Four In One v. SK Foods*, No. 08-cv-3017 (E.D. Cal.)

"The class is represented by what I would describe as an all-star group of litigators…"

– District Judge David R. Herdon
*Hale v. State Farm*, No. 12-cv-00660-DRH-SCW (S.D. Ill.)



# Awards and Recognitions

## The Legal 500

In 2020, for the 11th consecutive year, Hausfeld was ranked in the top tier nationally for firms in antitrust civil litigation and class actions by *The Legal 500*. The publication described Hausfeld lawyers as "pragmatic, smart and focused litigation experts," and the firm as "at the top of its game," with "a number of heavyweight practitioners." The publication has previously stated that:

> "DC firm Hausfeld LLP remains top-notch in antitrust litigation… Hausfeld LLP is one of the most capable plaintiffs firms involved in the area of civil cartel enforcement, and is handling some of the major cartel-related cases…"

*The Legal 500* has also recognized that Hausfeld is a "market transformer," the "most innovative firm with respect to antitrust damages," is "[d]riven by excellence," "anticipates the evolving needs of clients," and delivers "outstanding advice not only in legal terms but also with a true entrepreneurial touch. . . ."

## Concurrences



In 2020, the Hausfeld Competition Bulletin article titled, "Data Exploiting as an Abuse of Dominance: The German Facebook Decision," authored by Hausfeld lawyer Thomas Höppner, was awarded *Concurrences'* 2020 Writing Award in its Unilateral Conduct (Business) category.

In 2018, an article authored by Hausfeld lawyer Scott Martin, joined by co-authors Brian Henry and Michaela Spero, was awarded *Concurrences'* 2018 Writing Award for Private Enforcement (Business) Category. The article, "Cartel Damage Recovery: A Roadmap for In-House Counsel," was originally published in *Antitrust Magazine*.

In 2017, Hausfeld's Competition Bulletin was selected to be ranked among the top antitrust firms distributing newsletters and bulletins. Hausfeld is the only Plaintiffs' firm to be ranked, and we secured the number one spot for Private Enforcement Newsletters.

In 2015, Hausfeld Partners Michael Hausfeld, Michael Lehmann and Sathya Gosselin won the *Concurrences'* 2015 Antitrust Writing Awards in the Private Enforcement (Academic) category for their article, "Antitrust Class Proceedings—Then and Now," Research in Law and Economics, Vol. 26, 2014.

## Benchmark Litigation



In 2020, Benchmark Litigation highlighted Hausfeld as a leader in the domain of dispute resolution, recognizing the firm at the national level, as well as regionally on both coasts.

Hausfeld was ranked by Benchmark for Antitrust/Competition Nationwide, and is one of only a small handful of plaintiff-side firms on the list. Hausfeld was also honored as a 'Recommended Top Plaintiff Firm' Nationwide, and described by the publication as "an undisputed trailblazer, identified as a ubiquitous presence by peers on both the plaintiff and defense sides of the 'V'." A peer on the defense side commented to the publication that



Hausfeld is always in mix among antitrust and sports matters, "at least in the biggest and best cases." Further to Hausfeld's national recognitions, Benchmark recognized several individuals in the firm's San Francisco and Washington, DC offices.





### 2019 Antitrust Report

Hausfeld has been recognized as the leading plaintiffs' firm for class recovery in antitrust litigation between 2009 and 2019. This statistic was noted in the "2019 Antitrust Annual Report" released jointly by the University of San Francisco Law School and The Huntington National Bank. Hausfeld was listed as the top firm out of the 25 analyzed in this section of the report, having achieved an aggregate settlement class recovery totaling nearly $5.2 billion over 11 years.



### Who's Who Legal

In 2019, *Who's Who Legal* honored Hausfeld as the 'Competition Plaintiff Firm of the Year,' noting that the firm is, "a giant in the competition plaintiff field that once again demonstrates the strength and depth of its expertise..."

In 2018, the publication recognized the firm as "[a] powerhouse in the plaintiffs' litigation field, with particularly deep capability in competition matters," highlighting "nine outstanding litigators."



### Financial Times

In 2019, the *Financial Times* named Hausfeld one of the 25 'Most Innovative Law Firms: Overall' in North America. Notably, Hausfeld was the only plaintiffs' firm to make the list. In 2018, the *Financial Times*' Innovative Lawyers Report honored Hausfeld with the 'Innovation in Legal Expertise - Dispute Resolution' award for the firm's work with Dutch transportation insurer TVM. The *Financial Times* followed up this award by commending Hausfeld in its 2018 North America Innovative Lawyers Report for its representation of plaintiffs in In Re Foreign Exchange Benchmark Rates Antitrust Litigation. Hausfeld is proud to be the only plaintiffs' firm to have received recognition in the category of 'dispute resolution' for 2018 on both sides of the Atlantic.

In 2016, the *Financial Times* named Hausfeld as a top innovative law firm. Writing about Hausfeld's innovation in the legal market, the *Financial Times* noted: "The firm has taken the litigation finance model to Germany, to turn company inhouse legal departments into profit centres."

In 2015, Michael Hausfeld was recognized by the *Financial Times* as one of the Top 10 Innovative Lawyers in North America.

In 2013, Hausfeld won the *Financial Times* Innovative Lawyer Dispute Resolution Award. The FT stated that Hausfeld has "[p]ioneered a unique and market-changing litigation funding structure that improved accessibility and enabled victims to pursue actions with little or no risk."





### Global Competition Review

In 2018, Hausfeld attorneys were awarded *Global Competition Review's* "Litigation of the Year – Cartel Prosecution" commending its work on *In re Vitamin C Antitrust Litigation.* In this historic case, the Supreme Court ruled in favor of Hausfeld's clients, setting forth criteria and a framework for courts to use when assessing the credibility and weight to give to a foreign government's expression of its own laws.

In 2016, Hausfeld was awarded *Global Competition Review's* "Litigation of the Year – Cartel Prosecution" for its work on *In re Foreign Exchange Antitrust Benchmark Litigation*. The award recognized Hausfeld's success in the Foreign Exchange litigation to date, which has included securing settlements for more than $2.3 billion in on behalf of a class of injured foreign exchange investors and overcoming three motions to dismiss in the action.

In 2015, Hausfeld attorneys were awarded *Global Competition Review's* "Litigation of the Year – Non-Cartel Prosecution," which recognized their trial victory in *O'Bannon v. NCAA,* a landmark case brought on behalf of college athletes challenging the NCAA's restrictions on payment for commercial licensing of those athletes' names, images, and likenesses in various media.



### U.S. News & World Report

Since 2016, *U.S. News & World Report* – Best Law Firms has named Hausfeld to its top tier in both Antitrust Law and Litigation, and among its top tiers in Commercial Litigation. Hausfeld was also recognized in New York, San Francisco, and Washington, DC in Antitrust Law, Litigation, Mass Torts and Commercial Litigation.



### American Antitrust Institute

In 2018, Hausfeld and its co-counsel received the *American Antitrust Institute's* award for 'Outstanding Antitrust Litigation Achievement in Private Law Practice' for their trial and appellate victories in *In re Vitamin C Antitrust Litigation.*

In 2016, the *American Antitrust Institute* honored two Hausfeld case teams—*In re Air Cargo Shipping Services Antitrust Litig.* (E.D.N.Y.) and *In re Municipal Derivatives Antitrust Litig.* (S.D.N.Y.)—with its top award for Outstanding Antitrust Litigation Achievement in Private Law Practice. Taken together, these two cases have yielded settlements of over $1.4 billion to class members after nearly a decade of litigation. The award celebrates private civil actions that provide significant benefits to clients, consumers, or a class and contribute to the positive development of antitrust policy.

In 2015, Hausfeld and fellow trial counsel won the American Antitrust Institute's award for Outstanding Antitrust Litigation Achievement in Private Law Practice for their trial and appellate victories in *O'Bannon v. NCAA.*



### Chambers & Partners

In 2020, *Chambers and Partners* named Hausfeld to its highest tier, Band 1, for "Antitrust: Plaintiff – USA – Nationwide," noting that the firm is:

"able to deploy a deep bench of trial attorneys with outstanding litigation experience," and is "renowned for its abilities representing plaintiffs in multidistrict class action antitrust suits across the country involving a wide variety of antitrust issues."

Clients reported to the publication that "Hausfeld is a great partner that makes sure to understand our perspective," and peers have commended the firm's "terrific, deep bench."

Hausfeld was one of just four law firms ranked in Band 1. Hausfeld's New York office was also named to Band 1 for "Antitrust: Mainly Plaintiff – New York."

The publication has also previously noted the firm's attributes as including:

- A reputation as a "[m]arket-leading plaintiffs' firm with considerable experience in antitrust class action suits and criminal cartel investigations."
- "[N]umerous successes in the area, resulting in major recovery or settlements for its clients."
- Firm Chair Michael Hausfeld's record as "a very successful and able antitrust litigator," and "one of the titans of the Plaintiffs Bar."

Additionally, between 2016 and 2019, *Chambers & Partners UK* ranked Hausfeld in the top tier among London firms representing private claimants in competition matters and recognized the firm's accomplishments in Banking Litigation.

### National Law Journal



In 2015, Hausfeld was named to the *National Law Journal's* "Plaintiffs Hot List" for the fourth year in a row. The publication elaborated:

"Hausfeld's creative approaches underpinned key antitrust wins last year, including a trailblazing victory for former college athletes over the use of their likenesses in television broadcasts and video games…" and Hausfeld, along with its co-counsel, "nailed down a $99.5 million settlement with JPMorgan Chase & Co. in January in New York federal court for alleged manipulation of market benchmarks. And it helped land nearly $440 million in settlements last year, and more than $900 million thus far, in multidistrict antitrust litigation against air cargo companies."

In 2014, *The National Law Journal* named Hausfeld as one of a select group of America's Elite Trial Lawyers, as determined by "big victories in complex cases that have a wide impact on the law and legal business." The award notes that Hausfeld is among those "doing the most creative and substantial work on the plaintiffs side."

# HAUSFELD

# Diversity and Inclusion

Hausfeld is committed to diversity and inclusion, because we know that embracing a variety of viewpoints and backgrounds allows us to gain better insights and strengthen our practice. Our diversity is reflected throughout our dozens of case teams leading class actions across the country. We are proud that half of our lawyers are women, who lead some of the largest price-fixing and market manipulation antitrust MDLs in the United States on behalf of our firm.

Hausfeld's Diversity and Inclusion Committee is committed to examining and improving all aspects of our hiring, benefits, training, support, and promotion practices to ensure that we maintain the highest standards for ourselves, and continually strive for improvement. We seek to ensure that all of our attorneys are provided the resources they need to excel, and are given opportunities to lead, both within and outside the firm.

