FILED
2020 Oct-30 PM 09:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT G

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **IN RE BLUE CROSS BLUE SHIELD ANTITRUST LITIGATION MDL 2406** | : : Master File 2:13-cv-20000-RDP : : : : This document relates to : Subscriber Track cases |

**Declaration of Allocation Mediator Kenneth R. Feinberg**

2

**I, Kenneth R. Feinberg, declare as follows:**

1.      I am the agreed-upon Allocation Mediator in the above-captioned matter. I submit this Declaration in connection with the concurrently filed Subscriber Plaintiffs' Motion for Preliminary Approval of Proposed Class Settlement.[1] I have personal knowledge of the matters set forth herein. If called upon and sworn as a witness, I could competently testify thereto.

2.      I have acted as an independent, neutral mediator for more than 30 years, retained by private parties and federal and state courts, to design and administer mediation procedures aimed at resolving thousands of complex disputes. I have acted as a mediator in a wide range of disputes, including mass torts, insurance coverage, contracts, and securities and antitrust litigation. In some of these disputes, as in the above-captioned matter, I have been retained by the litigants to act as the neutral mediator. In other disputes, I have been appointed by the court to serve as the mediator. *See, e.g., In Re Agent Orange*, 611 F. Supp. 1396 (E.D.N.Y. 1985). And, after the September 11 terrorist attacks, I was appointed by the Attorney General of the United States to act as the Special Master/Administrator of The Federal September 11 Victim Compensation Fund of 2001. *See* 49 U.S.C. § 40101; 28 C.P.R. §§ 104.2, *et seq.* (2003).

3.      I have also been appointed by federal and state judges to act as the independent neutral Distribution Agent in administering class action settlements in complex commercial and tort cases, including the allocation and distribution of class settlement proceeds to eligible claimants. *See, e.g., Sec. & Exch. Comm'n v. Maurice R. Greenberg & Howard I. Smith*, No. 09-Civ.-6939 (S.D.N.Y. 2011) (Preska, J.); *In Re Agent Orange*, 611 F. Supp. 1396 (1985); *United States v. Computer Associates Int'l, Inc.*, No. 04-cr-837 (E.D.N.Y. 2007); The Gulf Coast Claims

---

[1] All capitalized terms in this Declaration shall have the same meaning as provided in the Settlement Agreement unless otherwise indicated.

Facility;[2] GM Ignition Compensation Claims Resolution Facility, Final Protocol for Compensation of Certain Death and Physical Injury Claims Pertaining to the GM Ignition Switch Recall (June 30, 2014).

4. A copy of my curriculum vitae is attached hereto as Exhibit A.

**Summary of Findings**

5. Through the course of my engagement as Allocation Mediator in this action, I have assisted Settlement Class Counsel and Self-Funded Sub-Class Settlement Counsel (together, for purposes of this Declaration, "Class Counsel") in determining an equitable allocation of the Net Settlement Fund among the Damages Class members in two respects.

6. First, in November 2019, I was asked by Class Counsel to facilitate a reasonable allocation of the Net Settlement Fund between (1) Individual Members and Insured Groups (and their employees) who purchased fully funded health insurance products from Defendants (together, "FI Claimants"), and (2) Self-Funded Accounts (and their employees) ("Self-Funded Claimants"). I will refer to this allocation as the "FI/Self-Funded Allocation." I agreed with Class Counsel after months of arm's-length negotiations that a reasonable allocation of the Net Settlement Fund, based on the evidence and factors discussed below, would result in distributing 93.5% of the Net Settlement Fund among FI Claimants and the remaining 6.5% of the Net Settlement Fund among Self-Funded Claimants.

7. Second, in October 2020, I was asked by Class Counsel to review a proposed Plan of Distribution ("Plan"), including a proposed *pro-rata* allocation of Net Settlement Fund

---

[2] See Katelyn Sabochik, *The President's Meeting with BP Executives: "An Important Step Towards Making the People of the Gulf Coast Whole Again"* The White House BLOG (June 16, 2010, 3:51 PM) https://www.whitehouse.gov/blog/2010/06/16/important-step-towards-making-people-gulf-coast-whole-again ("BP and the Administration agreed to appoint Ken Feinberg, who administered the claims process for victims of 9/11, to run the independent claims process").

payments as between employers and employees, and to provide my opinion on the reasonableness of the Plan. I concluded that the Plan of Distribution, including the proposed Default contribution percentages outlined therein, is reasonable and appropriate.

