FILED

2020 Oct-30  PM 09:59
U.S. DISTRICT COURT
N.D. OF ALABAMA



**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **IN RE BLUE CROSS BLUE SHIELD** | : | |
| **ANTITRUST LITIGATION** | : | **Master File 2:13-cv-20000-RDP** |
| **MDL 2406** | : | |
| | : | |
| | : | |
| | : | **This document relates to** |
| | : | **Subscriber Track cases** |

**SUBSCRIBER PLAINTIFFS' MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR APPROVAL OF A PLAN FOR NOTICE
<u>AND APPOINTMENT OF CLAIMS ADMINISTRATOR</u>**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................ iii

I.     BACKGROUND .................................................................................................... 1

II.    LEGAL STANDARD FOR NOTICE .................................................................... 3

III.   THE SETTLEMENT CLASSES ........................................................................... 5

       A.     DAMAGES CLASS ................................................................................... 5

       B.     INJUNCTIVE RELIEF CLASS ................................................................ 7

IV.    THE PROPOSED CLAIMS ADMINISTRATOR ................................................. 7

V.     REQUIRED DATA .............................................................................................. 10

VI.    TIMELINE FOR NOTICE, CLAIM FILING, OBJECTIONS & EXCLUSIONS .......... 11

VII.   THE NOTICE PLAN ........................................................................................... 12

       A.     DIRECT INDIVIDUAL NOTICE ........................................................... 13

              1.     DIRECT NOTICE VIA E-MAIL ................................................. 14

              2.     DIRECT NOTICE VIA COLOR POSTCARD ............................ 15

       B.     MEDIA CAMPAIGN ............................................................................... 17

              1.     DIGITAL EFFORT ...................................................................... 17

              2.     PRINT EFFORT .......................................................................... 18

              3.     RADIO EFFORT ......................................................................... 18

              4.     TELEVISION EFFORT ............................................................... 19

       C.     SUPPLEMENTAL ENTITY DIGITAL EFFORT ................................... 19

       D.     ADDITIONAL EFFORTS ........................................................................ 20

       E.     CLAIMS STIMULATION EFFORT ....................................................... 21

       F.     SETTLEMENT WEBSITE, TOLL-FREE NUMBER, P.O. BOXES & QR CODE ......................................................................................................... 22

      1.      SETTLEMENT WEBSITE ....................................................................22

      2.      DEDICATED TOLL-FREE NUMBER & CONTACT CENTER ..........23

      3.      DEDICATED P.O. BOXES & QR CODE.............................................23

  G.     THE NOTICES.........................................................................................24

      1.      LONG-FORM NOTICE ....................................................................24

      2.      SHORT-FORM NOTICE ..................................................................25

  H.     CLAIM FORM & PROCESSING .......................................................25

      1.      THE CLAIM FORM ........................................................................26

      2.      CLAIM PROCESSING ...................................................................27

           a.      For Claims Made by an Individual Policyholder Who Purchased Health Insurance or Administrative Service Plans Directly from a BCBS Company.............................................................................28

           b.      For Claims Made by any Insured Group, Self-Funded Account, or Employee thereof...............................................................28

           c.      Confirmation Process.................................................................30

           d.      Claim Payment Determination ....................................................31

           e.      Settlement Payments..................................................................32

  I.      OBJECTIONS AND OPT-OUTS .......................................................33

      1.      OBJECTING TO THE SETTLEMENT...................................................33

      2.      OPTING OUT OF THE SETTLEMENT..................................................34

VIII.  CONCLUSION ...........................................................................................35

# **TABLE OF AUTHORITIES**

## **Cases**

*Aboltin v. Jeunesse, LLC*,
    No. 17-1624, 2018 WL 6576464 (M.D. Fla. Sept. 13, 2018)..........................................14

*Access Now, Inc. v. Claire's Stores, Inc.*,
    No. 00–14017–CIV, 2002 WL 1162422 (S.D. Fla. May 7, 2002)....................................5

*Adams v. S. Farm Bureau Life Ins. Co.*,
    493 F.3d 1276 (11th Cir. 2007)...................................................................................3, 9

*Broomfield v. Craft Brew All., Inc.,*
    No. 17-cv-1027, 2020 U.S. Dist. LEXIS 74801 (N.D. Cal. Feb. 5, 2020)......................14

*Carroll v. Macy's, Inc.*,
    No. 2:18-cv-1060, 2020 WL 3037067(N.D. Ala. June 5, 2020)......................................14

*Exum v. National Tire and Battery*,
    No. 9:19-cv-80121-WM, 2020 WL 1670997 (S.D. Fla. Apr. 6, 2020).............................4

*Faught v. Am. Home Shield Corp.*,
    668 F.3d 1233 (11th Cir. 2011)......................................................................................3

*Gonzalez v. Dynamic Recovery Solutions, LLC*,
    Nos. 14–CIV–24502, 14–CIV–20933, 2015 WL 738329 (S.D. Fla. Feb. 23, 2015)..........4

*Greco v. Ginn Dev. Co., LLC*,
    635 F. App'x. 628, 633 (11th Cir. 2015) .........................................................................3

*In re APA Assessment Fee Litig.)*,
    311 F.R.D. 8 (D. D.C. 2015)...........................................................................................14

*In re Domestic Airline Travel Antitrust Litig.*,
    322 F. Supp. 3d 64 (D.D.C. 2018) ...............................................................................15

*In re Domestic Airline Travel Antitrust Litig.*,
    378 F. Supp. 3d 10 (D.D.C. 2019) ...............................................................................14

*In re Facebook Biometric Info. Privacy Litig.*,
    No. 15-cv-3747, 2020 U.S. Dist. LEXIS 151269 (N.D. Cal. Aug. 19, 2020) .................34

*In re Livingsocial Mktg. & Sales Practice Litig.*,
    298 F.R.D. 1 (D.D.C. 2013)...........................................................................................14

*In re Pool Prod. Distribution Market Antitrust Litig.*,
    310 F.R.D. 300 (E.D. La. 2015) ..................................................................................... 14

*In re Sony PS3 "Other OS" Litig.*,
    No. 10-cv-1811, 2017 U.S. Dist. LEXIS 203402 (N.D. Cal. No. 21, 2017) ................... 14

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
    2020 U.S. Dist. LEXIS 129939 (N.D. Cal. July 22, 2020) ............................................. 14

*Juris v. Inamed Corp.*,
    685 F.3d 1294 (11th Cir. 2012) ...................................................................................... 4

*Kertesz v. Rick's Cabaret Int'l, Inc.*,
    No. 11-61289, 2012 WL 13005979 (S.D. Fla. Aug. 22, 2012) ...................................... 14

*Levine v. Am. Psychological*,
    311 F.R.D. 8 (D. D.C. 2015) .......................................................................................... 14

*Mahoney v. TT of Pine Ridge, Inc.*,
    No. 17-80029, 2017 WL 9472860 (S.D. Fla. Nov. 20, 2017) ........................................ 14

*Mayhew v. KAS Direct, LLC*,
    No. 16 CV 6981, 2018 U.S. Dist. LEXIS 106680 (S.D.N.Y. June 26, 2018) ................. 14

*Morgan v. Public Storage*,
    301 F. Supp. 3d 1237 (S.D. Fla. 2016) ................................................................ 3, 4, 14

*Perez v. Asurion Corp.*,
    501 F. Supp. 2d 1360 (S.D. Fla. 2007) .......................................................................... 16

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ........................................................................................................ 3

*Rivera v. Amalgamated Debt Collection Services, Inc.*,
    No. 05-CIV-20176, 2007 WL 9701693 (S.D. Fla. Feb. 27, 2007) .................................. 5

*Saini v. BMW of N. Am., LLC*,
    No. 12-6105, 2015 U.S. Dist. LEXIS 66242 (D.N.J. May 21, 2015) ............................. 14

*Twigg v. Sears & Roebuck & Co.*,
    153 F.3d 1222 (11th Cir. 1998) ...................................................................................... 3

*Underwood v. Manfre*,
    No. 13-cv-192, 2014 WL 67644 (M.D. Fla. Jan. 8, 2014) .............................................. 4

*Waxman v. Equitable Life Assurance Society of the United States*,
    No. 08-60657-CIV, 2009 WL 10701022 (S.D. Fla. Sept. 29, 2009) ................................5

*West v. ExamSoft Worldwide, Inc.*,
    No. 14-22950, 2015 WL 11233141 (S.D. Fla. May 12, 2015) .........................................14

## **Rules**

Fed. R. Civ. P. 23(b)(2) ...........................................................................................................4, 5

Fed. R. Civ. P. 23(e) ....................................................................................................................3

Fed. R. Civ. P. 23(c)(2)(A) ......................................................................................................4, 5

Fed. R. Civ. P. 23(c)(2)(B) ......................................................................................................4, 5

## **Other Authorities**

7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*
§ 1793 (3d ed. 2020) ...................................................................................................................4

v

Subscriber Class Representatives[1] ("Subscriber Plaintiffs") submit this Memorandum of Law in support of their Motion for Approval of Plan for Notice and Appointment of Claims Administrator.  As set forth herein, and as further supported by Subscriber Plaintiffs' Motion for Preliminary Approval of Proposed Class Settlement and Memorandum of Law in Support ("Preliminary Approval Motion"), the proposed Notice Plan is practicable, reasonable, and meets the requirements of Rules 23(c)(2) and (e)(1) of the Federal Rules of Civil Procedure.  Proposed orders granting preliminary approval (including of the Notice Plan) and final approval are attached to the Preliminary Approval Motion as Exhibits B and C, respectively.

