FILED

2020 Oct-30  PM 09:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **IN RE: BLUE CROSS BLUE SHIELD** | : | |
| **ANTITRUST LITIGATION** | : | **Master File No. 2:13-cv-20000-RDP** |
| **MDL 2406** | : | |
| | : | |
| | : | |
| | : | **This document relates to** |
| | : | **Subscriber Track cases** |

**DECLARATION OF JENNIFER M. KEOUGH
REGARDING PROPOSED NOTICE PLAN**

I, JENNIFER M. KEOUGH, declare as follows:

## I.    INTRODUCTION

1.     I am Chief Executive Officer ("CEO") of JND Legal Administration LLC ("JND"). I have more than 20 years of legal experience creating and supervising notice and claims administration programs and have personally overseen well over 1000 matters, and will oversee this matter personally as well.  As CEO, I am regularly called upon to submit declarations in connection with JND's notice and administration work.  A comprehensive description of my experience is attached as **Exhibit A.**

2.     I submit this Declaration based on my personal knowledge, as well as upon information provided to me by experienced JND employees and counsel for the Plaintiffs and Settling Defendants[1], to describe the proposed Notice Plan and address why it is consistent with other class notice plans that courts have determined satisfy the requirements of Rule 23 of the

---

[1] Unless otherwise noted, capitalized terms have the same meaning as in the Settlement Agreement, a copy of which is attached to the Preliminary Approval Motion as Exhibit A.

Federal Rules of Civil Procedure, the Due Process Clause of the United States Constitution, and any other applicable statute, law or rule, as well as the Federal Judicial Center ("FJC") guidelines for best practicable due process notice.

3.      I understand that Settlement Class Counsel and Self-Funded Sub-Class Settlement Counsel have decided to recommend that this Court appoint JND as the Claims Administrator in this case.  JND engaged in an extensive, several months long, competitive bidding process to secure this recommendation.

## II.      EXPERIENCE RELEVANT TO THIS CASE

4.      JND is a legal administration services provider with headquarters located in Seattle, Washington. We employ over 175 people in multiple offices throughout the United States. JND's class action division provides all services necessary for the effective implementation of class action settlements, including: (1) all facets of providing legal notice to potential class members, such as outbound mailing, email notification, and the design and implementation of media programs, including through digital and social media platforms; (2) website design and deployment, including on-line claim filing capabilities; (3) call center and other contact support; (4) secure class member data management; (5) paper and electronic claims processing; (6) review of claims submission supporting documentation; (7) calculation design and programming; (8) payment disbursements through check, wire, PayPal, merchandise credits, and other means; (9) qualified settlement fund management and tax reporting; (10) banking services and reporting; and (11) all other functions related to the secure and accurate administration of class action settlements.

5.      JND is an approved vendor for the United States Securities and Exchange Commission ("SEC") as well as for the Federal Trade Commission ("FTC") and it has worked

with a number of other government agencies including: the U.S. Equal Employment Opportunity Commission ("EEOC"), the Office of the Comptroller of the Currency ("OCC"), the Consumer Financial Protection Bureau ("CFPB"), the Federal Deposit Insurance Corporation ("FDIC"), the Federal Communications Commission ("FCC"), the Department of Justice ("DOJ") and the Department of Labor ("DOL"). We also have Master Services Agreements with various corporations, banks, and other government agencies, which were only awarded after JND underwent rigorous reviews of our systems, privacy policies, and procedures. JND has also been certified as SOC 2 compliant[2] by noted accounting firm Moss Adams. Finally, JND has been recognized by various publications, including, among others, the *National Law Journal*, the *Legal Times* and the *New York Law Journal*, for excellence in class action administration.

6.      The principals of JND, including me, collectively have over 75 years of experience in class action legal and administrative fields. We have overseen claims processes for some of the largest legal claims administration matters in the country's history and regularly prepare and implement court approved notice and administration campaigns throughout the United States. For example, my team and I handled all aspects of mailed notice, website activities, call center operations, claim intake, scanning and data entry, and check distribution for the $20 billion Gulf Coast Claims Facility. In the $10+ billion BP Deepwater Horizon Settlement, I worked directly for Patrick Juneau, the Court-appointed claims administrator, in overseeing all inbound and outbound mail activities, all call center operations, all claim intake, scanning and data entry and all check distributions for the program. I oversaw the entire administration process in the $3.4 billion Cobell Indian Trust Settlement (the largest U.S. government class action settlement ever). Recently, JND has been handling the settlement administration of the $1.3 billion Equifax

---

[2] As a SOC 2 Compliant organization, JND has passed an audit under AICPA criteria for providing data security.

Data Breach Settlement, the largest class action ever in terms of the number of claims received, a voluntary remediation program in Canada on behalf of over 30 million people, the $1.5 billion Mercedes-Benz Emissions Settlement, the $120 million GM Ignition class action economic settlement, where we sent notice to nearly 30 million class members, and the $215 million USC Student Health Center Settlement on behalf of women who were sexually abused by a doctor at USC, as well as hundreds of other matters. The notice campaigns JND designs are regularly approved by courts throughout the United States.

7.      JND's Legal Notice Team, which operates under my direct supervision, researches, designs, develops, and implements a wide array of legal notice programs to meet the requirements of Rule 23 of the Federal Rules of Civil Procedure and relevant state court rules. In addition to providing notice directly to potential class members through direct mail and email, our media campaigns have used a variety of media to effectively reach potential class members, including newspapers, press releases, magazines, trade journals, radio, television, social media and the internet depending on the circumstances and allegations of the case, the demographics of the class, and the habits of its members, as reported by various research and analytics tools. During my career, I have submitted several hundred affidavits to courts throughout the country attesting to our role in the creation and launch of various media programs.

### III.    CASE BACKGROUND

8.      I have been asked by Settlement Class Counsel and Self-Funded Sub-Class Counsel to prepare a Notice Plan to reach Class Members and inform them about their rights and options in the proposed Settlement.

9.      The Settlement Agreement provides for two proposed Settlement Classes, a Damages Class (which includes a Self-Funded Sub-Class) and an Injunctive Relief Class (referred to collectively as the "Class Members").

10.      The proposed Damages Class, which I am advised is currently estimated to number in the tens of millions of members,  is comprised of all Individual Members (excluding dependents and beneficiaries), Insured Groups (including employees, but excluding non-employee Members), and Self-Funded Accounts (including employees, but excluding non-employee Members) that purchased or were enrolled in a Blue-Branded Commercial Health Benefit Product (unless the person's or entity's only Blue-Branded Commercial Health Benefit Product during the Settlement Class Period was a stand-alone vision or dental product) sold, underwritten, insured, administered, or issued by any Settling Individual Blue Plan from February 7, 2008, through October 16, 2020 (in the case of all Damages Class Members other than the Self-Funded Sub-Class, for whom the Class Period is September 1, 2015 through October 16, 2020) ("Settlement Class Period").

11.      Excluded from the Damages Class are:

- Government Accounts and individuals covered under them;

- Medicare Accounts of any kind;

- Settling Defendants themselves, and any parent or subsidiary of any Settling Defendant (and their covered or enrolled employees);

- Opt Outs; and

- the Judge presiding over this matter, and any members of his judicial staff, to the extent such staff were covered by a Commercial Health Benefit Product not purchased by a Government Account during the Settlement Class Period.

12.     The Self-Funded Sub-Class consists of Self-Funded Accounts and their employees. It encompasses any account, employer, health benefit plan, ERISA plan, non-ERISA plan, or group, including all sponsors, administrators, fiduciaries, and Members thereof, that purchased, was covered by, participated in, or was enrolled in a Self-Funded Health Benefit Plan from September 1, 2015 through October 16, 2020 ("Sub-Class Settlement Class Period"). A Self-Funded Health Benefit Plan is any Commercial Health Benefit Product other than Commercial Health Insurance, including administrative services only ("ASO") contracts or accounts, administrative services contracts or accounts ("ASC"), and jointly administered administrative services contracts or accounts ("JAA").

13.     For associational entities (e.g., trade associations, unions, etc.), this includes any entity which is covered by, enrolled in, or included in the associational entity's Blue-Branded Commercial Health Benefit Product. A Self-Funded Account that purchases a Blue-Branded Self-Funded Health Benefit Plan and Blue-Branded stop-loss coverage remains a Self-Funded Account. For clarity, a Self-Funded Account also excludes all Government Accounts.

14.     The Injunctive Relief Class is comprised of all Individual Members, Insured Groups, Self-Funded Accounts, and Members that purchased or were enrolled in a Blue-Branded Commercial Health Benefit Product sold, underwritten, insured, administered, or issued by any Settling Individual Blue Plan during the applicable Settlement Class Period.

## IV.     NOTICE PLAN SUMMARY

15.     The proposed Notice Plan, attached as **Exhibit B**, has been designed to provide the best notice practicable, consistent with the methods and tools employed in other court-approved

notice programs. The FJC's *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* considers a notice plan with a 70%-95% reach effective.[3]

**Direct Notice**

16.    JND will send direct notice to all Damages Class Members for whom the Settling Defendants provide contact information. Direct notice will be provided through email and postcard mailings, depending on the Class Member Data produced by the Settling Defendants.

**Media Campaign**

17.    In addition to direct notice, the Notice Plan provides for an extensive media campaign to reach all Class Members, including digital advertising, print publications, television, radio, industry media, third-party outreach, an internet search campaign, and a multichannel news release.

18.    More specifically, the proposed media campaign includes: (a) a combination of digital ads placed on the leading digital network (Google Display Network) and the top social media platform (Facebook); (b) full-page color notice in two popular magazines (*People* and *Better Homes & Gardens*) with a large subscription and circulation base; (c) 30-second radio spots to be broadcast through a leading satellite radio provider, two radio networks, top syndicated programming in the top ten African American markets, and two leading Spanish radio providers in the top ten Hispanic markets; and (d)  30-second television spots broadcast on a variety of popular cable and syndicated networks, and on network morning news programming.

**Supplemental Entity Effort**

19.    In addition, JND will implement a supplemental industry media campaign to extend notice specifically targeted to entity Class Members.  The effort includes targeting key employees

---

[3] Reach is the percentage of a specific population group exposed to a media vehicle or a combination of media vehicles containing a notice at least once over the course of a campaign.  Reach factors out duplication, representing total different net persons.

and owners of these entities, by placing notice on the leading professional social media platform (LinkedIn); arranging for notice placements on top business websites and the leading human resources industry websites; and sending e-newsletters targeting business owners and the human resources industry. A direct notice effort will also be sent to a purchased list of HR/employee benefit and health/accident insurance broker job titles.

**Additional Efforts**

20.     Extended efforts will include a third-party outreach effort, a specially designed internet search campaign, a multichannel news release that will work in tandem with the media campaign to increase awareness of the Settlement, as well as a link to the Settlement website that will be placed on BCBSA.com by Settling Defendants.

**Claims Stimulation Effort**

21.     Additionally, JND has designed a claims stimulation effort that will utilize a targeted digital effort and a multichannel news release to remind potential Damages Class Members of the approaching claims deadline.  JND staff will monitor the deliverable success rate of the Notice Plan and bolster the claims stimulation effort, if necessary.

**Settlement Website**

22.     JND will establish and maintain a dedicated Settlement website where information about the Settlement, as well as copies of relevant case documentation, including but not limited to the Settlement Agreement, a report of Monitoring Committee Activities, the Plan of Distribution, the Long Form Notice (attached as **Exhibit C**), and the Claim Form (attached as **Exhibit D**),  will be accessible to Class Members.  Damages Class Members will also be encouraged to file claims online through a secure portal on the website.

**Dedicated Toll-Free Number and Contact Center**

23.     JND will also establish and maintain a toll-free telephone number with an Interactive Voice Recording system ("IVR"), in addition to available Customer Service Representatives, that Class Members may call to obtain more information about the Settlement and request copies of the notice and claim form.

**QR Code**

24.     JND will create a QR Code (a matrix barcode) that will allow quick and direct access to the Settlement website through a mobile device.

25.     Based on my experience in developing and implementing class notice programs, I believe the proposed Notice Plan will meet, and in fact exceed, the standards for providing the best practicable notice in class action settlements.

V.     NOTICE PLAN ELEMENTS

Subsections A thru I below explain in greater detail all Notice Plan efforts.

A.     **DIRECT INDIVIDUAL NOTICE**

26.     For this Settlement, at my direction, JND staff will effectuate direct individual notice to all members of the Damages Class for whom Settling Defendants provide contact information.  The direct notice will include a personal identifier number ("Unique ID")[4] assigned to each potential claimant.

27.     Settling Defendants have represented that they have email addresses for a certain percentage of the Damages Class and that where they have such email addresses, it is because those email addresses have been provided to the Settling Defendants in the ordinary course of business

---

[4] The Unique ID is linked to all relevant data pertaining to claimants and is used for tracking and processing each claim.

with Damages Class Members.  As such, our plan is to provide all those Damages Class Members with notice via email in the first instance.

28.     Courts, including this one, have approved notice programs in which email is a primary method of delivering notice to class members.

29.     For those Damages Class Members where an email address is unavailable or where the email bounces back and cannot be ultimately delivered, JND proposes sending a color Postcard Notice.  Postcard notices are widely used for delivering direct notice to avoid the expense of sending a full notice and claim form to the entire class.

30.     Here, based on the size of the Class, the postage savings alone in using the Postcard Notice will be in the tens of millions of dollars.  The Postcard Notice will direct Damages Class Members to the website, which provides all the information a potential claimant needs and is the easiest and most efficient way to file a claim.

31.     Both the Email Notice, attached as **Exhibit E**, and the Postcard Notice, attached as **Exhibit F**, identify and direct Damages Class Members to an interactive Settlement website where they can review the Settlement Agreement, and other key documents in the case, and initiate the claims process (a hard copy claim form may also be requested).

32.     Both the Email Notice and the Postcard Notice include a Spanish-language tag that will direct Spanish-speaking Damages Class Members to the Settlement website which will be available in Spanish.

33.     Importantly, whether a Damages Class Member is sent direct notice by email or postcard, the notice will satisfy the Federal Rules of Civil Procedure and due process.

**Email Notice**

34.     JND uses industry-leading email solutions to achieve the most efficient email notification campaigns.  Our Data Team is staffed with email experts and software solution teams to conform the email notice program to the particulars of the Settlement.  JND provides individualized support during the program and manages our sender reputation with the Internet Service Providers ("ISPs").  For each of our programs, we analyze the program's data and monitor the ongoing effectiveness of the notification campaign, adjusting the campaign as needed.  These actions ensure the highest possible deliverability of the email campaign so that more potential Damages Class Members receive notice of the proposed Settlement.

35.     JND has worked with Settlement Class Counsel and Self-Funded Sub-Class Settlement Counsel to craft the Email Notice here to avoid spam language to improve deliverability.  This process includes running the email through spam testing software, DKIM for sender identification and authorization, and hostname evaluation.  Additionally, we will check the send domain against the 25 most common IPv4 blacklists.

36.     As is JND's standard email notification process, JND will utilize a verification program to eliminate invalid email and spam traps that would otherwise negatively impact deliverability.  We will then clean the list of email addresses for formatting and incomplete addresses to further identify all invalid email addresses.  The email content will be formatted and structured in a way that receiving servers expect, allowing the email to pass easily to the recipient.

37.     Rather than using attachments, which can send an email right to spam, the Email Notice here provides a call-to-action button (i.e., "File a Claim"), as well as direct links to the Settlement website for more detailed information. In addition, the use of all capitalization, exclamation points, colored font, case-caption boxes, excessive legalese, and common trigger

words were avoided to reduce spam. The email subject line identifies the Defendant, with whom the email recipient is very familiar, and the nature of the content.  It provides a simple and short identifier.  The Damages Class Member's name is included as the email opener to authenticate and personalize the email.

38.     To ensure readability of the Email Notice, our team will review and format the body content into a structure that is applicable to all email platforms.  Before commencing the email notice campaign, we will send a test email to multiple ISPs and open the email on multiple devices (iPhones, Android phones, desktop computers, tablets, etc.) to ensure the email opens as expected. Additionally, JND will include an "unsubscribe" link at the bottom of the Email Notice to allow Damages Class Members to opt out of any additional email notices from JND.  This step is essential to maintain JND's good reputation among the ISPs and reduce complaints relating to the email campaign.  JND will also work with Counsel to identify email phishing campaigns and fraudulent websites and will notify Counsel of fraud schemes as soon as discovered.

39.     Emails that are returned to JND are generally characterized as either "Soft Bounces" or "Hard Bounces."  Hard Bounces are when the ISP rejects the email due to a permanent reason such as the email account in no longer active.  Soft Bounces are when the email is rejected for temporary reasons, such as the recipient's email address inbox is full.

40.     When an email is returned due to a soft bounce, JND attempts to re-email the email notice up to three additional times in an attempt to secure deliverability.  The email is considered undeliverable if it is a Hard Bounce or a Soft Bounce that is returned after a third resend.  For those email notices that are deemed ultimately undeliverable, we will follow up with a postcard mailing, as discussed below, to the extent that an address is contained in the Class Member Data.

**Postcard Notice**

41.     JND will send the color Postcard Notice to those Damages Class Members for whom the Class Member Data does not contain an email address or for whom the email notice was deemed ultimately undeliverable.   In my experience, use of color will help differentiate the postcard from junk mail.   Moreover, JND will use the Settling Defendants' logos on the Postcard Notice to add another indicia of reliability to the Postcard Notice.   Prior to sending the Postcard Notice, JND staff will run the mailing addresses through the United States Postal Service ("USPS") National Change of Address ("NCOA") database.[5]   At my direction, JND staff will track all Postcard Notices returned undeliverable by the USPS and will promptly re-mail Postcard Notices that are returned with a forwarding address.   Also, with my oversight, JND staff will take reasonable efforts to research and determine if it is possible to reach a Damages Class Member for whom the Postcard Notice is returned without a forwarding address by mailing to a more recent mailing address at which the potential Damages Class Member may be reached.

**B.     MEDIA CAMPAIGN[6]**

42.     The direct notice will be supplemented by a robust media campaign, which alone is expected to reach more than 85% of potential members of the Settlement Classes.

43.     The media campaign is comprised of the following: (a) Digital Effort (Google, Facebook); (b) Print Effort (*People*, *Better Homes & Gardens*); (c) Radio Effort (Sirius XM, iHeart Radio, Pandora/Spotify audio streaming as well as leading syndicated programs in the top

---

[5] The NCOA database is the official USPS technology product which makes change of address information available to mailers to help reduce undeliverable mail pieces before mail enters the mail stream. This product is an effective tool to update address changes when a person has completed a change of address form with the USPS.  The address information is maintained on the database for 48 months.

[6] If for any reason an aspect of the Media Campaign is unadviseable or unavailable (due to COVID-19 circumstances or otherwise), JND will use its own experience and discretion to determine if a comparable substitute is available and necessary.  Any decision that materially affects the conclusions and opinions herein shall be reported to the Court by JND.

ten African American markets and Spanish radio in the top ten Hispanic markets); and (d) Television Effort (cable, syndicated, and network morning news).

44.     JND utilizes the most reputable advertising media research tools to ensure that the best media is selected and that our reach calculations can withstand the most critical review and challenge.  To create the Notice Plan, we utilized the following well-established and industry-leading media research tools:  (a) MRI / Simmons; (b) ComScore, Inc.; (c) Google Active View; (d) Trust Metrics and (e) Nielsen.  These tools are described below and form the basis of JND's reach calculations for the Notice Plan.

45.     MRI / Simmons is the leading producer of media and consumer research in the United States and is a nationally accredited research firm that provides consumer demographics, product and brand usage and audience and exposure in all forms of advertising media. JND uses MRI / Simmons to analyze the demographics and media usage of potential Class Members, as well as to determine the reach of the proposed Print Effort.

46.     JND uses ComScore Inc. data to analyze where potential Class Members are on the internet, and for calculating the reach of the proposed Digital Effort.  ComScore Inc.'s multi-reach platform allows JND to analyze unduplicated audiences across desktop, smartphone and tablet devices and to assess the effectiveness and efficiency of our media plans by reducing waste and improving campaign performance across all devices.

47.     Google Active View is accredited by the Media Rating Council and is used by JND to measure viewable impressions across the web and in apps.  At the time of implementation of our Digital Effort, JND's digital media placement experts, under my supervision and direction, will take the steps necessary to ensure that all notice placements appear exactly as intended,

meeting JND's high standards of quality and positioning to achieve the highest number of possible views and impressions.

48.     Importantly, Google Active View supports the Interactive Advertising Bureau and Media Rating Council's definition of viewability, demanding that a minimum of 50% of the digital ad is in view for a minimum of one second for display ads.  By using Google Active View, JND will be able to accurately monitor and enhance the Digital Effort, ensuring the broadest possible reach for the Digital Effort.

49.     Complementing Google Active View, JND uses Trust Metrics during the Digital Effort implementation process to ensure that the banner impressions are not served to poor quality sites and are only displayed on brand safe websites, further ensuring the greatest degree of visibility and dissemination to the Class Members.  Sites that are deemed "unsafe" are blocked during implementation, using brand safety parameters such as site content and keywords.

50.     Nielsen currently manages more television audience measurement panel households than any other international television audience ratings provider.  Nielsen, which has been measuring radio tune-in since 1936 is the definitive source for comprehensive audio metrics and insights.  JND uses Nielsen to measure the reach of our tv and radio ads for the Television Effort and the Radio Effort.

**Target Analysis**

51.     JND analyzed the demographics and media usage of potential Class Members to determine how best to reach them. MRI data was studied among adults 18 years of age or older ("Adults 18+") who have Blue Cross Blue Shield medical insurance ("BCBS Insurance Members").

52.     MRI data indicates that most BCBS Insurance Members are: 25 years of age or older (90%—however, given the class period, an even greater percentage are older today); white (83%);

homeowners (75%); from higher income households (73% have a household income of $60,000+); educated (69% attended college or beyond); working full time (61%); and married (61%).

53.     JND considered these key demographics when selecting media. For instance, *Better Homes & Gardens* extends reach to homeowners, Sirius XM radio extends reach among the higher income and educated demographic segments, and network morning news extends reach among older age groups. Other media were selected for their broad-based reach offering (*People, Google*), while some for their niche focus (e.g., Spanish radio, entity digital).

54.     MRI data also indicated that BCBS Insurance Members are active internet users, with 92% using the internet and 69% visiting Facebook in a 30-day period. In terms of devices, 85% use their cellphone or smartphone to access the internet.

55.     Considering this data and the large diverse Class, the Notice Plan was designed to reach Class Members through multiple channels and sources.

**Digital Effort**

56.     The Digital Effort consists of digital ads, samples of which are attached as **Exhibit G**, which will be placed on the Google Display Network ("GDN"), the leading digital network, and Facebook, the top social media platform.  The Digital Effort will target Adults 18+ with approximately 10% allocated to Spanish sites (GDN) and Spanish language accounts (Facebook), as represented by MRI data. Digital ads will be served across all types of devices – desktops, laptops, tablets and mobile, with an emphasis on mobile devices. The Digital Effort will generate over 428 million impressions.[7]

---

[7] Impressions or Exposures are the total number of opportunities to be exposed to a media vehicle or combination of media vehicles containing a notice.  Impressions are a gross or cumulative number that may include the same person more than once. As a result, impressions can and often do exceed the population size.

**Print Effort**

57.     The Print Effort consists of full-page color notice placements, an example of which is attached as **Exhibit H**, in *People* and *Better Homes & Gardens* magazines.  Both *People* and *Better Homes & Gardens* are highly read consumer magazines.

58.     *People* is a weekly entertainment magazine with a circulation in excess of 3.4 million and a readership of over 34.9 million.  *People* reaches 14% of Adults 18+ and extends notice to a broad demographic segment, including those Class Members who may not frequent the internet, particularly older Class Members.

59.     *Better Homes & Gardens* is a monthly lifestyle magazine with a circulation of over 7.6 million and a readership exceeding 29.8 million.  It reaches 13% of Adults 18+ and extends reach to older women who may not frequent the internet.

**Radio Effort**

60.     To extend notice further, the Notice Plan includes a Radio Effort which consists of 30-second radio advertisements simply announcing the size of the Settlement and providing the website address and toll-free number.

61.     JND will cause approximately 9,700 30-second radio spots to be broadcast through Sirius XM, satellite radio; premier broadcast networks (iHeart Radio – the Scope and Spectrum networks); as well as top syndicated programs among African Americans (e.g., Rickey Smiley, Steve Harvey) and two dominant Hispanic radio providers ("SBS" and Univision Radio) at a level proportionate to their demographic representation of likely Class Members based on MRI data.  A variety of formats (e.g., country, adult contemporary, pop contemporary hit radio, class hits, urban contemporary) and programming are recommended to extend reach to diverse demographic segments.

62.     Sirius XM is one of the largest subscription service radio providers, offering exposure to over 32.7 million subscribers and reaching over 65.4 million radio listeners.

63.     iHeart Radio's the Scope has more than 575 station affiliates, comprised of a weekly listenership of 28 million.  The Spectrum has approximately 800 station affiliates and weekly listenership of 30 million.

**Television Effort**

64.     The final element of the media campaign consists of the Television Effort, where JND will effectuate over 950 30-second television spots to broadcast across a variety of cable and syndicated networks, and network news programming.  Just like the radio ads, the short television ads will tell Class Members how to get more information about the Settlement.

65.     Cable networks will include well known and highly viewed networks such as A&E, AMC, BET, CMT, CNN, Fox Sports, Golf Channel, HGTV, Hallmark, History, Lifetime, MSNBC, National Geographic, OWN, TV Land, and the Weather Channel. Syndicated programming may include shows such as Family Feud, Wheel of Fortune, Tamron Hall, Entertainment Tonight. Network news may include Good Morning America, Today Show and CBS Morning News, among others.

**C.     SUPPLEMENTAL ENTITY EFFORT**

66.     To further extend efforts to entities/companies/businesses, JND will employ a digital effort targeting individuals who will be responsible for filing claims on behalf of entity Damages Class Members.  These include senior level Human Resources employees who are engaged in handling and managing employee benefits and health plan issues for Class Member entities, as well as business owners and partners of Class Member entities.

67.     The entity digital effort will consist of 915,000 digital impressions on LinkedIn, the leading professional social media platform, and 1,000,000 digital impressions, to be placed on leading business websites, such as Yahoo Business; CNBC.com; FastCompany.com; Forbes.com; Bloomberg.com; Entrepeneur.com, WSJ.com, BusinessInsider.com and AllBusiness.com.   The digital impressions on these sites will be very similar to the overall digital ads, albeit with images that evoke a business setting.  The key to these ads is their strategic placements.

68.     JND will also cause 100,000 digital impressions to be placed on the Society for Human Resource Management website (shrm.org); and approximately 100,000 digital impressions on Human Resource Executive's (hrexecutive.com) home page and 50,000 digital impressions on its benefit category page.  The Society for Human Resource Management (SHRM) is the largest human resources organization with more than 275,000 members worldwide. It is dedicated to Human Resources management and the needs of Human Resources professionals. Human Resource Executive is a source for vice presidents and directors of human resources.  We will also place ads in the National Association of African Americans in Human Resource (NAAAHR), which provides networking, career opportunities, and resources to over 15,000 HR members and affiliates.

69.     In addition, JND will cause notices to be placed four times each in leading business and healthcare and employee benefits e-newsletters including: Franchise Times; Entrepreneur; Harvard Business Review Management Tip of the Day; SHRM; HREBenefits; Employee Benefit News Healthcare; Benefits Pro Daily and the Healthcare Dive Top Player.

