# EXHIBIT 1

```
 1                IN THE UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF ALABAMA
 2                         SOUTHERN DIVISION

 3   IN RE:  BLUE CROSS BLUE SHIELD    CASE NO.:  2:13-cv-20000-RDP
     ANTITRUST LITIGATION MDL 2406
 4

 5                       *  *  *  *  *  *  *  *  *  *

 6                    HEARING ON PRELIMINARY APPROVAL OF

 7                      SUBSCRIBER TRACK SETTLEMENT

 8                       *  *  *  *  *  *  *  *  *  *

 9           BEFORE THE HONORABLE R. DAVID PROCTOR, UNITED STATES

10   DISTRICT JUDGE, at Birmingham, Alabama, on Monday, November 17,

11   2020, commencing at 9:07 a.m.

12   APPEARANCES:

13   SPECIAL MASTER:          Edgar C. Gentle III
                              Attorney at Law
14                            GENTLE TURNER SEXTON & HARBISON
                              501 Riverchase Parkway East, Suite 100
15                            Hoover, Alabama  35244

16
     FOR THE PLAINTIFFS:      David Boies
17   (via videoconference)    Swathi Bojedla
                              Warren T. Burns
18                            U. W. Clemon
                              Charles J. Cooper
19                            Gregory L. Davis
                              David J. Guin
20                            Michael David Hausfeld
                              Hamish P. M. Hume
21                            William A. Isaacson
                              Megan Jones
22                            Edith M. Kallas
                              Barry A. Ragsdale
23                            Cyril V. Smith III
                              Joe R. Whatley Jr.
24

25
```

```
 1  APPEARANCES, Continued:

 2  FOR THE DEFENDANTS:        Carl Burkhalter
    (via videoconference)      Evan Chesler
 3                             Karin DeMasi
                               E. Desmond Hogan
 4                             Mark Montgomery Hogewood
                               Zachary D. Holmstead
 5                             Craig A. Hoover
                               John M. Johnson
 6                             Daniel E. Laytin
                               Scott Nehs
 7                             Kathleen Taylor Sooy
                               Kimberly R. West
 8                             Helen E. Witt
                               David J. Zott
 9
    ALSO PRESENT:              David M. Benck
10  (via videoconference)      R. Christopher Cowan
                               Samuel Issacharoff
11                             Jennifer Keough

12  ALSO PRESENT:              Katherine Harbison

13         Proceedings reported stenographically via remote
           videoconference; transcript produced by computer.
14
                         * * * * * * * * * *
15

16      (The following proceedings were heard before the Honorable

17       R. David Proctor, United States District Judge, at

18       Birmingham, Alabama, on Monday, November 17, 2020,

19       commencing at 9:07 a.m.:)

20           THE COURT:  All right.  Good morning, everyone.

21           COUNSEL IN UNISON:  Good morning, Judge.

22           COUNSEL IN UNISON:  Good morning, Your Honor.

23           THE COURT:  We're here in In Re:  Blue Cross Blue

24  Shield Antitrust Litigation, MDL Number 2406.

25           We're here for purposes of a hearing on a motion to
```

1  that as of, oh, 16, 17 days ago, Ms. Sheridan from California
2  and Mr. Watts from Texas were class representatives.  They were
3  participating or wanting to participate.  And when they couldn't
4  get their answers they wanted to satisfy themselves, they were
5  just simply dropped.
6         And, you know, whether it's a standing issue, it is of
7  some concern.  And it certainly raises eyebrows that if class
8  counsel doesn't like what it sees, he can just simply eliminate
9  them.  And that raises some concern on this end.  Certainly
10 that --
11        THE COURT:  Well, let me ask you this, Mr. Cowan.
12 Don't -- class counsel owes duties to the class, not necessarily
13 to a particular representative.  Would you disagree with that?
14        MR. COWAN:  I do not disagree with that.  But to the
15 extent that a class representative also has duties, in their
16 opinion, to the state that they represent, you know, I think
17 that's something that the Court needs to be aware of.
18        THE COURT:  Well, I'm not saying you shouldn't have
19 brought it to my attention, but, you know, speaking in terms of
20 dropped is not necessarily helpful to me.  What would be helpful
21 to me is explaining to me why the current representatives, the
22 96 percent of the representatives that are going forward with
23 this, aren't adequately representing the class that they and
24 counsel owe duties to, not to other class reps.
25        MR. COWAN:  Fair enough.  Your Honor, you know, I was

