FILED

2021 May-28  PM 06:41
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **IN RE BLUE CROSS BLUE SHIELD** | **:** | |
| **ANTITRUST LITIGATION** | **:** | **Master File 2:13-cv-20000-RDP** |
| **MDL 2406** | **:** | |
| | **:** | |
| | **:** | |
| | **:** | **This document relates to** |
| | **:** | **Subscriber Track cases** |

**JOINT DECLARATION OF CO-LEAD COUNSEL**
**IN SUPPORT OF SUBSCRIBER COUNSEL'S MOTION FOR APPROVAL OF**
**THEIR FEE AND EXPENSE APPLICATION**

David Boies and Michael D. Hausfeld declare:

1.      David Boies is an attorney licensed to practice law, and is Chairman of the law firm Boies Schiller Flexner LLP, whose resume is attached as Exhibit A.

2.      Michael Hausfeld is an attorney licensed to practice law, and is Chairman of the law firm Hausfeld LLP, whose resume is attached as Exhibit B.

3.      We have personal knowledge of the facts set forth herein, and if called and sworn as witnesses would so testify.

4.      We respectfully submit this Declaration in support of Subscriber Counsel's Memorandum of Law in Support of Motion for Approval of Their Fee and Expense Application. The legal authorities supporting the requested fees and expenses are set forth in the Memorandum of Law accompanying the Fee Motion. Since the inception of this case, our efforts were focused on advancing the litigation to bring about the most successful outcome for the class, whether through settlement or trial, and this Declaration attempts to summarize the totality of that work done by counsel for the Subscriber Plaintiffs.

5.      In its April 16, 2013 Case Management Order No. 2, the Court appointed the two of us Interim Co-Lead Counsel for the putative Subscriber Plaintiff Class in the pending actions (ECF No. 61). Prior to the Court's leadership order, we were actively involved in investigating, preparing, and presenting the claims asserted in these actions on behalf of Subscriber Plaintiffs including filing the first case in this action. Subsequent to the Court's Order we have been actively involved in prosecuting and resolving those claims. From April 26, 2013 through August 15, 2020, the two of us personally devoted more than 5,500 hours to prosecuting and resolving these claims.

6.      We (David Boies and Michael Hausfeld) directed the strategy of this litigation. We developed the theory of the case, personally researched and analyzed the claims, made the decision

1

to bring the first complaint, and chose to devote substantial firm resources to the case. We oversaw the motion to dismiss briefing and argued the motion to dismiss, resulting in a favorable decision for the Subscriber Class. We argued at each substantive motion hearing—including at summary judgment on the filed rate doctrine and on the standard of review—and we made two full days of presentation to the Court at Economics Day I and II. In fact, we participated in more than 30 hearings and status conferences in front of the Court, nearly all of which required in-person attendance in Birmingham, AL. We took and defended some of the key depositions in the case, including eliciting 30(b)(6) testimony from BCBSA and taking the only expert deposition of Defendants' expert, Dr. Kevin Murphy. We were the principal counsel responsible for working with the Subscriber Plaintiffs' testifying expert Dr. Ariel Pakes. We attended every in-person and telephonic mediation session and were the primary architects of the settlement agreement (ECF No. 2610-2, hereinafter the "Settlement" or "Settlement Agreement"), particularly the injunctive relief. We also successfully led the presentation arguing for preliminary approval of the Settlement and will do the same for final approval. In sum, we directed this hard-fought litigation to a successful resolution, and in doing so we fulfilled the duties and expectations laid out in the Court's order appointing us as Co-Lead Counsel.

7.      Further, we oversaw the litigation and settlement of this action in an efficient and streamlined manner to make sure duplicate work was avoided, with the goal of effective collaboration. We worked closely with hundreds of talented lawyers to use their skills and experience efficiently to prosecute this intensive case.

8.      Like other counsel for Subscriber Plaintiffs involved in this case, we took on this representation on a purely contingent basis. By pursuing this litigation and devoting the significant

resources that this litigation required as set forth below, our firms necessarily had to forego developing and working on other cases available to us.

9.    We believe that the proposed Settlement achieved in this case is exceptional and is the product of arduous and protracted litigation, spanning over eight years, which is detailed below. This Declaration sets forth in detail how Subscriber Plaintiffs were able to overcome extraordinary hurdles and great risk to achieve this outstanding result on behalf of the Class.

**Background**

10.    The Subscriber Actions[1] are the result of an extensive investigation of competitive conditions in healthcare insurance markets undertaken by our firms and other counsel for Subscriber Plaintiffs (together, "Subscriber Counsel") in 2011 and 2012. No government investigation preceded the filing of this civil action. It is the direct result of private enforcement of the antitrust laws, and the work of private attorneys' investigation. That investigation convinced Subscriber Counsel of seven propositions:

(i)    The dominant supplier of health insurance nationally and in a number of state and regional markets was the Blue Cross Blue Shield system ("BCBS").

(ii)    BCBS was a combination of several dozen independent insurance companies, a number of which were individually among the largest suppliers of health insurance in the country, and operating through Blue Cross Blue Shield Association ("BCBSA").

---

[1] Unless otherwise defined in this Declaration, capitalized terms have the meaning ascribed to them in the Settlement Agreement.

(iii)    The independent insurance companies who comprised BCBS agreed to cooperate in competing with non-BCBS health insurance companies and to restrain competition with each other.

(iv)    As part of their alleged agreement not to compete with each other, the BCBS companies agreed to divide the country into Exclusive Service Areas ("ESAs"), agreed which company or companies could compete in each ESA, and agreed that other BCBS companies would not enter or compete in such ESAs using a Blue Cross/Blue Shield trademark without the permission of a BCBS company to whom the ESA had been assigned.

(v)    As part of their agreement not to compete with each other, the BCBS companies also agreed that, for large accounts with employees in multiple ESAs ("National Accounts"), only the BCBS company in whose ESA the National Account had its headquarters would be allowed to bid for that National Account's business.

(vi)    Originally, the restraint on competition among and between BCBS companies only related to insurance policies offered under a Blue Cross/Blue Shield trademark. However, in or about 2005, the BCBS companies agreed to effectively diminish competition between them even with respect to health insurance policies offered under non-Blue trademarks.

(vii)    We concluded that there was evidence that these restraints on competition, together with related ancillary restraints, substantially and unreasonably divided markets, restricted entry, reduced competition, and deprived consumers of the better products and lower prices that competition fosters.

11.     Subscriber Counsel believed that the aggregate of agreements of the BCBS companies to restrict competition violated Section 1 of the Sherman Antitrust Act, including under United States Supreme Court cases *United States v. Sealy, Inc.*, 388 U.S. 350 (1967) and *United States v. Topco Associates, Inc.*, 405 U.S. 596 (1972). However, Subscriber Counsel fully understood the massive effort that litigating this case would entail: a battery of expert consultants and witnesses would have to be engaged, voluminous document and deposition discovery would need to be conducted, and the parties would need to engage in protracted motion practice.

### Risks of Litigation

12.     Subscriber Counsel recognized that any attempt to bring a private lawsuit to remedy this violation would require long, expensive litigation with serious risks of failure. The challenges that Subscriber Counsel knew they would face in litigating this case included, but were by no means limited to, the following:

(i)     Although the Department of Justice and Federal Trade Commission had been made aware of the BCBS agreements, neither enforcement agency had ever taken any action. Subscriber Counsel were aware that Defendants would argue that the enforcement agencies' failure to act indicated that they saw no violation, and that the agencies' judgment should not be second-guessed by a court or jury. Subscriber Counsel were also aware that courts in previous antitrust actions rarely, if ever, ordered injunctive relief substantially restructuring an industry.

(ii)     Subscriber Counsel were also aware that Defendants would argue that the challenged restraints had a pro-competitive rationale in that they were reasonably ancillary to their co-operative venture -- a venture that permitted individual BCBS companies to compete with national competitors such as Aetna and United Health.

Subscriber Counsel were aware that Defendants would seek to distinguish *Sealy* and *Topco* and that in any event those precedents were 50 years old and had been under a sustained attack by academics and by some lower courts since the 1970s. *See* Robert H. Bork, *The Antitrust Paradox* 446-49 (1978); Richard A. Posner, *Antitrust Law: An Economic Perspective* 166 (1976); Herbert Hovenkamp, *Federal Antitrust Policy: The Law of Competition and its Practice § 5.2* (5th Ed. 2016)*; Rothery Storage & Van Co. v. Atlas Van Lines, Inc.*, 792 F.2d 210 (D.C. Cir. 1986) (Bork, J.); *General Leaseways, Inc. v. National Truck Leasing Ass'n*, 744 F.2d 588 (7th Cir. 1984) (Posner, J.).

(iii)      Subscriber Counsel were also aware that Defendants would argue that BCBS was a single enterprise to which Section 1 of the Sherman Act was inapplicable.

(iv)      Subscriber Counsel were also aware that with respect to restrictions on BCBS companies' competition, Defendants would argue that the BCBS Association as the holder of the Blue Cross and Blue Shield trademarks had the right to restrict the geographical areas in which a licensee was permitted to use the trademarks.  The long and complex evolution of the BCBS system, the history of the Blue Cross and Blue Shield trademarks and of the relationship between companies operating under those marks and the large number of parties involved all contributed to the risk that the Subscriber Actions would not succeed.

(v)      Subscriber Counsel were aware that because any individual Subscriber's damages would be very small compared to the expense of litigation, any vindication of the Subscriber Plaintiffs' rights would have to come through a class action—and

that Defendants would argue that the size and diversity of the putative class barred class certification.

(vi)     With respect to damages, Subscriber Counsel were aware that Defendants would argue that there was no reliable way to prove how much, if any, or how quickly entry would have occurred in the absence of restraints; that there was no reliable way to prove how much, if any, price reduction would have resulted from any entry that did occur, and for which subscribers; that the absence of entry by non-BCBS insurance suppliers demonstrated there was no incentive to enter; and that, in any event, the filed rate doctrine precluded any damage award.

(vii)     Subscriber Counsel were also aware that the BCBS companies had tens of billions of dollars of profits and reserves with which they would defend their practices, and every incentive to aggressively fight to maintain practices that they believed were vital to their network and profitability.

We therefore understood that there was a very real possibility that we would never be able to recoup our investment of time and money in this case.

13.     We also understood that even if we were ultimately able to recoup our investment of time and money, there would necessarily be a delay (potentially of many years, which we accurately predicted) between the time these expenditures were made by Subscriber Counsel and the time that we were paid.

14.     We also knew that Defendants would devote significant resources to this litigation, including hiring aggressive and talented attorneys who would mount a tenacious defense to this litigation that challenged key aspects of Defendants' businesses.

15.     Given our trial experience, we also realized the highly complicated nature of the alleged causes of action at issue here. Given the factual complexity of the underlying issues, at trial, there would be extensive detailed testimony from numerous sources, as well as competing expert testimony relating to damages resulting in a "battle of the experts." Despite confidence in our ability to explain complicated issues to a jury, there was a not insubstantial risk of jury confusion if trial was reached.

16.     Moreover, even if we were successful in obtaining a class-wide judgment at trial, Defendants certainly would have pursued post-trial motions to overturn the verdict and filed an appeal. Defendants are well-funded and represented by experienced counsel who would be expected to continue to litigate a zealous defense to the class's claims for relief not only before and during the trial on the merits, but afterwards through post-trial motions and appeals.

17.     Despite our recognition of these risks and uncertainty, in February 2012, our two firms filed the initial Subscriber action, *Cerven et al. v. BCBS-NC et al.*, Case No. 5:12-cv-17 (W.D. N.C.). In a detailed 61-page complaint, the *Cerven* plaintiffs alleged a longstanding and ongoing market allocation conspiracy between BCBS-NC and thirty-seven other BCBSA member plans in violation of the Sherman Act. The *Cerven* plaintiffs sought recovery of damages for inflated premiums in North Carolina charged as a result of the conspiracy, as well as injunctive relief.

18.     After the *Cerven* case was filed, additional cases were filed in Tennessee and Alabama, triggering an MDL petition for consolidation of the cases. On December 12, 2012, all pending Subscriber Actions were consolidated by the Judicial Panel on Multidistrict Litigation in the Northern District of Alabama, along with a related set of Provider cases alleging that the same

restraints that the Subscriber Plaintiffs challenged also damaged Providers. By the time of the transfer in January 2013, there were 23 cases pending in 14 district courts around the country.

## Case Organization and Leadership

19.     On January 9, 2013, the Court appointed Edgar C. Gentle as Special Master. The Court also ordered the parties to reimburse Mr. Gentle for his work on the case at a rate of $250/hour plus reimbursement of reasonable expenses, with invoices to be submitted to the Court for approval.

20.     The initial status conference was held on February 21, 2013, with attorneys from across the country traveling to Alabama to attend. The Court appointed Barry C. Ragsdale as Liaison Counsel to represent both the Subscriber and Provider tracks. ECF No. 15. The Court also laid out a process for appointment of leadership, facilitated by Special Master Gentle. The Court anticipated appointing a Plaintiffs' Steering Committee (PSC) for both the Subscriber and Providers' tracks, along with the following eight Subscriber committees: Class Action Discovery, Discovery, Experts, Written Submissions, State Liaison Committee, Damages, Litigation, and Settlement.

21.     Nineteen Subscriber firms applied for co-lead or PSC positions. Special Master Gentle closely examined the qualifications of each attorney and firm and interviewed every applicant for a leadership position. On April 10, 2013, Special Master Gentle issued his Rule 23 Report Recommending Interim Leadership Counsel. Special Master Gentle recommended appointment of us as Interim Co-Lead Counsel; Chris Hellums (Pittman, Dutton, Hellums, Bradley & Mann, P.C.) as Interim Local Facilitating Counsel; and a PSC consisting of Megan Jones (HLLP), William Isaacson (then of BSF, now of Paul, Weiss, Rifkind, Wharton & Garrison LLP), Cyril Smith (Zuckerman Spaeder LLP), Kathleen Chavez (Foote, Mielke, Chavez & O'Neill

LLC), and Greg Davis (Davis & Taliaferro, LLC). Later in the litigation, the Court appointed Charles J. Cooper (Cooper & Kirk PLLC) to the PSC as well based on his contributions to the case. ECF No. 2673. Special Master Gentle also recommended appointment of Barry Ragsdale as Discovery Liaison Counsel for the Subscriber and Provider tracks.

22.     The Court held a hearing on leadership and, on April 26, 2013, issued Case Management Order No. 2, adopting the Special Master's recommendations on Subscriber's Co-Lead Counsel and the PSC. The Court noted that it had conducted an independent review all Co-Lead Counsel applications and found that we were best suited to represent the interests of the class. ECF No. 61 at 2. At the hearing, the Court made clear that his appointments were personal in nature and that he expected us to attend every status conference and hearing as Co-Lead Counsel, barring an unavoidable conflict. The Court found further that "counsel appointed to the lead roles are qualified and responsible, and that they will fairly and adequately represent the interests of the class." ECF No. 61 at 3.

23.     The Court also appointed Barry Ragsdale as Discovery Liaison Counsel and ordered the parties to compensate Discovery Liaison Counsel at an hourly rate of $250.00 plus reasonable out-of-pocket expenses, to be shared between the tracks.

24.     Special Master Gentle also recommended appointment of an additional 55 attorneys as committee chairs and members for the Subscriber Track. In making his recommendation, Special Master Gentle reviewed applications and interviewed each applicant to confirm his or her qualifications for a Court appointment. ECF No. 62. The Court adopted the Special Master's recommendations. ECF No. 82.

25.     After our appointment as interim Co-Lead Counsel for the Subscriber Actions and the appointment of committee membership, we worked to organize the many related actions and

Subscriber Counsel. Over the next eight years, we regularly depended on the capable work of our PSC, committee chairs, and committee members, as well as hundreds of other attorneys to conduct the Herculean task of litigating these actions.

### Overview of the Litigation

26.     Counsel's prediction that this litigation would be long, hard fought, and resource-intensive proved, if anything, to be an understatement.

27.     On July 1, 2013, after conducting an extensive investigation, Subscriber Plaintiffs filed their 310-page Class Action Complaint. ECF No. 85. The complaint represented a significant undertaking, with 29 class representatives, analysis of dozens of state markets, detailed allegations concerning dozens of Defendants, and state law claims for 17 states.

28.     Starting September 30, 2013, Defendants filed over a dozen separate motions to dismiss the Complaint, based on failure to state a claim, lack of personal jurisdiction, and improper venue. Subscriber Plaintiffs filed over 100 pages of briefs opposing those motions, followed by additional reply briefs from Defendants.

29.     On April 9, 2014, the Court held a multi-hour hearing on Defendants' Motions to Dismiss, resulting in a 200-page opinion denying the Motions. ECF No. 204. Over the course of the next four years, based on further legal and factual research and analysis, Subscriber Plaintiffs filed their Consolidated Amended Class Action Complaint (ECF No. 244), Second Amended Consolidated Class Action Complaint (ECF No. 897), and Third Amended Consolidated Class Action Complaint (ECF No. 1082) and faced various additional Motions to Dismiss from Defendants relating to jurisdiction and venue (*e.g.,* ECF No. 249).

30.     As set forth below, our two firms designed and executed a discovery plan that sought the production of evidence and data from each of the Defendants. These discovery requests

were the subject of individual and group negotiations with Defendants, and required hundreds of attorney hours.

31.     Defendants also vigorously opposed Plaintiffs' discovery requests, resulting in more than 30 discovery hearings before Judge R. David Proctor and Magistrate Judge T. Michael Putnam, many of which required in-person attendance in Birmingham, Alabama. Ultimately Defendants produced more than 75 million pages of documents requiring review and analysis.

32.     Defendants moved for summary judgment both based on the filed rate doctrine and on the argument that the BCBS system was a single enterprise. The parties also briefed and argued whether the *per se* standard or rule or reason analysis applied to the conduct alleged by Subscriber Plaintiffs. Resolving these issues required extensive legal and factual preparation, including the identification, retention, and preparation of expert witnesses.

33.     On two occasions, December 20, 2016 and June 9, 2017, our firms designed two full-days of "Economics Day" presentations, to provide the Court with their analyses of the economic theories of the case. For each session, we prepared and presented testimony from multiple expert witnesses, along with the presentation of evidence and arguments, to enable the Court to consider the economics and liability theories of the Subscriber Plaintiffs' case.

34.     Subscriber Counsel also briefed class certification, including the submission of hundreds of pages of experts reports, and submitted merit experts reports before the litigation was stayed.

35.     From mid-2013 through August 15, 2020, as further detailed below, Subscriber Counsel devoted 434,054.6 hours to the prosecution of Subscriber Plaintiffs' claims and advanced $40,916,627.90 in unreimbursed expenses.

### Discovery

36.     Discovery against the 37 separate and well-resourced Defendants, represented by some of the best lawyers from the biggest law firms in the country, was an undertaking unlike anything we have experienced in our decades of litigation. Discovery-related tasks alone accounted for over 50% of all lodestar incurred in this case.

37.     In August 2014, the parties submitted competing discovery proposals. The Court entered Discovery Order No. 1 on October 16, 2014, laying out a staged discovery process in which the parties would begin structured data discovery first, followed by unstructured document discovery. ECF No. 229.

38.     Discovery of structured data in this litigation was a monumental undertaking. Data was housed in more than 400 different structured data systems across 37 different Defendants. Even within a single Defendant, multiple different data systems were often at issue. Each data system had its own terminology for various types of data, requiring discovery of data dictionaries to help decode what fields were relevant. Cross-walks needed to be negotiated and developed to determine how to map data needed for expert modeling against what could be provided by Defendants.

39.     Structured data discussions began in late 2014 and continued through 2015. These negotiations were often individualized across Defendants, and required dozens of attorneys to familiarize themselves with data systems across the Defendants. The initial phase of negotiations involved discovery into what systems stored the relevant data and what fields within those systems would provide the data needed to model impact and damages at the class certification stage. Even when agreement was finally reached with all Defendants on the data to request, and the structured data was produced, Subscriber Counsel had to undertake a significant secondary effort to

determine how to match up data across data systems and Defendants to create a workable dataset. This entire process took over two years, and required significant technical assistances from Subscriber Plaintiffs' experts.

40.    Beginning in January 2015, the parties attended monthly discovery conferences with Magistrate Judge Putnam and quarterly status conferences with the Court. Over the course of the litigation, the parties engaged in over 100 discovery conferences, status conferences, and hearings, most of which required in-person attendance in Birmingham, Alabama.

**Obtaining and Review of Millions of Pages of Documents**

41.    Shortly after the onset of structured data discovery, in January 2015, Subscriber Plaintiffs (jointly with Provider Plaintiffs) served over 150 document requests on all Defendants. We vigorously pursued the production of documents by Defendants, and pressed individual Defendants to correct numerous specific deficiencies in Defendants' productions.

42.    The document discovery process was even more labor-intensive than the structured data discovery process. For each of the 37 separate Defendants, Subscriber Counsel had to review initial disclosures and conduct independent research to identify potential custodians, followed by numerous meet and confer sessions to negotiate and agree upon a final set of custodians. From service of RFPs to initial agreements on custodians took over a year of investigation and negotiation. Indeed, it was not until 2017 that all production custodians were finally agreed-upon, as discovery continued to reveal additional relevant sources of documents.

43.    On top of custodians, Subscriber Counsel had to also negotiate search protocols with all 37 Defendants. For some Defendants, this involved developing lists of hundreds of Defendant-specific search terms for testing and iterative refinement over months of negotiations.

For others, it required negotiating separate Technology Assisted Review ("TAR") protocols to ensure that responsive documents would be captured.

44.     Ultimately, Defendants produced over **75 million pages** of documents. We are hard pressed to recall an antitrust case that is based on so large and extensive of a record.

45.     As documents were produced, our firms organized a document review protocol and trained dozens of document reviewers who devoted thousands of hours to reviewing Defendants' productions and finding key documents. In total, 30 firms provided 178 attorneys who reviewed documents for use in depositions, by experts, and in our substantive briefs. Given the complexity of the case and the large number of Defendants, Subscriber Counsel developed a detailed document review training program and coding manual and continuously trained new document reviewers to add to the project as document volume grew. Attorneys tasked with reviewing documents were also required to attend weekly calls to discuss findings and refine search methodologies, and to discuss the most relevant or "hot" documents that the reviewing attorneys found.

46.     To facilitate and streamline review, given the substantial volume of documents, Subscriber Counsel used cutting-edge technology to drive down the review cost while identifying responsive documents for use in litigation.

47.     Discovery was hotly litigated for years. The parties held weekly meet and confers, sent thousands of discovery letters back and forth, and filed dozens of motions to compel and other discovery motions in order to obtain sufficient discovery from Defendants. In total, Judge Proctor and Magistrate Judge Putnam held over 30 discovery hearings and issued 91 discovery orders. The active discovery in this case, against 37 separate entities, contributed to a massive docket totaling over 2,600 entries before a settlement was reached.

## The Pursuit of Extensive Deposition Discovery

48.     During the extensive fact and expert discovery in the case that ensued, Subscriber'
Counsel took or defended over **200 depositions**. This number does not even include the over 40
Provider class representative and absent class member depositions, which Subscriber Counsel also
attended. With respect to fact witnesses, Subscriber Counsel focused primarily on witnesses for
BCBS-AL and BCBSA given that the case was streamlined for trial in the accelerated actions.

49.     Subscriber Counsel deposed 89 fact witnesses and also took over 50 separate
30(b)(6) depositions, of both BCBS-AL and BCBSA as well as other Defendants with testimony
particularly relevant to the accelerated actions and summary judgment issues. In total, Subscriber
Counsel took depositions of over 120 Defendant witnesses.

50.     In deposing Defendant witnesses, Subscriber Counsel efficiently and leanly staffed
depositions, ensuring that only the deposing attorney and a limited number of additional attorneys
necessary to assist with the depositions were in attendance. Subscriber Counsel also carefully
assigned depositions to ensure that individuals with the most knowledge about a particular witness
or topic took the deposition to avoid duplicating efforts.

## Class Representative Discovery

51.     Subscriber Counsel also represented over 60 class representatives throughout the
litigation. Subscriber Counsel worked with each class representative to respond to written
discovery requests and produce documents. In total, 16 class representatives were ultimately
deposed, which involved reviewing all of the documents for each class representative, holding
multiple preparation sessions to prepare the witnesses, traveling to and defending each deposition.
In order to protect class representatives from overly burdensome discovery, Subscriber Counsel

also vigorously litigated various discovery requests issued to class representatives, resulting in motion practice and hearings concerning the scope of Defendants' discovery requests.

52.     Similarly, in 2016, Subscriber Counsel devoted substantial resources to litigating issues concerning absent class member discovery. Defendants served nine absent class members with document requests and deposition notices, and Subscriber Counsel were required to litigate the propriety of such discovery, including participating in several hearings in front of Judge Putnam, a lengthy meet-and-confer process, and ultimately reviewing discovery produced by absent class members and preparing for and attending depositions.

**Monitoring Third Party Litigation**

53.     Beyond Defendant, class representative, and absent class member depositions, we monitored multiple litigations for their impact on our case.

54.     We were required to prepare for and attend depositions of each Provider class representative to protect the interests of the Subscriber class.

55.     Defendants also noticed and took depositions of various third party insurers in an attempt to demonstrate that market entry was unlikely even in the absence of the restraints, for which Subscribers had to review document productions and attend depositions to cross-examine these witnesses.

56.     We also monitored two additional trials: *U.S. v. Anthem,* Civil Action No. 16-CV-1493 (D.D.C.) and *Anthem v. Cigna,* Case No. 2017-0114-JTL (Del. Ch.). For both trials, we assigned attorneys to attend and summarize each day's testimony, and we ultimately made use of testimony and exhibits from both trials in our summary judgment briefing as well as class certification and merits reports.

17

## Privilege Log Review and Challenge Process

57.     In late 2017, Subscriber Counsel began reviewing and challenging **over 700,000 privilege log entries** for documents redacted and withheld by Defendants.

58.     Subscriber Counsel began by challenging the sufficiency of Defendants' privilege logs, which consisted of numerous meet and confers with Defendants. We also engaged in a months-long sampling process of Defendants' privilege logs, which involved submitting random and individually selected samples to Court-appointed Special Master R. Bernard Harwood, Jr. for resolution. Special Master Harwood issued 45 Reports & Recommendations based on those challenges, many of which required additional briefing relating to objections to the rulings as to specific documents.

59.     Through this painstaking process, Subscriber Counsel succeeded in de-designating, in whole or in part, over 450,000 documents from Defendants' privilege logs.

## Summary Judgment Motions

60.     The parties briefed two separate rounds of summary judgment motions. These motions required Subscriber Counsel to conduct a full and detailed analysis of the evidence and legal precedents, retain experts to provide reports and testimony, and prepare briefs. We orally argued both motions.

61.     First, Defendants including BCBS-AL, moved for summary judgment against the Alabama Subscriber Plaintiffs based on application of the filed rate doctrine (ECF No. 523, 733). The parties engaged in extensive discovery related to Defendants' filed rate defense. The parties litigated, both before Magistrate Judge Putnam and the Court, the scope, timing, and form of Defendants' productions. Defendants ultimately produced, and Subscriber Counsel analyzed, more than 3 million pages of BCBS-AL's unstructured and structured data. Subscriber Counsel also

18

obtained thousands of documents from the Alabama Department of Insurance. Subscriber Counsel deposed BCBS-AL and Alabama Department of Insurance fact witnesses and took 30(b)(6) testimony from BCBS-AL concerning its filed rate program.

62.     After we filed multiple rounds of briefs and argued the motion, the Court determined that the filed rate defense asserted by BCBS-AL applied to a segment of the monetary damages class (those where the charged premiums were in accordance with the filed rates), but did not apply where the charged premiums were greater than the filed rate (ECF No. 998). On March 23, 2017, we filed a Motion for Reconsideration of the Court's Order Regarding Filed Rate Summary Judgment (ECF No. 1046). After it was fully briefed and argued, the Court denied the Motion for Reconsideration without prejudice (ECF No. 1098); the Court stated at oral argument that the parties would have an opportunity to revisit its filed rate doctrine decision later in the case based on further information (ECF No. 1109 at 69-70 (Transcript of April 12, 2017 hearing)).

63.     In 2017, both parties moved for summary judgment on two additional issues: (1) whether a *per se* or rule of reason standard should apply to the challenged restraints and (2) whether the BCBSA and the BCBS companies are a single economic enterprise for purposes of the application of the Sherman Act to their collective management and use of the Blue Cross and Blue Shield trademarks. ECF Nos. 1348 (Plaintiffs' Motion for Partial Summary Judgment), 1432 (Defendants' Response to Plaintiffs' Motion for Partial Summary Judgment), 1552 (Reply Memorandum in Further Support of Plaintiffs' Motion for Partial Summary Judgment), 1353 (Defendants' Motion for Summary Judgment), 1435 (Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendants' Motion for Summary Judgment), and 1551 (Reply in Support of Defendants' Motion for Summary Judgment).

64.     The parties conducted additional discovery that the Court found necessary before determining the standard of review to be applied to the Sherman Act claims. Subscriber Counsel served multiple sets of requests for admission and interrogatories to solidify the evidentiary basis for their motion for application of the per se standard. Subscriber Counsel also used targeted 30(b)(6) testimony from key Defendants to develop additional evidence in support of their motion.

65.     In total, the parties submitted six briefs in support of their respective positions. Subscribers filed 123 pages of briefs and 329 exhibits laying out in painstaking detail the entire history of the Blue system, the consolidation of the plans, the evolution of the restraints over time, and the resulting anticompetitive impact.

66.     Both sides also introduced expert testimony to assist the Court in identifying the appropriate standard of review. Defendants submitted a 61-page report from Dr. Kevin Murphy regarding the alleged pro-competitive nature of the Blue system, which was rebutted by Subscriber Plaintiffs' expert report from Dr. Daniel Rubinfeld. Subscribers also submitted an expert report from an accounting expert, Leslie Strassberg, rebutting Professor Murphy's characterizations of the market for health insurance and the profitability of BCBS-AL. Subscriber Counsel deposed Dr. Murphy and defended the depositions of Dr. Rubinfeld and Mr. Strassberg.

67.     Once briefing was complete, the parties presented evidence and argument in a full day hearing to the Court. Based on the extensive record before it, the Court determined that the *per se* standard of review applied to the "aggregation of competitive restraints" including the restraint on non-Blue-branded business, so long as Subscriber Plaintiffs could show that the Defendants did not operate as a single economic enterprise for purposes of their use and management of their trademarks. The Court further rejected both parties' summary judgment arguments as to whether Defendants did in fact operate as a single economic enterprise for

20

purposes of the trademarks, finding there were genuine disputed issues of material fact (ECF No. 2063).

68.     On June 12, 2018, this Court certified its decision with respect to the standard of review for interlocutory appeal pursuant to U.S.C. § 1292 (b), and on June 22, 2018, Defendants petitioned the Eleventh Circuit Court of Appeals for permission to appeal the Courts' *per se* decision. *In Re Blue Cross Blue Shield Antitrust Litigation*, Case No. 18-90020 (June 22, 2018 11th Cir.).

69.     On July 2, 2018, Subscriber Counsel wrote and filed their brief in opposition to Defendants' petition. On December 12, 2018, the Eleventh Circuit denied Defendants' petition for permission for an interlocutory appeal from the District Court's April 5, 2018 memorandum opinion and order.

## Class Certification

70.     Subscriber Plaintiffs compiled evidence from years of discovery and moved for certification of an Alabama damages class and a nationwide injunctive class in April 2019. Subscriber Plaintiffs' motion was supported by two separate briefs, totaling 60 pages, seeking certification of a nationwide injunctive class and an Alabama damages class. Subscribers Plaintiffs' motion was also supported by the expert reports of Dr. Ariel Pakes (137 pages) and Dr. Daniel Rubinfeld (56 pages).

71.     Dr. Pakes provided expert analysis regarding the ability to model entry into the Alabama market on an Alabama classwide basis. In order to undertake this analysis, Dr. Pakes first looked at the characteristics of the Alabama market and the home BCBS plan to determine whether entry would be attractive for a competitor, absent the challenged restraints. After determining that entry would be likely absent the restraints, Dr. Pakes next modeled the impact of

entry on premiums. Dr. Pakes undertook two separate analyses. First, he conducted a reduced form regression analysis to examine the relationship between premiums and other controls. The results of that analysis showed a predicted premium decrease ranging from 3.4% to 5.5% for all or nearly all Alabama subscribers. Second, Dr. Pakes conducted a structural analysis to model the impact of entry. Unlike a typical antitrust case, where a simple regression analysis can be run to determine the but-for price, Dr. Pakes built a model simulating how an entire market would be altered by entry of competition. Dr. Pakes' structural model, which was based on years of work on the data produced by Defendants through the structured data discovery process, could be used to estimate premiums pre- and post-entry on a classwide basis for the Alabama Subscriber Class.

72.     Dr. Rubinfeld's report examined the documentary evidence, outlined the history of the alleged restraints, and conducted an economic analysis to show the anticompetitive effects of the restraints, concluding that Subscribers could demonstrate anticompetitive effects in Alabama and nationwide on a classwide basis. Dr. Rubinfeld also explained the nature of the anticompetitive effects, including decreased product availability, consumer choice, and innovation in addition to supracompetitive premiums.

73.     Both Dr. Pakes and Dr. Rubinfeld were subject to daylong depositions, which required multiple days of preparation.

### Daubert Challenges & Class Certification Opposition

74.     Defendants filed their Daubert challenges to Dr. Pakes and Dr. Rubinfeld's reports on July 1, 2019. Defendants filed their opposition to Subscriber Plaintiff's class certification motion in July 2019. Defendants' opposition was supported by over 1,000 pages of expert reports from five experts. Dr. Janusz Ordover vigorously challenged Dr. Pakes' damages model and argued that impact could not be demonstrated on a classwide basis. Dr. Kevin Murphy opined that

the restraints did not have anticompetitive effects and were in fact pro-competitive, and further questioned the reliability of Dr. Pakes' model. Dr. Erin Trish disputed Dr. Pakes' use of reduced form regression analysis to establish impact. Dr. Lawrence Wu submitted testimony contending that BCBS-AL did not have market power and that BCBS-AL was not profitable. Finally, Dr. David Evans argued that health care is a two-sided market and thus Subscribers had not met their burden of showing overriding anticompetitive effects.

75. Subscriber Counsel reviewed the Daubert challenges as well as the class certification opposition and expert reports and began drafting responsive briefs and preparing to take expert depositions for prior to the Court's decision to stay litigation pending ongoing mediation.

**Merits Expert Reports**

76. Subscriber Plaintiffs filed merits expert reports in May 2019 from five experts: Dr. Pakes and Dr. Rubinfeld, as well as Dr. Christy Chapin, Leslie Strassberg (an actuary with expertise in health insurance), and Louis R. Pirkey (an expert in trademark law).

77. Dr. Pakes and Dr. Rubinfeld's reports expanded upon their analysis at class certification for purposes of demonstrating antitrust liability. Dr. Pakes ran his econometric model to calculate damages for the Alabama class. Dr. Rubinfeld concluded that the challenged restraints had clearly anticompetitive effects.

78. Dr. Chapin's report discussed the history of the Blue Cross Blue Shield system and concluded that Defendants did not operate in a manner consistent with an industry trade associations. Mr. Strassberg reviewed financial information for BCBS-AL and concluded that: 1) BCBS-AL was enormously profitable over the class period, and 2) entry into the Alabama market was attractive and, absent the restraints, other Defendants would have entered the market and

23

would have been profitable. Mr. Pirkey reviewed the history of Defendants' trademarks and concluded that the senior users of those marks had abandoned those marks and thus the trademarks were no longer subject to protection from unauthorized use, undermining Defendants' trademark defense.

79.     Each of these reports required substantial effort by Subscriber Counsel. In particular, Subscriber Counsel prepared class certification briefing, class certification expert reports, and all five merits reports within an abbreviated time frame, serving merits reports only one month after filing for class certification. Each merits expert was deposed on their findings, which required further preparation and time to defend.

### The Settlement and Mediation Process

80.     The case only settled after the parties engaged in extensive mediation, over five years and with the assistance of multiple mediators, as set forth below.

81.     The parties first began settlement discussions in 2015. The parties engaged Judge Layn R. Phillips as a mediator and participated in 11 in-person mediation sessions from 2015 through 2017. Those discussions involved counsel for the Subscriber Plaintiffs, Provider Plaintiffs, Defendants, and Defendants' insurers, some of which involved nearly a hundred attendees. These settlement and mediation discussions were undertaken in parallel with the parties continuing to litigate and prepare for trial.

82.     Judge Phillips, along with Judge Gary Feess, worked closely with the parties in an attempt to resolve the litigation. The parties discussed several proposals on injunctive relief and monetary compensation, but despite Judge Phillips' and Judge Feess' able assistance, those discussions ultimately were not successful.

83.     In November 2017, Special Master Gentle began mediating settlement discussions with counsel for Subscriber Plaintiffs, Defendants, and Defendants' insurers. Over the course of the next two years, Special Master Gentle held hundreds of unilateral and bilateral conference calls, meetings, and in-person mediation sessions. Over the course of the mediation, Subscriber Counsel and counsel for Defendants evaluated the strengths and weaknesses of the case, and thoroughly evaluated them in order to negotiate the best settlement agreement for the Subscriber Class. This process was hard fought, took years, and consisted of zealous representation by counsel on both sides.

84.     In September 2019, Warren Burns of Burns Charest LLP joined mediation discussions as settlement counsel for a sub-class of Self-Funded accounts and their employees (together, the "Self-Funded Settlement Sub-Class"). The parties continued to exchange proposals and finally, in November 2019, the parties (along with Self-Funded Sub-Class Settlement Counsel) agreed on a term sheet. Over the next several months, the parties worked closely with Special Master Gentle to reduce the term sheet to a settlement agreement, involving many additional conferences between the parties and with Special Master Gentle.

85.     Subscriber Counsel undertook substantial additional efforts to mediate an appropriate allocation of the Net Settlement Fund between fully insured Class Members and the Self-Funded Sub-Class. We, along with Self-Funded Sub-Class Settlement Counsel, engaged Kenneth Feinberg as Allocation Mediator to facilitate this allocation. After evaluation of the evidence and an in-person mediation, we along with Self-Funded Sub-Class Settlement Counsel agreed that an equitable allocation would distribute 93.5% of the Net Settlement Fund among fully insured Class Members and 6.5% of the Net Settlement Fund among the Self-Funded Sub-Class.

We and Self-Funded Sub-Class Settlement Counsel presented this proposal to Mr. Feinberg, who reviewed it and determined it to be reasonable.

86.    In order to administer the Net Settlement Fund, Subscriber Counsel worked closely with Darrell Chodorow and the Brattle Group to design an equitable Plan of Distribution. Subscriber Counsel spent several months in close consultation with Mr. Chodorow to examine the economic evidence concerning premiums, including employer-employee premium sharing, and to design a reasonable and efficient Plan of Distribution that would treat members of the Damages Class equitably and would not overly burden claimants. Subscriber Counsel again engaged Mr. Feinberg, this time to evaluate the reasonableness of the Plan of Distribution.

87.    Finally, on October 16, 2020, we signed the Settlement Agreement with Defendants.

88.    The Settlement Agreement was the product of over four years of hard-fought, arm's-length negotiations by counsel highly experienced in complex litigation and antitrust law. The Settlement Agreement was reached with the assistance of three well-respected mediators, culminating with the major, sustained effort by Special Master Gentle, and its implementation through a Plan of Distribution was further assisted by Mr. Feinberg's efforts as Allocation Mediator.

89.    As the Court noted in the Preliminary Approval Order (ECF No. 2641), the Settlement that Subscriber Counsel achieved includes injunctive relief that mandates "significant, unprecedented, and far reaching changes" to Defendants' conduct (*Id*. at 9). The Court noted that this injunctive relief "provides significant relief to the Class" by "allowing for more competition in the market for health insurance and providing the potential for Class Members to achieve greater consumer choice, better product availability, and increased innovation." (*Id.*)

90.     As the Court also noted, this "historic and substantial" injunctive relief will "significantly alter the Blues' business practices and substantially increase the value of the Settlement to the class members" (*Id*. at 32).

91.     Industry regulators, economists, and analysts have praised the Settlement's injunctive relief provisions as promoting increased competition and consumer choice. For example, Washington Insurance Commissioner Mike Kreider said that the "settlement should increase competition, which is great news," and James Burns, head of Healthcare Antitrust at Ackerman LLP described the injunctive relief provisions as "significant, as they have the potential to re-shape the state of competition in health insurance markets going forward."

92.     "The prospective injunctive relief in this case is wide-ranging and bears greater importance to the Class than the monetary relief" (ECF 2641 at 26). However, the monetary relief achieved is also virtually unprecedented in its size.

93.     The $2.67 billion in monetary relief included in the Settlement is one of the largest antitrust class action monetary recoveries in history – and the largest for a case in which there was no government investigation or proceeding.

## Co-Lead Counsel's Direction of the Litigation

94.     As Co-Lead Counsel, we and other attorneys from our firms were actively involved in all aspects of the litigation. Collectively, our firms contributed 101,740 hours (corresponding to $56,410,844 in lodestar) to litigating this case, in addition to $2,165,531.33 in out-of-pocket expenses. We have also made $12,836,766.60 in Litigation Fund contributions through the present, for a total of over $15 million in hard expenses outlaid with no guarantee of recovery.

95.     As noted above, our firms filed the very first case—without the benefit of a government investigation or any other action upon which to follow—and have aggressively

litigated this matter against some of the best law firms in the country since 2012. We have devoted significant resources at our own firms to ensuring the success of the litigation and championing the rights of the Subscriber class, constraining our ability to devote resources to other cases for nearly a decade. We, along with attorneys at our firms, have attended nearly every single one of the 100+ hearings, discovery conferences, status conferences, and other court appearances over the pendency of the litigation; have taken 46 depositions of Defendants (not including another 21 depositions of third parties noticed by Defendants, Subscribers, and Providers for which attorneys from our firms took the lead); have prepared and defended 11 depositions of class representatives, and have either authored or contributed to every brief in the case.

96.     Our firms, with significant input from us, authored the motion to dismiss briefing and argued the motion hearings. We also worked to organize hundreds of attorneys from dozens of firms to conduct discovery of 37 separate Defendants. Our firms authored the initial discovery requests, organized Subscriber Counsel into Defendant discovery teams, and coordinated discovery from initiation through completion. Given the size and scope of this litigation, the case management alone involved thousands of hours of attorney time between our firms, not to mention additional thousands of hours to actually conduct discovery of Defendants.

97.     With respect to depositions, in addition to the sheer volume of depositions our firms took and defended, attorneys from our firms took nearly all of the key witnesses in the case, including multiple 30(b)(6) depositions of BCBSA and BCBS-AL, the two streamlined Defendants, and fact depositions of BCBS-AL CEO Terry Kellogg, BCBSA CEO Scott Serota, Anthem CEO Joseph Swedish, and former BCBSA President Bernard Tresnowski. We also prepared each Subscriber expert for his or her expert depositions and defended six of the nine Subscriber expert depositions (and second-chaired the remaining three.)

98.     We also coordinated all Subscriber class representatives' discovery. Attorneys from our two firms negotiated Defendants' expansive document requests to alleviate the burden on class representatives, worked with class representatives and their counsel on document collection, and reviewed and produced documents to Defendants. Our firms also coordinated preparing class representatives for deposition, including defending 11 of the class representatives' depositions and preparing several others.

99.     We also worked with class representatives to respond to multiple sets of written discovery requests, including researching and drafting template responses and coordinating approval and service for each class representative. Given the overbreadth of these requests, and to protect class representatives from unfair burden, attorneys from our firms ultimately filed and argued a motion for a protective order to block certain unnecessary discovery, and were involved with briefing and arguing discovery motion practice on other requests.

100.     To assist the Court in delving into the complicated economic background of the case, we personally led two separate Economics Days. Attorneys from our firms were principally responsible for preparing oral argument, expert testimony, and detailed demonstratives and presenting Subscriber Plaintiffs' case at each Economics Day, as well as responding to Defendants' presentation and the Court's questioning. These days were preceded by intense preparation and collation of the record as of that stage in the case.

101.     At summary judgment on the standard of review, our firms also took the laboring oar in organizing a review of all the available evidence, strategizing about additional needed discovery, drafting and negotiating interrogatories and requests for admission relating to specific standard of review issues, synthesizing the factual record for the extensive briefing, and authoring

the ultimately successful summary judgment briefing. We also prepared for and argued the day-long summary judgment hearing.

102.    Our firms also were the primary authors of all class certification briefs. We drafted the class certification briefs, worked with Dr. Pakes and Dr. Rubinfeld to provide them access to the record so that they could obtain supporting materials for their reports and provided significant feedback when they were drafting their reports, prepared both experts for their expert depositions and defended the depositions. Similarly, when Defendants' Daubert motions and class certification oppositions were filed, along with supporting expert materials, we began working on responsive pleadings and preparing to take the expert depositions of each export before the litigation was stayed.

103.    Our firms also worked closely with Dr. Pakes and Dr. Rubinfeld, as well as Professor Chapin, Mr. Strassberg, and Mr. Pirkey on merits expert reports. We served as primary contacts for each expert, providing substantive feedback and analysis, and we worked to prepare each for their deposition. Attorneys from our firms defended (or, in the cases of Professor Chapin and Mr. Strassberg, second-chaired) each expert deposition.

104.    For five years, we also devoted significant resources to mediating a favorable resolution for the Subscriber class. We attended over 30 in-person mediation sessions, along with hundreds of teleconferences and other mediation-related meetings, both with Defendants and with various mediators. We drafted mediation statements, researched and analyzed different types of injunctive relief that would enable increased competition, worked with experts to weigh various options, and ultimately led the drafting and negotiation of the final Settlement Agreement. We also had primary responsibility for drafting the preliminary approval materials, including the Plan of

Distribution. Attorneys from our firms presented argument for the daylong preliminary approval hearing.

105.    Finally, since the Court's preliminary approval order, attorneys from our firms have been engaged on a daily basis in securing data from Defendants for notice and claims administration; answering thousands of emails and phone calls from class members with questions about the Settlement; working with the claims administrator to effectuate the notice plan; and analyzing issues relating to claims administration.

### Contributions of Subscriber Counsel

106.    In addition to our two firms, Subscriber Counsel include some of the most experienced and successful lawyers and law firms in the nation. The Plaintiffs Steering Committee appointed by the Court consists of extremely talented attorneys with decades of experience. Each PSC firm has a long and successful track record, as evidenced by the resumes for the PSC members that are attached as Exhibits C to G.

107.    Zuckerman Spaeder LLP, led by Cyril Smith, was heavily involved with briefing and strategy relating to countering BCBS-AL's filed rate defense and took primary responsibility for filed rate discovery. This involved multiple rounds of depositions of BCBS-AL and Alabama Department of Insurance witnesses. Zuckerman Spaeder attorneys assisted with numerous substantive motions and hearings, including Economics Day and summary judgment on standard of review. Zuckerman Spaeder attorneys defended three expert depositions and took leading roles in preparing expert reports for Professor Chapin and Mr. Strassberg. We also relied on Zuckerman Spaeder throughout the mediation process, including to assist with drafting preliminary approval papers.

108.     Whenever we faced a thorny legal issue, we always involved Cooper & Kirk PLLC, led by Charles Cooper, to help us work through it, and we relied on their expert analysis throughout their time in the litigation. Attorneys from Cooper Kirk were particularly involved in briefing summary judgment on the standard of review, the response to Defendants' petition for interlocutory review of the Court's decision regarding the applicable standard of review, and class certification. In 2017, the Court appointed Mr. Cooper to serve as Co-Chair of the Brief Writing and Submissions Committee for the Subscriber Track. ECF No. 124. Attorneys from Cooper Kirk also provided assistance in the later stages of the discovery effort. Cooper Kirk was a key participant in mediation sessions, assisted with analyzing various settlement proposals, and worked on preliminary approval, including presenting argument at the preliminary approval hearing.

109.     Davis & Taliaffero, LLC, led by Greg Davis, was one of our most reliable and hard-working partners in the litigation. We regularly called on attorneys from Davis & Taliaffero for discovery matters, including taking depositions and assisting with Plaintiffs' discovery requests and responses. Outside of our two co-lead firms, Davis & Taliaffero were involved in taking or defending the most depositions, including key testimony from BCBSA concerning the history of licensing agreements. Attorneys from David & Taliaffero also regularly liaised with class representatives, including ensuring that each had the opportunity to review and approve the settlement before it was finalized.

110.     Foote, Mielke, Chavez & O'Neil, LLC (FMCO), led by Kathleen Chavez, provided substantial assistance in discovery. Attorneys from FMCO handled many Provider-related depositions, ensuring that Subscriber Plaintiffs' interests were protected. FMCO also assisted with several substantive briefs, preparation for Economics Day, and other discovery matters.

111.    PSC members Megan Jones of HLLP and William Isaacson, formerly of BSF and now of Paul, Weiss, also made significant contributions to the litigation and assisted us with our leadership roles.

112.    Ms. Jones worked nearly full-time on the litigation for years, devoting over 9,000 hours to this case since its inception in 2012. She was a consistent presence at status conferences and discovery conferences, arguing at more than 50 of such hearings, and took more depositions than any other attorney in the case, including 30(b)(6) testimony of BCBSA and BCBSA's General Counsel Roger Wilson. She also designed and executed the discovery strategy, harnessing the talent of over 60 plaintiffs' firms. Ms. Jones helped us to synthesize the key facts of the case from a sprawling record and develop them into a compelling narrative. She was also a primary member of the negotiating team for the settlement discussions that lasted years.

113.    Mr. Isaacson was one of the principal architects of the original case theory and worked closely with us in developing the legal theory of the case, and later on structure of each of the amended complaints. He helped to develop key facts in the case, deposing witnesses such as the BCBS-AL and BCBSA CEOs and contributed to the economic analysis of the case, including preparing and defending Dr. Pakes' expert deposition. He also reviewed drafts of all major motions and provided his advice and strategic input at every juncture in the litigation. He was also a key member of the negotiating team for the settlement discussions that lasted years.

114.    In sum, members of the PSC were integral to every facet of the case. Non-co-lead PSC firms took or defended over 50 depositions, took leadership on specific issues crucial to our economic analysis, provided assistance on major briefs, and assisted with all manner of strategic decisions in the litigation.

115.    We and the PSC have been supported by hundreds of additional talented and dedicated attorneys, including Court-appointed Committee Chairs and members of each of the Court-established committees, who have performed so much important and high-quality work over the course of this litigation and who have spent years litigating a risky case with uncertain prospects of repayment. As the Court has noted, Subscriber Counsel "include numerous highly qualified and experienced lawyers" who have "litigated scores of antitrust cases to resolution and are recognized as top authorities in their field" (ECF No. 2641, at 20, 27). The Court has further found that Subscriber Counsel "vigorously, professionally, and successfully litigated this extremely hard fought case" for almost a decade (ECF No. 2641, at 27-28). And we agree wholeheartedly with the Court's characterization of all of our esteemed co-counsel.

116.    Together, Subscriber Counsel have devoted hundreds of thousands of hours to prosecuting these claims – hours that precluded them from taking on other representations and for which they would have received no compensation if this case were not successful. Subscriber Counsel also invested more than $40 million of their own money in the litigation, money that was very much at risk given the novel nature of the claims alleged. As discussed above, there were substantial risks that Subscriber Counsel would not be able to obtain class certification, and that, even if class certification were achieved, would not be able to establish liability, and that even if liability were established, would not be able to obtain significant injunctive relief in this private antitrust action or prove substantial damages. And under any scenario, to be successful, the cases not initially filed in Alabama would be remanded to their original jurisdiction for dozens of separate trials.

117.    This was not a case that followed government proceedings. Nor was this a case that was viewed as easy or attractive to litigate; the case raised novel and difficult legal and factual

questions, and the practices Subscriber Counsel challenged were decades-long-standing practices that no one previously were prepared to attack on behalf of Subscribers.

118.    Subscriber Counsel's achievements are all the more impressive—and their lodestar all the more reasonable—when viewed against the backdrop of the opposition they faced. Subscriber Counsel were opposed by over twenty of the largest and most highly regarded law firms in the country, including Kirkland & Ellis, LLP, Hogan Lovells, LLP, Cravath, Swaine & Moore, LLP, Crowell & Moring, LLP, Maynard Cooper & Gale, PC, Foley & Lardner, LLP, and Shearman & Sterling, LLP. Each Defendant was represented by a formidable team of attorneys who zealously represented their client's interests and made Subscriber Counsel fight at every step along the way. Over 100 defense attorneys entered notice of appearances in this case, and formed the veritable army of attorneys that Subscriber Counsel faced. The success of this litigation in the face of that opposition is a testament to the quality of the work from Subscriber Counsel.

### Contributions of Class Representatives

119.    Over the course of the litigation, Subscriber Counsel worked closely with over 60 class representatives who diligently and ably represented the interests of the Subscriber Class. These class representatives have participated actively by providing assistance to Subscriber Counsel in the preparation of both the individual and the consolidated class complaints; by searching for, reviewing, and producing thousands of documents and reams of structured data; by responding to voluminous written discovery requests; by preparing for and sitting for depositions; and by providing input and feedback on litigation and settlement strategy.

120.    Each class representative took on the burden of litigating this case so that the Subscriber Class as a whole could benefit. And their work paid off; due to the class representatives'

actions, the entire Subscriber Class will benefit from the $2.67 billion settlement fund and the potential for increased competition stemming from the significant injunctive relief achieved.

121.    Under any other circumstances, we would seek a substantial service award for each class representative in recognition of their extensive involvement in the litigation and the extraordinary result achieved. Unfortunately, in September 2020, just as the parties were finalizing the Settlement Agreement, a divided panel of the Eleventh Circuit ruled that the long-standing and near universally accepted practice of providing service awards to those who were willing to step forward and bear the burdens and the risks of serving as a class representative is, in fact, unlawful. *Johnson v. NPAS Solutions, LLC*, 975 F.3d 1244, 1264 (11th Cir. 2020) (11th Cir. Sept. 17, 2020).

122.    Based on all of the prior case law, such service awards would have been appropriate here, where class representatives put themselves forward to represent the interests of the Subscriber Class and volunteered substantial time and resources to progress the litigation. The class representatives have been exemplary. We are extremely disappointed that the timing of the Eleventh Circuit's ruling, and the uncertainty concerning any further decision on the matter, prevents us from seeking service awards for the class representatives at this time. However, we request that the Court retain jurisdiction for purposes of awarding class representative service awards should the Eleventh Circuit's decision in *NPAS* be overturned.

**Class Notice and Settlement Administration**

123.    Our firms, with help from the Claims Administrator and other Subscriber Counsel, designed the notice program and the Plan of Distribution in this case. As part of a competitive bidding process, we interviewed multiple notice and claims administrators and selected the Court-appointed Claims Administrator, JND.

124.     In conjunction with notice to the class, we also reviewed and provide feedback on draft materials from the Claims Administrator, including the short-form notice, long-form notice, claim form, telephone scripts, and website content including frequently asked questions ("FAQs").

125.     We also conducted months of negotiations about the availability of structured data from each of the 37 Defendants that would be sufficient to support notice and the administration of the claims program. We along with other Subscriber Counsel devoted hundreds of hours (the substantial majority of which are not included in the lodestar below) working through data production issues.

126.     Once the motion for preliminary approval had been filed, we began receiving and responding to inquiries from interested putative class members. These inquiries increased when the Claims Administrator issued notice following the grant of preliminary approval. Our firms have designated multiple attorneys to answer class member inquiries on a daily basis, and we are working closely with the Claims Administrator to resolve all ongoing issues with class members.

127.     Going forward, our firms will continue to be active in all aspects of settlement and claims administration, including working with the Claims Administrator and supervising final distribution of settlement proceeds to millions of qualified class members, preparing for the Final Approval hearing, and responding to class member inquiries. Based on past experience, we believe that these tasks have and will add thousands of hours of attorney lodestar to the work that has already been done in this case.

**Litigation Fund Management and Timekeeping**

128.     In its order appointing Ed Gentle as Special Master, the Court tasked Mr. Gentle with establishing and maintaining a Plaintiffs' counsel common litigation fund, including accounting and related support. ECF No. 7 at p. 4. The Court also ordered Mr. Gentle to

"determin[e] what actual disbursements should be made from the common litigation fund as reimbursement and payment to 'common benefit attorneys.' (See *Manual for Complex Litigation Third,* s 24.23)". ECF No. 7 at p. 5. As such, for the entire pendency of the MDL, Mr. Gentle has assessed Subscriber Counsel for capital contributions to be paid to the litigation fund, and Mr. Gentle has maintained the litigation fund and authorized payment of expenses at the Court's directive.

129.     As noted in Exhibit B accompanying the Declaration of Special Master Edgar C. Gentle ("Gentle. Decl.")., Subscriber Counsel have made $37,088,369.52 in contributions to the Litigation Fund. The Special Master has authorized payments of $35,380,737.62 for reasonable expenses incurred in prosecuting the litigation. Gentle Decl. ¶1(E). Those expenses include, among other things, over $25 million for payment of expert fees (for, among other things, summary judgment on the standard of review, class certification, and merits reports), document hosting costs of over $5 million to maintain a database of millions of documents over 5+ years, over $150,000 for deposition court reporting, and Court-mandated fees for Special Master Gentle, Special Master Harwood, and Liaison Counsel Barry Ragsdale. The remaining amount has been budgeted for additional expert, document hosting, and Special Master costs to be incurred through the final approval process. All further disbursements from the Litigation Find are subject to approval by the Special Master.

130.     The Court also issued detail protocols surrounding Subscriber Counsel's recording and submission of time and held expenses. On a monthly basis, our firms collected contemporaneous time and expense records from all Subscriber Counsel. Our firms then submitted the detailed time and expense records, along with backup detail, to the Special Master. Each month's submission was required to be certified by a senior partner attesting to the accuracy and

correctness of the monthly submission. The Special Master then compiled the submissions and submitted them to the Court on a regular basis. This process is described in further detail in the Gentle Decl.

131.    With respect to time, Subscriber Counsel were required to use 30 different specific task codes to classify work, along with a detailed description of the work. Counsel billed all work throughout the pendency of the litigation in 1/10th of an hour increments. With respect to expenses, the Court's protocols set forth detailed limitations in order to ensure that expenses remained reasonable, including limiting travel costs.

132.    From 2013-2020, Special Master Gentle conducted regular audits of time and expense reports, requiring Subscriber Counsel to provide additional detail where necessary and otherwise limiting time and expenses as needed. In particular, Special Master Gentle did not allow counsel to block bill time or submit time that lacked specificity and did not accept expenses without adequate backup to support the charges incurred.

133.    Through the processes laid out by the Court and Special Master Gentle, Subscriber Counsel's time and expenses have been well-vetted and represent an accurate, and likely conservative, accounting of the time spent and costs of litigating this massive case.

### Summary of Time and Expenses

134.    As noted in Exhibit C to the Gentle Decl., in total, after auditing by the Special Master, from inception through August 15, 2020, Subscribers devoted 434,054.6 hours to litigating this case. Special Master Gentle regularly reported these hourly totals to the Court as they were incurred since 2013. Using historic rates as reported contemporaneously to Special Master Gentle, this has resulted in $194,226,321.65 in lodestar.

135.     This figure does not include the substantial additional time spent mediating and finalizing the Settlement Agreement after that date; drafting the preliminary approval papers; and preparing for and attending the day-long preliminary approval hearing. In fact, for just the period from August 15, 2020 through the November 30, 2020 preliminary approval order, Subscriber Counsel incurred an additional 9,205.2 hours and $7,639,195.00 in lodestar. Even since that time, Subscriber Counsel have spent several thousand additional hours (and millions of dollars of additional lodestar) acquiring data from Defendants for notice and claims administration, working with the notice and claims administrator to provide notice to over 100 million class members, and answering calls and emails from thousands of class members once notice was disseminated.

136.     Further, lodestar has been calculated at historic rates, rather than at current rates, even though in our experience it is typical practice to use current rates to calculate lodestar in fee petitions. An analysis of hours billed at current rates indicates that the actual lodestar would have been at least $15 million higher.

137.     For these reasons, in addition to Special Master Gentle's diligent auditing of time records, Subscriber Counsel's $194,226,321.65 in lodestar is actually a significant underrepresentation of the lodestar incurred, both by hours and by overall lodestar.

138.     As noted in Exhibit C to the Gentle Decl., after auditing by the Special Master, Subscriber Counsel have incurred $3,832,258.38 in held expenses. These totals have been regularly reported to the Court as they have been incurred since 2013. When added to the $37,088,369.52 in Litigation Fund contributions, Subscriber Counsel has incurred a total of $40,916,627.90 in expenses.

## **Conclusion**

139.    It has been nearly a decade since we filed the first Subscriber case. Subscriber Counsel has diligently litigated against dozens of well-resourced Defendants represented by the very best attorneys in the country. During that time, hundreds of attorneys have expended hundreds of thousands of hours, and tens of millions of dollars, entirely on a contingency basis, with no guarantee of reimbursement for the significant expenditure of resources. Indeed, this novel case represented a very real risk of failure at various stages of the litigation. Given the groundbreaking nature of the Settlement, and the significant monetary and injunctive relief achieved for the class, we believe that the requested fee award and expense reimbursement is reasonable.

140.    Based on our investigation, research, document review, depositions, economic analysis, and decades of combined experience in antitrust litigation, we believe that the Settlement is in the best interests of the Class and that the Settlement is fair, reasonable and adequate. The financial and injunctive benefits obtained by the Settlement reflect a reasonable compromise that not only takes into consideration the risks inherent in ordinary class action litigation but also the various issues in this specific case, which had the potential to completely eliminate recovery available to the Class. We further believe that the request of $667,500,000 for Subscriber Counsel's fees and expenses is reasonable and warranted.

    We declare under penalty of perjury that the foregoing is true and correct.

Executed on May 28, 2021


    __/s/ David Boies_____                    __/Michael D. Hausfeld_____

David Boies                                          Michael D. Hausfeld
Boies Schiller Flexner LLP                           Hausfeld LLP
Armonk, NY                                           Washington, DC

# EXHIBIT A



# Boies Schiller Flexner LLP

Boies Schiller Flexner LLP ("BSF") is one of the nation's preeminent litigation firms.

BSF is selected by major corporations, institutions, and individuals who have a choice of any attorney in the world for their most important matters.

Since its founding in 1997, BSF has handled a number of prominent and high-stakes litigation matters, of which the following is a representative sample:

- Representing the United States Government as lead counsel in its successful antitrust trial against Microsoft.

- Representing the class of auction house sellers and buyers in achieving a $512 million settlement from Sotheby's and Christies that another plaintiffs' counsel described as "the most outstanding result I have ever heard of in the history of the antitrust laws."

- Representing Al Gore in his litigation before the United States Supreme Court and the courts of Florida in connection with the recount litigation associated with the 2000 U.S. Presidential election.

- Serving as co-lead counsel for the class of vitamins purchasers and achieving a settlement of over $1 billion in *In re Vitamins Antitrust Litigation,* MDL 1285 (D.D.C.), as well as a jury verdict of over $50 million (pre-trebling) against the defendants that did not settle.

- Winning a defense verdict from a New York jury for Lloyds of London relating to an insurance coverage dispute arising out the September 11, 2001 terrorist attacks.

- Achieving a $4.1 billion recovery for American Express in its antitrust case against VISA and Mastercard relating to exclusionary practices governing bank partnerships – which was the largest recovery ever for a private plaintiff in an antitrust case.

- Winning a jury verdict against SAP that awarded a $1.3 billion judgment to Oracle, which was the largest ever verdict in a copyright infringement case.

- Successfully representing Barclays in litigation arising out of its 2008 purchase of the assets of Lehman Brothers' North American broker-dealer business out of bankruptcy.  Following the longest bankruptcy trial in American history and appeals to the SDNY and Second Circuit, we defeated a $13 billion claim that Barclays had fraudulently underpaid for those assets and recovered approximately $8.3 billion of additional assets for Barclays



on its contractual claims against the Lehman Bankruptcy Estate and the SIPC Trustee

- Achieving over $220 million in recoveries serving as co-lead counsel for the direct purchaser class in the *In re Municipal Derivatives Antitrust Litigation* in federal court in New York.

- Achieving over $440 million for the direct purchaser class in the matter *In re Polyurethane Foam Antitrust Litigation* in federal court in Ohio.

- In *In re TFT-LCD (Flat Panel) Antitrust Litigation* (N.D. Cal), successfully represented 12 corporate opt-out plaintiffs who were victims of price-fixing in the market for LCD panels and recovered approximately $500 million in damages.

- In *In Re: Cathode Ray Tube (CRT) Antitrust Litigation* (N.D. Cal.), represented corporate opt-out plaintiffs that were victims of a price-fixing cartel involving Cathode Ray Tubes (CRTs) used in televisions and computer monitors, and achieved total recoveries of more than $250 million as well as the reversal of a $70 million adverse trial court ruling from the Ninth Circuit.

- Representing the victims of Jeffrey Epstein and Ghislaine Maxwell in bringing the underage sex trafficking to public light and in generating prosecutions in New York after years in which prosecutors and the press largely ignored the misconduct.

- Achieving an historic $65.5 million recovery in January 2019 on behalf of a class of au pairs in bringing claims for violations of state and federal employment laws, as well as antitrust and state unfair competition laws.

As this representative sample of cases demonstrates, BSF has handled a wide array of high-stakes litigation matters, and has had unusual success for both plaintiffs and defendants.  Set forth below, we include some of what outside commentators or clients have said about us.  Below that, we list our specific experience in class action cases and in antitrust cases.  We then provide the individual resumes of some of the leading BSF lawyers working on this *In re Blue Cross Blue Shield* matter.



# What Others Have Said About BSF

"Some law firms go to trial only as a last resort. Not Boies, Schiller & Flexner. Over the past two years, the firm scored almost all of its biggest wins at the trial level – many of them on the plaintiffs side. Unlike most of its Am Law 200 competitors, Boies Schiller seems more comfortable playing offense than defense."
    -*The American Lawyer, "On the Offense"*

"Companies turn to Boies Schiller when their cases hit crunch time"
    -*The National Law Journal, "Washington Litigation Departments of the Year"*

"The firm from its inception has focused on preparing cases for trial from the first day of the case."
    -*The National Law Journal, "Washington Litigation Departments of the Year"*

"Boies Schiller is known as the go-to law firm for high-stakes, high-profile litigation— what executives and corporate lawyers call "bet the company" cases."
    -*The Washington Post, "Boies Schiller & Flexner takes 'vigorous focus' to D.C."*

"In international disputes, they're as thoughtful and analytical at problem solving as any firm I can think of."
    -*Matthew Biben, quoted in The American Lawyer, "Galaxy of Bright Lights"*

"From corralling the litigation against Pfizer Inc. over the drug Neurontin…to clearing hurdles for investors who lost more than $5 billion in Bernard Madoff's Ponzi scheme, Boies's partners have taken the lead in a string of high-stakes matters."
    -*The American Lawyer, "Galaxy of Bright Lights"*

"One of America's most successful and sought after law firms for cases that matter"
    -*The American Lawyer, "Don't Bet Against this House"*

"The Boies, Schiller strategy—mixing plaintiffs cases with defense matters, picking clients whose work fits with the firm's long-term goals, and employing creative billing methods—looks built for the times."
    -*The American Lawyer, "Don't Bet Against this House"*

"has grown into a national litigation powerhouse"
    -*The Wall Street Journal, "Upstart Law Firm Becomes Litigation Powerhouse in U.S"*

"stylish eccentricity, casual brilliance, and passionate workaholism"
    -*The American Lawyer, "Boies Schiller's Big Year"*

"the most powerful litigation turbine in America"
    -*Lawdragon, "The Romantics"*



"They're fantastic. They are absolutely trial lawyers, and they're extremely responsive and intelligent"
>    -*Client feedback from Chambers & Partners*

"Guardsmark, LLC considers Boies, Schiller & Flexner to be one of the world's greatest law firms. The firm has a certain persistence for perfection which allows them to reach excellence in most circumstances. They are, without question, among the very best of the best law firms."
>    -*Ira A. Lipman, Former Founder, Chairman & President, Guardsmark, LLC*

"The Del Monte Fresh Produce group of companies has utilized Boies, Schiller & Flexner for a number of years in "high-stakes" litigations across the country. They have the resources and expertise to consistently provide the highest-quality legal and personal services. Their focus has always been to seek the best outcome for the client as economically and efficiently as possible. Quite simply they are responsive, reliable, and client-result-oriented."
>    -*Bruce Jordan, Vice-President, General Counsel and Secretary, Fresh Del Monte Group of Companies*

"Simply, the best. When it comes to 'prime time' litigation, CBS comes to BS&F."
>    -*Louis J. Briskman, Former Executive Vice President and General Counsel, CBS Corporation*

"Philip Morris USA relies on Boies, Schiller & Flexner to represent us in some of our most important and complex matters. We hire them because they have the ability to win cases before they ever get to trial – as they have done for us in several very significant matters– and also because they are real trial lawyers who win in the courtroom."
>    -*Jose L. Murillo, Jr., Former Vice President and Associate General Counsel, Altria*

"DuPont looks to Boies, Schiller & Flexner as one of our principal go-to firms for investigations and litigation in antitrust and other complex subjects."
>    -*Thomas L. Sager, Former Vice President and Assistant General Counsel for Litigation, E.I. DuPont de Nemours & Company*

"The quality of the firm's legal work is unsurpassed, and for any major litigation around the country, I would, and have chosen BS&F to represent us."
>    -*Debra L. Burns, Esq., Former Vice-President and Senior Litigation Counsel, Hillenbrand Industries, Inc.*

"We rely upon Boies, Schiller & Flexner as lead counsel in some of our most complex and challenging cases, and they always deliver. They are true warriors."
>    -*Richard N. Baer, Former Executive Vice President and General Counsel, Qwest Communications Int'l Inc.*



# Recognized for Excellence

Boies Schiller Flexner and our attorneys are continually ranked in top publications including, Chambers Global, Chambers USA, and Chambers UK, with our antitrust practice being consistently among the most highly rated.

Our partners have been named to Lawdragon 500 Global Litigation Lawyers and Lawdragon 500 Leading Lawyers in America.

Benchmark Litigation has listed our attorneys in the Top 100 Trial Lawyers. Our lawyers are included in Benchmark's list of the Top 10 Women in Litigation in the United States and the Top 250 Women in Litigation. BSF was named Appellate Firm of the Year by Benchmark Litigation, which recognized the firm's growing stature in the appellate area, based on a survey of peer firms nationwide. Benchmark described the firm as one whose "undeniable strength has been proven several times over with leading roles in the country's most groundbreaking cases, often at the Supreme Court."

Our firm is ranked in Legal 500 US and Legal 500 UK, with our antitrust practice in both plaintiff and defense recognized as tier 1. David Boies is in the Legal 500 Hall of Fame and partners in our London office were named to the Legal 500 International Arbitration Powerlist UK.

Our partners have been named Litigator of the Year by the American Lawyer four times and as Litigator of the Week by the American Lawyer more than a dozen times. The National Law Journal awarded Boies Schiller Lawyers of the Year two different times and named BSF Chairman David Boies one of the 100 Most Influential Lawyers. David was also named Global Litigation Lawyer of the Year by Who's Who Legal.

Individual BSF partners have also been recognized by the Daily Business Review as a finalist for Attorney of the Year, a Distinguished Leader in its 2020 Professional Excellence Awards, and as Most Effective Appellate Lawyer.

Boies Schiller Flexner was named a Finalist in The American Lawyer's Litigation Department of the Year awards twice. The American Lawyer wrote that, while some law firms go to trial only as a last resort, Boies, Schiller & Flexner "seems more comfortable playing offense than defense."

Both the New York Law Journal and Law360 have recognized many of our young partners as Rising Stars, which lists the most promising lawyers 40 and younger.



# Class Action Cases in which BSF has been (or is currently) Lead or Co-Lead Counsel for the Class:

BSF has served as lead or co-lead plaintiff's counsel in numerous complex class actions. These class action cases have involved a variety of claims relating to such matters as antitrust and securities fraud. The Firm enjoys one of the most selective and successful class action practices in the country. Since its inception, Boies, Schiller & Flexner has negotiated record settlements and won substantial verdicts on behalf of class members in several prominent cases. A representative sample of the cases in which the firm has played a leading role on behalf of a class includes:

- In *Thompson et al. v. 1-800 Contacts, Inc. et al.* (D. Utah), acting as co-lead counsel for a consumer class alleging antitrust violations in the marketing of contact lenses on the internet, the firm has secured approximately $40 million in settlements to date.

- In *Beltran v. InterExchange Inc.* (D. Colo.), acting as co-lead counsel on behalf of a class of exploited domestic workers, the firm secured wide-ranging non-monetary relief as well as a damages settlement of $65.5 million.

- In *Erica P. John Fund v. Halliburton*, a securities class action which took 14 years, repeat visits to the Fifth Circuit Court of Appeals, and produced two major wins for plaintiffs in the United States Supreme Court, the firm obtained a $100 million settlement for the class.

- As co-lead counsel in a class action against the State of Florida, the firm secured a settlement that will improve medical and dental care for more than two million children covered by Florida's Medicaid program.

- Acting on behalf of defrauded investors, the firm recovered $235 million from Bernard Madoff feeder funds and a major accounting firm which had audited those funds.

- The firm currently serves as co-lead counsel in multiple class actions on behalf of shareholders in Fannie Mae and Freddie Mac who object to the government's sweep of the profits earned by those entities into the U.S. Treasury. *See In re Fannie Mae/Freddie Mac Senior Preferred Stock Purchase Agreement Class Action Litigations*, Case No. Misc. Action No. 13-mc-1288 (RCL); *Caciappalle v. United States*, Case No. 13-466C (Court of Federal Claims).



- On behalf of a class of college athletes the firm obtained injunctive relief following an antitrust trial against the NCAA in *O'Bannon v. NCAA*.

- As co-lead counsel for the class in *In re Polyurethane Foam Antitrust Litigation* in federal court in Ohio, the firm secured over $440 million in settlements.

- The firm played a lead role as co-lead counsel in the Takata MDL, recovering $1.5 billion in settlements for class members.

- As co-lead counsel in *In re Municipal Derivatives Antitrust Litigation* (S.D.N.Y.), the firm recovered more than $220 million in settlements for a class of municipal entities in a price-fixing case. For our work on this case, we received the award for the Outstanding Antitrust Litigation Achievement in Private Law Practice from the American Antitrust Institute.

- In 2000, BSF was lead counsel in *In re Auction Houses Litigation* (S.D.N.Y.) and negotiated a $512 million settlement on behalf of the plaintiff class, which was described by another plaintiff s counsel as "the most outstanding result I have ever heard of in the history of the antitrust laws."

- The firm has been appointed lead or co-lead counsel in 11 separate class actions involving student loans and credit reporting.

- In an ongoing litigation, BSF secured certification of a nationwide RICO class and several state antitrust classes against Mylan over allegations of anticompetitive and unfair business practices that led to the massive increases in the price of the EpiPen.

- The firm represented the National Basketball Players Association in their historic class action lawsuit against the NBA, accusing the league of conspiring to deny them their right to offer their services in the pro basketball market through an unlawful group boycott and price-fixing arrangement; resulted in a settlement that allowed the players to return to work and saved the 2011-2012 NBA season.

- In *Echevarria v. Bank of America Corp.*, *Haynes v. Chase Bank USA*, and *Anderson v. Capital One Bank USA* (S.D.N.Y.), acting as lead counsel on behalf of classes of consumers whose debts were illegally collected after bankruptcy, secured an injunctive relief and settlements for $26.5 million in monetary damages.

- BSF has extensive experience in pharmaceutical class action matters.  The firm has served as co-lead counsel in *In re Cardizem*



CD *Antitrust Litigation,* MDL No. 1278, Civil Action No. 99-cv-732589 and 99-cv-73870 (E.D. Mich. 2002) ($110 million recovery), in *In re Buspirone Antitrust Litigation,* MDL No. 1413, Civil Action No. 01-CV- 7951 (JAK) (S.D.N.Y. 2002) ($220 million recovery), and *In re Terazosin Hydrochloride Antitrust Litigation,* MDL No. 1317, Civil Action No. 99- 7143-Civ-Seitz (S.D. Fla.) ($75 million recovery).

- BSF has represented plaintiff classes of securities holders in *Rory Riggs and John Lewis v. Termeer, Genzyme Corp., et al.,* No. 03-CV- 4014 (LLS) (S.D.N.Y.) ($64 million recovery) and purchasers of the prescription drug Hytrin.  Boies Schiller Flexner served as co-lead counsel for plaintiff shareholder classes in *In re Alcatel Alsthom Securities Litigation,* MDL No. 1263, Civil Action No. 4:98-CV -320 (E.D. Tex. 2001) ($75 million recovery).

8



# Biographies of leading BSF lawyers working on In re Blue Cross and Blue Shield:

## David Boies



David Boies has been the Chairman and a Managing Partner of Boies Schiller Flexner since its founding in 1997.

David is a preeminent dispute resolution advocate and counselor. He represents both plaintiffs and defendants in both litigation and arbitration both in the United States and internationally. He has successfully defended clients such as Barclays, CBS, HSBC, Lloyds, the National Football League, Starr International, Westinghouse, and the New York Yankees in their most important commercial, antitrust, securities, intellectual property, and regulatory disputes. Clients for whom as plaintiffs he has recovered more than $1 billion include American Express (twice, with the largest private antitrust recovery in history), the FDIC, Oracle (with the largest copyright verdict in history), and Starr International.

David is a leading class action lawyer, both successfully defending his clients in such cases and achieving multiple billion dollar recoveries for classes he represents as lead counsel.

David has a long history of government service. He served as Chief Counsel and Staff Director of the United States Senate Antitrust Subcommittee in 1978 and Chief Counsel and Staff Director of the United States Senate Judiciary Committee in 1979. In 1991-1993, he was counsel to the Federal Deposit Insurance Corporation, recovering $1.2 billion from companies who sold junk bonds to failed savings and loan associations.

In 1998-2000, David served as Special Trial Counsel for the United States Department of Justice in its antitrust suit against Microsoft. He also served as the lead counsel for former Vice-President Al Gore in connection with litigation relating to the 2000 election Florida vote count. As co-lead counsel for the plaintiffs in Perry v. Brown, he won the first judgment establishing the right to marry for gay and lesbian citizens under the U.S. Constitution.

David has been selected as one of the 100 Most Influential People in the World by Time Magazine (2010). He has been named Global International Litigator of the Year by Who's Who Legal an unprecedented seven times; the Litigator of the Year



by The American Lawyer; the Lawyer of the Year by The National Law Journal (twice); the Antitrust Lawyer of the Year by the New York Bar Association; Best Lawyers in America from 1987-2021; Lawdragon 500 Leading Lawyers; and a Star Individual by Chambers USA. In 2013 he was named one of the Top 50 Big Law Innovators of the Last 50 Years by The American Lawyer.

David is the recipient of Honorary Degrees from a number of Universities including an Honorary Doctor of Laws from New York University and an Honorary Doctor of Letters from the Chicago Theological Seminary. His awards include the Award of Merit from the Yale Law School, the ABA Medal from the American Bar Association, the Vanderbilt Medal from New York University Law School, the Pinnacle Award from the International Dyslexia Association, the William Brennan Award from the University of Virginia, the Role Model Award from Equality Forum, the Lead by Example Award from the National Association of Women Lawyers, the Torch of Learning Award from the American Friends of Hebrew University, the Eisendrath Bearer of Light Award from the Union for Reform Judaism, and a Lifetime Achievement Award from the Mississippi Center for Justice.

David was born in Sycamore, Illinois on March 11, 1941. He attended the University of Redlands (1960-62), and received a B.S. from Northwestern University (1964), an LL.B., magna cum laude from Yale University (1966), and an LL.M. from New York University (1967).

He is a member of Phi Beta Kappa, a Fellow of the American College of Trial Lawyers and the International Academy of Trial Lawyers; and a Trustee of the Cold Spring Harbor Laboratory and New York University Law School Foundation. He is the author of numerous publications including Courting Justice (2004), Redeeming the Dream (with Ted Olson), and Public Control of Business (with Paul Verkuil) (1977). He has taught courses at New York University Law School and Cardozo Law School.



# In The News

"The Litigator: David Boies, The Wall Street Lawyer Everyone Wants,"
   -*The New York Times Magazine*, June 1, 1986

"Boies isn't just a lawyer. He's been called the Michael Jordan of lawyers, a court magician who could leave Socrates tongue-tied or juke Thomas Aquinas out of his shoes. When Boies cross-examines you, you feel as if he's taken your clothes."
   -*Forbes, Democrats' Ace In The Hole: David Boies, November 15, 2000*

"…a symbol of the Lawyering of America"
   -*Time* magazine, "Get Me Boies!" December 17, 2000

"David gets newly discovered by every generation."
   -*George Vradenburg, former general counsel for CBS, as quoted in: Time magazine, "Get Me Boies!" December 17, 2000*

"…a previously undiscovered species of superstar lawyer."
   -*Time* magazine, "Get Me Boies!" December 17, 2000

"…a monomaniacal competitor, a man who hates to lose."
   -*New York* magazine, "Boies will be Boies," February 26, 2001

"But the discussion halts and all heads turn when the true man-of-the-moment ambles within range. It's David Boies, **the superlawyer who humbled Bill Gates and changed Microsoft forever**, who collected $512 million in damages for customers ripped off by Christie's and Sotheby's, and **who became a cultural hero in the war to recount Florida's presidential ballots**. The presence of Boies as Klein's trial lawyer [was] a major reason why all of a sudden there is no trial."
   -*New York* magazine, "Boies will be Boies," February 26, 2001

"David Boies is the real thing. He masters the most complex subjects at lightning speed and then communicates the essential points in completely clear and totally accessible language. He's a mighty good friend to have on top of that."
   -*Al Gore, as quoted in New York magazine, "Boies will be Boies," February 26, 2001*

"…David has a Lincolnesque quality…"
   -*Sen. Joseph Lieberman, as quoted in New York magazine, "Boies will be Boies," February 26, 2001*

"He focuses on the witness, and the witness is almost hypnotized. David will lead him or her down a path, using the witness's own words or reasons and then puts them in a logical chain that leads them to a conclusion that was the opposite of what they wanted to say."
   -*Former Solicitor General of the United States Theodore Olson as quoted in Vanity Fair, The Man Who Ate Microsoft, March 22, 2003*



"Brilliant and tireless, he may be the greatest trial lawyer alive."
   -*Vanity Fair*, *The Man Who Ate Microsoft, March 22, 2003*

"Yesterday at the *Perry v. Schwarzenegger* trial was the day you got to see David Boies set loose on a witness, and, to judge by the transcript, **his cross-examination was a little like watching your cat play with his food before he eats it.**"
   -*The New Yorker*, *Boies at Play, January 26, 2010*

"David Boies -- "the Michael Jordan of trial attorneys," as he was introduced at the Lawyers' Club of San Francisco annual California Supreme Court lunch."
   -*Law.com*, *"Superstar Litigator Calls for Cheaper Trials," May 3, 2010*

"David Boies is one of the handful of smartest lawyers in the world, "the Tiger Woods of the legal profession,"
   -*ZDNet*, *"A litigator's view: Three things I know about Oracle v. Google," May 24, 2012*

"…one of the most distinguished figures in the legal profession: David Boies, one of the country's greatest living trial lawyers."
   -*Original Jurisdiction*, *What's Going On At Boies Schiller Flexner? December 3, 2020*



# Hamish Hume



Hamish has successfully served as lead trial counsel for a number of significant firm clients and Fortune 500 companies. He is a general litigator who has handled cases across a broad array of subject areas. But before he became a general litigator, Hamish was a specialist – first in tax law, then in constitutional law. This unique background has made Hamish an unusually versatile litigator who excels at mastering complex factual and legal issues and distilling them into simple, compelling, and winning arguments.

His experience includes acting as lead counsel for Fannie and Freddie shareholders suing over August 2012 Net Worth Sweep. He also served as lead counsel for health insurance subscribers suing Highmark and UPMC for antitrust violations. He successfully represented "Hot Lanes" motorists challenging excessive fines, and was the successful first chair in expert phase of trial involving $5 billion valuation dispute. He also was the lead role in successful representation of Barclays in $13 billion trial and cross-examined fact and expert witnesses in winning $109 million judgment against United States.

Hamish was recognized as a Litigation Trailblazer by The National Law Journal in 2017 and as the Litigator of the Week by the American Lawyer's Litigation Daily. He was also part of the team who received Washington Litigation Department of the Year Finalist from The National Law Journal.

Hamish received his J.D. from the University of Virginia School of Law, where he was a member of the University of Virginia Law Review. He received his B.A. in Jurisprudence from Oxford University, where he was part of Oxford Rowing Blue. He graduated *cum laude* from Yale University with his B.A. in Humanities and Distinction in the Major. He was Captain of Yale Heavyweight Rowing.



# Richard Feinstein



Rich's primary practice area is complex litigation, with a particular emphasis on antitrust matters. He frequently represents plaintiffs and defendants in private litigation, in addition to representing parties and third parties in the context of DOJ, FTC and State Attorney General investigations and litigation. He also advises clients regarding transactions—both their own and those of others—including mergers or acquisitions that may be subject to review by federal, state or international antitrust authorities. His experience includes both criminal and civil antitrust jury trials, and he is relied upon by clients for clear and practical guidance shaped by years of experience in antitrust enforcement and private practice. Rich has served as lead or co-lead counsel in a number of prominent cases, including, for example, FTC v. Mylan Laboratories.

Rich rejoined the firm in December 2013 after serving for four years as the Director of the Bureau of Competition at the Federal Trade Commission. He directed the FTC's antitrust enforcement activity during a period when approximately 80 enforcement actions were initiated in a wide variety of industries. Major matters included, among others, two victories in the Supreme Court (involving pay-for-delay and state action), successful challenges to hospital mergers, and Intel and Google consent orders. He also participated directly in drafting and implementing the 2010 Horizontal Merger Guidelines.

Prior to serving as Bureau Director, Rich was a partner in the firm's Washington office from 2001 to 2009. From October 1998 to June 2001, he served as an Assistant Director of the Bureau of Competition, in charge of the Health Care Services and Products Division. The work of that Division focused on antitrust enforcement in the health care industry, including anticompetitive practices and mergers involving health care providers, and anticompetitive conduct in the pharmaceutical industry.

Before initially entering private practice in 1985, Rich worked as a trial attorney in the Antitrust Division of the U.S. Department of Justice, and also served as Acting Deputy Director of the Division's Office of Policy Planning and as Acting Assistant Chief of the Division's Energy Section.

Rich received his J.D. from Boston College Law School and graduated from Yale University with his B.A. in American Studies.



# Jonathan Shaw

Jonathan has represented plaintiffs and defendants in bet-the-company litigation for more than a quarter of a century. He has successfully litigated antitrust, class action, securities, RICO, contractual, tort, intellectual property, and other high-stakes commercial disputes in federal and state courts throughout the United States. In addition to his litigation work, Jonathan regularly provides strategic advice and counsel to clients.

Jonathan's experience includes representing the class in a securities fraud action against Genzyme, Inc., which settled for $64 million (SDNY). He was co-lead counsel representing class of municipal entities in a case alleging price-fixing of municipal derivative investment products, resulting in more than $220 million in settlements (SDNY).

In litigation arising from its 2008 purchase of Lehman Brothers' North American broker-dealer business, he represented Barclays, defeating a $13 billion claim that Barclays had fraudulently underpaid for the assets it purchased and winning $8.3 billion in additional assets (SDNY, Second Circuit, Supreme Court). Jonathan also successfully defended Barclays against allegations of fraud, breach of contract, and RICO violations brought by partners of Dewey & LeBouef, who sought to avoid repaying partnership capital loans (DC, New York, and Illinois federal courts).

He also represented Genesco, Inc., against UBS and Finish Line in a merger case. The court rejected the defendants' fraud and material adverse event claims, and ordered Finish Line to close on its $1.5 billion purchase of Genesco. The case settled with Genesco receiving $175 million in cash plus 12.5% of Finish Line's stock (Tennessee Chancery Court and SDNY). He also defeated emergency motions by community activists trying to derail construction of the new Yankee Stadium (New York state and federal courts).

Jonathan also received an award for the Outstanding Antitrust Litigation Achievement in Private Law Practice from the American Antitrust Institute for his work in In re Municipal Derivatives Antitrust Litigation, which recovered more than $220 million for a class of municipal entities.

Before joining the firm in 2005, Jonathan was a partner in the Seattle office of Susman Godfrey, an associate at Wiley, Rein & Fielding in Washington D.C. and a law clerk for the late Frank A. Kaufman of the U.S. District Court for the District of Maryland.



Jonathan graduated cum laude with his J.D. from University of Pennsylvania Law School, where he was Associate Editor of the Law Review. He received his B.A. in History from Johns Hopkins University with Departmental Honors as a Beneficial-Hodson Scholar.



# Adam Shaw



Adam solves complex business and consumer disputes in courts and regulatory proceedings across the country. Clients rely on his more than 30 years' experience to assist them with successfully prosecuting and defending consumer and securities fraud cases, recovering millions of dollars for corporations and plaintiff classes. His extensive experience includes trying cases to verdict before juries and judges. Adam understands his clients' business operations and goals, and brings sound judgment to all of his representations.

Adam has recovered over $25 million as class counsel for consumers whose debts were illegally collected after bankruptcy. He has also represented the class of borrowers in multiple class actions to recover for wrongful collection of student loans. He succesfully recovered over $50 million for global chemical company and global construction company for securities fraud.

Adam's firm leadership roles include managing the firm's Albany office and leading the firm's eDiscovery practice. He manages and has extensive experience with the discovery efforts in large and complex international and multidistrict litigation. He leads teams in the collection and analysis of terabytes of data from sources across the globe.

Passionate about serving the community, Adam serves as pro bono trial counsel for the U.S. District Court for the Northern District of New York. After conducting more than six jury trials and litigating dozens of other cases, he received the Pro Bono Service Award from the Court.

His leadership roles in the legal community include having served as president of the Federal Court Bar Association for the Northern District of New York and he writes a column, the "Northern District Roundup," for the New York Law Journal.

Adam graduated *cum laude* with his J.D. from Albany Law School, where he received the Cardozo Prize and Matthew Bender Prize and was also the Editor-in-Chief of the Albany Law Review. He received his M.B.A. from Union College and graduated *cum laude* from the State University of New York with his B.S. in History.

# EXHIBIT B



# HAUSFELD FIRM RESUME

www.hausfeld.com

# About Hausfeld

In the last decade, Hausfeld attorneys have won landmark trials, negotiated complex settlements among dozens of defendants, and recovered billions of dollars for clients both in and out of court. Renowned for skillful prosecution and resolution of complex and class-action litigation, Hausfeld is the only claimants' firm to be ranked in the top tier in private enforcement of antitrust/competition law in both the United States and the United Kingdom by The Legal 500 and Chambers & Partners. Our German office was also ranked by The Legal 500 for general competition law.

From our locations in Washington, D.C., Boston, New York, Philadelphia, San Francisco, Amsterdam, Berlin, Brussels, Paris, Düsseldorf, Stockholm, and London, Hausfeld contributes to the development of law in the United States and abroad in the areas of Antitrust/Competition, Commercial and Financial Disputes, Environmental and Product Liability, Human Rights, and Technology and Data Breach. Hausfeld attorneys have studied the global integration of markets—and responded with innovative legal theories and a creative approach to claims in developed and emerging markets.

Hausfeld was founded by Michael D. Hausfeld, who is widely recognized as one of the country's top civil litigators and a leading expert in the fields of private antitrust/competition enforcement and international human rights. The New York Times has described Mr. Hausfeld as one of the nation's "most prominent antitrust lawyers," while Washingtonian Magazine characterizes him as a lawyer who is "determined to change the world—and succeeding," noting that he "consistently brings in the biggest judgments in the history of law."

## Antitrust and competition litigation

Hausfeld's reputation for leading groundbreaking antitrust class actions in the United States is well-earned. Having helmed more than 40 antitrust class actions, Hausfeld attorneys are prepared to **litigate and manage cases with dozens of defendants** (*In re Blue Cross Blue Shield Antitrust Litigation,* with more than thirty defendants), **negotiate favorable settlements for class members and clients** (*In re Air Cargo Shipping Services Antitrust Litigation,* settlements of more than $1.2 billion, and *In re Blue Cross Blue Shield Antitrust Litigation,* $2.67 billion settlement), **take on the financial services industry** (*In re Foreign Exchange Antitrust Litigation,* with settlements of more than $2.3 billion), take cartelists to trial (*In re Vitamin C Antitrust Litigation,* trial victory of $162 million against Chinese manufacturers of Vitamin C), and **push legal boundaries where others have not** (*O'Bannon v. NCAA,* another trial victory in which the court found that NCAA rules prohibiting additional scholarship payments to players as part of the recruiting process are unlawful).



## Hausfeld is 'the world's leading antitrust litigation firm.'

Politico

# HAUSFELD
## FOR THE CHALLENGE

# Hausfeld: a global reach

Hausfeld's international reach enables it to advise across multiple jurisdictions and pursue claims on behalf of clients worldwide. Hausfeld works closely with clients to deliver outstanding results while always addressing their business concerns. Hausfeld does so by anticipating issues, considering innovative strategies, and maximizing the outcome of legal disputes in a way that creates shareholder value. Its inventive cross border solutions work to the benefit of the multinational companies it often represents.

## Creative solutions to complex legal challenges

Hausfeld lawyers consistently apply forward-thinking ideas and creative solutions to the most vexing global legal challenges faced by clients. As a result, the firm's litigators have developed numerous innovative legal theories that have expanded the quality and availability of legal recourse for claimants around the globe that have a right to seek recovery. Hausfeld's impact was recognized by the Financial Times, which honored Hausfeld's European team with the "Innovation in Legal Expertise - Dispute Resolution," award, which was followed up by FT commending Hausfeld's North American team for its innovative work in the same category. In addition, The Legal 500 has ranked Hausfeld as the only top tier claimants firm in private enforcement of antitrust/competition law in both the United States and the United Kingdom. For example, the landmark settlement that Hausfeld negotiated to resolve claims against Parker ITR for antitrust overcharges on marine hoses represented the first private resolution of a company's global cartel liability without any arbitration, mediation, or litigation—creating opportunities never before possible for dispute resolution and providing a new model for global cartel settlements going forward.

## Unmatched global resources

The firm combines its U.S. offices on both coasts and vibrant European presence with a broad and deep network around the globe to offer clients the ability to seek redress or confront disputes in every corner of the world and across every industry. With over 140 lawyers in offices in Washington, D.C., Boston, New York, Philadelphia, San Francisco, Amsterdam, Berlin, Düsseldorf, Brussels, Paris, Stockholm, and London, Hausfeld is a "market leader for claimant-side competition litigation" (The Legal 500).



**A prominent litigation firm, renowned for its abilities representing plaintiffs in multidistrict class action antitrust suits across the country involving a wide variety of antitrust issues including monopolization, price manipulation and price-fixing.**

Chambers and Partners



**Hausfeld, which 'commits extensive resources to the most difficult cases,' widely hails as one of the few market-leading plaintiff firms.**

The Legal 500



**Primarily in the antitrust capacity, Hausfeld is an undisputed trailblazer, identified as a ubiquitous presence by peers on both the plaintiff and defense sides of the 'V.'**

Benchmark Litigation



**FOR THE CHALLENGE**

# Antitrust litigation

## Hausfeld's antitrust litigation experience is unparalleled

Few, if any, U.S. law firms are litigating more class actions on behalf of companies and individuals injured by anticompetitive conduct than Hausfeld. The firm has litigated cases involving price-fixing, price manipulation, monopolization, tying, and bundling, through individual and class representation and has experience across a wide variety of industries, including automotive, aviation, energy, financial services, food & beverage, healthcare, manufacturing, retail, and the transportation and logistics sectors. Clients rely on us for our antitrust expertise and our history of success in the courtroom, and at the negotiation table, and the firm does not shy away from challenges, taking



**Hausfeld, 'one of the most capable plaintiffs' firms involved in the area of civil cartel enforcement,' is [w]idely recognised as a market leader for claimant-side competition litigation… [It is the] market leader in terms of quantity of cases, and also the most advanced in terms of tactical thinking.**
The Legal 500

on some of the most storied institutions. Hausfeld is not only trusted by its clients, it is trusted by judges to pursue these claims, as evidenced by the fact that the firm has been appointed as lead or co-lead counsel in dozens of antitrust cases in the last decade. In one example, Judge Morrison C. England of the Eastern District of California praised Hausfeld for having "the breadth of experience, resources and talent necessary to navigate" cases of import.

Recognizing the firm's antitrust prowess, Global Competition Review has opined that Hausfeld is "one of—if not the— top Plaintiffs' antitrust firm in the U.S." The Legal 500 and Chambers and Partners likewise consistently rank Hausfeld among the top five firms in the United States for antitrust

litigation on behalf of plaintiffs. And in naming Hausfeld to its Plaintiffs' Hot List, The National Law Journal opined that Hausfeld "punches above its weight" and "isn't afraid to take on firms far larger than its size and deliver results, especially in antitrust litigation."

## Hausfeld has achieved outstanding results in antitrust cases

Hausfeld lawyers have achieved precedent-setting legal decisions and historic trial victories, negotiated some of the world's most complex settlement agreements, and have collectively recovered billions of dollars in settlement and judgments in antitrust cases. Key highlights include:

- *In re Foreign Exchange Benchmark Rates Antitrust Litig.*, **13-cv-7789 (S.D.N.Y.)**
  Hausfeld serves as co-lead counsel in this case alleging financial institutions participated in a conspiracy to manipulate a key benchmark in the foreign exchange market. To date, the firm has obtained over **$2.3 billion** in settlements from **fifteen defendants.** The case is ongoing against the remaining defendant.

- *In re LIBOR-Based Financial Instruments Antitrust Litig.*, **No. 11-md-2262 (S.D.N.Y.)**
  Hausfeld serves as co-lead counsel in this case against sixteen of the world's largest financial institutions for conspiring to fix LIBOR, the primary benchmark for short-term interest rates. To date, the firm has obtained **$590 million** in settlements with four defendants. An antitrust class has been certified and the case is ongoing against the remaining defendants.

- *In re Blue Cross Blue Shield Antitrust Litig.,* **No. 13-mdl- 2496 (N.D. Ala.)**
  The Court appointed Hausfeld attorneys as co-lead counsel, and to the Plaintiffs' Steering Committee, in this case against Blue Cross Blue Shield entities. This case was brought against over 30 Blue Cross companies and its trade association (BCBSA), and alleges that they illegally agreed not to compete with each other for health insurance subscribers across the United States. After defeating motions to dismiss, Hausfeld marshalled evidence from a record that consisted of over 14 million documents from more than thirty defendants and won a landmark ruling when the district court ruled that the per se standard would

# HAUSFELD

## FOR THE CHALLENGE

be applied to defendants' conduct. In November 2020, the Court granted preliminary approval to the proposed settlement agreement resolving the claims of Blue Cross Blue Shield subscribers for $2.67 billion. In addition to monetary relief, the settlement proposes systemic injunctive relief that will change the landscape for competition in healthcare.

- *O'Bannon v. NCAA*, No. 09-cv-03329 (N.D. Cal.)
  In the landmark O'Bannon litigation, Hausfeld represented college athletes who collectively alleged that the NCAA, its members, and its commercial partners, violated federal antitrust law by unlawfully foreclosing former players from receiving any compensation related to the use of their names, images, and likenesses in television broadcasts, rebroadcasts, and videogames. In 2013, the plaintiffs announced a $40 million settlement agreement with defendant Electronic Arts, Inc., which left the NCAA as the remaining defendant. Following trial in 2014, the Court determined that the NCAA had violated the antitrust laws and issued a permanent injunction. The Ninth Circuit affirmed the NCAA's violation of the antitrust laws and upheld significant injunctive relief—the practical effect of which is that college athletes can now each receive up to $5,000 more every year as part of their scholarship package (to cover their education, travel and medical expenses, and acquire pre-professional training as they enter the work force).

- *In re Vitamin C Antitrust Litig.*, No. 06-md-01738 (E.D.N.Y.)
  Hausfeld serves as co-lead counsel in the first class antitrust case in the United States against Chinese manufacturers. Hausfeld obtained settlements for the class of **$22.5 million from two of the defendants**—the first after summary judgment, and the second just before closing arguments at trial. Days later, the jury reached a verdict against the remaining defendants, and the court entered a judgment for **$148 million** after trebling the damages awarded. On appeal to the U.S. Supreme Court, our clients prevailed, and the case was remanded for further consideration by the Second Circuit.

- *In re Air Cargo Shipping Services Antitrust Litig.*, No. 06-md-1775 (E.D.N.Y.)
  Hausfeld served as co-lead counsel in this case alleging over thirty international airlines engaged in a conspiracy to fix the price of air cargo shipping services. The firm negotiated more than **$1.2 billion** in settlements from over 30 defendants for the class, won certification of the class and defeated the defendants' motions for summary judgment.

- *In re Packaged Seafood Products Antitrust Litigation*, No. 3:15-md-02670-JLS-MDD (S.D. Cal.)
  The Court appointed Hausfeld attorneys as sole interim lead counsel for the putative class of direct purchasers of packaged seafood products, alleging a price-fixing conspiracy among the leading U.S. manufacturers—Chicken of the Sea, StarKist and Bumble Bee. Class certification is currently being litigated.

- *In re Disposable Contact Lens Antitrust Litig.*, No. 3:15-md-2626-J-20JRK (M.D. Fla.)
  Hausfeld serves as one of the three co-lead counsel for a nationwide class of consumers alleging horizontal and vertical conspiracies by the four leading contact lens manufacturers and their primary distributor to impose minimum resale price maintenance policies called "unilateral pricing policies," or "UPPs." case. On June 16, 2016, the court overseeing the litigation denied the defendants' motion to dismiss; on December 4, 2018, the court certified litigation classes of consumers who purchased contact lenses subject to UPPs; and on November 27, 2019, the Court denied the defendants' four motions for summary judgment. Plaintiffs have thus far reached settlements with three defendants in the case: Bausch & Lomb, CooperVision, and ABB Optical Group totaling more than $40 million.

- *In re International Air Passenger Surcharge Antitrust Litig.*, No. 06-md-01793 (N.D. Cal.)
  Hausfeld served as co-lead counsel in this case against two international airlines alleged to have fixed fuel surcharges on flights between the United States and United Kingdom. Lawyers at the firm negotiated a ground-breaking **$200 million** international settlement that provides recovery for both U.S. purchasers under U.S. antitrust laws and U.K. purchasers under U.K. competition laws.

# HAUSFELD
## FOR THE CHALLENGE

- ***In re Municipal Derivatives Antitrust Litig.***, No. 08-cv-2516 (S.D.N.Y.)
  Hausfeld served as co-lead counsel in this case against banks, insurance companies, and brokers accused of rigging bids on derivative instruments purchased by municipalities. The firm obtained over **$200 million** in settlements with more than **ten defendants**.

- ***In re Automotive Aftermarket Lighting Products Antitrust Litig.***, No. 09-ML-2007 (C.D. Cal.)
  Hausfeld served as co-lead counsel in this case against three manufacturers for participating in an international conspiracy to fix the prices of aftermarket automotive lighting products. The firm obtained over **$50 million** in settlements.

- ***In re Processed Egg Products Antitrust Litig.***, No. 08-cv-04653 (E.D. Pa.)
  Hausfeld served as co-lead counsel in this case alleging that egg producers, through their trade associations, engaged in a scheme to artificially inflate egg prices by agreeing to restrict the supply of both laying hens and eggs. The firm obtained over **$135 million** in settlements, won certification of a class of shell egg purchasers, and tried the case against the remaining defendants.

- ***In re Fresh and Process Potatoes Antitrust Litig.***, No. 10-MD-2186 (D. Idaho)
  Hausfeld served as chair of the executive committee in this case alleging that potato growers, their cooperatives, processors, and packers conspired to manipulate the price and supply of potatoes. In defeating defendants' motion to dismiss, the firm secured a judicial determination that supply restrictions are not protected conduct under a limited federal antitrust exemption available to certain grower associations—a novel question that had never before been decided by any court. The firm obtained **$19.5 million** in settlements and valuable injunctive relief prohibiting future production limitation agreements, achieving global resolution of the case.

- ***In re American Express Anti-Steering Rules Antitrust Litig.***, No. 11-md-2221 (E.D.N.Y)
  As lead counsel, Hausfeld represents a two classes of merchants against American Express ("Amex"): Amex-accepting merchants and merchants that accept Visa, MasterCard, and/or Discover cards but not Amex (the "V/MC/D Class"). The merchants allege that Amex violated antitrust laws by requiring them to accept all Amex cards, and by preventing them from steering their customers to other payment methods. The V/MC/D Class also asserted that Amex's conduct had, among other things, created an elevated price "umbrella" marketwide and stifled price competition among other card networks. In January 2020, Judge Garaufis granted Amex's motion to compel arbitration of the Amex Class' claims, and he dismissed the V/MC/D Class' claims. An appeal addressing umbrella liability is pending.

- ***In re Domestic Airline Travel Antitrust Litig.***, No. 15-1404 (CKK) (D.D.C.)
  Hausfeld serves as co-lead counsel for a proposed class of domestic air passengers that collectively allege the defendants, the four major U.S. passenger air carriers — United, American, Delta, and Southwest — conspired to fix domestic airfares by colluding to limit their respective capacity. The passengers allege that Defendants, in which a common set of investors owned significant shares during the conspiracy period, carried out the conspiracy through repeated assurances to each other on earnings calls and other statements that they each were engaging in "capacity discipline". In October 2016, the court denied defendants' motion to dismiss. Since that time, the firm has obtained $60 million in settlements with American and Southwest. The litigation against United and Delta is ongoing.

**HAUSFELD**

FOR THE CHALLENGE

# Litigation achievements

## Significant trial victories

While many law firms like to talk about litigation experience, Hausfeld lawyers regularly bring cases to trial—and win. Among our trial victories are some of the largest antitrust cases in the modern era. For example, in *O'Bannon v. NCAA* (N.D. Cal.), we conducted a three-week bench trial before the chief judge of the Northern District of California, resulting in a complete victory for college athletes who alleged an illegal agreement among the National Collegiate Athletic Association and its member schools to deny payment to athletes for the commercial licensing of their names, images, and likenesses. Our victory in the *O'Bannon* litigation followed the successful trial efforts in *Law v. NCAA* (D. Kan.), a case challenging earning restrictions imposed on assistant college coaches in which the jury awarded **$67 million** to the class plaintiffs that one of our lawyers represented.

In *In re Vitamin C Antitrust Litigation* (E.D.N.Y.), we obtained, on behalf of our direct purchaser clients, a **$148 million** jury verdict and judgment against Chinese pharmaceutical companies that fixed prices and controlled export output of Vitamin C—on the heels of $22.5 million in settlements with other defendants, which represented the first civil settlements with Chinese companies in a U.S. antitrust cartel case. Years earlier, we took on a global vitamin price-fixing cartel in *In re Vitamins* (D.D.C.), in which we secured a **$1.1 billion settlement** for a class of vitamin purchasers and then took the remaining defendants to trial, culminating in a **$148 million jury verdict**.

Our trial experience extends to intellectual property matters and general commercial litigation as well. Recently, we represented entertainment companies that sought to hold internet service provider Cox Communications accountable for willful contributory copyright infringement by ignoring the illegal downloading activity of its users. Following a trial in *BMG Rights Management (US) LLC, v. Cox Enterprises, Inc.* (E.D. Va.), the jury returned a **$25 million verdict** for our client. After the defendants appealed and prior to a new trial, the parties settled.

## Exceptional settlement results

Over the past decade, Hausfeld has recouped over $20 billion for clients and the classes they represented. We are proud of our record of successful dispute resolution. Among our settlement achievements, a selection of cases merit special mention.

Most recently, on November 30, 2020, the Court granted preliminary approval to the proposed settlement agreement in *In re Blue Cross Blue Shield Antitrust Litigation* (M.D. Ala.), resolving the claims of Blue Cross Blue Shield subscribers represented by Hausfeld for $2.67 billion. In addition to monetary relief, the settlement proposes systemic injunctive relief that will change the landscape for competition in healthcare.

In the high profile *In re Foreign Exchange Benchmark Rates Antitrust Litigation* (S.D.N.Y.), we negotiated settlements totaling more than $2.3 billion with fifteen banks accused of conspiring to manipulate prices paid in the foreign-exchange market. In another case involving allegations of pricefixing among the world's largest airfreight carriers, *In re Air Cargo Shipping Services Antitrust Litigation* (E.D.N.Y.), we negotiated settlements with more than 30 defendants totaling over $1.2 billion—all in advance of trial. In the ongoing *In re: LIBOR-Based Financial Instruments Antitrust Litigation* (S.D.N.Y.) case, we have secured settlements to date totaling $590 million with Barclays ($120 million), Citi ($130 million), Deutsche Bank ($240 million), and HSBC ($100 million). The court has granted final approval to each of these settlements.

Hausfeld served as class counsel in *Hale v. State Farm Mutual Automobile Insurance Co.* (S.D.Ill.). This case involved allegations that State Farm worked to help elect an Illinois state supreme court justice in order to overturn a billion-dollar judgment against it. On the day opening statements were to be delivered to the jury, State Farm agreed to settle for $250 million. Finally, in the global *Marine Hose* matter, we broke new ground with the first private resolution of a company's global cartel liability without any arbitration, mediation, or litigation. That settlement enabled every one of Parker ITR's non-US marine-hose purchasers to recover up to 16% of their total purchases.

These cases are just a few among dozens of landmark settlements across our practice areas.



# Reputation and leadership in the antitrust bar

## Court commendations

Judges across the country have taken note of Hausfeld's experience and results achieved in antitrust litigation.



**All class actions generally are more complex than routine actions… But this one is a doozy. This case is now I guess nearly more than ten years old. The discovery as I've noted has been extensive. The motion practice has been extraordinary… The recovery by the class is itself extraordinary. The case, the international aspect of the case is extraordinary. Chasing around the world after all these airlines is an undertaking that took enormous courage.**

– Judge Brian M. Cogan
*In re Air Cargo Shipping Services Antitrust Litigation*, No. 06-md-1775 (E.D.N.Y.)



**Comparing Hausfeld's work through trial to *Game of Thrones*: 'where individuals with seemingly long odds overcome unthinkable challenges… For plaintiffs, their trial victory in this adventurous, risky suit, while more than a mere game, is nothing less than a win…'**

– Magistrate Judge Nathanael M. Cousins
*O'Bannon v. Nat'l College Athletic Ass'n,* No. 09-cv-3329 (N.D. Cal.)



**Hausfeld lawyers achieved 'really, an outstanding settlement in which a group of lawyers from two firms coordinated the work… and brought an enormous expertise and then experience in dealing with the case.'**
**Hausfeld lawyers are 'more than competent. They are outstanding.'**

– Judge Charles R. Breyer
*In re International Air Passenger Surcharge Antitrust Litig.,* No. 06-md-01793 (N.D. Cal.) (approving a ground-breaking $200 million international settlement that provided recovery for both U.S. purchasers under U.S. antitrust laws, and U.K. purchasers under U.K. competition laws.)



**Hausfeld has 'the breadth of experience, resources and talent necessary to navigate a case of this import.'**
**Hausfeld 'stands out from the rest.'**

– District Judge Morrison C. England Jr.
*Four In One v. SK Foods*, No. 08-cv-3017 (E.D. Cal.)



**The class is represented by what I would describe as an all-star group of litigators…**

– District Judge David R. Herdon
*Hale v. State Farm,* No. 12-cv-00660-DRH-SCW (S.D. Ill.)



# Awards and recognitions



## The Legal 500

In 2020, for the 11th consecutive year, Hausfeld was ranked in the top tier nationally for firms in antitrust civil litigation and class actions by The Legal 500. The publication described Hausfeld lawyers as "pragmatic, smart and focused litigation experts," and the firm as "at the top of its game," with "a number of heavyweight practitioners." The publication has previously stated that:

"DC firm Hausfeld LLP remains top-notch in antitrust litigation… Hausfeld LLP is one of the most capable plaintiffs firms involved in the area of civil cartel enforcement, and is handling some of the major cartel-related cases…"

The Legal 500 has also recognized that Hausfeld is a "market transformer," the "most innovative firm with respect to antitrust damages," is "[d]riven by excellence," "anticipates the evolving needs of clients," and delivers "outstanding advice not only in legal terms but also with a true entrepreneurial touch. . . ."



## Concurrences

In 2020, the Hausfeld Competition Bulletin article titled, "Data Exploiting as an Abuse of Dominance: The German Facebook Decision," authored by Hausfeld lawyer Thomas Höppner, was awarded Concurrences' 2020 Writing Award in its Unilateral Conduct (Business) category.

In 2018, an article authored by Hausfeld lawyer Scott Martin, joined by co-authors Brian Henry and Michaela Spero, was awarded Concurrences' 2018 Writing Award for Private Enforcement (Business) Category. The article, "Cartel Damage Recovery: A Roadmap for In-House Counsel," was originally published in Antitrust Magazine.

In 2017, Hausfeld's Competition Bulletin was selected to be ranked among the top antitrust firms distributing newsletters and bulletins. Hausfeld is the only Plaintiffs' firm to be ranked, and we secured the number one spot for Private Enforcement Newsletters.

In 2015, Hausfeld Partners Michael Hausfeld, Michael Lehmann and Sathya Gosselin won the Concurrences' 2015 Antitrust Writing Awards in the Private Enforcement (Academic) category for their article, "Antitrust Class Proceedings—Then and Now," Research in Law and Economics, Vol. 26, 2014.



## Benchmark Litigation

In 2020, Benchmark Litigation highlighted Hausfeld as a leader in the domain of dispute resolution, recognizing the firm at the national level, as well as regionally on both coasts.

Hausfeld was ranked by Benchmark for Antitrust/Competition Nationwide, and is one of only a small handful of plaintiff-side firms on the list. Hausfeld was also honored as a 'Recommended Top Plaintiff Firm' Nationwide, and described by the publication as "an undisputed trailblazer, identified as a ubiquitous presence by peers on both the plaintiff and defense sides of the 'V'." A peer on the defense side commented to the publication that Hausfeld is always in mix among antitrust and sports matters, "at least in the biggest and best cases." Further to Hausfeld's national recognitions, Benchmark recognized several individuals in the firm's San Francisco and Washington, DC offices.

# HAUSFELD
## FOR THE CHALLENGE





### 2019 Antitrust Report

Hausfeld has been recognized as the leading plaintiffs' firm for class recovery in antitrust litigation between 2009 and 2019. This statistic was noted in the "2019 Antitrust Annual Report" released jointly by the University of San Francisco Law School and The Huntington National Bank. Hausfeld was listed as the top firm out of the 25 analyzed in this section of the report, having achieved an aggregate settlement class recovery totaling nearly $5.2 billion over 11 years.



### Who's Who Legal

In 2019, Who's Who Legal honored Hausfeld as the 'Competition Plaintiff Firm of the Year,' noting that the firm is, "a giant in the competition plaintiff field that once again demonstrates the strength and depth of its expertise..."

In 2018, the publication recognized the firm as "[a] powerhouse in the plaintiffs' litigation field, with particularly deep capability in competition matters," highlighting "nine outstanding litigators."



### Financial Times

In 2019, the Financial Times named Hausfeld one of the 25 'Most Innovative Law Firms: Overall' in North America. Notably, Hausfeld was the only plaintiffs' firm to make the list. In 2018, the Financial Times' Innovative Lawyers Report honored Hausfeld with the 'Innovation in Legal Expertise - Dispute Resolution' award for the firm's work with Dutch transportation insurer TVM. The Financial Times followed up this award by commending Hausfeld in its 2018 North America Innovative Lawyers Report for its representation of plaintiffs in *In Re Foreign Exchange Benchmark Rates Antitrust Litigation.* Hausfeld is proud to be the only plaintiffs' firm to have received recognition in the category of 'dispute resolution' for 2018 on both sides of the Atlantic.

In 2016, the Financial Times named Hausfeld as a top innovative law firm. Writing about Hausfeld's innovation in the legal market, the Financial Times noted: "The firm has taken the litigation finance model to Germany, to turn company inhouse legal departments into profit centres."

In 2015, Michael Hausfeld was recognized by the Financial Times as one of the Top 10 Innovative Lawyers in North America.

In 2013, Hausfeld won the Financial Times Innovative Lawyer Dispute Resolution Award. The FT stated that Hausfeld has "[p]ioneered a unique and market-changing litigation funding structure that improved accessibility and enabled victims to pursue actions with little or no risk."





## Global Competition Review

In 2018, Hausfeld attorneys were awarded Global Competition Review's "Litigation of the Year – Cartel Prosecution" commending its work on *In re Vitamin C Antitrust Litigation*. In this historic case, the Supreme Court ruled in favor of Hausfeld's clients, setting forth criteria and a framework for courts to use when assessing the credibility and weight to give to a foreign government's expression of its own laws.

In 2016, Hausfeld was awarded Global Competition Review's "Litigation of the Year – Cartel Prosecution" for its work on *In re Foreign Exchange Antitrust Benchmark Litigation*. The award recognized Hausfeld's success in the Foreign Exchange litigation to date, which has included securing settlements for more than $2.3 billion in on behalf of a class of injured foreign exchange investors and overcoming three motions to dismiss in the action.

In 2015, Hausfeld attorneys were awarded Global Competition Review's "Litigation of the Year – Non-Cartel Prosecution," which recognized their trial victory in *O'Bannon v. NCAA*, a landmark case brought on behalf of college athletes challenging the NCAA's restrictions on payment for commercial licensing of those athletes' names, images, and likenesses in various media.



## U.S. News & World Report

Since 2016, U.S. News & World Report – Best Law Firms has named Hausfeld to its top tier in both Antitrust Law and Litigation, and among its top tiers in Commercial Litigation. Hausfeld was also recognized in New York, San Francisco, and Washington, DC in Antitrust Law, Litigation, Mass Torts and Commercial Litigation.



## American Antitrust Institute

In 2018, Hausfeld and its co-counsel received the American Antitrust Institute's award for 'Outstanding Antitrust Litigation Achievement in Private Law Practice' for their trial and appellate victories in *In re Vitamin C Antitrust Litigation*.

In 2016, the American Antitrust Institute honored two Hausfeld case teams—*In re Air Cargo Shipping Services Antitrust Litig.* (E.D.N.Y.) and *In re Municipal Derivatives Antitrust Litig.* (S.D.N.Y.)—with its top award for Outstanding Antitrust Litigation Achievement in Private Law Practice. Taken together, these two cases have yielded settlements of over $1.4 billion to class members after nearly a decade of litigation. The award celebrates private civil actions that provide significant benefits to clients, consumers, or a class and contribute to the positive development of antitrust policy.

In 2015, Hausfeld and fellow trial counsel won the American Antitrust Institute's award for Outstanding Antitrust Litigation Achievement in Private Law Practice for their trial and appellate victories in *O'Bannon v. NCAA*.

# HAUSFELD
## FOR THE CHALLENGE



## Chambers & Partners

In 2021, Chambers and Partners named Hausfeld to its highest tier, Band 1, for "Antitrust: Plaintiff – USA – Nationwide," noting that the firm is:

"able to deploy a deep bench of trial attorneys with outstanding litigation experience," and is "renowned for its abilities representing plaintiffs in multidistrict class action antitrust suits across the country involving a wide variety of antitrust issues."

Clients reported to the publication that "Hausfeld is a great partner that makes sure to understand our perspective," and peers have commended the firm's "terrific, deep bench."

Hausfeld was one of just five law firms ranked in Band 1. Hausfeld's New York office was also named to Band 1 for "Antitrust: Mainly Plaintiff – New York."

The publication has also previously noted the firm's attributes as including:

- A reputation as a "[m]arket-leading plaintiffs' firm with considerable experience in antitrust class action suits and criminal cartel investigations."
- "[N]umerous successes in the area, resulting in major recovery or settlements for its clients."
- Firm Chair Michael Hausfeld's record as "a very successful and able antitrust litigator," and "one of the titans of the Plaintiffs Bar."

Additionally, between 2016 and 2020, Chambers & Partners UK ranked Hausfeld in the top tier among London firms representing private claimants in competition matters and recognized the firm's accomplishments in Banking Litigation.



## National Law Journal

In 2015, Hausfeld was named to the National Law Journal's "Plaintiffs Hot List" for the fourth year in a row. The publication elaborated:

"Hausfeld's creative approaches underpinned key antitrust wins last year, including a trailblazing victory for former college athletes over the use of their likenesses in television broadcasts and video games…" and Hausfeld, along with its co-counsel, "nailed down a $99.5 million settlement with JPMorgan Chase & Co. in January in New York federal court for alleged manipulation of market benchmarks. And it helped land nearly $440 million in settlements last year, and more than $900 million thus far, in multidistrict antitrust litigation against air cargo companies."

In 2014, The National Law Journal named Hausfeld as one of a select group of America's Elite Trial Lawyers, as determined by "big victories in complex cases that have a wide impact on the law and legal business." The award notes that Hausfeld is among those "doing the most creative and substantial work on the plaintiffs side."

**HAUSFELD**

**FOR THE CHALLENGE**

# Diversity, equity & inclusion

Hausfeld is committed to diversity and inclusion, because we know that embracing a variety of viewpoints and backgrounds allows us to gain better insights and strengthen our practice. Our diversity is reflected throughout our dozens of case teams leading class actions across the country. We are proud that half of our lawyers are women, who lead some of the largest price-fixing and market manipulation antitrust MDLs in the United States on behalf of our firm.

Hausfeld's Diversity, Equity and Inclusion Committee is committed to examining and improving all aspects of our hiring, benefits, training, support, and promotion practices to ensure that we maintain the highest standards for ourselves, and continually strive for improvement. We seek to ensure that all of our attorneys are provided the resources they need to excel, and are given opportunities to lead, both within and outside the firm.

# Thought leadership

Hausfeld lawyers do more than litigation. They exercise thought leadership in many fields. Hausfeld lawyers host, lecture at, and participate in leading legal conferences worldwide and address ground-breaking topics including: the pursuit of damages actions in the United States and the European Union on behalf of EU and other non-U.S. plaintiffs; nascent private civil enforcement of EU competition laws; application of the FTAIA; the impact of *Wal-Mart Stores, Inc. v. Dukes* and *Comcast Corp. v. Behrend* on class certification; reforms to the Federal Civil Rules of Procedure; emerging issues in complex litigation; and legal technology and electronic discovery.

Hausfeld attorneys have presented before Congressional subcommittees, regulators, judges, business leaders, in-house counsel, private lawyers, public-interest advocates, elected officials and institutional investors, and hold leadership positions in organizations such as the American Bar Association, the American Antitrust Institute, the Women Antitrust Plaintiffs' Attorneys network group, the Sedona Conference and the Institute for the Advancement of the American Legal System.

## Selected articles

- **"Umbrella Liability: Has Its Time Come?"** Michael D. Hausfeld and Irving Scher, Competition Policy International (October 24, 2020)

- **"Third Circuit's Suboxone Class Certification Affirmance Clarifies Commonality and Predominance Requirements,"** Swathi Bojedla, Hausfeld Competition Bulletin/Lexology (Fall 2020)

- **"Class Actions & Competition Law, An Overview Of EU and National Case Law,"** Michael D. Hausfeld, Anthony Maton, David R. Wingfield, Concurrences e-Competition Bulletin - Special Issue on Class Actions (August 27, 2020)

- **"Personal Jurisdiction in Federal Class Actions: Three New Rulings but Little Clarity,"** Sarah LaFreniere, Hausfeld Competition Bulletin/Lexology (Spring 2020)

- **"In Defense of Class Actions: A Response to Makan Delrahim's Commentary on the UK Mastercard Case,"** Michael D. Hausfeld, Irving Scher, Laurence T. Sorkin, Competition Policy International (June 8, 2020)

- **"From Silicon Valley to the Burger Joint: The Evolving Landscape of Vertical 'No-Poach' Cases,"** Jeanette Bayoumi, Hausfeld Competition Bulletin/Lexology (Fall 2019).

- **"The Federal Trade Commission Slams Impax/Endo Reverse Payments Settlement,"** Melinda R. Coolidge and Katie R. Beran, Hausfeld Competition Bulletin/Lexology (Summer 2019).

- **"Arbitrability – Which Is To Be Master?"** Walter D. Kelley Jr., Hausfeld Competition Bulletin/Lexology (Spring 2019).

- **"Social Media and Antitrust: A Discovery Primer,"** Nathaniel C. Giddings & Aaron Patton, Antitrust Magazine (Summer 2018).

- **"The Role of Comity in Antitrust Discovery,"** Steven Nathan and Irving Scher, Hausfeld Competition Bulletin/Lexology (Spring 2018).

- **"The Volkswagen Scandal: Catalyst for Class Action Change?"** Sarah LaFreniere (Co-Author), Law360 (Feb. 27, 2018).

# HAUSFELD
## FOR THE CHALLENGE

- **"Are Nationwide Classes at Risk for Overturned Settlements following the Ninth Circuit's Ruling in Hyundai?"** Jeanette Bayoumi, Hausfeld Competition Bulletin/Lexology (Winter 2018).

- **"Litigating Indirect Purchasers Claims: Lessons for the EU from the U.S. Experience,"** Michael D. Hausfeld, Irving Scher, and Laurence Sorkin, Antitrust Magazine (Fall 2017)

- **"Cartel Damage Recovery: A Roadmap for In-House Counsel,"** Scott Martin, Michaela Spero, and Brian Henry, Antitrust Magazine (Fall 2017)—Recipient of Concurrences' 2018 Antitrust Writing Award for Private Enforcement (Business) Category.

- **"Oligopoly & No Direct Evidence? Good Luck, Says Third Circuit,"** Christopher Lebsock and Samantha Stein, Hausfeld Competition Bulletin/Lexology (Fall 2017).

- **"Damage Class Actions After *Comcast*: A View from the Plaintiffs' Side,"** Michael D. Hausfeld and Irving Scher, Antitrust Magazine (Spring 2016).

- **"Proving Damages in Consumer Class Actions,"** James J. Pizzirusso, Consumer Protection Committee, Vol. 22/No. 1, ABA Section of Antitrust Law (March 2016).

- **"Courts determine that non-cash consideration is subject to antitrust scrutiny under Actavis,"** Jeannine Kenney, Hausfeld Competition Bulletin/Lexology (Oct. 2015).

- **"Earning ACPERA's Civil Benefits,"** Bonny E. Sweeney, 29 Antitrust Magazine 37 (Summer 2015).

- **"The FTC's Revised Fred Meyer Guides: Back to the Sixties,"** Irving Scher, Antitrust Source (February 2015).

- **"Bundling Claims Under Section 1 of the Sherman Act: Focusing on Firms' Abilities to Create Anticompetitive Effects in a Market, Rather Than Their Share of It,"** Brent W. Landau and Gary Smith, Antitrust Health Care Chronicle, Vol. 28/ No. 1, ABA Section of Antitrust Law (Jan. 2015).

- **"Antitrust Class Proceedings – Then and Now,"** Michael D. Hausfeld, Gordon C. Rausser, Gareth J. Macartney, Michael P. Lehmann, Sathya S. Gosselin, Research in Law and Economics (Vol. 26, 2014)— Recipient of Concurrences' 2015 Antitrust Writing Award for Private Enforcement (Academic) Category.

- **"Chapter 39: USA,"** Brent W. Landau and Brian A. Ratner, The International Comparative Legal Guide to Cartels & Leniency (Ch. 39, 2014).

- **"Prosecuting Class Actions and Group Litigation – Understanding the Rise of International Class and Collective Action Litigation and How this Leads to Classes that Span International Borders,"** Michael D. Hausfeld and Brian A. Ratner, World Class Actions (Ch. 26, 2012)

- **"'CAT'-astrophe: The Failure of 'Follow-On' Actions,"** Michael D. Hausfeld, Brent W. Landau, and Sathya S. Gosselin, International Cartel Workshop, Presented by the ABA Section of Antitrust Law & The International Bar Association (Feb. 1-3, 2012).

- **"Private Enforcement of Antitrust Law in the United States, A Handbook - Chapter 4: Initiation of a Private Claim,"** Michael D. Hausfeld and Brent W. Landau, et al., (2012).

- **"The Novelty of Wal-Mart v. Dukes,"** Brian A. Ratner and Sathya S. Gosselin, American Bar Association, Business Torts & Civil RICO Committee, Business Torts & RICO News, Vol. 8, Issue 1, (Fall 2011).



## Michael D. Hausfeld

**Chair**
Washington, DC

✉ mhausfeld@hausfeld.com

☎ +1 202 540 7200

# ✎ EXPERIENCE

## Antitrust/Competition

- *In re Blue Cross Blue Shield Antitrust Litigation* – In one of the largest and most complex antitrust class action cases ever litigated, Michael represents tens of millions of subscriber plaintiffs alleging higher premiums and loss of competition in the market for health insurance due to a conspiracy among 36 insurer defendants to allocate geographic territories. In November 2020, the Court granted preliminary approval to the proposed settlement agreement resolving the claims of Blue Cross Blue Shield subscribers for $2.67 billion.
- *In re Rail Freight Fuel Surcharge Antitrust Litigation* – Counsel to dozens of rail freight shippers in a high-profile antitrust case concerning alleged fuel surcharge collusion among the nation's largest rail freight carriers.
- *O'Bannon v. NCAA* – Trial counsel in this landmark litigation regarding pay for student athletes; negotiated $40 million settlement with Electronic Arts, Inc., which was distributed among current and former college athletes.
- *In re Domestic Airline Travel Antitrust Litigation* – Currently leading this class action lawsuit alleging a conspiracy by United, American, Delta, and Southwest to artificially inflate domestic airline ticket prices by limiting capacity growth. Although discovery is ongoing, settlements total $60 million to date.
- *In re Libor-Based Financial Instruments Antitrust Litigation* – Currently leading this class action lawsuit alleging a global conspiracy by some of the world's largest financial institutions to manipulate LIBOR. The manipulation of LIBOR, which is the primary benchmark for short-term interest rates for trillions of dollars-worth of financial transactions worldwide, is alleged to have caused billions of dollars in damage to municipalities, businesses, and investors. Settlements with four out of the sixteen defendants total $590 million to date.
- *In re Foreign Exchange Benchmark Rates Antitrust Litigation* – Currently leading this high-stake lawsuit alleging a global conspiracy by some of the world's largest financial institutions to fix and manipulate foreign exchange rates, which to date has resulted in settlements totaling over $2.3 billion on behalf of investors. For its work on the case, the firm received Global Competition Review's award for 'Litigation of the Year – Cartel Prosecution.'
- *In re Vitamin C Antitrust Litigation* – Represented plaintiff class against Chinese vitamin C manufacturer defendants accused of price-fixing in settlements and successful trial. On appeal, the U.S. Supreme Court ruled 9-0 in favor of Hausfeld's clients, creating an important precedent for any transnational litigation where U.S. victims' rights are threatened by interpretations of foreign law and international comity principles.
- *In re Vitamins Antitrust Litigation* – Served as counsel on this landmark case on behalf of vitamin direct purchasers who were overcharged as a result of a ten-year global price-fixing and market allocation conspiracy. The case settled for over $1 billion, and in 2003 the case went to a jury trial resulting in a verdict of $148 million in trebled damages - the twelfth largest U.S. jury verdict that year.

## Commercial & Financial Disputes

- *In re Libor-Based Financial Instruments Antitrust Litigation* - Currently leading this class action lawsuit alleging a global conspiracy by some of the world's largest financial institutions to manipulate LIBOR. The manipulation of LIBOR, which is the primary benchmark for short-term interest rates for trillions of dollars-worth of financial transactions worldwide, is alleged to have caused billions of dollars in damage to municipalities, businesses, and investors. Settlements with four out of the sixteen defendants total $590 million to date.
- *In re Foreign Exchange Benchmark Rates Antitrust Litigation* - Currently leading this high-stake lawsuit alleging a global conspiracy by some of the world's largest financial institutions to fix and manipulate foreign exchange rates, which to date has resulted in settlements totaling over $2.3 billion on behalf of investors. For its work on the case, the firm received Global Competition Review's award for 'Litigation of the Year – Cartel Prosecution.'
- *MTB Investment Partners, LP v. Siemens Hearing Instruments, Inc.* – Secured a securities fraud settlement that returned more than 115% of recognized losses after attorneys' fees and expenses to former shareholders in HearUSA, Inc.

## Environmental & Product Liability

- *Children v. the Climate Crisis: Chiara Sacchi et al. v. Argentina, Brazil, France, Germany, and Turkey* – In which Hausfeld and co-counsel Earthjustice represent 16 children from around the world, including Greta Thunberg and Alexandria Villaseñor, in a complaint filed before the UN Committee on the Rights of the Child alleging violations of children's rights to life, health, and culture by five members of the G20 whose failure to reduce carbon emissions is perpetuating climate change.

## Human Rights

- *South African Silicosis* - Involved in litigation in both the UK and in in South Africa on behalf of South African gold miners who have suffered from silicosis. In South Africa, the Johannesburg High Court certified the case as a class action against most of South Africa's gold mining industry.  Following certification, extensive negotiations resulted in a landmark settlement in May 2018.
- *Low Income Bread Consumers* - Currently at the forefront of competition claims in South Africa, having worked with South African counsel in groundbreaking litigation on behalf of low-income bread consumers. This case resulted in a landmark ruling by the Supreme Court of Appeal (SCA) which determined for the first time the specific requirements for filing a collective action in South African courts.
- *Bhopal, India Union Carbide Plant* - Represented residents of Bhopal, India who were exposed to toxic wastes. These wastes contaminated the soil and drinking water surrounding the infamous Union Carbide Plant, which was the site of the 1984 gas leak that killed and injured thousands of residents.
- Japanese "Comfort Women" - Represented former "comfort women," a title given to women and girls who were forced into sexual slavery during World War II.

**Sports & Entertainment**

- *O'Bannon v. NCAA* – Trial counsel in this landmark litigation regarding pay for student athletes; negotiated $40 million settlement with Electronic Arts, Inc., which was distributed among current and former college athletes.

## ✎ OVERVIEW

### Experience

Michael Hausfeld, widely recognized for his leadership on competition matters and his groundbreaking cases in human rights law, is the Chair of Hausfeld. Michael's distinguished career has included some of the largest and most successful class actions in the fields of human rights, discrimination and antitrust law.

### Clients

Michael has an abiding interest in social reform, and has been a part of some of the most groundbreaking cases in that arena both in the U.S. and around the world. Michael was among the first lawyers in the U.S. to assert that sexual harassment was a form of discrimination prohibited by Title VII, and he successfully tried the first case establishing that principle. He has represented Native Alaskans whose lives were affected by the 1989 Exxon Valdez oil spill and later negotiated a then-historic $176 million settlement from Texaco, Inc. in a racial-bias discrimination case. In *Friedman v. Union Bank of Switzerland*, Michael represented a class of Holocaust victims whose assets were wrongfully retained by private Swiss banks during and after World War II. The case raised novel issues of international banking law and international human rights law. In a separate case, he also successfully represented the Republic of Poland, the Czech Republic, the Republic of Belarus, the Republic of Ukraine and the Russian Federation on issues of slave and forced labor for both Jewish and non-Jewish victims of Nazi persecution. He has represented individuals and NGOs in litigation alleging liability for aiding and abetting the South African system of apartheid.

Michael has a long record of successful litigation in the antitrust field, on behalf of individuals and classes, in cases involving monopolization, tie-ins, exclusive dealing and price fixing. In the landmark *O'Bannon v. NCAA* litigation, Michael represented a class of current and former Division I men's basketball and FBS football players against the NCAA and its member institutions, based on rules foreclosing athletes from receiving compensation for the use of their names, images, and likenesses. At the conclusion of a three-week bench trial, the Court determined that the NCAA had violated the antitrust laws and issued a permanent injunction as requested by the plaintiffs. He was a member of the ABA Antitrust Section's Transition Taskforce, which advised the incoming Obama Administration, and has chaired the ABA's Civil Redress Committee. Michael has been co-lead counsel in antitrust cases against manufacturers of genetically engineered foods, managed healthcare companies, bulk vitamin manufacturers, technology companies, and the world's largest banking institutions. He is involved in ongoing investigations of antitrust cases abroad and pioneering efforts to enforce competition laws globally. He was the only private lawyer permitted to attend and represent the interests of consumers worldwide in the 2003 closed hearings by the EU Commission in the Microsoft case.

## ✎ EDUCATION

National Law Center George Washington University, J.D., *with honors*, 1969; Member, Order of the Coif

Brooklyn College, B.A. *cum laude*,1966

## ✎ BAR ADMISSIONS

District of Columbia

New York

## ✎ AFFILIATIONS

Co-Chair, ABA Civil Redress Committee, 2012-2013

Co-Chair, ABA Civil Redress Task Force, 2011-2012

Member, Editorial Board - Global Competition Litigation Review, 2011

Member, ABA International Cartel Task Force, 2010

Plaintiffs Fellow, Litigation Counsel of America

Adjunct Professor, George Washington University Law School, 1996-1998

Professor, Georgetown University Law Center, 1980-1987

Member, Board of Editors, *George Washington Law* Review (1968-1969)

## ✎ NEWS

**Two Hausfeld Competition Bulletin articles nominated by the Concurrences Antitrust Writing Awards 2021**

ANTITRUST / COMPETITION / UNITED STATES, GERMANY, GERMANY /
MAY 04 2021

**Twelve Hausfeld lawyers across four regions named in 2021 Lawdragon 'Global Litigation 500' list**

UNITED STATES, FRANCE, UNITED KINGDOM, NETHERLANDS / MAR 01 2021

**Seven Hausfeld lawyers named to Lawdragon list of '500 Leading Lawyers in America' for 2021**

**Rail shippers defeat BNSF, CSX, NS, and UP's attempts to insulate anticompetitive conduct from liability**

ANTITRUST / COMPETITION / UNITED STATES / FEB 19 2021

**Hausfeld nominated for 'Litigation of the Year' and 'Litigator of the Year' by GCR Awards 2021**

ANTITRUST / COMPETITION / UNITED STATES / FEB 18 2021

**Fifteen Hausfeld lawyers named to Lawdragon Plaintiff Financial Lawyer Guide 2020**

ANTITRUST / COMPETITION / ENVIRONMENTAL & PRODUCT LIABILITY /
HUMAN RIGHTS / UNITED STATES / JAN 28 2021

**Benchmark Litigation lauds Hausfeld as a 'plaintiff-side firm to be reckoned with'**

ANTITRUST / COMPETITION / COMMERCIAL & FINANCIAL DISPUTES /
UNITED STATES / OCT 12 2020

**WWL 2020 counts 9 Hausfeld lawyers among world's top competition plaintiff lawyers**

ANTITRUST / COMPETITION /
UNITED STATES, FRANCE, GERMANY, UNITED KINGDOM / JUL 08 2020

**The Legal 500 US (2020) ranks Hausfeld as first tier in 'Antitrust' for an 11th consecutive year**

ANTITRUST / COMPETITION / UNITED STATES / JUN 12 2020

**Seven Hausfeld lawyers named to Lawdragon's 500 Leading Plaintiff Consumer Lawyers Guide 2020**

COMMERCIAL & FINANCIAL DISPUTES / UNITED STATES / APR 16 2020

**Five Hausfeld lawyers once again named to Lawdragon 500 list of Leading Lawyers in America**

ANTITRUST / COMPETITION / UNITED STATES / MAR 26 2020

**The 16 Committee on the Rights of the Child petitioners, including Greta Thunberg and Ridhima Pandey, applaud Dutch Supreme Court ruling in Urgenda**

HUMAN RIGHTS / ENVIRONMENTAL & PRODUCT LIABILITY /
UNITED STATES, FRANCE, GERMANY, UNITED KINGDOM, NETHERLANDS, SWEDEN,
BELGIUM /
DEC 20 2019

**Firm Founder and Chair Michael Hausfeld named a 'Lawdragon Legend' of 2019**

ANTITRUST / COMPETITION / COMMERCIAL & FINANCIAL DISPUTES /
ENVIRONMENTAL & PRODUCT LIABILITY / HUMAN RIGHTS / UNITED STATES /
DEC 10 2019

**16 young people file UN human rights complaint on climate change**

ENVIRONMENTAL & PRODUCT LIABILITY / HUMAN RIGHTS /
UNITED STATES, FRANCE, GERMANY, UNITED KINGDOM, NETHERLANDS, SWEDEN,
BELGIUM /
SEP 23 2019

**Fifteen Hausfeld lawyers named to Lawdragon Plaintiff Financial Lawyer Guide 2019**

COMMERCIAL & FINANCIAL DISPUTES / UNITED STATES / SEP 19 2019

**Five Hausfeld lawyers named to Lawdragon's 500 Leading Plaintiff Consumer Lawyers Guide 2019**

COMMERCIAL & FINANCIAL DISPUTES / UNITED STATES / JUL 26 2019

**The Legal 500 US (2019) ranks Hausfeld as first tier in 'Antitrust' for a 10th consecutive year**

ANTITRUST / COMPETITION / UNITED STATES / MAY 30 2019

**Hausfeld wins 'Lawyer of the Year' and 'Litigation of the Year - Cartel Prosecution' at 9th Annual GCR Awards**

ANTITRUST / COMPETITION / UNITED STATES / MAR 27 2019

COMMERCIAL & FINANCIAL DISPUTES / UNITED STATES / AUG 28 2020

**Best Lawyers 2021 recognizes six Hausfeld lawyers on both coasts**

ANTITRUST / COMPETITION / ENVIRONMENTAL & PRODUCT LIABILITY /
COMMERCIAL & FINANCIAL DISPUTES / UNITED STATES / AUG 20 2020

**Children urge Norway to block Arctic oil and gas drilling to protect their rights to life and health**

ENVIRONMENTAL & PRODUCT LIABILITY / HUMAN RIGHTS /
UNITED STATES, FRANCE, GERMANY, UNITED KINGDOM, NETHERLANDS, SWEDEN,
BELGIUM /
MAY 13 2020

**Chambers and Partners USA (2020) again recognizes Hausfeld and its lawyers in its highest tier**

ANTITRUST / COMPETITION / UNITED STATES / APR 24 2020

**Hausfeld announces opening of Amsterdam office**

ANTITRUST / COMPETITION / COMMERCIAL & FINANCIAL DISPUTES /
FEB 13 2020

**WWL 2020 Competition Plaintiff credits Hausfeld as only firm with 5 'Thought Leaders'**

ANTITRUST / COMPETITION / UNITED STATES, UNITED KINGDOM / JAN 21 2020

**Super Lawyers recognizes 21 Hausfeld lawyers spanning both coasts and multiple practice areas**

ANTITRUST / COMPETITION / COMMERCIAL & FINANCIAL DISPUTES /
ENVIRONMENTAL & PRODUCT LIABILITY / HUMAN RIGHTS / UNITED STATES /
NOV 18 2019

**U.S. News & World Report and Best Lawyers rank Hausfeld as a top firm for 2020**

ANTITRUST / COMPETITION / COMMERCIAL & FINANCIAL DISPUTES /
UNITED STATES / NOV 01 2019

**Hausfeld firm leadership transition plan announced**

UNITED STATES, FRANCE, GERMANY, UNITED KINGDOM, NETHERLANDS, SWEDEN,
BELGIUM /
SEP 16 2019

**Hausfeld and co-counsel win Public Justice's 2019 Trial Lawyer of the Year Award**

UNITED STATES / AUG 22 2019

**Chambers and Partners USA (2019) recognizes Hausfeld and its lawyers in its highest tier**

ANTITRUST / COMPETITION / UNITED STATES / APR 29 2019

**US civil case filed against former Sri Lankan Defense Secretary Gotabaya Rajapaksa**

HUMAN RIGHTS / UNITED STATES / APR 12 2019

**Five Hausfeld lawyers recognised as 'Thought Leaders' for Competition by Who's Who Legal**

ANTITRUST / COMPETITION /
UNITED STATES, FRANCE, GERMANY, UNITED KINGDOM / JAN 28 2019

**Financial Times Innovative Lawyers Report names Hausfeld a top firm for**

Five Hausfeld lawyers named to Lawdragon 500 list of Leading Lawyers in America

ANTITRUST / COMPETITION  / UNITED STATES  / FEB 28 2019

U.S. News & World Report and Best Lawyers rank Hausfeld as a top firm for 2019

ANTITRUST / COMPETITION  / COMMERCIAL & FINANCIAL DISPUTES  /
UNITED STATES  / NOV 20 2018

American Antitrust Institute recognizes Hausfeld attorneys Sarah LaFreniere, Brian Ratner, Brent Landau, Melinda Coolidge and Michael Hausfeld for outstanding antitrust achievements

ANTITRUST / COMPETITION  / UNITED STATES  / OCT 09 2018

Hausfeld clients succeed with competition complaint against Google's Android practices, leading to € 4,34 BN fine

ANTITRUST / COMPETITION  / GERMANY, UNITED KINGDOM  / JUL 20 2018

16 Hausfeld lawyers recognized in 'Who's Who' of competition in the US and Europe

ANTITRUST / COMPETITION  /
UNITED STATES, FRANCE, GERMANY, UNITED KINGDOM  / JUN 20 2018

Chambers and Partners USA (2018) recognizes Hausfeld and its lawyers

ANTITRUST / COMPETITION  / UNITED STATES  / MAY 22 2018

Who's Who Legal recognizes Michael Hausfeld as Competition Plaintiff Lawyer of the Year and Hausfeld named Competition Plaintiff Firm of the Year

ANTITRUST / COMPETITION  / UNITED STATES  / MAY 09 2018

dispute resolution in North America

ANTITRUST / COMPETITION  /
UNITED STATES, FRANCE, GERMANY, UNITED KINGDOM, NETHERLANDS, SWEDEN, BELGIUM  /
DEC 20 2018

Six Hausfeld lawyers recognized in 2019 edition of 'Best Lawyers in America'

ANTITRUST / COMPETITION  / COMMERCIAL & FINANCIAL DISPUTES  /
ENVIRONMENTAL & PRODUCT LIABILITY  / UNITED STATES  / AUG 28 2018

Hausfeld announces final approval of more than $2.3 billion in FX settlements

ANTITRUST / COMPETITION  / COMMERCIAL & FINANCIAL DISPUTES  /
UNITED STATES  / AUG 07 2018

Vitamin C purchasers win unanimous Supreme Court victory in decade-long antitrust litigation

ANTITRUST / COMPETITION  / UNITED STATES  / JUN 14 2018

"At the top of its game" - The Legal 500 (2018) again recognizes Hausfeld and its lawyers as first tier in Antitrust

ANTITRUST / COMPETITION  / UNITED STATES  / JUN 08 2018

Hausfeld achieves historic healthcare ruling in Blue Cross Blue Shield Antitrust Litigation

ANTITRUST / COMPETITION  / UNITED STATES  / MAY 03 2018

Hausfeld names Alex Petrasincu Partner and will open second German office in Dusseldorf

ANTITRUST / COMPETITION  / COMMERCIAL & FINANCIAL DISPUTES  /
ENVIRONMENTAL & PRODUCT LIABILITY  / HUMAN RIGHTS  / GERMANY  /
FEB 16 2017

# EVENTS

ABA's 2019 Global Private Litigation Conference

ANTITRUST / COMPETITION  / BERLIN  17 JUN 2019

# PUBLICATIONS

Umbrella liability: has its time come?

ANTITRUST / COMPETITION  / UNITED STATES  / NOV 19 2020

Can U.S. class action law serve as guidelines for the UK indirect purchaser Mastercard case?

ANTITRUST / COMPETITION  / UNITED STATES  / AUG 18 2020

In defense of class actions: a response to Makan Delrahim's commentary on the UK Mastercard case

ANTITRUST / COMPETITION  / UNITED STATES  / JUN 09 2020

Lawdragon lawyer limelight: Michael D. Hausfeld

ANTITRUST / COMPETITION  / UNITED STATES  / MAY 19 2019

In addition, Michael has written extensively in a variety of legal publication over his career, including:

- "Class Actions & Competition Law, An Overview of EU and National Case Law," Concurrences e-Competition Bulletin - Special Issue on Class Actions (Aug. 27, 2020), Co-Author with Anthony Maton, David R. Wingfield
- "The Equitable Future of Intercollegiate Athletics," Competition Policy International's Antitrust Chronicle (April 28, 2020), Co-Author with Sathya S. Gosselin, Sarah D. LaFreniere, Eduardo Carlo
- "Litigating Indirect Purchasers Claims: Lessons for the EU from the U.S. Experience," Antitrust Magazine (Fall 2017), Co-Author with Irving Scher, Laurence Sorkin
- "Damage Class Actions After Comcast: A View from the Plaintiffs' Side," Antitrust Magazine (Spring 2016), Co-Author with Irving Scher
- "Antitrust Class Proceedings – Then and Now," Research in Law and Economics (Vol. 26, 2014), [Recipient of Concurrences' 2015 Antitrust Writing Award for Private Enforcement (Academic) Category], Co-Author with Gordon C. Rausser, Gareth J. Macartney, Michael P. Lehmann, Sathya S. Gosselin
- "The Business of American Courts in Kiobel v. Royal Dutch Petroleum," Jurist - Sidebar (Oct. 2012), Co-Author with Kristen Ward
- "Prosecuting Class Actions and Group Litigation," World Class Actions, Ch. 26., (Sept. 2012), Co-Author with Brian A. Ratner, et al.
- "Private Enforcement of Antitrust Law in the United States, A Handbook - Chapter 4: Initiation of a Private Claim." (2012) Co-Author with Brent Landau, et al.

- "The Importance of Private Competition Enforcement in Europe," Hackney Publications, Concussion Litigation Reporter Vol. No. 1 (Sept. 2012), Co-Author with Swathi Bojedla
- "CAT-astrophe: The Failure of 'Follow-On' Actions," American Bar Association's International Cartel Workshop, (Feb. 2012), Co-Author with Brent W. Landau, Sathya S. Gosselin
- "Private Enforcement in Competition Law: An Overview of Developments in Law and Practice in the US and Europe," Bergamo University, (July 2011), Co-Author with Ingrid Gubbay
- "The Contingency Phobia - Fear Without Foundation," Global Competition Litigation Review, Issue 1 (Jan. 2011), Author
- "Competition Law Claims – A Developing Story," The European Antitrust Review (2010), Author
- "Initiation of a Private Claim," International Handbook on Private Enforcement (2010), Author
- "The United States Heightens Plaintiff's Burden of Proof on Class Certification: A Response," Global Competition Litigation Review (Volume 2 Issue 4/2009), Author
- "Global Enforcement of Anticompetitive Conduct," The Sedona Conference Journal (Fall 2009), Author
- "Observations from the Field: ACPERA's First Five Years," The Sedona Conference Journal (Fall 2009), Author
- "Twombly, Iqbal and the Prisoner's Pleading Dilemma," Law360 (Oct. 22, 2009), Author
- "The Value of ACPERA," Law360 (June 2, 2009), Author
- "Collective Redress for Competition Law Claimants," The European Antitrust Review (2008), Author
- "Managing Multi-district Litigation," The Antitrust Review of the Americas (2008), Author
- "A Victim's Culture," European Business Law Review (2007), Author

**Press:**

- "The Toughest Lawyer in America Is On Your Side," Neal Gabler, Playboy Magazine (Feb. 2015)
- "Gangster Bankers - Too Big to Jail," Matt Taibbi, Rolling Stone Magazine (Feb. 2013)
- "UBS Mea Culpa May Give Libor Antitrust Plaintiffs Upper Hand," Max Stendahl, Law360 (Dec. 2012)
- "DOJ Heralds 'Robust' UBS Deal; Gibson Dunn on Defense," Mike Scarcella, The AmLaw Litigation Daily (Dec. 2012)
- "Documents May Boost Civil Suits - Revelations That Rate-Rigging Succeeded Could Prove Expensive to Banks Facing Litigation," Dana Cimilluca and Jean Eaglesham, Wall Street Journal (Dec. 2012)
- "Banks Facing New Wave of Mortgage Lawsuits," Forrest Jones, Moneynews (Dec. 2012)
- "Where There's a Will, There's a Way," The American Lawyer (March 2012)
- "The Great Gamble," Global Competition Review (March 2012)

## ✎ WHAT OTHERS SAY

**Benchmark Litigation**

- National Practice Area Star, and Local Litigation Star in 2021

"Few would contest that the firm's legacy is credited to firm founder and visionary Michael Hausfeld, the name partner who entrepreneurially built his firm into a zealous plaintiff empire." (Benchmark Litigation, Dispute Resolution, 2021)

**Chambers and Partners**

- Band 1, Antitrust: Plaintiff – Nationwide, year-after-year
- Recognized Practitioner, Sports Law – Nationwide in 2019

A source reported, "Michael is in my opinion one of the best lawyers in America, especially with regard to antitrust cases and other complex litigation." (Chambers US, Antitrust: Plaintiff – Nationwide, 2021)

"Michael Hausfeld is a key player in the antitrust space, skillfully handling prominent class actions, often concerning anticompetitive behavior and price manipulation. Sources report: 'What sets him apart is his creativity and strategic sense of how to resolve a dispute to satisfy all sides.'" (Chambers US, Antitrust: Plaintiff – Nationwide, 2020)

"Lauded by market sources as an 'amazing lawyer.'" (Chambers US, Antitrust: Plaintiff – Nationwide, 2019)

"An innovative and a well-respected leader of the antitrust Bar." (Chambers US, Antitrust: Plaintiff – Nationwide, 2018)

**Best Lawyers**

- Best Lawyer since 2006
  - Antitrust Law
  - Litigation – Antitrust

**Global Competition Review**

- Named Lawyer of the Year in 2019

Michael is "recognized as one of the best plaintiffs' lawyers in the country" who "consistently brings in the biggest judgments in the history of law" and is "a Washington lawyer determined to change the world – and succeeding." (Global Competition Review Awards, 2019)

**Who's Who Legal**

- Thought Leader, Competition: Plaintiff, 2021
- Global Leader, Competition: Plaintiff, 2020
- Global Elite Thought Leader, Competition: Plaintiff since 2019
- Recommended Lawyer, Competition: Plaintiff since 2018

"One of North America's foremost plaintiff specialists in the antitrust space, dubbed a 'legend in the field.'" (Who's Who Legal, Competition - Plaintiff - Legal Marketplace Analysis, 2020)

"One of the titans of the competition plaintiff space, and is a perennial selection as a Global Elite Thought Leader. He attracts numerous recommendations from peers across North America and Europe for his standout practice, which encompasses antitrust litigation on the part of both individuals and classes." (Who's Who Legal, Competition - Plaintiff - Legal Marketplace Analysis, 2019)

**Lawdragon**

- Leading Global Litigation Lawyer in 2021
- Leading Plaintiff Financial Lawyer since 2019
- Leading Plaintiff Consumer Lawyers since 2019
- Leading Lawyer in America since 2013

**Legal 500**

- Hall of Fame in 2020 – described by the Legal 500 as "including individuals who have received constant praise from their clients for continued excellence. The Hall of Fame highlights, to clients, the law firm partners who are at the pinnacle of the profession."
- Recommended Lawyer, Civil Litigation, Class Actions: Plaintiff, Year-after-year
- Top 10 Leading Lawyer in the U.S. representing plaintiffs in antitrust and cartel matters, 2016

A "mastermind of strategy" and "smart strategic thinker." The "incredibly impressive. . . Michael Hausfeld and Brian Ratner are highly skilled negotiators and litigators, and real fighters with an outstanding strategic sense."  (Legal 500 US, Antitrust - Civil Litigation/Class Actions, 2013-Present)

**Super Lawyers**

- Super Lawyer, Antitrust Litigation in Washington, DC since 2007

**American Antitrust Institute**

- Outstanding Antitrust Litigation Achievement in Private Law Practice, an honor he received as one of the leaders of the *In re Vitamin C Antitrust Litigation* case team in 2018.

**Concurrences**

- Winner, Academic: Private Enforcement category in 2015 for his co-authored article titled, "Antitrust Class Proceedings – Then and Now"

**National Law Journal**

- Litigation Trailblazer & Pioneer in 2014

**Law360**

- One of just six attorneys named as a Competition MVP by Law360 in 2014.

**Other**

- Described by one of the country's leading civil rights columnists as an "extremely penetrating lawyer" and by a colleague (in a Washington Post article) as a lawyer who "has a very inventive mind when it comes to litigation. He thinks of things most lawyers don't because they have originality pounded out of them in law school."
- Immediately following the groundbreaking *NCAA v. O'Bannon* decision in 2015, Michael was named AmLaw Litigation Daily's 'Litigator of the Week,' citing the "consensus among courtroom observers [was] that Michael Hausfeld…got the best of a parade of NCAA witnesses at trial." Law360 dubbed the trial team led by Michael as "Legal Lions," citing the firm's historic victory over the NCAA.
- Awarded the Torch of Learning Award by the American Friends of Hebrew University in 2012
- Shortlisted, 'Attorneys Who Matter' in the field of Corporate Compliance by The Ethisphere Institute in 2009
- Legal Elite by SmartCEO Magazine in 2009
- Cited by Chambers US, Products Liability category in 2009
- Top 30 "Visionaries" in the Washington legal community by the Legal Times in 2008
- 50 Most Powerful People in DC by GQ Magazine in 2007
- "International World-shakers" list of 40 international lawyers "making waves" in the UK  by The Lawyer in 2007
- Fierce Sister Award by The Lawyer in 2007: an honor he received for his work on the Japanese Comfort Women case.
- 100 Most Influential Lawyers by the National Law Journal in 2006
- The New York Times referred to Michael as one of the nation's "most prominent antitrust lawyers," and the Washingtonian named him one of thirty "Stars of the Bar."
- Recipient of the B'Nai Brith Humanitarian of the Year Award in 2002
- One of thirty negotiators profiled in Done Deal: Insights from Interviews with the World's Best Negotiators, by Michael Benoliel, Ed.D.
- Recipient of the Simon Wiesenthal Center Award for Distinguished Service
- Michael received the U.S. Department of Energy Human Spirit Award, presented "in tribute to a person who understands the obligation to seek truth and act on it is not the burden of some, but of all; it is universal."

# Megan E. Jones

Partner
San Francisco

she / her / hers

✉ mjones@hausfeld.com
📞 +1 415 744 1951
in http://www.linkedin.com/pub/megan-e-jones/9/3a8/53b/



---

## ✎ EXPERIENCE

### Antitrust/Competition

- *In re Blue Cross Blue Shield Antitrust Litigation* – In which Megan has been appointed to the Plaintiffs' Steering Committee.
- *In re Local TV Advertising Antitrust Litigation* – In which Megan has been appointed Lead Counsel.
- *In re Diisocyanates Antitrust Litigation* – In which Megan has been appointed Co-lead Counsel.
- *In re Municipal Derivatives Antitrust Litigation* – Resulted in over $200 million on behalf of the class.
- *In re Polyester Staple Antitrust Litigation* – Resulted in $63.5 million on behalf of class.
- *In re Compact Disc Antitrust Litigation* – Resulted in over $50 million on behalf of class.
- *In re Rubber Chemicals Antitrust Litigation* – Resulted in over $100 million on behalf of class.
- *In re MMA Antitrust Litigation* – Resulted in over $20 million on behalf of class.
- *In re EPDM Antitrust Litigation* – Resulted in $81 million on behalf of class.
- Megan was also involved in the negotiation of a $300 million global settlement with Bayer (which resolved three cases: EPDM, Rubber Chemicals and NBR), and drafted the innovative settlement agreement itself.

---

## ✎ OVERVIEW

### Experience

Megan Jones (@MeganJonesEsq) is a California Bay Area-based lawyer who focuses on recovering damages for companies who are victims of antitrust cartels for price-fixing, tying, restraints of trade, and other competition violations. With 19 years of experience in antitrust class actions, Megan is trusted by courts to lead large and complex antitrust cases:

1. *In re Local TV Advertising Litigation* (Sole Lead counsel)
2. *In re Diisocyanates Antitrust Litigation* (Co-Lead counsel)
3. *In re Beef Antitrust Litigation* (Co-Lead Counsel)
4. *In re Blue Cross Blue Shield Antitrust Litigation* (Plaintiff Steering Committee)
5. *In re Marriott International Customer Data Security Breach Litigation* (Plaintiff Steering Committee)

Megan is known for her creativity on settlement issues.[] For example, in *In re Municipal Derivatives Antitrust Litigation* (S.D.N.Y.), Ms. Jones was co-lead counsel and recovered over $220 million dollars for a class of cities and municipalities. Notably, Ms. Jones co-negotiated several of the settlements obtained in that class with Select State Attorneys General, who trusted class counsel to administer notice and the claims process for the joint proceeds. The American Antitrust Institute recognized this unusual public/private partnership, and awarded Megan (and her team) the "Outstanding Antitrust Litigation Achievement in Private Law Practice" in 2016. Other settlements Ms. Jones negotiated include:

- *In re Municipal Derivatives Antitrust Litigation* – Resulted in over $200 million on behalf of the class.
- *In re Polyester Staple Antitrust Litigation* – Resulted in $63.5 million on behalf of class.
- *In re Compact Disc Antitrust Litigation* – Resulted in over $50 million on behalf of class.
- *In re Rubber Chemicals Antitrust Litigation* – Resulted in over $100 million on behalf of class.
- *In re MMA Antitrust Litigation* – Resulted in over $20 million on behalf of class.
- *In re EPDM Antitrust Litigation* – Resulted in $81 million on behalf of class.
- Megan was also involved in the negotiation of a $300 million global settlement with Bayer (which resolved three cases: EPDM, Rubber Chemicals and NBR), and drafted the innovative settlement agreement itself.

As one of the few women in the plaintiffs' bar inducted into the *Legal 500* Hall of Fame for continued excellence in litigation, Ms. Jones has a national reputation for excellence that has been obtained the old-fashioned way, by trying to be the best team member in the trenches. See "Female Powerbrokers Q&A: Hausfeld's Megan Jones," April 30, 2014;  see also *Chambers and Partners*' description of Ms. Jones as "personable, very smart and capable." She is known for creating effective multi-firm teams that focus with laser-like precision on the specific litigation strategy designed with input from diverse sources.  She is also known for her relentless pursuit of the facts, and is well-regarded for her electronic discovery prowess (speaking and training others on best practices via the prestigious Sedona Conference®).

Whether leading enormous cases with 20+ defendants or small regional matters, Ms. Jones masters the intricacies of economic markets and works with experts to develop economic models for her clients' recovery, which support class certification motions, settlement negotiations, and discovery efforts. Megan prides herself on the ability to create and lead teams of lawyers of any size (having organized teams of 80 law firms, in one particular case) to create a record that either wins the case, drives settlement, and /or obtains a decision upheld at the appellate level. Part of Megan's success is due to her belief in using diverse and inclusive litigation teams, which she has helped foster over a decade by creating and running a conference for women antitrust lawyers to exchange best practices.

Megan is both reasonable and relentless. She carefully chooses her legal battles, and eschews gamesmanship for the sake of gamesmanship. Mindful of scarce judicial resources in complex antitrust cases that can last years, she develops a strategy at the outset about what particular legal issues need judicial attention and clears the board of the rest. She is highly respected from all contingents because she brings that same strategy to settlements, using her almost two decades of negotiation experience from being at Hausfeld to craft settlement strategy and terms in even the most difficult cases. Just one example of this creativity is that in one of her cases, Megan worked with and joined Select State Attorneys General to co-negotiate and jointly settle a class claim on behalf of certain states as well as the civil litigation class.

[1] https://podcast.ourcuriousamalgam.com/e/63-your-lawyer-has-no-clothes-but-did-you-get-me-discount-que... (Our Curious Amalgam: Antitrust Section podcast, featuring Megan Jones, May 2020)

**Clients**

Companies that buy things to make things have typically bought cartelized products, and Megan helps them recover damages for such purchases. Able to analyze a corporation's purchases around the world, Megan can then offer a panoply of options for recovery in multiple jurisdictions. She emphasizes the non- litigation options a corporation has when appropriate, and she is as adept at settling a case in a conference room as she is in a courtroom.

## ✎ EDUCATION

University of North Carolina at Chapel Hill School of Law, J.D., 1999

North Carolina State University, *magna cum laude*, B.A., 1995

## ✎ BAR ADMISSIONS

California

District of Columbia

North Carolina

## ✎ AFFILIATIONS

Invited Member, Leadership team of the Global Private Litigation Committee of the ABA Antitrust Section (2019-Present)

Founder of Women Antitrust Plaintiffs' Attorney Network Group

Member, The Sedona Conference®, which is composed of leading jurists, lawyers, experts, academics and others, at the cutting edge of issues in electronic discovery.

Vice Chair, ABA Antitrust Section's Global Private Litigation Committee

Vice Chair, ABA Antitrust Section's Communications and Digital Technology Industries Committee

Vice Chair, ABA Antitrust Section's Media and Technology Committee

## ✎ NEWS

**Chambers and Partners USA (2021) recognizes Hausfeld and its lawyers in its highest tier**

ANTITRUST / COMPETITION  /  TECHNOLOGY & DATA BREACH  /  UNITED STATES  /  MAY 21 2021

**ABA Antitrust Section Nominating Committee taps two Hausfeld Partners**

ANTITRUST / COMPETITION  /  UNITED STATES  /  MAY 10 2021

**Seven Hausfeld lawyers named to Lawdragon list of '500 Leading Lawyers in America' for 2021**

ANTITRUST / COMPETITION  /  ENVIRONMENTAL & PRODUCT LIABILITY  /  HUMAN RIGHTS  /  UNITED STATES  /  JAN 28 2021

**Benchmark Litigation lauds Hausfeld as a 'plaintiff-side firm to be reckoned with'**

ANTITRUST / COMPETITION  /  COMMERCIAL & FINANCIAL DISPUTES  /  UNITED STATES  /  OCT 12 2020

**The Legal 500 US (2020) ranks Hausfeld as first tier in 'Antitrust' for an 11th consecutive year**

ANTITRUST / COMPETITION  /  UNITED STATES  /  JUN 12 2020

**Chambers and Partners USA (2020) again recognizes Hausfeld and its lawyers in its highest tier**

ANTITRUST / COMPETITION  /  UNITED STATES  /  APR 24 2020

**Super Lawyers recognizes 21 Hausfeld lawyers spanning both coasts and multiple practice areas**

ANTITRUST / COMPETITION  /  COMMERCIAL & FINANCIAL DISPUTES  /  ENVIRONMENTAL & PRODUCT LIABILITY  /  HUMAN RIGHTS  /  UNITED STATES  /  NOV 18 2019

**Fifteen Hausfeld lawyers named to Lawdragon Plaintiff Financial Lawyer Guide 2019**

COMMERCIAL & FINANCIAL DISPUTES  /  UNITED STATES  /  SEP 19 2019

**Hausfeld Partner Megan Jones named 'Titan of the Plaintiffs Bar' by Law360**

ANTITRUST / COMPETITION  /  UNITED STATES  /  APR 01 2021

**Hausfeld nominated for 'Litigation of the Year' and 'Litigator of the Year' by GCR Awards 2021**

ANTITRUST / COMPETITION  /  UNITED STATES  /  FEB 18 2021

**Fifteen Hausfeld lawyers named to Lawdragon Plaintiff Financial Lawyer Guide 2020**

COMMERCIAL & FINANCIAL DISPUTES  /  UNITED STATES  /  AUG 28 2020

**WWL 2020 counts 9 Hausfeld lawyers among world's top competition plaintiff lawyers**

ANTITRUST / COMPETITION  /  UNITED STATES, FRANCE, GERMANY, UNITED KINGDOM  /  JUL 08 2020

**Five Hausfeld lawyers once again named to Lawdragon 500 list of Leading Lawyers in America**

ANTITRUST / COMPETITION  /  UNITED STATES  /  MAR 26 2020

**WWL 2020 Competition Plaintiff credits Hausfeld as only firm with 5 'Thought Leaders'**

ANTITRUST / COMPETITION  /  UNITED STATES, UNITED KINGDOM  /  JAN 21 2020

**Hausfeld and co-counsel win Public Justice's 2019 Trial Lawyer of the Year Award**

UNITED STATES  /  AUG 22 2019

**The Legal 500 US (2019) ranks Hausfeld as first tier in 'Antitrust' for a 10th consecutive year**

ANTITRUST / COMPETITION  /  UNITED STATES  /  MAY 30 2019

**Chambers and Partners USA (2019) recognizes Hausfeld and its lawyers in its highest tier**

ANTITRUST / COMPETITION / UNITED STATES / APR 29 2019

**Five Hausfeld lawyers named to Lawdragon 500 list of Leading Lawyers in America**

ANTITRUST / COMPETITION / UNITED STATES / FEB 28 2019

**16 Hausfeld lawyers recognized in 'Who's Who' of competition in the US and Europe**

ANTITRUST / COMPETITION /
UNITED STATES, FRANCE, GERMANY, UNITED KINGDOM / JUN 20 2018

**"At the top of its game" - The Legal 500 (2018) again recognizes Hausfeld and its lawyers as first tier in Antitrust**

ANTITRUST / COMPETITION / UNITED STATES / JUN 08 2018

**Antitrust Partner Megan Jones recognized by W@'s '40 in their 40s' Notable Women in Antitrust**

ANTITRUST / COMPETITION / UNITED STATES / FEB 27 2019

**Five Hausfeld lawyers recognised as 'Thought Leaders' for Competition by Who's Who Legal**

ANTITRUST / COMPETITION /
UNITED STATES, FRANCE, GERMANY, UNITED KINGDOM / JAN 28 2019

**Chambers and Partners USA (2018) recognizes Hausfeld and its lawyers**

ANTITRUST / COMPETITION / UNITED STATES / MAY 22 2018

**Hausfeld achieves historic healthcare ruling in Blue Cross Blue Shield Antitrust Litigation**

ANTITRUST / COMPETITION / UNITED STATES / MAY 03 2018

## ✏ EVENTS

**ABA's 2019 Global Private Litigation Conference**

ANTITRUST / COMPETITION / BERLIN  17 JUN 2019

- "Going Viral: Burning Healthcare and Pharmaceutical Issues," ABA Antitrust Healthcare Virtual Conference (Feb. 10, 2021), Panelist
- "Antitrust and Class Actions: What Does the Future Hold?" IBA Annual Meeting (Nov. 9, 2020), Panelist
- "Consumers and Class Actions," University of Michigan School of Law (Oct. 26, 2020), Guest Lecturer
- "Ethics for Special Masters: What Are the Problems and What Are the Rules?" ACAM 2020 Virtual Meeting, (Oct. 23, 2020), Panelist
- "The Rise of Women to Leadership in Class Actions," (Sept. 1, 2020), Webinar Host
- "Gimme a Break: Are ACPERA Benefits Obtainable?" American Bar Association Virtual Panel (June 10, 2020), Panelist
- "Chair at the Table: Diversity in Litigation," ABA Antitrust Law Section Virtual Spring Meeting (April 27, 2020), Panelist
- The Sedona Conference 2020 eDiscovery Negotiation Training (eDNT) program, (Feb. 2020), Faculty
- "How Do You Get To The Final Yes? The Art and Science of Settling Antitrust Class Actions," ABA Section of Antitrust Law's weekly podcast, Our Curious Amalgam (Jan. 31, 2020), Guest Speaker
- "MDL Settlements: Common Pitfalls and Helpful Practices," JPML Judges' Conference (Oct. 29, 2019), Speaker
- "ESI Tips and Tricks: What Tools Should be in Your Toolbox", Mass Torts Made Perfect Seminar (Oct. 22, 2019), Speaker
- "Return of the Octopus? Has Big Tech Gotten Too Big?" Association of Business Trial Lawyers Panel (Sept. 17, 2019), Speaker
- "Practical Cooperative Strategies," The Sedona Conference Institute's 2017 eDiscovery Negotiation Training (Feb. 8, 2017), Speaker
- "Women in Antitrust Litigation Panel," American Bar Association (March 9, 2015), Speaker
- 8th Annual National Institute on E-Discovery (May 16, 2014), Speaker
- "Successfully Navigating Hazardous Waters: The Second Annual Conference on Transatlantic Deals and Disputes," American Bar Association and German Bar Association (June 2011), Speaker
- "Class Action Symposium," Georgetown Law Center (April 11, 2011), Speaker
- "The Life of an International Cartel: A Six-Part Practical Series, Part III: Follow-On Civil Price Fixing," American Bar Association teleconference, (Feb. 4, 2011), Speaker
- "Antitrust Masters Course V," American Bar Association (Sept. 30, 2010), Speaker
- "E-Discovery in Antitrust Lawsuits and FTC/DOJ Investigations: Managing and Producing Electronic Information Under the Amended Federal Rules," (March 2009), CLE Speaker

## ✏ PUBLICATIONS

**Lawdragon lawyer limelight: Megan Jones of Hausfeld**

ANTITRUST / COMPETITION / UNITED STATES / SEP 26 2019

**E-Discovery trend alert: a second state has approved a technology CLE requirement for its lawyers**

ANTITRUST / COMPETITION / UNITED STATES / FEB 20 2019

**Sealy and Topco considered polestars in Blue Cross Blue Shield market allocation case**

ANTITRUST / COMPETITION / UNITED STATES / MAY 22 2018

Megan's other publications include:

- "How Case Management Orders Can Support New Attorneys," Law360 (Feb. 2021), Co-Author
- "A Litigator's Approach to Pricing Algorithms Cases: What Will We Need to Know?" ABA Global Private Litigation Bulletin, Issue 13 (March 2019), Author
- "Litigator 101," an ABA series regarding best practices in drafting discovery, Author
- "All I Really Need to Know About Antitrust Settlements, I Learned in Kindergarten," ABA Criminal & Cartel Practice Committee Newsletter (March 2011), Author
- "E-Discovery Today: The Fault Lies Not In Our Rules..." The Federal Courts Law Review (FCLR), Vol. 4, Issue 2 (2011), Author
- "E-Discovery Today: The Fault Lies Not In Our Rules..." Duke White Paper (2010), Contributor
- "Giving Electronic Discovery a Chance to Grow Up," The National Law Journal, (Dec. 15, 2009), Author
- "Observations from the Field: ACPERA's First Five Years," The Sedona Conference Journal (Fall 2009), Author
- "Antitrust Law Developments," 7th Edition, Chapter on Non-Price Vertical Restraint, published by the American Bar Association (2008), Co-Author
- "Navigating the Vendor Proposal Process: Best Practices for the Selection of Electronic Discovery Vendors," published by The Sedona Conference® (June 2007), Author
- "The Sedona Conference Glossary: E-Discovery and Digital Information Management," (2nd edition) (Dec. 2007), Co-Author

**Press:**

- "Titan of the Plaintiffs Bar: Hausfeld LLP's Megan Jones," Law360 (2021)
- "100 Women In Antitrust," Global Competition Review (2016)
- "Female Powerbroker" in her field, Law360 (2014)
- "A panel of experts discuss e-discovery horror stories, vetting vendors and expectations for service providers in terms of competency and ethics," Law Technology News (Quoted - May 19, 2014)
- "Q&A: Megan Jones on corporations as plaintiffs,"Global Competition Review (March 2014)
- Megan joined Judge Francis and Robert Trenchard (Wilmer Hale) in a podcast about the "Latest Trends in Cost-Shifting in Electronic Discovery" (Sept. 2010)

## ✏ WHAT OTHERS SAY

**Benchmark Litigation**

- California Litigation Star, Antitrust/Competition in 2021
- Local Litigation Star, Antitrust/Competition in 2021

"Megan Jones in the San Francisco office has been identified by several peers as 'a leader at Hausfeld now.'" (Benchmark Litigation, Dispute Resolution, 2021)

**Law360**

- Titan of the Plaintiffs Bar in 2021
- Female Powerbroker in her field in 2014
- Rising Star, Competition Law in 2012

**Chambers**

- Band 1, Antitrust: Plaintiff - Nationwide in 2021
- Band 1, Antitrust: Mainly Plaintiff - California in 2021
- Band 2, Antitrust: Plaintiff - Nationwide in 2020
- Band 2, Antitrust: Mainly Plaintiff - California in 2019 and 2020

A source reported that, "Megan excels in any project or task she takes on." (Chambers Antitrust: Mainly Plaintiff – California, 2021)

Megan Jones deftly represents plaintiffs in significant anticompetitive disputes. She has expertise in cases concerning price fixing and trade restraints." The publication also noted that "Megan Jones is commended for her expertise in representing corporate plaintiffs in cartel recovery actions. She is further noted for her work leading large class action cases. Sources state that 'Megan is a very good, diligent lawyer who considers the big picture.'" (Chambers Antitrust: Mainly Plaintiff – California, 2020)

Megan is "personable, very smart and really capable," and "well respected at the California Bar for her plaintiff-side antitrust practice." (Chambers Antitrust: Mainly Plaintiff – California, 2019)

**Legal 500**

- Hall of Fame in 2020 – described by the Legal 500 as "including individuals who have received constant praise from their clients for continued excellence.
- Leading Lawyer – Civil Litigation/Class Action: Plaintiff since 2012
- Leading Lawyer – Plaintiffs' Representation for Antitrust since 2012

**Super Lawyers**

- Super Lawyer, Antitrust Litigation in San Francisco since 2017
- Super Lawyer, Antitrust Litigation in Washington, DC since 2012

**Lawdragon**

- Leading Lawyer in America since 2019
- Leading Plaintiff Financial Lawyer since 2019

**Who's Who Legal**

- Thought Leader, Competition: Plaintiff since 2018
- Recommended, Competition: Plaintiff since 2016
- International Who's Who of Competition Lawyers & Economists by the Global Competition Review and Who's Who Legal in 2014

"The 'fantastic' Megan Jones is a distinguished figure in the North American competition market. Sources describe her as a 'future leader' of the field who 'is blazing a trail for younger women in the profession,' and is highly respected from all contingents." (Who's Who Legal, Competition - Plaintiff - Legal Marketplace Analysis, 2020)

A "trailblazer" who is "highly respected from all contingents" with "extraordinary depth of expertise in cartel-related matters." (Who's Who Legal, Competition - Plaintiff - Legal Marketplace Analysis, 2018)

**Other**

- Named to the '40 in Their 40s' list of notable women competition professionals by W@ in 2019
- Outstanding Antitrust Litigation Achievement in Private Law Practice: an honor she received by the American Antitrust Institute in 2016
- Selected to speak at the American Bar Association's 8th National E-Discovery Institute in 2014, where nationally- acclaimed e-discovery professionals convened for a full day to analyze and discuss the latest developments and best strategies for managing the e-discovery process.
- 100 Successful Women in Antitrust by the Global Competition Review in 2013
- Named one of just fourteen female 'Equity Champions' by Burford Capital since 2018 – Burford Capital is a leading global finance and investment management firm focused on law, which launched The Equity Project in 2018. This is a groundbreaking initiative designed to help close the gender gap in law by providing an economic incentive for change through a $50 million pool of capital earmarked for financing commercial litigation and arbitration matters led by women.
- Deemed one of the "nation's best lawyers in an MDL" and a "professional problem solver," Transcript of August 30, 2018 Hearing at 23, *In re Blue Cross Blue Shield Antitrust Litig.*, No. 2:13-cv-20000 (N.D. Ala.).

# Swathi Bojedla

Partner
Washington, DC

she / her / hers

✉ sbojedla@hausfeld.com
☎ +1 202 540 7150
in http://www.linkedin.com/pub/swathi-bojedla/23/938/27a



## ✎ EXPERIENCE

### Antitrust/Competition

- *In re Blue Cross Blue Shield Antitrust Litigation* – In one of the largest and most complex antitrust class action cases ever litigated, Swathi represents tens of millions of subscriber plaintiffs alleging higher premiums and loss of competition in the market for health insurance due to a conspiracy among 36 insurer defendants to allocate geographic territories. In November 2020, the Court granted preliminary approval to the proposed settlement agreement resolving the claims of Blue Cross Blue Shield subscribers for $2.67 billion.
- *In re Municipal Derivatives Litigation* – Swathi worked as part of a team that secured nearly $250 million in settlements for a class of municipalities affected by alleged bid-rigging in the market for municipal bonds.
- *In re Air Cargo Shipping Services Antitrust Litigation* – Swathi joined the trial team to prepare for trial against the final four defendants in a worldwide conspiracy to fix fuel surcharge on air cargo; her work assisted in driving settlements with the final defendants totaling nearly $200 million. In 2016, she was recognized for her work in this, and the above-mentioned Municipal Derivatives case, at the *American Antitrust Institute* Enforcement Awards, where she won two of the three awards for "Outstanding Antitrust Litigation Achievement in Private Law Practice."

### Environmental & Product Liability

- *Bowman et al. v. St. Joseph's Medical Center et al.* – Swathi participated in a mass tort action arising from the placement of unnecessary stents in patients at a Baltimore-area hospital, which culminated in a month-long jury trial in Maryland state court and a global resolution compensating over 240 affected patients.

### Sports & Entertainment

- *Dryer et al. v. National Football League* – Swathi represented a class of retired NFL players whose names, images, and likenesses were being used in NFL Films features. She was involved in negotiating a $50 million settlement agreement, which created a Greater Good Fund to provide health and welfare programs to former NFL players and also established a licensing agency, in partnership with IMG, to help former players market their names, images, and likenesses. After this novel settlement was reached, Swathi continued to advise the Court-appointed Board of Directors on implementation of the settlement agreement.
- *O'Bannon v. NCAA* – Swathi represented a class action on behalf of current and former Division I men's basketball and FBS football players against the NCAA and its member institutions based on rules foreclosing athletes from receiving compensation for the use of their names, images, and likenesses. In 2014, plaintiffs completed a three-week bench trial in which Swathi was part of a trial team that successfully obtained class injunctive relief allowing college athletes to receive compensation for their NIL rights, a landmark victory for college athletes.

### Technology & Data Breach

- *In re Premera Blue Cross Customer Data Breach Litigation* – Represented Premera health insurance customers whose confidential medical information was accessed during an extended breach. A $74 million settlement including a $32 million settlement fund was granted final approval in March 2020.
- *In re Arby's Restaurant Group, Inc. Data Security Litigation* – Representing financial institutions who were forced to cancel compromised cards, issue refunds due to fraudulent transactions, stop and block unauthorized transactions on their customers' accounts, and increase fraud monitoring because of the breach. A $5 million+ settlement was preliminarily approved in March 2020.
- *First Choice Federal Credit Union v. The Wendy's Company et al* – Represented financial institutions who have had to pay to replace credit cards and cover fraud losses sustained by customers as a result of a data breach at Wendy's franchisees. A $50 million settlement was granted final approval in November 2019.
- *In re The Home Depot, Inc. Customer Data Breach Litigation* – Represented financial institutions who had to pay to replace credit cards and cover fraud losses sustained by customers as a result of a data breach at Home Depot affecting 56 million people. A $25 million settlement was granted final approval in September 2017.
- *In re Target Corporation Customer Data Security Breach Litigation* – Represented financial institutions who had to pay to replace credit cards and cover fraud losses sustained by customers as a result of a data breach at Target which exposed 40 million debit and credit card accounts. This case resulted in a ground-breaking $60 million+ total settlement.

## ✎ OVERVIEW

### Experience

Swathi's career has spanned a wide range of practice areas at Hausfeld. From initial case investigations through trial, she has represented the firm's clients in all aspects of litigation. Her work has encompassed some of the highest-profile class action sports and antitrust cases in recent years, and she has been involved in the recovery of over $500 million in settlement awards on behalf of the firm's clients.

Prior to joining Hausfeld, Swathi worked on several presidential campaigns and in the U.S. Senate, both for then-Senator Hillary Rodham Clinton and as a law clerk to the U.S. Senate Judiciary Committee.

Clients

Swathi has litigated a variety of other cases across the legal spectrum, securing favorable results for her clients. In the antitrust realm, she has represented clients in the health insurance, transportation, and financial services sectors seeking to recover damages from price-fixing and market allocation cartels. As an avid sports fan, Swathi has relished the opportunity to represent current and former athletes as they seek fair treatment for the dedication they put into the game.

Swathi has also represented numerous financial institutions across the country who have suffered damages as a result of data breaches at retailers including Target, Home Depot, Kmart, and Wendy's. Through her work on these cases, she has developed an expertise in data breach law and card brand recovery processes, and has helped to design and implement unique settlement frameworks in this developing area of law.

## EDUCATION

Georgetown University Law Center, J.D., 2011

Brown University, B.A., Human Biology & Public Policy, 2007

## BAR ADMISSIONS

District of Columbia

New York

District Court for the District of Columbia

District Court for the Southern District of New York

District Court for the District of Colorado

Tenth Circuit Court of Appeals

## AFFILIATIONS

Member, *Law360* Sports Editorial Advisory Board (2019)

Member, Brown University Women's Leadership Council (2016-present)

Changing Perceptions, Board of Directors (2016-present)

Clerk, U.S. Senate Judiciary Committee

Chair, Brown University Alumni Interviewing Program, Washington, D.C. (2012-present)

Managing Editor, *Georgetown Journal of Law and Public Policy* (2010-2011)

Prior member of Georgetown Law's Institute for Public Representation, a civil rights clinic, where she worked on Title VII litigation in the D.C. District Court.

Brown University Women's Leadership Council and prior D.C. Area Co-Chair for the school's admissions interviewing program.

Prior member, Board of Directors for the D.C. non-profit Changing Perceptions, which focuses on providing professional and personal support to formerly incarcerated citizens.

## NEWS

**Rail shippers defeat BNSF, CSX, NS, and UP's attempts to insulate anticompetitive conduct from liability**

ANTITRUST / COMPETITION / UNITED STATES / FEB 19 2021

**Hausfeld nominated for 'Litigation of the Year' and 'Litigator of the Year' by GCR Awards 2021**

ANTITRUST / COMPETITION / UNITED STATES / FEB 18 2021

**Fifteen Hausfeld lawyers named to Lawdragon Plaintiff Financial Lawyer Guide 2019**

COMMERCIAL & FINANCIAL DISPUTES / UNITED STATES / SEP 19 2019

**Hausfeld announces record number of promotions globally, demonstrating continued firm growth**

UNITED STATES, FRANCE, GERMANY, UNITED KINGDOM, NETHERLANDS, SWEDEN, BELGIUM /
JAN 14 2019

**Fifteen Hausfeld lawyers named to Lawdragon Plaintiff Financial Lawyer Guide 2020**

COMMERCIAL & FINANCIAL DISPUTES / UNITED STATES / AUG 28 2020

**Super Lawyers recognizes 21 Hausfeld lawyers spanning both coasts and multiple practice areas**

ANTITRUST / COMPETITION / COMMERCIAL & FINANCIAL DISPUTES / ENVIRONMENTAL & PRODUCT LIABILITY / HUMAN RIGHTS / UNITED STATES / NOV 18 2019

**Hausfeld achieves historic healthcare ruling in Blue Cross Blue Shield Antitrust Litigation**

ANTITRUST / COMPETITION / UNITED STATES / MAY 03 2018

## EVENTS

- "Litigation Strategy After Amex," ABA Section of Antitrust Law (Nov. 6, 2020), Panelist
- "Practicing as a Sports Lawyer: Antitrust and Beyond," ABA Section of Antitrust Law – Trade, Sports and Professional Associations Committee Virtual Panel (July 9, 2020), Moderator

- Speaker, "Inside O'Bannon v. NCAA," Legal Talk Network podcast (Oct. 21, 2015), Panelist
- "Preparing for an Antitrust Trial as an Associate," ABA Section of Antitrust Law (Aug. 24, 2015), Speaker
- "The Sports Report: Sports, Consumer Protection and Antitrust – What's Hot in 2015!," ABA Trade, Sports and Professional Associations (June 16, 2015), Speaker

## PUBLICATIONS

**Third Circuit's Suboxone class certification affirmance clarifies commonality and predominance requirements**

ANTITRUST / COMPETITION  / UNITED STATES  / AUG 18 2020

**Third Circuit resuscitates medical device antitrust claims against Blue Cross Blue Shield**

ANTITRUST / COMPETITION  / UNITED STATES  / NOV 16 2018

**Sealy and Topco considered polestars in Blue Cross Blue Shield market allocation case**

ANTITRUST / COMPETITION  / UNITED STATES  / MAY 22 2018

**Swathi's other publications include:**

- "Consumers Strike Out: Time Warner Cable Defeats Challenge to Rate Hikes for Unwanted Sports Content," Trade, Sports & Professional Associations Newsletter (Spring 2015), Author
- "Going to Trial as an Associate," ABA Trial Practice Committee: Trying Antitrust Newsletter (Fall 2015), Author
- "Is Major League Baseball's Antitrust Exemption in Jeopardy?"  ABA Antitrust Section Media & Technology E-Bulletin, Vol. 1, Iss. 3 (2013), Author
- "The NFLPA's Potential Legal Liability to Former Players for Traumatic Brain Injury," Concussions Litigation Reporter, Vol. 1, No. 1 (2012), Co-Author with Michael D. Hausfeld

**Press:**

- "Rising Star: Hausfeld's Swathi Bojedla," Law360 (Apr. 27, 2016)
- "Minority Business Leader Awards: Swathi Bojedla," Washington Business Journal (Feb. 26, 2016)

## WHAT OTHERS SAY

**Lawdragon**

- Leading Plaintiff Financial Lawyer in 2020

**Super Lawyers**

- Rising Star, Antitrust Litigation in Washington, DC since 2016

**Litigation Counsel of America**

- Selected Fellow since 2019

**American Antitrust Institute**

- Outstanding Antitrust Litigation Achievement in Private Law Practice, an honor she received twice:
  - As part of the *In re Municipal Derivatives Antitrust Litigation* case team in 2016
  - As part of the *O'Bannon v. NCAA* case team in 2015

**Other**

- Rising Star Under 40, Sports Law by Law360 in 2016
- Minority Business Leader by The Washington Business Journal in 2016 - an honor held for the top 25 Greater Washington leaders who embody entrepreneurial drive, creativity and success in business.
- Litigation of the Year - Non-Cartel Prosecution: an honor she received by the Global Competition Review as part of the *O'Bannon v. NCAA* case team in 2015.

# Arthur N. Bailey, Jr.

**Partner**
San Francisco

✉ abailey@hausfeld.com

📞 +1 415 633 1939

in https://www.linkedin.com/pub/arthur-bailey-jr/92/880/66b



## EXPERIENCE

### Antitrust/Competition

- *In re Blue Cross Blue Shield Antitrust Litigation* – In one of the largest and most complex antitrust class action cases ever litigated, Art was appointed to the Discovery Committee, and represents tens of millions of subscriber plaintiffs alleging higher premiums and loss of competition in the market for health insurance due to a conspiracy among 36 insurer defendants to allocate geographic territories. In November 2020, the Court granted preliminary approval to the proposed settlement agreement resolving the claims of Blue Cross Blue Shield subscribers for $2.67 billion.

### Commercial & Financial Disputes

- *District Council #16 Northern California Health And Welfare Trust Fund v. Sutter Health et al.* – Representing a proposed class of union funds and employers that self-insure their employees' health insurance needs. Hausfeld has brought suit against Sutter Health for overcharging for anesthesia services, which is a major component of any surgical charge imposed by Sutter Health.

## OVERVIEW

**Experience**

Arthur's primary areas of practice are in consumer, antitrust and other complex litigation matters. He values the opportunity to represent clients of all types who have suffered significant wrongs. Like others at Hausfeld, he is motivated to ensure that all persons, regardless of wealth or status, are able to find justice through the courts. Arthur shares the firm's global vision, its emphasis on civil rights and human rights cases, and its desire to boldly pursue cases that seek to push the boundaries of and developments in the law. He enjoys the legal analysis and critical thinking inherent in overcoming the challenges necessary to successfully solve the client's problems.

**Clients**

Arthur has litigated cases in the technology, automotive and agricultural industries, and in sports and entertainment law. He also had the privilege of representing the California Teachers' Association and the National Education Association in litigation in the Ninth Circuit Court of Appeals and the United States Supreme Court, authoring amicus curia briefs on their behalf in support of the right of gays and lesbians to marry.

## EDUCATION

Bachelor of Music Education, College of Wooster

University of Tulsa College of Law, J.D., 1999

## BAR ADMISSIONS

U.S. District Court for Northern California

U.S. District Court for Eastern California

U.S. District Court for Central California

## NEWS

**Hausfeld nominated for 'Litigation of the Year' and 'Litigator of the Year' by GCR Awards 2021**

ANTITRUST / COMPETITION / UNITED STATES / FEB 18 2021

**Hausfeld achieves historic healthcare ruling in Blue Cross Blue Shield Antitrust Litigation**

ANTITRUST / COMPETITION / UNITED STATES / MAY 03 2018

## Michael P. Lehmann

Partner
San Francisco

✉ mlehmann@hausfeld.com
☎ +1 415 633 1909
in https://www.linkedin.com/pub/michael-lehmann/2a/742/6a



### EXPERIENCE

**Antitrust/Competition**

- *In re Packaged Seafood Products Antitrust Litigation*
- *In re Inductors Antitrust Litigation*
- *In re Disposable Contact Lens Antitrust Litigation*
- *In re Aftermarket Automotive Lighting Products Antitrust Litigation*
- *In re Municipal Derivatives Antitrust Litigation*
- *In re Transpacific Passenger Air Transportation Antitrust Litigation*
- *In re International Air Transportation Surcharge Antitrust Litigation*
- *In re Domestic Airline Travel Antitrust Litigation*
- *In re Blue Cross & Blue Shield Antitrust Litigation*
- *NCAA Student-Athlete Name & Licensing Litigation*
- *In re Optical Disk Drive Antitrust Litigation*
- *In re Fresh & Process Potatoes Antitrust Litigation*
- *In re Rail Freight Fuel Surcharge Antitrust Litigation*
- *In re Generic Drugs Antitrust Litigation*
- *In re Diisocyanates Antitrust Litigation*
- *In re Chicago Board Options Exchange Volatility Index Antitrust Litigation*
- *In re Farm-Raised Salmon and Salmon Products Antitrust Litigation*

### OVERVIEW

**Experience**

In 1978, far before joining Hausfeld, Michael joined the Furth, Fahrner & Mason law firm and began practicing antitrust and business litigation. He was at that firm until 2007; it was the Furth & Lehmann firm when he left, with him having achieved the title of Managing Partner. In 2007, Michael left the Furth firm to set up the San Francisco office of Cohen Milstein, Hausfeld & Toll, where he was a partner. When the separate Hausfeld firm was created in November of 2008, he left Cohen Milstein and joined Hausfeld as one of the founding partners and has worked there ever since.

Over the past 40 years, Michael played significant roles (including several co-lead positions) on the plaintiffs' side in major antitrust class actions, such as the *Brand Name Prescription Drug Antitrust Litigation*, the *Dynamic Random Access Memory (DRAM) Antitrust Litigation*, the *Static Random Access Memory (SRAM) Antitrust Litigation*, the *Cathode Ray Tube (CRT) Antitrust Litigation*, the *TFT-LCD (Flat Panel) Antitrust Litigation*, the *Cosmetics Antitrust Litigation*, the *Graphics Processing Units (GPU) Antitrust Litigation*, the *Compact Disc Minimum Advertised Price Antitrust Litigation*, the *Publication Paper Antitrust Litigation*, the *High Pressure Laminates Antitrust Litigation*, the *Bristol Bay Salmon Fishery Antitrust Litigation*, and the *Intel Microprocessor Antitrust Litigation*.

**Clients**

During the first part of his career at the Furth firm, Michael did extensive defense work for a varied roster of clients, such as the Santa Fe Southern Pacific Railway Co., Sprint Communications Co., Kellogg Co., Grolier Inc., News Inc., Columbia Pictures, Georgia-Pacific Co., and William Sullivan (former owner of the New England Patriots). He was among those representing these entities as either defendants in class action antitrust litigation, plaintiffs in individual antitrust cases, defendants in proceedings brought by the Federal Trade Commission, petitioners in proceedings before the United States Food and Drug Administration, or respondents in arbitration proceedings before the International Chamber of Commerce. During this phase of his career, Mr. Lehmann helped Kellogg defeat a charge by the FTC that it and other ready-to-eat cereal companies engaged in a "shared monopoly" and wrote submissions to the FDA that caused it to permit certain types of health claims on food labels.

### EDUCATION

Hastings College of the Law, J.D., 1977

University of California at Berkeley, A.B., 1974

### BAR ADMISSIONS

California

### AFFILIATIONS

Member, American Bar Association

## NEWS

**Fifteen Hausfeld lawyers named to Lawdragon Plaintiff Financial Lawyer Guide 2020**

COMMERCIAL & FINANCIAL DISPUTES  /  UNITED STATES  /  AUG 28 2020

**Best Lawyers 2021 recognizes six Hausfeld lawyers on both coasts**

ANTITRUST / COMPETITION  /  ENVIRONMENTAL & PRODUCT LIABILITY  /
COMMERCIAL & FINANCIAL DISPUTES  /  UNITED STATES  /  AUG 20 2020

**Fifteen Hausfeld lawyers named to Lawdragon Plaintiff Financial Lawyer Guide 2019**

COMMERCIAL & FINANCIAL DISPUTES  /  UNITED STATES  /  SEP 19 2019

**The Legal 500 US (2019) ranks Hausfeld as first tier in 'Antitrust' for a 10th consecutive year**

ANTITRUST / COMPETITION  /  UNITED STATES  /  MAY 30 2019

**Six Hausfeld lawyers recognized in 2019 edition of 'Best Lawyers in America'**

ANTITRUST / COMPETITION  /  COMMERCIAL & FINANCIAL DISPUTES  /
ENVIRONMENTAL & PRODUCT LIABILITY  /  UNITED STATES  /  AUG 28 2018

**16 Hausfeld lawyers recognized in 'Who's Who' of competition in the US and Europe**

ANTITRUST / COMPETITION  /
UNITED STATES, FRANCE, GERMANY, UNITED KINGDOM  /  JUN 20 2018

**Super Lawyers recognizes 21 Hausfeld lawyers spanning both coasts and multiple practice areas**

ANTITRUST / COMPETITION  /  COMMERCIAL & FINANCIAL DISPUTES  /
ENVIRONMENTAL & PRODUCT LIABILITY  /  HUMAN RIGHTS  /  UNITED STATES  /
NOV 18 2019

**U.S. News & World Report and Best Lawyers rank Hausfeld as a top firm for 2020**

ANTITRUST / COMPETITION  /  COMMERCIAL & FINANCIAL DISPUTES  /
UNITED STATES  /  NOV 01 2019

**Five Hausfeld lawyers recognised as 'Thought Leaders' for Competition by Who's Who Legal**

ANTITRUST / COMPETITION  /
UNITED STATES, FRANCE, GERMANY, UNITED KINGDOM  /  JAN 28 2019

**U.S. News & World Report and Best Lawyers rank Hausfeld as a top firm for 2019**

ANTITRUST / COMPETITION  /  COMMERCIAL & FINANCIAL DISPUTES  /
UNITED STATES  /  NOV 20 2018

**Hausfeld achieves historic healthcare ruling in Blue Cross Blue Shield Antitrust Litigation**

ANTITRUST / COMPETITION  /  UNITED STATES  /  MAY 03 2018

## EVENTS

**ABA's 2019 Global Private Litigation Conference**

ANTITRUST / COMPETITION  /  BERLIN  17 JUN 2019

## WHAT OTHERS SAY

**Lawdragon**

- Leading Plaintiff Financial Lawyer since 2019

**Legal 500**

- Recommended Lawyer,  Antitrust - Civil Litigation/Class Actions: Plaintiff in 2019

**Who's Who Legal**

- Recommended Lawyer, Competition: Plaintiff since 2018
- Global Leader, Competition: Plaintiff in 2019

**Best Lawyers**

- Best Lawyer, Antitrust Law since 2013

**Super Lawyers**

- Super Lawyer, Antitrust Litigation in San Francisco since 2011

**Global Competition Review**

- Litigation of the Year – Cartel Prosecution: an honor he received as part of the *In re Foreign Exchange Benchmark Rates Antitrust Litigation* case team in 2015.

**Other**

- Recipient of the Martindale-Hubbell Judicial AV Preeminent rating year-after-year.

## Scott Martin

Partner
New York

✉ smartin@hausfeld.com

☎ +1 646 357 1195

in https://www.linkedin.com/pub/scott-martin/10/100/747



## EXPERIENCE

### Antitrust/Competition

- *In re National Football League's "Sunday Ticket" Antitrust Litigation* –  Scott serves as co-lead counsel on behalf of businesses against DirecTV, a leading provider of digital entertainment in the United States, and the National Football League ("NFL"), alleging that the NFL's exclusive agreement to allow DirecTV to broadcast out-of-market Sunday NFL football games violated the antitrust laws.
- *In re Libor-Based Financial Instruments Antitrust Litigation* – Class action lawsuit alleging a global conspiracy by some of the world's largest financial institutions to manipulate LIBOR. The manipulation of LIBOR, which is the primary benchmark for short-term interest rates for trillions of dollars-worth of financial transactions worldwide, is alleged to have caused billions of dollars in damage to municipalities, businesses, and investors.
- *In re Blue Cross Blue Shield Antitrust Litigation* – In one of the largest and most complex antitrust class action cases ever litigated, Scott represents tens of millions of subscriber plaintiffs alleging higher premiums and loss of competition in the market for health insurance due to a conspiracy among 36 insurer defendants to allocate geographic territories.  In 2018, the subscriber plaintiffs achieved summary judgment on the application of a per se standard to the alleged conduct, streamlining the case for class certification and trial.
- *Core-Mark NY CMSA Litigation* – Multi-plaintiff action asserted against leading distributors of cigarettes and other consumer goods in New York under the Cigarette Marketing Sales Act.
- Scott regularly presents compliance talks to businesspersons at industry-leading apparel, industrial, retailing, and distribution clients.
-  Scott currently is providing competition advocacy before the Federal Trade Commission and merger advice to a Fortune 100 company.

### Environmental & Product Liability

- *SCWA v. Dow, et al. and SCWA v. 3M Company, et al.* – Scott is currently representing the largest municipal groundwater provider in the United States for recovery in various water contamination matters.

### Public Entity

We have extensive experience representing public and governmental entities, including state Attorneys General Offices, municipal utility boards, and counties in high-stakes investigations and litigation involving a variety of legal practice areas, including antitrust, consumer protection, financial services, and environmental law. The firm's public entity portfolio includes:

- Retention by state Attorneys General Offices for antitrust litigation against Big Tech platforms.
- Retention by the largest public water supplier in the country relating to environmental contamination.
- Retention by public entities to pursue antitrust claims relating to fraud in financial markets; and
- Retention by the state of West Virginia in one of the earliest cases against the pharmaceutical industry relating to the opioid crisis, filed decades before the current wave of opioid litigation.

## OVERVIEW

### Experience

Scott is co-chair of the firm's Antitrust practice group. Scott's perspective is a unique one, as prior to joining the firm in 2015, he played major roles in defending antitrust and class action cases as a partner in two leading international law firms. Over the course of more than 25 years, he also has negotiated resolutions of numerous regulatory investigations and actions on behalf of corporate clients. Scott's practice extends to bench and jury trials in both federal and state courts, complex federal multidistrict actions, class actions involving direct and indirect purchasers, *parens patriae* cases, FTC and DOJ investigations as well as other regulatory actions, and *qui tam* litigation.

### Clients

Scott has two decades of counseling experience across a broad range of industries on pricing, distribution, competitive intelligence, joint ventures, and non-compete agreements, among other competition issues, and has designed antitrust compliance programs for some of the world's largest corporations.

## EDUCATION

Stanford Law School, J.D., 1990

Stanford University, A.B., with honors, 1987

## BAR ADMISSIONS

New York

District of Columbia

Supreme Court of the United States

Numerous Federal District and Several State Courts

## AFFILIATIONS

Antitrust Law Section Delegate to the ABA House of Delegates (2020-21)

Fellow, American Bar Foundation

Fellow, Litigation Counsel of America

Secretary and Communications Officer, American Bar Association, Antitrust Law Section

- Previous positions include: Council member, Chair of Trial Practice Committee, Chair of Civil RICO Committee, Chair of Global Private Litigation Conference, and Editorial Board of Antitrust Law Developments, among others)

Executive Committee, New York State Bar Association, Antitrust Section

Editorial Board (Competition), *Law360* (2012-2018)

Treasurer and Board of Directors member, WHEDco (leading Bronx non-profit housing, educational and community development organization)

## NEWS

**ABA Antitrust Section Nominating Committee taps two Hausfeld Partners**

ANTITRUST / COMPETITION  /  UNITED STATES  /  MAY 10 2021

**Hausfeld nominated for 'Litigation of the Year' and 'Litigator of the Year' by GCR Awards 2021**

ANTITRUST / COMPETITION  /  UNITED STATES  /  FEB 18 2021

**Fifteen Hausfeld lawyers named to Lawdragon Plaintiff Financial Lawyer Guide 2020**

COMMERCIAL & FINANCIAL DISPUTES  /  UNITED STATES  /  AUG 28 2020

**Best Lawyers 2021 recognizes six Hausfeld lawyers on both coasts**

ANTITRUST / COMPETITION  /  ENVIRONMENTAL & PRODUCT LIABILITY  /  COMMERCIAL & FINANCIAL DISPUTES  /  UNITED STATES  /  AUG 20 2020

**Super Lawyers recognizes 21 Hausfeld lawyers spanning both coasts and multiple practice areas**

ANTITRUST / COMPETITION  /  COMMERCIAL & FINANCIAL DISPUTES  /  ENVIRONMENTAL & PRODUCT LIABILITY  /  HUMAN RIGHTS  /  UNITED STATES  /  NOV 18 2019

**U.S. News & World Report and Best Lawyers rank Hausfeld as a top firm for 2020**

ANTITRUST / COMPETITION  /  COMMERCIAL & FINANCIAL DISPUTES  /  UNITED STATES  /  NOV 01 2019

**Chambers and Partners USA (2019) recognizes Hausfeld and its lawyers in its highest tier**

ANTITRUST / COMPETITION  /  UNITED STATES  /  APR 29 2019

**U.S. News & World Report and Best Lawyers rank Hausfeld as a top firm for 2019**

ANTITRUST / COMPETITION  /  COMMERCIAL & FINANCIAL DISPUTES  /  UNITED STATES  /  NOV 20 2018

**Chambers and Partners USA (2018) recognizes Hausfeld and its lawyers**

ANTITRUST / COMPETITION  /  UNITED STATES  /  MAY 22 2018

**Hausfeld achieves historic healthcare ruling in Blue Cross Blue Shield Antitrust Litigation**

ANTITRUST / COMPETITION  /  UNITED STATES  /  MAY 03 2018

**Seven Hausfeld lawyers named to Lawdragon list of '500 Leading Lawyers in America' for 2021**

ANTITRUST / COMPETITION  /  ENVIRONMENTAL & PRODUCT LIABILITY  /  HUMAN RIGHTS  /  UNITED STATES  /  JAN 28 2021

**Peekya App hires global law firm Hausfeld for antitrust case claiming Google has monopolized mobile app marketplace**

ANTITRUST / COMPETITION  /  UNITED STATES  /  SEP 30 2020

**The Legal 500 US (2020) ranks Hausfeld as first tier in 'Antitrust' for an 11th consecutive year**

ANTITRUST / COMPETITION  /  UNITED STATES  /  JUN 12 2020

**Chambers and Partners USA (2020) again recognizes Hausfeld and its lawyers in its highest tier**

ANTITRUST / COMPETITION  /  UNITED STATES  /  APR 24 2020

**Fifteen Hausfeld lawyers named to Lawdragon Plaintiff Financial Lawyer Guide 2019**

COMMERCIAL & FINANCIAL DISPUTES  /  UNITED STATES  /  SEP 19 2019

**The Legal 500 US (2019) ranks Hausfeld as first tier in 'Antitrust' for a 10th consecutive year**

ANTITRUST / COMPETITION  /  UNITED STATES  /  MAY 30 2019

**Hausfeld LLP names Bonny Sweeney and Scott Martin as U.S. Antitrust practice group Co-Chairs**

ANTITRUST / COMPETITION  /  UNITED STATES  /  NOV 19 2018

**Six Hausfeld lawyers recognized in 2019 edition of 'Best Lawyers in America'**

ANTITRUST / COMPETITION  /  COMMERCIAL & FINANCIAL DISPUTES  /  ENVIRONMENTAL & PRODUCT LIABILITY  /  UNITED STATES  /  AUG 28 2018

**Hausfeld expands to New York, welcoming renowned antitrust litigators Scott Martin and Irving Scher**

ANTITRUST / COMPETITION  /  UNITED STATES, FRANCE, GERMANY, UNITED KINGDOM, NETHERLANDS, SWEDEN, BELGIUM  /  JUL 13 2015

 **EVENTS**

**ABA's 2019 Global Private Litigation Conference**

ANTITRUST / COMPETITION / BERLIN 17 JUN 2019

Scott has been asked to speak at a wide array of events over the course of his career including:

- "Honest Broker Or Advocate: Effective Expert Testimony," ABA Section of Antitrust Law Virtual Spring Meeting (April 2020), Panelist
- "Competition Tort Claims Around the Globe," ABA Section of Antitrust Law Spring Meeting, (March 2019), Panelist
- "Competitor Collaborations: US and EU Joint Venture Law," ABA Section of Antitrust Law (April 2013), Speaker
- "'Have I Got a Deal for You': Big Sellers, Big Issues," New York City Bar Association (January 2013), Speaker
- "Discovery by Leaps and Bounds: Practical Issues in International Antitrust Cases," ABA Section of Antitrust Law (November 2012), Moderator
- "Comcast v. Behrend: Rigorous Analysis – How Much Is Too Much?" New York State Bar Association, Antitrust Law Section (October 2012), Speaker
- "Pricing Fundamentals: Pricing Tied to Other Offerings," ABA Section of Antitrust Law (February 2012), Speaker
- "Settling Class Action Litigation," American Antitrust Institute 5th Annual Future of Private Antitrust Enforcement Conference, (December 2011), Speaker
- "Trying a Case Involving Mixed Vertical and Horizontal Restraints: The Legal, Economic and Practical Considerations," ABA Section of Antitrust Law (October 2011), Speaker
- "International Cartel Enforcement in the Digital Age: Collection and Use of Evidence Beyond Borders," New York State Bar  Association Antitrust Law Section, (January 2011), Speaker
- "New York's Donnelly Act: Another Tool in the Chest?" NYSBA Antitrust Law Section and ABA Section of Antitrust Law (July 2010), Speaker
- "Pricing Issues," PLI Antitrust Counseling & Compliance Seminar (February 2010), Speaker
- "Robinson-Patman - Price Discrimination," Practising Law Institute Advanced Antitrust Seminar: Distribution & Marketing (annually 2003-2009), Speaker
- "Tying and Bundling -- Consumer-Friendly Offers or Exclusionary Conduct?" ABA Section of Antitrust Law (May 2009), Speaker
- "Mastering the Discovery Process for the General Counsel: How to Master the Costs and Burdens of Federal Discovery," Incisive Media (November 2008), Speaker
- "Bundled Discounts: Careful Practice in the Face of Unsettled Law," Ohio State Bar Association Antitrust Institute (November 2008), Speaker
- "Antitrust Developments – A Busy Supreme Court Term Plus A Look at Joint Marketing Activities and Information Sharing," ABA Section of Environment, Energy and Resources, 21st Annual Petroleum Refining and Marketing Law Roundtable (October 2006), Speaker
- "Antitrust Meets Civil RICO on a Grand Scale," ABA Section of Antitrust Law (March 2006), Session Chair
- "Vive le Difference: Dealing Effectively with State Enforcers," ABA Section of Antitrust Law (March 2006), Speaker
- ABA Antitrust Litigation Course: Mock Trial (October 2005), Defense Counsel
- "Lest We Not Forget: State Law Constraints on Price by Robinson-Patman Act," ABA Section of Antitrust (June 2005), Panelist
- "Defending Against Employee Raiding," ABA Section of Antitrust Law (March 2005), Session Chair
- "Assessing an Unfair Competition Case Under California Section 17200," ABA Section of Antitrust Law (March 2004), Session Chair
- "Price Discrimination and Slotting Allowances," Conference Board Antitrust Conference (March 2003), Speaker
- "The Front Lines: Prudent Business Decision-Making in Light of the New Realities of Distribution," (March 2003), Speaker

## **PUBLICATIONS**

Books and Chapters:

- "Settlement Practice from Both a Plaintiff and Defense Perspective," Chapter, American Antitrust Institute Handbook on Private Enforcement of Competition Law U.S. Edition (2012) Co-Author
- "Litigating International Antitrust Cases," J. von Kalinowski, Chapter, Antitrust Counseling and Litigation Techniques (2007 and update), Author
- "Private Antitrust Litigation," Chapter, Global Competition Review - Getting the Deal Through (2005), Co-Author
- "Advising Foreign Clients on US Antitrust Law," Chapter, Asia Pacific Antitrust & Trade Review (2005), Co-Author
- "Antitrust Adviser," Two-volume treatise, 5th ed., Co-Editor
- "Business Torts & Unfair Competition," Chapter: Section 5 of the FTC Act, Co-Author
- Handbook (3d ed.) Chapter (New York), State Antitrust Practice and Statutes (three editions), Co-Author
- "Competition Damages Actions in the EU: Law and Practice," 2d ed., Contributor

Articles:

- "Cartel Damage Recovery: A Roadmap for In-House Counsel," Antitrust Magazine, [Winner, Concurrences Writing Award] (Fall 2017), Co-Author
- "SCWA Pursues Legal Action Against Companies Responsible for PFOS, PFOA and 1,4-Dioxane Contamination," Lexology (Nov. 2017), Co-Author
- "Horizontal conspiracy complaints face different fates under Twombly 'plausibility' standard," Lexology, (Oct. 2015), Co-Author
- "After American Needle, Is Everything Old New Again?" Law360 (Aug. 4, 2010), Author
- "Can Anyone Keep a Secret Anymore? Beware the differing privilege regimes in the global environment," New York Law Journal (Nov. 16, 2009), Author
- "The linkLine Decision: Section 2 Gets Squeezed Further," GCP: The Online Magazine for Global Competition Policy (April 2009), Author
- "Antitrust Injury in Robinson-Patman Cases: What's Left?" GCP: The Online Magazine for Global Competition Policy, (Nov. 2008), Author
- "One Year Post-'Twombly,' Trends Emerge," New York Law Journal (Aug. 25, 2008), Author
- "A Rule Of Reason For Vertical Price Fixing - Part II," The Metropolitan Corporate Counsel, Volume 15, No. 11 (Nov. 2007), Co-Authored with Fiona A. Schaeffer
- "A Rule Of Reason For Vertical Price Fixing - Part I," The Metropolitan Corporate Counsel, Volume 15, No. 10 (Oct. 2007), Author
- "Antitrust in Distribution - Tying, Bundling and Loyalty Discounts, Resale Pricing Restraints, Price Discrimination - Part I," The Metropolitan Corporate Counsel, Volume 14, No. 4 (April 2006), Author

## **WHAT OTHERS SAY**

### Chambers

- Band 1, Antitrust: Mainly Plaintiff, New York since 2015
- Leading Lawyer since 2006

Sources reported, "He's an expert in antitrust and how it's applied from a commercial perspective. He's incredible partner." "He has a great reputation and is very collegial." "He is a very good plaintiffs' lawyer." (Chambers US, Antitrust: Mainly Plaintiff, New York, 2021)

"Co-chair of the antitrust group, Scott Martin lends plaintiff clients his cutting-edge expertise in antitrust litigation honed over years of defense-side representation. He regularly appears in state and federal jury and bench trials in the most complex of matters." (Chambers US, Antitrust: Mainly Plaintiff, New York, 2020)

### Legal 500

- Recommended Lawyer, Antitrust - Civil Litigation/Class Actions: Plaintiff since 2015

Sources have stated that Scott is "friendly, engaging, and spot on," that "he's extremely polished, an expert in the field and a pleasure to work with," and that "Amanda Coolidge and Scott Martin go above and beyond at all hours to provide the best level of customer service. They are always there with an explanation." (Legal 500 US, Antitrust - Civil Litigation/Class Actions: Plaintiff, 2020)

**Best Lawyers**

- Best Lawyer since 2012
  - Antitrust Law
  - Litigation - Antitrust

A past client commented, "I was extremely impressed with his knowledge and attentiveness as well as his ability to truly enjoy servicing his client in a productive and cost-effective manner."

**Super Lawyers**

- Super Lawyer, Antitrust Litigation in New York since 2006

**Other**

- Outstanding Antitrust Litigation Achievement in Private Law Practice: an honor he received by the American Antitrust Institute in 2016 for *In re Air Cargo Antitrust Litigation*.
- International Who's Who of Competition Lawyers and Economists, Lawdragon, International Who's Who of Business Lawyers,  and others often reflect recognition of Scott's work by his peers.

Clients, colleagues, and adversaries have referred to Scott in print variously as a "terrifically talented and surefooted litigator" and "an astute operator who always adds value to proceedings" while also serving as a "business-oriented lawyer who looks to see what the overall issues are and determines how best to approach the representation of those interests, including common sense approaches to exit strategies where feasible."

**Irving Scher**

Senior Counsel
New York

✉ ischer@hausfeld.com

📞 +1 646 354 1196



---

## EXPERIENCE

### Antitrust/Competition

**Current Plaintiff-Side Cases:**

- *In re American Express Anti-Steering Rules Antitrust Litigation*
- *In re Blue Cross Blue Shield Antitrust Litigation*
- *In re Contact Lens Antitrust Litigation*
- *In re Domestic Airline Travel Antitrust Litigation*
- *2301 M Cinema LLC d/b/a West End Cinema  v. Silver Cinemas Acquisition Co.*

**Selected Prior Defense-Side Cases:**

- *United Magazine Co. v. Time Warner, Inc.*
- *In re Compact Disc Minimum Advertised Price Litigation*
- *In re Recorded Music Price Fixing Litigation*
- *Williamson Oil Co. v. Philip Morris*
- *In re Nine West Antitrust Litigation*
- *In re Lorazapam Antitrust Litigation*
- *In re Toys "R" Us Antitrust Litigation*
- *Caribe BMW v. BMW AG*
- *Reisner v. General Motors Corp.*

## OVERVIEW

**Experience**

Irv is considered an antitrust icon, with many decades of extensive experience in counseling and all phases of antitrust, marketing, and trade practice litigation and appeals, often as lead counsel in multi-party matters. He has been the lead defense counsel in numerous class actions and FTC and government enforcement agency investigations and cases across a wide range of industries.

Irv's enthusiasm for and knowledge of competition law is unparalleled. He prides himself on developing a deep knowledge of his clients' businesses, enabling him to guide them to pragmatic and lawful business solutions. As a litigator, he advocates vigorously and impresses judges, co- counsel, and opponents with his legal and strategic acumen. He has been chosen to lead many times by his peers, both in litigation and in the antitrust bar.

**Clients**

With competition expertise spanning the airline, retail, apparel, automotive, electronics, publishing, grocery, pharmaceutical, publishing, and recorded music industries, Irv has represented numerous clients in significant antitrust, marketing, advertising, and trade practice investigations, litigations, and counseling matters over many decades.

## EDUCATION

Columbia Law School (Reviews Editor, Columbia Law Review, and recipient of National Scholarship and Gluck Scholarship)

City College of NY, B.A.

## BAR ADMISSIONS

New York

First Circuit

Second Circuit

Third Circuit

Seventh Circuit

Ninth Circuit

D.C. Circuit

United States District Court for the Southern District of New York

United States District Court for the Eastern District of New York

United States District Court for the Northern District of New York

United States Supreme Court

## ◢ AFFILIATIONS

Editor, Hausfeld *Competition Bulletin*

Member, MLex Advisory Board

Co-Editor and Co-Author, *Antitrust Adviser*, a Thomson Reuters two-volume practical reference treatise

Author, "Living with the Robinson-Patman Act, *Corporate Practice Series-Patman*," Bloomberg Bureau of National Affairs, 2019

Adjunct Professor, NYU Law School, teaching an advanced antitrust course

Former Chair, American Bar Association (ABA) Section of Antitrust Law

Former Chair, New York State Bar Association (NYSBA) Antitrust Section

Former Co-Chair, Practicing Law Institute Annual Antitrust Institute

Vice Chair, Editorial Board, *Antitrust Law Developments*, ABA Section of Antitrust Law, 1975

## ◢ NEWS

**Two Hausfeld Competition Bulletin articles nominated by the Concurrences Antitrust Writing Awards 2021**

ANTITRUST / COMPETITION / UNITED STATES, GERMANY, GERMANY / MAY 04 2021

**Fifteen Hausfeld lawyers named to Lawdragon Plaintiff Financial Lawyer Guide 2020**

COMMERCIAL & FINANCIAL DISPUTES / UNITED STATES / AUG 28 2020

**Chambers and Partners USA (2020) again recognizes Hausfeld and its lawyers in its highest tier**

ANTITRUST / COMPETITION / UNITED STATES / APR 24 2020

**Four Hausfeld articles make Antitrust Writing Awards 2020 shortlist**

ANTITRUST / COMPETITION / UNITED STATES, GERMANY, UNITED KINGDOM / JAN 31 2020

**Fifteen Hausfeld lawyers named to Lawdragon Plaintiff Financial Lawyer Guide 2019**

COMMERCIAL & FINANCIAL DISPUTES / UNITED STATES / SEP 19 2019

**The Legal 500 US (2019) ranks Hausfeld as first tier in 'Antitrust' for a 10th consecutive year**

ANTITRUST / COMPETITION / UNITED STATES / MAY 30 2019

**U.S. News & World Report and Best Lawyers rank Hausfeld as a top firm for 2019**

ANTITRUST / COMPETITION / COMMERCIAL & FINANCIAL DISPUTES / UNITED STATES / NOV 20 2018

**Six Hausfeld lawyers recognized in 2019 edition of 'Best Lawyers in America'**

ANTITRUST / COMPETITION / COMMERCIAL & FINANCIAL DISPUTES / ENVIRONMENTAL & PRODUCT LIABILITY / UNITED STATES / AUG 28 2018

**Best Lawyers 2021 recognizes six Hausfeld lawyers on both coasts**

ANTITRUST / COMPETITION / ENVIRONMENTAL & PRODUCT LIABILITY / COMMERCIAL & FINANCIAL DISPUTES / UNITED STATES / AUG 20 2020

**WWL 2020 counts 9 Hausfeld lawyers among world's top competition plaintiff lawyers**

ANTITRUST / COMPETITION / UNITED STATES, FRANCE, GERMANY, UNITED KINGDOM / JUL 08 2020

**Super Lawyers recognizes 21 Hausfeld lawyers spanning both coasts and multiple practice areas**

ANTITRUST / COMPETITION / COMMERCIAL & FINANCIAL DISPUTES / ENVIRONMENTAL & PRODUCT LIABILITY / HUMAN RIGHTS / UNITED STATES / NOV 18 2019

**U.S. News & World Report and Best Lawyers rank Hausfeld as a top firm for 2020**

ANTITRUST / COMPETITION / COMMERCIAL & FINANCIAL DISPUTES / UNITED STATES / NOV 01 2019

**Chambers and Partners USA (2019) recognizes Hausfeld and its lawyers in its highest tier**

ANTITRUST / COMPETITION / UNITED STATES / APR 29 2019

**Five Hausfeld articles make the Antitrust Writing Awards 2019 shortlist**

ANTITRUST / COMPETITION / UNITED STATES, GERMANY, UNITED KINGDOM / JAN 11 2019

**Chambers and Partners USA (2018) recognizes Hausfeld and its lawyers**

ANTITRUST / COMPETITION / UNITED STATES / MAY 22 2018

**Hausfeld expands to New York, welcoming renowned antitrust litigators Scott Martin and Irving Scher**

ANTITRUST / COMPETITION / UNITED STATES, FRANCE, GERMANY, UNITED KINGDOM, NETHERLANDS, SWEDEN, BELGIUM / JUL 13 2015

## ◢ EVENTS

**Irv has been asked to speak on a wide variety of topics over the course of his career:**

- "Penalties for Collusion: Can There Be an Overlap Between Fines and Damages?" The Global Antitrust Economics Conference (2016), Speaker
- Numerous New York State Bar Association Annual Meetings, Speaker
- Numerous ABA Antitrust Section Annual Spring Meetings, Speaker
- Annual Antitrust Institute, PLI (1977-2004), Co-Chair
- Dual Distribution, Law Journal Seminars (1992-2003), Speaker
- Category Management Guidelines, American Antitrust Institute (2003), Speaker

## PUBLICATIONS

**Passage of Competitive Health Insurance Reform Act repeals 75 year old health insurers' federal antitrust exemption**

ANTITRUST / COMPETITION | FEB 25 2021

**Umbrella liability: has its time come?**

ANTITRUST / COMPETITION | UNITED STATES | NOV 19 2020

**In defense of class actions: a response to Makan Delrahim's commentary on the UK Mastercard case**

ANTITRUST / COMPETITION | UNITED STATES | JUN 09 2020

**Seventh Circuit revives monopolization and tying agreement suit against Comcast**

ANTITRUST / COMPETITION | UNITED STATES | MAR 09 2020

**The Supreme Court appears ready to permit 100% cy pres awards in class actions under very limited circumstances***

ANTITRUST / COMPETITION | UNITED STATES | NOV 12 2018

**Ohio v. American Express Co.: The Supreme Court addresses anti-steering**

ANTITRUST / COMPETITION | UNITED STATES | AUG 16 2018

**Third Circuit limits the breadth of its rule against "umbrella damages"**

ANTITRUST / COMPETITION | UNITED STATES | FEB 14 2018

**Supreme Court to determine the extent of the FTC's authority to obtain monetary relief**

ANTITRUST / COMPETITION | UNITED STATES | NOV 19 2020

**Can U.S. class action law serve as guidelines for the UK indirect purchaser Mastercard case?**

ANTITRUST / COMPETITION | UNITED STATES | AUG 18 2020

**Third Circuit rules against customer in Robinson-Patman Act case despite 10% discount defendant provided to the customer's sole competitor**

ANTITRUST / COMPETITION | UNITED STATES | SEP 03 2019

**Supreme Court rules that purchasers of apps can bring an antitrust suit against Apple for overcharges**

ANTITRUST / COMPETITION | UNITED STATES | MAY 16 2019

**Supreme Court to address cy pres only class action settlements**

ANTITRUST / COMPETITION | UNITED STATES | MAY 22 2018

**The role of comity in antitrust discovery**

ANTITRUST / COMPETITION | UNITED STATES | MAY 22 2018

In addition, Irv has written extensively in a variety of legal publication over his career, including:

- "Competition Laws Outside the United States," two-volume treatise, American Bar Association (2020), Editor-In-Chief
- "Applying Amex: When Two-Sided Platforms Become One Market," Antitrust Magazine (Fall 2018), Co-Author
- "Litigating Indirect Purchasers Claims: Lessons for the EU from the U.S. Experience," Antitrust Magazine (Fall 2017), Co-Author
- "Damage Class Actions After Comcast: A View From the Plaintiffs' Bar," Antitrust Magazine, (Spring 2016), Co-Author
- "Living with the Robinson-Patman Act, Corporate Practice Series Portfolio," Bloomberg Bureau of National Affairs (2019), Author
- "The FTC's Revised Fred Meyer Guides: Back to the Sixties," Antitrust Source (Feb. 2015), Author
- "Stepped Up Enforcement Against Inadequate Negative Option/Automatic-Renewal Disclosures," Orange County Business Journal (Nov. 17-23, 2014), Co-Author
- "Conscious Parallelism or Conspiracy," Issues in Competition Law and Policy, American Bar Association (2008), Co-Author
- "Anticipating Collateral Legal Risks Arising From FTC Enforcement Actions," Metropolitan Corporate Counsel (May 1999), Author
- "Franchising and the Robinson-Patman Act: Some Problems and Solutions," Antitrust Law Journal (1991), Author
- "Single Firm Conduct: The Government's and Antitrust Section's View," Antitrust Law Journal (1990), Author
- "The Major Antitrust Issues in the Decade Ahead," Antitrust Law Journal (1989), Author
- "How Sellers Can Live With the Robinson-Patman Act," Business Lawyer (1986), Author
- "Emerging Issues under the Antitrust Improvements Act of 1976," Columbia Law Review (1977), Author
- Author, "Opening State Courts to Class Actions: The Uniform Class Actions Act," Business Lawyer (1976)
- "New Directions in Buyer's Liability Under the Robinson-Patman Act," Antitrust Law Journal (1971), Author
- "Antitrust and Consumerism: What Is It All About?" Case Western Law Review (1970), Author
- "Manual of Federal Trade Regulations Affecting Retailers," two-volume treatise published by National Retail Merchants Association (1969), Author
- Supplement to report of Attorney General's National Committee to Study the Antitrust Laws, American Bar Association (1968), Contributing Editor

## PERSPECTIVES

**The Supreme Court appears ready to permit 100% cy pres awards in class actions under very limited circumstances**

ANTITRUST / COMPETITION | UNITED STATES | NOV 27 2018

## WHAT OTHERS SAY

**Chambers**

- Senior Statesperson, Antitrust: USA – Nationwide since 2018
- One of only two Senior Statespeople, Antitrust: Mainly Plaintiff – New York since 2018

"Irving Scher's clients benefit from his decades of experience in the antitrust space and his singular knowledge of the law. A long-time defense-side practitioner, he now provides invaluable advice in plaintiff-side multidistrict class action litigation." (Chambers US, Antitrust: Mainly Plaintiff, New York, 2020)

"Commands respect for his extensive experience litigating complex antitrust disputes for plaintiff classes and individuals." (Chambers US, Antitrust: Mainly Plaintiff, New York, 2019)

**Who's Who Legal**

"Irving Scher is a highly respected antitrust specialist and a mainstay of the North American market. He has standout experience advising clients in the airline, retail, automotive and pharmaceutical sectors." (Who's Who Legal, Competition - Plaintiff - Legal Marketplace Analysis, 2020)

**Best Lawyers**

- Best Lawyer since 2006
  - Antitrust Law
  - Litigation - Antitrust
- Lawyer of the Year in New York City, Antitrust Law in 2015

**Lawdragon**

- Leading Plaintiff Financial Lawyer since 2019

**Super Lawyers**

- Super Lawyer, Antitrust Litigation in New York since 2006

**Other**

- World's Leading Competition Lawyer: an honor he received from the *Euromoney Expert Guide* in 2008.

# Kimberly Fetsick

Associate
New York

`she / her / hers`

✉ kfetsick@hausfeld.com

📞 +1 646 647 1286

in https://www.linkedin.com/in/kimberly-fetsick-3b502670/



## EXPERIENCE

### Antitrust/Competition

- *In re Blue Cross Blue Shield Antitrust Litigation* – In one of the largest and most complex antitrust class action cases ever litigated, Kimberly is part of the team representing tens of millions of subscriber plaintiffs alleging 36 insurer defendants conspired to allocate geographic territories to ensure higher premiums. On November 30, 2020 the Court granted preliminary approval to a proposed settlement agreement.
- *In re Broiler Chicken Grower Antitrust Litigation* – Kimberly represents a class of broiler chicken growers who allege a nationwide conspiracy among the five largest vertically-integrated poultry companies to suppress and maintain compensation for growing services below competitive levels.
- *In re American Express Anti-Steering Rules Antitrust Litigation* – Kimberly is part of the case team in this multidistrict litigation consolidated in the Eastern District of New York, and represents a class of merchant plaintiffs against American Express in connection with claims that the credit card company's Anti-Steering Rules unreasonably restrain interbrand price competition among credit and charge card networks.

### Commercial & Financial Disputes

- *Boothe Farms, et. al. v. The Dow Chemical Company, et. al.* – Kimberly represents rice farmers whose crops were harmed by defendants' herbicide.
- *Universal Life Insurance Cases* – Kimberly represents life insurance policyholders in South Carolina, Tennessee, Florida, Texas, and Georgia alleging State Farm Life Insurance Company breached their contracts and charged cost of insurance rates based on impermissible factors.

### Environmental & Product Liability

- *Children v. the Climate Crisis: Chiara Sacchi et al. v. Argentina, Brazil, France, Germany, and Turkey* – In which Hausfeld and co-counsel Earthjustice represent 16 children from around the world, including Greta Thunberg and Alexandria Villaseñor, in a complaint filed before the UN Committee on the Rights of the Child alleging violations of children's rights to life, health, and culture by five members of the G20 whose failure to reduce carbon emissions is perpetuating climate change.

### Human Rights

- Kimberly is active in Hausfeld's pro bono work and has conducted research and prepared pleadings for partner NGOs on various issues including voting rights and combating violence related to hate crimes, menstrual equity, and international children's rights related to the climate crisis.

## OVERVIEW

**Experience**

Kimberly was drawn to Hausfeld because of its elite position as a litigation firm tackling complex legal issues around the world, and its longstanding commitment to the public good. Kimberly's work spans multiple practice areas, including antitrust litigation, deceptive business practices and consumer protection, environmental threats, and civil and human rights. Kimberly's experience working for clients facing various legal challenges has allowed her to pursue creative and successful litigation strategies on their behalf.

Prior to joining Hausfeld, Kimberly clerked for Chief Justice F. Michael Kruse of the High Court of American Samoa and Chief Judge Julie Manning of the United States Bankruptcy Court for the District of Connecticut. Through her respective clerkships, Kimberly gained experience in trial and appellate civil and criminal cases and bankruptcy cases, working on a wide variety of legal issues.

**Clients**

Kimberly's clients include a class of subscribers to Blue Cross Blue Shield health insurance, broiler chicken growers, rice farmers, a class of merchant plaintiffs bringing an action against American Express, and a group of 16 child climate activists from over 10 different countries bringing a petition to the United Nations Committee on the Rights of the Child.

## EDUCATION

King's College London, Dickson Poon School of Law, Master of Laws in Transnational Law (LL.M.), *graduated with Merit*, 2017

Georgetown University Law Center, J.D., 2015

University of Pittsburgh, B.A., *summa cum laude*, 2011

## BAR ADMISSIONS

New York

United States District Court for the Eastern District of New York

United States Court of Appeals for the Second Circuit

## AFFILIATIONS

Member, New York State Bar Association

Member, American Bar Association

Articles Editor, Georgetown Journal of International Law (2014-2015)

## NEWS

**Hausfeld nominated for 'Litigation of the Year' and 'Litigator of the Year' by GCR Awards 2021**

ANTITRUST / COMPETITION  /  UNITED STATES  /  FEB 18 2021

**Children urge Norway to block Arctic oil and gas drilling to protect their rights to life and health**

ENVIRONMENTAL & PRODUCT LIABILITY  /  HUMAN RIGHTS  /
UNITED STATES, FRANCE, GERMANY, UNITED KINGDOM, NETHERLANDS, SWEDEN, BELGIUM  /
MAY 13 2020

**The 16 Committee on the Rights of the Child petitioners, including Greta Thunberg and Ridhima Pandey, applaud Dutch Supreme Court ruling in Urgenda**

HUMAN RIGHTS  /  ENVIRONMENTAL & PRODUCT LIABILITY  /
UNITED STATES, FRANCE, GERMANY, UNITED KINGDOM, NETHERLANDS, SWEDEN, BELGIUM  /
DEC 20 2019

**16 young people file UN human rights complaint on climate change**

ENVIRONMENTAL & PRODUCT LIABILITY  /  HUMAN RIGHTS  /
UNITED STATES, FRANCE, GERMANY, UNITED KINGDOM, NETHERLANDS, SWEDEN, BELGIUM  /
SEP 23 2019

## PUBLICATIONS

- "Left Behind: How Statelessness in the Dominican Republic Limits Children's Access to Education," Georgetown Law Human Rights Institute (2014), Co-Author

## WHAT OTHERS SAY

- Certificate of Appreciation for Outstanding Student Research: an honor she received from The First Global Forum on Statelessness in 2014.

# EXHIBIT C

**Paul | Weiss**

# Firm Overview

Paul, Weiss, Rifkind, Wharton & Garrison LLP is a firm of more than 1,000 lawyers with diverse backgrounds, personalities, ideas and interests who provide innovative and effective solutions to our clients' most complex legal and business challenges. The firm represents some of the world's largest publicly and privately held corporations, financial institutions and asset managers, and clients needing pro bono assistance.

Paul, Weiss is widely recognized as having market-leading practices in public M&A, private equity, litigation, white-collar & regulatory defense, and restructuring, along with equally strong practices in executive compensation, intellectual property, personal representation, real estate and tax law.



# Litigation

The Paul, Weiss Litigation Department has long been the first choice of clients around the world for their most challenging and important disputes. We handle cases that have the greatest impact and have achieved remarkable results for our clients, whether in the courtroom, in arbitration or via creative out-of-court resolutions.

### Track Record of Success

No other law firm in the world can approach our experience and record of success in the most complex, high-stakes litigation matters across numerous practice areas. Our team includes many of the country's most accomplished trial lawyers and former senior government officials, and is uniquely positioned to handle sprawling government enforcement actions and parallel private litigation. We are regularly entrusted with fast-moving, franchise-threatening matters because of our ability to develop and execute a winning strategy, no matter the problem or adversary, and to see the matter through to the ultimate resolution, whether at trial or before the Supreme Court.

### We Try Cases

We are known first and foremost as trial lawyers, with the experience and confidence to take cases all the way—especially when the stakes are the greatest. We regularly go up against the most skilled adversaries, winning landmark cases all over the country, handling arbitrations here and abroad, and achieving appellate victories.

### Strategic Approach

We do not merely represent clients in the matter at hand; rather, we carefully balance and weigh our clients' business position, risk and exposure and work with them to develop each case as a part of a comprehensive approach to their business goals. We are sought out for our sound business counsel and comprehensive strategic advice on managing litigation risk and handling high-stakes litigation. Our approach is resolutely forward-looking; we assess options and manage risks from the moment we are retained.

### Broad Capabilities

Our lawyers have handled countless complex competitor and class action disputes across a wide range of areas of potential importance. These include, but are not limited to appeals; data privacy; consumer protection; government enforcement; securities; M&A disputes; employment-related disputes; and contact disputes. We can guide on:

- breach of contract disputes
- consumer fraud & false advertising actions
- unfair competition litigation
- data privacy and security class actions and disputes
- trade secrets and noncompetition disputes
- product liability and mass torts litigation
- IP litigation (including patent, copyright and trademark)
- appellate litigation

- Anti-Kickback Statute lawsuits
- securities fraud and shareholder derivative suits in both state and federal courts
- government enforcement actions
- State AG lawsuits
- ERISA, pension & benefits litigations
- wage and hour litigations
- workplace culture litigations
- actions under the RICO Act
- M&A litigation

# Anti-Corruption & FCPA

Our attorneys represent clients in some of the largest and most complex FCPA matters, including a multitude of DOJ and SEC investigations and numerous internal investigations relating to business practices around the globe, including in places such as China and India.

### Practitioners with Insider Insights

Our top-tier practitioners include former prosecutors and enforcement agency attorneys, most notably the former U.S. Attorney General and the former deputy chief of the Fraud Section of the Criminal Division of the DOJ, who developed and ran the DOJ's modern FCPA enforcement program. Paul, Weiss's team also includes nationally recognized trial lawyers and well-respected former officials and attorneys from various government branches.

### Investigations and Enforcement Proceedings

Our team can assist in internal investigations around the world and across virtually all industries, often avoiding full-scale regulatory enforcement action. We regularly represent clients in enforcement proceedings and investigations before foreign regulatory and enforcement agencies, such as the U.K. Serious Fraud Office, in conjunction with our legal partners around the globe.

### Compliance and Due Diligence

Our experience as compliance advisors can enable our clients to stay ahead of the enforcement curve. We have performed hundreds of transactional due diligence and risk assessments related to anti-corruption compliance; we can design and assess compliance programs, policies and procedures and conduct employee and board training. We can also help evaluate the adequacy of business partner and third-party due diligence, structure joint venture compliance and mitigate risk in high-risk businesses and geographical locations our clients might seek to enter.

# Antitrust – Merger Clearance

With a deep bench of former antitrust enforcement officials, our powerhouse team is equipped to assist in its most sensitive and highest-profile transactions. Our antitrust group has played leading roles in obtaining clearance for high-profile mergers for decades, including the most contested.

### Insider Insights

Our clearance team includes prominent former Federal Trade Commission and senior Department of Justice officials. They can bring unparalleled insight on the shifting regulatory and law enforcement priorities in the antitrust area; familiarity with career antitrust personnel; and a detailed, practical understanding of internal clearance processes and emerging practices.

### Full Spectrum of Transaction-Related Advice

We can help in on mitigating antitrust risk; managing invasive second requests and negotiating regulatory settlements. We can also defend transactions in court, where we have a stellar track record of wins in contested situations. We can also advise on comprehensive strategies when the company's interests are implicated in another merger in the industry, as we have frequently done for other major clients.

Our clearance team also includes a cadre of specialists with the expertise on merger filing obligations not only in the U.S. under the Hart-Scott-Rodino Act and regulations, but also in jurisdictions across the globe.

# Antitrust Litigation

As public scrutiny over alleged anticompetitive business practices grow, our uniquely capable antitrust practice fuses technical legal analysis, public policy advocacy and a commercial, strategic approach. We have the confidence, courtroom skill and experience to handle the most complex, highest-stakes government and private antitrust matters, including cases of first impression and litigation involving emerging regulation.

### Deeply Experienced Team
Our team includes prominent former officials at the Federal Trade Commission and Department of Justice including a former Acting Assistant Attorney General who also served as the Principal Deputy Assistant Attorney General of the Antitrust Division of the Department of Justice, as well as one of the nation's foremost antitrust law professors and a former Chief of the DOJ.

### Litigation and Trials
We handle high-stakes litigation across all areas of antitrust and competition including lawsuits involving challenges to mergers; allegations of monopolization, price fixing, predatory pricing, bid rigging, and exclusive dealing; and claims pertaining to resale price maintenance and trade secrets. We regularly try cases before juries and judges across the United States, producing successful results, including landmark appellate decisions. Our collective antitrust trial experience cannot be matched.

# Crisis Management

Paul, Weiss can assist in resolving crisis situations quickly, effectively and holistically. In handling constellations of legal, reputational and business challenges, we offer a coordinated approach and practical, commercial guidance that minimizes legal, financial and reputational risks.

### Significant Representations
Our team has safely guided some of the most significant U.S. and non-U.S. public and privately held companies, financial institutions and asset management firms, boards and management teams through all manner of crises. In recent months, we have advised clients on matters of the most urgent national importance, debate and controversy. In fact, *Chambers USA* recently spotlighted two of Paul, Weiss partners as well as our Chairman as preeminent crisis managers nationally—three of only six so highlighted.

### Broad Expertise
In situations that are already public, we leverage experience with the press and before Congress, Inspectors General and multiple law enforcement and regulatory agencies. We also frequently lead fast-moving and sensitive internal investigations, enabling clients to take informed action to mitigate fallout. We can help with:

- unfavorable media exposure or commentary
- product recalls
- crises related to environmental, social and governance issues
- catastrophic litigation outcomes
- attacks by activist shareholders
- government investigations and congressional inquiries
- preparing executives for public testimony
- abrupt changes in senior management
- sensitive cyber and data privacy incidents
- whistleblower allegations
- adverse financial reports and accounting problems
- alleged employee or management misconduct or criminal matters

# Data Innovation, Privacy & Cybersecurity

Our Data Innovation, Privacy & Cybersecurity team helps identify and mitigate existing and emerging legal risks surrounding privacy regulation, cybersecurity, consumer protection, antitrust and related areas. We can leverage our team's deep experience and knowledge in the area to provide compliance and diligence solutions that minimize risk and to mitigate data-related crises when they occur.

### Expansive Capabilities

Our team guides boards and senior executives, helping them understand fast-changing regulations, regulatory expectations, disclosure obligations and industry standards; develop compliance frameworks to identify and address data collection, sharing, use and retention practices that may give rise to privacy, consumer protection or other regulatory risks; analyze proposed products, practices and business models; craft cybersecurity policies and procedures tailored to the external and internal risks of the company; and implement crisis management and disaster recovery plans.

### Crisis Management

Victims of significant data security incidents—or of accusations of widespread misuse of consumer data—can encounter a barrage of challenges, including media scrutiny and reputational damage, federal and state regulatory investigations, and class action and other complex commercial litigation. We offer a well-rounded crisis response team, leveraging our preeminent litigation and white collar and regulatory defense practices.

### High-Level Government Experience

The team includes a former Secretary for the U.S. Department of Homeland Security; a former member of the Special Counsel's Office, who led the team investigating Russian cyber, social media and intelligence efforts to influence the 2016 presidential election; a former Treasury Department deputy general counsel with responsibility for data protection and cybersecurity matters affecting the financial sector; and a former Assistant U.S. Attorney in the Southern District of New York who served as Chief of the Complex Frauds and Cybercrime Unit, among others.

### FTC Experience

We can assist in all aspects of FTC investigations, including consumer protection and competition, data protection, privacy, advertising practices and antitrust. We have experience with the consumer financial regulations, such as TILA, FCRA and the FDCPA, as to which the FTC and the CFPB generally share concurrent authority. Most of our matters are confidential and end with no action by the Commission.

# General Commercial Litigation (Including Trials)

With our deep bench of trial-tested lawyers in New York, San Francisco and Washington, D.C., and experience helping the world's most important companies safely navigate their most complex, high-value disputes, Paul, Weiss is perfectly positioned to help develop and execute winning litigation strategies across a spectrum of this litigation.

**Broad Expertise**

Our lawyers have handled countless complex competitor and class action disputes across a wide range of areas of potential importance. These include, but are not limited to antitrust; data privacy; consumer protection; securities; M&A disputes; and contract disputes. We can guide on:

- breach of contract disputes
- unfair competition litigation (including under the California UCL)
- data privacy and security class actions and disputes (including issues related to the CCPA, GDPR and Section 230)
- trade secrets & noncompetition disputes
- IP litigation (including patent, copyright and trademark)
- securities fraud and shareholder derivative suits in both state and federal courts
- platform integrity disputes
- State AG lawsuits
- wage and hour litigations
- workplace culture litigations
- actions under the RICO Act
- merger disputes

# Patent and IP Litigation

Our patent litigators advise world-class, industry-leading companies, helping them tackle novel, complex issues that push the boundaries of technological progress and achievement. Our deep bench of experienced trial lawyers work alongside our IP transactional lawyers representing companies from around the globe in their most significant, high-value matters, helping them protect their intellectual property. Our lawyers pair extensive experience in the courtroom and the boardroom with a thorough understanding of science and technology.

**Trial-Tested Lawyers**

Our patent group has tried jury and bench trials in courts across the country, contested proceedings in the U.S. Patent and Trademark Office, and Section 337 patent infringement litigations; we routinely handle Federal Circuit appeals. We have also been counsel of record in more than 180 Patent Trial and Appeal Board (PTAB) proceedings, with more than 60 argued through final hearing, and are widely recognized as thought leaders in the forum.

### Copyright Protection

We offer substantial, cutting-edge experience in a spectrum of copyright cases, including royalty rate-setting proceedings, copyright class actions and digital media copyright controversies. Clients rely on us to protect a wide variety of copyrighted content, including film, music, broadcasting, publishing, software, fine art and digital media.

### Non-Competition and Trade Secrets

Some of our clients greatest assets are its talented people. When a departure poses a threat to our client's business, Paul, Weiss can help. We have among the preeminent and most successful practices in the noncompetition and trade secrets area. In recent years, we have handled more than 50 non-competition, non-solicitation and trade secrets disputes on behalf of some of the most prominent companies in the world.

### Trademarks, Trade Dress and Unfair Competition

Our clients developing product lines may be subject to trademark, trade dress and unfair competition claims. We have successfully litigated numerous such disputes on behalf of major consumer product, fashion and entertainment companies.

### Transactional IP and Licensing Expertise

Our versatile and experienced group understands the interplay of business objectives, practical pressures and timing and possesses the technical and legal expertise in IP law to help our clients develop, acquire and license all types of IP asset classes.

# Securities Litigation

Paul, Weiss has played a leading defensive role in nearly every high-profile securities matter of the modern era. In each instance, we have helped our clients respond to the fallout, mitigate crises and successfully resolve public and private litigations and government investigations. We bring our collective wisdom to each and every representation. Our clients would benefit from our experience handling virtually every kind of securities-related challenge, including shareholder derivative suits, class actions, complex parallel proceedings and opt-out claims.

### An Unparalleled Reputation

Paul, Weiss is widely recognized as having the nation's preeminent securities litigation and regulatory practices. For decades, our lawyers have guided global corporations and financial institutions through a series of "bet-the-company" securities-related crises, consistently reducing or eliminating their most damaging claims and negotiating favorable resolutions.

### Deep Capabilities

Our clients benefit from our deep experience at all stages of the litigation process, including motions to dismiss, class certification, summary judgment, settlements, trials and appeals, as well as before domestic and international investment arbitration bodies. We defend clients in lawsuits arising under federal and state securities laws, as well as litigating securities-related issues arising under other statutory schemes, including ERISA and the U.S. Bankruptcy Code. The team has vast experience before all of the regulatory agencies and entities that clients are likely to face, including the SEC, U.S. Congress, and various state Attorney General offices. Clients also frequently look to us to conduct sensitive internal investigations into issues from alleged accounting irregularities and deficiencies in internal controls, to tax reporting and related-party transactions, to suspicious trading activities and misappropriation of assets.

**A Record of Trial and Appellate Success**

Our practice is differentiated because not only do we have unparalleled subject matter expertise, but we try cases, including securities cases, and win them. Our team includes litigators who are widely recognized as some of the finest trial lawyers in the country. Clients and adversaries know that we are prepared to take cases to trial and that we know how to win, which gives us a tremendous advantage both in the courtroom and at the settlement table. In fact, we have successfully taken numerous multi-billion dollar cases to verdict in recent years, collectively reducing our clients' liability by scores of billions of dollars. Because of our record of achievement, we are often pulled into litigation after a class has been certified and a matter is headed for trial.

**Strategic Approach to Cases**

At the outset of each new matter, we engage in comprehensive strategic planning with our clients to manage their risk and exposure and to tailor our strategy to the matter's unique facts, drawing on our institutional knowledge of the securities laws and precedent. Because we leverage our past work so efficiently, we are a highly cost-effective choice of counsel for our clients.

# Supreme Court & Appellate Litigation

Paul, Weiss's Supreme Court and Appellate Litigation Practice is led by Kannon Shanmugam, a former Assistant to the Solicitor General who has argued 31 cases before the Supreme Court and who is widely regarded as one of the nation's leading appellate advocates.

We also have an unrivaled track record in appellate courts where the most significant business cases are litigated, such as the U.S. Courts of Appeals for the Federal Circuit and the Second Circuit, the Appellate Division of the New York Supreme Court, and the Delaware Supreme Court, and in the Ninth Circuit, where disputes involving technology companies are litigated. We have successfully handled appeals involving administrative, antitrust, class action, criminal, ERISA, mergers and acquisitions, patent, product liability and securities laws. Currently, our ranks include several former Supreme Court clerks and more than 70 former clerks from federal courts of appeals.

# Sustainability & Environmental, Social and Governance (ESG) Advisory

Companies are increasingly facing pressure to strengthen their organizations' resilience while simultaneously addressing social and environmental issues of importance to customers, investors and other stakeholders. With our deep understanding of ESG regulatory requirements, market trends and industry best practices, Paul, Weiss is uniquely positioned to help develop and implement ESG initatives and protect against legal and reputational risks.

## Expertise

Paul, Weiss's Sustainability and Environmental, Social & Governance (ESG) Advisory Practice actively monitors both domestic and international ESG-related regulatory developments in order to advise clients on responsive strategies and operations. We employ rigorous quantitative analysis and sophisticated advocacy to help our clients navigate the obscure and subjective ESG ratings and disclosure landscape. Our rigorous ESG due diligence approach expands beyond the traditional scope of datarooms to quality-check and benchmark ESG data to better identify risks and opportunities. Our leading investigation and crisis management practice goes beyond the triggering event to proactively identify the wide range of possible ESG issues that may arise.

## Breadth of Services

We work in tandem with the firm's world-class practice groups to counsel public companies, executives and boards in order to meet the entire breadth of their needs in the ESG ecosystem, including:

– Reviews of publicly available statements and assessments of consistency with internal policies and practices

– Reviews of codes of ethics, codes of conduct, and other corporate policies to identify risks and opportunities

– Performance and disclosure benchmarking against ESG standards and industry peers

– Integration of ESG polices, practices and reporting into corporate governance structure

– Development of ESG programs and strategies to address emerging legal and reputational risks

– Tabletop exercises to pressure test ESG resiliency and preparedness

– Evaluation of ESG liabilities and vulnerabilities in the M&A context

– Pre-litigation/pre-crisis investigations (e.g. in response to notice letters)

– Drafting of ESG reports and disclosures with appropriate disclaimers that create ESG opportunities and minimize litigation and reputational risks

– Crafting of internal and external communications to stay ahead of potential PR pitfalls

– Training internal and external company stakeholders on ESG regulations, trends, best practices, and business implications

## Dedicated Team of ESG-Focused Specialists

Our unique and sophisticated team of high-quality ESG-focused lawyers, data scientists and program managers has experience implementing, expanding and formalizing ESG initiatives across industries and functions. Our culture ensures unparalleled collaboration, teamwork and client service.

## ESG Market and Regulatory Intelligence

We advise industry leaders in the marketplace. Our clients benefit from our broad network of diverse relationships and ESG market intelligence, which provides unrivaled data about evolving trends and market dynamics. We are in regular discussions with the leadership of ratings agencies, trade associations and standards organizations for deeper understanding of their frameworks and strategic imperatives. We actively engage with regulators to help inform and shape the ESG regulatory landscape.

**Paul|Weiss**



**WILLIAM A. ISAACSON**
Partner
Tel:  +1-202-223-7313
Fax: +1-202-379-4937
wisaacson@paulweiss.com

**Washington, DC**
2001 K Street, NW
Washington, DC 20006-1047

**PRACTICES**

Litigation

Antitrust

International Arbitration

**EDUCATION**

J.D., University of Virginia
School of Law
*Margaret G. Hyde Award;
Order of the Coif*

B.A., University of Redlands

**CLERKSHIP**

Hon. Harrison L. Winter,
U.S. Court of Appeals: Fourth
Circuit

Bill Isaacson, a partner in the Litigation Department, is widely considered one of the most preeminent litigators of his generation. A Fellow of the American College of Trial Lawyers, Bill was named a "Litigator of the Year" in 2016 and a "Litigator of the Week" three times by *The American Lawyer*. Chambers has called Bill a "celebrated trial lawyer" who is "highly recommended for his work in complex class actions."

Bill has successfully represented both plaintiffs and defendants in major antitrust litigations; of the approximately dozen federal antitrust class actions that have gone to trial and judgment in this century, he has tried five of them, winning verdicts in each case. *Global Competition Review* has noted that "arguably no antitrust lawyer in recent memory has had as much success for both plaintiffs and defendants as Bill Isaacson." *Lawdragon* writes that it is "nearly impossible to find a more reliable antitrust litigator than Isaacson, who has successfully handled several of the most high-profile cases in the past two decades."

**EXPERIENCE**

Bill's achievements include:

- winning a defense jury verdict as trial counsel for a leading technology company in the portable music industry in a high-profile antitrust class action seeking $1 billion;

- winning a $50 million verdict—later increased to $124 million in a judgment—as trial counsel in a three-and-a-half week jury trial in the District of Nevada for plaintiff Oracle against Rimini Street for copyright infringement;

- obtaining a historic judgment for college athletes in *O'Bannon* v. *NCAA* finding the NCAA in violation of the antitrust laws and ordering injunctive relief for NCAA athletes permitting the sharing of name, image and likeness monies. The *Wall Street Journal* wrote that Isaacson's cross-examination of the President of the NCAA "laid

Paul|Weiss

out, one by one" the "deeply embedded contradictions and occasional bits of outright absurdity" of the NCAA positions;

- representing the Ultimate Fighting Championship in defense of an antitrust class action being pursued by a group of mixed martial artists;

- winning a $162 million judgment, and $33 million for settling defendants, as trial counsel in the first antitrust action against Chinese companies for cartel conduct relating to products sold in the United States;

- achieving $220 million and $430 million in settlements, respectively, as co-lead counsel in antitrust class actions, *In re: Municipal Derivatives Antitrust Litigation* and *In re: Polyurethane Foam Antitrust Litigation*;

- winning summary judgment reversing a tentative decision for the defendant as counsel to plaintiff, comedian Garry Shandling, against Shandling's former manager for breach of fiduciary duty, prompting *Variety* to declare that "Shandling Claims Get New Life in a Stunning Reversal";

- winning a $261 million judgment, affirmed on appeal, in proceedings in the Southern District of Texas and the Fifth Circuit Court of Appeals to enforce an international arbitration award under the New York Convention;

- winning a $148.5 million jury verdict in an international price-fixing conspiracy and market-allocation case, *Animal Science Products* v. *Mitsui & Co.*, in federal court in Washington, D.C.;

- winning a $34.5 million jury verdict in an antitrust case, *In re Scrap Metal Antitrust Litigation*.

## AWARDS & RECOGNITIONS

Bill has achieved numerous industry awards over the years. Bill is among only 31 lawyers to be named in the *Lawdragon 500* each of the last 10 years; *Law360* has twice named Bill a "Competition MVP" and also has named him as a "Titan of the Plaintiff Bar." *Global Competition Review* has named him a "Litigator of the Week." He is also recognized by *The Legal 500* as a "Hall of Fame Lawyer" in the Antitrust: Civil Litigation/Class Actions: Plaintiff category, a "Leading Lawyer" in the Trial Lawyers category, and is recommended in the Antitrust: Civil Litigation/Class Actions: Defense category. In college, he was a finalist at the 1982 National Debate Tournament.

Bill has spoken and presented regularly at legal conferences, including NYU Law School's conference on Antitrust and 21st Century Bigness, the ABA's American Judicial Law Institute for Antitrust (sponsored by University of California at Berkeley and the University of Chicago), the American Antitrust Institute, the Sedona Conference, and MLEX Advisory Board, as well as conducted mock trials for the Spring and Fall ABA Antitrust Conferences and the ABA Economics Institute for Judges at George Mason University.

Paul│Weiss

Bill is a member and former Chair of the Board for Legal Counsel for the Elderly. In 2015, the group recognized him with its individual Award for Sustained Excellence and Outstanding Commitment. His pro bono work was featured in articles in the Washington Post in 2010 and 2017.

# EXHIBIT D

# About Zuckerman Spaeder LLP

*"high-performance litigation"*

*-The Washington Post*

Zuckerman Spaeder enjoys a reputation as one of the nation's premier litigation firms, comprised of 80-plus attorneys in four offices stretching from New York to Florida. We have earned this reputation by successfully managing high stakes litigation disputes for over four decades. We are known for our trial skill and for our ability to work effectively outside the courtroom to advance our clients' positions with prosecutors, regulators, and opposing counsel. Our lawyers routinely handle high-profile cases in class actions, white-collar defense, government investigations, complex commercial disputes, health care litigation, professional ethics disputes, and a range of other matters. We pursue cutting edge legal theories and find creative solutions to complex legal problems. When the stakes are highest, clients count on Zuckerman Spaeder.

*"At the forefront of some of the most important legal battles of the day"*

*-The National Law Journal*

## Trial-ready advocates

At our core, we are a tight-knit partnership of inspired and experienced trial lawyers. We regularly try cases throughout the country in matters that capture headlines, change industries, and advance the cause of justice for our individual clients. Year after year, more partners at our boutique firm receive national and local recognition for our legal work than law firms many times our size. Over a third of our lawyers have served in government positions as prosecutors, public defenders, regulators or government officials presiding over important policy issues, which gives us valuable insight and experience in trial tactics, criminal investigations, and regulatory matters.

## Recent Recognitions

- 2021 Best Law Firms, *U.S. News & World Report*
- 2021 *The Best Lawyers in America*
- 2020 D.C. Litigation Department of the Year, *The National Law Journal*
- 2020 Benefits Group of the Year, *Law360*

---



- 2020 Health Group of the Year, *Law360*
- 2020 White Collar Group of the Year, *Law360*
- 2020 *Chambers USA: America's Leading Lawyers for Business*



# Cy Smith
Partner



Cy Smith has three decades of trial experience and is a Fellow of the American College of Trial Lawyers. He primarily represents plaintiffs and defendants in large, complex civil litigation in diverse industries such as financial services and healthcare. In 2017, The National Law Journal recognized Cy as a "trailblazer," and more recently, the Delaware Court of Chancery called his work "an exemplar of exactly how entrepreneurial plaintiffs' contingent fee litigation ought to work," adding that his representation should be used to "instruct law students" on how to practice.

In 2020 and 2021, *The New York Times* and ABC covered Cy's representation of Black former NFL players who contend that payments under the national class action concussion settlement have been systematically tilted against Black players, using evaluations that discriminate expressly on the basis of race.

Cy's work for football retirees began in 2005 when he helped the family of the late Pittsburgh Steelers great Mike Webster win a multimillion-dollar judgment in retroactive benefits and other relief from the Bert Bell/Pete Rozelle NFL Player Retirement Plan.

The case was the first-ever win against the NFL pension plans, and paved the way for today's public, litigation, and legislative scrutiny of pro and amateur sports' concussion crisis. Cy testified before the U.S. House Judiciary Committee and has appeared in diverse media to discuss pro football and concussions.

As examples of Cy's diverse practice, he currently represents a state university system as a defendant in a decade-long dispute related to the state's historically black colleges, resulting in a seven-week trial addressing a proposal for a multi-billion-dollar restructuring of that system. He simultaneously has served as court-appointed lead counsel, class counsel, or steering committee member in a wide variety of plaintiffs'-side class action and derivative proceedings.

In other high-stakes cases, Cy represented the son of real estate mogul and corporate raider Victor Posner in a multimillion-dollar settlement in one of the largest will contests in U.S. history. More

**Baltimore**
410.949.1145
410.659.0436 (fax)
**csmith@zuckerman.com**

**Practice Focus**
Business Litigation
White Collar Defense
Employment Law and Litigation
False Claims Act
Investigations
Legal Profession & Ethics
Plaintiffs & Class Action Litigation
Securities & Commodities

**Education**
University of Virginia School of Law, J.D., 1986
- Robert E. Goldstein Award

Dartmouth College, B.A., 1981
- Sigurd Larmon Scholar
- Rufus Choate Scholar
- Longwood Cup
- Brooks Cup
- Chase Peace Prize
- Ranked first nationally for intercollegiate debate, 1980-1981

**Languages**
French



ZUCKERMAN
SPAEDER

recently, Cy represented an accountant in the Manila office of a global construction firm, who was kidnapped and tortured after the employer refused either to pay his ransom or permit his family to do so.

Outside the office, Cy is active in community affairs.  2019 marked the completion under his leadership of a $13 million capital campaign for Beth Am Synagogue, located in Baltimore's historic Reservoir Hill neighborhood, where Cy earlier served as President.  That campaign, Beth Am's first, secured a multi-million-dollar endowment for the congregation and funded a complete renovation of the synagogue's century-old structure.

## Professional Leadership

- Fellow, American College of Trial Lawyers, 2017-present
- Member and President (2006-2007), Board of Governors, Federal Bar Association, Maryland Chapter
- Member, Criminal Justice Act Panel, U.S. District Court, District of Maryland, 1991-2008

## Community Involvement

- President (2011-2013) and Member (2005-2020), Board of Trustees, Beth Am Synagogue; Co-Chair, Capital Campaign, 2013-2020
- Member and Vice Chair, Board of Directors, Baltimore Urban Debate League, 2004-2011
- Member and Chairman (2003-2004), Lawyers' Campaign for the College Bound Foundation
- President, Gil Sandler Fund, Inc., 2008-present

## Bar Admissions

- Maryland
- District of Columbia

## Court Admissions

- U.S. Supreme Court
- U.S. Court of Appeals, Fourth Circuit
- U.S. Court of Appeals, Fifth Circuit
- U.S. Court of Appeals, Ninth Circuit
- U.S. District Court, District of Maryland
- U.S. District Court, District of Columbia
- U.S. District Court, Eastern District of Virginia



ZUCKERMAN
SPAEDER

- U.S. District Court, Western District of Virginia

**Representative Matters**

- Represented a class of investors suing their Delaware LLC's managers for breach of fiduciary duty after the managers sold the LLC's assets (consisting of "viaticated" life insurance policies) to themselves for a fraction of their value.  The Delaware Chancery Court called the multi-million-dollar settlement "an exemplar" of effective litigation for Cy's clients.

- Represented shareholders suing derivatively on behalf of Sinclair Broadcasting Group, who allege that the controlling shareholders in this public company engaged in sweetheart deals which doomed Sinclair's proposed merger with Tribune Broadcasting.  The court-approved settlement captured nearly $25 million for Sinclair and its shareholders – almost $5 million from a Sinclair insider – and enacted far-reaching changes in the company's corporate governance.

- Represented a class of nursing home residents challenging Maryland's refusal to provide deductions for Medicaid recipients' pre-eligibility medical expenses for long-term care. The settlement—one of the two largest settlements or judgments ever against the state of Maryland—paid up to $16 million for the benefit of the class and bring the state into compliance with federal law.

- Represented a class of consumer borrowers alleging that their title insurance transactions were steered by kickbacks paid by a national title insurer in violation of the federal RESPA statute. After ten years of litigation – including three denials of class cert., two trips to the Ninth Circuit, and one near-death experience in the Supreme Court – Cy forged a settlement in which the title insurer consented to an injunction forbidding the payment of the challenged kickbacks, and gave certified class members twice what they had paid the defendant for title insurance.

- Represented the estate of ex-Pittsburgh Steelers great Mike Webster in the first-ever win against the National Football League's (NFL's) pension plan, proving that Mike had been crippled by multiple concussions from his NFL career. His win led to testimony before Congress and paved the way for today's media, public, legislative and litigation scrutiny of pro football's concussion crisis.

- Represented an accountant who was kidnapped, tortured, and held for ransom in the Philippines; his employer had refused both to pay the ransom demanded and to tell his family so that they could secure his release. The case settled on confidential terms after we won back-to-back victories in the U.S. Court of Appeals for the District of Columbia Circuit—and unearthed a video of our client's imprisonment and torture.

- Served as counsel for the shareholder plaintiff in a case against the directors, senior officers, and accountants of a bank, resulting in a $10 million-plus settlement because of the bank's enormous losses from unsecured loans to an unscrupulous mobile-home retailer.

- Represented plaintiffs who won enforcement of a highly favorable pension plan amendment, defeating claims that it was the product of a federal labor racketeering conspiracy and resulting in one of the largest ERISA judgments ever in the U.S. Court of Appeals for the Fourth Circuit.



**Recognitions**

- *Chambers USA: America's Leading Lawyers for Business*, Litigation: General Commercial (Maryland)
- 2017 "Trailblazer," *The National Law Journal*
- 2009 Leadership in Law Award, *The Daily Record*
- AV® Peer Review Rated, Martindale-Hubbell
- *Benchmark Litigation*, Local Litigation Star (Maryland)
- *The Best Lawyers in America*, Commercial Litigation, Health Care Law, Legal Malpractice Law—Plaintiffs, ERISA Litigation
- *Super Lawyers* (Maryland), 2007; 2010-present



# EXHIBIT E

# Cooper & Kirk

Lawyers

A Professional Limited Liability Company

1523 New Hampshire Avenue, N.W.

Washington, D.C.  20036

Telephone (202) 220-9600—Facsimile (202) 220-9601

Cooper & Kirk, PLLC is a litigation boutique specializing in complex commercial, regulatory, and constitutional disputes in both federal and state courts. Since its founding almost 25 years ago, Cooper & Kirk has successfully represented major American corporations and government bodies in many of the most significant trials and appeals in the country, often against the nation's largest and most sophisticated law firms. The firm's partners have also represented many well-known public figures in a variety of disputes and controversies, including two former United States Attorneys General, five United States Senators, and a former National Security Advisor to the President. Prior to the firm's founding, several of the firm's partners worked together at a major D.C. law firm where they also had significant trial and appellate experience. With extensive experience and expertise in constitutional, commercial, antitrust, administrative, and intellectual property law, the firm is thus uniquely suited to represent clients in complex, high-stakes litigation.

The key to our success is our people. Five of our 18 attorneys (and several more of our recent alumni) have clerked for Justices of the United States Supreme Court, and three of our associates will be clerking for Supreme Court Justices next term. Fifteen of our lawyers have clerked for Judges of the federal courts of appeals. Many of the firm's former members have gone on to distinguished careers in public service, and include two United States Senators, two federal court judges, two Associate Attorneys General of the United States, and a Solicitor General of the United States.

A number of our attorneys also have experience serving in senior federal and state government positions. The firm's chairman, Charles J. Cooper, served in the Department of Justice, both as the Assistant Attorney General for the Office of Legal Counsel during the Reagan Administration (1985–1988) and as the Principal Deputy Assistant Attorney General in the Civil Rights Division (1981–1985). Mr. Cooper has consistently been named one of Washington's most prominent litigators by a variety of publications and organizations. One of our partners, Adam P. Laxalt, recently served as Attorney General of the State of Nevada. Another, Peter A. Patterson, joined the firm after serving in the White House Counsel's Office as Associate Counsel to the President.

As the engagements listed below reflect, the firm has successfully litigated nationally prominent cases that touch on a broad array of subject matters and raise a wide range of legal issues. We first briefly describe our experience in the fields most directly relevant to the BCBS litigation—antitrust and class actions—and then list a sampling of our more notable litigation successes.

Cooper & Kirk

# ANTITRUST

Cooper & Kirk has an active antitrust practice. In addition to the *BCBS Antitrust Litigation*, representative engagements include:

- ### *The State of Texas et al. v. Google, LLC* (E.D. Tex. 2020).

  We represent the State of Montana in this action against Google for its monopolization of the online advertising technology marketplace.

- ### *Novell, Inc. v. Microsoft Corporation* (4th Cir. 2011).

  We represented Novell in a multi-billion dollar antitrust lawsuit against Microsoft. Novell alleged that Microsoft had engaged in anticompetitive behavior which prevented its WordPerfect and Quattro Pro software from being compatible with Windows 95 and thus inflicted billions of dollars of harm on Novell. We appealed the district court's dismissal of the suit, and the Fourth Circuit reversed.

- ### *Spectrum Stores, Inc. v. Citgo Petroleum Corporation* (5th Cir. 2011).

  We represented United States gasoline retailers in a suit against Venezuela's subsidiaries alleging that they conspired with Organization of Petroleum Exporting Countries (OPEC) member nations to fix prices of crude oil and refined petroleum products in the United States.

- ### *Jung v. Association of American College of Medicine* (D.C. Cir. 2004).

  We represented a putative nationwide class of medical residents who sued their employers for setting salaries at below market wages. The district court agreed that the National Residency Match Program, which assigns residents to a specific hospital, violated the Sherman Act. Congress then amended the antitrust laws and sanctioned the Match Program. The district court did not allow plaintiffs to amend the complaint to press price fixing claims.

- ### *F. Hoffman-LaRoche, Ltd. v. Empagran S.A.* (U.S. Sup. Ct. 2004).

  We filed an amicus brief in support of foreign victims of a cartel of vitamin producers. Our brief demonstrated that the exercise of American jurisdiction over such a controversy was fully consistent with the Department of Justice's historical position on this issue.

- ### Advisory Practice.

  We have been retained to provide in-depth analysis of potential antitrust liability in a variety of contexts. These engagements have included full-scale briefing and argument before retired federal judges in assessing the strength of potential claims.

Cooper & Kirk

## CLASS ACTIONS

- ***Bernstein v. Virgin America, Inc.* (9th Cir. 2021).**

  We represent a class of flight attendants in a suit against their employer, Virgin America, for failing to comply with several requirements of California labor law. Virgin opposed class certification and defended, in part, based on constitutional theories of preemption, choice of law, and the dormant commerce clause. The district court certified the class, rejected these defenses, and entered a $80 million judgment against Virgin. We were retained to assist in defending this judgment on appeal, and we successfully persuaded the Ninth Circuit to uphold class certification, apply California law, and reject Virgin's preemption and dormant commerce clause arguments.

- ***Rodriguez v. Pan American Health Org.* (D.D.C. 2020), *appeal pending* (D.C. Cir.).**

  The firm represents a putative class of Cuban doctors in a damages action under the Traffic Victim Protection Act, alleging that the Pan American Health Organization participated in and profited from Cuba's forced labor program for doctors trafficked to Brazil. The district court rejected PAHO's claim of immunity from liability under the TVPA.

- ***In re U.S. Office of Personnel Management Data Security Breach Litig.* (D.C. Cir. 2019).**

  We represent the victims of the 2013 and 2014 breaches of OPM's data network, a catastrophic network security failure that exposed the private information of more than 21 million federal workers. We sued the Government and its contractor on behalf of a putative class of injured federal workers, alleging claims under the Privacy Act and other laws. The district court dismissed the suit for lack of standing and failure to state a claim. On appeal, we presented argument on behalf of the plaintiffs in consolidated cases in the D.C. Circuit and obtained a reversal of the district court's dismissal. This case is pending on remand in the district court.

- ***St. Luke's Health Network, Inc. v. Lancaster General Hospital* (E.D. Pa. 2018).**

  We represent a class of hospitals seeking to recover millions of dollars of payments from a state fund established to reimburse hospitals for a portion of the costs incurred to provide charity care to Pennsylvania's sickest uninsured patients. We allege that the class members were improperly underpaid because other hospitals inflated their qualifying expenses to recover a larger portion of the limited fund available to cover charity care. This case is pending in district court.

- ***Pieper v. United Health Group Inc.* (D. Minn. 2017).**

  We represented plaintiffs in a putative class action asserting various state law claims arising from the alleged failure of the defendant insurance companies to authorize certain treatments for hepatitis C. The putative class was estimated to include more than 1,000 individuals. The plaintiffs successfully settled and dismissed their claims.

Cooper & Kirk

- ***St. Bernard Parish Gov't v. United States* (Ct. Fed. Claims 2015).**

  We represented a class of plaintiffs in both liability and damages trials before the United States Court of Federal Claims, arguing that the U.S. Army Corps of Engineers' Mississippi River–Gulf Outlet project greatly exacerbated flooding in New Orleans during Hurricane Katrina, and thereby effected a temporary taking of plaintiffs' properties for which compensation was required under the Fifth Amendment to the United States Constitution.

- ***Jung v. Association of American College of Medicine* (D.C. Cir. 2004).**

  See above for a description of this antitrust class action.

- ***Clark v. United States* (Ct. Fed. Claims 2001).**

  We represented a putative class of National Guardsmen who were improperly denied compensation for correspondence courses they were required to complete. The Court of Federal Claims dismissed the case, but the Federal Circuit reversed and reinstated the claims.

- ***Bolin v. Sears, Roebuck & Co.* (5th Cir. 2000).**

  We represented a group of plaintiffs in a class action against Sears, challenging Sears' bankruptcy collection procedures as contrary to numerous federal laws. After a remand from the Fifth Circuit, the case settled.

## NOTABLE LITIGATION VICTORIES

We have won scores of significant victories for our clients in a wide range of cases. Some of our more notable litigation successes include the following:

- ***Collins v. Mnuchin* (5th Cir. 2019) (U.S. Sup. Ct. 2021).**

  We represent shareholders of Fannie Mae and Freddie Mac in a suit challenging the "Net Worth Sweep," the Government's decision in 2012 to expropriate the companies' net worth in perpetuity, thereby nationalizing the companies and destroying the equity interests of their private shareholders. After the district court ruled for the Government, we appealed and obtained a reversal from the en banc Fifth Circuit. The court ruled that Federal Housing Finance Agency's structure is unconstitutional and that the district court wrongly dismissed our claim that the Net Worth Sweep exceeded the FHFA's statutory authority. Both we and the Government successfully sought Supreme Court review of aspects of the Fifth Circuits decision. We argued the case before the Supreme Court and are awaiting a decision.

- ***Immigrant Legal Resources Center v. City of McFarland* (9th Cir. 2020).**

  We successfully appealed a preliminary injunction that barred our client, a government contractor, from accepting immigration detainees to the facility it owned and operated pursuant to a contract with the Federal Government.

Cooper & Kirk

- ***Jones v. Governor of Florida*** **(11th Cir. 2020).**

  We successfully represented the Governor and the Secretary of State of Florida in an appeal of a district court order striking down a Florida law requiring felons to complete all terms of their sentences before having their voting rights restored. The Eleventh Circuit took the extraordinary action of granting our petition for initial hearing en banc, and it reversed the district court's decision in advance of the November 2020 election.

- ***Boeing Co. v. United States*** **(Fed. Cir. 2020).**

  We successfully appealed the dismissal of Boeing's challenge to the application of a Cost Accounting Standard to the calculation of payments due under cost-based government contracts. The case, which is currently on remand in the Court of Federal Claims, could reverse tens of millions of dollars in expense payments for Boeing and other affected government contractors.

- ***United States v. Bolton*** **(D.D.C. 2020).**

  We successfully defeated an attempt by the United States Department of Justice to enjoin the publication of the memoir written by Ambassador John Bolton, the former National Security Advisor to former President Donald Trump.

- ***Shell Oil Co. v. United States*** **(Fed. Cl. 2020),** *appeal pending* **(Fed. Cir.).**

  We obtained a $1.6 million award on summary judgment for the Federal Government's breach of its contractual obligation to indemnify four major oil companies for environmental response costs arising from the production of aviation fuel for the Government during World War II. If upheld on appeal, the judgment will likely open the way for our client oil companies to recover an addition $50–60 million.

- ***North Carolina State Conference of the NAACP v. Raymond*** **(4th Cir. 2020).**

  We represent leaders of the North Carolina General Assembly in defending the constitutionality of North Carolina's voter ID law. We convinced the Fourth Circuit to allow our clients to intervene in an appeal of a district court order preliminarily enjoining the law, and the Fourth Circuit reversed the district court. We also represent the legislative leaders in parallel state court litigation.

- **TennCare Litigation (1996–Present).**

  In a series of a lengthy district court trials and appeals to the Sixth Circuit in several different cases, we successfully represented Tennessee's efforts to reform its Medicaid system. As a result of these victories, the state has saved billions of dollars.

- **North Carolina Election Cases.**

  We successfully represented leaders of the North Carolina General Assembly in several cases attacking various aspects of North Carolina election law in the lead up to the November 2020 election. The courts refused to grant most of the relief sought by the plaintiffs in these cases.

- ***In re Kemp* (8th Cir. 2018).**

  We represented an Arkansas Supreme Court justice who, along with her colleagues, was sued by a state trial judge for allegedly violating his First Amendment rights by permanently forbidding him from presiding over death penalty cases. The District Court denied our motion to dismiss, and we successfully obtained a writ of mandamus from the Eighth Circuit ordering the dismissal of the case.

- ***Democratic Senatorial Campaign Committee, et al. v. Michael Ertel, in his official capacity as Florida Secretary of State, et al.* (N.D. Fla. 2018).**

  On behalf of the National Republican Senatorial Committee and Florida Senator Rick Scott, we successfully defended challenges to several Florida election regulations that create standards for election canvassing boards to attempt to determine voter intent when the voter has not properly filled out their ballot. As a result of these victories, Florida's Elections Canvassing Commission certified Senator Scott as the winner of the state's 2018 Senate race.

- ***Reyes v. Sessions* (D.D.C. 2018).**

  We represented a client who had previously been convicted of white-collar securities offenses, and we argued that the offenses fell into a statutory exemption from federal laws that forbid felons from possessing firearms. The District Court agreed with our argument, and the Government chose not to appeal.

- ***Susquehanna Int'l Grp., LLP v. SEC* (D.C. Cir. 2017).**

  We represented petitioners challenging the SEC's approval of the Options Clearing Corporation's capitalization plan pursuant to the APA. The U.S. Court of Appeals for the D.C. Circuit held that the SEC abused its discretion, and on remand, the SEC vacated its order and disapproved the rule.

- ***Grace v. District of Columbia* (D.C. Cir. 2017).**

  We represented a resident of the District of Columbia and the Pink Pistols, an LGBT firearm rights group, in a Second Amendment challenge to the District of Columbia's firearm carriage laws. We successfully urged the District Court to enter a preliminary injunction against the District's carriage laws. On appeal, the D.C. Circuit affirmed the lower court's ruling and converted its order into a permanent injunction striking down the District's law.

- ***Shell Oil Company, et al. v. United States* (Fed. Cir. 2017).**

  We represented Shell, Unocal, Atlantic Richfield Co., and Chevron-Texaco in a major contract dispute with the United States government. Our clients sought compensation for environmental remediation costs they incurred as a result of their performance of World War II contracts for the federal government. In 2017, the Court of Federal Claims awarded our clients $99.5 million in damages, and in July 2018, the Federal Circuit unanimously affirmed.

Cooper & Kirk

- ***Berger v. HHS*** **(E.D.N.C. 2017).**

  We represented members of the North Carolina state legislature and successfully obtained a temporary restraining order preventing expansion of the state's Medicaid program. Following entry of the TRO, expansion efforts were abandoned, saving the State hundreds of millions of dollars.

- ***Howell v. McAuliffe*** **(Va. Sup. Ct. 2016).**

  We successfully represented six voters, including the Speaker of the Virginia House of Delegates and the Majority Leader of the Virginia Senate, in a challenge to the Governor of Virginia's en masse restoration of certain civil rights, including the right to vote, to convicted felons. After expedited briefing and oral argument, the Supreme Court of Virginia ruled that the text and history of Virginia's clemency power prohibited the Governor from restoring civil rights en masse.

- ***Shank v. Health Care Services, Inc.*** **(N.D. Ill. 2016).**

  We represented a class of individuals afflicted with hepatitis C whose healthcare insurer denied them access to a miracle cure for their disease. We obtained a settlement seeking to facilitate the ability of every member of the class to access this cure.

- ***SpaceX v. United States*** **(Ct. Fed. Claims 2014).**

  We successfully represented the United Launch Alliance (a joint venture of Boeing and Lockheed) in defending against SpaceX's bid protest challenging the award and execution of a five-year contract with the Air Force, valued at $11 billion, for the launch of 28 national security satellites. The case involved a voluminous, and extraordinarily complex, classified administrative record. SpaceX ultimately agreed to a settlement under terms that honored all of the Air Force's contractual obligations to ULA.

- ***Advance America, Cash Advance Centers v. FDIC*** **(D.D.C. 2014).**

  We represented small-dollar lenders in a suit challenging the legality of the federal government's "Operation Choke Point," a policy under which the banking regulatory agencies placed improper coercive regulatory pressure on financial institutions to terminate the accounts of lawful businesses, including small dollar lenders. The government abandoned the program and settled the case following the close of discovery.

- ***Shepard v. Madigan*** **(7th Cir. 2012).**

  We represented a resident of Illinois in her challenge to that state's ban on the carriage of a firearm outside the home. The Seventh Circuit held that the law was unconstitutional.

- ***Gen. Dynamics Corp. v. United States*** **(U.S. Sup. Ct. 2011).**

  We represented Boeing in a dispute with the Department of Defense over the government's default termination of a $4.8 billion contract to build the carrier-based A-12 stealth attack plane for the Navy. We successfully persuaded the Supreme Court to throw out a ruling sustaining the default termination that could have forced Boeing and General Dynamics to pay nearly $3 billion to the Government.

Cooper & Kirk

- ***AmBase. v. United States* (Ct. Fed. Claims 2011).**

  We represented AmBase Corporation in a claim against the United States. The case arose out of a governmental breach of contract that caused AmBase to lose its entire property interest in its wholly owned subsidiary, Carteret Bancorp. After a two-month trial, the Court of Federal Claims awarded $205 million, and the case subsequently settled for $180 million.

- ***Boeing v. United States* (GAO 2008).**

  We represented Boeing in a successful challenge to the Department of Defense's $40 billion award of a contract to replace the United States' aging fleet of aerial refueling tankers to a competing bidder. On rebid, Boeing won the contract.

- **The Duke Lacrosse Case (M.D.N.C. 2008).**

  We brought this case against Duke University and the City of Durham on behalf of 38 members of the 2006 lacrosse team, who had been falsely accused of participation in a rape. After Duke's motion to dismiss had been denied and extensive discovery had been taken over the course of over three years, the case settled on confidential terms.

- ***216 Jamaica Ave., LLC v. S & R Playhouse Realty Co.* (6th Cir. 2008).**

  We successfully represented a commercial property owner in a landmark case involving the enforcement of gold clauses in long-term commercial leases. Gold clauses were a common feature of early twentieth century contacts and allowed landlords to index rental payments to the value of gold. The Sixth Circuit held that transfer of a lessee's interest constituted a novation and revived the gold clause from the original lease contract. After this favorable ruling from the Sixth Circuit, the case settled.

- ***American Capital v. United States* (Ct. Fed. Claims 2005).**

  After a three-week trial involving significant expert testimony, we won a $109 million verdict against the United States. The case involved complex damages issues relating to the cost of performance of a contract that the government breached. The United States Court of Appeals subsequently affirmed the liability judgment and upheld a damages award of more than $40 million.

- ***Citizens Federal v. United States* (Ct. Fed. Claims 2005).**

  After a two-week trial involving significant expert testimony, we won an $18 million verdict against the United States. The case involved quantification of mitigation costs resulting from the government's breach of contract.

- ***Rossello, et al. v. Calderon, et al.* (1st Cir. 2004).**

  We successfully represented the Governor-Elect of Puerto Rico in a recount dispute in connection with the 2004 elections. The opposing candidate for governor challenged the validity of several thousand ballots. After a three-week trial and appeal, our client prevailed and served as the Commonwealth's governor.

Cooper & Kirk

- ***Ford Motor Company v. United States*** **(Fed. Cir. 2004).**

  We successfully represented Ford Motor Company in a breach of contract suit against the United States arising from a World War II contract for the manufacture of B-24 Liberation Bombers. Ford sought to recover the environmental cleanup costs it had incurred in connection with Ford's performance of the cost-plus-a-fixed-fee contract. After a favorable ruling from the Federal Circuit Court of Appeals, the case settled.

- ***United States ex rel. Thompson v. Columbia Healthcare, Inc., et al.*** **(D.D.C. 2003).**

  We represented a relator and who secured a settlement of $225 million from Columbia HCA for falsely seeking and obtaining Medicare reimbursements. Of the total settlement, our client received $47 million.

- ***City of New York v. Clinton*** **(U.S. Sup. Ct. 1998).**

  We represented New York City and several health care providers and associations in their challenge to the constitutionality of the Line Item Veto Act. The Supreme Court held that the Act violated the Presentment Clause of the Constitution and reinstated the appropriation that was worth approximately $2.1 billion.

- ***United States v. Winstar Corporation*** **(U.S. Sup. Ct. 1996).**

  We represented the Winstar Corporation and the Statesman Savings Holding Corporation in claims against the United States for breach of its contractual obligations to our clients arising out of their acquisition of failed savings and loan institutions from government regulators. We represented these clients in the Court of Federal Claims (where the United States was found liable), in the Federal Circuit (affirming the findings of liability after rehearing the case en banc), and in the Supreme Court. The Supreme Court upheld the findings of liability and remanded the cases for determination of damages by the lower court.

Cooper & Kirk

## OUR PROFESSIONALS

The following attorneys (one of whom, Howard C. Nielson, Jr., has since been appointed to the federal bench) have devoted significant time and energy to the firm's representation of the Subscriber Class in the *BCBS Antitrust Litigation*. Additional information about the firm's professionals can be found on the firm's website (www.cooperkirk.com).

### PARTNERS

**CHARLES J. COOPER** is a founding member and the chairman of Cooper & Kirk, PLLC, "one of the Nation's leading litigation boutiques" (*Above The Law* 2017). With over 40 years of legal experience in government service and private practice, he has argued eight cases before the United States Supreme Court and dozens of appeals before each of the 13 federal courts of appeals and several state supreme courts. He has been lead trial counsel in numerous complex, weeks-long trials in federal courts throughout the country. Named by the *National Law Journal* as one of the 10 best litigators in Washington D.C., Mr. Cooper's work has been reported in numerous press accounts, and he has been called a "powerhouse attorney" (*Fortune* 2015), "a hard-nosed litigator" (Washington Post 2017), and "one of the country's most in-demand civil litigators and a Washington legal institution unto himself" (*The American Spectator* 2014). He is a member of the Alabama, Georgia, and District of Columbia bars, as well as the bars of the U.S. Supreme Court, all 13 federal circuit courts of appeals, and many federal district courts.

After graduating from the University of Alabama School of Law in 1977, where he ranked first in his class and served as Editor-in-Chief of the Alabama Law Review, Mr. Cooper began his career as a law clerk to Judge Paul Roney on the Fifth Circuit Court of Appeals and to Justice William H. Rehnquist in 1978–79. He then practiced law in Atlanta for two years before joining the Civil Rights Division of the U.S. Department of Justice, where he served as the Deputy Assistant Attorney General in charge of, among other things, appellate matters. In 1985 President Reagan appointed him to the position of Assistant Attorney General for the Office of Legal Counsel, which is the office responsible for providing legal opinions and advice to the White House, the Attorney General, and Executive Branch departments and agencies on issues covering the full spectrum of federal constitutional, statutory, and regulatory law.

In 1988 he returned to private practice as a litigation partner in the Washington, D.C. office of McGuireWoods. From 1990 until the founding of Cooper & Kirk in 1996, he was a partner at Shaw Pittman (now Pillsbury Winthrop Shaw Pittman), where he headed the firm's Constitutional and Government Litigation Group.

Mr. Cooper has represented a wide range of public and private clients in highly complex constitutional, civil rights, antitrust, healthcare, banking, intellectual property, elections, campaign finance, administrative, commercial, and government contract cases. He has led trial teams in cases that have won judgments and settlements valued in the billions of dollars and that have established ground-breaking constitutional precedents.

Much of Mr. Cooper's practice has involved representing high-profile clients in nationally prominent matters, including: 38 members of the Duke Lacrosse team falsely accused of rape by officials of Duke University and the City of Durham; government officials such as Attorney

Cooper & Kirk

General John Ashcroft, Attorney General Jeff Sessions, and Ambassador John Bolton; several Governors and United States Senators; over 100 Members of Congress; and many state, territorial, and local government bodies and officials. He has also represented and advised government officials and public figures in connection with sensitive private issues that needed to be, and were, resolved without becoming matters of public record.

In 1998 Chief Justice Rehnquist appointed Mr. Cooper to the Standing Committee on Rules of Practice and Procedure of the Judicial Conference of the United States, where he served for seven years. He also served as a Public Member, appointed by President George H.W. Bush, of the National Commission on Judicial Discipline and Removal. He is a member of numerous professional associations, including the American Law Institute (since 1993) and the American Academy of Appellate Lawyers (since 1996). He is also an active member of the Federalist Society and the Republican National Lawyers Association, which in 2010 named him Republican Lawyer of the Year and in 2016 honored him with its Edwin Meese III Award.

Mr. Cooper has published scores of articles and spoken extensively on constitutional and legal policy topics. He has appeared before congressional committees on 24 occasions, testifying as an expert on a wide variety of legal issues, including the *Chevron* doctrine of judicial deference to administrative agencies, the diversity of citizenship jurisdiction of federal courts, statehood bills for Puerto Rico and the District of Columbia, and the impeachment of President Clinton.

Mr. Cooper has served as lead trial and/or appellate counsel in many of the firm's cases in the following practice areas:

Administrative Law
Antitrust and Unfair Trade Practices
Banking and Financial Institutions
Class Actions
Commercial
Constitutional Litigation
    Separation of Powers
    Federalism
    First Amendment (Free Speech and Religion Clauses)
    Second Amendment
    Fifth Amendment (Due Process and Takings Clauses)
    Ninth Amendment
    Tenth Amendment
    Eleventh Amendment
    Fourteenth Amendment
    Twenty-Fourth Amendment
Contract Disputes
Copyrights
Election Law/Campaign Finance
False Claims Act/Qui Tam
Government Contracts
Health Care
Intellectual Property

Cooper & Kirk

National Security
Patents
State and Local Government Representation
Telecommunications

**Education**

J.D., University of Alabama School of Law in 1977 (first in class; editor-in-chief, Alabama Law Review)
B.S., University of Alabama School of Business Administration in 1974 (with honors)

**Clerkships**

1978–1979: Justice William H. Rehnquist, United States Supreme Court
1977–1978: Judge Paul Roney, United States Court of Appeals for the Fifth Circuit

**Bar Admissions**

District of Columbia
Alabama
Georgia

**MICHAEL W. KIRK** has extensive civil litigation experience representing a wide range of clients on a variety of constitutional, statutory, contractual, commercial and tort matters.

Mr. Kirk has appeared regularly in cases brought against the federal government. He is currently representing subsidiaries of Chevron Corporation in a suit in the Court of Federal Claims asserting that the United States must indemnify them for tens of millions of dollars environmental cleanup costs incurred at three different Oil Refineries. He is also currently representing The Boeing Company in a suit in the Court of Federal Claims challenging the application of a cost accounting regulation that costs Government contractors hundreds of millions of dollars in equitable adjustments imposed by Federal contracting officers. Mr. Kirk successfully represented Shell Oil Company, Atlantic Richfield, Union Oil Company, and Texaco in a lawsuit against the Federal Government seeking to recover environmental clean-up expenses arising from World War II contracts to provide aviation fuel. Following trial, the Court of Federal Claims awarded the Oil Companies $99.5 million, and the United States Court of Appeals for the Federal Circuit affirmed the judgment in toto. Mr. Kirk represented Ford Motor Company in a similar lawsuit against the Federal government arising from a World War II contract to build B-24 Bombers. While the Court of Federal Claims initially dismissed Ford's suit, Mr. Kirk persuaded the United States Court of Appeals for the Federal Circuit to reverse and remand with instructions that judgment be entered in favor of Ford. And Mr. Kirk served as lead trial counsel for American Capital Corporation in a lawsuit against the United States for breach of contract arising from an agreement entered by the Government in an effort to address the savings and loan crisis of the 1980s. Following trial, the

Cooper & Kirk

Court of Federal Claims awarded plaintiffs $109 million, and the United States Court of Appeals affirmed the liability judgment and upheld a damages award of more than $40 million.

Mr. Kirk is also currently representing The GEO Group, Inc. in lawsuits challenging California and Washington state statutes that purport to prohibit contracts with the Federal Government to operate federal detention facilities that will generate over $2.7 billion in revenue for GEO.

Mr. Kirk has also represented state and local governments in numerous complex constitutional and statutory cases involving such varied issues as Medicaid, school desegregation, and prison reform. He has successfully represented the State of Tennessee in several cases involving its Medicaid program, saving the State hundreds of millions of dollars in annual expenditures by convincing the federal courts to vacate onerous injunctive decrees that had crippled the State's efforts to reform its program. He has successfully represented public school districts in Marion County, Florida; Baton Rouge, Louisiana; Rockford, Illinois; and Oklahoma City, Oklahoma in their efforts to obtain unitary status and end long-running school desegregation cases. In the civil rights arena, Mr. Kirk served as lead trial counsel on behalf of a plaintiff in securing the largest verdict ever returned against a suburban Maryland police department.

Mr. Kirk has an extensive appellate practice, and he has argued cases before the United States Courts of Appeals for the District of Columbia, Federal, Third, Sixth, Seventh, and Ninth Circuits.

Mr. Kirk served as law clerk to Judge James L. Ryan of the United States Court of Appeals for the Sixth Circuit. He received his J.D. degree, cum laude, in 1988 from Northwestern University. He served as Executive Editor of The Journal of Criminal Law and Criminology, and is a member of the Order of the Coif. He earned an A.B. degree, cum laude, from Georgetown University in 1985.

Mr. Kirk is a member of the Bars of the State of New York, the District of Columbia, the United States Supreme Court, the United States Courts of Appeals for the First, Third, Fourth, Fifth, Sixth, Seventh, Ninth, Eleventh, District of Columbia and Federal Circuits, the United States District Court for the District of Columbia, and the United States Court of Federal Claims.

**VINCENT J. COLATRIANO** has extensive civil litigation experience representing a wide range of clients before a number of administrative agencies and federal and state trial and appellate courts on a variety of constitutional, statutory, administrative, contractual, tort, intellectual property, and commercial matters.

Mr. Colatriano has appeared regularly in cases brought against the federal government. He has represented numerous financial institutions and other companies in so-called "Winstar" cases against the United States. Mr. Colatriano has helped the plaintiffs in those cases recover hundreds of millions of dollars in damages. Mr. Colatriano served as one of the trial counsel for AmBase Corporation and its subsidiary Carteret Bancorp in a Winstar lawsuit against the United States for breach of contract arising from an agreement entered by the Government in an effort to address the savings and loan crisis of the 1980s. Following trial, the U.S. Court of Federal Claims awarded

Cooper & Kirk

the plaintiffs more than $200 million in damages. Mr. Colatriano has also successfully represented other companies in government contract cases against the United States.

Mr. Colatriano has also represented property owners in litigation brought against the United States under the Fifth Amendment's "takings" clause, which prohibits the taking by the government of property for a public use without the payment of just compensation.

Mr. Colatriano has also represented plaintiffs in litigation, before both the U.S. Court of Federal Claims and the U.S. Court of Appeals for the Federal Circuit, seeking compensation from the federal government as a result of the Government's unauthorized use of inventions covered by valid patents. He has also helped to analyze whether provisions of federal patent reform legislation run afoul of various provisions of the United States constitution.

Mr. Colatriano has also represented state governments in numerous constitutional, statutory, administrative law, and commercial matters involving such complex issues as the disposal of nuclear waste, compliance with oil and gas leases, and the commerce clause. For example, Mr. Colatriano participated in the representation of the State of Alabama in proceedings before the Supreme Court of Alabama in a matter involving fraud and breach of contract claims arising out of oil and gas leases entered by the State. This representation raised numerous complex issues involving such matters as the law of fraud, the proper construction of royalty clauses in oil and gas leases, and the constitutionality of punitive damages awards. Mr. Colatriano also represented the State of Nevada in complex litigation concerning the federal government's proposal to dispose of nuclear waste at a facility at Yucca Mountain in Nevada; that matter involved numerous complex questions concerning constitutional, statutory, and administrative law issues.

Mr. Colatriano also has extensive experience representing clients in proceedings before administrative agencies and has worked on cases before such agencies as the U.S. Nuclear Regulatory Commission (in matters involving the Atomic Energy Act and the Nuclear Waste Policy Act) and the U.S. Department of Agriculture (in matters involving the Animal Welfare Act).

Mr. Colatriano was awarded his B.A. degree in Political Science, summa cum laude, from George Washington University in 1987, and was elected to Phi Beta Kappa. In 1990, he received his J.D. degree from the National Law Center, George Washington University, with highest honors. He was a member of the George Washington Law Review, the Phi Delta Phi International Legal Fraternity, and the Order of the Coif. Mr. Colatriano is a member of the Bars of the State of Maryland and the District of Columbia.

**HOWARD C. NIELSON, JR. (FORMER PARTNER)** was elevated to the federal bench in October 2019, and now serves as a Judge on the United States District Court for the District of Utah. Judge Nielson brought extensive litigation, government, and academic experience to the field of constitutional law to his practice of law at Cooper & Kirk. He litigated numerous cases in a variety of other areas, including government contracts, antitrust, and administrative law. He played a leading role in drafting the Subscriber Plaintiffs' summary judgment briefing on the applicable standard of review.

Cooper & Kirk

Before joining Cooper and Kirk, Mr. Nielson served from 2001 to 2005 at the U.S. Department of Justice. From 2001 to 2003 he was Counsel to the Attorney General, in which capacity he advised the Attorney General on a variety of legal matters and supervised high-profile litigation relating to national security and other departmental priorities. In 2003 he was appointed Deputy Assistant Attorney General for the Office of Legal Counsel, which provides legal opinions and informal advice to the White House, the Attorney General, and Executive Branch Departments and Agencies on issues covering the full spectrum of international, constitutional, statutory, and regulatory law. Mr. Nielson served in this capacity for two years, during which time his work involved a broad range of issues relating to national security and other areas of constitutional, statutory, and international law.

Prior to his work at the Justice Department, Mr. Nielson practiced law from 1999 to 2001 as an associate in the Issues and Appeals Practice Group at Jones, Day, Reavis & Pogue (now Jones Day) in Washington, D.C. He worked on a variety of litigation and other matters, especially in the areas of constitutional and employment law. Before that time, he served as a law clerk to Judge J. Michael Luttig of the United States Court of Appeals for the Fourth Circuit, and to Justice Anthony M. Kennedy. Mr. Nielson graduated from the University of Chicago Law School in 1997, where he served as articles editor on the University of Chicago Law Review, was a Mombusho Scholar at Kobe University Graduate School of Law from 1992 to 1994, and received his B.A. from Brigham Young University in 1990.

**BRIAN W. BARNES** has litigated high-stakes cases at all levels of the federal court system and has also argued numerous cases in state trial and appellate courts. He was the principal author of the briefs for the petitioners in *Collins v Mnuchin*, a multi-billion-dollar administrative law case challenging the nationalization of Fannie Mae and Freddie Mac, which is currently pending in the United States Supreme Court. In related litigation, Mr. Barnes deposed several of the current and former senior executives for Fannie Mae and Freddie Mac, including both companies' former CEOs. Mr. Barnes also played a central role representing shareholders in disputes over the scope of the government's discovery obligations in the Fannie Mae/Freddie Mac litigation, successfully persuading the Court of Federal Claims to order the government to show plaintiffs' counsel most of the documents the government attempted to withhold under the deliberative process and bank examination privileges.

Mr. Barnes also has extensive experience representing plaintiffs in suits filed under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). He briefed and argued *St. Luke's Health Network v. Lancaster General Hospital*, 967 F.3d 295 (3d Cir. 2020), in which the Third Circuit reversed dismissal of RICO claims filed as part of a putative class action against a hospital that allegedly defrauded a Pennsylvania program that subsidizes care for indigent patients. Mr. Barnes also helped pioneer the use of RICO to sue state-legalized marijuana businesses: he filed the first such case, successfully argued the case on appeal after it was dismissed, and later helped try the case to a jury on remand. *See Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865 (10th Cir. 2017).

Mr. Barnes has also worked on a wide range of other matters. He has briefed and argued cases concerning state preemption of local gun regulations in the trial and intermediate appellate courts of Illinois and Pennsylvania. In litigation over the Department of Education's Title IX

Cooper & Kirk

regulations, Mr. Barnes represents intervenors who are defending the regulations. And he has an active practice advising institutional investors on the probable outcomes of market-moving litigation in both state and federal courts.

Mr. Barnes clerked for Justice Samuel Alito during the Supreme Court's 2012 Term and was previously a law clerk to Judge Thomas Griffith of the D.C. Circuit. He is a graduate of Yale Law School, where he was an Articles Editor for the Yale Law Journal and a member of the Yale Supreme Court Clinic. Mr. Barnes received his B.A. from Yale College and is a member of the Colorado and District of Columbia bars.

**HALEY N. PROCTOR** has focused on complex commercial litigation and constitutional and administrative law. She has authored briefs at all levels of state and federal courts and has argued cases in state and federal appellate courts. She is currently representing the largest equity investor in a billion-dollar real estate development project in New York City in an effort to recover its investment after a wrongful foreclosure. Ms. Proctor also represents a putative class of medical doctors from Cuba, who were trafficked to Brazil and granted asylum in the United States. She developed a successful due process challenge to Operation Choke Point, a program by the Department of Justice and federal banking regulators to pressure financial institutions to deny short-term lenders access to the banking system. Ms. Proctor rejoined Cooper & Kirk in 2015 after clerking for Justice Clarence Thomas of the United States Supreme Court during the October 2014 term. She previously clerked for Judge Thomas B. Griffith of the United States Court of Appeals for the D.C. Circuit. She graduated from Yale Law School in 2012 and from Yale College, magna cum laude, in 2009. In law school, she was a semifinalist in the Morris Tyler Moot Court Competition. Ms. Proctor is a member of the bars of the Commonwealth of Virginia, the State of Oklahoma, and the District of Columbia.

## OF COUNSEL

**HAROLD SMITH REEVES** focuses on complex litigation in the fields of administrative law, class action litigation, antitrust, and constitutional law. Mr. Reeves was a member of the Cooper and Kirk team that represented the United Launch Alliance in its successful defense of a $26 billion launch services contract with the Department of Defense against a bid protest by SpaceX. He was part of the team that represented a group of small-dollar, short term lenders in their challenge to Operation Choke Point, the effort by the Department of Justice and federal banking regulators to deny them access to the national banking system. Mr. Reeves also represented market participants in the securities industry in a successful APA challenge to the SEC's approval of the recapitalization plan of the Options Clearing Corporation.

After clerking for Judge Douglas H. Ginsburg on the United States Court of Appeals for the District of Columbia Circuit, he worked in the Washington, D.C. office of Mayer, Brown, and Platt, and then with Skadden, Arps, Slate, Meagher, and Flom. While at Skadden, he worked on a variety of white-collar criminal defense, administrative law, and constitutional law matters, including the suit brought by the heirs of Abraham Zapruder to obtain just compensation for the Government's Taking of the Zapruder Film of the Kennedy Assassination that resulted in a $17 million award for the family, and the defense of President Clinton in the Paula Jones litigation.

Cooper & Kirk

Mr. Reeves graduated summa cum laude, from Princeton University, where he was salutatorian of the Class of 1991. He received his J.D., with honors, from The University of Chicago Law School in 1996. While at Chicago, he served as articles editor on the Law Review and published on the economic analysis of virtual property rights and Internet boundary definition. In addition to his J.D., Mr. Reeves has advanced degrees in Philosophy (PhL, Catholic University of America), Theology (STB, Pontificia Università di S. Tomasso d'Aquino), and Classics (M.A., PhD, University of Virginia). His doctoral dissertation was on the use of the traditional portrait of the tyrant in Roman imperial political biography.

## ASSOCIATE

**DAVIS COOPER** has represented clients in high stakes litigation in a range of areas, including constitutional law, takings, antitrust, and government contracts. He also has an active practice representing injured individuals in single-event, pharmaceutical, and medical device cases. Mr. Cooper has earned the accolades of his peers, clients, and courts, including seven top trial lawyer and six top 40 under 40 awards. In 2016, Florida Governor Rick Scott appointed Mr. Cooper to Florida's 20th Circuit Judicial Nominating Commission. Mr. Cooper served in that role until July 2019, when Florida Governor Ron DeSantis appointed him to the Second District Court of Appeal Judicial Nominating Commission. He received his undergraduate degree and law degree from the University of Alabama. Mr. Cooper is a member of the Florida and District of Columbia bars.

# EXHIBIT F

# About Greg Davis Law

Greg Davis Law, located in Montgomery, Alabama, represents individual and business clients in securities, antitrust, consumer litigation and other complex litigation cases in federal and state courts throughout the United States and has achieved numerous successful outcomes.

## Greg L. Davis

Greg attended the University of Alabama (B.A. 1983) with a major in Anthropology and attended Cumberland School of Law in Birmingham, Alabama (J.D. 1988). He began his legal carrier as a law clerk for the Honorable J. Gorman Houston, Jr. at the Alabama Supreme Court.

Greg has spent his entire carrier working on a variety of complex litigation cases.

## Representative Matters

- Represented a Hispanic construction worker's estate after he lost his life on a worksite when the scaffold, he was working on fell, causing him to fall 37 feet to his death. A weeklong trial resulted in a 3.2 million-dollar jury verdict awarded to his widow and two young sons.

- Represented an individual against a large national pharmacy after they had miss-filled and overdosed her on a high-powered prescription steroid. After more than a 7-day trial the jury awarded the individual 2.5 million.

- Represented an individual in a defamation case obtaining 5-million-dollar jury verdict.

- Represented a trucking company for misrepresentations made about the manufacturer's assembly processes and obtained a 1.4 million dollar jury verdict.

- Represented investors who were defrauded in a Ponzi scheme, resulting in a 4.5 million-dollar verdict.

- Represented a class of consumers in a false advertising case against Nutella for representing that their product was a healthy and nutritious breakfast. Settlement achieved.

- Represented a class of financial institutions whose debit and credit card holder's personal and financial information was compromised as a result of a data breach which occurred as a direct result of Mapco Service Station having failed to take appropriate security measures to protect customer data within its computer network.

- Represented a class of financial institutions whose credit and debit card holders personal and financial information were compromised in a breach of Target Corporation's database. *In re Target Corporation Data Security* Litigation MDL No. 2522 (D. Minn.) A $59 million settlement achieved involving data breach of personal and financial information of approximately 110 million credit and debit cardholders.

- Represented a number of individuals in a mass tort action filed against a vitamin manufacturer and the mixing company who mistakenly added over a thousand times the ingredient amount of selenium to the formula during the manufacturing process, causing those who took the vitamin/supplement to lose all of their hair overnight. *In re Total Body Litigation.*

## Court Admissions

U. S. Supreme Court.
U.S. Court of Appeals, Eleventh Circuit
U.S. District Court Middle District of Alabama
U.S. District Court Northern District of Alabama
U.S. District Court Southern District of Alabama
Admitted to Practice in All State Courts in Alabama

## Personal

Greg is married to Heather Coleman Davis and they enjoy spending time with their five children. Greg is an avid outdoorsman with a lifelong love of hunting and fishing, a purple martin buff, a gardener, a muscle car enthusiast, an Alabama Crimson Tide football fan, and he loves to build things.

## Contact Information

Greg Davis
7475 Halcyon Pointe Drive
Montgomery, Alabama 36117
(334) 832-9080
gldavis@gregdavislaw.com

# EXHIBIT G



Foote, Mielke, Chavez & O'Neil
ATTORNEYS AT LAW

## About Us

Foote, Mielke, Chavez & O'Neil, LLC (FMCO) is a highly regarded boutique complex civil litigation law firm with a large national footprint. Founding partners Kathleen Chavez and Robert Foote pride themselves on having established one of the most recognized and innovative complex litigation law firms in the United States. FMCO has offices in Geneva, Chicago, and Washington D.C. FMCO's attorneys offer a diverse array of skills, knowledge, determination, compassion, curiosity, experience, and creativity. In our complex practice, we routinely provide legal representation to governments, individuals, employees, trusts, unions, and corporations. Our lawyers have impressive academic credentials, as well as decades of experience in national, multi-district, class, collective, and complex civil litigation.

## Innovative Approach

FMCO offers its clients a unique and unconventional approach to litigation. We believe that tough problems are solved through innovative approaches, flexibility, collaboration and the hard work and concentrated efforts of a committed team of lawyers. We work closely with our clients to achieve successful outcomes, from record-setting recoveries to important changes in policies and practices. Our attorneys understand that achieving optimal outcomes often requires flexibility, "out-of-the-box" thinking, and innovative approaches to litigation and dispute resolution efforts.

## FMCO Cases

FMCO seeks out the kinds of cases many lawyers run away from — interesting cases that offer us a chance to get creative, think deeply, challenge unclear or inconsistent precedent, shape the direction of our state and federal law, and achieve transformative justice. We are not afraid of, or opposed to, forging the path; to the contrary, we pride ourselves on being innovators and leaders. FMCO is committed to exceptional advocacy and relentlessly pursuing justice, in the most challenging scenarios. Transformative litigation is often high risk, requiring years of hard work, substantial financial expenditures, and a tireless commitment to obtaining justice for your clients. FMCO understands what it takes to achieve success and is willing to spend the resources necessary to achieve record-setting results in cases involving novel, emerging and complex legal issues.

---

Foote, Mielke, Chavez & O'Neil
ATTORNEYS AT LAW

# $20+ Billion
# for our Clients

Including from: judgments, verdicts, mediations, arbitrations, administrative proceedings, and settlements

## Practice Areas

- Complex Civil Litigation
- Class, Collective and Mass Tort
- Antitrust/Competition
- Unfair Trade Practices
- Contract Law
- Consumer Fraud
- Technology and Internet Law
- RICO
- Environmental Law
- Qui Tam (whistleblower claims)
- Intellectual Property Law
- Employment Law
- Civil Rights
- Insurance Law
- FINRA Arbitrations
- Equal Employment Opportunity ("EEOC") charges
- Illinois Department of Human Rights ("IDHR") charges.

## Reputation for Excellence

Numerous recognitions, distinctions, and inclusion in selective and peer-reviewed organizations, such as Super Lawyers®, Leading Lawyers®

   

**www. FMCOLAW.com**

---

10 West State Street, Suite 200         Geneva, Illinois 60134

  

Foote, Mielke, Chavez & O'Neil
A T T O R N E Y S   A T   L A W



## KATHLEEN C. CHAVEZ

✉ KCC@FMCOLAW.COM   ☎ (630)232-7450     WWW.FMCOLAW.COM

### PROFESSIONAL EXPERIENCE

Ms. Chavez is nationally recognized as a highly skilled trial attorney who has extensive experience in all aspects of complex civil litigation. She has spent her career advocating for the rights of plaintiffs, including infants, children, individuals, employees, and governmental entities, who have been injured or suffered loss due to fraud, deception, unfair competition, discrimination, harassment, illegal pay practices, environmental contamination, breach of contract, defective products, automobile accidents and a host of other injustices.

- Class, Collective, and Complex Civil Cases
- Competition/Antitrust
- Consumer Fraud
- Unfair Trade Practices
- Environmental
- Technology/Intellectual
- Wage and Hour
- Insurance
- Property
- Employment Law
- Civil Rights
- Contract Law
- Racketeering Influenced and Corrupt Organizations Act (RICO)
- EEOC and IDHR Charges

Her practice is focused on complex civil cases (including class, multi-plaintiff, mass tort and individual) involving competition, consumer fraud, unfair trade practices, environmental, technology, trademark, qui tam, civil rights, breach of contract, Racketeering Influenced and Corrupt Organizations Act ("RICO"), employment, wage and hour, insurance and other state and federal statutory and common law claims. Ms. Chavez is actively involved in all aspects of her cases and has extensive experience in every stage of litigation, such as: initial case investigation, preparing pleadings, legal research, crafting strategies, discovery, e-discovery, document review, motion practice, witness preparation, depositions, trial (including class action, multi-plaintiff, collective, federal, state, and administrative), appeals and mediation/settlements.

### Education & Training

Northwestern University
School of Law
J.D., 1998

Northern Illinois University
B.S., Finance, 1995

Duke Law, Bolch Judicial
Institute, Mass Tort MDL
Certification and Advanced
Mass Tort MDL Certification

### Licenses & Admissions

State Bar of Illinois

State Bar of California

District of Columbia Bar

United States Federal Court of Claims

United States Court of Appeals for the 7th Circuit

United States District Court for the Northern District of Illinois

Trial Bar for the United States District Court for the Northern District of Illinois

United States District Court for the Central District of Illinois

United States District Court for the Southern District of Illinois

Ms. Chavez is a member of the American Bar Association ("ABA"), the Chicago Bar Association ("CBA"), the Federal Bar Association ("FBA"), the

F M C O — **Foote, Mielke, Chavez & O'Neil**
———— A T T O R N E Y S   A T   L A W ————

National Employment Lawyers Association ("NELA") and the Kane County Bar Association ("KCBA") and the Women's Bar Association of Illinois ("WBAI"). Ms. Chavez's has received numerous recognitions and distinctions, and inclusion in selective and peer-reviewed organizations, such as: Super Lawyers®, Leading Lawyers®; Top 25 Women National Women Trial Lawyers; Top 100 National Trial Lawyers; Top 20 Illinois Verdicts; Leading Women Lawyers; Top Employment Lawyers for Employees, *Chicago Lawyer Magazine*; Top 10 % of Lawyers in the USA; Lawyers of Distinction Board of Directors; Top Women Lawyers, *Chicago Lawyer Magazine*; Esteemed Lawyers of America® and Lawyers of Distinction; Illinois 16th and 18th Judicial Circuit Arbitrator; certification as an American Arbitration Association ("AAA") Employment Panel Arbitrator; and Illinois State Bar Association 40 Hour Mediation Certification. Ms. Chavez is a frequent lecturer at conferences, symposiums, and other continuing legal education (CLE) programs.

## CASES

Ms. Chavez frequently serves in leadership roles, on leadership committees, and as a team member in some of the most challenging and transformative complex civil litigation nationwide. Ms. Chavez has utilized her diverse experience and unique background to consistently provide invaluable contributions in cases that require the cooperation and collaboration of multiple plaintiffs' counsel. Whether as a leader or a team member, Ms. Chavez consistently offers an unparalleled level of advocacy, energy, enthusiasm, and commitment to her clients. Recoveries from the cases in which she has been involved (including verdicts, judgments, and settlements) exceed $15 billion dollars and involve a diverse range of complex civil claims, for example:

*In Re Blue Cross Blue Shield Antitrust Litigation*, MDL 2406: Plaintiff's Steering Committee (PSC) member in nationwide class action by subscribers alleging antitrust/competition claims.

*In Re Testosterone Replacement Therapy Products Liability Litigation, MDL 2545:* Plaintiff's Steering Committee (PSC) member in nationwide mass tort action involving pharmaceuticals.

*Tipsword v. I.F.D.A. Services, Inc., et al.,* served as co-Lead counsel for the consumer class in resolving a $58 million dollar claim, before Judge G. Patrick Murphy of the Southern District of Illinois, for damages occasioned by the collapse of the Illinois Funeral Directors Association Pre-Need Trust.

*Annoereno, et al., v. Claire's Stores, Inc., 14-cv-07744***:** Lead counsel for nationwide collective and class action alleging Fair Labor Standards Act, 29 U.S.C. § 201, et seq., and similar state wage and overtime laws.

*In Re Jimmy John's Overtime Litigation, 14-cv-05509*: leadership counsel in nationwide collective and class action alleging Fair Labor Standards Act, 29 U.S.C. § 201, et seq., and similar state wage and overtime laws, as well as claims challenging the validity of non-competition agreements. The case drew significant attention because the non-competition agreements were expansive in scope, geography, and were unfairly restricting entry-level employees' ability to seek alternative

employment. Illinois and other states successfully challenged and resolved the non-compete claims of thousands of workers.

*LaFleur v. Dollar Tree Stores, Inc.*, 12-cv-00363, in the United States District Court for the Eastern District of Virginia: co-Lead Counsel in nationwide collective and class action alleging Fair Labor Standards Act, 29 U.S.C. § 201, et seq., and similar state wage and overtime laws.

*Havlish v. bin Laden, Docket No. 03-MDL- 1570 (S.D. NY)*: counsel for surviving families of those killed in the 9/11 attacks on the World Trade Centers. Plaintiffs obtained a $6 billion dollar judgment. The Court found the Islamic Republic of Iran, its Supreme Leader Ayatollah Ali Hosseini Khameni, the former Iranian President Ali Akbar Hashemi Rafsanjani, and other Iran Agencies and instrumentalities all materially aided and supported al Qaeda before and after 9/11.

*In Nash et al v. CVS Corporation*, in the United States District Court for the District of Rhode Island served as Co-Lead Settlement Counsel on behalf of current and former assistant managers and assistant store managers claiming they were not properly paid overtime because they were misclassified by the company as "exempt" from federal and state overtime pay requirements. The case was brought under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq., and similar state wage and overtime laws. The case was settled, and the defendant agreed to pay up to $34 million into a fund for class member claims.

*In Re Managed Care Litigation, MDL 1344*:  before Judge Frederico Moreno of the Southern District of Florida, counsel for nationwide class of physicians and medical associations alleging civil conspiracy in violation of RICO, brought against nine of the largest managed care companies in the United States.

*Westgate Ford Truck Sales v. Ford Motor Company*, Docket No. 02-CV-483526 (Ohio Cir. Ct.): served as a member of the trial team that resulted in a $2 billion dollar judgment on behalf of class of dealers who purchased medium duty of heavy-duty trucks from the defendant.  The case was tried as a breach of contract action alleging a systematic breach of the dealers Sales and Service Agreements which required Ford to sell products to every dealer using prices, charges and discounts that are published in advance.  The class alleged that Ford breached the agreement through the operation of a pricing program known as the Competitive Price Assistance Program. The judgment was reversed.

*Barnes v. Canadian National Railway Company, et al.*: served as co- Lead Class Counsel in the Northern District of Illinois and recovered $3 million and important nonmonetary relief (i.e., training, monitoring, reporting, etc.) on behalf of a class of African American railroad workers subjected to racial discrimination in the workplace.  The complaint maintained the defendants' conduct was unlawful under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 & § 1981(A).

*In Re Insurance Brokerage Antitrust Litigation*, MDL 1663:  served as counsel to a class of plaintiff policyholders who alleged the insurance brokerage firms and companies conspired with one another to allocate customers and markets resulting in artificially inflated premiums paid by

F M
C O    Foote, Mielke, Chavez & O'Neil
——— ATTORNEYS AT LAW ———

policyholders. Plaintiffs brought claims under the RICO Act, 18 U.S.C. § 1962(c) and (d), Section 1 of the Sherman Act, 15 U.S.C. § 1, and similar state laws.

*In Re Lupron Marketing and Sales Practices Litigation, MDL 1430*: served as class settlement counsel in a class action against the manufacturer and marketers of the drug Lupron. The Court approved a $150 million settlement for patients, insurance companies and health and welfare benefit plans that purchased the drug. Plaintiffs successfully claimed the defendants engaged in a scheme to artificially inflate the average wholesale price. Plaintiffs maintained such claims under RICO 18 U.S.C. § 1962(c) and (d) as well as the consumer protection laws of 34 states.

*Amft v. United States Dep't of Transp*., EEOC Case No. 210-2004-00139X: Lead counsel in class administrative action against the Federal Aviation Administration (FAA) asserting gender -based Title VII claims.

*Bolden v. Walsh Construction Company*, Docket No. 06-cv-4104 (N.D. IL): co-Lead counsel in class action maintaining the defendants' conduct was unlawful under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 & § 1981(A).

*Byas, et al. v. Union Pacific Railroad*, Docket No. 06-CV-475 (S.D. IL): co-Lead Counsel representing a class of employees asserting race discrimination claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 & § 1981(A).

*Douglas Powers and Suzan McCarthy, et al., v. U.S. Department of Transportation, Agency, EEOC Case Nos. 210-2002-6091X*: Lead Counsel representing a nationwide class of air traffic controllers alleging age and gender claims action against the Federal Aviation Administration (FAA).

*Academy of Motion Picture Arts and Sciences v. GoDaddy.com*, Inc., Docket No. 10-CV-3738 (C.D. CA), served as co-Lead counsel in intellectual property litigation involving cybersquatting and infringements.

*In Re Google AdWords Litigation*, Docket No. 08-CV-03369 (N.D. CA): counsel in nationwide class action involving internet advertising practices.

*Lincoln Adventures, LLC v. Those Certain Underwriters at Lloyd's London*, Docket No. 2:08-cv-00235-CCC-PS: class counsel in nationwide class action involving insurance brokerage and RICO claims.

*McManus, et al. v Countrywide Financial Corp., et al*.: Docket No. 09-CV-1705 (N.D. Ill.): Lead Counsel in nationwide class and collective action alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201, et seq., and similar state wage and overtime laws.

F M
C O   Foote, Mielke, Chavez & O'Neil
— A T T O R N E Y S   A T   L A W —

*U.S. Equal Employment Opportunity Commission, et al., v. Gonnella Baking Co.*, No. 08-CV-5240 (N.D. Ill.); co-Lead counsel with the EEOC on claims alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

*UBID, Inc. v. The GoDaddy Group, Inc., and GoDaddy.com, Inc.*, Docket No. 1:09-CV-02123 (N.D. Ill.): co-Lead Counsel in case involving cybersquatting and intellectual property claims.

*Vulcan Golf, LLC, et al. v. Google Inc.*, Docket No. 07-CV-3371 (N.D. Ill.): co-Lead counsel in case involving cybersquatting and intellectual property claims.

### *Municipal and Government Litigation*

Representing a group of 24 states against Major Oil Companies in Qui Tam Litigation across the country, including:

- *State of Colorado, et al, v. ConocoPhillips Company*, Docket No. 12-CV-0451 (CO Cir. Ct.)

- *State of Montana, et al, v. BP plc, et al.*, Docket No. DDV-2011-193 (MT Cir. Ct.)

- *State of South Dakota, et al, v. BP plc, et al.,* Docket No. 10-257(S.D. Cir. Ct.)

*DeKalb County, et al. v. Federal Housing Finance Agency, et al*, Docket No. 3:12-cv-50227 (N.D. Ill.)

Ms. Chavez has participated and served as counsel in many complex, class action and MDL matters, including but not limited to:

*Vennett, et al. v. American Intercontinental University, et al.*, Docket No. 05-CV-4889 (N.D. Ill.)
*United States of America ex. rel. Mark Eugene Duxbury et al., v. Ortho Biotech Products, L.P.*, Docket No. 03-CV-12189-RWZ (D. Mass.)
*Carter v. Allstate, Docket No. 02 L 717 (Ill. Cir. Ct.)*
*Dremak, et al. v. Groupon, Inc*., Docket No. 11-CH-876 (Ill. Cir. Ct.)
*Potts v. United Parcel Service, Inc.*, Docket No. 07-cv-3949 (N.D. Ill.)
*In Re Sears Roebuck & Co. ERISA Litigation*, Docket No. 1:02-cv-08324 (N.D. Ill.)
*Love, et al. v. Blue Cross and Blue Shield Association, et al.*, Dkt No.: 03-CV-21296 (S.D. FL)
*Whitworth, et al. v. Nationwide Mutual Ins. Co.*, Dkt No. 00CVH-08-6980 (Oh. Ct. Com. Pl.)
*Tipsword v. Merrill Lynch, et al.,* Docket No. 3:09-CV-00390 (S.D. Ill.)
*In Re Air Cargo Shipping Service Antitrust Litigation*, MDL 1775
*In Re Bayer Corp. Products Litigation*, MDL 2023
*In Re Comcast Set-Top Box Litigation*, MDL 2034
*In Re Household Goods Movers Antitrust Litigation,* MDL 1865
*In Re Insurance Brokerage Antitrust Litigation*, MDL 1663
*In Re Lupron Marketing and Sales Practices Litigation*, MDL 1430
*In Re Managed Care Litigation*, MDL 1334

*In Re Neurontin Marketing and Sales Practices Litigation*, MDL 1629
*In Re OxyContin Antitrust Litigation*, MDL 1603
*In Re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, MDL 1720
*In Re Pharmacy Benefits Manager Antitrust Litigation*, MDL 1782
*In Re Pre-Filled Propane Tank Litigation*, MDL 2086
*In Re RC2 Corp. Toy Lead Paint Products Liability Litigation*, MDL 1893
*In Re Sulzer Hip Prosthesis and Knee Prosthesis Liability Litigation*, MDL 1401
*In Re Text Messaging Antitrust Litigation*, MDL 1997
*In Re U.S. Foodservice, Inc*., Price Litigation, MDL 1894
*In Re Wholesale Grocery Products Antitrust Litigation*, MDL 2090
*In re TikTok Consumer Privacy Litigation*, MDL 2948

## PRESENTATIONS & LECTURES

- *Attorney-Client Privilege and the Work Product Doctrine*, LawPracticeCLE (January 2021)
- *Advanced Employee Handbook Drafting*, LawPracticeCLE (September 2020)
- *Social Media & the Law: Intellectual Property, Employment and the Duty of Professionals*, LawPracticeCLE (January 2020)
- *Understand and Effectively Maximize Job-Protected Leave Entitlement Under the Family Medical Leave Act of 1993, as amended ("FMLA")*; LawPracticeCLE (January 2020)
- *When a "Gig" Becomes a "Gaffe": Protecting Worker Rights in the 21st Century American Workplace,* Northern Illinois University law Review Symposium, Lyft-ing the Veil on a Worker's Status in the Gig Economy (April 2019)
- *Workplace Changes and Challenges: Hot Topics and Emerging Employment Law Issues*; LawPracticeCLE (March 2019)
- *Hasta La Vista v. I'll Be Back: empowering employees to Understand and Effectively Maximize Job-Protected Leave Entitlement Under the Family Medical Leave Act of 1993, as amended ("FMLA")*; LawPracticeCLE (March 2019)
- *Drafting Employee Handbooks: Navigating the Complicated Practicality of the Employee Handbook*; LawPracticeCLE (December 2018)
- *Keep This Between Us: The Attorney-Client Privilege and Work Product Doctrine*; LawPracticeCLE (December 2018)
- *A Lawyer's Guide to the Employee Handbooks*; mylawCLE and Wolters Kluwer CLE Broadcast (October 2017)
- *HIPAA Law for Lawyers: A Must-Know Guide to New Compliance Requirements*; mylawCLE and Wolters Kluwer CLE Broadcast (September 2017)
- *Understanding the Basics and Not-So-Basics of the Attorney-Client Privilege and Work Product Doctrine*; mylawCLE and Wolters Kluwer CLE Broadcast (September 2017)
- *International Trademark Registration: Advantages and Disadvantages of International Registration (IR) Through the Madrid Protocol*; mylawCLE and Wolters Kluwer CLE Broadcast (September 2017)
- *Sexual Harassment and Hostile Work Environments*; Kane County Bar Association CLE Presentation (May 2017)