FILED
2021 Jun-01  PM 04:52
U.S. DISTRICT COURT
N.D. OF ALABAMA

# Exhibit 287

ALL-STATE LEGAL SUPPLY CO., ONE COMMERCE DRIVE, CRANFORD, NEW JERSEY 07016

ED 11

1

CONFIDENTIAL

BCBSA00157045



*Blue Cross*
**COMMISSION**
OF THE AMERICAN HOSPITAL ASSOCIATION

**425 NORTH MICHIGAN    •    CHICAGO 11, ILLINOIS**

F. P. Rawlings, Director
Group Hospitalization, Inc.
Transportation Building,
925 Seventeenth Street, N. W.
Washington 6, D. C.

**NO.** P-52-8

| | POLICY LETTER |
|---|---|

**DATE** March 14, 1952

**SUBJECT:** LICENSING AGREEMENT

RECEIVED
Director's Office MAR 17 1952

---

Wm. S. McNary, Chairman
  Detroit

James E. Stuart, Vice-Chairman
  Cincinnati

Abraham Oseroff, Treasurer
  Pittsburgh

E. Dwight Barnett, M. D.
  Detroit

M. Haskins Coleman, Jr.
  Richmond

Roger W. Hardy
  Boston

N. D. Helland
  Tulsa

Basil C. MacLean, M. D.
  Rochester, N. Y.

W. W. McCrary, Jr.
  Memphis

Carl M. Metzger
  Buffalo

E. Duncan Millican
  Montreal

J. Philo Nelson
  Oakland

Louis H. Pink
  New York City

W. B. Seymour, M. D.
  Cleveland

Leon R. Wheeler
  Milwaukee

Richard M. Jones, Director
  Chicago

Following the 1951 Conference of Plans in Biloxi,
a committee was appointed to recommend ways and
means of protecting the Blue Cross emblem and
name under the Lanham Act.  This committee faced
a difficult assignment and has held numerous
all-day meetings.

Two copies of this committee's report and two
copies of the Licensing Agreement proposed by
the committee are attached hereto.  This proposal
will be considered at the Annual Conference of
Plans to be held in San Francisco, March 31-
April 3, 1952.

                              **RICHARD M. JONES**
                              Director

**DISTRIBUTION:**  Plan Directors



DEFENDANT'S
EXHIBIT
932

G-81216

CONFIDENTIAL

BCBSA00157151

REPCRT
OF
SPECIAL CCMMITTEE ON A LICENSING AGREEMENT

Blue Cross Commission
March 7, 1952

It will be recalled that at the Biloxi meeting of the Blue Cross Plans in the Spring of 1951 one of our sessions was devoted to the desirability of protecting the Blue Cross emblem and the words "Blue Cross" under the provisions of the federal trade-mark law known as the Lanham Act. In this session Boynton Livingston, Esq., made a clear exposition of the problem which the Plans face and outlined the provisions of the Lanham Act which, among other things, requires ownership of the mark by a single party as a prerequisite to registration.

In discussing the possibility and merits of national ownership of the Blue Cross emblem as distinguished from the local ownership by Plans, Mr. Livingston pointed out that under local ownership each Plan is now operating along the lines of a feudal state asserting certain ownership rights within its own territory without regard to the rights of Plans in cont_ guous and in many occasions, overlapping territories.

Thus, in states where two or more Plans are operating, the non-uniformity of the type of service being offered by such Plans does not make clear to subscribers that the services identified by "Blue Cross" are services emanating from a particular Plan. Under these circumstances, the only way in which the services could be distinguished is through the addition of the source of the services, such as: Cleveland Blue Cross distinguished from Cincinnati Blue Cross. Mr. Livingston emphasized that under such a "feudal system" maintenance of a uniform product by all Plans is impossible, and warned that uninterrupted this would lead to Blue Cross becoming "publici juris."

