# Exhibit 293

Feb 5 1936

## MINUTES OF MEETING OF BOARD OF TRUSTEES

A meeting of the members of the Board of Trustees of Hospital Service Corporation of Alabama was held in the Tutwiler Hotel in the City of Birmingham, Alabama, at twelve o'clock noon on the 5th day of February, 1936, after due notice thereof, and the following business was transacted, viz:

Dr. C. N. Carraway, of Birmingham, Alabama, was elected Chairman of the meeting, and Dr. Fench B. Craddock was elected as Secretary of the meeting. The roll call followed and showed those present to be:

Dr. C. N. Carraway, representing Norwood Hospital,
Dr. A. J. Gay, representing Knights Sanitorium,
Dr. A. W. Ralls, representing Forrest General Hospital,
Dr. Marcus Skinner, representing King Memorial Hospital,
Dr. A. C. Jackson, representing Walker County Hospital,
Dr. F. L. Chenault, representing Benevolent Society Hospital,
Dr. D. H. Doherty (through Dr. Skinner as proxy), representing Vaughan Memorial Hospital,
Dr. S. D. Suggs, representing Montgomery Methodist Hospital,
Mrs. Gladys Hicks Graham, representing Citizens Hospital,
Miss Alma Clyde Foust, representing Colbert County Hospital,
Dr. French H. Craddock, representing Sylacauga Infirmary.

The Chairman thereupon declared a quorum present and the meeting opened for the transaction of business.

It was then reported at the meeting that Mrs. Bertha Golightly, representing the Garner Hospital at Anniston, had resigned, and that the Hospital had designated Mr. H. S Miller as its representative in lieu of Mrs. Golightly, whereupon a motion was made and seconded that Mr. H. S. Miller be elected a member of the Board of Trustees to fill the vacancy caused by

the resignation of Mrs. Golightly, which motion, upon being put to a vote, was unanimously carried.

It was further reported at the meeting that Dr. W. W. Burns, representing the Selma Baptist Hospital at Selma, Alabama, had resigned, and that the Hospital had designated Dr. William Harper as its representative in lieu of Dr. Burns, whereupon a motion was made and seconded that Dr. William Harper be elected a member of the Board of Trustees to fill the vacancy caused by the resignation of Dr. Burns, which motion, upon being put to a vote, was unanimously carried.

Both Mr. Miller and Dr. Harper were present and took part in the meeting as members of the Board of Trustees following their election as above recited.

Dr. Carraway then reported that he had filed the Certificate of Incorporation of Hospital Service Corporation of Alabama for record in the Probate Office of Jefferson County, Alabama, and that same had been duly accepted by said office, following which report a motion was made and seconded and unanimously passed that Dr. Carraway's report be approved, and that the Certificate of Incorporation, as so filed by Dr. Carraway, be accepted as the Charter of the Corporation.

The Chairman then stated that all legal papers, including By-Laws, Alabama Inter-Hospital Service Contract and certificates to be issued by the Corporation to the public had been prepared

CONFIDENTIAL

BCBSAL_0000041071

by the corporation's attorney who was present to read them to the meeting so that the meeting could take such action as it might deem proper on the forms as drawn, following which it was moved and seconded, and duly passed that each of these instruments be read paragraph by paragraph to those present. Mr. Lange then proceeded with the reading of the By-Laws as drafted.

After the reading of Section 5 of the By-Laws, a motion was made and duly seconded, and unanimously carried, that said Section 5 be changed so as to read as follows:

"SECTION 5.

"An Executive Committee consisting of the President, the Secretary, and three other members of the Board of Trustees, shall be elected by the Board of Trustees upon the organization of the corporation and at each annual meeting thereafter to serve until their successors are elected and qualified. The Executive Committee shall be vested with all the powers of the Board of Trustees in the interim of the meetings of the Board of Trustees. Its actions shall be binding only until the next meeting of the Board of Trustees unless a report of its action be made to the Board of Trustees at such next meeting and the Board then and there ratify, adopt, and confirm such act."

After the reading of Section 6, it was duly moved, seconded and unanimously carried, that said Section 6 be changed to read as follows:

CONFIDENTIAL

BCBSAL_0000041072

-4-

## "SECTION 6.

"There shall be an annual meeting of the members of the Board of Trustees on the second Monday in February of each year in the City of Birmingham, Alabama, or at such other time and place as for cause the Executive Committee may determine. Other regular meetings, monthly, quarterly or otherwise may be held as approved by resolution of this Board. Special meetings of the Board of Trustees may be called at any time upon the written request of the Chairman, or upon the written request of any two members of the Board, and written notices of all such meetings, regular or special, shall be sent by the Secretary, or other party designated by the Chairman, to each member of the Board of Trustees at least four days in advance of said proposed meeting."

