FILED
2021 Jun-21  PM 05:19
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **IN RE:  BLUE CROSS BLUE SHIELD ANTITRUST LITIGATION (MDL No. 2406)** | **Master File No. 2:13-CV-20000-RDP** <br><br> **This document relates to Provider-Track cases.** |

**DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON (I) ALL CLAIMS ADVANCED BY NON-GENERAL ACUTE CARE HOSPITAL PROVIDERS AND (II) ANY CLAIMS BASED ON BLUE SYSTEM RULES OTHER THAN ESAs OR BLUECARD FOR FAILURE TO DEMONSTRATE INJURY OR DAMAGES**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... ii

INDEX OF EXHIBITS ............................................................................................ iv

CITATION KEY ..................................................................................................... v

PRELIMINARY STATEMENT .............................................................................. 1

STATEMENT OF UNDISPUTED RELEVANT MATERIAL FACTS ................... 1

LEGAL STANDARD .............................................................................................. 4

ARGUMENT ........................................................................................................... 5

     I.     Providers Have No Proof of Injury or Damages to the Non-Hospital
           Plaintiffs. ................................................................................................ 6

     II.    Providers Cannot Pursue Any Claim Based on NBE or Any Blue System
           Rule Other than ESAs or BlueCard. ...................................................... 9

CONCLUSION ........................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alabama v. Blue Bird Body Co.*,
573 F.2d 309 (5th Cir. 1978) ............................................................................................... 5

*Am. Contractors Supply, LLC v. HD Supply Constr. Supply, Ltd.*,
989 F.3d 1224 (11th Cir. 2021) ............................................................................................ 5

*Amey, Inc. v. Gulf Abstract & Title, Inc.*,
758 F.2d 1486 (11th Cir. 1985) ............................................................................................ 7

*Bigelow v. RKO Radio Pictures*,
327 U.S. 251 (1946) .............................................................................................................. 5

*Cable Holdings of Ga., Inc. v. Home Video, Inc.*,
825 F.2d 1559 (11th Cir. 1987) ............................................................................................ 5

*Cash & Henderson Drugs, Inc. v. Johnson & Johnson*,
799 F.3d 202 (2d Cir. 2015) ................................................................................................. 6

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) ................................................................................................................ 9

*In re Graphics Processing Units Antitrust Litig.*,
253 F.R.D. 478 (N.D. Cal. 2008) ...................................................................................... 6, 7

*Jack Walters & Sons Corp. v. Morton Bldg., Inc.*,
737 F.2d 698 (7th Cir. 1984) ............................................................................................. 10

*Kloth v. Microsoft Corp.*,
444 F.3d 312 (4th Cir. 2006) ............................................................................................... 7

*Licari Family Chiropractic Inc. v. eClinical Works, LLC*,
No. 8:16-cv-3461, 2019 WL 2491922 (M.D. Fla. Feb. 26, 2019) ....................................... 1

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) .......................................................................................................... 4, 5

*McClure v. Undersea Indus., Inc.*,
671 F.2d 1287 (11th Cir. 1982) ....................................................................................... 5, 8, 9

*Merit Motors, Inc. v. Chrysler Corp.*,
569 F.2d 666 (D.C. Cir. 1977) ............................................................................................. 6

*Midwestern Waffles, Inc. v. Waffle House, Inc.*,
734 F.2d 705 (11th Cir. 1984) ..................................................................................... 5, 8, 9, 10

*Pesci v. Budz*,
   935 F.3d 1159 (11th Cir. 2019)...................................................................5

*Procaps S.A. v. Patheon Inc.*,
   141 F. Supp. 3d 1246 (S.D. Fla. 2015),
   *aff'd*, 845 F.3d 1072 (11th Cir. 2016) ...................................................7

*Somers v. Apple, Inc.*,
   729 F.3d 953 (9th Cir. 2013) ...................................................................7

*Van Dyk Rsch. Corp. v. Xerox Corp.*,
   631 F.2d 251 (3d Cir. 1980) ...................................................................6

*Zenith Radio Corp. v. Hazeltine Rsch., Inc.*,
   395 U.S. 100 (1969) ...................................................................5, 6

## Statutes & Rules

Clayton Act § 16, 15 U.S.C. § 26 ...................................................................5

Fed. R. Civ. P. 56 ...................................................................4

**INDEX OF EXHIBITS**

| Exhibit No. | Description |
|:---:|---|
| 1 | 1/10/2021 Deposition Transcript of Deborah Haas-Wilson (excerpts) |
| 2 | 5/9/2019 Deposition Transcript of Daniel J. Slottje (excerpts) |
| 3 | 5/10/2019 Deposition Transcript of Deborah Haas-Wilson (excerpts) |

**CITATION KEY**

| Citation | Reference |
|---|---|
| *Caldwell* Doc(s). ___ | Citations to Documents filed on the Docket in *Caldwell v. Blue Cross and Blue Shield of Alabama et al.* (2:19-CV-00565-RDP) |
| Compl. | Citations to the Consolidated Fourth Amended Provider Complaint (Doc. 1083) |
| Doc(s). ___ | Citations to Documents filed on the Docket in MDL 2406 (2:13-CV-20000-RDP) |
| Ex. ___ | Citations to Defendants' Exhibits identified in the Evidentiary Submission accompanying this Motion |
| Facts | Citations to this Brief's Statement of Undisputed Relevant Material Facts |
| SoR Br. | Citations to Defendants' Opening Brief on the Antitrust Standard of Review Applicable to Provider Plaintiffs' Section 1 Claims Pursuant to Federal Rule of Civil Procedure 56 (Doc. 2728) |

# PRELIMINARY STATEMENT[1]

Proof of economic injury is the *sine qua non* for establishing liability based on an antitrust conspiracy.  This obligates a plaintiff to both demonstrate that it was harmed by the defendant's actions and put forward a reliable estimate of the amount of damage done.  In this case, a number of Provider Plaintiffs' claims fail to satisfy these basic requirements of antitrust law.  Judgment on those claims must therefore be entered in Defendants' favor.

