FILED

2021 Jul-20  PM 04:48
U.S. DISTRICT COURT
N.D. OF ALABAMA

# Exhibit 1



Deposition of:
## CONF Deborah Haas-Wilson , Ph.D.

*January 10, 2021*

In the Matter of:

## Blue Cross Blue Shield Antitrust Litigation/in Re

Veritext Legal Solutions
877.373.3660 | calendar-al@veritext.com | 800.808.4958

Page 63

A.    So to the extent those agreements, the national best efforts, so-called national best efforts and so-called local best efforts, to the extent they would have no impact on commercial buyer share, I would answer yes.  But those restrictions also impact commercial buyers' share.

So to the extent those output restrictions impact commercial buyer share, they are taken into account in my GAC hospital pricing model.

Q.    (BY MR. BERNICK:)  Okay.  I don't believe you ever say that in either report.  Is there an analysis you've done to figure out the impact of the NBE or LBE rules on commercial buyer share?

MR. SHEEHAN:  Objection to form.

A.    Certainly I've thought a lot about it.  Have I done an empirical model, if that's what you're asking me?  No, I have not done an empirical model, but I certainly have thought a lot about, I've read the documents in the case, you know, the depositions taken, so certainly I've thought about it a lot.

Q.    (BY MR. BERNICK:)  You have.  But there's nothing in your report that connects NBE or

CONFIDENTIAL

Page 64

LBE to an impact on commercial buyers' share in your hospital pricing model, right?

MR. SHEEHAN:  Objection to form.

A.   I did not run a formal model where one would look at -- in part I'm constrained because of the Blue's agreements, right?  So the Blue's enforced those national best efforts and local best efforts nationwide.

So, you know, from an empirical econometrician perspective, there would be no way to identify the effect because they're in force everywhere.

So because the Blue's agreements are enforced everywhere, it's really, you know -- from an econometrician's perspective, it's not really in the feasible set of things one could do.

Q.   (BY MR. BERNICK:)  Doctor, you've jumped ahead of me.  You've sort of answered the question of why it's not in your report before answering the threshold question that it's not there.

So I think my question is really just a straightforward one, not limited to formal analysis, but there's no formal or informal analysis in your report that connects NBE or LBE to

CONFIDENTIAL

Q.   I got it.  And my question is:  By your assumption that the out-of-area plans could contract jointly, that actually lowered the amount of damages, right, rather than if they contracted individually?

MR. SHEEHAN:  Objection to form.

Q.   (BY MR. ZOTT:)  Correct?

A.   So what I looked at was harm.  It was my colleague, Professor Slottje, that went on and did damages.

Q.   It lowers the price, correct?

A.   This -- by letting them contract jointly as opposed to splitting them up into two, three, four, or some other group so that the contracting share would have been smaller, by allowing them in my harm methodology, not in the real world, in my harm methodology, meant that there was less harm.

Q.   Okay.  And I assume, then, since by contracting jointly they could negotiate a lower plan, they would have an incentive to do that with the out-of-area plans, correct?

MR. SHEEHAN:  Object to the form.

A.   Again, this was merely a way to implement the harm calculation to think of them