FILED
2021 Jul-22  AM 10:01
U.S. DISTRICT COURT
N.D. OF ALABAMA

# Exhibit 341



Deposition of:

## CONF David Evans, Ph.D. - Timestamped

*January 15, 2021*

In the Matter of:

## Blue Cross Blue Shield Antitrust Litigation/in Re

Veritext Legal Solutions

877.373.3660 | calendar-al@veritext.com | 800.808.4958

CONFIDENTIAL

Page 59

by the platform to the user is the -- is the                  09:48:52

content.  And then the platform is turning around,            09:48:55

and they have a separate deal with the -- with the            09:48:58

advertiser.  And the advertiser does value, having            09:49:02

access to more viewers, but the viewer doesn't --            09:49:08

doesn't necessarily even want to interact with the            09:49:15

-- with the advertiser, may not interact with the            09:49:18

advertiser, and may not -- may not value                     09:49:20

interacting with the advertiser.                             09:49:26

Q.    Okay.  So, would a -- would a                  09:49:28

newspaper be an example of a two-sided platform              09:49:30

that is not a transaction platform?                          09:49:36

A.    Yes, it -- yes, it would be.  And           09:49:39

then the other characteristic of those kind of              09:49:44

platforms is that it's possible to provide content           09:49:46

without necessarily providing advertising.                   09:49:51

Q.    And is it your opinion in this case        09:49:55

that the Blue Plans operate two-sided transaction            09:50:01

platforms?                                                   09:50:06

A.    It's my opinion --                          09:50:07

MS. KENNEDY:  Objection to form.            09:50:09

A.    -- that the --                              09:50:10

MS. KENNEDY:  I'm sorry go ahead           09:50:12

David.                                                       09:50:13

A.    It is my opinion in this case that         09:50:14

Veritext Legal Solutions

877-373-3660                                              800.808.4958

CONFIDENTIAL

Page 60

the Blue Plans -- let me just go through it -- that 09:50:16

the Blue Plans are two-sided platforms, that they 09:50:21

have significant indirect network effects flowing 09:50:26

between both sides, that they facilitate 09:50:28

interactions between both sides, and that there is 09:50:32

-- there is a usage externality, which I 09:50:38

characterize in the -- in the report as both 09:50:44

participants are using the platform in order to -- 09:50:48

in order to get the -- to get the interaction or 09:50:52

transaction.  And it's that last piece which is, in 09:50:59

economic-speak, a usage externality that makes it a 09:51:05

two-sided transaction platform.  As a -- as a 09:51:10

matter of definition. 09:51:16

    Q.    If the Blue Plans were held in this 09:51:18

case to be two-sided platforms but not two-sided 09:51:26

transaction platforms, would that affect any of 09:51:32

your opinions that you've expressed in your report? 09:51:35

        MS. KENNEDY:  Objection to form. 09:51:38

    A.    So, in terms of my analysis of harm 09:51:46

and damages, those -- those opinions depend on 09:51:53

there being significant indirect network effects 09:52:01

between providers and subscribers and between 09:52:03

subscribers and providers; that those indirect 09:52:09

network effects between those two participants in 09:52:13

the platform result in interdependent pricing on 09:52:15

CONFIDENTIAL

Page 84

that has a usage externality that business for the    10:40:37

purpose of that transaction, or those transactions    10:40:42

will -- will typically compete with other    10:40:48

two-sided -- two-sided platforms.  That doesn't    10:40:55

necessarily mean that -- and this is recognized by    10:41:02

Filistrucchi and others that are cited here.  That    10:41:09

doesn't mean that there isn't some other way to    10:41:13

organize a business that would allow with --    10:41:15

competition with one-sided -- one-sided firms,    10:41:17

including bilateral exchange.  But as a -- as a    10:41:20

general matter, if you're talking about a usage    10:41:24

externality where -- where both parties need to be    10:41:27

on the -- on the -- on the platform, it's -- it's    10:41:29

often the case that they're competing with other --    10:41:35

with other two-sided -- two-sided platforms.    10:41:38

Q.    So -- so, you say it's often the case    10:41:42

that they're competing with other two-sided    10:41:45

platforms.  Do you disagree that only other    10:41:49

two-sided platforms can compete with a two-sided    10:41:53

platform for transactions?    10:41:55

A.    Only other -- only other two-sided    10:41:58

platforms can literally compete with a platform for    10:42:03

transactions as those terms are used in the -- in    10:42:07

the literature.  But it is -- it is possible to    10:42:11

organize a business in a different way that has the    10:42:16

CONFIDENTIAL

Page 85

