FILED
2021 Aug-20  PM 06:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **IN RE:  BLUE CROSS BLUE SHIELD ANTITRUST LITIGATION (MDL No. 2406)** | **Master File No. 2:13-CV-20000-RDP**<br><br>**This document relates to Provider-Track cases.** |

**DEFENDANTS' BRIEF IN OPPOSITION TO PROVIDER PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT ON THE DEFENDANTS'
SINGLE ENTITY DEFENSE**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................ii

INDEX OF EXHIBITS .........................................................................................iv

CITATION KEY ...................................................................................................v

PRELIMINARY STATEMENT...............................................................................1

RESPONSE TO PROVIDERS' "UNDISPUTED RELEVANT MATERIAL
    FACTS".......................................................................................................2

DEFENDANTS' STATEMENT OF ADDITIONAL RELEVANT FACTS ...............4

LEGAL STANDARD .............................................................................................5

ARGUMENT .........................................................................................................5

    I.    Providers Present Nothing To Justify Revisiting this Motion.........................5

    II.    The Association Has Made No Admissions that the Blues Are Not a
        Single Entity Within the Meaning of the Antitrust Laws. .............................6

    III.    Providers Are Wrong that the Blues Can Never Be a Single Entity
        Within the Meaning of the Antitrust Laws....................................................8

        A.    The Blues Act as a Single Entity to Govern the Federal Marks. ...........8

        B.    Providers' Concession that BCBSA Is Like the NFL Proves
            Defendants' Point. .............................................................................11

    IV.    In Light of Providers' Concessions, the Court Would Even Be Justified
        in Entering Judgment for the Blues Based on the Blues' Single-Entity
        Defense..................................................................................................14

CONCLUSION....................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Needle, Inc. v. Nat'l Football League,*
    560 U.S. 183, 194 (2010) .................................................................................... passim

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) .................................................................................................5

*Blue Cross & Blue Shield Assoc. v. Blue Cross Mut. Clinic, Inc.,*
    612 F. Supp. 41 (S.D. Fla. 1985).........................................................................15

*In re Bose Corp.,*
    580 F.3d 1240 (Fed. Cir. 2009).............................................................................15

*Cafaro v. Zois,*
    693 F. App'x 810 (11th Cir. 2017).........................................................................16

*Chi. Pro. Sports Ltd. P'ship v. Nat'l Basketball Ass'n,*
    95 F.3d 593 (7th Cir. 1996).................................................................... 3, 8, 9, 16

*City of Mt. Pleasant v. Associated Elec. Co-op., Inc.,*
    838 F.2d 268 (8th Cir. 1988)............................................................................ 9, 16

*Copperweld Corp. v. Indep. Tube Corp.,*
    467 U.S. 752 (1984) .......................................................................................... passim

*Fraser v. Major League Soccer, L.L.C.,*
    284 F.3d 47 (1st Cir. 2002)............................................................................... 9, 16

*Ga.-Pac. Consumer Prods. LP v. Zurich Am. Ins. Co.,*
    2016 WL 5853728 (S.D. Ala. Oct. 5, 2016).........................................................6

*Hall v. Burger King Corp.,*
    912 F. Supp. 1509 (S.D. Fla. 1995).......................................................................3

*L.A. Mem'l Coliseum Comm'n v. Nat'l Football League,*
    726 F.2d 1381 (9th Cir. 1984)......................................................................... 13, 14

*Murray v. Toyota Motor Distribs., Inc.,*
    664 F.2d 1377 (9th Cir. 1982)................................................................................3

*N. Am. Soccer League v. Nat'l Football League,*
    670 F.2d 1249 (2d Cir. 1981).......................................................................... 13, 14

*Ramos v. Louisiana,*
    140 S. Ct. 1390 (2020)...........................................................................................13

*Sovereign Mil. Hospitaller Ord. of Saint John of Jerusalem of Rhodes & of Malta v. Fla. Priory of Knights Hospitallers of Sovereign Ord. of Saint John of Jerusalem, Knights of Malta, Ecumenical Ord.*,
    702 F.3d 1279 (11th Cir. 2012)...................................................................... 15

*Spinelli v. Nat'l Football League*,
    96 F. Supp. 3d 81, 107 (S.D.N.Y. 2015) ..................................... 12, 13, 14

*Sullivan v. Nat'l Football League*,
    34 F.3d 1091 (1st Cir. 1994) ................................................................. 14

*Thomas v. Cooper Lighting, Inc.*,
    506 F.3d 1361 (11th Cir. 2007)............................................................... 5

*Washington v. National Football League*,
    880 F. Supp. 2d 1004 (D. Minn. 2012)....................................... 12, 13, 14

**Statutes & Rules**

15 U.S.C. § 1064(3) ........................................................................... 15

15 U.S.C. § 1065 ............................................................................... 14

15 U.S.C. § 1115(b) ........................................................................... 15

15 U.S.C. § 1605 ................................................................................. 4

Fed. R. Civ. P. 56 ........................................................................... 5, 16

**INDEX OF EXHIBITS**

| Exhibit No. | Description |
|:---:|---|
| 1 | USPTO Trademark Status Report, Reg. No. 554488 |
| 2 | USPTO Trademark Status Report, Reg. No. 554817 |
| 3 | USPTO Trademark Status Report, Reg. No. 557037 |
| 4 | USPTO Trademark Status Report, Reg. No. 557040 |
| 5 | USPTO Trademark Status Report, Reg. No. 562430 |
| 6 | USPTO Trademark Status Report, Reg. No. 591778 |
| 7 | USPTO Trademark Status Report, Reg. No. 617304 |

**CITATION KEY**

| Citation | Reference |
|---|---|
| Add'l Facts | Citations to this Brief's Statement of Additional Relevant Facts |
| Boycott Br. | Provider Plaintiffs' Motion for Partial Summary Judgment Regarding the Standard of Review for Their Group Boycott Claims (Doc. 2729) |
| Damages MSJ Br. | Defendants' Opening Brief in Support of their Motion for Summary Judgment on (I) All Claims Advanced by Non-General Acute Care Hospital Providers and (II) Any Claims Based on Blue System Rules Other than ESAs or BlueCard for Failure to Demonstrate Injury or Damages (Doc. 2751) |
| Disp. Facts | Citations to this Brief's Response to Providers' "Undisputed Relevant Material Facts" |
| Doc(s). | Citations to Documents filed on the Docket in MDL 2406 (2:13-CV-20000-RDP) |
| Ex. | Citations to Defendants' Exhibits identified in the Evidentiary Submission accompanying this Opposition |
| MSJ Op. | The Court's April 5, 2018 Memorandum Opinion re: Section 1 Standard of Review and Single Entity Defense (Doc. 2063) |
| Single Entity Br. | Provider Plaintiffs' Motion for Partial Summary Judgment On the Defendants' Single Entity Defense (Doc. 2748) |
| Single Entity Ex. | Provider Plaintiffs' Exhibits identified in the Evidentiary Submission accompanying Providers' Single Entity Br. |
| SoR Br. | Defendants' Opening Brief on the Antitrust Standard of Review Applicable to Provider Plaintiffs' Section 1 Claims Pursuant to Federal Rule of Civil Procedure 56 (Doc. 2728) |
| SoR Reply Br. | Defendants' Reply on the Antitrust Standard of Review Applicable to Provider Plaintiffs' Section 1 Claims (Doc. 2772) |
| Trademark Br. | Provider Plaintiffs' Memorandum of Law in Support of Motion for Partial Summary Judgment on Defendant's Claim to Common-Law Trademark Rights (Doc. 2749) |

## PRELIMINARY STATEMENT

Providers' motion for partial summary judgment is a rehash of arguments this Court heard years ago. In making it, Providers are confused about the single-entity doctrine and mistaken about the record in this case. But Providers make one new, key contribution: they admit that the Association owns valid Federal Marks. That concession resolves—in Defendants' favor—the principal factual disputes underlying the Court's prior summary judgment decision. The Court should, therefore, deny Providers' motion on the Blues' single-entity defense—and would even be justified in entering judgment in Defendants' favor.

