FILED
2021 Sep-03 PM 05:45
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| IN RE: BLUE CROSS BLUE SHIELD ANTITRUST LITIGATION<br><br>MDL. NO. 2406 | Master File 2:13-cv-20000-RDP<br><br>This document relates to Subscriber Class cases |

**Supplemental Declaration of Dr. Daniel L. Rubinfeld in Support of the Proposed Subscriber Class Settlement**

**I. INTRODUCTION**

    **A. Qualifications**

    1.    I am the Robert L. Bridges Professor of Law and Professor of Economics Emeritus at the University of California, Berkeley and Professor of Law at NYU.

    2.    I served as Deputy Assistant Attorney General at the Antitrust Division of the U.S. Department of Justice from June 1997 through December 1998. In that position, I was responsible for supervising a staff of approximately 70 Ph.D. economists, financial analysts, and research assistants with respect to a wide range of antitrust matters, including monopolization, price fixing, and other restraints of trade. While at the Department of Justice, I played an active role in the drafting of the Antitrust Guidelines for Collaborations Among Competitors.

    3.    I received my A.B. degree in mathematics from Princeton in 1967 and my Ph.D. in economics from M.I.T. in 1972. I have previously taught at the University of Michigan and have been a Visiting Professor at the law schools of Stanford University, the University of Geneva, the University of Hamburg (on several occasions), the University of Virginia, Catholica University of Lisbon, the University of Bergen (on several occasions), and New York University (on numerous occasions). I am the author of two textbooks, *Microeconomics* and *Econometric Models and Economic Forecasts* (both with Robert Pindyck). I have received fellowships from the National Bureau of Economic Research, the John M. Guggenheim Foundation, and the Center for Advanced Studies in the Behavioral Sciences. I am a past President of the American Law and Economics Association. I am currently a Fellow of the American Academy of Arts and Sciences and a Fellow of the National Bureau of Economic Research.

    4.    My research interests have spanned a range of subject matters, including industrial organization and antitrust policy, the economics of legal rules and institutions, public economics, and law and statistics. I have published or edited seven books and over 100 articles. I have

1

consulted and testified extensively on antitrust, intellectual property, public regulation, and damages issues, for private parties and for the U.S. Department of Justice, the Federal Trade Commission, the U.S. Treasury, the Competition Directorate of the European Union, and various State Attorneys General.

5.My recent teaching includes *Antitrust Law and Economics* and *Quantitative Methods in Law* (co-taught with Katherine Forrest, then-United States District Judge for the Southern District of New York).

6.A current copy of my curriculum vitae is included as Attachment 1.

**B. Background and Assignment**

7.I submitted a Declaration dated October 30, 2020 concerning my evaluation of the potential economic impact of the relief set forth in the proposed Settlement Agreement with the subscriber class. In particular, I was asked at that time by counsel for the subscriber class to evaluate the settlement in light of the opinions that I have offered concerning the nature of restraints currently imposed by the Blue Cross Blue Shield Association ("BCBSA") with respect to designated Exclusive Service Areas ("ESAs") and the so-called "best efforts" clauses contained in the BCBSA license agreements.

8.I also previously offered an opinion, dated April 15, 2019, at the class certification stage of this proceeding, in which I discussed the impact of the combination of restraints at issue in the litigation, including the ESAs and national best efforts clauses ("NBEs"). I examined the language of the challenged restraints themselves, and I concluded, based on that language, that the restraints, in their totality, are anticompetitive. I identified no compelling procompetitive justification for the restrictions.

9.I refer to my earlier declarations for details concerning the substantial case materials and other documents that I reviewed in connection therewith.

2

10. In my October 30, 2020 Declaration, I concluded that the relief in the proposed subscriber class settlement directly addresses the competitive restraints discussed in my earlier report. I also concluded tthat the relief is likely to generate significant procompetitive effects in the marketplace in terms of increased competition among Blues, unbranded ("Green") growth and competition, scale economies that may result in increased output, higher quality service, increased innovation, and lower insurance premiums and prices to subscribers, both for fully-insureds and self-insureds (and their members).

11. I have been asked by counsel for the subscriber class to review certain objections that have been submitted since the proposed settlement was presented to the Court for preliminary approval, and to evaluate whether such objections alter the conclusions that I reached in my October 30, 2020 Declaration. In particular, I have focused on objections that comment on the access of self-funded, administrative-services-only plans ("ASOs") to a second Blue bid as a settlement feature. These include the objections submitted on behalf of Home Depot U.S.A., Inc.; General Motors Company and General Motors LLC; the so-called "National Account Objectors"; and the "Taft-Hartley Objectors."

**II. THE PROPOSED SETTLEMENT'S RELIEF AND COMPETITIVE IMPACT**

12. After consideration of the referenced objections to the proposed settlement, I affirm the opinions set forth in my October 30, 2020 Declaration, including my opinion that the settlement provides increased opportunity for competition in the market for national accounts. In addition, I set forth briefly below some key points concerning the competitive effects of the proposed settlement that are largely unaddressed or ignored by these objections.

13. The proposed settlement includes provisions that address each of the anticompetitive restraints challenged by the subscriber class. These provisions are clearly pro-competitive; are in the interests of the settlement class as a whole; and, taken together, can be

3

anticipated to open the marketplace to competition that is beneficial to all class members, both fully-insured and self-insured.

14. As I explained more fully in my October 30, 2020 Declaration, the proposed settlement eliminates entirely the most pernicious competitive restraints imposed by the BCBSA. These restraints are the NBEs. The NBEs serve as the system's crucial enforcement mechanism for the ESAs and are used to limit *any* competition among the Plans – whether Blue or non-Blue branded ("Green"), and whether occurring inside or outside of ESAs.

15. Objections premised upon the specific availabililty of a second Blue bid fail to account for the fact that the whole of the Settlement—including increased competition across-the-board on a Green basis as well as the the prospective offer of a second Blue bid for national accounts--has procompetitive effects for the entire class. Class members benefit directly from the potential for a multiplicity of bids, which are available to all through the proposed settlement in terms of Green bids as well as to many through a second Blue bid. For example, any number of BCBS entities could, under the proposed settlement, offer class members numerous Green bids for non-Blue branded healthcare.

16. As a fundamental economic matter, all class members also benefit from the increased flow of pricing information to insurance brokers and otherwise throughout the market that results from increased bidding competition, including from bids not presented to or even available to them. In other words, it is to be expected that class members that do not or cannot obtain a second Blue bid will nonetheless benefit economically not only from the actual or potential Green bidding for their account, but also from the potential for Blue bidding available to qualified others.

17.     An increase in competition in the ASO marketplace could also be anticipated to increase efficiency, increase innovation, and put downward pressure on pricing. The role of consultants and other third parties will also likely increase transparency of the pricing in the ASO marketplace, where the underlying product is an administrative one.

18.     In sum, for these reasons and those stated in in my October 30, 2020 Declaration, the proposed structural relief provided by the Settlement Agreement promotes innovative products, consumer choice, and price competition that are beneficial for the entire class, the economic effects of which must properly be evaluated in their entirety.

Signed in Rockville, Maryland this 25th day of August, 2021

*Daniel L. Rubinfeld* (signature)

Daniel L. Rubinfeld

5