# EXHIBIT

# 15

July 14, 2021

Claims Administrator
Blue Cross Blue Shield Settlement c/o JND Legal Administration
PO Box 91393, Seattle, WA 98111, (888) 681-1142

**In re: Blue Cross Blue Shield Antitrust Litigation**

To the Claims Administrator:

We object to the proposed settlement in that the online claim form, for the selection of Health Plan Names, does not include "Lifewise Health Plan of Washington" (Lifewise), with the reasonable conclusion that the settlement does not include the Lifewise health plan.

To the best of our knowledge, Lifewise was a subsidiary of Premera Blue Cross (Premera) which was marketed and sold to non-group customers, such as the self-employed. Correspondence (see attachment 1) to us from Lifewise referenced Premera and a Premera hotline number for reporting insurance fraud.

It was reported (see attachment 2) on or about Feb 6, 2020 that Mike Kreidler, The Washington State Office of Insurance Commissioner, recently "... fined Premera Blue Cross $100,000 and its **sister** company, Lifewise Health Plan of Washington, $50,000 for multiple violations ...".

These facts strongly suggest that Lifewise was effectively a Premera business. We believe the involved legal teams can readily research the Premera/Lifewise corporate structures in effect during the settlement period and ascertain their relationship to the court's satisfaction.

We believe it is reasonable to conclude that Lifewise customers suffered similar injury as Premera customers and should be included in the settlement class(es).

We have filed online claims for our Premera                                                        and our
(Premera)/Lifewise                                           ) health insurance plans. We have no counsel representing us, nor related agreements, nor do we intend to appear at the Final Fairness Hearing. We attest that the above facts are true to the best of our recollection and knowledge, under penalties for perjury.

Sincerely,

*Joseph M Boska*

Joseph M. Boska

                    Sequim, WA 98023

*Michelle J Boska*

Michelle J. Boska

               t, Sequim, WA 98023



ATTACHMENT 2



For Consumers

# Kreidler fines three Washington health insurers for law violations

Contact Public Affairs: 360-725-7055

February 6, 2020

OLYMPIA, Wash. – Washington state Insurance Commissioner Mike Kreidler fined three Washington state health insurers for violating insurance laws and rules.

Kreidler fined UnitedHealthcare of Washington, Inc., $5,000 for not using its correct, legal name 297 times in 2018 on checks and on correspondence with policyholders and medical providers. It used three incorrect names: UnitedHealthcare of Washington, UnitedHealthCare Insurance Company and UnitedHealthcare Services, Inc. State law requires insurers to use their legal name as a transparency measure for consumers

Kreidler also fined Premera Blue Cross $100,000 and its sister company, LifeWise Health Plan of Washington, $50,000 for multiple violations in 2018 and 2019 related to how they handled pre-authorizations for treatment and policyholders' appeals. The issues were discovered after consumers filed complaints with Kreidler's office.

One consumer filed a complaint after his planned December 2018 back surgery had to be rescheduled because Premera failed to authorize the procedure in a timely manner. The delay resulted in the surgery being rescheduled for January 2019, after his deductible renewed and he had to pay more out of pocket than he would have on the original surgery date.

Kreidler's review found that:

Premera delayed responding to more than 5,000 preauthorization requests, representing 3% of its 2018 total. The delays caused 43 policyholders, including the original complainant, financial harm exceeding $47,000, which Premera refunded in August 2019.

LifeWise delayed responding to 447 preauthorization requests, representing 4% of its 2018 total. The delays caused seven policyholders financial harm exceeding $6,000, which it refunded in August 2019.

A second consumer filed a complaint that Premera failed to properly process her appeal of its decision to deny medically necessary treatment. The consumer has a rare disorder that requires lifelong, regular physical therapy to avoid further complications.

Premera started denying treatment in October 2018 when the consumer had used 20 of the 25 visits the plan allowed. The consumer continued to work through the appeals process, and Premera continued to deny or ignore the appeals. The consumer filed a complaint with Kreidler's office in March 2019 and Premera finally granted an independent review appeal in May 2019, seven months after the initial request. State law requires insurers to forward appeals to independent review organizations within three days.

Kreidler's review found that from January 2019 until September 2019, Premera and LifeWise sent more than 300 appeal forms to policyholders that contained inaccurate information about appeals timelines.

A third consumer filed a complaint after LifeWise denied a claim for out-of-state emergency treatment in August 2018. After the consumer appealed, LifeWise agreed to pay the claim for emergency services at the in-network rate but denied the appeal to pay surprise billing charges. LifeWise failed to inform the policyholder about the right to appeal the surprise bill. State law requires insurers to give consumers appeal information within five business days of a claim denial.

This legal action is not related to the customer service issues that Premera and LifeWise customers have been experiencing since late December. Kreidler's office and the state Health Benefit Exchange estimate that about 2,000 Washington consumers are affected. Kreidler encourages consumers who are experiencing problems with accessing their Premera or LifeWise benefits to file a complaint with us. He is

# EXHIBIT 16

| | |
|---|---|
| **From:** | ████████ |
| **To:** | BCBSsettlement; BCBS-Settlement@bsfllp.com; BCBSsettlement@kirkland.com |
| **Subject:** | Fw: In re: Blue Cross Blue Shield Antitrust Litigation |
| **Date:** | Tuesday, May 11, 2021 4:06:34 PM |

----- Forwarded Message -----
**From:** AT&T Yahoo Mail ████████████████
**To:** BCBSsettlement@kirkland.com <bcbssettlement@kirkland.com>
**Sent:** Tuesday, May 11, 2021, 04:00:49 PM EDT
**Subject:** In re: Blue Cross Blue Shield Antitrust Litigation

To Whom it may concern:
I am writing you to place an objection to the Blue Cross Blue Shield Antitrust Litigation lawsuit.  I am:

Betty L.Brown

████████████████

Yale, MI 48097

████████████████

    I was employed by ████████████████████████████████

    I object to this lawsuit.  In my, and my husband's opinion, Blue Cross and Blue Shield is the finest health care Insurance in this country. We have always been able to see any doctor we needed to see in a timely manner and have had very reasonable co-pays that have kept our medical costs at rates that all of my family and friends envy.  I believe that the administration of this insurance should be held up as a model for all insurance companies.  I believe this lawsuit is ridiculous.  If anything, BC/BS has proven that HMO's are a poor second to traditional health insurance models.  I do not want to be part of this lawsuit.  Please remove my name this lawsuit.  In my opinion the Court should not consider approving the settlement.  The should throw the case out.

# EXHIBIT 17



Received
AUG 02 2021
by JNDLA

# GEORGE W. COCHRAN
## Attorney at Law

Cochran Professional Building
1981 Crossfield Circle
Kent, Ohio 44240

Telephone: 330.607.2187
Facsimile:  330.230.6136
Email:  lawchrist@gmail.com

July 27, 2021

**Claims Administrator:**
Blue Cross Blue Shield Settlement
c/o JND Legal Administration
PO Box 91393
Seattle, WA 98111

**Plaintiffs' Co-Lead Counsel:**
Blue Cross Blue Shield Settlement
c/o Michael D. Hausfeld
HAUSFELD LLP
888 16th Street NW, Suite 300
Washington, DC 20006

Blue Cross Blue Shield Settlement
c/o David Boies
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, NY 10504

**Counsel for Settling Defendants:**
Dan Laytin
KIRKLAND & ELLIS LLP
300 N. LaSalle St.
Chicago, IL 60657

Subject:     *In re: Blue Cross Blue Shield Antitrust Litigation* (MDL 2406) 2:13-cv-20000-RD
             Notice of Objections to Class Action Settlement

## 1. **Objector Information**

Jennifer Cochran

Louisville, Kentucky 40299

Aaron Craker

Louisville, Kentucky 40299



### *OBJECTIONS APPLY TO ALL FI AUTHORIZED CLAIMANTS*

## 2. **Counsel Information**

George W. Cochran
Law Office of George W. Cochran
1981 Crossfield Circle
Kent, Ohio 44240
(330) 607-2187
lawchrist@gmail.com

**Class Objections Commenced Since 07/27/16**

Counsel objects to providing this information for the following reasons:

1. Class Counsel's true objective is to intimidate class members.
2. They also seek to deter objector representation.
3. They also seek to prejudice the Court.
4. Not all attorneys who represent class objectors are "serial objectors."
5. The disclosures are irrelevant to the merits of Cochran and Craker's objections.
6. They are also unduly burdensome for counsel to produce.
7. Disclosure of some of the information would violate confidentiality agreements.
8. Counsel's past representation of objectors is a matter of public record.
9. A class member's right to object exists independently of legal representation.
10. The existing safeguards for addressing frivolous objections are adequate.

