FILED
2021 Sep-20  PM 05:09
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **IN RE:  BLUE CROSS BLUE SHIELD ANTITRUST LITIGATION (MDL No. 2406)** | **Master File No. 2:13-CV-20000-RDP**<br><br>**This document relates to Provider-Track cases.** |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON (I) ALL CLAIMS ADVANCED BY NON-GENERAL ACUTE CARE HOSPITAL PROVIDERS AND (II) ANY CLAIMS BASED ON BLUE SYSTEM RULES OTHER THAN ESAS OR BLUECARD FOR FAILURE TO DEMONSTRATE INJURY OR DAMAGES**

**CONFIDENTIAL
FILED UNDER SEAL PURSUANT TO THE QUALIFIED PROTECTIVE ORDER**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

INDEX OF EXHIBITS ................................................................................................... v

CITATION KEY ........................................................................................................... vi

PRELIMINARY STATEMENT ....................................................................................1

RESPONSE TO PROVIDERS' "UNDISPUTED RELEVANT MATERIAL
     FACTS" .................................................................................................................2

ARGUMENT ...................................................................................................................3

    I.     Non-Hospital Plaintiffs Offer No Evidence of Quantifiable Damages or
           Cognizable Injury .......................................................................................3

          A.    Non-Hospital Plaintiffs Offer No Evidence of Quantifiable
                Damages .........................................................................................3

          B.    Non-Hospital Plaintiffs Offer No Evidence of Injury ...................5

    II.    Providers Offer No Evidence of Quantifiable Damages or Injury from
           Other Blue Rules ........................................................................................9

          A.    Providers Offer No Evidence of Quantifiable Damages .............9

          B.    Providers Offer No Evidence of Injury .....................................10

CONCLUSION .............................................................................................................10

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alabama v. Blue Bird Body*,
  573 F.2d 309 (5th Cir. 1978) ................................................................................9

*Amey v. Gulf Abstract & Title*,
  758 F.2d 1486 (11th Cir. 1985) .............................................................................6

*Anderson v. Liberty Lobby*,
  477 U.S. 242 (1986) .......................................................................................1, 10

*Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*,
  459 U.S. 519 (1983) .............................................................................................8

*Avirgan v. Hull*,
  932 F.2d 1572 (11th Cir. 1991) .............................................................................4

*Bigelow v. RKO Radio Pictures*,
  327 U.S. 251 (1946) .........................................................................................1, 4

*Catch Curve v. Venali*,
  519 F. Supp. 2d 1028 (C.D. Cal. 2007) ..............................................................8, 9

*Celotex v. Catrett*,
  477 U.S. 317 (1986) .....................................................................................1, 4, 9

*Coles v. Post Master Gen. U.S. Postal Servs.*,
  711 F. App'x 890 (11th Cir. 2017) ........................................................................5

*Donnelly v. Guion*,
  467 F.2d 290 (2d Cir. 1972) .................................................................................4

*Edgenet v. GS1 AISBL*,
  742 F. Supp. 2d 997 (E.D. Wis. 2010) ...................................................................7

*Ellis v. England*,
  432 F.3d 1321 (11th Cir. 2005) ..........................................................................4, 9

*Feitelson v. Google*,
  80 F. Supp. 3d 1019 (N.D. Cal. 2015) ..............................................................7, 8

*Fitzpatrick v. City of Atlanta*,
  2 F.3d 1112 (11th Cir. 1993) .................................................................................4

*Glen Holly Ent. v. Tektronix,*
   343 F.3d 1000 (9th Cir. 2003) .........................................................................8

*Hamilton v. Sheridan Healthcorp,*
   602 F. App'x 485 (11th Cir. 2015) ..................................................................4

*Hilburn v. Murata Elecs. N. Am.,*
   181 F.3d 1220 (11th Cir. 1999) ......................................................................6

*In re Graphics Processing Units Antitrust Litig.,*
   253 F.R.D. 478 (N.D. Cal. 2008) ..................................................................6, 7

*In re SSA Bonds Antitrust Litig.,*
   2018 WL 4118979 (S.D.N.Y. Aug. 28, 2017) ................................................6

*Int'l Bhd. of Teamsters v. Philip Morris,*
   196 F.3d 818 (7th Cir. 1999) ..........................................................................7

*Jeffery v. Sarasota White Sox,*
   64 F.3d 590 (11th Cir. 1995) ........................................................................10

*Key Enters. of Del. v. Venice Hosp.,*
   919 F.2d 1550 (11th Cir. 1990),
   *vacated,* 9 F.3d 893 (11th Cir. 1993) .............................................................8

*Kloth v. Microsoft,*
   444 F.3d 312 (4th Cir. 2006) ......................................................................7, 8

*Laumann v. Nat'l Hockey League,*
   105 F. Supp. 3d 384 (S.D.N.Y. 2015) ...........................................................8

*McClure v. Undersea Indus.,*
   671 F.2d 1287 (11th Cir. 1982) ..............................................................1, 3, 5

*McGlinchy v. Shell Chem.,*
   845 F.2d 802 (9th Cir. 1988) ......................................................................4, 9

*Midwestern Waffles v. Waffle House,*
   734 F.2d 705 (11th Cir. 1984) ........................................................................3

*Pool Water Prods. v. Olin,*
   258 F.3d 1024 (9th Cir. 2001) ........................................................................6

*Precisions CPAP v. Jackson Hosp.,*
   2010 WL 797170 (M.D. Ala. Mar. 8, 2010) ..................................................8

*Procaps v. Patheon*,
  141 F. Supp. 3d 1246 (S.D. Fla. 2015),
  *aff'd*, 845 F.3d 1072 (11th Cir. 2016) ....................................................................7

*Ramsey v. GMAC Mortg.*,
  2012 WL 13028221 (N.D. Ga. May 10, 2012) ...................................................5, 10

*Ross v. Bank of Am.*,
  524 F.3d 217 (2d Cir. 2008) ..................................................................................8

*Somers v. Apple*,
  729 F.3d 953 (9th Cir. 2013) .................................................................................6

