# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **IN RE:**<br>**BLUE CROSS BLUE SHIELD**<br>**ANTITRUST LITIGATION**<br>**(MDL NO. 2406)** | **Master File No. 2:13-CV-20000-RDP**<br><br>**This Document Relates to**<br>**Provider Track Cases** |

## PROVIDER PLAINTIFFS' REPLY IN SUPPORT OF THEIR
## MOTION FOR PARTIAL SUMMARY JUDGMENT ON
## THE DEFENDANTS' SINGLE ENTITY DEFENSE

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................ii

LIST OF CITATIONS AND ABBREVIATIONS ....................................................................iv

RESPONSE TO DEFENDANTS' STATEMENT OF ADDITIONAL RELEVANT FACTS ......1

ARGUMENT..............................................................................................................................2

    I.    This Is the Providers' First Motion for Summary Judgment on the Blues Single-Entity Defense ............................................................................................................2

    II.    The Association Has Disclaimed Single-Entity Status for the Very Function for Which the Blues Claim It Now................................................................................4

    III.    The Supreme Court Has Made Clear That Allocating Territories and Restricting Output Through a Licensee-Controlled Licensor Are Coordinated Actions ............................................................................................................4

    IV.    The Blues Are Still Not Entitled to Summary Judgment ........................................9

CONCLUSION .............................................................................................................10

i

# TABLE OF AUTHORITIES

**Cases**

*Am. Needle, Inc. v. Nat'l Football League*,
    560 U.S. 183 (2010) ................................................................................................passim

*Copperweld Corp. v. Independence Tube Corp.*,
    467 U.S. 752 (1984) ........................................................................................... 6, 7, 10

*Fraser v. Major League Soccer, L.L.C.*,
    97 F. Supp. 2d 130 (D. Mass. 2000) ....................................................................................7

*Freeman v. San Diego Ass'n of Realtors*,
    322 F.3d 1133 (9th Cir. 2003) ............................................................................................7

*Gen. Bus. Sys. v. N. Am. Philips Corp.*,
    699 F.2d 965 (9th Cir.1983) ..............................................................................................7

*Genetic Sys. Corp. v. Abbott Labs.*,
    691 F. Supp. 407 (D.D.C. 1988) ........................................................................................7

*L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*,
    519 F. Supp. 581 (C.D. Cal. 1981) ....................................................................................5

*Los Angeles Memorial Coliseum Commission v. National Football League*,
    726 F.2d 1381 (9th Cir. 1984) .............................................................................. 5, 6, 7, 8

*Madison Square Garden, L.P. v. Nat'l Hockey League*,
    2008 WL 4547518 (S.D.N.Y. Oct. 10, 2008) ...................................................................7

*McNeil v. Nat'l Football League*,
    790 F. Supp. 871 (D. Minn. 1992) .....................................................................................7

*Nat'l Collegiate Athletic Ass'n v. Bd. of Regents of the Univ. of Okla.*,
    468 U.S. 85 (1984) .............................................................................................................7

*North American Soccer League v. National Football League*,
    670 F.2d 1249 (2d Cir. 1982) ..................................................................................... 6, 7, 8

*Spinelli v. Nat'l Football League*,
    96 F. Supp. 3d 81 (S.D.N.Y. 2015) ............................................................................... 7, 8

*St. Louis Convention & Visitors Comm'n v. Nat'l Football League*,
    154 F.3d 851 (8th Cir. 1998) .............................................................................................7

*Sullivan v. National Football League*,
    34 F.3d 1099 (1st Cir. 1994) ..............................................................................................7

*United States v. Sealy, Inc.*,
    388 U.S. 350 (1967) ...................................................................................................9, 10

*United States v. Topco Associates, Inc.*,
    405 U.S. 596 (1972) ..........................................................................................................9

*Washington v. Nat'l Football League*,
    880 F. Supp. 2d 1004 (D. Minn. 2012)..........................................................................7, 8

**Statutes**

15 U.S.C. § 1064(3)................................................................................................................... 10

**Other Authorities**

Mary Kay Kane, 10A Federal Practice & Procedure (Wright & Miller)
    § 2727.2 (4th ed.)...............................................................................................................3

U.S. Patent and Trademark Office, Trademark Manual of Examining Procedure
    § 1605 (July 2021 ed.) .......................................................................................................1

## LIST OF CITATIONS AND ABBREVIATIONS

| Dkt. # | Document | Citation |
|---|---|---|
| 2748 | Provider Plaintiffs' Motion for Partial Summary Judgment on the Defendants' Single Entity Defense | Motion |
| 2801 | Defendants' Brief In Opposition to Provider Plaintiffs' Motion for Partial Summary Judgment on the Defendants' Single Entity Defense | Opposition |

