

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **IN RE:  BLUE CROSS BLUE SHIELD ANTITRUST LITIGATION (MDL No. 2406)** | **Master File No. 2:13-CV-20000-RDP**<br><br>**This document relates to Provider-Track cases.** |

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON PROVIDERS' DAMAGES CLAIMS AS TIME-BARRED AND SPECULATIVE

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................................1

RESPONSE TO PROVIDERS' "UNDISPUTED RELEVANT MATERIAL FACTS"................2

ARGUMENT...........................................................................................................2

    I.      PROVIDERS' DAMAGES CLAIMS ARE TIME-BARRED BECAUSE THEY FLOW FROM PRE-LIMITATIONS PERIOD EVENTS ..........................2

          A.     All of Providers' Damages Scenarios Are Time-Barred Because They Are Based On Acts That Occurred Decades Before The Limitations Period............................................................................2

          B.     Under Providers' Theory, Current Deflated Prices Are The Unabated, Inertial Consequences Of Pre-Limitations Conduct, Not New Overt Acts.................................................................................3

          C.     Providers Do Not Address Prejudice To Defendants ..................9

    II.     PROVIDERS' DAMAGES CLAIMS ARE SPECULATIVE ...............................9

CONCLUSION.......................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alarm Detection Sys., Inc. v. Orland Fire Prot. Dist.*,
    129 F. Supp. 3d 614 (N.D. Ill. 2015) ...................................................................4

*In re Brand Name Prescription Drugs Antitrust Litig.*,
    123 F.3d 599 (7th Cir. 1997) .........................................................................5

*Bray v. Bank of Am.*,
    784 F. App'x 738 (11th Cir. 2019) ..................................................................4

*Burnett v. N.Y. Cent. R.R. Co.*,
    380 U.S. 424 (1965) ......................................................................................9

*Gumwood HP Shopping Partners, L.P. v. Simon Prop. Grp. Inc.*,
    221 F. Supp. 3d 1033 (N.D. Ind. 2016) ....................................................3, 7, 8

*Hanover Shoe, Inc. v. United Shoe Mach. Corp.*,
    392 U.S. 481 (1968) ......................................................................................5

*Kaiser Found. v. Abbott Labs.*,
    2009 WL 3877513 (C.D. Cal. Oct. 9, 2009) ...............................................4, 7

*Klehr v. A.O. Smith Corp.*,
    521 U.S. 179 (1997) ...................................................................................3, 8

*Mayor of Baltimore v. Actelion Pharms., Ltd.*,
    995 F.3d 123 (4th Cir. 2021) .........................................................................5

*Midwestern Waffles, Inc. v. Waffle House, Inc.*,
    734 F.2d 705 (11th Cir. 1984) ....................................................................5, 6

*Multimatic, Inc. v. Faurecia Interior Sys. USA, Inc.*,
    358 F. App'x 643 (6th Cir. 2009) ...................................................................9

*Pajak v. Rohm & Haas Co.*,
    2019 WL 6715181 (D. Mass. Dec. 9, 2019) ...................................................9

*Sunbeam Television Corp. v. Nielsen Media Rsch. Inc.*,
    711 F.3d 1264 (11th Cir. 2013) ....................................................................10

*In re Travel Agent Comm'n Antitrust Litig.*,
    583 F.3d 896 (6th Cir. 2009) .........................................................................4

*In re Wholesale Grocery Prods. Antirust Litig.*
    752 F.3d 728 (8th Cir. 2014) ............................................................................................5, 8

*Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*
    746 F.3d 1028 (11th Cir. 2014) ..........................................................................................9

*Zenith Radio Corp. v. Hazeltine Rsch., Inc.*,
    401 U.S. 321 (1971)..............................................................................................................5

## CITATION KEY

| Citation | Reference |
|---|---|
| Br. | Citations to Defendants' Memorandum in Support of Motion for Summary Judgment on Providers' Damages Claims as Time-Barred and Speculative (Doc. 2762) |
| Doc(s). | Citations to Documents filed on the Docket in MDL 2406 (2:13-CV-20000-RDP) |
| Opp. | Citations to Provider Plaintiffs' Opposition to Defendants' Motion for Summary Judgment on Providers' Damages Claims as Time-Barred and Speculative (Doc. 2798) |

## PRELIMINARY STATEMENT

Can Providers recover the over $15 billion in damages they seek when all the events that allegedly caused those damages occurred decades ago? As a matter of law, the answer is no. In a case filed in 2012, the Clayton Act's four-year statute of limitations bars the recovery of damages flowing from events that occurred prior to 2008.

Providers label the date of entry as disputed but concede that four of their damages scenarios rely on blocked entry occurring "long enough before the beginning of the class period to take market share from BCBS-AL" to generate their damages. Opp. at 4 (Fact 10), 10. This is hardly a "disputed" fact; it is a fatal admission. Under controlling law, damages cannot be based on the consequences of old injurious conduct, and Providers use a date of entry that pre-dates the class period. A more recent entry date would result in no or negligible damages. While Providers obviously saw an upside in choosing an old, historical—yet unspecified—entry date, there are consequences to that choice. Courts reject "snowball" damages theories rooted in events occurring *outside* of the statutory period even where the plaintiff seeks to recover damages only *within* the statutory period.

