FILED

2021 Oct-11  PM 03:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

|  |  |
|---|---|
| IN RE:<br>**BLUE CROSS BLUE SHIELD<br>ANTITRUST LITIGATION<br>(MDL NO. 2406)** | Master File No. 2:13-CV-20000-RDP<br><br>This Document Relates to<br>Provider Track Cases |

**PROVIDER PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT ON (I) ALL CLAIMS ADVANCED BY
NON-GENERAL ACUTE CARE HOSPITAL PROVIDERS AND
(II) ANY CLAIMS BASED ON BLUE SYSTEM RULES OTHER THAN ESAS OR
BLUECARD FOR FAILURE TO DEMONSTRATE INJURY OR DAMAGES**

**Filed Under Seal Pursuant to Qualified Protective Order (Dkt. 550)
and the Order Regarding Revised Sealing Procedures (Dkt. 758)**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................... ii

LIST OF CITATIONS AND ABBREVIATIONS ....................................................... iv

INTRODUCTION ........................................................................................1

RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED RELEVANT
MATERIAL FACTS ....................................................................................2

ADDITIONAL UNDISPUTED RELEVANT MATERIAL FACTS ............................................3

ARGUMENT ............................................................................................7

     I.     Individual Plaintiffs May Prove Injury and Damages Without a Classwide
          Damages Model ...............................................................................7

     II.    The Providers Can Prove Antitrust Injury from Blue System Rules Other Than
          ESAs and BlueCard ..........................................................................13

CONCLUSION..........................................................................................15

# TABLE OF AUTHORITIES

## Cases

*Amey, Inc. v. Gulf Abstract & Title, Inc.*,
  758 F.2d 1486 (11th Cir. 1985) .................................................................. 12, 13

*Associated General Contractors of California, Inc. v. California State Council of Carpenters*,
  459 U.S. 519 (1983) ................................................................................... 11

*Brown v. Electrolux Home Prods., Inc.*,
  817 F.3d 1225 (11th Cir. 2016) ................................................................. 8

*Catch Curve, Inc. v. Venali, Inc.*,
  519 F. Supp. 2d 1028 (C.D. Cal. 2007) .................................................... 11

*Duty Free Ams., Inc. v. Estée Lauder Cos.*,
  2014 WL 1329359 (S.D. Fla. Mar. 31 2014), *aff'd*, 797 F.3d 1248 (11th Cir. 2015) ...... 13

*Glen Holly Ent., Inc. v. Tektronix Inc.*,
  343 F.3d 1000 (9th Cir. 2003),
  *opinion amended on denial of reh'g*, 352 F.3d 367 (9th Cir. 2003) ........................... 11, 13

*In re Currency Conversion Fee Antitrust Litig.*,
  2009 WL 151168 (S.D.N.Y. Jan. 21, 2009) ................................................. 11

*In re Graphics Processing Units Antitrust Litig.*,
  253 F.R.D. 478 (N.D. Cal. 2008) ............................................................... 13

*Key Enterprises of Del., Inc. v. Venice Hosp.*,
  919 F.2d 1550 (11th Cir. 1990) ................................................................. 10, 11

*Kloth v. Microsoft Corp.*,
  444 F.3d 312 (4th Cir. 2006) .................................................................... 13

*Oliver v. SD-3C LLC*,
  751 F.3d 1081 (9th Cir. 2014) .................................................................. 13

*Precision CPAP, Inc. v. Jackson Hosp.*,
  2010 WL 797170 (M.D. Ala. Mar. 8, 2010) .................................................. 10

*Procaps S.A. v. Patheon, Inc.*,
  141 F. Supp. 3d 1246 (S.D. Fla. 2015) ...................................................... 13

*Ross v. Bank of America, N.A. (USA)*,
  524 F.3d 217 (2d Cir. 2008) ..................................................................... 11

*Somers v. Apple, Inc.*,
  729 F.3d 953 (9th Cir. 2013) .................................................................... 13

*United States v. Anthem, Inc.*,
    236 F. Supp. 3d 171 (D.D.C. 2017) ........................................................... 11

*United States v. Anthem, Inc.*,
    855 F.3d 345 (D.C. Cir. 2017) ................................................................... 11

*United States v. Johnson*,
    399 F.3d 1297 (11th Cir. 2005) ................................................................. 10

*Zenith Radio Corp. v. Hazeltine Res., Inc.*,
    395 U.S. 100 (1969) ..................................................................................... 9

**Other Authorities**

Oxford English Dictionary (2020),
    available at https://www.lexico.com/en/definition/empirical ............................................. 2

## LIST OF CITATIONS AND ABBREVIATIONS

| Dkt. # | Exhibit | Document | Citation |
|---|---|---|---|
| | 1. | Deposition of Joseph D. Ackerson, Ph.D. dated May 5, 2017 | Ackerson Tr. |
| | 2. | Deposition of Matthew Caldwell, M.D. dated June 28, 2019 | Caldwell Tr. |
| | 3. | Deposition of Charles H. Clark, III, M.D. dated April 10, 2017 | Clark Tr. |
| | 4. | Deposition of Robby Carruba dated May 9, 2017 | Carruba Tr. |
| | 5. | Deposition of Jerry L. Conway, D.C. dated April 12, 2017 | Conway Tr. |
| | 6. | Deposition of Robert W. Nesbitt, M.D. dated May 22, 2017 | Nesbitt Tr. |
| | 7. | Deposition of Janine Nesin, P.T., D.P.T., O.C.S. dated May 11, 2017 | Nesin Tr. |
| | 8. | Deposition of Bryan Hicks dated September 7, 2017 | Hicks Tr. |
| | 9. | Deposition of Luis R. Pernia, M.D. dated July 31, 2017 | Pernia Tr. |

## INTRODUCTION

To prevail on their motion to dismiss, the Blues have the burden to prove, beyond any genuine dispute, that each of the eight Non-Hospital Plaintiffs[1] have no injury or damages, and that no Providers have been injured or damaged by Blue System rules other than Exclusive Service Areas (ESAs) or BlueCard. But all of the Non-Hospital Plaintiffs have testified about their injury and damages. And the Providers' experts have described how the Blues have injured and damaged all Providers—hospitals and non-hospitals—through ESAs, BlueCard, and other rules and practices. Those injuries include price harms, such as reduced reimbursements, and non-price harms, such as the lack of choice. Given this evidence, the most the Blues can hope to do is produce counterevidence that creates a genuine dispute of fact, which would still preclude summary judgment.

