FILED

2021 Oct-12  PM 05:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

# Exhibit F

1    both.

2    Q.   And have you observed evidence in the record of actual

3    attempts to enter the national account space?

4    A.   Yes, I have.  I've seen evidence I think that again is

5    kind of very sobering if you're thinking about the potential

6    for entry to impact competition here.  One is the testimony

7    we heard from Ms. Bierbower about Humana and how they had to

8    break off their efforts to be competitive in the national

9    accounts space because of this chicken-or-egg problem.  You

10   know, it's one thing to participate in, say, the Medicare

11   program where the rates paid to providers are largely

12   determined by the government.  There's not that much

13   discount negotiated in that space.

14            But in the commercial space, where there's large

15   discounts potentially being negotiated, if you're small,

16   it's hard to become big.

17            The other one that I think is also really

18   interesting is Kaiser, which I want to say about 15 years

19   ago, give or take five years, Kaiser made a concerted effort

20   to expand its geographic footprint across the United States,

21   and a wonderful research paper published by Professor Kate

22   Ho -- and that's spelled H-o -- from Columbia University,

23   she explored why Kaiser failed in its efforts to grow its

24   national footprint, and she identified the same problem, the

25   inability to create viable networks across the United

1    States.

2            So I'm going to say, you know, if Kaiser is having

3    a hard time becoming a national player, and if Humana has

4    walked back from becoming a national player, they're like

5    the two biggest candidates to succeed in this way, how are

6    these upstarts going to do better than providing, say, a

7    high-performance network for hip replacement surgery in a

8    few geographic locations, which is the type of entry that I

9    think you are seeing.

10           But expanding beyond that to become a real threat

11   to the big four I think is all but impossible.

12   Q.   How does the evidence of innovation you discussed

13   earlier impact your assessment of entry?

14   A.   Well, employers are increasingly expecting innovations

15   in health and wellness and provider collaboration and

16   providing data back to employers and providers, and that's

17   just another barrier to an entry because they're not going

18   to have the information base to make that happen.

19   Q.   Apart from entry, have you considered defendants'

20   arguments that private exchanges and slicing would constrain

21   a price increase following the merger?

22   A.   Yes, I have.

23   Q.   And what is your assessment?

24   A.   I don't think either is likely to constrain price

25   increases following the merger.  As we discussed before,