**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

IN RE: BLUE CROSS BLUE SHIELD
ANTITRUST LITIGATION, MDL 2406

Master File No: 2:13-cv-20000-RDP

This document relates to
Subscriber-Track cases

## RESPONSE TO SETTLEMENT PROPONENTS' POST-HEARING ARGUMENTS

Shiyang Huang submits this brief in response to Settlement Proponents, under this Court's order, Doc. # 2867 ("the deadline for any Objectors or *other interested persons* to respond to the Settlement Proponents' written submissions is December 1, 2021.") (emphasis added). As this Court recognized, Huang is appearing *pro se* after he opted out of the damages class; but his *pro se* work in another massive MDL case was recognized to "parallel[]" work done by experienced counsel, such that he was awarded $500 for recovering *$17 million* of class members' money, even if *"only"* Huang had been making the arguments." *In re Optical Disk Drive Prods. Antitrust Litig.*, No. 3:10-md-2143, Doc. # 3067 (N.D. Cal. Oct. 18, 2021) (Seeborg, C.J.). *See also Kukorinis v. Wal-Mart Inc.*, No. 19-cv-20592, Doc. # 98 at 7 & n.4 (S.D. Fla. Sep. 20, 2021) (noting Huang's sole objection led to voluntary attorney's fee reduction of *$1.25 million*, and exposing class counsel's $60,000 "double counting" of litigation costs.)

Huang makes two brief points below on (1) individual recovery (2) injunctive relief.

*First*, Huang explains to the Court that Huang opted out of the Damages class, because it was clear to Huang that **most class members like Huang** (i.e., individual class members who gets an e-mail version of the Settlement postcards) **will essentially file a *pointless claim for absolutely nothing***, because even after doing a mathematician's workload to file a claim, he has **next to 0% chance to be allocated at least $5 to survive the *de minimis* distribution requirements to receive any actual payout** from the Settlement.

But it was rationally the most economic outcome, because Blues are paying for all notice costs under the terms, and they rightfully wants to minimize such uncapped notice costs (as a multiple of how many checks to write) when the Settlement fund size is more or less the same.

> The requirement of needlessly elaborate documentation, ... and the fact that a claimant might feel obliged to wade through the five other documents accessible from the opening screen of the website, help to explain why so few recipients of the postcard notice bothered to submit a claim. It's hard to resist the inference that [Defendants] w[ere] trying to minimize the number of claims that class members would file, in order to minimize the cost of the settlement to it.

*Pearson v. NBTY, Inc.*, 772 F. 3d 778, 783 (7th Cir. 2014) (Posner, J.) But that means

> a settlement that delivers no more than the speculative possibility of relief to class members cannot support class certification under Rule 23(b)(3) because a class action is not "superior to other available methods for fairly and efficiently adjudicating the controversy" if it results in no relief whatsoever. Fed. R. Civ. P. 23(b)(3). Even if the alternative to a class action is that the plaintiff would not bring a lawsuit at all, a class action that yields no relief is still not "superior" to that alternative. *Ibid.*

Brief for the United States as *amicus curiae*, *Frank v. Gaos*, No. 17-961, 2018 WL 3456069, at **25-26 (U.S. Jul. 16, 2018). One cannot say "only the lambs do not opt out."

***Second***, Huang could not reconcile with how a Rule 23(b)(2) injunctive class—assuming Huang is still a member of it—can provide Huang any meaningful relief whatsoever. Plaintiffs go on pages and pages to discuss why *Wal-Mart Stores v. Dukes*, 564 U.S. 338 (2011) somehow supports their position to certify an injunctive class, but they do not even highlight the fact that Rule 23(b)(2) injunctions requires that Plaintiffs are exposed to a

> material risk of future harm [to] satisfy the concrete-harm requirement in the context of a claim for injunctive relief to prevent the harm from occurring, [] **so long as the risk of harm is sufficiently imminent and substantial.** *See Spokeo [Inc. v. Robins]*, 578 U.S. [330,] 341-342 [(2016)] (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013)).

***TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2198 (2021)** (emphasis added).

Also, according to the what the Solicitor General of the United States said before,

2

> [any] relief complies with Article III only if it has "direct consequences on" the plaintiffs themselves. *Sanchez-Gomez*, 138 S. Ct. at 1537 (citation omitted). Specifically, plaintiffs must demonstrate "redressability—a likelihood that the requested relief will redress the[ir] alleged injury." *Steel Co.*, 523 U.S. at 103.

Brief for the United States, *Frank v. Gaos*, No. 17-961, 2018 WL 3456069, at **23-24 (U.S. Jul. 16, 2018). But "redressability will generally require two showings." *Ibid.*

> First, plaintiffs must show either a present, "continuing violation" that causes injury or "the imminence of a future violation" that would inflict the same injury. *Steel Co.*, 523 U.S. at 108; *see Laidlaw*, 528 U.S. at 187-188; *City of Los Angeles v. Lyons*, 461 U.S. 95, 107-108 (1983).

*Ibid.*

> Second, plaintiffs must show that * * * it "likely, as opposed to merely speculative," that the specific injury asserted by plaintiffs "will be redressed." *Laidlaw*, 528 U.S. at 181.

*Ibid.*

In other words, if Huang hypothetically sued Blues and seek some "stop antitrust!" injunction, the Blues can easily prevail in a Rule 12(b)(1) motion for lack of Article III jurisdiction. That is because Huang—and anyone are not currently subscribe to Blues' Plans now—***cannot show that he is exposed to* "sufficiently imminent and substantial" risk of harm.** Huang does not understand how he has standing *now* just because he is now an *unnamed* class member, and Rule 23, as any rules, cannot provide standing for free to *absentee* members.

But *Cordoba v. DIRECTV, LLC*, 942 F. 3d 1259, 1274 (11th Cir. 2019) requires that,

> at some point before [a district court] can award any relief, the district court will have to determine whether each member of the class has standing. As Chief Justice Roberts explained, "Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not. The Judiciary's role is limited 'to provid[ing] relief to claimants, in individual or class actions, who have suffered, or will imminently suffer, actual harm.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1053 (2016) (Roberts, C.J., concurring) (quoting *Lewis v. Casey*, 518 U.S. 343, 349 (1996)).

\*     \*     \*

As the Court already stated, "the court will address its Article III jurisdiction in relation to the Subscriber's claims for injunctive relief and to provide the injunctive relief contemplated in the Subscribers Settlement." Doc. # 2834. Huang thus simply renews his arguments otherwise stated in Doc. # 2833 to not repeat his words there. Huang invites adversarial briefings to help the Court ensure of its own jurisdiction before a number of other questions on the merits.

Dated: November 17, 2021                           Respectfully Submitted,

/s/Shiyang Huang
Shiyang Huang
2800 SW Engler Ct.,
Topeka, KS 66614
(314) 669-1858
defectivesettlement@gmail.com

## CERTIFICATE OF SERVICE

I certify that on November 17, 2021, a true and correct copy of the foregoing was filed with the Clerk of Court by U.S. mail. CM/ECF will then notify all counsels of record.

Parties are encouraged to serve any filings to defectivesettlement@gmail.com to constitute service under Fed. R. Civ. Proc. 5(b) in light of the COVID-19 pandemic.

/s/ Shiyang Huang

4

ZHIYANG HUANG
2600 SW ENGLISH CT
TOPEKA KS 66614

SECURITY
NOV 22 2021
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

HUGO L Black Courthouse
1729 5TH AVENUE NORTH
BIRMINGHAM, AL 35203

35203-200099