IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE BLUE CROSS BLUE SHIELD ANTITRUST LITIGATION | : | Master File 2:13-cv-20000-RDP |
| | : | |
| MDL 2406 | : | |
| | : | |
| | : | This document relates to |
| | : | Subscriber Track cases |

### POST-FAIRNESS HEARING BRIEF OF OBJECTORS
### <u>GENERAL MOTORS COMPANY AND GENERAL MOTORS LLC</u>

In accordance with this Court's request during the October 20-21, 2021 Fairness Hearing (the "Fairness Hearing" or "Hearing") (ECF Nos. 2867 and 2870), General Motors Company and General Motors LLC ("GM") submit this brief in response to the Subscriber Plaintiffs' and Defendants' November 12, 2021 post-Hearing briefs. *See* ECF Nos. 2868 and 2869. In particular, GM responds to Defendants' contention that "the Second Blue Bid eligibility criteria are both reasonable and equitable." *See* Defendants' Post-Hearing Br. (ECF No. 2868) at 19-21.

<u>INTRODUCTION</u>

GM is a large, self-funded, ASO subscriber. Under the current terms of the proposed Settlement, GM has not been designated as a Qualified National Account ("QNA") and, therefore, is not eligible to solicit a Second Blue Bid.

At the outset of this litigation, Blue Cross Blue Shield of Michigan—the Settling Individual Blue Plan in the Service Area where GM is headquartered—was insulated from any competition in the provision of Blue-branded products and services to GM. If the proposed Settlement is approved, nothing will have changed in that regard. GM will remain blocked from seeking a competing bid from a second Settling Individual Blue Plan and limited to obtaining a Blue-branded bid from BCBS of Michigan. Thus, in its present form, the proposed Settlement

perpetuates the conduct at the heart of this lawsuit: the categorical exclusion of GM (and many other class members) from even requesting a single Blue-branded competitive alternative.[1]

In response, the Subscriber Plaintiffs assert that elimination of the National Best Efforts ("NBE") Rule will "unleash[] the substantial force of Green competition for the benefit of the class." *See* Subscriber Plaintiffs' Brief in Support of Final Approval at 10; Fairness Hearing Tr. Vol. II at 88:5-6 (Subscriber Plaintiffs' counsel opining that "a green bid really is merely a Blue bid under a different color"). Yet, at the same time, the Subscriber Plaintiffs tout the "valuable equitable relief" that comes from some—but not even a majority of—QNAs being able to access a Second Blue Bid. *Id*. There is a logical inconsistency here. If the Second Blue Bid is so uniquely valuable such that it is important to circumscribe its availability, then the competitive significance of the NBE elimination cannot be as robust as suggested. Alternatively, if Green competition is so significant, then there is no reason why Defendants should resist class-wide Second Blue Bid availability.

Contrary to what the Parties assert in their November 12, 2021 post-Hearing briefs, their Second Blue Bid proposal draws arbitrary lines among class members (all of whom have been similarly harmed by the same anticompetitive conduct) and, notwithstanding the application of so-called "objective" criteria, treats those class members differently (by allowing only a minority of them to solicit a Second Blue Bid). Accordingly, under Fed. R. Civ. P Rule 23(e)(2)(D), the proposed Settlement fails to treat class members equitably relative to each other, and thus should not be approved in its current form.

---

[1] The Parties concede that approximately two-thirds of all National Account plan members presently are excluded from this proposed injunctive relief. *See* Defendants' Post-Hearing Br. at 19; Fairness Hearing Tr. Vol. II at 90:12-14.

ARGUMENT

I.  **In Order to Approve the Proposed Settlement, the Court Must Find that it is "Fair, Reasonable and Adequate"**

During the Fairness Hearing, the Subscriber Plaintiffs proposed that this Court shift Second Blue Bid injunctive relief from a Rule 23(b)(2) class (with no opt-out rights) to a Rule 23(b)(3) class (with opt-out rights).[2]  Regardless of whether the Court houses the Second Blue Bid injunctive relief in a Rule 23(b)(2) or 23(b)(3) class, it may only approve the proposed Settlement upon finding that it is "fair, reasonable and adequate." *See, e.g., Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984); *McWhorter v. Ocwen Loan Servicing, LLC*, No. 2:15-CV-01831-MHH, 2019 WL 9171207, at *8 (N.D. Ala. Aug. 1, 2019); Fed. R. Civ. P. 23(e)(2). In so doing, the Court must determine whether, among other things, "the proposal treats class members *equitably* relative to each other." *See* Rule 23(e)(2)(D) (emphasis added). Consideration of this factor "could include whether the apportionment of relief among class members takes appropriate account of differences among their claims." *See* Fed. R. Civ. P. 23 Advisory Committee's Note to 2018 Amendment.  Here, however, there are no such differences (*i.e.*, the relevant class members all have similar claims arising from the same conduct), and any Rule 23(b)(3) injunctive relief should reflect that fact.

