IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| IN RE: BLUE CROSS BLUE SHIELD ANTITRUST LITIGATION (MDL NO.: 2406) } } } } } } | Master File No.: 2:13-CV-20000-RDP<br><br>This document relates to Subscriber track cases |

### MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR SUPPLEMENTAL NOTICE TO SELF-FUNDED ACCOUNTS

On October 16, 2020, Subscriber Plaintiffs and Settling Defendants entered into a Settlement Agreement which, if approved, would resolve Subscriber Plaintiffs' class wide claims in this litigation. (Doc. # 2610-2). On October 30, 2020, Subscriber Plaintiffs filed a motion seeking preliminary approval of the Settlement. (Doc. # 2610). On November 17, 2020, this court held a hearing on Settlement Class Counsel's Motion for Preliminary Approval. (Doc. # 2626). On November 30, 2020, this court entered an order granting preliminary approval of the Settlement, Plan of Distribution, and Notice Plan. (Doc. # 2641). Thereafter, JND Legal Administration ("JND"), the court-appointed notice and claims administrator, effectuated the court-approved Notice Plan. (Doc. # 2812-2). On September 3, 2021, Subscriber Plaintiffs moved for final approval of the Settlement and for the appointment of a Settlement Administrator. (Doc. # 2812). In October 2021, the court conducted a multi-day Fairness Hearing and heard arguments from the parties in support of the Settlement and from class members objecting to the Settlement. (Doc. # 2859). During the Fairness Hearing, it became clear to the court that the Second Blue Bid relief provided to certain Self-Funded Accounts should be properly construed as divisible injunctive relief under Federal Rule of Civil Procedure 23(b)(3) relief. (*See, e.g*., Doc. # 2865 at. 25-27, 42-44, 95). Therefore, Subscriber Plaintiffs moved for the opportunity to provide

Supplemental Notice to Self-Funded Accounts. (Doc. # 2885). That Motion (Doc. # 2885) is currently before the court.

### I.     Background

The Subscriber Track's Fourth Amended Consolidated Class Action Complaint defines two classes, a Nationwide Injunctive Relief Class and a Nationwide Damages Class. The Nationwide Damages Class also contains a Self-Funded Subclass. (Doc. # 2616 at 71-72). The "Nationwide Injunctive Class" is defined as:

> All Individual Members, Insured Groups, Self-Funded Accounts, and Members that purchased, were covered by, or were enrolled in a Blue-Branded Commercial Health Benefit Product sold, underwritten, insured, administered, or issued by any Settling Individual Blue Plan during the Class Period.

(*Id*. at 71). The "Nationwide Damages Class" is defined as:

> All Individual Members (excluding dependents and beneficiaries), Insured Groups (including employees, but excluding non-employee Members), and Self-Funded Accounts (including employees, but excluding non-employee Members) that purchased, were covered by, or were enrolled in a Blue-Branded Commercial Health Benefit Product (unless the person or entity's only Blue-Branded Commercial Health Benefit Product during the Class Period was a stand-alone vision or dental product) sold, underwritten, insured, administered, or issued by any Individual Blue Plan during the Class Period of February 7, 2008 through October 16, 2020 (in the case of all Damages Class members other than the Self-Funded Sub-Class, for whom the Class Period is September 1, 2015 through October 16, 2020).

(*Id*.). The "Self-Funded Subclass" is defined as:

> All Self-Funded Accounts (including employees, but excluding nonemployee Members) that purchased, were covered by, or were enrolled in a Blue-Branded Commercial Health Benefit Product (unless the person or entity's only Blue-Branded Commercial Health Benefit Product during the Settlement Class Period was a stand-alone vision or dental product) sold, underwritten, insured, administered, or issued by any Settling Individual Blue Plan from September 1, 2015 through October 16, 2020.

(*Id*. at 72).

