1          IN THE UNITED STATES DISTRICT COURT

2             NORTHERN DISTRICT OF ALABAMA

3                  SOUTHERN DIVISION

4

5  IN RE BLUE CROSS BLUE SHIELD      CASE NO. 2:13-cv-20000-RDP
   ANTITRUST LITIGATION MDL 2406
6

7                   *  *  *  *  *  *  *  *

8                  STATUS CONFERENCE

9                   *  *  *  *  *  *  *  *

10

11        BEFORE THE HONORABLE R. DAVID PROCTOR, UNITED STATES

12  DISTRICT JUDGE, at Birmingham, Alabama, on Monday, May 16,

13  2022, commencing at 9:42 a.m.

14

15  APPEARANCES:

16  SPECIAL MASTER:          Edgar C. Gentle III
                             Attorney at Law
17                           GENTLE TURNER SEXTON & HARBISON
                             501 Riverchase Parkway East, Suite 100
18                           Hoover, Alabama 35244

19
    IN PERSON:               David Benck
20                           Alexander McInnis Boies
                             David Boies
21                           Swathi Bojedla
                             W. Tucker Brown
22                           Carl S. Burkhalter
                             Erin C. Burns
23                           Warren Burns
                             U. W. Clemon
24                           Charles J. Cooper
                             Gregory L. Davis
25                           Douglas A. Dellaccio, Jr.

```
 1    APPEARANCES, CONTINUED:

 2                        Karin DeMasi
                          Michael C. Dodge
 3                        Jay Ezelle
                          Sarah M. Gilbert
 4                        David J. Guin
                          Michael E. Gurley
 5                        Katherine A. Harbison
                          Michael D. Hausfeld
 6                        Christopher T. Hellums
                          Craig A. Hoover
 7                        Hamish Hume
                          John M. Johnson
 8                        Megan Jones
                          Edith M. Kallas
 9                        Lauren R. Kennedy
                          Cavender C. Kimble
10                        Cason Kirby
                          Amanda Klevorn
11                        Donald D. Knowlton, II
                          Jonathan S. Mann
12                        David Markewitz
                          Patrick McDowel
13                        R. G. Methvin, Jr.
                          W. Daniel Miles, III
14                        Jess R. Nix
                          Dennis G. Pantazis
15                        Gwendolyn C. Payton
                          Myron C. Penn
16                        Michael R. Pennington
                          Aaron S. Podhurst
17                        Ben Presley
                          Barry A. Ragsdale
18                        Thomas Richie
                          Robert B. Roden
19                        Julia Smeds Roth
                          Nicholas B. Roth
20                        Richard P. Rouco
                          Emily Myers Ruzic
21                        Robin Sanders
                          Cyril V. Smith, III
22                        Todd M. Stenerson
                          Tammy McClendon Stokes
23                        James M. Terrell
                          Joseph M. Vanek
24                        Michael Velezis
                          Trey Wells
25                        Joe R. Whatley, Jr.
```

```
 1   APPEARANCES, CONTINUED:

 2                              J. Mark White
                               Helen E. Witt
 3                             E. Kirk Wood, Jr.

 4
     VIA VIDEOCONFERENCING:   Lauren Azzopardi
 5                            Patrick Bachman
                              Kitty Rogers Brown
 6                            Justine Casey
                              Kathleen Chavez
 7                            Lee Deneen
                              Augusta Dowd
 8                            Dave Gaertner
                              Michelle Heikka
 9                            Desmond Hogan
                              Elizabeth Jose
10                            Casey Lott
                              Hope Marshall
11                            Rebecca McKinney
                              Robert Meyer
12                            Michael Naranjo
                              Richard Nix
13                            Allen Page
                              Henry Quillen
14                            Heidi Raschke
                              Harold Reeves
15                            Tracy Roman
                              Patrick Sheehan
16                            Scott Burnett Smith
                              Kathleen Sooy
17                            Andrew Stone
                              Jeff Zeiger
18
     VIA TELEPHONE:           Elizabeth Pollock Avery
19                            Timothy Battin
20                            Eric Belin
                              Jack Brady
21                            Virginia Buchanan
                              Reed Coleman
22                            Steve Dampier
                              Karen Dowd
23                            Michael Ford
                              Nina Frazier
24                            Dino Gankendorff
                              John Gravante
25                            Joey James
```

```
 1   APPEARANCES, CONTINUED:

 2                        Ed Kilpela
                         Casey Lott
 3                        Mahaley McInnes
                         Rebekah McKinney
 4                        Patricia Murphy
                         Elaine Nichenko
 5                        Sean O'Connell
                         Ami Swank
 6                        Charles Thompson

 7

 8

 9         The proceedings were reported by a stenographic court

10   reporter.  The transcript was produced using computer-aided

11   transcription.

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1           (The following proceedings were heard before the

2    Honorable R. David Proctor, United States District Judge, at

3    Birmingham, Alabama, on Monday, May 16, 2022, commencing at

4    9:42 a.m.)

5           THE COURT:  All right.  Good morning.

6           COUNSEL IN UNISON:  Good morning.

7           THE COURT:  How are y'all doing?

8           MR.RAGDSDALE:  Good.

9           MR. BOIES:  Very well.

10          THE COURT:  Nothing like starting off a Monday morning

11   in the courtroom on Blue Cross Blue Shield.  And that's what

12   we're here in, in the In Re Blue Cross Blue Shield Antitrust

13   Litigation, 13-CV-20000.  The Court set this date for a status

14   conference.  The Special Master circulated an agenda through a

15   report to the Court and parties.

16          Any amendments to the agenda from anyone?

17          (No audible response.)

18          THE COURT:  All right.  First we'll take up the status

19   of the subscriber track cases.  Who wants to lead that off?

20          MR. BOIES:  I will, Your Honor.

21          THE COURT:  Okay.  Good morning, Mr. Boies.

22          MR. BOIES:  Good morning, sir.  It's a pleasure to be

23   back in person.

24          THE COURT:  Yes.  This is the first time in Birmingham

25   since COVID; right?  Or second?

1          MR. BOIES:  The second time.

2          THE COURT:  Second time.  Sorry.

3          MR. BOIES:  Second time.  Second time.

4          THE COURT:  I had to do my math real quick.  I've been

5    traveling a lot, so I'm losing track of your travel.

6          MR. BOIES:  I think we are -- as Winston Churchill

7    once said, I think we're past the beginning of the end, and I

8    think we're getting close to the end.  I think the real

9    question is whether the Court thinks it needs any additional

10   briefing or whether any of the objectors or the parties

11   believe that the Court needs additional briefing before you

12   proceed to make your decision.

13         THE COURT:  All right.

14         MR. BOIES:  We've obviously explored the issues in a

15   lot of depth both in briefing and in hearings.  I think if

16   there is additional briefing, we could do it very quickly.  I

17   think that with respect to the appellate schedule, if anybody

18   does appeal, I think we would like to get this resolved in

19   time so that it can get moving and it doesn't sort of bleed

20   over into subsequent years.

21         THE COURT:  Right.

22         MR. BOIES:  So if there were going to be additional

23   briefings, I think we would urge that it be done in a week or

24   so.  I think everybody knows --

25         THE COURT:  And I take it your position would be that

1    if there is additional briefing, all that is necessary to be

2    briefed are the issues raised by the Court previously and the

3    re-notice, those cabinet of those issues.

4         MR. BOIES:  I think it's cabined by that.  I think

5    it's also cabined by those remaining objectors.  As the Court

6    may be aware, a number of the potential objectors or people

7    who indicated they might have objections have now opted out.

8    So I think we have a limited number of remaining objectors.

9    So I think it's cabined both as the Court indicated but also

10   just by, as a practical matter, what potential objectors we

11   have remaining.  And the Court may want to just inquire of

12   those objectors whether they think they need to have anything

13   more to say than they've said already.  But from our

14   perspective, I think we're ready to go, and if -- and

15   obviously we leave to the Court whether the Court thinks

16   additional briefing would be useful.  But if the Court thinks

17   additional briefing is useful, we'd like to do it as, really,

18   expeditiously as possible.

19        THE COURT:  All right.

20        MR. BOIES:  Thank you.

21        THE COURT:  I take it the Blues would agree to that?

22        MR. ZOTT:  Yes, Your Honor.  David Zott on behalf of

23   the defendants.  We do agree with that in the sense that we've

24   actually taken back a look at all the briefing here over the

25   last couple days, Judge, and it seems that every issue's been

1    fully briefed, in our view, and --

2         THE COURT:  What about on the re-notice?  Anything

3    that needs to be said to the Court about that and, for

4    example, on an aggressive briefing schedule or not?

5         MR. ZOTT:  On what issue, Your Honor?

6         THE COURT:  The re-notice issue.  The Court directed

7    the parties to re-notice certain --

8         MR. ZOTT:  Our -- yeah.  Our view is no in the sense

9    that we did actually brief it before the Court issued its

10   order.

11        THE COURT:  Right.

12        MR. ZOTT:  We had full briefing there.  Everyone had

13   an opportunity.  The Court issued the order, and you said

14   that the only objections would be to the form of the notice.

15   There was no objection to the form of the notice, so at this

16   point --

17        THE COURT:  That's what I'm getting at.

18        MR. ZOTT:  Yeah.

19        THE COURT:  As I understand it, there are no -- and

20   this is a question for everybody here.  Any objections to the

21   form of the notice?

22        MS. JONES:  Your Honor, Megan Jones, for the

23   plaintiffs.  There were no objections received.  We did open

24   that up in the supplemental notice and no one objected.

25        MR. ZOTT:  Right.

1          THE COURT:  Okay.

2          MR. ZOTT:  So that's our view, Your Honor.  And,

3     obviously, if there's some issue that Your Honor feels like he

4     would like to hear from us on, that's a different case.  But

5     otherwise, we'd agree, either no briefing or let's move fast.

6     So, thank you.

7          THE COURT:  And when we say "form of the notice," I

8     guess I'll just broaden it for safety's sake to say the -- any

9     deleterious effect of the re-notice.  No concerns, arguments,

10    objections about that?

11         MS. JONES:  Correct, Your Honor, we received no

12    objections to the form.

13         THE COURT:  Okay.  All right.  And we have objectors

14    here.  You don't have to speak.  I just want to make sure that

15    you have an opportunity to speak.

16         All right.  I don't know if we need additional

17    briefing.  I take it everybody agrees that what we have in

18    place before the notice went out is sufficient for the Court

19    to be informed about the issues it would have to resolve as

20    part of any order and memorandum opinion on fairness of the

21    settlement; fair?

22         MR. BOIES:  We think so, Your Honor.

23         MR. ZOTT:  We do as well, Your Honor.

24         THE COURT:  All right.  I'm choosing not to caucus

25    with subscribers and Blues on the subscriber issues because

1    there are objections and because of the stage we are in terms

2    of the posture of the case.  And the parties have been --

3    parties on all three sides of the case, if you will, have been

4    very -- have really worked with the Court in terms of using

5    caucuses in the right way, in my humble opinion.  I think

6    those have moved the ball, but I hope you all understand and I

7    think you agree that we can still caucus on the provider side

8    of the case but probably ought not to do that anymore on the

9    subscriber once there was a request to approve the settlement

10   put before the Court.  So we've kind of, for the most part,

11   stopped that.  That makes me raise this question here in the

12   public hearing, and that is where we stand on the common

13   benefit allocation report, really more of a plaintiffs' side

14   issue.  I don't think the defendants are going to weigh in on

15   this one unless there's something you like or really don't

16   like.  Just kidding.

17          All right.  Anything further I need to take up on

18   that?

19          MR. BOIES:  I don't think so, Your Honor.

20          THE COURT:  That's what I was thinking, too, but you

21   understand why I asked.

22          MR. BOIES:  Absolutely.

23          THE COURT:  All right.  All right.  Anything else,

24   including, for the good and the welfare, on the status of the

25   subscriber track cases?

1          MS. JONES:  Your Honor, Megan Jones, for the

2     subscriber plans.  We do have a pending motion for your

3     approval at Docket Number 2919.

4          THE COURT:  It just was filed.  I'll grant that.  I'm

5     going to grant that.  We'll put an order out on amending --

6     just to make sure that proviso is in there for the start date

7     for some of those matters.

8          MS. JONES:  Correct.  It's a timing issue, Your Honor,

9     and it's a minor change.

10          THE COURT:  Yes.  Any objection, before I grant that,

11     from anyone?

12          MR. LAYTIN:  No, Your Honor.

13          THE COURT:  All right.  I think that was more

14     ministerial than anything else, but I'll -- we'll be getting

15     an order out on that, if not today, tomorrow.

16          MS. JONES:  Thank you.

17          THE COURT:  Yes.

18          Okay.  On to the provider side.  Let me hear from the

19     parties first on the providers' side, and then I have a few --

20     maybe a few questions.

21          MR. WHATLEY:  Judge, it's Joe Whatley, for the

22     providers.  It is our first time in Birmingham since COVID

23     started and it's good to be here in person.  We spent the

24     weekend with my mother in south Alabama before coming here,

25     and she said to tell you thank you for setting this hearing to

1    bring us down here.  We did get down to see her some during

2    COVID, but she said to tell you thank you for setting the

3    hearings.  I think she'll --

4             THE COURT:  She's one of the few moms who likes it

5    when I set these hearings.  Most moms don't want their

6    "whoever" traveling on to Birmingham.  But anyway.

7             MR. WHATLEY:  Well, she's now up in Montgomery, so

8    she's happy for you to set a hearing here in Birmingham and

9    get us to Montgomery first.

10            THE COURT:  Very good.

11            MR. WHATLEY:  And, Judge, I think you're aware of

12   everything going on in our case, and I suppose the best thing

13   is whatever questions you have we'll respond to.  And if there

14   are difficult questions, either Edith or Barry will respond to

15   them.

16            THE COURT:  All right.  Very well.  How about from the

17   Blues?

18            MS. DEMASI:  Nothing in addition.  The motions are

19   under consideration, and I'm happy to answer any questions,

20   Your Honor.

21            THE COURT:  All right.  So I do have a few questions.

22   Both -- so I asked the parties -- so we are very much going to

23   continue on the two tracks running parallel with each other.

24   I shouldn't say two tracks -- the two approaches -- the

25   litigation approach and the mediation approach.  And I notice

1   we have our highly honored mediator on my screen right now,

2   who is sitting at his childhood camp that he used to attend.

3   Seems like every time I talk to him, he's at that camp.

4          Good morning, Bob.

5          MR. WHATLEY:  I think he's muted.

6          THE COURT:  Yes, that's all right.  He's going to stay

7   muted.  He knows when to stay muted.

8          MR. MEYER:  I could offer to change the background to

9   the north shore of Maui.

10         THE COURT:  There we go.  Thank you.  I want you to

11  eventually change the background to the finish line, but

12  that's a different story.

13         All right.  So we're going to continue marching along.

14  My job is, obviously, the litigation side.  I'll leave the

15  mediation side to Bob, assisted by Kip, but my question is

16  this:  Both sides have -- I asked both sides, Hey, why don't

17  you pick out -- because both sides were giving me some

18  feedback about all these wonderful rulings I made in this

19  case -- is there anything you'd want me to revisit or

20  readdress?  And both sides landed, as I understand it, on

21  class certification, including Daubert issues and standard of

22  review.  I'm happy to do that.  Do we need any additional --

23  because we terminated those motions, as you recall, and -- but

24  they've all been briefed.  We're starting to tackle those

25  things.  I just want to make sure everybody has an opportunity

1    to be heard.  I take it both sides are comfortable with me

2    proceeding based upon the briefing we had on the terminated

3    motions and we don't need anything else from either side on

4    this?

5          MR. WHATLEY:  Yes, sir.  I think you're now talking

6    about class certification and related motions, and the answer

7    from the providers is yes.

8          THE COURT:  Okay.

9          MS. DEMASI:  And, Your Honor, from the Blues, we

10   agree.

11         THE COURT:  All right.  So, you know, in New York, at

12   our -- one of our last conferences a few months ago --  Let me

13   back up.  Here's how I'm kind of seeing things right now.  We

14   have a number of balls in the air on the providers' side, and

15   we've prioritized on the subscriber and the provider side

16   earlier on in the Alabama cases.  But we also did global

17   discovery on all the cases before we focused on the Alabama

18   cases and perhaps to some degree did both at the same time,

19   focused on Alabama cases but let the parties -- allowed the

20   parties to proceed on discovery and some motion practice on

21   the entire national discovery issue regarding the MDL issues

22   presented to the Court in 2013.

23         I guess my question is this:  At some point we're

24   going to have to move to what it seems to me I'd be handling

25   is an Alabama -- some Alabama rulings and perhaps a national

1    injunction issue that I think the providers want me to take

2    up.  There's a lot of other damage issues, though, and perhaps

3    specific injunction issues, though, that relate to the other

4    cases that are associated in this case that have come in and

5    been transferred.  At some point, if I'm working on nationwide

6    injunction and Alabama damages, for example, and maybe some

7    specific injunctive -- and I'm keeping all options open here

8    when I say this -- some specific Alabama injunction issues

9    that the providers might want the Court to entertain, all

10   these other cases are just sitting there in orbit waiting;

11   right?  And we're essentially, to some degree, treating the

12   Alabama cases as the bellwether on damages and taking up the

13   nationwide injunction claims that the plaintiffs want us to

14   take up.  Why would we keep those cases in orbit if it's

15   likely I'm never going to be making rulings on those?  They're

16   going to have to be addressed, and I -- you know, if we were

17   to get to a certain point where we know it's time to decouple

18   this litigation -- because I don't think it makes sense for me

19   to be dealing with specific damage issues on these other cases

20   and specific equitable or injunctive relief issues on these

21   other cases.  That needs to go back to the transferor judges

22   after we've allowed you to do the global discovery and global

23   motion practice you wanted to handle.  Why wouldn't we get to

24   that point sooner rather than later to decouple the MDL, send

25   those cases back, or at least suggest the panel send those

1   cases back, and I'll handle what I'm going to handle anyway?

2   And we could -- the different judges handling those things can

3   choose to treat us as a bellwether or not.

4           MR. WHATLEY:  Judge, from the provider standpoint,

5   what we would suggest is this:  When you reach the point where

6   you think remand may be appropriate, we would suggest that the

7   parties meet and confer and see what we can agree on in terms

8   of the submission to you.  Beyond that, both sides submit to

9   you the way we think you should handle remand and --

10          THE COURT:  Or suggest remand.  I don't get to handle

11  it.

12          MR. WHATLEY:  True, true.

13          THE COURT:  But I understand what you're saying.

14          MR. WHATLEY:  But -- and then to the extent we

15  disagree, both sides would submit proposals to you --

16          THE COURT:  Well, I guess my question is, why wouldn't

17  I start you on that process now?

18          MR. WHATLEY:  Well, I think you can.  I think what you

19  ought to do as a first step is have the parties confer on it,

20  have the parties make submissions to you on how to handle it,

21  and maybe at the next time you bring us down to visit my

22  mother, you -- we have a discussion directly with Your Honor.

23          MS. DEMASI:  Your Honor, we would be happy to meet and

24  confer with the providers about this.  I think that our

25  perspective is that, as the MDL court, there were still some

```
1   matters that remain for pretrial coordinated proceedings, and

2   we would be happy to work with the providers to identify those

3   where there's agreement and then try to find any areas of

4   disagreement.

5           THE COURT:  That's probably the thing I would like you

6   to do is, all right, let's see if you can agree and then we'll

7   see if I can agree.

8           MR. WHATLEY:  True.

9           THE COURT:  But we'll start with whether you agree on

10  what remaining coordinated pretrial matters ought to be taken

11  up by the Court under 1407.  And if you have a -- if you can

12  agree on that, then you at least increase the odds that I

13  might agree with each of you.  But what -- I guess that's my

14  question is, is there any problem with starting that process

15  now?

16          MR. WHATLEY:  No, we'll be glad to meet and confer and

17  have those discussions and report back.

18          THE COURT:  Okay.  All right.  Okay.  I think that's

19  a -- that would be a healthy thing, from my perspective, for

20  us to be handling.  So that means we can be really working on

21  three fronts.  First front is I'm dealing with the issues that

22  I will end up handling long-term no matter what happens with

23  respect to panel remand.  Second, you are beginning the

24  process of asking, What does a suggestion to remand look like?

25  And, of course, the parties are -- I can make a suggestion to
```

```
 1   remand, and the parties are perfectly capable and able to give
 2   the panel your own input if you disagree with my suggestion.
 3   And then the third thing is our mediation -- our mediator can
 4   continue working with you on those other matters.  So it
 5   really becomes kind of a three-front offensive.
 6         (Telephone rings.)
 7         MR. RAGSDALE:  We can wait for them to answer that.
 8   But how soon would you like us to report back to you on that?
 9         THE COURT:  You know I'm going to ask you what your
10   feelings are on that.
11         MR. RAGSDALE:  I just I thought I'd -- it sounded like
12   I was interested in that.
13         MR. WHATLEY:  Did you notice Barry's new haircut,
14   Judge?
15         MR. RAGSDALE:  Oh, man.
16         THE COURT:  I knew there was something different about
17   him.
18         MR. RAGSDALE:  Thank you, Joe.
19         MR. WHATLEY:  No problem.
20         THE COURT:  All right.  You're forgetting I was an
21   associate with Barry at Sirote when Barry himself would talk
22   about Barry hair.  Do you remember those days?
23         MR. RAGSDALE:  I do indeed.
24         THE COURT:  All right.  What timing -- do you think a
25   report in 30 days would be overly aggressive?  You realize
```

1   this is soft.  If you're making substantial progress and you

2   need a little bit more time beyond the 30 days, you call Ed

3   and you get it.

4           MR. WHATLEY:  I was thinking that maybe a report, say,

5   a week after June 21st --

6           THE COURT:  June 21st.

7           MR. WHATLEY:  -- just to pick a date out of the air.

8           THE COURT:  Well, there's a federal holiday right

9   before that.

10          MR. WHATLEY:  Just 30 days is fine.

11          MR. RAGSDALE:  Thirty days.

12          MR. WHATLEY:  I'm overruled on that.

13          THE COURT:  Well, my point is, if you have 30 days,

14  that gets you to June 16, and there's a federal holiday right

15  there.  So actually, the 21st probably makes sense.  I don't

16  know if you were picking a date out of the air or actually

17  contemplating the fact you'd run right up on a federal holiday

18  before you'd have to make this report.

19          MR. RAGSDALE:  Thirty days would be fine.

20          MS. DEMASI:  I think 30 days sounds fine.

21          THE COURT:  Thirty days.  So that means I'll see it in

22  42.  All right.  Very well.

23          All right.  What else from the providers' side?

24          MR. WHATLEY:  I think we can take anything else up in

25  caucuses, unless you have questions you want us to --

1          THE COURT:  You're still allowed to caucus, yes,

2     that's fine.

3          MR. WHATLEY:  Yes, sir.

4          THE COURT:  Okay.  All right.  Very well.  Any other

5     issues the Court ought to take up?

6          (No audible response.)

7          THE COURT:  Okay.  Well, I continue to appreciate all

8     the great lawyering we get in this case.  We'll take up the

9     remaining issues the parties want to discuss with the Court in

10    caucuses, and I think Ed will just coordinate those.  We'll

11    move to the judicial conference room for those.  I don't think

12    we're -- you know, in the past we had a caucus here in the

13    courtroom with just the Blues and the subscribers together.  I

14    don't think that's necessary this time.  I think we've taken

15    up our business right here in front of everybody; right?

16    Okay.  Well, then, we'll move down to the judicial conference

17    room.  Ties are optional; okay?  See you then.

18          (Adjourned accordingly at 10:04 a.m.)

19

20

21

22

23

24

25

1                        C E R T I F I C A T E

2              I certify that the foregoing is a correct transcript

3     from the record of proceedings in the above-entitled matter.

4                        Dated: May 23, 2022.

5

6

7     _____
      Pamela G. Weyant, RMR, CRR, CCR
8     OFFICIAL COURT REPORTER

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25