FILED
2022 Sep-30  AM 09:38
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

IN RE:  BLUE CROSS BLUE SHIELD

ANTITRUST LITIGATION

MDL NO. 2406

MASTER FILE NO. 2:13-CV-20000-RDP

* * * * * * * * * * * * * * * * * * * * * * * * *

REPORTER'S OFFICIAL TRANSCRIPT OF
STATUS CONFERENCE

BEFORE THE HONORABLE R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE

MAY 23, 2019

9:30 a.m.

COURT REPORTER:
Teresa Roberson, RMR
Federal Official Court Reporter
1729 Fifth Avenue North
Birmingham, Alabama  35203

A P P E A R A N C E S

Special Master, Ed Gentle

Norman Bailey, Jr.
Swathi Bojedla
Tucker Brown
Carl Burkhalter
Travis Bustamante
Evan Chesler
U.W. Clemon
Greogy Cusimano
Gregory Davis
Karin DelMasi
Michael Dodge
Sarah Donnell
Edgar Gankendorff
John Gravante, III
Mark Gray
David Guin
Michael Gurley
Michael Hausfeld
Christopher Hellums
David Hodge
Desmond Hogan
Mark Hogewood
Craig Hoover
William Isaacson
Joey James
John Johnson
Megan Jones
Edith Kallas
Cavender Kimble
Daniel Laytin
Jonathan Mann
Patrick McDowell
Michael Naranjo
Jess Nix
Brian Norman
Dennis Pantazis
Joshua Payne
Gwendolyn Payton
Myron Penn
Aaron Podhurst
Peter Prieto
Barry Ragsdale
Gordon Rather, Jr.
Dennis Reich
Robert Roden

A P P E A R A N C E S

Tracy Roman
Julia Roth
Nicholas Roth
Stephen Rowe
L. Shane Seaborn
Patrick Sheehan
Cyril Smith, iII
Kathleen Sooy
Robert Spotswood
Todd Stenerson
Tammy Stokes
James Terrell
Kimberly West
Joe Whatley, Jr.
J. Mark White
Helen Witt
David Zott
Courtney Gipson

A P P E A R A N C E S (via telephone)

Eric Belin
Mike Black
Christina Crow
Nathan Dickson, II
Stephen Diprima
Augusta Dowd
Lynn Jinks, III
T. Jordan
H. Koch
Andrew Lemmon
Mahaley McInnes
Sean O'Connell
Carl Pittman
Elizabeth Pollock-Avery
Andrew Stone
Ami Swank
Jason Thompson
Greg Wright
Wilson Miles
Ed Bloomberg
Anthony Jackson
M. Zitfel
Henry Quillen
Sarah Cylkowski
Brooke Oppenheimer
Reed Coleman
John Briggs
Charles Sweeris
Lucie Cohen
Jonathan Redgrave
Pam Slate

* * * * *

P R O C E E D I N G S

* * * * *

THE COURT:  Good morning, everyone.  Thank y'all for coming.  Wasn't that a nice reception last night for Judge Putnam?  We're adjourned.

I don't think there's a lot of earthshaking things on the agenda this time, and that's going to happen from time to time because we're going to be meeting monthly now.

I'm just going to follow along with the proposed status conference agenda.  I may jump around a little bit, but I'm going to at least start off for the most part chronologically as the agenda items are presented.

Class certification application status.  Anybody want to be heard on that?

MR. WHATLEY:  Judge, Joe Whatley.  We filed motions on the 15th as required.  The expert reports were in, depositions on April 15th, expert reports have all been taken.

There are some additional merits reports that were filed on May 15th.  Those depositions are all scheduled. We're moving forward on it.

There's one glitch that's later on the agenda that we filed a motion to adjust the schedule.

THE COURT:  I'm going to grant that.  I think I have an order that will go out today.  Does that make sense?

MR. WHATLEY:  See how impressive I was, Craig?

MR. HOOVER:  Well done.

THE COURT:  That makes a lot of sense the way y'all restructured that.

MR. WHATLEY:  We didn't really know whether you wanted to go further on the status than a procedural report or --

THE COURT:  No, that was it.  I just thought if there's anything that's on your mind that I need to hear.

But I think that what happened was when Special Master -- when Ed put that on the item, I got the joint motion, and that's exactly the kind of thing I wanted to see if we needed to clean up anything as far as deadlines, making it dovetail.

By the way, while I'm on this subject, let me change gears for a minute.

Some of you may appear in front of Judge Bowdre, this is her courtroom, thank her when you are for letting us use the courtroom.  I do.  It'd be nice for her to hear from the Bar, too, that we appreciate her surrendering her courtroom to us periodically.  You all would have to have lottery tickets to get into mine.  Just a thought while it was on my mind.

Privilege log sampling.

MR. WHATLEY:  That's not my agenda, Your Honor.

THE COURT:  Aren't you well off because of that.

MR. WHATLEY:  Yes, sir.

MR. HOGAN:  Good morning, Your Honor.  Des Hogan for the defendants.

THE COURT:  Good morning.

MR. HOGAN:  I'll try to stay shorter than even Mr. Whatley was.  I think this is a short report.

The parties have complied with the process laid out in your docket number 2394, the 401 random samples and the 252 targeted or cherry-picked, as the Defendants would say, samples were made.

The submissions are going in to Justice Harwood tomorrow with regard to the backup documents from the Defendants, and I think the outcome of that will be a few weeks or months down the line as he works through those.  And until then, I think the process is proceeding at pace.

THE COURT:  Thank you.  Anything -- yes, Barry. Thank you.

MR. RAGSDALE:  Barry Ragsdale for the Plaintiffs. Ms. Jones has lost her voice or else she would be presenting this.  So I'm kind of like a white house spokesman:  I don't know the real facts and probably can't answer any questions.

THE COURT:  Which white house?

MR. RAGSDALE:  I'm not -- no comment about that, Judge.

I would obviously agree with Mr. Hogan's analysis, the process is working, it's going forward. Both Special Master Gentle and Special Master Harwood have put a lot of work in. Judge Harwood still has a lot left.

The only note we would make is that we continue to find smaller numbers but numbers of documents that are still on the privilege log that turn out to be duplicates of documents that had already been produced.

So we're continuing to see small glitches, they're getting smaller. We think this process will work through identifying what really needs to be produced and what does not.

THE COURT: I guess the question for both you two would be this and, Megan, write a note if you want to.

I don't think I need to be engaged in anything other than the usual process we've laid out, unless Justice Harwood or the parties raise something with me; otherwise, I'm trusting the process, as we say here in the state.

MR. RAGSDALE: I think that's correct. I mean, until the point in time you rule on sanctions, but other than that, you're fine.

MR. HOGAN: Up until he mentioned sanctions -- but I agree, Your Honor, right now, Justice Harwood, it's in his capable hands.

THE COURT: I have been very pleased with his

performance, both cost management and efficiency, but also just merits. The few times I have overruled him is just because he didn't have something that I was able to get from the parties when we major focused in on a particular document, it seems like.

MR. RAGSDALE: I think that's absolutely correct.

MR. HOGAN: Thank you, Your Honor.

THE COURT: I think y'all did well agreeing to him. Great job.

Seal team status, including work on documents subject to Blues' motion for a protective order.

MR. HOGAN: I'm up again.

THE COURT: You're up again.

MR. HOGAN: Your Honor, on the seal team status, I believe that Mr. Hogewood and Plaintiffs' counsel gave a report to Sally the other day on seal team issues. He is prepared, he is somewhere here, and prepared to answer any questions.

But I think with regard to just the sealing issue, the status update has been provided.

THE COURT: Okay.

MR. HOGAN: With regard to the motion for protective order, the Defendants have obviously filed a motion for protective order, and we're prepared to give argument on this, or if you want to set it, how would you like to proceed?

THE COURT:  I may do that by phone conference, if I have a question, so that we don't have everybody going for that.

MR. HOGAN:  Okay.  That's fine.

THE COURT:  All the Blues' inhouse counsel just took a sigh.

MR. HOGAN:  That's fine, Your Honor.  I'm prepared to make the argument whenever you are ready to hear it.

THE COURT:  I may do that.  I think that's probably the right way to go about it.

Let me ask you, while I have you, to make sure I have a couple of things in my mind.

MR. HOGAN:  Sure.

THE COURT:  Your basic position on some of these documents for which there was testimony, and I'm focusing in on the Cigna-Anthem trial aspect of things right now, I should have said that.  But your basic position is, even if something was discussed at trial, public and in a public forum, you're not necessarily moving to seal the trial transcript, it's more almost an in limine motion that that was a compelled disclosure and that I should not recognize that as any type of waiver or public disclosure of the document.

MR. HOGAN:  That's exactly right.  And just to give you, I won't give you my whole argument, but I will give you the soundbite on it.

The Eleventh Circuit in the case we cited, the Florida House of Representative case, said that when there's a compelled production of a document, that is not a waiver.

And the Shields case and the Smith case that we cited, the Fifth Circuit and the Southern District of Florida case we cited stand for the same proposition.

With regard to discussion publicly, that's a real important point in what Plaintiffs emphasize a lot.  We have looked at the law on this issue and there is a key difference between confidentiality, which is about sealing, and we are not asking for the trial transcript to be sealed, and the difference between confidentiality, which is lost when somebody talks about something, and privilege, which is what we're asserting.

There are three cases that we cite:  The Shields case from the Fifth Circuit, the case out of Florida, the Smith case, and the Blix Street case that we cite in our papers, all of which stand for that proposition.

THE COURT:  I don't want to force Barry or Megan into jumping up and saying --

MR. HOGAN:  Fair enough.

THE COURT:  -- yeah, but.

MR. HOGAN:  Understood.  We can talk about it more the next time we chat.

THE COURT:  I'm kind of focused in on that.  That's

an interesting question.  I think we will give you a chance properly to argue that.  I've just got to figure out -- and look, as long as we have that done by the time the thing is under submission for class cert, that's the finish line, right?

MR. HOGAN:  The sooner --

THE COURT:  Sooner is better than later, but that is the finish line?

MR. HOGAN:  I think that's exactly right.  We have to remember that the Plaintiffs are going to put in, I assume, rebuttal reports at some time.

Our position is before they --

THE COURT:  When are rebuttal reports due?

MR. WHATLEY:  August?  After you grant the motion, they will be due August the 30th.

MR. HOOVER:  The procedural motion.

THE COURT:  The one I already said I'm going to grant.  The one that Joe so ably championed.

MR. HOGAN:  So, Your Honor, just in fairness to the Plaintiffs to know whether they can rely on those documents before then.

THE COURT:  Sure, I agree.

MR. HOGAN:  So we have status conferences coming up.

THE COURT:  We don't have to get it done today.

MR. HOGAN:  That's exactly right.

MR. RAGSDALE:  Your Honor, we would simply say yeah, but, and reserve our argument for when you want to hear it.

THE COURT:  Does everybody feel like you papered it well enough for me to have a reasonably intelligent discussion with you about it at some point or is there anything else that you want one more lick on?

MR. RAGSDALE:  I think we're good on paper.

MR. HOGAN:  I think we are as well, Your Honor. Thank you.

THE COURT:  Thank you.  I would be remiss if I didn't say two things about the seal team.

One, continue to appreciate the collaboration there. That's been, I think, one of the, if we ever have a dissection of this MDL about the missteps or correct steps of the MDL transferee judge, I hope in the column of doing the right thing will be appointing that seal team.  They have done great work, made the process work well.  Mr. Hogewood and others, I'll commend you for that.

Now, we have been really nice and collaborative. I'm going to not say what I really think about Item D.

Who requested Item D?

MR. HAUSFELD:  We did, Your Honor.

THE COURT:  Did I stutter previously in this case when I said to everyone in this courtroom, I'm not setting a trial date until we pretry the case, and I'm not going to

pretry the case until we know exactly what we're trying.  I think I have been very clear about that.

And I think in fairness, Joe and Edith were the ones who were first wanting me to set a trial date, and I think that is exactly what I told them in this court.  Am I misremembering?

MR. WHATLEY:  You did, Your Honor, we keep asking --

THE COURT:  Don't ask again.

MR. WHATLEY:  Yes, sir.

THE COURT:  Don't ask again.  If you ask again, I'm going to DEFCON three.

Very clear, I don't do that in simple cases.  If one of you brings me a Title VII case, that is just a straight promotion or termination claim, I do not set a trial date in that case.  And I don't pretry the case until all dispositive motions are ruled upon and we know exactly what we're trying.

The other thing is, this case is much too complex to set some arbitrary finish line.

Now look, I think the parties have worked with me to get everyone moving, and I have said before, and I have said it publicly at some of these MDL conferences, I think I made some missteps early in the case by letting things go on too long and not forcing us into a particular track that moved things along, and I think we're in the right place right now, at least in my view we are.

So, please do not put that on another item.  And I'm going to direct the Special Master, if they ask for it to be an item, tell them no.

MR. GENTLE:  Yes, sir.

THE COURT:  Enough said about that.

I already dealt with Item E, right?  That order will go out today.

The issue of requesting duplicative questions of the same expert, is that an item for me or Judge Putnam and his swan song this afternoon or a little of both?  Actually, his first swan song.  He may have another one.  We'll see.  His wife and I are in negotiations.

MS. JONES:  Ms. Swathi is going to talk for me.

THE COURT:  Boy, your voice is not well today.

MS. BOJEDLA:  I was going to argue the motion against us but you took that right away from me.  Now I'll have to give it back to Megan the next time.

Your Honor, this is a request on behalf of Subscriber Plaintiffs.  We have submitted class reports for Dr. Pakes and Dr. Rubinfeld, and we have also recently submitted merits reports for each of those experts.  Their reports are largely identical.  We just submitted them at different times because of the different deadlines the Court had set.  And the depositions of both witnesses were largely merits focused in the first instance.  So we just wanted to

raise this issue in front of the Court to -- and we talked to Defendants about this and hopefully we can come to some sort of agreement.

But we just want to make sure that these experts are not being asked the exact same questions again in the hopes of getting somewhat slightly different answers at a later deposition because there's very little additional material in each of the reports.

So we just wanted to raise that for the Court.

THE COURT:  Let me ask you, do you perceive this as a -- this is a flag going up for me to keep an eye on?

MS. BOJEDLA:  I think that's all --

THE COURT:  Nothing to do yet, but let's keep an eye on this, and if these concerns materialize further, you may be filing something with me?

MS. BOJEDLA:  Yes, that's exactly right.  I think we just want to plant our flag on this issue, given the very, very minor differences between the class reports and the expert reports and the nature of the depositions that have already been taken so if we have to come back to the Court, this has already been previewed for you.

THE COURT:  Okay.

MS. BOJEDLA:  Thank you.

THE COURT:  Let me ask the Defendants:  The flag has been planted, is it a red flag or a red herring flag?

MR. ZOTT:  Judge, if we could ask the same question and get a different answer, I would love that.

But the fact is, we've got a lot to do and we're not interested in wasting time.  Our intention is not to be duplicative.  Obviously, when you file a report that's similar between class and merits, and we have to get into the same subject matter, the subject will be the same, but we have no interest in duplication.

THE COURT:  I didn't bite on that.  Wal-Mart versus Dukes has answered some of these questions already about merits versus the procedural determinations I have to make at Rule 23.

But I think you're right, your clients, if they weren't cost-conscious in the beginning of the case, they're cost-conscious now, I know that.

What I would say is, if you have any type of -- if you expect any dispute, let's just meet and confer before these deps are taken and make sure everybody is on the same page at least how you are going to proceed, I understand issues can be raised in a deposition.

Would it be all right with you if there is an issue like that that they feel strongly about, call me; if I'm not available, flag it and come back to it.

MR. ZOTT:  We can, Your Honor.  I don't think it's going to be an issue.

THE COURT:  I don't think so either.  But I understand -- I fully understand why the Subscribers would say let's -- we don't want to be calling Judge Proctor in the middle of the deposition if we haven't already told him, hey, this is a thing we're concerned about.  That makes sense to me.

But it also makes sense to me you just don't think this is going to end up being much of an issue.

MR. ZOTT:  I don't think so.

THE COURT:  Venue for future status conferences.  I ran this by Ed.  I think the number of status conferences going forward will be monthly.  I think they will continue to be regularly held in Birmingham.

What I am wondering is if there wouldn't be, and I think the one in June should be in Birmingham because we have not changed, everybody just expected it to be June in Birmingham.  We're not going to do anything different then.

But I'm just wondering if there won't be future status conferences down the road where, again, being sensitive to cost, it makes sense for a handful of people to leave Birmingham and go to one of what I think are kind of the three of the four hubs.  I have told Joe and Edith last night the bad news that Denver and I don't get along.  I don't know what it is, but I do not function well in Denver.  I think it was probably the fact that I grew up at sea level my whole life.

I was really thinking about occasionally hitting Chicago so the Blues don't have to parade down here and have a delay of their flight at O'Hare like yesterday, I think; New York, because we have both Providers and Subscriber counsel in New York; and D.C., because we have got a large contingent of all our Blue counsel in D.C. as well.

To be clear, not any type of shifting of the focus of things, certainly on a boondoggle, but just trying to be accommodating to the parties. That was the only reason I even raise it.

Mr. Ragsdale, you have risen. I take it you're not just stretching your legs.

MR. RAGSDALE: I am not, Your Honor. And I approach as, not as a representative of either the Subscribers or the Providers, but as your court-appointed liaison, simply to reinforce that we have a lot of Alabama counsel who would be inconvenienced and maybe made unavailable, and I, just on their behalf, I would ask that it become the rare exception, obviously, that we travel away.

THE COURT: I don't think it's going to be a regular feature, like every other month we're somewhere else. But I do think it makes sense to look at opportunities, because for six years they have gotten to stay home, and we do have phones. How many people do we have participating by phone today?

THE CLERK:  There were over thirty.

THE COURT:  We can accommodate how many?

THE CLERK:  I think it's unlimited.

THE COURT:  That's what I thought.

MR. RAGSDALE:  I understand that, Judge.  I also, of course, speak on behalf of some of the older people in the room who have trouble traveling.

But I think your approach is exactly correct that the majority of time will be here with possible exceptions, and I will now creak back to my chair.

THE COURT:  You better get back before I ask you to identify --

MR. RAGSDALE:  Thank you, Your Honor.

THE COURT:  -- that group you just referred to.  You know what a bunch of people just did, they just said, I wasn't going to go if they held it in Chicago, but now I am.

So that will be something the Special Master can work through.  Barry, if there's pushback on any particular setting that we propose, promptly let Ed know that.

MR. RAGSDALE:  Absolutely.

THE COURT:  Other issues?  We're flying through this docket.

MR. RAGSDALE:  Can I raise an issue not on the agenda?

THE COURT:  That's what "other issues" means.

MR. RAGSDALE: It has been pointed out to me that the July meeting date for our status conference coincides with the Alabama State Bar meeting, and if it would be possible to move that a little bit one way or the other.

THE COURT: That makes sense, actually.

MR. RAGSDALE: Thank you.

THE COURT: And I would, of course, be sensitive to anything we set that would conflict with any other group's schedule, we'll keep working on that.

MR. RAGSDALE: Thank you, Judge.

THE COURT: The only issue I'll share with you is I do start a four-week criminal trial in late June that will supposedly go through mid to late July. And when I'm in criminal trial for four weeks, yours is not the only other case I have got to catch up on. So July may be a little bit of a challenge, but we'll just try to make it work.

What other issues are there?

(No response)

THE COURT: Well, good to have everyone here. I guess we are going to do some caucuses. Why don't you talk with Ed about what order you want to proceed in. I take it we have everybody's continuing agreement that I can caucus with the tracks and the Blues and any other groups I see fit to? This would be the time where everybody would give a verbal say on the record.

(All agreed)

THE COURT:  Thank you.

MR. GENTLE:  Judge, I think we should talk to the Blues first.

THE COURT:  That is the way it will be then.  We're adjourned.

(Conference adjourned)

C E R T I F I C A T E


    I hereby certify that the foregoing is a correct transcript from the record of proceedings in the above-referenced matter.


_____
Teresa Roberson, RPR, RMR