FILED
2022 Sep-30  AM 09:56
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION


IN RE:

        BLUE CROSS/BLUE SHIELD
        ANTITRUST LITIGATION

        MDL 2406

* * * * * * * * * * * * * * * * * * * * * * * * * *


            REPORTER'S OFFICIAL TRANSCRIPT OF
                    MOTION HEARING
            IN CHAMBERS CONFERENCE CALL


        BEFORE THE HONORABLE MICHAEL PUTNAM
          UNITED STATES MAGISTRATE JUDGE

                OCTOBER 8, 2015.

                   3:00 P.M.


COURT REPORTER:
Teresa Roberson, RMR
Federal Official Court Reporter
1729 Fifth Avenue North
Birmingham, Alabama  35203

```
                          *  *  *  *  *
                   A P P E A R A N C E S
                          *  *  *  *  *
```

SPECIAL MASTER:

Ed Gentle, III
Gentle, Pickens & Turner
Two North Twentieth Building
2 North 20th Street, Suite 1200
Birmingham, AL  35203
205.716.3000
escrowagen@aol.com

ATTORNEYS OF RECORD:

Michael Naranjo
Megan Jones
Barry Ragsdale
John Martin
Chris Hellums
Emily Yinger
Mark Hogewood
E. Kirk Wood
Bill Butterfield
Lucie Cohen
Bruce Rogers
Kenina Lee
Carlos Hernandez
Josh Payne
Bill Simon
Chris Kimble
JT Malatesta
Kate Growley
Michael Naranjo
Anne Marie Hanson
Lucy Grey McIver
Sarah Donnell
Mark Hogewood
Ruth Johnson
Benji Bailey
Margaret Pepple

* * * * *
P R O C E E D I N G S
* * * * *

(In chambers.)

THE COURT:  Good afternoon, everybody.  This is Judge Putnam.  And we have scheduled the argument of the reconsideration of the order that I previously entered regarding discovery on the alleged spoliation issue.

Blue Cross of South Carolina has filed a motion for me to reconsider.

We had originally tried to set that earlier in the week, but because of the weather problems in South Carolina, it's been reset for this time.

So we're going to hear whatever arguments anyone wants to present with respect to that reconsideration.

Is someone present going to argue the motion on behalf of Blue Cross South Carolina?

MR. MARTIN:  Yes, Your Honor.  This is John Martin with Nelson, Mullins for Blue Cross of South Carolina.  And also want to thank you and Mr. Ragsdale and Mr. Butterfield for accommodating our request to postpone this hearing.  We appreciate it very much.

THE COURT:  Sure.  No problem at all.  I hope things are getting better in South Carolina.

MR. MARTIN:  Yes, your Honor, they are.

THE COURT:  Go ahead, sir.

MR. MARTIN:  Your Honor, we -- first, let me say that we understand the Court, we assume that it spent probably a great deal of time with all the papers on this motion, and we appreciate that.  And also your consideration of the in camera submission per the Court's request.

And we understand that the submission was a lengthy one because there are a lot of materials.

So, my primary goal here today is to make sure that I address those issues that are most important to you in making your ruling and answer any questions that you might have.

So, if you wish to direct me, I'm all ears; otherwise, I'll summarize where we are and stand by to answer any questions that you have, Your Honor.

THE COURT:  I guess the main question that has come to my mind in looking at the in camera submission, and certainly don't want to get into the contents of it, but is my understanding correct that that in camera submission, the entirety of it, was made available as the litigation hold in this case to the South Carolina -- the Blue Cross South Carolina employees that were responsible for preserving documents in the case, that that entire submission went to them?

MR. MARTIN:  That entire submission did go to employees, but different parts -- that submission can exist of legal hold memos and then some specific email communications, Your Honor, and so they are individually addressed to different employees who had legal hold responsibility, not every communication within our in camera submission would have gone to every employee, we had to look at each one to see who they went to.

But I think on almost all those cases it should be apparent from the face of the document and the submission.

THE COURT:  All right.  I guess my understanding of your motion for reconsideration is that on the two principle points that I tried to make that certainly -- and I understand that Blue Cross and Blue Shield of South Carolina disagrees with it -- and those two principle points that I tried to make were, first, with respect to the litigation hold itself that while it is true that between the corporate client, Blue Cross Blue Shield of South Carolina and its attorneys, communications between the corporate client and counsel would be covered by attorney-client privilege, but the distinction I tried to make is that once the corporation, in the exercise of its corporate responsibilities in management of itself, communicated

certain things to its employees, that that could in some instances, in many instances, amount to a waiver of the privilege.

And the analogy that I tried to draw, of course, was that if a corporate attorney -- if an outside attorney is engaged to write an employee handbook for a corporation and gives the corporation legal advice in connection with drafting that employee handbook, that while that process between the attorney and the corporate client would be privileged, when the corporation then turned around and sent that handbook out to its employees, the mere fact that it was drafted by an attorney would not make it privileged, that, at the point, either attorney-client privilege or work product privilege because at that point distributing to its employees, the corporation is engaging in ordinary, routine corporate management rather than seeking legal advice from counsel.

So that's the first point I tried to make.

The second, I concede to you, is much more -- is more subtle but it seems to me what I tried to say was, when you look at the origins and the rationale for the work product privilege, that its purpose as expressed by the Supreme Court in Hickman vs. Taylor years ago was to enable a lawyer to investigate and

prepare his case for representing a client in litigation.

And it seems to me that that is intended to preserve the ability of the lawyer to deal with the merits of the claim either for or against the client but not necessarily on ancillary matters like litigation holds and things of that sort, because the activity of the lawyer in assisting a client with a litigation hold is not intended to be mental impressions, conclusions or strategies with respect to the merits of the claim being asserted either for or against the client.

And I grant you that I could not find any authority out there drawing that distinction.  But it seems to me that it follows logically from the original rationale for the work product privilege as the Supreme Court explained it in Hickman vs. Taylor.

That's where we are.  And I'm happy to hear comments either for, against, or how idiotic those rationales were.

MR. MARTIN:  Well, Your Honor, we understand these are nuance issues and we appreciate the opportunity to discuss them.

With regard to your second point, and then I'll come back to the first.

You know, we also scowered the earth for any

legal authority drawing the distinction between ancillary matters and what truly means to be the part of the merits of the case.  And we can't find anything drawing that distinction.

As a practical matter, if you, you know, we certainly agree with Your Honor's ruling with regard to the Alston and Bird notes, that at that point there was anticipation of litigating a preservation issue and following that logic and following Hickman v. Taylor, those should be protected communications.

We think that by -- as you look at the hold communications that all came at the direction of counsel, and you can see from the hold communications that counsel are directly managing the hold directives, and also given the history of this matter, where plaintiffs, at the very outset of this case, asked about preservation and put it in play, and then Your Honor, given the general state of play in litigation today, where effectuating a comprehensive hold is very hard to do, and where there are lots of spoliation cases and allegations of spoliation against corporate clients and corporate litigants all over the country everyday, I think counsel in these types of cases are anticipating potentially having to litigate the issue of data preservation from early on.  And I think you can see

that -- those considerations in the face of the in camera submissions.

And so we think for the reason why the Alston and Bird communications were protected by attorney-client privilege, these communications were similarly protected -- not because they necessarily go to the merits of the case in terms of the allegations in the complaint, but there certainly was anticipation of potentially having to litigate preservation because it happens everyday across the country in these -- and the plaintiffs in this case asked about it at the very beginning.

So, for that reason, we don't think there's a distinction to be drawn for why the Alston and Bird notes would enjoy attorney work product protection and the communications that we submitted in camera would not.

Now, as it relates to those communications, I understand your point, and I'm going to the first principle that you talked about, which was -- what happens -- you may have, your example was, an attorney helping to draft an attorney handbook, yeah, I agree, those would be privileged communications there.  But that is intended to create a non-privileged communication.  It is intended to create a non-privilege

corporate policy that is then distributed broadly.

And if you look at the face -- if you look at the face of an employee handbook, they are not marked privilege, they are not a communication from a counsel to a client, they are not limited in distribution to those people who need to be -- to receive counsel relating to an ongoing legal matter.

I understand the example, but I think it's a very different situation.  These communications were privileged from the outset and were protected as privileged throughout the distribution process.  And I think that's -- I hope that is apparent from the in camera submission.  We think those are pretty distinguishable situations, Your Honor.

THE COURT:  Well, I guess the question that comes to my mind about, first, about distributing -- well, where counsel is faced with assisting a corporate client in creating and carrying out a comprehensive litigation hold, and I certainly agree with you that between counsel and appropriate representatives of the corporate client, those communications are both attorney-client privilege -- are attorney-client privilege.

But at what point does the action taken by the corporate client to put the litigation hold in place

with respect to its employees, at what point does that cease being attorney-client legal advice and simply managerial direction to its employees?

Clearly, if a corporation -- I say clearly, it seems to me that if a corporation gives managerial direction to its employees, that the communication of that managerial direction from employer to employee cannot be shielded by attorney-client privilege that exists between the employer and the employer's counsel unless you take the position that all of the employees that received that direction are effectively the same thing as the client.

And I'm always suspicious of the argument that all corporate employees come within the attorney-client privilege because that has the danger of shielding virtually every internal corporate communication behind the attorney-client privilege. And that seems to me to go too far on the attorney-client privilege.

So that seems to me to be the first question I have is, how do you distinguish between legal advice that counsel gives to a corporate client, and then that corporate client's dissemination of managerial direction to its employees; is it all privileged?

MR. MARTIN: Well, Your Honor, it's going to depend on -- and we're talking about this sort of in

hypotheticals right now, and I think it's going to depend on how different companies execute on their hold obligations.

But we do see is courts drawing distinction between litigation hold directions from counsel, drawing a distinction between those types of holds in the communications that we submitted in camera versus a company's regular records retention policy.

Almost all companies have policies that say, email will be kept this long, you know, claims records will be kept for seven years and other, you know, contracts and HR documents will be kept for eight years or whatever it is.

Those types of policies, that is, I think those fall within the gambit of what is managerial direction of employees and it doesn't go to a targeted group that are determined -- that are designed -- that are determined by attorneys.  It goes to everybody.

I don't think those will be privileged.  But I do think when you have that type records retention management structure in place and then a lawsuit is filed and attorneys then receive that lawsuit, evaluate the claims, they determine a much smaller group of employees and they have information that's at play and then they counsel those employees to retain their

documents, which is -- and then thus creating an exception to the -- sort of the public records retention policy within the company, that direction is privileged.

And I think that is entirely consistent with the directions that are in our in camera submission. And if we look at the purpose of those communications, they weren't to set a new records retention policy for all of Blue Cross Blue Shield of South Carolina, their intent was to identify specific employees who may have information that is at play with the claims and the defenses that Blue Cross intends to raise in this case and to counsel those employees to retain them.

I think those communications are privileged and distinguishable from general managerial policies.

THE COURT:  Well, again, I guess my question about that is this:  Even in the specific situation where there is a lawsuit and a specific request for a litigation data preservation, if the attorney for the corporate client takes over the day-to-day activity of communicating to the corporate client's employees, at some point that begins to look like the attorney is engaging in managerial activity as opposed to legal activity, and that's the -- I mean, I see your point, that you're trying, as the lawyer for Blue Cross Blue Shield of South Carolina, to make sure that the

employees of the client are fully cognizant of their duties for data preservation.

But I guess the distinction that I'm trying to get recognized is that that duty to direct the employees of the corporation belong to the corporate client and the lawyer stepping into the shoes of the corporate client to give that day-to-day managerial direction about what the employees are suppose to preserve, how they are going to go about preserving it, even why they are preserving it, things of that sort, begins to appear to me to be more managerial than legal.

MR. MARTIN:  Yes, Your Honor.  The communications that, you know, that we see on a regular basis with our client's employees, and specifically the types of communications that we submitted in camera, are, you know, reflect attorneys not stepping in to manage employees, because the employees -- their management structure for their daily jobs and their regular record retention outside of what's unique for this case, that continues and there is a separate managerial track for that and that is not disturbed.

But what these communications reflect is where an inhouse attorney is providing legal advice to the corporate client but that has to go to individuals, I mean, individuals are the ones who effectuate the

company's legal hold obligations and certainly the communications between the attorneys and those individuals to define that obligation and to follow up on that obligation because, you know, that certainly is privileged.

And, you know, I think what you see is, you know, initial memos that reflect attorneys saying, you know, I think these are the right people who have this information and guys, here's what's happening, this is a legal matter facing the company and, therefore, we need to do this and we need this information from you.

And then that evolves over time. Some of those employees may say, well, what about this or what about that or should we send this to this person.

Those are legal determinations as to what is within scope of the claims and defenses of the cases being made by attorneys and they are providing that advice and counsel to the corporate client's employees which is the only way to effectuate legal hold, it has to be done at a human level. That is completely separate.

Now, if, for example, and I don't know that we -- I don't think we have this situation, but if you have an attorney who is communicating to a manager and then a manager is then having communications with the board

members that is completely separate from a legal counsel, maybe that is different.

THE COURT: Well, I guess that's the point I'm trying to make. In order to preserve an attorney-client privilege, the confidential communication between the client and the counsel cannot be -- go outside that confidential relationship between counsel and the client.

And where the lawyer is no longer communicating with a particular manager, and then the manager turns around and gives managerial direction to his subordinates, when that process is changed whereby the lawyer bypasses the manager and gives managerial direction directly to the subordinates, does that not work a waiver of the attorney-client privilege because now, instead of giving legal advice to the client, you're now giving managerial direction to the employees of the client.

And that is what concerns me is that if we get to a position where everything -- that if a corporation wishes to give managerial direction to its employees, it simply has a lawyer do that and, therefore, all of those directions are privileged, then the internal directions and instructions that occur in a corporation all become privileged, we never get to see what a corporation does.

MR. MARTIN:  Well, I understand that hypothetical scenario, Your Honor, and we have to look at that.

But here we're talking about a very specific body of communication.  And those communications that we have submitted and that are at issue in this case do not reflect an attorney stepping in to management roles over employees.

What they do reflect is -- are privileged communication to direct employees at various levels who have been specifically identified to do certain things to meet the company's legal obligations and to preserve information, it's also needed for the company --

THE COURT:  Why would not that process be entrusted to a manager to do that communication rather than the corporation's lawyer doing that communication?

MR. MARTIN:  Because it is a legal function to identify what the claims and defenses are in a particular matter and to identify what types of materials were needed for both claims and defenses and then to counsel the corporate client by way of specifically identifying employees as to how to meet that obligation.

THE COURT:  I understand that.  And I would agree with you if what we were dealing with is that

counsel draws up a very complex comprehensive set of advice or rules and then delivers that advice to the corporation and then the corporation turns around on the basis of that advice and gives managerial direction to its employees.

But as I understand what happened here is, rather than counsel communicating legal advice to the client, the corporate client, counsel essentially took the position of being managers and worked directly with the subordinate employees.

And I'm wondering how that can be attorney-client privileged.

MR. MARTIN:  A couple of things, Your Honor. First, I think this goes to the very important distinction between records management policies and that type -- and those things that are handled within -- appropriately handled within the normal corporate managerial structure.

Certainly, I don't think Blue Cross of South Carolina and any company that I know of do they have attorneys just generally driving the company's retention of documents and other managerial decisions under the scenario that you talked about.

Here, we're talking about something that is much more specific and focused.  I understand -- there

could be a scenario where a company perhaps attempts to abuse the privilege in some sort of way to mask something, but that is not what we have here and that is not what is reflected by these memos.

And if you look at other cases including the Zubulake line of cases, what those cases emphasize is the importance of the role of inhouse counsel to identify what materials need to be preserved and to counsel their specific clients to do that.

So that obligation of counsel has been defined in case law and has been cited to in cases all across the country.

So, to do that work, those lawyers have to be involved, they have to have these privileged communications, they have to figure out what information is there, and they have to counsel clients to retain it or otherwise they would not be meeting their obligation of counsel under the Zubulake line of cases and its progeny there.

But here, what we see is a -- it's a lot of communications but they are all relating to this specific litigation. And they're relating to the specific set of employees and documents that need to be held and that's why I think this situation is clearly distinguishable from the type of abusive situation where

maybe there could be a problem but that's not what happened at Blue Cross of South Carolina.

THE COURT: All right. Anything else you want to add to that before I get the response?

MR. MARTIN: Not on those points, Your Honor.

THE COURT: All right. Mr. Butterfield, Mr. Ragsdale, I think it was Mr. Butterfield that originally argued this. Either of you wish to respond?

MR. BUTTERFIELD: Thank you, Your Honor. This is Bill Butterfield. I will respond on behalf of plaintiffs and Barry will correct me if I make some errors for sure.

So, Your Honor, you know, frankly, we don't see what all the fuss is about because Blue Cross South Carolina doesn't appear to be challenging the results of your September 2nd order, they appear only to be challenging the reasoning behind that order. And as such, in the first instance, the request to release falls far short of the requirements needed to be successful on a motion for reconsideration which, as we know in pretty much black letter law, that a motion for reconsideration involves an extraordinary remedy, it is to be used sparingly and the movant has to demonstrate one of three elements, either that there was a change in the controlling law or there was availability of new

evidence, and I'm going to talk about that in more detail in a minute, or there was clear or manifest injustice.

So I don't think Blue Cross South Carolina satisfies any of those elements, Your Honor.

And, you know, I suppose the one that comes closest is the new evidence that they put in to their motion for reconsideration and that's problematic in two respects, Your Honor.

First of all, the argument of Blue Cross South Carolina rests on facts that are gleaned from a document or documents that you have access to and counsel for Blue Cross of South Carolina has access to but we don't.

So it's really hard to respond to the so-called new facts that, you know, we don't even have access to, we don't have access to the documents that give rise to those facts.

And there's no attempt, Your Honor, to make a record allowing the use of these facts, there is no supporting declaration, there is just bullet points asserting supposed facts in their motion for reconsideration.

So, because we are not privity to those documents, or to any testimony that would come in the form of a declaration, we don't think the Court should

consider those facts.  We don't think the proper record foundation has been laid.

But, Your Honor, we don't think, frankly, that -- well, one other point on the so-called new facts.

So, for these to be proper in a motion for consideration, they have to be facts that weren't initially known at the time that the motion was briefed or argued.  These facts, obviously, were.

So Blue Cross could have made a record, they could have put back the record, they could have put a declaration in the record allowing you -- and a lot of their conversation between you and Mr. Martin just now could have been addressed in the original motion and plaintiffs could have briefed it and then allowed to make argument.

But the law is clear, Your Honor, that where facts could have been raised when a motion was originally argued but they weren't, then the facts are not proper on a motion for reconsideration.

But, Your Honor, you know, I was listening closely to the dialogue between you and Mr. Martin about whether or not these litigation hold documents were either privileged in the first instance or whether there's a waiver of the privilege because they were used in some sort of managerial fashion.

Respectfully, Your Honor, I don't even think we need to go there.  We laid out a very clear argument in our original papers and the argument rests on pretty strong legal juris prudence that support the view that when spoliation has been found, then that amounts to a waiver of litigation hold documents.

So I don't think you need to go and have, you know, go through the exercise of determining whether or not they used in a managerial fashion, the fact that you found spoliation, Your Honor, and that is not contested here, you found spoliation, automatically under these well-established principles, that amounts to a waiver of the privilege.

So that alone ought to make the documents available to the plaintiffs here.

But Your Honor has invoked an order which allows for in camera review, the plaintiffs are not contesting that, I don't know that Blue Cross South Carolina is contesting that, so, again, we're not sure what the fuss is about.

And I guess -- I will address any questions you have, Your Honor.  But in closing, we also think that -- and this is important in that you made certain findings in your order.  That order was based on the record before you.  Blue Cross South Carolina chose not to make

some of these facts or assert some of these facts in the record before you, so we think that your findings were consistent with the record before you, so we think that there was information in the record at that time, that the company and not counsel issued the litigation hold, we think there was information in the record at that time that the little litigation hold correspondence contained factual directives to suspend the deletion of certain systems, and both of those things were things that you held and we think you held correctly based on the record before you.

So for the reasons that I indicated, Your Honor, we think the motion should be denied, it falls far short of what's required for the extraordinary remedy on a motion for reconsideration, and with that, I'm happy to entertain any questions you have, Your Honor.

THE COURT:  I guess the question that comes to my mind is, even if technically there is some question about whether the Rule 59 standard for a motion for reconsideration is met for me, isn't that kind of mooted by the structure of 636(b)(1), that is, whatever I end up doing, either now or on the motion for reconsideration, or my earlier order or whatever, that all of that is reviewable by Judge Proctor and so,

essentially, strictly applying the standards for Rule 59 reconsideration are neither here nor there because Judge Proctor still retains the final ability to review what I have done.

MR. BUTTERFIELD:  Of course that is true.  And if there's an objection to your findings, then Blue Cross South Carolina decides to take it to Judge Proctor, of course that's true.

But again, I think -- I guess like my point, Your Honor, is that we can avoid a lot of this argument by simply following the law which Blue Cross South Carolina has not contested that where there is a finding of spoliation, that alone acts as a waiver of the privilege.

And you have not only -- so, your order, certainly you're entitled to make that order, but you have given Blue Cross South Carolina even more protection in that you are conducting an in camera review to parse out, I guess, items that would, in your view, reveal the advice of counsel that goes beyond that which is necessary to address the spoliation sanction issues that may or may not be brought in front of you in the future.

THE COURT:  All right.

MR. MARTIN:  May I speak to that or do you have

other questions of Mr. Butterfield?

THE COURT:  Before I get to you, is there anyone else, Mr. Ragsdale, or anyone else on the plaintiff's side that wish to say anything further?

MR. RAGSDALE:  I don't think so.

THE COURT:  All right.  Mr. Martin, go ahead.

MR. MARTIN:  Yes, Your Honor.  A couple of points.

On the procedural issue, I think you're right, this is certainly properly reviewable.  If you look at all of the cases cited in the plaintiff's brief regarding the standard for review and how the issue of new evidence plays into motion to reconsider, all of those cases were following a ruling on a motion for summary judgment after discovery had closed.  That is a very distinguishable situation from this case where we all know, and it was acknowledged in your order, that discovery is ongoing.  And, in fact, we have depositions scheduled that will shed light on things like the accessibility of tapes, on things like what may or may not have been on those tapes, and what may or may not have -- may or may not actually be spoliation, depending on the nature of the tapes and what they were used for.

All those things are still in play.  And that is -- and we would also point the Court to a very recent

case from Magistrate Judge Coody in the Bond vs. Hyundai case, it's 215 U.S. District Lexis 123415 decided September 16th of this year. And we're happy to send a copy of that, if that would be convenient to the Court. But it is a new case.

And there, I think that is much more akin to our situation, and there, Judge Coody was re-evaluating an order on a motion to compel where, in that situation, he acknowledges the Court simply misunderstood some of the facts that play in the motion to compel and when those facts were clarified in the motion to reconsider, he amended his order.

That is, we think, procedurally much more similar to where we are in this case. And for the reason that you stated and because of that approach, we think procedurally this motion is appropriate and Your Honor has the flexibility, of course, to do whatever you wish to do with your prior order.

Now, very quickly, on the issue of whether we're talking about new evidence or not. The thrust of our motion, Your Honor, was that there are certain statements, and we highlighted those in our brief, that appear to be factual conclusions that at this point and the point of the time that you issued the order, there was no record to support those statements. And in fact,

we think as discovery proceeds, there will be -- the facts will not substantiate what we think can be read as factual conclusions in that order and, therefore, we respectfully request that that order either be withdrawn after those factual conclusions or be held in abeyance until discovery can proceed.

Mr. Butterfield says, well, why all the fuss? Why is that a big deal?

It is a big deal because, in this case, some of the statements in the order start from a -- or at least appear to start from a presumption that legal hold communications from attorneys to corporate employees are just not privileged. And that that is a starting point. But for the analysis of the Blue Cross South Carolina hold, and potentially for other holds that had been issued by other litigants in this case, and that is part of what all the fuss is about and why it's important. And we ask the Court to carefully look at the factual statements that are in that publicly issued order and ask to re-evaluate whether there is anything in the record to support those statements.

And if you look at the plaintiff's brief, Your Honor, they don't point you to anything in the record that substantiate and provides a basis for the specific factual statements that we're asking Your Honor to

reconsider.  We think that speaks volumes.

Similarly, Mr. Butterfield said, if I understand what he just argued, and what they say in their brief, they really don't provide any authority to suggest that legal hold as a general matter aren't privileged, that attorneys can't have privileged communications internally to employees to effectuate a legal hold.

I think if there was solid case law out there to support that notion that Your Honor was asking me about, it would be in plaintiff's brief and Mr. Butterfield would be arguing that.  That is not what they argued.

What they're arguing, because I think they think this is a better foothold, is you find -- you go ahead and find spoliation and to find waiver based on spoliation.  That's a whole different basis and a whole different issue.  But the fact that they are not providing you authority to substantiate the prima facie legal statement that hold communications are managerial in nature and not privileged, that speaks volumes.

And we would ask Your Honor to consider that very carefully.

THE COURT:  The only thing I would like to get some clarification on that is, at least at the time of

the original motion hearing, it was my understanding that certain things, certain purported facts were not in dispute.  Principally, that a series of magnetic tapes that recorded email communications for a certain period of time had, in fact, been destroyed and for all intents and purposes cannot be now recovered by Blue Cross South Carolina.

Is there a dispute about that fact, however you want to call those tapes, backup, disaster recovery, whatever they are, that those tapes were, in fact, destroyed and cannot, in fact, now be recovered?

MR. MARTIN:  Your Honor, the fact that there was data on tapes and tapes was destroyed, that is set forth in the Alston and Bird report which we tender to the plaintiffs and we're not contesting those issues right now --

THE COURT:  I'm trying to figure out what are -- are there any facts that the parties agree to.  And that's -- principally I started from the notion that there were certain types of computer magnetic tapes that recorded backup information, disaster recovery information, whatever term you want to use, but recorded information and that the only place that information was recorded was on these tapes and now the tapes are gone.

Is any of that now a disputed fact?  I thought

the parties were in agreement that those basic facts were undisputed.

MR. MARTIN:  So that the record is very clear, we would refer to our prior motions for exactly what we said about the tapes that had been inadvertently destroyed, but the specific language we used here is very important.  So, for example, the conclusion that the information that may have been destroyed on those tapes only existed on those tapes is not something that we know.

And we think that, you know, there could be a large overlap, if not a complete overlap, between the tapes that were destroyed and the snapshot of the data from that -- from those same servers that we retained and have today.

Your Honor, we think that Mr. Butterfield is going to ask plenty of questions about that and discovery will shed light on the extent of the data overlap, to the extent that those facts can be known.

But the facts that there are a lot of details like that to be discovered, I think is supportive of our request that the factual assertion and the specific ones that we highlighted in our motion that were in your order, that the Court hold those factual determinations in abeyance until discovery can proceed and those things

can be determined.

THE COURT:  That leaves me in a position, I think, where there is circular reasoning going on.  I don't have any facts on which to determine what discovery needs to go forward, I cannot make those factual determinations until there is some hearing addressing those factual questions, but we can't have a hearing on those factual questions without some discovery.

MR. MARTIN:  I understand.

THE COURT:  You know, you have just made the argument to me that there is no record basis for certain factual statements I made.  Does that suggest now that I need to simply vacate that order and then set an evidentiary hearing and let's put the evidence on the record?

MR. MARTIN:  Your Honor, let me respond to that, please.

First, we are fully complying with everything that you ordered.  In terms of providing additional information, submitting the holds for in camera review by you and then production of whatever you order us to produce from those holds, and then certainly submit -- presenting our witnesses to be deposed on the topics that you ordered us to make them available for.  We are

complying with the order.  We're not asking the Court to change any of those actions that were directed by your order.

However, there were -- and we're not talking about all statements of fact that were in the order.  There are very specific ones.  And specifically what we're talking about are factual conclusions in the order, Your Honor, that relate to Blue Cross of South Carolina litigation hold.

For example, at Page 7 where there is a statement that says, the holds did not involve a communication directly from counsel but were prepared to circulate about a corporation itself, as we have argued, and I think as you have now seen from the in camera submission, that is not correct.  They were issued directly from counsel to individual employees.

So, there are -- those types of facts that we said, I believe on Page 4 of our motion, those are the specific statements that we think that if they are allowed to stand in an order in this case, we think could have unintended consequences beyond whether or not we produce these 30(b)(6) witnesses and the hold.  And it's those unintended consequences, we think, of the order that we're asking the Court to reconsider and at least hold in abeyance, if not strike.  Because we don't

think they're necessary for the discovery to happen that you ordered.  In fact, it's scheduled, it's going to happen.  But those statements give us a great cause for concern.

THE COURT:  All right.

MR. BUTTERFIELD:  Your Honor, may I be heard on this issue?

THE COURT:  Sure.

MR. BUTTERFIELD:  I worry that there is some confusion of spoliation and sanctions here.  So, I don't think it's disputed that a litigation hold order was issued, litigation hold order requiring preservation of these tapes, that the tapes were issued in contravention of that litigation hold order, and they were destroyed through two individuals who either didn't get a copy of the litigation hold and should have, or who disobeyed the instructions.  And I don't know the answer to that question.

But there is no question that tapes that were subject to a hold were destroyed, so you have a more than adequate basis, and I don't hear Blue Cross South Carolina challenging this, you have a more than adequate basis to find that there was spoliation.

The rest of it deals with whether or not the information exists elsewhere and, as Mr. Martin says, we

will be taking discovery on that issue.  But that issue goes to sanction, it doesn't go to whether or not there was a loss of materials that was relevant for this lawsuit.

And I don't hear Blue Cross South Carolina asking you to vacate the order.  What I hear them asking is to change some of the reasoning for your order.  And as we said, based on the record before you, when the motion was argued, I think, you know, that the facts that are being asserted by Blue Cross South Carolina now were not available to you and I don't think there's an adequate foundation for a motion for reconsideration to make those facts, put those facts in the record now, but irrespective of all of that, you know, no one is contesting, I don't think, that there was an adequate basis to find spoliation and no one is contesting the procedure that you set out which is to conduct an in camera review of the litigation hold documents.

THE COURT:  Anybody else want to speak to it?

MR. MARTIN:  If I may briefly, this is John Martin from Blue Cross of South Carolina.

THE COURT:  Sure.

MR. MARTIN:  We pled in our initial response in the motion to compel, and it was in plaintiff's motion to compel, what we agreed to with regards to the

deletion of tapes.  That is different from a legal finding of spoliation and we don't agree to that, but that is not necessarily the issue.  I just want to correct that, given Mr. Butterfield's statement.

I do think it's a fair question of Blue Cross South Carolina of exactly what is it are you asking for here.  And we get that.  And we understand that question.  And we want to be very specific with regard to our request for relief.

What we're asking for is not to change anything that the Court has ordered us to do.  We're going to do all that and we look forward to the Court's ruling on whether any of the hold communications need to be produced and, if so, can they be produced with redactions or not.

We're not asking for changes in that PC order.  We are asking that the order be withdrawn so that those factual findings that the holds are not privileged as a general matter, that those factual statements set forth on Page 4 of our motion, that they can either be modified and removed from the order or at least those factual findings can be held in abeyance so that we don't have this -- a general principle articulated in the record of this case that those types of communications generally are managerial in nature and

generally not privileged because we think that is how the order reads right now.

Instead -- and also, Your Honor, we think that the legal conclusion as to the appropriate standard for work product protection as we pled in our motion, we would ask the Court to modify that in keeping with what we think is the majority rule on this, including rulings from this district on that particular issue.

So that is specifically what we are asking for and I hope that it's understood why we're asking for that.

THE COURT:  On that last point, the last point refers to my use of the primary motivating purpose test; is that what you're talking about?

MR. MARTIN:  Yes, Your Honor, that's right.

THE COURT:  All right.  Anything else anybody wants to add?

MR. MARTIN:  Nothing from me, Your Honor.

THE COURT:  All right.

MR. BUTTERFIELD:  No, Your Honor.

MR. MARTIN:  We appreciate your time and consideration of these issues.

THE COURT:  I appreciate all of counsel's hard work on this.  And certainly I appreciate everybody acknowledging that I at least got something right in

this order, that is a concession my wife is never willing to give me.  So I appreciate that.  But I will take a look at it and hopefully we will get you something out next week on it, all right?

Thank y'all very much.

(COURT ADJOURNED)

C E R T I F I C A T E

I hereby certify that the foregoing is a correct transcript from the record of proceedings in the above-referenced matter.

_____
Teresa Roberson, RPR, RMR