FILED
2022 Oct-07 PM 03:45
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

CASE NO. 2:13-cv-20000-RDP      | November 2, 2016
                                 | 1:09 p.m.

IN RE:  BLUE CROSS BLUE SHIELD  |
ANTITRUST LITIGATION MDL 2406   | Birmingham, Alabama

**TRANSCRIPT OF THE DISCOVERY STATUS CONFERENCE**
**BEFORE**
**THE HONORABLE T. MICHAEL PUTNAM**
**UNITED STATES MAGISTRATE JUDGE**

Proceedings recorded by mechanical stenography, transcript produced by computer.

**PRESENT:**

Edgar C. Gentle III
Gentle Turner Sexton & Harbison
501 Riverchase Parkway East, Suite 100
Hoover, Alabama 35244
205-716-3000
Escrowagen@aol.com
  Special Master

Kenina Lee (via telephone)
Axinn Veltrop & Harkrider LLP
950 F Street N.W.
Washington, DC 20004
202-912-4700
Kjl@avhlaw.com
  On behalf of Defendant Independence Blue Cross

**SABRINA LEWIS, CCR, RDR, CRR**
Federal Official Court Reporter
1729 Fifth Avenue North
Birmingham, Alabama 35203
(205) 278-2065
sabrina_lewis@alnd.uscourts.gov

**PRESENT:   (Continued)**

Cavender (Chris) Kimble
Balch & Bingham LLP
Regions Harbert Plaza
1901 6th Avenue North, Suite 1500
P.O. Box 306 (35201)
Birmingham, Alabama 35203-4642
205-251-8100
Ckimble@balch.com
   On behalf of Hogan Lovells Defendants

Lucy Grey McIver (via telephone)
Blue Cross Blue Shield of South Carolina
I-20 @ Alpine Road Mail Code AA-270
Columbia, South Carolina 29219-0001
803-264-3395
Lucy.grey.mciver@bcbssc.com
   On behalf of Blue Cross and Blue Shield of South Carolina

Sarah Lynn Cylkowski (via telephone)
Bodman PLC
1901 Saint Antoine Street
Detroit, Michigan 48226
313-392-1077
Scylkowski@bodmanlaw.com
   On behalf of Blue Cross Blue Shield of Michigan

Emily M. Ruzic
Bradley Arant Boult Cummings LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203-2119
205-521-8000
Eruzic@bradley.com
   On behalf of Grandview Medical Center

M. Patrick McDowell
Benje Bailey
Brunini Grantham Grower & Hewes PLLC
190 East Capitol Street, Suite 100
Jackson, Mississippi 39201
601-948-3101
Pmcdowell@brunini.com
Bbailey@brunini.com
   On behalf of Blue Cross Blue Shield of Mississippi

**PRESENT:    (Continued)**

Andrew Phillip Campbell
Stephen D. Wadsworth
Campbell Guin Williams Guy and Gidiere LLC
505 20th Street North, Suite 1600
Birmingham, Alabama 35203
205-224-0750
Andy.campbell@campbellguin.com
Stephen.wadsworth@campbellguin.com
    On behalf of Blue Cross Blue Shield of Michigan

Rowan D. Wilson
Karin A. DeMasi (via telephone)
Cravath Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
212-474-1000
Rwilson@cravath.com
Kdemasi@cravath.com
    On behalf of Blue Cross Blue Shield of Tennessee

Michael Wyld Lieberman
Crowell and Moring LLP
1001 Pennsylvania Avenue N.W.
Washington, DC 20004-2595
202-624-2500
Mlieberman@crowell.com
    On behalf of Blue Cross Blue Shield of Arizona; Blue Cross of
    Idaho Health Service, Inc.; HealthNow New York Inc.; Blue
    Cross and Blue Shield of Kansas; Blue Cross and Blue Shield
    of Kansas City; Blue Cross and Blue Shield of Nebraska;
    Blue Cross Blue Shield of North Dakota; and Blue Cross
    Blue Shield of Wyoming

Gregory L. Davis
Davis & Taliaferro LLC
7031 Halcyon Park Drive
Montgomery, Alabama 36117
334-832-9080
Gldavis@knology.net
    On behalf of Subscriber Plaintiffs

**PRESENT:   (Continued)**

Michael A. Naranjo (via telephone)
Foley & Lardner LLP
555 California Street, Suite 1700
San Francisco, California 94104-1520
415-434-4484
Mnaranjo@foley.com
    On behalf of USAble Mutual Insurance Company, dba Arkansas
    Blue Cross and Blue Shield

Charlanna W. Skaggs (via telephone)
Hill Hill Carter Franco Cole & Black PC
425 S. Perry Street
Montgomery, Alabama 36104
334-834-7600
Cskaggs@hillhillcarter.com
    On behalf of Blue Cross Blue Shield of Alabama

Emily M. Yinger
Hogan Lovells US LLP
7930 Jones Branch Drive
Ninth Floor, Park Place Building
McLean, Virginia 22102
703-610-6100
Emily.yinger@hoganlovells.com
    On behalf of Hogan Lovells Defendants

Todd M. Stenerson (via telephone)
Hunton & Williams LLP
2200 Pennsylvania Ave N.W.
Washington, DC 20037
202-419-2184
Tstenerson@hunton.com
    On behalf of Blue Cross Blue Shield of Michigan

Christa C. Cottrell
Anne Salomon
Theresa Cederoth (via telephone)
Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, Illinois 60654
312-862-2000
Christa.cottrell@kirkland.com
Anne.salomon@kirkland.com
Theresa.cederoth@kirkland.com
    On behalf of BCBSA, HCSC, Highmark, NASCO, CHP

**PRESENT:   (Continued)**

Gwendolyn C. Payton (via telephone)
Lane Powell PC
1420 Fifth Avenue, Suite 4200
Seattle, Washington 98101-2338
206-223-7000
Paytong@lanepowell.com
  On behalf of Premera Blue Cross and Premera Blue Cross Blue
  Shield of Alaska

Andrew Allen Lemmon
Lemmon Law Firm
15058 River Road
Hahnville, Louisiana 70057
985-783-6789
Andrew@lemmonlawfirm.com
  On behalf of Subscriber Plaintiffs

Virginia M. Buchanan (via telephone)
Megan McWilliams (via telephone)
Levin Papantonio Thomas Mitchell Rafferty & Proctor PA
316 S. Baylen Street, Suite 600
Pensacola, Florida 32502
850-435-7000
Vbuchanan@levinlaw.com
  On behalf of Subscriber Plaintiffs

Carl S. Burkhalter
James L. Priester
Maynard Cooper & Gale
Regions Harbert Plaza
1901 6th Avenue North, Suite 2400
Birmingham, Alabama 35203
205-254-1000
Cburkhalter@maynardcooper.com
Jpriester@maynardcooper.com
  On behalf of BCBS of Alabama

Michael L. Murphy
P.O. Box 38
Centreville, Alabama 35042
205-926-4686
Mlmabco@aol.com
  On behalf of Provider Plaintiffs

**PRESENT:    (Continued)**

Jarrett Coco
Nelson Mullins Riley & Scarborough LLP
1320 Main Street, 17th Floor
Columbia, SC 29201
803-255-9421
Jarrett.coco@nelsonmullins.com
  On behalf of On behalf of Anthem, Inc., f/k/a WellPoint, Inc.,
  and all of its named subsidiaries in this consolidated action;
  Blue Cross and Blue Shield of North Carolina, Inc.; Blue Cross
  and Blue Shield of Florida, Inc.; Louisiana Health Service &
  Indemnity Company (Blue Cross and Blue Shield of Louisiana);
  Blue Cross and Blue Shield of Massachusetts, Inc.; BCBSM, Inc.
  (Blue Cross and Blue Shield of Minnesota); Blue Cross and Blue
  Shield of South Carolina; Blue Cross and Blue Shield of
  Tennessee, Inc.; Hawaii Medical Service Association (Blue
  Cross and Blue Shield of Hawaii); Horizon Healthcare Services,
  Inc. (Horizon Blue Cross and Blue Shield of New Jersey);
  Wellmark of South Dakota, Inc. (Wellmark Blue Cross and Blue
  Shield of South Dakota); Wellmark, Inc. (Wellmark Blue Cross
  and Blue Shield of Iowa); Blue Cross & Blue Shield of Rhode
  Island; Blue Cross and Blue Shield of Vermont; Cambia Health
  Solutions, Inc.; Regence Blue Shield of Idaho; Regence Blue
  Cross Blue Shield of Utah; Regence Blue Shield (of
  Washington); Regence Blue Cross Blue Shield of Oregon; Blue
  Cross Blue Shield of Mississippi, A Mutual Insurance Company

Anna Mercado Clark (via telephone)
Phillips Lytle LLP
620 Eighth Avenue, 23rd Floor
New York, New York 10018
212-759-4888
Aclark@phillipslytle.com
  On behalf of Excellus Health Plan, Inc. D/b/a Excellus
  BlueCross BlueShield

John G. Schmidt, Jr.
Phillips Lytle LLP
125 Main Street One Canalside
Buffalo, New York 14203-2887
716-847-7095
Jschmidt@phillipslytle.com
  On behalf of Excellus Health Plan, Inc. D/b/a Excellus
  BlueCross BlueShield

**PRESENT:   (Continued)**

Chris T. Hellums
Pittman Dutton & Hellums PC
2001 Park Place Tower, Suite 1100
Birmingham, Alabama 35203
205-322-8880
ChrisH@pittmandutton.com
   Plaintiffs' Liaison Counsel

Sylvia Maria Arizmendi (via telephone)
Reichard & Escalera
255 Ponce de León Avenue
MCS Plaza, 10th Floor
P.O. Box 364148 00936-4148
San Juan, Puerto Rico 00917-1913
787-777-8888
Arizmendis@reichardescalera.com
   On behalf of Triple-S Salud

Robert R. Riley, Jr.
Riley & Jackson PC
3530 Independence Drive
Birmingham, Alabama 35209
205-879-5000
Rob@rileyjacksonlaw.com
   On behalf of Blue Cross Blue Shield of Tennessee

Brian K. Norman (via telephone)
Shamoun & Norman LLP
1800 Valley View Lane, Suite 200
Farmers Branch, TX 75234
214-987-1745
Bkn@snlegal.com
   On behalf of Defendants CareFirst, Inc., CareFirst of
   Maryland, Inc., and Group Hospitalization and Medical
   Services, Inc.

Barry A. Ragsdale
Sirote & Permutt PC
2311 Highland Avenue South
P.O. Box 55727
Birmingham, Alabama 35255-5727
205-930-5100
Bragsdale@sirote.com
   Plaintiffs' Liaison Counsel

**PRESENT:   (Continued)**

Joshua K. Payne
Spotswood Sansom & Sansbury LLC
1819 5th Avenue North, Suite 1050
Birmingham, Alabama 35203
205-453-4189
Jpayne@spotswoodllc.com
    On behalf of Capital Blue Cross

Kimberly R. West
Wallace Jordan Ratliff & Brandt, LLC
800 Shades Creek Parkway, Suite 400
P.O. Box 530910 (35253)
Birmingham, Alabama 35209
205-870-0555
Kwest@wallacejordan.com
    Defendants' Liaison Counsel

W. Tucker Brown
Helen Lynne Eckinger
Patrick J. Sheehan
Whatley Kallas LLC
2001 Park Place North, Suite 1000
Birmingham, Alabama 35203
205-488-1200
Tbrown@whatleykallas.com
Heckinger@whatleykallas.com
Psheehan@whatleykallas.com
    On behalf of Provider Plaintiffs

Katherine R. Brown
Augusta S. Dowd (via telephone)
White Arnold & Dowd, PC
2025 3rd Avenue North, Suite 500
Birmingham, Alabama 35203
205-323-1888
Kbrown@whitearnolddowd.com
Adowd@whitearnolddowd.com
    On behalf of Subscriber Plaintiffs

**PRESENT:   (Continued)**

Dennis G. Pantazis
Wiggins Childs Pantazis Fisher & Goldfarb LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203-3204
205-314-0531
Dgp@wigginschilds.com
    On behalf of Provider Plaintiffs

Michael E. Gurley, Jr.
Edward K. Wood, Jr.
Wood Law Firm LLC
P.O. Box 382434
Birmingham, Alabama 35238-2434
205-908-4906
Mgurleyjr@yahoo.com
Ekirkwood1@bellsouth.net
    On behalf of Provider Plaintiffs

THE COURT:  Good afternoon.  Welcome to warm, dry, and sunny Alabama.

We're scheduled -- this is In Re:  Blue Cross Blue Shield Antitrust Litigation MDL 2406.  We're scheduled for our discovery conference this afternoon.  And the things -- some of the things I have on the agenda include getting status reports regarding privilege logs.

Mr. Ragsdale, do you want to address that?

MR. RAGSDALE:  I do.  Thank you, Your Honor.

We filed, particularly the subscriber plaintiffs, filed a status report on privilege logs.  As we explained, the ESI protocol required them but didn't say exactly when they were due.  So we began a series of meet and confers particularly with the Association and with Blue Cross of Alabama.  And we have, I'm happy to say, reached an agreement with both.

Alabama had promised to get us the logs by this hearing.  I haven't checked my email to see...

Do you know whether or not they've been sent?

MR. BURKHALTER:  I believe we promised to give them to you today.  They are going out today.

THE COURT:  One of the status conferences mentioned something about close of business today.

MR. RAGSDALE:  Okay.

THE COURT:  You may get it by 5:00.

MR. RAGSDALE:  I will stand by my email waiting for that.

But we expect to get those today.

The Association has promised to get the log to us by November 11th -- 11/11 -- as well as agreeing to do a rolling privilege log within 30 days after production comes forward.

I would mention this, though.  We have raised some concerns and we probably want to flag those for you going forward that we're going to have, I suspect, some disputes once those privilege logs are produced about whether or not things should in fact be listed and how they're described.

We know, for example, that we have received some 7,500 documents from the Association which include redactions.  The Association has pointed out that a third of those redactions are private medical information, identifying information.  But that still leaves 5,000 documents that have redactions on them that would be related, we assume, to privilege.  So that issue will probably also come up.

The other thing I would say is that based on the volume -- which the Association and the other defendants, frankly, brag about the amount of documents that have been produced, and it is a huge volume.  The Association, for example, says they've produced something over 3 million pages of documents.  But even if only 5 percent of those have been withheld on privilege, we're still talking about 165,000 documents that would have been withheld based on privilege.

So one of our concerns, obviously, is that we're going to

get hit with a huge volume of those once they are actually identified.  If it's not a concern, we won't be back with you. But, obviously, we want to at least let you know that we're anticipating that there might be some fights that will arise out of that because of the sheer volume of documents that we are dealing with.

Other than that, Judge, we continue to talk -- I'm sorry?

THE COURT:  I'm assuming that will give us something to do during Thanksgiving and Christmas, I guess.

MR. RAGSDALE:  I was very worried that we were going to run out of things to do in this case.  But I think that's true.  We would anticipate that those issues will percolate up once we get the privilege logs going forward.

Just as a note, we're also continuing to negotiate and meet and confer with the other defendants other than the Association and Alabama about privilege logs as well to see whether or not we can reach agreement, and we're at various stages and may be in a position to report back to you at our next meeting.

THE COURT:  All right.

MR. RAGSDALE:  Thank you, Judge.

THE COURT:  Mr. Burkhalter?

MR. BURKHALTER:  Yes, Your Honor.  Hi.  I'm Carl Burkhalter for Blue Cross Blue Shield of Alabama.

Judge, the only thing I wanted to make is really a sauce for the goose, sauce for the gander type point.  I don't think

we have a deadline --

THE COURT:  Dressing for the turkey?

MR. BURKHALTER:  Something like that.  That's right.

I don't believe there was currently a firm deadline in place for the plaintiffs in the accelerated Alabama actions to give us their privilege log.  I'd like to at least get an update on where that stands and maybe get some understanding from plaintiffs' counsel of when they will in fact complete their production of a privilege log that covers their material.

THE COURT:  Okay.  All right.

Ms. West?

MS. WEST:  Your Honor, I'll introduce Ms. Salomon.  She's going to be speaking for the Association.

THE COURT:  Thank you.  Good to have you with us.

MS. SALOMON:  Good afternoon.  Anne Salomon on behalf of the Association.

The Association has agreed to produce a privilege log within 10 days that will have, consistent with the Court's order, entries for every document that we have withheld and redacted.  We've produced a very significant volume of documents.  We're 90 percent complete right now with our production and produced 3.3 million pages.  We've reached that agreement prior to filing the status report and are on track to provide that to plaintiffs.

THE COURT:  Do you have a ballpark estimate about how many

documents might show up on your privilege log?

MS. SALOMON:  I don't offhand --

THE COURT:  I'm not going to hold you to it but just sort of a ballpark estimate.

MS. SALOMON:  I don't have an exact number.  I do -- I can say that it is a very small percentage.  Mr. Ragsdale threw out there 5 percent.  It is far less than 5 percent of our production.  We have taken our privilege log review very seriously and have a multi-tiered approach to putting things out with redactions and on our log.

THE COURT:  Okay.

MS. SALOMON:  Thank you, Your Honor.

THE COURT:  So it would be somewhat less than a hundred thousand documents, then?

MS. SALOMON:  It is certainly less than that.  I don't have a number but far, far below that, yes.

THE COURT:  All right.  Thank you.

MS. SALOMON:  Thank you, Your Honor.

THE COURT:  Thank you.

Mr. Ragsdale, do you want to comment about the privilege log the plaintiffs owe back to the defendants?

MR. RAGSDALE:  I can say this.  We kind of have a skeleton crew here.  And that's not a Halloween reference.  But, Carl, who did you meet with on the subscriber side that asked for the privilege log so I can check with them?

MR. BURKHALTER: I don't know that I've spoken with anybody on the subscriber side.

MR. RAGSDALE: So how --

MR. BURKHALTER: But I think it's fair for me to simply raise in open court the fact that you pushed for us to give a log. I'd like to know where you guys are on yours.

MR. RAGSDALE: Harkens back to discussions about meeting and conferring before we raise things with the judge. But I will talk to my folks and see if we can get an answer to Carl that is satisfactory to him.

THE COURT: All right. Thank you.

MR. RAGSDALE: Thank you.

THE COURT: Mr. Brown?

MR. BROWN: Your Honor, I'm happy to address it for the providers.

We haven't met with Mr. Burkhalter or anybody, but we are happy to. Our privilege logs are in process, and I don't expect them to take more than a few more weeks but I'd hate to commit to anything without talking to people that are actually putting the log together, none of whom are here today.

I'm happy -- if Carl wants to call me this afternoon when I'm in the office or tomorrow, I'm happy to discuss an appropriate deadline for that.

THE COURT: You said a few more weeks. Do you have any sense about whether you can complete it before Thanksgiving?

MR. BROWN:  Yes, sir.  I can't imagine that would be a problem, Your Honor.

THE COURT:  Okay.  Fine.  All right.

Ms. West, Ms. Salomon, Mr. Burkhalter, anybody else want to address anything about that?

MS. WEST:  No, Your Honor.

THE COURT:  Okay.  All right.  We also have scheduled this afternoon, then, the provider plaintiffs' motion to compel defendants with respect to Triple-S Salud and California Physicians' Service.  And this relates to, as I understand it, basic structure data production by those two parties.

MR. SHEEHAN:  Your Honor, Patrick Sheehan for provider plaintiffs.

As of yesterday, we have withdrawn our motion as to all the defendants including --

THE COURT:  Okay.

MR. SHEEHAN:  -- Blue Shield of California and TSS because we've reached agreement with them on the timing of their production.

THE COURT:  All right.  Very good.  All right.  We'll mark those being withdrawn, then.  Great.  Thank you.

MR. SHEEHAN:  Thank you, Your Honor.

THE COURT:  We have provider plaintiffs' motion to compel nonparties SK&A Information Services and IMS Health, provider plaintiffs' motion to compel nonparty Health Care Cost

Institute, motion to compel nonparty insurers to produce certain documents. Those are, of course, nonparties in the case. And the question then becomes is what sort of scheduling, briefing, that sort of thing is going to be necessary to bring those to a head. And I guess I would anticipate doing essentially the same thing that we've done with the nonparty subpoenas that had been served by the defendants and that is get some notice to those subpoenaed parties of an opportunity to come in and be heard about it.

Anybody have any thoughts or comments about procedures for handling these nonparty subpoenas issued by -- and served by the plaintiffs in the case? Mr. Sheehan?

MR. SHEEHAN: Thank you, Your Honor. I guess I should give you an update first.

You know, we had moved to compel nonparty health plans Aetna, Cigna, United, and Humana. We had also filed motions to compel against SK&A and HCCI. We have now an extended schedule. We are meeting and conferring with all of those parties to try to reach agreement.

I believe that the nonparty health plans have until the 14th to file a response to our motion. But we're continuing to work with them to see if we can come to agreement before then.

I think, you know, what we would like to do is let that process play out, file a reply brief if necessary, and come in to see Your Honor at some point shortly after the briefing is

done.  But we are hopeful that we'll be able to narrow the issues significantly now that we're, you know, under a schedule that has been set by the Court.

THE COURT:  All right.  Anyone else wish to comment about those nonparty subpoenas, motions for production on those?  And I hesitatingly look to the defense side because it's been sort of a controversial point.

Ms. Cottrell?

MS. COTTRELL:  I will be brief.  Good afternoon.

I would just add that we think that the process they proposed makes sense.  And we also filed, you may have seen, a position statement because we similarly have subpoenas to some of those same national competitors seeking a lot of the same stuff, so we filed a position statement just to let you know where we stood on those discovery requests.  And -- good news -- we're largely in agreement that we think they are seeking relevant information.

THE COURT:  Okay.  Great.  Wonderful.

All right.  So at this point I'm assuming, then, if some controversy still exists after the meet and confers conclude that somebody will notify the Court of any kind of a need for further briefing or some oral argument or hearing of some sort.

Mr. Sheehan, you're going to report back to me at some point of any further need to resolve those disputes?

MR. SHEEHAN:  I think that's fair, Your Honor.  I think the

nonparties now have a November 14th deadline.

THE COURT:  Right.

MR. SHEEHAN:  So as we talk to them over the next couple weeks, we can decide, you know, what makes the most sense to report to Your Honor.

THE COURT:  Okay.

MR. SHEEHAN:  Whether it's them just filing their briefs or us giving you some other status report if that's acceptable to Your Honor.

THE COURT: All right.  Okay.  That's fine.  I'll just wait to get a status report.

I guess that leads us to the next question which I have as an agenda item this afternoon is how do y'all want to or does anybody have any thoughts about dealing with the ordinary regularly scheduled discovery conference that's going to fall during the Thanksgiving holiday this year?  Does anybody have any thoughts about resetting it earlier, pushing it off to later, everybody meeting here and having a big feast?

MR. RAGSDALE:  We obviously have a hearing with Judge Proctor on the 29th.  And it seems to me, at least, without talking to anybody else that we ought to try to maybe see if we can sandwich our regular discovery hearing in so that we don't -- people only have to make one trip for that.

THE COURT:  Either later that day the 29th or perhaps the next day the 30th, something of that sort?  Is that what you're

thinking about?

MR. RAGSDALE:  That would work.  I'll be here.

THE COURT:  Afraid I will be, too.

Ms. West?

MS. WEST:  Your Honor, I'll be here, too.  So I think if we meet and confer with Barry and with Tucker, we can come up with a date that would work.  And it makes sense to do it around the hearing with Judge Proctor.  That may take -- it's my understanding that may be a day.  So we may need to do it either before or after.

THE COURT:  Okay.

MS. WEST:  We can report back to you after the parties have had a chance to talk.

THE COURT:  All right.  Please do.  All right.

MS. WEST:  Thank you.

THE COURT:  Ms. Yinger, do you have a thought?

MS. YINGER:  Ms. West read my mind.

THE COURT:  Okay.  All right.  Great.

Well, that's moved reasonably quickly through any other items that -- all of the items that I have on the agenda, then.  Mr. Ragsdale, anything?  Or Mr. Brown, anything either of you need to raise as far as problems that we can talk about or we can anticipate or try to come up with or root around in the weeds and try to find some problems?  What do we need to be doing?

MR. RAGSDALE:  I hesitate to go looking for problems.  We continue to negotiate and talk with Blue Cross of Alabama on search term issues.  We expect that to percolate to a point where it will probably be ripe to be decided at the next conference, and that's probably the next big issue that will be put before you.

THE COURT:  Good.  All right.

Mr. Brown, anything you need to add?

MR. BROWN:  No, Your Honor.

THE COURT:  All right.  Mr. Sheehan, anything?

MR. SHEEHAN:  No, Your Honor.

THE COURT:  Ms. West?

MS. WEST:  No.  Mr. Burkhalter may have something.

THE COURT:  Mr. Burkhalter?  I can always count on you.

MR. BURKHALTER:  Always.  Always.  That's a great reputation to have, Your Honor.

Just one issue just in terms of foreshadowing potential problems.  We have been meeting and conferring with Mr. Brown on behalf of two of his clients, the two hospital clients, the Alabama hospitals in the accelerated action.  There is an issue there about some missing data.

I am not a structured data kind of guy.  That's Mr. Malatesta's bailiwick.  But I just wanted to advise the Court that we're continuing to have productive discussions but at some point we're going to get to the licklog on that.  And so

it may be necessary to file a motion.  And if that does become necessary, I anticipate we will file one in time for it to be heard at the hearing, whenever it is --

THE COURT:  Sometime in late November?

MR. BURKHALTER:  Yes, Your Honor.

THE COURT:  Okay.

MR. BROWN:  Thank you.

THE COURT:  All right.  All right, Mr. Brown?

MR. BROWN:  We are meeting and conferring.  I'm hopeful that a motion won't be necessary.  I think it's probably a waste of everyone's time.  But in any event, we'll wait and see and we'll keep meeting and conferring and hopefully I can convince Blue Cross of Alabama of that.

THE COURT:  All right.  And I certainly don't want to venture off into the merits of that, but does anybody have just a quick, Twitter-like, 140-character description of what the missing data is and why it's missing?

MR. BROWN:  Yes, Your Honor.  This issue has actually been before you before.  Mr. Malatesta and I discussed this probably at -- maybe in May or April of last year.  There's been sort of a letter writing campaign back and forth.  It involves failure of an old claims data system at the two hospitals and the efforts that have been undertaken to try to restore the old data and where the old data is and those sorts of things.  And there is a period of time for which one of the systems is not

available for the two hospitals beyond -- and I don't have my notes with me, Your Honor, because this wasn't something that was previewed for me.  But there's a point in time where it doesn't go back any further because of the failure of the old systems.

THE COURT:  All right.  Okay.  Mr. Burkhalter, anything you want to add to that?

MR. BURKHALTER:  No, Your Honor.

THE COURT:  Okay.  All right.  Mr. Ragsdale?

MR. RAGSDALE:  I'm pleased to announce that we have received Alabama's privilege log.

THE COURT:  Aha.  Excellent.  Excellent.  Very good.  Well before 5:00.

MR. RAGSDALE:  Absolutely.

THE COURT:  All right.  Well, that went very quickly and relatively painlessly.  So anybody else have anything else you need to raise, add, complain about?

MS. YINGER:  I don't have anything to complain about, really.  I just --

THE COURT:  Oh, I have plenty to.  Just nobody ever listens to me.

MS. YINGER:  I just wanted to give the Court an update on our discussions with the plaintiffs about revising the March 24th scheduling order.  I think the reason why I wanted to give this update is because I think I've mentioned at prior

hearings that that order contained a September 30th deadline and that deadline was contingent on meet and confers being completed by April 30th.  And for many of the defendants, those meet and confers were not completed by April 30th.  So that September 30th deadline is no longer operative, which is why we have been trying to engage with the plaintiffs about putting into place realistic new deadlines including ultimately an extension of the discovery period.

We made a proposal, the Court probably recalls, on September 26th.  We have had two phone calls with the plaintiffs in which they have asked a variety of questions and we have answered them.  And then most recently this week we heard from plaintiffs that they're not able to give us a counterproposal because they cannot yet agree amongst themselves on a counterproposal.

So we're continuing to work with them.  But I feel the need again to advise the Court that those interim deadlines are not in effect with respect to a number of the plaintiffs, and we are trying diligently to put some in place because we think it's helpful to have those deadlines to move the case along.

THE COURT:  Okay.

MS. YINGER:  So that's all.  I just wanted to provide that update.

THE COURT:  All right.

Mr. Ragsdale, any comment?

MR. RAGSDALE:  No.

THE COURT:  Okay.  All right.  All right.  Anything else, then, anybody wants to raise, point out?  All right.  Well, thank y'all very much, then.  I assume that I'll be getting some kind of proposed date for a conference late in the last week of the month -- 29th, 30th, 31st somewhere -- there's not a 31st in November.  30th, December 1st, something like that.

MR. RAGSDALE:  It did occur to me, Judge, that if you have conflicts in that time frame, it might be helpful for us to know that.

THE COURT:  Well, nothing comes to mind right off the bat, but certainly you can check with Amber and we can look at our calendar.  But be assured this.  I mean, most of the stuff that I would have on my calendar during that week can be moveable. So it's -- you know, don't let that -- if the parties can come to an agreement that you want to have a conference on the 30th, don't let my calendar stop you from worrying about that.

MR. RAGSDALE:  Okay.  Thank you, Judge.

MS. YINGER:  Thank you, Your Honor.

THE COURT:  All right.  Anything else?  All right.  Thank you very much.

(The proceedings were concluded.)

C E R T I F I C A T E

I, Sabrina Lewis, RDR, CRR, Official Court Reporter for the United States District Court for the Northern District of Alabama, appointed pursuant to the provisions of Title 28, United States Code, Section 753, do hereby certify that the foregoing is a correct transcript of the proceedings reported by me using the stenotype reporting method in conjunction with computer-aided transcription, and that same is a true and correct transcript to the best of my ability and understanding.

I further certify that the transcript fees and format comply with those prescribed by the Court and the Judicial Conference of the United States.

Dated:  November 11, 2016

*Sabrina Lewis*

SABRINA LEWIS, OFFICIAL COURT REPORTER