IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| IN RE BLUE CROSS BLUE SHIELD ANTITRUST LITIGATION MDL 2406 : : : : : : | Master File 2:13-cv-20000-RDP<br><br>This document relates to<br>Subscriber Track cases |

## SUBSCRIBERS' MOTION TO REQUIRE AN APPEAL BOND

Subscribers move this Court to require the six objectors to the Settlement who have filed appeals to post an appeal bond under Federal Rules of Appellate Procedure 7 and 8, as well as this Court's inherent authority.

## INTRODUCTION AND SUMMARY OF ARGUMENT

This is one of the largest and most impactful antitrust settlements in history. Nearly a decade of grueling litigation has earned the Subscriber Class[1] an agreement with $2.67 billion in cash, plus injunctive relief that is even more valuable and significant. After numerous hearings and extensive briefing and arguments, this Court has found the Settlement fair, reasonable, and ready for implementation. ECF No. 2931. The Class was therefore on the cusp of receiving ground-breaking relief that would remake the way health care is purchased, sold, and delivered for hundreds of millions of individuals and businesses.

But those hard-won gains are now at risk of an extended, unjustified delay. Four appeals filed by six objectors (out of 100,000,000 Class members receiving notice) threaten to delay key relief during prolonged appeals likely to extend for more than a year. Few of the Settlement's

---

[1] "Subscriber Class," "Subscribers," or the "Class" refers to all members of the Settlement Classes as defined in the Settlement Agreement, ECF No. 2610-2, at 18 ¶ 1.mmmm. All other capitalized terms have the meanings assigned in the Settlement Agreement.

benefits will be realized during those appeals, and some of those lost benefits will never be recouped. For example, key parts of the "historic" and "transformative" injunctive relief that will "greatly benefit the members of the Subscribers Class"—relief that this Court properly characterized as "even more crucial[]" than the $2.67 billion in cash, ECF No. 2932 at 3; ECF No. 2931 at 5—will not take effect until the appeals are resolved. Similarly, the cash component of the Settlement will remain handcuffed, parked in government securities and money market accounts until the appeals are resolved, generating further losses. And a prolonged delay in settlement administration could easily add more than $10 million to the cost of effectuating relief for the Class. Subscriber Plaintiffs will go forever uncompensated for those multi-year losses unless the objectors, Employee Services, Inc. and Topographic, Inc.; Jennifer Cochran and Aaron Craker; Home Depot, Inc.; and David G. Behenna (the "Objector-Appellants"), pay the costs of that unfair and unjustified delay if their appeals are unsuccessful.

In recent filings, Objector-Appellants Home Depot, Topographic, Inc, Employee Services, Inc. and David Behenna have flatly refused to expedite briefing of their appeals. *See infra* n.2. This Court has ample power—under Federal Rules of Appellate Procedure 7 and 8, as well as its inherent authority—to require Objector-Appellants to post an appropriate appeal bond limiting the appeals' damage-by-delay to the Class. *Allapattah Servs., Inc. v. Exxon Corp.*, 2006 WL 1132371 (S.D. Fla. Apr. 7, 2006) (imposing $13.5 million appeal bond on objector to $1.075 billion settlement). And equity demands it.

## BACKGROUND

This "extraordinarily complex, protracted, and hard-fought" multidistrict litigation is in its tenth year. ECF No. 2931 at 1–2. The parties litigated, and the Court addressed, "over a dozen motions to dismiss" and the Court ruled on over 150 discovery motions. *Id.* at 2. Discovery

entailed the production and review of over 15 million pages of documents, at least 140 depositions, and challenges to hundreds of thousands of privilege log entries (resulting in 45 Reports & Recommendations by the Special Master). *Id.* Summary judgment alone required several rounds of briefing that culminated in key victories for the Subscriber Plaintiffs. *Id.* at 3.

More than seven years ago, the parties launched settlement negotiations. *Id.* In July 2019, the Subscriber Plaintiffs and the Blues recognized the need for a Self-Funded Sub-Class, and after the Self-Funded Sub-Class was brought into the fold and given the opportunity to engage independent experts, a term sheet was executed in November 2019. *Id.* at 4. With the assistance of Special Master Edward Gentle and Mediator Kenneth Feinberg, the parties agreed on an equitable distribution of the net settlement fund, which Mr. Feinberg found to be reasonable. *Id.* at 4. In October 2020, the parties entered into the Settlement Agreement and in November 2020 this Court preliminarily approved it. *Id.* at 5. The Settlement was met with widespread approval and an infinitesimal number of objectors, particularly given the 100-million-member class size. *Id.* at 42–43.

In October 2021, the Court conducted a multi-day fairness hearing and, after permitting Subscriber Plaintiffs to send a supplemental notice to Administrative Services Only ("ASO") Plans, the Court overruled the Second Blue Bid relief objections, *see id.* at 44–45. In August 2022, the Court carefully considered—and rejected—all remaining objections to the Settlement Agreement. *Id.* at 45–80. The Objector-Appellants appealed that ruling. *See* ECF Nos. 2940, 2943, 2942, 2944.[2]

---

[2] To further increase the likelihood of an expeditious resolution of this action and the Class's prompt receipt of the Settlement's full benefits, the Class has, in addition to filing this motion, moved in the Eleventh Circuit to expedite Objector-Appellants' appeals. Pls.-Appellees' Mot. to Expedite and Consolidate Appeals, 22-13051 (Oct. 5, 2022). Home Depot, Topographic, Inc., Employee Services, Inc. and David Behenna have opposed any change to the briefing schedule. *See* The Home Depot Appellants' Response To Motion To Consolidate And To Expedite

## ARGUMENT

Objector-Appellants' appeals will impose substantial costs on the Class, including (1) the added costs of maintaining and servicing massive databases used for Class notice, (2) the costs of delayed and obstructed injunctive relief for which Subscriber Plaintiffs will go forever uncompensated, and (3) the lost liquidity from two years of locking up the Settlement's cash proceeds in money-market funds and U.S. Treasury obligations. The Court has—and should exercise—the power to require Objector-Appellants to cover those costs with a bond, which will protect Subscriber Plaintiffs from having to undertake burdensome attempts to recover such costs if this Court is affirmed on appeal.

**I.     The Court can and should require Objector-Appellants to post an appeal bond under Federal Rule of Appellate Procedure 7.**

This Court's power to impose an appeal bond on the Objector-Appellants is indisputable. Federal Rule of Appellate Procedure 7 provides:

> In a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal.

---

Appeals (Oct. 12, 2022); Appellants' Opposition to Motion to Consolidate and Expedite Appeals (Oct. 12, 2022); and Appellant's Response in Opposition to Plaintiffs-Appellees' Motion to Consolidate and Expedite Appeals (Oct. 17, 2022). As of the date of this Motion, Objector-Appellants Cochran and Craker have not responded to the motion to expedite.

Courts routinely require class action objectors to post appeal bonds,[3] including in antitrust cases.[4] That is because "[t]he protection afforded by a bond is especially necessary where an objector appeals a final order approving a settlement in a class action." *Aboltin v. Jeunesse LLC*, 2019 WL 1092789, at *3 (M.D. Fla. Feb. 15, 2019).

This Court should exercise its power here to require a bond from Objector-Appellants. The factors typically considered when assessing whether to require a bond under Rule 7 strongly favor the imposition of one in this case. Those factors include: (A) appellants' financial ability to post a bond; (B) the appeals' merits; (C) the risk that appellants will not voluntarily pay costs if unsuccessful and the difficulty of collecting such costs; and (D) appellants' prior conduct, including any bad faith. *Id.*; *see also In re Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d 289, 293–94 (S.D.N.Y. July 20, 2010).

### A. The Objector-Appellants can post a bond.

An appellant's financial ability to post an appeal bond favors the imposition of one. *In re Polyurethane Foam Antitrust Litig.*, 178 F. Supp. 3d 635, 641–42 (N.D. Ohio. Apr. 13, 2016). It is presumed that appellants have the financial ability to post an appeal bond, and it is their

---

[3] *See, e.g.*, *In re Enfamil Lipil Mktg. & Sales Practices Litig.*, 2012 WL 1189763, at *5 (S.D. Fla. Apr. 9, 2012); *In re Wachovia Corporation "Pick-a-Payment" Mortgage Marketing and Sales Practices Litigation*, 2011 WL 3648508 (N.D. Cal. Aug. 18, 2011); *In re Wells Fargo Loan Processor Overtime Pay Litigation*, 2011 WL 3352460 (N.D. Cal. Aug. 2, 2011); *Gemelas v. Dannon Co.*, No. 1:08CV236, 2010 WL 3703811, at *3 (N.D. Ohio Aug. 31, 2010); *In re Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d 289, 295 (S.D.N.Y. July 20, 2010); *In re Wal-Mart Wage & Hour Emp't Practices Litig.*, 2010 WL 786513, at *2 (D. Nev. Mar. 8, 2010); *In re AOL Time Warner, Inc., Sec. & "ERISA" Litig.*, 2007 WL 2741033, at *3 (S.D.N.Y. Sept. 20, 2007); *Barnes v. FleetBoston Fin. Corp.*, 2006 WL 6916834, at *3 (D. Mass. Aug. 22, 2006).

[4] *See, e.g.*, *In re Currency Conversion Fee Antitrust Litigation*, 2010 WL 2033811 (S.D.N.Y. May 21, 2010); *Fleury v. Richemont N. Am., Inc.*, 2008 WL 4680033, at *9–*10 (N.D. Cal. Oct. 21, 2008); *In re Compact Disc Minimum Advertised Price Antitrust Litigation*, 2003 WL 22417252, at *2 (D. Me. Oct. 7, 2003); *In re Cardizem CD Antitrust Litigation*, 391 F.3d 812, 815 (6th Cir. 2004).

burden to demonstrate otherwise. *Id.; In re Enfamil Lipil Mktg. and Sales Practices Litig.*, 2012 WL 1189763, at *4 (S.D. Fla. Apr. 9, 2012) ("An objector's ability to post a bond is presumed."). Several of the objectors, such as Home Depot U.S.A., Inc., Employee Services, Inc., and Topographic, Inc. are large corporate entities operating across the country and should easily be able to afford an appeal bond.[5] Although the other Objector-Appellants are individuals, none has demonstrated an inability to pay an appeal bond, much less a modest portion of one.[6]

B.    **The four appeals lack merit.**

An appeal's lack of merit also favors imposition of a bond. *In re Cardizem CD Antitrust Litig.*, 391 F.3d 812 (6th Cir. 2004) (merit factor favors bond even where appeal does not "border[] on the frivolous"); *In re Polyurethane Foam*, 178 F. Supp. 3d at 640–41 (similar). The test is whether the District Court harbors substantial doubts as to the accuracy of the rulings appealed; where no such doubt exists, this factor justifies a bond. *See, e.g.*, *In re Polyurethane Foam*, 178 F. Supp. 3d at 641–42; *In re Enfamil*, 2012 WL 1189763, at *4; *In re Initial Pub. Offering*, 728 F. Supp. 2d at 293–94. Based on days of hearings, thousands of pages of exhibits, and a detailed, reasoned opinion, this Court roundly rejected Objector-Appellants' arguments, and they are unlikely to prevail on appeal.[7]

---

[5] Home Depot is a multinational behemoth with a market capitalization upwards of $280 billion; it reported more than $150 billion in revenues in 2021. Employee Services is a large employee assistance program that serves more than 2,000 public and private employers, and has more than 1.5 million members. Topographic, Inc. is a national energy and environmental consulting firm operating in 26 states with more than 450 employees.  *See* https://www.hbsdealer.com/another-record-year-home-depot; https://www.theeap.com/about-us; and https://www.topographic.com/history/.

[6] As explained below, assuming the individual Objector-Appellants offer persuasive evidence of their limited means, Subscribers do not object to them posting a smaller portion of the bond.

[7] Indeed, this Court bent over backwards to accommodate certain of the Objector-Appellants (the ASOs) by permitting a second, expensive round of Class notice to address their stated concerns. *See* ECF No. 2931 at 6.

### C. Unless the Court requires a bond, there is a risk of nonpayment and a substantial likelihood that recovering appeals costs will be onerous.

Bonds are favored whenever there is a risk of nonpayment of appeals costs. *In re Equifax Inc. Customer Data Security Breach Litig.*, 999 F.3d 1247, 1283 (11th Cir. 2021). This factor is particularly important. *Id.* at 1283–84; *see also* 4 NEWBERG & RUBENSTEIN ON CLASS ACTIONS § 14:15 (6th ed. 2022). Courts apply this test not by looking at the appellants' wealth but by considering whether, absent a bond, recovery of costs *ex post* would be difficult for appellees once the judgment is affirmed; such difficulty arises when appellees would need to undertake multiple collection efforts because the objectors are geographically dispersed or outside the Court's jurisdiction. *See In re Equifax Inc. Customer Data Security Breach Litig.*, 1:17-md-02800, ECF No. 1094 at 9 (N.D. Ga. May 11, 2020) (factor favored bond because objectors "reside[d] outside of th[e] Court's physical jurisdiction" so "i[f] the costs of appeal [were] not voluntarily paid, the Plaintiffs would be forced to institute a collection action in one or more other jurisdictions"), *aff'd*, 999 F.3d at 1283–84 (affirming bond on this "independent" ground); *Dennings v. Clearwire Corp.*, 928 F. Supp. 2d 1270, 1271–72 (W.D. Wash. Mar. 11, 2013) (factor favored bond because objector resided out of state); *see also In re Initial Pub. Offering*, 728 F. Supp. 2d at 293 (factor favored bond because objectors were geographically dispersed and plaintiffs "would need to institute collection actions in numerous jurisdictions to recover their costs").

This factor strongly favors a bond here. The Objector-Appellants are geographically dispersed and all are outside the jurisdiction of this Court. Jennifer Cochran and Aaron Craker reside in Louisville, Kentucky; Home Depot is headquartered in Atlanta, Georgia; David Behenna resides in Portsmouth, New Hampshire; Topographic, Inc. is headquartered in Fort Worth, Texas; and Employee Services, Inc. is based in Wellsville, New York. If this Court is

7

affirmed on appeal and Objector-Appellants do not voluntarily pay costs, the Class will be left with no choice but to pursue appeals costs in multiple collection actions across the country. Moreover, the risk of nonpayment and burden of cost recovery is heightened in this case because the appeals costs will be extraordinary given the Settlement's size, *see infra* Section II.

      **D.**      **Objector-Appellants' litigation conduct warrants imposing a bond.**

The litigation conduct factor is frequently given little weight, if any. *See, e.g.*, *Aboltin*, 2019 WL 1092789, at \*4. (imposing bond without making any findings as to bad faith); *see also Equifax*, 999 F.3d at 1283–84 (11th Cir. 2021) (affirming bond based on nonpayment factor without considering litigation conduct factor, which it concluded "may not be relevant"). And courts have imposed appeal bonds without finding that the objectors were proceeding in bad faith and "simply attempting to extract money from the settling parties." *Aboltin*, 2019 WL 1092789, at \*4. Thus, even if Objector-Appellants are not objecting in bad faith, their belated attempt to delay execution of the settlement favors a bond. *See In re Checking Account Overdraft Litig.*, 2012 WL 456691, at \*2 (S.D. Fla. Feb. 14, 2012). The parties and this Court have worked tirelessly to resolve this "extraordinarily complex, protracted, and hard-fought" ten-year-old litigation. ECF No. 2931 at 2. Home Depot, and the other ASOs, for example, showed no interest in pursuing claims against the Blues until the Settlement was effectively in place. They neither sought intervention nor advanced their own claims, but merely objected to the hard-won Settlement reached by others.[8]

---

[8] Moreover, at least one of the objectors is affiliated with the same counsel whom the District Court in *Equifax* labeled a "serial objector[]." *In re Equifax Inc. Customer Data Security Breach Litig.*, 1:17-md-02800, ECF No. 1094 at 7 (N.D. Ga. May 11, 2020) ("This Court has already found that Objector[] [George] Cochran [and others] are serial objectors, that they have unsuccessfully asserted many of the same or similar objections in other class action settlements, [and] that their objections are not in the best interests of the class." (internal quotation marks omitted)); *see In re Blue Cross Antitrust Lit.*, ECF No. 2943 (showing that Objector-Appellant Jennifer Cochran is affiliated with George Cochran). In *Equifax*, Judge Thrash suggested that

**II.     The bond should include costs taxable under Federal Rule of Appellate Procedure 39(e), settlement administration costs, and delay costs.**

The bond amount is left to this Court's sound discretion. *In re Young v. New Process Steel, LP*, 419 F.3d 1201, 1207–08 (11th Cir. 2005); *see also In re Equifax Customer Data Security Breach Litig.*, 1:17-md-02800-TWT, ECF No. 1094 at 5 (N.D. Ga. May 11, 2020). The purpose of Federal Rule of Appellate Procedure 7 is to "protect the rights of appellees brought into appeals court by the appellants." *Pedraza v. United Guaranty Corp.*, 313 F.3d 1323, 1333 (11th Cir. 2002) (internal quotation marks omitted). And the appeals costs enumerated as taxable by Federal Rule of Appellate Procedure 39(e) are not exhaustive. *Id.* at 1329–30. The bond should thus include costs under Rule 39(e); costs the class will endure based on the appeals prolonging the notice and settlement administration period; and the cost of delayed relief to the Class flowing from the appeals.

*First,* the bond should include costs expressly taxable under Rule 39(e), which are regularly bonded on appeal. *Id.* at 1329–30. Those costs include expenses related to the preparation and transmission of the record, and preparation of appellate briefs and appendices. Fed. R. App. 39(e). Subscriber Plaintiffs estimate that they could incur approximately $20-25,000 in these types of taxable costs, which is unsurprising considering the gargantuan size of the record and the number of appeals they will need to address. *See* ECF No. 2931 at 2–3 (describing size of record and scope of litigation effort).

*Second,* the bond should include costs of administering the Settlement that will grow because of the appeal. Such settlement administration costs are frequently included in a bond. *In*

---

this fact favored imposition of the bond. 1:17-md-02800, ECF No. 1094 at 7–10 (N.D. Ga. May 11, 2020). Although the Eleventh Circuit did not opine on that suggestion, it held that Mr. Cochran's arguments were wholly meritless. 999 F.3d at 1273–74, 1283–84. These facts, too, favor a bond. *See In re Enfamil*, 2012 WL 1189763, at *4.

9

*re New Jersey Tax Sales Certificates Antitrust Litig.*, 750 F. Appx. 73, 84–85 (3d Cir. 2018) (affirming Rule 7 bond that included "administrative expenses"); *In re Polyurethane Foam*, 178 F. Supp. 3d 635, 645 (N.D. Ohio Apr. 13, 2016) (adding amounts "to the bond for increased administrative costs"); *In re Nutella Mktg. & Sales Pracs. Litig.,* 589 F. App'x 53, 61 (3d Cir. 2014) (affirming appeal bond that included cost of continued settlement administration); *Dennings v. Clearwire Corp.*, 928 F. Supp. 2d 1270, 1271 (W.D. Wash. Mar. 11, 2013) (including in bond "increased expenses in settlement administration and administrative costs"); *In re Uponor, Inc. F1807 Plumbing Fittings Prods. Liab. Litig.*, 2012 WL 3984542, at *4 (D. Minn. Sep. 11, 2012) (same; "[c]osts incurred as a result of delay of a settlement caused by an appeal are recoverable under Rule 7"); *Miletak v. Allstate Ins. Co.*, 2012 WL 3686785 (N.D. Cal. Aug. 27, 2012) (including administrative costs in bond); *In re Checking Account*, 2012 WL 456691, at *2 (same); *In re Pharma. Industr. Average Wholesale Price Litig.*, 520 F. Supp. 2d 274 (D. Mass. Nov. 2, 2007) (same); *In re Compact Disc Minimum Advertised Price Antitrust Litigation*, 2003 WL 22417252 (D. Maine, Oct. 7, 2003) (same); *Brandewie v. Wal-Mart Stores, Inc.*, 2016 WL 698110, at *3 (N.D. Ohio Feb. 22, 2016) (including "the delay of administering the class action or providing notice to class members").

Here, settlement administration costs will include servicing, protecting, and maintaining the massive, complex database of Defendants' claims data relating to hundreds of millions of insureds, as well as the database relating to over eight million claim forms already filed by class members. Ex. A, Bian Decl. ¶ 3. They will also include the maintenance and use of website pages and a call center that provide information to class members which must be maintained through appeal and the costs of providing class-wide notices necessary during the appeal. *Id*; *see also Heekin v. Anthem, Inc.*, 2013 WL 752637, at *4 (S.D. Ind. Feb. 27, 2013) (including in bond

10

the maintenance and use of website and hotline). Moreover, because of the Class' immense size, a delay in distributing monetary relief will require it to endure the costs of reestablishing contact information for Class members, hundreds of thousands of whom are likely to move—or die—before the appeals are resolved. All of these costs will diminish the $2.67 billion Settlement Amount.  ECF No. 2610-2 at 40. JND Legal Administration, the Court-approved provider of Notice and Administration services under the Settlement, estimates that these costs will total at least $13.9 million. Ex. A, Bian Decl. ¶ 4.[9]

  ***Third,*** the bond should include the substantial costs the Class will endure because the appeals will (a) delay the full scope of the injunctive relief the Court has approved, and (b) penalize the Class by sequestering the Settlement proceeds in low-yield money-market funds and the like, for the entire period of the appeals. The settlement provides for wholesale, nationwide changes to the health insurance market and creates a $2.67 billion fund. Large parts of the injunctive relief benefits, however, will remain inoperative for a year or more during the appeal. When a class is deprived of the benefit of the judgment due to an appeal, an appeal bond is intended to cover the cost of that delay. *In re Polyurethane Foam*, 178 F. Supp. 3d at 639–42, 645 (finding that "lost interest" "should be included in the bond"); *Brandewie*, 2016 WL 698110, at *3 ("consider[ing]" that "the appeal will deprive class members of the use of" settlement funds when setting appeal bond amount); *In re Checking Account*, 2012 WL 456691, at *3 n.6 (explaining that bond amount was derived from calculating lost interest on $280 million settlement); *In re Wal-Mart Wage & Hour Emp. Pracs. Litig.*, 2010 WL 786513, at *2 (D. Nev.

---

[9] To be sure, *the Class* does not risk bearing these costs, until they exceed $100 million, ECF No. 2610-2 at 12–13, at which point it is Settlement Class Counsel and Self-Funded Sub-Class Settlement Counsel's responsibility to request from the Court that Defendants replenish the Notice and Administration Fund. But current estimates from JND show that total notice and administration costs will in fact exceed $100 million. Ex. A, Bian Decl. ¶ 5.

11

Mar. 8, 2010) (including in bonds an estimate of "interest costs" to class members caused by the appeal); *Allapattah*, 2006 WL 1132371 at *18 (requiring a $13,500,000 bond to cover the damages, costs, and lost interest flowing from appeal).[10]

The appeals will cause the Class to incur at least two delay costs. By impounding the settlement fund in low-yield money-market accounts during the appeals' pendency, those appeals will deprive the Class of substantial "liquidity value"—worth approximately $54.2 million. Ex. B, McKnight Decl. ¶¶ 8–10 & T.2.[11] At least as important, the delay will prevent the Class from receiving key components of the Settlement's injunctive benefits. Critically, the appeal will *permanently* deprive the Subscribers of as much as two years of those injunctive benefits. As this Court has recognized, this "historic" and "transformative" injunctive relief is "even more crucial[]" than the $2.67 billion settlement fund, ECF No. 2931 at 3, 5, 40–41, 68 (explaining that the structural relief is "truly exceptional" and an "excellent result"). Unless Objector-Appellants shoulder these costs if their appeal fails, the Class will go forever uncompensated for the delay in injunctive relief, and the cost of that delay is approximately $45.8 million.[12] This Court should therefore require the Objector-Appellants to post a bond that includes both $45.8

---

[10] The Eleventh Circuit has not addressed whether delay costs can be included in an appeal bond. In *Pedraza*, however, the Court held that Federal Rule of Appellate Procedure 7 "never sets forth an exhaustive list or a general definition of 'costs,'" and expressly rejected a construction of Rule 7 that would limit the Rule to the routine "costs" specified in Federal Rule of Appellate Procedure 39. 313 F.3d at 1330 ("Under no fair reading of the simple, unambiguous language of Rule 39 can an exportable definition of 'costs' be perceived in the language of that provision.").

[11] As set forth in his Declaration, David McKnight of the Brattle Group explains that locking up the Settlement proceeds for two years will deprive Class members of access to funds that they could otherwise use to pay down debt or invest. The loss to Class members of being deprived of access to the Settlement proceeds is the cost they would incur to borrow those funds today. *Id.*

[12] Mr. McKnight likewise estimates that the injunctive relief delay costs would total $45.8 million. Ex. B, ¶¶ 5–7 & T.1. This calculation assumes that the value of the Settlement's deferred injunctive relief is only one-fifth of the cash value. *Id.* ¶ 5.

million for the delayed injunctive relief and $54.2 million for the lost liquidity, based on a two-year appeals duration. Ex. B, McKnight Decl. ¶ 11.[13]

### III. Even apart from Federal Rule of Appellate Procedure 7, this Court has ample authority to impose the bond described herein.

Federal Rule of Appellate Procedure 8 and this Court's inherent power each independently justify the bond. A Rule 8 bond is appropriate when a class action objector appeals a finally-approved settlement, effectively staying the district court's final judgment. *In re Checking Acct*, 2012 WL 456691, at *2 ("[B]ecause the filing of this appeal prevents distribution of the Settlement proceeds as ordered by this Court's Final Judgment, it is an actual stay of Judgment and bond is appropriate"). And Rule 8 bonds commonly include delay costs caused by appeals. *See, e.g.*, *Aboltin,* 2019 WL 1092789, at *3; *In re Checking Account*, 2012 WL 456691, at *2–*3. By preventing substantial portions of the injunctive relief from taking effect and preventing the determination and payment of any monetary claims, Objector-Appellants' appeals have effectively stayed this Court's final judgment; they should be required to post a bond.

This Court also has the inherent authority to impose such a bond. *See Linneman v. Vita-Mix Corp.*, 2018 WL 5722722, at *4 (S.D. Ohio Nov. 1, 2018) (exercising inherent power to require objectors to post bond that included delay costs). In *Pedraza*, 313 F.3d at 1335, the Eleventh Circuit observed:

> The district court also relied on its inherent power to manage its affairs as an alternate basis for its inclusion of estimated attorneys' fees within the appellate cost bond that it required of Olorunnisomo. The court was correct in recognizing that in addition to enjoying broad discretion to manage litigation before them, federal courts

---

[13] It is appropriate to estimate the lost liquidity value based on the same two-year appeals duration used to estimate the value of the lost injunctive relief. Based on the complexity of the claims payment process and the fact that distributions cannot occur until all claims are approved, *see generally* ECF No. 2610-5 (while Objector-Appellants challenge the allocation of the Settlement fund itself), the appeals will effectively pause the claims adjudication and distribution process.

> possess the inherent power to require the posting of cost bonds and to provide for the award of attorneys' fees. *See Chambers*, 501 U.S. at 47–48, 111 S.Ct. at 2134–35 (attorneys' fees); *HMG Prop. Investors, Inc. v. Parque Indus. Rio Canas, Inc.*, 847 F.2d 908, 916 (1st Cir. 1988) (bonds). Notably, courts possess these powers "even if procedural rules exist which [govern] the same conduct." *Chambers*, 501 U.S. at 49, 111 S.Ct. at 2135.

The exercise of that inherent power is particularly appropriate here, given the massive and far-reaching nature of the Settlement, and the Objector-Appellants' power to delay relief for millions of Class members.

## CONCLUSION

For all of the foregoing reasons, the Court should require the Objector-Appellants to post an appeal bond. Although some courts have required each objector to post a separate bond, *e.g., In re Checking Account*, 2012 WL 456691, at *3, Subscriber Plaintiffs do not object to Objector-Appellants posting a bond jointly and severally. *See In re Polyurethane Foam*, 178 F. Supp. 3d at 645 ("Courts routinely require multiple objectors who are appealing the same order to post a bond jointly and severally," which allows objectors to "pool their resources" making the bonds "less onerous" for each appellant) (collecting cases). So that the individual Objector-Appellants' appellate rights are not overburdened, the bond should be two-tiered: At the first tier, the three corporate Objector-Appellants (Home Depot, Topographic and Employee Services) should be required to collectively post a bond of $113 million, which includes costs taxable under Rule 39(e), administrative costs, and delay costs (less costs covered by the second tier); at the second tier, the individual Objector-Appellants should be required to collectively post a bond of $900,000—less than 1% of the total amount secured.[14]

---

[14] Collectively, the two bonds amount to the total costs of $113.9 million, which is $20,000 (Rule 39(e) costs) + $13.9 million (settlement administration costs) + $54.2 million (lost liquidity value) + $45.8 million (lost injunctive relief value), rounded down.

14

This the 1st day of November, 2022      Respectfully submitted,

  /s/ Cyril V. Smith
Cyril V. Smith – *Settlement Committee & PSC Member*
ZUCKERMAN SPAEDER, LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202-1031
Tel: (410) 949-1145
Fax: (410) 659-0436
csmith@zuckerman.com

Charles J. Cooper – *Co-Chair, Written Submissions Committee*
COOPER & KIRK, PLLC
1523 New Hampshire Avenue NW
Washington, DC 20036
Tel: (202) 220-9600
Fax: (202) 220-9601
ccooper@cooperkirk.com

David Boies – *Co-Lead Counsel*
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, NY 10504
Tel: (914) 749-8200
Fax: (914) 749-8200
dboies@bsfllp.com

Chris T. Hellums – *Local Facilitating Counsel*
PITTMAN, DUTTON & HELLUMS, P.C.
2001 Park Place N, 1100 Park Place Tower
Birmingham, AL 35203
Tel: (205) 322-8880
Fax: (205) 328-2711
chrish@pittmandutton.com

Gregory Davis – *Settlement Committee & PSC Member*
DAVIS & TALIAFERRO, LLC
7031 Halcyon Park Drive
Montgomery, AL 36117
Tel: (334) 832-9080
Fax: (334) 409-7001
gldavis@knology.net

  /s/ David Guin
David Guin – *Co-Chair, Written Submissions Committee*
Tammy Stokes – *Damages Committee*
GUIN, STOKES & EVANS, LLC
300 Richard Arrington Jr. Blvd. North
Suite 600/Title Building
Birmingham, AL 35203
Tel: (205) 226-2282
Fax: (205) 226-2357
davidg@gseattorneys.com
tammys@gseattorneys.com

  /s/ Bryan M. Reines
Bryan M. Reines (*pro hac vice* forthcoming)
Zuckerman Spaeder, LLP
1800 M Street NW, Suite 1000
Washington, D.C. 20036-5807
breines@zuckerman.com

Michael Hausfeld – *Co-Lead Counsel*
HAUSFELD LLP
1700 K Street NW, Suite 650
Washington, DC 20006
Tel: (202) 540-7200
Fax: (202) 540-7201
mhausfeld@hausfeldllp.com

William A. Isaacson – *Settlement Committee & PSC Member*
PAUL WEISS
2001 K Street, NW
Washington, DC 20006-1047
wisaacson@paulweiss.com

Megan Jones – *Settlement Committee & PSC Member*
Arthur Bailey – *Discovery Committee*
HAUSFELD LLP
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Tel: (415) 633-1908
Fax: (415) 358-4980
mjones@hausfeldllp.com
abailey@hausfeldllp.com

15

Kathleen Chavez – *Settlement Committee & PSC Member*
FOOTE, MIELKE, CHAVEZ & O'NEIL, LLC
10 West State Street, Suite 200
Geneva, IL 60134
Tel: (630) 797-3339
Fax: (630) 232-7452
kcc@fmcolaw.com

Eric L. Cramer – *Expert Committee*
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Tel: 1-800-424-6690
Fax: (215) 875-4604
ecramer@bm.net

Richard Feinstein – *Expert Committee*
Karen Dyer – *Expert Committee*
Hamish P.M. Hume – *Discovery Committee*
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue NW
Washington, DC 20015
Tel: (202) 237-2727
Fax: (202) 237-6131
tchutkan@bsfllp.com
kdyer@bsfllp.com
hhume@bsfllp.com

Patrick Cafferty – *Discovery Committee*
CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP
101 North Main Street, Suite 565
Ann Arbor, MI 48104
Tel: (734) 769-2144
Fax: (734) 769-1207
pcafferty@caffertyclobes.com

Bryan Clobes – *Litigation Committee*
Ellen Meriwether – *Written Submissions Committee*
CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP
1101 Market Street, Suite 2650
Philadelphia, PA 19107
Tel: (215) 864-2800
Fax: (215) 864-2810
bclobes@caffertyclobes.com
emeriwether@caffertyclobes.com

Douglas Dellaccio – *Litigation Committee*
CORY WATSON CROWDER & DEGARIS, P.C.
2131 Magnolia Avenue, Suite 200
Birmingham, AL 32505
Tel: (205) 328-2200
Fax: (205) 324-7896
ddellaccio@cwcd.com

Edwin J. Kilpela, Jr.
Benjamin Sweet – ***Litigation Committee***
DEL SOLE CAVANAUGH STROYD LLC
200 First Avenue, Suite 300
Pittsburgh, PA 15222
Tel: (412) 261-2393
Fax: (412) 261-2110
ekilpela@dsclaw.com
bsweet@dsclaw.com

Charles T. Caliendo – ***Class Certification Committee***
GRANT & EISENHOFER
485 Lexington Avenue
New York, NY 10017
Tel: (646) 722-8500
Fax: (646) 722-8501
ccaliendo@gelaw.com

Daniel Gustafson – ***Litigation Committee***
Daniel C. Hedlund – ***Damages Committee***
GUSTAFSON GLUEK PLLC
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Tel: (612) 333-8844
Fax: (612) 339-6622
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com

John Saxon – ***Litigation Committee***
JOHN D. SAXON, P.C.
2119 3rd Avenue North
Birmingham, AL 35203-3314
Tel: (205) 324-0223
Fax: (205) 323-1583
jsaxon@saxonattorneys.com

Andrew Lemmon – ***Chair, Discovery Committee***
LEMMON LAW FIRM
650 Poydras Street, Suite 2335
New Orleans, LA 70130
Tel: (504) 581-5644
Fax: (504) 581-2156
andrew@lemmonlawfirm.com

Robert M. Foote – ***Damages Committee***
FOOTE, MIELKE, CHAVEZ & O'NEIL, LLC
10 West State Street, Suite 200
Geneva, IL 60134
Tel: (630) 797-3339
Fax: (630) 232-7452
rmf@fmcolaw.com

Robert Eisler – ***Discovery Committee***
GRANT & EISENHOFER
123 Justison Street
Wilmington, DE 19801
Tel: (302) 622-7000
Fax: (302) 622-7100
reisler@gelaw.com

Brent Hazzard – ***Litigation Committee***
HAZZARD LAW, LLC
447 Northpark Drive
Ridgeland, MS 39157
Tel: (601) 977-5253
Fax: (601) 977-5236
brenthazzard@yahoo.com

Lawrence Jones – ***Damages Committee***
JONES WARD PLC
312 South Fourth Street, Sixth Floor
Louisville, KY 40202
Tel: (502) 882-6000
larry@jonesward.com

Virginia Buchanan – ***Chair, Class Certification Committee***
LEVIN PAPANTONIO THOMAS MITCHELL RAFFERTY & PROCTOR, P.A.
316 South Baylen Street, Suite 600
Pensacola, FL 32502
Tel: (850) 435-7000
Fax: (850) 435-7020
vbuchanan@levinlaw.com

Robert Methvin – ***Chair, Settlement Committee***
James M. Terrell – ***Class Certification Committee***
MCCALLUM, METHVIN & TERRELL, P.C.
The Highland Building
2201 Arlington Avenue South
Birmingham, AL 35205
Tel: (205) 939-0199
Fax: (205) 939-0399
rgm@mmlaw.net
jterrell@mmlaw.net

H. Lewis Gillis – ***Co-Head Chair, Litigation Committee***
MEANS GILLIS LAW, LLC
3121 Zelda Court
Montgomery, AL 36106
Tel: 1-800-626-9684
hlgillis@tmgslaw.com

Dianne M. Nast – ***Class Certification Committee***
NASTLAW LLC
1101 Market Street, Suite 2801
Philadelphia, PA 19107
Tel: (215) 923-9300
Fax: (215) 923-9302
dnast@nastlaw.com

Edgar D. Gankendorff – ***Co-Head Chair, Litigation Committee***
Eric R.G. Belin – ***Damages Committee***
PROVOSTY & GANKENDORFF, LLC
650 Poydras Street, Suite 2700
New Orleans, LA 70130
Tel: (504) 410-2795
Fax: (504) 410-2796
egankendorff@provostylaw.com
ebelin@provostylaw.com

Garrett Blanchfield – ***Written Submissions Committee***
REINHARDT, WENDORF & BLANCHFIELD
E-1250 First National Bank Building
332 Minnesota Street
St. Paul, MN 55101
Tel: (651) 287-2100
Fax: (651) 287-2103
g.blanchfield@rwblawfirm.com

Michael McGartland – ***Class Certification Committee***
MCGARTLAND & BORCHARDT LLP
1300 South University Drive, Suite 500
Fort Worth, TX 76107
Tel: (817) 332-9300
Fax: (817) 332-9301
mike@attorneysmb.com

David J. Hodge – ***Chair, Settlement Committee***
MORRIS, KING & HODGE
200 Pratt Avenue NE
Huntsville, AL 35801
Tel: (256) 536-0588
Fax: (256) 533-1504
lstewart@alinjurylaw.com

Patrick W. Pendley – ***Chair, Damages Committee***
Christopher Coffin – ***State Liaison Committee***
PENDLEY, BAUDIN & COFFIN, LLP
Post Office Drawer 71
Plaquemine, LA 70765
Tel: (225) 687-6369
pwpendley@pbclawfirm.com
ccoffin@pbclawfirm.com

Richard Rouco – ***Written Submissions Committee***
QUINN, CONNOR, WEAVER, DAVIES & ROUCO LLP
2700 Highway 280 East, Suite 380
Birmingham, AL 35223
Tel: (205) 870-9989
Fax: (205) 870-9989
rrouco@qcwdr.com

Jason Thompson – ***Damages Committee***
SOMMERS SCHWARTZ
One Towne Square, 17th Floor
Southfield, MI 48076
Tel: (248) 355-0300
jthompson@sommerspc.com

| | |
|---|---|
| Larry McDevitt – ***Chair, Class Certification Committee*** <br> David Wilkerson – ***Discovery Committee*** <br> VAN WINKLE LAW FIRM <br> 11 North Market Street <br> Asheville, NC 28801 <br> Tel: (828) 258-2991 <br> lmcdevitt@vwlawfirm.com <br> dwilkerson@vwlawfirm.com | Carl S. Kravitz – ***Expert Committee*** <br> ZUCKERMAN SPAEDER LLP <br> 1800 M Street NW, Suite 1000 <br> Washington, DC 20036-5807 <br> Tel: (202) 778-1800 <br> Fax: (202) 822-8106 <br> ckravitz@zuckerman.com |

*Subscriber Plaintiff Co-Lead Counsel and Committee Chairs and Members*

## CERTIFICATE OF SERVICE

I hereby certify that on November 1, 2022, the foregoing was filed with the Clerk of the Court and served on counsel of record via ECF.

                                                                 /s/ David Guin