# Exhibit B

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| IN RE: BLUE CROSS BLUE SHIELD<br><br>ANTITRUST LITIGATION<br><br>(MDL NO. 2406) | **Master File No.:**<br>**2:13-CV-20000-RDP** |

### DECLARATION OF DAVID L. MCKNIGHT

I, David L. McKnight pursuant to 28 U.S.C. § 1746(2), under penalty of perjury, hereby declare as follows:

1. I am a Principal in the Litigation and Finance Practice of The Brattle Group. I have over 20 years of experience consulting in litigations pertaining to valuation, bankruptcy, product liability, and commercial disputes. I have valued companies and business opportunities using discounted cash flow analysis, analyzed the present value of streams of cash flows, and computed damages in commercial disputes. I have written and presented on issues relating to valuation, tort liability, and bankruptcy, and have submitted expert oral and written testimony in multiple venues including Federal and State Court, the American Arbitration Association, FINRA, and JAMS. I hold an M.B.A. with Distinction from New York University's Leonard N. Stern School of Business with specializations in Finance and Financial Systems and Analytics, an M.S. in Mathematics from New York University's Graduate School of Arts and Science, and a B.A. in Mathematics from Vassar College. A copy of my CV is attached as Appendix A.

2. I have been retained by Settlement Class Counsel and Self-Funded Sub-Class Settlement Counsel (together, "Class Counsel") to estimate the damages that Class Members would incur if the distribution of the Settlement Fund and certain elements of the Injunctive Relief agreed to in

the October 16, 2020 Settlement Agreement (the "Settlement Agreement") were delayed by two years. The materials I have considered in reaching the opinions set forth in this declaration are listed in Appendix B.

3. Pursuant to the Settlement Agreement, the Settling Individual Blue Plans and BCBSA (the "Settling Defendants") have paid $2.67 billion into the Settlement Fund to be distributed to Class Members and Class Counsel.[1] The Settlement Agreement also contemplates that the Settling Defendants will provide Injunctive Relief that will increase competition and lower insurance premiums.[2] The Settlement Agreement has been opposed by several Class Members, including: Home Depot U.S.A., Inc., together with all its affiliates;[3] Topographic, Inc. and Employee Services, Inc.;[4] Jennifer Cochran and Aaron Craker;[5] and David G. Behenna[6] (together, the "Objectors").

4. I have been asked to compute the damages to Class Members assuming that the settlement is delayed two years as a result of the appeal by the Objectors. A two-year delay in the proposed Settlement will cause losses to Class Members, because (1) it will delay the implementation of certain elements of the Injunctive Relief, and (2) it will delay the distribution of the Settlement Fund. I understand that out of the $2.67 billion Settlement Fund, $100 million is being used to pay for notice and administrative expenses and that $75 million has already been paid from the Settlement Fund.[7] Thus, although the Settlement's cash value totals $2.67 billion, only $2.495 billion ($2.67 billion minus $175 million) is subjected to a delay in payment because of the appeals. I refer to this $2.495 billion amount as the "Adjusted Settlement Fund." I compute the damages to Class Members arising from both a two-year delay in the implementation of Injunctive Relief and a two-year delay in the distribution of the Adjusted Settlement Fund.

---

[1] Settlement Agreement, ¶22-27.
[2] Settlement Agreement, ¶10-21.
[3] Home Depot U.S.A., Inc.'s Renewal of Objections and Post-Hearing Response, filed December 8, 2021; and Home Depot, Notice of Appeal, filed September 8, 2022.
[4] Topographic and Employee Services, Notice of Appeal, filed September 7, 2022.
[5] Jennifer Cochran and Aaron Craker, Notice of Appeal, filed September 7, 2022.
[6] David G. Behenna, Notice of Appeal, filed September 8, 2022.
[7] $100 million was paid into the Notice and Administration Fund pursuant to ¶23.a. of the Settlement Agreement, and, and a partial award of $75 million was distributed from the Settlement Fund pursuant to ¶28.d. of the Settlement Agreement.

5. The Injunctive Relief contemplated in the Settlement Agreement includes a number of changes to the alleged anticompetitive behaviors by the Settling Defendants. The Injunctive Relief is expected to end this alleged anticompetitive behavior, thereby promoting competition and lowering insurance premiums. I understand that the Settling Defendants have already begun implementing some parts of the Injunctive Relief, but that certain elements will be delayed if the Objectors are successful in challenging the settlement. The delay in Injunctive Relief means that health insurance costs will not decline as rapidly as they otherwise would have but-for the assumed two-year delay. I have been asked to assume that the present value of the delayed Injunctive Relief to Class Members is $534 million, or one-fifth of the cash value of the Settlement.

6. Class Members will be damaged by a delay in Injunctive Relief because cost savings that they would have enjoyed with a present value of $534 million will be delayed for two years. The Class is composed of both employees and employers. For both fully insured and self-insured plans, employers pay the majority of the health insurance costs.[8] I reach no conclusion as to whether the Injunctive Relief cost savings will be passed on to employees or retained by employers. However, for purposes of computing damages, I conservatively assume that all of the cost savings of the Injunctive Relief will accrue to the employers. This assumption is conservative because individuals tend to have much higher borrowing costs than businesses,[9] so the loss from delaying the benefit of the Injunctive Relief will be larger for individuals than for businesses.

7. Damages to Class Members for the delay in Injunctive Relief can be computed as the difference between $534 million – i.e., the assumed value of the Injunctive Relief assuming no delay – and the value of that relief if the $534 million cost savings are delayed by two years. For purposes of

---

[8] A study by the Kaiser Foundation shows that on average over the Class Period employees with fully insured health insurance plans contributed 17 percent of the health insurance premiums for single coverage, and 35 percent of premiums for family coverage. For Self-Funded Group coverage employee contributions have been slightly higher for single coverage and significantly lower for family coverage. *See* Declaration of Darrell Chodorow, October 30, 2020, ¶33, ¶51.

[9] The interest rate on 24-month personal loans in August 2022 averaged 10.16 percent which was more than double the average yield on investment grade corporate bonds. *See* Federal Reserve G.19 Statistical Release, Consumer Credit, August 2022; and Bloomberg US Corporate Bond Index, Yield to Worst, Bloomberg LLP.

computing the present value of the cost savings, I discount the value of the delayed Injunctive Relief at the after-tax corporate cost of borrowing. The Injunctive Relief will benefit the firms by reducing their operating costs. Therefore, the benefit will only be realized if the firms continue to operate and is subject to business risk. Accordingly, the corporate borrowing rate is the appropriate discount rate. I conservatively use the yield on the Bloomberg US Corporate Bond Index which includes corporate bonds that are publicly issued, investment grade, fixed rate, and taxable.[10] This cost of borrowing is conservative, because most individuals and small businesses will have higher borrowing costs than investment grade corporations. I compute that the present value of the delayed Injunctive Relief is $488.2 million. This is $45.8 million lower than the value of the Injunctive Relief today. Accordingly, Class Members will incur at least $45.8 million in damages as a result of the two-year delay in injunctive relief.[11] See Table 1 below for details.

---

[10] https://www.bloomberg.com/quote/LUACTRUU:IND.
[11] This is a lower bound estimate because the discount rate is higher for smaller companies and employees.

**TABLE 1: DAMAGES TO CLASS MEMBERS FROM DELAYED INJUCTIVE RELIEF ($ MILLIONS)**

| | | |
|---|---|---|
| Corporate Bond Yield | [1] | 5.90% |
| Average Effective Corporate Tax Rate | [2] | 22.3% |
| Tax-Adjusted Corporate Bond Yield | [3] | 4.59% |
| Current Value of Injunctive Relief | [4] | $534.0 |
| Delayed Value of Injunctive Relief | [5] | $488.2 |
| **Damages** | [6] | **$45.8** |

Sources and Notes:
- [1]: Bloomberg US Corporate Bond Index yield to worst as of October 26, 2022 is from Bloomberg LLP.
- [2]: Tax rate is from the OECD Corporate Tax Statistics database and is the 2020 forecast of composite effective taxes under the macroeconomic scenario that gives the largest rate.
- [3]: [1] x (1 - [2]).
- [4]: Assumed present value of delayed Injunctive Relief.
- [5]: [4] / (1 + [3])².
- [6]: [4] - [5].

8. The Class will also be harmed by a delay in receiving a distribution from the $2.495 billion Adjusted Settlement Fund. The Adjusted Settlement Fund is currently in escrow where those funds must be invested in "short-term instruments backed by the full faith and credit of the U.S. Government or fully insured in writing by the U.S. Government, or money market funds rated Aaa and AAA, respectively by Moody's Investor Services and Standard and Poor's."[12] T-bills and triple-A rated money market funds are risk-free and highly liquid investments. In part because of their liquidity, these investments are often included with cash for financial accounting purposes.[13] However, Class Members will not have access to these funds for two years if the Settlement is delayed. So while the Adjusted Settlement Funds will be accruing a return on the $2.495 billion commensurate with a risk-free, liquid investment, Class Members will not enjoy the benefits of liquidity. Put simply, no investor would willingly lock their money up for two years for a return that they could get by otherwise investing in T-bills. Accordingly, the damage

---

[12] Settlement Agreement, ¶26.

[13] *See* FASB, ASC 305-10-20 ("Cash equivalents are short-term, highly liquid investments [. . . .] Examples of items commonly considered to be cash equivalents are Treasury bills, commercial paper, money market funds, and federal funds sold (for an entity with banking operations).").

to Class Members is the value of the lost liquidity on the $2.495 billion Adjusted Settlement Fund.

9. Liquidity is valuable, and investors demand a premium to invest in illiquid assets.[14] I estimate the value of the lost liquidity to Class Members, based on the difference between the rate of return that they can expect to receive on the funds in escrow and the corporate cost of borrowing. If Class Members had access to the Settlement funds today, they could use that money to pay down debt or otherwise invest. If the distribution of the Adjusted Settlement Fund is delayed by two years, Class Members will either have to borrow that money or forego investments until the funds are ultimately distributed. I compute the value of the lost liquidity as the difference between the value of the Adjusted Settlement Fund if it were distributed immediately – i.e., $2.495 billion – and the present value of the Adjusted Settlement Fund if it were distributed in two years. In two years, the Fund will grow to $2.670 billion after taxes if it is invested in 1-year T-bills at the current yield of 4.34 percent.[15] Because these funds could be used to offset borrowing but-for the lost liquidity, I discount the $2.670 billion at the after-tax corporate borrowing rate. The present value of the delayed Adjusted Settlement Fund distribution is $2.441 billion. This implies that Class Members stand to lose at least $54.2 million from the loss in liquidity. See Table 2 below for details. This is a lower bound of the value of the lost liquidity, because, as discussed above, Class Members that are small businesses or individuals generally have a higher cost of borrowing than investment grade corporate debt.[16]

---

[14]  *See e.g.*, Holthausen, Robert W., and Mark E. Zmijewski. *Corporate Valuation – Theory, Evidence and Practice*. Cambridge Business Publishers, LLC, 2014, p. 692 ("Empirical research documents that illiquidity discounts can be as large as 35% or even larger."); and Brealey, Richard A., Stewart C. Myers, and Franklin Allen. *Corporate finance*. Tenth Edition. McGraw-Hill/Irwin, 2011, p. 66 ("Many investors value liquidity and will demand a higher interest rate on a less liquid bond.").

[15]  I conservatively use the yield for 1-year T-bills because they are the highest yielding T-bills as of October 26, 2022. *See* Federal Reserve, H.15 Selected Interest Rates, Statistical Release, release date October 27, 2022.

[16]  While there may be instances where particular Class Members have lower borrowing costs or no opportunity to use distributions from the Adjusted Settlement Fund to pay down debt or invest, the after-tax corporate bond yields for investment grade corporations are a conservative estimate of Class Members' borrowing costs on average, and most Class Members would have immediate use for the funds.

**TABLE 2: DAMAGES TO CLASS MEMBERS FROM LOST LIQUIDITY
($ MILLIONS)**

| | | |
|---|---|---:|
| Initial Value of Adjusted Settlement Fund | [1] | $2,495 |
| 1-Year Treasury Bill Yield | [2] | 4.34% |
| Federal Corporate Income Tax Rate | [3] | 21.0% |
| After-Tax Earnings | [4] | $175 |
| Value of Adjusted Settlement Fund in 2-Years | [5] | $2,670 |
| Corporate Bond Yield | [6] | 5.90% |
| Average Effective Corporate Tax Rate | [7] | 22.3% |
| Tax-Adjusted Corporate Bond Yield | [8] | 4.59% |
| Present Value of Adjusted Settlement Fund in 2-Year | [9] | $2,441 |
| **Damages** | **[10]** | **$54.2** |

Sources and Notes:
[1]: Assumed initial value of the Adjusted Settlement Fund.
[2]: Treasury bill yield as of October 26, 2022 is from the Federal Reserve, H.15 Selected Interest Rates, Statistical Release.
[3]: See IRS Publication 542, Revised: January 2022.
[4]: $((1 + [2])^2 - 1) \times (1 - [3]) \times [1]$.
[5]: [1] + [4].
[6]: Bloomberg US Corporate Bond Index yield to worst as of October 26, 2022 is from Bloomberg LLP.
[7]: Tax rate is from the OECD Corporate Tax Statistics database and is the 2020 forecast of composite effective taxes under the macroeconomic scenario that gives the largest rate.
[8]: $[6] \times (1 - [7])$.
[9]: $[5] / (1 + [8])^2$.
[10]: [1] - [9].

10. This calculation implies that the value of the lost liquidity is 2.2 percent of the value of the Adjusted Settlement Fund.[17] This estimate is supported by Robert Comment's 2012 article in the Journal of Applied Corporate Finance that computed a 2.5 percent illiquidity discount for riskless assets based on the spread between yields on 5-year certificates of deposit and U.S. treasuries.[18] While a 5-year term is longer than the 2-year delay envisioned here, certificates of deposit are not entirely illiquid and are only subject to penalties for early withdrawal. Accordingly, I find that a 2.2 percent value of lost liquidity is supported by the spread between certificates of deposit and treasuries.

---

[17]  2.2% = $54.2/$2,495.

[18]  Comment, Robert. "Revisiting the Illiquidity Discount for Private Companies: A New (and "Skeptical") Restricted-Stock Study." Journal of Applied Corporate Finance 24, no. 1 (2012): 80-91.

11. I conclude that a two-year delay in the Settlement will result in damages to the Class of no less than $100.1 million of which $45.8 million relates to a delay in Injunctive Relief and $54.2 million relates to a delay in the distribution of the $2.495 billion Adjusted Settlement Fund.[19]

Respectfully Submitted,

*David McKnight*

David L. McKnight
November 1, 2022

---

[19] These numbers appear not to add as a result of rounding.

**APPENDIX A – CURRICULUM VITAE OF DAVID L. MCKNIGHT**

Mr. McKnight is a Principal with the Brattle Group with over 20 years of experience providing expert testimony and consulting services in matters pertaining to mass torts, securities, finance, valuation, and bankruptcy.

Mr. McKnight has valued companies and business opportunities in bankruptcy and commercial disputes using discounted cash flow analysis, market multiples, and comparable transactions. He has assessed claims of fraudulent conveyance and breach of fiduciary duty, has computed damages in complex commercial transactions, and has assessed economic substance in tax matters. He has submitted written and oral testimony on damages pertaining to breach of contract claims in AAA and JAMS arbitrations and New York Supreme Court.

In mass tort matters, Mr. McKnight has forecasted future liabilities for personal injury claims resulting from exposure to asbestos, silicosis, PFOAs, pollution, and various drugs and medical devices; allocated projected losses to available insurance coverage; and estimated the resulting cash flows. He has assisted companies in setting liability reserves for financial accounting. In the Boy Scouts of America bankruptcy, he submitted written testimony on the estimation of sexual abuse claims to the United States Bankruptcy Court for the District of Delaware.

In securities matters, Mr. McKnight has analyzed class certification, loss causation, and damages related to securities class actions. He has assessed investment risk and portfolio performance; performed event study analyses; analyzed transactions data; and computed damages for stock, option, and bondholders. He has testified in a FINRA arbitration concerning the risk and suitability of an investment in a complex derivative product.

EDUCATION

- **New York University, Leonard N. Stern School of Business**
  MBA (with distinction)

- **New York University, Graduate School of Arts and Science**
  MS in Mathematics

- **Vassar College**
  BA in Mathematics (departmental honors)

EXPERT TESTIMONY

- ***Strategic Consulting Alliance, LLC, D/B/A JCG Consulting Group v. S.D.C. Designs, LLC***
  Testimony before panel in American Arbitration Association proceedings, "Economic Damages Rebuttal Report" (December 7, 2016)

- ***Ontonimo (OMO) Limited vs. BNP Paribas Securities Corp***
  Testimony before a majority-public panel in FINRA arbitration, concerning the risk and suitability of a Hedge Fund of Funds Option investment product (April 2, 2015)

EXPERT REPORTS

- ***In re The Diocese of Camden, New Jersey, United States Bankruptcy Court for the District of New Jersey***
  Case No. 20-21257 (JNP)

  Declaration of David L. McKnight on behalf of Century Indemnity Company (September 28, 2022)

- ***In re The Diocese of Camden, New Jersey, United States Bankruptcy Court for the District of New Jersey***
  Case No. 20-21257 (JNP)

  Expert Report of David L. McKnight on behalf of Century Indemnity Company (July 29, 2022)

- ***In re The Diocese of Camden, New Jersey, United States Bankruptcy Court for the District of New Jersey***
  Case No. 20-21257 (JNP)

  Declaration of David L. McKnight on behalf of Century Indemnity Company (May 4, 2022)

- ***Avon Cosmetics Limited and Avon International Operations, Inc. v. FMG & Mission Co., LTD., Supreme Court of the State of New York County of New York***
  Index No. 654499/2020

  Affidavit of David L. McKnight on behalf of Avon Cosmetics Limited and Avon

  International Operations, Inc. to compute the present value of a stream of future royalties

  (July 15, 2021)

- ***In re Boy Scouts of America and Delaware BSA, LLC, United States Bankruptcy Court for the District of Delaware***
  Case No. 20-10343

  Declaration of David L. McKnight on behalf of Century Indemnity Company (May 12, 2021)

- ***Babo International Trade, LLC v. CVS Pharmacy, Inc., JAMS***
  *Case No. 1340018943*

  Supplemental expert report of David McKnight on behalf of claimant to estimate damages incurred as a result of breach of contract (December 9, 2020)

- ***Babo International Trade, LLC v. CVS Pharmacy, Inc., JAMS***
  *Case No. 1340018943*

  Expert report of David McKnight on behalf of claimant to estimate damages incurred as a result of breach of contract (November 30, 2020)

- **Expert report for the Kentucky Division of Water**
  Expert report of Mark Berkman and David McKnight for the Kentucky Division of Water, on behalf of a company requesting a hexachlorobenzene discharge variance (July 8, 2020)

- **Strategic Consulting Alliance, LLC, D/B/A JCG Consulting Group v. S.D.C. Designs, LLC, American Arbitration Association**
  Claim No. 01-16-0000-3265

  Expert report of Paul J. Hinton and David McKnight on behalf of S.D.C. Designs, LLC to compute damages for breach of contract (September 30, 2016)

---

ARTICLES & PUBLICATIONS

- "Tort Liability Costs for Small Businesses," with Paul J. Hinton, *US Chamber Institute for Legal Reform* (October 2020)

- "Costs and Compensation of the U.S. Tort System," with Paul J. Hinton and Lawrence Powel, *US Chamber Institute for Legal Reform* (October 2018)

- "Delaware Appraisal Case Reaffirms Valuation Premium for S Corporations," with Yvette Austin Smith and Torben Voetmann, *Deal Points,* Volume XX, Issue 3 (Fall 2015)

- "How Costly is the U.S. Tort System? An International Comparison of Liability Costs," with Paul J. Hinton, *US Chamber Institute for Legal Reform* (2013)

- "Measuring Improvements in the Tort System. Inside ALEC," with Paul J. Hinton, *American Legislative Exchange Council* (2012)

- "Measuring Improvements in the Tort System. Inside ALEC," with Paul J. Hinton, *NERA Economic Consulting* (October 26, 2011)

PRESENTATIONS & SPEAKING ENGAGEMENTS

- "Summit 2020: Future in Focus – Focusing on Small Business Tort Costs," with Chuck Jones and Oriana Senatore, US Chamber Institute for Legal Reform (October 20, 2020)
- "Calculating Damages in ERISA Litigation: Practical Guide," with Denise M. Clark and Patrick D. Krivoshia, The Knowledge Group (March 21, 2019)
- "Corporate Restructuring and Bankruptcy: Trends, Developments, and Opportunities for the Year Ahead for 2017 LIVE Webcast," with David Berliner, Mark D. Podgainy, and Ryan Wagner, The Knowledge Congress (December 7, 2017)
- "Fair Value: Friend or Foe for 2016 LIVE Webcast," with Dirk Van Dyke and Florin Dorobantu, The Knowledge Congress (June 28, 2016)
- "Fair Value Measurements and Reporting for 2012 LIVE Webcast," with John Lehman, Linda MacDonald, Rothstein Kass, and Raymond Wong, The Knowledge Congress (July 18, 2012)

AWARDS

- American Antitrust Institute, Outstanding Antitrust Litigation Achievement in Economics honoree (2021)

# APPENDIX B: MATERIALS CONSIDERED

- October 16, 2020 Settlement Agreement
- Home Depot U.S.A., Inc.'s Renewal of Objections and Post-Hearing Response, filed December 8, 2021
- Home Depot, Notice of Appeal, filed September 8, 2022
- Topographic and Employee Services, Notice of Appeal, filed September 7, 2022
- Jennifer Cochran and Aaron Craker, Notice of Appeal, filed September 7, 2022
- David G. Behenna, Notice of Appeal, filed September 8, 2022
- Declaration of Darrell Chodorow, October 30, 2020
- Federal Reserve G.19 Statistical Release, Consumer Credit, August 2022
- Federal Reserve, H.15 Selected Interest Rates, Statistical Release
- Bloomberg US Corporate Bond Index, Bloomberg LLP
- IRS Publication 542, Revised: January 2022
- FASB, ASC 305-10-20
- Holthausen, Robert W., and Mark E. Zmijewski. *Corporate Valuation – Theory, Evidence and Practice*. Cambridge Business Publishers, LLC, 2014
- Brealey, Richard A., Stewart C. Myers, and Franklin Allen. *Corporate finance*. Tenth Edition. McGraw-Hill/Irwin, 2011
- Longstaff, F. A., "How much can marketability affect security values?" *Journal of Finance* 50 (1995): 1767-74
- Silber, W. L., "Discounts on restricted stock: The impact of illiquidity on stock prices." *Financial Analysis Journal* 47 (1991): 60-64
- Comment, Robert. "Revisiting the Illiquidity Discount for Private Companies: A New (and "Skeptical") Restricted-Stock Study." *Journal of Applied Corporate Finance* 24, no. 1 (2012): 80-91
- Hanappi, T. "Corporate Effective Tax Rates: Model Description and Results from 36 OECD and Non-OECD Countries." *OECD Taxation Working Papers*, No. 38 (2018)
- OECD, Corporate Tax Statistics – Third Edition, 2021
- OECD.Stat, Corporate Tax Statistics database, https://stats.oecd.org/