FILED

2022 NOV 10 A 11:07

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| IN RE BLUE CROSS BLUE SHIELD ANTITRUST LITIGATION MDL 2406 | Master File 2:13-cv-20000-RD |
| | This document relates to Subscriber Track cases |

# OBJECTOR-APPELLANTS JENNIFER COCHRAN AND AARON CRAKERS' RESPONSE IN OPPOSITION TO CLASS COUNSEL'S MOTION FOR APPEAL BOND

## Introduction

How this Court responds to class counsel's motion may well determine if any class member challenging a settlement's fairness in this district ever dares to appeal an adverse decision again. Setting aside class counsel's unprecedented attempt to make corporate objectors subsidize $100 million dollars of anticipated "costs," they also move to require three individual objectors to collectively post a bond of $900,000 pursuant to Federal Appellate Rules 7, 8, 39(e) and this Court's inherent authority. (ECF No. 2996 at 14). There is no legal basis for imposing such a bond, which has no relation to any cost suggested by class counsel. Even if this Court were permitted to determine the merits of Objector-Appellants' appeal, a bond would not be justified on that basis. As discussed *infra*, their valid

settlement challenge was inadvertently overlooked in this Court's analysis of objections. (ECF No. 2931).

In any case, no appeal bond may exceed the "amount necessary to ensure payment of costs on appeal." FED. R. APP. P. 7. Because there is no fee-shifting statute applicable to the objecting class members, the costs in Rule 7 are limited to "bondable costs on appeal [] enumerated in Rule 39e." See *Pedraza v. United Guar. Corp.*, 313 F.3d 1323 (11th Cir. 2002) (finding attorneys' fees unavailable for appeal bond by appellant-objector to settlement because underlying statute did not consider attorneys' fees as costs). Rule 39 costs are strictly limited to preparation of the record, filing fees, and similar court expenses. *See e.g., Fleury v. Rinchemont N. AM. Inc.*, No., No. C-05-4525 EMC, 2008 WL 4680033, at *8 (N.D. Cal. Oct. 21, 2008).

Since Objector-Appellants paid the filing fee and Plaintiffs-Appellants are responsible for preparing the record, their portion of class counsel's bondable costs are minimal. Neither can an appeal bond replace a supersedeas bond, since Objector-Appellants do not seek to stay judgment pending appeal. *See Muransky*, 2016 WL 11601010, at *3–4. Although they do not believe any bond is appropriate, Objector-Appellants are willing to pay their fair share of estimated printing costs if the Court concludes otherwise.

2

## I. Objector-Appellants Have the Right to Appeal this Court's Decision.

As a starting point, it must be recalled that appeals are a matter of right. *In reAmerican President Lines, Inc.*, 779 F.2d 714, 718 (D.C. Cir. 1985) (citing *Coppedge v. United States*, 369 U.S. 438, 441–442 (1962)). "Courts accordingly must be wary of orders, even those well-meaning, that might impermissibly encumber that right." *Id.* (citing *North Carolina v. Pearce*, 395 U.S. 711, 724 (1969) ("A court is without right to [] put a price on an appeal. A party's exercise of a right of appeal must be free and unfettered" (internal quotation and citation omitted)). "[A]ny attempt by a court at preventing an appeal is unwarranted and cannot be tolerated." *Azizian v. Federated Dep't Stores, Inc.*, 499 F.3d 950, 961 (9th Cir. 2007) (quoting *Adsani v. Miller*, 139 F.3d 67, 79 (2d Cir.1998), *cert denied*, 525 U.S. 875 (1998)).

Because only an appellate court can decide an appeal's merits, a district court may not short-circuit the process with a burdensome bond. *American President Lines*, 779 F.2d at 717; *Vaughn v. American Honda Motor Co., Inc.*, 507 F.3d 295, 299 (5th Cir. 2007); *see also Cooter & Gell*, 496 U.S. 384, 407 (1990). Thus, "[a] district judge ought not try to insulate his decisions from appellate review by preventing a person from acquiring a status essential to that review." *Robert F. Booth Trust v. Crowley*, 687 F.3d 314, 318 (7th Cir. 2012).

The notion that a Rule 7 appeal bond may be entered because the appeal

3

is purportly "frivolous" has also been dispelled by courts in this Circuit and elsewhere. *See e.g., Muransky v. Godiva Chocolatier, Inc.*, No. 15-60716-CIV, 2016 WL 11601010, at *3 ("Should the Eleventh Circuit determine that the Objectors have mounted a frivolous or vexatious appeal, the Plaintiffs will have the opportunity to move pursuant to Rule 38 for the remaining costs incurred as a consequence of the delay"). Courts should "not consider any alleged bad faith or vexatious conduct [] because doing so would not advance the purpose of Rule 7, which is 'to protect the amount the appellee stands to have reimbursed, [and] not to impose an independent penalty on the appellant.' [] Fed. R. App. P. 38, which deals with frivolous appeals, is the appropriate avenue for penalizing bad faith or vexatious conduct by an appellant." *Durham*, 2013 WL 12242047, at *1.

In particular, allowing a district court to impose a punitive Rule 7 bond because the appeal *might* be frivolous "impermissibly encumbers" an appellant's right to appeal and "effectively preempts [the appellate] court's prerogative" to make its own determination. *Azizian*, 499 F.3d at 961; *accord In re Am. President Lines, Inc.*, 779 F.2d 714, 717 (D.C. Cir. 1985). In short, this Court should not entertain class counsel's effort to restrict Objector-Appellants' appeal rights through an untenable bond premised on the false notion that their objection is in any respect frivolous.

4

## II. Objector-Appellants' appeal actually has merit.

According to class counsel, this Court "carefully considered"—and rejected—all objections to the Settlement. (ECF No. 2996 at 3). The record is less clear. On February 4, 2022, the Court addressed whether the Second Blue Bid relief afforded to certain Self-Funded Accounts should be construed as divisible injunctive relief under FRCP 23(b)(3). (ECF No. 2897). While overruling the objections, the Court ordered the Settlement Administrator to issue supplemental notice to Self-Funded Entity Accounts in order to clarify that class members who opt out of the 23(b)(3) class may still seek monetary damages in addition to injunctive relief. (Id.). After reciting this procedural history, the Court made the following statement:

> As discussed more fully below, after carefully considering the objections to the Settlement, the court has determined that none of the remaining objections cast any doubt on the fairness of the Settlement. Accordingly, the court overrules all of the remaining objections not already addressed in its February 4, 2022 Memorandum Opinion and Order Granting Motion for Supplemental Notice to Self-Funded Accounts.

(ECF No. 2931 at 45). The Court's classification of remaining objections into broad categories, however, appears to omit Objector-Appellants' challenge—*despite* its considerable analysis of a highly technical question that could impact numerous class members. (Id.). Conceptually, Objector-Appellants claim the Plan of Distribution creates an intra-class conflict between FI Group Employers and FI

Group Employees that is fundamentally unfair.[1] Practically, they allege the method for distributing Unallocated Employee Premiums in an FI Group's account remaining after the claims period is fatally flawed. As a result, an employer stands to reap all the windfall from the employees' unclaimed funds, while its own unclaimed funds must be shared by the entire Damages Class. This disparate treatment contradicts the Settlement's mandate to distribute residual funds among all Claimants "in an equitable and economic fashion." (SA ¶ 30). As set forth in their objection, this one-sided treatment creates several problems that undermine the Settlement's fairness:

> First, the windfall awaiting employers is likely to increase their motivation to participate in the claims process to such an extent that the net average award to individual claimants will be even lower than is typical in a consumer class settlement. Second, the resulting disincentive to notify covered employees of the right to claim a partial refund of their premium contributions may violate the employer's ethical obligation under the law. The Employee Retirement Income Security Act (ERISA) subjects those who exercise discretionary authority over plan management to certain fiduciary responsibilities. 29 U.S.C.A. § 1109. The employer's primary responsibility is to run the plan solely in the interest of participants for the exclusive purpose of providing benefits and paying plan expenses. Most importantly, they must avoid conflicts of interest such as engaging in transactions that benefit themselves only.

---

[1] The Court's final order approving settlement affirmed a "plan of distribution should [only] be approved when it allocates relief in a way that is "fair, adequate, and reasonable." (citations omitted). (ECF No. 2931 at 56).

Instead of disputing Objector-Appellants' interpretation or addressing their specific concerns, Plaintiffs-Appellees claimed that providing "a reasonable explanation for different treatment under the terms of the agreement as a whole" is all Rule 23 requires. *See*, MIS of Settlement at 83. To bolster their defense, class Counsel pointed to their expert's "careful consideration of numerous factors which demonstrated that allocation was economically reasonable." Id. at 112.

Plaintiffs-Appellees' failure to provide a reasonable justification for favoring employers over employees is a serious affront to fairness. Such oversight may have even disqualified Class Counsel as adequate representatives of FI Employees, rendering blanket certification of the "settlement class" illegitimate. Beyond proving the merit of Objector-Appellants' concern, these vulnerabilities expose a serious oversight in the Court's evaluation that could impact the entire settlement.

### III. Class counsel failed to substantiate the amount of their requested bond, which is far above permissible limits under Rule 7.

In any event, Class counsel's request to allocate a $900,000 bond among three individual objectors is obviously designed to obstruct their due process rights to appeal. Rule 7 allows "costs on appeal." Fed. R. App. P. 7. Because there is no fee-shifting statute applicable to the objecting class members, Rule 39 costs must be limited to docket items like preparation of the record and transcript. Fed. R. App. P. 39(e). There is no reason (and certainly no evidence) to believe these costs would approach anything close to $900,000, much less the

7

$100 million bond sought for the corporate objectors.

Neither is class counsel's exorbitant bond request justified as delay costs. While a Rule 8 supersedeas bond can secure against an appeal's postponement of benefits, a Rule 7 appeal bond cannot. *See e.g., Vaughn v. Am. Honda Motor Co.*, 507 F.3d 295, 298-99 (5th Cir. 2007). Unfortunately, a supersedeas bond is not available here because Objector-Appellants have not sought to stay the judgment. *See e.g., Vaughn*, 779 F.2d at 716-18. In fact, it would be reversible error to impose a supersedeas bond under cover of Rule 7. *See e.g., In re American President Lines, Inc.*, 779 F.2d 714, 717-18 (D.C. Cir. 1985).

For several reasons, class counsel cannot secure class damages resulting from Objector-Appellants' appeal either.[2] First, the settlement agreement already contemplates the harm to the class upon an appeal because it allows the defendants to hold off implementing the settlement until all appeals are complete. *See* Settlement Agreement § B(8)(a)(viii). In such cases, courts find that the benefits available to the class are reduced by the delay costs of an appeal. See *Vaughn v. Am. Honda Motor Co.*, 507 F.3d 295, 299 (5th Cir. 2007) ("[T]he settlement does not become effective, by its terms, until any appeals are concluded. The parties to the

---

[2] Because there are several other pending appeals of the same settlement, class counsel cannot establish a causal nexus between Objector-Appellants' appeal and class damages anyway. Thus, should they voluntarily dismiss their appeal, the amount of class damages alleged by class counsel would remain the same.

8

settlement thus agreed that the financial time-value of the benefits to be paid under the settlement is not to be awarded to the plaintiffs."). This fact is indisputable, **no matter how many experts class counsel hires.**

Second, while *Allapattah Services* found it appropriate to include delay costs in a Rule 7 bond, it is neither binding authority nor widely adopted. See, e.g., *In re Diet Drugs*, 2000 WL 1665134, at *4 (rejecting delay costs as part of Rule 7 bond calculation). Finally, no one can seriously argue that a typical class member could (or should) pay an appeal bond of the size contemplated by Plaintiffs-Appellees. Even when there is a fee-shifting statute, the district court should not award attorney's fees absent "a finding that the plaintiff's action was frivolous, unreasonable, or without foundation." *Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978).

The possibility of qualifying an appeal as "in forma pauperis" also misses the point. As the 11th Circuit explained: "We need not decide that because even for plaintiffs who can afford to post appeal bonds, the larger the bond amount, the higher the cost of appealing; and the higher the cost of appealing, the greater the disincentive for doing so." *Young v. New Process Steel, LP*, 419 F.3d 1201, 1208 (11th Cir. 2005).

## IV. The Court cannot impose an appeal bond under its inherent authority either.

Neither can the bond be justified under the Court's inherent authority. See, *Pedraza v. United Guar. Corp.*, 313 F.33d 1323, 1335 (11th Cir. 2002) (requiring subjective bad faith). There is no evidence that Objector-Appellants acted in bad faith or vexatiously. In fact, the record shows they only sought adequate representation of FI Group employees in order to ensure a fair allocation of FI Group benefits. Although this Court overruled their objection, there was no finding of subjective bad faith.

## Conclusion

There is simply no basis for the requested $900,000 appeal bond. If the Court nevertheless orders individual objectors to post bond, it should be limited to Objector-Appellants' fair portion of appeal costs under Rules 7 and 39.

Dated: November 8, 2022      Respectfully submitted.

/s/ Jennifer Objector-Appellants & Aaron Craker
Jennifer Objector-Appellants & Aaron Craker
205 Marytena Drive
Louisville, KY 40214
*Pro Se Objector-Appellants*

## CERTIFICATE OF SERVICE

The undersigned certifies they authorized the foregoing document to be mailed by USPS ordinary mail on November 8, 2022 to the Clerk's Office for the Northern District of Alabama, with instructions to file it by CM/ECF for electronic notification to all attorneys registered for ECF-filing.

DATED: November 8, 2022

/s/ Jennifer Objector-Appellants & Aaron Craker
Jennifer Objector-Appellants & Aaron Craker
205 Marytena Drive
Louisville, KY 40214
*Pro Se Objector-Appellants*