FILED

2022 Nov-14  PM 02:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| IN RE: BLUE CROSS BLUE SHIELD ANTITRUST LITIGATION (MDL No. 2406) | ) ) ) ) ) ) **Master File No. 2:13-CV-20000-RDP** |

**SELF-FUNDED SUBCLASS OBJECTORS' RESPONSE TO
SUBSCRIBERS' MOTION TO REQUIRE AN APPEAL BOND**

Self-Funded Subclass Objectors Topographic, Inc. and Employee Services, Inc. oppose the Subscriber Plaintiffs' motion (Doc. No. 2996) asking this Court to require the Objectors to post a $113 million appeal bond. The motion is unprecedented and should be denied.

Objectors have a right to object, FED. R. CIV. P. 23(e)(5), and a right to appeal, 28 U.S.C. § 1291; *Devlin v. Scardelletti*, 536 U.S. 1, 9 (2002); *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1257 (11th Cir. 2021). By exercising those rights, objectors play an important and "beneficial role in opening a proposed settlement to scrutiny and identifying areas that need improvement." *In re Equifax*, 999 F.3d at 1257 (quoting David F. Herr, ANNOTATED MANUAL FOR COMPLEX LITIGATION § 21.643 (4th ed.2021)). Yet Subscribers ask for an interpretation and implementation of Federal Rules of Appellate Procedure 7 and 8

1

and the Courts' inherent powers that would effectively bar appellate review of objections to class action settlements.

Eleventh Circuit precedent applying Appellate Rule 7 does not permit a bond to cover the expenses the Subscribers want insured. Appellate Rule 8 does not apply, either. The pending appeals will not delay Settlement administration because the Settlement is not effective until the conclusion of all appeals, so the Subscribers are not yet entitled to the cash component of the Settlement. The Subscribers made that deal; the Court should hold them to it.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Subscribers negotiated the terms of the Settlement Agreement with Blue Cross Blue Shield Association and its Member Plans. Objectors timely filed their objections to the Settlement, which this Court overruled in the Final Order and Judgment. *See* Doc. No. 2931 at 56–59. Objectors then timely exercised their right to appeal. *See Devlin*, 536 U.S. at 14; *In re Equifax*, 999 F.3d at 1261 n.7.

The Eleventh Circuit has recognized that objectors often "play a beneficial role in opening a proposed settlement to scrutiny and identifying areas that need improvement." *In re Equifax*, 999 F.3d at 1257. Indeed, it is the appellate court's "obligation to closely review the issues they present." *Id.* (internal quotations omitted). And, contrary to the Subscribers' view, frivolousness of an appeal is for the appellate court to judge. FED. R. APP. P. 38; *Azizian v. Federated Dept. Stores*,

2

499 F.3d 950, 961 (9th Cir. 2007). Subscribers trivialize the Objectors' right to appeal as an "unjustified delay" and ask this Court to require that Objectors insure against risks that Subscribers assumed and provided for in the Settlement Agreement. In doing so, the Subscribers not only misunderstand the purpose of a Rule 7 cost bond, the text of Rule 8, and the relevant equitable considerations, but they also ask this Court to erect an unprecedented and insurmountable barrier to appellate review of class settlements. The Court should deny the motion.

## **BACKGROUND**

The terms of the Subscribers' Settlement are clear. Subscribers and Defendants agreed that (1) appeals challenging only allocation would not delay the Effective Date (Doc. No. 2610-2 at 29), (2) the Settlement Agreement would not go into effect until the conclusion of all relevant appeals (*id.* at 28–29); (3) all funds deposited in the escrow account would be invested in money market funds (*id.* at 42); (4) Subscribers would recover any interest accrued on those funds (*id.* at 23); and (5) $75,000,000 in attorneys' fees would become available within 31 days of entry of final judgment, notwithstanding any pending appeals (*id.* at 45–46). Multiple appeals from the Court's final judgment are now pending before the Eleventh Circuit, which recently rejected the Subscribers' request to shorten the appellants' briefing schedule based on arguments similar to those now urged by Subscribers. *See* Doc. Nos. 2940, 2942, 2943, 2944; *In re: Blue Cross Blue Shield*

*Antitrust Litig. MDL 2406*, No. 22-13051 (11th Cir. Nov. 2, 2022) (attached at Tab 1).

## ARGUMENT

Subscribers' request for a $113 million cost bond under Rule 7 misunderstands binding Eleventh Circuit precedent. Their request for a supersedeas bond under Rule 8 misunderstands the plain language of that rule. And their invocation of this Court's inherent powers misunderstands the equitable considerations at hand. The Eleventh Circuit has never approved a Rule 7 cost bond exceeding $2,000. *See In re Equifax*, 999 F.3d at 1282 (affirming the district court's grant of Plaintiffs' motion for a $2,000 appeal bond because the district court (1) properly found that there was a substantial risk of nonpayment of the costs of appeal and (2) calculated the bond amount based on the taxable costs listed in 28 U.S.C. § 1920 and Federal Rule of Appellate Procedure 39(e)). Yet Subscribers ask this Court to impose a $113 million bond on Objectors. In doing so, Subscribers fail to demonstrate a risk of nonpayment of taxable appeal costs and do not attempt to estimate the taxable costs on appeal. The Court should deny the motion.

### I.   Federal Rule of Appellate Procedure 7 only allows for a bond covering specific types of costs on appeal.

Appellate Rule 7 allows a district court to "require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." The Eleventh Circuit, aligning itself with the majority of circuit

courts, *see Tennille v. W. Union Co.*, 774 F.3d 1249, 1255 (10th Cir. 2014) (collecting cases), has concluded that only three sources inform the amount of those "costs on appeal": (1) 28 U.S.C. § 1920, *In re Equifax*, 999 F.3d at 1284 n.30; (2) Federal Rule of Appellate Procedure 39(e), *id.*; *Tennille*, 774 F.3d at 1257; and (3) "the definition of costs contained in the statutory fee shifting provision that attends the plaintiff's underlying cause of action," *Pedraza v. United Guar. Corp.*, 313 F.3d 1323, 1333 (11th Cir. 2002). In arguing otherwise, Subscribers misunderstand the purpose of a Rule 7 cost bond and binding Eleventh Circuit precedent.

The purpose of a Rule 7 bond is to ensure the payment of taxable appeal costs. *In re Equifax*, 999 F.3d at 1283. A Rule 7 cost bond is *not* "retrospective covering sums related to the merits of the underlying judgment (and stay of its execution)." *Pedraza*, 313 F.3d at 1329 n.10. Subscribers nonetheless argue that the Court should depart from Eleventh Circuit precedent and include within a Rule 7 bond (1) the added costs of maintaining and servicing databases used for Class notice, (2) the costs of delayed injunctive relief, and (3) the lost liquidity from delaying the Settlement's proceeds in money-market funds and U.S. Treasury obligations. The Eleventh Circuit does not allow for any such costs under Rule 7. *See generally Pedraza*, 313 F.3d at 1323; *In re Equifax*, 999 F.3d at 1247; *Eastwood Enterprises, LLC v. Farha*, No. 8:07-CV-1940-T-33EAJ, 2011 WL 2681915 at *2 (M.D. Fla.

July 11, 2011) (holding that plaintiffs do not have a right to an appeal bond covering "delay damages").

"Costs on appeal" for Rule 7 include only those "costs that a successful appellate litigant can recover pursuant to a specific rule or statute." *Tennille*, 774 F.3d at 1254–56 ("circuit courts have unanimously limited ['costs on appeal'] to include only costs authorized by rule or statute") (collecting cases); *Pedraza*, 313 F.3d at 1328–35. And no rule or statute permits Subscribers to recover the costs of administering a class action settlement if they are successful on appeal. *See Tennille*, 774 F.3d at 1255 ("Plaintiffs have not identified, nor could we find, any rule or statute that permits them . . . to recover the cost of notifying class members of [the] merits appeals or to recover the cost of maintaining the class settlement fund pending the merits appeals."). All the circuits to address the issue, except one, agree with Objectors. *See id; In re Target Corp. Customer Data Sec. Breach Litig.*, 847 F.3d 608, 614–15 (8th Cir. 2017). And the one potential outlier circuit has yet to address the issue in a published opinion. *In re N.J. Tax Sales Certificates Antitrust Litig.*, 750 F. App'x 73, 83–84 (3d Cir. 2018) (affirming the district court's order of a $10,000 appeal bond, which the district court reduced from the $61,845 that plaintiffs requested).

Nor may a Rule 7 bond include costs of delay that are expressly contemplated by the terms of a settlement agreement. *Tennille*, 774 F.3d at 1255 n.5; *Vaughn v.*

6

*Am. Honda Motor Co., Inc.*, 507 F.3d 295, 299 (5th Cir. 2007). When a settlement "makes no provision for the payment of pre-judgment interest" and "does not become effective, by its terms, until any appeals are concluded," then the parties to that settlement "agreed that the financial time-value of the benefits to be paid under the settlement is not to be awarded to the plaintiffs." *Vaughn*, 507 F.3d at 299. The parties to the settlement should, therefore, be held to the terms of that agreement. *See id.*

Limiting the amount of a Rule 7 bond to costs that a successful appellee may recover under rule or statute "avoid[s] creating 'an impermissible barrier to appeal' through overly burdensome bonds." *In re Target*, 847 F.3d at 615 (quoting *Adsani v. Miller*, 139 F.3d 67, 76 (2d Cir. 1998)). "[C]lass members who oppose the settlement have the right to object." *In re Equifax*, 999 F.3d at 1257 (citing FED. R. CIV. P. 23(e)(5)(A)). It is the appellate courts' obligation, therefore, "to closely review the issues [objectors] present." *Id.* Objectors "add value to the class-action settlement process by: (1) transforming the fairness hearing into a truly adversarial proceeding; (2) supplying the Court with both precedent and argument to gauge the reasonableness of the settlement and lead counsel's fee request; and (3) preventing collusion between lead plaintiff and defendants." *In re Cardinal Health, Inc. Sec. Litig.*, 550 F.Supp.2d 751, 753 (S.D. Ohio 2008). That value is lost if district courts

impose exorbitant Rule 7 bonds that create an insurmountable barrier to objectors' right to appeal.

The $113 million bond the Subscribers seek exceeds, by orders of magnitude, any appeal bond in any class action settlement ever affirmed on appeal. The highest appeal bond affirmed by the Eleventh Circuit in this context was for $2,000. *See In re Equifax*, 999 F.3d at 1282–84 (affirming $2,000 bond); *Pedraza*, 313 F.3d at 1325, 1336–37 (vacating $180,000 bond). Our research has found that most class action settlement objector bonds are four figures, with the highest amount affirmed in any other circuit being $10,000. *In re N.J. Tax Sales Certificates*, 750 F. App'x at 84 (affirming $10,000 bond); *Vaughn*, 507 F.3d at 300 (5th Cir.) (vacating all but $1,000 of $150,000 bond); *In re Target*, 847 F.3d at 614–15 (8th Cir.) (vacating all but $2,284 of $49,156 bond); *Azizian*, 499 F.3d at 962 (9th Cir.) (vacating $40,000 of $42,000 bond); *In re Heritage Bond Litig.*, 233 F. App'x 627, 629 (9th Cir. 2007) (vacating $228,000 bond); *Tennille*, 774 F.3d at 1257 (10th Cir.) (vacating all but $5,000 of $1,007,294 bond). And many of those cases involve serial objectors, which Objectors are not.

Subscribers cannot justify their bond request, and certainly not its amount, within the limits of the law. *See Tennille*, 774 F.3d at 1254–56. In fact, Subscribers cite to only one unpublished circuit-level case approving inclusion of even a modest amount of "administrative expenses" in a Rule 7 cost bond. *See* Doc. No. 2996 at 9

(citing *In re N.J. Tax Sales Certificates*, 750 F. App'x. at 84–85). To be clear, the Third Circuit has never "formally held that administrative expenses may be included in Rule 7 appeal bonds" in a published opinion. *In re N.J. Tax Sales Certificates*, 750 F. App'x. at 84. But its unpublished opinion permitting the inclusion of a few thousand dollars' worth places the Third Circuit alone against all other precedent. *See Tennille*, 774 F.3d at 1255 (collecting cases). Notably, the plaintiffs in *In re New Jersey Tax Sales Certificates* requested a bond of at least $61,845, which the district court found "excessive" and reduced to $10,000. *In re N.J. Tax Sales Certificates*, 750 F. App'x. at 84. The Third Circuit did not approve a bond anywhere near $113 million. And no rule, statute, or binding circuit authority permits Subscribers to recover the costs of maintaining and servicing databases used for Class notice or hedging against speculative investment losses not contemplated in the Settlement itself. Thus, those costs may not be included in a Rule 7 cost bond. *See Tennille*, 774 F.3d at 1255.

Subscribers also complain that the appeals are delaying injunctive relief to which they argue they are immediately entitled. Doc. No. 2996 at 11. Unlike damages, injunctive relief is not stayed "even if an appeal is taken," except by order of the district court. FED. R. CIV. P. 62. Objectors have not requested, nor has the court issued, a stay of the so-called "injunctive benefits" contemplated by the Settlement Agreement. Subscribers have not explained why those benefits are not

9

immediately effective. Nor can they. If this relief is truly injunctive, then it should have been implemented immediately upon entry of the Court's final judgment. If this relief is not a true injunction, but instead a private agreement between Subscribers and Defendants, then Subscribers were free to structure that relief to go into effect at any point. Objectors cannot be required to bond costs covering a delay that they have neither requested nor caused.

Subscribers included a provision within the Settlement Agreement stating that the terms of the Settlement Agreement do not become effective until "the Final Judgment and Order of Dismissal is affirmed in its entirety by the court of last resort to which such appeal may be taken." Doc. No. 2610-2 at 28–29. So the Settlement is not effective by its own terms. There is no delay. By their own agreement, Subscribers will not be entitled to any proceeds until all appeals (and any discretionary review) conclude. Doc. No. 2610-2 at 28–29; *see Downey v. Mortg. Guar. Ins. Corp.*, 313 F.3d 1341, 1343, n.6 (11th Cir. 2002) ("[P]laintiffs were not entitled to any compensation until the conclusion of all appeals, so they were not losing any interest to which they were otherwise entitled as a consequence of any appeal").

Even if Subscribers were entitled to the Settlement Fund and, therefore, to the interest that it accrues, Subscribers negotiated for the opportunity to place the Settlement proceeds in money-market funds. *See* Doc. No. 2610-2 at 28–29. The

delayed implementation of the Settlement under its definition of the Effective Date has, if anything, created a windfall for the funds at issue. The average money market rate in October 2022 was 3.28%, which is a significant increase from 2020 when the Settlement Agreement was signed. Moody's Analytics, *United States - Money Market Rate*, https://www.economy.com/united-states/money-market-rate (last visited Nov. 14, 2022). And that windfall was by design—as Subscribers' counsel stated, "[w]e obviously wanted as much put in [to the escrow fund] as possible because once it gets into escrow, if we succeed in implementing the settlement . . . we get the interest on it." Doc. No. 2865 at 296. Subscribers have not shown what returns the very large Settlement Escrow Account has earned since the initial $300 million deposit upon the Court's preliminary approval or since the rest of the $2.6 billion was deposited as of final approval, nor how those returns have increased in recent months. That information is relevant to their motion, and the Court should require them to disclose it.

Objectors cannot be expected to insure against the market or to bear Subscribers' chosen risk. Rule 7 bonds are meant to ensure payment of the modest taxable costs on appeal, not to insure against risks chosen by Subscribers after accepting the risk of multiple appeals and baking that risk into the Settlement Agreement. *See In re Equifax*, 999 F.3d at 1283. This Court should deny Subscribers' motion in short because (1) Rule 7 cost bonds do not include

administrative costs, (2) Subscribers included costs of delay within the terms of the Settlement Agreement, and (3) Subscribers' requested bond amount would create an impermissible barrier to appellate review. Few objectors could ever appeal a proposed class action settlement if the appeal bond rules were used in this penal fashion. No court has ever required a bond of the size requested by Subscribers, and neither should this Court.

Rule 7 bonds are typically modest because the costs recoverable are minimal. The rule covers the cost of preparation and transmission of the record and preparation of appellate briefs and appendices. *See In re Equifax*, 999 F.3d at 1284 n.30 (citing 28 U.S.C. § 1920; FED. R. APP. P. 39(e)). But those costs are only properly bonded upon a finding of a "substantial risk that the costs of appeal will not be paid unless a bond is required." *In re Equifax*, 999 F.3d at 1284 (internal quotations omitted). They must also be justified with precise cost estimates. *See Tennille*, 774 F.3d at 1257.

Subscribers have failed to carry their burden under *Equifax*. First, Subscribers fail to demonstrate a substantial risk that Objectors will not pay the modest costs of appeal that are properly taxable under Rule 7 if their appeal is unsuccessful. An appeal bond is not appropriate if imposing the bond "would not ensure payment, but would rather threaten to thwart altogether an otherwise legitimate appeal." *Oravec v. Sunny Isles Luxury Ventures L.C.*, No. 04-22780-CIV, 2006 WL 8447795 at *3

(S.D. Fla. Nov. 15, 2006). Subscribers argue that the geographic locations of the Objectors indicate that *if* Objectors failed to voluntarily pay the costs of appeal, Subscribers would have to undertake collection efforts in multiple states. But this argument assumes without analyzing Subscribers' preferred answer to the only relevant question: whether any risk exists that Objectors cannot and will not pay properly taxable costs under Rule 7 if their appeal is unsuccessful. *See In re Equifax*, 999 F.3d at 1283 (describing "the risk that the appellant will not pay the costs if the appeal is unsuccessful" as the only relevant consideration under Rule 7). Because Subscribers have not established, and cannot establish, that any risk of nonpayment exists, a Rule 7 bond is not warranted under *Equifax*.

Second, Subscribers have not justified their requested bond amount. Subscribers estimate between $20,000 and $25,000 in taxable costs—an amount they justify solely by referencing the size and scope of the record. *See* Doc. No. 2996 at 9. The size of the record on appeal could be relevant to this calculation if Subscribers bore the cost of transmitting it. But they do not. *See* FED. R. APP. P. 10(b)(1) (appellant's duty to order the transcript of proceedings), 10(b)(3)(B) (appellee's right to move for appellant to order additional parts of the proceedings), 11(a) (appellant's duty to "do whatever else is necessary to enable the clerk to assemble and forward the record"). That cost is born by Objectors, who will work

with Subscribers to designate the appropriate parts of the record to be transmitted, as is common practice and contemplated by the rules. *See id.*

And printing costs are nominal. The Eleventh Circuit requires that parties file only four briefs in paper and an additional three copies if the appeal is classed for oral argument. 11th Cir. R. 31-3. Eleventh Circuit Rule 39-1 limits taxed costs to the number of copies of the brief and appendix required by the rules plus two copies for each signing party. The maximum cost per copy in the Eleventh Circuit is $.15 per copy for "In-House" and $.25 per copy for commercial reproduction. *UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT: Bill of Costs*, United States Court of Appeals for the Eleventh Circuit, https://www.ca11.uscourts.gov/sites/default/files/courtdocs/clk/FormBillofCosts_1 9_JUN17.pdf (last visited Nov. 14, 2022). Subscribers provide no estimate of their printing costs, which they easily could through this publicly available information. Because they have not provided a realistic estimate of their taxable costs of appeal, they have not justified a bond in *any* amount. *See Tennille*, 774 F.3d at 1257. Subscribers' requested costs are vastly overestimated and untethered to any specific cost estimate.

## II. Rule 8 does not apply when Objectors have not requested a stay of the Court's final judgment.

Appellate Rule 8 does not support the Subscribers' motion, either. Rule 8 describes two situations in which a supersedeas bond may be appropriate: (1) when

14

a party moves the district court for "approval of a bond or other security provided to obtain a stay of judgment" and (2) when a party moves the Court of Appeals for a stay of judgment and the Court of Appeals "condition[s] relief on a party's filing a bond or other security in the district court." FED. R. APP. P. 8(a)(1)(B), (a)(2)(E). Neither situation applies here.

Objectors have not moved the district court for a stay of the judgment. Nor is there any need. The Settlement Agreement by its own terms will not become effective until "the Final Judgment and Order of Dismissal is affirmed in its entirety by the court of last resort to which such appeal may be taken." Doc. No. 2610-2 at 28–29. Subscribers agreed not to be entitled to the Settlement funds until the conclusion of all appeals. Thus, a stay is not necessary. Subscribers cannot require a bond when they are not entitled to the Settlement funds because of their own agreement and when Objectors have not requested a stay of the judgment. No stay is necessary; therefore, no bond is appropriate under Rule 8.

### III.   Equitable considerations weigh against the court exercising its inherent power to require a bond.

Finally, equity does not support a $113 million appeal bond. "[F]ederal courts possess the inherent power to require the posting of cost bonds." *Pedraza*, 313 F.3d at 1335. A district court must invoke that inherent power cautiously, however, when the matter is also governed by procedural rules, "lest . . . the restrictions in those rules become meaningless." *Kovilic Const. Co. v. Missbrenner*, 106 F.3d 768, 772–

73 (7th Cir. 1997); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991). The circumstances at hand do not warrant such an extraordinary exercise of the Court's inherent powers.

Here, the appellate rules provide a sufficient framework for ensuring payment of taxable costs on appeal. And the Settlement Agreement expressly contemplated the appeals and the time it would take to resolve them. Subscribers negotiated the terms of the Settlement Agreement in preparation for an appeal and ensured that a whopping $75,000,000 in attorneys' fees would be paid from the Escrow Account within 31 days of entry of this Court's order preliminarily approving the Settlement, notwithstanding any pending appeals. *See* Doc. No. 2610–2 at 45–46. Equity does not demand a bond where Rule 7 applies, the Settlement Agreement expressly contemplates the possibility of an appeal, and Subscribers have already received payment of substantial attorneys' fees. *See Vaughn*, 507 F.3d at 299.

## CONCLUSION

If this Court were to grant Subscribers' motion, it would depart from binding precedent limiting the scope of Rule 7 bonds, interpreting the rules by their plain language, and invoking the court's inherent powers cautiously. This Court should not require Objectors to post an unprecedented bond not supported by the appellate rules, Eleventh Circuit precedent, or equitable considerations. To adopt Subscribers'

approach would eviscerate appellate review of objections to class action settlements.

The Court should deny Subscribers' motion.


Respectfully submitted this 14th day of November, 2022.

/s/ J. Thomas Richie

One of the Attorneys for Objectors

OF COUNSEL
Michael R. Pennington
J. Thomas Richie
Emily M. Ruzic
BRADLEY ARANT BOULT CUMMINGS LLP
1819 Fifth Avenue North
Birmingham, AL 35203-2119
Telephone: (205) 521-8000
Facsimile: (205) 521-8800
mpennington@bradley.com
trichie@bradley.com
eruzic@bradley.com

Scott Burnett Smith
BRADLEY ARANT BOULT CUMMINGS LLP
200 Clinton Avenue West, Suite 900
Huntsville, AL 35801-4900
Telephone: (256) 517-5100
Facsimile: (256) 517-5200
ssmith@bradley.com

Richard D. Nix
Henry D. Hoss
M. Richard Mullins
Mark D. Spencer
MCAFEE & TAFT A PROFESSIONAL CORPORATION
Eighth Floor, Two Leadership Square
211 N. Robinson
Oklahoma City, OK 73102
Telephone: (405) 235-9621
Facsimile: (405) 235-0439
richard.nix@mcafeetaft.com
henry.hoss@mcafeetaft.com
richard.mullins@mcafteetaft.com
mspencer@mcafeetaft.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 14, 2022, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ J. Thomas Richie*
J. Thomas Richie

# TAB 1

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 22-13051-J

_____

IN RE:   BLUE CROSS BLUE SHIELD ANTITRUST LITIGATION MDL 2406.

_____

On Appeal from the United States
District Court for the Northern District of Alabama

_____

ORDER:

Before the Court is "Plaintiffs-Appellees' Motion to Consolidate and to Expedite Appeals."

Plaintiffs-Appellees' motion to consolidate is DENIED AS MOOT. All of the Objectors-Appellants' appeals already are proceeding together under this appeal no. 22-13051, and consolidation is unnecessary. All party filings must be docketed only in this appeal no. 22-13051.

Plaintiffs-Appellees' motion to expedite this appeal is GRANTED IN PART as follows:

The Court DIRECTS the Clerk to expedite the appeal for merits disposition purposes, including oral argument if the Court deems oral argument in this case is warranted. The Court takes no position at this time on the appropriateness of oral argument.   If the Court determines oral argument is necessary, the parties may file motions for extended or divided oral argument at that time.

This appeal shall follow the standard briefing schedule set forth by this Court's rules. *See* 11th Cir. R. 31-1(a). For the purposes of the briefing schedule, the postponement provision of 11th Cir. R. 31-1(d) ("Unless otherwise ordered by the court, the due date for filing appellee's or appellee-cross-appellant's brief shall be postponed until the court determines that the appeal or

cross-appeal shall proceed or directs the parties to address the jurisdictional question(s) in their briefs on the merits.") is suspended.

/s/ Andrew L. Brasher
UNITED STATES CIRCUIT JUDGE

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

November 02, 2022

Virginia Adamson
Bradley Arant Boult Cummings, LLP
1600 DIVISION ST STE 700
NASHVILLE, TN 37203

David G. Behenna
155 FLEET ST
PORTSMOUTH, NH 03801

Mr. David Boies
Boies Schiller & Flexner, LLP
333 MAIN ST
Suite 301
ARMONK, NY 10504

John DeQ. Briggs
Axinn Veltrop & Harkrider, LLP
1901 L ST NW
WASHINGTON, DC 20036

Adam Howard Charnes
Kilpatrick Townsend & Stockton, LLP
2001 ROSS AVE STE 4400
DALLAS, TX 75201

Evan R. Chesler
Cravath Swaine & Moore, LLP
825 8TH AVE
NEW YORK, NY 10019

George Willard Cochran Jr.
Law Office of George W. Cochran
1981 CROSSFIELD CIR
KENT, OH 44240

Vincent J. Colatriano

Cooper & Kirk, PLLC
1523 NEW HAMPSHIRE AVE NW
WASHINGTON, DC 20036

Charles J. Cooper
Cooper & Kirk, PLLC
1523 NEW HAMPSHIRE AVE NW
WASHINGTON, DC 20036

Honor Costello
Crowell & Moring, LLP
590 MADISON AVE FL 20
NEW YORK, NY 10022-2524

Karin DeMasi
Cravath Swaine & Moore, LLP
825 8TH AVE
NEW YORK, NY 10019

Ronan Doherty
Bondurant Mixson & Elmore, LLP
1201 W PEACHTREE ST NW STE 3900
ATLANTA, GA 30309

Helam Gebremariam
Cravath Swaine & Moore, LLP
825 8TH AVE
NEW YORK, NY 10019

Sarah Gilbert
Crowell & Moring, LLP
590 MADISON AVE FL 20
NEW YORK, NY 10022-2524

Michael Hausfeld
Hausfeld, LLP
888 16TH ST NW STE 300
WASHINGTON, DC 20006

Craig A. Hoover
Hogan Lovells US, LLP
555 13TH ST NW STE 7W-302
WASHINGTON, DC 20004

Hamish P. M. Hume
Boies Schiller & Flexner, LLP

1401 NEW YORK AVE NW STE 1100
WASHINGTON, DC 20005

William A. Isaacson
Paul Weiss Rifkind Wharton & Garrison, LLP
2001 K ST NW
WASHINGTON, DC 20006

Megan Jones
Hausfeld, LLP
600 MONTGOMERY ST STE 3200
SAN FRANCISCO, CA 94111

Lauren Kennedy
Cravath Swaine & Moore, LLP
825 8TH AVE
NEW YORK, NY 10019

David Korn
Cravath Swaine & Moore, LLP
825 8TH AVE
NEW YORK, NY 10019

Frank M. Lowrey IV
Bondurant Mixson & Elmore, LLP
1201 W PEACHTREE ST NW STE 3900
ATLANTA, GA 30309

Martin Patrick McDowell
Brunini Grantham Grower & Hewes, PLLC
190 E CAPITOL ST STE 100
PO DRAWER 119
JACKSON, MS 39205

Rebekah Keith McKinney
Watson McKinney, LLP
203 GREENE ST
HUNTSVILLE, AL 35801-4934

Aaron Gavin McLeod
Adams & Reese, LLP
1901 6TH AVE N STE 3000
BIRMINGHAM, AL 35203

Michael A. Naranjo
Foley & Lardner, LLP

555 CALIFORNIA ST STE 1700
SAN FRANCISCO, CA 94104-1520

Richard Nix
McAfee & Taft, PC
2 LEADERSHIP SQ
211 N ROBINSON FL 8
OKLAHOMA CITY, OK 73102

Mario Anthony Pacella
Strom Law Firm
6923 N TRENHOLM RD
COLUMBIA, SC 29204

Edwin Allen Page
Bondurant Mixson & Elmore, LLP
1201 W PEACHTREE ST NW STE 3900
ATLANTA, GA 30309

Gwendolyn C. Payton
Kilpatrick Townsend & Stockton LLP
1420 5TH AVE STE 3700
SEATTLE, WA 98101

Michael R. Pennington
Bradley Arant Boult Cummings, LLP
1819 5TH AVE N
BIRMINGHAM, AL 35203

Barry Alan Ragsdale
Dominick Feld Hyde, PC
1130 22ND ST S STE 4000
BIRMINGHAM, AL 35205

Harold S. Reeves
Cooper & Kirk, PLLC
1523 NEW HAMPSHIRE AVE NW
WASHINGTON, DC 20036

John Thomas Richie
Bradley Arant Boult Cummings, LLP
1819 5TH AVE N
BIRMINGHAM, AL 35203

Tracy Roman
Crowell & Moring, LLP

1001 PENNSYLVANIA AVE NW FL 11
WASHINGTON, DC 20004

Stephen Ashford Rowe
Adams & Reese, LLP
1901 6TH AVE N STE 3000
BIRMINGHAM, AL 35203

Emily Myers Ruzic
Bradley Arant Boult Cummings, LLP
1819 5TH AVE N
BIRMINGHAM, AL 35203

Adam R. Shaw
Boies Schiller & Flexner LLP.
30 S PEARL ST 11TH FL
ALBANY, NY 12207

Scott Burnett Smith
Bradley Arant Boult Cummings, LLP
200 CLINTON AVE W STE 900
HUNTSVILLE, AL 35801

Kathleen Taylor Sooy
Crowell & Moring, LLP
1001 PENNSYLVANIA AVE NW FL 11
12151
WASHINGTON, DC 20004

Mark D. Spencer
McAfee & Taft, PC
2 LEADERSHIP SQ
211 N ROBINSON FL 8
OKLAHOMA CITY, OK 73102

Todd Stenerson
Shearman & Sterling, LLP
401 9TH ST NW STE 800
WASHINGTON, DC 20004

Kimberly West
Wallace Jordan Ratliff & Brandt, LLC
800 SHADES CREEK PKWY STE 400
BIRMINGHAM, AL 35209

Jeffrey J. Zeiger

Kirkland & Ellis, LLP
300 N LASALLE ST STE 3800
CHICAGO, IL 60654

Appeal Number:  22-13051-J
Case Style:  In Re Blue Cross Blue Shield Antitrust Litigation
District Court Docket No:  2:13-cv-20000-RDP

<u>Electronic Filing</u>
All counsel must file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause. <u>Although not required</u>, non-incarcerated pro se parties are permitted to use the ECF system by registering for an account at www.pacer.gov. Information and training materials related to electronic filing are available on the Court's website.

The enclosed order has been ENTERED.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Davina C Burney-Smith, J
Phone #: (404) 335-6183

MOT-2 Notice of Court Action