FILED

2022 Nov-14  PM 03:48
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **IN RE: BLUE CROSS BLUE SHIELD** | ) | |
| | ) | **Master File No.:** |
| **ANTITRUST LITIGATION** | ) | **2:13-CV-20000-RDP** |
| (MDL NO. 2406) | ) | |
| | ) | |

**<u>OBJECTOR HOME DEPOT U.S.A., INC.'S RESPONSE IN OPPOSITION TO
SUBSCRIBERS' MOTION TO REQUIRE AN APPEAL BOND</u>**

## **Table of Contents**

Introduction and Summary ....................................................................................1

Argument and Authorities.....................................................................................4

    I.    Subscribers fail to meet the threshold requirement for any appellate bond—that it would be necessary to secure Home Depot's payment of any costs awarded ....................................................................................4

        A.    A district court may require an appeal bond only where necessary to secure payment of costs on appeal..............................................4

        B.    No bond is necessary to secure Home Depot's payment of any costs awarded after appeal ..........................................................5

        C.    The additional factors the Subscribers raise do not justify a bond .............6

    II.    The Subscribers seek to include inappropriate and unrecoverable damages and costs in the bond amount....................................................................11

        A.    Delay in payment of the (b)(3) consideration ...........................................13

        B.    Delay in implementation of injunctive relief.............................................16

        C.    Settlement administration costs .................................................................18

    III.    If accepted, the Subscribers' arguments would foreclose important appeals of class settlements ...............................................................................19

Conclusion ..........................................................................................................21

### Introduction and Summary

As the price for appealing the perpetual release of a broad range of antitrust claims, the Subscribers want Home Depot to post a $113 million bond, of which only $20,000 falls within the type of costs recoverable under Federal Rule of Appellate Procedure ("FRAP") 39. The balance of the Subscribers' exaggerated demand covers three categories of appeal costs that no rule or statute authorizes: (1) compensation for delay in payment; (2) compensation for the delayed implementation of injunctive relief; and (3) reimbursement of administrative expenses during appeal. Indeed, the Subscribers seek a bond many times larger than all those required in all the cases they cite added together.

Their reasoning—if adopted by district courts—would imperil appellate review of class action settlements. However Home Depot's appeal here is ultimately resolved by the Eleventh Circuit, circuit court review of class settlement approval is a critical safeguard that has culminated in the reversal of sweeping settlements and contributed to the development of the law.[1] As one example, the successful appeal brought by Home Depot and others in *In re Payment Card* vindicated the Rule 23 and due process rights of an entire (b)(2) class, based on objections similar to those Home Depot raises here.[2] But there might never have been an appeal if the precondition had been a bond for the time value of that $6.5 billion settlement fund and related injunctive relief. This Court should reject the Subscribers' flawed reasoning.

First, the Subscribers fail to establish the threshold requirement for imposing *any* bond at all—a meaningful risk that Home Depot would be unable to pay any costs awarded after appeal.

---

[1] *See, e.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Ortiz v. Fiberboard Corp.*, 527 U.S. 815, 858 (1999), both reversing settlements.

[2] *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223, 233–34 (2d Cir. 2016).

The Eleventh Circuit's *Equifax* opinion teaches that a bond is appropriate only where "'necessary to ensure payment of costs on appeal.'"[3] The Subscribers' assertion that a court can require an appeal bond for any reason other than the risk of nonpayment rests entirely on district court opinions pre-dating *Equifax*.

Naturally, the Subscribers do not suggest that Home Depot would be unable to pay a bond for any costs that might actually be awarded. Instead, they claim that a bond is "necessary" because they would supposedly have to go to a neighboring jurisdiction to recover from Home Depot. However, Home Depot has already appeared in this action, and as the Court found in the Final Approval Order, it has "personal jurisdiction over … the members of the Settlement Classes" and all Settlement Class Members "have agreed that … they are and shall be subject to the jurisdiction of this court and that this court is a proper venue and convenient forum."[4] The Subscribers' inflated bond request has nothing to do with any real concern about their ability to recover any awarded costs from Home Depot after an appeal.

Second, the Subscribers seek security for amounts that would not be recoverable even if Home Depot's appeal were unsuccessful. An appeal bond is a not an independent basis for liability; it merely secures payment of a liability imposed by some separate rule or statute. For example, a district court may require a bond where necessary to ensure that an appellee can recover the costs assessed against a losing appellant under FRAP 39.

Here, however, those Rule 39 costs account for only $20,000 of the Subscribers proposed bond. The rest of the $113 million would secure damages for delayed payment ($54.2 million),

---

[3] *In re Equifax Inc. Customer Data Security Breach Litig.*, 999 F.3d 1247, 1283 (2021) (quoting Fed. R. App. P. 7).

[4] Doc. 2931 at 81, 89-90 (emphasis added).

delayed injunctive relief ($45.8 million), and additional administrative expenses ($13.9 million). Yet before securing payment for any of those damages becomes an issue, there must be some underlying legal basis to impose those liabilities on Home Depot if its appeal doesn't succeed.

The closest the law comes—and it is far from close enough—is FRAP 38, which allows a court of appeals to assess damages and additional costs against a losing appellant. But, by its plain text and Supreme Court interpretation, that rule requires a *frivolous* appeal, not merely an unsuccessful one. The Subscribers do not attempt to show that Home Depot's appeal will be frivolous. And, in any event, the courts of appeal do not allow district courts to prejudge that issue as the basis for enlarging a bond.

Finally, appeal is an essential and fully-anticipated part of the Rule 23 process, not something to be punished or deterred by a nine-figure bond. Indeed, this Court correctly anticipated precisely this sequence, noting at the fairness hearing that if objectors did not prevail in their objections to a mandatory (b)(2) class and nonetheless felt the need to challenge the scope of the claims released by participation in that class, their proper recourse would be with the Eleventh Circuit. As this Court put it, objectors would "have a ticket to Atlanta."[5]

Here, Home Depot merely plays the proper and important role of that objector. It objects to only the (b)(2) settlement and only because that settlement imposes a mandatory release of Home Depot's claims. Home Depot raises no objection to the (b)(3) monetary settlement at all. And it has never argued that either the (b)(3) payments or (b)(2) injunctive relief agreed to by the Blues should not proceed during the pendency of the appeal. The price for exercising its right of appeal should not be anything remotely approaching $113 million.

---

[5] Fairness Hrg. Tr. Vol 1 [Dkt 2864] at 102.

<u>**Argument and Authorities**</u>

I.    **The Subscribers fail to meet the threshold requirement for *any* appellate bond—that it would be necessary to secure Home Depot's payment of any costs awarded.**

    A.    **A district court may require an appeal bond only where necessary to secure payment of costs on appeal.**

A district court may impose an appeal bond only where *necessary* to secure the recovery of costs after appeal. That is clear from *In re Equifax*, the most recent word from the Eleventh Circuit:

> The plain text of Rule 7 is clear … a district court may impose an appeal bond "in any form and amount necessary <u>to ensure payment of costs on appeal</u>." Fed. R. App. P. 7 (emphasis added). The word "ensure" means "to make sure, certain, or safe." Therefore, a Rule 7 appeal bond is appropriate when the bond is imposed to make sure costs on appeal are paid.[6]

In so holding, the Court approvingly cited a leading commentator for the proposition that a district court "'should require a bond *only* if necessary to ensure payment of costs on appeal.'"[7]

The Eleventh Circuit precedent the Subscribers cite, including *Pedraza v. United Guaranty. Corp.*[8], is not to the contrary. As *Equifax* explains, *Pedraza* and similar precedents "addressed when attorney's fees under a fee-shifting statute can be included in an appeal bond as 'costs' under Rule 7," but "those cases don't deal with the issue presented here: when a run-of-the-mill appeal bond is permitted."[9] Even so, *Pedraza* foreshadows *Equifax* by describing the

---

[6] 999 F.3d at 1283 (citation omitted).

[7] *Id.* (quoting 16A Catherine T. Struve, Federal Practice and Procedure § 3953 (5th ed. 2021)) (emphasis added).

[8] 313 F.3d 1323 (11th Cir. 2002)

[9] *In re Equifax*, 999 F.3d at 1283.

4

appropriate case for a bond as one "where there is a significant risk of insolvency on the appellant's part."[10]

### B. No bond is necessary to secure Home Depot's payment of any costs awarded after appeal.

The Subscribers do not suggest that Home Depot would be financially unable to satisfy any cost award, even in the unjustifiably high amount they seek here. Quite the opposite: they characterize Home Depot as "a multinational behemoth with a market capitalization upwards of $280 billion; it reported more than $150 billion in revenues in 2021."[11]

The Subscribers urge that *Equifax* approved the district court's reasoning that a bond was "necessary" because the appealing objectors were beyond that court's jurisdiction. While the district court cited that rationale, the Eleventh Circuit didn't mention it. Regardless, the point is moot here because the Subscribers would not have to sue Home Depot in another jurisdiction to recover any awarded costs.

Home Depot has already appeared in this Court and this litigation as an objector. And Home Depot is a Settlement Class Member (by virtue of its compulsory membership in the 23(b)(2) class). Under the approved Settlement Agreement, "each Settlement Class Member hereby irrevocably submit to the *exclusive* jurisdiction of the Court for any suit, action, proceeding, or dispute arising out of or relating to this Agreement."[12] As this Court concluded in its Final Approval Order:

> Settling Defendants *and each Settlement Class Member* have submitted to the *exclusive* jurisdiction of this court for *any* suit, action, proceeding, or dispute arising out of or relating to the Settlement Agreement …. Settlement Class Members have agreed that, in the event of such dispute, they are and shall be

---

[10] *Pedraza*, 313 F.3d at 1333.

[11] Motion at 6 n.5.

[12] Settlement Agreement [Dkt 2610-1] at § 57 (emphasis added).

*subject to the jurisdiction of this court* and that this court *is a proper venue and convenient forum*.[13]

Thus, the idea that the Subscribers couldn't pursue any recoverable costs from Home Depot (or any other objector class member) in this jurisdiction is entirely wrong. No bond is necessary to secure the Home Depot's payment of any costs the Subscribers are awarded if Home Depot does not prevail on appeal.[14] That precludes a bond under *Equifax*.

### C.   The additional factors the Subscribers raise do not justify a bond.

*Equifax* did not approve a bond on any basis other than the necessity of securing payment after appeal. And under its reasoning, the additional factors the Subscribers raise cannot justify a bond that is not required to secure payment.

> The District Court in [*Equifax*] considered several factors when deciding to impose the appeal bonds: "(1) the appellant's financial ability to post a bond; (2) the merits of the appeal; (3) whether the appellant has shown any bad faith or vexatious conduct; and (4) the risk that the appellant will not pay the costs if the appeal is unsuccessful."[15]

But as the Eleventh Circuit observed "most of these factors do not appear to be relevant based on our reading of Rule 7."[16] The only factor it identified as a permissible basis for bond is the last one—the risk that the appellant will not pay if the appeal is unsuccessful.

Other circuits concur, reasoning that "[a]ppeal bonds are a type of guarantee for an appellee that an unsuccessful appellant can pay the costs the appellee incurs as a result of the

---

[13] Doc. 2931 at 89-90 (emphasis added).

[14] Even if there might be collection issues with the individual objector-appellants, whom the Subscribers suggest are serial objectors, that would not render a bond necessary as to Home Depot.

[15] 999 F.3d at 1283.

[16] *Id.*

appeal."[17] "The purpose of a Rule 7 appeal bond is to ensure that the appellant, if he is unsuccessful on appeal, can pay the 'costs on appeal' incurred by his opponent."[18]

The Subscribers cite no Eleventh Circuit authority approving an appeal bond on any other basis. Instead, they cite pre-*Equifax* district court authority for the proposition that a court may consider: "(A) appellants' financial ability to post a bond; (B) the appeals' merits; (C) the risk that appellants will not voluntarily pay costs if unsuccessful and the difficulty of collecting such costs; and (D) appellants' prior conduct, including any bad faith."[19] As addressed above, the Subscribers cannot fulfill Factor C (difficulty of collection from Home Depot). The other three factors are irrelevant under *Equifax*. Even if they were not, they would not justify a bond here.

Factor A (financial ability to post a bond) cannot warrant a bond here, where Home Depot not only possesses the ability to post a bond but also—by the Subscribers' own contention—to pay any costs award they could obtain. Under the reasoning of *Equifax*, that clear ability to pay after appeal *precludes*, rather than warrants, a bond.

Factor B, too, conflicts with *Equifax* because it would impose a bond based on the predicted merits of Home Depot's appeal, rather than any risk of non-collection. Certainly, Home Depot recognizes and respects that the Court has overruled its objections, but that is no basis for a bond. In *every* appeal, the appellant lost below. But FRAP 38 governs whether an appeal is so lacking in merit as to render an appellant liable for damages and costs beyond normal Rule 39 costs. And that rule plainly assigns that merits evaluation to the Eleventh Circuit: "If a court of appeals determines that an appeal is frivolous, it may, after a separately filed

---

[17] *In re Target Corp. Customer Data Sec. Breach Litig.*, 847 F.3d 608, 614-15 (5th Cir. 2017).

[18] *Tennille v. W. Union Co.*, 774 F.3d 1249, 1254 (10th Cir. 2014).

[19] Motion at 5 (citation omitted).

motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee."

The Supreme Court confirms what is already clear from the rule's text: it "allow[s] expenses incurred on appeal to be shifted onto appellants *only* when those expenses are caused by a *frivolous* appeal."[20] Even the Subscribers do not go so far as to say (let alone show) that Home Depot's (b)(2) settlement appeal will be frivolous. And, in any event, the Eleventh Circuit is the only court that could make such a determination, since Rule 38 vests that power in the "court of appeals," to be exercised only after notice and an opportunity to respond.

Accordingly, multiple circuit courts have rejected the notion that a district court can require or increase an appeal bond based on its prejudgment that an appeal will be frivolous.[21] As the Ninth Circuit reasoned in *Azizian v. Federated Department Stores*, an award "for frivolousness under Rule 38 is highly exceptional."[22] "We agree with the D.C. Circuit that the question of whether, or how, to deter frivolous appeals is best left to the courts of appeals, which may dispose of the appeal at the outset through a screening process, grant an appellee's motion to dismiss, or impose sanctions including attorney's fees under Rule 38."[23] Moreover, "[a]llowing districts court to impose high Rule 7 bonds on where the appeals might be found

---

[20] *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 407 (1990) (emphasis added).

[21] *See, e.g.*, *Azizian v. Federated Dept. Stores, Inc.*, 499 F.3d 950, 960 (9th Cir. 2007); *Vaughn v. Am. Honda Motor Co.*, 507 F.3d 295 (5th Cir. 2007); *In re Am. President Lines, Inc.*, 779 F.2d 714, 716 (D.C. Cir. 1985). To be sure, some courts of appeal have held that district courts are permitted to consider the merits of an appeal in determining an appropriate appeal bond under Rule 7. *Adsani v. Miller*, 139 F.3d 67, 79 (2d Cir. 1998); *Sckolnick v. Harlow*, 820 F.2d 13, 15 (1st Cir. 1987). But as outlined above, the only "proper" factor that the Eleventh Circuit has held "squares with Rule 7" is whether there is "a risk the appellant will not pay the costs on appeal." *Equifax*, 999 F.3d at 1283.

[22] 499 F.3d at 960.

[23] *Id.* at 961 (quoting *In re Am. President Lines*, 779 F.2d at 717).

frivolous risks 'impermissibly encumber[ing]' appellants' right to appeal and 'effectively preempt[ing] this court's prerogative' to make its own frivolousness determination."[24]

For similar reasons, the Fifth Circuit vacated the appeal bond in *Vaughn v. American Honda Motor Co.*[25] "There is no provision in the rules of procedure for a district court to predict that an appellate court will find an appeal frivolous and to set a bond for costs on appeal based on an estimate of what 'just damages' and costs the appellate court *might* award."[26]

As a final factor, the Subscribers urge that Home Depot's "litigation conduct" favors a bond.[27] They do not accuse Home Depot of bad faith; instead, they urge that no bad faith is required.[28] But, in one of the two cases they cite on this point, the appellant hadn't even objected to the settlement, so his appeal could only impose delay.[29] And in the other, the court imposed a bond because the appeals were "brought by professional objectors and others whose sole purpose is to obtain a fee by objecting to whatever aspects of the Settlement they can latch onto."[30] That

---

[24] *Id.* (quoting *In re Am. President Lines*, 779 F.2d at 717).

[25] 507 F.3d at 299.

[26] *Id.* (emphasis in original).

[27] Motion at 8.

[28] *Id.*

[29] *Aboltin v. Jeunesse LLC,* 2019 WL 1092789 (M.D. Fla. Feb. 15, 2019*)*. To be sure, the magistrate judge declined to make specific findings of bad faith. *Id.* at *4. But such a finding was unnecessary because the court already found that the appellant lacked standing to object (because she opted out) and thus, the appeal clearly had no merit and only served to "delay[] the completion of the class settlement." *Id.*

[30] *In re Checking Acct. Overdraft Litig.*, 2012 WL 456691, at *2 (S.D. Fla. Feb. 14, 2012).

*is* bad faith. Indeed, in most cases the Subscribers cite,[31] the district courts found that the appellants were serial objectors acting in bad faith purely to extract fees.[32]

By contrast, Home Depot sought first to be left out of this action, rather than object at all. It opted out of the (b)(3) class and asked to opt out of the (b)(2) class. Upon the Court's announced determination that Home Depot would not be permitted to opt out of the (b)(2) class, Home Depot and its counsel actively participated alongside the Subscribers in the Court's process of distinguishing between the (b)(2) and (b)(3) relief, and helped to craft the necessary supplemental notice to the self-funded class members.

In sum, Home Depot has done precisely what the Eleventh Circuit says that objectors *should* do: "play a beneficial role in opening a proposed settlement to scrutiny and identifying areas that need improvement."[33] That is not bad litigation conduct, and it does not merit a bond, particularly where—as here—it is not necessary to secure any risk of nonpayment.

As for the Subscribers' complaint that Home Depot "showed no interest in pursuing claims against the Blues until the Settlement was effectively in place,"[34] that is also no basis for a bond. They cite no case requiring a bond on that rationale. Nor would that be right. Home Depot's choses in action are Home Depot's property, and Home Depot has no obligation to allow

---

[31] *See* Motion at 5 nn.3-4.

[32] *See In re Enfamil Lipil Mktg. & Sales Practices Litig.*, 2012 WL 1189763, at *4 (S.D. Fla. Apr. 9, 2012); *Gemelas v. Dannon Co.*, 2010 WL 3703811, at *2 (N.D. Ohio Aug. 31, 2010); *In re Initial Pub. Offering Sec. Litig.,* 728 F. Supp. 2d 289, 294 (S.D.N.Y. 2010); *In re Wal-Mart Wage & Hour Emp't Practices Litig.,* 2010 WL 786513, at *1 (D. Nev. Mar. 8, 2010); *In re AOL Time Warner, Inc., Sec. & "ERISA" Litig.,* 2007 WL 2741033, at *3 (S.D.N.Y. Sept. 20, 2007);  *Barnes v. FleetBoston Fin. Corp.,* 2006 WL 6916834, at *4 (D. Mass. Aug. 22, 2006); *In re Compact Disc Minimum Advertised Price Antitrust Litig.,* 2003 WL 22417252 , at *2 n.3 (D. Me. Oct. 7, 2003).

[33] *In re Equifax*, 999 F.3d at 1257.

[34] Motion at 8.

others to sell them without its consent, whether or not it has previously acted upon those claims. Home Depot has a due process right to object to the involuntary release of its antitrust claims, particularly where the release would be perpetual, truncating Home Depot's right to seek relief from a broad range of practices at any point in the future, regardless of their competitive effect.

As for other litigation conduct, the Subscribers highlight Home Depot's Eleventh Circuit opposition to their motion to expedite the appeal. But Home Depot objected only to the Subscribers' proposal to shorten Home Depot's time to submit its lead and reply briefs by a total of 30 days. That minor difference in the schedule does not warrant a $113 million bond. Notably, the Blues also opposed expediting the briefing schedule, but the Subscribers do not accuse them of bad conduct. And the Eleventh Circuit decided not to shorten the briefing schedule, although it did expedite placement of the appeal on the Court's calendar. In other words, the Eleventh Circuit sustained Home Depot's only objection. That is no basis for a bond.

## II.   The Subscribers seek to include inappropriate and unrecoverable damages and costs in the bond amount.

Whether a particular category of damages or costs is legally eligible for inclusion in an appeal bond is a matter of law.[35] *Equifax* instructs that a bond "should be in an 'amount necessary to ensure payment of costs on appeal.'"[36] The Court continued: "This means courts should look to 28 U.S.C. § 1920 and Federal Rule of Appellate Procedure 39(e), which provide

---

[35] *See, e.g.*, *In re Target Corp. Customer Data Sec. Breach Litig.*, 847 F.3d at 614 ("While we ordinarily review the imposition of a Rule 7 bond for abuse of discretion, the determination of costs allowable in the bond is a legal question reviewed de novo."); *Tennille*, 774 F.3d at 1254 ("The first issue presented is whether an appeal bond can, as a matter of law, cover the cost of notifying class members of Objectors' merits appeals and the cost of maintaining the settlement pending those appeals. We review this legal question de novo.").

[36] 999 F.3d at 1284 n.30 (quoting Fed. R. App. P. 7).

for taxable costs on appeal, when determining an appropriate amount to cover 'costs on appeal.'"[37]

Consistent with *Equifax*, appeal bonds are limited to costs authorized by some statute or rule. As the Tenth Circuit explained, "circuit courts addressing the meaning of 'costs on appeal' have consistently linked that phrase to costs that a successful appellate litigant can recover pursuant to a specific rule or statute."[38] Thus, "Circuit courts … consistently define 'costs on appeal' for Rule 7 purposes as appellate costs expressly provided for by a rule or statute."[39]

This includes the Eleventh Circuit. In addition to *Equifax*, *Pedraza* makes this point.[40] There, the Eleventh Circuit confirmed that neither FRAP 7 or 8, nor a district court's inherent power authorizes including items in a bond unless they are awardable as damages or costs under some underlying statute or rule. The Court therefore reversed the inclusion of anticipated attorney's fees for appeal in the bond. The underlying statute did not authorize that.[41] And fee shifting under any inherent power requires that the appellant "acted in bad faith, vexatiously, wantonly, or for oppressive reasons."[42] The district court had made no such finding, and instead "focused exclusively on the objective merit of [the objectors'] claims."[43]

---

[37] *Id.* Moreover, as the Self-Funded Sub-Class Objectors show in their opposition brief, the $20,000 that the Subscribers seek for Rule 39 costs is grossly excessive given the limited copying and record preparation costs for which an appellee is responsible under Eleventh Circuit rules.

[38] *Tennille*, 774 F.3d at 1254-55.

[39] *Id.*

[40] 313 F.3d at 1333-37.

[41] *Id.* at 1334-35.

[42] *Id.* at 1336.

[43] *Id.* Although Eleventh Circuit law governs, the Sixth Circuit's decision in *In re Cardizem CD Antitrust Litig.*, 391 F.3d 812, 815 (6th Cir. 2004), on which Subscribers rely,

In sum, appeal bonds cannot cover damages or costs not authorized by some statute or rule as liabilities for an unsuccessful appeal. That encompasses virtually all the items the Subscribers propose to include, particularly since Home Depot seeks no stay of the judgment and does not appeal the (b)(3) damages settlement at all. Instead, Home Depot appeals only the (b)(2) indivisible injunctive relief settlement, and, as related below, the Settlement Agreement does not stay the implementation of injunctive relief pending appeal.

### A.      Delay in payment of the (b)(3) consideration

The Subscribers seek a bond covering the difference between the interest that would accrue on the Settlement Fund pending appeal and the value of prompt distribution. They calculate that difference as $54.2 million.

But the Subscribers skip an essential step. Before security of payment for the alleged loss of time value becomes an issue, there must be some underlying legal basis to impose that liability on Home Depot if its appeal is unsuccessful. The closest candidate is FRAP 38. And as noted above, that requires a *frivolous* appeal, not merely an unsuccessful one. The Subscribers do not even attempt to show that Home Depot's appeal will be frivolous. Further, as established above, circuit courts do not allow district courts to prejudge that issue as the basis for a bond.

The Subscribers rely upon an unaffirmed district court order in *Allapattah Services, Inc. v. Exxon Corp.* that precedes *Equifax* and required a $13.5 million bond.[44] That order cited Rule 7 and *Pedraza* as its sole justification for requiring "an appeal bond in an amount sufficient to cover the damages, costs and interest that the entire class will lose as a result of the appeal."[45]

---

reflects the same approach. In affirming the bond amount, that court carefully analyzed whether the included items were expressly authorized by the underlying substantive statute.

[44] 2006 WL 1132371, at *18 (S.D. Fla. Apr. 7, 2006).

[45] *Id.*

But the court did not apply the analysis *Pedraza* requires because it did not even purport to identify any statute or rule making the appellant liable for these damages if it lost the appeal. Moreover, *Allapattah* was driven by findings that the objections were "patently frivolous," something not remotely true of Home Depot's objections to the (b)(2) settlement here.[46]

Nor does Federal Rule of Appellate Procedure 8 authorize recovery of these delay damages. That rule provides only that a district court *granting a party's motion to stay a judgment or order pending appeal* "may *condition relief* on a party's filing a bond or other security in the district court."[47] Home Depot seeks no stay of the judgment, and it does not appeal the (b)(3) settlement at all. *Equifax*'s plain-text approach to the federal appeal bond rules renders Rule 8 inapplicable here.

Rather than a stay sought by Home Depot, it is the Settlement Agreement itself that stays disbursement of the (b)(3) fund pending an appeal of the (b)(2) settlement. The Settlement imposes the time-value risk of appeal on the (b)(3) class, rather than establishing some risk-sharing arrangement or requiring post-approval interest by the Blues.[48] Although the Agreement provides that some appeals do not toll the finality of the Settlement,[49] that exemption does not include an appeal—like Home Depot's—of solely the (b)(2) class settlement.[50] That was the bargain the Subscribers negotiated, and Home Depot should not bear the consequences.

---

[46] *Id.* at *12-14.

[47] Fed. R. App. P. 8 (emphasis added).

[48] Settlement Agreement § 8(a)(viii), (b), (c)

[49] This includes appeals "pertaining solely to any Plan of Distribution, Fee and Expense Application, and/or the actions of the Monitoring Committee." Settlement Agreement § 8(c).

[50] *Id.* at § 8(c).

The Settlement Agreement also specifies how the funds will be invested pending appeal.[51] Again, that was a negotiated choice, and the Subscribers should not look to Home Depot to supplement the rates of return as the price of exercising its due process right to appeal. Further, if sounder investments for the fund are available now, the Subscribers and the Blues should petition this Court to allow a shift in assets.

Under similar circumstances, federal circuit courts have reversed appeal bonds imposed to compensate for delay in settlement fund payment. In *Vaughn*,[52] for example, the district court had ordered a $150,000 bond in part to secure the loss of interest on the settlement fund pending appeal. The Fifth Circuit reversed, concluding "that the costs of delay are adequately captured by the settlement."[53]

> The settlement agreement makes no provision for the payment of pre-judgment interest on the benefits Honda has agreed to pay, and the settlement does not become effective, by its terms, until any appeals are concluded. The parties to the settlement thus agreed that the financial time-value of the benefits to be paid under the settlement is not to be awarded to the plaintiffs.[54]

For the same reasons, Home Depot's appeal of the (b)(2) settlement does not warrant imposing any supposed loss of time value in the (b)(3) distribution upon Home Depot.

Finally, although the point is academic, the Subscribers' lost value calculation is hopelessly speculative. First, they do not account for the Eleventh Circuit's expedition of the appeal. Second, even assuming a two-year appeal, the Subscribers' declarant acknowledges that the fund would *grow* by $170 million. Then he speculates that, if the fund were distributed now, the recipients would either invest their (typically small) shares at higher rates of return or use

---

[51] Settlement Agreement § 26(b).

[52] 507 F.3d at 298.

[53] *Id.* at 299.

[54] *Id.*

them to pay off debt incurring higher interest. It is pure conjuncture whether the recipients would make financial choices that leave them better or worse off because of an appeal. But if the Subscribers believe what they say, they should ask the Court to permit them to better invest the funds for the classes' benefit.

**B.** **Delay in implementation of injunctive relief**

The Subscribers seek to hold Home Depot financially responsible for an alleged delay in the implementation of injunctive relief.[55] They reckon this component of their proposed bond is $45.8 million.[56] This argument makes little sense, because the Settlement Agreement does not stay the implementation of injunctive relief during the pendency of an appeal:

> Settling Defendants *shall begin taking steps* necessary to implement Paragraphs 10–15 and 17–18 [of the class injunctive relief] *upon entry of the Preliminary Approval Order*. Settling Defendants shall implement *as soon as practicable*, but in no event later than 60 calendar days after the Effective Date for Paragraphs 10–14 and 17–18, and the later of three months after the Effective Date or April 1, 2022, for Paragraph 15.[57]

The Blues have already implemented what the Subscribers claim is the most important injunctive relief—elimination of the National Best Efforts ("NBE") rule. And they were supposed to "begin taking steps necessary to implement" the other injunctive relief provisions upon preliminary approval in November 2020 and implement them "as soon as practicable."[58] If the Blues are implementing the remaining injunctive relief as soon as practicable, then this

---

[55] Motion at 10.

[56] *Id.*

[57] Settlement Agreement § 19 (emphasis added).

[58] *Id.* This language does not apply to implementation of Section 16, but that provision merely preserves the Blues' ability to enact "Brand-Protection Mechanisms." It protects the Blues, not the class.

appeal will occasion no delay. If not, then the Subscribers should take steps to compel them to fulfill this obligation, rather than look to Home Depot to post a bond.

Even if the Settlement authorized the Blues to delay implementation of the injunctive relief until resolution of appeal, there would still be no legal ground for a bond. Again, there would first have to be some underlying legal basis to hold Home Depot liable for the alleged loss due to delay in that relief. Appealing is a right, not a tort or legal wrong that exposes a party to damages. The exception is a frivolous appeal. And as addressed above, a district court cannot anticipate a circuit court's action under FRAP 38 as a basis for bond.

Finally, the amount the Subscribers seek on this ground is baseless. Their declarant acknowledges "that the Settling Defendants have already begun implementing some parts of the Injunctive Relief," but despite the Agreement's plain language cited above, he says "that certain elements will be delayed if the Objectors are successful in challenging the settlement."[59] He not only assumes a two-year—rather than expedited—appeal, but also fails to offer any facts supporting this statement or specify what elements of the relief will supposedly be delayed or for how long. Those unknown variables make any lost value calculation pure conjecture. If the Blues are in fact proceeding "as soon as practicable,"[60] this appeal will occasion no delay at all. And if they are not, the Subscribers should seek their remedy against the Blues, not Home Depot.

On top of this, the declarant was "asked *to assume* that the present value of the delayed Injunctive Relief to Class Members is $534 million, or one-fifth of the cash value of the Settlement."[61] Yet neither the declarant nor the Subscribers relate any basis for this assumption.

---

[59] Doc. 2996-2 ¶ 5. Of course, the Subscribers will be awarded no costs at all "if the Objectors are successful in challenging the settlement." *Id.*

[60] Settlement Agreement Section 19, p. 33.

[61] Doc. 2996-2 ¶ 5.

Moreover, the Court is left to guess whether this valuation accounts for the fact that the NBE rule is already eliminated or what elements of relief will supposedly be delayed or for how long.[62]

### C.     Settlement administration costs

The Subscribers ask for a bond covering $13.9 million in additional class communications and administrative expenses they say will accrue pending appeal. But, as with other cost components that they would include, the Subscribers do not identify any underlying statute or rule that would make an unsuccessful but nonfrivolous appellant liable for these expenses. Accordingly, circuit precedent once again forecloses their demand for a bond to cover costs that they may not recover under 28 U.S.C. § 1920 or Rule 39(e).

For this reason, circuit courts have reversed bonds calculated to cover this category of costs. As the Tenth Circuit reasoned:

> Plaintiffs have not identified, nor could we find, any rule or statute that permits them, should they succeed in defending Objectors' merits appeals, to recover the cost of notifying class members of those merits appeals or to recover the cost of maintaining the class settlement fund pending the merits appeals. Therefore, the district court erred in requiring Objectors to post an appeal bond covering these costs.[63]

The district court cases on which the Subscribers rely do not conduct the analysis the Eleventh Circuit required in *Pedraza*, which establishes that appeal bonds can cover only those costs or damages authorized by some underlying rule or statute. Moreover, the Subscribers don't

---

[62] To be clear, Home Depot argues that no bond amount based on the alleged delay of either monetary or injunctive relief would be appropriate. But should the Court determine that any amount based on delay is appropriate, it should then permit discovery of Subscribers' declarant given these and other infirmities underlying the declaration.

[63] *Tennille*, 774 F.3d at 1255.

cite a single decision imposing any bond remotely close to the administrative costs they request here. Of their cases, the highest bond for administrative costs was $61,000.[64]

Finally, the $175 million interest that the Subscribers' declarant says will accrue pending appeal would more than cover this expense. Thus, even if an appeal would generate additional costs, the growth of the funds in the agreed-upon investments would more than pay for them.

## III.   If accepted, the Subscribers' arguments would foreclose important appeals of class settlements.

The Subscribers' invitation for the Court to violate circuit precedent and the plain language of the governing rules is reason enough to deny their motion. But if it became accepted practice, the Subscribers' approach would foreclose many or most class action appeals. Almost invariably, any individual objector's stake in settled claims is dwarfed by the total cash consideration to the class. So the Subscribers' argument would typically require objectors to post appeal bonds grossly out of proportion to their individual stake, simply to exercise their right to appeal. And the larger the settlement, the larger the bond, and the less likely an appeal. Here, for

---

[64] *See In re Pharma. Indus. Average Wholesale Price Litig.*, 520 F. Supp. 2d 274 (D. Mass. 2007) (granting $61,000 in administrative costs); *see also In re N.J. Tax Sales Certificates Antitrust Litig.*, 750 F. App'x 73, 84–85 (3d Cir. 2018) (affirming a $10,000 bond that included administrative costs); *In re Polyurethane Foam*, 178 F. Supp. 3d 635, 645 (N.D. Ohio 2016) (adding $15,000 to the bond for administrative costs); *In re Nutella Mktg. & Sales Pracs. Litig.,* 589 F. App'x 53, 61 (3d Cir. 2014) (affirming $20,000 in administrative costs); *Dennings v. Clearwire Corp.*, 928 F. Supp. 2d 1270, 1272 (W.D. Wash. 2013) (granting $39,150 in administrative costs); *In re Uponor, Inc. F1807 Plumbing Fittings Prods. Liab. Litig.*, 2012 WL 3984542, at *6 (D. Minn. Sept. 11, 2012) (including $20,000 in administrative costs); *Miletak v. Allstate Ins. Co.*, 2012 WL 3686785 (N.D. Cal. Aug. 27, 2012) (including $50,000 administrative costs); *In re Checking Account*, 2012 WL 456691, at *3 n.6 ($5,000 cost bond under Rule 7); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 2003 WL 22417252 (D. Me., Oct. 7, 2003) (granting $35,000 bond, including administrative costs); *Brandewie v. Wal-Mart Stores, Inc.*, 2016 WL 698110, at *3 (N.D. Ohio Feb. 22, 2016) (including $25,000 administrative costs).

example, the Subscribers seek a bond many times larger than all those required in all the cases they cite put together.[65]

The Subscribers' approach would frustrate the important role of the appellate process in evaluating class settlements. For example, the appeals in *AmChem Products*,[66] *Ortiz v. Fiberboard Corp*,[67] and *In re Payment Card*[68] protected the Rule 23 and due process rights of many millions of absent class members. And each of those appeals vindicated arguments that the approving district courts had thoughtfully rejected. Yet there might have been no appeals at all if the objectors had had to post a bond for the time value of the financial and injunctive relief provided by those massive settlements. Whether the Eleventh Circuit affirms or reverses this Settlement, this appeal is an important part of the Rule 23 process, not something to be punished or deterred.

---

[65] *See, e.g.*, *In re Enfamil Lipil Mktg. & Sales Practices Litig.*, 2012 WL 1189763, at *5 (S.D. Fla. Apr. 9, 2012) ($1,000); *In re Wachovia Corp. "Pick-a-Payment" Mortgage Marketing and Sales Practices Litig.*, 2011 WL 3648508 (N.D. Cal. Aug. 18, 2011) ($15,000); *In re Wells Fargo Loan Processor Overtime Pay Litig.*, 2011 WL 3352460 (N.D. Cal. Aug. 2, 2011) ($20,000); *Gemelas v. Dannon Co.*, No. 1:08CV236, 2010 WL 3703811, at *3 (N.D. Ohio Aug. 31, 2010) (tentative $275,000 bond pending discovery); *In re Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d 289, 295 (S.D.N.Y. 2010) ($25,000); *In re Wal-Mart Wage & Hour Emp't Practices Litig.*, 2010 WL 786513, at *2 (D. Nev. Mar. 8, 2010) ($500,000 per objector); *In re AOL Time Warner, Inc., Sec. & "ERISA" Litig.*, 2007 WL 2741033, at *3 (S.D.N.Y. Sept. 20, 2007) ($800 bond in a $2.5 billion settlement); *Barnes v. FleetBoston Fin. Corp.*, 2006 WL 6916834, at *3 (D. Mass. Aug. 22, 2006) ($645,111.60 appeal bond); *In re Currency Conversion Fee Antitrust Litig.*, 2010 WL 2033811 (S.D.N.Y. May 21, 2010) ($50,000); *Fleury v. Richemont N. Am., Inc.*, 2008 WL 4680033, at *9–*10 (N.D. Cal. Oct. 21, 2008) ($5,000); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 2003 WL 22417252, at *2 (D. Me. Oct. 7, 2003) ($35,000); *In re Cardizem CD Antitrust Litig.*, 391 F.3d 812, 815 (6th Cir. 2004) ($174,429).

[66] 521 U.S. 591.

[67] 527 U.S. 815.

[68] 827 F.3d 223.

**<u>Conclusion</u>**

The Subscribers fail to satisfy the threshold requirement for any appeal bond because they offer no valid reason that they would be unable to collect any costs or damages awarded against Home Depot if its appeal fails. Moreover, virtually all the components they seek to include in the bond amount are unauthorized by law. The Court should deny the Subscribers' motion and impose no bond.

*Signatures appear on the following page.*

Respectfully submitted this 14th day of November, 2022.

/s/ Frank M. Lowrey IV
Frank M. Lowrey IV
GA Bar No. 410310
lowrey@bmelaw.com
Ronan P. Doherty
GA Bar No. 224885
doherty@bmelaw.com
E. Allen Page
GA Bar No. 640163
page@bmelaw.com
BONDURANT MIXSON
& ELMORE, LLP
1201 West Peachtree St NW
Suite 3900
Atlanta, GA 30309
Telephone: (404) 881-4100
Facsimile: (404) 881-4111

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of November, 2022, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system, which will send a Notice of

Electronic Filing to all known counsel of record.

*/s/ Frank M. Lowrey IV*
Frank M. Lowrey IV
GA Bar No. 410310
lowrey@bmelaw.com
BONDURANT MIXSON
& ELMORE, LLP
1201 West Peachtree St NW
Suite 3900
Atlanta, GA 30309
Telephone: (404) 881-4100
Facsimile: (404) 881-4111
