# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

|   |   |
|---|---|
| IN RE: BLUE CROSS BLUE SHIELD ANTITRUST LITIGATION (MDL NO.: 2406) | Master File No.: 2:13-CV-20000-RDP<br>This document relates to all cases. |

## ORDER REGARDING ADDITIONAL BRIEFING RELEVANT TO CLASS CERTIFICATION

This matter is before the court on the Providers' and the Blues' respective reports regarding issues they requested that the court prioritize. (Docs. # 2925, 2926). One of the issues the Providers and the Blues agreed should be addressed is Provider Plaintiffs' Renewed Motion for Class Certification. (Doc. # 2604).[1]

In its review of the Motion, the related briefing, the underlying expert reports, and the parties' *Daubert* Motions, the following questions have been presented.

**I.      Is the Market for Healthcare Financing a Two-Sided Platform?**

In seeking class certification, Providers have the burden to show that they can prove by common evidence that all class members suffered an injury -- or antitrust impact -- from the alleged antitrust violation(s). *In re Suboxone (Buprenorphine Hydrochloride & Nalaxone) Antitrust Litig.*, 421 F. Supp. 3d 12, 55 (E.D. Pa. 2019), *aff'd sub nom. In re Suboxone (Buprenorphine Hydrochlorine & Naloxone) Antitrust Litig.*, 967 F.3d 264 (3d Cir. 2020). As the Third Circuit[2] explained,

---

[1] For various reasons not relevant here, the Motion was terminated to allow the parties to address other issues in the interim.

[2] The court's own research reveals that the Eleventh Circuit has not had an occasion to address this issue. At least at this early stage, the court believes the Third Circuit's analysis is well reasoned.

> In antitrust cases, impact often is critically important for the purpose of evaluating Rule 23(b)(3)'s predominance requirement because it is an element of the claim that may call for individual, as opposed to common, proof. Plaintiffs' burden at the class certification stage is not to prove the element of antitrust impact, although in order to prevail on the merits each class member must do so. Instead, the task for plaintiffs *at class certification is to demonstrate that the element of antitrust impact is capable of proof at trial through evidence that is common to the class* rather than individual to its members. Deciding this issue calls for the district court's *rigorous assessment of the available evidence and the method or methods by which plaintiffs propose to use the evidence to prove impact at trial*.

*Id.* (quoting *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311-12 (3d Cir. 2008) (citations omitted, emphasis added). It appears that Providers intend to establish antitrust impact through the expert testimony of Deborah Haas-Wilson. (Doc. # 2604 at 36-42). Yet, Dr. Haas-Wilson's reports do not appear to consider any effect of Provider reimbursement rates on the premiums Subscribers pay.

The court has serious questions about whether the market for healthcare financing may be a two-sided platform. *See Ohio v. Am. Express*, 138 S. Ct. 2274 (U.S. 2018). In their Opposition to Providers' Motion for Class Certification, Defendants included a footnote on this issue:

> The Blue Plans operate "two-sided platforms," as discussed in the Supreme Court's recent decision, *Ohio v. Am. Express*, 138 S. Ct. 2274 (U.S. 2018). As Defendants previously previewed, *AmEx* has direct implications for the standard of review, and compels a full rule of reason analysis here. Hr'g Tr. (Proctor, J.) at 72-78 (Jan. 15, 2019). In a two-sided market, the proper analysis of antitrust injury or impact is not simply whether the challenged conduct impacted providers. Rather, the impact analysis must take into account both sides of the market. Defendants will, at the appropriate time, demonstrate that Providers have not met their burden of showing anticompetitive harm considering both sides of the market.

(Doc. # 2606 at 41, n.37). The court is cognizant that it is not, at this point, deciding whether Providers have established all of the elements of their claims. Nevertheless, the appropriate time to properly define the relevant market is now. Further, the certification analysis often "overlap[s] with the merits of the plaintiff's underlying claim." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33-34 (2013) (cleaned up). Only once the court has determined whether the market for healthcare

financing is a two-sided platform that exhibits strong indirect network effects will it be able to adequately assess whether Providers have adequately demonstrated that antitrust impact can be shown on a class-wide basis in the relevant market.

## II.     Do All Putative Class Members have Article III Standing?

The briefing on the Motion for Class Certification was completed in December 2020. (*See* Doc. # 2647). On July 27, 2022, the Eleventh Circuit issued its decision in *Drazen v. Pinto*, 41 F.4th 1354 (11th Cir. 2022). In *Drazen*, a panel of the Circuit held that a class may not be certified unless it is shown that all that absent putative class members have Article III standing. 41 F.4th at 1360 (citing *TransUnion LLC v. Ramirez*, ⎯⎯ U.S. ⎯⎯, 141 S. Ct. 2190 (2021)). "Every class member must have Article III standing in order to recover individual damages." *Id.* (quoting *TransUnion*, 141 S. Ct. at 2204-05, 2208). How does *Drazen* apply to this antitrust case, if at all?

## III.    Parties to Confer Regarding a Supplemental Briefing Schedule

The court requires additional briefing and desires the parties' input about a schedule for that. **On or before December 16, 2022**, the parties **SHALL** meet and confer and file a joint report with the court proposing a briefing schedule for supplemental briefing on the court's questions set out above.

**DONE** and **ORDERED** this November 17, 2022.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE