## IN  THE  UNITED  STATES  DISTRICT  COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| IN RE BLUE CROSS BLUE SHIELD ANTITRUST LITIGATION MDL 2406 | :    **Master File 2:13-cv-20000-RDP** : : : : :    **This document relates to:** :    **Subscriber Track cases** |

### SUBSCRIBERS' REPLY IN SUPPORT OF THEIR MOTION TO REQUIRE A BOND

Subscriber Plaintiffs submit this consolidated reply to all four Objector-Appellants' (the "Objectors") oppositions to Subscribers' motion for a bond.[1]  The Objectors' responses are without merit.  This Court has ample authority to impose a bond, and the balance of equities here cries out for the exercise of that power.

### INTRODUCTION AND SUMMARY OF ARGUMENT

The stakes are extraordinarily high for the Class: they face the loss of more than $100 million if the appeals run for two years, and those costs are well-documented by Subscribers. Objectors' arguments, on the other hand, diminish this Court's power to protect the interests of the parties before it. In their view, the Court must allow six objectors to hold hostage one of the largest antitrust settlements in history – all without posting *any* bond to cover the large and tangible costs of delay on appeal. But Objectors' legal arguments are unpersuasive, and their factual claims demonstrate a fundamental misunderstanding of the Settlement Agreement. This Court should reject both arguments and compel Objectors to shoulder their fair share of the cost of delaying

---

[1] The Objectors' four briefs are cited as follows: Jennifer Cochran and Aaron Craker (ECF No. 3001 ("Cochran Br.")); the Bradley Arant Objectors (Employee Services, Inc. and Topographic, Inc.) (ECF No. 3003 ("BA Br.")); Home Depot, U.S.A., Inc. (ECF No. 3004 ("HD Br.")); and David Behenna (ECF No. 3005 ("Behenna Br.")).

hard-won relief from reaching one hundred million Class members today. In doing so, the Court would align itself with the many courts, inside and outside this Circuit, which have imposed very large bonds on objectors when the facts warranted it. *See infra* p. 5–6 and n. 5.

It is worth emphasizing that Objectors spend pages criticizing the size of the proposed bond, attempting to frame Subscribers' request as a blow to the general right to appeal class action settlements.[2] But that argument has no place here. Conspicuously missing from Objectors' briefs is an indication from *any* Objector that they cannot pay their allocated share of the bond. On the contrary: Home Depot stresses its financial ability "to satisfy any cost award," including the amount requested by Subscribers, HD Br. at 5, and the other Objectors assert no inability to pay. (This is particularly true because the upfront cost of a bond consists only of the premiums to secure its issuance, typically a small fraction of the face value of the bond. *See infra* n. 11.) Even in Objectors' own view, this is *not a case* where the right to appeal is in danger. Rather, the bond will simply protect millions of Class members who face delayed cash payments and injunctive relief along with increased administrative fees as a result of Objectors' appeals. This Court should not allow these tangible costs to remain uncompensated. It should invoke its power under Federal Rules of Appellate Procedure 7 and 8, along with its inherent power grounded in equity, to make Subscribers whole.

<u>**ARGUMENT**</u>

**I.    The Costs Inflicted on the Class by Objectors' Appeals Are Enormous**

The starting point for analysis is the cost to the 100 million strong Class.  Subscribers' opening brief details those costs, and supports them with both fact and expert declarations.  *No*

---

[2] *See, e.g.*, Cochran Br. at 1 ("How this Court responds to class counsel's motion may well determine if any class member challenging a settlement's fairness in this district ever dares to appeal an adverse decision again."); BA Br. at 7; HD Br. at 3.

*Objector has submitted a countering declaration.* And those costs are enormous, precisely because of the huge value conferred on Subscribers by what this Court termed a "historic" and "transformative" settlement. ECF No. 2931 at 3, 68. The injuries fall into three categories:

- The additional cost of settlement administration, $13.9 million, because the complex system of claims accounting and payment cannot begin until all appeals are resolved.

- The lost value of two years of the Settlement's far-reaching injunctive relief, $45.8 million.

- The cost of sequestering almost the entire cash value of the Settlement – some $2.495 billion – in money-market funds or Treasury obligations. Over two years, that cost amounts to $54.2 million.

In their limited attempts to grapple with the costs imposed by their appeals, Objectors come up short. First, Home Depot argues that if Subscribers are harmed by the $54.2 million lost by impounding Settlement funds in Treasury obligations, they should simply petition the Court and the Blues to re-write the Settlement Agreement. HD Br. at 15–16, *see also* BA Br. at 10. Objectors ignore Section 8.d. of the Agreement, which says that any material change to the Settlement entitles the parties to rescind the entire deal. ECF No. 2610-2 at 29.

Second, Home Depot quibbles with the calculation of the loss incurred by delaying key parts of the injunctive relief for years. HD Br. at 17–18. This Court has already found that the injunctive relief is at least as "crucial," or valuable, as the Settlement's cash component. ECF No. 2931 at 5. With only one portion of that relief in effect today (elimination of National Best Efforts), and the remaining portion yet to be implemented (including the MFN relief and the Second Blue Bid relief),[3] it is reasonable – and frankly, conservative – to estimate that the remaining relief is

---

[3] Home Depot mistakenly asserts, HD Br. at 16, that all of the injunctive relief is already in place. (Bradley Arant appears to assert the same. BA Br. at 9–10.) The timing for injunctive relief is spelled out in ¶ 19 of the Settlement Agreement, ECF No. 2610-2 at 37. Defendants must "begin taking steps *necessary to implement*" that relief after preliminary approval. *Id*. (emphasis added). But they need not actually implement that relief until 90 days after the Effective Date for the Second Blue Bid. The Effective Date is defined in ¶ 8 as including the disposition of all appeals,

worth something on the order of one-fifth of the injunction's total value, or $534 million. The present value of that lost relief amounts to the $45.8 million set forth in Mr. McKnight's declaration. This Court has discretion over the amount of the bond, and precision is not required. *See* 1979 Advisory Committee Notes to FRAP 7 (the "amended rule would leave the question of the need for a bond for costs and its amount in the discretion of the court."). Even making the extraordinarily conservative assumption that the remaining injunctive relief was worth only a *tenth* of the injunction's total value would nonetheless require a bond of close to $25 million.

Third, Home Depot contends that earnings on the Settlement Funds will "cover" the extra administrative costs of $13.9 million. HD Br. at 18–19; *see also* BA Br. at 10–11. This is nonsense: but for the appeals, Class members would both receive the multi-year return on their Settlement proceeds, *and* avoid the extra administrative costs caused by Objectors' delay. Home Depot also asserts that in other cases, objectors' bonds for administrative costs are small, claiming that "the highest . . . was $61,000."[4] HD Br. at 19. This claim is irrelevant given the huge Class size and administrative complexity of the unprecedented Settlement at issue here. And Home Depot is dead wrong: many such bonds exceed $100,000 or $1 million, and at least one approaches $10 million.[5]

---

with limited exceptions. ECF No. 2610-2 at 29. As a matter of fact, Second Blue Bids are not available today and will not be available until appeals are completed. And until the Settlement becomes effective at the conclusion of appeals, Defendants remain free to reinstate National Best Efforts.

[4] The Bradley Arant Objectors take a related tack, claiming the measuring stick should be the size of a bond *affirmed on appeal*, which ignores the fact that the vast majority of bonds are imposed by trial courts and adjudicated without an appeal. Even so, comparably-sized delay bonds have been affirmed or set by several Courts of Appeal. *See immediately infra* n. 5.

[5] *See*, *e.g.*, *Hershey v. ExxonMobil Oil Corp.*, No. 07-1300-JTM, 2013 WL 66075 (D. Kan. 2013), *aff'd*, 550 F. App'x 566 (10th Cir. 2013) ($9,080,000); *In re Wal-Mart Wage & Hour Empl. Pracs. Litig.*, MDL No. 1735, 2010 WL 786513 (D. Nev. 2010) ($2,000,000 in total for four objectors);

Finally, the Bradley Arant Objectors conjure up a supposed "windfall" for Subscribers from the fact that interest rates have moved up in recent months.  BA Br. 10–11.  This reflects an obvious misunderstanding of the injury inflicted by Objectors.  As Mr. McKnight's declaration carefully explains, there is a "spread" between the returns on liquid and illiquid investments – liquid investments generate greater returns.  That spread exists whether the returns on the illiquid investment (like the T-bills used here) are high or low, and Mr. McKnight's declaration fully accounts for the current returns on the Settlement funds in reaching his conclusion.  ECF No. 2996-2 at 6–8.

## II.    FRAP 7 Permits the District Court to Assess Costs of Delay, Lost Liquidity, and Administrative Expenses, and *Equifax* Does Not Limit Its Scope.

This Court has ample power under FRAP 7 to impose a bond on appeal.  *Pedraza v. United Guar. Corp.*, 313 F.3d 1323, 1330 (11th Cir. 2002), found it "simple" and "unambiguous" that "[u]nder no fair reading" can Rule 7's reference to costs in setting bonds on appeal be limited to those costs expressly identified in FRAP 39.  That holding, since reaffirmed by the Eleventh Circuit, *Young v. New Process Steel, LP*, 419 F.3d 1201, 1203–04 (11th Cir. 2005), has been relied on by multiple courts in this Circuit to impose substantial bonds on objectors to protect class members.  *See, e.g.*, *In re Checking Acct. Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2012 WL 456691 (S.D. Fla. Feb. 14, 2012); *Allapattah Servs., Inc. v. Exxon Corp.*, No. 91-0986 CIV, 2006 WL 1132371 (S.D. Fla. Apr. 7, 2006).

Unhappy with *Pedraza*'s settled holding, Home Depot insinuates, HD Br. at 6, that the panel in *In re Equifax Inc. Customer Data Security Breach Litig.,* 999 F.3d 1247 (11th Cir. 2021), overruled, in a footnote, the *Pedraza* panel's well-reasoned conclusion that the definition of

---

*Heekin v. Anthem, Inc.*, No. 1:05-cv-01908-TWP-TAB, 2013 WL 752637 (S.D. Ind. 2013) ($250,000); *In re Cardizem CD Antitrust Litig.*, 391 F.3d 812 (6th Cir. 2004) ($174,429).

"costs" under Rule 39 cannot "govern[] the construction of" Rule 7.  *Pedraza*, 313 F.3d at 1330; see also BA Br. at 12.  It is hornbook law, of course, that one appellate panel "cannot overrule another panel's decision," *Julius v. Johnson*, 755 F.2d 1403, 1404 (11th Cir. 1985) (citation omitted) – only the Eleventh Circuit, sitting *en banc*, or the United States Supreme Court, can do that. *Id.*

Objectors' contention that *Equifax* somehow barred the imposition of a Rule 7 bond if a party can pay the costs of an unsuccessful appeal, abolishing the four-factor test for such bonds widely used throughout this Circuit and around the country, HD Br. at 11–12, fares no better.  *See also* BA Br. at 12.  *Equifax* held only that the District Court did not abuse its discretion by requiring an appeal bond based on the risk of non-payment factor.  999 F.3d at 1283–84 (declining to decide the relevance of the other three factors to the Rule 7 analysis).  The facts of *Equifax* made it unnecessary to address any factor other than the risk of non-payment, because the objectors there (including, interestingly, the serial objector George Cochran, appearing in this case), plainly posed that risk.  *Id.* at 1284.  As a result, any discussion of the four-factor test was *dictum*.

And even if *Equifax* required narrowing the focus under Rule 7 to risk of non-payment, Objectors' argument is flawed because it conflates ability to pay with risk of non-payment.  Home Depot's concession that it *can* pay the costs of appeal coincides with the first factor, "financial ability to post bond," not the risk of non-payment.  ECF No. 2996 at 5.  It goes without saying that there is more to the risk of non-payment than just an appellant's ability to pay.  A wealthy objector outside the reach of the court, for example, may have the ability, but not the motivation, to pay appeal costs.  Home Depot cannot blur the line between these two factors while arguing that courts are permitted to consider only non-payment risk after *Equifax*.[6]  Likewise, Home Depot's attempt

---

[6] Following Home Depot's flawed reasoning, a court would *never* be able to impose a bond when dealing with wealthy individuals or solvent corporations, no matter how frivolous, vexatious, or

to minimize its risk of non-payment by insisting that Objectors have consented to personal jurisdiction in this Court fails to address Subscribers' burden in instituting multiple collection actions to recover costs that were not voluntarily paid. After all, there is a big difference between having a judgment in hand and collecting on it. The fact that Home Depot *ultimately* has the ability to pay a large judgment (through assets, for example, spread throughout the United States) is not the same as eliminating the risks of non-payment and non-collection by posting a bond.

At a minimum, *Equifax* allows use of the four-factor test to inform the court's assessment of Objectors' risk of non-payment. That assessment favors a bond here: Objectors do not challenge their ability to pay it; the Court has already considered and rejected the merits of the objections at issue in their appeals; and Objectors' belated attempt to halt the execution of the Settlement and refusal to expedite their appeals demonstrate an intent to gain leverage on Subscribers.

To the extent Objectors argue that the requested bond "imperil[s] appellate review of class action settlements," HD Br. at 1, or "effectively bar[s]" such appeals, BA Br. at 2, Home Depot admits at the outset that it can "satisfy any cost award," including the bond Subscribers have requested, HD Br. at. at 5, and never argues that the requested bond will prevent its appeal. Indeed*, not one* of the six Objectors contests their ability to pay a proportionate share of the proposed bond. Of course, "[a]ny bond imposed pursuant to Rule 7 burdens an appeal to some degree, yet we presume that Rule 7 is valid." *Int'l Floor Crafts, Inc. v. Dziemit*, 420 F. App'x 6, 19 (1st Cir. 2011) (citing *Adsani v. Miller,* 139 F.3d 67, 76 (2d Cir. 1998)); *see also id*. at 79 (holding that "without any showing of her financial hardship, the bond imposed on [an objector] is not an

---

ill-intentioned the purpose of their appeal. Aside from creating obvious inequities, this approach undermines the purpose of the rule: to ensure the costs and expenses of appeal are not borne solely by appellees.

impermissible barrier to appeal"). The right to appeal a class action settlement is not in jeopardy here. Instead, the question is whether a handful of objectors can inflict massive, irreversible injury on a Class of millions without any responsibility to make the Class whole.

As a last resort, Home Depot claims that this Court may not impose costs beyond those enumerated in FRAP 39 unless the appeal is frivolous. HD Br. at 7–9. This position defies *Pedraza*'s holding that a district court may order an appeal bond for attorney fees, even if the appeal is *not* frivolous. Home Depot nonetheless insists that the district court may not make a merits determination at all – implying that an appeal bond can never include "costs beyond normal Rule 39 costs" because Rule 38 governs damage awards for frivolous appeals. *Id.* at 7.

In addition to conflicting with Circuit precedent, Home Depot's argument confuses the question of whether an appeal has merit with the question of frivolousness under Rule 38, which is reserved for the Court of Appeals. Subscribers need not demonstrate that Home Depot's appeal in this case is frivolous to obtain a bond. ECF No. 2996 at 6. The merits of every appeal are first decided by a district court. In this case, the Court issued a detailed opinion soundly rejecting Objectors' claims, ECF No. 2931, and expressed no uncertainty about the result. Objectors' appeals simply lack merit under the four-part test for bonds on appeal, and those appeals should not delay relief unless their sponsors shoulder an appropriate portion of Subscribers' enormous delay costs.

## III.   This Court Should Grant the Bond Under the Inherent Power to Manage Its Affairs, Consistent With FRAP 8 and FRCP 62.

As *Pedraza* holds, FRAP 7 is just one route to the relief Subscribers seek.[7] Because Objectors' appeals stay the relief ordered by this Court, a bond under Rule 8 protecting the interests

---

[7] *Equifax* addressed only Rule 7, and not Rule 8 and the Court's inherent authority, as the basis for a bond. 999 F.3d at 1284 & n. 30. The same goes for the two out-of-Circuit cases on which

of the Subscribers is appropriate. Courts may apply FRAP 8(a), permitting a district court to set a bond pending appeal, in tandem with FRCP 62, which governs the court's power to impose a bond when proceedings are stayed. Multiple courts in the Eleventh Circuit have found that an appeal delaying relief "*is* an actual stay of [the] [j]udgment" approving the class settlement. *See In re Checking Acct. Overdraft Litig.*, 2012 WL 456691, at *2 (emphasis added); *see also Allapattah Servs.,* 2006 WL 1132371, at *18 (holding that the appeal stayed "both the entry of final judgment on all claims in the Class Administration Process and payment to all Class members"). Objectors also agree that Rule 8 "can secure against an appeal's postponement of benefits." Cochran Br. at 8. There is no need for Objectors to move for a stay: their appeals already have that effect and force the Class to bear the risks of delay. *In re Broadcom Corp. Sec. Litig.*, No. SACV-01-275 DT(MLGx), 2005 WL 8152912, at *3 (C.D. Cal. Dec. 5, 2005). Objectors cannot escape the fact that their appeals delay both monetary and injunctive relief to the entire Class. As a result, this Court should set an appeal bond under the terms of FRAP 8(a) and FRCP 62.

Alternatively, this Court can reach the same result – and set the same bond – by exercising its inherent power to preserve the Settlement. Importantly, Objectors agree that "'federal courts possess the inherent power to require the posting of cost bonds.'" BA Br. at 15 (quoting *Pedraza*, 313 F.3d at 1335). *Pedraza's* holding followed Supreme Court teaching that affirmed this equitable power, "governed not by rule or statute" and incidental to "the nature of [the court's] institution.*" See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (citing *United States v. Hudson,* 7 Cranch 32, 34 (1812)). Objectors attempt to limit these powers to cases where a party demonstrates subjective bad faith. Cochran Br. at 10. But this impermissibly narrows the court's inherent power, which it can invoke "to achieve the orderly and expeditious disposition of

---

Objectors rely, *Vaughn v. American Honda Motor Co., Inc.*, 507 F.3d 295, 297 (5th Cir. 2007) (*per curiam*)); *Tennille v. Western Union Co.*, 774 F.3d 1249 (10th Cir. 2014).

cases." *Chambers*, 501 U.S. at 43 (citing *Link v. Wabash R. Co.,* 370 U.S. 626, 630–31 (1962)).[8] And contrary to Objectors' claims, BA Br. at 16, the Supreme Court has found that "the inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct." *Chambers*, 501 U.S. at 49.

As a result, Objectors cannot erase this Court's inherent power by simply pointing to a statute that arguably covers related conduct. *Pedraza,* which viewed the court's inherent power to shift attorney fees through the lens of the underlying fee-shifting statute, requires a more nuanced approach. 313 F.3d at 1335–37. The Eleventh Circuit's reasoning there is equally applicable here.[9] The Court's "well established" inherent "authority to 'preserve a fund or property which may be the subject of a final decree,'" *HMG Prop. Invs., Inc. v. Parque Indus. Rio Canas, Inc.*, 847 F.2d 908, 916 (1st Cir. 1988), should be guided by the rules governing the same conduct – FRAP 8 and FRCP 62. The Court should exercise its inherent power to preserve the Settlement for the benefit of the Subscribers by requiring a bond.

The balance of equities between the parties guides any exercise of the Court's inherent powers,[10] and that balance tilts heavily in Subscribers' favor. Objectors all but ignore the costs of

---

[8] For example, bad faith is necessary to permit the court to exercise its power to punish parties for contempt or impose sanctions against a litigant, but not to dismiss a case on *forum non conveniens* grounds or for failure to prosecute. *Chambers*, 501 U.S. at 44–45.

[9] Attempting to distinguish *Pedraza*, Objectors twist its express endorsement of the inherent power, arguing that a finding of bad faith is required *whenever* the court exercises that power. Cochran Br. at 10. This misunderstands *Pedraza*, which required a bad faith analysis only because the district court in that case disregarded the "American Rule" by awarding a reasonable attorney fee to the prevailing party. That logic does not apply here, because Subscribers have not requested attorney fees, and the American Rule is irrelevant in apportioning costs of delayed relief, lost liquidity, and administration.

[10] *See ITT Cmty. Dev. Corp. v. Barton,* 569 F.2d 1351, 1359 (5th Cir. 1978) (pre-5th Circuit split, holding that the court's inherent authority stems from the historical power of equity courts "to process litigation to a just and equitable conclusion.").

delayed relief to the Subscriber Class, *see supra* Section I.  And although this Court must weigh the burden to Objectors' appeal rights before imposing a bond under its inherent power, Objectors have not demonstrated an inability to pay their share of the bond.  Nor do they argue that their appeal rights have, in fact, been chilled.  After all, Home Depot concedes that it can pay the entire bond requested by Subscribers, let alone the fractional premium it would actually be required to cover. [11]  HD Br. at 5.  Again, this is not a case where the Objectors' right to appeal is under threat. By contrast, the immense costs of delaying cash and injunctive relief for the Subscribers inflicts real harms on millions of Class members (the calculation of which no Objector seriously challenges), and which the Court must consider when it weighs the equities here.

Eleventh Circuit precedent dictates that the purpose of a bond is "to preserve the status quo while protecting the non-appealing party's rights pending appeal." *Poplar Grove Planting & Ref. Co., Inc. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1190–91 (5th Cir. 1979); *see also Pettway v. Am. Cast Iron Pipe Co.*, 411 F.2d 998, 1003 (5th Cir. 1969) ("It is well settled that [Rule] 62(c) is expressive of the power in the courts to preserve the status quo pending appeal.")  By accounting for Subscribers' costs, the requested bond preserves the status quo. Subscribers have shown that each category of costs requested in their motion stems from a real, quantifiable injury to the entire Class.  Equity demands that the Court ensure these harms will be compensated.

Objectors' remaining arguments are either foreclosed by the Settlement Agreement or go only to the size of the bond, rather than its issuance.  They contend that the Settlement Agreement,

---

[11] *See How Much Does an Appeal Bond Cost?,* Court Surety Bond Agency, https://courtsurety.com/appeal-bonds/how-much-does-an-appeal-bond-cost/ (last visited Nov. 16, 2022) (explaining that the cost of an appeal bond can range from 0.3% to 4% of the bond amount); *Appeal Bond*, SuretyBonds.com, https://www.suretybonds.com/court/appeal-bonds.html (last visited Nov. 16, 2022) (estimating typical annual surety bond premiums at 1% to 3% of the bond amount).  If Home Depot were required to cover the entire bond amount requested by Subscribers, which it is not, it would pay between $340,000 and $4.6 million – a meager sum for what all agree is a corporate "behemoth."

by its own terms, somehow bars Subscribers' relief because it contemplates delays caused by appeals. BA Br. at 6–7; Behenna Br. at 6–7. This argument is circular at best. Although the Settlement Agreement recognizes that cash payments and implementation of much of the injunctive relief must be delayed until all appeals are completed, that agreement between the Subscribers and the Defendants does not insulate the Objectors from the effect of the Federal Rules of Appellate Procedure or this Court's inherent authority. Nothing in the Agreement requires Subscribers to surrender their right to protect the Class' interests through all available mechanisms, including an appeal bond.[12]

The same goes for Home Depot's argument that, because it attacks only the (b)(2) portion of the Settlement, it should not be forced to post a bond that accounts for *all* of the costs inflicted on the Class. HD Br. at 5, 15. This ignores the fact that under ¶ 8.c. of the Settlement Agreement, ECF No. 2610-2 at 29, an appeal like Home Depot's suspends its operation as to all relief and all 100 million Class members.[13]

## CONCLUSION

For all of the foregoing reasons, this Court should require the Objectors to post a bond on appeal. Subscribers' request is reasonable, tailored to each Objector's ability to pay, and does not overburden their appellate rights. There is no better reason for the Court to invoke its statutory

---

[12] By analogy, it is common for mergers and acquisitions to include a "breakup fee" if, say, the buyer backs out of the deal. But if a buyer is forced to back out because its banker breaches an agreement to fund the purchase, the existence of the contract provision will not bar the buyer from seeking relief against the banker.

[13] Objector Behenna argues, Behenna Br. at 3–5, that he should not be required to post a bond for the delayed injunctive relief, because his attack on the fee award will not automatically suspend that relief under ¶ 8.c. But Subscribers have already whittled the bond for Mr. Behenna down to less than 1% of the total amount, so there is no reason to reduce it further.

and equitable powers than to protect this historic Settlement for the entire Class, ensuring that a hundred million Subscribers do not forever lose a substantial portion of the Settlement's value.

On this 18th day of November, 2022        Respectfully submitted,

| | |
|---|---|
| David Boies – ***Co-Lead Counsel*** | _/s/ David Guin_ |
| BOIES, SCHILLER & FLEXNER LLP | David Guin – ***Co-Chair, Written Submissions Committee*** |
| 333 Main Street | Tammy Stokes – ***Damages Committee*** |
| Armonk, NY 10504 | GUIN, STOKES & EVANS, LLC |
| Tel: (914) 749-8200 | 300 Richard Arrington Jr. Blvd. North |
| Fax: (914) 749-8200 | Suite 600/Title Building |
| dboies@bsfllp.com | Birmingham, AL 35203 |
| | Tel: (205) 226-2282 |
| | Fax: (205) 226-2357 |
| | davidg@gseattorneys.com |
| | tammys@gseattorneys.com |
| | |
| Michael Hausfeld – ***Co-Lead Counsel*** | Charles J. Cooper – ***Co-Chair, Written Submissions Committee*** |
| HAUSFELD LLP | COOPER & KIRK, PLLC |
| 1700 K Street NW, Suite 650 | 1523 New Hampshire Avenue NW |
| Washington, DC 20006 | Washington, DC 20036 |
| Tel: (202) 540-7200 | Tel: (202) 220-9600 |
| Fax: (202) 540-7201 | Fax: (202) 220-9601 |
| mhausfeld@hausfeldllp.com | ccooper@cooperkirk.com |
| | |
| Chris T. Hellums – ***Local Facilitating Counsel*** | Warren T. Burns – ***Counsel for the Self-Funded Sub-Class*** |
| PITTMAN, DUTTON & HELLUMS, P.C. | BURNS CHAREST LLP |
| 2001 Park Place N, 1100 Park Place Tower | 900 Jackson Street, Suite 500 |
| Birmingham, AL 35203 | Dallas, Texas 75202 |
| Tel: (205) 322-8880 | Tel: (469) 904-4550 |
| Fax: (205) 328-2711 | Fax: (469) 444-5002 |
| chrish@pittmandutton.com | wburns@burnscharest.com |

Gregory Davis – ***Settlement Committee & PSC Member***
DAVIS & TALIAFERRO, LLC
7031 Halcyon Park Drive
Montgomery, AL 36117
Tel: (334) 832-9080
Fax: (334) 409-7001
gldavis@knology.net

Kathleen Chavez – ***Settlement Committee & PSC Member***
FOOTE, MIELKE, CHAVEZ & O'NEIL, LLC
10 West State Street, Suite 200
Geneva, IL 60134
Tel: (630) 797-3339
Fax: (630) 232-7452
kcc@fmcolaw.com

Eric L. Cramer – ***Expert Committee***
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Tel: 1-800-424-6690
Fax: (215) 875-4604
ecramer@bm.net

Patrick Cafferty – ***Discovery Committee***
CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP
101 North Main Street, Suite 565
Ann Arbor, MI 48104
Tel: (734) 769-2144
Fax: (734) 769-1207
pcafferty@caffertyclobes.com

William A. Isaacson – ***Settlement Committee & PSC Member***
PAUL WEISS
2001 K Street, NW
Washington, DC 20006-1047
wisaacson@paulweiss.com

Megan Jones – ***Settlement Committee & PSC Member***
Arthur Bailey – ***Discovery Committee***
HAUSFELD LLP
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Tel: (415) 633-1908
Fax: (415) 358-4980
mjones@hausfeldllp.com
abailey@hausfeldllp.com

   /s/ Cyril V. Smith
Cyril V. Smith – ***Settlement Committee & PSC Member***
Almas Abdulla
Bryan Reines
ZUCKERMAN SPAEDER, LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202-1031
Tel: (410) 949-1145
Fax: (410) 659-0436
csmith@zuckerman.com
aabdulla@zuckerman.com
breines@zuckerman.com

Richard Feinstein – ***Expert Committee***
Karen Dyer – ***Expert Committee***
Hamish P.M. Hume – ***Discovery Committee***
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue NW
Washington, DC 20015
Tel: (202) 237-2727
Fax: (202) 237-6131
tchutkan@bsfllp.com
kdyer@bsfllp.com
hhume@bsfllp.com

Douglas Dellaccio – *Litigation Committee*
CORY WATSON CROWDER & DEGARIS, P.C.
2131 Magnolia Avenue, Suite 200
Birmingham, AL 32505
Tel: (205) 328-2200
Fax: (205) 324-7896
ddellaccio@cwcd.com

Bryan Clobes – *Litigation Committee*
Ellen Meriwether – *Written Submissions Committee*
CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP
1101 Market Street, Suite 2650
Philadelphia, PA 19107
Tel: (215) 864-2800
Fax: (215) 864-2810
bclobes@caffertyclobes.com
emeriwether@caffertyclobes.com

Edwin J. Kilpela, Jr.
Benjamin Sweet – *Litigation Committee*
DEL SOLE CAVANAUGH STROYD LLC
200 First Avenue, Suite 300
Pittsburgh, PA 15222
Tel: (412) 261-2393
Fax: (412) 261-2110
ekilpela@dsclaw.com
bsweet@dsclaw.com

Robert M. Foote – *Damages Committee*
FOOTE, MIELKE, CHAVEZ & O'NEIL, LLC
10 West State Street, Suite 200
Geneva, IL 60134
Tel: (630) 797-3339
Fax: (630) 232-7452
rmf@fmcolaw.com

Charles T. Caliendo – *Class Certification Committee*
GRANT & EISENHOFER
485 Lexington Avenue
New York, NY 10017
Tel: (646) 722-8500
Fax: (646) 722-8501
ccaliendo@gelaw.com

Robert Eisler – *Discovery Committee*
GRANT & EISENHOFER
123 Justison Street
Wilmington, DE 19801
Tel: (302) 622-7000
Fax: (302) 622-7100
reisler@gelaw.com

Daniel Gustafson – *Litigation Committee*
Daniel C. Hedlund – *Damages Committee*
GUSTAFSON GLUEK PLLC
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Tel: (612) 333-8844
Fax: (612) 339-6622
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com

Brent Hazzard – *Litigation Committee*
HAZZARD LAW, LLC
447 Northpark Drive
Ridgeland, MS 39157
Tel: (601) 977-5253
Fax: (601) 977-5236
brenthazzard@yahoo.com

15

John Saxon – ***Litigation Committee***
JOHN D. SAXON, P.C.
2119 3rd Avenue North
Birmingham, AL 35203-3314
Tel: (205) 324-0223
Fax: (205) 323-1583
jsaxon@saxonattorneys.com

Andrew Lemmon – ***Chair, Discovery Committee***
LEMMON LAW FIRM
650 Poydras Street, Suite 2335
New Orleans, LA 70130
Tel: (504) 581-5644
Fax: (504) 581-2156
andrew@lemmonlawfirm.com

Robert Methvin – ***Chair, Settlement Committee***
James M. Terrell – ***Class Certification Committee***
MCCALLUM, METHVIN & TERRELL, P.C.
The Highland Building
2201 Arlington Avenue South
Birmingham, AL 35205
Tel: (205) 939-0199
Fax: (205) 939-0399
rgm@mmlaw.net
jterrell@mmlaw.net

H. Lewis Gillis – ***Co-Head Chair, Litigation Committee***
MEANS GILLIS LAW, LLC
3121 Zelda Court
Montgomery, AL 36106
Tel: 1-800-626-9684
hlgillis@tmgslaw.com

Lawrence Jones – ***Damages Committee***
JONES WARD PLC
312 South Fourth Street, Sixth Floor
Louisville, KY 40202
Tel: (502) 882-6000
larry@jonesward.com

Virginia Buchanan – ***Chair, Class Certification Committee***
LEVIN PAPANTONIO THOMAS
MITCHELL RAFFERTY & PROCTOR, P.A.
316 South Baylen Street, Suite 600
Pensacola, FL 32502
Tel: (850) 435-7000
Fax: (850) 435-7020
vbuchanan@levinlaw.com

Michael McGartland – ***Class Certification Committee***
MCGARTLAND & BORCHARDT LLP
1300 South University Drive, Suite 500
Fort Worth, TX 76107
Tel: (817) 332-9300
Fax: (817) 332-9301
mike@attorneysmb.com

David J. Hodge – ***Chair, Settlement Committee***
MORRIS, KING & HODGE
200 Pratt Avenue NE
Huntsville, AL 35801
Tel: (256) 536-0588
Fax: (256) 533-1504
lstewart@alinjurylaw.com

Dianne M. Nast – **Class Certification Committee**
NASTLAW LLC
1101 Market Street, Suite 2801
Philadelphia, PA 19107
Tel: (215) 923-9300
Fax: (215) 923-9302
dnast@nastlaw.com

Patrick W. Pendley – **Chair, Damages Committee**
Christopher Coffin – **State Liaison Committee**
PENDLEY, BAUDIN & COFFIN, LLP
Post Office Drawer 71
Plaquemine, LA 70765
Tel: (225) 687-6369
pwpendley@pbclawfirm.com
ccoffin@pbclawfirm.com

Edgar D. Gankendorff – **Co-Head Chair, Litigation Committee**
Eric R.G. Belin – **Damages Committee**
PROVOSTY & GANKENDORFF, LLC
650 Poydras Street, Suite 2700
New Orleans, LA 70130
Tel: (504) 410-2795
Fax: (504) 410-2796
egankendorff@provostylaw.com
ebelin@provostylaw.com

Richard Rouco – **Written Submissions Committee**
QUINN, CONNOR, WEAVER, DAVIES & ROUCO LLP
2700 Highway 280 East, Suite 380
Birmingham, AL 35223
Tel: (205) 870-9989
Fax: (205) 870-9989
rrouco@qcwdr.com

Garrett Blanchfield – **Written Submissions Committee**
REINHARDT, WENDORF & BLANCHFIELD
E-1250 First National Bank Building
332 Minnesota Street
St. Paul, MN 55101
Tel: (651) 287-2100
Fax: (651) 287-2103
g.blanchfield@rwblawfirm.com

Jason Thompson – **Damages Committee**
SOMMERS SCHWARTZ
One Towne Square, 17th Floor
Southfield, MI 48076
Tel: (248) 355-0300
jthompson@sommerspc.com

Larry McDevitt – **Chair, Class Certification Committee**
David Wilkerson – **Discovery Committee**
VAN WINKLE LAW FIRM
11 North Market Street
Asheville, NC 28801
Tel: (828) 258-2991
lmcdevitt@vwlawfirm.com
dwilkerson@vwlawfirm.com

Carl S. Kravitz – **Expert Committee**
ZUCKERMAN SPAEDER LLP
1800 M Street NW, Suite 1000
Washington, DC 20036-5807
Tel: (202) 778-1800
Fax: (202) 822-8106
ckravitz@zuckerman.com

*Subscriber Plaintiff Co-Lead Counsel and Committee Chairs and Members*

**CERTIFICATE OF SERVICE**

    The ECF filing system for the Northern District of Alabama currently is down for maintenance. At the direction of the Clerk of Court, I have emailed the foregoing Subscribers' Reply In Support Of Their Motion to Require a Bond to proctor_helpdesk@alnd.uscourts.gov, which will provide proof of filing on this date. The Clerk will upload the brief to ECF once the system has been restored, and service will then be accomplished on all counsel of record via ECF. I certify that by copy of the email to Judge Proctor's Help Desk, I have served the Reply on primary defense counsel and upon the Objector-Appellants who are the subject of this Reply by email to counsel for the Objector-Appellants (or, in the case of Mr. Behenna, to him directly) using the email addresses of record in this case and in the appeals pending in the Court of Appeals, No. 22-13051 (11th Cir.)

                                            /s/ David Guin