FILED

2023 Mar-07  AM 11:10
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **IN RE:  BLUE CROSS BLUE SHIELD** } | |
| } | **Master File No.:  2:13-CV-20000-RDP** |
| **ANTITRUST LITIGATION** } | |
| **(MDL NO.: 2406)** } | |
| } | |

## MEMORANDUM OPINION AND ORDER

This matter before the court upon Subscribers' Motion to Require an Appeal Bond. (Doc. # 2996). The Motion asks the court to require the six objectors to the Subscriber Settlement who have filed appeals to post an appeal bond under Federal Rules of Appellate Procedure 7 and 8, as well as pursuant to this court's inherent authority. (*Id*.). The Motion has been fully briefed. Responses to the Motion have been filed by Objector-Appellants Jennifer Cochran and Aaron Crakers (Doc. # 3001), Self-Funded Subclass Objectors Topographic, Inc. and Employee Services, Inc. (Doc. # 3003), Objector-Appellant Home Depot U.S.A., Inc. (Doc. # 3004), and Objector-Appellant David G. Behenna (Doc. # 3005). Subscribers have filed a Reply. (Doc. # 3007). On February 13, 2023, the court heard argument on the Motion (Doc. # 3030), and the parties have submitted supplemental briefing on issues discussed during oral argument (Docs. # 3032, 3033, 3034).

### I.    Background

This litigation began more than nine years ago and involves the consolidation of a number of actions filed by Subscriber Plaintiffs against the Blue Cross and Blue Shield Association ("BCBSA") and its Member Plans (the "Member Plans" or "Blue Plans")

(collectively, "Defendants" or "Blues"). The litigation has been complex, protracted, and hard-fought. (Doc. # 2931 at 2-3).

The parties first began settlement discussions in 2015. (Doc. # 2931 at 3-4). After years of negotiations, in July 2019, the Subscriber Plaintiffs and the Blues recognized the need for a Self-Funded Sub-Class. Separate class counsel were appointed to represent the interests of the Self-Funded Sub-Class and were given the opportunity to engage independent experts. In November 2019, a term sheet was executed. (Doc. # 2931 at 4). With the able assistance of Special Master Edward Gentle and Mediator Kenneth Feinberg, the parties agreed on an equitable distribution of the net settlement fund, which Mr. Feinberg opined is reasonable. (*Id*. at 4). In October 2020, the parties entered into the Settlement Agreement. Under the Settlement, the Settling Defendants agreed to pay $2.67 billion ($2,670,000,000.00) and to provide certain injunctive relief consisting of changes to their business practices. (*Id*. at 5). In November 2020 this Court preliminarily approved the Settlement. (*Id*. at 5).

In October 2021, the court conducted a multi-day fairness hearing. Following the hearing, the court sustained on objection relating to divisible injunctive relief available to Administrative Services Only ("ASO") Plans. (Doc. # 2897) The court ordered Subscriber Plaintiffs to send supplemental notice to the ASOs relating to this relief and their ability to opt out. (*Id*.). The court thereafter carefully considered—and ultimately rejected—all remaining objections to the Settlement Agreement. (Doc. # 2931 at 45–80). The court also awarded Subscriber Counsel attorneys' fees in the amount of $626,583,372.10, representing 23.47% of the Settlement Fund. (Doc. # 2932). The court further awarded Subscriber Counsel $40,916,627.90 in payment of litigation costs and expenses to be paid from the Settlement Fund. (*Id*.). The total fees and costs awarded equaled 25% of the Settlement Fund. (*Id*.).

Pursuant to the terms of the Settlement, within thirty (30) calendar days of entry of the Preliminary Approval Order, Defendants transferred $400,000 for the Notice and Administration Fund and an advance on the remaining Settlement Amount into an Escrow Account. (Doc. # 2610-2 at 40, ¶ 23((a)). Within thirty (30) calendar days of the court's entry of the Final Judgment and Order of Dismissal granting final approval of the Settlement, Defendants transferred the remaining portion of the Settlement Amount (consisting of the Net Settlement Fund and funds for Fee and Expense Awards) into the Escrow Account. (*Id*., ¶ 23((b)). A $100 million Notice and Administration Fund was established to pay Notice and Administration Costs (Doc. # 2610-2 ¶¶ 1(ggg), 29(a)), including up to $7 million to "reimburse plaintiffs' counsel's actual and reasonable fees and expenses incurred for Notice and Administration" (Doc. # 2610-2 ¶ 28(h)) and for costs of monitoring (Doc. # 2610-2 ¶ 21).

Pursuant to the terms of the Settlement, the funds in the Escrow Account were "invested in short-term instruments backed by the full faith and credit of the U.S. Government or fully insured in writing by the U.S. Government, or money market funds rated Aaa and AAA, respectively, by Moody's Investor Services and Standard and Poor's," and any income or proceeds from these instruments are to be similarly reinvested. (*Id*. at 42, ¶ 26((b)).

The Effective Date of the Settlement is defined as the latest date when each of a list of specified events has occurred, including when any appeal of the Settlement becomes final. (*Id*. at 24, ¶ 8((a)). However, an appeal "pertaining solely to any Plan of Distribution, Fee and Expense Application, and/or the actions of the Monitoring Committee shall not in any way delay or preclude the Effective Date." (*Id*. at 25, ¶ 8((c)). The Distribution of the Net Settlement Funds to the Classes does not occur under the Settlement until the Effective Date. (*Id*. at 44, ¶ 27). Thus,

the Settlement Funds will not be distributed to Class Members until the current appeals are finally resolved.

With regard to injunctive relief, however, the Settlement provides that "Settling Defendants shall begin taking steps necessary to implement [the injunctive relief] upon entry of the Preliminary Approval Order. (*Id*. at 33, ¶ 19). The Settlement provides that most such relief, other than the right to a Second Blue Bid relief,[1] "shall [be] implement[ed] as soon as practicable, but in no event later than 60 calendar days after the Effective Date." (*Id.*). Notably, Defendants agreed as part of the settlement to eliminate the National Best Efforts Rule, but did not await even final approval of the settlement before unilaterally implementing that change in April 2021. (Doc. # 2735-33).

Objector-Appellant Behenna has appealed the court's Fee and Expense Order. (Doc. # 3005 at 3). The Settlement provides that "the Fee and Expense Application shall be considered by the Court separate and apart from its consideration of the fairness, reasonableness, and adequacy of the settlement, and any [] appeal of any order relating thereto [] shall not operate to terminate or cancel this Settlement Agreement." (Doc. # 2610-2 at 42, ¶ 28((f)). Indeed, the court granted Subscriber Counsel's Motion for Approval of Their Attorneys' Fees and Expenses Application by separate order. (Doc. # 2932).

Out of a Class with 100,000,000 members receiving notice of the Subscriber Settlement, only the six Objector-Appellants have filed appeals. Citing to Federal Rules of Appellate Procedure 7 and 8 and the court's inherent authority, Subscribers ask the court to require Objector-Appellants to post an appeal bond. (Doc. # 2996). Specifically, Subscribers ask that the three corporate Objector-Appellants (Home Depot, Topographic and Employee Services) be

---

[1] The Settlement provides that the Second Blue Bid relief shall be implemented by the later of three months after the Effective Date or April 1, 2022.

required to collectively post a bond of $113 million, and that the individual Objector-Appellants be required to collectively post a bond of $900,000. (Doc. # 2996 at 14). Subscribers explain the requested amount as follows: "[c]ollectively, the two bonds amount to the total costs of $113.9 million, which is [the total of the sums of] $20,000 (Rule 39(e) costs) + $13.9 million (settlement administration costs) + $54.2 million (lost liquidity value) + $45.8 million (lost injunctive relief value), rounded down." (*Id*. at 14, n.14).

## II.     Applicable Legal Standards

"Federal Rule of Appellate Procedure 7 states that, '[i]n a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal.'" *In re Equifax Inc. Customer Data Sec. Breach Litig*., 999 F.3d 1247, 1283 (11th Cir.), *cert. denied sub nom. Huang v. Spector*, 211 L. Ed. 2d 254, 142 S. Ct. 431 (2021), *and cert. denied sub nom. Watkins v. Spector*, 211 L. Ed. 2d 479, 142 S. Ct. 765 (2022) (quoting Fed. R. App. P. 7.). Rule 39(e) specifies the costs on appeal that are taxable: "(1) the preparation and transmission of the record; (2) the reporter's transcript, if needed to determine the appeal; (3) premiums paid for a supersedes bond or other bond to preserve rights pending appeal; and (4) the fee for filing the notice of appeal." Fed.R.App.P. 39(e). "The costs that can be included in a Rule 7 bond are not, however, limited to costs defined by Rule 39." *In re Checking Acct. Overdraft Litig*., 2012 WL 456691, at *2 (S.D. Fla. Feb. 14, 2012) (citing *Pedraza v. United Guaranty Corp*., 313 F.3d 1323, 1323 (11th Cir. 2002)). "'The district court has substantial discretion to determine the amount of a bond necessary to ensure the payment of costs on appeal.'" *Id*. (citing *Pedraza,* 313 F.3d at 1327).

The Eleventh Circuit has not addressed the question of what factors courts should consider in determining whether a bond should be imposed under Rule 7, but it has held that

whether there is a "substantial risk that the costs of appeal will not be paid unless a bond is required" is the issue that is most relevant to this inquiry. *In re Equifax*, 999 F.3d at 1283 (citing 4 Newberg and Rubenstein on Class Actions § 14:15 (6th ed.) (noting that risk of nonpayment is "arguably the only pertinent factor" and thus "ought to be the primary focus" for appeal bonds)).

Federal Rule of Appellate Procedure 8 governs when a party seeks a stay of judgment pending appeal. Fed.R.App.P. 8. In such cases, a supersedeas bond covering the costs resulting from the delay caused by the stay of the underlying judgment is appropriate. Fed.R.App.P. 8(a)(1)(B), 8(a)(2)(E).

Additionally, "federal courts possess the inherent power to require the posting of cost bonds and to provide for the award of attorneys' fees [] "even if procedural rules exist which [govern] the same conduct.'" *Pedraza*, 313 F.3d at 1335 (citing and quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 47-48, 50 (1991)). But, "[t]he decision whether to require an appeal bond is permissive, and the district court may decide not to require an appeal bond." *Sanchez v. Hialeah Police Dep't*, 2010 WL 11639748, at \*2 (S.D. Fla. June 25, 2010) (citing *Young v. Process Steel, LP*, 419 F.3d 1201, 1208 (11th Cir. 2005)).

### III.    Analysis

Subscribers argue that Objector-Appellants should be required to post a significant appeal bond because their appeals "will impose substantial costs on the Class, including (1) the added costs of maintaining and servicing massive databases used for Class notice, (2) the costs of delayed and obstructed injunctive relief for which Subscriber Plaintiffs will go forever uncompensated, and (3) the lost liquidity from [an anticipated] two years of locking up the Settlement's cash proceeds in money-market funds and U.S. Treasury obligations." (Doc. # 2996 at 4).

### A.        An Appeal Bond for Costs under Rule 7 Is Not In Order

"The plain text of Rule 7 is clear[:] Rule 7 says a district court may impose an appeal

bond 'in any form and amount necessary *to ensure payment of costs on appeal*.'" *In re Equifax*

*Inc. Customer Data Sec. Breach Litig*., 999 F.3d  at 1283 (quoting Fed. R. App. P. 7)(emphasis

in original). As the Eleventh Circuit has held, although most of the factors[2] district courts tend to

evaluate in  deciding  whether  to  impose  an  appeal  bond  under  Rule  7  "do  not  appear  to  be

relevant based on our reading of Rule 7, the last factor [the risk that the appellant will not pay the

costs if the appeal is unsuccessful] certainly is." *Id*.

Other than to state that all of the Objector-Appellants are geographically dispersed, which

would make collection efforts difficult, Subscribers have not articulated a credible argument that

there is a risk that Objector-Appellants will not pay the costs if they are unsuccessful on appeal.

(Doc. # 2996 at 7-8). Each of the Objector-Appellants is a Member of the Rule 23(b)(2) non-opt-

out, indivisible injunctive relief Class. In the Final Approval Order, the court noted that:

> Settling Defendants and each Settlement Class Member have submitted to the
> exclusive jurisdiction of this court for any suit, action, proceeding, or dispute
> arising out of or relating to the Settlement Agreement …. Settlement Class
> Members have agreed that, in the event of such dispute, they are and shall be
> subject to the jurisdiction of this court and that this court is a proper venue and
> convenient forum.

(Doc. # 2931 at 89-90). Therefore, it does not appear that collection efforts in multiple states

would  be  necessary.  Because  Subscribers  have  not  established  that  there  is  a  risk  that  the

Objector-Appellants will not pay appropriate costs if their appeal is unsuccessful, they have not

addressed what is arguably the only relevant factor that would justify imposing a Rule 7 appeal

---

[2] "(1)[T]the appellant's financial ability to post a bond; (2) the merits of the appeal; (3) whether the
appellant has shown any bad faith or vexatious conduct; and (4) the risk that the appellant will not pay the costs if
the appeal is unsuccessful." *See, e.g., Aboltin v. Jeunesse LLC*, 2019 WL 1092789, at *3 (M.D. Fla. Feb. 15, 2019).

bond. *In re Equifax Inc. Customer Data Sec. Breach Litig*., 999 F.3d  at 1283. Therefore, the

request for a bond under Rule 7 is due to be denied.

### B.        Rule 8 Does Not Apply Here

Subscribers next argue that the Objector-Appellants' appeals prevent the entry of final

judgment on Subscribers' claims and distribution of the settlement proceeds. Thus, they argue,

the appeals operate as a "stay of judgment," which triggers Rule 8. Objector-Appellants respond

that they have not sought a stay, and the distribution of the settlement proceeds is delayed by the

terms of the Settlement Agreement itself. (Docs. # 3003 at 10, # 3004 at 16). Home Depot also

notes that it did not appeal the damages portion of the settlement (Doc. # 3004 at 16), and

Objector-Appellant Behenna did not appeal the Final Approval Order, only the Fee Award (Doc.

# 3005). The court agrees with the Objector-Appellants that the appeals do not operate as a stay.

Rather, under the terms of the negotiated settlement, the Distribution of the Net Settlement Funds

to the Classes is not scheduled to occur until the Effective Date, which does not occur until the

current appeals are finally resolved. (*Id*. at 44, ¶ 27). That is, no payment is currently due under

the Settlement, so there is no effective stay.

This conclusion is supported by case law in this circuit. "[T]he greater weight of

authority counsels that when the parties' settlement agreement contemplates the effect of an

appeal on the distribution of settlement proceeds, a supersedeas bond is not appropriate."

*Muransky v. Godiva Chocolatier, Inc*., 2016 WL 11601010, at *4 (S.D. Fla. Dec. 19, 2016),

*report and recommendation adopted*, 2017 WL 11220677 (S.D. Fla. Jan. 9, 2017). "It is by the

terms of the Settlement Agreement that execution of the Settlement is delayed. Accordingly, a

bond pursuant to 8(a) is not appropriate." *Drazen v. GoDaddy.com, LLC*, 2021 WL 1881649, at

*1 (S.D. Ala. Feb. 18, 2021) (citing *Muransky*, 2016 WL 11601010, at *4); *see also Vaughn v.*

*Am. Honda Motor Co.*, 507 F.3d 295, 299 (5th Cir. 2007) ("We are persuaded that the costs of delay are adequately captured by the settlement. The settlement agreement makes no provision for the payment of pre-judgment interest [] and the settlement does not become effective, by its terms, until any appeals are concluded.").

The Settlement also provides that the funds in the Escrow Account are invested in Government backed or money market funds, and any income is to be similarly reinvested. (Doc. # 2610-2 at 42, ¶ 26((b)). Moreover, implementation of the bulk of the injunctive relief under the Settlement need not be delayed pending the appeal. The Settlement provides that "Settling Defendants shall begin taking steps necessary to implement [the injunctive relief] upon entry of the *Preliminary* Approval Order, and that that most such relief "shall [be] implement[ed] as soon as practicable." (*Id.* at 33, ¶ 19). For all of these reasons, the request for a bond pursuant to Rule 8 is due to be denied.

### C.      The Court's Inherent Power

Although the court does not find an appeal bond appropriate in this case under Rule 7 or 8, the Eleventh Circuit has held, in the context of an appeal where a party had already obtained a judgment, that federal courts "possess the inherent power" to require the posting of a bond from an appellant to secure that judgment. *Pedraza*, 313 F.3d at 1335.

Subscribers argue that the court should impose an appeal bond including costs taxable under Federal Rule of Appellate Procedure 39(e), settlement administration costs, and costs associated with delay. (Doc. # 2996 at 9). Rule 39(e) costs include expenses related to the preparation and transmission of the record, and preparation of appellate briefs and appendices. Subscriber Plaintiffs estimate these costs to be approximately $20-25,000, due to the "gargantuan size of the record." (*Id.*). They contend that settlement administration costs are frequently

included in a bond because the amount of those costs will increase because of the appeal. These costs would include maintaining the database of claims data relating to hundreds of millions of insureds, as well as the over eight million claim forms already filed, and the maintenance of website pages and the call center that provide information to class members. Subscribers estimate that these costs will total at least $13.9 million. (Id. at 10-11).

Subscribers also seek to include costs associated with delay in the bond, and they estimate that amount to be approximately $54.2 million for the purported delay in the distribution of the Settlement Funds, and approximately $45.8 million for the delay in implementation of  injunctive relief. (*Id* at 11-12). However, as discussed above, there is no delay in the distribution of the Settlement funds because, under the terms of the Settlement, they are not yet due. And, in any event, they are invested, and will be reinvested, in a manner negotiated by the parties. As to the injunctive relief, as also noted above, the Settlement provides that "Settling Defendants shall begin taking steps necessary to implement [the injunctive relief] upon entry of the Preliminary Approval Order. (*Id*. at 33, ¶ 19). Defendants have already eliminated NBE. Therefore, the implementation of the injunctive relief is not necessarily delayed by the pending appeals.

"[C]ourts should look to 28 U.S.C. § 1920 and Federal Rule of Appellate Procedure 39(e), which provide for taxable costs on appeal, when determining an appropriate [bond] amount to cover 'costs on appeal.'" *In re Equifax Inc. Customer Data Sec. Breach Litig*., 999 F.3d  at 1284, n.30 (citing *Tennille v. W. Union Co.*, 774 F.3d 1249, 1257 (10th Cir. 2014)). "The costs under section 1920 and Rule 39(e) include fees of the clerk, fees for printed or electronically recorded transcripts, fees for printing, costs of making copies, docket fees, costs of preparing and transmitting the record, and costs for the reporter's transcript." *Id*. (citing 28

U.S.C. § 1920; Fed. R. App. P. 39(e)). These are the fees that Subscribers estimate will total approximately $20-25,000. (Doc. # 2996 at 9). Subscribers provide no cost estimates or any other basis for that estimate, other than to state there is a large record. The court notes that the record on appeal is transmitted by the Clerk of this Court to the Court of Appeals electronically, and Objector-Appellants are responsible under Federal Rule of Appellate Procedure 10 for ordering any relevant transcripts which are not already in the record. Therefore, although there will obviously be some costs associated with the preparation of briefs and record excerpts, the court cannot on this record say that Subscribers' estimate is fully supported.

### i.      Settlement Administration Costs

Subscribers argue that the bond should also include costs of administering the Settlement that will grow because of the appeal. (Doc. # 2996 at 9). Subscribers estimate that these costs will total at least $13.9 million. They base this estimate on the Declaration of Flora Bian, the Chief Financial Officer of JND Legal Administration. JND is the court-appointed notice and claims administrator. Subscribers cite a number of cases where settlement administrative expenses were included in appeal bonds, including two unpublished decisions from the Third Circuit Court of Appeal affirming such bonds. *In re New Jersey Tax Sales Certificates Antitrust Litig*., 750 F. App'x 73, 83–84 (3d Cir. 2018); *In re Nutella Mktg. & Sales Pracs. Litig*., 589 F. App'x 53, 57, 60 (3d Cir. 2014).

In the two unpublished decisions from the Third Circuit addressing this issue, that court found that the district court had properly included such costs in the bond amount. *In re New Jersey Tax Sales Certificates Antitrust Litig*., 750 F. App'x  at 83–84 ("[A]though we have not yet formally held that administrative expenses may be included in [] appeal bonds, we have previously permitted their inclusion."); *In re Nutella Mktg. & Sales Pracs. Litig*., 589 F. App'x at

57, 60 (affirming the district court's inclusion of one year's worth of administrative expenses where the movants had requested two years' worth of such costs). However, even given these two unpublished decisions from another circuit, the court is aware of no authority from the Eleventh Circuit approving a district court's inclusion of settlement administrative expenses in an appeal bond.

Moreover, the Settlement contemplates that the Settlement Funds would not be payable until all appeals are final. And, under the Settlement, a $100 million Notice and Administration Fund was established to pay Notice and Administration Costs. (Doc. # 2610-2 ¶¶ 1(ggg), 29(a)). According to the declaration from JND's CFO Bial, as of August 31, 2022, the Notice and Administration Fund had been billed fees and expenses totaling $73,666,447.74, meaning that there are currently monies remaining in the Fund. Moreover, the Settlement provides that Settlement Class Counsel and Self-Funded Sub-Class Counsel may petition the court for replenishment of the Notice and Administration Fund *by Defendants* upon a showing of necessity for such replenishment. (*Id.* ¶ 1(ggg)) (emphasis added). The court could also entertain such a petition for replenishment seeking replenishment from Objector-Appellants under the court's inherent powers, if their appeals are particularly prolonged and/or eventually unsuccessful. Therefore, the court does not believe it is appropriate to include settlement administrative expenses in any appeal bond.

### D.    Objector Appellant Behenna's Appeal of the Fee Award

Objector Appellant Behenna has appealed the Fee and Expense Order. He has not appealed the Final Approval Order. Therefore, no delay costs or additional administrative expenses are attributable to his appeal. The court has not been provided information regarding his finances, so it may be that the court should consider imposition of a bond to ensure payment

of costs by Behenna. In any event, however, Behenna does not object to posting an appeal bond based on reasonable costs, with his share capped at a pro rata share of the total of $20,000. (Doc. # 3005 at 2).

### E. Objector-Appellants Cochran and Crakers

Like Objector Appellant Behenna, Objector-Appellants Cochran and Crakers argue that any bond should be limited to securing Rule 39(e) costs. And, they have stated that they are "willing to pay their fair share of estimated printing costs." (Doc. # 3001 at 2). The court has not been provided information regarding their finances, so it may be that the court should consider imposition of a bond to ensure payment of costs by Cochran and Crakers. But, for now, the court will impose an appeal bond on them for their pro rata share of the total of $20,000.

## IV. Conclusion

Just as the court was concerned about burdening Class Members' opt out rights (which led the court to require supplemental notice to the ASO Sub-Class), the court has concerns about imposing financial burdens on Objector-Appellants that might discourage, or in some instances preclude, the pursuit of an appeal. Therefore, the court concludes that the better approach is to limit the bondable costs on appeal to those listed in Rule 39(e), which Subscribers have estimated to be $20-25,000.

Subscribers' Motion to Require an Appeal Bond (Doc. # 2996) is **GRANTED IN PART AND DENIED IN PART**. Based on its inherent authority, the court finds that an appeal bond for each of the four appeals in the amount of $5,000 is appropriate.[3]

---

[3] In those appeals with multiple appellants, the bond may be posted collectively.

**DONE** and **ORDERED** this March 7, 2023.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE