IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

|  |  |
|---|---|
| IN RE:  BLUE CROSS BLUE SHIELD ANTITRUST LITIGATION (MDL NO.: 2406) | } } } } } } } Master File No.: 2:13-CV-20000-RDP |

### SHOW CAUSE ORDER

Since early 2013, this court has presided over this multidistrict litigation ("MDL") styled *In re Blue Cross Blue Shield Antitrust Litigation MDL 2406*. During that ten plus year span of time, the court has coordinated pretrial proceedings in over ninety centralized and direct-filed cases, the vast majority of which are now closed. Early in these proceedings, the court divided the litigation into two tracks: a Subscriber track and a Provider track. As discussed more fully below, the Subscriber track ended in a class settlement that was approved by the court on August 9, 2022. What remains in this MDL is the Provider track litigation. The question before the court is whether the need for consolidated or coordinated pretrial proceedings has ended.

**I.     Background**

At the November 29, 2012 initial hearing before the Judicial Panel on Multidistrict Litigation ("JPML" or "the Panel") regarding whether to centralize the separate underlying antitrust actions against the Blue Cross and Blue Shield entities, Judge Royal Furgeson made it clear that this court was not required to take all of the cases and handle them through trial:

> You are assuming that [J]udge Proctor has to have the case all the way through the discovery phase. He doesn't. He can say let's do the issue on the common license agreement and send you home. You are assuming he has to take the case to the end. And he doesn't have to do that.

(JPML Case No. 2406, Doc. # 157 at 16-17). Providers' Co-Lead Counsel Joe Whatley concurred: "you are right if it gets to the point where something needs to be remanded under lexicon or trial or final discovery, it can be done." (*Id*. at 21). The Panel, after hearing these arguments, centralized these cases before the undersigned.

## II. Legal Standard

Title 28 U.S.C. § 1407 governs Multidistrict Litigation. Subsection 1407(a) provides in relevant part:

> a) When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. [] Each action so transferred shall be remanded by the panel *at or before the conclusion of such pretrial proceedings* to the district from which it was transferred unless it shall have been previously terminated: Provided, however, That the panel may separate any claim, cross-claim, counter-claim, or third-party claim and remand any of such claims before the remainder of the action is remanded.

28 U.S.C. § 1407(a) (emphasis added).

"In assessing the question of Section 1407 remand, [the JPML] assign[s] great weight to the transferee judge's determination that remand of a particular action (or actions) is appropriate, given that he or she supervises the day-to-day pretrial proceedings." *In re Fontainebleau Las Vegas Cont. Litig., No. MDL 2106*, 2013 WL 11248650, at *2 (J.P.M.L. Dec. 13, 2013) (citing *In re: Columbia/HCA Healthcare Qui Tam Litig. (No. II)*, 560 F. Supp. 2d 1349, 1350 (J.P.M.L. 2008) ("'In considering the question of remand, the Panel has consistently given great weight to the transferee judge's determination that remand of a particular action at a particular time is appropriate because the transferee judge, after all, supervises the day-to-day pretrial proceedings.'") (quoting *In re Holiday Magic Sec. & Antitrust Litig*., 433 F. Supp. 1125, 1126 (J.P.M.L. 1977) and *In re: Light Cigarettes Mktg. & Sales Practices Litig*., 856 F. Supp. 2d 1330

(J.P.M.L. 2012) (denying motion to vacate conditional remand order filed upon issuance of transferee judge's suggestion of remand)).

In determining the propriety of suggesting remand, the transferee court must consider the "totality of the circumstances," *In re Managed Care Litigation*, 416 F. Supp. 2d 1347, 1348 (J.P.M.L. 2006), including "whether the case will benefit from further coordinated proceedings as part of the MDL," whether remand "will serve the convenience of the parties and witnesses," and whether remand "will promote the just and efficient conduct of the litigation." *In re Bridgestone/Firestone, Inc. ATX, ATX II & Wilderness Tires Prods. Liab. Litig.*, 128 F. Supp. 2d 1196, 1197 (S.D. Ind. 2001); *see also In re Air Crash Disaster at Tenerife, Canary Islands on March 27, 1977*, 461 F. Supp. 671, 672-73 (J.P.M.L. 1978).

### III.     Status of the MDL's Provider Track

Eighteen Provider track cases, plus the MDL (Case No. 2:13-cv-20000-RDP), remain pending in this court. Three of the cases were directly filed in Alabama, five were filed in and transferred from Texas, and a single case was filed in and transferred from Arizona, Florida, Kansas, Louisiana, Mississippi, North Dakota, New York, Pennsylvania, Puerto Rico, and Wyoming.

Over the past ten plus years, Defendants filed, and the court addressed, over a dozen motions to dismiss. The parties spent substantial time on the production of terabytes of structured health insurance data from thirty-seven separate Defendants, many with different data management systems. (Doc. # 2610-6 ¶¶ 13, 14) (citing Doc. # 229 (Discovery Order No. 1 describing the more than 400 structured data systems maintained by Defendants)). With the invaluable assistance of Magistrate Judge T. Michael Putnam (Ret.), the parties briefed, and the court ruled on over 150 discovery motions, which led to ninety-one discovery orders. Plaintiffs

obtained and analyzed millions of pages of documents, conducted over 120 depositions of Defendants and third-party witnesses, and defended over twenty depositions of class representatives and various experts. (*Id.* ¶¶ 14-15). Plaintiffs reviewed and challenged hundreds of thousands of privilege log entries, resulting in forty-five Reports & Recommendations by Privilege Special Master R. Bernard Harwood, Jr., and the court addressed numerous objections. (*Id.* ¶ 16). Following various rulings, over 450,000 documents were either fully or partially de-designated as privileged. (*Id.*).

The parties briefed several rounds of summary judgment motions. (Docs. # 998, 1098, 1348, 1350, 1353, 1434). Plaintiffs prevailed on a motion seeking application of a *per se* standard of review to Defendants alleged "aggregation of competitive restraints." *In re Blue Cross Blue Shield Antitrust Litig.*, 308 F. Supp. 3d 1241, 1267 (N.D. Ala. 2018). Although this court certified its standard of review order under 28 U.S.C. § 1292(b), the Eleventh Circuit declined to hear the appeal. *In re Blue Cross Blue Shield Antitrust Litig.*, 2018 WL 7152887 (11th Cir. Dec. 12, 2018).

In 2015, the court directed the parties to look for ways to streamline this litigation. The parties met and conferred and submitted proposals. (Docs. # 378, 379, 383-385, 412-415, 430-434). Both the Provider and Subscriber tracks proposed prioritizing discovery regarding their Alabama claims (including injunctive relief) and proposed trying their Alabama cases first. (Doc. # 469 at 4). Defendants proposed completing all discovery, addressing all class certification motions (*i.e.*, in each class market), and litigating all other expert and dispositive motions at the same time. Defendants sought rulings on all motions contemporaneously, without prioritizing any single motion or group of motions, before trying any market specific cases that may survive. (*Id.*). The court questioned whether prioritizing and (if appropriate) trying the Alabama cases as

a bellwether would be instructive regarding markets where the Blues have a less predominant market share. (*Id.*). Nonetheless, because Defendants made no alternative suggestions that would assist in streamlining the MDL, the court determined that prioritizing the Alabama litigation was the best option for managing this litigation. (*Id.* at 4-5). Therefore, the court entered a Streamlining Scheduling Order and this MDL has proceeded under that order since its entry. (*Id.* at 5-6).

Also in 2015, the parties initially began settlement discussions. The initial settlement discussions involved Subscriber Plaintiffs, Provider Plaintiffs, Defendants, and Defendants' insurers. (Doc. # 2610-6 ¶¶ 28-29). After mediation sessions in 2015, 2016, and 2017 failed to gain traction, Special Master Edgar C. Gentle began assisting the parties in their settlement discussions in November 2017. Subscriber track settlement discussions then gained traction. In July 2019, Subscriber Plaintiffs and the Blues recognized the need for a sub-class of Self-Funded Accounts and their employees, and Subscriber Plaintiffs coordinated the recruitment of separate class counsel for that sub-class and a class representative. (*Id.* ¶ 31). On October 16, 2020, the Subscriber Class Representatives, the Self-Funded Sub-Class Representative, and Settling Defendants entered into a Settlement Agreement. (Doc. # 2610-2). After notice, supplemental notice, and a lengthy fairness hearing, on August 9, 2022, the court entered a Final Order and Judgment Granting Final Approval of the Subscriber Class Action Settlement and Appointing Settlement Administrator. (Doc. # 2931).

On the other track, Provider Plaintiffs filed a renewed Motion for Class Certification seeking certification of classes of healthcare providers in Alabama pursuant to Federal Rules of Civil Procedure 23(b)(2), 23(b)(3), and 23(c)(4). (Doc. # 2604). Provider Plaintiffs sought class certification only with regard to the three prioritized Alabama proceedings. (*Id.* at 12 & n.2). The

Motion is fully briefed and is supported by expert reports and supplemental briefing required by the court. (Docs. # 3006, 3025, 3039, 3045, 3054). Providers and Defendants have also filed *Daubert* motions and summary judgment motions not dependent on class certification, certain ones of which the court has ruled upon. (Docs. # 2477, 2464, 2466, 2631, 2633, 2635, 2639, 2901, 2902, 2933, 2934).

Following the settlement of the Subscriber track, Defendants and Provider Plaintiffs reengaged in mediation efforts. Mediation is ongoing and involves Special Master Gentle, as well as mediator Bob Meyer of Los Angeles. Due to the mediation efforts, the court has deferred ruling on certain motions that may interfere with those efforts. The court continues to allow Provider Plaintiffs and Defendants an opportunity to further explore the possibility of a settlement of Providers' claims before addressing Provider Plaintiffs' motion for class certification and the other motions for summary judgment. However, the court has received information indicating that the parties may be nearing an impasse, and this (among other things) has prompted the court to consider whether the need for consolidated or coordinated pretrial proceedings in this MDL has now come to an end.

There certainly remains a substantial amount of litigation in these cases. For example, the court will address the Providers' motion for class certification for Alabama classes and the related *Daubert* motions. And there will be other motions seeking class certification, *Daubert* rulings, and judgment as a matter of law filed relating to the other cases. But those motions in the cases not directly filed here will be tailored to unique issues, (*e.g.*, the economic markets) in those fifteen cases. And any individualized discovery in those cases will be just that – dictated by the unique issues in each of those cases. So, at this point, the court wonders if it would be best for that litigation to occur in the transferor courts.

**IV.     Conclusion**

To assist the court in assessing this issue, **on or before November 10, 2023**, interested parties **SHALL SHOW CAUSE** in writing why this court should not file a suggestion of remand with the JPML.

**DONE** and **ORDERED** this October 19, 2023.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE