**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

|  |
|---|
| **IN RE:  BLUE CROSS BLUE SHIELD ANTITRUST LITIGATION (MDL No. 2406)** |

**Master File No. 2:13-CV-20000-RDP**

**This document relates to Provider-Track cases.**

## DEFENDANTS' RESPONSE TO ORDER TO SHOW CAUSE REGARDING ISSUES THAT REQUIRE RESOLUTION BEFORE REMAND

On October 19, 2023, the Court ordered interested parties to show cause why the Court should not file a suggestion of remand with the Judicial Panel on Multi-District Litigation (the "Panel") for actions transferred to *In re Blue Cross Blue Shield Antitrust Litigation*, MDL 2406 (the "MDL"), for centralized pretrial proceedings. (Doc. 3075 at 7.)[1]  Observing that "the Subscriber track ended in a class settlement" and that "[w]hat remains in this MDL is the Provider track litigation", the Court queried "whether the need for consolidated or coordinated pretrial proceedings has ended".  (*Id.* at 1.)  The Blues agree that the need for consolidated proceedings in the Provider track of the MDL is near completion, but respectfully submit that the Court should address certain motions—that are fully briefed and ready for decision across all cases—ahead of remand.

Specifically, the Blues respectfully submit that the Court should, prior to suggesting remand, issue decisions on at least (i) Providers' Motion for Class Certification (Doc. 2604) (*infra* Section I); and, following the class certification decision, (ii) the four pending motions for summary judgment not contingent on class certification (Docs. 2749, 2750, 2758, 2784) (*infra* Section II).  Each of these motions presents issues

---

[1] References to Doc. __ are citations to the MDL Docket.  References to JPML Doc. __ are citations to the Panel Docket.

common to the centralized cases and, therefore, was filed—and should be decided—in all Provider-track cases.  Consistent with the operative Eighth Amended Scheduling Order (Doc. 2718), the Blues also respectfully request 60 days following the Court's order on class certification to assess whether that decision raises any additional grounds for summary judgment that would be resolved most efficiently in the MDL ahead of remand. (*Infra* Section III.)  Once these items are complete, the Court should revisit whether it is appropriate to suggest remand, as set forth below in the Blues' proposed sequence of events.  (*Infra* Section IV.)

## PROCEDURAL HISTORY

This MDL was created in 2013, when the Panel consolidated for pretrial purposes certain antitrust cases challenging Blue System rules.  In doing so, the Panel found that centralization would "eliminate duplicative discovery; prevent inconsistent pretrial rulings, including with respect to class certification; and conserve the resources of the parties, their counsel, and the judiciary".  (Doc. 1 at 3.)  Ten years later—after extensive proceedings before this Court, including a class settlement in the Subscriber-track cases (*see* Doc. 3075 at 3–4)—twenty Provider-track cases remain in the MDL.[2] These Provider-track cases, set forth in the attached Appendix A, fall into four categories: (1) four putative class actions originally filed in Alabama (App'x. A entries 1–4);[3] (2) seven putative class actions originally filed in other district courts and transferred to the

---

[2] Although not the subject of the Court's order to show cause, there is one Subscriber-track opt-out case still pending in the MDL:  *Hoover v. Blue Cross & Blue Shield Ass'n*, No. 21-cv-23448 (S.D. Fla.) (filed on September 27, 2021, and transferred to the MDL on February 14, 2022).

[3] Of these cases, *Conway v. Blue Cross & Blue Shield of Ala.*, No. 12-cv-2532 (N.D. Ala.), is the prioritized proceeding.  (Doc. 469 at 5.)

MDL at various times between 2012 and 2019 (*id.* entries 5–11);[4] (3) eight class actions

filed in various jurisdictions after certain Blue Plans moved to dismiss Providers' claims

in Alabama for lack of personal jurisdiction (*id.* entries 12–19);[5] and (4) one individual

action brought by an anesthesia provider in Michigan and transferred to the MDL earlier

this year (*id.* entry 20). Plaintiffs in each of these actions challenge the same Blue Rules,

and all but one (the Michigan complaint, entry 20) seek certification of either a

nationwide or Alabama statewide class of providers. *See, e.g.*, *Richmond SA Servs., Inc.

v. Blue Cross & Blue Shield of Ala.*, No. 4:16-cv-1140 (S.D. Tex.), Dkt. 1 ¶¶ 334–335

(nationwide); *Caldwell v. Blue Cross & Blue Shield of Ala.*, No. 2:19-cv-565 (N.D. Ala.),

Dkt. 1 ¶¶ 1, 434–435 (Alabama).

        In 2015, the Court issued a streamlining Order that prioritized the *Conway*

case (Doc. 469 at 4), but maintained a mechanism by which motions could be filed in all

centralized cases. Specifically, where a pleading was "intended to be applicable to all

actions" in the MDL, the Court directed it be labeled "'This Document Relates to All

Cases'".[6] (*See* Doc. 6 at 2.) By contrast, "[w]hen a pleading is intended to apply to a

specific case, it shall be filed in that specific case and not on the master docket". (*Id.*)

---

[4] *See* JPML Docs. 145, 171, 310, 327, 354, 429.

[5] Provider counsel has referred to these actions as "belt and suspenders" cases related to personal jurisdiction only. (*See* Doc. 2925 at 1–3.) In the event Providers do not intend to pursue these actions given the Court's denial of all motions challenging personal jurisdiction (*see* Doc. 925), they can be voluntarily dismissed rather than remanded.

[6] The Court and parties also used "This Document Relates to Provider Track Cases" to designate that the filing pertained to all provider cases only (as contrasted with the Subscriber Track).

In 2020, Provider Plaintiffs filed a motion to certify a class of Alabama providers. (Docs. 2604–05, 2642.)[7] Between 2019 and 2021, the parties fully briefed several related *Daubert* motions. (Docs. 2466, 2471, 2476, 2478, 2480, 2631–36, 2639, 2665–66, 2668, 2690–92, 2695, 2707–10.) The caption for the class certification motion and each *Daubert* motion designates that "This document relates to all cases" (Doc. 2604), as does the Court's November 17, 2022 Order requesting supplemental briefing on class certification. (Doc. 3006.)

There are also four fully briefed motions for summary judgment, filed in 2021, which bear the caption "This Document Relates To Provider Track Cases": (i) the Blues' Motion for Summary Judgment on Providers' Damages Claims as Time-Barred and Speculative ("Statute of Limitations Motion") (*see* Docs. 2761–62, 2798, 2823); (ii) the Blues' Motion for Summary Judgment on All Claims Advanced by Non-General Acute Care Hospital Providers and Any Claims Based on Blue System Rules Other than ESAs or BlueCard for Failure to Demonstrate Injury or Damages ("Injury and Damages Motion") (*see* Docs. 2750–51, 2797, 2819); (iii) the Providers' Motion for Partial Summary Judgment on the Blues' Claim to Common-Law Trademark Rights ("Common Law Trademark Motion") (*see* Docs. 2749, 2800, 2821); and (iv) the Providers' Motion for Partial Summary Judgment on the Blues' Single Entity Defense ("Single Entity Motion") (*see* Docs. 2748, 2801, 2820). Each of these four motions thus applies to *all* cases centralized in the Provider Track of the MDL.

---

[7] Provider Plaintiffs' original motion for class certification filed on April 15, 2019 (Doc. 2416) was administratively removed from the docket on February 13, 2020 (Doc. 2541), and was renewed on October 9, 2020 (Doc. 2604).

Provider Plaintiffs have already agreed that the motions for class certification and summary judgment "address issues common to all Providers and Defendants". (Doc. 2925 at 2–3 (Provider Plaintiffs' 2022 Submission on Remand).)

## LEGAL STANDARD

For the convenience of the parties and to promote efficiency, the Panel is authorized to consolidate cases involving common issues of fact for pre-trial proceedings. *See* 28 U.S.C. § 1407(a). The Panel must remand consolidated cases to their transferor jurisdictions "when, at the latest, th[e] pretrial proceedings have run their course". *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 34 (1998). Prior to the conclusion of pretrial proceedings, the Panel retains discretion to remand and, in exercising that discretion, places great weight on a transferee judge's suggestion of remand. *See In re IBM Peripheral EDP Devices Antitrust Litig.*, 407 F. Supp. 254, 256 (J.P.M.L. 1976); *see also* JPML Doc. 157 at 16–17.

Remand of an MDL "is appropriate when the discrete function performed by the transferee court has been completed and when everything that remains to be done is case-specific". *In re Chiquita Brands Int'l, Inc. Alien Tort Statute & S'holders Derivative Litig.*, No. 08-1916-MD, 2019 WL 11499332, at *3 (S.D. Fla. Nov. 5, 2019) (citations omitted) (holding "remand is not appropriate because common issues central to the core claims of all Plaintiffs yet remain for determination"); *see also In re Bridgestone/Firestone, Inc.*, 128 F. Supp. 2d 1196, 1197 (S.D. Ind. 2001) (declining to suggest remand where forthcoming motions might apply to all MDL cases). "In cases where remand has been deemed appropriate prior to the conclusion of all pretrial proceedings, there was no efficiency gain to be had by keeping the case before the transferee court." *U.S. ex rel. Hockett v. Columbia/HCA Healthcare Corp.*, 498

F. Supp. 2d 25, 38 (D.D.C. 2007) (citing *In re Baseball Bat Antitrust Litig.*, 112

F. Supp. 2d 1175 (J.P.M.L. 2000)).

## ARGUMENT

I.      **The Court Should Decide Providers' Motion for Class Certification Prior to Remand, and Prior to Ruling on Motions for Summary Judgment.**

The Court has stated it intends to rule in the near-term on Providers'

Motion for Class Certification and related *Daubert* motions (Docs. 2604–05, 2642, 3025,

3039, 3045 (Class Certification Brs.); Docs. 2466, 2471, 2476, 2478, 2480, 2631–36,

2639, 2665–66, 2668, 2690–92, 2695, 2707–10 (*Daubert* Mots.).)  (Doc. 3075 at 6.)  The

Blues respectfully submit that the Court should do so prior to remand because the Court's

ruling will impact all class actions in the MDL (*see infra* Section I.A), and should do so

*before* ruling on summary judgment to avoid the problem of one-way intervention (*see*

*infra* Section I.B).

   A.      **The Court's Ruling on Class Certification Is Relevant to All MDL Class Cases.**

The Court's ruling on class certification will necessarily impact all of the

putative class cases in the MDL.   The Panel has previously instructed that "[i]t is

desirable to have a single judge oversee the class action issues . . . to avoid duplicative

efforts and inconsistent rulings in this area", especially when "most of the actions . . .

have been brought on behalf of similar or overlapping classes of" plaintiffs.   *In re Res.*

*Expl., Inc., Sec. Litig.*, 483 F. Supp. 817, 821 (J.P.M.L. 1980); *see also In re Cuisinart*

*Food Processor Antitrust Litig.*, 506 F. Supp. 651, 655 (J.P.M.L. 1981) (emphasizing

"the need to have a single judge oversee the class action issues in these seven actions to

avoid duplicative efforts and inconsistent rulings in this area").   That is the case here,

where each of the class action complaints asserts either a nationwide class of providers

(there are 17 such cases, App'x. A entries 2–3; 5–19) or a statewide class encompassing the state of Alabama (there are 2 such cases, App'x. A entries 1, 4). In other words, 19 of the 20 Provider-track cases assert a putative class definition that overlaps with the class sought to be certified by Providers here (*compare* Doc. 2604 (renewed motion for class certification) *with e.g.*, *Am. Surgical Assistants v. Blue Cross & Blue Shield of Ala.*, No. 4:16-cv-1146 (S.D. Tex.), Dkt. 1 ¶ 334)—meaning the Court's decision on Providers' pending Motion for Class Certification will inevitably affect each.

Indeed, in deciding Provider Plaintiffs' Motion for Class Certification, the Court almost certainly will address issues that apply across all Provider-track cases. For example, the Court's November 17, 2022 Order Regarding Additional Briefing indicated the Court intends to address whether to define the market for healthcare financing as a two-sided platform (as the Blues submit it should). (*See* Doc. 3006 at 2 ("[T]he appropriate time to properly define the relevant market is now.").) The Court may also decide key questions regarding the need for Article III standing for each putative class member in light of the Eleventh Circuit's recent guidance on that issue. (*See id.* at 3 ("How does *Drazen* apply to this antitrust case, if at all?").) The Court's answers to those questions will likely bear upon all Provider-track actions, including those involving claims of non-Alabama providers. Similarly, many of the Blues' arguments in opposition to class certification apply equally to *any* putative class that may be asserted in this litigation—for example, whether it is appropriate to lump together various types of providers, with various degrees of bargaining power, and that operate in disparate geographies. (Doc. 2605 at 31–35, 41–44.) As a result, it is most efficient for the Court to resolve these issues in the context of the MDL. *See In re Managed Care Litig.*, 246

F. Supp. 2d 1363, 1364–65 (J.P.M.L. 2003) (holding it was appropriate for the court to determine in MDL whether to approve class settlement in an individual action because "the class settlement . . . , whether approved or not approved, may have collateral consequences affecting the management of the [MDL] litigation as a whole" and "could have a significant impact on the remaining MDL[] claims"); *see also In re Taxable Mun. Bond Sec. Litig.*, No. CIV. A. MDL-863, 1994 WL 518125, at *1 (E.D. La. Sept. 20, 1994) (declining to suggest remand because "the court is in the process of deciding motions common to the core claims against all defendants, including the issue of class certification and summary judgment motions").[8]  Resolving these issues prior to remand would also avoid potentially inconsistent pretrial rulings on class certification issues in courts across the country.  In fact, "prevent[ing] inconsistent" class certification rulings was among the very benefits the Panel raised in its original consolidation order.  Doc. 1 at 3 ("Centralization will . . . prevent inconsistent pretrial rulings, including with respect to class certification.").

**B.    Class Certification Should Precede Summary Judgment Under the One-Way Intervention Rule.**

Class certification should also be decided *before* the pending motions for summary judgment, which (for the reasons explained below, *infra* Section II) should likewise be decided prior to remand.  Under the "'one-way intervention' rule . . . class

---

[8] For these same reasons, efficiency may also be served by having remand await resolution of any discretionary appeal pursuant to Federal Rule of Civil Procedure 23(f).  Should the Eleventh Circuit agree to hear such an appeal, its decision will be binding in five of the Provider-track cases (App'x entries 1–4, 11), and will serve as highly persuasive authority in remand jurisdictions outside this Circuit.  This Court may also be best positioned to determine the effect of any Eleventh Circuit decision on the consolidated cases.  *See, e.g.*, *In re Holiday Magic Sec. & Antitrust Litig.*, 384 F. Supp. 1403, 1405 (J.P.M.L. 1974) (holding transferee court "is unquestionably in the best position to determine the effect" of an appeal); *accord In re: Tramadol Hydrochloride Extended-Release Capsule Pat. Litig.*, 672 F. Supp. 2d 1377, 1378 (J.P.M.L. 2010); *In re Suess Pat. Infringement Litig.*, 384 F. Supp. at 1407 (noting benefits of consolidation during appeal).

certification should be adjudicated prior to summary judgment so that class members cannot choose their membership in a class after a lawsuit is resolved on the merits."[9] *In re Univ. of Mia. Covid-19 Tuition & Fee Refund Litig.*, No. 20-22207-CIV, 2022 WL 18586131, at *1 (S.D. Fla. Nov. 21, 2022). "'One-way intervention' occurs when the potential members of a class action are allowed to 'await . . . final judgment on the merits in order to determine whether participation [in the class] would be favorable to their interests.'" *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1252 (11th Cir. 2003) (quoting *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 547 (1974)) (declining to address one-way intervention arguments because "we reverse the district court's grant of class certification on other grounds"). "Such 'one-way intervention' . . . is inherently unfair to defendants." *Owens v. Hellmuth & Johnson, PLLC*, 550 F. Supp. 2d 1060, 1070 (D. Minn. 2008).

For years now, the parties have agreed that the "one-way intervention rule" counsels the Court to rule on class certification *before* resolving summary judgment on the merits. (Doc. 2384 at 12–13; Doc. 2386 at 4–5 ("Plaintiffs are not requesting that the Court rule on dispositive motions prior to class certification. Therefore, their proposed schedule does not even implicate one-way intervention."); Doc. 2452 at 3; Doc. 2379 at 7 ("[A]ny decision on Plaintiffs' dispositive motions [before deciding class

---

[9] In a recent unpublished decision, the Eleventh Circuit declined to adopt a flat prohibition against one-way intervention, but still directed that "district court[s] should rule on certification before summary judgment whenever it's 'practicable' to do so". *Sos v. State Farm Mut. Auto. Ins. Co.*, No. 21-11769, 2023 WL 5608014, at *16 (11th Cir. Aug. 30, 2023) (quoting Fed. R. Civ. P. 23(c)(1)(A)). Here, resolving Providers' Motion for Class Certification prior to summary judgment—and all such motions prior to remand—is "practicable", will serve the interests of judicial economy, and will allow all remaining actions to "benefit from further coordinated proceedings as part of the MDL". *In re Bridgestone/Firestone, Inc.*, 128 F. Supp. 2d at 1197. Thus, *Sos* supports following the one-way intervention rule in this case, and in any event does not prevent it. *See* 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent.").

certification] would be premature under the one-way intervention rule.").) Consequently, the Court should first decide Provider Plaintiffs' Motion for Class Certification in the context of the MDL, and only then decide the motions for summary judgment applicable to all cases.[10]

## II. Efficiency Requires the Court To Decide the Pending Motions for Summary Judgment Filed in All Cases.

Each of the four pending motions for summary judgment (listed *supra* at 4) presents certain issues common to the Provider-track cases. Resolving these motions prior to remand promotes the purposes of the MDL, including efficiency, conservation of resources, and prevention of inconsistent rulings.

Courts routinely recognize that it is proper to decide summary judgment motions as part of consolidated pre-trial proceedings. *See In re: Photochromic Lens Antitrust Litig.*, No. 8:10-cv-2040, 2014 WL 12618105, at *2 (M.D. Fla. July 9, 2014) ("The disposition of summary judgment motions is part of the 'pretrial proceedings' for which a case is transferred.") (citing *In re Butterfield Pat. Infringement*, 328 F. Supp. 513 (J.P.M.L. 1970)). That is particularly true where the summary judgment motions involve issues common across cases. *See, e.g.*, *In re Taxable*, 1994 WL 518125, at *1 (declining to suggest remand before deciding summary judgment motions "common to the core claims against all defendants"); *Manual for Complex Litigation (Fourth)* § 22.36 (2004) ("If the summary judgment motions involve issues common to all the cases centralized

---

[10] To the extent the Court were to certify any class of Alabama providers, the rule against one-way intervention would also counsel toward deciding summary judgment *after* the opt-out period for the certified class expires. *See London*, 340 F.3d at 1252–53 ("Rule 23(c)(2)'s requirement that, in opt-out class actions, notice be given to all class members as soon as practicable was intended by Congress to prevent one-way intervention."). Because the Blues maintain that no class should be certified for all the reasons set forth in our class certification briefing (Docs. 2605, 3039), we respectfully submit that the Court need not address that issue here.

before the MDL court, however, the transferee judge may be in the best position to rule."). Resolution of these motions prior to remand furthers the purposes of MDL centralization, including promoting "the just and efficient conduct of this litigation" by "prevent[ing] inconsistent pretrial rulings . . . and conserv[ing] the resources of the parties, their counsel and the judiciary". *In re: EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 268 F. Supp. 3d 1356, 1359 (J.P.M.L. 2017).

Here, each pending summary judgment motion addresses core legal issues common to the MDL cases, and this Court is uniquely familiar with the pertinent record. If not decided in the MDL, these issues will need to be addressed repeatedly—with the risk that they are decided inconsistently—in the transferred cases following remand.

*Providers' Single Entity Motion* (**Doc. 2784**). Providers' Single Entity Motion seeks to re-litigate an issue already addressed by this Court once in the context of the MDL: this Court's 2018 ruling that "there remain genuine issues of material fact as to whether Defendants operate as a single entity as to the enforcement of the Blue Marks". (Doc. 2063 at 35.) Like the first motion on this issue, Providers' Single Entity Motion should be resolved prior to remand to avoid inconsistent rulings as a matter of law on a key defense—namely, whether the Blues are capable of conspiring with respect to governance of the Blue Marks, in violation of Section 1 of the Sherman Act. *See, e.g.*, *In re Photochromic*, 2014 WL 12618105, at *2 ("[A] disposition of summary judgment issues common to the plaintiffs in the transferee court decreases the possibility of inconsistent rulings and conserves the resources of the courts and the parties.").[11]

---

[11] As set forth in Defendants' opposition to the Single Entity Motion (Doc. 2801), Defendants respectfully submit that the Court's prior ruling was based on at least two erroneous conclusions: (1) that Blue Plans *could* compete with each other *nationwide* in the absence of the challenged conduct, even if

11

***Providers' Common Law Trademark Motion* (Doc. 2749).** Provider

Plaintiffs' Common Law Trademark Motion seeks a ruling that the Blue Plans abandoned

their common law trademark rights long before federal registration or, in the alternative,

that only the St. Paul and Buffalo Plans ever acquired such common law rights. (*See,*

*e.g.*, Doc. 2749 at 1.) The ruling Providers seek is not only contrary to this Court's 2022

Standard of Review decision (*see, e.g.*, Doc. 2933 at 9–10), but also would have

nationwide implications that go well beyond the streamlined action. The Court is also

already steeped in these critical trademark issues, making it uniquely suited to resolve

them for all cases prior to remand. *See, e.g.*, *U.S. ex rel. Hockett*, 498 F. Supp. 2d at 38

("This Court's familiarity with the issues in this case . . . indicates that it would be much

more efficient to proceed to summary judgment motions in this [MDL] Court rather than

to ask the transferor court to play catch-up."); *see also In re Suess*, 384 F. Supp. at 1407

(noting where court "has developed an expertise concerning the complicated subject

matter involved in this litigation, [it] is unquestionably in the best position to supervise

the pre-trial proceedings of all actions . . . toward their most just and expeditious

termination").

---

some Plans wanted to do so (*see* Doc. 2063 at 34–35) (in fact, they could not because of the common law trademark rights acquired by at least some Plans (*see, e.g.*, Doc. 2933 at 9–10)); and (2) that there are questions about "the validity and/or enforceability of the [federal Blue] Marks" (*see* Doc. 2063 at 34) (in fact, the federal Blue Marks are valid and enforceable, and that is true even if Plaintiffs' mistaken view of the federal application history were correct (*see* Doc. 2801 at 15 n.8)). For these reasons, the Blues respectfully submit that, upon consideration of Providers' Single Entity Motion, the Court could and should grant summary judgment *in favor of Defendants* on their single entity defense. *See Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 212 F. Supp. 3d 1286, 1291 (S.D. Fla. 2016) ("When a motion for summary judgment is presented to the Court, it opens the entire record for consideration, and the Court may enter judgment in favor of the non-moving party on any grounds apparent in the record, even where there is no formal cross-motion.") (citing *Burton v. City of Belle Glade*, 178 F.3d 1175, 1204 (11th Cir. 1999)). Such a ruling would significantly streamline for the transferor courts the claims that could be pursued on remand.

***Defendants' Statute of Limitations Motion*** (**Doc. 2758**).  Defendants'
Statute of Limitations Motion seeks to preclude Providers' damages claims as time-
barred and speculative.  As explained in the briefing, Providers' damages claims are
time-barred because their theory of harm centers around *historical* blocked entry, *i.e.*,
conduct that occurred *decades* before the Clayton Act's four-year statute of limitations
period in this case; and Providers fail to identify any new conduct occurring during the
limitations period that caused the alleged damages Plaintiffs seek.  (Doc. 2762 at 14–17.)
This theory of harm is identical across the Provider-track class action complaints.[12]  As a
result, resolving the Statute of Limitations Motion ahead of remand would make the
transferor actions more efficient, and a ruling in favor of Defendants on this motion
would drastically limit the claims that can be pursued.  *See, e.g.*, *In re Ivy*, 901 F.2d 7, 9
(2d Cir. 1990) (stating that "[c]onsistency as well as economy is . . . served" by a single
judge resolving an issue that "is easily capable of arising in hundreds or even thousands
of cases in district courts throughout the nation").

***Defendants' Injury and Damages Motion*** (**Doc. 2751**).  Defendants'
Injury and Damages Motion seeks a ruling that Provider Plaintiffs have failed to put
forward evidence of harm for non-general acute care hospital Plaintiffs or with respect to
any Blue Rule other than ESAs or BlueCard.  (Doc. 2751 at 1.)  Although this motion
specifically addresses Providers' model of injury and damages as applied in Alabama, the
model itself is not so limited.  Indeed, Providers' model appears to apply to all cases in
the MDL.  (*See, e.g.*, Doc. 2454-6 (Haas-Wilson Report filed in all Provider cases)

---

[12] *Compare Conway v. Blue Cross & Blue Shield of Ala.*, No. 2:12-cv-2532-RDP (N.D. Ala.),
Dkt. 1 ¶¶ 65–69, 73–74 *with The Surgical Ctr. for Excellence, LLLP v. Blue Cross & Blue Shield of Ala.*,
No. 5:12-cv-388-MW-CJK (N.D. Fla.), Dkt. 1 ¶¶ 71–72, 79–80 (same).

(referring to the Providers' Consolidated Fourth Amended MDL Complaint and not the individual complaint in the streamlined proceeding); Doc 2454-14 (Slottje Report filed in all Provider cases).)  It is therefore most efficient for the Court to resolve this motion before remand, which avoids needless, piecemeal litigation around the country over the same faulty model.  *See, e.g.*, *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prod. Liab. Litig.*, 226 F. Supp. 3d 557, 584 (D.S.C. 2017) ("[I]t is inefficient, costly, and contrary to the purposes of the statute to suggest remand without ruling on summary judgment.  This Court is familiar with the science and issues present and can dispose of the issues far more quickly and efficiently than dozens of courts spread across the country."), *aff'd sub nom. In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prod. Liab. Litig. (No II) MDL 2502*, 892 F.3d 624 (4th Cir. 2018).

For all of these reasons, the Blues respectfully submit that efficiency dictates that the Court resolve these summary judgment motions prior to remand.

## III.     Efficiency May Counsel the Court To Address Additional Motions.

To date, the Parties have limited their summary judgment motions to those "not critically dependent on the outcome of class certification".  (Doc. 2767 (Order Modifying Eighth Am. Scheduling Order).)  This is because the Court's Fifth Amended Scheduling Order stated that "[a]fter issuing a decision on class certification, the court will address dispositive motions that are dependent on the outcome of class certification".  (Doc. 2443 at 3; *see also* Doc. 2392 at 3 (same).)  Consistent with the Court's prior Order, the Blues respectfully request 60 days from the Court's class certification ruling to assess whether any additional motions (*i.e.,* those dependent on the Court's ruling) would be most efficiently resolved in the MDL.  (*See* Doc. 2757 (Defs.' Notice of Other Potential Mots.); *see also* Doc. 2458 (6/20/2019 Hr'g Tr.) at 8:14–24 (The Court:

"[D]epending on what class is certified, it may or may not change significantly the motion practice; but we can't know that until we actually see what's certified. . . . I can see where what class gets certified perhaps, particularly on the provider side, may speak to questions like demonstrable harm, the market definition that gets played out on a rule-of-reason analysis, all sorts of things like that."); *In re W. States Wholesale Nat. Gas Antitrust Litig.*, MDL No. 1566, 2015 WL 9973207, at *1 (J.P.M.L. Aug. 5, 2015) (denying remand where defendants "inten[ded] to file dispositive motions on grounds not previously raised").) This additional period of time need not lead to any inefficiency; the 60 days can run immediately after the Court issues its decision on Providers' Motion for Class Certification, while the Court turns to considering the currently pending summary judgment motions.

## IV.    The Blues' Proposed Sequence of Events Before Remand.

Based on the above, the Blues respectfully submit that remand should occur after the following sequence of events:

1. The Court decides Providers' Motion for Class Certification.

2. No later than 60 days following the Court's class certification ruling, the parties identify, and seek a briefing schedule for, any further dispositive motions contingent on that ruling.

3. The Court decides the four currently pending summary judgment motions.

4. The Court and parties revisit whether there is anything further to do in the context of the MDL (*e.g.*, additional summary judgment motions dependent on class certification; resolution of any appeal under Rule 23(f)), and complete any such work.

5. The Court files a suggestion of remand with the Panel.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully submit that, ahead of a suggestion of remand, the Court address the remaining issues as set forth herein.

Dated: November 10, 2023

Respectfully submitted,

*/s/ Karin A. DeMasi*
Karin A. DeMasi
Evan R. Chesler
Lauren R. Kennedy
David H. Korn
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Tel: (212) 474-1000
Fax: (212) 474-3700
echesler@cravath.com
kdemasi@cravath.com
lkennedy@cravath.com
dkorn@cravath.com

*Lead Counsel for the Blue Cross Blue Shield System; Counsel for Defendants Blue Cross Blue Shield Association; Blue Cross and Blue Shield of Alabama; Blue Cross and Blue Shield of Arizona, Inc.; GuideWell Mutual Holding Corporation; Blue Cross and Blue Shield of Florida, Inc.; Blue Cross and Blue Shield of Massachusetts, Inc.; Blue Cross and Blue Shield of North Carolina; BlueCross BlueShield of Tennessee, Inc.; California Physicians' Service d/b/a Blue Shield of California; CareFirst, Inc.; CareFirst of Maryland, Inc.; Group Hospitalization and Medical Services, Inc.; CareFirst BlueChoice, Inc.; Hawaii Medical*

*Service Association (Blue Cross and Blue Shield of Hawaii); Health Care Service Corporation, an Illinois Mutual Legal Reserve Company, including its divisions Blue Cross and Blue Shield of Illinois, Blue Cross and Blue Shield of Texas, Blue Cross and Blue Shield of New Mexico, Blue Cross and Blue Shield of Oklahoma, and Blue Cross and Blue Shield of Montana; Caring for Montanans, Inc., f/k/a Blue Cross and Blue Shield of Montana, Inc.; Wellmark of South Dakota, Inc. (Wellmark Blue Cross and Blue Shield of South Dakota); Wellmark, Inc. (Wellmark Blue Cross and Blue Shield of Iowa); Triple-S Management Corporation; Triple-S Salud, Inc.*

Craig A. Hoover
E. Desmond Hogan
Justin Bernick
Elizabeth Jose
W. David Maxwell
HOGAN LOVELLS US LLP
Columbia Square
555 13th Street, N.W.
Washington, DC 20004
Tel: (202) 637-5600
Fax: (202) 637-5910
craig.hoover@hoganlovells.com
desmond.hogan@hoganlovells.com
justin.bernick@hoganlovells.com
elizabeth.jose@hoganlovells.com
david.maxwell@hoganlovells.com

*Counsel for Anthem, Inc., f/k/a WellPoint, Inc., and all of its named subsidiaries in this action; Louisiana Health Service & Indemnity Company (Blue Cross and Blue Shield of Louisiana); BCBSM, Inc. (Blue Cross and Blue Shield of Minnesota); Blue Cross and Blue Shield of South Carolina; Horizon Healthcare Services, Inc. (Horizon Blue Cross and Blue Shield of New Jersey);*

Kimberly R. West (Liaison Counsel)
Mark M. Hogewood
WALLACE, JORDAN, RATLIFF & BRANDT, LLC
First Commercial Bank Building
800 Shades Creek Parkway, Suite 400
Birmingham, AL 35209
Tel: (205) 870-0555
Fax: (205) 871-7534
kwest@wallacejordan.com
mhogewood@wallacejordan.com

*Counsel for Defendants Blue Cross Blue Shield Association; Blue Cross and Blue Shield of Arizona, Inc.; CareFirst, Inc.; CareFirst of Maryland, Inc.; Group Hospitalization and Medical Services, Inc.; Health Care Service Corporation, an Illinois Mutual Legal Reserve Company, including its divisions Blue Cross and Blue Shield of Illinois, Blue Cross and Blue Shield of Texas, Blue Cross and Blue Shield of New Mexico, Blue Cross and Blue Shield of Oklahoma, and Blue Cross and Blue Shield of*

*Blue Cross & Blue Shield of Rhode Island; Blue Cross and Blue Shield of Vermont; Cambia Health Solutions, Inc.; Regence Blue Shield of Idaho; Regence Blue Cross Blue Shield of Utah; Regence Blue Shield (of Washington); Regence Blue Cross Blue Shield of Oregon*

John D. Martin
Lucile H. Cohen
Travis A. Bustamante
NELSON MULLINS RILEY &
SCARBOROUGH LLP
1320 Main Street, 17th Floor
Columbia, SC 29201
Tel: (803) 255-9421
Fax: (803) 256-7500
john.martin@nelsonmullins.com
lucie.cohen@nelsonmullins.com
travis.bustamante@nelsonmullins.com

*Counsel for Anthem, Inc., f/k/a WellPoint, Inc., and all of its named subsidiaries in this action; Louisiana Health Service & Indemnity Company (Blue Cross and Blue Shield of Louisiana); BCBSM, Inc. (Blue Cross and Blue Shield of Minnesota); Blue Cross and Blue Shield of South Carolina; Horizon Healthcare Services, Inc. (Horizon Blue Cross and Blue Shield of New Jersey); Blue Cross & Blue Shield of Rhode Island; Blue Cross and Blue Shield of Vermont; Cambia Health Solutions, Inc.; Regence Blue Shield of Idaho; Regence Blue Cross Blue Shield of Utah; Regence Blue Shield (of Washington); Regence Blue Cross Blue Shield of Oregon; Blue Cross & Blue Shield of Mississippi, a Mutual Insurance Company; Wellmark of South Dakota, Inc. (Wellmark Blue Cross and Blue Shield of South Dakota); Wellmark, Inc. (Wellmark Blue Cross and Blue Shield of Iowa); Hawaii Medical Service Association (Blue Cross and Blue Shield of Hawaii); Triple-S Salud, Inc; Defendants Blue Cross and Blue Shield of Florida, Inc.;*

*Montana; Caring for Montanans, Inc., f/k/a Blue Cross and Blue Shield of Montana, Inc.; Highmark Health; Highmark Inc., f/k/a Highmark Health Services; Highmark West Virginia Inc.; Highmark BCBSD Inc.; California Physicians' Service d/b/a Blue Shield of California; Wellmark of South Dakota, Inc. (Wellmark Blue Cross and Blue Shield of South Dakota); Wellmark, Inc. (Wellmark Blue Cross and Blue Shield of Iowa); Hawaii Medical Service Association (Blue Cross and Blue Shield of Hawaii)*

Carl S. Burkhalter
John Thomas A. Malatesta, III
MAYNARD COOPER & GALE PC
1901 6th Avenue North, Suite 2400
Regions Harbert Plaza
Birmingham, AL 35203
Tel: (205) 254-1000
Fax: (205) 254-1999
cburkhalter@maynardcooper.com
jmalatesta@maynardcooper.com

Pamela B. Slate
HILL CARTER FRANCO COLE &
BLACK, P.C.
425 South Perry Street
Montgomery, AL 36104
Tel: (334) 834-7600
Fax: (334) 386-4381
pslate@hillhillcarter.com

*With Cravath, Swaine & Moore LLP, counsel for Defendant Blue Cross Blue Shield of Alabama*

Jeffrey J. Zeiger, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Tel: (312) 862-2000

*Blue Cross and Blue Shield of Massachusetts, Inc.; BlueCross BlueShield of Tennessee, Inc.*

Cavender C. Kimble
BALCH & BINGHAM LLP
1901 6th Avenue North, Suite 1500
Birmingham, AL 35203-4642
Tel: (205) 226-3437
Fax: (205) 488-5860
ckimble@balch.com

*Counsel for Anthem, Inc., f/k/a WellPoint, Inc., and all of its named subsidiaries in this action; Blue Cross and Blue Shield of North Carolina; Louisiana Health Service & Indemnity Company (Blue Cross and Blue Shield of Louisiana); BCBSM, Inc. (Blue Cross and Blue Shield of Minnesota); Blue Cross and Blue Shield of South Carolina; Horizon Healthcare Services, Inc. (Horizon Blue Cross and Blue Shield of New Jersey); Blue Cross & Blue Shield of Rhode Island; Blue Cross and Blue Shield of Vermont; Cambia Health Solutions, Inc.; Regence Blue Shield of Idaho; Regence Blue Cross Blue Shield of Utah; Regence Blue Shield (of Washington); Regence Blue Cross Blue Shield of Oregon*

Gwendolyn Payton
KILPATRICK TOWNSEND & STOCKTON LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
Tel: (206) 626-7714
Fax: (206) 299-0414
gpayton@kilpatricktownsend.com

*Counsel for Defendants Premera Blue Cross, d/b/a Premera Blue Cross Blue Shield of Alaska*

Brian K. Norman
SHAMOUN & NORMAN, LLP
1800 Valley View Lane, Suite 200

Fax: (312) 862-2200
jzeiger@kirkland.com

*Counsel for Defendants Health Care Service Corporation, an Illinois Mutual Legal Reserve Company, including its divisions Blue Cross and Blue Shield of Illinois, Blue Cross and Blue Shield of Texas, Blue Cross and Blue Shield of New Mexico, Blue Cross and Blue Shield of Oklahoma, and Blue Cross and Blue Shield of Montana; Caring for Montanans, Inc., f/k/a Blue Cross and Blue Shield of Montana, Inc.; Highmark Health; Highmark Inc., f/k/a Highmark Health Services; Highmark West Virginia Inc.; Highmark BCBSD Inc.; Highmark Western and Northeastern New York Inc.*

Jonathan M. Redgrave
REDGRAVE, LLP
4800 Westfields Blvd., Suite 250
Chantilly, VA 20151
Tel: (703) 592-1155
Fax: (612) 332-8915
jredgrave@redgravellp.com

*Additional Counsel for HCSC and Highmark Defendants and California Physicians' Service d/b/a Blue Shield of California*

Todd M. Stenerson
Brian C. Hauser
SHEARMAN & STERLING LLP
401 9th Street, N.W., Suite 800
Washington, DC 20004
Tel: (202) 508-8000
Fax: (202) 508-8100
todd.stenerson@shearman.com
brian.hauser@shearman.com

Farmers Branch, TX 75234
Tel: (214) 987-1745
Fax: (214) 521-9033
bkn@snlegal.com


H. James Koch
ARMBRECHT JACKSON LLP
RSA Tower, 27th Floor
11 North Water Street
Mobile, AL 36602
Tel: (251) 405-1300
Fax: (251) 432-6843
hjk@ajlaw.com

*Counsel for Defendants CareFirst, Inc.;
CareFirst of Maryland, Inc.; Group
Hospitalization and Medical Services, Inc.;
CareFirst BlueChoice, Inc.*


M. Patrick McDowell
Norman E. "Benje" Bailey. Jr.
BRUNINI, GRANTHAM, GROWER
& HEWES, PLLC
190 East Capitol Street
The Pinnacle Building, Suite 100
Jackson, MS 39201
Tel: (601) 948-3101
Fax: (601) 960-6902
pmcdowell@brunini.com


Cheri D. Green
BLUE CROSS & BLUE SHIELD OF
MISSISSIPPI, A MUTUAL INSURANCE
COMPANY
P.O. Box 1043
Jackson, MS 39215
Tel: (601) 932-3704
cdgreen@bcbsms.com

*Counsel for Defendant Blue Cross & Blue
Shield of Mississippi, a Mutual Insurance
Company*


Ryan M. Hodinka
BALCH & BINGHAM, LLP

Rachel Mossman Zieminski
SHEARMAN & STERLING LLP
2601 Olive Street, Suite 1700
Dallas, TX 75201
Tel: (214) 271-5777
Fax: (214) 271-5778
rachel.zieminski@shearman.com


Sarah L. Cylkowski
Thomas J. Rheaume, Jr.
BODMAN PLC
1901 Saint Antoine Street
6th Floor at Ford Field
Detroit, MI 48226
Tel: (313) 259-7777
Fax: (734) 930-2494
scylkowski@bodmanlaw.com
trheaume@bodmanlaw.com


Andy P. Campbell
A. Todd Campbell
Yawanna N. McDonald
CAMPBELL PARTNERS LLC
505 North 20th Street, Suite 1600
Birmingham, AL 35203
Tel: (205) 224-0750
Fax: (205) 224-8622
andy@campbellpartnerslaw.com
todd@campbellpartnerslaw.com
yawanna@campbellpartnerslaw.com

*Counsel for Defendant Blue Cross and
Blue Shield of Michigan*


John DeQ. Briggs
Jeny M. Maier
AXINN, VELTROP & HARKRIDER,
LLP
1901 L Street, N.W.
Washington, DC 20036
Tel: (202) 912-4700
Fax: (202) 912-4701
jbriggs@axinn.com
jmaier@axinn.com

1901 6th Avenue North, Suite 1500
Birmingham, AL 35203
Tel: (205) 226-3464
Fax: (205) 488-5848
rhodinka@balch.com

*Counsel for Defendant USAble Mutual
Insurance Company, d/b/a Arkansas Blue
Cross and Blue Shield and as Blue Advantage
Administrators of Arkansas*

Robert K. Spotswood
Michael T. Sansbury
Joshua K. Payne
Jess R. Nix
Morgan B. Franz
SPOTSWOOD SANSOM & SANSBURY
LLC
Financial Center
505 20th Street North, Suite 700
Birmingham, AL 35203
Tel: (205) 986-3620
Fax: (205) 986-3639
rks@spotswoodllc.com
msansbury@spotswoodllc.com
jpayne@spotswoodllc.com
jnix@spotswoodllc.com
mfranz@spotswoodllc.com

*Counsel for Defendant Capital Blue Cross*

Robert R. Riley, Jr.
RILEY & JACKSON, P.C.
3530 Independence Drive
Birmingham, AL 35209
Tel: (205) 879-5000
Fax: (205) 879-5901
rob@rileyjacksonlaw.com

*Counsel for Defendants Blue Cross and Blue
Shield of Florida, Inc.; Blue Cross and Blue
Shield of Massachusetts, Inc.; BlueCross
BlueShield of Tennessee, Inc.*

Edward S. Bloomberg

Kail J. Jethmalani
AXINN, VELTROP & HARKRIDER
LLP
114 W. 47th Street
New York, NY 10036
Tel: (212) 728-2200
Fax: (212) 728-2201
kjethmalani@axinn.com

Stephen A. Rowe (ASB-3804-E65S)
Aaron G. McLeod (ASB-8589-A57M)
ADAMS AND REESE LLP
1901 6th Avenue North, Suite 3000
Birmingham, AL 35203
Tel: (205) 250-5080
Fax: (205) 250-5034
steve.rowe@arlaw.com
aaron.mcleod@arlaw.com

*Counsel for Defendants Independence
Hospital Indemnity Plan, Inc. f/k/a
Independence Blue Cross;
Independence Health Group, Inc.*

Kathleen Taylor Sooy
Tracy A. Roman
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004
Tel: (202) 624-2500
Fax: (202) 628-5116
ksooy@crowell.com
troman@crowell.com

Sarah Gilbert
Honor Costello
CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, NY 10022
Tel: (212) 223-4000
Fax: (212) 223-4134
sgilbert@crowell.com
hcostello@crowell.com

John M. Johnson
Brian P. Kappel

John G. Schmidt Jr.
Anna Mercado Clark
PHILLIPS LYTLE LLP
One Canalside
125 Main Street
Buffalo, NY 14203-2887
Telephone No. (716) 847-8400
ebloomberg@phillipslytle.com
jschmidt@phillipslytle.com
aclark@phillipslytle.com

Morris Wade Richardson (ASB-8581-S78M)
Charles Todd Grimes (ASB-3224-S77C)
RICHARDSON CLEMENT PC
22 Inverness Center Parkway, Suite 500
Birmingham, AL 35242
Tel: (205) 729-7000
Fax: (205) 905-7009
wade@richardson.law
charley@richardson.law

*Attorneys for Defendants Excellus Health
Plan, Inc., d/b/a Excellus BlueCross
BlueShield and Lifetime Healthcare, Inc.*

LIGHTFOOT FRANKLIN & WHITE
LLC
The Clark Building
400 20th Street North
Birmingham, AL  35203
Tel: (205) 581-0700
Fax: (205) 581-0799
jjohnson@lightfootlaw.com
bkappel@lightfootlaw.com

*Counsel for Defendants Blue Cross
and Blue Shield of Nebraska;
GoodLife Partners, Inc.; Blue Cross of
Idaho Health Service, Inc.; Blue Cross
and Blue Shield of Kansas, Inc.; Blue
Cross and Blue Shield of Kansas City;
HealthyDakota Mutual Holdings; Blue
Cross Blue Shield of North Dakota;
and Blue Cross Blue Shield of
Wyoming*

## Appendix A: Provider-Track Cases in MDL No. 2406

| Entry | Case | Court | Alleged Class |
|:---:|:---|:---:|:---:|
|  | **Originally Filed in N.D. Ala.** | | |
| **1.** | *Caldwell v. Blue Cross & Blue Shield of Ala.*, No. 2:19-cv-565-RDP (N.D. Ala.) | N.D. Ala. | Alabama |
| **2.** | *Conway v. Blue Cross & Blue Shield of Ala.*, No. 2:12-cv-2532-RDP (N.D. Ala.) | N.D. Ala. | Nationwide |
| **3.** | *Melson v. Blue Cross & Blue Shield of Ala.*, No. 3:13-cv-625-RDP (N.D. Ala.) | N.D. Ala. | Nationwide |
| **4.** | *Reyes v. Blue Cross & Blue Shield of Ala.*, No. 2:21-cv-1235-RDP (N.D. Ala.) | N.D. Ala. | Alabama |
|  | **Originally Filed in Other Jurisdictions and Transferred to N.D. Ala.** | | |
| **5.** | *Am. Surgical Assistants v. Blue Cross & Blue Shield of Ala.*, No. 4:16-cv-1146 (S.D. Tex.) | S.D. Tex. | Nationwide |
| **6.** | *Chiropractic Plus, P.C. v. Blue Cross & Blue Shield of Ala.*, No. 4:13-cv-234 (S.D. Tex.) | S.D. Tex. | Nationwide |
| **7.** | *Hosp. Serv. Dist. 1 of Parish of E. Baton Rouge, La. v. Blue Cross & Blue Shield of Ala.*, No. 3:15-cv-523-BAJ-SCR (M.D. La.) | M.D. La. | Nationwide |
| **8.** | *Houston Home Dialysis, LP v. Blue Cross & Blue Shield of Ala.*, No. 4:19-cv-3791 (S.D. Tex.) | S.D. Tex. | Nationwide |
| **9.** | *Quality Dialysis One, L.L.C.*, No. 4:15-cv-3491 (S.D. Tex.) | S.D. Tex. | Nationwide |
| **10.** | *Richmond SA Servs., Inc. v. Blue Cross & Blue Shield of Ala.*, No. 4:16-cv-1140 (S.D. Tex.) | S.D. Tex. | Nationwide |
| **11.** | *The Surgical Ctr. for Excellence, LLLP v. Blue Cross & Blue Shield of Ala.*, No. 5:12-cv-388-MW-CJK (N.D. Fla.). | N.D. Fla. | Nationwide |
|  | **Filed in Other Jurisdictions in Connection with Personal Jurisdiction Briefing** | | |
| **12.** | *Conway v. Blue Cross & Blue Shield of Ala.*, No. 2:15-cv-1349-DLR (D. Ariz.) | D. Ariz. | Nationwide |
| **13.** | *Conway v. Blue Cross & Blue Shield of Ala.*, No. 5:15-cv-4905-DDC-KGS (D. Kan.) | D. Kan. | Nationwide |
| **14.** | *Conway v. Blue Cross & Blue Shield of Ala.*, No. 3:15-cv-109-RRE-ARS (D.N.D.) | D.N.D. | Nationwide |
| **15.** | *Conway v. Blue Cross & Blue Shield of Ala.*, No. 3:15-cv-2002-FAB (D.P.R.) | D.P.R. | Nationwide |
| **16.** | *Conway v. Blue Cross & Blue Shield of Ala.*, No. 2:15-cv-140-SWS (D. Wyo.) | D. Wyo | Nationwide |
| **17.** | *Conway v. Blue Cross & Blue Shield of Ala.*, No. 2:15-cv-3963-PBT (E.D. Pa.) | E.D. Pa. | Nationwide |
| **18.** | *Conway v. Blue Cross & Blue Shield of Ala.*, No. 3:15-cv-519-WHB-JCG (S.D. Miss.) | S.D. Miss. | Nationwide |
| **19.** | *Conway v. Blue Cross & Blue Shield of Ala.*, No. 1:15-cv-5539-AT (S.D.N.Y.) | S.D.N.Y. | Nationwide |
|  | **Individual Action** | | |
| **20.** | *Anesthesia Assocs. of Ann Arbor PLLC v. Blue Cross Blue Shield of Mich.*, No. 2:20-cv-12916 (E.D. Mich.) | E.D. Mich. | N/A |

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on November 10, 2023, the foregoing was

electronically filed with the Clerk of Court using the CM/ECF system, which will send

notification of such filing to all counsel of record.

<u>/s/ *Karin A. DeMasi*    </u>
Karin A. DeMasi