IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ALABAMA

SOUTHERN DIVISION

IN RE BLUE CROSS BLUE SHIELD          CASE NO. 2:13-cv-20000-RDP
ANTITRUST LITIGATION MDL 2406

\* \* \* \* \* \* \*

**TRANSCRIPT OF STATUS CONFERENCE**

\* \* \* \* \* \* \*

BEFORE THE HONORABLE R. DAVID PROCTOR, UNITED STATES DISTRICT JUDGE, at Birmingham, Alabama, on Thursday, November 30, 2023, commencing at 9:37 a.m.

APPEARANCES:

SPECIAL MASTER:          Edgar C. Gentle III
                         Attorney at Law
                         GENTLE TURNER SEXTON & HARBISON
                         501 Riverchase Parkway East, Suite 100
                         Hoover, Alabama 35244

IN PERSON:               W. Tucker Brown
                         Carl S. Burkhalter
                         Evan Chesler
                         U. W. Clemon
                         Karin DeMasi
                         David Dowling
                         Jeff Fisher
                         Sarah M. Gilbert
                         Mark Gray
                         Lillian Grossbard
                         Michael E. Gurley
                         Katherine A. Harbison

APPEARANCES, CONTINUED:

IN PERSON:          Mark Hogewood
                    Craig A. Hoover
                    John M. Johnson
                    Edith M. Kallas
                    Lauren R. Kennedy
                    Donald D. Knowlton, II
                    David Korn
                    Chris Kunkle
                    Kenina Lee
                    Patrick McDowel
                    Anna Mercado
                    W. David Miles
                    Michael Morris
                    Nikol Oyandich
                    Dennis G. Pantazis
                    Myron C. Penn
                    Ben Presley
                    Henry Quillen
                    Barry A. Ragsdale
                    Robert B. Roden
                    Julia Smeds Roth
                    Nicholas B. Roth
                    Robin Sanders
                    Kathleen Sooy
                    Todd M. Stenerson
                    Joe R. Whatley, Jr.
                    Helen E. Witt
                    Jeffrey Zeiger

VIA TELEPHONE:      Jamie Bachant
                    Ed Bloomberg
                    Travis Bustamante
                    J.T. Clendenin
                    Lucie Cohen
                    Justin Cook
                    Sarah Cylkowski
                    Katherine DuBois
                    Thomas Eschleman
                    Morgan Franz
                    Diane Hazel
                    Victoria Lu
                    Alexandra Markel
                    Deirdre MacCarthy
                    Duncan McIntosh
                    Mark Newcomer
                    Gwendolyn Payton
                    Brittney Piper

APPEARANCES, CONTINUED:

VIA TELEPHONE:          Paula Plaza
                        Donald Savery
                        John Schmidt
                        Richard Shelburne
                        Christina Silva
                        Amy Walker Wagner
                        Michael Wolfe
                        Rachel Mossman Zieminski
                        Alex Zuraff

        The proceedings were reported by a stenographic court reporter.  The transcript was produced using computer-aided transcription.

(The following proceedings were heard before the Honorable R. David Proctor, United States District Judge, at Birmingham, Alabama, on Thursday, November 30, 2023, commencing at 9:37 a.m.)

THE COURT:  All right.  We're here in In Re Blue Cross Blue Shield Antitrust Litigation MDL 2406, our Master File No. 13-cv-20000.  The parties submitted a joint report regarding the proposed agenda for the status conference previously. There are two items on our agenda.  The first is the Court's order to show cause, and the second is the more interesting issue of any other issues.

All right.  So we'll take them up in order.  Who wants to be heard on the Court's order to show cause?

MR. WHATLEY:  We will briefly, Your Honor.

THE COURT:  All right.

MR. WHATLEY:  Your Honor, first of all, we're going to rely largely on our papers, but I realize there was one important thing since you -- on the first page of your show cause order, you quoted from Judge Ferguson, which is -- it's been long enough ago that I guess I didn't remember the whole quote, but -- and Judge Ferguson said, who, of course, was one of the members of the panel at the time -- and he said that you don't have to keep -- you're assuming that Judge Proctor's going to keep the cases all the way through and he doesn't have to do that.  He can say let's do the issue on the common

license agreement and send you home.

Judge, we have done the full discovery on the common license agreement.  We have done exactly what Judge Ferguson said should be done before cases are remanded back.

THE COURT:  And more.

MR. WHATLEY:  And more, a lot more.  But it's interesting that we have done exactly the thing that he referenced.

THE COURT:  It sounds like I should have gotten rid of you all in 2016.

MR. WHATLEY:  Well, you could have.  You could have.  But that was then, and the question is what to do now.  And so we think your order to show cause, you should follow up on it and submit an order to the MDL panel to -- for you to proceed with the Alabama cases and the cases to be remanded and even that are -- that were not filed here and, even more importantly, the cases around the country to be filed wherever they belong and then to proceed there without getting transferred to you while you continue to pursue the Alabama cases, which you have attempted to expedite and move forward and will continue to move forward.  So -- and we think there's absolutely no reason to delay that.  You can go forward and rule on all the things that the Blues have mentioned in their papers, and we can deal with -- if there's an appeal to the Eleventh Circuit, there is.  All those things can happen while

other cases are proceeding and moving forward appropriately, because they should now in light of how long this case has been pending.

THE COURT:  All right.  Thank you.

MR. WHATLEY:  Thank you.

THE COURT:  Ms. DeMasi?

MS. DeMASI:  Good morning, Your Honor.

THE COURT:  Are you going to be the Lee Corso on the panel and say not so fast?

MS. DeMASI:  Not so fast.  Look, I actually think, Your Honor -- and we'll rest largely on our papers as well, but I think there are broad areas of agreement between the parties, looking back not only at our papers that were filed earlier this month but you'll recall the parties filed papers on this on a similar issue a year ago.  And I want to start with those areas of agreement.

So the parties agree on the standard for remand.  It's discretionary.  And the JPML said when consolidating that the District Court should decide to remand when consolidation no longer serves the purpose of efficiency.

THE COURT:  Well, and to be clear, since I used to be on the panel, I don't get to decide that.  I just suggest it.

MS. DeMASI:  Correct.

THE COURT:  The panel is the one who decides it.

MS. DeMASI:  Correct.  You get broad discretion, but

absolutely.

THE COURT:  As far as the recommendation.

MS. DeMASI:  And the parties also agree there is a lot of work that has been done.  A lot has been done in this MDL and we certainly agree on that.  Your Honor's order did a good job laying that out.

But the parties also agree, and providers themselves expressly agreed to this, that there are several pending motions that address common issues to providers and defendants.  And those aren't my words.  That's what the providers said last year in Docket No. 2925 at page two.  And the motions are very few.  They are fully briefed.  And the parties agree that the priority for the Court -- that there's a certain order they should go in and the priority of the Court should first be class certification and then the pending motions for summary judgment.

THE COURT:  So let me ask you this:  The current landscape of the class certification motions, is there -- those are for good reason, but they're all exclusively devoted to the Alabama prioritized cases; correct?

MS. DeMASI:  Correct.

THE COURT:  How would a ruling on class certification involving the Alabama cases aid a transferor judge dealing with separate class certification motions dealing with different markets, different entities, primary entities I

guess I should say, how would that be advantageous?

MS. DEMASI:  Well, there are common issues that arise in classification that are not just about Alabama.  There are no doubt some individual issues but there are some common issues.  Your Honor recognized two of them in your November 17th order of last year, issues around two-sided markets, which is now fully briefed and ready for the Court, and issues around damages.

The damages model that providers put forth, that is part of their motion for class certification, is a model that applies to all cases.  That is what -- that is what their expert said and what they submitted.  So the Court's ruling on those two issues, in addition to other issues in class certification, will not only potentially apply more broadly to other cases but also will provide great guidance for the transferor courts when the cases are ultimately remanded as they no doubt will need to be at some point.  In fact, class certification was one of the issues Your Honor will remember that the panel referenced as benefiting from these consolidated proceedings back when the JPML first set this up.

THE COURT:  But if these cases are remanded by the panel back to various circuits, different circuit authorities can apply in these respective motions then, many of which --

MS. DeMASI:  To some of them.

THE COURT:  -- many of which haven't been filed.  The

transferor court is not bound by what the transferee court said on those issue. There's going to be at least an argument from one side or the other or both that the transferor court ought to reconsider these issues in light of Circuit precedent. Who knows, they might even say I got it wrong. So that's what I'm wondering is how helpful that's going to be.

MS. DeMASI: Yeah, look, I -- there are, no doubt, going to be differences, but it will, I think, serve efficiency, be helpful guidance. Your Honor has overseen this case for a decade and so you are intimately familiar with these issues in the way the transferor courts are not. And they are fully briefed. They are ready and waiting for the Court to decide.

THE COURT: Okay.

MS. DeMASI: And then the other briefs, of course, that are fully briefed and awaiting decision. Also mentioned by providers in their submission last year --

THE COURT: And to be clear, I think it makes perfect sense to rule on the nonclass cert motions that are before me now before we suggest remand. I'm struggling with the class cert issues, though. That's really what I'm focusing on.

MS. DeMASI: Well, again, I would argue, Your Honor, that the class certification issues actually go toward some of the central issues in the case, again, at least two-sided markets and damages. There may well be other issues. Only

Your Honor knows what might be in that decision.  But there's not only that issue, but if Your Honor is inclined to grant the summary judgment motions, we do think class certification ought to be granted first because of the one-way intervention issue that we have spoken about over time.

THE COURT:  Okay.

MS. DeMASI:  And again, providers agree that that should be prioritized that that comes first and comes next.

THE COURT:  All right.

MS. DeMASI:  Thank you.

THE COURT:  Thank you.

Mr. Whatley, a reply?

MR. WHATLEY:  Yes, sir.  Your Honor, I think some of this discussion assumed that all the cases would be class cases, and we know that that's not going to be true.  And just as an example, Your Honor, to use a -- it's not a hypothetical.  In this country, many of the major hospital systems are headquartered in and around Nashville.  Many of those systems have no hospitals in Alabama.  And those systems, especially the ones that have no hospitals in Alabama and even the ones that do have a few hospitals in Alabama, have the bulk of their hospitals in other places.  Those systems could file individual cases in their -- where they're located in the Middle District of Tennessee or wherever, but just for that example, they could file it -- they could start

moving forward, doing the case-specific discovery, getting ready to move those cases forward toward trial.

And there is no reason for you to delay that process because if they file those today, then the defendants would do exactly what they did with the Michigan case that was transferred down here.  They would go to the panel.  They would move to transfer it here.  And with this -- without a suggestion of remand or termination of the MDL, that's what would happen, and those cases would then be stayed while you move forward with the prioritized cases, Alabama case, that you ordered back in 2015 and that you went through the whole history of in your show cause order.

There is no reason for you to continue to do that, and we would urge you to make the suggestion forthwith and move forward with the decisions on the motions in the Alabama cases, and that will have the same kind of -- other judges will also look at those and, as you pointed out, they will agree with them and they'll -- I'm sure they will respect your opinions.  Their circuit law may be different, it may not, but in any event, they will make their own decisions on their own cases, and not all of them will be class cases.

THE COURT:  All right.  Okay.  What else?

MS. DeMASI:  Can I just --

THE COURT:  You can --

MS. DeMASI:  I just want to briefly address that, Your

Honor, because that is the new point that the providers made in their -- in their paper, their submission that there's these unidentified other plaintiffs that would like to bring their individual suits.  I have a couple responses to that.  Number one is remand -- the decision on remand should not be driven by any individual interest.  It should be driven by the efficiency of the MDL.  The second is that nothing is preventing any of those providers from filing their case.  They can file it; other plaintiffs have filed it.  We are litigating in other courts.

THE COURT:  Other than the fact that the Court has suggested maybe considering a suggestion of remand and they may be deciding why would we file now and go through a tagalong process only to be sent back where we would want to file in the first place.

MS. DeMASI:  Which brings me to my third point, Your Honor, which is, as Your Honor did with respect to the subscriber cases, you could indicate that you're no longer accepting new cases while you complete this work of the MDL.  And so Your Honor is aware and the Special Master is aware, there was a subscriber case, a copycat case, filed --

THE COURT:  Do you think that makes sense for me to do?

MS. DeMASI:  It might if -- it depends the timeline Your Honor is on.  If you are inclined to rule on class

certification, and the two issues that I mentioned, the two-sided markets and damages, that applies to individual cases as well. They would also be -- you know, they would also provide guidance for those individual cases wherever they're filed. But if Your Honor is inclined to grant the class certification and the summary judgment motions that are pending, it may well make sense for the Court not to take on new cases. No one's trying to delay. What we're trying to do is maximize efficiency of the matters already before Your Honor.

THE COURT: All right. Points well taken.

MR. STENERSON: Your Honor, may I be heard?

THE COURT: You may. We'll throw it open to everybody.

MR. STENERSON: No. Todd Stenerson, on behalf of Blue Cross Blue Shield of Michigan. And I heard Mr. Whatley mention the A4 case. So I just wanted to very briefly say that A4 is not special in this regard, and for all the reasons Miss DeMasi --

THE COURT: I think they believe they're special.

MR. STENERSON: Well, I don't know if they're here today. If they thought they were special, they might have shown up. But, Your Honor, all that is left in A4 is literally copycat allegations from the provider case. They've been here since April. They've not asked for a status

conference.  We've been working with them informally about the MDL record, and there is no reason to treat them special.

THE COURT:  All right.

MR. STENERSON:  Thank you.

THE COURT:  Anyone else want to make a remark?  All right.  Sounds good.

Are we ready to proceed to the second agenda item, any other issues?  I think the -- I want to -- I want to lead off with any other issues and note that we have a friend back with us and it's great to have him sitting in the courtroom.

(Applause.)

THE COURT:  And, of course, I'm referring to Barry Ragsdale.

(Laughter.)

THE COURT:  All right.  Chief, good having you back.

MR. CLEMON:  Thank you, Judge.  Glad to be back.

THE COURT:  All right.  Okay.  What are the other issues you all wanted to take up?  Or was that just a placeholder in case there was something?

MR. WHATLEY:  Well, it was both in case there was something and if you had other issues that you wanted to raise, Your Honor.  So I don't think, between us, we had other issues to raise.

THE COURT:  Well, I think anything else I'm going to raise probably makes sense to just discuss it in caucuses

today.  It wouldn't be directed at any type of merits type of discussion or necessarily things that would involve the Court's adjudication of issues; okay?

Well, this has been a little longer --  Yes?

MR. BROWN:  Your Honor, counsel for A4 just -- this is Tucker Brown.  Counsel for A4 just emailed me and said he is on listen only and wanted it noted that he was here.  And I guess I don't know whether there's a way to turn it on so he can remark on that.

THE COURT:  There isn't, but please tell him --

MR. BROWN:  But he wanted you to know that he is listening.

THE COURT:  Please tell him that -- if he isn't hearing me directly, say this, that I think he's special.

Okay.  All right.  And I -- I didn't bite on any of the points raised by either side on the Michigan case because there's no real reason to do that in this setting; okay?

All right.  Are we ready to adjourn, then, to some caucuses?

MR. WHATLEY:  Yes, sir.

MS. DeMASI:  Yes.

THE COURT:  Ed, remind everyone what our agenda is for the caucuses in case people are not in the know.

MR. GENTLE:  Very good.  So we're going to adjourn to Dennis's office.  It's, as I remember, providers first, then

Blues, then providers and Blues, then the most important thing, lunch.

THE COURT:  Make sense to everyone?  All right.  I'll look forward to saying hello to everyone personally when we have a chance.

MR. WHATLEY:  Thank you, Your Honor.

THE COURT:  And we'll be adjourned.

(Adjourned accordingly at 9:54 a.m.)

*Pamela G. Weyant, RDR, CRR, CCR, Official Court Reporter*
*U.S. District Court | Northern District of Alabama | Birmingham, AL*
*Pamela_Weyant@alnd.uscourts.gov  |  (205)278-2065*

17

C E R T I F I C A T E


        I certify that the foregoing is a correct transcript

from the record of proceedings in the above-entitled matter.

                      Dated:  December 4, 2023




*Pamela G. Weyant*
Pamela G. Weyant, RDR, CRR, CCR
Official Court Reporter

Pamela G. Weyant, RDR, CRR, CCR, Official Court Reporter
U.S. District Court | Northern District of Alabama | Birmingham, AL
Pamela_Weyant@alnd.uscourts.gov  |  (205)278-2065