FILED
2024 May-02 PM 12:11
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION


IN RE BLUE CROSS BLUE SHIELD      CASE NO. 2:13-cv-20000-RDP

ANTITRUST LITIGATION MDL 2406


\*   \*   \*   \*   \*   \*   \*

**TRANSCRIPT OF STATUS CONFERENCE**

\*   \*   \*   \*   \*   \*   \*

BEFORE THE HONORABLE R. DAVID PROCTOR, UNITED STATES DISTRICT JUDGE, at Birmingham, Alabama, on Thursday, April 25, 2024, commencing at 9:32 a.m.


APPEARANCES
VIA TELEPHONE:

SPECIAL MASTER:          Edgar C. Gentle III
                         Attorney at Law
                         GENTLE, TURNER & BENSON, LLC
                         501 Riverchase Parkway East
                         Suite 100
                         Hoover, Alabama 35244

VIA TELEPHONE:           Monica Auciello
                         Norman Beck
                         W. Tucker Brown
                         Hon. U. W. Clemon
                         Karin DeMasi
                         David Dodge
                         Mike Dodge
                         Augusta Dowd
                         Todd Ehlman
                         David Ellenbogen
                         Don Freeman
                         Sarah M. Gilbert
                         David Goodsir
                         Mark Gray

APPEARANCES, CONTINUED:

VIA TELEPHONE:          Anne Hance
                        Katherine A. Harbison
                        Michelle Heikka
                        Dan Hoffmeister
                        Des Hogan
                        Mark Hogewood
                        Craig A. Hoover
                        Edith M. Kallas
                        Lauren R. Kennedy
                        Kenina Lee
                        Joanne Lytle
                        Patrick McDowell
                        Tim McMichael
                        Anna Mercado
                        W. David Miles
                        Scott Nehs
                        Catherine Nelson
                        Nikol Oyandich
                        Dennis G. Pantazis
                        Lou Patalano
                        Gwendolyn Payton
                        Myron C. Penn
                        Wes Pittman
                        Aaron Podhurst
                        Barry A. Ragsdale
                        Robert B. Roden
                        Don Savery
                        Robin Sanders
                        Patrick Sheehan
                        David Shelby
                        John Schmidt
                        Todd M. Stenerson
                        Blair Todt
                        Michael Velezis
                        Brian Vick
                        Joe R. Whatley, Jr.
                        Mark White
                        Pam Williams
                        Helen E. Witt
                        Kirk Wood
                        Jeffrey Zeiger
                        Rachel Mossman Zieminski


The proceedings were reported by a stenographic court reporter.

The transcript was produced using computer-aided transcription.

(Proceedings commenced at 9:32 a.m.)

THE COURT:  All right.  We are here in -- we're here for a status conference in In Re Blue Cross Blue Shield Antitrust Litigation, MDL 2406, our document Docket No. 13-cv-20,000.

There are three items on the agenda.  One's a catchall.  The first is the Court's consideration of a suggestion of remand and associated logistics.

By way of background, I have received the proposed order summarizing the MDL upon a suggestion of remand from the parties.  Looks like a lot of work went into that, quite a good work product, I thought.  I do have a few thoughts about how that might be supplemented or amended, but first I thought I would want to hear from the parties just about your thoughts in presenting this particular order.  So I don't know if you want to take that up first.  And I'm wondering if you -- I'm wonder if they can hear you.  Yeah, I'm wondering if they can hear you, if my court reporter can hear you back in Birmingham.

MS. WAUDBY:  You-all are all really, really quiet.

THE COURT:  Okay.  So we might need you to have a microphone.  What do you think about that?  Hey, turn it on.

MALE VOICE:  Pass it around.

THE COURT:  Yeah, that's what we'll end up doing.

MS. WAUDBY:  Judge, you're pretty quiet, too.

THE COURT:  How about now?

MS. WAUDBY:  Perfect.

THE COURT:  Not for everybody here.

MR. WHATLEY:  Judge, our point is that we would like to see the suggestion entered as quickly as possible.  If you want to get into the details about the packet, as you might suspect, Tucker's here to answer any of those questions and -- at least from the providers' standpoint.

THE COURT:  I'll address some of those -- is that better, Sally, on my end?

(Discussion off the record.)

THE COURT:  All right.  So what Joe just said, for clarity of the record, is that providers' guidance to the Court is that the suggestion of remand order summarizing the MDL be entered as soon as possible, as soon as practicable maybe.

MR. WHATLEY:  Sure.

THE COURT:  And then second, that Tucker is here, who took the lion's share of the work on drafting the order.  No surprise there.  And then he would be available to answer specific questions about the content of the order.

Are we caught up, Joe?

MR. WHATLEY:  Yes, sir.

THE COURT:  Okay.

MS. DEMASI:  Your Honor this is Karen DeMasi, on

behalf of the Blues.  The Blues' position remains that it is premature at this point to suggest remand for the reasons we set forth in our prior paper, in particular, that the defendants' view that class certification ought to be decided ahead of remand.  That's really for three reasons:  The first is that there are overlapping classes in the vast, vast, vast majority of the actions that are part of the MDL, those as set out in appendix A to the remand packet.

The second is that that's, in fact, one of the reasons that the JPML put these cases together was expressly with respect to class certification.  Indeed, the JPML, in its order in 2012, has a footnote noting that there are overlapping classes, and the JPML not only said that in 2012 but said it again just last year in the context of transferring the A4 case to the MDL.

And the third is pure efficiency, which, of course, is one of the reasons for the MDL.  The papers have been fully submitted.  It is ready for a decision.  The Court has issued supplemental -- an order for supplemental briefing, which has been completed.  And so for the efficiency of the parties and the Courts, including the transferor courts, we believe that remand would be premature at this point until class certification has been provided.

THE COURT:  All right.  And I certainly considered each of those arguments.  I also recall, though, that -- and

one of the things I may end up doing in this order is incorporating some of the language from the actual oral arguments where the panel considered centralizing this.  And I think the panel was of the view, at least as it expressed to the parties prior to centralization, is there are certain things that could be done in these cases that could be sent back, and I think we've actually done a lot more than those -- that laundry list that the panel suggested of oral argument but certainly considered all those things.

And, you know the other thing is I just -- you know, to the extent -- to the extent there are overlapping or competing class actions, again, I don't know that that's where each transferor court is going to land on what it's going to certify.  And I actually think that there -- a settlement class may be different, but when it comes to the manageability of this class here, I'm not sure that certification of a single class or even broader category class is going to make sense.  I've very much come to the view that there may be -- it may be necessary to have very discrete subclasses, and I think the transferor courts can address that in the context of the class actions filed before them.  But that was my call. That's why I started the train down the tracks in terms of whether we should consider suggestion of remand.

I wonder also -- one of the -- so I'm informed a little bit on this next question by my role on the MDL rules

subcommittee that's been examining Rule 16.1, and we got a lot of feedback about the effect of consolidated pleadings in an MDL.  And one of the things -- Tucker, this might be for you and, Karen, for you in turn -- I'm wondering if we ought to have some language in here that discusses what the transferee court views and what the parties view as the purpose of the consolidated pleadings, the effect of the consolidated pleadings, the limits on the consolidated pleadings.

One of the things I think we don't want to do is have cases go back and there's confusion in the transferor court about, Well, what should happen next?  Does the consolidated pleading become the pleadings in this case, or do we need to have specific pleadings updated with respect to each class action that goes back to each transferor district judge?

So what's the parties' views -- what are the parties' views on that question?

MR. BROWN:  Your Honor, I think that -- this is Tucker Brown.  I think that makes a lot of sense.  I think this is something that we discussed with the defendant, and I'll just say over the course of several years there's been some -- I don't know if disagreement's the right word, but -- I think questions on both sides about what the operative pleading, and it probably makes sense to give the transferee court a lot of clarity on that point.  So I think we'd be happy to take a shot at that.

THE COURT:  And do you think -- Karen, do you agree that we need to at least address that in the order?

MS. DEMASI:  We do agree.  This is one of the things that we talked about, and we agree that clarity would be helpful with respect to that.

THE COURT:  Do you want to let me give you the chance to give me your thoughts before I start drafting?

MS. DEMASI:  Yes, that would be perfect.

THE COURT:  That would be a good thing for you?

MS. DEMASI:  Agreed.  We'd be happy to supplement in that regard.

THE COURT:  Yeah.  So what I'm thinking is just a paragraph or two that we would put in section two of the order on operative complaints just explaining, all right, what's -- we've used consolidated pleadings, those have been updated, as you've already indicated in here, over time in the MDL, and here is the purpose and this is what at least the transferee court and the parties think the effect is.  If we can agree on that, fine.  If we can't agree on that, then I'll let both sides express their views in the order.  I'll articulate what their respective views are and then reserve the right to express my view; okay?

MR. BROWN:  I think that's perfect, Your Honor.

THE COURT:  All right.  I -- and this is not for your discussion; it's just from my observation so you can -- for

your information.  I think we have sold short two things and that is I tend to supplement the order with some remarks about how -- what high quality and professionalism I've had with counsel in this case.  I want the transferor courts to know they're getting really good lawyers in whatever packages the lawyers show up in their courts in.

And the other thing is I really think we ought to give a longer nod to Judge Putnam in the order.  He's retired now, but I wouldn't mind just talking about how critical his role was and how well he did it, so I intend to do that.  I intend to do it, yeah.  I'm just giving you a heads-up that that's one of the things I'm thinking about.  Now, you might volunteer to talk about how great the lawyers were.  Yeah, I'm just kidding.

Well, I know I speak for everyone when I say that I think it makes sense to -- and I realize we were being functional in our approach here, but I do think it's appropriate for us to pay respect and thanks to him for all the hard work he did.

I also think that one of the things I'd like to address in this order is why we prioritized the Alabama actions.  I want the Court to get an impression -- I want each of these courts to understand we did that because the parties really couldn't agree upon a discovery plan or a litigation plan and that was the Court's decision to bellwether the

litigation, if you will, and put that out front, realizing that some of the issues that may crop up in each of these individual class actions may be presented because we're focusing on one set of the actions along the way along with the global discovery.

Any concerns about that?

MR. BROWN:  No, Your Honor.

THE COURT:  The other thing that I thought would be important is we address discovery to be conducted upon remand, and that makes sense to me.  But I also wonder if that's too narrow, if we ought to be talking about litigation to be conducted upon remand, for example, the class certification issues.  But also, the concept there is I don't know -- when these cases get remanded back, I don't know exactly who will be the counsel on either side.  I mean, you'd probably have a better idea of that than I do.  But I'm almost wondering if the parties -- I ought to take the opportunity to order whatever parties -- whatever counsel are going to be handling these cases, when they go back to the respective parties, that within 30 days they would do a report for the transferor court on these specific litigation issues in each case.

Thoughts on that?

MS. DEMASI:  I think that makes good sense.

THE COURT:  I mean, there's not much we can do to anticipate all those things now, nor should we, but that seems

like it would be very helpful for a transferor judge to see.

One question I had -- this is more of a detail -- and, Tucker, this might be for you and Karen also -- is the heading at the top of page 12, under "Personal Jurisdiction Rulings," I didn't understand the reference to Conway Document 445, and maybe I just was missing that as I moved along.  You were talking about there was -- are you talking about in the Conway case -- and there's multiple Conway cases.  I wonder if we ought to be more specific there, maybe a footnote that indicates a CV number or --

MR. BROWN:  Certainly, Your Honor.

THE COURT:  But you're talking about Document 445 in the Conway -- in one of the Conway actions?

MR. BROWN:  Yes.

THE COURT:  Yeah.  I think that would be helpful.  I'm just thinking if I tripped over that as I reviewed it, somebody else is likely to trip over that as they read it.

MR. BROWN:  That's right, Your Honor.  You have, I think, a great deal more command over the docket than the attorneys.

THE COURT:  Yeah, right.  The other thing is I'm going to put some language in here that says that one of the reasons we didn't have to tackle these issues head-on was because this case was before me under 1407, and under 1407 the panel had transferred all these parties to me for pretrial rulings.  And

so, you know -- and I expressed this before, years ago -- as far as any challenge to in personam jurisdiction in this district or any venue in this district or any of the unique defenses that a party could advance because they were sued in this district, those really weren't time critical or subject matter critical for a transferee judge who's simply handling 1407 centralized cases in the context of being a pretrial manager under that statute.

So obviously, in the Alabama cases, we'll have to address that, because -- to the extent those hang around. Then there'll be time to -- and I promised our friends who raised those issues, you'll get a chance to raise them; there's just no reason for me to take them up right now because it would not change one thing.  But we will take those up in the case.  And I'm going to probably include some language along those lines indicating that those are matters that the transferor courts should address in -- you know, in the appropriate order; okay?

Any questions about that?

(No audible response.)

THE COURT:  Hearing none, we'll move along.

And this may be self-evident, but one of the things I thought that would be helpful to be clear for the transferor courts is in part based on page 17 and some discussion that occurs before and during -- and on that page, I should say,

and that is in some ways the review of these matters had to be divided to some degree when they'd get around to reviewing these matters based upon what occurred once NBE was eliminated.  So as it relates to going forward, injunctive relief, for example, or declaratory relief, for -- I think it would be helpful for the courts to understand that we -- and I think we all agree on this -- that that has to be evaluated based upon the Blues structure without NBEs.  That doesn't mean that's the case with damages up to the point NBE was -- NBE was eliminated.  But I wonder if it wouldn't be helpful for the transferor court to at least have a couple sentences that at least explain that distinction.  If I'm a judge trying to get into this case pretty quickly and understand what I have and what we're dealing with, I think that would be an important component just to digest.

Anybody disagree with that?

MR. BROWN:  No, Your Honor.

MS. DEMASI:  Not at all.

THE COURT:  Okay.  And we already touched on this with Karen's invitation to approach this discussion, but I think it's going to be -- it would be helpful for me to be clear that it will be necessary for each transferor court to rule on class certification in the remanded action with the understanding that there's competing class actions out there and whatever rules your circuit has about those, that's fine.

But that's one thing to -- and again, an explanation -- I'll probably build up a little bit more of the explanation about why I decided, over the defendants' objections, to not deal with class cert as part of the MDL; okay?

All right.  So I think that's my, at least, initial pass through the proposed order.  Does that spur any other thoughts or questions about --

MR. WHATLEY:  There is a placeholder on -- I think it's on page 24 --

THE COURT:  Yeah.

MR. WHATLEY:  -- about the --

THE COURT:  Common benefit issue.

MR. WHATLEY:  -- common benefit issue.  And the only issue is we would like some direction on when you would like us to file the (noise disruption) --

MS. WAUDBY:  We're having trouble hearing at the moment.

THE COURT:  I wonder if that ought to be dealt with outside this order.

MR. WHATLEY:  We think it's not necessary to deal with it in this order.  It's going to be, obviously, a several-month gap between your recommendation and when the MDL panel rules, and that --

THE COURT:  Yeah.  And I want to -- I want to think a little bit -- did the defendants have any position on common

benefit issues?

MS. DEMASI:  We don't, Your Honor.

THE COURT:  I didn't think so.  So I've talked -- I've shared, kind of, quiet counsel with Ed about some of these issues.  I'm still working through in my mind what this ought to look like.  And I'll be -- let me just -- I think it would be fair for me to say this to you:  I am more persuaded that there is a common benefit interest in -- and this is not a judgment, this is not a ruling, this is not even an indication of where I might be.  This the just kind of a -- my thinking as I'm processing through this.  I wonder if there's not a stronger justification for having a common benefit order that says there needs to be a fair procedure for how litigants who've not invested the resources, the time, the financial resources into developing the MDL discovery and other databases, structured and unstructured data, how those -- how -- and anyone who's not shared in the responsibility or costs of acquiring that -- those databases, how that should -- how -- under what terms they should have access to those.

So one of the concerns I have is, for example, if we just get into a transferor court and a plaintiff says to the Blues, Give me everything you've produced in the MDL, and they use a -- there's a side way around having to acknowledge that they're kind of free-riding that way; okay?  So I think that's a big concern and that's why I want the Blues to also buy

in -- although you don't have a position, I'd want you to be comfortable with whatever -- either comfortable with whatever we decide or have an opportunity to push back if you disagree with the -- what we decide on that, so --

MS. DEMASI:  Agree, Your Honor.  It's not a hypothetical concern.  It's (technical disruption) request in related cases presently.

THE COURT:  Yeah.  So -- and that's right, exactly. Having said that, I'm also -- I somewhat question about any type of tax.  For example, what happens if somebody says, Well, we don't want -- we're not going to free-ride at all. We're going to take our action.  We're going to basically not rely upon anything that was done in the MDL.  We're going to do specific discovery on our claims.  Yes, we're going to argue that the standard review order is right and some of these other orders that the Court's put out is right, but those are matters of public record, and they don't -- they don't take advantage of any of the, quote, common benefit, end quote.  I'm not sure under what circumstances I can say that a certain portion of whatever judgment or settlement they yield under that circumstance could be taxed or assessed.

MR. WHATLEY:  Well, Judge, in that example they would be taking the -- trying to take the benefit of the rulings that were -- resulted from the efforts we made, and so they would be trying to take the benefit.

THE COURT:  But they have -- the point is they're not -- they have those arguments based upon the rulings, but the ruling -- whatever I decide -- and this is why I was very clear about why I thought it was so fair for the Blues to have a 1292(b) order and this is why I'm trying to get the Circuit to review this, is I said the Blues should not take a single district judge in the Northern District of Alabama's work for all this.  And I do recall when I -- you know, one opportunity where I was able to sit down with Mr. Serota.  That's what I explained to him is that, Hey, I did my best to get that review.  Well, now it's going to get reviewed because each transferor court's going to have to make its own ruling on that.  This is not precedential.  So there's no law of the case that transfers from the MDL court back to the transferor court, so the transferee court (noise disruption) make argument, this is that Proctor did, this Court ought to do the same.  They're going to have to convince that court --

MS. WAUDBY:  There's a lot of background noise right now.

THE COURT:  Okay.  Maybe everybody turns their mic off while I'm talking and then we'll turn them back on.  How about -- is that better?

MS. WAUDBY:  That's better, yeah, please.  Thank you.

THE COURT:  Thank you.  Yeah, so that's -- I've had to do this before.  I think everybody who's dialing in needs to

mute; okay?  Or else we will get IT to send the death ray to you.  Yeah, we still have somebody who's not muting.  There's background noise.

MS. WAUDBY:  They may have walked away from their phone and they don't hear you.

MS. DEMASI:  It sounds like someone in a kitchen with pots and pans and dishes.

THE COURT:  To some degree, we're all in the kitchen, but if you're literally in a kitchen, I ask that you mute.  I think somebody might have just made -- okay.  We'll keep going.

Well, the point is to introduce the subject, not to decide the issue today, but I'm just telling you I'm struggling with how that ought to play out.

MR. WHATLEY:  Judge, I think it may make more sense to present you the issues in a motion and decide them in the concrete setting --

THE COURT:  I think so.

MR. WHATLEY:  -- what we ask for.  And we appreciate your expression of your thoughts.  Obviously, that guides us.

THE COURT:  Yeah.

MR. WHATLEY:  But to do it in the context of a motion so you're deciding the concrete issue, and I think that would be a more --

THE COURT:  Well, and it's in the context also of this

is a policy issue.  It's a policy issue, not just unique to our case.  It's a policy issue, not unique to our case about how courts ought to be handling these common benefit issues to begin with.  You know, my good friend, Judge Chhabria, in Roundup, has written to that.  And Judge Chhabria -- I think he knows this, but -- Judge Chhabria might have as much credit as any single judge for Rule 16.1 coming along.  At least he convinced a bunch of us at one of these conferences that if he had known about the common benefit issues and been able to think through those before he signed the Roundup common benefit order, he wouldn't have signed it or certainly wouldn't have drafted the order the way he did and then had a lot of work on the back end going back and fixing that.

So one of the things I'm wanting to do is to make sure we don't unfairly treat people who don't have an input into this order -- don't have input into this order at this point, and so I don't know if maybe we consider the idea of opening this up to just not leadership counsel but others who are monitoring this case to weigh in on what a common benefit order ought to be, what limits there ought to be in a common benefit order.  But I approach this with the idea that I'm the judge in this case but also have a lot of background on this issue based upon chairing the MDL rules subcommittee and all the public comment and testimony and all the other submissions we've gotten on this common benefit issue over time.  And I do

reserve the right to call Eldon Fallon; all right?  So we've got to work through this, so that's -- clearly there's a lot of work to do; all right?

MR. WHATLEY:  Judge, one other question.  What -- what is the -- you asked us to submit a limit that, I think -- by "us," I mean all the parties -- some limited additions to the package.

THE COURT:  Yeah, a couple sentences on the things we've discussed.  So yes.  Two weeks?

MR. WHATLEY:  I think that's more than enough time, yeah.

THE COURT:  So let's say two weeks, on the matters that I've indicated on the record today, let's feel free to supplement.  And I'd want you to meet and confer to see if you can agree on the language.  But if you can't, that's all right.  We'll -- I can certainly -- and you-all have done a fabulous job of meeting and conferring and agreeing on this language.  It took a while, but I can see why.  I was surprised I didn't get more of a tit-and-tat response from the parties, so that tells me the parties really worked professionally and well in getting this together.  So let's do that for the next couple weeks.  So we'll say -- let's see -- that's -- May 9 work?

Okay.  Anything else on this first item of the Court's consideration of the suggestion of remand and associated

logistics?

MS. DEMASI:  One last note from the Blues, Your Honor. We obviously appreciate the thoughtfulness that's gone through all of this and the amount of work that's been done in the MDL, and we know Your Honor's view is entitled to great deference, as it should be.  I do want to put down a marker that we are -- we will look at Your Honor's order and the reasons for not deciding class cert ahead of remand, and we do reserve the right and will consider whether to oppose the remand as it's --

THE COURT:  I understand.  I understand that, yeah. So -- and that's something you've been very clear about; you wanted your ruling on class cert.  And I've been equally clear that I don't think that's necessary for these cases to go back.  All right.  And I think that's fair and do not begrudge you a smidge about wanting to present -- preserve that and contest remand based on that.

MS. DEMASI:  Thank you, Your Honor.

THE COURT:  All right.  So next item is next steps in the actions originally filed in the Northern District of Alabama.  Quite frankly, I thought what we would do is have a separate conference about that.  And I don't want to get ahead of myself.  You know, the case isn't remanded yet, so I don't want to have a lot of discussion about things that -- particularly if there's going to be some contest to the

suggestion of remand.  I'm wondering if we can dispatch with this item by saying I promise you if these cases get remanded and I've got the Alabama cases, we're rolling up our sleeves and getting right to work on those.  And it may be class cert's the first thing teed up; all right?

I'll probably require the parties to do what I'm going to ask you to do for each transferor judge and that is give me a report within 30 days of what you think this ought to look like on the front end.  But other than that, I don't want to get too far ahead of ourselves on this issue.

MR. WHATLEY:  Judge, the other thing we would ask you to do when you get to that point -- and you've made it clear that you want to set a pretrial conference before you set a trial date -- is to build into whatever schedule you're working with a pretrial conference so that we can get all that --

THE COURT:  Yeah.  So I've said all along that my philosophy for 20 1/2 years now has been different than a lot of my colleagues.  You don't get a trial date until we pretry the case.  We don't pretry the case until I've ruled on all the motions other than motions in limine and immediate pretrial motions, if you will.  And we will get there, but I've got a process I follow and I'm going to stick to that process.  It's worked well over the years and it also means that we have an orderly process through the case.

MR. WHATLEY:  You notice, Judge, I said pretrial conference first.

THE COURT:  Yeah.  Well, that means -- but you heard me say that we don't pretry the case until we've ruled on all those motions.

MR. WHATLEY:  Sure.

THE COURT:  You know, and part of that is how many times in practice did I show up for a pretrial conference and I didn't know what we were trying.  Summary judgment was still pending.  Now, Judge Clemon, that never happened.  You show up for a pretrial conference, you knew what you were trying.  But not all our colleagues on the Northern District of Alabama used to play that way.  Actually, they weren't my colleagues.  A lot of them were gone by now -- by the time I came on.  But there was nothing more frustrating for me and my client to show up at a pretrial and I have no idea what we're trying.  So that's been my -- one of my polestars is we won't do that.

But I think our provider friends are the ones who suggested this particular item; right?  So I'm just giving you my feedback that I think it's appropriate for us to discuss these things.  I'm not sure it's appropriate to get into a discussion about that when we're dealing with all the centralized actions right now today.

MR. WHATLEY:  That's fine with us, Judge.

THE COURT:  Okay.

MS. DEMASI:  That's fine with us as well, Your Honor.

THE COURT:  I suspected it might be.

All right.  What about any other issues?

MR. WHATLEY:  At this point we can't think of any others, Judge.

MS. DEMASI:  And none from the Blues, Your Honor.

THE COURT:  All right.  Well, we actually had a status conference today and talked about something substantive, didn't we?  All right.  Are we ready to adjourn to our caucuses and we have everybody's permission to caucus as we -- as is the usual format?

MR. WHATLEY:  Sure.

THE COURT:  Okay.  All right.  Well, we'll let Ed be the master of ceremony with respect to the order of the caucuses.  I think he's probably given you-all some feedback and input about how to handle those.  And I'm just going to go where I'm supposed to go and speak to who I'm told to speak to.

(Adjourned accordingly at 10:09 a.m.)

C E R T I F I C A T E

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

Dated:  May 2, 2024

*Pamela G. Weyant*
Pamela G. Weyant, RDR, CRR, CCR
Official Court Reporter