FILED

2024 Jun-28  PM 04:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

# Exhibit A

PATRICK M. RYAN (SBN 203215)
 pryan@bartkolaw.com
OLIVER Q. DUNLAP (SBN 225566)
 odunlap@bartkolaw.com
MARISA LIVESAY (SBN 223247)
 mlivesay@bartkolaw.com
BRITTANY N. DEJONG (SBN 258766)
 bdejong@bartkolaw.com
STEVE VIEUX (SBN 315133)
 svieux@bartkolaw.com
BARTKO LLP
One Embarcadero Center, Suite 800
San Francisco, California 94111
Telephone: (415) 956-1900
Facsimile:  (415) 956-1152

JASON A. ZWEIG (*pro hac vice*)
 jzweig@bartkolaw.com
BARTKO LLP
One South Wacker Drive, 36th Floor
Chicago, Illinois 60606
Telephone: (415) 291-4505

Attorneys for Plaintiffs VHS LIQUIDATING
TRUST, PRIME HEALTHCARE SERVICES,
INC., PRIME HEALTHCARE FOUNDATION,
INC. and PRIME HEALTHCARE
MANAGEMENT, INC.

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF ALAMEDA

| | |
|---|---|
| VHS LIQUIDATING TRUST, et al., <br><br> Plaintiffs, <br><br> v. <br><br> BLUE CROSS OF CALIFORNIA, et al., <br><br> Defendants. | Case No. RG21106600 <br> JAMS Ref. No. 1110029231 <br><br> *Assigned for All Purposes to* <br> *Hon. Noël Wise, Department 21* <br><br> **PLAINTIFFS' MOTION TO COMPEL DEFENDANTS' PRODUCTION OF EXPERT REPORTS AND OTHER MATERIAL FROM RELATED LITIGATION** <br><br> Referee:  Hon. James P. Kleinberg (Ret.) <br><br> Complaint Filed:   July 27, 2021 <br> Trial Date:        None set |

2854.003/1993865.2

## I.    BACKGROUND

For the last 12 years there has been multidistrict litigation pending in the Northern District of Alabama on behalf of a subscriber plaintiff track, comprised of purchasers of Blue Cross and Blue Shield ("BCBS") health insurance, and a provider plaintiff track, pursued by healthcare providers that serve BCBS members. (*See In re Blue Cross Blue Shield Antitrust Litig.* (N.D. Ala. MDL No. 2406) (the "MDL").) That consolidated MDL arose from numerous actions filed in federal courts around the country alleging, as here, that the defendant BCBS insurance plans and their governing Blue Cross Blue Shield Association ("BCBSA") (all together the "Blues") engaged in anticompetitive schemes in violation of the antitrust laws by allocating markets for health insurance into exclusive service areas ("ESAs"), boycotting providers outside of such Service Areas, and illegally fixing prices on reimbursement rates for healthcare. The MDL court entered its final order and judgment approving the subscriber track's settlement with the Blues for $2.67 billion on August 9, 2022. This order was upheld by the 11th Circuit on October 25, 2023.

Plaintiffs Verity and Prime[1] are two healthcare systems that suffered harm from the same anticompetitive conduct alleged in the MDL and filed a standalone action in 2021 under the Cartwright Act and other states' antitrust laws after exercising their rights to opt out of the subscriber track settlement in the MDL to fully pursue their claims in California state court. Nearly eight months ago, Plaintiffs requested certain materials from Defendants[2] as they were

---

[1] VHS Liquidating Trust is the bankruptcy liquidator for Verity Health System of California, Inc., a not-for-profit healthcare services organization that ran six medical centers serving the San Francisco, Los Angeles, and San Jose metropolitan areas ("Verity"). "Prime" refers to nonprofit public charity Prime Health Foundation, Inc., along with Prime Healthcare Services, Inc., and Prime Healthcare Management, Inc., which own and operate hospitals and other healthcare providers throughout the country, including 17 hospitals located throughout California, and 52 facilities in other states.

[2] The Blues who are "Defendants" in the above-captioned action include: BCBSA, Blue Cross and Blue Shield of Alabama, California Physicians' Service d/b/a Blue Shield of California, GuideWell Mutual Holding Corporation and Blue Cross and Blue Shield of Florida, Inc., Blue Cross and Blue Shield of Arizona, Inc., Blue Cross and Blue Shield of Massachusetts, Inc., Blue Cross and Blue Shield of North Carolina, BlueCross BlueShield of South Carolina, BlueCross BlueShield of Tennessee, Inc., CareFirst, Inc., Group Hospitalization and Medical Services, Inc., CareFirst of Maryland, Inc., CareFirst BlueChoice, Inc., Hawaii Medical Service Association,

either filed or produced in the MDL. Yet the Blues, who have been defending themselves from nearly identical allegations in the MDL *for the last twelve years*, have refused to produce these materials in an attempt to delay the discovery process. Defendants insist that despite the fact that Plaintiffs seek documents directly related to their claims here, based upon the same anticompetitive conduct that is the subject of the MDL, they have no obligation to produce these materials off the shelf.

Plaintiffs seek these materials from the MDL because the court there made several key rulings that are equally applicable to Plaintiffs' claims here. For example, in 2005, the Blues implemented the National Best Efforts ("NBE") rules,[3] which required a Plan to derive at least sixty-six and two-thirds percent of its national health insurance revenue from its Blue brand. As a result, any revenue a Blue Plan generated from services offered under any non-Blue brand was limited in relation to its Blue branded revenue, thereby operating as an output restriction on a Plan's non-Blue brand business.

In ruling on Defendants' motion for summary judgment, the MDL court specifically found that "Plaintiffs . . . presented evidence of an aggregation of competitive restraints . . . which, considered together, constitute a *per se* violation of the Sherman Act." (*In re Blue Cross Blue Shield Antitrust Litig.* (N.D. Ala. 2018) 308 F.Supp.3d 1241, 1267.) The MDL court further held "the Rule 56 evidence in the record supports the proposition that the allocation of areas was the result of" the alleged unlawful conduct. (*Id.* at p. 1268.) "[T]here is little question that, properly

Wellmark of South Dakota, Inc. and Wellmark, Inc. (together the "Cravath Defendants"); Elevance Health, Inc., and all of its named subsidiaries in this action, Louisiana Health Service & Indemnity Company (Blue Cross and Blue Shield of Louisiana), BCBSM, Inc. (Blue Cross and Blue Shield of Minnesota), Aware Integrated, Inc., Horizon Healthcare Services, Inc. (Horizon Blue Cross Blue Shield of New Jersey), Blue Cross & Blue Shield of Rhode Island, Cambia Health Solutions, Inc., Regence BlueCross BlueShield of Utah, Regence BlueShield (of Washington), and Regence BlueCross BlueShield of Oregon (together, the "HL Defendants"), and Health Care Service Corporation (including its unincorporated divisions), Caring for Montanans, Inc., and Highmark Inc. f/k/a Highmark Health Services, Highmark BCBSD Inc. and Highmark West Virginia Inc. (together, the "Kirkland/Redgrave Defendants").

[3] Defendants eliminated the NBE rule in connection with the settlement between subscriber plaintiffs and the Blues in the MDL action.

analyzed, [Defendants' conduct] is an output restriction. Output restrictions have been called one of the 'most important per se categories . . . .'" (*Id*. at p. 1272 [citation omitted].) "The undisputed evidence before the court establishes that, in 2005, Defendants adopted . . . an output restriction on a Plan's non–Blue business . . . [that] constitutes a *per se* violation of the Sherman Act, particularly when layered on top of other restrictions Defendants have placed on competition." (*Id*. at p. 1273.)

There is therefore substantial support for Plaintiffs' allegations that Defendants harmed them by reducing the competition that each Blue faces in its ESAs, and permitting it to underpay providers for healthcare services dispensed to patients who were and are insured by Defendant Blues or included in employee benefit plans administered by Defendant Blues. (Second Amended Complaint ("SAC"), ¶¶ 28-31, 107, 117, 125.)

The parties have met and conferred on multiple occasions but following that effort, counsel for Defendants advised Plaintiffs that they were unwilling to produce the requested materials. As set forth in greater detail below, none of their objections have merit and the materials should be produced to Plaintiffs without haste.

## II.   <u>DISCOVERY IN DISPUTE</u>

Plaintiffs' First Set of Requests for Production ("RFP(s)") to All Defendants, issued on July 3, 2023[4], included requests for specific categories of documents from the related MDL, including documents the Defendants have in fact already produced as part of discovery, or filed as part of the public record in that litigation. These include expert reports, deposition transcripts, hearing transcripts, unredacted court filings, and third-party claims data.[5] (Declaration of Marisa C. Livesay in Support of Plaintiffs' Motion to Compel Defendants' Production of Expert Reports and Other Material from Related Litigation ("Decl."), Ex. A [7/3/23 Plaintiffs RFPs, RFP Nos. 14-17 and 19].) Because the requested reports, transcripts, filings and data are not privileged, are

---

[4] Pursuant to the parties' agreement, the motion to compel deadline is June 5, 2024.

[5] Plaintiffs continue to meet and confer with Defendants regarding certain requests, including the third-party claims data. Plaintiffs will therefore file a separate motion to compel if the parties are unable to reach a resolution with respect to other issues not raised herein.

relevant to the subject matter of this action, and are reasonably calculated to lead to the discovery of admissible evidence, they are discoverable, and Defendants are obligated to produce them. If anything, this is exactly what Code Civ. Proc. § 2017.010 describes as the point of discovery—to obtain "the identity and location of persons having knowledge of any discoverable matter, as well as of the existence, description, nature, custody, condition, and location of any document . . . ." (*See also Flagship Theatres of Palm Desert, LLC v. Century Theatres, Inc.* (2011) 198 Cal.App.4th 1366, 131, as modified on denial of reh'g on other grounds, (Sept. 29, 2011) and review denied, (Nov. 30, 2011) [independent movie theater operator's discovery, in an antitrust action against a competing chain alleging circuit dealing, was not limited to the geographic area in which the independent operator and competitor competed, as the essence of the independent operator's claim was that the competitor had used its power outside of their shared market to influence competition within their market, and the independent operator could not gather evidence in support of that claim if it was limited to collecting evidence within their market].)

Instead, all of the Defendants made the same initial objections to each of these requests, and have continued to maintain the same positions on the RFPs throughout the meet and confer process, with some limited exceptions. (*See, e.g.,* Decl., Exs. B, C, D [sample Cravath, Hogan & Lovells, and Redgrave Defendants' responses to 7/3/23 RFP No. 14]; *see also* Exs. E, P, F, G [10/2/23 Cravath Letter to Plaintiffs, 3/27/24 Cravath Letter to Plaintiffs, Hogan & Lovells Letter to Plaintiffs 3/29/24, Redgrave Letter to Plaintiffs 3/25/24].)[6]

First, Defendants generally objected to all of these requests on the basis of relevance and breadth. But Evidence Code § 210 defines "relevant evidence" as "evidence, including evidence relevant to the credibility of a witness or hearsay declarant, having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." In addition, "[t]he scope of discovery is very broad" in California and includes admissible evidence as well as matters that "appear reasonably calculated to lead to the discovery of admissible

---

[6] The HL and Kirkland/Redgrave Defendants have adopted the positions of the Cravath Defendants with respect to RFP Nos. 14-17 and 19.

evidence." (*Tien v. Superior Court* (2006) 139 Cal.App.4th 528, 535.) Each of the categories of documents requested here meet that standard. The MDL involves the same defendants, similarly situated plaintiffs, and nearly identical allegations of a nationwide conspiracy and anticompetitive agreements, as well as likely defenses, to those present in this case. Under such circumstances, courts frequently permit discovery of materials from related actions (*See, e.g., Finjan, Inc. v. Zscaler, Inc.* (N.D. Cal., Apr. 9, 2019, No. 17-CV-06946-JST-KAW) 2019 WL 1543514, at *3 [Defendant ordered to produce discovery responses from prior litigation as well as "deposition transcripts, expert reports, or declarations from its own witnesses . . . ."]; *Glaukos Corporation v. Ivantis, Inc.* (C.D. Cal., Sept. 4, 2019, No. 8:18-CV-00620-JVS-JDE) 2019 WL 12536180, at *2-5 [granting motion to compel materials from other litigation, including "(1) expert reports; (2) non-attorney declarations; (3) infringement and validity contentions; (4) deposition transcripts and exhibits; and (5) [opposing party's] interrogatory responses."]; *DNA Genotek Inc. v. Spectrum Solutions L.L.C.* (S.D. Cal., Dec. 14, 2021, No. 21CV516-DMS-LL) 2021 WL 5908985, at *4 [granting motion to compel documents involving two arbitrations regarding similar claims]; *ParkerVision, Inc. v. Qualcomm Inc.* (M.D. Fla. July 17, 2013, No. 3:11-cv-719-J-37-TEM) 2013 WL 3771226, at *1-2 [finding that prior expert deposition transcripts, expert reports and trial testimony are relevant and discoverable as fact discovery even from unrelated patent litigation since it involves the same experts]; *Hussey v. State Farm Lloyds Ins. Co*. (E.D. Tex. 2003) 216 F.R.D. 591, 592-595 [ruling that any and all reports regarding the same type of claims prepared by experts for the Defendants were discoverable because they were relevant to determining a matter in dispute and would not cause any undue burden].) As in those cases, the requests at issue here are narrowly tailored and not unduly burdensome since they are targeted to unearth relevant information and limited in scope in that they relate to specific categories of documents that Defendants have already produced and can easily access. In fact, for RFP No. 17 (requesting unredacted court filings), Plaintiffs have agreed to further narrow that request by excluding certain documents. Also as in those matters where courts have ordered similar productions, the requested documents are not privileged, nor will they cause any undue burden or expense.

**A.    Defendants Should be Ordered to Produce the Expert Reports from the MDL**

Defendants have refused to produce expert reports and backup materials from the MDL action in response to RFP No. 14. (*See, e.g.,* Decl., Ex. B [Cravath Response to 7/3/23 RFP No. 14].) But expert material from related cases is routinely permitted by courts in discovery. (*See, e.g., National Steel Products Co. v. Superior Court* (1985) 164 Cal.App.3d 476, 492-493 [expert report prepared to assist defendant's counsel in prior litigation obtained by defendant's California counsel as background material in preparation for subsequent litigation was discoverable in the subsequent litigation to the extent relevant to the issues raised in such litigation]; *Acosta v. Nuzon Corp.* (C.D. Cal., Oct. 18, 2017, No. 816CV00363CJCKESX) 2017 WL 8231048, at *5 [granting motion to compel production of an expert's reports authored in connection to past cases]; *Whitaker v. ELC Beauty LLC* (C.D. Cal., Aug. 20, 2020, No. 819CV00407DSFJDEX) 2020 WL 5834293, at *3 [motion to compel granted as to party's request for all expert reports authored by party's expert that were prepared for prior lawsuits involving similar allegations].) In a separate opt-out litigation that is currently pending in Alabama, the MDL Court recently granted the opt-out plaintiffs' motion to compel production of the expert reports from the MDL Action. (Decl., Ex. H [*Alaska Air Group, Inc., et al. v. Anthem, Inc., et al.*, Mem. Opinion and Order, No. 2:21-cv-01209-RDP, Dkt. 401 (Jan. 30, 2024) (hereinafter "*Alaska* Expert Order")].) The court found that the expert reports were relevant since they address "the same questions" at issue in the opt-out cases and that "prior litigation positions regarding the same claims are relevant to the claims and defenses in [the] subsequent nearly identical litigation." (*Id.* at p. 4.) As the MDL Court concluded, "discovery of Defendants' expert reports produced in the MDL is actually fact discovery." (*Id.* At pp. 3-4, citing *Colonial BancGroup Inc. v. PriceWaterhouseCoopers LLP* (M.D. Ala. Jan. 22, 2016, No. 2:11-cv-746-WKW) 2016 WL 9687001, at *2 ["the Court views the discovery of . . . expert deposition testimony in other cases as *fact discovery* in this case"].)

The MDL Court rejected the exact same arguments Defendants raise here that Plaintiffs' request for MDL expert reports is overbroad, untethered to the subject matter under dispute and not proportional to the needs of the case. (Decl., Ex. H  at pp. 4-6 [*Alaska* Expert Order].) As the MDL Court pointed out, "[t]hese cases have a more direct connection to the prior litigation than in

the situation where reports were produced in other cases" because the claims asserted are the same, and because "the expert reports address the same questions that existed in the MDL," such as product market definition, whether that market is two-sided, and the impact of the challenged restraints. (*Alaska* Expert Order at p. 4.)

Defendants have pointed Plaintiffs to the summaries of the expert reports submitted in the MDL as they are available on the MDL docket, and informed Plaintiffs that they would only be willing to produce "the MDL expert reports during expert discovery for any experts that Defendants disclose in this case." (*See, e.g.,* Decl., Ex. P at p. 3 [Cravath 3/27/24 Letter].) But Plaintiffs cannot agree to that unnecessary delay, and a review of the summaries of the expert reports demonstrates their inherent relevance to this action since they either dealt with the same types of claims or defenses, or applied to a type of plaintiff similarly situated to Plaintiffs here. By way of example, we provide a short analysis of certain of those expert summaries as follows for reference:

1.      Dr. Lawrence Wu: Dr. Wu opined on issues of market power and market definition in health care markets. (Decl., Ex. I ¶ 8 [MDL Dkt. 2488].) In his report, he explains "that ASO [administrative services only] plans are not viewed as substitutes for fully-insured products from the perspective of all employers." (*Id.* at ¶ 15.) This is relevant here because he offered opinions regarding the relevant product market and both Plaintiffs purchased administrative services only plans and/or were fully insured by the Blues in connection with their employer-sponsored health plans during a portion of the relevant time period.

2.      Dr. Janusz Ordover: Dr. Ordover opined on insurer market entry and injury to class members as a result of the alleged anti-competitive conduct. Dr. Ordover opined in the MDL that entry into most areas at issue there would be unlikely in the "'but-for world' (*i.e.*, in the absence of the Blue rules challenged in this case) and even if entry were to have occurred, the characteristics of the healthcare market indicated that the impact of such entry would have varied widely across both the Subscriber and Provider proposed classes.(Decl., Ex. J ¶ 2 [MDL Dkt. 2489].) The impact of the Defendants' conduct on insurer entry and relatedly, its impact on providers and subscribers,

such as Plaintiffs, is a key issue in this action.

3.    Dr. Kevin Murphy: Dr. Murphy opined on the impact of the Blue Plans' challenged conduct, with a focus on the impact of the challenged rules on market entry. From the summary of his report there appear to be several areas where his testimony is relevant to our action. (Decl., Ex. K [MDL Dkt. 2485].) He opined that contrary to Plaintiffs' position, "evidence from current areas of limited Blue on-Blue competition does not support Plaintiffs' claims" of an supra-competitive premium prices. (*Id.* at ¶ 10.) He also argued that the Defendants' challenged rules, such as the BlueCard program, have "strong procompetitive benefits" and "solve longstanding inefficiencies in serving national accounts." (*Id.* at ¶ 11.) This is a defense Defendants have already raised in this action.

4.    Dr. Deborah Haas-Wilson: Dr. Haas-Wilson opined on the harm provider class members suffered, who are similarly situated to Plaintiffs, as a result of Defendants' anticompetitive conduct. Dr. Haas-Wilson concluded that the "Blues' market allocation agreements on provider contracting, market allocation agreements on selling health insurance and administrative services, and price fixing agreements (the "At-Issue Agreements") have limited the number of commercial buyers in Alabama, and, therefore, have harmed providers in Alabama, both by suppressing the prices paid to providers for healthcare services delivered to Blue Plan enrollees and by limiting the number and variety of choices available to providers." (Decl., Ex. L  at p. 3 [MDL Dkt. 2414].) Her "but-for" analysis compared areas where Blue Plans do compete in the same service area with areas where there is no such competition. (*Id.* at p. 6.)

5.    Dr. Daniel J. Slottje: Dr. Slottje analyzed damages for the class of acute-care provider plaintiffs, who are similarly situated to Plaintiffs here, who also bring claims arising from their provision of acute-care services to the Blues' insureds. (Decl., Ex. M at p. 1 [MDL Dkt. 2412].)

6.    Dr. H.E. Frech: Dr. Frech explained the history and economics of the health insurance industry in the U.S., including origin and development of the Blues. His testimony included the analysis and description of "the anticompetitive actions taken by the BCBSA to maintain the Blues' market power as a system." (Decl., Ex. N at p. 4 [MDL Dkt. 2413].) Plaintiffs' claim are similarly based in large part on the Blues' business model and their market power as a system.

7.    Dr. Ariel Pakes: Dr. Pakes examined and modeled entry by Blue Plans into Alabama in a but-for world without ESAs and the NBE rule. He opined "that by preventing entry and reducing competition, ESAs and NBEs have harmed consumers," a key allegation in this action. (Decl., Ex. O at ¶ 6 [MDL Dkt. 2411].)

8.    Dr. Daniel Rubinfeld: Dr. Rubinfeld opined as to commonality of liability and anticompetitive impact between members of both the proposed Nationwide Injunctive Relief Class and the proposed Alabama Damages Class. His relevant conclusions were that the Blues' ESAs and NBEs lead to" (a) higher insurance premiums; (b) lower quality service; (c) a reduction in output; (d) less innovation; and (e) fewer choices among insurance providers both as to services and products." (Decl., Ex. O  at ¶ 4 [MDL Dkt. 2485].)

Despite the fundamental parallels between the allegations in this case and those in the MDL, and the crossover of the expert analysis demonstrated above, Defendants also argue that the disclosure of the expert reports would be disproportional. (Decl., Ex. E [10/2/2023 Letter From Cravath Defendants to Plaintiffs].) However, this invocation of any purported proportionality requirement under California law to prevent disclosure of the expert reports is misplaced. Under the provision in Code Civ. Proc. § 2017.020 that discovery must be limited if "the burden, expense, or intrusiveness of that discovery clearly outweighs the likelihood that the information sought will lead to the discovery of admissible evidence," it is well established that "the party opposing discovery has an obligation to supply the basis for this determination." (*Williams v. Superior Ct*. (2017)  3 Cal. 5th 531, 549.)[7] But there is absolutely no burden for Defendants to produce 17 expert reports and their backup materials which Defendants undoubtedly have access to, especially in light of the fact that the provider side of the MDL is ongoing. Further, the MDL Court found that production of expert materials was in fact proportional to the needs of the case in the same scenario present here because: (1) the issues involved are "crucial," (2) the "amount in

---

[7] Defendants cite a similarly phrased provision in Code Civ. Proc. § 2031.310(g)(4), which governs when a court "shall limit the frequency or extent of discovery of electronically stored information, even from a source that is reasonably accessible" with respect to a motion to compel electronically stored information. (Decl., Ex. P at p. 1, fn. 2 [3/27/24 Letter from Cravath to Plaintiffs].)

controversy is substantial," (3) "Defendants have easy access to the requested information" with a "virtually non-existent" burden or expense to produce, while Plaintiffs only have summaries of the reports, and (4) "confidentiality concerns are resolved" by the parties' protective order. (Decl., Ex. H at 5 [*Alaska* Expert Order].)

Defendants' complaint that Plaintiffs are seeking material improper for fact discovery to get an "early, non-reciprocal leg-up on *expert* discovery" is a red herring. (Decl., Ex. P [3/27/24 Letter from Cravath to Plaintiffs at 2].) It is not clear whether Defendants will use the same experts in this action, and the MDL Court rejected a similar argument by the Defendants in the opt-out litigation. (Decl., Ex. H at 5 [*Alaska* Expert Order].) As the MDL Court pointed out, the Defendants themselves have already had access to the MDL *plaintiffs' expert reports* since they have been involved in the MDL litigation for "the better part of a decade." (*Id.* at 5) (emphasis added). Defendants therefore have had ample opportunity to analyze those opinions – which may ultimately may be similar to Plaintiffs' experts analysis. Therefore, Plaintiffs will not gain any discernable advantage from their disclosure. In actuality, Plaintiffs will be at a disadvantage if this motion is denied since as a non-party, they do not have access to the MDL expert reports that the Defendants have long had access to.

Further, the MDL Court emphasized that "***requests seeking production of all documents produced in the MDL***, ***including the expert reports, seek fact discovery*** . . . ." (*Id.* at 4 [emphasis added].) The MDL Court is not alone in finding that filed, non-privileged, final expert materials from related cases are subject to discovery. As a Northern District of California Magistrate has emphasized, "[i]nspecting your opponent's materials or obtaining or accessing data or information is fact discovery . . . . Just because you want access to materials for the purpose of enabling your expert to conduct an analysis and write a report doesn't mean you're asking for expert discovery." (*Finjan, LLC v. Qualys Inc*. (N.D. Cal. Nov. 10, 2020, No. 18-CV-07229-YGR-TSH) 2020 WL 6581836, at *1.) (*See also Infernal Tech., LLC v. Microsoft Corp*. (E.D. Tex. May 3, 2019, No. 2:18-cv-00144-JRG) 2019 WL 5388442, at *1-2 [granted motion to compel plaintiffs' expert reports from previous litigation because "Plaintiffs' prior litigation positions regarding the same claims asserted in this case are relevant to the claims and defenses in this case"]; *Apple Inc. v.*

*Samsung Electronics Co*. (N.D. Cal. June 26, 2013, No. 12-cv-0630-LHK-PSG) 2013 WL 3246094, at *22 [ordering production of documents from other litigation involving same technology, including damages expert reports].)

As in the opt-out matters, the MDL expert reports are relevant to this action because they touch directly on the issues to be litigated and address the same claims and defenses. (*See* Code Civ. Proc. § 2017.010.) Given the facts and law in support of our position, Defendants should produce the MDL expert reports and backup materials in this action.

**B.      Defendants Should be Ordered to Produce MDL Deposition Transcripts**

Plaintiffs have also requested all deposition transcripts from the MDL Action. (*See e.g.,* Decl., Ex. A [7/3/23, Plaintiffs' RFP No. 15].) During the meet and confer process, Defendants asked Plaintiffs to first identify "the specific topics on which they are interested in testimony and from which categories of deponents," after which Defendants said they would evaluate what "they may agree to produce and under what conditions."  (Decl., Ex. E at pp. 3-4 [10/2/23 Cravath Letter to Plaintiffs]; *see also* Ex. F at p. 2 [10/20/23 Hogan & Lovells Letter to Plaintiffs].) Just recently, Defendants advised Plaintiffs that they are willing to produce transcripts of their employees' and former employees' depositions. (*See, e.g.,* Decl. Ex. E at p. 3 [3/27/24 Cravath Letter to Plaintiffs].) Plaintiffs contend however, that they are entitled to all requested deposition transcripts and Defendants' offer to produce that limited category of transcripts is insufficient. Depositions taken in the MDL of people in various roles in relation to the Blues' anticompetitive conduct are all relevant to Plaintiffs' claims here, including but not limited to, the various parties' experts, similarly situated MDL plaintiffs, self-insured employers, third party benefits administrators, other non-party insurers, and the Blues and their employees who participated in the conspiracy, but are no longer Defendants because their motion to quash was granted.

For the same reasons mentioned above regarding expert materials from the MDL Action, such transcripts are clearly relevant to this matter and should be produced. They clearly cover the same legal claims and defenses in the action. (*Apple Inc. v. Samsung Electronics Co.* (N.D. Cal. Apr. 12, 2012, No. 11-cv-1846-LHK-PSG) 2012 WL 1232267, at *5 [granting motion to compel production of deposition transcripts from "actions bearing a technological nexus to this case"];

*Largan Precision Co. v. Samsung Electronics Co.* (S.D. Cal., Feb. 9, 2015, No. 13-CV-2740 DMS (NLS)) 2015 WL 11251729, at *2 [granting motion to compel depositions taken in a prior suit and advising that "[t]o the extent that these depositions were designated as confidential and are subject to a protective order in the [related] case, [the parties] shall appear before Judge . . . in order to seek relief from the protective order for the transcripts deemed confidential."); *Infernal Tech., LLC v. Microsoft Corp.* (E.D. Tex. May 3, 2019, No. 2:18-cv-00144-JRG), 2019 WL 5388442, at *1-2; *Apple Inc. v. Samsung Electronics Co., supra*, 2013 WL 3246094, at *22.) The subject matter of the depositions deals with the same nationwide anticompetitive agreements and conspiracy alleged here such that all of the deposition transcripts are relevant to the action and can lead to the discovery of admissible evidence. Further, they comprise a narrow and specific category of the MDL documents which are easily accessible to Defendants, and therefore, not unduly burdensome for Defendants to produce.

        **C.**      **Defendants Should be Order to Produce Unredacted Filings and Hearing Transcripts from the MDL**

Plaintiffs' requests for all unredacted filings and hearing transcripts from the underlying MDL is also justified under the broad California discovery standard. (Decl., Ex. A [7/3/23, Plaintiffs' RFP Nos. 16 and 17].) In their meet and confer correspondence, Defendants provided indices to Plaintiffs that purportedly listed certain redacted filings in the public MDL docket and requested that Plaintiffs identify the specific documents they would like to access in unredacted form. (Decl., Ex. E at p. 4 [10/2/23 Letter from Cravath to Plaintiffs].) Plaintiffs informed Defendants that they believe all of the documents included in the indices should be produced in response to these RFPs, less certain identified documents. (*See, e.g.,* Decl., Ex. Q at p. 5 [2/27/24 Letter from Plaintiffs to Cravath].) Defendants' correspondence to date does not provide a clear answer as to whether they plan to produce documents responsive to this request.

Plaintiffs are entitled to the unredacted filings and hearing transcripts for the same reasons mentioned above as they relate to the other material from the MDL. The filings and transcripts from the MDL are clearly relevant since they deal with the same antitrust claims and allegations over the same alleged nationwide conduct and agreements involved in this action. In such

situations, courts have granted similar motions to compel. (*See e.g., Finjan, Inc. v. Zscaler, Inc., supra*, 2019 WL 1543514, at *3 [Defendant ordered to produce its own discovery responses from prior litigation as well as "deposition transcripts, expert reports, or declarations from its own witnesses…"]; *Glaukos Corporation v. Ivantis, Inc., supra*, 2019 WL 12536180, at *2-5.) Further, since Plaintiffs are not parties to the MDL Action, they would not have access to the items they are requesting through the public docket to the extent they are not publicly available, or would have to incur substantial fees to obtain them.

In terms of burden, Plaintiffs are not requesting that Defendants reproduce the entire docket, just unredacted copies of the filings and hearing transcripts, *less* certain specific documents. The probative value of these requests outweighs any burden to the Defendants.

Recently, Defendants stated that there is only one hearing transcript that is redacted. (Decl. Ex. P at p. 4 [3/27/24 Cravath Letter to Plaintiffs].) But this ignores the fact that hearing transcripts are not available through Pacer, and even if they were, Plaintiffs would have to incur substantial expense in downloading these documents. They also refer to an order from the MDL court prohibiting the release of an unredacted copy of the document to anyone other than those involved in the redaction process. (*Id.*) But they have not explained, however, why they cannot get a Court order to allow them to disclose this document in response to a valid discovery request in a matter with a governing protective order.

Also recently, in regards to RFP No. 17, the Defendants stated that their planned reproduction of documents from the MDL will include many sealed filings in unredacted form. (*Id.*) They propose that after Plaintiffs review the MDL reproductions, if they find that there are sealed documents they seek but remain unproduced, Defendants will consider a request for such documents. Defendants' proposal still does not guarantee, however, that they will produce such documents upon request. In addition, Defendants conflate what Plaintiffs seek in this request— specifically what they, and others *filed* in the MDL, and what they're telling us they are going to produce—a reproduction of the documents they *produced* in the MDL. That is a distinction Plaintiffs are unwilling to gloss over.

**III.     CONCLUSION**

Plaintiffs respectfully request that the Court compel Defendants to produce all documents responsive to their requests for material related to the MDL, including RFP Nos 14-17 and 19.

DATED:  March 29, 2024                    BARTKO LLP

By: _____
Patrick M. Ryan
Attorneys for Plaintiffs VHS LIQUIDATING TRUST, PRIME HEALTHCARE SERVICES, INC., PRIME HEALTHCARE FOUNDATION, INC. and PRIME HEALTHCARE MANAGEMENT, INC.