FILED

2024 Jun-28  PM 04:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

# Exhibit B

CHRISTOPHER J. KELLY (SBN 276312)
cjkelly@mayerbrown.com
MAYER BROWN LLP
3000 El Camino Real, Suite 300
Palo Alto, CA 94306
Tel: (650) 331-2025
Fax: (650) 331-2060

KARIN A. DEMASI (*pro hac vice*)
kdemasi@cravath.com
LAUREN R. KENNEDY (*pro hac vice*)
lkennedy@cravath.com
DAVID H. KORN (*pro hac vice*)
dkorn@cravath.com
LILLIAN S. GROSSBARD (*pro hac vice*)
lgrossbard@cravath.com
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Tel: (212) 474-1000
Fax: (212) 474-3700

*Counsel for Defendant Blue Cross Blue Shield Association*
*Counsel for additional Defendants listed below*

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF ALAMEDA

|  |  |
|---|---|
| VHS LIQUIDATING TRUST, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>BLUE CROSS OF CALIFORNIA, et al.,<br><br>Defendants. | Case No. RG21106600<br><br>*Assigned for All Purposes to*<br>*Hon. Noël Wise, Department 21*<br><br>*Referred to Hon. James P. Kleinberg (Ret.) to*<br>*issue recommendations as Discovery Referee*<br><br>**DEFENDANTS' OPPOSITION TO**<br>**PLAINTIFFS' MOTION TO COMPEL**<br><br>Complaint Filed:    July 27, 2021<br>Trial Date:          None set |

Defendants respectfully request that the Discovery Referee issue a report and recommendation denying the March 29, 2024 Motion of Plaintiffs VHS Liquidating Trust, the bankruptcy liquidator for Verity Health System of California, Inc. ("Verity"),[1] and Prime Healthcare Services, Inc., Prime Healthcare Foundation, Inc. and Prime Healthcare Management, Inc. (collectively, "Prime", and together with Verity, "Plaintiffs"), which seeks to compel Defendants to produce certain irrelevant, duplicative and otherwise unduly burdensome and prejudicial materials from *In re Blue Cross Blue Shield Antitrust Litigation (MDL No. 2406)* (N.D. Ala.) No. 2:13-cv-20000 (the "MDL").

## **INTRODUCTION**

Plaintiffs' motion puts the cart before the horse:  Plaintiffs seek to compel production of a wide range of prior litigation materials from the Alabama MDL without ever articulating how or why those materials might be relevant to their case.  The vast majority are not.  Of the subset that might bear some relationship to this litigation, Plaintiffs are already getting many through other means (*i.e.*, through certain re-productions of MDL documents and data that Defendants have *already agreed* to make), and the remainder are materials that either (i) are not the proper subject of fact discovery (*e.g.*, expert reports of individuals *who have not even been disclosed as experts in this case*), or (ii) are not items that Defendants could permissibly produce even if they wanted to (*e.g.*, documents and data *that belong to third parties* that may not be disclosed pursuant to the terms of the MDL Protective Order).  Defendants have explained all of this to Plaintiffs—and have even offered compromises to avoid the present dispute—but Plaintiffs filed this motion rather than complete the meet-and-confer process.  Plaintiffs' motion should be denied.

Plaintiffs seek to compel the production of three categories of materials from the MDL:  (1) all expert reports and backup materials served by MDL plaintiffs and defendants; (2) all deposition transcripts; and (3) unredacted copies of all sealed filings and hearing transcripts.  Their requests cover an extraordinary volume of materials—32 expert reports[2] and hundreds of documents and terabytes of data on which those experts relied; over 300 deposition transcripts of every party and non-party

---

[1] Defendants refer to Plaintiff VHS Liquidating Trust as "Verity" herein because the underlying facts and claims concern Verity rather than the bankruptcy liquidator.

[2] Plaintiffs are incorrect that there were 17 reports served in the MDL.  (Plaintiffs' Motion to Compel ("Mot.") at 10.)

deposed in the MDL; and hundreds of documents filed under seal—regardless of whether any specific item is relevant to this litigation.  In support of these broad demands, Plaintiffs rely almost exclusively on the argument that these materials must be produced because—according to Plaintiffs—"[t]he MDL involves the same defendants, similarly situated plaintiffs, and nearly identical allegations" to those Plaintiffs make here.  (E.g., Mot. at 6.)  That is wrong and insufficient to justify the requested discovery in any event.  As explained below, the MDL streamlined putative class action claims of Alabama healthcare providers and Alabama health insurance subscribers.  Under the governing streamlining order, much of the discovery (in particular, the expert discovery) focused on the claims of those Alabama individuals and entities, *not* the claims of health systems predominantly focused on California that Plaintiffs bring here.[3]  Nor do generic, unsupported statements of overlap justify the burden of requiring Defendants to produce more than they have already agreed to produce: Defendants are already producing tens of millions of documents and enormous quantities of data from the MDL—a fact Plaintiffs omit from their motion.  Defendants have not agreed to produce the remainder because it is not appropriate discovery under California law.

*First*, Plaintiffs' demand for all MDL expert reports and backup materials ("MDL Expert Materials") is improper, overly broad and unduly burdensome.  It calls for the production of materials that have nothing to do with this case (including of experts who have not been—and most who never will be—disclosed as experts in this case), as well as materials that Defendants are not even allowed to produce under the governing MDL Protective Order.  The request is also premature and prejudicial:  it seeks one-sided, early expert discovery—*more than eight months* before the Parties have agreed to disclose expert materials under the trial schedules just submitted to Judge Wise—and on terms that will not be reciprocal as between the Parties.  Plaintiffs' request should be denied.  (See Section I, infra.)

*Second*, Plaintiffs' demand for all party and non-party MDL deposition transcripts, regardless of the deponent and subject matters covered, likewise seeks irrelevant materials.  It is also premature

---

[3] To be sure, there was fact discovery conducted in the MDL that is relevant to this case.  That is why each Defendant *has already agreed* to re-produce to Plaintiffs the entirety of its MDL document productions.  Furthermore, Defendants who received Requests for Production for data have likewise offered to reproduce the relevant portions of their MDL data productions to Plaintiffs.

2

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL; CASE NO. RG21106600

because there is no impasse with respect to the request. Defendants offered to consider producing the transcripts of all MDL depositions taken of their own current and former employees—the only transcripts Defendants have the authority to produce under the terms of the MDL Protective Order—as part of an agreed deposition protocol. Instead of engaging in that conversation, Plaintiffs moved to compel. Plaintiffs' refusal to participate in legitimate meet-and-confer negotiations should not be rewarded. (See Section II, infra.)

*Third*, Plaintiffs' demand for unredacted versions of all sealed filings and hearing transcripts from the MDL is likewise not ripe. Defendants have already agreed to produce relevant, responsive documents from the MDL that they have the authority to produce, including the entirety of their respective MDL document productions. The remaining sealed filings generally contain confidential, and in many cases irrelevant and immaterial, non-party information that Defendants cannot produce under the terms of the MDL Protective Order. Even so, Defendants agreed to consider specific requests for particular sealed MDL materials, to the extent (i) Defendants have the authority to produce any requested document and (ii) the document was not already re-produced by Defendants through other means. Plaintiffs have yet to identify any such document. (See Section III, infra.)

### MDL DISCOVERY BACKGROUND

The MDL is an ongoing multidistrict litigation consolidated in the Northern District of Alabama. It comprises numerous individual and class action cases brought by subscribers of one or more Blue Cross Blue Shield health plans ("Blue Plans") (the Subscriber-Track case), which have now been settled, and providers with whom one or more Blue Plans contract to provide health care services (the Provider-Track case) alleging the defendants violated federal antitrust laws. (*In re Blue Cross Blue Shield Antitrust Litig. (MDL No. 2406)* (N.D. Ala.) No. 2:13-cv-20000.) In the interests of streamlining pretrial proceedings across cases, the MDL court focused discovery (including expert discovery) on class certification and merits issues specific to two cases originally filed in Alabama. (Grossbard Decl. ("Grossbard"), Ex. 1 at 4-5.) Expert discovery, in particular, focused on Alabama. For example, the parties exchanged a number of expert reports focused solely on Alabama issues and certifying an Alabama class. (See Section I.A.i., infra.) Deposition discovery likewise did not center on California, but rather focused on individuals and entities located in Alabama. (See Section II,

infra.)  Indeed, the California Court has previously recognized the differences between this case and the MDL, observing that it "will not expand [its] reach . . . to make the case a substitute for the federal MDL".  (Order Sustaining Defendants' Demurrer at 12 (June 1, 2022).)

## LEGAL STANDARD

"Although the scope of civil discovery is broad, it is not limitless.  [Section 2017, subdivision (a)] provides that matters are subject to discovery 'if the matter either is itself admissible in evidence or appears reasonably calculated to lead to the discovery of admissible evidence.'  The burden rests upon the party seeking the discovery to provide evidence from which the court may determine these conditions are met."  (*Calcor Space Facility, Inc. v. Superior Ct.* (1997) 53 Cal.App.4th 216, 224 (quoting California Code of Civil Procedure ("CCP") § 2017.010).)

The value of discovery must be balanced against the burden it places on the party to respond.  (*Greyhound Corp. v. Superior Ct.* (1961) 56 Cal.2d 355, 383-85.)  To that end, section 2019.030 of the CCP directs that "[t]he court shall restrict the frequency or extent of use of a discovery method provided in Section 2019.010 if it determines either of the following:  (1) [t]he discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive [or] (2) the selected method of discovery is unduly burdensome or expensive, taking into account the needs of the case, the amount in controversy, and the importance of the issues at stake in the litigation."  (CCP § 2019.030, subd. (a).)

## ARGUMENT

Plaintiffs move to compel the production of three broad categories of MDL documents:  (1) expert reports and backup materials; (2) deposition transcripts; and (3) sealed filings and hearing transcripts.  Plaintiffs' motion should be denied with respect to each.

### I.      MDL Expert Reports and Backup Materials.

Plaintiffs' request for all MDL expert reports and backup materials should be denied for at least two reasons.  *First*, Plaintiffs have not established that they are entitled to the Expert Materials as permissible fact discovery.  (See Section I.A, infra.)  *Second*, what Plaintiffs *really* seek is premature expert discovery, which would be prejudicial to Defendants and should not be allowed.  (See Section I.B, infra.)

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL; CASE NO. RG21106600

**A.    Plaintiffs Have Not Met Their Burden to Show They Are Entitled to the MDL Expert Materials in Fact Discovery.**

Plaintiffs must demonstrate the relevance of each expert report they seek, but have not even tried with respect to most. That is because Plaintiffs know they cannot make the requisite showing, as the vast majority of these reports (most of which were not even served by Defendants) have nothing to do with their case. (See Section I.A.i, infra.) Plaintiffs' separate request for expert backup materials seeks a host of burdensome, duplicative discovery of MDL documents and data that *Defendants have already agreed to produce*, as well as incremental additional discovery of materials that either (i) are irrelevant or (ii) are not Defendants' materials to produce. (See Section I.A.ii, infra.) Plaintiffs' motion should be denied under CCP section 2031.310, subdivision (b)(1), which requires "good cause justifying the discovery sought".

**i.    *Plaintiffs Have Not Demonstrated the MDL Expert Reports Are Relevant.***

Plaintiffs seek the production of all 32 expert reports served by every party in the MDL, covering a total of 21 experts. Yet, Plaintiffs attempt to explain why only eight of those reports are relevant to their case. None of those explanations has merit, and Plaintiffs are not entitled to irrelevant discovery. (See CCP § 2017.020, subd. (a) ("The court shall limit the scope of discovery if it determines that the burden, expense, or intrusiveness of that discovery clearly outweighs the likelihood that the information sought will lead to the discovery of admissible evidence.").)

As an initial matter, Plaintiffs ignore that these experts were offered in the specific context of motions to certify *Alabama classes* as well as merits issues particular to *Alabama plaintiffs*. (See Grossbard, Ex. 1 at 5 (explaining the acceleration of the Alabama actions in the MDL).) Plaintiffs here are proceeding in an individual capacity, not a class capacity. And their claims are based on alleged California and nationwide markets, not Alabama markets. (Second Amended Complaint ¶ 532 (Dec. 13, 2022) ("For the relevant product markets described above, California is a relevant geographic market."); *id.* ¶¶ 543-45 (alleging California markets for other alleged product markets); *id.* ¶ 547 (alleging a national market for another alleged product).) Neither Plaintiff is headquartered in

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL; CASE NO. RG21106600

Alabama, and Prime has only one facility there among 59 in total. (See *id.* ¶¶ 111, 120.)[4] Verity has none. In addition to focusing on class certification and Alabama, many MDL reports were rebuttal reports that did not offer freestanding opinions that might be relevant to this case but instead responded to specific opinions of specific experts offered by the MDL plaintiffs. In particular:

- <u>Lawrence Wu.</u> Plaintiffs claim Dr. Wu's expert report is relevant because he supposedly "opined on issues of market power and market definition and health care markets" and even "offered opinions regarding the relevant product market". (Mot. at 8.) This is misleading. In truth, Dr. Wu rebutted expert opinions offered by Plaintiffs' experts about *their* claimed product market, and his opinions about geographic market were confined to *Alabama*. (Grossbard, Ex. 2 ¶ 5.) Dr. Wu did not offer any opinions about the California or national markets Plaintiffs claim here.

- <u>Kevin Murphy.</u> Plaintiffs claim "Dr. Murphy opined on the impact of the Blue Plans' challenged conduct, with a focus on the impact of the challenged rules on market entry." (Mot. at 9.) Plaintiffs fail to mention that the "entry" Dr. Murphy focused on was entry *into Alabama*, not *California*. (Grossbard, Ex. 3.) The competitive dynamics in Alabama differ significantly from those present in this state—not least of all because only one Blue Plan operates in Alabama, unlike in California, where there are multiple Blues selling Blue-branded healthcare coverage and contracting with providers under the Blue brands. Besides, this report did not offer a freestanding opinion; it was a rebuttal to specific opinions put forth by the MDL plaintiffs' experts. (*Ibid.*)

- <u>Janusz Ordover.</u> Plaintiffs claim Dr. Ordover is relevant because he "opined on insurer market entry and injury to class members". (Mot. at 8.) Plaintiffs once again ignore that this was about entry *into Alabama* over injury allegedly suffered *in Alabama* by *Alabama* class members. (Grossbard, Ex. 4.) This was also a class certification expert opinion (Plaintiffs' present case is not a class action), and a rebuttal opinion at that. (*Ibid.*) Finally, Dr. Ordover passed away in 2021, so he cannot be disclosed as Defendants' expert in this case.

- <u>Ariel Pakes, Daniel Rubinfeld, Daniel Slottje, H.E. Frech, Deborah Haas-Wilson.</u> Plaintiffs offer a host of explanations for why they are supposedly entitled to these reports (see Mot. at 9-10), but they gloss over the key fact: these were *not* experts proffered by Defendants; each was put forward by the *MDL plaintiffs* (Grossbard, Exs. 5-8.). Accordingly, under the MDL Protective Order, Defendants cannot even produce these reports to Plaintiffs.[5] (See pp. 8-9, infra.)

---

[4] See also Prime Healthcare, Our Locations, https://www.primehealthcare.com/locations/ (last visited Apr. 12, 2024).

[5] For the avoidance of doubt, Plaintiffs are also wrong about the relevance of these reports. For example, Dr. Haas-Wilson did not opine on "harm" to "provider class members . . . , who are similarly situated to Plaintiffs". (Mot. at 9.) Her report was submitted in support of a motion to certify an *Alabama class*, where, unlike in California, only one Blue Plan operates—a fact that was key to her opinions, as Plaintiffs themselves seem to recognize. (Grossbard, Ex. 8; Mot. at 9.) Dr. Pakes (Mot. at 10) likewise focused on entry into Alabama. (Grossbard, Ex. 5). And Daniel Slottje (Mot. at 9) put

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL; CASE NO. RG21106600

The above expert reports are the *only* expert reports that Plaintiffs ask for by name in their motion, and the *only* expert reports for which they attempt to justify their motion to compel. For the other 24 reports, Plaintiffs state only that they "dealt with the same types of claims or defenses, or applied to a type of plaintiff similarly situated to Plaintiffs here". (Mot. at 8.) That generic, unsupported assertion is insufficient to demonstrate relevance. (See CCP § 2031.310, subd. (b)(1) ("The motion [to compel] shall set forth specific facts showing good cause justifying the discovery sought by the demand."); *Calcor*, supra, at 223-24; *Williams v. Superior Ct.* (2017) 3 Cal.5th 531, 539.) Plaintiffs' motion to compel as to these additional reports should be denied on this basis alone. Indeed, it would be unfair to Defendants to order production of materials where Defendants have not even had the opportunity to review and respond to any purported relevance claim.[6]

In any event, only seven of the additional expert reports that Plaintiffs do not address were submitted on behalf of MDL defendants. Plaintiffs are not entitled to any of them at this time.

- Nancy Litwinski responded to an MDL plaintiff expert who opined on statutory accounting issues primarily related to the Alabama Blue Plan (BCBS-AL)—accounting issues that have nothing to do with this litigation. (Grossbard, Ex. 9.)

- David Dillon likewise submitted a report, irrelevant to this case, on actuarial issues specific to BCBS-AL. (Grossbard, Ex. 10.)

- Erin Trish rebutted the manner in which the MDL plaintiffs' experts purported to apply her past academic work as related to hypothetical insurer entry into Alabama—a model Plaintiffs have not even suggested they might use here (let alone use *inappropriately*) to model entry into California. (Grossbard, Ex. 11.)

- Robert Topel did not offer any affirmative opinions, but rather rebutted the specific model of harm and damages put forward by the MDL plaintiffs—a model that has not been adopted or put forward by Plaintiffs here. (Grossbard, Ex. 12.)

- Lawrence Van Horn offered opinions that were specific to refuting the MDL provider plaintiffs' allegation that BCBS-AL was responsible for rising healthcare costs in the state of Alabama. (Grossbard, Ex. 13.)

---

forward a model that was a *class* damages model (Plaintiffs' case here is not a putative class action), and that likewise concerned Alabama (not California). (Grossbard, Ex. 6.)

[6] Plaintiffs had ample opportunity to justify the purported relevance of these reports. The MDL court required the parties to put summaries of these reports on the public MDL docket, and those summaries contain each report's conclusions and reasoning. Plaintiffs plainly have access to and reviewed these summaries, as some are cited in their motion.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL; CASE NO. RG21106600

- • David Evans opined that the Blue Plans are transaction platforms and rebutted several MDL plaintiffs' experts. (Grossbard, Exs. 14-15.)

- • Lisa Perlmutter offered opinions about BCBS-AL's executive compensation and rebutted opinions offered by an expert for the MDL provider plaintiffs. (Grossbard, Ex. 16.)

The remaining experts were not put forward by the MDL defendants; each and every one was put forward by the MDL plaintiffs. The reports of these experts are therefore not only irrelevant, but Plaintiffs do not even have a basis to demand their production. Plaintiffs claim they are entitled to the MDL expert reports because they purportedly include Defendants' "prior litigation positions". (Mot. at 11-12.) This justification does not even arguably apply to the expert reports of the MDL *plaintiffs'* experts, which contain the *MDL plaintiffs'* positions, not *Defendants'* positions. Furthermore, Defendants could not produce the MDL plaintiffs' expert reports *even if they were relevant* (which they are not), because the MDL Protective Order prohibits them from doing so. (Grossbard, Ex. 17 ¶ 1 ("The Party subject to such discovery request or subpoena shall not produce or disclose the requested Confidential Materials".).) The most Defendants could do is *ask* the MDL plaintiffs for affirmative consent to produce their expert reports to these Plaintiffs, but even that makes no sense: the litigation positions of non-parties simply are not relevant to this case.

###### ii. *Expert Backup Materials Are Likewise Not Relevant and Their Production Would Be Unduly Burdensome.*

Even if the Discovery Referee recommends ordering production of the MDL expert reports—which he should not for the reasons set forth above—the request for expert report "backup material" should be denied. Plaintiffs do not even attempt to argue that these backup materials are relevant or needed here—and they are not. Plaintiffs are not entitled to take wholesale discovery of the underlying documents and data produced in another matter simply because experts in that other litigation relied on them in support of their opinions. Instead, Plaintiffs need to decide what specific categories of ordinary-course business documents and data they or their experts believe are relevant and seek them through document requests or subpoenas served on the parties or non-parties whose documents they seek. Plaintiffs' motion for the backup materials should be denied on that basis alone. (*Calcor*, supra, at 223.)

Even if Plaintiffs were able to articulate some minimal relevance of the backup materials

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL; CASE NO. RG21106600

(which they cannot do and have not even attempted to do), that relevance would be significantly outweighed by the burden of identifying and producing those materials here.  (CCP § 2017.020, subd. (a) ("The court shall limit the scope of discovery if it determines that the burden, expense, or intrusiveness of that discovery clearly outweighs the likelihood that the information sought will lead to the discovery of admissible evidence.").)  The expert reports cite a tremendous volume of documents and data, much of which Plaintiffs are already receiving through their own document requests.  As to documents, each Defendant in this litigation has already agreed to reproduce to Plaintiffs its underlying MDL document productions.  With respect to data, these are ongoing negotiations—assisted by recent guidance directly from the Court (Grossbard, Ex. 18)—that are in the final stages; indeed, many Defendants are in the process of preparing productions of their relevant and responsive MDL data.  Defendants are not obligated to conduct duplicative discovery—least of all over this volume of documents (tens of millions of documents) and data (literally terabytes of data).  And to the extent such discovery is not duplicative, it is a blatant attempt to end-run and undo all of the negotiations and agreements over MDL document and data productions that have been reached to date.  Plaintiffs should not be allowed to get through the backdoor what they have not been able to get through the front.

Other documents and data cited in the reports do not belong to Defendants—they are non-party materials that Defendants cannot produce under the MDL Protective Order.  (See Grossbard, Ex. 17 ¶ 1.)  This is likewise material that Plaintiffs are attempting to obtain through other, more legitimate means.  Indeed, Plaintiffs have already served document subpoenas on a number of non-parties that produced documents and data in the MDL.  (E.g., Grossbard, Ex. 19.)  Those non-parties are entitled under the MDL Protective Order to answer for themselves.  (See Grossbard, Ex. 17 ¶ 1.)

Finally, it would be unduly burdensome to require Defendants to expend significant time and resources to sort through the enormous volume of backup materials to identify the subset of materials that (i) are not otherwise being produced in response to specific document requests served by Plaintiffs, and (ii) Defendants are otherwise entitled to produce under the MDL Protective Order, and then to process and produce the remainder.  That is especially so where Plaintiffs have not even attempted to explain why they need or are otherwise entitled to any of this material.

9

**B.**    **Plaintiffs Improperly Seek Premature and Prejudicial Expert Discovery Under the Guise of Fact Discovery.**

Plaintiffs' request for all MDL expert reports and backup materials should be denied for the additional reason that it is not proper discovery, least of all at this stage of the case. Though couched as *fact* discovery, Plaintiffs' request is in fact an improper attempt to obtain premature *expert* discovery, at least eight months before any party is required to make expert disclosures in this case. To the extent such discovery is not relevant to this litigation, it should be denied for that reason, as explained above. But to the extent such expert discovery may be (or may become) relevant, that would only underscore the extreme prejudice Defendants would face by making such disclosures now.

Expert opinions are not facts, and Plaintiffs do not cite a single case holding that they are. (E.g., *People v. McClinton* (2018) 29 Cal.App.5th 738, 799 (citing *Hickman v. Taylor* (1947) 329 U.S. 495, 511).) Requiring Defendants to produce the MDL expert reports—which Plaintiffs want because they may contain potential expert opinions in this litigation—before expert discovery, would be prejudicial to Defendants. The parties have proposed competing trial schedules that have initial expert disclosures taking place no earlier than mid-December 2024. (Defs.' Statement Regarding Proposed Trial Schedule at 1 (Mar. 29, 2024) (proposing Plaintiffs' initial expert disclosures on December 13, 2024); Pls.' Case Management Statement Regarding Case Schedule, Ex. A (Mar. 29, 2024) (proposing simultaneous expert disclosures on or about February 3, 2025).) If Plaintiffs have their way, they and their experts would have access not only to Defendants' potential expert opinions, but detailed expert analyses supporting those opinions, *for eight months* while Plaintiffs' experts prepare their reports.[7] Allowing Plaintiffs a first look at Defendants' potential expert opinions also would stand expert discovery on its head, reversing the Court's preliminary proposal that *Plaintiffs* should be the first to serve expert reports, to which Defendants would then respond. (Grossbard, Ex. 18 ("The court thinks that there is benefit to sequential disclosure of . . . expert reports on the line of plaintiffs, then defendants, then plaintiffs['] supplemental.").)

The prejudice to Defendants is further highlighted by the fact that Plaintiffs are moving to

---

[7] Plaintiffs claim that Defendants have similar access because Defendants were parties to the MDL and can read the MDL plaintiffs' reports. (Mot. at 11.) But as set forth above, the expert reports submitted by the MDL plaintiffs are not relevant to the claims and allegations that the Plaintiffs assert here.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL; CASE NO. RG21106600

compel the production of Defendants' MDL expert reports *at the very same time* they are arguing to the Court that their own experts should *never* be required to disclose formal expert reports. (Pls.' Case Management Statement at 4 (Mar. 29, 2024) ("Plaintiffs maintain that . . . pursuant to the Code of Civil Procedure . . . expert reports are not required to be produced").) In short, Plaintiffs are trying to set up a world where *Plaintiffs* have expert reports from Defendants' experts, but *Defendants* never get reports from Plaintiffs' experts. This is unfair, one-sided, and *not* how discovery is meant to work.

Other courts have recognized the same concerns Defendants raise here. In *Moehrl v. National Association of Realtors*, the plaintiffs sought expert reports served by the defendants (and only the defendants) in "an ongoing case alleging the same conspiracy and anticompetitive restraints against the same Defendants as here" and moved to compel their production. (See Grossbard, Ex. 20 at 3-5 ("*Moehrl*").) The court denied the plaintiffs' motion without prejudice, holding that any discovery of expert reports should take place during the period for expert discovery—and not sooner. (*Id.* at 4.) That was because the court was "unable to determine the relevance or proportionality of the requested discovery given that Defendants have not yet disclosed the identities of their experts", and it was not yet clear whether the same experts would be disclosed in *Moehrl* as in the other case. (*Ibid.* (finding that some authority "suggest[s] that discovery of an expert's prior testimony is particularly relevant *when that same expert is disclosed* as an expert in the instant matter", "[b]ut *the analysis may well change if Defendants rely on different experts here*" (emphasis added).) The same is true here. Defendants have yet to disclose their experts; it is not yet clear which experts, if any, will be overlapping; many of the reports Plaintiffs seek are not from Defendants' experts, but from the MDL plaintiffs' experts; and, to the extent some of these experts and their opinions *do* end up disclosed in this case, providing their reports now would "unfairly give Plaintiffs an 'early peek' at Defendants' expert opinions in this case". (*Ibid*; see also *United States ex rel. Tyson v. Amerigroup Ill., Inc.* (N.D. Ill. 2005) 230 F.R.D. 538, 545-46; *Surles v. Air France* (S.D.N.Y. July 19, 2001) 2001 WL 815522, at *6-7; *Natixis Fin. Prods. LLC v. Bank of Am., N.A.* (S.D.N.Y. Dec. 7, 2016) 2016 WL 7165981, at *4.) And, as in *Moehrl*, Plaintiffs have not explained why they need access to the MDL expert reports now as opposed to during expert discovery. (*Moehrl*, supra, at 4.)

Plaintiffs are well aware that disclosing expert information during fact discovery is premature

and prejudicial.  Indeed, Plaintiffs recently moved to compel a response to a non-party subpoena served in this case, and at the same time moved to seal *the name of the expert* supporting the motion on the ground that it would be prejudicial for Defendants to learn that name.  (See Grossbard, Ex. 21 at 3.) ("Plaintiffs will suffer prejudice by having their expert witness identified long before Defendants are entitled to otherwise receive such information.").)  Plaintiffs cannot have it both ways.  It cannot be that Plaintiffs would be prejudiced by simply disclosing *the name* of their expert, and at the same time Defendants must disclose the actual opinions, detailed analyses and backup files of Defendants' MDL experts on the ground that Plaintiffs believe similar opinions may be offered here.  *All* expert discovery in this case for *all parties* should proceed after the close of fact discovery, consistent with the schedules the parties submitted to the Court.

### C.    Neither the Cases Plaintiffs Cite Nor the ASO Opt-Out Court's Order Justifies Production of the MDL Expert Materials.

Plaintiffs are not saved by their citation to irrelevant and inapposite caselaw, nor are they helped by the recent decision they cite out of the Northern District of Alabama.

As an initial matter, most of the cases Plaintiffs cite for the proposition that prior expert reports are discoverable in fact discovery arose where an opposing party's experts *had already been disclosed*, which is not true here.  (See Mot. at 7 (citing *Acosta v. Nuzon Corp.* (C.D. Cal. Oct. 18, 2017) 2017 WL 8231048, at \*5; *Whitaker v. ELC Beauty LLC* (C.D. Cal. Aug. 20, 2020) 2020 WL 5834293, at \*3; *Nat'l Steel Prods. Co. v. Superior Ct.* (1985) 164 Cal.App.3d 476).)  Defendants already have offered to do exactly what those cases call for—produce the MDL expert reports of any expert also disclosed in this matter, if and when any such expert is disclosed.  (*Cf. Maxey v. Bridgestone/Firestone N. Am. Tire* (Cal. Ct. App. June 22, 2006) 2006 WL 1719350, at \*7 (distinguishing *National Steel Products* because the plaintiff there sought an expert report after the expert had been disclosed).)  In fact, nothing in the CCP even requires Defendants to do that much, and nothing in Plaintiffs' motion supports that they are entitled to more.

Only two cases Plaintiffs cite arose in this case's posture, where a party sought prior expert reports before experts had been disclosed.[8]  (See Mot. at 6 (citing *Finjan, Inc. v. Zscaler, Inc.* (N.D.

---

[8] This excludes the ASO order, which is addressed separately in this section.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL; CASE NO. RG21106600

Cal. Apr. 9, 2019) 2019 WL 1543514, at *3; *Glaukos Corp. v. Ivantis Inc.* (C.D. Cal. Sept. 4, 2019) 2019 WL 12536180, at *2-5).)  Both, however, were patent cases where the courts ordered the production of prior expert reports from litigation involving identical or related patents to those at issue. Here, by contrast, Plaintiffs seek expert reports that analyzed Alabama markets that are different than the California and national markets Plaintiffs allege in their complaints and reports regarding the federal class certification standard despite this being a California state court individual action.  That two federal courts applying federal law determined that patent reports were relevant to cases involving related patents is of no moment here.

The only other case in this posture that Plaintiffs cite, *Colonial BancGroup Inc. v. PriceWaterhouseCoopers LLP* (M.D. Ala. Jan. 22, 2016) 2016 WL 9687001, also is distinguishable. (Mot. at 7.)  In that case, the court ordered disclosure of prior expert deposition transcripts, not expert reports.  Moreover, it did so in reliance on another of Plaintiffs' cases, which (like many of Plaintiffs' cases) ordered discovery *after* an expert had been disclosed.  (*Colonial BancGroup*, supra, at *2 (citing *ParkerVision, Inc. v. Qualcomm Inc.* (M.D. Fla. July 17, 2013) 2013 WL 3771226, at *2).)  To the extent the case is on point at all, its holding is inconsistent with other court decisions, like *Moehrl*, discussed above, and should not be followed in the circumstances presented here for all of the reasons set forth above.[9]

Finally, Plaintiffs make much of the fact that a district court judge presiding over several opt-out cases pending in the Northern District of Alabama (the "ASO court")[10] granted those plaintiffs' motion to compel the production of certain MDL expert reports.  (See Mot. at 7 (citing ASO Order at

[9] Plaintiffs' remaining citations are misleading and inapposite.  (See Mot. at 6, 11, 13 (citing *DNA Genotek Inc., v. Spectrum Solutions L.L.C.*, (S.D. Cal. Dec. 14, 2021) 2021 WL 5908985; *Finjan, LLC v. Qualys Inc.* (N.D. Cal. Nov. 10, 2020) 2020 WL 6581836; *Largan Precision Co. v. Samsung Elecs. Co.* (S.D. Cal. Feb. 9, 2015) 2015 WL 11251729; *Hussey v. State Farm Lloyds Ins. Co.* (E.D. Tex. 2003) 216 F.R.D. 591).)  None of these cases involved discovery of prior expert reports or backup material.  One sought arbitration material.  (*DNA Genotek*, supra, at *2.)  Another asked whether the plaintiffs' experts were permitted to access certain source code when preparing their reports.  (*Finjan*, supra, at *1.)  Another involved a request for prior *fact* deposition transcripts, not expert transcripts, and that request was denied in significant part as overbroad.  (*Largan*, supra, at *2-3).)  In the final case, the court ordered the disclosure of prior expert reports because an issue in the case was whether certain other reports prepared by the same expert were objectively prepared and whether the defendant knew of the lack of objectivity.  (*Hussey*, supra, at 594.)

[10] *Alaska Air Grp., et al. v. Anthem, Inc., et al.* (N.D. Ala.) No. 2:21-cv-1209; *JetBlue Airways Corp., et al. v. Anthem, Inc., et al.* (N.D. Ala.) No. 2:22-cv-558; *Bed Bath & Beyond, Inc., et al. v. Anthem, Inc., et al.* (N.D. Ala.) No. 2:22-cv-1256.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL; CASE NO. RG21106600

4-6).)  Plaintiffs go so far as to claim that court "rejected the exact same arguments Defendants raise here" (*ibid.*), and that "the MDL Court found that production of expert materials was in fact proportional to the needs of the case in the same scenario present here" (*id.* at 10).  While Defendants disagree with the ASO court's holding, it does not actually help Plaintiffs with their present ask.  The ASO plaintiffs sought (and received) ***significantly less material than what Plaintiffs seek here***:  the ASO plaintiffs requested only eight specific reports (each of which they identified and justified by name), and each of which was issued by Defendants' experts in the MDL.  Moreover, the ASO plaintiffs did not seek (and were not given) a single piece of "backup material".  The ASO court also required the ASO plaintiffs not only to explain the purported relevance of each requested report, but also how the reports would be used as part of fact discovery.  Here, by contrast, Plaintiffs seek:  all expert materials (not a subset); expert materials from all MDL parties (not just the MDL defendants); and all backup support (not simply the reports themselves).  Plaintiffs have not justified the relevance of these materials or explained how they will be properly used in fact discovery this litigation.

*      *      *

For these reasons, Plaintiffs' motion to compel all MDL Expert Materials should be denied.  To the extent the Discovery Referee orders anything on this issue, he should recommend the compromise that Defendants have already offered to Plaintiffs:  Defendants will produce the MDL expert report of any expert they also disclose as an expert in this case on the timeline that expert disclosures are made, pursuant to the trial schedule ordered by the Court.  This is already more than what Plaintiffs are entitled to receive under the CCP, and it is more than Plaintiffs themselves are willing to give Defendants.

**II.    MDL Deposition Transcripts.**

Plaintiffs separately seek all deposition transcripts from the MDL, without regard to subject matter or the topics actually at issue in this litigation.  (Mot. at 12; Grossbard, Ex. 22 at 8.)  Putting aside the impropriety of this ask (see p. 16, infra), there is no ripe dispute for the Discovery Referee to decide.

California's Civil Discovery Act "requires that there be a serious effort at negotiation and informal resolution."  (*Clement v. Alegre* (2009) 177 Cal.App.4th 1277, 1294.)  California courts

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL; CASE NO. RG21106600

therefore deny motions to compel where parties do not complete the meet-and-confer process and reach impasse before filing. (E.g., *People ex rel. Harris v. Sarpas* (2014) 225 Cal.App.4th 1539, 1554; *Clement*, supra, at 1294-95.) Plaintiffs did not satisfy their obligation to negotiate here. Defendants sent a letter on October 2, 2023 raising relevance concerns with Plaintiffs' demand for all MDL deposition transcripts, among other things, and asking Plaintiffs to explain which categories of MDL transcripts they believe they need. (Grossbard, Ex. 23 at 1.) Plaintiffs did not respond to Defendants' October 2, 2023 letter for almost *five months*—until February 27, 2024—and even then did not answer Defendants' relevance question. (Livesay Decl. ("Livesay"), Ex. Q.)[11] Defendants nevertheless responded less than one month later, saying they would consider producing the MDL deposition transcripts of their current or former employees—the only transcripts they are permitted to produce— as part of an agreed deposition protocol.[12] (Livesay, Ex. E at 3, 5.) Instead of meeting and conferring regarding this proposal, Plaintiffs moved to compel. The Discovery Referee should deny Plaintiffs' motion to compel and allow the meet-and-confer process to conclude.

If the Discovery Referee chooses to address Plaintiffs' demand for MDL deposition transcripts now, the motion still should be denied because Plaintiffs have not met their burden to demonstrate the transcripts are relevant. (CCP § 2017.010.) Plaintiffs' demand for every one of the approximately 300 depositions taken in the MDL is based solely on the bald assertion that they are "clearly relevant to this matter" and "clearly cover the same legal claims and defenses in the action." (Mot. at 12.) That unsupported claim is legally insufficient to meet Plaintiffs' burden on a motion to compel. (*Williams*, supra, at 539; *Calcor*, supra, at 223-24.) It also is incorrect because, as discussed above, much of MDL discovery focused on Alabama-specific issues and plaintiff classes not present here, which is why Defendants proposed that the parties meet and confer so they could discuss which transcripts Plaintiffs actually want and need. By way of example only, Plaintiffs cannot seriously contend that transcripts of the following depositions are relevant:

---

[11] The Livesay Declaration was submitted with Plaintiffs' March 29, 2024 Motion.

[12] Deposition protocols are commonplace in complex litigation; they allow the parties to have a negotiated, reciprocal approach to deposition issues. (E.g., *Charles Schwab Corp. v. Banc of Am. Secs. LLC* (Apr. 2, 2015) 2015 Cal. Super. LEXIS 14068; *Kaiser Aluminum & Chem. Corp. v. Certain Underwriters at Lloyd's London* (Apr. 23, 2001) 2001 Cal. Super. LEXIS 317.)

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL; CASE NO. RG21106600

- <u>Amy MacRae, PhD</u>:  A named plaintiff in the MDL who is an individual healthcare subscriber (*i.e.*, not a large hospital network like Plaintiffs) who lives in Missouri.

- <u>Hess, Hess & Daniel, P.C.</u>:  Scott Hess, the corporate designee for a small law firm in Michigan that was a named plaintiff in the MDL.

- <u>Cahaba Family Medicine</u>:  Dr. Robert Snyder, the designated corporate witness for non-party Cahaba Family Medicine, a small family practice in a town outside Birmingham, Alabama.

Furthermore, Defendants cannot even produce most of the requested MDL deposition transcripts because they contain information of other MDL parties and non-parties, which are governed by the MDL Protective Order.  (Grossbard, Ex. 17 ¶ 1.)[13]

The Discovery Referee therefore should deny Plaintiffs' motion to compel the production of MDL deposition transcripts in full and at most leave open the possibility of addressing any ripe disputes with respect to the production of the deposition transcripts of Defendants' current or former employees that might remain after the parties meet and confer with respect to the production of those transcripts in the context of a deposition protocol governing all parties.

### III.    MDL Sealed Filings.

Here again, the parties have not reached an impasse requiring the Discovery Referee's intervention.  Plaintiffs seek "all unredacted filings and hearing transcripts" from the MDL.  (Mot. at 13; see Grossbard, Ex. 22 at 8.)  As Defendants already explained to Plaintiffs, most of the sealed filings are Defendants' documents that will be included in their forthcoming MDL reproductions.  As to the remaining filings, Defendants have agreed to consider any requests from Plaintiffs for sealed documents not included in the MDL reproductions to the extent Plaintiffs can explain why any such documents are relevant and to the extent Defendants are permitted to reproduce them.  (Livesay, Ex. E at 3-4.)  Thus, the only limitations on Defendants' agreement to produce unredacted filings and hearing transcripts are that (i) Plaintiffs articulate their relevance (as required by CCP section 2017.010), and

---

[13] Needless to say, it would be unduly burdensome for Defendants to notify all of these parties and non-parties in order to seek their consent to produce hundreds of these transcripts.  That exercise would require Defendants to expend substantial time and resources to identify current counsel contacts and send notice to dozens of these individuals and entities (not to mention the time spent responding to outreaches and inquiries from all of them in response).  There is simply no basis for Defendants to do this, especially when Plaintiffs have not even attempted to meet their burden of demonstrating the relevance of the transcripts.  It also would unnecessarily and improperly burden non-parties to this litigation who would have to evaluate Plaintiffs' unsupported request.

16

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL; CASE NO. RG21106600

(ii) the MDL court and/or Protective Order does not bar their production.

Plaintiffs rejected this common-sense proposal because what they *really* want is for Defendants to review all of the sealed documents in the MDL and to package up a neat set of unredacted materials in a single place. That demand is overly broad, unduly burdensome and not required by the rules. It would force Defendants to spend significant time sorting through hundreds of documents—spanning more than a decade—to separate out Defendants' own information from the confidential information of other entities. Then, Defendants would have to prepare unredacted versions of documents they are permitted to produce, despite the fact that most will be duplicative of documents Defendants are *already producing* in their MDL reproductions.[14] And Defendants are being asked to do all of this without Plaintiffs having even attempted to meet their basic burden of establishing relevance. Moreover, Plaintiffs have all the tools they need to perform this work themselves: Defendants provided them with over 100 pages of indices from the MDL showing what the sealed documents are and their ECF numbers on the public docket. (Grossbard, Ex. 23 at Ex. 1.) If Plaintiffs have a specific question—or want a specific document—they can just ask Defendants about that document.

Indeed, Defendants offered in good faith to meet and confer after making their MDL reproductions (where most of the sealed filings will be found) with respect to any documents Plaintiffs believe to be relevant that were not produced. (Livesay, Ex. P at 3-5.) Plaintiffs rejected Defendants' position because they claim that it "does not guarantee . . . that [Defendants] will produce such documents upon request." (Mot. at 14.) That just shows why this dispute is not ripe—if Plaintiffs seek a relevant document that Defendants are permitted to produce under the MDL Protective Order, and Defendants refuse to produce it, Plaintiffs can seek relief from the Discovery Referee at that time. This will also allow the Parties to have a concrete discussion about a particular document and its relevance, which is a discussion that has not even yet happened given Plaintiffs' overbroad request.

Finally, with respect to hearing transcripts, there is only a single redacted transcript in the

---

[14] It is also worth noting that many of the documents are sealed only in part, and in immaterial ways. To take one example, Defendants' *Daubert* motion to exclude a plaintiff expert is entirely public and available for download on PACER except for six lines that reflect third-party confidential information that Defendants cannot produce in any event. (Grossbard, Ex. 24 at 6, 14-16.) Many other documents are similarly ones where the only information Plaintiffs do not have is limited and irrelevant third-party information.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL; CASE NO. RG21106600

MDL, as Plaintiffs acknowledge. (Mot. at 14.) That transcript is not only irrelevant to this case, but privileged. The MDL court found that the underlying hearing included "disclosures made about mediation-related matters in this litigation" (*i.e.*, the MDL), and "that all aspects of mediation are to remain private, confidential *and privileged from process and discovery*." (Grossbard, Ex. 25 at 1-2 (emphasis added).) The court ordered that the transcript be sealed "based upon either a mediation privilege or public policy principles favoring the confidentiality of mediation", and it ordered that "counsel receiving the transcript **SHALL NOT** allow anyone unnecessary to the redaction process to view the unredacted transcript." (*Id.* at 4 (emphasis in original).) Plaintiffs assert that Defendants should apply to the MDL court to produce the transcript in this case (Mot. at 14), but cite no authority for their position and are wrong. Defendants agree with the MDL court that the redacted information is properly protected, and Defendants have no obligation or desire to challenge the MDL court's clear direction that they not disclose mediation privileged information. If Plaintiffs want this transcript, they may themselves apply to the MDL court to unseal it, which they have not done.

Plaintiffs' generic request to compel production of all MDL sealed filings should be denied. Any requests for relief should be made if and when Plaintiffs identify a purportedly relevant document that Defendants have the authority to produce, and yet refuse to produce. There is no such document at this time.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request the Discovery Referee issue a report and recommendation denying Plaintiffs' motion to compel in full.

Dated:  April 12, 2024

By:  MAYER BROWN LLP
CRAVATH, SWAINE & MOORE LLP

*/s/ Elizabeth A. Jose*
CRAIG A. HOOVER (SBN 113965)
E. DESMOND HOGAN (*pro hac vice*)
ELIZABETH A. JOSE (*pro hac vice*)
HOGAN LOVELLS US LLP
Columbia Square
555 13th Street, N.W.
Washington, DC 20004
Tel: (202) 637-5600
Fax: (202) 637-5910
craig.hoover@hoganlovells.com
desmond.hogan@hoganlovells.com
elizabeth.jose@hoganlovells.com

*/s/ Christopher J. Kelly*
CHRISTOPHER J. KELLY (SBN 276312)
MAYER BROWN LLP
3000 El Camino Real, Suite 300
Palo Alto, CA 94306
Tel: (650) 331-2025
Fax: (650) 331-2060
cjkelly@mayerbrown.com

KARIN A. DEMASI (*pro hac vice*)
LAUREN R. KENNEDY (*pro hac vice*)
DAVID H. KORN (*pro hac vice*)
LILLIAN S. GROSSBARD (*pro hac vice*)

SAMUEL YERGIN (*pro hac vice*)
HOGAN LOVELLS US LLP
8350 Broad St., 17th Floor
Tysons, Virginia 22102
Tel:  (703) 610-6187
Fax:  (703) 610-6200
samuel.yergin@hoganlovells.com

AMBER M. TRINCADO (SBN 260186)
HOGAN LOVELLS US LLP
4 Embarcadero Ctr, Suite 3500
San Francisco, CA 94111
Tel:  (415) 374-2300
Fax:  (415) 374-2499
amber.trincado@hoganlovells.com

BRHAN A. AHMED (SBN 328157)
HOGAN LOVELLS US LLP
1999 Avenue Of The Stars, Suite 1400
Los Angeles, CA 90067
Tel:  (310) 785-4600
Fax:  (310) 785-4601
brhan.ahmed@hoganlovells.com

*Counsel for Elevance Health f/k/a Anthem, Inc., and all of its named subsidiaries in this action; Louisiana Health Service & Indemnity Company (Blue Cross and Blue Shield of Louisiana); BCBSM, Inc. (Blue Cross and Blue Shield of Minnesota); Aware Integrated, Inc.; Horizon Healthcare Services, Inc. (Horizon Blue Cross and Blue Shield of New Jersey); Blue Cross & Blue Shield of Rhode Island; Cambia Health Solutions, Inc.; Regence Blue Cross Blue Shield of Utah; Regence Blue Shield (of Washington); Regence Blue Cross Blue Shield of Oregon*

CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Tel: (212) 474-1000
Fax: (212) 474-3700
kdemasi@cravath.com
lkennedy@cravath.com
dkorn@cravath.com
lgrossbard@cravath.com

*Counsel for Defendants Blue Cross Blue Shield Association; Blue Cross and Blue Shield of Alabama; Blue Cross and Blue Shield of Arizona, Inc.; Blue Cross and Blue Shield of Florida, Inc.; GuideWell Mutual Holding Corp.; Hawaii Medical Service Association (Blue Cross and Blue Shield of Hawaii); Blue Cross and Blue Shield of Massachusetts, Inc.; Blue Cross and Blue Shield of North Carolina; BlueCross BlueShield of South Carolina; BlueCross BlueShield of Tennessee, Inc.; California Physicians' Service, d/b/a Blue Shield of California; CareFirst, Inc.; CareFirst of Maryland, Inc.; Group Hospitalization and Medical Services, Inc.; CareFirst BlueChoice, Inc.; Health Care Service Corporation, an Illinois Mutual Legal Reserve Company, including its divisions Blue Cross and Blue Shield of Illinois, Blue Cross and Blue Shield of Texas, Blue Cross and Blue Shield of New Mexico, Blue Cross and Blue Shield of Oklahoma, and Blue Cross and Blue Shield of Montana; Caring for Montanans, Inc., f/k/a Blue Cross and Blue Shield of Montana, Inc.; Wellmark of South Dakota, Inc. (Wellmark Blue Cross and Blue Shield of South Dakota); Wellmark, Inc. (Wellmark Blue Cross and Blue Shield of Iowa); Triple-S Management Corporation; Triple-S Salud, Inc.*

/s/ Jennifer B. Fisher
JENNIFER B. FISHER (SBN 241321)
JESSICA HUANG (SBN 315208)
GOODWIN PROCTER LLP
Three Embarcadero Center, 28th Floor
San Francisco, CA 94111
Tel: (415) 733-6000
Fax: (415) 677-9041
jfisher@goodwinlaw.com
jhuang@goodwinlaw.com
MARK MCKANE (SBN 230552)
MICHAEL P. ESSER (SBN 268634)
KIRKLAND & ELLIS LLP
555 California Street, 27th Floor

/s/ Carl S. Burkhalter
CARL S. BURKHALTER (*pro hac vice*)
MAYNARD NEXSEN PC
1901 6th Avenue North, Suite 2400
Regions Harbert Plaza
Birmingham, AL  35203
Tel: (205) 254-1000
Fax: (205) 254-1999
cburkhalter@maynardnexsen.com

PAMELA B. SLATE (*pro hac vice* forthcoming)
HILL HILL CARTER FRANCO COLE & BLACK, P.C.

19

San Francisco, CA 94104
Tel: (415) 439-1400
mmckane@kirkland.com
michael.esser@kirkland.com

JEFFREY J. ZEIGER, P.C. (*pro hac vice*)
KEITH HOLT (*pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
Tel: (312) 862-2000
Fax: (312) 862-2200
jzeiger@kirkland.com
keith.holt@kirkland.com

*Counsel for Defendants Health Care Service Corporation, an Illinois Mutual Legal Reserve Company, including its divisions Blue Cross and Blue Shield of Illinois, Blue Cross and Blue Shield of Texas, Blue Cross and Blue Shield of New Mexico, Blue Cross and Blue Shield of Oklahoma, and Blue Cross and Blue Shield of Montana; Caring for Montanans, Inc., f/k/a Blue Cross and Blue Shield of Montana, Inc.; Highmark Inc., f/k/a Highmark Health Services; Highmark West Virginia Inc.; Highmark BCBSD Inc.*

425 South Perry Street
Montgomery, AL  36104
Tel: (334) 834-7600
Fax: (334) 386-4381
pslate@hillhillcarter.com

*With Cravath, Swaine & Moore LLP, counsel for Defendant Blue Cross Blue Shield of Alabama*

/s/ Jonathan Redgrave
Jonathan Redgrave
Erica Zolner
Nick Snavely
REDGRAVE LLP
230 West Monroe Street, Suite 210
Chicago, IL 60606
Tel:  (312) 519-5127
jredgrave@redgravellp.com
ezolner@redgravellp.com
nsnavely@redgravellp.com

*With Cravath, Swaine & Moore LLP, Counsel for Defendant California Physicians' Service d/b/a Blue Shield of California*

/s/ John F. Cove, Jr.
JOHN F. COVE, JR. (SBN 212213)
SHEARMAN & STERLING LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
Tel:  (415) 616-1100
Fax:  (415) 616-1199
john.cove@shearman.com

TODD M. STENERSON (pro hac vice)
BRIAN C. HAUSER (pro hac vice)
SHEARMAN & STERLING LLP
401 9th Street, N.W., Suite 800
Washington, DC 20004
Tel:  (202) 508-8000
Fax:  (202) 508-8100
todd.stenerson@shearman.com
brian.hauser@shearman.com

RACHEL MOSSMAN ZIEMINSKI (pro hac vice)
SHEARMAN & STERLING LLP
2601 Olive Street, Suite 1700
Dallas, TX 75201
Tel:  (214) 271-5777
Fax:  (214) 271-5778
rachel.zieminski@shearman.com

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL; CASE NO. RG21106600

*Counsel for Defendant Blue Cross and Blue Shield of Vermont*

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL; CASE NO. RG21106600