FILED

2024 Jun-28  PM 04:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

# Exhibit E

PATRICK M. RYAN (SBN 203215)
  pryan@bartkolaw.com
OLIVER Q. DUNLAP (SBN 225566)
  odunlap@bartkolaw.com
MARISA LIVESAY (SBN 223247)
  mlivesay@bartkolaw.com
BRITTANY N. DEJONG (SBN 258766)
  bdejong@bartkolaw.com
STEVE VIEUX (SBN 315133)
  svieux@bartkolaw.com
BARTKO LLP
One Embarcadero Center, Suite 800
San Francisco, California 94111
Telephone: (415) 956-1900
Facsimile:  (415) 956-1152

JASON A. ZWEIG (*pro hac vice*)
  jzweig@bartkolaw.com
BARTKO LLP
One South Wacker Drive, 36th Floor
Chicago, Illinois 60606
Telephone: (415) 291-4505

Attorneys for Plaintiffs
VHS LIQUIDATING TRUST, PRIME
HEALTHCARE SERVICES, INC., PRIME
HEALTHCARE FOUNDATION, INC. and
PRIME HEALTHCARE MANAGEMENT, INC.

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF ALAMEDA

| | |
|---|---|
| VHS LIQUIDATING TRUST, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>BLUE CROSS OF CALIFORNIA, et al.,<br><br>  Defendants. | Case No. RG21106600<br>JAMS Ref. No. 1110029231<br><br>*Assigned for All Purposes to*<br>*Hon. Noël Wise, Department 21*<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' BRIEF ADDRESSING THE DISCOVERY REFEREE'S RECOMMENDATION REGARDING PLAINTIFFS' MOTION TO COMPEL**<br><br>Referee:  Hon. James P. Kleinberg (Ret.)<br><br>Complaint Filed:  July 27, 2021<br>Trial Date:        None set |

2854.003/2023244.3

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................................ 5

II.    BACKGROUND ................................................................................................................. 7

III.   ARGUMENT ...................................................................................................................... 9

   A.   The MDL Protective Order Does Not Prevent Defendants' Production of Responsive Materials ............................................................................................................. 9

   B.   The MDL Materials Are Relevant and Readily Available to Defendants .......................... 10

      1.   MDL Plaintiffs' Expert Reports and Backup Materials ................................................. 12

      2.   MDL Deposition Transcripts ........................................................................................ 15

      3.   MDL Sealed Filings and Hearing Transcripts .............................................................. 16

   C.   Defendants Have Made No Showing that Producing the Requested Materials Would Be Unduly Burdensome ....................................................................................... 17

IV.    CONCLUSION ................................................................................................................ 18

2854.003/2023244.3

2

PLAINTIFF'S OPPOSITION TO DEFENDANTS' BRIEF ADDRESSING THE DISCOVERY REFEREE'S
RECOMMENDATION REGARDING PLAINTIFFS' MOTION TO COMPEL

# **TABLE OF AUTHORITIES**

**Cases**

*Apple Inc. v. Samsung Electronics Co.*
(N.D. Cal. Apr. 12, 2012, No. 11-cv-1846-LHK-PSG) 2012 WL 1232267 ................................... 15

*Campanelli v. Regents of University of California*
(1996) 44 Cal.App.4th 572, 582 .................................................................................................. 10

*Cassel v. Superior Court*
(2011) 51 Cal.4th 113, 125 .......................................................................................................... 17

*ConsumerInfo.com, Inc. v. One Technologies LP*
(C.D. Cal., May 4, 2010, No. CV 09-3783-VBF(MANX)) 2010 WL 11507581 ....................... 9, 15

*Finjan, Inc. v. Zscaler, Inc.*
(N.D. Cal., Apr. 9, 2019, No. 17-CV-06946-JST-KAW) 2019 WL 1543514 ............................... 16

*Flagship Theatres of Palm Desert, LLC v. Century Theatres, Inc.*
(2011) 198 Cal.App.4th 1366, 131 ............................................................................................... 11

*Gottlieb v. Iskowitz*
(Cal.Ct.App., June 20, 2012, No. B216029) 2012 WL 2337290 .................................................. 12

*In re Application of Republic of Ecuador*
(N.D. Cal. 2012) 280 F.R.D. 506, 516 ....................................................................................... 12

*In re Blue Cross Blue Shield Antitrust Litigation*
MDL No. 2406, No. 2:13-cv-20000 (N.D. Ala.) ........................................................................ 5

*In re Cipro Cases I & II*
(2015) 61 Cal. 4th 116, 160 .......................................................................................................... 5

*Infernal Tech., LLC v. Microsoft Corp.*
(E.D. Tex. May 3, 2019, No. 2:18-cv-00144-JRG), 2019 WL 5388442 ....................................... 15

*Kashama v. Century Ins. Group*
(N.D. Cal., May 12, 2009, No. C 09-1298 SI) 2009 WL 1312940 ................................................ 10

*Kerns v. Pro-Foam of South Alabama, Inc.*
(S.D. Ala. 2007) 572 F.Supp.2d 1303, 1311 ................................................................................ 12

*Lightfoot v. Cendant Mortg. Corp.*
(2017) 580 U.S. 82, 91–92 .......................................................................................................... 10

*Nat'l Steel Products Co. v. Superior Court*
(1985) 164 Cal.App.3d 476, 492-493 ........................................................................................... 9

*Payne v. United California Bank*
(1972) 23 Cal.App.3d 850 ........................................................................................................... 10

*Tien v. Superior Court*
(2006) 139 Cal.App.4th 528, 535 ................................................................................................. 11

PLAINTIFFS' OPPOSITION TO DEFENDANTS' BRIEF ADDRESSING THE DISCOVERY REFEREE'S
RECOMMENDATION REGARDING PLAINTIFFS' MOTION TO COMPEL

*West Pico Furniture Co. of Los Angeles v. Superior Court In and For Los Angeles Cnty.*
(1961) 56 Cal.2d 407, 417 ........................................................................................... 16, 17

*Whitaker v. ELC Beauty LLC*
(C.D. Cal., Aug. 20, 2020, No. 819CV00407DSFJDEX) 2020 WL 5834293 .............................. 17

*Zhang v. Superior Court of Los Angeles County*
(2022) 85 Cal.App.5th 167, 176 ....................................................................................... 10

**Statutes**

Code Civ. Proc. § 2017.010 ............................................................................................. 11, 15

Code Civ. Proc. § 2017.020 ................................................................................................. 17

Evid. Code, § 210 ............................................................................................................... 11

**Other Authorities**

Black's Law Dictionary 431 (10th ed. 2014) ...................................................................... 10

**Rules**

Ala. Civ. Ct. Mediation R. 11, subdiv. (b)(1) ..................................................................... 17

2854.003/2023244.3

4

PLAINTIFFS' OPPOSITION TO DEFENDANTS' BRIEF ADDRESSING THE DISCOVERY REFEREE'S
RECOMMENDATION REGARDING PLAINTIFFS' MOTION TO COMPEL

Plaintiffs[1] respectfully request that the Discovery Referee affirm the April 25, 2024 Recommendation Regarding Plaintiffs' Outstanding Motion to Compel ("April 25 Recommendation"), and clarify that Defendants should be ordered to produce all documents in their possession responsive to Plaintiffs' First Set of Requests for Production of Documents to All Defendants ("RFPs" or "Requests") Nos. 14 through 17.

## I.    INTRODUCTION

The conduct precipitating Plaintiffs' motion to compel exemplifies the excessive delays in the discovery process caused by Defendants' obstructionist behavior. For over a decade, Defendants have been involved in related proceedings based on the *same* anticompetitive conduct at issue here, examining the *same* legal issues and liability, among the *same* coconspirators. (*In re Blue Cross Blue Shield Antitrust Litigation*, MDL No. 2406, No. 2:13-cv-20000 (N.D. Ala.) [the "MDL"].) While Plaintiffs chose to file a standalone action based on California law, the materials evidencing that Defendants' conduct constitute a *per se* violation of the Sherman Act by the MDL court all also relate directly to Plaintiffs' claims under the Cartwright Act, which is "broader in range and deeper in reach than the Sherman Act." (*In re Cipro Cases I & II* (2015) 61 Cal. 4th 116, 160 [quotation marks and citation omitted].)

While Defendants have tried to appear cooperative in this case, behind the scenes they have recently been involved in efforts to obtain an order from that MDL court to specifically prevent them from complying with their discovery obligations. Given that conduct their promises to follow this court's orders and guidance rings hallow. On June 13, the day before this brief was due, the MDL Provider plaintiffs filed a Motion to Enforce or Amend the Protective Order with the MDL court ("Motion"). In it, they argued that the MDL Protective Order should be modified to prohibit the production of Confidential Material in other litigation absent permission from the party that produced it, or an order *from the MDL Court*. (See Declaration of Brittany N. DeJong, Ex. A, filed concurrently herewith.) But as currently written, the MDL Protective Order

---

[1] "Plaintiffs" include VHS Liquidating Trust ("VHS"), the bankruptcy liquidator for Verity Health System of California, Inc. ("Verity"), and Prime Healthcare Services, Inc., Prime Healthcare Foundation, Inc. and Prime Healthcare Management, Inc. (collectively, "Prime").

specifically allows for production of such Material, so long as a court of competent jurisdiction orders the production. (Declaration of Lillian S. Grossbard in Support of Defendants' Brief Addressing the Discovery Referee's Recommendation Regarding Plaintiffs' Motion to Compel ["Grossbard Decl."], Ex. 2 at p. 22 [emphasis added].) In their Motion, ***the Provider plaintiffs represented that the Blues do not oppose the request***, which in essence, comprises their acquiescence in an attempt to deprive the Alameda Superior Court with jurisdiction over Plaintiffs' motion to compel.

But the MDL Court does not have authority to enter such an order limiting the available discovery in a California court. Plaintiffs are "strangers to the MDL" who sued "in state court and whose case had not been removed to federal court." (*In re Bard IVC Filters Product Liability Litigation* (9th Cir. 2023) 81 F.4th 897, 909 [citing *Hartland v. Alaska Airlines* (9th Cir. 1976) 544 F.2d 992, 996-97.) The MDL court has no basis for jurisdiction over a discovery dispute in California state court. A "district court overseeing [an] MDL does not have authority over separate disputes between state-court plaintiffs" and MDL defendants. (*In re Genetically Modified Rice Litig.* (8th Cir. 2014) 764 F.3d 864, 874.) "Although district courts have discretion in orchestrating and conducting multi-district litigation, '[t]he authority for consolidating cases on the order of the judicial panel on multi-district litigation ... is merely procedural and does not expand the jurisdiction of the district court to which the cases are transferred.'" (*Id*. at 873-74 [quoting *In re Showa Denko K.K. L–Tryptophan Prods. Liab. Litig.–II* (4th Cir.1992) 953 F.2d 162, 165].) Plaintiffs are not litigants in the MDL, and their counsel are not participants who signed participation agreements incorporated by an MDL court order enforceable by that court. (Cf. *id*. at 910.) There is no basis for the MDL court to exercise any general jurisdiction over Plaintiffs' motion to compel in Alameda Superior Court. Defendants should not be rewarded for their delay tactics.

Regardless, Plaintiffs propounded their first set of RFPs seeking, in part, all expert reports and backup materials, deposition transcripts, hearing transcripts, and unredacted court filings from the MDL. In response, Defendants wholly refused to produce anything, claiming a purported inability to do so under the MDL Protective Order, without ever providing the requisite notice to

2854.003/2023244.3

6

any third parties whose material is encompassed therein. Not only are these materials in Defendants' possession, they are also exceedingly relevant to Plaintiffs' claims. Given the fundamental overlap between the suits, and the inability to obtain these materials cooperatively, Plaintiffs moved to compel this relevant fact discovery. As the Discovery Referee previously determined, Defendants' refusal to produce these documents did not meet their discovery obligations. Unsurprisingly, despite the clarity of the April 25 Recommendation, which unequivocally held that "Defendants should be ordered to comply with discovery without further delay" (April 25 Recommendation at 2:4-5), Defendants have persisted in circumventing their duty to produce the aforementioned materials on the sole basis that the MDL Protective Order precludes them from doing so.

The MDL Protective Order specifically requires a party to notify counsel for the party whose material is sought within five business days of the receipt of a discovery request. (Grossbard Decl., Ex. 2 at p. 22 and Ex. 3 at p. 3.) Rather than complying with this obligation and promptly providing parties in the MDL with the requisite notice, Defendants waited until just *last month*—*over nine months after receiving the RFPs*, and after the Discovery Referee issued the April 25 Recommendation—to inform the MDL plaintiffs of Plaintiffs' Requests here. Now that Defendants have finally sought consent, they claim that because the MDL plaintiffs declined to consent to the reproduction of the requested materials, they are barred from providing them here. But the MDL Protective Order does not support Defendants' selective interpretation. The MDL Protective Order provides that Defendants may not disclose the materials without the MDL plaintiffs' approval *or* without a Court Order. While Defendants lambaste Plaintiffs for not seeking the MDL plaintiffs' approval, the Protective Order has no such requirement – in fact, the sole mandate of the MDL Protective Order shifted the burden on Defendants to provide timely notice of Plaintiffs' Requests to the implicated parties.

Accordingly, Plaintiffs request a Recommendation that Defendants are to immediately produce the requested MDL materials.

## II. BACKGROUND

On July 3, 2023, Plaintiffs propounded RFPs seeking all: (1) expert reports and backup

2854.003/2023244.3

7

PLAINTIFFS' OPPOSITION TO DEFENDANTS' BRIEF ADDRESSING THE DISCOVERY REFEREE'S RECOMMENDATION REGARDING PLAINTIFFS' MOTION TO COMPEL

materials from the MDL (RFP No. 14); (ii) MDL deposition transcripts (RFP No. 15); and (iii) hearing transcripts and unredacted copies of sealed filings from the MDL (RFP Nos. 16 and 17). In response, Defendants initially objected and refused to produce any material. While Defendants have now agreed to produce their expert reports and depositions only, they have still failed to do so.

In stark contrast, VHS has produced claims data for Verity's six hospitals dating back to 2010, its financial statements, commercial contracts with national and regional insurers, and continues to produce documents as they become available. Prime has produced its summary plan descriptions in response to just one of Defendants' requests, which alone, totaled over 25,000 pages. As Judge Kleinberg astutely noted, "[t]he papers filed by both sides reflect non-compliance by Defendants." (Apr. 25 Rec. at pp. 1:26-2:1.)

Throughout the past year, Defendants have maintained that the MDL Protective Order bars their production of the responsive materials. However, the MDL Protective Order provides in relevant part:

> To the extent that a Party or their counsel receives a discovery request or subpoena in another case for Confidential Materials of any Party or third party, ***such Party shall notify counsel for the Party, third party, and/or designating party whose material is sought in writing within five (5) business days of the receipt of such request*** or subpoena or otherwise within a reasonable time that allows the Party or third party whose Confidential Material is sought to seek to protect it from disclosure. The Party subject to such discovery request or subpoena shall not produce or disclose the requested Confidential Materials absent the written consent of the Party or third party whose Confidential Material is sought or if a court of competent jurisdiction orders the production.

(Grossbard Decl., Ex. 2 at p. 22 [emphasis added].)

Despite the MDL Protective Order's clear requirement that Defendants provide the MDL plaintiffs with notice when they received Plaintiffs' RFPs in early July 2023, it was not until May 16, 2024 that Defendants reached out to the MDL Plaintiffs to discuss the production of the requested materials. (See Grossbard Decl., Ex. 6 at p. 2 ["Your May 16, 2024 letter was the first official notification of the request for information we received."].) Because the MDL plaintiffs declined to provide their permission to produce the requested materials, Defendants assert that the MDL Protective Order precludes them from doing so, notwithstanding California law otherwise.

2854.003/2023244.3

8

PLAINTIFFS' OPPOSITION TO DEFENDANTS' BRIEF ADDRESSING THE DISCOVERY REFEREE'S
RECOMMENDATION REGARDING PLAINTIFFS' MOTION TO COMPEL

## III.    ARGUMENT

### A.    The MDL Protective Order Does Not Prevent Defendants' Production of Responsive Materials

Defendants attempt to create ambiguity in the April 25 Recommendation where none exists. There, Judge Kleinberg found "[a] crucial difference between the sides' discovery performance is Plaintiffs were not part of the MDL litigation . . . . Recommendation: Defendants should be ordered to comply with discovery without further delay." (Apr. 25 Rec. at p. 3:6-11.) But according to Defendants, the April 25 Recommendation does not require that Defendants produce the MDL materials of other entities. (Def. Br. at p. 4:21-22.) This assertion is baseless as such limiting language is ***completely absent*** from the April 25 Recommendation.

In fact, courts routinely grant motions to compel production of expert reports, depositions and document productions when the issues in prior litigation are substantially similar and the requested documents are relevant to the claims and defenses in the litigation because such "pertinent information…may not reasonably be withheld from discovery." (*ConsumerInfo.com, Inc. v. One Technologies LP* (C.D. Cal., May 4, 2010, No. CV 09-3783-VBF(MANx)) 2010 WL 11507581, at *6-7 (hereafter *ConsumerInfo.com*) [where Plaintiff was involved in prior litigation, the court ordered production of documents produced in the prior litigation by parties and third parties, as well as deposition transcripts, documents filed under seal, witness statements and expert reports because those categories related to the same "issue[s] in the present litigation."]; see also *Nat'l Steel Products Co. v. Superior Court* (1985) 164 Cal.App.3d 476, 492-493 [expert report prepared to assist defendant's counsel in prior litigation obtained by defendant's later California counsel as background material in preparation for subsequent litigation was discoverable in the subsequent litigation to the extent relevant to the issues raised in such litigation].)

Moreover, Defendants' reliance on the MDL Protective Order to justify their position is unavailing. The fact that there is a protective order in prior litigation does not impose a blanket prohibition on production. (See, e.g., *ConsumerInfo.com*, *supra*, 2010 WL 11507581, at *7 [ordering production of party documents, third party documents, deposition transcripts, and expert reports from prior litigation notwithstanding the terms of the protective order in the prior case].)

9

In addition, the MDL Protective Order includes no such blanket prohibition. Rather, it provides that Defendants shall not produce confidential material "absent the written consent of the Party or third party whose Confidential Material is sought *or if a court of competent jurisdiction orders the production*." (Grossbard Decl., Ex. 2 at p. 3 [emphasis added].) While the MDL plaintiffs declined to provide their written consent, the scope of permission does not stop there. Defendants dismiss this additional avenue for production whereby the court may so order it, and instead condemn Plaintiffs for not seeking permission from the MDL plaintiffs.[2]

As such production of the MDL plaintiffs' expert reports and depositions would not violate the MDL Protective Order because it is well established that the Superior Court of Alameda is a "court of competent jurisdiction" that has the power to adjudicate the current proceedings. (*Campanelli v. Regents of University of California* (1996) 44 Cal.App.4th 572, 582; see also *Kashama v. Century Ins. Group* (N.D. Cal., May 12, 2009, No. C 09-1298 SI) 2009 WL 1312940, at *2 [defendant bound by "the jurisdiction of any court of competent jurisdiction . . . here, Alameda County Superior Court"]; *Payne v. United California Bank* (1972) 23 Cal.App.3d 850 [affirming decision by Alameda Superior Court as a court of competent jurisdiction].) Though Defendants hold out the MDL plaintiffs' contrary opinion as authoritative (Def. Br. 6:21-24), the law does not support that position. "A court of competent jurisdiction is a court with the power to adjudicate the case before it." (*Zhang v. Superior Court of Los Angeles County* (2022) 85 Cal.App.5th 167, 176 [citing *Lightfoot v. Cendant Mortg. Corp.* (2017) 580 U.S. 82, 91–92, citing Black's Law Dictionary 431 (10th ed. 2014)] ["[a] court that has the power and authority to do a particular act; one recognized by law as possessing the right to adjudicate a controversy"].) It should go without saying that Alameda Superior Court fulfills that standard.

## B.   The MDL Materials Are Relevant and Readily Available to Defendants

Despite Defendants' contentions otherwise, Plaintiffs have unequivocally demonstrated the

---

[2] But there is no basis to require Plaintiffs to do so. The MDL Protective Order is devoid of any such requirements. By contrast, it mandates that Defendants "shall notify" counsel for the MDL parties, third parties or designating parties, within 5 business days of receipt of the request. (Grossbard Decl., Ex. 3 at p. 3.)

2854.003/2023244.3

10

PLAINTIFFS' OPPOSITION TO DEFENDANTS' BRIEF ADDRESSING THE DISCOVERY REFEREE'S RECOMMENDATION REGARDING PLAINTIFFS' MOTION TO COMPEL

relevance of the requested expert reports and backup materials, deposition transcripts, hearing transcripts, and unredacted court filings from the MDL. It is well-established that "[t]he scope of discovery is very broad" in California and includes admissible evidence as well as matters that "appear reasonably calculated to lead to the discovery of admissible evidence." (*Tien v. Superior Court* (2006) 139 Cal.App.4th 528, 535.) It follows that "relevant evidence" is defined as "evidence . . . having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.)

Here, the consolidated MDL arose from numerous actions filed in federal courts around the country concerning the same allegations as the present suit. Namely, that the Defendant Blues engaged in anticompetitive schemes and violated antitrust laws by allocating markets for health insurance into exclusive service areas, boycotting providers outside of such service areas, and illegally fixing prices on reimbursement rates for healthcare. As such, the MDL involves the same defendants, similarly situated plaintiffs, and nearly identical allegations of a nationwide conspiracy and anticompetitive agreements, as well as similar, if not the same defenses, to those present in this case.

The materials at issue all relate to fundamental allegations present both here and in the MDL, where the MDL Court made several key rulings that are equally applicable to Plaintiffs' claims. Moreover, as the requested materials are not privileged, are relevant to the subject matter of this action, and are reasonably calculated to lead to the discovery of admissible evidence, they are discoverable and Defendants must produce them. For example, the non-Defendant coconspirator Blues' deposition transcripts are relevant here because Plaintiffs have alleged that all Blues were part of the conspiracy. This is precisely the import of Code Civ. Proc. § 2017.010 — to obtain "the identity and location of persons having knowledge of any discoverable matter, as well as of the existence, description, nature, custody, condition, and location of any document . . . ." (See also *Flagship Theatres of Palm Desert, LLC v. Century Theatres, Inc.* (2011) 198 Cal.App.4th 1366, 1383, as modified on denial of reh'g on other grounds, (Sept. 29, 2011) and review denied, (Nov. 30, 2011) [independent movie theater operator's discovery, in an antitrust action against a competing chain alleging circuit dealing, was not limited to the geographic area in

PLAINTIFFS' OPPOSITION TO DEFENDANTS' BRIEF ADDRESSING THE DISCOVERY REFEREE'S RECOMMENDATION REGARDING PLAINTIFFS' MOTION TO COMPEL

which the independent operator and competitor competed, as the essence of the independent operator's claim was that the competitor had used its power outside of their shared market to influence competition within their market, and the independent operator could not gather evidence in support of that claim if it was limited to collecting evidence within their market].) Thus, Defendants' arguments surrounding the relevance of these materials is unfounded.

Contrary to Defendants' assertions, Plaintiffs are not seeking "duplicative discovery." In fact, Plaintiffs are merely seeking **complete** discovery. Defendants decided to selectively produce certain materials from the MDL, such as deposition transcript and expert reports, despite having access to all of the requested materials. Now, in another deceptive ploy, Defendants seek to evade their discovery obligations and inappropriately shift the burden onto Plaintiffs to "identify any specific, relevant materials missing from these productions…" (Def. Br. at 12:13-14.) Notably, Defendants fail to cite any authority that supports such a position. (See *Gottlieb v. Iskowitz* (Cal.Ct.App., June 20, 2012, No. B216029) 2012 WL 2337290, at *8 ["[Plaintiff] cites no authority for the proposition that opposing counsel was required to pore over the 15 million documents in their entirety in order to ascertain [Plaintiff's] compliance with his discovery obligations.].)

Defendants consistently argue they cannot produce the MDL Plaintiffs' materials as they are not their own. However, both Alabama and California "[c]ourts have repeatedly observed that once a party has given testimony through deposition or expert reports, those opinions do not 'belong' to one party or another, but rather are available for all parties to use at trial." (*Kerns v. Pro-Foam of South Alabama, Inc*. (S.D. Ala. 2007) 572 F.Supp.2d 1303, 1311; *In re Application of Republic of Ecuador* (N.D. Cal. 2012) 280 F.R.D. 506, 516 [same].) Here, Defendants are not only in possession of the relevant materials but also are entitled to produce them.

### 1.    MDL Plaintiffs' Expert Reports and Backup Materials

Generally, parties will produce expert reports from prior litigation where the information at issue is relevant to the claims and defenses in the action. Defendants improperly attempt to relitigate the relevance of the requested MDL expert backup files by arguing they are duplicative, but also to the extent they are not, that Plaintiffs are not entitled to that information. But

2854.003/2023244.3

12

Defendants' argument cuts against itself, in that Defendants highlight the unique and relevant information ascertainable from the MDL expert backup files. (See Def. Br. at 12:19-21.) Defendants should not be permitted to shield Plaintiffs from reviewing these documents, particularly to the extent they discuss the MDL plaintiffs' models under rebuttal by Defendants' experts.

In addition, with respect to the experts Defendants specifically identified as purportedly irrelevant, Plaintiffs previously explained that those reports are relevant to Plaintiffs' case, as each of the experts opined on the harm suffered by provider class members, who were similarly situated to Plaintiffs, and experienced the same harm as the result of Defendants' anticompetitive conduct. Defendants attempt to distinguish the applicability of Dr. Haas-Wilson, Dr. Slottje, Dr. Frech, and Dr. Rubinfeld's reports by emphasizing that the experts opined on an Alabama MDL class, but that factor is irrelevant as Plaintiffs seek these reports to understand the methodology utilized. In particular, Defendants stress that Dr. Pakes' report is irrelevant because Dr. Pakes examined and modeled entry by Blue Plans in Alabama in a but-for world and "Alabama has nothing to do with Plaintiffs' case" and vaguely assert "the economics are different." (Def. Br. 8:9-11.) Yet, Defendants fail to elaborate on the implied immense differences between the states and how that actually impacts the economics at play. The simple truth is that the MDL plaintiffs brought class actions on behalf of nationwide classes, making Defendants' argument that the expert reports are limited to the Alabama market, a red herring. Furthermore, Defendants' position that Dr. Haas-Wilson's report is irrelevant because there are already two Blue Plans in California misses the point. Central to Plaintiffs' allegations is that absent a market allocation agreement, there could be three or more Blue Plans in California, allowing for unfettered competition. In fact, Prime is located in 14 states but the other 13 states aside from California each only have one Blue Plan.

Ultimately, all of the experts Plaintiffs identified address topics that remain at issue in this litigation:

- Impact of the challenged Blue Rules on competition and reimbursement rates to providers, insurance premiums paid by subscribers, output and quality: Dr. Haas-Wilson; Dr. Murphy; and Dr. Rubinfeld.

2854.003/2023244.3

13

- The relationship between provider reimbursement rates and insurer market concentration level, and subscriber premiums and insurer market concentration level: Dr. Topel; Dr. Trish.

- Market definition, including alternate sources of revenue and product substitutes: Dr. Wu.

- Whether Blue Plans are two-sided platforms that compete in a two-sided market: Dr. Evans.

- The Blue Plans' history, including the development of its anticompetitive arrangements and conduct: Dr. H.E. Frech III.

- The criteria of whether Blue Plans would enter each other's territory in the absence of the Exclusive Service Areas: Dr. Ordover.

- Damages for provider plaintiffs: Dr. Slottje.

- Impact of the Blues' conduct on insurer entry into Alabama and resulting consumer harm: Dr. Pakes.

- Whether executive compensation by the Blues is excessive in comparison to other profit and non-profit companies: Lisa B. Perlmutter.

- Accounting methodology for determining the Blues profitability and analysis of Blue Cross Blue Shield Alabama's profitability: David Dillon; Nancy Litwinski.

- Analysis of factors driving increase in healthcare costs: Dr. Van Horn.

(Pltfs.' Reply Br. at pp. 2-3.)

The MDL expert materials can direct further fact discovery here related to the veracity of the experts' contentions, and the use and accuracy of such facts and data, all of which Defendants already have the ability to do given their existing possession of the relevant materials. Production of the MDL plaintiffs' expert reports would put Plaintiffs on an equal playing field, particularly to the extent that the opinions of Defendants' experts relate to the opinions of the MDL plaintiffs' experts. Plaintiffs will otherwise be forced to review Defendants' expert reports without that crucial context, especially when Defendants' experts are rebutting Plaintiffs' experts' opinions. Accordingly, Plaintiffs have set forth the requisite specific facts demonstrating good cause to

justify discovery. (Code Civ. Proc. § 2017.010.)

### 2.    **MDL Deposition Transcripts**

As with the expert reports, Defendants may produce the deposition transcripts upon a court order from a court of competent jurisdiction, and no blanket prohibition on their production applies. (See *infra*, III.A.) Moreover, the depositions taken in the MDL of people in various roles in relation to the Blues' anticompetitive conduct are all relevant to Plaintiffs' claims here, including but not limited to, the various parties' experts, similarly situated MDL plaintiffs, self-insured employers, third party benefits administrators, other non-party insurers, and those coconspirator Blues (and their employees) who participated in the conspiracy, but are no longer defendants in this action because their motion to quash on grounds of jurisdiction was granted here.

For the same reasons mentioned above regarding expert materials from the MDL Action, such transcripts are relevant to this matter and should be produced as they cover the ***same*** legal claims and defenses in this action. (*ConsumerInfo.com, supra,* 2010 WL 11507581, at \*3, 7 [granting motion to compel "***all*** deposition transcripts, affidavits, declarations and witness statements" from multiple prior civil actions, as well as "transcripts of pre-enforcement depositions" before the FTC involving the same plaintiff] [emphasis added].) It is precisely because the materials at issue come from "actions bearing a … nexus to this case" that this motion to compel production of deposition transcripts should be granted. (*Apple Inc. v. Samsung Electronics Co*. (N.D. Cal. Apr. 12, 2012, No. 11-cv-1846-LHK-PSG) 2012 WL 1232267, at \*5 [granting motion to compel production of deposition transcripts].) Concerns of confidentiality do not prohibit their production, that is what the protective order entered into in this case is for. *Infernal Tech., LLC v. Microsoft Corp*. (E.D. Tex. May 3, 2019, No. 2:18-cv-00144-JRG), 2019 WL 5388442, at \*1-2.

Defendants stress that Plaintiffs have failed to establish relevance, however, Plaintiffs are necessarily limited in their ability to expand upon this subject without actually reviewing the depositions. Moreover, Defendants' continued emphasis on the fact that the "discovery focused on Alabama-specific issues and plaintiff classes not present here" is of no import. (Def. Br. at 10:8-

PLAINTIFFS' OPPOSITION TO DEFENDANTS' BRIEF ADDRESSING THE DISCOVERY REFEREE'S
RECOMMENDATION REGARDING PLAINTIFFS' MOTION TO COMPEL

9.) If the subject matter of the depositions deals with the same nationwide anticompetitive agreements and conspiracy alleged here, all of the deposition transcripts are relevant to the action and can lead to the discovery of admissible evidence. This is enough to mandate production.

### 3.   MDL Sealed Filings and Hearing Transcripts

Plaintiffs seek all unredacted filings, including redacted briefs, and hearing transcripts from the MDL. Under the broad discovery standard in California, this information is justified for the same reasons discussed above, as such materials are clearly relevant given their relation to the other material Defendants are reproducing from the MDL. The MDL filings and transcripts deal with the *same* antitrust claims over the *same* alleged nationwide conduct and agreements by the *same* coconspirators involved in this action. Courts have granted similar motions to compel in this context. (See, e.g., *Finjan, Inc. v. Zscaler, Inc.* (N.D. Cal., Apr. 9, 2019, No. 17-CV-06946-JST-KAW) 2019 WL 1543514, at *3 [Defendant ordered to produce its own discovery responses from prior litigation as well as "deposition transcripts, expert reports, or declarations from its own witnesses . . . ."].) Defendants maintain that Plaintiffs are not entitled to these materials because Plaintiffs can glean some information from the docket itself. However, this unnecessary restriction does not provide sufficient information. First, the hearing transcripts are not available on the docket. Second, the redacted filings may have been produced by a Blue that is no longer part of this litigation. These documents could thus contain key positions and admissions that would be relevant in the current litigation, but are unavailable to Plaintiffs. Third, the redacted briefs will not be part of any parties' document production. Moreover, given the over three thousand docket entries in the MDL, it would be like searching for a needle in a haystack. Since Plaintiffs are not parties to the MDL, they would have to access the items requested through the public docket, and thereby incur substantial fees to obtain them. On the other hand, Defendants have failed to provide any evidence to suggest that this Request would impose a remotely undue burden on them. (*West Pico Furniture Co. of Los Angeles v. Superior Court In and For Los Angeles Cnty.* (1961) 56 Cal.2d 407, 417 (hereafter *West Pico*); *Williams v. Superior Court* (2017) 3 Cal.5th 531, 550.) This is unsurprising given that these materials are readily accessible to Defendants.

Finally, Defendants seek to withhold one sealed transcript on the basis of mediation

privilege because "it discusses mediation-related information." (Def. Br. at 11:17-18.) However, not all information discussed in mediation is protected by the privilege. (See, e.g., *Cassel v. Superior Court* (2011) 51 Cal.4th 113, 125 ["direct physical evidence itself is not protected, even if presented in a mediation, because such evidence is not a 'writing'" and "a 'writing' is not protected 'solely by reason of its introduction or use in a mediation.'"].) Defendants cite Alabama's local state rule regarding the disclosure of mediation information to support their position. Yet, the same section also provides, "[i]nformation otherwise admissible or subject to discovery does not become inadmissible or protected from discovery solely by reason of its use in mediation." (Ala. Civ. Ct. Mediation R. 11, subd. (b)(1).) Thus, Defendants' characterization of the information alone as being from the mediation, is not sufficient to evoke the privilege.

Accordingly, Defendants' arguments concerning withholding the sealed transcript are unavailing. However, in the spirit of cooperation and to maintain a fair and balanced approach, Plaintiffs propose that Defendants redact any information covered by the mediation privilege as opposed to withholding the entire transcript.

**C.    Defendants Have Made No Showing that Producing the Requested Materials Would Be Unduly Burdensome**

Under the provision in Code Civ. Proc. § 2017.020 that discovery must be limited if "the burden, expense, or intrusiveness of that discovery clearly outweighs the likelihood that the information sought will lead to the discovery of admissible evidence," it is well established that "the party opposing discovery has an obligation to supply the basis for this determination." (*Williams v. Superior Court, supra*, 3 Cal. 5th 531, 549.)

Defendants provide no evidence "showing the quantum of work required" to produce such discovery, and thus fail to establish it would be oppressive. (*West Pico, supra*, 56 Cal.2d at p. 417.) Defendants' evidentiary burden requires the submission of a declaration explaining the time and expenses involved. (*Williams, supra*, 3 Cal.5th at p. 550.) But Defendants failed to "offer any evidence in support of the claim, such as evidence showing how long, how difficult, or how expensive it would be to produce the … scope of reports requested. As such, [Defendants have] not met [their] burden to support [their] objections." (*Whitaker v. ELC Beauty LLC* (C.D. Cal.,

2854.003/2023244.3

17

Aug. 20, 2020, No. 819CV00407DSFJDEX) 2020 WL 5834293, at *3.) Defendants' general assertions that providing these materials would be oppressive, are insufficient and must be disregarded.

**IV.    CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request the Discovery Referee mandate that the April 25 Recommendation requires Defendants to produce additional materials, including the MDL Plaintiffs' Materials.

DATED:  June 14, 2024                              BARTKO LLP

By: _____
Patrick M. Ryan
Attorneys for Plaintiffs VHS LIQUIDATING
TRUST, PRIME HEALTHCARE SERVICES,
INC., PRIME HEALTHCARE FOUNDATION,
INC. and PRIME HEALTHCARE
MANAGEMENT, INC.

2854.003/2023244.3
18