FILED
2024 Jun-28  PM 04:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

# Exhibit H

CHRISTOPHER J. KELLY (SBN 276312)
cjkelly@mayerbrown.com
MAYER BROWN LLP
3000 El Camino Real, Suite 300
Palo Alto, CA 94306
Tel: (650) 331-2025
Fax: (650) 331-2060

KARIN A. DEMASI (*pro hac vice*)
kdemasi@cravath.com
LAUREN R. KENNEDY (*pro hac vice*)
lkennedy@cravath.com
DAVID H. KORN (*pro hac vice*)
dkorn@cravath.com
LILLIAN S. GROSSBARD (*pro hac vice*)
lgrossbard@cravath.com
CRAVATH, SWAINE & MOORE LLP
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Tel: (212) 474-1000
Fax: (212) 474-3700

*Counsel for Defendant Blue Cross Blue Shield Association*
*Counsel for additional Defendants listed below*

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF ALAMEDA

| | |
|---|---|
| VHS LIQUIDATING TRUST, et al., | Case No. RG21106600 |
| Plaintiffs, | *Assigned for All Purposes to* |
| v. | *Hon. Noël Wise, Department 21* |
| BLUE CROSS OF CALIFORNIA, et al., | *Referred to Hon. James P. Kleinberg (Ret.) to issue recommendations as Discovery Referee* |
| Defendants. | **DEFENDANTS' BRIEF ADDRESSING THE DISCOVERY REFEREE'S RECOMMENDATION REGARDING PLAINTIFFS' MOTION TO COMPEL** |
| | Complaint Filed:    July 27, 2021 |
| | Trial Date:          None set |

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ............................................................................................................ii

INTRODUCTION .......................................................................................................................... 1

FACTUAL BACKGROUND ......................................................................................................... 2

ARGUMENT .................................................................................................................................. 4

I.     Defendants Need Not—and, in Fact, Cannot—Produce Other Entities' Confidential MDL Materials Covered by the MDL Protective Order. ............................................... 4

     A.     MDL Plaintiffs and Non-Parties Have Not Consented to Production of All MDL Materials Sought. ........................................................................................ 5

     B.     There Is No Basis To Order Production of Other Entities' MDL Materials in the Absence of Their Consent. ......................................................................... 6

          i.     MDL Plaintiffs' Expert Reports and Backup Materials (RFP No. 14) ................. 6

          ii.     MDL Deposition Transcripts (RFP No. 15) .......................................................... 9

          iii.     MDL Sealed Filings and Hearing Transcripts (RFP Nos. 16-17)....................... 10

II.     Defendants Are Not Obligated to Give Plaintiffs Duplicative Discovery of Their Own Materials. ............................................................................................................. 12

CONCLUSION............................................................................................................................. 13

DEFS.' BRIEF RE REFEREE'S REC. RE PLS.' MOTION TO COMPEL; CASE NO. RG21106600

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Calcor Space Facility, Inc. v. Superior Ct.*
(1997) 53 Cal.App.4th 216 ............................................................................................. 8, 10

*Firepower Mktg. v. Red Robin Int'l, Inc.*,
(W.D. Wash. Oct. 22, 2012) 2012 WL 5205882 .............................................................. 12

*Largan Precision Co. v. Samsung Elecs. Co.*
(S.D. Cal. Feb. 9, 2015) 2015 WL 11251729 ..................................................................... 7

*Williams v. Superior Ct.*
(2017) 3 Cal.5th 531 ...................................................................................................... 8, 10

**Statutes & Rules**

Alabama Civil Court Mediation Rule 11 ................................................................................. 11

California Code of Civil Procedure § 2017.010 ................................................................... 6, 8

California Code of Civil Procedure § 2017.020 ................................................................ 6, 9, 13

California Code of Civil Procedure § 2019.030 ..................................................................... 13

California Code of Civil Procedure § 2019.030 ..................................................................... 12

California Code of Civil Procedure § 2031.310 .................................................................. 8, 11

Defendants respectfully request that the Discovery Referee clarify the April 25, 2024 Report and Recommendation Regarding Plaintiffs' Motion to Compel ("Recommendation") to state that (i) Defendants have complied with their discovery obligations in response to Plaintiffs' First Set of Requests for Production of Documents to All Defendants ("RFP") Nos. 14 through 17 by agreeing to produce their own confidential materials from *In re Blue Cross Blue Shield Antitrust Litigation*, MDL No. 2406, No. 2:13-cv-20000 (N.D. Ala.) (the "MDL"), as described herein, and (ii) Defendants should not be ordered to produce the confidential materials of other entities from the MDL, which Defendants are barred from producing under the governing MDL protective order.[1]

## **INTRODUCTION**

Plaintiffs opted out of the MDL, a decades-long multidistrict litigation pending in the Northern District of Alabama.  Defendants have already agreed to produce to Plaintiffs a significant amount of material from the MDL in response to Plaintiffs' RFPs, including much that is not even arguably relevant to Plaintiffs' case.  This material includes every single document that each Defendant produced in the MDL, totaling more than **13 million documents** and **70 million pages**; terabytes of Defendants' structured data, including sensitive claims and enrollment data that Defendants produced in the MDL; 166 deposition transcripts of Defendants' own current and former employees who were deposed in the MDL; and 8 detailed, Federal Rules-compliant expert reports totaling over 1,428 pages from experts that Defendants put forward in the MDL.  But Plaintiffs want more.  Plaintiffs have moved to compel production of <u>all</u> expert reports and backup materials from the MDL, <u>all</u> deposition transcripts from <u>every</u> individual and entity deposed in the MDL, and unredacted copies of <u>all</u> sealed filings and hearing transcripts from the MDL (together, "MDL Materials")—including materials that *belong to MDL plaintiffs* that *Defendants are not even permitted to produce* under the governing MDL protective order (the "MDL Protective Order").  Plaintiffs claim they are entitled to this material because the Discovery Referee's April 25 Recommendation directed Defendants to "comply with

---

[1] The Stipulated Further Briefing Schedule Relating to Discovery Referee Recommendations, approved by the Discovery Referee on May 21, 2024, permits the submission of an additional brief of no more than 20 pages addressing the April 25, 2024 Recommendation regarding Plaintiffs' Motion to Compel and/or the May 6, 2024 Recommendation regarding Defendants' Motion to Compel.  For administrative clarity, Defendants submit today two briefs (each addressing one of the two Recommendations), which combined do not exceed the 20 additional pages allowed by briefing in compliance with the approved schedule.

discovery without further delay". Respectfully, Defendants request that the Discovery Referee clarify the Recommendation to state that (i) Defendants have complied with this directive by agreeing to produce the voluminous materials of their own described above; and (ii) Plaintiffs are not entitled to obtain from Defendants the additional confidential MDL Materials they seek.

Specifically, the Discovery Referee should clarify that the Recommendation does **not** require Defendants to produce the confidential materials of other MDL parties or non-parties, none of which are parties in this case. Defendants are barred from producing these materials by the MDL Protective Order, absent the producing entity's affirmative consent or a court order. Defendants do not have that consent. To the contrary, MDL plaintiffs have affirmatively objected to the production of their materials to Plaintiffs in this litigation. (See Section I.A, *infra*.) Nor is there any basis for a court order directing reproduction of these materials: Plaintiffs have not met their burden of showing that any of these materials is even relevant to this litigation, and at least one set of MDL plaintiffs has said an order from a California court (as opposed to the MDL court) is insufficient to override the MDL Protective Order in any event. (See Section I.B, *infra*.)

Plaintiffs are likewise not entitled to wholesale reproduction of Defendants' expert backup materials or sealed filings and transcripts from the MDL. To the extent Defendants may produce these materials (*i.e.*, because they are Defendants' documents and information to produce), Plaintiffs are receiving almost all of them in response to other document requests, and Plaintiffs are not entitled to duplicative discovery. And to the extent Plaintiffs are not receiving these documents, it is generally because they are other entities' materials and information that Defendants are barred from producing under the MDL Protective Order for the reasons just described. (See Section II, *infra*.)

For these reasons, Plaintiffs' motion to compel discovery of the additional MDL Materials is due to be denied. Defendants have already complied with the April 25 Recommendation—and satisfied their discovery obligations in response to RFP Nos. 14-17—by agreeing to produce significant volumes of their own MDL Materials, as described herein.

## FACTUAL BACKGROUND

The MDL is comprised of numerous individual and class action cases brought by subscribers of Blue Cross Blue Shield health plans ("Blue Plans") (the Subscriber-Track case), which have now been

settled, and providers with which Blue Plans contract to provide healthcare services (the Provider-Track case), alleging that certain Blue System rules are anticompetitive.  In the interests of efficiency in handling pretrial proceedings, the MDL court "streamlined" two cases originally filed in Alabama and entered "an accelerated scheduling order applicable to discovery, class certification motions, *Daubert* motions, and dispositive motions" in those cases.  (Grossbard Decl. ("Grossbard"), Ex. 1 at 4-5.)  Thereafter, discovery focused on class certification and merits issues related to these two Alabama actions, which were primarily about the Alabama insurance markets.

As part of that discovery, the MDL court also entered a Qualified Protective Order ("MDL Protective Order") to protect confidential materials produced by any party or non-party in the MDL. (See *id.*, Ex. 2.)  The MDL Protective Order provides that materials produced in the MDL "shall be used solely for the purpose of prosecuting or defending this Proceeding [*i.e.*, the MDL] . . . , and for no other purpose whatsoever and shall not be disclosed to any person except in accordance with the terms of this Protective Order".  (*Id.*, Ex. 2 ¶ 2.)  Where an MDL party receives a discovery request in another case for the production of confidential material from the MDL, the MDL Protective Order directs that party to provide notice "within a reasonable time that allows the Party or third-party whose Confidential Material is sought to seek to protect it from disclosure".  (*Id.*, Ex. 3 ¶ 1.)  The MDL party receiving the discovery request, however, "shall not produce or disclose the requested Confidential Materials absent the written consent of the Party or third-party whose Confidential Material is sought or if a court of competent jurisdiction orders the production".  (*Ibid.*)

Despite this clear prohibition, Plaintiffs' March 29, 2024 Motion to Compel Defendants' Production of Expert Reports and Other Material from Related Litigation ("Motion to Compel" or "Mot.") seeks to compel the reproduction of three broad categories of materials from the MDL:  (i) all expert reports and backup materials from the MDL (in response to Plaintiffs' RFP No. 14); (ii) all MDL deposition transcripts (in response to Plaintiffs' RFP No. 15); and (iii) unredacted copies of all sealed filings and hearing transcripts from the MDL (in response to Plaintiffs' RFP Nos. 16 and 17). These requests cover an extraordinary volume of materials—31 expert reports plus all documents and data on which those experts relied; more than 300 deposition transcripts of every party, non-party and expert deposed in the MDL; and more than 1,200 documents filed under seal, many to protect the

DEFS.' BRIEF RE REFEREE'S REC. RE PLS.' MOTION TO COMPEL; CASE NO. RG21106600

confidential information of non-parties to this litigation—without justification of relevance or need (especially because the focus of MDL discovery was the Alabama insurance markets).  Defendants thus opposed Plaintiffs' Motion to Compel.

On April 25, the Discovery Referee entered a Recommendation on Plaintiffs' Motion that concludes, "Defendants should be ordered to comply with discovery without further delay".  (Apr. 25 Rec. at 3:2.)  The Recommendation also encouraged the parties to continue to meet and confer (*id.* at 6:17-18), which the parties did.  Through those efforts, Defendants agreed to produce (i) their own MDL expert reports from eight different experts; and (ii) the transcripts of every deposition of their own current and former employees taken in the MDL, as well as the depositions of the MDL experts whose reports Defendants agreed to produce.  This is all in addition to the 13 million documents— totaling 70 million pages—of MDL custodial documents Defendants previously agreed to produce, which should include Defendants' own confidential information contained in the requested sealed filings.  (Grossbard, Ex. 4 at 4.)  Although Plaintiffs rejected this offer (*id.*, Ex. 5 at 1), Defendants are still willing to proceed with these productions and have already produced to Plaintiffs nearly all of the more than 13 million documents contained in their MDL document productions.  Defendants now respectfully request the Discovery Referee clarify the Recommendation to find that this proposed production "compl[ies] with discovery" as provided in the Recommendation.  Nothing else remains for Defendants to produce.

## ARGUMENT

**I.     Defendants Need Not—and, in Fact, Cannot—Produce Other Entities' Confidential MDL Materials Covered by the MDL Protective Order.**

Defendants do not understand the April 25 Recommendation to require Defendants to produce the MDL Materials of *other entities* that they are barred from producing pursuant to the terms of the MDL Protective Order.  Such a directive would be inconsistent with the MDL Protective Order itself, which (i) permits Defendants to use those materials solely for purposes of litigating the MDL and (ii) prohibits Defendants from reproducing such confidential material outside the MDL "absent the written consent of the Party or third-party whose Confidential Material is sought or if a court of competent jurisdiction orders the production".  (*Id.*, Ex. 3 ¶ 1.)  Defendants do not have this wholesale

4

consent (see Section I.A, *infra*), and Plaintiffs are not entitled to a court order overriding this lack of consent (see Section I.B, *infra*).

### A.    MDL Plaintiffs and Non-Parties Have Not Consented to Production of All MDL Materials Sought.

Upon receiving the Discovery Referee's April 25 Recommendation, Defendants began the lengthy process of providing notice to all entities potentially impacted by Plaintiffs' Motion to Compel.[2] Far from consenting, MDL Provider and Subscriber plaintiffs—whose expert reports and other materials constitute the majority of what Plaintiffs seek, and who are not parties to the *Prime* case—affirmatively objected to production of *any* of their MDL Materials. (Grossbard, Ex. 6; *id.*, Ex. 7.) MDL Subscriber plaintiffs succinctly stated: "We oppose and object to this production and reserve all rights re same, including but not limited to associated costs and fees". (*Id.*, Ex. 7.) MDL Provider plaintiffs offered more color. In a three-page letter, they argued that "it appears that the *Prime* Plaintiffs are simply seeking to end run the leadership orders in the MDL and seek our work product so they can use it". (*Id.*, Ex. 6 at 2.) MDL Provider plaintiffs stated that "the appropriate way to access these materials is to discuss acquisition of them, from us, in the first instance, and if that does not satisfy the *Prime* plaintiffs, to discuss their production with Judge Proctor", the judge presiding over the MDL; that "any production of these documents without agreement from us or an order from Judge Proctor" is a violation of the MDL Protective Order; and that they "intend to inform . . . Judge Proctor of these issues in the very near future". (*Ibid.*) While Defendants provided Plaintiffs with the contact information for MDL Provider plaintiffs' counsel on May 3, 2024, to allow them to communicate directly (*id.*, Ex. 8), Plaintiffs apparently never contacted MDL Provider plaintiffs about their requests (see *id.*, Ex. 6 at 2).[3]

---

[2] Defendants did this out of an abundance of caution—even though Plaintiffs had not substantiated their request for these non-party materials—because the MDL Protective Order requires notice "within a reasonable time that allows the Party or third-party whose Confidential Material is sought to seek to protect it from disclosure". (Grossbard, Ex. 3 ¶ 1.)

[3] To date, only three non-parties have provided the requisite consent. The Alabama Department of Insurance has consented to the production of transcripts of the MDL depositions of two of its employees, as has Andrews Sports Medicine and one non-party Blue Plan in Mississippi. Although these depositions have little-to-no relevance to this case, given the minimal burden involved, Defendants will reproduce the transcripts here.

5

Thus, Defendants have done all that they can do with respect to these MDL Materials, in order to comply with Plaintiffs' RFPs and with the terms of the April 25 Recommendation, while also complying with the MDL Protective Order.  They simply cannot produce the additional MDL Materials Plaintiffs seek *because those materials are **not** Defendants' to produce*.

**B.      There Is No Basis To Order Production of Other Entities' MDL Materials in the Absence of Their Consent.**

Nor have Plaintiffs provided any reason why Defendants should be ordered to produce the materials of non-parties to this litigation in the absence of their consent.  Plaintiffs have not met their baseline burden of establishing that these materials are even discoverable:  Plaintiffs have not shown they are relevant to any party's claims or defenses in this case (see California Code of Civil Procedure ("CCP") § 2017.010), or that the burden of producing these materials outweighs any marginal relevance they might have (CCP § 2017.020, subd. (a)).  Plaintiffs' effort to obtain from Defendants large volumes of other entities' irrelevant MDL confidential material should be denied.

i.      ***MDL Plaintiffs' Expert Reports and Backup Materials (RFP No. 14)***

Following the Discovery Referee's April 25 Recommendation, Defendants agreed to produce eight of their own expert reports from the MDL in this litigation, even though Defendants dispute that those reports are relevant or properly discoverable in this case.  But Plaintiffs claim to be entitled to more.  They demand that Defendants also produce 20 expert reports that were submitted by MDL plaintiffs, along with all backup materials included with those 20 reports.  MDL plaintiffs have affirmatively objected to the production of these materials (see Section I.A, *supra*); accordingly, Defendants may not produce them absent a court order from "a court of competent jurisdiction" (Grossbard, Ex. 3 ¶ 1).  There is no basis for any such order—and at least one set of MDL plaintiffs has stated that a California court is not "a court of competent jurisdiction" capable of issuing such an order.[4]  (See *id.*)

As an initial matter, Plaintiffs have not demonstrated that they are entitled to an order requiring

---

[4] MDL Provider plaintiffs have expressly taken the position that the referenced court order must come from the MDL court itself, and that an order from a California court would not suffice to permit Defendants to reproduce their MDL Confidential Materials in this litigation. (Grossbard, Ex. 6 at 2 ("[W]e view any production of these documents without agreement from us or an order from Judge Proctor, even with an order from the *Prime* court, as a violation of Paragraph 17 [of] the Protective Order in the MDL (D.E. 550) and as supplemented (D.E. 1488).".)

6

DEFS.' BRIEF RE REFEREE'S REC. RE PLS.' MOTION TO COMPEL; CASE NO. RG21106600

Defendants to produce another entity's expert materials from a different litigation in this one. Indeed, Plaintiffs have not cited any case in their Motion to Compel in which a party was required to produce the expert reports of *another party* from a prior litigation. The closest Plaintiffs have is a single case in which a party was ordered to produce non-party deposition transcripts (not expert reports). (See *Largan Precision Co. v. Samsung Elecs. Co.* (S.D. Cal. Feb. 9, 2015) 2015 WL 11251729.) However, in *Largan*, the court required the movant to apply for relief from the protective order *to the court in the case in which those depositions had been taken* (*id.* at *2)—exactly as MDL Provider plaintiffs say should happen here (see Grossbard, Ex. 6 at 2). The *Largan* court also narrowed the document request at issue to focus only on four highly relevant depositions. (*Largan*, *supra*, at *3.) Here, Plaintiffs have not applied to the MDL court for MDL plaintiffs' materials, and they have not attempted to narrow anything. To the contrary, Plaintiffs seek to circumvent the protections of the MDL Protective Order—and MDL Subscriber and Provider plaintiffs' explicit objections—by demanding Defendants produce all of MDL plaintiffs' materials on MDL plaintiffs' behalf. That is not how the MDL Protective Order works, and Plaintiffs do not cite any California case to the contrary.

Nor have Plaintiffs shown that these non-party expert materials related to the Alabama streamlined actions are relevant to their California case. They are not, and the limited arguments Plaintiffs make (which cover the materials of only five of the experts sought) all fail.

1. **Dr. Haas-Wilson.** Plaintiffs argue that the materials of Dr. Haas-Wilson, who was put forward by MDL Provider plaintiffs, are relevant because Dr. Haas-Wilson supposedly opined on "harm" to "provider class members . . . , who are similarly situated to Plaintiffs". (Mot. at 9:11-12.) That is wrong. Dr. Haas-Wilson's report was submitted in support of a motion to certify an *Alabama class*, purportedly using a class-wide methodology to establish harm, while this case is not a class action where those issues are relevant. Moreover, the question Dr. Haas-Wilson sought to answer on a class-wide basis was the effect of entry of a second Blue Plan into Alabama, whereas there are already two Blue Plans operating in California. (Grossbard, Ex. 9; Mot. at 9:11-20.)

2. **Dr. Slottje.** Plaintiffs argue the expert materials of Dr. Slottje, who was put forward by MDL Provider plaintiffs, are relevant because he "analyzed damages for the class of acute-care provider plaintiffs, who are similarly situated to Plaintiffs here". (Mot. at 9:21-23.) But Dr. Slottje's model was limited to purported damages *in Alabama*, where Verity has no facilities and Prime has just one; and besides, it is a *class damages* model that is not relevant to the individual damages Plaintiffs must prove based on the specific facts of their businesses and agreements. (Grossbard, Ex. 10.)

3. **Dr. Frech.** Plaintiffs state that the expert materials of Dr. Frech, who was put forward by

7

MDL Provider plaintiffs, are relevant because his report supposedly "explained the history and economics of the health insurance industry in the U.S., including [the] origin and development of the Blues" and his testimony "included the analysis and description of 'the anticompetitive actions taken by the BCBSA to maintain the Blues' market power as a system'". (Mot. at 9:24-28.) Plaintiffs mischaracterize Dr. Frech's expert work. Dr. Frech submitted reports in support of class certification and opined that Dr. Haas-Wilson's and Dr. Slottje's methodologies could show class-wide injury, which is irrelevant for the same reasons those reports are irrelevant and because Plaintiffs do not bring Alabama class claims. (Grossbard, Ex. 11 at 4-5.) Furthermore, to the extent what Plaintiffs *really* want is Dr. Frech's historical discussions, that is exactly the type of free-riding on MDL plaintiffs' work to which MDL Provider plaintiffs have strongly objected. (See page 9, *infra*.)

4. **Dr. Pakes.** Plaintiffs claim that the expert materials of Dr. Pakes, who was put forward by MDL Subscriber plaintiffs, are relevant because "Dr. Pakes examined and modeled entry by Blue Plans in Alabama in a but-for world". (Mot. at 10:1-4.) But entry into Alabama has nothing to do with Plaintiffs' case: Plaintiffs are purchasers headquartered in California, where both the Blue Plans in operation under the Blue brands (Anthem Blue Cross of California and Blue Shield of California) and the economics are different.

5. **Dr. Rubinfeld.** Plaintiffs claim that the expert materials of Dr. Rubinfeld, who was put forward by MDL Subscriber Plaintiffs, are relevant because Dr. Rubinfeld opined that "the Blues' ESAs and NBEs lead to '(a) higher insurance premiums; (b) lower quality service; (c) a reduction in output; (d) less innovation; and (e) fewer choices among insurance providers both as to services and products'". (Mot. at 10:5-10.) But Plaintiffs again ignore that Dr. Rubinfeld analyzed the effects of those rules *in Alabama*, not *California*, on a purported class of impacted *Alabama* subscribers purchasing from the *Alabama* Blue Plan, not individual *California* hospital systems purchasing from multiple *California* insurers. (Grossbard, Ex. 12 at 2-4.) Any of Dr. Rubinfeld's opinions concerning the "proposed Nationwide Injunctive Relief Class" (Mot. at 10:6) are likewise irrelevant because Plaintiffs do not seek injunctive relief here.

For the remaining six MDL plaintiffs' experts, Plaintiffs state only that their reports "dealt with the same types of claims or defenses, or applied to a type of plaintiff similarly situated to Plaintiffs here". (Mot. at 8:10-11.) That generic assertion is insufficient to demonstrate relevance, and Plaintiffs' demand that the reports be produced—***over the explicit objection of the parties who proffered these experts in the MDL***—should therefore be denied. (See CCP § 2031.310, subd. (b)(1) ("The motion [to compel] shall set forth specific facts showing good cause justifying the discovery sought by the demand."); *Calcor Space Facility, Inc. v. Superior Ct.* (1997) 53 Cal.App.4th 216, 223-24 (quoting CCP § 2017.010); *Williams v. Superior Ct.* (2017) 3 Cal.5th 531, 539 (same).)

Plaintiffs' demand for the backup materials that accompany these expert reports is objectionable for the additional reason that such production would be incredibly burdensome. These

DEFS.' BRIEF RE REFEREE'S REC. RE PLS.' MOTION TO COMPEL; CASE NO. RG21106600

"backup materials" consist of proprietary econometric models developed and used by some of the aforementioned experts, as well as voluminous data sets those experts used in that modeling. Plaintiffs make no effort to explain why the proprietary models and data sets supporting expert opinions *that have not been put forth in this litigation* are relevant or needed here—and Plaintiffs' Motion to Compel their production should be denied for that reason alone. But even if the backup materials had some nominal relevance, the significant burden and expense of reproducing these proprietary models and terabytes of data is not justified. (CCP § 2017.020, subd. (a) ("The court shall limit the scope of discovery if it determines that the burden, expense, or intrusiveness of that discovery clearly outweighs the likelihood that the information sought will lead to the discovery of admissible evidence.").) Defendants have already produced virtually all of their own MDL documents and have agreed to produce their own responsive MDL structured data—totaling tens of millions of pages and terabytes of data. There is simply no reason to pile MDL plaintiffs' additional documents and data on top. Moreover, many of these backup materials—*e.g.*, MDL plaintiffs' expert models and supporting data computations—are at the heart of what MDL Provider plaintiffs object to Defendants producing: "The appointed Provider MDL leadership and their common benefit fund spent extraordinary resources procuring the discovery and in producing the work product the *Prime* plaintiffs now want for free. This is the very definition of free-riding and is frowned upon by Courts". (Grossbard, Ex. 6 at 2.) Plaintiffs are not entitled to these materials, and cannot use discovery of Defendants in this action to end-run around protections provided to MDL plaintiffs under the MDL Protective Order.

## ii.    *MDL Deposition Transcripts (RFP No. 15)*

Defendants have agreed to produce (i) 166 deposition transcripts of their own current and former employees taken in the MDL, (ii) deposition transcripts for the depositions of the MDL experts whose expert reports Defendants have agreed to produce, and (iii) deposition transcripts from the three consenting non-parties (see page 5, n.3, *supra*). However, Plaintiffs demand that Defendants also produce 134 deposition transcripts of all other MDL parties and non-parties (including depositions of MDL plaintiffs' experts), none of whom are parties to this litigation. Plaintiffs are not entitled to these additional items.

Again, Defendants do not have consent to produce these materials, so they may be produced

9

only upon court order from a court of competent jurisdiction. (See Section I.A., *supra*.) Plaintiffs are not entitled to such an order because they have not even attempted to explain the specific relevance of *any* of the non-Defendant deposition transcripts. Instead, Plaintiffs' demand is based solely on the bald assertion that the depositions are "clearly relevant to this matter" and "clearly cover the same legal claims and defenses in the action". (Mot. at 12:25-26.) That unsupported claim is legally insufficient to meet Plaintiffs' burden on a motion to compel. (See *Calcor*, *supra*, at 223-24 (a motion to compel must affirmatively set forth good cause justifying the discovery sought); *Williams*, *supra*, at 539 (same).) It also is incorrect because much of MDL discovery focused on Alabama-specific issues and plaintiff classes not present here. By way of example, Plaintiffs cannot seriously contend that transcripts of the following depositions are relevant:

- Amy MacRae, PhD: A named plaintiff in the MDL who is an individual healthcare subscriber (*i.e.*, not a large hospital network like Plaintiffs) who lives in Missouri.

- Hess, Hess & Daniel, P.C.: Scott Hess, the corporate designee for a small law firm in Michigan that was a named plaintiff in the MDL.

- Cahaba Family Medicine: Dr. Robert Snyder, the designated corporate witness for non-party Cahaba Family Medicine, a small family practice in a town outside Birmingham, Alabama.

Indeed, the point is made by the few non-parties that have consented to production of their MDL Materials here. For example, the Alabama Department of Insurance consented to the production of depositions that concern the rate filing process for insurance premiums paid by subscribers *in Alabama* and the process by which BCBS-AL and the Department of Insurance entered into a consent order regarding BCBS-AL's rates. Those issues have nothing to do with this case, where Plaintiffs are *California* purchasers of insurance products that must be approved by the *California* Department of Insurance. The Discovery Referee should not recommend compelling Defendants to produce MDL deposition transcripts from non-parties where those non-parties have not given the requisite consent, and Plaintiffs have not demonstrated the relevance of any of the transcripts sought.

   iii.  ***MDL Sealed Filings and Hearing Transcripts (RFP Nos. 16-17)***

Finally, Plaintiffs seek "all unredacted filings and hearing transcripts" from the MDL. (Mot. at 13; see Grossbard, Ex. 13 at 8.) Due to the sensitive nature of materials produced in the MDL, there are approximately 1,275 sealed filings that include redacted briefs and exhibits containing highly

10

confidential competitive and personal health information. The MDL court found with respect to each of these filings that the information was sufficiently sensitive that it should remain under seal on the public docket. While Defendants already have produced nearly all of their MDL unstructured document productions *in full*, which include complete versions of Defendants' own information filed under seal (see Section II, *infra*), they cannot produce other entities' sealed confidential materials.

First, with respect to sealed filings, Plaintiffs have not even attempted to explain the relevance of any of the filings they seek. That is not because Plaintiffs are in the dark about which filings are sealed. Plaintiffs have access to the public, redacted versions of these documents that show what the documents are and, in many cases, show that only a few lines of non-party confidential information are redacted. Defendants also provided Plaintiffs with over 100 pages of indices that include the docket numbers of sealed filings, the corresponding redacted public versions and the applicable Bates numbers. (Defendants' Opposition at 17:11-14 (Apr. 12, 2024).) Plaintiffs' failure to offer any explanation for why the requested discovery is needed or relevant to this litigation is sufficient ground to deny the request. (See CCP § 2031.310, subd. (b)(1) ("The motion [to compel] shall set forth specific facts showing good cause justifying the discovery sought by the demand.").)

Second, with respect to sealed transcripts, there is only one sealed transcript in the MDL, and the MDL court held that it is "privileged from process and discovery" because it discusses mediation-related information. (Grossbard, Ex. 14 at 1-2.) Defendants do not agree to waive that privilege on their own behalf, and they cannot waive it on behalf of MDL plaintiffs. (See Ala. Civ. Ct. Mediation R. 11(b)(1) (prohibiting disclosure of mediation-privileged information unless "the mediator and the parties to the mediation *all agree to the disclosure*") (emphasis added).) The MDL court also ordered that "counsel receiving the transcript **SHALL NOT** allow anyone unnecessary to the redaction process to view the unredacted transcript". (Grossbard, Ex. 14 at 4 (emphasis in original).) If Plaintiffs want this transcript, they could seek it from the MDL court, but they have not done so.

*     *     *

In sum, the Discovery Referee should clarify that the Recommendation does not purport to require Defendants to produce other entities' confidential MDL Materials or to otherwise violate the MDL Protective Order.

**II.    Defendants Are Not Obligated to Give Plaintiffs Duplicative Discovery of Their Own Materials.**

The remaining MDL Materials in dispute are:  (i) the "backup material" for the MDL Defendants' expert reports that Defendants have agreed to produce; and (ii) Defendants own sealed filings.  There is no real dispute as to these materials.  As Defendants have already explained to Plaintiffs on numerous occasions, to the extent Defendants are permitted to produce responsive materials (*e.g.*, because they contain only Defendants' own confidential information), Defendants are already providing these documents in response to Plaintiffs' many other document and data requests.  Plaintiffs are not entitled to duplicative discovery, simply because they prefer to have these documents packaged for them in a certain way.  (See CCP § 2019.030, subd. (a)(1) (the court must restrict discovery if it is "unreasonably cumulative or duplicative"); see also *Firepower Mktg. v. Red Robin Int'l, Inc.* (W.D. Wash. Oct. 22, 2012) 2012 WL 5205882, at *5 ("Plaintiffs are not entitled to have Defendants produce and organize discovery documents in their preferred manner").)  And to the extent Plaintiffs identify any specific, relevant materials missing from these productions, Defendants already have agreed that they will meet and confer in good faith with Plaintiffs regarding their production.

With respect to Plaintiffs' request for Defendants' MDL experts' backup files, Plaintiffs have separately requested, and Defendants already have agreed to produce at significant expense, a huge volume of data based on Plaintiffs' representation that their experts need this data to develop econometric models in this litigation.  (Grossbard, Ex. 15 at 2-4.)  Thus, the data that Plaintiffs have identified as relevant is already being produced.  To the extent what Plaintiffs *really* want is not reproduction of this underlying data itself—but rather, the proprietary econometric models made from such data—Plaintiffs are not entitled to that discovery.  Beyond being irrelevant and prejudicial (see Defendants' Opposition at 10-12 (Apr. 12, 2024)), Defendants' expert models were responding to MDL plaintiffs' models, and many relied on, incorporated, modified or *directly referenced* MDL plaintiffs' models, which Defendants cannot produce.  (Grossbard, Ex. 16 at 4 (describing Dr. Topel's analysis of Dr. Haas-Wilson's model); *id.*, Ex. 17 at 58-62 (discussing Dr. Ordover's adjustments of Dr. Haas-Wilson's model).)  Again, MDL plaintiffs have expressly objected to production of this exact information to Plaintiffs in this case.  (See Section I.A, *supra*.)

DEFS.' BRIEF RE REFEREE'S REC. RE PLS.' MOTION TO COMPEL; CASE NO. RG21106600

With respect to sealed filings, each of the Defendants in this litigation is reproducing its entire MDL document production to Plaintiffs in this case. These MDL reproductions should include unredacted versions of Defendants' own documents and information filed under seal in the MDL (*i.e.*, the only documents and information Defendants have permission to produce under the MDL Protective Order). There is no basis to compel Defendants to undertake a burdensome and unnecessary review of over 1,200 sealed exhibits to "unseal" their own documents and information that Plaintiffs already have in their possession. (CCP § 2017.020, subd. (a).) Nor are Plaintiffs even entitled to duplicative discovery under California law. (CCP § 2019.030, subd. (a).) Finally, to the extent Plaintiffs believe there is a relevant, sealed filing that is not included in Defendants' MDL reproductions that Defendants might be able to produce consistent with the MDL Protective Order, Defendants already have offered to meet and confer regarding the production of those materials at that time. (Grossbard, Ex. 18 at 3-4.)

Simply put, Defendants have already agreed to give Plaintiffs everything they are required to—and can—give them, consistent with the MDL Protective Order. Plaintiffs are not entitled to more.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request the Discovery Referee clarify that (i) Defendants have complied with the April 25 Recommendation by agreeing to produce the MDL Materials described herein, including expert reports of their own MDL experts, transcripts of depositions of their own witnesses taken in the MDL, and their own MDL unstructured document productions and the agreed MDL claims and enrollment data; and (ii) that the Recommendation does *not* suggest Defendants must produce additional materials, including the MDL Materials of non-parties to this litigation that are governed by the MDL Protective Order.

Dated: May 31, 2024

By: MAYER BROWN LLP
CRAVATH, SWAINE & MOORE LLP

*/s/ Elizabeth A. Jose*
CRAIG A. HOOVER (SBN 113965)
E. DESMOND HOGAN (*pro hac vice*)
ELIZABETH A. JOSE (*pro hac vice*)
HOGAN LOVELLS US LLP
Columbia Square
555 13th Street, N.W.
Washington, DC 20004

*/s/ Christopher J. Kelly*
CHRISTOPHER J. KELLY (SBN 276312)
MAYER BROWN LLP
3000 El Camino Real, Suite 300
Palo Alto, CA 94306
Tel: (650) 331-2025
Fax: (650) 331-2060
cjkelly@mayerbrown.com

13

DEFS.' BRIEF RE REFEREE'S REC. RE PLS.' MOTION TO COMPEL; CASE NO. RG21106600

Tel: (202) 637-5600
Fax: (202) 637-5910
craig.hoover@hoganlovells.com
desmond.hogan@hoganlovells.com
elizabeth.jose@hoganlovells.com

AMBER M. TRINCADO (SBN 260186)
HOGAN LOVELLS US LLP
4 Embarcadero Ctr, Suite 3500
San Francisco, CA 94111
Tel:  (415) 374-2300
Fax:  (415) 374-2499
amber.trincado@hoganlovells.com

BRHAN A. AHMED (SBN 328157)
HOGAN LOVELLS US LLP
1999 Avenue Of The Stars, Suite 1400
Los Angeles, CA 90067
Tel:  (310) 785-4600
Fax:  (310) 785-4601
brhan.ahmed@hoganlovells.com

*Counsel for Elevance Health f/k/a Anthem,
Inc., and all of its named subsidiaries in this
action; Louisiana Health Service & Indemnity
Company (Blue Cross and Blue Shield of
Louisiana); BCBSM, Inc. (Blue Cross and
Blue Shield of Minnesota); Aware Integrated,
Inc.; Horizon Healthcare Services, Inc.
(Horizon Blue Cross and Blue Shield of New
Jersey); Blue Cross & Blue Shield of Rhode
Island; Cambia Health Solutions, Inc.;
Regence Blue Cross Blue Shield of Utah;
Regence Blue Shield (of Washington);
Regence Blue Cross Blue Shield of Oregon*

KARIN A. DEMASI (*pro hac vice*)
LAUREN R. KENNEDY (*pro hac vice*)
DAVID H. KORN (*pro hac vice*)
LILLIAN S. GROSSBARD (*pro hac vice*)
CRAVATH, SWAINE & MOORE LLP
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Tel: (212) 474-1000
Fax: (212) 474-3700
kdemasi@cravath.com
lkennedy@cravath.com
dkorn@cravath.com
lgrossbard@cravath.com

*Counsel for Defendants Blue Cross Blue
Shield Association; Blue Cross and Blue
Shield of Alabama; Blue Cross and Blue
Shield of Arizona, Inc.; Blue Cross and Blue
Shield of Florida, Inc.; GuideWell Mutual
Holding Corp.; Hawaii Medical Service
Association (Blue Cross and Blue Shield of
Hawaii); Blue Cross and Blue Shield of
Massachusetts, Inc.; Blue Cross and Blue
Shield of North Carolina; BlueCross
BlueShield of South Carolina; BlueCross
BlueShield of Tennessee, Inc.; California
Physicians' Service, d/b/a Blue Shield of
California; CareFirst, Inc.; CareFirst of
Maryland, Inc.; Group Hospitalization and
Medical Services, Inc.; CareFirst BlueChoice,
Inc.; Health Care Service Corporation, an
Illinois Mutual Legal Reserve Company,
including its divisions Blue Cross and Blue
Shield of Illinois, Blue Cross and Blue Shield
of Texas, Blue Cross and Blue Shield of New
Mexico, Blue Cross and Blue Shield of
Oklahoma, and Blue Cross and Blue Shield of
Montana; Caring for Montanans, Inc., f/k/a
Blue Cross and Blue Shield of Montana, Inc.;
Wellmark of South Dakota, Inc. (Wellmark
Blue Cross and Blue Shield of South Dakota);
Wellmark, Inc. (Wellmark Blue Cross and
Blue Shield of Iowa); Triple-S Management
Corporation; Triple-S Salud, Inc.*

/s/ Jeffrey J. Zeiger
JENNIFER B. FISHER (SBN 241321)
JESSICA HUANG (SBN 315208)
GOODWIN PROCTER LLP
Three Embarcadero Center, 28th Floor
San Francisco, CA 94111
Tel: (415) 733-6000
Fax: (415) 677-9041

/s/ Carl S. Burkhalter
CARL S. BURKHALTER (*pro hac vice*)
MAYNARD NEXSEN PC
1901 6th Avenue North, Suite 2400
Regions Harbert Plaza
Birmingham, AL  35203
Tel: (205) 254-1000
Fax: (205) 254-1999

14

jfisher@goodwinlaw.com
jhuang@goodwinlaw.com
MARK MCKANE (SBN 230552)
MICHAEL P. ESSER (SBN 268634)
KIRKLAND & ELLIS LLP
555 California Street, 27th Floor
San Francisco, CA 94104
Tel: (415) 439-1400
mmckane@kirkland.com
michael.esser@kirkland.com

JEFFREY J. ZEIGER, P.C. (*pro hac vice*)
KEITH HOLT (*pro hac vice*)
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Tel: (312) 862-2000
Fax: (312) 862-2200
jzeiger@kirkland.com
keith.holt@kirkland.com

*Counsel for Defendants Health Care Service Corporation, an Illinois Mutual Legal Reserve Company, including its divisions Blue Cross and Blue Shield of Illinois, Blue Cross and Blue Shield of Texas, Blue Cross and Blue Shield of New Mexico, Blue Cross and Blue Shield of Oklahoma, and Blue Cross and Blue Shield of Montana; Caring for Montanans, Inc., f/k/a Blue Cross and Blue Shield of Montana, Inc.; Highmark Inc., f/k/a Highmark Health Services; Highmark West Virginia Inc.; Highmark BCBSD Inc.*

cburkhalter@maynardnexsen.com

PAMELA B. SLATE (*pro hac vice* forthcoming)
HILL HILL CARTER FRANCO COLE & BLACK, P.C.
425 South Perry Street
Montgomery, AL 36104
Tel: (334) 834-7600
Fax: (334) 386-4381
pslate@hillhillcarter.com

*With Cravath, Swaine & Moore LLP, counsel for Defendant Blue Cross Blue Shield of Alabama*

 /s/ Jonathan Redgrave
Jonathan Redgrave
Erica Zolner
Nick Snavely
REDGRAVE LLP
230 West Monroe Street, Suite 210
Chicago, IL 60606
Tel: (312) 519-5127
jredgrave@redgravellp.com
ezolner@redgravellp.com
nsnavely@redgravellp.com

*With Cravath, Swaine & Moore LLP, Counsel for Defendant California Physicians' Service d/b/a Blue Shield of California*

 /s/ John F. Cove, Jr.
JOHN F. COVE, JR. (SBN 212213)
ALLEN OVERY SHEARMAN STERLING US LLP
140 New Montgomery Street
San Francisco, CA 94105
Tel: (415) 616-1100
Fax: (415) 616-1199
john.cove@aoshearman.com

TODD M. STENERSON (*pro hac vice*)
BRIAN C. HAUSER (*pro hac vice*)
ALLEN OVERY SHEARMAN STERLING US LLP
401 9th Street, N.W., Suite 800
Washington, DC 20004
Tel: (202) 508-8000
Fax: (202) 508-8100
todd.stenerson@aoshearman.com
brian.hauser@aoshearman.com

DEFS.' BRIEF RE REFEREE'S REC. RE PLS.' MOTION TO COMPEL; CASE NO. RG21106600

RACHEL MOSSMAN ZIEMINSKI (*pro hac vice*)
ALLEN OVERY SHEARMAN STERLING US LLP
2601 Olive Street, Suite 1700
Dallas, TX 75201
Tel:  (214) 271-5777
Fax:  (214) 271-5778
rachel.zieminski@aoshearman.com

*Counsel for Defendant Blue Cross and Blue Shield of Vermont*

DEFS.' BRIEF RE REFEREE'S REC. RE PLS.' MOTION TO COMPEL; CASE NO. RG21106600