FILED

2024 Jun-28  PM 04:51
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| IN RE:<br>**BLUE CROSS BLUE SHIELD**<br>**ANTITRUST LITIGATION**<br>**(MDL NO. 2406)** | **Master File No.: 2:13-CV-20000-RDP**<br><br>**This Document Relates to**<br>**Provider Track Cases** |

**NON-PARTIES VHS LIQUIDATING TRUST, PRIME HEALTHCARE SERVICES, INC., PRIME HEALTHCARE FOUNDATION, INC., AND PRIME HEALTHCARE MANAGEMENT, INC.'S OPPOSITION TO PROVIDER PLAINTIFFS' MOTION TO ENFORCE OR AMEND THE PROTECTIVE ORDER**

2854.003/2027786.4

**TABLE OF CONTENTS**

**Page**

BACKGROUND ..................................................................................................................2

ARGUMENT.......................................................................................................................6

    A.    The Anti-Injunction Acts Bars an Order Interfering with State Court Discovery. ..............................................................................................6

        1.    The Purpose and Scope of the Anti-Injunction Act of 1793.......................6

        2.    Preventing State Courts from Ordering Production of Discovery Conducted in the MDL Would Substantially Interfere with Their Power to Guide Discovery. .........................................................................7

        3.    The Amendment Sought to the Protective Order Does Not Fall Within Any of the Act's Exceptions. ...........................................................9

    B.    The MDL Court Lacks Jurisdiction Over the Alameda Superior Court Action.........................................................................................................13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Air Group, Inc., et al. v. Anthem, Inc., et al.*
Mem. Opinion and Order, No. 2:21-cv-01209-RDP, Dkt. 401 (Jan. 30, 2024) ...................2, 5

*Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*
398 U.S. 281 (1970)........................................................................................ *passim*

*In re Bard IVC Filters Product Liability Litig.*
81 F.4th 897 (9th Cir. 2023) .........................................................................................13, 14

*Battle v. Liberty Nat'l Life Ins. Co.*
660 F. Supp. 1449 (N.D. Ala. 1987).............................................................................6, 12

*Battle v. Liberty National Life Insurance Co.*
877 F.2d 877 (11th Cir.1989) ...............................................................................12

*In re Bayshore Ford Truck Sales, Inc.*
471 F.3d 1233 (11th Cir. 2006) ............................................................9, 10, 11, 12

*In re Blue Cross Blue Shield Antitrust Litig.*
308 F. Supp. 3d 1241 (N.D. Ala. 2018)................................................................4

*Boeing Co. v. Van Gemert*
444 U.S. 472 (1980).............................................................................................14

*Chick Kam Choo v. Exxon Corp.*
486 U.S. 140 (1988).............................................................................................9

*In re Cipro Cases I & II*
61 Cal. 4th 116 (2015) ........................................................................................3

*City of Rome, Georgia v. Hotels.com, LP*
No. 4:05-CV-249-HLM, 2011 WL 13232091 (N.D. Ga. Sept. 12, 2011)................................7

*In re Gen. Motors LLC Ignition Switch Litig.*
477 F. Supp. 3d 170 (S.D.N.Y. 2020).......................................................1, 14, 15

*In re Genetically Modified Rice Litig.*
764 F.3d 864 (8th Cir. 2014) ..............................................................................13

*Hartland v. Alaska Airlines*
544 F.2d 992 (9th Cir. 1976) ..............................................................................13

*Hill v. Martin*
296 U.S. 393 (1935)............................................................................................7

*Hunt v. Enzo Biochem, Inc.*
904 F. Supp. 2d 337 (S.D.N.Y. 2012)................................................................8

*Lawrence v. Household Bank (SB), N.A.*
343 F. Supp. 2d 1094 (M.D. Ala. 2004) ..........................................................10

*McDaniel v. Maury Regional Hosp.*
No. 1:20-cv-0047, 2020 WL 5593900 (M.D. Tenn. Sept. 17, 2020) ..........................7

*In re SDDS, Inc.*
97 F.3d 1030 (8th Cir. 1996) ........................................................................9

*In re Showa Denko K.K. L-Tryptophan Prod. Liab. Litig.-II*
953 F.2d 162 (4th Cir. 1992) ....................................................................1, 13

*Smith v. Bayer Corp.*
564 U.S. 299 (2011)................................................................................6, 9

*Sperry Rand Corporation v. Rothlein*
288 F.2d 245 (2nd Cir. 1961)........................................................................8

*Tucker v. Ohtsu Tire & Rubber Co.*
191 F.R.D. 495 (D. Md. 2000).......................................................................7

*United Nuclear Corp. v. Cranford Ins. Co.*
905 F.2d 1424 (10th Cir. 1990) .....................................................................7

*Wesch v. Folsom*
6 F.3d 1465 (11th Cir. 1993) ....................................................................12, 13

*Winkler v. Eli Lilly & Co.*
101 F.3d 1196 (7th Cir. 1996) ....................................................................6, 7

*Younger v. Harris*
401 U.S. 37 (1971)................................................................................6, 13

*In re Zyprexa Prod. Liab. Litig.*
467 F. Supp. 2d 256 (E.D.N.Y. 2006) ...........................................................15, 16

**Statutes**

28 United States Code § 2283........................................................................7

Anti-Injunction Act of 1793.................................................................1, 6, 9, 12

Non-parties VHS Liquidating Trust, Prime Healthcare Services, Inc., Prime Healthcare Foundation, Inc., and Prime Healthcare Management, Inc. (collectively, "Prime"), plaintiffs in the action styled *VHS Liquidating Trust, et al. v. Blue Cross of California, et al.*, Case No. RG21106600, pending in the Superior Court for the State of California, County of Alameda, hereby oppose Provider Plaintiffs' Motion to Enforce or Amend the Protective Order ("Motion") in this action. Dkt. No. 3135.

Provider Plaintiffs' unprecedented Motion would essentially usurp the ability of all state trial courts to issue discovery orders in opt-out, parallel litigation where the discovery disputes involve materials previously produced in this MDL action. But there is no support for this expansion of an MDL court's jurisdiction because:

> The authority for consolidating cases on the order of the judicial panel on multi-district litigation, however, is merely procedural and does not expand the jurisdiction of the district court to which the cases are transferred. While § 1407 provides a procedure for transferring cases filed in different districts to a single district court for pretrial proceedings, nowhere does it expand the jurisdiction of either the transferor or the transferee court.

*In re Showa Denko K.K. L-Tryptophan Prod. Liab. Litig.-II*, 953 F.2d 162, 165 (4th Cir. 1992). To permit otherwise would violate the Anti-Injunction Act of 1793 and fundamental principles of federalism. *See Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 285 (1970). Further, entering such an order would require this Court to resolve discovery disputes regarding production of MDL materials in opt-out actions in perpetuity. As a case in which Provider Plaintiffs themselves rely on states, "federal courts may not enforce their orders — particularly those regulating conduct outside of the courtroom — against 'the entire universe of potential violators.'" *In re Gen. Motors LLC Ignition Switch Litig.*, 477 F. Supp. 3d 170, 189 (S.D.N.Y. 2020).

Prime has now briefed the production of certain materials from this MDL twice before the

Discovery Referee assigned to the Prime case. In each instance, Prime relied on the explicit terms of the Protective Order regarding the disclosure of confidential material. While the Protective Order in this action has undergone several amendments, in each instance the language had unequivocally permitted the production of confidential material if a court of competent jurisdiction so orders its production. Not only is there no support for a federal court to issue orders that would prevent a state court from overseeing litigation (and discovery) before it, it would also be inequitable to grant the Motion and retroactively modify the terms of the Protective Order that Prime reasonably relied upon. In fact, modification of the Protective Order would result in an immediate inequity among plaintiffs pursuing parallel litigation since this Court already ordered the production of certain of the material that Provider Plaintiffs in the ASO opt-out litigation (*see Alaska Air Group, Inc., et al. v. Anthem, Inc., et al.*, Mem. Opinion and Order, No. 2:21-cv-01209-RDP, Dkt. 401 (Jan. 30, 2024)), but Provider Plaintiffs object to the release of the exact same material to Prime.

## BACKGROUND

On December 17, 2013, this Court entered its original Protective Order which dictates the "Disclosure to Unauthorized Persons" and provides in relevant part:

> To the extent that a Party or their counsel receives a discovery request or subpoena in another case for Confidential Materials of any Party or third party, ***such Party shall notify counsel for the Party, third party, and/or designating party whose material is sought in writing within five (5) business days of the receipt of such request*** or subpoena or otherwise within a reasonable time that allows the Party or third party whose Confidential Material is sought to seek to protect it from disclosure. ***The Party subject to such discovery request or subpoena shall not produce or disclose the requested Confidential Materials absent the written consent of the Party or third party whose Confidential Material is sought or if a court of competent jurisdiction orders the production***.

Dkt. No. 145 at 21 (emphasis added).

On February 23, 2016, this Court entered the Stipulated Qualified Protective Order which

made other revisions to the original Protective order but restated the "Disclosure to Unauthorized Persons" provision verbatim. Dkt. No. 550. Finally, on September 1, 2017 this Court entered the Supplement to Qualified Protective Order, Document No. 550 (the "Protective Order"), with the relevant portion of the "Disclosure to Unauthorized Persons" section unchanged. Dkt. No. 1488. Accordingly, while the Protective Order has undergone three variations, the section at issue has remained unaffected.

In 2021, Prime opted out of the MDL subscriber settlement and filed a standalone action in Alameda Superior Court under the Cartwright Act and other state antitrust laws alleging that the defendant Blue Cross Blue Shield Association ("BCBSA") and its member plans[1] engaged in anticompetitive conduct that harmed Prime. Specifically, Prime alleges that the Blues' anticompetitive schemes violated state antitrust laws by allocating markets for health insurance into exclusive service areas ("ESAs"), boycotting providers outside of such service areas, and illegally fixing prices on reimbursement rates for healthcare. Accordingly, while Prime's legal claims stem from the Cartwright Act, which is "broader in range and deeper in reach than the Sherman Act"—*In re Cipro Cases I & II*, 61 Cal. 4th 116, 160 (2015) (quotation marks and citation omitted)—they are factually premised on the *same* anticompetitive conduct and conspiring actors at issue before this Court. As such, this Court's previous findings that the Blues' aggregation of

---

[1] The "Blues" include those named defendants in the Alameda Superior Court action: BCBSA, Blue Cross and Blue Shield of Alabama, California Physicians' Service d/b/a Blue Shield of California, GuideWell Mutual Holding Corporation and Blue Cross and Blue Shield of Florida, Inc., Blue Cross and Blue Shield of Arizona, Inc., Blue Cross and Blue Shield of Massachusetts, Inc., Blue Cross and Blue Shield of North Carolina, BlueCross BlueShield of South Carolina, BlueCross BlueShield of Tennessee, Inc., CareFirst, Inc., Group Hospitalization and Medical Services, Inc., CareFirst of Maryland, Inc., CareFirst BlueChoice, Inc., Hawaii Medical Service Association, Wellmark of South Dakota, Inc. and Wellmark, Inc., Elevance Health, Inc., and all of its named subsidiaries in this action, Louisiana Health Service & Indemnity Company (Blue Cross and Blue Shield of Louisiana), BCBSM, Inc. (Blue Cross and Blue Shield of Minnesota), Aware Integrated, Inc., Horizon Healthcare Services, Inc. (Horizon Blue Cross Blue Shield of New Jersey), Blue Cross & Blue Shield of Rhode Island, Cambia Health Solutions, Inc., Regence BlueCross BlueShield of Utah, Regence BlueShield (of Washington), Regence BlueCross BlueShield of Oregon, Health Care Service Corporation (including its unincorporated divisions), Caring for Montanans, Inc., and Highmark Inc. f/k/a Highmark Health Services, Highmark BCBSD Inc. and Highmark West Virginia Inc.

competitive restraints—namely, the adoption of ESAs and, among other things, best efforts rules—which, considered together, constitute a *per se* violation of the Sherman Act— are guiding to the analysis of the same conduct in Alameda Superior Court. *In re Blue Cross Blue Shield Antitrust Litig.*, 308 F. Supp. 3d 1241, 1272-73 (N.D. Ala. 2018).

On July 3, 2023, Prime propounded its First Set of Requests for Production to All Defendants in the Alameda Superior Court action. Among other things, Prime requested: (i) expert reports and backup materials from the MDL; (ii) MDL deposition transcripts; and (iii) hearing transcripts and unredacted copies of sealed filings from the MDL. Again, while Prime chose to file a standalone action based on California law, the materials evidencing that Defendants' conduct constitute a *per se* violation of the Sherman Act by this Court also relate directly to the determination of liability under the Cartwright Act.[2]

In response, the Blues staunchly refused to produce anything, claiming a purported inability to do so under the Protective Order. Despite the clear provision in the Protective Order mandating notice to any third parties whose material is encompassed by discovery requests served on the Blues as a party to the MDL, the Blues failed to provide the notice required therein. Given the fundamental overlap between the suits, and the inability to obtain these materials cooperatively, Prime moved to compel this relevant fact discovery. In response, the Discovery Referee determined that the Blues' refusal to produce these documents did not meet their discovery obligations, and unequivocally recommended that the Blues should be ordered to comply with discovery without further delay. Declaration of Brittany DeJong ("DeJong Decl."), filed concurrently herewith, ¶ 2.

---

[2] Contrary to Provider Plaintiffs' representation to this Court, Prime never stated that the Blues cannot give Provider Plaintiffs the actual discovery requests, related correspondence, and briefing because it is confidential. Prime merely declined Provider Plaintiffs' request.

It was not until May 16, 2024, after the parties engaged in several meet and confer discussions, and the Discovery Referee issued the April 25, 2024 Recommendation mandating the Blues' production of the requested MDL materials, that the Blues finally provided notice to Provider Plaintiffs. The Blues advised Provider Plaintiffs that Prime moved to compel the production of: (1) all expert reports and backup materials; (2) all transcripts; and (3) unredacted MDL documents and filings. The Blues further informed Provider Plaintiffs that they intended to produce their own MDL expert reports that this Court ordered produced in the ASO opt-out litigation and reminded Provider Plaintiffs that some of those reports include Provider Plaintiffs' confidential information. DeJong Decl. Ex. 1. The Blues advised Provider Plaintiffs that they assumed Provider Plaintiffs consented to that reproduction. *Id*. at 2 n.2.

On May 22, 2024, Provider Plaintiffs provided a written objection wherein they not only objected to the production of their own materials, but also to the production of any of the Blues' materials to the extent they include Provider Plaintiffs' confidential information (DeJong Decl., Ex. 2), even though this Court already ordered the production of those same materials in the ASO opt-out litigation. *See Alaska Air Group, Inc. v. Anthem, Inc.*, Mem. Opinion and Order, No. 2:21-cv-01209-RDP, Dkt. 401 (N.D. Ala. Jan. 30, 2024).

Shortly thereafter, Provider Plaintiffs filed the instant Motion. Given the proximity of the Motion to when the Blues gave notice, and the fact that the Blues do not oppose modification of the Protective Order, it appears that the Blues are using the Provider Plaintiffs, and this Court's authority, in an attempt to usurp the Alameda Superior Court's ability to issue discovery orders in Prime's case. As set forth in greater detail below, the Protective Order should be maintained in its existing iteration rather than modified to preclude Prime from obtaining discovery from the Blues in an existing state court action.

## ARGUMENT

### A.    The Anti-Injunction Acts Bars an Order Interfering with State Court Discovery.

#### 1.    The Purpose and Scope of the Anti-Injunction Act of 1793.

"When the Nation was established by the Constitution, each State suspended only a part of its sovereign power." *Atl. Coast Line R.R. Co.*, 398 U.S. at 285. And "those powers that were not surrendered were retained by the States." *Id.* Among the most critical "reserved powers" retained by the States "was the maintenance of state judicial systems for the decision of legal controversies." *Id.* "Thus, from the beginning we have had in this country two essentially separate legal systems. Each system proceeds independently of the other . . . ." *Id.* at 286. To protect State judicial sovereignty, the Second Congress enacted the Anti-Injunction Act of 1793. *Id.* at 282. The Act "broadly commands that [state] tribunals shall remain free from interference by the federal courts." *Smith v. Bayer Corp.*, 564 U.S. 299, 306 (2011) (quotation marks and citation omitted). Its "core message is one of respect for state courts." *Id*.

The Act is a cornerstone of "our federalism" (*Battle v. Liberty Nat'l Life Ins. Co.*, 660 F. Supp. 1449, 1454 (N.D. Ala. 1987))[3]—the slogan embodying the Constitution's commitment to "a system in which there is sensitivity to the legitimate interests of both State and National Governments" (*Younger v. Harris*, 401 U.S. 37, 44 (1971)). The core tenet of "Our Federalism" is that a federal court, "anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States." *Id.*

The Act states that a federal court "may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its

---

[3] *See also Winkler v. Eli Lilly & Co.*, 101 F.3d 1196, 1201 (7th Cir. 1996) (recognizing "principles of federalism and comity" animate the Anti-Injunction Act).

jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. Its use of the word "stay" is somewhat misleading, as it is not limited to stay requests alone. *Hill v. Martin*, 296 U.S. 393, 403 (1935). It bars interference with ***any*** of the "steps taken or which may be taken in the state court or by its officers from the institution to the close of the final process." *Id.* Thus, a federal court order "which falls short of bringing a state suit to a complete halt may nonetheless violate the Anti-Injunction Act." *Winkler*, 101 F.3d at 1201. Specifically, the Act "sweeps broadly enough to include state discovery actions" including federal court orders that inhibit the ability to "conduct[] parallel and duplicative discovery" in state court proceedings. *Id.* This is because the power "to decide discretionary discovery matters . . . in accordance with state law operates uniquely in furtherance of the state courts' ability to perform their judicial functions." *McDaniel v. Maury Regional Hosp.*, No. 1:20-cv-0047, 2020 WL 5593900, at *2 (M.D. Tenn. Sept. 17, 2020) (quotation marks and citation omitted). Thus, the "power to guide discovery" is central to the state judicial sovereignty protected by the Act. *Winkler*, 101 F.3d at 1201.

> **2.      Preventing State Courts from Ordering Production of Discovery Conducted in the MDL Would Substantially Interfere with Their Power to Guide Discovery.**

"A court's power to guide discovery is concomitant with its duty to provide effective management of complex litigation." *Winkler,* 101 F.3d at 1201. Federal courts have long recognized the importance of avoiding interference with discovery in related litigation. *United Nuclear Corp. v. Cranford Ins. Co*., 905 F.2d 1424, 1428 (10th Cir. 1990) ("[T]he district court must refrain from issuing discovery orders applicable only to collateral litigation."); *City of Rome, Georgia v. Hotels.com, LP*, No. 4:05-CV-249-HLM, 2011 WL 13232091, at *2 (N.D. Ga. Sept. 12, 2011) (Courts have expressed "reluctance to 'usurp the authority of other courts to manage discovery and enter orders.'"); *Tucker v. Ohtsu Tire & Rubber Co*., 191 F.R.D. 495, 499 (D. Md. 2000) ("[A] court should avoid issuing discovery orders that are applicable only to collateral

litigation in another court.").

This is not a case where Prime is using the discovery in the Alameda Superior action to obtain discovery not yet available to parties in the MDL. For that reason, the decision in *Sperry Rand Corporation v. Rothlein,* 288 F.2d 245 (2nd Cir. 1961) (affirming a district court's order enjoining a plaintiff in the federal action from using discovery from a collateral proceeding in state court), is wholly inapposite to the facts here. In the unique facts of that case, an employer filed a trade secrets misappropriation action in federal court against its former employees. *Id.* The district court set a discovery schedule in which the defendants would not be able to conduct discovery until after the plaintiff did so. *Id.* at 248-49. The plaintiff employer later filed a related action in state court against the same defendant employees, and the federal court issued an order preventing the parties from using discovery in the federal proceeding in the state action. *Id.* The Second Circuit affirmed the order, concluding that it would give the plaintiff an unfair advantage due to its ability to get discovery from the federal proceeding earlier than defendants in the state court case. *Id.* This is clearly distinguishable from the situation at hand since Provider Plaintiffs do not, and cannot, articulate any similar unfair advantage to Prime over the Blues from the disclosure of the MDL expert materials that are ***already in*** the Blues' possession. In fact, the opposite is true. The Blues have an unfair advantage over Prime because not only do they have the benefit of their expert reports, but their experts have already reviewed and rebutted Provider Plaintiffs' expert reports.[4]

---

[4] Similarly, *Hunt v. Enzo Biochem, Inc.*, 904 F. Supp. 2d 337 (S.D.N.Y. 2012), involved extreme facts not present here. There, the plaintiff brought confidential files to a meeting with an individual who had previously lost his case against the same defendants "at a New Jersey Turnpike rest stop at which they reviewed three files that were marked 'confidential'" despite the fact that they understood a protective order applied to such documents. *Id.* at 341. Given that, the court recognized that while it "may not 'enjoin the entire universe of potential violators of its orders'; it has no power to enjoin 'those who are acting independently of the enjoined party and whose own rights have not been adjudged,'" it retained the ability to enjoin those "third parties 'who are in active concert or participation' with the parties, their officers, agents, servants, employees or attorneys." *Id.* at 344. Prime has not engaged in the sort of illicit behavior present in *Hunt*. Rather, they have sought the materials at hand through the proper channels of discovery in their state court action.

### 3. The Amendment Sought to the Protective Order Does Not Fall Within Any of the Act's Exceptions.

The Act "is subject to only three specifically defined exceptions." *Smith*, 564 U.S. at 306 (quotation marks and citation omitted). Specifically, it does not apply to federal court orders that are (1) "expressly authorized by Act of Congress"; (2) "necessary in aid of [the federal court's] jurisdiction"; and (3) "necessary . . . to protect or effectuate [the federal court's] judgments." *Id.* These exceptions "are narrow and are not [to] be enlarged by loose statutory construction." *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 146 (1988) (quotation marks and citation omitted). "Any doubts as to the propriety" of a federal court's interference with "state court proceedings" must be resolved in favor of abstinence. *Atl. Coast Line R.R. Co.*, 398 U.S. at 297; *see also In re Bayshore Ford Truck Sales, Inc.,* 471 F.3d 1233, 1251-52 (11th Cir. 2006) (stating that it is only appropriate for a federal court to enjoin a state court proceeding under the Anti-Injunction Act when the state proceedings can lead to contradictory state court judgments that bind the same litigants). The proposed modification to the Protective Order here does not fall within any of these explicit limited exceptions.

First, no Act of Congress "specifically" empowers a federal court to bar a state court from issuing a discovery order requiring the production of evidence produced in discovery in a federal case. Second, the exception for stays "necessary . . . to protect or effectuate [the federal court's] judgments" is inapplicable because it only empowers federal courts to issue orders "enjoin[ing] a state court from relitigating an issue" that "actually ha[s] been decided by the federal court." *In re SDDS, Inc.*, 97 F.3d 1030, 1037 (8th Cir. 1996); *see also In re Bayshore Ford Truck Sales,* 471 F.3d at 1253-54. This Court has not "decided" that discovery materials produced in this case are not discoverable in other cases raising similar issues. To the contrary, by signing the existing Protective Order which states that discovery material produced in this case can be produced if a

court of competent jurisdiction orders the production, the Court recognized that other courts can in fact order that these materials be produced. Moreover, the fact that these materials were ordered to be produced in the Prime case demonstrates that the state court has already decided that this material is *discoverable*.

Finally, it cannot credibly be argued that the proposed amendment to the Protective Order is "necessary in aid of [the Court's] jurisdiction." This exception may only be invoked when the stay is "necessary to prevent a state court from so interfering with [the federal court's] consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Atl. Coast Line R.R. Co.*, 398 U.S. at 295.[5]

Under this exception, a federal court may issue an injunction in  two circumstances: "(1) the district court has exclusive jurisdiction over the action because it had been removed from state court; or, (2) the state court entertains an *in rem* action involving a res over which the district court has been exercising jurisdiction in an *in rem* action." *In re Bayshore Ford Trucks Sales, Inc.*, 471 F.3d 1233, 1250-51 (11th Cir. 2006).

Here, this Court does not have exclusive jurisdiction over the Prime litigation because it has not been removed from state court. Additionally, this action is an *in personam* action, not an action *in rem*. Both the MDL lawsuits and the state court action seek damages. Allowing the state court to order production of discovery materials previously produced by the parties in the MDL litigation poses no threat to any property sought by the parties in their cases in chief.

The 11th Circuit has also recognized that it might be appropriate under limited circumstances to enjoin a state court proceeding under a third scenario called the complex multi-state litigation exception. But, as the 11th Circuit recognized in *In re Bayshore Ford Trucks Sales,*

---

[5] *See also Lawrence v. Household Bank (SB), N.A.,* 343 F. Supp. 2d 1094, 1099 (M.D. Ala. 2004) (the court did not think that the state court action settlement would interfere with federal proceeding).

*Inc.*, 471 F.3d 1233, 1252 (11th Cir. 2006), this exception *is predicated on both complexity and potential for interference* with prior a prior federal action—facts not present here. In *Bayshore*, the Bayshore Dealers filed a class action in district court against Ford for breach of their respective franchise agreements. They moved to certify a class including similarly situated Ford truck dealers, but the district court denied their motion. While the case was being prepared for trial, a member of the non-certified class filed a class action suit in an Ohio state court. The complaint included claims practically identical to the Bayshore Dealers' claims pending before the district court. The Ohio state court certified a class that the district court had refused to certify and the Bayshore Dealers moved to dismiss their district court case against Ford in order to litigate in the Ohio action. The district court denied their motion and enjoined the state class from prosecuting the Ohio class action.

In examining the issue, the 11th Circuit vacated the injunction and concluded that the complex multi-state litigation exception did not apply because it was not confronted with a complex and carefully crafted settlement or other plan which would be undermined by a state court adjudication and did not involve a class action affecting the rights of hundreds of parties. Based on that distinction, the court reasoned that the litigation in the Ohio court would not displace or frustrate the district court's management of the case pending before it.

The same is true here. Prime has opted out of the subscriber class settlement. They are not bringing separate class actions in an effort to undermine the subscriber settlement that has already been resolved before this Court, nor does their pending lawsuit (and the discovery requests at issue) impact the Provider Plaintiffs' action in any way. Instead, Prime filed a standalone action in order to seek redress on their own behalf. Allowing the state court to decide what material is properly discoverable presents no threat to this Court's ability to decide this case. *Atl. Coast Line R.R. Co.*,

398 U.S. at 295. Accordingly, the Anti-Injunction Act bars this Court from modifying the Protective Order.

In *Bayshore*, the Court distinguished two cases where the 11th Circuit concluded that the complex multi-state litigation exception applied. In *Battle v. Liberty National Life Insurance Co.*, 877 F.2d 877 (11th Cir.1989), the 11th Circuit affirmed a district court order enjoining the plaintiffs in three state court proceedings from pursuing claims that were substantially similar to those claims that had already been settled by final judgment in a federal antitrust class action lawsuit. After seven years of litigation in both state and federal court, the parties settled, and the court expressly retained jurisdiction over the case to resolve any future disputes amongst the settling parties regarding the settlement terms. *Id.* at 880. After entry of the final judgment, three different sets of plaintiffs initiated other class actions in state court involving the same issues the federal settlement had resolved. The court upheld the district court's permanent injunction because such "state court suits, class actions which on their face challenge the propriety of the *Battle* judgment, can only undermine the district court's continuing jurisdiction over the case." *Id.* at 881.

Likewise, the court reached the same conclusion in *Wesch v. Folsom*, 6 F.3d 1465 (11th Cir. 1993) a case involving an Alabama congressional redistricting plan administered by a three-judge court. In that case, after the court entered final judgment adopting the plan, a class action was filed in an Alabama circuit court on behalf of substantially similar plaintiffs asserting substantially the same claims as those before the district court. *Id.* at 1468–70. The district court enjoined the state court proceedings in aid of its jurisdiction and to effectuate its judgment, and the 11th Circuit affirmed. Relying on the reasoning in *Battle*, the court concluded that the federal case should be treated like a *res* for Anti–Injunction Act purposes because "the three-judge district court . . . invested a great deal of time and other resources in the arduous task of reapportioning

Alabama's congressional districts." *Id*. at 1471.

These cases are wholly inapposite to the instant situation because again, the Prime action in no way impacts the Subscriber Plaintiffs' settlement or the Provider Plaintiffs' pending case because  Prime  opted out of that litigation, and did not file a separate class action based on substantially similar facts that was already resolved by the MDL class action. Instead, Prime filed standalone parallel litigation.

**B.    The MDL Court Lacks Jurisdiction Over the Alameda Superior Court Action**

Prime plaintiffs are "strangers to the MDL" who sued "in state court and whose case had not been removed to federal court." *In re Bard IVC Filters Product Liability Litig*., 81 F.4th 897, 909 (9th Cir. 2023) (citing *Hartland v. Alaska Airlines,* 544 F.2d 992, 996-97 (9th Cir. 1976)). There is no basis for a federal MDL court to exercise jurisdiction over a discovery dispute in a parallel state court proceeding because a "district court overseeing [an] MDL does not have authority over separate disputes between state-court plaintiffs" and MDL defendants. *In re Genetically Modified Rice Litig*., 764 F.3d 864, 874 (8th Cir. 2014) (emphasis omitted). "Although district courts have discretion in orchestrating and conducting multi-district litigation, '[t]he authority for consolidating cases on the order of the judicial panel on multi-district litigation . . . is merely procedural and does not expand the jurisdiction of the district court to which the cases are transferred.'" *Id*. at 873-74 (quoting *In re Showa Denko K.K. L–Tryptophan Prods. Liab. Litig.–II*, 953 F.2d at 165; *see In re Showa Denko K.K. L–Tryptophan Prods. Liab. Litig.–II*, 953 F.2d at 166 (observing that imposing assessments on cases in state court "has the very real potential of interfering with discovery proceedings in state court, raising questions of conflict with the policy of comity between federal and state courts underlying *Younger v. Harris*, 401 U.S. 37, 43-44, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971)."). Prime is not a litigant in the MDL, and its counsel are not participants who signed participation agreements incorporated by an MDL court order enforceable

by that court. *Cf. In re Bard IVC Filters Product Liability Litig.,* 81 F.4th at 910. There is simply no basis for the MDL court to exercise any general jurisdiction over Plaintiffs' motion to compel in Alameda Superior Court. The Blues should not be rewarded for their attempts to delay discovery in parallel state court proceedings.

As such, the authority relied upon by Provider Plaintiffs is inapplicable to the present facts. Brief at 4. For example, *Boeing* involved the very specific question of whether in a class action, "a proportionate share of the fees awarded to lawyers who represented the successful class may be assessed against the unclaimed portion of the fund created by a judgment." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 473 (1980). While Boeing contended that plaintiffs' counsel's fees should not be recovered from any unclaimed funds because those were subject to reversion to Boeing, the Court rejected that and found "[a]lthough Boeing itself cannot be obliged to pay fees awarded to the class lawyers, its latent claim against unclaimed money in the judgment fund may not defeat each class member's equitable obligation to share the expenses of litigation." *Id.* at 482. There, each class member had a vested interest in the class recovery and could collect their share of judgment upon request, such that absentee class members received a benefit within the meaning of common fund doctrine, which allows an assessment of attorney fees against a common fund created by lawyers' efforts. In contrast, here, Prime is not a class member, having specifically opted out to proceed in a separate state court proceeding. Thus, the *Boeing* decision relates to a court's ability to award fees from a common settlement fund in a class case generally, and does not speak to a court's ability to assess any expenses against parallel proceedings in state court separate and apart from the class case.

Nor does *In re General Motors LLC Ignition Switch Litig.*, 477 F. Supp. 3d 170, 174 (S.D.N.Y. 2020) (hereinafter "*GM*") support the Motion, given its ultimate holding that the

assessment against recoveries established by the common benefit order in the MDL did ***not*** apply to state court cases in which participating counsel in the MDL did not use common benefit materials. *Id.* at 192. In *GM*, the court's existing common benefit fund order applied to "each and every client who is a plaintiff in a Common Benefit Action in which Participating Law Firm has a right or claim to a fee recovery." *Id.* at 191. By its terms, the *GM* common benefit order applied to cases in the MDL, and related or coordinated actions in which plaintiffs and counsel voluntarily executed, or were required to execute, a participation agreement. *Id.* at 176. In examining whether an assessment should also apply to those state court and unfiled actions filed by ***participating counsel*** who used the common benefit material in that litigation, the *GM* court concluded it did because their counsel were participating counsel subject to the order in the MDL. *Id.* at 190-92. Even so, the *GM* court recognized, "[i]f a case is pending in state court, *that* court can solve the free-rider problem by imposing an assessment on any recovery. And regardless of whether a federal court would have authority to do so as well — an issue upon which the Court need not, and does not, opine — '[p]rinciples of comity and respect for the state courts' supervision of their own dockets and the attorneys before them' will often counsel against doing so." *Id* at 180-81 (citations omitted). As the *GM* court further explained:

> Imposing an assessment on the recovery in a state-court case could do more than intrude on the state court's supervision of its own docket. Where the recovery is pursuant to a judgment entered in state court, it could subject the defendant to conflicting orders: the state-court judgment requiring payment of damages in full and the federal-court order mandating a hold-back of a portion of the damages for the common-benefit fund. Federal courts should hesitate before creating that sort of conflict with their state counterparts.

*Id.* at 181 n.4.

The reasoning in *In re Zyprexa Prod. Liab. Litig.*, 467 F. Supp. 2d 256 (E.D.N.Y. 2006)—an ongoing quasi-class action—is also unavailing to Provider Plaintiffs' position. *Id.* at 268. While the court there had gone to extreme lengths to provide all plaintiffs (state or federal)

access to all materials and depositions, in response to the MDL plaintiffs' request for a common

benefit fund which would establish an assessment against any recoveries by state court plaintiffs

whose counsel also represent federal MDL plaintiffs, the Court stated:

> There is no need now to reach the issue of whether a federal MDL court has the power to compel attorneys who represent both state and federal plaintiffs to set aside a portion of their fee recoveries in state cases for use in a common benefit fund. Principles of comity and respect for the state courts' supervision of their own dockets and the attorneys before them lead to the conclusion that such compulsion would be inappropriate at this time.

*       *       *

> The issue of assessing state cases with the costs of a discovery process that benefits all cases, state and federal, should, in the first instance, be left to state court judges.

*Id.* at 268-69; compare *id*. at 274 ("The common benefit fund fee set-aside imposed by this order

shall apply to all cases pending—or to be pending—***in this MDL***, regardless of whether any of

those cases are eventually remanded to state court or transferred to another federal court.")

(emphasis added).

DATED:  June 28, 2024                    Respectfully submitted,


                                   By:       *s/ Patrick M. Ryan*
                                   _____
                                         Patrick M. Ryan
                                         BARTKO LLP
                                         One Embarcadero Center, Suite 800
                                         San Francisco, California 94111
                                         Telephone:  (415) 956-1900
                                         Facsimile:  (415) 956-1152
                                         Email:      *pryan@bartkolaw.com*

_/s/  Sam David Knight_

Sam David Knight (KNI023)
BADHAM & BUCK, LLC
2001 Park Place North, Suite 500
Birmingham, Alabama 35203
Phone: (205) 521-0036
Fax: (205) 521-0037
sdknight@badhambuck.com


Attorneys for Non-Parties VHS Liquidating
Trust, Prime Healthcare Services, Inc.,
Prime Healthcare Foundation, Inc., and
Prime Healthcare Management, Inc.

2854.003/2027786.4                                    17