FILED

2024 Jul-08  PM 08:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

|  |  |
|---|---|
| IN RE:<br>**BLUE CROSS BLUE SHIELD**<br>**ANTITRUST LITIGATION**<br>**(MDL NO. 2406)** | **Master File No. 2:13-CV-20000-RDP**<br><br>**This Document Relates to**<br>**Provider Track Cases** |

## PROVIDER PLAINTIFFS' REPLY IN SUPPORT OF THEIR
## MOTION TO ENFORCE OR AMEND THE PROTECTIVE ORDER

**TABLE OF CONTENTS**

INTRODUCTION ...........................................................................................................................1

ARGUMENT ................................................................................................................................3

      A.      The Court Is Well Within Its Authority ................................................................4

      B.      The AIA Act Does Not Apply ..............................................................................6

      C.      Even if the AIA Applies, the Modification to the Protective Order is Clearly Within Two Exceptions ..........................................................................................9

            1.      The Court Can Issue an Injunction in Aid of Its Jurisdiction ......................9

            2.      The Court Can Issue an Injunction to Protect and Effectuate Its Judgments ..................................................................................................13

      D.      The Court Can, and Should, Impose an Assessment on the *Prime* Plaintiffs If They Gain Access to The Materials in Question ....................................................14

CONCLUSION.............................................................................................................................15

## TABLE OF AUTHORITIES

**Cases**

*Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers,*
398 U.S. 281 (1970) ........................................................................................... 12

*Battle v. Liberty National Life Insurance Co.*,
877 F.2d 877 (11th Cir. 1989) ..................................................................... 9, 10

*Battle v. Liberty Nat'l Life Ins. Co.*,
660 F. Supp. 1449 (N.D. Ala. 1987) ................................................................ 10

*Carlough v. Amchem Products, Inc.,* 10 F.3d 189 (3d Cir.1993) .................................... 9

*Faught v. Am. Home Shield Corp.*, No. 2:07-CV-1928-RDP,
2011 WL 12607338 (N.D. Ala. Jan. 24, 2011), *vacated on other grounds*,
660 F.3d 1289 (11th Cir. 2011) ........................................................................ 4

*G.M. Brod & Co. v. Adler*,
845 F.2d 899 (11th Cir. 1988) .......................................................................... 9

*Garcia v. Bauza–Salas,*
862 F.2d 905 (1st Cir.1988) .............................................................................. 9

*Harris v. Wells,*
764 F.Supp. 743 (D.Conn.1991) ...................................................................... 12

*In re Baldwin–United Corp.,*
770 F.2d 328 (2d Cir.1985) .......................................................................... 9, 10

*In re Corrugated Container Antitrust Litigation,*
659 F.2d 1332 (5th Cir.1981) ............................................................................ 9

*In re Diet Drugs,* 282 F.3d 220 (3rd Cir. 2002) .......................................................... 10

*In re Oil Spill by the Oil Rig Deepwater Horizon*,
2011 WL 6817982 (E.D. La. Dec. 28, 2011), *amended and superseded on
other grounds*, 2012 WL 161194 (E.D. La. Jan. 18, 2012) ........................ 14, 15

*In re Prudential Ins. Co. of Am. Sales Practice Litig.*,
261 F.3d 355 (3d Cir.2001) ............................................................................... 4

*In re RC2 Corp. Toy Lead Paint Products Liability Litig.*,
2008 WL 548772 (N.D. Ill. Feb. 20, 2008) ..................................................... 11

*In re: Bayshore Ford Trucks Sales, Inc.*,
471 F.3d 1233 (11th Cir. 2006) ........................................................................ 9

*In re: Silicone Gel Breast Implant Prod. Liab. Litig.,*
      2010 WL 11506713 (N.D. Ala. May 19, 2010),
      *aff'd Juris v. Inamed Corp.*, 685 F.3d 1294 (11th Cir. 2012) .............................. 4, 9, 11, 13

*Ivax Corp. v. B. Braun of Am., Inc.*,
      No. 00-4909-CIV-KING, 2001 WL 253251 (S.D. Fla. Jan. 24, 2001) ........................... 11

*Lawrence v. Household Bank (SB), N.A.*,
      343 F. Supp. 2d 1094 (M.D. Ala. 2004) ......................................................................... 13

*Newby v. Enron Corp.,*
      338 F.3d 467 (5th Cir.2003) ........................................................................................... 4

*ONBANCorp., Inc. v. Holtzman,*
      1997 WL 381779 (N.D.N.Y. June 27, 1997) *aff'd.* 125 F.3d 844,
      1997 WL 624863 (2d Cir.1997)...................................................................................... 11

*Seattle Times Co. v. Rhinehart*,
      467 U.S. 20 (1984)........................................................................................................... 6

*Sperry Rand Corp. v. Rothlein*,
      288 F.2d 245 (2d Cir. 1961).................................................................................. 7, 11, 13

*Winkler v. Eli Lilly*,
      101 F.3d 1196 (7th Cir. 1996) ........................................................................... 8, 9, 11, 12

**Statutes**

22 U.S.C. §2283.................................................................................................................. passim

28 U.S.C. § 1651................................................................................................................. passim

**Other Authorities**

Fed. Judicial Ctr., Managing Multidistrict Litigation in Products Liability Cases,
      A Pocket Guide for Transferee Judges ........................................................................... 15

**Rules**

Fed. R. Civ. P. 26....................................................................................................... 5, 6, 14

**INTRODUCTION**

At this point, the Court largely has the factual record. The Blues have, in their response, largely laid out the procedural history. The *Prime* Plaintiffs, litigants in California, who filed their case nine years after the Provider Plaintiffs, and pled their claims to evade the MDL process, have sought to end run both the MDL discovery process and the Protective Order in this case by forcing the Blues to turn over materials belonging to *other* parties to this litigation, as well as nonparties. The Blues acquired these materials *only* because the Protective Order in this litigation allowed them to receive them, including sealed documents, Highly Confidential Outside Counsel Only documents, work product, protected health information concerning millions of the Blues' members, and countless other sensitive items not in their possession before the litigation. *See* Docs. 550, 1488. The *Prime* Plaintiffs have refused to serve discovery requests on (or even engage with) the parties and nonparties to whom those materials belong. The *Prime* Plaintiffs' papers do not shy away from the clear implications of their behavior: they want to free ride on the work of the Provider Plaintiffs in the MDL discovery process and the Provider Plaintiffs' experts, and they believe this Court is powerless to stop them.

There are several factual issues of note that Provider Plaintiffs need to update:

First, this afternoon counsel for *Prime* reached out to Provider Plaintiffs for the first time to propose a stipulation regarding the discovery in an effort to remove this Motion from the Court's calendar. As this proposal was made at the 11th hour, after the Provider Plaintiffs' counsel spent the holiday weekend drafting and finalizing this reply, the reply is filed largely as it was before the last-minute offer.  Provider Plaintiffs are reviewing and considering the draft stipulation and will apprise the Court if ruling on the Motion remains necessary. Provider Plaintiffs believe, in the

absence of an Order by the Court regarding the Protective Order and the need for an assessment, and a potential remand coming, this issue may be one the Court sees again down the road.

Second, as *Prime* informed the Court, the Discovery Referee in California issued a report and recommendation on June 28, 2024. With little apparent analysis, the Referee recommended that all MDL discovery materials, including Provider Plaintiffs' experts' reports, materials under seal in this case, and other confidential materials be produced in the *Prime* action. The Discovery Referee apparently interpreted this Court's Protective Order to allow such production at his behest. Doc. 3148-1. The takeaway from the *Prime* Plaintiffs' original response is that rather than do their own discovery work, not only do they want to cheat off the Provider Plaintiffs' already completed homework, but they also want to do it for free. *Prime* Response (Doc. 3146, Section B). *Prime*'s response, particularly the last section, flaunts their attempt to access all the advantages of the MDL's long years of discovery activity, the Court's broad discovery jurisdiction, and the Provider Plaintiffs' expert work to supercharge their case without accepting any responsibility for the costs or confidentiality of those materials. Yet during this process, the *Prime* Plaintiffs took the position that the Blues cannot share the underlying requests or other confidential information from the *Prime* litigation with the Provider Plaintiffs.

Third, it is Provider Plaintiffs' understanding that the Providers Plaintiffs' expert materials, backup materials and other protected materials have not been produced by the Blues in any other litigation, including in other tag-along litigation pending before this Court. In the *Alaska Air* case, the plaintiffs sought only the *Blues'* expert reports, and that is what they were given. *Alaska Air Group, Inc. v. Anthem, Inc.*, No. 21-cv-1209-RDP (N.D. Ala.), Docs. 352, 401. Yet the *Prime* Plaintiffs misleadingly told the Court in California that this Court had compelled production of "the expert reports from the MDL Action," not the *Blues'* reports, and listed the Provider Plaintiffs'

experts by name. The *Prime* Plaintiffs apparently have made a habit of telling half-truths about the MDL to the California court, *see* Doc. 3145 at 7, n.9, and by freezing the Provider Plaintiffs out of their discovery requests, they made sure that the California court would not hear the Provider Plaintiffs' side. [1] They continue this strategy by telling this Court an obvious falsehood: "this Court already ordered the production of certain of the material that Provider Plaintiffs produced in [*Alaska Air*], but Provider Plaintiffs object to the release of the exact same material to Prime." Doc. 3146 at 2. But this is not the "exact same" material. In fact, there is no overlap between the material produced in *Alaska Air* (the Blues' expert reports), and the material at issue here (a mountain of Provider Plaintiff work product, as well as third-party information).

Finally, the *Prime* Plaintiffs have not provided any record evidence contrary to the entry or enforcement of the Protective Order. Their only arguments relate to this Court's legal authority to enter or enforce such an Order.

## ARGUMENT

The *Prime* Plaintiffs' position is not that under the unique circumstances of this case, it should be able to obtain the Provider Plaintiffs' MDL work product through the Blues. Instead, their position is that no MDL transferee court can ever prevent a litigant in parallel state-court litigation from accessing MDL discovery this way, no matter what the MDL protective order says. It should come as no surprise that the *Prime* Plaintiffs cite no authority from any court taking this position. Instead, MDL transferee courts routinely enter and enforce protective orders under the

---

[1] While it appears that the Blues did make this point with the Discovery Referee, it is a good reminder that the Blues do not have the same incentives to protect these materials from discovery, particularly the Provider Plaintiffs' expert materials, that the Provider Plaintiffs themselves would have. This counsels in favor of in interpreting or modifying the Protective Order such that these disputes must be governed by this Court where the Provider Plaintiffs and Third Parties can defend their own rights and confidential materials.

Rule 26 and the All Writs Act ("AWA") (28 U.S.C. § 1651), and protecting MDL discovery falls within two exceptions to the Anti-Injunction Act ("AIA") (22 U.S.C. § 2283) (if the AIA applies at all).

### A.    The Court is Well Within Its Authority.

This Court is exceedingly familiar with the interplay of the AWA, the AIA, and their exceptions, including those available to MDL transferee courts. *In re: Silicone Gel Breast Implant Prod. Liab. Litig.*, 2010 WL 11506713 (N.D. Ala. May 19, 2010). We will not belabor those points here. Suffice it to say, the Court has extraordinary power under the AWA to defend its own jurisdiction.  As this Court has found, a District Court has the authority under the AWA to enjoin discovery in a state court action. *Faught v. Am. Home Shield Corp.*, No. 2:07-CV-1928-RDP, 2011 WL 12607338, at *7 (N.D. Ala. Jan. 24, 2011), *vacated on other grounds*, 660 F.3d 1289 (11th Cir. 2011) (Proctor, J)(district court "has authority under the All Writs Act to enjoin discovery in competing actions" in state court) *citing Newby v. Enron Corp.,* 338 F.3d 467, 476 (5th Cir.2003) (district court's stay of discovery in related state court action appropriate under AWA); *In re Prudential Ins. Co. of Am. Sales Practice Litig*., 261 F.3d 355, 368 (3d Cir.2001) ("[T]he All Writs Act and the Anti–Injunction Act do extend to discovery).   The Court has already entered and amended a Protective Order and it seems that no party, including *Prime*, could seriously argue that the Court's order was *ultra vires*. Rule 26 explicitly authorizes the entry of Protective Orders to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

    (A)    forbidding the disclosure or discovery;

    (B)    specifying terms, including time and place or the allocation of expenses, for the disclosure or discovery;

    (C)    prescribing a discovery method other than the one selected by the party seeking discovery;

4

(D)   forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;

(E)   designating the persons who may be present while the discovery is conducted;

(F)   requiring that a deposition be sealed and opened only on court order;

(G)   requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way."

Fed. R. Civ. P. 26. The Provider Plaintiffs have asked for nothing more than enforcement of, or an amendment to, the Protective Order to protect Confidential Materials from production in other litigations without the approval of the producing party or the MDL Court. This falls squarely into several of the items identified by Rule 26 as appropriate uses of a Protective Order. The *Prime* Plaintiffs concede that the documents at issue are already restricted by the current Protective Order. Doc. 3146 at 2 (noting the Order already restricts Disclosure to Unauthorized Persons). The Court has already exerted jurisdiction over these documents and has authority to enforce the Order, including appropriate penalties for their unauthorized use—as with any other *res* under the Court's authority. Doc. 550 at ¶ 24. The Court would be entitled to find contempt of the Court's Protective Order if the Blues had simply provided these documents in response to the *Prime* requests without complying with the requirements of the Protective Order. *Id.* The Protective Order, and the proposed modification, simply define the "terms, including time, place or the allocation of expenses, for the disclosure or discovery" of documents provided to the parties under the Protective Order. The Court is well within Rule 26 in prescribing additional rules or requirements for disclosure of materials, including common benefit work product, to unauthorized users. Given the *Prime* Plaintiffs' repeated assertions that this Court has no jurisdiction over them nor the use of these documents in the California action, the only way parties who provided documents pursuant

to this Court's Protective Orders can feel secure is if their materials are disclosed under this Court's authority and supervision.

Beyond Rule 26 and the AWA, the Court may enter a protective order "under the inherent equitable powers of courts of law over their own process, to prevent abuses, oppression, and injustices[.]" *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 35 (1984) (quotation marks omitted). The Court has entered other Orders, including those appointing leadership (Doc. 61), appointing a Special Master with authority to oversee the finances of the Parties (Doc. 7), sealing documents and portions of documents (Doc. 758) that would be undermined by allowing the production of all the MDL materials by the Blues here. These documents would not have been produced, and in some cases would not have been created at all, outside of the jurisdiction and protection of this MDL Court's Protective Order. It is because of the Court's Protective Orders, Organization Orders, Sealing Orders and other orders that the materials sought have come into the possession of the Blues at all. The Court has authority to manage, under a Protective Order, what the Blues can and cannot do with the materials they received only pursuant to the Court's orders. Discovery of these materials in the California case through free riding (and the likelihood it will invite additional free riding) risks interference with the MDL and that is enough for the Court to enter an appropriate order under the AWA and Rule 26.

## B. The AIA Does Not Apply.

The entirety of *Prime*'s argument is essentially that any Protective Order which merely restricts the ability of recipients of information to re-produce materials they received pursuant to the protective order materials runs afoul of the AIA. But the AIA simply does not apply here. The AIA prohibits a federal court from enjoining state court proceedings "except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or

effectuate its judgments." 22 U.S.C. § 2283. The majority of *Prime's* Response is spent describing the Court's protective in terms like an "exercise of [] general jurisdiction" over *Prime*'s Motion to Compel, and "usurp[ing] the ability of all state courts to issue discovery orders." These are wild attempts to manufacture an issue where none exists. An order that does no more than restrict a party to the MDL litigation from producing materials they only received as part of the MDL discovery process falls outside the AIA. *Sperry Rand Corp. v. Rothlein*, 288 F.2d 245, 248 (2d Cir. 1961) ("[I]t is because the order does no more than deprive the plaintiff-appellant of the benefits of federal court discovery . . . and because it leaves access to state processes otherwise unrestricted, that the injunction falls beyond the scope of § 2283."). On its face, the Court's Protective Order does not enjoin any state court proceeding, it does not exercise jurisdiction over a Motion to Compel, nor does it enjoin any Party to the *Prime* action from participating in or pursuing that litigation. The Protective Order, as currently constituted or as modified, does not enjoin the California Court or the *Prime* Plaintiffs. The Protective Order only applies to those who have received confidential information in this case over whom the Court has long had jurisdiction. The *Prime* Plaintiffs are free to seek discovery in California as long as they do not ask the *Blues* to produce *other parties'* documents in violation of the Protective Order in this case. Even then, they are then free to come to this Court to seek that approval for the Blues' production of the materials. The *Prime* Plaintiffs are free to discuss production of these materials with the Provider Plaintiffs or this Court (something they have chosen not to do until now). Enforcement or modification of the Protective Order would not require any expansion of this Court's jurisdiction to parties who are not already before it, nor would it enjoin any non-party to the MDL from doing anything. Every non-party would remain free to produce any of its own documents it wanted to the *Prime* Plaintiffs in response to their discovery requests. Enforcement or modification of the Protective Order would

not enjoin the California Court or the Discovery referee, nor would it require them to do anything. The California Court is free to move forward with litigation and enter orders and judgments as it sees fit. The Protective Order does not enjoin or interfere with the *Prime* Plaintiffs' ability, using ordinary state court discovery processes, to gain access to the same documents produced in the MDL directly from the Provider Plaintiffs (and other nonparties to the California case) themselves. Instead of taking any of the steps listed above, the *Prime* Plaintiffs are trying to shortcut and perhaps circumvent the ordinary California discovery process by leveraging the MDL Court's discovery authority, and the work product of the parties to the MDL case.

In *Winkler v. Eli Lilly,* cited extensively by the *Prime* Plaintiffs, the Court found specifically that the Court had the power, under the AIA, to "enjoin only those persons whose cases are presently part of federal multidistrict litigation." 101 F.3d 1196, 1203 (7th Cir. 1996). The Amendment to the Protective Order would do nothing more than this. Only parties to the MDL and the Protective Order would be enjoined from acting, just as they would under any ordinary Protective Order. The Protective Order would merely prevent those who received third-party materials pursuant to the Protective Order in this case from producing them without the permission of the third party themselves, or the approval of this Court, the Court who currently has jurisdiction over the materials. The Court's jurisdiction, its Orders, including the Protective Order, the leadership Orders, Sealing Orders, and Orders governing the use of Common Benefit Funds, are called into issue by allowing production of the materials requested by the *Prime* Plaintiffs. The Protective Order merely protects this Court's jurisdiction over materials produced in this case and only binds parties to the MDL. The AIA does not apply.

**C.** **Even If AIA Applies, the Modification to the Protective Order Is Clearly Within Two Exceptions.**

In its July 1 Order, the Court flags at least two potential exceptions to the AIA that would apply here. While the Provider Plaintiffs believe the AIA does not apply at all, we agree with the Court that, in any event, each of these exceptions would be applicable to a modification of the Protective Order to protect the materials produced to the parties subject to the Protective Orders and the Sealing Orders. As the Court is aware these issues are committed to the sound discretion of the District Court, and the Court "may go either way and not be reversed." *In re: Silicone Gel Breast Implant Prod. Liab. Litig.*, 2010 WL 11506713 at *50 (citing *In re: Bayshore Ford Trucks Sales, Inc.*, 471 F.3d 1233, 1250 (11th Cir. 2006) and *G.M. Brod & Co. v. Adler*, 845 F.2d 899, 900 (11th Cir. 1988)). The July 1 Order identified two exceptions to the AIA as potentially applicable:

(1)    In Aid of Jurisdiction

(2)    Protect or Effectuate Judgments

Doc. 3147. In Provider Plaintiffs' view, both exceptions are applicable, and the Court is well within its discretion to find that either exception applies to support the requested relief.

**1.** **The Court Can Issue an Injunction in Aid of Its Jurisdiction.**

The "In Aid of Jurisdiction" exception to the AIA unquestionably applies here. While, as the Court noted, this exception is ordinarily limited to *in rem* type proceedings, numerous courts, including this one, have found that this exception can apply to  the case itself in a multidistrict or other complex litigation as the *res*. "Courts have extended the [in aid of jurisdiction] exception to consolidated multidistrict litigation, where a parallel state court action threatens to frustrate proceedings and disrupt the orderly resolution of the federal litigation." *Winkler*, 101 F.3d at 1203 (*citing Garcia v. Bauza–Salas,* 862 F.2d 905, 909 (1st Cir.1988); *Carlough v. Amchem Products,*

*Inc.,* 10 F.3d 189, 197 (3d Cir.1993); *In re Baldwin–United Corp.,* 770 F.2d 328, 336 (2d Cir.1985); *In re Corrugated Container Antitrust Litigation,* 659 F.2d 1332, 1334–35 (5th Cir.1981)). Other than this Court's rulings, which we will discuss, the opinion in *Battle v. Liberty Life Ins. Co.* is the leading authority in this Circuit. There, the Eleventh Circuit found an exception to the AIA in aid of its jurisdiction for a case "involving years of litigation and mountains of paperwork, as similar to a *res* to be administered," and that the "lengthy, complicated litigation [wa]s the 'virtual equivalent of a *res*.'" 877 F.2d 877, 882 (11th Cir. 1989). Other courts of appeals have found the same:

> We have recognized another category of federal cases for which state court actions present a special threat to the jurisdiction of the federal court. Under an appropriate set of facts, a federal court entertaining complex litigation, especially when it involves a substantial class of persons from multiple states, or represents a consolidation of cases from multiple districts, may appropriately enjoin state court proceedings in order to protect its jurisdiction. *Carlough* involved a nationwide class of plaintiffs and several defendants---primarily manufacturers of asbestos-related products---and third party defendants---primarily insurance providers. We found the complexity of the case to be a substantial factor in justifying the injunction imposed.
>
> Implicit in *Carlough* is the recognition that maintaining "the federal court's flexibility and authority to decide" such complex nationwide cases makes special demands on the court that may justify an injunction otherwise prohibited by the Anti-Injunction Act.

*In re Diet Drugs,* 282 F.3d 220, 235 (3rd Cir. 2002) (internal citations omitted).

To answer the Court's specific question, the law is clear that in a twelve-year-old MDL proceeding where years of discovery and expert work has been undertaken concerning numerous complex issues, the case itself, and the discovery within it, represents a *res* which the Court has authority. This Court has previously found that a case itself, and presumably the discovery within it, was a *res* a over which a District Court may exercise jurisdiction:

> In *Battle v. Liberty National Life Insurance Co.*, the Eleventh Circuit, affirming the district court's anti-suit injunction against parallel state court proceedings post-final

10

judgment, observed that "it makes sense to consider this case, involving years of litigation and mountains of paperwork, as similar to a *res* to be administered." 877 F.2d 877, 882 (11th Cir. 1989). In fact, according to the Eleventh Circuit, "[t]his lengthy, complicated litigation is the 'virtual equivalent of a *res*.' " *Id.* (quoting *Battle v. Liberty Nat'l Life Ins. Co.*, 660 F. Supp. 1449, 1457 (N.D. Ala. 1987)); *see also In re Baldwin-United Corp.*, 770 F.2d 328, 337 (2d Cir. 1985) ("In effect, unlike the situation in the *Kline v. Burke Construction Co.* line of cases, the district court had before it a class action proceeding so far advanced that it was the virtual equivalent of a *res* over which the district judge required full control."). The court, therefore, concluded that supervising a complex class action is sufficiently analogous to administering a *res* for purposes of the Anti-Injunction Act's "in aid of jurisdiction" exception to overcome the jurisdictional divide acknowledged in *Kline*.

*In re: Silicone Gel Breast Implant Prod. Liab. Litig.*, 2010 WL 11506713 at *51, *aff'd, Juris v. Inamed Corp.*, 685 F.3d 1294 (11th Cir. 2012). Other Courts have considered this question in the context of discovery issues specifically. In *Winkler*, the Seventh Circuit specifically held:

the Anti–Injunction Act does not bar courts with jurisdiction over complex multidistrict litigation from issuing injunctions to protect the integrity of their rulings, including pre-trial rulings like discovery orders, as long as the injunctions are narrowly crafted to prevent specific abuses which threaten the court's ability to manage the litigation effectively and responsibly.

101 F.3d at 1203

Additionally, enforcement of a Protective Order may require a federal court to enter orders which have the effect of restricting state court discovery. *See, e.g., Ivax Corp. v. B. Braun of Am., Inc.*, No. 00-4909-CIV-KING, 2001 WL 253251, at *4 (S.D. Fla. Jan. 24, 2001) (district court "has the authority to stay [parallel state court action] to protect and preserve its jurisdiction over discovery issues under the 'aid in jurisdiction' exception of the Anti-Injunction Act");*ONBANCorp., Inc. v. Holtzman,* 1997 WL 381779, at *7–8 (N.D.N.Y. June 27, 1997) (under AWA and AIA, federal court enjoined state discovery to effectuate terms of federal confidentiality order), *aff'd*, 125 F.3d 844, 1997 WL 624863 (2d Cir.1997); *Sperry Rand Corp. v. Rothlein,* 288 F.2d 245, 248–49 (2d Cir.1961) (under the AWA and the AIA, federal court enjoined plaintiff from using materials obtained through federal discovery in state court action); *In re RC2 Corp.*

*Toy Lead Paint Products Liability Litig.*, 2008 WL 548772, at \*3 (N.D. Ill. Feb. 20, 2008) (finding that courts apply the "in aid of jurisdiction" exception where "the federal court was protecting existing rulings such as discovery rulings, or the party sought to be enjoined had clearly tried to subvert the court's existing rulings.") (listing cases); *Harris v. Wells,* 764 F. Supp. 743, 745 (D. Conn. 1991) (under the AWA, court granted preliminary injunction to prevent state court discovery which interfered with federal court's existing discovery order in complex litigation). "An important aspect of [an MDL Court's] control is to prevent predatory discovery, especially of sensitive documents, ensuring that litigants use discovery properly as an evidence-gathering tool, and not as a weapon." *Winkler*, 101 F.3d at 1202. Further, the federalism underpinnings of the AIA are at their weakest when it is the State Court litigants creating the friction with long-pending federal jurisdiction. "Litigants who engage in forum-shopping, or otherwise take advantage of our dual court system for the specific purpose of evading the authority of a federal court, have the potential 'to seriously impair the federal court's flexibility and authority to decide that case.'" *Id.* at 1203 (citing *Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers,* 398 U.S. 281, 295 (1970)).

Here, the Court is well aware of the time and expense the Provider Plaintiffs have spent acquiring information through discovery and developing the expert materials that the *Prime* plaintiffs now seek access to for free. The *Prime* Plaintiffs have presented no evidence contrary to the entry of the Protective Order other than questioning this Court's authority to enter it. Neither the *Prime* Plaintiffs nor the California Court would be enjoined by the Protective Order. Only the parties who received materials under the Protective Order of this Court and are already subject to this Court's Protective Order would be enjoined. Enforcing or amending the Protective Order as

12

the Provider Plaintiffs have requested would be well within the "In Aid of Jurisdiction" exception to the AIA.

### 2. The Court Can Issue an Injunction to Protect and Effectuate Its Judgments.

The Court may also act under the "Protect and Effectuate Judgment" exception to the AIA. This exception applies to both interlocutory orders and final judgments. *Sperry Rand Corp. v. Rothlein*, 288 F.2d 245, 248–9 (2d Cir.1961).

In *In re: Silicone Gel Breast Implant Products Liability Litigation*, this Court previously found (and was affirmed by the 11th Circuit) with respect to the Protect and Effectuate Judgments Exception to the AIA:

> "In these cases, the courts have reasoned that some complex federal cases— particularly those involving multidistrict litigation, substantial pretrial litigation, extended settlement negotiations, or actual settlements—are analogous to *in rem* actions because the lawsuits themselves are 'the virtual equivalent of a *res* to be administered.'" *Lawrence v. Household Bank (SB), N.A.*, 343 F. Supp. 2d 1094, 1100 (M.D. Ala. 2004) (quoting *Wesch*, 6 F.3d at 1470); *see also Burr & Forman*, 470 F.3d at 1032 ("For an injunction properly to issue, the matter in controversy in the federal court proceeding must be 'the virtual equivalent' of a controversy over disputed *res* in an *in rem* proceeding and the state court proceeding must constitute a threat to the federal court's resolution of that controversy.")

2010 WL 11506713 at *52. Here, as discussed above, the litigation generally, and the documents and work product already subject to the Court's enforcement authority under the Protective Order specifically, represent a "virtual equivalent" of a *res* for which this Court may enter an injunction to protect. Once this Court allows the production of these materials, it can no longer exclusively determine what happens to them, nor can it protect its jurisdiction over them. If the California court ultimately rules that these documents become a matter of public record, it is out of the control of this Court and the parties. The cattle will be out of the field, and this Court will have no way to get them back. Allowing parties free access to millions of dollars in discovery material in copycat

state court actions would encourage further end runs of the MDL and undermine the MDL Court's ability to supervise and ultimately resolve this litigation.

This case has been pending before this Court for 12 years this month. The MDL has existed for almost that long. This Court has appointed lead counsel and directed them to undertake work including confidential discovery, the development of expert materials and other costly items now at risk of being outside the control of appointed counsel and the Court. The Subscriber Action has already settled. The Provider Action has been the subject of long-standing attempts at settlement. Allowing free use of discovery materials in this case, without some supervision by this Court, risks all the work in this case being undone by another Court. The Provider Plaintiffs' expert materials were developed at a cost of tens of millions of dollars to the lawyers and done at the direction, organization and protection of the Court's Orders. Under the circumstances, this Court clearly has authority under Rule 26, the AWA, and the exceptions to the AIA to protect these documents and require parties to submit to the jurisdiction of this Court to receive access to these materials.

> **D.     The Court Can, and Should, Impose an Assessment on the *Prime* Plaintiffs If They Gain Access to The Materials in Question.**

As the Court has noted, the presence of "free riders" is likely to be an ongoing issue. The *Prime* Plaintiffs have made plain their intention to take the Providers' expert materials and have thumbed their nose at this Court's ability to collect any assessment from them. However, this Court's authority to impose an assessment is well-established. For example, the Eastern District of Louisiana entered a set-aside order that applied to state-court cases, except those "wherein plaintiff's counsel has or had no other cases in this MDL and who have not participated in or had access to the discovery conducted in this MDL." *In re Oil Spill by the Oil Rig Deepwater Horizon*, 2011 WL 6817982, at *6 (E.D. La. Dec. 28, 2011), *amended and superseded on other grounds*, 2012 WL 161194 (E.D. La. Jan. 18, 2012). In support of its order, the court cited this statement by

14

the Federal Judicial Center: "Courts may direct contributions to be made by defendants, or by plaintiffs' counsel out of individual settlement payments received. Fees may not be imposed by a transferee judge on attorneys **with no cases in the MDL *and* who do not use federal discovery material**." Fed. Judicial Ctr., Managing Multidistrict Litigation in Products Liability Cases, A Pocket Guide for Transferee Judges at 14–15 (2011) (emphasis added by *Oil Spill*). Therefore, this Court's set-aside order could apply to settlements and judgments in *Prime* if they choose to take advantage of discovery material and expert work developed for this MDL. In the meantime, the Court should leave its injunction in place and consider the entry of other appropriate orders to resist free riding via copycat discovery on discovery.

## CONCLUSION

This Court has clear authority to enforce or modify its own Protective Order to protect documents and materials produced and created due to that same Protective Order. Accordingly, the Court should enforce or modify the Protective Order as appropriate to require the *Prime* Plaintiffs or other parties to gain permission of the parties or come to this Court to get access to those materials. Further, the Court should fully consider and enter an order requiring that litigants accessing the Common Benefit Work Product of the Provider Plaintiffs pay an assessment to those Providers for access to those materials. As the Blues noted in their response, the Provider Plaintiffs are comfortable with the Special Master or the Court reaching out to their counterparts in California to discuss the issue.

Dated: July 8, 2024                                    Respectfully submitted,

*/s/ Edith M. Kallas*                                  */s/ Joe R. Whatley, Jr.*
Edith M. Kallas – ***Co-Lead Counsel***               Joe R. Whatley, Jr. – ***Co-Lead Counsel***
WHATLEY KALLAS, LLP                                    W. Tucker Brown
152 West 57th Street                                   WHATLEY KALLAS, LLP
41st Floor                                             2001 Park Place North
New York, NY 10019                                     1000 Park Place Tower
Tel: (212) 447-7060                                    Birmingham, AL 35203
Fax: (800) 922-4851                                    Tel: (205) 488-1200
Email: ekallas@whatleykallas.com                       Fax: (800) 922-4851
                                                       Email: jwhatley@whatleykallas.com
                                                              tbrown@whatleykallas.com

                     */s/ Barry A. Ragsdale*
               Barry Alan Ragsdale – ***Plaintiffs' Liaison***
             ***Counsel and Discovery Liaison Counsel***
                      Dominick Feld Hyde, PC
              1130 22nd Street South Ridge Park
                          Suite 4000
                     Birmingham, AL 35205
                      Tel: (205) 536-8888
                     bragsdale@dfhlaw.com

Patrick J. Sheehan                                     Deborah J. Winegard
WHATLEY KALLAS, LLP                                    WHATLEY KALLAS, LLP
101 Federal Street                                     1068 Virginia Avenue, NE
19th Floor                                             Atlanta, GA 30306
Boston, MA 10019                                       Tel: (404) 607-8222
Tel: (617) 573-5118                                    Fax: (404) 607-8451
Fax: (617) 371-2950                                    Email: dwinegard@whatleykallas.com
Email: psheehan@whatleykallas.com

Henry C. Quillen                                       E. Kirk Wood, Jr. – ***Local Facilitating***
WHATLEY KALLAS, LLP                                    ***Counsel***
159 Middle Street, Suite 2C                            WOOD LAW FIRM LLC
Portsmouth, NH 03801                                   P. O. Box 382434
Tel: (603) 294-1591                                    Birmingham, AL 35238
Fax: (800) 922-4851                                    Tel: (205) 612-0243
Email: hquillen@whatleykallas.com                      Fax: (205) 705-1223
                                                       Email: kirk@woodlawfirmllc.com

16

Charles Clinton Hunter
HAYES HUNTER PC
4265 San Felipe, Suite 1000
Houston, TX 77027
Tel: (281) 768-4731
Fax: (713) 583-7047
Email: chunter@hayeshunterlaw.com

Aaron S. Podhurst – *Plaintiffs' Steering Committee*
Peter Prieto – *Chair, Expert Committee*
PODHURST ORSECK, P.A.
One S.E. 3rd Avenue
Suite 2300
Miami, FL 33131
Tel: (305) 358-2800
Fax: (305) 358-2382
Email: apodhurst@podhurst.com
      pprieto@podhurst.com

Dennis Pantazis – *Plaintiffs' Steering Committee*
Brian Clark – *Discovery Committee*
WIGGINS CHILDS PANTAZIS FISHER
 GOLDFARB
The Kress Building
301 Nineteenth Street North
Birmingham, AL 35203
Tel: (205) 314-0500
Fax: (205) 254-1500
Email: dgp@wigginschilds.com
      bclark@wigginschilds.com

U.W. Clemon – *Plaintiffs' Steering Committee*
U. W. Clemon, LLC
5202 Mountain Ridge Parkway
Birmingham, AL 35222
Tel: (205) 837-2898
Email: uwclemon1@gmail.com

Dennis C. Reich – *Chair, Damages Committee*
REICH & BINSTOCK, LLP
4265 San Felipe, Suite 1000
Houston, TX 77027
Tel: (713) 622-7271
Fax: (713) 623-8724
Email: dreich@reichandbinstock.com

J. Mark White – *Litigation Committee*
Augusta S. Dowd – *Chair, Litigation Committee*
Linda G. Flippo – *Discovery Committee*
WHITE ARNOLD & DOWD, P.C.
The Massey Building
2025 Third Avenue North, Suite 500
Birmingham, AL 35203
Tel: (205) 323-1888
Fax: (205) 323-8907
Email: mwhite@whitearnolddowd.com
      adowd@whitearnolddowd.com
      lflippo@whitearnolddowd.com

17

Nicholas B. Roth – *Chair, Discovery Committee*
Julia Smeds Roth – *Discovery Committee*
EYSTER KEY TUBB ROTH MIDDLETON
 & ADAMS, LLP
402 East Moulton Street, SE
Decatur, AL 35602
Tel: (256) 353-6761
Fax: (256) 353-6767
Email: nbroth@eysterkeylaw.com
        jroth@eysterkeylaw.com

David A. Balto – *Expert Committee*
THE LAW OFFICES OF DAVID A. BALTO
1350 I Street, N.W., Suite 850
Washington, DC 20005
Tel: (202) 789-5424
Fax: (202) 589-1819
Email: david.balto@dcantitrustlaw.com

Joey K. James – *Litigation Committee*
BUNCH & JAMES
P. O. Box 878
Florence, AL 35631
Tel: (256) 764-0095
Fax: (256) 767-5705
Email: joey@joeyjameslaw.com

Richard S. Frankowski – *Discovery Committee*
THE FRANKOWSKI FIRM, LLC
231 22nd Street South, Suite 203
Birmingham, AL 35233
Tel: (205) 390-0399
Fax: (205) 390-1001
Email: richard@frankowskifirm.com

Van Bunch – *Chair, Class Certification Committee*
BONNETT FAIRBOURN FRIEDMAN &
 BALINT, P.C.
2325 E. Camelback Road, Suite 300
Phoenix, AZ 85016
Tel: (602) 274-1100
Fax: (602) 274-1199
Email: vbunch@bffb.com

Robert J. Axelrod – *Chair, Written Submissions Committee*
AXELROD LLP
800 Third Avenue, Suite 2800
New York, NY 10022
Tel: (646) 448-5263
Fax: (212) 840-8560
Email: raxelrod39@gmail.com

W. Daniel Miles, III – *Written Submissions Committee*
BEASLEY ALLEN CROW METHVIN PORTIS
 & MILES, P.C.
218 Commerce Street
Montgomery, AL 36104
Tel: (800) 898-2034
Fax: (334) 954-7555
Email: dee.miles@beasleyallen.com

Michael C. Dodge – *Expert Committee*
GLAST PHILLIPS & MURRAY, P.C.
14801 Quorum Drive, Suite 500
Dallas, TX 75254
Tel: (972) 419-7172
Email: mdodge@gpm-law.com

18

John C. Davis – *Written Submissions Committee*
LAW OFFICE OF JOHN C. DAVIS
623 Beard Street
Tallahassee, FL 32303
Tel: (850) 222-4770
Email: john@johndavislaw.net

Mark K. Gray – *Discovery Committee*
GRAY & WHITE
713 E. Market Street, Suite 200
Louisville, KY 40202
Tel: (502) 805-1800
Fax: (502) 618-4059
Email: mgray@grayandwhitelaw.com

Stephen M. Hansen – *Class Certification Committee*
LAW OFFICE OF STEPHEN M. HANSEN
1821 Dock Street
Tacoma, WA 98402
Tel: (253) 302-5955
Fax: (253) 301-1147
Email: steve@stephenmhansenlaw.com

Harley S. Tropin – *Damages Committee*
Javier A. Lopez – *Discovery Committee*
KOZYAK TROPIN &
 THROCKMORTON, P.A.
2525 Ponce De Leon Boulevard, 9th Floor
Miami, FL 33134
Tel: (305) 372-1800
Fax: (305) 372-3508
Email: hst@kttlaw.com
        jal@kttlaw.com

Michael E. Gurley, Jr. – *Discovery Committee*
Attorney at Law
24108 Portobello Road
Birmingham, AL 35242
Tel: (205) 908-6512
Email: mgurleyjr@yahoo.com

Lynn W. Jinks, III – *Expert Committee*
Christina D. Crow – *Discovery Committee*
JINKS CROW & DICKSON, P.C.
219 North Prairie Street
Union Springs, AL 36089
Tel: (334) 738-4225
Fax: (334) 738-4229
Email: ljinks@jinkslaw.com
        ccrow@jinkslaw.com

Myron C. Penn – *Discovery Committee*
PENN & SEABORN, LLC
53 Highway 110
Post Office Box 5335
Union Springs, AL 36089
Tel: (334) 738-4486
Fax: (334) 738-4432
Email: myronpenn28@hotmail.com

J. Preston Strom, Jr. – *Litigation Committee*
STROM LAW FIRM, LLC
2110 N. Beltline Boulevard, Suite A
Columbia, SC 29204-3905
Tel: (803) 252-4800
Fax: (803) 252-4801
Email: petestrom@stromlaw.com

C. Wes Pittman – *Settlement Committee*
THE PITTMAN FIRM, P.A.
432 McKenzie Avenue
Panama City, FL 32401
Tel: (850) 784-9000
Fax: (850) 763-6787
Email: wes@pittmanfirm.com

Robert B. Roden – *Litigation Committee*
SHELBY RODEN, LLC
2956 Rhodes Circle
Birmingham, AL 35205
Tel: (205) 933-8383
Fax: (205) 933-8386
Email: rroden@shelbyroden.com

Gary E. Mason – *Class Certification Committee*
WHITFIELD BRYSON & MASON, LLP
1625 Massachusetts Ave. NW, Suite 605
Washington, DC 20036
Tel: (202) 429-2290
Fax: (202) 640-1160
Email: gmason@wbmllp.com

Michael L. Murphy – *Discovery Committee*
BAILEY GLASSER LLP
910 17th Street, NW, Suite 800
Washington, DC 20006
Tel: (202) 463-2101
Fax: (202) 463-2103
Email: mmurphy@baileyglasser.com

Lance Michael Sears
SEARS & SWANSON, P.C.
First Bank Building
2 North Cascade Avenue, Suite 1250
Colorado Springs, CO 80903
Tel: (719) 471-1984
Fax: (719) 577-4356
Email: lance@searsassociates.com

Thomas V. Bender – *Discovery Committee*
Dirk L. Hubbard
HORN AYLWARD & BANDY, LLC
2600 Grand Blvd., Suite 1100
Kansas City, MO 64108
Tel: (816) 421-0700
Email: tbender@hab-law.com
 dhubbard@hab-law.com

Gregory S. Cusimano – *Litigation Committee*
CUSIMANO, ROBERTS & MILLS, LLC
153 South 9th Street
Gadsden, AL 35901
Phone: (256) 543-0400
Fax: (256) 543-0488
Email: greg@alalawyers.net

Brian E. Wojtalewicz
WOJTALEWICZ LAW FIRM, LTD.
139 N. Miles Street
Appleton, MN 56208
Tel: (320) 289-2363
Fax: (320) 289-2369
Email: brian@wojtalewiczlawfirm.com

Archie C. Lamb, Jr.
ARCHIE LAMB & ASSOCIATES, LLC
301 19th Street North, Suite 585
The Kress Bldg.
Birmingham, AL 35203-3145
(205) 458-1210
Email: alamb@archielamb.com

Paul Lundberg
LUNDBERG LAW, PLC
600 4TH Street, Suite 906
Sioux City, IA 51101
Tel: (712) 234-3030
Fax: (712) 234-3034
Email: paul@lundberglawfirm.com

20

Jessica Dillon
Ray R. Brown
Molly Brown
DILLON & FINDLEY, P.C.
1049 W. 5th Avenue, Suite 200
Anchorage, AK 99501
Tel: (907) 277-5400
Fax: (907) 277-9896
Email: Jessica@dillonfindley.com
   Ray@dillonfindley.com
   Molly@dillonfindley.com

Cynthia C. Moser
HEIDMAN LAW FIRM
1128 Historic 4th Street
P. O. Box 3086
Sioux City, IA 51101
Tel: (712) 255-8838
Fax (712) 258-6714
Email: Cynthia.Moser@heidmanlaw.com

Gwen Simons
Simons & Associates Law, P.A.
P.O. Box 1238
Scarborough, ME 04070-1238
Tel: (207) 205-2045
Fax: (207) 883-7225
Email: gwen@simonsassociateslaw.com

21