FILED
2024 Sep-27  PM 05:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **IN RE:**<br>**BLUE CROSS BLUE SHIELD**<br>**ANTITRUST LITIGATION**<br>**(MDL NO. 2406)** | **Master File No. 2:13-CV-20000-RDP**<br><br>**This Document Relates to**<br>**All Cases** |

**PARTIES' JOINT STATUS REPORT PURSUANT TO**
**COURT'S AUGUST 29, 2024 ORDER**

COME NOW, the Subscriber Plaintiffs, Provider Plaintiffs, Defendants and the Plaintiffs in *VHS Liquidating Trust, et al v. Blue Cross of California, et al.* ("Prime Plaintiffs") and, pursuant to this Court's August 29, 2024 Order (Dkt. 3170) (the "Order"), provide this status report regarding their meet and confer efforts regarding discovery disputes. The parties met and conferred per the Court's instruction on September 18 and did not reach any agreement. Each party's position on the current status is provided below:

**MDL Plaintiffs' Position:**

**History**

At the August 28th Conference the Court asked the parties to meet and confer regarding these issues.  After the conference, the parties met and conferred and agreed that the Prime Plaintiffs would provide a pared down list of the items they were continuing to request.  The Provider Plaintiff attorney who had worked with the data issues and had pulled the information necessary for the discussion was not in attendance or available immediately due to the imminent birth of a child.  No party refused to meet and confer and in fact the parties had a straightforward discussion that led to the Prime Plaintiffs providing a complete list of the materials they were still requesting.

1

As agreed at the meet and confer after the August 28th conference, the attorneys for the Prime Plaintiffs provided Subscriber and Provider Plaintiffs their pared down list of requests for items from the MDL for Provider Plaintiffs' and Subscriber Plaintiffs' consent.  That list was first provided on September 10. Following that, a meet and confer of the parties, including the Blues, MDL Provider and Subscriber Plaintiffs, and the Prime Plaintiffs, was held on September 18. During that call, the Prime Plaintiffs made clear that while they were willing to pay the hard costs (approximately $31,000) related to the Optum data, they were not willing to pay any portion of the attorneys' fees or other costs associated with that data, and their offer was to pay zero for the Blues' expert reports and the depositions taken by the Provider Plaintiffs.

Much as they did with respect to the first motion, on the eve of a due date for filing in this Court, in conjunction with providing their portion of this status report for filing, the Prime Plaintiffs reversed course and for the first time made a formal offer of payment with respect to the deposition transcripts. Now that the Prime Plaintiffs are willing to discuss paying something more than zero for the deposition transcripts, it may be that further meet and confer will be productive on that point.  That said, Provider Plaintiffs' position remains that for each of the three categories of materials below, the Prime Plaintiffs must pay some portion of the lodestar and other costs associated with the acquisition of the materials here.  It appears that the Prime Plaintiffs are unwilling to consider such a payment.

Finally, while we disagree with a great deal in the Prime Plaintiffs' argumentative and repetitive approximately 16-page portion of this status report, we will resist the temptation to re-brief and argue all of those positions again here, and limit our discussion to the status of the Court's ordered meet and confer with respect to the materials. The tenor of the Prime Plaintiffs' response here should be sufficient for the Court to understand the nature of the meet and confer conducted

between the parties. If the Court would like more briefing on these points, we suggest the Prime Plaintiffs file an appropriate motion at an appropriate time for access to the materials and the parties brief the issues, again, in that context. It remains the Provider Plaintiffs view that the Prime Plaintiffs' intention is to free ride, which is largely unaddressed by their offers to contribute a small portion of Provider Plaintiffs' out-of-pocket costs.

**Prime Plaintiffs' Position:**

### a. Background

Prime Plaintiffs[1] have repeatedly attempted to informally resolve Provider Plaintiffs' concerns, and remain ready and willing to come to an agreement with them as a courtesy. Recent authority highlights that limitations on jurisdiction prevent a federal court from issuing orders that mandate contributions from non-parties to the MDL because an MDL court's "jurisdiction does not extend to cases that are not actually before it even if the plaintiffs in those cases might benefit from work performed in the MDL." *In re Hair Relaxer Mktg. Sales Pracs. and Prods. Liab. Litig*., MDL No. 3060, No. 23-cv-0818, 2024 WL 3904650, at *2 (N.D. Ill. Aug. 22, 2024).[2] As that court emphasized, "[w]hen a holdback assessment reaches the recoveries of parties in state court or parties without any case, 'any plausible support from the common fund doctrine disappears

---

[1] Non-parties VHS Liquidating Trust, Prime Healthcare Services, Inc., Prime Healthcare Foundation, Inc., and Prime Healthcare Management, Inc. (collectively, the "Prime Plaintiffs") are two hospital systems that have brought an individual action under California and other state laws in Alameda Superior Court, *VHS Liquidating Trust, et al. v. Blue Cross of California, et al*., Case No. RG21106600. Prime Plaintiffs bring provider side claims, as well as Subscriber side claims, having opted out of the MDL class settlement for Subscribers. Prime Plaintiffs specially appear to submit this joint report without otherwise consenting to this Court's jurisdiction.

[2] The *Hair Relaxer* decision relied upon multiple similar opinions, citing *In re FedEx Ground Package Sys., Inc., Emp. Pracs. Litig.*, No. 3:05-MD-527, 2011 WL 611883, at *3 (N.D. Ind. Feb. 11, 2011) (finding that "[t]his court doesn't have jurisdiction over cases never actually before this court, whether state or federal, even though it's possible that attorneys in state or federal cases might use the work done by co-lead and MDL counsel before this court."); *First Impressions Salon, Inc. v. Nat'l Milk Producers Fed'n*, No. 3:13-CV-454, 2019 WL 13180924, at *3 (S.D. Ill. Apr. 5, 2019) (denying order imposing a settlement set-aside on "any" class action opt-out on the grounds that "[t]he Court can only exercise authority over parties that have subjected themselves to the Court's jurisdiction."); *In re Showa Denko K.K. LTryptophan Prods. Liab. Litig.-II*, 953 F. 2d 162, 165-66 (4th Cir. 1992) (noting that taxing state court settlements "has the very real potential of interfering with discovery proceedings in state court, raising questions of conflict with the policy of comity between federal and state courts," and holding that any attempt to reach others who are unrelated to the parties to that action "is beyond the court's power." ).

entirely—the court is exercising authority over disputes that are not before it and over property that is not before it, without any clear limit on the court's reach.'" *Id*. at *3 (citing *In re Roundup Prods. Liab. Litig.*, 544 F. Supp. 3d 950, 959 (N.D. Cal. 2021)). When faced with the same policy arguments MDL Plaintiffs raise here—that "the common benefit doctrine is routinely justified as necessary to prevent 'free riding'"—the court pointedly held that "[r]egardless of the magnitude of the free rider problem, the Court's jurisdiction cannot be arbitrarily expanded to redress this aggrieved inequity." *Id.* at *3.

Neither the Court's ability to enforce its existing Protective Order, nor its inherent managerial authority, serves to expand its jurisdiction to encompass cases not before it. *In re Hair Relaxer Mktg. Sales Pracs. & Prods. Liab. Litig.*, 2024 WL 3904650, at *3-4 ("When overseeing multidistrict litigation, district courts are afforded 'broad discretion in coordinating and administering multi-district litigation.' *Showa*, 953 F.2d at 165. Even so, the authority to conduct multidistrict litigation does not alter the inherent limits on a district court to manage only its docket at the exclusion of cases beyond the MDL.") And relying on this managerial authority under 28 U.S.C. § 1407 as a stopgap measure when positive law cannot be identified risks violating the Rules Enabling Act. *See* 28 U.S.C. § 2072(b) (2012) (requiring that rules of procedure not "abridge, enlarge, or modify any substantive right"). Every Court of Appeal that has considered the issue has held that an MDL may assess state court cases *only* where there is a voluntary agreement. But Prime Plaintiffs have not entered into a participation agreement in exchange for access to common benefit "work product" in the MDL, nor do they seek MDL Plaintiffs' work product. Rather, Prime Plaintiffs only seek materials from the Defendants and non-parties.

This is not a case where Prime is attempting to establish a competing class action, thereby implicating this Court's authority under the All Writs Act, or its continuing jurisdiction over

4

settlements.[3] *Cf. Faught v. Am. Home Shield Corp.*, No. 2:07-CV-1928-RDP, 2011 WL 12607338, at \*7 (N.D. Ala. Jan. 24, 2011), *vacated on other grounds*, 660 F.3d 1289 (11th Cir. 2011); *In re Diet Drugs*, 282 F.3d 220, 234, 239 (3d Cir. 2002) (upholding the district court's order pursuant to the All Writs Act, enjoining a mass opt out of a state class shortly after the MDL class had settled); *In re Syngenta AG MIR 162 Corn Litig.*, No. 14-md-2591, 2015 WL 2165341, at \*3 (D. Kan. May 8, 2015) (finding continuing jurisdiction over MDL settlement based on the Settlement Agreement and the All Writs Act, but holding that its "jurisdiction over the defendant and some attorneys with respect to cases in the MDL does not grant it jurisdiction to issue orders requiring assessments in cases not before this Court."). Nor is Prime a party to the MDL attempting to obtain material that is otherwise unavailable to parties in the MDL. *Cf. Harris v. Wells*, 764 F. Supp. 743, 746 (D. Conn. 1991) (injunction required to retain control over discovery matters between the parties where one of the plaintiffs in the MDL sought to obtain discovery in state proceedings from the same defendant). This is a wholly separate individual action not before the MDL. Thus, while there is no authority necessitating that Prime Plaintiffs compensate the MDL Plaintiffs for the limited set of non-party data and documents originating with Defendants, Prime Plaintiffs would prefer to resolve the issue without Court intervention, and have repeatedly reached out to MDL Plaintiffs to do so.

---

[3] Even in those situations, courts have narrowly crafted such injunctions because they are "reluctant to restrict federal/state comity any more than necessary." *In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, No. 1:01-CV-9000, 2005 WL 2656649, at \*9 (N.D. Ohio Oct. 18, 2005). While the All Writs Act permits district courts "to enjoin a party to litigation before it from prosecuting an action in contravention of a settlement agreement over which the district court has retained jurisdiction," the Court "cannot use the All Writs Act as a basis for actually taking removal jurisdiction over the related state court litigation itself . . . ." *Id*. n. 15. *See also id*. at \*12 (holding that a class member who recovered and was bound by the class settlement agreement could pursue malpractice claims in state court but was enjoined from prosecuting "fraud, misrepresentation, breach of fiduciary duty, and deceptive trade practices, because to do so would: (1) be tantamount to an appeal of this Court's earlier Orders; and (2) be in breach of § 15.3 of the Settlement Agreement.").

In order to resolve the parties dispute informally,  Prime Plaintiffs first reached out on July 8, 2024 and offered to enter into a stipulation in order to resolve Providers' Motion to Enforce or Modify the Protective Order whereby Prime Plaintiffs agreed to no longer seek: (1) the MDL Plaintiffs' expert reports and backup materials; (2) depositions of the MDL Plaintiffs; or (3) any Confidential Material from the MDL Plaintiffs included in redacted Court filings and hearing transcripts, with the exception of any discovery material already produced in other parallel litigation, including the Defendants' expert reports ordered produced by this Court in the decision *Alaska Air Group, Inc. v. Anthem, Inc*., Mem. Opinion and Order, No. 2:21-cv-01209-RDP, Dkt. 401 (N.D. Ala. Jan. 30, 2024). Almost three weeks went by with no response. Then, on July 25, 2024, Providers made a counterproposal that would require Prime Plaintiffs not to seek the production of *any* materials of the MDL Plaintiffs or third parties such as the Health Care Cost Institute, Inc. ("HCCI"), or the Blues' own expert reports. As expressed at the August 28, 2024 status conference ("Status Conference"), this would include the data that was produced by OptumInsight, Inc. ("Optum") in the MDL, which was collected for non-litigation purposes. Importantly, this data is no longer available from any other source.

During the Status Conference, the Court directed the Prime Plaintiffs to "just go meet and confer about this and see if you can gain their consent" because "it may be as simple as, you know, trying to get an agreement about what a fair contribution to the common -- what the investment already made to get these materials would be if you're interested in these materials." Status Conf. Tr. at 36:9-10, 37:16-20; *see also id.* at 57:18-21 (Prime Plaintiffs' counsel stated "we should sit down for an hour or two" and the Court responded "I'm all for that."). Immediately following the Status Conference, Prime Plaintiffs' counsel requested that all of the interested parties sit down in

a room and discuss all of the issues in an effort to at least reach an informal understanding. The MDL Plaintiffs declined to meet and confer at that time.

On September 10, 2024, Prime Plaintiffs sent an email to MDL Plaintiffs requesting a time to meet and confer, and outlined the three discrete categories of materials they seek, each of which were produced in the MDL by either non-parties or Defendants: (1) claims data from 2008-2014 as it was produced by Optum in the MDL—which was supplied to Optum solely in the ordinary course of business by national insurers Aetna, Inc., UnitedHealth Group, and Humana, Inc.—*and was not created as a result of or because of any pending litigation*—pursuant to contracts these national insurers had with HCCI; (2) the Blues' own expert reports from the MDL as they were already produced in the ASO opt-out litigation *without objection from the MDL Plaintiffs*; and (3) deposition transcripts of Blue Cross and Blue Shield witnesses with exhibits for context (with any testimony and documents included as exhibits that *originate* with MDL Plaintiffs redacted), as they were already produced in the ASO opt-out litigation *without objection from the MDL Plaintiffs*.

On September 18, 2024, Prime Plaintiffs and the MDL parties participated in a meet and confer to discuss these issues. Prime Plaintiffs reiterated the reasons why each category of materials at issue is subject to production, and, as a courtesy, offered to pay Providers their full out-of-pocket costs associated with the production of the Optum data alone, which according to the PowerPoint presented by Provider Plaintiffs at the Status Conference amounted to $31,589. Provider Plaintiffs declined that offer on the basis that they should also be compensated for their time to secure such data, including because they believe the data was only produced in the format it was as a result of their efforts, a position which has not been substantiated, as further set forth below. Prime Plaintiffs did not offer to reimburse Subscriber Plaintiffs for any costs they incurred

in obtaining the Optum data as they have already been fully compensated for the costs to obtain such data in connection with their recovery from the settlement fund of all fees, including a 3.2 multiplier, and costs incurred. Subscriber Plaintiffs disagreed that compensation from the Prime Plaintiffs would result in a double recovery, and Provider Plaintiffs did not confirm that if they were paid by Prime Plaintiffs for their costs incurred with obtaining the Optum data, they would not seek a double recovery for the same costs at the conclusion of their case. That same day, Prime Plaintiffs requested the authority supporting Subscriber Plaintiffs' position allowing a double recovery but they have yet to respond.

### b. Prime Plaintiffs Only Seek Materials Originating with Non-parties and the Blues

Prime Plaintiffs have requested the production of the following specific materials from the Blues in the California action, none of which originated with MDL Plaintiffs. For efficiency purposes and to reduce the burden on them, the Blues and certain third parties have consented to the reproduction of the data they produced in the MDL in the Prime litigation. In light of that, there is no justification for MDL Plaintiffs to act as gatekeepers for materials that did not originate with them. The production of information, documents, and testimony from the Blues or third parties in the MDL does not serve to convert it into the property of a party to the MDL. Any demand for the reimbursement associated with the cost to secure such data and documents on the basis that the benefit to Prime Plaintiffs would otherwise constitute unjust enrichment should be limited to reasonable costs incurred and not provide counsel for MDL Plaintiffs with a windfall or double recovery. As noted by Magistrate Judge Putnam with respect to prior discovery disputes in the MDL, "the Supreme Court has proclaimed, '[f]or more than three centuries it has . . . been recognized as a fundamental maxim that the public . . . has a right to every man's evidence.'" Dkt. No. 2328 (Discovery Order No. 91) (quoting *Jaffee v. Redmond*, 518 U.S. 1, 10 (1996) (internal

quotation marks omitted) (citing *United States v. Bryan*, 339 U.S. 323, 331 (1950)). The MDL

Plaintiffs do not own documents, data and expert reports from the Blues and non-parties.

**Specific Categories of Materials Identified By Prime Plaintiffs on September 10**

The list provided by Prime on September 10 included continuing requests for three

categories of materials:

> **1.      The claims data from 2008-2014 as it was produced by OptumInsight, Inc. ("Optum") in the MDL—which was supplied to Optum by national insurers Aetna, Inc., UnitedHealth Group, and Humana, Inc. ("National Insurers")— pursuant to contracts with the Health Care Cost Institute, Inc. ("HCCI") in the ordinary course of business.**

<strong>Provider Plaintiffs' Position:</strong>

With respect to the Optum data (#1), counsel for the Prime Plaintiffs again noted that they

wanted the exact data that had been produced in the MDL, and that seeking data from the individual

insurers was not an acceptable alternative.  Counsel for the Prime Plaintiffs made an offer to

contribute a portion of the actual hard costs paid by the parties directly to Optum for the data but

refused to pay any additional costs related to the acquisition and maintenance of the data.

The cost to obtain this data, as Provider Plaintiffs explained on August 28, goes far beyond

the payment made to Optum. This data was not an off-the-shelf product that Optum freely gives

out to anyone who asks; securing access to it took two years of litigation and hundreds of thousands

of dollars of lodestar and expenses. If the Provider Plaintiffs had not undertaken this work, the

Prime Plaintiffs would be in the same position as the Provider Plaintiffs in 2014, staring ahead at

years of work to obtain it. If the Prime Plaintiffs want to obtain the benefit of the Provider

Plaintiffs' work by getting the same data without any effort of their own, they must compensate

the Provider Plaintiffs fairly for all the work and costs that were necessary to acquire the

information.

9

**Subscriber Plaintiffs' Position:**

Subscriber Plaintiffs take no position.

**Prime Plaintiffs' Position**:

According to court records in the MDL, Optum assembled the data it received from the National Insurers into an aggregated database for HCCI "to license its aggregated database of claims data without patient or payer information to researchers and policy makers." *See* Dkt. 1053-1 at 4. Counsel for both Optum and HCCI have since confirmed that Optum no longer has that data since it was instructed to destroy it by HCCI, and HCCI itself did not have rights to that data and is unaware of anyone having a copy of it other than the MDL parties, hence necessitating its reproduction from Defendants who have the Optum data as it was produced in the MDL, even though the data was originally gathered and standardized not for litigation purposes.

The fact that (1) such data originated from the National Insurers in the ordinary course of their business, (2) the National Insurers have provided their consent to its production, and (3) there is no alternative source for it, supports its production to Prime Plaintiffs from Defendants as with any other discovery. "[D]ocuments that were prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation are not protected by the work product doctrine." *Nat'l Day Laborer Org. Network v. United States Immigr. and Customs Enf't*, 486 F. Supp. 3d 669, 696 (S.D.N.Y. 2020) (citation omitted). In *Nat'l Day Laborer Org. Network,* the court rejected arguments by the defendants that the work product doctrine applied to documents related to the implementation of the government policy at issue on the basis it had been the subject of extensive past litigation. *Id.* As the court there noted, because defendants failed to demonstrate that the records would not have been created in essentially similar form irrespective of the litigation, it is well established any work product protection does not apply. *Id.*

*See also* Fed.R.Civ.P. 26(b)(3) advisory committee's note to 1970 amendment ("Materials assembled in the ordinary course of business . . . or for other nonlitigation purposes are not under the qualified immunity provided by this subdivision."); *Holladay v. Royal Caribbean Cruises, Ltd.* 334 F.R.D. 628, 635-636 (S.D. Fla. 2020) (finding that a safety accident report prepared after a passenger was injured on a cruise ship was created in the ordinary course of business regardless of whether litigation was anticipated, and not entitled to work product protection). Providers have made no showing that the Optum data would not have been created but for the MDL, nor can they as it existed in the ordinary court of business for HCCI and Optum.

Only non-parties have a legitimate secrecy interest in the Optum data, and each one of them has consented to its production. *See Kerasotes Michigan Theaters, Inc. v. National Amusements, Inc.*, 139 F.R.D. 102, 104 (E.D. Mich. 1991) (if access to protected material could be granted without harm to legitimate secrecy interests of parties, court was required to grant access even if need for protected material was minimal). Such disclosure would not harm Providers' interests and they have not explained how they have standing to object to production of data from a consenting third party.

Nor does the prior production of the Optum data in the MDL render it property of the MDL Plaintiffs. Even if it could be categorized as "fact work product," which it is not, fact work product remains "discoverable upon a showing of substantial need." *Diamond Resorts U.S. Collection Dev., LLC v. US Consumer Attys, P.A.*, No. 18-CV-80311-BER, 2021 WL 4482913, at *5 (S.D. Fla. Sept. 14, 2021). This data is indisputably relevant and Prime Plaintiffs have no alternative means of obtaining the substantial equivalent of it from any other source, which demonstrates substantial need sufficient to warrant its production from Defendants. *See Burrow v. Forjas Taurus S.A.*, 334 F. Supp. 3d 1222, 1231 (S.D. Fla. 2018) (finding engineering reports and other technical

documents with raw data discoverable where the data was so "essential to the facts of a case that they must be produced" given that there was no alternative to "acquire the same information or a substantial equivalent thereof"); Fed. Rules Civ. Proc., rule 26(b)(3)(A). Given that, this Court recognized at the Status Conference that if "HCCI just can't reproduce this data" it supports reproduction to the Prime Plaintiffs. Status Conf. Tr. at 38:12-15.

Providers contend that "the one thing that's without dispute is that data only exists because we paid a lot of money for it." *Id.* at 26:7-9. This is patently false. The data from Optum was created in the ordinary course of its business well before the litigation, so that HCCI could license the data to researchers and policy makers. Dkt. No. 1053 at 3-4. Despite Provider Plaintiffs' claims that as a result of their litigation efforts the Optum data was produced in a format other than what existed in the ordinary course of business, the only exchange with counsel for HCCI submitted by Providers in connection with their motion to compel indicates that HCCI informed Providers that certain of the requested fields in the data were not available, so Providers narrowed their request *to include what already existed* as a result. *See* Dkt. No. 800, Ex. B. Optum's counsel recently confirmed that the request to add new data fields came from Defendants and not Providers. Thus, it is Prime Plaintiffs' understanding that no data was created or standardization done as a result of any efforts on Providers' part.

Further, Providers' PowerPoint at the Status Conference appears to conflate their efforts to obtain the Optum **data** (subject of one motion to compel, Dkt. No. 800) with their efforts to obtain **documents** from the "National Insurers" Aetna, Cigna, Humana, and United (subject of a separate motion to compel, Dkt. No. 801, as well as a motion to compel by Defendants, Dkt. No. 996)— which Prime Plaintiffs **are not** seeking—and provides a total out-of-pocket expense for both motions of $327,112. But less than 10% of that figure was associated with the out-of-pocket cost

12

to reimburse Optum for its data production. The remainder was required for the production of ***documents from the National Insurers, which are not at issue here***, and was ordered separate and apart from the motion to compel data from HCCI. *See* Dkt. Nos. 1391 (Discovery Order No. 59 requiring payment of a $100,000 good faith deposit for reasonable costs to the National Insurers for production of their data and documents) and 2328 (Discovery Order No. 91, requiring payment of $291,047.44 between Provider Plaintiffs and Defendants).

Prime Plaintiffs are actively litigating the Alameda case and have negotiated Prime's discovery and sought consent from non-party insurers whose data is held by the Blues as it was produced by Optum. The reproduction of the data as it was produced in the MDL is not a shortcut as a result of the Providers' work. Rather, it is the only remaining option by which Prime Plaintiffs can obtain that data. As a courtesy to resolve the dispute Prime Plaintiffs offered to reimburse the specific entire out-of-pocket charges that Providers have stated they paid for this data, but that offer was declined. During the meet and confer, the MDL Plaintiffs made no mention to Prime Plaintiffs of their costs associated with the maintenance of the Optum data, which they raise for the first time in this Status Report. Rather, they pointed to their litigation fees and the $31,589 paid to Optum to secure the data (which presumably comprises or falls within the "acquisition" costs). Even now, they provide no clear estimate of their total costs of acquisition and maintenance, or define what they believe is necessary to compensate them "fairly." Given that Prime Plaintiffs seek reproduction of the Optum data from Defendants, it is unclear how MDL Plaintiffs' costs for maintenance are implicated. The offer to voluntarily pay the out-of-pocket cost of $31,589 remains in effect even though it is Prime Plaintiffs' position that the Court does not have the authority to order such payment.

13

**2.    The Blues' own expert reports from the MDL as they were produced in the ASO opt-out litigation.**

**Provider Plaintiffs' Position**:

With respect to the Blues' MDL expert reports (#2), the Prime Plaintiffs complained that if Provider Plaintiffs' (and Subscriber Plaintiffs') expert references were deleted, the expert reports would be meaningless.

Most of the focus of the discussion was on the fact that some of these reports were produced in the MDL Subscriber tag-along/opt-out actions. The Prime Plaintiffs were clear that they were not willing to make any offer to compensate Plaintiffs to access the Blues' full unredacted expert reports, which, among other things, summarize and respond to the work of the Provider Plaintiffs' experts.

Provider Plaintiffs were ready to meet and confer and made clear they were willing to undertake the work of determining appropriate compensation for this backdoor access to Providers Plaintiffs' expert work.

Prime Plaintiffs' argument, apparently, is that because other Subscriber Plaintiff opt-out/tag-along actions in this MDL were granted access, by the Court, to some of these materials, that the Prime Plaintiffs—litigants in California state court—should likewise get the materials. Provider Plaintiffs made clear that while they certainly did not affirmatively agree to production of those materials, nevertheless, those cases are governed by the Court's Protective Order and are subject to the jurisdiction of this Court. Thus, the Court maintains the ability to assess any appropriate payment from those Plaintiffs at an appropriate time.  The Prime Plaintiffs chose not to participate in this MDL and specifically pled and litigated their case in an effort to avoid the jurisdiction of this Court. This difference is among the consequences for that choice.

Here, the Prime Plaintiffs have made clear that their view is that they are not subject to this Court's jurisdiction and have no intention of paying anything for access to these materials. This issue must be decided before they gain access to or use the materials because there is no mechanism for enforcing these rights down the road, as there is in the MDL. In addition, it is not clear why the reports of these experts, who have not been designated as experts in the *Prime* litigation, is even necessary at this time.

**Subscriber Plaintiffs' Position:**

Subscriber Plaintiffs join Provider Plaintiffs' position.

**Prime Plaintiffs' Position:**

a. **Prior production of the Blues' expert reports and deposition transcripts without objection or contribution waives any argument they should be precluded from production here.**

In their September 10 email, Prime Plaintiffs requested an explanation as to how references to statements by MDL Plaintiffs' experts in the context of analysis conducted by the Blues' own experts, or deposition transcripts of the Blues' witnesses, are foreclosed from discovery, given that both the expert reports and transcripts—inclusive of such statements—have already been produced *without objection* and without redaction to the ASO opt-out plaintiffs. Provider Plaintiffs' response during the parties' September 18 meet and confer was that the ASO opt-out matters are in front of this Court and can be subjected to an assessment against them at a later date. But at no point prior to their production did MDL Plaintiffs object to or condition their disclosure in the ASO opt-out litigation on an assessment against those plaintiffs, as it does not appear from the docket that any objection or conditions to that production were lodged by MDL Plaintiffs. The MDL Plaintiffs' failure to object to their production to plaintiffs in the ASO opt-out litigation, despite the explicit provision in the Protective Order providing them with the opportunity to do so,

15

***waives any objection to their production in the Prime litigation*** such that the horse Providers are worried about is, in fact, already "out of the barn."

Even if the expert reports (or deposition transcripts) constituted protected work product, which they do not, it is well established that even work product protection is waived when "the attorney discloses the information to the court voluntarily or makes no objection when it is offered." *Jolivet v. Compass Grp. USA, Inc*., 340 F.R.D. 7, 19 (N.D. Tex. 2021); *see also Rynd v. Nationwide Mut. Fire Ins. Co*., No. 8:09-CV-1556-T-27TGW, 2010 WL 5161838, at \*2 (M.D. Fla. Dec. 14, 2010) ("The failure to assert the privilege or work-product protection in a timely manner, and in sufficient detail, may result in a waiver of the privilege or work-product claim."). "Once a party allows an adversary to share the otherwise privileged thought processes of counsel, the need for the privilege disappears." *In re Steinhardt Partners, L.P*., 9 F.3d 230, 235 (2d Cir. 1993). As a result, selective assertion of privilege should not function as "merely another brush on an attorney's palette" to their advantage. *Id*. (citing *Permian Corp. v. United States*, 665 F.2d 1214, 1221 (D.C. Cir.1981) (rejecting the selective waiver theory, in part based on the perception that the selective waiver doctrine allows a party to manipulate use of the privilege through selective assertion). Courts are generally reluctant "to permit the belated assertion of work product immunity" and this case should be no different. *See In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation*, 143 F.R.D. 229, 232 (C.D. Cal. 1992) (finding waiver occurred where the party claiming the privilege had previously agreed to produce all documents of the type sought in the case).

### b.  The Blues' own expert reports cannot constitute MDL Plaintiffs' work product.

Providers objected at the Status Conference that any quotes or descriptions of statements and actions by Providers' experts should be redacted from any of the Blues' own expert reports, should the Blues' expert reports be produced "to eliminate the production of our work product and

our experts' work product." Status Conf. Tr. at 14:2-8. But as Defendants have explained, redacting all references to Providers' experts would be so extensive as to leave the Blues' reports meaningless. Even so, any statements within the Blues' expert reports that originate from MDL Plaintiffs' experts do not qualify as protected work product because "the general work-product doctrine of Rule 26(b)(3)(A) does not cover a testifying expert." *Republic of Ecuador v. Hinchee*, 741 F.3d 1185, 1192 (11th Cir. 2013). And perhaps, most importantly, this Court has already found that "discovery of Defendants' expert reports produced in the MDL is actually ***fact discovery***." *Alaska Air Group Inc et al v. Anthem Inc et al.*, Case No. 2:21-cv-01209-RDP, Dkt. No. 401 at 3 (emphasis added). The same reasons this Court ordered the production of the Blues' expert reports in the ASO litigation—because the overlapping underlying facts and probative value is greater than the small burden associated with their production, and because "prior litigation positions regarding the same claims are relevant to the claims and defenses in [a] subsequent, nearly identical litigation"—warrant their production to the Prime Plaintiffs. *Id.* at 3-4 (citing *Colonial BancGroup Inc. v. PriceWaterhouseCoopers LLP*, No. 2:11-cv-746, 2016 WL 9687001, at *2 (M.D. Ala. Jan. 22, 2016); *Infernal Tech., LLC v. Microsoft Corp.*, 2019 WL 5388442, at *2 (E.D. Tex. May 3, 2019).

Given that the Blues' expert reports were produced at Defendants' expense, Prime Plaintiffs also see no basis for MDL Plaintiffs to seek reimbursement for any costs associated with their production.

**3.**      **Deposition transcripts of Blue Cross and Blue Shield witnesses with exhibits for context (with any testimony and documents included as exhibits that *originate* with MDL Plaintiffs redacted).**

### Provider Plaintiffs' Position:

With respect to deposition testimony of the Blues' employees (#3), the Prime Plaintiffs again made clear they had no intention of compensating Provider Plaintiffs for any of their costs

17

or work related to these depositions, the transcripts or the associated exhibits. Provider Plaintiffs again made clear that they were prepared to do the time consuming work of determining the appropriate compensation for their consent to the Prime Plaintiffs' access to these materials (which would have included adding up the costs of reviewing documents, preparing for the depositions, taking the depositions, purchasing the transcripts, videography, and travel costs), but the Prime Plaintiffs' offer was simply to argue, again, that they should be able to utilize these materials for their own litigation in California at no cost to Prime.

The Prime Plaintiffs, again, have made clear their intention to free ride on the very expensive and time-consuming work undertaken by the Provider Plaintiffs in this litigation to litigate their "provider claim [as] at least the predominant claim" case. 8/28/2024 Tr. at 56:19. The Prime Plaintiffs seek access to the exact same data used by the Provider Plaintiffs and their experts, the Blues' expert reports (which detail the positions and work done by the Provider Plaintiffs' experts), and the depositions of many of the Blues' employees which exist solely because of the Provider Plaintiffs' hard work in identifying relevant witnesses, identifying important documents, and obtaining the witnesses' testimony. It is pretty plain what the Prime Plaintiffs are trying to do. At best, they are trying to litigate on the cheap, riding in the Provider Plaintiffs' wake. At worst, they are trying to copy the Provider Plaintiffs' homework. Letting the horse out of the barn by allowing production of these materials for no compensation and with no assurance of further protection will undermine this Court's consideration of class certification and the remaining cases in front of it by encouraging more separate litigation at the expense of the class cases in the MDL. Thus, for now, without an agreement between the Provider Plaintiffs and the Prime Plaintiffs, Provider Plaintiffs do not consent to the production of these materials in the California action by the Blues.

As noted above, Prime Plaintiffs made a last-minute offer with respect to pay for a portion of the out-of-pocket costs Provider Plaintiffs incurred obtaining the Blues employees' deposition testimony. We do not believe it fairly compensates the Provider Plaintiffs for the work they undertook or for the costs of the depositions. If the Prime Plaintiffs are willing to pay some portion of the Provider Plaintiffs' lodestar for those depositions and the associated documents and exhibits, as well as a fair portion of the hard costs, it may be that further meet and confers would be fruitful. To date, the Prime Plaintiffs have rejected that approach.

**Subscriber Plaintiffs' Position**:

Subscriber Plaintiffs take no position on the production of the depositions at this time, but should the Court order briefing to address an amount regarding contribution from the Prime Plaintiffs, we reserve our right to be heard since the vast majority of depositions were jointly taken by Provider and Subscriber Plaintiffs.

**Prime Plaintiffs' Position:**

**a. Deposition Transcripts do not constitute work product.**

With respect to the Blues' deposition transcripts generally, given the well-established purpose of work product protection to safeguard the adversary process (*see Hickman v. Taylor*, 329 U.S. 495, 514 (1947)), any applicable work product protection was waived by the fact that such depositions were conducted with opposing counsel and their clients present. *See State of Fla. ex rel. Butterworth v. Indus. Chemicals, Inc.*, 145 F.R.D. 585, 588 (N.D. Fla. 1991) (finding that "depositions are *not* protected from discovery by the work product privilege" and emphasizing that the fact that such "materials may contain evidence of the mental process of the investigating attorneys does not preclude application of the exception to the work product privilege."); *see also Colonial BancGroup Inc.*, 2016 WL 9687001, at *1-2 (granting motion to compel transcripts of

19

expert deposition testimony from prior related cases). As such, the fact that MDL Plaintiffs noticed and conducted a deposition, does not render it undiscoverable. To the extent that deposition testimony of Blue witnesses cites to materials originating with MDL Plaintiffs that were designated confidential on the record, such testimony should simply be redacted in the production of such transcripts.

Even though Prime Plaintiffs believe that this Court does not have the authority to order it, Prime Plaintiffs are nevertheless willing to voluntarily pay Provider Plaintiffs 20% of the court reporter and transcript costs associated with the Blue witness depositions, including experts, that are produced in the Prime litigation, notwithstanding that the same deposition transcripts have already been produced in the ASO opt-out litigation without any contribution requirement.

**b. Payments by Prime Plaintiffs for the production of any requested material should not result in a windfall or double recovery by counsel for the MDL Plaintiffs.**

The common fund doctrine provides that plaintiffs and their counsel contribute to lead counsel's compensation in exchange for the benefit of lead counsel's work. *See generally Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980). "The common benefit doctrine does not confer unbridled jurisdiction by chance of who plaintiff hired as counsel." *In re Hair Relaxer Mktg. Sales Pracs. & Prods. Liab. Litig*., 2024 WL 3904650, at *3. Nor does the common fund doctrine provide for "double-dipping" whereby counsel can recover twice for the same fees and/or costs incurred. Subscribers already moved for and recovered their "reasonable" fees and expenses incurred in the amount of over $40.9 million—their lodestar with a 3.2 multiplier—in connection with the settlement of Subscriber claims as ordered by the Court on August 9, 2022, *without reduction* for any of the claimed costs. Dkt. No. 2932; 2733-1 at pp. 3-4, 33. The policy behind the use of a common benefit fund or set-aside is to ensure that a given plaintiff's successful litigation confers a substantial benefit on the members of an ascertainable class, "where the court's jurisdiction over

20

the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them." *In re: Hair Relaxer Mktg., Sales Pracs. and Prods. Liability Litig.*, 2024 WL 3904650, at *3. The practice is not meant to provide lead counsel with a windfall such that they may recover costs from both the settlement fund (which belongs to the class) and again from counsel in related individual litigation—lawyers "cannot have their cake and eat it too where they recover fees" in such a way as to "constitute a double recovery." *Gustave v. SBE ENT Holdings, LLC*, No. 19-23961-CIV, 2021 WL 4244862, at *6 (S.D. Fla. Sept. 7, 2021), report and recommendation adopted, No. 19-23961-CIV, 2021 WL 4244964 (S.D. Fla. Sept. 17, 2021) (citing *Nawaz v. Dade Med. Coll. Inc.*, No. 15-24129-CIV, 2017 WL 11220371, at *5 (S.D. Fla. Aug. 29, 2017), *Report and Recommendation adopted*, 2017 WL 11220372 (S.D. Fla. Sept. 29, 2017) ("Plaintiffs' counsel is in fact asking for an impermissible double recovery."); *Maale v. Kirchgessner*, No. 08-80131-CIV, 2012 WL 2700433, at *1 (S.D. Fla. July 6, 2012) ("Ultimately, because this Court had previously awarded Defendant Kirchgessner attorneys' fees pursuant to her contract, it declined to allow a double recovery by awarding that same amount as a Rule 11 sanction.")); *see also Pearson v. Green Tree Servicing, LLC*, No. 14-CV-04524-JSC, 2015 WL 632457, at *11 (N.D. Cal. Feb. 13, 2015) (reducing a fee award by the amount "already paid" by the defendant related to fees for a motion to compel because "[a]llowing a double recovery of these fees would not be reasonable; attorneys' fee awards are not meant to create a windfall for the prevailing party.").

Rather, it is well established that "[t]he district court has a 'responsibility to scrutinize the costs for which reimbursement is requested in order to ensure that class counsel is not obtaining a[n] . . . unintended profit.'" *Waters v. Cook's Pest Control, Inc.*, No. 2:07-CV-00394-LSC, 2012 WL 2923542, at *19 (N.D. Ala. July 17, 2012) (quoting *Waters v. Int'l Precious Metals Corp.,*

21

190 F.3d 1291, 1298 (11th Cir. 1999)). Here, any recovery of additional costs by Subscribers would be unjustified as they have already used "[t]he traditional mechanisms for recovery of fees and costs [in a class action] readily available under Rule 23(h)." *In re Packaged Seafood Prods. Antitrust Litig.*, No. 3:15-MD-02670, 2021 WL 5326517, at \*3 (S.D. Cal. Nov. 16, 2021). Moreover, the Provider Plaintiffs will no doubt seek and obtain reimbursement for their fees and costs should they prevail at trial or reach a settlement in their case. Notwithstanding this, Provider Plaintiffs refused to agree that they would not seek a double recovery for any fees or costs that they might obtain from the Prime Plaintiffs. Under such circumstances, regardless of the technicalities, as a matter of fairness, no such contribution should be ordered.

**Prime Plaintiffs' Conclusion**

Prime Plaintiffs remain ready and willing to compensate Provider Plaintiffs for their out-of-pocket expenses to obtain the HCCI data from Optum, as well as a portion of their costs related to the court reporting for the depositions of the Blues' witnesses in the MDL.  Prime Plaintiffs would prefer to resolve this without Court intervention by courtesy payment of a reasonable amount of Provider Plaintiffs' out-of-pocket costs associated with procuring the Optum data and deposition transcripts.

Should the Court elect to consider the issue of a common benefit fund or assessment associated with the production of the requested materials, Prime Plaintiffs would appreciate the opportunity to brief the issues associated with that in greater detail. There are several issues associated with the imposition of an assessment on state court plaintiffs. As the Northern District of Illinois recently stated:

> MDL lawyers may think of recoveries as "their" recoveries coming from their "inventory" of cases, but "...that 'inventory' consists of people, and each person has their own case against the defendant." . . . . All recoveries belong to the client . . . . In any event, state court cases and unfiled cases, even if related, are not before this Court and thus not subject to the Court's managerial authority. Regardless of

22

whether the non-MDL plaintiffs' attorneys participated in the MDL, the Court does not have authority over separate disputes outside this MDL.

*Hair Relaxer Mktg., Sales Pracs. and Prods. Liability Litig.*, 2024 WL 3904650, at *4 (quoting *In re Roundup Prods. Liability Litig.*, 544 F. Supp. 3d at 965). For example, if a state court plaintiff retained counsel on an hourly fee contract, the proceeds from any settlement obtained in that client's case obviously belong *entirely* to the client. If the Court lacks authority to assess that client's recovery, it does not suddenly obtain judicial power simply because the client chose a different economic arrangement—a contingency fee—in her private contract with state court counsel. Similarly, courts have noted:

> Imposing an assessment on the recovery in a state-court case could do more than intrude on the state court's supervision of its own docket. Where the recovery is pursuant to a judgment entered in state court, it could subject the defendant to conflicting orders: the state-court judgment requiring payment of damages in full and the federal-court order mandating a hold-back of a portion of the damages for the common-benefit fund. Federal courts should hesitate before creating that sort of conflict with their state counterparts.

*In re General Motors LLC Ignition Switch Litigation*, 477 F. Supp. 3d 170, 181 (S.D.N.Y. 2020) (noting that even if a federal court has authority to tax state settlements, "'principles of comity and respect for the state courts' supervision of their own dockets and the attorneys before them will often counsel against doing so.") (internal quotations and citation omitted). Prime Plaintiffs respectfully request the opportunity to fully brief these issues with the Court, but do not believe it is necessary to reach that step.

Rather, for the reasons set forth above, Prime Plaintiffs respectfully request that the Court issue an order permitting the production of the Optum data, as well as the Blues' expert reports and deposition transcripts with any material or exhibits that originate with MDL Plaintiffs redacted, but analysis or commentary by the Blues' witnesses and experts that discusses or references MDL Plaintiffs' materials in their own analysis, should not be subject to redaction. As

a courtesy, Prime Plaintiffs will reimburse Provider Plaintiffs in the amount of $31,589 for the cost associated with acquiring the Optum data, and 20% of the court reporting fees Provider Plaintiffs incurred for the depositions taken of Blue witnesses that are produced in the Prime litigation, with the understanding that Providers would not seek to recover those same amounts at the conclusion of their litigation from the class or any party.

**Defendants' Position**:

Defendants take no position on the dispute between MDL Plaintiffs and *Prime* Plaintiffs regarding whether or to what extent *Prime* Plaintiffs must compensate MDL Plaintiffs for the MDL materials sought (the "MDL Materials").[4]  BCBSA and the Blue Plans that are defendants in the *Prime* litigation (the "*Prime* Blues") have agreed to produce the MDL Materials, provided they have written consent of the Party(ies) or third-party(ies) whose Confidential Material is included in those documents or this Court orders their production, as is required by the Amended Supplement to Qualified Protective Order (Doc. # 3171).  At present, the *Prime* Blues have neither and, therefore, are unable to produce the MDL Materials, despite their agreement to do so.

Respectfully submitted the 27th day of September, 2024.

*/s/ Edith M. Kallas*
Edith M. Kallas – ***Co-Lead Counsel***
WHATLEY KALLAS, LLP
152 West 57th Street
41st Floor
New York, NY 10019
Tel: (212) 447-7060
Fax: (800) 922-4851
Email: ekallas@whatleykallas.com

*/s/ Joe R. Whatley, Jr.*
Joe R. Whatley, Jr. – ***Co-Lead Counsel***
W. Tucker Brown
WHATLEY KALLAS, LLP
2001 Park Place North
1000 Park Place Tower
Birmingham, AL 35203
Tel: (205) 488-1200
Fax: (800) 922-4851
Email: jwhatley@whatleykallas.com
            tbrown@whatleykallas.com

*/s/ Barry A. Ragsdale*

---

[4] The at-issue MDL Materials are:  (i) unredacted copies of the Blues' MDL expert reports, (ii) the Blues' MDL deposition transcripts and exhibits, and (iii) claims data produced by OptumInsight in the MDL.  These materials are in addition to the MDL discovery that *Prime* Blues have already reproduced to *Prime* Plaintiffs (for example, copies of *Prime* Blues' own MDL document productions and significant MDL structured data).

24

Barry Alan Ragsdale – *Plaintiffs' Liaison
Counsel and Discovery Liaison Counsel*
Dominick Feld Hyde, PC
1130 22nd Street South Ridge Park
Suite 4000
Birmingham, AL 35205
Tel: (205) 536-8888
bragsdale@dfhlaw.com

Patrick J. Sheehan
WHATLEY KALLAS, LLP
101 Federal Street
19th Floor
Boston, MA 10019
Tel: (617) 573-5118
Fax: (617) 371-2950
Email: psheehan@whatleykallas.com

Deborah J. Winegard
WHATLEY KALLAS, LLP
1068 Virginia Avenue, NE
Atlanta, GA 30306
Tel: (404) 607-8222
Fax: (404) 607-8451
Email: dwinegard@whatleykallas.com

Henry C. Quillen
WHATLEY KALLAS, LLP
159 Middle Street, Suite 2C
Portsmouth, NH 03801
Tel: (603) 294-1591
Fax: (800) 922-4851
Email: hquillen@whatleykallas.com

E. Kirk Wood, Jr. – *Local Facilitating
Counsel*
WOOD LAW FIRM LLC
P. O. Box 382434
Birmingham, AL 35238
Tel: (205) 612-0243
Fax: (205) 705-1223
Email: kirk@woodlawfirmllc.com

Charles Clinton Hunter
HAYES HUNTER PC
4265 San Felipe, Suite 1000
Houston, TX 77027
Tel: (281) 768-4731
Fax: (713) 583-7047
Email: chunter@hayeshunterlaw.com

Aaron S. Podhurst – *Plaintiffs' Steering
Committee*
Peter Prieto – *Chair, Expert Committee*
PODHURST ORSECK, P.A.
One S.E. 3rd Avenue
Suite 2300
Miami, FL 33131
Tel: (305) 358-2800
Fax: (305) 358-2382
Email: apodhurst@podhurst.com
        pprieto@podhurst.com

Dennis Pantazis – *Plaintiffs' Steering Committee*
Brian Clark – *Discovery Committee*
WIGGINS CHILDS PANTAZIS FISHER
 GOLDFARB
The Kress Building
301 Nineteenth Street North
Birmingham, AL 35203
Tel: (205) 314-0500
Fax: (205) 254-1500
Email: dgp@wigginschilds.com
        bclark@wigginschilds.com

U.W. Clemon – *Plaintiffs' Steering Committee*
U. W. Clemon, LLC
5202 Mountain Ridge Parkway
Birmingham, AL 35222
Tel: (205) 837-2898
Email: uwclemon1@gmail.com

Dennis C. Reich – *Chair, Damages Committee*
REICH & BINSTOCK, LLP
4265 San Felipe, Suite 1000
Houston, TX 77027
Tel: (713) 622-7271
Fax: (713) 623-8724
Email: dreich@reichandbinstock.com

J. Mark White – *Litigation Committee*
Augusta S. Dowd – *Chair, Litigation Committee*
Linda G. Flippo – *Discovery Committee*
WHITE ARNOLD & DOWD, P.C.
2001 Park Place North
Suite 1400
Birmingham, AL  35203
Tel: (205) 323-1888
Fax: (205) 323-8907
Email: mwhite@whitearnolddowd.com
        adowd@whitearnolddowd.com
        lflippo@whitearnolddowd.com

Nicholas B. Roth – *Chair, Discovery Committee*
Julia Smeds Roth – *Discovery Committee*
EYSTER KEY TUBB ROTH MIDDLETON
 & ADAMS, LLP
402 East Moulton Street, SE
Decatur, AL 35602
Tel: (256) 353-6761
Fax: (256) 353-6767
Email: nbroth@eysterkeylaw.com
        jroth@eysterkeylaw.com

Van Bunch – *Chair, Class Certification Committee*
BONNETT FAIRBOURN FRIEDMAN &
 BALINT, P.C.
2325 E. Camelback Road, Suite 300
Phoenix, AZ 85016
Tel: (602) 274-1100
Fax: (602) 274-1199
Email: vbunch@bffb.com

David A. Balto – *Expert Committee*
THE LAW OFFICES OF DAVID A. BALTO
1350 I Street, N.W., Suite 850
Washington, DC 20005
Tel: (202) 789-5424
Fax: (202) 589-1819
Email: david.balto@dcantitrustlaw.com

Robert J. Axelrod – *Chair, Written Submissions Committee*
AXELROD LLP
800 Third Avenue, Suite 2800
New York, NY 10022
Tel: (646) 448-5263
Fax: (212) 840-8560

Email: raxelrod39@gmail.com

Joey K. James – *Litigation Committee*
BUNCH & JAMES
P. O. Box 878
Florence, AL 35631
Tel: (256) 764-0095
Fax: (256) 767-5705
Email: joey@joeyjameslaw.com

W. Daniel Miles, III – *Written Submissions Committee*
BEASLEY ALLEN CROW METHVIN PORTIS
 & MILES, P.C.
218 Commerce Street
Montgomery, AL 36104
Tel: (800) 898-2034
Fax: (334) 954-7555
Email: dee.miles@beasleyallen.com

Richard S. Frankowski – *Discovery Committee*
THE FRANKOWSKI FIRM, LLC
231 22nd Street South, Suite 203
Birmingham, AL 35233
Tel: (205) 390-0399
Fax: (205) 390-1001
Email: richard@frankowskifirm.com

Michael C. Dodge – *Expert Committee*
GLAST PHILLIPS & MURRAY, P.C.
14801 Quorum Drive, Suite 500
Dallas, TX 75254
Tel: (972) 419-7172
Email: mdodge@gpm-law.com

John C. Davis – *Written Submissions Committee*
LAW OFFICE OF JOHN C. DAVIS
623 Beard Street
Tallahassee, FL 32303
Tel: (850) 222-4770
Email: john@johndavislaw.net

Michael E. Gurley, Jr. – *Discovery Committee*
Attorney at Law
24108 Portobello Road
Birmingham, AL 35242
Tel: (205) 908-6512
Email: mgurleyjr@yahoo.com

Mark K. Gray – *Discovery Committee*
GRAY & WHITE
713 E. Market Street, Suite 200
Louisville, KY 40202
Tel: (502) 805-1800
Fax: (502) 618-4059
Email: mgray@grayandwhitelaw.com

Lynn W. Jinks, III – *Expert Committee*
Christina D. Crow – *Discovery Committee*
JINKS CROW, P.C.
219 North Prairie Street
Union Springs, AL 36089
Tel: (334) 738-4225
Fax: (334) 738-4229
Email: ljinks@jinkslaw.com
        ccrow@jinkslaw.com

Stephen M. Hansen – *Class Certification Committee*
LAW OFFICE OF STEPHEN M. HANSEN
1821 Dock Street
Tacoma, WA 98402
Tel: (253) 302-5955
Fax: (253) 301-1147

Myron C. Penn – *Discovery Committee*
PENN & SEABORN, LLC
53 Highway 110
Post Office Box 5335
Union Springs, AL 36089
Tel: (334) 738-4486
Fax: (334) 738-4432

27

Email: steve@stephenmhansenlaw.com

Harley S. Tropin – *Damages Committee*
Javier A. Lopez – *Discovery Committee*
KOZYAK TROPIN &
 THROCKMORTON, P.A.
2525 Ponce De Leon Boulevard, 9th Floor
Miami, FL 33134
Tel: (305) 372-1800
Fax: (305) 372-3508
Email: hst@kttlaw.com
          jal@kttlaw.com

C. Wes Pittman – *Settlement Committee*
THE PITTMAN FIRM, P.A.
432 McKenzie Avenue
Panama City, FL 32401
Tel: (850) 784-9000
Fax: (850) 763-6787
Email: wes@pittmanfirm.com

Robert B. Roden – *Litigation Committee*
SHELBY RODEN, LLC
2956 Rhodes Circle
Birmingham, AL 35205
Tel: (205) 933-8383
Fax: (205) 933-8386
Email: rroden@shelbyroden.com

Gary E. Mason – *Class Certification
Committee*
WHITFIELD BRYSON & MASON, LLP
1625 Massachusetts Ave. NW, Suite 605
Washington, DC 20036
Tel: (202) 429-2290
Fax: (202) 640-1160
Email: gmason@wbmllp.com

Michael L. Murphy – *Discovery Committee*
BAILEY GLASSER LLP
910 17th Street, NW, Suite 800
Washington, DC 20006
Tel: (202) 463-2101
Fax: (202) 463-2103

Email: myronpenn28@hotmail.com

J. Preston Strom, Jr. – *Litigation Committee*
STROM LAW FIRM, LLC
2110 N. Beltline Boulevard, Suite A
Columbia, SC 29204-3905
Tel: (803) 252-4800
Fax: (803) 252-4801
Email: petestrom@stromlaw.com

Thomas V. Bender – *Discovery Committee*
Dirk L. Hubbard
HORN AYLWARD & BANDY, LLC
2600 Grand Blvd., Suite 1100
Kansas City, MO 64108
Tel: (816) 421-0700
Email: tbender@hab-law.com
  dhubbard@hab-law.com

Gregory S. Cusimano – *Litigation Committee*
CUSIMANO, ROBERTS & MILLS, LLC
153 South 9th Street
Gadsden, AL 35901
Phone: (256) 543-0400
Fax: (256) 543-0488
Email: greg@alalawyers.net

Brian E. Wojtalewicz
WOJTALEWICZ LAW FIRM, LTD.
139 N. Miles Street
Appleton, MN 56208
Tel: (320) 289-2363
Fax: (320) 289-2369
Email: brian@wojtalewiczlawfirm.com

Archie C. Lamb, Jr.
ARCHIE LAMB & ASSOCIATES, LLC
301 19th Street North, Suite 585
The Kress Bldg.
Birmingham, AL 35203-3145
(205) 458-1210

Email: mmurphy@baileyglasser.com

Lance Michael Sears
SEARS & SWANSON, P.C.
First Bank Building
2 North Cascade Avenue, Suite 1250
Colorado Springs, CO 80903
Tel: (719) 471-1984
Fax: (719) 577-4356
Email: lance@searsassociates.com


Jessica Dillon
Ray R. Brown
Molly Brown
DILLON & FINDLEY, P.C.
1049 W. 5th Avenue, Suite 200
Anchorage, AK 99501
Tel: (907) 277-5400
Fax: (907) 277-9896
Email: Jessica@dillonfindley.com
   Ray@dillonfindley.com
   Molly@dillonfindley.com

Allyson C. Dirksen
HEIDMAN LAW FIRM, P.L.L.C.
1128 Historic 4th Street
P. O. Box 3086
Sioux City, IA 51101
Tel: (712) 255-8838
Fax (712) 258-6714
Email: allyson.dirksen@heidmanlaw.com

Email: alamb@archielamb.com

Paul Lundberg
LUNDBERG LAW, PLC
600 4TH Street, Suite 906
Sioux City, IA 51101
Tel: (712) 234-3030
Fax: (712) 234-3034
Email: paul@lundberglawfirm.com


Gwen Simons
Simons & Associates Law, P.A.
P.O. Box 1238
Scarborough, ME 04070-1238
Tel: (207) 205-2045
Fax: (207) 883-7225
Email: gwen@simonsassociateslaw.com

*Counsel for Provider Plaintiffs*

David Boies – *Co-Lead Counsel*
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, NY 10504
Tel: (914) 749-8200
Fax: (914) 749-8200
dboies@bsfllp.com

*/s/ Megan Jones*

Michael D. Hausfeld – *Co-Lead Counsel*
Swathi Bojedla – *Discovery Committee*
HAUSFELD LLP
888 16th Street N.W., Suite 300
Washington, DC 20006
Tel: (202) 540-7200
Fax: (202) 540-7201
mhausfeld@hausfeld.com
sbojedla@hausfeld.com

Charles J. Cooper – *Co-Chair, Written Submissions Committee*
COOPER & KIRK, PLLC
1523 New Hampshire Avenue NW
Washington, DC 20036
Tel: (202) 220-9600
Fax: (202) 220-9601
ccooper@cooperkirk.com

Chris T. Hellums – *Local Facilitating Counsel*
PITTMAN, DUTTON & HELLUMS, P.C.
2001 Park Place N, 1100 Park Place Tower
Birmingham, AL 35203
Tel: (205) 322-8880
Fax: (205) 328-2711
chrish@pittmandutton.com

Gregory Davis – *Settlement Committee & PSC Member*
DAVIS & TALIAFERRO, LLC
7031 Halcyon Park Drive Montgomery, AL 36117
Tel: (334) 832-9080
Fax: (334) 409-7001
gldavis@knology.net

Kathleen Chavez – *Settlement Committee & PSC Member*
FOOTE, MIELKE, CHAVEZ & O'NEIL, LLC
10 West State Street, Suite 200
Geneva, IL 60134
Tel: (630) 797-3339
Fax: (630) 232-7452
kcc@fmcolaw.com

Carl S. Kravitz – *Expert Committee*
ZUCKERMAN SPAEDER LLP
1800 M Street NW, Suite 1000
Washington, DC 20036-5807

Megan Jones – *Settlement Committee & PSC Member*
Arthur Bailey – *Discovery Committee*
HAUSFELD LLP
600 Montgomery Street, Suite 3200 San Francisco, CA 94111
Tel: (415) 633-1908
Fax: (415) 358-4980
mjones@hausfeld.com
abailey@hausfeld.com

William A. Isaacson – *Settlement Committee & PSC Member*
PAUL WEISS
2001 K Street, NW Washington, DC 20006-1047
Tel: (202) 223-7313
Fax: (202) 379-4937
wisaacson@paulweiss.com

Cyril V. Smith – *Settlement Committee & PSC Member*
ZUCKERMAN SPAEDER, LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202-1031
Tel: (410) 949-1145
Fax: (410) 659-0436
csmith@zuckerman.com

David Guin – *Co-Chair, Written Submissions Committee*
Tammy Stokes – *Damages Committee*
GUIN, STOKES & EVANS, LLC
300 Richard Arrington Jr. Blvd. North Suite 600/Title Building
Birmingham, AL 35203
Tel: (205) 226-2282
Fax: (205) 226-2357
davidg@gseattorneys.com
tammys@gseattorneys.com

Richard Feinstein – *Expert Committee*
Hamish P.M. Hume – *Expert Committee*
BOIES, SCHILLER FLEXNER LLP

Tel: (202) 778-1800
Fax: (202) 822-8106
ckravitz@zuckerman.com

1401 New York Avenue NW Washington, DC 20005
Tel: (202) 237-2727
Fax: (202) 237-6131
rfeinstein@bsfllp.com kdyer@bsfllp.com hhume@bsfllp.com

Mindee Reuben
LITE DEPALMA GREENBERG
1835 Market Street, Suite 2700
Philadelphia, PA 19103
Tel: (267) 314-7980
Fax: (973) 623-0858
mreubin@litedepalma.com

Nate Cihlar
Joshua Callister
SRAUSS & BOIES
4041 University Drive, 5th Floor
Fairfax, VA 22030
Tel: (703) 764-8700
Fax: (703) 764-8704
ncihlar@straus-boies.com
jcallister@straus-boies.com

Patrick Cafferty – *Discovery Committee*
CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP
150 S. Wacker Drive, Suite 300
Chicago, IL 60606
Tel: (312) 782-4880
pcafferty@caffertyclobes.com

Bryan Clobes – *Litigation Committee*
Ellen Meriwether – *Written Submissions Committee*
CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP
2005 North Monroe Street Media, PA 19063
Tel: (215) 864-2800
Fax: (215) 864-2810
bclobes@caffertyclobes.com
emeriwether@caffertyclobes.com

Andrew Lemmon – Chair, Discovery Committee
LEMMON LAW FIRM
15058 River Road
PO Box 904
Hahnville, LA 70057
Tel: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

Virginia Buchanan – Chair, Class Certification Committee
LEVIN PAPANTONIO THOMAS MITCHELL RAFFERTY & PROCTOR, P.A.
316 South Baylen Street, Suite 600
Pensacola, FL 32502
Tel: (850) 435-7000
Fax: (850) 435-7020
vbuchanan@levinlaw.com

Douglas Dellaccio – *Litigation Committee*
CORY WATSON CROWDER & DEGARIS, P.C.
2131 Magnolia Avenue, Suite 200
Birmingham, AL 32505
Tel: (205) 328-2200

Larry McDevitt – *Chair, Class Certification Committee*
David Wilkerson – *Discovery Committee*
VAN WINKLE LAW FIRM
11 North Market Street Asheville, NC 28801
Tel: (828) 258-2991

31

Fax: (205) 324-7896
ddellaccio@cwcd.com

Edwin J. Kilpela, Jr.
Benjamin Sweet – *Litigation Committee*
DEL SOLE CAVANAUGH STROYD LLC
200 First Avenue, Suite 300
Pittsburgh, PA 15222
Tel: (412) 261-2393
Fax: (412) 261-2110
ekilpela@dsclaw.com
bsweet@dsclaw.com

Charles T. Caliendo – *Class Certification Committee*
GRANT & EISENHOFER
485 Lexington Avenue New York, NY 10017
Tel: (646) 722-8500
Fax: (646) 722-8501
ccaliendo@gelaw.com

Daniel Gustafson – *Litigation Committee*
Daniel C. Hedlund – *Damages Committee*
GUSTAFSON GLUEK PLLC
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Tel: (612) 333-8844
Fax: (612) 339-6622
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com

John Saxon – *Litigation Committee*
JOHN D. SAXON, P.C.
2119 3rd Avenue North Birmingham, AL 35203-3314
Tel: (205) 324-0223
Fax: (205) 323-1583
jsaxon@saxonattorneys.com

lmcdevitt@vwlawfirm.com
dwilkerson@vwlawfirm.com

Robert M. Foote – *Damages Committee*
FOOTE, MIELKE, CHAVEZ & O'NEIL, LLC
10 West State Street, Suite 200
Geneva, IL 60134
Tel: (630) 797-3339
Fax: (630) 232-7452
rmf@fmcolaw.com

Robert Eisler – *Discovery Committee*
GRANT & EISENHOFER
123 Justison Street
Wilmington, DE 19801
Tel: (302) 622-7000
Fax: (302) 622-7100
reisler@gelaw.com

Brent Hazzard – *Litigation Committee*
HAZZARD LAW, LLC
447 Northpark Drive
Ridgeland, MS 39157
Tel: (601) 977-5253
Fax: (601) 977-5236
brenthazzard@yahoo.com

Lawrence Jones – *Damages Committee*
JONES WARD PLC
The Pointe
1205 East Washington Street, Suite 111
Louisville, Kentucky 40206
Tel: (502) 882-6000
Fax: (502) 587-2007
larry@jonesward.com

32

Robert Methvin – ***Chair, Settlement Committee***
James M. Terrell – ***Class Certification Committee***
MCCALLUM, METHVIN & TERRELL, P.C.
The Highland Building
2201 Arlington Avenue South
Birmingham, AL 35205
Tel: (205) 939-0199
Fax: (205) 939-0399
rgm@mmlaw.net
jterrell@mmlaw.net

Michael McGartland – ***Class Certification Committee***
MCGARTLAND & BORCHARDT LLP
1300 South University Drive, Suite 500 Fort Worth, TX 76107
Tel: (817) 332-9300
Fax: (817) 332-9301
mike@attorneysmb.com

H. Lewis Gillis – ***Co-Head Chair, Litigation Committee***
MEANS GILLIS LAW, LLC
3121 Zelda Court
Montgomery, AL 36106
Tel: 1-800-626-9684
hlgillis@tmgslaw.com

David J. Hodge – ***Chair, Settlement Committee***
MORRIS, KING & HODGE
200 Pratt Avenue NE
Huntsville, AL 35801
Tel: (256) 536-0588
Fax: (256) 533-1504
lstewart@alinjurylaw.com

***Counsel for Subscriber Plaintiffs***


Craig A. Hoover
E. Desmond Hogan
Justin Bernick
Elizabeth Jose
W. David Maxwell
HOGAN LOVELLS US LLP
Columbia Square
555 13th Street, N.W.
Washington, DC  20004
Tel: (202) 637-5600
Fax: (202) 637-5910
craig.hoover@hoganlovells.com
desmond.hogan@hoganlovells.com
justin.bernick@hoganlovells.com
elizabeth.jose@hoganlovells.com
david.maxwell@hoganlovells.com

*Counsel for Elevance Health f/k/a Anthem, Inc., and all of its named subsidiaries in this action; Louisiana Health Service & Indemnity*

*/s/ Karin A. DeMasi*
Karin A. DeMasi
Lauren R. Kennedy
David H. Korn
Lillian S. Grossbard
CRAVATH, SWAINE & MOORE LLP
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Tel: (212) 474-1000
Fax: (212) 474-3700
kdemasi@cravath.com
lkennedy@cravath.com
dkorn@cravath.com
lgrossbard@cravath.com

*Lead Counsel for the Blue Cross Blue Shield System; Counsel for Defendants Blue Cross Blue Shield Association; Blue Cross and Blue Shield of Alabama; Blue Cross and Blue Shield of Arizona, Inc.; GuideWell Mutual Holding*

33

*Company (Blue Cross and Blue Shield of Louisiana); BCBSM, Inc. (Blue Cross and Blue Shield of Minnesota); Horizon Healthcare Services, Inc. (Horizon Blue Cross and Blue Shield of New Jersey); Blue Cross & Blue Shield of Rhode Island; Cambia Health Solutions, Inc.; Regence Blue Shield of Idaho; Regence Blue Cross Blue Shield of Utah; Regence Blue Shield (of Washington); Regence Blue Cross Blue Shield of Oregon*

John D. Martin
Lucile H. Cohen
Travis A. Bustamante
NELSON MULLINS RILEY & SCARBOROUGH LLP
1320 Main Street, 17th Floor
Columbia, SC  29201
Tel: (803) 255-9421
Fax: (803) 256-7500
john.martin@nelsonmullins.com
lucie.cohen@nelsonmullins.com
travis.bustamante@nelsonmullins.com

*Counsel for Elevance Health f/k/a Anthem, Inc., and all of its named subsidiaries in this action; Louisiana Health Service & Indemnity Company (Blue Cross and Blue Shield of Louisiana); BCBSM, Inc. (Blue Cross and Blue Shield of Minnesota); Blue Cross and Blue Shield of South Carolina; Horizon Healthcare Services, Inc. (Horizon Blue Cross and Blue Shield of New Jersey); Blue Cross & Blue Shield of Rhode Island; Blue Cross and Blue Shield of Vermont; Cambia Health Solutions, Inc.; Regence Blue Shield of Idaho; Regence Blue Cross Blue Shield of Utah; Regence Blue Shield (of Washington); Regence Blue Cross Blue Shield of Oregon; Blue Cross & Blue Shield of Mississippi, a Mutual Insurance Company; Wellmark of South Dakota, Inc. (Wellmark Blue Cross and Blue Shield of South Dakota); Wellmark, Inc. (Wellmark Blue Cross and Blue Shield of Iowa); Hawaii Medical Service Association (Blue Cross and Blue Shield of Hawaii);*

*Corporation; Blue Cross and Blue Shield of Florida, Inc.; Blue Cross and Blue Shield of Kansas City; Blue Cross and Blue Shield of Massachusetts, Inc.; Blue Cross and Blue Shield of North Carolina; BlueCross BlueShield of South Carolina; BlueCross BlueShield of Tennessee, Inc.; Blue Cross Blue Shield of Wyoming; California Physicians' Service d/b/a Blue Shield of California; Capital Blue Cross; CareFirst, Inc.; CareFirst of Maryland, Inc.; Group Hospitalization and Medical Services, Inc.; CareFirst BlueChoice, Inc.; Hawaii Medical Service Association (Blue Cross and Blue Shield of Hawaii); Health Care Service Corporation, an Illinois Mutual Legal Reserve Company, including its divisions Blue Cross and Blue Shield of Illinois, Blue Cross and Blue Shield of Texas, Blue Cross and Blue Shield of New Mexico, Blue Cross and Blue Shield of Oklahoma, and Blue Cross and Blue Shield of Montana; Caring for Montanans, Inc., f/k/a Blue Cross and Blue Shield of Montana, Inc.; Wellmark of South Dakota, Inc. (Wellmark Blue Cross and Blue Shield of South Dakota); Wellmark, Inc. (Wellmark Blue Cross and Blue Shield of Iowa); Triple-S Management Corporation; Triple-S Salud, Inc.*

Kimberly R. West (Liaison Counsel)
Mark M. Hogewood
WALLACE, JORDAN, RATLIFF & BRANDT, LLC
First Commercial Bank Building
800 Shades Creek Parkway, Suite 400
Birmingham, AL  35209
Tel: (205) 870-0555
Fax: (205) 871-7534
kwest@wallacejordan.com
mhogewood@wallacejordan.com

*Counsel for Defendants Blue Cross Blue Shield Association; Blue Cross and Blue Shield of Arizona, Inc.; Blue Cross and Blue Shield of Kansas City; BlueCross BlueShield of South Carolina; Blue Cross Blue Shield of Wyoming; Capital Blue Cross; CareFirst,*

34

*Triple-S Salud, Inc; Defendants Blue Cross and Blue Shield of Florida, Inc.; Blue Cross and Blue Shield of Massachusetts, Inc.; BlueCross BlueShield of Tennessee, Inc.*

Cavender C. Kimble
BALCH & BINGHAM LLP
1901 6th Avenue North, Suite 1500
Birmingham, AL 35203-4642
Tel: (205) 226-3437
Fax: (205) 488-5860
ckimble@balch.com

*Counsel for Elevance Health f/k/a Anthem, Inc., and all of its named subsidiaries in this action; Blue Cross and Blue Shield of North Carolina; Louisiana Health Service & Indemnity Company (Blue Cross and Blue Shield of Louisiana); BCBSM, Inc. (Blue Cross and Blue Shield of Minnesota); Horizon Healthcare Services, Inc. (Horizon Blue Cross and Blue Shield of New Jersey); Blue Cross & Blue Shield of Rhode Island; Cambia Health Solutions, Inc.; Regence Blue Shield of Idaho; Regence Blue Cross Blue Shield of Utah; Regence Blue Shield (of Washington); Regence Blue Cross Blue Shield of Oregon*

Gwendolyn Payton
KILPATRICK TOWNSEND & STOCKTON LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
Tel: (206) 626-7714
Fax: (206) 299-0414
gpayton@kilpatricktownsend.com

*Counsel for Defendants Premera Blue Cross, d/b/a Premera Blue Cross Blue Shield of Alaska*

Brian K. Norman
SHAMOUN & NORMAN, LLP
1800 Valley View Lane, Suite 200

*Inc.; CareFirst of Maryland, Inc.; Group Hospitalization and Medical Services, Inc.; Health Care Service Corporation, an Illinois Mutual Legal Reserve Company, including its divisions Blue Cross and Blue Shield of Illinois, Blue Cross and Blue Shield of Texas, Blue Cross and Blue Shield of New Mexico, Blue Cross and Blue Shield of Oklahoma, and Blue Cross and Blue Shield of Montana; Caring for Montanans, Inc., f/k/a Blue Cross and Blue Shield of Montana, Inc.; Highmark Health; Highmark Inc., f/k/a Highmark Health Services; Highmark West Virginia Inc.; Highmark BCBSD Inc.; California Physicians' Service d/b/a Blue Shield of California; Wellmark of South Dakota, Inc. (Wellmark Blue Cross and Blue Shield of South Dakota); Wellmark, Inc. (Wellmark Blue Cross and Blue Shield of Iowa); Hawaii Medical Service Association (Blue Cross and Blue Shield of Hawaii)*

Carl S. Burkhalter
MAYNARD NEXSEN PC
1901 6th Avenue North, Suite 2400
Regions Harbert Plaza
Birmingham, AL 35203
Tel: (205) 254-1000
Fax: (205) 254-1999
cburkhalter@maynardnexsen.com

Pamela B. Slate
HILL CARTER FRANCO COLE & BLACK, P.C.
425 South Perry Street
Montgomery, AL 36104
Tel: (334) 834-7600
Fax: (334) 386-4381
pslate@hillhillcarter.com

*With Cravath, Swaine & Moore LLP, counsel for Defendant Blue Cross Blue Shield of Alabama*

Helen E. Witt

35

Farmers Branch, TX  75234
Tel: (214) 987-1745
Fax: (214) 521-9033
bkn@snlegal.com

H. James Koch
ARMBRECHT JACKSON LLP
RSA Tower, 27th Floor
11 North Water Street
Mobile, AL  36602
Tel: (251) 405-1300
Fax: (251) 432-6843
hjk@ajlaw.com

*Counsel for Defendants CareFirst, Inc.;
CareFirst of Maryland, Inc.; Group
Hospitalization and Medical Services, Inc.;
CareFirst BlueChoice, Inc.*

M. Patrick McDowell
Norman E. "Benje" Bailey. Jr.
BRUNINI, GRANTHAM, GROWER
& HEWES, PLLC
190 East Capitol Street
The Pinnacle Building, Suite 100
Jackson, MS  39201
Tel: (601) 948-3101
Fax: (601) 960-6902
pmcdowell@brunini.com

Cheri D. Green
BLUE CROSS & BLUE SHIELD OF
MISSISSIPPI, A MUTUAL INSURANCE
COMPANY
P.O. Box 1043
Jackson, MS  39215
Tel: (601) 932-3704
cdgreen@bcbsms.com

*Counsel for Defendant Blue Cross & Blue
Shield of Mississippi, a Mutual Insurance
Company*

Alan D. Rutenberg
FOLEY & LARDNER LLP
3000 K Street, N.W., Suite 600

Jeffrey J. Zeiger, P.C.
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL  60654
Tel: (312) 862-2000
Fax: (312) 862-2200
jzeiger@kirkland.com
hwitt@kirkland.com

*Counsel for Defendants Health Care Service
Corporation, an Illinois Mutual Legal
Reserve Company, including its divisions
Blue Cross and Blue Shield of Illinois, Blue
Cross and Blue Shield of Texas, Blue Cross
and Blue Shield of New Mexico, Blue Cross
and Blue Shield of Oklahoma, and Blue Cross
and Blue Shield of Montana; Caring for
Montanans, Inc., f/k/a Blue Cross and Blue
Shield of Montana, Inc.; Highmark Health;
Highmark Inc., f/k/a Highmark Health
Services; Highmark West Virginia Inc.;
Highmark BCBSD Inc.; Highmark Western
and Northeastern New York Inc.*

Jonathan M. Redgrave
REDGRAVE, LLP
4800 Westfields Blvd., Suite 250
Chantilly, VA  20151
Tel: (703) 592-1155
Fax: (612) 332-8915
jredgrave@redgravellp.com

*Additional Counsel for HCSC and
Highmark Defendants and California
Physicians' Service d/b/a Blue Shield of
California*

Todd M. Stenerson
Brian C. Hauser
ALLEN OVERY SHEARMAN STERLING
LLP
401 9th Street, N.W., Suite 800
Washington, DC  20004
Tel: (202) 508-8000
Fax: (202) 508-8100

36

Washington, DC  20007
Tel: (202) 672-5491
arutenberg@foley.com

Diane R. Hazel
FOLEY & LARDNER LLP
1400 16th Street, Suite 200
Denver, CO  80202
Tel: (720) 437-2034
dhazel@foley.com

Ryan M. Hodinka
BALCH & BINGHAM, LLP
1901 6th Avenue North, Suite 1500
Birmingham, AL 35203
Tel: (205) 226-3464
Fax: (205) 488-5848
rhodinka@balch.com

*Counsel for Defendant USAble Mutual
Insurance Company, d/b/a Arkansas Blue
Cross and Blue Shield and as Blue Advantage
Administrators of Arkansas*

Robert R. Riley, Jr.
RILEY & JACKSON, P.C.
3530 Independence Drive
Birmingham, AL  35209
Tel: (205) 879-5000
Fax: (205) 879-5901
rob@rileyjacksonlaw.com

*Counsel for Defendants Blue Cross and Blue
Shield of Florida, Inc.; Blue Cross and Blue
Shield of Massachusetts, Inc.; BlueCross
BlueShield of Tennessee, Inc.*

Edward S. Bloomberg
John G. Schmidt Jr.
Anna Mercado Clark
PHILLIPS LYTLE LLP
One Canalside
125 Main Street
Buffalo, NY 14203-2887
Telephone No. (716) 847-8400

todd.stenerson@aoshearman.com
brian.hauser@aoshearman.com

Rachel Mossman Zieminski
ALLEN OVERY SHEARMAN STERLING
LLP
2601 Olive Street, Suite 1700
Dallas, TX 75201
Tel: (214) 271-5777
Fax: (214) 271-5778
rachel.zieminski@aoshearman.com

Sarah L. Cylkowski
Thomas J. Rheaume, Jr.
BODMAN PLC
1901 Saint Antoine Street
6th Floor at Ford Field
Detroit, MI  48226
Tel: (313) 259-7777
Fax: (734) 930-2494
scylkowski@bodmanlaw.com
trheaume@bodmanlaw.com

Andy P. Campbell
A. Todd Campbell
Yawanna N. McDonald
CAMPBELL PARTNERS LLC
505 North 20th Street, Suite 1600
Birmingham, AL  35203
Tel: (205) 224-0750
Fax: (205) 224-8622
andy@campbellpartnerslaw.com
todd@campbellpartnerslaw.com
yawanna@campbellpartnerslaw.com

*Counsel for Defendant Blue Cross and
Blue Shield of Michigan; Blue Cross and Blue
Shield of Vermont*

John DeQ. Briggs
Jeny M. Maier
Kenina J. Lee
AXINN, VELTROP & HARKRIDER, LLP
1901 L Street, N.W.
Washington, DC  20036
Tel: (202) 912-4700

ebloomberg@phillipslytle.com
jschmidt@phillipslytle.com
aclark@phillipslytle.com

Morris Wade Richardson (ASB-8581-S78M)
Charles Todd Grimes (ASB-3224-S77C)
RICHARDSON CLEMENT PC
22 Inverness Center Parkway, Suite 500
Birmingham, AL 35242
Tel: (205) 729-7000
Fax: (205) 905-7009
wade@richardson.law
charley@richardson.law

*Attorneys for Defendants Excellus Health Plan, Inc., d/b/a Excellus BlueCross BlueShield*

Fax: (202) 912-4701
jbriggs@axinn.com
jmaier@axinn.com
klee@axinn.com

Kail J. Jethmalani
Victoria J. Lu
AXINN, VELTROP & HARKRIDER LLP
114 W. 47th Street
New York, NY 10036
Tel: (212) 728-2200
Fax: (212) 728-2201
kjethmalani@axinn.com
vlu@axinn.com

Stephen A. Rowe (ASB-3804-E65S)
Aaron G. McLeod (ASB-8589-A57M)
ADAMS AND REESE LLP
1901 6th Avenue North, Suite 3000
Birmingham, AL 35203
Tel: (205) 250-5080
Fax: (205) 250-5034
steve.rowe@arlaw.com
aaron.mcleod@arlaw.com

*Counsel for Defendants Independence Hospital Indemnity Plan, Inc. f/k/a Independence Blue Cross; Independence Health Group, Inc.*

Sarah Gilbert
Honor Costello
CROWELL & MORING LLP
Two Manhattan West
375 Ninth Ave.
New York, NY 10001
Tel: (212) 223-4000
Fax: (212) 223-4134
sgilbert@crowell.com
hcostello@crowell.com

Tracy A. Roman
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC  20004
Tel: (202) 624-2500

Fax: (202) 628-5116
troman@crowell.com

John M. Johnson
Brian P. Kappel
Tatum L. Jackson
LIGHTFOOT FRANKLIN & WHITE LLC
400 20th Street North
Birmingham, AL  35203
Tel: (205) 581-0716
Fax: (205) 581-9116
jjohnson@lightfootlaw.com
bkappel@lightfootlaw.com
tjackson@lightfootlaw.com

*Counsel for Defendants Blue Cross and Blue Shield of Nebraska; GoodLife Partners, Inc.; Blue Cross of Idaho Health Service, Inc.; Blue Cross and Blue Shield of Kansas, Inc.; HealthyDakota Mutual Holdings; Blue Cross Blue Shield of North Dakota*

**Counsel for Defendants**

/s/ Patrick M. Ryan
Patrick M. Ryan
BARTKO LLP
1100 Sansome Street
San Francisco, California 94111
Telephone: (415) 956-1900
Facsimile: (415) 956-1152
Email: pryan@bartkolaw.com

**Counsel for Non-Parties VHS Liquidating Trust, Prime Healthcare Services, Inc., Prime Healthcare Foundation, Inc., and Prime Healthcare Management, Inc.**