FILED

2024 Oct-14  PM 12:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

# Exhibit A

EXECUTION VERSION

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **IN RE:**<br>**BLUE CROSS BLUE SHIELD**<br>**ANTITRUST LITIGATION**<br>**(MDL NO. 2406)** | **Master File No. 2:13-CV-20000-RDP**<br><br>**This Document Relates to**<br>**Provider Track Cases** |

## SETTLEMENT AGREEMENT

## TABLE OF CONTENTS

PREAMBLE ........................................................................................................ 1

   A.   **DEFINITIONS** ......................................................................................... 3

     1.   Definitions............................................................................................. 3

   B.   **APPROVAL OF SETTLEMENT AGREEMENT AND DISMISSAL OF CLAIMS..**
            .................................................................................................... **23**

     2.   Reasonable Best Efforts ..................................................................... 23

     3.   Preliminary Approval Motion .............................................................. 23

     4.   Preliminary Approval and Preliminary Fairness Hearing.................... 24

     5.   Notice Motion ..................................................................................... 24

     6.   Final Approval Motion ........................................................................ 25

     7.   Review of Filings and Other Settlement-Related Documents ............. 26

     8.   Finality of Agreement ......................................................................... 26

     9.   No Admission of Wrongdoing or Liability by Settling Defendants ...... 28

   C.   **CLASS INJUNCTIVE RELIEF** ................................................................ **30**

     10.   Service Areas/BlueCard Program ....................................................... 30

     11.   Expansion of Contiguous Area Provider Contracting ......................... 30

     12.   Member Access .................................................................................. 31

     13.   Prompt Pay Commitment to Participating Providers for Clean BlueCard Claims ....... 31

     14.   BlueCard Transformation .................................................................... 35

     15.   Real-Time Messaging System ............................................................. 38

     16.   BlueCard Executive ............................................................................ 38

     17.   National Executive Resolution Group .................................................. 40

     18.   Third-Party Information ....................................................................... 41

     19.   Service Level Agreements ................................................................... 42

     20.   Minimum Data Requirements.............................................................. 44

     21.   Blue Plan Common Appeals Form ...................................................... 45

     22.   Minimum Level of Value-Based Care .................................................. 45

     23.   Best Practices for Value-Based Care .................................................. 46

     24.   Telehealth Relief................................................................................. 49

     25.   Pre-Authorization Standards ............................................................... 49

     26.   Affiliates and All Products Clauses .................................................... 50

27. Implementation of Class Injunctive Relief ....................................................... 50

28. Duration of Class Injunctive Relief ................................................................ 51

29. Monitoring, Compliance and Reporting .......................................................... 51

30. Monitoring Fees and Expenses ....................................................................... 52

**D. SETTLEMENT AMOUNT ................................................................................ 52**

31. Settlement Amount ......................................................................................... 52

32. Payment Timing .............................................................................................. 53

33. Failure to Fund ............................................................................................... 53

34. Tax Benefits and Consequences ...................................................................... 54

35. Escrow Account .............................................................................................. 55

36. Distribution of Net Settlement Fund to Authorized Claimants ....................... 58

37. Attorneys' Fees and Expenses and Service Awards ......................................... 59

38. Distributions of the Settlement Fund .............................................................. 61

39. Balance Remaining in Settlement Fund .......................................................... 62

40. Amounts Paid Not a Penalty ........................................................................... 63

41. No Replenishment ........................................................................................... 63

**E. RELEASE, DISCHARGE, AND COVENANT NOT TO SUE .................................. 63**

42. Released Claims and Covenant Not to Sue ...................................................... 63

43. California Civil Code ...................................................................................... 64

44. All Claims Satisfied by Settlement Fund ........................................................ 65

45. Enforcement of Release .................................................................................. 65

**F. ADMINISTRATION OF SETTLEMENT ............................................................ 65**

46. Claims and Release ......................................................................................... 65

47. Settlement Notice Administrator and Settlement Claims Administrator .......... 66

48. Written Exclusion for Opt-Outs from the Settlement Class ............................. 66

49. Failure to Properly Exclude ............................................................................ 67

50. Identification of Opt-Outs ............................................................................... 67

51. Settling Defendants' Right to Rescind ............................................................ 67

**G. STAY OF PROCEEDINGS ................................................................................ 67**

52. Stay ................................................................................................................ 67

**H.   RESCISSION IF AGREEMENT IS NOT APPROVED OR FINAL JUDGMENT NOT ENTERED** ................................................................................................ **68**

    53.  Rescission ......................................................................................... 68

    54.  Return of the Settlement Funds ...................................................... 68

    55.  Resumption of Litigation ................................................................ 69

**I.   MISCELLANEOUS** ....................................................................................... **69**

    56.  Confidentiality; Third-Party Communications .............................. 69

    57.  Communications with Class Members ............................................ 71

    58.  Representation ................................................................................. 71

    59.  Binding Effect ................................................................................. 71

    60.  Notice .............................................................................................. 71

    61.  Integrated and Final Agreement ..................................................... 76

    62.  CAFA .............................................................................................. 76

    63.  Future Rules .................................................................................... 76

    64.  Headers ........................................................................................... 76

    65.  No Party Is the Drafter ................................................................... 76

    66.  Choice of Law ................................................................................ 77

    67.  Consent to Jurisdiction .................................................................. 77

    68.  Non-Disparagement ....................................................................... 77

    69.  Voluntary Settlement and Agreement; Advice of Counsel ........... 78

    70.  Authorization to Enter Agreement ................................................. 78

    71.  Non-Assignment ............................................................................ 78

    72.  Inconsistency with the Settlement Agreement ............................... 79

    73.  Privilege ......................................................................................... 79

    74.  Savings Clause ............................................................................... 79

    75.  Execution in Counterparts .............................................................. 79

**Appendix A** ......................................................................................................... **A-1**

**Appendix B** ......................................................................................................... **B-1**

**Appendix C** ......................................................................................................... **C-1**

**Appendix D** ......................................................................................................... **D-1**

## PREAMBLE

This Settlement Agreement[1] is made and entered into as of October 4, 2024, by and among Settling Defendants and Provider Class Representatives, for themselves and on behalf of each Settlement Class Member.

WHEREAS, Provider Class Representatives are prosecuting the Provider Actions (including other individual and/or consolidated lawsuits);

WHEREAS, Provider Class Representatives allege, *inter alia*, that Settling Defendants violated Sections 1 and 2 of the Sherman Antitrust Act, 15 U.S.C. §§ 1–2, in addition to state law(s), by illegally entering into a geographic market allocation agreement prohibiting competition in the market for the sale of commercial healthcare financing services and the market for the purchase of goods and services from healthcare providers, as well as agreeing to other means of restricting competition in these markets;

WHEREAS, Provider Class Representatives have contended that they and the Settlement Class are entitled to actual damages, treble damages, and injunctive relief for loss or damage, and threatened loss or damage, as a result of violations of the laws as alleged in the Provider Actions, arising from Settling Defendants' alleged conduct;

WHEREAS, Settling Defendants deny any and all purported wrongdoing in connection with the facts and claims that have been or could have been alleged against them in the Provider Actions, and have asserted a number of defenses to Provider Class Representatives' claims;

WHEREAS, this action has involved substantial discovery, including obtaining and analyzing over 75 million pages of documents, and participating in over 200 depositions, and the

---

[1] All capitalized terms shall have the meaning set forth in Paragraph 1 or elsewhere in this Agreement.

investigation and analysis of the facts and underlying events relating to the subject matter of Provider Class Representatives' claims and applicable legal principles;

WHEREAS, Provider Class Representatives through Settlement Class Counsel have conducted an investigation into the facts and the law and have concluded that resolving the claims against Settling Defendants, according to the terms set forth below, is in the best interests of the Settlement Class in order to avoid the substantial uncertainties of litigation and ensure that the benefits reflected herein are obtained for the Settlement Class;

WHEREAS, Settlement Class Counsel consider the settlement herein to be fair, reasonable, and adequate, and in the best interests of the Settlement Class because of the substantial uncertainties of litigation, payment of the Settlement Amount, and the value of the Injunctive Relief that Settling Defendants have agreed to provide pursuant to this Agreement;

WHEREAS, Settling Defendants, despite their beliefs that the claims asserted lack merit and that they have valid defenses to such claims, have nevertheless agreed to enter into this Agreement to avoid further expense, inconvenience, and distraction to their businesses of burdensome and protracted litigation, and to obtain the releases, orders, and judgment contemplated by this Agreement, and to put to rest with finality this controversy, including releases of all claims that have been or could be asserted against Settling Defendants based on the allegations in the Provider Actions;

WHEREAS, vigorous, arm's-length settlement negotiations have taken place between certain Settlement Class Counsel, including Court-appointed Settlement Committee members, and counsel for Settling Defendants and with the assistance of several experienced mediators at different times, and this Agreement embodies all the terms and conditions of the settlement

between Settling Defendants and Provider Class Representatives, both individually and on behalf of each Settlement Class Member;

WHEREAS, Settling Defendants, Settling Defendants' counsel, Settlement Class Counsel, and Provider Class Representatives have had a full opportunity to examine the facts and circumstances surrounding their respective decisions to accept the terms of this Agreement and have not relied on any representations (or lack thereof) made by any other Party concerning the facts and circumstances leading to this Agreement;

NOW, THEREFORE, in consideration of the covenants, agreements, and releases set forth herein and for other good and valuable consideration, the adequacy of which is hereby acknowledged, it is agreed by and among the undersigned that the Provider Actions be settled, compromised, and dismissed on the merits with prejudice as to the Releasees and except as hereinafter provided, without costs to Provider Class Representatives, the Settlement Class, or Settling Defendants, subject to approval of the Court and any appellate review, on the following terms and conditions:

## A.     **DEFINITIONS**

1.     **Definitions.**  As used in this Agreement, the following capitalized terms have the meanings specified below, regardless of whether they are used in this Agreement in their singular or plural form.

a.     "Administrative Services Only" or "ASO" means a Commercial Health Benefit Product that is self-funded, including administrative services contracts or accounts, and jointly administered administrative services contracts or accounts.

b.     "Agreement" means this Settlement Agreement and the *In Camera* Supplement together.

c.      "Anchor Hospital" means a Hospital located in a Contiguous County that is a Settlement Class Member.  Opt-Outs are not Anchor Hospitals.  Provider types other than Hospitals, as well as Hospitals not located in a Contiguous County, are likewise not Anchor Hospitals.

d.      "Authorized Claimant" means any Settlement Class Member who is entitled to a distribution from the Settlement Fund pursuant to the Plan of Distribution approved by the Court in accordance with the terms of this Agreement.  Under no circumstances will a Settling Defendant be considered an Authorized Claimant that is entitled to distribution from the Settlement Fund.

e.      "Bank" means Huntington National Bank.

f.      "BCBSA" means the Blue Cross Blue Shield Association.

g.      "Blue-Branded" means a product or service marketed, offered, sold or contracted for under any of the Blue Marks.

h.      "Blue Marks" means the Blue Cross and/or Blue Shield service marks, trademarks, names, and/or symbols.

i.      "Blue Plan Common Appeals Form" means the specific Provider appeals form developed by BCBSA, in accordance with Paragraph 21.

j.      "Blue System" means BCBSA, all Settling Individual Blue Plans, and the system of governance among those entities, as reflected through the License Agreements issued by BCBSA and BCBSA policies, rules and procedures.

k.      "BlueCard Claim" means any claim for Member services that is processed through the BlueCard Program.

l.      "BlueCard Executive" means the senior-level individual(s) accountable for issues regarding BlueCard Claims payments issues, as set forth in Paragraph 16.

m.      "BlueCard Program" means the program that enables Blue Plan Members obtaining healthcare services while traveling or living in another Blue Plan's Service Area to receive the benefits of their membership with the Control/Home Blue Plan and to access the Local/Host Blue Plan's designated provider networks and savings, as defined and set forth in the Inter-Plan Programs Policies and Provisions ("IPP"), as of the Execution Date.

n.      "Class Distribution Order" means the Court order approving the distribution of the Net Settlement Fund, as described in Paragraph 36.

o.      "Class Member" means any person or entity within the definition of the Settlement Class.

p.      "Class Notice" or "Notice" means the notice to the Class Members approved by the Court.  "Class Notice Approval Order" means the Court order approving Class Notice.

q.      "Clean BlueCard Claim" means a BlueCard Claim for Covered Services that:

i.      is timely received by the Local/Host Blue Plan;

ii.      has a corresponding referral if required for the applicable claim;

iii.      (a) when submitted via paper has all the elements of the CMS-1500 or UB-04 (or successor standard) forms as applicable or (b) when submitted via an electronic transaction, uses only permitted standard code sets (*e.g.*, CPT, ICD-10-CM and HCPCS) and has all the elements of the

standard electronic formats, as required by applicable federal authority and state regulatory authority;

iv.      contains no defect or error that would affect the adjudication of the claim; and

v.      includes supporting documentation sufficient for the Blue Plans to make coverage and payment determinations.

r.      "Commercial Health Benefit Product" means any product or plan providing for the payment or administration of healthcare services (including but not limited to medical, pharmacy, dental, and vision products and services) or expenses through insurance, reimbursement, or other similar healthcare financing mechanism, for Members in the U.S. (however funded, including insured or self-funded) other than a product or plan purchased or offered by a Government Entity, including but not limited to those offered under the Children with Special Health Care Needs Program (CSHCN); Children's Health Insurance Program (CHIP); Civilian Health and Medical Program of the Department of Veteran's Affairs (CHAMPVA); Civilian Health and Medical Program of the Uniformed Services (CHAMPUS); Indian Health Service, Tribal, and Urban Indian Health Plan; Medicaid; Medicare; Medicare Advantage (including but not limited to Medicare Advantage Prescription Drug Plans and Special Needs Plans, including but not limited to Medicare-Medicaid or Dual-Eligible Plans); Medicare Stand-Alone Prescription Drug Plans; Refugee Medical Assistance Program; State Maternal and Child Health Program (MCH); or TriCare.

s.      "Confidential" means information or material that (i) any Party designates or has designated as "Confidential," "Confidential—Attorneys' Eyes Only," or

"Confidential—Outside Counsel Only" in the Provider Actions or in connection with this Agreement, including without limitation under the Qualified Protective Order (Dkt. 550) or the Supplement and Amended Supplement to the Qualified Protective Order (Dkts. 1488, 3171), or (ii) this Agreement identifies as "Confidential." Confidential information or material shall not be disclosed beyond what is allowed by the terms of this Agreement, Court order, or through mutual agreement of the Parties.

t.      "Contiguous Area" shall have the meaning set forth in Exhibit 4, Paragraph 2.7 of the License Agreement, as of the Execution Date.

u.      "Contiguous Area Contract" or "Contiguous Area Contracting" means any permissible contract or contracting under the Blue Marks between a Blue Plan and a Provider in a Contiguous Area, as allowed by the Contiguous Area Rule.

v.      "Contiguous Area Rule" means the rule governing contracting with Providers in Contiguous Areas as set forth in Exhibit 4, Paragraph 2.3(a) of the License Agreement, as of the Execution Date.

w.      "Contiguous County" means any county adjoining a Service Area, as described in Exhibit 4, Paragraph 2.7, first sub-bullet of the License Agreement, as of the Execution Date.

x.      "Control/Home Blue Plan" means, in the context of the BlueCard Program, the Blue Plan that administers the Member's Blue-Branded Commercial Health Benefit Product.

y.      "Controlled Affiliate Licensee" means a company operating under the control of a Primary Licensee that is licensed to use the Blue Marks pursuant to a Controlled Affiliate License Agreement (Larger or Smaller) granted by BCBSA.

z.      "Court" means the United States District Court for the Northern District of Alabama, Southern Division.

aa.      "Covered Services" means healthcare services, equipment, or supplies covered under an individual's Commercial Health Benefit Product administered by any Settling Individual Blue Plan.

bb.      "Effective Date" has the meaning given to it in Paragraph 8.

cc.      "Eligible Affiliate" means an affiliate of an Anchor Hospital that is (i) a Hospital, (ii) within a 60-minute average driving time from the Anchor Hospital itself and within the same state and Service Area as the Anchor Hospital, and (iii) a Settlement Class Member.  The average driving time between the Anchor Hospital and its affiliate will be measured using the Distance Matrix API offered by Google Maps.  Affiliation is to be determined based upon the Hospital demonstrating common ownership or, in states where such common ownership is prohibited by law, the Hospital demonstrating a commensurate level of joint control or operation consistent with local rules.  Opt-Outs are not Eligible Affiliates.

dd.      "ERISA" means the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*

ee.      "Escrow Account" means the account into and from which the Settlement Amount (including the Notice and Administration Fund and Fee and Expense Award(s)) will be deposited, held, and ultimately distributed, as further described in Paragraph 35. The Escrow Account is intended to be a separate taxable entity and intended to qualify as a "qualified settlement fund" within the meaning of Section 1.468B-1 of the Treasury

Regulations promulgated under Section 468B of the Internal Revenue Code of 1986, as amended from time to time.

ff.      "Escrow Agent" means the agent responsible for the Escrow Account, as further described in Paragraph 35.

gg.      "Excluded Providers" are (i) Providers owned or employed by any of the Settling Defendants; (ii) Providers owned or employed exclusively by Government Entities or Providers that exclusively provided services, equipment or supplies to members of or participants in Medicare, Medicaid or the Federal Employee Health Benefits Programs; (iii) Providers that have otherwise fully released their Released Claims against the Releasees prior to the Execution Date, including but not limited to Providers that were members of any of the settlement classes in *Love v. Blue Cross and Blue Shield Association*, No. 1:03-cv-21296-FAM (S.D. Fla.); or (iv) Providers that exclusively provide or provided (a) prescription drugs; (b) durable medical equipment; (c) medical devices; (d) supplies or services provided in an independent clinical laboratory; or (e) services, equipment or supplies covered by standalone dental or vision insurance.  Any Provider that falls within the exclusion(s) set forth in clauses (i), (ii) or (iv) of this Paragraph 1(gg) for only a portion of the Settlement Class Period is a Settlement Class Member that may recover in the settlement as set forth in the Plan of Distribution.

hh.      "Execution Date" means October 4, 2024.

ii.      "Fee and Expense Application" means the application that Settlement Class Counsel may submit to the Court as set forth in Paragraph 37(a).

jj.      "Fee and Expense Award" means the attorneys' fees and expenses awarded by the Court upon an application or applications, as further described in Paragraph 37.

kk.     "Final Approval Motion" means the motion submitted to the Court seeking final approval of this Agreement, as further described in Paragraph 6.

ll.     "Final Fairness Hearing" means the hearing to be held by the Court to determine whether the settlement set forth in this Agreement shall receive final approval pursuant to Federal Rule of Civil Procedure 23.

mm.     "Final Judgment and Order of Dismissal" means the order of the Court providing final approval of the settlement set forth in this Agreement and dismissing with prejudice the claims of the Provider Class Representatives and Settlement Class Members against Settling Defendants.

nn.     "Force Majeure" means any act of God, governmental act, act of terrorism, war, infrastructure failure (including cyber-security attack), fire, flood, earthquake or other natural disaster, explosion or civil commotion that prevents a Settling Individual Blue Plan from meeting its obligations under Paragraph 13 of this Agreement.

oo.     "Government Entity" means only a Native American tribe or the federal government (including the Federal Employee Program).

pp.     "HIPAA" means the Health Insurance Portability and Accountability Act of 1996, 42 U.S.C. § 1320-d *et seq.*, as amended, as of the Execution Date.

qq.     "Hospital" shall have the meaning set forth in Section 1861(e) of the Social Security Act, 42 U.S.C. § 1395x(e), without regard for the exclusion of "critical access hospitals" (as defined in Section 1861(mm)(1) of the Social Security Act) and "rural emergency hospitals" (as defined in Section 1861(kkk)(2) of the Social Security Act), which shall be considered Hospitals for purposes of this Agreement.  For the avoidance of

doubt, "psychiatric hospitals" (as defined in Section 1861(f) of the Social Security Act) are Hospitals for purposes of this Agreement.

rr.    "*In Camera* Supplement" means the agreement containing certain Confidential terms allowing rescission of the Settlement Agreement that will be submitted *in camera* to the Court.

ss.    "Injunctive Relief" refers to the provisions in Paragraphs 10–26.

tt.    "LAN APM Framework" means the Learning & Action Network's Alternative Payment Model Framework, as set forth in "Alternative Payment Model APM Framework", released on July 11, 2017 (Case Number 17-2546).

uu.    "License Agreement" means the written document between BCBSA and a Settling Individual Blue Plan (and its Controlled Affiliate Licensees, if applicable) conferring permission to use the Blue Marks in accordance with the Membership Standards and other BCBSA rules and requirements.

vv.    "Local/Host Blue Plan" means, in the context of the BlueCard Program, the Blue Plan that delivers the benefit of its Provider arrangements to a Control/Home Blue Plan's Members.

ww.    "Material Loss Contingency Reserve" means the fund, created solely from the Net Settlement Fund, to cover any and all Notice and Administration Costs (including monitoring fees and expenses as set forth in Paragraph 30) that might exceed the initial amount of the Notice and Administration Fund.   The amount of any Material Loss Contingency Reserve shall be approved by the Court upon entry of the Final Judgment and Order of Dismissal and shall not exceed two percent (2%) of the Net Settlement Fund.

Upon such Court approval, any Material Loss Contingency Reserve shall be contributed to the Notice and Administration Fund.

xx.    "Member" means any individual enrolled in or covered by a Commercial Health Benefit Product regardless of what term or title is used to refer to the individual in documents that pertain to the Commercial Health Benefit Product, including employees, their spouses and dependents, beneficiaries, and ERISA participants.

yy.    "Membership Standards" means the membership requirements included in the License Agreement, including the standards and rules applicable to the Settling Individual Blue Plan contained within the BCBSA Guidelines to Administer the Membership Standards, as of the Execution Date.

zz.    "Minimum Necessary Rule" means the HIPAA requirement as of the Execution Date that covered entities (as defined by HIPAA) must take reasonable steps to limit the use or disclosure of, and requests for, protected health information to the minimum necessary to accomplish the intended purpose, as further described in 45 C.F.R. §§ 164.502(b) and 164.514(d).

aaa.    "Monitoring Committee" means the committee established to oversee compliance with the settlement during the Monitoring Period as set forth in Paragraphs 29–30 and Appendix C.

bbb.    "Monitoring Committee Process" means all of the review and actions by the Monitoring Committee as set forth in Paragraph 29 and Appendix C.

ccc.    "Monitoring Period" means the period of five (5) years from the Effective Date.

ddd.   "Net Settlement Fund" means the Settlement Fund less payments relating to:  (i) the Monitoring Committee, as set forth in Paragraph 30; (ii) the Escrow Account (including Taxes and Tax Expenses), as set forth in Paragraph 35; (iii) the Notice and Administration Fund, as set forth in Paragraph 32(a); and (iv) the Fee and Expense Award and any Service Award, as set forth in Paragraph 37.

eee.   "Non-Blue-Branded" means a product or service marketed, offered, sold or contracted-for using a brand or marks other than the Blue Marks.

fff.   "Notice and Administration Costs" means all Court-approved costs reasonably incurred or assessed by the Special Master, Settlement Notice Administrator, Settlement Claims Administrator, Escrow Agent, Section 468B Administrator, Settlement Class Counsel, and Settlement Administrator in connection with providing notice to the Settlement Class, locating Class Members, administering and distributing the Settlement Fund and Escrow Account, purchasing any insurance policy for the members of the Monitoring Committee, as well as costs reasonably and actually incurred by the Monitoring Committee, the Special Master, and Settlement Class Counsel, in connection with monitoring under Paragraph 29.  For the avoidance of doubt, Notice and Administration Costs shall not include Settlement Class Counsel's work in securing settlement approval, including appeals from the grant of a Final Approval Motion.

ggg.   "Notice and Administration Fund" means the amount used to pay for Notice and Administration Costs.  The Notice and Administration Fund shall be funded out of the Settlement Fund in the amount of $100 million ($100,000,000.00) plus any income generated from the Notice and Administration Fund during the period such funds are in the Escrow Account.  If, prior to entry of the Final Judgment and Order of Dismissal,

13

Settlement Class Counsel believes that $100 million ($100,000,000.00) plus interest will be insufficient to pay for Notice and Administration Costs, Settlement Class Counsel may seek approval from the Court to create the Material Loss Contingency Reserve, which shall be funded out of the Settlement Fund.  In no event shall Settling Defendants have any obligation to increase the Settlement Amount or the Settlement Fund for any purpose, including for purposes of Notice and Administration Costs.  Any amount remaining at the expiration of the Monitoring Period and the completion of settlement administration (including accrued income on the Notice and Administration Fund) will be distributed in accordance with Paragraph 39(b).

hhh.    "Notice Motion" means the motion that Settlement Class Counsel shall submit to the Court for authorization to disseminate Class Notice of the settlement and the Final Judgment and Order of Dismissal contemplated by this Agreement to all Class Members.  It shall be filed simultaneously with the Preliminary Approval Motion.

iii.    "Notice Plan" means any plan and methodology used to notify Class Members that is approved by the Court.

jjj.    "Opt-Out" means only persons and entities within the Settlement Class who file a timely and compliant written request for exclusion from the Settlement Class in full accordance with the procedure set forth in the Class Notice.

kkk.    "Opt-Out Deadline" means the Court-ordered date(s) by which all persons and entities seeking exclusion from the Settlement Class must submit a written request for exclusion as set forth in the Class Notice.

lll.    "Participating Providers" means Settlement Class Members with a participation agreement with a Settling Individual Blue Plan that covers the services rendered to a Blue Plan Member under that participation agreement.

mmm. "Party" means any Provider Class Representative, Settlement Class Member, BCBSA, or Settling Individual Blue Plan.  "Parties" means the collective of all Provider Class Representatives, all Settlement Class Members, BCBSA, and all Settling Individual Blue Plans.

nnn.    "Plan of Distribution" means the plan of allocation of the Settlement Fund whereby the Net Settlement Fund shall be distributed to Authorized Claimants after payment of Notice and Administration Costs, Taxes and Tax Expenses, Fee and Expense Award(s), and any Service Award(s).  At a time and in a manner determined by the Court, Settlement Class Counsel shall submit for Court approval a Plan of Distribution for the Settlement Class that will provide for the distribution of the applicable Net Settlement Fund and the foundation for the requested allocation.  The Plan of Distribution shall be devised and implemented with the assistance of the Settlement Claims Administrator, and shall contemplate the refund of the Net Settlement Fund under Paragraphs 8(d), 33, 37(b), 51, or 53.

ooo.    "Preliminary Approval Motion" means the motion submitted to the Court seeking preliminary approval of this Agreement, as further described in Paragraph 3.

ppp.    "Preliminary Approval Order" means the Court order preliminarily approving this Agreement.

qqq.    "Primary Licensee" means an entity that has been granted a Primary License Agreement by BCBSA.  Primary Licensees are listed in Appendix A.

rrr.    "Provider" means any person or entity that provides healthcare services in the U.S., including but not limited to a physician, group practice, or facility.

sss.    "Provider Actions" means the lawsuits brought by persons and entities within the Settlement Class and consolidated in *In re Blue Cross Blue Shield Antitrust Litigation*, Case No. 13-cv-20000-RDP (MDL No. 2406), including the Consolidated Fourth Amended Provider Complaint, which is currently pending in the Court; all actions that may be transferred or consolidated prior to the time Class Notice is mailed; and all actions that are otherwise based, in whole or in part, on the conduct alleged in MDL No. 2406.  Appendix B lists such actions as of the Execution Date.  In addition to the actions included on Appendix B, the case captioned *VHS Liquidating Trust et al. v. Blue Cross of Calif.*, Case No. RG21106600 (Ca. Super. Ct. Alameda Cnty.) shall also be included among the "Provider Actions" so long as the plaintiffs to that action do not file timely and compliant written requests for exclusion from the Settlement Class in full accordance with the procedure set forth in the Class Notice.

ttt.    "Provider Class Representatives" means Jerry L. Conway, D.C.; InMed Group, Inc., f/k/a Crenshaw Community Hospital; Bullock County Hospital; Evergreen Medical Center, LLC; Jackson Medical Center; Ivy Creek Healthcare; Elmore Community Hospital; Georgiana Medical Center; Lake Martin Community Hospital; Joseph D. Ackerson, Ph.D.; Janine Nesin, P.T., D.P.T., O.C.S.; Roman Nation, M.D.; Neuromonitoring Services of America, Inc.; Confluent Health; ProRehab, P.C.; Texas Physical Therapy Specialists, LLC; BreakThrough Physical Therapy, Inc.; Dunn Physical Therapy, Inc.; Gaspar Physical Therapy, P.C.; Timothy H. Hendlin, D.C.; Greater Brunswick Physical Therapy, P.A.; Charles Barnwell, D.C.; Judith Kanzic, D.C.; Brian

16

Roadhouse, D.C.; Dr. Saket K. Ambasht, M.D.; Snowden Olwan Psychological Services; Matthew Caldwell, M.D.; and Mishanta Reyes, M.D.

uuu.   "Provider Co-Lead Counsel" means Edith M. Kallas and Joe R. Whatley, Jr. of Whatley Kallas LLP.

vvv.   "Provider Liaison Committee" means the group of ten (10) Settlement Class Members that liaises with the National Executive Resolution Group, as described in Paragraph 17.

www.   "Provider Plaintiff Steering Committee" means the committee established and appointed by the Court pursuant to Case Management Order No. 2 – Order Appointing Interim Co-Lead Class Counsel, Local Facilitating Counsel, Plaintiffs' Steering Committee, and Discovery Liaison Counsel (Dkt. 61).

xxx.   "Released Claims" means any and all known and unknown claims, causes of action, cross-claims, counter-claims, charges, liabilities, demands, judgments, suits, obligations, debts, setoffs, rights of recovery, or liabilities for any obligations of any kind whatsoever (however denominated), whether class or individual, in law or equity or arising under constitution, statute, regulation, ordinance, contract or otherwise in nature— including without limitation any and all actual or potential actions, losses, judgments, fines, debts, liabilities (including joint and several), liens, causes of action, demands, rights, damages, penalties, punitive damages, costs, expenses (including attorneys' fees and legal expenses), indemnification claims, contribution claims, obligations, compensation, and claims for damages or for declaratory, equitable or injunctive relief of any nature (including but not limited to antitrust, RICO, contract, tort, conspiracy, unfair competition, or unfair trade practice claims)—known or unknown, suspected or unsuspected, asserted or

unasserted, direct or derivative, based upon, arising from, or relating in any way to: (i) the factual predicates of the Provider Actions (including but not limited to the Consolidated Amended Provider Complaints filed in the Northern District of Alabama) including each of the complaints and prior versions thereof, or any amended complaint or other filings therein from the beginning of time through the Effective Date; (ii) any issue raised in any of the Provider Actions by pleading or motion; or (iii) mechanisms, rules or regulations by the Settling Individual Blue Plans and BCBSA within the scope of Paragraphs 10–26 approved through the Monitoring Committee Process during the Monitoring Period and that are based on the same factual predicate of the Provider Actions and related to the injunctive relief provided by Paragraphs 10–26.  Nothing in this Release shall release claims, however asserted, that arise in the ordinary course of business and are based solely on (a) claims by the Provider in the Provider's capacity as a plan sponsor or subscriber or (b) claims regarding whether a Settling Individual Blue Plan properly paid or denied a claim for a particular product, service or benefit based on the benefit plan document, Provider contract, or state or federal statutory or regulatory regimes (including state prompt pay laws).  Notwithstanding the foregoing sentence, any claim, however asserted, in clauses (a) or (b) in this Paragraph 1(xxx), based in whole or in part on the factual predicates of the Provider Actions or any other component of the Released Claims discussed in this Paragraph, is released.  Released Claims include, but are not limited to, claims that arise after the Effective Date.

yyy.  "Releasees" means (i) Settling Individual Blue Plans; (ii) BCBSA; (iii) NASCO; (iv) Consortium Health Plans, Inc.; and (v) for each of the persons and entities listed in clauses (i)–(iv) of this Paragraph 1(yyy), any and all of their past, present

and future, direct and indirect, parent companies, subsidiary companies, affiliated companies, affiliated partnerships and joint venturers, including all of their respective predecessors, successors and assigns, and each and all of their present, former and future principals, partners, investors, officers, directors, supervisors, employees, agents, stockholders, members, representatives, insurers, attorneys, heirs, executors, administrators, beneficiaries and representatives of any kind.

zzz.    "Releasors" means the Provider Class Representatives and each and every Settlement Class Member and all of their predecessors, successors, heirs, administrators and assigns.  Each Releasor releases Released Claims on behalf of itself and on behalf of any party claiming by, for, under or through the Releasor, with such claiming parties to include any and all of Releasor's past, present and future officers, directors, supervisors, employees, agents, stockholders, investors, members, attorneys, servants, representatives, accounts, plans, groups, parent companies, subsidiary companies, affiliated companies, divisions, affiliated partnerships, joint venturers, principals, partners, wards, heirs, assigns, beneficiaries, estates, next of kin, family members, relatives, personal representatives, administrators, agents, representatives of any kind, insurers, and all other persons, partnerships or corporations with whom any of the foregoing have been, are now or become affiliated, and the predecessors, successors, heirs, executors, administrators and assigns of any of the foregoing.

aaaa.    "Section 468B Administrator" means the administrator of the Escrow Account for the purpose of Section 468B of the Internal Revenue Code of 1986 as amended, and the regulations promulgated thereunder.

bbbb.   "Service Area" means the area in which a Settling Individual Blue Plan is granted rights to use the Blue Marks under its License Agreement(s) with BCBSA, as of the Execution Date.

cccc.   "Service Award" means any Court-approved monetary award for Provider Class Representatives paid from the Settlement Amount, as further defined in Paragraph 37(d).

dddd. "Service Level Agreements" or "SLAs" mean the performance commitments and standards with respect to BlueCard Claims, as described in Paragraph 19.

eeee.   "Settlement Administrator" means the settlement administrator selected by the Court, who will assist in the implementation of the Notice Plan and the Plan of Distribution.  The Settlement Administrator shall prepare a lifetime budget for Notice and Administration Costs (including, without limitation, work to be performed by the Settlement Notice Administrator and Settlement Claims Administrator) for review and approval of the voting members of the Provider Plaintiff Steering Committee; provide the voting members of the Provider Plaintiff Steering Committee with quarterly financial reports to compare the budget to actual operation results; create and implement accounting internal controls; take reasonable measures to detect waste, misappropriation and fraud; and engage an outside financial auditor (also to be paid from the Notice and Administration Fund), to the extent reasonably necessary.

ffff.    "Settlement Amount" shall be $2.8 billion ($2,800,000,000.00).   The Settlement Amount includes Notice and Administration Costs and any Fee and Expense Award and any Service Award(s).

gggg. "Settlement Claim Process" means any process approved by the Court by which any eligible Settlement Class Member may make a claim against the Net Settlement Fund.

hhhh. "Settlement Claims Administrator" means the third party to be retained by the Settlement Class, through Provider Co-Lead Counsel, and approved by the Court, to manage and administer the process by which Settlement Class Members are paid pursuant to the Plan of Distribution, including processing the claims submitted by Settlement Class Members, calculating the amounts owed to each Authorized Claimant, and distributing the Net Settlement Fund to Authorized Claimants in accordance with the Plan of Distribution.

iiii. "Settlement Class" includes all Providers in the U.S. (other than Excluded Providers, who are not part of the Settlement Class) who currently provide or provided healthcare services, equipment or supplies to any patient who was insured by, or who was a Member of or a beneficiary of, any plan administered by any Settling Individual Blue Plan during the Settlement Class Period.

jjjj. "Settlement Class Counsel" means all Provider counsel signatories to this Agreement.

kkkk. "Settlement Class Members" means collectively any person or entity within the definition of the Settlement Class, excluding Opt-Outs.

llll. "Settlement Class Period" means July 24, 2008, through the Execution Date.

mmmm. "Settlement Fund" means the amount paid by Settling Defendants for the Settlement Amount, which includes the Notice and Administration Fund, any Service Award(s), and the Fee and Expense Award(s) plus any income earned on those

monies.  No part of the Settlement Fund may be used to create any ASO prompt pay or interest fund, or any other fund that is not in furtherance of relief expressly set forth in this Agreement; provided that Settlement Class Counsel may take into account the type of claim (*e.g.*, ASO) in determining the allocation of Settlement Fund dollars among Settlement Class Members.  In no event shall Settling Defendants be required to contribute more than $2.8 billion ($2,800,000,000.00) to the Settlement Fund.

nnnn.  "Settlement Notice Administrator" means the third party to be retained by the Settlement Class, through Provider Co-Lead Counsel, and approved by the Court, to manage, administer, and effectuate the Notice Plan.

oooo.  "Settling Defendants" means all Settling Individual Blue Plans and BCBSA collectively.

pppp.  "Settling Individual Blue Plan" or "Blue Plan" means a Primary Licensee, including Controlled Affiliate Licensees.

qqqq.  "Settling Individual Blue Plans" or "Blue Plans" means each and every Settling Individual Blue Plan, collectively.

rrrr.  "SLA Performance Guarantee Program" means the escalating performance guarantee program related to the Service Level Agreements, described in Paragraph 19(c).

ssss.  "Taxes" means any and all federal, state and local income taxes, excise taxes, estimated taxes, gross receipt taxes, or any other taxes, as well as interest, penalties, tax detriments, and any other additions to taxes, arising with respect to the income of the Escrow Account or the operations of the Escrow Account, including any such federal, state, and local taxes (and interest, penalties, tax detriments, and additions to tax) to which Settling Defendants or any other Releasee may be subject with respect to (i) any income

earned by the Escrow Account for any period during which the Escrow Account is not treated, or does not qualify, as a "qualified settlement fund" for federal or state income tax purposes, and (ii) the payment or reimbursement by the Escrow Account of any amounts described in clause (i) of this Paragraph 1(ssss).

tttt.    "Tax Expenses" means expenses and costs incurred in connection with the operation and implementation of the Escrow Account (including expenses of attorneys and/or accountants and mailing and distribution costs and expenses relating to filing, or failing to file, any Tax returns, including any such costs and expenses relating to filing, or failing to file, returns in respect of distributions from the Escrow Account).

uuuu.   "U.S." means all fifty (50) states, the District of Columbia, and Puerto Rico.

vvvv.   "Virtual-Only Services" means the virtual delivery of medical care from a Provider to a consumer via electronic modes of communication, including audio, audio/visual, email and text.

## B. <u>APPROVAL OF SETTLEMENT AGREEMENT AND DISMISSAL OF CLAIMS</u>

2.    **Reasonable Best Efforts.**  Settlement Class Counsel and Settling Defendants shall use their reasonable best efforts to effectuate each term in this Agreement, including but not limited to cooperating in seeking the Court's approval for the establishment of procedures (including providing Class Notice under Federal Rules of Civil Procedure 23(c) and (e)) to secure the complete and final dismissal with prejudice of the Provider Actions as to the Releasees.

3.    **Preliminary Approval Motion.**  Unless the schedule is modified by the Court, within thirty (30) calendar days of the Execution Date, Provider Class Representatives shall submit to the Court a Preliminary Approval Motion.  The Preliminary Approval Motion shall include (i) the proposed form of an order preliminarily approving this Agreement, and (ii) a proposed Final

Judgment and Order of Dismissal that shall include, at a minimum, the terms set forth in Paragraph 6.

4.      **Preliminary Approval and Preliminary Fairness Hearing.**  Settling Defendants and Settlement Class Counsel agree to collaborate in their presentations at the preliminary approval and preliminary fairness hearing, with Settling Defendants, Provider Class Representatives, and Settlement Class Counsel using their reasonable best efforts to establish that this settlement is in the best interests of the Settlement Class.

5.      **Notice Motion.**  Simultaneously with the Preliminary Approval Motion, Settlement Class Counsel shall submit to the Court the Notice Motion.  The Notice Motion shall describe the method for dissemination of Class Notice.

a.      Class Notice and procedures governing dissemination of the Notice will be reasonably calculated to apprise Class Members of the pendency of the Provider Actions, this Agreement, and their opportunity to be heard and to opt out.

b.      At present, Settlement Class Counsel believe they do not require from Settling Defendants any additional contact information or other data related to Class Members in order to provide the best practicable notice under the circumstances to the Settlement Class.  To the extent Settlement Class Counsel identify, in the future, gaps in the information or data needed to carry out the Notice Plan or to pay claims in accordance with the Plan of Distribution, Provider Co-Lead Counsel shall identify such additional information or data for Settling Defendants, and Settling Defendants agree to provide reasonable cooperation in providing (or assisting Providers in otherwise obtaining) any such necessary information or data to the Settlement Notice Administrator and/or Settlement Claims Administrator, as appropriate, with all Parties agreeing that Settling

Defendants shall have reasonable and sufficient time to do so.  Any data or information provided pursuant to this Paragraph 5(b) shall be kept Confidential.

6.      **Final Approval Motion.**  If the Court preliminarily approves this Agreement, Provider Class Representatives shall submit a Final Approval Motion to the Court, after appropriate notice to the Settlement Class, and shall seek entry of a Final Judgment and Order of Dismissal.  The proposed Final Judgment and Order of Dismissal shall include, at a minimum, the substance of the following provisions:

a.      Certifying the Settlement Class, pursuant to Federal Rule of Civil Procedure 23, solely for the purposes of this settlement;

b.      Providing final approval of this settlement and its terms as being fair, reasonable, and adequate within the meaning of Federal Rule of Civil Procedure 23 and directing its consummation according to its terms;

c.      Directing that all Releasors shall, by operation of law, be deemed to have released all Releasees from the Released Claims;

d.      Directing that the Provider Actions be dismissed with prejudice and, except as provided for in this Agreement, without costs;

e.      Reserving exclusive jurisdiction over the settlement and this Agreement, including the interpretation, administration, and consummation of this settlement to the Court, and including any Fee and Expense Award and/or any Service Award(s);

f.      Determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment of dismissal of the Provider Actions shall be final; and

       g.     Enjoining all Releasors from asserting any Released Claims against any Releasee.

7.     **Review of Filings and Other Settlement-Related Documents.**  All motions, pleadings, filings, reports, forms, and other documents related to approval or performance of the settlement shall be submitted to Settling Defendants for reasonably prompt comment as to form and content prior to submission or transmission to the Court and/or Class Members.  This includes, but is not limited to, the Preliminary Approval Motion, the Notice Motion, the Settlement Claim Process, the Final Approval Motion, the proposed Final Judgment and Order of Dismissal, and all exhibits thereto.

8.     **Finality of Agreement.**

       a.     The Effective Date of the settlement shall be the latest date when all of the following events shall have occurred and shall be conditioned on the occurrence of all of the following events, and the Agreement shall become final upon the occurrence of all the following events:

          i.     Execution of this Agreement;

          ii.     All monies to the Settlement Fund have been paid by Settling Defendants pursuant to this Agreement;

          iii.     Entry of the Preliminary Approval Order;

          iv.     Entry of the Class Notice Approval Order;

          v.     The deadline for Class Members to request exclusion from the settlement has passed;

          vi.     Entry of the Final Judgment and Order of Dismissal, following dissemination of Class Notice and the Final Fairness Hearing;

vii.    The Final Judgment and Order of Dismissal becoming final per Paragraph 8(a)(viii) below;

viii.    The time for appeal or to seek permission to appeal from the Final Judgment and Order of Dismissal expires, or if appealed, (i) such appeal is dismissed prior to resolution by the applicable court and the time for appeal or to seek permission to appeal such dismissal order expires or the dismissal order is affirmed in its entirety (or review of the order is denied) by the court of last resort to which such appeal may be taken; (ii) the Final Judgment and Order of Dismissal is affirmed in its entirety by the court of last resort to which such appeal may be taken; or (iii) the Final Judgment and Order of Dismissal is modified, the Parties agree to the modifications, any pending appeals are withdrawn, and the order or other document withdrawing all pending appeals is entered; and

ix.    Neither Provider Class Representatives nor Settling Defendants have availed themselves of their respective rights to cancel and rescind the Agreement pursuant to Paragraphs 8(d), 33, 37(b), 51, or 53 and the deadlines for doing so have passed.

b.    For purposes of this Paragraph 8, an appeal of the Final Judgment and Order of Dismissal includes but is not limited to appeals as of right, discretionary appeals, interlocutory appeals, proceedings involving writs of certiorari or mandamus, and legally comparable appellate proceedings regardless of nomenclature (excluding any appeal solely related to the Fee and Expense Application or the Monitoring Committee Process).

c.      Notwithstanding any other provision in this Paragraph 8, any proceeding, order, or motion for reconsideration, appeal, petition for a writ of certiorari or its equivalent, pertaining solely to any Plan of Distribution, Fee and Expense Application, and/or the actions of the Monitoring Committee shall not in any way delay or preclude the Effective Date.

d.      Notwithstanding any other provision in this Paragraph 8, if the Final Judgment and Order of Dismissal as set forth in Paragraph 6 is modified by any court in a material way (*i.e.*, except solely as to any Plan of Distribution, Notice Plan, and/or Fee and Expense Application that does not have the effect of increasing Settling Defendants' financial obligation under this Agreement), Settling Defendants or Settlement Class Counsel (on behalf of the Settlement Class) may rescind this Agreement subject to Paragraph 53.

e.      For purposes of this Paragraph 8, the Agreement will become final upon the occurrence of all of the events listed in Paragraph 8(a) even if the Monitoring Period has not concluded.

9.      **No Admission of Wrongdoing or Liability by Settling Defendants.**

a.      Nothing in this Agreement will constitute or be construed as an admission of liability or wrongdoing by any Settling Defendant.  Neither this Agreement (regardless of whether it becomes final), nor the Final Judgment and Order of Dismissal, nor any and all negotiations, documents, or discussions associated with them, nor any proceedings undertaken in accordance with the terms set forth herein, shall be deemed or construed to be (i) an admission or concession by any of the Settling Defendants (or evidence thereof) in any action or proceeding of any kind whatsoever, civil, criminal, or otherwise, before

any court, arbitrator, administrative agency, regulatory body, or any other body or authority present or future, (ii) evidence of any violation of any statute or law or of any liability or wrongdoing whatsoever by any Settling Defendant, or (iii) evidence of the truth or validity of any of the claims or allegations contained in any complaint or any other pleading that Provider Class Representatives or Class Members have or could have asserted against Settling Defendants, including without limitation that Settling Defendants have engaged in any conduct or practice that violates any antitrust statute, or other law, regulation, or obligation.  Settling Defendants expressly deny any wrongdoing or liability whatsoever for any and all such claims and allegations.

b.      Neither this Agreement, nor any of its terms or provisions, nor any statement or document made or filed in connection herewith, nor the fact of this Agreement, nor any of the negotiations or proceedings connected with it, nor any other action taken to carry out this Agreement by any Settling Defendant, shall be discoverable or be filed, referred to, offered as evidence or received in evidence, or otherwise used against Settling Defendants in any way, directly or indirectly, in any pending or future civil, criminal, or administrative action, arbitration, or proceeding whatsoever, except in a proceeding (i) to enforce this Agreement, (ii) to defend against the assertion of Released Claims, or (iii) regarding a Settling Individual Blue Plan's own insurance coverage related to the Provider Actions; and even in such circumstances, such documents continue to be subject to their Confidentiality designations pursuant to the Qualified Protective Order (Dkt. 550), including the Supplement and Amended Supplement to the Qualified Protective Order (Dkts. 1488, 3171).

C.      **CLASS INJUNCTIVE RELIEF**

10.      **Service Areas/BlueCard Program.**  Subject to the provisions of Paragraphs 11 and 12, nothing in this Agreement shall prevent any Settling Individual Blue Plan from continuing to operate its Blue-Branded business only in its Service Area, in accordance with the License Agreement(s) and Membership Standards as of the Execution Date, or prevent BCBSA from maintaining and enforcing such License Agreement(s) and Membership Standards.  Subject to the provisions of Paragraphs 11 and 12, nothing in this Agreement shall prevent BCBSA from operating, and any Settling Individual Blue Plan from continuing to participate in, the BlueCard Program.  Any material qualitative changes to the system of the Settling Individual Blue Plans' Service Areas or the BlueCard Program after the Effective Date will not be covered by the releases defined in Paragraphs 42 and 43 unless such changes are approved by the Monitoring Committee pursuant to Paragraph 29 or Court order.  For the avoidance of doubt, mergers or consolidations among Settling Individual Blue Plans, termination of a Settling Individual Blue Plan's License Agreement, and/or the issuance of License Agreements to replacement Settling Individual Blue Plans do not constitute such material qualitative changes.

11.      **Expansion of Contiguous Area Provider Contracting.**  BCBSA agrees to permit Blue Plans to negotiate Contiguous Area Contracts with Anchor Hospitals that include both the Anchor Hospital and its Eligible Affiliates.  Furthermore, once an Eligible Affiliate enters into a contract pursuant to this Paragraph 11, the hospitalists and/or other professionals performing services at such Eligible Affiliate Hospital location may also enter into a contract provided for in this Paragraph 11 covering their services performed at that specific Eligible Affiliate Hospital location, provided that (i) those hospitalists/professionals must be exclusive to the Eligible Affiliate Hospital, either because they are employed directly by the Eligible Affiliate itself or because they are employed by a professional organization that is exclusive to the hospital system

of which the Anchor Hospital and its Eligible Affiliate are a part; and (ii) only claims for services performed at the Eligible Affiliate Hospital location, as confirmed by Box 24b or Box 32 of the standard Professional Provider Claim Form 1500 from CMS or other comparable form, may be submitted under a contract that falls within this Paragraph 11.  Claims for services performed by these professionals at all other locations are expressly outside this Paragraph 11.  BCBSA will not adopt or implement any rule or requirement in any future License Agreement that undoes the relief granted by this Paragraph 11 in regards to Contiguous Area Contracting.

12.     **Member Access.**  BCBSA will modify the Contiguous Area Rule to remove the requirement that any Contiguous Area Contracting must be "to serve [the Licensee's] subscribers residing or working in its [S]ervice [A]rea", so that Contiguous Area Contracts may be accessible to all of the contracting Blue Plan's state membership, regardless of whether those Members live or work in the Blue Plan's Service Area.  For Blue Plans that are licensed to use the Blue Marks in more than one state, the modification will apply at the state, rather than Service Area, level.  BCBSA will not adopt or implement any rule or requirement in any future License Agreement that reinserts the deleted language of Exhibit 4, Paragraph 2.3(a) of the License Agreement in existence as of the Execution Date.

13.     **Prompt Pay Commitment to Participating Providers for Clean BlueCard Claims.**  Each Settling Individual Blue Plan agrees to a timeliness commitment for Clean BlueCard Claims for Covered Services rendered after the implementation date of this Paragraph 13 by Participating Providers as follows:

a.      For electronic claims submitted via an industry-standard electronic claims submission process, the "Prompt Pay Period" means thirty (30) calendar days following the later of (i) the Local/Host Blue Plan's receipt of a Clean BlueCard Claim for Covered

Services or (ii) the date on which the Blue Plan is in receipt of all information needed and in a format required for such claim to constitute a Clean BlueCard Claim for Covered Services and all documentation from the Participating Provider that is reasonably needed by the Local/Host Blue Plan or the Control/Home Blue Plan (a) to determine that the claim does not contain any material defect or error; (b) to determine that the claim is for Covered Services; and/or (c) to make a payment determination.  For claims submitted through a non-electronic claims submission process consistent with the terms of the Settlement Class Member's participation agreement or other agreement between the Participating Provider and Local/Host Blue Plan, the Prompt Pay Period shall be increased to forty-five (45) calendar days, but the other requirements stated above shall remain identical.  Where a Local/Host Blue Plan state prompt pay law provides a longer payment time period (*i.e.*, more than thirty (30) calendar days for electronic claims or more than forty-five (45) calendar days for non-electronic claims), the state prompt pay time period shall be the applicable Prompt Pay Period, rather than the timeline(s) set forth in this Paragraph 13(a).

      b.      A Local/Host Blue Plan shall direct the issuance of a check or an electronic funds transfer in payment for Clean BlueCard Claims for Covered Services rendered by a Participating Provider within the applicable Prompt Pay Period, consistent with the terms of this Agreement.  Failure to do so will require the Settling Individual Blue Plan to pay interest pursuant to Paragraph 13(c).  This Paragraph 13(b) is satisfied once a Settling Individual Blue Plan directs payment on a Clean BlueCard Claim for Covered Services; any later adjustment to that payment or claim shall not be subject to the interest penalty in Paragraph 13(c).

c.      With respect to claims for Covered Services rendered by Participating Providers beginning ninety (90) calendar days after the Effective Date, for each Clean BlueCard Claim for Covered Services with respect to which the Local/Host Blue Plan has directed the issuance of a check or the electronic funds transfer later than the applicable Prompt Pay Period, the Local/Host Blue Plan shall pay interest at the rate of eight percent (8%) per annum on the allowed amount owed by the Settling Individual Blue Plan on each such claim computed from the first calendar day after the applicable Prompt Pay Period runs, up to the date on which the Local/Host Blue Plan directs the issuance of a check or the electronic funds transfer for payment of such Clean BlueCard Claim; provided that, to the extent that payment is made later than the period specified by applicable law or regulation, the Local/Host Blue Plan shall pay interest at any rate specified by such law or regulation in lieu of the interest payment otherwise contemplated by this Paragraph 13(c). Interest paid pursuant to this Paragraph shall, at the Local/Host Blue Plan's election, either be included in the claim payment check or electronic funds transfer or be remitted periodically (but at least quarterly) in a separate check or electronic funds transfer along with a report detailing the claims for which interest is being paid.  No Blue Plan shall have an obligation to make any interest payments pursuant to this Paragraph on any claim, or portion of a claim, that is properly denied within the Prompt Pay Period.  In instances where a Settling Individual Blue Plan is found to have improperly denied a claim, interest on that claim will accrue; provided, however, that the Prompt Pay Period will not run—and interest will not accrue—between the period when the claim is denied and when that denial is formally overturned as improper.  When the Prompt Pay Period begins to run again for

improperly denied claims, it will resume beginning where the period left off at the time of the denial and will not restart at "Day 1".

d.      No Settling Individual Blue Plan shall have an obligation to make any interest payment pursuant to Paragraph 13(c):  (i) on any Clean BlueCard Claim if, within thirty (30) calendar days of the submission of the original claim, a duplicate claim is submitted while adjudication of the original claim is still in process; (ii) to any Provider that balance bills a Member in violation of such Provider's agreement(s) with the Local/Host Blue Plan; (iii) during any time period in which a Force Majeure prevents adjudication of claims; (iv) where the claim payment is made to a Member; (v) on any claim under a plan for which all applicable premiums have not been paid; or (vi) to any Provider that is not a Settlement Class Member.

e.      For BlueCard Claims that are denied, the Settling Individual Blue Plans agree to provide an explanation to the Participating Provider that sets forth the reason the Settling Individual Blue Plan made the decision to deny.  For BlueCard Claims that are pended because additional information is required from the Participating Provider, the Settling Individual Blue Plans agree to identify what additional information the Provider must supply.  A Settling Individual Blue Plan's use of the Claim Adjustment Reason Codes (CARCs) and Remittance Advice Remark Codes (RARCs) to convey this information satisfies the requirements in this Paragraph 13(e).

f.      If a Settling Individual Blue Plan determines that there is any defect or error in a BlueCard Claim that prevents the claim from entering the Blue Plan's adjudication system, such Settling Individual Blue Plan shall notify the Participating Provider within thirty (30) calendar days of receiving the claim.

g.      Each Settling Individual Blue Plan shall maintain a system for determining the date each BlueCard Claim is received by the Settling Individual Blue Plan.

h.      A BlueCard Claim receiving an interest payment under Paragraph 13(c) shall not be the basis for a dispute regarding compliance with this Agreement.

i.      Notwithstanding anything in this Agreement to the contrary, the requirements of this Paragraph 13 shall not apply to (i) claims for covered services under a program offered or sponsored by any local or state (including any subdivision thereof, *e.g.*, municipalities) or federal governmental entity, including under a governmental plan, as defined in Section 3(32) of ERISA, 29 U.S.C. § 1002(32); (ii) claims from a Provider under a documented investigation for fraud, waste or abuse; or (iii) claims for Covered Services under a plan that is governed by ERISA.

j.      For the avoidance of doubt, nothing in this Agreement shall (i) require a Settling Individual Blue Plan to accept claims submitted by non-electronic means if that Settling Individual Blue Plan does not otherwise accept such claims; or (ii) require a Settling Individual Blue Plan to violate otherwise applicable state, federal or local law.  A Provider may not recover under both this Paragraph 13 and state, federal, or local laws or a contract providing for prompt pay penalties for the same delay in payment.

14.    **BlueCard Transformation.**    The Settling Defendants agree to develop and implement a system-wide, cloud-based architecture that will enable the delivery of the Blue System's BlueCard Claims data, including but not limited to the BlueCard Program claims processing infrastructure, as well as make other enhancements to information-sharing among Blue Plans as further described in this Paragraph 14. This cloud-based architecture and enhanced information-sharing will increase Blue Plans'—and, by extension, Providers'—access to critical

information so that the Control/Home Blue Plan is no longer the only Blue Plan with available information about Members obtaining healthcare services pursuant to the BlueCard Program.  As a result, Settlement Class Members will be able to receive up-to-date, accurate information, as if they were a contracted provider of the Control/Home Plan, *directly from their Local/Host Blue Plan*, so that the Local/Host Blue Plan is better equipped to resolve issues that may arise in the administration of BlueCard Claims.   Specifically, the cloud-based platform and enhanced information-sharing among Blue Plans will, individually or collectively, include and/or facilitate the following:

      a.    the capability for Blue Plans to access certain administrative data pertaining to Members accessing Covered Services pursuant to the BlueCard Program and to make that data available to Settlement Class Members in the Local/Host Blue Plan's Service Area in the same way that the Local/Host Blue Plan currently shares its own Members' data (*e.g.*, through their own provider portal/platform or through a multi-payor platform). Such administrative data shall include the following capabilities on the timelines set forth below:

      i.    Member benefits and eligibility verification, which means the information necessary to determine whether a Member is eligible for a service under the Member's benefits contract and the Member's out-of-pocket responsibility (*i.e.*, (a) Member-identifying information (name, Member ID, date of birth, address); (b) whether the Member has active coverage/date ranges for eligibility; (c) coverage by service type and benefits (*e.g.*, office visit, outpatient, etc.); (d) Member deductible

information; and (e) the fact of whether pre-authorization, pre-certification or other pre-service administrative process is required);

ii.      Pre-authorization requirements, which means offering clarity on what a Settlement Class Member must do to obtain pre-authorization for a particular service based on the Member's benefit contract; and

iii.      Claims status tracking, which means a tracker that will provide clarity on where a BlueCard Claim is in the adjudication process.

Member benefits and eligibility verification (as set forth in Paragraph 14(a)(i)) will be implemented as of December 31, 2026, or one hundred and twenty (120) calendar days following the Effective Date, whichever is later.  Pre-authorization requirements (as set forth in Paragraph 14(a)(ii)) will be implemented on December 31, 2027, or one hundred and twenty (120) calendar days following the Effective Date, whichever is later.  Claims status tracking (as set forth in Paragraph 14(a)(iii)) will be implemented as of December 31, 2028, or one hundred and twenty (120) calendar days following the Effective Date, whichever is later;

b.      patient data exchange capabilities that will enable bidirectional data exchange between Blue Plans and Settlement Class Members, and Blue Plans and Electronic Medical Record ("EMR") vendors for Settlement Class Members that elect to participate.  These capabilities will be designed to facilitate electronic patient information exchange through industry standard EMR interfaces and industry standard transactions.  In addition, the capabilities will allow Blue Plans to rapidly supply Providers with comprehensive clinical data to the extent available (*e.g.*, care supplied by other Providers, admission/discharge/transfer data, and lab data); and

c. the ability for the Blue System to implement and roll out future improvements to the BlueCard Program at a faster pace than on the Execution Date, including the ability to quickly update Settlement Class Members' data and enact changes that lead to more efficient claims processing, as those needs arise and are identified in the future.

15. **Real-Time Messaging System.** The Blue System shall implement a real-time inter-plan messaging service, which will enable Blue Plans to address Settlement Class Member and Member issues in near real-time, including by supplying prompt responses to pre-service transactions and rectifying claims issues and disputes.

16. **BlueCard Executive.** Each Settling Individual Blue Plan agrees to designate at least one senior-level "BlueCard Executive" who will be accountable for issues regarding BlueCard Claim payments issues in regards to Settlement Class Members.  Settling Individual Blue Plans that are licensed to use the Blue Marks in more than one state ("Multi-State Blue Plans") may elect to have more than one such executive, with each executive being responsible for a specific subset of the Multi-State Blue Plan's Service Area.

a. The BlueCard Executive shall be an officer or hold another senior-level position, and each BlueCard Executive shall be empowered to make decisions on behalf of his or her own Blue Plan (or, in the case of a Multi-State Blue Plan, for a subset of that Blue Plan) on a BlueCard Claim issue that is escalated to him or her (*e.g.*, pre- and post-authorizations, medical records requirements, medical and reimbursement policies, and claims submissions, processing, and payment issues raised by Settlement Class Members) that cannot be resolved through other means (*e.g.*, dispute resolution, appeal).  BlueCard Executives at different Settling Individual Blue Plans shall have the ability to interface with

each other at the highest levels within each organization, to ensure that escalated issues are resolved promptly and efficiently.

  b. A Settlement Class Member shall have the right to have its BlueCard Claim issue automatically escalated for decision to the BlueCard Executive at the Local/Host Blue Plan, or one of his or her direct reports, in the first instance ("Automatic Escalation") where the BlueCard Claim issue concerns:  (i) an open BlueCard Claim that (a) is aged forty-five (45) calendar days or more from the submission date and (b) totals $1 million ($1,000,000.00) or more in billed charges; (ii) an open BlueCard Claim that (a) is aged sixty (60) calendar days or more from the submission date and (b) totals $500 thousand ($500,000.00) or more in billed charges; or (iii) an open BlueCard Claim that (a) is aged ninety (90) calendar days or more from the submission date and (b) totals $300 thousand ($300,000.00) or more in billed charges.  During the Monitoring Period, the Monitoring Committee may, by unanimous vote, amend the criteria for Automatic Escalation so that such criteria remain timely and reflect any learnings of the Automatic Escalation process during the Monitoring Period; thereafter, the National Executive Resolution Group, as established in Paragraph 17, shall be responsible for amending the criteria for Automatic Escalation so that the criteria remain timely and serve the purposes of this Paragraph 16, provided that the National Executive Resolution Group may not eliminate the Automatic Escalation right.  Escalation to the BlueCard Executive does not replace, modify, or in any way abrogate any appeals process, contractually required meet-and-confer or other process or arbitration requirement(s) as set forth in a Settlement Class Member's participation agreement or other contract with a Settling Individual Blue Plan, or as may be required by law.  Notwithstanding a Settlement Class Member's eligibility for Automatic Escalation

pursuant to this Paragraph 16(b), no Settlement Class Member shall be entitled to Automatic Escalation during any period such Provider is subject to a documented ongoing investigation for fraud, waste and/or abuse.

c.      When eligible to contact the BlueCard Executive as set forth in Paragraph 16(b), Settlement Class Members may communicate with their Local/Host Blue Plan's BlueCard Executive (rather than the BlueCard Executive at each individual Control/Home Blue Plan), and the Local/Host Blue Plan's Executive will promptly respond to such outreaches.   The BlueCard Executive at the Local/Host Blue Plan may communicate with the BlueCard Executive at other Blue Plans in order to reach a resolution for the Settlement Class Member.  Where that occurs, the Local/Host Blue Plan's BlueCard Executive will be empowered to communicate that resolution to the Settlement Class Member and the Local/Host Blue Plan will honor the resolution it communicates.  For the avoidance of doubt, no Blue Plan's BlueCard Executive will be empowered to make decisions on behalf of any other Blue Plan or its BlueCard Executive or to bind any other Blue Plan.

17.    **National Executive Resolution Group.**   BCBSA shall establish a "National Executive Resolution Group" (the "Group"), so that the Blue System can continue to refine and improve the BlueCard Program in the future based on new input from Providers over time.  The Group will operate at the BCBSA level and will be composed of executives from both BCBSA and the Blue Plans.  The purpose of this Group will be to identify trends and address opportunities for improvement in the operation of the BlueCard Program, with a particular emphasis on solving issues raised by large regional and national Providers that have footprints in multiple Service Areas or where there are other systemic issues that are impacting Settlement Class Members across

multiple Service Areas.  The Group will serve as a single, centralized location for coordination across all Blue Plans where a Provider may have locations (or where a particular concern may arise) so that there is a formalized setting, with regular touchpoints, for Blue Plans to discuss and address ongoing BlueCard Program concerns.  Any recommendations from the Group shall be subject to regular BCBSA governance, and any approved solutions shall be rolled out to Providers promptly through the cloud-based architecture described in Paragraph 14 or other appropriate means.  The Group will not possess the authority to resolve contracting or reimbursement issues on behalf of any specific Blue Plan.  The Group shall have a specified Provider Liaison Committee, which will be composed of ten (10) Settlement Class Members selected by Settlement Class Counsel after consultation with BCBSA.  The Provider Liaison Committee will establish a mechanism through which Settlement Class Members and associations or organizations of Providers can communicate any such concerns or desired improvements to the committee, which shall be permitted to raise and present such concerns to the Group twice a year, and shall receive annual reports of the Group's work and recommendations.

18.     **Third-Party Information.**  The Settling Individual Blue Plans agree to identify third parties involved in benefit application decisions, including prior authorizations or claims processes, as part of Member eligibility verification conducted by Settlement Class Members.  Specifically, where technically possible and where standards allow for such information exchanges, the Settling Individual Blue Plans will inform Settlement Class Members, through eligibility or prior authorization responses, the name of the entity responding to the Settlement Class Member's request, as well as the entity with ultimate responsibility for adjudicating the claim.  This Agreement will not replace third-party agreements that are already in place or apply where the third party does not have the requisite capability or is otherwise not required to comply

41

based on the terms of its operative contract with a Settling Individual Blue Plan.  Nothing in this Paragraph 18 shall be read or interpreted to permit or authorize direct contact of such third parties by Providers, where that contact is prohibited by contract or law.

19.     **Service Level Agreements.**  The Blue System shall implement performance SLAs between each Blue Plan, on the one hand, and BCBSA on the other hand, as set forth below.  These SLAs will be in the form of performance commitments and standards with respect to BlueCard Claims that BCBSA will require of each Blue Plan.  These SLAs, which will be measured on average, shall address the following topics:

a.     Electronic Eligibility Inquiries.  Blue Plans agree to respond to Providers' BlueCard Program-related 270/271 transactions within a maximum period of twenty (20) seconds of receipt for real-time transactions and the earlier of seventy-two (72) hours or 7:00 a.m. Eastern Time the following business day for batch transactions, provided the batch transaction is received by 9:00 p.m. Eastern Time on a business day.

b.     Electronic Claim Status Inquiries.  Blue Plans agree to respond to Providers' BlueCard Program-related 276/277 transactions within a maximum period of twenty (20) seconds of receipt for real-time transactions and the earlier of seventy-two (72) hours or 7:00 a.m. Eastern Time the following business day for batch transactions, provided the batch transaction is received by 9:00 p.m. Eastern Time on a business day.

c.     SLA Performance Guarantee Program.  Blue Plans will be held accountable for complying with the SLAs through the SLA Performance Guarantee Program that will contain the following:

i.     Financial penalties that will flow through BCBSA to affected Settlement Class Members if SLAs are not met.  Financial penalties will be

based on compliance with SLAs on an aggregate basis by Blue Plan.  A mechanism will be included in the SLA Performance Guarantee Program to prevent Providers from recovering twice for the same shortcoming. Furthermore, no Provider shall be allowed to collect an SLA financial penalty if the Provider is subject to a documented ongoing investigation for fraud, waste and/or abuse.

ii.     Financial penalties for failure to comply with SLAs will escalate in severity as a Blue Plan falls further out of compliance with its SLA commitments.

iii.    An efficient and timely process for Settlement Class Members and Blue Plans to address performance issues through the new BlueCard Executive and related infrastructure.  Specifically, the BlueCard Executive at each Plan will be a resource for Settlement Class Members to ensure Plans are meeting their SLA commitments in the event there are repeated and sustained shortcomings.

iv.     The first measurement period for the SLAs and the SLA Performance Guarantee Program will begin on the earlier of January 1 or July 1, whichever occurs first, after one hundred and twenty (120) calendar days following the Effective Date have elapsed, so long as the Monitoring Committee has approved the SLA Performance Guarantee Program as of that date as provided for in Paragraph 19(c)(v); otherwise, the first measurement period will be the first of either January 1 or July 1 that occurs after the Monitoring Committee approves the SLA Performance Guarantee

Program as provided for in Paragraph 19(c)(v).  Subsequent measurement and financial penalty payout periods for the SLA Performance Guarantee Program will occur at a regular cadence and at least annually.

v.      The SLA Performance Guarantee Program will be submitted to the Monitoring Committee no later than ninety (90) calendar days after the Effective Date.  The Monitoring Committee's review will be limited to confirming that the SLA Performance Guarantee Program satisfies the parameters set forth in this Paragraph 19(c).  If any changes are made to the SLA Performance Guarantee Program during the Monitoring Period, those changes will likewise be submitted to the Monitoring Committee for review and confirmation that they comport with the requirements of this Paragraph 19(c).

20.      **Minimum Data Requirements.**  In response to Electronic Data Exchange (EDI) eligibility and benefit inquiry (270) transaction requests calling for such information related to a specific Blue Plan Member, the Settling Individual Blue Plans agree to provide on the corresponding EDI eligibility and benefit response (271) transactions information, as of the response date, concerning:  (i) any applicable benefit limitations for that Member based on site of service; (ii) any applicable information for that Member related to narrow networks or limited out-of-state benefits; (iii) maximum out-of-pocket ("MOOP") accumulators for that Member; and (iv) the identity of the Control/Home Blue Plan.  The Settling Individual Blue Plans will provide this information in the specific Loop, Segment and Data Field(s) as dictated by governing industry standards; the Settling Individual Blue Plans will include any additional information (*i.e.*, those

without a specific Loop, Segment and Data Field) in the "Notes/Free Text" Field on the eligibility and benefit response (271) transaction.

21.     **Blue Plan Common Appeals Form.**  BCBSA agrees to develop a uniform Blue Plan Common Appeals Form substantially in the form attached to this Agreement as Appendix D. To the extent a Settling Individual Blue Plan requires a Provider to use a specific appeals form in order to initiate a permitted Provider appeal over a BlueCard Claim, the Settling Individual Blue Plan agrees to accept the Blue Plan Common Appeals Form as the initiation of such appeal by any Settlement Class Member where allowed by applicable law.  Nothing in this Agreement shall prohibit a Settling Individual Blue Plan from requesting additional information not found in the Blue Plan Common Appeals Form as part of the appeals process, or from using and accepting an alternative appeals form in addition to the Blue Plan Common Appeals Form (*e.g.*, in the event Providers prefer to use an existing permitted form).  BCBSA is expressly permitted to revise the Blue Plan Common Appeals Form over time, where BCBSA has a business justification for doing so.  Any changes made to the Blue Plan Common Appeals Form during the Monitoring Period will be submitted to the Monitoring Committee for review, comment and approval.

22.     **Minimum Level of Value-Based Care.**  The Blue System agrees that, by no later than ninety (90) calendar days after the Effective Date, each Settling Individual Blue Plan shall have a value-based care offering that qualifies as Category 3 or higher on the LAN APM Framework.  A Settling Individual Blue Plan satisfies this requirement if it makes at least one such offering available to any Provider(s) in its Service Area; that offering need not be offered to all Providers or in all lines of business, and a Settling Individual Blue Plan shall not be found in noncompliance with this Paragraph 22 because no Provider chooses to contract for its offering.  If three or more years pass without any eligible Provider contracting for a Blue Plan's Category 3

offering, the Settling Individual Blue Plan shall no longer be obligated to offer that level of value-based arrangement.

23.   **Best Practices for Value-Based Care.**   BCBSA agrees to promulgate defined standards for value-based contracts ("Defined Standards") covering Member attribution logic, performance measurement and data analytics and reporting.  These Defined Standards will be "best practices" meant to guide each Blue Plan in advancing value-based care arrangements in its individual market(s), to the extent each Local/Host Blue Plan and the individual Settlement Class Members in its Service Area agree to pursue such arrangements, and will be transparent to Settlement Class Members.  Deviation from the Defined Standards is expressly permissible (i) when a Provider itself demands something different through individual contract negotiation; (ii) when the Local/Host Blue Plan deems deviation necessary to accommodate local dynamics, including applicable state laws and the specific membership population that the Blue Plan and the Provider both serve; or (iii) to promote continued innovation in the local market.  The Defined Standards will address:

a.   Member Attribution Logic.   Individual Blue Plans and Settlement Class Members will be free to adopt customized attribution logic for population health programs; however, whatever customized attribution logic the Settling Individual Blue Plan and the Settlement Class Member choose to adopt, the attribution logic will be the same for the Local/Host Blue Plan's own Members and Members accessing care pursuant to the BlueCard Program that participate in the value-based arrangement (*e.g.*, excepting Members of Administrative Services Only accounts that have not elected to participate in the Local/Host Blue Plan's value-based offering, although the Control/Home Blue Plan will recommend participation by the account in its value-based offerings; provided,

however, that Settling Individual Blue Plans are not obligated to recommend participation in the value-based offering where (i) the account has already expressed that it does not intend to participate in any such offerings; and/or (ii) the value-based offering is not consistent with the needs of the account, for example, because the offering includes (or lacks) features that the account has already made clear are unpalatable (or required) for its business.  Any monitoring of this provision will be done without directly engaging or interfering with the accounts themselves).  Such attribution logic may be customized based on Provider types; those types may include, but are not limited to:

> i.       Primary Care Physician ("PCP") Providers such as the following Provider types:  family practice, general practice, geriatrician, internal medicine, nurse practitioner, pediatrician, physician's assistant, preventative medicine, and women's health.

> ii.      Accountable Care Organization ("ACO") Providers that are inclusive of broad networks of physicians, inpatient and outpatient facilities, and ancillary Providers.

b.      <u>Performance Measurement</u>.   The Defined Standards will offer "best practices" guidance on selecting and adopting performance measures focused on quality and utilization that are meaningful and sensible in each individual local market and within the context of each value-based arrangement that is agreed to with a specific Settlement Class Member.  The recommended quality and utilization measures will vary based upon a range of parameters, including the types of Providers involved in the value-based program, population need and the specific value-based contract at issue.  Ultimately, the Local/Host Blue Plan and Settlement Class Members will work together to adopt any

performance measures that are locally relevant and appropriate for the Provider, and Settlement Class Members will be allowed to negotiate with the Settling Individual Blue Plans regarding specific performance targets related to the population of patients that the Providers and the Local/Host Blue Plan both serve.

   c. <u>Data, Analytics and Reporting</u>.  The Defined Standards will also guide Blue Plans in tailoring data submissions to each Settlement Class Member within any mutually agreed value-based arrangement, in order to help ensure that these data submissions are sensible in the context of that Provider and the specific value-based offering with the Settling Individual Blue Plan, including any agreed-upon performance targets.  This may include development of standards supporting the submission of claims data, to the fullest extent possible, where appropriate (*e.g.*, based upon the specific value-based program that is agreed to by the Local/Host Blue Plan and the Settlement Class Member), and a recommended form of the data to be exchanged (*e.g.*, that the data should be submitted in reports to Settlement Class Members who lack the capacity or capability to process raw data, but that other Settlement Class Members such as large hospital systems with appropriate software capabilities might best receive raw data in addition to a report).  Where exchanged and when technically feasible, the Defined Standards will recommend that clinical data interoperability should be bi-directional so that the systems receive the clinical data that the Blue Plans obtain related to the attributed patients—including, for example, laboratory test results—that the Blue Plans and Providers may lawfully or otherwise permissibly share.  The Defined Standards will further guide Blue Plans in submitting to Settlement Class Members participating in value-based arrangements all paid claims files for the patients attributed or assigned to them, including a recommendation

that such files be shared with Settlement Class Members (i) who are not part of an integrated insurer/payor system, and (ii) who have agreed to take on material downside risk through the value-based arrangement, where such sharing is consistent with regulatory and Member privacy concerns, including HIPAA's Minimum Necessary Rule, and any information-sharing protections that may need to be established due to contractual or legal requirements in order to support the sharing of unaffiliated Providers' sensitive financial information.  The purpose of such data sharing shall be to create a comprehensive, timely, transparent and consistent view of the attributed patients, including Members of the Local/Host Blue Plan and Members accessing care pursuant to the BlueCard Program, while recognizing that some variation is not only necessary but often preferable (*e.g.*, because individual Providers themselves have different needs and capabilities).

24.     **Telehealth Relief.**  The Settling Defendants agree to streamline claims processing where Blue Plan-contracted Settlement Class Members contract with individual physicians located in a different Blue Plan's Service Area to supply Virtual-Only Services to the Settlement Class Member's patients.  In these situations, the Settling Defendants agree to allow claims for these Virtual-Only Services to be submitted directly to the contracting Provider's Local/Host Blue Plan by the Blue Plan-contracted Provider, rather than submitting the claim to the Blue Plan where the individual physician is located.  Nothing in this Paragraph 24 shall require a Settling Individual Blue Plan to pay for Virtual-Only Services that are not otherwise Covered Services.

25.     **Pre-Authorization Standards.**  BCBSA agrees to promulgate guidance to Blue Plans to improve the prior authorization process.  That guidance will be not less than what is set out in the Consensus Statement on Improving the Prior Authorization Process that BCBSA agreed to along with AHIP, the American Medical Association and the American Hospital Association,

and will include recommendations for selective application of prior authorization, prior authorization program review and volume adjustment, transparency in communication regarding prior authorization, and automation to improve transparency and efficiency.

26.    **Affiliates and All Products Clauses.**  Each Settling Individual Blue Plan will not rent Non-Blue-Branded Provider network(s) to another Blue Plan (or another Blue Plan's affiliate(s)) offering Non-Blue-Branded insurance, products or services in the renting Blue Plan's Service Area, where the network being rented is comprised primarily of Providers that are members of the Non-Blue-Branded network by virtue of a clause in a Blue-Branded network contract obligating the Provider to participate in the Settling Individual Blue Plan's Non-Blue-Branded offerings.  Nothing in this Paragraph 26 will limit Settling Individual Blue Plans from renting either (i) their Blue-Branded networks to the extent permitted by the License Agreements, Membership Standards and related Blue System rules, (ii) their Non-Blue-Branded networks to their own Blue-Branded or Non-Blue-Branded affiliates, or (iii) any of their networks in any other way beyond the limitations in this Paragraph 26.

27.    **Implementation of Class Injunctive Relief.**  Upon execution of the Agreement, Settling Defendants shall begin to take steps necessary to implement the injunctive relief set forth in Paragraphs 14, 15, 18 and 20.  The relief set forth in Paragraph 14 (other than Paragraph 14(a)) and in Paragraphs 15, 18 and 20 shall be implemented by the later of December 2026 or one hundred and twenty (120) calendar days after the Effective Date.  The relief set forth in Paragraph 14(a) shall be implemented as set forth in that Paragraph.  Upon entry of a Preliminary Approval Order, Settling Defendants shall begin to take steps necessary to implement the injunctive relief set forth in Paragraphs 11–13, 16–17, 19, 21–22, 24 and 26.  With the exception of the relief set forth in Paragraph 19, Settling Defendants shall implement this relief no later than

50

ninety (90) calendar days after the Effective Date; the injunctive relief set forth in Paragraph 19 shall be implemented on the timeline and as described in Paragraphs 19(c)(iv)–(v).  Upon entry of the Final Judgment and Order of Dismissal, Settling Defendants shall begin to take steps necessary to implement the relief set forth in Paragraphs 23 and 25.  Settling Defendants shall implement this relief no later than one hundred and twenty (120) calendar days after the Effective Date.  These deadlines may be extended only by vote of the Monitoring Committee or Court approval.

28.     **Duration of Class Injunctive Relief.**     The injunctive relief set forth in Paragraphs 11–12, 14–17 and 21–25 shall be deemed satisfied upon implementation, subject to monitoring in accordance with Paragraph 29.  The injunctive relief set forth in Paragraphs 13, 18–20 and 26, and the mandatory Provider Liaison Committee in Paragraph 17 shall expire at the conclusion of the Monitoring Period.  Nothing in this Agreement shall prevent the Settling Defendants from making additional changes or upgrades to their rules, programs and/or information and technology systems as they deem appropriate, so long as such changes are not expressly prohibited by this Agreement.  To the extent any injunctive relief in Paragraphs 10–26 becomes obsolete, or is superseded or preempted by governing industry standards or federal, state or local law, during the duration of the relief, such term(s) shall expire.

29.     **Monitoring, Compliance and Reporting.**     The Monitoring Committee shall be formed for the duration of the Monitoring Period in accordance with Appendix C and shall have the obligations only as expressly set forth in this Settlement Agreement and in Appendix C.  All Monitoring Committee communications shall be Confidential, unless otherwise ordered by the Court.  During the Monitoring Period, Settling Defendants shall advise Provider Co-Lead Counsel and the Monitoring Committee of the fulfillment of any requirements set forth in Paragraphs 11–26.  During the Monitoring Period, the Monitoring Committee shall oversee any

disputes in accordance with the procedures set forth in Appendix C.  Unless otherwise specified in this Agreement, all decisions and actions to be taken by the Monitoring Committee shall be taken upon majority vote.  Any and all obligations and authority of the Monitoring Committee shall cease at the conclusion of the Monitoring Period.

30.   **Monitoring Fees and Expenses.**   Fees and expenses actually and reasonably incurred in connection with monitoring and compliance under Paragraph 29 shall be paid from the Notice and Administration Fund; all such fees and expenses shall be subject to review by the Monitoring Committee prior to payment.   These include the actual and reasonable fees and expenses of the Monitoring Committee (but not including fees for members appointed by Settling Defendants), and actual and reasonable monitoring and compliance fees and expenses of Provider Co-Lead Counsel in connection with the performance of monitoring and compliance activities set forth in Paragraph 29 and Appendix C.   No attorneys' fees or attorney expenses for Settling Defendants shall be paid from the Notice and Administration Fund.  Any money remaining in the Notice and Administration Fund at the later of the expiration of the Monitoring Period or the completion of settlement administration will be distributed in accordance with Paragraph 39(b). In the event the Notice and Administration Fund (including any Material Loss Contingency Reserve) is depleted prior to the conclusion of the Monitoring Period, the Settling Defendants shall have no obligation to replenish consistent with Paragraph 41.

**D.   SETTLEMENT AMOUNT**

31.   **Settlement Amount.**   Subject to the provisions hereof, and in full, complete and final settlement of the Provider Actions as provided herein, Settling Defendants shall pay or cause to be paid the Settlement Amount of $2.8 billion ($2,800,000,000.00).  The Settlement Amount shall be paid in U.S. dollars into the Escrow Account.  In no event shall Settling Defendants be

required to pay or cause to be paid any additional dollars to the Settlement Amount for any purpose under this Agreement.

32.   **Payment Timing.**   The Settlement Amount shall be paid in the following installments.

a.      Within thirty (30) calendar days of entry of the Preliminary Approval Order, Settling Defendants shall cause to be transferred into the Escrow Account the $100 million ($100,000,000.00) Notice and Administration Fund.

b.      Within thirty (30) calendar days of the Court's entry of the Final Judgment and Order of Dismissal, Settling Defendants shall cause the remaining portion of the Settlement Amount to be transferred into the Escrow Account.

c.      All (i) Notice and Administration Costs, (ii) Fee and Expense Awards, (iii) Service Awards, (iv) Taxes and Tax Expenses, and (v) any other Court-approved costs of implementing the settlement shall be paid solely from the Escrow Account, as further specified in Paragraph 35.  Amounts in the Escrow Account shall be paid and distributed only in accordance with the terms of this Agreement and the terms of a mutually agreed-upon escrow agreement entered into by the parties ("Escrow Agreement"), to be overridden only by Court order.

33.   **Failure to Fund.**  Without prejudice to Settlement Class Members' right to seek enforcement of this Agreement, if the Settlement Amount is not timely transferred to the Escrow Account in accordance with the terms of Paragraph 32, Settlement Class Counsel may rescind this Agreement if:  (i) Settlement Class Counsel have notified Settling Defendants' counsel in writing of their intention to rescind this Agreement for insufficient payment; and (ii) the entire Settlement

Amount is not transferred to the Escrow Account within thirty (30) business days after Settlement Class Counsel have provided such written notice.

34.     **Tax Benefits and Consequences.**

a.      Settling Defendants and Settlement Class Counsel do not warrant to Provider Class Representatives or Settlement Class Members any tax benefits or consequences arising from this Agreement or any of the payments made to Provider Class Representatives and Settlement Class Members pursuant to this Agreement. All federal, state, and local taxes owed by Provider Class Representatives and Settlement Class Members on any of the amounts paid pursuant to this Agreement are the responsibility of Provider Class Representatives and Settlement Class Members, and not the Releasees or Settlement Class Counsel.

b.      Settling Defendants do not warrant to Settlement Class Counsel any tax benefits or consequences arising from this Agreement or any of the payments made to Settlement Class Counsel pursuant to this Agreement. All federal, state, and local taxes owed by Settlement Class Counsel on any of the amounts paid pursuant to this Agreement are the responsibility of Settlement Class Counsel, and not the Releasees.

c.      Provider Class Representatives, Settlement Class Members, and Settlement Class Counsel acknowledge that Settling Defendants and the Section 468B Administrator will engage in reporting to the Internal Revenue Service and such other state and local taxing authorities as may be required by law. Provider Class Representatives, Settlement Class Members, and Settlement Class Counsel further acknowledge that the Section 468B Administrator and the Escrow Agent will comply with all withholding obligations as required under the applicable provisions of the Internal Revenue Code of 1986 as amended,

and such other state and local laws as may be applicable, and the regulations promulgated thereunder.

35.    **Escrow Account.**  The Escrow Account shall be selected by Provider Co-Lead Counsel and Settling Defendants and will be established at the Bank with such Bank serving as Escrow Agent subject to escrow instructions regarding investment types and reinvestment of income and proceeds mutually acceptable to Provider Co-Lead Counsel and Settling Defendants. Such Escrow Account is to be administered by the Escrow Agent under the Court's continuing supervision and control.

a.    No monies shall be paid from the Escrow Account without the specific written authorization of Provider Co-Lead Counsel and a designated representative of the Settling Defendants, and such authorization shall not be unreasonably withheld.  Counsel for the Parties agree to cooperate, in good faith, to negotiate and execute an appropriate and separate Confidential Escrow Agreement in conformance with this Agreement prior to the date on which any portion of the Settlement Amount is required to be paid pursuant to Paragraph 32 of this Agreement.

b.    The Escrow Agent shall cause the funds deposited in the Escrow Account to be invested in short-term instruments backed by the full faith and credit of the U.S. Government or fully insured in writing by the U.S. Government, or money market funds rated Aaa and AAA, respectively by Moody's Investor Services and Standard and Poor's, invested substantially in such instruments, and shall reinvest any income from these instruments and the proceeds of these instruments as they mature in similar instruments at their then-current market rates.  The Parties shall bear no risk related to the management and investment of the Settlement Fund or Escrow Account.  Settling Defendants shall not

be required to deposit additional funds as a result of investment or other losses to the Settlement Fund or Escrow Account.

      c.     All funds held in the Escrow Account shall be deemed and considered to be in *custodia legis* of the Court and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to the terms of this Agreement and/or order(s) of the Court.

      d.     Provider Class Representatives and Settling Defendants agree to treat the Escrow Account as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1.  In addition, the Section 468B Administrator and, as required, the Parties, shall timely make such elections and filings as necessary or advisable to carry out the provisions of this Paragraph 35, and the Section 468B Administrator shall, in any event, make any available "relation-back election" (within the meaning of Treas. Reg. § 1.468B-1(j)(2)) back to the earliest permitted date.  Such elections shall be made in accordance with the procedures and requirements contained in the regulations promulgated under Internal Revenue Code Section 468B.  It shall be the responsibility of the Section 468B Administrator to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.  The Court shall have continuing jurisdiction over the Escrow Account, pursuant to Treas. Reg. § 1.468B-1(c)(1), and over the Section 468B Administrator.  All provisions of this Agreement shall be interpreted in a manner that is consistent with the Escrow Account being a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1.

e.    The Section 468B Administrator shall timely and properly file all information and other Tax returns necessary or advisable with respect to the Escrow Account (including without limitation the returns described in Treas. Reg. § 1.468B-2(k)(1)).  Such returns shall be consistent with Paragraph 35(d) and in all events shall reflect that all Taxes shall be paid out of the Escrow Account as provided in Paragraph 35(g) hereof.

f.    Each Settling Defendant shall timely deliver to the Section 468B Administrator a "Section 1.468B-3 Statement" (as provided in Treas. Reg. § 1.468B-3(e)) with respect to any transfers it makes to the Escrow Account.

g.    The Escrow Account is intended to be a separate taxpaying entity for purposes of federal and state tax law.  All Taxes and Tax Expenses arising from the operation and income of the Escrow Account shall be paid out of the Escrow Account.

h.    Unless otherwise set forth in this Agreement, the Section 468B Administrator shall be solely responsible for directing the filing of all informational and other Tax returns necessary to report any income earned by the Escrow Account.

i.    Settling Defendants make no representation to Settlement Class Counsel regarding the appropriate tax treatment of the Settlement Fund, income earned on the Settlement Fund, or any distribution taken from the Settlement Fund.  Neither Settling Defendants nor any other Releasee nor their respective counsel shall have any liability for the Taxes or the Tax Expenses.  Settling Defendants shall have no responsibility to make any filings relating to the Settlement Fund and will have no responsibility to pay tax on any income earned by the Settlement Fund or to pay any taxes on the Settlement Fund unless the settlement is not consummated and the Settlement Fund is returned to Settling

Defendants.  Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Escrow Account and shall be timely paid or reimbursed out of the Escrow Account without prior order from the Court.  The Escrow Agent shall reimburse Settling Defendants out of the Escrow Account for any Taxes and Tax Expenses to which Settling Defendants are subject.  The Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to any claimants authorized by the Court any funds necessary to pay such amounts including the establishment of adequate reserves for any Tax and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(*l*)(2)).  Provider Class Representatives, Settlement Class Counsel, and Settling Defendants agree to cooperate with the Section 468B Administrator, the Escrow Agent, each other, and their attorneys and accountants to the extent reasonably necessary to carry out the provisions of Paragraphs 35(d)–(g).

36.    **Distribution of Net Settlement Fund to Authorized Claimants.**    After this Agreement becomes final on the Effective Date and the Court enters a Class Distribution Order, the amounts in the Escrow Account consisting of the Net Settlement Fund shall be distributed to Authorized Claimants in accordance with the Plan of Distribution, which shall include the foundation for the requested allocation, to be submitted to the Court at the appropriate time by Provider Co-Lead Counsel, subject to approval by the Court in the Class Distribution Order.  The Plan of Distribution will provide an opportunity to submit a claim for monetary payments by all Settlement Class Members.  In no event shall any Settling Defendant or any other Releasee have any responsibility, financial obligation, or liability whatsoever with respect to the allocation, investment, distribution, or administration of the Escrow Account, including, but not limited to,

the costs and expenses of such distribution and administration, except as expressly otherwise provided in Paragraphs 32–35, to be borne by the Notice and Administration Fund.

37.   **Attorneys' Fees and Expenses and Service Awards.**  Settlement Class Counsel shall be reimbursed and indemnified solely out of the Escrow Account for all attorneys' fees, expenses, and costs, in amounts not to exceed those provided by Court order.  Provider Co-Lead Counsel, on behalf of Settlement Class Counsel, shall file their Fee and Expense Application(s), and provide Notice to Class Members, in accordance with Eleventh Circuit practice.  All such expenses as are approved by the Court shall be solely paid out of the Escrow Account.  In the event that the Effective Date does not occur, only actually and reasonably incurred Notice and Administration Costs may be payable from the Escrow Account, and such amounts shall not be refunded to Settling Defendants.

a.   Provider Co-Lead Counsel, on behalf of Settlement Class Counsel, may submit a Fee and Expense Application to the Court for:  (i) an award of attorneys' fees, up to twenty-five percent (25%) of $2.8 billion (*i.e.*, $700 million ($700,000,000.00)), plus (ii) reimbursement of expenses and costs reasonably and actually incurred in connection with prosecuting the Provider Actions.

b.   If the portion of the Fee and Expense Award attributable to attorneys' fees (but not expenses and costs) exceeds twenty-five percent (25%) of $2.8 billion, Settling Defendants may rescind the settlement.

c.   A partial award of $75 million ($75,000,000.00) of the Fee and Expense Award ("Partial Award") shall be paid from the Escrow Account to Settlement Class Counsel no later than forty-five (45) calendar days after the Court's entry of the Final Judgment and Order of Dismissal.  The Partial Award shall be distributed at the discretion

of Provider Co-Lead Counsel.  The Partial Award shall be subject to Settlement Class

Counsel's provision of an irrevocable letter of credit from the Bank securing the amount

of the Partial Award.  Settlement Class Counsel shall be required to repay those amounts

to the Escrow Account, plus accrued income at the same net rate as is earned by the Escrow

Account, and subject to an appropriate undertaking, if and when, as a result of any appeal

and further proceedings on remand, or successful collateral attack, and after the exhaustion

of all appeals, the Fee and Expense Award is reduced or reversed below $75 million

($75,000,000.00), or return of the Escrow Account is required.

      d.      Settlement Class Counsel may also seek Service Awards for Provider Class

Representatives as part of their Fee and Expense Application in accordance with Eleventh

Circuit practice.  Any Service Award(s) approved by the Court shall be payable from the

Settlement Amount.

      e.      Neither Settling Defendants nor any other Releasee under this Agreement

shall have any responsibility for, interest in, or liability whatsoever with respect to any

payment to Settlement Class Counsel and/or Provider Class Representatives of any Fee

and Expense Award or Service Award.

      f.      Notwithstanding any other provision of this Agreement to the contrary, the

propriety of the Fee and Expense Application shall be considered by the Court separate

and apart from its consideration of the fairness, reasonableness, and adequacy of the

settlement, and any order or proceeding relating to the Fee and Expense Application, or

any appeal of any order relating thereto or reversal or modification thereof, that does not

have the effect of increasing Settling Defendants' financial obligation under this

Agreement, shall not operate to terminate or cancel this Settlement Agreement or the

settlement of the Provider Actions, or affect the finality or binding nature of any of the releases granted hereunder.  Nothing in this Paragraph 37(f) affects Settling Defendants' rights under Paragraph 37(b).

g.      Other than as set forth in this Paragraph 37, Settling Defendants and the other Releasees shall not be liable for any costs, fees, or expenses of any Provider Class Representatives or the Settlement Class, including without limitation attorneys' fees and expenses, attorneys' fees and expenses associated with the provision of Class Notice, attorneys' fees and expenses incurred in administering the Escrow Account, attorneys' fees and expenses of expert witnesses and consultants, and attorneys' fees and expenses associated with discovery, motion practice, hearings before the Court, and appeals.

38.      **Distributions of the Settlement Fund.**  The Parties agree that the Escrow Account shall be paid out as follows:

a.      After entry of an order approving such distribution, the Settlement Claims Administrator, Settlement Notice Administrator, and Settlement Administrator shall be paid Notice and Administration Costs.

b.      After the Effective Date, the Fee and Expense Award and any Service Award(s) shall be paid; provided, however, that any amounts in the Escrow Account necessary for Taxes and Tax Expenses shall remain in the Escrow Account.

c.      After (i) the Effective Date, (ii) written certification by Settling Defendants and Provider Co-Lead Counsel that the Agreement is final pursuant to Paragraph 8 (which may occur before the conclusion of the Monitoring Period), and (iii) receipt of a Court order approving distribution of the Net Settlement Fund to Authorized Claimants, the Net Settlement Fund shall be distributed as ordered by the Court; provided, however, that any

amounts in the Escrow Account necessary for Taxes and Tax Expenses shall remain in the Escrow Account.

39. **Balance Remaining in Settlement Fund.**

a.     If there is a balance remaining in the Escrow Account (other than any Fee and Expense Award, the Notice and Administration Fund, any Service Award(s), and any income earned thereon) after (i) distribution of the Net Settlement Fund to Authorized Claimants in accordance with Paragraph 36 and (ii) the time for Authorized Claimants to take possession of their distributions, the Settlement Claims Administrator will, subject to Court approval, allocate the balance among Settlement Class Members in an equitable and economic fashion.  If it is not economical to distribute to Settlement Class Members any such residual amounts, then any such amounts will be added to the Notice and Administration Fund unless otherwise ordered by the Court.

b.     At the expiration of the Monitoring Period, any funds remaining in the Notice and Administration Fund, including any income accrued on the Notice and Administration Fund (collectively, the "Remainder"), will be distributed by the Monitoring Committee to an entity or entities chosen by Settling Defendants and Provider Co-Lead Counsel, subject to approval by the Monitoring Committee.  In choosing the entity or entities, the intent shall be to identify organizations that enable Providers to promote access to high-quality healthcare.  In no event shall any portion of the Remainder be paid to Settling Defendants or Settlement Class Counsel.

c.     In no event shall any portion of the Settlement Fund be paid to Settling Defendants, except in the event of rescission in accordance with the terms of this Agreement.

40.     **Amounts Paid Not a Penalty.**  It is understood and agreed that no consideration or amount or sum paid, credited, offered, or expended by Settling Defendants in performance of this Agreement constitutes a penalty, fine, punitive damages, or other form of assessment for any alleged claim or offense.  Each Settlement Class Member is enforcing its rights as a private party and is not directly, indirectly, or derivatively enforcing any rules or exercising any regulatory powers as part of a governmental function on behalf of itself or any government or governmental entity.

41.     **No Replenishment.**  The Settling Defendants shall not be required to contribute more than the Settlement Amount for any purpose whatsoever under this Agreement, including without limitation Notice and Administration Costs, monitoring fees and expenses as set forth in Paragraph 30, and/or the Material Loss Contingency Reserve.

E.     **RELEASE, DISCHARGE, AND COVENANT NOT TO SUE**

42.     **Released Claims and Covenant Not to Sue.**  In addition to the effect of any final judgment entered in accordance with this Agreement, upon the Effective Date as set out in Paragraph 8, and in consideration of the Injunctive Relief and payment of the Settlement Amount into the Settlement Fund, and for other valuable consideration, the Releasors shall be deemed to have, and by operation of the Final Judgment and Order of Dismissal shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims against any and all of the Releasees.  The Parties intend that the release in this Agreement be interpreted and enforced broadly and to the fullest extent permitted by law.  Each Releasor shall be deemed to have released all Released Claims against the Releasees regardless of whether any such Releasor ever seeks or obtains by any means, including without limitation through the Settlement Claim Process, any distribution from Settlement Fund.  Provider Class Representatives and Settling Defendants acknowledge, and each and every Settlement Class Member shall be deemed by operation of the

Final Judgment and Order of Dismissal to have acknowledged, that the foregoing waivers and releases were separately bargained for and a key element of the settlement of which these releases are part.

a.     All Releasors also covenant not to sue any Releasee with respect to any Released Claim, and agree that all Releasors shall be permanently barred and enjoined from commencing, maintaining, prosecuting, causing, cooperating with, advising to be commenced or maintained, or encouraging any action, suit, proceeding or claim in any court, tribunal, administrative agency, regulatory body, arbitrator or other body in any jurisdiction against any Releasee based in whole or in part upon, arising out of, or in any way connected or related to any Released Claim.

b.     Each Releasor may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims which are the subject matter of the provisions of this Paragraph 42.  Nevertheless, each Releasor hereby expressly waives and fully, finally, and forever settles and releases, upon this Agreement becoming final, any known or unknown, suspected or unsuspected, contingent or non-contingent claim with respect to the subject matter of the provisions of this Paragraph 42, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

43.     **California Civil Code.**  In addition to the provisions of Paragraph 42, Releasors expressly waive and release, upon this Agreement becoming final, any and all provisions, rights, and benefits conferred by § 1542 of the California Civil Code, which states:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, AND THAT, IF

KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY
AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR
OR RELEASED PARTY;

or by any law of any state or territory of the U.S., or principle of common law, which is similar,

comparable, or equivalent to § 1542 of the California Civil Code.

44.   **All Claims Satisfied by Settlement Fund.**  Each Releasor shall look solely to the

Plan of Distribution and Net Settlement Fund as deposited in the Escrow Account for settlement

and satisfaction, as provided herein, of all Released Claims for any form of monetary

compensation or relief (including attorneys' fees and costs).  Except as provided by order of the

Court pursuant to this Agreement, no Class Member shall have any interest in the Escrow Account

or the Settlement Funds deposited therein, or any portion thereof.

45.   **Enforcement of Release.**  Notwithstanding any other provision of this Agreement,

nothing in this Agreement will prevent Releasees from pleading this Settlement Agreement as a

full and complete defense to any action, suit, or other proceeding that has been or may be instituted,

prosecuted, or attempted with respect to any of the Released Claims and may be filed, offered, and

received into evidence, and otherwise used for such defense.

F.   **ADMINISTRATION OF SETTLEMENT**

46.   **Claims and Release.**  Any Settlement Class Member who does not follow the

instructions of the Class Notice will not be entitled to any of the proceeds under the Plan of

Distribution and from the Net Settlement Fund, but will otherwise be bound by all of the terms of

this Agreement, including the terms of the Final Judgment and Order of Dismissal to be entered in

the Provider Actions and the releases provided for herein, and will be barred from bringing any

action or proceeding against the Releasees based in whole or in part upon, arising out of, or in any

way connected or related to the Released Claims.

47.     **Settlement Notice Administrator and Settlement Claims Administrator.**  The Settlement Notice Administrator shall execute the Notice Plan upon entry of the Class Notice Approval Order, and, after entry of the Class Distribution Order, the Settlement Claims Administrator shall distribute the Net Settlement Fund in accordance with the Class Distribution Order.  Except for their obligation to fund the settlement or cause it to be funded as detailed in this Agreement, Settling Defendants shall have no liability, obligation, or responsibility for the administration of the settlement or disbursement of the Net Settlement Fund.  Provider Co-Lead Counsel shall have the right, but not the obligation, to advise the Settlement Claims Administrator to waive what Provider Co-Lead Counsel reasonably deem to be formal or technical defects in any proofs of claim submitted, including without limitation failure to submit a document by the submission deadline, in the interests of achieving substantial justice.

48.     **Written Exclusion for Opt-Outs from the Settlement Class.**  Subject to Court approval, Class Members shall have the right to exclude themselves from the Settlement Class pursuant only to the procedure set forth in the Class Notice and approved by the Court.  Any Class Member seeking such exclusion must serve a written request for exclusion by the Opt-Out Deadline.  Any Class Member that serves such a request shall not be included in the definition of Settlement Class Member and shall have no rights with respect to the Settlement Fund or any of the Injunctive Relief set forth in this Settlement Agreement.  Settling Defendants reserve their legal rights and defenses, including, but not limited to, any defenses relating to whether any excluded Class Member is a Class Member or has standing to bring a claim against any Settling Defendant.  Each Class Member that does not file a timely and appropriate written request for exclusion in accordance with the procedures set forth in the Class Notice shall be bound by all of the terms of this Agreement, including the releases defined in Paragraphs 42 and 43, and by all

proceedings, orders, and judgments in this action, even if any such person or entity has pending, or subsequently initiates, litigation, arbitration, or any other claim, action, or proceeding against any or all of the Releasees relating to any Released Claim.

49.     **Failure to Properly Exclude.**  Subject to Court approval, a request for exclusion that does not comply with all of the provisions set forth in the applicable Class Notice will be invalid, and the person(s) or entity(ies) serving such an invalid request shall be deemed a Settlement Class Member of the Settlement Class and shall be bound by the Agreement upon entry of the Final Judgment and Order of Dismissal.

50.     **Identification of Opt-Outs.**  Provider Co-Lead Counsel shall, within twenty (20) business days of the Opt-Out Deadline, provide Settling Defendants with a list and copies of all opt-out requests they received in the Provider Actions and shall file with the Court a list of all persons and entities who timely and validly opted out of the settlement.

51.     **Settling Defendants' Right to Rescind.**  Settling Defendants shall have the right to rescind this Agreement under the terms of the *In Camera* Supplement, separate and apart from the additional bases for rescission set forth below in Paragraph 53.  If Settling Defendants do not rescind this Agreement, there shall be no reduction of the Settlement Fund by reason of any Opt-Outs.

G.     **STAY OF PROCEEDINGS**

52.     **Stay.**  Upon execution of this Agreement, the Parties agree to seek from the Court a stay of any and all proceedings against Settling Defendants in the Provider Actions, other than those incident to the settlement process, and agree to extensions of time with respect to any court filings necessary to effectuate such stay(s).

**H.**   **RESCISSION IF AGREEMENT IS NOT APPROVED OR FINAL JUDGMENT NOT ENTERED**

53.   **Rescission.**   The Provider Class Representatives and Settling Defendants shall each, in their sole discretion, have the option to rescind this Agreement in its entirety if any of the following occurs:

a.   The Court refuses to approve this Agreement or any part hereof, including if the Court does not certify the Settlement Class in accordance with the specific Settlement Class definitions set forth in this Agreement;

b.   Such approval is modified or set aside on appeal;

c.   The Court does not enter the Final Judgment and Order of Dismissal provided for in Paragraph 8; or

d.   The Court enters the Final Judgment and Order of Dismissal and appellate review is sought, and on such review, such Final Judgment and Order of Dismissal is not affirmed in its entirety.

e.   Written notice of the exercise of any such right to rescind shall be given to the Parties according to the terms of Paragraph 60 and to the Escrow Agent within thirty (30) business days following the occurrence of such an event.  A modification or reversal on appeal of any Fee and Expense Award or any Service Award(s) awarded by the Court from the Settlement Fund shall not be deemed a modification of all or a part of the terms of this Agreement or such Final Judgment and Order of Dismissal, unless such modification or reversal has the effect of increasing Settling Defendants' financial obligation under this Agreement.

54.   **Return of the Settlement Funds.**   In the event that this Agreement does not become final as set forth in Paragraph 8, or this Agreement otherwise is rescinded or terminated,

then this Agreement shall be of no force or effect and any and all parts of the Settlement Fund caused to be deposited in the Escrow Account (other than Notice and Administration Costs reasonably and actually incurred up to the date of rescission or termination), along with any income accrued thereon, shall be returned to the entities that paid such amounts into the Escrow Account. Each entity will be paid in proportion to its respective contribution to the Settlement Fund. Such payments will be made from the Escrow Account by the Escrow Agent within ten (10) calendar days of rescission, termination, or a court's final determination denying final approval of the Agreement and/or certification of the Settlement Class, whichever occurs first. The Parties expressly reserve all of their rights if this Agreement is rescinded or does not become final.

55. **Resumption of Litigation.** The Parties agree, subject to approval of the Court, that in the event the Agreement is not approved by the Court, the Agreement does not become final pursuant to Paragraph 8, or the Agreement is otherwise rescinded, litigation of the Provider Actions against Settling Defendants will resume in a reasonable manner to be approved by the Court upon application by the Parties. The Parties expressly reserve all of their rights if this Agreement is rescinded or does not otherwise become final.

I. **MISCELLANEOUS**

56. **Confidentiality; Third-Party Communications.**

a. All Parties and counsel agree that all orders entered during the course of the Provider Actions relating to the Confidentiality of information shall survive this Agreement. All Parties and counsel agree to maintain the Confidentiality of the *In Camera* Supplement at all times and agree to take such steps as may be necessary to accomplish this.

b. No Confidentiality obligation prevents Settling Defendants from asserting any release as a defense.

c.     No Provider Class Representative, Settlement Class Counsel, or other agent for or representative of Provider Class Representatives or Class Members will make or cause to be made any public statement or comment regarding this settlement or Agreement until after the earlier of (i) the filing of the Preliminary Approval Motion or (ii) any public disclosures by Settling Defendants regarding this settlement or Agreement other than Settling Defendants' communications with their employees, auditors, and regulatory bodies.  Settling Defendants shall be entitled to make such disclosures to their employees, auditors, and regulatory bodies of the Agreement as they, in their sole discretion, determine are appropriate.  The Parties will coordinate regarding any public statement or comment regarding this settlement or Agreement before the filing of the Preliminary Approval Motion.  This provision does not apply to statements made in judicial filings necessary to obtain preliminary Court approval of the settlement or effectuate the Notice Plan approved by the Court.

d.     Excluding the communications authorized by the Court-approved Notice Plan, during the Monitoring Period, all Parties and their counsel will mutually agree upon the content of all website postings and communications to public-facing third parties regarding any matter related to this Agreement or any of the allegations in the Consolidated Amended Provider Complaints or answers.  The Parties shall use best efforts to give each other at least two (2) business days' notice of any draft posting or communication.  In the event such notice is not practicable, the Party shall contact the other Party's designee as early as possible regarding the communication and shall rely upon previously agreed-upon materials in any event.   The foregoing does not apply to Settling Defendants' communications with their employees, auditors, or regulatory bodies.  Quoting materials

in the public record is permissible and does not require agreement under this Paragraph 56. The Special Master appointed by the Court is the arbiter of what is contained in the public record.

      e.     Nothing in this Paragraph 56 limits the communications Settling Defendants may have with third parties regarding the operations of their business under the terms of this Agreement.

57.    **Communications with Class Members.**  Settlement Class Counsel acknowledge and agree that Settling Defendants have the right to communicate with Class Members for the purpose of encouraging them to remain in the Settlement Class, as well as for other legitimate business purposes, provided that, if any Class Member raises a question about the terms of the Agreement, Settling Defendants shall, as a part of the communication, refer such Class Member to the toll-free number or website established by the Settlement Notice Administrator and/or Settlement Claims Administrator.

58.    **Representation.**  All Settlement Class Counsel agree to recommend this Agreement to all Class Members and to zealously support the settlement as fair, adequate and reasonable to the Settlement Class.  All Settlement Class Counsel further agree that they will not file any objection to the settlement or take on any representation of any Opt-Out to the settlement in the Provider's capacity as an Opt-Out under any circumstances.

59.    **Binding Effect.**  Each and every covenant and agreement in this Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of all Provider Class Representatives, Settling Defendants, Releasors, Settlement Class Members, and their counsel.

60.    **Notice.**  Any and all notices, requests, consents, directives, or communications by any Party intended for any other Party related to this Agreement shall be in writing and shall,

unless expressly provided otherwise herein, be given by email, to the following persons, and shall

be addressed as follows:

**TO THE PROVIDER CLASS REPRESENTATIVES and SETTLEMENT CLASS:**

Edith M. Kallas
Joe R. Whatley, Jr.
W. Tucker Brown
Patrick J. Sheehan
Henry C. Quillen
WHATLEY KALLAS, LLP
ekallas@whatleykallas.com
jwhatley@whatleykallas.com
tbrown@whatleykallas.com
psheehan@whatleykallas.com
hquillen@whatleykallas.com

*Counsel for the Settlement Class*

**TO SETTLING DEFENDANTS:**

Karin A. DeMasi
Lauren R. Kennedy
CRAVATH, SWAINE & MOORE LLP
kdemasi@cravath.com
lkennedy@cravath.com

*Lead Counsel for the Blue Cross Blue Shield System; Blue Cross Blue Shield Association; Blue Cross and Blue Shield of Alabama; Blue Cross and Blue Shield of Arizona, Inc.; GuideWell Mutual Holding Corporation; Blue Cross and Blue Shield of Florida, Inc.; Blue Cross and Blue Shield of Kansas City; Blue Cross and Blue Shield of Massachusetts, Inc.; Blue Cross and Blue Shield of North Carolina; BlueCross BlueShield of South Carolina; BlueCross BlueShield of Tennessee, Inc.; Blue Cross Blue Shield of Wyoming; California Physicians' Service d/b/a Blue Shield of California; Capital Blue Cross; CareFirst, Inc.; CareFirst of Maryland, Inc.; Group Hospitalization and Medical Services, Inc.; CareFirst BlueChoice, Inc.; Hawaii Medical Service Association (Blue Cross and Blue Shield of Hawaii); Wellmark of South Dakota, Inc. (Wellmark Blue Cross and Blue Shield of South Dakota); Wellmark, Inc. (Wellmark Blue Cross and Blue Shield of Iowa); Triple-S Management Corporation; Triple-S Salud, Inc.*

Karin A. DeMasi
Lauren R. Kennedy
CRAVATH, SWAINE & MOORE LLP
kdemasi@cravath.com
lkennedy@cravath.com

Jeffrey J. Zeiger, P.C.
KIRKLAND & ELLIS LLP
jzeiger@kirkland.com

*Health Care Service Corporation, an Illinois Mutual Legal Reserve Company, including its divisions Blue Cross and Blue Shield of Illinois, Blue Cross and Blue Shield of Texas, Blue Cross and Blue Shield of New Mexico, Blue Cross and Blue Shield of Oklahoma, and Blue Cross and Blue Shield of Montana; Caring for Montanans, Inc., f/k/a Blue Cross and Blue Shield of Montana, Inc.*

Craig A. Hoover
E. Desmond Hogan
HOGAN LOVELLS US LLP
craig.hoover@hoganlovells.com
desmond.hogan@hoganlovells.com

*Elevance Health f/k/a Anthem, Inc., and all of its named subsidiaries in this action; Louisiana Health Service & Indemnity Company (Blue Cross and Blue Shield of Louisiana); BCBSM, Inc. (Blue Cross and Blue Shield of Minnesota); Horizon Healthcare Services, Inc. (Horizon Blue Cross and Blue Shield of New Jersey); Blue Cross & Blue Shield of Rhode Island; Cambia Health Solutions, Inc.; Regence Blue Shield of Idaho; Regence Blue Cross Blue Shield of Utah; Regence Blue Shield (of Washington); Regence Blue Cross Blue Shield of Oregon*

Jeffrey J. Zeiger, P.C.
KIRKLAND & ELLIS LLP
jzeiger@kirkland.com

*Highmark Inc.*

Sarah M. Gilbert
Honor R. Costello
CROWELL & MORING LLP
sgilbert@crowell.com
hcostello@crowell.com

*Blue Cross of Idaho Health Service, Inc.; Gemstone Holdings, Inc.; Blue Cross and Blue Shield of Kansas, Inc.; GoodLife Partners, Inc.; Blue Cross and Blue Shield of Nebraska; HealthyDakota Mutual Holdings; Blue Cross Blue Shield of North Dakota*

Alan D. Rutenberg
Diane R. Hazel
FOLEY & LARDNER LLP
arutenberg@foley.com
dhazel@foley.com

*USAble Mutual Insurance Company, d/b/a Arkansas Blue Cross and Blue Shield and as BlueAdvantage Administrators of Arkansas*

Todd Stenerson
Rachel Mossman Zieminski
ALLEN OVERY SHEARMAN STERLING US LLP
todd.stenerson@aoshearman.com
rachel.zieminski@aoshearman.com

Sarah Cylkowski
BODMAN PLC
scylkowski@bodmanlaw.com

*Blue Cross Blue Shield of Michigan Mutual Insurance Company; Blue Cross and Blue Shield of Vermont*

M. Patrick McDowell
Benje Bailey
James McCullough
BRUNINI, GRANTHAM, GROWER & HEWES, PLLC
pmcdowell@brunini.com
bbailey@brunini.com
jmccullough@brunini.com

*Blue Cross & Blue Shield of Mississippi, A Mutual Insurance Company*

John G. Schmidt Jr.
Anna Mercado Clark
PHILLIPS LYTLE LLP
jschmidt@phillipslytle.com
aclark@phillipslytle.com

*Excellus Health Plan, Inc., d/b/a Excellus BlueCross BlueShield*

John Briggs
AXINN, VELTROP & HARKRIDER, LLP
jbriggs@axinn.com

*Independence Health Group, Inc.*

Gwendolyn Payton
KILPATRICK TOWNSEND & STOCKTON LLP
gpayton@kilpatricktownsend.com

*Premera Blue Cross, d/b/a Premera Blue Cross Blue Shield of Alaska*

61.     **Integrated and Final Agreement.**   This Agreement comprises the entire, complete, and integrated statement of each and every term and provision agreed to by and among the Parties, and is not subject to any condition except as explicitly provided herein.   This Agreement supersedes any prior agreements, representations, warranties, statements, and/or understandings, whether written or oral, between or among the Parties regarding the subject matter of the Provider Actions.   The Parties hereby disclaim reliance on any prior agreements, representations, warranties, statements, and/or understandings, whether written or oral, in entering into and performing in accordance with this Agreement.   This Agreement may not be modified or amended except in writing executed by all Provider Class Representatives and Settling Defendants, and approved by the Court.

62.     **CAFA.**   Settling Defendants shall timely submit all materials required to be sent to appropriate federal and state officials pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715, and notify the Court that CAFA compliance has been accomplished.

63.     **Future Rules.**   Future BCBSA and Individual Blue Plan rules will comply with this Agreement.

64.     **Headers.**   The headings used in this Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Agreement.

65.     **No Party Is the Drafter.**   This Agreement was jointly negotiated, prepared, and drafted by Settlement Class Counsel and counsel for Settling Defendants.   This Agreement shall be construed and interpreted to effectuate the intent of the Parties, which is to provide for a complete resolution of the Released Claims with respect to the Releasors.   None of the Parties hereto shall be considered to be the drafter of this Agreement or any provision hereof for the

purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter thereof.

66. **Choice of Law.**  All terms of this Agreement shall be governed by and interpreted according to the substantive laws of the State of New York without regard to its choice-of-law or conflict-of-laws principles.

67. **Consent to Jurisdiction.**  Settling Defendants and each Settlement Class Member hereby irrevocably submit to the exclusive jurisdiction of the Court for any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement to resolve any disputes or controversies, including but not limited to disputes raised in accordance with the procedures listed in Appendix C, and enforcement regarding Released Claims and Paragraphs 42 and 43.

a. Settling Defendants and Class Members (including those who challenge their inclusion in the Settlement Class) also agree that, in the event of such dispute, they are and shall be subject to the jurisdiction of the Court and that the Court is a proper venue and convenient forum.  Settling Defendants, Settlement Class Members, and Settlement Class Counsel shall jointly urge the Court to include the provisions of this Paragraph 67 in its Final Judgment and Order of Dismissal.

68. **Non-Disparagement.**  All Parties and their counsel agree not to disparage, criticize or denigrate opposing Parties (individually or collectively) to any person or entity (including but not limited to any media outlet, television station or program, radio station or program, newspaper, magazine, website, editor, reporter, journalist, photo journalist, interviewer, author, columnist, blogger, mobile application (*e.g.*, Facebook, Twitter, Instagram), writer, or current or former employee or customer of any Settling Defendant) regarding any matter related to the Agreement

or any of the allegations, claims or defenses in the Consolidated Amended Provider Complaints, answers, or other filings in the Provider Actions.  Quoting materials currently in the public record as of the Execution Date would not constitute a violation of this Paragraph 68.  Nothing in this Paragraph 68 shall limit a party's ability to challenge conduct and/or provisions through the Monitoring Committee or in a court of law.

69.     **Voluntary Settlement and Agreement; Advice of Counsel.**  Each Party agrees and acknowledges that it has (i) thoroughly read and fully understands this Agreement and (ii) received or had an opportunity to receive independent legal advice from attorneys of its own choice with respect to the advisability of entering into this Agreement and the rights and obligations created by this Agreement.  Each Party agrees that this Agreement was negotiated in good faith by the Parties under the supervision and with the assistance of court-appointed mediators, and reflects a settlement that was reached voluntarily after consultation with competent legal counsel.  Each Party enters into this Agreement knowingly and voluntarily, in consideration of the promises, obligations, and rights set forth herein.

70.     **Authorization to Enter Agreement.**  The undersigned Settling Defendants' counsel represent that they are fully authorized to enter into and to execute this Agreement on behalf of the Settling Defendants on whose behalf they sign.  The undersigned Settlement Class Counsel represent that they are fully authorized to enter into and to execute this Agreement on behalf of Settlement Class Counsel, Provider Class Representatives, and the Settlement Class, subject to Court approval.

71.     **Non-Assignment.**  Provider Class Representatives represent and warrant that they have not assigned, transferred, conveyed, released, or discharged, voluntarily or involuntarily, or

by operation of law, to any other person or entity any interest in the claims, actions, or disputes which are the subject of this Agreement.

72.   **Inconsistency with the Settlement Agreement.**  In the event of a conflict between the terms of this Settlement Agreement, the *In Camera* Supplement, any Escrow Agreement, or any other document arising out of this Settlement Agreement, the terms of the Settlement Agreement, including the Appendices hereto, shall control.

73.   **Privilege.**  Nothing in this Settlement Agreement is intended to waive any right to assert that any information or material is protected from discovery by reason of any individual or common-interest privilege, attorney-client privilege, work-product protection, or other privilege, protection or immunity, or is intended to waive any right to contest any such claim of privilege, protection or immunity.

74.   **Savings Clause.**  Nothing in this Agreement is intended to or does require any Party to violate federal, state or local law.  Nor does anything in this Agreement require any Party to violate the terms of any existing contract that is in place as of the Effective Date of this Agreement, including any agreement to waive prompt pay obligations in return for a pre-payment (and such agreements remain permissible under this Settlement Agreement).  To the extent any relief in this Agreement requires new contractual terms with entities that are not parties to this Agreement, such changes will be implemented on a prospective, new-contract basis.

75.   **Execution in Counterparts.**  This Agreement may be executed in counterparts. Facsimile or .pdf signatures shall be considered valid signatures as of the date thereof, although the original signature pages shall thereafter be appended to this Agreement and filed with the Court.  On the Execution Date, Provider Class Representatives, Settlement Class Members, and

Settling Defendants shall be bound by the terms of this Agreement, and this Agreement shall not be rescinded except in accordance with Paragraphs 8(d), 33, 37(b), 51, or 53 of this Agreement.

Dated:  October 4, 2024

**<u>FOR THE SETTLING DEFENDANTS</u>:**

Karin A. DeMasi
Lauren R. Kennedy
CRAVATH, SWAINE & MOORE LLP
kdemasi@cravath.com
lkennedy@cravath.com

Lead Counsel for the Blue Cross Blue Shield System; Blue Cross Blue Shield Association; Blue Cross and Blue Shield of Alabama; Blue Cross and Blue Shield of Arizona, Inc.; GuideWell Mutual Holding Corporation; Blue Cross and Blue Shield of Florida, Inc.; Blue Cross and Blue Shield of Kansas City; Blue Cross and Blue Shield of Massachusetts, Inc.; Blue Cross and Blue Shield of North Carolina; BlueCross BlueShield of South Carolina; BlueCross BlueShield of Tennessee, Inc.; Blue Cross Blue Shield of Wyoming; California Physicians' Service d/b/a Blue Shield of California; Capital Blue Cross; CareFirst, Inc.; CareFirst of Maryland, Inc.; Group Hospitalization and Medical Services, Inc.; CareFirst BlueChoice, Inc.; Hawaii Medical Service Association (Blue Cross and Blue Shield of Hawaii); Wellmark of South Dakota, Inc. (Wellmark Blue Cross and Blue Shield of South Dakota); Wellmark, Inc. (Wellmark Blue Cross and Blue Shield of Iowa); Triple-S Management Corporation; Triple-S Salud, Inc.

Karin A. DeMasi
Lauren R. Kennedy
CRAVATH, SWAINE & MOORE LLP
kdemasi@cravath.com
lkennedy@cravath.com

Helen E. Witt
Jeffrey J. Zeiger, P.C.
KIRKLAND & ELLIS LLP
hwitt@kirkland.com
jzeiger@kirkland.com

Health Care Service Corporation, an Illinois Mutual Legal Reserve Company, including its divisions Blue Cross and Blue Shield of Illinois, Blue Cross and Blue Shield of Texas, Blue Cross and Blue Shield of New Mexico, Blue Cross and Blue Shield of Oklahoma, and Blue Cross and Blue Shield of Montana; Caring for Montanans, Inc., f/k/a Blue Cross and Blue Shield of Montana, Inc.

Dated:  October 4, 2024

**FOR THE SETTLING DEFENDANTS:**


_____
Karin A. DeMasi
Lauren R. Kennedy
CRAVATH, SWAINE & MOORE LLP
kdemasi@cravath.com
lkennedy@cravath.com

Lead Counsel for the Blue Cross Blue Shield System; Blue Cross Blue Shield Association; Blue Cross and Blue Shield of Alabama; Blue Cross and Blue Shield of Arizona, Inc.; GuideWell Mutual Holding Corporation; Blue Cross and Blue Shield of Florida, Inc.; Blue Cross and Blue Shield of Kansas City; Blue Cross and Blue Shield of Massachusetts, Inc.; Blue Cross and Blue Shield of North Carolina; BlueCross BlueShield of South Carolina; BlueCross BlueShield of Tennessee, Inc.; Blue Cross Blue Shield of Wyoming; California Physicians' Service d/b/a Blue Shield of California; Capital Blue Cross; CareFirst, Inc.; CareFirst of Maryland, Inc.; Group Hospitalization and Medical Services, Inc.; CareFirst BlueChoice, Inc.; Hawaii Medical Service Association (Blue Cross and Blue Shield of Hawaii); Wellmark of South Dakota, Inc. (Wellmark Blue Cross and Blue Shield of South Dakota); Wellmark, Inc. (Wellmark Blue Cross and Blue Shield of Iowa); Triple-S Management Corporation; Triple-S Salud, Inc.


_____
Karin A. DeMasi
Lauren R. Kennedy
CRAVATH, SWAINE & MOORE LLP
kdemasi@cravath.com
lkennedy@cravath.com

Helen E. Witt
Jeffrey J. Zeiger, P.C.
KIRKLAND & ELLIS LLP
hwitt@kirkland.com
jzeiger@kirkland.com

Health Care Service Corporation, an Illinois Mutual Legal Reserve Company, including its divisions Blue Cross and Blue Shield of Illinois, Blue Cross and Blue Shield of Texas, Blue Cross and Blue Shield of New Mexico, Blue Cross and Blue Shield of Oklahoma, and Blue Cross and Blue Shield of Montana; Caring for Montanans, Inc., f/k/a Blue Cross and Blue Shield of Montana, Inc.

*Craig A. Hoover /EAJ*

_____

Craig A. Hoover
E. Desmond Hogan
HOGAN LOVELLS US LLP
craig.hoover@hoganlovells.com
desmond.hogan@hoganlovells.com

Elevance Health f/k/a Anthem, Inc., and all of its named subsidiaries in this action; Louisiana Health Service & Indemnity Company (Blue Cross and Blue Shield of Louisiana); BCBSM, Inc. (Blue Cross and Blue Shield of Minnesota); Horizon Healthcare Services, Inc. (Horizon Blue Cross and Blue Shield of New Jersey); Blue Cross & Blue Shield of Rhode Island; Cambia Health Solutions, Inc.; Regence Blue Shield of Idaho; Regence Blue Cross Blue Shield of Utah; Regence Blue Shield (of Washington); Regence Blue Cross Blue Shield of Oregon


_____

Helen E. Witt
Jeffrey J. Zeiger, P.C.
KIRKLAND & ELLIS LLP
hwitt@kirkland.com
jzeiger@kirkland.com

Highmark Inc.


_____

Sarah M. Gilbert
Honor R. Costello
CROWELL & MORING LLP
sgilbert@crowell.com
hcostello@crowell.com

Blue Cross of Idaho Health Service, Inc.; Gemstone Holdings, Inc.; Blue Cross and Blue Shield of Kansas, Inc.; GoodLife Partners, Inc.; Blue Cross and Blue Shield of Nebraska; HealthyDakota Mutual Holdings; Blue Cross Blue Shield of North Dakota

Craig A. Hoover
E. Desmond Hogan
HOGAN LOVELLS US LLP
craig.hoover@hoganlovells.com
desmond.hogan@hoganlovells.com

Elevance Health f/k/a Anthem, Inc., and all of its named subsidiaries in this action; Louisiana
Health Service & Indemnity Company (Blue Cross and Blue Shield of Louisiana); BCBSM, Inc.
(Blue Cross and Blue Shield of Minnesota); Horizon Healthcare Services, Inc. (Horizon Blue
Cross and Blue Shield of New Jersey); Blue Cross & Blue Shield of Rhode Island; Cambia
Health Solutions, Inc.; Regence Blue Shield of Idaho; Regence Blue Cross Blue Shield of Utah;
Regence Blue Shield (of Washington); Regence Blue Cross Blue Shield of Oregon

Helen E. Witt
Jeffrey J. Zeiger, P.C.
KIRKLAND & ELLIS LLP
hwitt@kirkland.com
jzeiger@kirkland.com

Highmark Inc.

Sarah M. Gilbert
Honor R. Costello
CROWELL & MORING LLP
sgilbert@crowell.com
hcostello@crowell.com

Blue Cross of Idaho Health Service, Inc.; Gemstone Holdings, Inc.; Blue Cross and Blue Shield
of Kansas, Inc.; GoodLife Partners, Inc.; Blue Cross and Blue Shield of Nebraska;
HealthyDakota Mutual Holdings; Blue Cross Blue Shield of North Dakota

Craig A. Hoover
E. Desmond Hogan
HOGAN LOVELLS US LLP
craig.hoover@hoganlovells.com
desmond.hogan@hoganlovells.com

Elevance Health f/k/a Anthem, Inc., and all of its named subsidiaries in this action; Louisiana Health Service & Indemnity Company (Blue Cross and Blue Shield of Louisiana); BCBSM, Inc. (Blue Cross and Blue Shield of Minnesota); Horizon Healthcare Services, Inc. (Horizon Blue Cross and Blue Shield of New Jersey); Blue Cross & Blue Shield of Rhode Island; Cambia Health Solutions, Inc.; Regence Blue Shield of Idaho; Regence Blue Cross Blue Shield of Utah; Regence Blue Shield (of Washington); Regence Blue Cross Blue Shield of Oregon

Helen E. Witt
Jeffrey J. Zeiger, P.C.
KIRKLAND & ELLIS LLP
hwitt@kirkland.com
jzeiger@kirkland.com

Highmark Inc.

Sarah M. Gilbert
Honor R. Costello
CROWELL & MORING LLP
sgilbert@crowell.com
hcostello@crowell.com

Blue Cross of Idaho Health Service, Inc.; Gemstone Holdings, Inc.; Blue Cross and Blue Shield of Kansas, Inc.; GoodLife Partners, Inc.; Blue Cross and Blue Shield of Nebraska; HealthyDakota Mutual Holdings; Blue Cross Blue Shield of North Dakota

_Alan D. Rutenberg_

Alan D. Rutenberg
Diane R. Hazel
FOLEY & LARDNER LLP
arutenberg@foley.com
dhazel@foley.com

USAble Mutual Insurance Company, d/b/a Arkansas Blue Cross and Blue Shield and as
BlueAdvantage Administrators of Arkansas

Todd Stenerson
Rachel Mossman Zieminski
ALLEN OVERY SHEARMAN STERLING US LLP
todd.stenerson@aoshearman.com
rachel.zieminski@aoshearman.com

Sarah Cylkowski
BODMAN PLC
scylkowski@bodmanlaw.com

Blue Cross Blue Shield of Michigan Mutual Insurance Company; Blue Cross and Blue Shield of
Vermont

M. Patrick McDowell
Benje Bailey
James McCullough
BRUNINI, GRANTHAM, GROWER & HEWES, PLLC
pmcdowell@brunini.com
bbailey@brunini.com
jmccullough@brunini.com

Blue Cross & Blue Shield of Mississippi, A Mutual Insurance Company

_____
Alan D. Rutenberg
Diane R. Hazel
FOLEY & LARDNER LLP
arutenberg@foley.com
dhazel@foley.com

USAble Mutual Insurance Company, d/b/a Arkansas Blue Cross and Blue Shield and as
BlueAdvantage Administrators of Arkansas

_____
Todd Stenerson
Rachel Mossman Zieminski
ALLEN OVERY SHEARMAN STERLING US LLP
todd.stenerson@aoshearman.com
rachel.zieminski@aoshearman.com

Sarah Cylkowski
BODMAN PLC
scylkowski@bodmanlaw.com

Blue Cross Blue Shield of Michigan Mutual Insurance Company; Blue Cross and Blue Shield of
Vermont

_____
M. Patrick McDowell
Benje Bailey
James McCullough
BRUNINI, GRANTHAM, GROWER & HEWES, PLLC
pmcdowell@brunini.com
bbailey@brunini.com
jmccullough@brunini.com

Blue Cross & Blue Shield of Mississippi, A Mutual Insurance Company

_____

Alan D. Rutenberg
Diane R. Hazel
FOLEY & LARDNER LLP
arutenberg@foley.com
dhazel@foley.com

USAble Mutual Insurance Company, d/b/a Arkansas Blue Cross and Blue Shield and as
BlueAdvantage Administrators of Arkansas

_____

Todd Stenerson
Rachel Mossman Zieminski
ALLEN OVERY SHEARMAN STERLING US LLP
todd.stenerson@aoshearman.com
rachel.zieminski@aoshearman.com

Sarah Cylkowski
BODMAN PLC
scylkowski@bodmanlaw.com

Blue Cross Blue Shield of Michigan Mutual Insurance Company; Blue Cross and Blue Shield of
Vermont

_____

M. Patrick McDowell
Benje Bailey
James McCullough
BRUNINI, GRANTHAM, GROWER & HEWES, PLLC
pmcdowell@brunini.com
bbailey@brunini.com
jmccullough@brunini.com

Blue Cross & Blue Shield of Mississippi, A Mutual Insurance Company



John G. Schmidt Jr.
Anna Mercado Clark
PHILLIPS LYTLE LLP
jschmidt@phillipslytle.com
aclark@phillipslytle.com

Excellus Health Plan, Inc., d/b/a Excellus BlueCross BlueShield

John Briggs
AXINN, VELTROP & HARKRIDER, LLP
jbriggs@axinn.com

Independence Health Group, Inc.

Gwendolyn Payton
KILPATRICK TOWNSEND & STOCKTON LLP
gpayton@kilpatricktownsend.com

Premera Blue Cross, d/b/a Premera Blue Cross Blue Shield of Alaska

_____
John G. Schmidt Jr.
Anna Mercado Clark
PHILLIPS LYTLE LLP
jschmidt@phillipslytle.com
aclark@phillipslytle.com

Excellus Health Plan, Inc., d/b/a Excellus BlueCross BlueShield


John Briggs
AXINN, VELTROP & HARKRIDER, LLP
jbriggs@axinn.com

Independence Health Group, Inc.


_____
Gwendolyn Payton
KILPATRICK TOWNSEND & STOCKTON LLP
gpayton@kilpatricktownsend.com

Premera Blue Cross, d/b/a Premera Blue Cross Blue Shield of Alaska

_____
John G. Schmidt Jr.
Anna Mercado Clark
PHILLIPS LYTLE LLP
jschmidt@phillipslytle.com
aclark@phillipslytle.com

Excellus Health Plan, Inc., d/b/a Excellus BlueCross BlueShield


_____
John Briggs
AXINN, VELTROP & HARKRIDER, LLP
jbriggs@axinn.com

Independence Health Group, Inc.


_____
Gwendolyn Payton
KILPATRICK TOWNSEND & STOCKTON LLP
gpayton@kilpatricktownsend.com

Premera Blue Cross, d/b/a Premera Blue Cross Blue Shield of Alaska

PROVIDERS' COUNSEL

Edith M. Kallas – *Co-Lead Counsel*
Whatley Kallas, LLP

Joe R. Whatley, Jr. – *Co-Lead Counsel*
Whatley Kallas, LLP

W. Tucker Brown
Whatley Kallas, LLP

Patrick J. Sheehan
Whatley Kallas, LLP

Henry C. Quillen
Whatley Kallas, LLP

E. Kirk Wood, Jr. – *Local Facilitating Counsel*
Wood Law Firm, LLC

_____

Aaron S. Podhurst – *Plaintiffs' Steering Committee*
Peter Prieto
Podhurst Orseck P.A.

_____

Dennis Pantazis – *Plaintiffs' Steering Committee*
Brian Clark
Wiggins Childs Pantazis Fisher Goldfarb, LLC

_____

U.W. Clemon – *Plaintiffs Steering Committee*
U.W. Clemon, LLC

_____

Barry A. Ragsdale – *Plaintiffs' Liaison Counsel*
Dominick Feld Hyde, PC

E. Kirk Wood, Jr. – *Local Facilitating Counsel*
Wood Law Firm, LLC

Aaron S. Podhurst – *Plaintiffs' Steering Committee*
Peter Prieto
Podhurst Orseck P.A.

Dennis Pantazis – *Plaintiffs' Steering Committee*
Brian Clark
Wiggins Childs Pantazis Fisher Goldfarb, LLC

U.W. Clemon – *Plaintiffs Steering Committee*
U.W. Clemon, LLC

Barry A. Ragsdale – *Plaintiffs' Liaison Counsel*
Dominick Feld Hyde, PC

_____

E. Kirk Wood, Jr. – *Local Facilitating Counsel*
Wood Law Firm, LLC


_____

Aaron S. Podhurst – *Plaintiffs' Steering Committee*
Peter Prieto
Podhurst Orseck P.A.


_____

Dennis Pantazis – *Plaintiffs' Steering Committee*
Brian Clark
Wiggins Childs Pantazis Fisher Goldfarb, LLC


_____

U.W. Clemon – *Plaintiffs Steering Committee*
U.W. Clemon, LLC


_____

Barry A. Ragsdale – *Plaintiffs' Liaison Counsel*
Dominick Feld Hyde, PC

_____

E. Kirk Wood, Jr. – *Local Facilitating
Counsel*
Wood Law Firm, LLC

_____

Aaron S. Podhurst – *Plaintiffs' Steering
Committee*
Peter Prieto
Podhurst Orseck P.A.

_____

Dennis Pantazis – *Plaintiffs' Steering
Committee*
Brian Clark
Wiggins Childs Pantazis Fisher Goldfarb,
LLC

_____

U.W. Clemon – *Plaintiffs Steering Committee*
U.W. Clemon, LLC

_____

Barry A. Ragsdale – *Plaintiffs' Liaison
Counsel*
Dominick Feld Hyde, PC

_____
E. Kirk Wood, Jr. – *Local Facilitating Counsel*
Wood Law Firm, LLC

_____
Aaron S. Podhurst – *Plaintiffs' Steering Committee*
Peter Prieto
Podhurst Orseck P.A.

_____
Dennis Pantazis – *Plaintiffs' Steering Committee*
Brian Clark
Wiggins Childs Pantazis Fisher Goldfarb, LLC

_____
U.W. Clemon – *Plaintiffs Steering Committee*
U.W. Clemon, LLC

Barry A. Ragsdale – *Plaintiffs' Liaison Counsel*
Dominick Feld Hyde, PC

Dennis C. Reich
Reich & Binstock, LLP

J. Mark White
Augusta S. Dowd
Linda Flippo
White Arnold & Dowd, P.C.

Nicholas B. Roth
Julia Smeds Roth
Eyster Key Tubb Roth Middleton & Adams,
LLP

Van Bunch
Bonnet Fairbourn Friedman & Balint, P.C.

David A. Balto
The Law Offices of David A. Balto

Robert J. Axelrod

Dennis C. Reich
Reich & Binstock, LLP

J. Mark White
Augusta S. Dowd
Linda Flippo
White Arnold & Dowd, P.C.

Nicholas B. Roth
Julia Smeds Roth
Eyster Key Tubb Roth Middleton & Adams,
LLP

Van Bunch
Bonnet Fairbourn Friedman & Balint, P.C.

David A. Balto
The Law Offices of David A. Balto

Robert J. Axelrod

_____
Dennis C. Reich
Reich & Binstock, LLP


_____
J. Mark White
Augusta S. Dowd
Linda Flippo
White Arnold & Dowd, P.C.

_____
Nicholas B. Roth
Julia Smeds Roth
Eyster Key Tubb Roth Middleton & Adams,
LLP


_____
Van Bunch
Bonnet Fairbourn Friedman & Balint, P.C.


_____
David A. Balto
The Law Offices of David A. Balto


_____
Robert J. Axelrod

_____
Dennis C. Reich
Reich & Binstock, LLP


_____
J. Mark White
Augusta S. Dowd
Linda Flippo
White Arnold & Dowd, P.C.


_____
Nicholas B. Roth
Julia Smeds Roth
Eyster Key Tubb Roth Middleton & Adams,
LLP


_____
Van Bunch
Bonnett Fairbourn Friedman & Balint, P.C.


_____
David A. Balto
The Law Offices of David A. Balto


_____
Robert J. Axelrod

---

Dennis C. Reich
Reich & Binstock, LLP

---

J. Mark White
Augusta S. Dowd
Linda Flippo
White Arnold & Dowd, P.C.

---

Nicholas B. Roth
Julia Smeds Roth
Eyster Key Tubb Roth Middleton & Adams,
LLP

---

Van Bunch
Bonnet Fairbourn Friedman & Balint, P.C.

---

David A. Balto
The Law Offices of David A. Balto

---

Robert J. Axelrod

_____
Dennis C. Reich
Reich & Binstock, LLP




_____
J. Mark White
Augusta S. Dowd
Linda Flippo
White Arnold & Dowd, P.C.




_____
Nicholas B. Roth
Julia Smeds Roth
Eyster Key Tubb Roth Middleton & Adams,
LLP




_____
Van Bunch
Bonnet Fairbourn Friedman & Balint, P.C.




_____
David A. Balto
The Law Offices of David A. Balto


_____
Robert J. Axelrod



Joey K. James
Bunch & James

_____
W. Daniel Miles, III
Beasley Allen Crow Methvin Portis & Miles,
P.C.

_____
Richard S. Frankowski
The Frankowski Firm, LLC

_____
Michael C. Dodge
Glast Phillips & Murray, P.C.

_____
John C. Davis
Law Office of John C. Davis

_____
Michael E. Gurley, Jr.

_____
Joey K. James
Bunch & James

_____
W. Daniel Miles, III
Beasley Allen Crow Methvin Portis & Miles, P.C.

_____
Richard S. Frankowski
The Frankowski Firm, LLC

_____
Michael C. Dodge
Glast Phillips & Murray, P.C.

_____
John C. Davis
Law Office of John C. Davis

_____
Michael E. Gurley, Jr.

_____
Joey K. James
Bunch & James

_____
W. Daniel Miles, III
Beasley Allen Crow Methvin Portis & Miles,
P.C.

_____
Richard S. Frankowski
The Frankowski Firm, LLC

_____
Michael C. Dodge
Glast Phillips & Murray, P.C.

_____
John C. Davis
Law Office of John C. Davis

_____
Michael E. Gurley, Jr.

_____
Joey K. James
Bunch & James


_____
W. Daniel Miles, III
Beasley Allen Crow Methvin Portis & Miles,
P.C.


_____
Richard S. Frankowski
The Frankowski Firm, LLC


Michael C. Dodge
_____
Michael C. Dodge
Glast Phillips & Murray, P.C.


_____
John C. Davis
Law Office of John C. Davis


_____
Michael E. Gurley, Jr.

_____
Joey K. James
Bunch & James


_____
W. Daniel Miles, III
Beasley Allen Crow Methvin Portis & Miles,
P.C.


_____
Richard S. Frankowski
The Frankowski Firm, LLC


_____
Michael C. Dodge
Glast Phillips & Murray, P.C.


_____
John C. Davis
Law Office of John C. Davis


_____
Michael E. Gurley, Jr.

_____
Joey K. James
Bunch & James

_____
W. Daniel Miles, III
Beasley Allen Crow Methvin Portis & Miles,
P.C.

_____
Richard S. Frankowski
The Frankowski Firm, LLC

_____
Michael C. Dodge
Glast Phillips & Murray, P.C.

_____
John C. Davis
Law Office of John C. Davis

_____
Michael E. Gurley, Jr.

_____
Mark K. Gray
Gray & White, PLLC


_____
Lynn W. Jinks, III
Christina D. Crow
Jinks Crow & Dickson, P.C.


_____
Stephen M. Hansen
Law Office of Stephen M. Hansen


_____
Myron C. Penn
Penn & Seaborn, LLC


_____
Harley S. Tropin
Kozyak, Tropin & Throckmorton, P.A.


_____
J. Preston Strom, Jr.
Strom Firm, LLC

_____
Mark K. Gray
Gray & White, PLLC

_____
Lynn W. Jinks, III
Christina D. Crow
Jinks Crow & Dickson, P.C.

_____
Stephen M. Hansen
Law Office of Stephen M. Hansen

_____
Myron C. Penn
Penn & Seaborn, LLC

_____
Harley S. Tropin
Kozyak, Tropin & Throckmorton, P.A.

_____
J. Preston Strom, Jr.
Strom Firm, LLC

_____
Mark K. Gray
Gray & White, PLLC


_____
Lynn W. Jinks, III
Christina D. Crow
Jinks Crow & Dickson, P.C.


_____   09/12/2024
Stephen M. Hansen
Law Office of Stephen M. Hansen


_____
Myron C. Penn
Penn & Seaborn, LLC


_____
Harley S. Tropin
Javier A. Lopez
Kozyak Tropin & Throckmorton, P.A.


_____
J. Preston Strom, Jr.
Strom Firm, LLC

_____
Mark K. Gray
Gray & White, PLLC


_____
Lynn W. Jinks, III
Christina D. Crow
Jinks Crow & Dickson, P.C.


_____
Stephen M. Hansen
Law Office of Stephen M. Hansen

_____
Myron C. Penn
Penn & Seaborn, LLC


_____
Harley S. Tropin
Kozyak, Tropin & Throckmorton, P.A.


_____
J. Preston Strom, Jr.
Strom Firm, LLC

---

Mark K. Gray
Gray & White, PLLC

---

Lynn W. Jinks, III
Christina D. Crow
Jinks Crow & Dickson, P.C.

---

Stephen M. Hansen
Law Office of Stephen M. Hansen

---

Myron C. Penn
Penn & Seaborn, LLC

---

Harley S. Tropin
Kozyak, Tropin & Throckmorton, P.A.

---

J. Preston Strom, Jr.
Strom Firm, LLC

_____

Mark K. Gray
Gray & White, PLLC


_____

Lynn W. Jinks, III
Christina D. Crow
Jinks Crow & Dickson, P.C.


_____

Stephen M. Hansen
Law Office of Stephen M. Hansen


_____

Myron C. Penn
Penn & Seaborn, LLC


_____

Harley S. Tropin
Kozyak, Tropin & Throckmorton, P.A.


*J. Preston Strom, Jr.*
_____

J. Preston Strom, Jr.
Strom Firm, LLC

_C. Wes Pittman_

C. Wes Pittman

_____

Thomas V. Bender
Dirk L. Hubbard
Horn Aylward & Bandy, LLC

_____

Robert B. Roden
David Shelby
Don Freeman
Shelby Roden, LLC

_____

Gregory S. Cusimano
Cusimano, Roberts & Mills, LLC

_____

Gary E. Mason
Mason LLP

_____

Brian E. Wojtalewicz
Wojtalewicz Law Firm, Ltd.

_____

C. Wes Pittman


_____

Thomas V. Bender
Dirk L. Hubbard
Horn Aylward & Bandy, LLC


_____

Robert B. Roden
David Shelby
Don Freeman
Shelby Roden, LLC


_____

Gregory S. Cusimano
Cusimano, Roberts & Mills, LLC


_____

Gary E. Mason
Mason LLP


_____

Brian E. Wojtalewicz
Wojtalewicz Law Firm, Ltd.

_____

C. Wes Pittman


_____

Thomas V. Bender
Dirk L. Hubbard
Horn Aylward & Bandy, LLC


_____

Robert B. Roden
David Shelby
Don Freeman
Shelby Roden, LLC


_____

Gregory S. Cusimano
Cusimano, Roberts & Mills, LLC


_____

Gary E. Mason
Mason LLP


_____

Brian E. Wojtalewicz
Wojtalewicz Law Firm, Ltd.

_____

C. Wes Pittman


_____

Thomas V. Bender
Dirk L. Hubbard
Horn Aylward & Bandy, LLC


_____

Robert B. Roden
David Shelby
Don Freeman
Shelby Roden, LLC


_____

Gregory S. Cusimano
Cusimano, Roberts & Mills, LLC


_____

Gary E. Mason
Mason LLP


_____

Brian E. Wojtalewicz
Wojtalewicz Law Firm, Ltd.

_____
C. Wes Pittman


_____
Thomas V. Bender
Dirk L. Hubbard
Horn Aylward & Bandy, LLC


_____
Robert B. Roden
David Shelby
Don Freeman
Shelby Roden, LLC


_____
Gregory S. Cusimano
Cusimano, Roberts & Mills, LLC

DocuSigned by:

*Gary Mason*

D406323B208D4A1...
_____
Gary E. Mason
Mason LLP


_____
Brian E. Wojtalewicz
Wojtalewicz Law Firm, Ltd.

_____
C. Wes Pittman


_____
Thomas V. Bender
Dirk L. Hubbard
Horn Aylward & Bandy, LLC


_____
Robert B. Roden
David Shelby
Don Freeman
Shelby Roden, LLC


_____
Gregory S. Cusimano
Cusimano, Roberts & Mills, LLC


_____
Gary E. Mason
Mason LLP


_____
Brian E. Wojtalewicz
Wojtalewicz Law Firm, Ltd.

Michael L. Murphy
Bailey Glasser LLP


_____

Charles Clinton Hunter
Hayes Hunter PC


_____

Archie C. Lamb, Jr.


_____

Lance Michael Sears
Sears & Associates, P.C.


_____

Paul Lundberg
Lundberg Law, PLC


_____

Jessica Dillon
Dillon & Findley, P.C.

_____
Michael L. Murphy
Bailey Glasser LLP

_____
Charles Clinton Hunter
Hayes Hunter PC

_____
Archie C. Lamb, Jr.

_____
Lance Michael Sears
Sears & Associates, P.C.

_____
Paul Lundberg
Lundberg Law, PLC

_____
Jessica Dillon
Dillon & Findley, P.C.

---

Michael L. Murphy
Bailey Glasser LLP

---

Charles Clinton Hunter
Hayes Hunter PC

---

Archie C. Lamb, Jr.

---

Lance Michael Sears
Sears & Associates, P.C.

---

Paul Lundberg
Lundberg Law, PLC

---

Jessica Dillon
Dillon & Findley, P.C.

_____
Michael L. Murphy
Bailey Glasser LLP


_____
Charles Clinton Hunter
Hayes Hunter PC


_____
Archie C. Lamb, Jr.


_____
Lance Michael Sears
Sears & Associates, P.C.


_____
Paul Lundberg
Lundberg Law, PLC


_____
Jessica Dillon
Dillon & Findley, P.C.

_____
Michael L. Murphy
Bailey Glasser LLP


_____
Charles Clinton Hunter
Hayes Hunter PC


_____
Archie C. Lamb, Jr.


_____
Lance Michael Sears
Sears & Associates, P.C.

_____
Paul Lundberg
Lundberg Law, PLC


_____
Jessica Dillon
Dillon & Findley, P.C.

_____
Michael L. Murphy
Bailey Glasser LLP


_____
Charles Clinton Hunter
Hayes Hunter PC


_____
Archie C. Lamb, Jr.


_____
Lance Michael Sears
Sears & Associates, P.C.


_____
Paul Lundberg
Lundberg Law, PLC


Jessica Dillon
Dillon & Findley, P.C.

Gwen Simons, Esg.

Gwen Simons
Simons & Associates Law. P.A.

_____

Allyson Dirksen
Heidman Law Firm, **P.L.L.C.**

_____

Gwen Simons
Simons & Associates Law, P.A.

_____

Allyson Dirksen
Heidman Law Firm, P.L.L.C.

**PROVIDERS**

_Jerry L. Conway_

Jerry L. Conway, D.C.


_____
InMed Group, Inc. f/k/a Crenshaw
Community Hospital
Name:_____
Title:_____


_____
Bullock County Hospital
Name:_____
Title:_____


_____
Evergreen Medical Center, L.L.C.
Name:_____
Title:_____


_____
Jackson Medical Center
Name:_____
Title:_____

**PROVIDERS**

Jerry L. Conway, D.C.

InMed Group, Inc. f/k/a Crenshaw
Community Hospital
Name: _JACQUES  JABER_
Title: _CEO_

Bullock County Hospital
Name: _Robert Li_
Title: _9/23/24_

Evergreen Medical Center, L.L.C.
Name: ___
Title: ___

Jackson Medical Center
Name: ___
Title: ___

**PROVIDERS**

_____
Jerry L. Conway, D.C.

_____
InMed Group, Inc. f/k/a Crenshaw
Community Hospital
Name:_____
Title:_____

_____
Bullock County Hospital
Name:_____
Title:_____

_____
Evergreen Medical Center, L.L.C.
Name: Tom McLendon
Title: Administrator

_____
Jackson Medical Center
Name: Tom McLendon
Title: Administrator

IN RE: SETTLEMENT AGREEMENT
Blue Cross Blue Shield
Antitrust Litigation
MDL #2406

_____

Ivy Creek Healthcare
Name: Michael Bruce
Title: CEO


_____

Elmore Community Hospital
Name: Michael Bruce
Title: CEO


_____

Georgiana Medical Center
Name: Michael Bruce
Title: CEO


_____

Lake Martin Community Hospital
Name: Michael Bruce
Title: CEO

_Joseph D. Ackerson PhD_
Joseph D. Ackerson, Ph.D.


_____
Janine Nesin, P.T., D.P.T., O.C.S.


_____
Roman Nation, M.D.


_____
Neuromonitoring Services of America, Inc.
Name:_____
Title:_____

_____
Joseph D. Ackerson, Ph.D.


_____
Janine Nesin, P.T., D.P.T., O.C.S.


_____
Roman Nation, M.D.


_____
Neuromonitoring Services of America, Inc.
Name:_____
Title:_____

_____
Joseph D. Ackerson, Ph.D.


_____
Janine Nesin, P.T., D.P.T., O.C.S.

_____
Roman Nation, M.D.


_____
Neuromonitoring Services of America, Inc.
Name:_____
Title:_____

_____
Joseph D. Ackerson, Ph.D.


_____
Janine Nesin, P.T., D.P.T., O.C.S.


_____
Roman Nation, M.D.


_____
Neuromonitoring Services of America, Inc.
Name:_____
Title:_____

*Kristi Henderson*

CC6040EFB556523FBE256023B540E7BB   contract**works**

Confluent Health, LLC
Name: **Kristi Henderson**

Title: **CEO**


*Kristi Henderson*

CC6040EFB556523FBE256023B540E7BB   contract**works**.

ProRehab, Inc.
Name: **Kristi Henderson**

Title: **CEO**


*Kristi Henderson*

CC6040EFB556523FBE256023B540E7BB   contract**works**.

Texas Physical Therapy Specialists, Inc.
Name: **Kristi Henderson**

Title: **CEO**


*Kristi Henderson*

CC6040EFB556523FBE256023B540E7BB   contract**works**.

BreakThrough Physical Therapy, Inc.
Name: **Kristi Henderson**

Title: **CEO**


*Kristi Henderson*

CC6040EFB556523FBE256023B540E7BB   contract**works**.

Breakthrough Cary PT, LLC as successor
to Dunn Physical Therapy, Inc.
Name: **Kristi Henderson**

Title: **CEO**

Gaspar Physical Therapy, P.C.
Name: Paul D. Gaspar
Title: President


Timothy H. Hendlin, D.C.


Greater Brunswick Physical Therapy, P.A.
Name:
Title:


Pam Barnwell, as Personal Representative for
Charles Barnwell, D.C.

_____
Gaspar Physical Therapy, P.C.
Name:_____
Title:_____


_____
Timothy H. Hendlin, D.C.


_____
Greater Brunswick Physical Therapy, P.A.
Name:_____
Title:_____


_____
Pam Barnwell, as Personal Representative for
Charles Barnwell, D.C.

_____
Gaspar Physical Therapy, P.C.
Name:_____
Title:_____


_____
Timothy H. Hendlin, D.C.


_____
Greater Brunswick Physical Therapy, P.A.
Name:____PETER COOPER____
Title:____President / OWNER____


_____
Pam Barnwell, as Personal Representative for
Charles Barnwell, D.C.

_____

Gaspar Physical Therapy, P.C.
Name:_____
Title:_____


_____

Timothy H. Hendlin, D.C.


_____

Greater Brunswick Physical Therapy, P.A.
Name:_____
Title:_____


_____

Pam Barnwell, as Personal Representative for
Charles Barnwell, D.C.

*Dr. Judith Kanzic, D.C.*
_____
Judith Kanzic, D.C.


_____
Brian Roadhouse, D.C.


_____
Nishi Ambasht, as Personal Representative
and Trustee for Saket K. Ambasht, M.D.

_____
Judith Kanzic, D.C.


_____
Brian Roadhouse, D.C.


_____
Nishi Ambasht, as Personal Representative
and Trustee for Saket K. Ambasht, M.D.

_____
Judith Kanzic, D.C.


_____
Brian Roadhouse, D.C.


_____
Nishi Ambasht, as Personal Representative
and Trustee for Saket K. Ambasht, M.D.

*James V. Snowden, PhD*

Snowden Olwan Psychological Services

Name: James V Snowden, PhD

Title: Psychologist

Matthew Caldwell, M.D.

Mishanta Reyes, D.O.

_____
Snowden Olwan Psychological Services
Name:_____
Title:_____


_____
Matthew Caldwell, M.D.


_____
Mishanta Reyes, D.O.

Snowden Olwan Psychological Services
Name:_____
Title:_____


_____

Matthew Caldwell, M.D.


Mishanta Reyes, D.O.

## Appendix A:  List of Primary Licensees

| Legal Name | Principal Licensed State(s) |
|---|---|
| Aware Integrated, Inc. | MN |
| Blue Cross and Blue Shield of Alabama | AL |
| Blue Cross and Blue Shield of Kansas City | MO |
| Blue Cross and Blue Shield of Kansas, Inc. | KS |
| Blue Cross and Blue Shield of Massachusetts, Inc. | MA |
| Blue Cross Blue Shield of Michigan Mutual Insurance Company | MI, VT |
| Blue Cross & Blue Shield of Mississippi, A Mutual Insurance Company | MS |
| Blue Cross and Blue Shield of North Carolina | NC |
| Blue Cross & Blue Shield of Rhode Island | RI |
| Blue Cross and Blue Shield of South Carolina | SC |
| BlueCross BlueShield of Tennessee, Inc. | TN |
| Blue Cross and Blue Shield of Wyoming | WY |
| California Physician's Service | CA |
| Cambia Health Solutions, Inc. | ID, OR, UT, WA |
| Capital Blue Cross | PA |
| CareFirst, Inc. | DC, MD, VA |
| Elevance Health Inc. | CA, CO, CT, GA, IN, KY, ME, MO, NV, NH, NY, OH, VA, WI |
| Gemstone Holdings, Inc. | ID |
| GoodLife Partners, Inc. | NE |
| GuideWell Mutual Holding Corporation | FL, PR |
| Hawaii Medical Service Association | HI |
| Health Care Service Corporation, a Mutual Legal Reserve Company | IL, MT, NM, OK, TX |
| HealthyDakota Mutual Holdings | ND |
| Highmark Inc. | DE, PA, WV, NY |

| Legal Name | Principal Licensed State(s) |
|---|---|
| Horizon Healthcare Services, Inc. | NJ |
| Independence Health Group, Inc. | PA |
| Lifetime Healthcare, Inc. | NY |
| Louisiana Health Service & Indemnity Co. | LA |
| PREMERA | AK, WA |
| Prosano, Inc. | AZ |
| USAble Mutual Insurance Company | AR |
| Wellmark, Inc. | IA, SD |

### Appendix B:  List of Provider Actions

| Name | Court | Case No. |
|---|---|---|
| *Am. Surgical Assistants v. Blue Cross & Blue Shield of Ala.* | USDC S.D. Tex. | 4:16-cv-01146 |
| | USDC N.D. Ala. | 2:16-cv-00775 |
| *Anesthesia Assocs. of Ann Arbor PLLC v. Blue Cross Blue Shield of Mich.* | USDC E.D. Mich. | 2:20-cv-12916 |
| | USDC N.D. Ala. | 2:23-cv-00461 |
| *Caldwell v. Blue Cross & Blue Shield of Ala.* | USDC N.D. Ala. | 2:19-cv-00565 |
| *Chiropractic Plus, P.C. v. Blue Cross & Blue Shield of Ala.* | USDC S.D. Tex. | 4:13-cv-00234 |
| | USDC N.D. Ala. | 2:13-cv-00303 |
| *Conway v. Blue Cross & Blue Shield of Ala.* | USDC N.D. Ala. | 2:12-cv-02532 |
| *Conway v. Blue Cross & Blue Shield of Ala.* | USDC D. Ariz. | 2:15-cv-01349 |
| | USDC N.D. Ala. | 2:15-cv-01345 |
| *Conway v. Blue Cross & Blue Shield of Ala.* | USDC D. Kan. | 5:15-cv-04905 |
| | USDC N.D. Ala. | 2:15-cv-01346 |
| *Conway v. Blue Cross & Blue Shield of Ala.* | USDC D.N.D. | 3:15-cv-00109 |
| | USDC N.D. Ala. | 2:15-cv-02295 |
| *Conway v. Blue Cross & Blue Shield of Ala.* | USDC D.P.R. | 3:15-cv-02002 |
| | USDC N.D. Ala. | 2:15-cv-01475 |
| *Conway v. Blue Cross & Blue Shield of Ala.* | USDC D. Wyo. | 2:15-cv-00140 |
| | USDC N.D. Ala. | 2:15-cv-01550 |
| *Conway v. Blue Cross & Blue Shield of Ala.* | USDC E.D. Pa. | 2:15-cv-03963 |
| | USDC N.D. Ala. | 2:15-cv-01349 |
| *Conway v. Blue Cross & Blue Shield of Ala.* | USDC S.D. Miss. | 3:15-cv-00519 |
| | USDC N.D. Ala. | 2:15-cv-01347 |
| *Conway v. Blue Cross & Blue Shield of Ala.* | USDC S.D.N.Y. | 1:15-cv-05539 |
| | USDC N.D. Ala. | 2:15-cv-01348 |
| *Hosp. Serv. Dist. 1 of Parish of E. Baton Rouge, La. v. Blue Cross & Blue Shield of Ala.* | USDC M.D. La. | 3:15-cv-00523 |
| | USDC N.D. Ala. | 2:15-cv-01476 |

| Name | Court | Case No. |
|---|---|---|
| *Houston Home Dialysis, LP v. Blue Cross & Blue Shield of Ala.* | USDC S.D. Tex. | 4:19-cv-03791 |
| | USDC N.D. Ala. | 2:19-cv-01765 |
| *Melson v. Blue Cross & Blue Shield of Ala.* | USDC N.D. Ala. | 3:13-cv-00625 |
| *Quality Dialysis One, L.L.C. v. Blue Cross & Blue Shield of Ala.* | USDC S.D. Tex. | 4:15-cv-03491 |
| | USDC N.D. Ala. | 2:15-cv-02296 |
| *Reyes v. Blue Cross & Blue Shield of Ala.* | USDC N.D. Ala. | 2:21-cv-01235 |
| *Richmond SA Servs., Inc. v. Blue Cross & Blue Shield of Ala.* | USDC S.D. Tex. | 4:16-cv-01140 |
| | USDC N.D. Ala. | 2:16-cv-00774 |
| *The Surgical Ctr. for Excellence, LLLP v. Blue Cross & Blue Shield of Ala.* | USDC N.D. Fla. | 5:12-cv-00388 |
| | USDC N.D. Ala. | 2:13-cv-00001 |

**Appendix C:  Monitoring Committee, Compliance, and Dispute Resolution Rules**

1.      **Monitoring Committee.**

      a.      The Monitoring Committee shall be formed within fifteen (15) business days of the Effective Date and shall be comprised of (i) two members appointed collectively by Settling Defendants to represent the Blue System ("Defendant MC Members"); (ii) two members appointed by Provider Co-Lead Counsel to represent the Settlement Class ("Provider MC Members"); and (iii) one member appointed by the Court. The appointment of the initial members of the Monitoring Committee shall be approved by the Court through a proposed order to be submitted by the Parties.

      b.      Any Party may challenge an opposing Party's proposed Monitoring Committee member(s) for good cause.  Such disputes will be resolved by the Court.

      c.      Settling Defendants and Provider Co-Lead Counsel may replace their respective appointed Monitoring Committee member(s) at any time for good cause.  A new proposed Monitoring Committee member may be challenged by an opposing Party for good cause, and such disputes will be resolved by the Court.

      d.      If a Monitoring Committee member's employment or employment role changes, any opposing Party may challenge the person's continued membership on the Monitoring Committee.

      e.      The Monitoring Committee shall meet virtually at least once a quarter.

      f.      Any person that receives any information or materials related to the Monitoring Committee or its activities will keep such information and materials Confidential.

g.     The Monitoring Committee and/or any Monitoring Committee member may be held liable only for willful misconduct or gross negligence and for no other reason.

2.     **Dispute Resolution.**

a.     This Paragraph 2 of Appendix C describes the full scope of the Monitoring Committee's authority to consider and decide disputes between Settlement Class Members and Settling Defendants.  Notwithstanding anything else in this Paragraph 2 of Appendix C or in the Settlement Agreement, the Monitoring Committee is not empowered to, and shall not, consider or decide disputes with any person or entity relating to the scope or applicability of the releases set forth in Paragraphs 42 and 43 of the Settlement Agreement.  All disputes relating to the releases shall be heard only by the Court, as set forth in Paragraph 67.

b.     During the Monitoring Period, a Settlement Class Member who believes that BCBSA or a Settling Individual Blue Plan has violated the Settlement Agreement may submit a written notice of the alleged violation ("Provider Grievance") to Provider MC Members.  The Provider Grievance shall describe in sufficient detail the alleged violation of the Settlement Agreement and the Settling Defendant(s) that the Settlement Class Member believes to be responsible, and shall attach any documents, declarations, or other material the Settlement Class Member believes is relevant to the alleged violation.  Upon receiving a Provider Grievance, the Provider MC Members shall evaluate, and if appropriate investigate to the extent they deem reasonable, the circumstances alleged therein.

c.     If, following a reasonable investigation, Provider MC Members determine that an allegation set forth in a Provider Grievance is not meritorious, is *de minimis*, is not

eligible for dispute resolution as set forth below, or is not within the scope of the Settlement Agreement, they will designate the allegation dismissed ("Dismissed Grievance") and communicate that result to the Settlement Class Member that submitted the Provider Grievance. The Provider MC Members shall maintain a record of all Dismissed Grievances and shall provide a summary of such Dismissed Grievances in an annual report to the Monitoring Committee.

       d.     If, following a reasonable investigation, Provider MC Members conclude either through their own investigation or diligence, or through their investigation of one or more Provider Grievances, that facts exist sufficient to establish a good faith basis that Settling Defendants are no longer in compliance with Paragraphs 11–17, 19 or 21–26 of the Settlement Agreement ("Lack of Compliance Violation"), or that a Settling Individual Blue Plan has engaged in pervasive and repeated conduct sufficient to establish a violation of the requirements of Paragraphs 13, 14(a), 16 or 18, 20–21 of the Settlement Agreement ("Systematic Violation"), then the Provider MC Members may commence the dispute resolution process.

       e.     To commence the dispute resolution process for a Lack of Compliance Violation or a Systematic Violation, the Provider MC Members shall provide a written notice of the violation ("Violation Notice") to the full Monitoring Committee. The Violation Notice shall include (i) all facts supporting the basis for a Lack of Compliance Violation or a Systematic Violation set forth in sufficient detail to allow Defendant MC Members and any necessary Settling Defendant(s) to investigate the circumstances; (ii) all supporting documentation, including any applicable Provider Grievance(s) with accompanying documents, declarations or other supporting materials as described in

Paragraph 2(b) of Appendix C; and (iii) a detailed description of any action taken by the Provider MC Members with respect to such Provider Grievance(s), including the details of any investigation that led to the good faith basis to conclude a violation may exist.

f.      Within ten (10) business days of receiving all materials set forth in Paragraph 2(e) of Appendix C, the Defendant MC Members shall provide a written plan of action to Provider MC Members, setting forth the steps that Defendant MC Members will take to investigate the alleged Lack of Compliance Violation or Systematic Violation ("Action Plan").   Within twenty (20) business days of transmitting the Action Plan to Provider MC Members, the Defendant MC Members shall provide a further written response (the "Final Response") to the Monitoring Committee that (i) describes the results of the investigation undertaken pursuant to the Action Plan and Defendant MC Members' conclusions with respect to the Violation Notice; and (ii) where applicable, sets forth the plan to redress any Lack of Compliance Violation or Systematic Violation identified thereby.   The timelines set forth in this paragraph may be extended by mutual agreement of the Provider MC Members and the Defendant MC Members.

g.      The aforementioned process set forth in Paragraphs 2(c)–(f) of Appendix C of transmitting Violation Notice(s), Action Plan(s) and Final Response(s) between the Provider MC Members and the Defendant MC Members is the "Dispute Resolution Process."   The Dispute Resolution Process, along with any materials or information exchanged in connection with the Dispute Resolution Process, shall be kept Confidential.

h.      If the Provider MC Members are satisfied with the resolution to a Violation Notice set forth in the Action Plan(s) and Final Response(s), no further steps shall be necessary in connection with the Violation Notice.

i.      If there is any dispute remaining after the completion of the Dispute Resolution Process ("Violation Dispute"), such dispute shall be set forth in writing by the Provider MC Members and submitted to the full Monitoring Committee for resolution within thirty (30) business days, along with full and complete copies of the relevant Provider Grievance(s), Violation Notice(s), Action Plan(s) and Final Response(s) and any other relevant communications or documentation.   Within thirty (30) business days of receiving the submission, the Monitoring Committee will address any Violation Dispute and determine what if any additional actions should be taken to address and/or resolve the Violation Dispute.

j.      If both Provider MC Members determine that a dispute is urgent and that it requires resolution more quickly than the schedule contained in this Paragraph 2 of Appendix C, they may propose a shorter schedule for resolution.   The Monitoring Committee will decide whether to adopt the shorter schedule.

k.      The Monitoring Committee's actions with respect to a Violation Dispute are final and non-appealable, except that (i) any Settling Defendant may submit to the Court for final determination any Monitoring Committee action that the Settling Defendant believes imposes obligations above and beyond, or different from, those required by the Settlement Agreement; and (ii) any Provider MC Member may, upon vote of a majority of the Monitoring Committee, submit to the Court for resolution any claim that a Settling Defendant has failed to comply with requirements imposed by the Monitoring Committee.

**BlueCross BlueShield.**

**Appendix D:  Provider <u>BlueCard Claim</u> Appeal Form**

*\*Denotes required field*

| \*Today's Date (MM/DD/YY): |
|---|

| **PROVIDER INFORMATION** | |
|---|---|
| \*Provider Name | \*Contact Name |
| \*NPI | \*Contact Phone Number |
| Contact Email | Contact Fax Number |
| \*Contact Address | |

| **MEMBER/CLAIM INFORMATION** | |
|---|---|
| \*Member Name | \*Claim Number |
| \*Member ID (including prefix) | \*Denial Code(s) |
| \*Date(s) of Service (MM/DD/YY) | |

| **TYPE OF APPEAL\*** |
|---|
| **(CHECK ONE OF THE FOLLOWING REASONS FOR DENIAL OR CLAIMED UNDERPAYMENT, AND ATTACH <u>ALL</u> SUPPORTING DOCUMENTATION, INCLUDING ANY NECESSARY MEMBER AUTHORIZATION)** |

| | |
|---|---|
| | **Contract Term(s)**:  Original claim was not paid or processed in accordance with contract terms. |
| | **Coordination of Benefits**:  Original claim denied or closed pending receipt of additional information from another insurer or other reason related to COB. |
| | **Corrected Claim**:  Previously processed claim was denied for a defect and/or error and requires a correction.   Please specify the correction to be made:_____ |
| | **Duplicate Claim**:  Original claim denied as duplicate to a previously finalized claim. |
| | **Timely Filing**:  Original claim denied for untimely filing (and proof of timely filing is attached). |
| | **Precertification/notification or Prior-Authorization**:  Original claim denied or Provider received reduced payment for failure to notify or pre-authorize services or exceeding authorized limits (and proof of valid notification/authorization is attached). |
| | **Medical Necessity**:  Original claim denied as a result of medical necessity/utilization review decision. |
| | **Referral Denial**:  Original claim denied as invalid or missing a required referral. |
| | **Request for Additional Information**:  Original claim denied due to missing or incomplete information (and missing information or identification of such information in previously-submitted records is attached). |
| | **Other Type of Denial/Claimed Underpayment**: |
| **Brief Explanation**: | |

**FOR PROVIDER USE ONLY**
**INCOMPLETE OR DISALLOWED SUBMISSIONS WILL BE RETURNED**
**NOTHING IN THIS FORM CREATES A RIGHT TO APPEAL WHERE NONE EXISTS UNDER AN APPLICABLE AGREEMENT OR LAW**