FILED

2024 Oct-14 PM 12:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

# Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

|  |  |
|---|---|
| IN RE:<br>BLUE CROSS BLUE SHIELD<br>ANTITRUST LITIGATION<br>(MDL NO. 2406) | Master File No. 2:13-CV-20000-RDP<br><br>This Document Relates to<br>Provider Track Cases |

**PROVIDER CO-LEAD COUNSEL JOINT DECLARATION IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF PROPOSED PROVIDER CLASS SETTLEMENT**

**We, Joe R. Whatley, Jr. and Edith M. Kallas, declare**:

1.      We are partners in the law firm Whatley Kallas LLP. On April 26, 2013, the Court appointed us to serve as interim co-lead counsel for the putative Provider Plaintiff class in the Provider Actions. Doc. No. 61. Our firm resume is attached hereto as Exhibit A.

2.      Prior to filing the first Provider Action in this proceeding, we extensively researched the claims and conferred with leading healthcare antitrust economists. The lawyers in our firm have a long history of representing healthcare providers of all types in litigation against health insurance companies, including the Blues. Based on that experience, we brought extensive institutional knowledge to the case. We have been actively involved in prosecuting and resolving the Provider Actions from the onset, are familiar with their proceedings, and have personal knowledge of the matters set forth herein. If called upon and sworn as witnesses, we could competently testify thereto.

3.      Unless otherwise defined herein, all capitalized terms have the meanings ascribed to them in the Settlement Agreement, attached as Exhibit A to Provider Plaintiffs' Motion for Preliminary Approval of Proposed Class Settlement.

4.      We submit this declaration in support of Provider Plaintiffs' Motion for Preliminary Approval of Proposed Class Settlement, pursuant to Rule 23 of the Federal Rules of Civil Procedure.

5.      If approved, the Settlement, which provides a $2.8 billion cash payment into a settlement fund, investments by the Blues of hundreds of millions of dollars in system improvements for the benefit of providers, and significant injunctive relief, will resolve the Provider Actions.

### Summary of the Litigation

6.      We began the Provider litigation on July 24, 2012, when our firm filed the initial complaint in *Conway v. Blue Cross & Blue Shield of Alabama*, Case No. 12-cv-2532-RPD (N.D. Ala.). That complaint, like the operative complaint today, challenged the Blues' use of exclusive Service Areas as a restraint of trade that violates the Sherman Act. *Conway*, Doc. No. 1. The Provider Plaintiffs allege that the Blues' practices result in reduced competition, reduced choices for the administration of health care benefit plans, increased costs, and less innovation and efficiency, and lower reimbursement rates to Providers. Fourth Amended Complaint, Doc. No. 1083, at ¶ 12.

7.      In 2012, we filed briefs and made oral argument before the Judicial Panel on Multidistrict Litigation for centralization of this litigation before this Court in the Northern District of Alabama. In late 2012, the JPML centralized *Conway* and several actions by Subscriber Plaintiffs in this Court. Since that time, other Provider Actions have been filed directly in this Court or have been transferred to it by the JPML.

8.      Even prior to our appointment as interim co-lead counsel for the Provider Actions, we began working to organize the Provider Actions and counsel for the Provider Plaintiffs

("Providers' Counsel"). We completed that process after our appointment. In 2013, we filed a Consolidated Amended Complaint, Doc. No. 86, which the Blues moved to dismiss (along with the Subscriber Plaintiffs' complaint) on numerous grounds:

- The Plaintiffs failed to allege an unlawful act because the Blues' exclusive Service Areas arose from common-law trademark rights;

- The alleged conspiracy cannot be judged by the *per se* standard;

- The Blues' practices are exempt from antitrust liability under the McCarran-Ferguson Act because they constitute the "business of insurance";

- The Plaintiffs failed to allege plausible markets;

- Challenges to Blue Cross and Blue Shield of Michigan's rates are barred by the filed rate doctrine.

Doc. Nos. 110, 111, 120. Many of the Blues also moved to dismiss for lack of personal jurisdiction and improper venue.

9.     In response to the motions to dismiss, we filed briefs on issues relating solely to the Provider Plaintiffs, and we worked with the Subscriber Plaintiffs on briefs on issues relating to all Plaintiffs. Doc. Nos. 148–52, 154–56. This Court largely denied the motions to dismiss, but it allowed discovery and further briefing on the Blues' challenges to jurisdiction and venue. *In re Blue Cross Blue Shield Antitrust Litig.*, 26 F. Supp. 3d 1172 (N.D. Ala. 2014).

10.     The Plaintiffs commenced discovery on the merits, jurisdiction, and venue. After consulting with the parties, in 2015 this Court streamlined the litigation by designating the Alabama cases as bellwethers. Doc. No. 469. In 2016, the Court denied the motions to dismiss for lack of personal jurisdiction and improper venue. *In re Blue Cross*, 225 F. Supp. 3d 1269 (N.D. Ala. 2016). Over the following years, the Court ruled on several motions for summary judgment.

Notably, the Court held that the "Plaintiffs have presented evidence of an aggregation of competitive restraints … which, considered together, constitute a *per se* violation of the Sherman Act." *In re Blue Cross*, 308 F. Supp. 3d 1241, 1267 (N.D. Ala. 2018), *appeal denied*, 2018 WL 7152887 (11th Cir. Dec. 12, 2018). Following the Blues' abandonment of the "National Best Efforts" rule in April 2021, this Court held that the Plaintiffs' claims would be governed by the rule of reason for the time period following April 2021. Doc. No. 2933.

### Discovery

11.      Discovery in this case was a massive undertaking, and nationwide in scope. The Provider Plaintiffs served discovery requests for structured data on every Defendant, and then met and conferred with each Defendant regarding that data. The Provider Plaintiffs obtained detailed information on medical claims and reimbursements from each of the defendants, totaling many terabytes of data. With the help of their experts, the Provider Plaintiffs then vetted, synthesized, and analyzed that data, using it as an input into the most sophisticated model for hospital reimbursement ever created.

12.      Simultaneously, the Provider Plaintiffs served requests for documents on each Defendant, and met and conferred with the Defendants regarding the scope of the requests. The Defendants produced 75 million pages of documents, which the Provider Plaintiffs reviewed both manually and through technology-assisted review. Manual review alone consumed approximately 134,000 hours of attorney time. The Provider Plaintiffs also responded to the Defendants' requests for discovery, which were served on 156 Provider Plaintiffs and nonparties. The Provider Plaintiffs collected, reviewed, and produced approximately 1.5 million pages of documents in response to the Blues' requests.

13.     The Provider Plaintiffs also participated in more than 200 depositions of Defendants and nonparties. In addition, they defended more than 40 depositions of Provider Plaintiff class representatives and class members.

14.     Throughout discovery, the Provider Plaintiffs litigated many discovery disputes. We participated in more than 30 discovery hearings, which led to the issuance of 91 discovery orders. Along with the Subscriber Plaintiffs, we challenged the Defendants' privilege designations for hundreds of thousands of documents. Special Master R. Bernard Harwood ultimately de-designated, in whole or in part, over 450,000 documents from Defendants' privilege logs. In addition, we participated in monthly status conferences with Magistrate Judge Michael T. Putnam and the Court.

15.     Overall, the Provider Plaintiffs have litigated 26 motions to dismiss, taken discovery from 37 Defendants and numerous nonparties, briefed 76 discovery motions, participated in more than 30 discovery hearings that led to 91 discovery orders, obtained and reviewed the production of 75 million of pages of documents dating back to the 1920s, synthesized and analyzed terabytes of structured data, served expert reports based on that data, participated in more than 200 depositions of Defendants and nonparties, defended more than 40 depositions of Provider Plaintiff class representatives and putative class members, collected and reviewed documents in response to the Defendants' requests for production from 156 Provider Plaintiffs and nonparties, filed and opposed several motions for summary judgment, and moved for class certification.

## Jurisdiction, Merits, and Class Certification

16.     The Defendants have filed numerous motions intended to dispose of the Provider Plaintiffs' claims in whole or in part, either for lack of jurisdiction or on the merits. In addition, the Provider Plaintiffs have moved for class certification.

17.     Several of the Defendants moved to dismiss the Provider Plaintiffs' claims for lack of jurisdiction and improper venue in the Northern District of Alabama. The Provider Plaintiffs opposed these motions. To preserve their claims if this Court found it did not have jurisdiction, the Provider Plaintiffs also filed separate actions against some of these defendants in other districts so the cases could be transferred to this Court by the JPML. On June 18, 2014, the Court provided guidance on "what rule of law should be applied to determine personal jurisdiction and venue in the antitrust context" without deciding the motions. Doc. No. 204 at 24–29. Some Moving Defendants renewed their motions to dismiss for lack of personal jurisdiction and improper venue on December 22, 2014. On May 27, 2015, the Court held that, "[d]ue to the need to develop a more complete record on these issues . . . , Plaintiffs are entitled to conduct jurisdictional discovery." Doc. No. 369 at 3. The Court denied Moving Defendants' motions without prejudice and held that Moving Defendants "may renew those motions after jurisdictional discovery is complete."

18.     After the Provider Plaintiffs conducted extensive jurisdictional discovery, including document discovery, interrogatories, and depositions, certain Defendants moved to dismiss for lack of personal jurisdiction and improper venue. The Court denied the motion, holding that the Court may exercise personal jurisdiction over Defendants in Alabama, and that venue is appropriate in the Northern District of Alabama. Doc. No. 925 at 63. Some Defendants moved pursuant to 28 U.S.C. § 1292(b) to amend and certify the Court's decision for immediate interlocutory appeal. On February 14, 2017, the Court denied the motion and declined to certify the order for immediate appeal. *Conway* Doc. No. 445.

19.     The Defendants also filed two rounds of motions to dismiss the Provider Plaintiffs' claims under Rule 12(b)(6). After copious briefing and argument, these motions were largely denied in 2014 and 2017. Doc. Nos. 204, 1306.

20.     In 2016 and 2017, the Provider Plaintiffs participated in two "Economics Day" sessions with the Court, for which the Provider Plaintiffs prepared expert testimony and other evidence to educate the Court about the economic theories of the case.

21.     In 2017, the Provider Plaintiffs, Subscriber Plaintiffs, and Defendants filed cross-motions for summary judgment on the standard of review for the Plaintiffs' antitrust claims. The Plaintiffs advocated for the *per se* rule, and the Blues advocated for the rule of reason. Briefing on the motions consumed hundreds of pages and cited hundreds of exhibits. In 2018, the Court ruled that the Plaintiffs' claims relating to Exclusive Service Areas and the National Best Efforts rules would be judged under the *per se* rule, and claims relating to price-fixing through the BlueCard program would be judged under the rule of reason. Doc. No. 2063. The Court certified that decision for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Doc. No. 2202. The Defendants petitioned the Eleventh Circuit to hear the appeal, and the Provider Plaintiffs opposed the petition. The Eleventh Circuit denied the petition. *In re Blue Cross Blue Shield Antitrust Litigation*, No. 18-90020 (11th Cir. Dec. 12, 2018).

22.     In April 2021, the Defendants eliminated the National Best Efforts rule. On this basis, they moved for summary judgment that the Provider Plaintiffs' claims must all be judged under the rule of reason, including claims relating to the period before April 2021. The Provider Plaintiffs opposed this motion. The Court held that claims relating to the period before April 2021 would still be judged by the *per se* rule, while all of the Provider Plaintiffs' claims after that time, including claims for injunctive relief, would be judged by the rule of reason. Doc. No. 2933. The Provider Plaintiffs' group boycott claim, for which they had sought *per se* treatment, would also be judged by the rule of reason for the entire damages period. Doc. No. 2934. Additionally, in 2018 the Supreme Court decided *Ohio v. American Express Co.*, 585 U.S. 529 (2018), on which

7

the Blues relied to argue that the Provider Plaintiffs could not show anticompetitive harm and had not presented a reliable damages model because the Blues operate a two-sided platform. While the Provider Plaintiffs strongly disagree, this issue has not been resolved. Like any complex antitrust case involving sophisticated Defendants, there were numerous other risks that remained through trial and beyond on appeal.

23.     The Provider Plaintiffs and the Defendants moved for summary judgment or partial summary judgment on several other merits issues:

- In 2017, the Defendants moved for summary judgment on the ground that they operate as a single entity with respect to management of their trademarks, and thus cannot conspire. In 2021, the Provider Plaintiffs moved for summary judgment on the same issue, on the grounds that allocating territory and restricting output can never be the work of a single entity. The Court denied both motions. Doc. Nos. 2063, 3093.

- In 2021, the Defendants moved for summary judgment on the grounds that the Provider Plaintiffs' claims for damages were time-barred and speculative. The Court denied the motion. Doc. No. 3092.

- In 2021, the Defendants moved for summary judgment on all the Provider Plaintiffs' claims relating to Provider Plaintiffs other than hospitals, and claims relating to any Blue system rules other than Exclusive Service Areas and BlueCard. The Defendants argued that the Provider Plaintiffs had not shown injury or damages for these claims. The Court denied the motion. Doc. No. 3102.

- In 2021, the Provider Plaintiffs moved for summary judgment regarding the Defendants' common-law trademark rights, asserting that the Blues either never

acquired those rights or abandoned them. The Court denied the motion. Doc. No. 3103.

24.     In 2020, the Provider Plaintiffs moved to certify classes of Alabama providers, which Defendants opposed.  Between 2019 and 2021, the parties briefed several related *Daubert* motions.  On November 17, 2022, the Court requested supplemental briefing on class certification, which the parties filed in 2023. In connection with their motion for class certification, the Provider Plaintiffs submitted reports from six expert witnesses. The Provider Plaintiffs defended depositions of each of their experts, and they deposed the Defendants' nine experts as well. The motion for class certification and the *Daubert* motions are currently pending.

25.     As the litigation has proceeded for the past twelve years, the providers' lawyers, led by Whatley Kallas, have spent approximately $100 million, most of which was used to develop the largest collection of healthcare claims data in any case in history and for leading healthcare antitrust economists to evaluate that data and to develop econometric models for the case.

**Mediation**

26.     While litigating the case, the Provider Plaintiffs and the Blues engaged in mediation for nine years, from 2015 to 2024. As that length of time indicates, the negotiations were hard-fought and covered what would eventually become the Settlement Agreement's injunctive relief in detail.  Alongside Special Master Ed Gentle and Kip Harbison, who saw the negotiations through to completion, the parties used three mediators at different stages: Judge Layn Phillips and Judge Gary Feess in the early years, and Robert Meyer in the later years. All told, the parties had dozens of in-person mediation sessions, plus countless calls and virtual meetings. On October 4, 2024, the parties executed a Settlement Agreement.

27.     Obtaining injunctive relief to address the Provider issues at the heart of this litigation was critical to resolution. Because each Blue Plan generally contracts with Providers

only in that plan's Service Area, Providers must submit claims through the BlueCard system when they treat members of another Blue Plan. For decades, Providers have complained that BlueCard is a non-transparent program that causes additional costs, inefficiencies, and frustration. The Settlement Agreement significantly improves how Providers will be able to deal with the Blues, bringing more transparency, efficiency, and Blue Plan accountability. This relief is not something the Blues would have done on their own; the Provider Plaintiffs obtained this relief through years of litigation and negotiation, and the Blues estimate that implementing it will cost them hundreds of millions of dollars. Providers who do not opt out of the settlement will receive relief including BlueCard Transformation; a BlueCard Prompt Pay Commitment; Service Level Agreements; a BlueCard Executive; a Real-Time Messaging System; a National Executive Resolution Group; Modification of the Contiguous Area Rule; Expansion of Contiguous Area Contracts to Affiliated Hospitals; and protections from certain Affiliates and All Products Clauses.

28.      Providers' day-to-day interactions with the Blues will improve as well. With major upgrades to the Blues' technical capabilities, and commitments from the Blues to make more information available, Providers will have access to more information, and more timely information, than ever before: Third-Party Information; Minimum Data Requirements; a Blue Plan Common Appeals Form; Pre-Authorization Standards; and Telehealth Relief.

29.      The Settlement Agreement will also expand Providers' opportunity to enter into value-based contracts with the Blues: Minimum Level of Value-Based Care and Best Practices for Value-Based Care.

30.      Finally, the Provider Plaintiffs have made sure the commitments of the Settlement Agreement are enforceable. For a period of five years from the Effective Date of the Settlement, a Monitoring Committee comprised of members appointed by the Settling Defendants, Provider Co-

Lead Counsel, and the Court shall review new rules or regulations proposed by BCBSA and submitted to the Monitoring Committee, and shall adjudicate disputes related to the Injunctive Relief.

31.     The Provider Plaintiffs' Settlement is a package of relief that re-shapes the Blues systems in ways that are designed to address the harms of the Blue Card system and more than meets the requirements for preliminary approval. Like the Subscriber Plaintiffs' settlement, which won final approval, the Provider Plaintiffs' Settlement changes the Blues' practices to the benefit of the Settlement Class, while providing historic monetary relief. The Settlement Class meets the requirements of Rules 23(a) and 23(b)(3)—the Provider Plaintiffs are seeking certification of a 23(b)(3) class, not a 23(b)(2) class. Moreover, the Settlement easily satisfies Rule 23(e). And, as explained in the Provider Plaintiffs' Notice Motion, the Notice Plan has been designed to achieve the best practicable notice to the Settlement Class.

32.     After reaching agreement on the terms of the settlement, the Provider Plaintiffs undertook a separate allocation process. The purpose of the allocation process was to determine a fair division of the settlement fund among the different types of healthcare providers within the settlement class. The Provider Plaintiffs selected Kenneth Feinberg, perhaps the foremost authority on the distribution of settlement funds in large, complex cases, as the allocation expert. Mr. Feinberg also advised the Subscriber Plaintiffs on the division of their settlement fund. The result of the allocation process was the division of settlement funds reflected in the Provider Plaintiffs' Plan of Distribution.

33.     During these processes, the Provider Plaintiffs assembled a Provider Work Group consisting of different types of Providers, including large hospital systems, teaching hospitals, physicians, and ancillary providers. The Provider Work Group participated in some of the

mediation sessions, working with representatives of the Blue Plans and BCBSA to develop potential injunctive relief. In addition to participating in mediation sessions, members of the Provider Work Group spent countless hours giving valuable input to Settlement Class Counsel on the negotiation of the injunctive relief terms.

## Conclusion

34.     Through twelve years of hard-fought litigation and settlement negotiations, we have a comprehensive understanding of this case, including the risks associated with continuing to litigate. In our judgment, the Settlement Agreement represents an excellent outcome for the Settlement Class, with historic monetary relief and significant injunctive relief that will benefit Settlement Class members for years to come.

We declare under the penalty of perjury that the foregoing is true and correct.

Executed this the 14th day of October, 2024.


_____
Edith M. Kallas

_____
Joe R. Whatley, Jr.

# Exhibit A



## I.    Introduction

**The attorneys of Whatley Kallas, LLP have a long history of representation of health systems and other healthcare providers, patients and members of the organized medicine community. The Firm is a full-service litigation and healthcare firm.** The attorneys of Whatley Kallas have a strong national reputation in healthcare litigation, and provide a broad array of services to their clients. The Firm handles arbitration, class action, antitrust, ERISA and commercial litigation, including claims on behalf of healthcare providers against payors including health insurance companies.

**Whatley Kallas operates offices in New York, Alabama, Colorado, California, Florida, Georgia, Massachusetts, and New Hampshire.**

**The attorneys of Whatley Kallas have been repeatedly recognized in legal publications, such as *The National Law Journal* and *American Lawyer*, by their peers and by leaders of organized medicine for their work in the healthcare field.**

**The attorneys of Whatley Kallas represent a number of health systems in claims against health insurance companies in litigation including arbitration.  They have held leadership roles in in numerous high profile, complex national class action litigations, recovering billions of dollars in value, consisting of monetary relief and significant corporate reforms, which have provided meaningful change for classes of people and businesses.**

**Whatley Kallas's attorneys have been appointed to leadership positions in numerous cases.** For example, Joe Whatley and Edith Kallas serve as co-lead counsel for the class of Provider Plaintiffs in the ongoing case entitled *In re Blue Cross Blue Shield Antitrust Litigation MDL 2406*, No. 13-cv-20000 (N.D. Ala. filed 2013), pending in the Northern District of Alabama. Examples of cases in which Whatley Kallas attorneys served in a leadership role and were extensively involved in the litigation and negotiation of settlements include: *Waterbury Hospital v. U.S. Foodservice*, No. 07-md-1894 (D. Conn. filed 2007) (served as co-lead counsel in action resulting in a $297 million settlement); *Love v. Blue Cross Litigation*, No. 03-cv-21296 (S.D. Fla. filed 2003) and the related case entitled *In re: Managed Care Litigation* (served as co-lead counsel and members of the steering committee, respectively, in actions resulting in billions of dollars in value, consisting of monetary relief and significant corporate reform, to classes of 900,000 physicians throughout the United States); *Scher v. Oxford Health Plans* (served as lead counsel in statewide class arbitration on behalf of physicians in New York resulting in a settlement of $22 million); *In re Insurance Brokerage Antitrust Litigation*, No. 04-cv-05184 (D. N.J. filed 2004) (served as co-lead counsel in action resulting in settlements with Marsh & McClennan, AIG, Zurich Insurance Company and Arthur J. Gallagher, together totaling over $250 million); *Levinson v. Westport National Bank*, No. 09-cv-00269 (D. Conn. 2014) (served as

lead counsel in action resulting in a $7.5 million settlement for retirees and small investors most of whom were doctors on the eve of closing argument of a jury trial); *In re: Qwest Savings and Retirement Plan ERISA Litigation*, No. 02-cv-00464 (D. Colo. 2007) (served as co-lead counsel in action resulting in an approximately $37.5 million settlement). In addition, Whatley Kallas's attorneys have taken lead roles in numerous cases on behalf of patients. Such cases include the HIV/AIDS Specialty Medications Mail Order Litigations, which were filed against a number of healthcare companies in the country and resulted in significant practice reforms, as well as *Feller v. Blue Cross of California*, No. 56-2010-00368587-CU-BT-VTA (Ventura Super. Ct. filed 2010) (remedying the practice of trapping members in a closed plan subject to dramatically increasing premiums).

**The Firm's lawyers have gained a national reputation for their aggressive litigation style and their quality legal work. A significant aspect of the Firm's resources is its ability to try complex cases.** One of the Firm's founding partners, Joe R. Whatley, Jr., is an experienced trial lawyer and is one of the few lawyers representing plaintiffs in complex class action litigation who has tried class action cases to verdict. He won a $1.28 billion jury verdict on behalf of a class of cattle ranchers against Tyson Fresh Meats, Inc. in *Pickett v. Tyson Fresh Meats, Inc.*, No. 96-A-1103-N (M.D. Ala. 1996). In *Cox v. United Steelworkers*, Mr. Whatley served as counsel to one of the defendants and the jury returned a defendants' verdict. Mr. Whatley also won what was, at the time, the largest wrongful death verdict in Louisiana history in *Dunn v. Consolidated Rail Corp.*, 890 F. Supp. 1262 (M.D. La. 1995). Mr. Whatley and other attorneys from Whatley Kallas have also tried a number of class actions before juries, including, *In re Cox Enterprises, Inc. Set-Top Cable Television Antitrust Litigation*, No. 12-ml-2048 (W.D. Okla. filed 2012), to a plaintiffs' jury verdict in 2015 and *Levinson v. Westport National Bank*, which settled immediately before closing arguments to the jury in 2013. Whatley Kallas's experience in this regard has made it a highly sought-after member of plaintiffs' leadership groups in numerous complex and multidistrict litigations.

## II.  Firm Litigation

### A.  Healthcare and Insurance Litigation

A more detailed description of examples of healthcare and insurance cases in which attorneys at Whatley Kallas have served in leadership roles includes, among others:

*In re Blue Cross Blue Shield Antitrust Litigation MDL 2406*, **No. 13-cv-20000 (N.D. Ala. filed 2013).** Co-lead counsel for the class of Provider Plaintiffs in this action. The Provider Plaintiffs (including hospitals, physicians, surgery centers, chiropractors, and other healthcare providers) have alleged that all insurers licensing the Blue Cross or Blue Shield trademarks reached explicit agreement to divide the United States into geographic markets called "Service Areas" and to allocate those geographic markets, free of competition, among themselves. The Provider Plaintiffs have also challenged the agreements reached by the Blues to fix prices for services rendered by healthcare providers through the Blue Card Program. The Provider Plaintiffs' claims have survived Motions to Dismiss and the case is ongoing.

***Love v. Blue Cross Blue Shield Association*, No. 03-cv-21296 (S.D. Fla. filed 2003).** Co-lead counsel in this action, which alleged that defendants engaged in a civil conspiracy in violation of the Racketeering Influenced and Corrupt Organizations Act to wrongfully and fraudulently pay doctors less than the amounts to which they were entitled. Settlements were reached with approximately ninety percent (90%) of the defendants. The settlements consisted of billions of dollars in value, consisting of monetary relief and significant corporate reforms.

***In re Managed Care Litigation*, MDL No. 1334, No. 03-cv-21296 (S.D. Fla. filed 2003).** Members of the Plaintiffs' Steering Committee in this action against nine of the largest managed care providers in the United States, including Aetna, Cigna, United, Healthnet, Humana, PacifiCare, Prudential, and WellPoint. This action alleged that these defendants engaged in a civil conspiracy in violation of the Racketeering Influenced and Corrupt Organizations Act to wrongfully and fraudulently pay doctors less than the amounts to which they were entitled. Settlements were reached with Aetna, Cigna, Healthnet, Humana, Prudential, and Wellpoint consisting of monetary relief and significant business practice changes valued in the billions of dollars.

**Arbitrations for Health Systems.** Whatley Kallas represents health systems in arbitrations against major healthcare insurers for breach of contract or violations of law in the Commercial and Medicare Advantage contexts. While the details of these arbitrations are often confidential, Whatley Kallas has helped recover over a $300 million from major health insurers related to DRG downcoding, incorrect categorization of claims as observation rather than inpatient admissions, and other claims denial issues.

***Scher v. Oxford Health Plans*, AAA Case No. 11 193 00548 05.** Lead Counsel in this statewide class arbitration on behalf of a class of physicians in the state of New York, which resulted in a settlement of $22 million.

**HIV/AIDS Specialty Medications Mail Order Litigations.** Served in lead role in successfully brought actions against a number of major health insurance companies in the United States involving their requirements to obtain HIV/AIDS specialty medications by mail order. These companies have agreed to resolve these issues, either as part of a class action settlement or other agreements obligating those companies to change or cancel their mail order programs as to HIV/AIDS specialty medications, ultimately impacting an estimated 50,000 consumers nationwide. These cases include: *Doe v. United Health Care*, No. 13-cv-00864 (C.D. Cal. filed 2013) (national class action settlement approved in July 2014 permitting consumers to opt out of mail order program); *Doe v. Cigna Health Care*, No. 15-cv-60894 (S.D. Fla. filed 2015) (national settlement implemented in December 2015 that removed HIV/AIDS specialty medications from the mandatory mail order tier); *Doe v. Blue Cross of California*, No. 37-2013-31442 (San Diego Super. Ct. filed 2013) (California-only settlement implemented in May 2013 cancelling mandatory mail order program); and *Doe v. Anthem, Inc.* (national settlement implemented in June 2016 that also removed HIV/AIDS specialty medications from the mandatory mail-order requirement tier for all of Anthem's subsidiaries in the United States).

***Feller v. Blue Cross of California*, No. 56-2010-00368587-CU-BT-VTA (Ventura Super. Ct. filed 2010).** Served in lead role in class action successfully brought to remedy the practice of

trapping members in a closed plan subject to dramatically increasing premiums. Under the settlement, among other relief, class members were allowed to switch plans without underwriting until 2014, at which time preexisting conditions will no longer serve as a basis for denying health insurance.

*In re Insurance Brokerage Antitrust Litigation*, **MDL No. 1663, No. 04-cv-05184 (D.N.J. filed 2004).** Co-lead counsel in action involving class of purchasers of commercial and employer benefit insurance against many of the largest insurance companies and brokers in the country relating to these companies' alleged participation in a conspiracy to manipulate the markets for insurance. Settlements with the majority of the defendants were reached including, Marsh & McClennan, AIG, Zurich Insurance Company and Arthur J. Gallagher, together totaling over $250 million.

*Omni Healthcare, Inc. et al. v. Health First, Inc. et al.*, **No. 13-cv-01509 (M.D. Fla. 2013).** Whatley Kallas handled this antitrust case for doctors and other healthcare professionals through selection of the jury. The night after opening statements, the Defendants agreed to pay Whatley Kallas' clients $32 million dollars.

## B.    Antitrust and Other Complex Commercial Litigation

A more detailed description of examples of antitrust and other complex commercial cases in which attorneys at Whatley Kallas have served in leadership roles includes, among others:

*Waterbury Hospital v. U.S. Foodservice*, **No. 06-cv-01657 (D. Conn. 2014).** Co-lead counsel for a certified class of customers in a case involving an alleged scheme whereby USF, the second largest food distributor in the United States, fraudulently inflated the prices it charged to its cost-plus customers. Plaintiffs alleged that USF's customers were charged, pursuant to cost-plus agreements, inflated prices that represented the cost of products plus a kickback to their suppliers. The case settled for $297 million.

*Levinson v. Westport National Bank*, **No. 09-cv-00269 (D. Conn. 2014).** Lead counsel for certified class of hundreds of retirees and small investors who lost the bulk of their savings in the aftermath of the Bernard Madoff scandal. This action alleged that the bank breached numerous contractual and fiduciary duties to the investors in its administration of their accounts. After a two-week trial, on the eve of closing arguments, a settlement was reached in the amount of $7.5 million for the Class.

*In re Cox Enterprises, Inc. Set-Top Cable Television Antitrust Litigation*, **No. 12-ml-2048 (W.D. Okla. filed 2012).** Co-lead counsel on behalf of a certified plaintiff class of Oklahoma City Cox customers alleging that the cable provider Cox unlawfully tied its premium cable service to rental of its set-top boxes. After a two-week trial, the jury awarded the plaintiffs $6.31 million in damages, which were trebled to $18.93 million. After the jury verdict, the Court entered an Order directing verdict for the Defendant.

*Parsons v. Brighthouse Networks, LLC*, **No. 09-cv-00267 (N.D. Ala. 2015).** Co-lead counsel for a nationwide class of Brighthouse cable customers alleging that Brighthouse abused its market

power to illegally tie the rental of a set top box to the purchase of premium cable from Brighthouse. The parties reached a settlement valued at approximately $91 million dollars in monetary relief and $72 million dollars in injunctive relief.

*In Re Puerto Rican Cabotage Antitrust Litigation*, **No. 08-md-01960 (D.P.R. filed 2008).** Co-lead counsel representing purchasers in a class action alleging that Defendants conspired to fix the prices of shipping services to and from Puerto Rico. A settlement was reached resulting in monetary and non-monetary relief exceeding $100 million in value.

*In re Lorazepam and Clorazepate Antitrust Litigation*, **MDL No. 1290 (D.D.C. 2005).** Third Party Payor Lead Class Counsel in an antitrust action. Settlements of over $100 million were achieved.

*Pickett v. Tyson Fresh Meats, Inc.*, **No. 96-A-1103-N (M.D. Ala. 1996)**. Co-lead counsel representing a class of cattle ranchers against the major beef packers and producers in the country for conspiring to depress the price of beef on the cash market. In addition to serving in a leadership position in this action, Joe R. Whatley served as trial counsel in the Middle District of Alabama for the plaintiff class and obtained a $1.28 billion jury verdict for the class of ranchers and cattle producers. The verdict was ultimately vacated.

## III. Biographies

**Joe R. Whatley, Jr.**

Joe Whatley grew up in Monroeville, Alabama, the setting for *To Kill A Mockingbird*. Mr. Whatley is one of the few lawyers in the country to have argued before the United States Supreme Court as well as tried class actions to jury verdict for plaintiffs and defendants. He has a wide-ranging, national practice. He has argued cases before a majority of the Circuit Courts of Appeals in the country and tried cases in a number of different State and District Courts, before Judges and juries.    For the past several decades, his practice has concentrated in the representation of healthcare providers including healthcare systems to redress abuses by managed care companies.

He is a graduate of Harvard College (A.B., *cum laude*, 1975), and the University of Alabama School of Law (J.D., 1978). Mr. Whatley is a member of the Bar in the States of Alabama, Texas, Colorado and New York, and is admitted to practice before the United States Supreme Court, the United States District Court for the Middle, Southern and Northern Districts of Alabama, the Southern, Eastern and Northern Districts of New York, the Northern, Southern, Eastern and Western Districts of Texas, the Eastern and Western Districts of Michigan, the Eastern District of Wisconsin, the Northern District of Florida, the Northern District of Illinois, and the District of Colorado, as well as the United States Court of Appeals for the First, Second, Third, Fourth, Fifth, Sixth, Ninth, Tenth, Eleventh, and District of Columbia Circuits. After graduating from the University of Alabama School of Law, Mr. Whatley served as a law clerk to the Honorable Frank H. McFadden, who was then Chief United States District Judge for the Northern District of Alabama (1978-1979). Mr. Whatley is a member of the American Bar Association (Member, Sections on: Labor and Employment Law; Litigation; Antitrust Law; Health Law), a member and past President (1990-1991) of the Birmingham Federal Bar

Association, and a member and past President (1990-1991) of the Labor and Employment Law Section of the Alabama State Bar.

For more than a decade Mr. Whatley has focused his practice on healthcare and antitrust cases. His healthcare cases have primarily been against health insurance companies. Mr. Whatley was appointed Co-Lead Counsel for the Provider Plaintiffs in *In re Blue Cross Blue Shield Antitrust Litigation*, MDL No. 2406. He was one of the most active lawyers in Court proceedings in *In re Managed Care Litigation* and in *Thomas/Love v. Blue Cross*, and was one of the principal negotiators of the path-breaking settlements in both of those proceedings that resulted in billions of dollars in value, consisting of monetary relief and significant practice changes in the managed care industry. He represents providers of healthcare of all types in disputes with health insurance companies.

He is also an experienced trial lawyer, having tried numerous cases, including class actions, to verdict. For example, Mr. Whatley won a $1.28 billion jury verdict on behalf of a class of cattle ranchers against Tyson Fresh Meats, Inc. in *Pickett v. Tyson Fresh Meats, Inc.*, No. 96-A-1103-N (M.D. Ala.), and won what was at the time the largest wrongful death verdict in Louisiana history in *Dunn v. Consolidated Rail Corp.*, 890 F. Supp. 1262 (M.D. La. 1995). In addition, he has tried other class action cases to successful jury verdicts for plaintiffs and defendants.

Mr. Whatley has been recognized by his peers as one of the top lawyers in the country. He has been admitted as a Fellow to the American College of Trial Lawyers as well as a member of the International Academy of Trial Lawyers. In 2011, he was selected as one of the top 100 lawyers in the New York Metropolitan Area. He has been selected each year for decades as one of the Best Lawyers in Alabama.
**E-MAIL: jwhatley@whatleykallas.com**


**Edith M. Kallas**
Ms. Kallas was born in New York, New York. Ms. Kallas graduated from the Juilliard School in 1984 with a B.M. in Music Performance and from the Fashion Institute of Technology with an A.A.S., summa cum laude. She is a 1987 graduate of the Benjamin N. Cardozo School of Law, where she was a member of the Moot Court Board. Ms. Kallas is admitted to the New York and Colorado State Bars, the United States Supreme Court, the United States District Court for the Southern, Eastern and Northern Districts of New York, the United States District Court for the District of Colorado, and the United States Courts of Appeal for the Second, Third, Sixth, Ninth, Eleventh, and District of Columbia Circuits. She is also a member of the American Bar Association (Health Law Section), Association of the Bar of the City of New York, the New York State Bar Association, the New York County Lawyers' Association, the Colorado Bar Association and the American Society of Medical Association Counsel.

In April of 2004, Ms. Kallas was honored by thirteen State and County Medical Societies, who presented her with an award "For the Success Attained in her Relentless Pursuit of Justice for the Physicians of America and their Patients." Also in 2004, Ms. Kallas was named by the New York County Lawyers' Association as one of the "Outstanding Women of the Bar." In 2005, the National Law Journal featured Ms. Kallas in their UP CLOSE section in an article entitled, "HMO Settlement: A Fairer Deal for Doctors." The National Law Journal also featured Ms.

Kallas and her partner Joe Whatley in an article entitled "Case Puts Doctors Back in the Driver's Seat" in 2007. In 2011, the National Law Journal recognized Ms. Kallas in a feature article entitled, "In Insurance Fights, a Healthy Return for Firm – With Wellpoint Case." In February 2013, Ms. Kallas was highlighted in the *Big Suits* section of the American Lawyer Magazine in connection with the *In re Aetna UCR Litigation* settlement.

Ms. Kallas concentrates her practice in the areas of healthcare and insurance litigation. She represents healthcare providers, patients and members of the organized medicine community including physicians, ancillary providers, ambulatory surgical centers, durable medical equipment providers, as well as numerous national, state and county medical societies throughout the country. Her medical association clients have included the American Medical Association, Medical Society of the State of New York, Connecticut State Medical Society, Medical Society of New Jersey, California Medical Association, Florida Medical Association, Texas Medical Association, South Carolina Medical Association, Tennessee Medical Association, Northern Virginia Medical Societies, North Carolina Medical Society, Nebraska Medical Association, Washington State Medical Association, Hawaii Medical Association, Alaska State Medical Association, Rhode Island Medical Society, Vermont Medical Society, New Hampshire Medical Society, El Paso County Medical Society, and the California Chiropractic Association.

Ms. Kallas represents healthcare providers in litigation, arbitration, negotiations, and contracting, and provides day-to-day consultation and advocacy services in connection with a broad range of issues facing providers today. She has also represented healthcare providers and medical associations in numerous class actions pending in federal and state courts (including representation of a certified class of approximately 900,000 physicians throughout the United States). Ms. Kallas was appointed Co-Lead Counsel for the Provider Plaintiffs in *In re Blue Cross Blue Shield Antitrust Litigation*, MDL No. 2406. She has also served as Co-Lead Counsel in the *Love et al. v. Blue Cross Blue Shield Association et al.* in the United States District Court for the Southern District of Florida; on the Steering Committee in the *In re Managed Care* action; as Co-Lead Counsel and a member of the Executive Committee in the UCR Class Actions against Wellpoint (C.D. Cal.), CIGNA and Aetna; as Lead Counsel in the *Scher v. Oxford* physician class arbitration; and has served as lead counsel in numerous state court healthcare actions. Ms. Kallas also served as Co-Lead Counsel in the *In re Insurance Brokerage Antitrust Litigation* in the District of New Jersey against major brokerage and insurance companies on behalf of classes of businesses and employees who purchased insurance, including healthcare insurance. She was one of the principal negotiators of settlements with Aetna, Cigna, Healthnet, Prudential, Humana, Wellpoint and 90% of all the Blue Cross entities in the country on behalf of nationwide classes of physicians and medical societies that have resulted in billions of dollars in value, consisting of monetary relief and significant corporate reforms, to physicians throughout the country. The settlements have resulted in significant business practice changes that are viewed as setting a new standard in the healthcare industry in the best interests of physicians and their patients.

Ms. Kallas has also served in a lead role in *Doe v. United Health Care*, No. 13-cv-00864 (C.D. Cal. filed 2013) (national class action settlement approved in July 2014 permitting consumers to opt out of mail order program); *Doe v. Cigna Health Care*, No. 15-cv-60894 (S.D. Fla. filed

2015) (national settlement implemented in December 2015 that removed HIV/AIDS specialty medications from the mandatory mail order tier); *Doe v. Blue Cross of California*, No. 37-2013-31442 (San Diego Super. Ct. filed 2013) (California-only settlement implemented in May 2013 cancelling mandatory mail order program); and *Doe v. Anthem, Inc.* (national settlement implemented in June 2016 that also removed HIV/AIDS specialty medications from the mandatory mail-order requirement tier for all of Anthem's subsidiaries in the United States), and was a principal negotiator of the settlements in those actions. Ms. Kallas has also given legislative testimony regarding issues affecting physicians and successfully handled, on a pro bono basis, an appeal for a patient requiring lifesaving treatment.

Ms. Kallas is the co-author of "Gender Bias and the Treatment of Women As Advocates," Women in Law 1998. Ms. Kallas has also participated as a Faculty Member and/or Speaker in connection with the following presentations: "Class Action Healthcare Litigation," ALI-ABA Healthcare Law and Litigation Conference, 1999; "Class Actions: HMOs and Healthcare Providers Under Attack," ALI-ABA Life and Health Insurance Litigation Conference, 2000; "Providers (Suits by Doctors and Hospital Class Actions)," ALI-ABA Healthcare Law and Litigation Conference, 2000; "The Application of ERISA and RICO Theories in the Age of Managed Care," The Judges and Lawyers Breast Cancer Alert, 2000; "Healthcare Litigation: What You Need to Know After Pegram," Practicing Law Institute, 2000; "Provider Suits by Doctors and Hospitals v. HMOs," ALI-ABA Healthcare Law and Litigation Conference, 2001; The Joint Seminar Session of the School of Allied Health and Health Law Section at Quinnipiac University School of Law, 2001; The CLE Conference presented by the American Society of Medical Association Counsel, 2002; "The Unique Role of The Medical Society Effectively Litigating for Change in the Healthcare Arena," American Academy of Otolaryngology Presidential Board of Governors Special Seminar 2002; "The Future of Class Action Litigation in America," The CLE Conference presented by the American Bar Association, 2005; "Gender Bias in Litigation and the Trend Toward Diversity in Multi-District Litigation Proceedings," Mass Torts and Class Actions CLE Summit (Whatley Drake LLC Continuing Legal Education Conference) 2006 and 2007; "Arbitration Issues in Class Action Suits: How *Bazzle* Changed the Landscape of Class Arbitration," Whatley Drake & Kallas LLC Continuing Legal Education Conference 2007, ASMAC 2008; "Forum Shopping: Defendants Do It Too," Symposium on the Class Action Fairness Act and published in the Newsletter of the ABA Tort Trial and Insurance Practice Section Business Litigation Committee, Winter 2007; "Ingenix Litigation Update," ASMAC 2010; "Negotiating Skills for Career Advancement," Connecticut State Medical Society Professional Development Conference for Women in Medicine CME, May 2010; and "National Trends in Provider Contracting," Connecticut State Medical Society, "Managed Care Contracting: Anatomy of a Contract" Seminar, April 2012; "Avoiding Traps in Alternative Dispute Resolution," American Medical Association Webinar, February 2013; "Contract Negotiation Skills," Connecticut State Medical Society Professional Development Conference for Women in Medicine CME; "Update on Antitrust in Healthcare Cases," American Society of Medical Association Counsel Meeting, June 2015; "MDL Process and Procedures, Selection of Lead Counsel," Miami Law Class Action & Complex Litigation Forum, December 2016; "Health Insurer Predatory Practices," ASMAC 2018; "Ethics Issues in Large Scale Litigation," Miami Law Class Action & Complex Litigation Forum, January 2020.
2015; "MDL Process and Procedures, Selection of Lead Counsel," Miami Law Class Action & Complex Litigation Forum, December 2016; "Health Insurer Predatory Practices," ASMAC

2018; "Ethics Issues in Large Scale Litigation," Miami Law Class Action & Complex Litigation Forum, January 2020.
**E-MAIL: ekallas@whatleykallas.com**


**Patrick J. Sheehan**
Mr. Sheehan heads the Firm's Boston, Massachusetts office. Mr. Sheehan's practice focuses on complex litigation involving health care law and consumer protection issues. As part of his practice, Mr. Sheehan represents a wide array of health care providers and consumers in class actions and other complex litigation pending throughout the country. Mr. Sheehan's health care practice focuses on issues concerning health care financing, including provider reimbursement, health insurance coverage issues and antitrust matters. Mr. Sheehan's consumer protection practice concentrates on issues related to health insurance, other types of insurance, data breach and privacy litigation, and myriad other issues implicating consumer protection law.

Mr. Sheehan is a graduate of the College of the Holy Cross and Northeastern University School of Law, where he was an editor of the NU Forum. Mr. Sheehan is a past President and longstanding member of the Board of Directors of the Holy Cross Lawyers Association as well as a member of the Holy Cross Alumni Association Board of Directors. Mr. Sheehan is an active member of the American Bar Association, the Massachusetts Bar Association, the Boston Bar Association and the American Society of Medical Association Counsel. Mr. Sheehan is also a long-time member of the Massachusetts Bar Association's Health Law Section Council. Mr. Sheehan has been recognized as a Super Lawyer for his work in class actions for years and frequently speaks on issues concerning health care law and class actions.

Mr. Sheehan is a member of the Massachusetts and New York bars and is admitted to practice before the United States District Courts for the District of Massachusetts, the Southern and Eastern Districts of New York, the Northern District of Illinois, the District of Colorado, the Eastern District of Michigan, the United States Courts of Appeals for the First, Third, Fourth and Eleventh Circuits and the United States Supreme Court.
**E-MAIL:  psheehan@whatleykallas.com**


**W. Tucker Brown**
Mr. Brown's practice focuses primarily on the areas of healthcare, antitrust and other complex litigation. Mr. Brown represents a wide array of healthcare clients, including national and state medical associations, physicians, hospitals, surgical centers and other healthcare providers in litigations, including national class actions, arbitrations and other forms of dispute resolution. Much of the focus of Mr. Brown's practice is representing healthcare providers in disputes with managed care companies and insurers. In 2016, Mr. Brown was named one of Law360's six "Rising Stars" in Health Law.  Mr. Brown was selected as an Alabama Super Lawyers "Rising Star" from 2012-2019, and Super Lawyer in 2020 and 2021.  He has been a Mid-South Super Lawyer selection since 2020.

Mr. Brown presently represents health care providers in antitrust litigation challenging illegal price fixing, market allocation, boycotts and other anticompetitive schemes in cases including *In re Blue Cross Blue Shield Antitrust Litigation*, No. 2:13-cv-20000 (MDL 2406)(N.D. Ala.);

regional hospital systems against major insurers in arbitration regarding Medicare Advantage plans resulting in settlements to date of over $20 million; an eating disorder treatment center in claims against a national insurer in arbitration for claims involving breach of contract.

Mr. Brown has been involved in numerous noteworthy healthcare and antitrust cases including *Kissing Camels Surgery Center, LLC, et al. v. Centura Health Corp., et al.*, No. 1:12-cv-03012-WJM-NYW (D. Col.), where Mr. Brown led the five-year litigation on behalf of four Colorado surgery centers involving antitrust claims against large hospital groups and insurers for working to exclude those surgery centers from the Colorado market. The *Kissing Camels* litigation ultimately resulted in successful settlements for each of four Colorado ambulatory surgery centers. Mr. Brown helped lead the litigation efforts in *Parsons v. Brighthouse Networks* where Whatley Kallas represented a nationwide class in an antitrust action against a cable company for tying. Whatley Kallas helped reached a settlement in that case valued at approximately $91 million dollars in monetary relief and $72 million dollars in injunctive relief. Mr. Brown was part of the trial team in the *In re Cox Enterprises Inc. Set-Top Cable Television Box Antitrust Litigation*, No. 5:12-ml-02048 (MDL 2048) (W.D. Okla.) case which tried the case through to a Plaintiffs' verdict, though it was subsequently overturned.

Mr. Brown has been a member of the Alabama Bar since 2004 and is admitted to practice before the United States Court of Appeals for the Eleventh Circuit, as well as the U.S. District Courts for the Northern, Middle and Southern Districts of Alabama, and the U.S. District Court for the District of Colorado. He obtained his B.A. in Economics and Political Science from Vanderbilt University and received his J.D., *magna cum laude*, in 2004 from the Georgetown University Law Center, where he was Order of the Coif. Following law school, he served as law clerk to Hon. William M. Acker, Jr., U.S. District Court for the Northern District of Alabama from 2004 to 2005. He is a member of the Alabama State Bar, the American Bar Association (Healthcare and Antitrust Sections), and the Birmingham Bar Association. Mr. Brown has served as the President of The Community Kitchens of Birmingham. He was born in Birmingham, Alabama. **E-MAIL: tbrown@whatleykallas.com**


**Henry C. Quillen**
Mr. Quillen has extensive experience litigating matters involving healthcare and antitrust issues. He has briefed and argued dispositive motions in *In re Blue Cross Blue Shield Antitrust Litigation*, MDL No. 2406, and he was one of the primary attorneys representing the plaintiffs in *OMNI Healthcare, Inc. v. Health First, Inc.*, which resulted in a $32 million settlement. He has also obtained a favorable ruling from the Arkansas Supreme Court on behalf of an air ambulance provider in *Air Evac EMS, Inc. v. USAble Mutual Insurance Co.* The D.C. Circuit cited Mr. Quillen's amicus brief for the American Medical Association when affirming an injunction against the merger of Anthem and Cigna in *United States v. Anthem*. In 2016, Mr. Quillen was named a "Rising Star" by Law360 for his work in competition law, one of just seven attorneys to be honored in his field that year.

Before joining Whatley Kallas, Mr. Quillen was an associate in the litigation department of Sullivan & Cromwell LLP, where he focused on complex commercial litigation. He also served as a law clerk to the Honorable A. Raymond Randolph of the United States Court of Appeals for

the District of Columbia Circuit, as well as the Honorable Jeffrey Howard of the United States Court of Appeals for the First Circuit.

Mr. Quillen graduated from Harvard College magna cum laude (A.B., Biochemical Sciences, 2000) and Yale Law School (J.D., 2007). He also received a Master in Public Administration from the John F. Kennedy School of Government (2007). He is a member of the American Bar Association and admitted to practice in New York, New Hampshire, the District of Columbia, the United States District Courts for the District of Colorado, District of Columbia, and District of New Hampshire, the United States Courts of Appeals for the First, Eighth, Tenth, Eleventh, and District of Columbia Circuits, the United States Court of Appeals for Veterans Claims, and the United States Supreme Court.
**E-MAIL: hquillen@whatleykallas.com**


**Catherine I. Hanson**
Ms. Hanson has over 30 years of experience providing advice and counsel to physicians, medical associations and other health care related individuals and organizations. She has handled a broad array of health care and association matters, utilizing all advocacy strategies from informal discussion, to regulation, legislation and litigation. Most recently, Ms. Hanson has focused on managed care, including the impact of ACOs, new payment models and clinical integration, HIPAA, including the Privacy, Security and Transaction Rules, and evolving physician employment arrangements. Ms. Hanson is the author of numerous publications and a sought after speaker.

Ms. Hanson served as vice-president of the American Medical Association's state and private sector advocacy unit from July 2007 through January 2013. Under her leadership, AMA's private sector advocacy team developed the National Managed Care Contract and database, the only complete compilation and analysis of every managed care law and regulation in the country. Ms. Hanson also directed the creation of numerous other unique resources for physicians, including how-to manuals on new payment models, ACOs and physician integration strategies. She led the development of AMA's National Health Insurer Report Card (NHIRC), the first objective look at the claims processing activities of the nation's largest health insurers. Ms. Hanson's private sector advocacy team also achieved significant, nationwide physician profiling reforms and improvements in the HIPAA transaction standards necessary to enable payer transparency and physician practice automation.

Ms. Hanson's state advocacy successes included obtaining National Association of Insurance Commissioners (NAIC) support for AMA positions related to critical state ACA implementation/health insurance market reform issues, such as medical loss ratio, rate review, health insurance exchanges, and transparency of coverage facts for consumers, successes that were subsequently reflected in the federal ACA regulations. She led a successful effort that secured National Conference of Insurance Legislators (NCOIL) model bills regulating rental network PPOs and calling for transparency for out-of-network services instead of a ban on balance billing. Last but certainly not least, Ms. Hanson's team worked with medical associations throughout the country to achieve hundreds of legislative and regulatory victories to

preserve medical liability reforms, ensure health insurer transparency, improve public health and safety, enact truth-in-advertising laws and protect the patient-physician relationship.

Prior to her AMA work, Ms. Hanson served as vice-president and general counsel for the California Medical Association from December 1986 through June 2007. Her many CMA accomplishments included an extremely successful advocacy campaign in the courts and before the California Attorney General that resulted in nearly 100 decisions upholding MICRA and otherwise protecting physicians from unfair professional liability exposure, protecting the physician-patient relationship, increasing access to care, reigning in managed care abuses, and ensuring fair peer review, among other issues. Ms. Hanson also led the development and publication of the 4000+ page *California Physicians Legal Handbook,* a comprehensive health law treatise, which she published annually with her CMA Legal Center staff from 1990-2007. Prior to starting the CMA's in-house law department, Ms. Hanson was an attorney with the law firm of Hassard Bonnington in San Francisco.

Ms. Hanson is a past president of the California Society for Health Care Attorneys, a past president of the American Society of Medical Association Counsel, a member of the American Health Lawyers Association, and the American Bar Association Health Law Section.

Ms. Hanson is a Phi Beta Kappa graduate of the University of California, Berkeley. She obtained her J.D. degree from Boalt Hall School of Law at University of California, Berkeley. She is a California licensed attorney admitted to practice in the U.S. Supreme Court, the Ninth Circuit Court of Appeals, and the United States District Court for the Northern and Southern Districts of California. Ms. Hanson has an AV Martindale Hubbell rating. Ms. Hanson is Of Counsel to the Firm.
**E-MAIL: chanson@whatleykallas.com**


**Alan Mansfield**

Alan M. Mansfield has practiced primarily in the area of national health care, privacy, consumer and securities class action and public interest litigation since 1989. His clients have included such public interest organizations as the California Medical Association, the Independent Physical Therapists of California, Consumer Watchdog, and the Privacy Rights Clearinghouse.

Mr. Mansfield has been involved in numerous significant healthcare matters, including a class action against Anthem Blue Cross for improperly closing certain health plans which resulted in a settlement requiring defendant to limit plan rate increases and requiring any plan changes to be without medical underwriting for several years (*Feller v. Anthem Blue Cross*, Ventura County Superior Court Case No. 56-2010-00368587-CU-BT-VTA); and a class action representing a number of California pharmacists seeking to require Pharmacy Benefits Managers to provide data required under state law, obtaining a significant decision from the Ninth Circuit and the California Supreme Court interpreting the scope of the First Amendment as applied to California pharmacists' claims under California law (*Beeman v. Anthem Prescription*, 2011 U.S. App. LEXIS 14687 (9th Cir., July 19, 2011), *Beeman v. Anthem Prescription*, 58 Cal. 4th 529 (2013). He also has been actively involved resolving numerous cases on behalf of patients with HIV/AIDS, including *Doe v. CVS,* S.D. Oh. Case No. 2:18 cv-00238-EAS-CMV (Ohio class action settlement approved in January 2020 arising out of Ohio ADAP mailing, providing for

over $2 million in payments to affected individuals); *Doe v. United Health Care*, No. 13-cv-00864 (C.D. Cal. filed 2013) (national class action settlement approved in July 2014 permitting consumers to opt out of mail order program); *Doe v. Cigna Health Care*, No. 15-cv-60894 (S.D. Fla. filed 2015) (national settlement implemented in December 2015 that removed HIV/AIDS specialty medications from the mandatory mail order tier); *Doe v. Blue Cross of California*, No. 37-2013-31442 (San Diego Super. Ct. filed 2013) (California-only settlement implemented in May 2013 cancelling mandatory mail order program); *Doe v. Anthem, Inc.* (national settlement implemented in June 2016 that also removed HIV/AIDS specialty medications from the mandatory mail-order requirement tier for all of Anthem's subsidiaries in the United States), and *DOE v. Aetna, Inc. and Coventry Health Plans* (nationwide settlement revising similar mandatory mail-order pharmacy programs). He was also one of the counsel who negotiated a settlement of claims by the IPTCA against a nationwide workers compensation claims processor, revising the procedures and review of submitting and adjudicating such claims. He is currently one of the primary counsel in an action against the California Department of Public Health and other entities for violating the privacy rights of hundreds of recipients of HIV/AIDS medications in California, as well as other significant health care matters.

Mr. Mansfield has served as the President of the Association of Business Trial Lawyers, San Diego Chapter (Secretary – 2017; Treasurer – 2018; Vice President -- 2019); member of the Executive Committee (2008-present); Program Chair, 2017 ABTL Annual Seminar and 2018 ABTL Joint Board Retreat; Planning Committee member, 2016; Program Co-chair, 2009 ABTL Annual Seminar; Co-chair, mini-annual seminar, 2009, 2013 and 2015; Editor, ABTL Report (2004-2009). He also is a Master member of the Enright Inn of Court, and in that capacity has been a team leader for numerous committees responsible for making presentations to members of Inn. He is a member of the Anti-Trust Section of California Bar Association (now California Lawyers Association), where he participated in committee that made presentation to State's Anti-trust and Unfair Competition Law section related to Proposition 64 (2005). Previously Mr. Mansfield was a Lawyer Representative to the Ninth Circuit Judicial Conference, Southern District of California (6/2008 to 6/2010), where he helped create and make presentations to the Southern District of California Judicial Conference, as well as attended the Ninth Circuit Judicial Conference in 2009. He is also a member of the San Diego County Bar Association, the Federal Bar Association, San Diego Chapter, the Consumer Attorneys of San Diego, and the American Bar Association.

Mr. Mansfield received his B.S. degree, *cum laude*, in Business Administration - Finance from California Polytechnic State University, San Luis Obispo in 1983 and his *Juris Doctorate* degree from the University of Denver School of Law in 1986. He is admitted to the Bar of the State of California, to the United States District Courts for all Districts of California, to the United States District Court for the Districts of Colorado and Michigan, to the Second, Third, Fifth, Sixth, Ninth and Tenth Circuit Courts of Appeal, and to the Supreme Court of the United States of America. Mr. Mansfield is Of Counsel to the Firm.
**E-MAIL: amansfield@whatleykallas.com**

**Deborah Winegard**

Ms. Winegard focuses her practice on healthcare litigation, primarily representing physicians, hospitals, and other healthcare providers in reimbursement disputes with third party payers, including disputes involving both commercial and Medicare Advantage plans.  Ms. Winegard has also handled antitrust, breach of contract, and ERISA litigation on behalf of medical providers. In addition, Ms. Winegard represents medical societies and organizations advocating for physician interests with payers and government entities.

Ms. Winegard speaks widely on healthcare and reimbursement issues. She has given presentations, among others, for the American Medical Association, the American Society of Medical Association Counsel, the Medical Group Managers Association, and several state and specialty medical associations. Ms. Winegard has also published articles in several publications.

Ms. Winegard's prior experience includes serving as the General Counsel and Director of Third Party Payer Advocacy for the Medical Association of Georgia, as General Counsel and Senior Vice President for the California Medical Association, as Law & Government Affairs Vice President for four states for AT&T, and as an Associate on King & Spalding's Healthcare Team.

Ms. Winegard served as the Facilitator for the MDL settlements with Aetna, Blue Cross Blue Shield Association, Capital Blue Cross, CIGNA, Health Net, and Humana, handling compliance disputes brought by physicians who complained that these health insurers had violated the settlement agreements reached in the MDL healthcare litigation.

Ms. Winegard graduated *magna cum laude* with a B.A. in Politics from Wake Forest University in 1979, where she was elected to the Phi Beta Kappa honor society. She earned her J.D. with honors from the George Washington University Law School in 1982. She is admitted to practice in Georgia, as well as in the United States District Court for the Northern District of Georgia and the United States District Court for the District of Colorado.

Ms. Winegard is President of the American Society of Medical Association Counsel.  She also serves as a member of the Board of Governors and Chair of the Audit Committee for LifeLink Foundation. She has previously held leadership positions for the Health Law Section of the State Bar of Georgia, the Georgia Association for Women Lawyers, and the National Kidney Foundation of Georgia, and has also served on the Boards of Directors for the Alliance Française d'Atlanta and the Boys & Girls Clubs of Metro Atlanta.

Ms. Winegard is Of Counsel to the Firm and is based in Atlanta.

Ms. Winegard speaks French.
**MAIL: dwinegard@whatleykallas.com**


**Sara Hacker Collins**

Ms. Collins is a member of the Alabama Bar (2005).  She is a member of the Alabama State Bar, Birmingham Bar Association and Farrah Law Society.  She graduated from Auburn University (B.A. magna cum laude, 2002) and the University of Alabama School of Law (J.D., 2005) where

she was Senior Editor of the *Alabama Law Review*. Following law school she served as law clerk for Judge Patricia Smith, Alabama Supreme Court (2005-2006) and for Judge Inge Johnson, U. S. District Judge, Northern District of Alabama (2006-2007).
**E-MAIL: scollins@whatleykallas.com**


**D. Jamie Carruth**

Mr. Carruth practices in the areas of healthcare litigation, antitrust, product liability, consumer protection, complex litigation, and class actions. He represents physicians, medical practices, and ambulatory surgical centers in reimbursement and contract disputes against managed care companies. He represents clients in alternative dispute resolution proceedings in addition to state and federal courts. He specializes in using the latest technology to assist clients in efficiently navigating the E-Discovery process. He is a member of the Alabama Bar since 2004 and is admitted to practice in the United States District Court for the Northern District of Alabama. He is a member of the American and Birmingham Bar Associations. He received a B.A. in political science from the University of Alabama, Tuscaloosa, Alabama in 2001 and obtained a J.D. in 2004 from the University of Alabama School of Law, Tuscaloosa, Alabama.
 Alabama.
**E-MAIL: jcarruth@whatleykallas.com**


**C. Nicholas Dorman**

Mr. Dorman's practice is focused on healthcare and antitrust litigation, and he primarily represents healthcare providers challenging anticompetitive practices of insurers and health systems. He also has experience representing both providers and consumers in healthcare litigation involving claims under ERISA and RICO, and representing whistleblowers in *qui tam* litigation under the False Claims Act. He has represented clients in both class and individual antitrust litigation and has taken antitrust cases to trial, obtaining jury verdicts or favorable settlements for his clients.

Mr. Dorman graduated first in his class from the University of Florida Levin College of Law, receiving book awards in Antitrust: Healthcare; Appellate Advocacy; Constitutional Law; Consumer Law; Electronic Discovery, and Electronic Discovery: Search and Data Analysis. He served on the Florida Law Review as Managing Editor. While in law school, he also served as an extern to Hon. Gary R. Jones and to Hon. Maurice M. Paul, both of the U.S. District Court for the Northern District of Florida.

Mr. Dorman is a member of the Alabama Bar, the Florida Bar and is admitted to practice before the U.S. District Courts for the Northern, Middle, and Southern Districts of Florida. He is a member of the Healthcare and Antitrust Sections of the American Bar Association and is a member of Public Justice.
**E-MAIL: ndorman@whatleykallas.com**

**T. Kenneth Foster**

T. Kenneth Foster is an attorney with the Firm. He received his B.S. with honors in Business Administration from The University of Alabama in 1968 and his J.D. from The University of Alabama School of Law in 2000. Following law school, he was in private practice for over 15 years, handling both civil and criminal matters. He is a member of the Alabama Bar Association. Prior to attending law school, Mr. Foster worked for several grain processing and milling companies, serving as past president and on the board of directors of the Home Baking Association, a national milling trade association.

**E-MAIL: kfoster@whatleykallas.com**

**Cody B. Isbell**

Cody B. Isbell is an attorney in the Firm's Birmingham office. He received his B.S. in Criminal Justice from Faulkner University in 2012. He received his J.D. from Cumberland School of Law in 2015. He was a semi-finalist in the Robert B. Donworth Moot Court Competition. Following law school, he practiced as a personal injury attorney in Birmingham. He has been a member of the Alabama State Bar since 2015.

**E-MAIL: cisbell@whatleykallas.com**

**Blake W. Cole**

Mr. Cole is an attorney with the Firm and a member of the Alabama State Bar. He attended Auburn University on scholarship where he obtained his Bachelor of Science in Polymer and Fiber Engineering in 2010. Afterwards he worked for a short time in the body armor industry before proceeding to law school. He obtained his Juris Doctor from Cumberland School of Law in 2016, receiving a book in Estate Planning. He then attended the University of Alabama School of Law where he obtained his Master of Laws in Taxation in 2019.

**E-MAIL: bcole@whatleykallas.com**

**Aspen • Atlanta • Birmingham • Boston • Los Angeles • New York •
Orlando • Portsmouth •San Diego • San Francisco**

1228 Riverside Drive
Aspen, CO 81611
Telephone: 970-300-4848
Facsimile: 800-922-4851

1068 Virginia Ave. NE
Atlanta, GA 30306
Telephone: 404-607-8222
Facsimile: 404-220-9625

2001 Park Place North
Suite 1000
Birmingham, AL 35203
Telephone: 205- 488-1200
Facsimile: 800-922-4851

101 Federal Street, 19th Floor
Boston, MA 02110
Telephone: 617-203-8459
Facsimile: 800-922-4851

355 So. Grand Avenue, Ste 2450
Los Angeles, CA 90071
Telephone: 310-684-2504
Telephone: 213-943-1312
Facsimile: 855-274-1888

152 West 57th Street
41st Floor
New York, NY 10019
Telephone: 212- 447-7060
Facsimile: 800- 922-4851

111 North Orange Avenue
Suite 800
Orlando, FL 32801
Telephone: 321-325-6624
Facsimile: 800-922-4851

159 Middle Street, Suite 2C
Portsmouth, NH 03801
Telephone: 603-294-1591
Facsimile: 800-922-4851

16870 W. Bernardo Dr., Ste 400
San Diego, CA 92127
Telephone: 619-308-5034
Facsimile: 855-274-1888

1 Sansome Street, 35th Fl.
PMB #131
San Francisco, CA 94104
Telephone: 415-906-3876
Facsimile: 855-274-1888

**www.whatleykallas.com**

17