FILED
2024 Oct-14 PM 12:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

# Exhibit E

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

|  |  |
|---|---|
| IN RE: BLUE CROSS BLUE SHIELD ANTITRUST LITIGATION (MDL No.: 2406) ) ) ) ) ) ) ) ) ) | Master File No.: 2:13-CV-20000-RDP<br><br>This document relates to the Provider Track cases. |

## MEDIATOR'S AFFIDAVIT

**STATE OF ALABAMA**

**SHELBY COUNTY**

Before me, the undersigned authority personally came and appeared, Edgar C. Gentle, III, who is known to me to be the person so described, who, after being duly sworn on oath, says that the following information is true and correct according to Affiant's best knowledge and belief:

I am sui juris, competent to testify, and have personal knowledge of the facts herein.

My resume is in Exhibit A. I am the founding partner of the law firm of Gentle, Turner, & Benson, LLC, and was appointed as the Mediator for the disputes between the Providers and the Defendants (the "mediating Parties") in this case. I have extensive experience acting as a mediator and Special Master in Multi-District Litigations and have helped create and administer over $6 billion in settlements during the past 25 years.[1]

I am making this Affidavit to summarize the services I provided up to the proposed settlement between the Providers and the Defendants, and to describe the hard-fought, arms-length negotiations

---

[1] For example, I served as Special Master and Escrow Agent for the Global Breast Implant Settlement (MDL 926), which involved settling over $1.1 billion in claims. Also, I mediated the $2.7 billion Subscriber/Blue Cross Settlement in this MDL.

1

among the mediating Parties that led to the settlement. In short, it is my view as the long-standing Special Master and Mediator in the Provider Litigation that the settlement is fair and reasonable.

**Mediation History**

1. Beginning in January 2018, I served as the Mediator for the Providers and the Defendants. Since January 9, 2013, I have also served as the Special Master in the above-captioned matter. ECF No. 7.

2. As part of my service, my staff, including attorneys and non-attorneys, often assisted in this matter. When billing for our services, I did not bill for any time provided by non-attorneys, and I would often discount our bill.

3. From January 2018 until September 2024, my staff and I have participated in approximately 150 in-person meetings with either the Defendant Blues, Provider Settlement Class Counsel or all of the mediating Parties at once or separately, in an effort to resolve this matter.[2] Some of these in-person meetings lasted one hour or less, and others lasted up to 2 days. During this time, my staff and I have participated in approximately 224 telephone and zoom conferences, with some or all of the mediating Parties at once or separately, in an effort to resolve this matter. My Partner, Katherine A. Benson, Esq., and I have participated in, in-person meetings/mediation sessions in Birmingham, Los Angeles, Chicago, New York and Washington, D.C., approximately 25 times, in an effort to resolve this matter. During this time, our Firm billed approximately total of 1,763 hours, which equates to almost 220 business days (8-hour days).

4. From January 2018 until September 2024, our Firm has been heavily and directly involved in facilitating settlement negotiations; traveling to and participating in meetings; participating in telephone and zoom conferences; and drafting, reviewing and revising documents in connection with

---

[2] To streamline the mediation process and best position the dispute for settlement, from time to time I limited attendance/participation in certain of these sessions to a small Provider negotiating group and a small Defendant negotiating group.

2

this Mediation.

5. The Settlement Agreement that has been reached is a result of arms-length negotiations and based upon our Mediators' recommendations, and is fair and reasonable. The proposed Settlement creates a Settlement Fund of $2.8 billion. Given my extensive experience in mediating these claims with experienced and competent Counsel on both sides, and my knowledge of this case through more than twelve years of litigation, I believe that this Settlement and the Settlement amount represent a significant result for both the Provider Class and the Defendants. I believe that Provider Settlement Class Counsel negotiated the best deal for the Class that could reasonably have been obtained.

6. The proposed Settlement also provides for transformative injunctive relief designed to foster competition in the National Health Insurance Marketplace. This relief will redound to the benefit of all of the members of the Provider Settlement Class. As spelled out in great detail in the Parties' Settlement Agreement, the injunctive relief will improve the transparency, efficiency, and accountability of the BlueCard Program, expand opportunities for some Providers to contract with Blue Plans in a different Service Area, upgrade the Blues' technical capabilities to make timely information available to Providers, and create more opportunities for Providers to enter into value-based contracts. The Settlement Agreement further provides for a five-year Monitoring Period beginning with Settlement Effective Date, to mediate disputes arising under the Settlement Agreement and to ensure an orderly process for resolving any disputes regarding Settlement implementation and good faith compliance with its requirements.

7. The Settlement negotiation process was conducted at arms' length and in good faith, and was often extremely contentious, with Counsel for each side tenaciously and vigorously advocating for their clients. Counsel consistently exhibited the highest degree of professionalism. Provider Settlement Class Counsel made able use of the economic analyses provided by their experts, took account of the full range of the potential claims that were held by members of the Class when

negotiating, and aggressively advocated for all of the interests of all of the Class Members in order to maximize the relief obtained for the Class. The resumption of litigation remained a realistic possibility throughout the mediation; indeed, it frequently seemed to me that the mediation process was at risk of irrevocably breaking down, with the result that negotiations would have come to an end and the Parties would return to the Courtroom. Settlement was by no means a foregone conclusion and, on numerous occasions, required Mediators' recommendations to break the logjams.

8. In sum, the Settlement was "the result of vigorous arm's length negotiations, which were undertaken in good faith by counsel with extensive experience . . . ." Encarnacion v. J.W. Lee, Inc., 2015 WL 6437686, *4 (US D. Ct. SD FL 2015). (See also In re: U.S. Oil & Gas Litig., 967 F2d 489, 493 (11th Cir. 1992) ("public policy strongly favors the pretrial settlement of class action lawsuits.").

9. I can attest that Counsel on both sides of the negotiations expended extraordinary time and effort to obtain the best possible result for their clients in this Settlement. The legal, factual, and administrative questions that they had to address and resolve during the Settlement process were novel, complex, and difficult, and resolution ultimately required nine years of negotiations, (including some years when I wasn't formally involved). These efforts resulted in the final Settlement Agreement, and required the continuous and unfailing exercise of patience, persistence, and consummate legal skill.

10. Having served as the Mediator[3] as well as the Special Master in this case, I am well-informed about the nature of the allegations, the risks on both sides, and the procedural posture of the case. Given the complexity of the case, the large number of Providers and Defendants, and the Nationwide scope of the allegations, it was and would continue to be necessary to expend significant resources to continue litigating this case with an uncertain outcome, and based on this additional measure, it is my opinion that the settlement provides an excellent result for the Class.

---

[3] Part of the time, I had Layn Phillips and Gary Fees as Co-Mediators, and part of the time I had Bob Meyer as Co-Mediator.

4

11. In conclusion, based upon my extensive work on this matter, there should be a presumption of reasonableness. See In re Schering-Plough Corp. Securities Litigation, 2009 WL 5218066, *3 (US D Ct., D NJ 2009) (in a large securities class action case involving claims of security fraud and actionable misstatement, "Mediation sessions began years before the ultimate settlement, foundered, recovered, gained traction, and were successful – a pattern that demonstrates arms-length negotiating."). See also Nelson v. Mead Johnson & Johnson Co., 484 F. App'x 429, 435 (11th Cir. 2012) (affirming approval of settlement that was "the result of extensive arms-length negotiations moderated by a court-appointed mediator"). Furthermore, it has been said that "[t]he involvement of professional mediators for a substantial number of days over a substantial number of months is strong evidence of arms-length, non-collusive, non-tortious, and therefore by definition, good faith settlement negotiations and of a good faith settlement agreement." Gray v. Derderian, 2009 WL 1575189, *6 (US D Ct, D. RI 2009). That is certainly the case here.

FURTHER AFFIANT SAITH NOT.

_____
Edgar C. Gentle, III

STATE OF ALABAMA
COUNTY OF SHELBY

BEFORE ME, the undersigned, a notary public in and for said County and State, personally appeared Edgar C. Gentle, III, and acknowledges that he signed the foregoing Affidavit, and that said Affidavit is true and correct to the best of his knowledge and belief.

SWORN TO AND SUBSCRIBED before me this 11th day of October, 2024.

_____
Notary Public
My Commission Expires:

AMANDA L WILLIAMS
My Commission Expires
March 13, 2026

[SEAL]

5

# EXHIBIT A

April 29, 2024

## CURRICULUM VITA

| | |
|---|---|
| **Name of Attorney:** | Edgar C. Gentle, III, Esq. |
| **Name of Firm:** | Gentle Turner & Benson, LLC |
| **Profession:** | Attorney |
| **Date of Birth:** | February 17, 1953 |
| **Years with Firm:** | 30 |
| **Nationality:** | U.S.A. |
| **Memberships in Professional Societies:** | Admitted to Alabama State Bar (1981) and various Federal District Court and Appellate Court Bars |

### A.    Key Qualifications

Ed Gentle was born in Birmingham, Alabama, February 17, 1953. He graduated summa cum laude in 1975 from Auburn University where he was a Danforth Scholar and earned a Bachelor of Science degree. In 1977 he received a Master of Science (summa cum laude) from the University of Miami as a Maytag Fellow.

He was a Rhodes Scholar (Auburn's second and Miami's first) at Oxford University, where he earned a B.A. degree with honors in Jurisprudence in 1979 and a M.A. degree in 1980. He then attended the University of Alabama School of Law as a Hugo Black Scholar. He earned his J.D. and was admitted to the Alabama State Bar in 1981.

Mr. Gentle has comprehensive experience in serving as Mediator, Special Master, Settlement Trustee, and Claims Administrator in Mass Tort Litigation, and providing grid design, claims administration and financial and business advice to Courts, Settling Parties, and Mass Tort Settlements. Approximately 90% of his professional time is devoted to this practice. He has helped create and administer over $4.5 Billion in Settlements during the past 30 years. He has also provided expert affidavit, deposition and hearing testimony on the fairness of Mass Tort Settlements.

From 1992 to 2014, Mr. Gentle served as Special Master and Escrow Agent for the MDL 926 Global Breast Implant Settlement, paying $1.2 Billion in claims for 300,000 claimants. From 2001 until 2003, he was Interim Financial Advisor for the Settlement Facility - Dow Corning Trust (the Dow Corning Breast Implant Settlement) overseeing the investment of over $1 Billion and providing tax and accounting support for the Settlement, during part of Dow Corning's Chapter 11 Bankruptcy.

Commencing in December 2003, Mr. Gentle was appointed as the Settlement Administrator in the $300 Million Anniston, Alabama Tolbert PCB Settlement with Monsanto and Solutia in connection with the administration of a Global Settlement before the Federal District Court for the Northern District of Alabama applicable to 18,000 claimants with respect to PCB contamination of property and PCB personal injury claims. In administering the $300 Million settlement, Mr. Gentle designed the claimant payment program for property damage and personal injury, collected criteria for payments to each of the 18,000 claimants, ranked the claimants for payment amounts, satisfied private and government liens, and remitted payments to each of the claimants. The Settlement also provided primary medical and dental care and prescriptions to claimants, with this portion of the settlement being completed in 2016.

One of Mr. Gentle's specialties is serving as Settlement Administrator for Community Tort Settlements, such as a C-8 groundwater contamination case in Camden, New Jersey (with water filtration and damages 2004-2008), Warehouse Fire Settlements in Conyers, Georgia (2012) and Louisville, Kentucky (personal injury and property claims), Zinc Smelter Settlements in Spelter, West Virginia (medical monitoring and property remediation 2011-2017) and Blackwell, Oklahoma (property remediation 2013-2019), a coal slurry groundwater contamination Settlement in Mingo County, West Virginia (medical monitoring 2013), and two train wrecks in Kentucky (2010 and 2017), one in Alabama and one in West Virginia (personal injury and property claims 2017-2019).

In November, 2009, Mr. Gentle was appointed Claims Administrator in the Jefferson County, Alabama, Occupation Tax Refund Class Settlement before the Honorable David Rains, in the Circuit Court of Jefferson County. On May 14, 2010, the Supreme Court of Alabama upheld the $37 Million Judgment. The Parties entered into a Class Settlement, which was approved by the Court, and tax refunds were issued to over 300,000 claimants. The case was completed in 2014.

In June 2010, Mr. Gentle was appointed Special Master and Settlement Administrator in the Total Body Multi-district Litigation, MDL 1985. The claimed toxigen was a selenium overdose in a health maintenance drink, with claimed damages being hair loss and damage to bodily organs. Working closely with the Court, Mr. Gentle facilitated the aggregate settlement of all cases, in August 2010. Mr. Gentle and his staff determined the value of each of the settled cases, which was consented to by all Plaintiffs, and Mr. Gentle administered the Settlement, satisfied private and government liens, and paid all claimants, which was completed in 2013.

In the Fall of 2011, after his successful mediation of a Settlement, Mr. Gentle was appointed Claim Administrator for the 1,000 family Perrine v. DuPont Zinc Smelter Class Action Settlement in Spelter, West Virginia, involving a $40 million remediation program for soil and houses with respect to cadmium, arsenic, zinc and lead, and a 30 year medical monitoring program. The remediation program was completed in 2017, and the medical monitoring program will be completed in 2041.

In 2012, Mr. Gentle was appointed Claims Administrator of the Swiger v. AmeriGas, West Virginia statewide Class Settlement, involving monetary awards and remediation for

approximately 12,000 claimants and with respect to propane gas lines.

Mr. Gentle is Special Master in the national MDL Blue Cross Antitrust Litigation, MDL 2406, with putative provider and subscriber classes, before the Honorable R. David Proctor, having been appointed in 2012. The case has 3 groups of litigants: the Policy Subscribers, the Medical Providers and the 37 Blue Cross companies. There are over 100 million potential plaintiffs. Among his duties are mediating a Settlement of the subscribers/Blue Cross litigation, and auditing subscriber and provider common benefit attorney time and expenses. Mr. Gentle mediated a Settlement between the Subscribers and the Blues from 2017 to 2020, resulting in the filing of a proposed $2.67B Settlement, approved by the Court in September 2022.

Mr. Gentle is now co-mediating a possible settlement between the Blue Cross companies and the Medical Providers in the same MDL.

From 2012 to 2014, Mr. Gentle, as Special Master, facilitated the creation and administration of a 93 claimant settlement with an undisclosed manufacturer and hospital concerning CT-Scan radiation exposure, with claimed damages being hair loss and cognitive deficiencies.

In 2013 and 2014, Mr. Gentle administered four separate Pfizer Chantix Aggregate Settlements, designing the payment matrix, handling claimant appeals, resolving liens, and paying claimants.

In 2013, Mr. Gentle was appointed Claims Administrator for the Coffey v. Phelps Dodge Oklahoma Circuit Court Class Settlement in Blackwell, Oklahoma with respect to a zinc smelter and involving a $34 million remediation project for 1,000 households with respect to cadmium, arsenic, zinc and lead. The program was completed in 2019.

In 2014, Mr. Gentle was appointed Claims Administrator for the Mingo County, West Virginia medical monitoring program, lasting 30 years and involving 750 claimants exposed to coal slurry well contamination. The program will be completed in 2044.

In 2014, Mr. Gentle was appointed Plaintiff Lien Administrator for the Hydroxycut Mass Settlement.

In November 2014, Mr. Gentle was appointed one of three Special Masters in the Stryker Hip MDL, MDL 2441, handling settlement appeals and opt-out mediations. In October 2020, he was appointed as the only Special Master in an extension of this settlement program. He mediates Settlements of Stryker opt-outs, and decides appeals in the Stryker Settlement. The case involves approximately 3,000 claimants.

In 2015, 2016, and 2017, Mr. Gentle was hired by Defendant, Smith & Nephew, and Plaintiffs' Counsel to facilitate three Memphis, Tennessee aggregate settlements involving artificial hips and to resolve related plaintiff liens.

In May 2016, Mr. Gentle was appointed Claims Administrator by the Escambia County, Florida, Circuit Court in Allen v. A.E. New, the Pensacola jail fire and explosion case, to facilitate the class settlement of the 667 claimant case. The Settlement was approved in 2018.

In October 2016, Mr. Gentle was appointed Special Master by the Fulton County, Georgia Circuit Court in Smart v. Brenntag, to carry out the administration of a chemical spill class settlement.

In February 2017, Mr. Gentle was appointed Settlement Administrator of an industrial plant contamination settlement in Bowling Green, Kentucky involving personal injury and property damages plaintiffs and Federal Mogul, with the Aggregate Settlement being approved by the Court in August 2018.

In September 2017, Mr. Gentle was appointed Claims Administrator for a GE factory fire class settlement in Louisville, Kentucky.

In October 2017, Mr. Gentle was appointed Special Master by the West Virginia Federal District Court for the Southern District of West Virginia to administer the Mt. Carbon 400 claimant aggregate train derailment settlement with Sperry (personal injury and property damage). Subsequently, in March 2018, Mr. Gentle was appointed Special Master to administer the portion of the Settlement applicable to CSX.

In October 2017, Mr. Gentle was appointed Escrow Agent for the Common Benefit Fund in the Storz Morcellator Litigation in the Superior Court of California, of Los Angeles County.

In December 2017, Mr. Gentle was appointed Special Master by the Circuit Court of Duval County, Florida to administer a plastic surgery medical malpractice aggregate settlement with 260 female claimants.

In February 2018, Mr. Gentle was appointed Cy Pres Special Master for the Winston Jefferson County ad valorem tax class settlement case.

In June 2018 Mr. Gentle began to assist lead counsel in the Abilify MDL 2734, to design a claimant payment grid and to facilitate a potential settlement of the case, and in February 2019 he was appointed Extraordinary Damages Award Special Master for the resulting aggregate settlement. The opt-out rate was less than 1%.

In September 2018, Mr. Gentle was appointed Special Master of a personal injury aggregate settlement involving a train derailment in Maryville, Tennessee with CSX and Union Tank as defendants.

In December 2018, Mr. Gentle was appointed Claims Administrator for the U.S. Pipe North Birmingham lead contamination Aggregate Settlement.

In May 2019, Mr. Gentle was appointed Settlement Special Master for a mercury contamination aggregate settlement in Florence, Alabama involving 97 plaintiffs.

In August 2019, Mr. Gentle was appointed by the Court to administer the aggregate settlement of a bus accident lawsuit in the Calhoun County, Alabama Circuit Court and involving 2 deaths and 44 personal injury claimants.

In November 2019 to November 2020, Mr. Gentle has been appointed Special Master to create grids and to administer three separate aggregate settlements for Bard IVC Filter claimants for six Plaintiffs' law firms.

In the Fall of 2020, Mr. Gentle was appointed Claims Administrator of the 4,000 Claimant Pradaxa Settlement.

In the Fall of 2021, Mr. Gentle was appointed Trustee and Claims Administrator of the $700-750M 100,000 claimant Purdue Opioid Bankruptcy Personal Injury Settlement, now on appeal, with an anticipated Effective Date in 2024.

In the Spring of 2022, Mr. Gentle was appointed Trustee and Claims Administrator of the Personal Injury Claimant Mallinckrodt Opioid Bankruptcy Settlement, with an Effective Date of June 2022.

Commencing in 2022, Mr. Gentle is the Administrator for 3 Medical Monitoring Programs that share a clinic in Vermont: Sullivan et al. v. Saint-Gobain Performance Plastics Corporation ("Bennington"); Burdick et al. v. Tonoga, Inc. ("Petersburgh"); and Baker et al. v. Saint-Gobain Performance Plastics Corp. et al. ("Hoosick Falls").

New engagements in the second half of 2022 and 2023 include claims administration of the TPC Explosion Settlement in Port Neches, Texas and the Arkema Explosion Settlement in Crosby, Texas, Aggregate Settlements involving Smith & Nephew Hips, Roundup, and a pesticide, Special Master for Opioid Settlement receipts by a State for its counties and cities, and Personal Injury Trustee for the MNK Opioid Settlement and the Endo Settlement.

2024 engagements include a food contamination class action settlement.

**B.** **Education**

| Class Rank | School |
| --- | --- |
| 4 | J.D., University of Alabama School of Law 1981 (Hugo Black Scholarship) |
| Middle | M.A., Jurisprudence, Oxford University 1980 (Rhodes Scholarship) |
| Middle | B.A., Honours Jurisprudence, Oxford University 1979 (Rhodes Scholarship) |
| 1 | M.S., Summa Cum Laude, University of Miami 1977 (Maytag Fellowship [washing machines]) |
| 1 | B.S., Summa Cum Laude, Auburn University 1975 (Danforth Scholarship [Purina]) |

## C.     Employment Record

| | |
|---|---|
| June 1992 - Present | Gentle Turner & Benson, LLC<br>Managing Partner<br>Birmingham, Alabama |
| September 1991 - June 1992 | Miller, Hamilton, Snider & Odom<br>Partner<br>Manager of Birmingham, Alabama Office |
| January 1987 - September 1991 | Schoel, Ogle, Benton, Gentle & Centeno<br>Partner<br>Birmingham, Alabama |
| December 1985 - January 1987 | Law Offices of James L. North<br>Associate<br>Birmingham, Alabama |
| June 1983 - December 1985 | AT&T<br>Senior Staff Attorney<br>Atlanta, Georgia |
| May 1981 - June 1983 | North, Haskell, Slaughter, Young & Lewis<br>Associate<br>Birmingham, Alabama |

## D.     Contact Information

| | |
|---|---|
| **Website:** | www.gtandslaw.com |
| E-mail address: | egentle@gtandslaw.com |
| Telephone number: | 205-716-3000 |
| Fax number: | 205-716-3010 |
| Cell Phone: | 205-960-2533 |

## E.     References

The Honorable Kenneth Feinberg
Feinberg Law Offices
1455 Pennsylvania Avenue NW #390
Washington D.C. 20004
(202) 256-3877
kfeinberg@feinberglawoffices.com

–6–

David Boies, Esq.
Boies Schiller Flexner
55 Hudson Yards, 20th Floor
New York, NY 10001
(914) 629-0200
dboies@bsfllp.com

The Honorable Thomas A. Bedell
Circuit Court Judge of Harrison County, WV
Harrison County Courthouse
301 West Main Street, Room 321
Clarksburg, West Virginia 26301
(304) 624-8593

Kim West, Esq.
Wallace, Jordan, Ratcliff & Brandt, LLC
First Commercial Bank Building
800 Shades Creek Parkway, Suite 400
Birmingham, Alabama 35209
(205) 870-0555
Email address: kwest@wallacejordan.com

The Honorable U.W. Clemon
Retired Federal District Court Judge
5202 Mountain Ridge Parkway
Birmingham, Alabama 35222
(205) 837-2898
Email address: clemonu@bellsouth.net

The Honorable R. David Proctor
United States District Court Judge
Hugo L. Black U.S. Courthouse, 7th Floor
1729 Fifth Avenue North
Birmingham, Alabama 35203
(205) 278-1982

Matthew H. Lembke, Esq.
Bradley Arant Boult Cummings, LLP
1819 Fifth Avenue North
Birmingham, Alabama 35203
(205) 521-8560
Email address: mlembke@bradley.com

J. Mark White, Esq.
White Arnold & Dowd, P.C.
2025 3rd Avenue North, Suite 500
Birmingham, Alabama 35203
(205) 323-1888
Email address: mwhite@whitearnolddowd.com

Robert B. Roden, Esq.
Shelby Roden, LLC
2101 Highland Avenue S, Suite 200
Birmingham, AL 35205
(205) 933-8383
Email address: bob@shelbyroden.com

Virginia Buchanan, Esq.
Levin, Papantonio, Thomas, Mitchell,
Rafferty and Proctor, P.A.
316 South Baylen Street
Pensacola, Florida 32502
(850) 435-7023
Email address: vbuchanan@levinlaw.com

D. Blayne Honeycutt, Esq.
Fayard & Honeycutt
419 Flori Avenue, SW
Denham Springs, Louisiana 70726
(225) 664-0304
Email address: dbhoneycutt@fayardlaw.com

Chris Hellums, Esq.
1100 Park Place Tower
2001 ParkPlace North
Birmingham, Alabama 35203
(205) 322-8880
Email address: chrish@pittmandutton.com

Lewis C. Sutherland, Esq.
Vinson & Elkins, LLP
1001 Fannin Street, Suite 2500
Houston, Texas 77002-6760
(713) 758-2367
Email address: lsutherland@velaw.com

Daniel E. Laytin, P.C.
Kirkland & Ellis, LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000
Email address: daniel.laytin@kirkland.com