FILED
2024 Oct-14 PM 12:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

# Exhibit A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

|  |  |
|---|---|
| ) | |
| ) | |
| **IN RE: BLUE CROSS BLUE SHIELD** ) | **Master File No. 2:13-CV-20000-RDP** |
| **ANTITRUST LITIGATION** ) | |
| **(MDL No.: 2406)** ) | |
| ) | **This document relates to:** |
| ) | **THE PROVIDER TRACK** |
| ) | |
| ) | |
| ) | **DECLARATION OF ROMA** |
| ) | **PETKAUSKAS REGARDING PROPOSED** |
| ) | **NOTICE PLAN** |
| ) | |
| ) | |
| ) | |
| ) | |

## DECLARATION OF ROMA PETKAUSKAS REGARDING PROPOSED NOTICE PLAN

I, ROMA PETKAUSKAS, hereby declare and state as follows:

### I. INTRODUCTION

1.      My name is Roma Petkauskas.  I am a partner at BrownGreer PLC ("BrownGreer"), located at 250 Rocketts Way, Richmond, Virginia 23231.

2.      I am over the age of 21.  Unless otherwise noted, the matters set forth in this Declaration are based upon my personal knowledge, information received from the parties in this proceeding (the "Parties"), and information provided by my colleagues at BrownGreer.  The opinions presented and recommendations made in this Declaration rest on my training and experience.

1

3.      I understand that Class Counsel in this matter will recommend that this Court appoint BrownGreer as the Settlement Notice Administrator for this class action settlement. BrownGreer engaged in a competitive bidding process to secure this recommendation.

4.      I submit this Declaration to describe my experience, the notice plan being developed for the proposed class action settlement of this litigation (the "Notice Plan"), and why my professional opinion is that the Notice Plan will be effective and will constitute the best notice that is practicable under the circumstances to the members of the class involved in this settlement, pursuant to any applicable law and rules, including Rule 23 of the Federal Rules of Civil Procedure, and constitutional due process.

## II. <u>BACKGROUND AND EXPERIENCE</u>

5.      I have worked in the mass claims area, including class actions, for over 20 years. I have extensive experience as an administrator designing and implementing class action settlements; as a notice administrator designing notice plans and executing notice to claimants and counsel; as a court appointed neutral involved in multiple claim proceedings; and am a frequent presenter on class actions and other complex litigation.  My personal biography is attached to this Declaration as Exhibit 1.

6.      BrownGreer is a law firm that has specialized in notice administration and settlement administration since its founding in 2002.  We are experts in the legal and administrative aspects of the design, approval, and implementation of notice plans, settlement programs and the design, staffing and operation of claims facilities to provide damages payments, medical monitoring, or other benefits for the resolution of multiple claims through class action settlement, bankruptcy reorganization, voluntary agreement, or other aggregation vehicles. We have played major roles in many of the largest and most complex multiple claim

proceedings and multiple claim settlement programs in history, serving as notice, claims, or

qualified settlement fund administrators; special masters, trustees, or settlement counsel.  The

BrownGreer Firm Overview, attached as Exhibit 2 to this Declaration, provides detail on our

firm.

      7.      BrownGreer has performed crucial administration or review roles in more than 75

major programs involving the disposition of over $33 billion in payments to qualifying

claimants.  In the course of the implementation of claims programs, BrownGreer has designed,

written and issued over 14 million notices to claimants and counsel on the outcome of the review

of their claims.  BrownGreer's work regularly involves drafting the text of notices to known and

unknown claimants or members of a class or settlement group, designing the appearance of such

notices to make them concise, clear and understandable, and designing and implementing the

method of distributing such notices in the best practicable manner to the persons or entities

affected by them.  In its capacity as a notice administrator, BrownGreer has sent more than 41

million direct notices by mail and email and has designed and implemented print and internet

publication notice campaigns achieving hundreds of millions of exposures.  We have extensive

experience in all aspects of notice and settlement design and implementation, including:

    (a) Drafting and overseeing the implementation of specific campaigns to certain groups
of claimants before an existing claims facility to accelerate the disposition of stalled
claims, to alert claimants to information and materials needed to complete their
claims to be reviewed for eligibility determinations, and to advise claimants of the
results of processing steps on their claims.

    (b) Designing, programming, testing, hosting and maintaining many settlement websites
to provide information on programs and containing complex functionality permitting
claimants and their counsel to submit claims materials, receive notices on claim
outcomes, take action on claims, and request materials.

    (c) Designing, staffing, training and operating call center systems and automated call
systems for claimants and counsel to hear information on settlement programs,

request information on notices and programs, or speak with specialists in the programs.

(d) Implementing notice programs to known and unknown potential claimants or class members, assessing the reasonableness and sufficiency of such notice programs, from both practical and legal perspectives, and working with marketing and paid media consultants to place public notice in written and broadcast media.

(e) Drafting individual group notices to conform to applicable legal requirements and making the text and instructions provided in such notices comprehensible and as simple as possible.

8.    BrownGreer has administered, served as experts, and/or otherwise consulted with settled parties on many other notice programs approved as sufficient by the overseeing court, including programs that required direct notice by mail or email to class members. The Firm Overview (Exhibit 2) shows our varied administration experience.

### III. <u>THE GOALS OF A SUCCESSFUL NOTICE PLAN</u>

9.    "[E]ach class member who can be identified through reasonable effort must be notified that he may request exclusion from the action and thereby preserve his opportunity to press his claim separately or that he may remain in the class and perhaps participate in the management of the action."  *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176-77 (1974). The notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to object."  *Mullane v. Central Hanover bank & Trust Co.*, 339 U.S. 306, 314 (1950).  Notice must "adequately describe" the substantive claims and "contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt out of the action." *Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1227 (11th Cir. 1998) (quoting *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1103-05 (5th Cir.1977)).  Further, notice must "clearly and concisely state in plain, easily understood language . . . the class claims, issues, or

defenses.'" *Drazen v. Pinto*, 101 F.4th 1223, 1262 (11th Cir. 2024) (quoting Fed. R. Civ. P. 23(c)(2)(B)(iii)).[1]

10.     The notice must be transmitted on dates that allow class members sufficient time to receive the notice, realize a need to react to it, and take the actions necessary to, if they so choose, participate in the settlement, be excluded from it, or object to it.  The assessment and significance of these criteria vary depending upon the nature of the claims involved in the settlement, the sophistication of potential class members, the information available on known class members, and the complexity of the actions required to seek benefits under the settlement.

11.     Here, the proposed Notice Plan, which consists of, among other things, direct delivery of a plain language short form notice, formatted as a postcard or email (referred to herein as the "Postcard Notice" and "Email Notice," respectively), publication of a robust long form notice designed to reach Class Members and inform them of the settlement and their rights under it, and a dedicated settlement website containing information about the Settlement exceeds the relevant standards.

## IV. **THE SETTLEMENT CLASS**

12.     ***The Proposed Settlement Class.***  The Parties' October 4, 2024 Settlement Agreement defines the proposed Settlement Class as the following:

> All Providers in the U.S. (other than Excluded Providers, who are not part of the Settlement Class) who currently provide or provided healthcare services, equipment or supplies to any patient who was insured by, or was a Member of or a beneficiary of, any plan administered by any Settling Individual Blue Plan during the Settlement Class Period.
>
> (Settlement Agreement § 1(iiii).)

---

[1] "Reasonable settlement notice may require individual notice in the manner required by Rule 23(c)(2)(B) for certification notice to a Rule 23(b)(3) class." Fed. R. Civ. P. 23 advisory committee's note.

"Provider" means any person or entity that provides healthcare services in the

U.S., including but not limited to a physician, group practice, or facility. (*Id.* § 1(rrr).)

"Excluded Providers" are:

(i) Providers owned or employed by any of the Settling Defendants; (ii) Providers owned or employed exclusively by Government Entities or Providers that exclusively provided services, equipment or supplies to members of or participants in Medicare, Medicaid or the Federal Employee Health Benefits Programs; (iii) Providers that have otherwise fully released their Released Claims against the Releasees prior to the Execution Date, including but not limited to Providers that were members of any of the settlement classes in *Love v. Blue Cross and Blue Shield Association*, No. 1:03-cv-21296-FAM (S.D. Fla.); or (iv) Providers that exclusively provide or provided (a) prescription drugs; (b) durable medical equipment; (c) medical devices; (d) supplies or services provided in an independent clinical laboratory; or (e) services, equipment or supplies covered by standalone dental or vision insurance. Any Provider that falls within the exclusion(s) set forth in clauses (i), (ii) or (iv) of this Paragraph 1(gg) for only a portion of the Settlement Class Period is a Settlement Class Member that may recover in the Settlement as set forth in the Plan of Distribution.

(*Id.* § 1(gg).)

13.     BrownGreer will coordinate with the Parties to identify and obtain relevant data

about potential Class Members, including data available from professional associations and data

vendors.  We will obtain potential Class Member mailing and email addresses from Definitive

Healthcare,[2] a specialized data vendor and provider of commercial healthcare data and analytics.

This data will include contact and practice information for active healthcare facilities, physicians

and other healthcare providers.  Because we understand the data obtained from the Settling

Defendants and Definitive Healthcare may not include all potential, identifiable Class Members

---

[2] Definitive Healthcare offers "robust affiliation and attribute data on more than 2.8 million healthcare professionals and 301,000 organizations" and "delivers proprietary affiliation data on provider relationships, including contextual elements like contact information . . ." Definitive Healthcare Provider Intelligence, https://www.definitivehc.com/industry/healthcare-providers#4257225834-1347328177 (last visited Oct. 2, 2024).

from the entire Class Period, particularly those providers who offer ancillary services[3] or have since retired, we will extend our research to organizations or commercial data management services that are likely to have information about those medical and ancillary providers who practiced during the Class Period, including the National Provider Identifier ("NPI") Registry. Additionally, we will coordinate with Signal Interactive Media ("Signal") to procure contact information for certain auxiliary providers[4] who are aged 65 and older from Data Axle, a reputable third-party list provider.

14.    BrownGreer will consult with the Parties to develop the "Initial Class Member List," which shall include any updated information for potential Class Members found by a search of the National Change of Address ("NCOA") database,[5] which is maintained by the United States Postal Service ("USPS").  After compiling the Initial Class Member List and throughout the Notice period, we will further develop the Initial Class Member List to include any forwarding addresses received from the USPS and updates received from additional address data research.  These inclusions will form the "Updated Class Member List."

## V. <u>DIRECT NOTICE EFFORTS</u>

15.    The first goal of this Notice Plan is to provide direct notice to all Class Members who can be identified through reasonable effort.  If the Notice Plan is approved by the Court, within 21 days of entry of the Court's preliminary approval of the Settlement, BrownGreer will

---

[3] "Ancillary services are medical services or supplies that are not provided by acute care hospitals, doctors, or health care professionals." *What Are Ancillary Services?*, https://www.horizonblue.com/shbp/tools-services/find-doctor/what-are-ancillary-services (last visited Oct. 4, 2024).
[4] Data Axle offers access to comprehensive contact information for approximately 125,000 auxiliary providers, aged 65 and older, except for providers in these fields: recreational therapists, clinical neurophysiologists, exercise physiologists, lactation consultants, and phlebotomists.
[5] The NCOA database contains records of all permanent change of address submissions received by the USPS from individuals and businesses. The class data is submitted against the database, and a Class Member's address is automatically updated with the new address from USPS data based on a comparison with the Class Member's name and last known address.

begin to email to Class Members with valid email addresses notices substantially in the form of an Email Notice developed with the Parties. We follow best practices to both validate emails and increase deliverability. Specifically, before distributing the Email Notice, we will validate all email addresses to promote deliverability. Those Class Members whose emails are deemed invalid will receive notice by mail instead.

16.     Further, we will design the Email Notice and its delivery process to avoid many common "red flags" that might otherwise cause an email recipient's spam filter to block or identify the Email Notice as spam. For example, where a notice campaign involves a high volume of emails, we send the email notices in smaller batches over the course of several days, and do not include attachments to the email notice, because high volume issuances and attachments are often interpreted by various Internet Service Providers ("ISP") as spam or untrustworthy.

17.     We also account for the real-world reality that some emails will inevitably fail to be delivered during the initial delivery attempt. Therefore, after the initial noticing campaign is complete and after an appropriate resting period (which allows any temporary block at the ISP level to expire), we will cause a second round of email noticing to continue to any email addresses that were previously identified as soft bounces and not delivered. In our experience, this minimizes emails that may have erroneously failed to deliver due to sensitive servers and optimizes delivery. All emails that are undeliverable and identified as hard bounces, or fail to deliver after reattempt efforts, will be converted to letter notices that we will mail using the associated physical addresses.

18.     Where an Email Notice proves undeliverable after two attempts, the email address is identified as inactive or invalid, or email address information is unavailable, we will mail to

the Class Member a standard-size (4.25"x6") postcard substantially in the form of the Postcard Notice developed with the Parties.  The Email and Postcard Notices will provide the settlement website address for Class Members to visit to read and download the Long Form Notice prepared by the Parties.

19.     We will employ best practices to increase the deliverability rate of the mailed notices by causing all mailing address information to be updated using the NCOA, which provides updated address information for individuals or entities who have moved during the previous four years and filed a change of address with the USPS.  In addition, the addresses will be certified via the Coding Accuracy Support System to ensure the quality of the zip code and verified through Delivery Point Validation to verify the accuracy of the addresses.

20.     If any postcard sent is returned to us by the USPS as undeliverable, we will re-mail the postcard immediately to the forwarding address, if any, provided by the USPS on the face of the returned mail.  If the returned mail does not reflect a forwarding address, we will attempt to identify an alternative mailing address through PacificEast, Dun & Bradstreet, or another data curation company that specializes in data enhancement and address verification. Where we discover secondary mailing addresses, we will re-mail Postcard Notices to those new addresses.  We will update the Class Member List with all information gathered in these steps.

21.     The Federal Judicial Center has advised that it is reasonable to reach between 70– 95% of the Settlement Class, with a median reach rate of 87%. (Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide, at 3 (2010)).  Through direct notice and because of the considerable data resources identified by the Parties, which we will leverage for as much relevant Class Member data as possible, combined with the data updates we will

produce when compiling the Initial Class Member List, we expect to reach by direct notice alone

this threshold percentage of known, identifiable Class Members.

22.     After the initial notice distribution, but before the deadline to file claims,

BrownGreer will send reminder Emails or Postcard Notices to those Class Members who have

not yet engaged meaningfully with the settlement program, such as by submitting a claim or

opting out of the settlement.

## VI. SUPPLEMENTAL PUBLICATION NOTICE

23.     Although a reach percentage of over 70% for known Class Members is probable

from the direct notice component of the Notice Plan, there are a few unpredictable factors that

could reduce the reach of Class Members, such as the strength of addresses we receive for this

population of Class Members from the various data sources.  In addition, I understand from

Class Counsel that some providers who worked during the Settlement Class Period may not

appear in the information and records we will receive from the various data sources because they

have since retired, or are ancillary service providers.

24.     We have coordinated with Signal to develop a carefully planned public notice

campaign that will supplement direct notice efforts to target those Class Members we cannot

reach by email or mail because their identities are unknown, their current mailing or email

addresses are unavailable, or mailed notices are returned to us by USPS as undeliverable and we

are unable to find an updated address.  This publication notice will also reach Class Members

already notified directly.  By reaching these persons again, the publication notice will serve the

goals of strengthening Class Member awareness of the Settlement and engaging those persons to

become more likely to participate in the settlement program.  See the *Declaration of Shannon R.*

*Wheatman, PH.D on Adequacy of Notices and Notice Plan* for more details about the publication notice.

## VII. <u>SETTLEMENT WEBSITE</u>

25.    We will establish and maintain a dedicated public website for this settlement to provide relevant information about the Settlement, allow visitors to view and download critical settlement information, including the long form notice, and permit potential Class Members to submit claims and any additional required documentation through a secure electronic portal.

26.    The settlement website will be ADA-compliant and optimized for mobile visitors so that information loads quickly on mobile devices. Additionally, the settlement website will be designed to maximize search engine optimization through Google and other search engines. Keywords and natural language search terms will be included in the settlement website's metadata to maximize search engine rankings.

## VIII. <u>DATA SECURITY</u>

27.    BrownGreer's programs and systems are evaluated annually and every year since 2016, it has been awarded SOC 2, Type II certification. SOC 2, Type II certification is an independent auditor's report that follows a three-month examination of the design and actual operating effectiveness of our system's security, availability, and confidentiality controls, considering system aspects from infrastructure, to software, data protection, system monitoring, and recovery. BrownGreer runs regular vulnerability scans on all hosts within its network, both internally and public facing. For any area where a potential risk may develop, immediate steps are taken to address them and continually enhance data security.

## IX. CLASS MEMBER SUPPORT

28.     To support Class Members throughout the notice and claims submission periods, we will establish: (a) a toll-free telephone number to receive calls related to the settlement that allows callers to access an interactive menu of recorded Frequently Asked Questions ("FAQs") about the settlement and responses in English; (b) a monitored email inbox with an auto-response providing FAQs and responses, with follow-up by a live program specialist if warranted; and (c) a settlement program post office box in Richmond, Virginia, near our headquarters, to receive all physical mail related to the program.

## X. OPT OUT AND OBJECTION PROCESSING

29.     Pursuant to paragraph 48 of the Settlement Agreement and paragraph 14 of the long form notice, Class Members who wish to exclude themselves from the settlement must submit their written requests to the Settlement Claims Administrator.  A valid Exclusion Request must include the Class Member's: (a) name; (b) address and telephone number; (c) if a Health Care Facility, the Health Care Facility type, and, if a Medical Professional, the Medical Professional type; (d) if a Medical Group, Medical Organization or Medical Professional, the NPI, Tax Identification Number ("TIN") and the last four digits of their Social Security Number, as applicable, and, if a Health Care System or Health Care Facility, the NPI and TIN, as applicable; (e) a statement that they wish to be excluded from the Class; and (f) personal, physical signature. Exclusion Requests must be postmarked or received by the Opt-Out Deadline.

30.     Pursuant to paragraph 16 of the long form notice, Class Members who wish to object to the Settlement must send a letter to the Settlement Administrator that includes: (a) the name of the action; (b) a description of the objections; (c) the Class Member's full name,

address, email address, and telephone number; (d) a description of to whom the objection applies

(the Class Member or a subset of the Settlement Class); (e) any agreements relating to the

objection between the Class Member and their counsel and/or any other person or entity; and (f)

the Class Member's signature, or the signature of the Class Member's attorney; (g) a statement

indicating whether the Class Member intends to appear at the Final Fairness Hearing; and (h) a

declaration under penalty of perjury that the information provided is true and correct.  Objection

letters must be postmarked or received by the Objection Deadline.

31.     BrownGreer will receive and process correspondence from Class Members who

wish to object or be excluded from the Class and will track and report this information to the

Parties.

## XI. <u>CONCLUSION</u>

32.     The proposed Notice Plan provides direct, individual notice to Class Members

to the extent reasonably possible.  The Notice Plan satisfies constitutional due process and

Federal law by providing the best notice practicable under the circumstances, including

giving individual notice to all Class Members who can be identified with reasonable effort

and supplementing those efforts with paid media elements.  With an estimated direct notice

reach exceeding 70% of known Class Members and a digital media component targeting

those Class Members who consume media electronically and actively search for information

relevant to this matter, the Notice Plan is likely to provide the same or better reach than

courts have approved in other similar class matters.

I, Roma Petkauskas, hereby declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.  Executed on this 10th day of October 2024.

_Roma Petkauskas_
_____
Roma Petkauskas

# Exhibit 1:

Personal Biography of Roma Petkauskas

# BrownGreer

Professional Service. Redefined.



# Roma Petkauskas

Partner

☐ (804) 521-7218

✉ rpetkauskas@browngreer.com

Roma assists counsel, courts and companies with the development and implementation of complex claims settlement programs. Serving in the roles of a claims administrator and a Court Appointed neutral, she provides subject-matter guidance on effective and efficient program implementation, internal controls, and fraud prevention and detection.

Roma currently manages the implementation of the national opioid settlements. In that role, she coordinates with settling states and subdivisions to make payments under the various national opioid settlements. Roma also implements settlements to resolve opioids litigation brought by tribes and tribal health organizations.

Additionally, she oversees the implementation of all aspects of the NFL Concussion Settlement Program. The terms of the Program provide a wide range of benefits to retired NFL players, and Roma works with the Special Masters, Parties, and law firms representing the Players to ensure compliance with all requirements.

Finally, Roma assists the Court and the Parties in managing data through the MDL Centrality platform in the largest MDL in U.S. History, In Re: 3M Combat Arms Earplug Products Liability Litigation, MDL No. 2885.

In 2012, Roma relocated to New Orleans, LA, to oversee the setup, hiring, training, and staffing of 18 offices throughout the Gulf region and a review center in New Orleans to review claims and assist claimants affected by the oil spill in the Court Supervised Deepwater Horizon Settlement. The Program, opened in June 2012, has issued awards totaling more than $12 billion with regard to more than 178,000 claims. The overseeing Court noted that this was one of the largest class action settlements ever, and our achievement reflects the unprecedented, tremendous eight-year effort, and that as of January 2021, the Claims Process is complete.

Roma has significant experience with pharmaceutical and medical device mass tort settlements. In this regard, she provided oversight of claims processing in connection with a major, nationwide class action settlement to which Wyeth is a party. Early in her career at BrownGreer, Roma played a key role in developing the complex algorithm that is used in determining eligibility for Matrix Benefits under the Settlement Agreement. She also assisted Pfizer in developing criteria for the court-approved 10th amendment, as well as with drafting procedures for handling Medicare claims. Her responsibility in the Pfizer settlement included providing oversight for the implementation of the terms of the Settlement Agreement. Since then, Roma served as a Claims Administrator, Court appointed neutral, and assisted with mediations in various global resolution and inventory settlement Programs.

> "I am a very strong believer in opportunities to others. Within BrownGreer, that's the culture I try to promote — helping people advance, realize who they are, and find happiness in what they're doing."

Her experience includes providing subject-matter guidance in developing fraud detection and prevention procedures. Recognizing that settlement programs are vulnerable to various attempts of fraud, Roma developed a state-of-the-art fraud detection and prevention program, using extensive fraud vulnerabilities assessment checklists and having advanced data analytics tools to observe and summarize trends to allow meaningful analysis. When needed, she works successfully with multiple law enforcement agencies on case referrals and assists with investigations and trials. In the

# BrownGreer

administration of the Deepwater Horizon Settlement and its predecessor program, the Gulf Coast Claims Facility, Roma accepted the "Coin of Excellence" from the United States Attorney for the Middle District of Louisiana for work to implement processes for fraud detection analytics, review, and referral of fraudulent claims to law enforcement. Roma also directed and implemented fraud detection and prevention programs in the $4.85 billion Vioxx settlement and the $2.5 billion nationwide ASR Hip settlement.

Roma regularly assists clients implementing smaller settlements arising in a variety of contexts. Bringing her skills of efficient administration to bear, she handles all projects to the utmost satisfaction of her clients. She speaks frequently on topics involving claims administration best practices and litigation management.

Roma began her career at BrownGreer in 2001. Having received a Bachelor of Jurisprudence in International, European Union and Comparative Law from the International University of Concordia Audentes, she left the firm to earn her Juris Doctor degree from the University of Richmond School of Law and graduated in the top 5% of her class. Roma's education also includes a semester spent at American University, Washington College of Law, as a visiting scholar in the International Legal Studies Master of Law program. Her focus in this program was on direct investment international regulatory regimes.

Personally, Roma strongly believes in the value of helping one another, and as such, she started and runs the Petkauskas Foundation. Since its inception in 2014, the Foundation organizes and operates various developmental, extracurricular, educational, and entertainment activities for underprivileged and disadvantaged minors in Virginia, Louisiana, and in Lithuania.

## EDUCATION

- University of Richmond Law, J.D., *magna cum laude*, 2005
- International University Concordia Audentes, B.J., *summa cum laude*, International, European Union and Comparative Law, 2002

## BAR ADMISSIONS

Virginia, 2005

## CERTIFICATIONS

Certified Fraud Examiner

**AWARDS AND RECOGNITION**

United States Attorney for the Middle District of Louisiana Coin of Excellence

**MEMBERSHIPS**

Fellow, Academy of Court-Appointed Neutrals

**SELECTED EXPERIENCE**

**Long-Term Settlements**

*In re National Prescription Opiate Litigation*, No. 1:17-MD-2804 (N.D. Ohio).

> Distributors: AmerisourceBergen, Cardinal Health, CVS, Kroger, McKesson, Rite Aid, Walgreens, Walmart

> Manufacturers: Allergan, Johnson & Johnson, Teva Pharmaceuticals

*In re Mallinckrodt plc*, Case No. 20-12522-JTD (Bankr. D. Del.).

*In re Tribal Opioid Litigation,* MDL No. 2996 (N.D. Ohio)

*In re McKinsey & Co., Inc. National Prescription Opiate Consultant Litigation*, Case No. 3:21-md-02996-CRB

*In re National Football League Players' Concussion Injury Litigation*, MDL No. 2323 (E.D. Pa.).

*In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL Docket No. 2179 (E.D. La.).

Gulf Coast Claims Facility

**Product Liability Settlements**

*In re 3M Combat Arms Earplug Products Liability Litigation*, MDL No. 2885 (N.D. Fla.).

**Medical Devices and Pharmaceuticals**

*Kilmer v. Medtronic Inc.*, Case No. 1:20-cv-01277-AWI-HBK (E.D. Cal.).

*In re Allergan Biocell Textured Breast Implant Product Liability Litigation*, MDL No. 2921 (D.N.J.).

*In re Zantac (Ranitidine) Products Liability Litigation*, MDL No. 2924 (S.D. Fla.).

*In re Abilify (Aripiprazole) Products Liability Litigation*, MDL No. 2734 Settlement Program (N.D. Fla.).

*In re Taxotere (Docetaxel) Products Liability Litigation*, MDL No. 2740 (E.D. La.).

*In re DePuy Orthopedics, Inc., ASR Hip Implant Products*, MDL Docket No. 2197 (N.D. Ohio).

*In re Vioxx Products Liability Litigation*, MDL Docket No. 1657 (E.D. La.).

*In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Products Liability Litigation*, MDL Docket No. 1203 (E.D. Pa.).

**RECENT SPEAKING ENGAGEMENTS**

Mass Torts Made Perfect Seminar, Panelist with Ed Gentle, Hon. Glenn Norton (Ret.), Michael Borden, Erin Copeland, Court Appointed Neutrals in Mass Torts, 2024

Huntington Bank Complex Litigation Ethics Conference, Panelist with Josh Davis, Hon. William Fletcher, Eugene Volokh, AI, Complex Litigation, and Ethics: The Future, 2024

New Jersey Association for Justice Boardwalk Seminar, Speaker, Cybersecurity and Data Breach in Mass Tort, 2023

Huntington Bank Complex Litigation Ethics Conference, Panelist with Scott Dodson, Myriam Gilles, Judge Thomas Hixon, Brandon Prince, Judge Vaughn Walker, Steve Weisbrot, The Ethics of Distributing Settlement Funds and Reporting to Courts,  2023

Trial Lawyers of Mass Torts Bench and Bar Conference, Panelist with Judge Casey Rodgers, Judge William F. Highberger, Heidi Levine, Paul Pennock, Vetting and Bellwether Selection, 2022

Western Alliance Bank Class Action Forum, in collaboration with the University of San Diego School of Law, Panelist, 2022

# Exhibit 2:

BrownGreer PLC Firm Overview

# BROWNGREER | Professional Service. Redefined.



# Firm Overview

October 10, 2024

## TABLE OF CONTENTS

The BrownGreer Difference ............................................................... 3

Notice Administration. ................................................................... 4

Claim Review & Adjudication ............................................................ 5

Fund Allocation ........................................................................ 6

Fund Administration and Distribution .................................................... 7

Case Studies ........................................................................... 8

BrownGreer Experience ................................................................. 13

BROWNGREER | Professional Service. Redefined.

# The BrownGreer Difference

**BrownGreer is an industry leader** in providing settlement administration and litigation management services to law firms, corporations, and government agencies. We are attorneys, analysts, software programmers, communication center specialists, and claims reviewers devoted to providing innovative solutions that surpass our clients' expectations and deliver measurable results.

**Founders Orran Brown, Sr. and Lynn Greer** have been at the center of some of the most significant claims resolution programs for more than 25 years. With a foundation in designing and managing claims resolution programs in ground-breaking class action settlements, Orran and Lynn launched BrownGreer in 2002 with the mission to fulfill the responsibilities of any settlement program to the satisfaction of all involved parties, including claimants, counsel, courts, and other governmental entities.

**We have served** as claims administrators, trustees, Special Masters, advisors, data managers, and expert witnesses for matters spanning a broad spectrum of industries. With over two decades of experience in providing notice administration, multiple claims resolution, and data management solutions for some of the most significant settlement programs in history, we have the resources and subject-matter expertise you can rely on to reach an efficient and effective solution.

"In short, BrownGreer's cutting edge technology, and its in-depth knowledge and experience with the complexities of this litigation, are unparalleled and have been invaluable in the efficient, equitable, and effective management of the MDL."

**–The Hon. M. Casey Rodgers,** U.S. District Court Judge, Northern District of Florida, 2022 Case Management Order, *In Re: 3M Combat Arms Earplug Products Liability Litigation*

# Notice Administration
## Knowledge, Creativity and Resourcefulness.

**When designing notice plans,** BrownGreer focuses on reaching potential class members using the most effective methodologies to target the impacted population.  Each plan is created to inform them in clear terms of the existence of the proposed settlement, how it affects them, their rights and obligations under the settlement agreement, the actions they may take, any deadlines for acting, and the consequences of acting or failing to act by the deadline.

We have issued millions of direct class notices by email, short-form postcards, and/or long-form letters or notice packets.  Our notice services follow through to the resolution of a settlement program. We have also issued millions of review determination notices and courtesy or instructional notices to class members and their counsel.

BrownGreer also designs and executes public notice campaigns through traditional print and digital channels, including social media, that meet and exceed court mandated requirements for approval.  Our goal in every public notice campaign is to connect with the right people in the right places, using sophisticated analytics such as geo-location and profile matching.

## Notice Services

| DIRECT NOTICE | ENGAGEMENT | PAID MEDIA | REMINDERS |
|---|---|---|---|
| Data Collection/ Analysis/Refinement | Press Release | Digital Displays | Direct Notice |
| Postal Mail | User Groups | Print Publications | Engagement |
| Email | Industry Groups | TV/Radio | Paid Media |

## AT A GLANCE

**55+ million**
Total Notices Issued

**41+ million**
Class Notices

**14+ million**
Program Notices

# Claim Review & Adjudication
## We bring more than accuracy to the table.

Our claims reviewers are highly trained and bring experience from the largest, most complex settlement programs in history.

**We administer and process** claims for settlements arising from class actions, multidistrict litigation, government enforcement proceedings, and other aggregation vehicles.  Our court-supervised and voluntary settlement program experience covers a broad range of causes of action involving a wide variety of industries.

From our first program onward, we have blended technology with dedicated staff to provide the most effective, efficient, and accurate claims resolution designs and systems, allowing us to handle any program no matter how large or complex.

**We are proud to have served** in some of our nation's most significant resolution programs, ranging from the $19 billion Fire Victim Trust to the programs established in the wake of the Deepwater Horizon oil spill. We also have been chosen to administer some of our country's smaller, but most sensitive settlements, including the One October Settlement Fund, a private settlement to resolve claims arising from the October 1, 2017 mass shooting at the Route 91 Harvest Festival in Las Vegas, Nevada, and the Catholic Diocese of Richmond Independent Reconciliation Program, a private settlement to resolve sexual abuse claims in the Richmond Catholic Diocese.

**As a firm of attorneys, analysts, software programmers, and claims reviewers**, we combine highly skilled lawyering with a practical understanding of the need for organized and centralized information and data, effective communication, and the administrative processes necessary to resolve multiple claims efficiently.

Clients often refer to our claims administration services as the "gold standard" because of our relentless focus on legally sound and administratively efficient claims processes, our philosophy of administrative cost containment, and the sense of urgency we bring to all that we do.

---

**AT A GLANCE**

### 4.5+ million
Claims reviewed
across all programs

### 100+
Total programs involving claim
review

---

# Fund Allocation
## Methodical, Fair and Transparent.

**Determining how to equitably distribute funds** to claimants in a way that is transparent and understandable is key to the successful resolution of a settlement program. From simple pro rata distribution to economic life value modeling, we have decades of experience designing allocation methods that are as fair as possible to every claimant and address individual requirements of a program.



Individual settlements

Designing matrices or grids to be used in "inventory" settlements for both plaintiff's and defense firms

Firm-by-firm settlements

Developing Relative Equity Models for complicated cases involving injury categories and other enhancement factors such as economic loss and medical expenses

Bankruptcy reorganization plans

Court-Assisted global settlement programs

Class action settlements

# Fund Administration and Distribution
## Validated, Secure and Verified.

**We efficiently and effectively provide** the full breadth of all payment related tasks and responsibilities needed to ensure the successful fulfillment of program payment needs. We can design procedures to calculate award amounts, print, mail and track the status of checks, and in the case of electronic payments, we can coordinate the seamless exchange of program funds through PayPal, Wire, Zelle, Venmo, or ACH transactions. Additionally, we can provide any ensuing post-payment oversight and follow-up activities, as needed, such as generation of end-of-year informational tax forms, stale check re-issuance, as well as ongoing monitoring and reconciliation of account balances and close-out reports.





**BrownGreer** | Professional Service. Redefined.

**CASE STUDY**

# Combat Arms Earplugs Settlement and 3M Combat Arms Earplug Products Liability Litigation

> BrownGreer serves as the Settlement Administrator in the Combat Arms Earplugs Settlement established to resolve all claims in MDL and Minnesota related to Combat Arms Version 2 earplugs manufactured from 1999 to 2015. The $6 billion fund will go toward nearly 270,000 claims over the course of seven years.

**In our role as Settlement Administrator**, BrownGreer acts in accordance with the provisions of the Master Settlement Agreement and orders of the Court. These duties include processing claims, issuing payments, and reporting as required by the Court.

BrownGreer developed and currently operates a secure portal for plaintiffs' firms to exchange information with the Settlement Program, see data and notices for participating claimants, and run reports on claimant statuses, payments, and liens.

We regularly issue communications and notice to thousands of claimants and maintain a dedicated communications center to handle hundreds of inquiries on a daily basis.

Prior to the settlement, MDL Centrality, a proprietary litigation management system developed by BrownGreer, was selected as the technological platform to support the parties engaged in 3M's Combat Arms Earplug Products Liability Litigation following an extensive vetting process in 2019. The litigation grew exponentially since its inception in 2018, amassing more than 240,000 claims before a settlement was reached in 2023. It is now recognized as the largest MDL in U.S. history.

**BROWNGREER** | Professional Service. Redefined.

BrownGreer

**CASE STUDY**

# National Opioid Settlement Administration

> BrownGreer serves as the Directing Administrator for the $26 billion National Opioid Settlement finalized with the "Big Three" drug distributors – AmerisourceBergen, Cardinal Health, and McKesson – and opioid manufacturer Johnson & Johnson.

**The settlement requires** 85 percent of funds be allocated to programs that will help address the ongoing opioid crisis through treatment, education, and prevention efforts. A majority of states have passed agreements that dictate how funds will be distributed between state and local subdivision governments, ensuring funds will effectively reach impacted communities.

The settlement is the first of its kind to administer resources directly to state and local governments specifically for relief programs to help rebuild the devastation caused by the opioid epidemic. As Directing Administrator, we will allocate and distribute funds based on population adjusted for the proportionate share of the opioid epidemic impact. The share of the impact is calculated using detailed and objective national data, including the amount of opioids shipped to the state, the number of opioid-related deaths that occurred in the state and the number of people who suffer opioid use disorder in the state.

BrownGreer contacted all settling states, performed and verified calculations for each state pursuant to the applicable calculation methodology, issued allocation notices to each state as needed, collected payment instructions from 4,813 beneficiaries, which include state and local governments, developed secure portals and serve as a system of record, and have paid out more than $3.4 billion to 4,656 beneficiaries.

---

**KEY STATISTICS**

## 4,380
Government beneficiaries

## $26 billion
Fund

---

**CASE STUDY**

# NFL Concussion Settlement

> The NFL Concussion Settlement program went into effect in 2017 to resolve the NFL Players' Concussion Injury Litigation, MDL No. 2323. Since then, over 20,000 retired players registered as settlement class members, over 4,000 have filed claims, and we have issued 1,796 payable award determinations for over $1.3 billion.

**As the Claims Administrator** in the NFL Concussion Settlement, BrownGreer oversees the intake, processing, and payment of claims for six different qualifying medical diagnoses. We established a national network of Qualified MAF Physicians and coordinate with the Court and its Special Masters in implementing all aspects of the program.

We became the Baseline Assessment Program (BAP) Administrator in 2023, requiring us to manage a network of 176 neurologists and neuropsychologists. In our roles as Claims and BAP Administrator, we communicate regularly with settlement class members and their lawyers, as well as the Qualified MAF Physicians and Qualified BAP Providers, through email, by phone, and through quarterly newsletters sent out by email and mail to all settlement class members, lawyers, and MAF and BAP providers.

The Settlement program was initially plagued with suspicions of potentially fraudulent claims. We implemented fraud prevention and detection processes that addressed these concerns, while assuring that payments are made to eligible claims. We coordinate with local law enforcement officials and the Department of Justice regarding our findings of potential fraud and provide trial assistance as needed.

CASE STUDY

# Fire Victim Trust

> Established in 2020 from the bankruptcy of PG&E, the Trust offers an efficient and equitable claim review process to compensate victims for damages caused by the 2015 Butte, 2017 North Bay, and 2018 Camp Fires.

**We serve as the Claims Processor** in the Fire Victim Trust, a $13.5 billion fund established for the benefit of claimants who suffered property loss, emotional distress and other damages as a result of the Butte, North Bay, and Camp Fires in Northern California. Since 2020, BrownGreer has dedicated hundreds of resources to this assignment, including claims evaluators, software developers, data analysts, communication experts, and senior lawyers.

BrownGreer's role in the Fire Victim Trust has covered the full range of administrative tasks. We constructed the online portal through which claims are submitted, evaluate claims and supporting documents submitted by claimants, calculate claim awards for fire victims, handle communications involving award amounts and other important factors, and distribute payments to eligible claimants.  In addition, BrownGreer works closely with the Trustee, the Claims Administrator and legal counsel to advise the leadership on a wide range of issues relating to the adjudication of claims.

More than 70,000 claimants filed claims in the PG&E bankruptcy and are registered to seek compensation from the Fire Victim Trust. To date, the Fire Victim Trust has evaluated more than 40,000 submissions from over 70,000 individual claimants. In all, the Trust has received more than 250,000 unique claims of damage across nine different claim categories, including: Real and Personal Property, Emotional Distress – Zone of Danger, Emotional Distress – Nuisance, Personal Income Loss, Business Income Loss, Physical Injury, Wrongful Death, Out-of-Pocket Expenses, and Other Damages. The Fire Victim Trust has paid a total of $11.27 billion to eligible claimants and will make additional distributions over the course of 2024.

As part of its engagement for the Fire Victim Trust, BrownGreer worked with FEMA to satisfy obligations under the Stafford Act. FEMA paid fire victims affected by wildfires before the bankruptcy was established and the Stafford Act requires claimants to repay those emergency funds under certain circumstances. In the FVT, BrownGreer participated in a data sharing agreement with FEMA through which the parties exchanged information enabling them to resolve the downstream implications of the benefits paid to those individuals.

**KEY STATISTICS**

| $13.5 billion | 71,000 | 254,800 |
|---|---|---|
| Bankruptcy Trust | Claimants with submitted claims questionnaires | Claims asserted |

 BrownGreer | Professional Service. Redefined.

CASE STUDY

# Gulf Coast Claims Facility and Deepwater Horizon Settlement

> On April 20, 2010, an explosion on the Deepwater Horizon Macondo oil well drilling platform killed 11 workers and started the largest marine oil spill in U.S. history, releasing millions of barrels of oil into the Gulf of Mexico. BrownGreer filled the administrative, review, and technology needs of the Gulf Coast Claims Facility ("GCCF"), a voluntary claims program made before any court-supervised settlement to resolve economic loss and physical injury claims arising from the oil spill.

**At the end of the GCCF**, the court appointed BrownGreer to intake, review, and process to payment claims in the Deepwater Horizon ("DWH") Settlement Program, a court-supervised class action settlement created to replace the GCCF process.

In the DWH Program, we designed and implemented processes for the 13 different claim types outlined in the court-approved settlement agreement, issued determinations, and handled program communication with lawyers and unrepresented claimants. To facilitate better communication and accessibility, we opened and operated 21 satellite offices across the Gulf Coast.

The DWH Program paid more than $12 billion on nearly 391,000 claims.

We also managed the DWH Seafood Compensation Program, a separate $2.3 billion fund established to compensate those involved in the Gulf fishing industry, such as vessel owners, vessel lessees, boat captains, and crew. The DWH Seafood Compensation Program covered effectively everything from individual subsistence fishermen to massive dockside commercial fish processing operations. We evaluated all manner of claims from persons and businesses related to nearly all marketable species of fish and shellfish in the Gulf. We coordinated with a number of state and federal stakeholders, including the Louisiana Department of Wildlife and Fisheries, from whom we obtained trip ticket databases to support claim evaluations.

We allocated earnings using the vessel registration numbers and boat captain licenses to determine historical earnings and a benchmark period for compensation for each claimed species. Crew members could prove lost earnings by providing tax documentation, paystubs, or correspondence from the employer. We then compared multiple compensation methodologies and determined the most appropriate award, then provided a written accounting of earnings for each year, the years chosen as benchmarks, and the steps for calculating a final award to each claimant.

To ensure the integrity of all claims in the DWH Program, we liaised with the National Center for Disaster Fraud and the Department of Justice to coordinate findings of fraud.

# Economic Loss Program Experience

| | ECONOMIC LOSS PROGRAM DESCRIPTION | ROLE | PROGRAM SIZE | SETTLEMENT FUND |
|---|---|---|---|---|
| 1. | **Hillsborough County Surtax Settlement.** This settlement resolves a case against Hillsborough County, Florida and the Florida Legislature related to $569 million in collected surtax. | Notice and Claims Administrator | TBD | $569 million |
| 2. | **Porter Ranch Private Party Claims Settlement Program.** Private settlement to resolve claims arising from the Octovber 23, 2015 gas leak from a storage well at the Aliso Canyon natural gas storage facility in Porter Ranch, California. | Settlement Administration | 36,000 Claimants | $1.6 Billion |
| 3. | **In re: PG&E Corporation and Pacific Gas and Electric Company, Debtor, Bankruptcy Case No. 19-30088, (Bankr. N.D. Ca.).** Settlement program created in the Chapter 11 bankruptcy proceeding of PG&E Corporation to resolve claims from individuals and businesses who suffered personal injury, property damage and economic losses as a result of fires allegedly caused by PG&E. | Claims Processor | 70,000 Claiamnts | $13.5 Billion |
| 4. | **In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010, MDL Docket No. 2179 (E.D. La).** Class action settlement to resolve economic loss and property damage claims arising from the April 20, 2010 oil spill in the Gulf of Mexico. | Claims Administrator Services | 260.000 Claimants | Uncapped Fund; $11.6 Billion Disbursed |
| 5. | **Gulf Coast Claims Facility.** Voluntary claims program to resolve economic loss and physical injury claims arising from the April 20, 2010 oil spill in the Gulf of Mexico. | Claims Administrator Services; Transitio Coordinator | 600,000 Claimants | $20 Billion cap; $6.5 Billion Disbursed |
| 6. | **In re Chinese-Manufactured Drywall Products Liability Litigation, MDL Docket No. 2047 (E.D. La).** Class action settlement for the remediation of homes containing defective drywall manufactured in China. | Claims Administrator; Lynn Greer Special Master | 25,000 Claimants | Blend of uncapped and Capped Finds; $610 Million Disbursed |
| 7. | **In re Syngenta AG MIR 162 Corn Litigation, MDL Docket No. 2591, (D. Kansas).** Class action settlement to resolve claims concerning genetically modified corn and crop values. | Notice and Claims Administrator | >600,000 Class Members | $1.51 Billion |
| 8. | **In re Black Farmer's Discrimination Litigation, No. 08-mc-0511 PLF (D.D.C.).** Class action settlement to resolve claims of discrimination against African-American farmers by the U.S. Department of Agriculture regarding farm loans and loan servicing for claimants who had missed deadlines in a prior settlement. | Claims Review and Evaluation | 40,000 Claimants | $1.25 Billion |
| 9. | **Travel Insurance Refund Program in the matter of Jefferson Insurance Company NAIC #11630 and in the matter of BCS Insurance Company NAIC #38245.** Regulatory settlement program between certain travel insurance companies and State regulators to issue refunds to policy holders who purchased travel insurance through an Opt-Out Marketing Plan. | Program Administrator | 504,927 Payees | To Be Determined |
| 10. | **Ortega Melendres, et. al., v. Paul Penzone, et. al., No. CV-07-2513-PHX GMS (D. Az.).** Voluntary program to resolve claims that individuals were stopped or held by the Maricopa County Sheriff's Office in violation of a court order. | Notice and Claims Administrator | 200 Claimants | Uncapped Fund |
| 11. | **Confidential.** Conciliation agreement between a financial institution and the U.S. Department of Housing & Urban Development related to alleged discriminatory acts in mortgage loan application handling. | Notice and Claims Administrator | Class Size Unknown | Fund Uncapped |
| 12. | **United States Securities and Exchange Commission v. American International Group, Inc., No. 06-Civ. 100-LAP (S.D.N.Y.).** Securities enforcement action settlement between the SEC and a multinational insurance corporation over allegations of accounting fraud and related shareholder litigation. | Audited the Claims Administrator | 260,000 Class Members | $843 Million |

| | ECONOMIC LOSS PROGRAM DESCRIPTION | ROLE | PROGRAM SIZE | SETTLEMENT FUND |
|---|---|---|---|---|
| 13. | *In re Genetically Modified Rice Litigation,* **MDL Docket No. 1811 (E.D. Mo.).** Voluntary claims program to resolve claims concerning genetically modified rice and crop values. | Claims Administrator | 12,000 Claimants | $750 Million |
| 14. | *CBP Global Settlement.* Settlement program reached by the Department of Homeland Security, U.S. Customs and Border Protection (CBP) and the National Treasury Employees Union (NTEU) to resolve certain grievances filed by NTEU. | Settlement Administration | 25,000 Class Members | $184.1 Million |
| 15. | *United States v. National Treasury Employees Union, No. 93-1170 (D.C. App.).* Class action settlement between a federal employees' union and the U.S. Government for back payment of wages. | Trustee of Settlement Trust | 212,000 Class Members | $173 Million |
| 16. | *Blando v. Nextel West Corp., No. 02-0921-FJG (W.D. Mo.).* Class action settlement by a wireless telecommunications provider to resolve claims under Missouri law involving "cost recovery fees" charged to customers. | Advisor to the Court | 5,000,000 Class Members | $165 Million |
| 17. | *Brown & Szaller, Co., L.P.A. et al., v. Waste Management of Ohio, Inc., Case No. CV-16-859588.* Proposed class action settlement resolving claims of certain commercial customers of Waste Management of Ohio, Inc. related to alleged improper price increases on waste collection, disposal, and/or recycling services. | Notice and Claims Administrator | 65,000 Class Members | $30.5 Million |
| 18. | *Bartell, et al. v. LTF Club Operations Company, Inc., Case No. 2:14-cv-00401.* Proposed class action settlement resolving claims of certain former members of Life Time Fitness in Ohio related to Life Time's alleged failure to honor cancellation requests and issue certain refund payments under Ohio's Prepaid Entertainment Contracts Act (PECA). | Notice and Claims Administrator | 60,000 Class Members | $14 Million |
| 19. | *Wildfire Assistance Program.* Voluntary program providing financial assistance to individuals experiencing urgent needs as a result of the 2017 and 2018 California Wildfires. | Claims Administrator | 20,000 Claimants | $100 Million |
| 20. | *In re Capital One Telephone Consumer Protection Act Litigation,* **MDL Docket No. 2416 (N.D. Ill.).** Class action settlement to resolve claims arising from alleged violations of the Telephone Consumer Protection Act. | Notice and Claims Administrator | 17,500,000 Class Members | $75.4 Million |
| 21. | *In re Vioxx MDL Settlement Agreement Related to Consumer Class Actions,* **MDL Docket No. 1657 (E.D. La.).** Class action settlement to resolve consumer protection claims arising from the marketing of prescription painkillers. | Claims Administrator | 8,000 Claimants | $23 Million |
| 22. | *Yarger v. ING Bank, FSB, No. 11-154-LPS (D. Del.).* Class action settlement to resolve claims related to advertising fixed rate mortgages under Delaware consumer law. | Notice and Claims Administrator | 115,000 Class Members | $20 Million |
| 23. | *Acosta v. Tyson Foods, Inc., No. 8:08-cv-86 (D. Neb.).* Class action settlement by a poultry producer to resolve claims under the Fair Labor Standards Act and Nebraska law for employee compensation for time spent donning/doffing protective equipment. | Notice Administrator | 3,700 Class Members | $19 Million |
| 24. | *Flores v. Zorbalas, No. 27-CV-16-14225 (Minn. St. Ct., Hennepin Cnty., Minn.).* Class certification notice program and subsequent class action settlement program resolving claims of tenants of certain apartments in Minneapolis, MN whose landlords allegedly rented out the properties without proper licenses and failed to maintain the properties as required by health and safety laws. | Notice and Claims Administrator | 5,500 Class Members | $18.5 Million |
| 25. | *United States of America v. Capital One, N.A., No. 1:12-cv-828 (E.D. Va.).* Consent decrees between a financial services company and the Department of Justice and Office of Comptroller of the Currency to resolve alleged violations of the Servicemembers Civil Relief Act. | Notice and Claims Administrator | 44,000 Claimants | $15 Million |

| | ECONOMIC LOSS PROGRAM DESCRIPTION | ROLE | PROGRAM SIZE | SETTLEMENT FUND |
|---|---|---|---|---|
| 26. | ***Figueroa v. Capital One, N.A., No. 3:18-cv-00692-JM-BGS (S.D. Cal.).*** Class action settlement by a financial institution to resolve claims that it breached its contract with accountholders by improperly assessing and collecting fees when accountholders used out of network ATMs to conduct a balance inquiry. | Notice and Claims Administrator | 1.9 Million Class Members | $13 Million |
| 27. | ***Ene v. Maxim Healthcare Services, Inc., No. 4:09-cv-02453 (S.D. Tex.).*** Class action settlement by a healthcare provider to resolve claims under the Fair Labor Standards Act concerning the classification of healthcare recruiters as exempt from overtime pay. | Notice Administrator | 1,600 Class Members | $12.3 Million |
| 28. | ***Gregorio v. Premier Nutrition Corporation, Civil Action No: 17-cv-05987 (S.D.N.Y.).*** Class action settlement to resolve claims concerning the misleading advertising of protein shake products. | Notice and Claims Administrator | 9,360,000 Class Members | $9 Million |
| 29. | ***Spinelli v. Capital One Bank (USA), No. 8:08-cv-132 (M.D. Fla.).*** Class action settlement by a financial services company with credit card holders to resolve claims under the Truth in Lending Act. | Notice and Claims Administrator | 9,000,000 Class Members | $5 Million |
| 30. | ***Hankins v. CarMax Inc., No. 03-C-07-005893 CN (Baltimore County Md. Cir. Ct.).*** Class action settlement to resolve claims that a retail car company sold used vehicles without disclosing that the vehicles had been used previously as short-term rentals. | Notice and Claims Administrator | 7,300 Class Members | $8 Million |
| 31. | ***Cohen v. Warner Chilcott Public Ltd. Co., No. 1:06-cv-00401-CKK (D.D.C).*** Class action settlement to resolve antitrust claims against two pharmaceutical companies regarding the sale of an oral contraceptive | Notice Administrator | 2,000,000 Class Members | $6 Million |
| 32. | ***Peg Bouaphekeo, et. al., v. Tyson Foods, Inc., No. 5:07-cv-04009-JAJ (N.D. Iowa Western Division).*** Class action settlement by a poultry producer to resolve claims under the Fair Labor Standards Act and Iowa law for employee compensation for time spent donning/doffing protective equipment. | Notice Administrator | 2,523 Class Members | $5.78 Million |
| 33. | ***Morgan v. Richmond School of Health and Technology, Inc., No. 3:12-cv-00373-JAG (E.D. Va.).*** Class action settlement by a for-profit vocational college to resolve claims under the Equal Credit Opportunity Act, Title VI of the Civil Rights Act of 1964 and the Virginia Consumer Protection Act. | Notice and Claims Administrator | 4,200 Class Members | $5 Million |
| 34. | ***Gomez v. Tyson Foods, Inc., No. 08-021 (D. Neb.).*** Class action settlement by a poultry processing company to resolve claims under the Fair Labor Standards Act and Nebraska law for employee compensation for time spent donning/doffing protective equipment. | Notice Administrator | 5,300 Class Members | $5 Million |
| 35. | ***Rogers v. City of Richmond, Virginia, No. 3:11-cv-00620 (E.D. Va.).*** Class action settlement under the Fair Labor Standards Act and Virginia law involving current and former city police officers alleging unpaid overtime wages. | Claims Administrator | 600 Claimants | $4.6 Million |
| 36. | ***Gales v. Capital One, N.A., No. 8:13-cv-01624 (D. Md).*** Class action settlement by a financial services company to resolve claims related to the sale of certain repossessed motor vehicles. | Claims Administrator | 9,000 Class Members | $4.4 Million |
| 37. | ***Betts v. National Cash Advance/Advance America, Nos. 502001CA0003200CAI-MB and 502004CA008164XXXXI-MB (Palm Beach County Cir. Ct.).*** Class action settlement to resolve claims alleging violates of the Florida Lending Practices Act, the Florida Consumer Finance Act, the Florida Deceptive and Unfair Trade Practices Act, and the Civil Remedies for Criminal Practices Act. | Notice and Claims Administrator | 18,500 Class Members | $4.32 Million |
| 38. | ***Llewellyn v. Big Lots Stores, Inc., No. 09-cv-5085 (E.D. La.).*** Class action settlement by a retailer to resolve claims under the Fair Labor Standards Act regarding the classification of assistant store managers. | Claims Administrator | 200 Class Members | $4 Million |

| | ECONOMIC LOSS PROGRAM DESCRIPTION | ROLE | PROGRAM SIZE | SETTLEMENT FUND |
|---|---|---|---|---|
| 39. | *Desio v. Emerson Electric Co. d/b/a InSinkErator, No. 2:15-cv-00346 (E.D. Wa.).* Class action settlement to resolve claims that certain filters used in water filtration systems could crack and leak water, causing property damage. | Notice and Claims Administrator | Estimated <455,000 Class Members | $3.8 Million |
| 40. | *Herron v. CarMax Auto Superstores, Inc., No. 2006-CP-02-1230 (Aiken County S.C. Jud. Dist.).* Class action settlement to resolve claims related to document processing fees charged to customers by a car dealer. | Notice and Claims Administrator | 27,000 Class Members | $3.8 Million |
| 41. | *Collins v. Sanderson Farms, Inc., No. 2:06-cv-02946 (E.D. La.).* Class action settlement by a poultry processing company to resolve claims under the Fair Labor Standards Act regarding employee compensation for time spent donning/doffing protective equipment. | Notice and Claims Administrator | 21,000 Class Members | $3.1 Million |
| 42. | *Nader v. Capital One Bank (USA), No. CV-12-01265-DSF (RZx) (C.D. Cal.).* Class action settlement by a financial institution to resolve claims under state privacy and wiretapping laws concerning the alleged recording of outbound customer service calls | Settlement Administration | 1,800,000 Class Members | $3 Million |
| 43. | *In re Children's Ibuprofen Oral Suspension Antitrust Litigation, No. 1:04- mc-0535 (D.D.C.).* Class action settlement to resolve claims of antitrust violations by two manufacturers of over-the-counter children's pain relievers. | Notice Administrator | 10,000 Class Members | $3 Million |
| 44. | *Rubenstein v. The Neiman Marcus Group LLC, No. 2:14-cv-07155-SJOJPR (C.D. Ca.).* Proposed settlement program to resolve allegations that consumers were misled by the "Compared To" price tags on merchandise sold by the Defendant. | Notice and Claims Administrator | To Be Determined | $2.9 Million |
| 45. | *United States of America v. Chevy Chase Bank, F.S.B., No. 1:13-cv-1214 (E.D. Va.).* Consent decree between a financial services company and a federal regulatory agency involving allegations under the Equal Credit Opportunity and Fair Housing Acts. | Notice and Claims Administrator | 3,500 Class Members | $2.85 Million |
| 46. | *Samuel v. EquiCredit Corp., No. 00-cs-6196 (E.D. Pa.).* Class action settlement by a financial services institution to resolve claims under the Real Estate Settlement Procedures Act regarding the application of loan proceeds to pay mortgage broker fees. | Notice and Claims Administrator | 13,000 Class Members | $2.5 Million |
| 47. | *Beecroft v. Altisource Business Solutions PVT LTD., No. 0:15-cv-02184 (D. Minn).* Class action settlement to resolve claims arising from alleged violations of the Telephone Consumer Protection Act. | Notice and Claims Administrator | 56,104 Class Members | $1.8 Million |
| 48. | *Hall v. Capital One Auto Finance, Inc., No. 1:08-cv-01181 (N.D. Ohio).* Class action settlement by a financial services company to resolve claims related to automobile repossession under Ohio consumer statutes. | Notice and Claims Administrator | 3,400 Class Members | $1.5 Million |
| 49. | *McCoy v. North State Aviation, LLC, Case No.1:17-cv-00346-CCE-LPA (M.D.N.C).* Class action settlement to resolve claims that Defendant violated the federal Worker Adjustment and Retraining Notification Act (the WARN Act), which requires certain employers to give 60-day advance notification of plant closings and mass layoffs. | Settlement Administration | 339 Class members | $1.5 Million |
| 50. | *Watts v. Capital One Auto Finance, Inc., No. CCB-07-03477 (D. Md.).* Class action settlement by a financial services company to resolve claims related to automobile repossession under Maryland consumer statutes. | Notice and Claims Administrator | 2,700 Class Members | $990,000 |
| 51. | *Churchill v. Farmland Foods, Inc., No. 4:06-cv-4023 (C.D. Ill.).* Class action settlement by a pork processing company to resolve claims under the Fair Labor Standards Act and Illinois law regarding employee compensation for time spent donning/doffing protective equipment. | Notice and Claims Administrator | 2,300 Class Members | $980,000 |

| | ECONOMIC LOSS PROGRAM DESCRIPTION | ROLE | PROGRAM SIZE | SETTLEMENT FUND |
|---|---|---|---|---|
| 52. | *Polanco v. Moyer Packing Company, No. C.P., 1852 (Philadelphia County Pa.).* Class action settlement by a beef processing company to resolve claims under the Fair Labor Standards Act and Pennsylvania law regarding employee compensation for time spent donning/doffing protective equipment. | Notice and Claims Administrator | 4,500 Class Members | $850,000 |
| 53. | *Cohen v. Foothill/Eastern Transportation Corridor Agency, et. al., No. SACV 15-01698 DDP (C.D. Ca.).* Class action settlement to resolve alleged violations of the Fair and Accurate Credit Transactions Act (FACTA) by a toll-road operator. | Notice and Claims Administrator | 25,762 Class Members | $850,000 |
| 54. | *Bessey v. Packerland Plainwell, Inc., No. 4:06-cv-0095 (W.D. Mich.).* Class action settlement by a pork processing company to resolve claims under the Fair Labor Standards Act and Michigan law regarding employee compensation for time spent donning/doffing protective equipment | Notice and Claims Administrator | 3,000 Class Members | $650,000 |
| 55. | *Santiago v. GMAC Mortgage Group, Inc., No. 784574 (E.D. Pa.).* Class action settlement by a financial services company to resolve claims under the Real Estate Settlement Procedures Act concerning charges for mortgage settlement services. | Notice and Claims Administrator | 84,000 Class Members | $650,000 |
| 56. | *Contreras v. PM Beef Holdings, LLC, No. 07-CV-3087 (D. Minn.).* Class action settlement by a beef processing company to resolve claims under the Fair Labor Standards Act and Minnesota law for employee compensation for time spent donning/doffing protective equipment. | Notice and Claims Administrator | 3,000 Class Members | $500,000 |
| 57. | *Morales v. Greater Omaha Packing Co. Inc., No. 8:08-cv-0161 (D. Neb.).* Class action settlement by a beef processing company to resolve claims under the Fair Labor Standards Act and Nebraska law regarding employee compensation for time spent donning/doffing protective equipment. | Notice and Claims Administrator | 4,000 Class Members | $490,000 |
| 58. | *Graham v. Capital One Bank (USA), N.A., 8:13-cv-00743 (C.D. Cal.).* Class action settlement related to claims under the California Unfair Competition Law regarding alleged improper disclosures and charges assessed on credit card accounts. | Notice and Claims Administrator | 22,500 Class Members | $460,000 |
| 59. | *Hanna v. Agape Senior, LLC, No. 12-CP-40-5950 (S.C. St. Ct., Richland Cnty., S.C.).* Class action settlement resolving claims of certain residents of senior and assisted living facilities related to alleged improper of medical treatment. delivery | Notice and Claims Administrator | 600 Class Members | Uncapped Fund; $480,000 Disbursed |
| 60. | *In re Moyer Packing Co., P. & S. Docket No. D-07-0053 (U.S. Dep't Agric.).* Consent decision involving a beef processing company to compensate cattle producers for goods sold based on weights derived using an allegedly malfunctioning weight calculation system. | Notice and Claims Administrator | 1,100 Claimants | $325,000 |
| 61. | *Confidential.* Voluntary payment program by a city government to compensate current and former city police officers for unpaid overtime wages. | Claims Administrator | 175 Class Members | $300,000 |
| 62. | *Dapice v. Capital One Bank (USA), N.A. No. 14-cv-6961 GW (AGRx).* Class action settlement by a financial institution to resolve claims related to interest rates charged on balance transfers for certain credit card accounts. | Settlement Administration | 2,564 Class members | $350,000 |
| 63. | *Confidential.* Voluntary program by a financial institution to refund customers for payments subsequently discharged in bankruptcy. | Program Administrator | 457 Payees | $233,000 |

| | ECONOMIC LOSS PROGRAM DESCRIPTION | ROLE | PROGRAM SIZE | SETTLEMENT FUND |
|---|---|---|---|---|
| 64. | ***Wilder v. Triad Financial Corp., No. 3:03-cv-863 (E.D. Va.).*** Class action settlement by a financial services company to resolve claims associated with automobile loan applications under the Fair Credit Reporting Act. | Notice and Claims Administrator | 80,000 Class Members | $200,000 |
| 65. | ***Conerly v. Marshall Durbin Food Corp., No. 2:06-cv-205 (N.D. Ala.).*** Class action settlement by a poultry processing company to resolve claims under the Fair Labor Standards Act regarding employee compensation for time spent donning/doffing protective equipment. | Notice and Claims Administrator | 1,900 Class Members | $150,000 |
| 66. | ***Ferguson v. Food Lion, LLC, No. 12-c-861 (Berkeley County W. Va. Cir. Ct.).*** Class action settlement by a retail company to resolve claims under the West Virginia Wage Payment and Collection Act regarding timing of paychecks issued to discharged employees. | Notice and Claims Administrator | 185 Class Members | $125,000 |
| 67. | ***Confidential.*** Voluntary settlement by a food processing company to resolve claims regarding employee compensation for donning/doffing protective equipment. | Notice Administrator | 670 Class Members | $125,000 |
| 68. | ***Confidential.*** Voluntary check remittance program by an investment fund to distribute proceeds from numerous settlements to beneficiaries of the fund | Settlement Administration | 1,049 Payees | $117,000 |
| 69. | ***Confidential HUD Compensation Program.*** Compensation fund established to pay damages to persons allegedly discriminated against by financial institution on basis of pregnancy or parental leave. | Notice and Claims Administrator | <100 Class Members | $50,000 |
| 70. | ***Cook v. Columbia Freightliner, LLC, No. 10-CP-02-1987 (Aiken County S.C. Jud. Dist.).*** Class action settlement to resolve claims regarding a trucking company and the collection of administrative fees in the sale of motor vehicles. | Notice and Claims Administrator | 380 ClassMembers | $17,000 |
| 71. | ***Confidential.*** Voluntary payments by a financial institution to reimburse fees charged to the credit card accounts of small business owners. | Payment Administrator | 656 Payees | $16,000 |
| 72. | ***Clark v. Group Hospitalization and Medical Services, Inc., No. 3:10-CIV-00333-BEN-BLM (S.D. Cal.).*** Class action settlement by a health insurance provider to resolve claims under the Employee Retirement Income Security Act and California's Unfair Competition Law. | Notice and Claims Administrator | 80 Class Members | $1,300 Disbursed |
| 73. | ***Quinn v. BJC Health System, No. 052-00821A (City of St. Louis Mo. Cir. Ct.).*** Class action settlement by a healthcare system to resolve claims associated with hospital fees charged to uninsured patients. | Claims Administrator | 26,000 Class Members | Debt Reduction/ Forgiveness to Qualigying Class members |
| 74. | ***In re Record Company Infringement Litigation, No. 6:15-cv-00708 (M. D. Fla.).*** Consolidated proceedings involving 65+ parties and alleged violations of copyrights and contracts. | Orran Brown; Special Master; Project Manager | Not Applicable | Not Applicable |
| 75. | ***Gray, Ritter & Graham P.C., et al. v. Goldman Phipps PLLC, et al., No. 4:13-cv-00206-CDP (E.D. Mo.).*** Three separate but related claims programs (Watts Group Settlement, Banks Group Settlement, and GP/ Murray Group Settlement), established to resolve a class action lawsuit involving claimants who settled claims against Bayer arising out of the presence of Bayer's genetically-modified rice seed in the United States rice supply or lawyers who were paid common-benefit attorneys' fees or paid common-benefit expenses in that litigation. | Notice Administrator | 27,000 Class Members | Not Applicable |
| 76. | ***In re Lehman Brothers Holdings Inc., No. 08-13555-JMP (Bankr. S.D.N.Y.).*** Program to track, monitor and evaluate fees being charged by bankruptcy lawyers in the Lehman Brothers Chapter 11 bankruptcy proceeding. | Fee Committee Assistant | 2,656 Class Members | Not Applicable |

| | ECONOMIC LOSS PROGRAM DESCRIPTION | ROLE | PROGRAM SIZE | SETTLEMENT FUND |
|---|---|---|---|---|
| 77. | ***Jerry Parker, et al. v. Smithfield Packing Company, Inc., No. 7:07-cv- 00176-H.*** Class action settlement to resolve claims related to overtime pay for employees of a processing facility in Clinton, North Carolina. | Notice Administrator | 2,656 Class Members | Not Applicable |
| 78. | ***Lee Lewis, et al. v. Smithfield Packing Company, Inc., No. 7:07-cv- 00166-H.*** Class action settlement to resolve claims related to overtime pay for employees of a processing facility in Tarheel, North Carolina. | Notice Administrator | 12,136 Class members | Not Applicable |
| 79. | ***Lycan, et. al., v. City of Cleveland, No. CV 09686044 (Court of Common Pleas, Cuyahoga County, OH).*** Class action lawsuit to resolve claims that the City of Cleveland, Ohio, assessed traffic fines against non-vehicle owners (including lessees and renters) whose vehicles were photographed by automatic enforcement cameras operating in city limits, in violation of a city ordinance. | Notice and Claims Administrator | 31,937 Class Members | To Be Determined |
| 80. | ***Mercier, et al v. The United States, No. 12-920C.*** Class action to resolve alleged claims of unpaid wages for nurses and physician assistants. | Notice and Claims Administrator | 15,000 Class Members | $130 Million |
| 81. | ***Runton et al. v. Brookdale Senior Living, Inc., No. 0:17-cv-60664-CMA (S.D. Fla.).*** Class action settlement resolving claims of certain residents of senior and assisted living facilities related to staffing determinations. | Notice and Claims Administrator | 29,760 Class Members | To Be Determined |
| 82. | ***In re De Bernardi v. City and County of San Francisco.*** Served as Court approved Third Party Notice Administrator for a collective action lawsuit regarding Compensatory Time Off earned in lieu of paid overtime. | Notice Administrator | 26,000 Class Members | Not Applicable |
| 83. | ***In re Wazwaz v. City and County of San Francisco.*** Served as Court approved Third Party Notice Administrator for a collective action lawsuit regarding Compensatory Time Off earned in lieu of paid overtime. | Notice Administrator | 1,000 Class Members | Not Applicable |
| 84. | ***In re Donofrio v. IKEA, No. 2:2018-cv-00599.*** Served as Court appointed Third-Party Administrator, responsible for tracking and maintaining Opt-in Consent Forms for a collective action lawsuit involving alleged age-discrimination in the workplace. | Third Party Administrator | 500 Claimants | Not Applicable |

# Personal Injury Program Experience

| | PERSONAL INJURY PROGRAM DESCRIPTION | ROLE | PROGRAM SIZE | SETTLEMENT FUND |
|---|---|---|---|---|
| 1. | **Philips Respironics Personal Injury Settlement.** The settlement resolves claims that several Continuous Positive Airway Pressure (CPAP), BIPAP and ventilator products ("Recalled Devices") produced by Philips casued health issues. | Settlement Administrator | 44,000 Eligible Claimants | $1.1 Billion |
| 2. | **Respironics Medical Advancement Program.** BrownGreer is responsible for the design and implementation of the Notice Plan and serve as the fiduciary for all settlement funds. | Notice and QSF Administrator | 44,000 Eligible Claimants | $25 Million |
| 3. | **Combat Arms Earplugs Settlement.** BrownGreer serves as the Settlement Administrator in a program established to resolve claims concerning Combat Arms Version 2 earplugs manufactured from 1999 to 2015. | Settlement Administrator | 270,000 Claimants | $6 Billion |
| 4. | **JUUL Government Entity, Tribal, and Personal Injury Settlements.** A 2022 agreement was reached between the makers of JUUL and government entities, Native American tribes, and personal injury claimants to resolve claims that it deceptively marketed e-cigarettes to youths. | Settlement Administrator | Approx. 2,000 government entities, 10,000 individual claimants | Not yet disclosed |
| 5. | **Sterigenics Ethylene Oxide Settlement.** BrownGreer serves as claims and QSF administrator in a settlement resolving personal injury claims related to a medical equipment sterilization facility in Willowbrook, Illinois. | Claims Administration, QSF Administrator | 870 Claimants | $408 Million |
| 6. | **Gree Deferred Prosecution Agreement.** BrownGreer serves as Special Master overseeing the deferred prosecution agreement between Gree USA Inc. and the Department of Justice to resolve allegations that the company knowingly sold fire-prone dehumidifiers. This work includes resolving and paying claims from appliance owners. | Special Master; Claims Administrator | Claimants To Be Determined | Fund Uncapped |
| 7. | **National Opioid Settlement.** BrownGreer established the web portal and payment system that ensures states and subdivisions receive settlement funds from the 2022 "Big Three" opioid distributor settlement. The 18-year project requires continuous coordination with thousands of state and local government officials nationwide. | Directing Administrator | 3,000 States and Localities | $26 Billion |
| 8. | **Oxnard Train Derailment Settlement.** Served as claims administrator for a program that resolved injury claims relating to a 2015 passenger train incident in California. | Claims Processor | 37 Claimants | $61 Million |
| 9. | **Confidential.** Settlement involving sexual abuse claims. | QSF and Lien Resolution Administrator | 312 Claimants | $374 Million |
| 10. | **Porter Ranch Private Party Claims Settlement Program.** Private settlement to resolve claims arising from the October 23, 2015 gas leak from a storage well at the Aliso Canyon natural gas storage facility in Porter Ranch, California. | Design the share allocation protocol; Claim Processor | 36,000 Claimants | $1.6 Billion |
| 11. | **One October Settlement Fund.** Private settlement to resolve claims arising from the October 1, 2017 mass shooting at the Route 91 Harvest Festival in Las Vegas, Nevada. | Design the share allocation protocol; Claim Processor | 4,300 Claimants | $800 Million |
| 12. | **In re National Football League Players' Concussion Injury Litigation, MDL Docket No. 2323 (E.D. Pa).** Class action settlement to resolve claims by retired National Football League players relating to repetitive head impacts. | Claims Administrator | 20,571 Claimants | Fund Uncapped; $1.2 Billion Disbursed |

| | PERSONAL INJURY PROGRAM DESCRIPTION | ROLE | PROGRAM SIZE | SETTLEMENT FUND |
|---|---|---|---|---|
| 13. | **Catholic Diocese of Richmond Independent Reconciliation Program.** Private Settlement to resolve sexual abuse claims in the Richmond Catholic Diocese. | Claims Administrator | 68 Claimants | $6.3 Million |
| 14. | **Trafigura.** Expert consultant to evaluate feasibility of claims administration program arising from a toxic spill in the Ivory Coast of Africa, evaluating hurdles of corruption, fraud, identity verification, payment and communication difficulties. | Lynn Greer Expert Consultant | Not Applicable | Not Applicable |
| 15. | **In re Vioxx Products Liability Litigation, MDL Docket No. 1657 (E.D. La.).** Voluntary settlement program to resolve claims arising from the use of prescription painkillers. | Claims Administration | 60,000 Claimants | $4.85 Billion |
| 16. | **In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Products Liability Litigation, MDL Docket No. 1203 (E.D. Pa.).** Class action settlement to resolve claims arising from the use of "Fen-Phen" diet drugs. | Liaison for the Defendant to the Settlement Trust | 600,000 Claimants | $3.55 Billion |
| 17. | **In re A.H. Robins Company Inc., Debtor (In re Dalkon Shield Claimants Trust), MDL Docket No. 211 (Bankr. E.D. Va.).** Settlement program created in the Chapter 11 bankruptcy proceeding of the A.H. Robins Company to resolve claims arising from use of the Dalkon Shield intrauterine device. | Counsel to the Settlement Trust | 400,000 Claimants | $3 Billion |
| 18. | **In re DePuy Orthopaedics, Inc., ASR Hip Implant Products, MDL Docket No. 2197 (N.D. Ohio).** Voluntary settlement program for claims relating to metal-on-metal hip implant devices. | Claims Administrator | 9,300 Claimants | $2.8 Billion |
| 19. | **In re Diet Drugs (Phentermine/Fenfluramine/ Dexfenfluramine) Products Liability Litigation, MDL Docket No. 1203 (E.D. Pa.).** Voluntary settlement program to resolve opt outs from the class action settlement of claims arising from use of "Fen-Phen" diet drugs. | Claims Administrator | 66,000 Claimants | $2.63 Billion |
| 20. | **In re Actos (Pioglitazone) Products Liability Litigation, MDL Docket No. 2299 (W.D. La).** Voluntary settlement program to resolve claims arising from the use of a diabetes medication. | Claims Administrator | 10,800 Claimants | $2.37 Billion |
| 21. | **Confidential.** Voluntary settlement program of claims arising from the use of a prescription medication. | Claims Administrator | 12,000 Claimants | Fund Uncapped; $1.4 Billion Disbursed |
| 22. | **In re Sulzer Orthopedics and Knee Prosthesis Products Liability Litigation, MDL Docket No. 1401 (N.D. Ohio).** Class action settlement of claims relating to hip and knee implants. | Claims Administrator | 27,000 Claimants | $1.15 Billion |
| 23. | **Confidential.** Voluntary settlement program of claims arising from the use of a prescription medication. | Claims Administrator | 2,700 Claimants | Fund Uncapped; $279 Million Disbursed |
| 24. | **In re Xarelto® Litigation Settlement Program.** Private settlement to resolve cases arising out of the use of a prescription blood thinner. | Claims Administrator | 33,000 | $775 Million |
| 25. | **In re Pradaxa (Dabigatran Etexilate) Products Liability Litigation, MDL Docket No. 2385 (S.D. Illinois).** Voluntary settlement program to resolve claims arising from the use of a blood thinning medication. | Claims Administrator | 4,800 Claimants | $650 Million |
| 26. | **In re Benicar (Olmesartan) Products Liability Litigation, MDL No. 2606 (N.J.).** Voluntary settlement program to resolve claims arising from the use of prescription hypertension medication. | Claims Administrator | 8,500 Claimants | $358 Million |
| 27. | **In re Wright Medical Technology, Inc., Conserve Hip Implant Products Liability Litigation, MDL Docket No. 2329, (N.D. Ga.).** Private settlement program established to resolve claims related to CONSERVE®, DYNASTY®, and LINEAGE® metal-on-metal hip replacement devices.' | Claims Administrator | 1,233 Claimants | $249 Million |

| | PERSONAL INJURY PROGRAM DESCRIPTION | ROLE | PROGRAM SIZE | SETTLEMENT FUND |
|---|---|---|---|---|
| 28. | *In re Reglan®/Metoclopramide Mass Tort Litigation, No. 01997 (Philadelphia County Ct. of C.P.);* In re Reglan® Litigation, Case No. ATL-L-3865-10 (Super Ct. NJ); Reglan®/Metoclopramide Cases, CJC-10- 004631 (Cal. Super Ct.). Private settlement program consolidating PA, NJ, and CA class action settlements to resolve claims arising out of the use of a prescription medication. | Notice and Claims Administrator | 5,263 Claimants | $240 Million |
| 29. | *In re Guidant Implantable Defibrillators Products Liability Litigation Settlement, MDL Docket No. 1708 (D. Minn.).* Voluntary settlement program to resolve claims related to a medical device company's cardiac resynchronization therapy devices, implantable cardiac defibrillators and pacemakers. | Advised Defendant and Defense Counsel | 26,000 Class Members | $240 Million |
| 30. | *In re Nuvaring Products Liability Litigation,* MDL Docket No. 1964 (W.D. Mo.). Voluntary settlement program to resolve claims related to the use of a contraceptive device. | Claims Administrator | 3,800 Claimants | $100 Million |
| 31. | *In re Abilify (Aripiprazole) Products Liability Litigation,* MDL No. 2734 Settlement Program. Private settlement program to resolve cases arising out of the use of a prescription medication. | Claims Administrator | 3,955 Claimants | $60 Million |
| 32. | *In re Phenylpropanolamine (PPA) Products Liability Litigation, MDL Docket No. 1407 (W.D. Wash.).* Class action settlement trust established to resolve claims related to an over-the-counter weight loss product. | Claims Administrator | 500 Claimants | $60 Million |
| 33. | *In re Yasmin and Yaz (Drospirenone) Marketing, Sales Practices and Products Liability Litigation, MDL Docket No. 2100 (S.D. Ill.).* Private voluntary settlement program to resolve claims alleging an arterial thromboembolism ("ATE"), either alone or in combination with some other injury, resulting from the use of drospirenone-containing oral contraceptives manufactured by Bayer or marketed by Barr Laboratories, Inc., or Teva Pharmaceuticals USA, Inc. | Claims Administrator | 1,275 Claimants | $57 Million |
| 34. | *In re Yasmin and YAZ (Drospirenone) Marketing, Sales Practices and Products Liability Litigation, MDL Docket No. 2100 (S.D. Ill.).* Private settlement program to resolve claims alleging gallbladder disease or a gallbladder injury from the use of drospirenone-containing oral contraceptives manufactured by Bayer or marketed by BarrTeva. | Claims Administrator | 9,000 Claimants | $24 Million |
| 35. | *In re OxyContin Litigation - All Cases, No. 2002-CP-18-1756 (Cir. Ct. Dorchester County, S.C.).* Class action settlement by a pharmaceutical company regarding a prescription pain killer. | Notice and Claims Administrator | 3,600 Class Members | $4.25 Million |
| 36. | *Confidential.* Private Settlement to resolve cases arising out of the use of a male-oriented hair coloring product designed to cover grey hair. | Claims Administrator | Not Disclosed | Not Disclosed |
| 37. | *In re Seroquel Products Liability Litigation, MDL Docket No. 1769 (M.D. Fla.).* Multidistrict litigation proceedings involving the antipsychotic prescription drug Seroquel. | Special Master; Project Manager | Not Disclosed | Not Applicable |
| 38. | *In re Pittsburgh Corning Corporation, No. 00-22876-TPA (Bankr. W.D. Pa.).* Class action settlement to resolve personal injury claims relating to exposure to asbestos made by refinery and chemical plant workers with individual asbestos cases pending in the Eastern District of Texas. | Notice Administrator | 2,272 Class Members | Not Applicable |



# BROWNGREER | Professional Service. Redefined.

BrownGreer is redefining multiple claim resolution and litigation management with industry-leading technology and expert strategies to resolve your multiple claims and data management challenges with uncompromising accuracy and efficiency.