# Exhibit B

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| **IN RE: BLUE CROSS BLUE** | ) | **Master File No. 2:13-CV-20000-RDP** |
| **SHIELD ANTITRUST** | ) | |
| **LITIGATION** | ) | |
| **(MDL No.: 2406)** | ) | **This document relates to:** |
| | ) | **THE PROVIDER TRACK** |
| | ) | |
| | ) | |
| | ) | **DECLARATION OF SHANNON R** |
| | ) | **WHEATMAN, PH.D ON** |
| | ) | **ADEQUACY OF NOTICES AND** |
| | ) | **NOTICE PLAN** |
| | ) | |
| | ) | |
| | ) | |

I, Shannon R. Wheatman, being duly sworn, hereby declare as follows:

1.      I am a partner with Signal Interactive Media ("Signal"), an advertising and notification consulting firm in Washington, D.C. specializing in the design and implementation of bankruptcy and class action notification programs.  My business address is 1300 Connecticut Ave. NW, Suite 375, Washington, D.C. 20036.

2.      Signal was retained to assist BrownGreer PLC in designing and implementing the Notice Plan in this litigation. This declaration will describe my experience in designing and implementing notices and notice plans, as well as my credentials to opine on the overall adequacy of the notice effort. It will also describe the Notice Plan proposed here for *In re: Blue Cross Blue Shield Antitrust Litigation*, including how it was developed and why I believe it will be effective.

3.     This declaration is based upon my personal knowledge and upon information provided by Class Counsel, the Special Master, BrownGreer PLC, and my associates and staff. The information is of a type reasonably relied upon in the fields of advertising, media, and communications.

4.     Based on my experience, as set forth below, I believe that the Notice Plan is broad, multi-faceted, and designed to effectively reach known and unknown claimants.

## RELEVANT EXPERIENCE

5.     I have developed and directed some of the largest and most complex national notification programs in the United States. The scope of my work includes notification programs in bankruptcy, antitrust, consumer fraud, mass tort, and product liability litigation. I have developed or consulted on over 700 notification programs and the Signal team has placed over $2.1 billion in media. I have implemented notice programs reaching people in 72 languages in 214 countries and territories.

6.     I have served as a qualified legal notice expert in class action litigations and bankruptcies. State and federal courts have accepted my analyses and expert testimony regarding whether information is effectively communicated to people. My curriculum vitae is attached as **Exhibit A**.

7.     In addition to this experience with noticing programs, I have testified in court as an expert in the following cases: *In Re: 3M Combat Arms Earplug Prods. Liability Litig*., MDL 2885 (N.D. Fla.); *In re Boy Scouts of America and Delaware BSA, LLC*, No. 20-10343 (Bankr. D. Del.); *In re The Roman Catholic Church of The Archdiocese of New Orleans*, No. 20-10846 (Bankr. E.D. La.); *Kowall v. United States Steel Corp.*, No. 2017-3355 (Wash. County., Pa., Civ. Div.); *In re*

*Chinese-Manufactured Drywall Prods. Liab. Litig.*, MDL No. 2047 (E.D. La.); *In re Think Finance, LLC*, Case No. 17-33964 (Bankr. N.D. Tex.); *In re Volkswagen "Clean Diesel" Marketing, Sales Practices & Prods. Liab. Litig.*, MDL No. 2672 (N.D. Cal.); *State v. Farmer Grp. Inc.*, No. D-1-GV-02-002501 (D. Ct. Tex., Travis Cty.); *Scharfstein v. BP West Coast Prods., LLC*, No. 1112-17046 (Cir. Ct. Or.); *Spillman v. RPM Pizza, Inc.*, No. 10-349 (M.D. La.); *PRC Holdings, LLC v. East Res., Inc.*, No. 06-C-81 (Cir. Ct. W. Va.); *Guidry v. Am. Pub. Life Ins. Co.*, No. 2008-3465 (14th Jud. Dist. Ct., Calcasieu Parish); *Webb v. Liberty Mut. Ins. Co.*, No. CV-2007-418-3 (Cir. Ct. Ark); and *Beasley v. Reliable Life Ins. Co.*, No. CV-2005-58-1 (Cir. Ct. Ark).

8. I have been deposed as an expert in *In re Think Finance, LLC*, No. 17-33964 (Bankr. N.D. Tex.); *Hale v. CNX Gas Co., LLC*, No. 10-CV-59 (W.D. Va.); and *Thomas v. A. Wilbert Sons, LLC*, No. 55,127 (18th Jud. Dist. Ct., Iberville Parish).

9. I have worked on some of the largest and most complex national notification programs in the country, including, without limitation: *In re Domestic Airline Travel Antitrust Litig.*, MDL No. 2656 (D.D.C.) (involving notice to over 100 million airline passengers); *In re Volkswagen "Clean Diesel" Marketing, Sales Practices & Prods. Liab. Litig.*, MDL No. 2672 (N.D. Cal.) (involving notice to over 700,000 Volkswagen, Porsche, and Audi owners/lessees); *Precision Assocs., Inc. v. Panalpina World Transport*, No. 08-CV-00042 (E.D.N.Y.) (involving notice to millions of freight forwarding customers); *In re Transpacific Passenger Air Transp. Antitrust Litig.*, MDL No. 1913 (N.D. Cal.) (involving notice to millions of international airline passengers); *In re Dynamic Random Memory Antitrust Litig.*, MDL No. 1486 (N.D. Cal.) (involving notice to over 100 million consumers); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL No. 1827 (N.D. Cal.) (involving notice to millions of indirect purchasers); *In re Oil Spill by*

*the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010*, MDL No. 2179 (E.D. La.) (involving notice to over 40 million people impacted by the oil spill); *In re Target Corp. Customer Data Sec. Breach Litig.*, MDL No. 14-2522 (D. Minn.) (involving notice to over 40 million consumers); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, No. 11-MD-2258 (S.D. Cal.) (involving notice to over 70 million user accounts).

10.     My qualifications include expertise with respect to the form and content of notice. For example, while serving with the Federal Judicial Center ("FJC"), I played an integral part in the development of the illustrative, "model" forms of notice designed to satisfy the plain language requirements of Federal Rule of Civil Procedure 23(c)(2). This research formed the basis for my doctoral dissertation, *The Effects of Plain Language Drafting on Layperson's Comprehension of Class Action Notices* (2001) (Ph.D. dissertation, University of Georgia). To assist judges and attorneys, both in state and federal courts, the FJC posted the notices at www.fjc.gov.

11.     In addition to extensive experience in the design and implementation of noticing programs in a variety of bankruptcy and class action litigation, I have authored and co-authored articles on notice and due process. I believe that notice and due process depend upon clear communication with the affected people and have stated this position in my publications. *See, e.g.*, Shannon R. Wheatman & Katherine M. Kinsella, *International Class Action Notice*, WORLD CLASS ACTION: A GUIDE TO GROUP AND REPRESENTATIVE CLASS ACTIONS AROUND THE GLOBE 673–86 (Paul Karlsgodt ed., 2012); Katherine Kinsella & Shannon Wheatman, *Class Notice and Claims Administration*, PRIVATE ENFORCEMENT OF ANTITRUST LAW IN THE UNITED STATES: A HANDBOOK 338–48 (Albert A. Foer & Randy M. Stutz eds., 2012); Shannon R. Wheatman & Terri R. LeClercq, *Majority of Class Action Publication Notices Fail to Satisfy Rule 23 Requirements*,

30 REV. LITIG. 53 (2011); Katherine Kinsella & Shannon R. Wheatman, *Class Notice and Claims Administration*, THE INTERNATIONAL PRIVATE ENFORCEMENT OF COMPETITION LAW 264–74 (Albert A. Foer & Jonathan W. Cuneo eds., 2010); Todd B. Hilsee, Shannon R. Wheatman & Gina M. Intrepido, *Do you really want me to know my rights? The ethics behind due process in class action notice is more than just plain language: A desire to actually inform*, 18 GEO. J. LEGAL ETHICS 1359 (2005); and Todd B. Hilsee, Gina M. Intrepido & Shannon R. Wheatman, *Hurricanes, Mobility and Due Process: The "Desire-to-Inform" Requirement for Effective Class Action Notice Is Highlighted by Katrina*, 80 TULANE LAW REV. 1771 (2006).

## NOTICE PLAN OVERVIEW

12.     The proposed Notice Plan was designed to reach the greatest practicable number of Class Members and ensure that they will be exposed to, see, review, and understand the Notice.

13.     Although each case is unique, the methods and tools used in developing the Notice Plan for the settlement have been employed in many other court-approved notice programs.

14.     I have been involved in drafting the various forms of Notice described below. Each form is noticeable and written in plain language.

15.     In developing the Notice Plan, Signal determined that the most practicable way to reach Class Members is through the use of direct notice, paid and earned media, and an informational website.

16.     As detailed below, in my opinion, the Notice Plan represents the best notice practicable under the circumstances.

17.     More details about each component of the Notice Plan and how the program was developed are described below.

## NOTICE PLAN SUMMARY
### *Direct Notice*

18.      Based on information provided in the *Declaration of Roma Petkauskas Regarding Proposed Notice Plan*, a list of potential Class Members can be created. It is, therefore, reasonable to implement an individual direct mail notification effort to reach Class Members using this list.

19.      Direct notice consisting of a postcard or email will be the principal method of reaching Class Members and providing them with opportunities to see, read, and understand their rights, and act if they so choose. This direct notice will be distributed to all readily identifiable Class Members.

20.      The long form notice will also be available on the settlement website as a PDF file.

### *Supplemental Notice to Ancillary Providers*

21.      It is my understanding that the available Class Member contact information includes a comprehensive list of active health care facilities, physician and Ancillary Providers (defined below), and that information is available for retired physician providers.  While a partial contact list of older Ancillary Providers is available, the list is not complete.

22.      Ancillary providers include the following professions ("Ancillary Providers"):

a.      **Mental health and counseling:** psychologist, licensed clinical social workers, licensed professional counselors, licensed marriage and family therapists, clinical psychologists, clinical social workers, mental health counselors, behavioral health specialists, and genetic counselors.

b.    **Rehabilitation and therapy:** physical therapists, occupational therapists, speech-language pathologists, recreational therapists, respiratory therapists, exercise physiologists, audiologists, orthotists and prosthetists, and athletic trainers.

c.    **Medical and allied health:** nurse practitioners, physician assistants, certified nurse midwives, certified nurse anesthetists, clinical nurse specialists, podiatrists, phlebotomists, chiropractors, acupuncturists, naturopaths, homeopaths, and lactation consultants.

d.    **Nutrition and diet:** registered dietitians or nutritionists, and certified diabetes educators.

e.    **Neurosciences:** clinical neurophysiologists.

23.    The greater audience of Ancillary Providers is at once specialized and highly differentiated by sub-group, with distinct educational and continuing educational requirements, professional trajectories, member associations, and professional publications and tools. Targeting them effectively requires a strategic and multi-faceted approach tailored to the various types of Ancillary Providers. Special focus has been placed on reaching Ancillary Providers who are likely retired.

24.    A digital media program designed to reach retired Ancillary Providers will deliver over 13 million gross impressions[1] of banner ads across devices (desktop, mobile, and tablet). Banner ads generally appear around the content on a website.

25.    Online impressions will be delivered using the following targeting strategies:

---

[1]  Gross impressions are the total number of times a digital ad is shown. This figure does not represent the total number of unique viewers of the ad, as some viewers may see an ad more than once.

a. **Job Title Targeting**: LinkedIn offers an array of professional targeting options that will reach retired Ancillary Providers across disciplines and practice types. LinkedIn members who indicate "past" employment in a relevant job title will be served image and text ads in feed on the platform and on LinkedIn's network of websites.

b. **Behavioral Targeting:** Target Ancillary Providers based on site browsing behavior. Ads will be served to Ancillary Providers aged 55 and older who recently visited websites for their respective field journals and associations (*e.g.*, American Psychological Association, the American Association of Nurse Practitioners, and the American Chiropractic Association).

c. **Geotargeting**: Target nearly 800,000 household addresses matching relevant job titles for Ancillary Providers. Demographic data can be layered onto the matching household addresses to narrow the audience to only households with providers aged 55 and older.  Ads will be served in-app and across the web on devices associated with each household.

d. **Premium Websites and Networks: Professional Associations/ Journals**: Advertising placed on digital inventory owned by relevant professional associations (*e.g.*, the American Association of Nurse Practitioners, National Association of Social Workers, American Academy of Physician Associates, American Counseling Association, American Psychological Association*, and others). Association data on membership status (current or former), member age, and member engagement by media type may be leveraged to help determine the best budget, placement(s), and sub-groups of Ancillary Providers for advertising. Ads may be served via banner advertisements on publishers' networks of sites,

or via email to opted-in audiences of Ancillary Providers.  The majority of ads will be focused to retirees or members aged 55 years and older.

e.      **Custom Programmatic: Healthcare Provider Audiences**: Create custom audiences of Ancillary Providers based on their National Provider Identifiers ("NPIs") for those who have one, such as therapists and orthotists. Age data can be layered on to ensure likely retired providers are reached.  Ads will be delivered to these custom NPI-based audiences, wherever they happen to be on the web.

g.      **Third Party Data Targeting**: Through our partners, Signal can access third party data segments for the various sub-groups of Ancillary Providers nationwide. Display ads will be served to these individuals in-app and across the web, regardless of the type of content they are consuming.

### *Earned Media*

26.      An earned media program will also be implemented to amplify the paid media and to provide additional notice to Class Members. A news release will be distributed on PR Newswire news circuits reaching traditional media outlets (television, radio, newspapers, magazines) and national websites.  The release will highlight the toll-free telephone number and case website, so that potential claimants could obtain information.

### *Case Website*

27.      An informational website for the case will be available at www.BCBSprovidersettlement.com.  This website will be referenced in all advertising and will include the Settlement Agreement

## NOTICE FORM AND CONTENT

28.     The proposed notices effectively communicate the required information about the settlement.

29.     The long form notice provides substantial information, including background on the issues in the case and all specific instructions Class Members need to follow to properly exercise their rights. No important or required information is missing or omitted. It is designed to encourage readership and understanding, in a well-organized and reader-friendly format.

30.     The postcard and email notices are designed to capture Class Members' attention with concise, plain language. It directs readers to the case website or toll-free number for more information.

## CONCLUSION

31.     In my experience and opinion, the breadth, comprehensiveness, and efficacy of this Notice Plan is well beyond what is typical in these types of noticing programs. The reach of potential claimants through direct notice, and online advertisements as well as the press release provide known and unknown claimants—particularly potential claimants—with multiple exposures to information about the settlement.

I declare under penalty of perjury that, after reasonable inquiry, the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated:  October 10, 2024
Souderton, Pennsylvania

*Shannon Wheatman*

Shannon R. Wheatman, Ph.D.
Partner, Signal Interactive Media

## EXHIBIT A
**[Wheatman CV]**



# Shannon R. Wheatman, Ph.D.

Partner
Signal Interactive Media
1300 Connecticut Ave. NW, Suite 375
Washington, DC 20036
2023 – Present

Dr. Wheatman is an internationally court-recognized legal notice and media expert in mass tort, consumer, and product liability class actions and bankruptcies. She spent eighteen years working as an executive at two of the nation's leading professional service firms that offer legal advertising. She has developed and directed some of the largest and most complex national notification programs in the country. Dr. Wheatman began her career in 2000 at the Federal Judicial Center, where she was instrumental in the development of model notices to satisfy the plain language amendment to Rule 23. She has since developed plain language notices for mass tort bankruptcies. Her plain language expertise was advanced by her education, including her doctoral dissertation on plain language drafting of class action notice and her master's thesis on comprehension of jury instructions. Dr. Wheatman has been involved in over 700 class actions and bankruptcies.

## Selected Case Experience

### Antitrust

*Allen v. Dairy Farmers of America, Inc.*, No. 09-CV-00230-CR (D. Vt.).

*Blessing v. Sirius XM Radio, Inc.*, No. 09-CV-10035 HB (S.D.N.Y.).

*Brookshire Bros. v. Chiquita*, No. 05-CV-21962 (S.D. Fla.).

*Cipro Cases I and II*, No. 4154 and No. 4220 (Super. Ct. Cal.).

*In re Automotive Parts Antitrust Litig.,* MDL No. 2311 (E.D. Mich.).

*In re Domestic Airline Travel Antitrust Litig.*, MDL No. 2656 (N.D. Cal.).

*In re Dynamic Random Memory (DRAM) Antitrust Litig.,* MDL No. 1486 (N.D. Cal.).

*In re Flonase Antitrust Litig.*, No. 08-CV-3301 (E.D. Pa.).

*In re LIBOR-Based Financial Instruments Antitrust Litig.* (Barclays Bank, Citibank, Deutsche Bank and HSBC settlements), MDL No. 2262 (S.D.N.Y.).

*In re Metoprolol Succinate End-Payor Antitrust Litig.*, No. 06-CV-71 (D. De.).

*In re NYC Bus Tour Antitrust Litig.,* No. 13-CV-0711 (S.D. N.Y.).

*In re Online DVD Rental Antitrust Litig.*, MDL No. 2029 (N.D. Cal.).

*In re Parking Heaters Antitrust Litig.*, No. 1:15-mc-00940 (E.D. N.Y.).

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL No. 1827 (N.D. Cal.).

*In re Transpacific Passenger Air Trans. Antitrust Litig.*, MDL No. 1913 (N.D. Cal.).



*Precision Associates, Inc. v. Panalpina World Transport*, No. 08-CV-00042 (E.D. N.Y.).

*Roos v. Honeywell Int'l, Inc.*, No. 04-0436205 (Super. Ct. Cal.).

*Sweetwater Valley Farm, Inc. v. Dean Foods*, No. 07-CV-208 (E.D. Tenn.).

*The Shane Grp., Inc., v. Blue Cross Blue Shield of Michigan*, No. 10-CV-14360 (D. Minn.).

## Bankruptcy

*In re: Aearo Technologies LLC*, No. 22-02890 (Bankr. S.D. Ind.)(asbestos).

*In re: Barretts Minerals Inc.*, No. 23-90794 (Bankr. S.D. Tex.)(asbestos).

*In re Boy Scouts of America and Delaware BSA, LLC*, No. 20-10343 (Bankr. D. Del.)(sexual abuse).

*In re Energy Future Holdings Corp.*, No. 14-10979 (Bankr. D. Del.) (asbestos).

*In re Garlock Sealing Techs. LLC*, No. 10-31607 (Bankr. W.D.N.C.) (asbestos).

*In re HONX, Inc.*, No. 22-90035 (Bankr. S.D. Tex.) (asbestos).

*In re: Kidde-Fenwal, Inc.*, No. 23-10638 (Bankr. Del.) (forever chemicals).

*In re: LTL Management LLC*, No. 3:23-bk-12825 (D. NJ) (asbestos).

*In re PG&E Corp. & Pacific Gas & Electric Co.*, No. 19-30088 (Bankr. N.D.Cal.) (Supplemental Notice Program to fire claimants).

*In re Red River Talc LLC*, No. 24-90505 (Bankr. S.D. Tex.) (asbestos).

*In re SCBA Liquidation, Inc., f/k/a Second Chance Body Armor, Inc.,* No. 04-12515 (Bankr. W.D. Mich.) (class action within a bankruptcy/defective product).

*In re The Roman Catholic Church of The Archdiocese of New Orleans*, No. 20-10846 (Bankr. E.D. La.) (sexual abuse).

*In re The Roman Catholic Diocese of Rockville Centre, New York*, No. 20-12345  (Bankr. S.D.N.Y.) (sexual abuse).

*In re Think Finance, LLC*, No. 17-33964 (Bankr. N.D. Tex.) (payday loan borrowers).

*In re W.R. Grace & Co.*, No. 01-01139 (Bankr. D. Del.) (asbestos).

## Consumer and Personal Injury/Product Liability

*Abbott v. Lennox Industs., Inc.,* No. 16-2011-CA-010656 (4th Jud. Cir. Ct., Dade Cty. Fla) (defective product).

*Anderson v. Trans Union, LLC*, No. 16-CV-00558 (E.D. Va.), and *Clark v. Trans Union, LLC*, No. 15-CV-00391 (E.D. Va.) (consumer finance).

*Beringer v. Certegy Check Servs., Inc.*, No. 07-CV-1434 (M.D. Fla.) (data breach).

*Chaudhri v. Osram Sylvania, Inc.,* No. 11-CV-05504 (D.N.J.) (false advertising).

*Clark v. Experian Info. Sols., Inc.,* No. 3:16-cv-00032 (E.D. Va.) and *Brown v. Experian Info. Sols., Inc.,* No. 3:16-cv-00670 (E.D. Va.) (consumer finance).

*CSS, Inc. v. FiberNet, L.L.C.*, No. 07-C-401 (Cir. Ct. W. Va.) (telecommunications).

*Donovan v. Philip Morris USA, Inc.,* No. 06-CV-12234 (D. Mass.) (tobacco).

*FIA Card Servs., N.A. v. Camastro*, No. 09-C-233 (Cir. Ct. W.Va.) (credit card arbitration).



*George v. Uponor Corp.*, No. 12-CV-249 (D. Minn.) (defective product).

*Glazer v. Whirlpool Corp.*, No. 08-CV-65001 (N.D. Ohio) (defective product).

*Grays Harbor v. Carrier Corp.*, No. 05-CV-21962 (W.D. Wash.) (defective product).

*Hill-Green v. Experian Info. Sols., Inc., No. 3:19-cv-00708 (E.D. Va.) (consumer finance)*

*In Re: 3M Combat Arms Earplug Prods. Liability Litig.*, MDL 2885 (N.D. Fla.)(personal injury).

*In re Bldg. Materials Corp. of Am. Asphalt Roofing Shingle Prods. Liab. Litig., No. 11-CV- 02000 (D.S.C.) (defective product).*

*In re Checking Account Overdraft Litig.*, MDL No. 2036 (S.D. Fla.) (JP Morgan, U.S. Bank, BOA settlements; overdraft fees).

*In re Chinese-Manufactured Drywall Prods. Liab. Litig., MDL No. 2047 (E.D. La.).*

*In re Enfamil LIPIL Mktg. & Sales Practs. Litig.*, MDL No. 2222 (S.D. Fla.) (false advertising).

*In re M3Power Razor System Mktg. & Sales Practs. Litig.*, MDL No. 1704 (D. Mass.) (false advertising).

*In re National Football League Players' Concussion Injury Litig.,* MDL No. 2323 (E.D. Pa.)(personal injury).

*In re Netflix Privacy Litig.*, No. 11-CV-00379 (N.D. Cal.) (privacy).

*In re Pharm. Industry Average Wholesale Price Litig.*, MDL No. 1456 (D. Mass.) (pharmaceutical).

*In re Sony Gaming Networks & Customer Data Security Breach Litig.*, MDL No. 2258 (S.D. Cal.) (data breach).

*In re Target Corp. Customer Data Sec. Breach Litig., MDL No. 2522* (D. Minn.) (data breach).

*In re Toyota Motor Corp. Unintended Acceleration Mktg, Sales Practs., & Prods. Litig.,* No. 10-ml-2151 (C.D. Cal.) (product liability).

*In re Volkswagen "Clean Diesel" Mktg., Sales Practs., and Prods. Liability Litig., MDL No. 2672 (N.D. Cal.) (false advertising).*

*In re Vioxx Prods. Liab. Litig.*, MDL No. 1657 (E.D. La) (pharmaceutical).

*In re Wachovia Corp. "Pick-a-Payment" Mortgage Mktg & Sales Practs. Litig.*, MDL No. 2015 (N.D. Cal.) (consumer finance).

*In re Wirsbo Non-F1807 Yellow Brass Fittings*, No. 08-CV-1223 (D. Nev.) (defective product).

*Jabbari v. Wells Fargo*, No. 15-CV-02159 (N.D. Cal.) (consumer finance).

*Keilholtz v. Lennox Hearth Prods.*, No. 08-CV-00836 (N.D. Cal.) (defective product).

*Kramer v. B2Mobile, LLC*, No. 10-CV-02722 (N.D. Cal.) (TCPA).

*Lee v. Carter-Reed Co., L.L.C.*, No. UNN-L-39690-04 (N.J. Super. Ct.) (false advertising).

*Mirakay v. Dakota Growers Pasta Co., Inc.*, No. 13-CV-4229 (D.N.J.) (false advertising).

*Palace v. DaimlerChrysler*, No. 01-CH-13168 (Cir. Ct. Ill.) (defective product).

*Pauley v. Hertz Global Holdings, Inc.*, No. 13-C-236 (Cir. Ct. W.Va.) (administrative fees).

*Rowe v. UniCare Life & Health Ins. Co.*, No. 09-CV-02286 (N.D. Ill.) (data breach).

*Spillman v. Domino's Pizza*, No. 10-CV-349 (M.D. La.) (robocall).

*Thomas v. Equifax Info. Servs., LLC, No. 3:18-cv-00684 (E.D. Va.) (consumer finance).*

*Trammell v. Barbara's Bakery, Inc.*, No. 12-CV-02664 (N.D. Cal.) (false advertising).



*United Desert Charities v. Sloan Valve Company*, No. 12-CV-06878 (C.D. Cal.) (defective product).

*Wolph v. Acer America Corp.*, No. 09-CV-01314 (N.D. Cal.) (false advertising).

## Environmental/Property

*Allen v. Monsanto Co.*, No. 041465 and *Carter v. Monsanto Co.*, No. 00-C-300 (Cir. Ct. W. Va.) (dioxin release).

*Andrews v. Plains All Am. Pipeline, L.P.*, No. 15-CV-04113 (C.D. Cal.) (Santa Barbara Oil Spill).

*Angel v. U.S. Tire Recovery*, No. 06-C-855 (Cir. Ct. W.Va.) (tire fire).

*Cather v. Seneca-Upshur Petroleum Inc.*, No. 09-CV-00139 (N.D. W.Va.) (oil & gas rights).

*Ed Broome, Inc. v. XTO Energy, Inc.,* No. 09-CV-147 (N.D. W.Va.) (oil & gas rights).

*Good v. West Virginia Am. Water Co.*, No. 14-CV-1374 (S.D.W. Va.) (water contamination).

*In re Katrina Canal Breaches Litig.*, No. 05-CV-4182 (E.D. La.) (Hurricanes Katrina and Rita).

*In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010,* MDL No. 2179 (E.D. La.) (BP, Halliburton, and Transocean settlements).

*Jones v. Dominion Transmission Inc.*, No. 06-CV-00671 (S.D. W.Va.) (oil & gas rights).

*Kowall v. United States Steel Corp.*, No. 2017-3355 (Wash. County., Pa., Civ. Div.) (heavy metal contamination).

*Thomas v. A. Wilbert & Sons, LLC*, No. 55,127 (18th Jud. Dist. Ct., Iberville Parish) (vinyl chloride water contamination).

## Government

Boarding Homes, Canadian Government.

*Cobell v. Salazar*, No. 96-CV-01285 (D.D.C.), Depts. of Interior and Treasury.

Countrywide Mortgage Settlement, Department of Justice.

*In re Black Farmers Discrimination Litig.,* No. 08-511 (D.D.C.), United States Dept. of Agriculture.

Iovate Settlement, Federal Trade Commission.

*Keepseagle v. Vilsack*, No. 99–3119 (D.D.C.), United States Dept. of Agriculture.

LeanSpa Educational Program, Federal Trade Commission.

National Mortgage Settlement, Attorneys General.

Vaginal Mesh Settlement, Washington Attorney General.

Walgreens Settlement, Federal Trade Commission.

## Insurance

*Beasley v. Hartford Ins. Co. of the Midwest*, No. CV-2005-58-1 (Cir. Ct. Ark.) (homeowners' insurance).

*Bond v. Am. Family Ins. Co.*, No. 06-CV-01249 (D. Ariz) (property insurance).

*Burgess v. Farmers Ins. Co.*, No. 2001-CV-292 (Dist. Ct. Okla.) (homeowners' insurance).

*Cole's Wexford Hotel, Inc. v. UPMC,* No. 10-CV-01609 (W.D. Pa.) (health insurance).



*Campbell v. First Am. Title Ins. Co.*, No. 08-CV-311(D. Me.) (title insurance).

*DesPortes v. ERJ Ins. Co.,* No. SU2004-CV-3564 (Ga. Super. Ct.) (credit premium insurance).

*Fogel v. Farmers Grp., Inc.*, No. BC300142 (Super. Ct. Cal.) (management exchange fees).

*Guidry v. Am. Public Life Ins. Co*., No. 2008-3465 (14th Jud. Dist. Ct.) (cancer insurance).

*Gunderson v. F.A. Richard & Assocs., Inc*., No. 2004-2417-D. (14th Jud. D. Ct. La.) (PPO).

*Johnson v. Progressive Casualty Ins., Co*., No. CV-2003-513 (Cir. Ct. Ark.) (automobile insurance).

*McFadden v. Progressive Preferred*, No. 09-CV-002886 (Ct. C.P. Ohio) (UM/UIM).

*Orrill v. Louisiana Citizens Fair Plan*, No. 05-11720 (Civ. Dist. Ct., Orleans Parish) (Hurricane Katrina property insurance).

*Press v. Louisiana Citizens Fair Plan Prop. Ins. Co*., No. 06-5530 (Civ. Dist. Ct., Orleans Parish) (Hurricane Katrina property insurance).

*Purdy v. MGA Ins. Co.*, No. D412-CV-2012-298 (4th Jud. Ct. N. Mex.) (UM/UIM).

*Shaffer v. Continental Casualty Co*., No. 06-CV-2235 (C.D. Cal.) (long-term care insurance).

*Sherrill v. Progressive Northwestern Ins. Co*., No. DV-03-220 (18th D. Ct. Mont.) (automotive premiums).

*Soto v. Progressive Mountain Ins. Co*., No. 2002-CV-47 (Dist. Ct. Mont.) (personal injury insurance).

*Webb v. Liberty Mutual Ins. Co*., No. CV-2007-418-3 (Cir. Ct. Ark) (bodily injury claims).

## Securities

*In re Municipal Derivatives Antitrust Litig.*, MDL No. 1950 (S.D.N.Y.).

*In re Mutual Funds Inv. Litig.,* MDL No. 1586 (D. Md.) (Allianz Sub-Track).

## Canada

*Bechard v. Province of Ontario*, No. CV-10-417343 (Ont. S.C.J.) (personal injury).

*Clarke v. Province of Ontario*, No. CV-10-411911 (Ont. S.C.J.) (personal injury).

*Dolmage v. Province of Ontario*, No. CV-09-376927CP00 (Ont. S.C.J.) (personal injury).

*Donnelly v. United Technologies Corp*., No. 06-CV-320045 CP (Ont. S.C.J.) (defective product).

*Hall v. Gillette Canada Co.*, No. 47521CP (Ont. S.C.J.) (false advertising).

*Wener v. United Technologies Corp*., 2008 QCCS 6605 (Québec) (defective product).

## UK

*Boyle v. Govia Thameslink Railway Ltd*., No. 1404/7/7/21(Comp. Appeal Trib.).

## Articles and Presentations

Shannon Wheatman, Speaker, *Managing Large-Scale, Complex Communications in Receiverships*, Stretto Receiver Counsel, Bluffton, SC (May 2024).

Shannon Wheatman, Webinar Speaker, *Cutting Through the Clutter: Tips for Increasing Response*, Ontario



Bar Association (Dec. 2022).

Shannon Wheatman, *Quantifying Notice Results in Class Actions*, in A Practitioner's Guide to Class Actions, 3rd Ed. 833 - 837 (Marcy Greer ed., 2021).

Shannon Wheatman & Tiffaney Janowicz, *Plain Language Toolkit for Class Action Notice*, in A Practitioner's Guide to Class Actions, 3rd Ed. 839 - 847 (Marcy Greer ed., 2021).

Shannon Wheatman & Elaine Pang, *Reality Check: The State of Media and Its Usage in Class Notice*, in A Practitioner's Guide to Class Actions, 3rd Ed. 849 - 858 (Marcy Greer ed., 2021)

Shannon Wheatman, Speaker, *Researching the Past and Predicting the Future*, Consumers and Class Action Notices: Federal Trade Commission Workshop, Washington, DC (Oct. 2019).

Shannon Wheatman, Speaker, *Looking Ahead – Challenges and Opportunities For Increasing Consumer Recovery Rates*, Consumers and Class Action Notices: Federal Trade Commission Workshop, Washington, DC (Oct. 2019).

Shannon Wheatman, Speaker, *How to Get Your Notice Actually Noticed: Claims Stimulation 3.0*, Women Antitrust Plaintiffs' Attorneys, Napa, CA (June 2018).

Joshua P. Davis, Shannon Wheatman, & Cristen Stephansky, *Writing Better Jury Instructions:  Antitrust As An Example*, 119 W. VA. L. REV. 235 (Fall 2016).

Shannon Wheatman, Webinar Speaker, *Balancing Due Process and Claims: A Conversation on Strategies to Safeguard Your Settlement*, American Association for Justice (Sept. 2016).

Shannon Wheatman & Alicia Gehring, *Mixed Media: A Smarter Approach To Class Action Notice*, Law360.com (June 11, 2015).

Shannon Wheatman, Speaker, *Balancing Due Process and Claims: A Conversation on Strategies to Safeguard Your Settlement*, Plaintiffs' Forum, Rancho Palos Verdes, CA (Apr. 2015).

Joshua Davis, Shannon Wheatman & Cristen Stephansky, *Writing Better Jury Instructions: Antitrust as an Example*, Paper presented at 15th Annual Loyola Antitrust Colloquium, Chicago, IL (Apr. 2015).

Shannon R. Wheatman, Speaker, *Can Competition Concepts be Made Comprehensible to Juries (and Judges)*, American Antitrust Institute's Business Behavior & Competition Policy in the Courtroom: Current Challenges for Judges, Stanford, CA (Aug. 2014).

Shannon R. Wheatman, Webinar Speaker, *Crafting Class Settlement Notice Programs: Due Process, Reach, Claims Rates, and More*, Strafford Publications (Feb. 2014).

Shannon R. Wheatman, *Cutting Through the Clutter: Eight Tips for Creatively Engaging Class Members and Increasing Response*, CLASS ACTION LITIGATION REPORT, 15 CLASS 88 (Jan. 24, 2014).

Shannon Wheatman & Michelle Ghiselli, *Privacy Policies: How To Communicate Effectively with Consumers*, International Association of Privacy Professionals (2014).

Shannon R. Wheatman, Speaker, *Report on Model Jury Instructions in Civil Antitrust Cases, Presentation*, American Antitrust Institute's 7th Annual Private Antitrust Enforcement Conference, Washington, DC (Dec. 2013).



Shannon R. Wheatman, Speaker, Class Action Notice, Reach & Administration, CLE International's 9th Annual Class Action Conference, Washington, DC (Oct. 2013).

Shannon R. Wheatman, *Ensuring Procedural Fairness Through Effective Notice,* in NATIONAL CONFERENCE ON CLASS ACTIONS:  RECENT DEVELOPMENTS IN QUÉBEC, IN CANADA AND IN THE UNITED STATES 83-99 (Yvon Blais ed., 2013).

Shannon R. Wheatman, Speaker, *Class Action Developments and Settlements*, 18th Annual Consumer Financial Services Institute, New York, New York (Apr. 2013).

Shannon R. Wheatman, Speaker, *Recent Trends in Class Actions in the United States*, National Conference on Class Actions:  Recent Developments in Québec, in Canada and in the United States, Montreal, Canada (Mar. 2013).

Shannon R. Wheatman, Speaker, *Report on Model Jury Instructions in Civil Antitrust Cases, Presentation*, American Antitrust Institute's 6th Annual Private Antitrust Enforcement Conference, Washington, DC (Dec. 2012).

Shannon R. Wheatman & Katherine M. Kinsella, *International Class Action Notice*, in WORLD CLASS ACTION: A GUIDE TO GROUP AND REPRESENTATIVE ACTIONS AROUND THE GLOBE 673-686 (Paul Karlsgodt ed., 2012).

Katherine Kinsella & Shannon Wheatman, *Class Notice and Claims Administration*, in PRIVATE ENFORCEMENT OF ANTITRUST LAW IN THE UNITED STATES: A HANDBOOK 338–348 (Albert A. Foer & Randy M. Stutz eds., 2012).

Shannon R. Wheatman, Webinar Speaker, *Class Action Notice Requirements:  Challenges for Plaintiffs and Defendants*, Strafford Publications (July 2012).

Shannon R. Wheatman, Webinar Speaker, *How to Craft Plain Language Privacy Notices*, Int'l Assoc. of Privacy Professionals (Oct. 2011).

Shannon R. Wheatman, Speaker, *Improving Take-Up Rates in Class Actions*, The Canadian Institute's  12th Annual National Forum on Class Actions, Ontario, Canada (Sept. 2011).

Shannon R. Wheatman & Terri R. LeClercq, *Majority of Publication Class Action Notices Fail to Satisfy Rule 23 Requirements*, 30 REV. LITIG. 53 (2011).

Shannon R. Wheatman & Terri R. LeClercq, *Majority of Publication Class Action Notices Fail to Satisfy Rule 23 Requirements*, CLASS ACTION LITIGATION REPORT, 12 CLASS 560, (June 24, 2011).

Katherine Kinsella & Shannon Wheatman, *Class Notice and Claims Administration*, in THE INTERNATIONAL PRIVATE ENFORCEMENT OF COMPETITION LAW 264–274 (Albert A. Foer & Jonathan W. Cuneo eds., 2010).

Shannon R. Wheatman, Speaker, *Majority of Publication Class Action Notices Fail to Satisfy Plain Language Requirements*, Clarity International Conference, Lisbon, Portugal (Oct. 2010).

Shannon R. Wheatman, Webinar Speaker, *Class Action Notification with Electronic Media: Emerging Legal Issues*, Stratford Publications (Sept. 2010).

Shannon R. Wheatman & Thomas E. Willging, *Does Attorney Choice of Forum in Class Action Litigation Really Make a Difference?* 17 CLASS ACTIONS & DERIVATIVES SUITS 1 (2007).

Todd B. Hilsee, Gina M. Intrepido & Shannon R. Wheatman, *Hurricanes, Mobility and Due Process: The*



*"Desire-to-Inform" Requirement for Effective Class Action Notice Is Highlighted by Katrina*, 80 TULANE L. REV. 1771 (2006).

Thomas E. Willging & Shannon R. Wheatman, *Attorney Choice of Forum in Class Action Litigation: What Difference Does it Make?* NOTRE DAME L. REV., 81 (2), 101, 161 (2006).

Todd B. Hilsee, Shannon R. Wheatman & Gina M. Intrepido, *Do you really want me to know my rights? The ethics behind due process in class action notice is more than just plain language: A desire to actually inform.* GEO. J. LEGAL ETHICS, 18 (4), 1359-1382 (2005).

Thomas E. Willging & Shannon R. Wheatman, *An Empirical Examination of Attorneys' Choice of Forum in Class Action Litigation.* FEDERAL JUDICIAL CENTER (2005).

Elizabeth C. Wiggins & Shannon R. Wheatman, *So what's a concerned psychologist to do? Translating the research on interrogations, confessions, and entrapment into policy*, in INTERROGATIONS, CONFESSIONS AND ENTRAPMENT 265–280 (G. Daniel Lassiter ed., 2004).

Thomas E. Willging & Shannon R. Wheatman, *Attorneys' Experiences and Perceptions of Class Action Litigation in Federal and State Courts. A Report to the Advisory Committee on Civil Rules Regarding a Case Based Survey.* FEDERAL JUDICIAL CENTER (2003).

Shannon R. Wheatman, *Survey of Bankruptcy Judges on Effectiveness of Case-Weights.* FEDERAL JUDICIAL CENTER (2003).

Elizabeth C. Wiggins & Shannon R. Wheatman, *Judicial Evaluation of Bankruptcy Judges.* FEDERAL JUDICIAL CENTER (2003).

Robert Niemic, Thomas Willging, & Shannon Wheatman, *Effects of Amchem/Ortiz on Filing of Federal Class Actions: Report to the Advisory Committee on Civil Rules.* FEDERAL JUDICIAL CENTER (2002).

Shannon Wheatman, Robert Niemic & Thomas Willging, *Report to the Advisory Committee on Civil Rules: Class Action Notices.* FEDERAL JUDICIAL CENTER (2002).

Elizabeth C. Wiggins & Shannon R. Wheatman, *Implementation of Selected Amendments to Federal Rule of Civil Procedure 26 by United States Bankruptcy Courts.* FEDERAL JUDICIAL CENTER (2001).

Shannon R. Wheatman & David R. Shaffer, *On finding for defendants who plead insanity: The crucial impact of dispositional instructions and opportunity to deliberate.* LAW & HUM. BEH., 25(2), 165, 181 (2001).

Shannon R. Wheatman, *Distance Learning in the Courts.* FEDERAL JUDICIAL CENTER (2000).

David R. Shaffer & Shannon R. Wheatman, *Does personality influence the effectiveness of judicial instructions?* PSYCHOL. PUB. POL'Y & L., 6, 655, 676 (2000).

## Court Testimony

*In Re: 3M Combat Arms Earplug Prods. Liability Litig.*, MDL 2885 (N.D. Fla.)

*In re Boy Scouts of America and Delaware BSA, LLC*, No. 20-10343 (Bankr. D. Del.)

*In re Chinese-Manufactured Drywall Products Liability Litig.*, MDL No. 2047 (E.D. La.).



*In re The Roman Catholic Church of The Archdiocese of New Orleans*, No. 20-10846 (Bankr. E.D. La.).

*In re Think Finance, LLC,* No. 17-33964 (Bankr. N.D. Tex.).

*In re Volkswagen "Clean Diesel" Mktg., Sales Practs., and Prods. Liability Litig.*, MDL No. 2672 (N.D. Cal.).

*Kowall v. United States Steel Corp.*, No. 2017-3355 (Wash. County., Pa., Civ. Div.).

*State v. Farmer Group Inc.*, No. D-1-GV-02-002501(D. Ct. Tex., Travis County).

*Scharfstein v. BP West Coast Prods., LLC*, No. 1112-17046 (Cir. Ct. Ore.).

*Spillman v. Domino's Pizza*, No. 10-CV-349 (M.D. La.).

*PRC Holdings LLC v. East Resources, Inc.*, No. 06-C-81 (Cir. Ct. W. Va.).

*Guidry v. Am. Public Life Ins. Co.*, No. 2008-3465 (14th Jud. Dist. Ct., Calcasieu Parish).

*Webb v. Liberty Mutual Ins. Co.*, No. CV-2007-418-3 (Cir. Ct. Ark.).

*Beasley v. The Reliable Life Ins. Co.*, No. CV-2005-58-1 (Cir. Ct. Ark).

## Depositions

*In re Think Finance, LLC,* No. 17-33964 (Bankr. N.D. Tex.).

*Hale v. CNX Gas Co., LLC*, No. 10-CV-59 (W.D. Va.).

*Thomas v. A. Wilbert Sons, LLC*, No. 55,127 (18th Jud. Dist. Ct., Iberville Parish).

## Judicial Comments

**Ferrell v. U-Haul, No. 11-C-1427 (Cir. Ct. W. Va.)**
In overruling objections to the notice program, the Court found that "Dr. Wheatman is one of the foremost experts on class notice and has been qualified as a class notice expert in both the courts of this state (including this Court) and nationwide." - Hon. Joanna I. Tabit (2018)

**Jabbari v. Wells Fargo, No. 15-CV-02159 (N.D. Cal.)**
"In addition to that robust direct mail and email notice program, the Settlement provided an extensive media and advertising component. *See* Wheatman Decl. (ECF 183). That included printing a color publication notice in national news outlets and Spanish-language outlets. Id. ¶¶ 17-19. "Banner ads" were also placed on websites, using targeted ad campaigns. Id. ¶ 23. Supplementing all of these efforts was a media outreach program designed to drive awareness of the Settlement and point Settlement Class Members to the Settlement Website, www.WFSettlement.com, which provided notice, frequently asked questions, and key court documents. Id. ¶¶ 28-33 . . . In short, the parties and their Court-appointed experts used every reasonable tool to create and implement and [sic] wide-ranging program to provide the best notice practicable to potential Settlement Class Members . . . Because the Court finds that the Notice complied with due process and the requirements of Rule 23, it overrules objections to the Notice." - Hon. Vince Chhabria (2018)

**Good v. West Virginia American Water Co., No. 14-CV-1374 (S.D.W. Va.)**
"The Notice transmitted to the Settlement Class met the requirements of Fed. R. Civ. P. 23(c), constituted the best notice practicable under the circumstances, and satisfied the Constitutional due process



requirements of notice with respect to all Settlement Class Members, . . . The Notice Program was executed by qualified and experienced Notice Administrators . . ." - Hon. John T. Copenhaver, Jr. (2018)

### *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010,* MDL No. 2179 (E.D. La.) (Haliburton and Transocean settlements)

"The Class Notices were 'noticeable, clear, concise, substantive, and informative.' Wheatman Decl. ¶ 4(b).14 The notice distribution method satisfied Rule 23(c)(2), as it was the 'best notice that is practicable under the circumstances.' Fed. R. Civ. P. 23(c)(2); *see* Wheatman Decl. ¶ 5. The notice contents satisfied Rule 23(c)(2)(B)(i)–(vii) . . . " - Hon. Carl J. Barbier (2017)

### *In re Automotive Parts Antitrust Litig.,* MDL No. 2311 (E.D. Mich.)

"EPPs, through EPPs' class action notice expert consultant, Kinsella Media, LLC ("Kinsella"), implemented a class-notice program utilizing paid and earned media. See, e.g., Declaration of Shannon R. Wheatman, Ph.D. . . . Notice was published in *Field & Stream*, *ESPN The Magazine*, *People*, *Reader's Digest*, *Southern Living*, *Woman's Day*, *The Wall Street Journal*, *Auto Rental News*, *Automotive Fleet*, *Reuters*, *NBC Money*, *Consumer Reports*, and *Automotive Weekly*, and online media efforts through banner advertisements on outlets like Facebook and Yahoo!. The banner advertisements . . . have been seen a total estimated 354,593,140 times. The earned media component of this notice program included a multimedia news release distributed on PR Newswire's US1 National Circuit on November 29, 2016. Id. [T]he release was republished across 171 news websites and received over 11,415 views. Id. A total of 248 journalists engaged with the multimedia news release, and major national outlets that covered the Settlements, include: *Reuters*, *Associated Press*, *Boston Globe*, *Chicago Tribune*, *The Today Show*, *NBC Money*, *Consumer Reports*, and *Automotive Weekly*. Other earned media efforts . . . included statewide press releases in the EPP States as well as outreach to 275 national and local reporters for print and television." - Hon. Marianne O. Battani (2017)

### *In re Volkswagen "Clean Diesel" Mktg., Sales Practs., and Prods. Liability Litig.*, MDL No. 2672 (N.D. Cal.)

"The Notice Program included 811,944 mailings, 453,797 emails, 125 newspaper insertions and targeted online advertising.  The Court is satisfied that the extensive Notice Program was reasonably calculated to notify Class Members of the proposed Settlement.  The Notice 'apprise[d] interested parties of the pendency of the action and afford them an opportunity to present their objections.' *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  Indeed, the Notice Administrator reports the Notice Program reached more than 90% of potential Class Members." - Hon. Charles R. Breyer (2016)

### *In re National Football League Players' Concussion Injury Litig.*, No. 2:12-md-02323 (E.D. Pa.)

"The content of the Long-Form Notice and Summary Notice satisfy the requirements of Rule 23 and due process. Each was written in plain and straightforward language.…  The purpose of the one-page Summary Notice is…to alert Class Members to the suit and direct them to more detailed information.  The Summary Notice does exactly that.…  [The Long-Form Notice] repeatedly instructs readers to sources that can answer their questions. Like the Summary Notice, the Long-Form Notice contains a banner at the bottom of each page directing those with "Questions?" to call a toll-free support number or visit the Settlement Website.…  The Settlement Class Notice clearly described of the terms of the Settlement and the rights of Class Members to opt out or object. [The] notice program ensured that these materials reached those with an interest in the litigation." – Hon. Anita B. Brody (2015)

### *In re Transpacific Passenger Air Trans. Antitrust Litig.*, MDL No. 1913 (N.D. Cal.)

In overruling an objection that direct notice should have been done, the Court found "[T]he notice program, which the Court already approved, reached 80.3% of the potential class members in the United States an average of 2.6 times and "at least 70%" of members of the Settlement Classes living in Japan.



See Mot. for Final Approval at 4; Wheatman Decl. ¶¶ 8, 18. The notice also included paid media in 13 other countries. Id.; ¶ 25. There were 700,961 unique visits to the website, toll-free numbers in 15 countries received over 2,693 calls, and 1,015 packages were mailed to potential class members. Id. ¶¶ 6, 9, 10. It was therefore adequate." - Hon. Charles R. Breyer (2015)

***In re Target Corp. Customer Data Security Breach Litig.*, MDL No. 2522 (D. Minn)**
"The parties accomplished notice here through direct notice, paid and earned media, and an informational website . . . [T]he notice program reached 83% of potential class members. The notice here comports with Rule 23(e) . . . Class notice reached more than 80 million people, with direct notice sent to 61 million consumers . . . [The] infinitesimally small amount of opposition weighs in favor of approving the settlement." - Hon. Paul A. Magnuson (2015)

***The Shane Grp., Inc., v. Blue Cross Blue Shield of Mich.*, No. 10-CV-14360 (D. Minn.)**
"The notice to Settlement Class Members consisted of postcard notices to millions of potential class members, as well as advertisements in newspapers and newspaper supplements, in *People* magazine, and on the Internet . . . The Court finds that this notice . . . was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to be provided with notice; and . . . fully complied with due process principles and Federal Rule of Civil Procedure 23." - Hon. Denise Page Hood (2015)

***Mirakay v. Dakota Growers Pasta Co., Inc.*, No. 13-CV-4229 (D. N.J.)**
"Having heard the objections made, the Court is unimpressed with the Objectors argument that there was somehow insufficient notice . . . This notice program has fully informed members of their rights and benefits under the settlement, and all required information has been fully and clearly presented to class members. Accordingly, this widespread and comprehensive campaign provides sufficient notice under the circumstances, satisfying both due process and Rule 23 and the settlement is therefore approved by this Court." - Hon. Joel A. Pisano (2014)

***Spillman v. Dominos Pizza, LLC.*, No. 10-CV-349 (M.D. La.)**
"At the fairness hearing notice expert Wheatman gave extensive testimony about the design and drafting of the notice plan and its implementation, the primary goal of which was to satisfy due process under the applicable legal standards . . . Wheatman, who has extensive experience developing plain-language jury instructions, class action notices and rules of procedure, testified that the notice was composed at a ninth grade reading level because many adults read below a high school level." - Hon. Stephen C. Riedlinger (2013)

***Kramer v. B2Mobile, LLC*, No. 10-CV-02722 (N.D. Cal.)**
"The Court approved Notice Plan to the Settlement Classes . . . was the best notice practicable under the circumstances, including comprehensive nationwide newspaper and magazine publication, website publication, and extensive online advertising. The Notice Plan has been successfully implemented and satisfies the requirements of Federal Rule of Civil Procedure 23 and Due Process." - Hon. Claudia A. Wilken (2012)

***Cather v. Seneca-Upshur Petroleum, Inc.,* No. 09-CV-00139 (N.D. W. Va.)**
 "The Court finds that Class Members have been accorded the best notice as is practical under the circumstances, and have had the opportunity to receive and/or access information relating to this Settlement by reading the comprehensive written notice mailed to them . . . or by reading the published Notice in the local newspapers . . . The Court further finds that the Notice provided to the members of the Settlement Class had been effective and has afforded such class members a reasonable opportunity to be heard at the Final Fairness Hearing and to opt-out of the subject settlement should anyone so desire." - Hon. Irene M. Keeley (2012)



***In re Checking Account Overdraft Fee Litig.*, MDL No. 2036 (S.D. Fla.)  (JP Morgan Settlement)**
"The Court finds that the Settlement Class Members were provided with the best practicable notice; the notice was "reasonably calculated, under [the] circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Shutts*, 472 U.S. at 812 (quoting *Mullane*, 339 U.S. at 314-15). This Settlement with Chase was widely publicized, and any Settlement Class Member who wished to express comments or objections had ample opportunity and means to do so." - Hon. James Lawrence King (2012)

***Purdy v. MGA Ins. Co.*, No. D412-CV-2012-298 (N.M. 4th Jud. Dist. Ct.)**
"Notice of the Settlement Class was constitutionally adequate, both in terms of it substance and the manner in which it was disseminated.  The Notice contained the essential elements necessary to satisfy due process . . . [T]he Notice also contained a clear and concise Claim Form, and a described a clear deadline and procedure for filing of Claims.  Notice was directly mailed to all Class Members whose current whereabouts could be identified by reasonable effort.  Notice reached a large majority of the Class Members.  The Court finds that such notice constitutes the best notice practicable." - Hon. Eugenio Mathis (2012)

***Cobell v. Salazar,* No. 1:96CV01285 (D.D.C.)**
"I have never seen, and I handled the largest price-fixing case in the history of the United States, the In re: Vitamins case, notice to the extent sent out in this case, . . . .  I allowed them to provide notice in every possible way, including personally going out and visiting all of the affected tribal areas.  It is just not a letter from Washington. It is a tremendous effort that was undergone, both by the plaintiffs principally and some by the government, to not only give notice but to explain what happened . . . . There is just no question that this was covered in all of the local papers constantly. It was covered in all of the local advertising outlets. It was hard to miss.  As a side note, I go to Montana two or three times a year, and you could not miss…. I have already found that there is extensive and extraordinary notice here. We even had a notice expert retained in how to do it properly." - Hon. Thomas F. Hogan (June 2011)

***Keepseagle v. Vilsack*, No. 99–3119 (D.D.C.)**
"I'm not going to review in detail the exhaustive notice plan created and implemented by Plaintiffs' counsel at this time.  For those interested, I invite you to examine the several motions on the docket relating to notice with affidavits from Kinsella Media, who class counsel have hired as Notice Administrators." - Hon. Emmet G. Sullivan (2011)

"In my view, the notice program was excellent and it persuades the Court that the parties worked extremely hard to notify the entire class about the settlement so that as many class members as possible can obtain monetary and other relief under the settlement." - Hon. Emmet G. Sullivan (2011)

***Soto v. Progressive Mountain Ins. Co.*, No. 2002-CV-47 (Dist. Ct. Colo.)**
"Notice of the Settlement Class was constitutionally adequate, both in terms of its substance and the manner in which it was disseminated. The Notice contained the essential elements necessary to satisfy due process . . . Finally, the Notice also contained a clear and concise Claim Form, and described a clear deadline and procedure for filing of claims . . . Notice reached a large majority of the Class Members. The Court finds that such notice constitutes the best notice practicable." - Hon. J. Steven Patrick (2010)

***In re Katrina Canal Breaches*, No. 05-CV-4182 (E.D. La.)**
"The notice here was crafted by Shannon Wheatman, Ph.D., whose affidavit was received as evidence . . . The entire notice was drafted in plain, comprehensible language . . . The Court finds this notice adequately reached the potential class." - Hon. Stanwood R. DuVal, Jr. (2009)



***Jones v. Dominion Transmission Inc.*, No. 06-CV-00671 (S.D. W. Va.)**
"The Parties' notice expert Shannon R. Wheatman, Ph.D. . . . testified that in this case . . . that the mailed notices reached approximately 95.4 percent of the potential class . . . I HOLD that personal jurisdiction exists over the Class Members because notice was reasonable and afforded the Settlement Class an opportunity to be heard and to opt out." - Hon. Joseph R. Goodwin (2009)

***Guidry v. Am. Public Life Ins. Co.*, No. 2008-3465 (14th Jud. Dist. Ct.)**
"The facts show that the notice plan . . . as adequate to design and implementation . . . Dr. Shannon R. Wheatman, a notice expert, also testified at the fairness hearing as to the sufficiency of the notice plan. Dr. Wheatman testified that the notice form, content, and dissemination was adequate and reasonable, and was the best notice practicable." - Hon. G. Michael Canaday (2008)

***Webb v. Liberty Mutual Ins. Co.*, (March 3, 2008) No. CV-2007-418-3 (Cir. Ct. Ark)**
"Ms. Wheatman's presentation today was very concise and straight to the point . . . that's the way the notices were . . . So, I appreciate that . . . Having admitted and reviewed the Affidavit of Shannon Wheatman and her testimony concerning the success of the notice campaign, including the fact that written notice reached 92.5% of the potential Class members, the Court finds that it is unnecessary to afford a new opportunity to request exclusion to individual Class members who had an earlier opportunity to request exclusion but failed to do so . . . The Court finds that there was minimal opposition to the settlement. After undertaking an extensive notice campaign to Class members of approximately 10,707 persons, mailed notice reached 92.5% of potential Class members." - Hon. Kirk D. Johnson (2008)

***Sherrill v. Progressive Northwestern Ins. Co.*, No. DV-03-220 (18th D. Ct. Mont.)**
"Dr. Wheatman's affidavit was very informative, and very educational, and very complete and thorough about the process that was undertaken here . . . So I have reviewed all of these documents and the affidavit of Dr. Wheatman and based upon the information that is provided . . . and the significant number of persons who are contacted here, 90 percent, the Court will issue the order." - Hon. Mike Salvagni (2008)

***Beasley v. The Reliable Life Ins. Co.*, No. CV-2005-58-1 (Cir. Ct. Ark)**
"[T]he Court has, pursuant to the testimony regarding the notification requirements, that were specified and adopted by this Court, has been satisfied and that they meet the requirements of due process. They are fair, reasonable, and adequate. I think the method of notification certainly meets the requirements of due process . . . So the Court finds that the notification that was used for making the potential class members aware of this litigation and the method of filing their claims, if they chose to do so, all those are clear and concise and meet the plain language requirements and those are completely satisfied as far as this Court is concerned in this matter." - Hon. Joe Griffin (2007)

## Education and Experience

### Education

Ph.D., Social Psychology, 2001; The University of Georgia, Athens, GA
Dissertation Title: *The effects of plain language drafting on layperson's comprehension of class action notices*.

M.S., Social Psychology, 1999; The University of Georgia, Athens, GA
Thesis Title: *Effects of verdict choice, dispositional instructions, opportunity to deliberate, and*



*locus of control on juror decisions in an insanity case.*

M.L.S., Legal Studies, 1996; The University of Nebraska-Lincoln, Lincoln, NE

B.A., Psychology, 1993; Millersville University of Pennsylvania, Millersville, PA
Honor's Thesis Title: *The effects of inadmissible evidence and judicial admonishment in individual versus group decisions in a mock jury simulation.*

## Related Experience

Kinsella Media, LLC
Washington, DC
2010-2022

Dr. Wheatman was the Vice President (2010-2012), Senior Vice President (2012-2014), and President (2014-2022) at Kinsella Media, a legal notification firm.

Hilsoft Notifications
Souderton, PA
2004-2009

Dr. Wheatman was the Vice President (2006-2009) and Notice Director (2004-2009) at Hilsoft Notifications, a legal notification firm.

Federal Judicial Center
Washington, DC
2000-2004

Dr. Wheatman was a Research Associate at the Federal Judicial Center. The Federal Judicial Center is the education and research agency for the Federal Courts. The Research Division performs empirical and explanatory research on federal judicial processes and court management. Dr. Wheatman worked with the Civil Rules Advisory Committee on a number of class action studies and with the Bankruptcy Administration Committee on judicial evaluations.

## Supplementary Background

Dr. Wheatman has a strong statistical background, having completed nine graduate-level courses as well as teaching undergraduate statistics at the University of Georgia.