FILED
2024 Oct-23 PM 6:19
U.S. DISTRICT COURT
N.D. OF ALABAMA

# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| IN RE:<br>BLUE CROSS BLUE SHIELD<br>ANTITRUST LITIGATION<br>(MDL NO. 2406) | Master File No. 2:13-CV-20000-RDP<br><br>This Document Relates to<br>Provider Track Cases |

**PROVIDER PLAINTIFFS' PROPOSED PLAN OF DISTRIBUTION**

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | ALLOCATION AMONG GENERAL ACUTE-CARE HOSPITALS, OTHER FACILITIES, AND MEDICAL PROFESSIONALS | 2 |
| III. | DISTRIBUTION OF THE HOSPITAL/FACILITY NET SETTLEMENT FUND | 4 |
| IV. | DISTRIBUTION OF THE PROFESSIONAL NET SETTLEMENT FUND | 6 |
| V. | REVIEW OF CLAIMS | 8 |
| VI. | BALANCE REMAINING IN SETTLEMENT FUND | 8 |

I. **INTRODUCTION**

1.     This Proposed Plan of Distribution ("Plan") shall govern the distribution of the settlement funds provided for by the settlement reached between Settling Defendants and Provider Plaintiffs in the above-captioned case ("Settlement Agreement" or "Settlement," attached as Exhibit A to Provider Plaintiffs' Motion for Preliminary Approval of Provider Class Settlement).[1] This Plan is referenced in ¶ 1(nnn) of the Settlement Agreement, and is subject to Court approval.

2.     All capitalized terms used in this Plan shall have the same meaning as provided for in the Settlement Agreement, unless expressly stated otherwise.

3.     In addition to structural relief and other non-monetary provisions (none of which are addressed in this Plan), the Settlement provides for Settling Defendants to pay an amount of $2.8 billion into the Escrow Account. Agreement ¶ 1(ffff), (mmmm).

4.     As set forth in ¶ 1(mmmm) of the Settlement Agreement, portions of the Settlement Fund shall be used to pay certain costs and fees prior to determining a net amount that is available for distribution to class members (the "Net Settlement Fund"). The fees and other costs to be deducted from the Settlement Fund include:

   a. $100 million of costs to cover Notice and Administration of the Settlement (or more, if the Court so orders). Included within the Notice and Administration Fund will be the fees and expenses associated with monitoring and compliance. Agreement ¶¶ 1(fff), 1(ggg), 30. If, prior to entry of the Final Judgment and Order of Dismissal, Settlement Class Counsel believes that $100 million plus interest will be insufficient to pay for Notice and Administration Costs,

---

[1] All descriptions of the Settlement Agreement's terms in this brief are for summary descriptive and illustrative purposes only, and are not intended to, and shall not be deemed to, modify the Settlement Agreement in any way, or have any bearing on the meaning or interpretation of the Settlement Agreement. The Settlement Agreement should be consulted for its actual terms and conditions.

1

    Settlement Class Counsel may seek approval from the Court to create a Material Loss Contingency Reserve, which shall be funded out of the Settlement Fund and will not exceed 2% of the Settlement Fund. *Id.* ¶ 1(ww), (ggg).

  b. Fee and Expense Awards to Settlement Class Counsel, including attorneys' fees not to exceed 25% of the Settlement Fund, and (ii) reimbursement of expenses and costs reasonably and actually incurred in connection with prosecuting the Provider Actions. *Id.* ¶ 37.

  c. Service Awards to class representatives, if Eleventh Circuit precedent permits such awards. At present, Eleventh Circuit precedent does not permit such awards. *Id.*; *Johnson v. NPAS Solutions, LLC*, 975 F.3d 1244 (11th Cir. 2020), *reh'g en banc denied*, 43 F.4th 1138 (11th Cir. 2022), *cert. denied*, 143 S. Ct. 1745–46 (2023).

  d. Escrow Account costs (including taxes and tax expenses). Agreement ¶ 35.

5. The Net Settlement Fund shall be distributed as follows.

## II. ALLOCATION AMONG GENERAL ACUTE-CARE HOSPITALS, OTHER FACILITIES, AND MEDICAL PROFESSIONALS

6. The Settlement Class in this case is defined as:

all Providers in the U.S. (other than Excluded Providers, who are not part of the Settlement Class) who currently provide or provided healthcare services, equipment or supplies to any patient who was insured by, or who was a Member of or a beneficiary of, any plan administered by any Settling Individual Blue Plan during the Settlement Class Period.

Ex. A ¶ 1(iiii).

"Excluded Providers" are defined as:

(i) Providers owned or employed by any of the Settling Defendants; (ii) Providers owned or employed exclusively by Government Entities or Providers that exclusively provided services, equipment or supplies to members of or participants in Medicare, Medicaid or the Federal Employee Health Benefits Programs; (iii)

2

>Providers that have otherwise fully released their Released Claims against the Releasees prior to the Execution Date, including but not limited to Providers that were members of any of the settlement classes in *Love v. Blue Cross and Blue Shield Association*, No. 1:03-cv-21296-FAM (S.D. Fla.); or (iv) Providers that exclusively provide or provided (a) prescription drugs; (b) durable medical equipment; (c) medical devices; (d) supplies or services provided in an independent clinical laboratory; or (e) services, equipment or supplies covered by standalone dental or vision insurance. Any Provider that falls within the exclusion(s) set forth in clauses (i), (ii) or (iv) of this Paragraph 1(gg) for only a portion of the Settlement Class Period is a Settlement Class Member that may recover in the settlement as set forth in the Plan of Distribution.

*Id.* ¶ 1(gg).

The Settlement Class Period is July 24, 2008 through the Execution Date, which is October 4, 2024. *Id.* ¶ 1(llll).

7. This Plan of Distribution distinguishes between two types of Providers: Health Care Facilities and Medical Professionals. Although each Settlement Class Member will be classified as only one type of Provider, Settlement Class Counsel anticipate that some Claimants will submit Settlement Claims on behalf of multiple Settlement Class Members, including more than one type of Provider.

8. Based on presentations to the neutral experts for all allocation issues, Kenneth Feinberg and Camille Biros ("Allocation Experts"), Settlement Class Counsel established an allocation of the Net Settlement Fund as follows: (a) 92% to Health Care Facilities (the "Hospital/Facility Net Settlement Fund"), and (b) 8% to Medical Professionals (the "Professional Net Settlement Fund"). This allocation was determined to be reasonable by the Allocation Experts.[2]

---

[2] Approximately 65% of physicians are excluded from the Settlement Class because the Court found that these physicians released their claims in *Love v. Blue Cross and Blue Shield Association*, No. 1:03-cv-21296-FAM (S.D. Fla.). Without the *Love* releases, the Medical Professionals' share would have been closer to 20%.

9. The Hospital/Facility Net Settlement Fund and the Professional Net Settlement Fund shall be considered to be and treated as separate funds for (a) Health Care Facilities and (b) Medical Professionals, respectively. To the extent that Claimants to a fund choose not to submit claims, that will result in increased compensation to Claimants who submit claims in that fund only, and not to all Claimants overall.

### III.   DISTRIBUTION OF THE HOSPITAL/FACILITY NET SETTLEMENT FUND

10. The determination of payment for each claim on the Hospital/Facility Net Settlement Fund shall begin with one of two methods for calculating the Claimant's allowed amounts for the Blue Plans' Commercial Health Benefit Products ("Allowed Amounts"): Option A (the "Default Method") or Option B (the "Alternative Method").

11. Option A (Default Method): The Default Method will be available to Claimants for whom the Provider Plaintiffs' experts have data concerning Allowed Amounts for all or part of the period from 2008 to 2015. If a Claimant elects the Default Method, the Provider Plaintiffs' experts will extrapolate the Claimant's Allowed Amounts for the entire Settlement Class Period, using the Consumer Price Index for hospital and related services from 2015 to the end of the Settlement Class Period. If the Provider Plaintiffs' experts do not have sufficient information about a Claimant's Allowed Amounts to extrapolate the Allowed Amounts, the Claimant must use the Alternative Method, described below.

12. Option B (Alternative Method): A Claimant may submit data showing its Allowed Amounts for each year from 2015 to the end of the Settlement Class Period. If the Provider Plaintiffs' experts lack data for the Claimant's Allowed Amounts for the period from 2008 to 2014, the Claimant may submit Allowed Amounts for this period as well. The Provider Plaintiffs' experts will work with the Settlement Claims Administrator to extrapolate or interpolate data for years in which it is unavailable, using the Consumer Price Index for hospital and related services. If the

4

Provider Plaintiffs' experts have such data for the period from 2008 to 2014, that data will be used unless the Claimant submits Allowed Amounts for the period from 2008 to 2014.

13. Due to a lack of necessary data, the Default Method is not available for Claimants located in Arizona, Iowa, Louisiana, Maryland, New Jersey, South Dakota, Virginia, the District of Columbia and Puerto Rico, as well as Claimants that were not open prior to January 1, 2015. Claimants who submit claims using the Default Method despite being ineligible to do so will be given an opportunity to resubmit their claims using the Alternative Method.

14. For both methods, the Allowed Amounts will be calculated separately for each National Provider Identifier (NPI) (or Taxpayer Identification Number (TIN) if the relevant services were not billed using an NPI). A Claimant must identify each NPI or TIN for which it is claiming, the time period for the claim for each NPI or TIN, and the ZIP Code associated with each NPI or TIN for that time period. General acute-care hospitals and other facilities that have an American Hospital Association (AHA) number will be requested to submit it, but this submission is not mandatory.

15. The Provider Plaintiffs' experts have used a multiple regression model that will allow them to estimate a coefficient for each Health Care Facility that represents the relative effect of the Defendants' conduct on the Health Care Facility, compared to other Health Care Facilities (before adjusting for the Health Care Facilities' Allowed Amounts). For example, if Health Care Facilities A and B have the same Allowed Amounts, the coefficient for Health Care Facility A is 1, and the coefficient for Health Care Facility B is 2, the effect of Defendants' conduct on Health Care Facility B is twice as large as the effect on Health Care Facility A. The coefficient depends on variables such as the Blue Plans' market share in the Health Care Facility's Core-Based Statistical Area (CBSA) or county that is not part of a CBSA, and the year.

16. To account for relative effects and Allowed Amounts, each NPI or TIN for which a Claimant is submitting claims will be assigned "Adjusted Allowed Amounts" equal to the product of its Allowed Amounts and the coefficient described above. Because the coefficient may vary from year to year, the products will be calculated for each year and then added together.

17. When all claims have been submitted for Health Care Facilities, the payment associated with any given NPI or TIN will be calculated as follows:

$$\frac{\text{NPI or TIN Adjusted Allowed Amounts}}{\text{Total Adjusted Allowed Amounts for All Health Care Facilities That Filed Claims}} \times \text{Hospital/Facility Net Settlement Fund}$$

18. The foregoing calculation shall be called the "Hospital/Facility Claim Payment Calculation," and the result of this calculation shall be the "Hospital/Facility Claim Payment" for each general acute-care hospital or other facility.

### IV. DISTRIBUTION OF THE PROFESSIONAL NET SETTLEMENT FUND

19. Because medical professionals move over time and their access to their financial records may thus be more difficult, and because it is less efficient to attempt to extrapolate Allowed Amounts for medical professionals than it is for general acute-care hospitals and other facilities, the distribution method for medical professionals will be streamlined to permit them to estimate their Allowed Amounts for the Settlement Class Period within certain ranges. For any given medical professional, each range will correspond to a number of points:

| Range | Points |
| --- | --- |
| Less than or equal to $250,000 | 1 |

6

| | |
|---|---|
| More than $250,000, but less than or equal to $500,000 | 2 |
| More than $500,000, but less than or equal to $750,000 | 3 |
| More than $750,000, but less than or equal to $1,000,000 | 4 |
| More than $1,000,000 | 5 |

20. A Claimant must identify each NPI or TIN for which it is claiming, the time period for the claim for each NPI or TIN, and the ZIP Code associated with each NPI or TIN for that time period.

21. The Provider Plaintiffs' experts have used a multiple regression model that will allow them to estimate a coefficient for each Medical Professional that represents the relative effect of the Defendants' conduct on Medical Professionals, depending on the geographic locations of those Medical Professionals. Those coefficients have been grouped into ranges, with a multiplier assigned to each range, from 1.0 to 5.3. Each NPI or TIN for which a Claimant submits a claim will be assigned a number of "adjusted points" equal to the points that correspond to that NPI or TIN's range of Allowed Amounts, multiplied by the multiplier for the geographic area in which the Medical Professional is located.

22. When all claims have been submitted for Medical Professionals, the payment associated with any given NPI or TIN will be calculated as follows:

NPI or TIN Adjusted Points

÷

Total Adjusted Points for All Medical Professionals Who Filed Claims

×

Professional Net Settlement Fund

## V. REVIEW OF CLAIMS

23. Claimants submitting claims on behalf of Health Care Facilities will be provided the opportunity to review the Allowed Amounts upon which their Claim Payment is based prior to distribution of the Net Settlement Fund. To the extent a Claimant has a correction to its Allowed Amounts and the necessary materials to support that correction, the Settlement Claims Administrator will review any data in support of that proposed correction and determine whether to alter the Allowed Amounts for that Claimant.

24. The Settlement Claims Administrator will have discretion to seek more information from Claimants when they believe more investigation is warranted. If a Claimant does not timely provide requested information, it may have its claim denied in whole or in part at the sole discretion of the Settlement Claims Administrator (e.g., by applying the Default Method when the Claimant cannot substantiate amounts submitted pursuant to the Alternative Method).

25. If multiple claims are submitted for the same NPI or TIN for the same time period, the Settlement Claims Administrator will contact the claimants to see if they will agree to adjust their claims so that only one NPI or TIN is subject to a claim for any given time period. If there is no such agreement, the claimants may elect to submit to the Settlement Claims Administrator, in writing, any facts or arguments on which they are relying. The Settlement Claims Administrator shall make a determination in light of all the facts and circumstances. The Settlement Claims Administrator's determination is final.

## VI. BALANCE REMAINING IN SETTLEMENT FUND

26. Pursuant to Paragraph 39 of the Settlement Agreement, if there is a balance remaining in the Escrow Account (other than any Fee and Expense Award, the Notice and Administration Fund, any Service Award(s), and interest earned thereon) after (i) distribution of the Net Settlement Fund to Authorized Claimants and (ii) the time for Authorized Claimants to

8

take possession of their distributions, the Settlement Claims Administrator will, subject to Court approval, allocate the balance among Settlement Class Members in an equitable and economic fashion. Because such a distribution will be smaller than the initial distribution, the Settlement Claims Administrator may set a minimum distribution amount to prevent the costs of distribution from depleting the distribution itself. If it is not economical to distribute to Settlement Class Members any such residual amounts, then any such amounts will be added to the Notice and Administration Fund unless otherwise ordered by the Court.