# Exhibit C

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **IN RE: BLUE CROSS BLUE SHIELD ANTITRUST LITIGATION (MDL No.: 2406)** | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

**Master File No. 2:13-CV-20000-RDP**

**This document relates to:**
**THE PROVIDER TRACK**

**AMENDED DECLARATION OF ROMA PETKAUSKAS REGARDING PROPOSED NOTICE PLAN**

## AMENDED DECLARATION OF ROMA PETKAUSKAS REGARDING PROPOSED NOTICE PLAN

I, ROMA PETKAUSKAS, hereby declare and state as follows:

### I. INTRODUCTION

1.      My name is Roma Petkauskas.  I am a partner at BrownGreer PLC ("BrownGreer"), located at 250 Rocketts Way, Richmond, Virginia 23231.

2.      I am over the age of 21.  Unless otherwise noted, the matters set forth in this Declaration are based upon my personal knowledge, information received from the parties in this proceeding (the "Parties"), and information provided by my colleagues at BrownGreer.  The opinions presented and recommendations made in this Declaration rest on my training and experience.

3. I understand that Class Counsel in this matter will recommend that this Court appoint BrownGreer as the Settlement Notice Administrator for this class action settlement. BrownGreer engaged in a competitive bidding process to secure this recommendation.

4. My initial Declaration Regarding the Notice Plan, filed with this Court on October 14, 2024, described my experience, the notice plan being developed for the proposed class action settlement of this litigation (the "Notice Plan"), and why my professional opinion is that the Notice Plan will be effective and will constitute the best notice that is practicable under the circumstances to the members of the class involved in this settlement, pursuant to any applicable law and rules, including Rule 23 of the Federal Rules of Civil Procedure, and constitutional due process. (Document No. 3194-2). I submit this Amended Declaration Regarding the Notice Plan to include references to proposed Settlement documents and attach them as Exhibits.

## II. BACKGROUND AND EXPERIENCE

5. I have worked in the mass claims area, including class actions, for over 20 years. I have extensive experience as an administrator designing and implementing class action settlements; as a notice administrator designing notice plans and executing notice to claimants and counsel; as a court appointed neutral involved in multiple claim proceedings; and am a frequent presenter on class actions and other complex litigation. My personal biography is attached to this Declaration as Exhibit 1.

6. BrownGreer is a law firm that has specialized in notice administration and settlement administration since its founding in 2002. We are experts in the legal and administrative aspects of the design, approval, and implementation of notice plans, settlement programs and the design, staffing and operation of claims facilities to provide damages

payments, medical monitoring, or other benefits for the resolution of multiple claims through class action settlement, bankruptcy reorganization, voluntary agreement, or other aggregation vehicles. We have played major roles in many of the largest and most complex multiple claim proceedings and multiple claim settlement programs in history, serving as notice, claims, or qualified settlement fund administrators; special masters, trustees, or settlement counsel. The BrownGreer Firm Overview, attached as Exhibit 2 to this Declaration, provides detail on our firm.

7.     BrownGreer has performed crucial administration or review roles in more than 75 major programs involving the disposition of over $33 billion in payments to qualifying claimants. In the course of the implementation of claims programs, BrownGreer has designed, written and issued over 14 million notices to claimants and counsel on the outcome of the review of their claims. BrownGreer's work regularly involves drafting the text of notices to known and unknown claimants or members of a class or settlement group, designing the appearance of such notices to make them concise, clear and understandable, and designing and implementing the method of distributing such notices in the best practicable manner to the persons or entities affected by them. In its capacity as a notice administrator, BrownGreer has sent more than 41 million direct notices by mail and email and has designed and implemented print and internet publication notice campaigns achieving hundreds of millions of exposures. We have extensive experience in all aspects of notice and settlement design and implementation, including:

(a) Drafting and overseeing the implementation of specific campaigns to certain groups of claimants before an existing claims facility to accelerate the disposition of stalled claims, to alert claimants to information and materials needed to complete their claims to be reviewed for eligibility determinations, and to advise claimants of the results of processing steps on their claims.

(b) Designing, programming, testing, hosting and maintaining many settlement websites to provide information on programs and containing complex functionality permitting

claimants and their counsel to submit claims materials, receive notices on claim outcomes, take action on claims, and request materials.

(c) Designing, staffing, training and operating call center systems and automated call systems for claimants and counsel to hear information on settlement programs, request information on notices and programs, or speak with specialists in the programs.

(d) Implementing notice programs to known and unknown potential claimants or class members, assessing the reasonableness and sufficiency of such notice programs, from both practical and legal perspectives, and working with marketing and paid media consultants to place public notice in written and broadcast media.

(e) Drafting individual group notices to conform to applicable legal requirements and making the text and instructions provided in such notices comprehensible and as simple as possible.

8.      BrownGreer has administered, served as experts, and/or otherwise consulted with settled parties on many other notice programs approved as sufficient by the overseeing court, including programs that required direct notice by mail or email to class members. The Firm Overview (Exhibit 2) shows our varied administration experience.

## III. THE GOALS OF A SUCCESSFUL NOTICE PLAN

9.      "[E]ach class member who can be identified through reasonable effort must be notified that he may request exclusion from the action and thereby preserve his opportunity to press his claim separately or that he may remain in the class and perhaps participate in the management of the action."  *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176-77 (1974). The notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to object."  *Mullane v. Central Hanover bank & Trust Co.*, 339 U.S. 306, 314 (1950).  Notice must "adequately describe" the substantive claims and "contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt out of the action." *Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1227 (11th Cir. 1998) (quoting *In re Nissan*

*Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1103-05 (5th Cir.1977)).  Further, notice must "clearly and concisely state in plain, easily understood language . . . the class claims, issues, or defenses.'" *Drazen v. Pinto*, 101 F.4th 1223, 1262 (11th Cir. 2024) (quoting Fed. R. Civ. P. 23(c)(2)(B)(iii)).[1]

10.     The notice must be transmitted on dates that allow class members sufficient time to receive the notice, realize a need to react to it, and take the actions necessary to, if they so choose, participate in the settlement, be excluded from it, or object to it.  The assessment and significance of these criteria vary depending upon the nature of the claims involved in the settlement, the sophistication of potential class members, the information available on known class members, and the complexity of the actions required to seek benefits under the settlement.

11.     Here, the proposed Notice Plan, which consists of, among other things, direct delivery of a plain language short form notice, formatted as a postcard or email (referred to herein as the "Postcard Notice" and "Email Notice," respectively), publication of a robust long form notice designed to reach Class Members and inform them of the settlement and their rights under it, and a dedicated settlement website containing information about the Settlement exceeds the relevant standards.

## IV. THE SETTLEMENT CLASS

12.     ***The Proposed Settlement Class.***  The Parties' October 4, 2024 Settlement Agreement defines the proposed Settlement Class as the following:

> All Providers in the U.S. (other than Excluded Providers, who are not part of the Settlement Class) who currently provide or provided healthcare services, equipment or supplies to any patient who was insured by, or was a Member

---

[1] "Reasonable settlement notice may require individual notice in the manner required by Rule 23(c)(2)(B) for certification notice to a Rule 23(b)(3) class." Fed. R. Civ. P. 23 advisory committee's note.

of or a beneficiary of, any plan administered by any Settling Individual Blue Plan during the Settlement Class Period.

(Settlement Agreement § 1(iiii).)

"Provider" means any person or entity that provides healthcare services in the U.S., including but not limited to a physician, group practice, or facility. (*Id.* § 1(rrr).)

"Excluded Providers" are:

(i) Providers owned or employed by any of the Settling Defendants; (ii) Providers owned or employed exclusively by Government Entities or Providers that exclusively provided services, equipment or supplies to members of or participants in Medicare, Medicaid or the Federal Employee Health Benefits Programs; (iii) Providers that have otherwise fully released their Released Claims against the Releasees prior to the Execution Date, including but not limited to Providers that were members of any of the settlement classes in *Love v. Blue Cross and Blue Shield Association*, No. 1:03-cv-21296-FAM (S.D. Fla.); or (iv) Providers that exclusively provide or provided (a) prescription drugs; (b) durable medical equipment; (c) medical devices; (d) supplies or services provided in an independent clinical laboratory; or (e) services, equipment or supplies covered by standalone dental or vision insurance. Any Provider that falls within the exclusion(s) set forth in clauses (i), (ii) or (iv) of this Paragraph 1(gg) for only a portion of the Settlement Class Period is a Settlement Class Member that may recover in the Settlement as set forth in the Plan of Distribution.

(*Id.* § 1(gg).)

13.    BrownGreer will coordinate with the Parties to identify and obtain relevant data about potential Class Members, including data available from professional associations and data vendors.  We will obtain potential Class Member mailing and email addresses from Definitive Healthcare,[2] a specialized data vendor and provider of commercial healthcare data and analytics.  This data will include contact and practice information for active healthcare facilities, physicians and other healthcare providers.  Because we understand the data obtained from the Settling

---

[2] Definitive Healthcare offers "robust affiliation and attribute data on more than 2.8 million healthcare professionals and 301,000 organizations" and "delivers proprietary affiliation data on provider relationships, including contextual elements like contact information . . ." Definitive Healthcare Provider Intelligence, https://www.definitivehc.com/industry/healthcare-providers#4257225834-1347328177 (last visited Oct. 2, 2024).

Defendants and Definitive Healthcare may not include all potential, identifiable Class Members from the entire Class Period, particularly those providers who offer ancillary services[3] or have since retired, we will extend our research to organizations or commercial data management services that are likely to have information about those medical and ancillary providers who practiced during the Class Period, including the National Provider Identifier ("NPI") Registry. Additionally, we will coordinate with Signal Interactive Media ("Signal") to procure contact information for certain auxiliary providers[4] who are aged 65 and older from Data Axle, a reputable third-party list provider.

14.     BrownGreer will consult with the Parties to develop the "Initial Class Member List," which shall include any updated information for potential Class Members found by a search of the National Change of Address ("NCOA") database,[5] which is maintained by the United States Postal Service ("USPS").  After compiling the Initial Class Member List and throughout the Notice period, we will further develop the Initial Class Member List to include any forwarding addresses received from the USPS and updates received from additional address data research.  These inclusions will form the "Updated Class Member List."

## V. DIRECT NOTICE EFFORTS

15.     The first goal of this Notice Plan is to provide direct notice to all Class Members who can be identified through reasonable effort.  If the Notice Plan is approved by the Court,

---

[3] "Ancillary services are medical services or supplies that are not provided by acute care hospitals, doctors, or health care professionals." *What Are Ancillary Services?*, https://www.horizonblue.com/shbp/tools-services/find-doctor/what-are-ancillary-services (last visited Oct. 4, 2024).
[4] Data Axle offers access to comprehensive contact information for approximately 125,000 auxiliary providers, aged 65 and older, except for providers in these fields: recreational therapists, clinical neurophysiologists, exercise physiologists, lactation consultants, and phlebotomists.
[5] The NCOA database contains records of all permanent change of address submissions received by the USPS from individuals and businesses. The class data is submitted against the database, and a Class Member's address is automatically updated with the new address from USPS data based on a comparison with the Class Member's name and last known address.

within 21 days of entry of the Court's preliminary approval of the Settlement, BrownGreer will begin to email to Class Members with valid email addresses notices substantially in the form of the Email Notice developed with the Parties and attached as Exhibit 3 to this Declaration. We follow best practices to both validate emails and increase deliverability. Specifically, before distributing the Email Notice, we will validate all email addresses to promote deliverability. Those Class Members whose emails are deemed invalid will receive notice by mail instead.

16.     Further, we will design the Email Notice and its delivery process to avoid many common "red flags" that might otherwise cause an email recipient's spam filter to block or identify the Email Notice as spam. For example, where a notice campaign involves a high volume of emails, we send the email notices in smaller batches over the course of several days, and do not include attachments to the email notice, because high volume issuances and attachments are often interpreted by various Internet Service Providers ("ISP") as spam or untrustworthy.

17.     We also account for the real-world reality that some emails will inevitably fail to be delivered during the initial delivery attempt. Therefore, after the initial noticing campaign is complete and after an appropriate resting period (which allows any temporary block at the ISP level to expire), we will cause a second round of email noticing to continue to any email addresses that were previously identified as soft bounces and not delivered. In our experience, this minimizes emails that may have erroneously failed to deliver due to sensitive servers and optimizes delivery. All emails that are undeliverable and identified as hard bounces, or fail to deliver after reattempt efforts, will be converted to letter notices that we will mail using the associated physical addresses.

18.     Where an Email Notice proves undeliverable after two attempts, the email address is identified as inactive or invalid, or email address information is unavailable, we will mail to the Class Member a standard-size (4.25"x6") postcard substantially in the form of the Postcard Notice developed with the Parties and attached as Exhibit 4 to this Declaration.  The Email and Postcard Notices will provide the settlement website address for Class Members to visit to read and download the Long Form Notice prepared by the Parties and attached as Exhibit 5 to this Declaration.

19.     We will employ best practices to increase the deliverability rate of the mailed notices by causing all mailing address information to be updated using the NCOA, which provides updated address information for individuals or entities who have moved during the previous four years and filed a change of address with the USPS.  In addition, the addresses will be certified via the Coding Accuracy Support System to ensure the quality of the zip code and verified through Delivery Point Validation to verify the accuracy of the addresses.

20.     If any postcard sent is returned to us by the USPS as undeliverable, we will re-mail the postcard immediately to the forwarding address, if any, provided by the USPS on the face of the returned mail.  If the returned mail does not reflect a forwarding address, we will attempt to identify an alternative mailing address through PacificEast, Dun & Bradstreet, or another data curation company that specializes in data enhancement and address verification.  Where we discover secondary mailing addresses, we will re-mail Postcard Notices to those new addresses.  We will update the Class Member List with all information gathered in these steps.

21.     The Federal Judicial Center has advised that it is reasonable to reach between 70–95% of the Settlement Class, with a median reach rate of 87%. (Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide, at 3 (2010)).  Through direct notice and

because of the considerable data resources identified by the Parties, which we will leverage for as much relevant Class Member data as possible, combined with the data updates we will produce when compiling the Initial Class Member List, we expect to reach by direct notice alone this threshold percentage of known, identifiable Class Members.

22.     After the initial notice distribution, but before the deadline to file claims, BrownGreer will send reminder Emails or Postcard Notices to those Class Members who have not yet engaged meaningfully with the settlement program, such as by submitting a claim or opting out of the settlement.

## VI. <u>SUPPLEMENTAL PUBLICATION NOTICE</u>

23.     Although a reach percentage of over 70% for known Class Members is probable from the direct notice component of the Notice Plan, there are a few unpredictable factors that could reduce the reach of Class Members, such as the strength of addresses we receive for this population of Class Members from the various data sources.  In addition, I understand from Class Counsel that some providers who worked during the Settlement Class Period may not appear in the information and records we will receive from the various data sources because they have since retired, or are ancillary service providers.

24.     We have coordinated with Signal to develop a carefully planned public notice campaign that will supplement direct notice efforts to target those Class Members we cannot reach by email or mail because their identities are unknown, their current mailing or email addresses are unavailable, or mailed notices are returned to us by USPS as undeliverable and we are unable to find an updated address.  This publication notice will also reach Class Members already notified directly.  By reaching these persons again, the publication notice will serve the goals of strengthening Class Member awareness of the Settlement and engaging those persons to

become more likely to participate in the settlement program.  See the *Declaration of Shannon R. Wheatman, PH.D on Adequacy of Notices and Notice Plan* for more details about the publication notice.

## VII. <u>SETTLEMENT WEBSITE</u>

25.    We will establish and maintain a dedicated public website for this settlement to provide relevant information about the Settlement, allow visitors to view and download critical settlement information, including the long form notice, and permit potential Class Members to submit claims and any additional required documentation through a secure electronic portal. The online claim submission screens and process will be based substantially on the Claim Forms and Instructions developed by the Parties and attached as Exhibit 6 to this Declaration.  The settlement website will also allow visitors to view and download a printable copy of the Claim Forms and Instructions.

26.    The settlement website will be ADA-compliant and optimized for mobile visitors so that information loads quickly on mobile devices. Additionally, the settlement website will be designed to maximize search engine optimization through Google and other search engines. Keywords and natural language search terms will be included in the settlement website's metadata to maximize search engine rankings.

## VIII. <u>DATA SECURITY</u>

27.    BrownGreer's programs and systems are evaluated annually and every year since 2016, it has been awarded SOC 2, Type II certification. SOC 2, Type II certification is an independent auditor's report that follows a three-month examination of the design and actual operating effectiveness of our system's security, availability, and confidentiality controls, considering system aspects from infrastructure, to software, data protection, system monitoring,

and recovery. BrownGreer runs regular vulnerability scans on all hosts within its network, both internally and public facing. For any area where a potential risk may develop, immediate steps are taken to address them and continually enhance data security.

## IX. CLASS MEMBER SUPPORT

28.     To support Class Members throughout the notice and claims submission periods, we will establish: (a) a toll-free telephone number to receive calls related to the settlement that allows callers to access an interactive menu of recorded Frequently Asked Questions ("FAQs") about the settlement and responses in English; (b) a monitored email inbox with an auto-response providing FAQs and responses, with follow-up by a live program specialist if warranted; and (c) a settlement program post office box in Richmond, Virginia, near our headquarters, to receive all physical mail related to the program.

## X. OPT OUT AND OBJECTION PROCESSING

29.     Pursuant to paragraph 48 of the Settlement Agreement and paragraph 14 of the long form notice, Class Members who wish to exclude themselves from the settlement must submit their written requests to the Settlement Claims Administrator.  A valid Exclusion Request must include the Class Member's: (a) name; (b) address and telephone number; (c) if a Health Care Facility, the Health Care Facility type, and, if a Medical Professional, the Medical Professional type; (d) if a Medical Group, Medical Organization or Medical Professional, the NPI, Tax Identification Number ("TIN") and the last four digits of their Social Security Number, as applicable, and, if a Health Care System or Health Care Facility, the NPI and TIN, as applicable; (e) a statement that they wish to be excluded from the Class; and (f) personal, physical signature. Exclusion Requests must be postmarked or received by the Opt-Out Deadline.

30.     Pursuant to paragraph 16 of the long form notice, Class Members who wish to object to the Settlement must send a letter to the Settlement Administrator that includes: (a) the name of the action; (b) a description of the objections; (c) the Class Member's full name, address, email address, and telephone number; (d) a description of to whom the objection applies (the Class Member or a subset of the Settlement Class); (e) any agreements relating to the objection between the Class Member and their counsel and/or any other person or entity; and (f) the Class Member's signature, or the signature of the Class Member's attorney; (g) a statement indicating whether the Class Member intends to appear at the Final Fairness Hearing; and (h) a declaration under penalty of perjury that the information provided is true and correct.  Objection letters must be postmarked or received by the Objection Deadline.

31.     BrownGreer will receive and process correspondence from Class Members who wish to object or be excluded from the Class and will track and report this information to the Parties.

## XI. CONCLUSION

32.     The proposed Notice Plan provides direct, individual notice to Class Members to the extent reasonably possible.  The Notice Plan satisfies constitutional due process and Federal law by providing the best notice practicable under the circumstances, including giving individual notice to all Class Members who can be identified with reasonable effort and supplementing those efforts with paid media elements.  With an estimated direct notice reach exceeding 70% of known Class Members and a digital media component targeting those Class Members who consume media electronically and actively search for information relevant to this matter, the Notice Plan is likely to provide the same or better reach than courts have approved in other similar class matters.

I, Roma Petkauskas, hereby declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.  Executed on this 23rd day of October 2024.

_Roma Petkauskas_
_____
Roma Petkauskas

# Exhibit 1:

Personal Biography of Roma Petkauskas



# Roma Petkauskas
### Partner

📱 (804) 521-7218
✉️ rpetkauskas@browngreer.com

Roma assists counsel, courts and companies with the development and implementation of complex claims settlement programs. Serving in the roles of a claims administrator and a Settlement Master, she provides subject-matter guidance on effective and efficient program implementation, internal controls, and fraud prevention and detection.

Roma currently manages the implementation of the national opioid settlements. In that role, she coordinates with settling states and subdivisions to make payments under the various national opioid settlements. Roma also implements settlements to resolve opioids litigation brought by tribes and tribal health organizations.

Additionally, she oversees the implementation of all aspects of the NFL Concussion Settlement Program. The terms of the Program provide a wide range of benefits to retired NFL players, and Roma works with the Special Masters, Parties, and law firms representing the Players to ensure compliance with all requirements.

Finally, Roma assists the Court and the Parties in managing data through the MDL Centrality platform in the largest MDL in U.S. History, In Re: 3M Combat Arms Earplug Products Liability Litigation, MDL No. 2885.

In 2012, Roma relocated to New Orleans, LA, to oversee the setup, hiring, training, and staffing of 18 offices throughout the Gulf region and a review center in New Orleans to review claims and assist claimants affected by the oil spill in the Court Supervised Deepwater Horizon Settlement. The Program, opened in June 2012, has issued awards totaling more than $12 billion with regard to more than 178,000 claims. The overseeing Court noted that this was one of the largest class action settlements ever, and our achievement reflects the unprecedented, tremendous eight-year effort, and that as of January 2021, the Claims Process is complete.

Roma has significant experience with pharmaceutical and medical device mass tort settlements. In this regard, she provided oversight of claims processing in connection with a major, nationwide class action settlement to which Wyeth is a party. Early in her career at BrownGreer, Roma played a key role in developing the complex algorithm that is used in determining eligibility for Matrix Benefits under the Settlement Agreement. She also assisted Pfizer in developing criteria for the court-approved 10th amendment, as well as with drafting procedures for handling Medicare claims. Her responsibility in the Pfizer settlement included providing oversight for the implementation of the terms of the Settlement Agreement. Since then, Roma served as a Claims Administrator, Settlement Master, and assisted with mediations in various global resolution and inventory settlement Programs.

> "I am a very strong believer in opportunities to others. Within BrownGreer, that's the culture I try to promote - helping people advance, realize who they are, and find happiness in what they're doing."

Her experience includes providing subject-matter guidance in developing fraud detection and prevention procedures. Recognizing that settlement programs are vulnerable to various attempts of fraud, Roma developed a state-of-the-art fraud detection and prevention program, using extensive fraud vulnerabilities assessment checklists and having advanced data analytics tools to observe and summarize trends to allow meaningful analysis. When needed, she works successfully with multiple law enforcement agencies on case referrals and assists with investigations and trials. In the administration of the Deepwater Horizon Settlement and its predecessor program, the Gulf Coast Claims Facility, Roma accepted the "Coin of Excellence" from the United States Attorney for the

Middle District of Louisiana for work to implement processes for fraud detection analytics, review, and referral of fraudulent claims to law enforcement. Roma also directed and implemented fraud detection and prevention programs in the $4.85 billion Vioxx settlement and the $2.5 billion nationwide ASR Hip settlement.

Roma regularly assists clients implementing smaller settlements arising in a variety of contexts. Bringing her skills of efficient administration to bear, she handles all projects to the utmost satisfaction of her clients. She speaks frequently on topics involving claims administration best practices and litigation management.

Roma began her career at BrownGreer in 2001. Having received a Bachelor of Jurisprudence in International, European Union and Comparative Law from the International University of Concordia Audentes, she left the firm to earn her Juris Doctor degree from the University of Richmond School of Law and graduated in the top 5% of her class. Roma's education also includes a semester spent at American University, Washington College of Law, as a visiting scholar in the International Legal Studies Master of Law program. Her focus in this program was on direct investment international regulatory regimes.

Personally, Roma strongly believes in the value of helping one another, and as such, she started and runs the Petkauskas Foundation. Since its inception in 2014, the Foundation organizes and operates various developmental, extracurricular, educational, and entertainment activities for underprivileged and disadvantaged minors in Virginia, Louisiana, and in Lithuania.

**EDUCATION**

- University of Richmond Law, J.D., *magna cum laude*, 2005
- International University Concordia Audentes, B.J., *summa cum laude*, International, European Union and Comparative Law, 2002

**BAR ADMISSIONS**

Virginia, 2005

**CERTIFICATIONS**

Certified Fraud Examiner

**MEMBERSHIPS**

Fellow, Academy of Court-Appointed Neutrals

**SELECTED EXPERIENCE**

*3M Products Liability Litigation,* MDL No. 2885 (N.D. Fla.)

*In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Products Liability Litigation,* MDL Docket No. 1203 (E.D. Pa.)

*In re Vioxx Products Liability Litigation,* MDL Docket No. 1657 (E.D. La.)

*In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010,* MDL Docket No. 2179 (E.D. La.)

*In re Abilify (Aripiprazole) Products Liability Litigation,* MDL No. 2734 Settlement Program

*In re DePuy Orthopedics, Inc., ASR Hip Implant Products,* MDL Docket No. 2197 (N.D. Ohio)

*Kilmer v. Medtronic Inc.,* Case No. 1:20-cv-01277-AWI-HBK (E.D. Cal.)

*In re National Football League Players' Concussion Injury Litigation,* MDL No. 2323 (E.D. Pa.)

*In re Taxotere (Docetaxel) Products Liability Litigation,* MDL No. 2740

*In re Zantac (Ranitidine) Products Liability Litigation,* MDL No. 2924

*In re: Allergan Biocell Textured Breast Implant Product Liability Litigation,* MDL No. 2921

**RECENT SPEAKING ENGAGEMENTS**

Mass Torts Made Perfect, 2024

Huntington Bank Complex Litigation Ethics Conference, 2024

New Jersey Association for Justice Boardwalk Seminar, 2023

Huntington Bank Complex Litigation Ethics Conference, 2023

Western Alliance Bank and University of San Diego School of Law Class Action Law Forum, 2022

# Exhibit 2:

BrownGreer PLC Firm Overview



# Firm Overview

October 10, 2024

## TABLE OF CONTENTS

The BrownGreer Difference .................................................................. 3

Notice Administration........................................................................ 4

Claim Review & Adjudication ............................................................. 5

Fund Allocation ............................................................................... 6

Fund Administration and Distribution .................................................. 7

Case Studies ................................................................................... 8

BrownGreer Experience .................................................................... 13

# The BrownGreer Difference

**BrownGreer is an industry leader** in providing settlement administration and litigation management services to law firms, corporations, and government agencies. We are attorneys, analysts, software programmers, communication center specialists, and claims reviewers devoted to providing innovative solutions that surpass our clients' expectations and deliver measurable results.

**Founders Orran Brown, Sr. and Lynn Greer** have been at the center of some of the most significant claims resolution programs for more than 25 years. With a foundation in designing and managing claims resolution programs in ground-breaking class action settlements, Orran and Lynn launched BrownGreer in 2002 with the mission to fulfill the responsibilities of any settlement program to the satisfaction of all involved parties, including claimants, counsel, courts, and other governmental entities.

**We have served** as claims administrators, trustees, Special Masters, advisors, data managers, and expert witnesses for matters spanning a broad spectrum of industries. With over two decades of experience in providing notice administration, multiple claims resolution, and data management solutions for some of the most significant settlement programs in history, we have the resources and subject-matter expertise you can rely on to reach an efficient and effective solution.

"In short, BrownGreer's cutting edge technology, and its in-depth knowledge and experience with the complexities of this litigation, are unparalleled and have been invaluable in the efficient, equitable, and effective management of the MDL."

**–The Hon. M. Casey Rodgers,** U.S. District Court Judge, Northern District of Florida, 2022 Case Management Order, *In Re: 3M Combat Arms Earplug Products Liability Litigation*

# Notice Administration
## Knowledge, Creativity and Resourcefulness.

**When designing notice plans,** BrownGreer focuses on reaching potential class members using the most effective methodologies to target the impacted population.  Each plan is created to inform them in clear terms of the existence of the proposed settlement, how it affects them, their rights and obligations under the settlement agreement, the actions they may take, any deadlines for acting, and the consequences of acting or failing to act by the deadline.

We have issued millions of direct class notices by email, short-form postcards, and/or long-form letters or notice packets.  Our notice services follow through to the resolution of a settlement program. We have also issued millions of review determination notices and courtesy or instructional notices to class members and their counsel.

BrownGreer also designs and executes public notice campaigns through traditional print and digital channels, including social media, that meet and exceed court mandated requirements for approval.  Our goal in every public notice campaign is to connect with the right people in the right places, using sophisticated analytics such as geo-location and profile matching.

## Notice Services

| DIRECT NOTICE | ENGAGEMENT | PAID MEDIA | REMINDERS |
|---|---|---|---|
| Data Collection/ Analysis/Refinement | Press Release | Digital Displays | Direct Notice |
| Postal Mail | User Groups | Print Publications | Engagement |
| Email | Industry Groups | TV/Radio | Paid Media |

### AT A GLANCE

**55+ million**
Total Notices Issued

**41+ million**
Class Notices

**14+ million**
Program Notices

# Claim Review & Adjudication
## We bring more than accuracy to the table.

Our claims reviewers are highly trained and bring experience from the largest, most complex settlement programs in history.

**We administer and process** claims for settlements arising from class actions, multidistrict litigation, government enforcement proceedings, and other aggregation vehicles. Our court-supervised and voluntary settlement program experience covers a broad range of causes of action involving a wide variety of industries.

From our first program onward, we have blended technology with dedicated staff to provide the most effective, efficient, and accurate claims resolution designs and systems, allowing us to handle any program no matter how large or complex.

**We are proud to have served** in some of our nation's most significant resolution programs, ranging from the $19 billion Fire Victim Trust to the programs established in the wake of the Deepwater Horizon oil spill. We also have been chosen to administer some of our country's smaller, but most sensitive settlements, including the One October Settlement Fund, a private settlement to resolve claims arising from the October 1, 2017 mass shooting at the Route 91 Harvest Festival in Las Vegas, Nevada, and the Catholic Diocese of Richmond Independent Reconciliation Program, a private settlement to resolve sexual abuse claims in the Richmond Catholic Diocese.

**As a firm of attorneys, analysts, software programmers, and claims reviewers**, we combine highly skilled lawyering with a practical understanding of the need for organized and centralized information and data, effective communication, and the administrative processes necessary to resolve multiple claims efficiently.

Clients often refer to our claims administration services as the "gold standard" because of our relentless focus on legally sound and administratively efficient claims processes, our philosophy of administrative cost containment, and the sense of urgency we bring to all that we do.

**AT A GLANCE**

**4.5+ million**
Claims reviewed across all programs

**100+**
Total programs involving claim review

# Fund Allocation
## Methodical, Fair and Transparent.

**Determining how to equitably distribute funds** to claimants in a way that is transparent and understandable is key to the successful resolution of a settlement program. From simple pro rata distribution to economic life value modeling, we have decades of experience designing allocation methods that are as fair as possible to every claimant and address individual requirements of a program.



Individual settlements

Designing matrices or grids to be used in "inventory" settlements for both plaintiff's and defense firms

Firm-by-firm settlements

Developing Relative Equity Models for complicated cases involving injury categories and other enhancement factors such as economic loss and medical expenses

Bankruptcy reorganization plans

Court-Assisted global settlement programs

Class action settlements

# Fund Administration and Distribution
## Validated, Secure and Verified.

**We efficiently and effectively provide** the full breadth of all payment related tasks and responsibilities needed to ensure the successful fulfillment of program payment needs. We can design procedures to calculate award amounts, print, mail and track the status of checks, and in the case of electronic payments, we can coordinate the seamless exchange of program funds through PayPal, Wire, Zelle, Venmo, or ACH transactions. Additionally, we can provide any ensuing post-payment oversight and follow-up activities, as needed, such as generation of end-of-year informational tax forms, stale check re-issuance, as well as ongoing monitoring and reconciliation of account balances and close-out reports.





# Combat Arms Earplugs Settlement and 3M Combat Arms Earplug Products Liability Litigation

> BrownGreer serves as the Settlement Administrator in the Combat Arms Earplugs Settlement established to resolve all claims in MDL and Minnesota related to Combat Arms Version 2 earplugs manufactured from 1999 to 2015. The $6 billion fund will go toward nearly 270,000 claims over the course of seven years.

**In our role as Settlement Administrator**, BrownGreer acts in accordance with the provisions of the Master Settlement Agreement and orders of the Court. These duties include processing claims, issuing payments, and reporting as required by the Court.

BrownGreer developed and currently operates a secure portal for plaintiffs' firms to exchange information with the Settlement Program, see data and notices for participating claimants, and run reports on claimant statuses, payments, and liens.

We regularly issue communications and notice to thousands of claimants and maintain a dedicated communications center to handle hundreds of inquiries on a daily basis.

Prior to the settlement, MDL Centrality, a proprietary litigation management system developed by BrownGreer, was selected as the technological platform to support the parties engaged in 3M's Combat Arms Earplug Products Liability Litigation following an extensive vetting process in 2019. The litigation grew exponentially since its inception in 2018, amassing more than 240,000 claims before a settlement was reached in 2023. It is now recognized as the largest MDL in U.S. history.

BROWNGREER | Professional Service. Redefined.



**CASE STUDY**

# National Opioid Settlement Administration

> BrownGreer serves as the Directing Administrator for the $26 billion National Opioid Settlement finalized with the "Big Three" drug distributors – AmerisourceBergen, Cardinal Health, and McKesson – and opioid manufacturer Johnson & Johnson.

**The settlement requires** 85 percent of funds be allocated to programs that will help address the ongoing opioid crisis through treatment, education, and prevention efforts. A majority of states have passed agreements that dictate how funds will be distributed between state and local subdivision governments, ensuring funds will effectively reach impacted communities.

The settlement is the first of its kind to administer resources directly to state and local governments specifically for relief programs to help rebuild the devastation caused by the opioid epidemic. As Directing Administrator, we will allocate and distribute funds based on population adjusted for the proportionate share of the opioid epidemic impact. The share of the impact is calculated using detailed and objective national data, including the amount of opioids shipped to the state, the number of opioid-related deaths that occurred in the state and the number of people who suffer opioid use disorder in the state.

BrownGreer contacted all settling states, performed and verified calculations for each state pursuant to the applicable calculation methodology, issued allocation notices to each state as needed, collected payment instructions from 4,813 beneficiaries, which include state and local governments, developed secure portals and serve as a system of record, and have paid out more than $3.4 billion to 4,656 beneficiaries.

## KEY STATISTICS

**4,380**
Government beneficiaries

**$26 billion**
Fund

© 2024 BROWNGREER PLC | 250 Rocketts Way | Richmond, VA 23231 | www.BrownGreer.com

CASE STUDY

# NFL Concussion Settlement

> The NFL Concussion Settlement program went into effect in 2017 to resolve the NFL Players' Concussion Injury Litigation, MDL No. 2323. Since then, over 20,000 retired players registered as settlement class members, over 4,000 have filed claims, and we have issued 1,796 payable award determinations for over $1.3 billion.

**As the Claims Administrator** in the NFL Concussion Settlement, BrownGreer oversees the intake, processing, and payment of claims for six different qualifying medical diagnoses. We established a national network of Qualified MAF Physicians and coordinate with the Court and its Special Masters in implementing all aspects of the program.

We became the Baseline Assessment Program (BAP) Administrator in 2023, requiring us to manage a network of 176 neurologists and neuropsychologists. In our roles as Claims and BAP Administrator, we communicate regularly with settlement class members and their lawyers, as well as the Qualified MAF Physicians and Qualified BAP Providers, through email, by phone, and through quarterly newsletters sent out by email and mail to all settlement class members, lawyers, and MAF and BAP providers.

The Settlement program was initially plagued with suspicions of potentially fraudulent claims. We implemented fraud prevention and detection processes that addressed these concerns, while assuring that payments are made to eligible claims. We coordinate with local law enforcement officials and the Department of Justice regarding our findings of potential fraud and provide trial assistance as needed.

# Fire Victim Trust

> Established in 2020 from the bankruptcy of PG&E, the Trust offers an efficient and equitable claim review process to compensate victims for damages caused by the 2015 Butte, 2017 North Bay, and 2018 Camp Fires.

**We serve as the Claims Processor** in the Fire Victim Trust, a $13.5 billion fund established for the benefit of claimants who suffered property loss, emotional distress and other damages as a result of the Butte, North Bay, and Camp Fires in Northern California. Since 2020, BrownGreer has dedicated hundreds of resources to this assignment, including claims evaluators, software developers, data analysts, communication experts, and senior lawyers.

BrownGreer's role in the Fire Victim Trust has covered the full range of administrative tasks. We constructed the online portal through which claims are submitted, evaluate claims and supporting documents submitted by claimants, calculate claim awards for fire victims, handle communications involving award amounts and other important factors, and distribute payments to eligible claimants. In addition, BrownGreer works closely with the Trustee, the Claims Administrator and legal counsel to advise the leadership on a wide range of issues relating to the adjudication of claims.

More than 70,000 claimants filed claims in the PG&E bankruptcy and are registered to seek compensation from the Fire Victim Trust. To date, the Fire Victim Trust has evaluated more than 40,000 submissions from over 70,000 individual claimants. In all, the Trust has received more than 250,000 unique claims of damage across nine different claim categories, including: Real and Personal Property, Emotional Distress – Zone of Danger, Emotional Distress – Nuisance, Personal Income Loss, Business Income Loss, Physical Injury, Wrongful Death, Out-of-Pocket Expenses, and Other Damages. The Fire Victim Trust has paid a total of $11.27 billion to eligible claimants and will make additional distributions over the course of 2024.

As part of its engagement for the Fire Victim Trust, BrownGreer worked with FEMA to satisfy obligations under the Stafford Act. FEMA paid fire victims affected by wildfires before the bankruptcy was established and the Stafford Act requires claimants to repay those emergency funds under certain circumstances. In the FVT, BrownGreer participated in a data sharing agreement with FEMA through which the parties exchanged information enabling them to resolve the downstream implications of the benefits paid to those individuals.

---

**KEY STATISTICS**

**$13.5 billion**
Bankruptcy Trust

**71,000**
Claimants with submitted claims questionnaires

**254,800**
Claims asserted

---



CASE STUDY

# Gulf Coast Claims Facility and Deepwater Horizon Settlement

> On April 20, 2010, an explosion on the Deepwater Horizon Macondo oil well drilling platform killed 11 workers and started the largest marine oil spill in U.S. history, releasing millions of barrels of oil into the Gulf of Mexico. BrownGreer filled the administrative, review, and technology needs of the Gulf Coast Claims Facility ("GCCF"), a voluntary claims program made before any court-supervised settlement to resolve economic loss and physical injury claims arising from the oil spill.

**At the end of the GCCF**, the court appointed BrownGreer to intake, review, and process to payment claims in the Deepwater Horizon ("DWH") Settlement Program, a court-supervised class action settlement created to replace the GCCF process.

In the DWH Program, we designed and implemented processes for the 13 different claim types outlined in the court-approved settlement agreement, issued determinations, and handled program communication with lawyers and unrepresented claimants. To facilitate better communication and accessibility, we opened and operated 21 satellite offices across the Gulf Coast.

The DWH Program paid more than $12 billion on nearly 391,000 claims.

We also managed the DWH Seafood Compensation Program, a separate $2.3 billion fund established to compensate those involved in the Gulf fishing industry, such as vessel owners, vessel lessees, boat captains, and crew. The DWH Seafood Compensation Program covered effectively everything from individual subsistence fishermen to massive dockside commercial fish processing operations. We evaluated all manner of claims from persons and businesses related to nearly all marketable species of fish and shellfish in the Gulf. We coordinated with a number of state and federal stakeholders, including the Louisiana Department of Wildlife and Fisheries, from whom we obtained trip ticket databases to support claim evaluations.

We allocated earnings using the vessel registration numbers and boat captain licenses to determine historical earnings and a benchmark period for compensation for each claimed species. Crew members could prove lost earnings by providing tax documentation, paystubs, or correspondence from the employer. We then compared multiple compensation methodologies and determined the most appropriate award, then provided a written accounting of earnings for each year, the years chosen as benchmarks, and the steps for calculating a final award to each claimant.

To ensure the integrity of all claims in the DWH Program, we liaised with the National Center for Disaster Fraud and the Department of Justice to coordinate findings of fraud.

© 2024 BrownGreer PLC | 250 Rocketts Way | Richmond, VA 23231 | www.BrownGreer.com          Return to Contents | 12

# Economic Loss Program Experience

| | ECONOMIC LOSS PROGRAM DESCRIPTION | ROLE | PROGRAM SIZE | SETTLEMENT FUND |
|---|---|---|---|---|
| 1. | **Hillsborough County Surtax Settlement.** This settlement resolves a case against Hillsborough County, Florida and the Florida Legislature related to $569 million in collected surtax. | Notice and Claims Administrator | TBD | $569 million |
| 2. | **Porter Ranch Private Party Claims Settlement Program.** Private settlement to resolve claims arising from the Octovber 23, 2015 gas leak from a storage well at the Aliso Canyon natural gas storage facility in Porter Ranch, California. | Settlement Administration | 36,000 Claimants | $1.6 Billion |
| 3. | **In re: PG&E Corporation and Pacific Gas and Electric Company, Debtor, Bankruptcy Case No. 19-30088, (Bankr. N.D. Ca.).** Settlement program created in the Chapter 11 bankruptcy proceeding of PG&E Corporation to resolve claims from individuals and businesses who suffered personal injury, property damage and economic losses as a result of fires allegedly caused by PG&E. | Claims Processor | 70,000 Claiamnts | $13.5 Billion |
| 4. | **In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010, MDL Docket No. 2179 (E.D. La).** Class action settlement to resolve economic loss and property damage claims arising from the April 20, 2010 oil spill in the Gulf of Mexico. | Claims Administrator Services | 260.000 Claimants | Uncapped Fund; $11.6 Billion Disbursed |
| 5. | **Gulf Coast Claims Facility.** Voluntary claims program to resolve economic loss and physical injury claims arising from the April 20, 2010 oil spill in the Gulf of Mexico. | Claims Administrator Services; Transitio Coordinator | 600,000 Claimants | $20 Billion cap; $6.5 Billion Disbursed |
| 6. | **In re Chinese-Manufactured Drywall Products Liability Litigation, MDL Docket No. 2047 (E.D. La).** Class action settlement for the remediation of homes containing defective drywall manufactured in China. | Claims Administrator; Lynn Greer Special Master | 25,000 Claimants | Blend of uncapped and Capped Finds; $610 Million Disbursed |
| 7. | **In re Syngenta AG MIR 162 Corn Litigation, MDL Docket No. 2591, (D. Kansas).** Class action settlement to resolve claims concerning genetically modified corn and crop values. | Notice and Claims Administrator | >600,000 Class Members | $1.51 Billion |
| 8. | **In re Black Farmer's Discrimination Litigation, No. 08-mc-0511 PLF (D.D.C.).** Class action settlement to resolve claims of discrimination against African-American farmers by the U.S. Department of Agriculture regarding farm loans and loan servicing for claimants who had missed deadlines in a prior settlement. | Claims Review and Evaluation | 40,000 Claimants | $1.25 Billion |
| 9. | **Travel Insurance Refund Program in the matter of Jefferson Insurance Company NAIC #11630 and in the matter of BCS Insurance Company NAIC #38245.** Regulatory settlement program between certain travel insurance companies and State regulators to issue refunds to policy holders who purchased travel insurance through an Opt-Out Marketing Plan. | Program Administrator | 504,927 Payees | To Be Determined |
| 10. | **Ortega Melendres, et. al., v. Paul Penzone, et. al., No. CV-07-2513-PHX GMS (D. Az.).** Voluntary program to resolve claims that individuals were stopped or held by the Maricopa County Sheriff's Office in violation of a court order. | Notice and Claims Administrator | 200 Claimants | Uncapped Fund |
| 11. | **Confidential.** Conciliation agreement between a financial institution and the U.S. Department of Housing & Urban Development related to alleged discriminatory acts in mortgage loan application handling. | Notice and Claims Administrator | Class Size Unknown | Fund Uncapped |
| 12. | **United States Securities and Exchange Commission v. American International Group, Inc., No. 06-Civ. 100-LAP (S.D.N.Y.).** Securities enforcement action settlement with the SEC and a multinational insurance corporation over allegations of accounting fraud and related shareholder litigation. | Audited the Claims Administrator | 260,000 Class Members | $843 Million |

| | ECONOMIC LOSS PROGRAM DESCRIPTION | ROLE | PROGRAM SIZE | SETTLEMENT FUND |
|---|---|---|---|---|
| 13. | ***In re Genetically Modified Rice Litigation*, MDL Docket No. 1811 (E.D. Mo.).** Voluntary claims program to resolve claims concerning genetically modified rice and crop values. | Claims Administrator | 12,000 Claimants | $750 Million |
| 14. | ***CBP Global Settlement.*** Settlement program reached by the Department of Homeland Security, U.S. Customs and Border Protection (CBP) and the National Treasury Employees Union (NTEU) to resolve certain grievances filed by NTEU. | Settlement Administration | 25,000 Class Members | $184.1 Million |
| 15. | ***United States v. National Treasury Employees Union*, No. 93-1170 (D.C. App.).** Class action settlement between a federal employees' union and the U.S. Government for back payment of wages. | Trustee of Settlement Trust | 212,000 Class Members | $173 Million |
| 16. | ***Blando v. Nextel West Corp.*, No. 02-0921-FJG (W.D. Mo.).** Class action settlement by a wireless telecommunications provider to resolve claims under Missouri law involving "cost recovery fees" charged to customers. | Advisor to the Court | 5,000,000 Class Members | $165 Million |
| 17. | ***Brown & Szaller, Co., L.P.A. et al., v. Waste Management of Ohio, Inc., Case No. CV-16-859588.*** Proposed class action settlement resolving claims of certain commercial customers of Waste Management of Ohio, Inc. related to alleged improper price increases on waste collection, disposal, and/or recycling services. | Notice and Claims Administrator | 65,000 Class Members | $30.5 Million |
| 18. | ***Bartell, et al. v. LTF Club Operations Company, Inc., Case No. 2:14-cv-00401.*** Proposed class action settlement resolving claims of certain former members of Life Time Fitness in Ohio related to Life Time's alleged failure to honor cancellation requests and issue certain refund payments under Ohio's Prepaid Entertainment Contracts Act (PECA). | Notice and Claims Administrator | 60,000 Class Members | $14 Million |
| 19. | ***Wildfire Assistance Program.*** Voluntary program providing financial assistance to individuals experiencing urgent needs as a result of the 2017 and 2018 California Wildfires. | Claims Administrator | 20,000 Claimants | $100 Million |
| 20. | ***In re Capital One Telephone Consumer Protection Act Litigation*, MDL Docket No. 2416 (N.D. Ill.).** Class action settlement to resolve claims arising from alleged violations of the Telephone Consumer Protection Act. | Notice and Claims Administrator | 17,500,000 Class Members | $75.4 Million |
| 21. | ***In re Vioxx MDL Settlement Agreement Related to Consumer Class Actions*, MDL Docket No. 1657 (E.D. La.).** Class action settlement to resolve consumer protection claims arising from the marketing of prescription painkillers. | Claims Adminstrator | 8,000 Claimants | $23 Million |
| 22. | ***Yarger v. ING Bank, FSB*, No. 11-154-LPS (D. Del.).** Class action settlement to resolve claims related to advertising fixed rate mortgages under Delaware consumer law. | Notice and Claims Administrator | 115,000 Class Members | $20 Million |
| 23. | ***Acosta v. Tyson Foods, Inc.*, No. 8:08-cv-86 (D. Neb.).** Class action settlement by a poultry producer to resolve claims under the Fair Labor Standards Act and Nebraska law for employee compensation for time spent donning/doffing protective equipment. | Notice Administrator | 3,700 Class Members | $19 Million |
| 24. | ***Flores v. Zorbalas*, No. 27-CV-16-14225 (Minn. St. Ct., Hennepin Cnty., Minn.).** Class certification notice program and subsequent class action settlement program resolving claims of tenants of certain apartments in Minneapolis, MN whose landlords allegedly rented out the properties without proper licenses and failed to maintain the properties as required by health and safety laws. | Notice and Claims Administrator | 5,500 Class Members | $18.5 Million |
| 25. | ***United States of America v. Capital One, N.A.*, No. 1:12-cv-828 (E.D. Va.).** Consent decrees between a financial services company and the Department of Justice and Office of Comptroller of the Currency to resolve alleged violations of the Servicemembers Civil Relief Act. | Notice and Claims Administrator | 44,000 Claimants | $15 Million |

| | ECONOMIC LOSS PROGRAM DESCRIPTION | ROLE | PROGRAM SIZE | SETTLEMENT FUND |
|---|---|---|---|---|
| 26. | *Figueroa v. Capital One, N.A., No. 3:18-cv-00692-JM-BGS (S.D. Cal.).* Class action settlement by a financial institution to resolve claims that it breached its contract with accountholders by improperly assessing and collecting fees when accountholders used out of network ATMs to conduct a balance inquiry. | Notice and Claims Administrator | 1.9 Million Class Members | $13 Million |
| 27. | *Ene v. Maxim Healthcare Services, Inc., No. 4:09-cv-02453 (S.D. Tex.).* Class action settlement by a healthcare provider to resolve claims under the Fair Labor Standards Act concerning the classification of healthcare recruiters as exempt from overtime pay. | Notice Administrator | 1,600 Class Members | $12.3 Million |
| 28. | *Gregorio v. Premier Nutrition Corporation, Civil Action No: 17-cv-05987 (S.D.N.Y.).* Class action settlement to resolve claims concerning the misleading advertising of protein shake products. | Notice and Claims Administrator | 9,360,000 Class Members | $9 Million |
| 29. | *Spinelli v. Capital One Bank (USA), No. 8:08-cv-132 (M.D. Fla.).* Class action settlement by a financial services company with credit card holders to resolve claims under the Truth in Lending Act. | Notice and Claims Administrator | 9,000,000 Class Members | $5 Million |
| 30. | *Hankins v. CarMax Inc., No. 03-C-07-005893 CN (Baltimore County Md. Cir. Ct.).* Class action settlement to resolve claims that a retail car company sold used vehicles without disclosing that the vehicles had been used previously as short-term rentals. | Notice and Claims Administrator | 7,300 Class Members | $8 Million |
| 31. | *Cohen v. Warner Chilcott Public Ltd. Co., No. 1:06-cv-00401-CKK (D.D.C).* Class action settlement to resolve antitrust claims against two pharmaceutical companies regarding the sale of an oral contraceptive | Notice Administrator | 2,000,000 Class Members | $6 Million |
| 32. | *Peg Bouaphekeo, et. al., v. Tyson Foods, Inc., No. 5:07-cv-04009-JAJ (N.D. Iowa Western Division).* Class action settlement by a poultry producer to resolve claims under the Fair Labor Standards Act and Iowa law for employee compensation for time spent donning/doffing protective equipment. | Notice Administrator | 2,523 Class Members | $5.78 Million |
| 33. | *Morgan v. Richmond School of Health and Technology, Inc., No. 3:12-cv-00373-JAG (E.D. Va.).* Class action settlement by a for-profit vocational college to resolve claims under the Equal Credit Opportunity Act, Title VI of the Civil Rights Act of 1964 and the Virginia Consumer Protection Act. | Notice and Claims Administrator | 4,200 Class Members | $5 Million |
| 34. | *Gomez v. Tyson Foods, Inc., No. 08-021 (D. Neb.).* Class action settlement by a poultry processing company to resolve claims under the Fair Labor Standards Act and Nebraska law for employee compensation for time spent donning/doffing protective equipment. | Notice Administrator | 5,300 Class Members | $5 Million |
| 35. | *Rogers v. City of Richmond, Virginia, No. 3:11-cv-00620 (E.D. Va.).* Class action settlement under the Fair Labor Standards Act and Virginia law involving current and former city police officers alleging unpaid overtime wages. | Claims Administrator | 600 Claimants | $4.6 Million |
| 36. | *Gales v. Capital One, N.A., No. 8:13-cv-01624 (D. Md).* Class action settlement by a financial services company to resolve claims related to the sale of certain repossessed motor vehicles. | Claims Administrator | 9,000 Class Members | $4.4 Million |
| 37. | *Betts v. National Cash Advance/Advance America, Nos. 502001CA0003200CAI-MB and 502004CA008164XXXXI-MB (Palm Beach County Cir. Ct.).* Class action settlement to resolve claims alleging violates of the Florida Lending Practices Act, the Florida Consumer Finance Act, the Florida Deceptive and Unfair Trade Practices Act, and the Civil Remedies for Criminal Practices Act. | Notice and Claims Administrator | 18,500 Class Members | $4.32 Million |
| 38. | *Llewellyn v. Big Lots Stores, Inc., No. 09-cv-5085 (E.D. La.).* Class action settlement by a retailer to resolve claims under the Fair Labor Standards Act regarding the classification of assistant store managers. | Claims Administrator | 200 Class Members | $4 Million |

| | ECONOMIC LOSS PROGRAM DESCRIPTION | ROLE | PROGRAM SIZE | SETTLEMENT FUND |
|---|---|---|---|---|
| 39. | *Desio v. Emerson Electric Co. d/b/a InSinkErator, No. 2:15-cv-00346 (E.D. Wa.).* Class action settlement to resolve claims that certain filters used in water filtration systems could crack and leak water, causing property damage. | Notice and Claims Administrator | Estimated <455,000 Class Members | $3.8 Million |
| 40. | *Herron v. CarMax Auto Superstores, Inc., No. 2006-CP-02-1230 (Aiken County S.C. Jud. Dist.).* Class action settlement to resolve claims related to document processing fees charged to customers by a car dealer. | Notice and Claims Administrator | 27,000 Class Members | $3.8 Million |
| 41. | *Collins v. Sanderson Farms, Inc., No. 2:06-cv-02946 (E.D. La.).* Class action settlement by a poultry processing company to resolve claims under the Fair Labor Standards Act regarding employee compensation for time spent donning/doffing protective equipment. | Notice and Claims Administrator | 21,000 Class Members | $3.1 Million |
| 42. | *Nader v. Capital One Bank (USA), No. CV-12-01265-DSF (RZx) (C.D. Cal.).* Class action settlement by a financial institution to resolve claims under state privacy and wiretapping laws concerning the alleged recording of outbound customer service calls | Settlement Administration | 1,800,000 Class Members | $3 Million |
| 43. | *In re Children's Ibuprofen Oral Suspension Antitrust Litigation, No. 1:04- mc-0535 (D.D.C.).* Class action settlement to resolve claims of antitrust violations by two manufacturers of over-the-counter children's pain relievers. | Notice Administrator | 10,000 Class Members | $3 Million |
| 44. | *Rubenstein v. The Neiman Marcus Group LLC, No. 2:14-cv-07155-SJOJPR (C.D. Ca.).* Proposed settlement program to resolve allegations that consumers were misled by the "Compared To" price tags on merchandise sold by the Defendant. | Notice and Claims Administrator | To Be Determined | $2.9 Million |
| 45. | *United States of America v. Chevy Chase Bank, F.S.B., No. 1:13-cv-1214 (E.D. Va.).* Consent decree between a financial services company and a federal regulatory agency involving allegations under the Equal Credit Opportunity and Fair Housing Acts. | Notice and Claims Administrator | 3,500 Class Members | $2.85 Million |
| 46. | *Samuel v. EquiCredit Corp., No. 00-cs-6196 (E.D. Pa.).* Class action settlement by a financial services institution to resolve claims under the Real Estate Settlement Procedures Act regarding the application of loan proceeds to pay mortgage broker fees. | Notice and Claims Administrator | 13,000 Class Members | $2.5 Million |
| 47. | *Beecroft v. Altisource Business Solutions PVT LTD., No. 0:15-cv-02184 (D. Minn).* Class action settlement to resolve claims arising from alleged violations of the Telephone Consumer Protection Act. | Notice and Claims Administrator | 56,104 Class Members | $1.8 Million |
| 48. | *Hall v. Capital One Auto Finance, Inc., No. 1:08-cv-01181 (N.D. Ohio).* Class action settlement by a financial services company to resolve claims related to automobile repossession under Ohio consumer statutes. | Notice and Claims Administrator | 3,400 Class Members | $1.5 Million |
| 49. | *McCoy v. North State Aviation, LLC, Case No.1:17-cv-00346-CCE-LPA (M.D.N.C).* Class action settlement to resolve claims that Defendant violated the federal Worker Adjustment and Retraining Notification Act (the WARN Act), which requires certain employers to give 60-day advance notification of plant closings and mass layoffs. | Settlement Administration | 339 Class members | $1.5 Million |
| 50. | *Watts v. Capital One Auto Finance, Inc., No. CCB-07-03477 (D. Md.).* Class action settlement by a financial services company to resolve claims related to automobile repossession under Maryland consumer statutes. | Notice and Claims Administrator | 2,700 Class Members | $990,000 |
| 51. | *Churchill v. Farmland Foods, Inc., No. 4:06-cv-4023 (C.D. Ill.).* Class action settlement by a pork processing company to resolve claims under the Fair Labor Standards Act and Illinois law regarding employee compensation for time spent donning/doffing protective equipment. | Notice and Claims Administrator | 2,300 Class Members | $980,000 |

| | ECONOMIC LOSS PROGRAM DESCRIPTION | ROLE | PROGRAM SIZE | SETTLEMENT FUND |
|---|---|---|---|---|
| 52. | *Polanco v. Moyer Packing Company, No. C.P., 1852 (Philadelphia County Pa.).* Class action settlement by a beef processing company to resolve claims under the Fair Labor Standards Act and Pennsylvania law regarding employee compensation for time spent donning/doffing protective equipment. | Notice and Claims Administrator | 4,500 Class Members | $850,000 |
| 53. | *Cohen v. Foothill/Eastern Transportation Corridor Agency, et. al., No. SACV 15-01698 DDP (C.D. Ca.).* Class action settlement to resolve alleged violations of the Fair and Accurate Credit Transactions Act (FACTA) by a toll-road operator. | Notice and Claims Administrator | 25,762 Class Members | $850,000 |
| 54. | *Bessey v. Packerland Plainwell, Inc., No. 4:06-cv-0095 (W.D. Mich.).* Class action settlement by a pork processing company to resolve claims under the Fair Labor Standards Act and Michigan law regarding employee compensation for time spent donning/doffing protective equipment | Notice and Claims Administrator | 3,000 Class Members | $650,000 |
| 55. | *Santiago v. GMAC Mortgage Group, Inc., No. 784574 (E.D. Pa.).* Class action settlement by a financial services company to resolve claims under the Real Estate Settlement Procedures Act concerning charges for mortgage settlement services. | Notice and Claims Administrator | 84,000 Class Members | $650,000 |
| 56. | *Contreras v. PM Beef Holdings, LLC, No. 07-CV-3087 (D. Minn.).* Class action settlement by a beef processing company to resolve claims under the Fair Labor Standards Act and Minnesota law for employee compensation for time spent donning/doffing protective equipment. | Notice and Claims Administrator | 3,000 Class Members | $500,000 |
| 57. | *Morales v. Greater Omaha Packing Co. Inc., No. 8:08-cv-0161 (D. Neb.).* Class action settlement by a beef processing company to resolve claims under the Fair Labor Standards Act and Nebraska law regarding employee compensation for time spent donning/doffing protective equipment. | Notice and Claims Administrator | 4,000 Class Members | $490,000 |
| 58. | *Graham v. Capital One Bank (USA), N.A., 8:13-cv-00743 (C.D. Cal.).* Class action settlement related to claims under the California Unfair Competition Law regarding alleged improper disclosures and charges assessed on credit card accounts. | Notice and Claims Administrator | 22,500 Class Members | $460,000 |
| 59. | *Hanna v. Agape Senior, LLC, No. 12-CP-40-5950 (S.C. St. Ct., Richland Cnty., S.C.).* Class action settlement resolving claims of certain residents of senior and assisted living facilities related to alleged improper of medical treatment. delivery | Notice and Claims Administrator | 600 Class Members | Uncapped Fund; $480,000 Disbursed |
| 60. | *In re Moyer Packing Co., P. & S. Docket No. D-07-0053 (U.S. Dep't Agric.).* Consent decision involving a beef processing company to compensate cattle producers for goods sold based on weights derived using an allegedly malfunctioning weight calculation system. | Notice and Claims Administrator | 1,100 Claimants | $325,000 |
| 61. | *Confidential.* Voluntary payment program by a city government to compensate current and former city police officers for unpaid overtime wages. | Claims Administrator | 175 Class Members | $300,000 |
| 62. | *Dapice v. Capital One Bank (USA), N.A. No. 14-cv-6961 GW (AGRx).* Class action settlement by a financial institution to resolve claims related to interest rates charged on balance transfers for certain credit card accounts. | Settlement Administration | 2,564 Class members | $350,000 |
| 63. | *Confidential.* Voluntary program by a financial institution to refund customers for payments subsequently discharged in bankruptcy. | Program Administrator | 457 Payees | $233,000 |

| | ECONOMIC LOSS PROGRAM DESCRIPTION | ROLE | PROGRAM SIZE | SETTLEMENT FUND |
|---|---|---|---|---|
| 64. | *Wilder v. Triad Financial Corp., No. 3:03-cv-863 (E.D. Va.).* Class action settlement by a financial services company to resolve claims associated with automobile loan applications under the Fair Credit Reporting Act. | Notice and Claims Administrator | 80,000 Class Members | $200,000 |
| 65. | *Conerly v. Marshall Durbin Food Corp., No. 2:06-cv-205 (N.D. Ala.).* Class action settlement by a poultry processing company to resolve claims under the Fair Labor Standards Act regarding employee compensation for time spent donning/doffing protective equipment. | Notice and Claims Administrator | 1,900 Class Members | $150,000 |
| 66. | *Ferguson v. Food Lion, LLC, No. 12-c-861 (Berkeley County W. Va. Cir. Ct.).* Class action settlement by a retail company to resolve claims under the West Virginia Wage Payment and Collection Act regarding timing of paychecks issued to discharged employees. | Notice and Claims Administrator | 185 Class Members | $125,000 |
| 67. | *Confidential.* Voluntary settlement by a food processing company to resolve claims regarding employee compensation for donning/doffing protective equipment. | Notice Administrator | 670 Class Members | $125,000 |
| 68. | *Confidential.* Voluntary check remittance program by an investment fund to distribute proceeds from numerous settlements to beneficiaries of the fund | Settlement Administration | 1,049 Payees | $117,000 |
| 69. | *Confidential HUD Compensation Program.* Compensation fund established to pay damages to persons allegedly discriminated against by financial institution on basis of pregnancy or parental leave. | Notice and Claims Administrator | <100 Class Members | $50,000 |
| 70. | *Cook v. Columbia Freightliner, LLC, No. 10-CP-02-1987 (Aiken County S.C. Jud. Dist.).* Class action settlement to resolve claims regarding a trucking company and the collection of administrative fees in the sale of motor vehicles. | Notice and Claims Administrator | 380 ClassMembers | $17,000 |
| 71. | *Confidential.* Voluntary payments by a financial institution to reimburse fees charged to the credit card accounts of small business owners. | Payment Administrator | 656 Payees | $16,000 |
| 72. | *Clark v. Group Hospitalization and Medical Services, Inc., No. 3:10-CIV-00333-BEN-BLM (S.D. Cal.).* Class action settlement by a health insurance provider to resolve claims under the Employee Retirement Income Security Act and California's Unfair Competition Law. | Notice and Claims Administrator | 80 Class Members | $1,300 Disbursed |
| 73. | *Quinn v. BJC Health System, No. 052-00821A (City of St. Louis Mo. Cir. Ct.).* Class action settlement by a healthcare system to resolve claims associated with hospital fees charged to uninsured patients. | Claims Administrator | 26,000 Class Members | Debt Reduction/ Forgiveness to Qualigying Class members |
| 74. | *In re Record Company Infringement Litigation, No. 6:15-cv-00708 (M. D. Fla.).* Consolidated proceedings involving 65+ parties and alleged violations of copyrights and contracts. | Orran Brown; Special Master; Project Manager | Not Applicable | Not Applicable |
| 75. | *Gray, Ritter & Graham P.C., et al. v. Goldman Phipps PLLC, et al., No. 4:13-cv-00206-CDP (E.D. Mo.).* Three separate but related claims programs (Watts Group Settlement, Banks Group Settlement, and GP/ Murray Group Settlement), established to resolve a class action lawsuit involving claimants who settled claims against Bayer arising out of the presence of Bayer's genetically-modified rice seed in the United States rice supply or lawyers who were paid common-benefit attorneys' fees or paid common-benefit expenses in that litigation. | Notice Administrator | 27,000 Class Members | Not Applicable |
| 76. | *In re Lehman Brothers Holdings Inc., No. 08-13555-JMP (Bankr. S.D.N.Y.).* Program to track, monitor and evaluate fees being charged by bankruptcy lawyers in the Lehman Brothers Chapter 11 bankruptcy proceeding. | Fee Committee Assistant | 2,656 Class Members | Not Applicable |

| | ECONOMIC LOSS PROGRAM DESCRIPTION | ROLE | PROGRAM SIZE | SETTLEMENT FUND |
|---|---|---|---|---|
| 77. | *Jerry Parker, et al. v. Smithfield Packing Company, Inc., No. 7:07-cv- 00176-H.* Class action settlement to resolve claims related to overtime pay for employees of a processing facility in Clinton, North Carolina. | Notice Administrator | 2,656 Class Members | Not Applicable |
| 78. | *Lee Lewis, et al. v. Smithfield Packing Company, Inc., No. 7:07-cv- 00166-H.* Class action settlement to resolve claims related to overtime pay for employees of a processing facility in Tarheel, North Carolina. | Notice Administrator | 12,136 Class members | Not Applicable |
| 79. | *Lycan, et. al., v. City of Cleveland, No. CV 09686044 (Court of Common Pleas, Cuyahoga County, OH).* Class action lawsuit to resolve claims that the City of Cleveland, Ohio, assessed traffic fines against non-vehicle owners (including lessees and renters) whose vehicles were photographed by automatic enforcement cameras operating in city limits, in violation of a city ordinance. | Notice and Claims Administrator | 31,937 Class Members | To Be Determined |
| 80. | *Mercier, et al v. The United States, No. 12-920C.* Class action to resolve alleged claims of unpaid wages for nurses and physician assistants. | Notice and Claims Administrator | 15,000 Class Members | $130 Million |
| 81. | *Runton et al. v. Brookdale Senior Living, Inc., No. 0:17-cv-60664-CMA (S.D. Fla.).* Class action settlement resolving claims of certain residents of senior and assisted living facilities related to staffing determinations. | Notice and Claims Administrator | 29,760 Class Members | To Be Determined |
| 82. | *In re De Bernardi v. City and County of San Francisco.* Served as Court approved Third Party Notice Administrator for a collective action lawsuit regarding Compensatory Time Off earned in lieu of paid overtime. | Notice Administrator | 26,000 Class Members | Not Applicable |
| 83. | *In re Wazwaz v. City and County of San Francisco.* Served as Court approved Third Party Notice Administrator for a collective action lawsuit regarding Compensatory Time Off earned in lieu of paid overtime. | Notice Administrator | 1,000 Class Members | Not Applicable |
| 84. | *In re Donofrio v. IKEA, No. 2:2018-cv-00599.* Served as Court appointed Third-Party Administrator, responsible for tracking and maintaining Opt-in Consent Forms for a collective action lawsuit involving alleged age-discrimination in the workplace. | Third Party Administrator | 500 Claimants | Not Applicable |

# Personal Injury Program Experience

| | PERSONAL INJURY PROGRAM DESCRIPTION | ROLE | PROGRAM SIZE | SETTLEMENT FUND |
|---|---|---|---|---|
| 1. | **Philips Respironics Personal Injury Settlement.** The settlement resolves claims that several Continuous Positive Airway Pressure (CPAP), BIPAP and ventilator products ("Recalled Devices") produced by Philips casued health issues. | Settlement Administrator | 44,000 Eligible Claimants | $1.1 Billion |
| 2. | **Respironics Medical Advancement Program.** BrownGreer is responsible for the design and implementation of the Notice Plan and serve as the fiduciary for all settlement funds. | Notice and QSF Administrator | 44,000 Eligible Claimants | $25 Million |
| 3. | **Combat Arms Earplugs Settlement.** BrownGreer serves as the Settlement Administrator in a program established to resolve claims concerning Combat Arms Version 2 earplugs manufactured from 1999 to 2015. | Settlement Administrator | 270,000 Claimants | $6 Billion |
| 4. | **JUUL Government Entity, Tribal, and Personal Injury Settlements.** A 2022 agreement was reached between the makers of JUUL and government entities, Native American tribes, and personal injury claimants to resolve claims that it deceptively marketed e-cigarettes to youths. | Settlement Administrator | Approx. 2,000 government entities, 10,000 individual claimants | Not yet disclosed |
| 5. | **Sterigenics Ethylene Oxide Settlement.** BrownGreer serves as claims and QSF administrator in a settlement resolving personal injury claims related to a medical equipment sterilization facility in Willowbrook, Illinois. | Claims Administration, QSF Administrator | 870 Claimants | $408 Million |
| 6. | **Gree Deferred Prosecution Agreement.** BrownGreer serves as Special Master overseeing the deferred prosecution agreement between Gree USA Inc. and the Department of Justice to resolve allegations that the company knowingly sold fire-prone dehumidifiers. This work includes resolving and paying claims from appliance owners. | Special Master; Claims Administrator | Claimants To Be Determined | Fund Uncapped |
| 7. | **National Opioid Settlement.** BrownGreer established the web portal and payment system that ensures states and subdivisions receive settlement funds from the 2022 "Big Three" opioid distributor settlement. The 18-year project requires continuous coordination with thousands of state and local government officials nationwide. | Directing Administrator | 3,000 States and Localities | $26 Billion |
| 8. | **Oxnard Train Derailment Settlement.** Served as claims administrator for a program that resolved injury claims relating to a 2015 passenger train incident in California. | Claims Processor | 37 Claimants | $61 Million |
| 9. | **Confidential.** Settlement involving sexual abuse claims. | QSF and Lien Resolution Administrator | 312 Claimants | $374 Million |
| 10. | **Porter Ranch Private Party Claims Settlement Program.** Private settlement to resolve claims arising from the October 23, 2015 gas leak from a storage well at the Aliso Canyon natural gas storage facility in Porter Ranch, California. | Design the share allocation protocol; Claim Processor | 36,000 Claimants | $1.6 Billion |
| 11. | **One October Settlement Fund.** Private settlement to resolve claims arising from the October 1, 2017 mass shooting at the Route 91 Harvest Festival in Las Vegas, Nevada. | Design the share allocation protocol; Claim Processor | 4,300 Claimants | $800 Million |
| 12. | **In re National Football League Players' Concussion Injury Litigation, MDL Docket No. 2323 (E.D. Pa).** Class action settlement to resolve claims by retired National Football League players relating to repetitive head impacts. | Claims Administrator | 20,571 Claimants | Fund Uncapped; $1.2 Billion Disbursed |

| | PERSONAL INJURY PROGRAM DESCRIPTION | ROLE | PROGRAM SIZE | SETTLEMENT FUND |
|---|---|---|---|---|
| 13. | **Catholic Diocese of Richmond Independent Reconciliation Program.** Private Settlement to resolve sexual abuse claims in the Richmond Catholic Diocese. | Claims Administrator | 68 Claimants | $6.3 Million |
| 14. | **Trafigura.** Expert consultant to evaluate feasibility of claims administration program arising from a toxic spill in the Ivory Coast of Africa, evaluating hurdles of corruption, fraud, identity verification, payment and communication difficulties. | Lynn Greer Expert Consultant | Not Applicable | Not Applicable |
| 15. | **In re Vioxx Products Liability Litigation, MDL Docket No. 1657 (E.D. La.).** Voluntary settlement program to resolve claims arising from the use of prescription painkillers. | Claims Administration | 60,000 Claimants | $4.85 Billion |
| 16. | **In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Products Liability Litigation, MDL Docket No. 1203 (E.D. Pa.).** Class action settlement to resolve claims arising from the use of "Fen-Phen" diet drugs. | Liaison for the Defendant to the Settlement Trust | 600,000 Claimants | $3.55 Billion |
| 17. | **In re A.H. Robins Company Inc., Debtor (In re Dalkon Shield Claimants Trust), MDL Docket No. 211 (Bankr. E.D. Va.).** Settlement program created in the Chapter 11 bankruptcy proceeding of the A.H. Robins Company to resolve claims arising from use of the Dalkon Shield intrauterine device. | Counsel to the Settlement Trust | 400,000 Claimants | $3 Billion |
| 18. | **In re DePuy Orthopaedics, Inc., ASR Hip Implant Products, MDL Docket No. 2197 (N.D. Ohio).** Voluntary settlement program for claims relating to metal-on-metal hip implant devices. | Claims Administrator | 9,300 Claimants | $2.8 Billion |
| 19. | **In re Diet Drugs (Phentermine/Fenfluramine/ Dexfenfluramine) Products Liability Litigation, MDL Docket No. 1203 (E.D. Pa.).** Voluntary settlement program to resolve opt outs from the class action settlement of claims arising from use of "Fen-Phen" diet drugs. | Claims Administrator | 66,000 Claimants | $2.63 Billion |
| 20. | **In re Actos (Pioglitazone) Products Liability Litigation, MDL Docket No. 2299 (W.D. La).** Voluntary settlement program to resolve claims arising from the use of a diabetes medication. | Claims Administrator | 10,800 Claimants | $2.37 Billion |
| 21. | **Confidential.** Voluntary settlement program of claims arising from the use of a prescription medication. | Claims Administrator | 12,000 Claimants | Fund Uncapped; $1.4 Billion Disbursed |
| 22. | **In re Sulzer Orthopedics and Knee Prosthesis Products Liability Litigation, MDL Docket No. 1401 (N.D. Ohio).** Class action settlement of claims relating to hip and knee implants. | Claims Administrator | 27,000 Claimants | $1.15 Billion |
| 23. | **Confidential.** Voluntary settlement program of claims arising from the use of a prescription medication. | Claims Administrator | 2,700 Claimants | Fund Uncapped; $279 Million Disbursed |
| 24. | **In re Xarelto® Litigation Settlement Program.** Private settlement to resolve cases arising out of the use of a prescription blood thinner. | Claims Administrator | 33,000 | $775 Million |
| 25. | **In re Pradaxa (Dabigatran Etexilate) Products Liability Litigation, MDL Docket No. 2385 (S.D. Illinois).** Voluntary settlement program to resolve claims arising from the use of a blood thinning medication. | Claims Administrator | 4,800 Claimants | $650 Million |
| 26. | **In re Benicar (Olmesartan) Products Liability Litigation, MDL No. 2606 (N.J.).** Voluntary settlement program to resolve claims arising from the use of prescription hypertension medication. | Claims Administrator | 8,500 Claimants | $358 Million |
| 27. | **In re Wright Medical Technology, Inc., Conserve Hip Implant Products Liability Litigation, MDL Docket No. 2329, (N.D. Ga.).** Private settlement program established to resolve claims related to CONSERVE®, DYNASTY®, and LINEAGE® metal-on-metal hip replacement devices.' | Claims Administrator | 1,233 Claimants | $249 Million |

| | PERSONAL INJURY PROGRAM DESCRIPTION | ROLE | PROGRAM SIZE | SETTLEMENT FUND |
|---|---|---|---|---|
| 28. | *In re Reglan®/Metoclopramide Mass Tort Litigation, No. 01997 (Philadelphia County Ct. of C.P.);* In re Reglan® Litigation, Case No. ATL-L-3865-10 (Super Ct. NJ); Reglan®/Metoclopramide Cases, CJC-10- 004631 (Cal. Super Ct.). Private settlement program consolidating PA, NJ, and CA class action settlements to resolve claims arising out of the use of a prescription medication. | Notice and Claims Administrator | 5,263 Claimants | $240 Million |
| 29. | *In re Guidant Implantable Defibrillators Products Liability Litigation Settlement, MDL Docket No. 1708 (D. Minn.).* Voluntary settlement program to resolve claims related to a medical device company's cardiac resynchronization therapy devices, implantable cardiac defibrillators and pacemakers. | Advised Defendant and Defense Counsel | 26,000 Class Members | $240 Million |
| 30. | *In re Nuvaring Products Liability Litigation,* MDL Docket No. 1964 **(W.D. Mo.).** Voluntary settlement program to resolve claims related to the use of a contraceptive device. | Claims Administrator | 3,800 Claimants | $100 Million |
| 31. | *In re Abilify (Aripiprazole) Products Liability Litigation,* MDL No. **2734 Settlement Program.** Private settlement program to resolve cases arising out of the use of a prescription medication. | Claims Administrator | 3,955 Claimants | $60 Million |
| 32. | *In re Phenylpropanolamine (PPA) Products Liability Litigation,* **MDL Docket No. 1407 (W.D. Wash.).** Class action settlement trust established to resolve claims related to an over-the-counter weight loss product. | Claims Administrator | 500 Claimants | $60 Million |
| 33. | *In re Yasmin and Yaz (Drospirenone) Marketing, Sales Practices and Products Liability Litigation, MDL Docket No. 2100 (S.D. Ill.).* Private voluntary settlement program to resolve claims alleging an arterial thromboembolism ("ATE"), either alone or in combination with some other injury, resulting from the use of drospirenone-containing oral contraceptives manufactured by Bayer or marketed by Barr Laboratories, Inc., or Teva Pharmaceuticals USA, Inc. | Claims Administrator | 1,275 Claimants | $57 Million |
| 34. | *In re Yasmin and YAZ (Drospirenone) Marketing, Sales Practices and Products Liability Litigation, MDL Docket No. 2100 (S.D. Ill.).* Private settlement program to resolve claims alleging gallbladder disease or a gallbladder injury from the use of drospirenone-containing oral contraceptives manufactured by Bayer or marketed by BarrTeva. | Claims Administrator | 9,000 Claimants | $24 Million |
| 35. | *In re OxyContin Litigation - All Cases, No. 2002-CP-18-1756 (Cir. Ct. Dorchester County, S.C.).* Class action settlement by a pharmaceutical company regarding a prescription pain killer. | Notice and Claims Administrator | 3,600 Class Members | $4.25 Million |
| 36. | *Confidential.* Private Settlement to resolve cases arising out of the use of a male-oriented hair coloring product designed to cover grey hair. | Claims Administrator | Not Disclosed | Not Disclosed |
| 37. | *In re Seroquel Products Liability Litigation,* MDL Docket No. **1769 (M.D. Fla.).** Multidistrict litigation proceedings involving the antipsychotic prescription drug Seroquel. | Special Master; Project Manager | Not Disclosed | Not Applicable |
| 38. | *In re Pittsburgh Corning Corporation, No. 00-22876-TPA (Bankr. W.D. Pa.).* Class action settlement to resolve personal injury claims relating to exposure to asbestos made by refinery and chemical plant workers with individual asbestos cases pending in the Eastern District of Texas. | Notice Administrator | 2,272 Class Members | Not Applicable |



# BrownGreer | Professional Service. Redefined.

BrownGreer is redefining multiple claim resolution and litigation management with industry-leading technology and expert strategies to resolve your multiple claims and data management challenges with uncompromising accuracy and efficiency.

© 2024 BrownGreer PLC | 250 Rocketts Way | Richmond, VA 23231 | www.BrownGreer.com

# Exhibit 3:

Email Notice

To:
From: [CA Email Address]
Subject: BCBS Provider Settlement

[Claimant ID]

**Did you or your business provide healthcare services,**
**equipment, or supplies to Blue Plan patients?**

**A large Settlement could affect your rights.**

Visit www.[websiteURL].com for more info and to file a claim.

A Settlement has been reached with Blue Cross Blue Shield Association ("BCBSA") and Settling Individual Blue Plans (together called "Settling Defendants"). The Provider plaintiffs claimed that the Settling Defendants divided the United States into "Service Areas" and agreed not to compete in those areas. They also claim that the Settling Defendants fixed prices for services provided. Settling Defendants deny all allegations of wrongdoing.

**Are you included?** The Settlement Class includes all Providers in the U.S. (other than Excluded Providers, who are not part of the Settlement Class) who currently provide or provided healthcare services, equipment, or supplies to any patient who was insured by, or was a Member of or a beneficiary of, any plan administered by any Settling Individual Blue Plan from July 24, 2008 to October 4, 2024. Information on Excluded Providers is available at the website below.

**What can you get from the Settlement?** If approved by the Court, the Settlement will establish a Settlement Fund. A portion of the fund has been set aside for notice and administration. Settling Defendants will also agree to make changes in the way they do business that will increase the opportunities for competition in the market for health insurance.

**How to get a payment?** File a claim form online or by mail by **Month XX, 202X** to be eligible for a payment. Claim forms are available at www.BCBSprovidersettlement.com.

**What are your options?** Even if you do nothing you will be bound by the Court's decisions. If you want to keep your right to sue the Settling Defendants, you must exclude yourself from the Settlement Class by **Month XX, 202X**. If you stay in the Settlement Class, you may object to the Settlement by **Month XX, 202X**. The Court will hold a hearing on **Month XX, 202X** to consider whether to approve the Settlement, a request for attorneys' fees of up to 25% of the Settlement, and a request for reimbursement of expenses to be paid out of the Settlement Fund. You or your own lawyer may appear at the hearing at your own expense.

*This is just a summary. For more information visit*
*www.[websiteURL].com or call (8XX) XXX-XXXX.*

# Exhibit 4:

Postcard Notice

**Did you or your business provide healthcare services, equipment, or supplies to Blue Plan patients?**

**A \$2.8 billion Settlement could affect your rights.**

*A court authorized this notice. You are <u>not</u> being sued. This is <u>not</u> a solicitation from a lawyer.*

[SETTLEMENT NAME]
Notice Administrator
P.O. Box XXXXX
Richmond, VA 23XXX
Toll-Free (8XX) XXX-XXXX
www.[websiteURL].com



*Administrative Use Only*

**Notice ID: 123456789**

**Jane Claimant**
123 Main St.
Apt. 001
Richmond, VA 23260

FIRST-CLASS
MAIL U.S.
POSTAGE PAID
PERMIT NO
1234

A Settlement has been reached with Blue Cross Blue Shield Association ("BCBSA") and Settling Individual Blue Plans (together called "Settling Defendants"). The Provider plaintiffs claimed that the Settling Defendants divided the United States into "Service Areas" and agreed not to compete in those areas. They also claim that the Settling Defendants fixed prices for services provided. Settling Defendants deny all allegations of wrongdoing.

**Are you included?** The Settlement Class includes all Providers in the U.S. (other than Excluded Providers, who are not part of the Settlement Class) who currently provide or provided healthcare services, equipment, or supplies to any patient who was insured by, or was a Member of or a beneficiary of, any plan administered by any Settling Individual Blue Plan from July 24, 2008 to October 4, 2024. Information on Excluded Providers is available at the website below.

**What can you get from the Settlement?** If approved by the Court, the Settlement will establish a $2.8 billion Settlement Fund. $100 million has been set aside for notice and administration. Settling Defendants will also agree to make changes in the way they do business that will increase the opportunities for competition in the market for health insurance.

**How to get a payment?** File a claim form online or by mail by **Month XX, 202X** to be eligible for a payment. Claim forms are available at the website below.

**What are your options?** Even if you do nothing you will be bound by the Court's decisions. If you want to keep your right to sue the Settling Defendants, you must exclude yourself from the Settlement Class by **Month XX, 202X**. If you stay in the Settlement Class, you may object to the Settlement by **Month XX, 202X**. The Court will hold a hearing on **Month XX, 202X** to consider whether to approve the Settlement, a request for attorneys' fees of up to 25% of the Settlement, and a request for reimbursement of expenses of approximately $100 million to be paid out of the Settlement Fund. You or your own lawyer may appear at the hearing at your own expense.

*This is just a summary. For more information visit www.[websiteURL].com or call (8XX) XXX-XXXX.*

# Exhibit 5:

Long Form Notice

**Did you or your business provide healthcare services, equipment, or supplies to Blue Plan patients anytime from July 24, 2008, to October 4, 2024?**

**A $2.8 billion Settlement could affect your rights.**

- A settlement has been reached with the Blue Cross Blue Shield Association ("BCBSA") and Settling Individual Blue Plans.  BCBSA and Settling Individual Blue Plans are called "Settling Defendants."[1] The providers claimed that the Settling Defendants violated antitrust laws by illegally dividing the United States into "Service Areas" and agreed not to compete in those areas. They also claim that the Settling Defendants fixed prices for services provided. Settling Defendants deny all allegations of wrongdoing.

- The Court has not decided who is right or wrong. Instead, Plaintiffs and Settling Defendants have agreed to a Settlement to avoid the risk and cost of further litigation.

- If approved by the Court, the Settlement will establish a **$2.8 billion Settlement Fund.** Settling Defendants will also agree to make changes in the way they do business that will increase the opportunities for competition in the marketplace.

- Your legal rights are affected whether you act or do not act. Please read this Notice carefully.

---

[1] All capitalized terms used in this Notice shall have the same meaning as provided for in the Settlement Agreement, unless stated otherwise.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | | |
|---|---|---|
| File a Claim | <ul><li>File a claim for payment online or by mail.</li><li>Be bound by the Settlement.</li><li>Give up your right to sue or continue to sue Settling Defendants for the claims in this case.</li><li>Keep your right to the injunctive relief described in Section [7] below.</li></ul> | Submitted online or postmarked by **Month x, 202x** |
| Ask to be Excluded ("Opt Out") | <ul><li>Remove yourself from the Settlement Class.</li><li>Receive no payment.</li><li>Keep your right to sue or continue to sue Settling Defendants for the claims in this case.</li><li>Give up your right to the injunctive relief described in Section [7] below.</li></ul> | Postmarked or received by **Month x, 202x** |
| Object | <ul><li>Write to the Court about why you do not like the Settlement.</li></ul> | Postmarked or received by **Month x, 202x** |
| Attend the Hearing | <ul><li>Ask to speak to the Court about the fairness of the Settlement.</li></ul> | **Month x, 202x at x:xx, xx** |
| Do Nothing | <ul><li>Receive no payment.</li><li>Be bound by the Settlement.</li><li>Give up your right to sue or continue to sue Settling Defendants for the claims in this case.</li><li>Keep your right to the injunctive relief described in Section [7] below.</li></ul> | |

- These rights and options – **and the deadlines to exercise them** – are explained in this Notice.  The deadlines may be changed, so please check the Settlement Website, [settlement website], for updates and further details.

- The Court in charge of this case still has to decide whether to approve the Settlement. No payments will be made unless and until the Court approves the Settlement and any appeals are resolved.  Please be patient.

**Questions? Visit [settlement website] or call toll-free at [settlement phone no.]**

**Basic Information** ...................................................................................... Page 4

    1. Why was this Notice issued?
    2. What is this lawsuit about?
    3. What is a class action, and who is involved?
    4. Why is there a Settlement?

**Who is in the Settlement Class** ............................................................. Page 5

    5. Am I part of the Settlement Class?
    6. I am still not sure if I am included.

**Settlement Benefits** .......................................................................... Page 5

    7. What does the Settlement provide?
    8. How much can Class Members get from the Settlement?
    9. How are Health Care Facilities' payment amounts calculated?
    10. How are Medical Professionals' payment amounts calculated?
    11. How do I get a Payment?
    12. What am I giving up by staying in the Settlement Class?
    13. What happens if I do nothing at all?

**Excluding Yourself from the Class** ...................................................... Page 13

    14. How do I exclude myself from the Class?
    15. If I do not exclude myself, can I sue Settling Defendants for the same thing later?

**Objecting to the Settlement** ............................................................... Page 14

    16. How do I tell the Court that I do not like the Settlement?
    17. What is the difference between excluding myself and objecting?

**The Lawyers Representing You** .......................................................... Page 16

    18. Do I have a lawyer in this case?
    19. How will the lawyers be paid?

**The Court's Fairness Hearing** ........................................................... Page 16

    20. When and where will the Court decide whether to approve the Settlement?
    21. Do I have to come to the hearing?
    22. May I speak at the hearing?

**Getting More Information** ................................................................... Page 17

    23. How do I get more information about the Settlement?

**Questions? Visit [settlement website] or call toll-free at [settlement phone no.]**

3

**BASIC INFORMATION**

---

**1. Why was this Notice issued?**

---

The Court authorized this Notice because you have a right to know about the proposed Settlement of certain claims against Settling Defendants in this class action lawsuit and about your options before the Court decides whether to approve the Settlement. If the Court approves the Settlement, and after objections and appeals are resolved, you will be bound by the judgment and terms of the Settlement. This Notice explains the lawsuit, the Settlement, and your legal rights and options, and the deadlines for you to exercise your rights.

---

**2. What is this lawsuit about?**

---

This class action is called *In re: Blue Cross Blue Shield Antitrust Litigation*, MDL 2406, N.D. Ala., Master File No. 2:13-cv-20000-RDP, and is pending in the United States District Court for the Northern District of Alabama, Southern Division. U.S. District Judge R. David Proctor is overseeing this class action.

Plaintiffs allege that Settling Defendants violated antitrust laws by illegally dividing the United States into "Service Areas" and agreeing not to compete in those areas. They also claim that the Settling Defendants fixed prices for services provided. The Court has not decided who is right or wrong. Instead, Plaintiffs and Settling Defendants have agreed to a Settlement to avoid the risk and cost of further litigation.

---

**3. What is a class action, and who is involved?**

---

In a class action lawsuit, one or more people or businesses called class representatives sue on behalf of others who have similar claims. All the people or businesses who have similar claims together are a "class" or "class members" if the class is certified by the Court. Individual class members do not have to file a lawsuit to participate in the class action settlement or be bound by the judgment in the class action. One court resolves the issues for everyone in the class, except for those who exclude themselves from the class.

---

**4. Why is there a Settlement?**

---

The Court did not decide in favor of the Plaintiffs or Settling Defendants. Instead, both sides have agreed to the Settlement. Both sides want to avoid the risk and cost of further litigation. The Plaintiffs and their attorneys think the Settlement is best for the Settlement Class.

## WHO IS IN THE SETTLEMENT CLASS?

---

**5. Am I part of the Settlement Class?**

---

The Settlement Class includes all Providers in the U.S. (other than Excluded Providers, who are not part of the Settlement Class) who currently provide or provided healthcare services,

**Questions? Visit [settlement website] or call toll-free at [settlement phone no.]**

4

equipment or supplies to any patient who was insured by, or was a Member of or a beneficiary of, any plan administered by any Settling Individual Blue Plan during from July 24, 2008 to October 4, 2024 ("Settlement Class Period").

- "Provider" means any person or entity that provides healthcare services in the U.S., including but not limited to a physician, group practice, or facility.

- "Excluded Providers" are (i) Providers owned or employed by any of the Settling Defendants; (ii) Providers owned or employed exclusively by Government Entities or Providers that exclusively provided services, equipment or supplies to members of or participants in Medicare, Medicaid or the Federal Employee Health Benefits Programs; (iii) Providers that have otherwise fully released their Released Claims against the Releasees prior to the Execution Date, including but not limited to Providers that were members of any of the settlement classes in *Love v. Blue Cross and Blue Shield Association*, No. 1:03-cv-21296-FAM (S.D. Fla.); or (iv) Providers that exclusively provide or provided (a) prescription drugs; (b) durable medical equipment; (c) medical devices; (d) supplies or services provided in an independent clinical laboratory; or (e) services, equipment or supplies covered by standalone dental or vision insurance. Any Provider that falls within the exclusion(s) set forth in clauses (i), (ii) or (iv) of this paragraph for only a portion of the Settlement Class Period is a Settlement Class Member that may recover in the Settlement.

A Provider who was a member of the settlement classes in *Love v. Blue Cross and Blue Shield Association*, No. 1:03-cv-21296-FAM (S.D. Fla.) and who was licensed to practice prior to January 31, 2009, will be considered an Excluded Provider.

For the avoidance of doubt, dental or vision providers who exclusively provided services, equipment or supplies covered by standalone dental or vision insurance are not Settlement Class Members.

| 6. I am still not sure if I am included. |
| --- |

If you are still not sure if you are included in the Settlement Class, please review the detailed information contained in the Settlement Agreement, available for download at [Settlement Website]. You may also contact the Settlement Notice Administrator at [CA Email Address] or call toll-free at [Settlement Phone Number].

### SETTLEMENT BENEFITS

| 7. What does the Settlement provide? |
| --- |

The Settlement pays Class Members who submit a valid claim by **Month, x, 202x**. Settling Defendants also agreed to make changes in the way they do business to increase the opportunities for competition in the market for the purchase of goods and services from healthcare providers ("injunctive relief") that benefits Class Members.

**Questions? Visit [settlement website] or call toll-free at [settlement phone no.]**

If the Court approves the Settlement, a $2.8 billion Settlement Fund will be established. The money remaining in the Settlement Fund, after paying the Attorneys' Fee and Expense Awards (which shall include (a) attorneys' fees not to exceed 25% of the Settlement Fund and (b) expenses, costs and, if permitted, Service Awards, totaling approximately $100 million), and Notice and Settlement Administration costs of approximately $100 million, is called the "Net Settlement Fund." The Net Settlement Fund will be distributed to Settlement Class Members. This Net Settlement Fund will be split as described below:

- 92% of the Net Settlement Fund will be allocated to the Health Care Facilities as a "Hospital/Facility Net Settlement Fund." The Hospital/Facility Net Settlement Fund will be distributed to Health Care Systems that submit claims on behalf of their Health Care Facilities and individual Health Care Facilities that are Authorized Claimants (i.e., Class Members who submit a valid approved claim).

- The remaining 8% of the Net Settlement Fund will be allocated to a "Professionals Net Settlement Fund." The Professionals Net Settlement Fund will be distributed to Medical Groups and Medical Organizations that submit claims on behalf of their Medical Professionals, as well as individual Medical Professionals that are Authorized Claimants.

- The Hospital/Facility Net Settlement Fund and Professionals Net Settlement Fund are separate funds. If the claims submission rate is lower in one fund than the other, the payments to the Authorized Claimants will be proportionately increased in that fund only, without affecting the other fund's payments.

**Injunctive Relief:**

- Settling Defendants have agreed to make changes in the way they do business that will increase the opportunities for competition in the market for the purchase of goods and services from healthcare providers.

Providers who do not opt out of the settlement will receive relief that improves the BlueCard system, including:

- **BlueCard Transformation.** Transformation of the BlueCard system through the development and implementation of a system-wide, cloud-based architecture that will increase access to critical information and allow Settlement Class Members to receive up-to-date, accurate information as if they were a contracted provider of the Control/Home Plan, directly from their Local/Host Plan. This creation of a system-wide information platform and enhanced information sharing will facilitate Settlement Class Members' access to Member benefits and eligibility verification, pre-authorization requirements, and claims status tracking;

**Questions? Visit [settlement website] or call toll-free at [settlement phone no.]**

- **BlueCard Prompt Pay Commitment.** To address the gap in application of state prompt pay laws to BlueCard claims, a timeliness commitment for payment of fully insured Clean BlueCard Claims, with a requirement that the Settling Individual Blue Plans pay interest when payment is made later than the Prompt Pay Period, as well as timely notice of defective claims and explanation for denied claims;

- **Service Level Agreements.** Implementation of Service Level Agreements, which commit the Settling Individual Blue Plans to respond promptly to BlueCard inquiries or pay financial penalties;

- **BlueCard Executive.** Appointment of a BlueCard Executive at each Settling Individual Blue Plan, who will be accountable to Settlement Class Members for BlueCard claims payment issues;

- **Real-Time Messaging System.** Implementation of a real-time Blues internal messaging system to reduce the time it takes for the Settling Individual Blue Plans to respond to Providers' issues and disputes and enable Settling Individual Blue Plans to address Settlement Class Members' issues in near-real time;

- **National Executive Resolution Group.** Creation of a National Executive Resolution Group, which will work with BCBSA to identify trends and opportunities for further improvement of BlueCard over time.

The Settlement Agreement will also result in changes to rules governing contracts between Providers and the Settling Individual Blue Plans:

- **Modifying the Contiguous Area Rule.** Currently, Providers can contract with a Blue Plan in a Contiguous Area only for Members who live or work in the Service Area where the Provider is located. The Settlement Agreement removes that requirement, so that a Provider can contract for all Members of that Settling Individual Blue Plan.

- **Expanding Contiguous Area Contracts to Affiliated Hospitals.** For the first time, the Settlement Agreement permits Settling Individual Blue Plans to enter into Contiguous Area Contracts that cover not just hospitals in Contiguous Counties, but also certain of their affiliated hospitals.

- **Affiliates and All Products Clauses.** The Settlement Agreement places limits on contract provisions that require Providers who contract with Settling Individual Blue Plans to participate in the networks of those plans' non-Blue affiliates.

The Settlement Agreement will also improve Providers' day-to-day interactions with the Settling Individual Blue Plans by ensuring major upgrades to the Settling Defendants' technical capabilities and securing commitments from the Settling Defendants to make more information available to Providers, including:

**Questions? Visit [settlement website] or call toll-free at [settlement phone no.]**

7

- **Third-Party Information.** The Settling Individual Blue Plans will identify third parties involved in determining eligibility for benefits, so Settlement Class Members can better understand and predict eligibility decisions.

- **Minimum Data Requirements.** The Settling Defendants will define minimum data requirements for certain eligibility and benefits inquiries, to promote consistency among Settling Individual Blue Plans and give certainty to Settlement Class Members that they are submitting the necessary information.

- **Blue Plan Common Appeals Form.** Settlement Class Members can use a newly developed appeals form common to all Settling Individual Blue Plans, so they do not bear the administrative expense of complying with different appeal requirements for every Settling Individual Blue Plan.

- **Pre-Authorization Standards.** The Settling Defendants will promulgate guidelines to improve the prior authorization process.

- **Telehealth Relief.** The Settling Defendants will streamline claims processing for Providers who contract with Blue Plans for telehealth services.

The Settlement Agreement will also expand Providers' opportunity to enter into value-based contracts with Settling Individual Blue Plans:

- **Minimum Level of Value-Based Care.** The Settling Defendants will create value-based care offerings, so Providers can choose between a traditional fee-for-service model and a value-based care model for payment.

- **Best Practices for Value-Based Care.** The Settling Defendants will promulgate standards for value-based contracts in order to facilitate the delivery of value-based care.

- As part of the Injunctive Relief (the changes in the way the Settling Defendants do business), a Monitoring Committee will be established for five years to mediate any disputes resulting from the implementation of the Injunctive Relief. If the Monitoring Committee approves systems or rules, that information will be included in the Release and posted in a report of Monitoring Committee Actions on the Settlement Website. Additional information is detailed in the Settlement Agreement, available at [Settlement Website].

| 8. How much can the Class get from the Settlement? |
| --- |

Authorized Claimants will receive a payment from the Net Settlement Fund, if the Settlement is approved.

**Questions? Visit [settlement website] or call toll-free at [settlement phone no.]**

## Distribution of the Net Settlement Fund

Authorized Claimants qualify for a payment based in part on the total amount of estimated Allowed Amounts determined by the Settling Defendants during the Settlement Class Period. Health Care Systems and Health Care Facilities can claim payments from the Hospital/Facility Net Settlement Fund, while Medical Groups, Medical Organizations and Medical Professionals can claim from the Professional Net Settlement Fund (see more information below).

| **9. How are Health Care Facilities' payment amounts calculated?** |
|---|

Individual Health Care Facilities and Health Care Systems that submit Claim Forms on behalf of their Health Care Facilities can receive a portion of the Hospital/Facility Net Settlement Fund. Payments will be based on the Allowed Amounts determined by Settling Blue Plans for services provided from July 24, 2008, to October 4, 2024.

**Payment Methods:**

| Method | Eligibility | Data Used | Calculation |
|---|---|---|---|
| **Default Method** | Claimants for which Plaintiffs' experts have data from 2008-2014 | Experts use data for 2008-2014 | Extrapolate Allowed Amounts for 2015-2024 using growth in national hospital expenditures. |
| **Alternative Method** | Claimants for which experts are missing data for some or all years | Claimant submits their own data for 2008-2014 and 2015-2024 | Allowed Amounts calculated based on Claimant-submitted data. |

**Important Note:** Due to a lack of necessary data, the Default Method is not available for Health Care Facilities located in Arizona, Iowa, Louisiana, Maryland, New Jersey, South Dakota, Virginia, the District of Columbia and Puerto Rico, as well as Health Care Facilities that were not open prior to January 1, 2015.

**NPI/TIN Identification Process:**

Authorized Claimants must:

- Identify each National Provider Identifier (NPI) or Taxpayer Identification Number (TIN).

- Specify the time period for which it is submitting a claim for each NPI or TIN.

- Allowed Amounts will be calculated separately for each NPI or TIN.

**Questions? Visit [settlement website] or call toll-free at [settlement phone no.]**

**Allowed Amounts Review Process:**

Authorized Claimants can review their Allowed Amounts before the distribution of the Net Settlement Fund. If corrections are needed, Authorized Claimants must submit supporting materials for review. The Settlement Claims Administrator will adjust the Allowed Amounts if necessary.

**Regression Model Summary:**

| Factor | Explanation |
|---|---|
| Blue Plans' Market Share | The Blue Plans' share in the Authorized Claimant's Core-Based Statistical Area (CBSA) or county. |
| Year | The specific year being evaluated. |
| Harm Coefficient | Estimated using the model to calculate the relative effect of Defendants' actions on different Health Care Facilities. |

**Payment Formula:**

Each Health Care Facility's Allowed Amounts will be multiplied by the applicable harm coefficient to determine that Health Care Facility's Adjusted Allowed Amounts. The Health Care Facility's Adjusted Allowed Amounts will be used to calculate the Health Care Facility's payment as follows:

| Hospital/Facility Claim Payment Formula |
|---|
| NPI or TIN Adjusted Allowed Amounts ÷ Total Adjusted Allowed Amounts for All Health Care Facilities That Filed Claims × Hospital/Facility Net Settlement Fund |

**Steps to Claim Payment:**

1. Submit Claim Forms.

2. Choose Payment Method: Default or Alternative.

3. Review and Calculation: For the Default Method, Claimants review Allowed Amounts for each NPI/TIN and request corrections if necessary.

4. Apply Payment Formula.

**10. How are Medical Professionals' payment amounts calculated?**

Individual Medical Professionals and Medical Groups/Organizations submitting Claim Forms on behalf of their Medical Professionals are entitled to receive a portion of the Medical Professionals' Settlement Fund. The settlement payment for each Medical Professional will

**Questions? Visit [settlement website] or call toll-free at [settlement phone no.]**

10

be based on the assignment of points based on the range of Allowed Amounts determined by Settling Blue Plans for services provided to Blue Plan Members between July 24, 2008, and October 4, 2024, multiplied by a factor based on the harm coefficient calculated by Provider Plaintiffs' experts for the geographic area in which the Medical Professional is located, resulting in "Adjusted Points," as follows:

Medical Professionals will receive the number of points corresponding to the Allowed Amounts for their NPI or TIN shown in the table below:

| Allowed Amounts | Points |
|---|---|
| Less than $250,000 | 1 |
| $250,000 - $500,000 | 2 |
| $500,000 - $750,000 | 3 |
| $750,000 - $1,000,000 | 4 |
| $1,000,000 or more | 5 |

On the Claim Form, Claimants will indicate the range that contains their Allowed Amounts.

Each Medical Professional NPI or TIN for which a Claimant submits a claim will be assigned a number of "Adjusted Points" equal to the points that correspond to that NPI or TIN's range of Allowed Amounts, multiplied by the multiplier that corresponds to the harm coefficient for the geographic area in which the NPI or TIN is located, as shown in the table below:

| Harm Coefficients for Geographic Areas | Points Multiplier |
|---|---|
| Less than 2 | 1 |
| 2 to 3 | 2.5 |
| 3 to 4 | 3.5 |
| 4 to 5 | 4.5 |
| 5 or higher | 5.3 |

**Payment Formula:**

| Medical Professionals' Payment Formula |
|---|
| NPI or TIN Adjusted Points ÷ |
| Total Adjusted Points for All Medical Professionals Who Filed Claims × |
| Professional Net Settlement Fund |

**Questions? Visit [settlement website] or call toll-free at [settlement phone no.]**

11

**Payment Resolution Process**

- No distributions will be made until all claims, determinations, and disputes that could impact Claim Payments are resolved.

| 11. How do I get a Payment? |
| --- |

To make a claim and receive a payment, you must file a claim form online, or by mail and postmarked, by **Month x, 202x**. Claims may be submitted online at [Settlement Website], or by mail to:

[SETTLEMENT NAME]
[SETTLEMENTCLAIMS ADMINISTRATOR]
[ADDRESS]
[ADDRESS]

Submitting a claim online is highly recommended.

If you submit a claim on behalf of a Health Care System or Health Care Facility and select the Alternative Option, you must include estimated Allowed Amounts on your Claim Form. Otherwise, the Default Option will be used unless it is unavailable due to lack of available data concerning your Allowed Amounts. Instructions for submitting your claim, and details concerning the Default Option and Alternative Option are on the applicable Claim Form and on the Settlement Website. When required, sufficient documentation should include a signed attestation when other documentation is no longer available.

| 12. What am I giving up by staying in the Settlement Class? |
| --- |

Unless you exclude yourself, you remain in the Settlement Class. This means that you cannot sue, continue to sue, or be part of any other lawsuit against Settling Defendants that makes claims based on the facts and legal theories involved in this case or any of the business practices the Settling Defendants adopt pursuant to the Settlement Agreement. It also means that all of the Court's orders in this class action will apply to you and legally bind you.

The Released Claims are detailed in the Settlement Agreement, available at [Settlement Website].

| 13. What happens if I do nothing at all? |
| --- |

If you do nothing, you will remain a member of the Settlement Class and be bound by the Settlement. However, if you had been entitled to share in the Settlement proceeds, you will not get a payment.

**Questions? Visit [settlement website] or call toll-free at [settlement phone no.]**

12

## EXCLUDING YOURSELF FROM THE SETTLEMENT CLASS

| **14. How do I exclude myself from the Settlement Class?** |
| --- |

If you are a member of the Settlement Class, or an authorized representative of a Health Care System, Health Care Facility, Medical Group, or Medical Organization that is a member of the Settlement Class, and:

- You do not want the monetary and other benefits provided by the Settlement,

- You do not want to be legally bound by the terms of the Settlement,

- Or you wish to pursue your own separate lawsuit against the Settling Defendants,

You must exclude yourself, or the Class Member you represent, from the Settlement Class.

**Steps for Exclusion**

The Exclusion Request must include the following:

1. Your Information:

    o   Your name, or the name of the Class Member you represent.

    o   Your address, telephone number and email address and, if different, the contact information of the Class Member.

    o   If the Class Member has assigned, transferred or otherwise given a financial interest in its claims against the Settling Defendants to a third party (in whole or in part), the name, address and telephone number of the third party.

2. Additional Information:

    o   For Medical Groups, Organizations, or Professionals: Provide your National Provider Identifier (NPI), Tax Identification Number (TIN), and the last four digits of your Social Security Number, if applicable.

    o   For Health Care Systems or Facilities: Provide your NPI, and TIN, if applicable.

3. Exclusion Statement:

    o   A statement indicating that you, or the Class Member you represent, wish to be excluded from the Settlement Class in *In re: Blue Cross Blue Shield Antitrust Litigation*.

**Questions? Visit [settlement website] or call toll-free at [settlement phone no.]**

13

4. Signature:

- o Your personal, physical signature is required. Electronic signatures (including DocuSign or PDF signatures) will not be accepted.

- o Requests signed solely by your lawyer, unless employed by the Health Care System, Facility, Medical Group, or Organization, are not valid.

**Important Notes:**

- A Health Care System, Medical Group, or Medical Organization cannot submit a single Exclusion Request on behalf of all its Providers. Each Class Member must submit his, her, or its own Exclusion Request, and it must be signed by the Class Member or their authorized representative.

- Deadline: Your Exclusion Request must be mailed, and postmarked or received by **Month x, 202x**, to the following address:

SETTLEMENT NAME]
[SETTLEMENT NOTICE ADMINISTRATOR]
[ADDRESS]
[ADDRESS]

---

**15.  If I do not exclude myself, can I sue Settling Defendants for the same thing later?**

---

No. Unless you exclude yourself, you give up the right to sue the Settling Defendants for any claims that are released by the Settlement Agreement. If you have a current lawsuit against the Settling Defendants, speak to your lawyer in that lawsuit immediately to determine whether you must exclude yourself from the Settlement Class to continue your own lawsuit against Settling Defendants.

## OBJECTING TO THE SETTLEMENT

---

**16. How do I tell the Court that I do not like the Settlement?**

---

If you are a Class Member and have not excluded yourself from the Settlement, you can object to the Settlement if you do not like part or all of it. The Court will consider your views.

To object, you must send a letter or other written statement saying that you object to the Settlement in *In re: Blue Cross Blue Shield Antitrust Litigation* and the reasons why you object to the Settlement. This letter must include:

- The name of the Action – *In re: Blue Cross Blue Shield Antitrust Litigation*;

- Description of your objections, including any applicable legal authority and any supporting evidence you wish the Court to consider;

**Questions? Visit [settlement website] or call toll-free at [settlement phone no.]**

- Your full name, address, email address, and telephone number;

- The NPIs and/or TINs you used when submitting claims to the Blues for reimbursement (this information may be redacted in your submission to the Court);

- Whether the objection applies only to you, a specific subset of the Settlement Class, or the Settlement Class as a whole;

- The identity of all counsel who represent you, including former or current counsel who may be entitled to compensation for any reason related to the objection, along with a statement of the number of times in which that counsel has objected to a class action within five years preceding the submission of the objection, the caption of the case for each prior objection, and a copy of any relevant orders addressing the objection;

- Any agreements that relate to the objection or the process of objecting between you, your counsel, and/or any other person or entity;

- Your (and your attorney's) signature on the written objection;

- A statement indicating whether you intend to appear at the Final Fairness Hearing (either personally or through counsel); and

- A declaration under penalty of perjury that the information provided is true and correct.

Do not send your written objection to the Court or the judge. Instead, mail the objection to the Settlement Notice Administrator with copies to Co-Lead Counsel and Counsel for Settling Defendants at the addresses listed below.

Your objection must be postmarked by ==Month x,202x.==

| Settlement Notice Administrator: ==SETTLEMENT NAME] [SETTLEMENT NOTICE ADMINISTRATOR] [ADDRESS] [ADDRESS]== | Plaintiffs' Co-Lead Counsel: Edith M. Kallas Joe R. Whatley, Jr. WHATLEY KALLAS, LLP P.O. Box 10968 Birmingham, AL 35202-0968 | Counsel for Settling Defendants  xxx CRAVATH SWAINE & MOORE, LLP x x (xxx) xxx-xxxx |
|---|---|---|

| **17. What is the difference between excluding myself and objecting?** |
|---|

Objecting is telling the Court that you do not like something about the Settlement. You can object only if you do not exclude yourself from the Settlement Class. Excluding yourself is telling the Court that you do not want to be part of the Settlement Class or the lawsuit as outlined in Question 14. If you exclude yourself, you are no longer a member of the

**Questions? Visit [settlement website] or call toll-free at [settlement phone no.]**

Settlement Class and you do not have a right to share in the Settlement's proceeds or to object because the Settlement no longer affects you.

## THE LAWYERS REPRESENTING YOU

| **18. Do I have a lawyer in this case?** |
|---|

The Court has appointed Edith M. Kallas, and Joe R. Whatley, Jr. of Whatley Kallas, LLP as Co-Lead Counsel on behalf of the Plaintiffs and Class Members. Their contact information is provided above in Question 16.

You do not need to hire a lawyer because Co-Lead Counsel is working on your behalf.

If you wish to pursue your own lawsuit separate from this one, or if you exclude yourself from the Settlement Class, these lawyers will no longer represent you. You will need to hire a lawyer if you wish to pursue your own lawsuit against Settling Defendants.

| **19. How will the lawyers be paid?** |
|---|

Settlement Class Counsel may submit an application(s) to the Court ("Fee and Expense Application") for (a) an award of attorneys' fees up to 25% of the $2.8 billion fund and (b) reimbursement of expenses and costs incurred in pursuing this litigation of approximately $100 million. You will not have to pay any fees or costs.

## THE COURT'S FAIRNESS HEARING

| **20. When and where will the Court decide whether to approve the Settlement?** |
|---|

The Court will hold a hearing to decide whether to approve the Settlement. You may attend and you may ask to speak, but you do not have to. The Court will hold a Fairness Hearing at **x:xx a.m. on Month x, 202x**, at the United States District Court for the Northern District of Alabama, Hugo L. Black United States Courthouse, 1729 5th Avenue North, Birmingham, Alabama 35203, in **Courtroom x**. At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. The Court will also consider whether to approve attorneys' fees and expenses and service awards for class representatives. If there are objections, the Court will consider them. The Court will listen to people who have asked to speak at the hearing. After the hearing, the Court will decide whether to approve the Settlement. We do not know how long these decisions will take.

| **21. Do I have to come to the hearing?** |
|---|

No. Co-Lead Counsel will attend the hearing and answer any questions the Court may have. However, you are welcome to come at your own expense. If you send an objection, you do not have to come to the hearing to talk about it. If you mailed your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but it is not necessary.

**Questions? Visit [settlement website] or call toll-free at [settlement phone no.]**

## 22. May I speak at the hearing?

If you want to speak at the Fairness Hearing, you must send a letter saying that it is your "Notice of Intention to Appear in *In re: Blue Cross Blue Shield Antitrust Litigation*." Include the following information:

- Your name, including (and business name, if applicable)

- Current mailing address

- Telephone number, and

- Signature.

Your Notice of Intention to Appear must be postmarked by ==Month x, 202x==, and it must be sent to:

- Clerk of Court, United States District Court for the Northern District of Alabama, Hugo L. Black United States Courthouse, 1729 5th Avenue North, Birmingham, Alabama 35203.

- Co-Lead Counsel and Defense Counsel (see addresses in in Question 16).

You cannot ask to speak at the hearing if you excluded yourself from the Settlement.

## GETTING MORE INFORMATION

## 23. How do I get more information about the Settlement?

This Notice summarizes the proposed Settlement. More details are in the Settlement Agreement. You can find a copy of the Settlement Agreement, other important documents, and information about the current status of the case by visiting ==[Settlement Website]==. You may contact the Settlement Notice Administrator at ==[CA Email Address]== or toll-free at ==[CA Phone No.]==. You may also contact Co-Lead Counsel at the address, phone number, and email address provided in Question 16.

**PLEASE DO NOT CONTACT THE COURT REGARDING THIS NOTICE.**

**Questions? Visit [settlement website] or call toll-free at [settlement phone no.]**

17

# Exhibit 6:

Claim Forms and Instructions

## IN RE: BLUE CROSS BLUE SHIELD ANTITRUST LITIGATION (MDL NO. 2406)

### INSTRUCTIONS REGARDING CLAIM FORM FOR THE BLUE CROSS AND BLUE SHIELD ANTITRUST LITIGATION HOSPITAL/FACILITY NET SETTLEMENT FUND

**It is very important that you read the Class Notice in order to fully understand your rights under this Settlement.**

**DEADLINE FOR CLAIM FORM SUBMISSION: Submitted online or postmarked by _____.**

**WE STRONGLY RECOMMEND SUBMITTING YOUR CLAIM FORM ONLINE. IF THAT IS NOT FEASIBLE, PLEASE SUBMIT YOUR CLAIM FOR VIA REGISTERED OR CERTIFIED MAIL AND RETAIN YOUR RECEIPT AND A COPY OF YOUR CLAIM FORM FOR YOUR RECORDS.**

If you validly submit a Claim Form to the Claims Administrator online or postmarked no later than _____ you may elect to receive the portion of the Hospital/Facility Net Settlement Fund to which you are entitled as a Health Care Facility or authorized Health Care System. A Class Member may file only one Claim Form as a Health Care Facility or a Health Care System on behalf of Health Care Facilities.

By submitting a Claim Form you are agreeing to be subject to the jurisdiction of the United States District Court for the Northern District of Alabama for any proceedings relating to your Claim Form. Capitalized terms used in the Instructions and Claim Form that are not otherwise defined herein are defined in the Settlement Agreement. A copy of the Settlement Agreement can be found on [Settlement Website].

**Relevant Definitions**
_____

- "Claimant" - For purposes of the Claim Form for the Hospital/Facility Net Settlement Fund, a Claimant is a Health Care Facility or Health Care System that submits a submits a Claim Form seeking payment from the Health Care Facilities' Settlement Fund.

- "Class Member" is defined in the Settlement Agreement and described in the Class Notice.

- "Health Care Facility" means any facility, such as a hospital, ambulatory surgery center, dialysis center, imaging center or other facility in which health care services are or were delivered to Blue Plan Members.

- "Health Care System" means any association, partnership, corporation or other form of organization that arranges for care to be provided to Blue Plan Members by two or more Health Care Facilities organized under multiple taxpayer identification numbers.

**Submit your completed Claim Form online or mail your completed Claim Form to the Settlement Claims Administrator at:**

**Settlement Claims Administrator**
**P.O. Box [XXXXX]**
**Richmond, VA 23260**

**NOTE: YOU MUST NOTIFY THE CLAIMS ADMINISTRATOR <u>IMMEDIATELY</u> OF ANY CHANGE IN YOUR ADDRESS, TO AVOID HAVING YOUR MAILED CHECK RETURNED TO THE CLAIMS ADMINISTRATOR AND DISTRIBUTED IN ACCORDANCE WITH PARAGRAPH 39 OF THE SETTLEMENT AGREEMENT.**

# IN RE: BLUE CROSS BLUE SHIELD ANTITRUST LITIGATION (MDL NO. 2406)

**INSTRUCTIONS REGARDING CLAIM FORM FOR THE BLUE CROSS AND BLUE SHIELD ANTITRUST LITIGATION HOSPITAL/FACILITY NET SETTLEMENT FUND**

## SECTION-BY-SECTION INSTRUCTIONS

### SECTION A (ALL CLAIMANTS MUST COMPLETE THIS SECTION)

In Section A, please write in the Health Care System or Health Care Facility name and the name of the person completing the Claim Form. If you are representing a Health Care System, <u>attach a list of all the Health Care Facilities for whom you are filing this Claim</u>. Health Care Systems may submit Claim Forms on behalf of multiple Health Care Facilities without providing individual signatures from the Health Care Facilities, if authorized to do so by the Health Care Facilities and the Health Care Facilities do not also submit Claim Forms on their own behalf.

Your list of Health Care Facilities should be set forth on the Rider attached to the Claim Form, and must include all of the following information for each Health Care Facility:

1. Health Care Facility name.
2. Health Care Facility zip code(s).
3. The National Provider Identifier(s) (NPI(s)) associated with the Health Care Facility.
4. The Tax Identification Numbers (TIN(s)) associated with the Health Care Facility.
5. The American Hospital Association ID(s) (AHA ID(s)) associated with the Health Care Facility.
6. The First Date of Service during the period from July 24, 2008 through October 4, 2024.
7. The Last Date of Service during the period from July 24, 2008 through October 4, 2024.
8. Whether the Health Care Facility Provides Inpatient Services, Outpatient Services or both.
9. The time period for which the Claimant is submitting the claim on behalf of the Health Care Facility.

### SECTION B (ALL CLAIMANTS MUST COMPLETE THIS SECTION)

Individual Health Care Facilities and Health Care Systems who submit Claim Forms on behalf of Health Care Facilities are entitled to receive a portion of the Hospital/Facility Net Settlement Fund. The settlement payment attributable to a Health Care Facility will be based upon the allowed amounts determined by all Settling Individual Blue Plans in response to claims for reimbursement for the provision of Covered Services submitted for each Health Care Facility to Settling Individual Blue Plans during the during the time period from July 24, 2008 through October 4, 2024, as reflected in Evidences of Benefits, Remittance Advices, or similar responses to such claims for reimbursement ("Allowed Amounts").

For purposes of determining which box to check in this section:

"Covered Services" means healthcare services, equipment, or supplies covered under an individual's Commercial Health Benefit Product administered by any Settling Individual Blue Plan.

"Commercial Health Benefit Product" means any product or plan providing for the payment or administration of healthcare services (including but not limited to medical, pharmacy, dental, and vision products and services) or expenses through insurance, reimbursement, or other similar healthcare financing mechanism, for Members in the U.S. (however funded, including insured or self-funded) <u>other than</u> a product or plan purchased or offered by a Government Entity, including but not limited to those offered under the Children with Special Health Care Needs Program (CSHCN); Children's Health Insurance Program (CHIP); Civilian Health and Medical Program of the Department of Veteran's Affairs (CHAMPVA); Civilian Health and Medical Program of the Uniformed Services (CHAMPUS); Indian Health Service, Tribal, and Urban Indian Health Plan; Medicaid; Medicare; Medicare Advantage (including but not limited to Medicare Advantage Prescription Drug Plans and Special Needs Plans, including but not limited to Medicare-Medicaid or Dual-Eligible Plans); Medicare Stand-Alone Prescription Drug Plans; Refugee Medical Assistance Program; State Maternal and Child Health Program (MCH); or TriCare.

The Settling Individual Blue Plans are listed in the Settlement Agreement.

## IN RE: BLUE CROSS BLUE SHIELD ANTITRUST LITIGATION (MDL NO. 2406)

**INSTRUCTIONS REGARDING CLAIM FORM FOR THE BLUE CROSS AND BLUE SHIELD ANTITRUST LITIGATION HOSPITAL/FACILITY NET SETTLEMENT FUND**

### SECTION-BY-SECTION INSTRUCTIONS (CONTINUED)

**SECTION B (CONTINUED)**

You should select only ONE of the options in Section B, as described below:

**Option A (the "Default Method")** permits a Health Care System or Health Care Facility to submit the information requested in the Rider attached to the Claim Form **EXCEPT FOR** the estimated Allowed Amounts so that the Claims Administrator can query the claims data available to it to estimate the Health Care System's or Health Care Facility's Allowed Amounts.

IMPORTANT: Please note that Option A (the Default Method) is not available for Health Care Facilities located in Arizona, Iowa, Louisiana, Maryland, New Jersey, South Dakota, Virginia, the District of Columbia and Puerto Rico.

**Option B (the "Alternative Method")** permits a Health Care System or Health Care Facility to submit its own estimated Allowed Amounts, which will be validated by the Settlement Claims Administrator. Estimated Allowed Amounts must be provided for Health Care Facilities not open prior to January 1, 2015. If the Settlement Claims Administrator is unable to validate the Allowed Amounts you have claimed, you may later be required to submit documentation to support your claimed Allowed Amounts.

IMPORTANT: Please note that, if a Health Care System or Health Care Facility is only able to submit their own estimated Allowed Amounts for certain years and not others during the period from July 24, 2008 through October 4, 2024, it should still do so, and the Provider Plaintiffs' experts will extrapolate the Claimant's Allowed Amounts for the other years during this time period, using the Consumer Price Index for hospital and related services.

The Settlement Claims Administrator will make the final decision on any dispute regarding the eligibility of a Claimant to receive payment from the Hospital/Facility Net Settlement Fund or the amount of any such payment.

Any questions about this procedure should be addressed to the Claims Administrator at:

Claims Administrator
P.O. Box [XXXXX]
Richmond, VA 23260

**SECTION C (ALL CLAIMANTS MUST COMPLETE THIS SECTION)**

This Section will dictate to whom the payment is addressed. If you submit a Claim Form on behalf of a Health Care System, the payment will be made to the Health Care System for distribution by the Health Care System to individual Health Care Facilities.

**SECTION D (ALL CLAIMANTS MUST COMPLETE THIS SECTION)**

Read, sign, and date the Certification.

## IN RE: BLUE CROSS BLUE SHIELD ANTITRUST LITIGATION (MDL NO. 2406)

### CLAIM FORM FOR THE BLUE CROSS BLUE SHIELD ANTITRUST LITIGATION HOSPITAL/FACILITY NET SETTLEMENT FUND

You must read the Class Notice and Claim Instructions before completing this Claim Form.

### SECTION A: CLAIMANT INFORMATION - ALL CLAIMANTS MUST COMPLETE THIS SECTION (EITHER THROUGH A HEALTH CARE SYSTEM OR INDIVIDUALLY, BUT **NOT** BOTH).

**Indicate whether the Claimant is a Health Care System or Health Care Facility and complete the information below. Check one only.**

| ☐ **HEALTH CARE SYSTEM** | If Health Care System, please indicate the number of Health Care Facilities for whom you are filing this claim. | |
|---|---|---|

*Health Care System Name* — *National Provider Identifier (NPI)*

*Name and Title of Person Filing* — *Phone Number*

**Health Care System**: Please see Instructions. You must complete the Rider to this Claim Form and provide the required information regarding all Health Care Facilities for which you are filing a claim.

| ☐ **HEALTH CARE FACILITY** | *Health Care Facility Name* |
|---|---|

*National Provider Identifier (NPI)* — *Phone Number*

### Provide the mailing address for the Health Care System or Health Care Facility.

*Address 1* — *Address 2*

*City* — *State* — *Zip Code*

### SECTION B: ALL CLAIMANTS MUST COMPLETE THIS SECTION

| ☐ | By checking the box to the left, I certify that I have reviewed the Class Notice and that the Health Care System or Health Care Facility identified above is, or includes, a Class Member (as described in the Class Notice). |
|---|---|

Check **ONLY ONE** of the boxes below to designate the method that the claimant wishes to determine the Allowed Amounts that will form the basis of this claim.

Option A (the "Default Method") permits a Health Care System or Health Care Facility to submit the information requested in the attached Rider **EXCEPT FOR** the estimated Allowed Amounts so that the Settlement Claims Administrator can query the claims data available to it to estimate the Health Care System's or Health Care Facility's Allowed Amounts.

Option B (the Alternative Method") permits a Health Care System or Health Care Facility to submit its own estimated Allowed Amounts for the time period from July 24, 2008 through October 4, 2024, which will be validated by the Settlement Claims Administrator.

| ☐ | **Option A (the "Default Method")** |
|---|---|

A Health Care System or Health Care Facility that checks Option A must provide all the information requested in the attached Rider **EXCEPT FOR** the estimated Allowed Amounts for each Health Care Facility for which it is submitting a claim.

| ☐ | **Option B (the "Alternative Method")** |
|---|---|

A Health Care System or Health Care Facility that checks Option B must provide all the information requested in the attached Rider **INCLUDING** the estimated Allowed Amounts for each Health Care Facility for which it is submitting a claim. Estimated Allowed Amounts must be provided for Health Care Facilities not open prior to January 1, 2015. If the Settlement Claims Administrator is unable to validate the Allowed Amounts you have claimed, you may later be required to submit documentation to support your claimed Allowed Amounts.

## IN RE: BLUE CROSS BLUE SHIELD ANTITRUST LITIGATION (MDL NO. 2406)

### CLAIM FORM FOR THE BLUE CROSS BLUE SHIELD ANTITRUST LITIGATION HOSPITAL/FACILITY NET SETTLEMENT FUND

### SECTION C: SUBSTITUTE FORM W-9 - ALL CLAIMANTS MUST COMPLETE THIS SECTION

| Enter the Tax Identification Number of the Claimant whose name will appear on any check and related Form-1099. | *Tax Identification Number (TIN)* |
|---|---|

By signing this Claim Form, I certify that:

1.    The number shown on this form above is the correct Tax Identification Number for this claimant; and

2.     The claimant is not subject to backup withholding because the claimant: (a) is exempt from backup withholding, or (b) has not been notified by the Internal Revenue Service (IRS) that the claimant is subject to backup withholding as a result of failure to report all interest or dividends, or (c) the IRS has notified the claimant that the claimant is no longer subject to backup withholding.

NOTE: Backup withholding is extra tax withholding that occurs when a taxpayer has underreported interest or dividends in a previous year. The IRS notifies taxpayers who are subject to backup withholding. If you (the claimant) have been notified by the IRS that you are subject to backup withholding because you have failed to report all interest and dividends on your tax return, you must cross out item 2 above by placing a line through the section.

### SECTION D: ALL CLAIMANTS MUST COMPLETE THIS SECTION

I do declare and certify as follows:

• I am an authorized representative of the Class Member identified above;

• I am not submitting a claim on behalf of any Class Members who have submitted a request to opt out of the Class and Settlement;

• I am not submitting claims on behalf of any Class Members who are submitting separate claims on their own behalf based on the same Covered Services; and

• All of the statements and information provided in this Claim Form are true, correct and complete, to the best of my knowledge.

NOTE:  The Internal Revenue Service does not require your consent to any provision of this document other than the certifications in Section C required to avoid backup withholding.

| *Signature of Claimant* | *Date* |
|---|---|

**Any Claim Form submitted online or postmarked after _____ is not a Valid Claim Form and will be denied by the Claims Administrator.**

**Before submitting your Claim Form, please be sure to:**
• **Complete Section A – Claimant Information**
• **Complete Section B and the attached Rider listing the Health Care Facilities for which you are submitting this Claim Form and listing the required key information.**
• **Complete Section C.**
• **Sign the Certification in Section D.**

**WE STRONGLY RECOMMEND SUBMITTING YOUR CLAIM FORM ONLINE. IF THAT IS NOT FEASIBLE, PLEASE SUBMIT YOUR CLAIM FORM VIA REGISTERED OR CERTIFIED MAIL AND RETAIN YOUR RECEIPT AND A COPY OF YOUR CLAIM FORM FOR YOUR RECORDS.**

**Claim Forms must be sent to the Claims Administrator at P.O. Box [XXXXX], Richmond, VA 23260.**

**If you have any questions, please contact the Claims Administrator by telephone at _____ or by email at _____.**

## RIDER FOR HEALTH CARE SYSTEMS AND HEALTH CARE FACILITIES

*Health Care System or Health Care Facility Name*

*If Health Care System, American Hospital Association System ID Number (AHA System ID) (Optional)*

| *Name and Title of Person Filing* | *Phone Number* |
|---|---|

### List of Health Care Facilities and Key Information For <u>EACH</u> Health Care Facility for Whom You Are Submitting Claims
### (Please attach additional pages of this form, if necessary)

## Health Care Facility Name:

| *Health Care Facility Type* | *Health Care Facility Zip Code* |
|---|---|

| *Billing National Provider Identifier (NPI)* | *Billing Tax ID Number (TIN)* | *AHA ID Number (AHA ID)* |
|---|---|---|

| *First Date of Service During Period from 7/24/2008 to 10/4/2024 (Format: MM/DD/YYYY)* | *Last Date of Service During Period from 7/24/2008 to 10/4/2024 (Format: MM/DD/YYYY)* |
|---|---|

| *Does Facility Provide Inpatient Services (IP), Outpatient Services (OP) or Both?* | *Time Period for Which Claimant is Submitting Claim on behalf of Health Care Facility (Format: MM/DD/YYYY to MM/DD/YYYY)* |
|---|---|

**If you selected Option B ("Alternative Method"), complete the Estimated Allowed Amounts from 7/24/2008 through 10/4/2024, including information for each year, Inpatient Services, and Outpatient Services.**
**If you selected Option A ("Default Method"), you do not need to complete the Estimated Allowed Amounts below.**

| | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 |
|---|---|---|---|---|---|---|---|---|---|
| Inpatient Services (IP) | | | | | | | | | |
| Outpatient Services (OP) | | | | | | | | | |

| | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 | |
|---|---|---|---|---|---|---|---|---|---|
| Inpatient Services (IP) | | | | | | | | | |
| Outpatient Services (OP) | | | | | | | | | |

**To add information for more Health Care Facilities, use the next page. You may print and use extra copies of the next page as many times as needed to submit information for each Health Care Facility. Remember to include all pages with your Claim Form submission.**

DRAFT - FOR FILING PURPOSES

## Health Care Facility Name:

Health Care Facility Type | Health Care Facility Zip Code

Billing National Provider Identifier (NPI) | Billing Tax ID Number (TIN) | AHA ID Number (AHA ID)

First Date of Service During Period from 7/24/2008 to 10/4/2024 (Format: MM/DD/YYYY) | Last Date of Service During Period from 7/24/2008 to 10/4/2024 (Format: MM/DD/YYYY)

Does Facility Provide Inpatient Services (IP), Outpatient Services (OP) or Both? | Time Period for Which Claimant is Submitting Claim on behalf of Health Care Facility (Format: MM/DD/YYYY to MM/DD/YYYY)

**If you selected Option B ("Alternative Method"), complete the Estimated Allowed Amounts from 7/24/2008 through 10/4/2024, including information for each year, Inpatient Services, and Outpatient Services.**
**If you selected Option A ("Default Method"), you do not need to complete the Estimated Allowed Amounts below.**

|  | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 |
|---|---|---|---|---|---|---|---|---|---|
| Inpatient Services (IP) | | | | | | | | | |
| Outpatient Services (OP) | | | | | | | | | |

|  | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 | |
|---|---|---|---|---|---|---|---|---|---|
| Inpatient Services (IP) | | | | | | | | | |
| Outpatient Services (OP) | | | | | | | | | |

## Health Care Facility Name:

Health Care Facility Type | Health Care Facility Zip Code

Billing National Provider Identifier (NPI) | Billing Tax ID Number (TIN) | AHA ID Number (AHA ID)

First Date of Service During Period from 7/24/2008 to 10/4/2024 (Format: MM/DD/YYYY) | Last Date of Service During Period from 7/24/2008 to 10/4/2024 (Format: MM/DD/YYYY)

Does Facility Provide Inpatient Services (IP), Outpatient Services (OP) or Both? | Time Period for Which Claimant is Submitting Claim on behalf of Health Care Facility (Format: MM/DD/YYYY to MM/DD/YYYY)

**If you selected Option B ("Alternative Method"), complete the Estimated Allowed Amounts from 7/24/2008 through 10/4/2024, including information for each year, Inpatient Services, and Outpatient Services.**
**If you selected Option A ("Default Method"), you do not need to complete the Estimated Allowed Amounts below.**

|  | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 |
|---|---|---|---|---|---|---|---|---|---|
| Inpatient Services (IP) | | | | | | | | | |
| Outpatient Services (OP) | | | | | | | | | |

|  | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 | |
|---|---|---|---|---|---|---|---|---|---|
| Inpatient Services (IP) | | | | | | | | | |
| Outpatient Services (OP) | | | | | | | | | |

## IN RE: BLUE CROSS BLUE SHIELD ANTITRUST LITIGATION (MDL NO. 2406)

### INSTRUCTIONS REGARDING CLAIM FORM FOR THE BLUE CROSS AND BLUE SHIELD ANTITRUST LITIGATION PROFESSIONAL NET SETTLEMENT FUND

**It is very important that you read the Class Notice in order to fully understand your rights under this Settlement.**

**DEADLINE FOR CLAIM FORM SUBMISSION: Submitted online or postmarked by _____.**

**WE STRONGLY RECOMMEND SUBMITTING YOUR CLAIM FORM ONLINE. IF THAT IS NOT FEASIBLE, PLEASE SUBMIT YOUR CLAIM FOR VIA REGISTERED OR CERTIFIED MAIL AND RETAIN YOUR RECEIPT AND A COPY OF YOUR CLAIM FORM FOR YOUR RECORDS.**

If you validly submit a Claim Form to the Claims Administrator online or postmarked no later than _____ you may elect to receive the portion of the Professional Net Settlement Fund to which you are entitled as a Medical Professional or authorized Medical Group/Organization. A Class Member may file only one Claim Form as a Medical Professional or Medical Group/Organization on behalf of Medical Professionals.

By submitting a Claim Form you are agreeing to be subject to the jurisdiction of the United States District Court for the Northern District of Alabama for any proceedings relating to your Claim Form. Capitalized terms used in the Instructions and Claim Form that are not otherwise defined herein are defined in the Settlement Agreement. A copy of the Settlement Agreement can be found on www.BCBSProviderSettlement.com and www.WhatleyKallas.com/BCBS-Settlement.

**Relevant Definitions**

- "Claimant" - For purposes of the Claim Form for the Professional Net Settlement Fund, a Claimant is a Medical Group, Medical Organization or Medical Professional who submits a Claim Form seeking payment from the Professional Net Settlement Fund.

- "Class Member" is defined in the Settlement Agreement and described in the Class Notice.

- "Medical Group" means two or more Medical Professionals, and those claiming by or through them, who practice under a single taxpayer identification number.

- "Medical Organization" means any association, partnership, corporation or other form of organization (including without limitation independent practice associations and physician hospital organizations), that arranges for care to be provided to Blue Plan Members by Medical Professionals organized under multiple taxpayer identification numbers.

- "Medical Professional" means any individual Provider, as defined in the Settlement Agreement.

**Submit your completed Claim Form online or mail your completed Claim Form to the Settlement Claims Administrator at:**

**Settlement Claims Administrator**
**P.O. Box [XXXXX]**
**Richmond, VA 23260**

**NOTE: YOU MUST NOTIFY THE CLAIMS ADMINISTRATOR <u>IMMEDIATELY</u> OF ANY CHANGE IN YOUR ADDRESS, TO AVOID HAVING YOUR MAILED CHECK RETURNED TO THE CLAIMS ADMINISTRATOR AND DISTRIBUTED IN ACCORDANCE WITH PARAGRAPH 39 OF THE SETTLEMENT AGREEMENT.**

## IN RE: BLUE CROSS BLUE SHIELD ANTITRUST LITIGATION (MDL NO. 2406)

### INSTRUCTIONS REGARDING CLAIM FORM FOR THE BLUE CROSS AND BLUE SHIELD ANTITRUST LITIGATION PROFESSIONAL NET SETTLEMENT FUND

### SECTION-BY-SECTION INSTRUCTIONS

#### SECTION A (ALL CLAIMANTS MUST COMPLETE THIS SECTION)

**MEDICAL GROUP/ORGANIZATION:** If you are representing a Medical Group/Organization, in Section A, please write in the Medical Group/Organization name, the name of the person completing the Claim Form, and attach a list of all the Medical Professionals for whom you are filing this Claim. Medical Groups/Organizations may submit Claim Forms on behalf of Medical Professionals employed by or working with them without providing individual signatures from the Medical Professionals, if authorized to do so by the Medical Professionals and if the Medical Professionals do not also submit Claim Forms on their own behalf.

Your list of Medical Professionals should be set forth on the Rider attached to the Claim Form, and must include all of the following information for each Medical Professional:

**1.** Medical Professional name.

**2.** Medical Professional Type (e.g., MD, DO, PT, chiropractor, etc.).

**3.** Whether or not the Medical Professional was licensed before January 31, 2009.

**4.** The National Provider Identifier(s) (NPI(s)) associated with the Medical Professional (if applicable).

**5.** The Tax Identification Number(s) (TIN(s)) associated with the Medical Professional (if applicable) or last four digits of the Social Security Number (SSN).

**6.** The time period for which the Claimant is submitting the claim on behalf of the Medical Professional.

**7.** Range of allowed amounts determined by all settling Blue Plans in response to claims for reimbursement submitted for each Medical Professional to settling Blue Plans during the during the time period from July 24, 2008 through October 4, 2024, as reflected in Evidences of Benefits, Remittance Advices, or similar responses to such claims for reimbursement ("Allowed Amounts").

#### SECTION B (ALL CLAIMANTS MUST COMPLETE THIS SECTION)

Individual Medical Professionals and Medical Groups/Organizations who submit Claim Forms on behalf of Medical Professionals are entitled to receive a portion of the Professional Net Settlement Fund. The settlement payment attributable to a Medical Professional will be based upon the Allowed Amounts determined by Settling Individual Blue Plans for that Medical Professional's provision of Covered Services to Settling Individual Blue Plan Members during the time period from July 24, 2008 through October 4, 2024. For purposes of determining which box to check in this section, "Blue Plan" means any of the settling Blue Plans listed in the Class Notice.

For purposes of determining which box to check in this section:

"Covered Services" means healthcare services, equipment, or supplies covered under an individual's Commercial Health Benefit Product administered by any Settling Individual Blue Plan.

"Commercial Health Benefit Product" means any product or plan providing for the payment or administration of healthcare services (including but not limited to medical, pharmacy, dental, and vision products and services) or expenses through insurance, reimbursement, or other similar healthcare financing mechanism, for Members in the U.S. (however funded, including insured or self-funded) other than a product or plan purchased or offered by a Government Entity, including but not limited to those offered under the Children with Special Health Care Needs Program (CSHCN); Children's Health Insurance Program (CHIP); Civilian Health and Medical Program of the Department of Veteran's Affairs (CHAMPVA); Civilian Health and Medical Program of the Uniformed Services (CHAMPUS); Indian Health Service, Tribal, and Urban Indian Health Plan; Medicaid; Medicare; Medicare Advantage (including but not limited to Medicare Advantage Prescription Drug Plans and Special Needs Plans, including but not limited to Medicare-Medicaid or Dual-Eligible Plans); Medicare Stand-Alone Prescription Drug Plans; Refugee Medical Assistance Program; State Maternal and Child Health Program (MCH); or TriCare.

The Settling Individual Blue Plans are listed in the Class Notice.

## IN RE: BLUE CROSS BLUE SHIELD ANTITRUST LITIGATION (MDL NO. 2406)

### INSTRUCTIONS REGARDING CLAIM FORM FOR THE BLUE CROSS AND BLUE SHIELD ANTITRUST LITIGATION PROFESSIONAL NET SETTLEMENT FUND

#### SECTION-BY-SECTION INSTRUCTIONS (CONTINUED)

**SECTION B (CONTINUED)**

You should check ONE of the boxes in Section B, as described below:

**Box I**: Medical Professionals who had total Allowed Amounts of less than or equal to $250,000 during the time period from July 24, 2008 through October 4, 2024, should check **Box I**, and will be assigned one (1) "Point" to be used to calculate their settlement payment.

**Box II**: Medical Professionals who had Allowed Amounts of more than $250,000, and less than or equal to $500,000 during the time period from July 24, 2008 through October 4, 2024, should check **Box II**, and will be assigned two (2) Points to be used to calculate their settlement payment.

**Box III**: Medical Professionals who had Allowed Amounts of more than $500,000, and less than or equal to $750,000 during the time period from July 24, 2008 through October 4, 2024, should check **Box III**, and will be assigned three (3) Points to be used to calculate their settlement payment.

**Box IV**: Medical Professionals who had Allowed Amounts of more than $750,000, and less than or equal to $1,000,000 during the time period from July 24, 2008 through October 4, 2024, should check **Box IV**, and will be assigned four (4) Points to be used to calculate their settlement payment.

**Box V**: Medical Professionals who had Allowed Amounts of more than $1,000,000 during the time period from July 24, 2008 through October 4, 2024, should check **Box V**, and will be assigned five (5) Points to be used to calculate their settlement payment.

To simplify the process of obtaining payment from the Professional Net Settlement Fund, Claimants submitting Claim Forms on behalf of Medical Professionals may check one of the boxes described above in Section B and submit their Claim Forms to the Settlement Claims Administrator <u>without any additional documentation</u>. (The Settlement Claims Administrator may request more information after a claim is submitted.) The amount of the Professional Net Settlement Fund attributable to each Medical Professional shall be determined based upon the certification of the Claimant as to the applicable range of Allowed Amounts.

As further explained in the Class Notice, each Medical Professional for which a Claimant submits a claim will also be assigned a number of "Adjusted Points" equal to the points that correspond to that Medical Professional's range of Allowed Amounts, multiplied by a number based on the coefficient for the state in which the Medical Professional is located, as shown in the table below:

| Harm Coefficients | Points Multiplier |
|---|---|
| Less than 2 | 1 |
| 2 to 3 | 2.5 |
| 3 to 4 | 3.5 |
| 4 to 5 | 4.5 |
| 5 or higher | 5.3 |

The settlement payment to be made for each Medical Professional for which a Claimant submits a claim will be determined based on the following payment formula:

| Medical Professionals' Payment Formula |
|---|
| NPI or TIN Adjusted Points ÷ Total Adjusted Points for All Medical Professionals Who Filed Claims × Professional Net Settlement Fund |

The Settlement Claims Administrator will make the final decision on any dispute regarding the eligibility of a Claimant to receive payment from the Professional Net Settlement Fund or the amount of any such payment.

# IN RE: BLUE CROSS BLUE SHIELD ANTITRUST LITIGATION (MDL NO. 2406)

## INSTRUCTIONS REGARDING CLAIM FORM FOR THE BLUE CROSS AND BLUE SHIELD ANTITRUST LITIGATION PROFESSIONAL NET SETTLEMENT FUND

### SECTION-BY-SECTION INSTRUCTIONS (CONTINUED)

**SECTION B (CONTINUED)**

Any questions about this procedure should be addressed to the Claims Administrator at:

Claims Administrator
P.O. Box [XXXXX]
Richmond, VA 23260

**SECTION C (ALL CLAIMANTS MUST COMPLETE THIS SECTION)**

This Section will dictate to whom the payment is addressed. If you submit a Claim Form on behalf of a Medical Group/Organization, the payment will be made to the Medical Group/Organization for distribution by the Medical Group/Organization to individual Medical Professionals.

**SECTION D (ALL CLAIMANTS MUST COMPLETE THIS SECTION)**

Read, sign, and date the Certification.

## IN RE: BLUE CROSS BLUE SHIELD ANTITRUST LITIGATION (MDL NO. 2406)

### CLAIM FORM FOR THE BLUE CROSS BLUE SHIELD ANTITRUST LITIGATION
### PROFESSIONAL NET SETTLEMENT FUND

You must read the Class Notice and Claim Instructions before completing this Claim Form.

### SECTION A: CLAIMANT INFORMATION - ALL CLAIMANTS MUST COMPLETE THIS SECTION (EITHER THROUGH A MEDICAL GROUP/ORGANIZATION OR INDIVIDUALLY, BUT **NOT** BOTH).

**Indicate whether the Claimant is a Medical Group/Organization or an Individual Medical Professional and complete the information below. Check one.**

| ☐ **MEDICAL GROUP/ORGANIZATION** | If Medical Group/Organization, please indicate the number of medical professionals for whom you are filing this claim. | |
|---|---|---|

| *Medical Group or Organization Name* | *National Provider Identifier (NPI, if applicable)* |
|---|---|

| *Name and Title of Person Filing* | *Phone Number* |
|---|---|

**Medical Groups/Organizations**: Please see Instructions. You must complete the Rider to this Claim Form and provide the required information regarding medical all professionals for which you are filing a claim.

| ☐ **INDIVIDUAL MEDICAL PROFESSIONAL** | *Please Indicate Your Medical Professional Type* |
|---|---|

| *Name of Medical Professional* | *National Provider Identifier (NPI)* |
|---|---|

| *Name of Representative (if Medical Professional is Deceased)* | *Phone Number* |
|---|---|

**Were you first licensed to practice before January 31, 2009?** ☐ Yes ☐ No

If you are the legal heir or representative of a deceased Class Member, you must attach documentation including a death certificate and letters of administration for an estate to confirm your status. The Tax I.D. requested in Section C is that of the heir or estate.

**Provide the mailing address for the Medical Group/Organization or Individual Medical Professional.**

| *Address 1* | *Address 2* |
|---|---|

| *City* | *State* | *Zip Code* |
|---|---|---|

### SECTION B: ALL CLAIMANTS MUST COMPLETE THIS SECTION

| ☐ | By checking the box to the left, I certify that I have reviewed the Class Notice and that I am a Class Member (as described in the Class Notice). |
|---|---|

Check **ONLY ONE** of the boxes below or on the next page to designate the range of Allowed Amounts that are the basis of this claim. **Medical Groups/Organizations must complete the Rider attached to this Claim Form** (or attach a list in substantially the same form) that designates the range of Allowed Amounts for each Medical Professional for which this Claim Form is being submitted rather than check any boxes below.

| ☐ | By checking this box, I certify that my total Allowed Amounts during the time period from July 24, 2008 through October 4, 2024 were less than or equal to $250,000. |
|---|---|
| ☐ | By checking this box, I certify that my Allowed Amounts during the time period from July 24, 2008 through October 4, 2024 were more than $250,000 but less than or equal to $500,000. |

## IN RE: BLUE CROSS BLUE SHIELD ANTITRUST LITIGATION (MDL NO. 2406)

### CLAIM FORM FOR THE BLUE CROSS BLUE SHIELD ANTITRUST LITIGATION PROFESSIONAL NET SETTLEMENT FUND

### SECTION B (CONTINUED)

| | |
|---|---|
| ☐ | By checking this box, I certify that my Allowed Amounts during the time period from July 24, 2008 through October 4, 2024 were more than $500,000 but less than or equal to $750,000. |
| ☐ | By checking this box, I certify that my Allowed Amounts during the time period from July 24, 2008 through October 4, 2024 were more than $750,000 but less than or equal to $1,000,000. |
| ☐ | By checking this box, I certify that my Allowed Amounts during the time period from July 24, 2008 through October 4, 2024 were more than $1,000,000. |

*Reminder: Although claimants are not required to calculate exact Allowed Amounts, a good-faith estimate is required. Knowingly certifying Allowed Amounts without a good-faith basis may result in denial of the claim.*

### SECTION C: SUBSTITUTE FORM W-9 - ALL CLAIMANTS MUST COMPLETE THIS SECTION

Enter the Social Security Number or Employer Identification Number of the Claimant whose name will appear on any check and related Form-1099. For individuals, this is your Social Security Number (SSN). For Medical Groups/ Organizations, this is your Employer Identification Number (EIN).

| *Social Security Number (SSN, Format XXX-XX-XXXX)* | *Employer Identification Number (EIN, Format XX-XXXXXXX)* |
|---|---|
| | |

By signing this Claim Form, I certify that:

1. The number shown on this form above is the correct Social Security Number or Employer Identification Number for this Claimant; and

2. The Claimant is not subject to backup withholding because the Claimant: (a) is exempt from backup withholding, or (b) has not been notified by the Internal Revenue Service (IRS) that the Claimant is subject to backup withholding as a result of failure to report all interest or dividends, or (c) the IRS has notified the Claimant that the Claimant is no longer subject to backup withholding.

NOTE: Backup withholding is extra tax withholding that occurs when a taxpayer has underreported interest or dividends in a previous year. The IRS notifies taxpayers who are subject to backup withholding. If you (the Claimant) have been notified by the IRS that you are subject to backup withholding because you have failed to report all interest and dividends on your tax return, you must cross out item 2 above by placing a line through the section.

### SECTION D: ALL CLAIMANTS MUST COMPLETE THIS SECTION

I do declare and certify as follows:

• I am an authorized representative of the Class Member identified above;

• I am not submitting a claim on behalf of any Class Members who have submitted a request to opt out of the Class and Settlement;

• I am not submitting claims on behalf of any Class Members who are submitting separate claims on their own behalf based on the same Covered Services; and

• All of the statements and information provided in this Claim Form are true, correct and complete, to the best of my knowledge.

NOTE: The Internal Revenue Service does not require your consent to any provision of this document other than the certifications in Section C required to avoid backup withholding.

| *Signature of Claimant* | *Date* |
|---|---|
| | |

# IN RE: BLUE CROSS BLUE SHIELD ANTITRUST LITIGATION (MDL NO. 2406)

## CLAIM FORM FOR THE BLUE CROSS BLUE SHIELD ANTITRUST LITIGATION PROFESSIONAL NET SETTLEMENT FUND

**Any Claim Form submitted online or postmarked after _____ is not a Valid Claim Form and will be denied by the Claims Administrator.**

**Before submitting your Claim Form, please be sure to:**

- **Complete Section A – Claimant Information**

- **Complete Section B and the attached Rider listing the Health Care Facilities for which you are submitting this Claim Form  and listing the required key information.**

- **Complete Section C.**

- **Sign the Certification in Section D.**

**WE STRONGLY RECOMMEND SUBMITTING YOUR CLAIM FORM ONLINE. IF THAT IS NOT FEASIBLE, PLEASE SUBMIT YOUR CLAIM FOR VIA REGISTERED OR CERTIFIED MAIL AND RETAIN YOUR RECEIPT AND A COPY OF YOUR CLAIM FORM FOR YOUR RECORDS.**

**Claim Forms must be sent to the Settlement Claims Administrator at P.O. Box [XXXXX], Richmond, VA 23260.**

**If you have any questions, please contact the Claims Administrator by telephone at _____ or by email at _____.**

**<u>Medical Groups/Organizations</u>: You must complete the Rider on the next page and provide the required information regarding medical all professionals for which you are filing a claim.**

## RIDER FOR MEDICAL GROUPS/ORGANIZATIONS THAT ARE FILING CLAIMS ON BEHALF OF MEDICAL PROFESSIONALS

*Medical Group or Organization Name*

| *Name and Title of Person Filing* | *Phone Number* |
|---|---|

### List of Individual Medical Professionals and Key Information, For <u>EACH</u> Medical Professional for Whom You Are Submitting Claims
### (Please attach additional pages of this form, if necessary)

#### Medical Professional Name:

*Medical Professional Type*

### Was Medical Professional Licensed Prior to January 31, 2009?  ☐ Yes  ☐ No

| *National Provider Identifier (NPI, if applicable)* | *Tax Identification Number (TIN) or Last Four Digits of Social Security Number (SSN)* |
|---|---|
| *Time Period for Which Claimant is Submitting Claim on behalf of Medical Professional (Format: MM/DD/YYYY to MM/DD/YYYY)* | *Points Based on Range of Allowed Amounts (1, 2, 3, 4, or 5)* |

#### Medical Professional Name:

*Medical Professional Type*

### Was Medical Professional Licensed Prior to January 31, 2009?  ☐ Yes  ☐ No

| *National Provider Identifier (NPI, if applicable)* | *Tax Identification Number (TIN) or Last Four Digits of Social Security Number (SSN)* |
|---|---|
| *Time Period for Which Claimant is Submitting Claim on behalf of Medical Professional (Format: MM/DD/YYYY to MM/DD/YYYY)* | *Points Based on Range of Allowed Amounts (1, 2, 3, 4, or 5)* |

### To add information for more Medical Group/Organizations, use the next page.  You may print and use extra copies of the next page as many times as needed to submit information for each Medical Group/Organization.  Remember to include all pages with your Claim Form submission.

## Medical Professional Name:

*Medical Professional Type*

**Was Medical Professional Licensed Prior to January 31, 2009?**  ☐ **Yes**  ☐ **No**

| *National Provider Identifier (NPI, if applicable)* | *Tax Identification Number (TIN) or Last Four Digits of Social Security Number (SSN)* |
|---|---|
| *Time Period for Which Claimant is Submitting Claim on behalf of Medical Professional (Format: MM/DD/YYYY to MM/DD/YYYY)* | *Points Based on Range of Allowed Amounts (1, 2, 3, 4, or 5)* |

## Medical Professional Name:

*Medical Professional Type*

**Was Medical Professional Licensed Prior to January 31, 2009?**  ☐ **Yes**  ☐ **No**

| *National Provider Identifier (NPI, if applicable)* | *Tax Identification Number (TIN) or Last Four Digits of Social Security Number (SSN)* |
|---|---|
| *Time Period for Which Claimant is Submitting Claim on behalf of Medical Professional (Format: MM/DD/YYYY to MM/DD/YYYY)* | *Points Based on Range of Allowed Amounts (1, 2, 3, 4, or 5)* |

## Medical Professional Name:

*Medical Professional Type*

**Was Medical Professional Licensed Prior to January 31, 2009?**  ☐ **Yes**  ☐ **No**

| *National Provider Identifier (NPI, if applicable)* | *Tax Identification Number (TIN) or Last Four Digits of Social Security Number (SSN)* |
|---|---|
| *Time Period for Which Claimant is Submitting Claim on behalf of Medical Professional (Format: MM/DD/YYYY to MM/DD/YYYY)* | *Points Based on Range of Allowed Amounts (1, 2, 3, 4, or 5)* |