IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

|  |  |
|---|---|
| IN RE:<br>BLUE CROSS BLUE SHIELD<br>ANTITRUST LITIGATION<br>(MDL NO. 2406) | )<br>)    Master File No. 2:13-CV-20000-RDP<br>)<br>)<br>)<br>)<br>) |

## OUT-OF-NETWORK EMERGENCY MEDICAL PROVIDER GROUPS' OBJECTION TO PRELIMINARY APPROVAL OF PROPOSED CLASS SETTLEMENT AND MOTION FOR 30-DAY CONTINUANCE OF PRELIMINARY APPROVAL HEARING

Non-party out-of-network emergency medicine providers Bradford Emergency Group, LLC; Columbia Emergency Group, LLC; Duval Emergency Group, LLC; Lake Wales Emergency Physicians, LLC; Lake Oliver Emergency Group, LLC; Melbourne Emergency Group, LLC; NW Florida Emergency Physicians, LLC; Polk Emergency Group, LLC; Ridgewood Emergency Group, LLC; Rockledge Emergency Group, LLC; Sterling Emergency Services of Miami Beach, P.A.; Suwannee Emergency Group, LLC; Western Virginia Regional Emergency Physicians, LLC; Lake Spring Emergency Group, LLC; Wildwood Emergency Group, LLC; Ingleside Emergency Group, LLC; and Kingsford Emergency Group, LLC (collectively, "Out-of-Network ER Groups"), by and through their undersigned counsel, respectfully submit this OBJECTION to the class action Plaintiffs' motion for a preliminary approval of the settlement reached between the Class Plaintiffs and Defendant health insurance plans affiliated with the Blue Cross Blue Shield Association ("Blue Plans"), and request to continue the hearing on the motion for preliminary approval by thirty (30) days to give the Out-of-Network ER Groups sufficient time to fully evaluate the terms and fairness of the settlement agreement as it pertains to the Out-of-Network ER Groups and other similarly situated, including providers who have other pending litigation against certain

Blue Plans yet have not been represented in the negotiations of the settlement of otherwise in this litigation. According to Plaintiffs' counsel, all of the named plaintiffs are in-network providers. The proposed class definition includes, however, not just in-network providers, but also out-of-network providers, including emergency medicine services providers. As described below, the record lacks a sufficient showing of typicality because of the unique rights and interests of out-of-network emergency services providers or the adequacy of the named plaintiffs to represent the interests of out-of-network emergency services providers.

***None of the Named Plaintiffs is an Out-of-Network Emergency Medicine Services Provider.***

1. Plaintiffs' counsel has confirmed that none of the members of the proposed class is an out-of-network emergency medicine services provider.

2. Each of the Out-of-Network ER Groups and certain of their affiliates contract with hospitals across the United States to staff those hospitals' emergency departments with physicians and other clinical providers. Each of the Out-of-Network ER Groups coordinates the billing of its contracted healthcare providers for emergency medical services.

3. Healthcare providers such as Out-of-Network ER Groups' contracted providers are generally classified as either "in-network" providers who have negotiated rates with a health insurance company such as the Blue Plans, or "out-of-network" providers who submit billed charges at their usual and customary rates and are paid pursuant to applicable provisions in the Blue Plans' members' health insurance plans and applicable federal and state laws.

4. None of the Out-of-Network ER Groups has a contract for negotiated rates with pertinent Blue Plans, and their healthcare providers are therefore "out-of-network" providers with respect to the Blue Plans for the emergency medical services at issue.

5. Importantly, at least as a general matter, rates paid to out-of-network providers are or should be higher than the negotiated rates for similar services paid to in-network providers who may benefit instead from an in-network status that attracts insureds and the certainty of rates.

6. Out-of-Network ER Groups are uniquely situated compared to out-of-network providers of non-emergency medical services and from other out-of-network providers because, pursuant to the Emergency Medical Treatment and Labor Act, 42 U.S.C. 1395dd *et seq.* ("EMTALA") and similar applicable state laws, the services provided by Out-of-Network ER Groups were *mandatory* and rendered to meet such legal requirements as related to the conditions for which each of the Blue Plans' members presented in the Out-of-Network ER Groups ER Groups' contracted facilities. In other words, the Out-of-Network ER Groups are and were required by law to provide emergency medical services to the Blue Plans' members regardless of whether those patients had insurance under a health plan for which any given provider was an in-network provider or an out-of-network provider.

7. Conversely, Blue Plans did not have the ability to prevent its members from seeking emergency treatment at the hospitals where the Out-of-Network ER Groups provide emergency medical services, despite the Out-of-Network ER Groups' healthcare providers' out-of-network status.

8. The Out-of-Network ER Groups have pending litigation against certain Blue Plans in Virginia and Florida seeking significant reimbursement for underpayments for out-of-network emergency medical services under various quasi-contract and statutory legal theories. The Out-of-Network ER Groups are not alone in their efforts to require the Blue Plans to adequately reimburse providers for the unique circumstances of out-of-network emergency medical services. For example, a Louisiana jury just recently awarded more than $420 million in underpayments for a

similarly situated out-of-network provider against a Blue Plan affiliate in Louisiana.[1]

9. The record does not support the typicality of claims when comparing those of the named plaintiffs with those of out-of-network emergency medicine services providers. Similarly, the record does not support the adequacy of the named plaintiffs to represent the interests of out-of-network emergency services providers.

***Out-of-Network ER Groups' Interests are Not Fully Aligned with Class Plaintiffs.***

10. The Out-of-Network ER Groups only recently became aware of the proposed settlement in this case and promptly took steps to understand the proposed terms, the class definition and the scope of releases. After being invited to an informational telephone call that occurred on Monday, November 11, 2024, counsel for the objecting parties held two additional calls yesterday and today with Plaintiffs' counsel seeking an agreed-upon continuance and further information. Instead, the calls raised significant concerns, but not any agreed-upon continuance of this hearing.

11. For example, the Out-of-Network ER Groups have learned that despite the broad class definition set forth in the proposed settlement agreement and despite the existence of material differences between the nature of in-network and out-of-network services, *none* of the named class plaintiffs are out-of-network medicine providers with respect to the Blue Plans, much less *emergency* medicine providers. *See, e.g., Downey Surgical Clinic, Inc. v. Ingenix, Inc.*, No. CV09-5457 PSG (JCX), 2015 WL 12645755, at *7 (C.D. Cal. Nov. 10, 2015) (distinguishing in-network from out-of-network providers of ambulatory surgery services in the settlement class definition); *Edwards v. Horizon Blue Cross Blue Shield of New Jersey*, No. 08-CV-6160(KM), 2018 WL

---

[1] *St. Charles Surgical v. BCBSLA*, Case No. 2017-1095.

10133574, at *2 (D.N.J. June 29, 2018) (analyzing whether interests of certain subclasses that were allegedly under-reimbursed for out-of-network services were antagonistic to those of the class).

12. In discussions with Plaintiffs' counsel in advance of filing this objection, class counsel refused to identify, based on claims of confidentiality, any out-of-network providers who had involvement in negotiating the settlement agreement and the releases. Plaintiffs' counsel responded, however, that he was not aware of any out-of-network emergency medicine services provider who participated in the negotiations.

13. In addition, the Out-of-Network ER Groups have learned that the proposed settlement payment plan of distribution is based largely on allowed amounts *determined by Blue Plans* which apparently do not take into account the distinction between in-network and out-of-network rates, much less rates that should be paid for out-of-network *emergency* services. In addition, the rate data may draw too much from the Blue Plans' internal reimbursement data, which is particularly prejudicial to out-of-network providers. Like many other similarly situated out-of-network emergency medicine providers who have not had a seat at the negotiating table, the Out-of-Network ER Groups should be entitled to gain a full understanding of the damages model and to test the rates at issue before any settlement is preliminary approved.

14. The Out-of-Network ER Groups' concerns are compounded by the fact that certain of their affiliates in certain states are *in-network* with certain Blue Plans which makes those affiliates' interests more aligned with the class representatives but could potentially compromise the Out-of-Network ER Groups' litigation claims even if the Out-of-Network ER Groups were to opt-out of the class settlement.

**Opt-Out Rights Are Inadequate Here to Prevent Unfair Prejudice.**

15. The Blue Plans have come to the settlement table to resolve not just in-network

providers' claims, but also out-of-network providers' claims. The record reflects serious questions about whether the settlement has been negotiated in a way to protect the interests of out-of-network providers, particularly out-of-network emergency services providers.

16. In particular, the broad releases set forth in the settlement agreement expressly include "affiliated companies" of any releasor providers. *See* ECF No. 3192-2 at 24. Thus, under the proposed current language of the releases, if any in-network affiliates of the Out-of-Network ER Groups were to participate in the settlement, significant concerns exist that such participation could unwittingly release or otherwise undermine existing claims against Blue Plans by non-participating providers such as the Out-of-Network ER Groups.

17. A continuance of 30-days for a preliminary approval hearing could save time in the long run by fixing issues before they are compounded through a notice process.

18. Allowing a brief continuance of thirty (30) days for Out-of-Network ER Groups to confer with counsel for the parties to better understand and analyze the proposed settlement, and to potentially implement their concerns, will be far more efficient than potentially litigating a substantive objection later in the Court approval process. The relatively brief continuance of the preliminary approval hearing that the Out-of-Network ER Groups seek by this filing will promote efficiency and conserve judicial and party resources. A thirty-day extension is relatively minimal in a case that has been pending for over a decade and may help reach earlier finality by addressing outstanding issues now to avoid repeating notice processes.

WHEREFORE, based on the foregoing, the Out-of-Network ER Groups respectfully request that the Court deny without prejudice Provider Plaintiffs' Motion for Preliminary Approval of Proposed Class Settlement (ECF No. 3192) or continue the hearing on the Motion for Preliminary Approval by thirty (30) days.

Dated:  November 13, 2024                    Respectfully submitted,

/s/Christopher L. Albright
Christopher L. Albright
Porterfield, Harper, Mills, Motlow & Ireland, P.A.
22 Inverness Center Parkway, Suite 600
Birmingham, Alabama 35242
Ph.: (205) 980-5000
albright@phm-law.com


Of counsel:

Barry S. Pollack (BBO#642064)
Phillip Rakhunov (BBO#663746)
POLLACK SOLOMON DUFFY LLP
31 St. James Avenue, Suite 940
Boston MA 02116
(617) 439-9800
bpollack@psdfirm.com
prakhunov@psdfirm.com

**CERTIFICATE OF SERVICE**

  I hereby certify that on November 13, 2024, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                         /s/Christopher L. Albright