**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

|  |  |  |
|---|---|---|
| | **)** | |
| | **)** | **Master File No. 2:13-CV-20000-RDP** |
| **IN RE:** | **)** | |
| **BLUE CROSS BLUE SHIELD** | **)** | |
| **ANTITRUST LITIGATION** | **)** | |
| **(MDL NO. 2406)** | **)** | |
| | **)** | |

*AMENDED* **OUT-OF-NETWORK EMERGENCY MEDICAL PROVIDER GROUPS'
OBJECTION TO PRELIMINARY APPROVAL OF PROPOSED CLASS SETTLEMENT**

Non-party out-of-network emergency medicine providers Bradford Emergency Group,

LLC; Columbia Emergency Group, LLC; Duval Emergency Group, LLC; Lake Wales Emergency

Physicians, LLC; Lake Oliver Emergency Group, LLC; Melbourne Emergency Group, LLC; NW

Florida Emergency Physicians, LLC; Polk Emergency Group, LLC; Ridgewood Emergency

Group, LLC; Rockledge Emergency Group, LLC; Sterling Emergency Services of Miami Beach,

P.A.; Suwannee Emergency Group, LLC; Western Virginia Regional Emergency Physicians,

LLC; Lake Spring Emergency Group, LLC; Wildwood Emergency Group, LLC; Ingleside

Emergency Group, LLC; and Kingsford Emergency Group, LLC (collectively, "Out-of-Network

ER Groups"), by and through their undersigned counsel, respectfully submit this AMENDED

OBJECTION to the class action Plaintiffs' motion for a preliminary approval of the settlement

reached between the Class Plaintiffs and Defendant health insurance plans affiliated with the Blue

Cross Blue Shield Association ("Blue Plans").

Counsel for the Out-Of-Network ER Groups have conferred multiple times with counsel

of record for Plaintiffs and Defendants, and the Neutral, which provided for a useful exchange of

information, but did not resolve the objections. The Out-of-Network ER Groups have given notice

to Plaintiffs and Defendants that they planned to submit these Amended Objections, have agreed to any continuance Plaintiffs or Defendants may seek for a response, and provided a redlined comparison of the amendments herein, a copy of which is attached hereto as Exhibit A.

According to Plaintiffs' counsel, all of the named class Plaintiffs are in-network providers. The proposed class definition includes, however, not just in-network providers, but also out-of-network providers, including emergency medicine services providers. As described below, the record lacks a sufficient showing of (1) typicality because of the unique rights and interests of out-of-network emergency services providers, or (2) the adequacy of the named plaintiffs to represent the interests of out-of-network emergency services providers.

Nevertheless, proposed findings are contained herein that could resolve these objections. The gist of the bargain underlying the settlement does not appear to require releases of the pertinent claims by the Out-of-Network ER Groups that arise from statutory rights, regulatory rights, duties implied-by-law from the subscriber-plan and surrounding circumstances, or related common law theories seeking relief for underpayments. Unfortunately, the release language is not sufficiently clear to prevent confusion if the Blue Plans raise the release as a defense in pending state court actions and efforts to enforce arbitration rights and awards for underpaid claims.

***None of the Named Plaintiffs is an Out-of-Network Emergency Medicine Services Provider.***

1.      Plaintiffs' counsel has confirmed that none of the members of the proposed class is an out-of-network emergency medicine services provider.

2.      Each of the Out-of-Network ER Groups and certain of their affiliates contract with (or contracted with during the relevant timeframe) hospitals and healthcare systems across the United States to staff those hospitals' emergency departments with physicians and other clinical providers. Each of the Out-of-Network ER Groups coordinates the billing of its contracted

healthcare providers for emergency medical services.

3.      Healthcare providers, such as Out-of-Network ER Groups' contracted providers, are generally classified as either "in-network" providers who have negotiated rates with a health insurance company such as the Blue Plans, or "out-of-network" providers who submit billed charges at their usual and customary rates and are paid pursuant to applicable provisions in the Blue Plans' members' health insurance plans and applicable federal and state laws.

4.      None of the Out-of-Network ER Groups has a contract for negotiated rates with pertinent Blue Plans, and their healthcare providers are therefore "out-of-network" providers with respect to the Blue Plans for the emergency medical services at issue.

5.      Importantly, at least as a general matter, rates paid to out-of-network providers are or should be higher than the negotiated rates for similar services paid to in-network providers who may benefit instead from an in-network status that attracts insureds and the certainty of rates.

6.      Out-of-Network ER Groups are uniquely situated compared to out-of-network providers of non-emergency medical services and from other out-of-network providers because, pursuant to the Emergency Medical Treatment and Labor Act, 42 U.S.C. 1395dd *et seq.* ("EMTALA") and similar applicable state laws, the services provided by Out-of-Network ER Groups were *mandatory* and rendered to meet such legal requirements as related to the conditions for which each of the Blue Plans' members presented in the Out-of-Network ER Groups ER Groups' contracted facilities. In other words, the Out-of-Network ER Groups are and were required by law to provide emergency medical services to the Blue Plans' members regardless of whether those patients had insurance under a health plan for which any given provider was an in-network provider or an out-of-network provider.

3

7.      Conversely, Blue Plans did not have the ability to prevent its members from seeking emergency treatment at the hospitals where the Out-of-Network ER Groups provide emergency medical services, despite the Out-of-Network ER Groups' healthcare providers' out-of-network status.

8.      The Out-of-Network ER Groups have pending litigation against certain Blue Plans in Virginia and Florida seeking significant reimbursement for underpayments for out-of-network emergency medical services under various quasi-contract and statutory legal theories. A copy of the operative complaints from these actions are attached hereto as Exhibits B and C. These are being submitted not as a predicate of this action, but only for purposes of the objections herein. Other actions are pending in Texas and North Carolina, which involves claims brought by out-of-network emergency medicine groups that share a common management services provider, which is expected to cause Defendants to treat the provider groups as affiliates of the Out-of-Network ER Groups.

9.      These Out-of-Network ER Groups are not alone in their efforts to require the Blue Plans to adequately reimburse providers for the unique circumstances of out-of-network emergency medical services. For example, a Louisiana jury just recently awarded more than $420 million in underpayments for a similarly situated out-of-network provider against a Blue Plan affiliate in Louisiana.[1]

10.     The record does not support the typicality of claims when comparing those of the named plaintiffs with those of out-of-network emergency medicine services providers. Similarly, the record does not support the adequacy of the named plaintiffs to represent the interests of out-of-network emergency services providers.

---

[1] *St. Charles Surgical v. BCBSLA*, Case No. 2017-1095.

11.     This problem is not just technical. The Out-of-Network ER Groups have contractual relationships for management services that are shared with many in-network emergency medicine provider groups. In addition, at least one of the Out-of-Network ER Groups is out-of-network in one state, but in-network in another state. The Out-of-Network ER Groups understand that Defendants may treat those in-network emergency medicine provider groups as affiliates of the Out-of-Network ER Groups, which could result in over-expansive releases that would prejudice the Out-of-Network ER Groups if any of the in-network emergency groups participates in the settlement in this action.

***Out-of-Network ER Groups' Interests are Not Fully Aligned with Class Plaintiffs.***

12.     The Out-of-Network ER Groups only recently became aware of the proposed settlement in this case and promptly took steps to understand the proposed terms, the class definition and the scope of releases. After being invited to an informational telephone call that occurred on Monday, November 11, 2024, counsel for the objecting parties held two additional calls with Plaintiffs' counsel seeking an agreed-upon continuance and further information. Instead, the calls raised significant concerns. For example, the Out-of-Network ER Groups have learned that despite the broad class definition set forth in the proposed settlement agreement and despite the existence of material differences between the nature of in-network and out-of-network services, *none* of the named class plaintiffs are out-of-network medicine providers with respect to the Blue Plans, much less *emergency* medicine providers. *See, e.g., Downey Surgical Clinic, Inc. v. Ingenix, Inc.*, No. CV09-5457 PSG (JCX), 2015 WL 12645755, at *7 (C.D. Cal. Nov. 10, 2015) (distinguishing in-network from out-of-network providers of ambulatory surgery services in the settlement class definition); *Edwards v. Horizon Blue Cross Blue Shield of New Jersey*, No. 08-CV-6160(KM), 2018 WL 10133574, at *2 (D.N.J. June 29, 2018) (analyzing whether interests of

certain subclasses that were allegedly under-reimbursed for out-of-network services were antagonistic to those of the class).

13.    In discussions with Plaintiffs' counsel in advance of filing this objection, class counsel refused to identify, based on claims of confidentiality, any out-of-network providers who had involvement in negotiating the settlement agreement and the releases. Plaintiffs' counsel responded, however, that he was not aware of any out-of-network emergency medicine services provider who participated in the negotiations.

14.    In addition, the Out-of-Network ER Groups have learned that the proposed settlement payment plan of distribution is based largely on allowed amounts *determined by Blue Plans* which apparently do not take into account the distinction between in-network and out-of-network rates, much less rates that should be paid for out-of-network *emergency* services. In addition, the rate data may draw too much from the Blue Plans' internal reimbursement data, which is particularly prejudicial to out-of-network providers. Like many other similarly situated out-of-network emergency medicine providers who have not had a seat at the negotiating table, the Out-of-Network ER Groups have not received a full understanding of the damages model and an opportunity to test the rates at issue before any settlement is preliminary approved.

15.    The Out-of-Network ER Groups' concerns are compounded by the fact that certain of their affiliates in certain states are *in-network* with certain Blue Plans which makes those affiliates' interests more aligned with the class representatives but could potentially compromise the Out-of-Network ER Groups' litigation claims even if the Out-of-Network ER Groups were to opt-out of the class settlement. The Out-of-Network ER Groups have legitimate concerns that the Blue Plan defendants in the Florida, Virginia, Texas and North Carolina litigations may treat these

affiliates, for purposes of releases in this action, as "Affiliates" capable of taking actions that result in releases by the Out-of-Network ER Groups.

***Opt-Out Rights or Later Opportunities to Object Are Inadequate and Unnecessary Here to Prevent Unfair Prejudice.***

16.    The Blue Plans have come to the settlement table to resolve not just in-network providers' claims, but also out-of-network providers' claims. The record reflects serious questions about whether the settlement has been negotiated in a way to protect the interests of out-of-network providers, particularly out-of-network emergency services providers.

17.    In particular, the broad releases set forth in the settlement agreement expressly include "affiliated companies" of any releasor providers. *See* ECF No. 3192-2 at 24. Thus, under the proposed current language of the releases, if any in-network affiliates of the Out-of-Network ER Groups were to participate in the settlement, significant concerns exist that such participation could unwittingly release or otherwise undermine existing claims against Blue Plans by non-participating providers such as the Out-of-Network ER Groups and the similarly-situated out-of-network groups in Texas and elsewhere that Defendants may seek to treat as affiliates.

18.    The Out-of-State ER Groups request, on behalf of themselves and any similarly-situated provider groups that could be treated as affiliates, that this Court make findings resolving their objections as follows: (a) in the form they are alleged, the claims by the Out-of-Network ER Groups (and any similarly-situated provider groups that could be treated as affiliates) are excluded from the scope of releases at issue in the proposed settlement because they are claims seeking relief for underpayment arising from alleged rights to higher rates based on statutory schemes, regulatory schemes, subscriber plans, or operation of law, (b) nothing in the releases in the proposed settlement reaches or affects any arbitration rights concerning  underpaid claims by the Out-of-Network ER Groups or any provider groups that could be considered affiliates, and, (c) the filing

7

of operative complaints attached to this objection herein does not trigger any releases of them merely because they have been presented to this Court for purposes of resolving the objection.

WHEREFORE, based on the foregoing, the Out-of-Network ER Groups respectfully request that the Court sustain their objections and make the findings set forth above in Paragraph 18 or, otherwise, deny without prejudice Provider Plaintiffs' Motion for Preliminary Approval of Proposed Class Settlement (ECF No. 3192).

Dated:  November 22, 2024

Respectfully submitted,

/s/Christopher L. Albright
Christopher L. Albright
Porterfield, Harper, Mills, Motlow & Ireland, P.A.
22 Inverness Center Parkway, Suite 600
Birmingham, Alabama 35242
Ph.: (205) 980-5000
albright@phm-law.com


Of counsel:

Barry S. Pollack (BBO#642064)
Phillip Rakhunov (BBO#663746)
POLLACK SOLOMON DUFFY LLP
31 St. James Avenue, Suite 940
Boston MA 02116
(617) 439-9800
bpollack@psdfirm.com
prakhunov@psdfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 22, 2024, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/Christopher L. Albright

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

|  |  |  |
|---|---|---|
|  | **)** |  |
|  | **)** | **Master File No. 2:13-CV-20000-RDP** |
| **IN RE:** | **)** |  |
| **BLUE CROSS BLUE SHIELD** | **)** |  |
| **ANTITRUST LITIGATION** | **)** |  |
| **(MDL NO. 2406)** | **)** |  |
|  | **)** |  |

***AMENDED* OUT-OF-NETWORK EMERGENCY MEDICAL PROVIDER GROUPS'
OBJECTION TO PRELIMINARY APPROVAL OF PROPOSED CLASS SETTLEMENT**
~~**AND MOTION FOR 30-DAY CONTINUANCE OF PRELIMINARY APPROVAL
HEARING**~~

Non-party out-of-network emergency medicine providers Bradford Emergency Group, LLC; Columbia Emergency Group, LLC; Duval Emergency Group, LLC; Lake Wales Emergency Physicians, LLC; Lake Oliver Emergency Group, LLC; Melbourne Emergency Group, LLC; NW Florida Emergency Physicians, LLC; Polk Emergency Group, LLC; Ridgewood Emergency Group, LLC; Rockledge Emergency Group, LLC; Sterling Emergency Services of Miami Beach, P.A.; Suwannee Emergency Group, LLC; Western Virginia Regional Emergency Physicians, LLC; Lake Spring Emergency Group, LLC; Wildwood Emergency Group, LLC; Ingleside Emergency Group, LLC; and Kingsford Emergency Group, LLC (collectively, "Out-of-Network ER Groups"), by and through their undersigned counsel, respectfully submit this AMENDED OBJECTION to the class action Plaintiffs' motion for a preliminary approval of the settlement reached between the Class Plaintiffs and Defendant health insurance plans affiliated with the Blue Cross Blue Shield Association ("Blue Plans~~"), and request to continue the hearing on the motion~~").

Counsel for ~~preliminary approval by thirty (30) days to give the~~ the Out-~~of~~Of-Network ER Groups ~~sufficient time to fully evaluate the terms~~have conferred multiple times with counsel of

record for Plaintiffs and Defendants, and ~~fairness~~the Neutral, which provided for a useful exchange of ~~the settlement agreement as it pertains to the~~information, but did not resolve the objections. The Out-of-Network ER Groups ~~and other similarly situated, including providers who have other pending litigation against certain Blue Plans yet~~ have ~~not been represented in the negotiations~~given notice to Plaintiffs and Defendants that they planned to submit these Amended Objections, have agreed to any continuance Plaintiffs or Defendants may seek for a response, and provided a redlined comparison of the ~~settlement~~amendments herein, a copy of ~~otherwise in this litigation.~~ which is attached hereto as Exhibit A.

According to Plaintiffs' counsel, all of the named ~~plaintiffs~~class Plaintiffs are in-network providers. The proposed class definition includes, however, not just in-network providers, but also out-of-network providers, including emergency medicine services providers. As described below, the record lacks a sufficient showing of (1) typicality because of the unique rights and interests of out-of-network emergency services providers, or (2) the adequacy of the named plaintiffs to represent the interests of out-of-network emergency services providers.

Nevertheless, proposed findings are contained herein that could resolve these objections. The gist of the bargain underlying the settlement does not appear to require releases of the pertinent claims by the Out-of-Network ER Groups that arise from statutory rights, regulatory rights, duties implied-by-law from the subscriber-plan and surrounding circumstances, or related common law theories seeking relief for underpayments. Unfortunately, the release language is not sufficiently clear to prevent confusion if the Blue Plans raise the release as a defense in pending state court actions and efforts to enforce arbitration rights and awards for underpaid claims.

***None of the Named Plaintiffs is an Out-of-Network Emergency Medicine Services Provider.***

1.    Plaintiffs' counsel has confirmed that none of the members of the proposed class is

2

an out-of-network emergency medicine services provider.

2.    Each of the Out-of-Network ER Groups and certain of their affiliates contract with

hemshits(or contracted with during the relevant timeframe) hospitals and healthcare systems across

the United States to staff those hospitals' emergency departments with physicians and other

clinical providers. Each of the Out-of-Network ER Groups coordinates the billing of its contracted

healthcare providers for emergency medical services.

3.    Healthcare providers, such as Out-of-Network ER Groups' contracted providers,

are generally classified as either "in-network" providers who have negotiated rates with a health

insurance company such as the Blue Plans, or "out-of-network" providers who submit billed

charges at their usual and customary rates and are paid pursuant to applicable provisions in the

Blue Plans' members' health insurance plans and applicable federal and state laws.

4.    None of the Out-of-Network ER Groups has a contract for negotiated rates with

pertinent Blue Plans, and their healthcare providers are therefore "out-of-network" providers with

respect to the Blue Plans for the emergency medical services at issue.

5.    Importantly, at least as a general matter, rates paid to out-of-network providers are

or should be higher than the negotiated rates for similar services paid to in-network providers who

may benefit instead from an in-network status that attracts insureds and the certainty of rates.

6.    Out-of-Network ER Groups are uniquely situated compared to out-of-network

providers of non-emergency medical services and from other out-of-network providers because,

pursuant to the Emergency Medical Treatment and Labor Act, 42 U.S.C. 1395dd *et seq.*

("EMTALA") and similar applicable state laws, the services provided by Out-of-Network ER

Groups were *mandatory* and rendered to meet such legal requirements as related to the conditions

for which each of the Blue Plans' members presented in the Out-of-Network ER Groups ER

Groups' contracted facilities. In other words, the Out-of-Network ER Groups are and were required by law to provide emergency medical services to the Blue Plans' members regardless of whether those patients had insurance under a health plan for which any given provider was an in-network provider or an out-of-network provider.

7.    Conversely, Blue Plans did not have the ability to prevent its members from seeking emergency treatment at the hospitals where the Out-of-Network ER Groups provide emergency medical services, despite the Out-of-Network ER Groups' healthcare providers' out-of-network status.

8.    The Out-of-Network ER Groups have pending litigation against certain Blue Plans in Virginia and Florida seeking significant reimbursement for underpayments for out-of-network emergency medical services under various quasi-contract and statutory legal theories. TheA copy of the operative complaints from these actions are attached hereto as Exhibits B and C. These are being submitted not as a predicate of this action, but only for purposes of the objections herein. Other actions are pending in Texas and North Carolina, which involves claims brought by out-of-network emergency medicine groups that share a common management services provider, which is expected to cause Defendants to treat the provider groups as affiliates of the Out-of-Network ER Groups.

8.9.    These Out-of-Network ER Groups are not alone in their efforts to require the Blue Plans to adequately reimburse providers for the unique circumstances of out-of-network emergency medical services. For example, a Louisiana jury just recently awarded more than $420 million in underpayments for a similarly situated out-of-network provider against a Blue Plan affiliate in Louisiana.[1]

---

[1] *St. Charles Surgical v. BCBSLA*, Case No. 2017-1095.

10.     The record does not support the typicality of claims when comparing those of the named plaintiffs with those of out-of-network emergency medicine services providers. Similarly, the record does not support the adequacy of the named plaintiffs to represent the interests of out-of-network emergency services providers.

~~9.~~11.   This problem is not just technical. The Out-of-Network ER Groups have contractual relationships for management services that are shared with many in-network emergency medicine provider groups. In addition, at least one of the Out-of-Network ER Groups is out-of-network in one state, but in-network in another state. The Out-of-Network ER Groups understand that Defendants may treat those in-network emergency medicine provider groups as affiliates of the Out-of-Network ER Groups, which could result in over-expansive releases that would prejudice the Out-of-Network ER Groups if any of the in-network emergency groups participates in the settlement in this action.

***Out-of-Network ER Groups' Interests are Not Fully Aligned with Class Plaintiffs.***

~~10.~~    The Out-of-Network ER Groups only recently became aware of the proposed settlement in this case and promptly took steps to understand the proposed terms, the class definition and the scope of releases. After being invited to an informational telephone call that occurred on Monday, November 11, 2024, counsel for the objecting parties held two additional calls ~~yesterday and today~~ with Plaintiffs' counsel seeking an agreed-upon continuance and further information. Instead, the calls raised significant concerns~~, but not any agreed-upon continuance of this hearing.~~

~~11.~~12.  . For example, the Out-of-Network ER Groups have learned that despite the broad class definition set forth in the proposed settlement agreement and despite the existence of material differences between the nature of in-network and out-of-network services, *none* of the named class

plaintiffs are out-of-network medicine providers with respect to the Blue Plans, much less *emergency* medicine providers. *See, e.g., Downey Surgical Clinic, Inc. v. Ingenix, Inc.*, No. CV09-5457 PSG (JCX), 2015 WL 12645755, at *7 (C.D. Cal. Nov. 10, 2015) (distinguishing in-network from out-of-network providers of ambulatory surgery services in the settlement class definition); *Edwards v. Horizon Blue Cross Blue Shield of New Jersey*, No. 08-CV-6160(KM), 2018 WL 10133574, at *2 (D.N.J. June 29, 2018) (analyzing whether interests of certain subclasses that were allegedly under-reimbursed for out-of-network services were antagonistic to those of the class).

12.13. In discussions with Plaintiffs' counsel in advance of filing this objection, class counsel refused to identify, based on claims of confidentiality, any out-of-network providers who had involvement in negotiating the settlement agreement and the releases. Plaintiffs' counsel responded, however, that he was not aware of any out-of-network emergency medicine services provider who participated in the negotiations.

13.14. In addition, the Out-of-Network ER Groups have learned that the proposed settlement payment plan of distribution is based largely on allowed amounts *determined by Blue Plans* which apparently do not take into account the distinction between in-network and out-of-network rates, much less rates that should be paid for out-of-network *emergency* services. In addition, the rate data may draw too much from the Blue Plans' internal reimbursement data, which is particularly prejudicial to out-of-network providers. Like many other similarly situated out-of-network emergency medicine providers who have not had a seat at the negotiating table, the Out-of-Network ER Groups should be entitled to gainhave not received a full understanding of the damages model and an opportunity to test the rates at issue before any settlement is preliminary approved.

6

14.15.  The Out-of-Network ER Groups' concerns are compounded by the fact that certain of their affiliates in certain states are *in-network* with certain Blue Plans which makes those affiliates' interests more aligned with the class representatives but could potentially compromise the Out-of-Network ER Groups' litigation claims even if the Out-of-Network ER Groups were to opt-out of the class settlement. The Out-of-Network ER Groups have legitimate concerns that the Blue Plan defendants in the Florida, Virginia, Texas and North Carolina litigations may treat these affiliates, for purposes of releases in this action, as "Affiliates" capable of taking actions that result in releases by the Out-of-Network ER Groups.

**Opt-Out Rights or Later Opportunities to Object Are Inadequate and Unnecessary Here to Prevent Unfair Prejudice.**

15.16.  The Blue Plans have come to the settlement table to resolve not just in-network providers' claims, but also out-of-network providers' claims. The record reflects serious questions about whether the settlement has been negotiated in a way to protect the interests of out-of-network providers, particularly out-of-network emergency services providers.

16.17.  In particular, the broad releases set forth in the settlement agreement expressly include "affiliated companies" of any releasor providers. *See* ECF No. 3192-2 at 24. Thus, under the proposed current language of the releases, if any in-network affiliates of the Out-of-Network ER Groups were to participate in the settlement, significant concerns exist that such participation could unwittingly release or otherwise undermine existing claims against Blue Plans by non-participating providers such as the Out-of-Network ER Groups and the similarly-situated out-of-network groups in Texas and elsewhere that Defendants may seek to treat as affiliates.

17.    A continuance of 30 days for a preliminary approval hearing could save time in the long run by fixing issues before they are compounded through a notice process.

18.     ~~Allowing a brief continuance of thirty (30) days for Out-of-Network ER Groups to confer with counsel for the parties to better understand and analyze the proposed settlement, and to potentially implement their concerns, will be far more efficient than potentially litigating a substantive objection later in the Court approval process. The relatively brief continuance of the preliminary approval hearing that the Out-of-Network ER Groups seek by this filing will promote efficiency and conserve judicial and party resources. A thirty-day extension is relatively minimal in a case that has been pending for over a decade and may help reach earlier finality by addressing outstanding issues now to avoid repeating notice processes.~~

18.     The Out-of-State ER Groups request, on behalf of themselves and any similarly-situated provider groups that could be treated as affiliates, that this Court make findings resolving their objections as follows: (a) in the form they are alleged, the claims by the Out-of-Network ER Groups (and any similarly-situated provider groups that could be treated as affiliates) are excluded from the scope of releases at issue in the proposed settlement because they are claims seeking relief for underpayment arising from alleged rights to higher rates based on statutory schemes, regulatory schemes, subscriber plans, or operation of law, (b) nothing in the releases in the proposed settlement reaches or affects any arbitration rights concerning  underpaid claims by the Out-of-Network ER Groups or any provider groups that could be considered affiliates, and, (c) the filing of operative complaints attached to this objection herein does not trigger any releases of them merely because they have been presented to this Court for purposes of resolving the objection.

WHEREFORE, based on the foregoing, the Out-of-Network ER Groups respectfully request that the Court sustain their objections and make the findings set forth above in Paragraph 18 or, otherwise, deny without prejudice Provider Plaintiffs' Motion for Preliminary Approval of

8

Proposed Class Settlement (ECF No. ~~3192) or continue the hearing on the Motion for Preliminary~~ ~~Approval by thirty (30) days.~~3192).

Dated: November ~~13~~22, 2024                    Respectfully submitted,

                                   /s/Christopher L. Albright
                                   Christopher L. Albright
                                   Porterfield, Harper, Mills, Motlow & Ireland, P.A.
                                   22 Inverness Center Parkway, Suite 600
                                   Birmingham, Alabama 35242
                                   Ph.: (205) 980-5000
                                   albright@phm-law.com


                                   Of counsel:

                                   Barry S. Pollack (BBO#642064)
                                   Phillip Rakhunov (BBO#663746)
                                   POLLACK SOLOMON DUFFY LLP
                                   31 St. James Avenue, Suite 940
                                   Boston MA 02116
                                   (617) 439-9800
                                   bpollack@psdfirm.com
                                   prakhunov@psdfirm.com

**CERTIFICATE OF SERVICE**

I hereby certify that on November ~~13~~22, 2024, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/Christopher L. Albright

10

# EXHIBIT B

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT IN AND
FOR BROWARD COUNTY,
FLORIDA

BRADFORD EMERGENCY GROUP, LLC;
COLUMBIA EMERGENCY GROUP, LLC;
DUVAL EMERGENCY GROUP, LLC;
LAKE WALES EMERGENCY
PHYSICIANS, LLC; MELBOURNE
EMERGENCY GROUP, LLC;
NW FLORIDA EMERGENCY
PHYSICIANS, LLC; POLK EMERGENCY
GROUP, LLC; RIDGEWOOD
EMERGENCY GROUP, LLC;
ROCKLEDGE EMERGENCY GROUP,
LLC; STERLING EMERGENCY
SERVICES OF MIAMI BEACH, P.A.; and
SUWANNEE EMERGENCY GROUP, LLC,

  Plaintiffs,

v.

BLUE CROSS AND BLUE SHIELD OF
FLORIDA, INC. D/B/A FLORIDA BLUE
and HEALTH OPTIONS, INC.,

  Defendants.

CASE NO.:

_____/

## COMPLAINT

Plaintiffs Bradford Emergency Group, LLC; Columbia Emergency Group, LLC; Duval

Emergency Group, LLC; Lake Wales Emergency Physicians, LLC; Melbourne Emergency

Group, LLC; NW Florida Emergency Physicians, LLC; Polk Emergency Group, LLC;

Ridgewood Emergency Group, LLC; Rockledge Emergency Group, LLC; Sterling Emergency

Services of Miami Beach, P.A.; and Suwannee Emergency Group, LLC (together, the "ER

Groups"), by their counsel, as and for their Complaint against defendants Blue Cross and Blue

Shield of Florida, Inc. d/b/a Florida Blue ("BCBS FL") and Health Options, Inc. ("HOI" and collectively, "Florida Blue"), state and allege as follows:

### Preliminary Statement

1. The ER Groups bring this Complaint against Florida Blue to recover damages caused by Florida Blue's illegal underpayments to the ER Groups for out-of-network emergency medical services provided by the ER Groups' contracted emergency medicine providers to Florida Blue's insureds in Florida (the "Florida Blue Members") who are covered by health care benefits plans and policies of insurance that are provided and/or administered by Florida Blue. As of the date below, Florida Blue's underpayments for emergency medical services provided by the ER Groups to the Florida Blue Members total more than $53,000,000.

2. Florida Blue is a trade name used by Blue Cross and Blue Shield of Florida, Inc. and Health Options, Inc., as licensed by the Blue Cross and Blue Shield Association. Blue Cross and Blue Shield Association is a healthcare enterprise that operates a multitude of local health plans throughout the United Sates. Blue Cross and Blue Shield Association makes up one of the largest health insurance coverage organizations in the nation by selling health plans that purport to offer access to health care services for its customers, including in the State of Florida.[1]

3. In violation of Florida state law, Florida Blue has failed and, despite notice from multiple complaints about this issue, refused to pay the amounts required by Florida law to the ER Groups for emergency health care services that ER Groups' contracted physicians and NP/PAs provided to the Florida Blue Members at various facilities in Florida.

4. Specifically, since 2016, the ER Groups have treated thousands of Florida Blue Members and accordingly billed Florida Blue for the emergency medical services provided to

---

[1] *See* https://www.floridablue.com/

2

those Florida Blue Members. The ER Groups' total billed charges for these claims are more than approximately $61.7 million, and growing, a number that reflects the usual, customary, and reasonable rates for the particular emergency services in the community where those services were provided. For each of the claims for emergency services at issue herein, Florida Blue approved the claims and paid them, albeit inadequately, to the ER Groups. Accordingly, this case does not involve denials, partial denials or other coverage determinations under any of the Florida Blue Members' plans, but merely whether the rate of Florida Blue's reimbursement for those approved and covered services was adequate under Florida law.

5.      To date, Florida Blue has reimbursed the ER Groups for only a small fraction of the more than $61.7 million in fair market value of emergency medical services that Florida Blue was required to pay directly to the ER Groups under Florida law.

6.      The underpayments continue. Florida Blue Members continue to seek and obtain emergency room treatment from medical facilities staffed by the ER Groups' contracted emergency medicine providers. The ER Groups' contracted providers continue to provide emergency room medical care, as they are required to do under applicable law. Florida Blue continues to underpay ER Groups for the care their providers are required to deliver.

7.      Florida Blue's pattern of dramatically underpaying ER Groups is in clear violation of applicable state laws, including Florida Statute §§ 627.64194 and 641.513(5), and Florida common law, and has caused ER Groups to sustain substantial damages, which continue to grow.

FTLDOCS 8295991 2 50077.0004

**Parties**

8. Bradford Emergency Group, LLC is, and at all relevant times was, a limited liability company organized and existing under the laws of Florida, with its principal place of business located at 200 Corporate Blvd., Lafayette, LA.

9. Columbia Emergency Group, LLC is, and at all relevant times was, a limited liability company organized and existing under the laws of Florida, with its principal place of business located at 200 Corporate Blvd., Lafayette, LA.

10. Duval Emergency Group, LLC is, and at all relevant times was, a limited liability company organized and existing under the laws of Florida, with its principal place of business located at 200 Corporate Blvd., Lafayette, LA.

11. Lake Wales Emergency Physicians, LLC is, and at all relevant times was, a limited liability company organized and existing under the laws of Florida, with its principal place of business located at 200 Corporate Blvd., Lafayette, LA.

12. Melbourne Emergency Group, LLC is, and at all relevant times was, a limited liability company organized and existing under the laws of Florida, with its principal place of business located at 200 Corporate Blvd., Lafayette, LA.

13. NW Florida Emergency Physicians, LLC is, and at all relevant times was, a limited liability company organized and existing under the laws of Florida, with its principal place of business located at 200 Corporate Blvd., Lafayette, LA.

14. Polk Emergency Group, LLC is, and at all relevant times was, a limited liability company organized and existing under the laws of Florida, with its principal place of business located at 200 Corporate Blvd., Lafayette, LA.

4

FTLDOCS 8295991 2 50077.0004

15.     Ridgewood Emergency Group, LLC is, and at all relevant times was, a limited liability company organized and existing under the laws of Florida, with its principal place of business located at 200 Corporate Blvd., Lafayette, LA.

16.     Rockledge Emergency Group, LLC is, and at all relevant times was, a limited liability company organized and existing under the laws of Florida, with its principal place of business located at 200 Corporate Blvd., Lafayette, LA.

17.     Sterling Emergency Services of Miami Beach, P.A. is, and at all relevant times was, a limited liability company organized and existing under the laws of Florida, with its principal place of business located at 200 Corporate Blvd., Lafayette, LA.

18.     Suwannee Emergency Group, LLC is, and at all relevant times was, a limited liability company organized and existing under the laws of Florida, with its principal place of business located at 200 Corporate Blvd., Lafayette, LA.

19.     Defendant Blue Cross and Blue Shield of Florida, Inc. d/b/a Florida Blue is a corporation organized under the laws of the State of Florida and is a licensed health insurer under Florida Statutes with a principal place of business located at 4800 Deerwood Campus Pkwy, Jacksonville, Florida, 32246-6498.

20.     Defendant Health Options, Inc. is a corporation organized under the laws of the State of Florida and is a licensed health insurer under Florida Statutes with a principal place of business located at 4800 Deerwood Campus Pkwy, Jacksonville, Florida, 32246-6498.

21.     Each of BCBS FL and HOI, operating as Florida Blue, administers claims for benefits for its subscribers and members under the terms of various health insurance plans, including Health Maintenance Organization health benefit plans.

5

**Jurisdiction and Venue**

22.     This Court has jurisdiction over this matter pursuant to Fla. State. § 26.012(2) in that the parties are *sui juris* and the amount in controversy, exclusive of attorneys' fees and costs, exceeds $30,000.

23.     Venue is proper in Broward County, Florida pursuant to Florida Statute § 47.051, which states that venue is appropriate for domestic and foreign corporations where a defendant has, or usually keeps, an office for transaction of its customary business. Here, the defendants hold themselves out as maintaining offices in Fort Lauderdale, Broward County.

24.     In addition, this case should be assigned to the Complex Business Division because of the nature of the case, the complexity of discovery, and because the amount in controversy exceeds $750,000.

25.     This Court has personal jurisdiction over Florida Blue because Florida Blue is engaged in substantial business activity within the State of Florida and Broward County, Florida, and maintains offices in Broward County and throughout the State of Florida.

26.     For avoidance of doubt, the claims for recovery of underpayments for emergency medical services in this lawsuit are for approved and covered services rendered to Florida Blue Members and do not require any coverage determinations under the Florida Blue Members' plans. Each of the ER Claims herein is supported by a legal duty arising under Florida law independent of the federal Employee Retirement Income Security Act of 1974 (ERISA) or related regulations. No claim is made by the ER Groups against Florida Blue as a plan participant, plan sponsor, plan fiduciary, or beneficiary under any plan governed by ERISA. Plaintiffs do not stand in the shoes of Florida Blue Members for the purposes of this lawsuit.

27.    For further avoidance of doubt, this action also does not include any claim by the ER Groups for benefits under any Florida Blue health plan pursuant to an assignment of benefits from any patient or upon any rights that any Florida Blue Members may have to pursue against Florida Blue. All claims in dispute are claims for covered emergency services for which Florida Blue underpaid the ER Groups under Florida law. None of these claims was wholly denied payment and, therefore, Florida Blue has conceded that all claims in dispute meet the criteria for medical necessity and are "covered services." The ER Groups simply seek to compel Florida Blue to compensate them for past underpayments and for the Court to declare that Florida Blue must cease unilaterally and unfairly discounting payments and must comply with its obligations under Florida law to pay for fair market value for emergency medical services rendered to Florida Blue Members.

**Facts**

***The Out-of-Network Emergency Services Provided to Florida Blue Members***

28.    Each of the ER Groups contracts with hospitals in Florida to staff those hospitals' emergency departments with physicians and other clinical providers. Each of the ER Groups coordinates the billing of its contracted healthcare providers for emergency medical services.

29.    Healthcare providers such as ER Groups' contracted providers are generally classified as either "in-network" providers who have negotiated rates with a health insurance company such as Florida Blue, or "out-of-network" providers who submit billed charges at their usual and customary rates and are paid pursuant to applicable provisions in the Florida Blue Members' health insurance plans and applicable laws.

7

30.    None of the ER Groups has a contract for negotiated rates with Florida Blue, and their healthcare providers are therefore "out-of-network" providers with respect to Florida Blue for the emergency medical services at issue.

31.    Since in or about 2016 through the present date, the ER Groups' contracted healthcare providers have delivered emergency medical services to thousands of Florida Blue Members throughout Florida.

32.    Some or all of these services were mandatory under governing law and rendered to meet such legal requirements as related to the conditions for which each of the Florida Blue Members presented in the ER Groups' facilities.

33.    The ER Groups are and were required by law to provide emergency medical services to the Florida Blue Members regardless of whether those patients had insurance under a health plan for which any given provider was an in-network provider or an out-of-network provider.

34.    Conversely, Florida Blue did not have the ability to prevent its members from seeking emergency treatment at the hospitals where the ER Groups provide emergency medical services, despite the ER Groups' healthcare providers' out-of-network status with Florida Blue.

35.    By approving payment, albeit in an inadequate amount, for the emergency medical services provided to Florida Blue Members by the ER Groups' contracted providers, Florida Blue has acknowledged and admitted that those emergency services are "covered services" within the meaning of Florida Statute § 627.64194.

8

*Florida Blue's Illegal Claims Underpayments*

36.    Under Florida Statute § 627.64194, Florida Blue is solely liable for payment of fees to a non-participating provider of emergency services, other than applicable copayments, coinsurance, and deductibles. Section 627.64194 provides, in relevant part, that:

(2) An insurer is ***solely liable for payment of fees to a nonparticipating provider of covered emergency services*** provided to an insured in accordance with the coverage terms of the health insurance policy, and such insured is not liable for payment of fees for covered services to a nonparticipating provider of emergency services, other than applicable copayments, coinsurance, and deductibles. An insurer must provide coverage for emergency services that:

(a)    May not require prior authorization.
(b)    ***Must be provided regardless of whether the services are furnished by a participating provider or a nonparticipating provider.***
(c)    May impose a coinsurance amount, copayment, or limitation of benefits requirement for a nonparticipating provider only if the same requirement applies to a participating provider.

* * *

(4)    An insurer must reimburse a nonparticipating provider of services under subsections (2) and (3) ***as specified in s. 641.513(5)*** …

(emphasis added).

37.    Thus, by virtue of § 627.64194 and applicable caselaw, Florida Blue is required to reimburse each of the ER Groups directly for the emergency medical services provided by those ER Groups' contracted physicians and other healthcare providers to Florida Blue Members.

38.    Florida Statute § 641.513(5), in turn, requires that reimbursement for emergency services by an out-of-network provider is the lesser of (a) the provider's charges; (b) the usual and customary provider charges for similar services in the community where the services were provided; or (c) the charge mutually agreed to by the health maintenance organization and the provider within 60 days of the submittal of the claim.

39.    ER Groups and Florida Blue have never mutually agreed to a charge for service under Florida Statute § 641.513(5)(c).

9

40.     Under Florida law, consistent with all other potential applicable laws, payment required under § 641.513(5) must be at fair market value for services rendered.

41.     Rather than pay the fair market value for covered emergency medical services as reflected in the bills submitted to Florida Blue by the ER Groups, Florida Blue has unilaterally lowered the reimbursement rate allowed for "out-of-network" emergency services care to levels far below what Florida law requires.

42.     The ER Groups have submitted invoices and sufficient supporting claims information to Florida Blue requesting payment for these covered emergency medical services, and have made repeated demands to Florida Blue for payment, but Florida Blue has refused to reimburse the ER Groups for a substantial portion of the ER Groups' charges for the covered emergency medical services rendered to the Florida Blue Members.

43.     Florida Blue has paid most of the claims submitted by the ER Groups at a net payment rate that is significantly less than what the ER Groups are entitled to receive as out-of-network providers under Florida law.

44.     Despite repeated notice of its underpayments and the illegality of its unilaterally-imposed discounts, Florida Blue has never provided an adequate explanation for its refusal to pay fair market value rates as required by Florida law, including §§ 627.64194 and 641.513(5), for medical services billed by the ER Groups.

**COUNT I**
**(Unjust Enrichment)**

45.     Plaintiffs hereby repeat, reallege, and incorporate by reference in this Count each and every allegation contained above.

46.     Each of the ER Groups conferred a direct benefit on Florida Blue by providing valuable, covered, and medically necessary emergency medical services to Florida Blue

10

Members, including, without limitation, satisfying Florida Blue's legal obligations to provide emergency medical services to the Florida Blue Members; by providing emergency medical services as to which Florida Blue is obligated to provide coverage to Florida Blue Members and make payment under Florida law; and by providing the Florida Blue Members with emergency medical services to which the Florida Blue Members were legally entitled, which the ER Groups could not refuse under applicable law, and for which Florida Blue was required to reimburse the ER Providers at fair market value.

47.    Florida Blue is paid to ensure that Florida Blue Members receive medically necessary and covered services and care. Thus, Florida Blue received an additional benefit in that its obligations to Florida Blue Members are discharged by virtue of the emergency medical services that the ER Groups' contracted providers provided to Florida Blue Members in Florida.

48.    At all relevant times, Florida Blue had knowledge that ER Groups' contracted providers were legally required to provide and did provide covered emergency medical services to the Florida Blue Members as set forth above, and knowingly and voluntarily accepted those services.

49.    The ER Groups billed Florida Blue for the emergency medical services. Florida Blue has accepted and retained most of the benefit conferred on Florida Blue by the ER Groups by withholding for itself substantial reimbursement amounts that Florida Blue owed to the ER Groups, instead making grossly inadequate payments to the ER Groups for the covered emergency medical services at issue. Florida Blue had received multiple forms of notice of the illegality of its actions.

50.    It would inequitable and unjust for Florida Blue not to pay the ER Groups for the full fair market value of emergency medical services provided to Florida Blue Members and yet

11

to retain the benefit conferred on Florida Blue, as described above. Public policy favors ready access to emergency medical care and fair reimbursement to encourage medical professionals to participate in that field, which requires fair compensation.

51.     As a direct and proximate result of Florida Blue's conduct as set out above, the ER Groups have been damaged in the amount of the difference between the amount billed by each of the ER Groups to Florida Blue and the amount actually paid by Florida Blue, which amounts will continue to accrue through the date of trial.

WHEREFORE, each of the ER Groups respectfully requests that this Honorable Court enter a judgment against Florida Blue for damages, including compensatory damages and statutory penalties, including interest pursuant to Florida Statutes §§ 627.613 and 627.6131, and attorneys' fees and costs pursuant to § 641.28, together with any further relief in the ER Groups' favor that this Court deems just and proper.

## COUNT II
### (Quantum Meruit)

52.     Plaintiffs hereby repeat, reallege, and incorporate by reference in this Count each and every allegation contained above.

53.     Each of the ER Groups provided valuable emergency medical services to Florida Blue Members, for which Florida Blue is obligated to provide coverage under Florida law, and for which covered emergency medical services Florida Blue (or its designee/agent) knowingly authorized, directed, or referred those Members to use the emergency facilities staffed by the ER Groups' contracted emergency medicine providers.

54.     At all relevant times, Florida Blue had knowledge that the ER Groups' contracted providers were legally required to provide and did provide emergency medical services to the Florida Blue Members, and knowingly and voluntarily accepted and acquiesced in those

12

services, including by having authorized, directed, or referred Florida Blue Members to use the emergency facilities staffed by the ER Groups' contracted providers.

55.    Florida Blue knew at all relevant times that the ER Groups expected to be compensated for the fair market value of emergency medical services at issue provided to Florida Blue Members, as required by Florida law, and the ER Groups billed Florida Blue for these emergency medical services. Nevertheless, Florida Blue has made partial, yet grossly inadequate payments to the ER Groups for the emergency medical services at issue. Florida Blue has received multiple forms of notice of the illegality of its actions.

56.    It would inequitable and unjust for Florida Blue not to pay the ER Groups for the full fair market value of emergency medical services provided to Florida Blue Members. Public policy favors ready access to emergency medical care and fair reimbursement to encourage medical professionals to participate in that field, which requires fair compensation.

57.    As a direct and proximate result of Florida Blue's conduct as set out above, the ER Groups have been damaged in the amount of the difference between the amount billed by each of the ER Groups to Florida Blue and the amount paid by Florida Blue to each of the ER Groups for those services, which amounts will continue to accrue through the date of trial.

WHEREFORE, each of the ER Groups respectfully requests that this Honorable Court enter a judgment against Florida Blue for damages, including compensatory damages and statutory penalties, including interest pursuant to Florida Statutes §§ 627.613 and 627.6131, and attorneys' fees and costs pursuant to § 641.28, together with any further relief in the ER Groups' favor that this Court deems just and proper.

### COUNT III
### (Violation of Florida Statute §§ 627.64194 & 627.513)

58.    Plaintiffs hereby repeat, reallege, and incorporate by reference in this Count each

13

and every allegation contained above.

59.    Pursuant to Florida Statute § 627.64194, Florida Blue is required to directly reimburse nonparticipating providers of covered emergency services provided to the Florida Blue Members, in accordance with the coverage terms of the Florida Blue Members' health insurance policies, and must provide coverage for emergency medical services regardless of whether the services are furnished by a participating provider or a nonparticipating provider, in amounts specified under Florida Statute § 641.513(5).

60.    Florida Statute § 641.513(5) requires that reimbursement for emergency services by an out-of-network provider like Florida Blue is the lesser of (a) the provider's charges; (b) the usual and customary provider charges for similar services in the community where the services were provided; or (c) the charge mutually agreed to by the health maintenance organization and the provider within 60 days of the submittal of the claim.

61.    Payment required under § 641.513(5)(b) must be at fair market value of the emergency medical services rendered.

62.    ER Groups and Florida Blue do not have a contract and have never mutually agreed to a charge for service within the meaning of Florida Statute § 641.513(5)(c).

63.    The amounts billed by the ER Groups for medical services reflect the usual and customary charges for those services, yet Florida Blue has failed to pay the ER Groups those amounts, in violation of the statute.

64.    As a direct and proximate result of Florida Blue's conduct as set out above, Florida Blue has been damaged in the amount of the difference between the amount billed by each of the ER Groups to Florida Blue and the amount actually paid by Florida Blue to each of the ER Groups for those services, which amounts will continue to accrue through the date of

14

trial.

WHEREFORE, each of the ER Groups respectfully requests that this Honorable Court enter a judgment against Florida Blue for damages, including compensatory damages and statutory penalties, including interest pursuant to Florida Statutes §§ 627.613 and 627.6131, and attorneys' fees and costs pursuant to § 641.28, together with any further relief in the ER Groups' favor that this Court deems just and proper.

## COUNT IV
### (Breach of Contract/Third-Party Beneficiary)

65.    Plaintiffs hereby repeat, reallege, and incorporate by reference in this Count each and every allegation contained above.

66.    At all relevant times, including at the time of seeking and obtaining the emergency medical services at issue, each Florida Blue Member was insured under a health insurance policy issued by Florida Blue in the State of Florida.

67.    The ER Groups are third-party beneficiaries of the Florida Blue health insurance policies that provided coverage to Florida Blue Members with respect to the emergency medical services at issue because: (i) Florida Blue is mandated to pay the ER Groups directly for such services pursuant to Florida law at rates set by Florida Statutes described above; (ii) Florida law recognizes that medical service providers are intended beneficiaries of insurance contracts; and (iii) such contracts directly benefit emergency medical providers such as the ER groups pursuant to Florida statutes incorporated within the insurance contracts by the statutory incorporation doctrine.

68.    Moreover, by making thousands of inadequate payments directly to the ER Groups for the covered emergency medical services at issue, Florida Blue has acknowledged

15

each of the ER Groups' status as a third-party beneficiary of each applicable policy and has thereby waived any arguments or clauses to the contrary.

69.     Under Florida law, health insurance policies between Florida Blue and its Members are required to provide coverage for emergency medical services, such as those provided by the ER Groups' contracted physicians, in relevant part, at the lesser of (a) the provider's charges; (b) the usual and customary provider charges for similar services in the community where the services were provided.

70.     The amounts billed by the ER Groups for medical services reflect the usual and customary charges for those services.

71.     By making grossly inadequate underpayments on each of the claims at issue, Florida Blue has, in each instance, breached the Florida statutory provisions incorporated into each of Florida Blue's contracts with its Members of which the ER Groups are third party beneficiaries.

72.     As a direct and proximate result of Florida Blue's breaches of contracts of which the ER Groups are third party beneficiaries, as set out above, the ER Groups have been damaged in the amount of the difference between the amount billed by each of the ER Groups to Florida Blue and the amount actually paid by Florida Blue to each of the ER Groups for those services, which amounts will continue to accrue through the date of trial.

WHEREFORE, each of the ER Groups respectfully requests that this Honorable Court enter a judgment against Florida Blue for damages, including compensatory damages and statutory penalties, including interest pursuant to Florida Statutes §§ 627.613 and 627.6131, and attorneys' fees and costs pursuant to § 641.28, together with any further relief in the ER Groups' favor that this Court deems just and proper.

16

## COUNT V
### (Declaratory Judgment)

73.     Plaintiffs hereby repeat, reallege, and incorporate by reference in this Count each and every allegation contained above.

74.     The ER Groups' contracted emergency medical services providers have supplied and continue to supply emergency medical services to Florida Blue Members in Florida.

75.     As set forth above, an actual controversy and dispute has arisen between Florida Blue and the ER Groups as to the ER Groups' rights under Florida law, as to the amounts that Florida Blue is required to pay to the ER Groups for the present and future covered emergency medical services at issue in the lawsuit.

76.     Florida Blue and the ER Groups have an actual, bona fide dispute and a present need for a declaration of the ER Groups' rights related to payment for valuable emergency medical services provided to Florida Blue Members.

77.     Thus, a justiciable controversy exists between the parties.

78.     The ER Groups therefore seek a determination and declaration by this Honorable Court: (a) that Florida Blue is obligated to pay a fair market value as reimbursement for the emergency medical services provided by the ER Groups' contracted providers to Florida Blue Members; (b) that the amount of reimbursement that Florida Blue is required to pay the ER Groups equals the difference between the amount billed by each of the ER Groups to Florida Blue and the amount actually paid by Florida Blue to each of the ER Groups for those services; and (c) that there are no further obligations or conditions to be satisfied or met for Florida Blue to reimburse each of the ER Groups for the emergency medical services at issue.

WHEREFORE, the ER Groups respectfully request that this Honorable Court entered a judgment declaring the rights and obligations of the parties as set forth above.

17

**Demand for Jury Trial**

The ER Groups demand a trial by jury on all issues so triable.


SHUTTS & BOWEN LLP
*Attorneys for Plaintiffs*
Florida Bar No. 820880
200 East Broward Boulevard, Suite 2100
Fort Lauderdale, Florida 33301
Telephone: (954) 847-3837
Facsimile: (954) 888-3066


By:   */s/ Joseph Goldstein*
        Joseph M. Goldstein
        Florida Bar No. 820880
        jgoldstein@shutts.com

18

FTLDOCS 8295991 2 50077.0004

# EXHIBIT C

COPY

**VIRGINIA:**

### IN THE CIRCUIT COURT FOR THE CITY OF RICHMOND

WESTERN VIRGINIA REGIONAL
EMERGENCY PHYSICIANS, LLC, LAKE
SPRING EMERGENCY GROUP, LLC,
WILDWOOD EMERGENCY GROUP,
LLC, INGLESIDE EMERGENCY GROUP,
LLC, and KINGSFORD EMERGENCY
GROUP, LLC,

       Plaintiffs,

v.

ANTHEM HEALTH PLANS OF
VIRGINIA, INC. D/B/A ANTHEM BLUE
CROSS BLUE SHIELD IN VIRGINIA,

       Serve:
       Registered Agent
       CT Corporation System
       4701 Cox Road, Suite 285
       Glen Allen, Virginia 23060

and

HEALTHKEEPERS, INC.

       Serve:
       Registered Agent
       CT Corporation System
       4701 Cox Road, Suite 285
       Glen Allen, Virginia 23060

       Defendants.

Case No.: CL21000945-00

### AMENDED COMPLAINT

Plaintiffs Western Virginia Regional Emergency Physicians, LLC; Lake Spring

Emergency Group, LLC; Wildwood Emergency Group, LLC; Ingleside Emergency Group, LLC;

and Kingsford Emergency Group, LLC ("Plaintiffs" or "ER Groups"), by their counsel, as and for

their Amended Complaint against Anthem Health Plans of Virginia, Inc., d/b/a Anthem Blue Cross and Blue Shield in Virginia and HealthKeepers, Inc. (together, "Anthem" or "Defendants"), state and allege as follows:

## INTRODUCTION

1.     ER Groups bring this Complaint against Anthem to recover damages caused by Anthem's illegal and unauthorized underpayments to ER Groups for out-of-network emergency medical services provided to Anthem's insureds in Virginia by ER Groups' contracted emergency medicine providers, in violation of Virginia law. Anthem's underpayments for medical services provided by the ER Groups total more than approximately $35.8 million through December 31, 2020.

2.     In violation of Virginia statutory and common law, Anthem has failed and refused to pay reasonable or adequate amounts to the ER Groups for out-of-network emergency health care services that ER Groups' contracted physicians, Nurse Practitioners and Physician Assistants provided to patients in Virginia, who are covered by the health care benefits plans and policies of insurance provided and administered by Anthem (the "Anthem Members").

3.     Anthem has compounded these problems by making many of its partial payments for out-of-network services to patients instead of directly to providers, contrary to Virginia law and industry practice. Anthem uses this improper and illegal means to pressure providers to enter into in-network rate agreements below market value so that they can receive direct payments from Anthem and avoid substantial collection costs, deficiencies and delays.

4.     Specifically, since April 1, 2017, ER Groups have treated thousands of Anthem Members in Virginia and accordingly billed Anthem for out-of-network emergency medical services provided to these Anthem Members. ER Groups' billed charges for these claims are

2

approximately $50.3 million, reflecting reasonable value for the emergency medical services provided to Anthem Members. The ER Group's billed charges constitute a commercially reasonable amount for the value of medical services provided, including when viewed in light of the usual, customary, and reasonable rates for the particular emergency services in the geographical areas where those services were provided and taking into consideration the amounts sufficient to prevent Anthem Members from being balance billed for such services.

5.    To date, Anthem has allowed only a fraction of the ER Groups' billed charges for out-of-network services. Anthem has made many of its payments directly to Anthem Members, rather than directly to ER Groups as required by Virginia law. Anthem remains responsible for the balance.

6.    Anthem's underpayments continue to this date, exposing the ER Groups to multiplicity of arbitrations under VA Code § 38.2-3445.01 (effective January 1, 2021). Anthem Members continue to seek out-of-network emergency room treatment from ER Groups, as they are entitled to do under the terms of their plans and applicable laws regarding patient access to emergency medicine. ER Groups' contracted providers continue to provide emergency room medical care, as they are required to do under the law. And Anthem continues to underpay for the care the ER Groups' contracted providers are required to deliver, and to make many of the payments to Anthem Members to pressure ER Groups to enter into in-network rate agreements far below market value so that they can avoid the need for substantial collection costs, deficiencies and delays.

7.    Anthem's pattern of dramatically underpaying ER Groups is in clear violation of Virginia common law and VA Code §§ 38.2-4312.3(B) & 38.2-3445(4), and has caused the ER Groups to sustain substantial damages.

## PARTIES

8.      Ingleside Emergency Group, LLC is a limited liability company organized and existing under the laws of Virginia, with its principal place of business in Lafayette, Louisiana.

9.      Kingsford Emergency Group, LLC is a limited liability company organized and existing under the laws of Virginia, with its principal place of business in Lafayette, Louisiana.

10.     Lake Spring Emergency Group, LLC is a limited liability company organized and existing under the laws of Virginia, with its principal place of business in Lafayette, Louisiana.

11.     Western Virginia Regional Emergency Physicians, LLC is a limited liability company organized and existing under the laws of Virginia, with its principal place of business in Lafayette, Louisiana.

12.     Wildwood Emergency Group, LLC is a limited liability company organized and existing under the laws of Virginia, with its principal place of business in Lafayette, Louisiana.

13.     Defendant Anthem Health Plans of Virginia, Inc. is a corporation organized and existing under the laws of Virginia, with its principal place of business in Richmond, Virginia.

14.     Defendant HealthKeepers, Inc. is a corporation organized and existing under the laws of Virginia, with its principal place of business in Richmond, Virginia.

15.     Anthem is a Virginia licensed Health Maintenance Organization ("HMO"). Anthem sold and continues to sell HMO plans to the citizens of Virginia. Anthem and each of its health care plans are referred to herein both collectively and individually as "Anthem." Anthem regularly conducts substantial business in Richmond and throughout the Commonwealth of Virginia.

## JURISDICTION AND VENUE

16.     Jurisdiction is proper in this Court pursuant to Va. Code § 8.01-184 *et seq.*

4

17.     Venue is proper in this Court pursuant to Va. Code § 801-262.

18.     This Court has personal jurisdiction over Anthem because Anthem is engaged in substantial business activity within the Commonwealth of Virginia and maintains offices throughout the Commonwealth of Virginia.

19.     For avoidance of doubt, the claims for payment in this lawsuit are meant to cover only services rendered to Anthem Members covered under fully-insured products subject to Virginia law and should not include any claims for services covered under any health plan subject to the federal Employee Retirement Income Security Act of 1974 (ERISA) or related regulations. No claim is made by the ER Groups against Anthem as a plan participant, plan sponsor, plan fiduciary, or beneficiary under any plan governed by ERISA. Plaintiffs do not stand in the shoes of Anthem Members for the purposes of this lawsuit.

20.     For further avoidance of doubt, this action also does not include any claim by the ER Groups for benefits under the health plan pursuant to an Assignment of Benefits from any patient. All claims in dispute are claims that were approved by Anthem and were underpaid. None of these claims was wholly denied payment and, therefore, Anthem has conceded that all claims in dispute meet the criteria for medical necessity and "covered services." The ER Groups simply seek to compel Anthem to cease unilaterally and unfairly discounting payments and to make adequate payments directly to ER Groups, pursuant to Virginia law that requires payment to ER Groups for the reasonable value of the emergency medical services rendered to Anthem Members, as required by statute and by common law principles.

FACTS

*The Out-of-Network Emergency Services Provided to Anthem Members*

21.    Each of the ER Groups contracts with hospitals in Virginia to staff those hospitals' emergency departments with physicians and Nurse Practitioners/Physician Assistants. Each of the ER Groups coordinates the billing of its contracted providers for emergency medical services.

22.    Healthcare providers such as ER Groups' contracted providers are generally classified as either "in-network" providers who have negotiated rates with a health insurance company such as Anthem, or "out-of-network" providers who submit billed charges for the reasonable value of the services provided and are paid pursuant to applicable provisions in the Anthem Members' health plans and applicable laws.

23.    Anthem refuses to pay rates for emergency care services in Virginia that are remotely close to those paid by other payors.

24.    None of the ER Groups has a contract for negotiated rates with Anthem, and their providers are therefore "out-of-network" providers with respect to Anthem for the emergency medical services at issue here.

25.    From approximately April 1, 2017 through December 31, 2020, and through the present date, the ER Groups' contracted providers have delivered emergency medical screening and stabilization services to thousands of Anthem Members throughout Virginia.

26.    These services were generally mandatory under governing law and rendered to meet such legal requirements as related to the conditions for which each of the Anthem Members presented in the ER Groups' facilities.

27.     The ER Groups are and were required by law to provide emergency medical services to the Anthem Members regardless of whether those patients had insurance under a health plan for which any given provider was an in-network provider or an out-of-network provider.

28.     Conversely, Anthem did not have the ability to prevent its members from seeking appropriate treatment at the hospitals with whom each of the ER Groups has a contract, despite the ER Groups' providers' out-of-network status.

29.     Each Anthem Member is covered by an Anthem HMO health insurance plan that was in full force and effect at the time when each such Anthem Member sought and obtained the emergency medical services at issue.

30.     Under Virginia law applicable to HMO's and/or Anthem plans, including VA Code § 38.2-3445, Anthem was required to provide coverage to Anthem Members, including emergency services provided by out-of-network providers.

31.     Pursuant to Virginia Code § 38.2-4312.3(A), among other things, Anthem was required to have a system to provide the Anthem Members, on a twenty-four-hour basis, either (i) access to medical care; or (ii) access by telephone to a physician or licensed health care professional with appropriate medical training who can refer or direct a member for prompt medical care in cases where there is an immediate, urgent need or medical emergency.

32.     Under applicable Virginia regulations, Anthem was required to provide to the Anthem Members a sufficient network of medical services providers in terms of number, mix of services, specialists, and geographic practice locations to meet those covered persons' health care needs, including for emergency medical services. Among other things, applicable Virginia regulations require that a managed care provider give its members a choice of *at least two providers* of each covered service type located within a 30 minute travel time or a 25-mile radius.

7

33. Upon information and belief, Anthem failed to make available a sufficient network of contracted providers to Anthem Members in multiple counties across the Commonwealth of Virginia.

34. As a result of having failed to provide an adequate network for Anthem Members, Anthem had actual and constructive knowledge that Anthem Members would be required to seek out-of-network emergency care, including from the facilities staffed by the ER Groups' contracted providers.

35. As a result of having failed to provide an adequate network for Anthem Members, Anthem in fact caused its Members to seek out-of-network emergency care, including from the facilities staffed by the ER Groups' contracted providers.

36. In addition, under Virginia law, Anthem was and is required to arrange for, furnish, and/or provide coverage to Anthem Members for out-of-network emergency medical services, and such services were covered benefits.

37. Under VA Code § 38.2-4312.3(B), Anthem has been legally required to provide coverage for the emergency services at issue and to make *payment directly to* the ER Groups.

38. Accordingly, by issuing policies at issue in Virginia, Anthem expressly and impliedly authorized the emergency services at issue rendered to Anthem Members.

39. The emergency medical services provided to Anthem Members by the ER Groups' contracted providers are covered services within the meaning of each applicable Anthem Members' health insurance plan. Anthem has conceded that the services at issue were covered services by making partial, albeit grossly inadequate, payments for such services.

40. In each such instance, either (a) Anthem or its designee or the member's primary care physician or its designee authorized, directed, or referred the member to use emergency

8

facility staffed by ER Groups' providers; and/or (b) on information and belief, Anthem failed to have a system for the provision of twenty-four-hour access for members as required by Virginia Code § 38.2-4312.3.

***Anthem's Illegal Claims Underpayments***

41.    At relevant times, VA Code § 38.2-3445(2) required Anthem, as a health insurance carrier, to provide coverage for emergency services to Anthem Members without regard to whether the health care provider furnishing the emergency services is a participating in-network health care provider with respect to such services.

42.    With respect to out-of-network emergency services, such as the services at issue here, VA Code § 38.2-3445(4) requires that Anthem provide benefits to Anthem Members in an amount equal to the greatest of: (i) the amount negotiated with in-network providers for the emergency service, or if more than one amount is negotiated, the median of these amounts; (ii) the amount for the emergency service calculated using the same method the health carrier generally uses to determine payments for out-of-network services, such as the usual, customary, and reasonable amount; and (iii) the amount that would be paid under Medicare for the emergency service.

43.    VA Code § 38.2-4312.3(B) requires Anthem to reimburse ER Groups directly for the benefits for the emergency services rendered to the Anthem Members, regardless of ER Groups' status as nonparticipating out-of-network providers, less any applicable copayments, deductibles, or coinsurance.

44.    In addition, under VA Code § 38.2-4312.3(B), the amount Anthem is required to pay ER Groups for the emergency services is an amount sufficient to prevent the members from being balance billed by ER Groups for such services.

9

45.    With respect to the emergency services rendered to the Anthem Members, ER Groups' charges to Anthem Members for such emergency services are in an amount that reflects a reasonable value for such services, including in compliance with VA Code §§ 38.2-3445(B) and 38.2-4312.3(B).

46.    ER Groups have submitted invoices and sufficient supporting claims information to Anthem requesting payment for such charges, and have made repeated demands to Anthem for payment, but Anthem has refused to reimburse the ER Groups for a substantial portion of ER Groups' reasonable charges for the emergency services rendered to the Anthem Members.

47.    Anthem has unilaterally established grossly inadequate rates of compensation, drastically far beneath what is reasonably expectable in Virginia.

48.    Anthem has compounded the problem with its underpayments by making most of its out-of-network payments directly to insured patients, thereby inflicting collection burdens and deficiencies on providers and unnecessary administration burdens on insured patients.

49.    Anthem has designed its approach to improperly exert pressure on providers to enter into in-network agreements at below-market rates in order to obtain direct payments and avoid the burdens of collection efforts, deficiencies and delays.

## COUNT I
### (Tortious Interference)

50.    Plaintiffs hereby repeat, reallege, and incorporate by reference in this Count each and every allegation contained above.

51.    Contractual relationships exist between each of the ER Groups and the pertinent Anthem Member, as well as between each of the ER Groups and the pertinent hospital at which services were rendered.

10

52.    At all relevant times, Anthem has had actual knowledge of the existence of these contractual relationships that ER Groups had with these hospitals and Anthem Members.

53.    Anthem has intentionally interfered with these contracts, making performance under them more difficult and more expensive. In addition, to serve its improper means and motives, Anthem intentionally makes payments directly to Anthem Members in violation of Virginia law, knowing most of them will not in turn pay the funds that are owed to ER Groups. Anthem thereby intentionally induces breaches of obligations owed to ER Groups.

54.    Anthem has acted maliciously when interfering with these contracts, by illegally making payments directly to Anthem Members that should be made directly to ER Groups, in order to exert improper pressure on ER Groups to enter into in-network agreements with Anthem at below-market rates. Indeed, in order to gain this undue leverage, Anthem undertakes additional administrative burdens to make payments directly to Anthem Members rather than out-of-network providers when Anthem knows the providers are supposed to receive the money.

55.    Each of the ER Groups has foreseeably suffered resulting damages as a direct and proximate cause of this interference.

56.    Anthem has acted maliciously to hurt ER Groups and with an intentional disregard of their rights, entitling ER Groups to an award of punitive damages against Anthem.

## COUNT II
### (Breach of Implied Contract-Unjust Enrichment)

57.    Plaintiffs hereby repeat, reallege, and incorporate by reference in this Count each and every allegation contained above.

58.    By providing emergency medical services to the Anthem Members, ER Groups conferred a direct benefit on Anthem, including, without limitation, by satisfying Anthem's obligations to Anthem Members under Virginia law and/or Anthem's contracts with its insureds

11

to arrange for, furnish, and/or provide coverage for such emergency services; by providing the emergency medical services as to which Anthem is obligated to provide coverage and make payment at amounts specified by Virginia law; by providing the Anthem Members with emergency medical services to which they were entitled under Virginia law and/or their contracts with Anthem; and by providing those services as to which Anthem (or its designee/agent) authorized, directed, or referred its members to use emergency facilities staffed by the ER Groups' contracted providers.

59.    Anthem knew and was aware that ER Groups' contracted providers would provide and did provide such emergency medical services to the Anthem Members, and authorized, directed, or referred the Anthem Members to use emergency facilities staffed by the ER Groups' contracted providers.

60.    Upon provision of emergency medical services to an Anthem Member, Anthem possessed funds belonging to the ER Groups as compensation for such services. Anthem has wrongfully retained a vast majority of the funds belonging to the ER Groups by making grossly inadequate payments to ER Groups for the emergency services rendered to the Anthem Members and thereby retaining funds that rightly belong to the ER Groups, which constitutes circumstances that render it inequitable and unjust for Anthem to retain those funds.

61.    In light of Virginia law set forth above and principles of equity and fairness, ER Groups had a reasonable expectation that Anthem would not retain funds belonging to them, but would make direct and adequate payment to ER Groups for the emergency medical services rendered to the Anthem Members by ER Groups' providers, and Anthem should reasonably have expected to make such payments.

12

62.     Anthem wrongfully has refused to make payment to ER Groups for the reasonable value of emergency medical services rendered to the Anthem Members and thereby retained funds that rightly belong to the ER Groups.

63.     In light of Virginia law set forth above, the society's reasonable expectations of person and property would be defeated by Anthem's underpayments.

64.     As described above, ER Groups have conferred direct benefits on Anthem for which Anthem ought to pay reasonable value, Anthem should not justly retain this benefit, and Anthem has enriched itself unjustly at the expense of ER Groups as Anthem has underpaid for the emergency services at issue.

65.     As a direct and proximate result of Anthem's conduct as set out above, Anthem has been damaged in the amount of either: (i) the difference between the amount billed by each of the ER Groups to Anthem and the amount actually paid by Anthem, or (ii) the difference between reasonable value of medical services provided by the ER Groups to the Anthem Members (if such charges are found to be lower than the amounts billed) and the amount paid by Anthem to each of the ER Groups for those services.

## COUNT III
### (Breach of Implied Contract — Quantum Meruit)

66.     ER Groups hereby repeat, re-allege, and incorporate by reference in this Count each and every allegation contained above.

67.     Each of the ER Groups provided valuable emergency medical services to Anthem Members, for which Anthem is obligated to provide coverage to Anthem Members under Virginia law and/or the Anthem Members' plans, and for which emergency medical services Anthem (or

13

its designee/agent) authorized, directed, or referred those members to use the emergency facilities staffed by the ER Groups' contracted emergency medicine providers.

68.    Anthem had knowledge that the ER Groups' contracted providers would provide and did provide emergency medical services to the Anthem Members, and knowingly and voluntarily accepted and acquiesced in those services, including by having actively authorized, directed, referred, and caused Anthem Members to use the emergency facilities staffed by the ER Groups' contracted providers.

69.    Anthem knew at all relevant times that the ER Groups expected to be compensated for the fair market value of emergency medical services at issue provided to Anthem Members, and the ER Groups billed Anthem for these emergency medical services. Anthem has received multiple forms of notice of the illegality of its actions. Nevertheless, Anthem has made partial, yet grossly inadequate payments to the ER Groups for the emergency medical services at issue.

70.    It would inequitable and unjust for Anthem not to pay the ER Groups for the full reasonable value of emergency medical services provided to Anthem Members as reflected in the ER Groups' billed charges. Public policy favors ready access to emergency medical care and fair reimbursement to encourage medical professionals to participate in that field, which requires fair compensation.

71.    As a direct and proximate result of Anthem's conduct as set out above, Anthem has been damaged in the amount of either: (i) the difference between the amount billed by each of the ER Groups to Anthem and the amount actually paid by Anthem, or (ii) the difference between reasonable value of medical services provided by the ER Groups to the Anthem Members (if such

14

charges are found to be lower than the amounts billed) and the amount paid by Anthem to each of the ER Groups for those services.

PRAYER FOR RELIEF

WHEREFORE, the ER Groups pray for judgment against Anthem as follows:

(A)  On Counts I, II, III and IV, damages, compensatory damages, or an award on such other grounds available in law or equity for ER Groups in the amount to be proven at trial, along with an award of punitive damages on Count I;

(B)  prejudgment and post-judgment interest on such amounts pursuant to VA Code § 38.2-4306.1 or to which the ER Groups may otherwise be entitled, plus costs; and/or

(C)  for such further or other relief in the ER Groups' favor as this Court deems just and appropriate.

Respectfully submitted this 19th day of August, 2021.

WESTERN VIRGINIA REGIONAL
EMERGENCY PHYSICIANS, LLC,
LAKE SPRING EMERGENCY GROUP, LLC,
WILDWOOD EMERGENCY GROUP, LLC,
INGLESIDE EMERGENCY GROUP, LLC, and
KINGSFORD EMERGENCY GROUP, LLC

By: _____
                    Counsel

John B. Mumford, Jr. (VSB No.: 38764)
Victoria D. Pretlow (VSB No.: 94950)
HANCOCK, DANIEL & JOHNSON, P.C.
4701 Cox Road, Suite 400
Glen Allen, Virginia 23060
jmumford@hancockdaniel.com
vpretlow@hancockdaniel.com
Telephone: (804) 967-9604
Facsimile: (804) 967-9888
*Counsel for Plaintiffs'*

15

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 19th day of August, 2021, the foregoing was served upon counsel for Defendants by electronic and U.S. mail:

David E. Constine, III (VSB No.: 23223)
Michael E. Lacy (VSB No.: 48477)
Virginia Bell Flynn (VSB No.: 79596)
TROUTMAN PEPPER HAMILTON SANDERS LLP
1001 Haxall Point
Richmond, Virginia 23219
david.constine@troutman.com
michael.lacy@troutman.corn
virginia.flynn@troutman.com
Telephone: (804) 697-1258
Facsimile: (804) 697-1339
*Counsel for Anthem Health Plans of Virginia, Inc.,*
*and HealthKeepers, Inc.*

John B. Mumford, Jr. (VSB No.: 38764)
Victoria D. Pretlow (VSB No.: 94950)
HANCOCK, DANIEL & JOHNSON, P.C.
4701 Cox Road, Suite 400
Glen Allen, Virginia 23060
jmumford@hancockdaniel.com
vpretlow@hancockdaniel.corn
Telephone: (804) 967-9604
Facsimile: (804) 967-9888
*Counsel for Plaintiffs'*

16

**VIRGINIA:**

### IN THE CIRCUIT COURT FOR THE CITY OF RICHMOND

| | |
|---|---|
| WESTERN VIRGINIA REGIONAL EMERGENCY PHYSICIANS, LLC et al., | ) |
| Plaintiffs, | ) |
| v. | ) |
| ANTHEM HEALTH PLANS OF VIRGINIA, INC., D/B/A ANTHEM BLUE CROSS BLUE SHIELD IN VIRGINIA | ) Case No.: CL21000945-00 |
| and | ) |
| HEALTHKEEPERS, INC., | ) |
| Defendants. | ) |

### AGREED ORDER

**On** this day came Plaintiffs, with the consent of the Defendants, by counsel, pursuant to Rule 1:8 of the Rules of the Supreme Court of Virginia, and upon consideration of the Amended Complaint (attached hereto as Exhibit A), and finding the agreement of all parties to Plaintiffs' filing an Amended Complaint it is,

ORDERED that Plaintiffs are granted leave to file an Amended Complaint, and the Amended Complaint attached as Exhibit A shall be deemed filed on the date of the entry of this Order. Defendants shall have seven (7) days from the date of the entry of this Order to file a responsive pleading to the Amended Complaint.

Entered: _____

Judge: _____

Circuit Court, Richmond, Virginia

WE ASK FOR THIS:

John B. Mumford, Jr. (VSB No.: 38764)
Victoria D. Pretlow (VSB No.: 94950)
HANCOCK, DANIEL & JOHNSON, P.C.
4701 Cox Road, Suite 400
Glen Allen, Virginia 23060
jmumford@hancockdaniel.com
vpretlow@hancockdaniel.com
Telephone: (804) 967-9604
Facsimile: (804) 967-9888
*Counsel for Plaintiffs*


SEEN AND AGREED:


_____
David E. Constine, III (VSB No.: 23223)
Michael E. Lacy (VSB No.: 48477)
Virginia Bell Flynn (VSB No.: 79596)
TROUTMAN PEPPER HAMILTON
SANDERS LLP
1001 Haxall Point
Richmond, Virginia 23219
david.constine@troutman.com
michael.lacy@troutman.com
virginia.flynn@troutman.com
Telephone: (804) 697-1258
Facsimile: (804) 697-1339

*Counsel for Anthem Health Plans of Virginia, Inc., and HealthKeepers, Inc.*

WE ASK FOR THIS:

_____

John B. Mumford, Jr. (VSB No.: 38764)
HANCOCK, DANIEL & JOHNSON, P.C.
4701 Cox Road, Suite 400
Glen Allen, Virginia 23060
jmumford@hancockdaniel.com
Telephone: (804) 967-9604
Facsimile: (804) 967-9888
*Counsel for Plaintiffs*


SEEN AND AGREED:

_____

David E. Constine, III (VSB ).: 23223)
Michael E. Lacy (VSB No.: 48477)
Virginia Bell Flynn (VSB No.: 79596)
TROUTMAN PEPPER HAMILTON
SANDERS LLP
1001 Haxall Point
Richmond, Virginia 23219
david.constine@troutman.com
michael.lacy@troutman.com
virginia.flynn@troutman.com
Telephone: (804) 697-1258
Facsimile: (804) 697-1339

*Counsel for Anthem Health Plans of Virginia, Inc., and HealthKeepers, Inc.*