FILED

2024 Dec-02  PM 01:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

|  |  |
|---|---|
| ) | |
| ) | **Master File No. 2:13-CV-20000-RDP** |
| **IN RE:** ) | |
| **BLUE CROSS BLUE SHIELD** ) | |
| **ANTITRUST LITIGATION** ) | |
| **(MDL NO. 2406)** ) | |
| ) | |

**OUT-OF-NETWORK EMERGENCY MEDICAL PROVIDER GROUPS'**
**REPLY TO THE RESPONSES TO OBJECTION TO**
**PRELIMINARY APPROVAL OF PROPOSED CLASS SETTLEMENT**

Pursuant to the Court's scheduling Order, the Out-of-Network ER Groups hereby reply to

the responses by Plaintiffs and the Blue Plans, and state as follows:

Three areas of agreement or consensus emerge from the responses that Plaintiffs and the

Blue Plans have filed to the Out-of-Network ER Groups' amended objection. First, everyone

appears to agree that the named Plaintiffs and the participants in the settlement negotiations did

not include any out-of-network *emergency medicine* providers.[1] Second, everyone appears to agree

that the settlement negotiation established rates that are lower than the amount of rates that out-of-

network emergency medicine providers would seek as either reimbursement or an allocation of

settlement funds. Third, everyone appears to agree that the releases cover more than just the

injuries for which pending antitrust claims sought relief and, instead, reach events that include any

---

[1] As set forth in the Amended Objection, Out-of-Network ER Groups are uniquely situated compared to out-of-network providers of *non*-emergency medical services and from other out-of-network providers because, pursuant to the Emergency Medical Treatment and Labor Act, 42 U.S.C. 1395dd *et seq.* ("EMTALA") and similar applicable state laws, the services provided by Out-of-Network ER Groups were *mandatory* regardless of the particular terms of any insurance coverage that a patient may have, and obligations of insureds and carriers can therefore arise as a matter of law.

topics in filings made to pursue the case, subject to certain exceptions. While any one of these issues in isolation might lend itself to resolution by opting out or objecting later, in combination, these and other problems pose typicality and adequacy issues underlying the broad class definition that includes out-of-network emergency medicine providers despite the lack of participation of any out-of-network emergency medicine provider either in the settlement negotiations or as a named class plaintiff.

Despite typicality and adequacy issues, Plaintiffs and the Blue Plans largely argue that the Court should defer consideration or resolution until a post-preliminary approval stage. This Court has noted, however, that "[t]he 2018 amendments to Rule 23 imposed a heightened standard on counsel seeking preliminary approval of a proposed settlement," and thereby disfavor a wait-and-see approach:

> The 2018 amendments were promulgated after extensive review by the Advisory Committee on Civil Rules. *See* Advisory Committee on Civil Rules (Apr. 25-26, 2017), available at https://www.uscourts.gov/sites/default/files/2017-04-civil-agenda_book.pdf. Judge John D. Bates of the District of Columbia and Judge Robert M. Dow, Jr. of the Northern District of Illinois ably served as Chair of the Advisory Committee on Civil Rules and as Chair of the Rule 23 Subcommittee, respectively. Academics and practitioners have acknowledged that the 2018 amendments have brought about helpful and necessary changes to class action litigation. *See, e.g.*, Rhonda Wasserman, The New, Improved Class Action Rule: The December 2018 Amendments to Rule 23, 90 Pa. Bar Ass'n Q. 182 (2019).

*In re Blue Cross Blue Shield Antitrust Litig.*, No. 2:13-CV-20000-RDP, 2020 WL 8256366, at *6 n.4 (N.D. Ala. Nov. 30, 2020). At the recent hearing in this matter, this Court referred to this process as "front-loading" the information for earlier resolutions of potential issues. As a result of these 2018 amendments, the pre-2018 cases cited by Plaintiffs and the Blue Plans that allow deferral of objections concerning important class definition or release issues are inapposite.

The suggestions by Plaintiffs and the Blue Plans to defer these issues reflect a lack of front-loading, and do not address the serious typicality and adequacy issues in a meaningful way. The

Blue Plans do not mention typicality or adequacy at all. Plaintiffs treat the typicality and adequacy issues as if they pose only a disagreement with the fairness of one or more terms of relief. Indeed, some of the caselaw on which Plaintiffs rely supports the positions of the Out-of-Network ER Groups. For instance, in connection with their argument that factual deviations do not always create typicality or adequacy issues, Plaintiffs cite to *Kornberg v. Carnival Cruise Lines, Inc*., 741 F.2d 1332 (11th Cir. 1984), But in *Kornberg*, which did not involve a settlement or objection, the court held that typicality could be cured if "the class is presently too broadly defined" because when some are affected differently, that "simply **requires** that the class be **limited**." *Id.* at 1337 (Emphases added). Under *Kornberg*, this Court may be able to preliminarily approve a class, whether for settlement or otherwise, but the diverging interests of the Out-of-Network ER Groups "simply requires that the class be limited" or another satisfactory cure.

Plaintiffs also cite to *Williams v. Mohawk Indus*., 568 F.3d 1350 (11th Cir. 2009), in connection with their typicality and adequacy arguments, but that case is now subject to *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), and the argument raises even more significant predominance and commonality issues about potential problems in a proposed $2.8 billion settlement. Plaintiffs' counsel here represented a defendant in *King v. UA Loc. 91*, No. 2:19-CV-01115-KOB, 2020 WL 4003019, at \*13 (N.D. Ala. July 15, 2020), in which the court dismissed a complaint without prejudice but struck class allegations, *rejecting* resort to the *Williams* case because of the decision two years later in *Wal-Mart*:

> Plaintiffs cite to the pre-*Wal-Mart* case *Williams v. Mohawk Indus*., 568 F.3d 1350, 1360 (11th Cir. 2009), for the proposition that the court should certify the class under a "hybrid" arrangement, which would allow certification of the proposed class's injunctive and declaratory claims under Rule 23(b)(2) and its damages claims under Rule 23(b)(3). (Doc. 30 at 23; Doc 41 at 38.) Two years before *Wal-Mart*, the Eleventh Circuit in *Williams* explained a possible hybrid approach as follows: "If the district court determines that common issues predominate and certifies a class for damages under subsection (b)(3), the district

court must consider whether to certify a class under subsection (b)(2) with respect to the employees' claim for equitable relief." *Id*.

But as the Eleventh Circuit has since explained, "Before *Wal-Mart*, we allowed plaintiffs to seek monetary relief through a Rule 23(b)(2) injunction class if the monetary relief was incidental to injunctive relief—that is, if it would flow automatically to class members without complex individualized determinations. In *Wal-Mart*, the Supreme Court appeared to lower the gate on that pathway to certification but did not fully slam it shut." *AA Suncoast*, 938 F.3d at 1174 n.2 (internal quotations omitted).

*Id.* at 13. In other words, the door may not have fully slammed shut on *Williams*, but here the $2.8 billion in monetary relief in the settlement is hardly "incidental" when it creates difficulties or obstacles for the pursuit by the Out-of-Network ER Groups and similarly situated out-of-network emergency medicine providers' pursuit of higher compensation based on significant differences between their rights and those of potential members of the class whose interests were represented in the settlement negotiations.

Perhaps the most puzzling citation by Plaintiffs and the Blue Plans is to *CO Craft, LLC v. Grubhub Inc.*, No. 20-CV-01327-NYW-NRN, 2023 WL 3763525 (D. Colo. June 1, 2023), in which the court denied preliminary approval of a proposed settlement. Among the most important reason, the *CO Craft* court emphasized the need for fairness to absent class members:

"[N]otice in this case is not about allowing absent class members to opt out of the injunctive relief, but rather is about giving them the opportunity to understand how their rights will be affected by the proposed settlement; object to the settlement if they believe it is insufficient; and weigh in on the anticipated motions for attorneys' fees and incentive awards for the named Plaintiffs." *Ang v. Bimbo Bakeries USA*, Inc., No. 13-cv-01196-HSG, 2020 WL 2091801, at *3 (N.D. Cal. Mar. 31, 2020). To further the point, the Court notes that the objection procedures proposed by the Parties are extensive and strict. … Without notice, any opportunity to object is illusory, depriving class members of their right to object under Rule 23(e)(5). "If the class action settlement is 'fundamentally fair, adequate and reasonable,' as required under Rule 23, the parties should have no fear or hesitation about disclosing its terms to absent class members." *Ang*, 2020 WL 2091801, at *3.

*Id.* at *22 (denying preliminary approval of a settlement while requiring improved notice to protect

the rights of absent class members). Similar to concerns that the court explained in *CO Craft*, here Plaintiffs and Blue Plans want to impose on potential class members, such as the Out-of-Network ER Groups, unpredictable consequences or at least the burdens of battles elsewhere over releases without having had the ability to participate in the settlement negotiations that determined uniform in-network formulas by which to determine rates of compensation.

Unlike in the cases on which Plaintiffs rely, here the Out-of-Network ER Groups complain about a class definition that includes them despite potential conflicts in the allocation of substantial settlement funds, the lack of representative participation in negotiations, and (perhaps most importantly) the extension of releases beyond the injuries and relief sought in the case for the antitrust claims at stake. As a result of this confluence of circumstances, the Out-of-Network ER Groups are forced to bear the risk of uncertain language. For example, a lead argument by the Blue Plans about the adequacy of release language is that there is nothing unwitting about entering into an ambiguous release. But that is the problem, not the answer. Language included in the release at issue has most of, but not all, the carveouts needed for certainty that the resolution of an antitrust case will not spill into the right to maintain claims arising from the unique (non-antitrust) interests of out-of-network emergency medicine providers that lacked representation at the settlement table here. Indeed, as a possible cure, the release language could be clarified, by modifications or judicial findings, so that the Out-of-Network ER Groups can avoid having that issue placed before a state court elsewhere that has no experience with this antitrust case.

The Blue Plans appear willing to test the legality of the class definition at a later stage rather than provide clarity now to the scope of the releases to pending litigations. With respect to the scope of releases, unlike the Blue Plans, Plaintiffs do not contend that the cases involving the

5

Out-of-Network ER Groups or their affiliates, pending in other jurisdictions, are impacted.[2] The

Blue Plans suggest, without support, that the scope of releases is simply an acceptable risk imposed

on the Out-of-Network ER Groups that can be avoided by opting out. The Blue Plans rely on the

Eleventh Circuit's approval of similar language in the Subscriber Settlement, *In re Blue Cross*

*Blue Shield Antitrust Litig. MDL 2406*, 85 F.4th 1070, 1083 (11th Cir. 2023), *cert. denied sub nom.*

*Behenna v. Blue Cross Blue Shield Ass'n*, 144 S. Ct. 2686 (2024), and *cert. denied sub nom. Home*

*Depot U.S.A., Inc. v. Blue Cross Blue Shield Ass'n*, 144 S. Ct. 2687 (2024), but the objections that

the Eleventh Circuit considered in connection with Subscriber Settlement did not involve out-of-

network emergency medicine providers or other pending litigation, but simply concerned the

prospective application of similar release language, allocations among subscriber claimants, and

the reasonableness of attorneys' fees. The finality of a settlement should not, however, be forced

upon absent class members who lacked the expectable benefits of similarly-situated class members

participating in the settlement negotiation, which led to consequences that impact claims for

injuries and relief that were not actually at issue in this putative class action.

The simplest solution would be to require the Blue Plans to take a position now about

whether the releases in this settlement impact the other pending litigation involving the Out-of-

---

[2] On at least two occasions, Plaintiffs misconstrue the positions by the Out-of-Network ER Groups. First, Plaintiffs argue that the Out-of-Network ER Groups lack standing if they mean to suggest that out-of-network providers are not in the class definition. But the Out-of-Network ER Groups expressly state in their objection: "The proposed class definition includes, however, not just in-network providers, but also out-of-network providers, including emergency medicine services providers." The Out-of-Network ER Groups focus on the lack of any out-of-network emergency medicine providers among the named plaintiffs or representatives at the settlement table. Second, Plaintiffs seem to misunderstand the Out-of-Network ER Groups' reference to the need for more than just opt-out rights or a later stage of objections, as suggesting that there must be various sub-classes. Rather, regardless of whether sub-classes would cure the issue, the Out-of-Network ER Groups' position is that there are various ways to solve the issue now, including more clarity concerning the impact of the releases to other pending actions, a cure to which the Plaintiffs do not even object so long as they get their preliminary approval in the process.

Network ER Groups and, if so, why. For example, the Florida case is based largely, though not entirely, on a non-antitrust state statutory scheme, which appears carved out of the proposed settlement releases. The Virginia case is based largely on a quantum meruit theory flowing from non-antitrust rights to compensation through in substantial part the patients' insurance plans, which also appears carved out of the releases. Similar problems flow through Texas and North Carolina cases. Despite the apparent carve-outs, the Blue Plans suggest the Out-of-Network ER Groups should suffer the risk of potential ambiguities that may unfairly compensate them because the allocation of the settlement here fails to provide for the higher rates that out-of-network emergency medicine providers should be paid, and the (over)broad releases could force them to battle elsewhere later whether the releases preclude ongoing claims for such further monetary relief. While attempting to force the Out-of-Network ER Groups to make a choice, Plaintiffs and the Blue Plans deprive them of information by which to make a fully-educated decision, with documents concerning the negotiation of the settlement and draft settlement agreements unavailable to confirm all possible extrinsic evidence that might affect how another court, entirely unfamiliar with this action, might be asked to interpret the release later. None of the caselaw cited by Plaintiffs or the Blue Plans remotely supports imposing this form of unfairness on absent class members such as the Out-of-Network ER Groups, when clarity in the release carve-outs may be just an efficient inquiry of the Blue Plans away, followed by pertinent findings about the scope of releases.

WHEREFORE, based on the foregoing, the Out-of-Network ER Groups respectfully request that the Court sustain their objections, make the requested inquiry of the Blue Plans and make findings that give clarity to the impact of releases on the Florida, Virginia, North Carolina and Texas litigations or, otherwise, deny without prejudice Provider Plaintiffs' Motion for Preliminary Approval of Proposed Class Settlement (ECF No. 3192) to allow the parties to address

the releases or related terms more thoroughly. Without an adequate cure, the responses by Plaintiffs and the Blue Plans fail to overcome typicality and adequacy objections, while triggering commonality and predominance issues because of the substantial monetary relief that fails to consider the Out-of-Network ER Groups' rights to greater allocations from the settlement funds if the releases impact the Florida, Virginia, North Carolina and Texas actions.

Dated:  December 2, 2024                           Respectfully submitted,

                                                  /s/Christopher L. Albright
                                                  Christopher L. Albright
                                                  Porterfield, Harper, Mills, Motlow & Ireland, P.A.
                                                  22 Inverness Center Parkway, Suite 600
                                                  Birmingham, Alabama 35242
                                                  Ph.: (205) 980-5000
                                                  albright@phm-law.com


                                                  Of counsel:

                                                  Barry S. Pollack (BBO#642064)
                                                  Phillip Rakhunov (BBO#663746)
                                                  POLLACK SOLOMON DUFFY LLP
                                                  31 St. James Avenue, Suite 940
                                                  Boston MA 02116
                                                  (617) 439-9800
                                                  bpollack@psdfirm.com
                                                  prakhunov@psdfirm.com

**CERTIFICATE OF SERVICE**

I hereby certify that on December 2, 2024, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/Christopher L. Albright