FILED
2025 Jan-10  PM 12:15
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **IN RE:**<br>**BLUE CROSS BLUE SHIELD**<br>**ANTITRUST LITIGATION**<br>**(MDL NO. 2406)** | **Master File No. 2:13-CV-20000-RDP**<br><br>**This Document Relates to**<br>**Provider Track Cases** |

**PROVIDER PLAINTIFFS' MOTION TO DISQUALIFY CYRIL SMITH
AND FOR CORRECTIVE NOTICE**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ ii

BACKGROUND ............................................................................................................................. 1

ARGUMENT ................................................................................................................................. 3

I.    MR. SMITH'S DUTIES OF CONFIDENTIALITY AND LOYALTY PRECLUDE
      HIM FROM REPRESNTING OPT-OUT PLAINTIFFS ...................................................... 3

      A.    MR. SMITH OWES A DUTY OF CONFIDENTIALITY UNDER
            BOTH THE RULES OF PROFESSIONAL CONDUCT AND THE
            PROTECTIVE ORDER IN THIS CASE ................................................................. 3

      B.    MR. SMITH HAS SERIOUS, UNWAIVABLE CONFLICTS OF
            INTEREST ............................................................................................................ 5

      C.    MR. SMITH'S CONFLICTS ARE IMPUTED TO HIS FIRM ............................. 8

II.   MR. SMITH MUST CORRECT HIS MISSTATEMENTS ................................................ 9

CONCLUSION .............................................................................................................................. 14

## TABLE OF AUTHORITIES

**Cases**

*United States v. Edwards*,
    39 F. Supp. 2d 716 (M.D. La. 1999)..................................................................................... 4

*United States v. Jefferson County, Alabama*,
    2008 WL 11394184 (N.D. Ala. Jan. 16, 2008)...................................................................... 6

**Rules**

Ala. R. Prof. Conduct 1.7.............................................................................................................. 5, 6

Ala. R. Prof. Conduct 1.9.................................................................................................................. 6

Ala R. Prof. Conduct 1.10(a) ........................................................................................................... 8

Ala. R. Prof. Conduct 7.1(b) ......................................................................................................... 12

LR 83.1(b)(1) ..................................................................................................................................... 2

LR 83.1(f) ...................................................................................................................................... 4, 5

Cyril Smith is an attorney for the Subscriber Plaintiffs in this case. This Court appointed him to the Subscriber Plaintiffs' Steering Committee, and he is a member of the Subscribers' Settlement Committee. Recently, Mr. Smith has disparaged the Providers' settlement agreement to encourage Provider class members to opt out, so he can represent them in separate litigation. This conduct violates Mr. Smith's prior obligations in the case as a member of the Plaintiffs' Steering Committee in this MDL, as class counsel for the Subscribers' settlement class, and as a signatory to the joint prosecution agreement with the providers which prohibits the outside use of information obtained in that context. Moreover, several of the statements he has made are false or misleading. These statements must be corrected.

Mr. Smith makes no effort to hide his privileged insider role in having obtained an informational advantage. To the contrary, he is promoting his knowledge of the case as a selling point to potential clients. Much of that knowledge is confidential and was obtained pursuant to this Court's protective order and a written agreement with the Providers' counsel that he not use it for any purpose other than preparing and prosecuting this Multidistrict Litigation. In addition, Mr. Smith has several serious, unwaivable conflicts of interest that prevent him from representing Providers in this litigation or related litigation. Simply put, Mr. Smith cannot ethically represent Providers in this case or in opt-out litigation, and his actions jeopardize the Providers' settlement, which took nine years to negotiate. This Court should disqualify him, his firm, and any other firm with which he has shared nonpublic information about the case from further efforts to encourage opt-outs or represent Providers in separate litigation.

## BACKGROUND

Mr. Smith first appeared in this case as an attorney for the plaintiffs in *Cerven, et al. v. Blue Cross and Blue Shield of North Carolina, et al.*, a Subscriber action. Mr. Smith was admitted

to this Court *pro hac vice*, which "conferred disciplinary jurisdiction upon this court for any alleged misconduct arising in the course of, or in preparation for, proceedings in the case." LR 83.1(b)(1). Following the creation of this Multidistrict Litigation, Mr. Smith sought and received a position on the Subscriber Plaintiffs' Steering Committee and the Settlement Committee. Doc. No. 61 at 2; Doc. No. 62-1; Doc. No. 82. When this Court appointed him to the Subscriber Plaintiffs' Steering Committee, it stated that he and the other Committee members were "best suited to represent, on an interim basis, the interests of the class." Doc. No. 61 at 2.

As an attorney for the Subscribers, Mr. Smith has participated in numerous confidential communications between the Subscribers and Providers, and confidential caucuses with the Court that Providers and Subscribers both attended. He has had extensive access to confidential Provider materials, including expert reports and the Provider Plaintiffs' work product, pursuant to a Joint Prosecution Agreement that provides, "Information obtained pursuant to this Agreement and information derived therefrom shall be used for no other purpose other than preparation and prosecution of the Blue Cross Antitrust Cases," which is defined as the MDL. The purpose of that agreement was to preserve the confidentiality of materials shared between the Subscribers and Providers. The confidential information Mr. Smith obtained is subject to a protective order in this case, which states that confidential material "shall be used by such persons to whom it is disclosed only for the purposes of prosecuting or defending *this Proceeding*, including appeals, and for *no other purpose*." Doc. No. 145 at 13 (emphasis added).

Even before the Provider Plaintiffs moved for preliminary approval of their settlement agreement, Mr. Smith began approaching hospitals to discuss the Provider track of this case. After the motion for preliminary approval was filed, Mr. Smith redoubled his efforts. On December 10, he gave a presentation to the Massachusetts Health & Hospital Association called "The Blue Cross

Provider Settlement: What Does It Mean? What Do I Do?"[1] In an advertisement for this presentation, he states, "[T]he settlement terms are opaque and may represent, for some hospitals, just a fraction of valuable claims." *Id.* Mr. Smith sells himself as someone who "oversaw the parallel, highly successful Blue Cross litigation on behalf of insurance subscribers." *Id.* During the presentation, Mr. Smith referred to the fact that he has gained non-public knowledge, saying "I know where the bodies are buried."[2] In short, Mr. Smith is trading on his experience in this litigation, including his exposure to confidential information, to attempt to persuade hospitals to opt out of the Providers' settlement and hire him to pursue separate litigation. In addition, Mr. Smith's presentation contains false or misleading statements that interfere with the ability of Class Members to make an informed decision about whether to opt out. These statements are described in more detail below.

## ARGUMENT

## I.     MR. SMITH'S DUTIES OF CONFIDENTIALITY AND LOYALTY PRECLUDE HIM FROM REPRESENTING OPT-OUT PLAINTIFFS.

### A.     MR. SMITH OWES A DUTY OF CONFIDENTIALITY UNDER BOTH THE RULES OF PROFESSIONAL CONDUCT AND THE PROTECTIVE ORDER IN THIS CASE.

Throughout this litigation, the Subscribers and Providers have shared highly confidential information with each other pursuant to their Joint Prosecution Agreement. For example, the Providers' expert reports on damages are not public to this day, but Mr. Smith has access to them. Alabama's Rule of Professional Conduct 1.6 protects the confidentiality of the Providers' information: "A lawyer shall not reveal information relating to representation of a client ...." A comment to the Rule emphasizes its broad scope: "The confidentiality rule applies not merely to

---

[1] Available at https://www.mhalink.org/event/the-blue-cross-provider-settlement-what-does-it-mean-what-do-i-do-2/.

[2] The presentation is available at https://www.youtube.com/watch?v=tN6FOEpdIAA.

matters communicated in confidence by the client but also to all information relating to the representation, whatever its source." The Alabama Rules of Professional Conduct apply to attorneys appearing in this Court *pro hac vice*. LR 83.1(f).

In addition to his ethical obligations, Mr. Smith is required by this Court's protective order to maintain the confidentiality of information he receives in connection with this case. That information "shall be maintained in confidence," "may be disclosed only to persons entitled to access thereto under the terms of this Protective Order," and "shall be used by such persons to whom it is disclosed only for the purposes of prosecuting or defending this Proceeding, including appeals, and for no other purpose." Doc. No. 145 at 13.

An attorney in Mr. Smith's position, with extensive confidential information about the Providers' case, which he obtained through a written agreement with the Providers' counsel, might be tempted to use that information to win clients and pursue litigation. But that is expressly prohibited: "[An] attorney should not place himself in a position where there may be the temptation to take advantage of information derived from confidential communications. … A federal court, in the exercise of its duty to supervise members of its bar, has a duty to support the strong public interest in preserving client confidences and in preserving the integrity of the litigation process." *United States v. Edwards*, 39 F. Supp. 2d 716 (M.D. La. 1999). Citing one's knowledge of nonpublic information to win clients would plainly violate the protective order as well.

Mr. Smith, however, has gone beyond temptation. Having tasted the apple, he is now affirmatively advertising his access to confidential information, even though using that information in opt-out litigation would violate his ethical duties and the protective order this Court entered. Solicitation based on privileged communication is impermissible. Unless Mr. Smith is

disqualified, there will be no way for the Court or the Provider Plaintiffs to determine what Mr.

Smith reveals to clients in opt-out litigation, or whether he is complying with the protective order.[3]

### B.    MR. SMITH HAS SERIOUS, UNWAIVABLE CONFLICTS OF INTEREST.

Rule 1.7 of the Alabama Rules of Professional Conduct, which bind Mr. Smith in this case

under Local Rule 83.1(f), provides:

(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

(1) The lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

(2) Each client consents after consultation.

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or a third person, or by the lawyer's own interests, unless

(1) The lawyer reasonably believes the representation will not be adversely affected; and

(2) The client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

A comment to Rule 1.7 states, "Loyalty to a client is also impaired when a lawyer cannot

consider, recommend or carry out an appropriate course of action for the client because of the

lawyer's other responsibilities or interests. The conflict in effect forecloses alternatives that would

otherwise be available to the client." Even if Mr. Smith's representation of the Subscribers could

be considered complete (although it is unclear to the Provider Plaintiffs if this is the case, as

---

[3] To be clear, the Provider Plaintiffs are not taking the position that the Joint Prosecution Agreement itself requires Mr. Smith's disqualification. His misuse of information obtained pursuant to that agreement requires disqualification.

administration of the Subscribers' settlement will continue for years), the duty of loyalty extends to former clients as well. Ala. R. Prof. Conduct 1.9.

When an attorney represents a class, as Mr. Smith does here, a conflict cannot be waived. *United States v. Jefferson County, Alabama*, 2008 WL 11394184, at *31 (N.D. Ala. Jan. 16, 2008) (collecting cases). Therefore, such an attorney is not entitled to invoke the exceptions to Rules 1.7(a) and 1.7(b). Mr. Smith's representation of the Subscribers creates numerous unwaivable conflicts with the representation of Provider opt-outs.

To advocate for Provider opt-outs in separate litigation, Mr. Smith will be forced to take positions adverse to his original clients, the Subscribers, and his representation of Provider opt-outs will be materially limited by positions he and the Subscribers have taken in this case.

*First*, any Provider who opts out of the Providers' settlement will not be entitled to any of the injunctive relief in the settlement, and likely could never obtain that relief even after prevailing at trial. Doc. No. 3192-1 at 39–40. All the more so if the solicitation of opt outs succeeds to the level of compromising the provider settlement altogether.  Much of this injunctive relief directly benefits Subscribers: improved pre-authorization processes, the BlueCard Executive, real-time messaging, and the settlement's compliance process will facilitate their access to care. When Mr. Smith advises a Provider to opt out, he is advising it to forgo these benefits that the Subscribers (who are still Mr. Smith's clients) would have received. Therefore, even before any opt-out litigation begins, Mr. Smith's representation of a Provider client will be directly adverse to his Subscriber clients.

*Second*, the Blues have taken the position that awarding relief to Provider Plaintiffs would harm Subscribers. According to their expert Dr. Murphy, "Plaintiffs' proposed elimination of or changes to the challenged rules would harm subscribers, providers and competition. Elimination

of or changes to the rules would weaken the Blues as competitors in their local areas and in jointly serving national accounts. If providers succeed in obtaining the higher reimbursement rates they seek and in weakening or eliminating BlueCard, then the Blue system will become less efficient and subscribers will be harmed." Doc. No. 1353-51, at 4. Additionally, Dr. Murphy stated, "Providers' theory of pass through of BlueCard fees to subscribers means that subscribers should expect increases in premiums (and claims costs for self-insured accounts directly) if providers obtain the reimbursement increases they seek that will dwarf BlueCard fees." *Id.* at 31.

Although the Provider Plaintiffs have disagreed with this assertion, it may have to be settled by the Court subsequently and that presents many potential further conflicts. Once squarely presented, the Blues will continue to argue that health insurance is a two-sided platform, in which there is an "integral relationship" between Provider reimbursements and Subscriber premiums. Doc. No. 3054 at 26. This Court has not ruled on the issue, but the Blues will assert it again in any opt-out litigation. An unfavorable ruling for a Provider opt-out plaintiff would mean that to the extent such a plaintiff seeks increased reimbursements from the Blues, those increases will fall on Subscribers. An attorney cannot ethically represent both Providers and Subscribers under these circumstances.

*Third*, Mr. Smith and one of the Subscribers' experts have publicly stated that the Providers' damages are relatively small. The Subscribers' expert Dr. Ariel Pakes opined that more competition would benefit Subscribers, but with a very important caveat. Dr. Pakes employed a model in which "a more competitive upstream market [among insurers] increases premiums (presumably through higher payments to providers)." Doc. No. 2457-42 at ¶ 156. But he determined that this effect—higher reimbursements to Providers causing higher premiums—was quite small; he estimated that BCBS-AL receives a discount of 59.5% on Providers' services, while

a new entrant would receive a discount of 58.0%. *Id.* App'x C at 52. This difference is an order of magnitude lower than the difference estimated by the Providers' expert Dr. Haas-Wilson. Consistent with Dr. Pakes's opinion that the Providers' damages are relatively low, Mr. Smith has publicly stated that the Providers' case is weaker than the Subscribers' case. By taking this position on behalf of the Subscribers, Mr. Smith has materially limited his ability to advocate for significant damages on behalf of Providers.

The Alabama State Bar Office of General Counsel ("OGC") has provided an opinion that Mr. Smith's representation of Provider opt-outs appears to violate Rule 1.7 (and 1.9, if applicable), and that the Provider Plaintiffs have an "absolute obligation" to file a bar complaint or report the violations to this Court.[4] Ex. 1. The OGC's reasoning largely tracks the Provider Plaintiffs' arguments above. In order to achieve the appropriate and necessary remedy, the Provider Plaintiffs' counsel are satisfying their ethical obligation to report Mr. Smith's violations to this Court.

### C.    MR. SMITH'S CONFLICTS ARE IMPUTED TO HIS FIRM.

Under Rule 1.10(a) of the Alabama Rules of Professional Conduct, Mr. Smith's conflicts are imputed to all members of his firm, Zuckerman Spaeder LLP: "While lawyers are associated in a firm, none of them shall knowingly represent a client when any of them, practicing alone, would be prohibited from doing so by Rules 1.7, 1.8(a)-1.8(k), 1.9, or 2.2." As a comment to the rule explains, imputed disqualification "gives effect to the principle of loyalty to the client as it applies to lawyers who practice in a law firm. Such situations can be considered from the premise that a firm of lawyers is essentially one lawyer for purposes of the rules governing loyalty to the

---

[4] Strictly speaking, the opinion relies on the Provider Plaintiffs' description of Mr. Smith's conduct. The OGC has not made factual findings about Mr. Smith's conduct.

client, or from the premise that each lawyer is vicariously bound by the obligation of loyalty owed by each lawyer with whom the lawyer is associated."

During his presentation, Mr. Smith was joined by one of his partners. But no attorney at Zuckerman Spaeder can ethically represent opt-out Provider Plaintiffs. In addition, Mr. Smith stated, "We are in a group with two other nationally prominent law firms." Those firms must be identified and ordered to show cause why they should not be disqualified as well.

## II.    MR. SMITH MUST CORRECT HIS MISSTATEMENTS

Mr. Smith's presentation used numerous untruthful or misleading statements to inflate his own role in the Subscriber litigation and imply that Co-Lead Counsel for the Provider Plaintiffs had merely tagged along with the Subscribers, agreed to a poor deal, and were not being forthcoming with Class Members. The following are examples of false or misleading statements made in these presentations, which undermine the Court's and Co-Lead Counsel's efforts to provide Class Members with fair and reasonable notice of the Settlement.

*"Cy Smith was appointed by the Alabama court in 2013 to oversee the Subscribers litigation against the Blues, and spent more than a decade on that task."*

*"In 2018, Subscribers won a key victory in court: the combination of ESAs and NBE was illegal 'per se' under federal antitrust law."*

Someone whose only knowledge of the MDL came from Mr. Smith's presentation would assume that he oversaw the Subscriber litigation, and that the Subscribers alone won a key victory while the Providers sat on the sideline. This is false. This Court appointed David Boies and Michael Hausfeld, not Mr. Smith, to oversee the Subscriber litigation. Doc. No. 61 at 1, 3–4. Mr. Smith was appointed to the Plaintiffs' Steering Committee, whose role was to "report to their track's Interim Co-Lead Class Counsel, support the Interim Co-Lead Class Counsel in the prosecution of

this litigation, and facilitate supervision of committees organized to perform common benefit work." *Id.* at 4–5. And, as the Court knows well, the Providers and Subscribers both moved for summary judgment on the standard of review. Mr. Smith did not argue that motion for the Subscribers.

> *The Court's ruling on the standard of review "is not quite game over it's pretty close to it."*

> *"The odds are overwhelming that you would do better" by opting out.*

Anyone who has followed this litigation closely knows that this statement is misleading at best. This Court's rulings on the standard of review established that the Blues' conduct through 2021 would be evaluated under the *per se* standard, but that is not a finding of liability or damages. The Blues have asserted defenses to the Provider Plaintiffs' claims, including their *per se* claims, on the grounds that the Blues are a single entity that is incapable of conspiring, and that the Blues are entitled to use Exclusive Service Areas to enforce their common-law trademark rights. Motions for summary judgment relating to these defenses have been denied, so these issues would go to a jury. Doc. Nos. 3093, 3103. In addition, even if these defenses are unsuccessful, a plaintiff would have to prove its damages to a jury. The Blues have asserted that the Provider Plaintiffs have failed to proffer a reliable model for damages because health insurance is a two-sided platform and because the Provider Plaintiffs incorrectly defined the relevant markets, among other reasons. These too could be questions for the jury.

If Mr. Smith's point is that the Blues will quickly cave to opt-out plaintiffs with generous settlements, his statement contradicts this Court's order granting preliminary approval to the settlement, which states, "if the individual providers were to bring their own actions, the court

suspects that the Blues would litigate each one to its conclusion rather than enter into piecemeal settlements." Doc. No. 3225 at 37 n.6. This is consistent with the Blues' attorneys' statement at the preliminary approval hearing: "This is not a case that Defendants were unable to litigate or were afraid to litigate." 11/14/24 Tr. at 77.

*"Preliminary estimates suggest that the Blues' refusal to compete decreased reimbursements by 5-10%, depending on the market."*

Mr. Smith claims that decreased reimbursements would be in the 5-10% range, which is about the range for Alabama hospitals. But later in his presentation, he admits that he has no basis to make this claim: "We haven't done the work."

Simply looking at the difference between the Blues' average reimbursements and other insurers' average reimbursements and calling it damages would never survive a *Daubert* motion. The difficult work, which the Provider Plaintiffs spent tens of millions of dollars to do, was to isolate the effect of the Blues' conduct from all the other factors that might affect reimbursement. Without that work, there is no reliable basis to claim that hospitals might recover damages that high.

If Mr. Smith's estimates were based on the Provider Plaintiffs' estimate for Alabama hospitals, then they are wildly overstated for the hospitals who were the audience for his presentation. As this Court pointed out in its preliminary approval order, "Blue Cross and Blue Shield of Alabama has the highest market share of any Blue Plan in the United States. Thus, a similar damages estimate in other markets with greater competition would be lower." Doc. No. 3225 at 38–39. The Blues' market share in Massachusetts is much lower. No one should be using figures from Alabama to estimate damages for hospitals outside Alabama; even hypothetical

damages estimates must have some basis in fact. *See* Ala. R. Prof. Conduct 7.1(b) ("A communication is false or misleading if it: … Is likely to create an unjustified expectation about results the lawyer can achieve ….").

> *Changes to BlueCard like "a new 'super BlueCard executive,'" Service Level Agreements, expanded contiguous area contracting, and "miscellaneous process changes" are "the extent of the so-called injunctive relief."*

> *Changes to contiguous area contracting in the settlement are "modest."*

> *"Hundreds of millions of dollars is a rounding error in terms of the Blues' annual business. I mean that that's probably the cost of the team building exercises that the Blues hold on an annual basis."*

Mr. Smith downplays the significance of the injunctive relief, focusing on the BlueCard Executive as his only example of BlueCard transformation and mocking it twice during the presentation. This Court has stated, "Settlement Class Members will benefit from a comprehensive transformation of the BlueCard Program, saving administrative costs and improving their ability to recover payment for their services for years to come. The Blues will invest hundreds of millions of dollars to implement this transformation." Doc. No. 3225 at 39. The Court also noted that the settlement "removes a significant restriction on Contiguous Area Contracts with another Blue Plan." *Id.* An attorney could, in good faith, explain all the categories of injunctive relief and explain why that attorney believes they are not particularly valuable. But an attorney cannot, in good faith, cherry-pick and mock particular aspects of the injunctive relief while representing them as "the extent of the so-called injunctive relief." This is misleading. Nor can an attorney falsely claim that

the amount the Blues will invest in transforming their systems is comparable to the amount they spend on team-building exercises.

*With regard to limiting injunctive relief to Providers who remain in the settlement, it "seems like that that's going to be very tough to have two separate systems in place for one of the hospitals that stayed out."*

Mr. Smith has no basis to suppose that Providers who opt out will receive a substantial benefit from the settlement's injunctive relief. It would not be necessary to have "two separate systems" to limit injunctive relief to Providers who remain in the settlement; they merely need not to be given access to new functionality the Blues add to their systems.

*If the number of opt-outs hits a certain threshold, "there could be consequences in terms of the size of the settlement."*

This is blatantly false. There is no reduction provision in the settlement agreement, Doc. No. 3192-1 at 1, and the plan of distribution does not condition the size of the net settlement fund on the number of opt-outs, Doc. No. 3207-1. Mr. Smith's statement is likely to mislead providers by implying that if they opt out, money that would have gone to the class will become available to pay them instead.

*"There's no reason to think the Providers' case is going to be quicker to finish"* than the *Subscribers'* case.

In trying to lead Providers to believe that they will have to wait four years for their money if they participate in the settlement, Mr. Smith has it backwards; there is no reason to think the

Providers' case will take as long as the Subscribers' case. The Subscribers' case took four years because the Subscribers' counsel (including Mr. Smith) overlooked a significant issue and ultimately had to send a second notice to the class. No comparable issue has surfaced in the Providers' case.

## CONCLUSION

Mr. Smith has already been well paid for his work for the Subscribers; he should not be allowed to monetize his violations of his ethical obligations and his obligations under the protective order, while jeopardizing the Provider Plaintiffs' settlement. For the reasons above, Mr. Smith and his firm should be disqualified from representing Providers in this litigation or related litigation. In addition, Mr. Smith should be ordered to identify the two other firms in his "group," and those firms should be ordered to show cause why they should not be disqualified as well. Further, Mr. Smith should be required to send corrective notice to anyone to whom he has marketed himself.

Respectfully submitted this the 10th day of January, 2025.

*/s/ Samuel Issacharoff*

Samuel Issacharoff
40 Washington Square South
New York, NY 10012
Phone: 212-998-6580
Email: si13@nyu.edu

*/s/ Edith M. Kallas*

Edith M. Kallas – **Co-Lead Counsel**
WHATLEY KALLAS, LLP
152 West 57th Street
41st Floor
New York, NY 10019
Tel: (212) 447-7060
Fax: (800) 922-4851
Email: ekallas@whatleykallas.com

*/s/ Joe R. Whatley, Jr.*

Joe R. Whatley, Jr. – **Co-Lead Counsel**
W. Tucker Brown
WHATLEY KALLAS, LLP
2001 Park Place North
1000 Park Place Tower
Birmingham, AL 35203
Tel: (205) 488-1200
Fax: (800) 922-4851
Email: jwhatley@whatleykallas.com
    tbrown@whatleykallas.com

*/s/ Barry A. Ragsdale*

Barry Alan Ragsdale – **Plaintiffs' Liaison Counsel and Discovery Liaison Counsel**
Dominick Feld Hyde, PC
1130 22nd Street South Ridge Park
Suite 4000
Birmingham, AL 35205
Tel: (205) 536-8888
bragsdale@dfhlaw.com

*/s/ Dennis Pantazis*

Dennis Pantazis – **Plaintiffs' Steering Committee**
Brian Clark – **Discovery Committee**
WIGGINS CHILDS PANTAZIS FISHER GOLDFARB
The Kress Building
301 Nineteenth Street North
Birmingham, AL 35203
Tel: (205) 314-0500
Fax: (205) 254-1500
Email: dgp@wigginschilds.com
    bclark@wigginschilds.com

*/s/ Aaron S. Podhurst*

Aaron S. Podhurst – **Plaintiffs' Steering Committee**
Peter Prieto – **Chair, Expert Committee**
PODHURST ORSECK, P.A.
One S.E. 3rd Avenue
Suite 2300
Miami, FL 33131
Tel: (305) 358-2800
Fax: (305) 358-2382
Email: apodhurst@podhurst.com
    pprieto@podhurst.com

*/s/ U.W. Clemon*

U.W. Clemon – **Plaintiffs' Steering Committee**
U. W. Clemon, LLC
5202 Mountain Ridge Parkway
Birmingham, AL 35222
Tel: (205) 837-2898
Email: uwclemon1@gmail.com

/s/ J. Mark White
J. Mark White – **Litigation Committee**
/s/ Augusta S. Dowd
Augusta S. Dowd – **Chair, Litigation Committee**
Linda G. Flippo – **Discovery Committee**
WHITE ARNOLD & DOWD, P.C.
2001 Park Place North
Suite 1400
Birmingham, AL  35203
Tel: (205) 323-1888
Fax: (205) 323-8907
Email: mwhite@whitearnolddowd.com
        adowd@whitearnolddowd.com
        lflippo@whitearnolddowd.com

/s/ W. Daniel Miles, III
W. Daniel Miles, III – **Written Submissions Committee**
BEASLEY ALLEN CROW METHVIN PORTIS
 & MILES, P.C.
218 Commerce Street
Montgomery, AL 36104
Tel: (800) 898-2034
Fax: (334) 954-7555
Email: dee.miles@beasleyallen.com

/s/ Mark K. Gray
Mark K. Gray – **Discovery Committee**
GRAY & WHITE
713 E. Market Street, Suite 200
Louisville, KY 40202
Tel: (502) 805-1800
Fax: (502) 618-4059
Email: mgray@grayandwhitelaw.com

/s/ Myron C. Penn
Myron C. Penn – **Discovery Committee**
PENN & SEABORN, LLC
53 Highway 110
Post Office Box 5335
Union Springs, AL 36089
Tel: (334) 738-4486
Fax: (334) 738-4432
Email: myronpenn28@hotmail.com

Patrick J. Sheehan
WHATLEY KALLAS, LLP
101 Federal Street
19th Floor
Boston, MA 10019
Tel: (617) 573-5118
Fax: (617) 371-2950
Email: psheehan@whatleykallas.com

Henry C. Quillen
WHATLEY KALLAS, LLP
159 Middle Street
Suite 2C
Portsmouth, NH 03801
Tel: (603) 294-1591
Fax: (800) 922-4851
Email: hquillen@whatleykallas.com

Deborah J. Winegard
WHATLEY KALLAS, LLP
1068 Virginia Avenue, NE
Atlanta, GA 30306
Tel: (404) 607-8222
Fax: (404) 607-8451
Email: dwinegard@whatleykallas.com

Charles Clinton Hunter
HAYES HUNTER PC
4265 San Felipe, Suite 1000
Houston, TX 77027
Tel: (281) 768-4731
Fax: (713) 583-7047
Email: chunter@hayeshunterlaw.com

E. Kirk Wood, Jr. – *Local Facilitating Counsel*
WOOD LAW FIRM LLC
P. O. Box 382434
Birmingham, AL 35238
Tel: (205) 612-0243
Fax: (205) 705-1223
Email: kirk@woodlawfirmllc.com

Nicholas B. Roth – *Chair, Discovery Committee*
Julia Smeds Roth – *Discovery Committee*
EYSTER KEY TUBB ROTH MIDDLETON
 & ADAMS, LLP
402 East Moulton Street, SE
Decatur, AL 35602
Tel: (256) 353-6761
Fax: (256) 353-6767
Email: nbroth@eysterkeylaw.com
        jroth@eysterkeylaw.com

Van Bunch – *Chair, Class Certification Committee*
BONNETT FAIRBOURN FRIEDMAN &
 BALINT, P.C.
2325 E. Camelback Road, Suite 300
Phoenix, AZ 85016
Tel: (602) 274-1100
Fax: (602) 274-1199
Email: vbunch@bffb.com

Robert J. Axelrod – *Chair, Written Submissions Committee*
AXELROD LLP
800 Third Avenue, Suite 2800
New York, NY 10022
Tel: (646) 448-5263
Fax: (212) 840-8560
Email: raxelrod39@gmail.com

Dennis C. Reich – *Chair, Damages Committee*
REICH & BINSTOCK, LLP
4265 San Felipe, Suite 1000
Houston, TX 77027
Tel: (713) 622-7271
Fax: (713) 623-8724
Email: dreich@reichandbinstock.com

David A. Balto – *Expert Committee*
THE LAW OFFICES OF DAVID A. BALTO
1350 I Street, N.W., Suite 850
Washington, DC 20005
Tel: (202) 789-5424
Fax: (202) 589-1819
Email: david.balto@dcantitrustlaw.com

Joey K. James – *Litigation Committee*
BUNCH & JAMES
P. O. Box 878
Florence, AL 35631
Tel: (256) 764-0095
Fax: (256) 767-5705
Email: joey@joeyjameslaw.com

Richard S. Frankowski – *Discovery Committee*
THE FRANKOWSKI FIRM, LLC
231 22nd Street South, Suite 203
Birmingham, AL 35233
Tel: (205) 390-0399
Fax: (205) 390-1001
Email: richard@frankowskifirm.com

John C. Davis – ***Written Submissions Committee***
LAW OFFICE OF JOHN C. DAVIS
623 Beard Street
Tallahassee, FL 32303
Tel: (850) 222-4770
Email: john@johndavislaw.net

Lynn W. Jinks, III – ***Expert Committee***
Christina D. Crow – ***Discovery Committee***
JINKS CROW, P.C.
219 North Prairie Street
Union Springs, AL 36089
Tel: (334) 738-4225
Fax: (334) 738-4229
Email: ljinks@jinkslaw.com
       ccrow@jinkslaw.com

Stephen M. Hansen – ***Class Certification Committee***
LAW OFFICE OF STEPHEN M. HANSEN
1821 Dock Street
Tacoma, WA 98402
Tel: (253) 302-5955
Fax: (253) 301-1147
Email: steve@stephenmhansenlaw.com

C. Wes Pittman – ***Settlement Committee***
THE PITTMAN FIRM, P.A.
432 McKenzie Avenue
Panama City, FL 32401
Tel: (850) 784-9000
Fax: (850) 763-6787
Email: wes@pittmanfirm.com

Robert B. Roden – ***Litigation Committee***
SHELBY RODEN, LLC
2956 Rhodes Circle
Birmingham, AL 35205
Tel: (205) 933-8383
Fax: (205) 933-8386
Email: rroden@shelbyroden.com

Michael C. Dodge – ***Expert Committee***
GLAST PHILLIPS & MURRAY, P.C.
14801 Quorum Drive, Suite 500
Dallas, TX 75254
Tel: (972) 419-7172
Email: mdodge@gpm-law.com

Michael E. Gurley, Jr. – ***Discovery Committee***
Attorney at Law
24108 Portobello Road
Birmingham, AL 35242
Tel: (205) 908-6512
Email: mgurleyjr@yahoo.com

Harley S. Tropin – ***Damages Committee***
Javier A. Lopez – ***Discovery Committee***
KOZYAK TROPIN &
 THROCKMORTON, P.A.
2525 Ponce De Leon Boulevard, 9th Floor
Miami, FL 33134
Tel: (305) 372-1800
Fax: (305) 372-3508
Email: hst@kttlaw.com
       jal@kttlaw.com

J. Preston Strom, Jr. – ***Litigation Committee***
STROM LAW FIRM, LLC
2110 N. Beltline Boulevard, Suite A
Columbia, SC 29204-3905
Tel: (803) 252-4800
Fax: (803) 252-4801
Email: petestrom@stromlaw.com

Thomas V. Bender – ***Discovery Committee***
Dirk L. Hubbard
HORN AYLWARD & BANDY, LLC
2600 Grand Blvd., Suite 1100
Kansas City, MO 64108
Tel: (816) 421-0700
Email: tbender@hab-law.com
 dhubbard@hab-law.com

Gregory S. Cusimano – *Litigation Committee*
CUSIMANO, ROBERTS & MILLS, LLC
153 South 9th Street
Gadsden, AL 35901
Phone: (256) 543-0400
Fax: (256) 543-0488
Email: greg@alalawyers.net

Brian E. Wojtalewicz
WOJTALEWICZ LAW FIRM, LTD.
139 N. Miles Street
Appleton, MN 56208
Tel: (320) 289-2363
Fax: (320) 289-2369
Email: brian@wojtalewiczlawfirm.com

Archie C. Lamb, Jr.
ARCHIE LAMB & ASSOCIATES, LLC
301 19th Street North, Suite 585
The Kress Bldg.
Birmingham, AL 35203-3145
(205) 458-1210
Email: alamb@archielamb.com

Paul Lundberg
LUNDBERG LAW, PLC
600 4TH Street, Suite 906
Sioux City, IA 51101
Tel: (712) 234-3030
Fax: (712) 234-3034
Email: paul@lundberglawfirm.com

Gary E. Mason – *Class Certification Committee*
WHITFIELD BRYSON & MASON, LLP
1625 Massachusetts Ave. NW, Suite 605
Washington, DC 20036
Tel: (202) 429-2290
Fax: (202) 640-1160
Email: gmason@wbmllp.com

Michael L. Murphy – *Discovery Committee*
BAILEY GLASSER LLP
910 17th Street, NW, Suite 800
Washington, DC 20006
Tel: (202) 463-2101
Fax: (202) 463-2103
Email: mmurphy@baileyglasser.com

Lance Michael Sears
SEARS & SWANSON, P.C.
First Bank Building
2 North Cascade Avenue, Suite 1250
Colorado Springs, CO 80903
Tel: (719) 471-1984
Fax: (719) 577-4356
Email: lance@searsassociates.com

Jessica Dillon
Ray R. Brown
Molly Brown
DILLON & FINDLEY, P.C.
1049 W. 5th Avenue, Suite 200
Anchorage, AK 99501
Tel: (907) 277-5400
Fax: (907) 277-9896
Email: Jessica@dillonfindley.com
    Ray@dillonfindley.com
    Molly@dillonfindley.com

Gwen Simons
Simons & Associates Law, P.A.
P.O. Box 1238
Scarborough, ME 04070-1238
Tel: (207) 205-2045
Fax: (207) 883-7225
Email: gwen@simonsassociateslaw.com

Allyson C. Dirksen
HEIDMAN LAW FIRM, P.L.L.C.
1128 Historic 4th Street
P. O. Box 3086
Sioux City, IA 51101
Tel: (712) 255-8838
Fax (712) 258-6714
Email: allyson.dirksen@heidmanlaw.com

*Counsel for Provider Plaintiffs*