FILED

2025 Jan-24  PM 04:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT 3

ZUCKERMAN
SPAEDER

# Blue Cross Blue Shield Providers' Settlement:

What does it mean?

What do I do?

Presentation prepared for



MASSACHUSETTS
Health & Hospital
ASSOCIATION

December 2024

# Zuckerman Spaeder Presenters



**Cy Smith**
Partner

Cy Smith has three decades of trial experience in large, complex civil litigation. Recently, he served on the court-appointed, five-person Plaintiffs' Steering Committee directing the Blue Cross litigation on behalf of health insurance subscribers. Cy's work has been described by one court as "an exemplar of exactly how entrepreneurial plaintiffs' contingent fee litigation ought to work" and he has been named a "Trailblazer" by *The National Law Journal*.



**Bill Schultz**
Partner

Bill Schultz focuses on complex regulatory issues and provides strategic advice to companies and public interest organizations. He represents providers before the U.S. Department of Health and Human Services (where he served as general counsel), other federal agencies, and the courts. Notably, Bill represented hospital trade associations and hospitals in litigation regarding HHS regulations and management of the 340B program.

 2

# How We Got Here

- Class actions filed by Subscribers and Providers in 2012 and consolidated in Alabama federal court.

- Cases challenged Blues' "Exclusive Service Areas," or ESAs (limits to business outside home state or area) and "National Best Efforts Clause," or NBE (limits to non-Blue business nationwide).

- Subscribers claimed that lack of Blue competition increased price of insurance; Providers claimed that lack of competition decreased reimbursements.

ZUCKERMAN SPAEDER | 3

## How We Got Here (cont'd.)

- In 2018, Subscribers won a key victory in court: the combination of ESAs and NBE was illegal "per se" under federal antitrust law.

- This led to settlement talks for Subscribers, and a deal in 2020 – outlawing NBE, increasing Blue competition for ASO business, and paying some $2.7 billion to Subscribers class.

- In summer 2024, Supreme Court rejected final challenges to the deal.

- Providers lagged behind: settlement announced in October 2024.

ZUCKERMAN SPAEDER    4

# What's in the Provider Settlement?

- After paying attorneys' fees, slightly less than $2 billion for hospitals
  - This covers all 6,000 hospitals in the country, for 2008-2024, for all possible antitrust claims against the Blues.

- "Injunctive relief" consisting of changes to Blue business practices
  - Blue Card improvements
  - Service Level Agreements
  - Modest changes to allow contiguous area contracts
  - Miscellaneous process changes

# How Does the Money in the Settlement Stack Up?

- Providers had earlier estimated that hospitals in Alabama alone (population: 5.5 million), from 2008-2019, suffered billions in lost Blue reimbursements.
  - But they also say that they have not even calculated the total damages for all 6,000 hospitals across the entire country (population 330 million) for the entire 2008-2024 period covered by the settlement. (This is highly unusual.)

- Preliminary estimates suggest that the Blues' refusal to compete decreased reimbursements by 5-10%, depending on the market.
  - This could place damages over $100 billion across the country, before mandatory trebling. But regardless of the exact number, the settlement is clearly for a single-digit percentage of actual loss.
  - In Massachusetts, where Blue Cross has a 36% market share, we would expect numbers towards the low end of this range.

 ZUCKERMAN SPAEDER | 6

# What Is My Hospital's Claim Worth in the Settlement?

- Great question!  Your hospital's recovery is determined by a fraction whose numerator is its total allowed Blue claims from 2008-2024, adjusted by factors "such as" Blue market concentration in your area.
  - o  No disclosure of what other factors may be considered, if any.

- The denominator is the total amount of claims submitted by all hospitals who stay in the settlement.
  - o  Unclear what that number might be, or even an estimate.

- Bottom line, it's hard to say what your claim will be worth if you stay in the settlement.
  But we do encourage you to ask the Providers' attorneys that question, repeatedly, if necessary.

# What About the Injunctive Relief?

- Providers say it will cost the Blues "hundreds of millions of dollars" to implement these changes. That's a rounding error in terms of the Blues' annual business.

- You should carefully examine the list of changes and see whether they will provide meaningful, valuable relief to your hospital. Some say that the changes are mere "window dressing."

- Providers also say they will restrict these changes to hospitals that stay in the settlement.
    - But it's unclear how new Blue Card standards or data requirements will be fenced off and kept from hospitals that opt out of the settlement.

# What Are My Alternatives?

- Step One is for you to carefully analyze your claim under the settlement, including both the range of dollars and the possibility of additional injunctive relief.  You should also consider the value of a result which – regardless of its size – will be locked in.

- Step Two is to compare that claim to your alternative – the right to "opt out" of the settlement and chart your own course, joining other hospitals who are suing the Blues directly for violating the antitrust laws.

- Opt-outs will have the right to control their own litigation and settlement decisions, and will not be limited by the pennies on the dollar settlement that Providers have offered.  By acting alongside other hospitals, you will maximize your leverage against the Blues and your chances of doing better than the settlement.

- There are no guarantees in life, but opt-outs often do much better than plaintiffs who stay in the class.

 ZUCKERMAN SPAEDER    9

# When Do I Have to Decide?

- On December 4, the Alabama court granted preliminary approval for the proposed settlement.

- Hospitals have 90 days from that date – until March 2, 2025 – to decide whether to stay in the settlement or opt out.

- If you decide to stay in the settlement, claims must be submitted by July 29, 2025.  That is also the date of the final approval hearing.



10

# I'm Not Sure About Litigation – What About . . .

- Delay?
  - These are complex cases; opt-out claims could easily take 3-5 years to litigate, or even longer.  And the Blues are represented by tenacious attorneys. But the Subscriber settlement took four years to bring to a close because of objections and appeals. There's no reason to think the Providers will be quicker to finish, so settlement checks probably won't be written until later this decade.

- Cost?
  - Our representation of you will be 100% for a contingent fee, and we will pay the litigation expenses in the case. That means that if we reach agreement to represent you, you will pay nothing unless we win at trial or get you money in settlement.

## What About . . . (cont'd.)

- Others have approached our hospital.  How do I know you are the right firm?
    - Our group of attorneys knows more about the Blues and the antitrust litigation than anyone else.  Zuckerman partner Cy Smith was appointed by the Alabama court in 2013 to oversee the Subscribers litigation against the Blues, and spent more than a decade on that task.

    - Zuckerman Spaeder partner Bill Schultz represented the American Hospital Association and other plaintiffs in the Section 340B drug pricing litigation that recovered $10.3 billion for hospitals nationwide.  We have a track record of success.

    - Zuckerman Spaeder has joined forces with two other law firms that are steeped in antitrust law and are formidable trial lawyers.  Our team is ideally positioned to represent you.

ZUCKERMAN SPAEDER | 12

## Contact Us



**Cy Smith**
Partner

csmith@zuckerman.com

+1 410.949.1145

**Bill Schultz**
Partner

wschultz@zuckerman.com

+1 202.778.1820

ZUCKERMAN SPAEDER | 13



www.zuckerman.com

©2024. All Rights Reserved