IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| IN RE:<br>BLUE CROSS BLUE SHIELD<br>ANTITRUST LITIGATION<br>(MDL NO. 2406) | Master File No. 2:13-CV-20000-RDP<br><br>This Document Relates to<br>Provider Track Cases |

### PROVIDER PLAINTIFFS' MOTION TO DISQUALIFY POLSINELLI, P.C. AND FOR CORRECTIVE NOTICE

On December 19, 2024, Dan Owen of the law firm Polsinelli, P.C. gave an online presentation called "BCBS Class Action Settlement: Provider Decisions & Timing." A transcript of the presentation is attached as Exhibit 1, and screenshots are attached as Exhibit 2. In his presentation, Mr. Owen aggressively disparaged the Provider Plaintiffs' settlement agreement and the work of Provider Co-Lead Counsel in negotiating it. The clear message of the presentation was that the settlement is a terrible deal, and Providers should opt out. During the presentation, Mr. Owen never disclosed that his firm has a conflict of interest that precludes it from advising Providers to opt out of the settlement or representing them as plaintiffs in opt-out litigation: members of his firm represented Blue Cross and Blue Shield of Alabama, a defendant in this action and other actions in the MDL related to the same conduct. In addition, Mr. Owen made materially false or misleading statements during his presentation about the settlement and the Court's view of it. Therefore, the Provider Plaintiffs seek an order disqualifying Mr. Owen and Polsinelli, P.C. from advising Providers with respect to the settlement, and requiring them to send corrective notice.

### BACKGROUND

In 2016, Mr. Owen and one of his partners, who represented class members interested in the litigation, contacted Provider Interim Co-Lead Counsel Joe Whatley and Edith Kallas to

discuss the case. To preserve the confidentiality of these discussions, Mr. Owen and his partner executed a nondisclosure agreement that confirmed their joint interest privilege. Mr. Owen later executed a mediation confidentiality agreement and common interest and confidentiality agreement in connection with the participation of one of his clients in the Provider Work Group. He also attended at least one confidential mediation session; according to the Provider Plaintiffs' counsel's records, he did not participate in any mediation sessions after December 2019, nearly five years before the case was settled.

In addition to the work described above, Mr. Owen entered a notice of appearance in this case in 2017 as counsel for five hospital systems that were not class representatives but had received subpoenas from the Blues. Ex. 3. By appearing in this case, Mr. Owen conferred disciplinary jurisdiction on this Court, and his conduct became governed by the Alabama Rules of Professional Conduct. LR 83.1(b), (f). It does not appear that he has withdrawn his appearance.

At this time, counsel for the Defendant Blue Cross and Blue Shield of Alabama (BCBS-AL) included J.T. Malatesta, Starr Drum, Sarah Glover, and Todd Panciera of Maynard Cooper & Gale (which became Maynard Nexsen in 2023). Mr. Malatesta in particular was intimately involved in the litigation of the case, appearing before the Court in motion practice, and leading discussions on data productions with the Plaintiffs. He was involved in numerous multi-party confidential discussions involving data and would necessarily have non-public information about the strategies, productions of other Blue Defendants, and the strategies of the Blues in general. On information and belief, Mr. Malatesta (and others) participated in Joint Defense Group calls and were to privy to confidential information for Blues' Defendants beyond BCBS-AL.

In early 2024, Mr. Owen's firm, Polsinelli, hired Mr. Malatesta, Ms. Drum, Ms. Glover, and Mr. Panciera, among others, from Maynard Nexsen. None of these attorneys has formally

2

withdrawn as counsel for BCBS-AL, either before or after their move to Polsinelli. Mr. Owen gave his presentation about the Provider's settlement with the Blues after these lawyers joined Polsinelli. As far as the Provider Plaintiffs are aware, Polsinelli took no steps to address this issue before Mr. Owen's presentation, nor did Mr. Owen disclose to his audience that his firm potentially had a serious and materially limiting conflict of interest.

On January 3, 2025, counsel for BCBS-AL notified Mr. Malatesta of Polsinelli's conflict. Since that time, the Polsinelli firm and counsel for BCBS-AL have corresponded with each other. On January 20, 2025, the Polsinelli firm took the position that they have not breached any ethical rules and would not refrain from advising Provider Class Members to opt out or representing them in opt-out litigation (other than the former Maynard lawyers, who would be screened from such representation). The Provider Plaintiffs waited to file this motion hoping the issue would be resolved, but because Polsinelli intends to continue to advise clients to opt-out of the Settlement, an immediate order from this Court is necessary.

## ARGUMENT

**I.    MR. OWEN'S CONFLICT OF INTEREST PRECLUDES HIM FROM ADVISING PROVIDERS TO OPT OUT OR REPRESENTING OPT-OUT PLAINTIFFS.**

Rule 1.7 of the Alabama Rules of Professional Conduct provides:

(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

> (1) The lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
>
> (2) Each client consents after consultation.

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or a third person, or by the lawyer's own interests, unless

3

> (1) The lawyer reasonably believes the representation will not be adversely affected; and
>
> (2) The client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

A comment to Rule 1.7 states, "Loyalty to a client is also impaired when a lawyer cannot consider, recommend or carry out an appropriate course of action for the client because of the lawyer's other responsibilities or interests. The conflict in effect forecloses alternatives that would otherwise be available to the client." The duty of loyalty extends to former clients as well. Ala. R. Prof. Conduct 1.9.

Under Rule 1.10(a) of the Alabama Rules of Professional Conduct, an attorney's conflicts are imputed to all members of his or her firm: "While lawyers are associated in a firm, none of them shall knowingly represent a client when any of them, practicing alone, would be prohibited from doing so by Rules 1.7, 1.8(a)-1.8(k), 1.9, or 2.2." As a comment to the rule explains, imputed disqualification "gives effect to the principle of loyalty to the client as it applies to lawyers who practice in a law firm. Such situations can be considered from the premise that a firm of lawyers is essentially one lawyer for purposes of the rules governing loyalty to the client, or from the premise that each lawyer is vicariously bound by the obligation of loyalty owed by each lawyer with whom the lawyer is associated."

Alabama does not recognize a "Chinese Wall" exception to imputed conflicts of interest. The Alabama Supreme Court has stated, "this defense is not available under the Code, and it will be available under the new Alabama Rules of Professional Conduct only in certain cases involving the movement of lawyers between the government and private law firms. … The new Alabama Rules of Professional Conduct were adopted from the Model Rules of Professional Conduct of the American Bar Association.  It was not the intent of the A.B.A., nor was it the intent of this Court

4

in adopting the new rules, for the 'Chinese wall' defense to be available in cases involving the movement of lawyers between private law firms." *Roberts v. Hutchins*, 572 So. 2d 1231, 1234 n.3 (Ala. 1990); see also Ala. State Bar Opinion 2002-01 ("[T]he Office of General Counsel and the Disciplinary Commission have consistently held that such conflicts on the part of an attorney cannot be cured or overcome by erection of a 'Chinese wall' or any other type of screening procedure."). Nor would the problem be solved if this were simply a question of whether Mr. Owen's conduct complies with the ethical rules of Missouri, where he works. As in Alabama, in Missouri a Chinese Wall does not eliminate a conflict of interest. *Fant v. City of Ferguson*, 2017 WL 3392073 (E.D. Mo. Aug. 7, 2017).[1]

Advising Provider Class Members not to participate in the Settlement is directly adverse to BCBS-AL and the other Blues. It should go without saying that Mr. Malatesta, Ms. Drum, Ms. Glover, and Mr. Panciera could not ethically advise Providers to opt out of the settlement to which BCBS-AL has agreed, and for which it would receive a release, nor could they represent Providers in opt-out litigation, which would be filed against BCBS-AL or Blue plans with which BCBS-AL would be jointly and severally liable. Such actions would be directly adverse to BCBS-AL, violating Rule 1.7. Because Mr. Owen's colleagues cannot ethically advise Providers to opt out or represent them in opt-out litigation, Rule 1.10(a) prohibits him, and anyone else at his firm, from doing so as well.[2] Given that Polsinelli claims to not currently represent any clients with respect

---

[1] Many other states refuse to recognize Chinese walls, or limit their applicability. *E.g.*, Cal. R. Prof. Conduct 1.10(a)(2) (removing the imputed conflict when "the prohibited lawyer did not substantially participate in the same or a substantially related matter," an exception that does not apply here); N.Y. R. Prof. Conduct 1.10(c) (creating an exception when "the newly associated lawyer did not acquire any information protected by Rule 1.6 or Rule 1.9(c) that is material to the current matter," which does not apply here); Fla. R. Prof. Conduct 4-1.10(b) (similar to New York's rule). Thus, even a purported wall would not eliminate Polsinelli's conflict given Mr. Malatesta's and others' extensive involvement in the litigation.

[2] The Provider Plaintiffs have other serious concerns about the ethical implications of Mr. Owen's actions, in light of his participation in this case, and his access to confidential materials under multiple confidentiality agreements. But because the conflict with BCBS-AL is so clear, it is unnecessary to discuss them here. That said, if the Court wishes that issue briefed as well, Provider Plaintiffs' counsel will be happy to do so.

to the MDL (though it is providing advice on opting out), at this point no putative client of Polsinelli would be harmed if the firm were simply disqualified. Those putative clients could be harmed, however, if they opt out of the Settlement, file their own litigation, and only then have their counsel disqualified or find that their counsel is materially limited by a conflict.

## II.     MR. OWEN MUST CORRECT HIS MISSTATEMENTS.

Mr. Owen's presentation used numerous untruthful or misleading statements to convince Providers that Co-Lead Counsel for the Provider Plaintiffs agreed to a poor deal, and that Providers would likely do better if they opt out of the settlement. The following statements undermine the Court's and Co-Lead Counsel's efforts to provide Class Members with fair and reasonable notice of the Settlement.

*"I was asked to be involved in settlement negotiations. So I know exactly what the goals of the case are. I can't say anything about settlement negotiations because they're confidential, but I speak from personal knowledge about these things."* Ex. 1 at 18.

Mr. Owen teases that he will give his audience an insider's perspective on the settlement he is about to trash, despite his obligations under the mediation confidentiality agreement he signed. Putting aside the ethics of this strategy, Mr. Owen has not attended a mediation session since December 2019, nearly five years before the settlement was finalized. Despite painting himself as knowledgeable, he knows next to nothing about the process that led to the settlement.

*"[The case] was unfortunately -- it was supposed to be a nationwide class action covering all 50 states. The reason we're here today is that after three rounds of class action briefing and*

6

*literally years of fighting about it, it was clear that the case was never going to be certified as a class action." Id.* at 19.

*"When it was clear that [certification of a nationwide class] wasn't going to happen, [Provider Plaintiffs' counsel] simply gave up and made the best deal they could on a class-wide basis." Id.*

*"[Provider Co-Lead Counsel] got in over their head here and they bit off more than they can chew and they wound up having to make a bad deal just to extricate themselves from it after 12 years and the expenditure of $100 million, which is what they told the judge they spent on this case." Id.* at 30.

With all due respect, Mr. Owen has no idea what he is talking about. He describes the case as if the Provider Plaintiffs moved for certification of a nationwide class and then folded their tent when it was "clear" that such a class couldn't be certified. As the Court well knows, in 2015 this Court ordered that the Alabama cases proceed as bellwethers to streamline the MDL, and discovery in particular. Doc. No. 469. From that point, the Provider Plaintiffs focused on Alabama markets, and they moved to certify Alabama classes. Certification of a nationwide class was not on the table when the case settled in 2024, and it was certainly not "clear" that an Alabama class could not be certified. In fact, in late 2023 this Court denied the Blues' motion for summary judgment that attacked the principles underlying the Providers' theory of classwide damages. Doc. No. 3092 at 8–11 ("Because Providers' damages model is not speculative and is not based on guesswork, a jury could determine that it is reliable."). Moreover, the Providers' counsel were ready, willing, and able to take this case to trial in as many jurisdictions as necessary. Mr. Owen has thoroughly misrepresented how the settlement came about.

7

*"[The Blues] literally agreed not to compete against each other. And that has been held by the judge to be per se illegal. So any damages that flow from that are basically automatic because that's been ruled to be illegal." Id.* at 20.

As much as the Provider Plaintiffs wish that the Blues' conduct had already been held to be *per se* illegal, with "automatic" damages, this hasn't happened. This Court's rulings on the standard of review established that the Blues' conduct through 2021 would be evaluated under the *per se* standard, but that is not a finding of liability or damages. The Blues have asserted defenses to the Provider Plaintiffs' claims, including their *per se* claims, on the grounds that the Blues are a single entity that is incapable of conspiring, and that the Blues are entitled to use Exclusive Service Areas to enforce their common-law trademark rights. Motions for summary judgment relating to these defenses have been denied, so these issues would go to a jury. Doc. Nos. 3093, 3103. In addition, even if these defenses are unsuccessful, a plaintiff would have to prove its damages to a jury. The Blues have asserted that the Provider Plaintiffs have failed to proffer a reliable model for damages because health insurance is a two-sided platform and because the Provider Plaintiffs incorrectly defined the relevant markets, among other reasons. These too could be questions for the jury. Here, Mr. Owen misleads his audience into an unrealistic view of the likelihood of success in further litigation.

In addition, Mr. Owen makes a significant omission: he never informs his audience that only the Blues' conduct through April 2021 will be governed by the *per se* standard. Following the elimination of the National Best Efforts rule, this Court held that the Blues' conduct after April 2021 will governed by the rule of reason. Doc. No. 2933. This change will increase the burden of proof on plaintiffs, and it may affect the availability of injunctive relief. To tell Providers that their claims are *per se* claims without mentioning this is materially misleading.

> *"I will tell you, having been at the hearing on preliminary approval, that the judge, in my opinion, the judge expects [a group of providers to tell the Blues they intend to opt out]. And the reason the judge expects [this] to happen is that's what happened in a previous settlement in this case." Id. at 24.*

> *"But in that case, the judge preliminarily approved a settlement like this one. And after it became clear that a lot of big subscribers' groups were opting out, there were new negotiations with The Blues and they came back to the judge with a new settlement agreement that was more acceptable. When the judge was hearing this, he said from the bench, he alluded to the fact that this had happened before and basically indicated he wouldn't be surprised if it happened in this case." Id.*

> *"I think if a number, a lot of people opt-out, The Blues are going to come back to the negotiating table, just I think what the judge expects." Id. at 37.*

None of this is true. The Court never mentioned any expectation that a group of Providers will opt out. At most, the Court recognized that Providers are entitled to opt out because the settlement class is being certified only under Rule 23(b)(3). 12/14/24 Tr. at 93. Mr. Owen's statements about "new negotiations" of the Subscribers' settlement agreement due to opt-outs are dangerous nonsense. The Subscribers' settlement agreement was never renegotiated. There was a delay between preliminary approval and final approval so the Subscribers could provide supplemental notice about the application of the release to Subscribers who opted out of the settlement, and the Court ultimately amended the scope of the release. These kinds of misstatements show the danger of having ill-informed lawyers give advice about the Settlement and mechanics thereof.

9

Through his false statements, Mr. Owen attempts to convince his audience that opting out and negotiating a better settlement is something that could be done easily. It is not. As the Court said in its preliminary approval order, "So, if the individual providers were to bring their own actions, the court suspects that the Blues would litigate each one to its conclusion rather than enter into piecemeal settlements. The prospect of resolving this case on a class wide basis has produced the strongest Settlement, and achieved results that would not have been possible in individual litigation." Doc. No. 3225 at 37 n.6.

### III.    THIS MOTION WARRANTS PROMPT BRIEFING.

The Polsinelli firm has been aware of this conflict for at least three weeks. It has done nothing to address it other than to retroactively screen the former Maynard lawyers (which does not resolve the conflict), and it has taken the position that it may accept a representation that would be adverse to the Blues, including BCBS-AL. With the deadline to opt out or object to the settlement less than six weeks away, this issue must be resolved promptly. Consistent with this Court's standing order on non-summary judgment motions, the Provider Plaintiffs propose that the response to this motion be due on Monday, February 3, with any reply due on Monday, February 10.

### CONCLUSION

For the reasons above, Mr. Owen and Polsinelli, P.C. should be disqualified from representing Providers in this litigation or related litigation or from providing further advice about the Settlement. Further, Mr. Owen and Polsinelli should be required to send corrective notice to anyone to whom he has marketed himself. A proposed corrective notice is attached to the proposed order.

Respectfully submitted this the 24th day of January, 2025.

*/s/ Samuel Issacharoff*
Samuel Issacharoff
40 Washington Square South
New York, NY 10012
Phone: 212-998-6580
Email: si13@nyu.edu

*/s/ Edith M. Kallas*
Edith M. Kallas – ***Co-Lead Counsel***
WHATLEY KALLAS, LLP
152 West 57th Street
41st Floor
New York, NY 10019
Tel: (212) 447-7060
Fax: (800) 922-4851
Email: ekallas@whatleykallas.com

*/s/ Joe R. Whatley, Jr.*
Joe R. Whatley, Jr. – ***Co-Lead Counsel***
W. Tucker Brown
WHATLEY KALLAS, LLP
2001 Park Place North
1000 Park Place Tower
Birmingham, AL 35203
Tel: (205) 488-1200
Fax: (800) 922-4851
Email: jwhatley@whatleykallas.com
         tbrown@whatleykallas.com

*/s/ Barry A. Ragsdale*
Barry Alan Ragsdale – ***Plaintiffs' Liaison Counsel and Discovery Liaison Counsel***
Dominick Feld Hyde, PC
1130 22nd Street South Ridge Park
Suite 4000
Birmingham, AL 35205
Tel: (205) 536-8888
bragsdale@dfhlaw.com

*/s/ U.W. Clemon*
U.W. Clemon – ***Plaintiffs' Steering Committee***
U. W. Clemon, LLC
5202 Mountain Ridge Parkway
Birmingham, AL 35222
Tel: (205) 837-2898
Email: uwclemon1@gmail.com

*/s/ Aaron S. Podhurst*
Aaron S. Podhurst – ***Plaintiffs' Steering Committee***
Peter Prieto – ***Chair, Expert Committee***
PODHURST ORSECK, P.A.
One S.E. 3rd Avenue
Suite 2300
Miami, FL 33131
Tel: (305) 358-2800
Fax: (305) 358-2382
Email: apodhurst@podhurst.com
         pprieto@podhurst.com

*/s/ Dennis Pantazis*
Dennis Pantazis – ***Plaintiffs' Steering Committee***
Brian Clark – ***Discovery Committee***
WIGGINS CHILDS PANTAZIS FISHER GOLDFARB
The Kress Building
301 Nineteenth Street North
Birmingham, AL 35203
Tel: (205) 314-0500
Fax: (205) 254-1500
Email: dgp@wigginschilds.com
         bclark@wigginschilds.com

11

*/s/ E. Kirk Wood, Jr.*
E. Kirk Wood, Jr. – ***Local Facilitating Counsel***
WOOD LAW FIRM LLC
P. O. Box 382434
Birmingham, AL 35238
Tel: (205) 612-0243
Fax: (205) 705-1223
Email: kirk@woodlawfirmllc.com

*/s/ W. Daniel Miles, III*
W. Daniel Miles, III – ***Written Submissions Committee***
BEASLEY ALLEN CROW METHVIN PORTIS
 & MILES, P.C.
218 Commerce Street
Montgomery, AL 36104
Tel: (800) 898-2034
Fax: (334) 954-7555
Email: dee.miles@beasleyallen.com

*/s/ Myron C. Penn*
Myron C. Penn – ***Discovery Committee***
PENN & SEABORN, LLC
53 Highway 110
Post Office Box 5335
Union Springs, AL 36089
Tel: (334) 738-4486
Fax: (334) 738-4432
Email: myronpenn28@hotmail.com

Henry C. Quillen
WHATLEY KALLAS, LLP
159 Middle Street
Suite 2C
Portsmouth, NH 03801
Tel: (603) 294-1591
Fax: (800) 922-4851
Email: hquillen@whatleykallas.com

*/s/ J. Mark White*
J. Mark White – ***Litigation Committee***
*/s/ Augusta S. Dowd*
Augusta S. Dowd – ***Chair, Litigation Committee***
Linda G. Flippo – ***Discovery Committee***
WHITE ARNOLD & DOWD, P.C.
2001 Park Place North
Suite 1400
Birmingham, AL  35203
Tel: (205) 323-1888
Fax: (205) 323-8907
Email: mwhite@whitearnolddowd.com
           adowd@whitearnolddowd.com
           lflippo@whitearnolddowd.com

*/s/ Mark K. Gray*
Mark K. Gray – ***Discovery Committee***
GRAY & WHITE
713 E. Market Street, Suite 200
Louisville, KY 40202
Tel: (502) 805-1800
Fax: (502) 618-4059
Email: mgray@grayandwhitelaw.com

Patrick J. Sheehan
WHATLEY KALLAS, LLP
101 Federal Street
19th Floor
Boston, MA 10019
Tel: (617) 573-5118
Fax: (617) 371-2950
Email: psheehan@whatleykallas.com

Deborah J. Winegard
WHATLEY KALLAS, LLP
1068 Virginia Avenue, NE
Atlanta, GA 30306
Tel: (404) 607-8222
Fax: (404) 607-8451
Email: dwinegard@whatleykallas.com

Charles Clinton Hunter
HAYES HUNTER PC
4265 San Felipe, Suite 1000
Houston, TX 77027
Tel: (281) 768-4731
Fax: (713) 583-7047
Email: chunter@hayeshunterlaw.com

Nicholas B. Roth – *Chair, Discovery Committee*
Julia Smeds Roth – *Discovery Committee*
EYSTER KEY TUBB ROTH MIDDLETON & ADAMS, LLP
402 East Moulton Street, SE
Decatur, AL 35602
Tel: (256) 353-6761
Fax: (256) 353-6767
Email: nbroth@eysterkeylaw.com
          jroth@eysterkeylaw.com

Van Bunch – *Chair, Class Certification Committee*
BONNETT FAIRBOURN FRIEDMAN & BALINT, P.C.
2325 E. Camelback Road, Suite 300
Phoenix, AZ 85016
Tel: (602) 274-1100
Fax: (602) 274-1199
Email: vbunch@bffb.com

Robert J. Axelrod – *Chair, Written Submissions Committee*
AXELROD LLP
800 Third Avenue, Suite 2800
New York, NY 10022
Tel: (646) 448-5263
Fax: (212) 840-8560
Email: raxelrod39@gmail.com

John C. Davis – *Written Submissions Committee*
LAW OFFICE OF JOHN C. DAVIS
623 Beard Street
Tallahassee, FL 32303
Tel: (850) 222-4770
Email: john@johndavislaw.net

Dennis C. Reich – *Chair, Damages Committee*
REICH & BINSTOCK, LLP
4265 San Felipe, Suite 1000
Houston, TX 77027
Tel: (713) 622-7271
Fax: (713) 623-8724
Email: dreich@reichandbinstock.com

David A. Balto – *Expert Committee*
THE LAW OFFICES OF DAVID A. BALTO
1350 I Street, N.W., Suite 850
Washington, DC 20005
Tel: (202) 789-5424
Fax: (202) 589-1819
Email: david.balto@dcantitrustlaw.com

Joey K. James – *Litigation Committee*
BUNCH & JAMES
P. O. Box 878
Florence, AL 35631
Tel: (256) 764-0095
Fax: (256) 767-5705
Email: joey@joeyjameslaw.com

Richard S. Frankowski – *Discovery Committee*
THE FRANKOWSKI FIRM, LLC
231 22nd Street South, Suite 203
Birmingham, AL 35233
Tel: (205) 390-0399
Fax: (205) 390-1001
Email: richard@frankowskifirm.com

Michael C. Dodge – *Expert Committee*
GLAST PHILLIPS & MURRAY, P.C.
14801 Quorum Drive, Suite 500
Dallas, TX 75254
Tel: (972) 419-7172
Email: mdodge@gpm-law.com

13

Lynn W. Jinks, III – *Expert Committee*
Christina D. Crow – *Discovery Committee*
JINKS CROW, P.C.
219 North Prairie Street
Union Springs, AL 36089
Tel: (334) 738-4225
Fax: (334) 738-4229
Email: ljinks@jinkslaw.com
　　　ccrow@jinkslaw.com

Stephen M. Hansen – *Class Certification Committee*
LAW OFFICE OF STEPHEN M. HANSEN
1821 Dock Street
Tacoma, WA 98402
Tel: (253) 302-5955
Fax: (253) 301-1147
Email: steve@stephenmhansenlaw.com

C. Wes Pittman – *Settlement Committee*
THE PITTMAN FIRM, P.A.
432 McKenzie Avenue
Panama City, FL 32401
Tel: (850) 784-9000
Fax: (850) 763-6787
Email: wes@pittmanfirm.com

Robert B. Roden – *Litigation Committee*
SHELBY RODEN, LLC
2956 Rhodes Circle
Birmingham, AL 35205
Tel: (205) 933-8383
Fax: (205) 933-8386
Email: rroden@shelbyroden.com

Michael E. Gurley, Jr. – *Discovery Committee*
Attorney at Law
24108 Portobello Road
Birmingham, AL 35242
Tel: (205) 908-6512
Email: mgurleyjr@yahoo.com

Harley S. Tropin – *Damages Committee*
Javier A. Lopez – *Discovery Committee*
KOZYAK TROPIN & THROCKMORTON, P.A.
2525 Ponce De Leon Boulevard, 9th Floor
Miami, FL 33134
Tel: (305) 372-1800
Fax: (305) 372-3508
Email: hst@kttlaw.com
　　　jal@kttlaw.com

J. Preston Strom, Jr. – *Litigation Committee*
STROM LAW FIRM, LLC
2110 N. Beltline Boulevard, Suite A
Columbia, SC 29204-3905
Tel: (803) 252-4800
Fax: (803) 252-4801
Email: petestrom@stromlaw.com

Thomas V. Bender – *Discovery Committee*
Dirk L. Hubbard
HORN AYLWARD & BANDY, LLC
2600 Grand Blvd., Suite 1100
Kansas City, MO 64108
Tel: (816) 421-0700
Email: tbender@hab-law.com
　dhubbard@hab-law.com

14

Gregory S. Cusimano – ***Litigation Committee***
CUSIMANO, ROBERTS & MILLS, LLC
153 South 9th Street
Gadsden, AL 35901
Phone: (256) 543-0400
Fax: (256) 543-0488
Email: greg@alalawyers.net

Brian E. Wojtalewicz
WOJTALEWICZ LAW FIRM, LTD.
139 N. Miles Street
Appleton, MN 56208
Tel: (320) 289-2363
Fax: (320) 289-2369
Email: brian@wojtalewiczlawfirm.com

Archie C. Lamb, Jr.
ARCHIE LAMB & ASSOCIATES, LLC
301 19th Street North, Suite 585
The Kress Bldg.
Birmingham, AL 35203-3145
(205) 458-1210
Email: alamb@archielamb.com

Paul Lundberg
LUNDBERG LAW, PLC
600 4TH Street, Suite 906
Sioux City, IA 51101
Tel: (712) 234-3030
Fax: (712) 234-3034
Email: paul@lundberglawfirm.com

Gary E. Mason – ***Class Certification Committee***
WHITFIELD BRYSON & MASON, LLP
1625 Massachusetts Ave. NW, Suite 605
Washington, DC 20036
Tel: (202) 429-2290
Fax: (202) 640-1160
Email: gmason@wbmllp.com

Michael L. Murphy – ***Discovery Committee***
BAILEY GLASSER LLP
910 17th Street, NW, Suite 800
Washington, DC 20006
Tel: (202) 463-2101
Fax: (202) 463-2103
Email: mmurphy@baileyglasser.com

Lance Michael Sears
SEARS & SWANSON, P.C.
First Bank Building
2 North Cascade Avenue, Suite 1250
Colorado Springs, CO 80903
Tel: (719) 471-1984
Fax: (719) 577-4356
Email: lance@searsassociates.com

Jessica Dillon
Ray R. Brown
Molly Brown
DILLON & FINDLEY, P.C.
1049 W. 5th Avenue, Suite 200
Anchorage, AK 99501
Tel: (907) 277-5400
Fax: (907) 277-9896
Email: Jessica@dillonfindley.com
   Ray@dillonfindley.com
   Molly@dillonfindley.com

| | |
|---|---|
| Gwen Simons | Allyson C. Dirksen |
| Simons & Associates Law, P.A. | HEIDMAN LAW FIRM, P.L.L.C. |
| P.O. Box 1238 | 1128 Historic 4th Street |
| Scarborough, ME 04070-1238 | P. O. Box 3086 |
| Tel: (207) 205-2045 | Sioux City, IA 51101 |
| Fax: (207) 883-7225 | Tel: (712) 255-8838 |
| Email: gwen@simonsassociateslaw.com | Fax (712) 258-6714 |
| | Email: allyson.dirksen@heidmanlaw.com |

*Counsel for Provider Plaintiffs*