FILED
2025 Jan-24  PM 6:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

# Exhibit 2



## BC/BS Antitrust Litigation: Key Questions



- Q.   Why is the proposed class action settlement in the Blue Cross Blue Shield Antitrust Litigation important to healthcare providers?

- A.   The settlement will be binding on every healthcare provider in the U.S. that does not "opt-out" of the settlement.  Those providers are required to give up all future claims against the Blues for antitrust violations that result in under-reimbursement, in exchange for very minimal monetary compensation and trivial changes in the Blues business practices.




# BC/BS Antitrust Litigation: Key Questions


Dan Owen

- Q.   What are the details for the proposed settlement?

- A.   The proposed settlement includes:
  - (1) monetary relief
  - (2) injunctive relief – changes in the Blues business practices, and
  - (3) a release of any future antitrust claims relating to under-reimbursement of healthcare providers



# BC/BS Settlement: Monetary Relief


Dan Owen

- Common Settlement Fund of $2.8 Billion
- $700 Million to plaintiffs' attorneys; $100 Million to admin.
- 92% allocated to hospitals; 8% to other providers
- 16 years of under-reimbursements from 2008 to 2024
- Class plaintiffs' attorneys admitted that the damages sought for <u>Alabama alone</u> were $4.63 Billion
- Class plaintiffs' attorneys told the Court that "The Provider Plaintiffs' experts have not calculated a nationwide damages figure for the Settlement Class," but argued that extrapolating the $4.63 Billion in damages for Alabama alone would be inaccurate



# BC/BS Settlement: Injuctive Relief


Dan Owen

- ". . .development and implementation of a system-wide, cloud-based architecture that will facilitate Settlement Class Members' immediate access to Member benefits and eligibility verification information, preauthorization requirements, and claims status tracking;

- BlueCard Prompt Pay Commitment requires the Blues to pay clean, fully insured claims within thirty days . . ."



# BC/BS Settlement: Injuctive Relief



Dan Owen

- "Appointment of a BlueCard Executive at each Blue Plan;

- Implementation of a real-time Blues internal messaging system to reduce the time it takes for the Blues to communicate with each other regarding BlueCard issues;

- Creation of a Blue National Executive Resolution Group to work to identify trends and opportunities for further improvement of the BlueCard Program."



# BC/BS Settlement: Release of Future Claims

- Scope of release in incredibly broad and appears to prohibit any future antitrust claims for under-reimbursement:

- "any and all known and unknown claims … based upon, arising from, or relating in any way to:

(i)   the factual predicates of the Provider Actions . . .;

(ii)  any issue raised in any of the Provider Actions by pleading or motion; or

(iii) mechanisms, rules or regulations by the Settling Individual Blue Plans and BCBSA [relating to injunctive relief]."



## BC/BS Settlement: Release of Future Claims

- Settlement Agreement ¶42.a:

". . all Releasors shall be permanently barred and enjoined from commencing, maintaining, prosecuting, causing, cooperating with, advising to be commenced or maintained, or encouraging any action, suit, proceeding or claim in any court, tribunal, administrative agency, regulatory body, arbitrator or other body in any jurisdiction against any Releasee **based in whole or in part upon, arising out of, or in any way connected or related to any Released Claim.**"



## BC/BS Settlement: Release of Future Claims

Dan Owen

- Settlement Agreement ¶42.b:

"Each Releasor may hereafter discover facts . . . with respect to the **claims which are the subject matter of the provisions of this Paragraph 42.** Nevertheless, each Releasor hereby expressly waives and fully, finally, and forever settles and releases [any] **claim with respect to the subject matter of the provisions of this Paragraph 42**, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts."

# BC/BS Antitrust Litigation: Key Questions



Dan Owen

- Q.   What is the history of the Blue Cross Blue Shield Antitrust Litigation?

- A.   The lawsuit was filed in 2012 seeking nationwide class action status to challenge (a) the structure of the Blue Cross Blue Shield system, and (b) the Blue Cross Blue Shield reimbursement system for hospitals and other healthcare providers.

- It was never certified as a class action, despite years of litigation.  In 2024, a proposed class action settlement was announced.



# BC/BS Antitrust Litigation: Key Questions



Dan Owen

- Q.   How will the proposed class action settlement in the Blue Cross Blue Shield Antitrust Litigation impact healthcare providers?

- A.   The settlement will be binding on providers for decades to come.
  - Either validate the Blues exclusive territories in most states, or break up territorial exclusivity and allow the Blues to compete against each other in network building and reimbursements
  - Either validate the Blues nationwide reimbursement-setting power with the Blue Card and National Accounts program, or break up these price controls and allow providers to bill out-of-network charges as they do for other insurers



## Market Allocation Claim


Dan Owen

- 37 Blue "member plans" remain, after a massive consolidation from over 100 in the 1980s
- Each Blue is subject to a "License Agreement"
- Most License Agreements create an exclusive territory for the Blue
- **Blues cannot compete in the exclusive territory of another Blue**



# Price Fixing and Boycott Claim



- All of the Blues participate in national programs, including the Blue Card Program, and the National Accounts Program

- These national programs require hospitals to accept lower reimbursement rates set by the "Host" Blue, rather than bill out-of-network charges as they do for other insurers

- Excess profit for the Blues generated by the national programs are divided between all the Blues by the Inter-Plan Program Committee




# Injunctive Relief Claim


Dan Owen

- Requested a declaration that the Market Allocation and Price Fixing Conspiracies violate the Sherman Antitrust Act

- Requested an injunction "prohibiting Defendants … from continuing either of their illegal conspiracies."

- Requested "appropriate remedial action to correct and eliminate any remaining effects of either of the conspiracies."



# Damages Claim



- Class period for damages began in 2008
- Monetary damages sought for under-reimbursements due to market allocation.
- Monetary damages sought for under-reimbursements due to price fixing (on national programs)
- Treble damages.
- Attorney fees.
- Total damages: Over $100 Billion after trebling





## Provider Class



Consolidated Second Amended Complaint, ¶ 378:

"All healthcare providers, not owned or employed by any of the Defendants, in the United States of America, who provided covered services, equipment or supplies to any patient who was insured by, or who was a member or beneficiary of any plan administered by, a Defendant within four years prior to the date of the filing of this action."



# Strategies



Dan Owen

1. Stay in the settlement class and be bound by its terms
2. Tell the Blues that you intend to opt out but are willing to discuss the problems with the settlement first.
3. Seek a "tolling agreement" from the Blues to allow CS to opt out, but not file a lawsuit until the tolling agreement expires, allowing time for negotiations
4. Opt out and do not immediately file a lawsuit (this risks reducing the damages period from 16 years to 4 years, weakening CS's negotiating position with the Blues)
5. Opt out and  file an immediate lawsuit.
6. Opt out and never file a lawsuit, but never be bound by the settlement release

# Inputs to Decision-Making


Dan Owen

- Amount of past under-reimbursement (damages)
- Benefits of future structural changes in Blues
- Benefits of future reimbursement changes by Blues

## Procedure for Opting Out



Dan Owen

- **Must provide all of the following by March 4, 2025:**

- "Any Class Member who wishes to be excluded from the Settlement Class SHALL mail a written notification of their intent to be excluded . . . no later than March 4, 2025. The exclusion request SHALL include the following:

- a. The Class Member's name;

- b. The name of the authorized representative submitting the Exclusion Request, if the Class Member is not an individual;

- c. The Class Member's address, email address, and telephone number;

- d. The address, email address, and telephone number of the authorized representative submitting the Exclusion Request, if the Class Member is not an individual;"

## Procedure for Opting Out


Dan Owen

- Must provide all of the following by March 4, 2025:

- "e. If the Class Member has assigned, transferred or otherwise given a financial interest in its claims against the Settling Defendants to a third party (in whole or in part), the name, address and telephone number of the third party;

- f. All National Provider Identifiers (NPI), Tax Identification Numbers (TIN), and Medicare Provider Numbers (MPN) under which the Class Member billed for services between 2008 and 2024, and the last four digits of the Class Member's Social Security Number, if applicable;

# Procedure for Opting Out



Dan Owen

- ## Must provide all of the following by March 4, 2025:

- "h. The personal, **physical signature** of the Class Member or its authorized representative. Electronic signatures, including Docusign, or PDF signatures are not permitted and will not be considered personal signatures.

- Requests signed solely by the Class Member's lawyer, unless employed by the Health Care System, Health Care Facility, Medical Group or Medical Organization seeking to be excluded from the Class, are not valid. Further, a Health Care System, Medical Group, or Medical Organization may not submit a single Exclusion Request on behalf of individuals who are Class Members, even if they are employees of the Health Care System, Medical Group, or Medical Organization."



## Procedure for Opting Out



Dan Owen

- Must provide all of the following by March 4, 2025:

- "Each Class Member must submit his, her, or its own Exclusion Request and each Exclusion Request must be signed by the Class Member himself or herself or, in the case of a Health Care System, Health Care Facility, Medical Group or Medical Organization, by its duly authorized representative."

- "If the Class Member fails to provide all of the required information on or before the Opt-Out Deadline, then the attempt to opt out shall be invalid and have no legal effect, and the Settlement Class Member shall be bound by the Settlement Agreement, including the releases, if finally approved."

# BC/BS Antitrust Litigation

*Polsinelli provides this material for informational purposes only.  The material provided herein is general and is not intended to be legal advice. Nothing herein should be relied upon or used without consulting a lawyer to consider your specific circumstances, possible changes to applicable laws, rules and regulations and other legal issues. Receipt of this material does not establish an attorney-client relationship.*

*Polsinelli is very proud of the results we obtain for our clients, but you should know that past results do not guarantee future results; that every case is different and must be judged on its own merits; and that the choice of a lawyer is an important decision and should not be based solely upon advertisements.*

© 2024 Polsinelli PC.  In California, Polsinelli LLP.
   Polsinelli is a registered mark of Polsinelli PC

