IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| IN RE:<br>BLUE CROSS BLUE SHIELD<br>ANTITRUST LITIGATION<br>(MDL NO. 2406) | Master File No. 2:13-CV-20000-RDP<br><br>This Document Relates to<br>Provider Track Cases |

**PROVIDER PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO
DISQUALIFY CYRIL SMITH AND FOR CORRECTIVE NOTICE**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

ARGUMENT ...............................................................................................................................2

I.   MR. SMITH'S CONFLICT OF INTEREST IS CLEAR .....................................................2

II.  MR. SMITH'S CONFIDENTIALITY OBLIGATIONS PRECLUDE
     REPRESENTATION OF PROVIDERS ..............................................................................7

CONCLUSION..............................................................................................................................8

## TABLE OF AUTHORITIES

**Cases**

*Huston v. Imperial Credit Com. Mortg. Inv. Corp.*,
    179 F. Supp. 2d 1157 (C.D. Cal. 2001) ................................................................................ 7

*Moreno v. Autozone, Inc.*,
    2007 WL 4287517 (N.D. Cal. Dec. 6, 2007) ......................................................................... 7

*Southern Visions, LLP v. Red Diamond, Inc.*,
    370 F. Supp. 3d 1314 (N.D. Ala. 2019) ................................................................................ 2

**Other Authorities**

Oxford English Dictionary, https://www.oed.com/dictionary/body_n#115392185 ....................... 7

**Rules**

Ala. R. Prof. Conduct 1.7 ............................................................................................................... 2

Ala. R. Prof. Conduct 7.1 ............................................................................................................... 2

Ala. R. Prof. Conduct 7.3(a) .......................................................................................................... 2

Fed. R. Evid. 702 ........................................................................................................................... 2

**Regulations**

I.R.C. § 501(c)(6) .......................................................................................................................... 2

The Provider Plaintiffs did not lightly decide to bring Mr. Smith's conduct to the Court's attention. Mr. Smith highlights the weeks that elapsed between his presentation and the Providers' motion, Doc. No. 3244 ("Opposition") at 2, but the reason for this delay was simple: the Providers diligently investigated the ethical implications of Mr. Smith's conduct and obtained a written opinion from the General Counsel of the Alabama State Bar. Only after the General Counsel stated that Mr. Smith appears to have a conflict that violates the Alabama Rules of Professional Conduct, and that the Providers "have an absolute obligation to report" those violations, Doc. No. 3232-1 at 2, did the Providers file their motion. It is not the Providers' intent to shut down the flow of information to Class Members; the Providers are aware of several law firms that are encouraging hospitals and other healthcare providers to consider opting out of the settlement, but the Providers have filed motions directed only at the only two firms with known conflicts of interest: Zuckerman Spaeder and Polsinelli. Firms that are not conflicted are free to advise Class Members, so long as they abide by their duty not to make false or misleading communications.[1]

The Providers have reconsidered the method by which corrective notice should be given. Rather than seeking the corrective notice attached to their proposed order, the Providers propose that the disqualification issue be decided on its own. Once it is decided, and the Providers have a better understanding of what sort of notice is appropriate under the circumstances, they may move the Court to provide their own notice to class members affected by Mr. Smith's communications.

---

[1] The Providers' motion was not directed toward the attorneys of Boies Schiller Flexner LLP who are counsel for A4. *See* Doc. No. 3243. That representation began long before the Providers settled their case, it was initially unrelated to this case, and it is unclear to the Providers whether A4 is within the definition of the Settlement Class.

**ARGUMENT**

**I.      MR. SMITH'S CONFLICT OF INTEREST IS CLEAR.**

Mr. Smith's attempt to show that he is not conflicted relies on several incorrect or misleading statements.

*The Audience for Mr. Smith's Presentation*

For reasons that are unclear, Mr. Smith and Professor Rubenstein emphasize that the Massachusetts Health & Hospital Association ("MHHA"), which hosted Mr. Smith's presentation, "is a former client of Zuckerman Spaeder's." Opposition at 2; Doc. No. 3244-4 ("Rubenstein Decl.") at 4.[2] This fact could be relevant if the Providers had accused Mr. Smith of improper solicitation under Alabama Rule of Professional Conduct 7.3(a), but they have not. The Providers do not dispute that, as a general matter, an attorney may solicit employment from a current or former client. But the Providers are unaware of any authority that an attorney may solicit such employment if it would create a conflict of interest (Rule 1.7), or that an attorney may make false or misleading communications in doing so (Rule 7.1), and Mr. Smith cites none.

In any event, there is a critical difference between MHHA, which is not a member of the Settlement Class, and its member hospitals, which are. MHHA is tax-exempt under Section 501(c)(6) of the Internal Revenue Code. A condition of its tax exemption is that "no part of [its] net earnings [may] inure[] to the benefit of any private shareholder or individual." I.R.C. § 501(c)(6). If a law firm were to represent a hospital association's members, but be paid by the association, it would threaten the association's tax exemption. For this reason, hospital associations

---

[2] Professor Rubenstein's declaration is essentially a second brief in opposition to the Providers' motion. It consists of legal argument based on facts available from the public docket or provided by Mr. Smith. Therefore, it is "inadmissible under Federal Rule of Evidence 702 because it offers merely legal conclusions, which invade the province of the court and are not helpful to the trier of fact." *Southern Visions, LLP v. Red Diamond, Inc.*, 370 F. Supp. 3d 1314, 1319 n.1 (N.D. Ala. 2019). The Court should not consider it when deciding the motion. In the event the Court disagrees, the Providers have addressed some of Professor Rubenstein's points in this brief.

are careful to distinguish between representing the association and representing its members. Therefore, even if MHHA is a former client of Mr. Smith's firm, that does not imply that its member hospitals—the target audience for his presentation—were ever clients.

Moreover, Mr. Smith cannot represent that the viewers of his presentation were current and former clients. He put information about the presentation on Zuckerman Spaeder's website, and the presentation was posted on YouTube more than a month ago, where it remains today. Mr. Smith has no way of knowing who has seen it.

*The Consequences to Subscribers of Provider Opt-Outs*

If a healthcare provider opts out of the settlement, it forgoes significant injunctive relief not only for itself, but also for its patients, who are members of the Subscriber class. Mr. Smith disagrees on two grounds: providers who opt out will likely get the benefit of the injunctive relief anyway, and providers may get the same or better injunctive relief in separate litigation. Opposition at 11. Neither statement has any basis, and Mr. Smith fails to acknowledge this Court's statement that opt-outs "**WILL NOT** be entitled to receive any benefits from the Settlement, including entitlement to Injunctive Relief." Doc. No. 3225 at 53.

Mr. Smith's statement that providers who opt out will nevertheless receive the settlement's injunctive relief is based entirely on his own supposition that "is doubtful that the Blues would find it cost-effective to operate two systems in parallel, discriminating among providers based on whether they participated in the settlement, or would embrace the risk of liability inherent in such an approach." *Id.* Mr. Smith appears to misunderstand the injunctive relief. The BlueCard Transformation described in the Settlement Agreement will permit Settlement Class Members to access data "pertaining to Members accessing Covered Services pursuant to the BlueCard Program … in the same way that the Local/Host Blue Plan currently shares its own Members' data." Doc.

3

No. 3192-2 at ¶ 14(a). It does not require the Blues to operate "two systems in parallel." Providers could simply not be given access to this additional data, whether by password protection or otherwise. Other injunctive relief, such as the Prompt Pay Commitment, the BlueCard Executive, and the settlement's compliance process, would be trivially easy to restrict to Providers who do not opt out. Failing even to understand the injunctive relief at issue before advising Providers to give it away for themselves and their patients reflects a cavalier attitude to the interests of both the Provider and Subscriber classes.

And there should be no doubt that the injunctive relief in the Providers' settlement benefits patients—that is, members of the Subscriber class—in direct and significant ways. For example, Providers' access to new data, combined with the new Real-Time Messaging System and the BlueCard Executive, Doc. No. 3192-2 at ¶¶ 14–16, will streamline pre-authorization, giving patients pre-authorizations that are more timely and less likely to be denied for administrative reasons. Declaration of Matt Katz, Doc. No. 3253-2, at ¶ 29. Providers' access to more information about their patients' coverage will reduce the financial burden on patients by reducing the likelihood of unexpected costs. *Id.* ¶ 30. Expanded opportunities for Providers to offer telehealth services will benefit patients, especially those with limited physical access to their Providers. *Id.* ¶ 32. These are just some of the ways in which patients, in addition to Providers, will benefit from the settlement's injunctive relief. *See id.* ¶¶ 28–36. This Court even noticed a benefit to Subscribers during the Providers' presentation at the preliminary approval hearing: "If Mr. Boies was here, he'd say, This benefits my class, too, the subscribers." 11/14/24 Tr. at 31.

Mr. Smith's statement that Providers who opt out can negotiate for the same or better relief calls into question this Court's statement in its preliminary approval of the Providers' settlement: "if the individual providers were to bring their own actions, the court suspects that the Blues would

4

litigate each one to its conclusion rather than enter into piecemeal settlements." Doc. No. 3225 at 37 n.6. Injunctive relief in those settlements would fall under the rule of reason, making it especially difficult to obtain. And if enough Providers were to opt out that the Defendants rescind the Settlement Agreement, the loss of injunctive relief would be complete and possibly irrevocable: "And, as to most of the injunctive relief that Provider Plaintiffs have obtained through settlement, there is more than a risk that this relief would not be achieved through further litigation. The significant improvements to the BlueCard Program may not be the type of relief a court could award even if Provider Plaintiffs were to prevail at trial. Only through settlement with all of the Blue Plans could such an outcome have been achieved." *Id.* at 36.

Therefore, the consequences to Subscribers are far from "speculative," and they put Mr. Smith directly adverse to the Subscribers. As the General Counsel of the Alabama State Bar explains, "Under Rule 1.7(a), the phrase 'directly adverse' does not always mean if one client wins the other automatically loses. It can also mean that if one client wins, the other one becomes weaker in some way, loses leverage or is in some way diminished. The subscriber class benefits you describe that could be lost would fall into this category." Doc. No. 3232-1 at 3. Other than disputing the facts provided to the General Counsel (which were accurate), Mr. Smith does not question the General Counsel's analysis.

*Financial Consequences to Subscribers if Opt-Out Providers Prevail*

The Providers do not "embrace" the argument that Subscribers will be harmed if Providers obtain higher reimbursement rates, as Mr. Smith claims. In fact, they have consistently opposed it. Here, they merely recognize that defendants in opt-out litigation will inevitably make this argument (as Mr. Smith well knows), they will produce expert witnesses who support it, and they may prevail. At that point, Mr. Smith will be in an impossible position: arguing for more damages

5

for his Provider clients will harm his Subscriber clients. The General Counsel recognized this as a conflict as well: "Similarly, if as a result of the class relief, the provider class emerges stronger in the marketplace (as related to the subscribers, not the defendants) and can impose concessions on the subscribers as a result of this strength, this would make the representation directly adverse." Doc. No. 3232-1 at 3.

In fact, a ruling for the defendants on this issue is not even necessary for a conflict to arise. What if an opt-out plaintiff's expert builds an econometric model showing that more competition among the Blues will increase reimbursements to Providers, but the Blues will pass through some of that increase to Subscribers in the form of higher premiums? An unconflicted attorney could use that model. Mr. Smith can't. As the General Counsel explains, "The same facts would also indicate a conflict under Rule 1.7(b) since the lawyer in question would be limited by his 'responsibilities to another client.'" Doc. No. 3232-1 at 3.

*Whether the Subscribers Are Mr. Smith's "Clients"*

When Mr. Smith applied for a position on the Subscriber Plaintiffs' Steering Committee back in 2013, what would have happened if he had added the disclaimer, "I will not consider the Subscriber class members to be my clients, I will not owe them a duty of loyalty, and I reserve the right to take actions directly adverse to their interests in this suit"? It seems reasonable to conclude that the Court would not have appointed him or found that he was "best suited to represent, on an interim basis, the interests of the class." Doc. No. 61 at 2. But now, twelve years later, he is adding the disclaimer: "Mr. Smith's duties arising from his role in MDL leadership are not the sort of client duties that ordinarily could create a disqualifying conflict—especially with respect to absent class members." Opposition at 14.

6

Even if Mr. Smith's responsibility to the class were merely a fiduciary one, as Professor Rubenstein suggests, Rubenstein Decl. at 8, that would be enough to create a disqualifying conflict. "Whether or not formally designated interim counsel, an attorney who acts on behalf of the class before certification must act in the best interests of the class as a whole." Fed. R. Civ. P. 23(g)(2)(A) advisory committee's note (2003). Courts can and do disqualify plaintiffs' counsel in class actions due to conflicts of interest. *E.g.*, *Moreno v. Autozone, Inc.*, 2007 WL 4287517, at *3–7 (N.D. Cal. Dec. 6, 2007). In fact, "in a class action context, disqualification is *more likely* because putative class counsel are subject to a 'heightened standard' which they must meet if they are to be allowed by the Court to represent absent class members." *Huston v. Imperial Credit Com. Mortg. Inv. Corp.*, 179 F. Supp. 2d 1157, 1167 (C.D. Cal. 2001) (emphasis added).

## II.   MR. SMITH'S CONFIDENTIALITY OBLIGATIONS PRECLUDE REPRESENTATION OF PROVIDERS.

Mr. Smith's declaration states that he has not "used or relied on confidential materials … in my consideration of representation of provider opt-outs or in any of my efforts to represent them." Doc. No. 3244-5 at 2. But the horse has left the barn; he has already traded on his inside information, stating that he oversaw the litigation and the Steering Committee "direct[ed]" the litigation. As much as he tries to explain away his statement that he "know[s] where the bodies are buried," that phrase has a well-accepted meaning: "to have personal knowledge of the secrets or confidential affairs of an organization or individual." Oxford English Dictionary, https://www.oed.com/dictionary/body_n#115392185.

Mr. Smith has another problem that goes beyond the scope of information covered by the protective order or the attorney-client privilege. Even if his representation of the Subscribers has ended, Alabama Rule of Professional Conduct 1.9(b) prohibits him from "us[ing] information relating to the representation" of the Subscribers to their disadvantage. Using what he learned over

7

twelve years of litigation to encourage Providers to opt out, and denying Subscribers the benefit of injunctive relief in the process, is prohibited. *See* Doc. No. 3232-1 (General Counsel Opinion) at 4 ("Such information could also be disqualifying under Rule 1.9(b).").

## CONCLUSION

Mr. Smith has unwaivable conflicts. The motion should be granted except for the request for corrective notice, which the Provider Plaintiffs may raise at the appropriate time.

Respectfully submitted this the 31st day of January, 2025.

>  */s/ Samuel Issacharoff*
> Samuel Issacharoff
> 40 Washington Square South
> New York, NY 10012
> Phone: 212-998-6580
> Email: si13@nyu.edu

| */s/ Edith M. Kallas* | */s/ Joe R. Whatley, Jr.* |
|---|---|
| Edith M. Kallas – ***Co-Lead Counsel*** | Joe R. Whatley, Jr. – ***Co-Lead Counsel*** |
| WHATLEY KALLAS, LLP | W. Tucker Brown |
| 152 West 57th Street | WHATLEY KALLAS, LLP |
| 41st Floor | 2001 Park Place North |
| New York, NY 10019 | 1000 Park Place Tower |
| Tel: (212) 447-7060 | Birmingham, AL 35203 |
| Fax: (800) 922-4851 | Tel: (205) 488-1200 |
| Email: ekallas@whatleykallas.com | Fax: (800) 922-4851 |
| | Email: jwhatley@whatleykallas.com |
| | tbrown@whatleykallas.com |

| */s/ Barry A. Ragsdale* | */s/ U.W. Clemon* |
|---|---|
| Barry Alan Ragsdale – ***Plaintiffs' Liaison Counsel and Discovery Liaison Counsel*** | U.W. Clemon – ***Plaintiffs' Steering Committee*** |
| Dominick Feld Hyde, PC | U. W. Clemon, LLC |
| 1130 22nd Street South Ridge Park | 5202 Mountain Ridge Parkway |
| Suite 4000 | Birmingham, AL 35222 |
| Birmingham, AL 35205 | Tel: (205) 837-2898 |
| Tel: (205) 536-8888 | Email: uwclemon1@gmail.com |
| bragsdale@dfhlaw.com | |

8

*/s/ Aaron S. Podhurst*
Aaron S. Podhurst – ***Plaintiffs' Steering Committee***
Peter Prieto – ***Chair, Expert Committee***
PODHURST ORSECK, P.A.
One S.E. 3rd Avenue
Suite 2300
Miami, FL 33131
Tel: (305) 358-2800
Fax: (305) 358-2382
Email: apodhurst@podhurst.com
           pprieto@podhurst.com

*/s/ J. Mark White*
J. Mark White – ***Litigation Committee***
*/s/ Augusta S. Dowd*
Augusta S. Dowd – ***Chair, Litigation Committee***
Linda G. Flippo – ***Discovery Committee***
WHITE ARNOLD & DOWD, P.C.
2001 Park Place North
Suite 1400
Birmingham, AL  35203
Tel: (205) 323-1888
Fax: (205) 323-8907
Email: mwhite@whitearnolddowd.com
           adowd@whitearnolddowd.com
           lflippo@whitearnolddowd.com

*/s/ Mark K. Gray*
Mark K. Gray – ***Discovery Committee***
GRAY & WHITE
713 E. Market Street, Suite 200
Louisville, KY 40202
Tel: (502) 805-1800
Fax: (502) 618-4059
Email: mgray@grayandwhitelaw.com

*/s/ Dennis Pantazis*
Dennis Pantazis – ***Plaintiffs' Steering Committee***
Brian Clark – ***Discovery Committee***
WIGGINS CHILDS PANTAZIS FISHER
 GOLDFARB
The Kress Building
301 Nineteenth Street North
Birmingham, AL 35203
Tel: (205) 314-0500
Fax: (205) 254-1500
Email: dgp@wigginschilds.com
           bclark@wigginschilds.com

*/s/ W. Daniel Miles, III*
W. Daniel Miles, III – ***Written Submissions Committee***
BEASLEY ALLEN CROW METHVIN PORTIS
 & MILES, P.C.
218 Commerce Street
Montgomery, AL 36104
Tel: (800) 898-2034
Fax: (334) 954-7555
Email: dee.miles@beasleyallen.com

*/s/ Myron C. Penn*
Myron C. Penn – ***Discovery Committee***
PENN & SEABORN, LLC
53 Highway 110
Post Office Box 5335
Union Springs, AL 36089
Tel: (334) 738-4486
Fax: (334) 738-4432
Email: myronpenn28@hotmail.com

9

*/s/ E. Kirk Wood, Jr.*
E. Kirk Wood, Jr. – ***Local Facilitating Counsel***
WOOD LAW FIRM LLC
P. O. Box 382434
Birmingham, AL 35238
Tel: (205) 612-0243
Fax: (205) 705-1223
Email: kirk@woodlawfirmllc.com

Patrick J. Sheehan
WHATLEY KALLAS, LLP
101 Federal Street
19th Floor
Boston, MA 10019
Tel: (617) 573-5118
Fax: (617) 371-2950
Email: psheehan@whatleykallas.com

Deborah J. Winegard
WHATLEY KALLAS, LLP
1068 Virginia Avenue, NE
Atlanta, GA 30306
Tel: (404) 607-8222
Fax: (404) 607-8451
Email: dwinegard@whatleykallas.com

Nicholas B. Roth – ***Chair, Discovery Committee***
Julia Smeds Roth – ***Discovery Committee***
EYSTER KEY TUBB ROTH MIDDLETON & ADAMS, LLP
402 East Moulton Street, SE
Decatur, AL 35602
Tel: (256) 353-6761
Fax: (256) 353-6767
Email: nbroth@eysterkeylaw.com
         jroth@eysterkeylaw.com

Henry C. Quillen
WHATLEY KALLAS, LLP
159 Middle Street
Suite 2C
Portsmouth, NH 03801
Tel: (603) 294-1591
Fax: (800) 922-4851
Email: hquillen@whatleykallas.com

Charles Clinton Hunter
HAYES HUNTER PC
4265 San Felipe, Suite 1000
Houston, TX 77027
Tel: (281) 768-4731
Fax: (713) 583-7047
Email: chunter@hayeshunterlaw.com

Dennis C. Reich – ***Chair, Damages Committee***
REICH & BINSTOCK, LLP
4265 San Felipe, Suite 1000
Houston, TX 77027
Tel: (713) 622-7271
Fax: (713) 623-8724
Email: dreich@reichandbinstock.com

David A. Balto – ***Expert Committee***
THE LAW OFFICES OF DAVID A. BALTO
1350 I Street, N.W., Suite 850
Washington, DC 20005
Tel: (202) 789-5424
Fax: (202) 589-1819
Email: david.balto@dcantitrustlaw.com

Van Bunch – ***Chair, Class Certification Committee***
BONNETT FAIRBOURN FRIEDMAN & BALINT, P.C.
2325 E. Camelback Road, Suite 300
Phoenix, AZ 85016
Tel: (602) 274-1100
Fax: (602) 274-1199
Email: vbunch@bffb.com

Robert J. Axelrod – ***Chair, Written Submissions Committee***
AXELROD LLP
800 Third Avenue, Suite 2800
New York, NY 10022
Tel: (646) 448-5263
Fax: (212) 840-8560
Email: raxelrod39@gmail.com

John C. Davis – ***Written Submissions Committee***
LAW OFFICE OF JOHN C. DAVIS
623 Beard Street
Tallahassee, FL 32303
Tel: (850) 222-4770
Email: john@johndavislaw.net

Lynn W. Jinks, III – ***Expert Committee***
Christina D. Crow – ***Discovery Committee***
JINKS CROW, P.C.
219 North Prairie Street
Union Springs, AL 36089
Tel: (334) 738-4225
Fax: (334) 738-4229
Email: ljinks@jinkslaw.com
          ccrow@jinkslaw.com

Joey K. James – ***Litigation Committee***
BUNCH & JAMES
P. O. Box 878
Florence, AL 35631
Tel: (256) 764-0095
Fax: (256) 767-5705
Email: joey@joeyjameslaw.com

Richard S. Frankowski – ***Discovery Committee***
THE FRANKOWSKI FIRM, LLC
231 22nd Street South, Suite 203
Birmingham, AL 35233
Tel: (205) 390-0399
Fax: (205) 390-1001
Email: richard@frankowskifirm.com

Michael C. Dodge – ***Expert Committee***
GLAST PHILLIPS & MURRAY, P.C.
14801 Quorum Drive, Suite 500
Dallas, TX 75254
Tel: (972) 419-7172
Email: mdodge@gpm-law.com

Michael E. Gurley, Jr. – ***Discovery Committee***
Attorney at Law
24108 Portobello Road
Birmingham, AL 35242
Tel: (205) 908-6512
Email: mgurleyjr@yahoo.com

Stephen M. Hansen – *Class Certification Committee*
LAW OFFICE OF STEPHEN M. HANSEN
1821 Dock Street
Tacoma, WA 98402
Tel: (253) 302-5955
Fax: (253) 301-1147
Email: steve@stephenmhansenlaw.com

C. Wes Pittman – *Settlement Committee*
THE PITTMAN FIRM, P.A.
432 McKenzie Avenue
Panama City, FL 32401
Tel: (850) 784-9000
Fax: (850) 763-6787
Email: wes@pittmanfirm.com

Robert B. Roden – *Litigation Committee*
SHELBY RODEN, LLC
2956 Rhodes Circle
Birmingham, AL 35205
Tel: (205) 933-8383
Fax: (205) 933-8386
Email: rroden@shelbyroden.com

Gregory S. Cusimano – *Litigation Committee*
CUSIMANO, ROBERTS & MILLS, LLC
153 South 9th Street
Gadsden, AL 35901
Phone: (256) 543-0400
Fax: (256) 543-0488
Email: greg@alalawyers.net

Brian E. Wojtalewicz
WOJTALEWICZ LAW FIRM, LTD.
139 N. Miles Street
Appleton, MN 56208
Tel: (320) 289-2363
Fax: (320) 289-2369
Email: brian@wojtalewiczlawfirm.com

Harley S. Tropin – *Damages Committee*
Javier A. Lopez – *Discovery Committee*
KOZYAK TROPIN &
 THROCKMORTON, P.A.
2525 Ponce De Leon Boulevard, 9th Floor
Miami, FL 33134
Tel: (305) 372-1800
Fax: (305) 372-3508
Email: hst@kttlaw.com
           jal@kttlaw.com

J. Preston Strom, Jr. – *Litigation Committee*
STROM LAW FIRM, LLC
2110 N. Beltline Boulevard, Suite A
Columbia, SC 29204-3905
Tel: (803) 252-4800
Fax: (803) 252-4801
Email: petestrom@stromlaw.com

Thomas V. Bender – *Discovery Committee*
Dirk L. Hubbard
HORN AYLWARD & BANDY, LLC
2600 Grand Blvd., Suite 1100
Kansas City, MO 64108
Tel: (816) 421-0700
Email: tbender@hab-law.com
   dhubbard@hab-law.com

Gary E. Mason – *Class Certification Committee*
WHITFIELD BRYSON & MASON, LLP
1625 Massachusetts Ave. NW, Suite 605
Washington, DC 20036
Tel: (202) 429-2290
Fax: (202) 640-1160
Email: gmason@wbmllp.com

Michael L. Murphy – *Discovery Committee*
BAILEY GLASSER LLP
910 17th Street, NW, Suite 800
Washington, DC 20006
Tel: (202) 463-2101
Fax: (202) 463-2103
Email: mmurphy@baileyglasser.com

| | |
|---|---|
| Archie C. Lamb, Jr.<br>ARCHIE LAMB & ASSOCIATES, LLC<br>301 19th Street North, Suite 585<br>The Kress Bldg.<br>Birmingham, AL 35203-3145<br>(205) 458-1210<br>Email: alamb@archielamb.com | Lance Michael Sears<br>SEARS & SWANSON, P.C.<br>First Bank Building<br>2 North Cascade Avenue, Suite 1250<br>Colorado Springs, CO 80903<br>Tel: (719) 471-1984<br>Fax: (719) 577-4356<br>Email: lance@searsassociates.com |
| Paul Lundberg<br>LUNDBERG LAW, PLC<br>600 4TH Street, Suite 906<br>Sioux City, IA 51101<br>Tel: (712) 234-3030<br>Fax: (712) 234-3034<br>Email: paul@lundberglawfirm.com | Jessica Dillon<br>Ray R. Brown<br>Molly Brown<br>DILLON & FINDLEY, P.C.<br>1049 W. 5th Avenue, Suite 200<br>Anchorage, AK 99501<br>Tel: (907) 277-5400<br>Fax: (907) 277-9896<br>Email: Jessica@dillonfindley.com<br>   Ray@dillonfindley.com<br>   Molly@dillonfindley.com |
| Gwen Simons<br>Simons & Associates Law, P.A.<br>P.O. Box 1238<br>Scarborough, ME 04070-1238<br>Tel: (207) 205-2045<br>Fax: (207) 883-7225<br>Email: gwen@simonsassociateslaw.com | Allyson C. Dirksen<br>HEIDMAN LAW FIRM, P.L.L.C.<br>1128 Historic 4th Street<br>P. O. Box 3086<br>Sioux City, IA 51101<br>Tel: (712) 255-8838<br>Fax (712) 258-6714<br>Email: allyson.dirksen@heidmanlaw.com |

*Counsel for Provider Plaintiffs*

13