FILED

2025 Feb-07 PM 08:06
U.S. DISTRICT COURT
N.D. OF ALABAMA

**RUMBERGER, KIRK & CALDWELL, P.A.**
Craig A. Alexander
2001 Park Place North
Suite 1300
Birmingham, AL 35203
(205) 572-4920
calexander@rumberger.com

*and*

**WILLIAMS & CONNOLLY LLP**
Robert M. Cary
William T. Burke
680 Maine Ave SW
Washington, DC 20024
(202) 434-5000
rcary@wc.com
wburke@wc.com

*Counsel to Respondent Polsinelli PC*

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| IN RE:<br>BLUE CROSS BLUE SHIELD<br>ANTITRUST LITIGATION<br><br>MDL No. 2406 | Master File No. 2:13-CV-20000-RDP<br><br>This Document Relates to Provider<br>Track Cases |

**POLSINELLI PC'S OPPOSITION TO MOTION
TO DISQUALIFY AND FOR CORRECTIVE NOTICE**

The right to counsel of one's choosing is a bedrock principle of American jurisprudence. The order Class Counsel seek would violate that principle without justification. Indeed, the order Class Counsel seek would prevent a number of health care providers from consulting Polsinelli PC, the law firm they have used for more than a decade, on an important decision— whether to accept the terms of a settlement that was negotiated without their approval, or whether to opt out of the settlement and assert their own claims or negotiate their own deal.

Class Counsel's justification for departing from this principle is that an alleged conflict arose when a handful of lawyers who had previously represented Blue Cross Blue Shield of Alabama ("BCBS Alabama") joined Polsinelli. That did not create a conflict of interest. Polsinelli's clients who must decide whether to opt out of the settlement would not be bringing claims against BCBS Alabama because they did business with other BCBS companies. The Polsinelli lawyers who represent these clients are not Alabama lawyers, are not appearing in this Court, and thus are governed not by Alabama's ethics rules but by the ethics rules of other jurisdictions where they practice and where their clients' claims, if any, would be filed. And the Polsinelli lawyers who formerly represented BCBS Alabama before they joined Polsinelli have not shared any confidential information about BCBS Alabama with anybody at Polsinelli. Under these circumstances, there is no basis to disqualify Polsinelli lawyers who practice in other jurisdictions from advising clients in other states that are not adverse to BCBS Alabama.

Another bedrock principle of American jurisprudence is the requirement of standing. Class Counsel lacks standing to allege a conflict of interest on behalf of BCBS Alabama.

A final bedrock principle of American jurisprudence is that we are free to give our opinions. That is exactly what Polsinelli partner Dan Owen did. He gave his opinions, which were well

founded and fair. Class Counsel's attempt to muzzle him and compel him to say something else should be rejected.

## FACTUAL BACKGROUND

**Polsinelli (1972 to Present).** The original Polsinelli law firm was founded by Jim Polsinelli and two other young lawyers in Kansas City, Missouri, in 1972. Ex. A (Declaration of Matthew J. Murer ("Murer Decl.")) ¶ 6 . For its first decade, Polsinelli primarily served small businesses in the Kansas City area. *Id.* ¶ 7. Polsinelli developed a national trial practice during the 1980s and has grown steadily ever since. *Id.* ¶ 8. Today, Polsinelli has over 1,100 lawyers who are members of the bar in 45 states and practice out of 24 offices in 17 states. *Id.* ¶¶ 8-9.

Polsinelli represents hundreds of health care providers in matters unrelated to this antitrust litigation, and is well known for its representation of health care providers. *Id.* ¶ 10. As a matter of policy, to avoid conflicts of interest, Polsinelli rarely represents health care insurers – and then only on matters that are not adverse to providers, with appropriate waivers allowing the firm to be adverse to the insurer clients in unrelated matters on behalf of providers. *Id.* ¶ 11.

**Appearance on Behalf of Subpoena Recipients (2016-17).** Polsinelli partner Dan Owen was asked in 2016 to represent four healthcare provider clients who received third-party subpoenas issued by several of the Blue Cross Blue Shield companies involved in this MDL proceeding. Ex. B (Declaration of Daniel D. Owen ("Owen Decl.")) ¶¶ 10-11. As a result of a discovery dispute regarding those subpoenas, the Blue Cross Blue Shield companies filed a motion to compel. Polsinelli's clients filed an opposition brief supported by a declaration from Mr. Owen, and Mr. Owen appeared at a hearing concerning the subpoenas in 2017 on their behalf. *Id.* ¶¶ 12-15. The discovery dispute was resolved by agreement in 2017 without a ruling from the Court. Polsinelli's

four non-party clients are no longer before the Court, Polsinelli no longer represents them in this litigation, and Polsinelli has not appeared in this MDL since 2017. *Id.* ¶¶ 16-18.

**Monitoring the Blue Cross Blue Shield Antitrust Cases (2015-Present).** Mr. Owen has been monitoring the antitrust litigation against the Blue Cross Blue Shield companies for almost ten years. *Id.* ¶ 4. Mr. Owen started researching the litigation in 2015 and formed opinions about the goals and strategies of the litigation by reading the pleadings and monitoring public hearings, and by discussing the case with attorneys involved in the litigation, including Lead Class Counsel Joe Whatley. *Id.* ¶ 5. Mr. Owen's opinions about the litigation's goals and strategy were confirmed by his conversations with Mr. Whatley in 2016, during which Mr. Whatley shared his perspective of goals and strategies of the litigation. *Id.* ¶¶ 6-7. Mr. Owen's opinions were reinforced by his experience planning for and participating in a mediation session for the litigation in 2019, which Mr. Whatley invited Mr. Owen to join based on their shared view of the litigation's goals and strategies. *Id.* ¶¶ 19-22. Upon reviewing the terms of the settlement agreement, and drawing upon his experience as an antitrust attorney and knowledge of the litigation, Mr. Owen concluded that the settlement departed from the original goals of the case. *Id.* ¶¶ 27-29.

Mr. Owen signed, and has complied with, a mediation agreement in order to participate in the 2019 mediation session. *Id.* ¶ 20. At Polsinelli's suggestion, he and Mr. Whatley also entered into a confidentiality agreement following their conversations in 2016, and Mr. Owen has adhered to that agreement. *Id.* ¶¶ 8-9, 23-24. Indeed, Mr. Owen has not disclosed any confidential information at any time and Class Counsel do not allege otherwise.

**New Lawyers Join Polsinelli (January 2024).** Four lawyers who formerly represented BCBS Alabama in this MDL as part of a team of lawyers from Maynard, Cooper & Gale (which became Maynard Nexsen in 2023) left Maynard and joined Polsinelli one year ago. Murer Decl.

¶ 12. None of them has done any work for BCBS Alabama since 2018. *Id.* ¶ 13.[1] None of them have represented BCBS Alabama while at Polsinelli; none of them have shared any information from BCBS Alabama with anyone at the Polsinelli firm; and none brought documents relating to that representation with them to Polsinelli. Polsinelli has erected a screen (and informed BCBS Alabama in writing of the screening procedures) to ensure that no one who previously worked at the Maynard firm advises any clients regarding the proposed settlement, or shares information about BCBS Alabama or the litigation in general with anyone else at Polsinelli. *Id.* ¶¶ 14-19.

**Advising Clients on Whether to Opt Out (December 2024 to Present).** Since the Court preliminarily approved the class settlement on December 4, 2024, many health care providers have asked Polsinelli lawyers (not including the Polsinelli lawyers who are screened) for advice on whether to accept the terms of the settlement or opt out and pursue separate remedies. *Id.* ¶ 20. Due to the pendency of the disqualification motion, Polsinelli has hesitated to advise most of those providers. *Id.* ¶ 21. As a result, Polsinelli is currently advising *only a single client* with respect to the opt out issue. The Motion—and in particular its sweeping request that every lawyer in the firm be disqualified from advising any provider anywhere—has thus had a strong negative impact on the firm's practice and its relationships with providers. *Id.* ¶ 22. The providers Polsinelli has been forced to turn away during the pendency of the Motion have been denied their choice of counsel in evaluating the very important issue of whether to accept the settlement or opt out. *Id.* ¶ 21. This would become a permanent injury if the Motion were to be granted.

---

[1] The two former Maynard attorneys who appeared in this MDL proceeding while representing BCBS Alabama did not file motions to withdraw when they stopped representing BCBS Alabama several years ago. To address that oversight and make clear that they are not currently representing any clients in these MDL proceedings, they filed such motions today.

The only client the firm is currently advising with respect to the opt out issue, a provider that Polsinelli has represented for many years, operates extensively in several states, including Washington, but has no operations in Alabama and does not do business with BCBS Alabama. If that client decides to opt out, it would not negotiate against or sue BCBS Alabama, and any claims it might assert against other BCBS companies would most likely be filed in jurisdictions other than Alabama. *Id.* ⁋ 24. In short, Polsinelli is not currently representing *any* clients who are materially adverse to BCBS Alabama and, if the firm considers advising other clients regarding these issues in the future, it will ensure through its conflict-checking procedures that it avoids any conflict of interests relating to BCBS Alabama.

**The Zotec Zoom Call (December 19, 2024).** Zotec Partners is a Polsinelli client that provides consulting services to health care providers. Owen Decl. ⁋ 32. Zotec's management asked Polsinelli to make an informational presentation on the proposed settlement to Zotec's clients. *Id.* Polsinelli lawyers agreed to do so as a courtesy to Zotec. *Id.* ⁋ 33. Mr. Owen was the lead presenter. *Id.* He did not view the informational presentation as a marketing opportunity for the firm because Zotec's clients are typically smaller health care providers than Polsinelli would normally represent in an anti-trust action. *Id.* ⁋ 33-34. Mr. Owen did not know that the session would be recorded until the event was underway, and he did not consent to it being recorded and posted on the internet. *Id.* ⁋ 35.[2] Polsinelli does not know the identities of the people who joined the December 19 Zotec call, but the firm has not and is not advising any of them with respect to the proposed settlement in this MDL (it is advising only one client, which did not participate in the Zotec call). Murer Decl. ⁋ 26. Zotec itself is not a member of the Provider class, because Zotec is not a health care provider.

## ARGUMENT

---

[2] Polsinelli understands that Zotec has removed the recording from its website.

Class Counsel seek to disqualify the entire Polsinelli firm from representing any Provider clients—even if they are not adverse to BCBS Alabama—based on Alabama ethics rules because several former Maynard lawyers represented BCBS Alabama before joining Polsinelli. The Court should decline that request.

First, the only client Polsinelli is currently advising with respect to the proposed settlement in this MDL is not adverse to BCBS Alabama. The client did not do business with BCBS Alabama and, if it opted out, it would not be negotiating against or suing BCBS Alabama. If Polsinelli's client opts out and decides to assert any claims, it will assert those claims against another BCBS company, in a jurisdiction other than Alabama where its business operations are concentrated. Second, the Polsinelli anti-trust lawyers who are advising that client are not Alabama lawyers, are not appearing before this Court, and do not include the lawyers who formerly represented BCBS Alabama, all of whom have been screened. Third, Class Counsel unjustifiably rely on the Alabama Rules of Professional Conduct ("Alabama Rules") to allege that every one of Polsinelli's lawyers have a conflict because a few of them (before they joined Polsinelli) once represented BCBS Alabama. But in fact, the Alabama Rules do not apply to Polsinelli lawyers who are not members of the Alabama Bar and represent a client who has potential claims against a BCBS company in another state. Under relevant American Bar Association rules and the rules of other states where Polsinelli's client might assert claims, no conflict exists because the Polsinelli lawyers who formerly represented BCBS Alabama have been screened. Fourth, even if the Alabama Rules did apply, Class Counsel have not met their burden of showing the existence of a conflict because they have not (1) identified any Polsinelli client that is materially adverse to BCBS Alabama with respect to this MDL proceeding (there are none); or (2) identified any of BCBS Alabama's information that Polsinelli is using to BCBS Alabama's disadvantage (and they cannot, given the

screen). <u>Finally</u>, Class Counsel lack standing to move to disqualify Polsinelli; only the former client of the lawyers who left Maynard and joined Polsinelli, BCBS Alabama, which has not moved, could have standing. The Court should deny Class Counsel's Motion to Disqualify.

Class Counsel's request that this Court compel Mr. Owen to issue a corrective notice is also unfounded. Mr. Owen's presentation was not the kind of abusive communication this Court is empowered to restrict, and Class Counsel do not identify any misleading or false statements worthy of correction. Instead, they object to Mr. Owen's opinions. Compelling Mr. Owen to retract his opinions would infringe on his First Amendment rights and deprive potential class members of important information necessary for them to make an informed decision about waiving their right to sue in separate litigation.

# I.    THE COURT SHOULD DENY CLASS COUNSEL'S MOTION TO DISQUALIFY POLSINELLI.

"Because a party is presumptively entitled to the counsel of his choice, that right may be overridden only if 'compelling reasons' exist." *S. Visions, LLP v. Red Diamond, Inc.*, 370 F. Supp. 3d 1314, 1322 (N.D. Ala. 2019) (quoting *In re BellSouth Corp.*, 334 F.3d 941, 961 (11th Cir. 2003)). "[T]he extreme measure of disqualifying a party's counsel of choice should be imposed only when absolutely necessary." *In re Centurylink Sales Pracs. & Secs. Litig.*, 2020 WL 3513547, at *5 (D. Minn. June 29, 2020). No reasons exist for such an extreme measure in this case.

## A.    Alabama Ethics Rules Do Not Apply to the Relevant Polsinelli Lawyers.

The only health care provider client whom Polsinelli is currently advising with respect to the settlement is not a party to this MDL, does not have any business operations in Alabama, does not do business with BCBS Alabama, and, if it opted out, would not be bringing claims against BCBS Alabama. Murer Decl. ¶ 24. The Polsinelli lawyers who currently represent that client are located in other states, are not members of the Alabama bar, are not currently representing any

parties in this MDL proceeding, and, therefore, are not currently before this Court. *See id.* In 2016 and 2017, Mr. Owen represented non-parties in a discovery dispute in this MDL proceeding, but that dispute was resolved years ago, those non-parties are no longer before the Court, and Mr. Owen's appearance ended when the dispute involving his clients ended. *See* Owen Decl. ¶¶ 10-18.

For these reasons, Polsinelli's representation of its current client is not governed by the Alabama Rules of Professional Conduct, which, by their own terms, apply only to Alabama lawyers: "A lawyer admitted to practice *in this jurisdiction* is subject to the disciplinary authority of the jurisdiction, although engaged in practice elsewhere." Ala. R. Prof. Cond. 8.5 (emphasis added).

Similarly, this Court's Local Rules state that the Alabama Rules will apply to an attorney "who is admitted to the bar of this court or who appears before this court," LR 83.1(f), but provide no support for any contention that the Alabama Rules apply to Polsinelli lawyers in other states who are advising a non-party client about potential claims to be brought in other courts. Indeed, the Alabama Rules themselves specifically recognize that when questions of multi-jurisdictional practice arise, choice of law rules may be necessary to determine the applicable ethics rules. *See* Comment to Ala. R. Prof. Cond. 8.5 ("Where the lawyer is licensed to practice law in two jurisdictions which impose conflicting obligations, applicable rules of choice of law may govern the situation.").

Class Counsel repeatedly cite the Alabama Rules. *See* DQ Motion (ECF No. 3245) at 3-5. But they offer no case law or other authority supporting their position that the Alabama Rules should apply to all Polsinelli lawyers, no matter where they practice, whether they are appearing before this Court, or where their clients are located.

9

The choice of ethics rules is important. The other states where Polsinelli's current client operates and where the client might in the future choose to file claims against BCBS entities other than BCBS Alabama have ethics rules that differ from Alabama's in significant respects. For example, if Polsinelli's current client chooses to opt out, it may assert claims in Washington, or in other states in which it operates against the BCBS companies (not including BCBS Alabama) with whom it does business. The ethics rules in Washington permit lawyers associated in a firm to screen a lawyer whose association with a prior firm gives rise to a conflict, thus preventing the conflict from being imputed to other lawyers at the firm. *See* Washington R. Prof. Cond. 1.10. In Washington and states with a similar rule, the fact that Polsinelli screened the lawyers who formerly represented BCBS Alabama means any alleged conflict arising from that representation is not imputed to other Polsinelli lawyers. Therefore, Polsinelli may advise its current client, as well as other providers who operate in states that permit screening to avoid the imputation of conflicts. For example, a number of states where Polsinelli has offices have a rule similar to that in Washington. *See* Delaware R. Prof. Cond. 1.10; District of Columbia R. Prof. Cond. 1.10; Illinois R. Prof. Cond. 1.10; North Carolina R. Prof. Cond. 1.10; Pennsylvania R. Prof. Cond. 1.10; Texas D. R. Prof. Cond. 1.10; Utah R. Prof. Cond. 1.10. Many other states—including Michigan, Rhode Island, Wyoming, Idaho, and Iowa, just to name a few—have a similar Rule 1.10 that permits screening. If clients in any of those states asked Polsinelli lawyers for advice, Class Counsel's requested disqualification order would unnecessarily prevent those clients from consulting counsel of their choice even though no conflict exists.

Instead of Class Counsel's blunderbuss approach of applying the Alabama Rules to every one of Polsinelli's Provider representations throughout the country, the Court should instead look to "applicable rules of choice of law." Comment to Ala. R. Prof. Cond. 8.5. The most widely

adopted choice of law principles for ethics rules are found in Rule 8.5 of the Model Rules of Professional Conduct, which this Court has adopted. *See* LR 83.1(f). Model Rule 8.5 provides:

> (b) In any exercise of the disciplinary authority of this jurisdiction, the rules of professional conduct to be applied shall be as follows:
>
>> (1) for conduct in connection with a matter pending before a tribunal, the rules of the jurisdiction in which the tribunal sits, unless the rules of the tribunal provide otherwise; and
>>
>> (2) *for any other conduct, the rules of the jurisdiction in which the lawyer's conduct occurred, or, if the predominant effect of the conduct is in a different jurisdiction, the rules of that jurisdiction shall be applied to the conduct.* A lawyer shall not be subject to discipline if the lawyer's conduct conforms to the rules of a jurisdiction in which the lawyer reasonably believes the predominant effect of the lawyer's conduct will occur.

ABA Model Rule 8.5 (emphasis added). Here, the advice Polsinelli gives its current client involves whether to opt out of the proposed settlement and pursue in other states potential claims that have not yet been asserted. Because the firm's client has not yet asserted any claims, Polsinelli's advice is not "conduct in connection with a matter pending before a tribunal," under Model Rule 8.5(b)(1); the firm's advice is "any other conduct" under Model Rule 8.5(b)(2). *See* ABA Formal Op. 504 (2023) at 2 ("Comment [4] [to Rule 8.5] is instructive, explaining that the phrase 'any other conduct' includes 'all other conduct, including *conduct in anticipation of a proceeding not yet pending before a tribunal*.'") (emphasis added). Thus, the applicable rules are those in the jurisdiction "in which the lawyer's conduct occurred, or, if the predominant effect of the conduct is in a different jurisdiction, the rules of that jurisdiction." Model R. Prof. Cond. 8.5(b)(2).

According to ABA Formal Opinion 504, to determine the predominant effect of a lawyer's conduct, one must consider several factors:

> 1. the client's location, residence, and/or principal place of business;
> 2. where the transaction may occur;

3. which jurisdiction's substantive law applies to the transaction;
4. the location of the lawyer's principal office;
5. where the lawyer is admitted;
6. the location of the opposing party and other relevant third parties (residence and/or principal place of business); and
7. the jurisdiction with the greatest interest in the lawyer's conduct.

ABA Formal Op. 504 at 2-3. These factors reveal (1) that the proper rules to apply will differ depending on the facts of each client representation and (2) that Class Counsel's motion does not provide sufficient information for the Court to determine "the jurisdiction in which the [Polsinelli] lawyer's conduct [is] occur[ring]" or where that conduct will have its "predominant effect." What is clear, however, is that nothing in Class Counsel's motion would permit the Court to find that the conduct of Polsinelli's lawyers is occurring in Alabama or will have its predominant effect in Alabama, where no Polsinelli lawyer represents any health care provider client with respect to this MDL proceeding.[3]

The Court should allow health care providers to consult counsel of their own choosing, including Polsinelli, which has avoided any conflicts of interest until now, and will remain vigilant about conflicts in the future. The Court should decline to prospectively disqualify an entire law firm from advising clients who are not before the Court as to whether they should file future lawsuits in other jurisdictions. If a client or former client in such a future lawsuit alleges a conflict, the court before whom the lawsuit is pending can address the issue at that time.

---

[3] Class Counsel suggest that Mr. Owen, a Missouri lawyer, cannot advise *any* client in *any* state regarding opting out and asserting its own claims because the Missouri Rules of Professional Conduct do not permit the use of screens to avoid imputation of conflicts. DQ Motion (ECF No. 3245) at 5. ABA Formal Opinion 504, however, makes clear that "where the lawyer is admitted" is only one of many factors that should be considered when determining where "the predominant effect" of the lawyer's conduct is located. *Id.* at 2-3. Class Counsel has not presented any evidence as to the predominant effect of Polsinelli's representation of its current client or potential representations of other Providers, and there is certainly no basis for the Court to conclude that the predominant effect of all such representations will be in Missouri merely because Mr. Owen practices there, or Alabama merely because the Court sits there.

**B.      Even If the Court Were to Apply Alabama Rules, No Conflict Exists.**

Class Counsel allege that any Polsinelli lawyer's advice to a health care provider in connection with the opt out decision presents a conflict based on a former representation of BCBS Alabama by the Maynard law firm, where a handful of Polsinelli lawyers once practiced. Class Counsel bear the burden of proving a conflict that warrants disqualification. *See In re BellSouth Corp.*, 334 F.3d at 961. A disqualification order "is a harsh sanction, often working substantial hardship on the client" and should therefore "be resorted to sparingly." *Norton v. Tallahassee Mem'l Hosp.*, 689 F.2d 938, 941 n.4 (11th Cir. 1982); *see also Herrmann v. GutterGuard, Inc.*, 199 F. App'x 745, 754 (11th Cir. 2006) ("a motion to disqualify is a drastic measure").

Class Counsel have not met this burden. They have presented no facts on which the Court could make a finding that a specific Polsinelli lawyer represents a particular client that has a conflict, let alone one that warrants disqualification. Class Counsel rely merely on a general assertion that some lawyers who now work at Polsinelli used to represent BCBS Alabama while at their former firm—and thus, they argue, the Alabama Rules should apply and the Court should disqualify every Polsinelli attorney from advising any health care providers anywhere in the country, even in jurisdictions where screening is permitted. The Court should not permit such a preemptive use of the ethics rules to impose a "harsh sanction" that will impose "substantial hardship" on providers who would otherwise choose Polsinelli as their counsel. *See Norton*, 689 F.2d at 941 n.4.

Indeed, even if Alabama Rules do apply, there is no conflict of interest under Rule 1.9,[4] which provides:

---

[4] This alleged conflict is properly analyzed under Alabama Rule 1.9, which addresses conflicts with former clients, rather than Rule 1.7, which addresses conflicts between current clients, *see*

A lawyer who has formerly represented a client in a matter shall not thereafter:

> (a) Represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client, unless the former client consents after consultation; or

> (b) Use information relating to the representation to the disadvantage of the former client except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client or when the information has become generally known.

Ala. R. Prof. Cond. 1.9. There is no conflict under either prong of Rule 1.9 because Polsinelli's only client is not "materially adverse" to BCBS Alabama and there is no evidence (or allegation) that Polsinelli lawyers have used information relating to BCBS Alabama to its "disadvantage."

### 1.    Polsinelli's Client Is Not Materially Adverse to BCBS Alabama

Polsinelli is not advising any client who is materially adverse to BCBS Alabama in this antitrust litigation. The firm currently advises only one client, which does not do business with BCBS Alabama, would not assert a claim against BCBS Alabama, and therefore is not materially adverse to BCBS Alabama. Murer Decl. ¶ 24. [5] If Polsinelli enters into any future attorney-client

---

Ala. R. Prof. Cond. 1.7. Indeed, BCBS Alabama is not a current Polsinelli client (and has never been a Polsinelli client).

[5] Any recovery that a Polsinelli client might obtain from a different BCBS company would not be "materially adverse" to BCBS Alabama because the antitrust laws do not permit a contribution action against BCBS Alabama. *See Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 632 (1981) (federal antitrust laws do not "allow a defendant, against whom civil damages, costs, and attorney's fees have been assessed, a right to contribution from other participants in the unlawful conspiracy on which recovery was based."). And even if a Polsinelli client believed BCBS Alabama's conduct played a role in an antitrust violation, it would be speculative to conclude that a conflicts now exists because the client would not be required to name BCBS Alabama as a defendant in a lawsuit or even allege that it was one of the conspirators. *See* 42 U.S.C. § 1985 ("party so injured … may have an action for recovery … against any one or more of the conspirators.").

relationships regarding this matter, it will be careful to avoid representing any clients who would create a conflict of interest with BCBS Alabama.

### 2. Polsinelli Is Not Using Confidential Information to the Disadvantage of BCBS Alabama

Polsinelli lawyers who worked at the Maynard firm have not shared any confidential information with anybody else at Polsinelli. *Id.* ¶¶ 15, 19. Furthermore, Polsinelli lawyers who worked at the Maynard firm have been screened, which will prevent any use of BCBS Alabama's information to its disadvantage. Class Counsel has not presented any evidence to the contrary.[6]

### C. Class Counsel Lack Standing.

"Standing doctrine embraces several judicially self-imposed limits on the exercise of federal jurisdiction, such as the general prohibition on a litigant's raising another person's legal rights[.]" *Allen v. Wright*, 468 U.S. 737, 751 (1984). The "irreducible constitutional minimum of standing contains three elements": (1) injury-in-fact, (2) causation, and (3) redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Both federal and state courts in Alabama have held that a movant not involved in an alleged conflicted relationship lacks standing to seek disqualification. *See, e.g.*, *Vaughn v. Healthcare Auth.*, 2005 WL 8158572, at *6 (N.D. Ala. Oct. 24, 2005); *see also Ex parte Tiffin*, 879 So. 2d 1160, 1165 (Ala. 2003).

Here, Class Counsel filed this motion to assert an argument that belongs to BCBS Alabama. BCBS Alabama, which is aware of the issue, has not to sought Polsinelli's disqualification after

---

[6] Class Counsel contends in footnote 2 that Owen should be disqualified because of "his access to confidential materials under multiple confidentiality agreements." Not so. There are no confidentiality agreements that prevent Mr. Owen from representing health care providers. Owen Decl. ¶ 24. Polsinelli proposed executing the confidentiality agreement between Mr. Owen and Mr. Whatley, and Mr. Owen has abided by the mediation confidentiality agreement he signed to participate in a mediation for this litigation. *Id.* ¶¶ 9, 23. Class Counsel thus does not allege that Mr. Owen has in fact violated any confidentiality agreement.

receiving correspondence from Polsinelli that explained the steps it had taken to guard against conflicts. Class Counsel are strangers to the ethical obligations upon which they purport to rely. The Court's inquiry should end there. *See United States v. Mollica*, 2015 WL 10936025 (N.D. Ala. Dec. 16, 2015).

## I.    THE COURT SHOULD DENY CLASS COUNSEL'S REQUEST FOR CORRECTIVE NOTICE.

### A.    The Statements by Mr. Owen Were Not the Kind of "Abusive" Communications That Courts Restrict.

Orders restricting counsel's communication in a class action are warranted only when the communication at issue "is abusive in that it threatens the proper function of the litigation." *Longcrier v. HL-A Co.*, 595 F. Supp. 2d 1218, 1226-27 (S.D. Ala. 2008); *see also* Memorandum Opinion and Order Regarding BCBS-AL's Contacts with Putative Class Members, ECF No. 2231. Mr. Owen's presentation was not "abusive" and did not "threaten" the function of this litigation. To the contrary, his presentation was in service to a critical phase of this class action, when class members must decide whether to exercise their constitutionally protected rights to join the proposed settlement or opt out. At this stage, the Court must ensure that each class member not only receives notice of the proposed settlement, but "an opportunity to remove himself from the class[.]" *Philips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). The free flow of information is necessary to satisfy this due process requirement. Class members should be allowed to consult outside sources so they can make fully informed decisions about exercising their right to opt out. Unaffiliated attorneys can be important sources at this juncture.

Mr. Owen's presentation was in furtherance of class members' right to an informed decision. During his talk, Mr. Owen gave a fair and measured assessment of the proposed settlement agreement. He drew on his professional experience and shared his personal opinion without offering his audience any guarantees. The definitive statements he made included vital

information that class members must receive when considering a settlement, such as the amount of monetary relief, the nature of the injunctive relief, the deadline to opt-out, and the procedure to opt-out. DQ Motion, Ex. 1 (ECF No. 3245-1) at 12-16, 27-28. Mr. Owen also answered repeated questions about whether class members had to *opt-in* to the settlement, demonstrating the importance of outside information in ensuring class members are not inadvertently caught up in settlements. *See* DQ Motion, Ex. 1 (ECF No. 3245-1) at 33 ("Would a physician group or hospital need to have joined the class to be covered by the settlement?"), 35 ("[W]hat happens if you don't opt-in or out?").

Class Counsel take issue with the presentation because, in their view, its "clear message" was that "the settlement is a terrible deal, and Providers should opt out." DQ Motion (ECF No. 3245) at 1. But Mr. Owen is entitled to hold and express his opinion that the settlement is a bad deal. Both "parties (and non-parties) are free to encourage class members to opt out of or vote against a class action settlement, provided they do so in a fair manner that avoids material misrepresentations or omissions*." Retiree Support Grp. of Contra Costa Cty. v. Contra Costa Cty.*, 2016 WL 4080294, at *6 (N.D. Cal. July 29, 2016). A court cannot restrain a lawyer who shares his or her subjective opinion with class members that a proposed settlement is insufficient. *See In re Centurylink Sales Pracs. & Secs. Litig.*, 2020 WL 3513547, at *9 (D. Minn. June 29, 2020) ("Keller's opinion that the class settlement is a 'bad deal' … is not objectively false – it is Keller's subjective opinion, which it is entitled to provide to its clients.")

Granting Class Counsel's motion would stifle dissenting views and remove an important perspective from the discourse at a critical moment of this litigation. Worse yet, Class Counsel are not satisfied to silence dissenting opinions. They also ask this Court to order Mr. Owen to parrot Class Counsel's talking points, artificially bolstering their message that "[i]t is not" easy to "opt[

] out and negotiat[e] a better settlement." DQ Motion (ECF 3245) at 10. That is one viewpoint, but not one Mr. Owen should be forced to adopt or say.

### B.    Mr. Owen's Presentation Was Not False or Misleading.

Class Counsel miscast Mr. Owen's presentation as a trick to convince class members to opt out of the settlement with "numerous untruthful or misleading statements." DQ Motion (ECF No. 3245) at 6. In truth, the entirety of the presentation demonstrates that nothing Mr. Owen said was false or misleading.

### 1.    The Presentation Was for Informational Purposes Only.

As a threshold matter, Mr. Owen did not give his presentation to drum up business, and he had no motivation to mislead his audience. Owen Decl. ℙ 33. Polsinelli has not been, and has never intended to be, engaged by any of the providers who attended the meeting. Murer Decl. ℙ 26. The presentation was a favor for Polsinelli's longtime client, Zotec Partners, and nothing more. Owen Decl. ℙ 34. Zotec provides consulting services to health care providers, and Zotec asked Mr. Owen to share his opinion on the provider settlement with its clients for informational purposes, and he did just that. *Id*. ℙ 32. This is abundantly clear from the outset of the presentation when attendees were informed: (1) that the information provided "is not intended as and does not constitute legal advice," (2) was for Zotec's "own clients' informational purposes only," and (3) that they should "consult [their] own legal counsel for the contents' applicability to [their] own organizations." DQ Motion, Ex. 1 (ECF No. 3245-1) at 2. Moreover, Mr. Owen did not know that the presentation would be recorded and posted on the internet until it was announced to the participants. Owen Decl. ℙ 35.

It was done once as a courtesy to a client. Owen Decl. ℙ 33. Neither Mr. Owen nor any other Polsinelli lawyer will make any further public presentations about the BCBS settlement to non-clients. Murer Decl. ℙ 27; Owen Decl. ℙ 36.

### 2. Mr. Owen Ensured the Audience Knew He Was Sharing His Personal Opinion of the Proposed Class Settlement.

Mr. Owen made clear throughout his presentation that his opinions regarding the settlement agreement and class action were just that—opinions. Before Mr. Owen spoke, attendees were warned that (1) the "accuracy, completeness, adequacy or currency" of the presentation content was "not warranted or guaranteed," (2) "use of th[e] information or material shared" was "at [their] own risk," and (3) they should "consult [their] own legal counsel for the contents' applicability to [their] own organizations." DQ Motion, Ex. 1 (ECF No. 3245-1) at 2-3. Mr. Owen reminded them of this repeatedly, qualifying his statements about the settlement and offering no guarantees. For example:

- So these kinds of injunctive relief is just the most mere -- *in our opinion*, the most mere window dressing and doesn't even come close to what this lawsuit was supposed to do, which was allow physicians and hospitals to opt-out of the BlueCard Program or at least negotiate higher rates. DQ Motion, Ex. 1 (ECF No. 3245-1) at 13.

- I will tell you, having been at the hearing on preliminary approval, that the judge, *in my opinion*, the judge expects number two to happen. DQ Motion, Ex. 1 (ECF No. 3245-1) at 24.

- We can't force The Blues to talk to us. Maybe they won't want to. But we can sure send them a letter and say we don't like this settlement. We're considering opting out. Do you want to talk? *My prediction would be* that they would. DQ Motion, Ex. 1 (ECF No. 3245-1) at 25.

- Let me tell you a little bit more about them. And I want to emphasize that although I said lots of bad things about this settlement, and I mean them all from the bottom of my heart, none of that is directed in animus to the people, to the class action lead counsel. Their names are Joe Whatley and Edith Kallas. They're the ones that did the Love case that settled back in 2008. And they are truly, *in my view*, the most preeminent healthcare class action attorneys in this country. They're capable of doing things that others aren't. And *I really admire them*. DQ Motion, Ex. 1 (ECF No. 3245-1) at 30-31.

- We don't know what the blow provision level is. What's interesting is a lot of times *in my personal experience*, even if the blow provision is exceeded, the defendants still won't blow it up. They still would rather have it, even if they have the option to blow it up. DQ Motion, Ex. 1 (ECF No. 3245-1) at 44.

- *My belief is* that if the group wasn't getting -- isn't bound by the Love settlement, which means it wasn't getting money from Blue Cross before July of '08 or it opted out, then you're good to just go under the group. Okay. However, *I think* a lot of groups are going to be barred, but they're going to have individual physicians in them that aren't barred. So then you've got to go by the individual physician and each individual physician has to put their own wet signature on it. DQ Motion, Ex. 1 (ECF No. 3245-1) at 47-48.

### 3.    Mr. Owen's Opinions Were Well Founded and Fair.

**Statement Regarding Mr. Owen's Involvement in and Knowledge of Settlement Negotiations.** Class Counsel suggest that Mr. Owen overstated his knowledge of the settlement because he "has not attended a mediation session since December 2019," and so cannot provide "an insider's perspective on the settlement he is about to trash." DQ Motion (ECF No. 3245) at 6. First, Mr. Owen did in fact attend a mediation, and that gave him another basis to know what "the goals of the case" were. *See* DQ Motion (ECF No. 3245) at 2. Another way he knew the "goals of the case" was by reading the complaints, which Class Counsel filed on the public record. Owen Decl. ⁋⁋ 4-5. Mr. Owen formed his opinion of the goals of the case from reading publicly filed documents and monitoring public hearings. *Id.* His participation in the 2019 mediation confirmed, but did not change, his opinions. *Id.* ⁋⁋ 20-22. There was nothing untruthful about what Mr. Owen said. Essentially, Class Counsel does not like that Mr. Owen thinks the settlement is a bad deal, an opinion Mr. Owen is entitled to have and share. There is nothing to correct about this statement.

**Statements Regarding the Scope, Complexity, and Cost of the Class Action Relative to the Resulting Settlement.** Class Counsel argues that Mr. Owen had "no idea what he [was] talking about" when he said Class Counsel "gave up and made the best deal they could" once it was "clear that [certification of a nationwide class] wasn't going to happen." DQ Motion (ECF No. 3245) at 6-7 (quoting DQ Motion, Ex. 1 (ECF No. 3245-1) at 19). They do not challenge, however, Mr. Owen's factual assertion that the case "was supposed to be a nationwide class action covering all 50 states" and, ultimately, was not. DQ Motion (ECF No. 3245) at 7 (quoting DQ Motion, Ex. 1 (ECF No. 3245-1) at 19). Their admission that "[c]ertification of a nationwide class was not on the table when the case

settled in 2024" only bolsters Mr. Owen's opinion that the case settled after 12 years at least in part because it had not achieved its goal of a nationwide class. DQ Motion (ECF No. 3245) at 7. Class Counsel's assertion that they were ready and willing to pursue this case in "as many jurisdictions as possible," is belied by the fact that they chose not to do so. DQ Motion (ECF No. 3245) at 7. Mr. Owen is free to share his opinion regarding why that happened.[7]

**Statement Regarding the Per Se Illegality Ruling.** Class Counsel do take issue with Mr. Owen's statement that this Court held "[The Blues'] agree[ment] not to compete against each other . . . to be *per se* illegal," and that "damages that flow from" (i.e., are caused by) that conduct "are basically automatic." DQ Motion (ECF No. 3245) at 7 (quoting DQ Motion (ECF No. 3245-1) at 20). Class Counsel, however, ignore the facts of their own case. Class Counsel concede that "[t]his Court's rulings on the standard of review established that the Blues' conduct through 2021 would be evaluated under the *per se* standard." DQ Motion (ECF No. 3245) at 8. Thus, any damages proven at trial to be caused by market allocation through 2021 would be "basically automatic," because the defendants would not have access to most of the defenses that otherwise would be available to them.

That Defendants could raise a single entity defense does not undermine Mr. Owen's opinion. Defendants' single entity defense would contradict their overarching contention that they did not work together in the alleged conspiracy regarding the Blue Card Program. It is not hard to predict that a jury would be unlikely to tolerate Defendants speaking out of both sides of their mouths.

---

[7] Notably, Mr. Owen did not disparage Class Counsel for their decision to forgo a nationwide class action. He told his audience that they were "the most preeminent class action attorneys in this country" and "capable of doing things that others aren't." DQ Motion, Ex. 1 (ECF No. 3245-1) at 31. But even people you "really admire" can get in over their head, which is precisely what Mr. Owen said in his presentation. *Id.* at 30-31.

**Statements Regarding the Court's Expectation that Providers Will Opt Out.** Finally, Class Counsel assert Mr. Owen misled his audience by giving his opinion that "the judge expects [a group of providers to tell the Blues they intend to opt out]" because "that's what happened in a previous settlement in this case." DQ Motion (ECF No. 3245) at 9; DQ Motion, Ex. 1 (3245-1) at 24.

First, Mr. Owen repeatedly told the audience that his assessment of the Court's view was an opinion that was naturally speculative. *See* DQ Motion (ECF No. 3245) at 9 ("[T]he judge, **in my opinion**, . . . expects [a group of providers to tell the Blues they intend to out]") ("**I think** if a number, a lot of people opt-out, The Blues are going to come back to the negotiating table, . . . **I think** [that's] what the judge expects"). If there were any room for confusion concerning the relationship between opt-outs and settlement negotiations, Mr. Owen made sure his audience understood the possibility nothing would change. Immediately after the statements Class Counsel criticize, Mr. Owen said: "We can't force The Blues to talk to us. Maybe they won't want to. But we can sure send them a letter and say we don't like this settlement," DQ Motion, Ex. 1 (ECF No. 3245-1) at 25, and "[I]f a number, a lot of people opt-out . . . [The Blues are] going to come back to the negotiating table . . . That's one **possibility**," *id.* at 37. Speculation about what may or may not happen in litigation occurs thousands of times a day in this country. Lawyers are entitled to give their opinion, and there is nothing wrong with that so long as it is identified as an opinion, which Mr. Owen did.

Second, Mr. Owen's speculative opinion was well-founded. He listened to the preliminary approval hearing on November 14, 2024, when the Court stated:

> "But I do note that – particularly our friends on the Blues side know this – **when it came to the subscriber settlement**, there was some work that took place after the Initial Preliminary Approval Hearing, if I recall, and there was a – **there was changes to the settlement**.

> And it strengthened the settlement and we still were on track to get things done. So I am not saying that is what's going to happen here, but I'm just saying that we can accommodate whatever fork in the road you-all take – end up taking in this case."

Hearing Tr., Mot. for Prelim. Approval at 6-7 (Nov. 14, 2024). A logical interpretation of this statement is that the Court expected, or at least recognized the possibility, that there would be "changes to the settlement" in the provider case, just as there had been in the subscriber case. Mr. Owen believed, and still believes, that many healthcare systems will likely find the proposed unsettlement inadequate and consider opting out and attempting to reopen negotiations with the Blues. Owen Decl. ⁋ 31. He reasonably interpreted the Court's statement to mean it might have the same thing in mind when it mentioned that there were "changes to the [subscriber's] settlement" following preliminary approval. Hearing Tr., Mot. for Prelim. Approval at 6-7 (Nov. 14, 2024).

Class Counsel also take issue with how Mr. Owen described the change in the subscriber's settlement following preliminary approval. They object to his use of the term "new negotiations," yet concede the material points of his statements. *See* DQ Motion (ECF No. 3245) at 9 (quoting DQ Motion, Ex. 1 (ECF No. 3245-1) at 24). Class Counsel recognize there was a delay between the preliminary and final approval and that, in the interim, the scope of the release for subscribers who opted out was "ultimately amended" by the Court. *Id.* Whether or not someone characterizes a change in the scope of release for Subscribers as "renegotiated" or "amended" is a matter of semantics, at best. The point remains the same: large subscribers opted out and, sometime thereafter, the terms of the agreement changed.

Taken altogether, Class Counsel criticisms are, themselves, matters of opinion. They do not demonstrate that Mr. Owen said anything untrue, let alone something so "abusive" it "threatens

the proper functioning of the litigation" and thus warrants restriction. *Longcrier*, 595 F. Supp. 2d at 1226.

C.    **Compelling Mr. Owen to Issue a Notice of Correction Would Infringe on His First Amendment Rights.**

Class Counsel ask this Court to issue an order compelling Mr. Owen to retract his prior statements and endorse opinions with which he disagrees. This is a remedy with serious implications. The Court's power to restrict speech in a class action must be "used sparingly because of the substantial First Amendment considerations triggered by any such restraints." *Id.* at 1226. Restrictions should be "carefully drawn" to "limit[] speech as little as possible, consistent with the rights of the parties under the circumstances." *Gulf Oil Co. v. Bernard*, 452 U.S 89, 102 (1981). Even if Mr. Owen's statements were misleading—and they were not—Class Counsel's request for a corrective notice flies in the face of the Supreme Court's call to caution. *See id.* at 104.

Under the First Amendment, Mr. Owen enjoys not only "the right to speak freely" but "the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U.S. 705, 714 (1977). Government action "that requires the utterance of a particular message" contravenes this right and is subject to "the most exacting scrutiny." *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 641-42 (1994). Mr. Owen's opinions were well-founded and fair. Compelling him to say the opposite of what he believes would be unconstitutional.

## <u>CONCLUSION</u>

For these reasons, Polsinelli PC respectfully requests the Court deny Class Counsel's Motion.

Dated: February 7, 2025

Respectfully submitted,

*/s/ Craig A. Alexander*

**RUMBERGER, KIRK & CALDWELL, P.A.**
Craig A. Alexander
2001 Park Place North
Suite 1300
Birmingham, AL 35203
(205) 572-4920
calexander@rumberger.com

*and*

**WILLIAMS & CONNOLLY LLP**
Robert M. Cary
William T. Burke
680 Maine Ave SW
Washington, DC 20024
(202) 434-5000
rcary@wc.com
wburke@wc.com

*Counsel to Respondent Polsinelli PC*