FILED

2025 Feb-14  PM 09:46
U.S. DISTRICT COURT
N.D. OF ALABAMA

**Ed IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **IN RE:  BLUE CROSS BLUE SHIELD ANTITRUST LITIGATION (MDL No. 2406)** | **Master File No. 2:13-CV-20000-RDP** <br><br> **This document relates to Provider-track cases.** |

**THE BLUES' SUBMISSION TO JOIN PROVIDER PLAINTIFFS'**
**MOTION TO DISQUALIFY POLSINELLI, P.C. AND**
**RESPONDING TO THE OPPOSITION OF POLSINELLI, P.C.**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT ................................................................................1

RELEVANT FACTS .................................................................................................3

      I.     J.T. Malatesta and Other Current Polsinelli Attorneys Represent
             BCBS-AL in the MDL (2013 – 2025) ........................................................3

      II.    Dan Owen Represents Providers in the MDL (2016 – 2019). ....................5

      III.   Dan Owen Solicits Opt-Outs and Polsinelli Begins Advising a Potential
             Provider Opt-Out (December 2024) ...........................................................6

      IV.   BCBS-AL Advises Polsinelli of its Conflict (January 2025) .....................7

      V.    Polsinelli Internally Recognizes Its Conflict and Belatedly Attempts To
             Implement Corrective Action (January – February 2025) ..........................8

LEGAL STANDARD .................................................................................................9

ARGUMENT ...........................................................................................................10

      I.     There Is No Standing Issue with the Motion ............................................10

      II.    Polsinelli Attorneys Have an Ethical Conflict of Interest.........................10

             A.    Polsinelli Attorneys Are Conflicted Under Alabama Law ...........11

             B.    Polsinelli Attorneys Are Governed By Alabama Rules of
                     Professional Conduct ...................................................................14

      III.   The Appropriate Remedy for Polsinelli's Flagrant Misconduct Is
             Disqualification .........................................................................................16

CONCLUSION ........................................................................................................19

# TABLE OF AUTHORITIES

**Cases**

*Clark v. Alfa Ins. Co.*,
  No. CIV.A. 00-AR-3296-S, 2001 WL 34394281 (N.D. Ala. Feb. 7, 2001)...............10

*Covey v. Colonial Pipeline Co.*,
  No. 2:18-CV-01121-RDP, 2021 WL 724600 (N.D. Ala. Feb. 24, 2021)
  ....................................................................................................................9, 10, 11, 16

*Herrmann v. GutterGuard, Inc.*,
  199 F. App'x 745 (11th Cir. 2006) .....................................................................12, 18

*In re Gopman*,
  531 F.2d 262 (5th Cir. 1976) ....................................................................................16

*Matter of Jindal for Pro Hac Vice Admission to Virgin Islands Bar*,
  69 V.I. 942, 947-48 (2018) .......................................................................................15

*McGriff v. Christie*,
  477 F. App'x 673 (11th Cir. 2012) .....................................................................10, 18

*Plotts v. Chester Cycles LLC*,
  No. CV-14-00428-PHX-GMS, 2016 WL 614023 (D. Ariz. Feb. 16, 2016) ..............13

*Roberts v. Hutchins*,
  572 So. 2d 1231 (Ala. 1990)......................................................................................11

*Southern Visions, LLP v. Red Diamond, Inc.*,
  370 F. Supp. 3d 1314 (N.D. Ala. 2019)........................................................10, 16, 18

*Shaw v. Broad & Cassel*,
  No. 11-23689-CIV, 2012 WL 315050 (S.D. Fla. Feb. 1, 2012) ................................10

*U.S. Cosms. Corp. v. Greenberg Traurig, LLP*,
  No. 04-3697 (DMC), 2005 WL 8175516 (D.N.J. Apr. 4, 2005) ................................16

*United States v. Coleman*,
  997 F.2d 1101 (5th Cir. 1993) ..................................................................................10

*United States v. Vuteff*,
  No. 22-20306-CR, 2023 WL 4202644 (S.D. Fla. June 27, 2023) ..............................18

*Zerger & Mauer LLP v. City of Greenwood*,
  751 F.3d 928 (8th Cir. 2014) ....................................................................................13

**Statutes & Rules**

Ala. R. Pro. Conduct 1.7(a) ......................................................................................12

Ala. R. Pro. Conduct 1.9 ....................................................................................11, 13

Ala. R. Pro. Conduct 1.10(a) ..............................................................................11, 12

D.C. R. Pro. Conduct 1.10(b)(3) ..............................................................................16

Del. R. Pro. Conduct 1.10(c) ....................................................................................16

Idaho R. Pro. Conduct 1.10(a)(2) ..............................................................................16

Ill. Sup. Ct. R. 1.10(e) ..............................................................................................16

Iowa R. Pro. Conduct 32:1.10(a)(2) ..........................................................................16

Mich. R. Pro. Conduct 1.10(b) ..................................................................................16

N.C. R. Pro. Conduct 1.10(c) ....................................................................................16

N.D. Ala. L.R. 83.1(f) ................................................................................................10

Pa. R. Pro. Conduct 1.10(b) ......................................................................................16

R.I. R. Pro. Conduct 1.10(c) ......................................................................................16

Model R. of Pro. Conduct 8.5 ....................................................................................15

Tex. R. Pro. Conduct 1.10(a) ....................................................................................16

Utah R. Pro. Conduct 1.10(c) ....................................................................................16

Wash. R. Prof. Cond. 1.0A(K), 1.10(e) ....................................................................16

Wyo. R. Pro. Conduct 1.10(a) ..................................................................................16

Blue Cross Blue Shield of Alabama ("BCBS-AL") respectfully joins Provider Plaintiffs' January 24, 2025 Motion to Disqualify Polsinelli, P.C. (the "Motion"). Further, BCBS-AL, joined by all Defendant Blues, respectfully submits this response to the February 7, 2025 Opposition of Polsinelli, P.C. ("Polsinelli" or the "Firm") to the Motion (the "Opposition").

## PRELIMINARY STATEMENT

Although Polsinelli defends itself by invoking the "bedrock principles of American jurisprudence", the Firm's actions tell a different story. Having learned from BCBS-AL in January 2025 that two of its lawyers were still *defense* counsel of record in the MDL, Polsinelli reacted by: (i) erecting an ethical wall to belatedly screen those lawyers; (ii) directing that yet another Polsinelli lawyer who was *plaintiffs'* counsel for providers in the MDL cease making public statements about the Provider Settlement; (iii) removing from the internet any Polsinelli public statements to potential opt-outs; and (iv) withdrawing several lawyers from the MDL. Those actions—which were too little, too late—did not remedy the conflict that arose when Polsinelli chose to house *both* plaintiff and defense counsel in the same case and *at the very same time that it was also soliciting opt-outs* from the Provider Settlement. The Opposition also reveals that Polsinelli's conduct was for the express purpose of thwarting the Provider Settlement and coercing the Blues back to the negotiating table.

Worse still, rather than take responsibility for its behavior, Polsinelli blames everyone else. Polsinelli blames Provider Co-Lead Counsel for "depart[ing] from the original goals of the case" in negotiating the terms of the Provider Settlement. (Polsinelli Br., Dkt. 3268, at 4.) It blames a consulting firm called Zotec Partners

("Zotec") for airing the problematic statements of the conflicted Polsinelli lawyers. (*Id.* at 6.) Polsinelli even blames the Court itself for putting the idea of thwarting the Provider Settlement in Polsinelli's mind. (*Id.* at 22.) Such egregious conduct warrants disqualification.

*First*, as settlement proponents, Providers have standing to bring this Motion. But that question is moot, because BCBS-AL has now joined Providers' Motion following the highly problematic admissions that Polsinelli made in its Opposition. (*See infra* Section I.)

*Second*, by its own account, Polsinelli lawyers were deeply involved on *both* sides of the Provider MDL—an issue the Firm ignored as its partners went out to solicit provider opt-outs. Polsinelli partner J.T. Malatesta served as BCBS-AL's lead discovery counsel on structured data issues during the decade he represented BCBS-AL in the MDL. At the same time, Polsinelli partner Dan Owen represented non-party providers in the MDL for several years and participated in confidential working groups and settlement mediation sessions alongside Provider Co-Lead Counsel. This conduct violates another "bedrock principle"—namely that a lawyer cannot represent a client who is adverse to another current or former client *in the very same case*. These representations, which create an ethical conflict of interest, are legally imputed to the entire Polsinelli firm. Such conduct violates the Alabama Rules of Professional Responsibility—which govern the Polsinelli lawyers' conduct as it relates to the MDL. Indeed, the Firm's steps in the last several weeks make clear that even Polsinelli (correctly) views its behavior as problematic. Importantly, Polsinelli *cannot* cure this problem by committing not to name BCBS-AL in any lawsuit (yet another admission of

the conflict); indeed, Polsinelli is already acting in a manner materially adverse to BCBS-AL's interest by soliciting opt-outs from a settlement that BCBS-AL has entered and supports. Moreover, the claims Polsinelli seeks to assert in any opt-out case will necessarily materially and adversely affect BCBS-AL's interests, even if BCBS-AL is not named as a defendant. (*See infra* Section II.)

*Third*, Polsinelli's misconduct is egregious. Polsinelli was encouraging opt-outs for the express purpose of thwarting the Provider Settlement and forcing the Blues to "come back to the negotiating table". Indeed, Polsinelli went so far as to tell potential opt-outs that *this Court "expects" that to happen*. The only remedy for this egregious conflict is for the Polsinelli firm to be disqualified in full, and importantly, because no opt-out complaint has yet been filed, Polsinelli's undisclosed client will not be prejudiced by this result. (*See infra* Section III.) The Motion should be granted.

## RELEVANT FACTS

Polsinelli's own declarations contain—and admit—many of the relevant facts. Where the Firm has overlooked facts, they are supplemented here and supported by the accompanying Declaration of Michael J. Velezis, Vice President and General Counsel of BCBS-AL, who raised this critical conflict with Polsinelli.[1]

I.      **J.T. Malatesta and Other Current Polsinelli Attorneys Represent BCBS-AL in the MDL (2013 – 2025).**

For more than a decade, current Polsinelli attorneys J.T. Malatesta, Sarah Glover, Starr Drum and Todd Panciera (then lawyers at the Birmingham office of the

---

[1] A visual timeline of events leading to the Motion is attached to this submission as Appendix A.

Maynard firm[2]) represented BCBS-AL in the MDL.  Of the group, Mr. Malatesta was

most intimately involved, first appearing for BCBS-AL in 2013.  (*See* J.T. Malatesta

Motion to Withdraw, Dkt. 3266.)  Mr. Malatesta was a lead discovery lawyer for

BCBS-AL and oversaw (among other things) discovery involving important structured

data.  He participated in weekly discovery calls and strategy calls for the Blues' Joint

Defense Group ("JDG"), regularly interacted with BCBS-AL's General Counsel,

participated in countless meet-and-confers with Subscribers and Providers, defended

multiple challenges to BCBS-AL privilege designations, and prepared ten BCBS-AL

deponents who sat for depositions.  (*See* Decl. of M. Velezis at ¶ 13.)  Mr. Malatesta

continued to bill time to BCBS-AL in connection with the MDL in 2019, 2020, and 2021,

totaling nearly 200 time entries in those three years.  (*Id.* at ¶ 10.)  During

Mr. Malatesta's representation of BCBS-AL in the MDL, Mr. Malatesta billed over 4,500

hours to BCBS-AL.  (*Id.* at ¶ 5.)

       Ms. Glover, Ms. Drum and Mr. Panciera were also significantly involved

in representing BCBS-AL in the MDL.  Ms. Glover first appeared for BCBS-AL in 2015

(*see* S. Glover Motion to Withdraw, Dkt. 3267), and she closely supported Mr. Malatesta

in his discovery efforts and similarly participated in JDG discovery and strategy

discussions.  (*See* Decl. of M. Velezis at ¶ 14.)  Ms. Glover billed more than 1,800 hours

to BCBS-AL in connection with the MDL, including time billed in 2019, 2021, and 2023.

(*Id.* at ¶¶ 6, 11.)  Ms. Drum and Mr. Panciera assisted with drafting BCBS-AL's

discovery requests and responses, reviewing BCBS-AL's documents prior to production,

---

[2] At the start of the representation the Maynard firm was Maynard Cooper & Gale PC.  In 2023, the firm merged with Nexsen Pruet and is now Maynard Nexsen PC.  For simplicity, this submission refers to the firm as simply "Maynard," unless directly quoting a document using the firm's name.

drafting court filings, and conducting legal research.  (*Id.* at ¶ 14.)  Ms. Drum billed

approximately 1,200 hours and Mr. Panciera billed over 6,000 hours to BCBS-AL in

connection with the MDL.  (*Id.* at ¶¶ 7–8.)

In January 2024, all four attorneys moved from Maynard to Polsinelli.

(*See* Decl. of M. Murer, Dkt. 3268-01, at ¶ 12.)  Mr. Malatesta and Ms. Glover remained

counsel of record for BCBS-AL in the MDL until February 7, 2025, when both finally

filed motions to withdraw.  (*See* Motions to Withdraw, Dkts. 3266, 3267.)

## II.    Dan Owen Represents Providers in the MDL (2016 – 2019).

Starting in 2016, Polsinelli partner Dan Owen represented six non-party

providers in the MDL, and he appeared before the Court in connection with subpoenas

issued by the Blues.  (*See* Decl. of D. Owen, Dkt. 3268-02, at ¶¶ 10–18.)  Mr. Owen also

engaged in discussions with Provider Co-Lead Counsel regarding litigation strategy,

executed a mutual confidentiality agreement and a mediation confidentiality agreement,

and participated in mediation sessions in connection with the Provider Settlement.  (*Id.*

at ¶¶ 5–9, 19–21.)  From these engagements, Mr. Owen obtained confidential and

mediation-privileged information.  (*Id.* at ¶ 23.)  Indeed, Mr. Owen stated publicly that

because of his experience in the MDL and particularly his "involve[ment] in settlement

negotiations", he "know[s] exactly what the goals of the case are".  (*See* Tr. of Webinar,

Dkt. 3245-01, at 19.)  Mr. Owen also represented that he closely followed the MDL; he

most recently attended the Court's hearings on remand of the Provider-track cases and

the Provider Settlement Preliminary Approval Hearing.  (*See* Decl. of D. Owen,

Dkt. 3268-02, at ¶¶ 4–5, 25, 30.)

III.     **Dan Owen Solicits Opt-Outs and Polsinelli Begins Advising a
Potential Provider Opt-Out (December 2024).**

In December 2024, Mr. Owen hosted a webinar with Zotec, one of
Polsinelli's clients, about the Provider Settlement.  (*Id.* at ¶¶ 32–33.)  The webinar was
recorded and posted online.  (*Id.* at ¶ 35.)  During the webinar, Mr. Owen called the
Provider Settlement "a bad" and "lousy deal"; stated that he was "urging [Class
Members] to opt-out" and that the Court "expects" that "a lot" of providers will opt-out,
which will force the Blues back to the "negotiating table"; and told Class Members that
"damages . . . are basically automatic" because of the Court's *per se* standard of review
decision.  (*See* Tr. of Webinar, Dkt. 3245-01, at 14, 20–21, 24–25, 31–33, 38–39, 51–52.)
Mr. Owen did not once mention the Court's 2022 decision, holding that the Blues'
conduct after April 2021 is governed by the rule of reason, or any of the other viable
defenses to all claims that were expressly discussed at the Preliminary Approval Hearing.
(*See* Tr. of Prelim. App. Hr'g, Dkt. 3216, at 44:11–14; 77:22–80:4.)

In December 2024—the same month the Provider Settlement received
preliminary approval—Polsinelli also began communicating with healthcare providers
about "whether to accept the terms of the settlement or opt out and pursue separate
remedies".  (Polsinelli Br., Dkt. 3268, at 5 (citing Decl. of M. Murer, Dkt. 3268-01, at
¶ 20).)  As of the filing of its Opposition, Polsinelli asserts that it is currently advising a
single client "with respect to the opt out issue".  (*Id.*)  Polsinelli claims that this client—
whom it declines to identify—"does not do business with BCBS Alabama" and "would
not assert a claim against BCBS Alabama" should the client choose to opt out of the
Provider Settlement.  (*Id.* at 14.)

IV.        **BCBS-AL Advises Polsinelli of its Conflict (January 2025).**

On January 3, 2025, BCBS-AL reached out to Mr. Malatesta by email,
noting that BCBS-AL was aware of Mr. Owen's webinar and asking whether
Mr. Malatesta has had any role "in the effort being undertaken by the Polsinelli firm to
attract opt-out provider clients". (*See* Decl. of M. Velezis, Ex. A at 2.) BCBS-AL also
asked whether Mr. Malatesta had withdrawn from his representation of BCBS-AL in the
MDL and "whether the Polsinelli firm has put into place any protections in light of
[Mr. Malatesta's] ongoing knowledge of the MDL Defendants' confidential
information". (*Id.*)

On January 9, 2025, having not heard back from Mr. Malatesta, BCBS-AL
sent a second communication to Polsinelli—this time, to Mr. Malatesta as well as to
Polsinelli's Chairman and Chief Executive Officer. BCBS-AL again advised that
"Polsinelli is actively soliciting Blue Cross Blue Shield Antitrust MDL provider
settlement class member opt out clients" even though Mr. Malatesta, "along with other
ex-Maynard attorneys and staff, actively represented BCBS-AL for around 10 years in
the MDL prior to joining Polsinelli". (Decl. of M. Velezis, Ex. B at 2.) Citing the
Alabama Rules of Professional Conduct, BCBS-AL stated that it "does not waive" the
apparent conflict and "does not consent to Polsinelli or any of its attorneys representing
Blue Cross Blue Shield Antitrust MDL provider settlement class members". (*Id.*)
BCBS-AL demanded that Polsinelli "immediately withdraw from any existing
representation and cease soliciting or accepting any future related representations". (*Id.*)

On January 13, 2025, each of Polsinelli's Chief Legal Officer and
Mr. Malatesta separately responded to BCBS-AL. (*See* Decl. of M. Velezis, Ex. C at 2–
3; Decl. of M. Velezis, Ex. D at 2.) In those communications, Polsinelli represented that

the former Maynard attorneys had not disclosed any information regarding their representation of BCBS-AL in the MDL to other Polsinelli attorneys (*id.*) and asserted that Polsinelli "is not currently advising or representing any clients in the MDL Litigation adverse to the interests of BCBS-AL" ( Decl. of M. Velezis, Ex. C at 2).  However, neither response acknowledged BCBS-AL's request that Polsinelli cease its efforts to solicit opt-outs.  Nor did either communication answer whether any procedures had been put in place to safeguard BCBS-AL's (and other Blues') confidential information.  (*See* Decl. of M. Velezis, Ex. C at 2–3; Decl. of M. Velezis, Ex. D at 2.)

On January 15, 2025, BCBS-AL sent a third letter to Polsinelli, stating that "Polsinelli did not provide all of the ethical assurances requested in [BCBS-AL's] January 9, 2025 correspondence" and requesting that Polsinelli "quietly redress this matter" by "withdraw[ing] from any existing representation".  (Decl. of M. Velezis, Ex. E at 2–3.)  BCBS-AL also asked point-blank, "[h]ow could such conduct follow any proper Polsinelli conflicts check" and again requested that Polsinelli confirm that it would "cease and desist from soliciting or accepting any MDL Litigation-related representation, no matter the Blue Plan involved".  (*Id.* at 3.)

Polsinelli responded on January 20, 2025, insisting that it had done nothing improper and refusing to cease and desist its representation of provider opt-outs.  (*See* Decl. of M. Velezis, Ex. F at 3–4.)  Providers' motion to disqualify Polsinelli followed on January 24, 2025.  (*See* Providers' Br., Dkt. 3245.)

## V.    Polsinelli Internally Recognizes Its Conflict and Belatedly Attempts To Implement Corrective Action (January – February 2025).

According to the declaration submitted by Polsinelli partner Matthew Murer, Polsinelli took no steps to "erect[] an ethics screen" between the conflicted

attorneys and the remainder of the Firm until *after* BCBS-AL notified Polsinelli of the conflict in January 2025.  (Decl. of M. Murer, Dkt. 3268-01, at ¶¶ 17–18.)  At that time, Mr. Murer claims that the Polsinelli lawyers who represented BCBS-AL in the MDL were instructed "not to have any involvement in any matters relating to this MDL proceeding and not to have any discussions with any Polsinelli attorneys or staff members regarding this litigation or any information they may have learned while representing BCBS Alabama".  (*Id.* at ¶ 18.)  Polsinelli also directed Zotec to remove the recording of Mr. Owen's webinar from its website (*see* Polsinelli Br., Dkt. 3268, at 6 n.2), and, on February 7, 2025 as part of its Opposition, directed Mr. Malatesta and Ms. Glover file motions to withdraw as counsel of record for BCBS-AL in the MDL (*see id.* at 5 n.1; *see also* Motions to Withdraw, Dkts. 3266, 3267).

## **LEGAL STANDARD**

Although parties are presumptively entitled to the counsel of their choice, "that right may be overridden" for "compelling reasons".  *Covey v. Colonial Pipeline Co.*, No. 2:18-CV-01121-RDP, 2021 WL 724600, at *2 (N.D. Ala. Feb. 24, 2021).  "One compelling reason to deny a client counsel of its choice is counsel's violation of an applicable rule of professional conduct".  *Id.*  In this Court, professional conduct is governed by this Court's local rules, the Alabama Rules of Professional Conduct (the "Alabama Rules"), to the extent not inconsistent with the local rules, and the American Bar Association Model Rules of Professional Conduct, to the extent not inconsistent with the local rules and the Alabama Rules.  *See id.*; *see also* N.D. Ala. L.R. 83.1(f).

"Upon finding a violation of an applicable ethical rule, a district court must then, 'considering binding and persuasive federal case law, decide whether or not

the ethical lapse warrants disqualification.'"  *Covey*, 2021 WL 724600, at *3 (quoting *Clark v. Alfa Ins. Co.*, No. CIV.A. 00-AR-3296-S, 2001 WL 34394281, at *3 (N.D. Ala. Feb. 7, 2001)).  "Eleventh Circuit case law imposes a straight-forward standard for evaluating motions to disqualify":  "disqualification is appropriate if the district court finds a violation of a specific rule of professional conduct, of which counsel had notice".  *Southern Visions, LLP v. Red Diamond, Inc.*, 370 F. Supp. 3d 1314, 1335 (N.D. Ala. 2019).

## ARGUMENT

### I.        There Is No Standing Issue with the Motion.

Polsinelli first argues that Providers lack standing to seek disqualification because only BCBS-AL can assert such an argument.  (Polsinelli Br., Dkt. 3268, at 15.) That is wrong:  "[a] party who is not a former client of opposing counsel nevertheless has standing to raise the issue of opposing counsel's conflict of interest if there is 'a violation of the rules which is sufficiently severe to call in question the fair and efficient administration of justice.'"  *McGriff v. Christie*, 477 F. App'x 673, 676–77 (11th Cir. 2012) (citation omitted).  That is plainly the case here.  Moreover, this Court has "the authority and duty to inquire *sua sponte* into whether counsel should not serve because of a conflict".  *United States v. Coleman*, 997 F.2d 1101, 1104 (5th Cir. 1993); *accord Shaw v. Broad & Cassel*, No. 11-23689-CIV, 2012 WL 315050, at *3 (S.D. Fla. Feb. 1, 2012). But in any event, BCBS-AL has joined the Motion, mooting any standing concern.

### II.       Polsinelli Attorneys Have an Ethical Conflict of Interest.

There is no question that Mr. Malatesta—who served as an integral and deeply involved member of BCBS-AL's legal team in the MDL for over a decade (*see* J.T. Malatesta Motion to Withdraw, Dkt. 3266; Decl. of M. Velezis at ¶ 10)—cannot now

or anytime in the future serve as counsel to provider opt-outs from the Provider

Settlement. *See* Ala. R. Pro. Conduct 1.9. Polsinelli does not argue otherwise. Nor is

there any question that, under Alabama ethical rules, Mr. Malatesta's conflicts are

imputed to the rest of his firm, and that such imputed conflicts cannot be cured by

establishing an ethical screen. *See* Ala. R. Pro. Conduct 1.10; *Roberts v. Hutchins*, 572

So. 2d 1231, 1234 n.3 (Ala. 1990). Again, Polsinelli does not argue otherwise.

Instead, Polsinelli argues that (i) its anticipated opt-out actions do not

present a conflict under the Alabama ethical rules, because they will not be "materially

adverse" to BCBS-AL (Polsinelli Br., Dkt. 3268, at 14); (ii) Mr. Owen and the other

Polsinelli attorneys soliciting and advising provider opt-outs are not even bound by

Alabama ethical rules (*id.* at 8–12); and (iii) under the ethical rules that do apply,

Polsinelli's belated efforts to screen conflicted attorneys are sufficient to resolve any

conflict (*id.* at 10). Polsinelli is wrong about each.

A.    **Polsinelli Attorneys Are Conflicted Under Alabama Law.**

At the time that Polsinelli attorneys began advising clients and potential

clients about whether to opt out of the Provider Settlement, they had an undeniable

conflict of interest under Alabama law. Under Rule 1.9 of the Alabama Rules, a lawyer

"who has formerly represented a client in a matter shall not thereafter . . . [r]epresent

another person in the same or a substantially related matter in which that person's

interests are materially adverse to the interests of the former client, unless the former

client consents after consultation". Ala. R. Pro. Conduct 1.9(a). And under Rule 1.10, an

attorney's conflicts under Rule 1.9 are imputed to all members of his or her firm. *See*

Ala. R. Pro. Conduct 1.10(a); *Covey*, 2021 WL 724600, at *8.

Here, members of the Polsinelli firm have been involved in the Provider-track MDL from every imaginable angle.  Mr. Malatesta and his colleagues at Maynard were core members of BCBS-AL's legal team in the MDL for years, with Mr. Malatesta serving an outsized, decades-long role leading BCBS-AL's discovery efforts and strategizing with the entire JDG.  (*See* Decl. of M. Velezis at ¶ 13.)  During that time, Mr. Owen represented healthcare providers in discovery proceedings before this Court and participated in confidential mediation sessions on behalf of Provider Plaintiffs related to the Provider Settlement with Provider Co-Lead Counsel.  (*See* Decl. of D. Owen, Dkt. 3268-2, at ¶¶ 10–21.)  In other words, for years, Mr. Malatesta and Mr. Owen were lawyers zealously representing clients on opposite sides of the MDL.  Now, Mr. Owen and his colleagues have devoted themselves to disparaging the very Settlement they helped to mediate, and are advising at least one client as to whether it should opt out. (*See* Decl. of M. Murer, Dkt. 3268-01, at ¶ 21.)  All the while, other members of the Firm remained MDL counsel of record for BCBS-AL.  (*See* Motions to Withdraw, Dkts. 3266, 3267.)  Sitting on both sides of the "v", as Polsinelli attorneys did here, is an inarguable violation of Rules 1.9 and 1.10.[3]  *See Herrmann v. GutterGuard, Inc.*, 199 F. App'x 745, 755–57 (11th Cir. 2006).

---

[3] Until last Friday, when Mr. Malatesta and Ms. Glover withdrew as counsel in the MDL, there was also a conflict under Rule 1.7, which prohibits a lawyer from representing a client "if the representation of that client will be directly adverse to another client, unless (1) [t]he lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and (2) [e]ach client consents after consultation".  Ala. R. Pro. Conduct 1.7(a).  As with Rule 1.9, conflicts under Rule 1.7 are imputed to all members of a firm.  Ala. R. Pro. Conduct 1.10(a).

Polsinelli insists that only Rule 1.9 applies because the alleged conflict concerns BCBS-AL as a "former client" only.  (Polsinelli Br., Dkt. 3268, at 13 n.4.)  This argument is made possible only by the Polsinelli attorneys' belated withdrawal from the MDL on February 7, 2025, in connection with Polsinelli's opposition to this Motion.  That is because a client is not considered a "former client" for purposes of the rules until an attorney formally withdraws from a representation once a conflict arises.  *See* Ala. R. Pro. Conduct 1.7 cmt.  That withdrawal did not happen here until *months after* Polsinelli attorneys began

Notwithstanding all of the above, Polsinelli insists there is "no conflict" under the Alabama Rules because "Polsinelli's only client is not 'materially adverse' to BCBS Alabama". (Polsinelli Br., Dkt. 3268, at 14.) Polsinelli bases this position on its representation that its client will not name BCBS-AL as a defendant if it sues. (*See* Decl. of M. Murer, Dkt. 3268-01, at ¶ 24.) Rule 1.9 is not so narrow. It is not enough, as Polsinelli suggests, to avoid suing a former client on a substantially related matter. *See, e.g.*, *Zerger & Mauer LLP v. City of Greenwood*, 751 F.3d 928, 933–34 (8th Cir. 2014) (finding material adversity even though former client is not named in current lawsuit where counsel is advocating a position that contradicts a term in former client's settlement); *see also Plotts v. Chester Cycles LLC*, No. CV-14-00428-PHX-GMS, 2016 WL 614023, at *7 (D. Ariz. Feb. 16, 2016) ("While the existence of possible personal liability would establish material adversity, the non-existence of personal liability does not necessarily dictate a different result."). Rather, the relevant inquiry is "whether the current representation may cause legal, financial, or other identifiable detriment to the former client". *Zerger*, 751 F.3d at 933 (citation omitted); *see also* Ala. R. Pro. Conduct 1.9 cmt. ("The underlying question is whether . . . the subsequent representation can be justly regarded as a changing of sides in the matter in question").

Here, Polsinelli's actions are already materially adverse to BCBS-AL's legal and financial interests. Soliciting opt-outs to thwart a class action settlement is materially adverse to BCBS-AL by seeking to deprive the Blues of the benefits of the Settlement they negotiated. Indeed, its rhetoric notwithstanding, Polsinelli presumably

---

actively soliciting and advising potential opt-out plaintiffs. Providers correctly raised Rule 1.7 in their Motion, which was filed two weeks before the applicable Polsinelli attorneys' withdrawals.

appreciates that there is in fact a conflict here—otherwise it would not have undertaken

the (belated, ineffectual) steps that it took in the wake of BCBS-AL's outreach and

Providers' Motion, including erecting an ethical screen (*see* Decl. of M. Murer, Dkt.

3268-01, at ¶ 17), ceasing further outreach to potential opt-outs (*id.* at ¶ 21), removing

Mr. Owen's webinar from the internet (*see* Polsinelli Br., Dkt. 3268, at 6 n.2), and

moving to withdraw Mr. Malatesta and Ms. Glover as counsel of record for BCBS-AL

(*see* Motions to Withdraw, Dkts. 3266, 3267).

      Moreover, Polsinelli is mistaken that adversity in a subsequent opt-out

case is avoided by omitting BCBS-AL as a defendant.  Polsinelli ignores that these cases

allege a *conspiracy*, in which BCBS-AL is alleged to be a member.  Legal actions against

BCBS-AL's alleged co-conspirators—including, in particular, the Blue Cross Blue Shield

Association ("BCBSA") of which BCBS-AL is a member Plan—are necessarily and

inherently adverse to BCBS-AL's legal and financial interests.[4]

### B.    Polsinelli Attorneys Are Governed By Alabama Rules of Professional Conduct.

      Polsinelli next insists that the "relevant Polsinelli [l]awyers" are not bound

by Alabama's ethical rules because they do not practice before this Court and are not

licensed in this state.  (Polsinelli Br., Dkt. 3268, at 8–12.)  This, too, is wrong, and rests

on a misreading of the choice-of-law principles that Polsinelli says should apply.

      Polsinelli directs this Court to Rule 8.5 of the Model Rules of Professional

Conduct to assess which state's ethical rules apply.  (*Id.* at 10–11.)  Even assuming that

---

[4] For example, were any injunctive relief obtained against BCBSA in any of these actions, that would necessarily have repercussions for BCBS-AL and affect its way of doing business.  The same would be true of any Blue Plan.

Model Rule 8.5 applies in Alabama—a point Polsinelli does not address—the Rule calls

for application of *Alabama* ethical rules in this instance.  Model Rule 8.5 provides:

> (b) Choice of Law.  In any exercise of the disciplinary authority of this
> jurisdiction, the rules of professional conduct to be applied shall be as follows:
>
>> (1) for ***conduct in connection with a matter pending before a
>> tribunal, the rules of the jurisdiction in which the tribunal sits***, unless
>> the rules of the tribunal provide otherwise; and
>>
>> (2) for any other conduct, the rules of the jurisdiction in which the
>> lawyer's conduct occurred, or, if the predominant effect of the
>> conduct is in a different jurisdiction, the rules of that jurisdiction
>> shall be applied to the conduct.  A lawyer shall not be subject to
>> discipline if the lawyer's conduct conforms to the rules of a
>> jurisdiction in which the lawyer reasonably believes the
>> predominant effect of the lawyer's conduct will occur.

Model R. of Pro. Conduct 8.5 (emphasis added).

According to Polsinelli, because its potential opt-out client has "not yet

asserted any claims, Polsinelli's advice is not 'conduct in connection with a matter

pending before a tribunal,' under Model Rule 8.5(b)(1)" and is instead governed by the

rules of a future jurisdiction under Model Rule 8.5(b)(2).  (Polsinelli Br., Dkt. 3268, at

11.)  But as Polsinelli concedes, "the advice Polsinelli gives its current client involves

whether to opt out of the proposed settlement" (*id.*)—which of course *is* "conduct *in*

*connection with* a matter pending before" this Court (Model Rule 8.5(b)(1) (emphasis

added)).  Thus, even assuming Model Rule 8.5 governs the conflicts of laws analysis, that

rule points right back to Alabama (*i.e.*, "the jurisdiction in which [this Court] sits").  *Id.*;

*see also Matter of Jindal for Pro Hac Vice Admission to Virgin Islands Bar*, 69 V.I. 942,

947–48 (2018) (holding that Virgin Island rules apply under Rule 8.5(b)(1) where

attorneys' conduct "clearly relates" to a case pending before the Superior Court of the

Virgin Islands, even though attorneys "were physically based in Washington, D.C.");

*U.S. Cosms. Corp. v. Greenberg Traurig, LLP*, No. 04-3697 (DMC), 2005 WL 8175516, at *3–4 (D.N.J. Apr. 4, 2005) (same).[5]

## III.    The Appropriate Remedy for Polsinelli's Flagrant Misconduct Is Disqualification.

Disqualification of Polsinelli is the appropriate (and, we submit, the only sufficient) remedy for its ethical violations.  Indeed, "the Eleventh Circuit has routinely affirmed disqualification orders in civil cases where the district court properly found counsel violated an applicable ethical rule", *Southern Visions, LLP*, 370 F. Supp. 3d at 1333 (collecting cases), and where "necessary to vindicate the important duty of client loyalty imposed on lawyers and law firms alike by the Alabama Rules of Professional Conduct", *id.* at 1340.

"[V]iolations come in varying degrees of severity", *Covey*, 2021 WL 724600, at *9, and "the court's discretion permits it to nip any potential conflict of interest in the bud", *In re Gopman*, 531 F.2d 262, 266 (5th Cir. 1976) (citation and internal marks omitted).  Here, the violations at the heart of this Motion are egregious. Mr. Owen did not merely criticize the Provider Settlement or offer to provide neutral information about opt-out rights during the webinar.  Rather, he acted with an express,

---

[5] Even if the Alabama rules did not apply here, Polsinelli attorneys are also conflicted under other the ethical rules of other states identified by Polsinelli.  (*See* Polsinelli Br., Dkt. 3268, at 10.)  In each of these jurisdictions, the ethical rules permit a screen, but only where the firm does so in a "timely" manner.  *See* Del. R. Pro. Conduct 1.10(c); Idaho R. Pro. Conduct 1.10(a)(2); Iowa R. Pro. Conduct 32:1.10(a)(2); N.C. R. Pro. Conduct 1.10(c); Tex. R. Pro. Conduct 1.10(a); Utah R. Pro. Conduct 1.10(c); R.I. R. Pro. Conduct 1.10(c); Wyo. R. Pro. Conduct 1.10(a); Ill. Sup. Ct. R. 1.10(e); Wash. R. Prof. Cond. 1.0A(K), 1.10(e). Many of the cited jurisdictions also require "prompt" written notice to the client.  *See* Del. R. Pro. Conduct 1.10(c); Idaho R. Pro. Conduct 1.10(a)(2); Iowa R. Pro. Conduct 32:1.10(a)(2); N.C. R. Pro. Conduct 1.10(c); Tex. R. Pro. Conduct 1.10(a); Utah R. Pro. Conduct 1.10(c); R.I. R. Pro. Conduct 1.10(c); Wyo. R. Pro. Conduct 1.10(a); Mich. R. Pro. Conduct 1.10(b); Pa. R. Pro. Conduct 1.10(b); D.C. R. Pro. Conduct 1.10(b)(3).  Here, Polsinelli did nothing to "timely" to address the conflict—let alone provide "prompt" written notice to BCBS-AL.  Indeed, Polsinelli did nothing at all until in-house counsel for BCBS-AL made clear to Polsinelli that BCBS-AL was aware of the conflict.  (*See* Decl. of M. Murer, Dkt. 3268-01, at ¶¶ 17–18.)

stated goal of encouraging a large enough volume of opt-outs to thwart the Settlement and force the Blues back to the "negotiating table facing a bunch of opt-outs". (*See* Tr. of Webinar, Dkt. 3245-01, at 39.) Even worse, Mr. Owen told class members: "if a number, a lot of people opt-out, the Blues are going to come back to the negotiating table", and that this is "what the judge expects" because "that's what happened in a previous settlement in this case". (*Id.* at 25, 38.)

Of course, Mr. Owen's statements were wrong, as he presumably knew as someone who follows the MDL closely. (*See* Decl. of D. Owen, Dkt. 3268-02, at ¶¶ 4–5, 25–30.) *First*, there was no subjective basis for Mr. Owen to tell providers that this Court "expects" sufficient opt-outs to force the Blues "back to the negotiating table" (a statement directly adverse to the interests of BCBS-AL). Indeed, the Court said exactly the opposite in the very statement Mr. Owen cites as the source of his comment. (*See* Tr. of Prelim. App. Hr'g, Dkt. 3216, at 7:2–3 ("So I'm not saying that's what's going to happen here.").)

*Second*, as Mr. Owen must know, his statement was objectively wrong as well. The Court's comment at Preliminary Approval (*see* Tr. of Prelim. App. Hr'g, Dkt. 3216, at 6:21–7:5) was a reference to reissued class notice in connection with a subset of Subscriber Settlement class members (*see* Order regarding Supplemental Notice, Dkt. 2897)—***not*** that there were "new negotiations" that resulted in "a new settlement agreement" because "a lot of big subscriber groups were opting out"—as Mr. Owen asserted. (Tr. of Webinar, Dkt. 3245-01, at 24–25.) In fact, the substantive relief in the Subscriber Settlement did ***not*** change at any time in connection with preliminary approval, final approval, appeal or otherwise. In mischaracterizing the

17

record with the goal of undermining the Provider Settlement, Mr. Owen misled class members. That is *not* activity protected by "First Amendment rights". (*See* Polsinelli Br., Dkt. 3268, at 24.)

Where, as here, the violation of the conflicts rule is egregious—because Polsinelli "knowingly created a conflict of interest, without consultation or consent from [BCBS-AL]", *Southern Visions, LLP*, 370 F. Supp. 3d at 1335; because Mr. Owen's representation of potential opt-outs is "not only logically and materially related, but . . . involved exactly the same events" as Mr. Malatesta's representation of BCBS-AL in the MDL, *McGriff*, 477 F. App'x at 678; and because Polsinelli was "apparently not sensitized to the impropriety" of the conflict after having been made aware of it, *Herrmann*, 199 F. App'x at 751—disqualification is not only the appropriate remedy, but the necessary one.

Moreover, disqualification will not prejudice Polsinelli's undisclosed opt-out client because that client still has ample time to find unconflicted counsel if it in fact elects to assert claims against the Blues. This is not a situation where a complaint has been filed and counsel of record needs to change; indeed, the client has not even opted out of the Provider Settlement as of this submission. Thus, there is no prejudice to the client's claims flowing from Polsinelli's disqualification. *Cf. United States v. Vuteff*, No. 22-20306-CR, 2023 WL 4202644, at *7 (S.D. Fla. June 27, 2023) ("Disqualification is also the most appropriate remedy given that the case against the Defendant is still in its infancy and he has not yet been arraigned. There is thus no irreparable prejudice in precluding [defense counsel] from representing him for the rest of the case.").

18

## **CONCLUSION**

For these reasons, the Court should promptly grant the pending motion to disqualify Polsinelli.

Dated:  February 14, 2025

Respectfully submitted,

*/s/ Karin A. DeMasi*
Karin A. DeMasi
Lauren R. Kennedy
David H. Korn
Lillian S. Grossbard
CRAVATH, SWAINE & MOORE LLP
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Tel: (212) 474-1000
Fax: (212) 474-3700
kdemasi@cravath.com
lkennedy@cravath.com
dkorn@cravath.com
lgrossbard@cravath.com

*Lead Counsel for the Blue Cross Blue Shield System; Counsel for Defendants Blue Cross Blue Shield Association; Blue Cross and Blue Shield of Alabama; Blue Cross and Blue Shield of Arizona, Inc.; GuideWell Mutual Holding Corporation; Blue Cross and Blue Shield of Florida, Inc.; Blue Cross and Blue Shield of Kansas City; Blue Cross and Blue Shield of Massachusetts, Inc.; Blue Cross and Blue Shield of North Carolina; BlueCross BlueShield of South Carolina; BlueCross BlueShield of Tennessee, Inc.; Blue Cross Blue Shield of Wyoming; California Physicians' Service d/b/a Blue Shield of California; Capital Blue Cross; CareFirst Inc.; CareFirst of Maryland, Inc.; Group Hospitalization and Medical Services, Inc.; CareFirst BlueChoice, Inc.; Hawaii Medical Service Association (Blue Cross and Blue Shield of Hawaii); Health Care Service Corporation, an Illinois Mutual Legal Reserve Company, including its divisions Blue Cross and Blue Shield of Illinois, Blue Cross and Blue Shield of Texas, Blue Cross and Blue Shield of New Mexico, Blue Cross and Blue Shield of Oklahoma, and Blue Cross and Blue Shield of Montana; Caring for Montanans*

*Inc., f/k/a Blue Cross and Blue Shield of Montana, Inc.; Wellmark of South Dakota, Inc. (Wellmark Blue Cross and Blue Shield of South Dakota); Wellmark, Inc. (Wellmark Blue Cross and Blue Shield of Iowa); Triple-S Management Corporation; Triple-S Salud, Inc.*

Craig A. Hoover
E. Desmond Hogan
Justin Bernick
Elizabeth Jose
W. David Maxwell
HOGAN LOVELLS US LLP
Columbia Square
555 13th Street, N.W.
Washington, DC  20004
Tel: (202) 637-5600
Fax: (202) 637-5910
craig.hoover@hoganlovells.com
desmond.hogan@hoganlovells.com
justin.bernick@hoganlovells.com
elizabeth.jose@hoganlovells.com
david.maxwell@hoganlovells.com

*Counsel for Elevance Health f/k/a Anthem, Inc., and all of its named subsidiaries in this action; Louisiana Health Service & Indemnity Company (Blue Cross and Blue Shield of Louisiana); BCBSM, Inc. (Blue Cross and Blue Shield of Minnesota); Horizon Healthcare Services, Inc. (Horizon Blue Cross and Blue Shield of New Jersey); Blue Cross & Blue Shield of Rhode Island; Cambia Health Solutions, Inc.; Regence Blue Shield of Idaho; Regence Blue Cross Blue Shield of Utah; Regence Blue Shield (of Washington); Regence Blue Cross Blue Shield of Oregon*

John D. Martin
Lucile H. Cohen
Travis A. Bustamante
NELSON MULLINS RILEY &
SCARBOROUGH LLP

Kimberly R. West (Liaison Counsel)
Mark M. Hogewood
WALLACE, JORDAN, RATLIFF &
BRANDT, LLC
First Commercial Bank Building
800 Shades Creek Parkway, Suite 400
Birmingham, AL  35209
Tel: (205) 870-0555
Fax: (205) 871-7534
kwest@wallacejordan.com
mhogewood@wallacejordan.com

*Counsel for Defendants Blue Cross Blue Shield Association; Blue Cross and Blue Shield of Arizona, Inc.; Blue Cross and Blue Shield of Kansas City; BlueCross BlueShield of South Carolina; Blue Cross Blue Shield of Wyoming; Capital Blue Cross; CareFirst, Inc.; CareFirst of Maryland, Inc.; Group Hospitalization and Medical Services, Inc.; Health Care Service Corporation, an Illinois Mutual Legal Reserve Company, including its divisions Blue Cross and Blue Shield of Illinois, Blue Cross and Blue Shield of Texas, Blue Cross and Blue Shield of New Mexico, Blue Cross and Blue Shield of Oklahoma, and Blue Cross and Blue Shield of Montana; Caring for Montanans, Inc., f/k/a Blue Cross and Blue Shield of Montana, Inc.; Highmark Health; Highmark Inc., f/k/a Highmark Health Services; Highmark West Virginia Inc.; Highmark BCBSD Inc.; California Physicians' Service d/b/a Blue Shield of California; Wellmark of South Dakota, Inc. (Wellmark Blue*

1320 Main Street, 17th Floor
Columbia, SC  29201
Tel: (803) 255-9421
Fax: (803) 256-7500
john.martin@nelsonmullins.com
lucie.cohen@nelsonmullins.com
travis.bustamante@nelsonmullins.com

*Counsel for Elevance Health f/k/a Anthem,
Inc., and all of its named subsidiaries in this
action; Louisiana Health Service &
Indemnity Company (Blue Cross and Blue
Shield of Louisiana); BCBSM, Inc. (Blue
Cross and Blue Shield of Minnesota); Blue
Cross and Blue Shield of South Carolina;
Horizon Healthcare Services, Inc. (Horizon
Blue Cross and Blue Shield of New Jersey);
Blue Cross & Blue Shield of Rhode Island;
Blue Cross and Blue Shield of Vermont;
Cambia Health Solutions, Inc.; Regence Blue
Shield of Idaho; Regence Blue Cross Blue
Shield of Utah; Regence Blue Shield (of
Washington); Regence Blue Cross Blue
Shield of Oregon; Blue Cross & Blue Shield
of Mississippi, a Mutual Insurance Company;
Wellmark of South Dakota, Inc. (Wellmark
Blue Cross and Blue Shield of South Dakota);
Wellmark, Inc. (Wellmark Blue Cross and
Blue Shield of Iowa); Hawaii Medical Service
Association (Blue Cross and Blue Shield of
Hawaii); Triple-S Salud, Inc; Defendants
Blue Cross and Blue Shield of Florida, Inc.;
Blue Cross and Blue Shield of Massachusetts,
Inc.; BlueCross BlueShield of Tennessee, Inc.*

Cavender C. Kimble
BALCH & BINGHAM LLP
1901 6th Avenue North, Suite 1500
Birmingham, AL 35203-4642
Tel: (205) 226-3437
Fax: (205) 488-5860
ckimble@balch.com

*Counsel for Elevance Health f/k/a Anthem,
Inc., and all of its named subsidiaries in this
action; Blue Cross and Blue Shield of North*

*Cross and Blue Shield of South Dakota);
Wellmark, Inc. (Wellmark Blue Cross
and Blue Shield of Iowa); Hawaii
Medical Service Association (Blue Cross
and Blue Shield of Hawaii)*

Carl S. Burkhalter
MAYNARD NEXSEN PC
1901 6th Avenue North, Suite 2400
Regions Harbert Plaza
Birmingham, AL  35203
Tel: (205) 254-1000
Fax: (205) 254-1999
cburkhalter@maynardnexsen.com

Pamela B. Slate
HILL CARTER FRANCO COLE &
BLACK, P.C.
425 South Perry Street
Montgomery, AL  36104
Tel: (334) 834-7600
Fax: (334) 386-4381
pslate@hillhillcarter.com

*With Cravath, Swaine & Moore LLP,
counsel for Defendant Blue Cross Blue
Shield of Alabama*

Helen E. Witt
Jeffrey J. Zeiger, P.C.

KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL  60654
Tel: (312) 862-2000
Fax: (312) 862-2200
jzeiger@kirkland.com
hwitt@kirkland.com

*Counsel for Defendants Health Care
Service Corporation, an Illinois Mutual
Legal Reserve Company, including its
divisions Blue Cross and Blue Shield of
Illinois, Blue Cross and Blue Shield of
Texas, Blue Cross and Blue Shield of*

*Carolina; Louisiana Health Service &
Indemnity Company (Blue Cross and Blue
Shield of Louisiana); BCBSM, Inc. (Blue
Cross and Blue Shield of Minnesota);
Horizon Healthcare Services, Inc. (Horizon
Blue Cross and Blue Shield of New Jersey);
Blue Cross & Blue Shield of Rhode Island;
Cambia Health Solutions, Inc.; Regence Blue
Shield of Idaho; Regence Blue Cross Blue
Shield of Utah; Regence Blue Shield (of
Washington); Regence Blue Cross Blue
Shield of Oregon*

Gwendolyn Payton
KILPATRICK TOWNSEND & STOCKTON
LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA  98101
Tel: (206) 626-7714
Fax: (206) 299-0414
gpayton@kilpatricktownsend.com

*Counsel for Defendants Premera Blue Cross,
d/b/a Premera Blue Cross Blue Shield of
Alaska*

Brian K. Norman
SHAMOUN & NORMAN, LLP
1800 Valley View Lane, Suite 200
Farmers Branch, TX  75234
Tel: (214) 987-1745
Fax: (214) 521-9033
bkn@snlegal.com

H. James Koch
ARMBRECHT JACKSON LLP
RSA Tower, 27th Floor
11 North Water Street
Mobile, AL  36602
Tel: (251) 405-1300
Fax: (251) 432-6843
hjk@ajlaw.com

*Counsel for Defendants CareFirst, Inc.;
CareFirst of Maryland, Inc.; Group*

*New Mexico, Blue Cross and Blue Shield
of Oklahoma, and Blue Cross and Blue
Shield of Montana; Caring for
Montanans, Inc., f/k/a Blue Cross and
Blue Shield of Montana, Inc.; Highmark
Health; Highmark Inc., f/k/a Highmark
Health Services; Highmark West
Virginia Inc.; Highmark BCBSD Inc.;
Highmark Western and Northeastern
New York Inc.*

Jonathan M. Redgrave
REDGRAVE, LLP
4800 Westfields Blvd., Suite 250
Chantilly, VA  20151
Tel: (703) 592-1155
Fax: (612) 332-8915
jredgrave@redgravellp.com

*Additional Counsel for HCSC and
Highmark Defendants and California
Physicians' Service d/b/a Blue Shield of
California*

Todd M. Stenerson
Brian C. Hauser
ALLEN OVERY SHEARMAN
STERLING LLP
401 9th Street, N.W., Suite 800
Washington, DC  20004
Tel: (202) 508-8000
Fax: (202) 508-8100
todd.stenerson@aoshearman.com
brian.hauser@aoshearman.com

Rachel Mossman Zieminski
ALLEN OVERY SHEARMAN
STERLING LLP
2601 Olive Street, Suite 1700
Dallas, TX 75201
Tel: (214) 271-5777
Fax: (214) 271-5778
rachel.zieminski@aoshearman.com

Sarah L. Cylkowski

23

*Hospitalization and Medical Services, Inc.;*
*CareFirst BlueChoice, Inc.*

M. Patrick McDowell
Norman E. "Benje" Bailey. Jr.
BRUNINI, GRANTHAM, GROWER
& HEWES, PLLC
190 East Capitol Street
The Pinnacle Building, Suite 100
Jackson, MS 39201
Tel: (601) 948-3101
Fax: (601) 960-6902
pmcdowell@brunini.com

Cheri D. Green
BLUE CROSS & BLUE SHIELD OF
MISSISSIPPI, A MUTUAL INSURANCE
COMPANY
P.O. Box 1043
Jackson, MS 39215
Tel: (601) 932-3704
cdgreen@bcbsms.com

*Counsel for Defendant Blue Cross & Blue*
*Shield of Mississippi, a Mutual Insurance*
*Company*

Alan D. Rutenberg
FOLEY & LARDNER LLP
3000 K Street, N.W., Suite 600
Washington, DC 20007
Tel: (202) 672-5491
arutenberg@foley.com

Diane R. Hazel
FOLEY & LARDNER LLP
1400 16th Street, Suite 200
Denver, CO 80202
Tel: (720) 437-2034
dhazel@foley.com

Ryan M. Hodinka
BALCH & BINGHAM, LLP
1901 6th Avenue North, Suite 1500
Birmingham, AL 35203

Thomas J. Rheaume, Jr.
BODMAN PLC
1901 Saint Antoine Street
6th Floor at Ford Field
Detroit, MI 48226
Tel: (313) 259-7777
Fax: (734) 930-2494
scylkowski@bodmanlaw.com
trheaume@bodmanlaw.com

Andy P. Campbell
A. Todd Campbell
Yawanna N. McDonald
CAMPBELL PARTNERS LLC
505 North 20th Street, Suite 1600
Birmingham, AL 35203
Tel: (205) 224-0750
Fax: (205) 224-8622
andy@campbellpartnerslaw.com
todd@campbellpartnerslaw.com
yawanna@campbellpartnerslaw.com

*Counsel for Defendant Blue Cross and*
*Blue Shield of Michigan; Blue Cross and*
*Blue Shield of Vermont*

John DeQ. Briggs
Jeny M. Maier
Kenina J. Lee
AXINN, VELTROP & HARKRIDER,
LLP
1901 L Street, N.W.
Washington, DC 20036
Tel: (202) 912-4700
Fax: (202) 912-4701
jbriggs@axinn.com
jmaier@axinn.com
klee@axinn.com

Kail J. Jethmalani
Victoria J. Lu
AXINN, VELTROP & HARKRIDER
LLP
630 Fifth Avenue, 33rd Floor
New York, NY 10111
Tel: (212) 728-2200

Tel: (205) 226-3464
Fax: (205) 488-5848
rhodinka@balch.com

*Counsel for Defendant USAble Mutual*
*Insurance Company, d/b/a Arkansas Blue*
*Cross and Blue Shield and as Blue Advantage*
*Administrators of Arkansas*

Robert R. Riley, Jr.
RILEY & JACKSON, P.C.
3530 Independence Drive
Birmingham, AL 35209
Tel: (205) 879-5000
Fax: (205) 879-5901
rob@rileyjacksonlaw.com

*Counsel for Defendants Blue Cross and Blue*
*Shield of Florida, Inc.; Blue Cross and Blue*
*Shield of Massachusetts, Inc.; BlueCross*
*BlueShield of Tennessee, Inc.*

Edward S. Bloomberg
John G. Schmidt Jr.
Anna Mercado Clark
PHILLIPS LYTLE LLP
One Canalside
125 Main Street
Buffalo, NY 14203-2887
Telephone No. (716) 847-8400
ebloomberg@phillipslytle.com
jschmidt@phillipslytle.com
aclark@phillipslytle.com

Morris Wade Richardson (ASB-8581-S78M)
Charles Todd Grimes (ASB-3224-S77C)
RICHARDSON CLEMENT PC
22 Inverness Center Parkway, Suite 500
Birmingham, AL 35242
Tel: (205) 729-7000
Fax: (205) 905-7009
wade@richardson.law
charley@richardson.law

Fax: (212) 728-2201
kjethmalani@axinn.com
vlu@axinn.com

Stephen A. Rowe (ASB-3804-E65S)
Aaron G. McLeod (ASB-8589-A57M)
ADAMS AND REESE LLP
1901 6th Avenue North, Suite 3000
Birmingham, AL 35203
Tel: (205) 250-5080
Fax: (205) 250-5034
steve.rowe@arlaw.com
aaron.mcleod@arlaw.com

*Counsel for Defendants Independence*
*Hospital Indemnity Plan, Inc. f/k/a*
*Independence Blue Cross; Independence*
*Health Group, Inc.*

Sarah Gilbert
Honor Costello
CROWELL & MORING LLP
Two Manhattan West
375 Ninth Ave.
New York, NY 10001
Tel: (212) 223-4000
Fax: (212) 223-4134
sgilbert@crowell.com
hcostello@crowell.com

Tracy A. Roman
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004
Tel: (202) 624-2500
Fax: (202) 628-5116
troman@crowell.com

John M. Johnson
Brian P. Kappel
Tatum L. Jackson
LIGHTFOOT FRANKLIN & WHITE
LLC
400 20th Street North
Birmingham, AL 35203
Tel: (205) 581-0716

*Attorneys for Defendant Excellus Health Plan, Inc., d/b/a Excellus BlueCross BlueShield*

Fax: (205) 581-9116
jjohnson@lightfootlaw.com
bkappel@lightfootlaw.com
tjackson@lightfootlaw.com

*Counsel for Defendants Blue Cross and Blue Shield of Nebraska; GoodLife Partners, Inc.; Blue Cross of Idaho Health Service, Inc.; Blue Cross and Blue Shield of Kansas, Inc.; HealthyDakota Mutual Holdings; Blue Cross Blue Shield of North Dakota*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on February 14, 2025, the foregoing was

electronically filed with the Clerk of Court using the CM/ECF system, which will send

notification of such filing to all counsel of record.

/s/ <u>*Karin A. DeMasi*</u>
Karin A. DeMasi

## <u>APPENDIX A</u>

Timeline of Polsinelli Conflict in *In re BCBS Antitrust Litigation*, MDL 2406 (N.D. Ala.)

