# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

|  |  |
|---|---|
| IN RE:  BLUE CROSS BLUE SHIELD } | |
| } | Master File No.:  2:13-CV-20000-RDP |
| ANTITRUST LITIGATION } | |
| (MDL NO.: 2406) } | This order relates to the Provider Track |
| } | |

## MEMORANDUM OPINION AND ORDER

This matter is before the court on Provider Plaintiffs' Motion to Disqualify Polsinelli, P.C. and for Corrective Notice. (Doc. # 3245). The Blues have joined in Provider Plaintiffs' Motion to the extent it seeks to disqualify Polsinelli. (Doc. # 3274). The Motion has been fully briefed. (Docs. # 3268, 3273). On February 19, 2025, the court conducted a hearing on the Motion by video conference during which the court heard argument from Provider Plaintiffs, the Blues, and Polsinelli.

### I.      Background

Attorneys from the Maynard Cooper & Gale PC law firm (now named Maynard Nexsen) ("Maynard") have represented Blue Cross and Blue Shield of Alabama ("BCBS-AL") in this MDL and the underlying cases since at least August 10, 2012. (Case No. 2:12-cv-02532-RDP, Docs. # 11, 12). John Thomas A. Malatesta III, while at Maynard, appeared on behalf of BCBS-AL in the first-filed Provider track case in the MDL on February 19, 2013. (Case No. 2:12-cv-02532-RDP, Doc. # 162). Sarah S. Glover of Maynard appeared on behalf of BCBS-AL in the first-filed Subscriber track case. (Case No. 2:12-cv-02169-RDP).

While working as an attorney at Maynard, Malatesta billed BCBS-AL for more than 4,500 hours of legal work on the MDL. (Doc. # 3274-1 at 2). Glover billed BCBS-AL for more than 1,800 hours on the MDL. (*Id*.) While working as an attorney at Maynard, Starr Drum billed BCBS-AL for more than 1,200 hours of legal work on the MDL, and Todd Panciera billed BCBS-AL for more than 6,000 hours of legal work on the MDL. (*Id*. at 1-2).

Malatesta was a lead discovery lawyer for BCBS-AL and oversaw (among other things) discovery involving structured data in the MDL. He participated in weekly discovery calls and strategy calls with the Blues' Joint Defense Group ("JDG"), regularly interacted with BCBS-AL's General Counsel, participated in countless meet-and-confers with Subscribers and Providers, defended multiple challenges to BCBS-AL privilege designations, and prepared ten BCBS-AL deponents who sat for depositions. (*Id*. at 3). Glover, Drum and Panciera worked closely with Malatesta. (*Id*.).

Polsinelli PC represents hundreds of health care providers in matters unrelated to this MDL, and is well known for its representation of health care providers. (Doc. # 3268-2 ¶ 10). Polsinelli partner Dan Owen has acknowledged the material adversity between his health care provider clients and insurance companies: "insurance companies are unfortunately the natural enemies of our client." (Doc. # 3245-1 at 35, 44-45).

In 2015, Owen began research about and analysis of the antitrust litigation against the Blue Cross and Blue Shield entities (the "Blues"). (Doc. # 3268-2 ¶ 5). Owen is a member of the bars of Missouri and Kansas, and practices in many other jurisdictions across the country. (*Id*. at ¶ 1). Polsinelli employs attorneys who are licensed to practice in at least 45 states. (Doc. # 3268-1 ¶ 9).

Beginning in 2016, Owen began to affirmatively involve himself with this MDL, which is pending in the state of Alabama. In January 2016, Owen talked on the phone to Provider Plaintiffs'

2

Co-Lead Counsel Joe Whatley about this litigation. (Doc. # 3268-2 ¶¶ 6-7). Thereafter, on April 21, 2016, Owen and Whatley met in person in New York City to discuss Class Counsel's goals and strategies for the litigation. (*Id.*). Whatley "shared his vision for the litigation freely, and expressed his hope that one of the large health systems represented by Polsinelli would assist him in settlement negotiations with the Blues or become a class plaintiff." (*Id.* at ¶ 7). In May 2016, Polsinelli and Whatley executed a mutual confidentiality agreement. (*Id.* at ¶ 9).

Also in 2016, Polsinelli was engaged by six non-party health care providers to represent them in connection with subpoenas issued by several of the Blues in the MDL. (*Id.* at ¶ 10). Throughout 2016 and early 2017, Owen represented these clients in responding to and negotiating the scope of the Blues' subpoenas in this MDL. (*Id.* at ¶ 11).

On June 27, 2017, the Blues, including BCBS-AL, filed a Motion to Compel against Polsinelli's non-party health care provider clients. (Doc. # 1305 at 10). Malatesta was listed as a signatory for BCBS-AL on that Motion. (*Id.*).

On July 14, 2017, Polsinelli filed a Joint Opposition to that Motion to Compel on behalf of non-party providers Adventist Health System, University of North Carolina Health Care, Cedars-Sinai Medical Center, and Tenet Healthcare. (Doc. # 1347). Although Owen was not a signatory to that Joint Opposition, the Opposition relied on, among other things, his Declaration. (Docs. # 1347, 1347-1). On July 27, 2017, Owen appeared at a hearing before the Honorable T. Michael Putnam (Ret.) to address the Motion to Compel. (Docs. # 3268-2 ¶ 15; 1396 at 3, 64, 65-71). Carl Burkhalter of Maynard represented BCBS-AL and appeared on the record during that hearing. (Doc. # 1396 at 2, 13-30).

Neither Owen nor any other Polsinelli lawyer has made a filing or otherwise appeared in the MDL since the July 27, 2017 hearing. (Doc. # 3268-2 ¶ 18). Malatesta of Maynard was filing pleadings in the MDL on behalf of BCBS-AL until at least July 10, 2018. (Doc. # 2233).

In 2019, however, Whatley invited Owen and one of Polsinelli's clients to participate in Provider mediation sessions in the MDL. (Doc. # 3268-2 ¶ 19). Owen was intimately involved in the planning and preparation of a mediation session, and he and his client attended a mediation session on December 3, 2019. (*Id*. at ¶ 20).

In a pleading filed in the MDL on December 2, 2020, Malatesta was listed as counsel for BCBS-AL. (Doc. # 2651). Malatesta and Glover were still billing BCBS-AL for time on the MDL well into calendar year 2021. (Doc. # 3274-1 at 2). On April 6, 2023, a Notice of Change of Firm name was filed in the MDL on behalf of Maynard attorneys Carl Burkhalter and Malatesta. (Doc. # 3048). Maynard, Cooper became Maynard Nexsen. (*Id*.).

In January 2024, Malatesta, Glover, Drum and Panciera, who had represented BCBS-AL in the MDL while at Maynard, joined the Polsinelli firm. (Doc. # 3268-2 ¶ 12). At that point in time, Owen was still interested in the MDL on behalf of certain Providers. (*Id.*).

For example, in early 2024, Owen attended an MDL status conference at which there was a discussion of remanding all of the MDL Provider cases, except the cases originally filed in Alabama, to their courts of origin. (Doc. # 3268-2 ¶ 25). Owen also listened to the Preliminary Approval Hearing on November 14, 2024. (*Id*. at ¶ 30). Owen's Declaration states that he "closely followed the [MDL] for almost ten years." (*Id.* at ¶ 4). Due to his involvement in the litigation and the Provider mediation, Owen says he has developed his own opinions about the proposed Provider settlement. (*Id*. at ¶¶ 27-31).

4

Since the court preliminarily approved the Provider settlement, many health care providers have asked Polsinelli lawyers for advice on whether to accept the terms of the settlement or opt out and pursue separate remedies. (Doc. # 3268-1 ¶ 20). Polsinelli is currently advising only a single client with respect to the opt out issue. (*Id*. at ¶ 21). That client has operations in several states, including Washington, but not in Alabama. (Doc. # 3268-1 at ¶ 21-22). Polsinelli has represented that client for more than twenty-five years. (*Id*. at ¶ 23).

Zotec Partners is a Polsinelli client that provides consulting services to health care providers. (Doc. # 3268-2 ¶ 32). Zotec's management asked Polsinelli to make an informational presentation on the proposed settlement to Zotec's clients. (*Id*.). Owen agreed and was the lead presenter. (*Id*. at ¶ 33). Owen says he did not view the informational presentation as a marketing opportunity for the firm because Zotec's clients are typically smaller than the health care providers Polsinelli would normally represent in antitrust litigation. (*Id*. at ¶¶ 33-24).

During the December 2024 Zotec presentation, Owen stated that he "would like to see The Blues at the negotiating table facing a bunch of opt-outs and wanting to preserve some kind of national deal." (Doc. # 3245-1 at 39). Earlier, he made the following suggestion, "we could create some kind of group or structure and tell The Blues that this group of people or group of companies intends to opt out. But we're willing to discuss the problems we have with the settlement first." (*Id*. at 25).

On January 3, 2025, BCBS-AL's Vice President and General Counsel, Michael J. Velezis, emailed Malatesta at his Polsinelli email address "to ask for information related to opt-out solicitation activities that his new law firm was undertaking." (Docs. # 3274-1 at 4; 3274-2). On January 9, 2025, having had no response to his January 3, 2025 email to Malatesta, Velezis wrote a letter to Malatesta and Chase Simmons, Polsinelli's Chairman and Chief Executive Officer.

5

(Docs. # 3274-1 at 4; 3274-3). Velezis noted that Malatesta and the other former Maynard attorneys now with Polsinelli had "actively represented BCBS-AL for around 10 years in the MDL prior to joining Polsinelli." (Docs. # 3274-1 at 4; 3274-3). He explained that BCBS-AL was not waiving the conflict and did not consent "to Polsinelli or any of its attorneys representing any Provider Settlement Class Members or any other persons or entities in any matter related to any facts and claims made in the MDL"; that the conflict was imputed to all Polsinelli professionals under Alabama Rule of Professional Conduct 1.10; and that Polsinelli should advise him in writing by January 13, 2025 whether it would immediately withdraw from advising any client about opting out of the Provider Settlement Class (and not accept future representation in this regard). (Docs. # 3274-1 at 4; 3274-3).

On January 13, 2025, Polsinelli's Chief Legal Officer, L. James Berglund II, responded to Velezis's letter. (Doc. # 3274-4). Berglund represented that Polsinelli "is not currently advising or representing any clients in the MDL Litigation adverse to the interests of BCBS-AL in the MDL Litigation and will not represent any clients materially adverse to the interests of BCBS-AL in the MDL Litigation or any substantially related matters in the future." (Docs. # 3274-1 at 4; 3274-4).

On January 20, 2025, Berglund further responded to Velezis explaining that "[s]teps have been taken and will continue to be taken to establish an ethical wall." (Doc. # 3274-7 at 2-3).

Attached to Polsinelli's response to Provider Plaintiffs' Motion to Disqualify Polsinelli, Polsinelli attorney Matthew J. Murer provided a Declaration that represents that none of the former Maynard attorneys have worked on any matters relating to this MDL while at Polsinelli, none of them have shared any information from their previous representation of BCBS-AL with any Polsinelli lawyers, and none of them brought any documents related to that representation to Polsinelli. (Doc. #3268-1 at ¶¶ 12-16).

6

**II.     Legal Standard**

"Because a party is presumptively entitled to the counsel of his choice, that right may be overridden only if 'compelling reasons' exist." *In re BellSouth Corp.*, 334 F.3d 941, 961 (11th Cir. 2003). Of course, one such compelling reason to deny a client counsel of its choice exists when counsel's representation would violate an applicable rule of professional conduct. *See Banque de Rive, S.A. v. Highland Beach Dev. Corp.*, 758 F.2d 559, 561 (11th Cir. 1985); *Miccosukee Tribe of Indians of Fla. v. Cypress*, 686 F. App'x 823, 825-26 (11th Cir. 2017); *McGriff v. Christie*, 477 F. App'x 673, 677-79 (11th Cir. 2012); *Herrmann v. GutterGuard, Inc.*, 199 F. App'x 745, 747, 755-57 (11th Cir. 2006).

"The party moving to disqualify counsel bears the burden of proving the grounds for disqualification." *In re BellSouth Corp.*, 334 F.3d at 961. "A disqualification order is a harsh sanction, often working substantial hardship on the client and should therefore be resorted to sparingly." *Herrmann*, 199 F. App'x at 752 (quoting *Norton v. Tallahassee Mem'l Hosp.*, 689 F.2d 938, 941 n.4 (11th Cir. 1982)) (internal quotation marks omitted).

Provider Plaintiffs have filed their Motion in this court which, since 2013, has been assigned the task of conducting pretrial activities in this MDL. There are two sources of law that govern motions to disqualify in this context: the local rules of this court and federal common law. *Herrmann*, 199 F. App'x at 752.

Local Rule 83.1(f), titled "Standards for Professional Conduct," provides that attorneys appearing before this court are governed by: (1) this court's local rules; (2) the Alabama Rules (to the extent they are not inconsistent with the court's local rules); and (3) the American Bar Association Model Rules of Professional Conduct ("ABA Model Rules") (again, to the extent they are not inconsistent with either the court's local rules or the Alabama Rules). N.D. Ala. L.R.

83.1(f). The local rules also provide that violations of those standards may result in a variety of sanctions, including "removal from a particular case." *Id.*

The Alabama Supreme Court has adopted a "common sense" approach to questions concerning the vicarious disqualification of lawyers" and that this "common sense approach ... has been carried forward into the [] Alabama Rules of Professional Conduct." *Ex parte Utilities Bd. of City of Tuskegee*, 274 So. 3d 229, 232 (Ala. 2018) (internal quotations omitted). Though state-court interpretations of the Rules are not binding on a federal court tasked with determining whether an attorney should be disqualified, they are persuasive authority. *See Clark v. Alfa Ins. Co.*, 2001 WL 34394281, at *5 n.1 (N.D. Ala. Feb. 7, 2001).

In deciding whether to grant a motion to disqualify, a district court must first "identify a specific rule of professional conduct applicable to that court and determine whether the attorney violated that rule." *Herrmann*, 199 F. App'x at 755; *see also Schlumberger Techs., Inc. v. Wiley*, 113 F.3d 1553, 1561 (11th Cir. 1997) ("[W]here the district court's disqualification order is based on an allegation of ethical violation, ... [t]he court must clearly identify a specific Rule of Professional Conduct which is applicable to the relevant jurisdiction and must conclude that the attorney violated that rule."). A district court "may not disqualify an attorney on the basis of some transcendental code of conduct that existed only in the subjective opinion of the court, of which the attorney had no notice." *Schlumberger*, 113 F.3d at 1561 (cleaned up).

Upon finding a violation of an applicable ethical rule, a district court must then, "considering binding and persuasive federal case law, decide whether or not the ethical lapse warrants disqualification." *Clark*, 2001 WL 34394281, at *3; *see Herrmann*, 199 F. App'x at 747 (affirming disqualification order where district court found violation of Georgia Rule of Professional Conduct); "Upon [finding a party violated an applicable rule of conduct], the court

may then, considering binding and persuasive federal case law, decide whether or not the ethical lapse warrants disqualification." *Clark*, 2001 WL 34394281, at *3. Even when disqualification may be an appropriate sanction, lesser sanctions may also be appropriate, depending upon all the circumstances. *Covey v. Colonial Pipeline Co.*, 2021 WL 724600, at *3 (N.D. Ala. Feb. 24, 2021).

**III.    Analysis**

As discussed above, Malatesta and the other former-Maynard lawyers left that firm in January 2024. Since that time, although Malatesta and Glover did not move to withdraw, they have not represented BCBS-AL. Provider Plaintiffs' Motion and the Blues' joinder in that motion raises a conflict issue related to these attorneys representation of that former client.

Rule 1.9(a) of the Alabama Rules of Professional Conduct prohibits an attorney "who has formerly represented a client in a matter" from "represent[ing] another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client, unless the former client consents after consultation." *Mt. Hebron Dist. Missionary Baptist Ass'n of AL, Inc. v. Sentinel Ins. Co., Ltd.*, 2017 WL 3928269, at *3 (M.D. Ala. Sept. 7, 2017) (quoting Ala. R.P.C. 1.9(a)). But it is not only the lawyers who previously represented a now-adverse client who may be disqualified.

Rule 1.10(a) provides: "While lawyers are associated in a firm, none of them shall knowingly represent a client when any of them, practicing alone, would be prohibited from doing so by [Rule 1.9]." Ala. R.P.C. 1.10(a). "Rule 1.10(a) is based on the idea that a firm of lawyers is essentially one lawyer for the purposes of the rules governing loyalty to the client, or from the premise that each lawyer is vicariously bound by the obligation of loyalty owed by each lawyer with whom he is associated." *Mt. Hebron Dist. Missionary Baptist Ass'n*, 2017 WL 3928269, at *6 (quoting *Green v. Montgomery Cty., Ala.*, 784 F. Supp. 841, 843 (M.D. Ala. 1992) (in turn

quoting Ala. R.P.C. 1.10, comment) (internal quotations omitted)). Thus, the Alabama Rules of Professional Conduct (unlike analog rules in some other states) do not provide for the construction of an ethical screen to resolve a conflict under Rule 1.9.

According to Rule 8.5 of the Alabama Rules of Professional Conduct, "[a] lawyer admitted to practice in this jurisdiction is subject to the disciplinary authority of this jurisdiction, although engaged in practice elsewhere." Ala. R.P.C. 8.5. Therefore, "the court must [first] ask whether [the moving party] has carried [its] burden of proving that Rule 1.9(a) applies to the circumstances presented." *Mt. Hebron Dist. Missionary Baptist Ass'n*, 2017 WL 3928269, at *3 (citing *O'Rear v. City of Carbon Hill*, 2015 WL 5286140, at *3 (N.D. Ala. Sept. 8, 2015) ("'The party moving for an attorney's disqualification under ... Rule 1.9 bears the burden of proving the existence of a conflict of interest.'") (quoting *Ex parte Tiffin*, 879 So. 2d 1160, 1164 (Ala. 2003))).

This court's Case Management Order No. 1 in the MDL provides that "[a]ny attorney admitted to practice and in good standing in any United States District Court is admitted pro hac vice in this litigation." (Doc. # 6 at 2). Thus, when Owen and the other Polsinelli lawyers appeared before this court, they were not required to file a separate motion seeking leave to appear in this court on a pro hac vice basis. Had they been required to request leave to appear, they would have been required to certify that they had read and understood the local rules applicable in this District.[1] These rules include Local Rule 83.1(f) that, as discussed above, provides that attorneys appearing before this court are governed by: (1) this court's local rules; (2) the Alabama Rules (to the extent they are not inconsistent with the court's local rules); and (3) the American Bar Association Model Rules of Professional Conduct ("ABA Model Rules") (again, to the extent they are not inconsistent with either the court's local rules or the Alabama Rules). N.D. Ala. L.R. 83.1(f). Although Owen's

---

[1] (https://www.alnd.uscourts.gov/sites/alnd/files/RDP%20PHV%20Applicants.pdf (last visited February 20, 2025).

10

third-party-provider clients may have been haled into this court involuntarily via subpoena, Owen and the other Polsinelli lawyers appeared before this court of their own free will.

Rule 8.5 of the American Bar Association's Model Rules of Professional Conduct provides that:

> *Maintaining The Integrity of The Profession*
>
> (a) Disciplinary Authority. A lawyer admitted to practice in this jurisdiction is subject to the disciplinary authority of this jurisdiction, regardless of where the lawyer's conduct occurs. *A lawyer not admitted in this jurisdiction is also subject to the disciplinary authority of this jurisdiction if the lawyer provides or offers to provide any legal services in this jurisdiction*. A lawyer may be subject to the disciplinary authority of both this jurisdiction and another jurisdiction for the same conduct.
>
> (b) Choice of Law. In any exercise of the disciplinary authority of this jurisdiction, the rules of professional conduct to be applied shall be as follows:
>
>> (1) *for conduct in connection with a matter pending before a tribunal, the rules of the jurisdiction in which the tribunal sits*, unless the rules of the tribunal provide otherwise; and
>>
>> (2) for any other conduct, the rules of the jurisdiction in which the lawyer's conduct occurred, or, if the predominant effect of the conduct is in a different jurisdiction, the rules of that jurisdiction shall be applied to the conduct. A lawyer shall not be subject to discipline if the lawyer's conduct conforms to the rules of a jurisdiction in which the lawyer reasonably believes the predominant effect of the lawyer's conduct will occur.

ABA Model R.P.C. 8.5 (emphasis added).

Malatesta, Glover, Drum, and Panciera, who formerly represented BCBS-AL in this MDL, are admitted to practice in Alabama. Of course, the court fully understands that Owen is not, nor are scores of other Polsinelli attorneys.

Malatesta, Glover, Drum, and Panciera are clearly bound by Alabama's Rule 1.9. But so is an attorney engaging in any conduct in connection with this MDL by virtue of this court's local rules. Conduct in connection with a matter pending before a tribunal includes appearing in court in response to a subpoena or a motion to compel *and* advising a client to opt out of a class

11

settlement being considered by the court. Polsinelli's conduct, therefore, was conduct in connection with a matter pending before *this* tribunal, and Alabama Rule 1.9 therefore applies not only under this court's local rules, but also would apply under the Choice of Law provision in the ABA's model rules.

Polsinelli lawyers, including Owen, were allowed to appear in this court in this MDL on behalf of medical provider clients who were the subject of the Blues' subpoenas and the target of the Blues' Motion to Compel. (Docs. # 1347, 1347-1, 1396 at 3, 64, 65-71). In 2019, Owen also attended a mediation session in this MDL in connection with the Provider track of the litigation. (Doc. # 3268-2 at ¶¶ 19-10). Notably, in 2019, Malatesta, Glover, Drum, and Panciera were still at Maynard and were still actively representing BCBS-AL. To be clear, Owen on the one hand, and Malatesta, Glover, Drum, and Panciera on the other, actively and *concurrently* represented materially adverse clients in the MDL pending before this tribunal located in Alabama.

After the mediation where Owen and the Maynard lawyers represented materially adverse clients, and after the Maynard lawyers joined Polsinelli, Owen continued to monitor the MDL. He attended a hearing in the MDL in early 2024 and listened to the hearing where the court considered preliminarily approving the Provider Settlement.

During the hearing on Provider Plaintiffs' Motion to Disqualify, Polsinelli's counsel focused on the idea that Owen's client in Washington would not file an opt out lawsuit against BCBS-AL and certainly would not do so in Alabama. Therefore, he argued, Alabama Rule 1.9 does not apply. But, that argument misses the point and ignores the unique facts presented here.

Owen is currently advising one Provider client who does not do business in Alabama. But virtually all medical providers or facilities in the country are Provider Settlement Class Members. The Settlement Class that the court preliminarily certified includes:

> all Providers in the U.S. [] who currently provide or provided healthcare services, equipment or supplies to any patient who was insured by, or who was a Member of or a beneficiary of, any plan administered by any Settling Individual Blue Plan during the Settlement Class Period [July 24, 2008, through October 4, 2024].

(Doc. # 3225 at 6-7). Any advice Owen gives to medical providers regarding whether or not to opt out of the Provider Settlement is advice given in connection with the MDL pending before this tribunal, which sits in Alabama. And, advice to medical providers to opt out of the Provider Settlement takes a position materially adverse to BCBS-AL, who is an advocate of the Settlement. Therefore, Polsinelli's argument that the Alabama rules do not apply because Owen is not in Alabama, a client he seeks to counsel or represent is not in Alabama, and any such client would not sue BCBS-AL *does not* provide the escape hatch from the application of Alabama Rule 1.9 that Polsinelli thinks it does. Advice to a client to opt out of a settlement pending before this court quite plainly brings that conduct within the ambit of Alabama's Rule 1.9.

Polsinelli's counsel also made the point that many of the states where their attorneys practice allow that firms may avoid imputed conflicts by screening the personally disqualified lawyers. *See, e.g., Silicon Graphics, Inc. v. ATI Techs., Inc*., 741 F. Supp. 2d 970, 977 (W.D. Wis. 2010) ("At least 12 states have a rule of imputed disqualification similar to the ABA model rule that allows for screening regardless of the scope of the work conducted by the lawyer for the former client." (citing *Kirk v. First American Title Insurance Co*., 183 Cal.App.4th 776, 802-03, 108 Cal.Rptr.3d 620 (Ct. App. 2010)). Indeed, the ABA's Model Rule of Professional Conduct 1.10 counsels:

> (a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9, *unless*
>
> []
>
>> (2) the prohibition is based upon Rule 1.9(a) or (b) and arises out of the disqualified lawyer's association with a prior firm, and

> (i) the disqualified lawyer *is timely screened* from any participation in the matter and is apportioned no part of the fee therefrom;

M.R.P.C. Rule 1.10(a) (emphasis added). Polsinelli cites thirteen states where the respective Rules of Professional Conduct allow screening. (Doc. # 3268 at 10).

But, Owen's involvement in this MDL, and his advice regarding whether to opt out of the Provider Settlement, is conduct in connection with a matter pending before this tribunal. So, under ABA Model R.P.C. 8.5, the rules of the jurisdiction in which the tribunal sits, here Alabama, apply. ABA Model R.P.C. 8.5. Alabama Rule 1.9 prohibits Malatesta, Glover, Drum, and Panciera from "represent[ing] another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of" BCBS-AL. Ala. R.P.C. 1.9(a); *Mt. Hebron Dist. Missionary Baptist Ass'n of AL* , 2017 WL 3928269, at *3. Rule 1.10(a) further prohibits any other member of the Polsinelli firm from doing so: "While lawyers are associated in a firm, none of them shall knowingly represent a client when any of them, practicing alone, would be prohibited from doing so by [Rule 1.9]." Ala. R.P.C. 1.10(a).

In Alabama, an ethical screen is not effective to avoid this conflict. And the attorneys that Polsinelli seeks to screen are Alabama lawyers. Thus, any efforts to screen them do not resolve the obvious conflict under Alabama Rule 1.9. Moreover, Owen, the attorney seeking to undertake the conflicted representation advising Provider Settlement Class Members to opt out of the settlement agreed to by BCBS-AL subjected himself to this court's rules and jurisdiction by (1) appearing in the MDL, (2) closely monitoring the MDL for ten years, and (3) attending a mediation session (where he represented a client materially adverse to BCBS-AL).

The court understands Polsinelli's argument to be that the "clients who matter" are not in Alabama but rather are non-Alabama providers who seek counsel about their opt our rights. That point is at the same time incorrect and ignores a key principle at issue here. It is incorrect because

BCBS-AL certainly contends it is a client who matters. Lawyers who until recently did substantial work for it in this litigation are now at a firm that is taking materially adverse positions against it – in that same litigation. And, it ignores the tautological fact that those lawyers who are now purportedly being placed behind the ethical screen actually practice in a state that does not permit them to be so screened. Indeed, that state (Alabama) imputes their conflict to all of the other attorneys in their firm.

Owen and all other Polsinelli attorneys are prohibited by Rule 1.9 of the Alabama Rules of Professional conduct from (1) advising Provider Settlement Class Members to object to or opt out of the MDL Settlement that BCBS-AL supports and seeks to finalize, and (2) representing any such provider in a matter adverse to BCBS-AL or its material interests on claims related to those made in the MDL.

### IV.    Corrective Notice

In their Motion, Provider Plaintiffs assert that many of the comments made by Owen in his December 2024 Zotec presentation were either false or misleading and indicated that "Co-Lead Counsel for the Provider Plaintiffs agreed to a poor deal." (Doc. # 3245 at 6). They assert Owen made these false and misleading statements "to convince his audience that opting out and negotiating a better settlement is something that could be done easily." (*Id*. at 6-10). Therefore, they initially requested that the court require Polsinelli to send a corrective notice. (*Id*. at 1, 10). In their Reply, Provider Plaintiffs altered their request for a corrective notice. They requested that they be allowed to send a court-approved corrective notice with the assistance of the Settlement Administrator. (Doc. # 3273 at 1, 5-6). In the Reply, they address misstatements Owen made about his role in the mediation session he attended, the effect of the Per Se standard of review ruling, and the court's expectations about opt outs. (*Id*. at 6-8).

In their joinder in Provider Plaintiffs' Motion, the Blues joined the request to disqualify Polsinelli, but did not join in the request for a corrective notice. (Doc. # 3274).

Polsinelli's Opposition argues that Owen's presentation was not false or misleading, and that he made it clear he was sharing his personal opinion. (Doc. # 3268 at 18-19). The firm also argues that Owen's opinions were well founded based on his involvement in the litigation and were therefore fair. (*Id*. at 20).

The Honorable Emily C. Marks of the Middle District of Alabama recently addressed the legal standards applicable to a corrective notice as follows:

> As to curative notices, Federal Rule of Civil Procedure 23(d) provides, in part, that a court may issue orders "to protect class members and fairly conduct the action." FED. R. CIV. P. 23(d). Importantly, "[t]he issuance of a remedial order under Fed. R. Civ. P. 23(d) does not require a finding of *actual* harm." *Georgine v. Amchem Prod., Inc*., 160 F.R.D. 478, 498 (E.D. Pa. 1995) (citing *In re Sch. Asbestos Litig*., 842 F.2d 671, 683 (3d Cir. 1988)) (emphasis added). [] Thus, the discretion of district courts to issue such orders is broad, and "[c]ourts have continually held that misleading communications to class members concerning the litigation pose a serious threat to the fairness of the litigation proceedings and violate the principle of informed consent, and the Federal Rules allow the courts to protect class members and putative class members from such communications." *Riley v. Flowers Baking Co. of Jamestown, LLC*, 2015 WL 4249849, at *2 (W.D. N.C. July 13, 2015) (collecting cases). "A communication is coercive or misleading when [a party] interferes with participation by potential class members in the lawsuit or misinforms them by failing to reveal how some proposed transaction might affect their rights in the litigation." *Id*. Therefore, courts often employ curative notices to remedy misleading communications to class members. *E.g., Georgine*, 160 F.R.D. at 498 (ordering, among other things, that a curative notice be sent to class members who received misleading communications); *Magtoles v. United Staffing Registry, Inc*., 2022 WL 4096180, at *5 (E.D.N.Y. Sept. 6, 2022) (same); *Marino v. CACafe, Inc*., 2017 WL 1540717, at *3 (N.D. Cal. Apr. 28, 2017) (same).

*Braswell v. Bow Plumbing Grp., Inc*., 2024 WL 1468917, at *3 (M.D. Ala. Apr. 4, 2024) (emphasis in original, footnote omitted).

In *Braswell*, shortly after the court preliminarily approved a class settlement, attorneys representing plaintiffs in related state court litigation communicated with their clients who were presumptively members of the settlement class. 2024 WL 1468917, at *1. They gave these class

16

members an incorrect deadline to exclude themselves from the settlement that (1) fell before the actual opt out date, and (2) fell even before class notice was issued about the settlement. *Id*. at *4. The attorneys also gave incorrect information about compensation methodology in the proposed settlement. But, even worse, they:

> Egregiously [] also suggested that it could be unethical for Plaintiffs' counsel to communicate with presumptive class members, writing: "If ANY lawyer or law firm representative tries to contact you by mail, phone, or email, that is not from our offices we need to know that immediately because they should not contact you. Do not respond to anyone outside of our office on this BOW matter other than to tell them you are represented by us."

*Id.* at *2). Judge Marks held that this missive "potentially chilled communication between class counsel and presumptive class members." *Id*. at *4. "Under these circumstances," she found "that a curative notice to presumptive settlement class members is necessary 'to protect class members and fairly conduct the action,' and ensure that class members receive fair and adequate notice of the settlement." *Id*. (quoting Fed. R. Civ. P. 23(d)).

Here, Owen agreed to give the Zotec presentation as a courtesy. (Doc. # 3268-2 ¶ 33). To be clear, the presentation he gave appears to have contained some misleading elements[2] and certainly he expressed his extremely negative opinion about the Provider Settlement, although he was complimentary about Co-Lead Provider Class Counsel personally. At the time he gave his presentation, the court-approved notice had already gone out to Provider Settlement Class Members. Thus, they had independently received an accurate and official communication about the settlement. Owen did not give a false deadline to opt out of the settlement or instruct the participants not to communicate with class counsel.

---

[2] The court need not reference the details of those inaccuracies or problematic statements here since the parties and court did address some of them during the hearing.

To be fair, Owen did not have advance notice that the presentation would be either recorded or posted online. (*Id*. at ¶ 35). In his Declaration, Owen states that he has no intention of making further such presentations *to non-clients*. (Doc. # 3268-2 at ¶ 35) (emphasis added). Polsinelli attorney Matthew Murer's Declaration also states that "[n]o Polsinelli Lawyer will make any further public presentations about the BCBS Settlement *to non-clients*."[3] (Doc. # 3268-1 ¶ 27).

As to Provider Plaintiffs' request for a corrective notice, the court has been made aware that Provider Plaintiffs' leadership have been conducting regular outreach to Provider Settlement Class Members about the Provider Settlement. Co-Lead Provider Class Counsel have been in daily contact with Providers and Providers' organizations describing the monetary and injunctive benefits of the settlement. The Settlement Administrator and one of Co-Lead Provider Class Counsel's partners have been conducting weekly presentations with Providers about completing a claim form. At this point, corrective notice to the class may not only be confusing but also may call greater attention than necessary to the problematic portions of Owen's presentation. Moreover, at the hearing, Co-Lead counsel for Providers agreed that if there was a disqualification, corrective notice was not needed. (Doc. # 3284 at 38). Therefore, the court concludes that the better course of action would be for Providers counsel and the Settlement Administrator to continue their regular outreach to Providers about the specific terms of the settlement.

## V.   Conclusion

For all of the reasons discussed above, Provider Plaintiffs' Motion to Disqualify Polsinelli, P.C. and for Corrective Notice (Doc. # 3245) is **GRANTED IN PART AND DENIED IN PART**.

---

[3] Limiting their activities and advice to only current clients does not avoid the conflict issue. To the extent that Owen or any other Polsinelli attorney counsels any providers, current clients included, to opt out of the Provider Settlement, they are taking a position that is materially adverse to all of the Blue entities who negotiated the settlement, including BCBS-AL, in *the same matter* in which their partners from Maynard represented BCBS-AL.

1. The Motion to Disqualify Polsinelli, P.C. is **GRANTED** to the extent that Polsinelli, P.C., including attorney Dan Owen, is **DISQUALIFIED** from advising any Provider Class Member whether to object to or opt out of the pending Provider Settlement in this MDL, otherwise representing any Provider in opt-out litigation against BCBS-AL, or otherwise taking a position against BCBS-AL's material interests related to any claims asserted in the MDL.

2. The Motion for Corrective Notice is **DENIED**. Nonetheless, Provider Plaintiffs' counsel and the Settlement Administrator may continue and/or enhance their ongoing outreach about the Provider Settlement.

**DONE** and **ORDERED** this February 26, 2025.

_____
**R. DAVID PROCTOR**
CHIEF U.S. DISTRICT JUDGE