# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **IN RE: BLUE CROSS BLUE SHIELD** ) | |
| **ANTITRUST LITIGATION** ) | Master File No. 2:13-CV-20000-RDP |
| ) | |
| **(MDL No. 2406)** ) | **OPPOSED** |

# ANTHEM HEALTH PLANS OF VIRGINIA, INC.'S
# MOTION TO ENFORCE THE COURT'S INJUNCTION
# REGARDING SUBSCRIBER CLASS MEMBER'S RELEASED CLAIMS

**TABLE OF CONTENTS**

**Page(s)**

INTRODUCTION .................................................................................................................. 1

BACKGROUND .................................................................................................................... 3

    1.    The Facts Alleged and Litigated in the MDL Subscriber Track. ............................ 3

    2.    The Subscriber Settlement Agreement and Final Approval Order. ....................... 4

    3.    The Virginia Action. ............................................................................................... 6

    4.    OMI Declines to Cease and Desist. ........................................................................ 7

ARGUMENT .......................................................................................................................... 7

    I.    THE COURT HAS AUTHORITY TO ENJOIN OMI. ........................................... 7

    II.    OMI'S BLUE SYSTEM CLAIMS WERE RELEASED BY THE SETTLEMENT AGREEMENT. .............................................................................. 8

        1.    Anthem BCBS is a Releasee Under the Subscriber Settlement Agreement. ............................................................................................... 8

        2.    OMI is a Releasor Under the Subscriber Settlement Agreement. .............. 9

        3.    OMI's Blue System Claims are Released Claims. ..................................... 9

            a.    OMI's Blue System Claims are related to the factual predicate of the Subscriber Actions. ............................................... 9

            b.    OMI's Blue System Claims are relate to issues raised in pleadings and motions. .................................................................. 10

            c.    OMI's Blue System Claims are not exempt from the release because they are styled as ERISA and state-law claims. ............... 12

    III.    OMI SHOULD BE ENJOINED FROM PURSUING RELEASED CLAIMS. .... 13

CONCLUSION ..................................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Battle v. Liberty Nat'l Life Ins.*,
   877 F.2d 877 (11th Cir. 1989) ...............................................................................................13

*Behenna v. Blue Cross Blue Shield Ass'n, et al.*,
   144 S. Ct. 2686 (June 24, 2024)................................................................................................6

*In re Blue Cross Blue Shield Antitrust Litig.*,
   85 F.4th 1070 (11th Cir. 2023) ...............................................................................................10

*Health Care Serv. Corp. v. Kolbusz*,
   594 F.3d 814 (11th Cir. 2010) ................................................................................................12

*Home Depot USA, Inc. v. Blue Cross Blue Shield Ass'n, et al.*,
   144 S. Ct. 2687 (June 24, 2024) (*denying petition for writ of certiorari*) ................................6

*In re Managed Care*,
   No. 00-1334-MD, 2009 WL 413510 (S.D. Fla. Feb. 19, 2009) ................................................8

*Melito v. Experian Mktg. Sols., Inc.*,
   923 F.3d 85 (2d Cir. 2019)......................................................................................................12

*Musselman v. Blue Cross & Blue Shield of Ala.*,
   No. 13-20050-CV, 2013 WL 4496509 (S.D. Fla. Aug. 20, 2013) ............................................8

*Thomas v. Blue Cross and Blue Shield Ass'n*,
   594 F.3d 814 (11th Cir. 2010) ................................................................................................10

*Wesch v. Folsom*,
   6 F.3d 1465 (11th Cir. 1993) ....................................................................................................7

**Statutes**

28 U.S.C. § 1651...............................................................................................................................7

28 U.S.C. § 2283.............................................................................................................................13

Anthem Health Plans of Virginia, Inc., d/b/a Anthem Blue Cross Blue Shield ("Anthem BCBS"), respectfully submits this Opposed Motion to Enforce the Court's Injunction Regarding Subscriber Class Member's Released Claims, which was included in this Court's final order approving the Subscriber Settlement Agreement. (ECF No. 2931 (the "Final Approval Order" or "FAO"), at 88.)[1]  Specifically, Anthem BCBS requests that the Court exercise its exclusive jurisdiction over the Subscriber Settlement Agreement and issue an order directing Owens & Minor, Inc. and Owens & Minor Flexible Benefits Plan (together, "OMI") to either (i) dismiss its Released Claims filed on February 7, 2025, in *Owens & Minor, Inc., et al. v. Anthem Health Plans of Virginia, Inc.*, Case No. 3:24-CV-820 (E.D. Va.) (the "Virginia Action") or (ii) show cause why it should not be held in contempt for violating the injunction. Counsel for Anthem BCBS and counsel for OMI have held multiple meet and confers and exchanged correspondence about this issue, but were unable to resolve it. Counsel for OMI contends that none of OMI's claims asserted in the Virginia Action are Released Claims.

## INTRODUCTION

Anthem BCBS—along with the dozens of other Blue Plans across the country—entered into a class-wide settlement agreement (the "Subscriber Settlement Agreement") in this MDL to completely resolve the class claims asserted by the Subscriber Plaintiffs, who had alleged that the system developed and implemented by the Blues violated antitrust laws and caused members of the Subscriber Class to be "overcharge[d]" for health insurance and administrative services. (FAO at 58.) The peace Anthem BCBS (and the other Blue Plans) bargained for came at a steep price: $2.67 billion and significant structural changes to the Blues' business practices. Indeed, in the Final Approval Order, the Court remarked that the settlement amount "represents one of the largest

---

[1] Capitalized terms used but not otherwise defined herein have the meaning ascribed to them in the Final Approval Order.

1

antitrust class settlements in history" and the injunctive relief was "historic and substantial." (*Id.* at 3, 39.) But one member of the Subscriber Class now is seeking to disturb that peace—OMI.

OMI is a former administrative services only ("ASO") customer of Anthem BCBS. In the Virginia Action, OMI challenges the Blue System. It has brought ERISA and state-law claims against Anthem BCBS alleging, among other things, that Anthem BCBS and other Blues "assigned themselves geographic service areas free of competition from other Blues," which allowed them to charge OMI "excessive fees" under the BlueCard program. (Ex. A, OMI Amended Complaint ("Complaint") ¶¶ 58 & 63.) That alleged theory is familiar. In the MDL, after ASO plans were added to the Subscriber Track in November 2020, the operative complaint likewise challenged "various fees charged to a self-funded account" as a result of the Blues' alleged conduct, (ECF No. 2616 ("FCAC") ¶¶ 2-3), which included exclusive-service areas, related "implementing conduct," and BCBSA "rules and regulations," (i*d.* ¶¶ 11, 414-415).

OMI's attempt to re-assert claims based on part of the factual predicate for the Subscriber Class claims in the MDL is plainly barred under the broad release negotiated in Subscriber Settlement Agreement. OMI could have opted out of the settlement and release and challenged the BlueCard program, including allegedly excessive BlueCard fees. But OMI declined to do so. As explained below, OMI is therefore enjoined by the Final Approval Order from asserting these claims.

This Court has exclusive jurisdiction over "enforcement regarding Release Claims" under the Subscriber Settlement Agreement. (FAO ¶ 24.) Anthem BCBS brings this motion to respectfully request that the Court enforce the Final Approval Order and direct OMI to dismiss its Released Claims in the Virginia Action. Alternatively, the Court should order OMI to show cause why it should not be held in contempt for violating the injunction.

**BACKGROUND**

**1. The Facts Alleged and Litigated in the MDL Subscriber Track.**

On November 2, 2020, the Subscriber Class filed their Fourth Amended Consolidated Class Action Complaint (the "Subscriber Complaint"). That Complaint added a new category of subscribers: ASO groups. (*See* FCAC ¶ 2.) Accordingly, while prior subscriber complaints had focused solely on allegedly inflated premiums paid by fully insured groups, the 2020 Subscriber Complaint expanded the class claims to seek damages based on "various fees charged to a self-funded account" that were allegedly excessive. (*Id.* ¶¶ 2, 3.)

The Subscriber Complaint challenged the structure of the Blues' business model and alleged that the Blue Plans are "potential competitors with each other" who had conspired "to allocate markets in violation of the prohibitions of the Sherman Act" through the use of, among other things, Exclusive Service Areas ("ESAs"). (*Id.* ¶¶ 1, 3.) The Subscriber Complaint also challenged the Blues' "implementing conduct," including "the rules and regulations of BCBSA." (*Id.* ¶ 446.) As OMI acknowledges, those "rules and regulations" include the BlueCard program. (*See* Ex. A, Compl. ¶ 62 ("The Association requires all Blues to participate in the BlueCard program.").) Because Blues generally cannot contract with providers outside of their ESAs, the BlueCard program is necessary to allow Blues to offer in-network discounts to their members when they receive medical services outside of their Blue Plan's ESA. In the Blues system, the "various fees charged to a self-funded account," (FCAC, ¶ 3), may include fees associated with BlueCard claims, (*see* Ex. A, Compl. ¶¶ 62-65). The BlueCard program also may involve use of host plan variance accounts to process large volumes of claims payments. (*See id.* at Ex. A, Inter-Plan Arrangements Schedule, § A.2.)

The BlueCard program was not only part of the factual predicate of the expanded 2020 Subscriber Complaint, but was also the subject of discovery during the MDL proceedings. For

3

example, in 2017, the Blues argued that BlueCard illustrated the pro-competitive benefits of ESAs and the Blue Rules generally. (*See* Def.'s Mem. Supp. Summ. J. at 29-33 (N.D. Ala July 17, 2017), ECF No. 1353-1.) Subscribers actively litigated that point. (*See, e.g.*, Subscriber Opp. To Defs' MSJ, ¶ 33 (N.D. Ala. Aug. 18, 2017), ECF No. 2016-1 ("It is disputed that: (a) BlueCard is the only means of providing efficiencies to Subscribers, and b) that the ESAs and LBE/NBE rules are required for the provision of BlueCard."); *see also id.*, ¶¶ 22, 28.) And Subscribers later sought discovery on the BlueCard system. Among other things, Subscribers included BlueCard in their proposed search terms for the Blues. (*See, e.g.*, Letter Brief at 9 (N.D. Ala. Nov. 16, 2016), ECF No. 847-5 (Subscriber proposed search terms, including "(Blue w/2 Card) or "Bluecard)"); *see also* Discovery Order No. 37 at 2, n.2 (N.D. Ala. Jan. 11, 2017) (search terms include BlueCard), ECF No. 943.) Discovery orders applicable to the Subscriber Track similarly addressed non-party subpoenas seeking "[d]ocuments showing the benefits, efficiencies, or advantages of accepting Blue Cross Blue Shield insurance (including BlueCard)." (Discovery Order No. 34 at 4 (N.D. Ala. Nov. 2, 2016), ECF No. 832.; *see also* Discovery Order No. 60 at 3 (N.D. Ala. Aug. 1, 2017) (subpoenas for BlueCard documents), ECF No. 1393.) The Subscriber Track also included depositions of Defendant CEOs regarding, among other things, "the BlueCard program." (Discovery Order No. 46 at 4 (N.D. Ala. Apr. 25, 2017), ECF No. 1100 at 4.)

### 2. The Subscriber Settlement Agreement and Final Approval Order.

In October 2020, the Blue Plans entered into the Subscriber Settlement Agreement to resolve the claims asserted against them by the Subscriber Class. (*See* Settlement Agreement (N.D. Ala. Oct. 30, 2020), ECF No. 2610-2 ("SSA").) Following preliminary approval, notice to the class, and the opportunity for absent class members to opt out of the settlement, the Court entered the Final Approval Order in August 2022. (*See generally* FAO.)

The Final Approval Order permanently enjoins "Releasors" from:

> commencing, maintaining, prosecuting, causing, cooperating with, advising to be commenced or maintained, or encouraging any action, suit, proceeding, or claim in any court, tribunal, administrative agency, regulatory body, arbitrator, or other body in any jurisdiction against any Releasee **based in whole or in part upon, arising out of, or in any way connected or related to any Released Claim**.

(*See id*. ¶ 18 (incorporating SSA ¶ 32) (emphasis added).) "Releasor" is defined to mean, in relevant part, "each and every Settlement Class Member," which means "any person or entity within the definition of the Injunctive Relief Class or Damages Class." (SSA § A(1)(llll), (www).) Both the Injunctive Relief Class and Damages Class encompass "all . . . Self-Funded Accounts," which "means any employer . . . ERISA plan . . . or group . . . that purchases, is covered by, participates in, or is enrolled in a Self-Funded Health Benefit Plan." (*Id*. § A(1)(v), (pp), (ccc).) Self-Funded Health Benefit Plan is defined to include "administrative services contracts or accounts." (*Id*. § A(1)(ffff).)

The Subscriber Settlement Agreement broadly defines Released Claims to include:

> ***any and all known and unknown claims***, causes of action, cross-claims, counter-claims, charges, liabilities, demands, judgments, suits, obligations, debts, setoffs, rights of recovery, or liabilities ***for any obligations of any kind whatsoever (however denominated)***, whether class or individual, in law or equity or arising under constitution, statute, regulation, ordinance, contract, or otherwise in nature— ***including without limitation any and all*** actual or potential actions, losses, judgments, fines, debts, liabilities (including joint and several), liens, causes of action, demands, rights, damages, penalties, punitive damages, costs, expenses (including attorneys' fees and legal expenses), indemnification claims, contribution claims, obligations, compensation, and ***claims for damages*** or for equitable or injunctive relief ***of any nature*** (including but not limited to antitrust, RICO, contract, tort, conspiracy, unfair competition, or unfair trade practice claims)— known or unknown, suspected or unsuspected, asserted or unasserted, direct or derivative, ***based upon, arising from, or relating in any way to***: (i) ***the factual predicates of the Subscriber Actions (including but not limited to the Consolidated Amended Class Action Complaints filed in the Northern District of Alabama)*** including each of the complaints and prior versions thereof, or any amended complaint or other filings therein ***from the beginning of time through the Effective Date***; [*or*] (ii) ***any issue raised in any of the Subscriber Actions by pleading or motion*** . . . For purposes of clarity, Released Claims include, but are not limited to, claims that arise after the Effective Date.

5

(SSA § (A)(1)(uuu) (emphasis added); *see* FAO ¶ 16.)[2]  As the Court recognized in the Final Approval Order, this broad release encompasses not only claims that existed at the time of the Effective Date of the Subscriber Settlement Agreement, but also claims that arose after "from continued adherence to the existing arrangements that are the 'factual predicates' of the Subscribers Actions." (FAO at 56.)  The Court retained exclusive jurisdiction over disputes relating to the Subscriber Settlement Agreement, "including but not limited to enforcement regarding Released Claims."  (FAO, ¶ 24.)

### 3. The Virginia Action.

OMI initiated the Virginia Action on November 18, 2024, in the United States District Court for the Eastern District of Virginia, against Anthem BCBS, asserting individual claims under ERISA and state law.  Anthem BCBS moved to dismiss, noting the Released Claims issue. (*See* Def.'s Mem. ISO Mot. to Dismiss, No. 3:24-cv-00820-REP, at n.13 (E.D. Va. Jan. 17, 2025), ECF No. 14.)  OMI then filed an Amended Complaint on February 7, 2025. (*See generally* Ex. A, Compl.)  In its Complaint, OMI challenges the Blues System ("Blues System Claims").  OMI alleges that Anthem BCBS and the other Blue Plans across the country effectively conspired to "overcharge[e] self-funded health plans" through the BlueCard program, by having "assigned themselves geographic service areas free of competition from other Blues."  (*Id.* ¶¶ 57-58.)  Because of exclusive service areas, "a different Blue controls [areas outside of Virginia], has discount arrangements with providers already in place, and extracts exorbitant fees from [Anthem BCBS]'s administered plans" through the BlueCard program. (*Id.* ¶¶ 57-58.)  Specifically, OMI challenges that as part of the BlueCard program, a host Blue may charge an ASO plan certain

---

[2]   The Effective Date of the Subscriber Settlement Agreement is June 24, 2024. (*See* SSA ¶ 8(a); *Home Depot USA, Inc. v. Blue Cross Blue Shield Ass'n, et al.*, 144 S. Ct. 2687 (June 24, 2024) (*denying petition for writ of certiorari*); *Behenna v. Blue Cross Blue Shield Ass'n, et al.*, 144 S. Ct. 2686 (June 24, 2024) (same).)

access fees identified in that plan's ASO agreement with the home Blue. (*See id*. ¶ 63 & Ex. A at Inter-Plan Arrangements Schedule, § H.) OMI also challenges that under the BlueCard program, the host Blue may use variance accounts as a means of processing large volumes of claims, some of which may be paid at estimated or average prices. (*See id.* ¶ 64 & Ex. A at Inter-Plan Arrangements Schedule, § A.2.) In its prayer for relief, OMI seeks recovery of the fees or other charges it paid under the BlueCard program "by virtue of the misconduct" it alleges Anthem BCBS to have engaged in. (*See id*. ¶ 122.)

### 4. OMI Declines to Cease and Desist.

After meeting and conferring and exchanging correspondence regarding the scope of the Subscriber Settlement Release, OMI, through counsel, informed Anthem BCBS that OMI does not agree that its Blue System Claims are Released Claims and intends to continue pursing them in the Virginia Action.

## ARGUMENT

The Court should enforce the injunction in the Final Approval Order against OMI with respect to the Released Claims asserted in the Virginia Action. The Court has the authority under the All Writs Act to enjoin the claims challenging the Blue System, including the BlueCard program, which are Released Claims under the terms of the Subscriber Settlement Agreement. Enjoining OMI's claims is essential to protecting the "historic" relief achieved under the Subscriber Settlement Agreement and Final Approval Order. (FAO at 3.)

### I.    THE COURT HAS AUTHORITY TO ENJOIN OMI.

The All-Writs Act, 28 U.S.C. § 1651, permits the Court to issue an injunction to "avoid relitigation of questions once settled between the same parties," as well as "to protect or effectuate [its] judgments." *Wesch v. Folsom,* 6 F.3d 1465, 1470 (11th Cir. 1993). Thus, the Court has authority to enforce its injunction against OMI in order to protect the Subscriber Settlement

7

Agreement. *See, e.g.*, *In re Managed Care*, No. 00-1334-MD, 2009 WL 413510, at *7 (S.D. Fla. Feb. 19, 2009). Indeed, this Court is the only court that may enforce the settlement release, as it retains exclusive jurisdiction over the subscriber settlement agreement. (*See* FAO ¶ 24.)

## II. OMI'S BLUE SYSTEM CLAIMS WERE RELEASED BY THE SETTLEMENT AGREEMENT.

Through its wholesale incorporation of Paragraph 32 of the Subscriber Settlement Agreement, the Final Approval Order expressly prohibits Releasors from initiating lawsuits against any Releasee for any Released Claim. (*See* FAO at 88.) Therefore, the Court "must grant [Anthem BCBS's] motion if three conditions exist:" (i) Anthem BCBS is a Releasee; (ii) OMI is a Releasor; and (iii) the claims relating to the Blues System in the Virginia Action are Released Claims. *In re Managed Care*, 2009 WL 413510 at *3; *see also Musselman v. Blue Cross & Blue Shield of Ala.*, No. 13-20050-CV, 2013 WL 4496509, at *4 (S.D. Fla. Aug. 20, 2013). All three conditions are met here.

### 1. Anthem BCBS is a Releasee Under the Subscriber Settlement Agreement.

There can be no dispute that Anthem BCBS is a Releasee under the Subscriber Settlement Agreement. Releasee is defined to mean, in relevant part, the "Settling Individual Blue Plans . . . and . . . any and all of their . . . subsidiary companies." (SSA § A(1)(vvv).) A Settling Individual Blue Plan is defined as a "Primary Licensee," which includes Anthem, Inc. (*Id.* § A(1)(ppp), (qqqq), App. A.) Anthem BCBS is a wholly owned subsidiary of Anthem, Inc. (recently renamed to Elevance Health, Inc.), and is therefore a Releasee. (*See* Ex. B, Rule 7.1 Financial Interest Disclosure Statement) ("Anthem Health Plans of Virginia, Inc. d/b/a Anthem Blue Cross and Blue Shield is a wholly-owned subsidiary of Anthem Southeast, Inc., which is a wholly-owned subsidiary of Elevance Health, Inc. (f/k/a Anthem, Inc.), which is a publicly held corporation.")

### 2. OMI is a Releasor Under the Subscriber Settlement Agreement.

Similarly, there can be no dispute that OMI is a Releasor under the Subscriber Settlement Agreement. As shown by the Administrative Services Agreement attached to the complaint in the Virginia Action, OMI engaged Anthem BCBS for the provision of administrative services with respect to its employee group health plan as of June 1, 2017. (*See* Ex. A, Compl. at Ex. A.) Thus, OMI is indisputably a Self-Funded Account, which makes OMI a Settlement Class Member, and therefore a Releasor, under the terms of the Subscriber Settlement Agreement. (*See supra* at 5.) Moreover, OMI never opted out of the Subscriber Settlement Agreement. (*See* Decl. of Jennifer M. Keough, ¶¶ 4-5 & Ex. A. (N.D. Ala. June 24, 2022), ECF No. 2928.)

### 3. OMI's Blue System Claims are Released Claims.

OMI's claims challenging alleged overcharges associated with the BlueCard program fall squarely within the scope of claims released by the Subscriber Settlement Agreement. (*See, e.g.*, Ex. A, Compl. ¶¶ 56-65, 98.) OMI premises these claims on facts that were part of the factual predicate for the MDL Subscriber Actions. The Blues' alleged conspiracy to "assign[] themselves geographic services areas," (*Id.* ¶¶ 57-58), and the related BlueCard program were raised in the Subscriber Complaint, motions filed throughout the Subscriber Track proceedings, and discovery sought in the Subscriber Track. Further, it is of no moment that OMI has asserted these claims under ERISA and state-law causes of action, rather than the antitrust laws, or that those claims have additional elements. That does not save them from being "Released Claims."

    a. <u>OMI's Blue System Claims are related to the factual predicate of the Subscriber Actions.</u>

OMI's Blue System Claims in the Virginia Action are "based upon, aris[e] from, or relat[e]" to "the factual predicates of the Subscriber Actions." (SSA § (A)(1)(uuu).) As the Eleventh Circuit recognized in analyzing the definition of Released Claims under the Subscriber

Settlement Agreement, the release extends to all claims "'in any way related' to the factual predicate of the underlying litigation." *In re Blue Cross Blue Shield Antitrust Litig.*, 85 F.4th 1070, 1091 (11th Cir. 2023) (quoting *Thomas v. Blue Cross and Blue Shield Ass'n*, 594 F.3d 814, 817 (11th Cir. 2010)). "It is irrelevant that the [new claims] depend on a different legal theory than the claims asserted in the class action or require [the Releasee] to prove matters in addition to or different from the claims asserted in the class action." *Thomas*, 594 F.3d at 822 (finding claims "related to concerns addressed in [a prior] class action" were released).

OMI's challenge to the Blues System in the Virginia Action clearly relates to the "factual predicate" underlying Subscriber Plaintiffs' antitrust claims in the MDL. OMI alleges that the "Blues that own the Association assigned themselves geographic service areas free of competition from other Blues" and use those Exclusive Service Areas to "extract exorbitant fees from [Anthem BCBS's] administered plans." (Ex. A, Compl. ¶ 58; *see also id.* ¶¶ 56-65.) These allegations map directly onto those made in the Subscriber Complaint. (*See* FCAC ¶¶ 10-12 (describing the Blues' alleged conspiracy to "unlawfully divide and allocate the geographic markets and limit competition for commercial health benefit products" that resulted in "inflated . . . ASO fees."; ¶ 500 (same).) Moreover, the Subscriber Plaintiffs specifically challenged "the rules and regulations of BCBSA," (FCAC ¶ 446), which, as OMI acknowledges, includes the BlueCard program. (*See* Ex. A, Compl. ¶ 62 ("The Association requires all Blues to participate in the BlueCard program.").)

    b.  <u>OMI's Blue System Claims relate to issues raised in pleadings and motions.</u>

Released Claims encompasses not only those claims relating to the factual predicate of the Subscriber Actions, but also "any issue raised in any of the Subscriber Actions by pleading or motion." (SSA § (A)(1)(uuu).) The BlueCard program was raised in numerous pleadings and motions in the Subscriber Actions and was the subject of Subscriber discovery. OMI's Blue

10

System Claims, including the challenge to BlueCard fees, are therefore Released Claims for this reason as well.

First, the Subscriber Complaint asserts that the Blues have charged "inflated" "ASO fees"—defined broadly to mean the "various fees charged to a self-funded account." (FCAC ¶¶ 2, 3, 12.) And as OMI alleges in the Virginia Action, "self-funded plans employing a Blue as a third-party administrator" are "require[ed]" "to participate in the BlueCard program" and pay the associated fees. (Ex. A, Compl. ¶ 62.)

Second, Subscribers specifically litigated the BlueCard program in the Subscriber Track. (*See, e.g.*, Def.'s Mem. Supp. Summ. J., ECF No. 1353-1 at 29-33; Subscriber Opp. to Defs' MSJ, ECF No. 2016-1, ¶¶ 22, 28, 33.) The Subscriber track also involved discovery into the BlueCard system, including through search terms that Subscribers proposed. (*See, e.g.*, Letter Brief, ECF No. 847-5, at 9 (search terms including BlueCard); Discovery Order No. 34, ECF No. 832 at 4, 11 (subpoenas for BlueCard-related documents); Discovery Order No. 37 at 2, n.2 (N.D. Ala. Jan. 11, 2017) (search terms include BlueCard), ECF No. 943; Discovery Order No. 46 at 4 (N.D. Ala. Apr. 25, 2017) (subscribers sought additional time for CEO depositions regarding "the BlueCard program"), ECF No. 1100 at 4; Discovery Order No. 60 at 3 (N.D. Ala. Aug. 1, 2017) (subpoenas for BlueCard documents), ECF No. 1393.)

As these pleadings and discovery efforts confirm, the BlueCard program was very much part of the factual context of the MDL Subscriber Track proceedings. The Blues bargained for a broad release covering all claims related to that factual context, to ensure that they could put Subscribers' challenges to the Blues System behind them. The Court should not allow OMI to now circumvent that exhaustively negotiated deal, re-asserting claims that could have been brought before based on the facts at issue in the MDL.

    c. <u>OMI's Blue System Claims are not exempt from the release because they are styled as ERISA and state-law claims.</u>

That OMI couches its Blue System Claims under the guise of ERISA and Virginia state law does not bring them outside the reach of being Released Claims under the terms of the Subscriber Settlement Agreement. Broad litigation releases like the one found in the Subscriber Settlement Agreement encompass claims not directly asserted by the Subscriber Plaintiffs. As the Eleventh Circuit reasoned when interpreting a broad release in a large class action, "[i]t is irrelevant that [the plaintiff's] claims depend on a different legal theory than the claims asserted in the class action or require [the plaintiff] to prove matters in addition to or different from the claims asserted in the class action." *Health Care Serv. Corp. v. Kolbusz*, 594 F.3d 814, 822 (11th Cir. 2010). This includes claims that were not specifically asserted in the underlying action. (*See* FAO at 53-54 (citing *Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 95-96 (2d Cir. 2019)).). In overruling an objection on the breadth of the release raised by one objector in the Final Approval Order, the Court cited several cases standing for this same proposition. *See id*. (collecting cases).

Indeed, ERISA claims were specifically contemplated and addressed in the Subscriber Settlement Agreement and Final Approval Order. The definition of Released Claims states explicitly that:

> Any claim, however asserted, challenging a Releasee's administration of claims under a benefit plan, based in whole or in part on the factual predicates of the Subscriber Actions or any other component of the Release Claims discussed in this Paragraph, is released.

The Court confirmed this provision in response to concerns about the release raised by the Department of Labor, stating that "the Settlement and release make clear that ERISA claims *unrelated* to the issues raised in this litigation *are not released*." *Id*. at 78. In other words, the Court has already recognized ERISA claims that *are related* to the issues raised in this action *are released*.

Accordingly, the ERISA and state-law theories under which OMI has asserted its BlueCard claims—and the additional facts that those claims may require OMI to prove—are irrelevant to whether they fall within the definition of Released Claims. For all of the reasons discussed above, they do.

### III. OMI SHOULD BE ENJOINED FROM PURSUING RELEASED CLAIMS.

The Court should enjoin OMI from prosecuting its Blue System Claims. Courts have invoked the All Writs Act to enforce and protect judgments entered pursuant to class action settlements similar to the Final Approval Order in this case. In *Battle v. Liberty Nat'l Life Ins.,* 877 F.2d 877, 879–80 (11th Cir. 1989), for example, the Northern District of Alabama entered a final judgment in an antitrust action pursuant to a class action settlement agreement. When certain members of the settlement class subsequently brought a state court lawsuit against one of the *Battle* defendants for breach of contract and fraud, the district court enjoined them from pursuing that lawsuit. *See id.* at 880. The Eleventh Circuit upheld that injunction on appeal, stating that "[f]ederal law permits a district court to enjoin [] court actions 'where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.' Both of these situations are present in this case." *Id.* (citing 28 U.S.C. § 2283).

Similarly here, an injunction is necessary to preserve the Court's continuing jurisdiction over the Subscriber Settlement Agreement and to protect the Final Approval Order. This case was a complex, consolidated nationwide class action, in which the parties reached a comprehensive settlement. As part of that settlement, the parties resolved a carefully defined universe of Released Claims; the Court enjoined Subscriber Class Members from litigating Released Claims, (*see* SSA § (A)(1)(uuu); FAO ¶ 16), and the Court retained jurisdiction to ensure compliance with its Final Approval Order, *see* (SSA § (I)(56); FAO ¶ 24).

13

By asserting Released Claims in the Virginia Action, OMI is interfering with the Court's jurisdiction and the resolution of the Subscriber Class Plaintiffs' claims. Thus, the Court should exercise its authority under the All Writs Act to enjoin OMI from continuing to prosecute Released Claims and order it to dismiss its Blue System Claims from the Virginia Action.

## CONCLUSION

For all of the reasons stated herein, OMI's Blue System Claims are "Released Claims" as defined by the Final Approval Order and Anthem BCBS's Motion to Enforce the Court's Injunction Order should therefore be granted. A proposed order granting this Motion is submitted herewith.

Dated: March 13, 2025                                      Respectfully submitted,

*/s/ E. Desmond Hogan*
Craig A. Hoover
E. Desmond Hogan
Justin Bernick
Elizabeth Jose
HOGAN LOVELLS US LLP
Columbia Square
555 13th Street, N.W.
Washington, DC 20004
Tel: (202) 637-5600
Fax: (202) 637-5910
craig.hoover@hoganlovells.com
desmond.hogan@hoganlovells.com
justin.bernick@hoganlovells.com
elizabeth.jose@hoganlovells.com

Cavender C. Kimble
BALCH & BINGHAM LLP
1901 6th Avenue North, Suite 1500
Birmingham, AL 35203-4642
Tel: (205) 226-3437
Fax: (205) 488-5860
ckimble@balch.com

*Counsel for Anthem Health Plans of Virginia, Inc. d/b/a Anthem Blue Cross and Blue Shield*

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 13, 2025, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record. I further certify that a true and correct copy of the foregoing was served via electronic mail and Federal Express overnight delivery on the following:

COMMONWEALTH LAW GROUP
Seth Carroll
Matthew Lastrapes
3311 West Broad Street
Richmond, VA 23230
Phone: (804) 551-9650
Facsimile: (866) 238-6415
scarroll@hurtinva.com
mlastrapes@hurtinva.com

PLEVIN & GALLUCCI COMPANY LPA
Frank Gallucci, III
55 Public Square
Suite 2222
Cleveland, OH 44113
Phone: 2168610804
fgallucci@pglawyer.com

THE LANIER LAW FIRM, P.C.
W. Mark Lanier
Benjamin Major
Ryan D. Ellis
Julian Cokic
10940 W. Sam Houston Pkwy N.
Suite 100
Houston, Texas 77064
Telephone: (713) 659-5200
Facsimile: (713) 659-2204
WML@lanierlawfirm.com
Ben.Major@lanierlawfirm.com
Ryan.Ellis@lanierlawfirm.com
Julian.Cokic@lanierlawfirm.com

*Counsel for Owens & Minor, Inc. and Owens & Minor Flexible Benefits Plan*

/s/ *E. Desmond Hogan*
E. Desmond Hogan

1