# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

|  |  |
|---|---|
| IN RE:  BLUE CROSS BLUE SHIELD  }  }  ANTITRUST LITIGATION  (MDL NO.: 2406)  }  }  }  } | Master File No.: 2:13-CV-20000-RDP  This order relates to the Provider Track |

## ORDER

On December 4, 2024, this court preliminarily approved a Settlement of Provider Plaintiffs' claims in this MDL, which was negotiated by Provider Plaintiffs and Defendants. (Doc. # 3225). The deadline to opt out or object to the Settlement was March 4, 2025. (*Id*. at 56). Since March 4, 2025, the Settlement Administrator and Settlement Notice Administrator have been developing lists of Class Members either objecting to or opting out of the Settlement, and some of this information has been shared with the court.

A current snapshot of that information indicates that, as of March 24, 2025, there had been 15,448 requests for exclusion. Approximately 71% of that number are represented by counsel. The current estimate is that the vast majority of those opt outs (all but 2%) are represented by four firms: Paul Hastings (who represents 53% of all opt outs); K&L Gates (9%); McKool Smith (5%); and Bartko Pavia (3%). Of the 29% of opt outs that (at least based on the information currently available to the court) do not appear to be represented, the vast majority of those (*i.e*., some 25.97% of all opt outs) were filed by providers connected to Franciscan Alliance. That group has indicated that they do not currently plan to bring any action related to this multidistrict litigation.

It has come to the court's attention that some (if not many) of the opt outs may be receiving third party funds in connection with their requests for exclusion, and that one or more litigation funders has solicited Class Members to opt out. The court understands that eight (8) opt-out lawsuits have been filed, and that those cases may involve Plaintiffs receiving litigation financing.

The court in no way seeks to burden the opt-out right. However, the court also acts "as a fiduciary for the class" and is required to evaluate the fairness, adequacy, and reasonableness of the Settlement for the Class Members remaining in the class. *Ponzio v. Pinon*, 87 F.4th 487, 494-95 (11th Cir. 2023) (quoting *In re Equifax Inc. Customer Data Security Breach Litigation*, 999 F.3d 1247, 1265 (11th Cir. 2021)) (internal quotations omitted).

Federal Rule of Civil Procedure 23(e)(2) provides that a district court may approve a class action settlement that binds class members "only after a hearing and only on finding that it is fair, reasonable, and adequate[.]" *Ponzio*, 87 F.4th at 494 (citing Fed.R.Civ.P. 23(e)(2)).

The post-2018 version of Rule 23(e)(2), in subsections (A)-(D), sets out four core concerns the district court must consider in making the fair-adequate-reasonable determination: (A) whether "[t]he class representatives and class counsel adequately represented the class"; (B) whether "the proposal was negotiated at arm's length"; (C) whether "the relief provided for the class is adequate" ("taking into account" the "costs, risks and delay of trial and appeal," "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," the "terms of any proposed award of attorney's fees, including timing of payment," and "any agreement required to be identified under Rule 23(e)(3)"); and (D) whether "the proposal treats class members equitably relative to each other." *Ponzio*, 87 F.4th at 494 (quoting Rule 23(e)(2) and citing Rubenstein, 4 Newberg on Class Actions § 13:58).

Before the 2018 amendment to Rule 23(e)(2), the Eleventh Circuit "also instructed district courts to consider several additional factors called the *Bennett* factors." *Id*. (quoting *In re Equifax, Inc*., 999 F.3d at 1273 (in turn citing *Bennett v. Behring Corp*., 737 F.2d 982, 986 (11th Cir. 1984))). The *Bennett* factors are:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett*, 737 F.2d at 986.

In *Ponzio*, the Eleventh Circuit addressed the effect of the 2018 amendment to Rule 23(e)(2) on the remaining applicability of the *Bennett* factors. 87 F.4th at 494-95. It held "that the *Bennett* factors can, where appropriate, complement [the] core concerns" of Rule 23(e)(2). *Id*. at 495. In particular, the court noted that *Bennett* factor (5), which calls for the district court to assess the substance and amount of opposition to the settlement, not only goes to fairness of the settlement generally, but also may inform the court "whether the proposal treats class members equitably relative to each other." *Ponzio*, 87 F.4th at 495.

Information about whether opting-out Class Members have assigned, transferred, or otherwise given to a third party a financial interest in their claims against the Settling Defendants (in whole or in part) would appear to go directly to this key inquiry. In addition, this information may enable the court to better evaluate the effect of Class Members opting out of the Settlement and whether a Class Member opting out was motivated by something other than the actual fairness of the Settlement.[1]

---

[1] Given the court's current understanding that certain opt outs may have been offered money up front to opt out and file separate lawsuits with third-party help, this appears all the more to be a common sense, reasonable inquiry.

"At the end of the day, the district court acts 'as a fiduciary for the class.'" *Id*. at 495 (quoting *In re Equifax Inc*., 999 F.3d at 1265). In fulfilling its responsibility to determine whether the proposed Provider Settlement is fair, adequate, and reasonable, the court requires information regarding whether a party opting out of the settlement is doing so because they have concerns about the Settlement's fairness, or whether there might be some other motivation, such as having given a financial interest in its claims in this litigation to another party.

So, whether Class Members who have opted out of the Settlement were motivated by something other than the fairness of the Settlement, such as having exchanged a financial interest in their claims in this litigation to another party in return for a non-recourse quick payment, is directly relevant to the court's evaluation of the "substance and amount of opposition to the settlement" factor. Therefore, to gather more information relevant to this issue, the court sets a hearing in this case at **9:30 a.m. Central Time on April 16, 2025,** via video conference. The four firms representing the opting-out Class Members (Paul Hastings, K&L Gates, McKool Smith, and Bartko Pavia) should attend and, **on or before April 9, 2025**, provide to the court, in writing, information relevant to the court's fairness-adequacy-reasonableness inquiry (*i.e*., whether their clients have received third-party funds) in advance of the scheduled July 2025 Fairness Hearing. To ensure the court does not burden the opt-out rights of Class Members, the court does not require Class Members not represented by these four firms to provide the court with this information.

The Settling Parties **SHALL** work with the Settlement Notice Administrator and the Settlement Administrator to promptly provide copies of this Order and the video-conference link to opting-out parties who have retained counsel.

**DONE** and **ORDERED** this March 25, 2025.

_____
**R. DAVID PROCTOR**
CHIEF U.S. DISTRICT JUDGE