FILED

2025 Mar-31  PM 03:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE: BLUE CROSS BLUE SHIELD | § | |
| ANTITRUST LITIGATION | § | **Master File No. 2:13-CV-20000-RDP** |
| | § | |
| (MDL No. 2406) | § | |

**OWENS & MINOR, INC. AND OWENS & MINOR FLEXIBLE BENEFIT PLAN'S
RESPONSE TO ANTHEM HEALTH PLANS OF VIRGINIA, INC.'S
MOTION TO ENFORCE THE COURT'S INJUNCTION
<u>REGARDING SUBSCRIBER CLASS MEMBER'S RELEASED CLAIMS [DOC. 3289]</u>**

**TABLE OF CONTENTS**

INTRODUCTION & SUMMARY OF THE ARGUMENT .........................................................1

ARGUMENT...........................................................................................................................4

I.       Anthem overstates the applicable definition of Released Claims........................................4

II.      OMI's claims in the Virginia Action are not Released Claims under the FAO ..................7

        A.       The non-BlueCard Claims are facially not Released Claims.................................7

            1.       Most of OMI's claims in the Virginia Action do not even reference the BlueCard program...............................................................................7

            2.       Anthem concedes only BlueCard claims are at issue ................................8

        B.       The BlueCard claims are not Released Claims either.............................................10

            1.       OMI's BlueCard claims are not meaningfully related to the factual predicates and issues in the Antitrust Litigation .......................................11

                a.       Background facts are not "factual predicates" or "issues" ............12

                b.       OMI's BlueCard claims merely reference background facts in the Antitrust Litigation; they do not attempt to relitigate it .................................................................................................13

            2.       OMI's BlueCard claims are not based on the factual predicates and issues in the Antitrust Litigation...........................................................14

CONCLUSION & PRAYER....................................................................................................15

# TABLE OF AUTHORITIES

<u>**Cases:**</u>

*Altria Group, Inc. v. Good*,
    555 U.S. 70, 129 S. Ct. 538, 172 L. Ed. 2d 398 (2008)........................................................6, 14

*Cal. Div. of Labor Standards Enf't v. Dillingham Const., N.A., Inc.*,
    519 U.S. 316, 117 S. Ct. 832, 136 L.Ed.2d 791 (1997) (Scalia, J., concurring)......................11

*Griswold v. County of Hillsborough*,
    598 F.3d 1289 (11th Cir. 2010) ...............................................................................................12

*Health Care Serv. Corp. v. Kolbusz*,
    594 F.3d 814 (11th Cir. 2010) .................................................................................................15

*In re Blue Cross Blue Shield Antitrust Litig. MDL 2406*,
    85 F.4th 1070 (11th Cir. 2023) ................................................................................................16

*LaSala v. Bordier et Cie*,
    519 F.3d 121 (3d Cir. 2008)...............................................................................................12–13

*New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*,
    514 U.S. 645, 115 S. Ct. 1671, 131 L. Ed. 2d 695 (1995).......................................................11

*Peters v. Aetna Inc.*,
    2 F.4th 199 (4th Cir. 2021) ........................................................................................................7

*Safeco Ins. Co. of America v. Burr*,
    551 U.S. 47, 127 S.Ct. 2201, 167 L.Ed.2d 1045 (2007).....................................................14–15

*Shaw v. Delta Air Lines, Inc.*,
    463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983)..............................................................11

*Spencer v. Specialty Foundry Prods. Inc.*,
    953 F.3d 735 (11th Cir. 2020) .................................................................................................12

*Trustmark Ins. Co. v. ESLU, Inc.*,
    299 F.3d 1265 (11th Cir. 2002) ...............................................................................................12

*TVPX ARS, Inc. v. Genworth Life & Annuity Ins. Co.*,
    959 F.3d 1318 (11th Cir. 2020) ...............................................................................................12

*Vicor Corp. v. FII USA Inc.*,
    No. 24-1620, 2025 WL 719069 (1st Cir. Mar. 6, 2025).........................................................12

**Statutes:**

29 U.S.C. § 1002(21)(A)................................................................................................5

29 U.S.C. § 1102(a)(2)..................................................................................................5

29 U.S.C. § 1105(c)(1)..................................................................................................5

29 U.S.C. § 1144.........................................................................................................11

**Other Authorities:**

*Black's Law Dictionary* (12th ed. 2024)

    FACT...............................................................................................................12

    ISSUE .......................................................................................................12–13

Owens & Minor, Inc. and Owens & Minor Flexible Benefits Plan (collectively, "OMI") respectfully submit this, their Response to the Opposed Motion to Enforce the Court's Injunction Regarding Subscriber Class Member's Released Claims [ECF No. 3289] filed by Anthem Health Plans of Virginia, Inc., d/b/a Anthem Blue Cross Blue Shield ("Anthem").

## INTRODUCTION & SUMMARY OF THE ARGUMENT

This Court's Final Approval Order ("FAO") resolving the instant Antitrust Litigation unambiguously excludes ERISA claims by OMI against Anthem arising from Anthem's self-dealing and imprudence in managing OMI's healthcare Plan, medical claims, and Plan assets:

> *To be clear, all ERISA duties still apply, all ERISA fiduciaries must comply with those duties, and this Settlement does nothing to change or alter ERISA rights. . . . ERISA claims unrelated to the issues raised in this litigation are not released. To be sure, the parties added language that expressly excludes ERISA and related benefit claims from the Settlement's releases.*

Doc. 2931, pp. 76, 78 (citing Doc. 2610-2 at ¶ 1(uuu)). When OMI later sued Anthem in Cause No. 3:24-CV-820 in the Eastern District of Virginia (the "Virginia Action"), it was thus simply taking this Court at its word. Anthem, as third-party administrator of OMI's ERISA Plan, had grossly mismanaged OMI's Plan and breached its ERISA fiduciary duties in various respects, so OMI filed "a fiduciary action brought by a plan fiduciary pursuant to ERISA." *See* <u>Ex. A</u>, Orig. VA Compl., ¶¶ 68, 71–79; <u>Ex. B</u>, 1st Amend. VA Compl., ¶¶ 101, 104–112. OMI would not and did not willfully violate one of this Court's orders.

In contrast to this Court's clarity, Anthem's motion is an exercise in studied ambiguity that ignores the FAO's plain language. Anthem first mischaracterizes the Virginia Action as a "challenge" to the Blue System, *see* Doc. 3289, p. 6 (characterizing "Blue System Claims"), and ultimately, asks this Court to enjoin OMI from prosecuting any claims "relating to Blue Cross Blue Shield Association rules, including the BlueCard Program and related fees, in the Virginia Action." Doc. 3289-3, p. 1. But there are three problems with this request.

1

As a threshold matter, Anthem's request is a recipe for still more collateral litigation. The parties have thus far proved unable to agree on what constitutes claims "related to" the predicates of this Antitrust Litigation—thus the instant motion practice—and an order that tracks Anthem's request will only enable Anthem to distend any relief this Court grants it. Indeed, Anthem had no difficulty identifying in the Virginia Action the (very few) claims it contended were released in this Antitrust Litigation, yet it seeks relief in this Court with considerably less precision. If this Court grants Anthem any relief, OMI respectfully requests clarity as to exactly what claims or factual theories are and are not prohibited. The "related to" standard is problematic in the abstract, as this Court itself already observed. *See* Doc. 2931, p. 56, n. 22.

Of course, there is a more fundamental problem with Anthem's reliance on the "related to" standard: *Anthem has misstated its application to the Virginia Action*. It is true that the FAO defined "Released Claims" to include, at a general level, any claims that are "based upon, arising from, or relating in any way to . . . the factual predicates of the Subscriber Actions [or] any issue raised in any of the Subscriber Actions by pleading or motion," but Anthem's motion ignores the limiting language in this definition that protects ERISA claims arising in the ordinary course of business; *those* are "Released Claims" only when they are "based in whole or in part on" certain predicates. *See* Doc. 2931, p. 50 (citing Doc. 2610-2 at ¶ 1(uuu)); *see also* Doc. 2931, pp. 76, 78. The broader "arising from, or relating in any way to" language from the general release does not apply. *See id.* And OMI's allegations in the Virginia Action are plainly just such ERISA claims, for they "challeng[e] [Anthem's] administration of claims under a benefit plan, based on either the benefit plan document or statutory law." *See generally* <u>Ex. B</u>; *cf.* Doc. 2610-2 at ¶ 1(uuu).

Thus, the third problem with Anthem's motion is a consequence of the first two: Anthem is just not entitled to the relief it seeks. On the contrary, when the correct standard is applied to the

2

true facts, any ambiguity can be quickly dispelled. The vast majority of OMI's claims in the Virginia Action do not even tangentially "relate to" the requisite predicates or issues raised in the Subscriber Actions. Rather, only three theories in the live Virginia Complaint even reference the BlueCard program for context:[1] (i) Anthem approved and overpaid excessive BlueCard medical claims with OMI funds, and retained those overpayments in a "variance account," as described in the Administrative Services Agreement ("ASA") between Anthem and OMI, *see* Ex. B, ¶¶ 65, 98; Ex. C, ASA, at p. 50; (ii) Anthem breached its contract by paying BlueCard fees charged by host plans with OMI funds, in violation of both the ASA[2] and ERISA, *see* Ex. B, ¶¶ 63, 98 Ex. C, p. 22 (Sec. 7); and (iii) the BlueCard fees were concealed and excessive (in the sense that those fees were higher than a prudent fiduciary would have charged), *see* Ex. B, ¶¶ 62–64, 98. Yet even these "BlueCard claims" challenging Anthem's management and overpayment of BlueCard medical claims have, at most, a tangential relationship with the predicates and issues in the Antitrust Litigation. They are arguably not even "related to" those predicates and issues, as the Supreme Court has cabined that term, and they are certainly not "based on" them as the FAO requires.

In short, none of OMI's claims in the Virginia Action are "Released Claims" herein; most of them are not even colorably so. Anthem's motion should thus be denied in its entirety, and at most, any relief should be limited to the factual theories alleged in Paragraphs 98, 109(xv), and 141(xv) of OMI's Virginia Complaint (attached here as Exhibit B).

---

[1] As set out in more detail below and in the Virginia Complaint, this "context" helps illustrate Anthem's motives and its self-dealing in violation of ERISA. *See generally* Ex. B.

[2] Anthem notably admitted charging BlueCard fees was a breach of the ASA in its motion to dismiss the Virginia Complaint. See Ex. D, Anthem's 2nd 12(b)(6) Memo., pp. 13 ("Anthem agreed not to charge *any* BlueCard fees to OMI"), 17 ("the parties' Agreement expressly mandates that Anthem will not charge BlueCard fees to OMI").

3

**ARGUMENT**

**I.    Anthem overstates the applicable definition of Released Claims.**

Anthem repeatedly emphasizes the "broad" definition of Released Claims in its motion, yet it elides critical limiting language from that definition when it quotes it. *See* Doc. 3289, p. 5. "Released Claims" indeed generally includes all claims "based upon, arising from, or relating in any way to: (i) the factual predicates of the Subscriber Actions … [or] any issue raised in any of the Subscriber Actions by pleading or motion," but the definition goes on to state:

> Nothing in this Release shall release claims, however asserted, that arise in the ordinary course of business and are based solely on (i) whether a particular product, service or benefit is covered by the terms of a particular Commercial Health Benefit Product, (ii) seeking resolution of a benefit plan's or a benefit plan participant's financial responsibility for claims, based on either the benefit plan document or statutory law, or (iii) challenging a Releasee's administration of claims under a benefit plan, based on either the benefit plan document or statutory law.

Doc. 2610-2, ¶ 1(uuu). This Court's Final Approval Order indicated these three exclusions were intended to ensure "ERISA plan rights are not affected by the Settlement." *See* Doc. 2931, p. 76. The latter of the three exclusions—challenging Anthem's administration of claims under OMI's benefit plan, based on either the benefit plan document or statutory law—captures the essence of the Virginia Action. *See generally* <u>Ex. B</u>.

Anthem may protest that this language merely aims to protect the right to challenge the management of any settlement funds paid by the Blues to resolve the Antitrust Litigation. *See* Doc. 2931, p. 76 ("To the extent an ERISA plan does not approve of what an employer does with Settlement proceeds, the plan's right to sue the employer under ERISA is wholly unaffected by this Settlement."). That is certainly one effect of these exclusions, but the Court's language was apparently emphatic in indicating a broader effect: "To be clear, *all* ERISA duties still apply, all ERISA fiduciaries must comply with those duties, and *this Settlement does nothing to change or*

4

*alter ERISA rights*." *Id.* (emphases added). If the Court had meant something narrower, it likely would have used narrower language.

Anthem may also contend that the ERISA duties in question are only those owed by an employer to a plan and its participants, and that Anthem was merely a third-party administrator whose obligations were not in view. *See* Doc. 2931, p. 76 ("the Settlement Agreement does not release any claims that an ERISA plan may have against an employer"). But even setting aside the broader language discussed above ("*all* ERISA duties still apply"), the duties owed to a plan by an employer *are* the duties at issue in the Virginia Action—OMI delegated those very duties to Anthem, as permitted by statute, such that Anthem stepped into the shoes of an employer for purposes of administering OMI's ERISA Plan. *See* Ex. B, ¶¶ 15–17, 31–37; *see also* 29 U.S.C. §§ 1002(21)(A); 1102(a)(2); 1105(c)(1). Said another way, the ERISA duties excluded from the definition of "Released Claims" and the duties that OMI alleges Anthem breached in the Virginia Action are one and the same.

To be sure, not all ERISA claims were excluded from the definition of Released Claims. The definition goes on to state an exception to the exclusion:

> Any claim, however asserted, (i) that a product, service, or benefit should be or should have been covered, but was not covered, (ii) seeking resolution of a benefit plan's or benefit plan participant's financial responsibility for claims, or (iii) challenging a Releasee's administration of claims under a benefit plan, based in whole or in part on the factual predicates of the Subscriber Actions or any other component of the Released Claims discussed in this Paragraph, is released.

Doc. 2610-2, ¶ 1(uuu). But note: although the exception tracks the three types of ERISA claims excluded from the general definition of Released Claims, it uses more limited language than the general release clause. Thus, although the FAO initially declares any claims "based upon, arising from, or relating in any way to" the factual predicates of the Subscriber Actions or issues raised in the Subscriber Actions are "Released Claims," ERISA claims are excluded, and only those ERISA

5

claims "based in whole or in part on" those predicates and issues are restored to the definition of Released Claims. Doc. 2931, pp. 76, 78 (citing Doc. 2610-2 at ¶ 1(uuu)). Put more systematically:

1. All claims "based upon, arising from, or relating in any way to" the factual predicates or issues raised in the Antitrust Litigation are Released Claims, *but*

2. All ERISA claims arising in the ordinary course of business are *not* Released Claims, *except*

3. Any ERISA claims "based on" the factual predicates or issues raised in the Antitrust Litigation, which are Released Claims.

Thus, ERISA claims that merely *relate* to the factual predicates or issues raised in the Antitrust Litigation (and are not *based* on those predicates or issues) fall outside the definition of Released Claims at Step 2 and are not reintegrated at Step 3.

Anthem's argument to the contrary fails in two different respects. *See* Doc. 3289, p. 12. First, it ignores the material difference between the "related to" and "based on" standards. "[T]he phrase 'relating to' has a broader scope than … rules 'based on' [a subject]; whereas 'relating to' is synonymous with 'having a connection with,' 'based on' describes a more direct relationship." *Altria Group, Inc. v. Good*, 555 U.S. 70, 85–86, 129 S. Ct. 538, 172 L. Ed. 2d 398 (2008) (quotations omitted; cleaned up). Second, Anthem's argument relies on denying the antecedent—a classic logical fallacy. Anthem quotes this Court's declaration that "ERISA claims unrelated to the issues raised in this litigation are not released" to argue "ERISA claims that are related to the issues raised in this action are released," but the original statement says only what happens to unrelated claims.[3] Here, all ERISA claims unrelated to the issues raised in this litigation are not released, and any ERISA claims related to the issues raised in this litigation are governed by a

---

[3] In much the same way, if "the banks are closed on Memorial Day," it would be erroneous to contend that "the bank must be open" simply because "it is not Memorial Day." It could be Thanksgiving or Christmas Day. Denying the antecedent does not itself establish the converse; the converse must be established on its own terms.

different standard—those claims are released only if they are *based on* particular predicates. *See* Doc. 2931, pp. 76, 78 (citing Doc. 2610-2 at ¶ 1(uuu)). The plain language of the FAO says so. *Id.*

## II.    OMI's claims in the Virginia Action are not Released Claims under the FAO.

Here, most of the claims in OMI's Virginia Complaint are not "related to" the factual predicates or issues raised in the Antitrust Litigation, and thus, are excluded from the Settlement pursuant to "Step 1" (discussed above). The three "BlueCard claims," on the other hand, are each excluded from the Settlement pursuant to "Step 2" and "Step 3."

### A.    The non-BlueCard Claims are facially not Released Claims.

#### 1.    Most of OMI's claims in the Virginia Action do not even reference the BlueCard program.

OMI's "fiduciary action brought by a plan fiduciary pursuant to ERISA" fundamentally arises from Anthem's failure to act as a fiduciary should in its one-to-one relationship with OMI. *See* Ex. B, ¶¶ 101, 104–112. As an ERISA fiduciary, Anthem owed OMI "(1) the duty of loyalty, which requires that all decisions regarding an ERISA plan be made with an eye single to the interests of the participants and beneficiaries; (2) the prudent person fiduciary obligation, which requires a plan fiduciary to act with the care, skill, prudence, and diligence of a prudent person acting under similar circumstances; and (3) the exclusive benefit rule, which requires a fiduciary to act for the exclusive purpose of providing benefits to plan participants." *Peters v. Aetna Inc.*, 2 F.4th 199, 228 (4th Cir. 2021) (cleaned up). Yet Anthem violated these duties vis-à-vis OMI when it, among other acts:

•    approved claims for overcharges, overpaid claims with Plan money, and refused to recover or disclose those overpayments (Ex. B, ¶¶ 69–70, 86, 89–97);

•    made duplicative payments on claims with Plan money to the detriment of the Plan and its members (Ex. B, ¶¶ 71–72);

7

- approved claims and paid claims with Plan money for improperly designated specialty pharmaceuticals (Ex. B, ¶¶ 73–74);

- approved claims—and paid exponentially more than retail price with Plan money—for generic drugs (Ex. B, ¶¶ 73, 75);

- approved and paid prescription claims without recovering earned, agreed rebates or discounts for the Plan (Ex. B, ¶¶ 76-77, 83–85);

- approved, concealed, and paid for spread pricing with Plan money to the detriment of the Plan and its members (Ex. B, ¶¶ 78–79); and

- used unfettered control over Plan claims data and other information to conceal this misconduct (Ex. B, ¶ 100).

*See* Ex. E, OMI's Resp. to Anthem's 2nd 12(b)(6) Memo., pp. 10–11. None of these allegations cite paragraphs 56 to 65 of the Virginia Complaint, *i.e.*, the sole section of background facts in the Virginia Complaint where the BlueCard program is mentioned. *Compare id. with* Ex. B. Nor do they rely on that section of the Virginia Complaint. Rather, all these challenges to Anthem's administration of medical claims under OMI's Plan, based on either the benefit plan document or statutory law, arose in the ordinary course of business without any reference or relation to the BlueCard program. They are thus facially not Released Claims.

### 2. Anthem concedes only BlueCard claims are at issue.

For its part, Anthem has acknowledged its position is merely that a "subset" of OMI's claims in the Virginia Action were released in this Antitrust Litigation. *See* Ex. F, Joint Notice in Virginia Action, ¶ 2. In other words, Anthem does *not* ask this Court to enjoin the entire Virginia Action. Indeed, in stark contrast to its open-ended motion here, Anthem's filings in the Virginia Action indicated exactly what claims it believes were released in this Antitrust Litigation.

As noted above, the only section of OMI's Virginia Complaint with any discussion of the Blues' coordination regarding the BlueCard program is paragraphs 56 to 65—a selection of contextual background facts that are pointedly *outside* the "primary misconduct serving as the basis of this lawsuit" outlined later in the complaint. *See* Ex. B, ¶¶ 56–65; *cf. id.* p. 29 (heading before ¶ 68). Paragraphs 56 to 65 are instead referenced in just three other places in the Virginia Complaint, one of which is paragraph 98, which alleges Anthem breached its duties by:

> [t]hrough the BlueCard program, with actual or constructive knowledge, transferring Plaintiff's assets to parties in interest, various host Blues and the Association, in the form of overpayments for fees and services, the withholding of Plaintiff's assets in "variance accounts," and the failure to return those assets to Plaintiff[.]

This is the *only paragraph* that Anthem flagged as implicating the instant release in its motion to dismiss OMI's Virginia Complaint. *See* Ex. D, Anthem's 2nd 12(b)(6) Memo., p. 17, n. 15.[4] This allegation also appears substantially verbatim in Paragraphs 109(xv) and 141(xv) of the Virginia Complaint. *See* Ex. B, ¶¶ 109(xv), 141(xv). And together, these three paragraphs constitute the only "BlueCard claims" in OMI's live complaint; they are OMI's only allegations in the Virginia Action that even reference the relationship of the various Blues in the BlueCard program—which again, was discussed in Paragraphs 56 to 65 simply to demonstrate Anthem's self-dealing and nonfiduciary motives for wasting OMI plan money, not as the "primary misconduct serving as the basis of this lawsuit." *See id.*, ¶¶ 56–65; *cf. id.* p. 29.

Ultimately, the BlueCard claims are the exception that proves the rule. OMI's Virginia Complaint mentions the BlueCard program as contextual background for just one of the 17 ways

---

[4] Anthem also filed a motion to dismiss a prior version of OMI's complaint that was mooted when OMI amended its pleadings. *See* Ex. G, Anthem's 1st 12(b)(6) Memo. But that motion similarly critiqued just one paragraph of the original complaint as implicating the instant release, and that paragraph (86(xvii)) was also substantively identical to Paragraph 98 in the Amended Complaint. *See id.*, p. 18, n. 13; *cf.* Ex. A, ¶ 86(xvii); Ex. B, ¶¶ 98, 109(xv), 141(xv).

in which Anthem breached its ERISA fiduciary duties to OMI, and in just one of the 33 paragraphs of the complaint that describe the "primary misconduct serving as the basis of [that] lawsuit." *See* Ex. B., ¶¶ 98, 109(xv), 141(xv).  The other 16 theories against Anthem are based on the other 32 paragraphs of substantive content that do not reference the Blue System or the BlueCard program. *See generally* Ex. B. Anthem itself did not contend in the Virginia Action that these other claims are related to the Blue System, and they are certainly not "based on" the BlueCard program. Accordingly, this Court should reject any suggestion that the non-BlueCard claims were included in the definition of Released Claims.

**B.      The BlueCard claims are not Released Claims either.**

What then of OMI's allegations that Anthem "transferr[ed] [OMI's] assets … in the form of overpayments for fees and services, the withholding of [those] assets in 'variance accounts,' and the failure to return those assets" to OMI? *See* Ex. B, ¶¶ 98, 109(xv), 141(xv). Are these a "challenge" to the Blue System, as Anthem contends? *See* Doc. 3289, pp. 6–7. Not at all. OMI alleged that the BlueCard program was a means through which Anthem accomplished these three "transfers," but this is no challenge to the Blue System itself. In this Antitrust Litigation, the issue was whether the Blue System itself constituted an illegal restraint on competition and markets in violation of the Sherman Act. *See* Doc. 2931, pp. 1–2; Doc. 2616, ¶¶ 1, 3. In contrast, OMI had (and has) no objection to the Blue System in the abstract. *See* Ex. B, ¶¶ 59–61 (noting benefits OMI anticipated receiving from the BlueCard program). OMI's challenge "relates to" and "arises from" Anthem's abuse of its one-to-one fiduciary and contractual relationship with OMI by overpaying OMI's BlueCard medical claims and retaining excess payments in variance accounts and through collection of fees. *See id.*, ¶¶ 65, 98, 109(xv), 141(xv). The factual predicates and

issues that drove the Antitrust Litigation are thus substantially unrelated to OMI's claims in the

Virginia Action, and they are certainly not the basis of those claims.

> **1.      OMI's BlueCard claims are not meaningfully related to the factual predicates and issues in the Antitrust Litigation.**

To be sure, the phrase "relate to" is broad in the abstract. *See Shaw v. Delta Air Lines, Inc.*,

463 U.S. 85, 97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983) ("A law 'relates to' an employee benefit

plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan.").

But the very breadth of this standard necessitates that some type of limit be implied, for "as many

a curbstone philosopher has observed, everything is related to everything else." *Cal. Div. of Labor*

*Standards Enf't v. Dillingham Const., N.A., Inc.*, 519 U.S. 316, 335, 117 S. Ct. 832, 136 L.Ed.2d

791 (1997) (Scalia, J., concurring). Indeed, in analyzing the phrase in other contexts, the Supreme

Court has noted that "[i]f 'relate to' were taken to extend to the furthest stretch of its indeterminacy,

then for all practical purposes pre-emption would never run its course[.]" *New York State*

*Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655, 115 S. Ct.

1671, 131 L. Ed. 2d 695 (1995) (analyzing "relate to" preemption under 29 U.S.C. § 1144). Thus,

courts should "go beyond the unhelpful text and the frustrating difficulty of defining its key term"

to consider the "objectives" of the underlying authority when applying the "relate to" standard. *Id.*

at 656. So too here with the scope of the FAO and the definition of Released Claims.

In the present case, the objective of the Antitrust Litigation Settlement was to preclude a

relitigation of the Subscriber Actions. The three categories of released claims—those related to the

factual predicates of the Subscriber Actions, issues raised in the Subscriber Actions, and rules or

regulations approved by the Monitoring Committee Process—cover the bases for the Antitrust

Litigation, the disputes in that litigation, and its results.[5] *See* Doc. 2931, p. 52. But the FAO did not further define the terms "factual predicates" or "issues" in its definition of Released Claims, and their ordinary meaning confirms the practical limits of those terms. *See Spencer v. Specialty Foundry Prods. Inc.*, 953 F.3d 735, 740 (11th Cir. 2020) (endorsing reference to dictionary definitions for guidance when determining the ordinary meaning of undefined terms).

<b>a.    Background facts are not "factual predicates" or "issues."</b>

First, a "factual predicate" for a lawsuit contemplates not just any "fact," but a *predicate* fact, *i.e.*, a fact that is *necessary to the operation* of a legal rule or itself affects an existing legal relationship. *See* FACT, *Black's Law Dictionary* (12th ed. 2024). Thus, when evaluating whether relitigation is precluded by res judicata, the Eleventh Circuit has similarly linked the idea of a "factual predicate" to the "*operative* nucleus of fact" or "nucleus of *operative* facts." *See TVPX ARS, Inc. v. Genworth Life & Annuity Ins. Co.*, 959 F.3d 1318, 1325 (11th Cir. 2020) (citing *Griswold v. County of Hillsborough*, 598 F.3d 1289, 1293 (11th Cir. 2010); *Trustmark Ins. Co. v. ESLU, Inc.*, 299 F.3d 1265, 1270 n.3 (11th Cir. 2002)); *accord LaSala v. Bordier et Cie*, 519 F.3d 121, 141 (3d Cir. 2008) ("To be a factual predicate, the fact of a misrepresentation must be one that gives rise to liability, not merely an extraneous detail. This distinction is important because complaints are often filled with more information than is necessary."). Mere background facts that are not legally *operative* should not rise to the level of a factual *predicate*.

Similarly, an "issue" in a lawsuit is not merely a fact that was developed in the record or disclosed via discovery, but "[a] point in dispute between two or more parties." ISSUE, *Black's Law Dictionary* (12th ed. 2024); *accord Vicor Corp. v. FII USA Inc.*, No. 24-1620, 2025 WL

---

[5] Anthem does not appear to contend the third category of Released Claims is a reason why the Virginia Action contained Released Claims. *See* Doc. 3289, pp. 9–11.

719069, at *3 (1st Cir. Mar. 6, 2025) (defining "issue" as meaning a "fundamental factual and legal allegation," based on an older *Black's Law* edition that defined "issue" as "a single, certain, and material point, deduced by the allegations and pleadings of the parties, which is affirmed on the one side and denied on the other").

> **b.      OMI's BlueCard claims merely reference background facts in the Antitrust Litigation; they do not attempt to relitigate it.**

Given this context, the BlueCard program was not a "factual predicate" or "issue" in the Antitrust Litigation. The 142-page Fourth Amended Consolidated Class Action Complaint only mentioned the "BlueCard" program once, in the context of alleging personal jurisdiction over any Blue defendant that transacted business in Alabama through that program. *See* Doc. 2616, ¶ 14.f.[6] And though Anthem argues the BlueCard program was the subject of discovery in the Antitrust Litigation, its showing falls short of proving the claims process in the BlueCard program was an *issue* in the sense that it was itself a "point in dispute." *Compare* Doc. 3289, p. 11 *with* ISSUE, *Black's Law Dictionary* (12th ed. 2024). Indeed, Anthem itself characterizes the BlueCard program as "very much part of the factual *context* of the MDL Subscriber Track proceedings." Doc. 3289, p. 11 (emphasis added). But the Blues did *not* bargain for a release "covering all claims related to that factual *context*[.]" *Id.* (emphasis added). They bargained for a release covering "factual predicates" and "issues," which are demonstrably narrower concepts. *See LaSala*, 519 F.3d at 141.

Consequentially, Anthem seeks overbroad relief. A proposed injunction against all claims "relating to Blue Cross Blue Shield Association rules," without any pragmatic limitation, could

---

[6] The class action complaint also alleged "Blue Card Executives" was one of many "Workgroups" for "Information Sharing" between the Blues, but this allegation made no contentions about the BlueCard program itself. *See* Doc. 2616, ¶ 441. The allegation's thrust was that the *Workgroups* were impermissibly coordinating under the antitrust laws, not the BlueCard program.

immunize Anthem from essentially any lawsuit, for Anthem's entire business—to some degree or another—has at least some attenuated "relation" to those rules, in the literal sense of the term. The definition of Released Claims, however, even at its most sweeping, includes only claims that relate to the "factual predicates" or "issues" in the Antitrust Litigation, and the claims process in the BlueCard program was not a factual predicate or issue in the Antitrust Litigation. Therefore, OMI's allegations that Anthem overpaid OMI's BlueCard medical claims; retained those excess payments in variance accounts; and charged unagreed, undisclosed, excessive fees in connection with BlueCard claims are not Released Claims even under the "related to" standard.

### 2. OMI's BlueCard claims are not based on the factual predicates and issues in the Antitrust Litigation.

Of course, OMI need not show its BlueCard claims are entirely unrelated to the factual predicates and issues underlying the Antitrust Litigation to defeat Anthem's motion. Because those BlueCard claims are ERISA claims that "challeng[e] [Anthem's] administration of claims under a benefit plan," it is enough to show they are not "based on" those predicates and issues. *See* Ex. B, ¶¶ 98, 109(xv), 141(xv); *cf.* Doc. 2610-2 at ¶ 1(uuu); *see also Altria Group*, 555 U.S. at 85–86 ("'relating to' has a broader scope than… 'based on'"). And as the Supreme Court has explained, "'based on' indicates a but-for causal relationship and thus a necessary logical condition." *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 63, 127 S.Ct. 2201, 167 L.Ed.2d 1045 (2007).

Here, none of the BlueCard claims are "based on" the BlueCard program in this sense. As ERISA claims, the BlueCard claims are not predicated on a lack of competition within the Blue System, but on Anthem's failure to act as a fiduciary toward OMI with respect to its administration of the Plan and its medical claims, the disclosure of OMI's claims data, and management of OMI's funds. There is no "but-for causal relationship" between the BlueCard program and OMI's allegations—if Anthem would have simply facilitated OMI's participation in the BlueCard

14

program as a prudent and loyal fiduciary and according to contract terms, there would have presumably been no breach of fiduciary duty in the first place. *See* Ex. B, ¶¶ 59–61. But instead, Anthem failed to disclose material aspects of the BlueCard program, charged additional fees that were not contemplated by its ASA with OMI, and prioritized its own interests over OMI's (*e.g.*, retaining overpayments it made on medical claims and the interest collected on those overpayments with OMI's funds in variance accounts). *See* Ex. B, ¶¶ 56–65, 98, 109(xv), 141(xv); *see also* Ex. D, pp. 13, 17 ("Anthem agreed not to charge *any* BlueCard fees to OMI"). There is just no "necessary logical connection" between the existence of the BlueCard program and Anthem's misuse of it in processing medical claims, so OMI's claims are not "based on" the program. *See Safeco Ins. Co.*, 551 U.S. at 63.

Anthem argues that this change in legal theories is a mere "guise" and does not bring the BlueCard claims "outside the reach of being Released Claims" under the FAO. *See* Doc. 3289, p. 12. But Anthem's argument is factually wrong, and its authority is inapposite, for Anthem relies on caselaw that was analyzing the scope of "related to" provisions in a class action release. *See Health Care Serv. Corp. v. Kolbusz*, 594 F.3d 814, 822 (11th Cir. 2010). Here, the FAO subjects ERISA claims to a narrower "based on" standard. *See supra*, this Resp. at Argument Sec. I. And since the BlueCard claims "challeng[e] [Anthem's] administration of claims under a benefit plan, based on either the benefit plan document or statutory law," they were carefully preserved in the FAO. *See* Doc. 2931, pp. 76, 78; Doc. 2610-2 at ¶ 1(uuu); *cf.* Ex. B, ¶¶ 98, 109(xv), 141(xv).

## CONCLUSION & PRAYER

In the end, the Eleventh Circuit's characterization of the instant release should have the final say. In affirming this Court's decision to overrule Home Depot's objections to the release, Chief Judge Pryor explained:

> The settlement agreement limits the release to claims arising from the factual predicates of the subscriber action. It defines released claims as those "based upon, arising from, or relating in any way to: (i) the factual predicates of the Subscriber Actions ... (ii) any issue raised in any of the Subscriber Actions by pleading or motion; or (iii) mechanisms, rules, or regulations by the Settling Individual Blue Plans and [the Association] within the scope of" the relief awarded to the injunctive class. *This language cabins the scope of the release.* *The release does not extend beyond claims arising from the common nucleus of operative fact: all the released claims either were raised or could have been raised during the litigation that preceded the settlement.* *The release does not bar any claims that could not have been litigated before settlement or any claims related to conduct that was not challenged in the underlying lawsuit.*

*In re Blue Cross Blue Shield Antitrust Litig. MDL 2406*, 85 F.4th 1070, 1091 (11th Cir. 2023) (emphases added). OMI's claims do not "arise from the common nucleus of operative fact." They could not have been "raised during the litigation that preceded the settlement" or even "litigated before settlement" because they are "related to conduct that was not challenged in the [Antitrust Litigation]," namely, Anthem's processing of OMI's medical claims. Because OMI's claims relate to and arise from Anthem's independent breaches of its ERISA, contractual, and state-law duties owed only to OMI—and not to the class of Subscribers defined in the Antitrust Litigation—this Court should refuse Anthem's request for a windfall. Instead, this Court should permit OMI to vindicate its rights in the Virginia Action.

For all the foregoing reasons, this Court should deny Anthem's Motion to Enforce the Court's Injunction Order [ECF No. 3289] in its entirety. In the alternative, this Court should expressly limit any relief to no more than the BlueCard claims asserted in paragraphs 98, 109(xv), and 141(xv) of OMI's Virginia Complaint and expressly deny relief as to all other claims and factual theories alleged by OMI in the Virginia Complaint. A proposed order denying Anthem's motion is submitted herewith.

[Signature Block on Subsequent Page]

16

Dated: March 31, 2025

Respectfully submitted,

*/s/ Devan L. Byrd*
Devan L. Byrd
Byrd Firm, PLLC
Post Office Box 59133
Birmingham, AL 35259
Telephone: (205) 882-5220
Email: devan@thebyrdfirm.com


*/s/ Kyle D. Schnitzer*
Benjamin Major, *pro hac vice pending*
TX Bar No. 24074639
Kyle D. Schnitzer, *pro hac vice pending*
TX Bar No. 24083811
THE LANIER LAW FIRM, P.C.
10940 W. Sam Houston Pkwy N.
Suite 100
Houston, Texas 77064
Telephone: (713) 659-5200
Facsimile: (713) 659-2204
Ben.Major@lanierlawfirm.com
Kyle.Schnitzer@lanierlawfirm.com

*Counsel for Owens & Minor, Inc. and*
*Owens & Minor Flexible Benefits Plan*

17

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on March 31, 2025, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record. I further certify that a true and correct copy of the foregoing was served via electronic mail and Federal Express overnight delivery on the following:

HOGAN LOVELLS US LLP
Craig A. Hoover
E. Desmond Hogan
Justin Bernick
Elizabeth Jose
Columbia Square
555 13th Street, N.W.
Washington, DC 20004
Tel: (202) 637-5600
Fax: (202) 637-5910
craig.hoover@hoganlovells.com
desmond.hogan@hoganlovells.com
justin.bernick@hoganlovells.com
elizabeth.jose@hoganlovells.com

BALCH & BINGHAM LLP
Cavender C. Kimble
1901 6th Avenue North, Suite 1500
Birmingham, AL 35203-4642
Tel: (205) 226-3437
Fax: (205) 488-5860
ckimble@balch.com

*Counsel for Anthem Health Plans of Virginia, Inc. d/b/a Anthem Blue Cross and Blue Shield*

/s/ *Devan L. Byrd*
Devan L. Byrd

18