FILED

2025 Mar-31  PM 03:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT D

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### RICHMOND DIVISION

OWENS & MINOR, INC. and OWENS & MINOR FLEXIBLE BENEFITS PLAN,

      Plaintiffs,

      v.

ANTHEM HEALTH PLANS OF VIRGINIA, INC. D/B/A ANTHEM BLUE CROSS AND BLUE SHIELD,

      Defendant.

Civil Action No.: 3:24-cv-00820

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

Page

INTRODUCTION.................................................................................................................1

FACTUAL BACKGROUND.................................................................................................2

    A.    The Parties........................................................................................................2

    B.    Anthem's Medical Benefit Administrative Services .......................................3

    C.    Anthem's Pharmacy Benefit Administrative Services....................................5

LEGAL STANDARD...........................................................................................................6

ARGUMENT.......................................................................................................................7

    I.    The Court Should Dismiss or Strike Plaintiffs' Implausible Theories of Liability ......................................................................................................................7

        A.    Allegations that are too vague or conclusory to support any cause of action.................................................................................................8

        B.    Allegations concerning processing errors that Plaintiffs fail to identify .................................................................................................10

        C.    Allegations describing conduct consistent with OMI's negotiated contract ....................................................................................................11

    II.    Plaintiffs' Causes of Action Should Be Dismissed for Failure to State a Claim ....................................................................................................................14

        A.    Plaintiffs Fail to State a Claim for ERISA Violations .............14

    III.    Plaintiffs' State Common Law Claims Are Preempted Pursuant to ERISA § 514 ....................................................................................................................18

    IV.    Plaintiffs Fail to State a Claim Under State Law ..........................................24

    A.    Plaintiffs Fail to State a Claim for Breach of Contract..................................24

    B.    Plaintiffs Fail to State a Claim For Breach of Good Faith and Fair Dealing ..25

    C.    Plaintiffs Fail to State a Claim for Breach of Fiduciary Duties .......................26

    D.    Plaintiffs Fail to State a Claim for Fraudulent Failure to Disclose.................27

    E.    Plaintiffs Fail to State a Claim for Negligence.............................................29

CONCLUSION ................................................................................................................30

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aetna Health Inc. v. Davila*,
542 U.S. 200 (2004)................................................................................................21

*Alves v. Harvard Pilgrim Health Care Inc.*,
204 F. Supp. 2d 198 (D. Mass. 2002) ...................................................................12

*Am. Psychiatric Assoc. v. Anthem Health Plans, Inc.*,
821 F.3d 352 (2d Cir. 2016)...................................................................................15

*Andrews-Clarke v. Lucent Techs., Inc.*,
157 F. Supp. 2d 93 (D. Mass. 2001) ......................................................................18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................................7

*Augusta Mut. Ins. Co. v. Mason*,
274 Va. 199, 645 S.E.2d 290 (2007).....................................................................27

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................................................7, 8, 10

*Bennett v. Bank of Am., N.A.*,
2012 WL 1354546 (E.D. Va. Apr. 18, 2012) .......................................................26

*Broadnax Mills, Inc. v. Blue Cross and Blue Shield of Virginia*,
867 F. Supp. 398 (E.D. Va. 1994) ...................................................................22, 23

*Brown v. Myers*,
2016 WL 206301 (E.D. Va. Jan. 15, 2016) (Payne, J.) .....................................24, 27

*Central Valley AG Coop. v. Leonard*,
400 F. Supp. 3d 819 (D. Neb. 2019)......................................................................18

*Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*,
474 F.3d 463 (7th Cir. 2007) ............................................................................13, 16

*Clark v. BASF Salaried Employees' Pension Plan*,
329 F. Supp. 2d 694 (W.D.N.C. 2004) ...................................................................5

*Commerce Funding Corp. v. S. Fin. Bank*,
80 F. Supp. 2d 582 (E.D. Va. 1999) ......................................................................30

*Cormier v. Atl. Law Group*,
  2012 WL 3249647 (E.D. Va. Aug. 7, 2012) ................................................................29, 30

*Crimi v. PAS Indus., Inc.*,
  1995 WL 272580 (S.D.N.Y. May 9, 1995) ...........................................................................18

*DeLuca v. Blue Cross Blue Shield of Michigan*,
  628 F.3d 743 (6th Cir. 2010) ...............................................................................................16

*Doctor's Hosp. of Slidell, LLC v. United HealthCare Ins. Co.*,
  2011 WL 13213620 (E.D. La. Apr. 27, 2011) .....................................................................11

*Doe 1 v. Express Scripts, Inc.*,
  837 F. App'x 44 (2d Cir. 2020) .....................................................................................15, 16

*Douglas v. Ocwen Loan Servicing, LLC*,
  2016 WL 1572925 (E.D. Va. Apr. 18, 2016) (Payne, J.) .....................................................25

*Douros v. State Farm Fire & Cas. Co.*,
  508 F. Supp. 2d 479 (E.D. Va. 2007) ...............................................................................7, 28

*Elmore v. Cone Mills Corp*,
  23 F.3d 855 (4th Cir. 1994) .................................................................................................21

*Entrepreneur Dream Team v. Certain Interested Underwriters of Lloyd's Ins. Co.*,
  2023 WL 5167007 (E.D. Va. July 7, 2023) ..........................................................................25

*Fifth Third Bancorp v. Dudenhoeffer*,
  573 U.S. 409 (2014).................................................................................................................7

*Fountain Enters., LLC v. Markel Ins. Co.*,
  568 F. Supp. 3d 613 (E.D. Va. 2021), *aff'd*, 2022 WL 16630571 (4th Cir.
  Nov. 2, 2022) ...................................................................................................................3, 14

*Gasner v. Cnty. of Dinwiddie*,
  162 F.R.D. 280 (E.D. Va. 1995) .............................................................................................5

*Gresham v. Lumbermen's Mut. Cas. Co.*,
  404 F.3d 253 (4th Cir. 2005) ...............................................................................................21

*Guiragoss v. Khoury*,
  444 F. Supp. 2d 649 (E.D. Va. 2006) ...................................................................................23

*HCA Health Servs. of Virginia, Inc. v. CoreSource, Inc.*,
  2020 WL 4036197 (E.D. Va. July 17, 2020) ..................................................................19, 20

*Hughes v. Wells Fargo Bank*,
  2014 WL 12527212 (E.D. Va. Dec. 2, 2014) ........................................................................27

*Infectious Disease Doctors, P.A. v. Bluecross Blueshield of Texas*,
  2014 WL 4262164 (N.D. Tex. Aug. 29, 2014)........................................................................11

*ITility, LLC v. Staffing Res. Group, Inc.*,
  2020 WL 6701361 (E.D. Va. Nov. 13, 2020).........................................................................27

*Jones v. City of Danville*,
  2020 WL 6063063 (W.D. Va. Oct. 14, 2020)...........................................................................7

*Lamberty v. Premier Millwork and Lumber Co., Inc.*,
  329 F. Supp. 2d 737 (E.D. Va. 2004) ....................................................................................19

*Lancaster v. Kaiser*,
  958 F. Supp. 1137 (E.D. Va. 1997) .......................................................................................22

*Massachusetts Laborers' Health & Welfare Fund v. Blue Cross Blue Shield of
  Massachusetts*,
  66 F.4th 307 (1st Cir. 2023).............................................................................................16, 18

*Massey v. C. Reserve Life Ins. Co.*,
  2002 WL 1967952 (S.D. W. Va. Apr. 25, 2002)...................................................................22

*Moeckel v. Caremark, Inc.*,
  622 F. Supp. 2d 663 (M.D. Tenn. 2007)................................................................................16

*Moffett v. Halliburton Energy Servs., Inc.*,
  291 F.3d 1227 (10th Cir. 2002) ............................................................................................21

*Pegram v. Herdrich*,
  530 U.S. 211 (2000)...............................................................................................................15

*Plumb v. Fluid Pump Serv., Inc.*,
  124 F.3d 849 (7th Cir. 1997) ................................................................................................14

*Polk Med. Ctr., Inc. v. Blue Cross & Blue Shield of Ga., Inc.*,
  2018 WL 624882 (N.D. Ga. Jan. 30, 2018) ..........................................................................11

*Powell v. Chesapeake and Potomac Tel. Co. of Va.*,
  780 F.2d 419 (4th Cir. 1985) .....................................................................................20, 21, 22

*Prime Commc'ns, L.P. v. Ragsdale Liggett, PLLC*,
  2019 WL 5677928 (E.D.N.C. Oct. 31, 2019)........................................................................15

*Reetz v. Aon Hewitt Inv. Consulting, Inc.*,
  74 F.4th 171 (4th Cir. 2023) .................................................................................................14

*Reisch-Elvin v. Provident Life and Acc. Ins. Co.*,
  372 F. Supp. 2d 827 (E.D. Va. 2005) ...................................................................................18

*RG Steel Wheeling, LLC v. Health Plan of the Upper Ohio Valley, Inc.*,
 2014 WL 3845215 (N.D. W. Va. Aug. 5, 2014)................................................................23

*Rogers v. Deane*,
 992 F. Supp. 2d 621 (E.D. Va. 2014) ...............................................................................25

*Rollins v. Kjellstrom & Lee, Inc.*,
 109 F. Supp. 3d 869 (E.D. Va. 2015) ...................................................................19, 21, 24

*Rossman v. Lazarus*,
 2008 WL 4181195 (E.D. Va. Sept. 3, 2008)....................................................................28

*Rossman v. Lazarus*,
 2008 WL 8958318 (E.D. Va. Oct. 7, 2008) .....................................................................30

*Rossmann v. Lazarus*,
 2008 WL 4550791 (E.D. Va. Oct. 7, 2008) .....................................................................29

*Sanctuary Surgical Ctr., Inc. v. United Healthcare, Inc.*,
 2011 WL 2134534 (S.D. Fla. May 27, 2011) ..................................................................11

*Self Insured Servs. Co. v. Panel Sys., Inc.*,
 352 F. Supp. 3d 540 (E.D. Va. 2018) .........................................................................26, 28

*Shaw v. Delta Air Lines, Inc.*,
 463 U.S. 85 (1983)............................................................................................................19

*Stevens v. E.I. Dupont De Nemours and Co.*,
 145 F. Supp. 3d 541 (E.D.N.C. 2015)...........................................................20, 21, 22, 23

*Syed v. Mohammad*,
 2016 WL 8731783 (E.D. Va. Apr. 1, 2016) ......................................................................8

*Tohotcheu v. Harris Teeter, Inc.*,
 2011 WL 5873074 (E.D. Va. Nov. 22, 2011)...................................................................29

*Tri-State Mach., Inc. v. Nationwide Life Ins. Co.*,
 33 F.3d 309 (4th Cir. 1994) .............................................................................................18

*In re UnitedHealth Group PBM Litig.*,
 2017 WL 6512222 (D. Minn. Dec. 19, 2017)..............................................................16, 17

*Van Lier v. Unisys Corp.*,
 142 F. Supp. 3d 477 (E.D. Va. 2015) .........................................................................20, 23

*Ward's Equip., Inc. v. New Holland N. Am., Inc.*,
 254 Va. 379, 493 S.E.2d 516 (1997)................................................................................26

*Wood v. Southside Physician Network, LLC*,
    2019 WL 3416665 (E.D. Va. July 29, 2019) ..........................................................................29

**Statutes**

29 U.S.C. § 1002(21)(A)..............................................................................................................14

29 U.S.C. § 1132(a) ....................................................................................................................19

29 U.S.C. § 1144..........................................................................................................................19

**Other Authorities**

Fed. R. Civ. P. 9(b) .......................................................................................................................7

Fed. R. Civ. P. 12(f)......................................................................................................................7

**INTRODUCTION**

Plaintiff Owens & Minor, Inc. ("OMI") is a sophisticated Fortune 500 company that is self-insured for health benefits coverage. In 2017, OMI engaged Defendant Anthem Health Plans of Virginia, Inc. d/b/a Anthem Blue Cross and Blue Shield ("Anthem") to provide certain administrative services to OMI's employee health-benefit plan ("Owens & Minor Flexible Benefits Plan", with OMI: "Plaintiffs"). The parties carefully negotiated a contract for those services, called the Administrative Services Agreement (the "Agreement"). The Agreement gave OMI the ability to monitor Anthem's performance of the agreed-upon administrative services, including Anthem's processing of claims for medical and pharmacy benefits.

During the course of their 6-year relationship, OMI never used the agreed-to monitoring mechanisms to raise the issues it now raises in this lawsuit. Moreover, OMI used a prominent third-party broker to understand how Anthem's pricing and performance compared to competitors in the market, and yet decided to renew its relationship with Anthem year after year. Only recently has OMI decided to pursue a new strategy. Now, through litigation, OMI seeks to rewrite the clear terms of the Agreement to create new legal duties, impose additional costs on Anthem, and extract additional value that was never part of the parties' bargained-for Agreement. But OMI's amended complaint is *still* missing any plausible legal theories of harm. Instead, Plaintiffs rely on improper conclusory assertions, many pulled from news headlines that have no connection to Anthem.

Defendants filed a Motion to Dismiss Plaintiff's first complaint in this action (ECF Nos. 13-14). After reviewing that motion, Plaintiffs now make a second effort to state a claim. But the only substantive updates that Plaintiffs have made in their First Amended Complaint ("Amended Complaint") are to: (1) identify a few isolated transactions, cherry-picked among tens of thousands of claims processed by Anthem, and to (2) supplement their vague and conclusory allegations with scattered references to the Agreement that undermine, rather than support, Plaintiffs' claims.

1

Thus, Plaintiffs plead another classic "kitchen sink" complaint. It contains six causes of action, each of which lumps together seventeen of the same separate single-phrase theories of liability as its prior Complaint, to arrive at the same request for damages. Those single-phrase theories of liability can be organized into several buckets that each fail to support a viable claim.

1. Allegations that are too vague or conclusory to support any cause of action.
2. Allegations regarding ambiguous "processing errors," for which OMI fails to provide sufficient examples, let alone a spreadsheet describing the universe of such claims as federal courts routinely require, to put Anthem on notice.
3. Allegations that do not plausibly state a claim because they describe conduct that aligns with the contractual obligations OMI specifically negotiated.

While the Complaint's lack of plausibility and specificity is enough to warrant dismissal, there are additional, independent bases for dismissal of each count. *First*, Plaintiffs fail to state a claim for ERISA violations because Anthem in not an ERISA fiduciary for many of the functions alleged by OMI to have been improperly performed. *Second*, ERISA preempts the state-law causes of action because they relate to an ERISA plan. *Third,* even if the state law claims were not preempted, by citing alleged breaches that are not supported by the express terms of the Agreement, Plaintiffs fail to state a claim for breach of contract. *Fourth*, Plaintiffs likewise fail to state tort claims because those claims arise from a contractual source. *Finally,* Plaintiffs fail to state a claim for breach of fiduciary duties under state law because Anthem has no fiduciary obligations to Plaintiffs for the conduct alleged.[1]

## FACTUAL BACKGROUND

### A. *The Parties*

Anthem is a Virginia-based company that offers fully-insured health benefit plans to

---

[1] For ease of reference and to assist the Court in parsing Plaintiffs' lumped allegations, Anthem has attached a table organizing the various arguments that support dismissal or striking of Plaintiffs' one-phrase liability allegations. *See* Appendix A.

employers and individuals in Virginia. That insurance offering is not at issue in this case. Anthem also offers, as relevant here, administrative services to employers who sponsor their own self-funded/self-insured group health benefit plans. Amended Complaint ("AC") ¶¶ 16-17.

OMI is a Fortune 500 company that provides durable medical equipment.[2] OMI employs thousands of people, and is the sponsor, administrator, and named fiduciary for a self-funded healthcare plan for its employees, the Owens & Minor Flexible Benefits Plan. *Id.* ¶¶ 29; *see also id.* Ex. A., Art. 3.b.[3] As a sponsor and named fiduciary of a self-funded plan, OMI is responsible for paying from its own assets any covered healthcare expenses incurred by its members. AC ¶ 14.

### B. *Anthem's Medical Benefit Administrative Services*

In 2017, OMI contracted with Anthem to provide administrative services to assist OMI with certain aspects of its medical benefits plan, as set out in the parties' Agreement. AC ¶ 32; *id.,* Ex. A (the "Agreement"). Anthem agreed to provide OMI and its members with access to the reimbursement arrangements for medical services that Anthem has negotiated with its network of contracted healthcare providers, including doctors and hospitals ("provider network" or "in-network providers"). *See id.* at Art. 2.b.1. Anthem's provider network is not specific to OMI's plan. Rather, as recognized in the Agreement, Anthem negotiates provider contracts to be used across Anthem's entire book of business. *See id.* at Art. 2.s. ("In building and maintain its Provider network, Anthem is not acting on behalf of or as an agent for any Employer or member.").

When OMI's members receive medical services, and the member or the treating medical provider submits a claim for reimbursement, Anthem processes that reimbursement claim. *See id.*

---

[2]     *See Our Story,* OWENS & MINOR, owens-minor.com/about/ (last visited Jan. 16, 2025).
[3]     "In ruling on a motion to dismiss, a court may consider documents attached to the complaint. . . . Any conflicts between the allegations in the Complaint and the content of the exhibit are resolved in favor of the exhibit." *Fountain Enters., LLC v. Markel Ins. Co.,* 568 F. Supp. 3d 613, 615 n.2 (E.D. Va. 2021), *aff'd,* 2022 WL 16630571 (4th Cir. Nov. 2, 2022) (relying on Policy language contained in exhibit to complaint and granting motion to dismiss).

3

at Art. 2.b. Anthem first determines whether the medical service is eligible for coverage "according to the terms and conditions of [OMI's] Benefits Booklet and this Agreement," and has full discretion "to determine eligibility for benefits under the Plan and to interpret the terms of the Plan." *Id.* at Art. 2.b, 2.c. Given this discretion, the Agreement recognizes that Anthem is an ERISA fiduciary when making those specific discretionary eligibility determinations, but not an ERISA fiduciary regarding other administrative functions. *See id.* (Anthem is an ERISA fiduciary "only to the extent that its performance of such actions constitute fiduciary action under ERISA"); *id.* ("Anthem shall not. . . be a 'named fiduciary' of the Plan.").

If a member's claim is eligible for coverage, Anthem also determines the overall price at which the claim will be reimbursed. When pricing claims, Anthem does not have discretion and "<u>shall</u> utilize Anthem's . . . Provider contract requirements," which include the prices that Anthem has pre-negotiated with providers in its provider network. *See id.* at Art. 2.b.1 (emphasis added); *id.* at Art. 2.s. (stating that Anthem "negotiat[es] rates with Providers" in its Provider network).

The Agreement also contemplates that the pricing methodology negotiated in Anthem's provider contracts may vary. Anthem may be required to reimburse providers "on a percentage of charges basis, a fixed payment basis, a global fee basis, single case rate, or other reimbursement methodology." *Id.* at Art. 1, "Paid Claim." Depending on that negotiated methodology, the final price on a claim may be "more or less than the Provider's or Vendor's actual Billed Charges." *Id.*

The parties agreed, however, that Anthem's pricing across all in-network claims in a given year would be discounted in aggregate—*i.e.* below the Providers' aggregate billed charges. In 2017, for example, OMI bargained for a specific "minimum Network Provider Discount." *See* AC Ex. A, at Attach. to Schedule C Performance Guarantees. This guaranteed discount does not apply to every single in-network reimbursement claim; as noted above, some negotiated reimbursement

4

methodologies may result in prices higher than billed charges for a certain claim. Rather, the guaranteed discount is measured across all claims incurred in a calendar year. *See id.* (clarifying that the "measurement period" is "annual"). If the overall discount is less than the guaranteed minimum, the parties negotiated specific penalties that would apply. *Id.* Similarly, the Agreement addresses what happens if Anthem makes mistakes in processing claims. OMI bargained for at least 95% accuracy, and a specific penalty if Anthem fails to meet that standard. *See id.* at Attach. to Schedule C, Operation Performance Guarantees, Claims Accuracy.

### C. Anthem's Pharmacy Benefit Administrative Services

Anthem also agreed to coordinate administrative services related to OMI's pharmacy benefits through a separate pharmacy benefit manager ("PBM"). *See* AC Ex. A, Art. 14; *see also* AC, Ex. C 2020 Pharmacy Benefits Admin. Services Schedule ("2020 PBM Agreement").

The PBM provides OMI and its members with "access to a network of pharmacies that have entered into contractual arrangements with PBM under which such pharmacies agree to provide services to [OMI's members] and accept negotiated fees for such services." AC Ex. A, Art. 14.a.1. Like Anthem's medical provider network, the PBM's pharmacy network is not specific to OMI's plan. *See id.* ("PBM shall determine, in its sole discretion, which pharmacies shall be Network Pharmacies . . . ."). The PBM also creates a drug formulary that lists drugs available through the PBM's pharmacy services, which OMI incorporates as part of its pharmacy benefits plan. *See id.*, Ex. C, 2020 PBM Agreement, § b.2., § 2.a.

The PBM processes pharmacy benefit claims in accordance with OMI's plan. AC Ex. A, Art. 14(a)(4); Ex. C, 2020 PBM Agreement, § B.3.a. The Agreement mandates the reimbursement rate that the PBM must use for pharmacy benefits claims. If an OMI member obtains a prescription drug from an out-of-network pharmacy, the reimbursement rate is zero. *Id.*, Ex. C, 2020 PBM Agreement, § B.1.b. If the OMI member goes to an in-network pharmacy, the PBM must apply

5

the reimbursement rate negotiated in its contract with that pharmacy. *Id.* § B.1.a.

The PBM also provided access to rebate agreements with pharmaceutical manufacturers, under which the manufacturer pays a rebate for certain drugs dispensed to members (such as OMI's members) using the PBM's services. *See* AC Ex. A, Art. 14.b. These negotiated agreements are not specific to OMI's plan and are used across the PBM's business. *See id.* ("Such Drug Rebate Programs are not based on the drug utilization of any one Employer Plan, but rather are based on the drug utilization of all individuals enrolled in PBM managed programs."). If the PBM receives a rebate attributable to a pharmaceutical drug dispensed to an OMI member, the Agreement mandates Anthem will pay 100% of that rebate to OMI. *See, e.g., id.*, Schedule A, § 3.A.

OMI bargained for both minimum guaranteed discounts from the PBM's in-network pharmacies and minimum guaranteed rebates. *See, e.g.*, *id*. Ex. C, 2020 PBM Agreement, Attach. 1 to Exhibit C, Performance Guarantees. These guarantees do not require a specific discount or rebate for each individual pharmacy benefit claim, rather, the negotiated guarantees are measured across all claims in a category over the course of a year. *See* AC Ex. A, Attach. 1 to Schedule C ("Each Guarantee within a Pricing Guarantee Category is then compared to the ***sum*** of appropriate portion of the Paid Claims for Prescription Drugs plus any Member cost shares associated with each Guarantee within that pricing Guarantee Category.") (emphasis added); *id.* (requiring "annual" measurement period for assessing drug pricing and rebate guarantees).

### LEGAL STANDARD

A Rule 12(b)(6) motion is "an important mechanism for weeding out meritless claims" in the ERISA context. *Fifth Third Bancorp v. Dudenhoeffer,* 573 U.S. 409, 425 (2014). To survive a Rule 12(b)(6) motion, the factual allegations must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). A plaintiff must show "more than the sheer possibility that a defendant has acted unlawfully" and "[t]hreadbare

6

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The complaint must contain "factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly,* 550 U.S. at 556).[4] Further, allegations of fraud must satisfy a heightened pleading requirement and plead with particularity the time, place, and contents of the fraudulent representations. Fed. R. Civ. P. 9(b); *Douros v. State Farm Fire & Cas. Co.*, 508 F. Supp. 2d 479, 485 (E.D. Va. 2007).

## **ARGUMENT**

### I.      **The Court Should Dismiss or Strike Plaintiffs' Implausible Theories of Liability**

Plaintiffs allege six causes of action in their Amended Complaint: ERISA violations; breach of contract; breach of implied contractual duty of good faith and fair dealing; breach of fiduciary duty; fraudulent failure to disclose; and negligence. Each rests on the tenuous threads of seventeen single-phrase descriptions of the alleged misconduct cross-referenced and lumped in each count.[5] *See* AC ¶¶ 68-100, 109, 118, 126, 141, 147, 151. While Plaintiffs have attempted to bolster these theories of liability in their Amended Complaint by adding a few additional assertions, the same deficiencies from their original Complaint remain. The vast majority of Plaintiffs' theories of liability are vague and conclusory, contain insufficient examples of alleged processing errors, and describe conduct that is consistent with the parties' Agreement. Therefore, those theories of liability cannot support the six causes of action and should be dismissed. [6]

---

[4]      Additionally, "[t]he court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Jones v. City of Danville*, 2020 WL 6063063, at *1 (W.D. Va. Oct. 14, 2020).

[5]      *See* Appendix A.

[6]      While each theory of liability is a separate claim ripe for dismissal, the Court may also consider striking some of Plaintiffs' individual theories Rule 12(f) as immaterial or impertinent.

7

### A. *Allegations that are too vague or conclusory to support any cause of action*

Despite having an opportunity to amend and add specific allegations and concrete examples to support their theories of liability, many of Plaintiffs' seventeen theories of liability still are too vague or conclusory to establish the claims that depend on them for support. *See* AC ¶¶ 76, 78, 82, 86, 96, 98, 99, 100. It is axiomatic that a complaint must provide a defendant with fair notice of the claims against it and plausible grounds on which they rest. *See Twombly*, 550 U.S. at 556. But Plaintiffs' Amended Complaint still has not even come close.

Multiple of Plaintiffs' allegations contain limited, if any, supporting facts, even after amendment. For example, Plaintiffs provide almost no details to support their conclusory allegation that Anthem was "withholding [*unspecified*] pharmaceutical rebates from Plaintiff, thereby reducing Plaintiff's assets [*in an unspecified amount*] and effectively causing overpayment *[in an unspecified amount*] of [*unspecified*] claims." *See* AC ¶ 76. Plaintiffs do not provide any examples of overpaid claims as a result of this conduct, or point to any specific rebates improperly retained by Anthem. *See id.* ¶¶ 76-77. These vague claims cannot support the multiple causes of action that rely on them for support. *See also* AC ¶¶ 82, 98.

Plaintiffs also allege that Anthem "pa[id] for services not actually provided," AC ¶ 86, and "pa[id] hospice charges beyond the acceptable timeframe without recertification," *id.* ¶ 96, yet, again, provide *no* supporting examples. *See also id.* ¶¶ 98, 99. Plaintiffs do not allege what services were not actually provided, do not explain how they know the services were not provided or provide examples of these improperly paid claims, do not allege what hospice charges were improperly paid, and do not state the acceptable timeframe for paying claims that Anthem allegedly failed to meet. Despite including some limited example claims to support other theories

---

*See Syed v. Mohammad*, 2016 WL 8731783, at *5 (E.D. Va. Apr. 1, 2016) (dismissing entire causes of action in a counterclaim and striking certain redundant, immaterial, and irrelevant allegations).

of liability involving processing errors (*see id.* ¶¶ 69, 71, 83, 89, 91, 94) Plaintiffs tellingly choose

not to cite any evidence here showing that Anthem actually engaged in this alleged misconduct.[7]

*See id.* ¶¶ 86, 96, 98, 99.  These conclusory allegations Plaintiffs do not provide support for cannot

form the basis for any cause of action and should be dismissed or stricken.  *See infra* Section I.B.

Plaintiffs also allege that Anthem was "using Plaintiff's funds to pay more for prescriptions

than charged by providers — a practice called 'spread pricing'" causing Plaintiff to pay more for

prescription drugs and allowing Anthem or its affiliates to retain the excess.  *Id.* ¶ 78.  Plaintiffs

provide no fact-based allegations supporting this theory to explain how Anthem or its PBM were

actually engaged in this practice, or an explanation of why any alleged spread retained by Anthem

was improper or excessive.[8]  Plaintiffs' vague allegations that unspecified intermediaries were

unreasonably inflating prescription claims by an unspecified amount are apparently drawn from

headlines about other payors or PBMs in the industry; they are not tied to any alleged misconduct

by Anthem.  Plaintiffs also do not support this theory with examples of any instance in which

Anthem actually caused Plaintiff to pay more for a prescription claim.  Finally, even had Plaintiffs

cited examples, nothing in the Agreement requires Anthem's PBM to pass on spread-pricing

savings to Plaintiffs, an independent basis for dismissal.  *See infra* Section I.C.  Plaintiffs' vague

spread pricing theory of liability does not support its causes of action.

---

[7]     Plaintiffs also argue that Anthem "conceal[ed] the data and materials necessary to identify these errors from Plaintiff, [and] could have readily identified these errors and overpayments using claims data and information."  *Id.* ¶ 97.  Aside from Plaintiffs' admissions that they actually received claims data (*see id.* ¶ 55) these types of allegations are unfounded because Plaintiffs have expressly released Anthem from any liability related to Anthem's alleged responsibility to make claims data productions.  Anthem reserves all rights to strictly enforce the terms of that release.

[8]     While Plaintiffs claim that Anthem allegedly paid more for prescriptions than the price paid by pharmacies, given the maximum markup and average wholesale price for drugs, in support of a different theory of liability (see *id.* ¶ 75), Plaintiffs do not connect these allegations to their spread-pricing theory of liability.  These allegations also do not provide any support for Plaintiffs' claims in this theory of liability that intermediaries inflated prescription claims with excessive fees or that the amount of the spread retained by Anthem or intermediaries was excessive.

In short, even after amendment, Plaintiffs are still unable to allege sufficient factual support for many of their theories of liability that would allow this Court to conclude that any of Plaintiffs' six causes of action cross the line to "plausible." *Twombly,* 550 U.S. at 570. Neither Anthem (nor this Court), moreover, can take any of these allegations and identify what transaction or claim Anthem is alleged to have mishandled. The Court should dismiss or strike these individual theories of liability from the Amended Complaint. *See* AC ¶¶ 76, 78, 82, 86, 96, 98, 99, 100.

### B. Allegations concerning processing errors that Plaintiffs fail to identify

Second, Plaintiffs' theories of liability include alleged processing errors for claims, but Plaintiffs fail to provide examples of these mistakes sufficient to put Anthem on notice of the claims against it. *See* AC ¶¶ 69, 71, 83, 86, 89, 91, 94, 96.

First, in an attempt to cure the deficiencies in its original Complaint, which included no claim examples whatsoever, Plaintiffs' Amended Complaint offers a mere three or four example claims to support only a fraction of their theories of liability. Plaintiffs allege, for example, that Anthem caused "Plaintiff to pay for the same medical claims or identical services multiple times." AC ¶ 71. But, despite alleging that the number of claims support this theory are "***voluminous***," it is telling that Plaintiffs can muster only ***three*** examples of this conduct. *Id.*; *id.* Ex. D. To satisfy even Rule 8 pleading standards, federal courts routinely require parties to plead the underlying details of the health insurance claims which form the basis for plaintiffs' claims, typically in a claims spreadsheet. *See, e.g., Sanctuary Surgical Ctr., Inc. v. United Healthcare, Inc.*, 2011 WL 2134534, at *3 (S.D. Fla. May 27, 2011) (dismissing where plaintiff failed to provide details regarding the claims at issue).[9] These three, cherry-picked examples do not provide sufficient

---

[9]     *See also Infectious Disease Doctors, P.A. v. Bluecross Blueshield of Texas*, 2014 WL 4262164, at *3 (N.D. Tex. Aug. 29, 2014) (dismissing complaint for breach of contract and ERISA violations for failure to provide health care claim details supporting its claims); *Doctor's Hosp. of Slidell, LLC v. United HealthCare Ins. Co.*, 2011 WL 13213620, at *2 (E.D. La. Apr. 27, 2011)

10

support for Plaintiffs' six causes of action that rely on this claim.  *See also* AC ¶¶ 69, 83, 89, 94.[10]

Second, while Plaintiffs provide example claims for a few of their theories of liability, for others they are unable to provide any examples at all.[11] Despite the opportunity for amendment, as discussed above, multiple theories of liability in the Amended Complaint based on alleged processing errors contain no factual support.  *See supra* Section I.A. These theories of liability concerning processing errors supported by either no examples, or surprisingly few, do not provide Anthem with fair notice of the claims against it, and cannot support any cause of action. The Court should therefore dismiss or strike these allegations.  *See* AC  ¶¶ 69, 71, 83, 86, 89, 91, 94, 96.

### C.  *Allegations describing conduct consistent with OMI's negotiated contract*

Various of Plaintiffs' seventeen theories of liability also cannot plausibly form the basis for Plaintiffs' causes of action because they describe conduct that is consistent with the contractual obligations in the Agreement for which OMI specifically negotiated for and that Anthem agreed to follow.  *See id.* ¶¶ 69, 73, 78, 80, 83, 98, 99. Anthem cannot be liable for following the terms of the parties' carefully negotiated Agreement under any of the claims that Plaintiffs have tried (but failed) to plead.  *See infra* Section IV; *see also Alves v. Harvard Pilgrim Health Care Inc.*, 204 F. Supp. 2d 198, 210 (D. Mass. 2002) (holding that where an ERISA plan is implemented according

---

(dismissing complaint for failure to provide factual details regarding claims allegedly unpaid or underpaid); *Polk Med. Ctr., Inc. v. Blue Cross & Blue Shield of Ga., Inc.,* 2018 WL 624882, at *4 (N.D. Ga. Jan. 30, 2018) (dismissing complaint failing to "allow a reasonable person to ascertain 'the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits'" which lay at the heart of its causes of action).

[10]   Even if the Court found that the limited examples Plaintiffs provide in Exhibit D are sufficient to support any of the theories of liability to which they correspond (and it should not), the Court should only permit those theories of liability to proceed on the examples identified. This is consistent with the general rule that plaintiffs must identify and detail the claims at issue to survive a motion to dismiss.  *See, e.g., Sanctuary Surgical Ctr., Inc.*, 2011 WL 2134534, at *3.

[11]   The theories of liability in Paragraphs 86, 96, 98, and 99 are supported by *no* examples.

to its terms, there can be no breach of fiduciary duty).

For example, Plaintiffs allege that Anthem improperly classified "affordable generic drugs as specialty pharmaceuticals, which resulted in Plaintiff paying excessive prices—or receiving less return in discounts and rebates." *See, e.g.,* AC ¶ 73. Attempting to cure the defects with this allegation in the Amended Complaint, Plaintiffs cite to the Agreement's description of specialty pharmaceuticals. But Plaintiffs' theory continues to be premised on the clearly erroneous idea that "Specialty" and "Generic" drugs are mutually exclusive, such that specialty pricing for generic drugs was improper. But, the Agreement is clear that specialty drugs are any drugs "dispensed from a Specialty Service Pharmacy" and that "may have special handling…" *See id.* Ex. A, Attach. to Schedule C. "There is nothing in the ASA and nothing that Plaintiffs can allege stating that specialty drugs cannot be generic. *See id.* (defining "Brand Name Prescription Drug" as "not a Generic Drug"). This theory alleges no misconduct and cannot support any claim.

Additionally, Plaintiffs allege that Anthem should be held liable for "failing to secure reasonably available discounts and rebates for prescription drug claims." *See* AC ¶ 83. OMI did not contract to (nor is it standard practice for a PBM or claims administrator to) secure the best possible rebates in the market. Plaintiffs cannot cite to anywhere in the Agreement reflecting such an obligation. This is because there is no such provision. OMI did, however, contract for "minimum drug rebates." *See* AC Ex. A, Attach. to Schedule C. Plaintiffs do not allege that those specific minimums were not met. Similarly, Plaintiffs also allege that Anthem engaged in misconduct by steering Plan participants and beneficiaries to use Defendant affiliated providers and intermediaries by "punishing Plaintiff if it failed to designate Defendant and its affiliates as exclusive specialty drug providers." *See* AC ¶¶ 80-81. Plaintiffs cite the Agreement as support; but this conduct cannot be a basis for liability as this was negotiated and agreed to by the parties.

12

Plaintiffs' pharmaceutical "spread pricing" allegation suffers the same flaw. *See, e.g.,* AC ¶ 78. Nothing in the parties' Agreement requires Anthem's PBM to pass on spread-pricing savings to Plaintiffs. *See* AC Ex. A; *see, e.g., Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463, 473 (7th Cir. 2007) (where contract included "no mechanism for pass-through of any additional savings [the PBM] managed to negotiate with retailers," the PBM did not violate ERISA when it retained the "spread" on pharmacy pricing). Instead, OMI negotiated for, and Anthem agreed to, other methods for regulating pharmacy costs such as performance guarantees. *See* AC Ex. A, Schedule C.

Plaintiffs also claim that Anthem caused "Plaintiff to grossly overpay claims, including payments to certain providers exceeding 100% of charges actually billed by those providers." *See, e.g.,* AC ¶ 69. But the parties' Agreement expressly acknowledges that some claims may be reimbursed at amounts higher than the Provider's billed charges, depending on the reimbursement methodology required under Anthem's contract with that Provider. *See id.*, Ex. A (Art. 1, "Paid Claim") ("whether such amount is more or less than the Provider's or Vendor's actual Billed Charges for a particular service or supply; or . . . whether such payments are increased . . . by the Provider's . . . achievement of . . . specified goals").[12]

Finally, Plaintiffs challenge the amount of fees they were purportedly charged for claims processed through the BlueCard program. *See* AC ¶ 98. But the parties' Agreement shows that is not plausible: Anthem agreed not to charge *any* BlueCard fees to OMI. *See id.,* Schedule A. To the extent that Plaintiffs' vague allegations suggest otherwise, the Agreement governs. *Fountain Enters., LLC*, 568 F. Supp. 3d at 615 n.2 ("Any conflicts between the allegations in the Complaint

---

[12] *See also id.*, Inter-plan Arrangements ("Sometimes, this negotiated price may be greater for a given service or services than the Billed Charges in accordance with how the Host Blue has negotiated with its Participating Provider(s) for specific healthcare services. . . .").

and the content of the exhibit are resolved in favor of the exhibit."). Because each of these theories describe conduct consistent with the contractual obligations the parties bargained for in the Agreement, the Court should dismiss or strike them. *See* AC ¶¶ 69, 73, 78, 80, 83, 98, 99.

**II.      Plaintiffs' Causes of Action Should Be Dismissed for Failure to State a Claim**

Even after an opportunity for amendment, Plaintiffs are still unable to plausibly state a claim for any of their causes of action, which are each supported by Plaintiffs vague, conclusory, and implausible seventeen theories of liability.

**A. *Plaintiffs Fail to State a Claim for ERISA Violations***

Plaintiffs' ERISA claims are premised on the notion that Anthem is an ERISA fiduciary. *See, e.g*., AC ¶ 36. But Plaintiffs' allegations, and the Agreement incorporated into the Amended Complaint, make clear that Anthem is not an ERISA fiduciary with respect to nearly all of the functions underlying Plaintiffs' seventeen theories of liability. Plaintiffs' ERISA claim should be dismissed to the extent it is based on these non-fiduciary functions. A service provider, such as Anthem, is a functional fiduciary only to the extent it (1) "exercises any discretionary authority or discretionary control respecting management of such plan"; (2) "has any discretionary authority or discretionary responsibility in the administration of such plan"; or (3) "exercises any authority or control respecting management or disposition of [the plan's] assets." 29 U.S.C. § 1002(21)(A). Whether a defendant is an ERISA fiduciary "is not an all-or-nothing designation." *Reetz v. Aon Hewitt Inv. Consulting, Inc.*, 74 F.4th 171, 179-80 (4th Cir. 2023). Rather, an entity "may be an ERISA fiduciary for some purposes, but not for others." *Plumb v. Fluid Pump Serv., Inc.*, 124 F.3d 849, 854 (7th Cir. 1997). Fiduciary liability only attaches if "a person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000). Even if the Court finds that one or more of the alleged functions trigger fiduciary status, Plaintiffs' claims as to the remaining

functions should still be dismissed. *Prime Commc'ns, L.P. v. Ragsdale Liggett, PLLC*, 2019 WL 5677928, at *8 (E.D.N.C. Oct. 31, 2019) (granting a motion to dismiss ERISA fiduciary claims based on some functions, but not others).

Courts have generally recognized two categories of functions (among others) that do not trigger ERISA fiduciary status. ***First***, conduct that is not specific to the ERISA plan, including business-wide activities like provider or pharmacy contracting, does not trigger fiduciary status even if they are discretionary. *Am. Psychiatric Assoc. v. Anthem Health Plans, Inc*., 821 F.3d 352, 357 n.2 (2d Cir. 2016) ("'[G]eneral fiduciary duties under ERISA [are] not triggered' . . . when the decision at issue is, 'at its core, a corporate business decision, and not one of a plan administrator.'"); *Doe 1 v. Express Scripts, Inc.*, 837 F. App'x 44, 48 (2d Cir. 2020) (holding that defendant did not act as an ERISA fiduciary when it entered into agreements, even though it may ultimately affect how much plan participants pay for drug prices). Several of Plaintiffs' theories of liability are premised on such business-wide conduct that does not trigger fiduciary status.

For example, Plaintiffs allege Anthem violated ERISA by "securing less favorable discount arrangements with network providers for Plaintiff." *See, e.g.,* AC ¶ 87. But the parties' Agreement makes clear that Anthem's negotiated arrangements with providers are not specific to OMI's plan, and Plaintiffs cannot cite any provision in the contract showing that they are. *See* AC Ex. A, at Art. 2.s. ("In building and maintain its Provider network, Anthem is not acting on behalf of or as an agent for any Employer or member."). Negotiating agreements with providers is a general business decision that does not trigger Anthem's fiduciary status, even if it does ultimately impact the Plan. *See Massachusetts Laborers' Health & Welfare Fund v. Blue Cross Blue Shield of Massachusetts*, 66 F.4th 307, 322 (1st Cir. 2023) (holding "broader business decisions that simply

15

affected the Plan and its participants" do not confer fiduciary status).[13]

Plaintiffs also challenge the level of rebates they received, claiming that Anthem failed to "secure reasonably available discounts and rebates for prescription drug claims." *See* AC ¶ 83. But as the Agreement makes clear, the PBM does not make available rebates specific to OMI's plan. Rebates are negotiated for all the PBM's customers, and therefore cannot confer fiduciary status. *See id.*, Ex. A, at Art. 14.b; *see also Chicago Dist. Council of Carpenters Welfare Fund*, 474 F.3d at 476 (where PBM rebate contracts were not specific to plaintiffs' plan, and rebate amount owed was mandated in the contract, the PBM owed no ERISA fiduciary duties). Likewise, to the extent Plaintiffs challenge the level of discounts that were negotiated in contracts with in-network pharmacies, that business-wide contracting function does not create fiduciary status.

**Second**, performance of mandatory contractual terms does not confer fiduciary status. *See, e.g.*, *Mass. Laborers'*, 66 F.4th at 320 (no fiduciary status where "BCBSMA was afforded no discretion to deviate from [negotiated] rates"); *Doe*, 837 F. App'x at 49 (holding that when a service provider sets prices "pursuant to the terms of a contract, it is not exercising discretionary authority and therefore not acting as an ERISA fiduciary").[14] Many of Plaintiffs' theories of liability supporting their ERISA violations claim describe conduct the Agreement mandates.

---

[13] *See also In re UnitedHealth Group PBM Litig.*, 2017 WL 6512222, at *10 (D. Minn. Dec. 19, 2017) ("[N]egotiating prices with providers is also not a fiduciary function, but rather the administration of a network administrator's business."); *DeLuca v. Blue Cross Blue Shield of Michigan*, 628 F.3d 743, 747 (6th Cir. 2010) (holding that negotiating rates was a business dealing not directly associated with a benefits plan, but was "generally applicable").

[14] *See also Moeckel v. Caremark, Inc.*, 622 F. Supp. 2d 663, 692 (M.D. Tenn. 2007) (where defendant's actions "complained of by the plaintiff were contractually compelled as a result of an arm's length negotiated agreement" between the parties, defendant did not have ERISA fiduciary status); *Chicago Dist. Council of Carpenters Welfare Fund,* 474 F.3d at 465-76 (holding that where parties agreed in their contract that the PBM would pay a fixed rebate for prescriptions filled, the PBM owed no fiduciary duties related to rebates); *In re UnitedHealth Group PBM Litig.*, 2017 WL 6512222 at *10 (holding that defendants did not act as fiduciaries when engaging in certain "activities involv[ing] the performance of contractual terms").

16

Plaintiffs allege, for example, that Anthem withheld "pharmaceutical rebates from Plaintiff." *See* AC ¶ 76. Passing through pharmacy rebates is not a discretionary act that may trigger ERISA fiduciary status, because, as Plaintiffs acknowledge, the parties' Agreement specifically mandates that "Anthem will pay to Employer 100% of the Drug Rebates." *Id*. ¶ 76; *id.*, Ex. A, Schedule A. Similarly, Plaintiffs allege that Anthem failed "to meet discount and rebate guarantees for prescription drug claims." AC ¶ 83. This alleged function does not create ERISA fiduciary status. As Plaintiffs allege, the overall contractual discount levels are "guarantees." *Id.* Anthem does not have discretion over whether to meet them; the Agreement mandates that it must.

Plaintiffs also allege that Anthem violated ERISA by charging excessive fees for claims processed through the BlueCard program, also known as an "Inter-Plan Arrangement." *See id.* ¶ 98.[15] But the parties' Agreement expressly mandates that Anthem will not charge BlueCard fees to OMI. *See id.*, Ex. A, Schedule A ("All Inter-Plan Arrangement-related fees, including any Access Fees paid to Host Blues. . . are included in Anthem's Base Administrative Services Fee."). Even if Plaintiffs had plausibly alleged that it was charged any particular BlueCard fees, contrary to the Agreement, that function does not create an ERISA fiduciary status required to state a claim.

Finally, Plaintiffs allege that Anthem violated ERISA by "causing Plaintiff to pay exorbitant, unreasonable fees to Defendant and vendors" through "arrangements with Multiplan and similar vendors." *See* AC ¶ 99. But again, the fee amount charged for MultiPlan's services is not discretionary, and does not trigger fiduciary status. The services OMI specifically negotiated for and that Anthem agreed to provide are specified in the Agreement. *See, e.g., id.*, Ex. A,

---

[15] OMI has released, in the Blue Antitrust Subscriber MDL, *In re Blue Cross Blue Shield Antitrust Litigation*, MDL 13-2000 (N.D. Ala.), any claim for liability or damages against Anthem related to BlueCard fees. Accordingly, because the MDL Court has retained exclusive jurisdiction over that release, Anthem will move it to enforce the parties' release unless Plaintiffs stipulate that they will not seek liability or damages on BlueCard claims in this action.

Schedule A. ("When Anthem forwards a non-Network Provider Claim to Vendor to negotiate with the non-Network Provider, the Employer will pay a fee. . ."). Charging those fees therefore does not trigger ERISA fiduciary status. *See, e.g.*, *Mass. Laborers'*, 66 F.4th at 322 (no fiduciary status where contract mandated service provider's fee at fixed percentage of recovery); *Central Valley AG Coop. v. Leonard*, 400 F. Supp. 3d 819, 843 (D. Neb. 2019) (no breach of fiduciary duty where provider received percentage of savings fee, specifically disclosed in the parties' agreement). Plaintiffs' ERISA claims premised on business-wide functions or mandatory contractual obligations should be dismissed, because those functions do not trigger ERISA fiduciary status.[16]

### III.  Plaintiffs' State Common Law Claims Are Preempted Pursuant to ERISA § 514

Even though Plaintiffs have failed to state a claim under ERISA for the reasons specified above, ERISA nonetheless defensively preempts the state law causes of action because those causes of action relate to the administration of an ERISA-governed plan.[17] Defensive preemption under Section 514 of ERISA has been "broadly interpreted by the courts to carry out Congress' intent to displace any state law efforts to regulate ERISA matters." *Tri-State Mach., Inc. v. Nationwide Life Ins. Co.*, 33 F.3d 309, 312 (4th Cir. 1994) ("the pre-emption clause is conspicuous for its breadth").[18] In the Amended Complaint, Plaintiffs allege numerous causes of action arising under both ERISA and state law. Under ERISA, Plaintiffs allege Anthem breached its fiduciary duties under the Agreement. AC ¶¶ 103-112. Citing to the *exact* same factual allegations,

---

[16]     Anthem reserves all rights to argue that other functions not addressed here likewise do not trigger fiduciary status, if any part of this case is allowed to proceed.

[17]     Courts routinely dismiss claims based on both preemption and failure to state a claim under ERISA. *See, e.g., Andrews-Clarke v. Lucent Techs., Inc.*, 157 F. Supp. 2d 93, 106 (D. Mass. 2001) (dismissing a claim that was both preempted by ERISA and simultaneously failed to state a claim under ERISA); *Crimi v. PAS Indus., Inc.*, 1995 WL 272580, at *7 (S.D.N.Y. May 9, 1995) (dismissing state law claims that were identical to an ERISA claim regardless of fiduciary status).

[18]     *See also Reisch-Elvin v. Provident Life and Acc. Ins. Co.*, 372 F. Supp. 2d 827, 830 (E.D. Va. 2005) ("ERISA defines state law to include 'any laws, decisions, rules, regulations or other State action having the effect of law, of any State.'" (quoting 29 U.S.C. § 1144(c)(1))).

18

Plaintiffs assert state common law claims. *Id.* ¶¶ 103-112, 113-157 (citing ¶¶ 68-100 throughout). Together, these repetitive claims show Plaintiffs' strategy to plead everything but the kitchen sink—even though the law instructs otherwise. Indeed, Section 514 of ERISA mandates that ERISA's provisions "supersede any and all State common laws insofar as they may now or hereafter relate to any employee benefit plan[.]"[19] 29 U.S.C. § 1144(a).

The Supreme Court has identified three categories of state claims that are preempted by ERISA: "(1) laws that mandate employee benefit structures or their administration; (2) laws that bind employers or plan administrators to particular choices or preclude uniform administrative practices; and (3) laws that provide alternative enforcement mechanisms to ERISA's civil enforcement provisions." *HCA Health Servs. of Virginia, Inc. v. CoreSource, Inc*., 2020 WL 4036197, at *4 (E.D. Va. July 17, 2020) (citing *Darcangelo v. Verizon Commc'ns, Inc*., 292 F.3d 181, 190 (4th Cir. 2002)). The Supreme Court has also repeatedly stated that ERISA Section 514(a) is to be construed broadly. *See Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983) ("The breadth of § 514(a)'s pre-emptive reach is apparent from that section's language.").

To assess whether Plaintiffs' state claims are preempted by ERISA, the Court must determine whether a Plan exists and whether the state common law claims "relate to" the Plan. *Rollins,* 109 F. Supp. 3d at 877. Here, there is no question as to whether a Plan exists: Plaintiffs attached the relevant ERISA-governed plan to the Amended Complaint (the Agreement). AC Ex. A; *see also Powell v. Chesapeake and Potomac Tel. Co. of Va.*, 780 F.2d 419, 423-34, n.6 (4th

---

[19]     Section 502 of ERISA enables cases to be removed to federal court where otherwise it would not be removable. 29 U.S.C. § 1132(a). Section 514 is a defense that may be asserted to supersede state laws that relate to an ERISA plan. 29 U.S.C. § 1144; *see Rollins v. Kjellstrom & Lee, Inc*., 109 F. Supp. 3d 869, 877-78 (E.D. Va. 2015) (stating that Section 514's conflict preemption provides a federal defense to a state law claim). The relevant section is 514 because OMI has already asserted ERISA applies and filed this action in federal court. *See, e.g.*, *Lamberty v. Premier Millwork and Lumber Co., Inc*., 329 F. Supp. 2d 737 (E.D. Va. 2004) (considering Section 514 where the plaintiff brought state law claims and ERISA claims to federal court).

Cir. 1985) (citing administrative services agreement to find processing claims were pursuant to agreement). So, the key question is whether the state common law claim "relates to" that plan. *See, e.g.*, *Van Lier v. Unisys Corp.*, 142 F. Supp. 3d 477, 483 (E.D. Va. 2015) (only considering the second prong where Plan's existence was undisputed); *HCA Health*, 2020 WL 4036197, at *4 ("[I]t is undisputed that there is an employee benefit plan . . . . The question is whether the claims 'relate to' the plan."). The Court should find that Plaintiffs' state law claims relate to the Plan because 1) each of the state claims rest on the same factual allegations as the ERISA claim; 2) Plaintiffs' allegations concern the administration of the Plan; and 3) the resolution of the state claims require referencing the Agreement.

By Plaintiffs' own pleading, Plaintiffs' state law claims expressly relate to Anthem's ERISA-governed plan, manifesting several alternative enforcement mechanisms to ERISA. First, Plaintiffs tacitly admit that their state law claims relate to ERISA and are preempted, "[a]s noted in Article 20 of the ASA, the ASA shall be construed according to the laws of Virginia, '***except to the extent preempted by ERISA or any other applicable provisions of federal law.***'" AC n.25 (emphasis added). At a minimum, this language is an acknowledgement that the issue of preemption exists in the Amended Complaint. What's more, by attaching this language to the heading for ***all*** state law claims, without raising any argument against preemption, Plaintiffs functionally concede that the state law claims are preempted by ERISA.

Regardless of Plaintiffs' admissions, the state law claims are all preempted because they provide "an alternative enforcement mechanism" to ERISA by "rest[ing] on the ***same allegations*** that support an ERISA claim[.]" *Stevens v. E.I. Dupont De Nemours and Co.*, 145 F. Supp. 3d 541, 547-48 (E.D.N.C. 2015) (emphasis added) (dismissing plaintiff's state law claims because

20

they relate to the employee benefit plan).[20]  Plaintiffs' state law claims rest on the same seventeen bald statements to support Plaintiffs' ERISA claim.  *See supra* Section I; AC ¶¶ 68-100.  For example, in its breach of contract claim, Plaintiffs cited to the same paragraphs the ERISA claim cited.  *See* AC ¶¶ 103, 118.  Relatedly, in the claim for breach of implied contractual duty, Plaintiffs cited the same factual allegations but in each paragraph individually.  *See id.* ¶¶126-134.  These cosmetic changes demonstrate Plaintiffs' attempt to avoid the issue of preemption by placing form over substance.  This tactic does nothing to change the fact that the underlying facts for the state common law claims are identical to the facts underlying the ERISA claims.  *See id*. ¶¶ 103-112 (listing the 17 factual causes of action and citing to the same paragraphs for support).  Thus, by Plaintiffs' own pleading, Plaintiffs' state law claims undeniably "relate to" that Plan and are alternative enforcement mechanisms to ERISA.  *See Stevens*, 145 F. Supp. 3d at 547; *Elmore v. Cone Mills Corp*, 23 F.3d 855, 864 (4th Cir. 1994) (state claims brought with an "undeniably ERISA-covered employee benefit plan" related to that Plan and were preempted); *see also Moffett v. Halliburton Energy Servs., Inc*., 291 F.3d 1227, 1235 (10th Cir. 2002) ("alternative" state claims identical to ERISA claims were dismissed because there was "no question" they relate to the Plan).

Even if the Court does not find the state law claims rest upon the same facts as the ERISA claim, the state common law claims are still preempted because they relate to the administration of the Plan.  *See generally Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004) (claims that would only exist because of administration of the Plan are related to the Plan); *Powell*, 780 F.2d 419 (stating the question is if state law claims relate to the administration of the Plan); *Gresham v. Lumbermen's Mut. Cas. Co*., 404 F.3d 253 (4th Cir. 2005) (stating that the purpose of ERISA is

---

[20]  Courts routinely find breach of contract claims preempted by ERISA when "brought either *in conjunction with* ERISA claims, or based on benefits owed through an agreement, are usually preempted." *Rollins*, 109 F. Supp. 3d at 880 (emphasis added).

to protect the administrators from conflicts of the law). Indeed, in Plaintiffs' own words, Anthem breached the implied contractual duty of good faith and fair dealing in "determin[ing] claims for benefits under the Plan[.]" AC ¶¶ 126-134 (citing section I.A-B, ¶¶ 39-65). Plaintiffs also added the claim of negligence, alleging Anthem submitted bills to Plaintiffs for "miscoded charges" and "grossly excessive charges." *Id*. ¶ 153. Determining amounts to charge Plaintiffs for its claims is directly related to Plan Administration and Management. *See Id*. ¶ 38. As such, Plaintiffs' claims for (1) breach of implied contractual duty of good faith and fair dealing and (2) negligence, are preempted because they relate to the alleged "maladministration of employee benefit plans." *Powell*, 780 F.2d at 422 (holding state law claims like breach of fiduciary duties related to administration of the Plan were preempted); *Stevens*, 145 F. Supp. 3d at 547 (finding claims of fraud related to amounts the plaintiff must pay are governed by Plan and preempted by ERISA); *Lancaster v. Kaiser*, 958 F. Supp. 1137, 1147 (E.D. Va. 1997) (holding claims based on administrative decisions directly relate to administration of a Plan and would undermine ERISA).

Even when parties fail to plead with sufficient specificity, as Plaintiffs do here, state law claims that do not expressly reference Plan administration can still relate to Plan administration for purposes of preemption. For example, Courts have found state law claims related to the improper processing of benefits under an ERISA plan relate to the plan and are preempted under Section 514. *See Massey v. C. Reserve Life Ins. Co*., 2002 WL 1967952, at *2 (S.D. W. Va. Apr. 25, 2002) (citing *Pilot Life*, 481 U.S. at 48); *Broadnax Mills, Inc. v. Blue Cross and Blue Shield of Virginia*, 867 F. Supp. 398 (E.D. Va. 1994) (finding allegations related to failure to credit discounts pursuant to the Plan related to the Plan and was preempted). These are exactly the types of claims Plaintiffs assert, for instance, that Anthem failed to provide rebates and recover overpayments. AC ¶¶ 140-141. Because this relates to processing of benefits under the Plan, any state cause of

22

action including this allegation relates to administration of the Plan. *See RG Steel Wheeling, LLC v. Health Plan of the Upper Ohio Valley, Inc.*, 2014 WL 3845215, at \*8, n.4 (N.D. W. Va. Aug. 5, 2014) (holding claims related to overpayment or failure to return amount were preempted).

Finally, state law claims are also preempted by Section 514 where "any resolution of the plaintiff's claim cannot occur without reference to the plan and its governing documents." *See Broadnax Mills*, 867 F. Supp. at 404 (finding state law claims related to administrative services agreement with third party administrator under Section 514); *Guiragoss v. Khoury*, 444 F. Supp. 2d 649, 658 (E.D. Va. 2006) (breach of contract claims that refer to the Plan agreement relate to ERISA and are preempted). Plaintiffs' state law claims either expressly reference the Agreement or require the Court to examine the Agreement. For example, Plaintiffs allege that Anthem fraudulently failed to disclose information regarding management of the Plan and forms of payment of the Plan. AC ¶¶ 145-148. Plaintiffs allegedly relied on these misrepresentations as it relates to Defendant's role as the TPA (third-party administrator) for the Plan. *Id.* These claims do not only concern the existence of an employee benefit plan, they ***depend*** on it, and would require the Court to examine the ERISA-governed Agreement. *See Stevens*, 145 F. Supp. 3d at 548 (finding state law claims of fraud were preempted because resolving the state claims required reviewing the Plan). It follows, that Plaintiffs' state law claims "would not exist but for" the Plan and necessarily relate to the Plan. *See Van Lier*, 142 F. Supp. 3d at 484.

In sum, by Plaintiffs' pleading and admission, Plaintiffs' state law claims "relate to" the Plan because they 1) rest on the same facts alleged under the ERISA claim; 2) concern the administration of the Plan; and 3) require the Court to review the ERISA-governed Agreement for resolution. Satisfying both prongs of the preemption analysis, it is evident that Plaintiffs' state law claims seek alternative enforcement mechanisms to ERISA and are preempted under Section 514.

Therefore, "conflict 'preemption under § 514 precludes prosecution of the preempted state-law claim[s]' and the claim[s] must be dismissed." *Rollins*, 109 F. Supp 3d at 877.

### IV. Plaintiffs Fail to State a Claim Under State Law

Even if ERISA did not preempt Plaintiffs' common law causes of action (though it does), Plaintiffs fail to state a claim under state law for various reasons.

#### A. *Plaintiffs Fail to State a Claim for Breach of Contract*

Plaintiffs fail to state a claim for breach of contract. To properly allege breach of contract, plaintiff must show "(1) a legally enforceable obligation. . .; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Brown v. Myers*, 2016 WL 206301, at \*4 (E.D. Va. Jan. 15, 2016) (Payne, J.) (dismissing breach of contract claim). Here, however, Plaintiffs fail to allege a breach of Anthem's obligations under the Agreement. First, certain of Plaintiffs' allegations describe conduct that could not plausibly be a breach of the Agreement. For example, Plaintiffs claim that Anthem violated the parties' Agreement for certain discount guarantees for prescription drug claims by "failing to secure the promised levels of discounts on individual claims." *See* AC ¶ 119. These agreed discount guarantees, however, do not require a specific discount for each individual pharmacy benefit claim, but instead the negotiated guarantees are measured across all claims in a category over the course of a year. *See* AC Ex. A, Attach. 1 to Schedule C. Failing to secure levels of discounts on individual claims, therefore, cannot support a breach of contract claim because the Agreement does not require this. Plaintiffs' remaining allegations in this claim are vague and conclusory, and offer no supporting facts or evidence to properly notify Anthem of the claims against it. [21]

---

[21] Instead of complying with basic pleading requirements, Plaintiffs simply attach the Agreement and indicate that "Relevant portions of the ASA have been highlighted for ease of reference." AC ¶ 33. But there is nothing *easy* about Plaintiffs' referenced Agreement. Highlighting broad swaths of multiple paragraphs on almost every page of the 170-page

Second, Plaintiffs incorporate by reference their seventeen theories of liability as support for their breach of contract claim but many of these allegations describe conduct explicitly permissible under the Agreement. AC ¶ 118 (citing seventeen theories of liability as support for claim, ¶¶ 68-100.). Plaintiffs' allegation, for example, that Anthem improperly classified "affordable generic drugs and specialty pharmaceuticals" (*see, e.g.,* AC ¶ 73) is not a violation of the Agreement as it is conduct consistent with Anthem's contractual obligations in the Agreement. *See supra* Section I.C (explaining that nothing in the Agreement states that generic drugs cannot be classified as specialty). Plaintiffs' theories of liability supporting this cause of action are vague, conclusory, and lack the required specificity to state a claim. *See supra* Section I.

### B. *Plaintiffs Fail to State a Claim For Breach of Good Faith and Fair Dealing*

Plaintiffs also fail to state a claim for breach of good faith and fair dealing. In Virginia, an alleged breach of the implied covenant of good faith and fair dealing can only give rise to a breach of contract claim, but it is not an independent tort and therefore not a separate claim. *Douglas v. Ocwen Loan Servicing, LLC*, 2016 WL 1572925, at *5 (E.D. Va. Apr. 18, 2016) (Payne, J.) ("A breach of the implied covenant of good faith and fair dealing 'only gives rise to a breach of contract claim, not a separate cause of action.'" (citations omitted)).[22] Plaintiffs cannot plead a separate cause of action for breach of good faith and fair dealing. Underscoring the purpose of this rule, despite having an opportunity to amend and fix this pleading deficiency, Plaintiffs' good faith and fair dealing claim incorporates by reference and rests on the exact same allegations that support its

---

Agreement does not allow either Anthem or the Court to construe plausible allegations.

[22]  *See also Entrepreneur Dream Team v. Certain Interested Underwriters of Lloyd's Ins. Co.*, 2023 WL 5167007, at *6 (E.D. Va. July 7, 2023) (A "breach of that covenant 'does not amount to an independent tort;' instead, it 'gives rise only to a cause of action for breach of contract.' In other words, '[a] claim for the breach of that covenant is a claim for breach of contract.'" (citations omitted)); *Rogers v. Deane*, 992 F. Supp. 2d 621, 633 (E.D. Va. 2014) ("Where there is a claim for breach of contract, the inclusion of a claim for breach of the implied covenant of good faith and fair dealing as a separate claim is duplicative of the breach of contract claim.")

breach of contract claim.[23]  *Compare* AC ¶ 118 (breach of contract claim citing seventeen theories of liability as basis for claim, ¶¶ 68-100), *with* ¶¶ 126-133 (breach of good faith and fair dealing claim citing seventeen theories of liability as basis for claim, ¶¶ 68-100).  While Plaintiffs add additional allegations to their Amended Complaint regarding Anthem's discretion, they allege that Anthem exercised this discretion dishonestly and in bad faith by referring to the very same seventeen theories of liability and to actions based in the parties' Agreement.  Plaintiffs' claim should be dismissed as duplicative of the breach of contract claim.

Further, when parties to an agreement create valid, binding rights, the implied covenant of good faith and fair dealing is inapplicable to those express contractual terms.  *Bennett v. Bank of Am., N.A.*, 2012 WL 1354546, at *10 (E.D. Va. Apr. 18, 2012); *Ward's Equip., Inc. v. New Holland N. Am., Inc.*, 254 Va. 379, 385, 493 S.E.2d 516, 520 (1997) (The implied covenant of good faith and fair dealing "cannot be the vehicle for rewriting an unambiguous contract in order to create duties that do not otherwise exist.").  Here, the Agreement creates unambiguous rights and duties, which Anthem complied with.  *See supra* Section I.C  Plaintiffs' allegations that describe conduct expressly bargained for cannot form the basis of this cause of action, and the Court should therefore dismiss Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing.

### C.  Plaintiffs Fail to State a Claim for Breach of Fiduciary Duties

Plaintiffs fail to state a claim for breach of fiduciary duties.  To state a claim for breach of fiduciary duty, Plaintiffs must show that the duty arose from a noncontractual source.  *Self Insured Servs. Co. v. Panel Sys., Inc.*, 352 F. Supp. 3d 540, 557 (E.D. Va. 2018) ("[A] plaintiff alleging breach of a fiduciary duty must show that the duty owed by the defendant arose from a

---

[23]     While Plaintiffs no longer completely re-allege their theories under each cause of action, their amendments are merely cosmetic as Plaintiffs still cite to each of the seventeen theories of liability under each cause of action.

noncontractual source."); *Augusta Mut. Ins. Co. v. Mason*, 274 Va. 199, 205, 645 S.E.2d 290, 293 (2007) ("[I]in order to recover in tort, "the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract."). Plaintiffs again state the same seventeen theories of liability that form the basis of their breach of contract count and are based in the parties' Agreement, as support for their breach of fiduciary duty claim. *Compare* AC ¶ 118, *with* ¶ 141. This alleged misconduct arises solely from duties assigned to Anthem in the Agreement that were allegedly breached, therefore Plaintiffs' claim must be dismissed. *See supra* Section IV.A; AC ¶¶ 39-45. Additionally, Plaintiffs do not plausibly allege that Anthem has fiduciary obligations to Plaintiffs under ERISA, and therefore there can be no breach of fiduciary duty. *See supra* Section II.

### D. Plaintiffs Fail to State a Claim for Fraudulent Failure to Disclose

The Court should also dismiss Plaintiffs' claim for fraudulent failure to disclose. First, a fraud claim that is nothing more than a breach of contract claim should be dismissed. *Brown*, 2016 WL 206301, at *3 (Payne, J.) (A "fraud claim must be independent from the breach of contract claim."); *ITility, LLC v. Staffing Res. Group, Inc.*, 2020 WL 6701361, at *4 (E.D. Va. Nov. 13, 2020) ("A fraud claim must be dismissed if "it is nothing more than a contract claim dressed up as a tort claim; it is a fraud claim based on [defendant's] performance of a contractual duty."); *Hughes v. Wells Fargo Bank*, 2014 WL 12527212, at *7 (E.D. Va. Dec. 2, 2014) ("When a tort claim such as fraud is brought in a breach contract case, a court must ensure that the tort claim stems from the defendant's breach of a common law duty of care independent of any duties owed to the plaintiff under the contract."). Here, Plaintiffs' allegations in their fraud count incorporate the exact same seventeen theories of liability that their breach of contract claim rests on, including allegations of wrongdoing arising from Anthem's contractual duties under the Agreement. *Compare* AC ¶ 118 (breach of contract claim citing seventeen theories of liability as basis for claim, ¶¶ 68-100), *with*

27

¶¶ 145-147 (fraudulent failure to disclosure claim citing seventeen theories of liability as basis for claim ¶¶ 68-100); *see also Rossman v. Lazarus*, 2008 WL 4181195, at *8 (E.D. Va. Sept. 3, 2008) (dismissing fraud claim that "repeat[ed] nearly verbatim the allegations set forth in [the] breach of contract claim"). As Plaintiffs do not state a noncontractual basis for their fraud claim, based in on the same theories of liability as the breach of contract claim, the Court should dismiss the claim.

Second, even if the fraud claim was not based only on Anthem's contractual duties (though as pleaded, it is), Plaintiffs still fail to properly allege a claim. In Virginia, a plaintiff must prove by clear and convincing evidence: "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting in damage to the party misled." *Self Insured Servs. Co.,* 352 F. Supp. 3d at 555. The Fourth Circuit has held that under Rule 9(b), the elements of a fraud claim, including "the ***time***, ***place***, and ***contents*** of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby" must be pled with particularity. *Douros*, 508 F. Supp. 2d at 485 (emphasis added).

Despite having an opportunity to amend, Plaintiffs are still unable to allege any facts about when or where Anthem made misrepresentations to Plaintiffs or provide a single example. *See* AC ¶¶ 143-148. Plaintiffs allege that Anthem knew that "Plaintiff assumed Defendant was classifying prescription claims. . . in a manner that was faithful to the truth and was in the Plaintiff's interest." AC ¶ 146. Not only is this conduct consistent with the parties' Agreement (*see* Section I.C), but Plaintiffs do not allege what specific misrepresentation Anthem made. Plaintiffs also claim Anthem "knew that Plaintiff assumed it was receiving reasonably available discounts from providers and rebates from prescription claims." AC ¶ 146. Not only is it unclear what exactly the fraudulent misrepresentation alleged here is, but there are no details about when or where this

28

"misrepresentation" was made. In fact, Plaintiffs provide no specific examples of any misrepresentations or any details about actions or facts Anthem fraudulently failed to disclosure. Plaintiffs fail to identify any claims, transactions, or any other occurrences supporting their allegations, to satisfy 9(b)'s heightened pleading requirement. *See supra* Section I.C.

Plaintiffs also failed to plead detrimental reliance with any particularity as they completely neglect to allege that their reliance on Anthem's alleged misrepresentations was reasonable. *See* AC ¶¶ 143-148; *Wood v. Southside Physician Network, LLC*, 2019 WL 3416665, at *8 (E.D. Va. July 29, 2019) ("A plaintiff must also plead 'reasonable, detrimental reliance ... with particularity.'"). As Plaintiffs have failed to plead their fraud claim with particularity, fail to claim that their reliance on Anthem's misrepresentations was reasonable, and their allegations that support this claim are based only in a contractual duty, the Court should dismiss the claim.

### E. Plaintiffs Fail to State a Claim for Negligence

The Court should also dismiss Plaintiffs' claim for negligence. A claim for negligence must allege a legal duty owed by the Defendant that was breached, which proximately caused harm or injury. *Tohotcheu v. Harris Teeter, Inc.*, 2011 WL 5873074, at *4 (E.D. Va. Nov. 22, 2011) (dismissing claim for negligence). First, Plaintiffs fail to properly allege a duty that Anthem breached. "[A] duty that arises solely from a contractual obligation is ordinarily not actionable in tort." *Cormier v. Atl. Law Group*, 2012 WL 3249647, at *5 (E.D. Va. Aug. 7, 2012) (granting motion to dismiss negligence claim). Anthem and OMI were in a contractual relationship; any duty Anthem allegedly had or breached arose out of the Agreement.

A negligence claim cannot "merely allege[] negligent performance of contractual duties," as Plaintiffs do here. *Rossmann v. Lazarus*, 2008 WL 4550791, at *6 (E.D. Va. Oct. 7, 2008) (dismissing negligence claims where "any duty referenced in [the negligence claim] arises out of the contract between the parties"). Plaintiffs' allegations related to Anthem using "Plaintiff's

money to pay its contracted PBMs and providers," for example, are based in Anthem's authority under the Agreement and "simply allege[] negligent performance of contractual duties." AC ¶¶ 153, 155; *Rossman v. Lazarus*, 2008 WL 8958318, at \*7 (E.D. Va. Oct. 7, 2008) (dismissing negligence claim and holding that a "tort action cannot be based solely on a negligent breach of contract"). Plaintiffs' allegations regarding what a reasonable TPA should have done also describe "a duty that arises solely from a contractual obligation." AC ¶¶ 154, 155; *Cormier*, 2012 WL 3249647, at \*5.

Plaintiffs' negligence claim must be independent of its breach of contract claim, but here Plaintiffs again base their claim on the same seventeen theories of liability that their breach of contract claim relies on. *Commerce Funding Corp. v. S. Fin. Bank*, 80 F. Supp. 2d 582, 586 (E.D. Va. 1999) ("Under Virginia law, the claimant must allege an "independent, willful tort" beyond the mere breach of contract."); *Compare* AC ¶ 118 (breach of contract claim citing seventeen theories of liability as basis for claim, ¶¶ 68-100), *with* ¶¶ 151, 153, 155 (negligence claim citing seventeen theories of liability as basis for claim, ¶¶ 68-100). As Plaintiffs fail to state a claim for negligence that arises from a noncontractual source, the Court should dismiss Plaintiffs' claim.

## CONCLUSION

For the foregoing reasons, Anthem respectfully requests that the Court grant its motion to dismiss Plaintiffs' claims.

Dated: February 28, 2025        Respectfully submitted,

*/s/ Hugh M. Fain, III*
John M. Erbach (VA Bar No. 76695)
Hugh M. Fain, III (VA Bar No. 26494)
Spotts Fain PC
411 E. Franklin Street, Suite 600
Richmond, VA 23219
Tel: (804) 697-2040
Fax: (804) 697-2140
jerbach@spottsfain.com

30

hfain@spottsfain.com

E. Desmond Hogan (*pro hac vice*)
Briana L. Black (*pro hac vice*)
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, DC 20004
Tel: (202) 637-5600
Fax: (202) 637-5910
desmond.hogan@hoganlovells.com
briana.black@hoganlovells.com
david.maxwell@hoganlovells.com

Daniel Balmori (*pro hac vice*)
HOGAN LOVELLS US LLP
600 Brickell Avenue, Suite 2700
Miami, FL 33131
Tel: (305) 459-6500
Fax: (305) 459-6550
daniel.balmori@hoganlovells.com

*Counsel for Defendant*
*Anthem Health Plans of Virginia, Inc.*

31