FILED
2025 Mar-31 PM 03:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT E

## UNITED STATES DISTRICTC COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | | |
|---|---|---|
| OWENS & MINOR, INC. and | § | |
| OWENS & MINOR FLEXIBLE | § | Case No. 3:24-cv-820 |
| BENEFITS PLANS | § | |
| | § | |
| V. | § | |
| | § | |
| ANTHEM HEALTH PLANS OF | § | |
| VIRIGINA, INC. D/B/A ANTHEM | § | |
| BLUE CROSS AND BLUE SHIELD | § | |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT UNDER RULE 12(b)(6), ECF NOS. 33-34

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................... iii

TABLE OF DEFINED TERMS AND ABBREVIATIONS ........................................ ix

INTRODUCTION .......................................................................................................1

APPLICABLE STANDARDS ....................................................................................2

ARGUMENT & AUTHORITIES ...............................................................................2

I. Defendant Improperly Demands "Evidence" and Detailed Allegations...................2

II. The ASA Does Not Render Allegations Implausible for All Purposes....................6

III. Plaintiff States a Cause of Action Under ERISA.......................................................8

    A. ERISA Imposes Duties on Defendant to Protect Plaintiff and Plan Participants and Beneficiaries.........................................................................8

    B. Plaintiff Alleged Defendant Committed Misconduct as a Fiduciary...........8

    C. Defendant's Arguments Fail .......................................................................13

        1. Under ERISA, agreements offer Defendant no refuge from its responsibilities ................................................................................13

        2. Defendant's "mandatory contract provision" excuse fails............15

        3. Defendant's "corporate business decision" excuse fails................18

IV. Dismissal of Plaintiff's State Law Claims is Improper ...........................................20

    A. Defendant's Preemption Defense Fails........................................................20

    B. Plaintiff States a Contract Claim Based on Express Duties.......................23

    C. Plaintiff States a Contract Claim Based on Implied Duties.......................24

    D. Plaintiff States a Claim for Breach of Fiduciary Duty..............................25

    E. Plaintiff States a Claim for Fraudulent Concealment ...............................26

    F. Plaintiff States a Claim for Negligence .....................................................28

OBJECTIONS............................................................................................................30

CONCLUSION AND PRAYER ................................................................................30

## TABLE OF AUTHORITIES

*Cases*

*A.D. v. Wyndham Hotels & Resorts, Inc.*,
No. 4:19CV120, 2020 WL 9550005 (E.D. Va. Sept. 21, 2020)..................................................30

*Aetna Health Inc. v. Davila*,
542 U.S. 200 (2004)...............................................................................................................22

*Airparts Co., Inc. v. Custom Ben. Servs. of Austin, Inc.*,
28 F.3d 1062 (10th Cir. 1994)............................................................................................22, 23

*Allen Realty Corp. v. Holbert*,
227 Va. 441, 318 S.E.2d 592 (1984) ...................................................................................26, 30

*Alves v. Harvard Pilgrim Health Care Inc.*,
204 F. Supp. 2d 198 (D. Mass. 2002), *aff'd*, 316 F.3d 290 (1st Cir. 2003).............................17

*Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*,
821 F.3d 352 (2d Cir. 2016) ..................................................................................................19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..........................................................................................................4, 5, 6

*Astoria Fed. Sav. & Loan Ass'n v. Solimino*,
501 U.S. 104 (1991).................................................................................................................16

*Bd. of Trustees of Bricklayers & Allied Craftsmen Local 6 of N.J. Welfare Fund v. Wettlin Assocs., Inc.*,
237 F.3d 270 (3d Cir. 2001).......................................................................................................9

*Bd. of Trustees, Sheet Metal Workers' Nat'l Pension Fund v. Four-C-Aire, Inc.*,
929 F.3d 135 (4th Cir. 2019) ................................................................................................ 2-3

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..........................................................................................................2, 5, 6

*Breeden v. Richmond Cmty. Coll.*,
171 F.R.D. 189 (M.D.N.C. 1997) ..........................................................................................28

*Broadnax Mills, Inc. v. Blue Cross & Blue Shield of Va.*,
867 F. Supp. 398 (E.D. Va. 1994) ..........................................................................................13

*Casas v. Victoria's Secret Stores, LLC*,
No. CV 14-6412-GW(VBKX), 2014 WL 12708972 (C.D. Cal. Oct. 20, 2014)......................4

iii

*Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*,
    474 F.3d 463 (7th Cir. 2007) ...................................................................................17

*Chicago Studio Rental Inc. v. Ill. Dep't of Commerce & Econ. Opportunity*,
    No. 15 C 4099, 2016 WL 7213055 (N.D. Ill. Mar. 29, 2016) ....................................3

*Cogbill v. Boyd*,
    77 Va. 450 (1883)................................................................................................28, 29

*Corder v. Antero Res. Corp.*,
    57 F.4th 384 (4th Cir. 2023)....................................................................................27

*Crosby v. ALG Tr., LLC*,
    296 Va. 561, 822 S.E.2d 185 (2018) .........................................................................26

*Custer v. Sweeney*,
    89 F.3d 1156 (4th Cir. 1996) ...............................................................................8, 22

*Dawson-Murdock v. Nat'l Counseling Group, Inc.*,
    931 F.3d 269 (4th Cir. 2019) ...............................................................................8, 13

*Day v. SkyWest Airlines*,
    45 F.4th 1181 (10th Cir. 2022) ................................................................................20

*DeLuca v. Blue Cross Blue Shield of Mich.*,
    628 F.3d 743 (6th Cir. 2010).....................................................................................20

*Doctor's Hosp. of Slidell, LLC v. United HealthCare Ins. Co.*,
    No. CV 10-3862, 2011 WL 13213620 (E.D. La. Apr. 27, 2011) .................................6

*Doe v. United Behavioral Health*,
    523 F. Supp. 3d 1119 (N.D. Cal. 2021) ............................................................... 14-15

*Doe 1 v. Express Scripts, Inc.*,
    837 Fed. App'x 44 (2d Cir. 2020)..............................................................................20

*Doe by & Through Doe v. Baker*,
    299 Va. 628, 857 S.E.2d 573 (2021)..........................................................................27

*Edmonson v. Eagle Nat'l Bank*,
    922 F.3d 535 (4th Cir. 2019).....................................................................................27

*Egbukichi v. Wells Fargo Bank, NA*,
    No. 3:15-CV-2033-SI, 2017 WL 1199737 (D. Or. Mar. 29, 2017).............................3

*Enomoto v. Space Adventures, Ltd.*,
　624 F. Supp. 2d 443 (E.D. Va. 2009) ...................................................................................25

*Estate of Bryant v. Baltimore Police Dep't*,
　No. CV ELH-19-384, 2020 WL 673571 (D. Md. Feb. 10, 2020) ...............................................4

*Evans Constr. Servs., L.L.C. v. Ox Builders, LLC*,
　108 Va. Cir. 13, 2021 WL 8314543 (Apr. 6, 2021)............................................................ 25-26

*Fifth Third Bancorp v. Dudenhoeffer*,
　573 U.S. 409 (2014)......................................................................................................14, 15

*Flanigan v. Gen. Elec. Co.*,
　242 F.3d 78 (2d Cir. 2001) ....................................................................................................20

*Generations Health Care Network, LLC v. Norwood*,
　No. 18 CV 0267, 2019 WL 10379462 (N.D. Ill. Mar. 8, 2019) ...............................................3

*Goines v. Valley Cmty. Servs. Bd.*,
　822 F.3d 159 (4th Cir. 2016) .................................................................................................17

*Griggs v. E.I. DuPont de Nemours & Co.*,
　237 F.3d 371 (4th Cir. 2001) ...................................................................................................8

*Hall v. DIRECTV, LLC*,
　846 F.3d 757 (4th Cir. 2017) ...................................................................................................3

*Hi-Lex Controls, Inc. v. Blue Cross Blue Shield of Mich.*,
　751 F.3d 740 (6th Cir. 2014) .................................................................................................12

*Infectious Disease Doctors, P.A. v. Bluecross Blueshield of Tex.*,
　No. 3:13-CV-2920-L, 2014 WL 4262164 (N.D. Tex. Aug. 29, 2014)................................... 5-6

*In re AEP ERISA Litig.*,
　327 F. Supp. 2d 812 (S.D. Ohio 2004) ...................................................................................15

*In re Allianz Glob. Inv'rs U.S. LLC Alpha Series Litig.*,
　No. 20 CIV. 10028 (KPF), 2021 WL 4481215 (S.D.N.Y. Sept. 30, 2021) ..............................22

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*,
　312 F. Supp. 2d 1165 (D. Minn. 2004)...................................................................................15

*IT Corp. v. Gen. Am. Life Ins. Co.*,
　107 F.3d 1415 (9th Cir. 1997) ...............................................................................................15

*Kloots v. Am. Express Tax & Bus. Servs., Inc.*,
   233 Fed. App'x 485 (6th Cir. 2007)...................................................................................23

*LeBlanc v. Cahill*,
   153 F.3d 134 (4th Cir. 1998) .........................................................................................23

*Libbey-Owens-Ford Co. v. Blue Cross & Blue Shield Mut. of Ohio*,
   982 F.2d 1031 (6th Cir. 1993), *on reh'g en banc* (Feb. 23, 1993)...............................12

*Mass. Laborers' Health & Welfare Fund v. Blue Cross Blue Shield of Mass.*,
   66 F.4th 307 (1st Cir. 2023).........................................................................................17

*Moon v. BWX Techs., Inc.*,
   577 Fed. App'x 224 (4th Cir. 2014) .............................................................................10

*Nelson v. Commonwealth*,
   235 Va. 228, 368 S.E.2d 239 (1988) ...........................................................................29

*N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*,
   514 U.S. 645 (1995)......................................................................................................22

*Parker v. Carilion Clinic*,
   296 Va. 319, 819 S.E.2d 809 (2018) ...........................................................................30

*Paulsen v. CNF Inc.*,
   559 F.3d 1061 (9th Cir. 2009) .....................................................................................23

*Pegram v. Herdrich*,
   530 U.S. 211 (2000)......................................................................................................10

*Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*,
   399 F.3d 692 (6th Cir. 2005)........................................................................................23

*Peters v. Aetna Inc.*,
   2 F.4th 199 (4th Cir. 2021) ...................................................................8, 10, 11, 12, 15, 17

*Pharm. Care Mgmt. Ass'n v. Wehbi*,
   18 F.4th 956 (8th Cir. 2021) ........................................................................................22

*Phelps v. C.T. Enters., Inc.*,
   394 F.3d 213 (4th Cir. 2005) .......................................................................................10

*Pulsifer v. United States*,
   601 U.S. 124 (2024)......................................................................................................10

*Quisenberry v. Huntington Ingalls Inc.*,
    296 Va. 233, 818 S.E.2d 805 (2018) ...................................................................................29

*Rock Hill Dairy, LLC v. Genex Coop., Inc.*,
    No. 19-CV-845-WMC, 2020 WL 7042837 (W.D. Wis. Dec. 1, 2020) ....................................24

*Rutledge v. Pharm. Care Mgmt. Ass'n*,
    592 U.S. 80 (2020) ...........................................................................................................21, 22

*Saginaw Chippewa Indian Tribe of Mich. v. Blue Cross Blue Shield of Mich.*,
    32 F.4th 548 (6th Cir. 2022) ..............................................................................................14

*Sanctuary Surgical Ctr., Inc. v. United Healthcare, Inc.*,
    No. 10-81589-CIV, 2011 WL 2134534 (S.D. Fla. May 27, 2011) .............................................5

*Schissler v. Janus Henderson US (Holdings) Inc.*,
    No. 22-CV-02326-RM-SBP, 2024 WL 233141 (D. Colo. Jan. 22, 2024) ................................15

*Self Insured Servs. Co. v. Panel Sys., Inc.*,
    352 F. Supp. 3d 540 (E.D. Va. 2018) ..................................................................................26

*Spainhour v. B. Aubrey Huffman & Assocs., Ltd.*,
    237 Va. 340, 377 S.E.2d 615 (1989) ...................................................................................29

*Spinelli v. Nat'l Football League*,
    903 F.3d 185 (2d Cir. 2018) ........................................................................................... 24-25

*Stewart v. Evelyn*,
    No. 3:24CV84 (RCY), 2024 WL 4193899 (E.D. Va. Sept. 13, 2024) ......................................6

*Stickley v. Stickley*,
    50 Va. Cir. 526, 1999 WL 1441941 (1999) ..........................................................................26

*Stoney Glen, LLC v. S. Bank & Tr. Co.*,
    944 F. Supp. 2d 460 (E.D. Va. 2013) ..................................................................................25

*Tingler v. Graystone Homes, Inc.*,
    298 Va. 63, 834 S.E.2d 244 (2019) ...............................................................................28, 29

*Ulloa v. QSP, Inc.*,
    271 Va. 72, 624 S.E.2d 43 (2006) .......................................................................................23

*United States v. Pfizer, Inc.*,
    No. CV 05-6795, 2016 WL 807363 (E.D. Pa. Mar. 1, 2016) ..................................................3

*Varity Corp. v. Howe*,
   516 U.S. 489 (1996) ........................................................................................................10

*Va. Vermiculite, Ltd. v. W.R. Grace & Co.-Conn.*,
   156 F.3d 535 (4th Cir. 1998) .........................................................................................25

*Walsh v. Lalaja, Inc.*,
   565 F. Supp. 3d 766 (E.D.N.C. 2021) .............................................................................4

*Whetstone v. Howard Univ.*,
   No. CV 23-2409 (LLA), 2024 WL 4164692 (D.D.C. Sept. 12, 2024) .....................................15

*Willman v. Att'y Gen. of United States*,
   972 F.3d 819 (6th Cir. 2020) ...........................................................................................2

### Rules and Statutes

29 U.S.C. § 1002 ...............................................................................................................9
29 U.S.C. § 1104 ....................................................................................................... *passim*
29 U.S.C. § 1110 ..........................................................................................................13, 14
FED. R. CIV. P. 8 .........................................................................................................5, 25, 27
FED. R. CIV. P. 9 .....................................................................................................3, 4, 27, 28
FED. R. CIV. P. 12 ..............................................................................................1, 2, 6, 18, 19, 30
VA. CODE ANN. § 64.2-719 ...............................................................................................26
VA. CODE ANN. § 64.2-720 ...............................................................................................26
VA. CODE ANN. § 64.2-722 ...............................................................................................26
VA. CODE ANN. § 64.2-725 ...............................................................................................26
VA. CODE ANN. § 64.2-764 ...............................................................................................26
VA. CODE ANN. § 64.2-766 ...............................................................................................26
VA. CODE ANN. § 64.2-769 ...............................................................................................26
VA. CODE ANN. § 64.2-775 ...............................................................................................26

### Miscellaneous

RESTATEMENT (THIRD) OF AGENCY § 7.03 (2006) .......................................................................30
RESTATEMENT (THIRD) OF AGENCY § 7.05 (2006) .......................................................................30

**TABLE OF DEFINED TERMS AND ABBREVIATIONS**

| | |
|---|---|
| **AC** | Cites to ECF 25, Plaintiff's First Amended Complaint |
| **ASA** | ECF 25-1, 25-3, the Administrative Services Agreement between Plaintiff and Defendant as amended |
| **Complaint** | ECF 25, Plaintiff's First Amended Complaint |
| **Defendant** | Defendant, Anthem Health Plans of Virginia, Inc., doing business as Anthem Blue Cross and Blue Shield |
| **ESOP** | Employee Stock Ownership Plan |
| **Ex.** | Cites to exhibits to Plaintiff's Amended Complaint at ECF 25-1, 25-2, and 25-3. |
| **Mem**. | Cites to ECF 34, Defendant's Memorandum of Law in Support of Defendant's Motion to Dismiss Plaintiff's First Amended Complaint |
| **Motion** | ECF 33, Defendant's Motion to Dismiss Plaintiff's First Amended Complaint Under Rule 12(b)(6) |
| **OMI** | Plaintiff, Owens & Minor, Inc., in its individual capacity |
| **Plaintiff** | OMI in its individual capacity and in its capacity as fiduciary representative of the Owens & Minor Flexible Benefits Plan |
| **Plan** | Plaintiff, Owens & Minor Flexible Benefits Plan |
| **Rule(s)** | Federal Rules of Civil Procedure |
| **Sample Claims** | Filed under seal as Exhibit D to the Complaint, *see* ECF 26, 31-1 |
| **SPD** | ECF 25-2, Medical Benefit Booklet also referred to as "Summary Plan Description" |
| **TPA** | Third Party Administrator |

**INTRODUCTION**

Heads Defendant wins, tails Plaintiff loses. Those are the rules, says Defendant. Defendant denies committing misconduct *as a fiduciary* in an effort to render ERISA "inapplicable," while also arguing ERISA preempts state law claims. Defendant demanded allegations of sample claims but now argues Plaintiff's samples are fatally "cherry-picked." Defendant even argues that its violations of the ASA save it from ERISA liability while arguing state contract claims are preempted. Defendant ignores Plaintiff's allegations and then violates Rule 12 by injecting extrinsic facts in its 12(b)(6) Motion.[1] But Defendant's win-win approach does not reflect the law. Under proper application of the law and Rules, Defendant's Motion fails on all fronts.

*First*, despite Defendant's demands for "evidence" and for answers to its arbitrary questions, Plaintiff's well-pled allegations exceed the "speculative" threshold and provide Defendant ample notice of Plaintiff's claims. *Second*, Defendant's selective citation to ASA language fails to overcome ERISA's statutory language holding Defendant to a fiduciary standard and wilts under the weight of other ASA language and Plaintiff's allegations. *Third*, Plaintiff states a claim under ERISA despite Defendant's arguments that contract provisions forgive its fiduciary breaches and alter its fiduciary status, and that ERISA does not apply to a TPA when it directs its misconduct to all self-funded plans it administers. *Fourth*, Defendant's have-its-cake-and-eat-it-too preemption argument fails under the law, especially in light of Defendant's argument that it acted as a mere contract service provider and not as an ERISA fiduciary. *Fifth*, Plaintiff alleged causes of action under Virginia law, and Defendant's challenge evinces a failure to read Plaintiff's allegations, a misunderstanding of Plaintiff's allegations, a misunderstanding of the law, or some combination thereof. The Court should deny Defendant's Motion.

---

[1] For example, Defendant alleges, "Anthem negotiated provider contracts to be used across Anthem's entire book of business." Mem. at 3.

**APPLICABLE STANDARDS**

A Rule 12(b)(6) movant bears the burden to show the complaint fails to state a claim. *Willman v. Att'y Gen. of United States*, 972 F.3d 819, 822 (6th Cir. 2020). In analyzing a complaint, "the Court must assume as true all its well-pleaded facts and draw all reasonable inferences in favor of the plaintiff." *Bd. of Trustees, Sheet Metal Workers' Nat'l Pension Fund v. Four-C-Aire, Inc.*, 929 F.3d 135, 145 (4th Cir. 2019) (quotes omitted). A complaint "does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It needs only factual "grounds" stated in a manner representing more than mere "labels and conclusions" or "formulaic recitation of the elements of a cause of action." *Id.* Courts accept factual allegations as true and should deny a 12(b)(6) motion if the allegations "raise a right to relief above the speculative level." *Id.* The standard requires only "enough fact to raise a reasonable expectation that discovery will reveal evidence" of actionable misconduct. *Id.* at 556. This is sufficient even if "it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very . . . unlikely." *Id.* (quotes omitted). Rule 12(b)(6) dismissal is appropriate only if there is "no reasonably founded hope that the discovery process will reveal relevant evidence." *Id.* at 559 (quotes omitted).

**ARGUMENT & AUTHORITIES**

**I. DEFENDANT IMPROPERLY DEMANDS "EVIDENCE" AND DETAILED ALLEGATIONS.**

A complaint "does not need detailed factual allegations." *Twombly*, 550 U.S. at 555. Nor is evidentiary support required. The Fourth Circuit has dutifully upheld these principles. *See generally*, *Four-C-Aire*, 929 F.3d 135. In *Four-C-Aire*, an ERISA fund alleged the defendant-employer failed to pay an "exit contribution" pursuant to plan amendments. *Id.* at 137-38, 143. The district court dismissed based in part on the fund's failure to allege the documents were "properly" amended and incorporated. *Id.* at 144. On appeal, the fund argued general allegations

2

of "amendment" supported an inference of "proper" amendment. *Id.* at 145. Agreeing, the Fourth Circuit recognized that federal pleading standards do not require a plaintiff to marshal proof of allegations. *Id.* at 152 (cautioning against dismissal based on assumptions about unknowns and noting it "must construe the complaint liberally so as to do substantial justice." (quotes omitted)).

Likewise, the Fourth Circuit has refused to require allegations of specific examples of misconduct. *See Hall v. DIRECTV, LLC*, 846 F.3d 757, 763 (4th Cir. 2017). In a wage case, defendants argued that plaintiffs must allege an "accounting of the number of uncompensated hours they worked." *Id.* at 776. Presented with two choices, the court adopted the more lenient approach that merely required "sufficient" allegations of uncompensated time at work. *Id.* at 776-777. The court "emphasize[d] that the standard [it] adopt[ed] does not require plaintiffs to identify a *particular* week in which they worked uncompensated overtime hours." *Id.* at 777 (original emphasis). The court cited favorably an explanation that allegations a plaintiff "typically" worked overtime and was not paid overtime on "one or more" of those occasions would suffice. *Id.* Even if Rule 9(b)'s specificity requirements applied, specific examples would not be required at the pleading stage. *See United States v. Pfizer, Inc.*, No. CV 05-6795, 2016 WL 807363, at *11 (E.D. Pa. Mar. 1, 2016) (holding allegations of a "specific claim for payment" or sample "off-label prescription" not required in False Claims Act case).[2]

---

[2] Indeed, with the exception of Defendant's outlier, inapposite district court orders from outside this circuit, courts refuse to require plaintiffs to marshal proof or offer detailed allegations in complaints. *See Chicago Studio Rental Inc. v. Ill. Dep't of Commerce & Econ. Opportunity*, No. 15 C 4099, 2016 WL 7213055, at *5 (N.D. Ill. Mar. 29, 2016) (noting "Defendants are correct that . . . [plaintiff] must allege that it is similarly situated to another who was treated more favorably," but holding such plaintiff "is not required to identify specific examples of similarly situated persons in its complaint" (cleaned up)); *Egbukichi v. Wells Fargo Bank, NA*, No. 3:15-CV-2033-SI, 2017 WL 1199737, at *4 (D. Or. Mar. 29, 2017) (in discrimination case, "reject[ing] Defendant's argument that Plaintiffs must specifically identify the purported similarly qualified white applicants" in their complaint); *Generations Health Care Network, LLC v. Norwood*, No. 18 CV 0267, 2019 WL 10379462, at *6 (N.D. Ill. Mar. 8, 2019) ("Requiring plaintiffs to plead

Courts' refusal to apply Defendant's heightened pleading standard makes sense in a case like this, where the defendant controls *and* conceals records detailing its misconduct. *See* AC ¶¶ 1-3, 21-28, 72, 95, 100; *Bryant*, 2020 WL 673571 at \*36 (citing *Iqbal*'s[3] statement that 12(b)(6) standard creates a "context-specific task" and observing civil rights plaintiffs "will often . . . lack specific details regarding the municipal actor's internal policies"; thus, a court "should not expect the plaintiff to possess a rich set of facts concerning the allegedly unconstitutional policy and the responsible policy makers"); *Casas v. Victoria's Secret Stores, LLC*, No. CV 14-6412-GW(VBKX), 2014 WL 12708972, at \*4 (C.D. Cal. Oct. 20, 2014) (in wage case, holding "specific examples" of unlawful conduct not required and collecting cases for proposition that defendants have fair notice of claims when allegations and defendant's records reveal the claims' bases).

Not only does Defendant fail to carry its 12(b)(6) burden by not challenging causes of action; it applies the wrong standard. Defendant argues certain allegations in paragraphs 69, 71, 76, 78, 82, 83, 86, 89, 91, 94, 96, 98, 99, and 100 fail to provide fair notice or support plausible grounds for relief because Plaintiff does not marshal proof in support or answer Defendant's arbitrary questions. Mem. at 8-11. In perhaps a Freudian slip, Defendant criticizes the decision "not to cite any *evidence* . . . showing that Anthem actually engaged in this alleged misconduct."

---

specific examples smacks of the inapplicable heightened pleading standard . . . under Rule 9(b)."); *Walsh v. Lalaja, Inc.*, 565 F. Supp. 3d 766, 771 (E.D.N.C. 2021) (in retaliation case, rejecting argument that plaintiff must "provide . . . specific examples of threatening or harassing behavior or specific instances in which employees' hours were reduced" or "identify [a] specific employee who was subjected to threatening, harassing, or intimidating behavior"); *Estate of Bryant v. Baltimore Police Dep't*, No. CV ELH-19-384, 2020 WL 673571, at \*35-36 (D. Md. Feb. 10, 2020) (in civil rights action under 42 U.S.C. § 1983, rejecting defendant's challenge to *Monell* policy allegations based on plaintiff's failure to identify examples of "policymaking officials" or "specific, affirmative decisions" by such officials and characterizing the challenge as an effort "to foist an unreasonable pleading standard upon plaintiffs' *Monell* claim").

[3] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Mem. at 9.[4] But even without citing examples or answering Defendant's arbitrary questions, Plaintiff's allegations provide Defendant fair notice of plausible claims and, thus, satisfy Rule 8, *Iqbal*, and *Twombly*.

For example, Defendant feigns confusion regarding Plaintiff's allegation that Defendant failed to pay Plaintiff 100% of drug rebates generated by the Plan. Mem. at 8. Surely, Defendant can easily identify records relating to this straightforward allegation given its total control over relevant information. AC ¶¶ 21-28, 50-52, 100, 153. Defendant can defend against allegations that it paid for services not provided using Plan money by, among other things, demonstrating its systems identified discrepancies between patient charts (concealed by Defendant) and bills. AC ¶ 86. By arguing the ASA defeats the "spread pricing"[5] allegations, while incorrect, Defendant shows it can respond to those allegations without sample claims. *See* Mem. at 9. Plaintiffs' allegations in the Complaint provide Defendant's misconduct in sufficient detail under *Iqbal* and *Twombly*.[6] AC ¶¶ 1-2, 21-28, 56-100, 103-157.

---

[4] All emphasized language in quotes has been added unless otherwise noted.

[5] "Spread pricing" refers to Defendant's practice of paying more for prescription claims with Plaintiff's money than what was paid to the provider. AC ¶ 79.

[6] Defendant cites a series of inapposite, outlier cases involving claims for unpaid benefits—all unpublished and from outside the Fourth Circuit—for the legal proposition that Plaintiff must allege specific claim numbers to overcome Defendant's Motion. One case involved healthcare providers suing five insurance companies for failing to pay specific claims for patients treated by those providers. *Sanctuary Surgical Ctr., Inc. v. United Healthcare, Inc.,* No. 10-81589-CIV, 2011 WL 2134534, at *1 (S.D. Fla. May 27, 2011). The issue was whether plaintiffs provided fair notice of their claims. *Id.* at *3. But the providers did not identify the patients who assigned the right to payment to providers and for whom the providers sought payment. *Id.* Despite suing five different insurers, the providers did not even identify the relevant ERISA plan at issue so that each defendant could ascertain whether that defendant may be responsible. *Id.* The providers did not identify the treatment for which they sought payment. *Id.* In short, the "defendants [we]re incapable of preparing a proper answer to the complaint." Thus, unlike here, the lawsuit sought payment for specific treatment for various patients under specific plans, but the providers identified no way for the defendants to identify the treatment, patients, and plans. Moreover, the court cautioned that these facts should be alleged only "to the extent possible." *Id.*; *see also Infectious Disease Doctors, P.A. v. Bluecross Blueshield of Tex.*, No. 3:13-CV-2920-L, 2014 WL 4262164, at *1, *3 (N.D. Tex.

## II.   THE ASA DOES NOT RENDER ALLEGATIONS IMPLAUSIBLE FOR ALL PURPOSES.

Without tethering its challenges to specific claims, Defendant argues that certain misconduct is "consistent with" the ASA and cannot support *any claim*. *See Stewart v. Evelyn*, No. 3:24CV84 (RCY), 2024 WL 4193899, at *5, *6 n.6 (E.D. Va. Sept. 13, 2024) (refusing to address arguments not made because, "[u]ltimately . . . the burden lies with the movant to show entitlement to dismissal"). While Plaintiff addresses Defendant's inapposite case support below, Defendant's arguments fail for additional reasons. *First*, Defendant mischaracterizes Plaintiff's specialty-drug allegations as relying on the premise that specialty drugs cannot be generic. Mem. at 12; AC ¶¶ 73-74. Plaintiff actually alleges Defendant misclassified drugs (that had no special requirements) as exponentially more expensive "specialty drugs" in order to extract more Plan money for Defendant's affiliates. AC ¶ 74. *Second,* with respect to Plaintiff's allegation that Defendant failed to secure reasonable discounts and rebates for prescriptions, Defendant argues "OMI did not contract (nor is it standard practice for a PBM or claims administrator to)[7] secure the best possible rebates in the market." Mem. at 12; AC ¶¶ 83-85. But Plaintiff does not seek "the best possible rebates," and "minimum" guarantees cited by Defendant do not preclude Defendant from doing better if prudence, loyalty, and good faith demand it. *Infra* pp. 13-17. Defendant also does not address allegations it breached these guarantees. AC ¶¶ 83-85. *Third*, failing to address all of

---

Aug. 29, 2014) (also involving claims by providers against insurers for failing to pay for patients' healthcare claims and dismissing because, despite having ready access to the information given they generated the information themselves, the providers failed to identify the physicians rendering the treatment, the treatment provided and for which payment was sought, or even the patients covered by the plan); *Doctor's Hosp. of Slidell, LLC v. United HealthCare Ins. Co.*, No. CV 10-3862, 2011 WL 13213620, at *1, 2 (E.D. La. Apr. 27, 2011) (in case where twenty-seven providers alleged they were assigned the right to recover payments for treatment of patients, they failed to identify those patients, the terms of the assignments, or the services provided). Any suggestion these district court opinions establish bright-line rules conflicts with *Iqbal* and *Twombly*.

[7] Defendant's characterization of "standard practice" should be disregarded under Rule 12(d).

Plaintiffs' relevant allegations, Defendant summarily argues the ASA eliminates Defendant's liability for punishing Plaintiff if it failed to designate Defendant and its affiliates as exclusive specialty drug providers. Mem. at 12; AC ¶¶ 80-81. This argument ignores ERISA's prohibitions against contractual evasions of fiduciary duty and ignores the reality that Defendant inflated Plaintiff's specialty-drug expenses in one of two ways—through the punitive 10% fee or by improperly classifying non-specialty drugs as specialty drugs. AC ¶¶ 80-81, 73-74. *Infra* pp. 13-17. **Fourth**, Defendant argues the ASA's *silence* on Defendant's right to retain spread-pricing overpayments—and Defendant's alleged discretion to retain them—defeat Plaintiff's relevant allegations. Mem. at 13; AC ¶¶ 78-79. But given Defendant's unfettered control over Plan administration, management, assets, and interpretation, the law provides a remedy. *Infra* pp. 8-13. **Fifth**, Defendant argues the ASA granted Defendant discretion to charge Plaintiff more than 100% of billed charges, thus relieving Defendant of liability. Mem. at 13; AC ¶¶ 69-70. Defendant cites no authority for this point. *Infra* pp. 8-15. Moreover, Defendant attempts to shoehorn language in this justification ("methodology required under Anthem's [unproduced] contract with that Provider") that is not supported by its citations to the ASA. Mem. at 13. And while the definition of "Paid Claim" includes payments by the Plan in excess of billed charges, Defendant apparently concedes its decision to pay more than billed with Plan funds was discretionary as the ASA language suggests, thereby implicating its fiduciary duty. **Ex. A** at 2 ("Paid Claim" § 1); Mem. at 13 ("may be reimbursed . . ."); *infra* pp. 8-13. **Sixth**, though not addressing Plaintiff's variance-account and overpayment allegations, Defendant concedes its payment of BlueCard fees with Plan money amounts to a breach of contract under ERISA and state law. Mot. at 13-14, AC ¶¶ 62-65, 98; 29 U.S.C. § 1104(a)(1)(D).

**III.     PLAINTIFF STATES A CAUSE OF ACTION UNDER ERISA.**

Defendant argues only it did not commit certain alleged misconduct *as a Plan fiduciary*. Mem. at 14-18. Defendant's argument fails because (i) Defendant's misconduct took place in the context of exercising control over Plaintiff's assets and discretionary control over Plan administration and management, and (ii) ERISA does not permit Defendant to use contract language to duck its fiduciary status or dodge its fiduciary responsibilities.

**A.  ERISA Imposes Duties on Defendant to Protect Plaintiff and Plan Participants and Beneficiaries.**

"ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Peters v. Aetna Inc.*, 2 F.4th 199, 215 (4th Cir. 2021). To protect participants in employee benefit plans, ERISA requires fiduciaries to abide by the following duties:

> *the duty of loyalty*, which requires that all decisions regarding an ERISA plan be made with an eye single to the interests of the participants and beneficiaries; (2) *the prudent person fiduciary obligation*, which requires a plan fiduciary to act with the care, skill, prudence, and diligence of a prudent person acting under similar circumstances; and (3) *the exclusive benefit rule*, which requires a fiduciary to act for the exclusive purpose of providing benefits to plan participants.

*Peters*, 2 F.4th at 228 (cleaned up). Fiduciaries also must comply with plan documents (if consistent with ERISA) and refrain "from making material misrepresentations and incomplete . . . disclosures to the plan beneficiaries." *Id.*; 29 U.S.C. § 1104(a)(1)(D); *Griggs v. E.I. DuPont de Nemours & Co.*, 237 F.3d 371, 380 (4th Cir. 2001).

**B.  Plaintiff Alleged Defendant Committed Misconduct as a Fiduciary**.

The Fourth Circuit "liberally construe[s] fiduciary status under ERISA" in order to protect participants in ERISA plans. *Dawson-Murdock v. Nat'l Counseling Group, Inc.*, 931 F.3d 269, 278 (4th Cir. 2019); *Custer v. Sweeney*, 89 F.3d 1156, 1161 (4th Cir. 1996) ("The concept of fiduciary under ERISA is broader than the common law concept of trustee." (cleaned up)). A

8

fiduciary can be named or functional. *Id.* A functional fiduciary exercises discretionary control over Plan management *or* administration, or exercises "*any* authority or control respecting management or disposition of" plan assets. 29 U.S.C. § 1002(21)(A). The relevant question is whether Defendant's misconduct falls within its discretionary control over Plan management or administration, or its control over management and disposition of Plan assets. *See, e.g. id.*

Plaintiff alleged Defendant controlled management and disposition of Plan assets (i) by unilaterally determining amounts the Plan pays for claims and (ii) through its authority to pay claims from Plaintiff's funds using ACH pulls. AC ¶¶ 39-41, 45 50-52. Thus, when misconduct involves Defendant's payments with Plaintiff's money or encumbering Plan assets with debt, it is a fiduciary act notwithstanding any lack of discretion. *See e.g.*, *Bd. of Trustees of Bricklayers & Allied Craftsmen Local 6 of N.J. Welfare Fund v. Wettlin Assocs., Inc.*, 237 F.3d 270, 272–73 (3d Cir. 2001) (under ERISA's definition of "fiduciary," "the word 'discretionary' is conspicuously absent when the text refers to assets. . . . [I]t reflects the high standard of care trust law imposes upon those who handle money or other assets on behalf of another." (some quotes omitted)).

As for discretionary control over Plan management and administration, Plaintiff (i) cited the ASA's designation of Defendant as fiduciary "to determine claims for benefits," "to interpret the terms of the Plan," and for all other acts "necessary to perform [Defendant's] obligations and duties as expressed in [the ASA]," AC ¶ 39; (ii) alleged Defendant possessed *and exercised* unchecked discretion in deciding how much the Plan paid, whether claims were covered, and whether to identify and recover overpayments caused by coding errors or other mistakes, AC ¶¶ 39-45, 50-52; and (iii) demonstrated the SPD names Defendant "claims administrator" and highlights its authority to "determine all questions arising under the Plan," to exercise "complete discretion" to interpret the Plan, and to exercise "final and conclusive" say over the Plan including

9

coverage decisions and maximum allowed amounts, AC ¶¶ 46-49. Defendant exercised unfettered discretion over Plan information. AC ¶¶ 21-28, 51, 100; **Ex. A** at 10-11. The Fourth Circuit has opined a TPA acts as a fiduciary when acting pursuant to plan documents, such as an SPD, that (i) designate it "Claims Administrator"; (ii) state the plan "is administered" by that TPA; and (iii) grants the TPA discretion over plan interpretation, claim validation and evaluation, and resolution of disputes. *Moon v. BWX Techs., Inc.*, 577 Fed. App'x 224, 231-32 (4th Cir. 2014) (holding such evidence supported conclusion that TPA—not the employer—was the fiduciary).

Determining whether Defendant wore its "fiduciary hat" when committing misconduct is not a hyper technical inquiry as Defendant suggests.[8] Prototypical fiduciary actions—like nearly all actions at issue here—involve "managing assets and distributing property to beneficiaries." *Pegram v. Herdrich*, 530 U.S. 211, 231-32 (2000) (distinguishing mixed eligibility and treatment decisions by physicians). This issue relies on formal allocations of responsibilities under contract and defendants' assumption of fiduciary responsibilities. *Phelps v. C.T. Enters., Inc.*, 394 F.3d 213, 219 (4th Cir. 2005).[9] Given the breadth of Defendant's fiduciary responsibility over disposition and management of Plan assets and Plan administration, management, information, and interpretation, AC ¶¶ 21-28, 39-52, 100, the relevant question is this: *Does the following conduct fall within Defendant's fiduciary role?*

- approving claims for overcharges, overpaying claims with Plan money, and refusing to

---

[8] Plaintiff agrees that Defendant's status as a fiduciary does not present an "all-or-nothing" proposition. *See Peters*, 2 F.4th at 228. But that does not mean that Defendant can arbitrarily narrow its fiduciary role to avoid its duties under ERISA.

[9] "The law of trusts also understands a trust document to implicitly confer such powers as are necessary or appropriate for the carrying out of the purposes of the trust." *Varity Corp. v. Howe*, 516 U.S. 489, 502 (1996) (quotes omitted). The *Varity* court held statements made about a plan fell within the scope of "fiduciary" actions and rejected the defendant's argument that neither ERISA nor the plan documents required the disclosures at issue. *Id.* at 502, 504.

recover or disclose those overpayments (AC ¶¶ 69-70, 86, 89-97).

- making duplicative payments on claims with Plan money to the detriment of the Plan and its members (AC ¶¶ 71-72).

- approving claims and paying claims with Plan money for improperly designated specialty pharmaceuticals (AC ¶¶ 73-74).

- approving claims—and paying exponentially more than retail price with Plan money—for generic drugs (AC ¶¶ 73, 75).

- approving and paying prescription claims without recovering earned, agreed rebates or discounts for the Plan (AC ¶¶ 76-77, 83-85).

- approving, concealing, and paying for spread pricing with Plan money to the detriment of the Plan and its members (AC ¶¶ 78-79).

- employment and supervision of others employed by Defendant to help Defendant manage and administer the Plan and its assets (AC ¶¶ 80-82, 98-99).

- payment of excessive amounts on claims with Plan money to benefit Defendant's other business segments (AC ¶¶ 87-88).

- making undisclosed payments of BlueCard fees and retaining overpayments of claims— all with Plan money (AC ¶¶ 62-65, 98).

- using unfettered control over Plan claims data and other information to conceal this misconduct (AC ¶ 100).

The answer, according to the law, Plaintiff's allegations, and the anticipated evidence is "yes." In short, the misconduct alleged in Complaint paragraphs 68-100 falls within the scope of Defendant's control over Plan assets, and discretionary control over Plan administration and management. AC ¶¶ 39-52, 100. Applicable case law bears this out. In *Peters*, the Fourth Circuit

11

concluded that a TPA's violation of mandatory contract provisions, concealment of that violation, and misuse of plan funds in connection with payments made to the TPA's contractors supported ERISA claims given the TPA's discretion to employ others to work for the Plan and authority over disposition of plan assets. 2 F.4th at 209-211, 229-232. The TPA and its contractor agreed the self-funded plan and its members would pay the contractor's fees even though the TPA-plan contract required the TPA to pay them. *Id.* at 210-11. The participant alleged the TPA breached its fiduciary duties, but the district court dismissed the case. *Id.* at 209, 213. The Fourth Circuit held evidence showed the TPA "was a functional fiduciary regarding many of the complaint-related actions." *Id.* at 229. The TPA had discretion to subcontract its work to others, including the contractor at issue. *Id.* at 210. The TPA had authority to commit plan money to pay claims. *Id.* at 230. The court then addressed "the threshold question" of whether evidence showed the TPA acted as a fiduciary when it paid (with plan funds) and concealed fees charged by the contractor. *Id.* Answering the question "yes," the court first criticized the district court's preoccupation with the TPA's employing the contractor (an act it was permitted to do). *Id.* The court then explained the misconduct fell within the scope of Defendant's fiduciary duties because its decision to make and conceal those payments "was a discretionary act." *Id.* at 232. "Bolstering" the court's conclusion was the TPA's authority to "direct[] Plan assets to pay claims," which the TPA exercised when it *overpaid* claims. *Id.* The court therefore reversed dismissal of ERISA claims against the TPA. *Id.* at 238; *see also Hi-Lex Controls, Inc. v. Blue Cross Blue Shield of Mich.*, 751 F.3d 740, 743, 744-47 (6th Cir. 2014) (where plan agreed to pay a flat fee to TPA but TPA marked up price of hospital services and retained the difference, the court held TPA's discretionary "right" to fees and authority over plan assets supported fiduciary status); *Libbey-Owens-Ford Co. v. Blue Cross & Blue Shield Mut. of Ohio*, 982 F.2d 1031, 1032, 1035-36 (6th Cir. 1993), *on reh'g en banc* (Feb. 23, 1993) (holding alleged

12

failure to account for rebates fell within discretionary authority to administer claims); *cf. Dawson-Murdock*, 931 F.3d at 278-79, 280.[10]

Predictably, Defendant advocates a *narrow* view of its fiduciary duties. But the case law, ASA, SPD, and Defendant's actions connect Defendant's misconduct to Defendant's authority over Plan assets and Plan administration and management. AC ¶¶ 38-52, 69-100, 103-112.

### C. Defendant's Arguments Fail.

#### 1. Under ERISA, agreements offer Defendant no refuge from its responsibilities.

Defendant does not seriously dispute its boundless fiduciary status with respect to Plan assets, management, and administration. Instead, Defendant argues ASA provisions relieve it of fiduciary status and excuse certain misconduct. *See* Mem. at 11-18. ERISA summarily defeats this argument. A plan fiduciary must discharge its duties (i) "solely in the interest of the participants and beneficiaries"; (ii) "for the exclusive purpose" of providing benefits and "defraying reasonable expenses of administering the plan"; (iii) prudently; and (iv) according to plan documents "*insofar as such documents . . . are consistent with the provisions of this subchapter*." 29 U.S.C. § 1104(a). ERISA also prohibits "any provision in an agreement or instrument which purports to relieve a fiduciary from *responsibility* or liability for any . . . duty" imposed by ERISA's fiduciary-duty provisions. 29 U.S.C. § 1110(a). ERISA thus emphasizes a fiduciary cannot hide behind contractual carve-outs as Defendant does here. In other words, if Defendant otherwise satisfies

---

[10] *See also Broadnax Mills, Inc. v. Blue Cross & Blue Shield of Va.*, 867 F. Supp. 398, 399-400, 405, 405 n.10 (E.D. Va. 1994) (where TPA failed to advise plan on insurance to protect plan assets and failed to account for discounts, the court took a broad view by holding TPA's failure was a fiduciary act: "[T]he defendant was exercising its control over the disposal and management of plan assets when it allegedly failed to procure, or advise the plaintiff to procure, additional stop-loss insurance with plan assets under its control. Moreover . . . the defendant was exercising administrative discretion in its handling of provider discounts in so far as such discounts touch upon core plan functions, such as reporting and disclosure." *Id.* (denying remand).

ERISA's definition of "fiduciary," plan documents will not remove that status.

To the extent Congress left any doubt, the Supreme Court has removed it. In *Fifth Third Bancorp v. Dudenhoeffer*, the Supreme Court considered whether an ESOP fiduciary could avoid its duty of prudence given law that allowed—and plan documents that required—it to invest primarily in employer stock. 573 U.S. 409, 412 (2014).[11] In *Dudenhoeffer*, participants sued fiduciaries under ERISA for failing to alter investment strategies because the employer stock was overvalued. *Id.* at 413-14.[12] Akin to Defendant's mandatory-provision excuse in this case, the fiduciaries argued plan documents eased the duty to act prudently because they *required* the fiduciaries to focus investment on employer stock. *See Dudenhoeffer*, 573 at 420-22. The Court disagreed. Citing § 1104(a)(1)(D), the court concluded, "the duty of prudence trumps the instructions of a plan document." *Id.* at 421. And after citing § 1110's prohibition of contractual disclaimers of fiduciary duties, the Court concluded it "would make little sense if . . . the duty of prudence is defined by the aims of the particular plan as set out in the plan documents, since in that case the duty of prudence could never conflict with a plan document." *Id.* Delivering the death knell to the fiduciaries' argument that plan documents trump ERISA, the Court recounted its previous holding that "trust documents cannot excuse trustees from their duties under ERISA." *Id.* at 422; *see also Saginaw Chippewa Indian Tribe of Mich. v. Blue Cross Blue Shield of Mich.*, 32 F.4th 548, 555 n.2 (6th Cir. 2022) (commenting on self-serving language in ASA disclaiming certain fiduciary statuses and citing § 1110 for the proposition that "ERISA fiduciaries cannot contract away their fiduciary status"); *Doe v. United Behavioral Health*, 523 F. Supp. 3d 1119,

---

[11] An ESOP invests primarily in the stock of plan participants' employer. *Id*. at 412.

[12] Despite acknowledging the limited exception to ERISA's diversification duties for ESOP plans, the Court first held the law did not support a presumption that the defendant-fiduciaries had acted prudently. *Id.* at 416-17, 418-19 ("ESOP fiduciaries are subject to the duty of prudence just as other ERISA fiduciaries are.").

1126-27 (N.D. Cal. 2021) (where TPA possessed authority to approve or reject healthcare claims on behalf of the plan, rejecting argument that TPA's inability to change relevant exclusion TPA applied to deny plaintiff's claims rendered TPA a non-fiduciary for purposes of that claim).[13]

Thus, the ASA does not relieve Defendant of its fiduciary status or duties.

## 2. Defendant's "mandatory contract provision" excuse fails.

Nevertheless, Defendant argues "mandatory" contract provisions defeat Plaintiff's ERISA claims. Mem. at 16-18. Defendant's arguments not only mischaracterize Plaintiff's allegations; they also beg the question: If the act of complying (or not complying) with plan documents is not a fiduciary act, then why did Congress require *fiduciaries* to act "in accordance with the documents and instruments governing the plan" but only to the extent they are consistent with ERISA? *See* 29 U.S.C. § 1104(a)(1)(D); *see also In re AEP ERISA Litig.*, 327 F. Supp. 2d 812, 828 (S.D. Ohio 2004) (observing that acting "consistent with" plan documents is no defense and stating, "A fiduciary cannot escape liability merely by pointing to the Plan as requiring it to act as it did"); *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 312 F. Supp. 2d 1165, 1181 (D. Minn. 2004) ("Nor can a fiduciary blindly follow plan directives to the obvious detriment of the beneficiary."); *Peters*, 2 F.4th at 209-211, 232 (despite mandatory contract provision prohibiting

---

[13] *Whetstone v. Howard Univ.*, No. CV 23-2409 (LLA), 2024 WL 4164692, at *9 (D.D.C. Sept. 12, 2024) (relying on *Dudenhoeffer* to reject argument that fiduciary had no "affirmative duty . . . to 'refuse to follow plan terms that are not consistent with ERISA'" and concluding, "the fact that the [fiduciaries] were abiding by the Plan's text does not necessarily defeat a claim for breach of fiduciary duty"); *Schissler v. Janus Henderson US (Holdings) Inc.*, No. 22-CV-02326-RM-SBP, 2024 WL 233141, at *4 (D. Colo. Jan. 22, 2024) (relying on *Dudenhoeffer* in support of conclusion "that ERISA's statutory duties override the Plan's mandate to offer—and continue offering—all JH Funds as investment options unless Janus Henderson amends the Plan"). Similarly, contract provisions purporting to designate a TPA as something less than a fiduciary will also not control when other facts support a finding of fiduciary status, such as (i) interpreting the plan to determine whether benefits claims should be referred to the plan sponsor for consideration; (ii) determining whether claims should be paid; and (iii) having authority to spend plan assets. *See IT Corp. v. Gen. Am. Life Ins. Co.*, 107 F.3d 1415, 1418-1421 (9th Cir. 1997).

relevant conduct, Fourth Circuit holding misconduct implicated ERISA fiduciary duty). If mandatory contract provisions preclude a finding of fiduciary status, § 1104(a)(1)(D) is rendered mere surplusage in violation of rules of construction. *See Pulsifer v. United States*, 601 U.S. 124, 143 (2024) ("In addressing eligibility for sentencing relief, Congress specified three particular features of a defendant's criminal history—A, B, and C. It would not have done so if A had no possible effect. It would then have enacted: B and C. But while that is the paragraph Pulsifer's reading produces, it is not the paragraph Congress wrote."); *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 112 (1991).

First, Defendant challenges Plaintiff's allegation that Defendant improperly retained drug rebates without challenging allegations that "Defendant falsely reported to Plaintiff that Plaintiff received all rebates." Mem. at 17; AC ¶ 77. The ASA required Anthem to pass on to Plaintiff 100% of drug rebates attributable to Plan claims. AC ¶ 77. But Defendant used its control over the claims process, claims data, and Plan assets to skim portions of the rebates. *Id.* ¶¶ 76-77. When Defendant paid claims with Plan money without passing rebates to or recovering rebates for Plaintiff, Defendant exercised control over Plan assets, management, administration, and information. *Id.*; *id.* ¶¶ 39, 40, 42, 43, 45, 47, 50-52. That this also represents a violation of the ASA does not excuse Defendant's misconduct; it condemns it. *See* 29 U.S.C. § 1104(a)(1)(D). This same reasoning defeats Defendant's argument that ERISA forgives its failure to honor discount and rebate guarantees for prescription claims. *See* Mem. at 17.

Second, while admitting that charging Plaintiff BlueCard fees (as Plaintiff alleges) violates Plan documents, Defendant argues the ASA's prohibition of those charges precludes ERISA liability. Mot. at 17. But Defendant paid those fees using authority over Plan assets, management, and administration. AC ¶¶ 39-41, 43, 45, 50-52, 62-64, 98. And complying with Plan instruments

16

is itself a fiduciary duty. 29 U.S.C. § 1104(a)(1)(D). That Defendant breached the ASA by this misconduct does not save the day for Defendant. *See, e.g.*, *id.*; *Peters*, 2 F.4th at 209-211, 232. Remarkably, Defendant also argues the Court should disregard allegations that Defendant charged these fees because the ASA prohibits those charges and is attached to the Complaint. Mem. at 13 (citing *Fountain*). Not only is that argument nonsensical (any breach of contract claim would be defeated if the contract is attached to the complaint); the purpose and author of the ASA defeat it. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 167-69 (4th Cir. 2016); AC ¶ 21.

As its third "example," Defendant argues that its contracted right to withhold 50% of discounts achieved by Multiplan and other vendors for out-of-network claims defeats Plaintiff's ERISA claim. Mem. at 17-18; AC ¶ 99. Defendant does not challenge the allegation that Defendant should not have employed such vendors in the first place. *Id*. Further, the 50% provision is not mandatory as to Defendant, **Ex. A** at 21, and, the contractual "right" to withhold this sum from the Plan does not excuse Defendant from its fiduciary responsibilities. *Supra* pp. 13-16.

Nor does Defendant's case law buoy its challenges.[14] Missing from those cases are (i) the broad assumption of control and discretion by the defendant and (ii) analysis regarding ERISA's

---

[14] *See, e.g.*, *Alves v. Harvard Pilgrim Health Care Inc.*, 204 F. Supp. 2d 198, 204, 210-11 (D. Mass. 2002), *aff'd*, 316 F.3d 290 (1st Cir. 2003) (decided after discovery and involving fully disclosed collection of precise amount of copayments identified in plan documents and distinguishing cases like this one where plan documents do not allow a precise prediction or accounting of total cost); *Mass. Laborers' Health & Welfare Fund v. Blue Cross Blue Shield of Mass.*, 66 F.4th 307, 315 n.8, 316, 318, 320, 327 (1st Cir. 2023) (emphasizing, where contract provision leaves room for discretion, TPA's conduct pursuant to that provision may be a fiduciary act; expressly limiting holding to its facts; and not involving TPA who agreed to act as a fiduciary and assumed control over plan assets, management, and administration but, rather, involving plaintiff fund—who retained total control over claims process—suing TPA who simply failed to apply provider rates in pricing claims); *Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463, 467, 475-77 (7th Cir. 2007) (defendant PBM did not expressly agree to act as fiduciary or to accept limitless discretion, and plaintiff-plan administrator had retained absolute authority over plan management, administration, and assets).

requirement that fiduciaries adhere to contract provisions *only if* consistent with ERISA and ERISA's prohibition of contractual attempts to "undo" an assumption of fiduciary duty. *See id.*

### 3. Defendant's "corporate business decision" excuse fails.

Defendant argues that its "business wide activities" do "not trigger fiduciary status even if they are discretionary." Mem. at 15. Defendant supports this argument with bare allegations not in the Complaint and stray contract language that does not overcome Plaintiff's well-pled allegations and other ASA language. Defendant challenges only portions of two allegations of misconduct.

First is Complaint paragraph 87, where Plaintiff alleges, among other things, "Defendant placed its own interests above Plaintiff's by paying more to providers with Plaintiff's money than it reasonably needed to in order to secure more favorable network arrangements in its fully insured segment." AC ¶¶ 87-88. Defendant seemingly argues ERISA excuses this misconduct vis-à-vis the Plan because Defendant directs this misconduct to *all* self-insured plans as a "corporate business decision." *See* Mem. at 15. That is not the law. Moreover, going outside the Complaint and attachments, Defendant argues "[n]egotiating agreements with providers is a general business decision" not specific to Plaintiff or the Plan. Mem. at 15. The Court should reject his invitation to disregard governing standards and Rule 12(d). Further, Defendant cites only a provision disclaiming agency status when Defendant "build[s] and maintain[s] its Provider network." However, the ASA also states a "network provider" is a provider that has "entered into a contract . . . with Anthem *to provide Covered Services to Members*." **Ex. A** at 2. A "covered service" is healthcare covered by *Plaintiff's Plan*. **Ex. A** at 1. And "Members" are defined as *Plan* participants and dependents. *Id.* This language demonstrates the providers were contracted by Defendant to serve *Plaintiff's Plan* and its members. Moreover, Plaintiff alleges more than Defendant built and maintained a Provider network; Plaintiff more broadly alleged Defendant paid providers more with

Plaintiff's money in order to increase revenue in Defendant's fully insured segment, thus using Plaintiff's assets for personal gain. When Defendant *approves and pays excessive claims* from those providers—with *Plan* money—it wears its "fiduciary hat." Finally, to any extent Defendant believes ASA art. 2.s relieves it of its broad fiduciary duty, it is mistaken. *Supra* pp. 13-16.

Defendant also challenges paragraph 83. Mem. at 16. Defendant does not address the allegation that Defendant failed to satisfy discount and rebate guarantees and, instead, focuses on the allegation that it failed to secure reasonably available discounts and rebates for prescription claims. *Id.* Defendant cites ASA article 14.b for the proposition that the negotiated rebates and discounts are not specific to Plaintiff, but that article explains that rebates and discounts due to Plaintiff *are specific* to prescription claims generated by the Plan. Relevant portions of that provision state "*Anthem*, through PBM, shall provide" prescription services. **Ex. A** art. 14.a. And "*Anthem* shall determine" which pharmacies serve the Plan. *Id*. The rebates reflect the "amount attributable" to *the Plan's* claims. *Id.* 14.b. Further, Defendant does not argue it lacked discretion to achieve better discounts and rebates for Plaintiff; it merely suggests that because it directed this misconduct to all self-funded plans, it is liable to none of them (which of course relies on extrinsic matters subject to Rule 12(d)). But Defendant is a fiduciary to *this Plan*, and whether Defendant's misconduct affected other self-funded plans lacks relevance here and presents a fact issue for trial.

Defendant's case law likewise misses the mark. One case cited by Defendant for this proposition did not involve the issue because the court resolved the case on standing grounds. *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 357 (2d Cir. 2016). But *American Psychiatric* cited another Second Circuit case for the proposition that corporate business decisions are generally not fiduciary acts. *Id.* at 357 n.2. But that case involved a true business deal through which Lockheed acquired a division of GE and, in consideration of Lockheed's agreement to hire

all 37,000 employees in that division, GE assigned a portion of pension plan assets as a settlor and not as fiduciary when it transferred pension plan surpluses to the Lockheed plan. *Flanigan v. Gen. Elec. Co.*, 242 F.3d 78, 82, 87-88 (2d Cir. 2001). It is a stretch to analogize those decisions to, for example, Defendant's "business decision" to overpay providers *with Plaintiff's money* in order to enjoy greater revenues in its fully insured segment.[15]

## IV. DISMISSAL OF PLAINTIFF'S STATE LAW CLAIMS IS IMPROPER.

### A. Defendant's Preemption Defense Fails.

According to Defendant, "heads it wins" on ERISA claims because ERISA does not apply to "nonfiduciary" acts and breaches of contract. And "tails Plaintiff loses" because ERISA preempts state-law claims even though ERISA does not apply. *See* Mem. at 18 n.17. Defendant confuses its preemption analysis, overlooks the importance of its fiduciary status to its preemption defense, and incorrectly suggests that *all* state law claims rely on "the *exact* same" factual allegations that support the ERISA claims. Mem. at 18-19; AC ¶¶ 103-157.

Defendant bears the burden to establish its preemption defense. *See, e.g.*, *Day v. SkyWest Airlines*, 45 F.4th 1181, 1184 (10th Cir. 2022). As provided below, preemption is not an all-or-nothing proposition and necessarily involves a targeted analysis focusing on alleged misconduct and relief sought. But besides offering sparse examples, Defendant does not attempt to connect its misconduct—or even specific causes of action—to its preemption defense. Instead, Defendant paints with broad strokes, citing case law for general propositions and summarily concluding *all*

---

[15] *See Doe 1 v. Express Scripts, Inc.*, 837 Fed. App'x 44, 48 (2d Cir. 2020) (cited by Defendant and holding TPA's sale of assets that indirectly affected prescription costs did not trigger fiduciary duty); *DeLuca v. Blue Cross Blue Shield of Michigan*, 628 F.3d 743, 746, 747-48 (6th Cir. 2010) (cited by Defendant and decided *only after discovery completed*, involving different contract language, not involving allegations that TPA's misconduct enriched TPA to the detriment of self-funded plans or allegations that TPA squandered plan assets using its control over those assets).

20

state-law claims and *all* factual theories are preempted. Given these failures and controlling case law on preemption, Defendant has not established its preemption defense.

In a recent case Defendant fails to cite, the Supreme Court clarified the preemption analysis and held ERISA does not preempt state law governing reimbursement rates. *See Rutledge v. Pharm. Care Mgmt. Ass'n*, 592 U.S. 80 (2020). *Rutledge* involved an Arkansas statute that forced PBMs—which retained the difference between the amounts they receive from health plans and amounts they paid to pharmacies—to reimburse pharmacies at rates equal to or higher than pharmacies' cost of obtaining the drug. *Id.* at 83-84. The Court noted the two preemption theories under 29 U.S.C. § 1144—"connection with" preemption and "reference to" preemption. *Id.* at 86. With "connection" preemption, the question is whether a state law encroaches on ERISA's goals by "requiring payment of specific benefits," "binding plan administrators to specific rules for determining beneficiary status," or "forcing an ERISA plan to adopt a certain scheme of substantive coverage." *Id.* at 86-87. Whether state law "affects an ERISA plan" is not the test, and laws merely affecting "costs" are generally not preempted. *Id.* at 87. Thus, the Court held the statute was not preempted even though it would impose additional costs on plans. *Id.* at 88.

*Rutledge* then analyzed "reference to" preemption, which bars state laws that act "immediately and exclusively upon ERISA plans or where the existence of ERISA plans is essential to the law's operation." *Id.* at 88. ERISA did not preempt the statute because it applied to PBMs "whether or not they manage an ERISA plan." *Id.* Finally, the *Rutledge* Court rejected the challengers' arguments that preemption applied because the statute (i) required PBMs to reimburse based on acquisition costs; (ii) effectively empowered pharmacies to force a plan to "recalculate and reprocess how much it . . . owes"; (iii) allowed pharmacies to decline to dispense medication otherwise available under the plan; and (iv) included "enforcement mechanisms" that

21

affected plan administration *Id.* at 90-91;[16] *see also Pharm. Care Mgmt. Ass'n v. Wehbi*, 18 F.4th 956, 964-967, 968-970 (8th Cir. 2021) (applying *Rutledge* and holding state statutes not preempted even though they required certain cost-related disclosures by pharmacies, PBMs, and TPAs to plan sponsors, and despite noting "a regulation of PBMs functions as a regulation of an ERISA plan itself" (cleaned up)); *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 649, 655-57, 659 (1995) (holding ERISA did not preempt a state law even though it most certainly would encourage plan sponsors to choose a Blue Cross plan).

Applying the law here, Plaintiff's state law claims do not purport to require the Plan to provide benefits or specific coverage, or bind the Plan to determinations of beneficiary status.[17] Nor do they seek an alternative enforcement of ERISA, especially if Defendant correctly argues it acted as a mere service provider. Plaintiff's state-law claims—sounding in contract and tort— apply without regard to whether the Plan is an ERISA plan. Applying well-settled law, ERISA preemption does not bar Plaintiff's state-law claims.

Defendant's denial of fiduciary status further militates *against* preemption.[18] In *Custer*, the Fourth Circuit considered ERISA's preemptive effect on claims against a pension fund attorney who helped oversee transactions in which the fund's chairman squandered millions in fund money on personal expenses. *See generally*, 89 F.3d at 1160. After concluding the attorney was not an ERISA fiduciary, *id.* at 1163, the court turned to whether the state-law negligence claims fell within

---

[16] Preemption requires more than "indirect effects" on plan administration or finances. *See id.* at 87; *Airparts Co., Inc. v. Custom Ben. Servs. of Austin, Inc.*, 28 F.3d 1062, 1065 (10th Cir. 1994).

[17] *Compare Aetna Health Inc. v. Davila*, 542 U.S. 200, 204-05, 221 (2004) (cited by Defendant, applying preemption to state law claims based on denial of benefits, a core ERISA plan function).

[18] Given the importance of determining whether a defendant is a fiduciary, some courts have deferred the preemption question until discovery revealed whether the defendant was a fiduciary. *See, e.g.*, *In re Allianz Glob. Inv'rs U.S. LLC Alpha Series Litig.*, No. 20 CIV. 10028 (KPF), 2021 WL 4481215, at *11-12 (S.D.N.Y. Sept. 30, 2021).

ERISA's preemptive scope, *id.* at 1165. The court noted ERISA does not extend to "run-of-the-mill state-law claims" even if they "obviously affect and involve ERISA plans." *Id.* at 1166 (cleaned up). It cited case law from across the country for the proposition that ERISA does not preempt negligence claims against "service providers to ERISA plans." *Id.* at 1166-67 (collecting cases). The court "join[ed] this unanimous body of federal law and conclude[d]" ERISA did not preempt this claim because it did not affect relations among plan fiduciaries or principals, or plan structure, administration, or type of benefits. *Id.* at 1167. To any extent Defendant did not act as a fiduciary with respect to its misconduct, it was merely a consultant or service provider, and the state-law claims are just "run-of-the-mill" tort and contract claims.[19]

### B. Plaintiff States a Contract Claim Based on Express Duties.

Defendant challenges only the breach element. Mem. at 24-25; *Ulloa v. QSP, Inc.*, 271 Va. 72, 79, 624 S.E.2d 43, 48 (2006). ***First***, Defendant argues the ASA allows it to pay excessive

---

[19] *See Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 695, 698-99, 701 (6th Cir. 2005) (collecting cases in support of holding that ERISA does not preempt state law claims against "non-fiduciary service providers" or other non-fiduciary "third-party service provider[s] like actuaries, consultants, lawyers, and brokers even if those claims are "in connection with professional services rendered to an ERISA plan"); *LeBlanc v. Cahill*, 153 F.3d 134, 147-48 (4th Cir. 1998) (despite fact that claim arose from harm to an ERISA plan due to misrepresentations in connection with investment of fund money, state law claims against non-fiduciaries not preempted); *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1066, 1067, 1081-83 (9th Cir. 2009) (holding ERISA did not preempt state-law negligence claims arising from erroneous evaluation of pension plan funding in part because ERISA does not preempt claims that "might interfere with a relationship between the plan and its third-party service provider"); *Airparts*, 28 F.3d at 1063-64, 1065-67 (where trustees of ERISA plan prosecuted state law claims for negligence and fraud against non-fiduciary actuarial firm in connection with consultation on effects of certain law and calculation of pension benefits, holding "tangential effect[s]" of claims on plan insufficient to establish preemption defense); *Kloots v. Am. Express Tax & Bus. Servs., Inc.*, 233 Fed. App'x 485, 485-86, 487-89 (6th Cir. 2007) (holding state law claims—including professional negligence and negligent misrepresentation—against non-fiduciary accounting firms based on failure to properly value stock used in ESOP plan not preempted and rejecting argument that ERISA preempted the claim because it required the relevant valuation).

Conversely, to the extent the evidence shows Defendant acted as an ERISA fiduciary, it becomes much more likely ERISA preempts state-law claims *relating to those specific actions*.

23

charges on "individual [prescription] claims," but Plaintiff also alleged Defendant breached discount guarantees in the "aggregate." AC ¶¶ 84-85, 119 (citing ASA).[20] Even assuming ASA language supports Defendant's "individual claim" argument—an argument the ASA does not establish—Defendant does not challenge the "aggregate" side of this alleged breach. **Second**, Defendant argues its "specialty pharmaceutical" point, addressed *supra* p. 6, defeats Plaintiff's broader claim that Defendant breached its contractual promise to act as a fiduciary. Mem. at 25; AC ¶ 118. This argument fails. *Supra* p.6. Further, Defendant fails to sufficiently challenge allegations it breached its fiduciary promise in the ASA; instead, it cryptically avers other supporting allegations are vague and conclusory. Mem. at 25; *supra* pp. 2-5. **Finally**, Plaintiff also alleged Defendant breached its agreement to pass on 100% of prescription drug rebates and to adjudicate and process claims with at least 95% accuracy. AC ¶¶ 120-21. Defendant does not challenge these allegations. Defendant's challenges therefore fail.

## C. Plaintiff States a Contract Claim Based on Implied Duties.

Plaintiff agrees this claim is based on a contractual duty, not a tort duty. *See* AC at 59 (heading), ¶ 125. Plaintiff divided contract claims in distinct categories: (i) breach of express duties and (ii) breach of implied duties where the ASA assigns Defendant discretion. *Compare* AC ¶¶ 115-122 *with* ¶¶ 125-135. Ignoring stark distinctions between Plaintiff's *express* and *implied* contract theories, Defendant incorrectly argues the implied theory duplicates the express-duty theory. Mem. at 26. Further, Plaintiff may plead its implied contract theory in the alternative to its express contract theory. *See Rock Hill Dairy, LLC v. Genex Coop., Inc.*, No. 19-CV-845-WMC, 2020 WL 7042837, at *5 n.3 (W.D. Wis. Dec. 1, 2020); *Spinelli v. Nat'l Football League*, 903 F.3d

---

[20] Continuing its win-win theme, Defendant argues here the ASA gave it discretion on discounts while also arguing the ASA's discount provisions are "mandatory" and, thus, render it a non-fiduciary for ERISA purposes. Mem. at 17.

185, 205-07 (2d Cir. 2018) (where express and implied contract theories based on different facts or where contract's meaning in dispute, plaintiff can plead alternatively); FED. R. CIV. P. 8(d). Plaintiff is, of course, willing to place the distinct implied-contract allegations under the "Breach of Contract" heading to remedy Defendant's complaint.

Virginia law supports Plaintiff's claim. "[E]very contract contains an implied covenant of good faith and fair dealing." *Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443, 450-51 (E.D. Va. 2009) (permitting express and implied contractual theories to proceed despite "duplicative" argument and addressing *Ward's Equipment*, cited by Defendant, Mem. at 26). "[A] party may not exercise contractual *discretion* in bad faith, even when such discretion is vested solely in that party." *Stoney Glen, LLC v. S. Bank & Tr. Co.*, 944 F. Supp. 2d 460, 466 (E.D. Va. 2013) (original emphasis). Even if the defendant exercised a contractual *right*, it breaches this implied duty if it exercises that right "dishonestly." *Id.* at 466, 469.

Plaintiff alleged the ASA grants Anthem discretionary control of Plan administration, information, and assets. AC ¶¶ 38-52, 100. Plaintiff connected that discretion to specific acts of misconduct, dishonesty, and self-dealing by Defendant for which there is no rational basis. *Id.* ¶¶ 126-134. Regardless of whether the ASA grants Anthem *discretion* or the specific *right* to carry out the relevant acts, Plaintiff has alleged a plausible claim. *Id.*; *Stoney Glen*, 944 F. Supp. 2d at 466, 469; *Enomoto*, 624 F. Supp. 2d 448-451; *Va. Vermiculite, Ltd. v. W.R. Grace & Co.-Conn.*, 156 F.3d 535, 542, 542 n.4 (4th Cir. 1998) (reversing dismissal of good faith claim).

**D. Plaintiff States a Claim for Breach of Fiduciary Duty**.

Anthem seeks dismissal of Plaintiff's state law fiduciary claim on a single basis: it relies "solely" on the ASA. Mem. at 26-27. But "a single act or occurrence can . . . support causes of action *both* for breach of contract and for breach of a duty arising in tort." *Evans Constr. Servs.,*

25

*L.L.C. v. Ox Builders, LLC*, 108 Va. Cir. 13, 2021 WL 8314543, at *3 (Apr. 6, 2021) (quoting Virginia Supreme Court). The relevant question is whether Plaintiff's fiduciary claim would exist absent the ASA. *See id.* It would. *See id.* at *4. Anthem possesses and controls Plan assets for the benefit of Plan members. AC ¶¶ 39, 40, 41, 45, 50-52. While Anthem wields that control by virtue of the ASA's delegation of authority, Virginia law provides for the formation of trust-trustee relationships and imposes fiduciary duties on persons—including TPAs like Defendant—who manage assets and business on behalf of others. *See, e.g.*, *Self Insured Servs. Co. v. Panel Sys., Inc.*, 352 F. Supp. 3d 540, 557-58 (E.D. Va. 2018) (holding TPA owed common law fiduciary duties under Virginia law); *Stickley v. Stickley*, 50 Va. Cir. 526, 1999 WL 1441941, at *1-2 (1999); *Crosby v. ALG Tr., LLC*, 296 Va. 561, 570-71, 822 S.E.2d 185, 190-91 (2018); *Allen Realty Corp. v. Holbert*, 227 Va. 441, 446-48, 318 S.E.2d 592, 595-96 (1984); VA. CODE ANN. §§ 64.2-719, 64.2-720, 64.2-722, 64.2-725, 64.2-775, 64.2-764, 64.2-769, 64.2-766.

Even "when a fiduciary duty arises *solely* by virtue of a contract," a fiduciary may not take "advantage of the special position occupied by a fiduciary to his benefit and to the detriment of the other party to whom the fiduciary duty is owed." *Self Insured*, 352 F. Supp. 3d at 557-58 (cited by Defendant). Defendant has taken advantage of its special position to Plaintiff's detriment by, among other things, overcharging Plaintiff for healthcare claims and allowing its affiliates to overcharge Plaintiff—all to benefit Defendant. AC ¶¶ 68-100, 138-142. Plaintiff states a claim for breach of fiduciary duty. *See id*.

### E. Plaintiff States a Claim for Fraudulent Concealment.

"Concealment of a material fact by one who knows that the other party is acting upon the assumption that the fact does not exist constitutes actionable fraud." *Allen Realty*, 318 S.E.2d at 597 (reversing dismissal based on allegations of concealed offer to purchase). Silence is actionable

26

"when a confidential or fiduciary relationship exists between the parties or when disclosure would be necessary to clarify information already disclosed, which would otherwise be misleading." *Doe by & Through Doe v. Baker*, 299 Va. 628, 656, 857 S.E.2d 573, 590 (2021).

Defendant first argues Plaintiff's claims duplicate the express contract claim. Mem. at 27-28. But Plaintiff may plead alternatively. *See, e.g.*, FED. R. CIV. P. 8(d), (e). Further, the so-called duplicative claim relates only to Defendant's express promises to act as a fiduciary and to provide certain rebates and discounts. AC ¶¶ 118-121. Contrast that with Plaintiff's fraudulent concealment claim, which alleges Defendant *concealed* a broader set of misconduct so that it could continue to benefit from its relationship with Plaintiff and draw other benefits at Plaintiff's expense. *Id.* ¶ 146.

Next, Defendant argues Rule 9(b) rewards its successful concealment of information. Mem. at 28. But a court "should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which it will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 553-54 (4th Cir. 2019) (quotes omitted);[21] *Corder v. Antero Res. Corp.*, 57 F.4th 384, 402 (4th Cir. 2023) (permitting pleading on information and belief because it is "well-nigh impossible" to plead fraudulent concealment with particularity given the imbalance of information). Plaintiff has met its burden by alleging (i) a fiduciary relationship, AC ¶¶ 5-10, 16-17, 39-52; (ii) that special relationship, along with Defendant's conflicts of interest and misconduct triggered a duty to speak, *see, e.g.*, *id.* ¶¶ 38-52, 65, 70, 74; (iii) the "general content" and materiality of information Defendant concealed, *e.g.*, *id.* ¶¶ 21-28, 62-65, 69-70, 73-85, 87-88, 98-100, 146; (iv) that Defendant failed to disclose its

---

[21] In *Edmonson*, analyzing fraudulent concealment in the limitations context, the court deemed sufficient allegations that defendant used sham entities to effect and conceal kickbacks and did not "report[] the payments on . . . HUD-1 Settlement Statements." *Id.*

misconduct and conflicts of interest, *e.g.*, *id.* ¶¶ 21-28, 100, 146; (v) what Defendant gained by withholding the information, *e.g.*, *id.* ¶¶ 62-65, 69-70, 73-85, 87-88, 98-100, 146-48; (vi) Plaintiff's reliance on Defendant was reasonable and detrimental, *e.g.*, *id.*; *id.* ¶¶ 6, 15-17, 32, 39, 145;[22] (vii) Plaintiff incurred damages because it continued to employ Defendant, giving Defendant years to secretly overcharge the Plan and withhold money owed to the Plan, *e.g.*, *id.* ¶¶ 62-100, 147. *See Breeden v. Richmond Cmty. Coll.*, 171 F.R.D. 189, 195-96 (M.D.N.C. 1997) (synthesizing authority including Fourth Circuit opinions for the proposition that alleging these factors with "reasonable particularity" will suffice under Rule 9(b) in the fraudulent concealment context); *Doe,* 857 S.E.2d at 590. The Court should therefore deny Defendant's Motion on this point.

## F. Plaintiff States a Claim for Negligence.

Virginia law has long imposed a negligence duty on those managing others' affairs in trust. *See Cogbill v. Boyd*, 77 Va. 450, 459 (1883) ("A loss incurred to the trust estate through the negligence of the trustee must be borne by him."). Defendant argues, "Anthem and OMI were in a contractual relationship; any duty Anthem allegedly had or breached arose out of the Agreement." Mem. at 29. Defendant misreads Plaintiff's allegations as simply restating its express contract claims. Further, the tort-duty-versus-contract-duty test is more nuanced than Defendant suggests. Whether a related contract exists is not the test. The question is whether the negligence duty would exist "irrespective" of the contract. *Tingler v. Graystone Homes, Inc.*, 298 Va. 63, 81, 84, 834 S.E.2d 244, 254-55, 256 (2019) ("[I]t would be no defense to a tort action [based on builder's

---

[22] The Court should thus reject Defendant's argument that Plaintiff "completely neglect[ed] to allege" Plaintiff's reliance was reasonable. *Id*. Plaintiff reasonably deferred to Defendant's expertise and experience in the industry, and Plaintiff reasonably relied on Defendant's promise to behave as a fiduciary would. *Id.*

hitting another with a hammer] . . . that the construction contract required him to carefully swing his hammer").

Thus, existence of a negligence duty turns on whether a reasonable person (or TPA) could apprehend, as a natural and probable result of negligently paying Plaintiff's money on claims or negligently engaging third parties to spend Plaintiff's money, that Plaintiff may suffer financial harm. *See Quisenberry v. Huntington Ingalls Inc.*, 296 Va. 233, 242-43, 245, 247-48, 818 S.E.2d 805, 809-810, 812-13 (2018) (applying standard and holding employer owed duty to protect third parties from risk of asbestos taken home by employees on their clothes). Stated another way, the question is whether Defendant was "placed in such a position with regard to [Plaintiff]" that a failure to use ordinary care would "cause danger of injury to the . . . property of [Plaintiff]." *Id.* at 246; AC ¶¶ 6, 32, 38-39.

The answer is "yes." AC ¶¶ 16-17, 32, 38, 60-65, 69-99. The thrust of Plaintiff's negligence claim is it employed Defendant to administer claims with Plaintiff's money, and Defendant owed a duty to prudently perform these duties and monitor others whom Defendant engaged to assist with its work. AC ¶¶ 16-17, 39-52, 69-72, 76-79, 86, 89-98, 152-55. Defendant owed a duty to exercise prudence in managing and disposing Plaintiff's assets and in engaging and supervising others to whom Defendant delegated its responsibility. *See Cogbill*, 77 Va. at 459; *Tingler*, 834 S.E.2d at 254-55, 256; *Quisenberry*, 818 S.E.2d at 809-810, 812-13; *Nelson v. Commonwealth*, 235 Va. 228, 235, 368 S.E.2d 239, 243 (1988) (contract for professional services implies professional standard of care); *Spainhour v. B. Aubrey Huffman & Assocs., Ltd.*, 237 Va. 340, 346, 377 S.E.2d 615, 619 (1989) (professional defendants judged according to profession's standard of

care); *Allen Realty*, 318 S.E.2d at 597 (negligent failure to convey offers to principal).[23]

Plaintiff has therefore alleged a plausible negligence claim. AC ¶¶ 153-55.

## OBJECTIONS

Plaintiff objects to Defendant's "Appendix" (i) because Defendant violates page limits by using excess "Appendix" pages to clarify its vague, unfocused challenges to Plaintiff's claims; (ii) it mischaracterizes Plaintiff's allegations as "one-phrase liability allegations"; and (iii) to the extent it adds connections between challenges and allegations not expressly made in Defendant's Memorandum. Plaintiff further objects to statements made in Defendant's Memorandum, highlighted and attached as **Exhibit 1**, because those statements inject extrinsic matters in violation of Rule 12(d), invite inferences adverse to Plaintiff in violation of governing standards, or both.

## CONCLUSION AND PRAYER

For these reasons, Defendant's Motion fails in all respects. Plaintiff therefore respectfully requests that the Court deny Defendant's Motion and sustain Plaintiff's objections. Alternatively, in the interest of justice, Plaintiff respectfully requests leave to amend any dismissed claims because amendment is not futile.

*[signature block on next page]*

---

[23] *See also* RESTATEMENT (THIRD) OF AGENCY § 7.03(1) (2006) (a principal is liable for the acts of its agent if it ratified a tortious act of its agent; it negligently engaged or supervised the agent; or it delegates its own duty to protect property to an agent who fails that duty); *id.* § 7.05(1) ("A principal who conducts an activity through an agent is subject to liability for harm to a third party caused by the agent's conduct if the harm was caused by the principal's negligence in selecting [or] supervising . . . the agent."); *Parker v. Carilion Clinic*, 296 Va. 319, 343, 819 S.E.2d 809, 823 n.12 (2018) (citing these provisions favorably); *A.D. v. Wyndham Hotels & Resorts, Inc.*, No. 4:19CV120, 2020 WL 9550005, at *7 (E.D. Va. Sept. 21, 2020) (applying provisions).

Dated: March 21, 2025

Respectfully submitted,

OWENS & MINOR, INC. and
OWENS & MINOR FLEXIBLE
BENEFITS PLAN
By:

_____/s/_____
COMMONWEALTH LAW GROUP
Seth Carroll (VSB No. 74745)
3311 West Broad Street
Richmond, VA 23230
Phone: (804) 999-9999x2
Facsimile: (866) 238-6415
scarroll@hurtinva.com

Frank Gallucci
Ohio State Bar No. 72680
*pro hac vice*
55 Public Square
Suite 2222
Cleveland, Ohio 44113
Telephone: (216) 861-0804
Facsimile: (216) 861-5322
FGallucci@pglawyer.com

THE LANIER LAW FIRM, P.C.
W. Mark Lanier
Texas State Bar No. 11934600
*pro hac vice*
Benjamin Major
Texas State Bar No. 24074639
*pro hac vice*
Ryan De. Ellis
Texas State Bar No. 24087470
*pro hac vice*
Julian Cokic
Texas State Bar No. 24118977
*pro hac vice*
10940 W. Sam Houston Pkwy N.
Suite 100
Houston, Texas 77064
Telephone: (713) 659-5200
Facsimile: (713) 659-2204
WML@lanierlawfirm.com
Ben.Major@lanierlawfirm.com
Ryan.Ellis@lanierlawfirm.com
Julian.Cokic@lanierlawfirm.com
PLEVIN AND GALLUCCI CO., LPA

**ATTORNEYS FOR PLAINTIFFS**

31