FILED

2025 Mar-31  PM 03:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT G

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

|  |  |
|---|---|
| OWENS & MINOR, INC. and OWENS & MINOR FLEXIBLE BENEFITS PLAN, <br><br> Plaintiffs, <br><br> v. <br><br> ANTHEM HEALTH PLANS OF VIRGINIA, INC. D/B/A ANTHEM BLUE CROSS AND BLUE SHIELD, <br><br> Defendant. | Civil Action No.: 3:24-cv-00820 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS PLAINTIFFS' COMPLAINT UNDER RULE 12(b)(6)**

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................... iii

INTRODUCTION ..................................................................................................................1

FACTUAL BACKGROUND ...................................................................................................3

      A.     The Parties ....................................................................................................3

      B.     Anthem's Medical Benefit Administrative Services ........................................3

      C.     Anthem's Pharmacy Benefit Administrative Services .....................................5

      D.     Plaintiffs' Instant Lawsuit .............................................................................7

LEGAL STANDARD .............................................................................................................8

ARGUMENT .........................................................................................................................8

      I.     The Court Should Dismiss or Strike Plaintiffs' Implausible,
           Single-Phrase Theories of Liability. ..............................................................8

           A.     Allegations that are too vague or conclusory to support any
                  cause of action ....................................................................................9

           B.     Allegations concerning processing errors that Plaintiffs fail
                  to identify ........................................................................................11

           C.     Allegations describing conduct consistent with OMI's
                  negotiated contract ...........................................................................12

      II.    Plaintiffs' Causes of Action Should Be Dismissed for Failure to State
           a Claim .......................................................................................................15

           A.     Plaintiffs Fail to State a Claim for ERISA Violations .............................15

           B.     Plaintiffs Fail to State a Claim for Breach of Contract ...........................19

           C.     Plaintiffs Fail to State a Claim For Breach of Good
                  Faith and Fair Dealing ....................................................................20

           D.     Plaintiffs Fail to State a Claim for Breach of Fiduciary Duties .................21

           E.     Plaintiffs Fail to State a Claim for Fraud ..............................................22

Case 2:13-cv-08200-CREAMND Document 51-1 Filed 03/31/25 Page 25 of 39 PageID #:4050

F.      Plaintiffs Fail to State a Claim for Constructive Fraud..............................24

CONCLUSION..........................................................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aetna Health Inc. v. Davila*,
542 U.S. 200 (2004)................................................................................................28

*Alves v. Harvard Pilgrim Health Care Inc.*,
204 F. Supp. 2d 198 (D. Mass. 2002) ....................................................................12

*Am. Psychiatric Assoc. v. Anthem Health Plans, Inc.*,
821 F.3d 352 (2d Cir. 2016)...................................................................................16

*Andrews-Clarke v. Lucent Techs., Inc.*,
157 F. Supp. 2d 93 (D. Mass. 2001) ......................................................................25

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................................8

*Augusta Mut. Ins. Co. v. Mason*,
274 Va. 199, 645 S.E.2d 290 (2007)......................................................................22

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................................................8, 9, 11

*Bennett v. Bank of Am., N.A.*,
2012 WL 1354546 (E.D. Va. Apr. 18, 2012) ........................................................21

*Broadnax Mills, Inc. v. Blue Cross and Blue Shield of Virginia*,
867 F. Supp. 398 (E.D. Va. 1994) .........................................................................29

*Brown v. Myers*,
2016 WL 206301 (E.D. Va. Jan. 15, 2016) (Payne, J.) ....................................19, 22

*Broyhill v. Bank of Am., N.A.*,
2010 WL 3937400 (E.D. Va. Oct. 6, 2010)...........................................................20

*Central Valley AG Coop. v. Leonard*,
400 F. Supp. 3d 819 (D. Neb. 2019)......................................................................19

*Chapman v. Health Works Med Group of W. Virginia, Inc.*,
170 F. Supp. 2d 635 (N.D. W. Va. 2001) ..............................................................28

*Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*,
474 F.3d 463 (7th Cir. 2007) ............................................................................14, 17

*Clark v. BASF Salaried Employees' Pension Plan*,
   329 F. Supp. 2d 694 (W.D.N.C. 2004) ...................................................................6

*Coyne & Delany Co. v. Selman*,
   98 F.3d 1457 (4th Cir. 1996) ............................................................................27

*Crimi v. PAS Indus., Inc.*,
   1995 WL 272580 (S.D.N.Y. May 9, 1995) ..........................................................25

*Darcangelo v. Verizon Commc'ns, Inc.*,
   292 F.3d 181 (4th Cir. 2002) ...........................................................................26

*DeLuca v. Blue Cross Blue Shield of Michigan*,
   628 F.3d 743 (6th Cir. 2010) ...........................................................................17

*Doctor's Hosp. of Slidell, LLC v. United HealthCare Ins. Co.*,
   2011 WL 13213620 (E.D. La. Apr. 27, 2011) ......................................................11

*Doe 1 v. Express Scripts, Inc.*,
   837 F. App'x 44 (2d Cir. 2020) .....................................................................16, 17

*Douglas v. Ocwen Loan Servicing, LLC*,
   2016 WL 1572925 (E.D. Va. Apr. 18, 2016) (Payne, J.) ......................................20

*Douros v. State Farm Fire & Cas. Co.*,
   508 F. Supp. 2d 479 (E.D. Va. 2007) ..............................................................8, 23

*Elmore v. Cone Mills Corp*,
   23 F.3d 855 (4th Cir. 1994) .............................................................................28

*Entrepreneur Dream Team v. Certain Interested Underwriters of Lloyd's Ins. Co.*,
   2023 WL 5167007 (E.D. Va. July 7, 2023), *rep. and rec. adopted*, 2023 WL
   5670041 (E.D. Va. Aug. 31, 2023) ...................................................................21

*Fifth Third Bancorp v. Dudenhoeffer*,
   573 U.S. 409 (2014).........................................................................................8

*FMC Corp. v. Holliday*,
   498 U.S. 52 (1990)..........................................................................................25

*Fountain Enters., LLC v. Markel Ins. Co.*,
   568 F. Supp. 3d 613 (E.D. Va. 2021), *aff'd*, 2022 WL 16630571 (4th Cir.
   Nov. 2, 2022) .............................................................................................3, 14

*Gasner v. Cnty. of Dinwiddie*,
   162 F.R.D. 280 (E.D. Va. 1995) ........................................................................6

*Gresham v. Lumbermen's Mut. Cas. Co.*,
    404 F.3d 253 (4th Cir. 2005) .................................................................................28

*Griggs v. E.I. DuPont de Nemours & Co.*,
    237 F. 3d 371 (4th Cir. 2001) ...............................................................................30

*Guiragoss v. Khoury*,
    444 F. Supp. 2d 649 (E.D. Va. 2006) ...................................................................29

*HCA Health Servs. of Virginia, Inc. v. CoreSource, Inc.*,
    2020 WL 4036197 (E.D. Va. July 17, 2020) ..................................................26, 27

*Hughes v. Wells Fargo Bank*,
    2014 WL 12527212 (E.D. Va. Dec. 2, 2014), *aff'd sub nom.*, *Hughes v. Wells
    Fargo Bank, N.A.*, 617 F. App'x 261 (4th Cir. 2015).............................................22

*Infectious Disease Doctors, P.A. v. Bluecross Blueshield of Texas*,
    2014 WL 4262164 (N.D. Tex. Aug. 29, 2014).......................................................11

*Ingersoll-Rand Co. v. McClendon*,
    498 U.S. 133 (1990).............................................................................................26

*ITility, LLC v. Staffing Res. Group, Inc.*,
    2020 WL 6701361 (E.D. Va. Nov. 13, 2020)..................................................22, 24

*Jones v. City of Danville*,
    2020 WL 6063063 (W.D. Va. Oct. 14, 2020)..........................................................8

*Lamberty v. Premier Millwork and Lumber Co., Inc.*,
    329 F. Supp. 2d 737 (E.D. Va. 2004) ...................................................................26

*Lancaster v. Kaiser*,
    958 F. Supp. 1137 (E.D. Va. 1997) ......................................................................29

*Massachusetts Laborers' Health & Welfare Fund v. Blue Cross Blue Shield of
    Massachusetts*,
    66 F.4th 307 (1st Cir. 2023)......................................................................16, 17, 19

*Massey v. C. Reserve Life Ins. Co.*,
    2002 WL 1967952 (S.D. W. Va. Apr. 25, 2002)...................................................29

*Moeckel v. Caremark, Inc.*,
    622 F. Supp. 2d 663 (M.D. Tenn. 2007)...............................................................17

*Moffett v. Halliburton Energy Servs., Inc.*,
    291 F.3d 1227 (10th Cir. 2002) ............................................................................28

*Pegram v. Herdrich*,
    530 U.S. 211 (2000)..........................................................................................................15

*Pilot Life Ins. Co. v. Dedeaux*,
    481 U.S. 41 (1987)......................................................................................................26, 29

*Plumb v. Fluid Pump Serv., Inc.*,
    124 F.3d 849 (7th Cir. 1997) ........................................................................................15

*Polk Med. Ctr., Inc. v. Blue Cross & Blue Shield of Ga., Inc.*,
    2018 WL 624882 (N.D. Ga. Jan. 30, 2018) .................................................................12

*Powell v. Chesapeake and Potomac Tel. Co. of Va.*,
    780 F.2d 419 (4th Cir. 1985) ......................................................................................26, 28

*Prime Commc'ns, L.P. v. Ragsdale Liggett, PLLC*,
    2019 WL 5677928 (E.D.N.C. Oct. 31, 2019) ..............................................................16

*Raja v. Specialized Loan Servicing, LLC*,
    2024 WL 1201603 (E.D. Va. Mar. 20, 2024) ..............................................................20

*Reetz v. Aon Hewitt Inv. Consulting, Inc.*,
    74 F.4th 171 (4th Cir. 2023) .........................................................................................15

*Reisch-Elvin v. Provident Life and Acc. Ins. Co.*,
    372 F. Supp. 2d 827 (E.D. Va. 2005) ...........................................................................25

*RG Steel Wheeling, LLC v. Health Plan of the Upper Ohio Valley, Inc.*,
    2014 WL 3845215 (N.D. W. Va. Aug. 5, 2014)..........................................................29

*Rogers v. Deane*,
    992 F. Supp. 2d 621 (E.D. Va. 2014), *aff'd*, 594 F. App'x 768 (4th Cir. 2014).......................21

*Rollins v. Kjellstrom & Lee, Inc.*,
    109 F. Supp. 3d 869 (E.D. Va. 2015) ..................................................................26, 27, 30

*Rossman v. Lazarus*,
    2008 WL 4181195 (E.D. Va. Sept. 3, 2008)................................................................23

*Sanctuary Surgical Ctr., Inc. v. United Healthcare, Inc.*,
    2011 WL 2134534 (S.D. Fla. May 27, 2011) ..............................................................11

*Self Insured Services Co. v. Panel Sys., Inc.*,
    352 F. Supp. 3d 540 (E.D. Va. 2018) ..................................................................22, 23, 24

*Shaw v. Delta Air Lines*,
    Inc., 463 U.S. 85 (1983)..............................................................................................26, 27

Case 3:24-cv-00800-REP-MRC Document 14 Filed 01/17/25 Page 25 of 39 PageID# 1055

*Stevens v. E.I. Dupont De Nemours and Co.,*
 145 F. Supp. 3d 541 (E.D.N.C. 2015)........................................................................27, 28, 29, 30

*Syed v. Mohammad,*
 2016 WL 8731783 (E.D. Va. Apr. 1, 2016) ............................................................................9

*Tri-State Mach., Inc. v. Nationwide Life Ins. Co.,*
 33 F.3d 309 (4th Cir. 1994) ..................................................................................................25

*In re UnitedHealth Group PBM Litig.,*
 2017 WL 6512222 (D. Minn. Dec. 19, 2017).........................................................................17

*Van Lier v. Unisys Corp.,*
 142 F. Supp. 3d 477 (E.D. Va. 2015) ..............................................................................27, 30

*Ward's Equip., Inc. v. New Holland N. Am., Inc.,*
 254 Va. 379, 493 S.E.2d 516 (1997)......................................................................................21

*Wilmington Shipping Co. v. New Eng. Life Ins. Co.,*
 496 F.3d 326 (4th Cir. 2007) ................................................................................................27

*Wood v. Southside Physician Network, LLC,*
 2019 WL 3416665 (E.D. Va. July 29, 2019)..........................................................................24

**Statutes**

29 U.S.C. § 1002(21)(A).........................................................................................................15

29 U.S.C. § 1132(a) ................................................................................................................26

29 U.S.C. § 1144.....................................................................................................................26

29 U.S.C. § 1144(a) ................................................................................................................26

29 U.S.C. § 1144(c)(1).............................................................................................................25

**Other Authorities**

Fed. R. Civ. P. 9(b) ..................................................................................................................8

Fed. R. Civ. P. 12(f)..................................................................................................................8

**INTRODUCTION**

Plaintiff Owens & Minor, Inc. ("OMI") is a sophisticated Fortune 500 company that is self-insured for health benefits coverage. In 2017, OMI engaged Defendant Anthem Health Plans of Virginia, Inc. d/b/a Anthem Blue Cross and Blue Shield ("Anthem") to provide certain administrative services to OMI's employee health-benefit plan ("Owens & Minor Flexible Benefits Plan", with OMI: "Plaintiffs"). The parties carefully negotiated a contract for those services, called the Administrative Services Agreement (the "Agreement"). The Agreement included provisions that allowed OMI the ability to monitor Anthem's performance of the agreed-upon administrative services, including Anthem's processing of claims for medical and pharmacy benefits.

During the course of their 6-year relationship, OMI never used the agreed-to monitoring mechanisms to raise the issues it now raises in this lawsuit. Moreover, OMI used a prominent third-party broker to understand how Anthem's pricing and performance compared to competitors in the market, yet decided to renew its relationship with Anthem year after year. Only recently, after discussions about sharing even more data broke down over a single line in a confidentiality agreement, has OMI decided to pursue a new strategy. Through litigation, OMI seeks to rewrite the clear terms of the Agreement to create new legal duties, impose additional costs on Anthem, and extract additional value that was never part of the parties' bargained-for Agreement.

The first step in OMI's strategy was to file a lawsuit in this Court to seek vast amounts of data and information from Anthem, free of the contractual confidentiality and other conditions that OMI had negotiated for. *See OMI v. Anthem*, Case No. 23-cv-00115. Though that matter was dismissed after the parties mediated to resolution, OMI has come back through the instant case — a successor lawsuit that is the second step in OMI's strategy. Through this case, OMI again attempts to manufacture legal claims, ignoring the actual Agreement between OMI and Anthem. But, like OMI's first lawsuit, OMI's new complaint is *still* missing any plausible legal theories or

1

harm. The Complaint fails to identify a single improper transaction or specific instance of misconduct. Instead, Plaintiffs rely on improper conclusory assertions, many pulled from news headlines that have no connection to Anthem.

Plaintiffs plead a classic "kitchen sink" complaint. It contains six causes of action, each of which lumps together nineteen separate single-phrase theories of liability, to arrive at a request for damages. Those single-phrase theories of liability can be organized into several buckets, none of which support a viable claim.

1. Allegations that are too vague or conclusory to support any cause of action.
2. Allegations regarding ambiguous "processing errors," of which OMI fails to provide a single concrete example, let alone a spreadsheet describing the universe of such claims as federal courts routinely require.
3. Allegations that do not plausibly state a claim because they describe conduct that aligns with the contractual obligations OMI specifically negotiated.

While the Complaint's lack of plausibility and specificity is enough to warrant dismissal, there are additional, independent bases for dismissal of each count. *First*, Plaintiffs fail to state a claim for ERISA violations because Anthem in not an ERISA fiduciary for a number of the functions alleged by OMI to have been improperly performed. *Second*, by failing to cite a single contractual provision in their "breach of contract" count, Plaintiffs fail to state a claim. *Third*, Plaintiffs fail to state a claim for tort claims because those claims arise from a contractual source. *Fourth,* Plaintiffs fail to state a claim for breach of fiduciary duties under state law because Anthem has no fiduciary obligations to Plaintiffs for the conduct alleged. *Finally*, if the Court permitted Plaintiffs' nebulous "ERISA violations" count to go forward, ERISA would preempt the remaining state-law causes of action.[1]

---

[1]     For ease of reference and to assist the Court in parsing Plaintiffs' lumped allegations, Anthem has attached a table organizing the various arguments that support dismissal or striking of Plaintiffs' one-phrase liability allegations. *See* Appendix A.

2

## FACTUAL BACKGROUND

### A. The Parties

Anthem is a Virginia-based company that offers fully-insured health benefit plans to employers and individuals in Virginia. That insurance offering is not at issue in this case. Anthem also offers, as relevant here, administrative services to employers who sponsor their own self-funded/self-insured group health benefit plans. Compl. ¶¶ 16-17.

OMI is a Fortune 500 company that, among other things, provides durable medical equipment. *See Our Story,* OWENS & MINOR, https://www.owens-minor.com/about/ (last visited Jan. 16, 2025). OMI employs thousands of people across the United States. *See* Compl. ¶ 29. OMI is the sponsor, administrator, and named fiduciary for a self-funded healthcare plan for its employees, known as Owens & Minor Flexible Benefits Plan. *Id.* ¶¶ 29; *see also* Compl. Ex. A., Art. 3.b.[2] As a sponsor and named fiduciary of a self-funded plan, OMI is responsible for paying from its own assets any covered healthcare expenses incurred by its members. Compl. ¶ 14.

### B. Anthem's Medical Benefit Administrative Services

In 2017, OMI contracted with Anthem to provide administrative services to assist OMI with certain aspects of its medical benefits plan, as set out in the parties' Agreement. Compl. ¶ 32; Compl. Ex. A (the "Agreement"). Anthem agreed to provide OMI and its members with access to the reimbursement arrangements for medical services that Anthem has negotiated with its network of contracted healthcare providers, including doctors and hospitals ("provider network" or "in-network providers"). *See id.* at Art. 2.b.1. Anthem's provider network is not specific to

---

[2] "In ruling on a motion to dismiss, a court may consider documents attached to the complaint. . . . Any conflicts between the allegations in the Complaint and the content of the exhibit are resolved in favor of the exhibit." *Fountain Enters., LLC v. Markel Ins. Co.*, 568 F. Supp. 3d 613, 615 n.2 (E.D. Va. 2021), *aff'd*, 2022 WL 16630571 (4th Cir. Nov. 2, 2022) (relying on Policy language contained in exhibit to complaint and granting motion to dismiss).

OMI's plan. Rather, as recognized in the Agreement, Anthem negotiates provider contracts to be used across Anthem's entire book of business. *See id.* at Art. 2.s. ("In building and maintain its Provider network, Anthem is not acting on behalf of or as an agent for any Employer or member.").

When OMI's members receive medical services, and the member or the treating medical provider submits a claim for reimbursement, Anthem processes that reimbursement claim. *See* Compl. Ex. A at Art. 2.b. Anthem first determines whether the medical service is eligible for coverage "according to the terms and conditions of [OMI's] Benefits Booklet and this Agreement." *See id.* at Art. 2.b. The parties' Agreement states that "Anthem is delegated full discretion to determine eligibility for benefits under the Plan and to interpret the terms of the Plan." *Id.* at Art. 2.c. Given this discretion, the parties' Agreement recognizes that Anthem is an ERISA fiduciary when making those specific discretionary eligibility determinations. *Id.* The Agreement also recognizes that Anthem may not be an ERISA fiduciary regarding its other administrative functions. *See id.* at Art. 2.c. (Anthem is an ERISA fiduciary "only to the extent that its performance of such actions constitute fiduciary action under ERISA"); *id.* ("Anthem shall not act as the 'plan administrator' nor shall it be a 'named fiduciary' of the Plan.").

If a member's claim is eligible for coverage, Anthem also determines the overall price at which the claim will be reimbursed. When pricing claims, Anthem "shall utilize Anthem's . . . Provider contract requirements," which include the prices that Anthem has pre-negotiated with providers in its provider network. *See id.* at Art. 2.b.1 (emphasis added); *id.* at Art. 2.s. (recognizing that Anthem "negotiat[es] rates with Providers" in its Provider network).

The Agreement also contemplates that the pricing methodology negotiated in Anthem's provider contracts may vary. Anthem may be required to reimburse providers "on a percentage of charges basis, a fixed payment basis, a global fee basis, single case rate, or other reimbursement

4

methodology." *Id.* at Art. 1, "Paid Claim." And depending on that negotiated methodology, the final price on a particular claim may be "more or less than the Provider's or Vendor's actual Billed Charges for a particular service of supply." *Id.*

The parties agreed, however, that Anthem's pricing across all in-network claims in a given year would be discounted—i.e. below the Providers' billed charges. In 2017, for example, OMI bargained for a specific "minimum Network Provider Discount." *See* Compl. Ex. A, at Attachment to Schedule C Performance Guarantees. This guaranteed discount does not apply to every single in-network reimbursement claim; as noted above, some negotiated reimbursement methodologies may result in prices higher than billed charges for a certain claim. Rather, the guaranteed discount is measured across all claims incurred in a calendar year. *See id.* (clarifying that the "measurement period" is "annual"). If the overall discount is less than the guaranteed minimum, the parties negotiated specific penalties that would apply. *Id.*

Similarly, the Agreement addresses what happens if Anthem makes mistakes in processing claims. OMI did not bargain for 100% accuracy, which is not realistic given the complexity and high volume of medical claims processing. Rather, OMI bargained for at least 95% accuracy. *See id.* at Attachment to Schedule C, Operation Performance Guarantees, Claims Accuracy. And OMI negotiated a specific penalty if Anthem fails to meet that standard. *Id.*

### C. Anthem's Pharmacy Benefit Administrative Services

Anthem also agreed to coordinate administrative services related to OMI's pharmacy benefits through a separate pharmacy benefit manager ("PBM"). *See* Compl. Ex. A, Art. 14; *see also* Ex. A hereto, 2020 Pharmacy Benefits Admin. Services Schedule (the "2020 PBM Agreement").

The PBM provides OMI and its members with "access to a network of pharmacies that have entered into contractual arrangements with PBM under which such pharmacies agree to

provide services to [OMI's members] and accept negotiated fees for such services." Compl. Ex. A, Art. 14.a.1. Like Anthem's medical provider network, the PBM's pharmacy network is not specific to OMI's plan. *See id.* ("PBM shall determine, in its sole discretion, which pharmacies shall be Network Pharmacies . . . ."). The PBM also creates a drug formulary that lists drugs available through the PBM's pharmacy services. *See* Ex. A*,* 2020 PBM Agreement, § b.2.[3] OMI incorporates that formulary as part of its pharmacy benefits plan. *See id.* § 2.a.

The PBM processes pharmacy benefit claims in accordance with OMI's plan. Compl. Ex. A, Art. 14(a)(4); Ex. A, 2020 PBM Agreement, § B.3.a. The Agreement mandates the reimbursement rate that the PBM must use for pharmacy benefits claims. If an OMI member obtains a prescription drug from an out-of-network pharmacy, the reimbursement rate is zero: "[t]he Member shall be responsible for the total cost of the covered Prescription Drug." Ex. A, 2020 PBM Agreement, § B.1.b. If the OMI member goes to an in-network pharmacy, the PBM must apply the reimbursement rate negotiated in its contract with that pharmacy. *Id.* § B.1.a.

The PBM also provided access to rebate agreements with pharmaceutical manufacturers, under which the manufacturer pays a rebate for certain drugs dispensed to members (such as OMI's members) using the PBM's services. *See* Compl. Ex. A, Art. 14.b. These negotiated agreements are not specific to OMI's plan and are used across the PBM's business. *See id.* ("Such Drug Rebate Programs are not based on the drug utilization of any one Employer Plan, but rather are based on

---

[3]     While not attached to the Complaint, Plaintiffs' claims are based in and rely on the 2020 PBM Agreement and may be considered in conjunction with a motion to dismiss. *Gasner v. Cnty. of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995) ("[W]hen a plaintiff fails to introduce a pertinent document as part of his complaint, the defendant may attach the document to a motion to dismiss the complaint and the Court may consider the same"); *Clark v. BASF Salaried Employees' Pension Plan*, 329 F. Supp. 2d 694, 699 (W.D.N.C. 2004) (If "a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." (citations omitted)).

the drug utilization of all individuals enrolled in PBM managed programs."). If the PBM receives a rebate attributable to a pharmaceutical drug dispensed to an OMI member, the Agreement mandates Anthem will pay 100% of that rebate to OMI. *See, e.g., id.*, Schedule A, § 3.A.

OMI bargained for both minimum guaranteed discounts from the PBM's in-network pharmacies and minimum guaranteed rebates. *See, e.g.*, Ex. A, 2020 PBM Agreement, Exhibit C, Performance Guarantees. These guarantees do not require a specific discount or rebate for each individual pharmacy benefit claim. Rather, the negotiated performance guarantees are measured across all claims in a category over the course of a year. *See* Compl., Ex. A, Attachment 1 to Schedule C ("Each Guarantee within a Pricing Guarantee Category is then compared to the ***sum*** of appropriate portion of the Paid Claims for Prescription Drugs plus any Member cost shares associated with each Guarantee within that pricing Guarantee Category.") (emphasis added); *id.* (requiring "annual" measurement period for assessing drug pricing and rebate guarantees).

### D. *Plaintiffs' Instant Lawsuit*

Plaintiffs allege—largely in improper conclusory fashion—that review of claims data reveals that Anthem "sought to increase the costs of Plan administration . . . because doing so increased Defendant's profits." Compl. ¶ 12. On these general allegations, Plaintiffs plead six claims: (1) ERISA violations; (2) breach of contract; (3) breach of good faith and fair dealing; (4) breach of fiduciary duty; (5) fraud; (6) negligent misrepresentation or constructive fraud. Instead of providing any specific examples or transactions, or citing actual claims to substantiate its sweeping counts, Plaintiffs' Complaint rests on the tenuous threads of 19 single-phrase descriptions of the alleged misconduct repeated and lumped in each count. *See* Appendix A.

## LEGAL STANDARD

A Rule 12(b)(6) motion is "an important mechanism for weeding out meritless claims" in the ERISA context. *Fifth Third Bancorp v. Dudenhoeffer,* 573 U.S. 409, 425 (2014). To survive a Rule 12(b)(6) motion, the factual allegations must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). A plaintiff must show "more than the sheer possibility that a defendant has acted unlawfully" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The complaint must contain "factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly,* 550 U.S. at 556).[4] Further, allegations of fraud must satisfy a heightened pleading requirement and must be plead with particularity. *See* Fed. R. Civ. P. 9(b). This includes pleading with particularity the time, place, and contents of the fraudulent representations. *Douros v. State Farm Fire & Cas. Co.*, 508 F. Supp. 2d 479, 485 (E.D. Va. 2007).

## ARGUMENT

**I.    The Court Should Dismiss or Strike Plaintiffs' Implausible, Single-Phrase Theories of Liability.**

Plaintiffs' allege six causes of action: ERISA violations, breach of contract, breach of fiduciary duty, breach of good faith and fair dealing, fraud, and constructive fraud. As the sole support for each of these disparate causes of action, Plaintiffs repeat the same nineteen single-phrase theories of liability. *See* Compl. ¶¶ 76, 86, 92, 97, 104, 112. These nineteen phrases,

---

[4]    Additionally, "[t]he court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Jones v. City of Danville*, 2020 WL 6063063, at *1 (W.D. Va. Oct. 14, 2020).

without more, are insufficient to support Plaintiffs' claims.[5]  *See* Appendix A.

### A. *Allegations that are too vague or conclusory to support any cause of action*

Many of Plaintiffs' nineteen theories of liability are too vague or conclusory to establish the claims that depend on them for support. *See, e.g.,* Compl. ¶¶ 86 (i), (ii), (iii), (iv), (v), (vi), (vii), (viii), (ix), (x), (xi), (xii), (xiii), (xiv), (xv), (xvi), (xvii), (xix).  It is axiomatic that a complaint must provide a defendant with fair notice of the claims against it and plausible grounds on which they rest. *See Twombly*, 550 U.S. at 556.  But Plaintiffs' complaint has not even come close.

For example, Plaintiffs allege that Anthem violated ERISA by "engaging in [*in an unspecified manner*] other [*unspecified*] conduct that fails to satisfy the [*unspecified*] strict standards imposed [*by unspecified regulations*] on fiduciaries by ERISA"  Compl. ¶ 86(xix).[6]  It also alleges that Anthem entered in "[*unspecified*] reimbursement agreements and [*unspecified*] arrangements with [*unspecified*] providers for the Plan that provide much less discounts [*of an unspecified amount*] than the [*unspecified*] discounts easily obtained in the market," and that Anthem failed "to inform Plaintiff of these [*unspecified*] actions and the [*unspecified*] costs these actions imposed on the Plan when doing so reduced assets of the Plan [*in an unspecified amount*] while enriching Defendant [*in an unspecified amount*] and its [*unspecified*] associate companies." *See, e.g., id.* ¶ 92 (x), (xvi).

---

[5]  While each theory of liability constitutes a separate claim that is ripe for dismissal, the Court may also consider striking some of Plaintiffs' individual theories of liability alleged in each under Federal Rule of Civil Procedure 12(f) as immaterial or impertinent. *See Syed v. Mohammad*, 2016 WL 8731783, at *5 (E.D. Va. Apr. 1, 2016) (dismissing entire causes of action in a counterclaim and striking certain allegations that were redundant, immaterial, and irrelevant to the claims alleged).

[6]  In other places, this allegation is even more puzzling because Plaintiffs further expand it to "includ[e] the active concealment of claims data and other information." Compl. ¶ 76 (xix).  Aside from Plaintiffs' various admissions that they actually received claims data (*see* Compl. ¶ 55 "Plaintiff's review of its Plan's claims data"), this allegation is unfounded because Plaintiffs have expressly released Anthem from any liability related to Anthem's alleged responsibility to make claim data productions.  Anthem reserves all rights to strictly enforce the terms of that release.

9

Similarly, Plaintiffs allege that Anthem was "using Plan funds to pay more for prescriptions than charged by providers — a practice called 'spread pricing' — which caused the Plan to pay significantly more for prescription drugs while allowing Defendant or its affiliates to retain the excess." *See, e.g.,* id. ¶ 92(v). But Plaintiffs provide no supporting factual allegations suggesting that Anthem or its PBM—as opposed to other third-party administrators in the market—was actually engaged in this practice.[7]   Plaintiffs further conclusorily allege that Anthem "steer[ed]" or "encourage[ed]" OMI members "to use [Anthem]-affiliated providers who charged more for the same or lesser quality of care and who passed on the excess of these payments to Defendant or its affiliated companies." Compl. ¶ 92(vi). Yet Plaintiffs fail to identify a single fact-based instance when this "steering" actually occured, much less point to plausible facts showing that Anthem or its affiliated companies retained any excess payments for itself.

Plaintiffs also allege that Anthem caused the Plan to overpay claims, pay the same claims multiple times, or improperly pay claims, yet they allege no facts supporting these allegations, or specify what claims are at issue and why Plaintiffs believe the payment was improper. *See, e.g., id.* ¶ 86; *infra* Section I.B. Plaintiffs allege, for example, that Anthem paid claims "that were coded incorrectly," *id.* ¶ 86 (xiii), but fail to allege how claims were coded incorrectly or what coding rules or standards required a different coding. *See also id.* ¶ 86 (xiv). Plaintiffs also fault Anthem for "failing to meet discount and rebate guarantees for prescription drug claims," but do not identify any specific discount and rebate guarantees that were not met. *See, e.g., id.* ¶ 92(viii).

---

[7]   Plaintiffs' only support for this allegation are abstract and general conclusions that "*[unspecified]* nationwide reports have revealed *[unspecified]* widespread misconduct." Compl. ¶ 4. Plaintiffs go on to allege that "*[unspecified]* investigations have uncovered that *[unspecified]* administrators' *[unspecified]* acts and *[unspecified]* omissions have resulted in the misappropriation and waste *[via unspecified conduct]* of billions of plan dollars *[by unspecified companies]*." *Id.* Even if true, there is nothing about these allegations that plausibly tie them to Anthem's conduct—as opposed, for instance, to another third party administrator.

10

In short, Plaintiffs' single-phrase allegations lack any alleged factual support that would allow this Court to conclude that any of the six causes of action cross the line to "plausible." *Twombly*, 550 U.S. at 570. Neither Anthem (nor this Court), moreover, can take any of these allegations and identify what transaction or claim Anthem is alleged to have mishandled. Therefore, the Court should dismiss or strike these individual theories of liability from the Complaint. *See, e.g.,* Compl. ¶¶ 86 (i), (ii), (iii), (iv), (v), (vi), (vii), (viii), (ix), (x), (xi), (xii), (xiii), (xiv), (xv), (xvi), (xvii), (xix).

### B. *Allegations concerning processing errors that Plaintiffs fail to identify*

Second, Plaintiffs' theories of liability include alleged processing errors for claims, but Plaintiffs fail to provide any specific examples of these mistakes. *See, e.g., id.* ¶¶ 86 (i), (ii), (viii), (ix), (xi), (xii), (xiii), (xiv), (xv), (xvii), (xix). Plaintiffs allege, for example, that Anthem caused the Plan to overpay claims, pay the same claims multiple times, or improperly pay claims. *See, e.g., id.* ¶ 86 (i), (ii), (xii), (xiii). To satisfy even Rule 8 pleading standards, federal courts routinely require parties to plead the underlying details of the health insurance claims which form the basis for plaintiffs' claims, typically in a claims spreadsheet. *See, e.g., Sanctuary Surgical Ctr., Inc. v. United Healthcare, Inc.*, 2011 WL 2134534, at *3 (S.D. Fla. May 27, 2011) (granting motion to dismiss where complaint plaintiff failed to provide details regarding the claims at issue and therefore did not provide sufficient factual allegations to put defendant on notice of the basis for each cause of action).[8] It is telling that despite purporting to be in possession of claims data

---

[8] *See also Infectious Disease Doctors, P.A. v. Bluecross Blueshield of Texas*, 2014 WL 4262164, at *3 (N.D. Tex. Aug. 29, 2014) (dismissing complaint for breach of contract and ERISA violations where plaintiff's conclusory allegations did not provide sufficient facts to state a claim, and plaintiff failed to provide details supporting its claims such as patients covered by plans at issue, treatments patients received, terms of patient's plans, and doctors that performed services at issue); *Doctor's Hosp. of Slidell, LLC v. United HealthCare Ins. Co.*, 2011 WL 13213620, at *2 (E.D. La. Apr. 27, 2011) (dismissing complaint where plaintiff failed to provide factual details regarding claims allegedly unpaid or underpaid such as plans under which patients were insured

(Compl. ¶ 12), from these allegations, Anthem cannot ascertain in any way what claims were overpaid, improperly paid, or otherwise at issue—let alone what those claims amount to. And that is critical, because each individual reimbursement claim has its own circumstances, including the member involved, the medical services at issue, how those issues were coded, the identity of the treating provider or providers, and the location of the services at issue. All of this informs whether the claim was properly processed. The Court should therefore dismiss or strike these allegations. *See e.g., id.* ¶¶ 86 (i), (ii), (viii), (ix), (xi), (xii), (xiii), (xiv), (xv), (xvii), (xix).

### C. Allegations describing conduct consistent with OMI's negotiated contract

Various of Plaintiffs' single-phrase liability allegations cannot plausibly form the basis for their claims because they describe conduct that is consistent with the contractual obligations in the Agreement for which OMI specifically negotiated for and that Anthem agreed to follow. *See e.g., id.* ¶¶ 86 (i), (iii), (v), (viii), (x), (xviii). Anthem cannot be liable for following the terms of the parties' carefully negotiated Agreement under any of the claims that Plaintiffs have tried (but failed) to plead. *See infra* Sections II.A, II. B, II.D; *see also Alves v. Harvard Pilgrim Health Care Inc.*, 204 F. Supp. 2d 198, 210 (D. Mass. 2002) (holding that where an ERISA plan is implemented according to its terms, there can be no breach of fiduciary duty).

For example, Plaintiffs allege that Anthem improperly classified "affordable generic drugs as specialty pharmaceuticals, which resulted in the Plan paying excessive prices-or receiving less return in discounts and rebates." *See, e.g.* Compl. ¶ 92 (iii). "Generic" and "specialty"" however, are not mutually exclusive designations for drugs. "Generic" and "brand-name" drugs are

---

or amounts actually paid on any claim); *Polk Med. Ctr., Inc. v. Blue Cross & Blue Shield of Ga., Inc.,* 2018 WL 624882, at *4 (N.D. Ga. Jan. 30, 2018) (dismissing plaintiff's complaint because it failed to "allow a reasonable person to ascertain 'the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits'" which lay at the heart of its causes of action).

mutually exclusive categories, as the parties Agreement explains. *See id.* Ex. A, Attachment to Schedule C (defining "Brand Name Prescription Drug" as "not a Generic Drug"). But "specialty" drugs may be either brand or generic. "Specialty Drugs" are defined in the Agreement as any "drugs dispensed from a Specialty Service Pharmacy" or that "have special handling, storage, and shipping requirements," among other specialty features. *See id.*; Ex. A, 2020 PBM ASA at Definitions. The Agreement does not state that specialty drugs cannot be generic. *See id.* This theory of liability, therefore, alleges no misconduct and cannot support any cause of action.

Additionally, Plaintiffs allege that Anthem should be held liable for "receiving less return in discounts or rebates." *See* Compl. ¶ 92(iii). OMI did not contract to (nor is it standard practice for a PBM or claims administrator to) secure the best possible rebates in the market.[9] OMI did, however, contract for "minimum drug rebates." *See* Compl. Ex. A, Attachment to Schedule C. Plaintiffs do not allege that those specific minimums were not met. Plaintiffs also allege that Anthem entered into "reimbursement agreements and arrangements with providers for the Plan that provide much less discounts than the discounts easily obtained in the market." *See* Compl. ¶ 92(x). This allegation cannot support any cause of action, either, because OMI did not bargain for discounts "easily obtained" in the market. Rather, OMI bargained for specific network discount guarantees, which it does not plausibly allege were not met. *See supra,* I.A; Compl. Ex. A, Attachment to Schedule C.

Plaintiffs' pharmaceutical "spread pricing" allegation suffers the same flaw. *See, e.g.,* Compl. ¶ 92(v). As discussed above, Plaintiffs fail to allege that *Anthem*, as opposed to other unspecified service providers in the market, engaged in this practice or allowed the PBM to do so.

---

[9]     And, consistent with all of their contractual breach allegations which fail to tether the alleged misconduct to a contractual obligation (*see infra.* § 2.B), Plaintiffs cite to nowhere in the Agreement reflecting such an obligation. This is because there is no such provision.

*See* Section I.A. In any event, nothing in the Agreement requires Anthem's PBM to pass on spread-pricing savings to Plaintiffs. *See* Compl., Ex. A; *see, e.g., Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463, 473 (7th Cir. 2007) (where contract included "no mechanism for pass-through of any additional savings [the PBM] managed to negotiate with retailers," the PBM did not violate ERISA when it retained the "spread" on pharmacy pricing). Instead, OMI negotiated for, and Anthem agreed to, other methods for regulating pharmacy costs such as performance guarantees. *See* Compl. Ex. A, Schedule C.

Plaintiffs also claim that Anthem caused "the Plan to grossly overpay claims including 100% above billed charges." *See, e.g.,* Compl. ¶ 92(i). But the parties' Agreement expressly permits that some claims may be reimbursed at amounts higher than the Provider's billed charges, depending on the reimbursement methodology required under Anthem's contract with that Provider. *See id.*, Ex. A (Art. 1, "Paid Claim") ("whether such amount is more or less than the Provider's or Vendor's actual Billed Charges for a particular service or supply; or . . . whether such payments are increased . . . by the Provider's . . . achievement of . . . specified goals").[10]

Finally, Plaintiffs challenge the amount of fees they were purportedly charged for claims processed through the BlueCard program, which is used for medical services received outside of Anthem's limited geographic service area. But the parties' Agreement shows that is not plausible: Anthem agreed to not to charge *any* BlueCard fees to OMI. *See id.,* Schedule A. To the extent that Plaintiffs' vague allegations suggest otherwise, the contract attached to the Complaint governs. *Fountain Enters., LLC*, 568 F. Supp. 3d at 615 n.2 ("Any conflicts between the allegations in the

---

[10]    *See also id.*, Inter-plan Arrangements ("Sometimes, this negotiated price may be greater for a given service or services than the Billed Charges in accordance with how the Host Blue has negotiated with its Participating Provider(s) for specific healthcare services. . . . This excess amount reflects an amount that may be necessary to secure (a) the Provider's participation in the network or (b) the overall discount negotiated by the Host Blue.").

Complaint and the content of the exhibit are resolved in favor of the exhibit.").

Because each of these theories describe conduct consistent with the contractual obligations the parties bargained for in the Agreement, the Court should dismiss or strike these theories of liability. *See e.g.,* Compl. ¶¶ 86 (i), (iii), (v), (viii), (x), (xviii).

## II. Plaintiffs' Causes of Action Should Be Dismissed for Failure to State a Claim

Aside from the fatally vague, conclusory, and implausible allegations described above, there are several additional bases for dismissal of Plaintiffs' nineteen theories of liability.

### A. Plaintiffs Fail to State a Claim for ERISA Violations

Plaintiffs' ERISA claims are premised on the notion that Anthem is an ERISA fiduciary. *See, e.g.*, *id.* ¶ 36. But Plaintiffs' allegations, and the Agreement incorporated into the Complaint, make clear that Anthem is not an ERISA fiduciary with respect to many of the functions underlying Plaintiffs' nineteen theories of liability. Plaintiffs ERISA claim should be dismissed to the extent it is based on these non-fiduciary functions.

A service provider, such as Anthem, is a functional fiduciary only to the extent it (1) "exercises any discretionary authority or discretionary control respecting management of such plan"; (2) "has any discretionary authority or discretionary responsibility in the administration of such plan"; or (3) "exercises any authority or control respecting management or disposition of [the plan's] assets." 29 U.S.C. § 1002(21)(A). Whether a defendant is an ERISA fiduciary "is not an all-or-nothing designation." *Reetz v. Aon Hewitt Inv. Consulting, Inc.*, 74 F.4th 171, 179-80 (4th Cir. 2023). Rather, an entity "may be an ERISA fiduciary for some purposes, but not for others." *Plumb v. Fluid Pump Serv., Inc.*, 124 F.3d 849, 854 (7th Cir. 1997). Fiduciary liability only attaches if "a person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000). Even if the Court finds that one or more of the alleged functions trigger fiduciary status, Plaintiffs' claims as to the

15

remaining functions should still be dismissed. *Prime Commc'ns, L.P. v. Ragsdale Liggett, PLLC*, 2019 WL 5677928, at \*8 (E.D.N.C. Oct. 31, 2019) (granting a motion to dismiss ERISA fiduciary claims based on some functions, but not others).

Courts have generally recognized two categories of functions (among others) that do not trigger ERISA fiduciary status. *First*, conduct that is not specific to the ERISA plan, including business-wide activities like provider or pharmacy contracting, does not trigger fiduciary status even if they are discretionary. *Am. Psychiatric Assoc. v. Anthem Health Plans, Inc*., 821 F.3d 352, 357 n.2 (2d Cir. 2016) ("'[G]eneral fiduciary duties under ERISA [are] not triggered' . . . when the decision at issue is, 'at its core, a corporate business decision, and not one of a plan administrator.'"); *Doe 1 v. Express Scripts, Inc.*, 837 F. App'x 44, 48 (2d Cir. 2020) (holding that defendant did not act as an ERISA fiduciary when it entered into agreements, even though it may ultimately affect how much plan participants pay for drug prices). Several of Plaintiffs' theories of liability are premised on such business-wide conduct that does not trigger fiduciary status.

For example, Plaintiffs allege Anthem violated ERISA by "agreeing to less favorable discount arrangements with providers" or "entering reimbursement agreements and arrangements with providers" that offer less discounts. *See, e.g.,* Compl. ¶ 86 (x), (xi). But the parties' Agreement makes clear that Anthem's negotiated arrangements with providers are not specific to OMI's plan. *See* Compl. Ex. A, at Art. 2.s. ("In building and maintain its Provider network, Anthem is not acting on behalf of or as an agent for any Employer or member."). Courts have repeatedly held that negotiating agreements with providers is a general business decision that does not trigger Anthem's fiduciary status, even if these activities do ultimately impact the Plan. *See Massachusetts Laborers' Health & Welfare Fund v. Blue Cross Blue Shield of Massachusetts*, 66 F.4th 307, 322 (1st Cir. 2023) (collecting cases and holding "broader business decisions that

16

simply affected the Plan and its participants" do not confer fiduciary status).[11]

Plaintiffs also challenge the level of rebates they received from pharmacy benefit claims. *See* Compl. ¶ 86(viii). But as the parties' Agreement makes clear, the PBM does not make available rebates specific to OMI's plan; rather, rebates are negotiated for all the PBM's customers. *See id.* Ex. A, at Art. 14.b; *see also Chicago Dist. Council of Carpenters Welfare Fund*, 474 F.3d at 476 (where PBM rebate contracts were not specific to plaintiffs' plan, and rebate amount owed to Plaintiffs was mandated in the contract, the PBM owed no ERISA fiduciary duties). Likewise, to the extent Plaintiffs challenge the level of discounts that were negotiated in contracts with in-network pharmacies, that business-wide contracting function does not create fiduciary status.

***Second***, performance of mandatory contractual terms does not confer fiduciary status. *See, e.g.*, *Mass. Laborers'*, 66 F.4th at 320 (no fiduciary status where "BCBSMA was afforded no discretion to deviate from [negotiated] rates"); *Doe*, 837 F. App'x at 49 (holding that when a service provider sets prices "pursuant to the terms of a contract, it is not exercising discretionary authority and therefore not acting as an ERISA fiduciary").[12] Many of Plaintiffs' theories of liability supporting their claims for ERISA violations, consist of conduct that the Agreement specifically mandates.

---

[11] *See also In re UnitedHealth Group PBM Litig.*, 2017 WL 6512222, at *10 (D. Minn. Dec. 19, 2017) ("[N]egotiating prices with providers is also not a fiduciary function, but rather the administration of a network administrator's business."); *DeLuca v. Blue Cross Blue Shield of Michigan*, 628 F.3d 743, 747 (6th Cir. 2010) (holding negotiating rates was a business dealing not directly associated with a benefits plan, but was "generally applicable").

[12] *See also Moeckel v. Caremark, Inc.*, 622 F. Supp. 2d 663, 692 (M.D. Tenn. 2007) (where many of the defendant's actions "complained of by the plaintiff were contractually compelled as a result of an arm's length negotiated agreement" between the parties, the defendant did not have ERISA fiduciary status); *Chicago Dist. Council of Carpenters Welfare Fund,* 474 F.3d at 465-76 (holding that because the parties agreed in their contract that the PBM would pay a fixed rebate for prescriptions filled, the PBM owed no fiduciary duties related to rebates); *In re UnitedHealth Group PBM Litig.*, 2017 WL 6512222 at *10 (holding that defendants did not act as fiduciaries when engaging in certain actions because "these activities involved the performance of contractual terms").

17

Plaintiffs allege, for example, that Anthem withheld "pharmaceutical rebates from the Plan." *See* Compl. ¶ 86(iv). There are no plausible facts to back that up. But even if there were, passing through pharmacy rebates is not a discretionary act that may trigger ERISA fiduciary status, because the parties' Agreement specifically mandates that "Anthem will pay to Employer 100% of the Drug Rebates." *Id*. Ex. A, Schedule A.

Similarly, Plaintiffs allege that Anthem "failed to meet discount and rebate guarantees for prescription drug claims." Compl. ¶ 86 (viii). Again, this allegation is not plausible. Regardless, this alleged function does not create ERISA fiduciary status. As Plaintiffs allege, the overall contractual discount levels are "guarantees." Anthem does not have discretion over whether to meet them. The Agreement mandates that it must, subject to specific contractual penalties.

Plaintiffs also allege that Anthem violated ERISA by charging excessive fees for claims processed through the BlueCard program, also known as an "Inter-Plan Arrangement." *See id.* ¶ 86 (xvii).[13] But the parties' Agreement expressly mandates that Anthem will not charge BlueCard fees to OMI. *See id.* Ex. A, Schedule A ("All Inter-Plan Arrangement-related fees, including any Access Fees paid to Host Blues, the Administrative Expense Allowance ("AEA") Fee and any Negotiated Arrangement fees are included in Anthem's Base Administrative Services Fee."). Therefore, even if Plaintiffs had plausibly alleged that it was charged any particular BlueCard fees, contrary to the Agreement (they have not), that function does not create ERISA fiduciary status, which is required to state a claim under ERISA.

Finally, Plaintiffs allege that Anthem violated ERISA by "causing the Plan to pay exorbitant, unreasonable fees to Defendant and vendors" through "arrangements with Multiplan and similar vendors." *See* Compl. ¶ 86.(xviii). But again, the fee amount charged for MultiPlan's

---

[13] Anthem reserves all rights to enforce OMI's release of BlueCard-related claims as part of a class settlement in *In re Blue Cross Blue Shield Antitrust Litigation*, MDL 13-2000 (N.D. Ala.).

services is not discretionary. The services OMI specifically negotiated for and that Anthem agreed to provide are specifically delineated in the Agreement. *See, e.g., id.*, Ex. A, Schedule A ("When Anthem forwards a non-Network Provider Claim to Vendor to negotiate with the non-Network Provider, the Employer will pay a fee equal to 50% of the difference between the non-Network Provider's Billed Chares and the amount Anthem uses to calculate Plan liability for the Covered Service."). Charging those fees therefore does not trigger ERISA fiduciary status. *See, e.g.*, *Mass. Laborers'*, 66 F.4th at 322 (no fiduciary status where contract mandated service provider's fee at fixed percentage of recovery); *Central Valley AG Coop. v. Leonard*, 400 F. Supp. 3d 819, 843 (D. Neb. 2019) (holding that there was no breach of fiduciary duty where provider received percentage of savings fee, which was specifically disclosed in the parties' agreement). Plaintiffs' ERISA claims premised on (1) business-wide functions or (2) mandatory contractual obligations should be dismissed, because those functions do not create ERISA fiduciary status.[14]

### B. *Plaintiffs Fail to State a Claim for Breach of Contract*

Plaintiffs also fail to state a claim for breach of contract. To properly allege breach of contract, plaintiff must show "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Brown v. Myers*, 2016 WL 206301, at *4 (E.D. Va. Jan. 15, 2016) (Payne, J.) (dismissing breach of contract claim). Here, however, Plaintiffs fail to allege a breach of Anthem's obligations under the Agreement as many of their theories of liability are based in conduct explicitly permissible under the Agreement. Plaintiffs' allegations, for example, that Anthem entered into reimbursement agreements with providers that provided less discounts than other "easily obtain[able]" discounts (*see, e.g.,* Compl. ¶ 86(x); *see also, e.g., id.* ¶ 86(viii)), are

---

[14]    Anthem reserves all rights to argue that other functions not addressed here likewise do not create fiduciary status, if any part of this case is allowed to proceed.

not violations of the Agreement as any such conduct is consistent with the contractual obligations in the Agreement. *See supra* § 1.C (explaining that the contract provides for specific discount guarantees, but that the parties did not bargain for discounts "easily obtained" in the market). Plaintiffs' remaining theories of liability for breach of contract are vague, conclusory, and lack specificity to charge Anthem with incorrectly paying any particular claims. *See supra* Sections I.A, I.B, I.C. Nowhere, for instance, do Plaintiffs cite what portions of what contract Anthem breached.[15] Nor do Plaintiffs tether any one of their nineteen single-phrase allegations of misconduct to a single contractual provision that Anthem allegedly violated. *See generally,* Compl. It is a fundamental pleading requirement to put a party on fair notice of how it breached a contract. *Raja v. Specialized Loan Servicing, LLC*, 2024 WL 1201603, at *6 (E.D. Va. Mar. 20, 2024) (dismissing breach of contract claim where complaint did not identify specific provision that defendants violated); *Broyhill v. Bank of Am., N.A.*, 2010 WL 3937400, at *5 (E.D. Va. Oct. 6, 2010) ("To survive a motion to dismiss, a breach of contract claim must allege both the existence of a contract and a breach of a specific provision of that contract."). For these reasons, Plaintiffs' claim for breach of contract should be dismissed.

### C. *Plaintiffs Fail to State a Claim For Breach of Good Faith and Fair Dealing*

Plaintiffs also fail to state a claim for breach of good faith and fair dealing. In Virginia, an alleged breach of the implied covenant of good faith and fair dealing can only give rise to a breach of contract claim, but it is not an independent tort and therefore not a separate claim. *Douglas v. Ocwen Loan Servicing, LLC*, 2016 WL 1572925, at *5 (E.D. Va. Apr. 18, 2016) (Payne, J.) ("A

---

[15] Instead of complying with basic pleading requirements, Plaintiffs simply attach the Agreement and indicate that "Relevant portions of the ASA have been highlighted for ease of reference." Compl. ¶ 10. But there is nothing *easy* about Plaintiffs' referenced Agreement. Highlighting broad swaths of multiple paragraphs on almost every page of the base agreement of a 170-page Agreement does not allow either Anthem or the Court to construe plausible allegations.

breach of the implied covenant of good faith and fair dealing 'only gives rise to a breach of contract claim, not a separate cause of action.'" (citations omitted)).[16]  Plaintiffs cannot plead a separate cause of action for breach of good faith and fair dealing.  Underscoring the purpose of this rule, Plaintiffs' good faith and fair dealing claim is substantively ***identical*** to Plaintiffs' breach of contract claim: repeating exactly the same conduct Plaintiffs allege Anthem did to breach the contract.  Thus, Plaintiffs' claim should be dismissed as duplicative of the breach of contract claim.

Further, when parties to an agreement create valid, binding rights, the implied covenant of good faith and fair dealing is inapplicable to those express contractual terms.  *Bennett v. Bank of Am., N.A.*, 2012 WL 1354546, at *10 (E.D. Va. Apr. 18, 2012); *Ward's Equip., Inc. v. New Holland N. Am., Inc.*, 254 Va. 379, 385, 493 S.E.2d 516, 520 (1997) ("Generally, [the implied covenant of good faith and fair dealing] cannot be the vehicle for rewriting an unambiguous contract in order to create duties that do not otherwise exist.").  Here, the Agreement creates unambiguous rights and duties, which Anthem complied with.  *See supra* Section I.C.  Plaintiffs' allegations cannot form the basis of a cause of action for breach of good faith and fair dealing because the Complaint alleges conduct expressly bargained for as contractual duties in the Agreement.  The Court should therefore dismiss Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing.

### D. *Plaintiffs Fail to State a Claim for Breach of Fiduciary Duties*

Plaintiffs fail to state a claim for breach of fiduciary duties.  To state a claim for breach of

---

[16]     *See also Entrepreneur Dream Team v. Certain Interested Underwriters of Lloyd's Ins. Co.*, 2023 WL 5167007, at *6 (E.D. Va. July 7, 2023), *rep. and rec. adopted*, 2023 WL 5670041 (E.D. Va. Aug. 31, 2023) ("But an alleged breach of that covenant 'does not amount to an independent tort;' instead, it 'gives rise only to a cause of action for breach of contract.' In other words, '[a] claim for the breach of that covenant is a claim for breach of contract.'" (citations omitted)); *Rogers v. Deane*, 992 F. Supp. 2d 621, 633 (E.D. Va. 2014), *aff'd*, 594 F. App'x 768 (4th Cir. 2014) ("Where there is a claim for breach of contract, the inclusion of a claim for breach of the implied covenant of good faith and fair dealing as a separate claim is duplicative of the breach of contract claim; it does not provide an independent cause of action.").

fiduciary duty, Plaintiffs must show that the duty arose from a noncontractual source. *Self Insured Services Co. v. Panel Sys., Inc.*, 352 F. Supp. 3d 540, 557 (E.D. Va. 2018) ("As with other tort claims, a plaintiff alleging breach of a fiduciary duty must show that the duty owed by the defendant arose from a noncontractual source."); *Augusta Mut. Ins. Co. v. Mason*, 274 Va. 199, 205, 645 S.E.2d 290, 293 (2007) ("[I]in order to recover in tort, "the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract."). Plaintiffs' allegations in this count are identical to the allegations that form the basis of their breach of contract count, and are based in the parties' Agreement. *Compare* Compl. ¶ 86, *with* ¶ 98. As Plaintiffs' allegations in this cause of action arise solely from duties assigned to Anthem in the Agreement that were allegedly breached, Plaintiffs' claim must be dismissed. *See supra* Section II.B; Compl. ¶ 96 ("Plaintiff assigned significant discretion to Defendant…"). Additionally, Plaintiffs do not plausibly allege that Anthem has fiduciary obligations to Plaintiffs under ERISA, and therefore there can be no breach of fiduciary duty. *See supra* Section II.A. Plaintiffs' claim for breach of fiduciary duty should be dismissed.

### E. Plaintiffs Fail to State a Claim for Fraud

The Court should also dismiss Plaintiffs' fraud claim. First, a fraud claim that is nothing more than a breach of contract claim should be dismissed. *Brown*, 2016 WL 206301, at *3 (Payne, J.) (A "fraud claim must be independent from the breach of contract claim."); *ITility, LLC v. Staffing Res. Group, Inc.*, 2020 WL 6701361, at *4 (E.D. Va. Nov. 13, 2020) ("A fraud claim must be dismissed if "it is nothing more than a contract claim dressed up as a tort claim; it is a fraud claim based on [defendant's] performance of a contractual duty."); *Hughes v. Wells Fargo Bank*, 2014 WL 12527212, at *7 (E.D. Va. Dec. 2, 2014), *aff'd sub nom.*, *Hughes v. Wells Fargo Bank, N.A.*, 617 F. App'x 261 (4th Cir. 2015) ("When a tort claim such as fraud is brought in a breach contract case, a court must ensure that the tort claim stems from the defendant's breach of a

common law duty of care independent of any duties owed to the plaintiff under the contract."). Here, Plaintiffs' allegations in their fraud count "repeat[] nearly verbatim the allegations set forth in [its] breach of contract claim" and are based in alleged wrongdoing arising from Anthem's contractual duties under the Agreement. *See Rossman v. Lazarus*, 2008 WL 4181195, at \*8 (E.D. Va. Sept. 3, 2008). As Plaintiffs do not state a noncontractual basis for their fraud claim, the Court should dismiss the claim.

Second, even if the fraud claim were not based only on Anthem's contractual duties, Plaintiffs still fail to properly allege a claim for fraud. In Virginia, "[a] plaintiff asserting a cause of action or actual fraud bears the burden of proving by clear and convincing evidence the following elements: '(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting in damage to the party misled.'" *Self Insured Servs. Co.,* 352 F. Supp. 3d at 555. The Fourth Circuit has held that under Federal Rule of Civil Procedure 9(b), the elements of a fraud claim, including "the ***time***, ***place***, and ***contents*** of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby" must be pled with particularity. *Douros*, 508 F. Supp. 2d at 485 (emphasis added).

Plaintiffs have not only failed to allege any facts about when or where Anthem made misrepresentations to Plaintiffs, they have also failed to provide a single instance of a misrepresentation. *See* Compl. ¶¶ 101-108. For example, Plaintiffs conclusorily allege that Anthem caused the plan to overpay claims, pay the same claims multiple times, or pay claims that were incorrectly coded (*id.* ¶ 104). But there are no concrete, factual instances alleged when such conduct occurred, and certainly no facts required to satisfy 9(b)'s heightened pleading requirements. Plaintiffs fail to identify any claims, transactions, or any other occurrence

23

supporting these allegations, as required by 9(b). *See supra* Section I.C. Plaintiffs also failed to plead detrimental reliance with any particularity, only conclusorily alleging that they "reasonably relied on Defendant's misrepresentations." *See* Compl. ¶ 107; *Wood v. Southside Physician Network, LLC*, 2019 WL 3416665, at *8 (E.D. Va. July 29, 2019) ("A plaintiff must also plead 'reasonable, detrimental reliance ... with particularity.'"). As Plaintiffs have failed to plead their fraud claim with particularity and their allegations that support this claim are based only in a contractual duty, the Court should dismiss the claim.

## F. *Plaintiffs Fail to State a Claim for Constructive Fraud*

Plaintiffs also fail to state a claim for constructive fraud. As with Plaintiffs' fraud claim, Plaintiffs' claim for constructive fraud is based in Anthem's contractual duty arising out of the Agreement. To illustrate: Plaintiffs' allegations for breach of constructive fraud are nearly identical to their allegations for breach of contract. By their very own pleading, then, Plaintiffs do not distinguish the claims. Plaintiffs' constructive fraud claim is the kind of disguised breach of contract claim that courts do not hesitate to dismiss. *See* Compl. ¶ 112; *ITility, LLC*, 2020 WL 6701361, at *4 ("A fraud claim must be dismissed if it is nothing more than a contract claim dressed up as a tort claim; it is a fraud claim based on [defendant's] performance of a contractual duty."). Further, to state a claim for constructive fraud Plaintiffs must allege with particularity "that a false representation of a material fact was made innocently or negligently, and the injured party was damaged as a result of ... reliance upon the misrepresentation." *Self Insured Servs. Co.*, 352 F. Supp. 3d at 555. As with their claim for fraud, Plaintiffs have failed to plead the elements of this count with particularity by failing to allege the specific misrepresentations Anthem made, where or when Anthem made them, or why Plaintiffs' reliance on these representations was reasonable. Plaintiffs conclusorily allege that Anthem "made these representations negligently" and that "as a result of these action, Plaintiff…suffered damages," without further explanation or

support.  *See* Compl. ¶¶ 112, 115.  The Court should dismiss Plaintiffs claim for constructive fraud as it is based in alleged breaches of contract and is not plead with particularity.

### III.    Plaintiffs' State Common Law Claims Are Preempted Pursuant to Section 514 of ERISA and Should Be Dismissed.

To the extent Plaintiffs' ERISA claims survive — and they should not — ERISA defensively preempts the remaining state law causes of action.[17]  Defensive preemption under Section 514 of ERISA has been "broadly interpreted by the courts to carry out Congress' intent to displace any state law efforts to regulate ERISA matters."  *Tri-State Mach., Inc. v. Nationwide Life Ins. Co.*, 33 F.3d 309, 312 (4th Cir. 1994) (citing *FMC Corp. v. Holliday*, 498 U.S. 52, 58 (1990)) ("the pre-emption clause is conspicuous for its breadth").[18]  In the Complaint, Plaintiffs allege numerous causes of action arising under both ERISA and state law claims.   Under ERISA, Plaintiffs allege Anthem breached its fiduciary duties under the Agreement.  Compl. ¶¶ 70-79.  Citing to the *exact* same factual allegations, Plaintiffs assert state common law claims for: breach of contract, breach of good faith and fair dealing, breach of fiduciary duty, fraud, and negligent misrepresentation or constructive fraud.  *Id.* ¶¶ 80-115.  Together, these repetitive claims show Plaintiffs' strategy to plead everything but the kitchen sink—even though the law instructs otherwise.  Indeed, Section 514 of ERISA mandates that ERISA's provisions "supersede any and all State common laws insofar as they may now or hereafter relate to any employee benefit

---

[17]    Courts routinely dismiss claims based on both preemption under ERISA and failure to state a claim under ERISA.  *See Andrews-Clarke v. Lucent Techs., Inc.*, 157 F. Supp. 2d 93, 106 (D. Mass. 2001) (dismissing a claim that was both preempted by ERISA and simultaneously failed to state a claim under ERISA); *Crimi v. PAS Indus., Inc.*, 1995 WL 272580, at *7 (S.D.N.Y. May 9, 1995) (dismissing state law claims that were identical to an ERISA claim regardless of fiduciary status under ERISA).

[18]    *See also Reisch-Elvin v. Provident Life and Acc. Ins. Co.*, 372 F. Supp. 2d 827, 830 (E.D. Va. 2005) ("ERISA defines state law to include 'any laws, decisions, rules, regulations or other State action having the effect of law, of any State.'" (quoting 29 U.S.C. § 1144(c)(1))).

plan[.]"[19]  29 U.S.C. § 1144(a).

The Supreme Court has identified three categories of state claims that are preempted by ERISA: "(1) laws that mandate employee benefit structures or their administration; (2) laws that bind employers or plan administrators to particular choices or preclude uniform administrative practices; and (3) laws that provide alternative enforcement mechanisms to ERISA's civil enforcement provisions."  *HCA Health Servs. of Virginia, Inc. v. CoreSource, Inc.*, 2020 WL 4036197, at *4 (E.D. Va. July 17, 2020) (citing *Darcangelo v. Verizon Commc'ns, Inc.*, 292 F.3d 181, 190 (4th Cir. 2002)).  The Supreme Court has also repeatedly stated that ERISA Section 514(a) is to be construed broadly.  *See Shaw v. Delta Air Lines*, Inc., 463 U.S. 85, 96-97 (1983) ("The breadth of § 514(a)'s pre-emptive reach is apparent from that section's language.").[20]

To assess whether Plaintiffs' state claims are preempted by ERISA, the Court must determine: (1) whether a Plan exists and (2) whether the state common law claims "relate to" the Plan.  *Rollins,* 109 F. Supp. 3d at 877.  Here, there is no question as to whether a Plan exists: Plaintiffs attached the relevant ERISA-governed plan to the Complaint (the Agreement).  Compl., Ex. A; *see also Powell v. Chesapeake and Potomac Tel. Co. of Va.*, 780 F.2d 419, 423-34, n.6 (4th Cir. 1985) (citing administrative services agreement to find processing claims were pursuant to

---

[19]     ERISA has two sections that address preemption.  Section 502 enables cases to be removed to federal court where otherwise it would not be removable.  29 U.S.C. § 1132(a).  Section 514 is a defense that may be asserted to supersede state laws that relate to an ERISA plan.  29 U.S.C. § 1144; *see Rollins v. Kjellstrom & Lee, Inc.*, 109 F. Supp. 3d 869, 877-78 (E.D. Va. 2015) (stating that Section 514's conflict preemption provides a federal defense to a state law claim).  The relevant section is 514 because OMI has already asserted ERISA applies and filed this action in federal court.  *See, e.g.*, *Lamberty v. Premier Millwork and Lumber Co., Inc.*, 329 F. Supp. 2d 737 (E.D. Va. 2004) (considering Section 514 where the plaintiff brought state law claims and ERISA claims to federal court).

[20]     *See also Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45-46 (1987) ("We have observed in the past that the express pre-emption provisions of ERISA are deliberately expansive[.]"); *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 137 (1990) ("§ 514(a) . . . ERISA's broad pre-emption provision[.]")

agreement). So, the key question is whether the state common law claim "relates to" that plan. *See, e.g.*, *Van Lier v. Unisys Corp.*, 142 F. Supp. 3d 477, 483 (E.D. Va. 2015) (citing *Shaw*, 463 U.S. at 96-97, 100 n.2) (only considering the second prong where Plan's existence was undisputed); *HCA Health*, 2020 WL 4036197, at *4 (citing *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1468 (4th Cir. 1996)) ("[I]t is undisputed that there is an employee benefit plan . . . . The question is whether the claims 'relate to' the plan."). Courts analyze the phrase "relates to" in the "normal sense" of the phrase. *Id.* The Court should find that Plaintiffs' state law claims relate to the Plan because 1) each of the state claims rest on the same factual allegations as the ERISA claim; 2) Plaintiffs' allegations concern the administration of the Plan; and 3) the resolution of the state claims require referencing the Agreement.

By Plaintiffs' own pleading, all of Plaintiffs' state law claims expressly relate to Anthem's ERISA-governed plan, manifesting several alternative enforcement mechanisms to ERISA's civil provisions. A state law claim provides "an alternative enforcement mechanism" to ERISA when it "rests on the *same allegations* that support an ERISA claim[.]" *Stevens v. E.I. Dupont De Nemours and Co.*, 145 F. Supp. 3d 541, 547-48 (E.D.N.C. 2015) (emphasis added) (dismissing the plaintiff's three state law claims because they relate to the employee benefit plan) (citing *Wilmington Shipping Co. v. New Eng. Life Ins. Co.*, 496 F.3d 326, 341-44 (4th Cir. 2007)). This is especially true for breach of contract claims, "[b]reach of contract claims brought either *in conjunction with* ERISA claims, or based on benefits owed through an agreement, are usually preempted." *See Rollins*, 109 F. Supp. 3d at 880 (emphasis added) ("Courts regularly find that ERISA preempts breach of contract actions alleging additional or alternative mechanisms to seek benefits owed through a plan."). Plaintiffs' state law claims rest on the same 19 bald statements that support Plaintiffs' ERISA claim. *See supra* Section I. Thus, by Plaintiffs' own pleading,

27

Plaintiffs' state law claims undeniably "relate to" that Plan. *See Stevens*, 145 F. Supp. 3d at 547; *Elmore v. Cone Mills Corp*, 23 F.3d 855, 864 (4th Cir. 1994) (state claims brought in connection with an "undeniably ERISA-covered employee benefit plan" related to that Plan and were preempted); *see also Moffett v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1235 (10th Cir. 2002) ("alternative" state law claims identical to ERISA claims were dismissed because there was "no question" they relate to the Plan). The Court should recognize that these state law claims are nothing more than an attempt to seek alternate enforcement mechanisms to ERISA. *See Chapman v. Health Works Med Group of W. Virginia, Inc.*, 170 F. Supp. 2d 635, 640 (N.D. W. Va. 2001) (finding that claims not expressly referring to ERISA were still preempted under § 514 because it was an alternative enforcement mechanism to receive benefits).

Even if the Court does not find the state law claims rest upon the same factual allegations as the ERISA claim, the state common law claims are still preempted because they all relate to the administration of the Plan, which courts have routinely found are preempted under Section 514. *See generally Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004) (claims that would only exist because of administration of the Plan are related to the Plan); *Powell*, 780 F.2d 419 (stating the question is if state law claims relate to the administration of the Plan); *Gresham v. Lumbermen's Mut. Cas. Co.*, 404 F.3d 253 (4th Cir. 2005) (stating that the purpose of ERISA is to protect the administrators from conflicts of the law). Indeed, in Plaintiffs' own words, Anthem breached the implied duty of good faith and fair dealing "[t]o the extent the ASA granted Defendant discretion or control over Plan assets *and Plan administration*[.]" Compl. ¶ 92 (emphasis added). As such, Plaintiffs' claim for breach of good faith and fair dealing, is preempted because by its own language relates to the alleged "maladministration of employee benefit plans." *Powell*, 780 F.2d at 422 (holding state law claims like breach of fiduciary duties related to administration of the Plan were

28

preempted); *Stevens*, 145 F. Supp. 3d at 547 (finding claims of fraud related to amounts the plaintiff must pay are governed by Plan and preempted by ERISA); *Lancaster v. Kaiser*, 958 F. Supp. 1137, 1147 (E.D. Va. 1997) (holding fraud claims based on administrative decisions, such as curbing health costs, directly relate to administration of the Plan and would undermine ERISA).

Even when parties fail to plead with sufficient specificity, as Plaintiffs do here, state law claims that do not expressly reference Plan administration can still relate to Plan administration for purposes of applying preemption. For example, Courts have found state law claims related to the improper processing of benefits under an ERISA plan relate to the ERISA plan and are preempted under Section 514. *See Massey v. C. Reserve Life Ins. Co.*, 2002 WL 1967952, at *2 (S.D. W. Va. Apr. 25, 2002) (citing *Pilot Life*, 481 U.S. at 48); *Broadnax Mills, Inc. v. Blue Cross and Blue Shield of Virginia*, 867 F. Supp. 398 (E.D. Va. 1994) (finding allegations related to failure to credit discounts pursuant to the Plan related to the Plan and was preempted). These are exactly the types of claims at issue here. Plaintiffs assert, among other things, that Anthem failed to provide returns on prescription costs in accordance with the Federal Supply Schedule. Compl. ¶¶ 87, 99. Because this relates to processing of benefits under the Plan, any state cause of action that includes this allegation relates to administration of the Plan. *See RG Steel Wheeling, LLC v. Health Plan of the Upper Ohio Valley, Inc.*, 2014 WL 3845215, at *8, n.4 (N.D. W. Va. Aug. 5, 2014) (holding claims related to overpayment or failure to return amount were preempted by ERISA).

Finally, state law claims are also preempted by Section 514 where "any resolution of the plaintiff's claim cannot occur without reference to the plan and its governing documents." *See Broadnax Mills*, 867 F. Supp. at 404 (finding state law claims related to administrative services agreement with third party administrator under Section 514); *Guiragoss v. Khoury*, 444 F. Supp. 2d 649, 658 (E.D. Va. 2006) (breach of contract claims that refer to the Plan agreement relate to

ERISA and are preempted). Plaintiffs' state law claims either expressly reference the Agreement or require the Court to examine the Agreement. For example, in its state claims for fraud and negligent misrepresentation, Plaintiffs allege that Anthem made misrepresentations regarding what they intended to charge OMI for various medical claims. Compl. ¶¶ 105-108, 113-115. Plaintiffs allegedly relied on these misrepresentations as it relates to Defendant's role as the TPA (third-party administrator) for the Plan. *Id.* To say that these claims concern the existence of an employee benefit plan would be an understatement. They ***depend*** on it, and would require the Court to examine the ERISA-governed Agreement. *See Stevens*, 145 F. Supp. 3d at 548 (finding state law claims of fraud were preempted because resolving the state claims required reviewing the Plan). It follows, that all of Plaintiffs' state law claims "would not exist but for" the Plan and necessarily relate to the Plan. *See Van Lier*, 142 F. Supp. 3d at 484 (citing *Griggs v. E.I. DuPont de Nemours & Co.*, 237 F. 3d 371, 378 (4th Cir. 2001).

In sum, Plaintiffs' state law claims "relate to" the Plan because 1) the claims rest on the same facts alleged under the ERISA claim; 2) the state law claims concern the administration of the Plan; and 3) require the Court to review the ERISA-governed Agreement for resolution. Satisfying both prongs of the preemption analysis, it is evident that Plaintiffs' state law claims seek alternative enforcement mechanisms to ERISA and are preempted under Section 514. Therefore, "conflict 'preemption under § 514 precludes prosecution of the preempted state-law claim[s]' and the claim[s] must be dismissed." *Rollins*, 109 F. Supp 3d at 877.

## <u>CONCLUSION</u>

For the foregoing reasons, Anthem respectfully requests that the Court grant its motion to dismiss Plaintiffs' claims.

Dated: January 17, 2025

Respectfully submitted,

*/s/ John M. Erbach*
John M. Erbach (VA Bar No. 76695)
Hugh M. Fain, III (VA Bar No. 26494)
Spotts Fain PC
411 E. Franklin Street, Suite 600
Richmond, VA 23219
Tel: (804) 697-2040
Fax: (804) 697-2140
jerbach@spottsfain.com
hfain@spottsfain.com


E. Desmond Hogan (*pro hac motion forthcoming*)
Briana L. Black (*pro hac motion forthcoming*)
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, DC 20004
Tel: (202) 637-5600
Fax: (202) 637-5910
desmond.hogan@hoganlovells.com
briana.black@hoganlovells.com
david.maxwell@hoganlovells.com

Daniel Balmori (*pro hac motion forthcoming*)
HOGAN LOVELLS US LLP
600 Brickell Avenue, Suite 2700
Miami, FL 33131
Tel: (305) 459-6500
Fax: (305) 459-6550
daniel.balmori@hoganlovells.com

*Counsel for Defendant*
*Anthem Health Plans of Virginia, Inc.*