IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE: BLUE CROSS BLUE SHIELD | ) | |
| ANTITRUST LITIGATION | ) | Master File No. 2:13-CV-20000-RDP |
| | ) | |
| (MDL No. 2406) | ) | |

**ANTHEM HEALTH PLANS OF VIRGINIA, INC.'S
REPLY IN SUPPORT OF MOTION TO ENFORCE THE COURT'S INJUNCTION
<u>REGARDING SUBSCRIBER CLASS MEMBER'S RELEASED CLAIMS</u>**

## **TABLE OF CONTENTS**

                                                                                                                        **Page**

INTRODUCTION ............................................................................................................................. 1

ARGUMENT .................................................................................................................................... 1

       I.       OMI MISCONSTRUES THE DEFINITION OF RELEASED CLAIMS. ............ 2

              1.        ERISA claims, like any other, are released if they "relate in any way to" the factual predicates or issues raised in the Subscriber Action...................................................................................................... 2

              2.        OMI's purportedly narrower "based on" standard has no basis in the language of the Settlement Agreement. ............................................... 4

      II.      OMI'S BLUE SYSTEM CLAIMS IN THE VIRGINIA ACTION ARE RELEASED CLAIMS. ........................................................................................ 5

              1.        OMI's claims "based solely on" ordinary course health benefits disputes illustrate the scope of the release. ................................................ 5

              2.        Exclusive service areas, the BlueCard program, and related fees were factual predicates and issues raised in the Subscriber Actions. ......... 7

              3.        OMI's Blue System Claims "relate to" and are "based . . . in part on" the factual predicates and issues raised in the Subscriber Actions. .......... 10

              4.        All of OMI's causes of action must be dismissed to the extent that they incorporate the Blue System allegations. ......................................... 13

CONCLUSION ............................................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ambac Assurance Co. v. U.S. Bank. Nat'l Ass'n*,
  2021 WL 6060710 (2d Cir. Dec. 20, 2021) ...............................................................................3

*In re BCBS Antitrust Litig.*,
  85 F.4th 1070 (11th Cir. 2023) ..................................................................................................9

*Bernstein v. O'Reilly*,
  2019 WL 10995111 (S.D.N.Y. Mar. 5, 2019) ..........................................................................7

*In re BCBS Antitrust Litig.*,
  2022 WL 480140 (N.D. Ala. Feb. 16, 2022) ............................................................................7

*Hirsch v. Ensurety Ventures, LLC*,
  805 F. App'x 987 (11th Cir. 2020) .........................................................................................13

*Home Depot U.S.A., Inc. v. Blue Cross Blue Shield Ass'n*,
  144 S. Ct. 2687 (June 24, 2024) ..............................................................................................10

*Norfolk S. Corp. v. Chevron, U.S.A., Inc.*,
  371 F.3d 1285 (11th Cir. 2004) ................................................................................................8

*Safeco Ins. Co. of Am. v. Burr*,
  551 U.S. 47 (2007) ....................................................................................................................5

*Sewraz v. Morchower*,
  2009 WL 211578 (E.D. Va. Jan. 28, 2009) ............................................................................13

*Thomas v. Blue Cross and Blue Shield Ass'n*,
  333 F. App'x 414 (11th Cir. 2009) .....................................................................................7, 10

*Thomas v. Blue Cross and Blue Shield Ass'n*,
  594 F.3d 814 (11th Cir. 2010) ..................................................................................................6

*TVPX ARS, Inc. v. Genworth Life & Annuity Ins. Co.*,
  959 F.3d 1318 (11th Cir. 2020) ................................................................................................8

**INTRODUCTION**

In its Opposition, OMI attempts at every turn to create ambiguity and carve out its claims from a broad and clear release, undermining the class-wide peace that Anthem BCBS and other Blue Plans paid $2.67 billion to obtain. OMI suggests that to resolve Anthem BCBS's Motion, the Court must engage in a byzantine language-parsing exercise—dissecting the meaning of terms like "fact" and "issue" in the abstract, rather than as defined in the specific context of the Subscriber Settlement Agreement ("SSA"). OMI also tries to wedge its claims into the difference (to the extent there is any) between the terms "relating to" and "based in whole or in part on" the factual predicates of the Subscriber Actions in this MDL.

These arguments are a smokescreen. None of the labels or distinctions that OMI identifies are material. Fundamentally, the settlement release that Anthem BCBS and other Blue Plans carefully negotiated is straightforward, broad, and unambiguous. It flatly bars OMI's attempt to challenge aspects of the Blues System in the Virginia Action, including exclusive service areas and the BlueCard program, that were asserted in complaints in the Subscriber Actions, litigated in motions practice in the Subscriber Actions, and subject to discovery in the Subscriber Actions. While OMI now seeks to challenge those aspects of the Blues System through ERISA and common-law claims, rather than an antitrust claim, the release applies all the same. The Court should order OMI to dismiss its Released Claims in the Virginia Action.

**ARGUMENT**

The Court should grant Anthem BCBS's requested relief if three conditions exist: (i) Anthem BCBS is a Releasee; (ii) OMI is a Releasor; and (iii) the claims relating to the Blues System that OMI asserts in the Virginia Action are Released Claims. *See* Mot. at 8. OMI does not contest either the first or second conditions. On the third point, OMI asserts that its claims in the Virginia Action challenging the Blues System do not constitute Released Claims because

1

(a) ERISA claims are subject to a "based on" standard that is narrower than the standard applicable to other Released Claims under the SSA and (b) OMI's claims are neither "related to" nor "based on" the "factual predicates" or "issues" (as OMI attempts to define those terms) in the Subscriber Actions.

Both of these arguments fail. First, the SSA does not exempt ERISA claims from the broad release of claims "relating in any way to" the factual predicates or issues raised in the Subscriber Actions. The same release analysis applies regardless of the cause of action asserted. Further, OMI's purportedly narrower "based on" standard has no basis in the text of the release. The release never says "based on." Rather, the release clarifies that claims "based *solely* on" ordinary course health benefits issues—rather than "based . . . *in part* on" the factual predicates or issues raised in the Subscriber Actions—fall outside the broad scope of the release. *See* SSA § A.1.(uuu).

Second, OMI's Blue System Claims in the Virginia Action are Released Claims under any of the labels that OMI attempts to affix. Those claims both "relate to" and are "based . . . in part on" the factual predicates or issues raised in the Subscriber Actions. Each of OMI's attempts to create distance between its Blue System Claims and the Subscriber Actions fails.

I. **OMI MISCONSTRUES THE DEFINITION OF RELEASED CLAIMS.**

OMI's assertion that "any ERISA claims related to the issues raised in [the Subscriber Actions] are governed by a different standard"—a narrower "based on" standard—has no basis in the text of the release. *See* Opp'n at 6-7.

   1. **ERISA claims, like any other, are released if they "relate in any way to" the factual predicates or issues raised in the Subscriber Action.**

The SSA clearly states that Subscriber Class members released "any and all known or unknown claims," including "any and all . . . causes of action" that are "based upon, arising from, or relating in any way to" the factual predicates or issues raised in the Subscriber Actions, among

2

other things.  *See* SSA § A.1.(uuu).  There is no carveout for ERISA claims.  The SSA says "any and all" claims—not "any and all claims, except ERISA claims."  *See Ambac Assurance Co. v. U.S. Bank. Nat'l Ass'n*, 2021 WL 6060710, at *2 (2d Cir. Dec. 20, 2021) ("[C]ourts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing.").[1]

The subsequent language in the release that OMI relies on likewise does not create a different standard for ERISA claims.  *See* Opp'n at 4-5.  Rather, it merely clarifies that class members have not released claims, ERISA or otherwise, that (1) "arise in the ordinary course of business" *and* (2) "are ***based solely on***" certain health benefits disputes, including "administration of claims under a benefits plan, based on either the benefit plan document or statutory law."  SSA § A.1.(uuu).  This clarification is uncontroversial and merely recognizes that certain ordinary course health benefits issues—such as whether a member is eligible for coverage, whether the member's benefit plan covers the medical services received, and what reimbursement rate is required for those services under a benefit plan or statutory requirement—are not "related to" the factual predicates or issues raised in the Subscriber Action.  But that is true only if the claim is "based solely on" those ordinary course health benefits disputes, an important qualification that OMI ignores in the Opposition.

The next sentence in the SSA further clarifies this point: If a claim is not "***based solely on***" ordinary course health benefits disputes, but is instead "***based in whole or in part on*** the factual predicates of the Subscriber Actions or any other component of the Released Claims discussed in this Paragraph," that claim is released.  *Id.*  OMI improperly attempts to isolate the "based in whole or in part" language from this sentence, contending that it creates independent release criteria for

---

[1] Under the terms of the SSA, New York law controls interpretation of the SSA. *See* SSA at 56.

3

all ERISA claims. Opp'n at 4-7. But there is no textual or other evidence to support that interpretation. Again, this "based in whole or in part" language is just another way of saying that claims "based solely on" certain ordinary course health benefits disputes are not released.

OMI's convoluted discussion of the settlement release language therefore does not change the relevant question presented in the Motion: Are the Blue System Claims that OMI asserts in the Virginia Action "based upon, arising from, or relating in any way to" the factual predicates or issues raised in the Subscriber Actions? As discussed in Section II, below, they clearly are. OMI's Blue System Claims are premised on factual predicates and issues raised in the Subscriber Actions, including exclusive service areas, the BlueCard program, and related fees. They are not "based solely on" ordinary course health benefits issues. The fact that OMI brings these claims under ERISA, as well as state-law theories, does not change the analysis under the settlement agreement.

### 2. OMI's purportedly narrower "based on" standard has no basis in the language of the Settlement Agreement.

Even if the clarifications regarding claims "based solely on" ordinary course health benefits issues had any bearing on OMI's Blue System Claims (they do not), those clarifications do not create a release standard that is narrower in any material way. OMI spends several pages arguing that ERISA claims are only released if they are "based on" the factual predicates of the Subscriber Actions, that "based on" is a narrower concept than "related to," and that the Blue System Claims it asserts in the Virginia Action are not "based on" the factual predicates of the Subscriber Actions. *See, e.g.*, Opp'n at 6-7, 14-15. But nowhere does the SSA release say "based on." Rather, in the clarifying provisions discussed above, the SSA release says "based in whole *or in part* on the factual predicates of the Subscriber Actions or any other component of the Released Claims discussed in this Paragraph." SSA § A.1.(uuu). As the Supreme Court has recognized in a different context, the phrase "based in part on" generally points to a broader relationship than the

4

phrase "based on." *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 63 (2007) (declining to adopt the broader scope implied by the phrase "in part" based on other indicators of congressional intent in the context of a particular statute).

OMI offers no legal authority or other support to suggest that there is any material daylight, for purposes of this Motion, between the phrase "based . . . in part on" and the phrase "based upon, arising from, or related in any way to." And Anthem BCBS is unaware of any.[2] In any event, as discussed below, OMI's Blue System Claims asserted in the Virginia Action are clearly both "relate[d] in any way to" and "based . . . in part on" the factual predicates and issues raised in the Subscriber Actions.

## II. OMI'S BLUE SYSTEM CLAIMS IN THE VIRGINIA ACTION ARE RELEASED CLAIMS.

Having unilaterally attempted to craft an incorrect, purportedly narrower standard for whether its claims constitute Released Claims, OMI tries to create distance between its Blue System Claims in the Virginia Action and the factual predicates and issues raised in the Subscriber Actions. But no such distance exists. OMI cannot escape the clear scope of the Subscriber Actions, the substance of its allegations supporting its Blue System Claims, and the obvious overlap between the two.

### 1. OMI's claims "based solely on" ordinary course health benefits disputes illustrate the scope of the release.

As an initial matter, the parties appear to agree on one thing: Most of the claims that OMI asserts in the Virginia Action are not Released Claims under SSA. *See* Opp'n at 7-8. Anthem

---

[2] The only case OMI cites in this regard, *Altria Group, Inc. v. Good*, is inapposite. *See* Opp'n at 6. First, it dealt with the meaning of "based on" in the context of preemption and interpretation of congressional intent in a particular statute—not the interpretation of a broad release in a complex class settlement. Moreover, the Supreme Court in *Altria Group* did not even purport to interpret the phrase "based in whole or in part on."

5

BCBS never argued otherwise. Rather, Anthem BCBS only contends that the Blue System Claims identified in its Motion are Released Claims.

The rest of OMI's claims in the Virginia Action are not Released Claims, because, to use the language of the release, they are not claims "relating in any way to" the factual predicates or issues raised in the Subscriber action, such as exclusive service areas or the BlueCard program. SSA § A.1.(uuu). For example, these other claims are based solely on allegations that Anthem BCBS allegedly paid for the same medical services multiple times, ECF No. 3289-1, Am. Compl. ("Compl.") ¶ 71; allegedly improperly classified certain drugs for reimbursement purposes, *id.* ¶ 73; allegedly paid claims that did not follow certain billing and coding rules, *id.* ¶ 91; or allegedly improperly paid for multiple units of specific treatments in a given day, *id.* ¶ 94. These are exactly the types of claims "based solely on" ordinary course health benefits issues, including the "administration of claims under a benefit plan," that are not released under the SSA. *Id.*[3]

By stark contrast, OMI's Blue System Claims challenge features of the Blues System that were factual predicates and issues raised in the MDL, including exclusive service areas, the BlueCard program, and related fees. As OMI points out, the Blue System Claims may *also* relate to other facts and issues, because OMI asserts ERISA and state-law causes of action with different elements than the antitrust claims asserted in the MDL. *See* Opp'n at 10. But the fact that these claims may relate to more than one fact or issue, and may not be coextensive with the factual predicates of the Subscriber Action, does not save them from the SSA release. *See Thomas*, 594 F.3d at 822 ("It is irrelevant that the [new claims] . . . require [the Releasee] to prove matters in addition to or different from the claims asserted in the class action."). The SSA release is not

---

[3] These non-Released Claims also show that, contrary to OMI's assertion, Anthem BCBS's position would not "immunize Anthem [BCBS] from essentially any lawsuit." Opp'n at 14. Courts have routinely upheld and applied similarly broad "relating to" releases without issue. *See, e.g.*, *Thomas v. Blue Cross and Blue Shield Ass'n*, 594 F.3d 814, 817 (11th Cir. 2010).

limited to claims that *only* "relate to" the factual predicates of the Subscriber Actions. Indeed, as discussed above, the SSA release expressly clarifies that the release applies to claims "based . . . in part on" those factual predicates—as opposed to claims "based solely on" ordinary course health benefits disputes. SSA § A.1.(uuu). *See also Thomas v. Blue Cross and Blue Shield Ass'n*, 333 F. App'x 414, 417-18 (11th Cir. 2009) (finding that individual doctor's claims alleging Blue Cross licensee breached contractual reimbursement obligations based on "a desire to limit its costs" were related to the same "operative nucleus of fact" as settled class action claims alleging conspiracy among Blue Cross licensees to "defraud doctors by refusing to pay for treatments").

### 2. Exclusive service areas, the BlueCard program, and related fees were factual predicates and issues raised in the Subscriber Actions.

OMI argues that its allegations underlying the Blue System Claims asserted in the Virginia Action were not "factual predicates" or "issues" in the Subscriber Actions. Opp'n at 11-13. Once more, OMI tries to find daylight where none exists.

OMI first attempts to narrow the meaning of "factual predicate," pointing the Court to dictionary definitions of "facts." Opp'n at 12. But dictionary definitions are not needed where, as here, a contractual term is defined. *See Bernstein v. O'Reilly*, 2019 WL 10995111, at *7 (S.D.N.Y. Mar. 5, 2019) (noting that courts only look to dictionaries when "a term is not defined in the contract"). The SSA defines "factual predicates" to include, at a minimum, "***the Consolidated Amended Class Action Complaints*** filed in the Northern District of Alabama . . . or ***other filings therein*** from the beginning of time through the Effective Date." SSA at 15 (emphasis added).

This plain language, carefully negotiated by the parties, is "the determining factor" in assessing the scope of a settlement release. *In re BCBS Antitrust Litig.*, 2022 WL 480140, at *11 (N.D. Ala. Feb. 16, 2022) (further noting that "the best evidence of [the parties] intent is, of course, the settlement agreement itself") (quoting *Norfolk S. Corp. v. Chevron, U.S.A., Inc.*, 371 F.3d 1285,

7

1288-89 (11th Cir. 2004)).  As OMI points out, some courts have described the settlement release analysis as similar to a traditional *res judicata* analysis, including assessing the common "nucleus of operative facts."  Opp'n at 12.  But as even OMI's authority makes clear, there is an important difference:  When a case is settled, the common nucleus of operative fact is defined in the settlement agreement itself.  *See TVPX ARS, Inc. v. Genworth Life & Annuity Ins. Co.*, 959 F.3d 1318, 1326 (11th Cir. 2020) ("We may also consider the parties' settlement documents to determine the claims at issue in the prior action."); *Norfolk S. Corp.*, 371 F.3d at 1288 (the *res judicata* "effect is controlled by the Settlement Agreement into which the parties entered," rather than the "original complaint").  In other words, the SSA's definition of "factual predicates" governs the analysis here.

And under that definition, the factual predicates of the Subscriber Actions plainly include exclusive service areas, the BlueCard program, and related fees.  Each were part of the Fourth "Consolidated Amended Class Action Complaint[]" and raised in "other filings" in the Subscriber Actions.  *See* Mot. at 3-4.  Indeed, OMI does not even attempt to contest that exclusive service areas—one of the alleged bases for OMI's Blue System Claims in the Virginia Action—were a factual predicate of the Subscriber Actions.  *See e.g.* Mot. at 6-7, 10 (quoting OMI's allegation that the Blues conspired to "assign themselves geographic service areas free of competition from other Blues" in order to "overcharge[] self-funded health plans" through the BlueCard program).

OMI instead focuses on whether the BlueCard program alone was a factual predicate of the Subscriber Actions.  OMI contends that the BlueCard program was not a factual predicate because the FCAC only expressly mentions the term "BlueCard" once.  Opp'n at 13.  But OMI does not contest that the FCAC expressly challenges BCBSA "rules and regulations," which includes the BlueCard program.  *See* Mot. at 3, 10-11.  Nor does OMI contest that the FCAC

8

expressly challenges "various fees charged to a self-funded account," which includes fees charged under the BlueCard program, precisely what OMI alleges in the Virginia Action. *See id.* In other words, the damages alleged in the Subscriber Actions included the fees that OMI attempts to challenge now in the Virginia Action. These are not mere "background facts" as OMI claims. Opp'n at 13. They are plainly factual predicates of the Subscriber Actions, which Anthem BCBS paid a steep price to resolve.

The SSA release also expressly encompasses claims relating to "any issue raised in any of the Subscriber Actions by pleading or motion." SSA § A.1.(uuu). OMI again tries to invoke outside definitions to narrow the concept of an "issue" to mean "a point in dispute." Opp'n at 12-13. Fine. Even using that definition, exclusive service areas and the BlueCard program were clearly a "point in dispute" raised in pleadings and motions in the Subscriber Actions. In addition to the FCAC itself, exclusive services areas and the BlueCard program were both the subject of extensive discovery in the Subscriber Actions. *See* Mot. at 3-4, 10-11. And the BlueCard program was *actually litigated* in Subscriber Action summary judgment motions—clearly making it a "point in dispute." *See* Mot. at 3-4, 11. OMI cannot reasonably contest that.

Finally, OMI points to language that the Eleventh Circuit used to describe the SSA release. *See* Opp'n at 15-16. But that language does not (and does not purport to) change the plain terms of the SSA. The Eleventh Circuit reiterated that the SSA release covers claims "relating in any way to . . . the factual predicates of the Subscriber Actions," noting that it had approved similarly broad language in past cases. *In re BCBS Antitrust Litig.*, 85 F.4th 1070, 1090-91 (11th Cir. 2023) (citing *Thomas*, 594 F.3d at 817). As OMI points out, the Eleventh Circuit further observed that such released claims "were raised or could have been raised during" the Subscriber Actions. But that observation does not change the scope of the release; it merely recognizes that claims relating

9

to the factual predicate of the Subscriber Actions "could have been raised" during the Subscriber Actions. OMI's Blue System Claims in the Virginia Action are a good example of that: They "could have been raised" in the Subscriber Actions, because they relate to the same factual predicate. Indeed, the alleged conduct underlying OMI's Blue System Claims in the Virginia Action all occurred *before* the effective date of the Settlement Agreement. *See* Compl. ¶ 148 (alleging Anthem BCBS caused loses "from 2017 to 2023"); SSA § B.8.a.vii-viii (effective date is the date that appeals from the final settlement approval "is finally dismissed'); *Home Depot U.S.A., Inc. v. Blue Cross Blue Shield Ass'n*, 144 S. Ct. 2687 (June 24, 2024) (denying writ of certiorari in appeals from final settlement approval).[4]

Under the terms of the SSA and Eleventh Circuit precedent, the factual predicates of the Subscriber Actions include exclusive service areas, the BlueCard program, and related fees.[5]

### 3. OMI's Blue System Claims relate to and are "based . . . in part on" the factual predicates and issues raised in the Subscriber Actions.

OMI's attempts to show that its Blue System Claims do not "relate to," or are not "based . . . in part on," the factual predicates of the Subscriber Actions likewise fail.

OMI's first argument confuses *legal* issues with *factual* predicates. OMI argues that its Blue System Claims in the Virginia Action are not related to, or based in part on, the factual predicates of the Subscriber Actions because its Blue System Claims do not challenge "a lack of competition within the Blue System," Opp'n at 14, or assert that "the Blue System itself constituted

---

[4] To the extent OMI is contending that its claims cannot be released because they are specific to OMI, Opp'n at 16, rather than applicable to the whole Subscriber Class, that argument goes nowhere. The definition of Released Claims draws no distinction between claims unique to any one particular Subscriber and the class of Subscribers. The Eleventh Circuit has rejected similar arguments in past cases. *See Thomas*, 333 F. App'x at 418 ("That [plaintiff's] claims are in his mind unique to himself and to one state's Blue Cross licensee is not inconsistent with the [settled class action's] claims on behalf of thousands of doctors against Blue Cross licensees nationwide.").

[5] Even if the traditional *res judicata* analysis of a common nucleus of operative fact applied, regardless of the SSA definition of "factual predicate," these facts would still constitute factual predicates of the Subscriber Actions for the same reasons discussed above.

10

an illegal restraint on competition and markets in violation of the Sherman Act," *id.* at 10. But the SSA release is not limited to future claims asserting identical causes of action. *See* SSA § A.1.(uuu). That OMI asserts ERISA or state-law claims in the Virginia Action, rather than a Sherman Act claim, is therefore irrelevant. As Anthem BCBS explained in the Motion, it is the *facts* that matter for purposes of applying the release. *See* Mot. at 12.

OMI next tries to argue that the factual allegations in the Virginia Action regarding exclusive service areas, the BlueCard program, and related fees are not actually part of the claims asserted in that case. According to OMI, its Blue System allegations are mere "background facts." Opp'n at 13. But not even OMI can hold that line. In its Opposition, OMI admits that it included the Blue System allegations "in Paragraphs 56 to 65" "to demonstrate Anthem [BCBS]'s self-dealing and nonfiduciary motives." Opp'n at 9. That is not a background fact; that is a central component of OMI's ERISA claim, which is explicitly based on "Defendant's self-dealing." *See, e.g.*, Compl. ¶ 112 (alleging "Defendant's self-dealing" violated ERISA and caused damages). Similarly, while OMI contends that the factual allegations relating to the Blue System are "*outside* the primary misconduct serving as the basis of this lawsuit," OMI fails to mention that one of its "primary misconduct" paragraphs—Paragraph 98—*expressly incorporates* the Blue System allegations alleged in Paragraphs 56-65. *See* Compl. ¶ 98 ("Plaintiff has alleged the relevant misconduct above. *Supra* ¶¶ 56-65."). Plainly, OMI seeks relief through its Blue System Claims for the purported misconduct it alleges in Paragraphs 56-65 of its Complaint.

OMI also tries to characterize its claims as relating to "Anthem [BCBS]'s misuse of" the BlueCard program, rather than a challenge to the BlueCard program itself. But again, OMI's allegations show otherwise. OMI's allegations fault Anthem BCBS for following certain requirements of the BlueCard program, which Anthem BCBS must participate in as OMI

11

acknowledges. *See* Compl. ¶ 62. Those allegations are no different than challenging the BlueCard program itself.

For example, OMI specifically alleges that Anthem BCBS should have "eliminated [BlueCard fees] altogether." Compl. ¶ 63. But Anthem BCBS "is obligated under applicable Inter-Plan Arrangements," which "operate under the rules and procedures issued by BCBSA," to pay "certain fees." *See id.*, Ex. A, Inter-Plan Arrangements Schedule. OMI also alleges that "[a] reasonable fiduciary would not have granted host Blues such broad discretion in what to charge the Plan for BlueCard claims." *Id*. ¶ 63. Again, that is what the BlueCard program requires. *See id.*, Ex. A, Inter-Plan Arrangements Schedule (stating that as part of the BlueCard program, the "Host Blue will be responsible for contracting and handling all interactions with its Participating Providers" and will "determine a negotiated price."). The pattern persists in OMI's challenge to BlueCard "variance accounts." *Id*. ¶ 65. As OMI acknowledges, variance accounts are part of the "operation of the BlueCard program." *Id.* And under the BlueCard program, "variance accounts [are] maintained by the Host Blue," not Anthem BCBS. *Id.*, Ex. A, Inter-Plan Arrangements Schedule. As these allegations make clear, OMI's challenge is not to Anthem BCBS's "misuse" of the BlueCard program, but to the BlueCard program itself. There is no way, under OMI's theory, that Anthem BCBS could participate in BlueCard while being a "reasonable fiduciary."

At bottom, it is impossible to disentangle OMI's Blue System Claims from the factual predicates of the Subscriber Actions, including exclusive-service areas, the BlueCard program, and related fees. OMI's Blue System Claims are therefore clearly "related to" and "based . . . in part on" the factual predicates of the Subscriber Actions and have been released.

### 4. All of OMI's causes of action must be dismissed to the extent that they incorporate the Blue System allegations.

OMI argues that Anthem BCBS has been less than clear about which of its claims are Released Claims. Anthem BCBS set out the relevant allegations specifically in the Motion.[6] But for the avoidance of any doubt, the following allegations and causes of action constitute "Blue System Claims" that have been released: Any claim or cause of action to the extent that it is based on the allegations in Paragraphs 56-65, 98, 109(xv), and 141(xv). Each of Plaintiffs' causes of action at least partially relies on those allegations, because each of them "incorporates all other paragraphs in [the] Complaint as if fully restated." *E.g.*, Compl. ¶¶ 103, 114, 123, 136, 143, 149. They also specifically incorporate the allegations in Paragraph 56-65 either directly or through reference to Paragraph 98. *See* Compl. ¶¶ 103 & 109(xv) (ERISA Violations), 118 (Breach of Contract), 130 & 133 (Breach of Implied Duty), 140 & 141(xv) (Breach of Fiduciary Duty), 147 (Failure to Disclose), and 155 (Negligence). For this reason, the Court should reject OMI's invitation to alternatively award Anthem BCBS "limit[ed]" relief that is restricted to paragraphs 98, 109(xv), and 141(xv), *see* Opp'n at 16—for OMI would still be seeking relief based on the "misconduct" pertaining to the Blues System alleged in Paragraphs 56-65 and incorporated into each cause of action.

### CONCLUSION

For all of the reasons set forth above and in the motion, OMI's Blue System Claims are "Released Claims" as defined by the Final Approval Order and the Court should order OMI to

---

[6] To the extent there is any ambiguity in the relief Anthem BCBS has requested—a notion Anthem BCBS rejects—it is solely the result of OMI's impermissible shotgun-style pleading of its claims in the Virginia Action, which has resulted in its allegations relating to the Blues System infecting each and every one of its causes of action. *See Hirsch v. Ensurety Ventures, LLC*, 805 F. App'x 987, 991 (11th Cir. 2020) ("[The] complaint tasks the reader with parsing the slew of general factual allegations about the business structure of the defendants, and their relationships with non-party call centers, in order to decipher which defendant's conduct applies to each count . . . This is not an appropriate task for the district courts."); *Sewraz v. Morchower*, 2009 WL 211578, at *1 (E.D. Va. Jan. 28, 2009).

13

either (a) dismiss its Released Claims in the Virginia action or (b) show cause why it should not be held in contempt for violating the injunction.

Dated: April 10, 2025                                    Respectfully submitted,

*/s/ E. Desmond Hogan*
Craig A. Hoover
E. Desmond Hogan
Justin Bernick
Elizabeth Jose
HOGAN LOVELLS US LLP
Columbia Square
555 13th Street, N.W.
Washington, DC 20004
Tel: (202) 637-5600
Fax: (202) 637-5910
craig.hoover@hoganlovells.com
desmond.hogan@hoganlovells.com
justin.bernick@hoganlovells.com
elizabeth.jose@hoganlovells.com

Cavender C. Kimble
BALCH & BINGHAM LLP
1901 6th Avenue North, Suite 1500
Birmingham, AL 35203-4642
Tel: (205) 226-3437
Fax: (205) 488-5860
ckimble@balch.com

*Counsel for Anthem Health Plans of Virginia, Inc. d/b/a Anthem Blue Cross and Blue Shield*

**CERTIFICATE OF SERVICE**

    I hereby certify that on April 10, 2025, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

                                           /s/ *E. Desmond Hogan*
                                           E. Desmond Hogan

                                           *Counsel for Anthem Health Plans of Virginia,*
                                           *Inc. d/b/a Anthem Blue Cross and Blue Shield*

1