FILED
2025 Apr-23 PM 17:10
U.S. DISTRICT COURT
N.D. OF ALABAMA

# Exhibit I

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **IN RE:** <br> **BLUE CROSS BLUE SHIELD** <br> **ANTITRUST LITIGATION** <br> **(MDL NO. 2406)** | Master File No. 2:13-CV-20000-RDP <br><br> This Document Relates to <br> Provider Track Cases |

### DECLARATION OF ROBERT A. MEYER IN SUPPORT OF
### PROVIDER PLAINTIFFS' MOTION FOR FINAL APPROVAL

**I, Robert A. Meyer, declare:**

1. I am a full-time mediator with JAMS, the largest provider of commercial dispute resolution services in the world. In that capacity, I mediate complex commercial cases pending throughout the United States, and have mediated hundreds of class actions pending throughout the United States. I have served as a mediator for more than 15 years – first as a part-time mediator in private practice and then as a full-time mediator with JAMS since 2017. As a result of this work, I have been ranked on the exclusive "National Mediator's List" by *Chambers USA*.

2. Prior to joining JAMS, I practiced as a partner with Loeb & Loeb LLP for approximately 40 years. I joined that firm after earning my law degree from Georgetown University Law Center and after obtaining my license to practice law in the State of California in 1975. I later served as that firm's Chair of Professional Services Litigation and General Counsel. Over my years at the firm, I represented both plaintiffs and defendants in many complex commercial cases, including securities class actions and derivative lawsuits, professional liability cases against accountants and law firms, antitrust cases and other business disputes. As a result of this work, I received various professional accolades and recognition, including being named: (a) "Best Lawyer" in Bet-the-Company Litigation, Commercial Litigation, and Securities Litigation

in *The Best Lawyers in America* (2010-2016); (b) a "Southern California Super Lawyer" in Business Litigation and Securities Litigation by Thompson Reuters (2004-2015); and (c) Fellow in the American College of Trial Lawyers.

3. From 2019 to 2024, I served as a mediator in this case in settlement negotiations between the Provider Plaintiffs and the Defendants. During that time, I participated in 20-plus in-person and Zoom mediation sessions, and I participated in hundreds of phone calls and other virtual meetings. The parties' negotiations were conducted in confidence. All participants in the mediation and negotiations executed a confidentiality agreement indicating that the mediation process was to be considered settlement negotiations for the purpose of Rule 408 of the Federal Rules of Evidence, protecting disclosure made during such process from later discovery, dissemination, publication and/or use in evidence. By making this declaration, neither I nor the parties waive in any way the provisions of the confidentiality agreement or the protections of Rule 408. While I cannot disclose the contents of the mediation negotiations, the parties have authorized me to inform the Court of the procedural and substantive matters set forth below to be used in support of the Provider Plaintiffs' motion for final approval of their Settlement. Thus, without in any way waiving the mediation privilege, I make this declaration based on personal knowledge and I am competent to testify as to the matters set forth herein.

4. Settlement negotiations were hard-fought and at arm's length. At numerous times, negotiations were on the verge of breaking down. In the end, I believe the Provider Plaintiffs obtained the best settlement terms available; a better deal was not a realistic prospect and the ultimate agreement represents a fair and reasonable resolution.

5. An important factor in reaching settlement was the assembly of the Provider Work Group, which consisted of various healthcare providers of all types who were able to suggest

proposals for injunctive relief and provide feedback on the Defendants' proposals. The Provider Work Group members came from large healthcare systems, rural hospitals, medical group practices, ancillary providers such as physical therapists, and others. In order to get input from a broad spectrum of providers, Provider Plaintiffs' counsel invited class representatives as well as providers who were not class representatives. The Provider Work Group participants had been both in network and out of network during the class period.  To ensure that the Provider Plaintiffs and Defendants could negotiate candidly, the Provider Work Group was subject to the same confidentiality requirements as the parties to the negotiation. The Provider Work Group played a critical role in the creation of the Settlement Agreement's detailed set of injunctive relief provisions. In addition to allowing the parties to develop solutions to sticking points in the injunctive relief negotiations, the Provider Work Group also educated me as a mediator so that I was in a better position to recommend compromises to the parties.

6. The parties spent many years negotiating the complex and very valuable injunctive relief that is included in the Settlement. Counsel for the Provider Plaintiffs made it clear that they would not settle without meaningful improvements in the BlueCard Program and other relief. Outside and in-house counsel for the Defendants worked diligently to develop such relief as part of the overall framework of the negotiations. After there was agreement in principle on the terms of the injunctive relief, the parties turned to the final monetary portion of the agreement.  The monetary negotiations lasted more than a year before the parties finally came to an agreement. The provisions of the Settlement Agreement relating to attorneys' fees and reimbursement of expenses were not negotiated until all the other material terms were agreed to.

7. After working with the parties for five years and becoming thoroughly familiar with the issues in the case and the Settlement terms, I am convinced that the Settlement is fair,

reasonable and adequate. In my role as one of the mediators, I carefully studied the legal and factual issues in the case. Both the Provider Plaintiffs and the Defendants faced risks in this case. Success was far from certain for the Provider Plaintiffs even for the period the Court had determined that the *per se* standard of review applied to the damage claims. A number of defenses remained in the case, including the single entity defense and the effect of the Defendants' trademarks. The potential issue of a two-sided platform also created risks for the Provider Plaintiffs. Considering these risks, the monetary portion of the Settlement is outstanding. One must also recognize that the Court has ruled that the rule of reason standard applies to all injunctive relief; under that standard, the injunctive relief in the Settlement is truly extraordinary, as the Court stated in its order granting preliminary approval.

I declare under the penalty of perjury that the foregoing is true and correct. Executed this the 23rd day of April, 2025.

_____
Robert A. Meyer