FILED
2025 Apr-23  PM 07:10
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **IN RE:**<br>**BLUE CROSS BLUE SHIELD**<br>**ANTITRUST LITIGATION**<br>**(MDL NO. 2406)** | **Master File No. 2:13-CV-20000-RDP**<br><br>**This Document Relates to**<br>**Provider Track Cases** |

**[PROPOSED] FINAL APPROVAL ORDER OF SETTLEMENT AND
FINAL JUDGMENT AND ORDER OF DISMISSAL WITH PREJUDICE**

WHEREAS, a class action is pending in this Court entitled *In re Blue Cross Blue Shield Antitrust Litigation*, No. 2:13-cv-20000-RDP;

WHEREAS, the Provider Class Representatives ("Provider Plaintiffs" or "Class Representatives"), on behalf of themselves and the Settlement Class, have entered into a Settlement Agreement, Doc. No. 3192-2, with BCBSA and the Settling Individual Blue Plans (collectively, "Settling Defendants") to fully and finally resolve Provider Plaintiffs' claims against the Settling Defendants in the Provider Actions (hereafter, "Action")[1] on the terms and conditions set forth in the Settlement Agreement, subject to approval of this Court;

WHEREAS, unless otherwise defined in this Final Approval Order of Settlement and Final Judgment and Order of Dismissal with Prejudice ("Final Order and Judgment"), the terms capitalized herein shall have the same meaning as in the Settlement Agreement;

WHEREAS, by Order dated December 4, 2024 ("Preliminary Approval Order"), this Court: (a) preliminarily approved the Settlement Agreement; (b) preliminarily designated Provider Co-Lead Counsel; (c) found that the Settlement Class was likely to be certified at final approval;

---

[1] *See* Settlement Agreement, Appendix B.

(d) preliminarily approved the Plan of Distribution; (e) scheduled a hearing for final approval of the Settlement; (f) approved the Notice Plan, appointed BrownGreer PLC as the Settlement Notice Administrator, and authorized the dissemination of notice to the Settlement Class; and (g) appointed Edgar C. Gentle III as Settlement Administrator;

WHEREAS, due and adequate notice has been given to the Settlement Class in satisfaction of the requirements of Rules 23(c)(2) and 23(e)(1) of the Federal Rules of Civil Procedure and Constitutional Due Process;

WHEREAS, the 90-day period provided by the Class Action Fairness Act, 28 U.S.C. § 1715(d), has expired;

WHEREAS, the Court conducted a hearing on July 29, 2025 ("Final Fairness Hearing") to consider, among other things, (a) whether the terms and conditions of the Settlement are fair, reasonable, and adequate to the Settlement Class, and should therefore be approved; and (b) whether a judgment should be entered dismissing the Action with prejudice against the Settling Defendants; and

WHEREAS, the Court having reviewed and considered the Settlement Agreement, all papers filed and proceedings held herein in connection with the Settlement, all oral and written comments and objections received regarding the Settlement, and the record in the Action, and good cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:**

1.    This Court has jurisdiction over the subject matter of this Action and personal jurisdiction over the parties and the members of the Settlement Class described below.

2.    This Final Order and Judgment incorporates and makes a part hereof; (a) the Settlement Agreement; (b) the Notice Plan and Claim Form, which were each approved by the

Court on December 4, 2024; and (c) the Plan of Distribution, which was approved by the Court on December 4, 2024.

3.    Pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, and based on the record before the Court, including the submissions in support of the Settlement and objections and responses thereto, the Court hereby affirms its forecast in the Preliminary Approval Order and certifies the following Settlement Class for settlement purposes only: "all Providers in the U.S. (other than Excluded Providers, who are not part of the Settlement Class) who currently provide or provided healthcare services, equipment or supplies to any patient who was insured by, or who was a Member of or a beneficiary of, any plan administered by any Settling Individual Blue Plan during the Settlement Class Period." The term "Excluded Providers" means:

> (i) Providers owned or employed by any of the Settling Defendants; (ii) Providers owned or employed exclusively by Government Entities or Providers that exclusively provided services, equipment or supplies to members of or participants in Medicare, Medicaid or the Federal Employee Health Benefits Programs; (iii) Providers that have otherwise fully released their Released Claims against the Releasees prior to the Execution Date, including but not limited to Providers that were members of any of the settlement classes in *Love v. Blue Cross and Blue Shield Association*, No. 1:03-cv-21296-FAM (S.D. Fla.); or (iv) Providers that exclusively provide or provided (a) prescription drugs; (b) durable medical equipment; (c) medical devices; (d) supplies or services provided in an independent clinical laboratory; or (e) services, equipment or supplies covered by standalone dental or vision insurance. Any Provider that falls within the exclusion(s) set forth in clauses (i), (ii) or (iv) of this Paragraph 1(gg) for only a portion of the Settlement Class Period is a Settlement Class Member that may recover in the settlement as set forth in the Plan of Distribution.

The "Settlement Class Period" is July 24, 2008, through the Execution Date of the Settlement Agreement, which is October 4, 2024.

4.    The Court finds that the requirements of Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure are satisfied solely for settlement purposes, as follows:

> a.    Pursuant to Rule 23(a)(1), the Court determines that the Settlement Class members are so numerous that their joinder before the Court would be impracticable.

3

b. Pursuant to Rule 23(a)(2), the Court determines that there are one or more questions of fact or law common to the Settlement Class.

c. Pursuant to Rule 23(a)(3), the Court determines that Provider Plaintiffs' claims are typical of the claims of the Settlement Class.

d. Pursuant to Rule 23(a)(4), the Court determines that the Provider Class Representatives have fairly and adequately protected the interests of the Settlement Class. Provider Class Representatives are certified as class representatives on behalf of their Settlement Class.

e. Pursuant to Rule 23(b)(3), the Court determines that common questions of law and fact predominate over questions affecting only individual members.

f. Also pursuant to Rule 23(b)(3), the Court determines that a class action is superior to other available methods for the fair and efficient adjudication of this Action.

**<u>Class Counsel and Class Representatives</u>**

5. Pursuant to Rule 23(g) of the Federal Rules of Civil Procedure, the Court appoints Joe R. Whatley, Jr. and Edith M. Kallas of the law firm Whatley Kallas LLP as Provider Co-Lead Counsel.

6. The following individuals and entities are appointed as class representatives: Jerry L. Conway, D.C.; InMed Group, Inc., f/k/a Crenshaw Community Hospital; Bullock County Hospital; Evergreen Medical Center, LLC; Jackson Medical Center; Ivy Creek Healthcare; Elmore Community Hospital; Georgiana Medical Center; Lake Martin Community Hospital; Joseph D. Ackerson, Ph.D.; Janine Nesin, P.T., D.P.T., O.C.S.; Roman Nation, M.D.; Neuromonitoring Services of America, Inc.; Confluent Health; ProRehab, P.C.; Texas Physical Therapy Specialists, LLC; BreakThrough Physical Therapy, Inc.; Dunn Physical Therapy, Inc.; Gaspar Physical Therapy, P.C.; Timothy H. Hendlin, D.C.; Greater Brunswick Physical Therapy, P.A.; Charles

4

Barnwell, D.C.; Judith Kanzic, D.C.; Brian Roadhouse, D.C.; Dr. Saket K. Ambasht, M.D.; Snowden Olwan Psychological Services; Matthew Caldwell, M.D.; and Mishanta Reyes, M.D..

### Notice

7.      The Court finds that the notice provisions of the Class Action Fairness Act, 28 U.S.C. § 1715, have been satisfied.

8.      The Court finds that the dissemination of Notice: (a) was implemented in accordance with the Notice Plan Approval Order; (b) constituted the best notice practicable under the circumstances; (c) constituted notice that was reasonably calculated, under the circumstances, to apprise the Settlement Class of (i) the pendency of the Action; (ii) the effect of the Settlement Agreement (including the releases to be provided thereunder); (iii) Settlement Class Counsel's motion for an award of attorneys' fees and reimbursement of expenses; (iv) the right to object to any aspect of the Settlement, the Plan of Distribution, and/or Class Counsel's motion for attorneys' fees and reimbursement of expenses; (v) the right to opt out of the Settlement Class; and (vi) the right to appear at the Final Fairness Hearing; (d) constitutes due, adequate, and sufficient notice to all persons and entities entitled to receive notice of the Settlement; and (e) satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure and the United States Constitution (including the Due Process Clause).

### Objections to the Settlement Agreement

9.      The Court has considered the three objections to the Settlement filed by North Texas Division, Inc. (an affiliate of HCA Healthcare) ("HCA"); Allatoona Emergency Group, PC and Alabama Emergency Physician Partners, LLC ("Objecting ER Groups"); and Kyle Egner DC.

10.     The Court has also reviewed the only other objections, which were filed by twenty-four clients of the law firm Paul Hastings LLP, and are conditioned on the rejection of the exclusion requests filed by those clients. Because none of those exclusion requests were rejected, the

condition has not occurred. Moreover, these clients have successfully opted out of the Settlement, and therefore lack standing to object to it. The Paul Hastings clients' objections are **DISMISSED AS MOOT**.

11.     HCA objects that the Settlement Agreement's release is "unreasonably ambiguous" and seeks clarification that its scope is cabined by the "identical factual predicate" doctrine. For purposes of this objection, the Provider release is substantively identical to the Subscriber release, which this court approved, and the Eleventh Circuit affirmed. (Doc. # 2931); *In re Blue Cross Blue Shield Antitrust Litig.*, 85 F.4th 1070, 1091 (11th Cir. 2023). Like the Subscriber release, the Provider release is not ambiguous. In addition, like the Subscriber release, the Provider "release provision permissibly releases only claims based on an identical factual predicate to the underlying litigation." *In re Blue Cross*, 85 F.4th at 1088; *see also id.* at 1091 ("The release does not extend beyond claims arising from the common nucleus of operative fact: all the released claims either were raised or could have been raised during the litigation that preceded the settlement."). HCA's objection is **OVERRULED**.

12.     The Objecting ER Groups first object that the procedures for opting out and submitting claims are unduly burdensome, but they offer no explanation other than stating that provider groups must "drill[] down to each provider and a history of in-network and out-of-network status that can be difficult if not impossible to navigate." But neither the opt-out procedure nor the claim form requires specification of a provider's in-network or out-of-network status.

13.     The Objecting ER Groups then object that the release violates the "identical factual predicate" doctrine. As explained above, it does not. Moreover, the exception to the release for claims asserted in the ordinary course of business is clear and consistent with similar exceptions in other settlement agreements. And the Objecting ER Groups' fear that the release's reference to

"affiliated companies" could inadvertently release their claims is unfounded; the Settlement Agreement prohibits a wide variety of individuals and entities (including affiliated companies) from asserting Released Claims, but only when they do so "by, for, under or through the Releasor." Settlement Agreement ¶ 1(zzz). An affiliated company that has not otherwise released its own claims may continue to assert them on its own behalf.

14.    Finally, the Objecting ER Groups object that the Plan of Distribution is inequitable because "the proposed settlement here risks treating all healthcare providers similarly without regard to their reasonably expectable reimbursement rates, thereby ignoring the fact that out-of-network emergency medicine providers are entitled to higher reimbursement rates than in-network providers." (Doc. # ____ at 15). Assuming without deciding that out-of-network emergency medicine providers are generally entitled to higher reimbursement rates than in-network providers, the Plan of Distribution treats out-of-network emergency medicine providers equitably because settlement payments are based on Allowed Amounts. Moreover, the views of out-of-network Providers were represented in settlement negotiations, and there is nothing inherently wrong with including in-network and out-of-network Providers in the same class. At least two settlements in the *In re Managed Care Litigation* MDL included a class of in-network and out-of-network physicians; both were approved, including one to which out-of-network physicians objected. *In re Managed Care Litig.*, 2003 WL 22850070, at *6 (S.D. Fla. Oct. 24, 2003) (overruling the objection); *In re Managed Care Litig.*, 2010 WL 6532985 (S.D. Fla. Aug. 15, 2010) (holding that out-of-network physicians were bound by the settlement agreement). The Objecting ER Groups' objection is **OVERRULED**.

15.    The remaining objection was filed by Kyle Egner, DC. Dr. Egner objects to the Plan of Distribution, contending that medical professionals will receive inadequate compensation

relative to healthcare facilities. He argues that professionals should receive 40% of the Net Settlement Fund as opposed to the 8% determined by the experts to be a fair allocation. The Provider Plaintiffs' economic experts determined that the impact of the Blues' conduct on healthcare facilities was three and a half times as large as the impact on professionals. Preliminary Approval Order at 14. In addition, approximately 65% of physicians were excluded from the Settlement Class because they had released their claims in earlier litigation. *Id.* The allocation experts Kenneth Feinberg and Camille Biros recommended the 92%/8% allocation after reviewing this information and hearing comments from many different types of Providers. Doc. No. 3192-4, Ex. A (Feinberg–Biros Report) at 3–5. Dr. Egner's objection does not undermine their conclusion that this allocation is sound.

16.    Dr. Egner also argues that the funds requested by Settlement Counsel to cover expenses, costs, and administration of the Settlement is excessive. These funds include approximately $100 million in actual expenses incurred in litigating the case, and $100 million more for settlement notice and administration. "[P]laintiff's counsel is entitled to be reimbursed from the class fund for the reasonable expenses incurred in [an] action." *Behrens v. Wometco Enters.*, 118 F.R.D. 534, 549 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990). Throughout the litigation, the Provider Plaintiffs meticulously detailed their costs and expenses, and they followed all protocols for submitting expenses to the Special Master. Dr. Egner points out that the amount allocated for expenses, costs, and administration of the Settlement exceeds the amount that will be allocated for medical professionals. However, this argument ignores that the expenses incurred reflect costs that were reasonable and necessary to litigate the entire case and to obtain not only $2.8 billion in monetary relief, but also non-monetary benefits, which the Provider Plaintiffs' experts have valued at over $17.3 billion.

17.    Finally, Dr. Egner argues that the attorney's fees requested are excessive as well. He objects to payment of 25% of the Settlement Fund to the Provider Plaintiffs' counsel, but the Provider Plaintiffs have requested 23.47% of the Settlement Fund, which is the same percentage awarded to the Subscriber Plaintiffs' counsel, an award the Eleventh Circuit affirmed. Dr. Egner fails to address any of the Provider Plaintiffs' explanation of why an award of 23.47% of the Settlement Fund for attorneys' fees is fair and reasonable. See Doc. 3258-1 (Memorandum of Law in Support of Provider Plaintiffs' Motion for Attorneys' Fees and Expenses) (explaining that fees are below the benchmark deemed presumptively reasonable in common fund cases, the *Johnson* factors confirm reasonableness, and the lodestar cross-check supports the fee request). Negotiations in this case were hard-fought, and there is no indication that Settlement Class Counsel accepted any less than they could have gotten for the Settlement Class or that they colluded with the Blues on attorneys' fees. Dr. Egner's objection is **OVERRULED**.

## **Final Approval of the Settlement Agreement**

18.    Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the Court hereby grants final approval of the Settlement Agreement in all respects (including, without limitation: the Settlement Fund amount, the releases, the Injunctive Relief, and the dismissal with prejudice of the claims asserted against Settling Defendants in the Action), and finds that the Settlement Agreement is, in all respects, fair, reasonable, and adequate to the Settlement Class. In reaching this conclusion, the Court considered the factors set forth in Rule 23(e) as well as the factors set forth in *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). Moreover, the Court concludes that:

a. the Settlement Agreement was fairly and honestly negotiated by counsel with significant experience litigating class actions and is the result of vigorous arm's-

length negotiations undertaken in good faith and with the assistance of several mediators, who are experienced and well-regarded mediators of complex cases;

b.  the Action involves contested issues of law and fact, such that the value of an immediate monetary recovery, in conjunction with the significant other relief provided pursuant to the Settlement Agreement (including but not limited to the relief described as "Injunctive Relief" under Paragraphs 10–26 of the Settlement Agreement), outweighs the mere possibility of future relief after protracted and expensive litigation;

c.  success in antitrust cases such as this one is inherently uncertain, and there is no guarantee that continued litigation would yield a superior result (particularly given the costs, risks and delay of trial and appeal); and

d.  there is a substantial basis for Settlement Class Counsel's judgment that the Settlement Agreement is fair, reasonable and adequate.

19.  The proposed method of distributing relief to the Settlement Class is adequate, including the method of processing Damages Class member claims.

20.  The Settlement treats Class Members equitably relative to each other when considering the differences in their claims.

21.  The Court further grants final approval to the Plan of Distribution, which was preliminarily approved by the Court on December 4, 2024. The Plan of Distribution was developed and recommended by experienced class counsel, with the support of expert economic analysis. The Plan of Distribution represents an efficient and equitable means of distributing the Net Settlement Fund to the Damages Class in a timely fashion, without overly burdening claimants, and treats members of the Damages Class equitably relative to each other. In particular, the Court

finds that the allocation of the Net Settlement Fund among different types of claimants is appropriate, and further finds that the Plan of Distribution's use of a default method of calculating hospital and other facility allowed amounts with an alternative option for claimants who believe they are entitled to more than the default option is reasonable based on the factors identified in the Plan. The Plan of Distribution's methodology strikes a reasonable balance between precision and efficiency.

### Releases

22.     Except as to any claim of those Opt-Outs (identified in Exhibit A) who have validly and timely requested exclusion from the Settlement Class, the Action and all claims contained therein, as well as all of the Released Claims against any of the Releasees by Releasors, are each hereby dismissed with prejudice.

23.     The Opt-Outs identified in Exhibit A are excluded from the Settlement Class pursuant to properly made requests, are not bound by the Settlement Agreements, or this Final Order and Judgment, and may not make any claim on or receive any benefit from the Settlement Fund, whether monetary or otherwise. Said Opt-Outs may not pursue any claims released under the Settlement Agreement on behalf of those who are bound by this Final Judgment. Each Class Member not appearing in Exhibit A is bound by this Final Judgment and will remain forever bound.

24.     The releases set forth in Paragraphs 42–45 of the Settlement Agreement, together with the Definitions contained in Paragraph 1 of the Settlement Agreement relating thereto, are expressly incorporated herein in all respects. The releases are effective as of the Effective Date.

25.     Upon the Effective Date the Releasors: (a) shall be deemed to have, and by operation of the Final Judgment and Order of Dismissal shall have, fully, finally, and forever released, relinquished, and discharged (i) all Released Claims against any and all of the Releasees,

and (ii) any rights to the protections afforded under California Civil Code § 1542 and/or any other similar, comparable, or equivalent laws; and (b) covenant not to sue any Releasee with respect to any Released Claim, and are permanently barred and enjoined from commencing, maintaining, prosecuting, causing, cooperating with, advising to be commenced or maintained, or encouraging any action, suit, proceeding or claim in any court, tribunal, administrative agency, regulatory body, arbitrator or other body in any jurisdiction against any Releasee based in whole or in part upon, arising out of, or in any way connected or related to any Released Claim.

26.    This Final Order and Judgment shall not affect, in any way, the right of Releasors to pursue claims, if any, outside the scope of the Released Claims.

## Monitoring Committee

27.    Based on the record before the Court, including the submissions in support of the Settlement and objections and responses thereto, the Court hereby establishes a Monitoring Committee to serve, and to perform the functions specified under the Settlement Agreement, during the Monitoring Period, which shall be made up of (1) _____ and _____ appointed collectively by Settling Defendants, (2) _____ and _____ appointed collectively by Provider Co-Lead Counsel, and (3) _____ appointed by the Court.

## Further Matters

28.    Nothing in the Settlement Agreement, this Final Judgment and Order of Dismissal, or any and all negotiations, documents, or discussions associated with them, or any proceedings undertaken in accordance with the terms of the Settlement Agreement constitutes (i) an admission or concession by any of the Settling Defendants (or evidence thereof) in any action or proceeding, (ii) evidence of any violation of any statute or law or of any liability or wrongdoing whatsoever by any Settling Defendant, or (iii) evidence of the truth or validity of any of the claims or

12

allegations contained in any complaint or any other pleading that Provider Class Representatives or Class Members have or could have asserted against Settling Defendants, including without limitation that Settling Defendants have engaged in any conduct or practice that violates any antitrust statute, or other law, regulation, or obligation. Settling Defendants expressly deny any wrongdoing or liability whatsoever for any and all such claims and allegations.

29.    Without affecting the finality of this Final Order and Judgment in any way, this Court hereby retains continuing jurisdiction over: (a) the settlement and this Agreement, including the interpretation, administration, and consummation of this settlement, and (b) disposition of all funds held in the Escrow Account. Settling Defendants and each Settlement Class Member have submitted to the exclusive jurisdiction of this Court for any suit, action, proceeding, or dispute arising out of or relating to the Settlement Agreement or the applicability of the Settlement Agreement (except disputes described in Appendix C to the Settlement Agreement that arise during the Monitoring Period, which shall be resolved by the Monitoring Committee) to resolve any disputes or controversies, including but not limited to enforcement regarding Released Claims and Paragraphs 42 and 43 of the Settlement Agreement. Settling Defendants and Settlement Class Members have agreed that, in the event of such dispute, they are and shall be subject to the jurisdiction of this Court and that this Court is a proper venue and convenient forum.

30.    In the event that (a) the Settlement Agreement is rescinded or terminated, (b) the Settlement Agreement does not become effective in accordance with the terms of the Settlement Agreement, (c) the Effective Date does not occur, or (d) the Net Settlement Fund, or any portion thereof, is returned to Settling Defendants in accordance with the Settlement Agreement, then this Final Order and Judgment shall be rendered null and void to the extent provided by and in accordance with the Settlement Agreement and shall be vacated and, in such event, all orders

entered and releases delivered in connection herewith shall be null and void to the extent provided by and in accordance with the Settlement Agreement.

31.    In the event the Settlement Agreement does not become final, or is otherwise rescinded or terminated, litigation of the Provider Actions against Settling Defendants will resume in a reasonable manner to be approved by the Court upon application by the Parties, and any and all parts of the Settlement Fund caused to be deposited in the Escrow Account (other than Notice and Administration Costs reasonably and actually incurred), along with any income accrued thereon, shall be returned to the entities that paid such amounts into the Escrow Account, in proportion to their respective contributions, within ten (10) calendar days of rescission, termination, or a court's final determination denying final approval of the Agreement and/or certification of the Settlement Class, whichever occurs first.

32.    The Parties expressly reserve all of their rights if this Agreement is rescinded or does not otherwise become final.

33.    If the Effective Date does not occur with respect to the Settlement Agreement because of the failure of a condition of the Settlement Agreement, the Court's assessment of class certification of the Settlement Class shall be deemed null and void and the Parties shall retain their rights to seek or to object to certification of this litigation as a class action under Rule 23 of the Federal Rules of Civil Procedure or under any other state or federal rule, statute, law or provision thereof, and to contest and appeal any grant or denial of certification in this litigation or in any other litigation on any other grounds.

34.    The Parties are directed to implement the Settlement Agreement in accordance with its terms once the Settlement Agreement becomes final. Without further order of the Court, the

Parties may agree to reasonable extensions of time to carry out any of the provisions of the Settlement Agreement.

**Dismissal of the Provider Actions**

35.     The Provider Actions are hereby dismissed with prejudice and, except as provided for in the Settlement Agreement and any order of this Court granting fee, expense, or service awards as contemplated under the Settlement Agreement, without costs. Any dismissal with prejudice shall not apply to the claims of the Opt-Outs identified in Exhibit A.

36.     There is no just reason for delay in the entry of this Final Order and Judgment. Immediate entry of this Final Order and Judgment by the Clerk of the Court is expressly directed.

**DONE** and **ORDERED** this _____.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE