FILED

2025 May-02  PM 03:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| IN RE: BLUE CROSS BLUE SHIELD ANTITRUST LITIGATION<br><br>(MDL No. 2406) | Master File No. 2:13-cv-20000-RDP |

**MOTION FOR CLARIFICATION AND PARTIAL RECONSIDERATION OR MODIFICATION OF INJUNCTION ORDER, ECF 3309, AND REQUEST TO STAY FOURTEEN-DAY COMPLIANCE DEADLINE**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... ii

INTRODUCTION ............................................................................................................. 1

REQUEST FOR CLARIFICATION .................................................................................. 3

REQUEST FOR RECONSIDERATION OR MODIFICATION ................................... 7

    I.  Applicable Standards ................................................................................ 7

    II. The Variance Account Allegations Are Not "Based On" in Any Way "ASO Fees," BlueCard "Access Fees," or Perceived Anticompetitive and Procompetitive Characteristics and Effects of the BlueCard Program Cited by the Order ................................................................................................... 8

REQUEST TO CONTINUE THE MAY 6, 2025 COMPLIANCE DEADLINE .......... 14

PRAYER ............................................................................................................................ 15

CERTIFICATE OF CONFERENCE ............................................................................... 17

CERTIFICATE OF SERVICE .......................................................................................... 17

## TABLE OF AUTHORITIES

**Case(s)**                                                                                                   **Page(s)**

*Aird v. United States,*
    339 F. Supp. 2d 1305 (S.D. Ala. 2004) ................................................................. 7

*Altria Group, Inc. v. Good,*
    555 U.S. 70 (2008) .......................................................................................... 11, 14

*Consol. Edison, Inc. v. Ne. Utilities,*
    332 F. Supp. 2d 639 (S.D.N.Y. 2004) ................................................................ 9-10

*Green Harbour Homeowners' Ass'n, Inc. v. G.H. Dev. & Const., Inc.,*
    14 A.D.3d 963, 789 N.Y.S.2d 319 (2005) ............................................................. 14

*In re Blue Cross Blue Shield Antitrust Litig. MDL 2406,*
    85 F.4th 1070 (11th Cir. 2023) ........................................................................ 9, 12

*James v. U.S. Marshals,*
    No. CV420-111, 2023 WL 11938125 (S.D. Ga. Apr. 21, 2023) .............................. 8

*Miller Tabak %8F Co., LLC v. Senetek PLC,*
    118 A.D.3d 520, 988 N.Y.S.2d 141 (2014) ........................................................... 14

*Mount Vernon Fire Ins. Co. v. Creative Hous. Ltd.,*
    88 N.Y.2d 347,  668 N.E.2d 404 (1996) ......................................................... 11, 14

*Pouyeh v. Univ. of Alabama/Dep't of Ophthamology,*
    No. CV-12-BE-4198-S, 2014 WL 11353141 (N.D. Ala. Mar. 11, 2014) ............... 7, 8

*Renfroe v. Nationstar Mortgage, LLC,*
    No. 3:20-CV-191-J-34JBT, 2020 WL 5230696 (M.D. Fla. Sept. 2, 2020) ............... 8

*S.E.C. v. Lauer,*
    445 F. Supp. 2d 136 (S.D. Fla. 2006) ................................................................... 8

*Signature Util. Servs., LLC v. Jernigan,*
    No. 2:21-CV-00102-AMM, 2021 WL 1318674 (N.D. Ala. Mar. 4, 2021) ................. 3

*U.S. Underwriters Ins. Co. v. Val–Blue Corp.,*
    85 N.Y.2d 821, 623 N.Y.S.2d 834, 647 N.E.2d 1342 (1995) ................................. 11

iii

| **Rules** | **Page(s)** |
|---|---|
| Fed. R. Civ. P. 59 | 7, 8 |
| Fed. R. Civ. P. 60 | 7, 8 |

## INTRODUCTION

On April 22, 2025, this Court entered an order enjoining OMI[1] from prosecuting certain ERISA and state-law claims in the Virginia Action[2] and ordered the following:

> **Within fourteen (14) days** of this Order, OMI **SHALL** either (1) file an amended complaint omitting the allegations of paragraphs 56-65 of the First Amended Complaint, and any claims based on those allegations, including paragraphs 98, 109(xv), and 141(xv), or (2) file a motion asking the district court in E.D. Va. Case No. 3:24-cv-00820-REP to strike those allegations and claims.

ECF 3309 (**Order**) at 17. Before this mandate, the Order concludes, "Any claims in the Virginia Action 'based in any way' on BlueCard or the allegations of paragraphs 56-65 of the First Amended Complaint, *including* paragraphs 98, 109(xv), and 141(xv), are RELEASED." *Id.* at 16 (emphasis added).

OMI respectfully requests clarification and partial reconsideration of the Court's Order for three reasons. *First*, the Order may drastically reshape the Virginia Action and likely has ramifications that extend beyond the Virginia Action.[3] Indeed,

---

[1] "OMI" refers to Owens & Minor, Inc., in its individual capacity and in its capacity as fiduciary representative of the Owens & Minor Flexible Benefits Plan (**Plan**), plaintiffs in the Virginia Action, defined in the next footnote.

[2] "Virginia Action" refers to Case No. 3:24-cv-820, pending in the federal Eastern District of Virginia, the Honorable Robert Payne presiding.

[3] Industry experts and commentators have published articles on the Order and its potential ramifications. *See, e.g.*, Chris Deacon, *From Antitrust to Fiduciary Immunity: The BCBS Settlement's Unexpected Blow to Employers* (Apr. 24, 2025), https://www.versanconsulting.com/post/from-antitrust-to-fiduciary-immunity-the-bcbs-settlement-s-unexpected-blow-to-employers; Nona Tepper, *Employer's Elevance Suit Hits Snag Over BCBS Antitrust Settlement*, MODERN HEALTHCARE (Apr. 23, 2025) https://www.modernhealthcare.com/legal/bcbs-lawsuit-settlement-elevance-ruling.

it seems likely the Blues[4] could cite the Order as preclusive against other plan sponsors and plans prosecuting ERISA claims against one or more of the Blues.[5] Thus, defining the scope of the Order and the settlement agreement it analyzes, ECF 2610-2 (**Release**), is important to the Virginia Action and beyond.

*Second*, and more to the point: the breadth of the Order is unclear in some respects and invites satellite litigation regarding its scope as the Virginia Action proceeds. For instance, does the Order preclude prosecution of ERISA and state-law claims based on Anthem's duplicate payment of healthcare claims administered by Anthem for healthcare by providers in host Blues' networks under the BlueCard program? *See* **Ex. A**, ¶¶ 71-72. Does the Order foreclose claims based on other alleged misconduct that Anthem committed when administering healthcare claims—merely because they originated from treatment by host Blue provider networks under the BlueCard program? *See id.* ¶¶ 69-70, 73-97, 100.[6] The answer should be "no" for the reasons set forth below and in OMI's opposition, and according to Anthem's own disclaimers. *See* ECF 3305 at 5-6. But the "including" clauses on pages 16 and 17 of the Order, quoted above, leave doubt.

---

[4] "Blues" refers to the Blue Cross Blue Shield National Association and its affiliated companies and licensees named as defendants and party to the subscriber settlement in this case.

[5] "Antitrust Action" refers to this case, MDL no. 2406, master file no. 2:13-CV-20000-RDP.

[6] OMI intentionally omits citation to paragraph 99, which refers to MultiPlan and other out-of-network vendors. MultiPlan and other out-of-network vendors would have been used only for healthcare claims that originated outside of Anthem's network and outside of host Blues' networks in the BlueCard program. Because claims at issue in paragraph 99 appear mutually exclusive with BlueCard claims, they appear to be outside the scope of the Court's Order. Nevertheless, OMI reserves the right to challenge any argument by Anthem that allegations in paragraph 99 fall within the scope of "released claims" under the Release.

*Third*, OMI seeks reconsideration and modification of the Order only to the extent it enjoins OMI from prosecuting ERISA claims based on variance-account allegations.[7] Reconsideration is appropriate to correct a clear legal error stemming from the Order's failure to address material distinctions between the respective connective language used in the Release's definition of "released claims" and its definition of exceptions.

OMI respectfully requests that the Court clarify its Order, grant reconsideration or modification of the Order with respect to variance-account allegations, and stay OMI's May 6, 2025 compliance deadline pending resolution of this Motion.

**REQUEST FOR CLARIFICATION[8]**

Courts recognize that injunction orders may require clarification. *See, e.g.*, *Signature Util. Servs., LLC v. Jernigan*, No. 2:21-CV-00102-AMM, 2021 WL 1318674, at \*4 (N.D. Ala. Mar. 4, 2021). OMI requests clarification primarily to avoid unwittingly violating the Order and to avoid satellite litigation over the meaning of the Order or the Release as the Virginia Action proceeds into discovery.

---

[7] Despite the partial nature of this request, OMI reserves all rights and challenges it may have with respect to any and all relief granted in the Order.

[8] Neither OMI nor its counsel seeks to cause undue delay, expense, or inconvenience by this Motion. Nor does OMI or its counsel intend to exhibit any modicum of disrespect to the Court. In fact, OMI and its counsel file this Motion primarily to prevent this Court from having to resolve future squabbles originating from the Virginia Action in the form of discovery disputes and other skirmishes relating to the Release. OMI's counsel is working to prepare a motion to strike with a copy of the 1AC attached reflecting the requested strikes, but before filing it in the Virginia court, OMI must first (i) ascertain through clarification whether its motion complies with the Order and (ii) relatedly, whether OMI should appeal the Order before inadvertently waiving grounds for appeal or waiving the right to pursue legal claims and factual theories in the Virginia Action.

Allegations not expressly condemned by the Order, 1AC paragraphs 68-97 and 100, challenge administration of healthcare claims by Anthem pursuant to its ASA and relationship with OMI. Clarification is required on the following issue: Does the Release bar claims based on those allegations to the extent some of those healthcare claims stem from treatment by providers in host Blues' networks pursuant to the BlueCard program? As the Order suggests—and Anthem appears to concede—the answer is "no."

The Order states, "Any claims in the Virginia Action 'based in any way' on BlueCard or the allegations of paragraphs 56-65 of the First Amended Complaint, *including* paragraphs 98, 109(xv), and 141(xv), are RELEASED." Order at 16 (emphasis added). But it is unclear what "claims in the Virginia Action" *other than* "paragraphs 98, 109(xv), and 141(xv)" are contemplated. Beyond paragraphs 56-65, 98, 109(xv), and 141(xv)—and completely divorced from the topics of ASO fees[9] or BlueCard "access fees" referenced in the Order—OMI alleges Anthem injured OMI and its Plan in numerous ways, such as (i) paying excess amounts on healthcare claims including paying providers over 100% of billed amounts, **Ex. A**, 1AC ¶¶ 69-70; (ii) making duplicate payments on healthcare claims with Plan money, *id.* ¶¶ 71-72; (iii) overcharging the Plan for generic drugs generally and by improperly classifying certain generic drugs as more expensive "specialty" drugs, *id.* ¶¶ 73-75; (iv) withholding rebates from the Plan, *id.* ¶¶ 76-77; and (v) paying for services not

---

[9] "ASO fees" are the fees paid by self-funded plans or plan sponsors to companies like Anthem for administrative services rendered in connection with those self-funded plans. *See* ECF 2616 ¶ 2; **Ex. B**, ASA at 19.

rendered, *id.* ¶ 86.[10] *See also id.* ¶¶ 78-85, 87-97, 100.

Based on claims data it possesses and reasonably expects to obtain in discovery, OMI intends to prosecute legal claims against Anthem based on misconduct alleged in paragraphs 69-97 and 100 in connection with healthcare claims Anthem administered for OMI and paid with Plan funds. A significant percentage of healthcare claims implicated by paragraphs 69-97 and 100 were for treatment by providers in host Blues' networks under the BlueCard program. Those allegations and the legal claims relying on them do not purport to challenge or question any "ASO fee," a BlueCard "access fee," or BlueCard anticompetitive and procompetitive characteristics the Order identifies. Those legal claims are not based in whole or in part on the factual predicates or issues in the Antitrust Action. Order at 11-13, 15-16. For its part, Anthem appears to agree:

---

[10] Note that there is some indication prescription claims were not generated by host Blue network providers in the context of the BlueCard program. **Ex. B**, ASA at 49 ("Note that dental care, Prescription Drug or vision benefits may not be processed through Inter-Plan arrangements . . . BlueCard Program is an Inter-Plan Arrangement."). But clarification remains necessary until this can be confirmed.

The rest of OMI's claims in the Virginia Action are not Released Claims, because, to use the language of the release, they are not claims "relating in any way to" the factual predicates or issues raised in the Subscriber action, such as exclusive service areas or the BlueCard program. SSA § A.1.(uuu). For example, these other claims are based solely on allegations that Anthem BCBS allegedly paid for the same medical services multiple times, ECF No. 3289-1, Am. Compl. ("Compl.") ¶ 71; allegedly improperly classified certain drugs for reimbursement purposes, id. ¶ 73; allegedly paid claims that did not follow certain billing and coding rules, id. ¶ 91; or allegedly improperly paid for multiple units of specific treatments in a given day, id. ¶ 94. These are exactly the types of claims "based solely on" ordinary course health benefits issues, including the "administration of claims under a benefit plan," that are not released under the SSA. Id.[3]

Anthem Reply, ECF 3305 at 6.

Nevertheless, OMI anticipates Anthem will seize on the "including" clauses in the Court's Order at pages 16 and 17 (i) to object to OMI's attempt to comply with the Order or (ii) to resist discovery supporting allegations in paragraphs 69-97 and 100 to the extent the healthcare claims at issue derive from providers in host Blues' networks under the BlueCard program. This would delay the Virginia Action and will lead to protracted satellite litigation in this Court regarding the scope of the Court's Order and the breadth of the Order's "including" clauses. Order at 16, 17. In other words, to avoid this needless delay and waste of judicial and party resources, OMI requests clarification on this question: Are legal claims in the Virginia Action based on allegations in paragraphs 69-97 and 100 barred to the extent Anthem's misconduct in administering those healthcare claims occurred in the context of (i) healthcare claims for services by host Blues' network providers under the BlueCard program or (ii) healthcare claims by Plan members receiving care in a host Blue's network under

6

the BlueCard program?

The answer should be "no." The allegations in 1AC paragraphs 69-97 and 100 and related legal claims support recovery even if the BlueCard program did not exist: Anthem's double payment of healthcare claims, paying more than billed amounts, paying for healthcare services not rendered, and concealing overpayments represent violations of various duties regardless of whether the healthcare claims at issue originated from host Blue providers. Thus, there is an absence of the required relationship between the legal claims relying on paragraphs 69-97 and 100 and the factual predicates and other "issues" in the Antitrust Action. Order at 2-3 (quoting definition of and exclusions to "released claims"); *see, e.g.*, *infra* pp. 8-11.

For these reasons, OMI respectfully requests clarification of the Order. Alternatively, to the extent the Court deems the Order to have expressly foreclosed these theories merely because the relevant healthcare claims originated with host Blue network providers under the BlueCard program, OMI respectfully requests reconsideration.

## REQUEST FOR RECONSIDERATION OR MODIFICATION

### I. APPLICABLE STANDARDS.

Given the procedural posture of the Antitrust Action and the nature of the Court's Order, it is unclear whether Federal Rule of Civil Procedure 59 or 60 controls this request for reconsideration.[11] *See Aird v. United States*, 339 F. Supp. 2d 1305,

---

[11] For instance, it is unclear whether the Order should be considered an interlocutory order given it is not part of a final judgment in the Antitrust Case or should be considered a final judgment because it purports to resolve all issues brought to the Court by Anthem. *See Pouyeh v. Univ. of Alabama/Dep't of Ophthamology*, No. CV-12-BE-4198-S, 2014 WL

1310 n.7 (S.D. Ala. 2004). Nevertheless, this Court has discretion to reconsider its own orders. *See, e.g.*, *Renfroe*, 2020 WL 5230696 at *1. OMI must demonstrate "an intervening change in controlling law, newly discovered evidence, or a need to correct a clear error or manifest injustice" to justify reconsideration or modification of the Order. *See Lauer*, 445 F. Supp. 2d at 1370–71; *Renfroe*, 2020 WL 5230696 at *1; *Pouyeh*, 2014 WL 11353141 at *1. OMI's request relies only on the need to correct a clear error and avoid manifest injustice.

## II.    THE VARIANCE ACCOUNT ALLEGATIONS ARE NOT "BASED ON" IN ANY WAY "ASO FEES," BLUECARD "ACCESS FEES," OR PERCEIVED ANTICOMPETITIVE AND PROCOMPETITIVE CHARACTERISTICS AND EFFECTS OF THE BLUECARD PROGRAM CITED BY THE ORDER.

To frame the issue concisely, the Release's definition of "released claims" broadly bars legal claims that *relate* to certain topics. Order at 3. But there is an exclusion for ERISA claims *"based* solely" on "challenging . . . administration of claims" by a released party. *Id.*[12] Thus, ERISA claims "*based* in whole or in part" on the topics identified in the general definition of "released claims" are barred even if they "challeng[e] . . . administration of claims." *Id.* The distinctions between "based on" and "relate to" demonstrate that a stronger connection is required for the Release

---

11353141, at *1 (N.D. Ala. Mar. 11, 2014) (applying Rule 60 to permanent injunction); *Renfroe v. Nationstar Mortgage, LLC*, No. 3:20-CV-191-J-34JBT, 2020 WL 5230696, at *1 (M.D. Fla. Sept. 2, 2020) (applying Rule 59 to request for reconsideration of order on request for preliminary injunction); *S.E.C. v. Lauer*, 445 F. Supp. 2d 1362, 1371 (S.D. Fla. 2006) (citing Rule 60 in determining request to modify preliminary injunction); *James v. U.S. Marshals*, No. CV420-111, 2023 WL 11938125, at *1 (S.D. Ga. Apr. 21, 2023) ("The major distinction between the two rules is that Rule 59(e) applies to motions for reconsideration of matters that are encompassed in a decision on the merits of the dispute; Rule 60 applies to motions for reconsideration of matters collateral to the merits." (quotes omitted)).

[12] OMI limits this request to ERISA claims.

to bar ERISA claims based on a fiduciary's "administration of claims." *See id.* The apparent importance to the settling parties of preserving ERISA claims would explain the different treatment of these provisions. *See* Order at 5.

The Order framed the "relevant question as whether OMI's claims in the Virginia Action *relate* 'in any way' to (i) the factual predicates of the Subscriber Actions' or '(ii) any issue raised in any of the Subscriber Actions by pleading or motion.'" Order at 15 (emphasis added). Consistent with that statement, the Order continued: "Because [] the allegations . . . in the Virginia Action *related to the BlueCard Program*, and [legal claims] are premised at least in part on those facts, it simply *cannot be the case* that those claims . . . are *based solely on*" challenges to Anthem's administration of claims under the exclusionary carveout. *Id*. The Order therefore equates "related to" with "based on." *See id.* Because "based on" denotes a but-for causal connection and "related to" permits a much looser connection, this resulted in a clearly erroneous ruling that variance-account allegations and the ERISA claim they support are released despite the absence of "based on" connection "in whole or in part" between the ERISA claim and a "common nucleus of operative fact" in the Antitrust Action. *See* Order at 3; *In re Blue Cross Blue Shield Antitrust Litig. MDL 2406*, 85 F.4th 1070, 1091 (11th Cir. 2023).

OMI agrees with the fundamental proposition that a release agreement, like any other contract, requires a court to "give meaning to each word." Order at 14. The key word here is "based." And under New York law, "every part" of a release must be "interpreted in reference to the whole," and the "scope of a release turns on the

9

controversy being settled" and on the "purpose for which the release was actually given."[13] *Consol. Edison, Inc. v. Ne. Utilities*, 332 F. Supp. 2d 639, 641, 645, 647, 648 (S.D.N.Y. 2004)[14] (in case "aris[ing] out of the failed . . . merger" between two companies, holding release in previous merger-related action but entered while instant action was pending did not apply even though it purported to release claims "that . . . relate in any way to the Merger Agreement" based on these rules and in part because the release was entered after the filing of the instant action).[15]

Further, "based on"—the connection used to define Release exclusions—describes a more direct relationship than "relating to"—the connection used to define "released claims." *See* Order at 3. "[T]he phrase 'relating to' has a broader scope than" the phrase "based on" because "relating to . . . is synonymous with having a connection with" whereas "based on describes a more direct relationship" that "indicates a but-for causal relationship and thus a necessary logical condition." *Altria Group, Inc. v.*

---

[13] The Release is governed by New York Law. ECF 2610-2 at 56 ("All terms of this Agreement shall be governed by and interpreted according to the substantive laws of the State of New York without regard to its choice-of-law or conflict-of-laws principles.").

[14] As the Order notes, the Court previously sought to allay the Department of Labor's concerns by stating, "ERISA *plan rights* are not affected by the Settlement" and "this Settlement does nothing to change or alter ERISA rights." Order at 5 (some emphasis omitted). Of course, that same quote adds, "[t]he Settlement and release make clear that ERISA claims unrelated to the issues raised in this litigation are not released." *Id.* But ERISA claims (or other legal claims based on statutory law or plan documents) are released only if they are "based" in whole or in part on the factual predicates or issues raised in the Antitrust Action. Order at 3 (definition of Released Claims).

[15] Notably, the precursor litigation to the Virginia Action—which OMI used to obtain claims data that supports its Virginia Action—was filed and resolved as the Release was becoming "effective." *Compare* **Ex. A**, 1AC ¶¶ 21-28 and **Ex. C** (OMI's 2.13.2023 complaint in the precursor claims-data action) *with* ECF 2610-2 at 24-26 (defining steps necessary to establish Release's "effective date"). It seems unlikely the Release intended to foreclose ERISA disputes already subject to litigation initiated by self-funded plans and plan sponsors.

10

*Good*, 555 U.S. 70, 86 (2008) (cites and some quotes omitted); *Mount Vernon Fire Ins.*

*Co. v. Creative Hous. Ltd.*, 88 N.Y.2d 347, 349-350, 352, 353,  668 N.E.2d 404, 405,

407 (1996) (where victim of assault sued apartment owner for negligent management

of premises, holding insurance exclusion of claims "based on [a]ssault" precluded

coverage for owner only because no negligence claim would exist "but for" the assault

and the assault provided the "operative act giving rise to any recovery").[16] Here, the

Order conflates these standards and relies on a misunderstanding that "based on"

denotes the same "a connection with" link as "relating to":

> Because of the allegations of the First Amended Complaint in the Virginia Action *related to* the BlueCard Program, and the fact that both an ERISA claim and a breach of fiduciary duty claim are premised at least in part on those facts, *it simply cannot be the case that those claims*:
>
> > arise in the ordinary course of business and are *based solely on* (i) whether a particular product, service or benefit is covered by the terms of a particular Commercial Health Benefit Product, (ii) seeking resolution of a benefit plan's or a benefit plan participant's financial responsibility for claims, based on either the benefit plan document or statutory law, or (iii) challenging a Releasee's administration of claims under a benefit plan, based on either the benefit plan document or statutory law.

---

[16] The court also recounted a previous holding that similarly held "based on" denotes a but-for causal connection:

> On appeal to the United States Court of Appeals for the Second Circuit, Mount Vernon maintained that the District Court's holding was in direct conflict with New York law recently established in *U.S. Underwriters Ins. Co. v. Val–Blue Corp.*, 85 N.Y.2d 821, 623 N.Y.S.2d 834, 647 N.E.2d 1342. In *Val–Blue* we held an exclusion clause containing language identical to the language found in this policy was unambiguous and precluded coverage of negligence claims. We applied a "but-for" test to determine coverage in such cases: if no cause of action would exist but for the assault, the claim is based on assault and the exclusion applies.

*Mount Vernon*, 668 N.E.2d at 405.

Order at 15-16 (some emphasis added).[17] As a result, the Order interprets the exclusions to the Release too narrowly by holding variance-account-based ERISA claims are barred if they merely "relate" in whole or in part to factual predicates or issues raised in the Antitrust Action.

OMI respectfully submits that its variance-account allegations at paragraphs 63-65, 98, and 109(xv) are "based *solely* on . . . challenging [Anthem's] administration of claims under a benefit plan, based on [ERISA]." *Id.* at 15-16 (original emphasis).[18] In other words, the ERISA claim relying on the variance-account allegations is not based on, in whole or in part, the "common nucleus of operative fact" in the Antitrust Action. *In Re BCBS*, 85 F.4th at 1091. First, the factual predicates of and issues raised in the Antitrust Action cited by the Order make no reference to "variance accounts" that contain overpayments (not "fees") on healthcare claims administered by Anthem and paid to host Blues and host Blue providers. Order at 11-13. While the Order identifies "ASO fees," "access fees," and the Antitrust defendants' reliance on BlueCard to show procompetitive benefits of their alleged misconduct, it does not appear the Antitrust Action involved the issue of *home* Blues like Anthem *overpaying the bills* associated with healthcare claims those *home* Blues administered for self-funded plans under ERISA and plan documents. *See* **Ex. A**, 1AC ¶ 60 (sample

---

[17] Indeed, it *can* be the case because, for a legal claim to be "*based* in whole or in part" on a topic, that legal claim must be more than merely "related to" that topic. *Supra* pp. 10-11.

[18] While OMI's legal claims may be characterized as "seeking resolution of a benefit plan's . . . financial responsibility for claims, based on either the benefit plan document or statutory law," the factual theories more closely correspond with the third category of exclusions to the Release. Order at 3.

demonstrates that Anthem, as the home Blue, administered BlueCard claims for the Plan), ¶ 63 ("Defendant permitted host Blues to charge the Plan more than . . . billed" on claims), ¶ 65 (the harm is the Plan "pay[s] more money for a claim than is actually paid to the provider" and Anthem allowed the Plan's funds to be retained in variance accounts never to return to the Plan). While OMI acknowledges other portions of these paragraphs discuss BlueCard "fees" and market leverage the Blues possessed, the variance-account-based ERISA claim is distinct and seeks to recover overpayments by Anthem—with Plan funds—on the principal amounts of healthcare claims—not fees. The variance-account allegations support an ERISA claim regardless of BlueCard fees or BlueCard's procompetitive or anticompetitive traits. There is no but-for causal connection between that ERISA claim and a common nucleus of operative fact identified by the Order.[19]

Next, the difference between the "based" and "relating" clauses creates a conflict between the more general release language and the more specific exclusions for ERISA claims. After all, if a "relating to" connection defeated operation of the exclusions, it would not matter whether an ERISA claim "challenging administration of claims under a benefit plan" is "based in whole or in part" on a prohibited issue or factual predicate. *See* Order at 3. Under that reading, ERISA claims may have only

---

[19] The ASA further demonstrates variance accounts represent excess payments on the principal amounts of healthcare claims themselves resulting from Anthem's administration of those claims. **Ex. B**, ASA at 49-50 (attached to OMI's 1AC and showing (i) even with BlueCard claims Anthem applies "*Anthem's payment practices*" and "Anthem remains responsible for fulfilling its contractual obligations" to OMI including administering the Plan and (ii) variance account balances result when Anthem pays more on a healthcare claim than is owed to the host Blue network provider submitting that claim (emphasis added)).

a but-for-causal connection with "administration of claims under a benefit plan" and other appropriate topics but would be barred because they have "a connection with" issues raised or factual predicates in the Antitrust Action. *Altria Grp.*, 555 U.S. at 86; *Mount Vernon*, 668 N.E.2d at 404, 405, 407. That is *not* the Release's intent. By failing to resolve this conflict in favor of the "based" clauses in the more specific carveouts, the Order violated the canon that more specific provisions control. *See, e.g.*, *Green Harbour Homeowners' Ass'n, Inc. v. G.H. Dev. & Const., Inc.*, 14 A.D.3d 963, 789 N.Y.S.2d 319, 321 (2005) ("Where a contract . . . employs contradictory language, specific provisions control over general provisions."); *Miller Tabak %8F Co., LLC v. Senetek PLC*, 118 A.D.3d 520, 522, 988 N.Y.S.2d 141, 143 (2014) (assuming a conflict, noting "the more specific provision . . . would control over the general provisions in the agreement"). This represents a clear legal error that warrants reconsideration.

OMI therefore respectfully requests that the Court modify its Order to allow OMI to prosecute its ERISA claim based on the variance-account allegations.

**REQUEST TO CONTINUE THE MAY 6, 2025 COMPLIANCE DEADLINE**

The Order requires OMI to remove certain legal claims and allegations "[w]ithin fourteen (14) days of th[e] Order." Order at 17. That deadline is May 6, 2025. OMI respectfully asks the Court to continue that deadline in light of this Motion. "Compliance" with the Order is currently unclear to OMI. And OMI wants to avoid the following scenarios: (i) failing to omit allegations and legal claims that were left open by the Order's "including" clauses on pages 16 and 17, thereby exposing OMI to allegations it violated the Order, or inviting further satellite litigation that interferes with the Virginia Action and this Court and (ii) omitting more allegations than

14

required by the Order and the law, which may prevent subsequent addition of those legal claims and allegations by amendment and which may provide Anthem an argument that OMI abandoned those allegations and related legal claims. Clarification is also necessary for OMI to determine whether to appeal the Court's Order. OMI therefore respectfully requests that the Court continue that deadline pending resolution of this Motion.

## PRAYER

OMI believes oral argument may benefit the Court and respectfully requests oral argument on this Motion. Further, OMI respectfully requests that the Court (i) stay the deadline to comply with the Court's Order pending its ruling on this Motion; (ii) clarify the Order as requested above; and (iii) reconsider its Order as it relates to ERISA claims based on variance-accounts allegations.

*[signature block on next page]*

Dated: May 2, 2025                          Respectfully submitted,


                                            */s/ Benjamin Major*
                                            Benjamin Major
                                            Texas State Bar No. 24074639
                                            *Admitted pro hac vice*
                                            Kyle D. Schnitzer
                                            Texas State Bar No. 24083811
                                            *Admitted pro hac vice*
                                            THE LANIER LAW FIRM, P.C.
                                            10940 W. Sam Houston Pkwy N.
                                            Suite 100
                                            Houston, Texas 77064
                                            Telephone: (713) 659-5200
                                            Facsimile: (713) 659-2204
                                            Ben.Major@lanierlawfirm.com
                                            Kyle.Schnitzer@lanierlawfirm.com


                                            Devan L. Byrd
                                            BYRD FIRM, PLLC
                                            Post Office Box 59133
                                            Birmingham, AL 35259
                                            Telephone: (205) 882-5220
                                            Devan@thebyrdfirm.com


                                            *Counsel for Owens & Minor, Inc. and*
                                            *Owens & Minor Flexible Benefits Plan*


16

## CERTIFICATE OF CONFERENCE

On May 1, 2025, counsel for OMI conferred with counsel for Anthem regarding the clarification and reconsideration relief requested by this Motion, as well as the motion to stay the compliance deadline pending resolution of this Motion. Through counsel, on May 2, 2025, Anthem noted they are opposed in all respects.

/s/ *Benjamin Major*
Benjamin Major

## CERTIFICATE OF SERVICE

I hereby certify that on May 2, 2025, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record. I further certify that a true and correct copy of the foregoing was served via electronic mail and Federal Express overnight delivery on the following:

HOGAN LOVELLS US LLP
Craig A. Hoover
E. Desmond Hogan
Justin Bernick
Elizabeth Jose
Columbia Square
555 13th Street, N.W.
Washington, DC 20004
Houston, Texas 77064
Telephone: (202) 637-5600
Facsimile: (202) 637-5910
Craig.Hoover@hoganlovells.com
Desmond.Hogan@hoganlovells.com
Justin.Bernick@hoganlovells.com
Elizabeth.Jose@hoganlovells.com

17

BALCH & BINGHAM LLP
Cavender C. Kimble
1901 6th Avenue North, Suite 1500
Birmingham, AL 35203-4642
Telephone: (205) 226-3437
Facsimile: (205) 488-5860
CKimble@balch.com

*Counsel for Anthem Health Plans of Virginia,
Inc. d/b/a Anthem Blue Cross and Blue Shield*

                              */s/ Benjamin Major*
                              Benjamin Major

18