FILED

2025 May-19 PM 07:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

|  |  |
|---|---|
| **IN RE: BLUE CROSS BLUE SHIELD ANTITRUST LITIGATION (MDL No. 2406)** | ) ) ) ) **Master File No. 2:13-CV-20000-RDP** |

## ANTHEM HEALTH PLAN OF VIRGINIA, INC.'S MEMORANDUM IN OPPOSITION TO OMI'S MOTION FOR CLARIFICATION AND PARTIAL RECONSIDERATION OR MODIFICATION OF INJUNCTION ORDER

**TABLE OF CONTENTS**

**Page(s)**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 2

I.     The Court's Order Does Not Need Clarification. ................................................. 2

II.    Reconsideration Is Not Warranted. ..................................................................... 4

    A.   The Court Did Not Commit Any Legal Error. .............................................. 5

    B.   The Court Correctly Found that the Released Claims Include OMI's Challenge to
         BlueCard Variance Accounts. ...................................................................... 8

CONCLUSION ................................................................................................................... 11

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Altria Group, Inc. v. Good*,
  555 U.S. 70 (2008)..................................................................................................7

*Bell v. Integrated Health Servs., Inc.*,
  2007 WL 433561 (S.D. Ala. Feb. 5, 2007)...........................................................6, 7

*Drummond Co., Inc. v. Collingsworth*,
  2023 WL 10211544 (N.D. Ala. Nov. 30, 2023) ............................................1, 4, 5, 8

*Jenkins Brick Co. v. Bremer*,
  321 F.3d 1366 (11th Cir. 2003) ..............................................................................5

*Mays v. United States Postal Serv.*,
  122 F.3d 43 (11th Cir. 1997) ..................................................................................5

*Medline Indus. v. Stryker Sustainability Sols.*,
  No. 2:19-cv-1415-GMB, 2020 U.S. Dist. LEXIS 187964 (N.D. Ala. Oct. 9,
  2020) ......................................................................................................................5

*Mt. Vernon Fire Ins. Co. v. Creative Hous. Ltd.*,
  668 N.E.2d 404 (N.Y. 1996)...................................................................................7

*Owens & Minor, Inc., et al v. Anthem Health Plans of Virginia, Inc.*,
  No. 3:24-cv-00820-REP (E.D. Va. May 15, 2025), ECF No. 51 ............................2

*Safeco Ins. Co. of Am. v. Burr*,
  551 U.S. 47 (2007)..................................................................................................7

*Thomas v. Blue Cross and Blue Shield Ass'n*,
  594 F.3d 814 (11th Cir. 2010) ................................................................................9

**INTRODUCTION**

OMI continues its quest to rewrite and overcomplicate the broad and clear release in the Subscriber Settlement Agreement ("SSA"), in hopes of creating new exceptions for its claims in the Virginia Action. But as this Court found in its April 22 Order, the release is unambiguous. "[T]he plain language of the definition of released claims leads inexorably to the conclusion that, to the extent any of [OMI's claims] in the Virginia Action are based in whole or in part on BlueCard (which was an issue in the Subscriber cases in the MDL), they are released." ECF No. 3309, Memorandum Opinion and Order, at 16 (the "Order").

The Order does not need clarification. The Court already gave OMI detailed instructions on how to comply with the Order, including striking or amending to remove any claims based on "the allegations of paragraphs 56-65 of the First Amended Complaint." Order at 17. More specific instructions are not practicable, given the vague, "shotgun pleading" that OMI filed in Virginia. *Id.* at 10, n. 1. Further, more specific instructions are not necessary. OMI has not identified any concrete disputes about the scope of the Order that this Court needs to resolve. The Court should decline OMI's request to provide yet further elaboration, or speculate on hypothetical disputes, which may have unintended consequences.

Nor is reconsideration—an "extraordinary remedy"—warranted here. *Drummond Co., Inc. v. Collingsworth*, 2023 WL 10211544, at *1 (N.D. Ala. Nov. 30, 2023). The Court has already considered over forty pages of briefing and issued a thorough, seventeen-page Order analyzing whether OMI's Blue System Claims in the Virginia Action are released. OMI's request for reconsideration retreads the same ground. OMI tries to dress up its old arguments as a "legal error," based on the Court's alleged failure to apply relevant release language. But that is simply not true. The Court's Order clearly shows that the Court repeatedly (and correctly) applied the

release language that OMI argues was ignored. OMI's remaining arguments are as wrong as they were the first time they made them. The Court correctly found that the BlueCard Program was part of the factual predicate for the Subscriber Actions. And the Court correctly found that OMI's challenge to variance accounts required under the BlueCard Program are not "based solely on" Anthem BCBS's alleged ordinary course health benefits overpayments. Rather, they are "related to" and "based in part on" the BlueCard Program and are therefore released.

The Court should deny both OMI's request for clarification and request for reconsideration and allow the Virginia Action to move forward, consistent with the terms of the Order.[1]

## ARGUMENT

### I.    The Court's Order Does Not Need Clarification.

The Court's Order fully and clearly resolved the dispute between Anthem BCBS and OMI regarding the effect of the Subscriber Settlement Release. Anthem BCBS asked this Court to confirm that its injunction incorporating the Subscriber Settlement Release bars OMI's challenges to the Blue System, including the BlueCard program, asserted in the Virginia Action. *See, e.g.*, ECF No. 3289, Motion to Enforce the Court's Injunction, at 9-14; ECF No. 3305, Reply in Support of Motion to Enforce the Court's Injunction, at 1. This Court agreed and specifically instructed OMI to strike or remove through amendment "the allegations of paragraphs 56-65 of the First Amended Complaint"—i.e., the Blue System allegations—"and any claim based on those allegations, including paragraphs 98, 109(xv), and 141(xv)." Order at 17. No further elaboration on the scope of the Subscriber Settlement Release or future hypothetical disputes is warranted. *Cf.*

---

[1] On May 15, 2025, OMI filed a motion to stay the Virginia Action pending this Court's resolution of the present Motion. Anthem BCBS did not oppose the stay, to the extent it is short, but maintained that clarification and reconsideration are not warranted. *See Owens & Minor, Inc., et al v. Anthem Health Plans of Virginia, Inc.*, No. 3:24-cv-00820-REP (E.D. Va. May 15, 2025), ECF No. 51.

ECF No. 2931, Final Approval Order, at 56 n.22 (declining to further elaborate on particular applications of the release, which "would likely be an inappropriate advisory opinion").

OMI argues that the Court's order is unclear, because the "including" clause only provides illustrative examples of claims based on "the allegations of paragraphs 56-65 of the First Amended Complaint," rather than specifically delineating every such claim. *See, e.g.*, ECF No. 3315, Motion for Clarification and Partial Reconsideration or Modification of Injunction Order, at 1 (the "Motion").  But more specificity is not practicable under the circumstances.  As the Court observed, OMI's complaint is a vague, "shotgun pleading" that does not clearly identify which combinations of allegations correspond to which legal claims, among other issues.  Order at 10, n.1.  It is not this Court's job to guess about exactly which claims are based on paragraphs 56-65 and which are not.  The Court has given as much clear guidance as possible already.  It is up to OMI to comply with that clear guidance across all of its claims in the Virginia Action.

For similar reasons, the Court should decline OMI's request to give blanket approval to OMI's other allegations or claims, including "paragraphs 69-97 and 100," that are not specifically mentioned as illustrative examples in the Order.  Mot. at 5.  To be clear, Anthem BCBS does not contend that the Court's injunction bars a legal claim solely because it involves a reimbursement claim that was sent from a host plan to Anthem BCBS through the BlueCard program, though such a claim may be enjoined for other reasons.[2]  It has never argued otherwise.  But many of OMI's allegations are extremely vague and, if categorically approved, might be used (improperly) to re-introduce challenges to the Blue System that have been released.

---

[2] To the extent that OMI alleges, for example, that Anthem BCBS improperly reimbursed for multiple units of specific treatments in a day, contrary to OMI's benefits plan or Anthem BCBS's medical policy, that claim is not released solely because the relevant reimbursement claim was sent from a host plan to Anthem BCBS through the BlueCard program.

For example, Paragraph 69 vaguely alleges that Anthem BCBS "caus[ed] Plaintiff to grossly overpay claims."  ECF No. 3289-1, Ex. A, Owens & Minor Complaint, ¶ 69 (the "Complaint").  To the extent that OMI argues this allegation encompasses temporary estimated payments held in variance accounts under the BlueCard program, *see* Compl. ¶ 65, or other BlueCard fees, *see, e.g.*, Compl. ¶ 63, that claim would be barred under the Court's injunction.  Similarly, Paragraph 82 vaguely alleges that Anthem BCBS "knowingly or negligently engage[d] intermediaries between Defendant and providers who required payment well in excess of providers' charges and pocketing the difference paid by Plaintiff."  Compl. ¶ 82.  Again, if OMI contends that this allegation encompasses its earlier allegation that Anthem BCBS uses BlueCard variance accounts "to pocket . . . overpayments to the detriment of the Plan," Compl. ¶ 65, that would violate the Court's injunction.

The Court need not try to parse OMI's shotgun pleading or speculate about hypothetical disputes now.  Further elaboration may unnecessarily complicate the Court's Order and the otherwise unambiguous Subscriber Settlement Release, with unintended consequences.  The Court has given plenty of clear guidance already:  OMI cannot prosecute any claims based in any way on "the allegations of paragraphs 56-65 of the First Amended Complaint."  Order at 16-17.  To the extent that OMI seeks to do that, Anthem BCBS will raise that issue with OMI and—if it persists after a meet and confer—with the Court at that time.

## II.    Reconsideration Is Not Warranted.

OMI cannot meet the high standard for reconsideration of the Court's Order.  "Reconsideration is an extraordinary remedy which must be used sparingly." *Drummond Co., Inc. v. Collingsworth*, 2023 WL 10211544, at *1 (N.D. Ala. Nov. 30, 2023) (Proctor, J.) (internal quotations omitted).  Courts should be "loath" to reconsider a prior order and require, at least, an

intervening change in controlling law, the availability of new evidence, or the need to correct clear error or manifest injustice. *Id.* (citing *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1370 (11th Cir. 2003)).  "[A] moving party must do more than merely ask the court for a reevaluation of an unfavorable ruling." *Id.*  Further, a reconsideration motion is "not a proper vehicle for advancing new legal theories or presenting previously available evidence." *Medline Indus. v. Stryker Sustainability Sols.*, No. 2:19-cv-1415-GMB, 2020 U.S. Dist. LEXIS 187964, at *2 (N.D. Ala. Oct. 9, 2020) (citing *Mays v. United States Postal Serv.*, 122 F.3d 43, 46 (11th Cir. 1997)).

OMI cannot show extraordinary circumstances here.  OMI identifies no intervening change in the law or new evidence. *See* Mot. at 8.  The "legal error" that OMI claims has no basis in the Court's Order.  And OMI's remaining arguments are recycled from its original briefing and amount to nothing more than a request "for a reevaluation of an unfavorable ruling." *Drummond*, 2023 WL 10211544, at *1.

### A.  The Court Did Not Commit Any Legal Error.

OMI wrongly premises its entire reconsideration request on the notion that the Court erroneously analyzed only whether its Blue System Claims "relate[] in any way to" the factual predicates or issues raised in the Subscriber Actions, ignoring subsequent language in the release clarifying that claims "based solely on" certain ordinary course health benefits issues are not released. *See* Mot. at 9, 11-12 (citing Order at 15-16).  But the Court did no such thing.  As the Order makes clear, the Court properly examined *both* the "relating in any way" portion of the release *and* the clarifying "based solely on" clauses.

The passage that OMI highlights in its brief confirms this. *See* Mot. at 11.  There, the Court concluded that OMI's Blue System Claims in the Virginia Action are not "based solely on" ordinary course health benefits issues.  Order at 15.  The Court gave two reasons.  OMI focuses

5

on the first:  That OMI's Blue System Claims are "related to the Blue Card Program."  Mot. at 11 (citing Order at 15).  OMI argues that this language shows the Court erroneously conflated the "relating in any way to" and "based solely upon" phrases in the release.  *Id.*  Setting aside whether there is any material difference between these phrases as applied here (there is not), the Court went on to emphasize a second reason:  OMI's Blue System Claims "are ***premised at least in part on***" the BlueCard Program.  Order at 15-16 (emphasis added); *see id.* at 16 (reiterating that "to the extent any of the claims in . . . the Virginia Action are ***based in whole or in part on*** BlueCard (which was an issue in the Subscriber cases in the MDL), they are released") (emphasis added).[3] The Court explained that, as the parties had clarified in the Subscriber Settlement Release, a claim that is "based . . . in part on the factual predicates of the Subscriber Actions" cannot be "based solely on" ordinary course health benefits issues.  *Id.* at 16.  The Court's analysis was correct and consistent with the plain, unambiguous language of the Subscriber Settlement release.

OMI's remaining arguments interpreting the release language merely re-hash arguments that OMI raised in opposition to Anthem BCBS's original motion.  Such arguments are not grounds for reconsideration, even where OMI throws in additional cases.  *See Bell v. Integrated Health Servs., Inc.*, 2007 WL 433561, at *1 (S.D. Ala. Feb. 5, 2007) (denying motion for reconsideration where the motion regurgitated arguments already rejected and cited cases that were previously available but not used).  In any event, they are still wrong.

---

[3] *See also id.* at 11 ("OMI's First Amended Complaint states an ERISA claim and a breach of fiduciary duty claim that are ***each based, at least in part***, on allegations regarding the Blues' BlueCard program and fees and variance accounts associated with that Program."); *id.* at 16 ("[A]ny claims asserted in the Virginia Action that ***rely on*** this factual predicate from the MDL have been released.").

OMI continues to suggest, for example, that all ERISA claims are subject to a different, more stringent release standard. *See* Mot. at 8-9. As explained in Anthem BCBS's motion briefing, there is no carveout for all ERISA claims. *See* ECF No. 3305, at 2-4.

OMI also argues, once again, that the phrase "relating in any way to" allows a broader connection than the phrase "based on." *See* Mot. at 10-11; ECF No. 3299, Response to Anthem's Motion to Enforce the Court's Injunction, at 6-7 (making the same argument). As explained in Anthem BCBS's motion briefing, however, the release does not mention the phrase "based on." *See* ECF No. 3305, at 4-5. The actual language used in the release clarifies that claims "based . . . in part on" the factual predicates or issues raised in the Subscriber Action are not "based solely on" ordinary course health benefits issues. This "based . . . in part on" language is broader than "based on." *See id.* at 4-5 (citing *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 63 (2007)). OMI still has not cited any authority showing otherwise.[4]

More to the point, OMI still has not identified any material daylight between the phrase "based . . . in part on" and the phrase "relating in any way to" that is relevant here. As discussed further below, the Court correctly found that OMI's Blue System Claims are both "based in whole or in part on" and "related to the BlueCard Program." Order at 15-16. They are <u>not</u> "based solely on" ordinary course health benefits issues. *Id.* OMI's argument that its challenge to ESAs and the

---

[4] OMI again relies on the *Altria* case, which Anthem BCBS addressed in its Motion briefing. *See* ECF No. 3305, at 5 n.2 (addressing *Altria Group, Inc. v. Good*, 555 U.S. 70 (2008)). OMI also cites a case it failed to cite the first time around, *Mt. Vernon Fire Ins. Co. v. Creative Hous. Ltd*., 668 N.E.2d 404 (N.Y. 1996). *See* Mot. at 11. That case is equally irrelevant. It likewise analyzes the phrase "based on" in a difference context—insurance coverage—and does not purport to analyze the phrase "based . . . in part on" or any difference between that phrase and the phrase "relating in any way to." *See Mt. Vernon Fire*, 668 N.E.2d at 405 (finding that "based on" and "arising out of" are unambiguous and legally indistinguishable). Regardless, this newly cited case from 1996 does not warrant reconsideration. *See Bell*, 2007 WL 433561, at *1 (legal authority that was previously available is not a proper grounds for reconsideration).

BlueCard program are "based solely on" ordinary course health benefits issues "would render the qualified 'solely' use[d] in the key language meaningless." *Id.* at 16.

### B. The Court Correctly Found that the Released Claims Include OMI's Challenge to BlueCard Variance Accounts.

Unable to identify any clear legal error in the Court's interpretation of the release language, OMI again tries to create distance between its challenge to the BlueCard program in the Virginia Action and the factual predicates and issues raised in the Subscriber Actions. *See* Mot. at 12-13. The parties have already briefed this issue extensively, *see, e.g.* ECF No. 3299, at 10-15; ECF No. 3305, at 5-12, and the Court thoroughly considered the arguments. OMI "merely ask[s] the court for a reevaluation of an unfavorable ruling." *Drummond*, 2023 WL 10211544 at *1. That is not a valid basis for reconsideration. In any event, the Court correctly rejected OMI's arguments the first time.

The Subscriber Settlement Agreement defines the scope of relevant facts for purposes of applying the release. *See* ECF No. 3305, at 7-8 (collecting cases holding that when a case is settled, the settlement agreement language is the "determining factor" for identifying factual predicates or the nucleus of operative fact in a *res judicata* analysis). The SSA defines "factual predicates" to include, at a minimum, (1) "the Consolidated Amended Class Action Complaints filed in the Northern District of Alabama," and (2) "other filings therein." SSA § A.1.(uuu). The SSA also releases claims relating to or based in part on "any issue raised in any of the Subscriber Actions by pleading or motion." *Id.*

The Court correctly found, consistent with these definitions, that the factual predicates and issues raised in the Subscriber Actions include "the BlueCard Program." Order at 15. As the Court observed, in the Subscriber Actions "[t]he Blues defended the various challenged rules, including in particular Blue Card." *Id.* at 16. The record shows that the BlueCard Program was

the subject of extensive summary judgment briefing and discovery. *See id.* at 12-14 (collecting numerous record citations); *see also* ECF No. 3289 at 3-4, 10-11 (same). And the operative consolidated class action complaint challenged, among other things, BCBS "rules and regulations," ECF No. 2616, ¶ 446, and "BCBSA Membership Standards and Guidelines," *id.* ¶ 6. Those rules include the BlueCard program. ECF. 3289-1, ¶ 62 ("The Association requires all Blues to participate in the BlueCard program."). Moreover, the Subscriber Class sought specific discovery into "accounting and cash management practices among The Blues as they relate to . . . the BlueCard program," which would include variance accounts. *See* ECF No. 662-18, Subscriber and Provider Plaintiffs' Jan. 20, 2025 Requests for Production to All Defendants, at 26.

OMI urges (again) a narrow interpretation of the factual predicates of the Subscriber Actions, contrary to the settling parties' express intent "that the releases in [the SSA] be interpreted and enforced broadly." Order at 16. OMI first repeats its argument that the relevant facts in the Subscriber Actions are limited to "BlueCard's procompetitive and anticompetitive traits," which OMI allegedly does not challenge in the Virginia Action. Mot. at 13. But OMI again confuses *legal* issues with *factual* predicates. As Anthem BCBS explained in its motion briefing, the release is not limited to particular legal theories, such as antitrust claims focused on procompetitive or anticompetitive effects. *See, e.g.*, ECF 3305, at 6-7, 10-11; ECF No. 3289, at 12-13; *see also Thomas v. Blue Cross and Blue Shield Ass'n*, 594 F.3d 814, 822 (11th Cir. 2010) ("It is irrelevant that the [new claims] depend on a different legal theory than the claims asserted in the class action . . . ."). It applies to "any and all . . . causes of action." SSA § A.1.(uuu). The fact that OMI's ERISA and state-law claims challenging the BlueCard Program do not require OMI to argue about procompetitive or anticompetitive effects is therefore beside the point.

9

OMI also argues that the factual predicates or issues raised in the Subscriber Action are limited to BlueCard fees, not other aspects of the BlueCard Program.  Mot. at 12-13.  That is wrong.  As noted above, this Court correctly found that the BlueCard Program itself, not only related fees, was among the factual predicates and issues raised in the Subscriber Actions, based on extensive record evidence.  *See* Order at 12-16.  OMI's strained attempt to distinguish between BlueCard administrative costs labeled as "fees" and the administrative costs of BlueCard variance accounts, including alleged balances that are not returned upon termination of a customer's contract, is therefore irrelevant.  And even if it were relevant, OMI's own allegations show that BlueCard "fees" may include variance account administrative costs.  *See* Compl. ¶ 63 (alleging Anthem BCBS "granted host Blues complete discretion **with respect to the fees** they charge for each BlueCard claim by Plan members.  **For instance,** Defendant permitted host Blues to charge the Plan more than the providers even billed for the treatment or prescription.") (emphasis added).

OMI thus cannot identify any "clear error" in the Court's correct finding that the BlueCard Program was among the factual predicates and issues raised in the Subscriber Actions.  Further, OMI's claims in the Virginia Action are clearly both "related to" and "based in part on" the BlueCard Program.  Indeed, OMI directly challenges the BlueCard Program itself.  *See* ECF No. 3305, at 10-12.  As OMI acknowledges, BCBSA rules require Anthem BCBS "to participate in the BlueCard Program," and variance accounts are part of the "operation of the BlueCard Program."  Compl. ¶¶ 62, 65; *see also id.* Ex. A, Inter-Plan Arrangements Schedule (disclosing that variance accounts are among "[t]he financial terms of the BlueCard Program").  Variance accounts are "maintained by the Host Blue," not Anthem BCBS.  *Id.* at Ex A, Inter-Plan Arrangements Schedule.  And the Host Blue, not Anthem BCBS, determines whether to use estimated prices or other methods to process large volumes of claims that result in "small amounts"

10

of variance account balances that are applied to future claims. *Id.* OMI's claims in the Virginia Action are therefore not "based solely on" Anthem BCBS's alleged ordinary course health benefits overpayments, as OMI contends. Mot. at 13. Rather, OMI's claims are "related to" and "based . . . in part on" the BlueCard Program itself. Those claims are plainly released.

## CONCLUSION

For the foregoing reasons, the Court should deny OMI's baseless motion for clarification and motion for reconsideration of the Court's April 22 Order.


Respectfully submitted this 19th day of May, 2025.

/s/ *E. Desmond Hogan*
Craig A. Hoover
E. Desmond Hogan
Justin Bernick
Elizabeth Jose
HOGAN LOVELLS US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004
Tel: (202) 637-5600
Fax: (202) 637-5901
craighoover@hoganlovells.com
desmond.hogan@hoganlovells.com
justin.bernick@hoganlovells.com
elizabethjose@hoganlovells.com

Cavender C. Kimble
BALCH & BINGHAM LLP
1901 6th Avenue North, Suite 1500
Birmingham, AL 35203-4642
Tel: (205) 226-3437
Fax: (205) 488-5860
ckimble@balch.com

*Counsel for Anthem Health Plans of Virginia, Inc. d/b/a Anthem Blue Cross and Blue Shield*

11

**CERTIFICATE OF SERVICE**

I hereby certify that on May 19, 2025, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ *E. Desmond Hogan*
E. Desmond Hogan
HOGAN LOVELLS US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004
Tel: (202) 637-5600
Fax: (202) 637-5901
desmond.hogan@hoganlovells.com

*Counsel for Anthem Health Plans of Virginia, Inc. d/b/a Anthem Blue Cross and Blue Shield*

12