FILED

2025 May-27  PM 02:45
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| IN RE: BLUE CROSS BLUE SHIELD ANTITRUST LITIGATION<br><br>(MDL No. 2406) | Master File No. 2:13-cv-20000-RDP |

**REPLY IN SUPPORT OF ECF 3315, MOTION FOR CLARIFICATION AND PARTIAL RECONSIDERATION OR MODIFICATION OF INJUNCTION ORDER, ECF 3309**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION ............................................................................................................1

ARGUMENT AND AUTHORITIES..................................................................................2

I.      Case Law Controlling the Release's Scope Supports OMI's Request for Clarification and Reconsideration..................................................................................2

II.    Request for Clarification: The Release Should Not Bar Legal Claims Based on Administration Allegations—to the Extent they Challenge Anthem's Administration of Healthcare Claims Originating from Providers in Host Blue Networks Under the BlueCard Program—Merely Because They Implicate "BlueCard." ..............................3

       A.  Clarification is Appropriate ...................................................................................3

       B.  The Requested Clarification Adheres to the Release Language and the Eleventh Circuit's Interpretation of the Release ..................................................................5

       C.  A Comparison of the Antitrust Action Subscriber Claims and the Virginia Action Claims Reveals a Lack of Commonality Even as to Challenges to Anthem's Administration of Healthcare Claims it Paid Under the BlueCard Program ...........6

III.   OMI Requests Reconsideration of Ruling on Variance-Account Allegations .............9

PRAYER...........................................................................................................................10

CERTIFICATE OF SERVICE ..........................................................................................12

# TABLE OF AUTHORITIES

*Cases*

*AngioScore, Inc. v. TriReme Med., LLC,*
666 Fed. App'x 884 (Fed. Cir. 2016) ...............................................................5, 8, 10

*Behenna v. Blue Cross Blue Shield Ass'n,*
144 S. Ct. 2686 (2024)............................................................................................2

*CICCorp., Inc. v. AIMTech Corp.,*
32 F. Supp. 2d 425 (S.D. Tex. 1998) .....................................................................9

*Doe v. Baker,*
299 Va. 628, 857 S.E.2d 573 (2021).......................................................................7

*Home Depot U.S.A., Inc. v. Blue Cross Blue Shield Ass'n,*
144 S. Ct. 2687 (2024)............................................................................................2

*In re Blue Cross Blue Shield Antitrust Litig. MDL 2406,*
85 F.4th 1070 (11th Cir. 2023) ...............................................2, 3, 5, 7, 8, 10

*In re Blue Cross Blue Shield Antitrust Litig.,*
308 F. Supp. 3d 1241 (N.D. Ala. 2018)..............................................................6, 10

*Jacobs v. Tempur-Pedic Int'l, Inc.,*
626 F.3d 1327 (11th Cir. 2010) .........................................................................6, 10

*Matarazzo v. Friendly Ice Cream Corp.,*
70 F.R.D. 556 (E.D.N.Y. 1976) .............................................................................9

*Palmer v. Hosp. Auth. of Randolph Cty.,*
22 F.3d 1559 (11th Cir. 1994) ...............................................................................5

*Peters v. Aetna Inc.,*
2 F.4th 199 (4th Cir. 2021) ....................................................................................6

*Prolite Bldg. Supply, LLC v. MW Manufacturers, Inc.,*
891 F.3d 256 (7th Cir. 2018) .................................................................................8

*Ray v. Tennessee Valley Auth.,*
677 F.2d 818 (11th Cir. 1982) ...............................................................................8

*Ulloa v. QSP, Inc.,*
271 Va. 72, 624 S.E.2d 43 (2006)..........................................................................7

*United Subcontractors, Inc. v. Rust Consulting, Inc.*,
No. 16-CV-04735-AT, 2017 WL 3449612 (N.D. Ga. Aug. 2, 2017)....................................6, 9

*Walker v. THI of New Mexico at Hobbs Ctr.*,
803 F. Supp. 2d 1287 (D.N.M. 2011) .......................................................................................9


**Statutes**

29 U.S.C. § 1002 ........................................................................................................................6

29 U.S.C. § 1104.....................................................................................................................6, 10

29 U.S.C. § 1109........................................................................................................................6

29 U.S.C. § 1113........................................................................................................................8

**INTRODUCTION**

OMI seeks clarification of the Court's Order.[1] Allegations not expressly condemned by the Order, 1AC paragraphs 68-97, 100 (**Administration Allegations**), challenge Anthem's administration of OMI's healthcare claims. The Order does not clearly address Administration Allegations to the extent they challenge Anthem's administration of BlueCard healthcare claims for OMI. OMI thus seeks clarification on a single point: *Does the Release bar claims based on Administration Allegations to the extent challenged healthcare claims happen to stem from treatment by providers in host Blues' networks merely because the "BlueCard program" provided the framework for such claims?* This issue implicates approximately half of the medical claims at issue. The Order does not clearly answer this question because it employs open-ended "including" clauses to identify barred allegations and refers to claims based in any way on "BlueCard" generally as barred without reference to guideposts. ECF 3309 at 16-17. Law controlling the Release's scope supports answering the question "no." Anthem seemingly concedes this, ECF 3321 at 3, but it opposes clarity in favor of uncertainty that will spawn needless litigation.

With respect to reconsideration, Anthem argues there is no clear legal error to address. OMI disagrees. The ERISA claim relies solely on Anthem's misconduct as an ERISA fiduciary to the Plan. There is simply no "based on," but-for causal relationship between the ERISA claim and predicate facts and issues in the Antitrust Action. Nor do the ERISA claim and antitrust claims share a "common nucleus of operative fact," which defines the Release's boundaries. OMI therefore seeks reconsideration on whether the Release bars ERISA claims to the extent they seek to recover Anthem's overpayments of healthcare claims that were retained in variance accounts.

---

[1] With the exception of defined terms added by this Reply, all defined terms such as "Order" are incorporated from OMI's Motion, ECF 3315.

## ARGUMENT AND AUTHORITIES

I.    CASE LAW CONTROLLING THE RELEASE'S SCOPE SUPPORTS OMI'S REQUEST FOR CLARIFICATION AND RECONSIDERATION.

The Release's use of "based"—instead of "relate"—to define the scope of Release exceptions demonstrates that a legal claim is not barred by the Release unless there is a direct, but-for relationship between that claim and the factual bases of the Antitrust Action's antitrust claims. Mot., ECF 3315 at 8-11, 13-14 (applying New York law). Neither the variance-account allegations nor the Administration Allegations support legal claims that are "based" in whole or part on excessive ASO fees, BlueCard fees, or BlueCard's effects on competition. Instead, they are all "based" *solely* on Anthem's administration of healthcare claims for OMI.

Further, the Eleventh Circuit defined the scope of the Release as barring legal claims only if they "arise from the common nucleus of operative fact." *See* Mot., ECF 3315 at 9, 12. The Eleventh Circuit first summarized the core allegations supporting the Antitrust Action:

> [T]he subscribers alleged that Blue Cross allocated geographic territories, limited member plans' competition by mandating a minimum percentage of business under the Blue Cross brand for each member doing business inside and outside their territories, restricted the right of member plans to be sold to companies outside the Association, and agreed to other ancillary restraints on competition.

*In re Blue Cross Blue Shield Antitrust Litig. MDL 2406*, 85 F.4th 1070, 1083 (11th Cir. 2023), *cert. denied Behenna v. Blue Cross Blue Shield Ass'n*, 144 S. Ct. 2686 (2024) and *cert. denied Home Depot U.S.A., Inc. v. Blue Cross Blue Shield Ass'n*, 144 S. Ct. 2687 (2024) (**BCBS**).

The Eleventh Circuit held, "The release does not extend beyond claims arising from the common nucleus of operative fact." *Id.* at 1091. It added, "The settlement agreement limits the release to claims arising from the factual predicates of the subscriber action." *Id*. The court recounted statements by this Court regarding ERISA: "But as the district court explained, nothing in the settlement agreement changes ERISA rights: the order approving the settlement states that

'all ERISA duties still apply' and that 'all ERISA fiduciaries must comply with those duties.' Plans . . . retain their rights to sue under ERISA." *Id.* at 1101.

Concluding the Release did not violate the "identical-factual-predicate doctrine," the court stated, (i) "In its review of a settlement, a court may permit the release of a claim *based on the identical factual predicate* as that underlying the claims in the settled class action" and (ii) "Under the identical-factual-predicate doctrine, a settlement agreement may release claims *that share a common nucleus of operative fact* with the claims in the underlying litigation." 85 F.4th at 1090 (emphasis added). OMI's legal claims at issue here arise from Anthem's administration of particular healthcare claims in a manner that violates Anthem's fiduciary duties and wastes Plan money. Thus, the relevant question is whether such legal claims arise from a "common nucleus of operative fact" with the Antitrust Action merely because "BlueCard" has some remote connection to those claims.

II. **REQUEST FOR CLARIFICATION: THE RELEASE SHOULD NOT BAR LEGAL CLAIMS BASED ON ADMINISTRATION ALLEGATIONS—TO THE EXTENT THEY CHALLENGE ANTHEM'S ADMINISTRATION OF HEALTHCARE CLAIMS ORIGINATING FROM PROVIDERS IN HOST BLUE NETWORKS UNDER THE BLUECARD PROGRAM—MERELY BECAUSE THEY IMPLICATE "BLUECARD."**

### A. Clarification is Appropriate.

With palpable irony, Anthem identifies the precise conflict by conceding that the Order does not bar a legal claim "solely because it involves a reimbursement claim that was sent from a host plan to Anthem [] through the BlueCard program" and then arguing the 1AC is too vague to provide clarification on this very point.[2] Anthem strategically opposes clarification, and that opposition evinces a ripened dispute on this issue.

Anthem cites the Court's Final Approval Order, ECF 2931 at 56 n.22, for the proposition

---

[2] Notably, Anthem stopped short of conceding *the Release* would not bar such claims. Resp., ECF 3321 at 3. This further highlights the need to resolve the issue now.

that the issue is not ripe. Resp., ECF 3321 at 2-3. But that footnote made clear the proposition lasted only "[u]ntil a particular claim is asserted." That time is now. Anthem administered BlueCard healthcare claims for OMI when host Blues forwarded claims from their network providers to Anthem for reimbursement. 1AC, ECF 3315-1 ¶ 60. Thus, in its capacity as Plan fiduciary, Anthem administered these claims and paid them with Plan money. *Id.* ¶¶ 59-60, 65, 68-97. The Administration Allegations apply equally to Anthem's administration of healthcare claims stemming from its own network and healthcare claims originating from host Blues' networks under the BlueCard program. **Ex. 1** (sample BlueCard healthcare claims, in redacted format approved by Anthem's counsel, representing duplicate payments by Anthem). The claims data which Anthem generated, reviewed, and provided to OMI demonstrates that potentially half—if not more—of the healthcare claims challenged by the Administration Allegations stemmed from host Blue networks under the BlueCard program. Thus, the issue is ripe for clarification.

Seizing on a footnote in the Order, Anthem also argues clarification is not "practicable" because the 1AC is a "shotgun" pleading "that does not clearly identify which combinations of allegations correspond to which legal claims." ECF 3321 at 3. Apparently having no problem understanding the 1AC, Anthem did not raise a "shotgun pleading" argument in its motion to dismiss. Virginia Action ECF 34.[3] Anthem's curious confusion before this Court should be disregarded. The Administration Allegations make clear they apply to *all* healthcare claims administered by Anthem—including claims forwarded from host Blue network providers for treatment of OMI employees outside of Virginia pursuant to the BlueCard program.

---

[3] Further, OMI disagrees. For example, under the ERISA cause of action, OMI identifies specific paragraphs in the 1AC that establish the scope of OMI's fiduciary status. 1AC, ECF 3315-1 ¶ 104. The 1AC identifies the specific ERISA duties that Anthem violated with citation to the statutes. *Id.* ¶ 107-08. Then, OMI listed in short form the factual allegations showing how Anthem violated those fiduciary duties with targeted citations to the detailed factual bases. *Id.* ¶ 109.

**B. The Requested Clarification Adheres to the Release Language and the Eleventh Circuit's Interpretation of the Release**.

Causes of action based on the Administration Allegations—even those involving Anthem's overpayment of healthcare claims submitted through the BlueCard program—lack a "based on," causal connection with the factual predicates of the Antitrust Action. *See* Mot., ECF 3315 at 8-14 (analyzing the issue with respect to variance-account allegations). Because OMI's Motion details how New York law would define the Release's scope, and because the Eleventh Circuit's interpretation of the Release likely controls at this juncture, this Reply focuses on the scope of the Release according to the circuit court in *BCBS*. *Id.* at 9, 12; Resp., ECF 3321 (Anthem not addressing Eleventh Circuit's holding but nevertheless arguing for a broader scope of the Release than that holding can support).

The legal claims based on Administration Allegations do not share a common nucleus of operative fact with the Antitrust Action—even if they involve administration of healthcare claims originating from host Blues under the BlueCard program. *See BCBS*, 85 F.4th at 1090. "Generally, claims arise out of a common nucleus of operative fact when they 'involve the same witnesses, presentation of the same evidence, and determination of the same, or very similar, facts.'" *AngioScore, Inc. v. TriReme Med., LLC*, 666 Fed. App'x 884, 887 (Fed. Cir. 2016) (quoting *Palmer v. Hosp. Auth. of Randolph Cty.*, 22 F.3d 1559, 1563–64 (11th Cir. 1994)). Legal claims that merely "relate generally" to one another do not satisfy this standard. *Id.* In *AngioScore*, the plaintiff sued corporate defendants for patent infringement by an angioplasty product and added state-law claims based on a board member's usurpation of plaintiff's business opportunity with that same product. *Id.* at 885-86. In concluding there was "no common nucleus of operative fact" between the federal patent claim and the state-law claims, the court focused on the distinct elements of the claims and differences in the evidence required to prove them. *Id.* at 887-88. It was

not enough that the claims involved the same product. *Id.*

Setting Anthem's disclaimers aside, its overbroad interpretation of the Release foreshadows its argument that the Release bars legal claims based on Administration Allegations to the extent they implicate "BlueCard" in any way. Resp., ECF 3321 at 8 ("The Court correctly found . . . that the factual predicates and issues raised . . . include 'the BlueCard Program.'"); *see also* ECF 3309 at 16-17. But mere reference to the "BlueCard program" does not mean a cause of action arises from the same nucleus of operative fact from which the antitrust claims arose. The "common nucleus" test is inexact, but it focuses on "the facts necessary to prove the claims." *See United Subcontractors, Inc. v. Rust Consulting, Inc.*, No. 16-CV-04735-AT, 2017 WL 3449612, at *5 (N.D. Ga. Aug. 2, 2017). That connection of "facts necessary to prove the claims" is missing.

C. **A Comparison of the Antitrust Action Subscriber Claims and the Virginia Action Claims Reveals a Lack of Commonality Even as to Challenges to Anthem's Administration of Healthcare Claims it Paid Under the BlueCard Program.**

For the Antitrust Action, the relevant issues focused on (i) the existence of product and geographic antitrust markets; (ii) the possession of adequate market power; (iii) harm to competition in the antitrust markets; (iv) existence of agreements or other combinations that injured competition; and (v) the existence of efforts to monopolize. *See generally* ECF 2616 at 121-24; *BCBS*, 308 F. Supp. 3d 1241, 1258-1268 (N.D. Ala. 2018); *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1336 (11th Cir. 2010). In stark contrast, ERISA claims relying on Administration Allegations are based on the fiduciary relationship between OMI and Anthem, and require OMI to prove Anthem (i) wielded discretionary control over Plan management or exercised any control over Plan assets under the ASA or in practice; (ii) breached duties under ERISA to act loyally, solely for the Plan's benefit, prudently, and in compliance with Plan documents; and (iii) caused the Plan losses. 29 U.S.C. §§ 1002(21)(A), 1104(a)(1), 1109(a); *Peters v. Aetna Inc.*, 2 F.4th 199, 228 (4th Cir. 2021). This comparison highlights a lack of commonality between the

6

essential factual elements of the ERISA claim in the Virginia Action and the antitrust claims in the Antitrust Action.[4] Claims based on the Administration Allegations should be expressly permitted to proceed even to the extent they are based on Anthem's administration of healthcare claims that originate from host Blue network providers under the BlueCard program. Resp., ECF 3321 at 3, 3 n.2.

The relevant evidence in the respective actions likewise lacks commonality. For example, evidence in the Virginia Action will show Anthem acted as a fiduciary and harmed OMI in its administration of the Plan through misconduct including (i) paying providers over 100% of billed amounts, 1AC, ECF 3315-1 ¶¶ 69-70; (ii) making duplicate payments on healthcare claims with Plan money, *id.* ¶¶ 71-72; and (iii) paying for services not rendered, *id.* ¶ 86. This will focus on the ASA, the level of control Anthem had on the Plan, and claims data. There is no need for evidence that the Blues restrained competition in certain product markets. *See BCBS*, 85 F.4th at 1083.

Even the harm is different. The harm in the Virginia Action is losses to the Plan caused by Anthem's mismanagement of the Plan and its assets. *See, e.g.*, 1AC, ECF 3315-1 ¶ 112. The relevant damages in the antitrust case were essentially excess "ASO fees"—not challenged at all in the Virginia Action—paid by self-funded subscribers due to restraints on competition. ECF 2616 ¶ 3.

Note also the different time frames covered by the Release and the Virginia Action. Where

---

[4] The facts necessary to prove OMI's state-law claims of breach of contract, fraud, breach of fiduciary duty, and negligence likewise share nothing in common with the facts necessary to prove the antitrust claims in the Antitrust Action. *See, e.g.*, *Ulloa v. QSP, Inc.*, 271 Va. 72, 79, 624 S.E.2d 43, 48 (2006) (essential elements of contract claim); *Doe v. Baker*, 299 Va. 628, 656, 857 S.E.2d 573, 590 (2021) (misleading concealment is actionable "when a confidential or fiduciary relationship exists between the parties or when disclosure would be necessary to clarify information already disclosed, which would otherwise be misleading").

the "settlement class period" for the self-funded plans is September 1, 2015, through October 16, 2020, *BCBS*, 85 F.4th at 1084, the Virginia Action covers misconduct spanning from 2017 through OMI's termination of Anthem in 2023. 1AC, ECF 3315-1 ¶¶ 33, 148, 158-161; 29 U.S.C. § 1113. It seems unlikely that claims based on misconduct occurring outside the settlement class period share a common nucleus of operative fact. *See BCBS*, 85 F.4th at 1091.

The fact that both cases implicate the "BlueCard program" does not mean the claims are based on a common nucleus of operative fact. *See, e.g.*, *AngioScore,* 666 Fed. App'x at 887-88. The Administration Allegations will implicate the BlueCard program merely because some of the healthcare claims at issue stem from healthcare provided by host Blue networks under the BlueCard program. But it is *Anthem's* administration of those healthcare claims for OMI and the extent to which *Anthem* misappropriated Plan assets in payment of those claims that drives the Virginia Action—not whether the BlueCard program increased "ASO fees" or "access fees," or restrained trade. ECF 3309 at 12.

The focus of the common-nucleus question is on identity of witnesses, evidence, and essential facts. *AngioScore*, 666 Fed. App'x at 887. Any overlap between the antitrust claims and Virginia Action claims provided by mere reference to "BlueCard" is insufficient. *See id.* at 887-88; *Prolite Bldg. Supply, LLC v. MW Manufacturers, Inc.*, 891 F.3d 256, 258-59 (7th Cir. 2018) (while acknowledging respective claims by dealer and homeowners stemmed from same defective windows, holding that connection insufficient to establish "common nucleus" because the dealer sought to prove, under one contract, the windows manufacturer did not remedy dealer customers' complaints, and homeowners, under separate warranties, sought remedies aimed at eliminating "drafts and moisture"); *Ray v. Tennessee Valley Auth.*, 677 F.2d 818, 820-21, 821-22, 826 (11th Cir. 1982) (where employee lost on the merits of his employment claim, holding legal malpractice

8

claim based on that loss did not arise from "common nucleus of operative fact" even though it arose from the employment litigation because malpractice claim required different "facts necessary to prove the claim"); *United Subcontractors*, 2017 WL 3449612 at *1, *3, *5 (where class member in settled class action sued settlement claims administrator for its failure to provide proper notice, rejecting argument that claim's relationship with the settled antitrust case satisfied "common nucleus" test merely because claim against administrator would not exist but for the antitrust action).[5]

OMI therefore requests clarification that the Release does *not* bar claims based on Administration Allegations to the extent challenged healthcare claims stem from treatment by providers in host Blues' networks merely because the "BlueCard program" provided the framework for such claims?

### III.    OMI REQUESTS RECONSIDERATION OF RULING ON VARIANCE-ACCOUNT ALLEGATIONS.

As demonstrated by OMI's Motion, the variance-account allegations at issue here seek to recover overpayments by *Anthem* on healthcare claims *Anthem* administered and then left in variance accounts retained by host Blues. ECF 3315 at 12-13. This theory shares little, if any, connection to the Antitrust Action compared to allegations that the BlueCard program increased OMI's fees. Order at 11.  But Anthem attempts to drag the variance-account theory within the Release's scope by emphasizing host Blues' involvement with the variance accounts. Resp., ECF

---

[5] *See also CICCorp., Inc. v. AIMTech Corp.*, 32 F. Supp. 2d 425, 428, 430-31 (S.D. Tex. 1998) (though related, state-law claims did not arise from common nucleus of operative fact because the federal claims could not be established with the same evidence that supported the state-law claims); *Walker v. THI of New Mexico at Hobbs Ctr.*, 803 F. Supp. 2d 1287, 1324 (D.N.M. 2011) (employee's employment claim and employer's counterclaim based on employee's prosecution of employment claim did not share common nucleus of operative fact); *Matarazzo v. Friendly Ice Cream Corp.*, 70 F.R.D. 556, 560 (E.D.N.Y. 1976) ("[T]he nucleus of operative facts applicable to the antitrust claim is quite different from the nucleus of operative facts applicable to the common law claim, which is not unnatural since one is a tort claim and the other is an antitrust claim.").

3321 at 10-11. But even if host Blues—and the "BlueCard program"—may have some involvement in Anthem's overpayment of claims and effective transfer of Plan funds to variance accounts, that connection alone is insufficient to support a finding that the Antitrust Action and legal claims based on variance-account allegations arise from a common nucleus of operative fact. *See, e.g.*, *AngioScore*, 666 Fed. App'x at 887-88; *see also* Mot., ECF 3315 at 8-14.

Again, the Antitrust Action necessitated evidence and findings that (i) a market existed, (ii) the Blues had market power, (iii) the Blues unreasonably restrained trade through combinations and attempts to monopolize, and (iv) harm to competition resulted in the form of excess ASO fees. *See generally*, ECF 2616 at ¶ 3, pp. 121-24; *BCBS*, 308 F. Supp. 3d at 1258-68; *Jacobs*, 626 F.3d at 1336. ERISA claims based on variance-account allegations, on the other hand, require proof that Anthem (i) failed to manage and administer the Plan and its assets loyally and prudently; (ii) violated those duties by overpaying healthcare claims and allowing host Blues to retain overages in variance accounts; and (iii) committed this misconduct as a fiduciary. *See* Mot., ECF 3315 at 12-13 (citing 1AC); 1AC, ECF 3315-1 ¶ 98; 29 U.S.C. § 1104(a)(1).

Because OMI's ERISA claim based on variance accounts does not arise from a "common nucleus of operative fact" driving the Antitrust Action, OMI requests that the Court reconsider its Order in this respect. *See BCBS*, 85 F.4th at 1090; *AngioScore,* 666 Fed. App'x at 887.

## **PRAYER**

For these reasons, OMI respectfully requests that the Court (i) clarify its Order to provide that the Release does not bar causes of action based on the Administration Allegations merely because they challenge Anthem's administration of healthcare claims originating from host Blue providers under the BlueCard program and (ii) reconsider its previous ruling that the Release bars OMI's ERISA claim to the extent it seeks to recover overpayments on healthcare claims by Anthem that were transferred to variance accounts.

10

Dated: May 27, 2025

Respectfully submitted,

*/s/ Benjamin Major*
Benjamin Major
Texas State Bar No. 24074639
*Admitted pro hac vice*
Kyle D. Schnitzer
Texas State Bar No. 24083811
*Admitted pro hac vice*
THE LANIER LAW FIRM, P.C.
10940 W. Sam Houston Pkwy N.
Suite 100
Houston, Texas 77064
Telephone: (713) 659-5200
Facsimile: (713) 659-2204
Ben.Major@lanierlawfirm.com
Kyle.Schnitzer@lanierlawfirm.com

Devan L. Byrd
BYRD FIRM, PLLC
Post Office Box 59133
Birmingham, AL 35259
Telephone: (205) 882-5220
Devan@thebyrdfirm.com


*Counsel for Owens & Minor, Inc. and Owens & Minor Flexible Benefits Plan*

11

## CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2025, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record. I further certify that a true and correct copy of the foregoing was served via electronic mail and Federal Express overnight delivery on the following:

HOGAN LOVELLS US LLP
Craig A. Hoover
E. Desmond Hogan
Justin Bernick
Elizabeth Jose
Columbia Square
555 13th Street, N.W.
Washington, DC 20004
Houston, Texas 77064
Telephone: (202) 637-5600
Facsimile: (202) 637-5910
Craig.Hoover@hoganlovells.com
Desmond.Hogan@hoganlovells.com
Justin.Bernick@hoganlovells.com
Elizabeth.Jose@hoganlovells.com

BALCH & BINGHAM LLP
Cavender C. Kimble
1901 6th Avenue North, Suite 1500
Birmingham, AL 35203-4642
Telephone: (205) 226-3437
Facsimile: (205) 488-5860
CKimble@balch.com

*Counsel for Anthem Health Plans of Virginia,*
*Inc. d/b/a Anthem Blue Cross and Blue Shield*

*/s/ Benjamin Major*
Benjamin Major

12