FILED

2025 May-28  PM 02:35
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **IN RE:  BLUE CROSS BLUE SHIELD ANTITRUST LITIGATION (MDL No. 2406)** | **Master File No. 2:13-CV-20000-RDP** **This document relates to the Subscriber Track**. . |

## ORDER

This matter is before the court on OMI's[1] Motion for Clarification and Partial Reconsideration or Modification of Injunction Order. (Doc. # 3315). The Motion has been fully briefed. (Docs. # 3321, 3326). For the reasons discussed below, the Motion is due to be granted in part and denied in part.[2]

In the April 22, 2025 Memorandum Opinion and Order Regarding Anthem Health Plans of Virginia's Motion to Enforce Injunction, which is subject of the current Motion, the court carefully analyzed (1) the Release language from the Subscriber Settlement Agreement that was incorporated into the Final Order approving the Subscriber Settlement (Docs. # 2610-2 at 19 (¶ uuu); # 2931 at 88), and (2) OMI's First Amended Complaint (Doc. # 3289-1). (Doc. # 3309). As the court explained:

1. The relevant question was whether OMI's claims in the Virginia Action relate "in any way to: (i) the factual predicates of the Subscriber Actions" or "(ii) any issue raised in any of the Subscriber Actions by pleading or motion," because those claims are encompassed within the definition of "Released Claims" in the Subscriber Settlement

---

[1] Owens & Minor, Inc. and Owens & Minor Flexible Benefits Plan.

[2] On May 5, 2025, the court granted the current motion in part solely as to OMI's request to stay the compliance deadline in the court's April 22, 2025 Memorandum Opinion and Order. (Docs. # 3309; # 3316). The court stayed the compliance deadline pending the court's resolution of the merits of the current Motion (Docs. # 3315, 3316).

Agreement (Doc. # 2610-2 at 19 (¶ uuu)); and

2. Because of the allegations of OMI's First Amended Complaint in the Virginia Action related to the BlueCard Program[3], which was an issue raised in the Subscriber Actions, and the fact that two of OMI's claim are premised at least in part on those facts, to the extent those claims were premised on BlueCard, they were released.

(Doc. # 3309 at 12-17). More specifically, the court held that "any claims in the Virginia Action 'based in any way' on BlueCard or the allegations of paragraphs 56-65 of the First Amended Complaint, including paragraphs 98, 109(xv), and 141(xv), are RELEASED," and it enjoined OMI from further prosecuting claims "based in any way" on BlueCard or those paragraphs of the First Amended Complaint (*Id*. at 16-17). And, the court provided instructions on how OMI could come into compliance with the court's order: "OMI SHALL either (1) file an amended complaint omitting the allegations of paragraphs 56-65 of the First Amended Complaint, and any claims based on those allegations, including paragraphs 98, 109(xv), and 141(xv), or (2) file a motion asking the district court in E.D. Va. Case No. 3:24-cv-00820-REP to strike those allegations and claims." (*Id*. at 17).

OMI argues that the court's Order requires clarification on the following question: "Does the Release bar claims based on those allegations to the extent some of those healthcare claims stem from treatment by providers in host Blues' networks pursuant to the BlueCard program?" (Doc. # 3315 at 8). OMI also contends that the court should reconsider its decision because of "distinctions between 'based on' and 'relate to[.]'" (*Id*. at 13). In its Reply, OMI analyzes whether there is "commonality" between its claims and those claims asserted in the Subscriber action (*see, e.g*., Doc. # 3326 at 11), but that argument ignores the language of the Release at issue.

---

[3] Anthem notes that OMI's First Amended Complaint could also be read to challenge ESAs, another factual predicate of the Subscriber Actions. (Docs. # 3321 at 10; # 3289-1 at ¶ 58)

## I.    Clarification

Again, the focus of the inquiry regarding the Release must be on its terms. Released claims include those that are "***based upon, arising from, or relating in any way to***: (i) the factual predicates of the Subscriber Actions [] or [] any issue raised in any of the Subscriber Actions by pleading or motion." (Doc. # 3309 at 3 (citing Doc. # 2610-2 at 19-20, 48-49) (emphasis added)). Next, the Release provides an exception for:

> claims, however asserted, that arise in the ordinary course of business and are ***based solely*** on (i) whether a particular product, service or benefit is covered by the terms of a particular Commercial Health Benefit Product, (ii) seeking resolution of a benefit plan's or a benefit plan participant's financial responsibility for claims, based on either the benefit plan document or statutory law, or (iii) challenging a Releasee's administration of claims under a benefit plan, based on either the benefit plan document or statutory law.

(*Id.*) (emphasis added). Then, the Release reiterates that "[a]ny claim, however asserted, [] challenging a Releasee's administration of claims under a benefit plan, ***based in whole or in part on the factual predicates of the Subscriber Actions or any other component of the Released Claims*** discussed in this Paragraph, ***is released***." (*Id.*) (emphasis added).

The Release itself, and the following language from Anthem's Response to OMI's Motion provide all the clarification that is needed: "To be clear, Anthem BCBS does not contend that the Court's injunction bars a legal claim solely because it involves a reimbursement claim that was sent from a host plan to Anthem BCBS through the BlueCard program." (Doc. # 3321 at 6). Stated differently, a "claim is not released solely because the relevant reimbursement claim was sent from a host plan to Anthem BCBS through the BlueCard program." (*Id.*, n.2). However, to the extent that a claim challenges aspects of the BlueCard Program, like the ones specifically identified by the court in OMI's First Amended Complaint, it is released.

## II.    Reconsideration

The court has noted before that the reconsideration of decisions is not, and should not be, the norm:

> Motions for reconsideration are within "the sound discretion of the district judge." *Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 805–06 (11th Cir. 1993); *see also Chapman v. AI Transport*, 229 F.3d 1012, 1023-24 (11th Cir. 2000). However, a moving party must do more than merely ask the court for a reevaluation of an unfavorable ruling. "A motion to reconsider is only available when a party presents the court with evidence of an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or manifest injustice." *Summit Medical Center of Alabama, Inc. v. Riley*, 284 F. Supp. 2d 1350, 1355 (M.D. Ala. 2003); *see also Fox v. Tyson Food, Inc*., 2007 WL 6477624, at *1 (N.D. Ala. Aug. 31, 2007) (same). However, reconsideration is "an extraordinary remedy which must be used sparingly." *Jackson v. Wesley*, 2011 WL 2144696, *1 (M.D. Fla. May 31, 2011); *see also Garrett v. Stanton*, 2010 WL 320492, *2 (S.D. Ala. 2010) (quoting *Gougler v. Sirius Products, Inc*., 370 F. Supp. 2d 1185, 1189 (S.D. Ala. 2005) ("In the interests of finality and conservation of scarce judicial resources, reconsideration of an order is an extraordinary remedy and is employed sparingly.")). While a court may reconsider a prior order, "courts should be loath to do so in the absence of extraordinary circumstances." *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1370 (11th Cir. 2003) (quoting *Christianson v. Colt Industries Operating Corp*., 486 U.S. 800, 817 (1988)).

*Drummond Co., Inc. v. Collingsworth*, 2023 WL 10211544, at *1 (N.D. Ala. Nov. 30, 2023).

OMI argues that the court should reconsider its decision because in it, the court "equates 'related to' with 'based on.'" (Doc. # 3315 at 13). But, under the release language, a claim "***based upon,*** arising from, ***or relating in any way to***: (i) the factual predicates of the Subscriber Actions [] or [] any issue raised in any of the Subscriber Actions by pleading or motion" is released. (Doc. # 3309 at 3 (citing Doc. # 2610-2) (emphasis added)). It follows, based on the plain language of the Release, that claims either "based on" or "relating to" the predicate of the Subscriber actions are within the scope of the release. Thus, whether claims are "based on" or "relate to" the factual predicate of the Subscriber actions is a distinction without a difference. OMI's argument is a red herring. The only way its claims against Anthem would not be released is if they *were **based solely***

4

*on* the other issues specified in the Release and not on matters challenged in the Subscriber actions, such as BlueCard. No further reconsideration is warranted.

### III.    Conclusion

OMI's Motion for Clarification and Partial Reconsideration or Modification of Injunction Order (Doc. # 3315) is **GRANTED IN PART** and **DENIED IN PART** as set forth above.  The stay of the Fourteen-Day Compliance Deadline in the court's April 22, 2025 Memorandum Opinion and Order Regarding Anthem Health Plans of Virginia's Motion to Enforce Injunction (Doc. # 3309) is **LIFTED.**  OMI **SHALL COMPLY** with the instructions in that Memorandum Opinion and Order (Doc. # 3309) **within seven (7) business days of this Order**.

If the allegations and claims identified above are not dismissed and/or stricken in accordance with this Order, Anthem **SHALL** notify this court of that fact. In that event, the court will decide what further action is appropriate.

**DONE** and **ORDERED** this May 28, 2025.

_____
**R. DAVID PROCTOR**
CHIEF U.S. DISTRICT JUDGE