FILED
2025 Jun-02 PM 03:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION


IN RE BLUE CROSS BLUE SHIELD       CASE NO. 2:13-cv-20000-RDP

ANTITRUST LITIGATION MDL 2406



*   *   *   *   *   *   *

**TRANSCRIPT OF STATUS CONFERENCE**

*   *   *   *   *   *   *

BEFORE THE HONORABLE R. DAVID PROCTOR, UNITED STATES DISTRICT JUDGE, at Chicago, Illinois, on Thursday, May 29, 2025, commencing at 9:34 a.m.


APPEARANCES:

| | |
|---|---|
| SPECIAL MASTER: | Edgar C. Gentle III |
| | Attorney at Law |
| | GENTLE, TURNER & BENSON, LLC |
| | 501 Riverchase Parkway East |
| | Suite 100 |
| | Hoover, Alabama 35244 |
| | |
| IN PERSON: | Norman Beck |
| | Katherine A. Benson |
| | W. Tucker Brown |
| | Anna Clark |
| | Karin DeMasi |
| | Michael Dickler |
| | Todd Ehlman |
| | David Ellenbogen |
| | Jeff Fisher |
| | Don Freeman |
| | Sarah M. Gilbert |
| | Anne Hance |
| | Craig A. Hoover |
| | Edith M. Kallas |
| | Lauren R. Kennedy |

APPEARANCES,        Kenina Lee
CONTINUED:          Patrick McDowell
                    Neil Nandi
                    Cathy Nelson
                    Nikol Oydanich
                    Dennis Pantazis
                    Myron Penn
                    Barry Ragsdale
                    Robin Sanders
                    John Schmidt
                    David D. Shelby
                    Karl Stahlfeld
                    Todd Stenerson
                    Michael Velezis
                    Joe Whatley
                    Helen Witt
                    Kirk Wood
                    Jeff Zeiger

VIA TELEPHONE:      Debra Bensett
                    William J. Blechman
                    Brian Charlton
                    Hon. U. W. Clemon
                    Robert Cooper
                    Michael C. Dodge
                    Augusta Dowd
                    Linda Flippo
                    Maria Garcia
                    Mark Gray
                    Michelle Heikka
                    Mark Hogewood
                    Emma J. Hutchison
                    Samantha Jacobson
                    Steve Johnson
                    Elizabeth Jose
                    Chris Kimble
                    Deirdre MacCarthy
                    Marisa Manzi
                    Hope Marshall
                    Duncan McIntosh
                    Morgan Meador
                    Dee Miles
                    Roman Petkauskas
                    Paula Plaza
                    Aaron Podhurst
                    Barry Pollack
                    Henry Quillen
                    Phillip Rakhunov
                    Robert B. Roden

APPEARANCES,         Patrick Sheehan
CONTINUED            Kyle Stickles
VIA TELEPHONE:       Brian Vick
                     Amy Walker Wagner
                     Hershel Wancjer
                     Daniel L. Warshaw
                     Sally Waudby
                     Matthew Weinshall
                     Mark White
                     Michael Wolfe
                     Rachel Mossman Zieminski

The proceedings were reported by a stenographic court reporter.

The transcript was produced using computer-aided transcription.

**Transcript prepared by:**
Pamela G. Weyant, RDR, CRR, CCR
Official Court Reporter

(Proceedings commenced at 9:34 a.m.)

THE COURT:  All right.  Good morning.

IN UNISON:  Good morning.

THE COURT:  I think we are live.  My court reporter is back in Birmingham, and she wanted me to remind you that, when you speak, to state your name at the beginning so she knows who you are and you don't become "Unidentified Speaker" on the transcript, okay?

So we are here for a status conference.  Our protocol has been to have most of these in Birmingham but from time to time move them around so the lawyers don't have to always come to Birmingham, even though that is a great privilege to come enjoy our barbecue and fine amenities.  So we're here in Chicago for a status conference.

I have two items on your agenda that you submitted: one, status update, and two, any other issues.  So I don't think this will be a very particularly long status conference.  I take it, though, that -- our standard operating procedure has been to hold breakout conferences if anyone is interested in holding those afterward.  Ed coordinates that.

A reminder, although everybody consents to that, the consent is conditioned on not discussing anything on the merits about anything.  We can talk about procedural things and scheduling things and behind-the-scene things, but we just don't talk about anything on the merits.

Everyone satisfied with that procedure again this time?

IN UNISON:  Yes, Your Honor.

THE COURT:  All right.  I take it there is no objection.  If there is, somebody would state it.

And then -- so we'll go on to the status update.  I assume everyone's familiar with where we are in the case, so I'm not going to give a long introduction.  But I'd be glad to hear from whoever wants to speak to the status update, anything you want the Court to know on the public side of the hearing.

MR. WHATLEY:  Judge, we --

UNIDENTIFIED SPEAKER:  State your name.

MR. WHATLEY:  Joe Whatley.  From the time of our final approval papers that were filed back on April 23rd, we've continued to move forward, and everything's on track for July 29th and the days following for the final fairness hearing.  I can answer any questions you might have about what's going on, but I assume most of that would be left for going through with --

THE COURT:  Right.  And at this point are we thinking one day for the fairness hearing?  I've scheduled more than one day on my calendar just in case.  But I think we did the subscribers' fairness hearing in one day.

MR. WHATLEY:  I think you went over to part of the

second day --

THE COURT:  Maybe we did.

MR. WHATLEY:  -- in the subscriber.

THE COURT:  Should we allow that?

MR. WHATLEY:  And I would allow that here.  But we are hopeful.  We're -- you know, we have a settlement administrator and just working to try to resolve issues, and we're hoping that, to the maximum extent possible, we will see them doing that, leading up to them -- we can do it in one day.

THE COURT:  Yeah.  But there are objections to this --

MR. WHATLEY:  There are --

THE COURT:  -- but not -- but quite frankly, objections are not as broad in scope as the subscriber objections.

MR. WHATLEY:  Not nearly, Your Honor, and there are only three objections.  There are not nearly as many and they're not nearly as broad in scope.  But --

THE COURT:  But one of the -- I noticed one of the objections was not -- we didn't have an objection along the lines of what was raised on the subscriber side about if you leave the ESAs in place that you're approving an illegal addition.  And although there's no objection, I am inclined to think about addressing that sua sponte just because I think we would need to explain to anyone who's in the public looking at

this why -- if the ESAs are still in place, why that would not be problematic going forward.

MR. WHATLEY:  Well, Judge, two things:  Number one, of course, we will address any and all issues that you want us to address.  But number two, a lot of that ground has been plowed, because you'll remember after the Blues eliminated the National Best Efforts rule, the issues came before you and you had a ruling on that on the specific question.

THE COURT:  I did.  I did.  And it may just be reincorporating that.  I don't think it's going to be a -- and I -- to be honest with you, I thought about this a little bit -- I think there are some unique aspects to the provider case as it relates to that that perhaps should be incorporated in the finding.  Obviously, I'm not -- we front-loaded a lot of this on the preliminary approval, so I'm firmly of the view, particularly in light of no objections, that this is not problematic going forward.  But I just wonder if I ought to explain that in any opinion.

MR. WHATLEY:  That's totally fine with us.  We're prepared to address it.

THE COURT:  Yeah.

MR. WHATLEY:  But what we're -- in addressing it, we probably would be quoting you quite a bit.

THE COURT:  That figures.

MR. WHATLEY:  I remember the day when Judge Propst

complained about an argument I was making, and I pointed out to him that -- he even claimed that it might be a Rule 11 violation, and I said, Judge, just last Friday Judge Acker ruled exactly what I'm telling you.

THE COURT:  And that just -- that just is part of his position.

MR. WHATLEY:  And his question to me was, What's your point?

THE COURT:  That's pretty funny.  Well, you know, in the old style of cases we had, Acker was "AR" to distinguish him from a previous judge who had been "A," and half the time we wondered if that was "always remanded" and the other times we wondered if that was "always reversed."

MR. WHATLEY:  He pointed out it was "automatically remanded."  But there were some Eleventh Circuit judges who claimed the latter, so --

THE COURT:  Yeah.

MR. WHATLEY:  But, Judge, is there any other question we can answer about the status?

THE COURT:  I don't think so.

Anybody else on the provider side want to be heard on status?  I always open it up to the audience.

(No audible response.)

THE COURT:  Okay.

All right.  Blues?

MS. DEMASI:  Good morning, Your Honor.  Karen DeMasi on behalf of the Blues.

So we agree the parties are in good shape and heading toward the final approval hearing on July 29th.  As Your Honor has already approved, the Blues had our submission with respect to any issues for final approval due on July 15th, and so we'll plan to submit that.

With respect to the question Your Honor just raised on the ongoing -- the ongoing viability of the ESAs, as Your Honor may remember, there is actually an express provision in not only the subscriber settlement that addressed this -- and Your Honor addressed it -- but also in the provider settlement that preserved both ESAs and the BlueCard program.

And while there is not an objection as a formal objection, as Your Honor noted, there are a couple dozen opt-out cases filed in state and federal court.  The federal cases have been tagged --

THE COURT:  Are we up to a dozen or so now?

MS. DEMASI:  Overall cases, there's about --

THE COURT:  State and federal?

MS. DEMASI:  Yep, 14 in the federal system, 10 in the state system.  Other lawsuits may come; that's not a finite number.

THE COURT:  Right.

MS. DEMASI:  But those cases obviously very much

challenge the ongoing nature of ESAs and BlueCard, and so I think, from our perspective, we'd be prepared to address that at final approval --

THE COURT:  What if I just say I want the parties to brief that, work out with Ed when you think you could get the briefs to me?

MS. DEMASI:  Sure.

THE COURT:  And again, I want to be delicate.  I don't want to -- I don't want to overextend into areas I don't need to address, but I do think that's kind of an elephant in the room that we do need to address.  Joe kiddingly said that he was going to cite me to me.  I think the Eleventh Circuit also upheld that ruling --

MS. DEMASI:  Correct.

THE COURT:  -- so that might be the -- I speak on behalf of my chief upstairs, Pryor.  You might want to cite him.

MR. WHATLEY:  Well, we will, Judge.  I was referring to the opinion, you know, in the cross motion for summary judgment --

THE COURT:  Yes, I understand, yeah.

MR. WHATLEY:  -- Judge Pryor didn't address, but he addressed the exact question in the --

THE COURT:  Yeah, well, in terms of -- in terms of what it looks like on a settlement.

MR. WHATLEY:  Yes, that's right.

MS. DEMASI:  And so the only other update that I think I just referenced is I just -- I do want Your Honor to be aware that the defendants have tagged the 14 federal complaints to the MDL, just --

THE COURT:  And I think there's CTOs on a lot of those?

MS. DEMASI:  CTOs have been issued on every case. There are motions to vacate the CTOs that the Blues have opposed.

THE COURT:  Right.

MS. DEMASI:  And in certain cases there has been a reply.  I imagine the JPML will await full briefing on all of those CTOS and then address those.

THE COURT:  Anybody here from the opt-outs?  Provider opt-outs?

(No audible response.)

THE COURT:  Okay.  We won't discuss it anymore.

MS. DEMASI:  Thank you, Your Honor.  That's all I had from the Blues.

THE COURT:  Okay.  All right.

All right.  What else?  Any -- I am not going to ask if there's any other Blues who want to speak.  I think you-all are speaking in one voice here, but -- and I just -- the only reason I do that is there's multiple counsel in other cases

for providers, so I always try to have an open forum if there's anybody else who wanted to speak for the provider side.

All right.  Is that the status update, then, first item on our agenda?  Does that conclude that?

MR. WHATLEY:  Yes.

MS. DEMASI:  Yes.

THE COURT:  Okay.  Any other issues?

MR. WHATLEY:  I think your rulings yesterday took care of the others.

THE COURT:  Yeah.  Well, I just thought in light of the -- among other things, the dispute about whether someone's validly opt out -- opted out that we probably should have a good protocol for working through those and seeing if some of those disputes can be narrowed down where they need to be.  So I thought the settlement administrator would be the right route to go through that.  He's -- Ed and Kip have proved themselves very worthy of helping resolve other disputes in this -- these matters, so I thought that was the right way to go there.

All right.  Well, if there's not any other issues, I guess we'll go to breakout sessions.  I'll just return to my room and hunker down until someone tells me where I need to go and who I need to see.

SPECIAL MASTER GENTLE:  Yes, sir.

THE COURT:  I think, Ed, that's your queue.

SPECIAL MASTER GENTLE:  Yes, Your Honor.  Will do.

THE COURT:  All right.  Anything else before we conclude, though, this very short meeting?

(No audible response.)

THE COURT:  All right.  So I realize a lot of the value of these status conferences also is not your face time with me, whether it be in a public status hearing or even a breakout session, but your opportunity to get together face-to-face on the day of, maybe the day before, maybe after, so please continue taking advantage of that, okay?  You-all keep working well together.

And with that, we will conclude our status conference.

(Adjourned accordingly at 9:47 a.m.)

C E R T I F I C A T E


I certify that the foregoing is a correct transcript

from the record of proceedings in the above-entitled matter.

Dated:  June 2, 2025



*Pamela G. Weyant*
Pamela G. Weyant, RDR, CRR, CCR
Official Court Reporter