FILED

2025 Jul-11  PM 08:56
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **IN RE:  BLUE CROSS BLUE SHIELD ANTITRUST LITIGATION (MDL No. 2406)** | **Master File No. 2:13-CV-20000-RDP** <br><br> This document relates to Provider-track cases. |

## DEFENDANTS' BRIEF IN SUPPORT OF FINAL APPROVAL OF PROPOSED PROVIDER TRACK CLASS SETTLEMENT

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES.................................................................................................... ii

INTRODUCTION .................................................................................................................1

ARGUMENT .......................................................................................................................3

I.      THE RELEASE IS LAWFUL AND ENFORCEABLE. ....................................................3

II.     THE OBJECTIONS TO THE RELEASE ARE WITHOUT MERIT. .............................5

        A.      The Ordinary-Course-of-Business Exception Is Clear And Reasonable................6

        B.      The Settlement Does Force Affiliates to Unwittingly Release Claims. ...............10

III.    THE BLUE SYSTEM IS PRESUMPTIVELY PROCOMPETITIVE. ...........................12

CONCLUSION..................................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arandell Corp. v. XCEL Energy, Inc.*,
  No. 07-cv-76, 2020 WL 3046022 (W.D. Wis. Apr. 16, 2020) ...................................................11

*Bennett v. Behring Corp.*,
  737 F.2d 982 (11th Cir. 1984) ...................................................................................................12

*Brown v. Spichiger*,
  No. 10-CV-158, 2013 WL 4736175 (N.D. Ind. Sept. 3, 2013) ....................................................3

*Bukhari v. Senior*,
  No. 16 Civ. 9249, 2018 WL 559153 (S.D.N.Y. Jan. 23, 2018)....................................................9

*Chimbay v. Pizza Plus at Staten Island Ferry Inc.*,
  No. 15-CV-2000, 2016 WL 8290810 (S.D.N.Y. Dec. 1, 2016) ..................................................10

*Demsheck v. Ginn Dev. Co., LLC*,
  No. 09-cv-335, 2014 WL 11370089 (M.D. Fla. Mar. 5, 2014) ..................................................11

*Fraley v. Batman*,
  638 F. App'x 594 (9th Cir. 2016) ...............................................................................................12

*Handschu v. Special Servs. Div.*,
  605 F. Supp. 1384 (S.D.N.Y. 1985)............................................................................................12

*Hendricks v. Starkist Co.*,
  No. 13-cv-00729, 2016 WL 692739 (N.D. Cal. Feb. 19, 2016) ...................................................9

*In re Blue Cross Blue Shield Antitrust Litig.*
  No. 2:13-CV-20000-RDP (N.D. Ala. Aug. 9, 2022) (Dkt. 2934) ...............................................13

*In re Blue Cross Blue Shield Antitrust Litig.*,
  308 F. Supp. 3d 1241 (N.D. Ala. 2018) ......................................................................................13

*In re Blue Cross Blue Shield Antitrust Litig. MDL No. 2406*,
  85 F.4th 1070 (11th Cir. 2023) .....................................................................2, 3, 4, 5, 13, 14

*In re Blue Cross Blue Shield Antitrust Litig.*,
  No. 2:13-cv-20000-RDP, 2022 WL 3221887 (N.D. Ala. Aug. 9, 2022)................................13

*In re Blue Cross Blue Shield Antitrust Litig.*,
  No. 2:13-CV-20000-RDP, 2022 WL 4587618 (N.D. Ala. Aug. 9, 2022)...............2, 11, 12, 14

*In re Chicken Antitrust Litig. Am. Poultry*,
  669 F.2d 228 (5th Cir. 1982) .......................................................................................................4

*In re Corrugated Container Antitrust Litig.*,
    643 F.2d 195 (5th Cir. 1981) ................................................................................3

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
    MDL No. 1486, 2013 WL 12333442 (N.D. Cal. Jan. 8, 2013) ................................6

*In re Flonase Antitrust Litig.*,
    291 F.R.D. 93 (E.D. Pa. 2013) ............................................................................6

*In re Managed Care*,
    756 F.3d 1222 (11th Cir. 2014) ........................................................................3, 10

*In re Oil Spill by the Oil Rig "Deepwater Horizon"*,
    910 F. Supp. 2d 891 (E.D. La. 2012) ..................................................................11

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    MDL No. 1720, 2014 WL 12654593 (E.D.N.Y. Jan. 14, 2014) ...........................6

*In re Prudential Ins. Co. of Am. Sales Prac. Litig.*,
    261 F.3d 355 (3d Cir. 2001) ...............................................................................4

*In re TikTok Consumer Privacy Litig.*,
    713 F. Supp. 3d 470 (N.D. Ill. 2024) ...................................................................3

*In re U.S. Oil & Gas Litig.*,
    967 F.2d 489 (11th Cir. 1992) ............................................................................2

*Karvaly v. eBay, Inc.*,
    245 F.R.D. 71 (E.D.N.Y. 2007) ........................................................................10

*Moulton v. U.S. Steel Corp.*,
    581 F.3d 344 (6th Cir. 2009) ..............................................................................4

*Oladapo v. Smart One Energy, LLC*,
    No. 14-CV-7117, 2017 WL 5956907 (S.D.N.Y. Nov. 9, 2017) ...........................9

*Rivera v. SA Midtown LLC*,
    No. 16 Civ. 2097, 2017 WL 1378264 (S.D.N.Y. Apr. 11, 2017) ..........................9

*Robertson v. Nat'l Basketball Ass'n*,
    556 F.2d 682 (2d Cir. 1977) ..............................................................................12

*Sistrunk v. TitleMax, Inc.*,
    No. 14-CV-628, 2018 WL 1773307 (W.D. Tex. Feb. 22, 2018) ..........................11

*Thomas v. Blue Cross & Blue Shield Ass'n*,
    333 F. App'x 414 (11th Cir. 2009) ......................................................................4

*Thomas v. Blue Cross Blue Shield Ass'n*,
    594 F.3d 814 (11th Cir. 2010) ........................................................................................3

*Trustmark Ins. Co. v. ESLU, Inc.*,
    299 F.3d 1265 (11th Cir. 2002) .....................................................................................12

*TVPX ARS, Inc. v. Genworth Life & Ann. Ins. Co.*,
    959 F.3d 1318 (11th Cir. 2020) .......................................................................................3

*Wai Hoe Liew v. Cohen & Slamowitz, LLP*,
    265 F. Supp. 3d 260 (E.D.N.Y. 2017) ............................................................................10

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)................................................................................................4

*Zimmerman v. Zwicker & Assocs., P.C.*,
    No. 09-3905, 2011 WL 65912 (D.N.J. Jan. 10, 2011)......................................................9

**Statutes & Rules**

Fed. R. Civ. P. 23(e)(2)...........................................................................................................2

**INTRODUCTION**

Settling Defendants (the "Blues") respectfully submit this memorandum in support of final approval of the Provider-track settlement, dated October 4, 2024 (the "Provider Settlement Agreement" or the "Settlement") (Dkt. 3192-02).  Specifically, the Blues write to make three points:  (i) the Settlement release is lawful and approvable; (ii) the objections to the Settlement release lack merit and should be overruled; and (iii) the Blue System will remain presumptively procompetitive following the Settlement relief.[1]

The Settlement represents a hard-fought compromise following more than 12 years of litigation.  The Blues have agreed to "extraordinary monetary recovery" of $2.8 billion, and to sweeping, structural injunctive relief that benefits providers and members alike.  (Dkt. 3225 at 7.) This injunctive relief includes, among other things, transformative changes to the BlueCard program; modification of the Blue Rules to enhance value-based and Contiguous Area contracting; upgrades to the Blues' technical systems to make claims information more readily available to Providers; and the establishment of a Monitoring Committee to oversee Settlement compliance and address Settlement Class Member grievances.  (*Id.* at 8-9.)

In exchange for this substantial relief, the sole consideration the Blues receive is a full release from Settlement Class Members who have not opted out of any claims arising from the same factual predicates as the Provider Actions (the "Release" or the "Provider Release").  Like the Subscriber Release,[2] the Provider Release ensures that the Blues get the peace for which they bargained.  Thus, by choosing to participate in the Settlement and benefit from the relief,

---

[1] Capitalized terms not separately defined in this brief have the same meaning as set forth in the Provider Settlement Agreement.  (*See* Dkt. 3192-02.)

[2] As used herein, the "Subscriber Release" refers to the release of claims contained in paragraph A.1.uuu of the Subscriber-track settlement agreement.  (Dkt. 2610-02.)

Settlement Class Members agree they cannot reopen or relitigate claims that the Settlement fully and finally resolves.  The Release is carefully crafted and substantively identical in all relevant respects to the one this Court and the Eleventh Circuit approved as part of the settlement in the Subscriber track of this MDL.  *In re Blue Cross Blue Shield Antitrust Litig.*, No. 2:13-CV-20000-RDP, 2022 WL 4587618, at *24-25 (N.D. Ala. Aug. 9, 2022); *In re Blue Cross Blue Shield Antitrust Litig. MDL No. 2406*, 85 F.4th 1070, 1088-91 (11th Cir. 2023).  Like the Subscriber Release, it is sensible, lawful and enforceable.  (*See infra* Argument § I.)

Two groups of Providers—Emergency Medical Provider Groups ("ER Providers") and HCA Health North Texas Division ("HCA", and together with ER Providers, the "Objectors")—have objected to the Release, arguing it is overbroad and ambiguous and that it violates the identical factual predicate doctrine.  These objections are meritless and should be overruled:  the Objectors' cited cases are inapposite and their strained reading of the Release runs counter to its plain text.  (*See infra* Argument § II.)

Moreover, the Provider Settlement is a fair, reasonable and more than adequate alternative to the risks and uncertainties of litigation.  Fed. R. Civ. P. 23(e)(2) (settlement may be approved where a district court finds "that it is fair, reasonable and adequate after considering", among other things, the costs and risks of litigation).  And it preserves key, procompetitive features of the Blue System.  (*See infra* Argument § III.)  Because the Settlement contains a reasonable and enforceable Release, and preserves a presumptively lawful Blue System for the future, the Court should grant final approval.  *See In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) (observing that the decision whether to grant final approval "is committed to the sound discretion of the district court").

## ARGUMENT

### I.    THE RELEASE IS LAWFUL AND ENFORCEABLE.

In any settlement, parties may release all claims "based on the identical factual predicate as that underlying the claims in the settled class action". *In re Blue Cross Blue Shield Antitrust Litig. MDL No. 2406*, 85 F.4th at 1090 (quoting *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 377 (1996)). This rule—known as the "identical factual predicate doctrine"— derives from ordinary principles of res judicata, which bar re-litigation of not only "the precise legal theory presented in the previous litigation" but "all legal theories and claims arising out of a common nucleus of fact". *Id.*; *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 221 (5th Cir. 1981) ("[A] court may release not only those claims alleged in the complaint and before the court, but also claims which could have been alleged by reason of or in connection with any matter or fact set forth or referred to in the complaint." (internal citation omitted)); *In re TikTok Consumer Privacy Litig.*, 713 F. Supp. 3d 470, 486 (N.D. Ill. 2024) (observing that the identical factual predicate doctrine "parallels the factual-equivalency test in traditional res judicata"). At the settlement approval stage, the relevant (and only) question in evaluating a release is whether it complies with these basic principles.[3] *See, e.g.*, *Brown v. Spichiger*, No. 10-CV-158, 2013 WL 4736175, at *2-3 (N.D. Ind. Sept. 3, 2013).

The Release here easily comports with this standard: it expressly reaches only claims that are "based upon, aris[e] from, or relat[e] in any way" to "the factual predicates of the

---

[3] As discussed further below, it is not relevant at this stage whether or how the release might *apply* in any future case. The application of any release to a particular set of facts is determined later in that subsequent case—not at the settlement approval stage. *See, e.g.*, *In re Managed Care*, 756 F.3d 1222, 1229 (11th Cir. 2014); *accord TVPX ARS, Inc. v. Genworth Life & Annuity Ins. Co.*, 959 F.3d 1318, 1324-27 (11th Cir. 2020); *Thomas v. Blue Cross Blue Shield Ass'n*, 594 F.3d 814, 817-18 (11th Cir. 2010).

3

Provider Action". (Dkt. 3192-02 ¶ A.1.xxx; *see also id.* ¶ 42.) Thus, *by definition*, the Release applies only to claims that share a "common nucleus of operative fact" with those claims that were or could have been raised in this litigation. *In re Blue Cross Blue Shield Antitrust Litig. MDL No. 2406*, 85 F.4th at 1088, 1090-91. Moreover, the Release contains an express exception for claims arising in the ordinary course of business that are unrelated to the factual predicates of the Provider Actions.[4] (*See* Dkt. 3216 at 41:8-42:6.) As such, the language mirrors Eleventh Circuit case law, and federal courts in and out of this Circuit routinely approve class action settlements with just this type of release. *E.g.*, *Thomas v. Blue Cross & Blue Shield Ass'n*, 333 F. App'x 414, 419-20 (11th Cir. 2009); *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 350-51 (6th Cir. 2009); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 107 (2d Cir. 2005); *In re Prudential Ins. Co. of Am. Sales Prac. Litig.*, 261 F.3d 355, 366-67 (3d Cir. 2001); *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 239 (5th Cir. 1982).

Indeed, the Provider Release is substantively identical to the Subscriber Release that this Court and the Eleventh Circuit have both approved:

---

[4] Specifically, the Release excludes (*i.e.*, preserves) ordinary-course-of-business claims that are based on "claims by the Provider in the Provider's capacity as a plan sponsor or subscriber" or "regarding whether a Settling Individual Blue Plan properly paid or denied a claim for a particular product, service or benefit based on the benefit plan document, Provider contract, or state or federal statutory or regulatory regimes (including state prompt pay laws)." (Dkt. 3192-02 ¶ A.1.xxx.)

| Subscriber Release (Dkt. 2610-02 ¶ A.1.uuu) | Provider Release (Dkt. 3192-02 ¶ A.1.xxx) |
|---|---|
| "'Released Claims' means any and all known and unknown claims . . . based upon, arising from or relating in any way to:  (i) the factual predicates of the Subscriber Actions . . . including each of the complaints and prior versions thereof, or any amended complaint or other filings therein from the beginning of time through the Effective Date; (ii) any issue raised in any of the Subscriber Actions by pleading or motion; or (iii) mechanisms, rules, or regulations by the Settling Individual Blue Plans and BCBSA within the scope of Paragraphs 10 through 18 approved through the Monitoring Committee Process during the Monitoring Period." | "'Released Claims' means any and all known and unknown claims . . . based upon, arising from, or relating in any way to:  (i) the factual predicates of the Provider Actions . . . including each of the complaints and any prior versions thereof, or any amended complaint or other filings therein from the beginning of time through the Effective Date; (ii) any issue raised in any of the Provider Actions by pleading or motion; or (iii) mechanisms, rules or regulations by the Settling Individual Blue Plans and BCBSA within the scope of Paragraphs 10–26 approved through the Monitoring Committee Process during the Monitoring Period and that are based on the same factual predicate of the Provider Actions and related to the injunctive relief provided by Paragraphs 10–26." |

As the Eleventh Circuit explained with respect to the Subscriber Release, this language "cabins the scope" to only those claims that "either were raised or could have been raised during the litigation that preceded the settlement".  *In re Blue Cross Blue Shield Antitrust Litig.*, 85 F.4th at 1091.  In other words, the Provider Release, like the Subscriber Release, does not bar "any claims related to conduct that was not challenged in the underlying lawsuit".  *Id.*  As such, it fully complies with the identical factual predicate doctrine and should be approved.

## II.        THE OBJECTIONS TO THE RELEASE ARE WITHOUT MERIT.

The Objectors challenge the Release as overbroad and ambiguous, arguing it violates the identical factual predicate doctrine.  (Ex. A (ER Providers Objection) at 4-12; Ex. B (HCA Objection) at 6-11.)  In particular, they assert that (i) the Release could be interpreted to reach claims arising in the ordinary course of business that are unrelated to the conduct at issue in this litigation, and (ii) the Release inadequately defines the claims that are relinquished, such that

Class Members and other entities may unknowingly release claims that they rightly should retain. Because these objections ignore the plain language of the Release and are unsupported by the case law, they should be overruled.

> ### A.      The Ordinary-Course-of-Business Exception Is Clear And Reasonable.

As described above, the Release expressly excludes (*i.e.*, preserves) claims that "arise in the ordinary course of business and are based solely on (a) claims brought by the Provider in the Provider's capacity as a plan sponsor or subscriber or (b) claims regarding whether a Settling Individual Blue Plan properly paid or denied a claim . . . ." (*See* Dkt. 3192-02 ¶ A.1.xxx.). Naturally, however, the provision also provides that, notwithstanding this carveout, any claim "based in whole or in part on the factual predicates of the Provider Actions" remains released. (*Id.*) This "notwithstanding" clause is necessary to ensure that the Blues get the full value of the release of claims based on the identical factual predicate. Such a clause was also included in the approved Subscriber Release. (*See* Dkt. 2610-02 ¶ A.1.uuu.)

Objectors challenge this aspect of the Release for three reasons. *First*, ER Providers argue that the ordinary-course-of-business exception is ambiguous because the Settlement does not define the phrase "ordinary course of business" and does not expressly carve out "common law claims such as claims for unjust enrichment or quantum meruit pending in various state court actions". (Ex. A (ER Providers Objection) at 8.) But the phrase "ordinary course of business" is ubiquitous in contracts, case law and statutes and is plainly capable of reasonable interpretation. Unsurprisingly, then, class action settlements routinely include a general release with an exception for claims arising in the ordinary course of business, and courts routinely approve them. *See, e.g.*, *In re Flonase Antitrust Litig.*, 291 F.R.D. 93, 111 (E.D. Pa. 2013); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, MDL No. 1486, 2013 WL 12333442, at *24 (N.D. Cal. Jan. 8, 2013); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, MDL No. 1720, 2014

6

WL 12654593, at *15 (E.D.N.Y. Jan. 14, 2014).  Likewise, there is no reason for the Release to specifically identify particular common law claims by name (*e.g.*, "unjust enrichment" or "quantum meruit") given that it clearly excludes "claims, *however asserted*, that arise in the ordinary course of business".  (Dkt. 3192-02 ¶ A.1.xxx.)  Common law claims are not treated any differently than claims sounding in any other legal theory that are otherwise carved out from the Release.

*Second*, HCA asserts the Release is vague because the claims excluded under the ordinary-course-of-business exception in the Subscriber Release were defined differently—and with greater particularity—than in the Provider Release.  (Ex. B (HCA Objection) at 7-9.)  But the only difference between the two is that the Subscriber Release excludes ordinary-course-of-business claims that are pertinent to the nature of *Subscribers'* business, and would not make sense in the Provider Release.  For example, the Subscriber Release excludes claims arising in the ordinary course of business that are based on a "benefit plan's or a benefit plan participant's financial responsibility for claims, based on either the benefit plan document or statutory law".  (Dkt. 2610 ¶ A.1.uuu).  There is no reason the Provider Release would exclude these same claims, because they would not arise in a Provider's ordinary course of business *as a provider*.  Instead, the Provider Release excludes ordinary-course-of-business claims that are based on whether a Blue Plan "properly paid or denied a claim for a particular product, service or benefit based on the benefit plan document, provider contract, or state or federal statutory or regulatory regimes (including state prompt pay laws)." (Dkt. 3192-02 ¶ A.1.xxx.)  The difference in language sensibly reflects the difference in claims that arise for these two types of Plaintiffs; it does not mean the Provider Release is "lacking the clarity" of the Subscriber Release.  (Ex. B (HCA Objection) at 2.)

*Third*, Objectors argue that the "caveat" to the ordinary-course-of-business exception impermissibly expands the scope of the Release and distinguishes the Provider Release from the Subscriber Release. (Ex. A (ER Providers Objection) at 6-9, 11-12; Ex. B (HCA Objection) at 7-11.) This argument refers to the "notwithstanding" clause which clarifies that even claims arising in the ordinary course of business are subject to the Release if they are based on the same factual predicates as the Provider Actions. (Dkt. 3192-02 ¶ A.1.xxx.) Once again, this argument lacks merit.

As an initial matter, this very clause was *also* in the approved Subscriber Release. Each release: (i) defines the set of Released Claims, (ii) identifies claims that are explicitly carved out from the Released Claims, and then (iii) clarifies that claims which would otherwise be carved out are in fact released if they are based on the same factual predicates as the underlying actions. (*Compare* Dkt. 2610-02, at 15-16, *with* Dkt. 3192-02 at 17-18). The only difference between the two provisions is that the "caveat" in the Provider Release incorporates the carved-out claims by reference instead of repeating them.[5] The effect of the two releases is exactly the same—both

---

[5] To illustrate: the Subscriber Release provides that "[n]othing in this Release shall release claims, however asserted, that arise in the ordinary course of business and are based solely on (i) whether a particular product, service or benefit is covered by the terms of a particular Commercial Health Benefit Product, (ii) seeking resolution of a benefit plan's or a benefit plan participant's financial responsibility for claims, based on either the benefit plan document or statutory law, or (iii) challenging a Releasee's administration of claims under a benefit plan, based on either the benefit plan document or statutory law". (Dkt. 2610-02 at 15.) However, it then goes on to make clear that "[a]ny claim, however asserted, (i) that a product, service or benefit should be or should have been covered, but was not covered, (ii) seeking resolution of a benefit plan's or benefit plan participant's financial responsibility for claims, or (iii) challenging a Releasee's administration under a benefit, *based in whole or in part on the factual predicates of the Subscriber Actions or any other component of the Released Claims in this Paragraph, is released.*" (*Id.* at 15-16 (emphasis added).)

The Provider Release specifies that "[n]othing in this Release shall release claims, however asserted, that arise in the ordinary course of business and are based solely on (a) claims by the Provider in the Provider's capacity as a plan sponsor or subscriber or (b) claims regarding whether a Settling Individual Blue Plan properly paid or denied a claim for a particular product,

8

include a "caveat" with a "reference" to the respective Released Claims provisions.  There is no basis for the Objectors' suggestion that the Provider Release is broader than the Subscriber Release.  In fact, the opposite is true:  the Subscriber Settlement included a mandatory Rule 23(b)(2) release binding even those class members who opted out of the 23(b)(3) class, whereas the Provider Settlement does not.

Moreover, there is nothing objectionable about the "caveat" on its face.  The Objectors argue that the "caveat" opens the door for the Blues to claim that future litigation involving claims "unrelated to antitrust violations or unrelated to the defendants' conduct in the case" are barred by the Release.  (Ex. A (ER Providers Objection) at 7; *see also* Ex. B (HCA Objection) at 10-11.)  But that fear cannot be squared with the plain language of the Release, which clearly limits itself to claims that share a factual predicate with the Provider Actions.  (Dkt. 3192-02 ¶ A.1.xxx.)  The litany of cases the ER Providers cite in support of their objection are thus all inapposite, as none involves a release with an analogous express limitation.[6]

---

service or benefit based on the benefit plan document, Provider contract, or state or federal statutory or regulatory regimes (including state prompt pay laws)." (Dkt. 3192-02 at 18).  Then, like the Subscriber Release, the Provider Release goes on to clarify that claims based on the same factual predicates as the Provider Actions *are* released even if they otherwise fall within the scope of the carved-out, unreleased claims.  However, in doing so, the Provider Release just refers to the previous sentence containing the carveout, instead of repeating the definition of unreleased claims, as the Subscriber Release does.  It says:  "[n]otwithstanding the foregoing sentence, any claim, however asserted, in clauses (a) or (b) in this Paragraph 1(xxx), ***based in whole or in part on the factual predicates of the Provider Actions or any other component of the Released Claims described in this Paragraph, is released.***"  (*Id.* (emphasis added).)

[6] *See, e.g.*, *Zimmerman v. Zwicker & Assocs., P.C.*, No. 09-3905, 2011 WL 65912, at *7 (D.N.J. Jan. 10, 2011) (rejecting a release of all claims "arising out of or related to the same *or similar* circumstances, transactions or occurrences as are alleged in this case" (emphasis added)); *Oladapo v. Smart One Energy, LLC*, No. 14-CV-7117, 2017 WL 5956907, at *15 (S.D.N.Y. Nov. 9, 2017) (same); *Hendricks v. Starkist Co.*, No. 13-cv-00729, 2016 WL 692739, at *4 (N.D. Cal. Feb. 19, 2016) (requiring the express release of claims that counsel had acknowledged were not raised in the class action); *Bukhari v. Senior*, No. 16 Civ. 9249, 2018 WL 559153, at *1-2 (S.D.N.Y. Jan. 23, 2018) (discussing a "general release, under which the parties agree to a mutual release of *all claims* they may have against each other" (emphasis added)); *Rivera v. SA Midtown*

Nor is it relevant that the Objectors claim to be unable to determine whether the Release applies to any given hypothetical future lawsuit that may later arise in the ordinary course of business. (Ex. A (ER Providers Objection) at 8; Ex. B (HCA Objection) at 6-7.) Even if that were true, approvability of the release (a question for this Court at this time) is different than the application of a release (a question for this or another court at some time in the future). Indeed, "[w]hether a class claim pleaded in a subsequent lawsuit 'is predicated on sufficiently similar facts as the class action to be barred by a class action settlement release is inherently an individualized, fact-specific [inquiry].'" *Wai Hoe Liew v. Cohen & Slamowitz, LLP*, 265 F. Supp. 3d 260, 272 (E.D.N.Y. 2017) (quoting *In re Credit Default Swaps Antitrust Litig.*, No. 13-MD-2476, 2016 WL 2731524, at *15 (S.D.N.Y. Apr. 26, 2016)). Thus, the applicability of a given release to a given lawsuit should await the time when that suit actually exists and only if the release is raised by defendants. *See, e.g.*, *In re Managed Care*, 756 F.3d at 1229. That is not something this Court can or should evaluate now.

B.    The Settlement Does Not Unwittingly Force Affiliates to Release Claims.

ER Providers next argue that Class Members or "affiliates" of Class Members may be forced to unfairly and unknowingly release their claims "even if they opted out of the present settlement and received no consideration". This, too, is a strawman. (Ex. A (ER Providers Objection) at 10.) The Settlement Agreement provides that a Releasor gives up claims "on behalf of itself and on behalf of *any party claiming by, for, under or through the Releasor*" including "any and all of Releasor's . . . affiliated companies". (Dkt. 3192-02 ¶ A.1.zzz (emphasis added).) As

---

*LLC*, No. 16 Civ. 2097, 2017 WL 1378264, at *2 (S.D.N.Y. Apr. 11, 2017) (same); *Chimbay v. Pizza Plus at Staten Island Ferry Inc.*, No. 15-CV-2000, 2016 WL 8290810, at *1 (S.D.N.Y. Dec. 1, 2016) (rejecting a release of *all* plaintiffs' claims against defendants); *Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 88-89 (E.D.N.Y. 2007) (same).

an initial matter, only members of the Settlement Class can opt out of the Settlement. Thus, by definition, any "affiliate" who has validly opted out is itself a Class Member who had notice and chose not to participate in the Settlement. And for any such individuals or their affiliates that opted out, the Release has no effect whatsoever on their rights.

In addition, by limiting the release to affiliates who are "*claiming by, for, under or through the Releasor*" (*id.* (emphasis added)), the provision ensures that claims of a Class Member that *has* received the benefit of the Settlement cannot be later brought by someone else. Without this language, the Settlement would be substantially less valuable to the Blues, who would have no assurance that they had fully resolved the claims in the Provider Actions. It is therefore unsurprising that releases with similar "affiliated entities" language are commonplace in approved class action settlements. *See, e.g.*, *In re Blue Cross Blue Shield Antitrust Litig.*, 2022 WL 4587618, at *4; *accord Demsheck v. Ginn Dev. Co., LLC*, No. 09-cv-335, 2014 WL 11370089, at *7 (M.D. Fla. Mar. 5, 2014), *aff'd sub nom. Greco v. Ginn Dev. Co., LLC*, 635 F. App'x 628 (11th Cir. 2015); *Arandell Corp. v. XCEL Energy, Inc.*, No. 07-cv-76, 2020 WL 3046022, at *1 (W.D. Wis. Apr. 16, 2020); *Sistrunk v. TitleMax, Inc.*, No. 14-CV-628, 2018 WL 1773307, at *5 (W.D. Tex. Feb. 22, 2018).

More fundamentally, any Class Member that wished to be sure its affiliates' claims would be preserved without exception had a simple solution: it could have opted out of the Settlement by the opt-out deadline. *See In re Oil Spill by the Oil Rig "Deepwater Horizon"*, 910 F. Supp. 2d 891, 938-39 (E.D. La. 2012) ("For those few Objectors unhappy with the Settlement, their remedy was simple: opt out. The court will not dismantle this settlement for the sake of one class member's unique demands, particularly when the class member . . . had the right (and means) to opt out and pursue individual claims without disturbing the settlement for the rest of the class.").

11

That a particular provider chose not to exercise that right is not an indication the Release is overbroad or there is otherwise something unfair about the Settlement.

In sum, the Release is sufficiently clear, appropriately tailored and does not extend beyond the "legal theories and claims arising out of the same operative nucleus of fact". *Trustmark Ins. Co. v. ESLU, Inc.*, 299 F.3d 1265, 1270 & n.3 (11th Cir. 2002). It is thus proper and should be approved.

## III.    THE BLUE SYSTEM IS PRESUMPTIVELY PROCOMPETITIVE.

During the May 29, 2025 status conference, this Court asked the parties to address whether the Settlement's preservation of certain features of the Blue System is any bar to final approval. Because "[a] fair settlement may not initiate or authorize any illegal conduct", *Handschu v. Special Servs. Div.*, 605 F. Supp. 1384, 1395 (S.D.N.Y. 1985), a district court abuses its discretion if it approves a settlement that sanctions clear violations of law, *see Bennett v. Behring Corp.*, 737 F.2d 982, 987 (11th Cir. 1984); *Robertson v. Nat'l Basketball Ass'n*, 556 F.2d 682, 686 (2d Cir. 1977); *Fraley v. Batman*, 638 F. App'x 594, 597 (9th Cir. 2016). Consistent with this principle, this Court previously analyzed the going-forward legality of the Blue System in connection with final approval of the Subscriber Settlement. As the Court explained then, "the arrangement that will exist upon implementation of the Settlement is not clearly illegal" because the Rule of Reason governs "those of Providers' claims that challenge [exclusive service areas] alone". *In re Blue Cross Blue Shield Antitrust Litig.*, 2022 WL 4587618, at *23 (referring to the Court's standard of review decision, issued contemporaneously with the Subscriber Settlement final approval order, finding the Blue System presumptively procompetitive). The same remains true today.

Here, the Settlement Agreement expressly preserves the Blues' exclusive service areas ("ESAs") and the BlueCard Program. (Dkt. 3192-02 ¶ C.10.) The Court has already had occasion to evaluate each of these challenged rules in 2018 and 2022. First, in 2018, the Court

12

concluded that the BlueCard Program offers many "plausible procompetitive benefits" and thus should be analyzed under the Rule of Reason. *In re Blue Cross Blue Shield Antitrust Litig.*, 308 F. Supp. 3d 1241, 1276 (N.D. Ala. 2018). As the Court recognized then, "not all agreements between competitors that affect prices may be deemed price fixing". *Id.* at 1274. The Court reaffirmed and repeated this holding with respect to the BlueCard Program in 2022. *In re Blue Cross Blue Shield Antitrust Litig.*, No. 2:13-CV-20000-RDP, at 7-8 (N.D. Ala. Aug. 9, 2022) (Dkt. 2934) (discussing the procompetitive benefits of BlueCard, including that it "allows the Blue Plans to integrate their geographically limited Blue provider networks to serve subscribers on a nationwide basis").) Also in 2022, the Court had occasion to evaluate ESAs and concluded that ESAs alone "do no more than regulate how the Blue Marks may be used", and are thus restraints "derived from trademark agreements". *In re Blue Cross Blue Shield Antitrust Litig.*, No. 2:13-CV-20000-RDP, 2022 WL 322187, at *5-6 (N.D. Ala. Aug. 9, 2022) (cleaned up) (quoting *Clorox Co. v. Sterling Winthrop*, 117 F.3d 50, 57 (2d Cir. 1997)). As such, the Court concluded that ESAs—like the BlueCard Program—are presumed to be procompetitive. *Id.* at *5 (quoting *1-800 Contacts, Inc. v. Fed. Trade Comm'n*, 1 F.4th 102, 116 (2d Cir. 2021); *see also In re Blue Cross Blue Shield Antitrust Litig. MDL No 2406*, 85 F.4th at 1089-90 (conduct subject to the Rule of Reason is presumed to have procompetitive benefits). Taken together, the Court concluded that ESAs and the BlueCard Program settle trademark rights and facilitate collaboration among the Blue Plans, enabling them to offer a collective product that no Blue Plan, or even a subset of Blue Plans, could offer alone. *See In re Blue Cross Blue Shield Antitrust Litig.*, 2022 WL 3221887, at *5; *In re Blue Cross Blue Shield Antitrust Litig.*, 308 F. Supp. 3d at 1276.

Given this Court's conclusion in 2022 that the Blue System is presumptively procompetitive, it necessarily follows that the perpetuation of this System following the Provider

13

Settlement is not "clearly illegal"—and thus no bar to final approval. *See In Re Blue Cross Blue Shield Antitrust Litig.*, 2022 WL 4587618, at *22-23; *In re Blue Cross Blue Shield Antitrust Litig. MDL No. 2406*, 85 F.4th at 1089-90 ("Conduct subject to the rule of reason does not necessarily violate the Sherman Act:  a plaintiff must prove its anticompetitive effect.  So long as the conduct perpetuated under a settlement does not per se violate antitrust law, the settlement may be approved . . . ." (internal citation omitted)).  Indeed Providers seem to agree, as no Class Member has objected to the Settlement on these grounds (unlike in the Subscriber settlement, where all such objections were overruled).

## **CONCLUSION**

The Settlement is fair, adequate and reasonable and meets all of the Rule 23 requirements, including because the Release comports with the identical factual predicate doctrine and the Settlement as a whole does not perpetuate a *per se* violation of Section 1 of the Sherman Act.  Accordingly, the Court should grant Provider Plaintiffs' motion for final approval.

Dated:  July 11, 2025

Respectfully submitted,

By */s/ Karin A. DeMasi*

Karin A. DeMasi
Lauren R. Kennedy
David H. Korn
Lillian S. Grossbard
Rebecca J. Schindel
CRAVATH, SWAINE & MOORE LLP
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Tel: (212) 474-1000
Fax: (212) 474-3700
kdemasi@cravath.com
lkennedy@cravath.com
dkorn@cravath.com
lgrossbard@cravath.com
rschindel@cravath.com

14

*Lead Counsel for the Blue Cross Blue
Shield System; Counsel for Defendants
Blue Cross Blue Shield Association; Blue
Cross and Blue Shield of Alabama; Blue
Cross and Blue Shield of Arizona, Inc.;
GuideWell Mutual Holding Corporation;
Blue Cross and Blue Shield of Florida,
Inc.; Blue Cross and Blue Shield of
Kansas City; Blue Cross and Blue Shield
of Massachusetts, Inc.; Blue Cross and
Blue Shield of North Carolina; BlueCross
BlueShield of South Carolina; BlueCross
BlueShield of Tennessee, Inc.; Blue Cross
Blue Shield of Wyoming; California
Physicians' Service d/b/a Blue Shield of
California; Capital Blue Cross;
CareFirst, Inc.; CareFirst of Maryland,
Inc.; Group Hospitalization and Medical
Services, Inc.; CareFirst BlueChoice,
Inc.; Hawaii Medical Service Association
(Blue Cross and Blue Shield of Hawaii);
Health Care Service Corporation, an
Illinois Mutual Legal Reserve Company,
including its divisions Blue Cross and
Blue Shield of Illinois, Blue Cross and
Blue Shield of Texas, Blue Cross and Blue
Shield of New Mexico, Blue Cross and
Blue Shield of Oklahoma, and Blue Cross
and Blue Shield of Montana; Caring for
Montanans, Inc., f/k/a Blue Cross and
Blue Shield of Montana, Inc.; Wellmark of
South Dakota, Inc. (Wellmark Blue Cross
and Blue Shield of South Dakota);
Wellmark, Inc. (Wellmark Blue Cross and
Blue Shield of Iowa); Triple-S
Management Corporation; Triple-S Salud,
Inc.*

| | |
|---|---|
| Craig A. Hoover | Kimberly R. West (Liaison Counsel) |
| E. Desmond Hogan | Mark M. Hogewood |
| Justin Bernick | WALLACE, JORDAN, RATLIFF & |
| Elizabeth Jose | BRANDT, LLC |
| W. David Maxwell | First Commercial Bank Building |
| HOGAN LOVELLS US LLP | 800 Shades Creek Parkway, Suite 400 |

15

Columbia Square
555 13th Street, N.W.
Washington, DC  20004
Tel: (202) 637-5600
Fax: (202) 637-5910
craig.hoover@hoganlovells.com
desmond.hogan@hoganlovells.com
justin.bernick@hoganlovells.com
elizabeth.jose@hoganlovells.com
david.maxwell@hoganlovells.com

*Counsel for Elevance Health f/k/a Anthem, Inc., and all of its named subsidiaries in this action; Louisiana Health Service & Indemnity Company (Blue Cross and Blue Shield of Louisiana); BCBSM, INC. (Blue Cross and Blue Shield of Minnesota); Horizon Healthcare Services, Inc. (Horizon Blue Cross and Blue Shield of New Jersey); Blue Cross & Blue Shield of Rhode Island; Cambia Health Solutions, Inc.; Regence BlueShield of Idaho, Inc.; Regence BlueCross BlueShield of Utah; Regence BlueShield; Regence BlueCross BlueShield of Oregon*

John D. Martin
Lucile H. Cohen
Travis A. Bustamante
NELSON MULLINS RILEY & SCARBOROUGH LLP
1320 Main Street, 17th Floor
Columbia, SC  29201
Tel: (803) 255-9421
Fax: (803) 256-7500
john.martin@nelsonmullins.com
lucie.cohen@nelsonmullins.com
travis.bustamante@nelsonmullins.com

*Counsel for Elevance Health f/k/a Anthem, Inc., and all of its named subsidiaries in this action; Louisiana Health Service & Indemnity Company*

Birmingham, AL  35209
Tel: (205) 870-0555
Fax: (205) 871-7534
kwest@wallacejordan.com
mhogewood@wallacejordan.com

*Counsel for Defendants Blue Cross Blue Shield Association; Blue Cross and Blue Shield of Arizona, Inc.; Blue Cross and Blue Shield of Kansas City; BlueCross BlueShield of South Carolina; Blue Cross and Blue Shield of Wyoming; Capital Blue Cross; CareFirst, Inc.; CareFirst of Maryland, Inc.; Group Hospitalization and Medical Services, Inc.; Health Care Service Corporation, an Illinois Mutual Legal Reserve Company, including its divisions Blue Cross and Blue Shield of Illinois, Blue Cross and Blue Shield of Texas, Blue Cross and Blue Shield of New Mexico, Blue Cross and Blue Shield of Oklahoma, and Blue Cross and Blue Shield of Montana; Caring for Montanans, Inc., f/k/a Blue Cross and Blue Shield of Montana, Inc.; Highmark Health; Highmark Inc., f/k/a Highmark Health Services; Highmark West Virginia Inc.; Highmark BCBSD Inc.; California Physicians' Service d/b/a Blue Shield of California; Wellmark of South Dakota, Inc. (Wellmark Blue Cross and Blue Shield of South Dakota); Wellmark, Inc. (Wellmark Blue Cross and Blue Shield of Iowa); Hawaii Medical Service Association (Blue Cross and Blue Shield of Hawaii)*

Carl S. Burkhalter
MAYNARD NEXSEN PC

16

*(Blue Cross and Blue Shield of Louisiana); BCBSM, INC. (Blue Cross and Blue Shield of Minnesota); BlueCross BlueShield of South Carolina; Horizon Healthcare Services, Inc. (Horizon Blue Cross and Blue Shield of New Jersey); Blue Cross & Blue Shield of Rhode Island; Blue Cross and Blue Shield of Vermont; Cambia Health Solutions, Inc.; Regence BlueShield of Idaho, Inc.; Regence BlueCross BlueShield of Utah; Regence BlueShield; Regence BlueCross BlueShield of Oregon; Blue Cross & Blue Shield of Mississippi, a Mutual Insurance Company; Wellmark of South Dakota, Inc. (Wellmark Blue Cross and Blue Shield of South Dakota); Wellmark, Inc. (Wellmark Blue Cross and Blue Shield of Iowa); Hawaii Medical Service Association (Blue Cross and Blue Shield of Hawaii); Triple-S Salud, Inc; Defendants Blue Cross and Blue Shield of Florida, Inc.; Blue Cross and Blue Shield of Massachusetts, Inc.; BlueCross BlueShield of Tennessee, Inc.*

Cavender C. Kimble
BALCH & BINGHAM LLP
1901 6th Avenue North, Suite 1500
Birmingham, AL 35203-4642
Tel: (205) 226-3437
Fax: (205) 488-5860
ckimble@balch.com

*Counsel for Elevance Health, f/k/a Anthem, Inc., and all of its named subsidiaries in this action; Blue Cross and Blue Shield of North Carolina; Louisiana Health Service & Indemnity Company (Blue Cross and Blue Shield of Louisiana); BCBSM, INC. (Blue Cross and Blue Shield of Minnesota); Horizon Healthcare Services, Inc. (Horizon Blue Cross and Blue Shield of New Jersey); Blue Cross & Blue Shield of Rhode Island; Cambia Health Solutions, Inc.; Regence*

1901 6th Avenue North, Suite 2400
Regions Harbert Plaza
Birmingham, AL  35203
Tel: (205) 254-1000
Fax: (205) 254-1999
cburkhalter@maynardnexsen.com

Pamela B. Slate
HILL CARTER FRANCO COLE &
BLACK, P.C.
425 South Perry Street
Montgomery, AL  36104
Tel: (334) 834-7600
Fax: (334) 386-4381
pslate@hillhillcarter.com

*With Cravath, Swaine & Moore LLP, counsel for Defendant Blue Cross Blue Shield of Alabama*

Jeffrey J. Zeiger, P.C.
Helen E. Witt, P.C.
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL  60654
Tel: (312) 862-2000
Fax: (312) 862-2200
hwitt@kirkland.com
jzeiger@kirkland.com

*Counsel for Defendants Health Care Service Corporation, an Illinois Mutual Legal Reserve Company, including its divisions Blue Cross and Blue Shield of Illinois, Blue Cross and Blue Shield of Texas, Blue Cross and Blue Shield of New Mexico, Blue Cross and Blue Shield of Oklahoma, and Blue Cross and Blue Shield of Montana; Caring for Montanans, Inc., f/k/a Blue Cross and*

17

*BlueShield of Idaho, Inc.; Regence BlueCross BlueShield of Utah; Regence BlueShield; Regence BlueCross BlueShield of Oregon*

Gwendolyn Payton
KILPATRICK TOWNSEND & STOCKTON LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA  98101
Tel: (206) 626-7714
Fax: (206) 299-0414
gpayton@kilpatricktownsend.com

*Counsel for Defendant Premera Blue Cross, d/b/a Premera Blue Cross Blue Shield of Alaska*

Brian K. Norman
SHAMOUN & NORMAN, LLP
1800 Valley View Lane, Suite 200
Farmers Branch, TX  75234
Tel: (214) 987-1745
Fax: (214) 521-9033
bkn@snlegal.com

H. James Koch
ARMBRECHT JACKSON LLP
RSA Tower, 27th Floor
11 North Water Street
Mobile, AL  36602
Tel: (251) 405-1300
Fax: (251) 432-6843
hjk@ajlaw.com

*Counsel for Defendants CareFirst, Inc.; CareFirst of Maryland, Inc.; Group Hospitalization and Medical Services, Inc.; CareFirst BlueChoice, Inc.*

M. Patrick McDowell
Norman E. "Benje" Bailey, Jr.
BRUNINI, GRANTHAM, GROWER

*Blue Shield of Montana, Inc.; Highmark Health; Highmark Inc., f/k/a Highmark Health Services; Highmark West Virginia Inc.; Highmark BCBSD Inc.; Highmark Western and Northeastern New York Inc. (except with respect to claims by Rite Aid Corporation and its affiliates and Bed, Bath & Beyond Inc. now known as 20230930-DK-Butterfly-1, Inc. and its affiliates, and discovery to RTX Corporation and its affiliates and General Motors Company and its affiliates)*

Jonathan M. Redgrave
REDGRAVE, LLP
4800 Westfields Blvd, Suite 250
Chantilly, VA  20151
Tel: (703) 592-1155
Fax: (612) 332-8915
jredgrave@redgravellp.com

*Additional Counsel for HCSC and Highmark Defendants and California Physicians' Service d/b/a Blue Shield of California*

Todd M. Stenerson
Brian C. Hauser
ALLEN OVERY SHEARMAN STERLING US LLP
1101 New York Avenue N.W.
Washington, DC  20005
Tel: (202) 508-8000
Fax: (202) 508-8100
todd.stenerson@aoshearman.com
brian.hauser@aoshearman.com

Rachel Mossman Zieminski
ALLEN OVERY SHEARMAN

18

& HEWES, PLLC
190 East Capitol Street
The Pinnacle Building, Suite 100
Jackson, MS  39201
Tel: (601) 948-3101
Fax: (601) 960-6902
pmcdowell@brunini.com
bbailey@brunini.com

Cheri D. Green
BLUE CROSS & BLUE SHIELD OF
MISSISSIPPI, A MUTUAL INSURANCE
COMPANY
P.O. Box 1043
Jackson, MS  39215
Tel: (601) 932-3704
cdgreen@bcbsms.com

*Counsel for Defendant Blue Cross & Blue Shield
of Mississippi, a Mutual Insurance Company*

Alan D. Rutenberg
FOLEY & LARDNER LLP
3000 K Street, N.W., Suite 600
Washington, DC 20007
Tel: (202) 672-5491
arutenberg@foley.com

Diane R. Hazel
FOLEY & LARDNER LLP
1144 15th Street, Suite 2200
Denver, CO 80202
Tel: (720) 437-2034
dhazel@foley.com

*Counsel for Defendant USAble Mutual Insurance
Company, d/b/a Arkansas Blue Cross and
Blue Shield and as BlueAdvantage Administrators
of Arkansas*

STERLING US LLP
2601 Olive Street, Suite 1700
Dallas, TX 75201
Tel: (214) 271-5777
Fax: (214) 271-5778
rachel.zieminski@aoshearman.com

Sarah L. Cylkowski
Thomas J. Rheaume, Jr.
BODMAN PLC
1901 Saint Antoine Street
6th Floor at Ford Field
Detroit, MI  48226
Tel: (313) 259-7777
Fax: (734) 930-2494
scylkowski@bodmanlaw.com
trheaume@bodmanlaw.com

Andy P. Campbell
A. Todd Campbell
Yawanna N. McDonald
CAMPBELL PARTNERS LLC
505 North 20th Street, Suite 1600
Birmingham, AL  35203
Tel: (205) 224-0750
Fax: (205) 224-8622
andy@campbellpartnerslaw.com
todd@campbellpartnerslaw.com
yawanna@campbellpartnerslaw.com

*Counsel for Defendants Blue Cross and
Blue Shield of Michigan; Blue Cross
and Blue Shield of Vermont*

John DeQ. Briggs
Jeny M. Maier
Kenina J. Lee
AXINN, VELTROP & HARKRIDER,
LLP
1901 L Street, N.W.

19

Robert R. Riley, Jr.
RILEY & JACKSON, P.C.
3530 Independence Drive
Birmingham, AL  35209
Tel: (205) 879-5000
Fax: (205) 879-5901
rob@rileyjacksonlaw.com

*Counsel for Defendants Blue Cross and Blue*
*Shield of Florida, Inc.; Blue Cross and Blue Shield*
*of Massachusetts, Inc.; BlueCross BlueShield*
*of Tennessee, Inc.*


Edward S. Bloomberg
John G. Schmidt Jr.
Anna Mercado Clark
PHILLIPS LYTLE LLP
One Canalside
125 Main Street
Buffalo, NY  14203
Tel: (716) 847-8400
Fax: (716) 852-6100
ebloomberg@phillipslytle.com
jschmidt@phillipslytle.com
aclark@phillipslytle.com

Morris Wade Richardson
(ASB-8581-S78M)
Charles T. Grimes
(ASB-3224-S77C)
RICHARDSON CLEMENT PC
22 Inverness Center Parkway, Suite 500
Birmingham, Alabama 35242
Tel: (205) 729-7000
Facsimile: (205) 905-7009
wade@richardson.law
charley@richardson.law

*Counsel for Defendant Excellus Health Plan, Inc.,*
*d/b/a Excellus BlueCross BlueShield*

Washington, DC  20036
Tel: (202) 912-4700
Fax: (202) 912-4701
jbriggs@axinn.com
jmaier@axinn.com
klee@axinn.com

Kail J. Jethmalani
Victoria J. Lu
AXINN, VELTROP & HARKRIDER,
LLP
630 Fifth Avenue, 33rd Floor
New York, NY 10111
Tel: (212) 728-2200
Fax: (212) 728-2201
kjethmalani@axinn.com
vlu@axinn.com

Stephen A. Rowe
Aaron G. McLeod
ADAMS AND REESE LLP
1901 Sixth Avenue North, Suite 3000
Birmingham, AL 35203
Tel: (205) 250-5080
Fax: (205) 250-5034
steve.rowe@arlaw.com
aaron.mcleod@arlaw.com


*Counsel for Defendants Independence*
*Hospital Indemnity Plan, Inc. f/k/a*
*Independence Blue Cross; Independence*
*Health Group, Inc.*


Sarah M. Gilbert
Honor R. Costello
CROWELL & MORING LLP
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Tel: (212) 223-4000

20

Fax: (212) 223-4134
sgilbert@crowell.com
hcostello@crowell.com

Jay P. DeSanto
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC  20004
Tel: (202) 624-2500
Fax: (202) 628-5116
jdesanto@crowell.com

John M. Johnson
Brian P. Kappel
LIGHTFOOT FRANKLIN & WHITE
LLC
The Clark Building
400 20th Street North
Birmingham, AL  35203
Tel: (205) 581-0700
Fax: (205) 581-0799
jjohnson@lightfootlaw.com
bkappel@lightfootlaw.com

*Counsel for Defendants Blue Cross and
Blue Shield of Nebraska; Blue Cross of
Idaho Health Service, Inc.; Blue Cross
and Blue Shield of Kansas, Inc.; Blue
Cross Blue Shield of North Dakota*

21

**CERTIFICATE OF SERVICE**

I hereby certify that on this the 11th day of July, 2025, I caused the foregoing to be electronically filed with the Clerk of court using the CM/ECF system which will send notification of such filing to all Counsel of record.

/s/ Karin A. DeMasi
Karin A. DeMasi