FILED
2025 Jul-22  PM 10:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

# Exhibit C

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE: BLUE CROSS BLUE SHIELD | ) | |
| | ) | |
| ANTITRUST LITIGATION | ) | Master File No.: 2:13-CV-20000-RDP |
| (MDL No.: 2406) | ) | |

## UPDATED DECLARATION OF SPECIAL MASTER

COMES NOW, Edgar C. Gentle, III, and, after being duly sworn, states the following under oath, based upon his direct knowledge.

### I. BACKGROUND AND QUALIFICATIONS

I am the Court-appointed Special Master in this matter. I am charged by the Court with collecting and auditing records of Provider Track Counsel common benefit attorney capital contributions, and Provider Track Counsel submitted records of held expenses and time.

In performing these tasks, I had the help of the following personnel in my firm: Terry

>Terry D. Turner, Jr., Esq.
>Katherine A. Harbison Benson, Esq.
>Mr. Joseph L. Roberta, CPA
>Ms. Jennifer L. Newby, CPA

My resume and the resumes of the above personnel are in **Exhibit A.**

We also complied with the Court's May 31, 2013 Order regarding Court protocols for Plaintiffs' Counsel time and expense submissions.

The purpose of this Declaration is to describe the methods we employed and the results in this process, for Provider Track Counsel capital contributions to date, and for Provider Track Counsel time and held expenses for the period ended September 30, 2024 (the "Litigation Period").

### I. Capital Contributions

#### A. Provider Fund Attorney Capital Contribution Calls

We made periodic capital calls to Provider Track Counsel to pay for common benefit expenses of the case, and based on agreed capital call shares. Once capital call letters are sent to Provider attorneys on a designated date, an Excel spreadsheet is prepared which lists each Provider attorney and the capital contributions assigned to them for that

particular capital call. Provider attorneys can remit their capital contributions via wire transfer, check or ACH deposit. Each capital call letter contains wire instructions for the Provider Fund's checking account, which is maintained at Wells Fargo Bank. This checking account is enrolled in the Commercial Electronic Office ("CEO") Portal at Wells Fargo Bank, which provides us with online access to the account. Through CEO, we have set up alerts to notify us, via email, of any incoming wires or ACH deposits to the checking account. As Provider attorneys send their capital contributions via wire transfer or ACH deposit, we receive an email from Wells Fargo Bank that notifies us of an incoming deposit to the account, and it also provides the amount and originating party, which ensures that the proper attorney is given credit for the contribution. We can then log onto CEO to view activity in the checking account and confirm the incoming wire. Provider attorneys can also choose to remit their capital contributions via check, with such checks either being mailed directly to our office or sent to Kirk Wood's office, who will then forward them to our office for deposit into the checking account.

Once a capital contribution has been received, either electronically or by check, a memorandum to the file is prepared which notes the capital call to which the deposit relates, the name of the payor (usually a Provider attorney firm), the amount paid, and the date payment was received. A copy of the check or online report from CEO detailing the wire transfer is attached to the memorandum, and the memorandum is then included in a Provider Fund deposit subfile in chronological order. The deposit index is a listing of all deposits into the Provider Fund, noting the date of deposit, the party making the deposit, the amount of the deposit, and what capital call the deposit relates to.

Once a deposit is recorded in the Provider Fund deposit index, it is then recorded in the Excel spreadsheet for the respective capital call. The spreadsheet contains a column for deposits, with each deposit being subtracted from the amount assigned to the Provider attorney, resulting in the balance due column showing zero or any balance that might be left. There is also a spreadsheet column that lists the name of the payor, which is normally a Provider attorney firm. With there being a separate spreadsheet for each Provider Fund capital call, we can easily provide status updates that show which attorneys haven't yet made their capital contributions. This is especially helpful when we have to reallocate unpaid capital contributions among attorneys who elected to make additional capital contributions, based on an agreed reallocation process. Following the reassignment of any unpaid capital contributions among Provider attorneys, the spreadsheet will be adjusted, removing amounts from attorneys who elected not to contribute and increasing the amounts due from attorneys who elected to pay extra. Once all extra capital contributions are received, the balance due column will be zero, signifying that the capital call has been fully paid.

It should be noted that, prior to any contribution amounts being reassigned among Provider attorneys, reminder notices are sent to attorneys who have a balance due on the capital call spreadsheet. If a contribution was received, but somehow attributed to the wrong attorney, the attorney receiving the reminder notice would notify us that they paid their capital contribution and this would trigger us to research the payment and get it assigned to the proper attorney. This safeguard should not be necessary, as contributions are easily assigned to attorneys based on the payor listed on the check or the wire transfer detail provided through alerts from CEO, but it is helpful to have an extra layer of security in the recording process.

### B.  Cumulative Provider Fund Attorney Capital Contribution Call Spreadsheet

After a spreadsheet is created for each individual capital call, this information is added to a spreadsheet that tracks the cumulative capital contributions for Provider attorneys. This spreadsheet contains a column for each capital call, which lists the amounts assigned to each attorney, as well as a column for each capital call that shows contributions received from each attorney.  As capital contributions are received and recorded in the deposit index and individual capital call spreadsheets, they are also recorded on the cumulative capital call spreadsheet. This spreadsheet provides a quick snapshot of total capital contributions made since inception of the Provider Fund for each Provider attorney and for the Provider Fund as a whole.  When unpaid capital contributions are reassigned on an individual capital call spreadsheet, they are also updated on the cumulative capital call spreadsheet to ensure they are in agreement with each other.

### C.  Capital Contributions Attributable to Each Attorney

We also maintain a report that provides an itemized list, per attorney, of all capital contributions made on behalf of each attorney from inception of the Provider Fund. Each Provider attorney will be listed, followed by the party that paid in each contribution on their behalf, which will normally be the Provider attorney firm they were associated with at the time. This could be especially useful for attorneys that have changed law firms since the initial capital call in July 2013 or have arrangements in place with other attorneys or firms to pay the capital contributions assigned to them.  This information could even be sent to Provider attorneys to act as a confirmation of their accumulated capital contributions since inception.

### D.  Recording of Capital Contributions in QuickBooks

After capital contributions have been appropriately recorded in the deposit index and the various capital call spreadsheets, they are then recorded in Quickbooks, which is the accounting software used for financial reporting. The deposits for capital contributions are input into the checking account from the detail in the deposit index, which ensures that deposit information from our various capital call spreadsheets is in agreement with the information in our financial reporting software.  The checking account is reconciled in Quickbooks with the bank statement received from Wells Fargo Bank on a monthly basis.

### E.  Compilation of Capital Contributions to Date

A total of $98,033,515.00 in capital contributions have been made as of the conclusion of the last capital call of December 2024.  In addition, at June 30, 2025, your Special Master has paid (or will soon pay) $99,934,671.68 in Provider Track expenses from the Provider Fund since its inception.

## II. Held Expenses and Attorney Time

### A.  Monthly Time and Expenses Submissions

On a monthly basis, each Provider law firm submits its time and expenses to Kirk Wood.

These submissions include a summary sheet for both time and expenses, and should also include all back-up documentation (i.e timesheets for the hours, and receipts and invoices for the expenses.) Monthly time and expense reports should also be submitted, even if time and/or expenses are zero.

In accordance with the May 31, 2013 Order Regarding Protocols for Plaintiffs' Counsel Time and Expense Submissions (the "Order"), the monthly submissions are due to Kirk Wood by the end of the month following the reporting month (i.e. July submissions are due no later than August 31). Due to some firms not timely submitting their time and expenses, a policy was added whereby time and/or expenses submitted 90 days outside of the deadline listed in the Order may be classified as Late, and held separately, to be addressed later.

Once Kirk Wood has received all the monthly submissions, he prepares a summary spreadsheet reflecting the monthly time and expenses for all firms.

Once Kirk Wood has completed his review, made adjustments, and/or received any additional back-up documentation, he sends the concise monthly summary time and expense spreadsheet to us as the Special Master. We review the information to ensure that the Provider Hours are efficiently expended. We also reviewed the time entries to ensure that Providers Counsel made good use of their time by billing in reasonable amounts considering the work accomplished. In going through this process and interfacing with all the Providers Counsel, it is apparent that Providers Counsel displayed the utmost in legal skill and professionalism in this case. From this information, we prepared the Report to the Court reflecting the unaudited time and expenses for the specific month. In addition to the time and expenses, we also include certain Common Benefit Fund information on the Report to the Court. This includes the capital contributions we have received through the date of the Report, as well as the net accrued expenses through the previous month end. We also prepare a color bar graph that shows the correlation between submitted time and expenses and the capital contributions, for contributing firms.

## B.    Time and Held Expenses Audits

Based on the terms set forth in the Order, Audits are periodically performed for all periods, and have been completed for all periods through the Litigation Period.

For the period being audited, we send a list of selected Provider law firms to Kirk Wood for his review. He occasionally will add firms based on questions arising during his review of the monthly submissions.

During the Audit, using the terms within the Order, we select a sample of timesheet entries to review for the submitted hours, and for the expenses, we review the submitted back-up documentation. For time submissions, hours are required to be reported in 1/10th of an hour increments and time entries should include a detailed description of the work performed, as well as a billing code. If there are multiple tasks billed in one day, the tasks should be either listed separately or include the time per task. Tasks with separate billing codes should be listed separately. For expenses, we verify that the submitted expenses are reimbursable, and they have provided back-up documentation that conforms to the terms of the Order. The following expenses, not listed in the Order, were added and are reimbursable when back-up documentation

4

is provided: Internet charges while traveling, books and reference materials, and color copies at a maximum of $.50 per copy.

After performing our audit procedures, when necessary, we make audit adjustments to both hours and expenses. Some examples of audit adjustments for hours, though usually not prevalent, relate to time billed in other than 1/10th increments, time entries lacking a description of the work performed, block billing (one time entry for multiple tasks), excessive hours billed repeatedly, especially for document review time, and reclassifications for billing codes related to document review work and travel. Some examples of audit adjustments for expenses relate to the lack of required back-up documentation, duplicate expenses, expenses not incurred within the audit period, and expenses not reimbursable under the terms of the Order.

At the completion of the Audit for a given period, we prepare a Summary Sheet reflecting the submitted time and expenses, along with the audit adjustments, and adjusted totals. We also prepare individual Firm Reports detailing audit adjustments and noting any other issues requiring attention. A corresponding written memo detailing the procedures of the Audit, and our Audit findings is also prepared.

After approval, the Audit results memo and all the supporting documents are submitted to Kirk Wood, and his office forwards the Individual Firm Reports to each Provider law firm. The firms are allowed a period of time to provide responses and/or additional documentation regarding any adjustments. After our review of Provider law firm responses, any necessary adjustments are made and the Final Firm Reports are prepared and submitted to Kirk Wood for forwarding to the Provider law firms for their records. We also ask him to forward the Firm Reports to Kirk Wood, so he may make adjustments to his records. Additionally, a Report to the Court reflecting the Final audited totals is prepared and submitted to the Court.

Once the case began to settle, we reached out to Kirk Wood to reconcile all the audited time and held expenses from the case's inception through September 30, 2025, when the Litigation Period ended. This reconciliation was done to ensure that the billing information provided to the Court by us coincided with the detailed records maintained by Kirk Wood, and the billing information in the Fee Application is accurate. Kirk Wood maintains a separate, cumulative spreadsheet for both hours and held expenses. On a monthly basis, Kirk Wood adds the law firm time and expenses as they are submitted by the law firms. After each Special Master Audit, Kirk Wood updates its records to reflect our Audit adjustments. When the case began to settle, Kirk Wood provided both cumulative spreadsheets (time and expenses) to us and we compared those amounts with the audited amounts that were submitted to the Court (See Special Master time and expenses spreadsheet in **Exhibit B).**

Held expenses and time by law firm based on the records we have for the Litigation Period are provided in the spreadsheet in **Exhibit B.**

5

Sworn to and subscribed this 21 day of July, 2025.

Edgar C. Gentle, III
Special Master

# EXHIBIT A

**April 29, 2024**

## CURRICULUM VITA

| | |
|---|---|
| **Name of Attorney:** | Edgar C. Gentle, III, Esq. |
| **Name of Firm:** | Gentle Turner & Benson, LLC |
| **Profession:** | Attorney |
| **Date of Birth:** | February 17, 1953 |
| **Years with Firm:** | 30 |
| **Nationality:** | U.S.A. |
| **Memberships in Professional Societies:** | Admitted to Alabama State Bar (1981) and various Federal District Court and Appellate Court Bars |

### A.    Key Qualifications

Ed Gentle was born in Birmingham, Alabama, February 17, 1953. He graduated summa cum laude in 1975 from Auburn University where he was a Danforth Scholar and earned a Bachelor of Science degree. In 1977 he received a Master of Science (summa cum laude) from the University of Miami as a Maytag Fellow.

He was a Rhodes Scholar (Auburn's second and Miami's first) at Oxford University, where he earned a B.A. degree with honors in Jurisprudence in 1979 and a M.A. degree in 1980. He then attended the University of Alabama School of Law as a Hugo Black Scholar. He earned his J.D. and was admitted to the Alabama State Bar in 1981.

Mr. Gentle has comprehensive experience in serving as Mediator, Special Master, Settlement Trustee, and Claims Administrator in Mass Tort Litigation, and providing grid design, claims administration and financial and business advice to Courts, Settling Parties, and Mass Tort Settlements. Approximately 90% of his professional time is devoted to this practice. He has helped create and administer over $4.5 Billion in Settlements during the past 30 years. He has also provided expert affidavit, deposition and hearing testimony on the fairness of Mass Tort Settlements.

From 1992 to 2014, Mr. Gentle served as Special Master and Escrow Agent for the MDL 926 Global Breast Implant Settlement, paying $1.2 Billion in claims for 300,000 claimants. From 2001 until 2003, he was Interim Financial Advisor for the Settlement Facility - Dow Corning Trust (the Dow Corning Breast Implant Settlement) overseeing the investment of over $1 Billion and providing tax and accounting support for the Settlement, during part of Dow Corning's Chapter 11 Bankruptcy.

Commencing in December 2003, Mr. Gentle was appointed as the Settlement Administrator in the $300 Million Anniston, Alabama Tolbert PCB Settlement with Monsanto and Solutia in connection with the administration of a Global Settlement before the Federal District Court for the Northern District of Alabama applicable to 18,000 claimants with respect to PCB contamination of property and PCB personal injury claims. In administering the $300 Million settlement, Mr. Gentle designed the claimant payment program for property damage and personal injury, collected criteria for payments to each of the 18,000 claimants, ranked the claimants for payment amounts, satisfied private and government liens, and remitted payments to each of the claimants. The Settlement also provided primary medical and dental care and prescriptions to claimants, with this portion of the settlement being completed in 2016.

One of Mr. Gentle's specialties is serving as Settlement Administrator for Community Tort Settlements, such as a C-8 groundwater contamination case in Camden, New Jersey (with water filtration and damages 2004-2008), Warehouse Fire Settlements in Conyers, Georgia (2012) and Louisville, Kentucky (personal injury and property claims), Zinc Smelter Settlements in Spelter, West Virginia (medical monitoring and property remediation 2011-2017) and Blackwell, Oklahoma (property remediation 2013-2019), a coal slurry groundwater contamination Settlement in Mingo County, West Virginia (medical monitoring 2013), and two train wrecks in Kentucky (2010 and 2017), one in Alabama and one in West Virginia (personal injury and property claims 2017-2019).

In November, 2009, Mr. Gentle was appointed Claims Administrator in the Jefferson County, Alabama, Occupation Tax Refund Class Settlement before the Honorable David Rains, in the Circuit Court of Jefferson County. On May 14, 2010, the Supreme Court of Alabama upheld the $37 Million Judgment. The Parties entered into a Class Settlement, which was approved by the Court, and tax refunds were issued to over 300,000 claimants. The case was completed in 2014.

In June 2010, Mr. Gentle was appointed Special Master and Settlement Administrator in the Total Body Multi-district Litigation, MDL 1985. The claimed toxigen was a selenium overdose in a health maintenance drink, with claimed damages being hair loss and damage to bodily organs. Working closely with the Court, Mr. Gentle facilitated the aggregate settlement of all cases, in August 2010. Mr. Gentle and his staff determined the value of each of the settled cases, which was consented to by all Plaintiffs, and Mr. Gentle administered the Settlement, satisfied private and government liens, and paid all claimants, which was completed in 2013.

In the Fall of 2011, after his successful mediation of a Settlement, Mr. Gentle was appointed Claim Administrator for the 1,000 family Perrine v. DuPont Zinc Smelter Class Action Settlement in Spelter, West Virginia, involving a $40 million remediation program for soil and houses with respect to cadmium, arsenic, zinc and lead, and a 30 year medical monitoring program. The remediation program was completed in 2017, and the medical monitoring program will be completed in 2041.

In 2012, Mr. Gentle was appointed Claims Administrator of the Swiger v. AmeriGas, West Virginia statewide Class Settlement, involving monetary awards and remediation for

–2–

approximately 12,000 claimants and with respect to propane gas lines.

Mr. Gentle is Special Master in the national MDL Blue Cross Antitrust Litigation, MDL 2406, with putative provider and subscriber classes, before the Honorable R. David Proctor, having been appointed in 2012. The case has 3 groups of litigants: the Policy Subscribers, the Medical Providers and the 37 Blue Cross companies. There are over 100 million potential plaintiffs. Among his duties are mediating a Settlement of the subscribers/Blue Cross litigation, and auditing subscriber and provider common benefit attorney time and expenses. Mr. Gentle mediated a Settlement between the Subscribers and the Blues from 2017 to 2020, resulting in the filing of a proposed $2.67B Settlement, approved by the Court in September 2022.

Mr. Gentle is now co-mediating a possible settlement between the Blue Cross companies and the Medical Providers in the same MDL.

From 2012 to 2014, Mr. Gentle, as Special Master, facilitated the creation and administration of a 93 claimant settlement with an undisclosed manufacturer and hospital concerning CT-Scan radiation exposure, with claimed damages being hair loss and cognitive deficiencies.

In 2013 and 2014, Mr. Gentle administered four separate Pfizer Chantix Aggregate Settlements, designing the payment matrix, handling claimant appeals, resolving liens, and paying claimants.

In 2013, Mr. Gentle was appointed Claims Administrator for the Coffey v. Phelps Dodge Oklahoma Circuit Court Class Settlement in Blackwell, Oklahoma with respect to a zinc smelter and involving a $34 million remediation project for 1,000 households with respect to cadmium, arsenic, zinc and lead. The program was completed in 2019.

In 2014, Mr. Gentle was appointed Claims Administrator for the Mingo County, West Virginia medical monitoring program, lasting 30 years and involving 750 claimants exposed to coal slurry well contamination. The program will be completed in 2044.

In 2014, Mr. Gentle was appointed Plaintiff Lien Administrator for the Hydroxycut Mass Settlement.

In November 2014, Mr. Gentle was appointed one of three Special Masters in the Stryker Hip MDL, MDL 2441, handling settlement appeals and opt-out mediations. In October 2020, he was appointed as the only Special Master in an extension of this settlement program. He mediates Settlements of Stryker opt-outs, and decides appeals in the Stryker Settlement. The case involves approximately 3,000 claimants.

In 2015, 2016, and 2017, Mr. Gentle was hired by Defendant, Smith & Nephew, and Plaintiffs' Counsel to facilitate three Memphis, Tennessee aggregate settlements involving artificial hips and to resolve related plaintiff liens.

In May 2016, Mr. Gentle was appointed Claims Administrator by the Escambia County, Florida, Circuit Court in Allen v. A.E. New, the Pensacola jail fire and explosion case, to facilitate the class settlement of the 667 claimant case. The Settlement was approved in 2018.

–3–

In October 2016, Mr. Gentle was appointed Special Master by the Fulton County, Georgia Circuit Court in Smart v. Brenntag, to carry out the administration of a chemical spill class settlement.

In February 2017, Mr. Gentle was appointed Settlement Administrator of an industrial plant contamination settlement in Bowling Green, Kentucky involving personal injury and property damages plaintiffs and Federal Mogul, with the Aggregate Settlement being approved by the Court in August 2018.

In September 2017, Mr. Gentle was appointed Claims Administrator for a GE factory fire class settlement in Louisville, Kentucky.

In October 2017, Mr. Gentle was appointed Special Master by the West Virginia Federal District Court for the Southern District of West Virginia to administer the Mt. Carbon 400 claimant aggregate train derailment settlement with Sperry (personal injury and property damage). Subsequently, in March 2018, Mr. Gentle was appointed Special Master to administer the portion of the Settlement applicable to CSX.

In October 2017, Mr. Gentle was appointed Escrow Agent for the Common Benefit Fund in the Storz Morcellator Litigation in the Superior Court of California, of Los Angeles County.

In December 2017, Mr. Gentle was appointed Special Master by the Circuit Court of Duval County, Florida to administer a plastic surgery medical malpractice aggregate settlement with 260 female claimants.

In February 2018, Mr. Gentle was appointed Cy Pres Special Master for the Winston Jefferson County ad valorem tax class settlement case.

In June 2018 Mr. Gentle began to assist lead counsel in the Abilify MDL 2734, to design a claimant payment grid and to facilitate a potential settlement of the case, and in February 2019 he was appointed Extraordinary Damages Award Special Master for the resulting aggregate settlement. The opt-out rate was less than 1%.

In September 2018, Mr. Gentle was appointed Special Master of a personal injury aggregate settlement involving a train derailment in Maryville, Tennessee with CSX and Union Tank as defendants.

In December 2018, Mr. Gentle was appointed Claims Administrator for the U.S. Pipe North Birmingham lead contamination Aggregate Settlement.

In May 2019, Mr. Gentle was appointed Settlement Special Master for a mercury contamination aggregate settlement in Florence, Alabama involving 97 plaintiffs.

In August 2019, Mr. Gentle was appointed by the Court to administer the aggregate settlement of a bus accident lawsuit in the Calhoun County, Alabama Circuit Court and involving 2 deaths and 44 personal injury claimants.

In November 2019 to November 2020, Mr. Gentle has been appointed Special Master to create grids and to administer three separate aggregate settlements for Bard IVC Filter claimants for six Plaintiffs' law firms.

In the Fall of 2020, Mr. Gentle was appointed Claims Administrator of the 4,000 Claimant Pradaxa Settlement.

In the Fall of 2021, Mr. Gentle was appointed Trustee and Claims Administrator of the $700-750M 100,000 claimant Purdue Opioid Bankruptcy Personal Injury Settlement, now on appeal, with an anticipated Effective Date in 2024.

In the Spring of 2022, Mr. Gentle was appointed Trustee and Claims Administrator of the Personal Injury Claimant Mallinckrodt Opioid Bankruptcy Settlement, with an Effective Date of June 2022.

Commencing in 2022, Mr. Gentle is the Administrator for 3 Medical Monitoring Programs that share a clinic in Vermont: Sullivan et al. v. Saint-Gobain Performance Plastics Corporation ("Bennington"); Burdick et al. v. Tonoga, Inc. ("Petersburgh"); and Baker et al. v. Saint-Gobain Performance Plastics Corp. et al. ("Hoosick Falls").

New engagements in the second half of 2022 and 2023 include claims administration of the TPC Explosion Settlement in Port Neches, Texas and the Arkema Explosion Settlement in Crosby, Texas, Aggregate Settlements involving Smith & Nephew Hips, Roundup, and a pesticide, Special Master for Opioid Settlement receipts by a State for its counties and cities, and Personal Injury Trustee for the MNK Opioid Settlement and the Endo Settlement.

2024 engagements include a food contamination class action settlement.

**B.    Education**

| Class Rank | School |
| --- | --- |
| 4 | J.D., University of Alabama School of Law 1981 (Hugo Black Scholarship) |
| Middle | M.A., Jurisprudence, Oxford University 1980 (Rhodes Scholarship) |
| Middle | B.A., Honours Jurisprudence, Oxford University 1979 (Rhodes Scholarship) |
| 1 | M.S., Summa Cum Laude, University of Miami 1977 (Maytag Fellowship [washing machines]) |
| 1 | B.S., Summa Cum Laude, Auburn University 1975 (Danforth Scholarship [Purina]) |

–5–

## C.    Employment Record

| | |
|---|---|
| June 1992 - Present | Gentle Turner & Benson, LLC<br>Managing Partner<br>Birmingham, Alabama |
| September 1991 - June 1992 | Miller, Hamilton, Snider & Odom<br>Partner<br>Manager of Birmingham, Alabama Office |
| January 1987 - September 1991 | Schoel, Ogle, Benton, Gentle & Centeno<br>Partner<br>Birmingham, Alabama |
| December 1985 - January 1987 | Law Offices of James L. North<br>Associate<br>Birmingham, Alabama |
| June 1983 - December 1985 | AT&T<br>Senior Staff Attorney<br>Atlanta, Georgia |
| May 1981 - June 1983 | North, Haskell, Slaughter, Young & Lewis<br>Associate<br>Birmingham, Alabama |

## D.    Contact Information

| | |
|---|---|
| **Website:** | www.gtandslaw.com |
| E-mail address: | egentle@gtandslaw.com |
| Telephone number: | 205-716-3000 |
| Fax number: | 205-716-3010 |
| Cell Phone: | 205-960-2533 |

## E.    References

The Honorable Kenneth Feinberg
Feinberg Law Offices
1455 Pennsylvania Avenue NW #390
Washington D.C. 20004
(202) 256-3877
kfeinberg@feinberglawoffices.com

David Boies, Esq.
Boies Schiller Flexner
55 Hudson Yards, 20th Floor
New York, NY 10001
(914) 629-0200
dboies@bsfllp.com

The Honorable Thomas A. Bedell
Circuit Court Judge of Harrison County, WV
Harrison County Courthouse
301 West Main Street, Room 321
Clarksburg, West Virginia 26301
(304) 624-8593

Kim West, Esq.
Wallace, Jordan, Ratcliff & Brandt, LLC
First Commercial Bank Building
800 Shades Creek Parkway, Suite 400
Birmingham, Alabama 35209
(205) 870-0555
Email address: kwest@wallacejordan.com

The Honorable U.W. Clemon
Retired Federal District Court Judge
5202 Mountain Ridge Parkway
Birmingham, Alabama 35222
(205) 837-2898
Email address: clemonu@bellsouth.net

The Honorable R. David Proctor
United States District Court Judge
Hugo L. Black U.S. Courthouse, 7th Floor
1729 Fifth Avenue North
Birmingham, Alabama 35203
(205) 278-1982

Matthew H. Lembke, Esq.
Bradley Arant Boult Cummings, LLP
1819 Fifth Avenue North
Birmingham, Alabama 35203
(205) 521-8560
Email address: mlembke@bradley.com

J. Mark White, Esq.
White Arnold & Dowd, P.C.
2025 3rd Avenue North, Suite 500
Birmingham, Alabama 35203
(205) 323-1888
Email address: mwhite@whitearnolddowd.com

Robert B. Roden, Esq.
Shelby Roden, LLC
2101 Highland Avenue S, Suite 200
Birmingham, AL 35205
(205) 933-8383
Email address: bob@shelbyroden.com

Virginia Buchanan, Esq.
Levin, Papantonio, Thomas, Mitchell,
Rafferty and Proctor, P.A.
316 South Baylen Street
Pensacola, Florida 32502
(850) 435-7023
Email address: vbuchanan@levinlaw.com

D. Blayne Honeycutt, Esq.
Fayard & Honeycutt
419 Flori Avenue, SW
Denham Springs, Louisiana 70726
(225) 664-0304
Email address: dbhoneycutt@fayardlaw.com

Chris Hellums, Esq.
1100 Park Place Tower
2001 ParkPlace North
Birmingham, Alabama 35203
(205) 322-8880
Email address: chrish@pittmandutton.com

Lewis C. Sutherland, Esq.
Vinson & Elkins, LLP
1001 Fannin Street, Suite 2500
Houston, Texas 77002-6760
(713) 758-2367
Email address: lsutherland@velaw.com

Daniel E. Laytin, P.C.
Kirkland & Ellis, LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000
Email address: daniel.laytin@kirkland.com

–7–

## CURRICULUM VITA

**Name of Firm:**                              Gentle, Turner, Sexton & Harbison, LLC

**Name of Staff:**                             Terry D. Turner, Jr., Esq.

**Profession:**                                Attorney

**Years with Firm:**                           Twenty-six

**Memberships in Professional**                Alabama and Florida State Bar and various Federal Court
**Societies:**                                 Bars

**Key Qualifications:**

Mr. Turner has considerable experience in accounting and taxation, having provided such advice and business support to several Qualified Settlement Funds since 1995. Mr. Turner also has experience working directly with the State of Alabama Legislature in developing and interpreting State legislation. Mr. Turner additionally practices in the areas of corporate transactions, tax and probate law.

**Education:**

J.D., Cumberland School of Law                 1996 (Cumberland Presidential Scholarship)

B.S., Accounting, Florida State University     1991 (Beall's Department Store Foundation
                                               Academic Scholarship)

## CURRICULUM VITA

| | |
|---|---|
| **Name of Firm:** | Gentle, Turner, & Benson, LLC |
| **Name of Staff:** | Katherine A. Harbison Benson, Esq. |
| **Profession:** | Attorney, Partner |
| **Date of Birth:** | October 24, 1973 |
| **Years with Firm:** | Twenty-four |
| **Nationality:** | U.S.A. |
| **Memberships in Professional Societies:** | Alabama State Bar Association, various local bar associations, and various Federal Court Bars |

**Key Qualifications:**

Ms. Benson has experience as a transactional attorney, and as an attorney involved in mass tort and class action settlement administration. She has been with the firm for twenty-one years.

Ms. Benson provided legal support to Escrow Agent and Partner Edgar C. Gentle with respect to organizational, tax planning, auditing and transactional matters involving the MDL 926 Qualified Settlement Funds, having provided such business support services to all previous MDL 926 Qualified Settlement Funds since 1997, when she began to clerk for the firm, before joining it as an associate.

Since 2005, Ms. Benson has assisted with the administration of the $300 million Tolbert PCB Settlement with Monsanto and Solutia in connection with the administration of a Global Settlement before the Federal District Court for the Northern District of Alabama applicable to approximately 18,000 claimants with respect to PCB contamination of property and PCB personal injury claims.

In 2006, Ms. Benson assisted in the administration of the Culver class action settlement, involving reimbursement of medical expenses not paid for by a medical plan provider. Ms. Benson collected claims data, reviewed medical records, processed claims data, and facilitated payment of claims.

In February of 2008, Ms. Benson began providing legal support to Claims Administrator and Special Master, Edgar C. Gentle, in the 8,500 claimant, Spelter, West Virginia case of Perrine v. DuPont, involving a $380 million Judgment, with a 40 year medical monitoring, a property remediation, and a punitive damages distribution component.

In 2008, Ms. Benson began providing legal support and claims processing for the 10,000 claimant settlement of Cam v. CIGNA, in the Jefferson County, Alabama, Circuit Court.

In 2008 and 2009, Ms. Benson was responsible for processing the ordinary damages claims and

facilitating payment for the Bullitt County, Kentucky, Train Derailment Settlement in Shepherdsville, Kentucky, which had approximately 4,000 claimants. She also assisted in the processing of the extraordinary damages claims, including review of medical records, and making payment recommendations.

In 2010, Ms. Benson became involved in the Total Body Formula Litigation, which involved claims of over 240 individuals who were injured when they consumed the Total Body dietary formula. Ms. Benson assisted Special Master Edgar C. Gentle by reviewing medical records, and recommending a payment/injury score for reimbursement, as well as participating in the mediation and partial resolution of the litigation. Ms. Benson is also working with the Special Master and the parties to resolve Medicare, Medicaid and other subrogation claims associated with the litigation. In 2010, Ms. Benson became involved in the Wayne v. Pharmacia, 3,211 claimant aggregate PCB case in the Jefferson County, Alabama, Circuit Court. Ms. Benson assisted Claims Administrator Edgar C. Gentle, in resolving claimant consent matters involving the settlement, as well as processing claims, and working with the Claims Administrator, the parties and various governmental agencies to resolve Medicare, Medicaid and other subrogation claims associated with the litigation.

In 2011, Ms. Benson became involved in the 4,000 claimant settlement of Rowe v. DuPont, a ground water contamination claims case, in the U.S. District Court in Camden, New Jersey. Ms. Benson has been responsible for designing claim form processing protocols, processing and evaluating claims for payment, and resolution of claim form deficiencies.

In 2012, Ms. Benson began providing legal support to Edgar C. Gentle, the Claims Administrator nominated by the Parties for the $118 million Blackwell, Kay County, Oklahoma Settlement involving soil and house remediation surrounding a former zinc smelter site in Coffey v. Freeport McMoran.

In 2013 and 2014, Ms. Benson worked with Edgar C. Gentle to administer four separate Pfizer Chantix Aggregate Settlements, design the payment matrix, handle claimant appeals, resolve liens, and pay claimants.

In 2015 and 2016, Ms. Benson began working to facilitate three individual aggregate settlements involving individuals who were exposed to contaminated lots of a steroid compounded by the New England Compounding Center during the spring and summer of 2012. Ms. Benson's work in this matter included reviewing medical records, and determining a payment amount under the Court approved grid.

In 2015, 2016, and 2017, Ms. Benson began working with a hip manufacturer and Plaintiffs' Counsel to facilitate three Memphis, Tennessee aggregate settlements involving artificial hips and to resolve related plaintiff liens. Ms. Benson's work in this matter includes reviewing medical records, and recommending a payment/injury score for reimbursement, as well as participating in the mediation and partial resolution of the litigation. Ms. Benson is also working with the parties to resolve Medicare, Medicaid and other subrogation claims associated with the litigation.

In 2016, Ms. Benson began work on the Allen v. A.E. New Pensacola jail fire and explosion case,

to facilitate the potential settlement of the case, including working with the Claims Administrator and Parties to develop the claim form and claims processing protocols, reviewing medical records, and processing and evaluating claims for payment.

In October 2016, became involved in the Fulton County, Georgia, Smart v. Brenntag case, assisting the Special Master in carrying out the administration of a chemical spill settlement. Ms. Benson has been responsible for assisting in the design of the claim form processing protocols, processing and evaluating claims for payment, and resolution of claim form deficiencies as well as resolution of Medicare and Medicaid claims.

In 2017, Ms. Benson became involved in the Scottsville, Kentucky, Federal Mogul case, assisting the Special master in carrying out the administration of the aggregate settlement. Ms. Benson has been involved in the design of the claim form processing protocols, evaluating claims for payment, resolution of claim form deficiencies, and resolution of government and private liens.

In September 2017, Ms. Benson began working to assist the Claims Administrator for a GE factory fire in Louisville, Kentucky. Ms. Benson is responsible for assisting in the design of the claim form processing protocols, processing and evaluating claims for payment, and resolution of claim form deficiencies as well as resolution of Medicare and Medicaid claims.

In 2018, Ms. Benson became involved in the Abilify MDL 2734 in designing the claimant payment grid, as well as evaluating Extraordinary Damages awards for the Settlement.

In 2019, Ms. Benson managed the aggregate settlement process for the Settlement Special Master/Claims Administrator for several settlements, including a mercury contamination settlement, a multi plaintiff bus accident settlement, and multiple Bard IVC Filter settlements.

In 2020, Ms. Benson began management of the claims and lien administration processes for a 4,000 Claimant Pradaxa settlement.

New engagements in 2021 through 2023 included assisting the Special Master in carrying out the claims administration for the Personal Injury Claimant Mallinckrodt Opioid Bankruptcy Settlement, 3 Medical Monitoring Programs, the TPC Explosion Settlement in Port Neches, Texas, various Hip aggregate settlements, as well as conducting mediations for various matters.

**Education:**

J.D., University of Alabama School of Law          1998

B.S., University of Alabama, *Magna Cum Laude*     1995

**Employment Record:**

2004-Present                    Gentle, Turner & Benson, LLC
                                Partner

| | |
|---|---|
| 2002-2004 | Carr, Allison, Pugh, Howard, Oliver and Sisson<br>Associate |
| 1998 - 2002 | Gentle, Pickens, Eliason & Turner<br>Associate |

## CURRICULUM VITAE

**Name of Firm:**                    Gentle Turner & Benson, LLC

**Name of Staff:**                   Joseph L. Roberta, CPA

**Profession:**                      Accountant

**Date of Birth:**                   February 7, 1965

**Years with Firm:**                 Twenty-five

**Nationality:**                     U.S.A.

**Memberships in Professional
Societies:**                         Alabama Society of Certified Public Accountants

**Key Qualifications:**

Mr. Roberta has extensive internal accounting control and internal auditing experience from a previous engagement with one of Alabama's largest banks. Mr. Roberta has experience in financial analysis, payroll, accounting, taxation and auditing, having provided such business support services to various Qualified Settlement Funds since the beginning of his employment with the firm. Mr. Roberta also has experience with financial and tax aspects of retirement plan accounts, tax preparation for various corporate entities and auditing of diversified accounts such as investment accounts and corporate accounting.

**Education:**

Bachelors Degree of Science in Accounting,
University of Alabama at Birmingham              1987

**Employment Record:**

1997 - Present                       Gentle Turner & Benson, LLC
                                     Accountant

1994 - 1997                          AmSouth Bank
                                     Internal Auditor

1990 - 1994                          Roberta Accounting Services, P.C.
                                     Accountant

1987 - 1990                          Pearce, Bevill, Leesburg & Moore, P.C.
                                     Senior Accountant

## CURRICULUM VITAE

**Name of Firm:**              Gentle, Turner, Sexton & Harbison, LLC

**Name of Staff:**             Jennifer L. Newby, CPA

**Profession:**                Accountant

**Date of Birth:**             August 20, 1968

**Years with Firm:**           Eight

**Nationality:**               U.S.A.

**Memberships in Professional
Societies:**                   Alabama State Board of Public Accountancy
                               Alabama Society of Certified Public Accountants
                               American Institute of Certified Public Accountants

## Key Qualifications:

Ms. Newby has extensive experience with internal and external auditing from her years employed in public accounting. Ms. Newby also has experience in taxation, payroll and financial statement preparation, having provided such business support services as the Chief Financial Officer of a local business and also while self employed as an accounting consultant. Ms. Newby also has experience with retirement plan accounting and individual tax preparation.

## Education:

Bachelors Degree of Science in Accounting,
University of Alabama in Huntsville      1991

## Employment Record:

| | |
|---|---|
| 2013 – 2024 | Gentle, Turner, Sexton & Harbison, LLC Accountant |
| 2001 – 2013 | Newby's Accounting Services Accounting Consultant / Business Owner |
| 1997 – 2001 | Magnolia Corporate Services, Inc. Chief Financial Officer |
| 1996 – 1997 | Donaldson, Holman & West, P.C. Senior Accountant |
| 1995 – 1996 | HealthSouth Corporation Senior Benefits Coordinator |
| 1991 – 1995 | Donaldson, Holman & West, P.C. Accountant |

# EXHIBIT B

Case 2:13-cv-20000-AMM    Document 3336-3    Filed 07/22/25    Page 24 of 25

**Blue Cross Blue Shield Providers Common Benefit Fund**
**Total Held Expenses and Hours by Firm from Inception Through September 30, 2024**

January 31, 2025

| Law Firm | Law Firm Held Expenses through September 30, 2024 | Total Hours by Firm through September 30, 2024 |
|---|---|---|
| Archie Lamb & Associates | $ - | 308.30 |
| Axelrod, LLP (previously reported as Axelrod & Dean LLP) | $ 43,793.64 | 8,631.80 |
| Bailey Glasser LLC | $ 24,431.14 | 5,806.60 |
| Beasley, Allen, Crow, Methvin, Portis & Miles | $ 83,371.17 | 13,154.10 |
| Bonnett, Fairbourn, Friedman & Balint, P.C. | $ 37,405.34 | 4,354.70 |
| Joey James Law (previously reported as Bunch & James) | $ 631.39 | 1,340.60 |
| Burke Harvey, LLC | $ 1,992.25 | 288.60 |
| The Honorable U.W. Clemon | $ 11,430.02 | 1,620.50 |
| Cusimano, Roberts & Mills | $ 344.43 | 880.50 |
| Dillon & Findley, LLC | $ 5,789.80 | 449.10 |
| Dodge & Associates, P.C. | $ - | - |
| Eyster, Key, Tubb, Roth, Middleton & Adams | $ 81,466.11 | 10,047.50 |
| The Frankowski Firm | $ - | 887.60 |
| Glast, Phillips & Murray, P.C. | $ 8,794.70 | 7,323.20 |
| Gray & White Law | $ 37,929.36 | 9,014.90 |
| Hayes Hunter PC (previously reported as The Hayes Law Firm) | $ 10,745.46 | 1,607.80 |
| Heidman Law Firm | $ - | 138.50 |
| Jinks, Crow & Dickson, P.C. | $ 36,988.70 | 9,219.70 |
| Kozyak, Tropin, Throckmorton | $ 57,119.55 | 7,077.40 |
| Law Offices of David Balto | $ 537.70 | 2,158.40 |
| Law Office of John C. Davis | $ 46.80 | 214.00 |
| Law Offices of Stephen M. Hansen, P.S. | $ - | 79.10 |
| Lundberg Law Firm, LLC. | $ - | 274.40 |
| Gurley Law Firm, LLC (previously reported as Michael Gurley Law Firm | $ 8,024.41 | 7,159.30 |
| Penn & Seaborn, LLC | $ 59,851.54 | 4,619.80 |

**Blue Cross Blue Shield Providers Common Benefit Fund**   **January 31, 2025**
Total Held Expenses and Hours by Firm from Inception Through September 30, 2024

| Firm | Expenses | Hours |
|---|---|---|
| Pittman Firm, P.A. | $ 20,934.83 | 988.60 |
| Podhurst Orseck, P.A. | $ 141,096.39 | 21,719.60 |
| Reich & Binstock, LLP | $ 51,929.59 | 4,901.40 |
| Schlichter, Bogard & Denton | $ - | 661.90 |
| Shelby Roden, LLC | $ - | 1,381.80 |
| Simons & Associates | $ 714.70 | 85.30 |
| Strom Law Firm | $ 9,143.47 | 5,345.80 |
| Horn Aylward & Bandy, LLC (previously reported as Walters, Bender, Strohbehn & Vaughan) | $ 6,264.43 | 3,574.80 |
| Whatley, Kallas LLP | $ 983,608.59 | 174,419.40 |
| White, Arnold, Dowd, P.C. | $ 24,849.10 | 14,514.00 |
| Whitfield, Bryson & Mason | $ - | - |
| Wiggins, Childs, Pantazis, Fisher & Goldfarb, LLC | $ 74,673.31 | 7,015.40 |
| Wood Law Firm | $ 300,898.89 | 42,042.90 |
| Totals | $ 2,124,806.81 | 373,307.30 |

Case 2:13-cv-20000-AMM   Document 3336-3   Filed 07/22/25   Page 25 of 25