FILED

2025 Jul-24  AM 07:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| IN RE: BLUE CROSS BLUE SHIELD ANTITRUST LITIGATION | ) Master File No. 2:13-CV-20000-RDP |
| | ) |
| | ) MDL No. 2406 |
| | ) |
| This document relates to: | ) |
| | ) |
| Case No. 2:12-cv-2532 | ) |
| | ) |

**HCA's REPLY MEMORANDUM IN SUPPORT OF ITS OBJECTION
TO THE FINAL APPROVAL OF THE CLASS SETTLEMENT
BECAUSE THE RELEASE IS UNREASONBLY AMBIGUOUS**

Provider Class Members North Texas Division, Inc. and West Florida Division, Inc. on behalf of themselves and their affiliated HCA Provider Class Members (collectively "HCA") submit this Reply Memorandum in Support of its Objection to certain portions of the Provider Class Settlement Agreement. As explained more fully below, the Blues' statements concerning the release do not resolve its ambiguity, which must be further addressed by the Court. At the end of this Reply, HCA respectfully suggests a means for the Court to address its objection.

As detailed in HCA's Objection, HCA—as the largest hospital system in the country—is particularly impacted by uncertainty in the reach of the release. But nearly all Providers will encounter the difficulties occasioned by the ambiguity of the release as to whether ordinary course claims that involve the Blue Card Program are released by this settlement. In response to HCA's objection, the Blues—and Class Plaintiffs—argue that the releases are not ambiguous and, further, both emphasize the similarity between the release here, and that approved by this Court and the Court of Appeals in the Subscriber Class Settlement. At a high level, the problem here is that the identical factual predicate doctrine text in the Provider Settlement Agreement release may be read

to swallow the whole "ordinary course" claims carve out if an ordinary course claim involves the Blue Card Program.

To frame the issue for the Court, consider the *pending* HCA lawsuit against a Blue, discussed in HCA's Objection at pages 6-7 (*Bay Area Healthcare Group, Ltd. d/b/a Corpus Christi Medical Center v. California Physicians Service d/b/a Blue Shield of California*, Case No. 2025-cv-21 (S.D. Tex) (complaint filed Jan. 24, 2025). An HCA hospital in Texas has sued Blue Shield of California (Blue CA) for failure to comply with health benefit plan in violation of ERISA, breach of contract, and breach of implied-in-fact contract because of Blue CA's failure to reimburse HCA for services rendered to a Blue CA insured who required treatment in an HCA hospital in Texas.  No antitrust claims are alleged.  The Blue CA insured was able to obtain treatment at the HCA Texas hospital because of the terms, conditions, and administration of the BlueCard Program.  HCA has a contract with BCBS Texas (Blue Texas), which requires the HCA hospital to participate in the Blue Card Program, but because the subscriber's Blue Home Plan (Blue CA) does not have a contract with HCA's Texas hospital, HCA is forced to sue the non-contracting Blue Home Plan for payment for the healthcare services that it provided to the Blue CA insured.[1]

Contrary to the Blues' argument at page 10 of their Brief, these are not "hypothetical" lawsuits presenting a future claim for relief.  These are representative examples of *pending* suits that—if the Court approves the Provider Class Settlement Agreement—may be impacted.  These

---

[1]     The same type of ordinary course commercial payment dispute involving the Blue Card Program is alleged by HCA in other pending HCA lawsuits against Individual Settling Blues. *See e.g., Columbia Medical Center of Plano Subsidiary, L.P. d/b/a Medical City Plano and d/b/a Medical City Frisco etc. v. Highmark Inc. d/b/a Highmark Blue Cross Blue Shield etc.*, Case No. 25-00558 (N.D. Tex.) (complaint filed Mar. 5, 2025); *Methodist Healthcare System of San Antonio, Ltd., L.L.P. V. Blue Cross Blue Shield Healthcare Plan of Georgia, Inc.*, Case No. 23-01544 (W.D. Tex.) (amended complaint filed April. 15, 2025).

pending lawsuits frame the question whether the Release in the Provider Class Settlement Agreement presents a clear and present (real) commercial danger to HCA and other hospital providers. This is because the ordinary course payment problem presented in these HCA cases occur often for hospitals in connection with the Blue Card Program and will become especially worse for HCA as the nation's largest hospital company with 190 hospitals in 20 States.

The Blues' Brief explains that "the Release contains an express exception for claims arising in the ordinary course of business that are unrelated to the factual predicates of the Provider Actions." Defense Brief at 4. Stated differently, according to the Blues, "the Release excludes (*i.e.*, preserves) ordinary-course-of-business claims that are based on 'claims by the Provider in the Provider's capacity as a plan sponsor or subscriber' or 'regarding whether a Settling Individual Blue Plan properly paid or denied a claim for a particular product, service or benefit based on the benefit plan document, Provider contract, or state or federal statutory or regulatory regimes (including state prompt pay laws).'" Later in their Brief, in discussing the identical factual predicate doctrine, the Blues write that "the Provider Release … does not bar 'any claims related to *conduct* that was not challenged in the underlying lawsuit." Defense Brief at 5 (italics added). But the Blues also write at page 8 of their Brief "that even claims arising under the ordinary course of business are subject to the Release if they are based on the same factual predicate as the Provider Actions."

The sticking point here is that the Provider Class Fourth Amended Complaint deals with the Blue Card Program in the antitrust context. It alleges that the Blue Card Program enables the Blues to maintain their allegedly anticompetitive agreement. *See, e.g.,* Consolidated Fourth Amended Provider Complaint, ECF 1083 (N.D. Ala. Apr. 18, 2017), ¶. 11 ("Blues operate through the Blue Card System that creates numerous inherent inefficiencies such as the fat that Providers

3

in Alabama half to become aware of and deal with coverage and payment rules of 35 other Blues in addition to BCBS-AL…. In the Blue Card System, Anthem has the information on the more than 120,000 members in Alabama while BCBS-AL has the information on the patients."); ¶ 13 ("Defendants are able to maintain this anticompetitive agreement because they have the Blue Card Program."); ¶ 8 ("In the Blue Card Program the subscriber's Blue is the Home Plan and the Defendant Blue with the Service Area where the healthcare goods, services or facilities are provided is the Host Plan."); ¶ 14 ("Blue Card agreement is a part of the other [anticompetitive] agreements and reinforces them by allowing them not to compete and providing the *quid pro quo* to the tune of billions of dollars each year that the Blues pay to each other and charge to their customers.").

HCA's ordinary course claims for payment for services do not include antitrust claims and, as noted, the Blues' Brief states that "the Provider Release … does not bar 'any claims related to *conduct* that was not challenged in the underlying lawsuit,'" Defense Brief at 5 (italics added). The critical question as to the breadth of the release is whether the Home Blue's non-payment or insufficient payment of a Host Blue Plan hospital is "conduct" "not challenged in the underlying lawsuit" and, thus, expressly not released, *even if the Home Blue's decision to pay or not pay is based on some aspect of the Blue Card Program*? Or, to pose the question using the Blues' own words at page 7 of their Brief, is a claim against Individual Blues for "pa[yment] or deni[al] [of] a claim [by a Host Blue Plan hospital] for a product, service, or benefit based on a benefit plan document, Provider contract, or state or federal statutory or regulatory regime (including state prompt pay laws)" released *if the Blue Card Program is what enables the Home Blue subscriber to obtain treatment at a Blue Host Plan hospital*?

4

Defendant Blues argue that the release should be adopted because it mirrors the release approved by the Eleventh Circuit in the Subscriber Class Settlement. But those release terms are different because Subscribers and Providers operate in different markets, and the commercial relationship between a Blue and a Subscriber is different from the commercial relationship between a Blue and a Provider. The distinction should be self-evident. After all, Providers, not Subscribers, are routinely seeking payment from Blues for services the Providers render, which is often pursuant to the Blue Card Program. Thus, the Eleventh Circuit's decision, while helpful to the Court in some respects in evaluating the release in the Provider Class Settlement Agreement, does not address the scope of release issue to Providers as presented in HCA's Objection.

In order to address HCA's Objection, we respectfully submit that the following two points as necessary clarifications on the record:

1. HCA's Objection identifies claims in several pending lawsuits that serve as functional examples of ordinary course claims that are not released by the Provider Class Settlement Agreement. For clarity, the release in the Provider Settlement Agreement does not cover HCA's claims arising in the ordinary course of business against Individual Settling Blues, such as, for example, those claims alleged in *Bay Area Healthcare Group, Ltd. d/b/a Corpus Christi Medical Center v. Physicians Service d/b/a Blue Shield of California*, Case No. 2025-cv-21 (SD Tx).

2. The release in the Provider Class Settlement Agreement does not cover claims that arise in the ordinary purse of business and involve the Blue Card program and are based solely on whether a Settling Individual Blue Plan properly paid or denied a claim for a particular product, service or benefit, based on the benefit plan document, Provider contract, payer policy for clinical, payment or utilization management, or state or federal statutory or regulatory regimes (including state prompt pay laws).

If the Blues object to Points 1 and 2 above, then, unfortunately, they are overreaching and seeking the release of non-antitrust ordinary course claims that were never within the scope of the Provider Class Action. Their doing so would render the Provider Settlement Agreement objectionable.

Dated: July 24, 2025

Respectfully submitted,

By: */s/ William J. Blechman*_____

      William J. Blechman, Esquire
      Michael G. Dickler, Esquire
      SPERLING KENNY NACHWALTER, LLC
      1441 Brickell Avenue
      Suite 1100
      Miami, Florida 33131
      Tel:  (305) 373-1000
      Fax:  (305) 372-1861
      Email:  wjb@sperlingkenny.com
             mdickler@sperlingkenny.com