FILED

2025 Nov-07  PM 04:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **IN RE:**<br>**BLUE CROSS BLUE SHIELD**<br>**ANTITRUST LITIGATION**<br>**(MDL NO. 2406)** | **Master File No. 2:13-CV-20000-RDP**<br><br>**This Document Relates to**<br>**Provider Track Cases** |
| **IN RE:**<br>**BLUE CROSS BLUE SHIELD**<br>**ANTITRUST LITIGATION**<br>**(MDL NO. 2406)** | **Master File No. 2:25-MD-10000-RDP** |

## PROVIDER PLAINTIFFS' OPPOSITION TO
## OPT-OUT PLAINTIFFS' MOTION TO CONDUCT DISCOVERY

**TABLE OF CONTENTS**

INTRODUCTION ..........................................................................**Error! Bookmark not defined.**

ARGUMENT ................................................................................................................. 2

   I.  Courts Uniformly Enter Set-Asides Without Ordering Discovery. ................................... 2

   II.  The Opt-Outs Do Not Dispute That the Providers Have Conferred
       Significant Benefits on Them. ................................................................................... 4

   III. The Requested Discovery Would Be Incredibly Burdensome and Wasteful. .................... 9

CONCLUSION.............................................................................................................. 11

# TABLE OF AUTHORITIES

**Cases**

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980)...........................................................................1

*In re Diet Drugs Prods. Liab. Litig.*, 1999 U.S. Dist. LEXIS 1797 (E.D. Pa. Feb. 10, 1999) .......2

*In re General Motors LLC Ignition Switch Litig.*, 477 F. Supp. 3d 170 (S.D.N.Y. 2020) .............4

*In re Genetically Modified Rice Litig.*,

    2010 U.S. Dist. LEXIS 19168 (E.D. Mo. Feb. 24, 2010)................................................2, 3

*In re Lidoderm Antitrust Litig.*, 2017 WL 3478810 (N.D. Cal. Aug. 14, 2017).........................1, 2

*In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 644 (E.D. Pa. 2003)....................................3, 7

*In re Zetia (Ezetimibe) Antitrust Litig.*,

    2022 U.S. Dist. LEXIS 234944 (E.D. Va. Nov. 8, 2022)..................................................4

*In re Zyprexa Prods. Liab. Litig.*, 467 F. Supp. 2d 256 (E.D.N.Y. 2006) ....................................2

**INTRODUCTION**

The Opt-Outs misapprehend the nature of the Providers' motion for a set-aside and the standards for deciding it. The justification for a set-aside is the benefit conferred by lead counsel on opt-out plaintiffs: it ensures that lead counsel can be compensated for that benefit, and it prevents "persons who obtain the benefit of a lawsuit" from being "unjustly enriched at the successful litigants' expense." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  Moreover, a set-aside does not, by itself, entail any payment to lead counsel. Instead, it protects lead counsel's ability to seek an award from the court in the event of a recovery, and it limits the amount lead counsel can obtain—providing "clarity and certainty to the [opt-outs] as to the most [lead counsel] can seek from any opt-out settlements or judgments." *In re Lidoderm Antitrust Litig.*, 2017 WL 3478810, at *2 (N.D. Cal. Aug. 14, 2017).

Because a set-aside focuses on the benefit conferred, rather than the specific costs incurred by lead counsel, and because it does not require opt-outs to pay lead counsel anything, it is unsurprising that the Opt-Outs cite no case in which a court hesitated to order a set-aside because the opts-outs had not conducted discovery. To the contrary, courts routinely enter set-aside orders early in the litigation. This is because courts can determine, based on their knowledge of the case, whether lead counsel have at least potentially created a common benefit that opt-outs could use themselves.

Here, the Providers listed eight categories of common benefits they created for the class. Set-Aside Motion (Doc. No. 3357; Opt-Out Doc. No. 22) at 5–14. The Opt-Outs do not dispute that they have already enjoyed, or intend to enjoy, significant benefits from six of them, including by copying the Providers' complaint and legal theories, and relying on significant rulings obtained by the Providers. For the other two, discovery and expert work, the Opt-Outs do not dispute that

they intend to take advantage of this MDL work product; they merely question the extent to which the Providers bore the cost of developing it, and the extent to which they will ultimately benefit from it. The first question is irrelevant to the Providers' motion because, as stated above, a set-aside reflects potential benefits, not recoupment of costs. And the second question cannot be answered until an Opt-Out recovers from the Blues. Therefore, there is no reason to grant the unprecedented relief of holding the Providers' motion in abeyance so the Opt-Outs can conduct burdensome discovery about discovery, pushing any ruling on these issues into the new year or beyond.

## ARGUMENT

### I.    Courts Uniformly Enter Set-Asides Without Ordering Discovery.

Pursuant to their equitable and managerial powers to appoint lead counsel and create a common fund, "courts have entered set aside orders prior to any recovery, as long as the litigation has been 'significantly advanced.'" *Lidoderm*, 2017 WL 3478810, at *2.[1] In practice, this means that courts often enter set-aside orders before the full extent of lead counsel's work is known. *E.g.*, *In re Genetically Modified Rice Litig.*, 2010 U.S. Dist. LEXIS 19168 (E.D. Mo. Feb. 24, 2010); *In re Zyprexa Prods. Liab. Litig.*, 467 F. Supp. 2d 256 (E.D.N.Y. 2006); *In re Diet Drugs Prods. Liab. Litig.*, 1999 U.S. Dist. LEXIS 1797 (E.D. Pa. Feb. 10, 1999). Importantly, "[t]he common benefit fund set-aside is a holdback, not a levy. A percentage of attorneys' fees will be withheld for use as compensation for attorneys who can demonstrate that they worked for the common

---

[1] On this point, *Lidoderm* cited *In re Protegen Sling & Vesica Sys. Prods. Liab. Litig.*, 2002 WL 31834446, at *1 (D. Md. Apr. 12, 2002); *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prods. Liab. Litig.*, 1999 WL 124414, at *2 (E.D. Pa. Feb. 10, 1999); *Turner v. Murphy Oil USA, Inc.*, 422 F. Supp. 2d 676, 681 (E.D. La. 2006) ("the fact that there is no 'common fund' at this stage of the litigation is of no moment.... The set-asides would be imposed to ensure that there will be adequate funds available if the plaintiffs are successful."); and Compensation for Designated Counsel, Ann. Manual Complex Lit. § 14.215 (4th ed.).

benefit of all … plaintiffs." *Zyprexa*, 467 F. Supp. 2d 256 at 267 (citation omitted). But that demonstration comes later, after an opt-out recovers; at the outset, a set-aside can be entered without trying to estimate how much lead counsel's work will benefit the opt-outs. *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 644, 661–62 (E.D. Pa. 2003) ("Although the Court does not deem it appropriate at this time to determine how much of the work performed by designated counsel benefitted plaintiffs in the tag-along actions, the Court concludes that designated counsel have made a sufficient showing to warrant establishment of a framework to ensure that funds will be available to compensate them should the Court later determine such compensation is warranted."). Because a set-aside is not a levy, and because lead counsel's entitlement to a portion of an opt-out's recovery is an issue to be decided later, no court (as far as the Providers can tell) has ever held a motion for a set-aside in abeyance so the opt-outs could take discovery of lead counsel. *Genetically Modified Rice*, 2010 U.S. Dist. LEXIS 19168, at *7 ("The objectors also contest the timing of the trust, claiming that it is premature and that it should not be established until after an opportunity for discovery and an accounting. I find that the timing of this motion is entirely appropriate."); *see Linerboard*, 292 F. Supp. 2d at 652 (giving opt-outs seven days to respond to a set-aside motion). The Opt-Outs have cited no cases in which a court awarded the relief they seek.

In fact, the only opinion involving a set-aside that the Opt-Outs cite,[2] *In re Zetia*, expressly rejected a premise of the Opt-Outs' motion for discovery. The Opt-Outs contend that a set-aside

---

[2] The Opt-Outs cite three cases involving discovery and attorneys' fees, but only one involves a set-aside: *In re Zetia (Ezetimibe) Antitrust Litigation*, 2022 U.S. Dist. LEXIS 234944 (E.D. Va. Nov. 8, 2022). In one of the other two, the defendant, who was obligated to pay the plaintiff's attorney's fees, questioned the basis of those fees. *Clark Realty Builders, LLC v. Falls at Marina Bay, L.P.*, 2007 U.S. Dist. LEXIS 116946 (S.D. Fla. June 13, 2007). In the second, an ERISA case, the plaintiffs' attorneys asked the court for an award of fees (not a set-aside) based on benefits they allegedly conferred on plan participants who did not participate in the litigation; the court determined that discovery would be necessary before it could determine whether these plan participants had received a benefit that would justify an award. *Adams v. Bowater, Inc.*, 2004 U.S. Dist. LEXIS 9247, at *38–39 (D. Me. May 19, 2024).

is unnecessary because the Providers are "claiming entitlement to additional compensation for the same work for which they have already been fully compensated." Motion for Discovery (Opt-Out Doc. No. 51) at 4.[3] In *Zetia*, the court disagreed with the same argument: "[Tag-Along Plaintiffs] observe that Lead Counsel already represent claimants seeking claims worth potentially hundreds of millions of dollars and thus face little risk of being undercompensated if they are successful. But Tag-Along Plaintiffs' narrow assessment of the incentives in class action suits overlooks the primary justification for the common benefit fund doctrine — namely ensuring those parties who benefit from counsel's efforts contribute to the costs." *In re Zetia (Ezetimibe) Antitrust Litig.*, 2022 U.S. Dist. LEXIS 234944, at *24–25 (E.D. Va. Nov. 8, 2022); *accord In re General Motors LLC Ignition Switch Litig.*, 477 F. Supp. 3d 170, 174 (S.D.N.Y. 2020) ("[C]omplex aggregate litigation often raises a classic free-rider problem. A subset of plaintiffs' lawyers do the lion's share of the work, but that work accrues to the benefit of all plaintiffs. If those other plaintiffs were not required to pay any costs of that work, high-quality legal work would be under-incentivized and, ultimately, under-produced." (internal quotation marks omitted)). Whether or not lead counsel has been compensated for work performed for plaintiffs who remained in the class, a set-aside and ultimately a fee is proper if lead counsel have also made a benefit available to opt-opts.

## II.    The Opt-Outs Do Not Dispute That the Providers Have Conferred Significant Benefits on Them.

In their Set-Aside Motion, the Providers listed eight categories of benefits that they conferred on all class members, including Opt-Outs. For six of those categories, the Opt-Outs' motion for discovery says next to nothing:

---

[3] The Opt-Outs incorrectly assert that "Provider Class Counsel confirmed" that the August 19, 2025 award of fees and costs "fully compensated them for all work performed in the MDL during an October 7, 2025 call with Provider Opt-Outs." Motion for Discovery at 4. To the contrary, the Providers' counsel explained on that call that the award fully compensated them for work performed on behalf of class members who participated in the settlement, but not for benefits that the Provider counsel conferred on Opt-Outs.

*The Providers' Complaint*: The Fourth Amended Provider Complaint "was the culmination of years of the Providers' research, discovery, and refinement of their claims through litigation." Set-Aside Motion at 5. Every Opt-Out used that complaint as the framework for their own complaints, with nearly all Opt-Outs quoting large swaths of the complaint verbatim. And the complaint is especially valuable because its allegations have survived multiple motions to dismiss. Opt-Out Doc. No. 7 at 22 ("there are unlikely to be significant 'new' legal issues in need of resolution at the motion to dismiss stage given the similarity in Provider Opt-Outs' claims against the Blues to those pleading issues already litigated by the Provider Class and ASO Opt-Outs"). In their motion for discovery, the Opt-Outs do not dispute that they have already benefited from the Providers' work because their complaints rely almost entirely on work done by Providers' counsel.

*Market Definition*: It took years of research to develop the market definition that supported the Providers' case, and which would be the linchpin of the damages analysis in any Opt-Out litigation. Set-Aside Motion at 5–6. Following that research, the Providers established through litigation that a jury could determine it is reliable. *Id.* at 6. The Opt-Outs do not dispute that they have adopted the Providers' market definition as their own.

*Personal Jurisdiction*: The Providers litigated the Court's personal jurisdiction over the Blues through two rounds of motion practice and more than a year of intensive discovery. Set-Aside Motion at 6–7. The Opt-Outs do not dispute that this work will save them years in their own cases. Instead, they spend exactly one sentence pointing out that both Providers and Subscribers briefed and argued the motions to dismiss for lack of personal jurisdiction. But personal jurisdiction over the Providers' claims involved unique issues, given that Providers may only contract with the Blue Plan in their service area (with limited exceptions), that they treat patients covered by Blue Plans across the country through the BlueCard program, and that they typically

5

have arbitration agreements in their contracts. If this case had been litigated only by the Subscribers, there would have been no need to establish personal jurisdiction over out-of-state Blue Plans for Providers' claims, leaving the Opt-Outs to establish personal jurisdiction on their own.

*Standard of Review*: Through years of discovery and motion practice, the Providers obtained a ruling that that the aggregation of Exclusive Service Areas and National Best Efforts would be judged under the *per se* rule. Set-Aside Motion at 7–9. The Opt-Outs do not dispute that rulings on important issues inure to the common benefit of all plaintiffs, that they intend to rely on this ruling in their own cases, or that Opt-Out counsel used this ruling as a selling point when encouraging healthcare providers not to participate in the settlement. *See* JPML Doc. No. 911-1 at 8 ("The transferor courts for the Provider Track opt-out cases, including in the *NorthBay* Plaintiffs' action, will similarly benefit from the reasoning outlined in Judge Proctor's MDL rulings."). Here too, they devote just one sentence to the standard of review, stating that the Subscribers briefed the issue as well. As with personal jurisdiction, the Providers' motion raised unique issues, and the Providers and Subscribers filed separate briefs. The Blues' rules for Exclusive Service Areas as applied to Subscribers and Providers were not the same; a ruling that the aggregation of Exclusive Service Areas in Subscriber contracting (combined with other restrictions) was unlawful *per se* would not necessarily have implied the same for the use of Exclusive Service Areas in Provider contracting. The Providers had to earn that ruling themselves.

*Other Substantive Rulings*: The Opt-Outs do not dispute that they will benefit from the denial of the Blues' motion for summary judgment that the Providers' damages are time-barred and speculative, and from the extensive work that Providers did to show why health insurance is not a two-sided platform. Set-Aside Motion at 12–13.

*American Pipe Tolling*: The Opt-Outs do not dispute that if the Providers had not filed their case, they would have had to litigate it themselves or forgo almost 99% of the damages available during the *per se* class period, Set-Aside Order at 13–14, or that *American Pipe* tolling is an important benefit relevant to a set-aside motion, *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 644, 661 & n.10 (E.D. Pa. 2003).

No discovery is needed to conclude that these undisputed benefits alone would justify a significant set-aside.

Rather than address these undisputed benefits, the Opt-Outs focus primarily on discovery, particularly the discovery underlying the Providers' damages model. Of course, discovery into damages was only a part of the discovery the Providers undertook. As the Court knows, the Providers spent years in hard-fought battles with the Blues about discovery on jurisdiction and the merits—discovery that formed the basis of almost every motion the Providers filed or opposed. The Opt-Outs have represented to this Court and the JPML not just that they intend to "obtain the benefit of the existing discovery record," Opt-Out Doc. No. 7, but that their evidence on issues common to all Opt-Outs will almost exclusively be the evidence developed in the MDL, *e.g.*, JPML 771-1 at 6 ("[C]ommon discovery, which has been extensive, has largely concluded and any additional discovery would be Plaintiff-specific and limited.") (footnote omitted).[4] And they have acknowledged that obtaining this discovery required extraordinary effort. *E.g.*, JPML Doc. No. 668-1 at 7 ("While overseeing discovery, the MDL Court 'ruled on over 150 discovery motions, which led to ninety-one discovery orders.' Order, N.D. Ala. ECF No. 3075 at 3. Beyond

---

[4] *See also* JPML Doc. No. 668-1 at 7 ("Because common discovery is closed, the [Direct Action Provider Plaintiffs'] cases will likely quickly turn to discovery on provider-specific damages."); JPML Doc. No. 673-1 at 7 ("[T]he time for MDL litigation is at or near its end. The 'primary tasks' are complete. Non-Alabama litigation will involve 'individualized discovery' 'dictated by unique issues in each of those cases.'"); JPML Doc. No. 911-1 at 9 ("Because common discovery is closed and the MDL Court has already ruled on key issues relating to Defendants' violation of the antitrust laws and liability … , discovery in the *NorthBay* action will focus on the unique aspects of this case—namely, the *NorthBay* Plaintiffs' damages.").

that, the Provider Track plaintiffs in the MDL 'conducted over 120 depositions of Defendants and third-party witnesses, and defended over twenty depositions of class representatives and various experts.' *Id.* at 3–4."). In light of the Opt-Outs' near-total reliance on MDL discovery for common issues, they cannot claim with a straight face that they will not receive a significant benefit from discovery.

Even on discovery and expert work relating to damages, the Opt-Outs are likely to benefit significantly. Although the Opt-Outs claim to "understand that Provider Class Counsel conducted little to no expert work regarding geographic markets outside of Alabama," Motion for Discovery (Opt-Out Doc. No. 51) at 2, the Providers publicly disclosed in 2019 that their damages expert "develop[ed] a regression equation to model the relationship between a commercial buyer's enrollee share (at the CBSA/county level) and the prices for general acute care hospitals' services *in the United States*." Doc. No. 2414 at 5 (footnote omitted) (emphasis added). Their expert also "model[ed] the relationship between the existence of limited Blue-on-Blue competition in CBSAs/counties and Blues' homed enrollee shares in CBSAs/counties *in the United States*." *Id.* at 7 (emphasis added). The Providers have also publicly disclosed that assembling this data and building the models (which required their experts to clean, organize, synthesize, and analyze data from dozens of sources) constituted "the majority of their $100 million in litigation expenses." Doc. No. 3258-1 at 21. After more litigation, including expert depositions, the Providers obtained a ruling that "[b]ecause Providers' damages model is not speculative and is not based on guesswork, a jury could determine that it is reliable." Doc. No. 3092 at 11. A damages model based on nationwide data that can already go to a jury gives the Opt-Outs a tremendous head start.

The Opt-Outs downplay the significance of the Providers' discovery and expert work on damages based on the following quotation from the Court's preliminary approval opinion, which was repeated in a letter from Provider Co-Lead Counsel to class members:

> Provider Plaintiffs spent tens of millions of dollars on experts to collect, clean up, synthesize, and analyze data just to calculate the damages suffered by Alabama hospitals. . . . If an individual hospital system were to file an individual action against the Blues, *they would need to repeat this process for every geographic market in which they allegedly sustained damages. The cost of litigating these cases is exorbitant.*

Motion for Discovery at 2; *see* Doc. No. 3225 at 32. The Providers admit that the Opt-Outs may have a lot of work to do to prove damages in their own cases. But they will not be starting from scratch; if they access MDL discovery and the work product of the Providers' experts, they will have a massive set of cleaned and organized nationwide data, and a vetted econometric model upon which to build. That the Opt-Outs have a long way to go would not undermine the Providers' case for a set-aside; in every litigation, opt-out plaintiffs have to prove their individual damages. Instead, the Opt-Outs have identified a question that will arise if the Providers move the Court for an award from an Opt-Out's recovery: how important was the Providers' work relative to the Opt-Out's work? That question cannot be answered now, even if the Opt-Outs could take all the discovery in the world; it must wait for the Opt-Outs to litigate their cases. As in any MDL, the availability of a benefit is enough to justify a set-aside.

## III. The Requested Discovery Would Be Incredibly Burdensome and Wasteful.

The Opt-Outs' motion lists eight categories (and six subcategories) of information they seek from the Providers. Opt-Out Doc. No. 51-1, Ex. B. It is wildly unclear how most of this discovery would advance the cause of determining an appropriate set-aside. In addition, producing this information would require the Providers to bring back online many terabytes of data, undertake thousands of hours of work, and likely re-engage their experts—all at tremendous cost to the

Providers—apparently to help the Opt-Outs avoid any obligation to pay for the Providers' work product at all. To respond even in part to the Opt-Outs' requests, which ask for information to be analyzed in ways it never was in the MDL, the Providers would have to:

- Pay their discovery vendor to reactivate document databases that have been offline for years;

- Review the transcripts of more than 120 depositions to calculate the relative time spent by Provider and Subscriber counsel;

- Research the circumstances of hundreds of the Blues' productions, unstructured and structured, to determine whether the same data was provided to the Subscribers;

- Determine, for every single production, whether the Subscribers shared any work product relating to that production with the Providers;

- Review every single data set produced by the Blues in order to provide a general description of it, its "overall temporal scope," and "the focus of the geographic scope";

- Summarize information in the public record, such as briefing and oral argument on motions;

- Perform a "cost breakdown" for expert reports that took years to produce; and

- Review tens of thousands of time entries to determine which ones related to class certification and settlement.

To what end? Not until the Opt-Outs recover from the Blues would anyone know what MDL work product they relied on, and what they didn't. At that point, it might be worthwhile to parse the Providers' contributions to work product used by the Opt-Outs in their own cases. For now, when the Providers seek only a framework, not a payment, it is neither possible not useful.

**CONCLUSION**

The Opt-Outs seek to be the first litigants ever to delay a set-aside motion so they can take burdensome and unnecessary discovery. Their request should be denied because a set-aside is merely a framework for ensuring that funds are available to counsel who created a common benefit, and because the Opt-Outs do not dispute that they intend to rely (and have already relied) extensively on the Providers' common-benefit work.

Dated:  November 7, 2025

Respectfully submitted,

/s/ Edith M. Kallas
Edith M. Kallas – **Co-Lead Counsel**
WHATLEY KALLAS, LLP
152 West 57th Street
41st Floor
New York, NY  10019
Tel:  (212) 447-7060
Fax:  (800) 922-4851
Email: ekallas@whatleykallas.com

 /s/ Joe R. Whatley, Jr.
Joe R. Whatley, Jr. – **Co-Lead Counsel**
W. Tucker Brown
WHATLEY KALLAS, LLP
2001 Park Place North
1000 Park Place Tower
Birmingham, AL 35203
Tel:  (205) 488-1200
Fax:  (800) 922-4851
Email: jwhatley@whatleykallas.com
        tbrown@whatleykallas.com

Barry Alan Ragsdale – **Plaintiffs' Liaison
Counsel and Discovery Liaison Counsel**
Dominick Feld Hyde, PC
1130 22nd Street South Ridge Park
Suite 4000
Birmingham, AL  35205
Tel:  (205) 536-8888
bragsdale@dfhlaw.com

Patrick J. Sheehan
WHATLEY KALLAS, LLP
101 Federal Street
19th Floor
Boston, MA 10019
Tel:  (617) 573-5118
Fax:  (617) 371-2950
Email: psheehan@whatleykallas.com

Deborah J. Winegard
WHATLEY KALLAS, LLP
1068 Virginia Avenue, NE
Atlanta, GA 30306
Tel:  (404) 607-8222
Fax:  (404) 607-8451
Email: dwinegard@whatleykallas.com

11

Henry C. Quillen
WHATLEY KALLAS, LLP
159 Middle Street, Suite 2C
Portsmouth, NH  03801
Tel:  (603) 294-1591
Fax:  (800) 922-4851
Email: hquillen@whatleykallas.com


Charles Clinton Hunter
HAYES HUNTER PC
4265 San Felipe, Suite 1000
Houston, TX 77027
Tel:  (281) 768-4731
Fax: (713) 583-7047
Email: chunter@hayeshunterlaw.com


Dennis Pantazis – *Plaintiffs' Steering Committee*
Brian Clark – *Discovery Committee*
WIGGINS CHILDS PANTAZIS FISHER
 GOLDFARB
The Kress Building
301 Nineteenth Street North
Birmingham, AL 35203
Tel:  (205) 314-0500
Fax: (205) 254-1500
Email: dgp@wcqp.com
        bclark@wcqp.com

E. Kirk Wood, Jr. – *Local Facilitating Counsel*
WOOD LAW FIRM LLC
P. O. Box 382434
Birmingham, AL 35238
Tel:  (205) 612-0243
Fax:  (205) 705-1223
Email: ekirkwood1@bellsouth.net


Aaron S. Podhurst – *Plaintiffs' Steering Committee*
Peter Prieto – *Chair, Expert Committee*
PODHURST ORSECK, P.A.
One S.E. 3rd Avenue
Suite 2300
Miami, FL  33131
Tel:  (305) 358-2800
Fax:  (305) 358-2382
Email: apodhurst@podhurst.com
        pprieto@podhurst.com


U.W. Clemon – *Plaintiffs' Steering Committee*
U. W. Clemon, LLC
5202 Mountain Ridge Parkway
Birmingham, AL  35222
Tel: (205) 837-2898
Email: clemonu@bellsouth.net

12

Dennis C. Reich – ***Chair, Damages Committee***
REICH & BINSTOCK, LLP
4265 San Felipe, Suite 1000
Houston, TX 77027
Tel:  (713) 622-7271
Fax:  (713) 623-8724
Email:  dreich@rbfirm.net

J. Mark White – ***Litigation Committee***
Augusta S. Dowd – ***Chair, Litigation Committee***
Linda G. Flippo – ***Discovery Committee***
WHITE ARNOLD & DOWD, P.C.
The Massey Building
2025 Third Avenue North, Suite 500
Birmingham, AL 35203
Tel:  (205) 323-1888
Fax:  (205) 323-8907
Email: mwhite@whitearnolddowd.com
        adowd@whitearnolddowd.com
        lflippo@whitearnolddowd.com

Nicholas B. Roth – ***Chair, Discovery Committee***
Julia Smeds Roth – ***Discovery Committee***
EYSTER KEY TUBB ROTH MIDDLETON
 & ADAMS, LLP
402 East Moulton Street, SE
Decatur, AL 35602
Tel:  (256) 353-6761
Fax:  (256) 353-6767
Email: nbroth@eysterkey.com
        jroth@eysterkey.com

Van Bunch – ***Chair, Class Certification Committee***
BONNETT FAIRBOURN FRIEDMAN &
 BALINT, P.C.
2325 E. Camelback Road, Suite 300
Phoenix, AZ 85016
Tel:  (602) 274-1100
Fax:  (602) 274-1199
Email: vbunch@bffb.com

David A. Balto – ***Expert Committee***
THE LAW OFFICES OF DAVID A. BALTO
1350 I Street, N.W., Suite 850
Washington, DC 20005
Tel:  (202) 789-5424
Fax:  (202) 589-1819
Email: david.balto@dcantitrustlaw.com

Robert J. Axelrod – ***Chair, Written Submissions Committee***
AXELROD LLP
800 Third Avenue, Suite 2800
New York, NY 10022
Tel: (646) 448-5263
Fax: (212) 840-8560
Email: rjaxelrod@axelrodllp.com

Joey K. James – ***Litigation Committee***
BUNCH & JAMES
P. O. Box 878
Florence, AL 35631
Tel:  (256) 764-0095
Fax:  (256) 767-5705
Email: joey@bunchandjames.com

W. Daniel Miles, III – ***Written Submissions Committee***
BEASLEY ALLEN CROW METHVIN PORTIS
 & MILES, P.C.
218 Commerce Street
Montgomery, AL 36104
Tel:  (800) 898-2034
Fax:  (334) 954-7555
Email: dee.miles@beasleyallen.com

13

Richard S. Frankowski – ***Discovery Committee***
THE FRANKOWSKI FIRM, LLC
231 22nd Street South, Suite 203
Birmingham, AL  35233
Tel:  (205) 390-0399
Fax: (205) 390-1001
Email: richard@frankowskifirm.com

John C. Davis – ***Written Submissions Committee***
LAW OFFICE OF JOHN C. DAVIS
623 Beard Street
Tallahassee, FL 32303
Tel:  (850) 222-4770
Email: john@johndavislaw.net

Mark K. Gray – ***Discovery Committee***
GRAY & WHITE
713 E. Market Street, Suite 200
Louisville, KY 40202
Tel:  (502) 805-1800
Fax:  (502) 618-4059
Email: mgray@grayandwhitelaw.com

Stephen M. Hansen – ***Class Certification Committee***
LAW OFFICE OF STEPHEN M. HANSEN
1821 Dock Street
Tacoma, WA 98402
Tel:  (253) 302-5955
Fax:  (253) 301-1147
Email: steve@stephenmhansenlaw.com

Harley S. Tropin – ***Damages Committee***
Javier A. Lopez – ***Discovery Committee***
KOZYAK TROPIN &
  THROCKMORTON, P.A.
2525 Ponce De Leon Boulevard, 9th Floor
Miami, FL 33134
Tel:  (305) 372-1800
Fax:  (305) 372-3508
Email: hst@kttlaw.com
        jal@kttlaw.com

Michael C. Dodge – ***Expert Committee***
GLAST PHILLIPS & MURRAY, P.C.
14801 Quorum Drive, Suite 500
Dallas, TX 75254
Tel:  (972) 419-7172
Email: mdodge@gpm-law.com

Michael E. Gurley, Jr. – ***Discovery Committee***
Attorney at Law
24108 Portobello Road
Birmingham, AL 35242
Tel:  (205) 908-6512
Email: mgurleyjr@yahoo.com

Lynn W. Jinks, III – ***Expert Committee***
Christina D. Crow – ***Discovery Committee***
JINKS CROW & DICKSON, P.C.
219 North Prairie Street
Union Springs, AL 36089
Tel:  (334) 738-4225
Fax:  (334) 738-4229
Email: ljinks@jinkslaw.com
        ccrow@jinkslaw.com

Myron C. Penn – ***Discovery Committee***
PENN & SEABORN, LLC
53 Highway 110
Post Office Box 5335
Union Springs, AL 36089
Tel:  (334) 738-4486
Fax:  (334) 738-4432
Email: myronpenn28@hotmail.com

J. Preston Strom, Jr. – ***Litigation Committee***
STROM LAW FIRM, LLC
2110 N. Beltline Boulevard, Suite A
Columbia, SC 29204-3905
Tel:  (803) 252-4800
Fax:  (803) 252-4801
Email: petestrom@stromlaw.com

C. Wes Pittman – *Settlement Committee*
THE PITTMAN FIRM, P.A.
432 McKenzie Avenue
Panama City, FL 32401
Tel: (850) 784-9000
Fax: (850) 763-6787
Email: wes@pittmanfirm.com

Robert B. Roden – *Litigation Committee*
SHELBY RODEN, LLC
2956 Rhodes Circle
Birmingham, AL 35205
Tel: (205) 933-8383
Fax: (205) 933-8386
Email: rroden@shelbyroden.com

Gary E. Mason – *Class Certification Committee*
WHITFIELD BRYSON & MASON, LLP
1625 Massachusetts Ave. NW, Suite 605
Washington, DC 20036
Tel: (202) 429-2290
Fax: (202) 640-1160
Email: gmason@wbmllp.com

Michael L. Murphy – *Discovery Committee*
BAILEY GLASSER LLP
910 17th Street, NW, Suite 800
Washington, DC 20006
Tel: (202) 463-2101
Fax: (202) 463-2103
Email: mmurphy@baileyglasser.com

Lance Michael Sears
SEARS & SWANSON, P.C.
First Bank Building
2 North Cascade Avenue, Suite 1250
Colorado Springs, CO 80903
Tel: (719) 471-1984
Fax: (719) 577-4356
Email: lance@searsassociates.com

Thomas V. Bender – *Discovery Committee*
Dirk L. Hubbard
HORN AYLWARD & BANDY, LLC
2600 Grand Blvd., Suite 1100
Kansas City, MO 64108
Tel: (816) 421-0700
Email: tbender@hab-law.com
dhubbard@hab-law.com

Gregory S. Cusimano – *Litigation Committee*
CUSIMANO, ROBERTS & MILLS, LLC
153 South 9th Street
Gadsden, AL 35901
Phone: (256) 543-0400
Fax: (256) 543-0488
Email: greg@alalawyers.net

Brian E. Wojtalewicz
WOJTALEWICZ LAW FIRM, LTD.
139 N. Miles Street
Appleton, MN 56208
Tel: (320) 289-2363
Fax: (320) 289-2369
Email: brian@wojtalewiczlawfirm.com

Archie C. Lamb, Jr.
ARCHIE LAMB & ASSOCIATES, LLC
301 19th Street North, Suite 585
The Kress Bldg.
Birmingham, AL 35203-3145
(205) 458-1210
Email: alamb@archielamb.com

Paul Lundberg
LUNDBERG LAW, PLC
600 4TH Street, Suite 906
Sioux City, IA 51101
Tel: (712) 234-3030
Fax: (712) 234-3034
Email: paul@lundberglawfirm.com

15

Jessica Dillon
Ray R. Brown
Molly Brown
DILLON & FINDLEY, P.C.
1049 W. 5th Avenue, Suite 200
Anchorage, AK  99501
Tel:  (907) 277-5400
Fax:  (907) 277-9896
Email:  Jessica@dillonfindley.com
        Ray@dillonfindley.com
        Molly@dillonfindley.com

Cynthia C. Moser
HEIDMAN LAW FIRM
1128 Historic 4th Street
P. O. Box 3086
Sioux City, IA  51101
Tel:  (712) 255-8838
Fax  (712) 258-6714
Email:  Cynthia.Moser@heidmanlaw.com

Gwen Simons
Simons & Associates Law, P.A.
P.O. Box 1238
Scarborough, ME 04070-1238
Tel: (207) 205-2045
Fax: (207) 883-7225
Email: gwen@simonsassociateslaw.com

*Counsel for Provider Plaintiffs*