FILED

2025 Dec-22  AM 09:10
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **IN RE: BLUE CROSS BLUE SHIELD** ) | **Master File No. 2:13-cv-20000-RDP** |
| ) | |
| **ANTITRUST LITIGATION** ) | **This document relates to the** |
| **(MDL NO.: 2406)** ) | **Provider Track.** |
| ) | |
| ) | |
| ) | |
| ) | |

## MOTION TO ENFORCE PROVIDER SETTLEMENT AND TO ENJOIN JACKSON HOSPITAL & CLINIC, INC.'S ADVERSARY PROCEEDING AGAINST BLUE CROSS AND BLUE SHIELD OF ALABAMA

Jackson Hospital & Clinic, Inc. ("Hospital") is a hospital in Montgonery, Alabama, now in Chapter 11 bankruptcy in the Middle District of Alabama. *See generally In re Jackson Hospital & Clinic*, Case No. 25-30256 (Bankr. M.D. Ala) ("Bankruptcy Matter" or "Bankruptcy Court"). The Hospital was a member of the putative Provider class in *In Re: Blue Cross Blue Shield Antitrust Litigation* (MDL No 2406) ("Provider MDL").[1]

---

[1] *See Provider Settlement Agreement*, Dkt. 3192-2, p. 26 (the "Provider Settlement Class" includes "all providers in the U.S. . . . who currently provide or provided healthcare services . . . to any patient who was insured by, or who was a Member or a beneficiary of, any plan administered by any Settling Individual Blue Plan during the Settlement Period.").

202817214.v1

By its own admission, the Hospital did not opt-out of the Provider class settlement ("Provider Settlement") on or before the Court's March 4, 2025 opt-out deadline. *See* Exhibit 1, p. 7, para. 18 (10/24/2025 Motion, *In re Jackson Hospital & Clinic, LLC*, Case No. 25-30256 (Bank. M.D. Ala.) (admitting that "[t]he [Hospital]. . . did not opt out of the Class Action Settlement by the [March 4, 2025] deadline.")); *see also* Memorandum Opinion Preliminarily Approving Provider Plaintiffs' Settlement, p. 56 (Dkt. 3225) (setting March 4, 2025 as the opt-out deadline). In fact, "on July 29, 2025, the [Hospital] submitted a claim form to receive potential recovery from the Class Action Settlement Fund." *See* Exhibit 1, p. 7, para. 18 (10/24/2025 Motion, *In re Jackson Hospital & Clinic, LLC*, Case No. 25-30256 (Bank. M.D. Ala.)).

Yet inexplicably, despite not making a timely request for exclusion from the Provider settlement class, and despite filing a claim form to obtain a share of the Provider Settlement funds, the Hospital filed a complaint ("AP Complaint") against Blue Cross and Blue Shield of Alabama ("BCBSAL") last Thursday, December 18, 2025, making the same legal claims alleged in the Provider MDL and relying on the factual predicates found therein. *See* AP Complaint, *Jackson Hospital & Clinic, Inc. v. Blue Cross and Blue Shield of Alabama*, Adv. No. 25-03025 (Dec. 18, 2025) (Bankr. M.D. Ala) (attached as Exhibit 2). The AP Complaint requests "**judgment**

2

**against Blue Cross Alabama <u>in excess of $250 million.</u>**"  Id. at 6 (emphasis in original).

Also on December 18th, the Hospital filed an "Emergency Motion for Temporary Restraining Order and Preliminary Injunction" ("TRO Motion") (attached as Exhibit 3).  Before BCBSAL had an opportunity to respond to the TRO Motion, the Bankruptcy Court set it for hearing on Tuesday, December 23, 2025 at 2:00 p.m.

The AP Complaint and TRO Motion are direct assaults on the integrity of the Provider Settlement and this Court's exclusive jurisdiction over the same.  Therefore, BCBSAL respectfully moves that the Court exercise its authority under the All Writs Act, 28 U.S.C. § 1651, and enjoin Hospital from any further prosecution of the AP Complaint until further notice, including but not limited to participation in the December 23, 2025 TRO hearing.

BACKGROUND

"After more than twelve years of hard-fought litigation and an astounding nine years of settlement negotiations, on October 4, 2024, Provider Plaintiffs and Defendants entered into and executed a Settlement Agreement."  August 19, 2025 Final Order and Judgment Granting Final Approval of Provider Class Action Settlement, p. 1 ("FAO").

The FAO was a final judgment for purposes of Fed. R. Civ. P. 54. *See* FAO, p. 41, para. 29. It effected a dismissed with prejudice of "the MDL, the underlying Provider Actions and [] all claims contained therein, as well as all of the Released Claims against any of the Releasees by Releasors[.]" *Id*. at 37, para. 15. An exception was made for "any claim of the Opt Outs <u>who have validly and timely requested exclusion from the Settlement Class</u> . . . ." *Id*. (emphasis added). As noted *supra*, the Hospital has admitted that it "did not opt out of the Class Action Settlement by the [March 4, 2005] deadline." Exhibit 1, p. 7, para 18 (10/24/2025 Motion, *In re Jackson Hospital & Clinic, LLC*, Case No. 25-30256 (Bank. M.D. Ala.)).

Furthermore, the FAO "permanently barred and enjoined" the Hospital and other Releasors "from commencing, maintaining, prosecuting [or] causing . . . any action, suit, proceeding or claim in any court, tribunal, . . . or other body in any jurisdiction against any Releasee based in whole or in part upon, arising out of, or in any way connected or related to any Released Claim." FAO, p. 38, para. 18.

Finally, Paragraph 22 of the FAO recognizes this Court has "exclusive" jurisdiction over "any suit, action, proceeding, or dispute arising out of or relating to the Settlement Agreement or the applicability of the Settlement Agreement . . . to resolve any disputes or controversies . . . ." *Id*. at 39, para. 22.

4

ARGUMENT

The All-Writs Act, 28 U.S.C. § 1651, permits the Court to issue an injunction to "avoid relitigation of questions once settled between the same parties," as well as "to protect or effectuate [its] judgments." *Wesch v. Folsom*, 6 F.3d 1465, 1470 (11th Cir. 1993). More specifically, courts have invoked the All Writs Act to enforce and protect judgments entered pursuant to class action settlements similar to the FAO here. *In re Managed Care*, 756 F.3d 1222, 1233 (11th Cir. 2014) ("Federal courts may invoke the authority conferred by the All Writs Act to enjoin parties from prosecuting separate litigation to protect the integrity of a judgment entered in a class action and to avoid relitigation of issues resolved by a class action."). Indeed, this Court recently did so in the Subscriber Track of the Antitrust MDL. *See* April 22, 2025 Memorandum Opinion and Order Regarding Anthem Health Plans of Virginia's Motion to Enforce Injunction, MDL No. 2406 (N.D. Ala).

As yet another example, in *Battle v. Liberty Nat'l Life Ins.*, 877 F.2d 877, 879–80 (11th Cir. 1989), the Northern District of Alabama entered a final judgment in an antitrust action pursuant to a class action settlement agreement. When certain members of the settlement class subsequently brought a state court lawsuit against one of the Battle defendants for breach of contract and fraud, the district court enjoined them from pursuing that lawsuit. *See id*. at 880. The Eleventh Circuit upheld that injunction on appeal, stating that "[f]ederal law permits a district court

to enjoin [] court actions 'where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.' Both of these situations are present in this case." *Id.* (citing 28 U.S.C. § 2283).

There can be no doubt that the AP Complaint makes the same claims and relies on the same factual predicates as the Provider MDL Complaint. Both plead claims under Sections 1 and 2 of the Sherman Act and accompanying provisions of the Clayton Act. And like the Provider MDL Complaint, the AP Complaint alleges that BCBSAL's reserves are "too high," AP Complaint at p.3; that BCBSAL executives are paid too much, *id.*; that BCBSAL has a 90% share of the so-called Alabama commercial health coverage market, *id.* at 5; that BCBSAL is both a monopolist and a monopsonist, *id.*; that its reimbursement rates are too low, *id.* at 5; that the Blue Plans entered into illegal territorial restrictions in the late 1900s, *id.* at 8; that BCBSAL's hospital tiering system is unfair, *id.* at 10-11; that the cost reporting reimbursement method resulted in lower reimbursements, *id.* at 12-13; and that BCBSAL does not negotiate in good faith with Alabama hospitals, *id.* at 23-27. BCBSAL denied these allegations when the Provider Plaintiffs made them in the MDL; it will deny them again when responding to the AP Complaint. But make no mistake: The factual allegations are overlapping.

The Hospital (now controlled by a post-petition debtor-in-possession) will probably oppose the instant Motion on the ground that the debtor-in-possession

6

moved the bankruptcy court to "vacate and set aside the Debtors' failure to opt out" of the Provider Settlement. *See* DIP Lender's 10/24/2025 Emergency Motion to Vacate and Set Aside the Debtors' Participation in Settlement, Adv. No. 25-03025 (Bankr. M.D. Ala) (attached as Exhibit 1). The Bankruptcy Court granted that motion on October 31, 2025. *See* 10/31/2025 Order Granting the DIP Lender's Emergency Motion, Adv. No. 25-03025 (Bankr. M.D. Ala) ("The Court hereby vacates and sets aside (1) the Debtors' failure to opt out of the Class Action Settlement,and (2) the Debtors' submission of a claim in such Class Action Settlement.") (attached as Exhibit 4).

But the motion to vacate and the October 31, 2025 Order change nothing. *This* Court, not the Bankruptcy Court for the Middle District of Alabama, has *exclusive* jurisdiction to determine whether the Hospital's after-the-fact motion to opt-out of the settlement is valid. And how could that untimely motion be valid, given that this Court issued a <u>final judgment</u> dismissing the Hospital's claims (and other Provider claims) on August 19, 2025?

In addition, multiple courts have rejected the notion that a class member in bankruptcy is excused from complying with an opt-out deadline. *See, e.g., In re Santangelo*, 325 B.R. 874 (Bankr. M.D. Fla 2005); *Love v. BCBSA*, 2008 WL 4097607 (S.D. Fla. Sept. 4, 2008); *Thomas v. BCBSA*, 333 Fed. Appx. 414 (11th Cir.

7

2009) (unpublished); *In re Doctors Health*, 2008 WL 8889901 (D. Maryland March 28, 2008).

CONCLUSION

For the foregoing reasons, BCBSAL respectfully moves the Court to exercise its authority under the All-Writs Act and enjoin the Hospital from participating in the December 23, 2025 TRO hearing or otherwise prosecuting its AP Complaint.

/s/ *Carl S. Burkhalter*
Counsel for Defendant Blue Cross
and Blue Shield of Alabama

**OF COUNSEL:**

James L. Priester
Carl S. Burkhalter
MAYNARD NEXSEN PC
1901 Sixth Avenue North
Suite 1700
Birmingham, AL 35203
Telephone: 205-254-1000
Facsimile: 205-254-1999
jpriester@maynardnexsen.com
cburkhalter@maynardnexsen.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this the 22nd day of December, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF filing system, which will send a copy to all counsel of record.

The foregoing was also sent via electronic mail and U.S. Mail to the following:

Chase J. Potter
Joshua L. Shepherd
Anna Olin Richardson
Iacuone McAllister Potter PLLC
Energy Square One
4925 Greenville Ave., Suite 1112
Dallas, TX 75206
Telephone: (214) 432-1536
potter@imcplaw.com
shepherd@imcplaw.com
anna@imcplaw.com

/s/ *Carl S. Burkhalter*
OF COUNSEL

9