FILED

2025 Dec-22  AM 09:10
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT 1

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **JACKSON HOSPITAL & CLINIC, LLC, *et al.*,**[1] | **Case No. 25-30256** |
| **Debtors.** | **Jointly Administered** |

### THE DIP LENDER'S EMERGENCY MOTION TO VACATE AND SET ASIDE THE DEBTORS' PARTICIPATION IN SETTLEMENT

**[*This Motion Seeks Emergency/Expedited Relief*]**

Jackson Investment Group, LLC, in its capacity as the DIP Lender ("DIP Lender" or "JIG") to the debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned chapter 11 cases ("Chapter 11 Cases"), hereby files this Emergency Motion to Vacate and Set Aside the Debtors' Participation in Settlement (the "Motion"), seeking the entry of an order vacating and setting aside (1) the Debtors' failure to opt out of a class action settlement without this Court's and/or the DIP Lender's authorization, and, relatedly, (2) the Debtors' submission of a claim in settlement without this Court and/or the DIP Lender's authorization. In support of the Motion, the DIP Lender respectfully states as follows:

### PRELIMINARY STATEMENT

1.     The Debtors have lacked authority to dispose of any assets of the Debtors' estates—including, but not limited to, valuable litigation claims—without (i) approval from this Court (since filing for bankruptcy protection on February 3, 2025), and (ii) the prior written consent of the DIP Lender (since the issuance of the Interim Order on the DIP Facility Motion on February

---

[1]     The Debtors in these Chapter 11 cases are: Jackson Hospital & Clinic, Inc. and JHC Pharmacy, LLC.

6, 2025). However, without obtaining this Court's approval or the DIP Lender's written consent, the Debtors failed to opt out of a class action settlement on or before March 4, 2025. In so doing, the Debtors arguably purported to bind themselves to a settlement agreement releasing valuable estate causes of action against third parties.[2]

2.      The Debtors' failure to opt out from the class settlement at issue, without this Court's approval or the DIP Lender's prior written consent, constitutes an unauthorized attempted disposition of estate assets. This Court did not approve of, and the DIP Lender did not provide written consent for, the Debtors to release any claims potentially at issue in the class action settlement. Relatedly, the Debtors' subsequent submission of a claim form in connection with the same class action settlement was also unauthorized, as this Court did not authorize, and the DIP Lender gave no written consent, to participate *at all* in the settlement.

3.      Accordingly, the DIP Lender requests the Court vacate and set aside the Debtors' participation in the class action settlement which lacked the Court's and/or DIP Lender's approval, including the Debtors' failure to opt out of the class settlement and submission of a claim form in connection with same.

### RELEVANT BACKGROUND

4.      On February 3, 2025 (the "Petition Date"), the Debtors commenced the Chapter 11 Cases.

**A.    The Interim Order**

5.      On February 4, 2025, the Debtors filed a Motion for Entry of Interim and Final

---

[2]      The DIP Lender does not concede, and reserves all rights to later assert, that the opt out deadline for the class action settlement either did not apply to Debtors, or must be extended with respect to Debtors, due to the pendency of this bankruptcy proceeding under 11 U.S.C. § 108(a) or any other applicable law or principles of equity.

2

Orders (I) Authorizing Debtors to (A) Obtain Postpetition Secured Financing Pursuant to Section 364 of the Bankruptcy Code, (B) Use Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Status, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief. *See* Doc. 10 (the "DIP Facility Motion"). In the DIP Facility Motion, the Debtors sought approval of their entry into a debtor-in-possession credit facility provided by JIG (*i.e.*, now, the DIP Lender), which would allow the Debtors to, among other things, continue day-to-day operations and maintain patient care (the "DIP Facility"). *See id.* at 1-2. The Debtors further sought immediate entry of an interim order authorizing the DIP Facility, emphasizing that, if they did not promptly receive new-money financing, the Debtors would be forced to wind down operations and transport thousands of existing patients elsewhere. *See id.* at 2.

6.      On February 6, 2025, the Court entered an Interim Order (I) Authorizing Debtors to (A) Obtain Postpetition Secured Financing Pursuant to Section 364 of the Bankruptcy Code, (B) Use Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Status, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief. *See* Doc. 69 (the "Interim Order").

7.      The Interim Order was immediately binding on the Debtors:

> 37.      **Binding Effect of this Interim Order**. *Immediately* upon entry of this Interim Order by this Court, the terms and provisions of this Interim Order *shall become <u>valid</u> and <u>binding</u> upon and inure to the benefit of the Debtors*, the DIP Lender, the Prepetition Secured Parties, all other creditors of any of the Debtors, the Creditors' Committee, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in the Chapter 11 Cases, any Successor Case, or upon dismissal of any of the Chapter 11 Cases or any Successor Case; <u>provided</u> that

3

> the DIP Lender shall not have any obligation to permit the use of DIP Collateral (including Cash Collateral) by or extend any financing to any chapter 7 trustee, chapter 11 trustee or similar responsible person appointed for the Debtors' estates.

*See* Interim Ord. ¶ 37 (emphasis added).

8.      The Interim Order granted the DIP Lender perfected security interests in and liens on the "DIP Collateral" (*i.e.*, the "DIP Liens"). The "DIP Collateral" includes a non-exclusive list of items belonging to the Debtors' estates and is defined, in pertinent part, as follows:

> 5.   **DIP Collateral.** The term "DIP Collateral" means, collectively, each Debtor's right, title, and interest in, to and under all such Debtor's assets, including, but not limited to the following, in each case, whether now owned or existing or hereafter acquired, created or arising and wherever located: all assets and property of such Debtor and its estate, real or personal, tangible or intangible, now owned or hereafter acquired, whether arising before or after the Petition Date[.]

*See id.* ¶ 5.

9.      The Interim Order also approved the terms of a "DIP Term Sheet," which further gave the DIP Lender a perfected security interest in "all rights, title and interest" in pending litigation in which Debtor Jackson Hospital & Clinic, Inc. (hereinafter, "Jackson Hospital") was identified as a potential class member. *See* Doc. 69-1, DIP Term Sheet ¶ 12.

10.     The Interim Order further provides:

> 6.   **Disposition of Collateral.** Notwithstanding anything otherwise provided herein, it shall be deemed an *Event of Default* under the DIP Term Sheet and, as applicable, the other DIP Documents *if the Debtors* sell, *transfer*, lease, encumber *or otherwise dispose of any portion of the DIP Collateral*, other than in the ordinary course of business or in connection with the payments contemplated under this Interim Order

> or the Approved Budget (subject to the Permitted Variances), ***without the prior written consent of the DIP Lender*** . . .

*See* Interim Ord. ¶ 6.

11.     In short, pursuant to the Interim Order and the DIP Term Sheet, if the Debtors transfer or otherwise dispose of any property or assets of the Debtors' estates without the DIP Lender's *written consent*, this conduct constitutes an "Event of Default" for which the DIP Lender may exercise any "right or remedy . . . permitted under the DIP Documents[3] or by applicable law." *See* DIP Term Sheet ¶ 14.

12.     On March 6, 2025, the Court issued a Final Order (I) Authorizing Debtors to (A) Obtain Postpetition Secured Financing Pursuant to Section 364 of the Bankruptcy Code, (B) Use Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Status, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, (V) Granting Related Relief. *See* Doc. 180 (the "Final Order"). With respect to the DIP Collateral, the Disposition of Collateral, and the Event of Default if the DIP Lender's written consent was not obtained prior to such disposition, the Interim Order and the Final Order are substantially the same.

13.     Put simply, once the Court issued the Interim Order, the Debtors were not authorized to dispose of estate property—including, but not limited to, releasing estate claims or causes of action—without the DIP Lender's written consent.

**B.     The Debtors' Participation in a Class Action Settlement Without Proper Approval**

14.     Starting in 2012, healthcare providers that provided services to any patient insured by health insurance plans administered by Blue Cross Blue Shield Association and/or its local

---

[3]     The term "DIP Documents" refers, collectively, to the DIP Term Sheet, the Interim Order, and DIP Credit Agreement (which was later executed and is substantially consistent in form and substance with the DIP Term Sheet). *See* DIP Term Sheet, ¶ 16.

5

member plans and affiliated entities (collectively, "BCBS"), as well as subscribers to such plans,

filed class actions against BCBS involving antitrust allegations. These actions were later

consolidated in multi-district litigation in the Northern District of Alabama (*i.e.*, *In re Blue Cross*

*Blue Shield Antitrust Litigation*, MDL No.: 2406, Master File No. 2:13-CV-20000-RDP)

(hereinafter, the "BCBS Class Action"), with two tracks—one for providers and one for

subscribers.

15.    On October 14, 2024, the provider class action plaintiffs entered into a settlement

agreement with BCBS in the BCBS Class Action (the "Class Action Settlement").[4]

16.    On December 4, 2024, the district court preliminarily approved the Class Action

Settlement.[5] At a high level, as part of the Class Action Settlement, BCBS agreed to pay $2.8

billion into a class settlement fund and to injunctive relief in the form of structural reforms and

changes to encourage more competition. *See* BCBS Class Action, Doc. No. 3225, at 7-8.

17.    Pursuant to the district court's preliminary approval of the Class Action Settlement,

the deadline to "opt out" of the Class Action Settlement was by March 4, 2025. *See id.* at 51. By

not opting out by March 4, 2025, a member of the affected class (as defined in the Class Action

Settlement Agreement) would potentially be bound by the Class Action Settlement Agreement,

including the releases contained therein.[6] *See id.* at 52. Further, for class members that did not opt

out by March 4, 2025, the deadline to file a claim form to share in the proceeds of the Class Action

Settlement fund was July 29, 2025. *See id.*

---

[4]    The Class Action Settlement agreement is on file as Doc. No. 3192-2 in the BCBS Class Action.

[5]    The district court's Memorandum Opinion and Order Preliminarily Approving Provider Plaintiffs' Settlement and Plan for Notice and Appointment of Settlement Notice Administrator and Settlement Administrator is Doc. No. 3225 in the BCBS Class Action.

[6]    This assumes no extension of the opt out deadline applies, which – as stated above – the DIP Lender does not concede with respect to the Debtors given the DIP Lender contends an extension should apply for the Debtors based on 11 U.S.C. § 108(a) or any other applicable law or principles of equity.

18.     At some point before March 4, 2025, the Debtors were supposed to have received notice of the Class Action Settlement and further notified that they were potential members of the affected class.[7] The Debtors, however, did not opt out of the Class Action Settlement by the deadline. In so doing, the Debtors arguably purported to bind themselves to a release of valuable estate causes of action against BCBS. Later, on July 29, 2025, the Debtors submitted a claim form to receive potential recovery from the Class Action Settlement fund.

19.     Critically, the Debtors did not obtain approval from this Court or obtain the DIP Lender's written consent before declining to opt out of the Class Action Settlement. Similarly, the Debtors did not obtain approval from this Court and did not obtain the DIP Lender's written consent before filing a claim in connection with the Class Action Settlement. Regardless of the Debtors' motives or beliefs with respect to the decision not to opt out of and instead submit a claim in the Class Action Settlement, the crux of the issue is this decision was ***not authorized*** by this Court or the DIP Lender. As such, the Debtors' participation in the Class Action Settlement must be set aside.

<u>**ARGUMENT AND AUTHORITIES**</u>

20.     The Debtors' failure to opt out of the Class Action Settlement should be vacated and set aside because it was not authorized by this Court or the DIP Lender. Further, because the Debtors' failure to opt out of the Class Action Settlement was not authorized, it necessarily follows the claim submitted by the Debtors in connection with the Class Action Settlement should also be vacated and set aside.

---

[7]     The "Settlement Class" is defined to include all providers who provide or provided healthcare services to any patient who was insured by, was a member of, or was a beneficiary of any plan administered by BCBS from July 24, 2008, through October 14, 2024. *See* BCBS Class Action, Doc. No. 3192-2, at 21.

21.    "[I]t is elementary that a class action settlement agreement cannot release claims that the parties were not authorized to release." *Dennis v. JPMorgan Chase & Co.*, 16-cv-6496, 2021 WL 1893988, at *5 (S.D.N.Y. May 11, 2021) (quoting *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 135-36 (2d Cir. 2011)) (internal quotations omitted). Here, the Debtors were not authorized by this Court or the DIP Lender to release *any* claims against BCBS. Yet, by failing to opt out of the Class Action Settlement, the Debtors arguably purported to do just that. As such, the Debtors' failure to opt out of the Class Action Settlement should be set aside.

22.    Further, the Court has authority to vacate and set aside the Debtors' participation in the Class Action Settlement. Specifically, Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. §§ 105(a); *see also, e.g., In re Munford, Inc.*, 97 F.3d 449, 454 (11th Cir. 1996). Here, the Interim Order expressly requires the Debtors to obtain the DIP Lender's written consent before disposing of any of the Debtors' assets, including, but not limited to, valuable estate causes of action against BCBS. *See* Interim Ord. ¶ 6. By not opting out of the Class Action Settlement, the Debtors not only failed to obtain the DIP Lender's prior written consent but also failed to comply with the terms of the Interim Order and the DIP Term Sheet.[8] *See id.*; *see also* DIP Term Sheet ¶¶ 12, 14. This Court therefore has authority under Section 105(a) of the Bankruptcy Code to set aside any purported release of estate claims that was unauthorized under the Interim Order. The DIP Lender respectfully requests the Court do so.

---

[8]    The Final Order was issued, and the DIP Credit Agreement was approved, two days after the March 4, 2025, opt out deadline. Thus, while the Debtors' failure to obtain the DIP Lender's written consent before opting out of the Class Action Settlement violated the Interim Order and the DIP Term Sheet, the Debtors' subsequent failure to obtain the DIP Lender's written consent before submitting a claim in the Class Action Settlement violated the Final Order and the DIP Credit Agreement. *See* Doc. Nos. 180, 180-1.

8

23.     Finally, pursuant to Bankruptcy Rule 9019(a), any decision on the part of the Debtors to participate in the Class Action Settlement should have been submitted to the Bankruptcy Court first for approval. *See* FED. R. BANKR. P. 9019(a). Specifically, upon notice and a hearing, the Bankruptcy Court should have been able to consider the Debtors' proposal to not opt out of the Class Action Settlement and/or submit a claim form in connection with the Class Action Settlement under the four factors outlined in *In re Justice Oaks II, Ltd.*[9] to determine whether participation in the Class Action Settlement would be fair, reasonable and adequate. *See* 898 F.2d 1544, 1549 (11th Cir. 1990); *see also In re Chira*, 567 F.3d 1307, 1312-13 (11th Cir. 2009). Bankruptcy Rule 9019(a) provides important protections for safeguarding estate assets and interested parties:

> The Code provides for due process protection for settlements under Rule 9019(a) by requiring that a debtor in possession give creditors and parties in interest "adequate notice and opportunity to be heard *before* their interests may be adversely affected." . . . Rule 9019 further protects interested parties "[b]y requiring court approval following a hearing before any compromise or settlement may be enforced" to ensure a transparent settlement process and provide "other creditors an opportunity to voice their concerns."

*In re Fundamental Long Term Care, Inc.*, 628 B.R. 344, 351 (M.D. Fla. 2021) (quoting *In re Reagor-Dykes Motors, LP*, 613 B.R. 878, 885-86 (Bankr. N.D. Tex. 2020) (emphasis in original)).

24.     Because the Debtors did not present their potential participation in the Class Action Settlement to this Bankruptcy Court, such participation should be deemed invalid.

## CONCLUSION

For these reasons, the DIP Lender respectfully requests the Court vacate and set aside (1) the Debtors' failure to opt out of the Class Action Settlement without this Court's and/or the DIP

---

[9]     These factors include: "(a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience[,] and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises." *Justice Oaks*, 898 F.2d at 1549.

Lender's consent, and, relatedly, (2) the Debtors' submission of a claim in such Class Action Settlement without this Court's and/or the DIP Lender's consent. The DIP Lender further requests any additional relief to which it has shown itself to be justly entitled.

Respectfully submitted,

/s/ Chase J. Potter

**CHASE J. POTTER***
Texas Bar No. 24088245
E-Mail: potter@imcplaw.com
**ANNA OLIN RICHARDSON***
Texas Bar No. 24102947
E-Mail: anna@imcplaw.com
**IACUONE MCALLISTER POTTER PLLC**
Energy Square One
4925 Greenville Ave., Suite 1112
Dallas, Texas 75206
Telephone:     (214) 432-1536

*Pro Hac Vice Application Forthcoming*

and

/s/ Steven D. Altmann

Steven D. Altmann
The Nomberg Law Firm
3940 Montclair Road, Suite 401
Birmingham, Alabama 35213
Direct: (205) 882-5005
steve@nomberglaw.com

**COUNSEL FOR JACKSON INVESTMENT GROUP, LLC**

## CERTIFICATE OF SERVICE

This is to certify that, on October 24, 2025, a true and correct copy of the foregoing document was filed with the Court's CM/ECF system that will provide notice to all parties receiving electronic notices in this bankruptcy case.

/s/ Steven D. Altmann

**STEVEN D. ALTMANN**

10