FILED

2026 Jan-05  PM 06:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT 2

# Declaration of John Quinlivan

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **Jackson Hospital & Clinic, Inc., *et al.*,**[1] | § | |
| | § | |
| | § | **Case No. 25-30256** |
| | § | |
| **Debtors.** | § | |
| | § | **Jointly Administered** |

| | | |
|---|---|---|
| **Jackson Hospital & Clinic, Inc.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| | § | |
| **v.** | § | **Adv. No. 25-_____** |
| | § | |
| **Blue Cross and Blue Shield of Alabama,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |
| | § | |

### DECLARATION OF JOHN D. QUINLIVAN

I, John D. Quinlivan, hereby declare, under penalty of perjury, that the following is true and correct:

1.      My name is John D. Quinlivan. I am more than twenty-one years of age and am competent and otherwise qualified to make this Declaration.  I have personal knowledge of the matters stated herein and they are all true and correct.

2.      I am the Chief Executive Officer ("CEO") of Jackson Hospital & Clinic, Inc., the plaintiff in the above-referenced adversary proceeding ("Jackson Hospital" or "Plaintiff"). I am a 20-year veteran of the United States Army Medical Service Corps. Prior to becoming the CEO of

---

[1]      The Debtors in these Chapter 11 cases are Jackson Hospital & Clinic, Inc. and JHC Pharmacy, LLC.

Jackson Hospital, I spent 19 years of my career with HCA Healthcare. I also oversaw hospitals in Florida and Georgia. My focus as CEO of Jackson Hospital is to return Jackson Hospital to a state of efficient operations, and to work with the Board and other leadership of Jackson Hospital to present and implement a restructuring plan to avoid the closure of Jackson Hospital, bring Jackson Hospital out of bankruptcy, and establish Jackson Hospital as a care facility that is healthy and stable.

3.      Through my decades of hospital management experience and my role and work as the CEO of Jackson Hospital, I have acquired personal knowledge of (i) the healthcare industry, (ii) the business and finances of Jackson Hospital, (iii) the relationship between Jackson Hospital and Defendant Blue Cross Blue Shield of Alabama ("Blue Cross Alabama"), (iv) the significant market dominance of Blue Cross Alabama in the State of Alabama, and (v) the facts set forth herein.

4.      On behalf of Jackson Hospital, I personally communicate and deal with representatives of Blue Cross Alabama regarding various issues, including discussions with Blue Cross Alabama regarding the reimbursement rates paid by Blue Cross Alabama to Jackson Hospital.

5.      In my recent communications with Blue Cross Alabama regarding the reimbursement rates Blue Cross Alabama will be paying Jackson Hospital in 2026, I reminded Blue Cross Alabama that Jackson Hospital is trying to develop a plan that will allow Jackson Hospital to emerge from bankruptcy and continue serving the community. I further informed Blue Cross Alabama that Jackson Hospital is in danger of not being able to emerge from bankruptcy (and will not be sustainable long-term) with the current reimbursement rates Blue Cross Alabama is paying Jackson Hospital (or the new rates Blue Cross Alabama is currently setting for Jackson

Hospital in 2026). I further informed Blue Cross Alabama that, at minimum, Jackson Hospital needs Blue Cross Alabama to pay Jackson Hospital the same rates Blue Cross Alabama pays Baptist Medical Center in Montgomery, Alabama ("Baptist"), which it is my understanding are much higher than the rates Blue Cross Alabama pays Jackson Hospital but are still much lower than the national average commercial insurers throughout the country typically reimburse hospitals.

6.      In response, Blue Cross Alabama did not deny that Blue Cross Alabama pays Baptist much higher reimbursement rates than Blue Cross Alabama pays Jackson Hospital. Instead, Blue Cross Alabama responded by stating (i) Blue Cross Alabama will not agree to pay Jackson Hospital the same reimbursement rates Blue Cross Alabama pays Baptist, and (ii) the 2026 reimbursement rates Blue Cross Alabama previously set for Jackson Hospital are the "best and final" rates Blue Cross Alabama is willing to provide Jackson Hospital.

7.      Jackson Hospital cannot adequately replace the patient volume or revenue from commercial insurance plans from other sources such as out-of-pocket payors or government programs like Medicare or Medicaid. Thus, Jackson Hospital cannot sustain its operations without sufficient revenue from commercial insurers.

8.      Given Blue Cross Alabama's substantial market share in both the markets of the State of Alabama and the City of Montgomery (which, based on the information currently available to me, I understand represents a vast majority of the market share in both the state and the city), Blue Cross Alabama is effectively *the* commercial insurer in Alabama and Montgomery. Thus, Jackson Hospital cannot sustain its operations without sufficient revenue from Blue Cross Alabama. Jackson Hospital depends on payments from patients insured by Blue Cross Alabama to offset financial losses from Jackson Hospital treating uninsured patients, out-of-pocket patients,

and patients covered by government programs (all of which are services that are critical to ensure Alabamains have sufficient access to necessary healthcare). Given Blue Cross Alabama's market dominance (and the lack of competitor commercial insurers in Alabama), Jackson Hospital does not have the ability to meaningfully "negotiate" with Blue Cross Alabama.

9.      Based on my personal knowledge of the healthcare industry, my experience in hospital management, and my personal knowledge of Jackson Hospital's business and financials as the CEO of Jackson Hospital, it is my opinion and belief that – if the injunctive relief requested by Jackson Hospital in this lawsuit is not granted – Jackson Hospital is in immediate and substantial danger of (i) not being able to successfully emerge from bankruptcy, and (ii) being forced to cease operations.

10.      If Jackson Hospital closes, it would result in the displacement of approximately 1,800 Jackson Hospital employees and a significant loss in available hospital beds to serve those in need of acute medical care in and around Montgomery. It is further my belief that, if Jackson Hospital closes, wait times at surrounding emergency rooms would increase significantly. Jackson Hospital provides a substantial amount of care to uninsured and indigent patients. If Jackson Hospital closes, it would severely and negatively impact the access Alabamians (especially those in the Montgomery area and those who are indigent) have to critical healthcare services.

11.      Attached hereto as Exhibit A is a true and correct copy of the Participating Hospital Contract for Prospective Between Blue Cross and Blue Shield of Alabama and Jackson Hospital and Clinic with an effective date of July 1, 2003.[2]

---

[2]      A redacted version of Exhibit A is being publicly filed.

12.    Attached hereto as Exhibit B is a true and correct copy of the Preferred Outpatient Facility Contract Between Blue Cross and Blue Shield of Alabama and Jackson Hospital and Clinic with an effective date of January 1, 2006.[3]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on this 18th day of December, 2025.

John D. Quinlivan

---

[3]    A redacted version of Exhibit B is being publicly filed.