FILED
2026 Jan-20  PM 05:50
U.S. DISTRICT COURT
N.D. OF ALABAMA

# Exhibit 6

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| In re: | Chapter 11 |
| JACKSON HOSPITAL & CLINIC, INC., *et al.*,[1] | Case No. 25-30256 |
| Debtors. | Jointly Administered |

### THIRD ORDER AUTHORIZING THE DEBTORS
### TO FURTHER AMEND THE DIP CREDIT AGREEMENT

This matter came before the Court on the motion (the "Motion")[2] of Jackson Hospital &

Clinic, Inc. and its affiliated debtors, as debtors and debtors in possession (collectively, the

"Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), seeking entry of an

order (this "Order"), authorizing the Debtors to further amend the DIP Credit Agreement.

The Court held a hearing on the Motion on Tuesday, September 30, 2025, which was

continued to Tuesday, October 7, 2025, and further continued to Tuesday, October 14, 2025 (the

"Hearing").

Counsel for the Debtors, the Prepetition Secured Parties, the DIP Lender, the Official

Committee of Unsecured Creditors (the "Creditors' Committee"), and the Bankruptcy

Administrator for the Middle District of Alabama (the "Bankruptcy Administrator") appeared at

the Hearing.

Scott Victor ("Mr. Victor"), Managing Director of SSG Advisors, LLC, the Debtors'

Court-approved investment banker, and Allen Wilen ("Mr. Wilen"), the Debtors' Court-approved

---

[1] The Debtors in the Chapter 11 Cases are Jackson Hospital & Clinic, Inc. and JHC Pharmacy, LLC.
[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

Chief Restructuring Officer ("CRO"), were also present and testified on behalf of the Debtors at the Heaing.

Based upon the Court's review of the Motion and the exhibits attached thereto; the Court having considered the Motion and the record in these Chapter 11 Cases, including without limitation, the evidentiary submissions of the Debtors and the Prepetition Secured Parties at the Hearing and the other papers filed with the Court; the Court having found that proper and adequate notice of the Motion and the hearing thereon having been given; the Court having found that no other or further notice being necessary; the Court having found that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; the Hearing having been held and concluded; all objections, if any, to the relief requested in the Motion having been withdrawn, resolved, or overruled by the Court; it appearing that the relief requested in the Motion is fair and reasonable and in the best interests of the Debtors and their estates, necessary to avoid immediate and irreparable harm to the Debtors and their estates, and essential for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors' assets; and it appearing that the Debtors' entry into the DIP Amendment is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor,

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW BASED UPON THE MOTION, THE REPRESENTATIONS OF COUNSEL AND THE EVIDENCE SUBMITTED DURING THE FINAL HEARING:[3]**

---

[3] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

A.      **Petition Date**.  Commencing on February 3, 2025 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Court, commencing these Chapter 11 Cases.

B.      **Debtors in Possession**.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in any of the Chapter 11 Cases.

C.      **Jurisdiction and Venue**.  The Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334 and the *General Order of Reference Bankruptcy Matters from the United States District Court for the Middle District of Alabama*, dated and filed April 25, 1985.  This is a core proceeding under 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      **Notice**.  Notice of the Motion has been provided in a manner sufficient under the circumstances and no other or further notice of the Motion or the entry of this Order shall be required.

E.      **DIP Motion**.  On the Petition Date, the Debtors filed *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Obtain Postpetition Secured Financing Pursuant to Section 364 of the Bankruptcy Code, (B) Use Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Status, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* [Docket No. 10] (the "DIP Motion") seeking approval of the $24.5 million DIP Facility and use of Cash Collateral.

F.      **Interim DIP Order**.  On February 5, 2025, the Court entered the *Interim Order (I) Authorizing Debtors to (A) Obtain Postpetition Secured Financing Pursuant to Section 364 of the Bankruptcy Code, (B) Use Cash Collateral, (II) Granting Liens and Superpriority Administrative*

*Expense Status, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* [Docket No. 69] (the "Interim DIP Order") approving the DIP Facility on an interim basis and authorizing the Debtors, to among other things, borrow up to $10 million (the "Interim Loans") under the DIP Facility, use Cash Collateral, and provide adequate protection to the DIP Lender and the Prepetition Secured Parties.

G. **Committee Formation**. On February 18, 2025, the Bankruptcy Administrator filed her amended recommendation for the appointment of an official committee of unsecured creditors [Docket No. 125], and on February 19, 2025, the Court entered an amended order directing the appointment of the Creditors' Committee in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code [Docket No 126].

H. **Final DIP Order**. On March 6, 2025, the Court entered the *Final Order (I) Authorizing Debtors to (A) Obtain Postpetition Secured Financing Pursuant to Section 364 of the Bankruptcy Code, (B) Use Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Status, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* [Docket No. 180] (the "Final DIP Order"), authorizing, among other things, the Debtors to borrow the remaining $14.5 million (the "Final Loans" and together with the Interim Loans, the "DIP Loans") under the DIP Facility.

I. **Supplemental DIP Order**. On July 9, 2025, the Court entered the *Order on Supplemental Notice and Disclosure Regarding Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Obtain Postpetition Secured Financing Pursuant to Section 364 of the Bankruptcy Code, (B) Use Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Status, (III) Granting Adequate Protection, (IV) Modifying the Automatic*

*Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* [Docket No. 688] (the "Supplemental DIP Order").

J.      **First DIP Amendment**.  On July 30, 2025, the Court entered the *Order Authorizing Debtors to Amend the DIP Credit Agreement* [Docket No. 778] (the "First Amendment DIP Order"), authorizing Debtors to enter into an amendment to the DIP Credit Agreement that, among other things, (a) extended the DIP Credit Agreement's Maturity Date from July 31, 2025 to August 31, 2025, (b) extended the DIP Credit Agreement's sale approval milestone from July 16, 2025 to August 12, 2025, (c) required the pay down of DIP Loan to $21,607,500 by July 15, 2025, (d) reduced the DIP Credit Agreement's Commitments from $24,500,000 to $21,607,500 as of July 15, 2025, (e) waived existing Events of Default based upon the Prohibited Variances for the cumulative rolling four-week periods ended June 21, 2025, June 28, 2025, and July 5, 2025, (f) authorized an extension fee of $107,500 representing 0.5% of the DIP Loan outstanding principal balance, and (g) made certain other modifications to the DIP Credit Agreement in connection therewith.

K.      **Second DIP Amendment**.  On August 28, 2025, the Court entered the *Order Authorizing Debtors to Amend the DIP Credit Agreement* [Docket No. 869] (the "Second Amendment DIP Order" and together with the Interim DIP Order, the Final DIP Order, the Supplemental DIP Order, and the First Amendment DIP Order, the "DIP Orders"), authorizing Debtors to enter into an amendment to the DIP Credit Agreement that, among other things, (a) extended the DIP Credit Agreement's Maturity Date from August 31, 2025 to September 30, 2025, (b) deleted the DIP Credit Agreement's sale approval milestone, (c) waived existing Events of Default based upon the Prohibited Variances for certain cumulative rolling four-week periods, and (d) made certain other modifications to the DIP Credit Agreement in connection therewith.

L. **Third DIP Amendment**. By the Motion, the Debtors seek to (a) extend the Maturity Date of the DIP Credit Agreement from September 30, 2025 to October 31, 2025, with a conditional right to further extend the Maturity Date to January 31, 2026, (b) increase the DIP Credit Agreement's Commitments from $21,607,500 to $25,000,000, with a conditional right to further increase the Commitments to $35,000,000[4], (c) re-insert bankruptcy milestones into the DIP Credit Agreement, including without limitation, (i) no later than October 30, 2025, the DIP Lender has obtained commitments for no less than $100,000,000 in government grants, (ii) no later than two (2) business days following the DIP Lender's written notice to the Debtors of the satisfaction or waiver of the government grants condition, the re-constitution of Jackson Hospital's Board of Directors with new directors acceptable to the DIP Lender, (iii) no later than December 1, 2025, the Debtors have filed a plan acceptable to the DIP Lender, and (iv) no later than January 31, 2026, the Court has confirmed the foregoing plan, (d) adding two (2) new conditions precedent to the DIP Lender's obligation to fund DIP Loans under the DIP Credit Agreement, and (e) waive existing Events of Default based upon the Prohibited Variances for certain cumulative rolling four-week periods.

M. **Prepetition Secured Parties' Unsecured Status; No Need for Adequate Protection**. Based upon the record, and for purposes of this Order only, the Court finds that the Debtors presented credible evidence that there is no value in the DIP Collateral, consisting of the Debtors' current property, over and above the DIP Obligations. Accordingly, solely for purposes of this Order, and solely with respect to the Debtors' current property, the Prepetition Secured Parties are deemed unsecured and are not entitled to any adequate protection in connection with

---

[4] At the Hearing, the Debtors and the DIP Lender announced that this conditional increase would be limited to a maximum amount of $35,000,000 in lieu of the $50,000,000 set forth in the Motion and the DIP Amendment attached thereto.

the DIP Amendment. *See, e.g., In re R.F. Cunningham & Co., Inc.*, 355 B.R. 408, 412 (Bankr. E.D.N.Y. 2006). For the avoidance of doubt, these findings and conclusions are limited to the approval of the DIP Amendment, apply only to the Debtors' property as of the date of this Order, and shall not be binding or have any preclusive effect in any subsequent proceeding, including any determination of lien validity, value, priority, or extent.

N.    **Immediate Need**.  The Debtors have an immediate need to extend the DIP Credit Agreement's Maturity Date and to increase the DIP Credit Agreement's Commitments as set forth in the DIP Amendment (as modified herein).  The Debtors' continued access to sufficient working capital and liquidity is necessary and vital to the preservation and maintenance of the Debtors' estates.

O.    **Best and Only Available Financing Option**.  The financing available under the DIP Documents, as amended by the DIP Amendment, represents the best and only available financing option for the Debtors under the circumstances.

P.    **Fair and Reasonable; Business Judgment**.  The terms of the DIP Amendment are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with its fiduciary duties, and constitute reasonably equivalent value and fair consideration.

Q.    **Good Faith; Arms-Length Transaction**.  The terms of the DIP Amendment have been negotiated in good faith and at arms-length among the Debtors and the DIP Lender.  All parties' obligations and indebtedness arising under, in respect of, or in connection with the DIP Amendment shall be deemed to have been extended by the DIP Lender in good faith, as that term is used in Section 364(e) of the Bankruptcy Code, and in express reliance upon the protections offered by Section 364(e) of the Bankruptcy Code, and the DIP Lender shall be entitled to the full

protection of Section 364(e) of the Bankruptcy Code in the event that this Order or any provision hereof is vacated, reversed, or modified, on appeal or otherwise.

R.      **Good Cause**.  Good cause has been shown for the entry of this Order, and the entry of this Order is in the best interests of the Debtors, their estates, their creditors, and other parties in interest.  The relief requested in the Motion is fair and reasonable and in the best interest of the Debtors and their estates, and essential for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors' assets.

NOW, THEREFORE, based upon the foregoing findings and conclusions, the Motion, and the record before this Court, and after due consideration, and this Court having found good and sufficient cause therefor,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.      **Motion Granted**.  The Motion, as modified herein, is granted.  All objections, if any, to the relief requested in the Motion that have not been withdrawn or resolved, are hereby overruled in their entirety.

2.      **DIP Amendment Approved**.  The DIP Amendment, as modified herein, is hereby approved.  A clean and redlined version of the DIP Amendment is attached hereto as **<u>Exhibit 1</u>** and **<u>Exhibit 2</u>**, respectively.

3.      **No Adequate Protection to Prepetition Secured Parties**.  The Prepetition Secured Parties are unsecured and therefore not entitled to any adequate protection in connection with the DIP Amendment.  For the avoidance of doubt, these findings and conclusions are limited to the approval of the DIP Amendment, apply only to the Debtors' property as of the date of this Order, and shall not be binding or have any preclusive effect in any subsequent proceeding, including any determination of lien validity, value, priority, or extent.

4.    **CRO's Expanded Duties**. Mr. Wilen's scope of employment as the Debtors' CRO as set forth in the Court's *Final Order Authorizing the Retention and Employment of Eisner Advisory Group LLC to Provide Interim Management Services, a Chief Restructuring Offer, and Interim CEO and Additional Personnel, and (II) the Designations of Allen Wilen as Chief Restructuring Officer and Ronald Dreskin as Interim Chief Executive Officer to the Debtors* [Doc. No. 203] (the "CRO Employment Order"), is hereby expanded, effective immediately, to include the following duties in addition to those set forth in the CRO Employment Order:

    a.  Review and negotiate transactions between the Debtors and entities affiliated with Jackson Investment Group, LLC ("JIG"), for commercial reasonableness and propriety;

    b.  Advise management, legal counsel, and other advisors and if asked, the Board of Directors, on alternatives for addressing the repayment of outstanding debts and other restructuring issues;

    c.  Provide guidance to the management and, if asked, the Board of Directors, regarding the development and submission of a Plan of Reorganization, asset sales, the potential granting of releases to non-Debtors, consent for stay relief related to claims exceeding $500,000, and the pursuit of additional secured credit or modification of the Debtors' DIP financing terms;

    d.  Assist the Company in managing and executing the reconciliation process involving claims filed by all creditors;

    e.  Provide testimony in these chapter 11 cases as necessary or appropriate at the Company's request;

f.  Upon the express authorization from the Board of Directors, negotiate on behalf of the Company, and at an arms-length basis, terms of agreements between the Company and third parties, including, without limitation, JIG;

g.  Upon the express authorization from the Board of Directors, negotiate on behalf of the Company, and at an arms-length basis, terms of agreements between the Company and related parties;

h.  Review with management prior monthly financial statements and any going forward cash flow budgets, as requested;

i.  Assist management related to revenue cycle transition issues;

j.  Discuss and review with management the process currently utilized to collect accounts receivable;

k.  Assist Company personnel with the communications and negotiations with lenders, creditors, and other parties-in-interest;

l.  Assist in the preparation of weekly and monthly reporting in accordance with any debtor-in-possession credit facility;

m.  Assist with such other accounting and financial services as requested by the Company and which are not duplicative of services provided by other professionals;

n.  Assist in the development of communication strategies and materials for effective communication with employees, customers, suppliers, investors and other key audiences;

o.  In the event of a dispute between the CRO and the Board of Directors on any of the above matters, the CRO will work in good faith to resolve any

disputes consensually.  In the absence of a consensual resolution, the CRO may request the Creditors' Committee to mediate the issue.  If mediation fails, the Debtors or the Creditors' Committee may seek relief from the bankruptcy court.

       p.  Upon management request, perform any other services so requested;

The CRO duties will be performed by Mr. Wilen, unless requested by management that the specific service or task be performed by other personal at EisnerAmper.  The estimated number of CRO hours to do the above is 50 hours per month exclusive of time required for attendance and testimony related to confirmation.  This limit will start thirty days after a new Board of Trustees is installed to allow for the time needed to transition with the new management team.  CRO will not work more than 75 hours per month for the Debtors per month without management's prior approval. These services will terminate at Confirmation of a Plan.

5.      **Restriction on Termination or Replacement of Mr. Wilen as CRO**.  Mr. Wilen shall not be terminated or replaced as the Debtors' CRO prior to the confirmation of a plan in these Chapter 11 Cases or the conversion or dismissal of these Chapter 11 Cases.

6.      **Removal of Transfer Medical Clinic Board Assets Milestone**.  The milestone in Section 2(f)(iv)(h) of the DIP Amendment regarding the Medical Clinic Board of the City of Montgomery transferring its assets to the Debtors is hereby stricken and removed.[5]

7.      **No Effect on Prior DIP Orders and DIP Documents**.  Except as otherwise expressly provided herein or in the DIP Amendment, each provision of the DIP Orders and the DIP Documents shall remain unchanged and in full force and effect.

---

[5] Counsel for JIG acknowledged and agreed to the removal of this provision at the Hearing.

8.      **No Stay of Order**.  Any Bankruptcy Rule (including Bankruptcy Rule 6004(h)) or Local Rule that might otherwise delay the effectiveness of this Order is hereby waived, and the terms and conditions of this Order shall be effective and enforceable immediately upon its entry.

9.      **Authorization of Further Actions**.  The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

10.     **Retention of Jurisdiction**.  The Court shall retian jurisdiction over any matter arising from or related to the implementation, interpretation, an enforcement of this Order.

Done this 21st day of October, 2025.

Christopher L. Hawkins
United States Bankruptcy Judge

**Exhibit 1 – DIP Amendment (Clean)**
**Exhibit 2 – DIP Amendment (Redline)**

# Exhibit 1

**[REVISED] THIRD AMENDMENT AND WAIVER TO SENIOR SECURED, SUPER-PRIORITY DEBTOR-IN-POSSESSION LOAN AND SECURITY AGREEMENT**

**THIS THIRD AMENDMENT AND WAIVER TO SENIOR SECURED, SUPER-PRIORITY DEBTOR-IN-POSSESSION LOAN AND SECURITY AGREEMENT** (this "Amendment"*),* dated as of October [   ], 2025, is entered into by and among (i) Jackson Hospital & Clinic, Inc., an Alabama corporation ("JHC") and JHC Pharmacy, LLC, an Alabama limited liability company ("JHC Pharmacy"), and (ii) Jackson Investment Group, LLC, a Georgia limited liability company ("JIG").

**W I T N E S S E T H**

**WHEREAS**, pursuant to the Senior Secured, Super-Priority Debtor-In-Possession Loan and Security Agreement dated as of March 4, 2025, as modified and amended by that certain "First Amendment and Waiver to Senior Secured, Super-Priority Debtor-in-Possession Loan and Security Agreement" dated as of July 10, 2025 and approved by the Bankruptcy Court by Order entered on July 30, 2025, and by that certain "Second Amendment and Waiver to Senior Secured, Super-Priority Debtor-in-Possession Loan and Security Agreement" dated as of August 20, 2025 and approved by the Bankruptcy Court by Order entered on August 28, 2025 (as may be further amended, restated, supplemented, waived, or otherwise modified from time to time prior to the date hereof, the "Loan Agreement"), among JHC and JHC Pharmacy, as Borrowers, and JIG, as Lender, Lender has made Loans to Borrowers, the aggregate outstanding principal amount of which as of the date hereof is $21,607,500. Capitalized terms used but not expressly defined in this Amendment shall have the meanings ascribed to such terms in the Loan Agreement.

**WHEREAS**, the Borrowers have requested certain amendments and waivers to the Loan Agreement and, subject to the terms and conditions set forth herein, Lender has agreed to such amendments and waivers.

**NOW, THEREFORE**, in consideration of the foregoing and the mutual covenants herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby agree as follows:

1.    **Introductory Paragraph and Recitals**. The above introductory paragraph and recitals of this Amendment are hereby incorporated into the body of this Amendment by reference as an integral part hereof and as if fully set forth herein.

2.    **Amendments to the Loan Agreement**. Subject to Section 5, the Loan Agreement is hereby amended as follows:

   (a)    The definition of "Commitments" set forth in Section 1 of the Loan Agreement is hereby amended by replacing the amount "twenty-four million five hundred thousand Dollars ($24,500,000)" with the amount "twenty-five million Dollars ($25,000,000);

   (b)    The definition of "Maturity Date" set forth in Section 1 of the Loan Agreement is hereby amended by replacing the date "July 31, 2025" set forth in clause

62728625 v2

(a) thereof with the date "October 31, 2025";

(c)    Upon satisfaction of <u>Section 7.1(b)(iii)</u> of the Loan Agreement (as restated herein), the definition of "<u>Commitments</u>" set forth in Section 1 of the Loan Agreement is thereby amended by replacing the amount "twenty-five million Dollars ($25,000,000)" with the amount "thirty-five million Dollars ($35,000,000);

(d)    Upon satisfaction of Section 7.1(b)(iii) of the Loan Agreement (as restated herein), the definition of "<u>Maturity Date</u>" set forth in Section 1 of the Loan Agreement is thereby amended by replacing the date "July 31, 2025" set forth in clause (a) thereof with the date "January 31, 2026";

(e)    Section 1 of the Loan Agreement is hereby amended to insert, in appropriate alphabetical order, the following defined term: "<u>Third Amendment</u>" means that certain Third Amendment and Waiver to Senior Secured, Super-Priority Debtor-In-Possession Loan and Security Agreement dated as of October [__], 2025, by and among the Parties.

(f)    <u>Section 7.1(b)</u> of the Loan Agreement is hereby reinstated and is hereby amended and restated in its entirety as follows:

Any of the following milestones are not satisfied or complied with:

    i.  No later than October 1, 2025, the Bankruptcy Court shall have entered an Order approving the Third Amendment;

    ii.  No later than October 30, 2025, Lender has obtained commitments to its satisfaction from one or more Governmental Authorities for no less than $100,000,000 of grants for use after the effective date of a chapter 11 plan of reorganization to fund the Borrowers' operations (the "<u>Governmental Grants</u>");

    iii.  No later than two (2) business days following Lender providing written notice to Borrowers that Section 7.1(b)(ii) has been satisfied or waived, the incumbent board of directors of JHC shall have appointed three (3) new directors that are acceptable to Lender to replace themselves, and shall have tendered their resignations to become effective immediately upon such replacement directors being seated, with such replacement directors then constituting the sole directors of JHC;

    iv.  No later than December 1, 2025, the Borrowers shall have filed a chapter 11 plan of reorganization that is acceptable to Lender in its sole discretion, and that contains at least the following

provisions (the "Plan"):

    a.  the Borrowers will be reorganized and exit the Bankruptcy Cases with continued operations as a going concern;

    b.  the payment in full of all allowed administrative claims;

    c.  JHC will be converted to a membership nonprofit corporation having Jackson Hospital Services, Inc., a 501(c)(3) ("JHS") as its sole member;

    d.  The reorganized Borrowers shall be managed by JHS on a fair market value basis;

    e.  the DIP Loan Obligations shall be paid down and reduced by the Governmental Grants to the aggregate outstanding principal amount of $25,000,000;

    f.  a $75,000,000 exit financing facility from Lender providing for the assumption of the DIP Loan Obligations in the amount of $25,000,000 and for additional funding in the amount of up to $50,000,000 for infrastructure and deferred maintenance needs of the Borrowers following exhaustion of the Governmental Grants, providing that no portion of the exit financing can be used to pay or satisfy any obligations that arose prior to the Plan effective date (other than assumption of the DIP Loan Obligations);

    g.  following the Plan effective date, the Debtors will have direct or indirect access to the Governmental Grants, no portion of which will be available to pay or satisfy any obligations that arose prior to the Plan effective date (other than to pay down the DIP Loan Obligations); and

    h.  [deleted]

v.  No later than January 31, 2026, the Bankruptcy Court shall have entered an order confirming the chapter 11 plan described in the immediately preceding section.

    (g)    Section 3.2 of the Loan Agreement is hereby modified by adding the following sections:

    (m)Borrowers shall not enter into any physician employment contracts

62728625 v2US2008 31902506 5

without the prior approval of Lender.

    (n) Borrowers shall provide to Lender, upon reasonable notice, full and continuous access to the Borrowers' facilities, management, personnel, equipment, books, records, and systems.

3.    **Waiver**.  The Borrowers and Lender hereby acknowledge and confirm that the Borrowers and Lender hereby acknowledge and confirm that certain reports delivered by the Borrowers pursuant Section 5.2(c) of the Loan Agreement with respect to certain cumulative rolling four-week periods (the "Measurement Periods") disclosed a Prohibited Variance, and (ii) that each such Prohibited Variance constitutes an Event of Default under both Sections 5.2(c) and 7.1(d) of the Loan Agreement (such Events of Default, the "Specified Defaults"). Upon the effectiveness of this Amendment in accordance with Section 5, Lender hereby waives, on a one-time basis, the occurrence of the Specified Defaults solely as they relate to the Measurement Periods (the "Waiver"). The Waiver applies only to the Specified Defaults and shall be effective only to the extent specifically set forth herein and this Waiver shall not (a) be construed as a waiver of any breach, default or Event of Default other than the Specified Defaults, (b) affect the rights of Lender to demand compliance by the Borrowers with all terms and conditions of the Loan Agreement and other Loan Documents except as specifically set forth in this paragraph, (c) be deemed a waiver of any transaction or future action on the part of the Borrowers requiring Lender's consent or approval under the Loan Agreement or any other Loan Document, or (d) except as to the Specified Defaults waived hereby, be deemed or construed to be a waiver or release of, or a limitation upon, Lender's exercise of any rights or remedies under the Loan Agreement or any other Loan Document or at law or in equity, whether arising as a consequence of any Default or Event of Default which may now exist or otherwise, and all such rights and remedies are hereby expressly reserved.

4.    **Representations and Warranties**. Each Borrower hereby represents and warrants to Lender on and as of the date of this Amendment as follows:

    (a)    Representations and Warranties; No Event of Default. The representations and warranties herein set forth in Section 4 of the Loan Agreement, and in each other Loan Document, certificate or other writing delivered by or on behalf of the Borrowers to Lender pursuant Loan Agreement or any other Loan Document on or immediately prior to the date hereof are true and correct in all material respects (except that such materiality qualifier shall not be applicable to any representations or warranties that already are qualified or modified as to "materiality" or "Material Adverse Change" in the text thereof, which representations and warranties shall be true and correct in all respects subject to such qualification) on and as of such date as though made on and as of such date, except to the extent that any such representation or warranty expressly relates solely to an earlier date (in which case such representation or warranty shall be true and correct in all material respects (except that such materiality qualifier shall not be applicable to any representations or warranties that already are qualified or modified as to "materiality" or "Material Adverse Change" in the text thereof, which representations and warranties shall be true and correct in all respects subject to such qualification) on and as of such earlier date), and no Default or Event of Default has occurred and is continuing as of the date hereof (after giving effect to any waiver herein) or would result from this Amendment becoming

62728625 v2US2008 31902506 5

4

effective in accordance with its terms.

(b)     Enforceability of Loan Documents. This Amendment is, and each other Loan Document to which any Borrower is a party is the legal, valid and binding obligation of such Borrower, enforceable against such Borrower in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting the enforcement of creditors' rights generally and by general principles of equity.

(c)     Governmental Approvals. Subject to Bankruptcy Court approval, no material authorization or approval or other action by, and no notice to or filing with, any Governmental Authority is required in connection with the due execution, delivery and performance by any Borrower of any Loan Document to which it is or will be a party (other than those that have been duly obtained or made and which are in full force and effect).

(d)     Bankruptcy Court Approval.    This Amendment shall be subject to Bankruptcy Court approval.

5.     **Effectiveness**. Subject to Bankruptcy Court approval, this Amendment shall be fully effective on the date hereof when each of the parties hereto delivers its duly executed signature page hereto.

6.     **Continued Effectiveness of the Loan Agreement and Other Loan Documents**. Each Borrower hereby and agrees that the Loan Agreement and each other Loan Document to which it is a party is, and shall continue to be, in full force and effect and is hereby ratified and confirmed in all respects, except that on and after the date of this Amendment, all references in any such Loan Document to "the Loan Agreement", the "Agreement", "thereto", "thereof", "thereunder" or words of like import referring to the Loan Agreement shall mean the Loan Agreement including this Amendment. Each Borrower confirms and agrees that, to the extent that any such Loan Document purports to assign, pledge or grant to Lender a security interest in or Lien on any Collateral as security for the Obligations of the Borrowers from time to time existing in respect of the Loan Agreement and the other Loan Documents, such pledge, assignment and/or grant of the security interest or Lien is hereby ratified and confirmed in all respects and continues in full force and effect on the terms of the respective Loan Documents, and the obligations of each Borrower arising under or as a consequence of the Loan Agreement are included in the Obligations. This Amendment does not and shall not affect any of the Obligations of the Borrowers, other than as expressly provided herein, including, without limitation, the Borrowers' obligations to repay the Loans in accordance with the terms of Loan Agreement or the Obligations of the Borrowers under any Loan Document to which they are a party, all of which Obligations shall remain in full force and effect and are hereby reaffirmed by the Borrowers. Except as expressly provided herein, the execution, delivery and effectiveness of this Amendment shall not operate as a waiver of any right, power or remedy of Lender under the Loan Agreement or any other Loan Document nor constitute a waiver of any provision of the Loan Agreement or any other Loan Document. Except as expressly amended by this Amendment, all terms and provisions of the Loan Agreement and the other Loan Documents remain unchanged and in full force and effect.

62728625 v2US2008 31902506 5

5

7.    **No Novation**. Nothing herein contained shall be construed as a substitution or novation of the Obligations outstanding under the Loan Agreement or instruments securing the same, which shall remain in full force and effect, except as modified hereby.

8.    **No Representations by Lender**. Each Borrower hereby acknowledges that it has not relied on any representation, written or oral, express or implied, by Lender in entering into this Amendment.

9.    **Further Assurances**. The Borrowers shall execute any and all further documents, agreements and instruments, and take all further actions, as may be required under applicable laws or as Lender may reasonably request, in order to effect the purposes of this Amendment.

10.    **Release**. In consideration of the accommodations to Borrowers provided by Lender pursuant to this Amendment, each Borrower does hereby remise, release, acquit, satisfy and forever discharge Lender and its respective agents, employees, officers, directors, predecessors, attorneys and all others acting or purporting to act on behalf of or at the direction of the Lender ("Releasees") of and from any and all manner of actions, causes of action, suit, debts, accounts, covenants, contracts, controversies, agreements, variances, damages, judgments, claims and demands whatsoever, in law or in equity, which such Borrower ever had or now has against any Releasee, for, upon or by reason of any matter, cause or thing whatsoever arising from, in connection with or in relation to any of the Loan Documents on or prior to the date hereof; provided that the foregoing clause shall not apply to a Releasee in the event of fraud or willful misconduct of such Releasee. Without limiting the generality of the foregoing, each Borrower does hereby waive and affirmatively agree not to allege or otherwise pursue any defenses, affirmative defenses, counterclaims, claims, causes of action, setoffs or other rights it does, shall or may have on or prior to the date hereof, including, but not limited to, the rights to contest any conduct of the Lender or other Releasees on or prior to the date hereof; provided, that the foregoing provisions of this sentence shall not apply to a Releasee in the event of fraud or willful misconduct of such Releasee.

11.    **Miscellaneous**.

    (a)    Section and paragraph headings herein are included for convenience of reference only and shall not constitute a part of this Amendment for any other purpose.

    (b)    THE TERMS AND PROVISIONS OF <u>SECTION 11</u> OF THE LOAN AGREEMENT ARE HEREBY INCORPORATED HEREIN AS IF FULLY SET FORTH HEREIN, *MUTATIS MUTANDIS.*

    (c)    Each Borrower hereby acknowledges and agrees that this Amendment constitutes a "Loan Document" under the Loan Agreement.

    (d)    Any provision of this Amendment that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining portions hereof or affecting the validity or enforceability of such provision in any other jurisdiction.

    (e)    This Amendment may be signed in counterparts and electronically in

62728625 v2US2008 31902506 5

accordance with Section 13.6 of the Loan Agreement, and the terms of provisions of Section 13.6 of the Loan Agreement are hereby incorporated herein as if fully set forth herein, *mutatis mutandis*.

*[signature page follows]*

62728625 v2US2008 31902506 5

7

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be executed and delivered as of the date set forth on the first page hereof.

**BORROWERS:**

**JACKSON HOSPITAL & CLINIC, INC.**

By:_____
        Name: Allen Wilen
        Title: CRO

**JHC PHARMACY, LLC**

By:_____
        Name: Allen Wilen
        Title: CRO

**LENDER:**

**JACKSON INVESTMENT GROUP, LLC**

By:_____
        Name: Richard L. Jackson
        Title: CEO

[Signature Page to Third Amendment to Loan Agreement]

# Exhibit 2

*FINAL*

**[REVISED] THIRD AMENDMENT AND WAIVER TO SENIOR SECURED, SUPER-PRIORITY DEBTOR-IN-POSSESSION LOAN AND SECURITY AGREEMENT**

THIS THIRD AMENDMENT AND WAIVER TO SENIOR SECURED, SUPER-PRIORITY DEBTOR-IN-POSSESSION LOAN AND SECURITY AGREEMENT (this "Amendment"*),* dated as of ~~September 26~~October [__], 2025, is entered into by and among (i) Jackson Hospital & Clinic, Inc., an Alabama corporation ("JHC") and JHC Pharmacy, LLC, an Alabama limited liability company ("JHC Pharmacy"), and (ii) Jackson Investment Group, LLC, a Georgia limited liability company ("JIG").

**W I T N E S S E T H**

WHEREAS, pursuant to the Senior Secured, Super-Priority Debtor-In-Possession Loan and Security Agreement dated as of March 4, 2025, as modified and amended by that certain "First Amendment and Waiver to Senior Secured, Super-Priority Debtor-in-Possession Loan and Security Agreement" dated as of July 10, 2025 and approved by the Bankruptcy Court by Order entered on July 30, 2025, and by that certain "Second Amendment and Waiver to Senior Secured, Super-Priority Debtor-in-Possession Loan and Security Agreement" dated as of August 20, 2025 and approved by the Bankruptcy Court by Order entered on August 28, 2025 (as may be further amended, restated, supplemented, waived, or otherwise modified from time to time prior to the date hereof, the "Loan Agreement"), among JHC and JHC Pharmacy, as Borrowers, and JIG, as Lender, Lender has made Loans to Borrowers, the aggregate outstanding principal amount of which as of the date hereof is $21,607,500. Capitalized terms used but not expressly defined in this Amendment shall have the meanings ascribed to such terms in the Loan Agreement.

WHEREAS, the Borrowers have requested certain amendments and waivers to the Loan Agreement and, subject to the terms and conditions set forth herein, Lender has agreed to such amendments and waivers.

NOW, THEREFORE, in consideration of the foregoing and the mutual covenants herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby agree as follows:

1.      **Introductory Paragraph and Recitals**. The above introductory paragraph and recitals of this Amendment are hereby incorporated into the body of this Amendment by reference as an integral part hereof and as if fully set forth herein.

2.      **Amendments to the Loan Agreement**. Subject to Section 5, the Loan Agreement is hereby amended as follows:

(a)      The definition of "Commitments" set forth in Section 1 of the Loan Agreement is hereby amended by replacing the amount "twenty-four million five hundred thousand Dollars ($24,500,000)" with the amount "twenty-five million Dollars ($25,000,000);

(b)      The definition of "Maturity Date" set forth in Section 1 of the Loan Agreement is hereby amended by replacing the date "July 31, 2025" set forth in clause (a)

62728625 v2

thereof with the date "October 31, 2025";

(c)            Upon satisfaction of Section 7.1(b)(iii) of the Loan Agreement (as restated herein), the definition of "Commitments" set forth in Section 1 of the Loan Agreement is thereby amended by replacing the amount "twenty-five million Dollars ($25,000,000)" with the amount "~~fifty~~thirty-five million Dollars ($~~50,000,000~~35,000,000);

(d)      Upon satisfaction of Section 7.1(b)(iii) of the Loan Agreement (as restated herein), the definition of "Maturity Date" set forth in Section 1 of the Loan Agreement is thereby amended by replacing the date "July 31, 2025" set forth in clause (a) thereof with the date "January 31, 2026";

(e)      Section 1 of the Loan Agreement is hereby amended to insert, in appropriate alphabetical order, the following defined term: "Third Amendment" means that certain Third Amendment and Waiver to Senior Secured, Super-Priority Debtor-In-Possession Loan and Security Agreement dated as of ~~September 26~~October [__], 2025, by and among the Parties.

(f)      Section 7.1(b) of the Loan Agreement is hereby reinstated and is hereby amended and restated in its entirety as follows:

Any of the following milestones are not satisfied or complied with:

  i.    No later than October 1, 2025, the Bankruptcy Court shall have entered an Order approving the Third Amendment;
  ii.   No later than October 30, 2025, Lender has obtained commitments to its satisfaction from one or more Governmental Authorities for no less than $100,000,000 of grants for use after the effective date of a chapter 11 plan of reorganization to fund the Borrowers' operations (the "Governmental Grants");
  iii.  No later than two (2) business days following Lender providing written notice to Borrowers that Section 7.1(b)(ii) has been satisfied or waived, the incumbent board of directors of JHC shall have appointed three (3) new directors that are acceptable to Lender to replace themselves, and shall have tendered their resignations to become effective immediately upon such replacement directors being seated, with such replacement directors then constituting the sole directors of JHC;
  iv.   No later than December 1, 2025, the Borrowers shall have filed a chapter 11 plan of reorganization that is acceptable to Lender in its sole discretion, and that contains at least the following provisions (the "Plan"):
       a.   the Borrowers will be reorganized and exit the Bankruptcy Cases with continued operations as a going concern;
       b.   the payment in full of all allowed administrative claims;
       c.   JHC will be converted to a membership nonprofit corporation having Jackson Hospital Services, Inc., a

US2008 31902506 5

62728625 v2

2

501(c)(3) ("JHS") as its sole member;

d. The reorganized Borrowers shall be managed by JHS on a fair market value basis;

e. the DIP Loan Obligations shall be paid down and reduced by the Governmental Grants to the aggregate outstanding principal amount of $25,000,000;

f. a $75,000,000 exit financing facility from Lender providing for the assumption of the DIP Loan Obligations in the amount of $25,000,000 and for additional funding in the amount of up to $50,000,000 for infrastructure and deferred maintenance needs of the Borrowers following exhaustion of the Governmental Grants, providing that no portion of the exit financing can be used to pay or satisfy any obligations that arose prior to the Plan effective date (other than assumption of the DIP Loan Obligations);

g. following the Plan effective date, the Debtors will have direct or indirect access to the Governmental Grants, no portion of which will be available to pay or satisfy any obligations that arose prior to the Plan effective date (other than to pay down the DIP Loan Obligations); and

h. prior to the Plan effective date, The Medical Clinic Board of the City of Montgomery Alabama shall have transferred its assets to JHC.

h. [deleted]

v. No later than January 31, 2026, the Bankruptcy Court shall have entered an order confirming the chapter 11 plan described in the immediately preceding section.

(g) Section 3.2 of the Loan Agreement is hereby modified by adding the following sections:

(m) Borrowers shall not enter into any physician employment contracts without the prior approval of Lender.

(n) Borrowers shall provide to Lender, upon reasonable notice, full and continuous access to the Borrowers' facilities, management, personnel, equipment, books, records, and systems.

3. **Waiver**. The Borrowers and Lender hereby acknowledge and confirm that the Borrowers and Lender hereby acknowledge and confirm that certain reports delivered by the Borrowers pursuant Section 5.2(c) of the Loan Agreement with respect to certain cumulative rolling four-week periods (the "Measurement Periods") disclosed a Prohibited Variance, and (ii) that each such Prohibited Variance constitutes an Event of Default under both Sections 5.2(c) and 7.1(d) of the Loan Agreement (such Events of Default, the "Specified Defaults"). Upon the effectiveness of this Amendment in accordance with Section 5, Lender hereby waives, on a one-time basis, the occurrence of the Specified Defaults solely as they relate to the Measurement

US2008 31902506 5
62728625 v2

Periods (the "Waiver"). The Waiver applies only to the Specified Defaults and shall be effective only to the extent specifically set forth herein and this Waiver shall not (a) be construed as a waiver of any breach, default or Event of Default other than the Specified Defaults, (b) affect the rights of Lender to demand compliance by the Borrowers with all terms and conditions of the Loan Agreement and other Loan Documents except as specifically set forth in this paragraph, (c) be deemed a waiver of any transaction or future action on the part of the Borrowers requiring Lender's consent or approval under the Loan Agreement or any other Loan Document, or (d) except as to the Specified Defaults waived hereby, be deemed or construed to be a waiver or release of, or a limitation upon, Lender's exercise of any rights or remedies under the Loan Agreement or any other Loan Document or at law or in equity, whether arising as a consequence of any Default or Event of Default which may now exist or otherwise, and all such rights and remedies are hereby expressly reserved.

4. **Representations and Warranties**. Each Borrower hereby represents and warrants to Lender on and as of the date of this Amendment as follows:

(a) Representations and Warranties; No Event of Default. The representations and warranties herein set forth in Section 4 of the Loan Agreement, and in each other Loan Document, certificate or other writing delivered by or on behalf of the Borrowers to Lender pursuant Loan Agreement or any other Loan Document on or immediately prior to the date hereof are true and correct in all material respects (except that such materiality qualifier shall not be applicable to any representations or warranties that already are qualified or modified as to "materiality" or "Material Adverse Change" in the text thereof, which representations and warranties shall be true and correct in all respects subject to such qualification) on and as of such date as though made on and as of such date, except to the extent that any such representation or warranty expressly relates solely to an earlier date (in which case such representation or warranty shall be true and correct in all material respects (except that such materiality qualifier shall not be applicable to any representations or warranties that already are qualified or modified as to "materiality" or "Material Adverse Change" in the text thereof, which representations and warranties shall be true and correct in all respects subject to such qualification) on and as of such earlier date), and no Default or Event of Default has occurred and is continuing as of the date hereof (after giving effect to any waiver herein) or would result from this Amendment becoming effective in accordance with its terms.

(b) Enforceability of Loan Documents. This Amendment is, and each other Loan Document to which any Borrower is a party is the legal, valid and binding obligation of such Borrower, enforceable against such Borrower in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting the enforcement of creditors' rights generally and by general principles of equity.

(c) Governmental Approvals. Subject to Bankruptcy Court approval, no material authorization or approval or other action by, and no notice to or filing with, any Governmental Authority is required in connection with the due execution, delivery and performance by any Borrower of any Loan Document to which it is or will be a party (other than those that have been duly obtained or made and which are in full force and effect).

(d) Bankruptcy Court Approval. This Amendment shall be subject to

US2008 31902506 5
62728625 v2

4

Bankruptcy Court approval.

5. **Effectiveness**. Subject to Bankruptcy Court approval, this Amendment shall be fully effective on the date hereof when each of the parties hereto delivers its duly executed signature page hereto.

6. **Continued Effectiveness of the Loan Agreement and Other Loan Documents**. Each Borrower hereby and agrees that the Loan Agreement and each other Loan Document to which it is a party is, and shall continue to be, in full force and effect and is hereby ratified and confirmed in all respects, except that on and after the date of this Amendment, all references in any such Loan Document to "the Loan Agreement", the "Agreement", "thereto", "thereof", "thereunder" or words of like import referring to the Loan Agreement shall mean the Loan Agreement including this Amendment. Each Borrower confirms and agrees that, to the extent that any such Loan Document purports to assign, pledge or grant to Lender a security interest in or Lien on any Collateral as security for the Obligations of the Borrowers from time to time existing in respect of the Loan Agreement and the other Loan Documents, such pledge, assignment and/or grant of the security interest or Lien is hereby ratified and confirmed in all respects and continues in full force and effect on the terms of the respective Loan Documents, and the obligations of each Borrower arising under or as a consequence of the Loan Agreement are included in the Obligations. This Amendment does not and shall not affect any of the Obligations of the Borrowers, other than as expressly provided herein, including, without limitation, the Borrowers' obligations to repay the Loans in accordance with the terms of Loan Agreement or the Obligations of the Borrowers under any Loan Document to which they are a party, all of which Obligations shall remain in full force and effect and are hereby reaffirmed by the Borrowers. Except as expressly provided herein, the execution, delivery and effectiveness of this Amendment shall not operate as a waiver of any right, power or remedy of Lender under the Loan Agreement or any other Loan Document nor constitute a waiver of any provision of the Loan Agreement or any other Loan Document. Except as expressly amended by this Amendment, all terms and provisions of the Loan Agreement and the other Loan Documents remain unchanged and in full force and effect.

7. **No Novation**. Nothing herein contained shall be construed as a substitution or novation of the Obligations outstanding under the Loan Agreement or instruments securing the same, which shall remain in full force and effect, except as modified hereby.

8. **No Representations by Lender**. Each Borrower hereby acknowledges that it has not relied on any representation, written or oral, express or implied, by Lender in entering into this Amendment.

9. **Further Assurances**. The Borrowers shall execute any and all further documents, agreements and instruments, and take all further actions, as may be required under applicable laws or as Lender may reasonably request, in order to effect the purposes of this Amendment.

10. **Release**. In consideration of the accommodations to Borrowers provided by Lender pursuant to this Amendment, each Borrower does hereby remise, release, acquit, satisfy and forever discharge Lender and its respective agents, employees, officers, directors, predecessors, attorneys and all others acting or purporting to act on behalf of or at the direction of the Lender ("Releasees") of and from any and all manner of actions, causes of action, suit, debts, accounts, covenants,

US2008 31902506 5
62728625 v2

5

contracts, controversies, agreements, variances, damages, judgments, claims and demands whatsoever, in law or in equity, which such Borrower ever had or now has against any Releasee, for, upon or by reason of any matter, cause or thing whatsoever arising from, in connection with or in relation to any of the Loan Documents on or prior to the date hereof; <u>provided</u> that the foregoing clause shall not apply to a Releasee in the event of fraud or willful misconduct of such Releasee. Without limiting the generality of the foregoing, each Borrower does hereby waive and affirmatively agree not to allege or otherwise pursue any defenses, affirmative defenses, counterclaims, claims, causes of action, setoffs or other rights it does, shall or may have on or prior to the date hereof, including, but not limited to, the rights to contest any conduct of the Lender or other Releasees on or prior to the date hereof; <u>provided</u>, that the foregoing provisions of this sentence shall not apply to a Releasee in the event of fraud or willful misconduct of such Releasee.

11. **<u>Miscellaneous</u>**.

(a) Section and paragraph headings herein are included for convenience of reference only and shall not constitute a part of this Amendment for any other purpose.

(b) THE TERMS AND PROVISIONS OF <u>SECTION 11</u> OF THE LOAN AGREEMENT ARE HEREBY INCORPORATED HEREIN AS IF FULLY SET FORTH HEREIN, *MUTATIS MUTANDIS*.

(c) Each Borrower hereby acknowledges and agrees that this Amendment constitutes a "Loan Document" under the Loan Agreement.

(d) Any provision of this Amendment that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining portions hereof or affecting the validity or enforceability of such provision in any other jurisdiction.

(e) This Amendment may be signed in counterparts and electronically in accordance with Section 13.6 of the Loan Agreement, and the terms of provisions of Section 13.6 of the Loan Agreement are hereby incorporated herein as if fully set forth herein, *mutatis mutandis*.

*[signature page follows]*

US2008 31902506 5
62728625 v2

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be executed and delivered as of the date set forth on the first page hereof.

**BORROWERS:**

**JACKSON HOSPITAL & CLINIC, INC.**

By:_____

    Name: Allen Wilen
    Title: CRO

**JHC PHARMACY, LLC**

By:_____

    Name: Allen Wilen
    Title: CRO

**LENDER:**

**JACKSON INVESTMENT GROUP, LLC**

By:_____

    Name: Richard L. Jackson
    Title: CEO

[Signature Page to Third Amendment to Loan Agreement]

62728625 v2

US2008 31902506 5

| Summary report: Litera Compare for Word 11.10.1.2 Document comparison done on 10/17/2025 7:48:49 AM | |
|---|---|
| **Style name:** Default Style | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://dmsweb.kilpatricktownsend.com/US2008/32047282/6 | |
| **Modified DMS:** iw://dmsweb.kilpatricktownsend.com/US2008/32047282/7 | |
| **Changes:** | |
| Add | 7 |
| Delete | 9 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 16 |