FILED

2026 Jan-20  PM 05:50
U.S. DISTRICT COURT
N.D. OF ALABAMA

# Exhibit 9

Docusign Envelope ID: 81D2C36B-F415-421E-BDBB-B8CF796178D7

## JOINT PROSECUTION AND FUNDING AGREEMENT

This Joint Prosecution and Funding Agreement ("Agreement") is entered into as of January 14, 2026, by and between Jackson Hospital & Clinic, Inc., an Alabama corporation ("JHC") and Jackson Investment Group, LLC, a Georgia limited liability company ("JIG").

1.      Definitions. As used in this Agreement, the following terms shall have the meanings set forth below.

    a.  "Advances" means the Litigation Expenses advanced by JIG for the benefit of JHC solely in connection with the Litigation, as further described in this Agreement.

    b.  "Bankruptcy Case" means the bankruptcy case filed by JHC—along with JHC Pharmacy, LLC—and currently pending in the United States Bankruptcy Court for the Middle District of Alabama (the "Bankruptcy Court"), Case No. 25-30256.

    c.  "Litigation" means, with respect to Blue Cross and Blue Shield of Alabama, any claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, in tort, law, or equity; all rights of setoff, counterclaim, or recoupment and claims on contracts or for breaches of duties imposed by law; claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; and such claims and defenses as fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code.

    d.  "Litigation Expenses" means the fees, costs, and expenses, including Special Counsel Compensation, and any other amounts incurred by JIG or JHC related to or in pursuit of the Litigation, including public relations and advocacy-related activities.

    e.  "Litigation Proceeds" means the monetary value of all consideration, whether cash or non-cash, received by or for the benefit of JHC in respect of the Litigation, including judgments, awards, settlements, licenses, releases, covenants not to sue, royalty or running payments, contract amendments or

Docusign Envelope ID: 81D2C36B-F415-421E-BDBB-B8CF796178D7

modifications, and any other consideration of any kind received in respect of the Litigation.

    f. "Special Counsel" means the law firm retained by the JHC to pursue the Litigation.

    g. "Special Counsel Compensation" means the fees, costs, and expenses of Special Counsel.

2.    Joint Prosecution. JIG and JHC shall jointly investigate, commence, prosecute, settle, and liquidate the Litigation, or any portion thereof. Decision-making regarding strategy, settlement, and other critical aspects of the Litigation shall be shared between JIG and JHC.

3.    Common Legal Interest

    a. The parties acknowledge and agree that JHC and JIG share a common legal interest in the successful prosecution, defense, settlement, monetization, and enforcement of the Litigation, including strategy, case evaluation, settlement posture, and the protection and maximization of potential recoveries, whether the Litigation is pending or to be filed in the Bankruptcy Court, or with respect to matters related to the Litigation raised in any other jurisdiction, venue, or proceeding.

    b. The JIG and JHC intend that all communications and materials shared between JHC, JHC's counsel, JIG, and JIG's counsel, in furtherance of this common legal interest, shall remain protected from disclosure to third parties to the fullest extent permitted by applicable law, including through attorney-client privilege, work-product doctrine, and common interest doctrine.

4.    Funding and Advances. JIG agrees to provide the Advances, from time to time, on an as needed basis. All Advances shall accrue interest at the rate of 1% per month, compounded monthly.

5.    Nonrecourse Nature of Advances. The parties intend and agree that all Advances are made on a nonrecourse, contingent basis and are not loans or extensions of credit for which any fixed or guaranteed payment is due. The Advances are repayable, if at all, solely and exclusively from Litigation Proceeds as described herein. JIG shall have no recourse to JHC or any of JHC's assets other than the Litigation Proceeds, it being expressly understood that JIG's capital in the form of the Advances is fully at risk of total loss.

Docusign Envelope ID: 81D2C36B-F415-421E-BDBB-B8CF796178D7

6.    <u>Waterfall Distribution of Litigation Proceeds.</u>  Upon the receipt of any Litigation Proceeds by the JHC, such proceeds shall be distributed in the following order, and no proceeds shall be distributed to any party expect as provided below unless specifically agreed to by JIG:

    a.  First, any Special Counsel Compensation due and payable to Special Counsel, shall be paid in full to Special Counsel pursuant to the terms of the Bankruptcy Court order retaining Special Counsel.

    b.  Second, alter satisfaction of the obligations in the preceding paragraph, all Advances made by JIG in connection with the Litigation, together with any accrued and unpaid interest thereon as provided in this Agreement, shall be paid in full to JIG.

    c.  Third, after satisfaction of the obligations in the preceding paragraphs, any remaining Litigation Proceeds shall be distributed (i) thirty percent (30%) to a non-profit entity designated by JIG, and (ii) seventy percent (70%) to JHC for the purpose of paying in full any obligations owed by JHC to JIG under either a debtor in possession financing loan or a confirmed plan exit loan (after all such debts to JIG have been paid in full, any remaining balance of the seventy percent (70%) shall be distributed to and retained by JHC), <u>provided however,</u> in the event that JHC confirms a chapter 11 plan of reorganization that is acceptable to JIG, JHC may allocate twenty percent (20%) of its seventy percent (70%) pursuant to the terms of such confirmed plan.

    d.  Distributions shall be made within fourteen (14) business days following the receipt of Litigation Proceeds, subject to reconciliation of amounts due and approval by the parties.

7.    <u>Security Interest.</u>

    a.  JHC hereby grants to the JIG, as security for the payment and performance of all obligations, liabilities, and indebtedness of JHC to JIG under this Agreement (collectively, the "<u>Secured Obligations</u>"), a continuing, first-priority security interest in and to the following property, whether now owned or hereafter acquired, and all proceeds and products thereof (collectively, the "Collateral"):

        i.  All rights, title, and interest of JHC in and to the Litigation, as defined in this Agreement, including but not limited to all claims, causes of action, interests, rights, remedies, and powers arising from or relating to the Litigation;

3

Docusign Envelope ID: 81D2C36B-F415-421E-BDBB-B8CF796178D7

> ii. All Litigation Proceeds (as defined herein), including, without limitation, all cash, non-cash consideration, settlements, judgments, awards, licenses, covenants not to sue, royalty or running payments, contract amendments or modifications, releases, and any other amounts or consideration of any kind whatsoever received or receivable by JHC in respect of the Litigation; and
>
> iii. All accounts, payment intangibles, general intangibles, contract rights, and other rights to payment arising from or relating to the Litigation or Litigation Proceeds.

b. JHC agrees to take all actions and execute all documents reasonably requested by JIG to perfect, maintain, continue, and enforce the JIG's security interest in the Collateral, including, without limitation, executing and delivering such financing statements, assignments, control agreements, or other instruments as the JIG may reasonably request.

c. JHC further agrees to promptly notify the JIG of any material developments in the Litigation or with respect to the Collateral.

d. Upon the occurrence and during the continuance of an event of default under this Agreement, JIG shall have, in addition to all other rights and remedies provided herein or by law, all the rights and remedies of a secured party under the Uniform Commercial Code ("UCC") as in effect in the State of Georgia, including, without limitation, the right to notify any party obligated with respect to any Collateral to make payment or performance directly to JIG, to take control of any proceeds of the Collateral, and to apply the proceeds to the Secured Obligations.

e. JHC hereby irrevocably appoints JIG as its attorney-in-fact, coupled with an interest, with full authority in the place and stead of JHC and in the name of JHC, from time to time after the occurrence and during the continuance of an event of default, to take any action and to execute any instrument which JIG may reasonably deem necessary or advisable to accomplish the purposes of this security interest provision.

8. Confidentiality. All non-public information provided by any party in connection with this Agreement or the Litigation shall be treated as confidential and shall not be disclosed to third parties except as required by law or court order, or as otherwise permitted herein.

4

Docusign Envelope ID: 81D2C36B-F415-421E-BDBB-B8CF796178D7

9.    <u>Representations and Warranties</u>. Each party represents and warrants that it has the authority to enter into this Agreement, the execution and delivery of this Agreement does not violate any other agreement to which it is a party, and it will comply with all applicable laws in connection with its performance under this Agreement.

10.    <u>Governing Law and Jurisdiction</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of Georgia, without regard to its conflict of laws principles. Any dispute arising under this Agreement shall be subject to the exclusive jurisdiction of the courts located in Fulton County, Georgia, unless the Bankruptcy Case is open, in which case exclusive jurisdiction and venue shall lie in the Bankruptcy Court.

11.    <u>Dispute Resolution</u>. The parties shall first attempt to resolve any dispute arising under this Agreement through good faith negotiation. If such negotiation fails after ten (10) days, the dispute shall be resolved by the Bankruptcy Court.

12.    <u>Termination</u>. This Agreement may be terminated by mutual written agreement of the parties. Upon termination, JIG shall have no further obligation to advance funds, but any Advances made prior to termination shall remain subject to the terms of this Agreement.

13.    <u>Notices</u>. All notices, requests, demands, and other communications required or permitted under this Agreement shall be in writing and shall be deemed to have been duly given (i) when delivered by hand, (ii) when sent by nationally recognized overnight courier, or (iii) when sent by registered or certified mail, postage prepaid, return receipt requested, and in each case with a copy by email, to the parties at the addresses set forth in the signature block below, or to such other address as may be designated by a party in writing.

14.    <u>Amendments and Waivers</u>. No modification, amendment, or waiver of any provision of this Agreement shall be effective unless in writing and signed by both parties. No waiver of any breach or default shall be deemed a waiver of any subsequent breach or default.

15.    <u>Assignment</u>. Neither party may assign or transfer any rights or obligations under this Agreement without the prior written consent of the other party, except that JIG may assign its rights to affiliated entities or as required by law. Any attempted assignment in violation of this provision shall be null and void.

16.    <u>Miscellaneous</u>.

Docusign Envelope ID: 81D2C36B-F415-421E-BDBB-B8CF796178D7

a.  If any provision of this Agreement is held to be invalid, illegal, or unenforceable in any respect, the validity, legality, and enforceability of the remaining provisions shall not be affected or impaired.

b.  This Agreement constitutes the entire agreement between the parties regarding its subject matter and supersedes all prior agreements, understandings, and negotiations, whether written or oral.

c.  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

d.  The headings used in this Agreement are for convenience only and shall not affect the interpretation of any provision hereof.

Signature Blocks This Agreement is executed as of January 14, 2026, by and between:

**JACKSON INVESTMENT GROUP, LLC**

By: _____

Name: Richard L. Jackson
Title: CEO

Jackson Investment Group, LLC
Attn:  Richard L. Jackson
2655 Northwinds Parkway
Alpharetta, Georgia 30009
Telephone: 770-643-5600
Email: rlj@jacksonhealthcare.com

with a copy to (which shall not constitute notice):

Jackson Investment Group, LLC
Attn:  Jay Mitchell, GC
2655 Northwinds Parkway
Alpharetta, Georgia 30009
Telephone: 770-643-5530
Email: jmitchell@jacksonhealthcare.com

**JACKSON HOSPITAL & CLINIC, INC.**

By: _____
Signed by:
0DE8E2990F6548E

Name: Allen Wilen
Title: CRO

Jackson Hospital & Clinic, Inc.
Attention: Mr. Allen Wilen
1725 Pine Street
Montgomery, AL 36106
Telephone: 334-293-8000
Email: allen.wilen@eisneramper.com

with a copy to (which shall not constitute notice):

Memory Memory & Causby, LLP
Attention: Mr. Stuart H. Memory
Post Office Box 4054
Montgomery, Alabama 36103
Email: smemory@memorylegal.com