# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE: BLUE CROSS BLUE SHIELD | §<br>§<br>§ | Master File No. 2:13-cv-20000-AMM |
| ANTITRUST LITIGATION (MDL NO.: 2406) | §<br>§<br>§<br>§ | This document relates to the Provider Track |
| | §<br>§<br>§ | ORAL ARGUMENT REQUESTED IN MOTION |

---

## JACKSON HOSPITAL & CLINIC, INC.'S REPLY BRIEF IN SUPPORT OF MOTION FOR RELIEF FROM JUDGMENT AND TO BELATEDLY OPT OUT OF SETTLEMENT CLASS

Chase J. Potter
Texas Bar No. 24088245
E-Mail: potter@imcplaw.com

IACUONE MCALLISTER POTTER PLLC
Energy Square One
4925 Greenville Ave., Suite 1112
Dallas, Texas 75206
Telephone:  (214) 432-1536

and

Stuart H. Memory
ASB-2214-Y36V
MEMORY MEMORY & CAUSBY, LLP
Post Office Box 4054
Montgomery, Alabama 36103
Phone:  334-834-8000
Fax:  334-834-8001
Email: smemory@memorylegal.com

COUNSEL FOR JACKSON HOSPITAL & CLINIC, INC.

i

# **TABLE OF CONTENTS**

A.   Blue Cross will suffer no prejudice. .......................................................... 1

B.   Blue Cross cannot limit this Court's discretion to make an equitable
     determination. ..................................................................................... 3

C.   Jackson Hospital did not seek, or gain, any "tactical advantage" through
     any alleged delay. ............................................................................... 6

D.   Blue Cross Alabama's criticisms of the Bankruptcy Court's order do not
     impact the validity of the order. ............................................................ 8

E.   The class action settlement does not impact Jackson Hospital's breach of
     contract claim. ...................................................................................... 9

<u>**JACKSON HOSPITAL'S REPLY**</u>

**A.    Blue Cross will suffer no prejudice.[1]**

1.    Despite devoting a significant portion of the response briefs to the prejudice analysis, Blue Cross failed to establish any prejudice that will befall Blue Cross if Jackson Hospital is permitted to opt out – because there is none. "Under *Pioneer*, 'prejudice is not an imagined or hypothetical harm; a finding of prejudice should be a conclusion based on facts in evidence.'" *In re Processed Egg Prods. Antitrust Litig.*, 130 F. Supp. 3d 945, 954 (E.D. Pa. 2015) (quoting *In re O'Brien Envt'l Energy, Inc.*, 188 F.3d 116, 127 (3d Cir. 1999)). Blue Cross introduced no evidence of any prejudice. Instead, Blue Cross professes speculative fear that other providers will attempt to opt out if Jackson Hospital is permitted to do so. Blue Cross also complains that it will have to defend against Jackson Hospital's claims. Blue Cross's arguments do not support the finding of prejudice.

2.    To create the illusion of prejudice, Blue Cross claims the floodgates will open if Jackson Hospital's Motion is granted. Specifically, Blue Cross Alabama argues: "If Jackson Hospital is permitted to . . . opt out at this late date, nothing would stop other settling class members from doing the same." *See* Doc. 3390, p. 20. That is not true. If this Court finds Jackson Hospital's failure to opt out before

---

[1]    The term "Blue Cross," when used herein, refers collectively to Blue Cross Blue Shield of Alabama ("Blue Cross Alabama") and Blue Cross Blue Shield Association (the "Blue Cross Association").

the March 2025 deadline is justified and excused (based on the extraordinary circumstances outlined in Jackson Hospital's Motion), it will *not* open the door for any other provider to opt out. The facts and equitable considerations supporting Jackson Hospital's Motion are unique to Jackson Hospital; they have no bearing on any other provider (and neither would a ruling granting Jackson Hospital's Motion). If Jackson Hospital's Motion is granted, it would result only in Jackson Hospital being able to proceed with its claims against Blue Cross Alabama. Such result does not support finding prejudice.

3.    "To find prejudice, courts typically require more than the fact that the defendant will face an additional lawsuit." *In re Processed Egg Prods.*, 130 F. Supp. 3d at 954. "Examples of more substantial bases for finding prejudice include 'loss of available evidence, increased potential for fraud or collusion, or substantial reliance upon the judgment.'" *Id.* (quoting *O'Brien*, 188 F.3d at 127); *see also Pratt v. Philbrook*, 109 F.3d 18, 22 (1st Cir. 1997) ("Of course, it is always prejudicial for a party to have a case reopened after it has been closed advantageously by an opponent's default. But we do not think that is the sense in which the term 'prejudice' is used in *Pioneer*."). These "more substantial bases" are not present in this case.

4.    The Blue Cross Association claims Blue Cross will suffer prejudice because the Settlement Agreement contains a recission mechanism and the

2

"decision-point has passed" with respect to same. *See* Doc. 3391, p. 10 (citing Doc. 3192-2, p. 67). Critically, however, Blue Cross does not argue – and offers no evidence (even by way of self-serving declaration testimony) – that Blue Cross would have triggered the recission mechanism had Jackson Hospital opted out prior to the March deadline. The reason Blue Cross does not, and cannot, make this argument is that it would be untrue. There are approximately 550 opt-out plaintiffs and 20 opt-out complaints. To suggest Blue Cross would have rescinded the Settlement Agreement (which Blue Cross claims includes "millions of other class members") because one additional provider (Jackson Hospital) opted out is implausible. More importantly, Blue Cross makes no such suggestion (*i.e.*, there is no evidence Blue Cross will suffer any prejudice with respect to the recission mechanism).

5.      In sum, there is no evidence in the record that Blue Cross will suffer any prejudice that could possibly justify denial of Jackson Hospital's Motion.

**B.      Blue Cross cannot limit this Court's discretion to make an equitable determination.**

6.      Blue Cross frames the applicable legal standard in a far too restrictive manner. For example, Blue Cross argues that – because Jackson Hospital knew of the March 4, 2025, opt-out deadline and later submitted a Claim Form – this Court should end its inquiry. *See* Doc. 3390, p. 11-14; *see also* Doc. 3391, p. 7-8. But that

3

is not the law. This Court's broad discretion to consider all the facts and make an equitable determination is not nearly so confined.

7.    To properly frame the analysis, the Eleventh Circuit instructs "[e]xcusable neglect is an ***equitable determination*** that requires an examination into whether the moving party had a good reason for not responding timely and whether the opposing party would be prejudiced." *In re HealthSouth Corp. Sec. Litig.*, 334 F. App'x 248, 253 (11th Cir. 2009) (emphasis added). "Excusable neglect . . . is a somewhat elastic concept." *Pioneer Inv. Servs. v. Brunswick Assocs.*, 507 U.S. 380, 392 (1993). When making the determination, the "incessant command of the court's conscience that justice be done in light of *all* the facts" should be considered. *See In re Tri-State Crematory Litig*, MDL No. 1467, 2005 WL 8165451, at *7 (N.D. Ga. Mar. 22, 2005 (emphasis in original) (quoting *Tessmer v. Walker*, 833 F.2d 925, 926 (11th Cir. 1987)). For the reasons set forth in Jackson Hospital's Motion, the facts and equities weigh heavily in favor of granting Jackson Hospital's Motion. Nothing in the response briefs filed by Blue Cross changes that.

8.    Blue Cross attempts to downplay the extraordinary circumstances justifying the requested relief. Blue Cross Alabama argues that Jackson Hospital's delay "cannot be cured by the Hospital's hollow excuse of being 'too busy' with the administrative burdens of bankruptcy." *See* Doc. 3390, p. 1. Blue Cross Alabama's

4

tone-deaf response, while unsurprising, badly misconstrues Jackson Hospital's argument and ignores the facts.

9.     As more fully set forth in the Motion, Jackson Hospital – since before the filing of its bankruptcy proceeding (which occurred less than 30 days before the opt-out deadline) through today – has faced one emergency situation after another in connection with the hospital's extremely complex bankruptcy proceeding and related efforts to survive and continue providing critical healthcare services to the legion of Alabamians the hospital serves. Doc. 3382-1, ¶¶ 7-24. There is no denying that the potential closure of Jackson Hospital is a serious public health concern.

10.    Congressman Shomari C. Figures stated: "Jackson Hospital is the single most important hospital in the state of Alabama because of the regional care it provides." Doc. 3378-2, p. 2. Andrew Szymanski of the Montgomery City Council stated: "We have to have this hospital going forward. It's the only hospital in the area that is taking in indigent care, and that's a really important thing to have here in the city of Montgomery." Doc. 3378-2, p. 2. Gina Maioloa, spokesperson for Governor Kay Ivey, stated: "Governor Ivey believes it is imperative this hospital keeps its doors open." Doc. 3378-2, p. 2.

11.    Moreover, if Jackson Hospital closes, approximately 1,800 employees will be displaced; there will be a significant loss in available beds to serve those in need of acute medical care in and around Montgomery; and the hospital's closure

will severely and negatively impact the access of Alabamians (especially those in the Montgomery area and those who are indigent) to critical, and often life-saving, healthcare services. Doc. 3382-2, ¶ 10.

12.     Blue Cross denies none of this. Yet, Blue Cross Alabama still claims Jackson Hospital's position constitutes nothing more than a "hollow excuse" of being "too busy." Blue Cross Alabama is wrong.

13.     Jackson Hospital's failure to opt out before the March deadline (*i.e.*, less than 30 days after the filing of Jackson Hospital's bankruptcy proceeding) should be excused because the unique and exigent circumstances surrounding Jackson Hospital's ongoing fight to remain open deprived Jackson Hospital of sufficient time to fully and properly analyze whether it could, and/or should, opt out. Doing what is needed to ensure the State of Alabama has sufficient access to critical healthcare services is no "hollow excuse." The record establishes that Jackson Hospital had "good reason" for not opting out before the March deadline and that the failure to do so should be excused (and, as discussed above, Blue Cross will suffer no prejudice if Jackson Hospital is permitted to do so).

**C.     Jackson Hospital did not seek, or gain, any "tactical advantage" through any alleged delay.**

14.     Blue Cross Alabama resorts to irrelevant and false mudslinging in support of its misguided argument that Jackson Hospital somehow acted "tactically" and "not in good faith." *See* Doc. 3390, p. 11, 19-20. For example, Blue Cross

6

Alabama alleges "Jackson Hospital seemingly calculated the timing and service of its TRO Motion to frustrate BCBSAL's ability to respond" and further claims the process server was given "express instructions to serve the document between 4:00 PM and 5:00 PM." *See* Doc. 3390, p. 11, FN 9.[2] Blue Cross Alabama's irrelevant accusation is false – and, worse yet, Blue Cross Alabama knows it.

15.     Jackson Hospital's TRO Motion was filed at 3:25 pm on December 18. *See* ECF Notice of Electronic Filing, attached hereto as Exhibit 1. Less than 30 minutes later, at 3:53 pm, the undersigned sent an e-mail addressed to Michael Velezis (Vice President, General Counsel at Blue Cross Alabama) attaching the Adversary Complaint and TRO Motion and requesting that Mr. Velezis provide contact information for Blue Cross Alabama's outside counsel who would be handling the matter. *See* December 18 e-mail, attached hereto as Exhibit 2.

16.     The undersigned further arranged for a process server to make a rush delivery so that Blue Cross Alabama would receive notice of the Adversary Complaint and TRO Motion as soon as possible. There was no "tactical" delay as claimed by Blue Cross Alabama. The opposite is true. Jackson Hospital made significant efforts to ensure Blue Cross Alabama received notice of the Adversary Complaint and TRO Motion as soon as possible after their filing. *Before* Blue Cross

---

[2]     Jackson Hospital objects to the Declaration of Shannon Ledford (Doc. 3390-10) and the Declaration of Tydon Miller (Doc. 3390-11), which are both plagued with irrelevant and inadmissible hearsay.

Alabama made this false accusation, the undersigned explained this to Blue Cross Alabama's counsel during a meet and confer conference.

17.    Blue Cross Alabama resorting to irrelevant and inaccurate accusations rings of desperation and highlights there is nothing in the record suggesting Jackson Hospital's failure to timely opt out was designed to gain any tactical advantage. The good-faith factor weighs in favor of granting Jackson Hospital's Motion.

**D.    Blue Cross Alabama's criticisms of the Bankruptcy Court's order do not impact the validity of the order.**

18.    On the one hand, Blue Cross Alabama claims the Bankruptcy Court's Vacate Order is irrelevant.[3] *See* Doc. 3390, p. 23. On the other hand, Blue Cross Alabama attacks the Vacate Order and argues it was wrongfully decided. *See* Doc. 3390, p. 9-10. Blue Cross Alabama's criticisms of the Vacate Order do not impact its validity. The Vacate Order states the Bankruptcy Court "hereby vacates and sets aside (1) the Debtors' failure to opt out of the Class Action Settlement, and (2) the Debtors' submission of a claim in such Class Action Settlement." Doc. 3378-4, p. 2, ¶ 2. The Bankruptcy Court's Vacate Order has not been set aside or otherwise challenged. The Bankruptcy Court's Vacate Order supports granting the relief requested by Jackson Hospital.

---

[3]    The term "Vacate Order," when used herein, has the same meaning as defined in Jackson Hospital's Motion. *See* Doc.

**E.     The class action settlement does not impact Jackson Hospital's breach of contract claim.**

19.     Blue Cross Alabama's response attacks the merits of Jackson Hospital's breach of contract claim. For example, Blue Cross Alabama claims "Jackson Hospital does not identify any provision of any contract that BCBSAL allegedly breached." *See* Doc. 3390, p. 24. That is not true.

20.     In the Adversary Complaint, Jackson Hospital alleges that Blue Cross Alabama breached (1) Article III, § 2(a)(ii)(Step 3) of the Inpatient Contract with Jackson Hospital, and (2) Article VII, §§ 7.1, 7.2 of the Outpatient Contract with Jackson Hospital. Doc. 3378-2, ¶¶ 139-40.

21.     More importantly, Blue Cross Alabama's misguided arguments regarding the merits of Jackson Hospital's breach of contract claim are of no moment for purposes of the issues to be addressed by this Court. The only question for this Court is whether Jackson Hospital's breach of contract claim – which relates to 2026 reimbursement rates – was somehow released by an antitrust class action settlement (it was not for the reasons discussed in Jackson Hospital's Motion). The determination of the merits of Jackson Hospital's breach of contract claim against Blue Cross Alabama is for another day.

22.     Blue Cross Alabama further argues that Jackson Hospital's alternative requested relief – *i.e.*, leave to amend or clarify its breach of contract claim – should be denied because, according to Blue Cross Alabama, "[i]f Jackson Hospital could

9

identify any provision of the parties' agreement that BCBSAL actually breached, it would have done so already." *See* Doc. 3390, p. 25. This argument fails because, as stated above, Jackson Hospital identified multiple provisions of the parties' agreements that Blue Cross Alabama breached. *See* Doc. 3378-2, ¶¶ 139-40.

23.     Moreover, Jackson Hospital's alternative request for leave to amend is consistent with Judge Proctor's ruling in the OMI matter (a decision cited by the Blue Cross Association in its response brief). *See* Doc. 3391, p. 21. Specifically, in Judge Proctor's order in the OMI matter (Doc. 3309), Judge Proctor provided OMI fourteen days from the date of the Order to either (1) file an amended complaint omitting certain allegations and claims, or (2) file a motion asking the district court in the Eastern District of Virginia to strike certain allegations and claims. *See* Doc. 3309, p. 17. There is no reason Jackson Hospital should not be afforded the same opportunity – especially considering the importance of the breach of contract claim (and related request for injunctive relief) with respect to Jackson Hospital's ability to successfully emerge from bankruptcy and continue providing critical healthcare services.

**<u>CONCLUSION</u>**

For these reasons, and those set forth in Jackson Hospital's Motion, Jackson Hospital respectfully requests that the Court grant the relief requested in its Motion and deny BCBSAL's Motion to Enforce Settlement.

10

Respectfully submitted,

/s/ Chase J. Potter

Chase J. Potter
Texas Bar No. 24088245
E-Mail: potter@imcplaw.com

IACUONE MCALLISTER POTTER PLLC
Energy Square One
4925 Greenville Ave., Suite 1112
Dallas, Texas 75206
Telephone:  (214) 432-1536

-and-

Stuart H. Memory
ASB-2214-Y36V
Memory Memory & Causby, LLP
Post Office Box 4054
Montgomery, Alabama 36103
Phone: 334-834-8000
Fax: 334-834-8001
Email: smemory@memorylegal.com

COUNSEL FOR JACKSON HOSPITAL & CLINIC, INC.

## CERTIFICATE OF SERVICE

This is to certify that, on January 23, 2026, a true and correct copy of the foregoing document was filed with the Court's CM/ECF system that will provide notice to all parties receiving electronic notices in this case.

/s/ Chase J. Potter

Chase J. Potter

11