# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **IN RE:** <br> **BLUE CROSS BLUE SHIELD** <br> **ANTITRUST LITIGATION** <br> **(MDL NO. 2406)** | **Master File No. 2:13-CV-20000-AMM** <br><br> **This Document Relates to** <br> **Provider Opt-Out Cases** |
| **IN RE:** <br> **BLUE CROSS BLUE SHIELD** <br> **ANTITRUST LITIGATION** <br> **(MDL NO. 2406)** | **Master File No. 2:25-MD-10000-AMM** |

## ORDER ON PROVIDER OPT-OUTS' MOTION FOR LEAVE TO CONDUCT LIMITED DISCOVERY

Two related Motions are currently pending in this MDL: (1) Provider Class Counsel's Motion for an Order Escrowing Payments in Judgment or Settlement (the "set-aside motion"), Case No. 2:13-cv-20000-AMM, Doc. 3357; Case No. 2:25-md-10000-AMM, Doc. 22[1]; and (2) Provider Opt-Out Plaintiffs' Motion to Extend Time and for Leave to Conduct Limited Discovery, Case No. 2:25-md-10000-AMM, Doc. 51. This order **GRANTS** the second motion.

Provider class counsel's set-aside motion seeks to set aside a portion of any recovery in the Provider opt-out cases for their benefit. Doc. 22. Provider opt-out

---

[1] For convenience, the court will cite to documents filed in the 2:25-md-10000-AMM case, unless otherwise specified.

plaintiffs' motion seeks the opportunity to discover information regarding whether what was done by Provider class counsel in the MDL would be helpful to them in their opt-out cases, before responding to Provider class counsel's motion. Doc. 51.

Judge Proctor previously granted Provider opt-outs' request to extend their deadline to respond to Provider class counsel's set-aside motion. Doc. 53. In making the request for limited discovery, Provider opt-outs assert that the set aside motion asks the court to "impose a set-aside on a party that has not even accessed a single MDL document that it will purportedly benefit from." Doc. 68 at 6.

## I.    BACKGROUND

Upon entry of the order transferring the Provider opt-out cases to the MDL, Judge Proctor ordered counsel in the pending ASO opt-out cases and the Provider opt-out cases to meet and confer to consider "[w]hat, if any, coordination would be appropriate between" those cases. Case No. 2:21-cv-01209-RDP, Doc. 606 at 10.

On September 22, 2025, following that meet-and-confer process, counsel in the Provider opt-out cases listed the following agenda items for a September 24, 2025 status conference:

1. Discovery Record Coordination
   a. Access to pre-existing discovery record
   b. Discovery information requests
   c. Protective order – new case number
   d. Structured data.

Doc. 23. Also on September 22, 2025, the eve of the September 24, 2025 Provider opt-out status conference, MDL Provider class counsel filed their set-aside motion. Doc. 51.

At the September 24, 2025 opt-out status conference, Provider opt-outs' counsel reported on the meet and confer process with the ASO opt-outs and the Blues:

> MR. MARTINEZ: . . .. So, as Your Honor directed, all of the provider opt-outs met with the ASO opt-outs. We met with the Blues on a number of occasions. We really have made progress on potential access to this previously produced discovery record. I'm going to –
>
> THE COURT: Can you define for me what you're defining as the preexisting discovery record?
>
> MR. MARTINEZ: Sure. That includes the productions that the Blues have made to the providers in the MDL, and it also includes productions, in part, that they have made to the ASO opt-out plaintiffs as well. There's a few caveats that I'm not sure we need to delve into today on some follow-up questions the Blues have about that from the ASOs, but generally speaking, there is a process in place that would allow that kind of access to proceed.
>
> So, the -- you know, some of that discovery is, you know, going to potentially be relevant to the cases here. The provider opt-outs have been working with the ASO opt-outs on an arrangement that would allow the provider opt-outs to have access to the repository that the ASO plaintiffs have been using for the unstructured documents that the Blues have previously produced. Again, that includes productions from the underlying provider MDL as well as those productions to the ASO plaintiffs.
>
> And under that arrangement that the Blues -- if that happens, the Blues have agreed that they would deem all of those productions reproduced in the provider opt-out actions under the new case number that you've created. And, you know, we think this is an efficiency that really largely

3

benefits the Blues. They will not need to undergo any costs, any efforts, to reproduce these large productions.

Once that proposal was introduced, in collaboration with the ASO plaintiffs, the Blues' position was that they had no obligation to assist in that process; they didn't have to share in any of the costs involved with that despite what we think are tremendous advantages to them. We are, I think, close to working out an arrangement with the ASO plaintiffs. But to be clear, if that does not happen for some reason, you know, we do believe that the Blues will need to reproduce those same materials as they've already agreed to do themselves and to do so quickly.

THE COURT: So one of the advantages, if you and the ASOs can get together, is you would presumably share a database and not have to restructure a brand-new database?

MR. MARTINEZ: Correct. That would be one of the advantages of doing that.

Doc. 39 at 12-14.

Addressing the relevance of MDL discovery, Provider opt-outs' counsel explained the following:

MR. MARTINEZ: We'll obviously be seeking significant discovery relating to our individual claims against the Blues that covers conduct from 2008 to the present and continuing. There's a huge time gap there. There has essentially been no document discovery regarding providers in almost a decade. There have been, for example, no depositions regarding providers in nearly that same amount of time. **There is almost no overlap between the state of Alabama, where the Court focused the provider track in the MDL, and the provider opt-outs before you today**.

*Id*. at 18 (emphasis added).

On October 4, 2024, in the MDL, Providers and the Blues executed a settlement agreement. Doc. 3225 at 6 (citing Doc. 3192-2). Under the agreement,

4

the Blues agreed to pay $2.8 billion, from which Provider class counsel's attorneys' fee and expense award would be paid. *Id*. at 7–9, 36. On August 19, 2025, Judge Proctor granted MDL Provider class counsel's motion for attorneys' fees and expenses. Doc. 3347. He awarded attorneys' fees of over $657 million and reimbursement of litigation costs and expenses of over $100 million. *Id*. at 2.

## II.    ANALYSIS

A party seeking expedited discovery ordinarily must establish good cause. *See Wilson v. Hamm*, 2025 WL 794447, at *2 (M.D. Ala. Mar. 12, 2025) ("Although the Eleventh Circuit Court of Appeals has not adopted a standard for allowing expedited discovery, . . . many district courts within the Eleventh Circuit have expressly used a general good cause standard when confronted with expedited discovery requests." (citing *Brown v. Dunn*, 2021 WL 4523498, at *1 (M.D. Ala. Oct. 4, 2021) (in turn citing *Rivera v. Parker*, 2020 WL 8258735, at *3 (N.D. Ga. 2020))) (internal quotation marks omitted). "Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Wilson*, 2025 WL 794447, at *2 (quoting *TracFone Wireless, Inc. v. SCS Supply Chain LLC*, 330 F.R.D. 613, 615 (S.D. Fla. 2019)).

In response to Provider class counsel's motion seeking to impose a set-off on any future recovery by the Provider opt-outs, Provider opt-outs seek limited, expedited discovery on factual issues raised by Provider class counsel's motion.

Doc. 51 at 11-12. Provider opt-outs seek information related to the MDL discovery, such as the parameters and characteristics of collected data, the division of labor between Provider class counsel and Subscriber counsel, and what depositions were taken. Doc. 51-1. They contend they need this information to "assess what claimed work product can be properly attributed to Provider Class Counsel (as opposed to Subscriber Class Counsel) and to evaluate what, if any, of Provider Class Counsel's work product will be relevant to Provider Opt-Outs' cases." Doc. 51 at 17.

Provider class counsel oppose the request for this information. Doc. 62. They argue that the court could enter a set-aside order without allowing the discovery, and they contend the discovery would be burdensome. *Id*. at 6-8, 12-13. They also argue that the Provider opt-outs do not dispute that the providers have conferred significant benefits on them, *id*. at 7-11, but in fact Provider opt-outs do dispute that fact. Doc. 68 at 9.

Provider opt-outs reply that the proposed set-aside is not reasonable because they have "not even accessed a single MDL document that [they] will purportedly benefit from." Doc. 68 at 5-6. The court discusses each argument in turn.

### A.    Set-Aside Orders

Provider class counsel argue that "courts uniformly enter set-asides without ordering discovery." Doc. 62 at 5. But the real question is whether that is routinely done in opt-out antitrust cases following an MDL where MDL class counsel received

adequate compensation within the confines of the MDL. "Several courts have declined to enter set-aside orders outside of the mass tort context, . . . while other courts have been willing to do so." *In re Zetia (Ezetimibe) Antitrust Litig.*, 2022 WL 18108387, at *4 (E.D. Va. Nov. 8, 2022) (internal citations omitted); *see also In re Packaged Seafood Prods. Antitrust Litig.*, 2021 WL 5326517, at *4 (S.D. Cal. Nov. 16, 2021) (declining to enter a set-aside order where class counsel failed to show that their work would not be fairly compensated within the MDL or that future opt-outs will be unjustly enriched).

The court is (as Judge Proctor was) sensitive to the free rider problem. Doc. 53 at 2 (citing Doc. 3199). But the crux of the issue is the use of the already-completed discovery for a limited purpose. Provider opt-outs seek limited discovery that will allow them to better assess whether the Provider MDL discovery materials will assist them in their opt-out cases. This type of information will assist the court in assessing the merits of the set-aside motion and whether Provider class counsel have met their burden to justify entry of such an order.

## B. Provider Opt-Outs' Need for Limited Discovery

To succeed on their set-aside motion, Provider class counsel must establish, among other things, that Provider opt-outs will be unjustly enriched by using discovery and/or other information in their opt-out cases that was developed by Provider class counsel in the MDL. *See In re Packaged Seafood Prods. Antitrust*

*Litig*., 2021 WL 5326517 at *4. Provider class counsel's set-aside motion contains twelve pages of facts that they argue establish such unjust enrichment. Doc. 22.

Provider opt-outs request the opportunity to gather information relevant to whether a set-aside is warranted. Doc. 51 at 5, 11, 13. They need this information, they argue, to determine "what work Provider Class Counsel did that would purportedly benefit Provider Opt-Outs to support a set-aside order." *Id*. at 13. They explain that they were "non-parties to the MDL litigation and therefore have no visibility into the scope of discovery in the MDL, the arrangements between the Subscriber Class and the Provider Class, or the scope and subject matter of the depositions or expert work undertaken in the MDL." *Id*. at 18.

Provider opt-outs also seek to explore the inconsistencies between the representations in Provider class counsel's set-aside motion and the comments those counsel made in presentations regarding the relative benefits of the Provider settlement versus opt-out litigation. They point to a December 11, 2024 letter from Provider Co-Lead Counsel stating that there are "enormous risks and burdens that exist for the provider opt-out litigation," including "potentially spending the next decade" in that litigation. Doc. 51-2 at 4.

The court has no difficulty concluding that Provider opt-outs need the limited discovery sought to have a fair opportunity to respond to the factual basis asserted in Provider class counsel's set-aside motion.

8

### C.    Prejudice to Provider Class Counsel from Conducting the Limited Discovery

Provider class counsel argue that producing the eight categories of information requested by the Provider opt-outs would be "incredibly burdensome and wasteful." Doc. 62 at 12. They also contend that if Provider opt-outs "access MDL discovery and the work product of the Providers' experts, they will have a massive set of cleaned and organized nationwide data, and a vetted econometric model upon which to build." *Id*. At the outset, the accusation of waste strikes the court as overwrought. Provider class counsel has been well-compensated for compiling this information in the MDL. Doc. 3347. As to the burden to produce the requested information, Provider class counsel assert they would have to, among other things, reactivate document databases that have been offline for years, and review hundreds of productions to determine Providers and Subscribers' relative contributions. Doc. 62 at 13. But this information is necessary for a proper evaluation of Provider class counsel's set-aside motion. Ultimately, the court discerns no undue prejudice in allowing the Provider opt-outs to discover limited information that Provider class counsel has been fully compensated for discovering and that is necessary to evaluate a motion by that counsel in any event.

### III.    CONCLUSION

Provider opt-outs' Motion for Leave to Conduct Limited Discovery, Doc. 51, is **GRANTED**. If Provider class counsel intend to prosecute their set-aside motion,

9

they **SHALL** respond to the Provider opt-outs' requests for information. If Provider class counsel withdraws their set-aside motion and negotiates reasonable compensation from Provider opt-outs to obtain and use work product from the Provider track MDL, the parties are **ORDERED** to notify the court promptly of that agreement.

 **DONE** and **ORDERED** this 5th day of March, 2026.

        _____
        **ANNA M. MANASCO**
        UNITED STATES DISTRICT JUDGE