FILED

2026 Apr-17  PM 01:57
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **IN RE: BLUE CROSS BLUE SHIELD** | § § § | **Master File No. 2:13-cv-20000-AMM** |
| **ANTITRUST LITIGATION (MDL NO.: 2406)** | § § § § | **This document relates to the Provider Track** |

---

## JACKSON HOSPITAL & CLINIC, INC.'S POST-HEARING SUBMISSION IN SUPPORT OF MOTION FOR RELIEF FROM JUDGMENT AND TO <u>BELATEDLY OPT OUT OF SETTLEMENT CLASS</u>

Chase J. Potter
Texas Bar No. 24088245
E-Mail: potter@imcplaw.com

IACUONE MCALLISTER POTTER PLLC
Energy Square One
4925 Greenville Ave., Suite 1112
Dallas, Texas 75206
Telephone:  (214) 432-1536

and

Stuart H. Memory
ASB-2214-Y36V
MEMORY MEMORY & CAUSBY, LLP
Post Office Box 4054
Montgomery, Alabama 36103
Phone:  334-834-8000
Fax:  334-834-8001
Email: smemory@memorylegal.com

COUNSEL FOR JACKSON HOSPITAL & CLINIC, INC.

1

**JACKSON HOSPITAL'S POST-HEARING SUBMISSION**

**A.      Jackson Hospital's Belated Opt-Out Request is Not "Settler's Remorse"**

1.      During the April 10, 2026, hearing in the above-referenced matter (hereinafter, the "Hearing"), the concept of "settler's remorse" was raised. Specifically, the Court questioned whether Jackson Hospital's pending request to opt out of the MDL Settlement[1] constitutes "settler's remorse." Tr., 17:22-24.[2] When the evidence is considered it is clear this cannot be a case of "settler's remorse," because Jackson Hospital made no decision to settle. Instead, Jackson Hospital's failure to timely opt out was due to excusable neglect – as that standard is defined in *Pioneer*.

2.      Both the testimony from Allen Wilen ("Wilen") at the Hearing and the flurry of activity in Jackson Hospital's bankruptcy proceeding (the "Bankruptcy")[3] demonstrate that Jackson Hospital did not – and could not – fully and properly analyze whether to opt out before the March 4, 2025, opt-out deadline (the "Opt-Out Deadline"). As such, Jackson Hospital could not have regretted an analysis it never got to perform or a decision it never deliberately made.

---

[1]      The term "MDL Settlement" refers to the Provider Settlement Agreement dated October 4, 2024 [Doc. 3192-2].

[2]      Jackson Hospital has received the Redacted Transcript of Motion Hearing, Friday, April 10, 2026, and cites to same herein.

[3]      The Bankruptcy is styled Case No. 25-30256, pending in the United States Bankruptcy Court for the Middle District of Alabama.

3.    First, Wilen testified as follows:

"Doing the analysis related to this settlement was, you know, was about 27th on my list of things that wasn't going to kill somebody. You know, looking at this analysis would have been great, okay, but I couldn't do it without saying to somebody else, okay, Mary Smith is going to die in her bed."

Tr., 37:10-14.

"[W]e didn't have a chance to make the opt in or the opt out . . . It wasn't until later that somebody said by not opting in -- by not opting out, you opted in . . . I didn't make a decision because we never got to it. And then later on I learned that, you know, effectively we were too late to make that opt-out decision."

Tr., 40:25-41:9.

4.    When asked by counsel for Blue Cross Alabama[4] as to whether he participated in meetings to discuss the MDL Settlement, including whether Jackson Hospital should opt out of same, Wilen testified that there were no such meetings. *See* Tr., 45:18-46:2. Further, when pressed as to how the value of Jackson Hospital's participation in the MDL Settlement could not have been a point of significant discussion with potential DIP lenders, Wilen stated:

"And I didn't view [the MDL Settlement] that way because at that point in time I didn't understand what it was worth or what it was there. So how was I supposed to put a value on it? . . . Look. I can tell you that we didn't even look at that issue, because to us -- I was focused on cash today . . . Nowhere was I even thinking about this, because who knows when the heck the money is ever going to come in."

---

[4]    The term "Blue Cross," when used herein, refers collectively to Blue Cross Blue Shield of Alabama ("Blue Cross Alabama") and Blue Cross Blue Shield Association (the "Blue Cross Association").

Tr., 48:4-49:17.[5]

5.      Moreover, in addition to the demands of keeping the Hospital open from an operational standpoint, the circumstances in the Bankruptcy (which had just been filed) in the days leading up to and immediately following the Opt-Out Deadline were all-consuming, making it virtually impossible for Jackson Hospital to fully consider and decide whether it should opt out. Specifically:

- February 3, 2025 – Bankruptcy Petition filed [Bankr. Doc. 1]

- February 6, 2025 – Interim DIP Order signed [Bankr. Doc. 69]

- February 19, 2025 – Unsecured Creditors' Committee formed, resulting in information requests [Bankr. Doc. 126; Wilen Decl., ¶ 17]

- February 21, 2025 – Patient Care Ombudsman appointed, resulting in multiple diligence requests [Bankr. Doc. 130; Wilen Decl., ¶ 17]

- February 27, 2025 – multiple objections to the DIP Motion filed [Bankr. Doc. 146, 147, 149, 150]

- March 4, 2025 – contested hearing on the DIP financing occurs [*see* Bankr. Doc. 69]

---

[5]     Wilen also emphasized that DIP lenders do not lend against class action settlements and, at most, will take those assets as additional collateral. *See* Tr., 53:14-54:3.

- March 5, 2025 – emergency proceeding regarding critical electrical switch to ensure Hospital's electrical grid did not collapse during a summer storm [Bankr. Doc. 165, 169; Wilen Decl., ¶ 18]

- March 6, 2025 – Final DIP Order signed [Bankr. Doc. 180]

6.    Importantly, during this same time, the Hospital was preparing an emergency shut-down plan to relocate patients (among many other things) if funding efforts failed. Wilen Decl., ¶ 13; Tr., 35:24-37:17. To make an informed decision regarding the MDL Settlement at this time – when the Hospital did not even know whether it would have funding to operate and take care of patients – simply could not be done. As Wilen perfectly summarized: "It is a very different environment where peoples' lives are on the line." Tr., 37:15-17.

7.    Put simply, there can be no "remorse" because there was no decision to settle. A deliberate and tactical analysis was not performed prior to the Opt-Out Deadline to determine whether opting out of the MDL Settlement was in Jackson Hospital's best interest, because – given the circumstances outside of Jackson Hospital's reasonable control – it could not be done. As such, no deliberate decision was made not to file an opt-out form. Jackson Hospital maintains that its desire to belatedly opt out of the MDL Settlement is far from settler's remorse; instead, it is the result of excusable neglect and, thus, should be permitted.

**B.    Successful Post-Hearing Conference Between the Parties Regarding Jackson Hospital's Breach of Contract Claim**

8.      As a result of the conference efforts between the parties following the Hearing, the parties reached an agreement regarding Count 8 in the Adversary Proceeding (*i.e.*, Jackson Hospital's breach of contract claim and the related request for injunctive relief).

9.      Specifically, as evidenced by Blue Cross Alabama's Notice Regarding Jackson Hospital's Draft Amended Complaint [Doc. 3413], even if the Court enjoins Jackson Hospital from proceeding on Counts 1–7 (which Jackson Hospital maintains should not be the result), Blue Cross does not contend that Jackson Hospital should be enjoined from pursuing its breach of contract claim (and Jackson Hospital's related request for injunctive relief) as amended in the draft complaint being submitted as Exhibit 1 hereto (which is the draft that was provided to, and reviewed by, Blue Cross) (the "Draft Breach of Contract Complaint").

10.     If the Court grants Jackson Hospital's request to opt out, no amendment will be necessary. However, if the Court enjoins Counts 1-7, Jackson Hospital requests that the Court provide the parties the opportunity to meet and confer (following the Court's ruling) to determine whether an agreement can be reached between the parties regarding the optimal procedural mechanism by which to permit the Draft Breach of Contract Claim to be filed and proceed separate and apart from the current Adversary Proceeding and/or any claims that are enjoined (if any) in

6

accordance with the agreement reached by the parties through their prior conference efforts.

Respectfully submitted,

/s/ Chase J. Potter

Chase J. Potter
Texas Bar No. 24088245
E-Mail: potter@imcplaw.com

IACUONE MCALLISTER POTTER PLLC
Energy Square One
4925 Greenville Ave., Suite 1112
Dallas, Texas 75206
Telephone:  (214) 432-1536

-and-

Stuart H. Memory
ASB-2214-Y36V
Memory Memory & Causby, LLP
Post Office Box 4054
Montgomery, Alabama 36103
Phone: 334-834-8000
Fax: 334-834-8001
Email: smemory@memorylegal.com

COUNSEL FOR JACKSON HOSPITAL & CLINIC, INC.

## CERTIFICATE OF SERVICE

This is to certify that, on April 17, 2026, a true and correct copy of the foregoing document was filed with the Court's CM/ECF system that will provide notice to all parties receiving electronic notices in this case.

/s/ Chase J. Potter

Chase J. Potter

7