FILED
2026 Apr-23  PM 01:45
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA SOUTHERN DIVISION**

| | | |
|---|---|---|
| IN RE: BLUE CROSS BLUE SHIELD ANTITRUST LITIGATION MDL 2406 | : : : : : : : : | Master File No. 2:13-cv-20000-AMM <br><br><br><br> This document relates to Subscriber Track cases |

**SUBSCRIBER PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR APPROVAL OF DISTRIBUTION PLAN**

## I.    INTRODUCTION

Judge Proctor granted preliminary approval of the Subscriber Plaintiffs' settlement agreement on November 30, 2020 ("Preliminary Approval Order" or "Notice Order"). ECF No. 2641. In the Preliminary Approval Order, the Court approved a detailed Notice Plan and Plan of Distribution, and appointed JND as the Notice and Claims Administrator. The Court then granted final approval of the Settlement on August 9, 2022 ("Final Approval"). ECF No. 2931.  Having faithfully followed the notice and administration plan previously approved, Subscriber Plaintiffs ("Plaintiffs") hereby seek the Court's approval of their proposed plan to distribute the Net Settlement Fund to qualified claimants.

Plaintiffs respectfully request that the Court order the Net Settlement Fund be distributed in the manner set forth in the Proposed Order attached hereto, consistent with the Plan of Distribution previously approved. *See* Declaration of Jennifer M. Keough in Support of Plaintiffs' Motion for Approval of Distribution Plan ("Keough Decl.") ¶ 160, attached as Exhibit A hereto.

1

The precise method of distribution was described in the Long Form Notice and Claim Form approved by the Court and disseminated to Class Members.[1]

The Court-appointed Notice and Claims Administrator, JND Legal Administration ("JND"), in consultation with Class Counsel[2] and under the oversight of the Settlement Administrator – Honorable Judge Irma Gonzalez (Ret.), executed one of the most comprehensive notice programs in class action history, diligently processing over 8.4 million claims, and determined each claimant's eligibility. *See* Keough Decl. ¶ 14. JND sent more than 100 million direct notices during the initial notice period to potential class members, and several hundred million additional reminder notices, including a significant media campaign and third-party outreach efforts. *Id.* ¶¶ 7-10. As a result of these comprehensive efforts, 8,421,346 claims were filed. *Id.* ¶ 14. Of those, 7,774,992 claims have been vetted, processed, and approved by JND and are recommended for payment. Keough Decl. ¶ 158. These claims will be paid promptly upon approval of the Court, as set forth in the Distribution Plan.

## II.    BACKGROUND

Following Final Approval, several appeals were filed to the Eleventh Circuit Court of Appeals, and subsequently Certiorari was sought at the United States Supreme Court (which ultimately affirmed Plaintiffs' Settlement Agreement). *See In re Blue Cross Blue Shield Antitrust Litig.*, 85 F.4th 1070 (11th Cir. 2023), *cert. denied* 144 S. Ct. 2686 and 144 S. Ct. 2687.  Those appeals lasted between October 5, 2022, and June 24, 2024, during which JND was instructed to

---

[1] *See* Long Form Notice, ECF No. 2812-5 ("Payments will be distributed on a proportional basis across all FI Authorized Claimants based on their estimated premiums."); Claim Form, ECF No. 2812-5  ("Claimants who submit valid, approved claims shall receive a pro-rata percentage of the Net Settlement Fund allocated to their type of coverage (fully-insured or self-funded) based upon their estimated proportion of the cumulative total of premiums and/or administrative fees paid by all claimants.").

[2] The Court appointed Hausfeld LLP and Boies Schiller Flexner, LLP as Settlement Class Counsel when approving the Settlement, ECF No. 2931 at 30 ("The court is well-acquainted with Class Counsel's performance in this case. It has spent scores of hours with them and observed their work. The court has no hesitation in concluding that they have more than adequately represented the Settlement Classes in accordance with Rule 23(e)(2)(A).").

pause the bulk of its claims processing work in case any appeals changed or eliminated the Settlement. *See* Keough Decl. ¶ 93. Subsequently, beginning in November 2023 through December 2024, JND, the Special Master, the Parties, and the Court engaged in negotiations regarding additional issues, where JND was authorized to resume full claims processing activities in December 2024. *Id.* ¶ 94. In total, JND's diligent prosecution of its responsibilities has resulted in a fully processed claims database ready for distribution, and Plaintiffs respectfully request distribution of the Net Settlement Fund to qualified claimants pursuant to the Distribution Plan.

### A.      Claims Administration

As detailed extensively in the Keough Declaration, the claims process was robust and comprehensive, resulting in significant Class Member participation across all fifty states and five U.S. territories. Keough Decl. ¶ 14.

### 1.      The Court-Approved Notice Plan Was Successfully Executed

JND designed and implemented one of the most comprehensive notice programs ever executed in a class action settlement. The Notice Plan ran from March 26, 2021, through May 31, 2021, and included a substantial direct notice effort, an extensive consumer and entity media campaign, and additional outreach efforts. Keough Decl. ¶ 6.

### a.      Direct Notice

JND mailed Postcard Notices to 77,360,606 Damages Class Members and successfully delivered Email Notices to 27,497,063 Damages Class Members. Keough Decl. ¶¶ 37, 45. In total, JND sent more than 100 million direct notices during the initial notice period. *Id.* ¶ 7. Of the Postcard Notices sent, 72,336,749 or 93.5% were confirmed delivered. *Id.* ¶ 41.

### b.    Media Campaign

JND designed and implemented a robust consumer media campaign that alone reached more than 85% of potential Settlement Class Members. *Id.* ¶ 47. The campaign encompassed digital advertising delivering over 458 million impressions through the Google Display Network and Facebook[3]; full-page color notices in People and Better Homes & Gardens magazines; approximately 10,865 radio spots across satellite radio, premiere networks, and targeted programming in the top African American and Hispanic markets; over 10.7 million audio streaming impressions through Pandora and Spotify; and 2,671 television spots across cable, syndicated programming, and network morning news. *Id.* ¶¶ 48–54.

### c.    Entity Media Campaign

JND also targeted individuals responsible for filing claims on behalf of entity Class Members through entity media campaign consisting of digital notice placements through LinkedIn and leading business websites, as well as placements in industry e-newsletters directed at human resources and employee benefits professionals. *Id.* ¶¶ 55–61.

### d.    Additional Outreach

JND undertook further efforts including a third-party outreach mailing to over 165,094 HR and employee benefit contacts, an internet search campaign delivering 703,008 impressions, a Multichannel News Release receiving 199 pickups with a total potential audience of over 153 million, and the placement of a link to the Settlement Website on BCBS.com by Settling Defendants. *Id.* ¶¶ 62-66.

---

[3] Additionally, over 46 million impressions were allocated to Spanish language sites from Google Display Network and Facebook. Keough Decl. ¶ 49.

### e.    Data Processing

Handling notice and administration in this case required the processing of hundreds of millions of pieces of data from approximately 35 different Blue Cross Blue Shield entities. *Id.* ¶ 17. JND received a total of 144 separate data files containing nearly 430 million records. *Id.* ¶ 25. Through extensive deduplication efforts, JND reduced this population from over 420-million-member records to approximately 103 million unique Damages Class Member records — a reduction of more than 75% — saving the program tens of millions of dollars in postage alone. *Id.* ¶¶ 27–31.

### f.    Claims Stimulation.

Following the conclusion of the Notice Period, JND sent over 175 million reminder emails to potential Damages Class Members who had not yet filed claims. *Id.* ¶ 67. JND also implemented a targeted reminder media campaign prior to the November 5, 2021 claims filing deadline involving following up with HR groups, media reminder campaign, digital campaign, press releases, and other efforts. *Id.* ¶¶ 67–74.

### g.    Settlement Website and Call Center.

JND established and maintained a dedicated Settlement Website (www.BCBSSettlement.com) that has tracked over 47 million sessions as of December 31, 2025. *Id.* ¶ 81. JND also maintained a toll-free telephone number with dedicated operators, which has received 2,093,008 incoming calls, and a dedicated email address through which JND has received and responded to more than 500,000 emails. *Id.* ¶¶ 87, 89.

### 2.    JND Processed and Verified Over 8.4 Million Claims

In total, JND received and processed a total of 8,421,346 claims, 99% of which were filed online. Keough Decl. ¶ 14. Claims were submitted through three processes: 279,424 paper claims,

5

8,123,317 electronic claims via the Settlement Website portal, and 18,529 bulk filer claims. Keough Decl. Section B.

### a.    Matching Claims to Class Data.

Each claim was required to be matched to original Class Data provided by the BCBS Defendants. *Id.* ¶ 99. JND provided a Unique ID to every noticed Class Member to streamline this process. Despite this, 959,253 claims were submitted without a Unique ID, requiring extensive automated and manual analysis involving thousands of hours of data work to match claimants to class records spanning over 100 million entries. *Id.* ¶¶ 99-103. The matching process involved reviewing and comparing full and partial names, addresses, email addresses, and health plan IDs. *Id.* Further efforts were made in situations where an employee's claim matched to an employer record, requiring decoupling, or matching employer claims to employer class records when no unique ID was used. *Id.* ¶¶ 102-103.

### b.    Alternative Option Processing.

The Plan of Distribution established default percentages for allocation of premiums between employers and employees where an insurance plan covered a company as well as its employees. *Id.* ¶ 104. Claimants who wished to claim an alternative allocation were required to complete an Alternative Option section and provide supporting documentation. *Id.* ¶ 105. JND received 34,485 Alternative Option claims out of the 8.4 million total. *Id.* ¶ 106. JND reviewed supporting documentation for each and, where documentation established a colorable claim, forwarded the matter to Settlement Administrator Judge Gonzalez for final determination. *Id.* ¶¶ 107-108. JND and Judge Gonzalez met more than 25 times for collaborative review sessions, and JND provided Judge Gonzalez with all relevant details to adjudicate claims, including the Claimant details, employer details, the Defendant health plan(s), the calculated premiums and ASO

(Administrative Service Organization) fees per year, the claimed alternative percentages/amount per year, and JND's recommended alternative percentage/amount per year for each claim entering the review process. *Id.* ¶ 109.

### c.    Bulk Filer Claims.

JND processed 18,529 claims submitted by third-party claim preparers. Keough Decl. Section B. These required extensive manual processing due to the lack of uniformity in submissions, frequent duplicate filings, missing authorization documents, and piecemeal information provided over the course of several years. *Id.* ¶¶ 111-114.

### d.    Deficiency Processing.

In addition to the deficiency process for Bulk Filer claims, JND conducted a comprehensive deficiency process for all claim types. Keough Decl. Section C. For claims that could not be matched to Class Data, JND sent 296,148 Non-Class Deficiency Notices via email or postcard, built a dedicated online portal for claimant responses, and processed 10,578 responses — ultimately validating an additional 1,395 claims. *Id.* ¶¶ 128-129. For duplicate claims, JND sent notices regarding 340,962 claims identified as duplicative, of which 305 responses were received. *Id.* ¶¶ 132-134.

### e.    Premium Noticing and Correction.

JND sent 7,771,228 Premium Notices to valid claimants, affording each the opportunity to review Total Premiums Paid and/or Total Administrative Fees Paid through a purpose-built Premium Review Portal. *Id.* ¶¶. 135-140. JND received only 27,737 premium correction requests — indicating the overwhelming majority of claimants agreed with JND's premium determinations. *Id.* ¶ 142. Each correction request was rigorous and individually reviewed, with some requiring

analysis of hundreds or thousands of pages of documentation spanning multiple years and health plans. *Id.* ¶ 143.

### f.    Calculation.

JND designed and developed a proprietary calculation program following the Court-approved Plan of Distribution to determine the Recognized Loss for each eligible claimant. *Id.* ¶ 150. The calculation processed two settlement funds with their own class periods, spanning multiple years and billions of transactions of fee data across 35 Defendant health plans. *Id.* ¶¶ 150-154. JND is in the process of running the final calculation and performing validation in preparation for initial distribution, with the final run to be completed in early May and distribution to commence on May 11. *Id.* ¶ 154.

### 3.    The Quality Assurance Process was Thorough

Throughout the administration of the Settlement, JND's Quality Assurance personnel worked to verify claims were processed properly. Keough Decl. ¶ 155. JND verified, among other things, that: premium and ASO Fee data assembled for each valid claim was complete and accurate; true duplicate claims were identified and rejected; claimants not matching Class Data were rejected; persons and entities excluded from the Settlement Class did not receive payment; all valid claims received Premium Notices; deficiency notices were properly sent; and the calculation program was tested and re-tested for accuracy. *Id.*

JND also took a multi-layered approach to defend against fraudulent claims, including tools and technology built into the claim filing website was the first layer that identified and limited fraudulent bot activity, monitoring of online claim traffic for suspicious patterns, requirements that all valid claims match to Class Data, and extensive duplicate analysis. *Id.* ¶ 156.

### B. Distribution of Net Settlement Fund

#### 1. Calculation of Pro Rata Share

Using the Net Settlement Fund available for distribution[4], JND will calculate the final *pro rata* payment amount for each Authorized Claimant. In accordance with the Court-approved Plan of Distribution, JND will calculate each Authorized Claimant's *pro rata* share of the Net Settlement Fund based on the amount of the Authorized Claimant's Recognized Claim in comparison to the total Recognized Claims of all Authorized Claimants. Keough. Decl. ¶ 160(a)(1).

Pursuant to the Plan of Distribution, JND will then eliminate from the Initial Distribution any Distribution any Authorized Claimant whose *pro rata* share calculates to $5.00 or less. *Id.* ¶ 160(a)(2). These claimants will not receive any distribution from the Net Settlement Fund and will be so notified by JND. *Id.* This de minimis threshold was established by the Parties in the Settlement Agreement and included in the Court-approved Plan of Distribution. *Id.*

After eliminating claimants who would have received $5.00 or less, JND will recalculate the *pro rata* share for all remaining Authorized Claimants. *Id.* ¶ 160(a)(3). A "Distribution Amount" will be calculated for each Authorized Claimant, which shall be the Authorized Claimant's Recognized Claim divided by the total Recognized Claims of all Authorized Claimants who would have received $5.01 or more, multiplied by the total amount in the Net Settlement Fund. *Id*.

Authorized Claimants with a Distribution Amount less than $200.00 will be paid their full Distribution Amount in the Initial Distribution and will receive no additional funds in subsequent distributions. *Id.* ¶ 160(a)(4). After deducting payments to those claimants paid in full, 90% of the

---

[4] After deducting all payments approved by the Court, and after payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, while maintaining a 10% reserve to address any late disputes or Premium and ASO Fees, tax liability and claims administration-related contingencies that may arise following the Initial Distribution. Keough. Decl. ¶ 160(a).

remaining balance of the Net Settlement Fund will be distributed pro rata to Authorized Claimants whose Distribution Amount calculates to $200.00 or more. *Id.* ¶ 160(a)(5). The remaining 10% will be held in reserve and distributed at a later time. *Id.*

### 2.    Distribution of Payments

Upon entry of an Order approving this Motion, JND will promptly issue payment to each Authorized Claimant. Distribution will be made by the payment method selected by each claimant on their claim form, including check, PayPal, Venmo, and electronic debit card. Keough Decl. ¶ 160(b). For employers and bulk filers receiving large payments, JND is performing outreach to give them the opportunity to receive Electronic Fund Transfers in lieu of checks. *Id.* ¶ 160(f).

After JND and the Parties determine the Initial Distribution is complete, JND will conduct a Second Distribution. Keough Decl. ¶ 161. Any amounts remaining in the Net Settlement Fund, including from the Reserve and funds from stale-dated payments, and after deducting taxes, tax preparation costs, escrow fees, and appropriate reserves, will be distributed to Authorized Claimants from the Initial Distribution (other than those paid in full) who accepted their Initial Distribution payments and who would receive at least $5.01 in the Second Distribution. *Id.* Additional distributions may occur at six-month intervals until Lead Counsel, in consultation with JND, determines that further distribution is not cost-effective. *Id.*

### III.    ARGUMENT

This settlement was recognized by Judge Proctor as providing "significant, historic injunctive relief for the class, in addition to a substantial monetary award" while navigating "novel and complex legal questions." Final Order and Judgment Granting Approval of Subscriber Class Action Settlement and Appointing Settlement Administrator, ECF No. 2931 at 71; *see also* ECF No. 2932 at 3 (the Settlement provides "historic, transformative, pro-competitive injunctive and

10

equitable relief that will greatly benefit the members of the Subscriber Class."). In fact, the Court noted that over the course of years of litigation, "this multidistrict litigation has been extraordinarily complex, protracted, and hard fought." ECF No. 2931 at 2. This litigation has included the production of terabytes of data from 37 separate Defendants, briefing over 150 different discovery motions, 15 million pages of documents produced and analyzed, over 140 depositions, challenges to hundreds of thousands of privilege log entries, several rounds of summary judgment motions, and ultimately, a multi-year negotiation to achieve the settlement terms as finally approved by the Court. *Id.* at 2-3.

In order to notice and administer the Subscriber Class according to the settlement terms, Class Counsel sought appointment of JND Legal as Claims Administrator. The Court, having reviewed the proposed Plan of Distribution, appointed JND Legal as the Claims Administrator with responsibility for claim administration, Notice Plan, and all other obligations, consistent with JND's "proven track record and extensive experience in large, complex matters." Memorandum Opinion and Order Preliminarily Approving Settlement, Plan of Distribution, and Notice Plan, and Directing Notice to the Class, ECF No. 2641 at 53, 60. In addition, the Court held a full-day hearing for Preliminary Approval and a two-day Fairness Hearing before the Court granted Preliminary, and then Final Approval. ECF No. 2931 at 6. The Court also wrote extensively regarding the settlement and Plan of Distribution, with the Final Approval order totaling 92 pages alone. *See In re Blue Cross Blue Shield Antitrust Litig.*, 85 F.4th 1070 (11th Cir. 2023), *cert. denied* 144 S. Ct. 2686 and 144 S. Ct. 2687 (affirming the settlement).

Taken together, this settlement and Plan of Distribution have been subject to years of review by the Court. Indeed, the actual administration of the settlement has consumed years of diligent work and time from the Settlement Administrator, Claims Administrator, Class Counsel,

the Special Master, and Court. Now, having executed faithfully the plans previously approved by the Court, Subscriber Plaintiffs, along with JND Legal as Claims Administrator, believe it is the appropriate time to distribute payments to claimants and as such, respectfully request that the Court order that distribution.

### A. The Court Should Approve the Recommendations of the Claims Administrator and Co-Lead Counsel Concerning Acceptance or Rejection of Claims.

As detailed above, JND has performed a diligent and thorough review of all 8,421,346 claim forms over the course of more than four years. *See* Section II.A.2 *supra*; Keough Decl. ¶ 157. Based on this exhaustive process, JND has determined — and Class Counsel concurs — that 7,774,992 claims are eligible for payment according to the proposed Distribution Plan. Keough Decl. ¶ 158.

In addition, JND reviewed and recommends rejection of 646,354 claims for the following reasons:

a. 298,143 Claims did not match to a Class record – (Non-Class Claim);

b. 339,406 Claims were identified as duplicative, with a single valid claim retained for each class record (Duplicate Claims);

c. 5,662 any other reason (Fraud, Entry Error, Claimant Cannot Claim); and

d. 3,143 Claims were withdrawn.

Keough Decl. ¶ 159. Notably, each rejected claimant was provided notice of the deficiency and an opportunity to cure. Keough Decl. ¶¶ 122-134. Class Counsel agrees with JND's recommendations concerning the denial of ineligible claims and the payment of eligible claims. These recommendations are consistent with the Court approved Plan of Distribution, as noted *supra* and in the Keough Declaration.

### B.    The Court Should Approve the Proposed Distribution Plan

In accord with the terms of the Plan of Distribution and as outlined in the Keough Declaration, JND will distribute claims on a *pro rata* basis for each Authorized Claimant based on the amount of their Recognized Claim in comparison to the total Recognized Claims of all Authorized Claimants. *See* Keough Decl. ¶ 160(a). This is the method of distribution that the Court previously approved at Final Approval when approving the Plan of Distribution, calling it "efficient and effective". *In re Blue Cross Blue Shield Antitrust Litig.*, No. 2:13-CV-20000-RDP, 2022 WL 4587618, at *16 (N.D. Ala. Aug. 9, 2022), *aff'd sub nom. In re Blue Cross Blue Shield Antitrust Litig. MDL 2406*, 85 F.4th 1070 (11th Cir. 2023). The Court's previous decision to approve a *pro rata* distribution is in line with other courts in similar complex antitrust cases. *See In re Payment Card Interchange Fee and Merchant Discount Antitrust litigation*, No. 05-MD-1720 (MKB) (JO), 2019 WL 6875472, at *20 (E.D.N.Y. Dec. 16, 2019); *In re LIBOR-Based Fin. Instruments Antitrust Litig.,* 327 F.R.D. 483, 496 (S.D.N.Y. 2018) (approving distribution plans where they "provide for pro rata distributions of the respective settlement funds" in an antitrust action); *In re Credit Default Swaps Antitrust Litig.*, No. 13md2476 (DLC), 2016 WL 2731524, at *4 (S.D.N.Y. Apr. 26, 2016) (approving distribution plan that "calculate[es] each claimant''s recovery based on its pro  rata share  of  the  available [s]ettlement [f]unds  in  relation  to  the recoveries to which all claimants who have submitted a valid claim are entitled" in an antitrust action with substantive objections to the plan); *Shapiro v. JPMorgan Chase & Co.,* Nos. 11 Civ. 8331 (CM)(MHD), 11-CV-7961 (CM), 2014 WL 1224666, at *13 (S.D.N.Y. Mar. 24, 2014) (approving an allocation plan where the settlement amount, less administration costs, would be distributed on a pro rata basis of net losses)*; In re Initial Pub. Offering Sec. Litig.,* 671 F. Supp. 2d 467,  475 (S.D.N.Y. 2009) (same); *In re Vitamins Antitrust Litig.,* No. 99-197 TFH, 2000 WL

13

1737867, at *6 (D.D.C. Mar. 31, 2000) ("Settlement distributions, such as this one, that apportion funds according to the relative amount of damages suffered by class members, have repeatedly been deemed fair and reasonable.").

Here, the *pro rata* distribution (as set forth in the Plan of Distribution) was described in the Long Form Notice, Claim Form, and Plan of Distribution, all of which have been approved by the Court and disseminated to Class Members, including on the settlement website. Further, the Plan of Distribution accounts for claimants whose proportional shares calculate equal to or less than $5.00. Keough Decl. ¶ 160(a)(2). The Distribution Plan will execute these and other features of the Court-approved Plan of Distribution. As described above, Class Counsel and JND have faithfully followed the Court-approved Plan of Distribution, making distribution proper now.

## IV.    CONCLUSION

For the foregoing reasons, Subscriber Plaintiffs respectfully request the Court grant its Motion and:

1. Approve the recommendations of the Claims Administrator concerning the acceptance of 7,774,992 eligible claims and the rejection of 646,354 ineligible claims;

2. Approve the proposed Distribution Plan, including the Initial Distribution, the $5.00 *de minimis* threshold, the $200.00 threshold for claims paid in full, the 10% reserve, and the Second Distribution process, as described in this Motion and in the Keough Declaration;

3. Authorize the distribution of the Net Settlement Fund to Authorized Claimants in the manner described in this Motion; and

4. Direct JND to begin the Initial Distribution on or about May 11, 2026, and to file a status report with the Court following the conclusion of the Initial Distribution.

A Proposed Order is attached hereto.

Dated: April 23, 2026

  /s/ David Boies
David Boies – *Co-Lead Counsel*
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, NY 10504
Tel: (914) 749-8200
Fax: (914) 749-8200
dboies@bsfllp.com

  /s/ Michael D. Hausfeld
Michael D. Hausfeld – *Co-Lead Counsel*
Swathi Bojedla – *Discovery Committee*
HAUSFELD LLP
1200 17th Street, N.W., Suite 600
Washington, DC 20036
Tel: (202) 540-7200
Fax: (202) 540-7201
mhausfeld@hausfeld.com
sbojedla@hausfeld.com

Charles J. Cooper – *Co-Chair,*
*Written Submissions Committee*
COOPER & KIRK, PLLC
1523 New Hampshire Ave. NW
Washington, DC 20036
Tel: (202) 220-9600
Fax: (202) 220-9601
ccooper@cooperkirk.com

Megan Jones – *Settlement Committee & PSC*
*Member*
Arthur Bailey – *Discovery Committee*
HAUSFELD LLP
580 California Street, 12th Floor
San Francisco, CA 94104
Tel: (415) 633-1908
Fax: (415) 358-4980
mjones@hausfeld.com
abailey@hausfeld.com

Chris T. Hellums – *Local Facilitating Counsel*
PITTMAN, DUTTON & HELLUMS, P.C.
2001 Park Place N, 1100 Park Place Tower
Birmingham, AL 35203
Tel: (205) 322-8880
Fax: (205) 328-2711
chrish@pittmandutton.com

William A. Isaacson – *Settlement Committee*
*& PSC Member*
PAUL WEISS
2001 K Street, NW
Washington, DC 20006-1047
Tel: (202) 223-7313
Fax: (202) 379-4937
wisaacson@paulweiss.com

Gregory Davis – *Settlement Committee & PSC*
*Member*
DAVIS & TALIAFERRO, LLC
7031 Halcyon Park Drive
Montgomery, AL 36117
Tel: (334) 832-9080
Fax: (334) 409-7001
gldavis@knology.net

Cyril V. Smith – *Settlement Committee & PSC*
*Member*
ZUCKERMAN SPAEDER, LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202-1031
Tel: (410) 949-1145
Fax: (410) 659-0436
csmith@zuckerman.com

15

Kathleen Chavez – *Settlement Committee & PSC Member*
FOOTE, MIELKE, CHAVEZ & O'NEIL, LLC
10 West State Street, Suite 200
Geneva, IL 60134
Tel: (630) 797-3339
Fax: (630) 232-7452
kcc@fmcolaw.com

David Guin – *Co-Chair, Written Submissions Committee*
Tammy Stokes – *Damages Committee*
GUIN, STOKES & EVANS, LLC
300 Richard Arrington Jr. Blvd. North
Suite 600/Title Building
Birmingham, AL 35203
Tel: (205) 226-2282
Fax: (205) 226-2357
davidg@gseattorneys.com
tammys@gseattorneys.com

Carl S. Kravitz – *Expert Committee*
ZUCKERMAN SPAEDER LLP
1800 M Street NW, Suite 1000
Washington, DC 20036-5807
Tel: (202) 778-1800
Fax: (202) 822-8106
ckravitz@zuckerman.com

Richard Feinstein – *Expert Committee*
Hamish P.M. Hume – *Expert Committee*
BOIES, SCHILLER FLEXNER LLP
1401 New York Avenue NW
Washington, DC 20005
Tel: (202) 237-2727
Fax: (202) 237-6131
rfeinstein@bsfllp.com
kdyer@bsfllp.com
hhume@bsfllp.com

Mindee Reuben
Lite DePalma Greenberg
1835 Market Street, Suite 2700
Philadelphia, PA 19103
Tel: (267) 314-7980
Fax: (973) 623-0858
mreubin@litedepalma.com

Nate Cihlar
Joshua Callister
Srauss & Boies
4041 University Drive, 5th Floor
Fairfax, VA 22030
Tel: (703) 764-8700
Fax: (703) 764-8704
ncihlar@straus-boies.com
jcallister@straus-boies.com

Patrick Cafferty – *Discovery Committee*
CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP
150 S. Wacker Drive, Suite 300
Chicago, IL 60606
Tel: (312) 782-4880
pcafferty@caffertyclobes.com

Bryan Clobes – *Litigation Committee*
Ellen Meriwether – *Written Submissions Committee*
CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP
2005 North Monroe Street
Media, PA 19063
Tel: (215) 864-2800
Fax: (215) 864-2810
bclobes@caffertyclobes.com
emeriwether@caffertyclobes.com

16

Andrew Lemmon – Chair, Discovery Committee
LEMMON LAW FIRM
15058 River Road
PO Box 904
Hahnville, LA 70057
Tel: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

Douglas Dellaccio – *Litigation Committee*
CORY WATSON CROWDER & DEGARIS, P.C.
2131 Magnolia Avenue, Suite 200
Birmingham, AL 32505
Tel: (205) 328-2200
Fax: (205) 324-7896
ddellaccio@cwcd.com

Edwin J. Kilpela, Jr.
Benjamin Sweet – *Litigation Committee*
DEL SOLE CAVANAUGH STROYD LLC
200 First Avenue, Suite 300
Pittsburgh, PA 15222
Tel: (412) 261-2393
Fax: (412) 261-2110
ekilpela@dsclaw.com
bsweet@dsclaw.com

Charles T. Caliendo – *Class Certification Committee*
GRANT & EISENHOFER
485 Lexington Avenue
New York, NY 10017
Tel: (646) 722-8500
Fax: (646) 722-8501
ccaliendo@gelaw.com

Virginia Buchanan – Chair, Class Certification Committee
LEVIN PAPANTONIO THOMAS MITCHELL RAFFERTY & PROCTOR, P.A.
316 South Baylen Street, Suite 600
Pensacola, FL 32502
Tel: (850) 435-7000
Fax: (850) 435-7020
vbuchanan@levinlaw.com

Larry McDevitt – *Chair, Class Certification Committee*
David Wilkerson – *Discovery Committee*
VAN WINKLE LAW FIRM
11 North Market Street
Asheville, NC 28801
Tel: (828) 258-2991
lmcdevitt@vwlawfirm.com
dwilkerson@vwlawfirm.com

Robert M. Foote – *Damages Committee*
FOOTE, MIELKE, CHAVEZ & O'NEIL, LLC
10 West State Street, Suite 200
Geneva, IL 60134
Tel: (630) 797-3339
Fax: (630) 232-7452
rmf@fmcolaw.com

Robert Eisler – *Discovery Committee*
GRANT & EISENHOFER
123 Justison Street
Wilmington, DE 19801
Tel: (302) 622-7000
Fax: (302) 622-7100
reisler@gelaw.com

Daniel Gustafson – *Litigation Committee*
Daniel C. Hedlund – *Damages Committee*
GUSTAFSON GLUEK PLLC
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Tel: (612) 333-8844
Fax: (612) 339-6622
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com

John Saxon – *Litigation Committee*
JOHN D. SAXON, P.C.
2119 3rd Avenue North
Birmingham, AL 35203-3314
Tel: (205) 324-0223
Fax: (205) 323-1583
jsaxon@saxonattorneys.com

Robert Methvin – *Chair, Settlement Committee*
James M. Terrell – *Class Certification Committee*
MCCALLUM, METHVIN & TERRELL, P.C.
The Highland Building
2201 Arlington Avenue South
Birmingham, AL 35205
Tel: (205) 939-0199
Fax: (205) 939-0399
rgm@mmlaw.net
jterrell@mmlaw.net

H. Lewis Gillis – *Co-Head Chair, Litigation Committee*
MEANS GILLIS LAW, LLC
3121 Zelda Court
Montgomery, AL 36106
Tel: 1-800-626-9684
hlgillis@tmgslaw.com

Brent Hazzard – *Litigation Committee*
HAZZARD LAW, LLC
447 Northpark Drive
Ridgeland, MS 39157
Tel: (601) 977-5253
Fax: (601) 977-5236
brenthazzard@yahoo.com

Lawrence Jones – *Damages Committee*
JONES WARD PLC
The Pointe
1205 East Washington Street, Suite 111
Louisville, Kentucky 40206
Tel: (502) 882-6000
Fax: (502) 587-2007
larry@jonesward.com

Michael McGartland – *Class Certification Committee*
MCGARTLAND & BORCHARDT LLP
1300 South University Drive, Suite 500
Fort Worth, TX 76107
Tel: (817) 332-9300
Fax: (817) 332-9301
mike@attorneysmb.com

David J. Hodge – *Chair, Settlement Committee*
MORRIS, KING & HODGE
200 Pratt Avenue NE
Huntsville, AL 35801
Tel: (256) 536-0588
Fax: (256) 533-1504
lstewart@alinjurylaw.com

*Counsel for Subscriber Plaintiffs*

18