# Thought Leadership

Hausfeld lawyers do more than litigation. They exercise thought leadership in many fields. Hausfeld lawyers host, lecture at, and participate in leading legal conferences worldwide and address ground-breaking topics including: the pursuit of damages actions in the United States and the European Union on behalf of EU and other non-U.S. plaintiffs; nascent private civil enforcement of EU competition laws; application of the FTAIA; the impact of *Wal-Mart Stores, Inc. v. Dukes* and *Comcast Corp. v. Behrend* on class certification; reforms to the Federal Civil Rules of Procedure; emerging issues in complex litigation; and legal technology and electronic discovery.

Hausfeld attorneys have presented before Congressional subcommittees, regulators, judges, business leaders, in-house counsel, private lawyers, public-interest advocates, elected officials and institutional investors, and hold leadership positions in organizations such as the American Bar Association, the American Antitrust Institute, the Women Antitrust Plaintiffs' Attorneys network group, the Sedona Conference and the Institute for the Advancement of the American Legal System.

## Selected Articles

- Michael D. Hausfeld and Irving Scher, **"Umbrella Liability: Has Its Time Come?"** *Competition Policy International* (October 24, 2020)

- Swathi Bojedla, **"Third Circuit's Suboxone Class Certification Affirmance Clarifies Commonality and Predominance Requirements,"** Hausfeld Competition Bulletin/Lexology (Fall 2020)

- Michael D. Hausfeld, Anthony Maton, David R. Wingfield, **"Class Actions & Competition Law, An Overview Of EU and National Case Law,"** *Concurrences e-Competition Bulletin - Special Issue on Class Actions* (August 27, 2020)

- Sarah LaFreniere, **"Personal Jurisdiction in Federal Class Actions: Three New Rulings but Little Clarity,"** Hausfeld Competition Bulletin/Lexology (Spring 2020)

- Michael D. Hausfeld, Irving Scher, Laurence T. Sorkin, *"*In Defense of Class Actions: A Response to Makan Delrahim's Commentary on the UK Mastercard Case,*"* *Competition Policy International* (June 8, 2020)

- Jeanette Bayoumi, **"From Silicon Valley to the Burger Joint: The Evolving Landscape of Vertical 'No-Poach' Cases,"** Hausfeld Competition Bulletin/Lexology (Fall 2019).

- Melinda R. Coolidge and Katie R. Beran, **"The Federal Trade Commission Slams Impax/Endo Reverse Payments Settlement,"** Hausfeld Competition Bulletin/Lexology (Summer 2019).

- Walter D. Kelley Jr., **"Arbitrability – Which Is To Be Master?"** Hausfeld Competition Bulletin/Lexology (Spring 2019).

- Nathaniel C. Giddings & Aaron Patton, **"Social Media and Antitrust: A Discovery Primer,"** *Antitrust Magazine* (Summer 2018).

- Steven Nathan and Irving Scher, **"The Role of Comity in Antitrust Discovery,"** Hausfeld Competition Bulletin/Lexology (Spring 2018).

- Sarah LaFreniere (Co-Author), **"The Volkswagen Scandal: Catalyst for Class Action Change?"** *Law360* (Feb. 27, 2018).

**HAUSFELD**®

- Jeanette Bayoumi, **"Are Nationwide Classes at Risk for Overturned Settlements following the Ninth Circuit's Ruling in Hyundai?"** Hausfeld Competition Bulletin/ Lexology (Winter 2018).

- Michael D. Hausfeld, Irving Scher, and Laurence Sorkin, **"Litigating Indirect Purchasers Claims: Lessons for the EU from the U.S. Experience,"** *Antitrust Magazine* (Fall 2017)

- Scott Martin, Michaela Spero, and Brian Henry, **"Cartel Damage Recovery: A Roadmap for In-House Counsel,"** *Antitrust Magazine* (Fall 2017)—Recipient of *Concurrences'* 2018 Antitrust Writing Award for Private Enforcement (Business) Category.

- Christopher Lebsock and Samantha Stein, **"Oligopoly & No Direct Evidence? Good Luck, Says Third Circuit,"** Hausfeld Competition Bulletin/Lexology (Fall 2017).

- Michael D. Hausfeld and Irving Scher, "**Damage Class Actions After *Comcast*: A View from the Plaintiffs' Side**," *Antitrust Magazine* (Spring 2016).

- James J. Pizzirusso, "**Proving Damages in Consumer Class Actions**," Consumer Protection Committee, Vol. 22/ No. 1, ABA Section of Antitrust Law (March 2016).

- Jeannine Kenney, **"Courts determine that non-cash consideration is subject to antitrust scrutiny under Actavis,"** Hausfeld Competition Bulletin/Lexology (Oct. 2015).

- Bonny E. Sweeney, "**Earning ACPERA's Civil Benefits,**" 29 *Antitrust Magazine* 37 (Summer 2015).

- Irving Scher, **"The FTC's Revised Fred Meyer Guides: Back to the Sixties,"** *Antitrust Source* (February 2015).

- Brent W. Landau and Gary Smith, "**Bundling Claims Under Section 1 of the Sherman Act: Focusing on Firms' Abilities to Create Anticompetitive Effects in a Market, Rather Than Their Share of It**," *Antitrust Health Care Chronicle*, Vol. 28/ No. 1, ABA Section of Antitrust Law (Jan. 2015).

- Michael D. Hausfeld, Gordon C. Rausser, Gareth J. Macartney, Michael P. Lehmann, Sathya S. Gosselin, "**Antitrust Class Proceedings – Then and Now**," *Research in Law and Economics* (Vol. 26, 2014)—Recipient of *Concurrences'* 2015 Antitrust Writing Award for Private Enforcement (Academic) Category.

- Brent W. Landau and Brian A. Ratner, "**Chapter 39: USA**," *The International Comparative Legal Guide to Cartels & Leniency* (Ch. 39, 2014).

- Michael D. Hausfeld and Brian A. Ratner, "**Prosecuting Class Actions and Group Litigation – Understanding the Rise of International Class and Collective Action Litigation and How this Leads to Classes that Span International Borders**," *World Class Actions* (Ch. 26, 2012)

- Michael D. Hausfeld, Brent W. Landau, and Sathya S. Gosselin, **"'CAT'-astrophe: The Failure of 'Follow-On' Actions,"** International Cartel Workshop, Presented by the ABA Section of Antitrust Law & The International Bar Association (Feb. 1-3, 2012).

- Michael D. Hausfeld and Brent W. Landau, et al., "**Private Enforcement of Antitrust Law in the United States, A Handbook - Chapter 4: Initiation of a Private Claim,**" (2012).

- Brian A. Ratner and Sathya S. Gosselin, **"The Novelty of Wal-Mart v. Dukes,"** American Bar Association, Business Torts & Civil RICO Committee, Business Torts & RICO News, Vol. 8, Issue 1, (Fall 2011).

# HAUSFELD



 **FOUNDER & CHAIR**

 **WASHINGTON, DC**
**LONDON**

 **+1 (202) 540-7200**

 **mhausfeld@hausfeld.com**

# Michael D. Hausfeld

### Experience

Michael Hausfeld, widely recognized for his leadership on competition matters and his groundbreaking cases in human rights law, is the Chair of Hausfeld. Michael's distinguished career has included some of the largest and most successful class actions in the fields of human rights, discrimination and antitrust law.

### Clients

Michael has an abiding interest in social reform, and has been a part of some of the most groundbreaking cases in that arena both in the U.S. and around the world. Michael was among the first lawyers in the U.S. to assert that sexual harassment was a form of discrimination prohibited by Title VII, and he successfully tried the first case establishing that principle. He has represented Native Alaskans whose lives were affected by the 1989 Exxon Valdez oil spill and later negotiated a then-historic $176 million settlement from Texaco, Inc. in a racial-bias discrimination case. In *Friedman v. Union Bank of Switzerland*, Michael represented a class of Holocaust victims whose assets were wrongfully retained by private Swiss banks during and after World War II. The case raised novel issues of international banking law and international human rights law. In a separate case, he also successfully represented the Republic of Poland, the Czech Republic, the Republic of Belarus, the Republic of Ukraine and the Russian Federation on issues of slave and forced labor for both Jewish and non-Jewish victims of Nazi persecution. He has represented individuals and NGOs in litigation alleging liability for aiding and abetting the South African system of apartheid.

Michael has a long record of successful litigation in the antitrust field, on behalf of individuals and classes, in cases involving monopolization, tie-ins, exclusive dealing and price fixing. In the landmark *O'Bannon v. NCAA* litigation, Michael represented a class of current and former Division I men's basketball and FBS football players against the NCAA and its member institutions, based on rules foreclosing athletes from receiving compensation for the use of their names, images, and likenesses. At the conclusion of a three-week bench trial, the Court determined that the NCAA had violated the antitrust laws and issued a permanent injunction as requested by the plaintiffs. He was a member of the ABA Antitrust Section's Transition Taskforce, which advised the incoming Obama Administration, and has chaired the ABA's Civil Redress Committee. Michael has been co-lead counsel in antitrust cases against manufacturers of genetically engineered foods, managed healthcare companies, bulk vitamin manufacturers, technology companies, and the world's largest banking institutions. He is involved in ongoing investigations of antitrust cases abroad and pioneering efforts to enforce competition laws globally. He was the only

private lawyer permitted to attend and represent the interests of consumers worldwide in the 2003 closed hearings by the EU Commission in the Microsoft case.

### PRACTICE AREAS

Antitrust / Competition

Antitrust Counseling and Compliance

Civil and Human Rights

Commercial Contingency

Financial Services and Securities

Mass Torts and Public Health Threats

Public Entity

Sports and Entertainment

### WHAT OTHERS SAY

- *Benchmark Litigation* named Michael a "National Practice Area Star" and a "Local Litigation Star" (2021)

- For over a decade, *Best Lawyers* has named Michael as a top Washington, D.C. lawyer in the category of Antitrust (2006-Present)

- Naming Michael Hausfeld "Lawyer of the Year" in 2019, the *Global Competition Review* stated that the firm "is clearly recognized as one of the best plaintiffs' firms in the country." The magazine has reported that Michael "consistently brings in the biggest judgments in the history of law" and that he is "a Washington lawyer determined to change the world – and succeeding."

- Michael is ranked in Band 1 by *Chambers & Partners* for Antitrust: Plaintiff - Nationwide year-after-year. In 2020, *Chambers* noted, ""Michael Hausfeld is a key player in the antitrust space, skillfully handling prominent class actions, often concerning anticompetitive behavior and price manipulation. Sources report: 'What sets him apart is his creativity and strategic sense of how to resolve a dispute to satisfy all sides.'" In 2019, the publication recognized that Michael has been "lauded by market sources as an 'amazing lawyer.'" *Chambers* also named him a "Recognized Practitioner" in Sports Law – Nationwide (2019).

- *Who's Who Legal* named Michael a (2019-Present) "Thought Leader" stating that he is "one of the titans of the competition plaintiff space, and is a perennial selection as a Global Elite Thought Leader. He attracts numerous recommendations from peers across North America and Europe for his

standout practice, which encompasses antitrust litigation on the part of both individuals and classes." In 2020, the publication added that Michael is "one of North America's foremost plaintiff specialists in the antitrust space, dubbed a 'legend in the field.'"

- Michael has been consistently named to the prestigious *Lawdragon* list of the 500 "Leading Lawyers in America" (2013-Present), as has been named to the publication's list of "Leading Plaintiff Financial Lawyers" (2019-Present), and "Leading Plaintiff Consumer Lawyers" (2019-Present)

- In naming Michael one of the "Top 10 Leading Lawyers" in the U.S. representing plaintiffs in antitrust and cartel matters*, The Legal 500* termed Michael a "mastermind of strategy" and "smart strategic thinker," stating that the "'incredibly impressive... Michael Hausfeld and Brian Ratner are highly skilled negotiators and litigators, and real fighters with an outstanding strategic sense,'" and "the outstanding Mike Hausfeld is a titan of the antitrust bar."

- Michael was added to "The Legal 500 Hall of Fame," which highlights individuals who have received constant praise from their clients for continued excellence. The Hall of Fame highlights, to clients, the law firm partners who are at the pinnacle of the profession (2020)

- Michael has been described by one of the country's leading civil rights columnists as an "extremely penetrating lawyer" and by a colleague (in a *Washington Post* article) as a lawyer who "has a very inventive mind when it comes to litigation. He thinks of things most lawyers don't because they have originality pounded out of them in law school."

- For over a decade, Michael has been named a Washington, DC *Super Lawyer* (2007-Present)

- Michael was honored with the award for "Outstanding Antitrust Litigation Achievement in Private Law Practice (*In re Vitamin C Antitrust Litigation*) by the *American Antitrust Institute* (2018)

- Michael was just one of fifty attorneys in the country named as a "Litigation Trailblazer & Pioneer" by the *National Law Journal* (2014)

- Michael was just one of six attorneys named as a "Competition MVP" by *Law360* (2014)

- Michael and his co-authors were named the winner of the *Concurrences* Antitrust Writing Award in the category of 'Academic, Private Enforcement' for his article titled, "Antitrust Class Proceedings – Then and Now" (2015)

- Michael was awarded the Torch of Learning Award by the American Friends of Hebrew University (2012)

- *The Ethisphere Institute* named Michael in a short list of "Attorneys Who Matter" in the field of corporate compliance (2009)

- Michael was named to *SmartCEO Magazine*'s "Legal Elite" list (2009)

- Michael was cited by *Chambers USA,* in the Products Liability category (2009)

- *Legal Times* named Michael among the top 30 "Visionaries" in the Washington legal community (2008)

- Michael was cited by *GQ* magazine as one of the "50 Most Powerful People in DC" (2007)

- *The Lawyer* named Michael to its "International World-shakers" list of 40 international lawyers "making waves" in the UK (2007)

- *The Legal Times* honored Michael with the Fierce Sister Award, for work on the Japanese Comfort Women case (2007)

- *The National Law Journal* named Michael to its list of the "100 Most Influential Lawyers" (2006)

- The *New York Times* referred to Michael as one of the nation's "most prominent antitrust lawyers," and the *Washingtonian* named him one of thirty "Stars of the Bar."

- Michael was honored with the B'Nai Brith Humanitarian of the Year Award (2002)

- Michael was one of thirty negotiators profiled in *Done Deal: Insights from Interviews with the World's Best Negotiators,* by Michael Benoliel, Ed.D.

- Michael has been the recipient of the Simon Wiesenthal Center Award for Distinguished Service

- Michael received the U.S. Department of Energy Human Spirit Award, presented "in tribute to a person who understands the obligation to seek truth and act on it is not the burden of some, but of all; it is universal."

- Immediately following the NCAA v O'Bannon decision, Michael was named *AmLaw Litigation Daily's* "Litigator of the Week," citing the "consensus among courtroom observers [was] that Michael Hausfeld...got the best of a parade of NCAA witnesses at trial." *Law360* dubbed the trial team led by Michael as "Legal Lions," citing the firm's historic victory over the NCAA.

### EDUCATION

National Law Center George Washington University, J.D., *with honors*, 1969; Member, Order of the Coif

Brooklyn College, B.A. *cum laude*,1966

### BAR ADMISSIONS

District of Columbia

New York

## AFFILIATIONS & MEMBERSHIPS

Co-Chair, ABA Civil Redress Committee, 2012-2013

Co-Chair, ABA Civil Redress Task Force, 2011-2012

Member, Editorial Board - Global Competition Litigation Review, 2011

Member, ABA International Cartel Task Force, 2010

Plaintiffs Fellow, Litigation Counsel of America

Adjunct Professor, George Washington University Law School, 1996-1998

Professor, Georgetown University Law Center, 1980-1987

Member, Board of Editors, *George Washington Law* Review (1968-1969)

## NEWS & PRESS

"Lawyer Limelight: Michael Hausfeld," *Lawdragon*, May 2019

The Toughest Lawyer in America Is On Your Side, Neal Gabler, *Playboy Magazine* , February 2015.

Gangster Bankers - Too Big to Jail, Matt Taibbi, *Rolling Stone Magazine*, February 2013

UBS Mea Culpa May Give Libor Antitrust Plaintiffs Upper Hand, Max Stendahl, *Law360*, December 2012

DOJ Heralds 'Robust' UBS Deal; Gibson Dunn on Defense, Mike Scarcella, *The AmLaw Litigation Daily*, December 2012

Documents May Boost Civil Suits - Revelations That Rate-Rigging Succeeded Could Prove Expensive to Banks Facing Litigation, Dana Cimilluca and Jean Eaglesham, *Wall Street Journal*, December 2012

Banks Facing New Wave of Mortgage Lawsuits, Forrest Jones, *Moneynews*, December 2012

Where There's a Will, There's a Way, *The American Lawyer*, March 2012

The Great Gamble, *Global Competition Review*, March 2012

## PUBLICATIONS

"Umbrella Liability: Has Its Time Come?" by Michael D. Hausfeld and Irving Scher, *Competition Policy International* (October 25, 2020)

"Class Actions & Competition Law, An Overview Of EU and National Case Law," by Michael D. Hausfeld, Anthony Maton, David R. Wingfield, *Concurrences e-Competition Bulletin - Special Issue on Class Actions*

(August 27, 2020)

"In Defense of Class Actions: A Response to Makan Delrahim's Commentary on the UK Mastercard Case," by Michael D. Hausfeld, Irving Scher, and Laurence Sorkin, *Competition Policy International* (June 8, 2020)

"The Equitable Future of Intercollegiate Athletics," by Michael D. Hausfeld, Sathya S. Gosselin, Sarah D. LaFreniere, and Eduardo Carlo. *Competition Policy International*'s Antitrust Chronicle, (April 28, 2020)

"Litigating Indirect Purchasers Claims: Lessons for the EU from the U.S. Experience," by Michael D. Hausfeld, Irving Scher, and Laurence Sorkin. *Antitrust Magazine*, Fall 2017.

"Damage Class Actions After Comcast: A View from the Plaintiffs' Side," by Michael D. Hausfeld and Irving Scher. *Antitrust Magazine*, Spring 2016.

"Antitrust Class Proceedings – Then and Now," by Michael D. Hausfeld, Gordon C. Rausser, Gareth J. Macartney, Michael P. Lehmann, Sathya S. Gosselin, Research in Law and Economics (Vol. 26, 2014) (Recipient of Concurrences' 2015 Antitrust Writing Award for Private Enforcement (Academic) Category).

"The Business of American Courts in Kiobel v. Royal Dutch Petroleum." by Michael Hausfeld and Kristen Ward. *Jurist* - Sidebar, October 2012.

"Prosecuting Class Actions and Group Litigation." by Michael Hausfeld and Brian Ratner, et al., *World Class Actions,* Ch. 26., September 2012.

"Private Enforcement of Antitrust Law in the United States, A Handbook - Chapter 4: Initiation of a Private Claim." by Michael Hausfeld and Brent Landau, et al., 2012.

"The Importance of Private Competition Enforcement in Europe." by Michael D. Hausfeld and Swathi Bojedla. *Hackney Publications: Concussion Litigation Reporter,* Vol. 1, No. 1, July 2012.

"CAT-astrophe: The Failure of "Follow-On" Actions." by Michael D. Hausfeld, Brent W. Landau, Sathya S. Gosselin. American Bar Association's International Cartel Workshop, February 2012.

"Private Enforcement in Competition Law: An Overview of Developments in Law and Practice in the US and Europe." by Michael D. Hausfeld and Ingrid Gubbay, Bergamo University, July 2011.

"The Contingency Phobia - Fear Without Foundation," *Global Competition Litigation Review,* Issue 1, January 2011.

"Competition Law Claims – A Developing Story." *The European Antitrust Review* 2010.

"Initiation of a Private Claim," International Handbook on Private Enforcement, 2010.

"The United States Heightens Plaintiff's Burden of Proof on Class Certification: A Response." *Global Competition Litigation Review,* Volume 2 Issue 4/2009.

"Global Enforcement of Anticompetitive Conduct." *The Sedona Conference Journal,* Fall 2009.

"Observations from the Field: ACPERA's First Five Years." *The Sedona Conference Journal,* Fall 2009.

"Twombly, Iqbal and the Prisoner's Pleading Dilemma." *Law360,* October 22, 2009.

"The Value of ACPERA." *Law360,* June 2, 2009.

"Collective Redress for Competition Law Claimants." *The European Antitrust Review* 2008.

"Managing Multi-district Litigation." *The Antitrust Review of the Americas* 2008.

"A Victim's Culture." *European Business Law Review,* 2007.

# HAUSFELD

www.hausfeld.com



 **PARTNER**

 **SAN FRANCISCO**

 **+1 (415) 633-1908**

 **mjones@hausfeld.com**

# Megan E. Jones

### Experience

Megan Jones (@MeganJonesEsq) is a California Bay Area-based lawyer who focuses on recovering damages for companies who are victims of antitrust cartels for price-fixing, tying, restraints of trade, and other competition violations. With 19 years of experience in antitrust class actions, Megan is trusted by courts to lead large and complex antitrust cases:

1. *In re Local TV Advertising Litigation* (Sole lead counsel)

2. *In re Diisocyanates Antitrust Litigation* (Co-Lead counsel)

3. *In re DPP Beef Antitrust Litigation* (Co-Lead Counsel)

4. *In re Blue Cross Blue Shield Antitrust Litigation* (Plaintiff Steering Committee)

5. *In re Marriott International Customer Data Security Breach Litigation* (Plaintiff Steering Committee)

Megan is known for her creativity on settlement issues.[1] For example, in *In re Municipal Derivatives Antitrust Litigation* (S.D.N.Y.), Megan was co-lead counsel and recovered over $220 million dollars for a class of cities and municipalities. Notably, Megan co-negotiated several of the settlements obtained in that class with Select State Attorneys General, who trusted class counsel to administer notice and the claims process for the joint proceeds. The American Antitrust Institute recognized this unusual public/private partnership, and awarded Megan (and her team) the "Outstanding Antitrust Litigation Achievement in Private Law Practice" in 2016. Other settlements Megan negotiated include:

- *In re Municipal Derivatives Antitrust Litigation* – Resulted in over $200 million on behalf of the class.

- *In re Polyester Staple Antitrust Litigation* – Resulted in $63.5 million on behalf of class.

- *In re Compact Disc Antitrust Litigation* – Resulted in over $50 million on behalf of class.

- *In re Rubber Chemicals Antitrust Litigation* – Resulted in over $100 million on behalf of class.

- *In re MMA Antitrust Litigation* – Resulted in over $20 million on behalf of class.

- *In re EPDM Antitrust Litigation* – Resulted in $81 million on behalf of class.

- Megan was also involved in the negotiation of a $300 million global settlement with Bayer (which resolved three cases: EPDM, Rubber Chemicals and NBR), and drafted the innovative settlement agreement itself.

---

1   https://podcast.ourcuriousamalgam.com/episode/48-how-do-you-get-to-the-final-yes/
(ABA's Antitrust Section podcast, featuring Megan Jones, May 2020).

As one of the few women in the plaintiffs' bar inducted into the Legal 500 Hall of Fame for continued excellence in litigation, Megan has a national reputation for excellence that has been obtained the old-fashioned way, by trying to be the best team member in the trenches. See "Female Powerbrokers Q&A: Hausfeld's Megan Jones," April 30, 2014; see also Chambers and Partners' description of Megan as "personable, very smart and capable." She is known for creating effective multi-firm teams that focus with laser-like precision on the specific litigation strategy designed with input from diverse sources. She is also known for her relentless pursuit of the facts, and is well-regarded for her electronic discovery prowess (speaking and training others on best practices via the prestigious Sedona Conference®).

Whether leading enormous cases with 20+ defendants or small regional matters, Megan masters the intricacies of economic markets and works with experts to develop economic models for her clients' recovery, which support class certification motions, settlement negotiations, and discovery efforts.

Megan has been named a "California Litigation Star" and a "Local Litigation Star" for Antitrust/Competition by Benchmark Litigation (2021). Peers noted to Benchmark that Megan is "a leader at Hausfeld now."

Awards over the past year include:

* *W@Competition* named Megan to its inaugural "40 in Their 40s" list of notable women competition professionals (2019)

* Who's Who Legal named Megan a 'Thought Leader' in the Competition Plaintiff arena (2019-Present), stating; "The 'fantastic' Megan Jones is a distinguished figure in the North American competition market. Sources describe her as a 'future leader' of the field who 'is blazing a trail for younger women in the profession, and is highly respected from all contingents."

* Megan was included in the "*Legal 500* Hall of Fame," which highlights individuals who have received constant praise from their clients for continued excellence. The Hall of Fame highlights, to clients, the law firm partners who are at the pinnacle of the profession.

* Megan was named to the prestigious *Lawdragon* list of the 500 "Leading Lawyers in America" (2019 - Present)

Chambers and Partners ranked Megan as one of just five lawyers in Band 2 for Antitrust: Mainly Plaintiff - California (2019 - Present), and Band 2 for Antitrust: Plaintiff - Nationwide (2020). In 2020, Chambers noted, "Megan Jones deftly represents plaintiffs in significant anticompetitive disputes. She has expertise in cases concerning price fixing and trade restraints." The publication also noted that "Megan Jones is commended for her expertise in representing corporate plaintiffs in cartel recovery actions. She is further noted for her work leading large class action cases. Sources state that 'Megan is a very good, diligent lawyer who considers the big picture.'"

Megan prides herself on the ability to create and lead teams of lawyers of any size (having organized teams of 80 law firms, in one particular case) to create a record that either wins the case, drives settlement, and /or obtains a decision upheld at the appellate level. Part of Megan's success is due to her belief in using diverse and inclusive litigation teams, which she has helped foster over a decade by creating and running a conference for women antitrust lawyers to exchange best practices.

Megan is both reasonable and relentless. She carefully chooses her legal battles, and eschews gamesmanship for the sake of gamesmanship. Mindful of scarce judicial resources in complex antitrust cases that can last years, she develops a strategy at the outset about what particular legal issues

need judicial attention and clears the board of the rest. She is highly respected from all contingents because she brings that same strategy to settlements, using her almost two decades of negotiation experience from being at Hausfeld to craft settlement strategy and terms in even the most difficult cases. Just one example of this creativity is that in one of her cases, Megan worked with and joined Select State Attorneys General to co-negotiate and jointly settle a class claim on behalf of certain states as well as the civil litigation class.

**Clients**

Companies that buy things to make things have typically bought cartelized products, and Megan helps them recover damages for such purchases. Able to analyze a corporation's purchases around the world, Megan can then offer a panoply of options for recovery in multiple jurisdictions. She emphasizes the non- litigation options a corporation has when appropriate, and she is as adept at settling a case in a conference room as she is in a courtroom.

## PRACTICE AREAS

### Antitrust / Competition

- *In re Blue Cross Blue Shield Antitrust Litigation* – In which Megan has been appointed to the Plaintiffs' Steering Committee.

- *In re Local TV Advertising Antitrust Litigation* – In which Megan has been appointed Lead Counsel.

- *In re Diisocyanates Antitrust Litigation* – In which Megan has been appointed Co-lead Counsel.

- *In re Municipal Derivatives Antitrust Litigation* – Resulted in over $200 million on behalf of the class.

- *In re Polyester Staple Antitrust Litigation* – Resulted in $63.5 million on behalf of class.

- *In re Compact Disc Antitrust Litigation* – Resulted in over $50 million on behalf of class.

- *In re Rubber Chemicals Antitrust Litigation* – Resulted in over $100 million on behalf of class.

- *In re MMA Antitrust Litigation* – Resulted in over $20 million on behalf of class.

- *In re EPDM Antitrust Litigation* – Resulted in $81 million on behalf of class.

- Megan was also involved in the negotiation of a $300 million global settlement with Bayer (which resolved three cases: EPDM, Rubber Chemicals and NBR), and drafted the innovative settlement agreement itself.

### Commercial Contingency

### Sports and Entertainment

WHAT OTHERS SAY

- Megan was named a "California Litigation Star" and a "Local Litigation Star" for Antitrust/Competition by *Benchmark Litigation* (2021)

  ○ Peers noted to *Benchmark* that Megan is "a leader at Hausfeld now."

- *Chambers and Partners* ranked Megan as one of just five lawyers in Band 2 for Antitrust: Mainly Plaintiff - California (2019 - Present), and Band 2 for Antitrust: Plaintiff - Nationwide (2020)

  ○ In 2020, *Chambers* noted, "Megan Jones deftly represents plaintiffs in significant anticompetitive disputes. She has expertise in cases concerning price fixing and trade restraints." The publication also noted that "Megan Jones is commended for her expertise in representing corporate plaintiffs in cartel recovery actions. She is further noted for her work leading large class action cases. Sources state that 'Megan is a very good, diligent lawyer who considers the big picture.'"

  ○ *Chambers* has previously described her as "personable, very smart and really capable," and "well respected at the California Bar for her plaintiff-side antitrust practice."

- Megan was added to "*The Legal 500* Hall of Fame," which highlights individuals who have received constant praise from their clients for continued excellence. The Hall of Fame highlights, to clients, the law firm partners who are at the pinnacle of the profession (2020)

- Megan has consistently been named a "Leading Lawyer" in Civil Litigation/Class Action: Plaintiff, and in Plaintiffs' Representation for Antitrust by *The Legal 500* (2012-Present)

- Megan has been named a *Super Lawyer* in Antitrust year after year (2012-Present)

- Megan was named to the prestigious *Lawdragon* list of the 500 "Leading Lawyers in America" (2019 - Present), and to the *Lawdragon* list of "Leading Plaintiff Financial Lawyers" (2019-Present)

- *Who's Who Legal* named Megan a 'Thought Leader' in the Competition Plaintiff arena (2019-Present), stating; "The 'fantastic' Megan Jones is a distinguished figure in the North American competition market. Sources describe her as a 'future leader' of the field who 'is blazing a trail for younger women in the profession, and is highly respected from all contingents."

- *W@Competition* named Megan to its inaugural "40 in Their 40s" list of notable women competition professionals (2019)

- Megan was honored by the *American Antitrust Institute* with the award for "Outstanding Antitrust Litigation Achievement in Private Law Practice" as part of the *In re Air Cargo Antitrust Litigation* case team (2016)

- Megan was named to "The International Who's Who of Competition Lawyers & Economists 2014" by the *Global Competition Review* and *Who's Who Legal*

- Megan has been profiled as a "Female Powerbroker" in her field by *Law360* (2014)

- In 2014, Megan was selected to speak at the American Bar Association's 8th National E-Discovery Institute, where nationally- acclaimed e-discovery professionals convened for a full day to analyze and discuss the latest developments and best strategies for managing the e-discovery process.

- The *Global Competition Review* named Megan one of the "100 Successful Women in Antitrust" globally (2013)

- Megan was named a "Rising Star" in Competition Law by *Law360* (2012)

- Megan was named as one of just fourteen female "Equity Champions" by Burford Capital, a leading global finance and investment management firm focused on law, which launched The Equity Project in 2018. This is a groundbreaking initiative designed to help close the gender gap in law by providing an economic incentive for change through a $50 million pool of capital earmarked for financing commercial litigation and arbitration matters led by women.

- Megan has been deemed one of the "nation's best lawyers in an MDL" and a "professional problem solver," Transcript of August 30, 2018 Hearing at 23, *In re Blue Cross Blue Shield Antitrust Litig.*, No. 2:13-cv-20000 (N.D. Ala.).

### EDUCATION

University of North Carolina at Chapel Hill School of Law, J.D., 1999

North Carolina State University, *magna cum laude*, B.A., 1995

### BAR ADMISSIONS

California

District of Columbia

North Carolina

### AFFILIATIONS & MEMBERSHIPS

Invited Member, Leadership team of the Global Private Litigation Committee of the ABA Antitrust Section (2019-Present)

Founder of Women Antitrust Plaintiffs' Attorney Network Group

Member, The Sedona Conference®, which is composed of leading jurists, lawyers, experts, academics and others, at the cutting edge of issues in electronic discovery.

Vice Chair, ABA Antitrust Section's Global Private LItigation Committee

Vice Chair, ABA Antitrust Section's Communications and Digital Technology Industries Committee

Vice Chair, ABA Antitrust Section's Media and Technology Committee

## NEWS & PRESS

"Lawyer Limelight: Megan Jones of Hausfeld" *Lawdragon*, September 26, 2019

Megan has been profiled as a "Female Powerbroker" in her field by *Law360* (2014)

"Hausfeld, Hausfeld, Hooray," Legal Biznow, April 6, 2012

*Global Competition Review* profiles Megan Jones as one of their "100 Women In Antitrust"

"A panel of experts discuss e-discovery horror stories, vetting vendors and expectations for service providers in terms of competency and ethics", Law Technology News, May 19, 2014 (Quoted)

"Q&A: Megan Jones on corporations as plaintiffs", *Global Competition Review*, March 2014.

Megan Jones joined Judge Francis and Robert Trenchard (Wilmer Hale) in a podcast about the "Latest Trends in Cost-Shifting in Electronic Discovery," September 2010.

## PUBLICATIONS

Megan E. Jones, "E-Discovery Trend Alert: A Second State Has Approved a Technology CLE Requirement for Its Lawyers," Hausfeld Competition Bulletin (Winter 2018-19), reprinted in Lexology, February 2019

Megan E. Jones, "A Litigator's Approach to Pricing Algorithms Cases: What Will We Need to Know?" ABA Global Private Litigation Bulletin, Issue 13, March 2019

Megan E. Jones, "Litigator 101," an ABA series regarding best practices in drafting discovery

Megan E. Jones, "All I Really Need to Know About Antitrust Settlements, I Learned in Kindergarten," ABA Criminal & Cartel Practice Committee Newsletter, March 2011

Megan E. Jones, "E-Discovery Today: The Fault Lies Not In Our Rules..." *The Federal Courts Law Review* (FCLR), Vol. 4, Issue 2, 2011

Megan E. Jones, Contributor, "E-Discovery Today: The Fault Lies Not In Our Rules..." Duke White Paper, 2010

Megan E. Jones, "Giving Electronic Discovery a Chance to Grow Up," *The National Law Journal*, December 15, 2009

Megan E. Jones, "Observations from the Field: ACPERA's First Five Years," *The Sedona Conference Journal*, Fall 2009

"Antitrust Law Developments," 7th Edition, co-author of chapter on Non-Price Vertical Restraint, published by the American Bar Association, 2008

Co-author, "Navigating the Vendor Proposal Process: Best Practices for the Selection of Electronic Discovery Vendors," published by The Sedona Conference®, June 2007

Co-author, "The Sedona Conference Glossary: E-Discovery and Digital Information Management," (2nd edition), December 2007

### PRESENTATIONS & SPEECHES

Panelist, "Gimme a Break: Are ACPERA Benefits Obtainable?" American Bar Association Virtual Panel, June 10, 2020

Panelist, "Chair at the Table: Diversity in Litigation," ABA Antitrust Law Section Virtual Spring Meeting, April 27, 2020

Faculty, The Sedona Conference 2020 eDiscovery Negotiation Training (eDNT) program, February 2020

Guest Speaker, " How Do You Get to The Final Yes? The Art and Science of Settling Antitrust Class Actions," ABA Section of Antitrust Law's weekly podcast, *Our Curious Amalgam* January 31, 2020.

Speaker, "MDL Settlements: Common Pitfalls and Helpful Practices," JPML Judges' Conference, October 29, 2019

Speaker, "ESI Tips and Tricks: What Tools Should be in Your Toolbox," Mass Torts Made Perfect Seminar, October 22, 2019

Speaker, "Return of the Octopus? Has Big Tech Gotten Too Big?" Association of Business Trial Lawyers Panel, September 17, 2019

Speaker, "Practical Cooperative Strategies," The Sedona Conference Institute's 2017 eDiscovery Negotiation Training, February 8, 2017

Speaker, Women in Antitrust Litigation Panel, American Bar Association, March 9, 2015

Speaker, 8th Annual National Institute on E-Discovery, May 16, 2014

Speaker, "Successfully Navigating Hazardous Waters: The Second Annual Conference on Transatlantic Deals and Disputes," American Bar Association and German Bar Association, Munich, June 2011

Speaker, Class Action Symposium, Georgetown Law Center, April 11, 2011

Speaker, "The Life of an International Cartel: A Six-Part Practical Series, Part III: Follow-On Civil Price Fixing," American Bar Association teleconference, February 4, 2011

Speaker, American Bar Association's *Antitrust Masters Course V*, September 30, 2010

CLE Speaker, "E-Discovery in Antitrust Lawsuits and FTC/DOJ Investigations: Managing and Producing Electronic Information Under the Amended Federal Rules," March 2009

# HAUSFELD



 **PARTNER**

 **WASHINGTON, DC**

 **+1 (202) 540-7200**

 **sbojedla@hausfeld.com**

# Swathi Bojedla

### Experience

Swathi's career has spanned a wide range of practice areas at Hausfeld. From initial case investigations through trial, she has represented the firm's clients in all aspects of litigation. Her work has encompassed some of the highest-profile class action sports and antitrust cases in recent years, and she has been involved in the recovery of over $500 million in settlement awards on behalf of the firm's clients.

Prior to joining Hausfeld, Swathi worked on several presidential campaigns and in the U.S. Senate, both for then-Senator Hillary Rodham Clinton and as a law clerk to the U.S. Senate Judiciary Committee.

### Clients

Swathi has litigated a variety of other cases across the legal spectrum, securing favorable results for her clients. In the antitrust realm, she has represented clients in the health insurance, transportation, and financial services sectors seeking to recover damages from price-fixing and market allocation cartels. As an avid sports fan, Swathi has relished the opportunity to represent current and former athletes as they seek fair treatment for the dedication they put into the game.

Swathi has also represented numerous financial institutions across the country who have suffered damages as a result of data breaches at retailers including Target, Home Depot, Kmart, and Wendy's. Through her work on these cases, she has developed an expertise in data breach law and card brand recovery processes, and has helped to design and implement unique settlement frameworks in this developing area of law.

### PRACTICE AREAS

#### Antitrust / Competition

- *In re Blue Cross Blue Shield Antitrust Litigation* – In one of the largest and most complex antitrust class action cases ever litigated, Swathi represents tens of millions of subscriber plaintiffs alleging higher premiums and loss of competition in the market for health insurance due to a conspiracy among 36 insurer defendants to allocate geographic territories.  In 2018, the subscriber plaintiffs achieved summary judgment on the application of a per se standard to the alleged conduct, streamlining the case for class certification and trial.

- *In re Municipal Derivatives Litigation* – Swathi worked as part of a team that secured nearly $250 million in settlements for a class of municipalities

affected by alleged bid-rigging in the market for municipal bonds.

- *In re Air Cargo Shipping Services Antitrust Litigation* – Swathi joined the trial team to prepare for trial against the final four defendants in a worldwide conspiracy to fix fuel surcharge on air cargo; her work assisted in driving settlements with the final defendants totaling nearly $200 million. In 2016, she was recognized for her work in this, and the above-mentioned Municipal Derivatives case, at the *American Antitrust Institute* Enforcement Awards, where she won two of the three awards for "Outstanding Antitrust Litigation Achievement in Private Law Practice."

### Sports and Entertainment

- *Dryer et al. v. National Football League* – Swathi represented a class of retired NFL players whose names, images, and likenesses were being used in NFL Films features. She was involved in negotiating a $50 million settlement agreement, which created a Greater Good Fund to provide health and welfare programs to former NFL players and also established a licensing agency, in partnership with IMG, to help former players market their names, images, and likenesses. After this novel settlement was reached, Swathi continued to advise the Court-appointed Board of Directors on implementation of the settlement agreement.

- *O'Bannon v. NCAA* – Swathi represented a class action on behalf of current and former Division I men's basketball and FBS football players against the NCAA and its member institutions based on rules foreclosing athletes from receiving compensation for the use of their names, images, and likenesses. In 2014, plaintiffs completed a three-week bench trial in which Swathi was part of a trial team that successfully obtained class injunctive relief allowing college athletes to receive compensation for their NIL rights, a landmark victory for college athletes.

### Mass Torts and Public Health Threats

- *Bowman et al. v. St. Joseph's Medical Center et al.* – Swathi participated in a mass tort action arising from the placement of unnecessary stents in patients at a Baltimore-area hospital, which culminated in a month-long jury trial in Maryland state court and a global resolution compensating over 240 affected patients.

### Deceptive Business Practices and Consumer Protection

### WHAT OTHERS SAY

- *Lawdragon* named Swathi as one of its "Top Plaintiff Financial Lawyers" (2020)

- Swathi was selected to be an Associate Fellow of the Litigation Counsel of America (2019-Present)

- Swathi has been consistently named a "Rising Star" by *Super Lawyers* (2016-Present)

- The *American Antitrust Institute* honored Swathi, as part of the *In re Municipal Derivatives Antitrust Litigation* case team, with its award for "Outstanding Antitrust Litigation Achievement in Private Law Practice" (2016)

- Swathi has been honored by *Law360* as a "Rising Stars Under 40" in Sports Law (2016)

- The *Washington Business Journal* named Swathi as one of the top "Minority Business Leaders" (2016)

- The *American Antitrust Institute* honored Swathi, as part of the *O'Bannon v. NCAA* case team, with its award for "Outstanding Antitrust Litigation Achievement in Private Law Practice" (2015)

- Swathi was honored by the *Global Competition Review*, as part of the *O'Bannon v. NCAA* case team, taking home the award for "Litigation of the Year - Non-Cartel Prosecution" (2015)

### EDUCATION

Georgetown University Law Center, J.D., 2011

Brown University, B.A., Human Biology & Public Policy, 2007

### BAR ADMISSIONS

District of Columbia

New York

District Court for the District of Columbia

District Court for the Southern District of New York

District Court for the District of Colorado

Tenth Circuit Court of Appeals

### AFFILIATIONS & MEMBERSHIPS

Member, *Law360* Sports Editorial Advisory Board (2019)

Member, Brown University Women's Leadership Council (2016-present)

Changing Perceptions, Board of Directors (2016-present)

Clerk, U.S. Senate Judiciary Committee

Chair, Brown University Alumni Interviewing Program, Washington, D.C. (2012-present)

Managing Editor, *Georgetown Journal of Law and Public Policy* (2010-2011)

Prior member of Georgetown Law's Institute for Public Representation, a civil rights clinic, where she worked on Title VII litigation in the D.C. District Court.

Brown University Women's Leadership Council and prior D.C. Area Co-Chair for the school's admissions interviewing program.

Prior member, Board of Directors for the D.C. non-profit Changing Perceptions, which focuses on providing professional and personal support to formerly incarcerated citizens.

## NEWS & PRESS

"Rising Star: Hausfeld's Swathi Bojedla", *Law360* (Apr. 27, 2016)

"Minority Business Leader Awards: Swathi Bojedla," *Washington Business Journal* (Feb. 26, 2016)

## PUBLICATIONS

Swathi Bojedla and Kevin Wang, *Third Circuit's Suboxone Class Certification Affirmance Clarifies Commonality and Predominance Requirements*, Hausfeld Competition Bulletin, reprinted in Lexology (August 2020)

Swathi Bojedla, *Aerotec Int'l v. Honeywell Int'l: An Antitrust Primer for Aftermarket Issues*, Hausfeld Competition Bulletin, reprinted in Lexology (November 2016)

Swathi Bojedla, *Consumers Strike Out: Time Warner Cable Defeats Challenge to Rate Hikes for Unwanted Sports Content*, Trade, Sports & Professional Associations Newsletter (Spring 2015)

Swathi Bojedla, *Going to Trial as an Associate*, ABA Trial Practice Committee: Trying Antitrust Newsletter (Fall 2015)

Swathi Bojedla, *Is Major League Baseball's Antitrust Exemption in Jeopardy?*, ABA Antitrust Section Media & Technology E-Bulletin, Vol. 1, Iss. 3 (2013)

Michael Hausfeld and Swathi Bojedla, *The NFLPA's Potential Legal Liability to Former Players for Traumatic Brain Injury*, Concussions Litigation Reporter, Vol. 1, No. 1 (2012)

## PRESENTATIONS & SPEECHES

Moderator, "Practicing as a Sports Lawyer: Antitrust and Beyond," ABA Section of Antitrust Law – Trade, Sports and Professional Associations Committee Virtual Panel (July 9, 2020)

Moderator, "Practicing as a Sports Lawyer: Antitrust and Beyond," ABA Section

of Antitrust Law – Trade, Sports and Professional Associations Committee Panel (Sept. 5, 2019)

Panelist, "Uncommon Law: An Alumni Conversation," Brown University Alumni Association Panel (July 23, 2019)

Speaker, "Inside O'Bannon v. NCAA," Legal Talk Network podcast (Oct. 21, 2015)

Speaker, "Preparing for an Antitrust Trial as an Associate," ABA Section of Antitrust Law (Aug. 24, 2015)

Speaker, "The Sports Report: Sports, Consumer Protection and Antitrust – What's Hot in 2015!," ABA Trade, Sports and Professional Associations (June 16, 2015)

# HAUSFELD



 **PARTNER**

 **SAN FRANCISCO**

 **+1 (415) 633-1908**

 **mlehmann@hausfeld.com**

# Michael P. Lehmann

### Experience

In 1978, far before joining Hausfeld, Michael joined the Furth, Fahrner & Mason law firm and began practicing antitrust and business litigation. He was at that firm until 2007; it was the Furth & Lehmann firm when he left, with him having achieved the title of Managing Partner. In 2007, Michael left the Furth firm to set up the San Francisco office of Cohen Milstein, Hausfeld & Toll, where he was a partner. When the separate Hausfeld firm was created in November of 2008, he left Cohen Milstein and joined Hausfeld as one of the founding partners and has worked there ever since.

Over the past 40 years, Michael played significant roles (including several co-lead positions) on the plaintiffs' side in major antitrust class actions, such as the *Brand Name Prescription Drug Antitrust Litigation*, the *Dynamic Random Access Memory (DRAM) Antitrust Litigation*, the *Static Random Access Memory (SRAM) Antitrust Litigation*, the *Cathode Ray Tube (CRT) Antitrust Litigation*, the *TFT-LCD (Flat Panel) Antitrust Litigation*, the *Cosmetics Antitrust Litigation*, the *Graphics Processing Units (GPU) Antitrust Litigation*, the *Compact Disc Minimum Advertised Price Antitrust Litigation*, the *Publication Paper Antitrust Litigation*, the *High Pressure Laminates Antitrust Litigation*, the *Bristol Bay Salmon Fishery Antitrust Litigation*, and the *Intel Microprocessor Antitrust Litigation*.

### Clients

During the first part of his career at the Furth firm, Michael did extensive defense work for a varied roster of clients, such as the Santa Fe Southern Pacific Railway Co., Sprint Communications Co., Kellogg Co., Grolier Inc., News Inc., Columbia Pictures, Georgia-Pacific Co., and William Sullivan (former owner of the New England Patriots). He was among those representing these entities as either defendants in class action antitrust litigation, plaintiffs in individual antitrust cases, defendants in proceedings brought by the Federal Trade Commission, petitioners in proceedings before the United States Food and Drug Administration, or respondents in arbitration proceedings before the International Chamber of Commerce. During this phase of his career, Mr. Lehmann helped Kellogg defeat a charge by the FTC that it and other ready-to-eat cereal companies engaged in a "shared monopoly" and wrote submissions to the FDA that caused it to permit certain types of health claims on food labels.

### PRACTICE AREAS

- *In re Packaged Seafood Products Antitrust Litigation*

- *In re Inductors Antitrust Litigation*

- *In re Disposable Contact Lens Antitrust Litigation*

- *In re Aftermarket Automotive Lighting Products Antitrust Litigation*

- *In re Municipal Derivatives Antitrust Litigation*

- *In re Transpacific Passenger Air Transportation Antitrust Litigation*

- *In re International Air Transportation Surcharge Antitrust Litigation*

- *In re Domestic Airline Travel Antitrust Litigation*

- *In re Blue Cross & Blue Shield Antitrust Litigation*

- *NCAA Student-Athlete Name & Licensing Litigation*

- *In re Optical Disk Drive Antitrust Litigation*

- *In re Fresh & Process Potatoes Antitrust Litigation*

- *In re Rail Freight Fuel Surcharge Antitrust Litigation*

- *In re Generic Drugs Antitrust Litigation*

- *In re Diisocyanates Antitrust Litigation*

- *In re Chicago Board Options Exchange Volatility Index Antitrust Litigation*

- *In re Farm-Raised Salmon and Salmon Products Antitrust Litigation*

## WHAT OTHERS SAY

- *Lawdragon* named Michael as one of its "Top Plaintiff Financial Lawyers" (2019-Present)

- Michael has been named a "Recommended Lawyer" for Antitrust - Civil Litigation/Class Actions - Plaintiff by *The Legal 500* (2019)

- Michael has been recognized consistently as a top Antitrust Litigation attorney in San Francisco by *Super Lawyers* (2011-Present)

- *Best Lawyers* has consistently recognized Michael as a top attorney in Northern California for Antitrust Law (2013-Present)

- *Who's Who Legal* recognized Michael as a Global Leader in the Competition Plaintiff space (2019)

- *Global Competition Review* honored Michael with the award for "Litigation of the Year – Cartel Prosecution" as part of FOREX case team (2015)

- Michael was the recipient of a Martindale-Hubbell Judicial AV Preeminent rating

### EDUCATION

Hastings College of the Law, J.D., 1977

University of California at Berkeley, A.B., 1974

### BAR ADMISSIONS

California

### AFFILIATIONS & MEMBERSHIPS

Member, American Bar Association

### NEWS & PRESS

DOJ Charges Against CDR Reaffirm Allegations in Muni Bond Antitrust Civil Complaint. October 30, 2009.

Hausfeld LLP Files Lawsuit Against the NCAA on Behalf of Former Student Athletes. July 21, 2009.

# HAUSFELD



 **PARTNER**

 **NEW YORK**

 **+1 (646) 357-1100**

 **smartin@hausfeld.com**

# Scott Martin

### Experience

Scott is co-chair of the firm's Antitrust practice group. Scott's perspective is a unique one, as prior to joining the firm in 2015, he played major roles in defending antitrust and class action cases as a partner in two leading international law firms. Over the course of more than 25 years, he also has negotiated resolutions of numerous regulatory investigations and actions on behalf of corporate clients. Scott's practice extends to bench and jury trials in both federal and state courts, complex federal multidistrict actions, class actions involving direct and indirect purchasers, *parens patriae* cases, FTC and DOJ investigations as well as other regulatory actions, and *qui tam* litigation.

### Clients

Scott has two decades of counseling experience across a broad range of industries on pricing, distribution, competitive intelligence, joint ventures, and non-compete agreements, among other competition issues, and has designed antitrust compliance programs for some of the world's largest corporations.

### PRACTICE AREAS

#### Antitrust / Competition

- *In re National Football League's "Sunday Ticket" Antitrust Litigation* –  Scott serves as co-lead counsel on behalf of businesses against DirecTV, a leading provider of digital entertainment in the United States, and the National Football League ("NFL"), alleging that the NFL's exclusive agreement to allow DirecTV to broadcast out-of-market Sunday NFL football games violated the antitrust laws.

- *In re Libor-Based Financial Instruments Antitrust Litigation* – Class action lawsuit alleging a global conspiracy by some of the world's largest financial institutions to manipulate LIBOR. The manipulation of LIBOR, which is the primary benchmark for short-term interest rates for trillions of dollars-worth of financial transactions worldwide, is alleged to have caused billions of dollars in damage to municipalities, businesses, and investors.

- *In re Blue Cross Blue Shield Antitrust Litigation* – In one of the largest and most complex antitrust class action cases ever litigated, Scott represents tens of millions of subscriber plaintiffs alleging higher premiums and loss of competition in the market for health insurance due to a conspiracy among 36 insurer defendants to allocate geographic territories.  In 2018, the subscriber plaintiffs achieved summary judgment on the application of a per se standard to the alleged conduct, streamlining the case for class

certification and trial.

- *Core-Mark NY CMSA Litigation* – Multi-plaintiff action asserted against leading distributors of cigarettes and other consumer goods in New York under the Cigarette Marketing Sales Act.

### Antitrust Counseling and Compliance

- Scott regularly presents compliance talks to businesspersons at industry-leading apparel, industrial, retailing, and distribution clients.

-  Scott currently is providing competition advocacy before the Federal Trade Commission and merger advice to a Fortune 100 company.

### Environmental Threats

- *SCWA v. Dow, et al. and SCWA v. 3M Company, et al.* – Scott is currently representing the largest municipal groundwater provider in the United States for recovery in various water contamination matters.

### Public Entity

### WHAT OTHERS SAY

- Scott has been ranked continuously by *Chambers & Partners* as a leading lawyer since 2006 and is currently listed in Band 1 for Antitrust: Mainly Plaintiff (NY)

  - *Chambers* noted, "Cochair of the antitrust group, Scott Martin lends plaintiff clients his cutting-edge expertise in antitrust litigation honed over years of defense-side representation. He regularly appears in state and federal jury and bench trials in the most complex of matters." ( *Chambers,* 2020)

- *The Legal 500* identifies Scott as a "Recommended Lawyer" who is "friendly, engaging, and spot-on." (2015-Present)

  - "Scott Martin is a pleasure to work with. He is extremely polished, an expert in the field and a pleasure to work with." (*The Legal 500*, 2020)

- Scott has been recognized by the *Best Lawyers in America* for Antitrust Law and for Litigation – Antitrust every year since 2012. A past client commented to *Best Lawyers*, "I was extremely impressed with his knowledge and attentiveness as well as his ability to truly enjoy servicing his client in a productive and cost-effective manner."

- Scott was honored by the *American Antitrust Institute* with the award for "Outstanding Antitrust Litigation Achievement in Private Law Practice" as part of the *In re Air Cargo Antitrust Litigation* case team (2016).

- *International Who's Who of Competition Lawyers and Economists*, *Lawdragon*, *International Who's Who of Business Lawyers*, *Super Lawyers*, and others reflect recognition of Scott's work by his peers.

- Clients, colleagues, and adversaries have referred to Scott in print variously as a "terrifically talented and surefooted" litigator" and "an astute operator who always adds value to proceedings" while also serving as a "business-oriented lawyer who looks to see what the overall issues are and determines how best to approach the representation of those interests, including common sense approaches to exit strategies where feasible."

### EDUCATION

Stanford Law School, J.D., 1990

Stanford University, A.B., with honors, 1987

### BAR ADMISSIONS

New York

District of Columbia

Supreme Court of the United States

Numerous Federal District and Circuit Courts

### AFFILIATIONS & MEMBERSHIPS

Antitrust Law Section Delegate to the ABA House of Delegates (2020-21)

Fellow, American Bar Foundation

Fellow, Litigation Counsel of America

Secretary and Communications Officer, American Bar Association, Antitrust Law Section

- Previous positions include: Council member, Chair of Trial Practice Committee, Chair of Civil RICO Committee, Chair of Global Private Litigation Conference, and Editorial Board of Antitrust Law Developments, among others)

Executive Committee, New York State Bar Association, Antitrust Section

Editorial Board (Competition), *Law360* (2012-2018)

Treasurer and Board of Directors member, WHEDco (leading Bronx non-profit housing, educational and community development organization)

## NEWS & PRESS

"Settlement Practice from Both a Plaintiff and Defense Perspective, " Chapter, *American Antitrust Institute Handbook on Private Enforcement of Competition Law* (U.S. Edition), 2012, co-author with Joseph Tobacco

After American Needle, Is Everything Old New Again? *Competition Law360*, August 4, 2010

"Can Anyone Keep a Secret Anymore? Beware the differing privilege regimes in the global environment," *New York Law Journal*, November 16, 2009

"The linkLine Decision: Section 2 Gets Squeezed Further, " *GCP: The Online Magazine for Global Competition Policy*, April 2009

"Antitrust Injury in Robinson-Patman Cases: What's Left?, " *GCP: The Online Magazine for Global Competition Policy*, November 2008

"One Year Post-'Twombly,' Trends Emerge, " *New York Law Journal*, August 25, 2008

Chapter, "Litigating International Antitrust Cases, " J. von Kalinowski, *Antitrust Counseling and Litigation Techniques*, 2007 and update

"A Rule Of Reason For Vertical Price Fixing - Part II, " *The Metropolitan Corporate Counsel*, Volume 15, No. 11, November 2007, co-author with Fiona A. Schaeffer

"A Rule Of Reason For Vertical Price Fixing - Part I, " *The Metropolitan Corporate Counsel*, Volume 15, No. 10, October 2007

"Antitrust in Distribution - Tying, Bundling and Loyalty Discounts, Resale Pricing Restraints, Price Discrimination - Part I, " *The Metropolitan Corporate Counsel*, Volume 14, No. 4, April 2006

Chapter, "Private Antitrust Litigation, " *Global Competition Review - Getting the Deal Through*, 2005

Chapter, "Advising Foreign Clients on US Antitrust Law, " *Asia Pacific Antitrust & Trade Review*, 2005

*Antitrust Adviser* (5th ed.), forthcoming, co-editor with Irving Scher

Chapter (Section 5 of the FTC Act), *Business Torts & Unfair Competition Handbook* (3d ed.)

Chapter (New York), *State Antitrust Practice and Statutes* (past three editions)

## PUBLICATIONS

### Books and Chapters

Co-author, "Settlement Practice from Both a Plaintiff and Defense Perspective," Chapter, *American Antitrust Institute Handbook on Private Enforcement of Competition Law*

(U.S. Edition), 2012

Author, Chapter, "Litigating International Antitrust Cases," J. von Kalinowski, *Antitrust Counseling and Litigation Techniques*, 2007 and update

Co-author, "Private Antitrust Litigation," Chapter, *Global Competition Review - Getting the Deal Through*, 2005

Co-author, "Advising Foreign Clients on US Antitrust Law," Chapter, *Asia Pacific Antitrust & Trade Review*, 2005

Co-editor, *Antitrust Adviser* (5th ed.) two-volume treatise

Co-author, Chapter (Section 5 of the FTC Act), *Business Torts & Unfair Competition*

Co-author, *Handbook* (3d ed.) Chapter (New York), *State Antitrust Practice and Statutes* (past three editions)

Contributor, *Competition Damages Actions in the EU: Law and Practice* (2d ed.)

### Articles

Co-author, "Cartel Damage Recovery: A Roadmap for In-House Counsel," *Antitrust Magazine*, Fall 2017 (Winner, *Concurrences* Writing Award)

Co-author, "SCWA Pursues Legal Action Against Companies Responsible for PFOS, PFOA and 1,4-Dioxane Contamination," *Lexology*, November 2017

Co-author, "Horizontal conspiracy complaints face different fates under Twombly "plausibility" standard," *Lexology*, October 2015

Author, "After *American Needle*, Is Everything Old New Again?" *Competition Law360*, August 4, 2010

Author, "Can Anyone Keep a Secret Anymore? Beware the differing privilege regimes in the global environment," *New York Law Journal*, November 16, 2009

Author, "The *linkLine* Decision: Section 2 Gets Squeezed Further," *GCP: The Online Magazine for Global Competition Policy*, April 2009

Author, "Antitrust Injury in Robinson-Patman Cases: What's Left?" *GCP: The Online Magazine for Global Competition Policy*, November 2008

Author, "One Year Post-'Twombly,' Trends Emerge," *New York Law Journal*, August 25, 2008

Co-author, "A Rule Of Reason For Vertical Price Fixing - Part II," *The Metropolitan Corporate Counsel*, Volume 15, No. 11, November 2007, co-author with Fiona A. Schaeffer

Author, "A Rule Of Reason For Vertical Price Fixing - Part I," *The Metropolitan Corporate Counsel*, Volume 15, No. 10, October 2007

Author, "Antitrust in Distribution - Tying, Bundling and Loyalty Discounts, Resale Pricing Restraints, Price Discrimination - Part I," *The Metropolitan Corporate Counsel, Volume 14, No. 4,* April 2006

PRESENTATIONS & SPEECHES

Panelist, "Honest Broker Or Advocate: Effective Expert Testimony," ABA Section of Antitrust Law Virtual Spring Meeting, April 2020

Panelist, "Competition Tort Claims Around the Globe," ABA Section of Antitrust Law Spring Meeting, March 2019

Speaker, "Competitor Collaborations: US and EU Joint Venture Law," ABA Section of Antitrust Law, April 2013

Speaker, "'Have I Got a Deal for You': Big Sellers, Big Issues," New York City Bar Association, January 2013

Moderator, "Discovery by Leaps and Bounds: Practical Issues in International Antitrust Cases," ABA Section of Antitrust Law, November 2012

Speaker, "*Comcast v. Behrend*: Rigorous Analysis – How Much Is Too Much?" New York State Bar Association (NYSBA) Antitrust Law Section, October 2012

Speaker, "Pricing Fundamentals: Pricing Tied to Other Offerings," ABA Section of Antitrust Law, February 2012

Speaker, "Settling Class Action Litigation," American Antitrust Institute 5th Annual Future of Private Antitrust Enforcement Conference, December 2011

Speaker, "Trying a Case Involving Mixed Vertical and Horizontal Restraints: The Legal, Economic and Practical Considerations," ABA Section of Antitrust Law, October 2011

Speaker, "International Cartel Enforcement in the Digital Age: Collection and Use of Evidence Beyond Borders," New York State Bar Association (NYSBA) Antitrust Law Section, January 2011

Speaker, "New York's Donnelly Act: Another Tool in the Chest?," NYSBA Antitrust Law Section and ABA Section of Antitrust Law, July 2010

Speaker, "Pricing Issues," PLI Antitrust Counseling & Compliance Seminar, February 2010

Speaker, "Robinson-Patman - Price Discrimination," Practising Law Institute (PLI) Advanced Antitrust Seminar: Distribution & Marketing, annually 2003-2009

Speaker, "Tying and Bundling -- Consumer-Friendly Offers or Exclusionary Conduct?" ABA Section of Antitrust Law, May 2009

Speaker, "Mastering the Discovery Process for the General Counsel: How to Master the Costs and Burdens of Federal Discovery," Incisive Media, November 2008

Speaker, "Bundled Discounts: Careful Practice in the Face of Unsettled Law," Ohio State Bar Association Antitrust Institute, November 2008

Speaker, "Antitrust Developments – A Busy Supreme Court Term Plus A Look at Joint Marketing Activities and Information Sharing," ABA Section of Environment, Energy and Resources, 21st Annual Petroleum Refining and Marketing Law Roundtable, October 2006

Session Chair, "Antitrust Meets Civil RICO on a Grand Scale," ABA Section of Antitrust Law, March 2006

Speaker, "Vive le Difference: Dealing Effectively with State Enforcers," ABA Section of Antitrust Law, March 2006

Defense Counsel, ABA Antitrust Litigation Course: Mock Trial, October 2005

Panelist, "Lest We Not Forget: State Law Constraints on Price by Robinson-Patman Act," ABA Section of Antitrust, June 2005

Session Chair, "Defending Against Employee Raiding," ABA Section of Antitrust Law, March 2005

Session Chair, "Assessing an Unfair Competition Case Under California Section 17200," ABA Section of Antitrust Law, March 2004

Speaker, "Price Discrimination and Slotting Allowances," Conference Board Antitrust Conference, March 2003

Speaker, "The Front Lines: Prudent Business Decision-Making in Light of the New Realities of Distribution," March 2003

# HAUSFELD



 **PARTNER**

 **SAN FRANCISCO**

 **+1 (415) 633-1908**

 **abailey@hausfeld.com**

# Arthur N. Bailey, Jr.

### Experience

Arthur's primary areas of practice are in consumer, antitrust and other complex litigation matters. He values the opportunity to represent clients of all types who have suffered significant wrongs. Like others at Hausfeld, he is motivated to ensure that all persons, regardless of wealth or status, are able to find justice through the courts. Arthur shares the firm's global vision, its emphasis on civil rights and human rights cases, and its desire to boldly pursue cases that seek to push the boundaries of and developments in the law. He enjoys the legal analysis and critical thinking inherent in overcoming the challenges necessary to successfully solve the client's problems.

### Clients

Arthur has litigated cases in the technology, automotive and agricultural industries, and in sports and entertainment law. He also had the privilege of representing the California Teachers' Association and the National Education Association in litigation in the Ninth Circuit Court of Appeals and the United States Supreme Court, authoring amicus curia briefs on their behalf in support of the right of gays and lesbians to marry.

#### PRACTICE AREAS

Sports and Entertainment

Antitrust / Competition

#### EDUCATION

Bachelor of Music Education, College of Wooster

University of Tulsa College of Law, J.D., 1999

#### BAR ADMISSIONS

U.S. District Court for Northern California

U.S. District Court for Eastern California

U.S. District Court for Central California

# HAUSFELD



 **ASSOCIATE**

 **NEW YORK**

📞 **+1 (646) 357-1100**

✉️ **kfetsick@hausfeld.com**

# Kimberly Fetsick

### Experience

Kimberly was drawn to Hausfeld because of its elite position as a litigation firm tackling complex legal issues around the world, and its longstanding commitment to the public good. Kimberly's practice focuses on antitrust litigation, deceptive business practices, consumer protection, civil and human rights, and environmental threats.

Following law school, Kimberly clerked for Chief Justice F. Michael Kruse of the High Court of American Samoa and Chief Judge Julie Manning of the United States Bankruptcy Court for the District of Connecticut. Through her respective clerkships, Kimberly gained experience in trial and appellate civil and criminal cases and bankruptcy cases, working on a wide variety of legal issues.

### Clients

Kimberly's clients include a class of Blue Cross Blue Shield subscriber plaintiffs, financial institutions and consumers impacted by data breaches, and a class of merchant plaintiffs. In addition, Kimberly is part of a team representing children from over 10 different countries bringing a claim that climate change is violating their human rights.

### PRACTICE AREAS

### Antitrust / Competition

- *In re Blue Cross Blue Shield Antitrust Litigation* – Kimberly is part of the case team in this multidistrict litigation alleging that Blue Cross/Blue Shield entities across the country have entered into agreements not to compete with each other for customers of health insurance.

- *In re American Express Anti-Steering Rules Antitrust Litigation* – Kimberly is part of the case team in this multidistrict litigation, represents a class of merchant plaintiffs against American Express Company and American Express Travel Related Services Company, Inc. (collectively, "Amex") in connection with claims that Amex's Non-Discrimination Provisions (or "Anti-Steering Rules") unreasonably restrain interbrand price competition among credit and charge card networks.

### Deceptive Business Practices and Consumer Protection

- *In re Arby's Data Breach Litigation* – Kimberly is part of the case team in this litigation brought by financial institutions and consumers over a data breach of personal identifying information.

- *In re AMCA Data Breach Litigation* – Kimberly is part of the case team in this litigation brought by consumers over a data breach of personal identifying information.

### Environmental Threats
### Civil and Human Rights

- Kimberly is part of the case team bringing an international human rights case to the United Nations arguing that climate change is violating children's rights.

## WHAT OTHERS SAY

- The First Global Forum on Statelessness honored Kimberly with the *Certificate of Appreciation for Outstanding Student Research* (2014)

## EDUCATION

King's College London, Dickson Poon School of Law, Master of Laws in Transnational Law (LL.M.), *graduated with Merit*, 2017

Georgetown University Law Center, J.D., 2015

University of Pittsburgh, B.A., *summa cum laude*, 2011

## BAR ADMISSIONS

New York

Not admitted to the D.C. Bar. Supervised by Principals of the Firm

## AFFILIATIONS & MEMBERSHIPS

Center for Transnational Legal Studies Coach, 23rd Willem C. Vis International Commercial Arbitration Moot (2015-2016)

Articles Editor, Georgetown Journal of International Law (2014-2015)

Student Attorney, DC Law Students in Court clinic, representing low-income tenants in Landlord & Tenant court seeking to enforce housing code compliance and fighting unjust evictions

Former Member, Georgetown Law Human Rights Institute

## PUBLICATIONS

Co-Author, Georgetown Law Human Rights Institute, Left Behind: How Statelessness in the Dominican Republic Limits Children's Access to Education (2014)

# EXHIBIT

# B

### Boies Schiller Flexner LLP:   Summary Firm Resume

Boies Schiller Flexner LLP ("BSF") is a national litigation firm specializing in complex litigation, including class action litigation, as well as national and international arbitration.  The Firm has more than 200 attorneys in 11 offices in New York; Washington, D.C.; London; Florida; New Hampshire; Nevada; and California.  The Firm was founded in 1997 by David Boies and Jonathan Schiller, both of whom were nationally renowned antitrust and international litigators.  Donald Flexner joined the Firm in 1999, bringing with him years of experience litigating antitrust actions in private practice and prosecuting antitrust violators as former Deputy Assistant Attorney General for the Antitrust Division of the United States Department of Justice.  These three named partners and the other attorneys who make up the Firm are among the best and most accomplished litigators in the world, with decades of experience and proven track records in trying complex cases and arbitrating national and international disputes.

BSF's litigation practice is divided approximately equally between representing plaintiffs and representing defendants in federal and state courts throughout the United States, and in arbitrations in the United States and abroad.  The Firm's clients are among the largest and most sophisticated in the world, including: Altria Group; American Express; Barclays; Carnival Corp.; C.V. Starr & Co.; Delta Airlines; Florida Power & Light; Goldman Sachs; John Hancock Financial Services; Sysco; The New York Yankees; UnitedHealthCare; United Technologies; and US Foods.

BSF has served as lead or co-lead plaintiff's counsel in numerous complex class actions.  These class action cases have involved a variety of claims relating to such matters as antitrust and securities fraud.  The Firm enjoys one of the most selective and successful class action practices in the country.  Since its inception, Boies, Schiller & Flexner has negotiated record settlements and won substantial verdicts on behalf of class members in several prominent cases.  A representative sample of the cases in which the firm has played a leading role on behalf of a class includes:

- The firm has been appointed lead or co-lead counsel in 11 separate class actions involving student loans and credit reporting.

- In *Thompson et al. v. 1-800 Contacts, Inc. et al.* (D. Utah), acting as co-lead counsel for a consumer class alleging antitrust violations in the marketing of contact lenses on the internet, the firm has secured approximately $40 million in settlements to date.

- In *Beltran v. InterExchange Inc.* (D. Colo.), acting as co-lead counsel on behalf of a class of exploited domestic workers, the firm secured wide-ranging non-monetary relief as well as a damages settlement of $65.5 million.

- In *Erica P. John Fund v. Halliburton*, a securities class action which took 14 years, repeat visits to the Fifth Circuit Court of Appeals, and produced two major wins for plaintiffs in the United States Supreme Court, the firm obtained a $100 million settlement for the class.

- As co-lead counsel in a class action against the State of Florida, the firm

secured a settlement that will improve medical and dental care for more than two million children covered by Florida's Medicaid program.

- Acting on behalf of defrauded investors, the firm recovered $235 million from Bernard Madoff feeder funds and a major accounting firm which had audited those funds.

- The firm currently serves as co-lead counsel in multiple class actions on behalf of shareholders in Fannie Mae and Freddie Mac who object to the government's sweep of the profits earned by those entities into the U.S. Treasury. *See In re Fannie Mae/Freddie Mac Senior Preferred Stock Purchase Agreement Class Action Litigations*, Case No. Misc. Action No. 13-mc-1288 (RCL); *Caciappalle v. United States*, Case No. 13-466C (Court of Federal Claims).

- On behalf of a class of college athletes the firm obtained injunctive relief following an antitrust trial against the NCAA in *O'Bannon v. NCAA*.

- As co-lead counsel for the class in *In re Polyurethan Foam Antitrust Litigation* in federal court in Ohio, the firm secured over $440 million in settlements.

- The firm played a lead role in the Takata MDL, which produced $1.5 billion in settlements and also helped obtain a $14.7 billion settlement in the Volkswagen "Clean Diesel" litigation.

- As co-lead counsel in *In re Municipal Derivatives Antitrust Litigation* (S.D.N.Y.), the firm recovered more than $220 million in settlements for a class of municipal entities in a price-fixing case.

- In 2005, the firm, after negotiating settlements totaling over $10 million, went to trial in U.S. District Court in Cleveland, winning a verdict of $11 million, pre-trebling, for class members in *In re Scrap Metal Antitrust Litigation* (N.D.Ohio).

- In 2000, BSF was lead counsel in *In re Auction Houses Litigation* (S.D.N.Y.) and negotiated a $512 million settlement on behalf of the plaintiff class, which was described by another plaintiff s counsel as "the most outstanding result I have ever heard of in the history of the antitrust laws."

- In 1999, the firm successfully acted as one of three co-lead counsel in recovering a billion dollars on behalf of class plaintiffs in *In re Vitamins Antitrust Litigation,* MDL 1285 (D.D.C.). In 2003, the firm, acting as co-lead counsel, took the remaining four defendants to trial in D.C. federal court and won a $53 million verdict, pre-trebling.

- In a securities class action, Richard Drubel, one of the firm's senior partners, acted as lead counsel for the Plaintiff Class in *In re Terra-Drill Partnerships Litigation*, MDL 791, C.A. No. H-86-3808 (S.D. Tex. 1989), which went to trial and resulted in a $72 million judgment for the Class. The National Law

Journal called this verdict "one of the most significant verdicts of the year."

BSF has extensive experience in pharmaceutical class action matters. The firm has served as co-lead counsel in *In re Cardizem CD Antitrust Litigation,* MDL No. 1278, Civil Action No. 99-cv-732589 and 99-cv-73870 (E.D. Mich. 2002) ($110 million settlement), in *In re Buspirone Antitrust Litigation,* MDL No. 1413, Civil Action No. 01-CV- 7951 (JAK) (S.D.N.Y. 2002) ($220 million settlement), and *In re Terazosin Hydrochloride Antitrust Litigation,* MDL No. 1317, Civil Action No. 99- 7143-Civ-Seitz (S.D. Fla.) ($75 million settlement).

BSF has represented plaintiff classes of securities holders in *Rory Riggs and John Lewis v. Termeer, Genzyme Corp., et al.,* No. 03-CV- 4014 (LLS) (S.D.N.Y.) ($64 million settlement) and purchasers of the prescription drug Hytrin. Boies Schiller Flexner served as co-lead counsel for plaintiff shareholder classes in *In re Alcatel Alsthom Securities Litigation,* MDL No. 1263, Civil Action No. 4:98-CV -320 (E.D. Tex. 2001) ($75 million settlement) and in *Lalor et al. v. Omtool, Ltd et al.,* C.A. No. 1 :99-cv- 469-M (D.N.H. 2001) ($6 million settlement).

BSF's ability to operate effectively as plaintiffs' counsel is reinforced by its experience representing defendants in class actions. Boies Schiller Flexner has defended class action cases against, among many others, Delta Airlines, Duke University, Emory University, Georgetown University, Harvard University, the University of Southern California, Dow Chemical, DuPont, Pioneer Hi-Bred, American Express, Hill-Rom Holdings, Inc., Unisys Corporation, 3Com Corporation, and Batesville Casket Co.