**Division of the Net Settlement Fund Between FI Claimants and Self-Funded Claimants**

8. In November 2019, I was approached by Self-Funded Sub-Class Settlement Counsel, Warren Burns of Burns Charest LLP. Mr. Burns asked whether I was in a position to act as a mediator with respect to the allocation of Settlement proceeds between FI Claimants and Self-Funded Claimants. I advised Mr. Burns that I could do so.

9. I understand that, upon becoming Self-Funded Sub-Class Settlement Counsel, Mr. Burns asked for, and received, a broad array of information about the basis for the Self-Funded Sub-Class's claims with respect to the Settling Defendants. He retained independent economists to assist with this evaluation and analysis. Mr. Burns and his colleagues analyzed this information themselves, including reports from his economists, to estimate a reasonable division of any settlement fund that might be established in connection with any ultimate settlement of the litigation.

10. In November 2019, Settlement Class Counsel (on behalf of the entire Damages Class), Self-Funded Sub-Class Settlement Counsel, and the Settling Defendants executed the detailed Term Sheet spelling out the substantive elements of the Settlement. That document did not, however, spell out or suggest the division of the Net Settlement Fund between the FI Claimants and Self-Funded Claimants.

11. Settlement Class Counsel and Self-Funded Sub-Class Settlement Counsel then began to negotiate a division of the Net Settlement Fund in order to arrive at an equitable FI/Self-Funded Allocation. Some of those discussions occurred in my presence, where I acted as Allocation Mediator; others occurred outside my presence. In all of my dealings with Self-Funded

4

Sub-Class Settlement Counsel, I observed them to be independent, tenacious advocates for the Self-Funded Sub-Class who negotiated at arm's-length.

12. During January 2020, based on expert analysis and evidence produced in the litigation, both sides presented to me estimates of the shares of monetary relief that would be appropriate for FI Claimants and Self-Funded Claimants.[3] Settlement Class Counsel's estimates of the appropriate recovery for Self-Funded Claimants ranged from 3.4% to 6.8%,[4] while Self-Funded Sub-Class Settlement Counsel's estimates varied from 7.6% to 16%. I discussed with counsel for both sides the factors that either supported or undermined their respective positions, including considerations relating to potential statute of limitations issues and the relative size of the administrative fees paid by Self-Funded Claimants vs. the premiums paid by FI Claimants.

13. Ultimately, after several months of negotiation, Class Counsel reached agreement on an FI/Self-Funded Allocation that would assign 6.5% of the Net Settlement Fund to Self-Funded Claimants. Counsel for the two sides then presented that bargained-for agreement to me, and requested my opinion on whether it met the standard of Fed. R. Civ. P. 23(e)(2)(D), which asks whether a proposed class action settlement "treats class members equitably relative to each other."

14. In my opinion, the proposed FI/Self-Funded Allocation meets this standard, for multiple reasons. First, the negotiated number falls towards the low end of Self-Funded Sub-Class Settlement Counsel's estimate, and the high end of Settlement Class Counsel's estimate. In any

---

[3] Beginning in late November 2019, I received a variety of documents from Class Counsel as relevant background to the issue.
[4] Settlement Class Counsel's original estimates were based on work performed by Dr. Ariel Pakes of Harvard University. Dr. Pakes' valuation estimates the ratio between the investment returns (in excess of a competitive return) of (a) the Blues' fully-insured business, and (b) their self-funded business. That ratio demonstrates that only 3.4% of the Settlement proceeds should be assigned to the Self-Funded Sub-Class. Dr. Pakes then subjected his work to a "robustness analysis" which indicates that – even making assumptions highly unfavorable to the fully-insured claimants – the shares fairly allocable to the self-funded plans would increase only to 6.8%, in line with the Settlement's negotiated amount.

5

negotiation, absent unusual factors, one would expect an outcome in that range. Second, the relative size of the Self-Funded Claimants' share makes sense given the statute of limitations and premiums vs. administrative fees issues discussed above. And finally, although not necessary to my decision, the fact that the division resulted from protracted negotiations between sophisticated counsel also supports its reasonableness.

15. I note that some of the injunctive relief in the Settlement Agreement (such as direct contracting with vendors for self-funded accounts, ¶ 12; and the Second Blue Bid, ¶ 15 applies exclusively to Self-Funded Accounts, rather than to Individual Members and Insured Groups. My conclusion that the Settlement's allocation of relief is equitable for Self-Funded Accounts is only strengthened by this additional injunctive relief, which applies solely to those Class Members.

### Division of the Net Settlement Fund Between Employers and Employees

16. In October 2020, based on the extensive knowledge I had already gained from serving as Allocation Mediator on the FI/Self-Funded Allocation, I was asked by Class Counsel to review their proposed Plan of Distribution, including their proposed allocation of settlement proceeds between employers who sponsor health insurance plans and employees who contribute to the cost of that insurance. I based my review on that earlier experience as well as materials provided to me by Class Counsel and presentations concerning the factors that Class Counsel researched and relied upon in determining proposed allocation.

17. Unlike the FI/Self-Funded Allocation, the claims asserted by employer sponsors of health coverage had already been subject to massive, multi-year discovery efforts directed at the Settling Defendants, as well as analysis by multiple consulting and testifying experts retained by Class Counsel. Thus, I was informed by Class Counsel that I was being asked, out of an abundance of caution, to review their proposed Plan for reasonableness under Fed. R. Civ. P. 23(e)(2)(D), described above.

18.     The Plan includes a Default option that allocates damages between employers and employees as follows: (1) for FI Claimants with single coverage, 85% to employers and 15% to employees; (2) for FI Claimants with family coverage, 66% to employers and 34% to employees; (3) for Self-Funded Claimants with single coverage, 82% to employers and 18% to employees; and (4) for Self-Funded Claimants with family coverage, 75% to employers and 25% to employees (these contribution percentages together will be referred to as the "Employer/Employee Allocation").  The Plan also provides both employers and employees with the option of electing an Alternative option, which allows them to present evidence to the Settlement Administrator demonstrating that in their specific case, the actual percentages or other provable damages were higher.

19.     Based on the considerations identified by Class Counsel in their presentation and supporting materials concerning the numerous factors bearing on the allocation of premiums and administrative fees between employers and employees, I conclude that Class Counsel's proposal is reasonable and the tools used by Class Counsel are realistic and appropriate under the circumstances.

**CONCLUSION**

20.     In sum, based on the presentations by experienced and competent Class Counsel and my review of the relevant materials, I conclude that the Plan of Distribution, encompassing both the FI/Self-Funded Allocation and the Employer/Employee Allocation, is fair and reasonable and provides for an equitable distribution of the Net Settlement Fund among Damages Class Members.

                                                             _____
                                                             Kenneth R. Feinberg
                                                             October 30, 2020
                                                             Washington, DC

# EXHIBIT A

**KENNETH R. FEINBERG, ESQ.**
*The Law Offices of Kenneth R. Feinberg, PC*

Kenneth R. Feinberg is one of the nation's leading experts in mediation and alternative dispute resolution. He has administered numerous high-profile compensation programs, having served as Special Master of the September 11th Victim Compensation Fund.  In this capacity, Mr. Feinberg developed and promulgated the Regulations governing the Fund's administration and oversaw the evaluation of applications, determinations of appropriate compensation, and dissemination of awards totaling over $7 billion.  He also served as the Court-appointed Settlement Master in the Agent Orange Victim Compensation Program.

Mr. Feinberg currently serves as Special Master of the U.S. Victims of State-Sponsored Terrorism Fund being administered by the Department of Justice, as well as independent Fund Administrator for various Catholic Church sexual abuse claims compensation programs established by Catholic dioceses in five states.  He also currently serves as the Bankruptcy Court Appointed Mediator in the opioid Purdue Bankruptcy with a Court mandate to resolve financial allocation disputes involving various public and private creditors and the debtor.

In 2015, Mr. Feinberg was appointed as Special Master by the Secretary of the Treasury to oversee the Department of the Treasury's review of applications proposing to reduce pension benefits in connection with the Kline-Miller Multiemployer Pension Reform Act of 2014.

From 2014-2015, he served as the Administrator of the GM Ignition Compensation Claims Resolution Facility.

Mr. Feinberg recently served in a *pro bono* capacity as Administrator of the OneOrlando Fund, designing and implementing a claims program for the distribution of $30 million in corporate and private donations to the victims of the Pulse Nightclub shooting in Orlando in June 2016.  Mr. Feinberg has also served in a *pro bono* capacity as Fund Administrator for the One Fund Boston Victim Relief Fund arising out of the Boston Marathon bombings, Advisor for the Newtown-Sandy Hook Victim Compensation Fund, Administrator of the Aurora Victim Relief Fund following the Colorado movie theater shootings in 2012, and Administrator of the Hokie Spirit Memorial Fund following the shootings at Virginia Tech University in 2007.

Mr. Feinberg was appointed by the Obama Administration and BP in 2010 to serve as Administrator of the Gulf Coast Claims Facility to compensate victims of the BP Deepwater Horizon oil spill in the Gulf of Mexico.

Secretary of the Treasury Timothy Geithner appointed Mr. Feinberg in 2009 to serve as Special Master of the Troubled Asset Relief ("TARP") Executive Compensation Program in order to determine the compensation structures of certain employees of Corporate TARP recipients who had received exceptional financial assistance.  During this time, Mr. Feinberg also served as Court appointed Fee Examiner of the Lehman Brothers bankruptcy case, examining and instituting caps on fees and expenses charged by professionals retained during the bankruptcy process.

In 2008, Mr. Feinberg designed, implemented and administered Alternative Dispute Resolution Programs for Liberty Mutual Insurance Company and Zurich Insurance Company for resolving insurance claims arising from Hurricanes Katrina, Gustav, Ike and other hurricanes in the Gulf region.

Mr. Feinberg was appointed in June of 2007 as the Distribution Agent of *In Re: United States Securities and Exchange Commission v. American International Group, Inc.,* responsible for the design and implementation of a Plan for the distribution of a $800 million Fund to eligible claimants.  He has also served as Fund Administrator in other prominent settlements including: *In Re:  United States of America v. Computer Associates International, Inc.*  (responsible for the design and implementation of a restitution fund of $275 million); *In Re: International Air Transportation Surcharge Antitrust Litigation* (responsible for the design and administration of a $200 million fund in both the United States and England); *In Re: Zyprexa Product Liability Litigation* (a $700 million settlement fund); and *In Re: Latino Officers Association City of New York v The City of New York* (a $17 million settlement fund).

Mr. Feinberg received his B.A. *cum laude* from the University of Massachusetts in 1967 and his J.D. from New York University School of Law in 1970, where he was Articles Editor of the *Law Review*.  He was a Law Clerk for Chief Judge Stanley H. Fuld, New York State Court of Appeals from 1970 to 1972; Assistant United States Attorney, Southern District of New York from 1972 to 1975; Special Counsel, United States Senate Committee on the Judiciary from 1975 to 1978; Chief of Staff to Senator Edward M. Kennedy from 1978 to 1980; Partner at Kaye, Scholer, Fierman, Hays & Handler from 1980 to 1993; and founded The Law Offices of Kenneth R. Feinberg, PC.

**MEDIATION**

Special Settlement Master, In re: Andrew Herman. et al. v. Westinghouse

Electric Corporation (employment discrimination class action).

Special Settlement Master, In re:  "Agent Orange" Product Liability Litigation.

Special Settlement Master, County of Suffolk et al. v. Long Island Lighting Co. et al. (Shoreham Nuclear Facility class action RICO litigation).

Special Settlement Master, In re:  Eagle-Picher Industries Inc. (national asbestos personal injury/wrongful death class action).

Special Settlement Master, In re:  Joint Eastern and Southern District Asbestos Litigation (federal and state asbestos personal injury/wrongful death litigation arising out of exposures at the Brooklyn Navy Yard).

Special Settlement Master, In re:  Asbestos Personal Injury Litigation (asbestos personal injury/wrongful death litigation pending in the Maryland State courts).

Special Settlement Master, In re:  Joint Eastern and Southern District Asbestos Litigation (federal asbestos personal injury/wrongful death litigation arising out of exposures at various New York utilities).

Special Settlement Master/Referee, In re: DES Cases (federal and state personal injury/wrongful death DES litigation).

Trustee, In re: A.H. Robins Co. (Dalkon Shield Claimants' Trust).

Mediator, FRT Plywood Mediation (fire retardant plywood litigation involving allegations of defective roofs in approximately 250,000 homes).

Mediator in hundreds of matters involving allegations of antitrust violations, breach of contract, civil RICO violations, civil fraud and product liability; mediator in various commercial and insurance coverage disputes.

Member, National Panel, Center for Public Resources (one of 64 individuals selected nationally by the CPR to mediate and/or engage in other forms of alternative dispute resolution).

Arbitrator, American Arbitration Association.

Arbitrator, Marine Spill Response Corporation.

Former Vice-Chair, Committee on Alternative Dispute Resolution, American Bar Association.

**LAW**

Managing Partner, Feinberg Rozen, LLP (2009 – present).

Founder, The Feinberg Group, LLP, Washington, D.C. (1993-2009).

Partner, Kaye, Scholer, Fierman, Hays & Handler, Washington, D.C. (1980-1993).

Steven and Maureen Klinsky Lecturer on Law, Harvard University Law School, Cambridge, Mass. (2015-present)

Adjunct Professor of Law, Harvard University Law School, Cambridge, Mass. (2008-2015)

Adjunct Professor of Law, Georgetown University Law Center, Washington, D.C. (1979-Present).

Adjunct Professor of Law, University of Pennsylvania Law School, Philadelphia, PA (1998-2005).

Adjunct Professor of Law, New York University School of Law, New York, NY (2000-Present).

Adjunct Professor of Law, Columbia University Law School (2002-2006).

Adjunct Professor of Law, University of Virginia Law School, Charlottesville, VA (Current Semester 2000).

Adjunct Professor of Law, The Graduate School of Political Management, New York, New York. (1988-1990).

Visiting Lecturer, University of California, Los Angeles, Los Angeles, California (2007).

Visiting Lecturer, Vanderbilt University, Nashville, Tennessee (2008).

Visiting Lecturer, Duke University, Durham, North Carolina (2008).

Visiting Lecturer, New York Law School, New York, New York (2008).

Administrative Assistant, Senator Edward M. Kennedy, Washington, D.C. (1978-1980).

Special Counsel, United States Senate Committee on the Judiciary, Washington, D.C. (1977-1978).

General Counsel, Subcommittee on Administrative Practice and Procedure, United States Senate Committee on the Judiciary, Washington, D.C. (1975-1977).

Assistant United States Attorney, Southern District of New York (1972-1975).

**COMMISSIONS**

General Counsel, James Madison Memorial Fellowship Foundation. (Public Law

No. 99-591 (1986) and, as amended, Public Law No. 101-208 (1989).

Member, Presidential Advisory Committee on Human Radiation Experiments

(1994-1998).

Member, Presidential Commission on Catastrophic Nuclear Accidents. (1989-1990).

Member, Carnegie Commission Task Force on Science and Technology in Judicial and Regulatory Decisionmaking. (1989-Present).

Member, American Bar Association Special Committee on Mass Torts. (1988-1989).

Special Consultant, United States Sentencing Commission. (1984-1987); Chairman, New York State Committee on Sentencing Reform. (1985-1987).

**EDUCATION**

J.D. (Cum Laude), New York University School of Law (1970) (New York University Law Review; Butler Prize for "Unusual distinction in scholarship, character and professional activities;" Newman Prize for Ameritorious achievement in the area of public law.")

B.A. (Cum Laude), University of Massachusetts (1967) (Class commencement address)

Law Clerk, Chief Judge Stanley H. Fuld, New York State Court of Appeals. (1970-1972)

**HONORS AND AWARDS**

Listed in "The 100 Most Influential Lawyers in America," The National Law Journal (March 25, 2013).

Honorary Doctorate, Curry College, Milton, May 2013.

Honorary Doctor of Humane Letters, Salem State University, 2012.

Honorary Doctor of Laws, Saint Francis College, May, 2011.

Honorary Doctor of Laws, Suffolk University, May, 2010.

Designated "Lawyer of the Year" by the *National Law Journal* (December, 2004).

Listed in "Profiles in Power:  The 100 Most Influential Lawyers in America" (*National Law Journal*, May 2, 1988; March 25, 1991; April 4, 1994; June 12, 2000; June 19, 2006).

Listed in "The Next Establishment: Twenty-Seven Future Leaders of America's Major Firms" (The American Lawyer, March, 1986).

Listed in "125 Alumni to Watch," University of Massachusetts (October 15, 1988).

Charles A. Fahy Annual Award for Best Adjunct Professor of Law, Georgetown University Law Center (1988-1989).

**BAR AND PROFESSIONAL AFFILIATIONS**

New York 1971

District of Columbia 1977

Massachusetts 1980

Southern District of New York 1973

Northern District of New York 1991

Federal District Court of the District of Columbia 1981

Federal District Court for the District of Massachusetts 1981

United States Court of Appeals for the Second Circuit 1972

Bar Association of the City of New York 1972

Bar Association of the District of Columbia 1977

Massachusetts Bar Association 1980

American Bar Association Ad Hoc Committee on Tort Law Reform (Chairman, Subcommittee on Statutory Compensation Systems).

Advisory Board, Center for Research in Crime and Justice of the New York University School of Law (1984)

Member of Board of Directors, Lawyers Committee for Human Rights, New York (1990).

Member of Board of Directors, National Organization for Victim Assistance, Washington, D.C. (1991)

Chairman of the Board of the RAND Institute for Civil Justice, Washington, D.C. (2009)

President of the Washington National Opera, Washington, D.C. (2007 – 2011)

Member, Board of Overseers, RAND Institute for Civil Justice, Washington, D.C. (2010- present)

Vice-Chairman of Human Rights First, New York, NY. (2007 - Present)

Member of the Board of Trustees, The Bazelon Center for Mental Health Law, Washington, D.C. (1996 - Present)

Founding Chairman, RAND Center for Catastrophic Risk Management and Compensation (2012 – present)

**PUBLICATIONS**

**1. Books**

Who Gets What?  Fair Compensation After Tragedy and Financial Upheaval (Public Affairs Press, 2012).

What is Life Worth? The Unprecedented Effort to Compensate the Victims of 9/11 (Public Affairs Press, 2005).


**2. Law Review Articles**

"Unconventional Responses to Unique Catastrophes: Tailoring the Law to Meet the Challenges," The Thomas M. Cooley Law School, Law Review, Vol. 30, No. 3 (Hilary Term 2013)

"BP Exploration & Production Inc., et al."  Supreme Court of the United States, On Petition for a Writ of Certiorari to the United States Court of Appeals, for the Fifth Circuit, No. 14-123 (2014)

"Unconventional Responses to Unique Catastrophes: Tailoring the Law to Meet the Challenges," Chapman Law Review, Chapman Dialogue Series, Vol. 17, No. 2 (Spring 2014)

"Is the Class Half-Empty or Half-Full?,"  Loyola University Chicago Law Journal, Vol. 44, No. 2 (Winter 2012)

"Democratization of Mass Litigation:  Empowering the Beneficiaries," "The Democratization of Mass Litigation?"  Columbia Journal of Law and Social Problems, Symposium, Vol. 45, No. 4, 481-498 (Summer 2012)

"Unconventional Responses to Unique Catastrophes," Akron L. Rev. Vol. 45, No. 3, 575-582 (2012)

"The September 11th Victim Compensation Fund of 2001: Policy and Precedent," New York Law School L. Rev. Vol. 56, 1115 (2011/12)

"Symposium on Executive Compensation," Keynote Address, 64, No.2 Vanderbilt L. Rev. 349 (2011)

"Reexamining the Arguments in Owen M. Fiss, Against Settlement," 78 Fordham L. Rev. 3 (2009)

"Keynote Presentation:  The Sixth John A. Speziale Alternative Dispute Resolution Symposium," 27 No. 3 Quinnipiac University School of Law L. Rev. 779 (2009)

"Compensating Victims of Disaster:  The United States Experience," 79 Papers on Parliament No. 49, Constitutional Politics and Other Lectures in the Senate Occasional Lecture Series (2008)

 "Tributes to Justice Stephen G. Breyer," 64 N.Y.U. Annual Survey of American Law 1 (2008).

"How Can ADR Alleviate Long-Standing Social Problems?  34 Fordham Urban L.J., 785 (2007).

"Response to Robert L. Rabin," 106 Columbia L. Rev. 2 (2006).

"A Special Issue Dedicated to Judge Jack B. Weinstein," 97 Columbia L. Rev. 7 (1997).

"Response to Deborah Hensler, A Glass Half Full. A Glass Half Empty:  The Use of Alternative Dispute Resolution in Mass Personal Injury Litigation," 73 Tex. L. Rev. 1647 (1995).

"Civil Litigation in the Twenty-First Century: A Panel Discussion," 59 Brooklyn L. Rev. 3 (1994).

"Federal Criminal Sentencing Reform: Congress and the United States Sentencing Commission," 28 Wake Forest L. Rev. 291 (1993).

"Using Mediation to Resolve Construction Disputes," in Cushman, Hedemann and Tucker, Alternative Dispute Resolution in the Construction Industry, ' 7.20 et seq. (John Wiley & Sons 1991).

"The Federal Law of Bribery and Extortion: Expanding Liability," in Obermaier and Morvillo, White Collar Crime:  Business and Regulatory Offenses, ' 3.01 et seq. (Law Journal Seminars - Press 1990).

"The Dalkon Shield Claimants Trust," 53 Law and Contemporary Problems 79 (1990).

"The Federal Sentencing Guidelines: A Dialogue," 26 Crim. L. Bull. 5 (1990) (co-authored with Judge Stephen G. Breyer).

"Mediation -- A Preferred Method of Dispute Resolution," 16 Pepperdine L. Rev. 5 (1989).

"The Toxic Tort Litigation Crisis: Conceptual Problems and Proposed Solutions," 24 Houston L. Rev. 155 (1987).

"The Separation of Powers Issue in the Independent Counsel Debate," 25 Amer. Crim. L. Rev. 171 (1987).

"The Role of the Courts in Risk Management," 16 Environmental L. Reptr. (1986).

"Attorneys' Fees in the Agent Orange Litigation: Modifying the Lodestar Analysis for Mass Tort Cases," 14 N.Y.U. Rev, of Law & Social Change 613 (1986) (co-authored with John S. Gomperts).

"The Comprehensive Crime Control Act of 1984 -- The Insanity Defense, Commitment Procedures, Victim Assistance, and Witness Protection," 5 Legal Notes & Viewpoints 34 (August, 1985).

"Introduction: Symposium on the Crime Control Act of 1984," 22 Amer. Crim. L. Rev. xi (1985).

"Selective Incapacitation and the Effort to Improve the Fairness of Existing Sentencing Practices," 12 N.Y.U. Rev, of Law & Social Change 53 (1984).

 "Legislative Options: Recent Developments in Tort Law Reform," 39 Bus. Lawyer 209, 216 (1983).

"Foreword to the White-Collar Crime Symposium," 21 Amer. Crim. L. Rev. vii (1983).

"Sentencing Reform and the Proposed Federal Criminal Code," 5 Hamline L. Rev. 217 (1982).

"Extraterritorial Jurisdiction and the Proposed Federal Criminal Code," 72 J. of Crim. Law and Criminology 385 (1981).

"Economic Coercion and Economic Sanctions: Extraterritorial Enforcement of the Federal Antitrust Laws," 30 Amer. Univ. L. Rev. 323 (1981).

"Toward a New Approach to Proving Culpability: Mens Rea and the Proposed Federal Criminal Code," 18 Amer. Crim. L. Rev. 123 (Summer 1980).

**3. Essays**

"The Myth of Moral Justice In-Print Symposium:  A Brief Response," 4 Cardozo Public Law, Policy, and Ethics Journal 1 (2006).

"The September 11th Victim Compensation Fund," 32 ABA Litigation 2 (Winter 2006).

"The Federal Guidelines and the Underlying Purposes of Sentencing," Federal Sentencing Reporter at 326-327 (May/June 1991).

"Do Mass Torts Belong in the Courtroom?", 74 Judicature 237 (February, 1991).

"In the Shadow of Fernald: Who Should Pay the Victims?", 8 The Brookings Rev. 41 (1990).

"Settling a Mass Tort with a Claimants Trust," 9 Product Liability Law and Strategy 1 (October, 1990).

"How to Use Bankruptcy to Settle Mass Torts," 9 Product Liability Law and Strategy 8 (November, 1990).

"Drug Enforcement: Criminal Division," in America's Transition Blueprints for the 1990s 440 (M. Green & M. Pinsky, eds.) (1989).

Editor, Violent Crime in America (National Policy Exchange, 1983).

"Why NIJ should be Kept Within the Justice Department," 62 Judicature 306 (1979).

**4. Newspaper Articles & Periodicals**

"The Power 100:  The 100 Most Powerful People in Finance," Worth: The Evolution of Financial Intelligence, p. 76 (Vol. 19, Edition 05; 2010).

"9/11 Fund:  Once was Enough," The Washington Post, op-ed, p. A17 (September 11, 2008).

"Radiation and Responsibility," The Washington Post, p. A23 (October 9, 1995).

"Truth and Fairness in Sentencing," N.Y. Times A31 (April 24, 1987).

"Whatever Gramm-Rudman is, it is not Material for the Courts," 99 Los Angeles Daily J. 4 (1986).

"Gramm-Rudman is Not Court Material," N.Y. Times p. A31 (March 11, 1986).

"Comprehensive Crime Control Act of 1984 - New Approaches to Federal Criminal Law," (Part 1) N.Y. Law Journal 1 (1985).

"The New Federal Reforms for Sentencing Criminals," (Part 2) N.Y. Law Journal 1 (1985).

"Crime Control Act of 1984 - Changes in Substantive Law," (Part 3) N.Y. Law Journal 1 (1985).

"Crime Control Act of 1984 - Changes in Criminal Procedure," (Part 4) N.Y. Law Journal 3 (1985).

"Crime Control Act of 1984 - Insanity Defense, Commitment, Aid to Victims, Witness Protection," (Part 5) N.Y. Law Journal 1 (1985).

"Get Tough on Criminals: Forget the Death Penalty," The Washington Post (Outlook) p.1 (May 20, 1984).

"Conrail's Future," N.Y. Times p. 19 (March 2, 1981).

"Biggest Proposed Changes Affect Sentencing and White-Collar Crime," National Law Journal 22 (1980).

"Proposed Code: Order, Consistency Replace Loopholes, Archaic Laws," National Law Journal 48 (1980).

"The Federal Criminal Code: Reform Effort Long Overdue: Analysis of Pending Legislation in Congress," (Part 1) N.Y. Law Journal 1 (1980). "The Federal Criminal Code: Culpability and Jurisdiction: Analysis of Pending Legislation in Congress," (Part 2) N.Y. Law Journal 1 (1980). "The Proposed Federal Criminal Code," (Part 3) N.Y. Law Journal 3 (1980).

"The Proposed Federal Criminal Code: An Analysis," N.Y. Law Journal 3 (1980).

**5. Official Documents**

K. Feinberg, et al., Final Report of The Special Master for the September 11th Victim Compensation Fund of 2001 (Vols. I & II) (www.usdoj.gov/final_report.pdf)

"Criminal Code Reform Act of 1979," Report of the Committee on the Judiciary United States Senate to Accompany S. 1722, Rpt. No. 96-553, 96th Cong. 2d Sess. (1980) . (A primary author of treatise of some 1500 pages analyzing all current federal criminal laws and proposals for modification and change.)

"Testimony of Kenneth R. Feinberg, Esq., Special Settlement Master in the Agent Orange Product Liability Litigation Before the Senate Subcommittee on Nuclear Regulation Committee on Environment and Public Works United States Senate," Reauthorization of the Price-Anderson Act, 99th Cong., 1st Sess. at pp. 151 et seq. (1986).

"Testimony of Kenneth R. Feinberg, Former Chairman of the New York State Committee on Sentencing Guidelines before the House Subcommittee on Criminal Justice," Sentencing Guidelines Hearings Before the Subcommittee on Criminal Justice of the Committee on the Judiciary House of Representatives, 100th Cong. (1987).

"Testimony of Kenneth R. Feinberg, Court-Appointed Special Master, Agent Orange Litigation, before the Senate Veterans Affairs Committee," Oversight of the Operations of the Bureau of Veterans Affairs, Sen. Hearing 100-996, 100th Cong., 2d Sess. at pp. 33-39; 166-172 (1988).

"Testimony of Kenneth R. Feinberg, Former Special Master of the Federal September 11th Victim Compensation Fund of 2001, before the House Subcommittee on the Constitution, Civil Liberties and the House Subcommittee on Immigration, Citizenship, Refugees, Border Security, and International Law," H.R. 847, the "James Zadroga 9/11 Health and Compensation Act of 2009, U.S. House of Representatives, Committee on the Judiciary, Congressional Hearing, 111th Cong., pp. 1-80, (2009).

"Testimony of Kenneth R. Feinberg, Former Special Master for TARP Executive Compensation," <u>Congressional Oversight Panel</u>, Congressional Hearing, 111th Cong., (2010).

"Testimony of Kenneth R. Feinberg Administrator, Gulf Coast Claims Facility before the United States Senate Ad Hoc Subcommittee on Disaster Recovery," <u>Gulf Coast Recovery – An Examination of Claims Administration and Social Services in the Aftermath of the Deepwater Horizon Oil Spill</u>, Sen. Hearing, 112th Cong., (2011).

10.26.16