## I.      BACKGROUND

Subscriber Plaintiffs and Settling Defendants[2] have entered into a settlement agreement resolving litigation arising from the facts asserted in the today-filed Fourth Amended Complaint in this action (the "Settlement Agreement" or "S.A.").[3]  A portion of the Settlement Amount— $100 million—will be placed into an escrow account and designated per the Settlement Agreement as the Notice and Administration Fund.  Upon entry of an order granting preliminary approval of

---

[1] Galactic Funk Touring, Inc.; American Electric Motor Services, Inc.; CB Roofing, LLC; Pearce, Bevill, Leesburg, Moore, P.C.; Pettus Plumbing & Piping, Inc.; Consumer Financial Education Foundation of America, Inc.; Fort McClellan Credit Union; Rolison Trucking Co., LLC; Conrad Watson Air Conditioning, Inc.; Linda Mills; Frank Curtis; Jennifer Ray Davidson; Pete Moore Chevrolet, Inc.; Jewelers Trade Shop; Saccoccio & Lopez; Angel Foster (*fka* Angel Vardas); Monika Bhuta; Michael E. Stark; G&S Trailer Repair Incorporated; Chelsea L. Horner; Montis, Inc.; Renee E. Allie; John G. Thompson; Avantgarde Aviation, Inc.; Hess, Hess & Daniel, P.C.; Betsy Jane Belzer; Bartlett, Inc., d/b/a Energy Savers; Matthew Allan Boyd; Gaston CPA Firm; Rochelle and Brian McGill; Sadler Electric; Jeffrey S. Garner; Amy MacRae; Vaughan Pools, Inc.; Casa Blanca, LLC; Jennifer D. Childress; Clint Johnston; Janeen Goodin and Marla S. Sharp; Erik Barstow; GC/AAA Fences, Inc.; Keith O. Cerven; Teresa M. Cerven; Sirocco, Inc.; Kathryn Scheller; Iron Gate Technology, Inc.; Nancy Thomas; Pioneer Farm Equipment, Inc.; Scott A. Morris; Tony Forsythe; Joel Jameson; Ross Hill; Angie Hill; Kevin Bradberry; Christy Bradberry; Tom Aschenbrenner; Juanita Aschenbrenner; Free State Growers, Inc.; Tom A. Goodman; Jason Goodman; Comet Capital, LLC; Barr, Sternberg, Moss, Lawrence, Silver & Munson, P.C.; Mark Krieger; Deborah Piercy; and Lisa Tomazzoli. This memorandum is also supported by the Self-Funded Sub-Class Representative Hibbett Sports, Inc.

[2] Capitalized terms not otherwise defined herein shall have the meaning given them in the Settlement Agreement, attached to the Preliminary Approval Motion as Exhibit A ("S.A").

[3] The Preliminary Approval Motion addresses additional details of the Settlement Agreement including, *inter alia*, injunctive relief (*e.g.,* abolition of the National Best Efforts rule,  changes in the way Settling Defendants do business to increase the opportunities for competition in the market for health insurance, and appointment of a Monitoring Committee to mediate disputes arising under the Settlement Agreement).

the Settlement and authorizing such disbursements, the Notice and Administration Fund will pay reasonable costs incurred in connection with providing notice to the proposed Settlement Classes and administering the Settlement. S.A. ¶¶ 1(fff), (ggg). Settlement Class Counsel and Self-Funded Sub-Class Settlement Counsel may apply to the Court for additional money for the Notice and Administration Fund if necessary. S.A. ¶ 1(ggg).

The Settlement Agreement requires that Subscriber Plaintiffs' Notice Plan include notice forms, a plan for disseminating notice to Class Members, and the proposed timing for implementing the Notice Plan. S.A. ¶ 5. The Settlement Agreement also requires that the Notice Plan meet the due process and Rule 23 requirements of apprising Class Members of the pendency of the Subscriber Actions, the Settlement, and their opportunity to be heard and (for Damages Class members) to opt-out. S.A. ¶¶ 5(a), 38. Settling Defendants have agreed to provide the reasonably accessible data in their possession and kept in the ordinary course of business that is reasonably necessary to effectuate the Notice Program and Claims Administration. S.A. ¶ 5(b).

The Settlement Agreement anticipates the Court appointing a Claims Administrator and a Settlement Administrator. The Claims Administrator's task is to "manage and administer the process by which Class Members are notified of and paid pursuant to this Agreement." S.A. ¶ 1(j). The Settlement Administrator will "assist in the implementation of the Plan of Distribution and the resolution of any disputes between Settlement Class Members and the Claims Administrator pursuant to the Plan of Distribution."[4] S.A. ¶ 1(iiii).

Subscriber Plaintiffs' proposed Notice Plan will provide direct notice to Damages Class members through e-mail and/or postcard, dependent on whether an email address for the Damages

---

[4] Subscriber Plaintiffs will seek Court appointment of a Settlement Administrator upon preliminary approval of the proposed Plan of Distribution. A copy of the proposed Plan of Distribution is attached to the Preliminary Approval Motion at Exhibit D ("Plan of Distribution" or "Plan").

Class Member was provided in the ordinary course of business with Damages Class Members.  In order to ensure broad awareness of the Settlement, the Notice Plan also includes:  (1) media notice; (2) an internet campaign to raise awareness of the Settlement; (3) a Settlement website; (4) a toll-free help line; and (5) a robust claims stimulation plan.  Subscriber Plaintiffs further propose that JND Legal Administration ("JND") be appointed as Claims Administrator.  Details regarding the proposed Notice Plan as well as the qualifications of JND follow.

## II.   LEGAL STANDARD FOR NOTICE

Federal Rule of Civil Procedure 23 governs class notice requirements. The standard for the adequacy of a settlement notice in a class action is measured by reasonableness.  *See* Fed. R. Civ. P. 23(e).  In this Circuit, Rule 23 has been interpreted "to require that class members be given 'information reasonably necessary to make a decision [whether] to remain a class member and be bound by the final judgment or opt-out of the action,' though the notice need not include 'every material fact' or be 'overly detailed.'"  *See Faught v. Am. Home Shield Corp*., 668 F.3d 1233, 1239 (11th Cir. 2011) (internal citation omitted); *see also Greco v. Ginn Dev. Co., LLC,* 635 F. App'x. 628, 633 (11th Cir. 2015) (citing *Faught*, 668 F.3d at 1239).  "In reviewing the class notice to determine whether it satisfies the [ ] requirements [of due process], 'we look solely to the language of the notices and the manner of their distribution.'" *Adams v. S. Farm Bureau Life Ins. Co*., 493 F.3d 1276, 1286 (11th Cir. 2007) (quoting *Twigg v. Sears & Roebuck & Co.*, 153 F.3d 1222, 1226 (11th Cir. 1998)).

To satisfy due process requirements under Rule 23(b)(3) of the Federal Rules of Civil Procedure, notice must be the "best practicable, 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Morgan v. Public Storage*, 301 F. Supp. 3d 1237, 1261 (S.D. Fla. 2016) (quoting *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985)).

Additionally, the *Morgan* court confirmed that, in the Eleventh Circuit, "best practicable" notice did not require that every class member actually receive notice. *Id.* (citing *Juris v. Inamed Corp*., 685 F.3d 1294, 1317 (11th Cir. 2012)); *see also* DANIEL R. COQUILLETTE ET AL., MOORE'S FEDERAL PRACTICE: CIVIL ¶ 23.102. Rather, the relevant question is "whether the notice [] is reasonably calculated to reach the absent members. The fact that some class members may not actually receive timely notice does not render the notice inadequate as long as the class as a whole had adequate notice." *Morgan*, 301 F. Supp. 3d at 1261 (citing MOORE'S FEDERAL PRACTICE: CIVIL ¶ 23.102).

Notice is not required for injunctive relief classes certified pursuant to Fed. R. Civ. P. 23(b)(2).[5] Rather, Rule 23(c)(2)(A) provides that a court *may* direct appropriate notice to an injunctive relief class. *See Underwood v. Manfre*, No. 13-cv-192, 2014 WL 67644, at *7 n.4 (M.D. Fla. Jan. 8, 2014) ("The Court notes that because this is a class action promulgated under Rule 23(b)(2), the notice is not subject to the requirements of Rule 23(c)(2)(B)."); *see also* 7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1793 (3d ed. 2020), ("there is no corresponding mandatory-notice provision when the class action is brought under Rule 23(b)(1) or Rule 23(b)(2); in these cases notice is discretionary only…."). In the Eleventh Circuit, courts have routinely held that Rule 23 does not require class counsel to provide notice to injunctive class members. *See*, *e.g.*, *Exum v. National Tire and Battery*, No. 9:19-cv-80121-WM, 2020 WL 1670997, at *7 (S.D. Fla. Apr. 6, 2020); *Gonzalez v. Dynamic Recovery Solutions, LLC*, Nos. 14–CIV–24502, 14–CIV–20933, 2015 WL 738329, at *2 (S.D. Fla. Feb. 23,

---

[5] The law does not require notice to injunctive class members because the nature of the relief does not require or allow class members to opt-out or make claims. *See, e.g.,* Fed. R. Civ. P. 2003 Advisory Committee Note ("The authority to direct notice to class members in a (b)(1) or (b)(2) class action should be exercised with care. For several reasons, there may be less need for notice than in a (b)(3) class action. There is no right to request exclusion from a (b)(1) or (b)(2) class."

2015); *Waxman v. Equitable Life Assurance Society of the United States*, No. 08-60657-CIV, 2009 WL 10701022, at *6 (S.D. Fla. Sept. 29, 2009); *Rivera v. Amalgamated Debt Collection Services, Inc.*, No. 05-CIV-20176, 2007 WL 9701693, at *4-5 (S.D. Fla. Feb. 27, 2007); *Access Now, Inc. v. Claire's Stores, Inc.*, No. 00–14017–CIV, 2002 WL 1162422, at *3 (S.D. Fla. May 7, 2002).

As explained in detail below, the proposed Notice Plan meets the requirements of Rule 23 and of constitutional due process.  The proposed Notice Plan provides for direct notice to the members of the Damages Class (e-mail or postcard) which will include: the nature of the action; the composition of the Settlement Classes; the claims, issues and defenses applicable to class members; the right of a class member to obtain counsel, to object to the Settlement, or (for Damages Class members) to opt-out of the Settlement; and the binding effect of the Settlement on class members who do not opt-out.  *See* Fed. R. Civ. P. 23(c)(2)(B).  It further provides, *inter alia*, additional and "appropriate" notice for members of both Settlement Classes via a robust media campaign, designed to reach more than 85% of the Settlement Classes.  *See* Fed. R. Civ. P. 23(c)(2)(A).

 Accordingly, and as set forth in detail below, the Court should approve the proposed Notice Plan.

## III.   THE SETTLEMENT CLASSES

As detailed in the Preliminary Approval Motion, Subscriber Plaintiffs seek certification of two Settlement Classes: a Damages Class (which includes a Self-Funded Sub-Class) under Rule 23(b)(3) and an Injunctive Relief Class under Rule 23(b)(2).

### A.   DAMAGES CLASS

The proposed Damages Class, currently estimated at tens of millions members, "includes all Individual Members (excluding dependents and beneficiaries), Insured Groups (including

employees,[6] but not non-employee Members), and Self-Funded Accounts (including employees, but excluding non-employee Members) that purchased, were covered by, or were enrolled in a Blue-Branded Commercial Health Benefit Product (unless the person or entity's only Blue-Branded Commercial Health Benefit Product during the Settlement Class Period was a stand-alone vision or dental product) sold, underwritten, insured, administered, or issued by any Settling Individual Blue Plan" from February 7, 2008 through October 16, 2020[7] (in the case of all Damages Class members other than the Self-Funded Sub-Class, for whom the Class Period is September 1, 2015 through October 16, 2020).  S.A. ¶ 1(v).

As contemplated by the Settlement, Subscriber Plaintiffs are also seeking certification of a "Self-Funded Sub-Class" consisting of Accounts (including employees, but excluding non-employee Members) that purchased, were covered by, or were enrolled in a Blue-Branded Commercial Health Benefit Product (unless the person or entity's only Blue-Branded Commercial Health Benefit Product during the Settlement Class Period was a stand-alone vision or dental product) sold, underwritten, insured, administered, or issued by any Settling Individual Blue Plan from September 1, 2015 through October 16, 2020.

Excluded from the Damages Class and the Self-Funded Sub-Class are Government Accounts, Medicare Accounts of any kind, Settling Defendants themselves, and any parent or subsidiary of any Settling Defendant (and their covered or enrolled employees).  Also excluded from the Damages Class and the Self-Funded Sub-Class are Opt-Outs, the judge presiding over this matter, and any members of his judicial staff, to the extent such staff were covered by a

---

[6] For purposes of the Damages Class, "employee" means any current or former employee, officer, director, partner, or proprietor of an entity.  S.A. ¶ 1(v).
[7] October 16, 2020 is the Execution Date of the Settlement.

Commercial Health Benefit Product not purchased by a Government Account during the Settlement Class Period.  S.A. ¶ 1(v).

The Net Settlement Fund will be apportioned pursuant to an allocation agreement reached after arm's-length negotiations mediated by the Allocation Mediator Kenneth J. Feinberg, with 93.5% allocated to the Damages Class (exclusive of the Self-Funded Sub-Class) and 6.5% allocated to the Self-Funded Sub-Class.  *See generally* Declaration of Kenneth Feinberg, attached to the Preliminary Approval Motion as Exhibit G.

### B.    INJUNCTIVE RELIEF CLASS

The Settlement Agreement defines the proposed Injunctive Relief Class, which includes, but is much broader than, the tens of millions of Damages Class Members, as "all Individual Members, Insured Groups, Self-Funded Accounts, and Members that purchased, were covered by, or were enrolled in a Blue-Branded Commercial Health Benefit Product sold, underwritten, insured, administered, or issued by any Settling Individual Blue Plan during the Settlement Class Period."  S.A. ¶ 1(pp).

The Settlement Class Period applicable to the Injunctive Relief Class is February 7, 2008 through October 16, 2020, except for Self-Funded Accounts for which the Settlement Class Period is September 1, 2015 through October 16, 2020.  S.A. ¶ 1(nnnn). The injunctive relief to be awarded is described in Paragraphs 10-18 of the Settlement Agreement (S.A. ¶ 1(pp)), and the rationale of the relief is addressed in detail in the Preliminary Approval Motion.

## IV.    THE PROPOSED CLAIMS ADMINISTRATOR

In anticipation of reaching a settlement, Settlement Class Counsel and Self-Funded Sub-Class Settlement Counsel conducted a lengthy interview process with multiple notice and claims administration providers over the past nine months.  In addition to multiple stages of telephonic and in-person interviews, the applicants submitted several rounds of proposed notice plans and

pricing proposals.  Subscriber Plaintiffs reviewed the proposals, paying particular attention to security and privacy protocols and experience in similarly large notice and administration plans. After careful consideration, Subscriber Plaintiffs, with the approval of Settling Defendants, recommend that the Court appoint JND as the Claims Administrator.  The declaration of Jennifer M. Keough, JND's Chief Executive Officer, details JND's experience, the facets of the Notice Plan, and why the Notice Plan is consistent with other court-approved notice programs, Rule 23 of the Federal Rules of Civil Procedure, the Due Process Clause of the United States Constitution, and Federal Judicial Center guidelines for Best Practicable Due Process notice.[8]  *See* Declaration of Jennifer M. Keough ("Keough Decl."), attached as Exhibit 1.

JND is one of the leading legal administration firms in the country.  JND's class action and lien resolution divisions are able to provide all services necessary to effectively implement class action settlements, including: (1) all facets of legal notice, such as outbound mailing, e-mail notification, and the design and implementation of media programs, including through digital and social media platforms; (2) website design and deployment, including online claim filing capabilities; (3) call center and other contact support; (4) secure class member data management; (5) paper and electronic claims processing; (6) lien verification, negotiation, and resolution; (7) calculation design and programming; (8) payment disbursements through check, wire, PayPal, merchandise credits, and other means; (9) qualified settlement fund tax reporting; (10) banking services and reporting; and (11) all other functions related to the secure and accurate administration of class action settlements.  Keough Decl. ¶ 4.

---

[8] Ms. Keough has more than 20 years of experience creating and supervising notice and claims administration programs, has overseen notice and/or claims administration programs in well over 500 matters, and will oversee this matter personally.  Keough Decl. ¶ 1.  As JND's CEO, she is regularly called upon to submit declarations in connection with JND's notice and administration work.  *Id.  See also* Keough Decl. Exhibit A (Biography).

Notably, JND is an approved vendor for the United States Securities and Exchange Commission as well as for the Federal Trade Commission.  JND also works with other government agencies, including the U.S. Equal Employment Opportunity Commission, the Office of the Comptroller of the Currency, the Consumer Financial Protection Bureau, the Federal Deposit Insurance Corporation, the Federal Communications Commission, the Department of Justice and the Department of Labor.  JND has also been certified as SOC 2 compliant by the noted accounting firm Moss Adams.  Finally, JND has been recognized by various publications, including the *National Law Journal*, the *Legal Times* and, most recently, the *New York Law Journal*, for excellence in class action notice and claims administration.  Keough Decl. ¶ 5.

The principals of JND, including Ms. Keough, collectively have over 75 years of experience in class action legal and administrative fields.  They have overseen some of the largest claims processes in the country's history and regularly prepare and implement court-approved notice and administration campaigns throughout the United States.  For example, Ms. Keough and her team handled all aspects of mailed and media notice, all call center operations, all claim intake, website activities, and all check distribution for the $20 billion Gulf Coast Claims Facility.  In the $10 billion+ BP Deepwater Horizon Settlement, Ms. Keough worked with the court-appointed claims administrator in overseeing all inbound and outbound mail activities, all call center operations, all claim intake, scanning and data entry, and all check distributions for the program.  She oversaw the entire administration process in the $3.4 billion Cobell Indian Trust Settlement (the largest U.S. government class action settlement ever).  Recently, JND has been handling the settlement administration of the $1.3 billion Equifax Data Breach Settlement, the largest class action ever in terms of the number of claims received; a voluntary remediation program in Canada on behalf of over 30 million people; the $120 million GM Ignition class action settlement, where

JND sent notice to nearly 30 million class members; the $215 million USC Student Health Center Settlement on behalf of women who were sexually abused by a doctor at USC; and hundreds of other matters. Keough Decl. ¶ 6.  JND's experience in handling large settlement funds will be applicable here and will directly benefit the class.

JND's Legal Notice Team, which operates under Ms. Keough's direct supervision, researches, designs, develops, and implements a wide array of legal notice programs to meet the requirements of Rule 23 of the Federal Rules of Civil Procedure and constitutional due process. JND's notice campaigns use a variety of media, including newspapers, press releases, magazines, trade journals, radio, television, social media, and the internet, to provide notice programs appropriate for the circumstances of the case, the demographics of the class, and the habits of relevant class members.[9]  Keough Decl. ¶ 7.

Based upon the foregoing, Subscriber Plaintiffs recommend the appointment of JND as Claims Administrator.

## V.    **REQUIRED DATA**

The Settlement Agreement requires that Settling Defendants produce Class Member Data (defined below), as well as any other data reasonably necessary to effectuate notice and claims administration, to the Claims Administrator so that notice can be effectuated:

> At their own expense, Settling Defendants agree to, within the later of 5 days after Court approval of the Notice Plan or 45 days after agreement between the Parties regarding the scope and methodology of Class Notice, supply to the Claims Administrator in electronic format data in their possession and kept in the ordinary course of business regarding the last known contact information of Class Members ("Class Member Data").  The Class Member Data will cover the entire Settlement Class Period and with respect to each Class Member will at least include: a to-be-agreed personal identifier (that can be cross referenced with a Member's first name, last name, and date of birth), last-known phone number (if any), last-known mailing address, and, if ordered by the Court, last-known e-mail address (if any).  The

---

[9] JND uses a variety of research and analytical tools to tailor notice programs to the circumstances of each individual case.

Claims Administrator may request any other data reasonably necessary to effectuate the Notice and Claims Administration ordered by the Court, and Settling Defendants will not unreasonably deny any such additional requests or fail to timely produce such data. Nothing in this Paragraph shall prevent Settlement Counsel from requesting samples of data from Settling Defendants to be produced prior to submission of the Notice Plan, and requests for such samples shall not be unreasonably denied.

S.A. ¶ B(5)(b).

After significant discussion over several months, Subscriber Plaintiffs, Settling Defendants, and JND have agreed on the scope, form and manner of delivery of the Class Member Data. The Claims Administrator believes the Class Member Data that Settling Defendants have agreed to produce (subject to a Court order requiring production) will allow for a robust notice program as well as an efficient and effective claims administration program. The Subscriber Plaintiffs and Settling Defendants have prepared and will separately file a Joint Motion for Entry of Stipulation and Proposed Order Regarding Protected Health Information and Personally Identifiable Information for Subscriber Settlement ("Data Production Order"), which will authorize the production of the Class Member Data by Settling Defendants.[10]

As of this filing, the Class Member Data is being gathered but has not yet been produced by Settling Defendants. The Claims Administrator cannot send direct notice until it has contact information data for class members from Settling Defendants and JND has completed its own processing, scrubbing, and cleaning of the data for its use. Keough Decl. ¶ 87.

## VI.   TIMELINE FOR NOTICE, CLAIM FILING, OBJECTIONS & EXCLUSIONS

Subscriber Plaintiffs propose to complete Notice efforts within 90 days of receiving adequate Class Member Data from Settling Defendants. The final fairness hearing will take

---

[10] Due to HIPAA and other privacy concerns, Settling Defendants will not voluntarily produce the Class Member Data.

place 105 days after completion of Notice efforts, and the claims filing deadline will be 30 days

after the final fairness hearing.  A suggested timeline follows:

| Day 1 | Date of production under the Data Production Order of a complete set of Class Member Data by Settling Defendants |
|---|---|
| Day 90 | Notice Deadline |
| Day 105 | Deadline for Settlement Class Counsel to file motion for Fee and Expense Award |
| Day 150 | Deadline for objections or exclusions |
| Day 180 | Deadline for Settlement Class Counsel to file motion for Final Approval of Settlement and responses to any timely submitted Settlement Class Member objections |
| Day 230 | Final Approval Hearing |
| Day 250 | Claim filing deadline |

Upon receipt of the complete set of Class Member Data from the Settling Defendants

pursuant to the Data Production Order, Subscriber Plaintiffs will notify the Court of the

commencement of the Notice Plan, consistent with the timeline above.

## VII.   THE NOTICE PLAN

The proposed Notice Plan, attached to the Keough Declaration as Exhibit B, has been

designed to provide the best notice practicable, consistent with the latest methods and tools

employed in the industry and approved by other courts.  Keough Decl. ¶ 15.  The proposed Notice

Plan contemplates using a combination of:

- E-mail and postcard direct notice;
- An extensive media notice campaign;
- A supplemental industry digital media campaign;
- Additional efforts such as third-party outreach, a specially designed internet campaign, and a multichannel news release;
- Various mechanisms to stimulate claims; and

- A Settlement website, a dedicated toll-free number and contact center, and a QR code for mobile access to the Settlement website.[11]

*See generally* Keough Decl. ¶¶ 15-25 (summary of Notice Plan); Keough Decl. Exhibit B.

The proposed Notice Plan is similar to and, indeed, more robust than other court-approved programs and meets the high reach standard recommended by the Federal Judicial Center. Keough Decl. ¶¶ 15, 86. The Notice Plan and supporting notice documents attached thereto and described herein comply with all legal requirements and comport with the Federal Judicial Center's Class Action Notice and Plain Language Guide. Keough Decl. ¶ 89.

### A.   DIRECT INDIVIDUAL NOTICE

The Notice Plan contemplates direct, individual notice to all members of the Damages Class for whom the Settling Defendants provide contact information as part of the Class Member Data. Keough Decl. ¶ 26. Direct notice will be sent either through e-mail or color postcard; copies are attached to the Keough Declaration at Exhibits E and F.

Direct notice will include a personal identifier number ("Unique ID") assigned to each potential claimant in the Settling Defendants' production. Keough Decl. ¶ 26.[12] Both the e-mail and the postcard notice will identify and guide the claimant to an interactive website where Class Members can review the Settlement Agreement and other key documents in the case, submit claims, and if preferred, request hard copies of the claim form. Keough Decl. ¶ 31. A Spanish-language tag will be included on the direct notice to direct Spanish-speaking Damages Class Members to the Spanish-language version of the Settlement website. Keough Decl. ¶ 32.

---

[11] Settling Defendants will issue CAFA notice to the appropriate state and federal officials. Once completed, Settling Defendants will file with the Court a status report certifying that they proof of receipt of the CAFA notice to all U.S. States and territories.

[12] The Unique ID is linked to all relevant data pertaining to claimants and is used for tracking and processing each claim. Keough Decl. ¶ 26 n.4.

Direct notice will further be buttressed by a robust media notice campaign (which on its own is expected to reach 85% of potential members of the Settlement Classes).  Keough Decl. ¶ 42.

### 1.    DIRECT NOTICE VIA E-MAIL

JND will use e-mail contact information that was provided to Settling Defendants in the ordinary course of business with Damages Class Members to send direct notice to the Damages Class in the first instance.  Keough Decl. at ¶ 27.

Courts,[13] including this one, have approved notice programs in which e-mail is a principal method of delivering notice to class members.  For example, in *Carroll v. Macy's, Inc*., No. 2:18-cv-1060, 2020 WL 3037067(N.D. Ala. June 5, 2020) (Proctor, J.), this Court approved a notice plan that, in the first instance, sent e-mail notice to the members of the settlement class, with postcard notice only sent to class members with no e-mail addresses or in the event of e-mail notice "bounce back."  *Id*. at *2-3, 5.[14]   E-mail notice is particularly appropriate where, as here, a

---

[13] Other district courts within the Eleventh Circuit have approved of e-mail notice campaigns when e-mail notice is supplemented by U.S. mail for class members who do not have an e-mail address or when an e-mail is returned as undeliverable.  See *Aboltin v. Jeunesse, LLC*, No. 17-1624, 2018 WL 6576464, at *2 (M.D. Fla. Sept. 13, 2018) (granting preliminary approval of a notice plan providing for e-mail notice to all class members, and postcard notice by U.S. mail if the defendant did not have an e-mail address for a certain class member, or if two e-mail attempts proved unsuccessful for a certain class member); *West v. ExamSoft Worldwide, Inc.*, No. 14-22950, 2015 WL 11233141, at *3 (S.D. Fla. May 12, 2015) (granting preliminary approval of a notice plan in which the settlement administrator would send notice via e-mail); *Kertesz v. Rick's Cabaret Int'l, Inc.*, No. 11-61289, 2012 WL 13005979, at *1 (S.D. Fla. Aug. 22, 2012) (finding notice sent via text message, e-mail, and website publication satisfied Rule 23 and due process); *Mahoney v. TT of Pine Ridge, Inc*., No. 17-80029, 2017 WL 9472860, at *3 (S.D. Fla. Nov. 20, 2017) (approving e-mail notice program in case involving a local car dealership in which class members without an identifiable e-mail address were sent a postcard via U.S. mail and notice was supplemented by a settlement website, a toll-free number, and publication in two regional newspapers).

[14] Many other courts have also held that e-mail notice in the first instance is an acceptable form of direct notice.  *See, e.g., In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2020 U.S. Dist. LEXIS 129939, at *79 (N.D. Cal. July 22, 2020); *Broomfield v. Craft Brew All., Inc.*, No. 17-cv-1027, 2020 U.S. Dist. LEXIS 74801, at *10 (N.D. Cal. Feb. 5, 2020); *In re Domestic Airline Travel Antitrust Litig.*, 378 F. Supp. 3d 10, 15 (D.D.C. 2019); *Mayhew v. KAS Direct, LLC*, No. 16 CV 6981, 2018 U.S. Dist. LEXIS 106680, at *25 (S.D.N.Y. June 26, 2018); *In re Sony PS3 "Other OS" Litig.*, No. 10-cv-1811, 2017 U.S. Dist. LEXIS 203402 (N.D. Cal. No. 21, 2017); *Morgan v. Public Storage*, 301 F.Supp.3d 1237, 1261-66 (S.D. Fla. 2016); *In re Pool Prod. Distribution Market Antitrust Litig.*, 310 F.R.D. 300, 317-1-8 (E.D. La. 2015); *Levine v. Am. Psychological Ass'n (In re APA Assessment Fee Litig.)*, 311 F.R.D. 8, 13 (D. D.C. 2015); *Saini v. BMW of N. Am., LLC*, No. 12-6105, 2015 U.S. Dist. LEXIS 66242, at *30 (D.N.J. May 21, 2015); *In re Livingsocial Mktg. & Sales Practice Litig.*, 298 F.R.D. 1, 8 (D.D.C. 2013).

defendant has communicated with its membership via e-mail, the cost of direct mail is high, and e-mail notification will be supplemented by publication notice. *Cf. In re Domestic Airline Travel Antitrust Litig.*, 322 F. Supp. 3d 64, 72 (D.D.C. 2018) ("Accordingly, taking into account that the majority of class members use the Internet to book their flights, as well as the large size of the class and the disproportionately higher cost of providing notification by direct mail as opposed to e-mail, and considering that the e-mail notification will be supplemented by publication through print and media outlets and numerous websites, databases and online services, the Court finds that the notice proposed in the Settlement Notice Program constitutes the 'best notice practicable' under the circumstances of this case.").

JND uses industry-leading e-mail solutions to design the most efficient e-mail notification campaigns. Its team is staffed with e-mail experts and software solution teams to conform the e-mail notice program to the particulars of the Settlement. Keough Decl. ¶ 34. As is JND's standard e-mail notification process, JND will utilize a verification program to eliminate invalid email and spam traps that would otherwise negatively impact deliverability. Keough Decl. 36. Additional details regarding the best practices that JND is implementing in the e-mail notice program—*e.g.*, monitoring, spam testing, improving deliverability, avoiding the use of attachments, and readability—are contained in the Keough Declaration at ¶¶ 35-41. Of note, BCBSA has agreed to post a link to the Settlement website on its own website at or around the time the e-mail notice is issued by JND, strengthening the reliability of the e-mail that JND will send to BCBS customers.

## 2. DIRECT NOTICE VIA COLOR POSTCARD

For those Damages Class Members where an email address provided in the ordinary course of business with Damages Class Members is unavailable, or if the e-mail cannot be ultimately

delivered,[15] JND will send color postcard notice to such Damages Class Members.  Keough Decl.

¶ 41.[16]  Postcard notice is widely used for delivering direct notice to avoid the expense of sending

a full notice and claim form to the entire class.  *See Perez v. Asurion Corp*., 501 F. Supp. 2d 1360,

1377 (S.D. Fla. 2007) (listing elements to be included on postcard notice). Here, based on the size

of the Class, the postage savings alone in using postcard notice will be in the tens of millions of

dollars before even taking into account the savings in printing and processing costs.  Moreover,

the use of postcard notice will direct Damages Class Members to the website, which is the easiest

and most efficient way to file a claim.  Keough Decl. ¶ 30.

Prior to sending postcard notice, JND will run the mailing addresses through the United

States Postal Service ("USPS") National Change of Address ("NCOA") database.[17]  JND will

further track all postcard notices returned undeliverable by the USPS and will promptly re-mail

postcard notices that are returned with a forwarding address.  JND will also take reasonable efforts

to research and determine if it is possible to reach a Damages Class Member for whom the postcard

notice is returned without a forwarding address by mailing to a more recent mailing address at

which the potential Damages Class Members might be reached.  Keough Decl. ¶ 41.

---

[15] E-mails that are returned to JND are generally characterized as either "Soft Bounces" or "Hard Bounces."  Hard Bounces are when the ISP rejects the e-mail due to a permanent reason such as the e-mail account in no longer active. Soft Bounces are when the e-mail is rejected for temporary reasons, such as the recipient's e-mail address inbox is full.  Keough Decl. ¶ 40.  The course of action that JND takes will depend on the type of bounce, but for all e-mail notices that are deemed undeliverable, postcard notice will be sent.  Keough Decl. ¶ 41 (explaining these courses of action).

[16] The use of color will help differentiate the postcard from junk mail.  Moreover, JND will use the Settling Defendants' logos on the Postcard Notice to add additional indicia of reliability to the postcard notice.  Keough Decl. ¶ 41.

[17] The NCOA database is the official USPS technology product which makes change of address information available to mailers to help reduce undeliverable mail pieces before mail enters the mail stream. This product is an effective tool to update address changes when a person has completed a change of address form with the USPS.  The address information is maintained on the database for 48 months.  Keough Decl. ¶ 41 n.5.

B.     **MEDIA CAMPAIGN**

In addition to direct notice, the Notice Plan outlines an extensive campaign for media notice to both Settlement Classes.  Keough Decl. ¶¶ 42-65.  Again, the media plan *alone* is designed to reach at least 85% of both Settlement Classes.  *See* Keough Decl. ¶¶ 15, 42 (noting that the FJC's *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* considers a notice plan with a 70%-95% reach to be effective).

The Media Campaign has four distinct notice components: The media campaign is comprised of the following: (a) Digital Effort (Google, Facebook); (b) Print Effort (*People*, *Better Homes & Gardens*); (c) Radio Effort (Sirius XM, iHeart Radio, Pandora/Spotify audio streaming as well as leading syndicated programs in the top ten African American markets and Spanish radio in the top ten Hispanic markets); and (d) Television Effort (cable, syndicated, and network morning news).  Keough Decl. ¶ 43; *see also id.* at ¶¶ 44-50 (explaining JND's use of advertising media research tools to ensure selection of the media that will reach the widest practicable share of a class; *id.* at ¶¶ 51-55 (explaining JND's use of demographics and media usage analysis to target appropriate audiences).

1.     **DIGITAL EFFORT**

The Digital Effort consists of digital ads which will be placed on the Google Display Network ("GDN"), the leading digital network, and Facebook, the top social media platform.  The Digital Effort will target Adults 18+, and approximately 10% will be allocated to Spanish sites (GDN) and Spanish-language accounts (Facebook).  Digital ads will be served across all types of devices—desktops, laptops, tablets and mobile—with an emphasis on mobile devices.  The

Digital Effort will generate over 428 million impressions[18] over a 10-week time period.  Keough Decl. ¶ 56.  Examples of these digital ads attached are attached to the Keough Declaration at Exhibit G.

### 2.    PRINT EFFORT

The Print Effort consists of full-page color notice placements in *People* and *Better Homes & Gardens* magazines.  Both *People* and *Better Homes & Gardens* are highly read consumer magazines.  *People* is a weekly entertainment magazine with a circulation in excess of 3.4 million and a readership of over 34.9 million.  *People* reaches 14% of Adults 18+ and extends notice to a broad demographic segment, including those class members who may not frequent the internet, particularly older class members.  *Better Homes & Gardens* is a monthly lifestyle magazine with a circulation of over 7.6 million and a readership exceeding 29.8 million.  It reaches 13% of Adults 18+ and, in particular, extends the reach of the media campaign to older women who may not frequent the internet.  Keough Decl. ¶¶ 57-59.  A copy of the form of notice that will be used in the print effort is attached to the Keough Declaration at Exhibit H.

### 3.    RADIO EFFORT

The Radio Effort consists of 30-second radio advertisements.  Keough Decl. ¶ 60.  JND will cause approximately 9,700 30-second radio spots will broadcast through Sirius XM satellite radio, two premiere radio networks (iHeart Radio – Scope and Spectrum networks), highly rated syndicated programming in the top ten African American markets (e.g., Rickey Smiley, Steve Harvey), and two leading Spanish providers (Spanish Broadcasting System "SBS" and Univision Radio) in the top ten Hispanic markets. Additional audio streaming will be placed through Pandora

---

[18] Impressions or Exposures are the total number of opportunities to be exposed to a media vehicle or combination of media vehicles containing a notice.  Impressions are a gross or cumulative number that may include the same person more than once. As a result, impressions can and often do exceed the population size.  Keough Decl. ¶ 57 n.4.

and Spotify. The allocation of spots among these various radio stations and programs will be at a level proportionate to the diverse demography of the class.  A variety of formats (e.g., country, adult contemporary, pop contemporary hit radio, class hits, urban contemporary) and programming will be used to extend reach to diverse demographic segments.  Keough Decl. ¶ 61.

Sirius XM is one of the largest subscription service radio providers, offering exposure to over 32.7 million subscribers and reaching over 65.4 million radio listeners.  Keough Decl. ¶ 63. iHeart Radio's the Scope has more than 575 station affiliates with a weekly listenership of 28 million.  The Spectrum has approximately 800 station affiliates and weekly listenership of 30 million.  Keough Decl. ¶¶ 63-64.

### 4.   TELEVISION EFFORT

For the Television Effort, JND will place over 950 30-second television spots on a variety of cable and syndicated networks and on network news programming.  Cable networks will include well known and highly viewed networks such as A&E, AMC, BET, CMT, CNN, Fox Sports, Golf Channel, HGTV, Hallmark, History, Lifetime, MSNBC, National Geo, OWN, TV Land, and the Weather Channel.  Syndicated programming may include shows such as Family Feud, Wheel of Fortune, Tamron Hall, and Entertainment Tonight.  Network news may include Good Morning America, the Today Show and CBS Morning News, among others.  Keough Decl. ¶¶ 64-65.

### C.   SUPPLEMENTAL ENTITY DIGITAL EFFORT

To reach class members who are entities such as companies or businesses rather than individuals, JND will employ a digital effort targeting those individuals who will be responsible for filing claims on behalf of entity members of the Damages Class.  These include senior level human resources employees who are engaged in handling and managing employee benefits and

health plan issues for entity class members, as well as business owners and partners of entity class members.  Keough Decl. ¶ 66.

This aspect of the media notice campaign will consist of 915,000 digital impressions on LinkedIn, the leading professional social media platform, and 1,000,000 digital impressions, to be placed on leading business websites, such as Yahoo Business, CNBC.com, FastCompany.com, Forbes.com, Bloomberg.com, Entrepeneur.com, WSJ.com, BusinessInsider.com and AllBusiness.com.  Keough Decl. ¶ 67.

JND will also cause 100,000 digital impressions to be placed on the Society for Human Resource Management website (shrm.org), and approximately 100,000 to be placed on Human Resource Executive's (hrexecutive.com) home page with 50,000 digital impressions on its benefit category page.  The Society for Human Resource Management (SHRM) is the largest human resources organization with more than 275,000 members worldwide while Human Resource Executive is a source for vice presidents and directors of human resources.  In addition, JND will cause notices to be placed four times each in leading business and healthcare and employee benefits e-newsletters: Franchise Times; Entrepreneur; Harvard Business Review Management Tip of the Day; SHRM; HREBenefits; Employee Benefit News Healthcare; Benefits Pro Daily and the Healthcare Dive Top Player.  Keough Decl. ¶¶ 69-70.  Samples of the class member entity digital ads are attached to the Keough Declaration at Exhibit I.

### D.    ADDITIONAL EFFORTS

JND will undertake additional efforts to further disseminate notice to Class Member entities, including a third-party outreach effort, a specially designed internet search campaign, and a multichannel news release that will work in tandem with the media campaign to increase awareness of the Settlement.  Keough Decl. ¶ 71.

JND plans to purchase lists of HR/employment benefit employees and health and accident insurance brokers through third-party outreach list providers.  JND will utilize the information on these lists to send notice, via mail and e-mail, as applicable, to over 150,000 contacts, requesting their assistance in spreading notice of the Settlement to class members.  Keough Decl. ¶ 72.

JND will also implement a digital search effort on the following search engines: Google, Yahoo, and Bing.  Web browsers frequently default to a search engine page, making search engines a common source to get to a specific website (i.e., as opposed to typing the desired URL in the navigation bar).  When purchased keywords related to the Settlement are typed into a search engine, a paid ad with a hyperlink to the Settlement website may then appear on the results page. Keough Decl. ¶ 73.  Samples of the internet search ads are attached to the Keough Declaration at Exhibit J.

A multichannel news release will assist in spreading information about the Settlement and furthering "word of mouth" communication.  At the launch of the notice campaign, a multichannel news release will be distributed into newsrooms and online syndication.  PR Newswire for Journalists, an exclusive members-only community of more than 41,000 influential journalists and bloggers, will also receive the news release.  These efforts will encourage journalists to visit a microsite and review a press release, the television spot, and other information about the Settlement. Keough Decl. ¶ 74.  A copy of the multichannel news release microsite is attached to the Keough Declaration at Exhibit K.

### E.    CLAIMS STIMULATION EFFORT

Claims stimulation is designed to remind claimants of the approaching claims deadline through the use of a wide-ranging media effort.  Keough Decl. ¶ 75.  A variety of techniques, explained below, may be utilized by JND.

The claims stimulation effort will include a digital campaign consisting of (1) a customized audience list, (2) retargeting, and (3) look-alike targeting.  Digital banner ads will also be served to potential Damages Class Members who visited the Settlement website but did not complete a claim submission (retargeting), as well as to individuals who demographically/geographically match with those Damages Class Members who have already filed online claims (look-alike targeting).  In addition, the multichannel news release (described above) will be updated to include a claim deadline reminder message.  Keough Decl. ¶¶ 76-77.

Based on the success of the initial media campaign and to further stimulate claims, television and radio spots may be added and broadcast to key markets with a large number of potential claims.  Additional print insertions may also be published.  Keough Decl. ¶ 78.  A copy of the reminder digital ads are attached to the Keough Declaration at Exhibit L.

### F.   SETTLEMENT WEBSITE, TOLL-FREE NUMBER, P.O. BOXES & QR CODE

#### 1.   SETTLEMENT WEBSITE

An informational, interactive Settlement website (www.BCBSsettlement.com) will be developed by JND for Class Members to obtain information about the Settlement.  The website will explain Class Members' rights and options and will be the primary source for the submission of claims.  The Settlement website will have an easy-to-navigate design and will contain, among other things, information about the Settlement, a frequently asked questions section, a list of important dates and documents, links to key case documents related to the Settlement, the ability to download a long-form notice and Claim Form, a report of Monitoring Committee Activities, and information about the toll-free telephone hotline.  In addition, the website will provide a streamlined approach for submitting claims electronically through a user-friendly and secure portal.  The website will also be translated into Spanish.  Keough Decl. ¶ 80.

The Settlement website will be mobile-enabled and ADA compliant, and will undergo significant penetration testing to make sure that the site cannot be breached as well as load testing to make sure that the site will be able to accommodate the expected traffic expected from a class this large.  It will also be designed to maximize search engine optimization through Google and other search engines. Keywords and natural language search terms will be included in the site's metadata to maximize search engine rankings.  Keough Decl. ¶ 84.  JND will monitor the Settlement website traffic and utilize that information when designing the claims stimulation effort.  Keough Decl. ¶ 81.

### 2.      DEDICATED TOLL-FREE NUMBER & CONTACT CENTER

JND will establish and maintain a dedicated toll-free telephone number with an automated Interactive Voice Recording ("IVR"), available 24 hours a day, seven days a week, that will provide class members with Settlement-related information and the ability to request and receive the notices and the Settlement claim form by mail.  Keough Decl. ¶ 82.

Class members will also have the option to speak with live customer service representatives five days a week during certain business hours; these representatives will provide Settlement-related information and can fulfill requests for notices and claims forms.  JND has multiple call center sites that can handle any volume of calls received on this matter.  Keough Decl. ¶ 83.

### 3.      DEDICATED P.O. BOXES & QR CODE

JND will establish two separate P.O. Boxes.  One P.O. Box will receive Class Member letters, inquiries, and Settlement claim forms and a second P.O. Box will receive Opt-Out requests.  Keough Decl. ¶ 84.

JND will create a QR Code (a matrix barcode) that will allow quick and direct access to the Settlement website through a mobile device.  The QR Code is included, where practicable, in printed notice documents.  Keough Decl. ¶ 85.

### G.     THE NOTICES

The notices (and Claim Form) are consistent with the Federal Rules of Civil Procedure and the Due Process Clause.  Although some non-material modifications may be necessary to accommodate case events (*e.g.*, changing deadlines or personnel or converting and conforming exhibits to electronic or digital formats), the final products will be substantially similar to the materials attached to the Keough Declaration at Exhibits C-F, H.[19]  Each contain summaries of the Settlement and the options that are available to Class Members, as well as how to obtain more information about the Settlement.  Keough Decl. ¶¶ 89-90.

The forms of notice will be sent and published in accordance with the Notice Plan and in the manner ordered by the Court in order to reach potential Class Members.  To the extent that some Class Members may speak Spanish as their primary language, the print notice documents include a subheading in Spanish at the top directing Spanish speaking Class Members to visit the Settlement website which will be available in Spanish.  Keough Decl. ¶ 93.

#### 1.     LONG-FORM NOTICE

The long-form notice will be posted on the Settlement website and will be available by mail if requested.  Keough Decl. 91.  The long-form notice provides details regarding the nature of the action; the makeup of the Settlement Classes; general descriptions of the claims asserted by Subscriber Plaintiffs and the defenses raised by Settling Defendants; the monetary and injunctive relief afforded by the Settlement Agreement; the right of a class member to obtain counsel, to

---

[19] Non-material modifications may also need to be made to Keough Exhibits G, I-L for the same reasons.

object to the Settlement or (for Damages Class members) to opt-out of the Settlement; and the binding effect of the Settlement on class members. Keough Decl. ¶ 91. It also provides, *inter alia*, details on when claims and objections are due, the procedures and timing for objecting or opting out, how and where to seek additional information, and how to submit a claim. Keough Decl. ¶ 91. A copy of the long-form notice is attached to the Keough Declaration at Exhibit C.

### 2.     SHORT-FORM NOTICE

The long-form notice was used as the basis to create the summary forms of notice: e-mail notice, postcard notice, and publication notice. Keough Decl. ¶ 92. The short-form notice provides, among other things, a summary of what the lawsuit is about, who is affected, what a class member may receive from the settlement, the deadline by which a claim should be submitted, other options (opting out and objecting), and how and where to obtain more information. Keough Decl. ¶ 95. Copies of the e-mail notice, postcard notice and publication notice are attached to the Keough Declaration at Exhibits E, F and H.

### H.     CLAIM FORM & PROCESSING

The Notice Plan is designed to direct claimants to a secure portal on the Settlement website which will use an interactive process for claims form submission that will more efficiently allow claimants to file their claims. Keough Decl. ¶¶ 97-98.[20] The Claim Form is designed to ensure that filing a claim is as simple as possible and will be sent to any individual who requests it.

---

[20] Online claim forms not only save substantial money in postage but are generally favored by claimants since the wizard feature of the process walks them through the form step by step and is very user-friendly. It helps to minimize the number of deficient claims by catching errors sometimes made by claimants when filling out their claim form, such as forgetting a signature. It also reduces the number of incomplete claims by preventing a claimant from moving on to the next step until all required information has been entered in the current step of the Claim Form. For the Claims Administrator, electronic claims eliminate the step of data entry and generally make processing easier and less expensive. Keough Decl. ¶ 94.

Keough Decl. ¶ 94.  A copy of the Claim Form is attached to the Keough Declaration at Exhibit D.

### 1.   THE CLAIM FORM

The Claim Form—whether accessed through the secure portal or completed in hard copy—will request the same information from claimants.  Keough Decl. ¶ 95.  The language used in the Claim Form is simplified from the terminology used in the Settlement Agreement to be consistent with the Federal Judicial Center's directive to use plain language.  *See* Keough Decl. ¶ 89 (notice documents comply with FJC's Class Action Notice and Plain Language Guide).[21]

Broadly stated, the Claim Form will direct the claimant (whether an employer, self-insured or an employee) to provide their assigned Unique ID, name or the name of their business,[22] and their contact information, as well as identify, to the extent possible, the claimant's Blue health plan(s), group number(s), subscriber ID(s) (for individuals), and coverage dates.  Keough Decl. ¶ 96; Keough Decl. Exhibit D.  Pursuant to the Plan of Distribution (described in more detail in Subscriber Plaintiffs' Preliminary Approval Motion and below), Insured Groups and Self-Funded Accounts, as well as their respective employees, have an opportunity to submit a claim for a portion of the Net Settlement Fund, because premiums and administrative fees are typically shared between employers and employees.  *See* Keough Decl. Exhibit D at Sections A and C.  Claimants have the option of (i) selecting an assigned default allocation ("Default option") or (ii) seeking

---

[21] By way of example, Commercial Health Benefit Product is referred to as "health insurance" and administrative services contracts or accounts ("ASC") and jointly administered administrative services contracts or accounts ("JAA") are referred to collectively as "administrative service plans."  *See generally* Keough Decl. Exhibit D.

[22] Insured Groups and Self-funded Accounts will additionally be given the opportunity to identify whether they purchased BCBS health insurance or administrative service plans through a purchasing entity, such a Professional Employer Organization, or whether they are such a purchasing entity. *See generally* Keough Decl. Exhibit D.

additional funds based on the claimant's actual contribution percentage ("Alternative option").[23]
Keough Decl. Exhibit D at Section D ("Explanation of Employer/Employee Premium
Contributions"); *see also* Plan of Distribution ("Plan") at ¶¶ 19(e), 26.  For those claimants
choosing the Alternative option, the claimant must supply documentation with the Claim Form
supporting the actual contribution percentage.[24]  Keough Decl. Exhibit D at Section D; *see also*
Plan at ¶¶ 19(i), 26.  If neither option is selected, or if the Alternative option is selected but the
claimant does not provide supporting documentation, then the Default option will be applied.  Plan
at ¶¶ 19(i), 26.

Claimants also have the option of electing a form of payment: Paypal, Venmo, prepaid card
or check.  Keough Decl. Exhibit D at Section E.  A signature is required in order for the Claim
Form to be valid.  Keough Decl. ¶ 99; Keough Decl. Exhibit D at Section F ("Signature").

## 2.   CLAIM PROCESSING

All claimants may submit a Claim Form to the Claims Administrator electronically through
the Settlement website or physically by mail to a P.O. Box established by the Claims
Administrator. Keough Decl. ¶ 97.  The Claim Forms must be submitted or postmarked by a date
to be established by the Court.  Keough Decl. ¶ 97.

The Claims Administrator will review, determine the validity of, and process all Claim
Forms submitted by Class Members pursuant to the Court-approved Plan of Distribution.[25]  The

---

[23] The process by which the Default option allocation was determined is described in more detail in the Preliminary
Approval Motion, the Plan of Distribution, and the Declaration of Darrell B. Chodorow, attached thereto as Exhibit
H.

[24] Selection of the Alternative option does not ensure that a claimant will receive a contribution percentage higher than
or equal to the Default option.  Keough Decl. Exhibit D at Section D; Plan at 19.k.  Rather, the ultimate contribution
percentage is dependent on a process that includes a review of all materials submitted pertaining to each claimants'
particular payments.  Keough Decl. Exhibit D at Section D; *see also* Plan at ¶¶ 19.k., 26.  The process by which
allocation under the Alternative option was determined is described in more detail in the Preliminary Approval Motion,
the Plan of Distribution, and the Declaration of Darrell B. Chodorow, attached thereto as Exhibit H.

[25] In the event that a Damages Class member submits a Claim Form and also submits a letter requesting to opt-out of
the settlement, the Claims Administrator will send a letter asking the claimant to clarify his/her/its intent.  If the event

Claims Administrator will identify and flag any claims that are incomplete and will seek additional information from the claimant as necessary.[26]  If a claimant had multiple health insurance or administrative services plans at any point during the Settlement Class Period, the Claims Administrator will combine the premium data and/or costs from the multiple plans into a single claim for that claimant.  Keough Decl. ¶ 97.

          a.      <u>For Claims Made by an Individual Policyholder Who Purchased Health Insurance or Administrative Service Plans Directly from a BCBS Company</u>

Once the Claims Administrator has determined that an individual policyholder's claim is valid, it will compare the claim submission with the data produced by Settling Defendants in order to determine the Total Premiums Paid.[27]  Plan at ¶ 15.  As explained in the Plan of Distribution, the individual policyholder's final claim payment will be calculated by running the assigned Total Premiums Paid through the FI Claims Payment Calculation.  Plan at ¶¶ 13, 14.

          b.      <u>For Claims Made by any Insured Group, Self-Funded Account, or Employee thereof</u>

Pursuant to the Plan of Distribution, the Claims Administrator will use the Class Member Data to identify the Total Premiums Paid by an Insured Group and the Total Administrative Fees Paid (defined in Plan of Distribution at ¶ 25) by a Self-Funded Account that file a valid claim.[28]

---

that a class member fails to respond to the letter within thirty (30) days, the last submission received by the Claims Administrator will control so long as the submissions were received on or before the exclusion deadline.  Keough Decl. ¶ 97.

[26] Examples of deficiencies that would require a deficiency letter include: (i) a claimant who contests the default allocation but does not provide sufficient documentation to substantiate their claimed percentage (ii) a claimant who submits a mailed copy of the Claim Form and fails to sign the Claim Form; (iii) a claimant who fails to state how he/she/it wishes to receive payment; and (iv) other defects that make it impossible for the Claims Administrator to fully process and/or pay the claim.  Keough Decl. ¶ 97.

[27] Total Premiums Paid will include all insurance paid whether for single coverage or for family coverage.

[28] On the rare occasions when multiple Insured Groups file on behalf of the same claim, such as when a Purchasing Entity and the companies that purchased a health insurance plan or an administrative service plan through the Purchasing Entity both file a claim for the same plan, an initial allocation of the Total Premiums Paid by the groups will be determined as described in the Plan of Distribution at ¶ 21.

The Class Member Data will include the total amount of premiums and/or administrative fees paid by the Insured Group/Self-Funded Account on behalf of all people covered through the relevant plan for each year of the Settlement Class Period.  The only alteration the Claims Administrator will make to an Insured Group's Total Premiums Paid or a Self-Funded Account's Total Administrative Fees Paid will occur when an employee[s] (defined in Plan of Distribution at ¶ 8) of that Employer ("Employee"), files a valid claim allowing them to potentially recover based on their contribution to the respective premiums or administrative fees paid.  *See generally* Plan at ¶¶ 19(a)-(e), 26.

The Claims Administrator will determine the portion of the premiums and/or administrative fees assigned to the Employees who file a claim based on the formula set forth in the Plan of Distribution.  Plan at ¶¶ 18-19(a)-(g), 26.  Once the Claims Administrator determines the total amount of premiums and/or administrative fees paid on behalf of the Employee, the amounts of the premium and/or administrative fees paid will be allocated between the Insured Group/Self-Funded Account and the Employee.  *Id.*  Where both have selected the Default option or if only the Employee files, the allocation will be made pursuant to the percentages listed in the Plan of Distribution and will vary based on the type of coverage (individual or family).  *Id.*  The amount of the premium and/or administrative fee allocated to the Employee will be the Employee's Total Premiums Paid and/or Total Administrative Fees Paid, while the corresponding Insured Group's Total Premiums Paid and/or Self-Funded Account's Total Administrative Fees Paid will be reduced by that Employee[s]'s Total Premiums and/or Total Administrative Fees Paid.

If any claimant selects the Alternative option for determination of their percentage of contribution to the overall premium and/or administrative fees paid, and the claimant supplies documentation in support of that position, the Claims Administrator will review the documentation

to determine if it sufficient to support a greater contribution percentage. Plan at ¶¶ 19(h-i), 26; Keough Decl. ¶ 98. If the documentation is sufficient, the Claims Administrator will contact any counterpart (i.e., for an employer, their employees and for an employee, their employer) who has already filed a claim to provide them with an opportunity to submit their own additional evidence. Plan at ¶¶ 19(h), 26; Keough Decl. ¶ 98. The Claims Administrator will then provide the Settlement Administrator with the information received from claimants whose contribution percentage may be impacted by a claim that invokes the Alternative option. Plan at ¶¶ 19(k), 26; Keough Decl. ¶ 97. The Settlement Administrator will review all relevant claims, information and materials submitted pertaining to the impacted premium and/or administrative fee to determine the appropriate allocation to apply for each affected claimant. Plan at ¶¶ 19(k), 26. The Settlement Administrator will report its conclusions to the Claims Administrator, and the Claims Administrator will apply these conclusions to the contribution percentages and premium and/or administrative fee calculations to allocate the premiums and/or administrative fees between the claimants. Plan at ¶ 19(l).

c.    <u>Confirmation Process</u>

After the claims period has closed and after a claim has been fully processed and all deficiencies resolved, the Claims Administrator will create a secure portal on the Settlement website and post the year-by-year premiums and/or administrative fees (which form the basis of the claimant's ultimate distribution) assigned to each claimant, based on Settling Defendants' data and any other information gathered by the Claims Administrator through the claims process. *See* Keough Decl. ¶ 99. This figure will **not** represent the claimant's settlement payment, but rather identifies the basis for calculating such a payment.

A claimant may, within thirty (30) days of their premiums and/or administrative fees being posted on the secure portal, request a correction to the premium and/or administrative fee

30

calculation.  Keough Decl. ¶ 99.  If a claimant does so, the claimant must submit an explanation for why the premium and/or administrative fee figures provided by the Claims Administrator on the secure portal are in error and provide documentation sufficient to support a higher premium and/or administrative fee total during the Settlement Class Period.  Keough Decl. ¶ 99.

If the claimant does not request a correction to the confirmation letter within thirty (30) days, the premium and/or administrative fee value assigned will be final and will form the basis for the ultimate payment to the claimant from the Net Settlement Fund.  Keough Decl. ¶ 100.  If the Claims Administrator agrees with a claimant's request, the Claims Administrator will modify the premium and/or administrative fee value accordingly.  Keough Decl. ¶ 100.  If the Claims Administrator disagrees with the claimant's request, then the Claims Administrator will explain why and, as it deems appropriate, either request further documentation or simply make a final determination.  Keough Decl. ¶ 101.  In appropriate circumstances, the Claims Administrator may refer matters to the Settlement Administrator for final resolution.  Keough Decl. ¶ 101. The Settlement Administrator's decision on the applicable premium and/or administrative fee value shall be final. Keough Decl. ¶ 101; Plan at ¶ 19.l.

### d.  Claim Payment Determination

Upon resolution of all premium and/or administrative fee assignments, the Claims Administrator will use the Total Premiums Paid and/or Total Administrative Fees Paid by all authorized claimants to determine the payment amounts for all respective claims in accordance with the formulas laid out in the Plan of Distribution.  Plan at ¶¶ 13, 23.  If the total final claim payment is equal to or less than $5.00, no distribution will be made to that claimant, and the

claimant will be notified by the Claims Administrator that there will be no distribution given the *de minimis* value of the claim.[29]  Plan at ¶ 27.

### e.       Settlement Payments

Settlement payments shall be made pursuant to the method specified on each respective Claim Form, *i.e.*, Venmo, PayPal, pre-paid card, or check.  Keough Decl. ¶ 103; Keough Decl. Exhibit D at Section E.   When mailing or electronically sending a payment, the Claims Administrator shall send the payment to the address or electronic service provided by the claimant on the Claim Form or to the claimant's preferred address or electronic service if provided to the Claims Administrator.  Keough Decl. ¶ 103.

 If a payment is returned as undeliverable, the Settlement Administrator will make all reasonable efforts to deliver the benefit, including by attempting to contact the claimant to obtain updated contact information. Keough Decl. ¶ 104.  Any check or prepaid card will include its expiration date, if applicable, and the claimant's name. Keough Decl. ¶ 107.  Checks not cashed within 90 days shall no longer be valid.  Claimants who have not yet cashed checks will be reminded to do so between 30 and 40 days after the checks have been issued.  Keough Decl. ¶ 104.  Any funds which remain (exclusive of the Notice and Administration Fund) will, subject to Court approval, be reallocated among Settlement Class members or otherwise in accordance with the Plan of Distribution.  S.A. ¶ 30; Keough Decl. ¶ 104.

To the extent that any part of the Settlement Fund remains after the Claims Administrator has made the reallocation to Authorized Claimants required under the Settlement Agreement, Settlement Class Counsel and Self-Funded Sub-Class Counsel will jointly seek Court approval to

---

[29] All distributions to Authorized Claimants are subject to a $5 minimum payment threshold to ensure that the resources involved in processing a claim are not out of proportion to the value of the individual claim.  *See* Keough Decl. ¶ 102 ($5 threshold reasonable).

disburse the remainder of the Settlement Fund to an entity or entities closely associated with the harm alleged in the Complaint.  The Claims Administrator will follow the directions approved by the Court.  S.A. ¶ 30; Keough Decl. ¶ 104.

## I.      OBJECTIONS AND OPT-OUTS

Any member of either Settlement Class may object to the Settlement, and any member of the Damages Class may exclude themselves ("opt-out") from the Settlement entirely.  The long-form notice explains these legal rights (and others) to Settlement Class members.  Keough Decl. ¶ 105; Keough Decl. Exhibit C.  The deadline for either objecting to or opting-out from the Settlement is 150 days from the date upon which JND receives adequate data from the Settling Defendants to commence the Notice Plan.  Keough Decl. ¶ 105.

### 1.      OBJECTING TO THE SETTLEMENT

A member of either Settlement Class who wishes to object to any aspect of this Agreement must send a written statement of its objection to the Claims Administrator, Settlement Class Counsel, Self-Funded Sub-Class Settlement Counsel and Settling Defendants.  This statement must also be filed with the Court.  Keough Decl. ¶ 106.  A valid objection must include:

a) The name of this Action and a description of the objections, including applicable legal authority and any supporting evidence the objector wishes to introduce;

b) The objector's full name, address, email address, telephone number, and then plan name under Blue Cross Blue Shield was provided and dates of such coverage;[30]

c) Whether the objection applies only to the objector, a specific subset of the Settlement Classes, or both Settlement Classes;

d) The identity of all counsel who represent the objector, including former or current counsel who may be entitled to compensation for any reason related to the objection, along with a statement of the number of times in which that counsel has, on behalf of a client, objected to a class action within five years

---

[30] At the request of Settlement Class Counsel, the objector shall also confidentially provide to Settlement Class Counsel the policy number and/or subscriber ID and date(s) of policy.

preceding the submission of the objection, the caption of the case for each prior objection, and a copy of any relevant orders addressing the objection;

e) Any agreements that relate to the objection or the process of objecting between the objector, his or her counsel, and/or any other person or entity;

f) The objector (and the objector's attorney's) signature on the written objection;

g) A statement indicating whether the objector intends to appear at the Final Approval hearing (either personally or through counsel); and

h) A declaration under penalty of perjury that the information provided by the objector and objector's counsel is true and correct.

Keough Decl. ¶ 106. *See also In re Facebook Biometric Info. Privacy Litig.*, No. 15-cv-3747, 2020 U.S. Dist. LEXIS 151269 (N.D. Cal. Aug. 19, 2020) (preliminarily approving class action settlement and notice plan with same opt-out requirements (opt-out requirements set forth at Dkt. No. 445-2)).

## 2.   OPTING OUT OF THE SETTLEMENT

Any member of the Damages Class may also opt-out of the Settlement.  To do so, a claimant must submit a written request to the Claims Administrator stating the claimant's intent to exclude itself/himself/herself from a Settlement Class.  Keough Decl. ¶ 107. The exclusion request must include the following: (a) the name of the claimant, the name of the claimant's business (if the business purchased health insurance from a Blue Cross Blue Shield entity during the Settlement Class Period for employees), address, and telephone number; (b) a statement that the claimant wants to be excluded from the Settlement Class in *In re: Blue Cross Blue Shield Antitrust Litigation*; and (c) the claimant's (or business representative's) personal, physical signature. Keough Decl. ¶ 107.  Electronic signatures, including DocuSign or PDF signatures, are not permitted and will not be considered personal signatures, and submissions signed solely by an individual's or business's lawyer are not valid either.  Keough Decl. ¶ 108.

## VIII.   <u>CONCLUSION</u>

For all of the foregoing reasons, Subscriber Plaintiffs request that the Court enter the

proposed order preliminarily approving settlement, thereby authorizing the appointment of JND

as Claims Administrator and execution of the proposed Notice Plan.

Date: October 30, 2020                                    Respectfully submitted,

<table>
<tr>
<td>

  /s/ David Boies<br>
David Boies – ***Co-Lead Counsel***<br>
BOIES, SCHILLER & FLEXNER LLP<br>
333 Main Street<br>
Armonk, NY 10504<br>
Tel: (914) 749-8200<br>
Fax: (914) 749-8200<br>
dboies@bsfllp.com

</td>
<td>

  /s/ Michael D. Hausfeld<br>
Michael D. Hausfeld – ***Co-Lead Counsel***<br>
Swathi Bojedla – ***Discovery Committee***<br>
HAUSFELD LLP<br>
1700 K Street NW, Suite 650<br>
Washington, DC 20006<br>
Tel: (202) 540-7200<br>
Fax: (202) 540-7201<br>
mhausfeld@hausfeld.com<br>
sbojedla@hausfeld.com

</td>
</tr>
<tr>
<td>

Charles J. Cooper – ***Co-Chair, Written Submissions Committee***<br>
COOPER & KIRK, PLLC<br>
1523 New Hampshire Avenue NW<br>
Washington, DC 20036<br>
Tel: (202) 220-9600<br>
Fax: (202) 220-9601<br>
ccooper@cooperkirk.com

</td>
<td>

Megan Jones – ***Settlement Committee & PSC Member***<br>
Arthur Bailey – ***Discovery Committee***<br>
HAUSFELD LLP<br>
600 Montgomery Street, Suite 3200<br>
San Francisco, CA 94111<br>
Tel: (415) 633-1908<br>
Fax: (415) 358-4980<br>
mjones@hausfeld.com<br>
abailey@hausfeld.com

</td>
</tr>
<tr>
<td>

Chris T. Hellums – ***Local Facilitating Counsel***<br>
PITTMAN, DUTTON & HELLUMS, P.C.<br>
2001 Park Place N, 1100 Park Place Tower<br>
Birmingham, AL 35203<br>
Tel: (205) 322-8880<br>
Fax: (205) 328-2711<br>
chrish@pittmandutton.com

</td>
<td>

William A. Isaacson – ***Settlement Committee & PSC Member***<br>
PAUL WEISS<br>
2001 K Street, NW<br>
Washington, DC 20006-1047<br>
Tel: (202) 223-7313<br>
Fax: (202) 379-4937<br>
wisaacson@paulweiss.com

</td>
</tr>
</table>

Gregory Davis – **Settlement Committee & PSC Member**
DAVIS & TALIAFERRO, LLC
7031 Halcyon Park Drive
Montgomery, AL 36117
Tel: (334) 832-9080
Fax: (334) 409-7001
gldavis@knology.net

Kathleen Chavez – **Settlement Committee & PSC Member**
FOOTE, MIELKE, CHAVEZ & O'NEIL, LLC
10 West State Street, Suite 200
Geneva, IL 60134
Tel: (630) 797-3339
Fax: (630) 232-7452
kcc@fmcolaw.com

Carl S. Kravitz – **Expert Committee**
ZUCKERMAN SPAEDER LLP
1800 M Street NW, Suite 1000
Washington, DC 20036-5807
Tel: (202) 778-1800
Fax: (202) 822-8106
ckravitz@zuckerman.com

Mindee Reuben
Lite DePalma Greenberg
1835 Market Street, Suite 2700
Philadelphia, PA 19103
Tel:  (267) 314-7980
Fax: (973) 623-0858
mreubin@litedepalma.com

Cyril V. Smith – **Settlement Committee & PSC Member**
ZUCKERMAN SPAEDER, LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202-1031
Tel: (410) 949-1145
Fax: (410) 659-0436
csmith@zuckerman.com

David Guin – **Co-Chair, Written Submissions Committee**
Tammy Stokes – **Damages Committee**
GUIN, STOKES & EVANS, LLC
300 Richard Arrington Jr. Blvd. North
Suite 600/Title Building
Birmingham, AL 35203
Tel: (205) 226-2282
Fax: (205) 226-2357
davidg@gseattorneys.com
tammys@gseattorneys.com

Richard Feinstein – **Expert Committee**
Karen Dyer – **Expert Committee**
Hamish P.M. Hume – **Discovery Committee**
BOIES, SCHILLER FLEXNER LLP
1401 New York Avenue NW
Washington, DC 20005
Tel: (202) 237-2727
Fax: (202) 237-6131
rfeinstein@bsfllp.com
kdyer@bsfllp.com
hhume@bsfllp.com

Nate Cihlar
Joshua Callister
Srauss & Boies
4041 University Drive, 5th Floor
Fairfax, VA 22030
Tel:  (703) 764-8700
Fax:  (703) 764-8704
ncihlar@straus-boies.com
jcallister@straus-boies.com

Patrick Cafferty – *Discovery Committee*
CAFFERTY CLOBES MERIWETHER &
SPRENGEL LLP
150 S. Wacker Drive, Suite 300
Chicago, IL 60606
Tel: (312) 782-4880
pcafferty@caffertyclobes.com

Bryan Clobes – *Litigation Committee*
Ellen Meriwether – *Written Submissions
Committee*
CAFFERTY CLOBES MERIWETHER &
SPRENGEL LLP
2005 North Monroe Street
Media, PA 19063
Tel: (215) 864-2800
Fax: (215) 864-2810
bclobes@caffertyclobes.com
emeriwether@caffertyclobes.com

Andrew Lemmon – Chair, Discovery
Committee
LEMMON LAW FIRM
15058 River Road
PO Box 904
Hahnville, LA 70057
Tel: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

Virginia Buchanan – Chair, Class Certification
Committee
LEVIN PAPANTONIO THOMAS
MITCHELL RAFFERTY & PROCTOR, P.A.
316 South Baylen Street, Suite 600
Pensacola, FL 32502
Tel: (850) 435-7000
Fax: (850) 435-7020
vbuchanan@levinlaw.com

Douglas Dellaccio – *Litigation Committee*
CORY WATSON CROWDER & DEGARIS,
P.C.
2131 Magnolia Avenue, Suite 200
Birmingham, AL 32505
Tel: (205) 328-2200
Fax: (205) 324-7896
ddellaccio@cwcd.com

Larry McDevitt – *Chair, Class Certification
Committee*
David Wilkerson – *Discovery Committee*
VAN WINKLE LAW FIRM
11 North Market Street
Asheville, NC 28801
Tel: (828) 258-2991
lmcdevitt@vwlawfirm.com
dwilkerson@vwlawfirm.com

Edwin J. Kilpela, Jr.
Benjamin Sweet – *Litigation Committee*
DEL SOLE CAVANAUGH STROYD LLC
200 First Avenue, Suite 300
Pittsburgh, PA 15222
Tel: (412) 261-2393
Fax: (412) 261-2110
ekilpela@dsclaw.com
bsweet@dsclaw.com

Robert M. Foote – *Damages Committee*
FOOTE, MIELKE, CHAVEZ & O'NEIL,
LLC
10 West State Street, Suite 200
Geneva, IL 60134
Tel: (630) 797-3339
Fax: (630) 232-7452
rmf@fmcolaw.com

Charles T. Caliendo – *Class Certification Committee*
GRANT & EISENHOFER
485 Lexington Avenue
New York, NY 10017
Tel: (646) 722-8500
Fax: (646) 722-8501
ccaliendo@gelaw.com

Robert Eisler – *Discovery Committee*
GRANT & EISENHOFER
123 Justison Street
Wilmington, DE 19801
Tel: (302) 622-7000
Fax: (302) 622-7100
reisler@gelaw.com

Daniel Gustafson – *Litigation Committee*
Daniel C. Hedlund – *Damages Committee*
GUSTAFSON GLUEK PLLC
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Tel: (612) 333-8844
Fax: (612) 339-6622
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com

Brent Hazzard – *Litigation Committee*
HAZZARD LAW, LLC
447 Northpark Drive
Ridgeland, MS 39157
Tel: (601) 977-5253
Fax: (601) 977-5236
brenthazzard@yahoo.com

John Saxon – *Litigation Committee*
JOHN D. SAXON, P.C.
2119 3rd Avenue North
Birmingham, AL 35203-3314
Tel: (205) 324-0223
Fax: (205) 323-1583
jsaxon@saxonattorneys.com

Lawrence Jones – *Damages Committee*
JONES WARD PLC
The Pointe
1205 East Washington Street, Suite 111
Louisville, Kentucky 40206
Tel:  (502) 882-6000
Fax: (502) 587-2007
larry@jonesward.com

Robert Methvin – *Chair, Settlement Committee*
James M. Terrell – *Class Certification Committee*
MCCALLUM, METHVIN & TERRELL, P.C.
The Highland Building
2201 Arlington Avenue South
Birmingham, AL 35205
Tel: (205) 939-0199
Fax: (205) 939-0399
rgm@mmlaw.net
jterrell@mmlaw.net

Michael McGartland – *Class Certification Committee*
MCGARTLAND & BORCHARDT LLP
1300 South University Drive, Suite 500
Fort Worth, TX 76107
Tel: (817) 332-9300
Fax: (817) 332-9301
mike@attorneysmb.com

H. Lewis Gillis – ***Co-Head Chair, Litigation Committee***
MEANS GILLIS LAW, LLC
3121 Zelda Court
Montgomery, AL 36106
Tel: 1-800-626-9684
hlgillis@tmgslaw.com

David J. Hodge – ***Chair, Settlement Committee***
MORRIS, KING & HODGE
200 Pratt Avenue NE
Huntsville, AL 35801
Tel: (256) 536-0588
Fax: (256) 533-1504
lstewart@alinjurylaw.com

*Counsel for Subscriber Plaintiffs*

/s/ Warren T. Burns
Warren T. Burns
BURNS CHAREST LLP
900 Jackson Street, Suite 500
Dallas, Texas 75202
Tel: (469) 904-4550
Fax: (469) 444-5002
wburns@burnscharest.com

*Counsel for the Self-Funded Sub-Class*

39

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 30, 2020, the foregoing Memorandum of Law in Support of Subscriber Plaintiffs' Motion for Approval of Plan of Notice and Appointment of Claims Administrator was filed with the Clerk of the Court and served on counsel of record via ECF.


    /s/ Michael D. Hausfeld
Michael D. Hausfeld