70.     Samples of the Class Member entity digital ads are attached as **Exhibit I**.

**D.     ADDITIONAL EFFORTS**

71.     JND will undertake additional efforts to further disseminate notice to Class Members, which will include a third-party outreach effort, a specially designed internet search

campaign, and a multichannel news release that will work in tandem with the media campaign to increase awareness of the Settlement.  In addition, a link to the Settlement website will be placed on BCBSA.com by Settling Defendants.

72.     JND will purchase lists of HR/employment benefit employees and health and accident insurance brokers through third-party outreach list providers.  JND will utilize the information on these lists to send notice, via mail and email, as applicable, to over 150,000 contacts, requesting their assistance in providing notice to Class Members.

73.     JND will also implement a digital search effort on the following search engines: Google, Yahoo, and Bing. Web browsers frequently default to a search engine page, making search engines a common source to get to a specific website (i.e., as opposed to typing the desired URL in the navigation bar). When purchased keywords related to the Settlement are searched, a paid ad with a hyperlink to the Settlement website may appear on the search engine results page. Samples of the internet search ads are attached as **Exhibit J**.

74.     A multichannel news release will assist in getting "word of mouth" out about the Settlement.  At the launch of the notice campaign, a multichannel news release will be distributed into newsrooms, online syndication, and PR Newswire for Journalists, an exclusive members-only community of more than 41,000 influential journalists and bloggers.  This will encourage journalists to visit a microsite and review a press release, the television spot, and other information about the Settlement.  A copy of the multichannel news release microsite is attached as **Exhibit K**.

### E.     CLAIMS STIMULATION EFFORT

75.     Prior to the claim filing deadline, JND's team will initiate a wide-ranging media effort to encourage Damages Class Members to submit claims and to remind them of the impending deadline.

76.     The claims stimulation effort will include a digital campaign consisting of (1) an audience custom list, (2) retargeting and (3) look-alike targeting.  Digital banner ads will also be served to potential Damages Class Members who visited the Settlement website but did not complete a claim submission (retargeting), as well as to individuals who demographically/geographically match with those Damages Class Members who have already filed online claims (look-alike targeting).  JND will monitor the Settlement website traffic and utilize that information when designing the claims stimulation effort.

77.     In addition to these efforts, the multichannel news release will be updated to include a claim deadline reminder message.

78.     Based on the success of the initial media campaign, television and radio spots may be added and broadcast to key markets with high claims filing results. Additional print insertions may also be published.

79.     The claims stimulation message will deliver a simple reminder of the approaching claims deadline. Attached as **Exhibit L** are sample reminder digital ads.

**F.  <u>SETTLEMENT WEBSITE</u>**

80.     An informational, interactive Settlement website, www.BCBSsettlement.com, will be developed at my direction by JND staff so potential Class Members can obtain information about their rights and options under the Settlement and submit claims. The website will have an easy-to-navigate design and will be formatted to emphasize important information and deadlines. The Settlement website will contain, among other things, information about the Settlement, a Frequently Asked Questions section, a list of Important Dates and Important Documents, the ability to download a Long Form Notice and Claim Form, the ability to submit claims electronically through a secure claims filing portal, a report of Monitoring Committee

Activities, and information about how Class Members can access the toll-free telephone number. The Settlement website will also be available in Spanish.

81.    The Settlement website will be mobile-enabled and ADA compliant, and will undergo significant penetration testing to make sure that the site cannot be breached as well as load testing to make sure that the site will be able to accommodate the expected traffic from a class this large.  It will also be designed to maximize search engine optimization through Google and other search engines. Keywords and natural language search terms will be included in the site's metadata to maximize search engine rankings.

### G.    DEDICATED TOLL-FREE NUMBER AND CONTACT CENTER

82.    JND will establish and maintain a dedicated toll-free telephone number with an automated IVR, available 24 hours a day, seven days a week, that will provide Settlement-related information to Class Members, and the ability to request and receive the notices and the Settlement claim form by mail.

83.    Class Members will also have the option to speak with Customer Service Representatives five days a week during business hours, who will provide Settlement-related information and can fulfill requests for notice. JND has multiple call center sites, all in the United States, and can ensure enough staffing and redundancy to handle any volume of calls we receive on this matter.

### H.    DEDICATED POST OFFICE BOXES

84.    JND will establish two separate United States Post Office Boxes: one dedicated for Class Members to submit letters, inquiries, and claim forms; and one dedicated strictly to receive Objections and Opt-Out requests.

I.      **QR CODE**

85.     JND will create a QR Code (a matrix barcode) that will allow quick and direct access to the Settlement website through mobile devices. The QR Code is included, where practicable, in printed notice documents.

VI.     REACH

86.     The proposed media campaign alone is designed to reach 85% of potential Class Members. The direct notice effort, the supplemental industry media, the industry mailing effort, the internet search campaign, the distribution of the national press release, and claims stimulation efforts will extend reach further. The proposed notice effort is similar to and, indeed, more robust than that of other court approved programs and meets the high reach standard set forth by the FJC.

VII.     NOTICE DATES

87.     JND cannot send direct notice until we receive contact information data from all Settling Defendants. As a result, the Notice Plan will commence once JND receives adequate Class Member data from the Settling Defendants (Day 1).  The notice efforts will complete on Day 90. The exclusion/objection deadline will be 60 days from the Notice Plan end date (Day 150). The final fairness hearing could be on Day 230.

88.     Claims stimulation efforts will run up until two weeks prior to the claims filing deadline (Day 235). The Claim filing deadline will be on Day 250.

VIII.     NOTICE DESIGN AND CONTENT

89.     All notice documents were written to comply with the requirements of Fed. R. Civ. P. 23, the Due Process Clause of the United States Constitution, and any other applicable statute, law or rule. I have reviewed and provided input to Settlement Class Counsel and Self-Funded Sub-Class Settlement Counsel on the form and content for each of the notice documents, specifically the

Postcard Notice, the Email Notice, the Long Form Notice, the internet banner ads, the Publication Notice for *People* and *Better Homes & Gardens* magazine, subject to any necessary formatting changes needed for publication, the text of the radio and television ads, the content of the e-newsletter notices, and the press release.  Based on my experience designing court approved class notice programs, in my opinion, each of these notice documents complies with the Fed. R. Civ. P. 23, the Due Process Clause of the United States Constitution, and any other applicable statute, law, or rule, as well as the FJC's Class Action Notice and Plain Language Guide.

90.    Each of these notice documents contain summaries of the Settlement and the options that are available to Class Members. Additionally, the notice documents provide instructions on how to obtain more information about the Settlement.

91.    The Long Form Notice will be posted on the Settlement website and will be available by mail if requested.  It provides details regarding, among other things, the nature of the action; who is in the Settlement Classes; general descriptions of the claims asserted and references the defenses of Settling Defendants; the monetary and injunctive relief afforded by the Settlement Agreement; the right of Class Members to obtain counsel, object to the Settlement, or exclude themselves from the Settlement; and the binding effect of the Settlement on Class Members. The Long Form Notice also provides, inter alia, details on when claims and objections are due, how and when to opt-out, how and where to seek additional information, and how to submit a claim.

92.    The Long Form Notice was used as the basis to create the summary forms of notice: Email Notice, Postcard Notice, and Publication Notice.  These short-form notices provide, among other things, a summary of what the lawsuit is about, who is affected, what a Class Member may receive from the Settlement, the deadline by which a claim should be submitted, other options (opting out and objecting),  and how and where to obtain more information.

93.     To the extent that some Class Members may speak Spanish as their primary language, the print notice documents include a subheading in Spanish at the top directing Spanish speaking Class Members to visit the Settlement website which will be available in Spanish.

IX.     <u>CLAIM FORM AND PROCESSING</u>

94.     The Claim Form explains the claims process, is designed to ensure that filing a claim is as simple as possible and will be sent to any individual who requests a written form. However, the direct notice portion of the Notice Plan is designed to drive claimants to the Settlement website where they can utilize an interactive process for claims submission.  Online claim forms not only save substantial money in postage but are generally favored by claimants since the wizard feature of the process will walk them through the form step by step and will be very user-friendly.  The online claim form process will prevent claimants from submitting an electronic claim without clicking necessary verifications such as signature.  Electronic claims also eliminate the step of manual data entry and generally make processing easier and less expensive.

95.     The interactive Claim Form will be accessed through a secure portal and will request the same information from claimants that is set forth in the printed Claim Form.  The interactive Claim Form will also be designed to ensure that required information is provided before a claimant can move onto the next step of the Claim Form.

96.     Broadly stated, to complete the Claim Form, the claimant (whether an employer, self-insured, or an employee) will provide its name and contact information as well as identify, to the extent possible, the claimant's Blue health plan(s), group number(s), subscriber ID(s) (for individuals), and coverage dates.  The claimant has the option of selecting the default allocation or seeking additional funds based on actual contribution by the claimant; where a selection is not made, the default allocation will be utilized.  Some additional information is required if the

claimant seeks funds beyond the default allocation.  The claimant also has the option of electing a form of payment: check, prepaid card, Venmo, or PayPal.  A signature is required.

97.     All claimants may submit Claim Forms electronically through the Settlement website or physically by mail to the established Settlement P.O. Box.  In the event that a claimant submits a Claim Form and also submits a letter opting out of the Settlement, JND will send a letter to the claimant clarifying his/her/its intent.  In the event that a claimant fails to respond to the letter within thirty (30) days, the last submission JND received will control so long as the submissions were received on or before the exclusion deadline.  The Claim Forms must be submitted or postmarked by a date to be established by the Court within 250 days of the commencement of the Notice Period. JND will review, determine the validity of, and process all Claim Forms submitted by claimants. JND will identify and flag any claims that are incomplete and will seek additional information from the claimant as necessary.  Examples of deficiencies that would require a deficiency letter include: (i) a claimant who contests the default allocation but does not provide sufficient documentation to substantiate their claimed percentage; (ii) a claimant who submits a mailed copy of the Claim Form and fails to sign the Claim Form; (iii) a claimant who fails to state how he/she/it wishes to receive payment; and (iv) other defects that make it impossible for the Claims Administrator to fully process and/or pay the claim.  If a claimant had multiple health insurance or administrative services plans at any point during the Settlement Class Period, JND will combine the premium data and/or administrative costs from the multiple plans into a single claim for that claimant.

98.     Where a claimant selects the Alternative Option for determination of their percentage of contribution to the overall premium or administrative fees paid, that claimant must supply documentation in support of the requested percentage.  Where the claimant supplies documentation in support of that position, the JND team will review the documentation to

determine if it is sufficient to support a greater contribution percentage.  If the documentation is sufficient, the JND team will contact any counterpart who has already filed a claim to be given the opportunity to submit their own additional evidence should they so desire.  Pursuant to the Plan of Distribution, JND will provide the claimant information for the specific claimants whose contribution percentage may be impacted by the claim invoking the alternative option to the Settlement Administrator.   JND will work with the Settlement Administrator to the extent necessary and will report the Settlement Administrator's conclusions to the claimants as applicable.  JND's team will also work with the claimants to answer any questions they may have about the Alternative Option process.

99.     Once a claim has been fully processed and all deficiencies are resolved, JND will create a secure portal where claimants can view their information.  A claimant may then, within thirty (30) days, challenge our premium and/or administrative fees calculation.  If a claimant wishes to challenge a claim determination, the claimant must submit an explanation for why the premium and/or administrative figures we provided are in error and provide documentation sufficient to support their claim to a higher premium and/or administrative fees total during the Class Period.

100.    In the event that the claimant does not challenge the claim determination within thirty (30) days, the decision will be Final and will form the basis for the ultimate payment to the claimant from the Net Settlement Fund.  Or, if we agree with claimant's revised premium and/or administrative figures, we will modify the claim accordingly.

101.    If JND disagrees with the claimant's revised premium and/or administrative figures, JND will explain why and request further documentation deemed appropriate or simply make a final determination.  In appropriate circumstances, JND may refer matters to the Settlement

Administrator for final resolution.   The Settlement Administrator's decision on applicable premium and/or administrative value shall be final.

102.   If the total final payment of a particular claim is equal to or less than $5.00, no distribution will be made to that claimant, and the claimant will be notified by JND that there will be no distribution given the *de minimis* payment.  It is typical to provide for such a *de minimis* threshold so that the costs of administration are not out of proportion to the size of the claim payment.  In my experience, there are often additional costs when small amounts are distributed beyond the costs associated with the actual distribution.  For example, a large percentage of class members do not cash these small checks, resulting in additional time and effort in trying to get claimants to cash the checks or to redistribute such checks to other claimants.  In many cases, we have seen *de minimis* thresholds at $5.00, $10.00 and even higher.

103.   Damages Class Members who are eligible to receive an award from the Net Settlement Fund will receive payment pursuant to the method specified on their Claim Form, *i.e.*, Venmo, PayPal, prepaid card, or check.  When mailing or emailing a payment, JND will send the benefit to the address or email provided by the Damages Class Member on the Claim Form or to the Damages Class Member's preferred address or email if provided to JND.

104.   If a benefit is returned as undeliverable, JND will make all reasonable efforts to deliver the benefit, including by attempting to contact the Damages Class Member in order to obtain updated contact information.  Any check or prepaid card will include its expiration date, if applicable, and the Damages Class Member's name.  Checks not cashed within 90 days will no longer be valid.  Damages Class Members who have not yet cashed checks will be reminded to do so between 30 and 40 days after the checks have been issued.  Any funds which remain (exclusive of the Notice and Administration Fund) will, subject to Court approval, be reallocated among

Damages Class Members or in accordance with the Court-approved Plan of Distribution.  To the extent that any part of the Settlement Fund remains after JND has made the reallocation to Authorized Claimants required under the Settlement Agreement, Settlement Class Counsel and Self-Funded Sub-Class Counsel will jointly seek Court approval to disburse the remainder of the Settlement Fund to an entity or entities closely associated with the harm alleged in the Complaint.  JND will follow the directions approved by the Court.

## X.  OBJECTIONS AND OPT-OUTS

105.    Members of either Settlement Class may object to the Settlement.  Damages Class Members may also exclude themselves ("opt-out") entirely.  The Long Form Notice explains these legal rights (and others) to Class Members.  The deadline for either objecting to or opting-out from the Settlement is 150 days from the date upon which JND receives adequate data from the Settling Defendants to commence the Notice Plan.

106.    Any member of either Settlement Class who wishes to object to any aspect of this Agreement must send to JND, Settlement Class Counsel, Self-Funded Sub-Class Settlement Counsel and Settling Defendants, and file with the Court, a written statement of its objection.  The objection must include:

    a.    The name of this Action and a description of the objections, including any evidence and applicable legal authority and any supporting evidence the objector wishes to introduce;

    b.    The objector's full name, address, email address, telephone number, and the plan name under which Blue Cross or Blue Shield was provided and dates of such coverage;[8]

---

[8] At the request of Settlement Class Counsel, the objector shall also confidentially provide to Settlement Class Counsel the policy number and/or Subscriber ID and date(s) of policy.

c.    Whether the objection applies only to the objector, a specific Settlement Class or subset of a Settlement Class, or both Settlement Classes;

d.    The identity of all counsel who represent the objector, if any, including former or current counsel who may be entitled to compensation for any reason related to the objection, along with a statement of the number of times in which that counsel has objected to a class action within five years preceding the submission of the objection, the caption of the case for each prior objection, and a copy of any relevant orders addressing the objection;

e.    Any and all agreements that relate to the objection or the process of objecting – whether written or oral – between the objector, his or her counsel, and/or any other person or entity;

f.    The objector (and the objector's attorney's) signature on the written objection;

g.    A statement indicating whether the objector intends to appear at the Final Approval Hearing (either personally or through counsel); and

h.    A declaration under penalty of perjury that the information provided by the objector and objector's counsel is true and correct.

107.   Any Damages Class Member may also opt out of the Settlement.  To do so, Damages Class Members must submit a written request to JND stating their intent to exclude themselves from the Settlement.  The exclusion request must include the following:

a.    the name of the claimant, the name of your business (if your business purchased health insurance from a Blue Cross or Blue Shield entity during the Class Period for employees), address, and telephone number;

      b.    a statement that the claimant wants to be excluded from the Settlement Class

          in *In re: Blue Cross Blue Shield Antitrust Litigation*; and

      c.    the claimant's (or business representative's) personal, physical signature.

108.    Electronic signatures, including DocuSign, or PDF signatures are not permitted and will not be considered personal signatures, and submissions signed solely by an individual's or business's lawyer are not valid either.

## XI.    CONCLUSION

109.    In my opinion, the Notice Program as described herein will provide the best notice practicable and is consistent with, if not more robust than, other similar court-approved best notice practicable notice programs, Rule 23 of the Federal Rules of Civil Procedure, and the FJC's guidelines for Best Practicable Due Process notice. It meets due process and Rule 23 requirements to apprise Class Members of the pendency of the Subscriber Actions, the Settlement Agreement, and their opportunity to be heard and to opt out. The Notice Program is designed to reach as many Class Members as practicable and provide them with the opportunity to review a plain language notice with the ability to easily take the next step and learn more about the Settlement.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

          Executed on October 30, 2020, in Seattle, Washington.

          JENNIFER M. KEOUGH

# EXHIBIT A

# JENNIFER KEOUGH

CHIEF EXECUTIVE OFFICER AND CO-FOUNDER





# I. INTRODUCTION

Jennifer Keough is Chief Executive Officer and a Founder of JND Legal Administration ("JND"). She is the only judicially recognized expert in all facets of class action administration - from notice through distribution. With more than 20 years of legal experience, Ms. Keough has directly worked on hundreds of high-profile and complex administration engagements, including such landmark matters as the $20 billion Gulf Coast Claims Facility, $10 billion BP Deepwater Horizon Settlement, $3.4 billion Cobell Indian Trust Settlement (the largest U.S. government class action settlement ever), $3.05 billion VisaCheck/MasterMoney Antitrust Settlement, $1.3 billion Equifax Data Breach Settlement, $1 billion Stryker Modular Hip Settlement, $600 million Engle Smokers Trust Fund, $215 million USC Student Health Center Settlement, and countless other high-profile matters. She has been appointed notice expert in many notable cases and has testified on settlement matters in numerous courts and before the Senate Committee for Indian Affairs.

The only female CEO in the field, Ms. Keough oversees more than 200 employees at JND's Seattle headquarters, as well as other office locations around the country. She manages all aspects of JND's class action business from day-to-day processes to high-level strategies. Her comprehensive expertise with noticing, claims processing,

Systems and IT work, call center logistics, data analytics, recovery calculations, check distribution, and reporting gained her the reputation with attorneys on both sides of the aisle as the most dependable consultant for all legal administration needs. Ms. Keough also applies her knowledge and skills to other divisions of JND, including mass tort, lien resolution, government services, and eDiscovery. Given her extensive experience, Ms. Keough is often called upon to consult with parties prior to settlement, is frequently invited to speak on class action issues, and has authored numerous articles in her multiple areas of expertise.

Ms. Keough launched JND with her partners in early 2016. Just a few months later, Ms. Keough was named as the Independent Claims Administrator ("ICA") in a complex BP Solar Panel Settlement. Ms. Keough also started receiving numerous appointments as notice expert and in 2017 was chosen to oversee a restitution program in Canada where every adult in the country was eligible to participate. Also, in 2017, Ms. Keough was named a female entrepreneur of the year finalist in the 14th Annual Stevie Awards for Women in Business. In 2015 and 2017, she was recognized as a "Woman Worth Watching" by Profiles in Diversity Journal.

Since JND's launch, Mrs. Keough has also been featured in numerous news sources. In 2019, she was highlighted in an Authority Magazine article, "5 Things I wish someone told me before I became a CEO," and a Moneyish article, "This is exactly how rampant 'imposter syndrome' is in the workforce." In 2018, she was featured in several Fierce CEO articles, "JND Legal Administration CEO Jennifer Keough aids law firms in complicated settlements," "Special Report—Women CEOs offer advice on defying preconceptions and blazing a trail to the top," and "Companies stand out with organizational excellence," as well as a Puget Sound Business Journal article, "JND Legal CEO Jennifer Keough handles law firms' big business." In 2013, Ms. Keough appeared in a CNN article, "What Changes with Women in the Boardroom."

Prior to forming JND, Ms. Keough was Chief Operating Officer and Executive Vice President for one of the then largest legal administration firms in the country, where she oversaw operations in several offices across the country and was responsible for all large and critical projects. Previously, Ms. Keough worked as a class action

business analyst at Perkins Coie, one of the country's premier defense firms, where she managed complex class action settlements and remediation programs, including the selection, retention, and supervision of legal administration firms. While at Perkins she managed, among other matters, the administration of over $100 million in the claims-made Weyerhaeuser siding case, one of the largest building product class action settlements ever. In her role, she established a reputation as being fair in her ability to see both sides of a settlement program.

Ms. Keough earned her J.D. from Seattle University. She graduated from Seattle University with a B.A. and M.S.F. with honors.



# II.

# LANDMARK CASES

Jennifer Keough has the distinction of personally overseeing the administration of more large class action programs than any other notice expert in the field. Some of her largest engagements include the following:

### 1. *Allagas v. BP Solar Int'l, Inc.*

**No. 14-cv-00560 (N.D. Cal.)**

Ms. Keough was appointed by the United States District Court for the Northern District of California as the Independent Claims Administrator ("ICA") supervising the notice and administration of this complex settlement involving inspection, remediation, and replacement of solar panels on homes and businesses throughout California and other parts of the United States. Ms. Keough and her team devised the administration protocol and built a network of inspectors and contractors to perform the various inspections and other work needed to assist claimants. She also built a program that included a team of operators to answer claimant questions, a fully interactive dedicated website with online claim filing capability, and a team trained in the very complex intricacies of solar panel mechanisms. In her role as ICA, Ms. Keough regularly reported to the parties and the Court regarding the progress of the case's administration. In addition to her role as ICA, Ms. Keough also acted as mediator for those claimants who opted out of the settlement to pursue their claims individually against BP. Honorable Susan Illston, recognized the complexity of the settlement when appointing Ms. Keough the ICA (December 22, 2016):

> The complexity, expense and likely duration of the litigation favors the Settlement, which provides meaningful and substantial benefits on a much shorter time frame than otherwise possible and avoids risk to class certification and the Class's case on the merits...The Court appoints Jennifer Keough of JND Legal Administration to serve as the Independent Claims Administrator ("ICA") as provided under the Settlement.

## 2. *Careathers v. Red Bull North America, Inc.*

**No. 13-cv-0369 (KPF) (S.D.N.Y.)**

Due to the nature of this case, direct notice was impossible. Therefore, Ms. Keough assisted in the design of a publication notice and claims administration program intended to reach the greatest number of affected individuals. Due to the success of the notice program, the informational website designed by Ms. Keough and her team received an unprecedented 67 million hits in less than 24 hours. The Claims Administration program received over 2 million claim forms submitted through the three available filing options: online, mail, and email. Judge Katherine Polk Failla approved the notice program (May 12, 2015) finding:

> ...that the Notice to the Settlement Class... was collectively the best notice practicable under the circumstances of these proceedings of the matters set forth therein, and fully satisfies the requirements of Rule 23(c)(2)(B) of the Federal Rules of Civil Procedure, due process, and any other applicable laws.

## 3. *Chester v. The TJX Cos.*

**No. 15-cv-01437 (C.D. Cal.)**

As the notice expert, Ms. Keough proposed a multi-faceted notice plan designed to reach over eight million class members. Where class member information was available, direct notice was sent via email and via postcard when an email was returned as undeliverable or for which there was no email address provided. Additionally, to reach the unknown class members, Ms. Keough's plan included a summary notice in eight publications directed toward the California class and a tear-away notice posted in all TJ Maxx locations in California. The notice effort also included an informational and interactive website with online claim filing and a toll-free number that provided information 24 hours a day. Additionally, associates were available to answer class member questions in both English and Spanish during business hours. Honorable Otis D. Wright, II approved the plan (May 14, 2018):

> *...the Court finds and determines that the Notice to Class Members was complete and constitutionally sound, because individual notices were mailed and/or emailed to all Class Members whose identities and addresses are reasonably known to the Parties, and Notice was published in accordance with this Court's Preliminary Approval Order, and such notice was the best notice practicable.*

### 4. *Cobell v. Salazar*

**No. 96 CV 1285 (TFH) (D. D.C.)**

As part of the largest government class action settlement in our nation's history, Ms. Keough worked with the U.S. Government to implement the administration program responsible for identifying and providing notice to the two distinct but overlapping settlement classes. As part of the notice outreach program, Ms. Keough participated in multiple town hall meetings held at Indian reservations located across the country. Due to the efforts of the outreach program, over 80% of all class members were provided notice. Additionally, Ms. Keough played a role in creating the processes for evaluating claims and ensuring the correct distributions were made. Under Ms. Keough's supervision, the processing team processed over 480,000 claims forms to determine eligibility. Less than one half of one percent of all claim determinations made by the processing team were appealed. Ms. Keough was called upon to testify before the Senate Committee for Indian Affairs, where Senator Jon Tester of Montana praised her work in connection with notice efforts to the American Indian community when he stated: "Oh, wow. Okay... the administrator has done a good job, as your testimony has indicated, [discovering] 80 percent of the whereabouts of the unknown class members." Additionally, when evaluating the Notice Program, Judge Thomas F. Hogan concluded (July 27, 2011):

> *...that adequate notice of the Settlement has been provided to members of the Historical Accounting Class and to members of the Trust Administration Class.... Notice met and, in many cases, exceeded the requirements of F.R.C.P. 23(c)(2) for classes certified under F.R.C.P. 23(b)(1), (b)(2) and (b)(3). The best notice practicable has been provided class members, including individual*

*notice where members could be identified through reasonable effort. The contents of that notice are stated in plain, easily understood language and satisfy all requirements of F.R.C.P. 23(c)(2)(B).*

## 5. Gulf Coast Claims Facility (GCCF)

The GCCF was one of the largest claims processing facilities in U.S. history and was responsible for resolving the claims of both individuals and businesses relating to the Deepwater Horizon oil spill. The GCCF, which Ms. Keough helped develop, processed over one million claims and distributed more than $6 billion within the first year-and-a-half of its existence. As part of the GCCF, Ms. Keough and her team coordinated a large notice outreach program which included publication in multiple journals and magazines in the Gulf Coast area. She also established a call center staffed by individuals fluent in Spanish, Vietnamese, Laotian, Khmer, French, and Croatian.

## 6. Hernandez v. Experian Info. Solutions, Inc.

**No. 05-cv-1070 (C.D. Cal.)**

This case asserts claims in violation of the Fair Credit Reporting Act. The litigation dates back to 2005, when José Hernandez filed his original Class Action Complaint in *Hernandez v. Equifax Info. Services, LLC*, No. 05-cv-03996 (N.D. Cal.), which was later transferred to C.D. Cal. and consolidated with several other related cases. In April 2009, a settlement agreement between Defendants and some Plaintiffs was reached that would provide payments of damage awards from a $45 million settlement fund. However, after being granted final approval by the Court, the agreement was vacated on appeal by the United States Circuit Court of Appeals for the Ninth Circuit. The parties resumed negotiations and reached an agreement in April 2017. The settlement provided both significant monetary (approximately $38.7 million in non-reversionary cash) and non-monetary benefits. Ms. Keough oversaw the notice and administration efforts for the entire litigation. In approving the settlement and responding to objections about notice and administration expenses, Honorable David O. Carter, stated (April 6, 2018):

*The Court finds, however, that the notice had significant value for the Class, resulting in over 200,000 newly approved claims—a 28% increase in the number of Class members who will receive claimed benefits—not including the almost 100,000 Class members who have visited the CCRA section of the Settlement Website thus far and the further 100,000 estimated visits expected through the end of 2019. (Dkt. 1114-1 at 3, 6). Furthermore, the notice and claims process is being conducted efficiently at a total cost of approximately $6 million, or $2.5 million less than the projected 2009 Proposed Settlement notice and claims process, despite intervening increases in postage rates and general inflation. In addition, the Court finds that the notice conducted in connection with the 2009 Proposed Settlement has significant ongoing value to this Class, first in notifying in 2009 over 15 million Class members of their rights under the Fair Credit Reporting Act (the ignorance of which for most Class members was one area on which Class Counsel and White Objectors' counsel were in agreement), and because of the hundreds of thousands of claims submitted in response to that notice, and processed and validated by the claims administrator, which will be honored in this Settlement.*

### 7.  *In re Air Cargo Shipping Servs. Antitrust Litig.*

**No. 06-md-1775 (JG) (VVP) (E.D.N.Y.)**

This antitrust settlement involved five separate settlements. As a result, many class members were affected by more than one of the settlements, Ms. Keough constructed the notice and claims programs for each settlement in a manner which allowed affected class members the ability to compare the claims data. Each claims administration program included claims processing, review of supporting evidence, and a deficiency notification process. The deficiency notification process included mailing of deficiency letters, making follow-up phone calls, and sending emails to class members to help them complete their claim. To ensure accuracy throughout the claims process for each of the settlements, Ms. Keough created a process which audited many of the claims that were eligible for payment.

## 8.   In re Classmates.com

**No. C09-45RAJ (W.D. Wash.)**

Ms. Keough managed a team that provided email notice to over 50 million users with an estimated success rate of 89%. When an email was returned as undeliverable, it was re-sent up to three times in an attempt to provide notice to the entire class. Additionally, Ms. Keough implemented a claims administration program which received over 699,000 claim forms and maintained three email addresses in which to receive objections, exclusions, and claim form requests. The Court approved the program when it stated:

> The Court finds that the form of electronic notice… together with the published notice in the Wall Street Journal, was the best practicable notice under the circumstances and was as likely as any other form of notice to apprise potential Settlement Class members of the Settlement Agreement and their rights to opt out and to object. The Court further finds that such notice was reasonable, that it constitutes adequate and sufficient notice to all persons entitled to receive notice, and that it meets the requirements of Due Process…

## 9.   In re Equifax Inc. Customer Data Sec. Breach Litig.

**No. 17-md-2800-TWT (N.D. Ga.)**

JND was appointed settlement administrator, under Ms. Keough's direction, for this complex data breach settlement valued at $1.3 billion with a class of 147 million individuals nationwide. Ms. Keough and her team oversaw all aspects of claims administration, including the development of the case website which provided notice in seven languages and allowed for online claim submissions. In the first week alone, over 10 million claims were filed. Overall, the website received more than 200 million hits and the Contact Center handled well over 100,000 operator calls. Ms. Keough and her team also worked closely with the Notice Provider to ensure that each element of the media campaign was executed in the time and manner as set forth in the Notice Plan.

Approving the settlement on January 13, 2020, Judge Thomas W. Thrash, Jr. acknowledged JND's outstanding efforts:

> JND transmitted the initial email notice to 104,815,404 million class members beginning on August 7, 2019. (App. 4, ¶¶ 53-54). JND later sent a supplemental email notice to the 91,167,239 class members who had not yet opted out, filed a claim, or unsubscribed from the initial email notice. (Id., ¶¶ 55-56). The notice plan also provides for JND to perform two additional supplemental email notice campaigns. (Id., ¶ 57)…JND has also developed specialized tools to assist in processing claims, calculating payments, and assisting class members in curing any deficient claims. (Id., ¶¶ 4, 21). As a result, class members have the opportunity to file a claim easily and have that claim adjudicated fairly and efficiently…The claims administrator, JND, is highly experienced in administering large class action settlements and judgments, and it has detailed the efforts it has made in administering the settlement, facilitating claims, and ensuring those claims are properly and efficiently handled. (App. 4, ¶¶ 4, 21; see also Doc. 739-6, ¶¶ 2-10). Among other things, JND has developed protocols and a database to assist in processing claims, calculating payments, and assisting class members in curing any deficient claims. (Id., ¶¶ 4, 21). Additionally, JND has the capacity to handle class member inquiries and claims of this magnitude. (App. 4, ¶¶ 5, 42). This factor, therefore, supports approving the relief provided by this settlement.

## 10.  *In re General Motors Ignition Switch Litig.*

No. 2543 (MDL) (S.D.N.Y.)

GM Ignition Switch Compensation Claims Resolution Facility

Ms. Keough oversaw the creation of a Claims Facility for the submission of injury claims allegedly resulting from the faulty ignition switch. The Claims Facility worked with experts when evaluating the claim forms submitted. First, the Claims Facility reviewed thousands of pages of police reports, medical documentation, and pictures to determine whether a claim met the threshold

standards of an eligible claim for further review by the expert. Second, the Claims Facility would inform the expert that a claim was ready for its review. Ms. Keough constructed a database which allowed for a seamless transfer of claim forms and supporting documentation to the expert for further review.

## 11. *In re General Motors Ignition Switch Litig.*

### No. 2543 (MDL) (S.D.N.Y.)

Ms. Keough was also recently appointed the class action settlement administrator for the $120 million GM Ignition Switch settlement. On April 27, 2020, Honorable Jesse M. Furman approved the notice program designed by Ms. Keough and her team and the notice documents they drafted with the parties:

> *The Court further finds that the Class Notice informs Class Members of the Settlement in a reasonable manner under Federal Rule of Civil Procedure 23(e)(1)(B) because it fairly apprises the prospective Class Members of the terms of the proposed Settlement and of the options that are open to them in connection with the proceedings.*

> *The Court therefore approves the proposed Class Notice plan, and hereby directs that such notice be disseminated to Class Members in the manner set forth in the Settlement Agreement and described in the Declaration of the Class Action Settlement Administrator...*

Under Ms. Keough's direction, JND has already mailed notice to nearly 30 million potential class members.

## 12. *In re Mercedes-Benz Emissions Litig.*

### No. 16-cv-881 (D.N.J.)

JND Legal Administration was recently appointed as the Settlement Administrator in this $700 million plus settlement wherein Daimler AG and its subsidiary Mercedes-Benz USA reached an agreement to settle a consumer class action alleging that the automotive companies unlawfully misled consumers into purchasing certain diesel type vehicles by misrepresenting the environmental

impact of these vehicles during on-road driving.  As part of its appointment, the Court approved Jennifer Keough's proposed notice plan and authorized JND Legal Administration to provide notice and claims administration services.

### 13.  *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*

**No. 2179 (MDL) (E.D. La.)**

Following the closure of the Gulf Coast Claims Facility, the Deepwater Horizon Settlement claims program was created. There were two separate legal settlements that provided for two claims administration programs. One of the programs was for the submission of medical claims and the other was for the submission of economic and property damage claims. Ms. Keough played a key role in the formation of the claims program for the evaluation of economic and property damage claims. Additionally, Ms. Keough built and supervised the back-office mail and processing center in Hammond, Louisiana, which was the hub of the program. The Hammond center was visited several times by Claims Administrator Pat Juneau -- as well as by the District Court Judge and Magistrate -- who described it as a shining star of the program.

### 14.  *In re Stryker Rejuvenate and ABG II Hip Implant Products Liab. Litig.*

**No. 13-2441 (MDL) (D. Minn.)**

Ms. Keough and her team were designated as the escrow agent and claims processor in this $1 billion settlement designed to compensate eligible U.S. Patients who had surgery to replace their Rejuvenate Modular-Neck and/or ABG II Modular-Neck hip stems prior to November 3, 2014. As the claims processor, Ms. Keough and her team designed internal procedures to ensure the accurate review of all medical documentation received; designed an interactive website which included online claim filing; and established a toll-free number to allow class members to receive information about the settlement 24 hours a day. Additionally, she oversaw the creation of a deficiency process to ensure claimants were notified of their deficient submission and provided an opportunity to cure. The program

also included an auditing procedure designed to detect fraudulent claims and a process for distributing initial and supplemental payments. Approximately 95% of the registered eligible patients enrolled in the settlement program.

## 15.  *In re The Engle Trust Fund*

**No. 94-08273 CA 22 (Fla. 11th Jud. Cir. Ct.)**

Ms. Keough played a key role in administering this $600 million landmark case against the country's five largest tobacco companies. Miles A. McGrane, III, Trustee to the Engle Trust Fund recognized Ms. Keough's role when he stated:

> *The outstanding organizational and administrative skills of Jennifer Keough cannot be overstated. Jennifer was most valuable to me in handling numerous substantive issues in connection with the landmark Engle Trust Fund matter. And, in her communications with affected class members, Jennifer proved to be a caring expert at what she does.*

## 16.  *In re Washington Mut. Inc., Sec. Litig.*

**No. 08-md-1919 MJP (W.D. Wash.)**

Ms. Keough supervised the notice and claims administration for this securities class action, which included three separate settlements with defendants totaling $208.5 million. In addition to mailing notice to over one million class members, Ms. Keough managed the claims administration program, including the review and processing of claims, notification of claim deficiencies, and distribution. In preparation for the processing of claims, Ms. Keough and her team established a unique database to store the proofs of claim and supporting documentation; trained staff to the particulars of this settlement; created multiple computer programs for the entry of class member's unique information; and developed a program to calculate the recognized loss amounts pursuant to the plan of allocation. The program was designed to allow proofs of claim to be filed by mail or through an online portal. A deficiency process was established in order to reach out to class members who submitted incomplete proof of claims. The deficiency process involved reaching out to claimants via letters, emails, and telephone calls.

### 17. *In re Yahoo! Inc. Sec. Litig.*

**No. 17-cv-373 (N.D. Cal.)**

Ms. Keough oversaw the notice and administration of this $80 million securities settlement. In approving the settlement, Judge Lucy H. Koh, stated (September 7, 2018):

> *The Court hereby finds that the forms and methods of notifying the Settlement Class of the Settlement and its terms and conditions: met the requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and 15 U.S.C. § 78u-4(a)(7) (added to the Exchange Act by the Private Securities Litigation Reform Act of 1995); constituted the best notice practicable under the circumstances; and constituted due and sufficient notice to all persons and entities entitled thereto of these proceedings and the matters set forth herein, including the Settlement and Plan of Allocation.*

### 18. *Linneman v. Vita-Mix Corp.*

**No. 15-cv-748 (S.D. Ohio)**

Ms. Keough was hired by Plaintiff Counsel to design a notice program regarding this consumer settlement related to allegedly defective blenders. The Court approved Ms. Keough's plan and designated her as the notice expert for this case. As direct notice to the entire class was impracticable due to the nature of the case, Ms. Keough proposed a multi-faceted notice program. Direct notice was provided by mail or email to those purchasers identified through data obtained from Vita-Mix and third parties, such as retailers, dealers, distributors, or restaurant supply stores. To reach the unknown class members, Ms. Keough oversaw the design of an extensive media plan that included: published notice in *Cooking Light*, *Good Housekeeping*, and *People* magazine and digital notice; placements through Facebook/Instagram, Twitter, and Conversant; and paid search campaign through Google and Bing. In addition, the program included an informational and interactive website where class members could submit claims electronically, and a toll-free number that provided information to class

members 24 hours a day. When approving the plan, Honorable Susan J. Dlott stated (May 3, 2018):

> *JND Legal Administration, previously appointed to supervise and administer the notice process, as well as oversee the administration of the Settlement, appropriately issued notice to the Class as more fully set forth in the Agreement, which included the creation and operation of the Settlement Website and more than 3.8 million mailed or emailed notices to Class Members. As of March 27, 2018, approximately 300,000 claims have been filed by Class Members, further demonstrating the success of the Court-approved notice program.*

## 19. *Loblaw Card Program*

Jennifer Keough was selected by major Canadian retailer Loblaw and its counsel to act as program administrator in its voluntary remediation program. The program was created as a response to a price-fixing scheme perpetrated by some employees of the company involving bread products. The program offered a $25 gift card to all adults in Canada who purchased bread products in Loblaw stores between 2002 and 2015. Some 28 million Canadian residents were potential claimants. Ms. Keough and her team: (1) built an interactive website that was capable of withstanding hundreds of millions of "hits" in a short period of time; (2) built, staffed and trained a call center with operators available to take calls twelve hours a day, six days a week; (3) oversaw the vendor in charge of producing and distributing the cards; (4) was in charge of designing and overseeing fraud prevention procedures; and (5) handled myriad other tasks related to this high-profile and complex project.

## 20. *New Orleans Tax Assessor Project*

After Hurricane Katrina, the City of New Orleans began to reappraise properties in the area which caused property values to rise. Thousands of property owners appealed their new property values and the City Council did not have the capacity to handle all the appeals in a timely manner. As a result of the large number of appeals, the City of New Orleans hired Ms. Keough to design a

unique database to store each appellant's historical property documentation. Additionally, Ms. Keough designed a facility responsible for scheduling and coordinating meetings between the 5,000 property owners who appealed their property values and real estate agents or appraisers. The database that Ms. Keough designed facilitated the meetings between the property owners and the property appraisers by allowing the property appraisers to review the property owner's documentation before and during the appointment with them.

## 21. USC Student Health Ctr. Settlement

**No. 18-cv-04258-SVW (C.D. Cal.)**

JND was approved as the Settlement Administrator in this important $215 million settlement that provides compensation to women who were sexually assaulted, harassed and otherwise abused by Dr. George M. Tyndall at the USC Student Health Center during a nearly 30-year period. Ms. Keough and her team designed a notice effort that included: mailed and email notice to potential Class members; digital notices on Facebook, LinkedIn, and Twitter; an internet search effort; notice placements in USC publications/eNewsletters; and a press release. In addition, her team worked with USC staff to ensure notice postings around campus, on USC's website and social media accounts, and in USC alumni communications, among other things. Ms. Keough ensured the establishment of an all-female call center, whose operators were fully trained to handle delicate interactions, with the goal of providing excellent service and assistance to every woman affected. She also worked with the JND staff handling lien resolution for this case. Preliminarily approving the settlement, Honorable Stephen V. Wilson stated (June 12, 2019):

> The Court hereby designates JND Legal Administration ("JND") as Claims Administrator. The Court finds that giving Class Members notice of the Settlement is justified under Rule 23(e)(1) because, as described above, the Court will likely be able to: approve the Settlement under Rule 23(e)(2); and certify the Settlement Class for purposes of judgment. The Court finds that the proposed

*Notice satisfies the requirements of due process and Federal Rule of Civil Procedure 23 and provides the best notice practicable under the circumstances.*

## 22. Williams v. Weyerhaeuser Co.

**Civil Action No. 995787 (Cal. Super. Ct.)**

This landmark consumer fraud litigation against Weyerhaeuser  Co. had over $100 million in claims paid. The action involved exterior hardboard siding installed on homes and other structures throughout the United States from January 1, 1981 to December 31, 1999 that was alleged to be defective and prematurely fail when exposed to normal weather conditions.

Ms. Keough oversaw the administration efforts of this program, both when she was employed by Perkins Coie, who represented defendants, and later when she joined the legal administration firm handling the case. Operating for nine years, the claims program was extensive, subject to varying claims with varying claims deadlines depending on when the class member installed the original Weyerhaeuser siding. The program involved not just payments to class members, but an inspection component where a court-appointed inspector analyzed the particular claimant's siding to determine the eligibility and award level.  Class members received a check for their damages, based upon the total square footage of damaged siding, multiplied by the cost of replacing, or, in some instances, repairing, the siding on their homes.  Ms. Keough oversaw the entirety of the program from start to finish.



# III.

# JUDICIAL RECOGNITION

Courts have favorably recognized Ms. Keough's work as outlined above and by the sampling of judicial comments from JND programs listed below.

## 1. Judge Jesus G. Bernal

***Noriesta v. Konica Minolta Bus. Solutions U.S.A., Inc.,*** (October 22, 2020)
No. 19-cv-00620 (C.D. Cal.):

*Rule 23(c)(2)(B) requires that the Court "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Similarly, Rule 23(e)(1) requires that a proposed settlement may only be approved after notice is directed in a reasonable manner to all class members who would be bound by the agreement. Fed. R. Civ. P. 23(e)(1). In its MPA Order, the Court approved the notice sent to Settlement Class Members. (MPA Order at 13.) JND Legal Administration completed notice in accordance with the procedures approved by the Court. (See Keough Decl.) The Court therefore finds that notice to the Settlement Class was adequate.*

## 2. Honorable Dennis M. Cavanaugh, U.S.D.J. (Ret. Special Master)

***In re Mercedes-Benz Emissions Litig.,*** (September 16, 2020)
No. 16-cv-881 (D.N.J.):

*The Court finds that the content, format, and method of disseminating notice, as set forth in the Motion, Declaration of JND Legal Administration, the Class Action Agreement, and the proposed Long Form Notice, Short Form Notice, and Supplemental Notice of Class Benefits (collectively, the "Class Notice Documents") – including direct First Class mailed notice to all known members of the Class deposited in the mail within the later of (a) 15 business days of the Preliminary Approval Order; or (b) 15 business days after a federal district court enters the US-CA Consent Decree – is the best notice practicable under the circumstances and satisfies all requirements provided in Rule 23(c)(2)(B). The Court approves such notice, and hereby directs that*

*such notice be disseminated in the manner set forth in the Class Action Settlement to the Class under Rule 23(e)(1)...JND Legal Administration is hereby appointed as the Settlement Administrator and shall perform all duties of the Settlement Administrator set forth in the Class Action Settlement.*

### 3. Judge Susan O. Hickey

***Stuart v. State Farm Fire & Cas. Co.,*** (June 2, 2020)
No. 14-cv-04001 (W.D. Ark.):

*Plaintiffs and the Administrator have satisfactorily demonstrated that the Class Notice and Claim Form was mailed, that the Publication Notice was published, that the Postcard Notice was mailed, and that an automated toll-free telephone number and settlement website were established in accordance with the Stipulation and Preliminary Approval Order.*

### 4. Judge Susan R. Bolton

***In re Banner Health Data Breach Litig.,*** (April 21, 2020)
No. 16-cv-02696 (D. Ariz.):

*Prior to the Final Approval Hearing, Class Counsel filed the original and supplemental Declaration of Jennifer M. Keough Regarding Notice Administration, confirming that the Notice Program was completed in accordance with the Parties' instructions and the Preliminary Approval Order. Therefore, the Court is satisfied that Settlement Class Members were properly notified of their right to appear at the Final Approval Hearing in support of, or in opposition to, the proposed Settlement, the award of attorneys' fees, costs, and expenses, and the payment of Service Awards to the Class Representatives.*

### 5.   Honorable Virginia A. Phillips

*Sonner v. Schwabe North America, Inc.,* (April 7, 2020)
No. 15-cv-01358 VAP (SPx) (C.D. Cal.):

*The Court orders the appointment of JND Legal Administration to implement and administrate the dissemination of class notice and administer opt-out requests pursuant to the proposed notice dissemination plan attached as Exhibit D to the Stipulation.*

### 6.   Honorable Steven I. Locke

*Donnenfield v. Petro, Inc.,* (March 26, 2020)
No. 17-cv-02310 (E.D.N.Y.):

*The Court holds that the Class Notice and notice plan as carried out satisfy the requirements of Fed. R. Civ. P. 23(e) and due process. This Court has previously held the Class Notice and notice plan to be reasonable and the best practicable under the circumstances in its Preliminary Approval Order dated December 5, 2019 (ECF No. 74) and Order Regarding Notice to Class and Related Matters dated February 6, 2020 (ECF No. 77). The Court further finds that the direct-notice strategy as implemented has successfully and adequately reached the Class, thus constituting the best practicable notice and satisfying due process.*

### 7.   Judge Joan B. Gottschall

*In re Navistar MaxxForce Engines Mktg., Sales Practices and Products,* (January 3, 2020)
No. 14-cv-10318 (N.D. Ill.):

*In accordance with PTO 29 and subsequent orders, the settlement administrator, a corporation for which Jennifer Keough ("Keough" or "settlement administrator") speaks, filed several declarations updating the court on the notice, opt-out, and claims process... the court finds that the settlement is fair, reasonable, and adequate.*

### 8.   Judge Fernando M. Olguin

***Ahmed v. HSBC Bank USA, NA,*** (December 30, 2019)
No. 15-cv-2057-FMO-SPx (N.D. Ill.):

*On June 21, 2019, the court granted preliminary approval of the settlement, appointed JND Legal Administration ("JND") as settlement administrator… the court finds that the class notice and the notice process fairly and adequately informed the class members of the nature of the action, the terms of the proposed settlement, the effect of the action and release of claims, the class members' right to exclude themselves from the action, and their right to object to the proposed settlement… the reaction of the class has been very positive.*

### 9.   Honorable Steven I. Locke

***Donnenfield v. Petro, Inc.,*** (December 4, 2019)
No. 17-cv-02310 (E.D.N.Y.):

*WHEREAS, the Parties have agreed to use JND Legal Administration ("JND"), an experienced administrator of class action settlements, as the claims administrator for this Settlement and agree that JND has the requisite experience and expertise to serve as claims administrator; The Court appoints JND as the claims administrator for the Settlement.*

### 10.  Judge Steven W. Wilson

***Amador v Baca,*** (November 7, 2019)
No. 10-cv-1649 (C.D. Cal.):

*The Court approves the retention of JND Legal Administration ("JND") as Class Administrator, to administer the distribution of the Class and Settlement Notice and publication of the Class and Settlement Notice, and to distribute the proceeds of the settlement to all eligible Class Members pursuant to the Plan set out in the Settlement Agreement (Exhibit A) should the Court grant final approval. Exhibit E (the Class Administrator bid) includes the qualifications of JND, which establishes to the Court's satisfaction the qualifications of JND to act as the Class Administrator.*

## 11.  Honorable Amy D. Hogue

***Trepte v. Bionaire, Inc.,*** (November 5, 2019)
No. BC540110 (Cal. Super. Ct.):

*The Court appoints JND Legal Administration as the Class Administrator,.. The Court finds that the forms of notice to the Settlement Class regarding the pendency of the action and of this settlement, and the methods of giving notice to members of the Settlement Class… constitute the best notice practicable under the circumstances and constitute valid, due, and sufficient notice to all members of the Settlement Class. They comply fully with the requirements of California Code of Civil Procedure section 382, California Civil Code section 1781, California Rules of Court 3.766 and 3.769, the California and United States Constitutions, and other applicable law.*

## 12.  Judge Sarah D. Morrison

***Blasi v. United Debt Serv., LLC,*** (November 5, 2019)
No. 14-cv-0083 (S.D. Ohio):

*JND Class Action Administration ("JND"), the claims administrator, mailed 166,597 notices to the class and had 10,377 notices returned as undeliverable. Id. at 6. Of those, JND re-mailed 2,306 to updated addresses. Id. 7. In addition, the website hosted 3,606 users who registered 10,170 page views. Id. As of August 14, 2019, JND had received 11,178 claim forms that remained under review. Id. Not one objection was lodged, and no one sought exclusion. Id… Through the postcard mailing and the website, the Court finds that the Class Representatives have utilized the best possible yet reasonable means to effectuate notice. Consequently, the Court holds that the Settlement Notice is sufficient.*

## 13.  Judge Cormac J. Carney

***In re ConAgra Foods Inc.,*** (October 8, 2019)
No. 11-cv-05379-CJC-AGR (C.D. Cal.):

*Following the Court's preliminary approval, JND used a multi-pronged notice campaign to reach people who purchased Wesson Oils…As of September 19, 2019, only one class member requested to opt out of the settlement class, with another*

*class member objecting to the settlement. The reaction of the class has thus been overwhelmingly positive, and this factor favors final approval.*

## 14. Judge Teri L. Jackson

***Lee v. Hertz Corp., Dollar Thrifty Auto. Grp. Inc.,*** (August 30, 2019)
No. CGC-15-547520 (Cal. Super. Ct.):

*On April, 16, 2019, the Court issued Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, in which the Court did the following…appointed JND Legal Administration as the Settlement Administrator…The manner and form of notice…was the best notice practicable under the circumstances, was valid, due, and sufficient notice to all members of the Settlement Class, and complied fully with California law and due process.*

## 15. Judge Barbara Jacobs Rothstein

***Wright v. Lyft, Inc.,*** (May 29, 2019)
No. 17-cv-23307-MGC 14-cv-00421-BJR (W.D. Wash.):

*The Court also finds that the proposed method of distributing relief to the class is effective. JND Legal Administration ("JND"), an experienced claims administrator, undertook a robust notice program that was approved by this Court…*

## 16. Judge J. Walton McLeod

***Boskie v. Backgroundchecks.com,*** (May 17, 2019)
No. 2019CP3200824 (S.C. C.P.):

*The Court appoints JND Legal Administration as Settlement Administrator…The Court approves the notice plans for the HomeAdvisor Class and the Injunctive Relief Class as set forth in the declaration of JND Legal Administration. The Court finds the class notice fully satisfies the requirements of due process, the South Carolina Rules of Civil Procedure. The notice plan for the HomeAdvisor Class and Injunctive Relief Class constitutes the best notice practicable under the circumstances of each Class.*

## 17.  Honorable James Donato

*In re Resistors Antitrust Litig.,* (May 2, 2019)
No. 15-cv-03820-JD (N.D. Cal.):

*The Court approves as to form and content the proposed notice forms, including the long form notice and summary notice, attached as Exhibits B and D to the Second Supplemental Declaration of Jennifer M. Keough Regarding Proposed Notice Program (ECF No. 534-3). The Court further finds that the proposed plan of notice – including Class Counsel's agreement at the preliminary approval hearing for the KOA Settlement that direct notice would be effectuated through both U.S. mail and electronic mail to the extent electronic mail addresses can be identified following a reasonable search – and the proposed contents of these notices, meet the requirements of Rule 23 and due process, and are the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons entitled thereto.The Court appoints the firm of JND Legal Administration LLC as the Settlement Administrator.*

## 18.  Honorable Leigh Martin May

*Bankhead v. First Advantage Background Serv. Corp.,* (April 30, 2019)
No. 17-cv-02910-LMM-CCB (N.D. Ga.):

*The Court appoints JND Legal Administration as Settlement Administrator... The Court approves the notice plans for the Class as set forth in the declaration of the JND Legal Administration. The Court finds that class notice fully satisfies the requirements of due process of the Federal Rules of Civil Procedure. The notice plan constitutes the best notice practicable under the circumstances of the Class.*

## 19.  Honorable P. Kevin Castel

*Hanks v. Lincoln Life & Annuity Co. of New York,* (April 23, 2019)
No. 16-cv-6399 PKC (S.D.N.Y.):

*The Court approves the form and contents of the Short-Form Notice and Long-Form Notice (collectively, the "Notices") attached as Exhibits A and B, respectively, to the*

*Declaration of Jennifer M. Keough, filed on April 2, 2019, at Docket No. 120...The form and content of the notices, as well as the manner of dissemination described below, therefore meet the requirements of Rule 23 and due process, constitute the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all persons and entities entitled thereto...the Court approves the retention of JND Legal Administration LLC ("JND") as the Notice Administrator.*

## 20. Judge Cormac J. Carney

***In re ConAgra Foods Inc,*** (April 4, 2019)
No. 11-cv-05379-CJC-AGR (C.D. Cal.):

*The bids were submitted to Judge McCormick, who ultimately chose JND Legal Administration to propose to the Court to serve as the settlement administrator. (Id. ¶ 65.) In addition to being selected by a neutral third party, JND Legal Administration appears to be well qualified to administer the claims in this case... The Court appoints JND Legal Administration as Settlement Administrator... JND Legal Administration will reach class members through a consumer media campaign, including a national print effort in People magazine, a digital effort targeting consumers in the relevant states through Google Display Network and Facebook, newspaper notice placements in the Los Angeles Daily News, and an internet search effort on Google. (Keough Decl. ¶ 14.) JND Legal Administration will also distribute press releases to media outlets nationwide and establish a settlement website and toll-free phone number. (Id.) The print and digital media effort is designed to reach 70% of the potential class members. (Id.) The newspaper notice placements, internet search effort, and press release distribution are intended to enhance the notice's reach beyond the estimated 70%. (Id.)*

## 21. Honorable William J. McGovern, III, J.S.C.

***Atl. Ambulance Corp. v. Cullum and Hitti,*** (March 29, 2019)
No. MRS-L-264-12 (N.J. Super. Ct.):

*The Court finds that the manner and form of notice set forth in the Settlement Agreement (Class Notice) was provided to the Settlement Class Members and*

*Settlement Sub-class Members by JND Legal Administration, the Court-appointed Administrator of the Settlement...The Class Notice satisfied the requirements of due process and R. 4:32-2 and constitutes the best practicable notice under the circumstances.*

## 22. Judge Edward M. Chen

*In re MyFord Touch Consumer Litig.*, (March 28, 2019)
No. 13-cv-3072 (EMC) (N.D. Ca.):

*The parties have justified their choice of JND as Settlement Administrator... And the Court finds that the language of the class notice is appropriate and that the means of notice is the "best notice...practicable under the circumstances."*

## 23. Judge Jonathan Goodman

*Belanger v. RoundPoint Mortgage Servicing*, (March 28, 2019)
No. 17-cv-23307-MGC (S.D. Fla.):

*Class Counsel has filed with the Court a declaration from Jennifer M. Keough, Chief Executive Officer at JND Legal Administration, the independent third-party Settlement Administrator for the Settlement, establishing that the Mail Notice, Claim Form, and Claim Form Instructions were mailed to Noticed Class Members on December 12, 2018; the Settlement Website and IVR toll-free telephone number system were established on December 12, 2018; internet advertising was published beginning December 14, 2018; and the Publication Notice was published on January 7, 2019. Adequate Class Notice was given to the Noticed Class Members in compliance with the Settlement Agreement and the Preliminary Approval Order.*

## 24. Judge Steven P. Shreder

*Chieftain Royalty Co. v. Marathon Oil Co.*, (March 8, 2019)
No. 17-cv-334 (E.D. Okla.):

*The Court also approves the efforts and activities of the Settlement Administrator, JND Legal Administration, and the Escrow Agent, Signature Bank, in assisting with*

*certain aspects of the administration of the Settlement, and directs them to continue to assist Class Representatives in completing the administration and distribution of the Settlement in accordance with the Settlement Agreement, this Judgment, any Plan of Allocation approved by the Court, and the Court's other orders.*

### 25. Judge Thomas S. Zilly

**Connolly v. Umpqua Bank,** (February 28, 2019)
No. C15-517 (TSZ) (W.D. Wash.):

*Notice of the proposed class action settlement and of the final approval hearing scheduled for February 21, 2019, was sent to all members of the Class in the manner described in the Declaration of Jennifer M. Keough, the Chief Executive Officer of JND Legal Administration, which is the Settlement Administrator for this matter... the methods of transmitting notices to class members, along with the maintenance of a dedicated website, were the best notice practicable under the circumstances and comported with Federal Rule of Civil Procedure 23 and the Due Process Clause of the United States Constitution.*

### 26. Judge Kathleen M. Daily

**Podawiltz v. Swisher Int'l, Inc.,** (February 7, 2019)
No. 16CV27621 (Or. Cir. Ct.):

*The Court appoints JND Legal Administration as settlement administrator...The Court finds that the notice plan is reasonable, that it constitutes due, adequate and sufficient notice to all persons entitled to receive notice, and that it meets the requirements of due process, ORCP 32, and any other applicable laws.*

### 27. Honorable Robert W. Lehrburger

**Hines v. CBS Television Studios,** (February 5, 2019)
No. 17-cv-7882 (PGG) (S.D.N.Y.):

*Class Members were provided with the best notice practicable under the circumstances. The Court further finds that the Notice and its distribution comported*

*with all constitutional requirements, including those of due process. No Cass Member opted out of or objected to the Settlement. Moreover, approximately 57% of Class Members returned the Claim form, which represents a substantial response from the Settlement Class…On August 24, 2018 the Court preliminary appointed JND as the Settlement Claims Administrator in this action. JND is an experienced administrator of Class Action settlements nationwide.*

## 28. Judge Naomi Reice Buchwald

***In re LIBOR-Based Fin. Instruments Antitrust Litig.,*** (December 20, 2018)
No. 11-md-2262 (NRB) (S.D.N.Y.):

*The Court hereby finds that the forms and methods of notifying the Lender Class of the Settlements and their terms and conditions met the requirements of the United States Constitution (including the Due Process Clause), Rule 23 of the Federal Rules of Civil Procedure, and all other applicable law and rules; constituted the best notice practicable under the circumstances; and constituted due and sufficient notice to all Lender Class Members entitled thereto of these proceedings and the matters set forth herein, including the Settlements and Plan of Distribution.*

## 29. Judge Kimberly E. West

***Reirdon v. Cimarex Energy Co.,*** (December 18, 2018)
No. 16-CIV-113 (KEW) (E.D. Okla.):

*The Court further finds that due and proper notice, by means of the Notice and Summary Notice, was given to the Settlement Class in conformity with the Settlement Agreement and Preliminary Approval Order…The Court also approves the efforts and activities of the Settlement Administrator, JND Legal Administration, and the Escrow Agent, Signature Bank, in assisting with certain aspects of the administration of the Settlement, and directs them to continue to assist Class Representative in completing the administration and distribution of the Settlement in accordance with the Settlement Agreement, this Judgment, any Plan of Allocation approved by the Court, and the Court's other orders.*

## 30.  Honorable Kenneth J. Medel

***Huntzinger v. Suunto Oy,*** (December 14, 2018)
No. 37-2018-27159 (CU) (BT) (CTL) (Cal. Super. Ct.):

*The Court finds that the Class Notice and the Notice Program implemented pursuant to the Settlement Agreement and Preliminary Approval Order constituted the best notice practicable under the circumstances to all persons within the definition of the Class and fully complied with the due process requirement under all applicable statutes and laws and with the California Rules of Court.*

## 31.  Judge Mark H. Cohen

***Liotta v. Wolford Boutiques, LLC,*** (November 30, 2018)
No. 16-cv-4634 (N.D. Ga.):

*The Notice Program included written mail notice via post-card pursuant to addresses determined from a look-up on the telephone numbers using a historic look-up process designed to identify the owner of the relevant telephone numbers on July 7, 2016 and September 2, 2016. Keough Decl. ¶¶ 3-4. The Claims Administrator used multiple databases to determine addresses and names of the cellular telephone owners at the time the text messages were sent. Keough Decl. ¶ 3. The Parties' filed evidence that the Claims Administrator provided notice in conformance with the Notice Program approved by the Court. Id. ¶ 4 & Ex. A; Settlement Agreement § C.4; Prelim. Approval Order at 16-17. This notice constituted the most effective and best notice practicable under the circumstances of the Settlement Agreement and the fairness hearing. The notice constituted due and sufficient notice for all other purposes to all persons entitled to receive notice.*

## 32.  Judge Kimberly E. West

***Cecil v. BP America Prod. Co.,*** (November 19, 2018)
No. 16-cv-410 (RAW) (E.D. Okla.):

*The form, content, and method of communicating the Notice of Settlement, together with the class settlement website referred to therein: (i) constituted the best notice*

*practicable under the circumstances; (ii) constituted notice reasonably calculated, under the circumstances, to apprise potential Class Members of the pendency of the Litigation, the proposed Settlement Agreement, their right to exclude themselves from the proposed Settlement Agreement and resulting Settlement, their right to object to the same of any part thereof, and their right to appear at the Final Fairness Hearing; (iii) was reasonable and constituted due, adequate, and sufficient notice to all persons and entities entitled to such notice; and (iv) met all applicable requirements of the Federal Rules of Civil Procedure, the Due Process Clause of the United States Constitution, the Due Process protection of the State of Oklahoma, and any other applicable law.*

### 33.  Honorable Thomas M. Durkin

***In re Broiler Chicken Antitrust Litig.,*** (November 16, 2018)
No. 16-cv-8637 (N.D. Ill.):

*The notice given to the Class, including individual notice to all members of the Class who could be identified through reasonable efforts, was the best notice practicable under the circumstances. Said notice provided due and adequate notice of the proceedings and of the matters set forth therein, including the proposed settlement set forth in the Settlement Agreement, to all persons entitled to such notice, and said notice fully satisfied the requirements of Rules 23(c)(2) and 23(e)(1) of the Federal Rules of Civil Procedure and the requirements of due process.*

### 34.  Honorable Beth Labson Freeman

***Wahl v. Yahoo! Inc.,*** (November 15, 2018)
No. 17-cv-2745 (BLF) (N.D. Cal.):

*The Settlement Class was provided with adequate notice of the settlement and an opportunity to object or opt out. The notice satisfied all applicable legal requirements, including those under Federal Rule of Civil Procedure 23 and the United States Constitution.*

### 35.  Honorable Tanya Walton Pratt

***Pierce v Anthem Ins. Cos.,*** (November 13, 2018)
No. 15-cv-00562-TWP-TAB (S. D. Ind.):

*The Court hereby finds and concludes that Notice and the Supplemental Notice was disseminated to members of the Settlement Class in accordance with the terms of the Agreement and that the Notice and its dissemination were in compliance with the Agreement and this Court's Preliminary Approval. The Court further finds and concludes that the Notice implemented pursuant to the Settlement Agreement constitutes the best practicable notice; is notice that is reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the Action, their right to accept, object to or exclude themselves from the proposed settlement and to appear at the fairness hearing; constitutes reasonable, due, adequate and sufficient notice to all persons entitled to receive notice; and meets all applicable requirements of the Federal Rules of Civil Procedure, the Due Process Clause of the United States Constitution and any Rules of the Court.*

### 36.  Judge Maren E. Nelson

***Granados v. County of Los Angeles,*** (October 30, 2018)
No. BC361470 (Cal. Super. Ct.):

*JND's Media Notice plan is estimated to have reached 83% of the Class. The overall reach of the Notice Program was estimated to be over 90% of the Class. (Keough Decl., at ¶12.). Based upon the notice campaign outlined in the Keough Declaration, it appears that the notice procedure was aimed at reaching as many class members as possible. The Court finds that the notice procedure satisfies due process requirements.*

### 37.  Judge Maren E. Nelson

*McWilliams v. City of Long Beach,* (October 30, 2018)
No. BC361469 (Cal. Super. Ct.):

*It is estimated that JND's Media Notice plan reached 88% of the Class and the overall reach of the Notice Program was estimated to be over 90% of the Class. (Keough Decl., at ¶12.). Based upon the notice campaign outlined in the Keough Declaration, it appears that the notice procedure was aimed at reaching as many class members as possible. The Court finds that the notice procedure satisfies due process requirements.*

### 38.  Judge Cheryl L. Pollak

*Dover v. British Airways, PLC (UK),* (October 9, 2018)
No. 12-cv-5567 (E.D.N.Y.), in response to two objections:

*JND Legal Administration was appointed as the Settlement Claims Administrator, responsible for providing the required notices to Class Members and overseeing the claims process, particularly the processing of Cash Claim Forms…the overwhelmingly positive response to the Settlement by the Class Members, reinforces the Court's conclusion that the Settlement is fair, adequate, and reasonable.*

### 39.  Judge Edward J. Davila

*In re Intuit Data Litig.,* (October 4, 2018)
No. 15-CV-1778-EJD (N.D. Cal.):

*The Court appoints JND Legal Administration ("JND") to serve as the Settlement Administrator…The Court approves the program for disseminating notice to Class Members set forth in the Agreement and Exhibit A thereto (herein, the "Notice Program"). The Court approves the form and content of the proposed forms of notice, in the forms attached as Attachments 1 through 3 to Exhibit A to the Agreement. The Court finds that the proposed forms of notice are clear and readily understandable by Class Members. The Court finds that the Notice Program, including the proposed forms of notice, is reasonable and appropriate and satisfies any applicable due*

*process and other requirements, and is the only notice to the Class Members of the Settlement that is required.*

## 40.  Judge Michael H. Watson

***O'Donnell v. Fin. American Life Ins. Co.,*** (August 24, 2018)
No. 14-cv-01071 (S.D. Ohio):

*The Court finds that the Class Notice and the notice methodology implemented pursuant to this Settlement Agreement (as evidenced by the Declaration of Settlement Administrator Keough, JND Legal Administration): (1) constituted the best practicable notice; (2) constituted notice that was reasonably calculated, under the circumstances, to apprise Class Members of the terms of the Proposed Settlement, the available relief, the release of claims, their right to object or exclude themselves from the proposed Settlement, and their right to appear at the fairness hearing; (3) were reasonable and constitute due, adequate, and sufficient notice to all persons entitled to receive notice; and (4) met all applicable requirements of the Federal Rules of Civil Procedure, the Class Action Fairness Act, the United States Constitution (including the Due Process Clause), the Rules of the Court, and any other applicable law.*

## 41.  Judge Timothy J. Corrigan

***Finerman v. Marriott Ownership Resorts, Inc.,*** (August 15, 2018)
No. 14-cv-1154-J-32MCR (M.D. Fla.):

*Notice was given by Mail in accordance with the Settlement Agreement and the Preliminary Approval Order. The Class Notice, Claim Form, Preliminary Approval Order, Petition for Attorney's Fees, and Settlement Agreement (without exhibits) were also posted on the Settlement Website at www.cruisefaresettlement.com. These forms of class notice fully complied with the requirements of Rule 23(c)(2)(B) and due process, constituted the best notice practicable under the circumstances, and were due and sufficient notice to all persons entitled to notice of the settlement of this lawsuit.*

## 42.  Honorable Kenneth J. Medel

***Huntzinger v. Suunto Oy,*** (August 10, 2018)

No. 37-2018-27159 (CU) (BT) (CTL) (Cal. Super. Ct.):

*The Court finds that the notice to the Class Members regarding settlement of this Action, including the content of the notices and method of dissemination to the Class Members in accordance with the terms of Settlement Agreement, constitute the best notice practicable under the circumstances and constitute valid, due and sufficient notice to all Class Members, complying fully with the requirements of California Code of Civil Procedure § 382, California Civil Code § 1781, California Rules of Court Rules 3.766 and 3.769(f), the California and United States Constitutions, and any other applicable law.*

## 43.  Honorable Thomas M. Durkin

***In re Broiler Chicken Antitrust Litig.,*** (June 22, 2018)

No. 16-cv-8637 (N.D. Ill.):

*The proposed notice plan set forth in the Motion and the supporting declarations comply with Rule 23(c)(2)(B) and due process as it constitutes the best notice that is practicable under the circumstances, including individual notice vial mail and email to all members who can be identified through reasonable effort. The direct mail and email notice will be supported by reasonable publication notice to reach class members who could not be individually identified.*

## 44.  Honorable Stanley R. Chesler

***Muir v. Early Warning Services, LLC,*** (June 13, 2018)

No. 16-cv-00521 (D.N.J.):

*Notice to the Class required by Rule 23(e) of the Federal Rules of Civil Procedure has been provided in accordance with the Court's Preliminary Approval Order, and such notice has been given in an adequate and sufficient manner; constitutes the best notice practicable under the circumstances; and satisfies Rule 23(e) and due process. The Court is informed the Mail Notice was sent by first class mail to*

*approximately 211 Settlement Class Members by JND Legal Administration, the third-party Settlement Administrator.*

## 45.  Honorable Lewis A. Kaplan

***Cline v. TouchTunes Music Corp.,*** (May 24, 2018)
No. 14-CIV-4744 (LAK) (S.D.N.Y.):

*The Court finds that the Notice Program has been implemented by the Claims Administrator and Parties, and that such Notice Program, including of the utilized Notice Form, constitutes the best notice practicable under the circumstances and fully satisfied due process, the requirements of Rule 23 of the Federal Rules of Civil Procedure, and all other applicable laws.*

## 46.  Judge Janet T. Neff

***Sullivan v. Wenner Media LLC,*** (May 22, 2018)
No. 16–cv–00960–JTN–ESC (W.D. Mich.):

*The Settlement Administrator completed the delivery of Class Notice according to the terms of the Agreement. The Class Notice given by the Settlement Administrator to the Settlement Class, which set forth the principal terms of the Agreement and other matters, was the best practicable notice under the circumstances.*

## 47.  Judge Maren E. Nelson

***Djoric v. Justin Brands, Inc.,*** (March 12, 2018)
No. BC574927 (Cal. Super. Ct.):

*Based on the number of claims submitted the Court concludes that the notice was adequate and the best available means under the circumstances.*

### 48.  Judge Federico A. Moreno

***Brna v. Isle of Capri Casinos and Interblock USA, LLC,*** (February 20, 2018)
No. 17-cv-60144 (FAM) (S.D. Fla.):

*Class Counsel has filed with the Court a Declaration from JND Legal Administration, the independent third-party Settlement Administrator for the Settlement, establishing the Settlement Notice and Claim Form were delivered by email and mail to the class members on November 27, 2017 and December 4, 2017, the Settlement website was established on November 27, 2017, and Claim Forms were also available electronically on the website. Adequate notice was given to the Settlement Class Members in compliance with the Settlement Agreement and the preliminary approval order.*

### 49.  Honorable Percy Anderson

***Nozzi v. Housing Authority for the City of Los Angeles,*** (February 15, 2018)
No. CV 07-380 PA (FFMx) (C.D. Cal.):

*The notice given in this case was reasonably calculated to reach the Damages Class… Finally, a notice was published in the L.A. Times for three consecutive weeks on August 18, 2017, August 25, 2017, and September 1, 2017, and a 30-day internet advertising campaign was launched on Facebook, Instagram, and Twitter to inform Class Members about the settlement. (Keough Decl. ¶ 12.) The Court therefore concludes that the notice procedures satisfied the requirements of Due Process and Federal Rule of Civil Procedure 23(e).*

### 50.  Judge Ann D. Montgomery

***In re Wholesale Grocery Prod. Antitrust Litig.,*** (November 16, 2017)
No. 9-md-2090 (ADM) (TNL) (D. Minn.):

*Notice provider and claims administrator JND Legal Administration LLC provided proof that mailing conformed to the Preliminary Approval Order in a declaration filed contemporaneously with the Motion for Final Approval of Class Settlement. This notice program fully complied with Fed. R. Civ. P. 23, satisfied the requirements*

*of due process, is the best notice practicable under the circumstances, and constituted due and adequate notice to the Class of the Settlement, Final Approval Hearing and other matters referred to in the Notice.*

## 51. Honorable Robert S. Lasnik

***Gragg v. Orange Cab Co.,*** (October 5, 2017)
No. C12-0576RSL (W.D. Wash.):

*The Settlement Administrator completed the delivery of Class Notice according to the terms of the Agreement. The Class Notice given by the Settlement Administrator to the Settlement Class, which set forth the principal terms of the Agreement and other matters, was the best practicable notice under the circumstances...The Class Notice given to the Settlement Class Members satisfied the requirements of Federal Rule of Civil Procedure 23 and the requirements of constitutional due process.*

## 52. Honorable Philip S. Gutierrez

***Harris v. Amgen, Inc.,*** (April 4, 2017)
No. CV 07-5442 PSG (PLAx) (C.D. Cal.):

*Class counsel retained JND to provide notice and administration services for this litigation. See generally Keough Decl. JND mailed 13,344 class action notices to class members by first-class mail on January 14, 2017. See Keough Decl., ¶ 6. If the mailings returned undeliverable, JND used skip tracing to identify the most updated addresses for class members. Id. To date, JND reports than only 179 notices are undeliverable. Id. ¶ 7. Moreover, as of March 21, 2017, the deadline for filing objections, JND had received no objections to the final settlement agreement. The lack of objections is an indicator that class members find the settlement to be fair, reasonable, and adequate.*

# IV. CASE EXPERIENCE



Ms. Keough has played an important role in hundreds of matters throughout her career. A partial listing of her notice and claims administration case work is provided below.

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| *Adair v. Michigan Pain Specialist, PLLC* | 14-28156-NO | Mich. Cir. |
| *Adkins v. EQT Prod. Co.* | 10-cv-00037-JPJ-PMS | W.D. Va. |
| *Adzhikosyan v. Denver Mgmt.* | BC648100 | Cal. Super. Ct. |
| *Ahmed v. HSBC Bank USA, NA* | 15-cv-2057-FMO-SPx | N.D. Ill. |
| *Allagas v. BP Solar Int'l, Inc.* | 14-cv-00560 (SI) | N.D. Cal. |
| *Amador v. Baca* | 10-cv-1649 | C.D. Cal. |
| *Amin v. Mercedes-Benz USA, LLC* | 17-cv-01701-AT | N.D. Ga. |
| *Andreas-Moses v. Hartford Fire Ins. Co.* | 17-cv-2019-Orl-37KRS | M.D. Fla. |
| *Anger v. Accretive Health* | 14-cv-12864 | E.D. Mich. |
| *Arthur v. Sallie Mae, Inc.* | 10-cv-00198-JLR | W.D. Wash. |
| *Atkins v. Nat'l. Gen. Ins. Co.* | 16-2-04728-4 | Wash. Super. Ct. |
| *Atl. Ambulance Corp. v. Cullum & Hitti* | MRS-L-264-12 | N.J. Super. Ct. |
| *Backer Law Firm, LLC v. Costco Wholesale Corp.* | 15-cv-327 (SRB) | W.D. Mo. |
| *Baker v. Equity Residential Mgmt., LLC* | 18-cv-11175 | D. Mass. |
| *Bankhead v. First Advantage Background Services Corp.* | 17-cv-02910-LMM-CCB | N.D. Ga. |
| *Barclays Dark Pool Sec. Litig.* | 14-cv-5797 (VM) | S.D.N.Y. |
| *Barrett v. Nestle USA, Inc.* | 18-cv-167-DPM | E.D. Ark. |
| *Belanger v. RoundPoint Mortgage Servicing* | 17-cv-23307-MGC | S.D. Fla. |
| *Beltran v. InterExchange, Inc.* | 14-cv-3074 | D. Colo. |
| *Bergman v. Thelen LLP* | 08-cv-05322-LB | N.D. Cal. |
| *Bey v. Encore Health Res.* | 19-cv-00060 | E.D. Tex. |
| *BlackRock Core Bond Portfolio v. Wells Fargo* | 65687/2016 | N.Y. Super. Ct. |
| *Blasi v. United Debt Serv., LLC* | 14-cv-0083 | S.D. Ohio |
| *Blocher v. Landry's Inc.* | 14-cv-03213-MSS-JSS | M.D. Fla. |
| *Bobo v. LM Wind Power Blades (ND), Inc.* | 18-cv-230-DPM | E.D. Ark. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| Bollenbach Enters. Ltd. P'ship. v. Oklahoma Energy Acquisitions | 17-cv-134 | W.D. Okla. |
| Boskie v. Backgroundchecks.com | 2019CP3200824 | S.C. C.P. |
| Boyd v. RREM Inc., d/b/a Winston | 2019-CH-02321 | Ill. Cir. Ct. |
| Bradley v. Honecker Cowling LLP | 18-cv-01929-CL | D. Or. |
| Briones v. Patelco Credit Union | RG 16805680 | Cal. Super. Ct. |
| Brna v. Isle of Capri Casinos | 17-cv-60144 (FAM) | S.D. Fla. |
| Broussard v. Stein Mart, Inc. | 16-cv-03247 | S.D. Tex. |
| Browning v. Yahoo! | C04-01463 HRL | N.D. Cal. |
| Call v. Shutterstock | SCV-262841 | Cal. Super. Ct. |
| Calvert v. Xcel Energy | 17-cv-02458-RBJ | D. Colo. |
| Cambridge v. Sheetz, Inc. | 17-cv-01649-JEJ | M.D. Pa. |
| Careathers v. Red Bull North America, Inc. | 13-cv-369 (KPF) | S.D.N.Y. |
| Carmack v. Amaya Inc. | 16-cv-1884 | D.N.J. |
| Carson v. Cheers | 17-2-29644-9 | Wash. Super. Ct. |
| Castro v. Cont'l Airlines, Inc. | 14-cv-00169 | C.D. Cal. |
| Cecil v. BP America Prod. Co. | 16-cv-410 (RAW) | E.D. Okla. |
| Chamblee v. TerraForm Power, Inc. | 16 MD 2742 (PKC)(AJP) | S.D.N.Y. |
| Chanve c. E.I. Du Pont De Nemours | 16-cv-00376-MAC-ZJH | E.D. Tex. |
| Chavez v. Our Lady of Lourdes Hosp. | 12-2-50575-9 | Wash. Super. Ct. |
| Chester v. TJX Cos. | 15-cv-1437 (ODW) (DTB) | C.D. Cal. |
| Chieftain Royalty Co. v. Marathon Oil Co. | 17-cv-334 | E.D. Okla. |
| Chieftain Royalty Co. v. Newfield Exploration Mid-Continent Inc. | 17-cv-00336-KEW | E.D. Okla. |
| Chieftain Royalty Co. v. XTO Energy, Inc. | 11-cv-00029-KEW | E.D. Okla. |
| City of Los Angeles v. Bankrate, Inc. | 14-cv-81323 (DMM) | S.D. Fla. |
| Cline v Sunoco, Inc. | 17-cv-313-JAG | E.D. Okla. |
| Cline v. TouchTunes Music Corp. | 14-CIV-4744 (LAK) | S.D.N.Y. |
| Cobell v. Salazar | 96-cv-1285 (TFH) | D.D.C. |
| Common Ground Healthcare Coop. v. United States | 17-877C | F.C.C. |
| Connolly v. Umpqua Bank | C15-517 (TSZ) | W.D. Wash. |
| Corona v. Sony Pictures Entm't Inc. | 14–CV–09600–RGK–E | C.D. Cal. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| *Courtney v. Avid Tech., Inc.* | 13-cv-10686-WGY | D. Mass. |
| *DASA Inv., Inc. v. EnerVest Operating LLC* | 18-cv-00083-SPS | E.D. Okla. |
| *Davis v. Carfax, Inc.* | CJ-04-1316L | D. Okla. |
| *Dearth v. Hartford Fire Ins. Co.* | 16-cv-1603-Orl-37LRH | M.D. Fla. |
| *DeFrees v. Kirkland and U.S. Aerospace, Inc.* | CV 11-04574 | C.D. Cal. |
| *del Toro Lopez v. Uber Techs., Inc.* | 14-cv-6255 | N.D. Cal. |
| *Delgado v. America's Auto Auction* | 2019-CH-04164 | Ill. Cir. Ct. |
| *Delkener v. Cottage Health Sys.* | 30-2016-847934 (CU) (NP) (CXC) | Cal. Super. Ct. |
| *DeMarco v. AvalonBay Communities, Inc.* | 15-cv-00628-JLL-JAD | D.N.J. |
| *De Santiago v. California Respite Care, Inc.* | CIVDS1807688 | Cal. Super. Ct. |
| *Diaz v. Lost Dog Pizza, LLC* | 17-cv-02228-WJM-NYW | D. Colo. |
| *Diel v Salal Credit Union* | 19-2-10266-7 KNT | Wash. Super. Ct. |
| *Dixon v. Grunt Style, LLC* | 2019 CH 01981 | Ill. Cir. Ct. |
| *Dixon v. Zabka* | 11-cv-982 | D. Conn. |
| *Djoric v. Justin Brands, Inc.* | BC574927 | Cal. Super. Ct. |
| *Doan v. CORT Furniture Rental Corp.* | 30-2017-00904345-CU-BT-CXC | Cal. Super. Ct. |
| *Doan v. State Farm Gen. Ins. Co.* | 1-08-cv-129264 | Cal. Super. Ct. |
| *Donnenfield v. Petro, Inc.* | 17-cv-02310 | E.D.N.Y. |
| *Dougherty v. Barrett Bus. Serv., Inc.* | 17-2-05619-1 | Wash. Super. Ct. |
| *Doughtery v. QuickSIUS, LLC* | 15-cv-06432-JHS | E.D. Pa. |
| *Dover v. British Airways, PLC (UK)* | 12-cv-5567 | E.D.N.Y. |
| *Dozier v. Club Ventures Invs. LLC* | 17BK10060 | S.D.N.Y. |
| *Duran v. DirecTV* | 4850 (1-14-CV-274709) | Cal. Super. Ct. |
| *Dwyer v. Snap Fitness, Inc.* | 17-cv-00455-MRB | S.D. Ohio |
| *Easley v. The Reserves Network, Inc.* | 16-cv-544 | N.D. Ohio |
| *Edwards v. Arkansas Cancer Clinic, P.A.* | 35CV-18-1171 | Ark. Cir. Ct. |
| *Edwards v. Hearst Commc'ns., Inc.* | 15-cv-9279 (AT) (JLC) | S.D.N.Y. |
| *EEOC v. Patterson-UTI Drilling Co. LLC* | 5-cv-600 (WYD) (CBS) | D. Colo. |
| *Erica P. John Fund, Inc. v. Halliburton Co.* | 02-cv-1152 | N.D. Tex. |
| *Espenshade v. Wilcox & Wilcox* | BC647489 | Cal. Super. Ct. |
| *Essex v. The Children's Place, Inc.* | 15-cv-5621 | D.N.J. |
| *Expedia Hotel Taxes & Fees Litig.* | 05-2-02060-1 (SEA) | Wash. Super. Ct. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| *Family Med. Pharmacy LLC v. Impax Labs., Inc.* | 17-cv-53 | S.D. Ala. |
| *Family Med. Pharmacy LLC v. Trxade Group Inc.* | 15-cv-00590-KD-B | S.D. Ala. |
| *Farmer v. Bank of Am.* | 11-cv-00935-OLG | W.D. Tex. |
| *Felix v. WM. Bolthouse Farms, Inc.* | 19-cv-00312-AWI-JLT | E.D. Cal. |
| *Fielder v. Mechanics Bank* | BC721391 | Cal. Super. Ct. |
| *Finerman v. Marriott Ownership Resorts, Inc.* | 14-cv-1154-J-32MCR | M.D. Fla. |
| *Fitzgerald v. Lime Rock Res.* | CJ-2017-31 | Okla. Dist. Ct. |
| *Folweiler v. Am. Family Ins. Co.* | 16-2-16112-0 | Wash. Super. Ct. |
| *Fosbrink v. Area Wide Protective, Inc.* | 17-cv-1154-T-30CPT | M.D. Fla. |
| *Fresno County Employees Ret. Assoc. v. comScore Inc.* | 16-cv-1820 (JGK) | S.D.N.Y. |
| *Frost v. LG Elec. MobileComm U.S.A., Inc.* | 37-2012-00098755-CU-PL-CTL | Cal. Super. Ct. |
| *FTC v. Consumerinfo.com* | SACV05-801 AHS (MLGx) | C.D. Cal. |
| *Gazda v. Serve U Brands, Inc.* | E2019009233 | N.Y. Super. Ct. |
| *Gehrich v. Howe* | 37-2018-00041295-CU-SL-CTL | N.D. Ga. |
| *Gervasio v. Wawa, Inc.* | 17-cv-245 (PGS) (DEA) | D.N.J. |
| *Gonzalez-Tzita v. City of Los Angeles* | 16-cv-00194 | C.D. Cal. |
| *Gormley v. magicJack Vocaltec Ltd.* | 16-cv-1869 | S.D.N.Y. |
| *Gragg v. Orange Cab Co.* | C12-0576RSL | W.D. Wash. |
| *Granados v. County of Los Angeles* | BC361470 | Cal. Super., Ct. |
| *Grant v. Ballard Mgmt., Inc.* | 18-2-54890-0 SEA | Wash. Super. Ct. |
| *Hahn v. Hanil Dev., Inc.* | BC468669 | Cal. Super. Ct. |
| *Hall v. Dominion Energy* | 18-cv-00321-JAG | E.D. Va. |
| *Halperin v. YouFit Health Clubs* | 18-cv-61722-WPD | S.D. Fla. |
| *Hanks v. Lincoln Life & Annuity Co. of New York* | 16-cv-6399 PKC | S.D.N.Y. |
| *Harris v. Amgen, Inc.* | CV 07-5442 PSG (PLAx) | C.D. Cal. |
| *Harris v. Chevron U.S.A., Inc.* | 15-cv-00094 | W.D. Okla. |
| *Harrison v. Strategic Experiential Group* | RG16 807555 | Cal. Super. Ct. |
| *Hayes v. Saddle Creek Corp.* | 19-cv-01143-SMY | S.D. Ill. |
| *Health Republic Ins. Co. v. United States* | 16-259C | F.C.C. |
| *Hernandez v. Experian Info. Solutions, Inc.* | 05-cv-1070 (DOC) (MLGx) | C.D. Cal. |
| *Hernandez v. Great Western Pacific Inc.* | 18-2-08788-1 SEA | Wash. Super. Ct. |

| CASE NAME | CASE NUMBER | LOCATION |
| --- | --- | --- |
| *Hernandez v. United States Cold Storage of California, Inc.* | S-1500-CV-282297-SPC | Cal. Super. Ct. |
| *Hines v. CBS Television Studios* | 17-cv-7882 (PGG) | S.D.N.Y. |
| *Holt v. Murphy Oil USA, Inc.* | 17-cv-911 | N.D. Fla. |
| *Hopwood v. Nuance Commc'n, Inc.* | 4:13-cv-02132-YGR | N.D. Cal. |
| *Howard v. Southwest Gas Corp.* | 18-cv-01035-JAD-VCF | D. Nev. |
| *Howell v. Checkr, Inc.* | 17-cv-4305 | N.D. Cal. |
| *Huntzinger v. Suunto Oy* | 37-2018-27159 (CU) (BT) (CTL) | Cal. Super. Ct. |
| *Ilano v. Wells Fargo* | 30-2019-0199146-CU-OE-CXC | Cal. Super. Ct. |
| *In re Air Cargo Shipping Servs. Antitrust Litig.* | 06-md-1775 (JG) (VVP) | E.D.N.Y. |
| *In re Akorn, Inc. Sec. Litig.* | 15-c-1944 | N.D. Ill. |
| *In re Am. Express Fin. Advisors Sec. Litig.* | 04 Civ. 1773 (DAB) | S.D.N.Y. |
| *In re AMR Corp. (American Airlines Bankr.)* | 1-15463 (SHL) | S.D.N.Y. |
| *In re Auction Houses Antitrust Litig.* | 00-648 (LAK) | S.D.N.Y. |
| *In re AudioEye, Inc. Sec. Litig.* | 15-cv-163 (DCB) | D. Ariz. |
| *In re Banner Health Data Breach Litig.* | 16-cv-02696 | D. Ariz. |
| *In re Broiler Chicken Antitrust Litig.* | 16-cv-08637 | N.D. Ill. |
| *In re Classmates.com* | C09-45RAJ | W.D. Wash. |
| *In re ConAgra Foods Inc.* | 11-cv-05379-CJC-AGR | C.D. Cal. |
| *In re CRM Holdings, Ltd. Sec. Litig.* | 10-cv-00975-RPP | S.D.N.Y. |
| *In re Equifax Inc. Customer Data Sec. Breach Litig.* | 17-md-2800-TWT | N.D. Ga. |
| *In re General Motors LLC Ignition Switch Litig.* | 2543 (MDL) | S.D.N.Y. |
| *In re Global Tel*Link Corp. Litig.* | 14-CV-5275 | W.D. Ark. |
| *In re GoPro, Inc. Shareholder Litig.* | CIV537077 | Cal. Super. Ct. |
| *In re Guess Outlet Store Pricing* | JCCP No. 4833 | Cal. Super. Ct. |
| *In re Initial Pub. Offering Sec. Litig. (IPO Sec. Litig.)* | No. 21-MC-92 | S.D.N.Y. |
| *In re Intuit Data Litig.* | 15-CV-1778-EJD | N.D. Cal. |
| *In re J.P. Morgan Stable Value Fund ERISA Litig.* | 12-cv-02548-VSB | S.D.N.Y. |
| *In re Legacy Reserves LP Preferred Unitholder Litig.* | 2018-225 (JTL) | Del. Ch. |
| *In re LIBOR-Based Fin. Instruments Antitrust Litig.* | 11-md-2262 (NRB) | S.D.N.Y. |
| *In re Mercedes-Benz Emissions Litig.* | 16-cv-881 (KM) (ESK) | D.N.J. |
| *In re MyFord Touch Consumer Litig.* | 13-cv-3072 (EMC) | N.D. Cal. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| *In re Navistar MaxxForce Engines Mktg., Sales Practices and Products* | 14-cv-10318 | N.D. Ill. |
| *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010* | 2179 (MDL) | E.D. La. |
| *In re PHH Lender Placed Ins. Litig.* | 12-cv-1117 (NLH) (KMW) | D.N.J. |
| *In re Pokémon Go Nuisance Litig.* | 16-cv-04300 | N.D. Cal. |
| *In re Polyurethane Foam Antitrust Litig.* | 10-md-196 (JZ) | N.D. Ohio |
| *In re Pre-Filled Propane Tank Antitrust Litig.* | 14-md-02567 | W.D. Mo. |
| *In re Processed Egg Prod. Antitrust Litig.* | 08-MD-02002 | E.D. Pa. |
| *In re Resistors Antitrust Litig.* | 15-cv-03820-JD | N.D. Cal. |
| *In re Resonant Inc. Sec. Litig.* | 15-cv-1970 (SJO) (MRW) | C.D. Cal. |
| *In re Sheridan Holding Co. I, LLC* | 20-31884 (DRJ) | Bankr. S.D. Tex. |
| *In re Stericycle, Inc. Sec. Litig.* | 16-cv-07145 | N.D. Ill. |
| *In re Stryker Rejuvenate and ABG II Hip Implant Products Liab. Litig.* | 13-md-2441 | D. Minn. |
| *In re SunTrust Banks, Inc. ERISA Litig.* | 08-cv-03384-RWS | N.D. Ga. |
| *In re Tenet Healthcare Corp. Sec.* | CV-02-8462-RSWL (Rzx) | C.D. Cal. |
| *In re The Engle Trust Fund* | 94-08273 CA 22 | Fla. 11th Cir. Ct. |
| *In re Ubiquiti Networks Sec. Litig.* | 18-cv-01620 (VM) | S.D.N.Y. |
| *In re Unilife Corp. Sec. Litig.* | 16-cv-3976 (RA) | S.D.N.Y. |
| *In re Washington Mut. Inc. Sec. Litig.* | 8-md-1919 (MJP) | W.D. Wash. |
| *In re Webloyalty.com, Inc. Mktg. & Sales Practices Litig.* | 06-11620-JLT | D. Mass. |
| *In re Wholesale Grocery Prod. Antitrust Litig.* | 9-md-2090 (ADM) (TNL) | D. Minn. |
| *In re Williams Sec. Litig.* | 02-CV-72-SPF (FHM) | N.D. Okla. |
| *In re Yahoo! Inc. Sec. Litig.* | 17-cv-373 | N.D. Cal. |
| *Ivery v. RMH Illinois, LLC and RMH Franchise Holdings, Inc.* | 17-CIV-1619 | N.D. Ill. |
| *Jerome v. Elan 99, LLC* | 2018-02263 | Tx. Dist. Ct. |
| *Jeter v. Bullseye Energy, Inc.* | 12-cv-411 (TCK) (PJC) | N.D. Okla. |
| *Johnson v. MGM Holdings, Inc.* | 17-cv-00541 | W.D. Wash. |
| *Jones v. Encore Health Res.* | 19-cv-03298 | S.D. Tex. |
| *Jordan v. Things Remembered, Inc.* | 114CV272045 | Cal. Super. Ct. |
| *Kellgren v. Petco Animal Supplies, Inc.* | 13-cv-644 (L) (KSC) | S.D. Cal. |

| CASE NAME | CASE NUMBER | LOCATION |
| --- | --- | --- |
| Kent v. R.L. Vallee, Inc. | 617-6-15 | D. Vt. |
| Kissel v. Code 42 Software Inc. | 15-1936 (JLS) (KES) | C.D. Cal. |
| Komesar v. City of Pasadena | BC 677632 | Cal. Super. Ct. |
| Konecky v Allstate | CV-17-10-M-DWM | D. Mont. |
| Kramer v. DuPont, USA | 17L2 | Ill. Cir. Ct. |
| Krueger v. Ameriprise Fin., Inc. | 11-cv-02781 (SRN/JSM) | D. Minn. |
| Langan v. Johnson & Johnson Consumer Co. | 13-cv-01471 | D. Conn. |
| Lee v. Hertz Corp., Dollar Thrifty Auto. Grp. Inc. | CGC-15-547520 | Cal. Super. Ct. |
| Linderman v. City of Los Angeles | BC650785 | Cal. Super. Ct. |
| Lindsay v. Cutter Wireline Serv., Inc. | 7-cv-01445 (PAB) (KLM) | D. Colo. |
| Linneman v. Vita-Mix Corp. | 15-cv-748 | S.D. Ohio |
| Lion Biotechnologies Sec. Litig. | 17-cv-02086-SI | N.D. Cal. |
| Liotta v. Wolford Boutiques, LLC | 16-cv-4634 | N.D. Ga. |
| Lippert v. Baldwin | 10-cv-4603 | N.D. Ill. |
| Lloyd v. CVB Fin. Corp. | 10-cv-6256 (CAS) | C.D. Cal. |
| Loblaw Card Program | Remediation Program | |
| Mabrey v. Autovest | CGC-18-566617 | Cal. Super. Ct. |
| Machado v. Endurance Int'l Grp. Holdings Inc. | 15-cv-11775-GAO | D. Mass. |
| Malin v. Ambry Gentics Corp. | 30-2018-00994841-CU-SL-CXC | Cal. Super. Ct. |
| Martinez v. Rial de Minas, Inc. | 16-cv-01947 | D. Colo. |
| McClellan v. Chase Home Fin. | 12-cv-01331-JGB-JEM | C.D. Cal. |
| McClintock v. Continuum Producer Serv., LLC | 17-cv-00259-JAG | E.D. Okla. |
| McFarland v. Swedish Med. Ctr. | 18-2-02948-1 SEA | Wash. Super. Ct. |
| McGann v. Schnuck Markets Inc. | 1322-CC00800 | Mo. Cir. Ct. |
| McKibben v. McMahon | 14-2171 (JGB) (SP) | C.D. Cal. |
| McKnight Realty Co. v. Bravo Arkoma, LLC | 17-CIV-308 (KEW) | E.D. Okla. |
| McNeal v. AccentCare, Inc. | 4:15cv03304 | N.D. Cal. |
| McNeill v. Citation Oil & Gas Corp. | 17-CIV-121 (KEW) | E.D. Okla. |
| McWilliams v. City of Long Beach | BC361469 | Cal. Super. Ct. |
| Mild v. PPG Indus., Inc. | 18-cv-04231 | C.D. Cal. |
| Millien v. Madison Square Garden | 17-cv-04000 | S.D.N.Y. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| *Milstead v. Robert Fiance Beauty Sch., Inc.* | CAM-L-328-16 | N.J. Super. Ct. |
| *Moeller v. Advance Magazine Publishers, Inc.* | 15-cv-05671 (NRB) | S.D.N.Y. |
| *Mohamed v. SkyHop Global LLC* | 18-2-54565-0-KNT | Wash. Super. Ct. |
| *Mojica v. Securus Techs., Inc.* | 14-cv-5258 | W.D. Ark. |
| *Molnar v. 1-800-Flowers Retail, Inc.* | BC 382828 | Cal. Super. Ct. |
| *Monteleone v. Nutro Co.* | 14-cv-00801-ES-JAD | D.N.J. |
| *Moodie v. Maxim HealthCare Servs.* | 14-cv-03471-FMO-AS | C.D. Cal. |
| *Morel v. Lions Gate Entm't Inc.* | 16-cv-1407 (JFC) | S.D.N.Y. |
| *Moss v. United Airlines* | 16-cv-08496 | N.D. Ill. |
| *Muir v. Early Warning Services, LLC* | 16-cv-00521 | D.N.J. |
| *Mylan Pharm., Inc. v. Warner Chilcott Pub. Ltd.* | 12-3824 | E.D. Pa. |
| *Nasseri v. Cytosport, Inc.* | BC439181 | Cal. Super. Ct. |
| *Nesbitt v. Postmates, Inc.* | CGC-15-547146 | Cal. Super. Ct. |
| *New Orleans Tax Assessor Project* | Tax Assessment Program | |
| *New York v. Steven Croman* | 450545/2016 | N.Y. Super. Ct. |
| *NMPA Late Fee Program Groups I-IVA* | Remediation Program | CRB |
| *Noland-Moore v. City of Cleveland* | 18-cv-2730 | N.D. Ohio |
| *Nozzi v. Housing Authority of the City of Los Angeles* | CV 07-0380 PA (FFMx) | C.D. Cal. |
| *Nwabueza v. AT&T* | C 09-01529 SI | N.D. Cal. |
| *Nwauzor v. GEO Group, Inc.* | 17-cv-05769 | W.D. Wash. |
| *Ortega v. Borton & Sons, Inc.* | 17-2-03005-39 | Wash. Super. Ct. |
| *O'Donnell v. Fin. American Life Ins. Co.* | 14-cv-01071 | S.D. Ohio |
| *Ortez v. United Parcel Serv., Inc.* | 17-cv-01202 (CMA) (SKC) | D. Colo. |
| *Paggos v. Resonant, Inc.* | 15-cv-01970-SJO | C.D. Cal. |
| *Palazzolo v. Fiat Chrysler Auto. NV* | 16-cv-12803 | E.D. Mich. |
| *Palmateer v. Les Schwab* | 17CV22189 | Or. Cir. Ct. |
| *Parker v. Time Warner Entm't Co.* | 239 F.R.D. 318 | E.D.N.Y. |
| *Parker v. Universal Pictures* | 16-cv-1193-CEM-DCI | M.D. Fla. |
| *Parmelee v. Santander Consumer USA Holdings Inc.* | 16-cv-783-K | N.D. Tex. |
| *Pauley v. CF Ent.* | 13-CV-08011-RGK-CW | C.D. Cal. |
| *Pemberton v. Nationstar Mortgage LLC* | 14-cv-1024-BAS (MSB) | S.D. Cal. |
| *Perez v. DIRECTV* | 8:16-cv-01440-JLS-DFM | C.D. Cal. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| *Petersen v. Costco Wholesale Co.* | 13-cv-01292-DOC-JCG | C.D. Cal. |
| *Pickett v. Simos Insourcing Solutions Corp.* | 1:17-cv-01013 | N.D. Ill. |
| *Pierce v Anthem Ins. Cos.* | 15-cv-00562-TWP-TAB | S. D. Ind. |
| *Podawiltz v. Swisher Int'l, Inc.* | 16CV27621 | Or. Cir. Ct. |
| *Press v. J. Crew Group, Inc.* | 56-2018-512503 (CU) (BT) (VTA) | Cal. Super. Ct. |
| *Purcell v. United Propane Gas, Inc.* | 14-CI-729 | Ky. 2nd Cir. |
| *Ralph v. Get Fresh Produce, Inc.* | 2019-CH-02324 | Ill. Cir. Ct. |
| *Ramos v. Hopele of Fort Lauderdale, LLC* | 17-cv-62100 | S.D. Fla. |
| *Reirdon v. Cimarex Energy Co.* | 16-CIV-113 (KEW) | E.D. Okla. |
| *Rhea v. Apache Corp.* | 14-cv-00433-JH | E.D. Okla. |
| *Rice v. Insync* | 30-2014-00701147-CU-NP-CJC | Cal. Super. Ct. |
| *Rice-Redding v. Nationwide Mut. Ins. Co.* | 18-cv-01203 | N.D. Ga. |
| *Rich v. EOS Fitness Brands, LLC* | RIC1508918 | Cal. Super. Ct. |
| *Rollo v. Universal Prop. & Cas. Ins.* | 2018-027720-CA-01 | Fla. Cir. Ct. |
| *Roman v. Antelope Valley Newspapers, Inc.* | BC382639 | Cal. Super. Ct. |
| *Rotatori v. TGI Fridays* | 14-0081-B | Mass. Super. Ct. |
| *Roth v. Bellevue Club* | 19-2-07780-8 | Wash. Super. Ct. |
| *Routh v. SEIU Healthcare 775NW* | 14-cv-00200 | W.D. Wash. |
| *Rozeboom v. Dietz & Watson* | 17-cv-01266-RAJ | W.D. Wash. |
| *Ruppel v. Consumers Union of United States, Inc.* | 16-cv-2444 (KMK) | S.D.N.Y. |
| *Saccoccio v. JP Morgan Chase* | 13-cv-21107 | S.D. Fla. |
| *San Antonio Fire & Police Pension Fund v. Dole Food Co.* | 15-cv-1140 (LPS) | E.D. Del. |
| *Sanders v. Global Research Acquisition, LLC* | 18-cv-00555 | M.D. Fla. |
| *Sanders v The CJS Solutions Group, LLC* | 17-cv-03809 | S.D.N.Y. |
| *Schlesinger v. Ticketmaster* | BC304565 | Cal. Super. Ct. |
| *Schourup v. Private Label Nutraceuticals, LLC* | 2015cv01026 | C.D. Cal. |
| *Schwartz v. Intimacy in New York, LLC* | 13-cv-5735 (PGG) | S.D.N.Y. |
| *Schwartz v. Opus Bank* | 16-cv-7991 (AB) (JPR) | C.D. Cal. |
| *SEB Inv. Mgmt. AB v. Endo Int'l PLC* | 17-cv-3711-TJS | E.D. Pa. |
| *Seegert v. P.F. Chang's China Bistro* | 37-2017-00016131-CU-MC-CTL | Cal. Super. Ct. |
| *Soderstrom v. MSP Crossroads Apartments LLC* | 16-cv-233 (ADM) (KMM) | D. Minn. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| Solano v. Amazon Studios LLC | 17-cv-01587 (LGS) | S.D.N.Y. |
| Sonner v. Schwabe North America, Inc. | 15-cv-01358 VAP (SPx) | C.D. Cal. |
| Soto v. Diakon Logistics (Delaware), Inc. | 08-cv-33-L(WMC) | S.D. Cal. |
| Speed v. JMA Energy Co., LLC | CJ-2016-59 | Okla. Dist. Ct. |
| Stanley v. Capri Training Ctr. | ESX-L-1182-16 | N.J. Super. Ct. |
| Steele v. PayPal, Inc. | 05-CV-01720 (ILG) (VVP) | E.D.N.Y. |
| Stewart v. Early Warning Serv., LLC | 18-cv-3277 | D.N.J. |
| Stillman v. Clermont York Assocs. LLC | 603557/09E | N.Y. Super. Ct. |
| Stretch v. Montana | DV-04-713 (A) | Mont. 11th Dist. Ct. |
| Strickland v. Carrington Mortgage Services, LLC | 16-cv-25237 | S.D. Fla. |
| Strougo v. Lannett Co. | 18-cv-3635 | E.D. Pa. |
| Stuart v. State Farm Fire & Cas. Co. | 14-cv-04001 | W.D. Ark. |
| Sudunagunta v. NantKwest, Inc. | 16-cv-01947-MWF-JEM | C.D. Cal. |
| Sullivan v Wenner Media LLC | 16–cv–00960–JTN–ESC | W.D. Mich. |
| Swinton v. SquareTrade, Inc. | 18-CV-00144-SMR-SBJ | S.D. Iowa |
| Szafarz v. United Parcel Serv., Inc. | SUCV2016-2094-BLS2 | Mass. Super. Ct. |
| Terrell v. Costco Wholesale Corp. | 16-2-19140-1-SEA | Wash. Super. Ct. |
| Timberlake v. Fusione, Inc. | BC 616783 | Cal. Super. Ct. |
| Tkachyk v. Traveler's Ins. | 16-28-m (DLC) | D. Mont. |
| T-Mobile Remediation Program | Remediation Program | |
| Tolliver v. Avvo, Inc. | 16-2-5904-0 (SEA) | Wash. Super. Ct. |
| Townes, IV v. Trans Union, LLC | 04-1488-JJF | D. Del. |
| Townsend v. G2 Secure Staff | 18STCV04429 | Cal. Super. Ct. |
| Trepte v. Bionaire, Inc. | BC540110 | Cal. Super. Ct. |
| Tschosik v. Diamond Freight Sys. | 16-2-01247-1 | Wash. Super. Ct. |
| Tyus v. Gen. Info. Solutions LLC | 2017CP3201389 | S.C. C.P. |
| United States v. City of Austin | 14-cv-00533-LY | W.D. Tex. |
| United States v. City of Chicago | 16-c-1969 | N.D. Ill. |
| United States v. Consol. City of Jacksonville | 170-17M-393 | U.S. D.O.J. |
| United States v. Greyhound Lines, Inc. | 16-67-RGA | D. Del. |
| USC Student Health Ctr. Settlement | 18-cv-04258-SVW | C.D. Cal. |
| Viesse v. Saar's Inc. | 17-2-7783-6 (SEA) | Wash. Super. Ct. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| *Wahl v. Yahoo! Inc.* | 17-cv-2745 (BLF) | N.D. Cal. |
| *Walton v. AT&T Servs., Inc.* | 15-cv-3653 (VC) | N.D. Cal. |
| *Weber v. KASA Delivery LLC* | 16-2-13761-0 SEA | Wash. Super. Ct. |
| *WellCare Sec. Litig.* | 07-cv-01940-VMC-EAJ | M.D. Fla. |
| *Williams v. Children's Mercy Hosp.* | 1816-CV 17350 | Mo. Cir. Ct. |
| *Williams v. Naples Hotel Group, LLC* | 18-cv-422-Orl-37-DCI | M.D. Fla. |
| *Williams v. Weyerhaeuser Co.* | 995787 | Cal. Super. Ct. |
| *Wills v. Starbucks Corp.* | 17-cv-03654 | N.D. Ga. |
| *Wilson v. LSB Indus., Inc.* | 15-cv-07614-RA-GWG | S.D.N.Y. |
| *Wood v. AmeriHealth Caritas Serv.* | 19-2194 | E.D. Pa. |
| *Wornicki v. Brokerpriceopinion.com, Inc.* | 13-cv-03258 (PAB) (KMT) | D. Colo. |
| *Wright v. Lyft, Inc.* | 14-cv-00421-BJR | W.D. Wash. |
| *Young v. World Wide Tech., LLC* | 2019-L-001728 | Ill. 13th Cir. Ct. |

# EXHIBIT B



# Blue Cross Blue Shield Settlement NOTICE PLAN

## NOTICE PLAN OBJECTIVE

The objective of the proposed Notice Plan is to provide the best notice practicable, consistent with the methods and tools employed in other court-approved notice programs. The Federal Judicial Center's (FJC) *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* considers a Notice Plan with a high reach (above 70%) effective.[1]

## CLASS DEFINITION

The Settlement Agreement provides for two proposed Settlement Classes, a Damages Class (which includes a Self-Funded Sub-Class) and an Injunctive Relief Class (referred to collectively as the "Class Members").

- **Damages Class**: Includes all Individual Members (excluding dependents and beneficiaries), Insured Groups (including employees, but excluding non-employee Members), and Self-Funded Accounts (including employees, but excluding non-employee Members) that purchased or were enrolled in a Blue-Branded Commercial Health Benefit Product (unless the person's or entity's only Blue-Branded Commercial Health Benefit Product during the Settlement Class Period was a stand-alone vision or dental product) sold, underwritten, insured, administered, or issued by any Settling Individual Blue Plan from February 7, 2008 through October 16, 2020 ("Settlement Class Period"), except for members of the Self-Funded Sub-Class, for whom the Class Period is September 1, 2015 through October 16, 2020.

  Excluded from the Damages Class are Government Accounts (and individuals covered under them), Medicare Accounts of any kind, Settling Defendants themselves, and any parent or subsidiary of any Settling Defendant (and their covered or enrolled employees). Also excluded from the Damages Class are Opt Outs, the Judge presiding over this matter, and any members of his judicial staff, to the extent such staff were covered by a Commercial Health Benefit Product not purchased by a Government Account during the Settlement Class Period.

- **Self-Funded Sub-Class**: Includes Self-Funded Accounts and their employees.  It encompasses any account, employer, health benefit plan, ERISA plan, non-ERISA plan, or group, including all sponsors, administrators, fiduciaries, and Members thereof, that purchased, was covered by, participated in, or was enrolled in a Self-Funded Health Benefit Plan from September 1, 2015 through October 16, 2020 ("Sub-Class Settlement

---

[1] Reach is the percentage of a specific population group exposed to a media vehicle or a combination of media vehicles containing a notice at least once over the course of a campaign. Reach factors out duplication, representing total different/net persons.



Class Period"). A Self-Funded Health Benefit Plan is any Commercial Health Benefit Product other than Commercial Health Insurance, including administrative services only ("ASO") contracts or accounts, administrative services contracts or accounts ("ASC"), and jointly administered administrative services contracts or accounts ("JAA").

- For associational entities (e.g., trade associations, unions, etc.), this includes any member entity which is covered by, enrolled in, or included in the associational entity's Blue-Branded Commercial Health Benefit Product. A Self-Funded Account that purchases a Blue-Branded Self-Funded Health Benefit Plan and Blue-Branded stop-loss coverage remains a Self-Funded Account. For clarity, a Self-Funded Account also excludes all Government Accounts.

- **Injunctive Relief Class**: Includes all Individual Members, Insured Groups, Self-Funded Accounts, and Members that purchased or were enrolled in a Blue-Branded Commercial Health Benefit Product sold, underwritten, insured, administered, or issued by any Settling Individual Blue Plan during the applicable Settlement Class Period.

## CLASS INFORMATION

JND's proposed Notice Plan was designed based on the following information:

1. The precise number of Class Members is currently unknown but is estimated at tens of millions of members.

2. Settling Defendants will be providing JND with direct contact information, where available, for the Damages Class. This contact information will be produced in accord with Paragraph 5 of the Settlement Agreement.

3. A comprehensive media effort will effectively reach all Class Members.

## MEDIA RESOURCES

JND utilizes the most reputable advertising media research tools to ensure that the best media is selected and that our reach calculations can withstand the most critical review and challenge. The media research tools we utilized in our analysis and will use to implement the Notice Plan include:

- **MRI | Simmons (MRI)**:  JND uses MRI data to analyze the demographics and media usage of Class Members, as well as to determine the reach of our proposed print effort. MRI is a nationally accredited research firm that provides consumer demographics, product and brand usage, and audience/exposure in all forms of advertising media. MRI is the leading producer of media and consumer research in the United States.

- **Comscore, Inc. (Comscore)**: JND uses Comscore data to not only analyze where Class Members are on the internet, but more importantly, for calculating the reach of our proposed digital effort. Comscore's multi-reach platform allows us to analyze unduplicated audiences across desktop, smartphone, and tablet devices and to assess the efficiency and effectiveness of our proposed media plans by reducing waste and improving campaign performance across all devices.



- **Google Active View**: At the time of implementation, our digital media placement experts will take the necessary steps to ensure that all notice placements appear exactly as planned, meeting our high standards of quality and positioning. Verification and monitoring will be used to enhance the digital buy — For instance, Google Active View is accredited by the Media Rating Council (MRC) and will be used to measure viewable impressions across the web and in apps. Google Active View supports the Interactive Advertising Bureau (IAB) and MRC definition of viewability — a minimum of 50% of the ad is in view for a minimum of one second for display ads.

- **Trust Metrics**: In addition to Google Active View, Trust Metrics will be used during the digital effort implementation process to ensure that the banner impressions are not served to poor quality sites and are only displayed on brand safe websites, further ensuring the greatest degree of visibility and dissemination to the Class Members. Sites that are deemed "unsafe" are blocked during implementation, using brand safety parameters such as site content and keywords.

- **Nielsen:** JND uses Nielsen to measure the reach of our tv and radio efforts. Nielsen currently manages more television audience measurement (TAM) panel households than any other international television audience ratings provider. Nielsen is the definitive source for comprehensive audio metrics and insights. Using a combination of listener panels and electronic measurement technology, Nielsen has been measuring radio tune-in since 1936 and has been amplifying its capabilities ever since.

## TARGET ANALYSIS[2]

JND analyzed the demographics and media usage of Class Members to determine how best to reach them. MRI data was studied among adults 18 years of age or older ("Adults 18+") who have Blue Cross or Blue Shield medical insurance ("BCBS Insurance Members").

MRI data indicates that most BCBS Insurance Members are: 25 years of age or older (90%—however, given the class period, an even greater percentage are older today); white (83%); homeowners (75%); from higher income households (73% have a household income of $60,000+); educated (69% attended college or beyond); working full time (61%); and married (61%).

JND considered these key demographics when selecting media. For instance, *Better Homes & Gardens* extends reach to homeowners, Sirius XM radio extends reach among the higher income and educated demographic segments, and network morning news extends reach among older age groups. Other media were selected for their broad-based reach offering (*People*, Google), while others were selected to extend reach to a narrow audience (e.g., Spanish digital/radio, syndicated radio in top African American markets, industry media).

MRI data also indicated that BCBS Insurance Members are active internet users, with 92% using the internet and 69% visiting Facebook in a 30-day period. In terms of devices, 85% use their cellphone or smartphone to access the internet.

Considering this data and the large diverse Class, a Notice Plan that uses multiple channels and sources was created.

---

[2] Researching and analyzing the demographics and media usage of likely class members to assist in determining the best media strategies for reaching them.



## NOTICE PLAN STRATEGIES

Direct notice will be sent to all Damages Class Members for whom contact information is available. Email notice will be sent to Damages Class Members who have provided their email addresses to the Settling Defendants in the ordinary course of business with Damages Class Members. Postcard notice will be sent to Damages Class Members for whom the Class Member Data does not contain such an email address or for whom the email notice was deemed ultimately undeliverable.

In addition to the direct notice effort, an extensive **media campaign** has been designed to reach 85% of all Settlement Class Members on its own. The media reach campaign includes digital, print, radio and television:

1. **Digital:** Digital ads will be served on the leading digital network (Google Display – "GDN") and the top social network platform (Facebook).
2. **Print**: Notice will be published in color once each in two popular consumer magazines (*People* and *Better Homes & Gardens*).
3. **Radio**: ~9,700 30-second radio spots will broadcast through Sirius XM satellite radio, two premiere radio networks (iHeart Radio – Scope and Spectrum networks), highly rated syndicated programming in the top ten African American markets (e.g., Rickey Smiley, Steve Harvey), and two leading Spanish providers (Spanish Broadcasting System "SBS" and Univision Radio) in the top ten Hispanic markets. Additional audio streaming will be placed through Pandora and Spotify.
4. **Television**: ~969 30-second television spots will broadcast on a variety of cable and syndicated networks, as well as network morning news programming.

A **supplemental industry media campaign** will extend reach beyond the 85% media reach plan, particularly among entity Class Members. The proposed industry media includes the leading professional social media platform (LinkedIn); digital ads served with top business websites and two leading HR websites; and multiple placements in e-Newsletters targeting both business owners and the HR industry.

**Additional efforts** include a third-party outreach effort, an internet search campaign and a multichannel news release. A link to the settlement website will also be placed on BCBSA.com. These efforts will extend notice beyond the 85% media reach plan.

The deliverable success rate of the Notice Program will be monitored, and data subsequently will be used for a **claims stimulation effort** consisting of a targeted digital effort and a content update to the multichannel news release. These efforts will remind Class Members of the approaching claims deadline. The claims stimulation effort may be bolstered, if necessary.

| DIRECT NOTICE EFFORT | DETAILS |
|---|---|
| @ | • Send email notice to Damages Class Members where the Settling Defendants have been provided email addresses in the ordinary course of business |
| ✉ | • Send postcard notice to Damages Class Members for whom an email address is not in the data produced by the Settling Defendants or for whom email notice is returned as undeliverable |



| DIGITAL EFFORT | DETAILS |
|---|---|
| **Google** Display Network | • Largest digital network comprised of more than two million websites reaching 90% of internet users worldwide<br>• Efficient at reaching vast audiences<br>• Targeting Adults 18+<br>• 10% of impressions allocated to Spanish language sites<br>• Served across all devices (desktop, laptop, tablet and mobile), with an emphasis on mobile<br>• **398 million impressions** |
| **facebook** | • World's largest social networking site<br>• Over 223 million accounts in the U.S.<br>• Targeting Adults 18+<br>• 10% of impressions allocated to Spanish speaking accounts<br>• 100% mobile newsfeed placements<br>• Served across mobile devices<br>• **30 million impressions** |
| **TOTAL** | **~428 million impressions[3] over 10 weeks (~ 10% allocated to Spanish)** |

| PRINT EFFORT | DETAILS |
|---|---|
| **People** | • Weekly entertainment magazine<br>• Largest consumer magazine with a circulation of over 3.4 million and a readership of over 34.9 million<br>• Reaches 14% of Adults 18+<br>• Extends reach to a broad demographic segment, including those who may not frequent the internet, particularly older consumers<br>• **One Full page color insertion** |
| **Better Homes & Gardens** | • Monthly lifestyle magazine<br>• Provides a circulation of over 7.6 million and a readership of over 29.8 million<br>• Reaches 13% of Adults 18+<br>• Extends reach to older women, including those who may not frequent the internet<br>• **One Full page color insertion** |
| **TOTAL** | **TWO Full page color insertions** |

---

[3] Impressions or Exposures are the total number of opportunities to be exposed to a media vehicle or combination of media vehicles containing a notice. Impressions are a gross or cumulative number that may include the same person more than once. As a result, impressions can and often do exceed the population size.



| RADIO EFFORT | DETAILS |
|---|---|
| SiriusXM® | • One of the largest subscription service radio providers<br>• Offers over 32.7 million subscribers, reaching over 65.4 million radio listeners<br>• Includes programming such as Fox News, MSNBC, HLN, Fox Business, Howard Stern, ESPN, NFL, Mad Dog, Road Dog Trucking, Today Show, Comedy Central Radio, Jeff & Larry's Comedy Roundup<br>• **~1,100 spots** |
| iHeartRADIO | • Top radio syndicator in the U.S.<br>• 245 million monthly listeners<br>• THE SCOPE: **~575+ Station Affiliates**; Dominant Formats: AC/Adult Hits/Country; M-Su 5a-8p; 50% Male / 50% Female; 28M Weekly Listenership<br>• SPECTRUM: **~800+ Station Affiliates**; Dominant Formats: Country, as well as Urban Contemporary, Gospel, Hip Hop, Jazz, Rhythmic CHR; M-Sun 6a-12mid; 55% Male / 45% Female; 30M Weekly Listenership<br>• **~8,250 spots** |
| pandora | • Top music streaming service provider<br>• 96 million total U.S. subscribers<br>• Listeners can tune into established genre stations, other users' stations or create their own stations based on their musical interests<br>• Provides an interactive service whereas the user can give a "thumbs up" or "thumbs down" to a musical track which will determine whether similar songs should be played, or even eliminate an artist from their station altogether<br>• **~5 million impressions** |
| Spotify | • A leading digital music streaming service provider<br>• Provides access to millions of songs, podcasts and videos from artists all over the world<br>• 90 million monthly active users in the U.S. and 58.5 million ad supported users<br>• **~5 million impressions** |
| Radio Syndication | • Targets **top ten African Americans markets**<br>• Includes programming such as Rickey Smiley (stand-up comedian and radio personality) and Steve Harvey (host of his own morning show)<br>• **~100 spots** |



| | |
|---|---|
| | • Target **top ten Hispanic markets**<br>• Includes two dominant Hispanic radio providers (SBS and Univision Radio)<br>• Broadcasts will be in Spanish<br>• **~250 spots** |
| **TOTAL** | **~9,700 :30 Broadcast Radio Spots**<br>**10 million audio impressions (Pandora/Spotify)** |

| TELEVISION EFFORT | DETAILS |
|---|---|
| | • Cable TV spots purchased on a variety of networks<br>• Includes a variety of news, sports, entertainment and lifestyle programming on leading cable networks<br>• Broadens reach to a variety of demographic segments<br>• **~925 spots** |
| | • Syndicated television spots airing on a variety of shows such as Wheel of Fortune, Family Feud, Wendy Williams Show, Tamron Hall<br>• Broadens reach to the African American population<br>• **~20 spots** |
| | • Network morning news spots purchased on leading morning news shows such as Good Morning America, Today Show and CBS This Morning<br>• Extends reach to older segment of the Class<br>• **~24 spots** |
| **TOTAL** | **~969 :30 Television Spots** |



| ENTITY DIGITAL EFFORT[4] | DETAILS |
|---|---|
| **LinkedIn** | <ul><li>Leading professional social network platform</li><li>Targeting two key professional groups – HR employees and executive staff</li><li>**Target #1**:<ul><li>Job Seniority: Senior, Manager, Director, VP</li><li>Member Skills: HR Consulting</li><li>Member Groups: HR Specialist, HR Professionals, Employee Benefits & HR, Employee Health & Wellness, Insurance</li><li>Company Industries: Human Resources</li><li>Job Functions: Human Resources</li></ul></li><li>**Target #2**: CEO, Owner, and Partners</li><li>Ads will be placed on the right-hand side or top of the desktop feed</li><li>Text ads serving **915,000 impressions**</li></ul> |
| YAHOO! Business  CNBC  FAST COMPANY  Forbes  Bloomberg  Entrepreneur  THE WALL STREET JOURNAL.  BUSINESS INSIDER  allBusiness YOUR SMALL BUSINESS ADVANTAGE | <ul><li>Ads will be placed on leading business websites, e.g.:<ul><li>Yahoo Business</li><li>CNBC.com</li><li>FastCompany.com</li><li>Forbes.com</li><li>Bloomberg.com</li><li>Entrepeneur.com</li><li>WJS.com</li><li>BusinessInsider.com</li><li>AllBusiness.com</li></ul></li><li>Banner ads serving **1,000,000 impressions**</li></ul> |
| **FranchiseTimes** | <ul><li>News and information source for the franchising industry</li><li>Popular features include franchisor and franchisee success stories, family business matters and interviews with celebrities involved in franchising</li><li>**4 digital placements** in Franchise Times e-Newsletter (issued 2x/month)  – 26K sends each, 104,000 total sends</li></ul> |
| **Entrepreneur** | <ul><li>Connects with business owners, creators and thought leaders  building exciting ventures and reshaping entire industries</li><li>Helps entrepreneurs grow their businesses through inspiring stories of real people, valuable resources, how-to content, books, podcasts, videos, coaching and more</li><li>**4 digital placements** in Entrepreneur Daily e-Newsletter  – 145K sends each, 580,000 total sends</li></ul> |

---

[4] Industry media is limited in terms of availability. Publishers also have a right of refusal when it comes to ad placements.  If industry media is unavailable or they do not accept our ad at the time of placement, JND will seek comparable alternatives.



| | |
|---|---|
|  | • Reaches senior business strategists who have power, influence, and potential<br>• **4 digital placements** in Harvard Business Review Management Tip of the day e-Newsletter (issued Monday-Friday) – 100K sends each, 400K total sends |
|  | • The Society for Human Resource Management (SHRM) is the largest human resources organization<br>• More than 275,000 members worldwide<br>• Dedicated to HR management and the needs of HR professionals<br>• Provides information on benefits, compensation, employee and labor relations and other HR policies<br>• Banner ads serving **100,000 impressions** on shrm.org<br>• **4 digital placements** in SHRM HR Weekly e-Newsletter (issued Mondays) **-** 430,000 sends each, 1,720,000 total sends |
|  | • Written for Vice Presidents and Directors of human resources<br>• Provides key decision-makers with news, profiles of HR visionaries and success stories of human resource innovators<br>• Banner ads serving **100,000 impressions** on hrexecutive.com home page and **50,000 impressions** on the benefit category page<br>• **4 digital placements** in HRE Benefits e-Newsletter – 100K sends each, 400K total sends |
|  | • The National Association of African Americans in Human Resources (NAAAHR) is a career development and networking powerhouse for Black and African American human resources practitioners<br>• Provides networking, career opportunities, educational and professional development, mentorship and coaching and tools, tips and resources<br>• Over 15,000 HR members and affiliates<br>• Operates over 25 chapters and interest groups throughout the nation<br>• Banner ads serving **7,300 impressions** on NAAAHR.org<br>• **TWO digital placements** in NAAAHR e-Newsletter (issued first Tuesday of month) – 13K sends each month, 26K total sends |



| | |
|---|---|
| ![ebn logo] | • Primary media resource that benefit professionals rely on to navigate the complexities of employee benefit planning and delivery<br>• Serves senior-level benefits decision-makers, including HR executives and benefits Directors whose responsibility includes health plans<br>• **4 digital placements** in Employee Benefit News Healthcare e-Newsletter (issued Tuesdays) – 22K sends each, 88K total sends |
| ![BenefitsPRO logo] | • Provides benefits brokers/consultants, benefits managers and retirement advisors with news, resources, and tools<br>• **4 digital placements** in Benefits Pro Daily e-Newsletter – 59K sends each, 236K total sends |
| ![HEALTHCARE DIVE logo] | • Provides in-depth insight into the news and trends shaping healthcare.<br>• Covers topics such as health IT, policy & regulation, insurance, digital health, payer-provider partnerships, value-based care and more<br>• **4 digital placements** in Healthcare Dive Top Payer e-Newsletter and Email Blast (daily) – 14K sends each, 56K total sends |
| **TOTAL** | **~2.1 million impressions**<br>**~3.6 million e-Newsletter sends** |



| ADDITIONAL EFFORTS | DETAILS |
|---|---|
| | • Purchase list of companies (main headquarters) that employee individuals with an **HR/Employee Benefit title (150K postal addresses, 55K emails)**<br>• Purchase list of companies (main headquarters) that employee individuals with **Health and Accident Insurance Broker related titles (396 postal addresses, 904 emails)**<br>• Send notice about the Settlement |
| | • Google is by far the most popular search engine (78% market share worldwide), followed by Bing (8% market share worldwide)<br>• Web browsers frequently default to a search engine page, making search engines a common source to get to a specific website (i.e., as opposed to typing the desired URL in the navigation bar)<br>• When purchased keywords related to this Settlement are searched, a paid search ad with a hyperlink to the case website may appear on the search engine results page<br>• Efforts will be monitored and optimized |
| | • Multichannel News Release<br>• Launched at the start of the campaign<br>• Distributed into newsrooms, online syndication, and PR Newswire for Journalists, an exclusive members-only community of more than 41,000 influential journalists and bloggers<br>• Encourages journalists to visit a microsite and review the press release, television spot, radio spot and other information about the Settlement. |

## CLAIMS STIMULATION EFFORT

The claims stimulation is designed to remind Damages Class Members of the approaching claims deadline. Prior to the claims deadline, JND's team will initiate a wide-ranging media effort to encourage Class Members to submit claims and to remind them of the impending deadline.

The claims stimulation effort will include a digital campaign consisting of (1) an audience custom list, (2) retargeting and (3) look-alike targeting. An audience custom list will be derived from emails of Damages Class Members who have not yet opted out or filed a claim. The emails will be matched with Facebook and Instagram accounts and ads will be served across Facebook and Instagram to active matched accounts. Digital banner ads will also be served to Damages Class Members who visited the Settlement website but did not complete a claim submission (retargeting), as well as to individuals who demographically/geographically match with those Damages Class Members who have already filed online claims (look-alike targeting).



In addition to these efforts, the multichannel news release will be updated to include a claim deadline reminder message.

Based on the success of the initial media campaign, television and radio spots may be added and broadcast to key markets with high claims filing results. Additional print insertions may also be published.

The claims stimulation message will deliver a simple reminder of the approaching claims deadline.

## PLAN DELIVERY

**The media campaign alone is designed to reach 85% of Class Members.**

The 85% reach will be further extended by:

1. the direct notice effort,
2. the supplemental industry media,
3. the additional efforts, including the third-party outreach effort, internet search campaign, the multichannel news release, and
4. the claims stimulation effort.

The proposed notice effort exceeds that of other court approved programs and meets the high-end of the reach standard set forth by the FJC.

# EXHIBIT C

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA SOUTHERN DIVISION

# If you purchased or were enrolled in a Blue Cross or Blue Shield health insurance or administrative services plan between 2008 and 2020, a $2.67 billion Settlement may affect your rights

*Para una notificación en español, visite www.BCBSsettlement.com/espanol*

*A federal court authorized this Notice.  This is not a solicitation from a lawyer.*

- Class Representatives ("Plaintiffs") and the Blue Cross Blue Shield Association ("BCBSA") and Settling Individual Blue Plans reached a Settlement in a class action antitrust lawsuit called *In re: Blue Cross Blue Shield Antitrust Litigation MDL 2406*, N.D. Ala. Master File No. 2:13-cv-20000-RDP (the "Settlement").[1] BCBSA and Settling Individual Blue Plans  are called "Settling Defendants."

- Plaintiffs allege that  Settling Defendants violated antitrust laws by entering into an agreement not to compete with each other and to limit competition among themselves in selling health insurance and administrative services for health insurance.

- Settling Defendants deny all allegations of wrongdoing and assert that their conduct results in lower healthcare costs and greater access to care for their customers.

- The Court has not decided who is right or wrong. Instead, Plaintiffs and Settling Defendants have agreed to a Settlement to avoid the risk and cost of further litigation.

- The Court certified two Settlement Classes in this case—a <u>Damages Class</u> and an <u>Injunctive Relief Class</u>. These Classes are further defined in Question 5.

- If approved by the Court, the Settlement will establish a **$2.67 billion Settlement Fund.**  Settling Defendants will also agree to make changes in the way they do business that will increase the opportunities for competition in the market for health insurance.

- Your legal rights are affected whether you act or do not act. Please read this Notice carefully.

---

[1] All capitalized terms used in this Notice shall have the same meaning as provided for in the Settlement Agreement, unless stated otherwise.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | | |
|---|---|---|
| **FILE A CLAIM (DAMAGES CLASS ONLY)** | • File a claim for payment online or by mail.<br>• Be bound by the Settlement.<br>• Give up your right to sue or continue to sue Settling Defendants for the claims in this case. | Submit online or postmarked by **Month x, 202x** |
| **ASK TO BE EXCLUDED ("OPT OUT") (DAMAGES CLASS ONLY)** | • Remove yourself from the Class.<br>• Receive no payment.<br>• Keep your right to sue or continue to sue Settling Defendants for the claims in this case. | Postmarked or received by **Month x, 202x** |
| **OBJECT** | • Write to the Court about why you do not like the Settlement. | Postmarked or received by **Month x, 202x** |
| **ATTEND THE HEARING** | • Ask to speak to the Court about the fairness of the Settlement. | **Month x, 202x at x:xx, xx** |
| **DO NOTHING** | • Receive no payment.<br>• Be bound by the Settlement.<br>• Give up your right to sue or continue to sue Settling Defendants for the claims in this case. | |

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice. The deadlines may be changed, so please check the Settlement Website, www.BCBSsettlement.com, for updates and further details.

- The Court in charge of this case still has to decide whether to approve the Settlement. Payments will be made if the Court approves the Settlement and after any appeals are resolved. Please be patient.

**Questions? Visit  www.BCBSsettlement.com or call toll-free at (888) 681-1142**

| WHAT THIS NOTICE CONTAINS |
| --- |

**BASIC INFORMATION** .................................................................................................. Page 4

    1.  Why was this Notice issued?

    2.  What is this lawsuit about?

    3.  What is a class action, and who is involved?

    4.  Why is there a Settlement?

**WHO IS IN THE SETTLEMENT CLASSES?** ................................................................... Page 4

    5.  Am I part of the Settlement Classes?

    6.  I am still not sure if I am included.

**SETTLEMENT BENEFITS** ............................................................................................. Page 6

    7.  What does the Settlement provide?

    8.  How much can Damages Class Members get from the Settlement?

    9.  How do I get a Payment?

    10. What am I giving up by staying in the Settlement Classes?

    11. What happens if I do nothing at all?

**EXCLUDING YOURSELF FROM THE DAMAGES CLASS** ............................................. Page 10

    12. How do I exclude myself from the Damages Class?

    13. If I do not exclude myself, can I sue Settling Defendants for the same thing later?

**OBJECTING TO THE SETTLEMENT** ........................................................................... Page 11

    14. How do I tell the Court that I do not like the Settlement?

    15. What is the difference between excluding myself and objecting?

**THE LAWYERS REPRESENTING YOU** ........................................................................ Page 12

    16. Do I have a lawyer in this case?

    17. How will the lawyers be paid?

**THE COURT'S FAIRNESS HEARING** ......................................................................... Page 13

    18. When and where will the Court decide whether to approve the Settlement?

    19. Do I have to come to the hearing?

    20. May I speak at the hearing?

**GETTING MORE INFORMATION** ............................................................................... Page 13

    21. How do I get more information about the Settlement?

**Questions? Visit  www.BCBSsettlement.com or call toll-free at (888) 681-1142**

## BASIC INFORMATION

| 1.   Why was this Notice issued? |
| --- |

The Court authorized this Notice because you have a right to know about the proposed Settlement of certain claims against Settling Defendants in this class action lawsuit and about your options before the Court decides whether to approve the Settlement. If the Court approves the Settlement, and after objections and appeals are resolved, you will be bound by the judgment and terms of the Settlement. This Notice explains the lawsuit, the Settlement, and your legal rights and options, and the deadlines for you to exercise your rights.

| 2.   What is this lawsuit about? |
| --- |

This class action is called *In re: Blue Cross Blue Shield Antitrust Litigation* MDL 2406, N.D. Ala., Master File No. 2:13-cv-20000-RDP and is pending in the United States District Court for the Northern District of Alabama Southern Division. U.S. District Court Judge R. David Proctor is overseeing this class action.

Plaintiffs allege that Settling Defendants violated antitrust laws by entering into an agreement where the Settling Defendants agreed not to compete with each other in selling health insurance and administration of Commercial Health Benefit Products in the United States and Puerto Rico, as well as agreeing to other means of limiting competition in the market for health insurance and administration of Commercial Health Benefit Products. Settling Defendants deny all allegations of wrongdoing.  They assert that their conduct results in lower healthcare costs and greater access to care for their customers. The Court has not decided who is right or wrong. Instead, Plaintiffs and Settling Defendants have agreed to a Settlement to avoid the risk and cost of further litigation.

| 3.   What is a class action, and who is involved? |
| --- |

In a class action lawsuit, one or more people or businesses called class representatives sue on behalf of others who have similar claims. All of the people or businesses who have similar claims together are a "class" or "class members" if the class is certified by the Court. Individual class members do not have to file a lawsuit to participate in the class action settlement or be bound by the judgment in the class action. One court resolves the issues for everyone in the class, except for those who exclude themselves from the class.

| 4.   Why is there a Settlement? |
| --- |

The Court did not decide in favor of the Plaintiffs or Settling Defendants. Instead, both sides have agreed to the Settlement. Both sides want to avoid the risk and cost of further litigation. The Plaintiffs and their attorneys think the Settlement is best for the Settlement Classes.

## WHO IS IN THE SETTLEMENT CLASSES?

| 5.   Am I part of the Settlement Classes? |
| --- |

The Court certified two Settlement Classes in this case—a Damages Class and an Injunctive Relief Class.

- The Damages Class includes all **Individuals**, **Insured Groups** (and their employees), and **Self-Funded Accounts** (and their employees), that purchased, were covered by, or were enrolled in a Blue-Branded Commercial Health Benefit Product[2] sold, underwritten, insured, administered, or issued by any Settling Individual Blue Plan during the respective class periods. The class period for the fully

---

[2] Unless the person's or entity's only Blue-Branded Commercial Health Benefit Product during the class periods was a stand-alone vision or dental product.

**Questions? Visit www.BCBSsettlement.com or call toll-free at (888) 681-1142**

4

insured **Individuals** and **Insured Groups** (and their employees) is from February 7, 2008, through October 16, 2020 ("Settlement Class Period"). The class period for the **Self-Funded Accounts** (and their employees) is from September 1, 2015 through October 16, 2020 ("Self-Funded Settlement Class Period"). Dependents, beneficiaries (including minors), and non-employees are **NOT** included in the Damages Class.

**Self-Funded Accounts** encompass any account, employer, health benefit plan, ERISA plan, non-ERISA plan, or group, including all sponsors, administrators, fiduciaries, and Members thereof, that purchased, were covered by, participated in, or were enrolled in a Self-Funded Health Benefit Plan during the Self-Funded Settlement Class Period. A Self-Funded Health Benefit Plan is any Commercial Health Benefit Product other than Commercial Health Insurance, including administrative services only ("ASO") contracts or accounts, administrative services contracts or accounts ("ASC"), and jointly administered administrative services contracts or accounts ("JAA").

For associational entities (e.g., trade associations, unions, etc.), the Self-Funded Account includes any member entity which was covered by, enrolled in, or included in the associational entity's Blue-Branded Commercial Health Benefit Product. A Self-Funded Account that purchased a Blue-Branded Self-Funded Health Benefit Plan and Blue-Branded stop-loss coverage remains a Self-Funded Account.

Excluded from the Damages Class are:
o   Government Accounts[3];
o   Medicare and Medicaid Accounts;
o   Settling Defendants themselves, and any parent or subsidiary of any Settling Defendant (and their covered or enrolled employees);
o   Individuals or entities that file an exclusion or opt out from the Settlement; and
o   The judge presiding over this matter, and any members of his judicial staff, to the extent such staff were covered by a Commercial Health Benefit Product not purchased by a Government Account during the Settlement Class Period.

- The <u>Injunctive Relief Class</u> includes all **Individuals**, **Insured Groups**, **Self-Funded Accounts**, and **Members** that purchased, were covered by, or were enrolled in a Blue-Branded Commercial Health Benefit Product sold, underwritten, insured, administered, or issued by any Settling Individual Blue Plan during the applicable Settlement Class Period. Dependents, beneficiaries (including minors), and non-employees are included in the Injunctive Relief Class.

---

**6.   I am still not sure if I am included.**

---

If you are still not sure if you are included in the Settlement Classes, please review the detailed information contained in the Settlement Agreement, available for download at www.BCBSsettlement.com. You may also contact the Claims Administrator at info@BCBSsettlement.com or call toll-free at (888) 681-1142.

---

[3] Additional information about Government Accounts is in the Settlement Agreement.

**Questions? Visit www.BCBSsettlement.com or call toll-free at (888) 681-1142**

## SETTLEMENT BENEFITS

| 7.   What does the Settlement provide? |
| --- |

The Settlement provides monetary payments to Damages Class Members who submit a valid claim by **Month, x, 202x**. Settling Defendants also agreed to make changes in the way they do business to increase the opportunities for competition in the market for health insurance ("injunctive relief") that benefits Injunctive Relief Class Members. You may be included in both Settlement Classes.

If the Court approves the Settlement, in exchange for Class Members' release of the Released Claims, a $2.67 billion Gross Settlement Fund will be established. The money remaining in the Settlement Fund, after paying the Attorneys' Fee and Expense Awards not to exceed $667.5 million and the Notice and Settlement Administration costs of $100 million, is called the "Net Settlement Fund." The Net Settlement Fund is estimated to be approximately $1.9 billion and will be distributed to Damages Class Members.  This Net Settlement Fund will be split as described below:

**Monetary Damages:**

- 93.5% of the Net Settlement Fund (approximately $1.78 billion) will be allocated to the Fully Insured (FI) Class Members as a "FI Net Settlement Fund." The FI Net Settlement Fund will be distributed to **FI Authorized Claimants,** which include:
    - Individuals ("FI Individual Policyholders");
    - Insured Groups ("FI Groups"); and
    - Insured Group Employees ("FI Employees")
  who submit a valid claim by **Month, x, 202x**.

- The remaining 6.5% of the Net Settlement Fund (approximately $120million) will be set up as a "Self-Funded Net Settlement Fund." The Self-Funded Net Settlement Fund will be distributed to **Self-Funded Authorized Claimants,** which include:
    - Self-Funded Accounts ("Self-Funded Groups"); and
    - Self-Funded Account Employees ("Self-Funded Employees")
  who submit a valid claim by **Month, x, 202x**.

- The FI Net Settlement Fund and Self-Funded Net Settlement Fund are separate funds for FI Authorized and Self-Funded Authorized Claimants, respectively. If the claim rate is lower in one fund than the other, the payment to the Authorized Claimants will be proportionately increased in that fund only, and not to all Authorized Claimants overall.

**Injunctive Relief:**

- Settling Defendants have agreed to make changes in the way they do business that will increase the opportunities for competition in the market for health insurance. As part of the Injunctive Relief (the changes in the way the Settling Defendants do business), a Monitoring Committee will be established for five years to mediate any disputes resulting from the implementation of the Injunctive Relief.   If the Monitoring Committee Process approves any systems or rules, that information will be included in the Release.  It will also be posted in a report of Monitoring Committee Actions on the Settlement Website.   Additional information is detailed in the Settlement Agreement, available at www.BCBSsettlement.com

**Questions? Visit www.BCBSsettlement.com or call toll-free at (888) 681-1142**

## 8.   How much can Damages Class Members get from the Settlement?

Damages Class Members who submit a valid approved claim ("Authorized Claimants") will receive a payment from either the FI Net Settlement Fund or the Self-Funded Net Settlement Fund, if the Settlement is approved.

**Distribution of the FI Net Settlement Fund**

**FI Authorized Claimants** qualify for a payment based on the total amount of estimated premiums they paid to the Settling Defendants ("Total Premiums Paid") during the Settlement Class Period. Payments will be distributed on a proportional basis across all FI Authorized Claimants based on their estimated premiums.

The payment amount (i.e. claim payment) to FI Authorized Claimants will be determined by the following formula:

> Total Premiums Paid During the Settlement Class Period
> by FI Authorized Claimant A
>
> ***Divided by***
>
> Total Premiums Paid during the Settlement Class Period
> by all FI Authorized Claimants who submit claims
>
> ***Multiplied by***
>
> Total dollars in FI Net Settlement Fund
>
> **= Claim payment of FI Claimant A's claim**

For Example[4]:

> $1000
>
> ***Divided by***
>
> $10,000,000,000
>
> ***Multiplied by***
>
> $1,780,000,000
>
> **= $178**

FI Individual Policyholders – Total Premiums Paid for FI Individual Policyholders will be based on data provided by Settling Defendants. In most cases that data should allow for the calculation of Total Premiums Paid without requiring the FI Authorized Claimant to submit any premium data.

FI Groups and FI Employees – Total Premiums Paid for FI Groups and FI Employees will be based on (a) data provided by the Settling Defendants showing the total amount of premiums paid by any FI Group and (b) a process for allocating the Total Premiums Paid between each specific FI Group and any FI Employees of that FI Group who submit a claim.

---

[4] These numbers are provided **for example only**.  The numbers do not show actual premiums or an anticipated actual ratio of premiums paid by a Claimant to the Total Premiums Paid by all Claimants.

**Questions? Visit www.BCBSsettlement.com or call toll-free at (888) 681-1142**

Because FI Groups and FI Employees typically share the economic burden of premium payments, the Plan of Distribution allocates premiums between the two. When filing a claim, FI Groups and FI Employees may choose a Default or Alternative Option for determining the allocation of Total Premiums Paid between the employer and any employee of that FI group that file a claim. To efficiently process claims, the Plan of Distribution sets a Default allocation as follows: (1) 15% of an employee's premium for single coverage is deemed to have been paid by the employee (with the remainder to the employer) and (2) 34% of an employee's premium for family coverage is deemed to have been paid by the employee (with the remainder to the employer). The Alternative option allows the claimant to submit data or records supporting a contribution higher than the Default. The below scenarios are examples of how an estimated premium may be calculated for use in determining a claimant's proportional share of the FI Net Settlement Fund. In any case where an FI Group makes a claim, it will receive credit for any premiums not otherwise allocated to claiming employees.

| IF… | THEN… |
|---|---|
| • FI Group files a claim<br>• No FI Employees for that FI Group file a claim | • FI Group's share will be calculated from full premium paid by that FI Group |
| • FI Group files a claim and accepts Default option<br>• One or more of its FI Employees files a claim and accepts Default option | • For each claiming FI Employee, the Default % will be used to calculate their premiums paid, with remainder allocated to FI Group |
| • FI Group files a claim and selects Alternative Option and provides relevant data or records to support a contribution % higher than the Default %<br>• FI Employee files a claim | • Allocation between the FI Group and claiming FI Employees will be based on the relevant data or materials provided by each (dependent on a review process) |
| • FI Group files a claim and accepts Default option<br>• One or more FI Employees for that FI Group files a claim and selects the Alternative Option<br>• One or more FI Employees for that FI Group files a claim and accepts Default option | • Allocation between the FI Employees who select the Alternative Option and for the related FI Group with regard to these employees will be based on the relevant data or materials provided by each (dependent on a review process)<br>• Default % will be used to calculate premiums for the claimants who accept the Default option |
| • FI Employee files a claim and does not select the Alternative Option<br>• FI Group(s) does not file a claim | • The FI Employee's premium will be calculated based on the Default % as seen above |
| • FI Employee files a claim and selects the Alternative Option and provides relevant data or records to support a contribution % higher than the Default %<br>• FI Group(s) does not file a claim | • The FI Employee will receive an allocation based on the relevant data or materials he or she provides (dependent on a review process) |

<u>Employer Groups</u>: Purchasing Entities and Covered Entities are both eligible to file a claim.[5]

---

[5] Information about the plan of allocation for Employer Groups can be found in the Plan of Distribution.

**Questions? Visit www.BCBSsettlement.com or call toll-free at (888) 681-1142**

8

**Distribution of Self-Funded Net Settlement Fund**

**Self-Funded Authorized Claimants** are eligible for compensation for Total Self-Funded Fees Paid to the Settling Defendants during the Self-Funded Settlement Class Period. Payments will be distributed on a proportional basis across all Self-Funded Authorized Claimants.

The amount of each claim submitted by any given Self-Funded Authorized Claimant will be determined by the following formula:

Total Administrative Fees Paid During the Self-Funded Settlement Class Period
by Self-Funded Claimant B

***Divided by***

Total Administrative Fees Paid during the Self-Funded Settlement Class Period
by all Self-Funded Authorized Claimants who submit claims

***Multiplied by***

Total dollars in Self-Funded Net Settlement Fund

**= Claim payment of Self-Funded Claimant B's claim**

Total Administrative Fees Paid will be based upon (a) the data provided by the Settling Defendants showing the total amount of Administrative fees paid by any Self-Funded Group and (b) an allocation process to split the Total Self-Funded Fees Paid between each specific Self-Funded Group and any Self-Funded Employees of that Self-Funded Group who submit claims. The Self-Funded Groups/Employees will have the same opportunity to choose either the Default or Alternative option, as outlined in the chart on page 8 for the FI Group and FI Employees.

The Self-Funded Default Option allocation is: (1) 18% of an employee's administrative fee for single coverage is deemed to have been paid by the employee (with the reminder to the employer); and (2) 25% of an employee's administrative fee for family coverage is deemed to have been paid by the employee (with the reminder to the employer). The Alternative option allows the claimant to submit data or records supporting a contribution higher than the Default.

**Minimum Claim Payment**

If the total payment for any Damages Class Member is equal to or less than $5.00 ("minimum claim payment"), no payment will be made to the Damages Class Member.  The claimant will be notified that there will be no distribution given the minimum claim payment.

No distributions will be made until there is a final resolution of all determinations and disputes that could potentially impact the Claims Payments.

**Claimant Review**

Authorized Claimants will be able to review the Total Premiums Paid and/or Total Administrative Fees Paid used to calculate their award before the distribution of the Net Settlement Fund. If an Authorized Claimant disagrees with their Total Premiums Paid and/or Total Administrative Fees, they must provide the necessary documentation to support the amount they believe it should be. The Claims Administrator will review any data

**Questions? Visit www.BCBSsettlement.com or call toll-free at (888) 681-1142**

submitted and determine whether to change the Total Premiums Paid and/or Total Administrative Fees for that Authorized Claimant.

| **9.  How do I get a Payment?** |
| --- |

To make a claim and receive a payment, you must file a claim form online or by mail postmarked by **Month x, 202x**.  Claims may be submitted online at www.BCBSsettlement.com or by mail to:

Blue Cross Blue Shield Antitrust Litigation
c/o JND Legal Administration
PO Box 91390
Seattle, WA 98111

If you select the Alternative Option, you must submit relevant data or records showing a higher contribution percentage. Otherwise the Default Option will be used. Instructions for submitting your claim are on the claim form and on the Settlement Website. When required, sufficient documentation shall include an attestation signed under penalty of perjury when other documentation is no longer available.

| **10. What am I giving up by staying in the Settlement Classes?** |
| --- |

Unless you exclude yourself, you remain in the Settlement Classes.  This means that you cannot sue, continue to sue, or be part of any other lawsuit against Settling Defendants that makes claims based on the facts and legal theories involved in this case or any of the business practices the Settling Defendants adopt pursuant to the Settlement Agreement. It also means that all of the Court's orders will apply to you and legally bind you. The Released Claims are detailed in the Settlement Agreement, available at www.BCBSsettlement.com.

| **11. What happens if I do nothing at all?** |
| --- |

If you do nothing, you will remain a member of the Settlement Classes and be bound by the Settlement. However, if you had been entitled to share in the Settlement proceeds, you will not get a payment.

**EXCLUDING YOURSELF FROM THE DAMAGES CLASS**

| **12. How do I exclude myself from the Damages Class ?** |
| --- |

If you are a member of the Damages Class, do not want the monetary benefits,  and do not want to be legally bound by the terms of the Settlement, or if you wish to pursue your own separate lawsuit against Settling Defendants, you must exclude yourself from the Damages Class. This requires submitting a written request to the Claims Administrator stating your intent to exclude yourself from the Damages Class (an "Exclusion Request"). Your Exclusion Request must include the following: (a) your name, including the name of your business (if your business purchased health insurance from a Blue Cross or Blue Shield entity during the Class Period for employees), address, and telephone number; (b) a statement that you want to be excluded from the Damages Class in *In re: Blue Cross Blue Shield Antitrust Litigation*; and (c) your personal, physical signature (electronic signatures, including Docusign, or PDF signatures are not permitted and will not be considered personal signatures). Requests signed solely by your lawyer are not valid. You must mail or email your Exclusion Request, postmarked or received by **Month x, 202x**, to:

Blue Cross Blue Shield Antitrust Litigation
c/o JND Legal Administration – **Exclusion Dpt.**
PO Box 91393
Seattle, WA 98111
or info@BCBSsettlement.com

**Questions? Visit www.BCBSsettlement.com or call toll-free at (888) 681-1142**

## 13. If I do not exclude myself, can I sue Settling Defendants for the same thing later?

No. Unless you exclude yourself, you give up the right to sue Settling Defendants for any claims that are released by the Settlement Agreement. If you have a current lawsuit against the Settling Defendants, speak to your lawyer in that lawsuit immediately to determine whether you must exclude yourself from the Settlement Classes to continue your own lawsuit against Settling Defendants.

## OBJECTING TO THE SETTLEMENT

## 14. How do I tell the Court that I do not like the Settlement?

If you are a Settlement Class Member and have not excluded yourself from the Settlement, you can object to the Settlement if you do not like part or all of it. The Court will consider your views.

To object, you must send a letter or other written statement saying that you object to the Settlement in *In re: Blue Cross Blue Shield Antitrust Litigation* and the reasons why you object to the Settlement.  This letter must include:

- The name of the Action – *In re: Blue Cross Blue Shield Antitrust Litigation*
- Description of your objections, including any applicable legal authority and any supporting evidence you wish the Court to consider;
- Your full name, address, email address, telephone number, and the plan name under which Blue Cross Blue Shield was provided and dates of such coverage;
- Whether the objection applies only to you, a specific Settlement Class or subset of a Settlement Class, or both Settlement Classes;
- The identity of all counsel who represent you, including former or current counsel who may be entitled to compensation for any reason related to the objection, along with a statement of the number of times in which that counsel has objected to a class action within five years preceding the submission of the objection, the caption of the case for each prior objection, and a copy of any relevant orders addressing the objection;
- Any agreements that relate to the objection or the process of objecting between you, your counsel, and/or any other person or entity;
- Your (and your attorney's) signature on the written objection;
- A statement indicating whether you intend to appear at the Final Fairness Hearing (either personally or through counsel); and
- A declaration under penalty of perjury that the information provided is true and correct.

Do not send your written objection to the Court or the judge. Instead, mail the objection to the Claims Administrator with copies to Co-Lead Counsel and Counsel for Settling Defendants at the addresses listed below.

**Questions? Visit www.BCBSsettlement.com or call toll-free at (888) 681-1142**

Your objection must be postmarked by <mark>Month x, 202x</mark>.

| **Claims Administrator:** | **Plaintiffs' Co-Lead Counsel:** | **Counsel for Settling Defendants:** |
|---|---|---|
| Blue Cross Blue Shield Antitrust Litigation c/o JND Legal Administration PO Box 91393 Seattle, WA 98111 (888) 681-1142 | x BLUE CROSS BLUE SHIELD ANTITRUST LITIGATION C/O HAUSFELD LLP. 600 Montgomery Street NW Suite 3200 San Francisco, CA 94111 (415) 633-1908 BCBSsettlement@hausfeld.com | xxx KIRKLAND & ELLIS LLP x x (xxx) xxx-xxxx |
| | x BLUE CROSS BLUE SHIELD ANTITRUST LITIGATION BOIES SCHILLER FLEXNER LLP X x (xxx) xxx-xxx | |

---

### 15. What is the difference between excluding myself and objecting?

Objecting is telling the Court that you do not like something about the Settlement. You can object only if you do not exclude yourself from the Settlement Classes. Excluding yourself is telling the Court that you do not want to be part of the Settlement Classes or the lawsuit as outlined in question 14. If you exclude yourself, you are no longer a member of the Settlement Classes and you do not have a right to share in the Settlement's proceeds or to object because the Settlement no longer affects you.

## THE LAWYERS REPRESENTING YOU

### 16. Do I have a lawyer in this case?

The Court has appointed (1) Michael Hausfeld of Hausfeld LLP and (2) David Boies of Boies Schiller Flexner LLP as Co-Lead Counsel on behalf of the Plaintiffs and Settlement Class Members. Their contact information is provided above in Question 14.

You do not need to hire a lawyer because Co-Lead Counsel is working on your behalf.

If you wish to pursue your own lawsuit separate from this one, or if you exclude yourself from the Settlement Classes, these lawyers will no longer represent you. You will need to hire a lawyer if you wish to pursue your own lawsuit against Settling Defendants.

### 17. How will the lawyers be paid?

Settlement Class Counsel may submit an application(s) to the Court ("Fee and Expense Application") for: (i) an award of attorneys' fees plus (ii) reimbursement of expenses and costs, up to a combined total of 25% of the $2.67 billion fund (i.e., $667,500,000) created by the Settlement. This fee will include Self-Funded Class Counsel's application. You will not have to pay any fees or costs.

**Questions? Visit www.BCBSsettlement.com or call toll-free at (888) 681-1142**

## THE COURT'S FAIRNESS HEARING

**18. When and where will the Court decide whether to approve the Settlement?**

The Court will hold a hearing to decide whether to approve the Settlement.  You may attend and you may ask to speak, but you do not have to.  The Court will hold a Fairness Hearing at x:xx a.m. on Month x, 202x, at the United States District Court for the Northern District of Alabama, Hugo L. Black United States Courthouse, 1729 5th Avenue North, Birmingham, Alabama 35203, in Courtroom x. At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. The Court will also consider whether to approve attorneys' fees and expenses up to $667.5 million and $101 million for additional costs and service awards. If there are objections, the Court will consider them. The Court will listen to people who have asked to speak at the hearing. After the hearing, the Court will decide whether to approve the Settlement. We do not know how long these decisions will take.

**19. Do I have to come to the hearing?**

No. Co-Lead Counsel will attend the hearing and answer any questions the Court may have. However, you are welcome to come at your own expense. If you send an objection, you do not have to come to the hearing to talk about it. As long as you mailed your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but it is not necessary.

**20. May I speak at the hearing?**

You may ask to speak at the Fairness Hearing. To do so, you must send a letter saying that it is your "Notice of Intention to Appear in *In re: Blue Cross Blue Shield Antitrust Litigation*." Be sure to include your name, including the name of your business (if applicable), current mailing address, telephone number, and signature. Your Notice of Intention to Appear must be postmarked by Month x, 202x, and it must be sent to the Clerk of the Court, Co-Lead Counsel, and Defense Counsel.  The address for the Clerk of the Court is: Clerk of Court, United States District Court for the Northern District of Alabama, Hugo L. Black United States Courthouse, 1729 5th Avenue North, Birmingham, Alabama 35203.  The addresses for Co-Lead Counsel and Defense Counsel are provided in Question 14. You cannot ask to speak at the hearing if you excluded yourself from the Settlement.

## GETTING MORE INFORMATION

**21. How do I get more information about the Settlement?**

This Notice summarizes the proposed Settlement. More details are in the Settlement Agreement. You can find a copy of the Settlement Agreement, other important documents, and information about the current status of the case by visiting www.BCBSsettlement.com.  You may contact the Claims Administrator at info@BCBSsettlement.com or toll-free at (888) 681-1142.  You may also contact Co-Lead Counsel at the address, phone number, and email address provided in Question 14.

**PLEASE DO NOT CONTACT THE COURT REGARDING THIS NOTICE.**

**Questions? Visit www.BCBSsettlement.com or call toll-free at (888) 681-1142**

# EXHIBIT D



Blue Cross Blue Shield Settlement

# CLAIM FORM



**Must be postmarked by**
**mail no later than**
**Month Day, 2021**

BLUE CROSS BLUE SHIELD SETTLEMENT
C/O JND LEGAL ADMINISTRATION
PO BOX 91390
SEATTLE, WA 98111
www.BCBSsettlement.com

# BLUE CROSS BLUE SHIELD CLAIM FORM

You may be eligible to receive a cash payment if you are an **Individual**, **Insured Group** (and their employees) or **Self-Funded Account** (and their employees) that **purchased** or **were enrolled** in a Blue Cross or Blue Shield (BCBS) health insurance or administrative services plan during one of the two Settlement Class Periods.

The Settlement Class Period for **Individuals** and **Insured Groups** (and their employees) is from February 7, 2008, through October 16, 2020. The Settlement Class Period for **Self-Funded Accounts** (and their employees) is from September 1, 2015 through October 16, 2020. Dependents, beneficiaries (including minors), and non-employees are **NOT** eligible to receive payment.

**The Easiest Way to File is Online at www.BCBSsettlement.com**.

## INSTRUCTIONS FOR COMPLETING THIS CLAIM FORM

1.  **Please provide below, and on page 8, the Unique ID contained in the email or on the postcard notice that you received.** If you did not receive an email or postcard, or if you cannot locate your email/postcard, write "unavailable."



| UNIQUE ID: | |
|---|---|

2.  If you are a company/business/entity that purchased a BCBS health insurance or administrative services plan from a BCBS company, please complete **Section A**.

3.  If you are an individual who purchased BCBS health insurance directly from a BCBS company (and NOT an employee enrolled through a company/business/entity), please complete **Section B**.

4.  If you are an individual who was enrolled in a BCBS health insurance or administrative services plan through your employer or an individual that otherwise purchased a BCBS health insurance or administrative services plan through another group entity such as a union or member association (but NOT directly from a BCBS company), please complete **Section C**.

**Must be postmarked by**
**mail no later than**
**Month Day, 2021**

BLUE CROSS BLUE SHIELD SETTLEMENT
C/O JND LEGAL ADMINISTRATION
PO BOX 91390
SEATTLE, WA 98111
www.BCBSsettlement.com

| INSTRUCTIONS CONTINUED |
|---|

5.   If you are an individual who purchased BCBS health insurance directly from a BCBS company AND also were enrolled in a BCBS health insurance or administrative services plan through your employer or other entity, you must complete **Sections B and C** of this claim form.

6.   Review **Section D** if you filled out **Section A or Section C**. Otherwise you may skip to **Section E**.

7.   All claimants must complete **Section E**, regarding payment election.

8.   You must sign the claim form certification in **Section F** and mail it to the address below, postmarked by _____, in order for your claim to be considered. Or you can quickly complete this claim form online at www.BCBSsettlement.com.

Blue Cross Blue Shield Settlement
C/O JND Legal Administration
PO Box 91390
Seattle, WA 98111

9.   **ONLY** complete the chart on page 9 if you had more than one health plan or administrative services plan or if you were enrolled in BCBS health insurance or administrative services plans through more than one employer.

10.   Please consult the checklist on page 10 before submitting your claim.

*By submission of this claim form, you are consenting to the disclosure of your information for use by the Claims Administrator and the Settlement Administrator in the claims administration process. The information you provide us on this claim is confidential and will be used solely to contact you and to process your claim. It will not be used for any other purpose.*

*Failure to submit your claim form by [DATE] will subject your claim to rejection and will preclude you from being eligible to receive any money in connection with the Settlement. Do not mail or deliver your claim form to the Court.*

## SECTION A:  BUSINESSES

To be Completed Only on Behalf of Companies/Businesses/Entities That Purchased BCBS Health Insurance or Administrative Services Plans from a BCBS Company.

| 1. FULL NAME OF COMPANY: | |
|---|---|
| 2. PRIMARY HEADQUARTERS MAILING ADDRESS: | Street Address Line 1 |
| | Street Address Line 2 |
| | City / State / Zip |
| 3. COMPANY CONTACT (NAME AND TITLE): | First / M.I. / Last |
| | Title |
| 4. OFFICE PHONE NUMBER: | Ext. |
| 5. EMAIL ADDRESS: | |
| 6. NAME OF CONTRACTED BLUE CROSS OR BLUE SHIELD BRANDED HEALTH PLAN[1]: | |
| 7. BLUE CROSS OR BLUE SHIELD GROUP #: | |
| 8. COVERAGE START AND END DATES: (MM/YYYY) | Start Date / End Date |
| 9. FOR PLANS PURCHASED THROUGH A PURCHASING ENTITY | ☐ Check this box if your company/business/entity acquired its health plan through another purchasing entity, such as a PEO.  Please state the name of the purchasing entity: _____  ☐ Check this box if you are a Professional Employer Organization ("PEO"), Union or Trade Association, or other associational entity that collected payment for, contracted with or purchased a BCBS health insurance or administrative services plan on behalf of your client companies, customers or members directly from a BCBS company. |

[1] If you had multiple health insurance or administrative services plans, complete the chart on page 9 instead of fields 6 through 8.

## SECTION B:  INDIVIDUAL MEMBERS

To be Completed Only by Individuals Who Purchased Health Insurance <u>Directly</u> from a BCBS Company.

| 1. SUBSCRIBER FULL NAME: | First | M.I. | Last | |
|---|---|---|---|---|
| 2. MAILING ADDRESS: | Street Address Line 1 | | | |
| | Street Address Line 2 | | | |
| | City | | State | Zip |
| 3. PHONE NUMBER: | | | | |
| 4. EMAIL ADDRESS: | | | | |
| 5. NAME OF BLUE CROSS OR BLUE SHIELD BRANDED HEALTH PLAN[2]: | | | | |
| 6. BLUE CROSS OR BLUE SHIELD GROUP #: | | | | |
| 7. SUBSCRIBER ID: | | | | |
| 8. COVERAGE START AND END DATES: (MM/YYYY) | Start Date | | End Date | |

---

[2] If you had multiple health insurance plans, complete the chart on page 9 instead of fields 5 through 8.



# SECTION C:  EMPLOYEES

To be Completed Only by Individuals Who Were Enrolled in BCBS Health Insurance or Administrative Services Plans Through Their Employers or Who Otherwise Purchased BCBS Health Insurance or Administrative Services Plans Through Other Group Entities.

| | | | | |
|---|---|---|---|---|
| **1.  SUBSCRIBER FULL NAME:** | First | | M.I. | Last |
| **2.  MAILING ADDRESS:** | Street Address Line 1 | | | |
| | Street Address Line 2 | | | |
| | City | | State | Zip |
| **3.  PHONE NUMBER:** | | | | |
| **4.  EMAIL ADDRESS:** | | | | |
| **5.  NAME OF EMPLOYER THROUGH WHICH YOU WERE PROVIDED BLUE CROSS OR BLUE SHIELD INSURANCE[3]:** | | | | |
| **6.  MAILING ADDRESS OF EMPLOYER:** | | | | |
| **7.  NAME OF BLUE CROSS OR BLUE SHIELD BRANDED HEALTH PLAN[4]:** | | | | |
| **8.  BLUE CROSS OR BLUE SHIELD GROUP #:** | | | | |
| **9.  SUBSCRIBER ID:** | | | | |
| **10. COVERAGE START AND END DATES: (MM/YYYY)** | Start Date | | End Date | |

---

[3] If you purchased BCBS health insurance or administrative services plans through more than one employer, complete the chart on page 9 instead of fields 5 and 6.
[4] If you had multiple health insurance or administrative services plans, complete the chart on page 9 instead of fields 7 through 10.

# SECTION D: EXPLANATION OF EMPLOYER/EMPLOYEE PREMIUM PERCENTAGES



This Section Only Applies to claimants who filled out **Section A** OR **Section C**.

The Settlement provides that payments will be based, in part, on premiums paid for BCBS health insurance or administrative services plans during the relevant periods between 2008 and 2020.

The Settlement further provides default formulas for the Claims Administrator to use when determining what percentage of the premium was paid by an employer/entity and what percentage was contributed by its employees/members.

*100% of premiums for employees who do not file claims are allocated to the claiming employer. When an employee does claim, their premium share is determined through the default formulas, which provide that employees with single coverage are allocated 15% (for fully-insured health insurance) or 18% (for administrative plans) of the total premium paid on their behalf by their employer, and employees with family coverage are allocated 34% (for fully-insured health insurance) or 25% (for administrative plans), with the remainder allocated to the employer. For a full discussion of how these formulas will be used in calculating claims, please refer to the Plan of Distribution on the Settlement Website.*

## DEFAULT OPTION

- **If you accept the Default Option**, you are **NOT** required to provide any additional data or evidence in support of your claim at this time.

- If another claimant's filing affects your claim, you will be provided with an opportunity to respond at a later date.

## ALTERNATIVE OPTION

- **If you would like to apply for an alternative contribution percentage** instead of using the assigned Default Option, you must complete the table on page 7.

- If you select this option, you must also provide data or evidence to support the percentages you list in the table.

- For any time period for which supporting data or evidence is not provided, the above Default Option will be applied.

- Selection of the Alternative Option does not ensure a contribution percentage higher than or equal to the Default Option. Your percentage will be dependent on a review process that includes a review of all materials submitted pertaining to your premium.

 **SECTION D CONTINUED**

**STOP**:  If you want to use the DEFAULT OPTION, **DO NOT** FILL OUT THIS SECTION.

If you would like to use the **ALTERNATIVE OPTION** instead of receiving the Default Option, please state the percentage contribution you believe you contributed  for each year that you were enrolled in a BCBS health insurance or administrative services plan.

| Year | Percentage (%) |
|------|----------------|
| 2008 | |
| 2009 | |
| 2010 | |
| 2011 | |
| 2012 | |
| 2013 | |
| 2014 | |
| 2015 | |
| 2016 | |
| 2017 | |
| 2018 | |
| 2019 | |
| 2020 | |

*REMINDER:  If you choose to apply for an alternative contribution percentage you must supply documentation with this claim form supporting the percentage you claim to have contributed.  If you fill out this chart to apply for an alternative contribution percentage without providing additional documentation, the above Default Option will be applied to your claim.*

 **SECTION E: PAYMENT ELECTION**

Please let us know how you would like to receive your settlement payment if your claim is deemed valid. **You may only check one box below**.

*Final determinations of claim amounts will not be made until after processing by the Claims Administrator is complete. Claims will not be paid if the value is less than $5.00.*

*Claimants who submit valid, approved claims shall receive a pro-rata percentage of the Net Settlement Fund allocated to their type of coverage (fully-insured or self-funded) based upon their estimated proportion of the cumulative total of premiums and/or administrative fees paid by all claimants.*

I would like to receive my payment…

☐ **By Venmo** ➔ Username: _____

☐ **By PayPal** ➔ Email: _____

☐ By Pre-paid Card

☐ By Check

**YOU MUST SIGN AND DATE YOUR CLAIM FORM BELOW IN ORDER TO BE ELIGIBLE TO BE PAID IN THIS SETTLEMENT**

**SECTION F: SIGNATURE**

I affirm under the laws of the United States and the laws of my State of residence that the information supplied in this Claim Form by the undersigned is true and correct to the best of my recollection, and that this form was executed on the date set forth below.

I understand that I may be asked to provide supplemental information to the Claims Administrator and/or Settlement Administrator before my claim will be considered complete and valid.

**UNIQUE ID:**

| Signature: | Dated: |
|---|---|
| Print Name: | Title (if signing on behalf of company/business/entity): |

## INFORMATION FOR ADDITIONAL HEALTH PLANS/EMPLOYERS

To be Completed Only if You Participated in Multiple BCBS Health Insurance or Administrative Services Plans
or if You Were Enrolled in BCBS Health Insurance or Administrative Services Plans Through Multiple Employers/Entities.

*If you require more space than the chart below provides, **you should file online at www.BCBSsettlement.com.***
*Or, you may make multiple copies of this page.*

| Name of Blue Cross or Blue Shield Branded Health Plan | Blue Cross or Blue Shield Group # | Subscriber ID (For Individuals Only) | Name of employer through which you were provided insurance | Mailing address of employer | Coverage Start Date (MM/YYYY) | Coverage End Date (MM/YYYY) |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

 **CHECKLIST**

✓  Did you include your Unique ID on page 1 and page 8?
   Or, if you do not have a Unique ID, did you write
   "unavailable"?

✓  Did you complete all fields in Section A, B or C,
   as applicable?

✓  If you elected the Alternative Option in Section D, did you
   include supporting documentation or information?

✓  Did you complete Section E and tell us how you want to
   receive payment?

✓  Did you sign and date the claim form at Section F?

✓  Did you mail your form prior to the deadline?

*If any of your contact information changes, you must
promptly notify us by emailing info@BCBSsettlement.com.*

*Please note that Settlement benefits will be distributed
after the Settlement is approved by the Court and final.
Please be patient.*

# EXHIBIT E

To: [Class Member Email Address]
From: Blue Cross Blue Shield Claims Administrator (Notice@BCBSsettlement.com)
Subject: Blue Cross Blue Shield Settlement Notice

Dear [Class Member Name]:



# If you purchased or were enrolled in a Blue Cross or Blue Shield health insurance or administrative services plan between 2008 and 2020, a $2.67 billion Settlement may affect your rights.

| YOUR UNIQUE ID: | |
|---|---|
| **PLEASE SAVE THIS NUMBER TO FILE A CLAIM** | |

*Para una notificación en español, visite www.BCBSsettlement.com/espanol*

You are not being sued. A federal court authorized this notice to you. It affects your rights. Please read it carefully.

On DATE, 2020, the Honorable R. David Proctor of the U.S. District Court for the Northern District of Alabama granted preliminary approval of this class action Settlement. The Court directed the parties to send this notice. Blue Cross and/or Blue Shield's records show that you may be a Settlement Class Member. You may be eligible to receive **a payment** from the Settlement in the *In re: Blue Cross Blue Shield Antitrust Litigation MDL 2406*, N.D. Ala. Master File No. 2:13-cv-20000-RDP.

Please visit www.BCBSsettlement.com for more information.

## What is the lawsuit about?

Plaintiffs claim that the Blue Cross Blue Shield Association and Settling Individual Blue Plans (collectively, "Settling Defendants") violated antitrust laws by entering into an agreement not to compete with each other and to limit competition among themselves in selling health insurance and administrative services for health insurance. Settling Defendants deny all claims.  The Settling Defendants have asserted that their conduct results in lower healthcare costs and greater access to care for their customers.  The Court has not decided who is right.

## Who Is affected?

You may be eligible to receive payment if you are an **Individual**, **Insured Group** (and their employees) or **Self-Funded Account** (and their employees) that purchased or were enrolled in a Blue Cross or Blue Shield health insurance or administrative services plan during one of the two Settlement Class Periods. Government accounts are excluded from the Class.

The Settlement Class Period for **Individuals** and **Insured Groups** is from February 7, 2008, through October 16, 2020.  The Settlement Class Period for **Self-Funded Accounts** is from September 1, 2015 through October 16, 2020.  Dependents, beneficiaries (including minors), and non-employees are **NOT** eligible to receive payment.

All **Individuals**, **Insured Groups**, and **Self-Funded Accounts** that purchased or were enrolled in a Blue Cross or Blue Shield health insurance or administrative services plan during the applicable Class Period will also benefit from the parts of the Settlement requiring Settling Defendants to change certain of their practices that were alleged to be anticompetitive. Dependents, beneficiaries (including minors), and non-employees will benefit from this part of the Settlement.

For more details about who is affected visit www.BCBSsettlement.com.

## What can you get from the Settlement?

Class Members who submit valid claims may receive a cash payment from the Net Settlement Fund. The Net Settlement Fund is estimated to be approximately $1.9 billion. This is after deducting attorneys' fees, administration expenses and other costs from the $2.67 billion Settlement Fund. For more details on the Plan of Distribution, read the Long Form Notice available at www.BCBSsettlement.com. You can also call (888) 681-1142. Settling Defendants also agreed to make changes in the way they do business to increase the opportunities for competition in the market for health insurance.

To unsubscribe from this list, please click on the following link: Unsubscribe

## How do you get a payment?

You must submit a valid claim online at www.BCBSsettlement.com or postmarked by mail no later than [**Month Day, Year**]. Claim Forms are available at www.BCBSsettlement.com or may be requested by calling (888) 681-1142.

**FILE A CLAIM**

## What are your other options?

If you do not want to be legally bound by the Settlement, you may send a request for exclusion ("opt out"). You will receive no money, but you will keep your right to sue Settling Defendants for the claims in this case. If you do not exclude yourself, you may object to the Settlement. You will still be bound by the Settlement if your objection is rejected. For details on how to opt out or object, read the Long Form Notice available at www.BCBSsettlement.com.  You can also call (888) 681-1142.

Opt outs and objections must be postmarked by **Month x, 202x**. The Court will hold a Fairness Hearing on [Month Day, Year] at [Time], to consider whether the Settlement is fair, reasonable, and adequate. The Court will also decide whether to approve attorneys' fees and expenses up to $667.5 million and $101 million for additional costs and service awards, which will be deducted from the $2.67 billion Settlement Fund. You may ask to appear at the Fairness Hearing, on your own behalf or through counsel, but you don't have to do so.

**■■■■   Please Do Not Contact The Court Regarding This Notice.   ■■■■**

## Questions?

 Visit www.BCBSsettlement.com, or email info@BCBSsettlement.com,

 call (888) 681-1142, or

 write *Blue Cross Blue Shield Settlement* c/o JND Legal Administration, P.O. Box 91390, Seattle, WA 98111.

To unsubscribe from this list, please click on the following link: Unsubscribe

# EXHIBIT F

*A federal court authorized this Notice. This is not a solicitation from a lawyer.*



**If you purchased or were enrolled in a Blue Cross or Blue Shield health insurance or administrative services plan between 2008 and 2020, a $2.67 billion Settlement may affect your rights**.

*Para una notificación en español, visite www.BCBSsettlement.com/espanol*

**Questions?  Call (888) 681-1142 or Visit www.BCBSsettlement.com**

*Blue Cross Blue Shield Settlement*
c/o JND Legal Administration
P.O. BOX 91390
Seattle, WA 98111

Class Member Name
Class Member Address
Class Member City/State/Zip



**YOUR UNIQUE ID:**

**PLEASE SAVE THIS NUMBER TO FILE A CLAIM**

### What is this notice?

On DATE, 2020, the Honorable R. David Proctor of the U.S. District Court for the Northern District of Alabama granted preliminary approval of this class action Settlement.  The Court directed the parties to send this notice. Blue Cross and/or Blue Shield's records show that you may be a Settlement Class Member. You may be eligible to receive **a payment** from the Settlement in the *In re: Blue Cross Blue Shield Antitrust Litigation MDL 2406*, N.D. Ala. Master File No. 2:13-cv-20000-RDP.

### What is the lawsuit about?

Plaintiffs claim that the Blue Cross Blue Shield Association and Settling Individual Blue Plans (collectively, "Settling Defendants") violated antitrust laws by entering into an agreement not to compete with each other and to limit competition among themselves in selling health insurance and administrative services for health insurance. Settling Defendants deny all claims.  The Settling Defendants have asserted that their conduct results in lower healthcare costs and greater access to care for their customers.  The Court has not decided who is right.

### Who is affected?

You may be eligible to receive payment if you are an **Individual**, **Insured Group** (and their employees) or **Self-Funded Account** (and their employees) that purchased or were enrolled in a Blue Cross or Blue Shield health insurance or administrative services plan during one of the two Settlement Class Periods. Government accounts are excluded from the Class.

The Settlement Class Period for **Individuals** and **Insured Groups** is from February 7, 2008, through October 16, 2020. The Settlement Class Period for **Self-Funded Accounts** is from September 1, 2015 through October 16, 2020. Dependents, beneficiaries (including minors), and non-employees are **NOT** eligible to receive payment.

All **Individuals**, **Insured Groups**, and **Self-Funded Accounts** that purchased or were enrolled in a Blue Cross or Blue Shield health insurance or administrative services plan during the applicable Class Period will also benefit from the parts of the Settlement requiring Settling Defendants to change certain of their practices that were alleged to be anticompetitive. Dependents, beneficiaries (including minors), and non-employees will benefit from this part of the Settlement.

### What can you get from the Settlement?

Class Members who submit valid claims may receive a cash payment from the Net Settlement Fund. The Net Settlement Fund is estimated to be approximately $1.9 billion.  This is after deducting attorneys' fees, administration expenses and other costs from the $2.67 billion Settlement Fund. For more details on the Plan of Distribution, read the Long Form Notice available at www.BCBSsettlement.com. You can also call (888) 681-1142. Settling Defendants also agreed to make changes in the way they do business to increase the opportunities for competition in the market for health insurance.

### How do you get a payment?

You must submit a valid claim online at www.BCBSsettlement.com or postmarked by mail no later than [Month Day, Year]. Claim Forms are available at www.BCBSsettlement.com or may be requested by calling (888) 681-1142.

### What are your other options?

If you do not want to be legally bound by the Settlement, you may send a request for exclusion ("opt out"). You will not receive any money, but you will keep your right to sue Settling Defendants for the claims in this case. If you do not exclude yourself, you may object to the Settlement. You will still be bound by the Settlement if your objection is rejected. For details on how to opt out or object, read the Long Form Notice available at www.BCBSsettlement.com.

Opt outs and objections must be postmarked by Month x, 202x. The Court will hold a Fairness Hearing to consider whether the Settlement is fair, reasonable, and adequate. The Fairness Hearing is on [Month Day, Year] at [Time]. The Court will also decide whether to approve attorneys' fees and expenses up to $667.5 million and $101 million for additional costs and service awards.  These amounts will be deducted from the $2.67 billion Settlement Fund. You may ask to attend the Fairness Hearing, on your own or through counsel, but you do not have to do so.

━━━━━   **Please Do Not Contact The Court Regarding This Notice.**   ━━━━━

**QUESTIONS? Visit www.BCBSsettlement.com, email info@BCBSsettlement.com, call (888) 681-1142, or write *Blue Cross Blue Shield Settlement* c/o JND Legal Administration, P.O. Box 91390, Seattle, WA 98111**.



*Carefully separate this Address Change Form at the perforation*

Name: _____

Current Address: _____

_____

_____

**Address Change Form**
To make sure your information remains up-to-date in our records, please confirm your address by filling in the above information and depositing this postcard in the U.S. Mail.

Place
Stamp
Here

JND Legal Administration
Attn: Blue Cross Blue Shield Settlement
P.O. BOX 91390
Seattle, WA 98111

# EXHIBIT G

# Facebook Ad Example







# Banner Ad Examples







# EXHIBIT H

**LEGAL NOTICE**



# If you purchased or were enrolled in a Blue Cross or Blue Shield health insurance or administrative services plan between 2008 and 2020, a $2.67 billion Settlement may affect your rights.

*Para una notificación en español, visite www.BCBSsettlement.com/espanol*

On [DATE], 2020, the Honorable R. David Proctor of the U.S. District Court for the Northern District of Alabama granted preliminary approval of the Settlement in the *In re: Blue Cross Blue Shield Antitrust Litigation MDL 2406*, N.D. Ala. Master File No. 2:13-cv-20000-RDP.

Please visit www.BCBSsettlement.com for more information.

## What is the lawsuit about?

Plaintiffs claim that the Blue Cross Blue Shield Association and Settling Individual Blue Plans (collectively, "Settling Defendants") violated antitrust laws by entering into an agreement not to compete with each other and to limit competition among themselves in selling health insurance and administrative services for health insurance. Settling Defendants deny all claims. The Settling Defendants have asserted that their conduct results in lower healthcare costs and greater access to care for their customers. The Court has not decided who is right.

## Who is affected?

You may be eligible to receive payment if you are an **Individual**, **Insured Group** (and their employees) or **Self Funded Account** (and their employees) that purchased or were enrolled in a Blue Cross or Blue Shield health insurance or administrative services plan during one of the two Settlement Class Periods. Government accounts are excluded from the Class.

The Settlement Class Period for **Individuals** and **Insured Groups** is from February 7, 2008, through October 16, 2020. The Settlement Class Period for **Self-Funded Accounts** is from September 1, 2015 through October 16, 2020. Dependents, beneficiaries (including minors), and non-employees are **NOT** eligible to receive payment.

All **Individuals**, **Insured Groups**, and **Self-Funded Accounts** that purchased or were enrolled in a Blue Cross or Blue Shield health insurance or administrative services plan during the applicable Class Period will also benefit from the parts of the Settlement requiring Settling Defendants to change certain of their practices that were alleged to be anticompetitive. Dependents, beneficiaries (including minors), and non-employees will benefit from this part of the Settlement.

For more details about who is affected visit www.BCBSsettlement.com.

## What can you get from the Settlement?

Class Members who submit valid claims may receive a cash payment from the Net Settlement Fund. The Net Settlement Fund is estimated to be approximately $1.9 billion. This is after deducting attorneys' fees, administration expenses and other costs from the $2.67 billion Settlement Fund. For more details on the Plan of Distribution, read the Long Form Notice available at www.BCBSsettlement.com. You can also call (888) 681-1142. Settling Defendants also agreed to make changes in the way they do business to increase the opportunities for competition in the market for health insurance.

## How do you get a payment?

You must submit a valid claim online at www.BCBSsettlement.com or postmarked by mail no later than [Month Day, Year]. Claim Forms are available at www.BCBSsettlement.com or may be requested by calling (888) 681 1142.

## What are your other options?

If you do not want to be legally bound by the Settlement, you may send a request for exclusion ("opt out"). You will not receive any money, but you will keep your right to sue Settling Defendants for the claims in this case. If you do not exclude yourself, you may object to the Settlement. You will still be bound by the Settlement if your objection is rejected. For details on how to opt out or object, read the Long Form Notice available at www.BCBSsettlement.com.

Opt outs and objections must be postmarked by Month x, 202x. The Court will hold a Fairness Hearing to consider whether the Settlement is fair, reasonable, and adequate. The Fairness Hearing is on [Month Day, Year] at [Time]. The Court will also decide whether to approve attorneys' fees and expenses up to $667.5 million and $101 million for additional costs and service awards. These amounts will be deducted from the $2.67 billion Settlement Fund. You may ask to attend the Fairness Hearing, on your own or through counsel, but you do not have to do so.

■ **Please Do Not Contact The Court Regarding This Notice.** ■

## Questions?

 Visit www.BCBSsettlement.com, email info@BCBSsettlement.com,

 call (888) 681-1142, or

 write **Blue Cross Blue Shield Settlement** c/o JND Legal Administration, P.O. Box 91390, Seattle, WA 98111.



**www.BCBSsettlement.com**
**(888) 681-1142**

# EXHIBIT I

# LinkedIn Examples

Promoted ...

 **Blue Cross Blue Shield®**
File a claim for cash benefits in the $2.67 billion subscriber settlement ⟩

 **Invitation from LinkedIn**
Place ads on LinkedIn. Acquire new customers for your business. Try it now.

 **Invitation from LinkedIn**
Place ads on LinkedIn. Acquire new customers for your business. Try it now.

Promoted ...

 **$2.67 Billion Settlement**
Submit a cash claim in the Blue Cross Blue Shield® subscriber settlement ⟩

 **Invitation from LinkedIn**
Place ads on LinkedIn. Acquire new customers for your business. Try it now.

 **Invitation from LinkedIn**
Place ads on LinkedIn. Acquire new customers for your business. Try it now.

Promoted ...

 **Blue Cross Blue Shield®**
Learn about the Blue Cross Blue Shield® $2.67 billion subscriber settlement ⟩

 **Invitation from LinkedIn**
Place ads on LinkedIn. Acquire new customers for your business. Try it now.

 **Invitation from LinkedIn**
Place ads on LinkedIn. Acquire new customers for your business. Try it now.

## Entity Banner Examples

 

# EXHIBIT J

# Search Ad Examples







# EXHIBIT K



# If you purchased or were enrolled in a Blue Cross or Blue Shield health insurance or administrative services plan between 2008 and 2020, a $2.67 billion Settlement may affect your rights

*Para una notificación en español, visite www.BCBSsettlement.com/espanol*

Seattle / DATE /

On DATE, 2020, the Honorable R. David Proctor of the U.S. District Court for the Northern District of Alabama granted preliminary approval of the class action Settlement in the *In re: Blue Cross Blue Shield Antitrust Litigation MDL 2406*, N.D. Ala. Master File No. 2:13-cv-20000-RDP.

## What is the lawsuit about?

Plaintiffs claim that the Blue Cross Blue Shield Association and Settling Individual Blue Plans (collectively, "Settling Defendants") violated antitrust laws by illegally entering into an agreement not to compete with each other and to restrict competition among themselves in selling health insurance and administrative services for health insurance. Settling Defendants deny all claims and have asserted that their conduct results in lower health care costs and greater access to care for its customers. The Court has not decided who is right.

## Who is affected?

You may be eligible to receive payment if you are an **Individual**, **Insured Group** (and their employees) or **Self-Funded Account** (and their employees) that purchased or were enrolled in a Blue Cross or Blue Shield health insurance or administrative services plan during one of the two Settlement Class Periods. Government accounts are excluded from the Class.

The Settlement Class Period for **Individuals** and **Insured Groups** is from February 7, 2008 through October 16, 2020. The Settlement Class Period for **Self-Funded Accounts** is from September 1, 2015 through October 16, 2020. Dependents, beneficiaries (including minors), and non-employees are **NOT** eligible to receive payment.

All **Individuals**, **Insured Groups**, and **Self-Funded Accounts** that purchased or were enrolled in a Blue Cross or Blue Shield health insurance or administrative services plan from February 7, 2008 through October 16, 2020 will also benefit from the provisions of the Settlement requiring Settling Defendants to change certain of their practices that were alleged to be anticompetitive. Dependents, beneficiaries (including minors), and non-employees will benefit from this part of the Settlement.

For more details about who is affected visit www.BCBSsettlement.com.

## What can you get from the Settlement?

Class Members who submit valid claims may receive cash benefits from the Net Settlement Fund. That Fund is estimated to be approximately $1.9 billion, after deducting attorneys' fees, administration expenses and other costs from the $2.67 billion Settlement Fund. For more details on the Plan of Distribution, read the Long Form Notice available at www.BCBSsettlement.com. You can also call (888) 681-1142. Settling Defendants also agreed to changes in the way they do business to increase the opportunities for competition in the market for health insurance.

## How do you get a payment?

You must submit a valid claim online at www.BCBSsettlement.com or postmarked by mail no later than [Month Day, Year]. Claim Forms are available at www.BCBSsettlement.com or may be requested by calling (888) 681-1142.

### FILE A CLAIM

## What are your other options?

If you do not want to be legally bound by the Settlement, you may send a request for exclusion ("opt out"). You will receive no money, but you will keep your right to sue Settling Defendants for the claims in this case. If you do not exclude yourself, you may object to the Settlement. You will still be bound by the Settlement if your objection is rejected. For details on how to opt out or object, read the Long Form Notice available at www.BCBSsettlement.com. You can also call (888) 681-1142.

Opt outs and objections must be postmarked by Month x, 202x. The Court will hold a Fairness Hearing on [Month Day, Year] at [Time] to consider whether the Settlement is fair, reasonable, and adequate. The Court will also decide whether to approve attorneys' fees and expenses up to $667.5 million and $101 million for additional costs and service awards, which will be deducted from the $2.67 billion Settlement Fund. You may ask to appear at the Fairness Hearing, on your own behalf or through counsel, but you don't have to do so.

**Please Do Not Contact The Court Regarding This Notice.**

## Questions?

 Visit www.BCBSsettlement.com,
or email info@BCBSsettlement.com,

 call (888) 681-1142, or

 write *Blue Cross Blue Shield Settlement*
c/o JND Legal Administration, P.O. Box 91390,
Seattle, WA 98111.





| TV SPOT | RADIO SPOT |
|---|---|
|  |  |



# EXHIBIT L

# Reminder Banner Ad Examples

**Web Banners**







# Reminder Banner Ad Examples

## Facebook Ads