1  surprised at the opening remarks by the co-lead counsels.  There
2  was a lot of thank yous to counsel, help from 75 different
3  lawyers or so.  I never heard one time an acknowledgment by any
4  class rep of what they did or how they should be thanked.  And
5  that is concerning because I think we sometimes see class
6  actions in these large cases driven by lawyers, and we forget
7  that the clients want to participate and might be interested in
8  participating and can add some value.
9          And I think that's very important that the class -- the
10 class reps are trying to do their job.  They want to.  They are
11 here asking me to get some information for them to make the
12 decisions that they haven't been able to make over the last few
13 months when they were notified of the settlement.  There was 150
14 mediations, we understand, and not once did they get a call or
15 an update, even though we had provided their personal numbers,
16 not my number but their personal phone numbers, about wanting to
17 hear about the updates, even though they couldn't be there in
18 person.
19         Anyway, these particular class reps asked for some
20 information.  We believe -- I believe -- I think it's uniform
21 across the nation that the client's file, even if it's
22 maintained in its lawyer's office, is the client's property.
23 And both the end product documents as well as the work product
24 materials, the creation of which the clients have paid for, is
25 theirs.

1       And they asked for what we thought would be kind of a
2  quick study of the state of the litigation.  And one of the
3  things was the -- what we called the mediation file.  We later
4  learned there was a mediation presentation, I think, given to
5  Mr. Burns to get him up to speed.  And the clients couldn't get
6  that.  And essentially, they were told today, we reviewed a lot
7  of documents, we spent a ton of money, we spent a lot of time,
8  we've hired the best in the nation, and you should agree with
9  the settlement.  And they just kind of had questions.
10      And so that's really what we're here for.  And I
11 notice -- I hope the Court notices the title of the pleading
12 that was filed.  It was just a response.  It wasn't an
13 objection, as has been noted.
14      But these class counsels do have duties.  And Federal
15 Rule 23 gives them duties that the Court needs to appreciate.
16 And I haven't heard anything by the 67 that did consent how
17 quickly they consented or what they needed.  I understand there
18 were some others that were not before the Court or were dropped
19 as well, and I don't know why.  But I think that's something
20 that's -- that's interesting.
21      The -- these clients would like to participate and
22 understand what they're agreeing to and what they're asking
23 their state to agree to.  We understand nationwide class actions
24 exist, but there was some reason that these class reps filed
25 state by state.  There were a few national class action

```
 1  complaints filed, but there were also quite a few individual
 2  states.  And I think there was some maneuvering of procedural
 3  issues early on in this litigation to have individual states
 4  represented by citizens of that state and not just the national
 5  cases that were filed.  So I think that's important.
 6          THE COURT:  Is it your position that we need to have
 7  subclasses for each market?
 8          MR. COWAN:  You know, Your Honor, part of the problem
 9  is I don't have a lot of information, nor do they, to, you know,
10  say, hey, in detail, Judge, this is what it would take to solve
11  our objections or whatnot.
12          I don't think so.  I don't think we need a
13  state-by-state subclass.  I do think there are questions that
14  have been raised, as the Court predicted, about this filed-rate
15  group of states.  I guess there are 11 of those, and there are
16  16 unregulated.  That raises some concerns, particularly the
17  language that we read in the --
18          THE COURT:  Well, Mr. Boies has staked out a
19  position -- and he's done it consistently throughout the case --
20  that the Filed Rate Doctrine would have limited utility to the
21  defendants because, one, you'd have to make a determination
22  whether the defendants could even assert the Filed Rate Doctrine
23  defense as to those who filed rates, but it certainly would not
24  be a defense that would vicariously transfer over to
25  coconspirators who did not enter a market, who then, thereby --
```

```
 1  looking at seven to 14 percent of what might be maximum recovery
 2  depending upon which model we use.  And there's plenty of case
 3  law in this circuit saying that that's well within the range of
 4  a settlement of this type where the uncertainties, the expense,
 5  the delay of litigation kicks in and starts affecting people.  I
 6  daresay -- I'll turn 60 next month.  Unless I decided to be
 7  Jimmy Hancock and not U. W. Clemon, this case would outlive me.
 8              MR. COWAN:  It could.
 9              THE COURT:  Yes.
10              MS. JONES:  Eight years and counting, Your Honor.
11              THE COURT:  So I guess that's what I'm -- what do
12  you -- I know you would like to see some mediation position
13  statement.  I'm going to leave it to subscriber counsel to work
14  with you on that.
15              MR. COWAN:  Yes.
16              THE COURT:  But it just seems to me that isn't there
17  enough here, after eight years of litigation, in the public
18  record to help us assess just the difficulty of protracted
19  litigation and the uncertainty of how things might go?
20              MR. COWAN:  There certainly is, Your Honor.  I'm not
21  saying that nobody's worked hard enough and nobody's put in the
22  time and effort.  My clients were asked -- these clients asked
23  for consent.  They weren't able to give it.  I wanted the Court
24  to be aware of that.  They were -- been dropped from -- from the
25  proceedings.  Their individual cases are subject to be dismissed
```

1  thought the mediation statements would be kind of the best thing
2  that kept us going.  And it doesn't necessarily need to be every
3  letter between the mediator and the parties and that kind of
4  thing, because I know quite a bit of what was mediated we don't
5  seem to have a problem with, the form of the notice and the
6  timing and, you know, all that, the claims administrator and all
7  the mechanical workings of it.  At some point --
8         THE COURT:  Would it be fair to say that your concerns
9  largely boil down to the amount of money that's in the
10 settlement, not so much the structural relief, but the monetary
11 settlement?
12        MR. COWAN:  So the mechanics of it are -- nobody is
13 complaining about, well, they're using the wrong claims
14 administrator or I don't like the 1-800 number they're using or
15 anything like that.
16        So yes, Judge, it seems to boil down to three -- I
17 think you called them buckets earlier.  One certainly is the
18 amount.  I think these claims reps want to get a better idea of
19 what's going on with this amount of money that's been -- in the
20 pleadings, it does say assets in excess of legally required
21 reserves to pay claims of, in California, 2.2 billion.  So my --
22 Ms. Sheridan has a question about that, just California alone.
23 And she has questions about -- while Mr. Boies said we need to
24 prove our damages, our antitrust damages, maybe there are some
25 other damages that are being overlooked here under RICO or state

1  law, consumer protection or insurance code violations.
2          And I just need to help them -- these clients get a
3  grasp of what's at play.  At the same time, though, they're
4  having a concern, well, we're giving this very broad release,
5  giving up a lot of stuff, but this case only seems to be about
6  the Sherman Act, according to the three causes of action in the
7  last pleading.
8          So I -- you know, it's hard to say exactly what it is.
9  One of the big things, obviously, is the money.  But I'm not
10 sitting here saying, well, that's not enough.  We've seen the
11 reports that say it is enough, and I have assured them of that.
12 They just would like the play by play, how we got there, like I
13 said, not just the final score.
14         The other thing is what relief is available and why
15 we're giving up RICO or state consumer law protections or
16 insurance code violations.
17         The other thing is the difference between the regulated
18 and nonregulated and how that played out.  And it sounds like it
19 may not be as big of an issue.  And I can share that with them a
20 little bit more, but that is certainly one of the things.
21         THE COURT:  Well, and I know you're somewhat limited --
22         MR. COWAN:  So I --
23         THE COURT:  -- with privilege issues, but I don't think
24 this is an unfair question.  Have your clients raised any
25 concerns about the structural relief?  Put aside the money