This feudalistic condition would lead to dissipation and eventual destruction of the mark because of its association with multiple origins and hence, the impossibility of pointing to a single origin in identifying the goodwill associated with the Blue Cross emblem. If "Blue Cross" should become a generic term simply to describe hospital prepayment plans, it would be available to anyone to use as long as a distinguishing source designation was used in connection with it; for example: "Jones" Blue Cross, "Acme" Blue Cross, "Continental" Blue Cross, or "New York" Blue Cross. Mr. Livingston's recommendation was that the Blue Cross emblem be nationally owned and that standards be established so that use of the symbol and and words by all Plans as licensees would be protected by the provisions of the law. This recommendation was uniformly supported by the Plans at the meeting.

Since that time many new imitators have entered the field. Almost every kind of "Blue" circle, square, star, seal, fund or other device has been used. In addition, the cross has been widely imitated, using assorted colors, etc., all for the purpose of confusing the public. That the problem is now acute for all Plans is apparent, and for this reason alone, Mr. Livingston's recommendation needs to be adopted. The difficulty hospitals experienced because of the multiplication of such imitators is equally acute. More and more people every day are buying the inadequate coverage offered by these imitators and being admitted to hospitals under the impression that they purchased Blue Cross protection. The hospitals rightly feel that Blue Cross should protect its mark so that their patients will no longer be misled. The

G-81217

CONFIDENTIAL
BCBSA00157152

American Hospital Association anticipated this situation, and upon the passage of the Lanham Act retained as special trade-mark counsel Mason, Fenwick and Lawrence, which Mr. Livingston represents.

As a result of the discussions which followed Mr. Livingston's presentation, general agreement was obtained that protection of the Blue Cross emblem and the words "Blue Cross" was a matter of primary concern to all Plans and that a practical method of achieving such protection was important.

Two areas of consideration on which agreement was not achieved included:

1. The matter of who should own the mark and under which circumstances the rights of ownership would be exercised; the possibility of establishing a trustee or owner under a revokable or irrevokable trust; the manner of transferring certain "local" rights of ownership to a national owner; and other questions bearing upon ownership.

2. The manner of licensing Plans to use the Blue Cross emblem; the character of standards to be established under which Plans might be licensed; the manner in which the standards would be enforced and how the owner or trustee would obtain effective cooperation from Plans in the administration of the standards.

In connection with the first item it was generally agreed that since the American Hospital Association for many years has sponsored Blue Cross, and all Blue Cross Plans or most of them are Type IV members of the American Hospital Association, ownership of the mark should rest with the American Hospital Association as a trustee, each Plan agreeing to transfer to it by assignment all rights, title and interest in the Blue Cross emblem and the words "Blue Cross" each now owns.

On the matter as to whether the trusteeship should be on a revokable or irrevokable basis, there was considerable difference of opinion. In this connection, it was observed that many Plans now own the rights to use "Blue Cross" in the area in which they operate because of prior use or registration of the mark and the words "Blue Cross" or "Blue Cross Plan" with state authorities under state laws. These Plans were understandably concerned about an "irrevokable" trusteeship because of the fear of losing what they now own.

The problem of developing a practical trusteeship and licensing arrangement coupled with the differences in trade-mark law by states, the changes brought about through the passage of the Lanham Act by the federal Congress and the complexities and subtleties of this branch of law of itself required special consideration by a committee with expert counsel advising them. Mr. McNary, Chairman of the Blue Cross Commission, appointed a committee for this purpose consisting of two representatives of the American Hospital Association and two representatives of the Blue Cross Plans. This committee has met a number of times and has received expert trade-mark legal advice from John Austin, Esq., of Philadelphia and Boynton Livingston, Esq., of Washington. Robert T. Sherman, Esq., counsel for the Blue Cross Commission, Albert V. Whitehall, Esq., Washington representative of the American Hospital Association, and William E. Lingelbach, Jr., Esq., counsel for the Blue Cross of Philadelphia, have also participated in some of the discussions.

Out of these meetings and discussions, the committee has worked out a suggested agreement between the American Hospital Association and each of the individual Blue

- 2 -

G-81218

CONFIDENTIAL

BCBSA00157153

Cross Plans, which agreement appoints the American Hospital Association to hold the Blue Cross emblem and the words "Blue Cross" as trustee for the Plans on a revokable basis, and provides for the automatic licensing of all Plans which meet the standards set forth in the agreement. In general, the report of the committee is embodied in the agreement.

The urgency of the situation has been commented on. But a word should also be added concerning the agreement itself. The committee met with legal counsel at least a half a dozen times for full day sessions each time. In eddition, counsel have worked many hours on the problem. A great number of changes were made as a result of each of the meetings. The point which the patent lawyers expecially and continuously emphasized was that the document must stand up under trade-mark law. The committee does not represent that this is the best and only agreement that could be submitted. It does want to caution all of the members of the Conference regarding suggested changes. The non-lawyer members of the committee have received a liberal education in trade-mark law, and respectfully submit that any changes be thoughtfully considered upon the basis that if the agreement will not stand up under trade-mark law it is worthless.

Our conclusions on some of the questions run along these lines:

1. It is in the interest of all Blue Cross Plans and the American Hospital Association that ownership rights to the Blue Cross emblem and the words "Blue Cross" be established in a central body and protected on a national basis through joint activity.

2. That since all parties now consider that each owns something of value in relation to the emblem and the words "Blue Cross," although each is also aware that his rights are tenuous until joined with the rights of others, it is reasonable that differences of judgment concerning the matter be adjusted in order that each may have a part of something of secure value under the protection afforded by federal law.

3. That while the degree of accommodation, one party to another or to all others, would vary in accordance with the judgment, goodwill, local laws, legal advice given to each, and other factors, chief emphasis should be directed toward modification of extreme positions adopted by the parties. In this phase of the discussion it became apparent that scme of the old questions about who should dominate - hospitals or Blue Cross - and the relative positions of the members of our family had to be considered.

The members of the committee have no doubt that Plans and hospitals are separate entities with a common purpose, yet both a part of the same family serving the public interest. On some of the questions as to relative powers, the committee concluded that practicalities should govern, not idealized notions. A practical problem has to be met with a practical answer. In this case it means that all rights to the mark and the words should be placed in a common pot after making certain that all of the parties' interests are properly protected.

Your committee recommends the adoption of the attached agreement between the American Hospital Association and each Blue Cross Plan, recognizing that it takes a moderate position on both the matters of standards and maintenance of local rights. The underlying principle of the agreement involves centralization of all rights to

G-81219

CONFIDENTIAL

BCBSA00157154

the mark for protection; yet by doing so does not in any way lessen vital local responsibility so necessary for continued growth and development of Plans.

The committee is aware that each Plan having rights is reluctant to sign such an agreement without assurance that a sufficient number of Plans will individually sign it to assure protection of the mark. For this reason the committee suggests that each Plan in submitting its signed agreement, accompany it with a letter saying that the agreement is submitted by the Plan subject to acceptance by other Plans in sufficient number to assure protection of such Plan's rights; the determination of such "sufficient number" to be made by the Commission, but in no event not unless 75% of the Plans in the United States representing 75% of enrollment in the United States have signed such agreements. A recitation of this condition in the letter of escrow instructions accompanying the signed agreement is deemed by the lawyers adequate protection for the individual Plan. (A sample form of such a letter is attached.)

The committee in developing the license agreement, which of necessity is applicable to Plans in the United States only, was not unmindful of the desirability of the development of a similar arrangement for the Plans outside of the United States. However, due to the technical nature of trade-mark law and the complexity of international laws this was not possible. The committee does recommend that a committee representative of these areas be appointed to work out a similar arrangement for their protection.

It is our understanding that the Commission has considered this agreement favorably but desires that an approval program more in accord with present standards be continued by the Plans. Under this suggestion only those Plans meeting standards such as those presently in effect, or as they may be modified, would be permitted to display the seal of the American Hospital Association, though all Plans meeting the standards included in the proposed agreement would be "licensed" by the American Hospital Association and entitled to display the Blue Cross without this seal.

Your committee has not considered this idea carefully and makes no recommendation concerning it. It is, however, of the opinion that such a program could be worked out upon agreement of all concerned.

Respectfully submitted,

Dwight Barnett, M.D., New York City
George Bugbee, A.H.A., Chicago
George Davis, Providence
E. A. van Steenwyk, Philadelphia

G-81220

CONFIDENTIAL


BCBSA00157155