No other change in the By-Laws, as read, was suggested, and after the reading of the By-Laws was finished it was moved by Dr. Ralls, and seconded by Dr. Craddock, that the By-Laws as prepared and read by the corporation's attorney and as changed by motions hereinbefore noted, be adopted as the By-Laws of this Corporation, which motion, after some discussion and upon being put to a vote, was unanimously carried.

Inasmuch as Section 11 of the By-Laws as adopted provides for a membership fee and an assessment based upon bed capacity of each hospital, it was suggested by Dr. Jackson that the members of the Board present signify at that time the bed capacity of each of their respective hospitals, which

CONFIDENTIAL                                                                                       BCBSAL_0000041073

suggestion was carried out and resulted in the following report from the respective hospitals:

| Hospital | | Bed Capacity |
|---|---|---|
| Norwood Hospital, | Bed Capacity | 150, |
| Forrest General Hospital, | " " | 50, |
| The Knight Sanitorium, | " " | 20, |
| Colbert County Hospital, | " " | 75, |
| Sylacauga Infirmary, | " " | 20, |
| Selma Baptist Hospital, | " " | 40, |
| King Memorial Hospital, | " " | 40, |
| Vaughan Memorial Hospital, | " " | 40, |
| Garner Hospital, | " " | 70, |
| Citizens Hospital, | " " | 25, |
| Walker County Hospital, | " " | 45, |
| Benevolent Society Hospital, | " " | 25, |
| Montgomery Methodist Hospital, | " " | 40, |
| Pell City Infirmary, | " " | 20, (estimated |
| Gibson Hospital, | " " | 35,   " |
| Eliza Coffee Memorial Hospital, | " " | 45, |

(not yet a member).

Mr. Lange then proceeded with the reading, paragraph by paragraph, of the Alabama Inter-Hospital Service contract. After the reading of Article III of said contract it was moved, seconded and unanimously carried, that Paragraph 4 be changed to read as follows, viz:

"4. The corporation may, in addition to the above mentioned types of contracts, issue such other contracts as may be thought advisable and approved by the Board of Trustees of Hospital Service Corporation of Alabama."

After the reading of Article IV of said agreement, it was moved, seconded and unanimously carried, that said Article IV be changed to read as follows, viz:

"ARTICLE IV.
"The Certificate Holder.

CONFIDENTIAL                                              BCBSAL_0000041074

-6-

"1. The Corporation is authorized to enter into contracts for hospital service with any group composed of not fewer than ten (10) persons, all of whom are residents of the State of Alabama, and regularly employed by the same person, firm or corporation, excluding any person whose employment is casual or not in the usual course of trade, profession or occupation of such employer.

"2. The Corporation shall have the right to arrange with the employer of any corporation to collect the fees due from the employees of such group and to remit same to the corporation, and to allow such employer remuneration therefor in an amount not in excess of a sum equal to ten (10) per cent of such fees.

"3. The Corporation shall have the right at any meeting of its Board of Trustees, by the unanimous vote of those present, after written notice of intention to consider such matter, to make such variations in the regulations contained in this Article for group admission as such Board may consider to the best interest of the Participating Hospitals and the Corporation.

"4. The Corporation, with the approval of two-thirds or more of the representatives of the Participating Hospitals, is also authorized to enter into contracts for hospital service with persons other than those eligible under the preceding paragraph, either as individuals or as members of other groups, upon and subject to such terms, conditions and limitations as it shall deem consistent with the best interests of the program of group hospitalization as herein contained. When two-thirds of the representatives of the Participating Hospitals have approved such contract, the Service Association shall notify all of the Participating Hospitals thereof in writing, after which a period of ninety-five days shall be permitted to elapse, unless waived by all of the representatives of the Participating Hospitals, before the Corporation shall enter into any such contract."

After the reading of Article VII of said agreement, motion was made, seconded and unanimously carried, that the last sentence of said Article be changed to read as follows:

CONFIDENTIAL
BCBSAL_0000041075

- 7 -

> "No such applicant Hospital shall become a Participating Hospital, as herein contemplated, until it shall have executed this contract, or a counterpart thereof, and paid all those amounts required by the By-Laws of this Corporation, and until a signed copy of same shall have been filed with the Superintendent of Insurance."

After the reading of Paragraph 1 of Article VIII, a motion was made, seconded and unanimously carried, to insert the month of December, 1936, in the blank provided therefor.

After the reading of Paragraphs 1 and 2 of Article X, it was moved, seconded and unanimously carried, to insert the month of December, 1936, in the space provided therefor in each of said paragraphs.

After the reading of said Inter-Hospital Service Contract had been finished, it was moved by Dr. Chenault and seconded by Dr. Gay, that said Alabama Inter-Hospital Service Contract, as read and as changed as hereinbefore noted, be in all things approved as the contract to be executed by and between this corporation and the Participating Hospitals, which motion upon being put to a vote was unanimously carried.

The meeting then took up the reading of the Hospital Service Contracts to be issued to certificate holders. After the reading of the paragraph headed "FEES AND PAYMENTS" in the Type "A" Contract, and after considerable discussion, a motion was made, seconded and unanimously carried to change said paragraph so as to read as follows:

> "The fees under this contract are at the rate of seventy-five cents per month, ($9.00 per year) payable $4.50 in advance on the delivery of this contract to the certificate holder, and seventy-five cents per month for six months beginning with the seventh

CONFIDENTIAL
BCBSAL_0000041076

"month hereunder, said monthly payments being due on or before the 5th day of each of said months. All fees due hereunder may be paid at the rate of seventy-five cents per month in advance on or before the 5th day of each month, provided the certificate holder and his employer agree that said payments may be deducted from the certificate holder's salary or wages and remitted direct to the Corporation by the employer. Failure of the certificate holder (or his employer as the case may be) to make any payment within ten (10) days after it is due, automatically terminates all rights of said certificate holder hereunder."

A motion was also made, seconded and unanimously carried that the same change be made in Type "B" Contract in the paragraph under "FEES AND PAYMENTS" with the exception, of course, of the changes in amounts which should remain as now written in said Type "B" Contract.

There was some considerable additional discussion regarding certain possible changes in the Service Contracts, following which a motion was made and duly seconded that the Executive Committee to be elected at this meeting be hereby authorized to make such changes in the two types of Service Contracts as to said Executive Committee may seem desirable, and that said Service Contracts as read at this meeting and as so changed (if any changes are made) be hereby approved as the two types of Service Contracts to be issued by this corporation to certificate holders, which motion, upon being put to a vote, was unanimously carried.

The Chairman then declared the next order of business was the election of officers and an Executive Committee, following

CONFIDENTIAL  BCBSAL_0000041077

which Dr. C. N. Carraway was unanimously elected as President of the corporation, Dr. French H. Craddock was unanimously elected as Vice-President, Dr. A. C. Jackson was unanimously elected Secretary-Treasurer, and Dr. S. D. Suggs, Dr. Marcus Skinner and Dr. F. L. Chenault, were elected as additional members to compose an Executive Committee with Dr. Carraway and Dr. Jackson.

By motion, duly made, seconded and unanimously carried, the First National Bank of Jasper, Alabama, and/or The First National Bank of Birmingham, Alabama, were duly designated as legal depositories for the Corporation.

Upon motion duly made, seconded and unanimously carried, the bond of the Treasurer to be executed by a surety company was fixed at $5000.00, with the provision that the premium therefor be paid by the corporation and that the Executive Committee be authorized, if it deems it necessary or proper, to increase the amount of said bond.

Mrs. Gertrude T. Haynes was present at the meeting representing the Eliza Coffee Memorial Hospital, at Florence, Alabama, and said that she was authorized by said Hospital to seek membership in the Corporation, following which it was moved by Dr. Jackson, and seconded by Dr. Chenault, that the President of this corporation be authorized to take and put in motion the necessary steps, including the amendment of the Corporation's Charter, to permit the said Hospital to become a

CONFIDENTIAL

BCBSAL_0000041078

-10-

member of this Corporation, which motion, upon being put to a vote, was unanimously carried.

Following the above motion it was also moved, seconded and unanimously carried, that the President of this Corporation be authorized to take the necessary steps to elect to membership any hospital which qualifies therefor in accordance with the laws of this State.

After a discussion as to the sales of certificates, a motion was duly made by Dr. Harper, seconded by Dr. Craddock, and unanimously carried, that the Executive Committee be authorized to form a tentative set-up covering a method of sales and the employment, if desirable, of an Executive Director.

Some discussion was had as to submitting all papers and forms to the Insurance Commissioner for his approval, following which a motion was made by Dr. Chenault, and seconded by Dr. Gay, that the Board of Trustees be permitted to approve or ratify by letter of a majority of the members of the Board of Trustees any changes in the papers and forms of the corporation which may be insisted upon by the Insurance Department of the State, which motion, upon being put to a vote, was unanimously carried.

There being no further business to come before the meeting the same was duly adjourned.

_____
Secretary.