*First*, Providers' empirical analysis of harm and damages is limited to a subset of the plaintiffs in this case:  general acute care hospitals.  For all other plaintiffs, Providers have put forward no method for assessing harm or damages whatsoever.  Claims brought by these other plaintiffs therefore cannot proceed.  (*See infra* Section I.)

*Second*, Providers' claims seek relief based on two discrete features of the Blue System:  exclusive service areas ("ESAs") and BlueCard.  Indeed, Providers' damages model is expressly based solely on those two rules, and does not estimate damages for the now-eliminated National Best Efforts ("NBE") rule or for any other Blue System rule.  As a result, Providers cannot maintain any claims to the extent they are based on any rule other than ESAs or BlueCard.  (*See infra* Section II.)

## STATEMENT OF UNDISPUTED RELEVANT MATERIAL FACTS

1.      Providers' empirical assessment of injury and damages is found in the models prepared by Dr. Deborah Haas-Wilson and Dr. Daniel J. Slottje.  (*See* Doc. 2454-6 (2019 Haas-Wilson Rep.) ¶ 16; Ex. 1 (Haas-Wilson Dep.) at 297:8–10 ("[W]hat I looked at was harm.  It was my colleague, Professor Slottje, that went on and did damages."); Doc. 2454-14 (2019

---

[1] Defendants submit this motion without prejudice to their ongoing assertion of protection under the rule against one-way intervention.  (*See, e.g.*, Doc. 2379 at 5–7; Doc. 2717 at 1 n.1); *see also Licari Family Chiropractic Inc. v. eClinical Works, LLC*, No. 8:16-cv-3461, 2019 WL 2491922, at *1 (M.D. Fla. Feb. 26, 2019).

Slottje Rep.) ¶ 9; *see also* Doc. 2478-2 (Frech Dep.) at 22 (Tr. at 68:5–20) ("I didn't numerically

implement that quantitative measure [of harm], . . . the other two experts did that.").)

       2.    Dr. Haas-Wilson supplies Providers' analysis of the economic impact of

Defendants' alleged conduct on Providers' business. (Doc. 2454-6 (2019 Haas-Wilson Rep.)

¶¶ 16, 21.) At a high level, Dr. Haas-Wilson's conclusion is that, absent the ESA and BlueCard

rules, out-of-area Plans would have entered Alabama and begun selling insurance or contracting

with providers (or both) on a Blue-branded basis. (*Id.* ¶ 21.) In turn, Dr. Haas-Wilson says that

this would have reduced the bargaining power held by Blue Cross and Blue Shield of Alabama

("BCBS-AL"), resulting in higher reimbursement rates for in-state healthcare providers. (*Id.*)

       3.    Dr. Haas-Wilson purports to prove up her theory through seven

hypothetical scenarios. (*Id.* ¶¶ 470–72, 475.) In each scenario, Dr. Haas-Wilson imagines that

some combination of Blue System rules are declared illegal. (*See id.* at ex. IX.1) She then

identifies what she believes the impact of eliminating that combination of rules would be on

Providers. (*See id.* ¶¶ 472, 475–76, 491–542.)

       4.    There are at least two important qualifications to this model. *First*,

Dr. Haas-Wilson limited her quantitative assessment of harm to general acute care hospitals.

(*See id.* ¶¶ 469–70, 488 & n.660; *see also* Doc. 2564-67 (Haas-Wilson Dep.) at 3 (Tr. at 62:16–

19).) In fact, her existing econometric injury model cannot be applied to other types of

healthcare providers because of "data limitations." (Doc. 2564-67 (Haas-Wilson Dep.) at 6–7

(Tr. at 65:3–66:19).) Providers' other economic expert, Professor Frech, agreed that Providers

"don't really have an empirical analysis" to determine "whether the economic theory that [Dr.

Haas-Wilson is] discussing played out" for plaintiffs other than general acute care hospitals.

(Doc. 2564-68 (Frech Dep.) at 13 (Tr. at 113:1–12); Doc. 2478-2 (Frech Dep.) at 41 (Tr.

at 153:5–17) (testifying that "[n]o one has tried to quantify" "the harm that the nonacute care hospital classes might have suffered"); *see also* Doc. 2454-3 (2019 Frech Rep.) ¶ 408 ("There is no econometric model for Non-Acute Hospital Provider 23(b)(3) and 23(c)(4) Class.").)

5.    Notably, several of the named Provider Plaintiffs in the Streamlined Actions are not general acute care hospitals:  Jerry L. Conway, D.C.; Charles H. Clark III, M.D.; North Jackson Pharmacy, Inc.; Robert W. Nesbitt, M.D.; Janine Nesin, P.T., D.P.T., O.C.S.; Joseph D. Ackerson, PhD; Luis R. Pernia, M.D.; and Matthew Caldwell, M.D. (together, the "Non-Hospital Plaintiffs").  (Compl. ¶¶ 27–28, 31, 37–40; *Caldwell* Doc. 1 ¶ 27.)

6.    *Second*, the only Blue System rules for which Dr. Haas-Wilson has attempted to quantify economic impact are the ESA rules in the Blue license agreements (both as those rules relate to provider contracting and subscribers) and the BlueCard program.[2]  (*See* Doc. 2454-6 (2019 Haas-Wilson Rep.) ¶ 474; *see also* SoR Br. at 36–37.)

7.    Providers have not attempted to quantify the economic impact to their business, if any, from any other feature of the Blue System, including the now-eliminated NBE rule.  (*See* Doc. 2454-6 (2019 Haas-Wilson Rep.) ¶¶ 474, 548–49 ("I do not quantify the impact of these Output Restrictions [on unbranded business] at this time[.]"); Doc. 2564-67 (Haas-Wilson Dep.) at 32–34 (Tr. at 305:2–307:6) (admitting that Providers "have not quantified damage based on the output restriction on . . . unbranded business"); Ex. 1 (Haas-Wilson Dep.) at 63:11–64:16 (testifying that while she has "thought a lot about" NBE, she "ha[s] not done an empirical model" because "there would be no way to identify the effect"); Doc. 2735-22 (Frech

---

[2] Rather than use the label "ESAs," Dr. Haas-Wilson refers to "Market Allocation Agreements on Contracting" and "Market Allocation Agreements on Selling."  But she acknowledges that those agreements are "enshrined in the Blue License Agreements."  (Doc. 2454-6 (2019 Haas-Wilson Rep.) ¶¶ 78 & n.169, 91 & n.191.)  Likewise, though Dr. Haas-Wilson uses the term "Price Fixing Agreements," that is a reference to the BlueCard program.  (*Id.* ¶ 77.)

Dep.) at 3 (Tr. at 152:18–23) (acknowledging that he performed "no empirical analysis to determine whether a provider suffered common harm related to the Best Efforts rules"); Doc. 2735-21 (Frech Dep.) at 6 (Tr. at 214:11–17) (same).)

8.    Providers' damages expert, Dr. Slottje, took Dr. Haas-Wilson's assessment of harm in those seven hypothetical scenarios and extrapolated from each an estimate of purported damages.[3]  (*See* Doc. 2454-14 (2019 Slottje Rep.) ¶¶ 50, 80, 88; Doc. 2564-69 (Slottje Dep.) at 3 (Tr. at 124:22–24) (explaining that his "model takes the harm estimates from [Dr. Haas-Wilson's] model and multiplies them by the actual allowed amounts and determines damages"); *see also* Doc. 2473-1 (Frech Dep.) at 3 (Tr. at 46:1–9) ("If you take what Dr. Slottje did, . . . he basically did some mathematical functions on what Dr. Haas-Wilson had done.").)

9.    As a result, Dr. Slottje's damages calculations share the same limitations as Dr. Haas-Wilson's model.  (*See, e.g.*, Ex. 2 (Slottje Dep.) at 25:7–20 (acknowledging that his calculations "exclusively relate to the hundred and six [general acute care] hospitals" in Alabama; Doc. 2454-14 (2019 Slottje Rep.) ¶¶ 7, 9, 35(a), 91 (same); *see also* Doc. 2735-26 (Slottje Dep.) at 3–5 (Tr. at 48:23–50:3) ("I don't think my . . . damages are affected by [NBE] one way or the other, except that it's one of the allegations.").)

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 requires summary judgment when there is no genuine dispute as to any material fact and the moving party is entitled to prevail as a matter of law.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Though the Court must "view the evidence in the light most favorable to the non-moving party,"

---

[3] This single damages model accounts for both Providers' Section 1 and Section 2 claims.  (*See* Doc. 2454-14 (2019 Slottje Rep.) ¶ 84 ("Economic damages from the Blues' alleged monopsony violations are not independent of the economic damages from the other alleged violations of the antitrust laws, and no additional economic damages (if any) for the alleged monopsony violations are calculated.").)

*Am. Contractors Supply, LLC v. HD Supply Constr. Supply, Ltd.*, 989 F.3d 1224, 1232 (11th

Cir. 2021), neither "the mere existence of *some* alleged factual dispute between the parties,"

*Pesci v. Budz*, 935 F.3d 1159, 1165 (11th Cir. 2019) (citation omitted), nor the presence of a

"metaphysical doubt as to the material facts," *Matsushita Elec.*, 475 U.S. at 586, is sufficient to

defeat a motion for summary judgment.

## ARGUMENT

To recover treble damages under the Clayton Act, a private antitrust plaintiff must

do more than prove a violation of the antitrust laws.  *See Alabama v. Blue Bird Body Co.*, 573

F.2d 309, 317 (5th Cir. 1978).  "[T]he plaintiff must [also] show economic injury to itself."

*Midwestern Waffles, Inc. v. Waffle House, Inc.*, 734 F.2d 705, 723 n.3 (11th Cir. 1984)

(collecting cases).  This means the plaintiff must prove that it was injured by the defendant's

actions (or the "fact of damage"), *McClure v. Undersea Indus., Inc.*, 671 F.2d 1287, 1289 (11th

Cir. 1982), and supply a reasonable estimate of the amount of damage done, *id.*; *see also Cable*

*Holdings of Ga., Inc. v. Home Video, Inc.*, 825 F.2d 1559, 1562 (11th Cir. 1987); *Midwestern*

*Waffles*, 734 F.2d at 723 n.3 ("To show injury means that the plaintiff must be able to

demonstrate that it suffered economic damages which are quantifiable.").  Critically, neither of

these elements may be proven through speculation or guesswork—there must be a reliable

foundation in the record for each.  *See McClure*, 671 F.2d at 1289 (injury cannot be proven

through "speculation"); *see also Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 264–65 (1946)

(damages estimate cannot be based on "guesswork").

A claim for injunctive relief under Section 16 of the Clayton Act has somewhat

different requirements.  Most notably, a plaintiff may secure an injunction without proving that it

has been injured.  *See Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100, 130 (1969).

Still, the plaintiff must demonstrate "a significant threat of injury from an impending violation of

the antitrust laws or from a contemporary violation likely to continue or recur" to be entitled to relief. *Id.* And in a case such as this one, where the challenged conduct has been ongoing for decades, the absence of past injury makes it unlikely that the same conduct will injure the plaintiff going forward. *See Cash & Henderson Drugs, Inc. v. Johnson & Johnson*, 799 F.3d 202, 215 (2d Cir. 2015) ("Here, plaintiffs cannot show a reasonable probability of future injury because, although they have alleged injury to competition over an extended period of time, the allegations fail for lack of evidence. That failure militates strongly against injunctive relief."); *Van Dyk Rsch. Corp. v. Xerox Corp.*, 631 F.2d 251, 255 n.2 (3d Cir. 1980); *Merit Motors, Inc. v. Chrysler Corp.*, 569 F.2d 666, 671 n.14 (D.C. Cir. 1977).

## I.     PROVIDERS HAVE NO PROOF OF INJURY OR DAMAGES TO THE NON-HOSPITAL PLAINTIFFS.

Judgment is required on each of the Non-Hospital Plaintiffs' claims because Providers have put forward no proof of injury or damages as to these plaintiffs.

Dr. Haas-Wilson stated explicitly that her quantitative analysis is limited to general acute care hospitals. (*See* Facts ¶ 4.) And even if Dr. Haas-Wilson wanted to expand her econometric impact model to cover additional plaintiffs, that would not be possible because of "data limitations." (*Id.*) These admissions were echoed by Providers' other economic expert. (*See id.*) As a result, Providers have supplied no quantitative assessment of the supposed price-related impact on the Non-Hospital Plaintiffs, nor identified any methodology for establishing such impact whatsoever. *Compare In re Graphics Processing Units Antitrust Litig.*, 253 F.R.D. 478, 496 (N.D. Cal. 2008) ("Dr. Teece may not meet his burden by simply stating that 'economic theory' dictates that prices for retail and wholesale purchases generally go up together."), *with* (Doc. 2564-68 (Frech Dep.) at 13 (Tr. at 113:13–20) (testifying that Providers' proof of price-related harm to Non-Hospital Plaintiffs is based on "economic theory")).

6

Providers therefore fall back to arguing that these plaintiffs were injured through a tenuous chain of potential causal effects resulting in a "likely" reduction in choice among insurers.  (*See, e.g.*, Doc. 2454-6 (2019 Haas-Wilson Rep.) ¶ 340; Ex. 3 (Haas-Wilson Dep.) at 203:23–204:5 ("So the other healthcare providers, other than general acute care hospitals, also suffered the harm of less choice, the nonprice harm.").)  But this abstract, hypothetical and unquantified "nonprice harm" is insufficient to carry Providers' burden.

Conjecture regarding a possible loss of choice alone does not constitute cognizable injury within the meaning of the antitrust laws.  *See Amey, Inc. v. Gulf Abstract & Title, Inc.*, 758 F.2d 1486, 1499, 1501 (11th Cir. 1985) (rejecting "lack of choice" as a form of antitrust injury, and finding that "[t]he only injury alleged . . . which is cognizable under the antitrust laws is that of the payment of the inflated fee"); *Somers v. Apple, Inc.*, 729 F.3d 953, 966 (9th Cir. 2013) ("[L]imitation of consumer choice, in itself, does not amount to 'antitrust injury.'"); *Graphics Processing Units*, 253 F.R.D. at 507 (rejecting the notion that "lower quality, less choice, and reduced innovation" alone constitute "cognizable antitrust injury" (citation omitted)); *see also Kloth v. Microsoft Corp.*, 444 F.3d 312, 318, 324 (4th Cir. 2006) (rejecting the assertion that Microsoft had caused the plaintiffs cognizable injury by "denying them the benefit of new and superior technolog[y]" because it would be "speculative to determine the relevant benefits and detriments that non-Microsoft products would have brought to the market and the relative monetary value . . . to a diffuse population of end users" (citation omitted)).  And even where loss of choice is used as indirect evidence of adverse market effects, the plaintiff is still required to introduce "demonstrative, empirical evidence of a substantial effect on consumers and an impact on the market."  *Procaps S.A. v. Patheon Inc.*, 141 F. Supp. 3d 1246, 1276 (S.D. Fla. 2015), *aff'd*, 845 F.3d 1072 (11th Cir. 2016).  No such empirical

evidence exists here. (*See, e.g.*, Ex. 3 (Haas-Wilson Dep.) at 204:6–208:13 (acknowledging that her "opinion on nonprice harm is based on economic theory, the economic literature," rather than an empirical study of the facts of this particular case).)

Without any cognizable antitrust injury, Non-Hospital Plaintiffs cannot pursue their claims further. *See McClure*, 671 F.2d at 1289 (noting that "'injury is the sine qua non for stating a cause of action' based on an antitrust conspiracy" (citation omitted)); *see also Midwestern Waffles*, 734 F.2d at 723 n.3 (explaining that "the plaintiff must show economic injury to itself"). That alone merits judgment in Defendants' favor.

But even if Providers' generic, untested theory about harm were sufficient to demonstrate a cognizable injury to the Non-Hospital Plaintiffs, there is yet another fatal flaw in these claims: it is undisputed that Providers have put forward no estimate of the amount of damages that the Non-Hospital Plaintiffs have allegedly suffered. Dr. Slottje testified that his damages calculations "exclusively relate to the hundred and six [general acute care] hospitals" in Alabama, and that he did not "assess damages for any other healthcare providers[.]" (Ex. 2 (Slottje Dep.) at 25:7–20; *see also* Facts ¶ 9.) And Dr. Slottje made clear that calculating damages for these Non-Hospital Plaintiffs would be no simple matter—it would require an entirely new analysis, separate from what he has already performed. (*See* Doc. 2454-14 (2019 Slottje Rep.) ¶ 91 ("To the extent that any of the Providers that are not part of the putative Acute Care Hospital Provider 23(b)(3) Class have economic damages from any of the alleged conduct in this litigation, then a separate analysis of economic damages for Providers that are not part of the putative Acute Care Hospital Provider 23(b)(3) Class is necessary.").) So, at the very least, these plaintiffs have no basis on the existing record on which to recover damages.

Because the Non-Hospital Plaintiffs can only speculate about the harm and damages (if any) that they have suffered, their claims cannot proceed to a jury. *See Midwestern Waffles*, 734 F.2d at 723 n.3 ("[P]laintiff must be able to demonstrate that it suffered economic damages which are quantifiable."). Judgment should therefore be entered in favor of Defendants and against each of these Plaintiffs.

## II.    PROVIDERS CANNOT PURSUE ANY CLAIM BASED ON NBE OR ANY BLUE SYSTEM RULE OTHER THAN ESAs OR BLUECARD.

Judgment is likewise required to the extent Providers seek to rely on NBE or any Blue System rule other than ESAs or BlueCard in connection with their claims.

In Defendants' May 21, 2021 standard of review brief, we explain that Providers do not have a claim challenging NBE. (SoR Br. at 35–36.) Indeed, "[i]n their 695-paragraph Complaint, Providers mention NBE only a handful of times, and not a single time in the counts seeking injunctive relief and damages." (*Id.* at 35.) And Providers are clear that the alleged restraints they are challenging were put in place decades before NBE was implemented. (*Id.* at 36.)

Even if Providers could pursue claims based on NBE, moreover, such claims would fail as a matter of law. Providers have neither quantified damages from NBE, nor put forth any evidence that they were actually injured by the rule while it was in effect. (*Id.* at 36–39; *see also* Facts ¶¶ 6–9.) The same is true for every Blue System rule other than ESAs and BlueCard. (*See* Facts ¶¶ 6–9.) As a result, judgment is required on any claim Providers pursue that depends in any part on the effect of these other Blue System rules. *See Comcast Corp. v. Behrend*, 569 U.S. 27, 35–37 (2013) ("[A]ny model supporting a 'plaintiff's damages case must be consistent with its liability case, particularly with respect to the alleged anticompetitive effect of the violation.'" (citation omitted)); *McClure*, 671 F.2d at 1289 ("[T]he plaintiff must prove,

'as a matter of fact and with a fair degree of certainty, that the defendant's illegal conduct materially contributed to the[ir] injury.'" (citation omitted)); *Midwestern Waffles*, 734 F.2d at 723 n.3 (explaining that a plaintiff must demonstrate "that [they] suffered economic damages which are quantifiable"); *see also Jack Walters & Sons Corp. v. Morton Bldg., Inc.*, 737 F.2d 698, 703 (7th Cir. 1984) ("And with all of the specific charges other than the territorial charge dismissed, the 'aggregation of trade restraints' charge fell of its own weight, like a conspiracy charge when all but one of the alleged participants have been exonerated."). The Court should therefore enter judgment for Defendants on any of Providers' claims to the extent they are based on any Blue System rule other than ESAs or BlueCard.

## CONCLUSION

For the foregoing reasons, judgment should be granted in Defendants' favor on (i) all claims brought by the Non-Hospital Plaintiffs and (ii) any claims based on Blue System rules other than ESAs or BlueCard.

Dated:  June 21, 2021

Respectfully submitted,

*/s/ Evan R. Chesler*
Evan R. Chesler
Christine A. Varney
Karin A. DeMasi
Lauren R. Kennedy
David H. Korn
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY  10019
Tel: (212) 474-1000
Fax: (212) 474-3700
echesler@cravath.com
cvarney@cravath.com
kdemasi@cravath.com
lkennedy@cravath.com
dkorn@cravath.com

*Coordinating Counsel for Defendant
Blue Cross and Blue Shield Association;
Counsel for Defendants Blue Cross and
Blue Shield of Alabama; Blue Cross and
Blue Shield of Florida, Inc.; Blue Cross
and Blue Shield of Massachusetts, Inc.;
Blue Cross and Blue Shield of North
Carolina, Inc.; BlueCross BlueShield
of Tennessee, Inc.; California
Physicians' Service d/b/a Blue Shield of
California; CareFirst, Inc.; CareFirst of
Maryland, Inc.; Group Hospitalization
and Medical Services, Inc.; CareFirst
BlueChoice, Inc.; Health Care Service
Corporation, an Illinois Mutual Legal
Reserve Company, including its
divisions Blue Cross and Blue Shield of
Illinois, Blue Cross and Blue Shield of
Texas, Blue Cross and Blue Shield of
New Mexico, Blue Cross and Blue
Shield of Oklahoma, and Blue Cross and
Blue Shield of Montana; Caring for
Montanans, Inc., f/k/a Blue Cross and
Blue Shield of Montana, Inc.*

Craig A. Hoover
E. Desmond Hogan
Justin Bernick
Peter Bisio
Elizabeth Jose
HOGAN LOVELLS US LLP
Columbia Square
555 13th Street, N.W.
Washington, DC 20004
Tel: (202) 637-5600
Fax: (202) 637-5910
craig.hoover@hoganlovells.com
desmond.hogan@hoganlovells.com
justin.bernick@hoganlovells.com
peter.bisio@hoganlovells.com
elizabeth.jose@hoganlovells.com

*Counsel for Anthem, Inc., f/k/a WellPoint, Inc., and all of its named subsidiaries in this consolidated action; Louisiana Health Service & Indemnity Company (Blue Cross and Blue Shield of Louisiana); BCBSM, Inc. (Blue Cross and Blue Shield of Minnesota); Blue Cross and Blue Shield of South Carolina; Horizon Healthcare Services, Inc. (Horizon Blue Cross and Blue Shield of New Jersey); Blue Cross & Blue Shield of Rhode Island; Blue Cross and Blue Shield of Vermont; Cambia Health Solutions, Inc.; Regence Blue Shield of Idaho; Regence Blue Cross Blue Shield of Utah; Regence Blue Shield (of Washington); Regence Blue Cross Blue Shield of Oregon*

John D. Martin
Lucile H. Cohen
Travis A. Bustamante
NELSON MULLINS RILEY & SCARBOROUGH LLP
1320 Main Street, 17th Floor
Columbia, SC 29201
Tel: (803) 255-9421
Fax: (803) 256-7500
john.martin@nelsonmullins.com
lucie.cohen@nelsonmullins.com
travis.bustamante@nelsonmullins.com

David J. Zott, P.C.
Daniel E. Laytin, P.C.
Sarah J. Donnell
Christa C. Cottrell, P.C.
Zachary Holmstead
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Tel: (312) 862-2000
Fax: (312) 862-2200
david.zott@kirkland.com
daniel.laytin@kirkland.com
sarah.donnell@kirkland.com
christa.cottrell@kirkland.com
zachary.holmstead@kirkland.com

*Counsel for Blue Cross Blue Shield Association*

Kimberly R. West (Liaison Counsel)
Mark M. Hogewood
WALLACE, JORDAN, RATLIFF & BRANDT, LLC
First Commercial Bank Building
800 Shades Creek Parkway, Suite 400
Birmingham, AL 35209
Tel: (205) 870-0555
Fax: (205) 871-7534
kwest@wallacejordan.com
mhogewood@wallacejordan.com

*Counsel for Defendants Blue Cross Blue Shield Association; Health Care Service Corporation, an Illinois Mutual Legal Reserve Company, including its divisions Blue Cross and Blue Shield of Illinois, Blue Cross and Blue Shield of Texas, Blue Cross and Blue Shield of New Mexico, Blue Cross and Blue Shield of Oklahoma, and Blue Cross and Blue Shield of Montana; Caring for Montanans, Inc., f/k/a Blue Cross and Blue Shield of Montana, Inc.; Highmark Inc., f/k/a Highmark Health Services; Highmark West Virginia Inc.; Highmark*

*Counsel for Anthem, Inc., f/k/a WellPoint, Inc.,
and all of its named subsidiaries in this
consolidated action; Blue Cross and Blue Shield of
North Carolina, Inc.; Louisiana Health Service &
Indemnity Company (Blue Cross and Blue Shield
of Louisiana); BCBSM, Inc. (Blue Cross and Blue
Shield of Minnesota); Blue Cross and Blue Shield
of South Carolina; Horizon Healthcare Services,
Inc. (Horizon Blue Cross and Blue Shield of New
Jersey); Blue Cross & Blue Shield of Rhode
Island; Blue Cross and Blue Shield of Vermont;
Cambia Health Solutions, Inc.; Regence Blue
Shield of Idaho; Regence Blue Cross Blue Shield
of Utah; Regence Blue Shield (of Washington);
Regence Blue Cross Blue Shield of Oregon; Blue
Cross Blue Shield of Mississippi, a Mutual
Insurance Company; Wellmark of South Dakota,
Inc. (Wellmark Blue Cross and Blue Shield of
South Dakota); Wellmark, Inc. (Wellmark Blue
Cross and Blue Shield of Iowa); Hawaii Medical
Service Association (Blue Cross and Blue Shield of
Hawaii); Triple-S Salud, Inc; Defendants Blue
Cross and Blue Shield of Florida, Inc.; Blue Cross
and Blue Shield of Massachusetts, Inc.; BlueCross
BlueShield of Tennessee, Inc.*

Cavender C. Kimble
BALCH & BINGHAM LLP
1901 6th Avenue North, Suite 1500
Birmingham, AL 35203-4642
Tel: (205) 226-3437
Fax: (205) 488-5860
ckimble@balch.com

*Counsel for Anthem, Inc., f/k/a WellPoint, Inc.,
and all of its named subsidiaries in this
consolidated action; Blue Cross and Blue Shield of
North Carolina, Inc.; Louisiana Health Service &
Indemnity Company (Blue Cross and Blue Shield
of Louisiana); BCBSM, Inc. (Blue Cross and Blue
Shield of Minnesota); Blue Cross and Blue Shield
of South Carolina; Horizon Healthcare Services,
Inc. (Horizon Blue Cross and Blue Shield of New
Jersey); Blue Cross & Blue Shield of Rhode
Island; Blue Cross and Blue Shield of Vermont;*

*Blue Cross Blue Shield Delaware Inc.;
California Physicians' Service d/b/a
Blue Shield of California; Wellmark of
South Dakota, Inc. (Wellmark Blue
Cross and Blue Shield of South Dakota);
Wellmark, Inc. (Wellmark Blue Cross
and Blue Shield of Iowa); Hawaii
Medical Service Association (Blue
Cross and Blue Shield of Hawaii)*

James L. Priester
Carl S. Burkhalter
John Thomas A. Malatesta, III
MAYNARD COOPER & GALE PC
1901 6th Avenue North, Suite 2400
Regions Harbert Plaza
Birmingham, AL 35203
Tel: (205) 254-1000
Fax: (205) 254-1999
jpriester@maynardcooper.com
cburkhalter@maynardcooper.com
jmalatesta@maynardcooper.com

Pamela B. Slate
HILL CARTER FRANCO COLE &
BLACK, P.C.
425 South Perry Street
Montgomery, AL 36104
Tel: (334) 834-7600
Fax: (334) 386-4381
pslate@hillhillcarter.com

*With Cravath, Swaine & Moore LLP,
counsel for Defendant Blue Cross Blue
Shield of Alabama*

Helen E. Witt, P.C.
Jeffrey J. Zeiger, P.C.
Erica B. Zolner
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Tel: (312) 862-2000
Fax: (312) 862-2200

*Cambia Health Solutions, Inc.; Regence Blue
Shield of Idaho; Regence Blue Cross Blue Shield
of Utah; Regence Blue Shield (of Washington);
Regence Blue Cross Blue Shield of Oregon*

Gwendolyn Payton
KILPATRICK TOWNSEND & STOCKTON LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA  98101
Tel: (206) 626-7714
Fax: (206) 299-0414
gpayton@kilpatricktownsend.com

*Counsel for Defendants Premera Blue Cross,
d/b/a Premera Blue Cross Blue Shield of Alaska*

Brian K. Norman
SHAMOUN & NORMAN, LLP
1800 Valley View Lane, Suite 200
Farmers Branch, TX  75234
Tel: (214) 987-1745
Fax: (214) 521-9033
bkn@snlegal.com

H. James Koch
ARMBRECHT JACKSON LLP
RSA Tower, 27th Floor
11 North Water Street
Mobile, AL  36602
Tel: (251) 405-1300
Fax: (251) 432-6843
hjk@ajlaw.com

*Counsel for Defendants CareFirst, Inc.; CareFirst
of Maryland, Inc.; Group Hospitalization and
Medical Services, Inc.; CareFirst BlueChoice, Inc.*

R. David Kaufman
M. Patrick McDowell
BRUNINI, GRANTHAM, GROWER
& HEWES, PLLC
190 East Capitol Street
The Pinnacle Building, Suite 100

hwitt@kirkland.com
jzeiger@kirkland.com
ezolner@kirkland.com

*Counsel for Defendants Health Care
Service Corporation, an Illinois Mutual
Legal Reserve Company, including its
divisions Blue Cross and Blue Shield of
Illinois, Blue Cross and Blue Shield of
Texas, Blue Cross and Blue Shield of
New Mexico, Blue Cross and Blue
Shield of Oklahoma, and Blue Cross and
Blue Shield of Montana; Caring for
Montanans, Inc., f/k/a Blue Cross and
Blue Shield of Montana, Inc.; Highmark
Inc., f/k/a Highmark Health Services;
Highmark West Virginia Inc.; Highmark
Blue Cross Blue Shield Delaware Inc.*

Jonathan M. Redgrave
REDGRAVE, LLP
14555 Avion Parkway, Suite 275
Chantilly, VA  20151
Tel: (703) 592-1155
Fax: (612) 332-8915
jredgrave@redgravellp.com

*Additional Counsel for HCSC and
Highmark Defendants*

Todd M. Stenerson
Brian C. Hauser
Edmund Y. Saw
SHEARMAN & STERLING LLP
401 9th Street, N.W., Suite 800
Washington, DC  20004
Tel: (202) 508-8000
Fax: (202) 508-8100
todd.stenerson@shearman.com
brian.hauser@shearman.com
edmund.saw@shearman.com

Sarah L. Cylkowski
Thomas J. Rheaume, Jr.

Jackson, MS  39201
Tel: (601) 948-3101
Fax: (601) 960-6902
dkaufman@brunini.com
pmcdowell@brunini.com

Cheri D. Green
BLUE CROSS BLUE SHIELD OF MISSISSIPPI,
A MUTUAL INSURANCE COMPANY
P.O. Box 1043
Jackson, MS  39215
Tel: (601) 932-3704
cdgreen@bcbsms.com

*Counsel for Defendant Blue Cross Blue Shield of
Mississippi, a Mutual Insurance Company*

Michael A. Naranjo
FOLEY & LARDNER LLP
555 California Street, Suite 1700
San Francisco, CA  94104
Tel: (415) 984-9847
Fax: (415) 434-4507
mnaranjo@foley.com

Alan D. Rutenberg
Benjamin R. Dryden
FOLEY & LARDNER LLP
3000 K Street, N.W., Suite 600
Washington, DC  20007
Tel: (202) 672-5300
Fax: (202) 672-5399
arutenberg@foley.com
bdryden@foley.com

*Counsel for Defendant USAble Mutual Insurance
Company, d/b/a Arkansas Blue Cross and
Blue Shield*

Robert K. Spotswood
Michael T. Sansbury
Joshua K. Payne
Jess R. Nix
Morgan B. Franz

BODMAN PLC
1901 Saint Antoine Street
6th Floor at Ford Field
Detroit, MI  48226
Tel: (313) 259-7777
Fax: (734) 930-2494
scylkowski@bodmanlaw.com
trheaume@bodmanlaw.com

Andy P. Campbell
A. Todd Campbell
Yawanna N. McDonald
CAMPBELL PARTNERS LLC
505 North 20th Street, Suite 1600
Birmingham, AL  35203
Tel: (205) 224-0750
Fax: (205) 224-8622
andy@campbellpartnerslaw.com
todd@campbellpartnerslaw.com
yawanna@campbellpartnerslaw.com

*Counsel for Defendant Blue Cross and
Blue Shield of Michigan*

John Briggs
Rachel Adcox
Jeny M. Maier
AXINN, VELTROP & HARKRIDER,
LLP
1901 L Street, N.W.
Washington, DC  20036
Tel: (202) 912-4700
Fax: (202) 912-4701
jbriggs@axinn.com
radcox@axinn.com
jmaier@axinn.com

Stephen A. Rowe
Aaron G. McLeod
ADAMS AND REESE LLP
Regions Harbert Plaza
1901 6th Avenue North, Suite 3000
Birmingham, AL  35203
Tel: (205) 250-5000
Fax: (205) 250-5034

SPOTSWOOD SANSOM & SANSBURY LLC
Financial Center
505 20th Street North, Suite 700
Birmingham, AL  35203
Tel: (205) 986-3620
Fax: (205) 986-3639
rks@spotswoodllc.com
msansbury@spotswoodllc.com
jpayne@spotswoodllc.com
jnix@spotswoodllc.com
mfranz@spotswoodllc.com

*Counsel for Defendant Capital BlueCross*

Robert R. Riley, Jr.
RILEY & JACKSON, P.C.
3530 Independence Drive
Birmingham, AL  35209
Tel: (205) 879-5000
Fax: (205) 879-5901
rob@rileyjacksonlaw.com

*Counsel for Defendants Blue Cross and Blue
Shield of Florida, Inc.; Blue Cross and Blue Shield
of Massachusetts, Inc.; BlueCross BlueShield
of Tennessee, Inc.*

Edward S. Bloomberg
John G. Schmidt Jr.
Anna Mercado Clark
PHILLIPS LYTLE LLP
One Canalside
125 Main Street
Buffalo, NY  14203
Tel: (716) 847-8400
Fax: (716) 852-6100
ebloomberg@phillipslytle.com
jschmidt@phillipslytle.com
aclark@phillipslytle.com

Stephen A. Walsh
WEINBERG, WHEELER, HUDGINS,
GUNN & DIAL
100 Corporate Parkway

steve.rowe@arlaw.com
aaron.mcleod@arlaw.com

*Counsel for Defendant Independence
Blue Cross*

Kathleen Taylor Sooy
Tracy A. Roman
Sarah Gilbert
Honor Costello
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC  20004
Tel: (202) 624-2500
Fax: (202) 628-5116
ksooy@crowell.com
troman@crowell.com
sgilbert@crowell.com
hcostello@crowell.com

John M. Johnson
Brian P. Kappel
LIGHTFOOT FRANKLIN & WHITE
LLC
The Clark Building
400 20th Street North
Birmingham, AL  35203
Tel: (205) 581-0700
Fax: (205) 581-0799
jjohnson@lightfootlaw.com
bkappel@lightfootlaw.com

*Counsel for Defendants Blue Cross of
Idaho Health Service, Inc.; Blue Cross
and Blue Shield of Kansas, Inc.; Blue
Cross and Blue Shield of Kansas City;
Blue Cross and Blue Shield of
Nebraska; Blue Cross Blue Shield of
Arizona; Blue Cross Blue Shield of
North Dakota; Blue Cross Blue Shield
of Wyoming; Highmark Western and
Northeastern New York Inc.*

One Lake Level
Birmingham, AL  35242
Tel: (205) 572-4107
Fax: (205) 572-4199
swalsh@wwhgd.com

*Counsel for Defendant, Excellus Health Plan, Inc.,*
*d/b/a Excellus BlueCross BlueShield, incorrectly*
*sued as Excellus BlueCross BlueShield of*
*New York*

David J. Zott, P.C.
Daniel E. Laytin, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
Tel: (312) 862-2000
Fax: (312) 862-2200
david.zott@kirkland.com
daniel.laytin@kirkland.com

*Counsel for Defendants Wellmark of*
*South Dakota, Inc. (Wellmark Blue*
*Cross and Blue Shield of South Dakota);*
*Wellmark, Inc. (Wellmark Blue Cross*
*and Blue Shield of Iowa); Hawaii*
*Medical Service Association (Blue*
*Cross and Blue Shield of Hawaii);*
*Triple-S Salud, Inc.*

## **CERTIFICATE OF SERVICE**

   I hereby certify that on June 21, 2021, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *Evan R. Chesler*
Evan R. Chesler