possibility to impose a competitive constraint on   10:42:20

the -- on the two-sided platform.   10:42:23

Q.   Okay.   Can you give me an example?   10:42:25

A.   Yeah.   So, why don't we stick with --   10:42:29

with credit cards.   So in the case of credit cards,   10:42:36

it is -- to be a credit card network, you need to   10:42:42

have both cardholders and merchants on board the   10:42:48

platform, because the service that you're providing   10:42:52

the cardholder is the ability to conduct -- enter   10:42:56

into transactions with many merchants.   And from   10:43:03

the standpoint of the merchant, the service you're   10:43:06

getting from the platform is the ability to   10:43:09

interact with many consumers.   For those   10:43:11

transactions, the platform can only compete with   10:43:15

other two-sided platforms that are providing --   10:43:19

providing that service.   So therefore, American   10:43:24

Express, for what I just described, which is a   10:43:28

general purpose payment card network, is only   10:43:31

competing with other two-sided platforms for   10:43:35

those -- for those consumers and for those   10:43:39

merchants.   10:43:42

Now, it is the case in credit cards   10:43:42

that some stores have their own credit cards.   So   10:43:48

there are these things called store cards.   They're   10:43:53

less common now than they used to be.   But store   10:43:56

CONFIDENTIAL

Page 86

cards are issued by a particular merchant, one merchant, that enables their consumers to make purchases at that store.  That's a single-sided business.  There's just one merchant connecting with their customers.  So that's a single-sided business.  It's not a two-sided platform.

So right now, if you're going to do an analysis of the payment card industry, you would probably -- I think an economist would recognize the existence of store cards, but they're not that important anymore, and therefore they may not be much of a competitive constraint on the two-sided platforms that do compete with each other.

If you go back 25 years, so you go back to the, you know, 1980s, you know, 1990s, you know, all the way through the 1990s, you know, store cards were pretty significant.  So there was the Sears store card.  You know, now we think of Sears as a largely bankrupt, out-of-business retailer, but, you know, back in the -- back in the 19- -- 1990s and for even in the 2000s, it was a significant, you know, significant retailer, they had their own store card program.  And that was Sears issuing cards to people that shopped at Sears.  And many other department stores and

CONFIDENTIAL

Page 87

businesses had their own cards and all.  10:45:26

Now, if you're doing market  10:45:31
definition back then, those store cards, whether  10:45:32
they would be in the relevant antitrust market, you  10:45:36
know, you would need to do an analysis to determine  10:45:39
that.  But you wouldn't be able to just dismiss  10:45:41
them as being -- being irrelevant.  So those are  10:45:44
single-sided businesses that provide a competitive  10:45:49
constraint.  10:45:52

So that's, you know, that's one  10:45:53
example.  You know, the other place this comes up  10:45:55
is with respect to -- to retail.  So, shopping  10:45:58
malls compete with other shopping malls.  And you  10:46:04
could well imagine having a shopping mall market  10:46:08
for an antitrust case.  But it's also the case that  10:46:11
individual department stores can sell directly to  10:46:15
consumers.  They're not part of a shopping mall.  10:46:18
And that's a single-sided business.  Whether that's  10:46:22
significant, you know, competition, you know, the  10:46:25
analysis would need to determine that.  If you want  10:46:29
to be in the shopping mall business and compete in  10:46:31
the shopping mall business, the statement here at  10:46:35
the top of page 14 is exactly right.  But -- but,  10:46:38
you know, as is common in market definition, you  10:46:43
know, there can be other competitive constraints  10:46:46

CONFIDENTIAL

Page 88

that you might want to take into account, or maybe

not.

Q.    If -- if a health insurer were

integrated with a hospital group and a medical

practice, would that health insurer be a two-sided

platform or a one-sided platform?

MS. KENNEDY:  Objection to form.

A.    So, a medical insurer that is fully

vertically integrated into the provision of medical

service, like a -- like a Kaiser, as I understand

it, that would be a single-sided business because

they're integrated into -- into the -- into the

medical provision side.  And that makes -- that

makes that business single-sided.  But based on --

based on my, you know, general understanding of

Kaiser.  I haven't done a full, detailed analysis

of Kaiser.  But as I understand it, it's

essentially entirely Kaiser that's providing --

providing medical services.

Q.    Do you consider Medicare to be a

two-sided transaction platform?

MS. KENNEDY:  Objection to form.

A.    I haven't -- I haven't researched

Medicare.  I don't have an opinion on it.

Q.    In the context of health insurance,