In *American Needle, Inc. v. National Football League*, the Supreme Court reaffirmed that legally independent actors do not engage in "concerted action" subject to Section 1 of the Sherman Act if they operate as a "single entity" for a challenged function. 560 U.S. 183, 194 (2010); *see also Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 769 (1984). Applying *American Needle* and *Copperweld*, this Court held in 2018 that "there remain genuine issues of material fact as to whether Defendants operate as a single entity as to the enforcement of the Blue Marks." (MSJ Op. at 35.)

Providers now ask the Court to undo that ruling and reject the Blues' single-entity defense as a matter of law. Providers' arguments, however, are the very ones the Court previously considered and rejected, and they should be rejected again. (*See infra* Section I.) Providers' only "new" evidence is a trio of irrelevant documents—all of which had been produced when the Court last considered the single-entity defense—that stand solely for the undisputed (and irrelevant) proposition that the Blues are formally separate companies. Both the Supreme Court and this Court have held that such formal separateness is no bar to the single-entity defense, and Providers' argument to the contrary must fail. (*See infra* Section II.)

1

With no new material facts to offer, Providers attempt to convince the Court that it erred on the law.  But it is Providers who misapply the law.  As they now concede, only the Blue Cross Blue Shield Association ("Association") owns the federally registered Blue Cross and Blue Shield trademarks ("Federal Marks").  No individual Plan has ever had the rights to govern their use nationwide.  Thus, the Blues can govern the Federal Marks *only* as a single entity.  Providers try to confuse this straightforward conclusion with irrelevant pre-*Copperweld* caselaw—which, once again, could have been cited in the prior briefing—but every relevant decision since *American Needle* supports the conclusion that the Blues are a single entity for purposes of governing the use of the Federal Marks.  (*See infra* Section III.)

Indeed, the record since 2018 has only made clearer that the Blues are not capable of concerted action under Section 1 in connection with the governance of the Federal Marks.  Providers now concede that the Association owns the Federal Marks, and have disclaimed any challenge to those Marks' validity under the Lanham Act.  Ironically, then, it is actually *Providers* whose admissions resolve—in the Blues' favor—the principal factual disputes that led the Court to its prior decision.  (*See infra* Section IV.)  Undoubtably, then, Providers' motion for partial summary judgment should be denied, and judgment on the single-entity defense could even be entered for the Blues.

**RESPONSE TO PROVIDERS' "UNDISPUTED RELEVANT MATERIAL FACTS"**

Defendants do not dispute Paragraphs 4–7 and 9–12 of Providers' statement of facts.  Defendants dispute the balance of Providers' purported facts, as set forth below.

1.     **Disputed.**  Although Providers quote the slide in their Exhibit 1 accurately, that slide has no bearing on the antitrust analysis of "concerted action" here.  The quoted slide contrasts the structure of the Blue System, for which "[b]rand models with independently owned local/regional companies all leveraging the same powerful national brand

. . . provide a best practice approach," with the unitary structures of Apple and Cigna.

(Doc. 2787-01 (Single Entity Ex. 1) at -9426–9429.)  The slide uses the phrase "single entity" to

indicate only that the Blues are not literally one company.  It does not invoke "the jargon of

antitrust law," under which "there is not necessarily concerted action simply because more than

one legally distinct entity is involved."[1]  *Am. Needle*, 560 U.S. at 188, 192.

> 2.  **Disputed.**  Providers quote the document in their Exhibit 2 accurately, but
>
> again the document has no bearing on whether the Blues have engaged in "concerted action"
>
> under the antitrust laws.  In fact, the document states that Blue Plans may make public statements
>
> that *do* refer to the Blue System as a "single entity" as long as they also say that the Blue System
>
> "is composed of independent Plans."  (Doc. 2785-02 (Single Entity Ex. 2) at 2–3.)  In any event,
>
> the document's purpose—to avoid confusion about whether Blue Plans are liable for each other's
>
> debts—confirms that it is immaterial to the analysis here.  (*Id.* at 2.)

> 3.  **Disputed.**  Providers quote the notes in their Exhibit 3 accurately, but yet
>
> again the document is irrelevant because it discusses whether Blue Plans are literally the same
>
> company, not whether they are properly considered a single entity in the antitrust context.
>
> (Doc. 2787-02 (Single Entity Ex. 3) at -1327.)

---

[1] Nor does the slide in Exhibit 1 "disclaim[] any comparison between [BCBSA] and sports leagues."  (Single Entity Br. at 7.)  To the contrary, it expressly identifies "independently owned local/regional companies all leveraging the same powerful national brand" as a source of best practices, and includes the logo of Major League Baseball, a sports league that does just that.  (Doc. 2787-1 (Single Entity Ex. 1) at -9429.)  Providers claim otherwise because the Major League Baseball logo is not circled and those of McDonald's, Toyota and Ford are.  (*Id.*)  But the latter logos are circled only to indicate that they "are the closest to the Blue model" (*id.*), not to "disclaim[] any comparison" between the Blues and sports leagues.  And just like sports leagues, each of the circled enterprises can act as a single entity under the antitrust laws.  *See, e.g.*, *Hall v. Burger King Corp.*, 912 F. Supp. 1509, 1548 (S.D. Fla. 1995) (plaintiff's "conspiracy claim . . . still would fail because [Burger King] and its franchisees are incapable of conspiring with each other"); *Murray v. Toyota Motor Distribs., Inc.*, 664 F.2d 1377, 1379 (9th Cir. 1982) (legally separate distributor and importer of Toyota automobiles could be a single entity for purposes of terminating dealer contracts); *see also Chi. Pro. Sports Ltd. P'ship v. Nat'l Basketball Ass'n*, 95 F.3d 593, 600 (7th Cir. 1996) (suggesting McDonald's franchises would be a single entity "to coordinate the release of a new hamburger").

8.      **Disputed.**  Defendants dispute Providers' characterization of the license agreements between the Association and the Plans to the extent Providers imply that those agreements assign Plans to specific service areas anew.  The license agreements provide that each Plan may use the Federal Marks "within the geographical area(s) served by the Plan on June 30, 1972, and/or as to which the Plan has been granted a subsequent license."  (*See, e.g.*, Doc. 1349-11 (Cross Agmt.) at 5; Doc. 1349-12 (Shield Agmt.) at 5; *see also* SoR Br. Facts ¶ 27.)

13.     **Disputed.**  Providers accurately quote the Court's April 5, 2018 memorandum opinion.  Defendants dispute Providers' statement to the extent they imply that NBE remains in force.  As Providers acknowledge in a footnote, NBE has been repealed. (Single Entity Br. at 7 n.2; *see also* Doc. 2735-33 (Association Board Resolution) at 2.) Moreover, NBE is not relevant to Providers' case.  (*See* SoR Br. § II; Damages MSJ Br. § II.)

### DEFENDANTS' STATEMENT OF ADDITIONAL RELEVANT FACTS

1.      Shortly after Congress passed the Lanham Act in 1946, the predecessors in interest of the present-day Association applied to federally register the Blue Cross and Blue Shield trademarks.  (Docs. 1353-28–1353-29, 1353-31–1353-47.)  The U.S. Patent and Trademark Office issued federal trademark registrations to those organizations in 1952.  (Docs. 1350-36, 1350-37, 1350-38; 1350-40–1350-42, 1353-30.)

2.      For each of the Federal Marks, the Association's predecessors submitted, and the U.S. Patent and Trademark Office acknowledged, affidavits of incontestability pursuant to 15 U.S.C. § 1605.  (*See, e.g.*, Exs. 1–7 (U.S. Patent and Trademark Office Trademark Status Reports).)

3.      The Federal Marks remained the exclusive property of these national organizations until they merged to form the Association in 1982.  (Doc. 1353-10 (Wilson Dep.)

at 4–6 (Tr. 28:14–34:19); Doc. 1349-43 (Articles of Incorporation) at 4–6; *see also* Doc. 1349-27

(Association Board Handbook) at 44; *see also* SoR Br. Facts ¶¶ 25–26.)  Since then, the

Association, and only the Association, has owned the Federal Marks.  (*See* Single Entity Br.

Facts ¶ 7; Boycott Br. Facts ¶ 6.)

        4.      No Plan has ever held rights to the Federal Marks, no Plan has ever owned

any of the Federal Marks and no individual Plan has ever been able to license or govern the

Federal Marks.  (Docs. 1353-11 (System History) at 7, 10; Doc. 1353-48 (1952 License Agmt.)

at 2–3; Doc. 1353-50 (1954 License Agmt.) at 2–3; *see also* SoR Br. Facts ¶¶ 16–29.)

## LEGAL STANDARD

        As the moving party, Providers bear the burden of demonstrating with undisputed

evidence that they are entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Anderson v.

Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  On Providers' motion, the Court must view all

evidence and draw all reasonable inferences in the light most favorable to the Blues.  *Thomas v.

Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007).

## ARGUMENT

## I.    Providers Present Nothing To Justify Revisiting this Motion.

        The present motion asks the Court to hold as a matter of law that the Blues are not

a single entity under the antitrust laws.  (Single Entity Br. at 4.)  The Court considered and

rejected that same motion, based on the same arguments, during the first round of summary

judgment motions.  (MSJ Op. at 35.)  Providers do not cite a single proposition of fact or law that

could not have been raised the last time the parties briefed the single-entity issue.  That is reason

enough to deny Providers' motion.[2]  *See, e.g.*, *Ga.-Pac. Consumer Prods. LP v. Zurich Am. Ins. Co.*, 2016 WL 5853728, at *3 (S.D. Ala. Oct. 5, 2016) (rejecting repeat summary judgment motion where the movant had no "new arguments or evidence, previously unavailable, that would support a different result on a re-do").

## II.   The Association Has Made No Admissions that the Blues Are Not a Single Entity Within the Meaning of the Antitrust Laws.

Should the Court consider this repeat motion at all, it should again deny it on the merits.  Providers first ask the Court to reconsider its prior decision because three "documents not before the Court when it decided the previous summary judgment motion contain admissions by the Association that it is not a single entity." (Single Entity Br. at 4, 7.)  But these three documents are neither new nor do they admit what Providers claim.  They are merely ordinary-course business documents from which Providers have cherry-picked statements they mischaracterize as "admissions."  Those documents have no bearing on the only question relevant here:  whether the legally separate Blues nonetheless *function* as a single entity to govern the use of the Federal Marks.

Providers' argument that the Association "admit[s] that it is not a single entity" (*id.* at 7), is the same one Subscribers made (and the Court rejected) in the prior summary judgment briefing (Doc. 2016-01 (Subscribers' Resp. Br.) at 41 ("Prior to Litigation, Defendants Did Not View Themselves as a Single Entity.")).  That argument, like Providers' now, was rooted in supposed "admissions" that Blues are "operated independently."  (*Id.*; *see also id.* at 37–38 (quoting Plan CEO's statement that "Plans are individual business[es] and make their

---

[2] Though Providers did not previously file a separate motion limited to the Blues' single-entity defense, as Subscribers did, Providers' prior summary judgment submissions sought the same relief and made the same arguments as here.  Providers argued that "The Blues Are Not a Single Entity" as a matter of law, and that the challenged conduct "is a straightforward example of concerted action subject to Section 1 of the Sherman Act." (Doc. 1431 (Providers' 2017 MSJ Resp. Br.) at 30, 35; *see also* Doc. 1553 (Providers' 2017 MSJ Reply Br.) at 14.)

own decisions.").)  That means only that Blues are distinct companies, as this Court previously observed.  (MSJ Op. at 7–8 ("[T]he Blue Plans are 36 independent companies" that are "autonomous in [their] operations").)  But that does not help Providers here.  As the Court rightly recognized, "in certain circumstances, distinct legal entities are incapable of concerted action for the purposes of Section 1 and must be viewed as a single entity."  (*Id.* at 30; *see also id.* at 35 ("[T]here remain genuine issues of material fact as to whether Defendants operate as a single entity as to the enforcement of the Blue Marks.").)

Providers suggest that their three exhibits are different because they include the phrase "single entity."  (Single Entity Br. at 4.)  In doing so, however, Providers make the very mistake the Supreme Court has warned against:  conflating the literal concept of a "single entity" (in terms of formal separateness) with the functional concept of a "single entity" as a matter of antitrust law.  *Am. Needle*, 560 U.S. at 195 ("Th[e] inquiry is sometimes described as asking whether the alleged conspirators are a single entity.  That is perhaps a misdescription, however, because the question is not whether the defendant is a legally single entity or has a single name . . . .").  Each of Providers' exhibits here is an example of the former—and refers only to the unremarkable fact that the Blues are not literally a single company.  (Disp. Facts ¶¶ 1–3.)  Thus, Providers rely on the same erroneous argument Subscribers did, and offer nothing new to support it.[3]  The Court should reject it once again.

---

[3] The Blues produced each of the three documents Providers rely on in 2016, long before Providers and Subscribers briefed the single-entity issue in August 2017.  Indeed, Subscribers previously referred the Court to the exact same slide presentation Providers submit as Exhibit 1 to their motion, (Doc. 2016-01 at 41 (citing SX224 (Docs. 1436-001–1436-002))), and the Court still denied Plaintiffs' summary judgment motion.

**III.    Providers Are Wrong that the Blues Can Never Be a Single Entity Within the Meaning of the Antitrust Laws.**

Providers argue that, although there may be some "legitimate areas of joint governance of the [Blue] marks," their case concerns alleged territorial allocations and output restrictions that "can never be the work of a single entity." (Single Entity Br. at 9 (capitalization adjusted).) Again, the Court rejected these same arguments in 2018. Assessing the same facts and law, the Court found the single-entity defense viable in connection with the same conduct that Providers purport to challenge here.

**A.    The Blues Act as a Single Entity to Govern the Federal Marks.**

As this Court has held, whether legally separate actors are a single entity for antitrust purposes requires a function-by-function analysis. (MSJ Op. at 32 n.11, 35); *see also Am. Needle*, 560 U.S. at 201, 204 (deciding whether the NFL is a single entity for one function only); *Chi. Pro. Sports Ltd. P'ship v. Nat'l Basketball Ass'n*, 95 F.3d 593, 600 (7th Cir. 1996) (sports league may be best understood as one firm for some purposes and multiple firms for others).

The Court has further observed that the relevant function here is the governance of the Federal Marks. (MSJ Op. at 35 ("[T]here remain genuine issues of material fact as to whether Defendants operate as a single entity *as to the enforcement of the Blue Marks* . . . ." (emphasis added)).) In light of the undisputed facts, Providers cannot establish as a matter of law that the Blues do not act as a single entity to execute that function.

The dispositive question in the single-entity inquiry is whether individual participants in the alleged agreement could perform the relevant function unilaterally. *See Am. Needle*, 560 U.S. at 195, 200. Providers admit that the Association, and only the Association, owns the Federal Marks. (Single Entity Br. Facts ¶ 7; Boycott Br. Facts ¶ 6.) No individual

Blue Plan has ever had the right to govern their use.  (Add'l Facts ¶ 4; *see also* SoR Facts ¶ 29.)

Consequently, Defendants are not potential competitors in governing the use of the Federal

Marks, and the Association's management of those Marks does not "deprive[] the marketplace of

independent centers of decisionmaking."  *Am. Needle*, 560 U.S. at 195 (quoting *Copperweld*, 467

U.S. at 769); (*see also* MSJ Op. at 31).

      Providers suggest that Plans may have different preferences for how to govern the

Marks.  (Single Entity Br. at 4.)  Whether Defendants' views always align, however, is

irrelevant:  "Even a single firm contains many competing interests," and "*Copperweld* does not

hold that only conflict-free enterprises may be treated as single entities."  *Chi. Pro. Sports*, 95

F.3d at 598; *see also Fraser v. Major League Soccer, L.L.C.*, 284 F.3d 47, 56 (1st Cir. 2002)

("Certainly the potential for competition within the firm is not enough" to "fall outside

*Copperweld*'s safe harbor."); *City of Mt. Pleasant v. Associated Elec. Co-op., Inc.*, 838 F.2d 268

(8th Cir. 1988) (holding autonomous electrical cooperatives operating in adjoining service areas

are a single entity and noting that "[i]t will always be true that separate companies, in one

enterprise, that are located in separate areas and serve separate customers, will have varying

interests").

      Providers also claim that individual Plans' historical common-law rights—which

they tout here but challenge when opposing Defendants' standard-of-review motion premised on

those rights—mean that "Blues have no need to coordinate" to "use the Blue Marks in particular

territories."  (Single Entity Br. at 9.)  But this argument confuses the territorially limited

common-law rights the Blues developed prior to the passage of the Lanham Act with the

nationwide Federal Marks at issue here.[4]  Providers purport only to challenge aspects of the national governance of the Federal Marks.  (Doc. 1083 (Provider Compl.) at ¶ 184 ("The[] [agreements between the Association and the Plans concerning use of the Federal Marks] are the agreements at issue in this case.").)  It is therefore that governance that is the focus of the single-entity inquiry.  Because Providers admit that the Association alone owns the Federal Marks, it is undisputed that the Blues could not be independent decisionmakers capable of "concerted action" when governing them, including by licensing the Federal Marks and establishing rules for their use and protection.  (Single Entity Br. Facts ¶ 7; Boycott Br. Facts ¶ 6.)

Providers' position that the Blues cannot be a single entity because "*American Needle* cited [*Sealy*] and [*Topco*]" also is misguided.  (Single Entity Br. at 10.)  It assumes that the Blues are identically situated to the defendants in *Sealy* and *Topco* and, for all the reasons the Blues have detailed in their recent standard-of-review briefing, they are not.  (*See* SoR Br. at 32–34; SoR Reply Br. at 7–8 n.2, 11.)  In any event, Providers made the exact same argument in their prior briefing.  (*Compare* Doc. 1431 (Providers' 2017 MSJ Resp. Br.) at 34–35 & n.4, *with* Single Entity Br. at 10–11 & n.4.)  After five pages of discussion of *Sealy* and *Topco*, the Court proceeded to analyze the elements of the single entity defense and denied Providers' motion for summary judgment.[5]  (*See* MSJ Op. at 25–30.)

---

[4] Unlike the standard-of-review analysis, which examines the challenged conduct at the time of inception, the single-entity analysis examines the present-day function performed by the putative single entity.  *See Am. Needle*, 560 U.S. at 197 (examining NFL teams' contemporary decisions "to license their separately owned trademarks collectively and to only one vendor"); *Copperweld*, 467 U.S. at 772 (evaluating how a corporate subunit functions presently, because "[t]he economic, legal, or other considerations that lead corporate management to choose one structure over the other are not relevant to [the single-entity question]").

[5] *Sealy* and *Topco* also were decided long before *Copperweld*—when even parent companies and their wholly owned subsidiaries were potentially subject to Section 1 liability as co-conspirators—so the Supreme Court had no occasion to consider whether the formally separate defendants might nonetheless constitute a single entity under the function-by-function analysis.

Providers' assertion that "the single-entity defense is even weaker" as to NBE must also fail. (Single Entity Br. at 11.) As an initial matter, the nature of the alleged restraint is irrelevant to the question of whether a collection of enterprises amounts to a single entity for the performance of a particular function. *See Am. Needle*, 560 U.S. at 194; *Copperweld*, 467 U.S. at 768–69. Neither *Copperweld*, *American Needle*, nor any authority Providers cite carves out an exception to the single-entity standard, set out in *American Needle*, for alleged territorial allocation or output restrictions.

Providers' argument is also irrelevant because, as Defendants have explained, Providers have no claims for NBE. (*See* SoR Br. § II; Damages MSJ Br. § II.) Providers certainly have no basis to challenge the single-entity defense as to NBE *separately*, because at the absolute most, Providers purport to challenge an *aggregation* of restraints. (*See, e.g.*, Doc. 2747 (Providers' SoR Opp'n) at 20 (arguing that "NBE is part of the Market Allocation Conspiracy'").) And, yet again, the Court has already resolved this precise issue against Providers. The Court was aware of the NBE rules when it issued its prior ruling on the Blues' single-entity defense (MSJ Op. at 18), and it nevertheless determined that defense to be viable (*id.* at 35). With Subscribers out of the case and NBE gone, the Court should reaffirm that decision now.

### B. Providers' Concession that BCBSA Is Like the NFL Proves Defendants' Point.

In rejecting the claim that *American Needle* forecloses the Blues' single-entity defense, the Court observed that governing the use of the Federal Marks is "analogous to licensing of the [NFL's] joint NFL mark, rather than the individual teams' marks" that were analyzed under Section 1 in *American Needle*. (MSJ Op. at 33.) Rather than challenging the Court's analysis, Providers instead turn to pre-*Copperweld* cases to argue that the NFL and its

constituent teams would not be a single entity if they "allocate[d] territories or restrict[ed] output," the conduct Providers purport to challenge in this case.  (Single Entity Br. at 12 (capitalization adjusted).)

Providers' reliance on such outdated cases is misplaced.  Post-*American Needle* caselaw concerning how the NFL manages its jointly held intellectual property (including the leaguewide NFL mark) confirms that the NFL *is* a single entity with respect to that function—even when plaintiffs allege that the independent NFL teams have conspired to restrict output or issue exclusive licenses that eliminate intra-league competition.  In *Washington v. National Football League*, plaintiffs challenged the NFL's licensing scheme for historical game footage because it restricted output by "constraining the sale of [players'] images and likenesses."  880 F. Supp. 2d 1004, 1005 (D. Minn. 2012).  Recognizing *American Needle*'s "holding that the NFL and its teams might . . . be capable of concerted action in violation of the Sherman Act" when licensing "intellectual property that each team owned separately from the NFL," the court in *Washington* held that the analysis is fundamentally different when "the intellectual property involved is . . . something that the individual teams do not separately own, and never have separately owned."  *Id.* at 1006.  Accordingly, it ruled that "[t]he NFL and its teams can conspire to market each teams' individually owned property, but not property the teams and the NFL can only collectively own," and dismissed the plaintiffs' Section 1 claims.  *Id.*

Several years later, the Southern District of New York reached a similar conclusion in *Spinelli v. National Football League*, 96 F. Supp. 3d 81 (S.D.N.Y. 2015).  In that case, plaintiffs alleged that NFL teams violated Section 1 by centralizing governance of joint intellectual property into the NFL and empowering the league to grant exclusive licenses for photographs, preventing the plaintiffs from negotiating "with individual NFL teams on better

12

terms." *Id.* at 107 (internal quotation marks omitted).  The court held that because the

photographs at issue in *Spinelli* "necessarily contain the intellectual property of more than one

entity," the NFL and its teams "must cooperate to produce and sell these images; no one entity

can do it alone." *Id.* at 114 (internal quotation marks omitted).  It therefore determined the

"[p]laintiffs ha[d] not plausibly alleged collective action by the NFL Defendants." *Id.*  The same

principles that motivated the courts in *Washington* and *Spinelli* apply to the Blues.  Like the NFL

teams in those cases, no Blue Plan has ever owned the Federal Marks, and no individual Plan can

govern those marks.  As a result, the Blues can govern the Federal Marks only as a single entity.

      Ignoring this recent authority, Providers instead ask the Court to decide what

*American Needle* and *Copperweld* require based on two cases that predate them both.  Those

cases, *Los Angeles Memorial Coliseum Commission v. National Football League*, 726 F.2d 1381

(9th Cir. 1984), and *North American Soccer League v. National Football League* ("*NASL*"), 670

F.2d 1249 (2d Cir. 1981), were both decided before the Supreme Court held in *Copperweld* that

legally separate companies can act as a single entity, and long before *American Needle*

confirmed that courts must always use a functional analysis to determine whether defendants'

conduct should be evaluated under Section 1.[6]  Without the benefit of that more recent authority,

*L.A. Memorial Coliseum* and *NASL* merely rejected an all-or-nothing argument that the NFL is

*always* a single entity—without considering whether it could still be a single entity for the

specific functions leading it to limit team relocation or outside investment.  *L.A. Mem'l*

---

[6] Providers say that "[i]f the Supreme Court had thought that *Copperweld* might affect the correctness of [*L.A. Memorial Coliseum*]," it could have granted certiorari and vacated the ruling rather than denying certiorari as it did. (Single Entity Br. at 13.)  But the Supreme Court has expressly "said again and again and again that [denial of certiorari] has no legal significance whatever bearing on the merits of the claim," and cautioned that such denial should not be treated as "evidence of [an earlier case's] precedential force." *Ramos v. Louisiana*, 140 S. Ct. 1390, 1404 n.56 (2020).

*Coliseum*, 726 F.2d at 1388–90; *NASL*, 670 F.2d at 1256–58.  In other words, the argument the

courts in *L.A. Memorial Coliseum* and *NASL* rejected is nothing like the Blues' argument here.

Indeed, the concurrence in *L.A. Memorial Coliseum* itself acknowledges that had

the Ninth Circuit applied a functional approach—as *Copperweld* and *American Needle* later

required—it could have held that the NFL was "a single entity for purposes of intra-league

regulation of relocation of existing franchises."[7]  *L.A. Mem'l Coliseum*, 726 F.2d at 1409–10

(Williams, J., concurring in part and dissenting in part); *see also id.* at 1409 ("No 'antitrust

exemption' for the N.F.L. would be created by holding that it is a single economic entity for

purposes of regulating franchise location.").  The post-*American Needle* decisions in *Washington*

and *Spinelli* demonstrate that this is precisely the case:  NFL teams performing functions they

can undertake only collectively do so as a single entity.  *Washington*, 880 F. Supp. 2d at 1006;

*Spinelli*, 96 F. Supp. 3d at 114–15.  That is the governing principle that defeats Providers'

motion on the merits.

**IV.    In Light of Providers' Concessions, the Court Would Even Be Justified in Entering Judgment for the Blues Based on the Blues' Single-Entity Defense.**

As Providers acknowledge, only two factual disputes precluded summary

judgment in favor of the Blues in the Court's prior decision:  "the validity and enforceability of

the Blue marks, [and] the Blues' willingness to compete under the Blue brand."  (Single Entity

---

[7] *Sullivan v. National Football League*, 34 F.3d 1091 (1st Cir. 1994), a post-*Copperweld* decision that Providers cite for the proposition that "*Copperweld* does not affect the Ninth Circuit's decision [in *L.A. Memorial Coliseum*]" (Single Entity Br. at 11), only proves the Blues' point.  Unlike *L.A. Memorial Coliseum* and *NASL*— which assumed that the NFL could either be a single entity for all functions or none at all—*Sullivan* applied a function-by-function analysis and held that "the NFL's *Copperweld* challenge is subsumed under the question of whether . . . NFL teams compete against each other *for the sale of their ownership interests.*"  *Sullivan*, 34 F.3d at 1099 (emphasis added).  That *Sullivan* ultimately did not determine the NFL was a single entity for that function lends no support to Providers' case.  *Sullivan* concerned "the sale of [NFL teams'] ownership interests," an asset each team holds and controls separately.  *Id.* at 1098.  Here, by contrast, the Blues do not have, and have never had, the individual ownership necessary to compete in the governance of the Federal Marks' use.

Br. at 4; *see also* MSJ Op. at 34–35.)  Recent concessions by Providers resolve both factual disputes in favor of the Blues.

      *First*, Providers now clarify that they "are not asking the Court to cancel the Blues' federal registrations." (Trademark Br. at 9.)  This is not surprising:  the Federal Marks have been in continuous use for more than 70 consecutive years (Add'l Facts ¶ 3) and are, therefore, "incontestable" under the Lanham Act.  *See* 15 U.S.C. § 1065 (once a registered mark has been "in continuous use for five consecutive years subsequent to the date of . . . registration," the owner's right to that mark is deemed "incontestable"); (*see also* Add'l Facts ¶ 2 (USPTO has acknowledged affidavits of incontestability for the Federal Marks)).  Incontestability is "conclusive evidence of the validity of the registered mark . . . ."  15 U.S.C. § 1115(b).  The limited grounds for cancellation of an incontestable trademark are expressly set out by statute, *see* 15 U.S.C. § 1064(3), and Providers do not contend any of them applies here.  To the contrary, Providers specifically state that they are not challenging the validity of the Federal Marks.  (Trademark Br. at 9.)  Consequently, the Federal Marks are incontestable and valid.[8] *See Blue Cross & Blue Shield Assoc. v. Blue Cross Mut. Clinic, Inc.*, 612 F. Supp. 41, 44 (S.D. Fla. 1985) ("THE ASSOCIATION'S incontestable federal registrations establish conclusively

---

[8]  Defendants respectfully submit that the Court's prior conclusion that Plaintiffs had raised a question of fact about the validity of the Federal Marks (MSJ Op. at 34) was incorrect, because the Court was not presented with the Lanham Act's incontestability provisions.  That "it is not entirely clear . . . that the Blue Cross and Blue Shield bodies who applied for the respective federal trademarks had the authority to do so at the time the applications were submitted" (*Id.* at 34 n.12), is not a basis to invalidate an incontestable trademark under the Lanham Act.  *See* 15 U.S.C. § 1064(3).  Even submitting an inaccurate application is not sufficient to invalidate an otherwise incontestable mark absent "clear and convincing evidence" of a "knowingly . . . false, material representation" with the specific "intent to deceive [the U.S. Patent and Trademark Office]."  *In re Bose Corp.*, 580 F.3d 1240, 1243–45 (Fed. Cir. 2009); *see also Sovereign Mil. Hospitaller Ord. of Saint John of Jerusalem of Rhodes & of Malta v. Fla. Priory of Knights Hospitallers of Sovereign Ord. of Saint John of Jerusalem, Knights of Malta, Ecumenical Ord.*, 702 F.3d 1279, 1292 (11th Cir. 2012).  No one has ever alleged such a specific intent here, nor is there any factual basis to do so.

the validity of [BCBSA's] BLUE CROSS word service marks and BLUE CROSS design service marks and THE ASSOCIATION'S right to the exclusive use of these marks in commerce.").

*Second*, Providers admit that the Association owns and has the power to license the Federal Marks (Single Entity Br. Facts ¶ 7; Boycott Br. Facts ¶ 6), rendering irrelevant any remaining dispute about "the Blues' willingness to compete under the Blue brand" (Single Entity Br. at 1). Since—as Providers concede—the Federal Marks are held by the Association alone, individual Plans' purported "willingness to compete" under the Blue Brands has no bearing on the Section 1 analysis. Regardless of whether individual Plans would be *willing* to compete under the Federal Marks if they had unilateral authority to govern their use, the fact remains that no Plan possesses (or has ever possessed) such authority. Individual Plans' preferences for governing the Federal Marks are therefore no different from the "competing interests" that exist within "a single firm." *Chi. Pro. Sports*, 95 F.3d at 598; *see also Fraser*, 284 F.3d at 56; *Mt. Pleasant*, 838 F.2d at 277.

Providers' motion therefore offers no new reason to reject the Blues' single-entity defense—but instead reveals undisputed evidence that the Blues operate as a single entity in governing the use of the Federal Marks. In light of Providers' admissions, the Court would be justified in granting summary judgment in favor of the Blues.[9]

## CONCLUSION

Providers' Motion for Partial Summary Judgment on the Defendants' Single Entity Defense should be denied in its entirety.

---

[9] *See* Fed. R. Civ. P. 56(f); *see also Cafaro v. Zois*, 693 F. App'x 810, 815–16 (11th Cir. 2017) (affirming summary judgment in favor of nonmovant where nonmovant's opposition requested the court consider such relief).

Dated:  August 20, 2021

Respectfully submitted,

*/s/ Evan R. Chesler*
Evan R. Chesler
Christine A. Varney
Karin A. DeMasi
Lauren R. Kennedy
David H. Korn
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY  10019
Tel: (212) 474-1000
Fax: (212) 474-3700
echesler@cravath.com
cvarney@cravath.com
kdemasi@cravath.com
lkennedy@cravath.com
dkorn@cravath.com

*Coordinating Counsel for Defendant
Blue Cross and Blue Shield Association;
Counsel for Defendants Blue Cross and
Blue Shield of Alabama; Blue Cross and
Blue Shield of Florida, Inc.; Blue Cross
and Blue Shield of Massachusetts, Inc.;
Blue Cross and Blue Shield of North
Carolina, Inc.; BlueCross BlueShield
of Tennessee, Inc.; California
Physicians' Service d/b/a Blue Shield of
California; CareFirst, Inc.; CareFirst of
Maryland, Inc.; Group Hospitalization
and Medical Services, Inc.; CareFirst
BlueChoice, Inc.; Health Care Service
Corporation, an Illinois Mutual Legal
Reserve Company, including its
divisions Blue Cross and Blue Shield of
Illinois, Blue Cross and Blue Shield of
Texas, Blue Cross and Blue Shield of
New Mexico, Blue Cross and Blue
Shield of Oklahoma, and Blue Cross and
Blue Shield of Montana; Caring for
Montanans, Inc., f/k/a Blue Cross and
Blue Shield of Montana, Inc.*

Craig A. Hoover
E. Desmond Hogan
Justin Bernick
Peter Bisio
Elizabeth Jose
HOGAN LOVELLS US LLP
Columbia Square
555 13th Street, N.W.
Washington, DC  20004
Tel: (202) 637-5600
Fax: (202) 637-5910
craig.hoover@hoganlovells.com
desmond.hogan@hoganlovells.com
justin.bernick@hoganlovells.com
peter.bisio@hoganlovells.com
elizabeth.jose@hoganlovells.com

*Counsel for Anthem, Inc., f/k/a WellPoint, Inc.,
and all of its named subsidiaries in this
consolidated action; Louisiana Health Service &
Indemnity Company (Blue Cross and Blue Shield
of Louisiana); BCBSM, Inc. (Blue Cross and Blue
Shield of Minnesota); Blue Cross and Blue Shield
of South Carolina; Horizon Healthcare Services,
Inc. (Horizon Blue Cross and Blue Shield of New
Jersey); Blue Cross & Blue Shield of Rhode
Island; Blue Cross and Blue Shield of Vermont;
Cambia Health Solutions, Inc.; Regence Blue
Shield of Idaho; Regence Blue Cross Blue Shield
of Utah; Regence Blue Shield (of Washington);
Regence Blue Cross Blue Shield of Oregon*


John D. Martin
Lucile H. Cohen
Travis A. Bustamante
NELSON MULLINS RILEY &
SCARBOROUGH LLP
1320 Main Street, 17th Floor
Columbia, SC  29201
Tel: (803) 255-9421
Fax: (803) 256-7500
john.martin@nelsonmullins.com
lucie.cohen@nelsonmullins.com
travis.bustamante@nelsonmullins.com

David J. Zott, P.C.
Daniel E. Laytin, P.C.
Sarah J. Donnell
Christa C. Cottrell, P.C.
Zachary Holmstead
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
Tel: (312) 862-2000
Fax: (312) 862-2200
david.zott@kirkland.com
daniel.laytin@kirkland.com
sarah.donnell@kirkland.com
christa.cottrell@kirkland.com
zachary.holmstead@kirkland.com

*Counsel for Blue Cross Blue Shield
Association*


Kimberly R. West (Liaison Counsel)
Mark M. Hogewood
WALLACE, JORDAN, RATLIFF &
BRANDT, LLC
First Commercial Bank Building
800 Shades Creek Parkway, Suite 400
Birmingham, AL  35209
Tel: (205) 870-0555
Fax: (205) 871-7534
kwest@wallacejordan.com
mhogewood@wallacejordan.com

*Counsel for Defendants Blue Cross Blue
Shield Association; Health Care Service
Corporation, an Illinois Mutual Legal
Reserve Company, including its
divisions Blue Cross and Blue Shield of
Illinois, Blue Cross and Blue Shield of
Texas, Blue Cross and Blue Shield of
New Mexico, Blue Cross and Blue
Shield of Oklahoma, and Blue Cross and
Blue Shield of Montana; Caring for
Montanans, Inc., f/k/a Blue Cross and
Blue Shield of Montana, Inc.; Highmark
Inc., f/k/a Highmark Health Services;
Highmark West Virginia Inc.; Highmark
Blue Cross Blue Shield Delaware Inc.;*

*Counsel for Anthem, Inc., f/k/a WellPoint, Inc., and all of its named subsidiaries in this consolidated action; Blue Cross and Blue Shield of North Carolina, Inc.; Louisiana Health Service & Indemnity Company (Blue Cross and Blue Shield of Louisiana); BCBSM, Inc. (Blue Cross and Blue Shield of Minnesota); Blue Cross and Blue Shield of South Carolina; Horizon Healthcare Services, Inc. (Horizon Blue Cross and Blue Shield of New Jersey); Blue Cross & Blue Shield of Rhode Island; Blue Cross and Blue Shield of Vermont; Cambia Health Solutions, Inc.; Regence Blue Shield of Idaho; Regence Blue Cross Blue Shield of Utah; Regence Blue Shield (of Washington); Regence Blue Cross Blue Shield of Oregon; Blue Cross & Blue Shield of Mississippi, a Mutual Insurance Company; Wellmark of South Dakota, Inc. (Wellmark Blue Cross and Blue Shield of South Dakota); Wellmark, Inc. (Wellmark Blue Cross and Blue Shield of Iowa); Hawaii Medical Service Association (Blue Cross and Blue Shield of Hawaii); Triple-S Salud, Inc; Defendants Blue Cross and Blue Shield of Florida, Inc.; Blue Cross and Blue Shield of Massachusetts, Inc.; BlueCross BlueShield of Tennessee, Inc.*

Cavender C. Kimble
BALCH & BINGHAM LLP
1901 6th Avenue North, Suite 1500
Birmingham, AL 35203-4642
Tel: (205) 226-3437
Fax: (205) 488-5860
ckimble@balch.com

*Counsel for Anthem, Inc., f/k/a WellPoint, Inc., and all of its named subsidiaries in this consolidated action; Blue Cross and Blue Shield of North Carolina, Inc.; Louisiana Health Service & Indemnity Company (Blue Cross and Blue Shield of Louisiana); BCBSM, Inc. (Blue Cross and Blue Shield of Minnesota); Blue Cross and Blue Shield of South Carolina; Horizon Healthcare Services, Inc. (Horizon Blue Cross and Blue Shield of New Jersey); Blue Cross & Blue Shield of Rhode Island; Blue Cross and Blue Shield of Vermont; Cambia Health Solutions, Inc.; Regence Blue*

*California Physicians' Service d/b/a Blue Shield of California; Wellmark of South Dakota, Inc. (Wellmark Blue Cross and Blue Shield of South Dakota); Wellmark, Inc. (Wellmark Blue Cross and Blue Shield of Iowa); Hawaii Medical Service Association (Blue Cross and Blue Shield of Hawaii)*

James L. Priester
Carl S. Burkhalter
John Thomas A. Malatesta, III
MAYNARD COOPER & GALE PC
1901 6th Avenue North, Suite 2400
Regions Harbert Plaza
Birmingham, AL 35203
Tel: (205) 254-1000
Fax: (205) 254-1999
jpriester@maynardcooper.com
cburkhalter@maynardcooper.com
jmalatesta@maynardcooper.com

Pamela B. Slate
HILL CARTER FRANCO COLE &
BLACK, P.C.
425 South Perry Street
Montgomery, AL 36104
Tel: (334) 834-7600
Fax: (334) 386-4381
pslate@hillhillcarter.com

*With Cravath, Swaine & Moore LLP, counsel for Defendant Blue Cross Blue Shield of Alabama*

Helen E. Witt, P.C.
Jeffrey J. Zeiger, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Tel: (312) 862-2000
Fax: (312) 862-2200
hwitt@kirkland.com
jzeiger@kirkland.com

*Shield of Idaho; Regence Blue Cross Blue Shield of Utah; Regence Blue Shield (of Washington); Regence Blue Cross Blue Shield of Oregon*

Gwendolyn Payton
KILPATRICK TOWNSEND & STOCKTON LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA  98101
Tel: (206) 626-7714
Fax: (206) 299-0414
gpayton@kilpatricktownsend.com

*Counsel for Defendants Premera Blue Cross, d/b/a Premera Blue Cross Blue Shield of Alaska*

Brian K. Norman
SHAMOUN & NORMAN, LLP
1800 Valley View Lane, Suite 200
Farmers Branch, TX  75234
Tel: (214) 987-1745
Fax: (214) 521-9033
bkn@snlegal.com

H. James Koch
ARMBRECHT JACKSON LLP
RSA Tower, 27th Floor
11 North Water Street
Mobile, AL  36602
Tel: (251) 405-1300
Fax: (251) 432-6843
hjk@ajlaw.com

*Counsel for Defendants CareFirst, Inc.; CareFirst of Maryland, Inc.; Group Hospitalization and Medical Services, Inc.; CareFirst BlueChoice, Inc.*

R. David Kaufman
M. Patrick McDowell
BRUNINI, GRANTHAM, GROWER
& HEWES, PLLC
190 East Capitol Street
The Pinnacle Building, Suite 100
Jackson, MS  39201
Tel: (601) 948-3101
Fax: (601) 960-6902

*Counsel for Defendants Health Care Service Corporation, an Illinois Mutual Legal Reserve Company, including its divisions Blue Cross and Blue Shield of Illinois, Blue Cross and Blue Shield of Texas, Blue Cross and Blue Shield of New Mexico, Blue Cross and Blue Shield of Oklahoma, and Blue Cross and Blue Shield of Montana; Caring for Montanans, Inc., f/k/a Blue Cross and Blue Shield of Montana, Inc.; Highmark Inc., f/k/a Highmark Health Services; Highmark West Virginia Inc.; Highmark Blue Cross Blue Shield Delaware Inc.; Highmark Western and Northeastern New York Inc.*

Jonathan M. Redgrave
REDGRAVE, LLP
14555 Avion Parkway, Suite 275
Chantilly, VA  20151
Tel: (703) 592-1155
Fax: (612) 332-8915
jredgrave@redgravellp.com

*Additional Counsel for HCSC and Highmark Defendants*

Todd M. Stenerson
Brian C. Hauser
Edmund Y. Saw
SHEARMAN & STERLING LLP
401 9th Street, N.W., Suite 800
Washington, DC  20004
Tel: (202) 508-8000
Fax: (202) 508-8100
todd.stenerson@shearman.com
brian.hauser@shearman.com
edmund.saw@shearman.com

Sarah L. Cylkowski
Thomas J. Rheaume, Jr.
BODMAN PLC
1901 Saint Antoine Street

dkaufman@brunini.com
pmcdowell@brunini.com

Cheri D. Green
BLUE CROSS & BLUE SHIELD OF
MISSISSIPPI, A MUTUAL INSURANCE
COMPANY
P.O. Box 1043
Jackson, MS  39215
Tel: (601) 932-3704
cdgreen@bcbsms.com

*Counsel for Defendant Blue Cross & Blue Shield
of Mississippi, a Mutual Insurance Company*

Michael A. Naranjo
FOLEY & LARDNER LLP
555 California Street, Suite 1700
San Francisco, CA  94104
Tel: (415) 984-9847
Fax: (415) 434-4507
mnaranjo@foley.com

Alan D. Rutenberg
Benjamin R. Dryden
FOLEY & LARDNER LLP
3000 K Street, N.W., Suite 600
Washington, DC  20007
Tel: (202) 672-5300
Fax: (202) 672-5399
arutenberg@foley.com
bdryden@foley.com

*Counsel for Defendant USAble Mutual Insurance
Company, d/b/a Arkansas Blue Cross and
Blue Shield*

Robert K. Spotswood
Michael T. Sansbury
Joshua K. Payne
Jess R. Nix
Morgan B. Franz
SPOTSWOOD SANSOM & SANSBURY LLC
Financial Center
505 20th Street North, Suite 700
Birmingham, AL  35203

6th Floor at Ford Field
Detroit, MI  48226
Tel: (313) 259-7777
Fax: (734) 930-2494
scylkowski@bodmanlaw.com
trheaume@bodmanlaw.com

Andy P. Campbell
A. Todd Campbell
Yawanna N. McDonald
CAMPBELL PARTNERS LLC
505 North 20th Street, Suite 1600
Birmingham, AL  35203
Tel: (205) 224-0750
Fax: (205) 224-8622
andy@campbellpartnerslaw.com
todd@campbellpartnerslaw.com
yawanna@campbellpartnerslaw.com

*Counsel for Defendant Blue Cross and
Blue Shield of Michigan*

John Briggs
Rachel Adcox
Jeny M. Maier
AXINN, VELTROP & HARKRIDER,
LLP
1901 L Street, N.W.
Washington, DC  20036
Tel: (202) 912-4700
Fax: (202) 912-4701
jbriggs@axinn.com
radcox@axinn.com
jmaier@axinn.com

Stephen A. Rowe
Aaron G. McLeod
ADAMS AND REESE LLP
Regions Harbert Plaza
1901 6th Avenue North, Suite 3000
Birmingham, AL  35203
Tel: (205) 250-5000
Fax: (205) 250-5034
steve.rowe@arlaw.com
aaron.mcleod@arlaw.com

Tel: (205) 986-3620
Fax: (205) 986-3639
rks@spotswoodllc.com
msansbury@spotswoodllc.com
jpayne@spotswoodllc.com
jnix@spotswoodllc.com
mfranz@spotswoodllc.com

*Counsel for Defendant Capital BlueCross*

Robert R. Riley, Jr.
RILEY & JACKSON, P.C.
3530 Independence Drive
Birmingham, AL  35209
Tel: (205) 879-5000
Fax: (205) 879-5901
rob@rileyjacksonlaw.com

*Counsel for Defendants Blue Cross and Blue
Shield of Florida, Inc.; Blue Cross and Blue Shield
of Massachusetts, Inc.; BlueCross BlueShield
of Tennessee, Inc.*

Edward S. Bloomberg
John G. Schmidt Jr.
Anna Mercado Clark
PHILLIPS LYTLE LLP
One Canalside
125 Main Street
Buffalo, NY  14203
Tel: (716) 847-8400
Fax: (716) 852-6100
ebloomberg@phillipslytle.com
jschmidt@phillipslytle.com
aclark@phillipslytle.com

Stephen A. Walsh
WEINBERG, WHEELER, HUDGINS,
GUNN & DIAL
100 Corporate Parkway
One Lake Level
Birmingham, AL  35242
Tel: (205) 572-4107
Fax: (205) 572-4199
swalsh@wwhgd.com

*Counsel for Defendant Independence
Blue Cross*

Kathleen Taylor Sooy
Tracy A. Roman
Sarah Gilbert
Honor Costello
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC  20004
Tel: (202) 624-2500
Fax: (202) 628-5116
ksooy@crowell.com
troman@crowell.com
sgilbert@crowell.com
hcostello@crowell.com

John M. Johnson
Brian P. Kappel
LIGHTFOOT FRANKLIN & WHITE
LLC
The Clark Building
400 20th Street North
Birmingham, AL  35203
Tel: (205) 581-0700
Fax: (205) 581-0799
jjohnson@lightfootlaw.com
bkappel@lightfootlaw.com

*Counsel for Defendants Blue Cross of
Idaho Health Service, Inc.; Blue Cross
and Blue Shield of Kansas, Inc.; Blue
Cross and Blue Shield of Kansas City;
Blue Cross and Blue Shield of
Nebraska; Blue Cross Blue Shield of
Arizona; Blue Cross Blue Shield of
North Dakota; Blue Cross Blue Shield
of Wyoming*

David J. Zott, P.C.
Daniel E. Laytin, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
Tel: (312) 862-2000

*Counsel for Defendant, Excellus Health Plan, Inc., d/b/a Excellus BlueCross BlueShield, incorrectly sued as Excellus BlueCross BlueShield of New York*

Fax: (312) 862-2200
david.zott@kirkland.com
daniel.laytin@kirkland.com

*Counsel for Defendants Wellmark of South Dakota, Inc. (Wellmark Blue Cross and Blue Shield of South Dakota); Wellmark, Inc. (Wellmark Blue Cross and Blue Shield of Iowa); Hawaii Medical Service Association (Blue Cross and Blue Shield of Hawaii); Triple-S Salud, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 20, 2021, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *Evan R. Chesler*
Evan R. Chesler