Without waiving these objections, counsel offers the following list of class objections commenced since July 27, 2016 (to the best of his knowledge and recollection):

*In re: Equifax Inc. Customer Data Security Breach Litigation* (ND Ga. 1:17-md-2800)
*In re: Optical Disk Drive Products Antitrust Litigation* (ND Cal. 3:10-MD-2143)
*In re: National Football League Players' Concussion Injury Litigation* (ED Pa. 2:12-md-02323)
*Omar Vargas, et al. v. Ford Motor Company* (CD Cal. 2:12-cv-08388)
*Shahriar Jabbariuber, et al. v Wells Fargo & Company, et al.* (ND Cal. 15-cv-02159)
*In re: Syngenta Ag Mir162 Corn Litigation* (DC Kansas 2:14-MD-02591
*William Bowen v Farmers Ins. Of Columbus, Inc.* (Cuyahoga Cty. Com. Pl. Ct. No. 09-688770)
*Staci Chester, et al. v The TJX Companies, Inc., et al.* (CD Cal. 5:15-cv-01437)
*In Re: Takata Airbag Products Liability Litigation* (SD Fla. 1:15-md-02599)
*Melissa Ferrick, et al. v Spotify USA, Inc.*, et al. (SD NY No. 1:16-CV-08412)
*Jeffrey Beck v Harbor Freight Tools USA, Inc.* (Lake Cty. Com. Pl. Ct. No. 15-cv-000598)
*Patrick Eck, et al. v City of Los Angeles, et al.* (LA Superior Ct. BC577028)
*In Re: Anthem Data Breach Litigation* (ND Cal. 5:15-md-02617)
*In Re: Stericycle, Inc., Steri-Safe Contract Litigation* (ND Ill. 1:13-cv-05795)
*Philip Charvat v Elizabeth Valente, et al.* (ND Ill. 1:12-cv-5746)
*In Re: Monitronics International Telephone Consumer Protection Act* (ND WVa. 1:13-md-02493)

OBJECTORS' COUNSEL INTENDS TO APPEAR AT THE FINAL FAIRNESS HEARING.

### 3. Statement of Objections

### A. The Residual Allocation of FI Net Settlement Funds Not Claimed By FI Group Employees Is Fundamentally Unfair To FI Employee Claimants and Individual Claimants.

The parties' Settlement Agreement ("SA") establishes two classes of subscribers for purposes of settlement only: a Damages Class and an Injunctive Relief Class. The Damages Class includes Individual Members, Insured Groups (including employees) and Self-Funded Accounts that purchased, were covered by, or were enrolled in a Blue-Branded Commercial Health Benefit Product

sold, underwritten, insured, administered, or issued by any Settling Individual Blue Plan during the Settlement Class Period. (SA ¶ 1.v). An "Authorized Claimant" is defined as "any Settlement Class Member who is entitled to a distribution from the Settlement Fund pursuant to the Plan of Distribution approved by the Court in accordance with the terms of this Agreement." (SA 1.c). The Agreement further provides that the Net Settlement Fund shall be distributed to Authorized Claimants in accordance with the Plan of Distribution (SA ¶ 27). The proposed Plan of Distribution offers the following equation for calculating the amount of a valid claim submitted by hypothetical FI Authorized Claimant A:

"Total Premiums Paid" (as defined below by this Plan)
during FI Class Period by FI Claimant A

***Divided by***

Total Premiums Paid during FI Class Period by all FI Authorized Claimants who
submit claims

***Multiplied by***

Total dollars in FI Net Settlement Fund

= FI Claimant A's claim payment

Because employers and employees jointly contribute to a group's premium, the Plan proposes two methods for calculating the portion of total premiums attributable to the employee. Using data provided by the Settling Defendants, the Claims Administrator must first calculate the total premiums paid by the FI Group during the FI Class Period to provide coverage for FI Claimant A (the "Unallocated Employee Premium"). (SA ¶ 19.a). Next, both employer and employee are given the opportunity to prove the exact portion either contributed through relevant documentation. Otherwise, the Plan will allocate 85% of FI Claimant A's premium (if a single plan) or 66% (if a family plan) to his FI employer. Both allocations significantly favor the employer when compared to the average split between employer and employee premium contributions over the Class Period.[1]

The Plan's most fatal flaw, however, is the proposed method for distributing the "Unallocated Employee Premiums" remaining in an FI Group's account once the claim period expires. According to paragraph 18 of the Plan:

> If an FI Group submits a claim, but none of the FI Employees for that FI Group during the FI Class Period submits any claims, then ***the full premium paid by that FI Group shall be allocated entirely to that FI Group*** and shall constitute the "Total Premiums Paid" for that FI Group for purposes of the FI Claim Payment Calculation set forth above. (emphasis added)

Conversely, "[i]f an FI Employee submits a claim for a particular FI Group, and that FI Group does not submit a claim, then the amounts that would have been allocated to that FI Group shall remain in the balance of the FI Net Settlement Fund for distribution to all other FI Authorized Claimants in

---

[1] See, e.g. https://www.ehealthinsurance.com/resources/small-business/average-cost-of-employer-sponsored-health-insurance. Accessed on July 26, 2021.

3

accordance with this Plan." (SA ¶ 20). As a result, an employer stands to reap <u>all</u> the windfall from the employees' unclaimed funds, while its own unclaimed funds must be shared by the entire Damages Class. This one-sided treatment between FI employers and employees creates several problems that undermine the Settlement's fairness.

First, the windfall awaiting employers is likely to increase their motivation to participate in the claims process to such an extent that the net average award to individual claimants will be even lower than is typical in a consumer class settlement.[2] Second, the resulting disincentive to notify covered employees of the right to claim a partial refund of their premium contributions may violate the employer's ethical obligation under the law. The Employee Retirement Income Security Act (ERISA) subjects those who exercise discretionary authority over plan management to certain fiduciary responsibilities. 29 U.S.C.A. § 1109. The employer's primary responsibility is to run the plan solely in the interest of <u>participants</u> for the exclusive purpose of providing benefits and paying plan expenses. Most importantly, they must avoid <u>conflicts of interest</u> such as engaging in transactions that benefit themselves only.

In light of these considerations, Objectors believe FI Group employers have a fiduciary duty to notify eligible employees of their rights under the Settlement—including the right to object to its fairness. Instead, the Plan offers a strong financial incentive for <u>violating</u> the employer's fiduciary duty. ERISA's civil enforcement provision, 29 U.S.C. § 1132, sets out six ways in which plan participants, beneficiaries and fiduciaries can bring statutory actions:

> (3) by a <u>participant</u>, beneficiary, or fiduciary (A) to enjoin any act or practice which violates the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provision of this subchapter or terms of the plan.

29 U.S.C. § 1132 (emphasis added). Because an employer is obligated to provide the accounting necessary to further plan administration, an employee has the equitable right to seek an accounting of the employer's handling of premiums and for corresponding restitution of any premiums wrongfully withheld. *First Nat. Life Ins. Co. v Sunshine-Jr. Food Stores, Inc.*, 960 F.2d 1546, 1550 (11th Cir. 1992) (Clark concurring).

That the Plan's allocation of unclaimed employee premiums elevates FI Group Employers to a favored position over other Authorized Claimants is most damaging to the Settlement's fairness. Such preferential treatment directly contradicts the Settlement's general provision for distributing residual funds among <u>all</u> Claimants "in an equitable and economic fashion." (SA ¶ 30). While the disparate treatment may seem innocent on the surface, this fatal flaw may disqualify Class Counsel as adequate representatives of FI Employees and render the "settlement class" certification illegitimate.

The Supreme Court's landmark decisions in *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) and *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) broadly defined actionable conflicts to include

---

[2] If 100% of eligible claimants participate in the Settlement, the average total award per year (excluding individual plans and ASO contracts) will be only $2.78. See https://melitagroup.com/blog/blue-cross-blue-shield-class-action-lawsuit/ accessed on July 26, 2021.

4

divergent interests in settlement allocation like that between FI Employers and FI Employees. One of the most popular methods for ensuring structural fairness is creating separate subclasses for each category of claimant that are led by independent counsel. That Class Counsel recognizes the importance of this principle is shown in the initiative taken during settlement negotiations to recruit separate counsel and representative plaintiff for a "Self-Funded Settlement Sub-Class." (See Jt. Dec. for Prelim. Approval, Doc. 2610-6 at ¶ 31). The same should be done to protect the special vulnerability of FI Employees.

Neither is this a trivial matter. Given the small number of employees expected to complete an online claim form, every Claimant's ultimate award will be greatly affected by the failure to retain unclaimed funds in the Net Settlement Fund. In contrast, restoring the Settlement's fairness is very simple: any class damages not claimed by eligible FI Employees should be retained in the settlement fund for pro-rata allocation among all damage claimants (including FI Individual Policyholders such as Objectors). To add insult to injury, the Long Form Notice attempts to skirt this and other issues of fairness by declaring that "[y]ou do not need to hire a lawyer because Co-Lead Counsel is working on your behalf." Because the classes have been certified for settlement purposes only, this Court's scrutiny of the proposed Plan of Distribution is subject to a heightened standard. See, Howard M. Erichson, *The Problem of Settlement Class Actions*, 82 GEO. WASH. U. L. REV. 951, 957-58 (2014).

## B. Despite the Litigation's Complexity, the Challenges Faced and Results Achieved, a Three-Times Multiplier of Class Counsel's Lodestar Is Excessive Given Their Hourly Rates.

Although Objectors' Counsel did not have adequate time to fully analyze Class Counsel's fee petition before the objection deadline, several things stand out in sharp relief that deserve this Court's attention. First, the premium hourly rates charged by Class Counsel are "multipliers" in their own right. Second, the longer Class Counsel worked on the case, the higher the billable hours submitted for payment. Third, the fact that class counsel is seeking the maximum percentage fee under the safe harbor rule suggests the multiplier was set more by this arbitrary limit than by actual work performed. Finally, to fairly assess all grounds for objecting to Class Counsel's requested fee, class members should be permitted to review a redacted version of the In Camera Supplement forming part of the Settlement Agreement.

**THE UNDERSIGNED DECLARE UNDER PENALTY OF PERJURY** that the foregoing is true and correct. Executed this 27th day of July, 2021 in the cities shown below.

George W. Cochran, Esq.
Counsel for Objectors
Kent, Ohio

Jennifer Cochran
Objector
Louisville, Kentucky

Aaron Craker
Objector
Louisville, Kentucky

# EXHIBIT
# 18

Received
MAY 2 0 2021
by JNDLA

May 17, 2021

Claims Administrator
Blue Cross Blue Shield Settlement
c/o JND Legal Administration
PO Box 91393
Seattle, WA 98111
(888) 681-1142

Dear Claims Administrator:

I object to the proposed settlement because the method of distributing relief to the class is inadequate and the proposed award of attorney's fees is excessive. Under Federal Rule of Civil Procedure 23(e)(2), the Court must find that a proposed class settlement is "fair, reasonable, and adequate" after considering after considering, *inter alia*, whether:

(C) the relief provided for the class is adequate, taking into account:

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; [and]

(iii) the terms of any proposed award of attorney's fees, including timing of payment[.]

First, the claim form is unduly complicated and requires consumers to submit information already in the possession and control of the defendant. The proposed settlement and claim form assumes that individual consumers will have kept detailed records of the specific brand of Blue Cross Blue Shield plan they had as long as 13 years ago, their subscriber ID, and coverage end and start dates. I am attorney and I keep reasonably detailed financial records, but I do not have such information available to me. The Defendant should use its data to calculate consumer refunds due under the settlement and affirmatively send out the amounts due, rather than requiring consumers to complete a burdensome and complicated form that requires decades-old data that most consumers will not have access to.

Second, the proposed $667.5 million award of attorney's fees is excessive. This award, combined with other expenses would represent nearly 29 percent of the total value of the settlement fund. This amount is particularly excessive given the failure to class counsel to secure a simple and straightforward claim process for the class. Even the method of recording objections is unduly burdensome, requiring that objections be physically mailed to the claims administrator instead of submitted through the existing website. This physical mailing requirement unduly burdens objecting consumers with $2.10 in postage costs simply to object to this unjust settlement.

Sincerely,

Patrick O. Daugherty, Esq.
1050 Thomas Jefferson St. NW
Washington, DC 20007

cc:    BLUE CROSS BLUE SHIELD SETTLEMENT
C/O MICHAEL D. HAUSFELD
HAUSFELD LLP
888 16th Street NW, Suite 300
Washington, DC 20006
(202) 849-4141
BCBSsettlement@hausfeld.com

BLUE CROSS BLUE SHIELD SETTLEMENT
C/O DAVID BOIES
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, NY 10504
(888) 698-8248
BCBS-Settlement@bsfllp.com

DAN LAYTIN
KIRKLAND & ELLIS LLP
300 N. LaSalle St.
Chicago, IL 60657
(312) 862-4137
BCBSsettlement@kirkland.com

# EXHIBIT
# 19

Received

JUL 27 2021

by JNDLA

James M. Dean



Irvine, CA 92604

July 14, 2021

Claims Administrator
Blue Cross Blue Shield Settlement
C/O JND Legal Administration
PO Box 91393
Seattle, WA 98111

In re:   Blue Cross Blue Shield Antitrust Litigation

Dear Sir,

My objection applies to both Settlement Classes.

1.  I object to the amount the Settlement Class Counsel is seeking for attorney fees plus
    reimbursement of expenses and costs.

    And then, Settlement Class Counsel is also seeking $101M for additional cost and service
    awards. I also object to this seemingly addition that appears to be a duplication of expenses
    and costs.

    I do not object to reimbursement of expenses and costs if reasonable and necessary to
    prosecute the case. Of course, documentation to support payment is a prerequisite. After all,
    those in charge of the plaintiff action demand detail documentation from class members.

    I am aware of the contingency fee method of financing lawsuits. In large dollar lawsuits, a
    percentage can be both unnecessary and detrimental to the plaintiff. In this lawsuit, the
    percentage/amount sought by Settlement Class Counsel shocks the conscious.

    My suggestion:

    Reimbursement of expenses and costs as I state above. No to additional cost and service
    awards.

    $2,000 per hour for documented reasonable billable time spent prosecuting the case. If
    time sheets are not maintained, then a court appointed Master (paid out of the settlement)
    to review and approve the hours spent taking into account what an experienced and
    efficient lawyer would claim as a billable hour. $2K per hour is generous. It seems like a just
    and fair amount. It is, after all, a multiple of attorney hourly fee. This method and amount still
    support class actions.

The plaintiff attorney(s) undertook the financial risk of fronting expenses/costs. They undertook the value associated with their time. They undertook the risk of not winning or winning but not being adequately compensated. Therefore, they deserve significant compensation which my approach does.

Over compensating the plaintiff attorney(s) such as the method proposed plus the additional they seek is not good representation and is an affront to fairness. The plaintiffs depend on the court in this case because we are essentially divested of important decisions making/input.

2. I object to the claim form requiring:
   a. Name of Plan(s);
   b. Group Number; and
   c. Precise Coverage dates.

These dubious requirements seem to exclude class members who do not have this info! Individuals particularly do not keep this info – 2020 minus 2008 equals 13 years. Even the IRS suggests half that time for keeping most tax records for individuals. Business records retention has a different perspective and records keeping process.

There are better and more equable ways for individuals.

I was notified via post card of this class action lawsuit. Me being identified had to be from Blue Cross. Therefore, Blue Cross Blue Shield has info to substantiate me (also others) having health care insurance from them in the at-issue dates and details of which plan.

3. JND Legal Administration is the Claims Administrator. The information provided does not explain the relationship of plaintiff counsel(s) with JND and how JND will be compensated. Extra court scrutiny of JND appears needed.

I do not intend to appear at the Final Fairness Hearing.

I declare under penalty of perjury that the above information is true and correct.

Sincerely,

*James M. Dean*
James M. Dean

Copy to: Plaintiffs' Co-Lead Counsel Hausfeld; Settling Defendants Counsel Laytin.

# EXHIBIT

# 20

FILED

2021 Jun-02 PM 04:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA, SOUTHERN DIVISION

IN RE BLUE CROSS BLUE SHIELD          Master File 2:13-cv-20000-RDP

ANTITRUST LITIGATION: MDL 2406

## MOTION BY A CLASS MEMBER FOR THE COURT TO MODIFY THE SETTLEMENT OR DISMISS THIS CASE

Comes now one of the Class members and moves this Court to order modifications of the
Proposed Settlement or dismiss this case for reasons detailed below.

1. This settlement leaves class members frustrated and not able to properly file claims and
causes others having to pay back their *"settlement PLUS pay for Plaintiffs' attorney fees
PLUS pay for Blue Cross Blue Shield's costs, PLUS pay for other claimants who are no
longer insured by Blue Cross Blue Shield ("BCBS")"* as detailed below:

   a. Due to settlement's failure to get BCBS to admit fault and other concessions, BCBS
   gets to deduct costs of this action on its financial statements as "costs of doing
   business" and thereafter, pass this cost to their future policy holders including those
   class member policy holders who still hold Blue Cross Blue Shield insurance plans.
   Those class members will essentially pay back any gain they get from this settlement
   plus Plaintiffs' attorneys' legal fees and all BCBS costs of this action. Any perceived
   harm to BCBS will actually be passed onto others INCLUDING those who were
   victims of this wrong in the past. Some have no option of changing plans due to prior
   medical claims. For example: If you are on a BCBS Medicare Supplement Plan F or
   Plan G or H etc., your pre-existing conditions prohibit you from changing policies.
   Other supplemental insurance companies will bump up their premiums for pre-
   existing conditions unlike the Affordable Care Act which prohibits such actions for
   people not on Medicare. BCBS escapes unscathed while these policy holders are
   stuck paying for this settlement with higher future premiums. Furthermore, each state
   regulates which policies can be offered thus providing BCBS with lobbying
   opportunities to get states to allow them to raise premiums to pass on these costs as a
   "cost of doing business". This proposed settlement punishes current and future policy
   holders and lets BCBS off the hook without taking responsibility. I move the Court to
   require the settlement to alleviate future pain to class member policy holders and
   provide some consequence to BCBS.

    b.   The settlement could be funded from a direct charge to Retained Earnings (as in a dividend) bypassing the expense accounts and causing the company to lose capital without the benefit of passing it onto policyholders as a cost of business. It could also be partially funded through future reduction in executive pay, deferred compensation and bonuses of those currently in management who were in management during the offending time period to avoid being passed onto policy holders as "costs of business". A Google search of BCBSA (Blue Cross Blue Shield Association) returned information that the current CEO is now and has been one of the highest paid chief executives in the nation for well over a decade and it just so happens he was chief during the pendency of occurrences which are the topics of this class action. He should not get away unscathed nor should his participating underlings. It leaves class members wondering if negotiations of the settlement included issues important to all class members; if their situations were fully considered by Plaintiffs' attorneys; whether anyone looked at the "non-tax" accounting ramifications to future policy holders of BCBS not accepting fault. All it does is move the cost of this settlement from one set of victims to another and only benefits the attorneys. I move the Court to order the settlement be revised to provide some consequences to BCBS and their managers.

2.   This settlement should be rejected because it is proportionately lopsided; benefitting attorneys and BCBS far more proportionately than it benefits the claimants (the real victims). I move the court to order the settlement to include more for class members.

3.   This settlement should further be rejected as NOT FAIR to the claimants for the following reasons:

    a.   The claim form has changed over the last several weeks creating confusion. Class members who filed a claim last week provided different information than the claim form now requires. No one has informed whether claim forms are or are not kicked out of the system due to technical errors. I plead for the Court to order claims processors to include all claims since the settlement failed to negotiate/orchestrate a proper claims procedure and administration.

    b.   Though claimants are provided a claim ID in the email notice, they are left in the dark in completing claim forms. Class members are required to dig through files for FOURTEEN YEARS (non-existent?) and GUESS which company insured them. There are multiple BCBS companies and policies (Over 40; all with similar names). Compounding the confusion, plans provided in a particular state were BCBS

companies from another state. For example: My policy began over fourteen years ago in Texas and I'm pretty sure it was not a BCBS of Texas but was either BCBS of Illinois or BCBS of Iowa. (Yet, I remember calling Nevada and California for claims processing.) One thing is abundantly clear: Since BCBS provided the list of claimants for the notice of settlement and provided a claim ID, THEY KNOW who the class members are, the time period they were insured and the technical name for the subsidiary or affiliate of BCBS who provided that plan(s). Plaintiffs' attorneys should have put the burden of providing this information on BCBS; not on class members. Not all class members had insurance through an employer who has a file cabinet of information. I fear an "I GOTCHA" moment from GUESSING the wrong policy. I move the Court to order BCBS to identify the companies for the Claimants; especially individual claimants like me who did not get insurance through my employer.

c. Plaintiffs' attorneys instruct NOT TO CONTACT Blue Cross Blue Shield to get this information; another "I GOTCHA" risk to not be included in the settlement. Plaintiffs' attorneys instruct to call a provided phone number for more information. Yet claimants cannot speak to a human. The longest I was on hold before hanging up was 41 minutes in the eight times I called. I never reached a person. Someone should be required to hire people who will answer the phone. The website information changes frequently creating confusion. I move the Court to require someone answer class members' questions or communicate more effectively.

d. Plaintiffs' attorneys do not return emails from class members and instruct not to contact BCBS, so when the phone call doesn't work and the emails fail to get a response, claimants are left without assistance. This is wrong. I move the Court to address and correct this.

e. Nowhere in the information does it tell claimants they will be treated fairly and proportionally leaving them with little information to make an informed decision. For example: I deserve to get far more from the settlement for my seven years of Blue Cross Blue Shield's chicanery during the specified claim years than someone insured only a few months. However, this is not clarified and leaves class members uncertain of what choice to make. As a self-provider, my premiums were much higher than corporate employers due to the inability to find competitive insurance rates; thus, the harm suffered is not equal. Attorneys should clarify this to claimants and ensure the settlement is structured so those who were with Blue Cross companies longer and in

private plans get more than those who were only insured a few months or benefitted from lower negotiated group rates. I move the Court to so order.

4.  Being without piles of paper and postage or pacer access, I emailed a copy of this to the attached list of attorneys and pray the Court allows this exception as sufficient notice in light of the fact this filing would be unnecessary had I been able to get information from the attorneys.

5.  In the alternative, if the Court cannot find a way to provide equity to class members as requested above, I move the Court to dismiss this case. Dismissal will leave the events as just another rock in the shoe of the downtrodden victimized by powerful large companies who take no responsibility for their wrongdoings and when sued, commit their efforts to pleasing attorneys and executives rather than redressing wrongdoings to the class. A dismissal will save existing policy holders future harm and be a stern warning to Plaintiffs' attorneys who do a lackluster job of understanding class members' situations or representing them. Let it be yet another in a long list of similar messages to the public that if you are a big and powerful company or family, wrongdoing will not result in consequences to the wrongdoers; it will just be passed onto other future Little Guy victims.

Wherefore, premises considered, I pray the Court grant the relief requested and supported as detailed above or further relief as the Court deems just and fair to the Little Guy.

Respectfully Submitted:                                           May 28, 2021
C. Demuth, Class Member
350 Driftwood Dr
Goodrich Tx 77335
Email: itshotinhouston@gmail.com
936-365-4829

Being without extensive paper and postage, I emailed a copy of this to all of the following and pray this suffices:

David Boies
Richard Feinstein
Hamish P.M. Hume
BOIES, SCHILLER & FLEXNER LLP:
dboies@bsfllp.com
rfeinstein@bsfllp.com
hhume@bsfllp.com

Nate Cihlar
Joshua Callister
Srauss & Boies
ncihlar@straus-boies.com
jcallister@straus-boies.com

Michael D. Hausfeld
Megan Jones
Arthur Bailey
Hausfeld LLC:
mhausfeld@hausfeld.com
mjones@hausfeld.com
abailey@hausfeld.com

Charles J. Cooper
COOPER & KIRK, PLLC:
ccooper@cooperkirk.com

Chris T. Hellums
Pittman, Dutton & Hellms, P.C.
chrish@pittmandutton.com

William A. Isaacson
PAUL WEISS
wisaacson@paulweiss.com

Gregory Davis
DAVIS & TALIAFERRO, LLC:
gldavis@knology.net

Cyril V. Smith
Carl S. Kravitz
ZUCKERMAN SPAEDER, LLP:
csmith@zuckerman.com
ckravitz@zuckerman.com

Douglas Dellaccio
CORY WATSON CROWDER  & DEGARIS, P.C.
ddellaccio@cwcd.com

Larry McDevitt
David Wilkerson
VANWINKLE LAW FIRM
lmcdevitt@vwlawfirm.com
dwilkerson@vwlawfirm.com

Edwin J. Kilpela Jr.
Benjamin Sweet
DEL SOLE CAVANAUGH STROYD LLC
ekilpela@dsclaw.com
bsweet@dsclaw.com

Robert M. Foote
Kathleen Chavez
FOOTE, MIELKE, CHAVEZ & O'NEIL, LLC
rmf@fmcolaw.com

kcc@fmcolaw.com

Charles T. Caliendo
Robert Eisler
GRANT & EISENHOFER
ccaliendo@gelaw.com
reisler@gelaw.com

Daniel Gustafson
Daniel C. Hedlund
GUSTAFSON GLUEK PLLC
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com

Brent Hazzard
HAZZARD LAW, LLC
brenthazzard@yahoo.com

John Saxon
JOHN D. SAXON, P.C.
jsaxon@saxonattorneys.com

Lawrence Jones
JONES WARD PLC
larry@jonesward.com

David Guin
Tammy Stokes
GUIN, STOKES & EVANS, LLC:
davidg@gseattorneys.com
tammys@gseattorneys.com

Mindee Reuben
Lite DePalma Greenberg
mreubin@litedepalma.comN

Warren T. Burns
BURNS CHAREST LLP:
wburns@burnscharest.com

David J. Hodge
MORRIS, KING & HODGE:
lstewart@alinjurylaw.com

H. Lewis Gillis
MEANS GILLIS LAW, LLC
hlgillis@tmgslaw.com

Michael McGartland
MCGARTLAND & BORCHARDT LLP:
mike@attorneysmb.com

Robert Methvin
James M. Terrell
MCCALLUM, METHVIN & TERRELL, P.C.:
rgm@mmlaw.net
jterrell@mmlaw.net

John Saxon
JOHN D.SAXON,P.C.
jsaxon@saxonattorneys.com

Lawrence Jones
JONES WARD PLC
larry@jonesward.com

Patrick Cafferty
Bryan Clobes
Ellen Meriwether
CAFFERTY CLOBES MERIWETHER & SPRENGE LLLP
pcafferty@caffertyclobes.com
bclobes@caffertyclobes.com
emeriwether@caffertyclobes.com

Andrew Lemmon
LEMMON LAW FIRM
andrew@lemmonlawfirm.com

Virginia Buchanan
LEVIN PAPANTONIO THOMAS MITCHELL RAFFERTY & PROCTOR, P.A.
vbuchanan@levinlaw.com

Warren T. Burns
BURNS CHAREST LLP
wburns@burnscharest.com

CJ Demuth
310 Driftwood
Goodrich Tx 77335

2021 MAY 25

7020 1290 0002 0187 1974

U.S. POSTAGE PAID
FCM LG ENV
LIVINGSTON, TX
7735
MAY 20, 21
AMOUNT
$5.00
R2304M116486-13

1000

35203

Court Clerk
U.S District Court; Northern Dist Alabama
Southern Division
Hugo L. Black US Courthouse
1729 5th Ave North
Birmingham AL 35203

35203+2000 C006




# EXHIBIT
# 21

**RECEIVED**

AUG -2 2021

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ID # ████████,                          }
                                        }
    Plaintiff,              }
                                        }          Case No.: **2:13-CV-20000-RDP**
v.                                      }
                                        }
                                        }
                                        }
**BLUE CROSS BLUE SHIELD**              }
                                        }
**ANTITRUST LITIGATION MDL 2406,**      }
                                        }
    Defendant.              }
                                        }
                                        }

## MOTION TO DISCUSS/CONSIDER BREACH OF FIDUCIARY OBJECTIONS

As an unnamed plaintiff ID # ████████████ would like to discuss my unique

understanding of how Blue Cross Blue Shield (BC BS) poses a breach of the fiduciary as

a custodian of America's health care dollars. This should not hold up proposed relief

but could add a later payment to relief upon a completion of the court's due process.

I am a friend of the court and have provided a backstory about why I matter and am

happy to provide the documents to prove my story during discovery, however I am an

*1 of 11*

officer of facts and truth with objectivity training amidst my humanity and suffering

BC BS brings to myself and my family. I believe legally my objection discussion falls

under unsafe or unsound practices or breaches of fiduciary duty, pursuant to 12
U.S.C.

1828(j) or 12 U.S.C. 1468. I am asking the court to address and to discover how far

the executives infiltrate this through state agencies, federal agencies, small

business, health network business, personal freedoms and private matters.

As a fiduciary BC BS executives become the person called the fiduciary, and the
person

to whom the duty is owed, like myself and my children or unnamed class members, is

called the principal or the beneficiary. If the fiduciary breaches the fiduciary

duties, he or she would need to account for the ill-gotten profit. The beneficiaries

are typically entitled to <u>damages</u> as relief per Cornell Law School's Legal Information

Institute.

To further explain with case law provided by the same legal institute,

Corporations and Fiduciary Duties

2 of 11

<u>Directors</u> of <u>corporations</u>, in fulfilling their managerial responsibilities, are charged with certain fiduciary duties. The primary duties are the duty of care and the duty of loyalty.

1. Duty of Care

The <u>duty of care</u> requires that directors inform themselves "prior to making a business decision, of all material information reasonably available to them." <u>Smith v. Van Gorkem, 488 A.2d 858 (1985)</u>.

Whether the directors were informed of all material information depends on the quality

of the information, the advice available, and whether the directors had "sufficient opportunity to acquire knowledge concerning the problem before action." <u>Moran v. Household Intern., Inc., 490 A.2d 1059 (1985)</u>.

Moreover, a director may not simply accept the information presented. Rather, the director must assess the information with a "critical eye," so as to protect the interests of the corporations and its stockholders. <u>Smith v. Van Gorkem, 488 A.2d 858 (1985)</u>.

2. Duty of Loyalty

The <u>duty of loyalty</u> means that all directors and officers of a corporation working in their capacities as corporate fiduciaries must act without personal economic conflict. As the Delaware Supreme Court explained in

<u>Guth v. Loft, 5 A.2d 503, 510 (Del. 1939)</u>, "Corporate officers and directors are not permitted to use their position of trust and confidence to further their private

3 of 11

interest."

3.  Duty of Good Faith

Under the <u>duty of good faith</u>, a corporation's directors and officers must advance

interests of the corporation ans fulfill their duties without violating the law.

<u>In re The Walt Disney Co. Derivative Litig., 906 A.2d 27 (Del. 2006)</u>.

4.  Duty of Confidentiality

Under the duty of confidentiality, a corporation's directors and officers must keep

corporate information confidential and not disclose it for their own benefit.

<u>Guth v. Loft, Inc., 5 A.2d 503 (Del. 1939)</u>.

5.  Duty of Prudence

Under the duty of prudence, a <u>trustee</u> must administer a <u>trust</u> with a degree of care,

skill, and caution that a <u>prudent trustee</u> would exercise.

<u>Amgen Inc. v. Harris, 577 U.S.    (2016)</u>.

Duty of Disclosure

This duty requires directors to act with "complete candor." In certain circumstances,

this requires the directors to disclose to the stockholders "all of the facts and

circumstances" relevant to the directors' decision.

Amgen Inc. v. Harris<u>, 577 U.S.    (2016)</u>.


I, plaintiff number # ███████ would like the opportunity to prove this standard

was violated for myself and my children and remains violated on purpose and with

4 of 11

created alternate fact. It is a threat to the laws and the health of our country and leaves us vulnerable as a country.

I would like an opportunity to argue how a lack of due diligence and due process of law contributes to BC BS breaches and creates financial and property concerns in addition to quality of life for statespersons and Americans. I see this brings threats to the general welfare and creates systemic abuse of the people. I am here to Show Cause to the Honorable Judge R David Proctor as to how and why this case must address

the breaches in its ruling or settlement as it gives relief to take away BC BS's and its instruments abuses of power over the people and its repeat offenses it thinks it can just do to people when and as it wants.

I also understand there to be a Code of Federal Regulations 40 CFR § 26.101 that applies to public policy. Article (a) states this policy applies to all research involving human subjects conducted, supported, or otherwise subject to regulation by any Federal department or agency that takes appropriate administrative action to make

5 of 11

the policy applicable to such research. This includes research conducted by Federal

civilian employees or military personnel, except that each department or agency head

may adopt such procedural modifications as may be appropriate from an administrative

standpoint. It also includes research conducted, supported, or otherwise subject to

regulation by the Federal Government outside the United States. Institutions that are

engaged in research described in this paragraph and institutional review boards (IRBs)

reviewing research that is subject to this policy must comply with this policy.

BC BS cannot just start cases behind the scenes and "Tuskegee people" wait and see

without diagnose and treat for protocol illness, or change test results or type of

tests ordered as the Clinton administration fully proclaimed and acknowledged

(asserted as facts for health to the highest political level, no party division

intended). This acknowledgement holds the dealings of the people in medical or legal

research under the policies of the The National Commission for the Protection of Human

*6 of 11*

Subjects of Biomedical and Behavioral Research.- Belmont Report, the Nuremburg Code.

Internationally the Helsinki Declaration would apply if medicine using the World Health Organization or Blue Cross Blue Shield is working under an international trade agreement to relocate its defense actions or cost savings plans harming statespersons and Americans defined with a social security number.

I remain available as an investigator and witness to answer questions, comment on concerns and provide a public interest or objective side the honorable judge might have to make sure there is complete understanding of the risk to the well being and the general welfare of the people in this country if the trajectory set and course continues with such general activities that are abuses of power.

And finally relief as to how I might release my own family as a hostage to undue conservatorships that seek to steal resources and give power to more corporations that do to the people instead of for the people.  Also how we should be spending resources

7 of 11

on advancing our systems instead of holding people down from healing and acknowledging

the slavery of this situation that just persists.

In the case of my individuals who filed a tort claim wrongfully denied, then filed a

federal complaint denied with an order to fill claims. It feels a little like our

suits are extradited to this court. More interestingly I find the Supreme Court of

Missouri No. SC97940, Honorable Kristine Allen Kerr's opinion states:

"Missouri law is clear that officers and directors of public and closely held corporations are fiduciaries because they occupy positions of the highest trust and confidence and are required to exercise the utmost good faith when using the powers conferred upon them to both the corporation and their shareholders." W. Blue Print Co., 367 S.W.3d at 15; see also Gieselmann v. Stegeman, 443 S.W.2d 127, 136 (Mo. 1969) ("A 10 director of a corporation occupies a position of the highest trust and confidence and the utmost good faith is required of him in the exercise of the powers conferred upon him"). "[M]ajority shareholders owe a fiduciary duty to minority shareholders." Peterson v. Cont'l Boiler Works, Inc., 783 S.W.2d 896, 904 (Mo. banc 1990). This means: A director is a fiduciary. So is a dominant or controlling stockholder or group of stockholders. ... Their dealings with the corporation are subjected to rigorous scrutiny and where any of their contracts or engagements with the corporation is challenged the burden is on the director or stockholder not only to prove the good faith of the transaction but also to show its inherent fairness from the

8 of 11

viewpoint of the corporation and those interested therein. Pepper v. Litton, 308 U.S. 295, 306 (1939) (internal citations omitted). And while "the general rule is that shareholder actions against corporate officers and directors are derivative in nature" it is, nonetheless, the case that "[i]ndividual actions are permitted, and provide the logical remedy, if the injury is to the shareholders themselves directly, and not to the corporation." Nickell v. Shanahan, 439 S.W.3d 223, 227 (Mo. banc 2014), quoting, Centerre Bank of Kan. City, Nat'l Ass'n v. Angle, 976 S.W.2d 608, 614 (Mo. App. 1998). For this reason, "[a]ctions based upon torts where the injury is done directly to an individual shareholder, director or officer as such, depriving him of his rights, for instance, wrongfully expelling him … are actions which may be brought by shareholders as individuals." Gieselmann, 443 S.W.2d at 131 (emphasis added); see also Pepper, 308 U.S. at 307 & n.15 ("While normally that fiduciary obligation is enforceable … through a stockholder's derivative action, … [i]t is also clear that breach of that fiduciary duty may also give rise to direct actions by stockholders in their own right."). "A common theme in 11 these cases is that individual actions were permitted so that individual shareholders or discrete groups of shareholders could redress injuries unique to them rather than to the corporation as a whole." Nickell, 439 S.W.3d at 227.


Let me add this is applicable because all three of my children were seen by

specialists in Missouri that for the most part agree with their specialty diagnosis

and all four of us were treated by a specialist working between Oklahoma and Missouri.

The same university where my great aunt gave her body to science after her brother, my

9 of 11

grandfather died and she also became too sick to go on. The same hometown where my

mother's family was from for four generations or more before the Department of Labor

moved my grandfather as a subcontractor so our history and physical is relevant here.

Kerr's ruling shows how my family's justice has been denied repeatedly at the

administrative levels and the court levels when I just needed the established medical

need met which my physicians diagnosed and were treating not the mitigation BC BS came

in with harm. Conditions that simply cannot be left or mitigated and were before the

people to treat them and follow them for the best care without the harms Blue Cross

Blue Shield chose to engage.


For clarity, I paid for all-peril on multiple policies in multiple ways and through

multiple tax deducted line items as well with over 40 work quarters in deductions. I

do prefer a settlement that I agree to and release of our hostage like situation with

10 of 11

a cease and desist of all harms, misleading and created alternate facts or any other

bad faith but not at the expense of further damage or continued damage to the health

care of my country using socialized approaches to medicine without individual

medical

needs as one size never fits all. Not resorting to step therapies, taking away

continuity of care and writing over highest level specialists diagnoses, dumping

patients and displacing care or just losing people who are very sick for decades until

someone rises and fights. I wish to see my state and my country return to the

physician to patient relationship with patient rights I write to protect and inform. I

have notified Honorable Proctor's Clerk Christy I am sending this motion and what it

is for. Please file stamp and return a copy. Please consider the plaintiffs

objections as they qualify under law and were filed with the public access on this
22nd____day  of 2021

July as shown in (Doc. # 1 & 2).  With original statements (Doc. # 3).

Erikah Dugan 7-22-21

Mass Comm Law, Tribal Law OU
Mock Trials Rogers County, Nathan Hale Tulsa
Journalist & Masters Candidate in Public
Health

# EXHIBIT

# 22

*Michael A. Duhon*

*New Braunfels, Texas 78130*

Judge R. David Proctor

May 6, 2021

Hugo L. Black United States Courthouse
1729 5th Avenue North
Birmingham, AL 35203

re: *Blue Cross Blue Shield Antitrust Litigation MDL 2406*, N.D. Ala. Master File No. 2:13-cv-20000-RDP.

Judge Proctor,

## We need to address the healthcare cost in this country.

My wife and I have been Blue Cross policy holders for 44 years. The settlement fund is said to be $2.67 billion, an estimated $1.9 billion going to about 62 million (estimate) policy holders and $7,700,000 going to, let's say, 100 (estimate) law firms. So each policy holders gets about $30.00 and each law firm gets about $770,000,000. On top of that my insurance company must expense their cost of defense. This huge deployment of dollars will not address health care cost or improve the quality of care for the policy holder or the average citizen.

Let's keep it simple, if the law suite costs my insurance company $2.67 billion, it will cost each policy holder about $43.00. So out of the shoot each policy holder receives $30.00 pays $43.00 for a loss of $13.00. Then, most likely, an increase in premium or reduced coverage.

To be fair, you heard the facts of this case and are being ask to judge the merits of the case. I am ignorant of all you have to consider. **I am not trying to second guess your judgment.**

My point is, **how can the award of damages be structured in a way that will lower rather than increase our health care costs? How can the award improve our health care system?** If all we do is reward lawyers and cost policy holders the cycle will be never ending.

In all the communications I have received it is easy to opt in, it is less easy to opt out and to protest the law suite would be very hard for most.

When you award damages please **be creative. There must be a way, for these circumstances, to benefit the health care system, the policy holders and thus our country.** At very least the award should do no harm to the health care system or the policy holders.

Sincerely,

Michael A. Duhon

# EXHIBIT

# 23

July 6, 2021

Blue Cross Blue Shield Settlement
c/o JND Legal Administration
PO Box 91393
Seattle, WA 98111

Copies to:
BLUE CROSS BLUE SHIELD
SETTLEMENT
C/O MICHAEL D. HAUSFELD
HAUSFELD LLP
888 16th Street NW, Suite 300
Washington, DC 20006

BLUE CROSS BLUE SHIELD
SETTLEMENT
C/O DAVID BOIES
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, NY 10504

DAN LAYTIN
KIRKLAND & ELLIS LLP
300 N. LaSalle St.
Chicago, IL 60657

*In re: Blue Cross Blue Shield Antitrust Litigation*

Dear Sirs:

My first objection to the proposed settlement is that the default allocation of 25% to the employee for family coverage seems low, based on the limited data I have. My year-end pay stubs show I paid 28% for CY2014, and 37.725% for CY2015. Honeywell changed the pay stubs for CY2016 and CY2017 and I cannot calculate the allocation ratio with the information currently available to me. (I am assuming Honeywell FM&T was self-funded, but have not been able to find confirmation of that in writing.)

My second objection is that the proposed settlement does <u>not</u> obligate employers to provide historical premium/administrative fee data to employees. Based on my own experience reviewing pay stubs and other information in my personal files, I do not believe most employees have sufficient data to determine whether the default allocations are fair, nor to support an alternative option claim.

My third objection is that the process of splitting available settlement funds between employers and employees seems biased in favor of the employers, since employees who do not file claims will get no money and it appears their unclaimed share (or at least the majority of it) will then go to their

employers.

In my opinion, any of my objections that may be found to have merit might apply to all employees in both self-funded and fully-insured groups.

I have not personally retained legal counsel relevant to this case, nor have I entered into any agreements that relate to the objection or the process of objecting with any other person or entity.

I do not currently intend to appear at the Final Fairness Hearing.

I declare under penalty of perjury that the information provided is true and correct to the best of my knowledge.

William J. Faulkner

William J. Faulkner
█ █ █
Raymore, MO  64083
█████████
████████████

# EXHIBIT

# 24

July 7, 2021


Blue Cross Blue Shield Settlement c/o JND Legal Administratio

 PO Box 91393

Seattle, WA 98111


In re: Blue Cross Blue Shield Antitrust Litigation – SETTLEMENT OBJECTION


To Whom it may concern.

As a Settlement Class Member in the above listed matter, I am writing to object to this settlement for two reasons.  First, I am confident that I have received high quality health insurance service at a fair price, and more importantly, the attorney's fees of $667.5 million are simply outrageous!

The cost of this settlement will actually be ultimately born by the class members, as insurance companies will pass any increased costs on to their customers.  While a case can be made that payments will partially "refund" prior payments made by class members, that does not apply to the $667.5 million in attorney fees.  Class members will each receive a very small amount of compensation, compared to the crazy amounts that the attorneys will be paid.

Coverage was provided to me and my family: Michael L. Happe, ███ 5 ███████, Wayzata, MN 55391 and this objection applies only to me.

I am not represented by counsel in this matter.

I do not intend to appear at the hearing – hoping instead that this letter inspires some financial reasonableness.

I declare that this information provided is true and correct.

Sincerely,


Michael L. Happe


Copies:

BLUE CROSS BLUE SHIELD SETTLEMENT C/O MICHAEL D. HAUSFELD HAUSFELD LLP 888 16th Street NW, Suite 300 Washington, DC 20006 (

BLUE CROSS BLUE SHIELD SETTLEMENT C/O DAVID BOIES BOIES SCHILLER FLEXNER LLP 333 Main Street Armonk, NY 10504 (888) 698-8248

DAN LAYTIN KIRKLAND & ELLIS LLP 300 N. LaSalle St. Chicago, IL 60657

# EXHIBIT

# 25

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

**IN RE: BLUE CROSS BLUE SHIELD**              Master File 2:13 CV 20000-RDP
**ANTI TRUST LITIGATION**
**MDL 2406**

**PETITIONER:**      **James L. Hart,** *pro se* **("Petitioner")**



Vestavia Hills, Alabama 35216

## OBJECTION TO SETTLEMENT

### Introduction

1. This objection is filed solely by James L. Hart, *pro se* with no assistance ("Hart" or "Petitioner") for the reasons set forth herein. For ease of interpretation, Hart uses the third person when referring to himself. At all continuous times relevant to this matter, Hart purchased insurance either for himself and/or his family through the Plan referenced above.

1

2. Hart was a partner and a principal owner of the Plan Sponsor Dent, Baker & Company, LLP (an Alabama LLP, and a registered CPA Firm) from the inception of this matter in 2008, continuing until his retirement in late 2015.  Hart relinquished his duties as managing partner in 2012 but maintained his status as Plan Administrator for some time longer.

   a. Consistent with Plan terms, Hart and his wife separately elected at different times continuation coverage available under COBRA according to their ages and other qualifying issues.

   b. When COBRA expired separately at different times for Hart and his wife, Hart transitioned to Medicare, and obtained personal BCBS ACA qualifying coverage for his wife.

3. Hart asserts in this "fairness objection" that he and many thousands of similarly situated "self-employed" individuals, including "partners", (aka as "employees" or "plan participants" in ERISA jargon, which terminology has been adopted by the settlement) will be denied fair treatment for the reasons and facts set forth herein.

4. In short summary, Hart's objection primarily focuses on 2 areas which follow:

   a. The manner in which the so called default formula works materially against self-employed individuals, as contrasted with common law employees.

   b. The settlement's express adjudication that employers (including "partnerships" and other partially or completely disregarded legal entities that "employ" persons who are "self-employed")  have **no duty** to account to "employees" (including the "self-employed" participants)  regarding the proper amount to claim, whether the employer is filing a claim on its behalf or its current partners at all, and

2

accounting to former partners (as Hart now is) regarding allocation of the proceeds received among present and former partner/owners.

5. State "entity" laws in Alabama have evolved over the years (as have 49 others) and are clearly beyond the scope of this objection. Regardless of such circumstances, Hart contends that any adjudication to the effect that **no duty** exists to co-partners, and/or former co-partners runs afoul of existing statutory law, contract law, and common law. By way of only a single example, among many, a duty of loyalty and accounting exists among partners, and **extends to former partners when the origination of the matter dates to times they were a partner.** Such law is well settled and especially relevant when dealing with causes of action over which the "entity" has control, but in which a former partner paid monies which are due now to be refunded.

6. While Hart is not a lawyer, he files this objection, and believes correctly so, on behalf of himself and his wife during all times she was an ERISA beneficiary of Hart's plan. She transitioned to separate individual ACA coverage, to which this objection does not apply. While her joinder does not seem necessary, Hart reserves the right to add her if such is required by the Court.

7. Although Hart believes that there are many persons who might be in the same or similar situations as Hart, he cannot file for such class, under the belief that such an effort would constitute the unauthorized practice of law.

8. If this Honorable Court finds that Hart's objection has merit, he respectfully requests that the Court itself, or counsel acting on behalf of all classes of plaintiffs, seek to expand this action accordingly.

9.  In the event that the Court extends this objection so as to make changes that benefit others, Hart makes a claim for a reasonable award appropriate to his education, experience, skills, training, and time spent, along with consideration of the value delivered, that may have led to any such changes.

### **Factual Basis and Argument for Objection**

10. **The 75/25 "Default" approach, essentially becoming a "universal, one size fits all" remedy.**

    a.  Settlement documents suggest that a Plan Participant can "choose" to file a claim for a different allocation by submitting documentation for the actual premiums paid to and/or collected by the Plan Sponsor.  Such premiums are almost always collected by "deduction" from some other entitlement.  Employees pay via payroll deductions, whereas "self-employed persons" are charged in other ways, as there is no "payroll" for them.  More importantly **self-employed persons (including "partners") pay 100 percent,** since there is no "corporate" entity with which to share.  Moreover they are charged for the "employer" share for the rank and file.  Pursuant thereto, Hart was charged 100 percent for his own family, along with being charged his pro rata (income ownership) share for common law employee premiums, which will be refunded to the entity if and only if they file a claim.  Partners do not receive "payroll" checks, but receive "distributions" of income or capital.

4

b.  If some employee "chose" to produce semi-monthly pay stubs, and could actually produce them, they would number in excess of 200.  Monthly paid employees would number over 100, and weekly paid employees would number more than 500 weeks.

c.  Any suggestion that the most diligent employee could "choose" to do that without employer mandated assistance is a preposterous proposition.  The fact is that NO employee would do that to claim 40 percent (as a mere example), instead of just taking the default 25 percent (noting that a 50-70 percent employer contribution was the typical group contract minimum).  Nor would any employer file to get 85 percent instead of 75.

d.  **Indeed the 75/25 default allocation is a decent approach for employees, taking judicial efficiencies into account.**

e.  The same cannot be said for the self-employed partner.  However daunting the employee "choice" is, a partner's is even more so, absent a requirement of an accounting.

f.  It needs to be noted that Plan distinctions were made between self-employed Partners and common law employees, recognizing the unique character of "pass through" or partially disregarded entities.  Such persons as Hart occupied a dual status, still being recognized as employers and employees in administrative and ERISA matters.  **The settlement adopts an employer/employee model without distinction, thus effectively denying the right to be made whole.**

     **g.** The Default allocation is in fact a mandatory one, and not a "choice" that cannot reasonably be overcome without mandated employer filing and accounting to employees and/or partners.

11. <u>**The express adjudication in the settlement that employers are not required to provide any accounting for purposes of making a claim, or over the proceeds thereof, run contrary to existing law, at least as to partners, former partners, and other self-employed persons.**</u>

12. <u>**The settlement expressly exempts BCBS from "drilling down" into the specifics of how the Plan collects the premiums BCBS charged to it.**</u>

     **a.** Benefits laws allowed categorization (aka as discrimination) in certain areas and outlawed them in others.  Within limits employers can and did discriminate between certain classes of employees and beneficiaries.

     b. Obamacare came along and added age discrimination to the mix, even "endorsing" it as a means to lower costs to the youngest.  Most employers continued with the "composite" (average for all ages in the plan) premium, as opposed to charging older employees higher premiums, even though allowed.  To the contrary, Hart's employer adopted an age based premium charge to its "employees and partners".

     c. Under the new ACA group regime, the BCBS premium charged to the employer for Hart was roughly 4 times the youngest employee; Yet when you also take into account that Hart was charged 100 percent as a self-employed person, whereas the younger non partner group approximated the 75/25 default, Hart's costs rose to about 10 times.  Of course Hart was also paying his share of the employer share.

6

d.  Indeed BCBS cannot drill down into the plan specifics since they did not regulate the sponsor's collection methods, other than on an overall basis. Notwithstanding, failure to do so and applying the 75/25 default to a "composite" premium will be unusually unfair and manifestly unjust under the circumstances.

e.  Whatever the default calculation, BCBS must drill down to the specific premium associated with the specific insured SSN (Hart in this case) before applying its default percentage.  The Claims administrator cannot presume that the so called composite premium has any particular meaning.

## **CONCLUSION AND RELIEF SOUGHT**

13. Judicial efficiency is important, but cannot take priority over manifest injustice.  There is a way to have both.

14. Hart and other self-employed persons cannot mandate that his former "employer" file on his behalf, if at all, nor can he enforce the proper portion be returned to him.

15. Hart need only prove that he was self-employed in order to receive a 0/100 split on the entire premiums that BCBS charged to his employer for his and his family's coverage. Moreover the calculation MUST be made using the actual individual premium charged for Hart (which changed from a composite community based premium to an age based one due to the effects Obama Care had on small employer plans, such change taking place during the claim period.

16. Hart desires this matter to be resolved prior to the hearing and will file this objection with his claim.  If however the Court or the Claims Administrator finds it necessary to extend the matter to others, and/or challenge the objection as to Hart himself, Hart reserves the right to appear at such hearing.

7

17. The Petitioner declares under penalty of perjury that all information submitted is true and correct.

Respectfully submitted,

James L. Hart, CPA/CFF/ABV/CBA (retired)

███████████████████

Vestavia Hills AL 35216

███████████████████

Certification of service

Petitioner certifies that the foregoing objection was placed in U.S. First Class Mail on July 28, 2021, to the Claims Administrator with electronic copies to Plaintiff's Co-Lead Counsel and Counsel for Settling Defendants as shown below.

**Claims Administrator:**
Blue Cross Blue Shield Settlement
c/o JND Legal Administration
PO Box 91393
Seattle, WA 98111
(888) 681-1142

**Plaintiffs' Co-Lead Counsel:**
BLUE CROSS BLUE SHIELD
SETTLEMENT
C/O MICHAEL D. HAUSFELD
HAUSFELD LLP
888 16th Street NW, Suite 300
Washington, DC 20006
(202) 849-4141
BCBSsettlement@hausfeld.com

BLUE CROSS BLUE SHIELD
SETTLEMENT
C/O DAVID BOIES
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, NY 10504
(888) 698-8248
BCBS-Settlement@bsfllp.com

**Counsel for Settling Defendants:**
DAN LAYTIN
KIRKLAND & ELLIS LLP
300 N. LaSalle St.
Chicago, IL 60657
(312) 862-4137
BCBSsettlement@kirkland.com

# EXHIBIT

# 26

BLUE CROSS BLUE SHIELD SETTLEMENT
Plaintiffs'Co-Lead Counsel:
C/O DAVID BOIES
BOIES SCHILLER FLEXNER LLP
333 Main Street Armonk, NY 10504

July 7th 2021

To the Right Honorable Judge In Re Blue Cross Blue Shield Antitrust Litigation :

My name is: Paul Higgitt
My Address:



Atlanta GA 30329

I wish to object to the Settlement in re: Blue Cross Blue Shield Antitrust Litigation Settlement insofar as the attorneys' fees are unconscionably high representing 29.7% of the total amount of the damages awarded to claimants.
This kind of predatory fee arrangement should never have been allowed to occur and represents not only a complete failure of the Co-Lead Counsels for the Plaintiffs to adequately protect the interests of those such as myself who were the victims of the excessive prices charged by and illegal collusive activity engaged in by Blue Cross Blue Shield for over a decade, but also a possible serious conflict of interest by said attorneys insofar as it it appears the very attorneys who were hired to protect our interests have taken the opportunity to negotiate this settlement to feast luxuriously and exorbitantly on the very money set aside by this Settlement for their clients. The foxes were certainly in charge of the hen house when this egregious attorney fee settlement arrangement was made.
Whereas I have no objection to all attorneys receiving fair compensation for their efforts (say 10% of the the total amount recovered to be shared among all the attorneys on both sides) a distribution of almost 30% is wholly absurd and unconscionable. This is no better than shepherd colluding with the wolf to devour the sheep.

I respectfully request that the court refuse the current Settlement and impose a maximum limit on attorney fees in this matter to no more than 10% of total cash sums recovered.

My objection applies to both myself and all Settlement Classes.
I am not represented and never have been represented by counsel in the matter.
There are no agreements between myself or any third party related to this objection.
I do not intend to appear at the Final Fairness Hearing either in person or through legal counsel.
I declare under penalty of perjury that I believe everything I declare here to be true and correct.

Thank you for your time and consideration.

# EXHIBIT

# 27

Received
AUG 0 2 2021
by JNDLA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

BLUE CROSS BLUE SHIELD )
ANTITRUST LITIGATION: MDL 2406, )
)
) Master File 2:13-CV-20000-RDP
)
)
)

## OBJECTION OF KEARNEY DEE HUTSLER

COMES NOW, Kearney Dee Hutsler, ("Objector" or "Pro se Objector"), and

hereby files this objection and as allowed by the Court's notice of class action.

The Proposed Settlement is intended to benefit the Subscriber Class Members

consistent with applicable law. Thus any such settlement must be a fair, adequate and

reasonable to those class members.

1.    Objector is a Member of the defined Class during the applicable period.



Birmingham, AL 35242. Objector's telephone number is ( ) . Objector

does not plan to attend the fairness hearing and does not intend to call any witnesses.

2.    The Class representatives and counsel settled with the Defendants on

October 16, 2020. On November 30. 2020, the Court gave conditional approval to an

agreement between the Defendant and class representatives to settle this matter ("the Proposed Settlement.").

3.      Objector received notice by email in mid-June 2021, and has become sufficiently acquainted with the Proposed Settlement and believes as well as alleges that the Proposed Settlement is not fair, adequate, or reasonable, all of which criteria are legal standards to be applied by this Court in determining whether to approve the Proposed Settlement.  The parties moving for class certification have the burden of proving that all the criteria for class certification are satisfied. *Washington Mutual Bank v. Superior Court*, 24 Cal.4th 906, 913, 922-923 (2001).

It is the duty of this Court to assure itself, the class and the public that the applicable and governing criteria material to the Proposed Settlement are present. The Court has a duty to scrutinize the settlement and make sure it is fair, adequate and reasonable. *Leverso v. Southtrust Bank of Ala.*, 18 F. 3d 1527, 1530 (11th Cir. 1994).

4.      Pro se Objector now enters his appearance in this cause to participate in further proceedings in this Court and to prosecute this action to the end purpose that any settlement or resolution proposed or approved by the Court is, in all respects, fair, adequate and reasonable.

5.      On the basis of the information ascertained from the Notice of Settlement conditionally approved by the Court, your Objector identifies the following specific deficiencies which should be addressed and corrected in order for any settlement to

be fair and reasonable to the Settlement Class Members and provide adequate consideration for the general release of their substantial claims against Defendant:

(a)      The benefits allegedly conferred upon the class are less than represented. From the $2.7 billion settlement, the class must pay attorney fees, notice to the class, and administration of the settlement.  Thus, the class and not the Defendant bears the burden of administration of the class settlement.  The Court must find that the proposed settlement is fair to class members. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985).

(b)      The claim of attorneys' fees unfairly diminishes the value of the settlement to the class. The Court should not rubberstamp Class counsel's fee request without comparing fee awards in other class action settlements, and examination of time, records and a rational assessment of whether the fee requested is reasonable. Class counsel has argued that they took great risk in this case.  However, multiple cases were filed indicating that multiple law firms felt the risk was small.[1]  And the 3rd Circuit has stated that "risk" should not be used to enhance a common-fund fee. *In Re General Motors Corp.*, 55 F. 3d 768 at 822 (3rd Cir. 1995).

(c)  Further, the value of the common fund benefit should be based on the actual benefit conferred. Under the newly-revised Federal Rule of Civil Procedure 23(e)(2) standard, courts must scrutinize settlement agreements for potentially unfair

---

[1] According to Exhibit B of the Settlement Agreement, 3-4 cases were filed in 2012, and 8 more cases were filed in 2013.

collusion in the distribution of funds between the class and counsel. Any fee awarded in this case should bear some relationship to the adequacy of the result, should be compared to other mega fund fees, and should be cross checked by loadstar and the benefit conferred upon the class. E.g., *Lealao v. Beneficial California, Inc.*, 82 Cal. App.4[th] 19, 49-50 (2000).

    (d)    Subscriber Class counsel has a conflict of interest with the proposed sub-class of self-funded subscribers and yet has negotiated to give away subscriber class settlement proceeds to another sub-class. According to declarations submitted to the Court, Subscriber' Counsel completed negotiations with Defendant in November 2019 and a "Term Sheet" was reached for the whole case. *Exh. K, Gentle Decl.* ¶ 26 (Doc. 2610-12) Then, after obtaining a settlement and presumably the amount of the common fund negotiated for the fully insured subscribers, Subscriber Counsel began negotiations with sub-class self-funded counsel to divide the settlement proceeds. This, in spite of the fact that the self-funded sub-class had a separate lawsuit and the ability to litigate and negotiate separately from the Subscriber class. After several months of negotiation, the allocation of 6.5% to the sub-class was reached, and then reviewed by mediator Feinberg with supporting documentation presumably submitted by Subscriber Counsel. Mr.Feinberg approved the allocation[2] based in large part on

---

[2] "One aspect of the Settlement Agreement that emphatically cannot remedy the inadequate representation is the assistance of judges or mediators in the bargaining process." *In re Payment Card Interchange Fee& Merchant Disc. Antitrust Litigation*, 827 F. 3d 223, 234 (2nd Cir. 2016).

the documentation provided. The review by Mr. Feinberg was limited to the fairness of the percentage allocated. The conflict of interest (counsel allocating the fully insured class' common fund) was not reviewed. Objector asks the Court to disallow the allocation to the sub-class.

(e)     Your Objector adopts any other bona fide objections by other Class Members.

6.     For all the forgoing reasons, Objector respectfully submits that this Proposed Settlement flunks the fairness standard.

**WHEREFORE**, having demonstrated the unfairness, inadequacy and unreasonableness of the Proposed Settlement, the Objector requests appropriate general relief as follows:

1.     That the Court deny the proposed motion for approval.

2.     That the Court disallow the attorneys' fees as requested.

3.     That the Court enter such other further Orders as may be necessary and just, so as to effect substantial justice in this cause between the parties and the absent Class Members.

I declare under penalty of perjury that the information provided is true and correct.

Respectfully submitted,

/s/ Kearney Dee Hutsler
Kearney Dee Hutsler, pro se

Birmingham, Alabama 35242



## CERTIFICATE OF SERVICE

I hereby certify that I served the above and foregoing on all counsel and administrators designated by the Court by placing a copy of same in the US mail, this 28 day of July, 2021.


Claims Administrator:
Blue Cross Blue Shield Settlement
c/o JND Legal Administration
PO Box 91393
Seattle, WA 98111

Plaintiffs' Co-Lead Counsel:
BLUE CROSS BLUE SHIELD
SETTLEMENT
C/O MICHAEL D. HAUSFELD
HAUSFELD LLP
888 16th Street NW, Suite 300
Washington, DC 20006

BLUE CROSS BLUE SHIELD
SETTLEMENT
C/O DAVID BOIES
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, NY 10504

Counsel for Settling Defendants:
DAN LAYTIN
KIRKLAND & ELLIS LLP
300 N. LaSalle St.
Chicago, IL 60657

_____*Kearney Dee Hutsler*_____
Kearney Dee Hutsler

# EXHIBIT 28

04/30/2021

Blue Cross Blue Shield Settlement
C/O JND Legal Administration
PO Box 91390
Seattle, WA 98111

RE: ██████████████████
     Health Insurance Settlement

To Whom It May Concern,

I am opposed to this settlement for 2 reasons:

#1. I am sure the attorneys involved in this litigation have enriched themselves enormously.
#2. I am certain my health insurance rates will increase to cover the company's deficit caused by this
     lawsuit.  I pay $18,000 a year for health insurance that 9 years ago costs $7000 a year.  I do not
     want and cannot afford any more premium increases.


If there was collusion, attempts to defraud the public, price fixing, etc.,  BCBS officials should be
investigated by the appropriate District Attorney or State Attorney General.  If company officials were
held personally and criminally responsible, these types of incidents would stop.  Punishing a company
does no good.  In the end all of the costs associated with this settlement will be passed onto the policy
holders in some form or fashion.


Respectfully,

Eric Jones
██████
Bremond, TX 76629
██████████

---

**Received**

MAY 05 2021

by JNDLA

# EXHIBIT

# 29



May 4, 2021

Claims Administrator
Blue Cross Blue Shield Settlement
c/o JND Legal Administration
PO Box 91393
Seattle, WA 98111

Re: Objection to Settlement in *In re: Blue Cross Blue Shield Antitrust Litigation*

To Whom It May Concern:

My name is Ruthie Keene and I am writing as a representative of the Beaman Automotive Company ("Beaman"). I do not intend to appear at the final fairness hearing either personally or through counsel. To the best of my understanding and recollection, I attest under penalty of perjury that the information provided herein is accurate.

From before Sept. 1, 2015 through December 31, 2016, the Beaman Automotive Group Health Plan secured administrative services and stop-loss coverage through Blue Cross Blue Shield of Tennessee. On behalf of self-funded authorized claimants in the damages class of the proposed settlement of *In re: Blue Cross Blue Shield (BCBS) Antitrust Litigation*, Beaman objects:

1) to the exclusion of stop-loss premiums from calculated damages. Beaman believes the method used to calculate damages for self-funded authorized claimants should include premiums paid for BCBS stop-loss coverage because stop-loss premiums and administrative fees were negotiated in the same annual quotation process.

2) to the allocation of only 6.5% of the net settlement fund to self-funded authorized claimants. The 6.5% allocation does not appear to account for stop-loss premium damages. Stop-loss premiums were also subject to BCBS market manipulation tactics but to varying degrees.

3) to the overall size of the net settlement fund because it does not appear to include damages stemming from self-funded authorized claimants' stop-loss premium costs.

We look forward to hearing your response regarding our concerns.

Sincerely,

Ruthie Keene,
CFO

_____

cc:   Michael D. Hausfeld of Hausfeld, LLP
      David Boies of Boies Schiller Flexner, LLP
      Dan Laytin of Kirkland & Ellis, LLP

*SERVING NASHVILLE SINCE 1945*
1525 Broadway, Nashville, Tennessee 37203  (615) 251-8400                     www.beamanauto.com

# EXHIBIT

# 30

## Objection to Proposed Settlement

Jack Kelley <█████████████████>
Wed 7/28/2021 9:48 AM
**To:** CA - info@bcbssettlement.com <info@bcbssettlement.com>

📎 1 attachments (136 KB)
Kelley.Jack - BCBS Objection letter -7282021 .pdf;

See attachment.

Re:     *In Re: Blue Cross Blue Shield Antitrust Litigation MDL 2406*
        N.D. Ala. Master File No. 2:13-CV-20000-RDP

Dear Judge Proctor:

As a Settlement Class Member of the above-captioned litigation, I am objecting to the proposed settlement.

Considering the extent of harm suffered by members of the Settlement Class and the extent of the Settling Defendants' wrongdoing, irrespective of their denials, the proposed settlement is not fair, reasonable and/or adequate.

                    Sincerely,


                    John J. Kelley



## JOHN J. KELLEY

**Westlake, OH 44145**

July 28, 2021

VIA REGULAR U.S. MAIL AND EMAIL TO: info@BCBSsettlement.com

Blue Cross Blue Shield Settlement
c/o JND Legal Administration
P.O. Box 91390
Seattle, WA 98111

Re:     *In Re: Blue Cross Blue Shield Antitrust Litigation MDL 2406*
        N.D. Ala. Master File No. 2:13-CV-20000-RDP

Dear Judge Proctor:

As a Settlement Class Member of the above-captioned litigation, I am objecting to the proposed settlement.

Considering the extent of harm suffered by members of the Settlement Class and the extent of the Settling Defendants' wrongdoing, irrespective of their denials, the proposed settlement is not fair, reasonable and/or adequate.

Sincerely,

John J. Kelley

JJK:mtk