*United States v. Godinez-Perez*,
  864 F.3d 1060 (10th Cir. 2016) .............................................................................6

*United States v. Anthem*,
  855 F.3d 345 (D.C. Cir. 2017) ...............................................................................9

*Universal Brands v. Philip Morris*,
  546 F.2d 30 (5th Cir. 1977) ...................................................................................9

*Valley View Manor Nursing Home v. De Buono*,
  1997 WL 855508 (W.D.N.Y. Feb. 12, 1997) ..........................................................6

*Zenith Radio v. Hazeltine Rsch.*,
  395 U.S. 100 (1969)...............................................................................................1

**Statutes & Rules**

Fed. R. Civ. P. 56................................................................................................................4

## INDEX OF EXHIBITS

| Exhibit No. | Description |
| --- | --- |
| 4 | 5/5/2017 30(b)(1) Deposition Transcript of Joseph D. Ackerson, Ph.D. (excerpts) |
| 5 | 6/28/2019 30(b)(1) Deposition Transcript of Matthew Caldwell, M.D. (excerpts) |
| 6 | 4/10/2017 30(b)(1) Deposition Transcript of Charles H. Clark, III, M.D. (excerpts) |
| 7 | 4/12/2017 30(b)(1) Deposition Transcript of Jerry L. Conway, D.C. (excerpts) |
| 8 | 5/22/2017 30(b)(1) Deposition Transcript of Robert W. Nesbitt, M.D. (excerpts) |
| 9 | 5/11/2017 30(b)(1) Deposition Transcript of Janine Nesin, P.T. (excerpts) |
| 10 | 9/7/2017 30(b)(6) Deposition Transcript of North Jackson Pharmacy, Inc. through Brian Hicks (excerpts) |
| 11 | 7/31/2017 30(b)(1) Deposition Transcript of Luis R. Pernia, M.D. (excerpts) |

# CITATION KEY[1]

| Citation | Reference |
|---|---|
| Br. | Citations to Defendants' Opening Brief in Support of Their Motion for Summary Judgment on (I) All Claims Advanced by Non-General Acute Care Hospital Providers and (II) Any Claims Based on Blue System Rules Other than ESAs or BlueCard for Failure to Demonstrate Injury or Damages (Doc. 2751) |
| Disp. Facts | Citations to this Reply's Response to Providers' "Undisputed Relevant Material Facts" |
| Doc(s). | Citations to Documents filed on the Docket in MDL 2406 (2:13-CV-20000-RDP) |
| Ex. | Citations to Defendants' Exhibits identified in the Evidentiary Submission accompanying this Reply |
| Opp. | Citations to Provider Plaintiffs' Opposition to Defendants' Motion for Summary Judgment on (I) All Claims Advanced by Non-General Acute Care Hospital Providers and (II) Any Claims Based on Blue System Rules Other than ESAs or BlueCard for Failure to Demonstrate Injury or Damages (Doc. 2797) |

---

[1] Capitalized terms adopt the same meaning ascribed to them in Defendants' opening brief.

## PRELIMINARY STATEMENT

To secure any relief under the Clayton Act, Providers must prove they suffered antitrust injury.[2] *McClure v. Undersea Indus.*, 671 F.2d 1287, 1289 (11th Cir. 1982); *see also Zenith Radio v. Hazeltine Rsch.*, 395 U.S. 100, 130 (1969). And to recover damages, Providers must further demonstrate that this injury can be quantified in a non-speculative fashion. *McClure*, 671 F.2d at 1289; *see also Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 264–65 (1946). At the summary judgment stage, then, Providers must show that there is sufficient evidence of each of these elements to carry their burden at trial. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986); *Celotex v. Catrett*, 477 U.S. 317, 322–23 (1986). Providers' opposition, like the record in this case, makes clear that they cannot meet that burden.

*First*, Providers' opposition offers no proof of damages or injury to the Non-Hospital Plaintiffs. For damages, Providers ask the Court to take their word that such evidence will come later. (*See* Section I.A.) And as for injury, the Non-Hospital Plaintiffs offer in the place of admissible evidence only speculative testimony and purported expert conclusions based on nothing more than economic theory. (*See* Section I.B.) These attempts fail to meet the proof required to avoid summary judgment.

*Second*, Providers' challenges to any Blue rules other than ESAs and BlueCard fail for similar reasons. Providers offer no proof of damages from these rules, resorting again to an I.O.U. (*See* Section II.A.) And while Providers cite record evidence they say demonstrates antitrust injury, that "evidence" is little more than generic descriptions of the challenged rules, rather than the requisite proof of injury to these specific plaintiffs. (*See* Section II.B.)

---

[2] The required showing is the same for Providers' damages and injunctive claims. (*See* Br. at 12.)

1

**RESPONSE TO PROVIDERS' "UNDISPUTED RELEVANT MATERIAL FACTS"**

Defendants dispute the materiality of Providers' additional facts, and deny the legal inferences that Providers seek to draw from them.  In particular:

1–8.  **Disputed.**  During their depositions, the Non-Hospital Plaintiffs conceded that they have no personal knowledge about:

- whether out-of-area Blue Plans would offer them higher reimbursement rates than BCBS-AL (Ex. 5 (Caldwell Dep.) at Tr. 100:3–19, 151:5–152:7; Ex. 6 (Clark Dep.) at Tr. 52:18–21, 237:18–23; Ex. 7 (Conway Dep.) at Tr. 59:12–60:2, 69:4–18, 129:2–130:4; Ex. 8 (Nesbitt Dep.) at Tr. 364:14–365:7; Ex. 9 (Nesin Dep.) at Tr. 116:4–24; Ex. 10 (Hicks Dep.) at Tr. 180:7–181:8; Ex. 11 (Pernia Dep.) at Tr. 271:14–272:14, 281:4–17);

- what parts of Alabama (if any) out-of-area Blue Plans would enter, or whether out-of-area Plans would be interested in contracting with the Non-Hospital Plaintiffs at all (Ex. 4 (Ackerson Tr.) at Tr. 179:22–180:23; Ex. 5 at Tr. 100:20–102:12, 150:2–151:4; Ex. 6 at Tr. 131:8–19, 153:3–7, 264:23–265:25; Ex. 7 at Tr. 123:11–23; Ex. 8 at Tr. 356:4–12, 359:8–360:3, 372:22–373:15; Ex. 9 at Tr. 117:4–20, 120:4–121:20, 136:13–137:2, 169:8–21; Ex. 10 at Tr. 160:10–20; Ex. 11 at 247:7–248:21, 272:19–273:8, 294:3–19); or

- the Blues' long-term business strategies (Ex. 6 at Tr. 266:6–9; Ex. 7 at Tr. 124:15–18; Ex. 8 at Tr. 373:22–374:2; Ex. 9 at Tr. 212:5–8).

9–10.  **Disputed.**  Dr. Frech's and Dr. Haas-Wilson's opinion that ESAs and BlueCard depressed reimbursement rates for the Non-Hospital Plaintiffs is not based on statistical or empirical proof, and is instead supported only by economic theory:

Q:  Did you do any analysis to determine whether the economic theory that you're discussing played out in reality with respect to the acute care hospital provider class and the nonacute care hospital provider class?

A:  Well, with the hospitals, we have the analysis of Dr. Haas-Wilson and Dr. Slottje.  For the nonhospitals, we don't really have an empirical analysis to see how—to see that.  Don't have the statistical approach for seeing that.

Q:  So for the nonhospital providers, your opinion that those providers have been harmed in a common and similar way is solely based on the theory that we just discussed?

A:  Yeah.  And basic economic theory of oligopoly or oligopsony, buying and

bargaining theory is based on that basic analysis, basic theory.

(Doc. 2564-68 (Frech Dep.) at Tr. 113:1–20.)

Likewise, Dr. Frech's and Dr. Haas-Wilson's analyses of Blue rules other than ESAs and BlueCard consist of descriptions of various practices by Blue Plans and assertions that theory predicts these practices will harm market participants, without any analysis showing that *specific* Providers actually suffered harm. (*E.g.*, Doc. 2454-6 ¶¶ 126–33, 340–49; Doc. 2454-3 ¶¶ 321–30.) And Providers' analysis of so-called non-price harms is supported only by economic theory (Doc. 2773-3 (Haas-Wilson Dep.) at Tr. 204:6–208:13), and descriptions of how any provider contract might differ (Doc. 2454-3 ¶¶ 17, 393, 395; Doc. 2454-6 ¶¶ 390–94), rather than empirical evidence demonstrating what sorts of contracts Blue Plans might actually offer in the but-for world.

## ARGUMENT

## I.    NON-HOSPITAL PLAINTIFFS OFFER NO EVIDENCE OF QUANTIFIABLE DAMAGES OR COGNIZABLE INJURY.

### A.    Non-Hospital Plaintiffs Offer No Evidence of Quantifiable Damages.

Providers do not dispute they have no model quantifying the damages allegedly suffered by the Non-Hospital Plaintiffs. (Opp. at 13; *see also* Br. at 10, 14–15.) Without such a model—or any other proof of quantifiable damages—judgment must be entered on the Non-Hospital Plaintiffs' damages claims. *See McClure*, 671 F.2d at 1289; *Midwestern Waffles v. Waffle House*, 734 F.2d 705, 723 n.3 (11th Cir. 1984).

Recognizing this, Providers attempt to save their damages claims by (i) making vague references to damages in the Non-Hospital Plaintiffs' deposition testimony, and (ii) promising that evidence of quantifiable damages will be supplied at some later date. (Opp. at 13.) Neither argument is sufficient to survive summary judgment.

3

*First*, the Non-Hospital Plaintiffs' testimony does not include a damages figure, nor does it indicate how such a figure could be calculated.  In fact, this testimony reveals that the Non-Hospital Plaintiffs *have no idea* what contracting options would exist, and what reimbursement rates might be, in a hypothetical world without the Blues' challenged conduct. (Disp. Facts ¶¶ 1–8.)  Thus, even if the Non-Hospital Plaintiffs had tried to present a model (which they did not), any damages estimate based on it would be impermissible speculation. *See Bigelow*, 327 U.S. at 264–65 (damages estimate cannot be based on "guesswork").

*Second*, Providers' request to fill this evidentiary gap at some later date is expressly prohibited by Rule 56.  "For factual issues to be considered genuine, they must have a real basis in the record."  *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citation omitted).  Thus, to survive summary judgment, the Non-Hospital Plaintiffs must identify— today—existing, non-speculative evidence that warrants having a jury decide their claims at trial. *See McGlinchy v. Shell Chem.*, 845 F.2d 802, 808–09 (9th Cir. 1988).  Had Providers wanted to introduce additional evidence of what the Non-Hospital Plaintiffs might say at trial, they could (and should) have submitted affidavits.  *See* Fed. R. Civ. P. 56(c); *see also Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 & n.3 (11th Cir. 1993); *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991).  Their failure to do so is fatal to their claims:  because they offer nothing, there is nothing that warrants a trial.[3]  *See Celotex*, 477 U.S. at 322–23; *Ellis*, 432 F.3d at 1325–26; *see also Donnelly v. Guion*, 467 F.2d 290, 293 (2d Cir. 1972) (opposing party "cannot make a secret of his evidence until the trial, for in doing so he risks the possibility that there will be no trial").

---

[3] Nor could such affidavits have created a genuine dispute of material fact in light of the Non-Hospital Plaintiffs' deposition testimony.  *See Hamilton v. Sheridan Healthcorp*, 602 F. App'x 485, 489 (11th Cir. 2015) ("We may disregard an affidavit submitted solely for the purpose of opposing a motion for summary judgment when that affidavit is directly contradicted by deposition testimony." (citation and internal brackets omitted)).

The Court should therefore enter judgment for the Blues on the Non-Hospital Plaintiffs' damages claims.

### B.    Non-Hospital Plaintiffs Offer No Evidence of Injury.

Judgment on the Non-Hospital Plaintiffs' claims—including for an injunction (Opp. at 14)—should also be entered in the Blues' favor because Providers have no proof of cognizable antitrust injury. Providers argue they have satisfied this essential element of their case, *see McClure*, 671 F.2d at 1289, in two ways: (i) they point to record evidence they say is sufficient to prove price-related harm (Opp. at 13–14), and (ii) they argue that their loss of choice theory is cognizable in the 11th Circuit (*id.* at 14–18). Both arguments fail.

*First*, Providers' purported evidence of price-related harm is bare speculation. For instance, Providers claim that deposition testimony from the Non-Hospital Plaintiffs shows the challenged conduct has lowered reimbursement rates. (*Id.* at 8–10, 13.) But that is not what the cited testimony says. Even in the most charitable light, this testimony simply highlights individual Plaintiffs' conclusory and unsupported assumptions that prices *might* be different without the challenged conduct. Plaintiffs testified that they "hope" or would "love" to receive higher reimbursements from other Blue Plans, but, in the same breath, said they do not "know whether or not that would happen" because they have no "reason to believe" rates would be higher and "don't have a clue" what effect new Blue entry would have on the rates they receive. (*See* Ex. 6 at Tr. 52:18–21; Ex. 8 at Tr. 364:14–365:7; Ex. 9 at Tr. 116:4–24; *see also* Disp. Facts ¶¶ 1–8.) The fact that a plaintiff "'believes' a certain fact exists is insufficient to defeat summary judgment[.]" *Coles v. Post Master Gen. U.S. Postal Servs.*, 711 F. App'x 890, 893 (11th Cir. 2017); *accord Ramsey v. GMAC Mortg.*, 2012 WL 13028221, at *2 (N.D. Ga. May 10, 2012).

Providers also claim that their experts (Dr. Frech and Dr. Haas-Wilson) offer

proof of price harm to the Non-Hospital Plaintiffs.  (Opp. at 10–12, 14.)  But the experts

themselves deny having done so.  In their own words, Providers' experts "don't really have an

empirical analysis" or a "statistical approach" for analyzing supposed harm to these Plaintiffs.

(Doc. 2564-68 at Tr. 113:9–12.)  Instead, they offer opinions about "basic economic theory"—

that is, generic thoughts about how potential increases in competition might affect prices,

without any connection to these particular Plaintiffs or their specific claims.[4]  (*Id.* at Tr. 113:17–

20.)  Economic theory alone is not proof that the Non-Hospital Plaintiffs were, in fact, injured.

*See In re Graphics Processing Units Antitrust Litig.*, 253 F.R.D. 478, 496 (N.D. Cal. 2008)

(expert "may not meet his burden by simply stating [what] 'economic theory' dictates"); *In re*

*SSA Bonds Antitrust Litig.*, 2018 WL 4118979, at *7 (S.D.N.Y. Aug. 28, 2017) (plaintiffs

"provide no analysis showing that this theory was actually borne out"); *see also Hilburn v.*

*Murata Elecs. N. Am.*, 181 F.3d 1220, 1227–28 (11th Cir. 1999) (expert's "conclusory statement

is insufficient to create a genuine issue of a material fact").

    *Second*, Providers' assertion that "reduced choice in the healthcare industry is an

antitrust injury" is incorrect as a matter of law.  (Opp. at 15.)  "[L]imitation of consumer choice,

in itself, does not amount to 'antitrust injury.'"  *Somers v. Apple*, 729 F.3d 953, 966 (9th Cir.

2013); *see also Amey v. Gulf Abstract & Title*, 758 F.2d 1486, 1499, 1501 (11th Cir. 1985); *Pool*

*Water Prods. v. Olin*, 258 F.3d 1024, 1036 (9th Cir. 2001); *Graphics Processing*, 253 F.R.D.

at 507.  After all, market participants are not harmed by losing an alternative that is lower quality

---

[4] Providers attempt to give weight to these thoughts by labeling them "empirical."  (Opp. at 7–8.)  But empirical proof would require something beyond economic theory, such as tangible examples of economic harm to specific providers.  (*See id.* at 7 ("theory" is not empirical evidence)); *see also United States v. Godinez-Perez*, 864 F.3d 1060, 1070 (10th Cir. 2016) ("'[R]eliance on experts . . .' is not necessarily empirical evidence. . . . [I]n the sentencing context, empirical evidence would be that 'derived from the review of individual sentencing decisions.'" (internal alteration omitted)); *Valley View Manor Nursing Home v. De Buono*, 1997 WL 855508, at *15 (W.D.N.Y. Feb. 12, 1997) (criticizing a party for "rely[ing] on economic theory as a substitute for empirical fact-finding").  Providers' experts lack such evidence.

yet more expensive; rather, to claim a cognizable injury, plaintiffs must present evidence that increased competition would have had tangible economic benefits such as increased output, better price, improved quality, or a similar metric.  *See Int'l Bhd. of Teamsters v. Philip Morris*, 196 F.3d 818, 825 (7th Cir. 1999) ("To recover under the antitrust laws, the plaintiff must show that its injury flows from . . . higher prices and lower output."); *Procaps v. Patheon*, 141 F. Supp. 3d 1246, 1277 (S.D. Fla. 2015) ("In order for loss of choice to be a sufficient actual detrimental effect, . . . [a] plaintiff must show how the actual anticompetitive effects had an 'impact on the market[.]'"), *aff'd*, 845 F.3d 1072 (11th Cir. 2016); *Edgenet v. GS1 AISBL*, 742 F. Supp. 2d 997, 1013–14 (E.D. Wis. 2010) (reduced choice and innovation not cognizable injuries without "raised consumer prices or reduced output").  Providers' own expert agrees.  (Doc. 2454-6 ¶ 389 ("[T]o benefit from having additional contracting options, . . . additional commercial buyers [must] offer opportunities or benefits that the existing ones do not.").)

As a result, courts have made clear that private plaintiffs cannot pursue relief under the Clayton Act—for either damages or an injunction—based purely on the assertion that the defendants potentially prevented some sort of hypothetical innovation.  *See Kloth v. Microsoft*, 444 F.3d 312, 318, 324 (4th Cir. 2006) (holding that the loss of technological innovation was not a cognizable injury); *Feitelson v. Google*, 80 F. Supp. 3d 1019, 1029 (N.D. Cal. 2015) ("Plaintiffs' allegations of hypothetical loss of consumer choice and innovation are entirely too conclusory and speculative."); *Graphics Processing*, 253 F.R.D. at 507 ("reduced innovation" alone cannot constitute "cognizable antitrust injury").

Providers' theory of non-price injury is nearly identical to the alleged harms that courts have repeatedly found not to be cognizable.  *Compare* Opp. at 15 ("Alabama providers would gain opportunities to practice medicine using different and innovative contracting

methods"), *with Kloth*, 444 F.3d at 318 (denial of access to "new and superior technologies"), *and Feitelson*, 80 F. Supp. 3d at 1029 (threat that a lone supplier "will have no incentive to innovate"). Indeed, other than describing the different dimensions along which any provider contract might differ (Disp. Facts ¶¶ 9–10), Providers offer no proof of what sorts of novel arrangements Blue Plans might actually offer the Non-Hospital Plaintiffs absent the challenged rules, and thus how this supposed loss of choice actually harmed those providers. That is particularly true as the Non-Hospital Plaintiffs admit they do not know whether another Blue Plan would enter Alabama and contract with them at all, let alone agree to some sort of "innovative" arrangement. (*See id.* ¶¶ 1–8.)[5]

　　　　Given that Providers merely speculate about "innovative" arrangements that were lost to them as a result of the Blues' conduct (Opp. at 15), the precedent on which they rely is easily distinguishable. Most of the cases Providers cite concern either a plaintiff that lost access to an existing alternative or defendants that conspired to remove a particular product from the market.[6] Thus, the plaintiffs in those cases—unlike the Non-Hospital Plaintiffs here—were able to identify the tangible impact of the challenged conduct.

　　　　*Catch Curve v. Venali*, 519 F. Supp. 2d 1028 (C.D. Cal. 2007), is equally inapplicable. There, the plaintiff alleged that the defendants conspired to file baseless patent

---

[5] Providers' reference to the Court's Subscriber Settlement preliminary approval order is a red herring. (Opp. at 17.) Two of the cited passages simply address whether common issues exist and predominate among the Subscriber class. (Doc. 2641 at 16, 22–23.) And while the Court also referred to Subscribers' argument that the settlement will increase innovation and consumer choice (*id.* at 21, 26–27), the virtues of those developments were tethered to a corresponding increase in "output . . . and lower insurance premiums" (Doc. 2610-10 ¶ 16), which Providers themselves have not shown.

[6] *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 527–28 (1983); *Key Enters. of Del. v. Venice Hosp.*, 919 F.2d 1550, 1555–56 (11th Cir. 1990), *vacated*, 9 F.3d 893 (11th Cir. 1993); *Glen Holly Ent. v. Tektronix*, 343 F.3d 1000, 1005–06, 1011 (9th Cir. 2003); *Precisions CPAP v. Jackson Hosp.*, 2010 WL 797170, at *2, *4 (M.D. Ala. Mar. 8, 2010); *Ross v. Bank of Am.*, 524 F.3d 217, 221 (2d Cir. 2008); *Laumann v. Nat'l Hockey League*, 105 F. Supp. 3d 384, 388–89 (S.D.N.Y. 2015).

lawsuits to harm the plaintiff's competitive standing and to prevent it from gaining business through innovation. *Id.* at 1033. The cognizable injury flowing from "stifl[ed] innovation" was therefore *not* the market's loss of choice (which is what Providers allege here), but rather the plaintiff's lost opportunity to earn new customers (and thus more revenue) through the development of new products. *See id.* at 1035–36. Providers offer nothing of the sort.

Providers' reliance on *United States v. Anthem*, 855 F.3d 345 (D.C. Cir. 2017), is likewise misplaced. That was a government action, where "there need be established only an antitrust violation." *Universal Brands v. Philip Morris*, 546 F.2d 30, 34 (5th Cir. 1977) (citation omitted); *see also Anthem*, 855 F.3d at 349–50. The same is not true in a suit by a private plaintiff, like the Non-Hospital Plaintiffs, who must also show that the violation caused them cognizable antitrust injury. *Alabama v. Blue Bird Body*, 573 F.2d 309, 317 (5th Cir. 1978); *Universal Brands*, 546 F.2d at 34. That is the element that is missing from the Non-Hospital Plaintiffs' case, and *Anthem* does not change that fact.

## II.    PROVIDERS OFFER NO EVIDENCE OF QUANTIFIABLE DAMAGES OR INJURY FROM OTHER BLUE RULES.

### A.    Providers Offer No Evidence of Quantifiable Damages.

Providers identify no record evidence that would allow them to quantify alleged damages flowing from Blue System practices other than ESAs or BlueCard. (Opp. at 18–19.) That alone warrants summary judgment for the Blues on those rules. In an attempt to hold on to such claims, Providers (again) promise the Court evidence someday in the future, but (again) offer no affidavits or other basis for the Court to conclude admissible evidence is coming. As discussed above, that is insufficient for these damages claims to survive summary judgment. *See McGlinchy*, 845 F.2d at 808–09; *see also Celotex*, 477 U.S. at 322–23; *Ellis*, 432 F.3d at 1326.

### B.    Providers Offer No Evidence of Injury.

In addition, all of Providers' claims that depend on other Blue System rules—including injunctive claims—fail for lack of proof of injury.  (Br. at 15–16.)  Providers' only response is to cite filings and record evidence that fall well short of creating a genuine dispute of material fact.

To start, Providers point to allegations in their pleadings.  (Opp. at 18–19.)  But a party may not resist summary judgment on the basis of unverified allegations.  *See Liberty Lobby*, 477 U.S. at 248–49; *Jeffery v. Sarasota White Sox*, 64 F.3d 590, 593–94 (11th Cir. 1995); *Ramsey*, 2012 WL 13028221, at *2.

Next, Providers cite analyses by Dr. Frech and Dr. Haas-Wilson that they say demonstrate that various other Blue System rules have caused them harm.  (Opp. at 12, 18–19.)  But even a cursory review reveals that those analyses do nothing more than generally describe such rules.  (Disp. Facts ¶¶ 9–10.)  For instance, Providers' assessment of NBE is primarily a summary of the rule's origins.  (*See* Doc. 2454-6 ¶¶ 126–30, 344–45; Doc. 2454-3 ¶¶ 321–30; *see also* Br. at 15–16; Doc. 2728 (Defs.' SoR Br.) at 38–39; Doc. 2772 (Defs.' SoR Reply) at 15.)  Likewise, their analysis of "Most Favored Nation" clauses ("MFNs") is comprised of descriptions of such provisions (Doc. 2454-6 ¶ 304; Doc. 2454-3 ¶¶ 337, 343–44, 348), explanations of how MFNs can sometimes harm market participants generally (Doc. 2454-3 ¶¶ 338–42, 396), and a single anecdotal dispute that BCBS-AL had with an employer almost a decade before the start of the alleged class period (*id.* ¶¶ 345–47).  That is not proof of injury to a specific market participant as required by the Clayton Act.

### CONCLUSION

For the foregoing reasons, Defendants' motion should be granted in full.

Dated:  September 20, 2021

Respectfully submitted,

/s/ *Evan R. Chesler*
Evan R. Chesler
Christine A. Varney
Karin A. DeMasi
Lauren R. Kennedy
David H. Korn
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY  10019
Tel: (212) 474-1000
Fax: (212) 474-3700
echesler@cravath.com
cvarney@cravath.com
kdemasi@cravath.com
lkennedy@cravath.com
dkorn@cravath.com

*Coordinating Counsel for Defendant Blue Cross and Blue Shield Association; Counsel for Defendants Blue Cross and Blue Shield of Alabama; Blue Cross and Blue Shield of Florida, Inc.; Blue Cross and Blue Shield of Massachusetts, Inc.; Blue Cross and Blue Shield of North Carolina, Inc.; BlueCross BlueShield of Tennessee, Inc.; California Physicians' Service d/b/a Blue Shield of California; CareFirst, Inc.; CareFirst of Maryland, Inc.; Group Hospitalization and Medical Services, Inc.; CareFirst BlueChoice, Inc.; Health Care Service Corporation, an Illinois Mutual Legal Reserve Company, including its divisions Blue Cross and Blue Shield of Illinois, Blue Cross and Blue Shield of Texas, Blue Cross and Blue Shield of New Mexico, Blue Cross and Blue Shield of Oklahoma, and Blue Cross and Blue Shield of Montana; Caring for Montanans, Inc., f/k/a Blue Cross and Blue Shield of Montana, Inc.*

Craig A. Hoover
E. Desmond Hogan
Justin Bernick
Peter Bisio
Elizabeth Jose
HOGAN LOVELLS US LLP
Columbia Square
555 13th Street, N.W.
Washington, DC  20004
Tel: (202) 637-5600
Fax: (202) 637-5910
craig.hoover@hoganlovells.com
desmond.hogan@hoganlovells.com
justin.bernick@hoganlovells.com
peter.bisio@hoganlovells.com
elizabeth.jose@hoganlovells.com

*Counsel for Anthem, Inc., f/k/a WellPoint, Inc., and all of its named subsidiaries in this consolidated action; Louisiana Health Service & Indemnity Company (Blue Cross and Blue Shield of Louisiana); BCBSM, Inc. (Blue Cross and Blue Shield of Minnesota); Blue Cross and Blue Shield of South Carolina; Horizon Healthcare Services, Inc. (Horizon Blue Cross and Blue Shield of New Jersey); Blue Cross & Blue Shield of Rhode Island; Blue Cross and Blue Shield of Vermont; Cambia Health Solutions, Inc.; Regence Blue Shield of Idaho; Regence Blue Cross Blue Shield of Utah; Regence Blue Shield (of Washington); Regence Blue Cross Blue Shield of Oregon*

John D. Martin
Lucile H. Cohen
Travis A. Bustamante
NELSON MULLINS RILEY & SCARBOROUGH LLP
1320 Main Street, 17th Floor
Columbia, SC  29201
Tel: (803) 255-9421
Fax: (803) 256-7500
john.martin@nelsonmullins.com
lucie.cohen@nelsonmullins.com
travis.bustamante@nelsonmullins.com

David J. Zott, P.C.
Daniel E. Laytin, P.C.
Sarah J. Donnell
Christa C. Cottrell, P.C.
Zachary Holmstead
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
Tel: (312) 862-2000
Fax: (312) 862-2200
david.zott@kirkland.com
daniel.laytin@kirkland.com
sarah.donnell@kirkland.com
christa.cottrell@kirkland.com
zachary.holmstead@kirkland.com

*Counsel for Blue Cross Blue Shield Association*

Kimberly R. West (Liaison Counsel)
Mark M. Hogewood
WALLACE, JORDAN, RATLIFF & BRANDT, LLC
First Commercial Bank Building
800 Shades Creek Parkway, Suite 400
Birmingham, AL  35209
Tel: (205) 870-0555
Fax: (205) 871-7534
kwest@wallacejordan.com
mhogewood@wallacejordan.com

*Counsel for Defendants Blue Cross Blue Shield Association; Health Care Service Corporation, an Illinois Mutual Legal Reserve Company, including its divisions Blue Cross and Blue Shield of Illinois, Blue Cross and Blue Shield of Texas, Blue Cross and Blue Shield of New Mexico, Blue Cross and Blue Shield of Oklahoma, and Blue Cross and Blue Shield of Montana; Caring for Montanans, Inc., f/k/a Blue Cross and Blue Shield of Montana, Inc.; Highmark Inc., f/k/a Highmark Health Services; Highmark West Virginia Inc.; Highmark Blue Cross Blue Shield Delaware Inc.;*

*Counsel for Anthem, Inc., f/k/a WellPoint, Inc., and all of its named subsidiaries in this consolidated action; Blue Cross and Blue Shield of North Carolina, Inc.; Louisiana Health Service & Indemnity Company (Blue Cross and Blue Shield of Louisiana); BCBSM, Inc. (Blue Cross and Blue Shield of Minnesota); Blue Cross and Blue Shield of South Carolina; Horizon Healthcare Services, Inc. (Horizon Blue Cross and Blue Shield of New Jersey); Blue Cross & Blue Shield of Rhode Island; Blue Cross and Blue Shield of Vermont; Cambia Health Solutions, Inc.; Regence Blue Shield of Idaho; Regence Blue Cross Blue Shield of Utah; Regence Blue Shield (of Washington); Regence Blue Cross Blue Shield of Oregon; Blue Cross & Blue Shield of Mississippi, a Mutual Insurance Company; Wellmark of South Dakota, Inc. (Wellmark Blue Cross and Blue Shield of South Dakota); Wellmark, Inc. (Wellmark Blue Cross and Blue Shield of Iowa); Hawaii Medical Service Association (Blue Cross and Blue Shield of Hawaii); Triple-S Salud, Inc; Defendants Blue Cross and Blue Shield of Florida, Inc.; Blue Cross and Blue Shield of Massachusetts, Inc.; BlueCross BlueShield of Tennessee, Inc.*

Cavender C. Kimble
BALCH & BINGHAM LLP
1901 6th Avenue North, Suite 1500
Birmingham, AL 35203-4642
Tel: (205) 226-3437
Fax: (205) 488-5860
ckimble@balch.com

*Counsel for Anthem, Inc., f/k/a WellPoint, Inc., and all of its named subsidiaries in this consolidated action; Blue Cross and Blue Shield of North Carolina, Inc.; Louisiana Health Service & Indemnity Company (Blue Cross and Blue Shield of Louisiana); BCBSM, Inc. (Blue Cross and Blue Shield of Minnesota); Blue Cross and Blue Shield of South Carolina; Horizon Healthcare Services, Inc. (Horizon Blue Cross and Blue Shield of New Jersey); Blue Cross & Blue Shield of Rhode Island; Blue Cross and Blue Shield of Vermont; Cambia Health Solutions, Inc.; Regence Blue*

*California Physicians' Service d/b/a Blue Shield of California; Wellmark of South Dakota, Inc. (Wellmark Blue Cross and Blue Shield of South Dakota); Wellmark, Inc. (Wellmark Blue Cross and Blue Shield of Iowa); Hawaii Medical Service Association (Blue Cross and Blue Shield of Hawaii)*

James L. Priester
Carl S. Burkhalter
John Thomas A. Malatesta, III
MAYNARD COOPER & GALE PC
1901 6th Avenue North, Suite 2400
Regions Harbert Plaza
Birmingham, AL 35203
Tel: (205) 254-1000
Fax: (205) 254-1999
jpriester@maynardcooper.com
cburkhalter@maynardcooper.com
jmalatesta@maynardcooper.com

Pamela B. Slate
HILL CARTER FRANCO COLE & BLACK, P.C.
425 South Perry Street
Montgomery, AL 36104
Tel: (334) 834-7600
Fax: (334) 386-4381
pslate@hillhillcarter.com

*With Cravath, Swaine & Moore LLP, counsel for Defendant Blue Cross Blue Shield of Alabama*

Helen E. Witt, P.C.
Jeffrey J. Zeiger, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Tel: (312) 862-2000
Fax: (312) 862-2200
hwitt@kirkland.com
jzeiger@kirkland.com

*Shield of Idaho; Regence Blue Cross Blue Shield of Utah; Regence Blue Shield (of Washington); Regence Blue Cross Blue Shield of Oregon*

Gwendolyn Payton
KILPATRICK TOWNSEND & STOCKTON LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
Tel: (206) 626-7714
Fax: (206) 299-0414
gpayton@kilpatricktownsend.com

*Counsel for Defendants Premera Blue Cross, d/b/a Premera Blue Cross Blue Shield of Alaska*

Brian K. Norman
SHAMOUN & NORMAN, LLP
1800 Valley View Lane, Suite 200
Farmers Branch, TX 75234
Tel: (214) 987-1745
Fax: (214) 521-9033
bkn@snlegal.com

H. James Koch
ARMBRECHT JACKSON LLP
RSA Tower, 27th Floor
11 North Water Street
Mobile, AL 36602
Tel: (251) 405-1300
Fax: (251) 432-6843
hjk@ajlaw.com

*Counsel for Defendants CareFirst, Inc.; CareFirst of Maryland, Inc.; Group Hospitalization and Medical Services, Inc.; CareFirst BlueChoice, Inc.*

R. David Kaufman
M. Patrick McDowell
BRUNINI, GRANTHAM, GROWER
& HEWES, PLLC
190 East Capitol Street
The Pinnacle Building, Suite 100
Jackson, MS 39201
Tel: (601) 948-3101
Fax: (601) 960-6902

*Counsel for Defendants Health Care Service Corporation, an Illinois Mutual Legal Reserve Company, including its divisions Blue Cross and Blue Shield of Illinois, Blue Cross and Blue Shield of Texas, Blue Cross and Blue Shield of New Mexico, Blue Cross and Blue Shield of Oklahoma, and Blue Cross and Blue Shield of Montana; Caring for Montanans, Inc., f/k/a Blue Cross and Blue Shield of Montana, Inc.; Highmark Inc., f/k/a Highmark Health Services; Highmark West Virginia Inc.; Highmark Blue Cross Blue Shield Delaware Inc.; Highmark Western and Northeastern New York Inc.*

Jonathan M. Redgrave
REDGRAVE, LLP
14555 Avion Parkway, Suite 275
Chantilly, VA 20151
Tel: (703) 592-1155
Fax: (612) 332-8915
jredgrave@redgravellp.com

*Additional Counsel for HCSC and Highmark Defendants*

Todd M. Stenerson
Brian C. Hauser
Edmund Y. Saw
SHEARMAN & STERLING LLP
401 9th Street, N.W., Suite 800
Washington, DC 20004
Tel: (202) 508-8000
Fax: (202) 508-8100
todd.stenerson@shearman.com
brian.hauser@shearman.com
edmund.saw@shearman.com

Sarah L. Cylkowski
Thomas J. Rheaume, Jr.
BODMAN PLC
1901 Saint Antoine Street
6th Floor at Ford Field

dkaufman@brunini.com
pmcdowell@brunini.com

Cheri D. Green
BLUE CROSS & BLUE SHIELD OF
MISSISSIPPI, A MUTUAL INSURANCE
COMPANY
P.O. Box 1043
Jackson, MS 39215
Tel: (601) 932-3704
cdgreen@bcbsms.com

*Counsel for Defendant Blue Cross & Blue Shield
of Mississippi, a Mutual Insurance Company*

Michael A. Naranjo
FOLEY & LARDNER LLP
555 California Street, Suite 1700
San Francisco, CA 94104
Tel: (415) 984-9847
Fax: (415) 434-4507
mnaranjo@foley.com

Alan D. Rutenberg
Benjamin R. Dryden
FOLEY & LARDNER LLP
3000 K Street, N.W., Suite 600
Washington, DC 20007
Tel: (202) 672-5300
Fax: (202) 672-5399
arutenberg@foley.com
bdryden@foley.com

*Counsel for Defendant USAble Mutual Insurance
Company, d/b/a Arkansas Blue Cross and
Blue Shield*

Robert K. Spotswood
Michael T. Sansbury
Joshua K. Payne
Jess R. Nix
Morgan B. Franz
SPOTSWOOD SANSOM & SANSBURY LLC
Financial Center
505 20th Street North, Suite 700
Birmingham, AL 35203

Detroit, MI 48226
Tel: (313) 259-7777
Fax: (734) 930-2494
scylkowski@bodmanlaw.com
trheaume@bodmanlaw.com

Andy P. Campbell
A. Todd Campbell
Yawanna N. McDonald
CAMPBELL PARTNERS LLC
505 North 20th Street, Suite 1600
Birmingham, AL 35203
Tel: (205) 224-0750
Fax: (205) 224-8622
andy@campbellpartnerslaw.com
todd@campbellpartnerslaw.com
yawanna@campbellpartnerslaw.com

*Counsel for Defendant Blue Cross and
Blue Shield of Michigan*

John Briggs
Rachel Adcox
Jeny M. Maier
AXINN, VELTROP & HARKRIDER,
LLP
1901 L Street, N.W.
Washington, DC 20036
Tel: (202) 912-4700
Fax: (202) 912-4701
jbriggs@axinn.com
radcox@axinn.com
jmaier@axinn.com

Stephen A. Rowe
Aaron G. McLeod
ADAMS AND REESE LLP
Regions Harbert Plaza
1901 6th Avenue North, Suite 3000
Birmingham, AL 35203
Tel: (205) 250-5000
Fax: (205) 250-5034
steve.rowe@arlaw.com
aaron.mcleod@arlaw.com

Tel: (205) 986-3620
Fax: (205) 986-3639
rks@spotswoodllc.com
msansbury@spotswoodllc.com
jpayne@spotswoodllc.com
jnix@spotswoodllc.com
mfranz@spotswoodllc.com

*Counsel for Defendant Capital BlueCross*

Robert R. Riley, Jr.
RILEY & JACKSON, P.C.
3530 Independence Drive
Birmingham, AL  35209
Tel: (205) 879-5000
Fax: (205) 879-5901
rob@rileyjacksonlaw.com

*Counsel for Defendants Blue Cross and Blue
Shield of Florida, Inc.; Blue Cross and Blue Shield
of Massachusetts, Inc.; BlueCross BlueShield
of Tennessee, Inc.*

Edward S. Bloomberg
John G. Schmidt Jr.
Anna Mercado Clark
PHILLIPS LYTLE LLP
One Canalside
125 Main Street
Buffalo, NY  14203
Tel: (716) 847-8400
Fax: (716) 852-6100
ebloomberg@phillipslytle.com
jschmidt@phillipslytle.com
aclark@phillipslytle.com

Stephen A. Walsh
WEINBERG, WHEELER, HUDGINS,
GUNN & DIAL
100 Corporate Parkway
One Lake Level
Birmingham, AL  35242
Tel: (205) 572-4107
Fax: (205) 572-4199
swalsh@wwhgd.com

*Counsel for Defendant Independence
Blue Cross*

Kathleen Taylor Sooy
Tracy A. Roman
Sarah Gilbert
Honor Costello
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC  20004
Tel: (202) 624-2500
Fax: (202) 628-5116
ksooy@crowell.com
troman@crowell.com
sgilbert@crowell.com
hcostello@crowell.com

John M. Johnson
Brian P. Kappel
LIGHTFOOT FRANKLIN & WHITE
LLC
The Clark Building
400 20th Street North
Birmingham, AL  35203
Tel: (205) 581-0700
Fax: (205) 581-0799
jjohnson@lightfootlaw.com
bkappel@lightfootlaw.com

*Counsel for Defendants Blue Cross of
Idaho Health Service, Inc.; Blue Cross
and Blue Shield of Kansas, Inc.; Blue
Cross and Blue Shield of Kansas City;
Blue Cross and Blue Shield of
Nebraska; Blue Cross Blue Shield of
Arizona; Blue Cross Blue Shield of
North Dakota; Blue Cross Blue Shield
of Wyoming*

David J. Zott, P.C.
Daniel E. Laytin, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
Tel: (312) 862-2000

*Counsel for Defendant, Excellus Health Plan, Inc., d/b/a Excellus BlueCross BlueShield, incorrectly sued as Excellus BlueCross BlueShield of New York*

Fax: (312) 862-2200
david.zott@kirkland.com
daniel.laytin@kirkland.com

*Counsel for Defendants Wellmark of South Dakota, Inc. (Wellmark Blue Cross and Blue Shield of South Dakota); Wellmark, Inc. (Wellmark Blue Cross and Blue Shield of Iowa); Hawaii Medical Service Association (Blue Cross and Blue Shield of Hawaii); Triple-S Salud, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that on September 20, 2021, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ <i>Evan R. Chesler</i>    
Evan R. Chesler