The Providers' motion for partial summary judgment is their first one on the Blues' single-entity defense, and the Court's first opportunity to consider whether the Blues are a single entity for the specific functions of allocating territory and restricting output. It is well settled that the NFL—whose structure the Blues hold up as an analogue for their own—does not act as a single entity with respect to those functions, and that it can be (and has been) subject to judgment under the Sherman Act when it performs them. The Supreme Court has recently reaffirmed that principle. The Blues' response to this precedent is merely to say that the Blue Cross Blue Shield Association holds federal trademark registrations. That is no answer; any number of antitrust defendants, including Sealy, Topco, and the NFL, have held federal trademark registrations, but still have been held to be capable of coordinating in violation of the antitrust laws. The Blues should be treated no differently.

**RESPONSE TO DEFENDANTS' STATEMENT OF ADDITIONAL RELEVANT FACTS**

The Providers do not dispute Defendants' Facts 1 and 3, although the Association's ownership of the Blue Cross and Blue Shield trademarks does not preclude summary judgment for the Providers, for the reasons described in this brief. The Providers dispute the remaining facts as follows:

2.  **Disputed.** The Providers do not dispute that the Association's predecessors submitted, and the U.S. Patent Office acknowledged, affidavits of incontestability. As described in Part IV below, the Providers dispute that the affidavits of incontestability were truthful and that they were not intended to deceive the Patent Office. The Patent Office's acknowledgment of the affidavits of incontestability is irrelevant because it "is not a determination by the USPTO that the registration is in fact incontestable." U.S. Patent and Trademark Office, Trademark Manual of Examining Procedure § 1605 (July 2021 ed.).

4. **Disputed.** The Association's licensing and governance of the Federal Marks represent concerted action by the individual Blue Plans. *See* Doc. No. 2063 ("In addition, the undisputed record evidence also reveals that the Blue Plans control the terms of each Blue's License Agreement."). The Association itself licenses and governs the Federal Marks only with the individual Blue Plans' consent. *Id.* Additionally, the ability to "license or govern the Federal Marks" is not the function for which the Providers assert that the Blues cannot be a single entity as a matter of law. The relevant functions are allocating territory and restricting output.

## ARGUMENT

### I. This Is the Providers' First Motion for Summary Judgment on the Blues' Single-Entity Defense.

The Providers are moving for summary judgment on the Blues' single-entity defense for the first time, and on narrower grounds than the ones on which this Court evaluated the defense before. Initially, the *Blues* moved for summary judgment on the single-entity defense, identifying the "function at issue [as] the governance of the Blue Marks." Doc. No. 1349 at 21. The Subscribers cross-moved for summary judgment, arguing that the single-entity defense cannot be evaluated on a function-by-function basis, and that the Blues were capable of conspiring with respect to the governance of the Blue Marks. Doc. No. 1435 at 29–34. The Providers did not cross-move for summary judgment, but they did respond to the Blues' arguments as the Blues framed them. Doc. No. 1431 at 17–22. The Court decided the issue as the Blues framed it as well. Doc. No. 2063 at 34 ("[I]t is the licensing of these Marks that constitutes the 'function' for which Defendants claim single entity status."). Now, instead of arguing that the single-entity test should not be applied on a function-by-function basis (as the Subscribers did) or that the Blues are not a single entity for purposes of "governance of the Blue Marks" (as the Blues framed it), the Providers maintain that two specific activities—allocating territory and restricting output—cannot be the work of a single entity if that entity is controlled by potential competitors. Motion at 6–12.

2

Whether or not some aspects of governance of the Blue Marks can be the work of a single entity, allocating territory is not one of them. And restricting output under non-Blue brands (the so-called National Best Efforts rule) is not arguably under the umbrella of "governance of the Blue Marks" because it specifically governs business not conducted under those marks. The two cases directly on point for the Providers' narrower argument, *L.A. Memorial Coliseum Commission* and *North American Soccer League*, were never mentioned in the nine briefs or the Court's opinion on the standard of review. Therefore, the Providers are not seeking a "re-do" of the previous standard of review motion; they are moving for the first time on a new question.

The Blues' Opposition invents a new rule of civil procedure: If a defendant moves for summary judgment on one of its defenses, and the plaintiff defeats that motion by demonstrating a genuine dispute of fact, the plaintiff can never move for summary judgment that the defense fails. This made-up rule is incorrect. If the Blues are implying that collateral estoppel applies here, it is not hard to see why the Providers' motion lacks the identity of issues that collateral estoppel requires—especially when the Providers *prevailed* on the Blues' motion. All a plaintiff must do to defeat a defendant's motion for summary judgment is to identify a single genuine dispute; it "does not need to show that the dispute as to material facts will be resolved in its favor." Mary Kay Kane, 10A Federal Practice & Procedure (Wright & Miller) § 2727.2 (4th ed.). Beyond this disparity in the burden of proof, the disparity in the functions at issue—governance of the Blue Marks versus allocating territory and restricting output—precludes collateral estoppel as well. If the Blues are implying instead that the Providers' motion should be treated as a motion for reconsideration, then the same problems exist, plus one more: the Providers have never moved for summary judgment on the Blues' single-entity defense. Therefore, the Court should decide the Providers' motion on its merits.

### II. The Association Has Disclaimed Single-Entity Status for the Very Function for Which the Blues Claim It Now.

The Blues do not and cannot dispute that they are independent companies, or that the Association itself has stated that "the single entity model is not a good analogy for the Blue system," Doc. No. 2787-1 at 8. They claim instead that the Association's statement does not bear on "the functional concept of a 'single entity' as a matter of antitrust law." Opposition at 7 (citing *Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 195 (2010)). But the "function" at issue in the Association's statement was the same one the Blues claim to be at issue here: governance of the Blue Marks.[1] That statement was in the middle of a presentation about how the Association governs the Blue Marks. Therefore, the Association has admitted it is not a single entity even within the "functional concept" the Blues posit.

### III. The Supreme Court Has Made Clear That Allocating Territories And Restricting Output Through a Licensee-Controlled Licensor Are Coordinated Actions.

For purposes of this motion, the Providers are willing to assume that the availability of the single-entity defense must be evaluated on a function-by-function basis. *See* Opposition at 8 (advocating this standard); Doc. No. 2063 (Standard or Review Opinion) at 32 n.11, 34–35. As the Blues themselves acknowledge, the Providers have identified two functions for which the Blues cannot be a single entity as a matter of law: "establishing exclusive territorial rights and restricting their ability to do business under different marks." Motion at 9; Opposition at 8. Yet the Blues largely ignore these two specific functions, focusing instead on trademark licensing writ large. They do this because "[t]he Court has further observed that the relevant function here is the governance of the Federal Marks" in its opinion on the standard of review. Opposition at 8. But the Court was not asked to decide whether that was the correct function; the Blues claimed that this

---

[1] The Providers' motion is based on narrower functions than "governance of the Blue Marks," but because the Association has asserted that it is not a single entity with respect to that broader function, the distinction is immaterial in this Part of the brief.

4

was the function, and the Providers and Subscribers responded to that argument. *See supra* Part I. No one analyzed the specific functions at issue in the current motion.[2] With the focus properly on the functions identified in the *Providers'* motion, and not the Blues' motion, the unavailability of the single-entity defense is plain.

The square holding of *Los Angeles Memorial Coliseum Commission v. National Football League* is that the single-entity defense did not protect the NFL's prohibition on the relocation of the Oakland Raiders to Los Angeles. 726 F.2d 1381, 1387 (9th Cir. 1984); *see also L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 519 F. Supp. 581, 582 (C.D. Cal. 1981) (directing a verdict that the NFL is not "a single economic entity for purposes of this lawsuit"). The Ninth Circuit's discussion focused on this function—limiting team relocation—and never purported to hold that the NFL cannot be a single entity for any purpose. *See L.A. Mem'l Coliseum*, 726 F.2d at 1389 (contrasting the NFL Executive Committee's decision on territorial divisions with the "functions" of the Commissioner, including "scheduling, resolving disputes among players and franchises, supervising officials, discipline and public relations"). The Blues' argument to the contrary rests on what they claim is a concurrence by one of the panel's judges, who believed that the NFL is "a single entity for purposes of intra-league regulation of relocation of existing franchises." Opposition at 14 (quoting *id.* at 1409 (Williams, J., concurring in part and dissenting in part)). The portion of the opinion on which they rely, however, was not a concurrence, but a dissent. *L.A. Mem'l Coliseum*, 726 F.2d at 1401 (Williams, J.) ("I respectfully dissent from the majority's opinion, insofar as it affirms the district judge's directed verdict that the N.F.L. was not a single entity as a matter of law."). Therefore, the Blues are incorrect that the Ninth Circuit assumed that "the NFL could either be a single entity for all functions or none at all." Opposition at

---

[2] The Providers' reply brief did mention these functions in one of its headings, but the text simply referred the Court to the Providers' opposition to the Blues' motion, which analyzed the broad function of trademark management as the Blues defined it. Doc. No. 1349 at 8.

5

14 n.7. Instead, the majority opinion simply disagreed that the function at issue was carried out by a single entity. Even if the Ninth Circuit had held that the NFL could never be a single entity, and even if that conclusion is no longer tenable, its holding with respect to territorial allocation would remain intact, as that was the specific context of its decision, and the foundation of its analysis.

Similarly, the square holding of *North American Soccer League v. National Football League* is that the single-entity defense did not protect the NFL's prohibition on its members' investments in teams in other sports. 670 F.2d 1249, 1250 (2d Cir. 1982) (describing the legality of that prohibition as "[t]he central question in this case"). Here too, the Second Circuit did not claim that the NFL can never act as a single entity, and repeatedly used language consistent with a functional analysis. *Id.* at 1256 (rejecting the NFL's argument that it "acted as a 'single economic entity'" when it adopted the ban), 1257 ("The characterization of NFL as a single economic entity does not exempt from the Sherman Act an agreement between its members to restrain competition."), 1257–58 (rejecting the single-entity defense when "judg[ing] the legality of such restraints"). Even if the Second Circuit had made such a claim, its reasoning would remain intact with respect to the specific function of limiting output not covered by the trademark at issue.

The Supreme Court's decision in *Copperweld* in no way undermines *L.A. Memorial Coliseum* or *North American Soccer League*. In *Copperweld*, the Supreme Court stated, "We limit our inquiry to the narrow issue squarely presented: whether a parent and its wholly owned subsidiary are capable of conspiring in violation of § 1 of the Sherman Act." *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 767 (1984). The Court decided that they are not, but took care to cabin its decision: "We do not consider under what circumstances, if any, a parent may be liable for conspiring with an affiliated corporation it does not completely own." *Id.* The teams of the NFL are not wholly owned subsidiaries of the NFL, and the Blue Plans are independent companies not owned by the Association. Therefore, *Copperweld* did not abrogate either of the

6

NFL decisions, and it does not create an escape hatch for the Blues. Moreover, *L.A. Memorial Coliseum* invoked Ninth Circuit precedent that anticipated *Copperweld* in holding that there is no concerted activity when "'corporate policies are set by … a parent corporation.'" 726 F.2d at 1388 (quoting *Gen. Bus. Sys. v. N. Am. Philips Corp.*, 699 F.2d 965, 980 (9th Cir. 1983)). The Ninth Circuit then stated, "The facts make it clear the NFL does not fit within this exception." *Id.* In *North American Soccer League*, the Second Circuit also based its decision on an extensive review of the facts, without making any assumptions that *Copperweld* would undermine. 670 F.2d at 1250–58. Several courts, including the Ninth Circuit, have cited *L.A. Memorial Coliseum* and *North American Soccer League* as good law, even in light of *Copperweld*.[3]

The Blues also claim that *American Needle* changed the law in their favor, citing two district court cases involving the NFL. Opposition at 12–13 (discussing *Washington v. Nat'l Football League*, 880 F. Supp. 2d 1004 (D. Minn. 2012); *Spinelli v. Nat'l Football League*, 96 F. Supp. 3d 81 (S.D.N.Y. 2015)). These cases, however, show at most that a trademark owner's licensing of intellectual property to third parties can be the work of a single entity. In both cases, the product at issue was the intellectual property itself: photos and footage of NFL games, which were sold or licensed to entities outside the NFL. *Washington*, 880 F. Supp. 2d at 1005; *Spinelli*, 96 F. Supp. 3d at 91–92. In both cases, the court noted that collective licensing is "'essential if the product is to be available at all.'" *Washington*, 880 F. Supp. 2d at 1007 (quoting *Nat'l Collegiate Athletic Ass'n v. Bd. of Regents of the Univ. of Okla.*, 468 U.S. 85, 101 (1984)); *Spinelli*, 96 F

---

[3] *E.g.*, *Freeman v. San Diego Ass'n of Realtors*, 322 F.3d 1133, 1147–48 (9th Cir. 2003) (distinguishing *Copperweld* from *L.A. Memorial Coliseum*); *Sullivan v. National Football League*, 34 F.3d 1099 (1st Cir. 1994); *St. Louis Convention & Visitors Comm'n v. Nat'l Football League*, 154 F.3d 851, 856 (8th Cir. 1998) (describing district court's decision); *Madison Square Garden, L.P. v. Nat'l Hockey League*, 2008 WL 4547518, at *12 (S.D.N.Y. Oct. 10, 2008); *Fraser v. Major League Soccer, L.L.C.*, 97 F. Supp. 2d 130, 138 n.10 (D. Mass. 2000); *McNeil v. Nat'l Football League*, 790 F. Supp. 871, 878–80 (D. Minn. 1992); *Genetic Sys. Corp. v. Abbott Labs.*, 691 F. Supp. 407, 417–18 (D.D.C. 1988). The First Circuit's opinion in *Sullivan* does not "prove the Blues' point" because the Providers' motion does not claim that the function at issue is "governance of the Federal Marks' use." Opposition at 14 n.7; *see supra* Part I.

Supp. 3d at 114 n.14 (quoting *American Needle*, 560 U.S. at 203). Here, by contrast, the product is not the Blues' intellectual property itself, but insurance. This Court has already held that neither territorial allocation nor restrictions on unbranded competition are essential for insurance to be available at all. Doc. No. 2063 at 44 & n.15, 48. Because insurance—even Blue-branded insurance—was available without these restrictions, *id.*, *Washington* and *Spinelli* do not speak to whether the Blues' imposition of those rules is collaboration or the work of a single entity. Nor do they speak to the specific functions at issue here. Allocating territory and limiting output are *per se* antitrust violations, Doc. No. 2063 at 35–48, while joint licensing of intellectual property to third parties typically is not, *Broadcast Music, Inc. v. Columbia Broadcasting Sys., Inc.*, 441 U.S. 1 (1979).

The Providers submit that the best way to understand the effect of *American Needle* on *L.A. Memorial Coliseum* and *North American Soccer League* is to review *American Needle*'s discussion of those cases, rather than factually inapposite district-court cases. The Blues offer no response at all to *American Needle*'s citation of *L.A. Memorial Coliseum* as an example of cartel behavior—not the behavior of a single entity. Motion at 11 (quoting *American Needle*, 560 U.S. at 201). *American Needle* also cited *North American Soccer League* for the proposition that the NFL's teams lack the "unitary decisionmaking quality or the single aggregation of economic power characteristic of independent action." *Id.* at 196. The Blues themselves have emphasized the similarity between their governance and the governance of the NFL. Motion at 9. Therefore, the Blues do not act as a single entity when they allocate territory and restrict output.[4]

Another portion of *American Needle* belies the Blues' supposition that trademark licensing is a "get out of jail free" card for competitors who allocate territories and restrict output.

---

[4] The Blues' opposition does not identify any aspect of the Association's governance that would distinguish the Blues from the teams of the NFL. If anything, the NFL had a stronger claim to single-entity status because its teams equally share the majority of league revenue, while the Blues do not share revenue. *See L.A. Memorial Coliseum*, 726 F.2d at 1390.

Discussing *United States v. Sealy, Inc.*, 388 U.S. 350 (1967), the Supreme Court stated in *American Needle* that the licensing of the Sealy trademark to manufacturers in a specific geographic area was concerted action—not action by a single entity. 560 U.S. at 191. The Court also cited its opinion in *United States v. Topco Associates, Inc.*, 405 U.S. 596 (1972), as an example of concerted action. 560 U.S. at 192; *see also* Doc. No. 2063 at 38 ("*American Needle* discussed *Sealy* and *Topco* in relation to the single-entity defense, not in the context of the *per se* rule established in those cases."). Restrictions on unbranded competition, like the Blues' National Best Efforts rule, are even more readily classified as concerted action because they do not represent trademark licensing. It cannot be true, then, that the Blues are a single entity simply because their association is the sole owner of a federal trademark registration; so were Sealy and Topco, and *American Needle* said that the licensing of that mark was concerted action among their licensees.

## IV. The Blues Are Still Not Entitled to Summary Judgment.

The Providers have not conceded any point that would support summary judgment in favor of the Blues. The Providers have said that they are not asking the Court to cancel the Blues' federal registrations, Trademark Br. at 9, but not because the Providers concede that the registrations are valid. The Blues' own assertions in this case indicate that the Association's predecessors defrauded the Patent Office. *Compare* Defendants' SoR Reply at 11 (claiming that at least some Plans separately owned the Blue Marks) *with* Doc. No. 1353-28 at 4–5, 33 (sworn declaration in Blue Cross application that the AHA was the sole owner of the mark) *and* Doc. No. 1353-46 at 11–12 (sworn declaration in Blue Shield application that BSMCP was the sole owner of the mark); *see also* Doc. No. 2063 at 7 (noting that the AHA did not have an assignment from the St. Paul Plan when it registered the Blue Cross mark). There is even evidence that the trademark applications of the Association's predecessors contained misstatements intended to deceive the Patent Office. When the patent examiner asked the AHA why it was applying for registration of the Blue Cross

9

mark when the proprietor of the service was the Hospital Service Association (the St. Paul Plan), the AHA responded (falsely, if the Blues' filings in this case are to be believed) that it "is the owner of the blue cross service mark, and permits other concerns to use the mark." Doc. No. 1353-28 at 8, 21. Thus, the Blue Marks are subject to cancellation, 15 U.S.C. § 1064(3), or there is at least a factual dispute on this issue, Doc. No. 2063 at 34 n.12 (noting the lack of evidence that the applicants for registration had the authority to do so). The reason the Providers aren't seeking cancellation of the Blue Marks' registrations is that such relief is beyond the scope of their complaint, and a cancellation action would threaten to further prolong a case that the Blues have managed to stretch into its tenth year.

In any event, even if the Association owns impeccable registrations and the power to license the Blue Marks nationwide, that does not resolve the single entity issue in their favor. This Court has already rejected the Blues' argument that a licensor controlled by its licensees must be treated as a single entity. Doc. No. 2063 at 37. That holding is consistent with *American Needle*, which reiterated (long after *Copperweld* was decided) that the Sealy corporation, which also had a federal trademark registration and the power to license the Sealy marks nationwide, "was not a 'separate entity, but … an instrumentality of the individual manufacturers.'" 560 U.S. at 192 (quoting *Sealy*, 388 U.S. at 356). The Association's federal trademark registrations were well known to the Court when it last rejected the Blues' argument that "they are a single entity because the Association now owns the Blue Marks and is responsible for licensing and protecting those Marks," Doc. No. 2063, and nothing has changed since.

## CONCLUSION

The Providers' motion for partial summary judgment should be granted.

| | |
|---|---|
| Dated: September 20, 2021 | Respectfully submitted, |
| */s/ Edith M. Kallas* | */s/ Joe R. Whatley, Jr.* |
| Edith M. Kallas – **Co-Lead Counsel** | Joe R. Whatley, Jr. – **Co-Lead Counsel** |
| WHATLEY KALLAS, LLP | W. Tucker Brown |
| 152 West 57th Street | WHATLEY KALLAS, LLP |
| 41st Floor | 2001 Park Place North |
| New York, NY  10019 | 1000 Park Place Tower |
| Tel:  (212) 447-7060 | Birmingham, AL 35203 |
| Fax:  (800) 922-4851 | Tel:  (205) 488-1200 |
| Email: ekallas@whatleykallas.com | Fax:  (800) 922-4851 |
| | Email: jwhatley@whatleykallas.com |
| | tbrown@whatleykallas.com |
| Patrick J. Sheehan | Deborah J. Winegard |
| WHATLEY KALLAS, LLP | WHATLEY KALLAS, LLP |
| 101 Federal Street | 1068 Virginia Avenue, NE |
| 19th Floor | Atlanta, GA 30306 |
| Boston, MA 10019 | Tel:  (404) 607-8222 |
| Tel:  (617) 573-5118 | Fax:  (404) 607-8451 |
| Fax:  (617) 371-2950 | Email: dwinegard@whatleykallas.com |
| Email: psheehan@whatleykallas.com | |
| Henry C. Quillen | E. Kirk Wood, Jr. – **Local Facilitating Counsel** |
| WHATLEY KALLAS, LLP | WOOD LAW FIRM LLC |
| 159 Middle Street, Suite 2C | P. O. Box 382434 |
| Portsmouth, NH  03801 | Birmingham, AL 35238 |
| Tel:  (603) 294-1591 | Tel:  (205) 612-0243 |
| Fax:  (800) 922-4851 | Fax:  (205) 705-1223 |
| Email: hquillen@whatleykallas.com | Email: ekirkwood1@bellsouth.net |
| Charles Clinton Hunter | Aaron S. Podhurst – **Plaintiffs' Steering Committee** |
| HAYES HUNTER PC | Peter Prieto – **Chair, Expert Committee** |
| 4265 San Felipe, Suite 1000 | PODHURST ORSECK, P.A. |
| Houston, TX 77027 | One S.E. 3rd Avenue |
| Tel:  (281) 768-4731 | Suite 2300 |
| Fax: (713) 583-7047 | Miami, FL  33131 |
| Email: chunter@hayeshunterlaw.com | Tel:  (305) 358-2800 |
| | Fax:  (305) 358-2382 |
| | Email: apodhurst@podhurst.com |
| | pprieto@podhurst.com |

Dennis Pantazis – ***Plaintiffs' Steering Committee***
Brian Clark – ***Discovery Committee***
WIGGINS CHILDS PANTAZIS FISHER
  GOLDFARB
The Kress Building
301 Nineteenth Street North
Birmingham, AL 35203
Tel:  (205) 314-0500
Fax:  (205) 254-1500
Email: dgp@wcqp.com
       bclark@wcqp.com

Dennis C. Reich – ***Chair, Damages Committee***
REICH & BINSTOCK, LLP
4265 San Felipe, Suite 1000
Houston, TX 77027
Tel:  (713) 622-7271
Fax:  (713) 623-8724
Email:  dreich@rbfirm.net

Nicholas B. Roth – ***Chair, Discovery Committee***
Julia Smeds Roth – ***Discovery Committee***
EYSTER KEY TUBB ROTH MIDDLETON
  & ADAMS, LLP
402 East Moulton Street, SE
Decatur, AL 35602
Tel:  (256) 353-6761
Fax:  (256) 353-6767
Email: nbroth@eysterkey.com
       jroth@eysterkey.com

David A. Balto – ***Expert Committee***
THE LAW OFFICES OF DAVID A. BALTO
1350 I Street, N.W., Suite 850
Washington, DC 20005
Tel:  (202) 789-5424
Fax:  (202) 589-1819
Email: david.balto@dcantitrustlaw.com

U.W. Clemon – ***Plaintiffs' Steering Committee***
U. W. Clemon, LLC
5202 Mountain Ridge Parkway
Birmingham, AL  35222
Tel: (205) 837-2898
Email: clemonu@bellsouth.net

J. Mark White – ***Litigation Committee***
Augusta S. Dowd – ***Chair, Litigation Committee***
Linda G. Flippo – ***Discovery Committee***
WHITE ARNOLD & DOWD, P.C.
The Massey Building
2025 Third Avenue North, Suite 500
Birmingham, AL 35203
Tel:  (205) 323-1888
Fax:  (205) 323-8907
Email: mwhite@whitearnolddowd.com
       adowd@whitearnolddowd.com
       lflippo@whitearnolddowd.com

Van Bunch – ***Chair, Class Certification Committee***
BONNETT FAIRBOURN FRIEDMAN &
  BALINT, P.C.
2325 E. Camelback Road, Suite 300
Phoenix, AZ 85016
Tel:  (602) 274-1100
Fax:  (602) 274-1199
Email: vbunch@bffb.com

Robert J. Axelrod – ***Chair, Written Submissions Committee***
AXELROD LLP
800 Third Avenue, Suite 2800
New York, NY 10022
Tel: (646) 448-5263
Fax: (212) 840-8560
Email: rjaxelrod@axelrodllp.com

Joey K. James – *Litigation Committee*
BUNCH & JAMES
P. O. Box 878
Florence, AL 35631
Tel:  (256) 764-0095
Fax:  (256) 767-5705
Email: joey@bunchandjames.com

Richard S. Frankowski – *Discovery Committee*
THE FRANKOWSKI FIRM, LLC
231 22nd Street South, Suite 203
Birmingham, AL  35233
Tel:  (205) 390-0399
Fax: (205) 390-1001
Email: richard@frankowskifirm.com

John C. Davis – *Written Submissions Committee*
LAW OFFICE OF JOHN C. DAVIS
623 Beard Street
Tallahassee, FL 32303
Tel:  (850) 222-4770
Email: john@johndavislaw.net

Mark K. Gray – *Discovery Committee*
GRAY & WHITE
713 E. Market Street, Suite 200
Louisville, KY 40202
Tel:  (502) 805-1800
Fax:  (502) 618-4059
Email: mgray@grayandwhitelaw.com

Stephen M. Hansen – *Class Certification Committee*
LAW OFFICE OF STEPHEN M. HANSEN
1821 Dock Street
Tacoma, WA 98402
Tel:  (253) 302-5955
Fax:  (253) 301-1147
Email: steve@stephenmhansenlaw.com

W. Daniel Miles, III – *Written Submissions Committee*
BEASLEY ALLEN CROW METHVIN PORTIS
  & MILES, P.C.
218 Commerce Street
Montgomery, AL 36104
Tel:  (800) 898-2034
Fax:  (334) 954-7555
Email: dee.miles@beasleyallen.com

Michael C. Dodge – *Expert Committee*
GLAST PHILLIPS & MURRAY, P.C.
14801 Quorum Drive, Suite 500
Dallas, TX 75254
Tel:  (972) 419-7172
Email: mdodge@gpm-law.com

Michael E. Gurley, Jr. – *Discovery Committee*
Attorney at Law
24108 Portobello Road
Birmingham, AL 35242
Tel:  (205) 908-6512
Email: mgurleyjr@yahoo.com

Lynn W. Jinks, III – *Expert Committee*
Christina D. Crow – *Discovery Committee*
JINKS CROW & DICKSON, P.C.
219 North Prairie Street
Union Springs, AL 36089
Tel:  (334) 738-4225
Fax:  (334) 738-4229
Email: ljinks@jinkslaw.com
          ccrow@jinkslaw.com

Myron C. Penn – *Discovery Committee*
PENN & SEABORN, LLC
53 Highway 110
Post Office Box 5335
Union Springs, AL 36089
Tel:  (334) 738-4486
Fax:  (334) 738-4432
Email: myronpenn28@hotmail.com

Harley S. Tropin – ***Damages Committee***
Javier A. Lopez – ***Discovery Committee***
KOZYAK TROPIN &
 THROCKMORTON, P.A.
2525 Ponce De Leon Boulevard, 9th Floor
Miami, FL 33134
Tel:  (305) 372-1800
Fax:  (305) 372-3508
Email: hst@kttlaw.com
          jal@kttlaw.com

C. Wes Pittman – ***Settlement Committee***
THE PITTMAN FIRM, P.A.
432 McKenzie Avenue
Panama City, FL 32401
Tel:  (850) 784-9000
Fax:  (850) 763-6787
Email: wes@pittmanfirm.com

Robert B. Roden – ***Litigation Committee***
SHELBY RODEN, LLC
2956 Rhodes Circle
Birmingham, AL 35205
Tel:  (205) 933-8383
Fax:  (205) 933-8386
Email: rroden@shelbyroden.com

Gary E. Mason – ***Class Certification Committee***
WHITFIELD BRYSON & MASON, LLP
1625 Massachusetts Ave. NW, Suite 605
Washington, DC 20036
Tel:  (202) 429-2290
Fax:  (202) 640-1160
Email: gmason@wbmllp.com

Michael L. Murphy – ***Discovery Committee***
BAILEY GLASSER LLP
910 17th Street, NW, Suite 800
Washington, DC  20006
Tel:  (202) 463-2101
Fax: (202) 463-2103
Email: mmurphy@baileyglasser.com

J. Preston Strom, Jr. – ***Litigation Committee***
STROM LAW FIRM, LLC
2110 N. Beltline Boulevard, Suite A
Columbia, SC 29204-3905
Tel:  (803) 252-4800
Fax:  (803) 252-4801
Email: petestrom@stromlaw.com

Thomas V. Bender – ***Discovery Committee***
Dirk L. Hubbard
HORN AYLWARD & BANDY, LLC
2600 Grand Blvd., Suite 1100
Kansas City, MO 64108
Tel:  (816) 421-0700
Email:  tbender@hab-law.com
           dhubbard@hab-law.com

Gregory S. Cusimano – ***Litigation Committee***
CUSIMANO, ROBERTS & MILLS, LLC
153 South 9th Street
Gadsden, AL  35901
Phone: (256) 543-0400
Fax: (256) 543-0488
Email:  greg@alalawyers.net

Brian E. Wojtalewicz
WOJTALEWICZ LAW FIRM, LTD.
139 N. Miles Street
Appleton, MN 56208
Tel:  (320) 289-2363
Fax:  (320) 289-2369
Email: brian@wojtalewiczlawfirm.com

Archie C. Lamb, Jr.
ARCHIE LAMB & ASSOCIATES, LLC
301 19th Street North, Suite 585
The Kress Bldg.
Birmingham, AL 35203-3145
(205) 458-1210
Email: alamb@archielamb.com

Lance Michael Sears
SEARS & SWANSON, P.C.
First Bank Building
2 North Cascade Avenue, Suite 1250
Colorado Springs, CO 80903
Tel:  (719) 471-1984
Fax:  (719) 577-4356
Email: lance@searsassociates.com

Paul Lundberg
LUNDBERG LAW, PLC
600 4TH Street, Suite 906
Sioux City, IA  51101
Tel:  (712) 234-3030
Fax:  (712) 234-3034
Email:  paul@lundberglawfirm.com

Jessica Dillon
Ray R. Brown
Molly Brown
DILLON & FINDLEY, P.C.
1049 W. 5th Avenue, Suite 200
Anchorage, AK  99501
Tel:  (907) 277-5400
Fax:  (907) 277-9896
Email:  Jessica@dillonfindley.com
            Ray@dillonfindley.com
            Molly@dillonfindley.com

Gwen Simons
Simons & Associates Law, P.A.
P.O. Box 1238
Scarborough, ME 04070-1238
Tel: (207) 205-2045
Fax: (207) 883-7225
Email: gwen@simonsassociateslaw.com

Cynthia C. Moser
HEIDMAN LAW FIRM
1128 Historic 4th Street
P. O. Box 3086
Sioux City, IA  51101
Tel:  (712) 255-8838
Fax  (712) 258-6714
Email:  Cynthia.Moser@heidmanlaw.com