And while Providers quibble about whether their other three damages scenarios involved "blocked entry," they do not dispute that each of their seven damages scenarios assume a fundamental change to the Blues' business occurring long ago—elimination of exclusive service areas, limitations on out-of-area contracting, or radical changes to BlueCard—followed by years of ramp-up *prior* to the limitations period. Because all of Providers' damages are necessarily driven by overt acts that occurred prior to 2008, their damages claims are time-barred.

Providers are wrong that the allegedly deflated prices Defendants paid Alabama hospitals since 2008 revive their stale claims. Even if current sales at deflated prices can create timely claims in some situations, accrual requires a claim-by-claim analysis based on the plaintiff's theory

of harm. Under Providers' chosen theory, today's prices are deflated because the challenged Blue rules blocked the Blues from making major business changes decades ago. According to Providers, *all* those changes and the attendant share transfer from BCBSAL to other Blues—which is the entire source of their asserted damages—would have occurred in the distant past, and as a result, *all* their claims are time-barred.

Further, just because Providers' expert ran a regression does not save their speculative damages claims from dismissal. Courts routinely hold that regressions are improper when they rely on speculative assumptions. The critical assumptions that Dr. Haas-Wilson's model requires lack sufficient factual support to permit a reasonable inference of the massive, historical market changes that she and Dr. Slottje rely upon to calculate Providers' damages.

## RESPONSE TO PROVIDERS' "UNDISPUTED RELEVANT MATERIAL FACTS"

Defendants dispute the materiality of Providers' additional facts (Opp. at 8) and specifically dispute Fact 2. The exhibit Providers cite does not support the characterization that the contracts were "terminated" or that any decision was made "because" Alabama "could obtain lower reimbursement rates through the BlueCard program." *Id.* In fact, Providers' cited exhibit directly refutes their assertion. Doc. 1429 at 6 (Statement of Facts ¶ 22).

## ARGUMENT

I. **PROVIDERS' DAMAGES CLAIMS ARE TIME-BARRED BECAUSE THEY FLOW FROM PRE-LIMITATIONS PERIOD EVENTS**

A. **All of Providers' Damages Scenarios Are Time-Barred Because They Are Based On Acts That Occurred Decades Before The Limitations Period**

Providers do not dispute that four of their damages scenarios are based on blocked entry theories that assume at least one Blue would have entered throughout Alabama "sufficiently before 2008" and "grown to full competitive strength by the start of the class period" such that it would "take market share from BCBS-AL." Br. at 6 (Fact 12); Opp. at 3 (not disputing Defendants' Fact

12), 4 (Fact 10). Those scenarios are time-barred because, under Providers' theory, hospital pricing from 2008 to the present merely reflects the consequences flowing from the claimed blocked entry and growth occurring before the limitations period. *See Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 190 (1997) ("plaintiff cannot use an independent, new predicate act as a bootstrap to recover for injuries caused by other earlier predicate acts that took place outside the limitations period"); *Gumwood HP Shopping Partners, L.P. v. Simon Prop. Grp. Inc.*, 221 F. Supp. 3d 1033, 1043-44 (N.D. Ind. 2016). That growth undisputedly would have occurred prior to the start of the limitations period. Br. at 5 (Fact 9 (Slottje 1/7/2021 Tr. at 107:18-108:12 ("Q. Do you agree with me that for an insurer to reach full competitive strength, that it's not something that happens overnight? . . . A. I do agree with that, and this would have happened decades ago."))).

Providers' remaining three damages scenarios suffer from the same defect. They still are based on a fundamental transformation of the out-of-area contracting and BlueCard rules occurring long ago along with a subsequent ramp-up period which achieves full strength *before* 2008. Under these scenarios, the assumption is that if the Blues could have directly contracted with Alabama hospitals or used rental networks in the past to sell, over time they would have achieved the same level of national account customers in the but-for world as the Blues have in the current 2008-2021 world. Br. at 7 (Fact 14), 16-17. Just like in the four "blocked entry" scenarios, Providers' other scenarios depend only on events in the pre-limitations period—a major change in Blue rules and a resulting shift in customers away from BCBSAL to other Blues over many years prior to 2008.

### B. Under Providers' Theory, Current Deflated Prices Are The Unabated, Inertial Consequences Of Pre-Limitations Conduct, Not New Overt Acts

Providers argue that allegedly deflated prices standing alone are always overt acts that begin the limitations period running anew. Opp. at 13. While current prices may constitute overt acts for some antitrust claims, here the prices allegedly affected by historical conduct are not the

3

overt acts that caused the injury for which Providers are trying to recover. *See In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 901-02 (6th Cir. 2009) (defendant's underpayment or non-payment of a sales commission is not an overt act because "an antitrust plaintiff could routinely salvage an otherwise untimely claim by asserting that it continues to lose revenue because of past alleged anticompetitive conduct"); *Kaiser Found. v. Abbott Labs.*, 2009 WL 3877513, at *7 (C.D. Cal. Oct. 9, 2009) ("the statute of limitations is not extended by continued sales at an allegedly monopolistic price" when the conduct leading to the prices occurred before the limitations period).

Providers argue that prices must be overt acts because to find otherwise would, in effect, give Defendants' conduct immunity from suit. Opp. at 1. That is wrong. Defendants do not argue that the Blues' system is immune from legal challenge and Providers would have the statute of limitations run in perpetuity. The fact is that ***the theory that Providers have chosen to pursue in this case*** causes their claims to be time-barred. Under Providers' theory, the allegedly deflated prices during the limitations period are the mere consequences of blocked entry, without the decades of subsequent growth before the limitations period. Opp. at 4 (Fact 10). Even if Providers were correct, a real-world instance of blocked entry occurred sometime before 2008 and the real-world prices from 2008 to present are nothing more than the "inertial consequences" of that old, blocked entry and subsequent assumed growth. *Id.* As masters of their complaint, Providers could have pursued a different damages theory, but the one they chose is time-barred as a matter of law. *Bray v. Bank of Am.*, 784 F. App'x 738, 740 (11th Cir. 2019) (accrual is a question of law where the theory is not in dispute).

1.    *Providers Mischaracterize What Constitutes An Overt Act*

An overt act is the conduct designed to accomplish the objective of the alleged conspiracy and from which plaintiff's damages claim flows. *Alarm Detection Sys., Inc. v. Orland Fire Prot. Dist.*, 129 F. Supp. 3d 614, 633 (N.D. Ill. 2015). Identifying the operative overt act for statute of

limitations purposes requires a claim-by-claim analysis that depends on the plaintiff's theory of harm. *Midwestern Waffles, Inc. v. Waffle House, Inc.*, 734 F.2d 705, 714-15 (11th Cir. 1984). For example, in many of Providers' cited cases,[1] a price-fixing agreement requires the participants to continue to charge the fixed price or else the conspiracy falls apart, which is why sales at the fixed price are overt acts.[2] *See In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 615 (7th Cir. 1997) (charging a different price "is why cartels tend to collapse of their own weight"). For alleged market allocation cases, however, the relevant overt act is the blocked entry.[3] *Midwestern Waffles*, 734 F.2d at 714-15.

Here, according to Providers' theory, the challenged agreements implement the alleged conspiracy by preventing the shifts in market share that otherwise would have occurred if the agreements did not persist. The way that Providers claim damages, then, is to assume these

---

[1] Providers' reliance on Rule 12(b)(6) opinions (Opp. at 13) is misplaced. Courts are reluctant to decide an affirmative defense in defendant's favor on the pleadings unless the defense is clear on face of complaint. *See, e.g., Mayor of Baltimore v. Actelion Pharms., Ltd.*, 995 F.3d 123, 131-32 (4th Cir. 2021); *In re Wholesale Grocery Prods. Antirust Litig.* 752 F.3d 728, 731 (8th Cir. 2014).

[2] *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321 (1971), and *Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481 (1968), likewise do not support Providers' theory that new sales renew the limitations period. Opp. at 20. In *Zenith*, the Supreme Court held that the plaintiff could recover damages based on conduct occurring before the limitations period because the speculative damages exception applied. 401 U.S. at 339. Providers do not and cannot argue that exception applies here. Nor does *Zenith* say anything about whether each payment could revive an otherwise stale claim. Likewise, in *Hanover Shoe*, the plaintiff's claim was not time-barred because the challenged conduct at issue—the enforcement of the defendant's lease-only policy and collection of rent—inflicted "continuing and accumulating harm." 392 U.S. at 502 n.15. These were not "sales" pursuant to the conspiracy but the continuance of the very conduct from which the plaintiff claimed injury.

[3] For tying cases, sales made under the tying contract can cause new claims to accrue. *Midwestern Waffles*, 734 F.2d at 714-15. This makes sense because the tying contract is the alleged violation and sales pursuant to the tying contract are overt acts from which injury and damages flow. Providers argue that the court's holding on tying is more relevant to their claims than the court's holding on horizontal market allocation. Opp. at 15-16. Providers have not alleged tying or that the challenged agreements require Defendants to pay any particular price.

triggering events (*i.e.*, historical entry or a fundamental business changes) would have occurred decades ago and resulted in massive growth prior to 2008. *Those* triggering events are the overt acts from which Providers alleged injury and damages flow and they are time-barred.

Prices paid today cannot be overt acts designed to accomplish the objectives of the alleged conspiracy and from which damages allegedly flow. Even if all the challenged agreements were rescinded tomorrow, under Providers' theory, the price levels that Providers are paid would not change *unless and until there is entry*. Br. at 20-21. This confirms blocked entry (broadly defined) is the relevant overt act here. For the same reason, the Court does not need to decide whether any Blue's hypothetical more recent failure to enter Alabama could be an overt act that restarts the limitations period because those are not the overt acts from which Providers' damages claim flows.

Providers' position that allegedly deflated prices are always overt acts, irrespective of the conduct that supposedly caused them, would effectively eliminate the statute of limitations for antitrust claims. In *Midwestern Waffles*, the plaintiff's claim accrued in 1972 and was time-barred in 1977, only five years later. 734 F.2d at 715. Under Providers' proposed rule of accrual, however, any customer who dined at a Waffle House in 1977 could maintain a damages claim merely by alleging she paid more than she otherwise would have in a world where Midwestern Waffles was not blocked in 1972. Not only could that Waffle House customer sue in 1977, she could also sue on the same theory that the 1972 blocked entry caused her to overpay in 2021 or 2050 or 2150. To quote Providers: "If this sounds absurd, that's because it is." Opp. at 1.

Providers are the equivalent of a present-day Waffle House customer who speculates that she would have paid less for her All-Star Special if Midwestern Waffles entered in 1972 and stayed in business. In fact, Providers' case is even weaker than the Waffle House customer's claim since, at a minimum, she could identify the actual competitor (Midwestern Waffles) and when it was

prepared to enter the market (1972). *See Kaiser*, 2009 WL 3877513, at *7 (claim time-barred where identified blocked entry occurred prior to the limitations period). Providers just assume successful entry (or other fundamental business changes) by multiple, unspecified Blues at unidentified dates decades ago with no evidence whatsoever.

### 2. *Providers' Flawed Accrual Theory Results In An Impermissible "Snowballing" Of Their Damages*

Providers do not distinguish *Gumwood*, which bars exactly the type of "snowball effect" Providers rely on to inflate their damages. *Gumwood* illustrates why the operative overt act must be one that caused plaintiff's resulting injury and damages that she seeks to recover. 221 F. Supp. 3d at 1044. There, the plaintiff sought damages occurring during the limitations period that were affected by conduct occurring outside of the limitations period. *Id*. at 1037. The court held the plaintiff was not allowed to collect damages for any part of the "snowball" that started to accumulate before the limitations period and faulted the plaintiff's expert for failing to parse between damages caused by timely and untimely events. *Id.* at 1043-44.

Providers' theory is that the but-for prices the Blues would have paid Alabama hospitals from 2008 to the present are *entirely* the result of events that occurred before the limitations period. Opp. at 10. The linchpin in Providers' damages model is that a hospital's prices are a function of the market share of subscribers in the hospital's area held by BCBSAL or an out-of-state Blue. Opp. at 22-24. Under Providers' theory, the damages snowball started rolling down the mountain at some unidentified point before 2008 when the other out-of-state Blues would have entered Alabama or changed the structure of their national account businesses. Then, the snowball continued accumulating over the following decades as these other hypothetical Blues took customers from BCBSAL. By 2008, the shift in market share—which is the *entire* driver of Providers' damages—is complete and the snowball is resting at the bottom of the mountain.

Without these theorized pre-limitation period events and decades of transformation in the competitive landscape in the Alabama insurance markets, Providers would have no damages because there would be no shift in market share away from BCBSAL. Put differently, Providers' claimed damages *drastically* change depending on whether entry occurs before or during the limitations period; and because Providers have pursued only a theory of pre-limitations entry, Providers are brazenly attempting to "recover for the injuries caused" by time-barred conduct. *Klehr*, 521 U.S. at 190; *see also Gumwood*, 221 F. Supp. 3d at 1044.

3.    *Providers' Remaining Arguments Do Not Save Their Defective Damages*

Providers' citation to *Wholesale Grocery* is inapposite. That case addressed the situation where the agreement was not facially anticompetitive and plaintiff could not know the nature of the agreement until the counter-parties enforced the challenged non-competes in a way that was broader than what was memorialized in their written agreement. 752 F.3d at 736. The court expressed concern that a plaintiff's claim could be time-barred because she may be ignorant as to the anticompetitive nature of a facially benign agreement. *Id.* at 736-37. In other words, the *Wholesale Grocery* court was concerned about the very "immunity" argument that Defendants expressly do not make here. Unlike the plaintiff in *Wholesale Grocery*, Providers cannot dispute that they knew about the challenged conduct for years before the start of the limitations period. Providers also have argued that the agreements were anticompetitive as originally written. Opp. at 3 (Facts 1, 2), 6-7 (Facts 20-24), 9-10. Further, the *Wholesale Grocery* court, which ruled on the pleading stage, did not address any specific, post-discovery damages model of the type Providers rely on here.

Providers' other authorities fare no better. Opp. at 13. Providers do not cite, and Defendants are not aware of, any case where a plaintiff asserted a theory (let alone a post-discovery

damages' model) where the entirety of her damages claim was driven by a pre-limitations ramp-up period or significant changes of the defendant's business many decades ago.

### C. Providers Do Not Address Prejudice To Defendants

Providers dodge Defendants' prejudice argument by responding to several "policy arguments" that Defendants have not made. Opp. at 19-21. Instead, Defendants argue that a ruling in their favor would be fully consistent with the purpose of statutes of limitations: to prevent the unfair prejudice to defendants of facing claims many years later. *See Pajak v. Rohm & Haas Co.*, 2019 WL 6715181, at *4 (D. Mass. Dec. 9, 2019) ("the general purpose of statutes of limitations is to ensure potential defendants . . . avoid the difficulties inherent in litigating matters long past").

As Providers admit, their damages claim depends upon certain events long ago and decades of subsequent growth. Opp. at 10. To defend this claim, the Blues could offer evidence that these events would not have occurred or the growth assumptions were inconsistent with their historical strategies. But under Providers' theory, these events could have occurred as early as the 1930s. Br. 4-5 (Facts 8, 9). Defendants will be forced to defend their claims through old documentary evidence and fact witnesses who were not alive at the time the alleged conduct occurred. This is the type of unfairness that statutes of limitations are designed to prevent. *Burnett v. N.Y. Cent. R.R. Co.*, 380 U.S. 424, 428 (1965).

## II. PROVIDERS' DAMAGES CLAIMS ARE SPECULATIVE

Providers assert that because their expert Dr. Haas-Wilson used a regression model, their damages cannot be speculative. Opp. at 21, 24. Courts though recognize that regressions are only as good as the assumptions that go into them. *See, e.g., Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 746 F.3d 1008, 1028 (11th Cir. 2014); *Multimatic, Inc. v. Faurecia Interior Sys. USA, Inc.*, 358 F. App'x 643, 653-54 (6th Cir. 2009). Even if Dr. Haas-Wilson did the math in her regression correctly, the underlying assumptions have no record basis and lead to speculative results. Her

model ignores the evidence on how insurers decide whether and when to enter markets and instead assumes, at some point in time, at least one other Blue (but not necessarily the same Blue) would have entered every county in Alabama. This is not a matter of demanding "exactitude." *See* Opp. at 27. It is a matter of Providers not having a non-speculative damages model to present to a jury.

First, Providers cite no authority holding that they do not need to prove a ready and willing entrant because one can be inferred from the existence of the allegedly unlawful agreements. Eleventh Circuit law holds to the contrary. *Sunbeam Television Corp. v. Nielsen Media Rsch. Inc.*, 711 F.3d 1264, 1273 (11th Cir. 2013) (plaintiff must establish that the potential competitor had the intent and was prepared to enter). On this record, which shows that insurers will enter to sell insurance only sporadically and when economic conditions are ripe (and that they will exit quickly if economic conditions change), Providers' assumption that out-of-state Blues would have entered everywhere in Alabama long ago, grown to an unprecedented size, and remained until and throughout the damages period, is entirely speculative because it has zero record support. Br. 8-11 (Facts 20-24).

Second, Providers do not address Defendants' argument that out-of-area contracting and BlueCard rules have greatly contributed to the Blues' success with national accounts. Br. 27-28. Therefore, Providers' assumption that the Blues' national account business would remain exactly the same in a world without those rules is speculative. Providers instead focus on the scope of their injunctive claims under Clayton § 16, as to BlueCard. Opp. at 29-30. But Defendants' motion is not about Providers' injunctive claims; it is about Providers' damages claims under Clayton § 4.

## CONCLUSION

Judgment should be entered for Defendants on Providers' damages claims.

Dated:  September 20, 2021

Respectfully submitted,

/s/ *Todd M. Stenerson*
Todd M. Stenerson
Brian C. Hauser
Edmund Y. Saw
SHEARMAN & STERLING LLP
401 9th Street, N.W., Suite 800
Washington, DC 20004
Tel: (202) 508-8000
Fax: (202) 508-8100
todd.stenerson@shearman.com
brian.hauser@shearman.com
edmund.saw@shearman.com

Sarah L. Cylkowski
Thomas J. Rheaume, Jr.
BODMAN PLC
201 South Division Street, Suite 400
Ann Arbor, MI 48104
Tel: (734) 761-3780
Fax: (734) 930-2494
scylkowski@bodmanlaw.com
trheaume@bodmanlaw.com

Andrew P. Campbell
Cason M. Kirby
CAMPBELL PARTNERS LLC
505 20th Street North, Suite 1600
Birmingham, AL 35203
Tel: (205) 224-0750
Fax: (205) 224-8622
andy@campbellpartnerslaw.com
cason@campbellpartnerslaw.com

*Counsel for Defendant Blue Cross Blue
Shield of Michigan*

Evan R. Chesler
Christine A. Varney
Karin A. DeMasi
Lauren R. Kennedy
David H. Korn
CRAVATH SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue

David J. Zott, P.C.
Daniel E. Laytin, P.C.
Sarah J. Donnell
Christa C. Cottrell, P.C.
Zachary D. Holmstead
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654

New York, NY 10019
Tel: (212) 474-1000
Fax: (212) 474-3700
echesler@caravath.com
cvarney@cravath.com
kdemasi@cravath.com
lkennedy@cravath.com
dkorn@cravath.com

*Coordinating Counsel for Defendant Blue Cross
and Blue Shield Association; Counsel for
Defendants Blue Cross and Blue Shield of
Alabama; Blue Cross and Blue Shield of
Florida, Inc.; Blue Cross and Blue Shield of
Massachusetts, Inc.; BlueCross BlueShield of
Tennessee, Inc.; CareFirst, Inc.; California
Physicians' Service d/b/a Blue Shield of
California; CareFirst of Maryland, Inc.; Group
Hospitalization and Medical Services, Inc.;
CareFirst BlueChoice, Inc.; Health Care Service
Corporation, an Illinois Mutual Legal Reserve
Company, including its divisions Blue Cross and
Blue Shield of Illinois, Blue Cross and Blue
Shield of Texas, Blue Cross and Blue Shield of
New Mexico, Blue Cross and Blue Shield of
Oklahoma, and Blue Cross and Blue Shield of
Montana; Caring for Montanans, Inc., f/k/a Blue
Cross and Blue Shield of Montana, Inc.*

Craig A. Hoover
E. Desmond Hogan
Justin Bernick
Peter Bisio
Elizabeth Jose
HOGAN LOVELLS US LLP
Columbia Square
555 13th Street, N.W.
Washington, DC 20004
Tel: (202) 637-5600
Fax: (202) 637-5910
craig.hoover@hoganlovells.com
desmond.hogan@hoganlovells.com
justin.bernick@hoganlovells.com
peter.bisio@hoganlovells.com
elizabeth.jose@hoganlovells.com

Tel: (312) 862-2000
Fax: (312) 862-2200
david.zott@kirkland.com
daniel.laytin@kirkland.com
sarah.donnell@kirkland.com
christa.cottrell@kirkland.com
zachary.holmstead@kirkland.com

Kimberly R. West (Liaison Counsel)
Mark M. Hogewood
WALLACE, JORDAN, RATLIFF &
BRANDT, LLC
First Commercial Bank Building
800 Shades Creek Parkway, Suite 400
Birmingham, AL 35209
Tel: (205) 870-0555
Fax: (205) 871-7534
kwest@wallacejordan.com
mhogewood@wallacejordan.com

*Counsel for Defendant Blue Cross Blue Shield
Association*

James L. Priester
Carl S. Burkhalter
John Thomas A. Malatesta, III
MAYNARD COOPER & GALE PC
1901 6th Avenue North, Suite 2400
Regions Harbert Plaza
Birmingham, AL 35203
Tel: (205) 254-1000
Fax: (205) 254-1999
jpriester@maynardcooper.com
cburkhalter@maynardcooper.com
jmalatesta@maynardcooper.com

Pamela B. Slate
HILL CARTER FRANCO COLE &
BLACK, P.C.
425 South Perry Street
Montgomery, AL 36104
Tel: (334) 834-7600
Fax: (334) 386-4381
pslate@hillhillcarter.com

John D. Martin
Lucile H. Cohen
Travis A. Bustamante
NELSON MULLINS RILEY &
SCARBOROUGH LLP
1320 Main Street, 17th Floor
Columbia, SC 29201
Tel: (803) 255-9421
Fax: (803) 256-7500
john.martin@nelsonmullins.com
lucie.cohen@nelsonmullins.com
travis.bustamante@nelsonmullins.com

Cavender C. Kimble
BALCH & BINGHAM LLP
1901 6th Avenue North, Suite 1500
Birmingham, AL 35203-4642
Tel: (205) 226-3437
Fax: (205) 488-5860
ckimble@balch.com

*Counsel for Anthem, Inc., f/k/a WellPoint, Inc.,
and all of its named subsidiaries in this
consolidated action; Blue Cross and Blue Shield
of North Carolina, Inc.; Louisiana Health
Service & Indemnity Company (Blue Cross and
Blue Shield of Louisiana); BCBSM, Inc. (Blue
Cross and Blue Shield of Minnesota); Blue
Cross and Blue Shield of South Carolina;
Horizon Healthcare Services, Inc. (Horizon Blue
Cross and Blue Shield of New Jersey); Blue
Cross & Blue Shield of Rhode Island; Blue
Cross and Blue Shield of Vermont; Cambia
Health Solutions, Inc.; Regence Blue Shield of
Idaho; Regence Blue Cross Blue Shield of Utah;
Regence Blue Shield (of Washington); Regence
Blue Cross Blue Shield of Oregon*

Gwendolyn Payton
KILPATRICK TOWNSEND & STOCKTON
LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
Tel: (206) 626-7714
Fax: (206) 299-0414
gpayton@kilpatricktownsend.com

*With Cravath, Swaine & Moore LLP, counsel for
Defendant Blue Cross Blue Shield of Alabama*

Helen E. Witt, P.C.
Jeffrey J. Zeiger, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Tel: (312) 862-2000
Fax: (312) 862-2200
hwitt@kirkland.com
jzeiger@kirkland.com

Kimberly R. West (Liaison Counsel)
Mark M. Hogewood
WALLACE, JORDAN, RATLIFF &
BRANDT, LLC
First Commercial Bank Building
800 Shades Creek Parkway, Suite 400
Birmingham, AL 35209
Tel: (205) 870-0555
Fax: (205) 871-7534
kwest@wallacejordan.com
mhogewood@wallacejordan.com

*Counsel for Defendants Health Care Service
Corporation, an Illinois Mutual Legal Reserve
Company, including its divisions Blue Cross and
Blue Shield of Illinois, Blue Cross and Blue
Shield of Texas, Blue Cross and Blue Shield of
New Mexico, Blue Cross and Blue Shield of
Oklahoma, and Blue Cross and Blue Shield of
Montana; Caring for Montanans, Inc., f/k/a Blue
Cross and Blue Shield of Montana, Inc.;
Highmark Inc., f/k/a Highmark Health Services;
Highmark West Virginia Inc.; Highmark Blue
Cross Blue Shield Delaware Inc.; Highmark of
Western and Northeastern New York Inc.*

Jonathan M. Redgrave
REDGRAVE, LLP
14555 Avion Parkway, Suite 275
Chantilly, VA 20151
Tel: (703) 592-1155
Fax: (612) 332-8915
jredgrave@redgravellp.com

*Counsel for Defendants Premera Blue Cross,*
*d/b/a Premera Blue Cross Blue Shield of Alaska*

Brian K. Norman
SHAMOUN & NORMAN, LLP
1800 Valley View Lane, Suite 200
Farmers Branch, TX 75234
Tel: (214) 987-1745
Fax: (214) 521-9033
bkn@snlegal.com

H. James Koch
ARMBRECHT JACKSON LLP
RSA Tower, 27th Floor
11 North Water Street
Mobile, AL 36602
Tel: (251) 405-1300
Fax: (251) 432-6843
hjk@ajlaw.com

*Counsel for Defendants Carefirst, Inc.; Carefirst*
*of Maryland, Inc.; Group Hospitalization and*
*Medical Services, Inc.;*
*CareFirst BlueChoice, Inc.*

R. David Kaufman
M. Patrick McDowell
BRUNINI, GRANTHAM, GROWER
& HEWES, PLLC
190 East Capitol Street
The Pinnacle Building, Suite 100
Jackson, MS 39201
Tel: (601) 948-3101
Fax: (601) 960-6902
dkaufman@brunini.com
pmcdowell@brunini.com

John D. Martin
Lucile H. Cohen
Travis A. Bustamante
NELSON MULLINS RILEY &
SCARBOROUGH LLP
1320 Main Street, 17th Floor
Columbia, SC 29201
Tel: (803) 255-9421

*Additional Counsel for HCSC and Highmark*
*Defendants*

John Briggs
Rachel Adcox
Jenny M. Maier
AXINN, VELTROP & HARKRIDER, LLP
950 F Street, N.W.
Washington, DC 20004
Tel: (202) 912-4700
Fax: (202) 912-4701
jbriggs@axinn.com
radcox@axinn.com
jmaier@axinn.com

Stephen A. Rowe
Aaron G. McLeod
ADAMS AND REESE LLP
Regions Harbert Plaza
1901 6th Avenue North, Suite 3000
Birmingham, AL 35203
Tel: (205) 250-5000
Fax: (205) 250-5034
steve.rowe@arlaw.com
aaron.mcleod@arlaw.com

*Counsel for Defendant Independence Blue Cross*

Kathleen Taylor Sooy
Tracy A. Roman
Sarah Gilbert
Honor Costello
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004
Tel: (202) 624-2500
Fax: (202) 628-5116
ksooy@crowell.com
troman@crowell.com
sgilbert@crowell.com
hcostello@crowell.com

John M. Johnson
Brian P. Kappel
LIGHTFOOT FRANKLIN & WHITE LLC

Fax: (803) 256-7500
john.martin@nelsonmullins.com
lucie.cohen@nelsonmullins.com
travis.bustamante@nelsonmullins.com

Cheri D. Green
BLUE CROSS BLUE SHIELD OF
MISSISSIPPI, A MUTUAL INSURANCE
COMPANY
P.O. Box 1043
Jackson, MS 39215
Tel: (601) 932-3704
cdgreen@bcbsms.com

*Counsel for Defendant Blue Cross Blue Shield of
Mississippi, a Mutual Insurance Company*

Michael A. Naranjo
FOLEY & LARDNER LLP
555 California Street, Suite 1700
San Francisco, CA 94104
Tel: (415) 984-9847
Fax: (415) 434-4507
mnaranjo@foley.com

Alan D. Rutenberg
Benjamin R. Dryden
FOLEY & LARDNER LLP
3000 K Street, N.W., Suite 600
Washington, DC 20007
Tel: (202) 672-5300
Fax: (202) 672-5399
arutenberg@foley.com
bdryden@foley.com

*Counsel for Defendant USAble Mutual
Insurance Company, d/b/a Arkansas Blue Cross
and Blue Shield*

Robert K. Spotswood
Michael T. Sansbury
Joshua K. Payne
Jess R. Nix
Morgan B. Franz
SPOTSWOOD SANSOM & SANSBURY
LLC

The Clark Building
400 20th Street North
Birmingham, AL 35203
Tel: (205) 581-0700
Fax: (205) 581-0799
jjohnson@lightfootlaw.com
bkappel@lightfootlaw.com

*Counsel for Defendants Blue Cross of Idaho
Health Service, Inc.; Blue Cross and Blue Shield
of Kansas, Inc.; Blue Cross and Blue Shield of
Kansas City; Blue Cross and Blue Shield of
Nebraska; Blue Cross Blue Shield of Arizona;
Blue Cross Blue Shield of North Dakota; Blue
Cross Blue Shield of Wyoming*

David J. Zott, P.C.
Daniel E. Laytin, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Tel: (312) 862-2000
Fax: (312) 862-2200
david.zott@kirkland.com
daniel.laytin@kirkland.com

John Martin
Lucile H. Cohen
Travis A. Bustamante
NELSON MULLINS RILEY &
SCARBOROUGH LLP
1320 Main Street, 17th Floor
Columbia, SC 29201
Tel: (803) 255-9421
Fax: (803) 256-7500
john.martin@nelsonmullins.com
lucie.cohen@nelsonmullins.com
travis.bustamante@nelsonmullins.com

*Counsel for Defendants Wellmark of South
Dakota, Inc. (Wellmark Blue Cross and Blue
Shield of South Dakota); Wellmark, Inc.
(Wellmark Blue Cross and Blue Shield of Iowa);
Hawaii Medical Service Association (Blue Cross
and Blue Shield of Hawaii); Triple-S Salud, Inc.*

One Federal Place
1819 5th Avenue North, Suite 1050
Birmingham, AL 35203
Tel: (205) 986-3620
Fax: (205) 986-3639
rks@spotswoodllc.com
msansbury@spotswoodllc.com
jpayne@spotswoodllc.com
jnix@spotswoodllc.com
mfranz@spotswoodllc.com

*Counsel for Defendant Capital BlueCross*

Evan R. Chesler
Christine A. Varney
Karin A. DeMasi
Lauren R. Kennedy
David H. Korn
CRAVATH SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Tel: (212) 474-1000
Fax: (212) 474-3700
eschesler@cravath.com
cvarney@cravath.com
kdemasi@cravath.com
lkennedy@cravath.com
dkorn@cravath.com

John D. Martin
Lucile H. Cohen
Travis A. Bustamante
NELSON MULLINS RILEY &
SCARBOROUGH LLP
1320 Main Street, 17th Floor
Columbia, SC 29201
Tel: (803) 255-9421
Fax: (803) 256-7500
john.martin@nelsonmullins.com
lucie.cohen@nelsonmullins.com
travis.bustamante@nelsonmullins.com

Robert R. Riley, Jr.
RILEY & JACKSON, P.C.
3530 Independence Drive

Kimberly R. West (Liaison Counsel)
Mark M. Hogewood
WALLACE, JORDAN, RATLIFF &
BRANDT, LLC
First Commercial Bank Building
800 Shades Creek Parkway, Suite 400
Birmingham, AL 35209
Tel: (205) 870-0555
Fax: (205) 871-7534
kwest@wallacejordan.com
mhogewood@wallacejordan.com

*Counsel for Defendants Wellmark of South
Dakota, Inc. (Wellmark Blue Cross and Blue
Shield of South Dakota); Wellmark, Inc.
(Wellmark Blue Cross and Blue Shield of Iowa);
Hawaii Medical Service Association (Blue Cross
and Blue Shield of Hawaii)*

Edward S. Bloomberg
John G. Schmidt
Anna Mercado Clark
PHILLIPS LYTLE LLP
One Canalside
125 Main Street
Buffalo, NY 14203
Tel: (716) 847-8400
Fax: (716) 852-6100
ebloomberg@phillipslytle.com
jschmidt@phillipslytle.com
aclark@phillipslytle.com

Stephen A. Walsh
WEINBERG, WHEELER, HUDGINS,
GUNN & DIAL
100 Corporate Parkway
One Lake Level
Birmingham, AL 35242
Tel: (205) 572-4107
Fax: (205) 572-4199
swalsh@wwhgd.com

*Counsel for Defendant, Excellus Health Plan,
Inc., d/b/a Excellus BlueCross BlueShield,
incorrectly sued as Excellus BlueCross
BlueShield of New York*

Birmingham, AL 35209
Tel: (205) 879-5000
Fax: (205) 879-5901
rob@rileyjacksonlaw.com

*Counsel for Defendant Blue Cross and Blue*
*Shield of Tennessee, Inc.; Blue Cross and Blue*
*Shield of Florida, Inc.; Blue Cross and Blue*
*Shield of Massachusetts, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2021, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *Todd M. Stenerson*
Todd M. Stenerson