The Blues, however, do not even try to make it that far. They never mention any evidence specific to the Non-Hospital Plaintiffs. And their only response to the Providers' expert opinions is a plainly incorrect claim that a loss of choice—even if it results from a *per se* unlawful agreement not to compete—is not an antitrust injury. Instead, they offer a *non sequitur*: the Providers cannot assert claims for which they cannot calculate damages on a classwide basis. But this is not a class certification motion. The lack of a model for certain classwide damages is irrelevant to any particular plaintiff's claims, and in any event, the Providers have proposed a procedure for class certification that would allow class members to prove their damages on an individual basis. Moreover, an antitrust plaintiff may prove injury, and thus entitlement to injunctive relief, without ever proving damages. The Blues have overreached, and their motion for summary judgment should be denied.

---

[1] The Blues have defined this term to include eight plaintiffs: Jerry L. Conway, D.C.; Charles H. Clark III, M.D.; North Jackson Pharmacy, Inc.; Robert W. Nesbitt, M.D.; Janine Nesin, P.T., D.P.T., O.C.S.; Joseph D. Ackerson, Ph.D.; Luis R. Pernia, M.D.; and Matthew Caldwell, M.D.

## RESPONSE TO DEFENDANTS' STATEMENT OF
## UNDISPUTED RELEVANT MATERIAL FACTS

The Providers do not dispute Defendants' Facts 3 and 5–9. The Providers dispute the remaining facts as follows:

1. **Disputed.** The Providers' empirical assessment of injury and damages is also found in the work of Dr. H.E. Frech, III. The Blues continue to conflate the terms "empirical" on one hand, and "quantitative" and "statistical" on the other. Empirical analysis is "[b]ased on, concerned with, or verifiable by observation or experience rather than theory or pure logic." Oxford English Dictionary (2020), available at https://www.lexico.com/en/definition/empirical. Unlike quantitative or statistical analysis, it does not necessarily involve numerical calculations; it may include the review of documents and testimony. Doc. No. 2634 (Providers' Opposition to Frech *Daubert* Motion) at 9. Dr. Frech, who has opined on the anticompetitive impact of several of the Blues' rules and practices, performed extensive empirical analysis, reviewing the documentary history of the Blues, deposition transcripts in this case, and other sources. *Id.* at 9–11. While only Drs. Haas-Wilson and Slottje performed a quantitative analysis of injury and damages, all three experts performed empirical analysis.

2. **Disputed.** As described in the Providers' response to Defendants' Fact 1, Dr. Frech also analyzed the economic impact of the Defendants' alleged conduct on the Providers' business. Among the conduct he analyzed are the use of unlawful "Most Favored Nation" clauses to reduce provider reimbursement and deter competition, Doc. No. 2454-3 (Frech Report) ¶¶ 337–48, and refusing to honor assignment of benefits in order to pressure providers to join the Blues' networks, *id.* ¶ 353.

4. **Disputed.** Dr. Frech did not concede that "we don't really have an empirical analysis" of harm to plaintiffs other than hospitals. He corrected himself in the same answer the

Blues selectively quote: "For the nonhospitals, we don't really have an empirical analysis to see how -- to see that. Don't have the statistical approach for seeing that." Doc. No. 2696-1 (Frech Tr.) 113:9–12. While the Providers do not have a statistical method for calculating classwide damages, Dr. Frech performed extensive empirical analysis of the effect of the Blues' conduct on all Providers, including plaintiffs other than hospitals.

Dr. Haas-Wilson also reviewed empirical evidence of harm to plaintiffs other than hospitals. She noted BCBS-AL's use of contract terms akin to Most Favored Nation (MFN) clauses in physician contracts. Doc. No. 2454-6 (Haas-Wilson Report) ¶ 304. Her statistical analysis concluded that the Blues' rules reduced competition among the Blues in Alabama, *id.* ¶¶ 455–64, which reduced the choices available to all Providers, not just hospitals.

## ADDITIONAL UNDISPUTED RELEVANT MATERIAL FACTS

1.    Plaintiff Joseph D. Ackerson, Ph.D., a neuropsychologist, testified that the Blues' anticompetitive agreements have lowered his reimbursement rates, ███████████████████ ████████ . Ex. 1 (Ackerson Tr.) 185:10–186:23. He also testified that providers have no choice but to accept the rates BCBS-AL offers. *Id.* 188:25–190:9.

2.    Plaintiff Matthew Caldwell, M.D., a family medicine physician, testified about his desire to negotiate with Blue Plans around the country for higher reimbursement rates, and his inability do so. Ex. 2 (Caldwell Tr.) 98:4–23.

3.    Plaintiff Charles H. Clark III, M.D., a neurosurgeon, testified that ███████████ █████████████████████████ . Ex. 3 (Clark Tr.) 234:20–237:4. He testified that ██████████████████████████████████████████ ██████████████████████████ . *Id.* 238:11–239:12. He testified to his belief that he could negotiate higher reimbursement rates with other Blue Plans,

including Anthem. *Id.* 236:25–238:1. And he testified that his understanding from speaking with physicians in other states is that BCBS-AL is probably "on the lower scale" of reimbursement among Blue Plans. *Id.* 271:13–272:20. The administrative director of Dr. Clark's practice, Robby Carruba, testified that ███████████████████████████████████████████████████.

Ex. 4 (Carruba Tr.) 66:2–67:16.

4.    Plaintiff Jerry L. Conway, D.C., a retired chiropractor, testified that when he was in practice in Alabama, his compensation was low compared to California chiropractors and that it could have been higher. Ex. 5 (Conway Tr.) 61:5–62:12. He also testified that office staff for Alabama chiropractors who attended national seminars would be "unhappy" after learning what office staff in California were paid. *Id.* 62:13–63:3. He testified that if the Providers prevail in this case, the pay scale for chiropractors will probably be higher. *Id.* 129:2–23.

5.    Plaintiff Robert W. Nesbitt, M.D., an anesthesiologist with a specialty in pain management, testified that BCBS-AL's restrictive reimbursement policies affect patient care. For example, BCBS-AL reduced the number of spinal injections a patient may receive to four per year, even though a plaintiff may need multiple injections during one visit; it is the only payor with such a policy. Ex. 6 (Nesbitt Tr.) 270:16–273:9. In addition, BCBS-AL does not offer higher reimbursement for methods of care that are more expensive to provide but produce better outcomes, like using laser ablation instead of radiofrequency ablation. *Id.* 296:4–297:21. BCBS-AL also designates well-established treatments as investigational. *Id.* 309:16–312:13. Dr. Nesbitt believes that if he were allowed to negotiate with other Blue Plans, he would receive better reimbursement. *Id.* 362:7–365:7. He testified that ████████████████████████████ ████████████████████████. *Id.* 388:1–389:17.

6.    Plaintiff Janine Nesin, P.T., D.P.T., O.C.S., a physical therapist, ████████

████████████████████████████████████████████████████████████████████████

████████. Ex. 7 (Nesin Tr.) at 33:3–18. She ████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████. *Id.* 38:24–39:12. She testified that ████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████. *Id.* 196:3–13, 219:12–23. She testified

that BCBS-AL does not negotiate rates and does not take patient complexity into account when

deciding visit limits. *Id.* 219:24–220:2. She believe that BCBS-AL has too much control, and she

would hope to receive higher reimbursement from Anthem if it were to compete in Alabama. *Id.*

115:21–116:3, 219:12–23.

7.    Plaintiff North Jackson Pharmacy's representative testified that BCBS-AL's

reimbursement rates have dropped over the past ten years, and that he would hope to be paid

more if the Blues were allowed to compete. Ex. 8 (Hicks Tr.) 92:8–93:9, 182:18–183:15.

8.    Plaintiff Luis R. Pernia, M.D., a plastic surgeon, testified that his reimbursements

from BCBS-AL have been falling as his premiums and deductibles increase. Ex. 9 (Pernia Tr.)

74:1–25, 176:12–24, 205:5–10. For example, reimbursement rates for medically necessary breast

reduction surgery have fallen by 25% to 40%. *Id.* 189:2–190:5. Dr. Pernia testified that because

of BCBS-AL's low reimbursement, he has cut back from seven employees to two and a half, and

has gone without a paycheck himself many times. *Id.* 309:4–310:24. He testified that he would

like the option to negotiate with other Blue Plans. *Id.* 269:5–270:7.

9.    The Providers' expert Dr. Haas-Wilson conducted an economic analysis that

concluded that the Blues' agreements with each other, including the National Best Efforts (NBE)

agreement, have reduced prices paid to Alabama healthcare providers. Doc. No. 2454-6 (Haas-Wilson Report) ¶¶ 322–53, 455–64. While Dr. Haas-Wilson quantified damages only for hospitals, her analysis of the effects of the Blues' agreements on price was not limited to hospitals. *See generally id.* ¶¶ 322–53. Dr. Haas-Wilson evaluated the effect of the Blues' agreements not to compete for the sale of insurance or the administration of self-funded health plans using the Blue marks, and determined that but for these agreements, one or more additional Blue Plans would have competed in Alabama. *Id.* ¶ 325. She identified likely candidates, Anthem and HCSC, both of which have larger market shares in Alabama than other insurers who have built networks in the state. *Id.* ¶ 326. Other likely candidates are BCBS-MS, BCBS-TN, BCBS-FL, and Anthem BCBS-GA, two of which have a sizeable market share in markets on the Alabama side of the border, and all of which have substantial shares on their side of the border that drop off substantially on the Alabama side of the border. *Id.* ¶ 327. Additionally, Blue Plans whose states host many employees of large national accounts based in Alabama would have an incentive to compete in Alabama, including Anthem, BCBS-AZ, BCBS-TN, BCBS-FL, BCBS-LA, BCBS-MS, and HCSC. *Id.* ¶ 328. Historically requested "cedes" have also shown Blue Plans' interest in doing business in Alabama. *Id.* ¶ 329. Anthem in particular has expressed a desire to compete in all fifty states. *Id.* ¶ 330. Dr. Haas-Wilson's findings on potential competition are consistent with her econometric findings that where the Blues are allowed to compete, they do so, at the expense of each other's market share. *Id.* ¶ 324. The Blues' agreed-upon lack of competition has artificially inflated BCBS-AL's market share and bargaining leverage, resulting in lower prices to providers. *Id.* ¶¶ 331–32. The Blues' agreements to limit competition under brands other than the Blue brands and not to contract with providers outside their service areas have likewise increased BCBS-AL's bargaining leverage and reduced prices

paid to providers. *Id.* ¶¶ 336–49. BlueCard has also allowed Blue Plans outside Alabama to reimburse providers at lower prices than those Blue Plans could have achieved on their own. *Id.* ¶¶ 333–35. These results are consistent with documentary evidence that at least some of the Blues saw reduced competition as a way to lower prices paid to providers, and the Blue Cross Blue Shield Association itself described BlueCard as a way for Blue Plans to pay providers less by taking advantage of other Blue Plans' rates. *Id.* ¶ 365–67. None of this evidence is specific to hospitals.

Dr. Haas-Wilson also described the ways in which the Blues' agreements limit choice for Alabama healthcare providers (not just hospitals) and result in non-price harm. *Id.* ¶¶ 376–97. For example, the Blues' agreements discourage the development of value-based care, bundled payments, and Accountable Care Organizations. *Id.* ¶¶ 393–95. Additionally, Dr. Haas-Wilson noted BCBS-AL's use of Most Favored Nation (MFN) clauses in its physician contracts and onerous cost-reporting requirements for hospitals. *Id.* ¶¶ 303–07.

10.    The Providers' expert Dr. Frech described the harm to healthcare providers that results from the Blues' ESAs, BlueCard, NBE, uncoupling, and information-sharing rules. Doc. No. 2454-3 (Frech Report) ¶¶ 301–35, 389–98. This description of harm was not limited to hospitals. Dr. Frech also discussed the harm to healthcare providers that results from BCBS-AL's use of MFN clauses, all-products clauses, anti-assignment clauses, cost reporting, and hospital tiering. *Id.* ¶¶ 336–56, 364–65.

## ARGUMENT

**I.    Individual Plaintiffs May Prove Injury and Damages Without a Classwide Damages Model.**

The first part of the Blues' motion pertains not to the Providers as a whole, or even one of the classes the Providers have asked the Court to certify, but to eight individual Non-Hospital

Plaintiffs. The Blues ask for summary judgment because the Non-Hospital Plaintiffs "have no proof of injury or damages." Motion at 6. The only evidence the Blues examine, however, is expert opinion relating to classwide injury and damages. *See generally id.* at 6–9. The Blues never mention the Non-Hospital Plaintiffs' own deposition testimony about their injury or damages. Essentially, the Blues treat classwide proof and individual proof as one and the same.

The Providers have never purported to limit individual plaintiffs' claims to what can be proven on a classwide basis. In fact, they have done the opposite. In their motion for class certification, the Providers proposed that for plaintiffs other than hospitals, "the issue of damages be bifurcated for this case and handled through separate proceedings," or that the Court certify "an issues class pursuant to Rule 23(c)(4)." Doc. No. 2604 at 3. The issues to be certified would be "either the issue of Defendants' liability or the issue of whether Defendants' conduct violates the antitrust laws." *Id.* at 45. Once classwide issues are resolved, the Non-Hospital Plaintiffs (and other non-hospital class members) would be entitled to offer individualized proof of damages (if the Blues' violation of the Sherman Act and the plaintiffs' injury are the issues certified), or of injury and damages (if the Blues' violation of the Sherman Act is the only issue certified). *See Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1239 (11th Cir. 2016) (approving several procedures for separating determinations of liability and damages in class actions). In treating the lack of classwide proof of damages as dispositive of the Non-Hospital Plaintiffs' claims, the Blues necessarily assume that no issues class will be certified, making their motion for summary judgment "critically dependent on the outcome of class certification." Doc. No. 2718.

If given the chance to prove injury and damages on an individualized basis, the Non-Hospital Plaintiffs will do so. In their depositions, the Non-Hospital Plaintiffs explained how the Blues' agreements not to compete have affected them, and some gave specific testimony about

low reimbursement rates, including testimony that ████████████████████████████ ██████████████████████████. Providers' Facts 1–8. Although the Blues took these depositions, they did not even mention the Non-Hospital Plaintiffs' testimony on injury or damages. Therefore, the Blues have not met their burden to establish that there is no genuine issue of fact with respect to the Non-Hospital Plaintiffs' injury or damages.

In addition to the unrebutted individual testimony of the Non-Hospital Plaintiffs, the Providers have offered expert opinion that the Blues' agreements not to compete have reduced prices paid to all healthcare providers, not just hospitals. Providers' Fact 9. Dr. Haas-Wilson determined, consistent with her statistical analysis, that the Blues' agreements not to compete in Alabama have inflated BCBS-AL's market share and increased its bargaining leverage. *Id.* This extensive analysis was not limited to hospitals. *Id.* The Blues' only response to Dr. Haas-Wilson's analysis is that she did not quantify damages on a classwide basis. As described above, the lack of a classwide damages model for plaintiffs other than hospitals cannot support summary judgment. Moreover, the Blues have not addressed the merits of Dr. Haas-Wilson's conclusion that all providers have been injured by low prices, much less disproven that conclusion beyond any genuine dispute. Even if the Non-Hospital Providers never quantify the reduced prices that result from the Blues' agreements, they have still been injured, and they still may assert claims for injunctive relief under Section 16 of the Clayton Act. *Zenith Radio Corp. v. Hazeltine Res., Inc.*, 395 U.S. 100, 130 (1969) (holding that a plaintiff seeking an injunction under the Clayton Act "need only demonstrate a significant threat of injury from an impending violation of the antitrust laws or from a contemporary violation likely to continue or recur").

The Providers' experts have shown how the Blues' agreements harm all healthcare providers by reducing the choices available to them. As Professor Frech explains, if providers

could contract with Blue plans other than BCBS-AL, Alabama providers would gain opportunities to practice medicine using different and innovative contracting methods, medical management arrangements, reimbursement practices, or integration of claims with electronic medical records—advancements that could improve quality and decrease overall costs of health care. Providers Facts 9–10; Doc. No. 2454-3 (Frech Report) ¶¶ 17, 393, 395; *see also* Doc. No. 2454-6 (Haas-Wilson Report) ¶¶ 376–97. Thus, even if the Non-Hospital Plaintiffs were limited to evidence that applies to the entire class (and they are not), they have all been injured by the Blues' unlawful agreements. Therefore, the Blues are not entitled to summary judgment on those claims.

The Blues respond that a loss of choice is not a cognizable antitrust injury, but this is incorrect. The Eleventh Circuit has held that reduced choice in the healthcare industry is an antitrust injury that can be asserted without proof of damages: "[T]he channeling of patient choice is sufficient to show injury to consumers. The antitrust laws do not require the consumer to suffer some form of monetary damage before a defendant's anticompetitive conduct is actionable." *Key Enterprises of Del., Inc. v. Venice Hosp.*, 919 F.2d 1550, 1559 (11th Cir. 1990);[2] *see also Precision CPAP, Inc. v. Jackson Hosp.*, 2010 WL 797170, at *4 (M.D. Ala. Mar. 8, 2010) ("In addition, the failure of the plaintiffs to allege an actual increase in prices or an actual deterioration in the quality of DME does not defeat the claim of an antitrust injury. In making a determination of whether a plaintiff has alleged antitrust injury, 'a court must consider

---

[2] The panel's decision in *Key Enterprises* was vacated when the Eleventh Circuit agreed to hear the case *en banc*. 979 F.2d 806 (11th Cir. 1992). The appeal was then dismissed after the parties settled. 9 F.3d 893 (11th Cir. 1993). Therefore, the panel's decision is not binding precedent, but it may still be cited for its persuasive value. *United States v. Johnson*, 399 F.3d 1297, 1298 n.1 (11th Cir. 2005) (a vacated opinion may have persuasive value); *Precision CPAP, Inc. v. Jackson Hosp.*, 2010 WL 797170, at *4 & n.2 (M.D. Ala. Mar. 8, 2010) (relying on the panel's decision in *Key Enterprises*).

the effect on competition and not simply the effect on the ultimate consumer.'") (quoting *Key Enterprises*). More broadly, courts have long recognized that reduction in choice can constitute antitrust injury. As the Supreme Court noted in *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, "Coercive activity that prevents its victims from making free choices between market alternatives is inherently destructive of competitive conditions…." 459 U.S. 519, 528 (1983). In *Ross v. Bank of America, N.A. (USA)*, 524 F.3d 217, 223 (2d Cir. 2008), the Second Circuit found that cardholders had "adequately alleged antitrust injuries in fact" where they alleged they had been "deprived of any meaningful choice on a critical term and condition of their general purpose card accounts" and asserted injuries of "reduced choice and diminished quality of credit card services."[3] *See also Glen Holly Entm't, Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1010–11 (9th Cir. 2003), *opinion amended on denial of reh'g*, 352 F.3d 367 (9th Cir. 2003) (finding antitrust injury where defendants' conduct limited choice); *Laumann v. Nat'l Hockey League*, 105 F. Supp. 3d 384, 396–97 (S.D.N.Y. 2015) (limitations on choice constitute antitrust injuries).

Other courts have specifically found anticompetitive threats to innovation to be injurious. In affirming a permanent injunction against Defendant Anthem's proposed merger with Cigna, the District of Columbia Circuit noted that a "threat to innovation is anticompetitive in its own right." *United States v. Anthem, Inc.*, 855 F.3d 345, 361 (D.C. Cir. 2017). The district court had found that the proposed merger would "diminish the prospects for innovation in the market." *United States v. Anthem, Inc.*, 236 F. Supp. 3d 171, 179–80 (D.D.C. 2017); *see also Catch Curve, Inc. v. Venali, Inc.*, 519 F. Supp. 2d 1028, 1035–36 (C.D. Cal. 2007) (finding that the

---

[3] Although *Ross* held only that the plaintiffs had established an "injury-in-fact" under Article III, on remand the district court explained that the Second Circuit's reasoning necessarily meant that the deprivation of choice was an antitrust injury as well. *In re Currency Conversion Fee Antitrust Litig.*, 2009 WL 151168, at *4 (S.D.N.Y. Jan. 21, 2009).

plaintiff had sufficiently alleged antitrust injury and denying motion to dismiss injunctive relief claims where the plaintiff alleged "a dangerous probability of 'stifl[ing] innovation' in the market").

This Court recently used those same harms—lack of choice and reduced innovation—to justify its preliminary approval of the Subscriber Settlement. Doc. No. 2641 at 16 ("reduced consumer choice" was a classwide issue); *id.* at 21 (second Blue bid will "create increased choice"); *id.* at 22–23 (predominance element satisfied because Subscribers alleged that "virtually every member of the Damages Class suffered antitrust injury through payment of higher premiums, depressed competition, lessened innovation, and loss of consumer choice"); *id.* at 26–27 (business practice changes allow "the potential for Class Members to achieve greater consumer choice, better product availability, and increased innovation"). If reduced innovation and lack of consumer choice are not antitrust injuries, it would have been odd to emphasize them so heavily in the preliminary approval order.

The cases cited by the Blues do not contradict this well-established principle. Cherry-picking two sentences two pages apart in the Eleventh Circuit's decision in *Amey, Inc. v. Gulf Abstract & Title, Inc.*, the Blues claim that the Eleventh Circuit rejected "lack of choice" as a form of antitrust injury. Motion at 7; (citing *Amey*, 758 F.2d 1486, 1499, 1501 (11th Cir. 1985)). When the Eleventh Circuit stated that "[t]he only injury alleged by Amey which is cognizable under the antitrust laws is that of the payment of the inflated fee for legal services," however, it was discussing the application of the statute of limitations to the plaintiff's claim for damages only.[4] The Court did not purport to address whether lack of choice was an antitrust injury that

---

[4] The Clayton Act's statute of limitations does not apply to claims for injunctive relief, which do not require proof of damages and are governed by the equitable principle of laches. *Duty Free*

could sustain a claim for injunctive relief. As far as the Providers can tell, no court in the thirty-six years since *Amey* was decided has ever interpreted that opinion the way the Blues do. Similarly, *In re Graphics Processing Units Antitrust Litigation* was a suit primarily about money damages, and the court denied certification because the plaintiffs' statistical model could not demonstrate impact to all plaintiffs. 253 F.R.D. 478, 501–07 (N.D. Cal. 2008). *Kloth v. Microsoft Corp.* involved monetary damages only, as the plaintiffs' claims for injunctive relief had been dismissed under the doctrine of laches. 444 F.3d 312, 325–26 (4th Cir. 2006). In *Somers v. Apple, Inc.*, the Ninth Circuit held that the plaintiff's loss of choice was not an antitrust injury because the plaintiff had not explained how it resulted from a harm to competition. 729 F.3d 953, 967 (9th Cir. 2013). Had the loss of choice resulted from an agreement not to compete, the Ninth Circuit would have found an antitrust injury: "[The Plaintiff's allegations are] not comparable to the loss of 'free choices between market alternatives' …." *Id.* (quoting *Glen Holly Entm't*, 343 F.3d 1011). And in *Procaps S.A. v. Patheon, Inc.*, the court held that a loss of consumer choice can be an anticompetitive effect, even if the defendant lacks market power, as long as the plaintiff can show impact to the market. 141 F. Supp. 3d 1246, 1275–77 (S.D. Fla. 2015). Here, the Providers have connected their loss of choice to anticompetitive agreements among Blue Plans with overwhelming market power, which prevent healthcare providers from making free choices between market alternatives. Even the Blues' own authority supports the Providers' claim of antitrust injury here.

## II.    The Providers Can Prove Antitrust Injury from Blue System Rules Other Than ESAs and BlueCard.

The Providers' complaint and their expert report identify several Blue System rules and practices that harm competition and harm providers. The National Best Efforts rule (NBE), for

---

*Ams., Inc. v. Estée Lauder Cos.*, 2014 WL 1329359, at *14 (S.D. Fla. Mar. 31 2014), *aff'd*, 797 F.3d 1248 (11th Cir. 2015); *Oliver v. SD-3C LLC*, 751 F.3d 1081, 1084 (9th Cir. 2014).

example, is a naked limit on output that has injured Alabama providers by disincentivizing other Blues from entering Alabama, preventing providers from pursuing higher reimbursement, value-based care, and more innovative approaches to reimbursement. Doc. No. 2747 (Providers' Opposition to Defendants' Standard of Review Motion) at 25–26; *see also id.* at 19–22 (showing how NBE has always been part of the Providers' case), 23–27 (describing Providers' theory of injury and damages from NBE). Other harmful practices are the use of unlawful "Most Favored Nation" clauses to reduce provider reimbursement and deter competition, Doc. No. 1083 (Providers' Fourth Amended Complaint (FAC)) ¶ 384; Doc. No. 2454-3 (Frech Report) ¶¶ 337–48, and refusing to honor assignment of benefits in order to pressure providers to join the Blues' networks, Doc. No. 1083 (FAC) ¶ 388; Doc. No. 2454-3 (Frech Report) ¶ 353; *see also* Providers' Facts 9–10.

The Blues do not engage with the Providers' allegations or evidence about these practices; they merely repeat their argument that because the Providers have not quantified their damages on a classwide basis, they cannot assert *any* claim based on these practices. Motion at 9–10. As the Providers explained in Part I, this argument is erroneous. The lack of a classwide damages calculation does not imply that the Providers cannot prove antitrust injury (and thus entitlement to injunctive relief) on an individual or classwide basis, or that individual plaintiffs cannot prove their own damages after classwide issues are resolved. Because the Blues' motion does not attempt to address the Providers' theory of injury from practices other than ESAs and BlueCard, the Blues cannot meet their burden on summary judgment to establish beyond any genuine dispute that the Providers have no such injury.

## CONCLUSION

If the Blues want summary judgment on the Non-Hospital Plaintiffs' claims, they must show beyond any genuine dispute that these plaintiffs have not been injured or damaged by the Blues' conduct. The same goes for summary judgment on claims relating to the Blues' practices other than ESAs and BlueCard. The Blues have not attempted to do so. Instead, they rely solely on the lack of a classwide damages calculation, overlooking that no such calculation is required to establish injury, and that the Providers have asked for a class certification that would allow individual plaintiffs to prove their damages. Moreover, the Providers have established classwide injury in the form of lower prices and reduced choice resulting from the Blues' anticompetitive agreements. Therefore, the Blues are not entitled to summary judgment on any of the Providers' claims.

Dated: August 20, 2021

Respectfully submitted,

/s/ Edith M. Kallas

Edith M. Kallas – *Co-Lead Counsel*
WHATLEY KALLAS, LLP
152 West 57th Street
41st Floor
New York, NY  10019
Tel:  (212) 447-7060
Fax:  (800) 922-4851
Email: ekallas@whatleykallas.com

/s/ Joe R. Whatley, Jr.

Joe R. Whatley, Jr. – *Co-Lead Counsel*
W. Tucker Brown
WHATLEY KALLAS, LLP
2001 Park Place North
1000 Park Place Tower
Birmingham, AL 35203
Tel:  (205) 488-1200
Fax:  (800) 922-4851
Email: jwhatley@whatleykallas.com
        tbrown@whatleykallas.com

Patrick J. Sheehan
WHATLEY KALLAS, LLP
101 Federal Street
19th Floor
Boston, MA 10019
Tel:  (617) 573-5118
Fax:  (617) 371-2950
Email: psheehan@whatleykallas.com

Deborah J. Winegard
WHATLEY KALLAS, LLP
1068 Virginia Avenue, NE
Atlanta, GA 30306
Tel:  (404) 607-8222
Fax:  (404) 607-8451
Email: dwinegard@whatleykallas.com

15

Henry C. Quillen
WHATLEY KALLAS, LLP
159 Middle Street, Suite 2C
Portsmouth, NH  03801
Tel:  (603) 294-1591
Fax:  (800) 922-4851
Email: hquillen@whatleykallas.com

Charles Clinton Hunter
HAYES HUNTER PC
4265 San Felipe, Suite 1000
Houston, TX 77027
Tel:  (281) 768-4731
Fax: (713) 583-7047
Email: chunter@hayeshunterlaw.com

Dennis Pantazis – *Plaintiffs' Steering Committee*
Brian Clark – *Discovery Committee*
WIGGINS CHILDS PANTAZIS FISHER
  GOLDFARB
The Kress Building
301 Nineteenth Street North
Birmingham, AL 35203
Tel:  (205) 314-0500
Fax:  (205) 254-1500
Email: dgp@wcqp.com
        bclark@wcqp.com

E. Kirk Wood, Jr. – *Local Facilitating Counsel*
WOOD LAW FIRM LLC
P. O. Box 382434
Birmingham, AL 35238
Tel:  (205) 612-0243
Fax:  (205) 705-1223
Email: ekirkwood1@bellsouth.net

Aaron S. Podhurst – *Plaintiffs' Steering Committee*
Peter Prieto – *Chair, Expert Committee*
PODHURST ORSECK, P.A.
One S.E. 3rd Avenue
Suite 2300
Miami, FL  33131
Tel:  (305) 358-2800
Fax:  (305) 358-2382
Email: apodhurst@podhurst.com
        pprieto@podhurst.com

U.W. Clemon – *Plaintiffs' Steering Committee*
U. W. Clemon, LLC
5202 Mountain Ridge Parkway
Birmingham, AL  35222
Tel: (205) 837-2898
Email: clemonu@bellsouth.net

Dennis C. Reich – *Chair, Damages Committee*
REICH & BINSTOCK, LLP
4265 San Felipe, Suite 1000
Houston, TX 77027
Tel:  (713) 622-7271
Fax:  (713) 623-8724
Email:  dreich@rbfirm.net

J. Mark White – *Litigation Committee*
Augusta S. Dowd – *Chair, Litigation Committee*
Linda G. Flippo – *Discovery Committee*
WHITE ARNOLD & DOWD, P.C.
The Massey Building
2025 Third Avenue North, Suite 500
Birmingham, AL 35203
Tel:  (205) 323-1888
Fax:  (205) 323-8907
Email: mwhite@whitearnolddowd.com
    adowd@whitearnolddowd.com
    lflippo@whitearnolddowd.com

Nicholas B. Roth – *Chair, Discovery Committee*
Julia Smeds Roth – *Discovery Committee*
EYSTER KEY TUBB ROTH MIDDLETON
  & ADAMS, LLP
402 East Moulton Street, SE
Decatur, AL 35602
Tel:  (256) 353-6761
Fax:  (256) 353-6767
Email: nbroth@eysterkey.com
    jroth@eysterkey.com

Van Bunch – *Chair, Class Certification Committee*
BONNETT FAIRBOURN FRIEDMAN &
  BALINT, P.C.
2325 E. Camelback Road, Suite 300
Phoenix, AZ 85016
Tel:  (602) 274-1100
Fax:  (602) 274-1199
Email: vbunch@bffb.com

David A. Balto – *Expert Committee*
THE LAW OFFICES OF DAVID A. BALTO
1350 I Street, N.W., Suite 850
Washington, DC 20005
Tel:  (202) 789-5424
Fax:  (202) 589-1819
Email: david.balto@dcantitrustlaw.com

Robert J. Axelrod – *Chair, Written Submissions Committee*
AXELROD LLP
800 Third Avenue, Suite 2800
New York, NY 10022
Tel: (646) 448-5263
Fax: (212) 840-8560
Email: rjaxelrod@axelrodllp.com

Joey K. James – *Litigation Committee*
BUNCH & JAMES
P. O. Box 878
Florence, AL 35631
Tel:  (256) 764-0095
Fax:  (256) 767-5705
Email: joey@bunchandjames.com

W. Daniel Miles, III – *Written Submissions Committee*
BEASLEY ALLEN CROW METHVIN PORTIS
  & MILES, P.C.
218 Commerce Street
Montgomery, AL 36104
Tel:  (800) 898-2034
Fax:  (334) 954-7555
Email: dee.miles@beasleyallen.com

Richard S. Frankowski – *Discovery Committee*
THE FRANKOWSKI FIRM, LLC
231 22nd Street South, Suite 203
Birmingham, AL  35233
Tel:  (205) 390-0399
Fax: (205) 390-1001
Email: richard@frankowskifirm.com

John C. Davis – *Written Submissions Committee*
LAW OFFICE OF JOHN C. DAVIS
623 Beard Street
Tallahassee, FL 32303
Tel:  (850) 222-4770
Email: john@johndavislaw.net

Mark K. Gray – *Discovery Committee*
GRAY & WHITE
713 E. Market Street, Suite 200
Louisville, KY 40202
Tel:  (502) 805-1800
Fax:  (502) 618-4059
Email: mgray@grayandwhitelaw.com

Stephen M. Hansen – *Class Certification Committee*
LAW OFFICE OF STEPHEN M. HANSEN
1821 Dock Street
Tacoma, WA 98402
Tel:  (253) 302-5955
Fax:  (253) 301-1147
Email: steve@stephenmhansenlaw.com

Harley S. Tropin – *Damages Committee*
Javier A. Lopez – *Discovery Committee*
KOZYAK TROPIN &
  THROCKMORTON, P.A.
2525 Ponce De Leon Boulevard, 9th Floor
Miami, FL 33134
Tel:  (305) 372-1800
Fax:  (305) 372-3508
Email: hst@kttlaw.com
        jal@kttlaw.com

Michael C. Dodge – *Expert Committee*
GLAST PHILLIPS & MURRAY, P.C.
14801 Quorum Drive, Suite 500
Dallas, TX 75254
Tel:  (972) 419-7172
Email: mdodge@gpm-law.com

Michael E. Gurley, Jr. – *Discovery Committee*
Attorney at Law
24108 Portobello Road
Birmingham, AL 35242
Tel:  (205) 908-6512
Email: mgurleyjr@yahoo.com

Lynn W. Jinks, III – *Expert Committee*
Christina D. Crow – *Discovery Committee*
JINKS CROW & DICKSON, P.C.
219 North Prairie Street
Union Springs, AL 36089
Tel:  (334) 738-4225
Fax:  (334) 738-4229
Email: ljinks@jinkslaw.com
        ccrow@jinkslaw.com

Myron C. Penn – *Discovery Committee*
PENN & SEABORN, LLC
53 Highway 110
Post Office Box 5335
Union Springs, AL 36089
Tel:  (334) 738-4486
Fax:  (334) 738-4432
Email: myronpenn28@hotmail.com

J. Preston Strom, Jr. – *Litigation Committee*
STROM LAW FIRM, LLC
2110 N. Beltline Boulevard, Suite A
Columbia, SC 29204-3905
Tel:  (803) 252-4800
Fax:  (803) 252-4801
Email: petestrom@stromlaw.com

C. Wes Pittman – *Settlement Committee*
THE PITTMAN FIRM, P.A.
432 McKenzie Avenue
Panama City, FL 32401
Tel:  (850) 784-9000
Fax:  (850) 763-6787
Email: wes@pittmanfirm.com

Robert B. Roden – *Litigation Committee*
SHELBY RODEN, LLC
2956 Rhodes Circle
Birmingham, AL 35205
Tel:  (205) 933-8383
Fax:  (205) 933-8386
Email: rroden@shelbyroden.com

Gary E. Mason – *Class Certification Committee*
WHITFIELD BRYSON & MASON, LLP
1625 Massachusetts Ave. NW, Suite 605
Washington, DC 20036
Tel:  (202) 429-2290
Fax:  (202) 640-1160
Email: gmason@wbmllp.com

Michael L. Murphy – *Discovery Committee*
BAILEY GLASSER LLP
910 17th Street, NW, Suite 800
Washington, DC  20006
Tel:  (202) 463-2101
Fax: (202) 463-2103
Email: mmurphy@baileyglasser.com

Lance Michael Sears
SEARS & SWANSON, P.C.
First Bank Building
2 North Cascade Avenue, Suite 1250
Colorado Springs, CO 80903
Tel:  (719) 471-1984
Fax:  (719) 577-4356
Email: lance@searsassociates.com

Thomas V. Bender – *Discovery Committee*
Dirk L. Hubbard
HORN AYLWARD & BANDY, LLC
2600 Grand Blvd., Suite 1100
Kansas City, MO 64108
Tel:  (816) 421-0700
Email:  tbender@hab-law.com
         dhubbard@hab-law.com

Gregory S. Cusimano – *Litigation Committee*
CUSIMANO, ROBERTS & MILLS, LLC
153 South 9th Street
Gadsden, AL  35901
Phone: (256) 543-0400
Fax: (256) 543-0488
Email:  greg@alalawyers.net

Brian E. Wojtalewicz
WOJTALEWICZ LAW FIRM, LTD.
139 N. Miles Street
Appleton, MN 56208
Tel:  (320) 289-2363
Fax:  (320) 289-2369
Email: brian@wojtalewiczlawfirm.com

Archie C. Lamb, Jr.
ARCHIE LAMB & ASSOCIATES, LLC
301 19th Street North, Suite 585
The Kress Bldg.
Birmingham, AL 35203-3145
(205) 458-1210
Email: alamb@archielamb.com

Paul Lundberg
LUNDBERG LAW, PLC
600 4TH Street, Suite 906
Sioux City, IA  51101
Tel:  (712) 234-3030
Fax:  (712) 234-3034
Email:  paul@lundberglawfirm.com

Jessica Dillon
Ray R. Brown
Molly Brown
DILLON & FINDLEY, P.C.
1049 W. 5th Avenue, Suite 200
Anchorage, AK  99501
Tel:  (907) 277-5400
Fax:  (907) 277-9896
Email:  Jessica@dillonfindley.com
          Ray@dillonfindley.com
          Molly@dillonfindley.com

Cynthia C. Moser
HEIDMAN LAW FIRM
1128 Historic 4th Street
P. O. Box 3086
Sioux City, IA  51101
Tel:  (712) 255-8838
Fax  (712) 258-6714
Email:  Cynthia.Moser@heidmanlaw.com

Gwen Simons
Simons & Associates Law, P.A.
P.O. Box 1238
Scarborough, ME 04070-1238
Tel: (207) 205-2045
Fax: (207) 883-7225
Email: gwen@simonsassociateslaw.com