Rule 23(e)(2)(D) is satisfied when all members of the proposed injunctive relief class receive the same benefits and/or the same policy is applied to all of them. *See, e.g.*, *Amin v. Mercedes-Benz USA, LLC*, No. 1:17-CV-01701-AT, 2020 WL 5510730, at *2 (N.D. Ga. Sept. 11, 2020); *In re Equifax Inc. Customer Data Security Breach Litig.*, No. 1:17-md-2800-TWT,

---

[2] The Defendants have acquiesced to this proposal, *see* Defendants' Post-Hearing Br. at 14-16, and GM does not object to the certification of a Rule 23(b)(3) injunctive relief settlement class, provided such certification treats all Self-Funded Sub-Class members equitably relative to each other.

2020 WL 256132, at *9 (N.D. Ga. March 17, 2020); *see also Joh v. Am. Income Life Ins. Co.*, No. 18-CV-06364-TSH, 2020 WL 109067, at *9 (N.D. Cal. Jan. 9, 2020) (rejecting a proposed settlement for failure to satisfy Rule 23(e)(2)(D) in which relief was distributed using a formula, but one subclass of plaintiffs received a disproportionate share of the relief).

Where, as here, the Parties have reached a settlement agreement prior to class certification, this Court must also apply heightened judicial scrutiny to the question of the proposed Settlement's substantive fairness.  In *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997), the Supreme Court held that Rule 23 "demand[s] undiluted, even heightened, attention in the settlement context" and explained that "[s]uch attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold."  *See also Waters v. Cook's Pest Control, Inc.*, No. 2:07-CV-00394-LSC, 2012 WL 2923542, at *9 (N.D. Ala. July 17, 2012) (quoting *Amchem*, 521 U.S. at 620); *Faught v. Am. Home Shield Corp.*, No. 2:07-CV-1928-RDP, 2010 WL 10959223, at *7 (N.D. Ala. Apr. 27, 2010) (same); *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (holding that settlements prior to class certification "must withstand an even higher level of scrutiny" under Rule 23(e)); *Mars Steel Corp. v. Cont'l Illinois Nat. Bank & Tr. Co. of Chicago*, 834 F.2d 677, 681 (7th Cir. 1987) ("[W]hen class certification is deferred, a more careful scrutiny of the fairness of the settlement is required"); *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d. Cir. 1982) (holding that district courts approving settlements before, or at the same time as, a class has been certified must employ "more than the usual care").

## II. The Proposed Settlement Does Not Treat Class Members Equitably Relative to Each Other

In their post-Hearing brief, Defendants justify the Second Blue Bid dispersion criteria by arguing that it "channels" the putative (b)(3) relief "to truly 'national' accounts and away from geographically concentrated employers that are more likely to have viable local or regional alternatives." *See* Defendants' Br. at 20. Thus, Defendants contend that eligibility for proposed injunctive relief can be based on how much class members might *benefit* from that relief. Defendants do not cite a case that supports this proposition, nor is GM aware of one. Defendants also fail to adequately explain how it is that less dispersed national accounts allegedly would benefit less from the right to solicit a Second Blue Bid.

*First*, the issue here is not whether GM or other National Account plan members—because of purported "geographic concentration"— may have non-BCBS competitive alternatives for local or regional ASO arrangements, but whether the proposed settlement treats class members equitably vis-à-vis each other. A system that makes a certain type of injunctive relief available only to a subset of otherwise similarly situated class members fails that test.[3] Put differently, individualized relief can make sense, and can be fair, where *injury* is individualized. For example, had half of the national accounts historically been able to solicit two blue bids and the other half had been restricted to one, then one might envision injunctive relief that created parity, *i.e.*, allowing the former group to solicit one additional blue bid and the latter to solicit two additional blue bids, such that post-settlement all could have three options. But in that hypothetical case, while the relief would be individualized, it still would be equitable because—

---

[3] That is particularly true where, like here, the principal way in which class members are not similarly situated is the result of the inequitable relief that the settling parties have designed.

unlike what is proposed here—similarly situated class members would end up in similar positions. As currently structured, the proposed Second Blue Bid relief does not do that.

Moreover, the fact that the proposed Settlement—whether under Rule 23(b)(2) or 23(b)(3)—achieves its differential treatment through a facially objective formula should not shield it from Rule 23(e)'s baseline fairness test.  Nor does the fact that Second Blue Bid determinations are refreshed every two years cure the problem.  Both of these attributes still impermissibly divide the national accounts into groups of "haves" and "have nots."

*Second*, there may be benefits associated with a Second Blue Bid that are not directly correlated with a company's dispersion. Perhaps most significantly, the mere availability of a Second Blue Bid is likely to catalyze a competitive response—be it in terms of price, quality, or both—from a local Blue.  Indeed, as Home Depot noted in its Objection, there is "substantial evidence that, absent artificial restraint, [independent Blue Plans] would compete fiercely outside of their service areas for national accounts." *See* Home Depot U.S.A., Inc.'s Objection to Settlement Approval at 21 (Ex. 5 at ECF No. 2812-20).  "For many Blues, ceding is their only way to grow their business, given the limitations [on the amount of potential new business] within their own ESAs. … For this reason, Member Plans compete vigorously over who gets the right to bid on a national account." ECF No. 2408 at 15 (citing Defendants' documents). Moreover, "Member Plans attempt to bid on accounts all over the country, not just those that are geographically close." *Id*. at 16 (citing defendants' documents).

*Third*, as explained by the National Accounts Objectors, "local and regional insurers cannot service National Accounts because those insurers do not do business where thousands upon thousands of the National Account's plan members are located.  Put differently, the percentage of those plan members who are 'dispersed' is irrelevant to the inability of the local

and regional insurers to service the account." *See* National Accounts' Reply Memorandum in Support of Opposition to the Approval of the Injunctive Relief Class Settlement (ECF No. 2830) at 17.  GM illustrates this point.  Of GM's roughly 196,000 current group plan members, approximately 88,000 reside in areas outside of BCBS of Michigan's Service Area.  Thus GM, like other companies with operations spread across various jurisdictions, must piece together different ASO solutions to cover the full base of its plan members.  Having another Blue alternative would provide an attractive competitive option for such companies, just as it does for those who pass the parties' custom-designed QNA test.

*Finally*, the Parties assert that differential treatment of class members in a proposed settlement may be appropriate if it is "based rationally on legitimate considerations."  *See, e.g.*, Defendants' Pre-Hearing Br. (ECF No. 2813) at 18 (quoting *Pedraza v. United Guar. Corp.*, No. CV100-108, 2001 WL 37071199, at *7 (S.D. Ga. June 22, 2001); *see also* Fairness Hearing Tr. Vol. II at 86:23-87:2.  While that may be theoretically correct, that is not what is happening here.  As discussed above, the veneer of objectivity and rationality surrounding the Second Blue Bid eligibility criteria cannot overcome the denial of any such benefit to a significant majority of National Accounts.  To the contrary, the perpetuation of no Blue competition for approximately two-thirds of National Accounts would provide a judicial seal of approval for the anticompetitive walls that this lawsuit was initiated to tear down.  That is the very antithesis of a legitimate consideration that would support differential treatment among putative class members.

## CONCLUSION

In its present form, the Second Blue Bid process is not fair to all Class Members.  In objecting to the proposed Settlement, GM is also mindful that having the right to solicit a Second Blue Bid is not an entitlement for any class member to a particular outcome in a bilateral

contract negotiation. It is simply the right to seek just one additional competitive option.  But, for the foregoing reasons, the inability of similarly situated class members to have that basic opportunity means the proposed Settlement violates Rule 23(e)(2)(D) and, thus, is not fair, reasonable nor adequate.  As a result, the Court should not approve the proposed Settlement in its current form.

December 8, 2021

/s/ Peter Boivin
Peter Boivin
Brittany Mouzourakis
**GENERAL MOTORS COMPANY AND GENERAL MOTORS LLC**
300 Renaissance Center
Detroit, MI  48265-3000
Tel: (313) 665-4919
peter.boivin@gm.com
brittany.mouzourakis@gm.com

Respectfully Submitted,

/s/ Robert M. Cooper
Robert M. Cooper
Hershel A. Wancjer
**KING & SPALDING LLP**
1700 Pennsylvania Ave., NW
2nd Floor
Washington, DC 20006
Tel: (202) 626-8991
Fax: (202) 626-3737
rcooper@kslaw.com
hwancjer@kslaw.com

*Counsel for General Motors Company and General Motors LLC*

**CERTIFICATE OF SERVICE**

    I hereby certify that on December 8, 2021, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

                                        /s/ Hershel A. Wancjer
                                        Hershel A. Wancjer