Section C of the Subscriber Track Fourth Amended Consolidated Class Action Complaint lists the types of Class Injunctive Relief available under the Settlement. (Doc. # 2610-2 at 31-37). Paragraph C(15) provides that "[a] Qualified National Account shall have the right to send a Second Blue Bid Request to any one Settling Individual Blue Plan, in addition to an Initial Control Plan, for a total of two bids." (Doc. # 2610-2 at 33 ¶C(15)). Initially, it was anticipated that all of the injunctive relief provided in Section C would be certified under Rule 23(b)(2), that it constituted indivisible injunctive relief, and that there would be no option to opt out of the class injunctive relief. But, as noted above, that characterization appears off the mark. Indeed, a number of objectors, and the court itself, raised concerns about the apparent inability under the Settlement Agreement to opt out of the Second Blue Bid portion of the injunctive relief despite the fact that it constitutes divisible injunctive relief. (*See, e.g.*, Doc. # 2868 at 14; Doc. # 2830 at 17).[1] Concerns were also expressed about the fact that notice indicated that the right to opt out related to the damages class only, and not the divisible Second Blue Bid relief.

**II.    Analysis**

Courts recognize a distinction between indivisible injunctive relief, which is properly treated as non-opt out (b)(2) relief, and divisible injunctive relief, which should be treated as (b)(3) relief. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011) ("[C]laims for individualized relief [] do not satisfy [] Rule [23(b)(2)]."); *Easterling v. Conn. Dep't of Corr.*, 278 F.R.D. 41, 51 (D. Conn. 2011) ("[T]he plaintiff's claims for class-wide declaratory and injunctive relief are

---

[1] Class members have a due process right to opt out of a Rule 23(b)(3) divisible relief settlement. *See In re Hyundai & Kia Fuel Econ. Litig.*, 881 F.3d 679, 710 (9th Cir. 2018), *on reh'g en banc*, 926 F.3d 539 (9th Cir. 2019); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 814 (1985). And, there are serious issues raised when the terms of a class settlement could be read to burden opt out rights.

certified under Rule 23(b)(2), while the plaintiff's claims for monetary and individualized injunctive relief are certified under Rule 23(b)(3).").

The Second Blue Bid provision is properly characterized as divisible injunctive relief. It is not afforded to all class members. Rather, entitlement to a Second Blue Bid depends on a class member's individualized circumstances. "Some [ASOs] will benefit from second Blue bids; some will not." (Doc. # 2864 at 25). The Supreme Court recently reaffirmed that certification under Rule 23(b)(2) is proper "'only when a single injunction or declaratory judgment would provide relief to each member of the class.'" *Jennings v. Rodriguez*, 138 S. Ct. 830, 851-852 (2018) (quoting *Wal-Mart*, 564 U.S. at 362). Therefore, the court concludes that certification of the Second Blue Bid relief must occur under Rule 23(b)(3), if at all. (*See* Doc. # 2868 at 12-13, 16; Doc. # 2869 at 20-21).

The Settlement Agreement has always contemplated two classes: an Injunctive Relief Class and a Damages Class (with a Self-Funded Sub-Class). (Doc. # 2610 at 8 ¶1(l), 10 ¶1(v), 13 ¶1(pp)). Similarly, the Settlement Agreement has always contemplated two types of class relief: Damages and Injunctive Relief. (Doc. # 2610 at 10 ¶1(v), 13 at ¶1(oo)). However, these types of relief would be more appropriately categorized as non-opt out (b)(2) indivisible relief and (b)(3) divisible relief. And, in the context of this Settlement, the (b)(3) divisible relief includes damages and the Second Blue Bid.

Notably, under the terms of the Settlement, an ASO that opts out of damages relief also automatically opts out of the right to receive a Second Blue Bid.[2] Thus, treating the Second Blue

---

[2] A careful reading of the Settlement Agreement reveals that Qualified National Accounts who opt out of the damages class also opt out of the Second Blue Bid injunctive relief that they would otherwise be entitled to under the Settlement's terms. (*See* Doc. # 2610-2 at ¶1(u), ¶1(z), ¶1(sss), ¶1(aaaa) ("Opt-Outs are not Employers[,]" who are the entities who may otherwise be entitled to the Second Blue Bid relief.).

4

Bid relief as individualized (b)(3) relief is consistent with the terms of the Settlement Agreement. There is also precedent for certifying the relief in this manner. In *Easterling v. Connecticut Dep't of Correction*, the court divided the types of class relief in precisely this manner. 278 F.R.D. 41, 45 (D. Conn. 2011). As the *Easterling* court explained:

> Rule 23(c)(4) provides that 'an action may be brought or maintained as a class action with respect to particular issues.' Fed.R.Civ.P. 23(c)(4). In *Robinson* [*v. Metro–North Commuter Railroad Co.,* 267 F.3d 147, 169-70 (2d Cir. 2001)], the Second Circuit exhorted district courts to 'take full advantage of this provision to certify separate issues in order to reduce the range of disputed issues in complex litigation and achieve judicial efficiencies.'

*Easterling*, 278 F.R.D. at 45. Therefore, that court held that "the plaintiff's claims for class-wide declaratory and injunctive relief are certified under Rule 23(b)(2), while the plaintiff's claims for monetary and individualized injunctive relief are certified under Rule 23(b)(3)." *Id.* at 51. In fact, "many district courts have certified claims for class-wide declaratory or injunctive relief under Rule 23(b)(2), while simultaneously certifying claims for individualized relief under Rule 23(b)(3)." *A.R. v. Connecticut State Bd. of Educ.*, 2020 WL 2092650, at *12 (D. Conn. May 1, 2020) (citing *Easterling*, 278 F.R.D. at 45; *Maziarz v. Hous. Auth. of the Town of Vernon*, 281 F.R.D. 71, 83 (D. Conn. 2012) (stating that "it is consistent with *Wal-Mart* for the court, in an appropriate situation, to certify an 'injunction class' under Rule 23(b)(2) and a 'damages class' under Rule 23(b)(3)"); and *Gulino v. Bd. of Educ. of City Sch. Dist. of New York*, 907 F. Supp. 2d 492, 507-08 (S.D.N.Y. 2012) (decertifying a (b)(2) class as to the claims for individualized injunctive relief under Title VII in light of [*Wal-Mart*], but noting that such claims may be separately certified under (b)(3))).

In *A.R.*, even though the plaintiff did not seek to certify individualized injunctive relief claims under Rule 23(b)(3), the court nonetheless considered "whether these claims may be so certified." 2020 WL 2092650, at *12 (citing Edward F. Sherman, *Class Actions and Duplicative*

5

*Litigation*, 62 Ind. L.J. 507, 516 (1987) ("[a] class action should not be found unmanageable without [first] exploring the procedural devices available for bringing it in line. These include subclassing and trial of subclass issues separately, bifurcating liability and damages[.]")).

Rule 23(b)(3) "allows class certification in a much wider set of circumstances [than Rule 23(b)(2)] but with greater procedural protections." *Wal-Mart*, 564 U.S. at 362. These protections include mandatory notice and opt-out rights, neither of which is available to members of a (b)(2) class. *Id.*; *see also Gulino*, 907 F. Supp. 2d at 505 (declining to certify under Rule 23(b)(2) "where each class member would be entitled to a different injunction or declaratory judgment" and observing that "[i]n order to obtain individualized relief, a putative class must satisfy the requirements of Rule 23(b)(3), which includes greater procedural protections, such as notice and opportunity for members to opt out of the litigation.") (internal citations and quotation marks omitted).

The court believes that certifying indivisible injunctive relief under Rule 23(b)(2) and divisible injunctive relief and damages under Rule 23(b)(3) is not only consistent with the Settlement Agreement, but also appropriate here. The question, therefore, becomes whether supplemental notice regarding the right to opt out of the divisible injunctive relief (*i.e.*, the Second Blue Bid) and damages is required. The court notes that, although a class member who opts out of the damages class under the Settlement also opts out of the Second Blue Bid relief (to the extent that particular relief is available), that was not made clear in the class notice. In fact, arguably it only becomes apparent after a careful examination of the Settlement Agreement.

The Settlement provides that only "persons and entities within the *Damages* Class shall have the right to exclude themselves from their respective *Damages* Classes[.]" (Doc. # 2610-2) (emphasis added). "Opt-Out" is defined as "only persons and entities within the Damages Class

who file a timely and appropriate written request for exclusion from the settlement in accordance with the exact procedures set forth in the Class Notice or are excluded from the Damages Class." (Doc. # 2610-2 at 17 ¶1(jjj)). The Long Form Notice regarding the Settlement also only discusses the option of excluding oneself from the Damages Class. (Doc. # 2611-1 at 96, 104). It states that a class member can "Ask to be Excluded ("Opt Out") (Damages Class Only)." (Doc. # 2611-2 at 96). However, in other places, the Settlement contemplates that Opt-Outs from the damages class also opt out of the Second Blue Bid relief. The Settlement and the previous notice were less than clear that Self-Funded Sub-Class members were able to opt out of the divisible Second Blue Bid relief. So, supplemental notice that makes this point clear is required. Having said that, supplemental notice is only required to be sent to Self-Funded Accounts because they are the only class members who may be entitled to the Second Blue Bid and they may not have been aware of their ability to opt out of that relief.

Several objectors also raised questions about how the release that Settlement Class members will provide pursuant to Paragraph 32 of the Settlement Agreement will affect the ability of those who opt out of the Self-Funded Sub-Class to pursue individualized claims for injunctive relief, and specifically claims for a second or for additional Blue bids. Paragraph 32 provides as follows:

> 32. **Released Claims and Covenant Not to Sue**. In addition to the effect of any final judgment entered in accordance with this Agreement, upon the Effective Date as set out in Paragraph 8, and in consideration of the Injunctive Relief and payment of the Settlement Amount into the Settlement Fund, and for other valuable consideration, the Releasors shall be deemed to have, and by operation of the Final Judgment and Order of Dismissal shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims against any and all of the Releasees. Persons or entities in both the Injunctive Relief Class and the Damages Class release all Released Claims. Persons or entities in the Injunctive Relief Class but not the Damages Class, release only claims for equitable or injunctive relief, provided that persons or entities that are within the definition of the Damages Class release any claims for damages that may be asserted by persons or entities

7

>(including dependents and beneficiaries) who claim by, for, under, or through a Damages Class member or the Commercial Health Benefit Product that a Damages Class member purchased, was covered by, or was enrolled in.
>
>The Parties intend that the releases in this Agreement be interpreted and enforced broadly and to the fullest extent permitted by law. Each Releasor shall be deemed to have released all Released Claims against the Releasees regardless whether any such Releasor ever seeks or obtains by any means, including without limitation through the Claim Process, any distribution from Settlement Fund. Class Representatives and Settling Defendants acknowledge, and Settlement Class Members shall be deemed by operation of the Final Judgment and Order of Dismissal to have acknowledged, that the foregoing waivers and releases were separately bargained for and a key element of the settlement of which these releases are part.

(Doc. # 2610-2 at 48-49).

The release provided under the Settlement Agreement is, by its own terms, to "be interpreted and enforced broadly." (Doc. # 2610-2 at ¶ 32). However, all parties agree that members of the (b)(2) Injunctive Relief Class release only their claims for equitable and injunctive relief that is indivisible. Therefore, the release provided by the members of the Injunctive Relief Class will not bar any claims for *individualized* relief by a class member who opts out of the damages and divisible injunctive relief class. *See, e.g., West Morgan-East Lawrence Water and Sewer Authority v. 3M Company*, 737 F. App'x 457, 466-467 (11th Cir. 2018) (concluding that the district court abused its discretion by certifying a settlement class under Rule 23(b)(2) that purported to release individualized damage claims of class members).

Stated another way, a Rule 23(b)(3) opt out reserves the right to pursue divisible relief including monetary relief and divisible injunctive relief. Divisible injunctive relief may include the right to pursue a Second Blue Bid subsequently filed in litigation. The parties acknowledge that, based on a claimant's individual business as well as the facts and circumstances of the claims, a Rule 23(b)(3) opt out may pursue divisible injunctive relief that includes possible additional Blue bids. Whether such a remedy is merited will depend on the circumstances surrounding the

individual claimant's claim. The relief a Rule 23(b)(3) opt out may pursue is limited only to the extent that such relief may not infringe on the Rule 23(b)(2) indivisible injunctive relief approved by the court.

### III.     Conclusion

In light of the foregoing, Subscriber Plaintiffs' Motion for Supplemental Notice to Self-Funded Accounts (Doc. # 2885) is **GRANTED**. It is further **ORDERED** as follows:

1. Supplemental notice, in the form attached at Exhibit C to the Declaration of Jennifer M. Keough Regarding Supplemental Notice To Self-Funded Accounts (Doc. # 2885-1), and as modified in Subscribers' Reply Brief in Support of Motion for Supplemental Notice to Self-Funded Accounts (Doc. # 2894 at 5-6) and the Joint Stipulation Regarding the Proposed Supplemental Notice to Self-Funded Accounts (Doc. # 2896) ("Supplemental Notice"), **SHALL** issue to Self-Funded Entity Accounts (i.e., Self-Funded Accounts themselves not including Members thereof) to make explicit that, if they opt out of the 23(b)(3) Class (sometimes referred to as the "Damages Class"), they retain the right not only to seek monetary damages, but also to seek individualized injunctive relief, which may include a Second Blue Bid or other such individualized injunctive relief, depending on the circumstances surrounding the Self-Funded Entity Account's claim. As members of the Rule 23(b)(2) Injunctive Relief Class, Self-Funded Entity Accounts will still release all other claims for declaratory or indivisible injunctive relief that are released under the Settlement Agreement.

2. As outlined in the Declaration of Jennifer M. Keough regarding Supplemental Notice to Self-Funded Accounts, supplemental notice **SHALL** issue through direct mail and email notice, a broad-reaching digital media campaign tailored to business entities, and media placements in industry e-newsletters, as well as an internet search effort.

3. With respect to direct notice, postcard notice **SHALL** be mailed to all Self-Funded Entity Accounts for which Settling Defendants have provided mailing addresses to JND and which Settling Defendants have identified as Self-Funded Entity Accounts to JND (estimated to be approximately 195,000 entities), and an additional email notice will issue to those for whom an email address is available. JND **SHALL** also institute a digital media campaign consistent with the Supplemental Notice Plan.

4. Any Self-Funded Entity Account that previously filed a claim and that subsequently submits a valid Exclusion Request to opt out of the Rule 23(b)(3) Class pursuant to this Order **SHALL** have that previously filed claim automatically withdrawn. Only Self-Funded Entity Accounts may opt out in connection with the Supplemental Notice Plan; no other person or entity may opt out at this time.

5. Pursuant to the form of the Supplemental Notice, neither the original claims filing deadline of November 5, 2021 nor the original objection deadline of July 28, 2021, shall be extended. Any objections to the Supplemental Notice or Supplemental Notice Plan **SHALL** be filed by the Opt-Out Deadline identified herein. No objections shall be permitted other than to the Supplemental Notice or Supplemental Notice Plan. The court approves the following timeline for the Supplemental Notice Plan, running from the date of this Order:

| Day 42 | Notice Efforts Completed |
| --- | --- |
| Day 87 | Opt-Out and Objection Deadline |
| Day 95 | Deadline for Settlement Class Counsel to file motion certifying compliance with this Order |

6. In light of the foregoing, the court **WILL NOT** resolve Subscriber Plaintiffs' motion for final approval until after supplemental notice is complete, and the renewed opt-out

period for Self-Funded Entity Accounts is closed. The court **RESERVES** the question of whether subsequent briefing or reports are necessary after supplemental notice occurs.

7. The previously submitted objections relating to the inability to opt out of the Second Blue Bid injunctive relief are **OVERRULED**.

**DONE** and **ORDERED** this February 4, 2022.

_____
R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE