FILED
2026 May-15  AM 11:41
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT 1

**The relief described hereinbelow is SO ORDERED**

**Done this 28th of April, 2026**



**Christopher L. Hawkins**
**United States Bankruptcy**
**Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

In re:

JACKSON HOSPITAL & CLINIC, INC., *et al.*,[1]

      Debtors.

Chapter 11
Case No. 25-30256
Jointly Administered

---

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING, SECOND AMENDED JOINT PLAN OF REORGANIZATION FOR JACKSON HOSPITAL & CLINIC, INC., AND JHC PHARMACY, LLC

---

Jackson Hospital & Clinic, Inc. ("JHC") and its affiliated debtor and debtor-in-possession, JHC Pharmacy, LLC, ("JP," and together with JHC, the "Debtors" and each, individually, a "Debtor"), having filed their *Second Amended Joint Plan of Reorganization for Jackson Hospital & Clinic, Inc. and JHC Pharmacy, LLC* (Doc. No. 1547) (as may be amended and supplemented, the "Plan"), and it appearing that the events described in the Recitals below have occurred:[2]

---

[1] The Debtors in these cases are Jackson Hospital & Clinic, Inc. and JHC Pharmacy, LLC. *See* (Doc. No. 49).

[2] Unless otherwise defined, capitalized terms used in these findings of fact, conclusions of law, and order (collectively, this "Confirmation Order" or this "Order") shall have the meanings ascribed to them in the Plan. In addition, in accordance with Article I of the Plan, any term used in the Plan or this Order that is not defined in the Plan

67317610 v1

## RECITALS

A.      On February 3, 2025 (the "Petition Date") the Debtors filed voluntary petitions in this Court for relief pursuant to chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (as applicable to these cases, the "Bankruptcy Code").

B.      On January 30, 2026, the Debtors filed the *Disclosure Statement for Joint Plan of Reorganization for Jackson Hospital & Clinic, Inc. and JHC Pharmacy, LLC* and the *Joint Plan of Reorganization for Jackson Hospital & Clinic, Inc. and JHC Pharmacy, LLC*. *See* (Doc. Nos. 1401, 1402).

C.      On February 12, 2026, the Debtors filed the *Motion of Debtors for Entry of Order (I) Approving the Debtors' Disclosure Statement for Joint Plan of Reorganization for Jackson Hospital & Clinic, Inc., and JHC Pharmacy, LLC; and (II) Establishing Certain Deadlines and Procedures with Respect to Confirmation of the Joint Plan of Reorganization*. *See* (Doc. No. 1441).

D.      On March 3, 2026, the Debtors filed the *First Amended Disclosure Statement for Joint Plan of Reorganization for Jackson Hospital & Clinic, Inc. and JHC Pharmacy, LLC* and the *First Amended Joint Plan of Reorganization for Jackson Hospital & Clinic, Inc. and JHC Pharmacy, LLC*. *See* (Doc. Nos. 1515, 1516).

E.      On March 5, 2026, the Debtors filed the *Second Amended Disclosure Statement for Joint Plan of Reorganization for Jackson Hospital & Clinic, Inc. and JHC Pharmacy, LLC* and the *Second Amended Joint Plan of Reorganization for Jackson Hospital & Clinic, Inc. and JHC Pharmacy, LLC*. *See* (Doc. Nos. 1525 and 1526).

---

or this Order, but that is used in the Bankruptcy Code, shall have the meaning given to that term in the Bankruptcy Code, as applicable.

2

67317610 v1

F.    On March 12, 2026, the Court entered its *Corrected Order Approving (I) the Adequacy of Debtors' Disclosure Statement for Joint Plan of Reorganization for Jackson Hospital & Clinic, Inc., and JHC Pharmacy, LLC; (II) Treatment of Certain Claims and Interests for Voting and Notice Purposes, (III) Record Date and Procedures for Filing Objections to the Plan, (IV) Procedures for Obtaining the Temporary Allowance of Contingent, Unliquidated, and Disputed Claims for Voting Purposes, and (V) Solicitation Procedures for Confirmation* (the "Disclosure Statement Order"). *See* (Doc. No. 1544). In the Disclosure Statement Order, the Court approved the Disclosure Statement and set a hearing on confirmation of the Plan for April 21, 2026 (the "Confirmation Hearing"). *See id.*

G.    On March 12, 2026, the Debtors filed clean copies of the *Second Amended Disclosure Statement for Joint Plan of Reorganization for Jackson Hospital & Clinic, Inc. and JHC Pharmacy, LLC* and the *Second Amended Joint Plan of Reorganization for Jackson Hospital & Clinic, Inc. and JHC Pharmacy, LLC* for solicitation purposes. *See* (Doc. Nos. 1546 and 1547).

H.    On March 12, 2026, the Debtors filed the *Notice of Confirmation Hearing and Objection Deadline* (the "Confirmation Hearing Notice") (Doc. No. 1545), providing notice to all parties entitled to receive such notice of the objection deadline to the Plan, the ballot deadline for the Plan, and the date and time of the Confirmation Hearing.

I.    On March 30, 2026, the Debtors filed the *Notice of Filing of First Plan Supplement to the Second Amended Joint Plan of Reorganization for Jackson Hospital & Clinic, Inc., and JHC Pharmacy, LLC. See* (Doc. No. 1579).

J.    On April 2, 2026, the Debtors filed the *Notice of Filing of Second Plan Supplement to the Second Amended Joint Plan of Reorganization for Jackson Hospital & Clinic, Inc., and JHC Pharmacy, LLC. See* (Doc. No. 1588).

3

K.  On April 8, 2026, the Debtors filed the *Notice of Filing of Third Plan Supplement to the Second Amended Joint Plan of Reorganization for Jackson Hospital & Clinic, Inc., and JHC Pharmacy, LLC. See* (Doc. No. 1605).

L.  On April 14, 2026, the Debtors filed the *Notice of Filing Voting Declaration* (the "Voting Declaration"), certifying the results of the ballot tabulation for the Classes of Claims voting to accept or reject the Plan. *See* (Doc. No. 1617).

M.  The following objections to the Plan were filed:

a.  *Limited Objection to Confirmation of Second Amended Joint Plan of Reorganization for Jackson Hospital & Clinic, Inc., and JHC Pharmacy, LLC* filed by UnitedHealthcare Insurance Company, United HealthCare of Alabama, Inc., Change Healthcare Technologies, LLC, Change Healthcare Solutions, LLC, and Database Solutions II, LLC and dated April 14, 2026. *See* (Doc. No. 1621).

b.  *Limited Objection to Notice of Second Plan Supplement to the Second Amended Joint Plan of Reorganization for Jackson Hospital & Clinic, Inc., and JHC Pharmacy, LLC* filed by Blue Cross Blue Shield of Alabama and dated April 14, 2026. *See* (Doc. No. 1622).

c.  *Objection of Intuitive Surgical, Inc. to Confirmation of Debtors' Second Amended Plan of Reorganization* filed by Intuitive Surgical, Inc. and dated April 15, 2026. *See* (Doc. No. 1623).

d.  *Limited Objection to Confirmation of Debtors' Joint Second Amended Plan of Reorganization* filed by LifeSouth Community Blood Centers, Inc. and dated April 15, 2026. *See* (Doc. No. 1624).

e.  *Objection to Plan Confirmation* filed by Premier Imaging Medical Systems, LLC and dated April 15, 2026. *See* (Doc. No. 1625).

f.  *Limited Objection of Granite Telecommunications, LLC, to Confirmation of Debtors' Second Amended Plan of Reorganization and Reservation of Rights* filed by Granite Telecommunications, LLC and dated April 15, 2026. *See* (Doc. No. 1627).

g.  *Limited Objection and Reservation of Rights of Cardinal Health to Cure Amounts Set Forth in Cure Notice* filed by Cardinal Health 110, LLC, Cardinal Health 112, LLC, and Cardinal Health 200, LLC and dated April 15, 2026. *See* (Doc. No. 1630).

h.  *Amended Objection of Valarie Papaconstantinou-Bauer, M.D. to Confirmation of Debtors' Second Amended Joint Plan of Reorganization* filed by Valerie Papaconstantinou Bauer, M.D. and dated April 15, 2026. *See* (Doc. No. 1631).

i.  *Limited Objection to Confirmation of Debtors' Second Amended Plan of Reorganization* filed by Progressive Perfusion, Inc. and dated April 15, 2026. *See* (Doc. No. 1633).

4

67317610 v1

N.      Pursuant to section 1128(a) of the Bankruptcy Code, the Court held the Confirmation Hearing on April 21, 2026 to consider confirmation of the Plan.

**NOW, THEREFORE**, based upon the Court's review of, among other things, the Plan, the Disclosure Statement, the Disclosure Statement Order, the Voting Declaration, all of the evidence proffered or adduced at, the objections filed in connection with, and the arguments of counsel made at, the Confirmation Hearing; and upon the record of the Confirmation Hearing and all prior proceedings in these Chapter 11 Cases; and after due deliberation thereon; and good cause appearing therefor:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW[3]

**IT IS HEREBY FOUND, DETERMINED, AND CONCLUDED** that

1.      <u>Findings of Fact and Conclusions of Law</u>

The findings of fact and conclusions of law set forth in this Confirmation Order and on the record at the Confirmation Hearing constitute the Bankruptcy Court's findings of fact and conclusions of law under Rule 52 of the Federal Rule of Civil Procedures, as made applicable herein by Bankruptcy Rules 7052 and 9014. All findings of fact and conclusions of law announced by the Bankruptcy Court at the Confirmation Hearing in relation to Confirmation are hereby incorporated into this Confirmation Order to the extent not inconsistent herewith. To the extent any of the following conclusions of law constitute findings of fact, or vice versa, they are adopted as such.

2.      <u>Exclusive Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2) and 1334(a))</u>

---

[3] All of this Court's findings of fact and conclusions of law in this Order are based upon the particularized, specific, unique and unusual nature of the proceedings in these Chapter 11 Cases including, but not limited to, the participation and involvement (or lack thereof) of the various creditors and parties in interest.

67317610 v1

This Court has jurisdiction over these Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2), and this Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

3.    Commencement and Joint Administration of the Chapter 11 Cases

On the Petition Date, the Debtors filed voluntary petitions with this Bankruptcy Court for relief under Chapter 11 of the Bankruptcy Code. On February 5, 2025, this Court entered an order (Doc. No. 49) authorizing the joint administration and procedural consolidation of the Chapter 11 Cases in accordance with Bankruptcy Rule 1015(b). Since the Petition Date, the Debtors have operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in the Chapter 11 Cases.

4.    Judicial Notice

This Court takes judicial notice of the docket of the Debtors' Chapter 11 Cases maintained by the Clerk of the Court and/or its duly-appointed agent, including, without limitation, all pleadings and other documents filed, all orders entered, and evidence and argument made, proffered or adduced at, the hearings held before the Court during the pendency of the Chapter 11 Cases, including, but not limited to, the Confirmation Hearing.

5.    Outline of Plan

The Plan provides for the reorganization of the Debtors' Estates and the orderly payment of Allowed Claims. The Debtors will pay in full all Allowed Administrative and Priority Tax

6

67317610 v1

Claims on the Effective Date, or as soon thereafter as possible, unless otherwise agreed to by the Holder of any such claim, or as otherwise set forth in the Plan.

The Debtors will receive certain grants and commitments from the State of Alabama, Montgomery County, and the City of Montgomery, in the approximate aggregate amount of $80,000,000.00, to fund hospital operations, make capital expenditures, improve hospital infrastructure, and to satisfy certain claims incurred on or after November 1, 2025. The DIP Lender will also provide an exit lending facility in the amount of $75,000,000.00, which will be used to assume $25,000,000.00 of the secured claim of the DIP Lender and all amounts advanced by JIG to the Medical Clinic Board during the Chapter 11 Cases, fund the Exit Funding Amount, and up to $50,000,000.00 for infrastructure and deferred maintenance needs of the Reorganized Debtors following exhaustion of the Grants, and as necessary fund certain Plan obligations including the cash payment in the amount of $2,500,000.00 to the Prepetition Secured Parties pursuant to the treatment of Class 3 Claims.

The Prepetition Secured Parties will receive a lump sum cash payment of $2,500,000.00 and unsecured promissory notes in the aggregate amount of $17,500,000.00. Holders of Unsecured Claims will receive distributions of the proceeds of certain litigation claims, which will be held in a litigation trust administered by a trustee for the benefit of the holders of such claims.

The Plan contemplates entry of an order substantively consolidating Debtor JHC and the Medical Clinic Board. The compromises contained in the Plan are premised upon substantive consolidation between Debtor JHC, on the one hand, and the Medical Clinic Board, on the other, to the extent provided in the Plan, meaning that the assets and liabilities of JHC and the Medical Clinic Board will be substantively consolidated for all purposes related to the Plan, including, without limitation, confirmation and distribution of the Plan.

7

The Debtors' existing management structure will be revised on the Effective Date so that Jackson Hospital Services, Inc., a 501(c)(3) non-profit entity ("JHS"), will become the sole member of JHC. JHS will also manage the Reorganized Debtors.

6.        Transmittal And Mailing of Materials; Notice

As described in the Voting Declaration, the Plan, the Disclosure Statement and all related exhibits, the applicable ballots, the Disclosure Statement Order, the Confirmation Hearing Notice and all deadlines, and all other related documents were transmitted and served upon all interested parties in compliance with the Bankruptcy Code, including sections 1125 and 1126 thereof, the Bankruptcy Rules, including Bankruptcy Rules 3017, 3018, and 3019, and the Disclosure Statement Order, and no further notice is required. This Court shortened any applicable deadlines in the Bankruptcy Rules in its discretion, for good cause shown, pursuant to Bankruptcy Rule 9006(c)(1). Under the circumstances and including any extensions heretofore provided in connection therewith, the period during which the Debtors solicited acceptances or rejections to the Plan was a reasonable and sufficient period of time for Holders of Claims and Interests to make an informed decision to accept or reject the Plan, and solicitation complied with section 1126(b) of the Bankruptcy Code. Given the foregoing, all parties required to be given notice of the Combined Hearing (including the deadline for filing and serving objections to confirmation of the Plan and/or final approval of the Disclosure Statement) have been given due, proper, timely, and adequate notice of, and had a full and fair opportunity to be heard in connection with, final approval of the Disclosure Statement and confirmation of the Plan, in accordance with the Disclosure Statement Order and in compliance with the Bankruptcy Code, the Bankruptcy Rules, and applicable non-bankruptcy law and such parties have had an opportunity to appear and be heard with respect thereto. No other or further notice is required.

67317610 v1

7.      Exemption from Securities Laws

Pursuant to section 1145 of the Bankruptcy Code and applicable non-bankruptcy law, the offering, issuance, distribution, and sale of the Class 3 Senior Notes and the Class 3 Junior Notes (a) shall be exempt from, among other things, the registration requirements of section 5 of the Securities Act and any other applicable U.S. state or local law requiring registration for the offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security, (b)(i) are not "restricted securities" as defined in Rule 144(a)(3) under the Securities Act, and (ii) are freely tradable and transferable by any initial recipient thereof that (w) is not an "affiliate" of the Reorganized Debtors as defined in Rule 144(a)(1) under the Securities Act, (x) has not been such an "affiliate" within ninety (90) calendar days of such transfer, (y) has not acquired the Class 3 Senior Notes and the Class 3 Junior Notes from an "affiliate" of the Reorganized Debtors within one year of such transfer, and (z) is not an entity that is an "underwriter" as defined in subsection (b) of Section 1145 of the Bankruptcy Code, and (c) will be freely tradable by the recipients thereof, subject to (i) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, (ii) compliance with applicable securities laws and any rules and regulations of the SEC, if any, applicable at the time of any future transfer of such securities or instruments, and (iii) the restrictions in the Reorganized Debtors' organizational documents.

8.      Receipt and Tabulation of Votes

Prior to the Confirmation Hearing, the Debtors filed the Voting Declaration. As set forth in the Voting Declaration, the procedures used to solicit votes on the Plan and to tabulate the ballots were fair and conducted in accordance with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, and all other applicable rules, laws, and regulations. The tabulation of

9

ballots in the Voting Declaration was proper and appropriate. As described in the Voting Declaration, the Plan was accepted by all of the Impaired Classes entitled to vote.

9.      Burden of Proof

The Debtors, as proponents of the Plan, have met their burden of proving the applicable elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence which is the applicable evidentiary standard for Confirmation. Further, the Debtors have proven the elements of section 1129(a) and (b) of the Bankruptcy Code by clear and convincing evidence.

10.      Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1))

The Plan complies with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

a.      Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1))

In addition to Administrative Claims which need not be designated, the Plan designates seven Classes of Claims and Interests. The Claims and/or Interests placed in each Class are substantially similar to other Claims or Interests, as the case may be, in each such Class, and such classification is therefore consistent with section 1122 of the Bankruptcy Code. Valid business, factual, and legal reasons exist for the various Classes of Claims and Interests created under the Plan, and such Classes do not unfairly discriminate between or among Holders of Claims and Interests. Specifically, valid business, factual, and legal reasons exist for the separate classification of Claims in Classes 1, 2, 3, 4, 5, and 6 and for the separate classification of Interests of JP in Class 7. The Plan thus satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

b.      Specification of Unimpaired Classes (11 U.S.C. §1123(a)(2))

The Plan specifies that Class 1 (Allowed Other Priority Claims), Class 4 (Allowed Secured Claims of Regions Bank), Class 5 (Allowed Other Secured Claims), and Class 7 (Interests in JP)

10

67317610 v1

are unimpaired within the meaning of section 1124 of the Bankruptcy Code, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

> c. Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))

The Plan specifies that Class 2 (Allowed Secured Claim of the DIP Lender), Class 3 (Allowed Secured Claims of the Prepetition Secured Parties), and Class 6 (Allowed General Unsecured Claims) are impaired within the meaning of section 1124 of the Bankruptcy Code and specifies the treatment of the Claims and Interests in those Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

> d. No Discrimination (11 U.S.C. § 1123(a)(4))

The Plan provides for the same treatment for each Claim or Interest in each respective Class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

> e. Implementation of the Plan (11 U.S.C. § 1123(a)(5))

The Plan provides adequate and proper means for implementation of the Plan, thereby satisfying section 1123(a)(5) of the Bankruptcy Code. Among other things, the Plan includes provisions relating to: (i) distributions to Holders of Allowed Claims; (ii) the establishment of the GUC Trust; (iii) the appointment of the GUC Trustee; (iv) liquidation of the GUC Trust Assets; (v) substantive consolidation with the Medical Clinic Board; (vi) exculpation, injunction and release provisions; and (vii) the List of Executory Contracts to be Assumed. The Plan also sets forth means for the implementation of the Plan. Articles VII and VIII include provisions regarding distributions under the Plan including procedures for resolving disputed, contingent, and unliquidated Claims; and Article XII provides for, among other things, the retention of jurisdiction by the Court over certain matters. The Plan also provides for Allowed amounts of Administrative

67317610 v1

Claims to be paid on the later of the Effective Date, or upon thirty (30) days after the entry of a Final Order allowing the Administrative Claim.

### f. Nonvoting Equity Securities (11 U.S.C. § 1123(a)(6))

No equity securities are being issued pursuant to the Plan. As of the Effective Date, the Debtors' organizational documents shall be deemed to be amended to prohibit the issuance of non-voting equity securities, thereby satisfying section 1123(a)(6) of the Bankruptcy Code.

### g. Selection of Officers and Directors (11 U.S.C. § 1123(a)(7))

As of the Effective Date, the current members of the board of directors of the Debtors shall resign, and JHS shall be appointed the sole member of reorganized JHC. JHS may appoint such officers as it may from time to time deem appropriate. As set forth in Exhibit A-4 of the Plan Supplement, Charles Evans, Gary Murphey, and Terry Gunn will be appointed members of the new board of directors of Debtor JHC. In the event that Mr. Evans, Mr. Murphey, or Mr. Gunn are otherwise unable to serve in such capacity, the Debtors shall file a notice on the docket designating their replacement. Furthermore, the provisions of the Plan regarding the manner and selection of the GUC Trustee are consistent with the interests of Creditors and Interest Holders and with public policy. Specifically, Section 4.6.2 of the Plan provides that the GUC Trustee will have all the rights and powers provided under the Plan. Accordingly, section 1123(a)(7) of the Bankruptcy Code is satisfied.

### h. Impairment of Classes (11 U.S.C. § 1123(b)(1))

In accordance with section 1123(b)(1) of the Bankruptcy Code, Article III of the Plan impairs and leaves unimpaired, as the case may be, each Class of Claims and Interests under the Plan.

### i. Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2))

12

In accordance with section 1123(b)(2) of the Bankruptcy Code, Article IX of the Plan provides that, as of the Effective Date, the Debtors will be deemed to have assumed all Executory Contracts set forth in the List of Executory Contracts to be Assumed contained in the Plan Supplement, including any amendments thereto. The Debtors or the Reorganized Debtors, as applicable, reserve the right to alter, amend, modify, or supplement the List of Executory Contracts to be Assumed at any time through and including ninety (90) days after the Effective Date, as such deadline may be extended from time to time by order of the Bankruptcy Court upon the filing by the Debtors of a motion seeking such extension and service of such motion upon the affected executory contract counterparties. The Debtors' decision regarding the assumption or rejection of the executory contracts is based on, and is within, the sound business judgment of the Debtors, and is in the best interests of the Debtors, their Estates, and Creditors.

With respect to each Assumed Executory Contract, any monetary amounts required as Cure Payments shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the cure amount in Cash as soon as practicable after, and in no event later than thirty (30) days after, the latest of (a) the resolution by Final Order of any dispute between the applicable Reorganized Debtor and the other party to the Assumed Executory Contract as to such amounts due; (b) when such executory contract becomes an Assumed Executory Contract as evidenced by the Debtors filing a notice of assumption and serving such notice on the applicable executory contract counterparty; or (c) upon such other terms as the parties to such Assumed Executory Contract may agree. In the event of a dispute regarding the amount of any Cure Payment, such Cure Payment will be made or satisfied following the entry of a Final Order resolving such dispute. If there is any such dispute, the Debtors may elect within thirty (30) days of the entry of such Final

Order, to not assume the Executory Contract at issue, and instead, will be deemed to reject the Executory Contract.

        j.   Retention, Enforcement, and Settlement of Claims Held by the Debtors (11 U.S.C. § 1123(b)(3))

Pursuant to section 1123(b)(3) of the Bankruptcy Code, Section 5.7 of the Plan provides that, except as otherwise released through the Plan or provided in the Plan or this Order, the Reorganized Debtors will retain and hold any or all Causes of Action that the Debtors or their Estates may possess. Additionally, the GUC Trustee may pursue such GUC Trust Causes of Action as appropriate, in accordance with the best interests of the Creditors.

        k.   Other Provisions Not Inconsistent with Title 11 (11 U.S.C. § 1123(b)(6))

In accordance with section 1123(b)(6) of the Bankruptcy Code, the Plan includes additional appropriate provisions such as those related to the implementation of the Plan and provisions for making distributions pursuant to the Plan that are not inconsistent with the applicable provisions of the Bankruptcy Code.

      11.   Identification of Plan Proponent (FED. R. BANKR. P. 3016(a))

As required by Bankruptcy Rule 3016(a), the Plan is dated and identifies the Plan Proponent as the Debtors.

      12.   Compliance With Bankruptcy Code (11 U.S.C. § 1129(a)(2))

The Debtors complied with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(2) of the Bankruptcy Code. Specifically:

        a.   On February 3, 2025, the Debtors, each filed chapter 11 petitions pursuant to section 301 of the Bankruptcy Code in the United States Bankruptcy Court for the Middle District of Alabama. The Debtors are proper debtors pursuant to section 109 of the Bankruptcy Code.

14

b.  The Debtors are proper proponents of the Plan pursuant to section 1121(a) of the Bankruptcy Code.

c.  The Debtors complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, any applicable nonbankruptcy law, rule, and regulation, the Disclosure Statement Order, and all other applicable law, in transmitting the solicitation packages and related documents and notices, and in soliciting and tabulating votes on the Plan.

d.  The Debtors, as well as their agent and professionals, as applicable, have acted in compliance with all applicable provisions of the Bankruptcy Code and in "good faith," within the meaning of section 1125(e) of the Bankruptcy Code.

e.  The Debtors have acted in accordance with all orders of the Court entered during these Chapter 11 Cases.

13.    Plan Proposed in Good Faith (11 U.S.C. 1129(a)(3))

The Debtors have proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code. The Debtors' good faith is evident from the facts and record of the Chapter 11 Cases, the Disclosure Statement, the Plan, and the record of the Confirmation Hearing and other proceedings held in these Chapter 11 Cases. The Court has examined the totality of the circumstances surrounding the formulation of the Plan. Based on the evidence proffered or adduced at or prior to the Confirmation Hearing, the Court finds and concludes that the Plan has been proposed with the legitimate and honest purpose of reorganizing around the Debtors' healthcare service operations, resolving various disputes to which the Debtors are a party, and for maximizing the distribution of the Debtors' Assets to the Holders of Allowed Claims. Further, the Plan itself and the arms' length negotiations among the

15

Debtors, the DIP Lender, the MTI Secured Parties and Bridge Debt Secured Parties, and the Creditors' Committee, and their respective legal and financial advisors, leading to the agreements underlying the Plan, as well as other documents leading to the Plan's formulation, as well as the overwhelming support of Creditors entitled to vote for the Plan, provide independent evidence of the Debtors' good faith in proposing the Plan. Further, the Plan's classification, indemnification, release, exculpation, and injunction provisions have been negotiated in good faith and at arm's length, are consistent with sections 105, 1122, 1123(b)(3)(A), 1123(b)(6), 1125(e), 1129, and 1142 of the Bankruptcy Code, and are each necessary for the Debtors' successful reorganization. In light of the totality of the circumstances surrounding the Plan, and the entire record of these Chapter 11 Cases relating to the process leading to the Plan's formation, the Debtors have proposed the Plan in good faith.

The Plan incorporates a settlement pursuant to Bankruptcy Rule 9019 between the Debtors and the MTI Secured Parties and Bridge Debt Secured Parties, and an intercreditor settlement as to the relative distributions of Class 3 Distributable Assets among the various MTI Secured Parties and the Bridge Debt Secured Parties. UMB Bank, N.A., as Master Trustee and Bridge Noteholder Representative, acted diligently and in good faith discharged its duties and obligations under the documents and otherwise conducted itself with the same degree of care and skill that a prudent person would exercise under the circumstances with respect to all matters in any way related to the Master Indenture and the Bridge Note Documents, and all related transactions and documents.

14.     <u>Payments For Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))</u>

Any payment made or to be made by the Debtors, or by a person acquiring property under the Plan, for services or for costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been approved by, or is

67317610 v1

subject to the approval of, the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code. For example, all fees and expenses incurred by Professionals appointed in the Chapter 11 Cases will be subject to the Court's approval following the filing of final fee applications under section 330 of the Bankruptcy Code.

15.     Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5))

The Debtors have complied with section 1129(a)(5) of the Bankruptcy Code. As set forth in the Plan, as of the Effective Date, the current members of the board of directors of the Debtors shall resign, and JHS shall be appointed the sole member of reorganized JHC. JHS may appoint such officers as it may from time to time deem appropriate. As set forth in Exhibit A-4 of the Plan Supplement, Charles Evans, Gary Murphey, and Terry Gunn will be appointed members of the new board of directors of Debtor JHC. In the event that Mr. Evans, Mr. Murphey, or Mr. Gunn are otherwise unable to serve in such capacity, the Debtors shall file a notice on the docket designating their replacement.

16.     No Rate Changes (11 U.S.C. § 1129(a)(6))

The Debtors have not been involved in the establishment of rates over which any United States regulatory commission has jurisdiction or will have jurisdiction after the Confirmation Date. Section 1129(a)(6) of the Bankruptcy Code thus is not applicable to these Chapter 11 Cases.

17.     Best Interests of Creditors Test (11 U.S.C. § 1129(a)(7))

The Plan satisfies section 1129(a)(7) of the Bankruptcy Code. Specifically, the Liquidation Analysis annexed to the Disclosure Statement, together with all other evidence related thereto that was proffered or adduced at or prior to the Confirmation Hearing, has not been controverted by any other evidence. The Liquidation Analysis, as supplemented by the evidence proffered or adduced at or prior to, or in affidavits filed in connection with, the Confirmation Hearing (i) is

reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was prepared, presented, or proffered, (ii) utilizes reasonable and appropriate methodologies and assumptions, and (iii) establishes that each Holder of a Claim or Interest in each Impaired Class either has accepted the Plan or will receive or retain under the Plan on account of such Claim or Interest property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date. No Class has made an election under section 1111(b)(2) of the Bankruptcy Code.

18.    Acceptance By Certain Classes (11 U.S.C. § 1129(a)(8))

Classes 1, 4, 5, and 7 are each Classes of Unimpaired Claims within the meaning of section 1124 of the Bankruptcy Code that are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. Each of Classes 2, 3, and 6 is a Class of Claims that have voted to accept the Plan in accordance with the Plan and sections 1126(c) and (d) of the Bankruptcy Code excluding the votes of any insiders. Accordingly, the Plan satisfies section 1129(a)(8) of the Bankruptcy Code.

19.    Treatment of Administrative and Priority Claims (11 U.S.C. § 1129(a)(9))

The treatment of Administrative Claims and Priority Tax Claims under Article II of the Plan satisfies the requirements of section 1129(a)(9)(A) of the Bankruptcy Code. Class 1 consists of Allowed Other Priority Claims. The treatment of Class 1 meets the requirements of section 1129(a)(9)(A) of the Bankruptcy Code. Therefore, the Plan satisfies the requirements of section 1129(a) of the Bankruptcy Code.

20.    Acceptance By Impaired Classes (11 U.S.C. § 1129(a)(10))

18

67317610 v1

As set forth in the Voting Declaration and as reflected in the record of the Confirmation Hearing, at least one Class of Claims and/or Interests that is impaired under the Plan has accepted the Plan, determined without including any acceptance of the Plan by any Insider of any Debtors holding a Claim and/or Interest in such Class, thereby satisfying section 1129(a)(10) of the Bankruptcy Code.

21.    Feasibility (11 U.S.C. § 1129(a)(11))

Based upon the evidence proffered or adduced at or prior to the Confirmation Hearing, the Debtors have established by a preponderance of the evidence that confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtors except as provided in the Plan. JHC shall obtain the Grants and the Exit Lender will provide the Exit Facility, which, in conjunction with the occurrence of the conditions precedent to the Effective Date set forth in Section 10.2, will be sufficient to satisfy the Debtors' obligations under the Plan, thereby satisfying section 1129(a)(11) of the Bankruptcy Code. The GUC Trustee will have funding and the ability to prosecute and potentially monetize GUC Trust Causes of Action for the benefit of GUC Trust beneficiaries.

22.    Payment of Fees (11 U.S.C. § 1129(a)(12))

All fees payable under 28 U.S.C. § 1930 have been paid or will be paid as Administrative Claims when due, thereby satisfying section 1129(a)(12) of the Bankruptcy Code.

23.    Non-Applicability of Certain Bankruptcy Code Sections (11 U.S.C. §§ 1129(a)(13), (14), (15), and (16))

Sections 1129(a)(13), 1129(a)(14), and 1129(a)(15) of the Bankruptcy Code are inapplicable to the Debtors in these Chapter 11 Cases.

24.    Transfer of Property (11 U.S.C. § 1129(a)(16))

67317610 v1

There is no applicable non-bankruptcy law that governs the transfer of the GUC Trust Assets to the GUC Trust and, therefore, section 1129(a)(16) is satisfied.

25.     Principal Purpose of Plan (11 U.S.C. § 1129(d))

The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933 (15 U.S.C. § 77e), and no governmental unit has filed any objection asserting such avoidance.

26.     Good Faith Solicitation (11 U.S.C. 1125(e))

As described in the Voting Declaration, solicitation of votes on the Plan complied with the solicitation procedures set forth in the Disclosure Statement Order, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, was conducted in good faith, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and any other applicable rules, laws, and regulations. Accordingly, the Plan was solicited in good faith and in compliance with applicable provisions of the Bankruptcy Code, including sections 1125 and 1126, and the Bankruptcy Rules. Specifically, the Debtors, the Released Parties, the Exculpated Parties, and each of their respective advisors, attorneys, representatives, financial advisors, or agents, as well as their successors and assigns, have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and the Local Rules in connection with all of their respective activities relating to support of the Plan and this Confirmation Order, including the solicitation of acceptances of the Plan, their participation in the Chapter 11 Cases, and the activities described in section 1125 of the Bankruptcy Code, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Section 6.2 of the Plan.

67317610 v1

27.    Plan Supplement

The Plan Supplement complies with the Bankruptcy Code and the terms of the Plan, and the filing and notice of the documents included therein are good and proper in accordance with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice is required. The documents included in the Plan Supplement are an integral part of this Confirmation Order and are incorporated herein by reference. Subject to the terms of the Plan (including, for the avoidance of doubt, any consent rights set forth or incorporated therein), and only consistent therewith, the Debtors' right to alter, amend, update, or modify, in each case in whole or in part, the Plan Supplement before the Effective Date is hereby reserved. To the extent that any modifications to the Plan Supplement made to date are determined to be modifications to the Plan, in accordance with Bankruptcy Rule 3019, any such modifications do not (i) constitute material modifications of the Plan under section 1127 of the Bankruptcy Code, (ii) require additional disclosure under section 1125 of the Bankruptcy Code, (iii) cause the Plan to fail to meet the requirements of sections 1122 and 1123 of the Bankruptcy Code, (iv) materially and adversely change the treatment of any Claims or Interests, (v) require re-solicitation of any Holders of Claims or Interests, or (vi) require that any such Holders be afforded an opportunity to change previously cast acceptances or rejections of the Plan.

28.    Executory Contracts and Unexpired Leases

The Debtors provided sufficient notice to each non-Debtor counterparty to an executory contract or unexpired lease assumed, assumed and assigned, or rejected by the Debtors during the Chapter 11 Cases. Each assumption, assumption and assignment, and rejection of an executory contract or unexpired lease pursuant to Article IX of the Plan shall be legal, valid, and binding to the same extent as if such assumption, assumption and assignment, or rejection, as applicable, had

21

been effectuated pursuant to an order of the Court under section 365 of the Bankruptcy Code entered before entry of this Confirmation Order. Moreover, the Debtors have cured, or provided adequate assurance that the Debtors or Reorganized Debtors will cure, defaults (if any) under or relating to each of the executory contracts and unexpired leases that are being assumed by the Reorganized Debtors pursuant to the Plan. Furthermore, the Debtors have provided adequate assurance of future performance under each of the executory contracts and unexpired leases that are being assumed by the Reorganized Debtors pursuant to the Plan. The Debtors' rejection of any executory contracts and unexpired leases that have not been assumed and assigned is in the best interests of the Debtors' Estates and is hereby approved. Moreover, the Debtors' assumption of any executory contracts identified in the Plan Supplement is approved.

29.    Transfers of Property

The transfer on the Effective Date of the GUC Trust Assets (a) is a legal, valid, and effective transfer of property, (b) with good title to such property free and clear of all Claims and Interests, except as expressly provided in the Plan or this Order, (c) does not constitute an avoidable transfer under the Bankruptcy Code or under applicable non-bankruptcy law, and (d) does not and shall not subject the Debtors or GUC Trustee to any liability by reason of such transfer under the Bankruptcy Code or under applicable non-bankruptcy law. The transfers of property to Holders of Claims and Interests under the Plan are for good consideration and value.

30.    Substantive Consolidation

Section 5.2 of the Plan provides for the substantive consolidation of the assets and liabilities of the Consolidated Entities consolidated for all purposes related to the Plan, including, without limitation, for purposes of confirmation and distribution to creditors. Based on, among other things, the record made at the Confirmation Hearing, (i) no class of creditors or interest holders is

22

disadvantaged by the substantive consolidation of the Consolidated Entities and (ii) such substantive consolidation of the Consolidated Entities is justified, appropriate, and in the best interests of the Debtors, their Estates, creditors, and all other parties-in-interest.

31.     Tax Status of Trusts

The GUC Trust is intended to qualify as a "liquidating trust" within the meaning of Treasury Regulation Section 301.7701-4(d) and as described in the Internal Revenue Service Revenue Procedure 94-45, 1994-2 C.B. 684, and, thus, as a "grantor trust" within the meaning of sections 671 through 679 of the U.S. Internal Revenue Code of 1986, as amended, of which the respective beneficiaries of the GUC Trust are the grantors and the deemed owners of the underlying assets.

32.     Findings Related to Releases

The Court makes the following findings related to the parties' releases pursuant to the Plan including but not limited to Article VI of the Plan:

a.  The persons or entities providing the releases in the Plan have either consented to providing the releases or the Court has determined that the persons providing the releases hold no Claims or Causes of Action against the persons or entities being released.

b.  The persons or entities being released pursuant to the Plan have provided adequate consideration for the releases provided to them under the Plan, and the granting of such releases is in the best interests of the Debtors, the Estate, the Creditors, and all parties-in-interest.

67317610 v1

c. That the consideration provided by the persons or entities being released pursuant to the Plan supports not only the releases but also the releases of all persons or entities being released pursuant to the Plan.

d. That the releases were extensively negotiated. The releases incorporated into the Plan are integral to the structure of the Plan and formed part of the agreement among all parties in interest embodied thereby.

e. That the Impaired Classes of Claims have overwhelmingly voted to accept the Plan, including the releases contained therein.

f. That based upon this Court's findings, the provisions contained within Section 6.3 of the Plan and all of the releases contained in the Plan are valid and appropriate.

33.    <u>Satisfaction of Confirmation Requirements</u>

Based upon the foregoing, all other pleadings, documents, exhibits, statements, declarations, and affidavits filed in connection with Confirmation of the Plan, and all evidence and arguments made, proffered, or adduced at the Confirmation Hearing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code and Section 10.1 of the Plan.

34.    <u>Likelihood of Satisfaction of Conditions Precedent to the Effective Date</u>

The conditions precedent to the Effective Date, as set forth in Section 10.2 of the Plan, have been or is reasonably likely to be satisfied or waived in accordance with Section 10.3 of the Plan.

35.    <u>Disclosure of Facts</u>

24

The Debtors have disclosed all material facts regarding the Plan, the Plan Supplement, and the adoption, execution, and implementation of the other matters provided for under the Plan involving corporate action to be taken by or required of the Debtors.

36.    Best Interests

Confirmation of the Plan is in the best interest of the Debtors, their Estates, Holders of Claims and Interests, and all other parties-in-interest.

## DECREES

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT,**

37.    Confirmation

The Plan, a copy of which is annexed hereto as **Exhibit A**, is hereby confirmed under section 1129 of the Bankruptcy Code, and all parties-in-interest are authorized and empowered, or enjoined, as the case may be, to act in accordance with its terms. All acceptances previously cast for the Plan are hereby deemed to constitute acceptances of the Plan as modified hereby. The documents contained in the Plan Supplement are hereby authorized and approved. The terms of the Plan, the Disclosure Statement, and the exhibits thereto are incorporated by reference into and are an integral part of the Plan and this Order. The Debtors, UMB Bank, N.A., the DIP Lender, the Exit Lender, and the GUC Trustee are each authorized to enter into and execute all documents and agreements related to the Plan (including all exhibits and attachments thereto and documents referred to therein and herein), and the performance thereafter by the Debtors, the Reorganized Debtors, and the GUC Trustee are hereby authorized and approved.

The settlement pursuant to Bankruptcy Rule 9019 incorporated into the Plan between the Debtors and the MTI Secured Parties and Bridge Debt Secured Parties, and an intercreditor settlement as to the relative distributions of Class 3 Distributable Assets among the various MTI Secured Parties and the Bridge Debt Secured Parties, are hereby authorized and approved.

25

67317610 v1

Pursuant to Section 4.3 of the Plan, following entry of this Confirmation Order, holders of Allowed Class 3 Claims shall have sixty (60) days from mailing to provide the Debtors' Voting Agent, Omni Agent Solutions, for further distribution to UMB Bank, N.A. as the Class 3 Note Agent, with the necessary forms and documentation to permit the distributions provided for in the Plan and authorized herein. Omni Agent Solutions shall mail to the holders of the Allowed Class 3 Claims all necessary forms following entry of this Confirmation Order and prior to the Effective Date. Submission of the required forms is necessary for the beneficial holder of a Class 3(c) Claim to be deemed an Eligible Bondholder. Failure to submit the required forms timely shall forever bar such holder from receiving any recovery under the Plan. Holders of Allowed Class 3 Claims may designate all or part of their distributions be delivered to a designee by making such request on the forms it returns to the Debtors' Voting Agent. Omni Agent Solutions, as the Debtors' Voting Agent, is hereby authorized and directed to distribute the necessary forms and documentation to holders of Allowed Class 3 Claims and Omni is authorized to correspond with holders of Allowed Class 3 Claims to address deficiencies in forms submitted by such Holders as identified by the Debtors' Voting Agent or the Class 3 Note Agent. The Class 3 Notes shall be issued in book entry form on a ledger maintained by the Class 3 Note Agent based upon information provided by the Debtors' Voting Agent. Upon the deadline for submission of forms pursuant to this paragraph, the Debtors are hereby directed to cooperate with the Class 3 Note Agent in re-allocating the distribution of Class 3 Notes based upon the Eligible Holders as of the post-Effective Date response deadline. For the avoidance of doubt, Omni Agent Solutions, as the Debtors' Voting Agent, and the Class 3 Note Agent shall be exculpated pursuant under Section 6.2 of the Plan for all actions taken (or not taken) in furtherance of the subject matter of this paragraph.

38.    <u>Objections</u>

67317610 v1

All parties have had a full and fair opportunity to litigate all issues raised, or which might have been raised, in connection with the Confirmation Hearing. All formal or informal objections to Confirmation of the Plan that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are overruled on the merits. To the extent, if any, that pleadings or letters filed by individuals or entities constitute objections to Confirmation of the Plan and have not been withdrawn, waived, or settled, they are overruled on the merits.

39.    Provisions of Plan and Confirmation Order Non-Severable and Mutually Dependent

The provisions of the Plan and this Order, including the findings of fact and conclusions of law set forth herein, are (a) non-severable and mutually dependent; (b) valid and enforceable pursuant to their terms; and (c) integral to the Plan and this Confirmation Order, respectively, and may not be deleted or modified except in accordance with Section 13.4 of the Plan.

40.    Good Faith Solicitation

The Debtors and each of their respective advisors, attorneys, representatives, financial advisors, or agents, as well as their successors and assigns, through their participation in the negotiation and preparation of the Plan and the Disclosure Statement and their efforts to confirm the Plan, have solicited acceptances and rejections of the Plan in good faith and participated in these Chapter 11 Cases in compliance with the applicable provisions of the Bankruptcy Code and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Section 6.2 of the Plan.

41.    Plan Classification Controlling

The classification of Claims and Interests for purposes of the distributions to be made pursuant to the Plan is governed solely by the terms of the Plan. The classifications set forth on the Ballots tendered to or returned by Holders of Claims or Interests of the Debtors in connection

27

with voting on the Plan (a) were set forth thereon solely for purposes of voting on the acceptance or rejection of the Plan and tabulation of such votes, (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims and Interests under the terms of the Plan for distribution purposes, (c) may not be relied upon by any Holder of a Claim or Interest as actually representing the actual classification of such Claims and Interests under the terms of the Plan for distribution purposes, and (d) shall not be binding on the Debtors, the Reorganized Debtors, or the GUC Trust except for voting purposes.

42.    No Action Required; Corporate Action

On or before the Effective Date, as applicable, all actions contemplated under the Plan shall be deemed authorized and approved in all respects, including (1) the Reorganized Debtors' entry into and performance under the Exit Facility, the Class 3 Note Issuance Agreement, the Class 3 Senior Notes, and the Class 3 Junior Notes; (2) vesting of assets into the Reorganized Debtors and the GUC Trust; (3) the rejection or assumption, as applicable, of Executory Contracts; (4) execution and entry into the GUC Trust Agreement; and (5) substantive consolidation of Debtor JHC with the Medical Clinic Board, and all other acts or actions contemplated or reasonably necessary or appropriate to promptly consummate the transactions included therein. All matters provided for in the Plan involving the corporate structure of the Debtors or the Reorganized Debtors, and any corporate action required by the Debtors or the Reorganized Debtor, as applicable, in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors, members, or officers of the Debtors or the Reorganized Debtors, as applicable. On the Effective Date, the chief executive officer, chief financial officer, or any other appropriate officer of the Debtors or the Medical Clinic Board, as the case may be, shall be authorized to execute, deliver, file or record

28

such contracts, instruments, releases, indentures and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions herein. The secretary or assistant secretary of an applicable Debtor, as the case may be, shall be authorized to certify or attest to any of the foregoing actions. The authorizations and approvals contemplated by this section shall be effective notwithstanding any requirements under non-bankruptcy law so long as such authorizations and approvals are in accordance with section 1129(a)(16) of the Bankruptcy Code.

43.    Substantive Consolidation of JHC and the Medical Clinic Board; MCB Proof of Claim Bar Date; List of MCB Executory Contracts

Pursuant to Section 5.2 of the Plan, the terms of the Debtors' substantive consolidation are approved. As of the Effective Date, in accordance with Section 5.2 of the Plan, and pursuant to sections 105(a), 1123(a)(5)(C), and 1123(b)(3) of the Bankruptcy Code, (a) all assets and liabilities of the Consolidated Entities shall be deemed merged and treated as though they are assets and liabilities of Debtor JHC, and all intercompany claims among the Consolidated Entities shall be eliminated for all purposes; (b) any obligations of one Consolidated Entity shall be deemed to be obligations of the consolidated estate, and any claims against any Consolidated Entity shall be deemed claims against the consolidated estate; (c) all guarantees of a Consolidated Entity of the obligations of the other Consolidated Entity shall be deemed discharged, released, and of no further force or effect; (d) all transfers, setoffs, and transactions by or between the Consolidated Entities shall be deemed to have been made by, to, or for the benefit of the consolidated estate; and (e) any and all claims against the Medical Clinic Board arising from or related to the assets and liabilities of the Medical Clinic Board shall be directed solely against the consolidated estate.

The Assets of the Medical Clinic Board shall be combined with the Assets of Debtor JHC subject to their existing liens and security interests, which shall be treated subject to the terms of

the Plan. The Reorganized Debtors shall have ninety (90) days following the Effective Date to propose treatment (Impaired or Unimpaired) for any Class 5 Claims that arise from the substantive consolidation with the Medical Clinic Board. Holders of such claims, or the Reorganized Debtors, may request this Court to propose a schedule to adjudicate such proposed treatment.

Subject to the rights of Regions Bank as holder of the Allowed Secured Claims of Regions Bank described in Section 4.4 of the Plan, to the extent any Person asserts any Liens, Claims, Causes of Action, charges and/or other encumbrances, purchase rights, options or rights of first refusal against Assets of the Medical Clinic Board that vest in Debtor JHC pursuant to the Plan, via substantive consolidation or otherwise, (i) the Reorganized Debtors retain all rights to: (a) challenge the validity, priority, extent, or perfection of any asserted Liens, Claims, Causes of Action, charges and/or other encumbrances, purchase rights, options or rights of first refusal; (b) seek the recharacterization of any executory contract and unexpired lease as a disguised financing agreement, or the reverse thereof; (c) seek a determination of the value of any collateral securing any asserted Liens, Claims, Causes of Action, charges and/or other encumbrances, purchase rights, options or rights of first refusal, (ii) the Person expressly retains all rights to make an election under section 1111(b) of the Bankruptcy Code, to the extent such election is applicable to such Person, notwithstanding the timeliness requirements of Bankruptcy Rule 3014, pursuant to any deadline established by the Bankruptcy Court, and (iii) the Reorganized Debtors retain all rights to (y) object to any election under section 1111(b) of the Bankruptcy Code, except as to timeliness under Bankruptcy Rule 3014; and (z) propose treatment of any such election. Any dispute or unresolved issues with respect to the foregoing shall be submitted to the Bankruptcy Court for adjudication, scheduling, and resolution based on the issues requiring resolution.

30

Notwithstanding the substantive consolidation of the Consolidated Entities for Plan purposes, nothing herein shall affect the legal and corporate existence of the Medical Clinic Board or the Debtor JHC, except as specifically provided in the Plan, nor shall substantive consolidation affect any obligations or liabilities of any entity other than the Consolidated Entities.

Within thirty (30) days following the Effective Date, the Reorganized Debtors shall file and serve a Notice of MCB Proof of Claim Bar Date upon all known creditors of the Medical Clinic Board. Any creditor of the Medical Clinic Board that fails to file a proof of claim by the MCB Bar Date shall be forever barred, estopped, and enjoined from asserting such claim against the Reorganized Debtors, the Estates, the Medical Clinic Board, or any consolidated assets.

Any election under section 1111(b) of the Bankruptcy Code by a creditor of the Medical Clinic Board must be made in writing and filed with the Bankruptcy Court, with a copy served on the Reorganized Debtors, the Exit Lender, the GUC Trust, and any other parties as the Court may direct, no later than the MCB Bar Date. If a creditor of the Medical Clinic Board does not timely and properly make and serve a section 1111(b) election on or before the MCB Bar Date, then (a) such creditor shall be deemed to have irrevocably waived any right to make a section 1111(b) election, (b) such creditor shall be deemed to have accepted treatment of its claim under the Plan without application of section 1111(b)(2), and (c) the claim of such creditor shall be treated for all purposes under the Plan as a non-electing secured claim, subject to bifurcation and treatment under section 506(a) of the Bankruptcy Code to the extent applicable. For the avoidance of doubt, the Reorganized Debtors retain all rights to object to any such election under section 1111(b) of the Bankruptcy Code, except as to timeliness under Bankruptcy Rule 3014.

Within ninety (90) days following the Effective Date, the Reorganized Debtors shall file and serve the List of MCB Executory Contracts to be Assumed and the List of MCB Executory

31

Contracts to be Rejected, which shall identify all executory contracts and unexpired leases that the Reorganized Debtors shall assume and reject, respectively, and the related cure amounts owing under executory contracts and unexpired leases proposed to be assumed. Any objection to a proposed assumption, or any related cure amount, must be filed, served, and actually received by the Reorganized Debtors on or prior to the thirtieth (30th) day following the service of the List of MCB Executory Contracts to be Assumed and the List of MCB Executory Contracts to be Rejected. Any counterparty to an executory contract or unexpired lease with the Medical Clinic Board that fails to object timely to the proposed assumption or cure amount shall be deemed to have consented to such matters and shall be deemed to have forever released and waived any objection to such proposed assumption and cure amount. The filing and service of the List of MCB Executory Contracts to be Assumed and the List of MCB Executory Contracts to be Rejected shall not obligate the Reorganized Debtors to assume any executory contract or unexpired lease set forth therein.

In the event of a dispute regarding the amount of any cure, the Reorganized Debtors may elect, within thirty (30) days of the entry of such Final Order by the Bankruptcy Court resolving the dispute, to not assume the executory contract or unexpired lease at issue, and instead, shall be deemed to reject the executory contract or unexpired lease.

If a Person believes that it is a party to an executory contract or unexpired lease with the Medical Clinic Board that is not listed on the List of MCB Executory Contracts to be Assumed or the List of MCB Executory Contracts to be Rejected, then such Person must, no later than thirty (30) days following the service of the List of MCB Executory Contracts to be Assumed and the List of MCB Executory Contracts to be Rejected, file with the Bankruptcy Court and serve on counsel for the Reorganized Debtors a written document with sufficient evidence to establish the

32

existence of the unidentified executory contract and the basis for asserting that an executory contract exists and the amount of any cure payment asserted to be owing in connection with the assumption of such contract.

All claims, executory contracts, and unexpired leases filed or submitted in accordance with that process shall be treated under the applicable terms and provisions of the Plan, Confirmation Order, and the Bankruptcy Code.

44.    The GUC Trust and GUC Trustee

The GUC Trust Agreement, substantially in the form filed with the Plan Supplement, as such Plan Supplement may be amended in accordance with the Plan, is hereby approved.

The appointment of Steven D. Sass, LLC as GUC Trustee is hereby approved. The GUC Trustee shall be compensated in the manner set forth in and consistent with the GUC Trust Agreement.

The appointment of the members of the GUC Trust Oversight Committee as listed on Schedule 1 to the GUC Trust Agreement is hereby approved. The GUC Trust Oversight Committee shall have all powers, rights, duties, and protections afforded to the GUC Trust Oversight Committee under the Plan and the GUC Trust Agreement.

On the Effective Date, the GUC Trust shall be established pursuant to the GUC Trust Agreement for the primary purpose of investigating, prosecuting, or settling the GUC Trust Causes of Action, monetizing the GUC Trust Assets, and facilitating distributions in accordance with the Plan and the GUC Trust Agreement. The GUC Trust shall have the exclusive right and authority to investigate, commence, pursue and/or settle any GUC Trust Causes of Action, with the net proceeds of such GUC Trust Causes of Action to be distributed in accordance with the Plan and the GUC Trust Agreement.

33

On the Effective Date, and in accordance with and pursuant to the terms of the Plan, the Debtors and the Reorganized Debtors shall transfer and assign to the GUC Trust all of their right, title and interest in and to all of the GUC Trust Assets and all such GUC Trust Assets shall automatically vest in the GUC Trust free and clear of all Claims, Liens and other Interests.

On or before the Effective Date, in accordance with the Plan, the Reorganized Debtors shall provide to the GUC Trust the GUC Fund Loan, in the principal amount of $500,000, to fund administrative fees and expenses of the GUC Trust, which shall be repaid as set forth in Section 4.6 of the Plan.

The GUC Trust shall be managed and administered by the GUC Trustee, subject to the oversight of the GUC Trust Oversight Committee in accordance with the terms of the Plan and the GUC Trust Agreement, without need for any other notice to or any vote, consent, authorization, approval, ratification or other action by any entity or any director, stockholder, securityholder, manager, member, or partner of any entity.

Subject to the provisions of and authority and limitations set forth in the Plan, the GUC Trust Agreement, and this Order (a) the GUC Trustee shall constitute the Estates' representative in accordance with section 1123 of the Bankruptcy Code; (b) the GUC Trustee shall have all powers, rights, duties and protections set forth in the Plan and the GUC Trust Agreement, including, without limitation, the powers set forth in Section 4.6.2 of the Plan and the powers of a trustee under sections 704 and 1106 of the Bankruptcy Code and Bankruptcy Rule 2004, in addition to any powers granted by law or conferred to it by any other provision of the Plan; and (c) the GUC Trust shall have the power to conduct investigations pursuant to Bankruptcy Rule 2004 and such power shall continue until dissolution of the GUC Trust.

34

The deadline for the GUC Trustee to assert or commence any GUC Trust Causes of Action against any party, shall be governed by sections 108 and 546 of the Bankruptcy Code and otherwise applicable law.

45.    Request for Payment of Administrative Claims; Administrative Claims Bar Date

Notwithstanding anything in the Plan to the contrary, requests for payment of an Administrative Claim, other than a Fee Claim or a liability incurred in the Ordinary Course of Business, must be filed with the Court and served on all parties required to receive such notice a request for the allowance of such Administrative Claim no later than forty-five (45) days after the Effective Date. Such request must be filed and served as required by applicable Bankruptcy Rules and include at a minimum (a) the name of the Holder of the Claim, (b) the amount of the Claim, and (c) the basis of the Claim. Failure to timely and properly file and serve the request required shall result in the Administrative Claim being forever barred and discharged. Unless the Reorganized Debtors or any other party-in-interest objects to an Administrative Claim within thirty (30) days after the filing thereof, such Administrative Claim shall be deemed Allowed in the amount requested. In the event that the Reorganized Debtors or any other party-in-interest objects to an Administrative Claim, the Court shall determine the Allowed amount of such Administrative Claim.

46.    Payment of Administrative Claims

Pursuant to Section 2.1 of the Plan, each Holder of an Allowed Administrative Claim shall receive Cash equal to the unpaid portion of such Allowed Administrative Claim; provided, however, that obligations incurred in the ordinary course of business during the Chapter 11 Cases may be paid by the Debtors in the ordinary course of business during the Chapter 11 Cases in accordance with the terms and conditions of any agreement relating thereto by the Debtors;

35

provided further, however, that Allowed Administrative Claims incurred by the Reorganized Debtors after the date of this Order as part of the implementation of the Plan shall not be subject to application and may be paid by the Reorganized Debtors in the ordinary course of business and without further Court approval.

47.    Administrative Claims Incurred in the Ordinary Course of Business

Holders of Administrative Claims based on liabilities incurred in the Ordinary Course of Business of the Debtors during the Chapter 11 Cases (except for Claims of governmental units for taxes or Claims and/or penalties related to such taxes, alleged Administrative Claims arising in tort, or Rejection Claims) shall not be required to file any request for payment of such Claims; provided, however that any Administrative Claims based on liabilities incurred in the Ordinary Course of Business of the Debtors held by an "insider" (as such term is defined in the Bankruptcy Code) must be filed with the Court and served on all parties required to receive such notice a request for the allowance of such Administrative Claim based on liabilities incurred in the Ordinary Course of Business of the Debtors no later than forty-five (45) days after the Effective Date and must be approved by the Bankruptcy Court. Each Administrative Claim incurred in the Ordinary Course of Business of the Debtors shall be paid or otherwise resolved in accordance with the terms and conditions of the agreement, transaction, or applicable law giving rise to such Administrative Claim, and any Holder of such Administrative Claim need not file an application, motion, or request to protect its rights with respect to the Claim. The Debtors reserve and shall have the right to object to any Administrative Claim arising, or asserted as arising, in the Ordinary Course of Business, and shall withhold payment of such claim until such time as any objection is resolved pursuant to a settlement or a Final Order. Failure to timely and properly file and serve the

36

67317610 v1

request required shall result in the Administrative Claim based on liabilities incurred in the Ordinary Course of Business of the Debtors being forever barred and discharged.

48.    Fee Claims Bar Date

All final requests for compensation or reimbursement of Fee Claims for services rendered to the Debtors pursuant to sections 330 and 503(b) of the Bankruptcy Code prior to the Effective Date (including requests under section 503(b)(4) of the Bankruptcy Code by any Professional or other entity for making a substantial contribution in the chapter 11 Case) shall be properly filed and served pursuant to the Bankruptcy Rules on the Debtors no later than forty-five (45) days after the Effective Date as specified in Sections 2.1.2 of the Plan unless otherwise extended by the Court. Failure to timely and properly file and serve the request required shall result in the Fee Claim being forever barred and discharged. Objections, if any, to Fee Claims of such Professionals must be filed within thirty (30) days after the filing thereof. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and any prior orders of the Court, the Allowed amounts of such Fee Claims shall be determined by the Court. Any Fee Claim that is not asserted in accordance with Section 2.1 of the Plan shall be deemed Disallowed under the Plan and shall be forever barred against the Debtors, their Estates, the GUC Trust, or any of their assets or property, and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process, or act to collect, offset, recoup, or recover such Claim and shall be subject to the Plan's injunction.

49.    Executory Contracts

As of the Effective Date, all executory contracts or unexpired leases assumed by the Debtors during these Chapter 11 Cases or under the Plan shall remain in full force and effect notwithstanding any provision in such contract or lease (including those described in sections

67317610 v1

365(b)(2) and (f) of the Bankruptcy Code) that prohibits such assignment or transfer or that enables or requires termination of such contract or lease.

Notwithstanding anything in the Plan to the contrary, within ninety (90) days following the Effective Date, as such deadline may be extended from time to time by order of the Bankruptcy Court upon the filing by the Reorganized Debtors of a motion seeking such extension and service of such motion upon the affected executory contract counterparties, the Reorganized Debtors shall file and serve one or more final notices (the "Final Notices") identifying the Assumed Executory Contracts and Rejected Executory Contracts. Such Final Notices shall be irrevocable, except as otherwise agreed to by the Reorganized Debtors and the party to the applicable executory contract.

With respect to each Assumed Executory Contract that is identified on the Final Notices, any monetary amounts required as Cure Payments will be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the cure amount in Cash as soon as practicable after, and in no event later than thirty (30) days after, the latest of (a) the resolution by Final Order of any dispute between the applicable Reorganized Debtor and the other party to the Assumed Executory Contract as to such amounts due; (b) when such executory contract becomes an Assumed Executory Contract as evidenced by the Reorganized Debtors filing and serving on the applicable executory contract counterparty a Final Notice; or (c) upon such other terms as the parties to such Assumed Executory Contract may agree.

In the event of a dispute regarding the amount of any cure, the Reorganized Debtors may elect, within thirty (30) days of the entry of such Final Order by the Bankruptcy Court resolving the dispute, to not assume the executory contract or unexpired lease at issue, and instead, shall be deemed to reject the executory contract or unexpired lease.

67317610 v1

Rejection Claims must be filed within thirty (30) days after such executory contract becomes a Rejected Executory Contract as evidenced by the Reorganized Debtors filing and serving on the applicable executory contract counterparty a Final Notice, or upon such other terms as the parties to such Rejection Executory Contract may agree, or such counterparty shall be forever barred from seeking a Claim for such damages against the Debtors, their Estates, or their successors or properties. To the extent any amounts were incurred by the Reorganized Debtors during the period from the Effective Date through the effective date of rejection of such Rejected Executory Contract, counterparties to such Rejected Executory Contract may assert such amounts as a decision period Administrative Claim (a "Decision Period Administrative Claim") within thirty (30) days after such executory contract becomes a Rejected Executory Contract; provided, however, that such amounts shall be entitled to administrative priority only to the extent allowable under the terms of the Rejected Executory Contract and applicable law, and nothing herein shall be deemed to allow, admit, or determine the validity, amount, or priority of any such claim, and all rights of parties-in-interest to object thereto are expressly reserved. Notwithstanding anything in the Plan to the contrary, unless the Reorganized Debtors or any other party-in-interest objects to such request for a Rejection Claim and/or a Decision Period Administrative Claim within thirty (30) days after the filing thereof, such Rejection Claim and/or Decision Period Administrative Claim shall be deemed Allowed in the amount requested.

50.    Releases

The releases contained in the Plan, including but not limited to those set forth in Article VI, are fair and necessary to the Plan. Each release (i) was given voluntarily and in exchange for the good and valuable consideration provided by the Released Parties; (ii) is a product of good-faith and arm's-length negotiations; (iii) represents an integral element to the Plan and the

39

resolution of the Chapter 11 Cases; (iv) is in the best interests of the Debtors and their Estates; (v) is fair, equitable, and reasonable; (vi) was given and made after due notice and opportunity for a hearing; (vii) constitutes a sound exercise of the Debtors' business judgment; (viii) is consistent with the Bankruptcy Code and applicable bankruptcy law; and (ix) is a bar to any of the Debtors, the Reorganized Debtors, the Medical Clinic Board (as a Consolidated Entity), or the Debtors' Estates asserting any Claim or Cause of Action of any kind whatsoever released pursuant to the Plan. The releases appropriately offer protection to parties that constructively participated in the Debtors' restructuring efforts. Such protections from liability facilitated the participation of many of the Debtors' stakeholders in the negotiations and compromises that led to the Plan. Further, the failure to implement the releases would impair the Debtors' ability to confirm and implement the Plan. The scope of the releases is appropriately tailored under the facts and circumstances of the Chapter 11 Cases. In light of, among other things, the significant contributions made by, or on behalf of, the Released Parties to the Debtors' Estates and the critical nature of the releases to the Plan, the releases provisions are hereby authorized, approved and binding on all persons and entities subject to those releases and who may have standing to assert such Claims or Causes of Action and who granted or were deemed to grant the releases under the Plan.

51.    Exculpation

The exculpation contained in Article VI of the Plan was proposed in good faith, given for good and valuable consideration, and is essential to the Plan. Specifically, the exculpation affords protection to those parties who constructively participated in and contributed to the Debtors' chapter 11 process, and it is appropriately tailored to protect the Exculpated Parties from inappropriate litigation. The exculpation granted under the Plan is reasonable in scope, as it does not relieve any party of liability for an act or omission to the extent such act or omission is

40

67317610 v1

determined by a Final Order to constitute (i) a breach of any of its obligations under the Plan or any contract, release or other agreement or document entered into in connection herewith or (ii) intentional acts that constitute fraud or willful misconduct. The exculpation, including its carve-out for breach of obligations, fraud, and willful misconduct, is appropriate and consistent with established practice in this jurisdiction and others. Accordingly, the exculpation in the Plan is appropriate and hereby approved.

52.     Injunctions

The injunction provision contained in Article VI of the Plan is essential to the Plan and is necessary to implement the Plan and to preserve and enforce the releases and exculpation. The injunction provision is appropriately tailored to achieve those purposes. For the avoidance of doubt, the injunction shall extend to the Medical Clinic Board as a Consolidated Entity to bar any actions against the Medical Clinic Board on account of any Claims or Causes of Action that are discharged, released, or exculpated under the Plan, to the same extent as the injunction applies to the Debtors and Reorganized Debtors. Accordingly, the injunction provision of the Plan is appropriate and hereby authorized, approved, and binding on all persons and entities subject to those injunctions.

53.     Discharge

The discharge provision in Article VI of the Plan shall be, and hereby is, approved and authorized in its entirety. Notwithstanding their discharge, the Debtors and the Medical Clinic Board (as a Consolidated Entity pursuant to Section 43 of this Order) are still required to comply with the terms of the Plan, including the transfer of title of any Assets. For the avoidance of doubt, the Medical Clinic Board shall receive the same discharge protections as the Debtors, without limitation, as a Consolidated Entity pursuant to Section 43 of this Order.

54.    Limitations on Discharge, Releases, and Injunctions

The releases, injunction, and discharge provided herein are limited as described in the Plan, including Article VI and Section 11.1. Nothing in this Confirmation Order, including the releases, injunction, and discharge above alters or amends such limitations.

55.    Binding Effect

To the fullest extent possible pursuant to sections 524 and 1141 of the Bankruptcy Code, effective as of the Confirmation Date, but subject to the occurrence of the Effective Date, and except as expressly provided in the Plan, the provisions of the Plan (including the exhibits to, and all documents and agreements executed pursuant to, the Plan) and the Confirmation Order shall be binding on (i) the Debtors, (ii) all Holders of Claims against and Interests in the Debtors, whether or not impaired under the Plan and whether or not, if impaired, such Holders accepted, rejected, or are deemed to have accepted or rejected the Plan, (iii) each Person acquiring property under the Plan, (iv) all non-Debtors parties to executory contracts and unexpired leases with the Debtors, (v) all entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan or herein (or prior orders of this Court), and (vi) each of the foregoing's respective heirs, successors, assigns, trustees, executors, administrators, affiliates, officers, directors, agents, representatives, attorneys, beneficiaries, or guardians, if any (the Persons and entities described in clauses (i) through (vii), collectively, the "Bound Parties").

56.    Disallowance of the State of Alabama, Department of Revenue's Proof of Claim

Pursuant to Section 8.1 of the Plan, the objection to the proof of claim filed by the State of Alabama, Department of Revenue in the amount of $37,470,686.73, assigned as claim number 10 in the claims register, shall be, and hereby is, SUSTAINED. Claim No. 10 is DISALLOWED in

42

its entirety, and the Disbursing Agent is authorized and directed to make no distribution on account of Claim No. 10.

57.     Stays

Unless otherwise provided in the Plan or in this Order, all injunctions or stays in effect in the Debtors' Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date. From and after the Effective Date, all injunctions or stays contained in the Plan or this Order shall remain in full force and effect in accordance with these terms.

58.     Revesting of Property

Except as otherwise provided in the Plan and this Confirmation Order, any and all property and assets of the Debtors and the Estate shall vest in accordance with the terms of the Plan free and clear of all Claims, Liens, encumbrances, charges and other interests.

59.     Plan Provisions Regarding Modifications or Amendments

The provisions governing the modification, corrective action, revocation, withdrawal, or non-consummation of the Plan set forth in Sections 13.4, 13.5, and 13.6 of the Plan shall be, and hereby are, approved in their entirety.

60.     Plan Modifications

At the request of the Debtors, and pursuant to 11 U.S.C. § 1127(a), Sections 3.2, 4.7, 5.4, and 5.5 of the Plan are hereby modified by replacing their text, in their entirety, with the following:

**3.2     Classification of Claims and Interests.**

    (a) Class 1: Allowed Other Priority Claims (Unimpaired)

    (b) Class 2: Allowed Secured Claim of the DIP Lender (Impaired)

    (c) Class 3: Allowed Secured Claims of the Prepetition Secured Parties (Impaired)

43

Class 3(a): Allowed Secured Claims of the Bridge Note Secured
Parties

Class 3(b): Allowed Secured Claims of the Bridge Loan Lender

Class 3(c): Allowed Secured Claims of the MTI Secured Parties

(d) Class 4: Allowed Secured Claims of Regions Bank (Unimpaired)

(e) Class 5: Allowed Other Secured Claims (Unimpaired)

(f) Class 6: Allowed General Unsecured Claims (Impaired)

(g) Class 7: Interests in JP (Unimpaired)

-------------------------------------------------------------------------------------------------

## 4.7    Class 7: Interests in JP.

Class 7 Interests are Unimpaired.

Class 7 consists of the Interests of JP.

The Interests of JP are retained under the Plan. All equity holders of JP which existed as of the Petition Date will continue to retain their same percentage ownership interests in the Reorganized Debtor. No Interests shall be cancelled, released, extinguished, or otherwise modified under the Plan.

-------------------------------------------------------------------------------------------------

## 5.4    Management of Reorganized Debtors.

As of the Effective Date, the current members of the board of directors of Debtor JHC shall resign (including, for the avoidance of doubt, the Board of Directors), and JHS shall be appointed the sole member of  reorganized JHC. JHS may appoint such officers as it may from time to time deem appropriate. JHS shall provide management and consulting services to the Reorganized Debtors on a fair market basis, provided that one-third shall be paid current, and two-thirds of any earned management and consulting fees of JHS shall be deferred until there is positive cash flow, and all deferred maintenance and infrastructure needs  have been addressed.

-------------------------------------------------------------------------------------------------

## 5.5    Cancellation of Existing Securities and Agreements.

Except for purposes of evidencing a right to distributions under this Plan or as otherwise provided therein, on the Effective Date, (a) all agreements and other documents (other than the Assumed Executory Contracts) evidencing Claims or rights of any holder of a Claim against any of the Debtors or Reorganized Debtors, and (b) all notes and share certificates evidencing such Claims, and any agreements or guarantees related thereto, will

44

be canceled and terminated and deemed null and void, satisfied and discharged and of no force and effect as against any of the Debtors or the Reorganized Debtors without further act or action under any applicable agreement, law, regulation, order or rule. Except as otherwise provided herein, all obligations of the Debtors and Reorganized Debtors under such agreements and other documents governing such Claims will be discharged. Holders of, or parties to, such cancelled instruments, securities, and other documentation evidencing Claims will have no rights arising from or relating to such instruments, securities, and other documentation, or the cancellation thereof, except the rights provided for pursuant to this Plan.

61.    Retention of Ownership of JP

Notwithstanding anything to the contrary in the Plan or this Order, Debtor JHC shall retain all of its Interests of JP, and such ownership shall not be cancelled, modified, released, or otherwise affected pursuant to the Plan or this Order.

62.    Cancellation

Except for purposes of evidencing a right to distributions under the Plan or as otherwise provided therein, on the Effective Date, (a) all agreements and other documents (other than the Assumed Executory Contracts) evidencing Claims or rights of any holder of a Claim against any of the Debtors or Reorganized Debtors, and (b) all notes and share certificates evidencing such Claims, and any agreements or guarantees related thereto, shall be canceled and terminated and deemed null and void, satisfied and discharged and of no force and effect as against any of the Debtors or the Reorganized Debtors without further act or action under any applicable agreement, law, regulation, order or rule; provided, that nothing herein shall be deemed to cancel or otherwise alter or impair the documentation for the Regions Non-Debtor Loans on which the Allowed Secured Claims of Regions Bank are based. Except as otherwise provided herein, all obligations of the Debtors and Reorganized Debtors under such agreements and other documents governing such Claims shall be discharged. Holders of, or parties to, such cancelled instruments, securities, and other documentation evidencing Claims shall have no rights arising from or relating to such

45

instruments, securities, and other documentation, or the cancellation thereof, except the rights provided for pursuant to the Plan.

63.    General Authorizations

Pursuant to section 1142(b) of the Bankruptcy Code and the terms of the Plan, the Debtors and the GUC Trustee are authorized – without the need for further shareholder or Court approval – to execute and deliver, and take such action as is necessary to effectuate the terms of, implement, or further evidence the contracts, and other agreements and documents contemplated by the Plan and the terms and conditions of the Plan, including, without limitation, to issuing, executing, delivering, filing, and recording any documents, Court papers, or pleadings, and to take any and all actions as may be necessary or desirable to implement, effect, or consummate the transactions contemplated by the Plan, whether or not specifically referred to in the Plan or related documents and without further application to or order of the Court.

64.    Governmental Approvals

Each federal, state, commonwealth, local, foreign, or other governmental authority is hereby authorized to accept any and all documents, mortgages, deeds of trust, security filings, financing statements, and instruments necessary or appropriate to effectuate, implement, or consummate the transactions contemplated by the Plan and this Confirmation Order. This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any governmental authority with respect to the implementation or consummation of the Plan and any other acts that may be necessary or appropriate for the implementation or consummation of the Plan.

65.    Dissolution of the Creditors' Committee

46

The Creditors' Committee shall continue in existence until the Effective Date to exercise those powers and perform those duties specified in section 1103 of the Bankruptcy Code and shall perform such other duties as it may have been assigned by the Court prior to the Effective Date. Upon the occurrence of the Effective Date, the Creditors' Committee shall dissolve automatically, whereupon its members, professionals, and agents shall be discharged and released from any duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code, except with respect to (a) obligations arising under confidentiality agreements, which shall remain in full force and effect, and (b) prosecuting applications for payment of fees and reimbursement of expenses of its Professionals or attending to any other issues related to applications for payment of fees and reimbursement of expenses of its Professionals.

66.    <u>Documents</u>

All documents necessary to implement the Plan and all other relevant and necessary documents, including, among others, those listed in the Plan Supplement (the Fourth Amended and Restated Articles of Incorporation, the Amended and Restated Bylaws, the Management Services Agreement, the Exit Facility – Loan Agreement, the Note Issuance Agreement, the GUC Trust Agreement) are essential elements of the Plan and entry into and consummation of the transactions contemplated by each such document and agreement is in the best interests of the Debtors and their Estates. The Debtors have exercised reasonable business judgment in determining to enter into these documents and have provided sufficient and adequate notice of the material terms of the documents, including the identity and compensation of the GUC Trustee, to all parties-in-interest in the Chapter 11 Cases. The documents have been negotiated in good faith and at arm's length and shall, upon execution, be valid, binding and enforceable agreements and are not in conflict with any federal or state law.

67.    Exemption From Stamp Taxes

a.    Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of any security, or the making, delivery, filing, or recording of any instrument of transfer under the Plan, shall not be taxed under any law imposing a stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, personal property tax, sales tax, use tax, privilege tax, or other similar tax or governmental assessment in the United States.

b.    All filing or recording officers, wherever located and by whomever appointed, are hereby directed to accept for filing or recording, and to file or record immediately upon presentation thereof, all instruments of absolute or collateral transfer without payment of any recording tax, stamp tax, transfer tax, or similar tax or governmental assessment (other than standard filing fees) imposed by federal, state, or local law. Notice of entry of this Order in the form approved by the Court (i) shall have the effect of an order of the Court, (ii) shall constitute sufficient notice of the entry of this Order to such filing and recording officers, and (iii) shall be a recordable instrument notwithstanding any contrary provision of applicable non-bankruptcy law. The Court specifically retains jurisdiction to enforce the foregoing direction, by contempt or otherwise.

68.    Recordable Form

This Confirmation Order shall be, and hereby is, declared to be in recordable form and shall be accepted by any filing or recording officer or authority of any applicable government unit for filing and recording purposes without further or additional orders, certifications, or other

48

67317610 v1

supporting documents. Further, the Court authorizes the Debtors to file a memorandum of this Confirmation Order in any appropriate filing or recording office as evidence of the matters herein contained.

69.    Payment of Bankruptcy Administrator Fees

All fees payable through the Effective Date pursuant to 28 U.S.C. § 1930 shall be paid by the Debtors or the Reorganized Debtors, as applicable, as Administrative Claims when due.

70.    Non-Occurrence of Effective Date

If the Plan does not become effective, then the Debtors reserve all rights to: (a) seek an order from this Court directing that this Order be vacated, and/or (b) any settlement of Claims provided for in the Plan be null and void.

71.    Retention of Jurisdiction

Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding the entry of this Order or the occurrence of the Effective Date, this Court shall retain exclusive jurisdiction over all matters arising out of, and related to, these Chapter 11 Cases and the Plan as set forth in the Plan including Article XII. Among others, the Court shall retain jurisdiction over any suit brought on any claim or Cause of Action against a Released Party or an Exculpated Party in connection with any act taken or omitted to be taken in connection with, or related to, the Chapter 11 Cases, the DIP Facility, the formulation, negotiation, or implementation of the Plan, the solicitation of acceptances of the Plan, the pursuit of Confirmation of the Plan, the Confirmation of the Plan, the Consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan. The Court shall also maintain jurisdiction to determine whether any claim or Cause of Action to be asserted in any forum against a Released Party or Exculpated Party was released under the Plan or this Confirmation Order, and any party intending

49

to file any such claim or Cause of Action, or to pursue any such claim or Cause of Action already filed, against a Released Party or Exculpated Party shall first obtain an order of this Court determining that such claim or Cause of Action was not released under the Plan or this Confirmation Order. The protections provided to the Released Parties or the Exculpated Parties shall be in addition to, and shall not limit, all other releases, indemnities, injunctions, exculpations, and any other applicable law or rules protecting the Released Parties or the Exculpated Parties from liabilities. The Court shall also maintain jurisdiction to enter and implement orders to enforce the injunction as may be necessary or appropriate to restrain interference by any entity in connection with actions inconsistent with the Plan and the findings of fact and conclusions of law in this Confirmation Order.

72.    Causes of Action

The provisions regarding the preservation of Retained Causes of Action in the Plan, including the Plan Supplement, are appropriate, fair, equitable, and reasonable, and are in the best interests of the Debtors, the Estates, and Holders of Claims and Interests. Unless any Cause of Action against an entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, in accordance with section 1123(b) of the Bankruptcy Code, or assigned to the GUC Trust as a GUC Trust Cause of Action, the Debtors shall convey to the Reorganized Debtors all rights to commence, prosecute, or settle, in their sole discretion, any and all Causes of Action, whether arising before or after the Petition Date, which shall transfer free and clear of all liens, claims, and encumbrances in the Reorganized Debtors pursuant to the terms of the Plan. The Reorganized Debtors may enforce all rights to commence, prosecute, or settle, in their sole discretion, any and all Retained Causes of Action, whether arising before or after the Petition Date, and the Reorganized Debtors' rights to commence, prosecute, or settle such Retained

50

Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The Reorganized Debtors may pursue such Retained Causes of Action and may retain and compensate professionals in the analysis or pursuit of such Causes of Action to the extent the Reorganized Debtors deem appropriate in their sole discretion, including on a contingency fee basis. The GUC Trust (with respect to the GUC Trust Causes of Action) may pursue such GUC Trust Causes of Action and may retain and compensate professionals in the analysis or pursuit of such GUC Trust Causes of Action in accordance with the GUC Trust Agreement. No entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors or the Reorganized Debtors, or the GUC Trust (with respect to the GUC Trust Causes of Action), shall not pursue any and all available Causes of Action against them. The Debtors and the Reorganized Debtors expressly reserve all rights to prosecute any and all Causes of Action against any entity, except as otherwise expressly provided in the Plan. Unless any Cause of Action against an entity is expressly waived, relinquished, exculpated, released, compromised, settled in the Plan or a Final Order, or assigned to the GUC Trust as a GUC Trust Cause of Action, the Reorganized Debtors expressly reserve all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation. The Reorganized Debtors reserve and shall retain the foregoing Causes of Action notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. The Reorganized Debtors or the GUC Trust (with respect to the GUC Trust Causes of Action) shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate

51

to judgment any such Causes of Action, or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to, or action, order, or approval of, the Bankruptcy Court.

73.    References to Plan

Any document related to the Plan that refers to a plan other than the Plan confirmed by this Order shall be, and it hereby is, deemed to be modified such that the reference to a plan in such document shall mean the Plan confirmed by this Order, if appropriate.

74.    References to Plan Provisions

The failure specifically to include, reference, or discuss any particular provision of the Plan in this Order shall have no effect on the validity, binding effect, and enforceability of such provision, and each provision of the Plan shall have the same validity, binding effect, and enforceability as if fully set forth herein.

75.    Inconsistency

In the event of any conflict between the terms and provisions of the Plan and the terms and provisions in the Exit Documents, the terms and provisions of the Exit Documents, as applicable, shall control and govern. In the event of any inconsistency between the Plan, the Exit Documents and this Order, the provisions of this Order shall govern.

76.    Notice of Confirmation and Effective Date

The form of the notice of the entry of this Confirmation Order and occurrence of the Effective Date, attached hereto as **Exhibit B** (the "Notice of Confirmation and Effective Date"), is hereby approved. In accordance with Bankruptcy Rules 2002 and 3020(c), as soon as reasonably practicable after the Effective Date, the Debtors (or their agent) shall file the Confirmation and Effective Date Notice and serve it by United States first class mail postage prepaid, by hand, or by

67317610 v1

overnight courier service to all parties having been served with the Confirmation Hearing Notice; *provided, however*, that no notice or service of any kind shall be required to be mailed or made upon any person to whom the Debtors mailed a Confirmation Hearing Notice, but received such notice returned marked "undeliverable as addressed," "moved - left no forwarding address," or "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such person, or are otherwise aware, of that person's new address.

77.    Sufficiency of Notice of Confirmation and Effective Date

Mailing of the Notice of Confirmation and Effective Date in the time and manner set forth in the preceding paragraph is good and sufficient under the particular circumstances and in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c), and no further notice is necessary.

78.    Authorization for Effectiveness of the Plan

The Debtors are authorized to consummate the Plan at any time after entry of this Order subject to the satisfaction or waiver of the conditions precedent to the Effective Date set forth in Article X of the Plan. This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, and regulations of all states and any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, agreements, any amendments or modifications thereto, and any other acts and transactions referred to in or contemplated by the Plan, the Plan Supplement, the Disclosure Statement, and any documents, instruments, securities, agreements, and any amendments or modifications thereto.

79.    Conditions Precedent to Effective Date

The Plan shall not become effective unless and until the conditions set forth in Section 10.2 of the Plan have been satisfied or waived pursuant to Section 10.2 of the Plan. Prior to the Effective

67317610 v1

Date, the Debtors and their officers, directors, agents, affiliates, and advisors are authorized to take any and all actions necessary to cause the satisfaction of all conditions to the Effective Date.

80.    Effect of Failure of Conditions of the Effective Date

Notwithstanding anything in the Plan to the contrary, unless extended by the mutual agreement of the Debtors and the DIP Lender, in the event the conditions specified in Section 10.2 of the Plan have not been satisfied or waived in accordance with Section 10.3 of the Plan within sixty (60) days after entry of the Confirmation Order, (i) the Confirmation Order shall be vacated; (ii) no distributions under the Plan shall be made; (iii) the Debtors and all holders of Claims and Interests shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred; and (iv) all the Debtors' obligations with respect to the Claims and Interests shall remain unchanged and nothing contained in the Plan shall be deemed to constitute a waiver or release of any Claims or claims by or against the Debtors or any other entity or to prejudice in any manner the rights of the Debtors or any other entity in any proceedings further involving the Debtors.

81.    Post-Confirmation Reports

The GUC Trustee shall file annual reports regarding the liquidation or other administration of property comprising the GUC Trust Assets, the distributions made pursuant to it, and other matters required to be included in such report in accordance with the GUC Trust Agreement. In addition, the GUC Trust shall file tax returns as a grantor trust pursuant to United States Treasury Regulation Article 1.671-4(a). The Reorganized Debtors shall prepare and file all post-confirmation quarterly reports, and the GUC Trustee shall reasonably cooperate with the Reorganized Debtors to provide all information relating to the GUC Trust necessary for Reorganized Debtors' preparation of post-confirmation quarterly reports.

67317610 v1

82.    <u>Headings</u>

The headings of the paragraphs in this Confirmation Order have been used for convenience of reference only and shall not limit or otherwise affect the meaning of this Confirmation Order. Whenever the words "include," "includes," or "including" (or other words of similar import) are used in this Confirmation Order, they shall be deemed to be followed by the words "without limitation."

83.    <u>Governing Law</u>

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit or Plan Document provides otherwise, the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Alabama, without giving effect to the principles of conflict of laws thereof.

84.    <u>Immediate Effect and Waiver of Bankruptcy Rule 3020(e)</u>

This Confirmation Order is a Final Order and the period in which an appeal must be filed shall commence immediately upon the entry hereof. The fourteen (14) day stay of this Confirmation Order contemplated by Bankruptcy Rule 3020(e) is hereby waived and shall not apply to this Order. The Plan and Plan Supplement shall be immediately effective and enforceable to the fullest extent permitted under the Bankruptcy Code and applicable nonbankruptcy law. Notwithstanding anything to the contrary in the Plan, the Bankruptcy Rules, including Bankruptcy Rule 3020(e), or otherwise, this Confirmation Order shall be effective and enforceable immediately, and the Debtors are hereby authorized to consummate the Plan and the transactions contemplated thereby immediately upon the entry of this Confirmation Order.

85.    <u>United Healthcare Group</u>

55

a.      <u>Setoff/Recoupment</u>.    Notwithstanding anything in the Plan or this Confirmation Order to the contrary, any and all defenses of setoff and/or recoupment of UnitedHealthcare Insurance Company, UnitedHealthcare of Alabama, Inc., and any of their direct and indirect parents, affiliates, or subsidiaries (collectively, the "<u>UHC Entities</u>") are hereby preserved, and it shall not be necessary for the UHC Entities to seek any court order or other relief to be able to assert any such existing defenses in any litigation or arbitration with the Debtors, Reorganized Debtors, or any of their successors or assigns, to the extent applicable, or for purposes of offsetting any claims owed by the UHC Entities for post-petition services rendered by the Debtors against any overpayment due from the Debtors to the UHC Entities arising from the UHC Entities' payment of any claims submitted by the Debtors for post-petition services consistent with terms of the contracts between the UHC Entities and the Debtors.

b.      <u>UHC Network Agreements</u>.  Notwithstanding anything in the Plan or this Confirmation Order to the contrary, the Debtor or Reorganized Debtor, as may be the case, shall provide the UHC Entities written notice of the Debtors' or Reorganized Debtors' irrevocable decision to assume or reject the following executory contracts: (i) that certain Facility Participation Agreement by and between the UHC Entities and Jackson Hospital and Clinic, Inc., with an effective date of July 1, 2004 (as amended from time to time) (the "<u>UHC Facility Participation Agreement</u>"), (ii) that certain Medical Group Participation Agreement by and between the UHC Entities and Jackson Hospital and Clinic, Inc., with an effective date of May 1, 2004 (as amended from time to time) (the "<u>UHC ER Physicians Medical Group Agreement</u>"), and (iii) that certain Medical Group Contract by and between the UHC Entities and Jackson Hospital and Clinic, Inc., with an effective date of May 1, 2013 (as amended from time to time) (the "<u>UHC Medical Group Agreement</u>", and together with the UHC Facility Participation Agreement and the UHC ER

67317610 v1

Physicians Medical Group Agreement, the "UHC Network Agreements") no later than sixty (60) days prior to the effective date of the assumption or rejection of each such UHC Network Agreement.

86.    Intuitive Surgical

a.    Notwithstanding anything in this Order to the contrary, both of Intuitive Surgical, Inc.'s ("Intuitive") ULSAs and Leases for Intuitive's two (2) da Vinci Systems (System SK2110 leased by Debtor JHC and System SK5408 leased by the Medical Clinic Board) are assumed effective upon entry of this Order with a combined allowed cure amount of $416,154.18 (the "Intuitive Cure Amount").

b.    At the Reorganized Debtors' option, the Intuitive Cure Amount will be paid in full without interest either (i) in ten (10) consecutive equal monthly installments beginning on the Effective Date; or (ii) in six (6) consecutive equal monthly installments beginning ninety (90) days after the Effective Date. The Reorganized Debtors will select and notify Intuitive of the payment period for the Cure Amount prior to the Effective Date.

c.    The Reorganized Debtors will not be required to make monthly lease payments on the assumed Lease for the SK2110 System, but they will need to maintain a service contract on that System in accordance with the terms of the ULSA for that System. Intuitive is willing to bill service for each System in advance quarterly, as opposed to in advance annually.

d.    The Reorganized Debtors will perform the terms of the ULSA and Lease for the SK5408 System, including maintaining a service contract on that system.

e.    Upon payment in full of the Intuitive Cure Amount and the Reorganized Debtors remaining current on (i) their service obligations for the SK2110 System and (ii) their lease rental and service obligations for the SK5408 System, Intuitive will transfer title to the

57

SK2110 System to the Reorganized Debtors pursuant to Intuitive's standard form of lease buyout agreement.

f.      Except as modified by paragraph 86 of this Confirmation Order, all terms and conditions of the assumed ULSAs and Leases will remain in full force and effect, and Intuitive's filed UCC-1s will remain in place with respect to each System.  In the event of a post-confirmation default by the Reorganized Debtors under any of ULSAs or Leases, Intuitive will have all of its rights under those agreements and applicable law as against the Reorganized Debtors with respect to the Systems.

g.      The Reorganized Debtors will remain on cash-in-advance payment terms for instruments and accessories purchased from Intuitive post-confirmation.

87.    LifeSouth Community Blood Centers

The objection of LifeSouth Community Blood Centers, Inc. has been resolved and withdrawn. *See* (Doc. No. 1648).

88.    Premier Imaging Medical Systems

Premier Imaging Medical Systems, LLC ("Premier Imaging") objected to confirmation of the Plan pursuant to that certain *Objection to Plan Confirmation* (the "Premier Objection"). *See* (Doc. No. 1625). Premier withdraws the Premier Objection upon the following terms. First, Premier Imaging claim number 160 (the "Premier Note Claim") is classified as a Class 5 Claim, and is entitled to treatment as a Class 5 Claim as provided in the Plan. Second, the Debtor and Premier Imaging shall negotiate the terms of the Debtor's assumption or rejection of the Asset Management Agreement dated September 21, 2023 (the "Premier Contract").

89.    Granite Telecommunications

67317610 v1

The objection of Granite Telecommunications, LLC (Doc. No. 1627) has been resolved by adding Granite to the List of Assumed and Rejected Contracts attached as Exhibit H to the Second Plan Supplement, subject to all rights the Debtors have regarding the Plan and assumption of executory contracts.

90.    Cardinal Health

Cardinal Health 110, LLC, Cardinal Health 112, LLC and Cardinal Health 200, LLC (together, "Cardinal Health") withdraws its *Limited Objection and Reservation of Rights of Cardinal Health to Cure Amounts Set Forth in the Cure Notice* (Doc. No. 1630), without prejudice, based upon the continued negotiations between Cardinal Health and the Debtors (together, the "Parties") regarding the existence, assumption, or rejection of any and all agreements, including any previously unidentified agreements (the "Agreements") between the Parties, and the cure amounts due under the Agreements. The Parties shall continue to negotiate, in good faith, the terms of the Debtors' treatment of the Agreements as set forth in the Plan, except as modified herein, and the Parties expressly reserve all rights in connection therewith.

91.    Valarie Papaconstantinou-Bauer, M.D.

Notwithstanding anything to the contrary in the Plan, any unliquidated claim by Valerie Papaconstantinou Bauer, M.D. ("Dr. Bauer") for alleged employment discrimination arising prior to the Effective Date may proceed only to the extent of any available insurance coverage of the Debtors. Other than as stated above, there shall be no further action taken by Dr. Bauer against the Debtors in any forum. The claimant shall look solely to the insurance coverage for the collection of any judgment against the Debtors and not the Estates for recovery. Moreover, the Debtors shall not be liable for, or charged, any deductible, self-insured retention or any other similar type of charge in connection with any such claim or litigation.

59

92.    <u>Progressive Perfusion</u>

In the event any executory contract between the Debtors or any of their affiliates and Progressive Perfusion is rejected by the Debtors or the Reorganized Debtors, as applicable, or otherwise after the expiration of 90 days from the entry of this Order, the Debtors and Reorganized Debtors agree that Progressive Perfusion shall be allowed to retrieve any property owned by Progressive Perfusion, specifically including 4 Xtra/4 Xvac (e.g., Cell-Saver Units) Serial #s BO30798C18, BO17851E11, BO17780E11, BO22680, at Progressive Perfusion's expense, following a final order authorizing such rejection or any other order agreed upon by the parties.

93.    <u>Unresolved Cure Objections</u>

Notwithstanding the entry of this Confirmation Order, the occurrence of the Effective Date, or the consummation of the Plan, the Court shall retain and have exclusive jurisdiction over all matters relating to the assumption or rejection of executory contracts and unexpired leases, including the hearing and determination of the following objections to Confirmation of the Plan relating to the assumption or rejection of an Executory Contract that has not been resolved by agreement of the applicable parties or expressly determined in this Confirmation Order (the "<u>Unresolved Cure Objections</u>"):

       a) Docket No. 1622 – *Limited Objection to Notice of Second Plan Supplement to the Second Amended Joint Plan of Reorganization for Jackson Hospital & Clinic, Inc., and JHC Pharmacy, LLC* filed by Blue Cross Blue Shield of Alabama;

       b) Docket No. 1621 – *Limited Objection to Confirmation of Second Amended Joint Plan of Reorganization for Jackson Hospital & Clinic, Inc., and JHC Pharmacy, LLC* filed by UnitedHealthcare Insurance Company, United

HealthCare of Alabama, Inc., Change Healthcare Technologies, LLC, Change Healthcare Solutions, LLC, and Database Solutions II, LLC (but only with respect to issues relating to cure amounts for agreements to be assumed to which any UHC Entities are counterparties, as set forth in the objection); and

c) Other unresolved cure objections.

The Unresolved Cure Objections are fully preserved and are hereby continued for further consideration and set for a status hearing (the "Continued Status Hearing") on June 2, 2026 at 2 pm CT. Prior to the Continued Status Hearing, the Debtors are authorized to file a status report identifying each Unresolved Cure Objection that remains unresolved at that time and the issues to be addressed at the Continued Status Hearing, and the Court may enter such further orders as are appropriate to resolve any Unresolved Cure Objection consistent with the Plan and this Order.

### END OF ORDER ###

Order drafted and submitted by:
Derek F. Meek
BURR & FORMAN LLP
420 20th Street North, Suite 3400
Birmingham, Alabama 35203
(205) 251-3000
dmeek@burr.com
Counsel for Debtors and Debtors-in-Possession

61

67317610 v1

## **Exhibit A**

Plan of Reorganization

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

In re:

JACKSON HOSPITAL & CLINIC, INC., *et al.*,[1]

Debtors.

Chapter 11
Case No. 25-30256

JOINTLY ADMINISTERED

## SECOND AMENDED JOINT PLAN OF REORGANIZATION FOR
## JACKSON HOSPITAL & CLINIC, INC., AND JHC PHARMACY, LLC

BURR & FORMAN LLP
420 North 20th Street, Suite 3400
Birmingham, Alabama 35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100

MEMORY MEMORY & CAUSBY, LLP
469 S. McDonough Street (36104)
Post Office Box 4054
Montgomery, Alabama 36103-4054
Telephone: (334) 834-8000

Counsel for the Debtors and Debtors in Possession

Dated: March 5, 2026

---

[1]     The Debtors in these cases are: Jackson Hospital & Clinic, Inc. and JHC Pharmacy, LLC.

# TABLE OF CONTENTS

**Page**

**ARTICLE I. DEFINITIONS AND INTERPRETATION** .......................................................2

    **1.1**    **Definitions; Interpretation; Rules of Construction.** ...........................................2

**ARTICLE II. UNCLASSIFIED CLAIMS** ...............................................................................15

    **2.1**    **Administrative Claims.**.......................................................................................15

        2.1.1   Time for Filing Administrative Claims.........................................................15

        2.1.2   Time for Filing Fee Claims...........................................................................15

        2.1.3   Allowance of Administrative Claims and Fee Claims...................................15

        2.1.4   Payment of Allowed Administrative Claims and Fee Claims. ..................16

        2.1.5   Administrative Claims Incurred in the Ordinary Course of Business. ......16

**ARTICLE III. CLASSIFICATION OF CLAIMS AND INTERESTS** ..................................17

    **3.1**    **Introduction.**........................................................................................................17

    **3.2**    **Classification of Claims and Interests.**..............................................................18

**ARTICLE IV. TREATMENT OF CLASSES OF CLAIMS AND INTERESTS** ..................18

    **4.1**    **Class 1: Other Priority Claims.** ..........................................................................18

    **4.2**    **Class 2: Allowed Secured Claim of the DIP Lender.**........................................19

    **4.3**    **Class 3: Allowed Secured Claims of the Prepetition Secured Parties.**............19

    **4.4**    **Class 4: Allowed Secured Claims of Regions Bank.** ........................................22

    **4.5**    **Class 5: Allowed Other Secured Claims.** ..........................................................22

    **4.6**    **Class 6: Allowed General Unsecured Claims.** ...................................................22

        4.6.1   Establishment of the GUC Trust.................................................................23

        4.6.2   Powers..........................................................................................................26

        4.6.3   GUC Trust Oversight Committee. ..............................................................27

        4.6.4   Retention of GUC Trust Professionals. ......................................................27

        4.6.5   Indemnification, Insurance, and Liability Limitation. ..............................27

i

**Page**

      4.6.6   Tax Consequences in Relation to the GUC Trust. ....................................27

  **4.7**    **Class 7: Interests in JP.** ................................................................30

**ARTICLE V. MEANS OF IMPLEMENTATION OF THE PLAN** .......................................**30**

  **5.1**    **The Exit Facility and Grants.** ......................................................30

  **5.3**    **Continued Corporate Existence.**...................................................33

  **5.4**    **Management of Reorganized Debtors.**...........................................33

  **5.5**    **Cancellation of Existing Securities and Agreements.** .....................33

  **5.6**    **Vesting of Assets in the Reorganized Debtors.**...............................34

  **5.7**    **Rights of Action; Reservation of Rights.**......................................34

  **5.8**    **Effectuating Documents; Further Transactions.** ...........................35

      5.8.1   Exemption from Registration........................................................35

**ARTICLE VI. INJUNCTIONS, EXCULPATION OF LIABILITY AND RELEASES** ......**36**

  **6.1**    **Injunctions.** ...............................................................................36

  **6.2**    **Exculpation from Claims Related to the Chapter 11 Cases**............36

  **6.3**    **Releases.** ...................................................................................37

  **6.4**    **Binding Effect.**..........................................................................38

  **6.5**    **Compromise and Settlement of Claims, Interests, and Controversies.** ..........39

  **6.6**    **Protections Against Discriminatory Treatment.**.............................39

  **6.7**    **Survival of Indemnification Obligations to Directors and Officers.** ...............39

**ARTICLE VII. DISTRIBUTIONS UNDER THIS PLAN**......................................................**40**

  **7.1**    **Distributions to Holders of Allowed Claims Only.** ..........................40

  **7.2**    **Distribution Record Date.** ...........................................................40

  **7.3**    **Delivery of Distributions.** ............................................................40

  **7.4**    **Manner of Payment Under this Plan.** ...........................................40

  **7.5**    **Time Bar to Cash Payments.**........................................................41

ii

7.6     Other Distributions. .................................................................................41

7.7     Set-Offs. ........................................................................................................41

7.8     Compliance with Tax Requirements. .........................................................41

**ARTICLE VIII. PROCEDURES FOR DISPUTED CLAIMS** .............................................**41**

8.1     Objections to Claims. ..................................................................................41

8.2     No Distributions Pending Allowance. ........................................................42

8.3     Disputed Claims Reserve for General Unsecured Claims. .........................42

8.4     Distributions After Allowance. ..................................................................43

8.5     Estimation of Claims. .................................................................................43

8.6     Disallowance of Claims. .............................................................................43

8.7     Amendments to Claims. ..............................................................................44

**ARTICLE IX. EXECUTORY CONTRACTS** .............................................................**44**

9.1     Categories and Treatment of Executory Contracts to be Assumed ............44

9.2     Categories and Treatment of Executory Contracts to be Rejected. ............45

9.3     Treatment of Unidentified Executory Contracts. .......................................45

**ARTICLE X. CONDITIONS PRECEDENT TO CONFIRMATION AND THE
    EFFECTIVE DATE** .........................................................................................**47**

10.1    Conditions Precedent to Confirmation. ......................................................47

10.2    Conditions Precedent to the Effective Date. ..............................................47

10.3    Waiver of Conditions to Confirmation and Effective Date. .......................49

10.4    Effect of Failure of Conditions of the Effective Date. ...............................49

**ARTICLE XI. EFFECT OF CONFIRMATION** ..........................................................**49**

11.1    Discharge of Debtors. .................................................................................49

11.2    Binding Effect. ............................................................................................50

11.3    Section 1146 Exemption. ............................................................................50

11.4    Compliance with Tax Requirements. ..........................................................51

iii

**Page**

| | | |
|---|---|---|
| 11.5 | **Severability of Plan Provisions.** | 51 |
| 11.6 | **Term of Injunctions or Stays.** | 51 |
| 11.7 | **Medical Malpractice Claims.** | 51 |

**ARTICLE XII. RETENTION OF JURISDICTION** ...........................................................**52**

| | | |
|---|---|---|
| 12.1 | **Exclusive Jurisdiction.** | 52 |
| 12.2 | **Jurisdiction Prior to the Effective Date.** | 54 |

**ARTICLE XIII. MISCELLANEOUS PROVISIONS** ...........................................................**54**

| | | |
|---|---|---|
| 13.1 | **Substantial Consummation.** | 54 |
| 13.2 | **Payment of Statutory Fees.** | 54 |
| 13.3 | **Extension of Deadlines.** | 54 |
| 13.4 | **Modifications and Amendments.** | 54 |
| 13.5 | **Corrective Action.** | 54 |
| 13.6 | **Plan Revocation, Withdrawal or Non-Consummation.** | 55 |
| 13.7 | **Additional Exhibits.** | 55 |
| 13.8 | **Governing Law.** | 55 |
| 13.9 | **Time.** | 55 |
| 13.10 | **Section Headings.** | 56 |
| 13.11 | **Effectuating Documents and Further Transactions.** | 56 |
| 13.12 | **Successors and Assigns.** | 56 |
| 13.13 | **Termination of Creditors' Committee.** | 56 |
| 13.14 | **Notices.** | 56 |
| 13.15 | **Conflict Between Plan, Disclosure Statement and Plan Documents.** | 57 |
| 13.15.1 | Plan Controls. | 57 |
| 13.15.2 | Exit Documents Control. | 57 |

iv

## SECOND AMENDED JOINT PLAN OF REORGANIZATION FOR
## JACKSON HOSPITAL & CLINIC, INC., AND JHC PHARMACY, LLC

### INTRODUCTION

Debtors, Jackson Hospital & Clinic, Inc. ("JHC"), and JHC Pharmacy, LLC ("JP"; and JHC and JP together, the "Debtors"), propose the following Second Amended Joint Plan of Reorganization pursuant to Bankruptcy Code § 1121(a) for the settlement and resolution of all Claims against the Debtors. Reference is made to the Disclosure Statement, which includes a discussion of the Debtors' history, businesses, properties, results of operations, resolutions of certain material disputes, projections for future operations and administration of the Debtors' Assets, risk factors, summary and analysis of the Plan, and certain related matters.

THE DEBTORS URGE ALL HOLDERS OF CLAIMS TO READ THIS PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY. NO SOLICITATION MATERIALS OTHER THAN THE DISCLOSURE STATEMENT AND ANY DOCUMENTS, SCHEDULES OR EXHIBITS ATTACHED THERETO OR REFERENCED THEREIN, OR SUPPLEMENTS THERETO, HAVE BEEN AUTHORIZED BY THE DEBTORS OR THE BANKRUPTCY COURT FOR USE IN SOLICITING ACCEPTANCES OR REJECTIONS OF THIS PLAN.

The Distributions to be made pursuant to this Plan to Holders of Allowed Claims, in each of the Classes of Claims against the Debtors set forth in Article III of this Plan, are set forth in Article IV of this Plan.

### SUMMARY OF PLAN[2]

The Plan provides for the reorganization of the Debtors' Estates and the orderly payment of Allowed Claims. The Debtors will pay in full all Allowed Administrative and Priority Tax Claims in full on the Effective Date, or as soon thereafter as possible, unless otherwise agreed to by the holder of any such claim, or as otherwise set forth herein. The Debtors will receive certain grants and commitments from the State of Alabama, Montgomery County, and the City of Montgomery, in the approximate aggregate amount of $80,000,000.00, to fund hospital operations, make capital expenditures, and improve hospital infrastructure, and to satisfy certain claims incurred on or after November 1, 2025. The DIP Lender will also provide an exit lending facility in the amount of $75,000,000.00, which will be used to assume $25,000,000.00 of the secured claim of the DIP Lender and all amounts advanced by JIG to the Medical Clinic Board during the Chapter 11 Cases, fund the Exit Funding Amount, up to $50,000,000.00 for infrastructure and deferred maintenance needs of the Reorganized Debtors following exhaustion of the Grants, and as necessary fund the cash payment in the amount of $2,500,000.00 to the Prepetition Secured Parties. The Prepetition Secured Parties will receive a lump sum cash payment of $2,500,000.00 and unsecured promissory notes in the aggregate amount of $17,500,000.00. Holders of Unsecured Claims will receive distributions of the proceeds of certain litigation claims, which will be held in a litigation trust administered by a trustee for the benefit of the holders of such claims. The

---

[2] This Summary is intended solely to provide an overview of the Plan. The Summary shall not be binding on the Debtors, and in the event of any conflict between the Summary and any other provision of the Plan, such other provision shall be controlling.

Debtors' existing management structure will be revised on the Effective Date so that Jackson Hospital Services, Inc., a 501(c)(3) non-profit entity ("JHS"), will become the sole member of JHC. JHS will also manage the Reorganized Debtors.

Creditors will receive significantly more under the Plan than they would receive in a chapter 7 liquidation. A liquidation analysis is included with the Disclosure Statement.

## ARTICLE I. DEFINITIONS AND INTERPRETATION

### 1.1    Definitions; Interpretation; Rules of Construction.

The capitalized terms used herein shall have the respective meanings set forth below. A capitalized term used herein that is not defined in this Article shall have the meaning ascribed to that term, if any, in the Bankruptcy Code or the Bankruptcy Rules. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan. Whenever the context requires, words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender and vice versa. All exhibits and schedules attached to the Plan are incorporated herein.

Unless otherwise specified, all article, section, or schedule references in this Plan are to the respective article in, section in, or schedule to this Plan, as the same may be amended, waived, supplemented or modified from time to time. The words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to this Plan as a whole and not to any particular article, section, subsection or clause contained herein. The words "includes" and "including" are without limitation. Any and all specific Exhibits referenced herein are, unless otherwise expressly provided, Exhibits to the Disclosure Statement.

*"2024 Bridge Credit Agreement"* means the Credit Agreement, dated September 30, 2024 among JHC, Jackson Hospital Financing, LLC, and the Bridge Loan Lender.

*"2024 Bridge Note Purchase Agreement"* means the Senior Note Purchase Agreement originally dated November 5, 2024, as amended, supplemented, restated and modified through the Petition Date, among JHC, Jackson Hospital Financing, LLC, as issuers, the Medical Clinic Board, as note party, the Bridge Noteholder Representative, and the Bridge Noteholders.

*"Administrative Claim"* means any Claim for an Administrative Expense.

*"Administrative Expense"* means any cost or expense of administration of this case incurred on or before the Effective Date that is entitled to priority under section 507(a)(2) and allowed under section 503(b) of the Bankruptcy Code, including, without limitation, Fee Claims and all other claims for compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, Cure Claims, and all fees and charges assessed against the Debtors' Estates under Chapter 123 of Title 28, United States Code.

*"Allowed"* means, when used with respect to any Claim, or any portion thereof, the portion of such Claim (a) that has been allowed by a Final Order, (b) that was listed in the Schedules as neither disputed, contingent nor unliquidated and for which no timely Proof of Claim was filed, (c) for which a Proof of Claim in a liquidated amount has been timely filed pursuant to the

2

Bankruptcy Code or as required by any Final Order of the Bankruptcy Court and as to which either (i) no objection to its allowance has been filed within the period fixed by the Bankruptcy Court, the Plan, or applicable Bankruptcy Rules, (ii) any objection to its allowance has been settled, waived through payment, withdrawn, or denied by a Final Order of the Bankruptcy Court, or (iii) the underlying claim is based upon a judgment that is no longer subject to appeal, or (d) that is expressly allowed in a liquidated amount in the Plan. Unless otherwise specified in the Plan or any Final Order of the Bankruptcy Court, an Allowed Claim or Allowed Administrative Claim shall not include or accrue interest on the amount of such Claim or Administrative Claim maturing, incurred otherwise, or arising subsequent to the Petition Date.

*"Allowed Class 3 Claims"* shall have the meaning ascribed to it in Section 4.3 of the Plan.

*"Allowed Class 3(a) Claims"* shall have the meaning ascribed to it in Section 4.3 of the Plan.

*"Allowed Class 3(b) Claims"* shall have the meaning ascribed to it in Section 4.3 of the Plan.

*"Allowed Class 3(c) Claims"* shall have the meaning ascribed to it in Section 4.3 of the Plan.

*"Allowed Deficiency Claims"* shall have the meaning ascribed to it in Section 4.6 of the Plan.

"*Assets*" means all assets of every kind or character in which a specified Person holds any right or interest, whether real or personal, whether tangible, intangible, or mixed, and wherever located.

*"Assumed Executory Contract"* shall have the meaning ascribed to it in Section 9.1.1 of the Plan.

*"Avoidance Actions"* means any and all avoidance, recovery, subordination, or other claims, actions, or remedies that may be brought by or on behalf of the Debtors or their Estates or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under sections 502, 510, 542, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code or under similar or related state or federal statutes and common law, including fraudulent transfer or conveyance laws.

*"Bankruptcy Code"* means title 11 of the United States Code.

*"Bankruptcy Court"* means the United States Bankruptcy Court for the Middle District of Alabama, Montgomery Division, or such other court having jurisdiction over this case.

*"Bankruptcy Rules"* means the Federal Rules of Bankruptcy Procedure.

"*BCBS Funding Agreement*" means that Joint Prosecution and Funding Agreement dated January 21, 2026 (Doc. No. 1378) and approved by Order of the Bankruptcy Court (Doc. No. 1412).

"**BCBS Litigation**" means the adversary proceeding styled *Jackson Hospital & Clinic, Inc. v. Blue Cross and Blue Shield of Alabama*, Adversary No. 25-03025, pending in the Bankruptcy Court.

"**BCBS**" means Blue Cross and Blue Shield of Alabama.

"**Board of Directors**" means the board of directors that governs JHC.

"**Bonds**" means the bonds issued pursuant to the Series 2015 Bond Indenture in original principal amount of $84,195,000.00.

"**Bondholders**" means the beneficial holders of the Bonds.

"**Bridge Debt**" means the obligations and indebtedness under the 2024 Bridge Credit Agreement and the 2024 Bridge Note Purchase Agreement.

"**Bridge Loan Deficiency Claim**" means the Allowed unsecured claim of the Bridge Loan Lender in the amount of $2,026,435.67.

"**Bridge Loan Lender**" means ServisFirst Bank in its capacity as lender under the 2024 Bridge Credit Agreement.

"**Bridge Note Deficiency Claim**" means the Allowed unsecured claim of the Bridge Noteholders in the aggregate amount of $4,494,250.00.

"**Bridge Note Documents**" means the 2024 Bridge Note Purchase Agreement, the Bridge Notes, and all related mortgages, agreements, certificates, contracts, and UCC-1 filings, of any kind and issued or executed at any time relating to the Bridge Notes.

"**Bridge Noteholder Representative**" means UMB Bank N.A. in its capacity as the noteholder representative and collateral agent under the 2024 Bridge Note Purchase Agreement.

"**Bridge Noteholders**" means the beneficial holders of the Bridge Notes.

"**Bridge Notes**" means the senior notes issued pursuant to the 2024 Bridge Note Purchase Agreement.

"**Bridge Note Secured Parties**" means the Bridge Noteholders and the Bridge Noteholder Representative.

"**Bridge Secured Parties**" means the Bridge Loan Lender and the Bridge Note Secured Parties.

"**Business Day**" means any day other than a Saturday or a Sunday or any other day on which on which the majority of commercial banks located in Birmingham, Alabama, are required or authorized to close.

"**Cash**" means legal tender of the United States of America.

"*Causes of Action*" means each and every cause of action, claim, defense, counterclaim, cross-claim, setoff, right to payment, of any kind, nature, manner or mode whatsoever, arising under any federal, state or common law, including without limitation Avoidance Actions, all claims, disputes, objections, litigation or appeals with respect to any Claim, and any rights related thereto, including without limitation any and all rights to defend or prosecute any litigation or appeal in any court or arbitration proceeding, that the Debtors or the Estates may hold against any Person as of the Effective Date, as set forth in greater detail in the Plan Supplement.

"*Chapter 11 Cases*" means the Debtors' jointly administered Chapter 11 bankruptcy cases having case numbers 25-30256 (lead case) and 25-30257, pending in the Bankruptcy Court under chapter 11 of the Bankruptcy Code.

"*Claim*" shall have the meaning provided in section 101(5) of the Bankruptcy Code.

"*Claim Objection*" means an objection to a Claim filed with the Bankruptcy Court.

"*Claims Objection Deadline*" means the date one hundred and eighty (180) days after the Effective Date by which the Reorganized Debtors must file objections to Claims, as such deadline may be extended from time to time by order of the Bankruptcy Court.

"*Class*" means a category of holders of Claims as set forth in the Plan.

"*Class 3 Cash Distribution*" shall have the meaning ascribed to it in Section 4.3 of the Plan.

"*Class 3 Distributable Assets*" shall have the meaning ascribed to it in Section 4.3 of the Plan.

"*Class 3 Junior Note Issuance Agreement*" means the note issuance agreement among the Reorganized Debtors and UMB Bank, N.A., as noteholder representative, pursuant to which the Class 3 Junior Notes are to be issued to the Series 2019 Lender, each Bridge Noteholder, and each Bondholder in accordance with Section 4.3 of the Plan, in form and substance acceptable to the Master Trustee and Bridge Noteholder Representative.

"*Class 3 Junior Notes*" means unsecured promissory notes issued by the Reorganized Debtors to the Bridge Loan Lender, the Series 2019 Lender, each Bridge Noteholder, and each Bondholder, in each case on account of its respective Allowed Class 3 Claim and in accordance with Section 4.3 of the Plan, in form and substance acceptable to the Master Trustee, Bridge Noteholder Representative and Bridge Loan Lender.

"*Class 3 Note Agent*" shall mean the agent or noteholder representative pursuant to the Class 3 Senior Note Issuance Agreement and Class 3 Junior Note Issuance Agreement, which as of the Effective Date shall be UMB Bank, N.A.

"*Class 3 Senior Note Issuance Agreement*" means the note issuance agreement among the Reorganized Debtors and UMB Bank, N.A., as noteholder representative, pursuant to which the Class 3 Senior Notes are to be issued to the Series 2019 Lender, each Bridge Noteholder, and each Bondholder in accordance with Section 4.3 of the Plan, in form and substance acceptable to

5

the Master Trustee and Bridge Noteholder Representative.

*"Class 3 Senior Notes"* means unsecured promissory notes issued by the Reorganized Debtors to the Bridge Loan Lender, the Series 2019 Lender, each Bridge Noteholder, and each Bondholder, in each case on account of its respective Allowed Class 3 Claim and in accordance with Section 4.3 of the Plan, in form and substance acceptable to the Master Trustee, Bridge Noteholder Representative, and Bridge Loan Lender.

*"Collateral"* means any Assets of the Debtors encumbered by a valid and enforceable Lien to secure the payment of a Claim.

*"Confirmation Date"* means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order.

*"Confirmation Hearing"* means the hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code on confirmation of the Plan.

*"Confirmation Order"* means the order of the Bankruptcy Court confirming this Plan in accordance with the provisions of the Bankruptcy Code and which is in form and content acceptable to the Debtors, the Exit Lender, and the DIP Lender.

*"Contract Rate"* means, with respect to any Claim, the non-default contract rate of interest provided for in the promissory note, loan agreement or other contract, if any, between the Debtors and the Holder of such Claim.

*"Creditor"* shall have the meaning provided in section 101(10) of the Bankruptcy Code.

*"Creditors' Committee"* means the Official Committee of Unsecured Creditors appointed pursuant to the *Amended Order Directing the Appointment of Unsecured Creditors Committee* entered by the Bankruptcy Court (Doc. No. 126).

*"Cure Claim"* means a Claim arising from the assumption of an Executory Contract under section 365(b) of the Bankruptcy Code.

*"Days Cash on Hand"* is obtained by dividing (i) the total Cash and Cash equivalents of the Reorganized Debtors and their subsidiaries on a consolidated basis on any measurement date, by (ii) a number equal to (a) the total operating expenses for the Reorganized Debtors and their subsidiaries on a consolidated basis for the prior fiscal year, divided by (b) 365.

*"Debtors"* means Jackson Hospital & Clinic, Inc., and JHC Pharmacy, LLC, together, and, where applicable, the Debtors from and after the Effective Date as reorganized pursuant to this Plan (in such capacity, the *"Reorganized Debtors"*). For purposes of this Plan, on the Effective Date, the Medical Clinic Board shall be treated as a "Debtor" or "Reorganized Debtor," as applicable.

*"DIP Facility"* means the non-amortizing priming super-priority senior secured postpetition credit facility and loans issued thereunder in the aggregate amount of up to $35,000,000.00 under the DIP Loan Agreement.

6

**"DIP Lender"** means Jackson Investment Group, LLC, the provider of the DIP Facility.

**"DIP Loan Agreement"** means that certain *Senior Secured, Super-Priority Debtor-in-Possession Loan and Security Agreement* dated as of March 4, 2025, as modified or amended from time to time, by and among the Debtors and the DIP Lender.

**"Disallowed"** means, when used with respect to a Claim, a Claim or the portion thereof which (a) is fully and finally denied allowance in a Final Order of the Bankruptcy Court, or (b) is estimated for purposes of allocation or payment of Distributions at zero ($0.00).

"**Disbursing Agent**" shall mean the Reorganized Debtors.

**"Disclosure Statement"** means the Disclosure Statement with respect to this Plan of Reorganization, as it may be altered, amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the Bankruptcy Rules, together with any Exhibits and supplements thereto.

**"Disputed"** when used with respect to a Claim means any such Claim that is not an Allowed Claim and is not a Disallowed Claim, including but not limited to any Claim that is not listed on the Debtors' Schedules or that is listed in the Debtors' Schedules as disputed, contingent or unliquidated, any Claim that is the subject of an objection filed in the Bankruptcy Court, and any Claim that is disputed by the Debtors in any litigation, lawsuit, appellate proceeding or adversary proceeding in the Bankruptcy Court or any other court of competent jurisdiction.

**"Disputed Claim Reserve"** shall have the meaning ascribed to it in Section 8.3 of the Plan.

**"Distribution"** means the Assets required by this Plan to be distributed to the Holders of Allowed Claims.

**"Distribution Record Date"** shall have the meaning ascribed to it in Section 7.2 of the Plan.

**"Effective Date"** means the first Business Day after the date upon which all conditions precedent to the occurrence of the Effective Date set forth in Section 10.2 of the Plan have been met; provided, however, if (x) a stay of the Confirmation Order is imposed prior to the Effective Date under applicable law, rule, or order of the Bankruptcy Court or an appellate court, (y) the Confirmation Order has not become a Final Order by virtue of the filing of any motion permitted under Federal Rules of Bankruptcy Procedure 9023 or 9024, or (z) a notice of appeal is filed on or before the deadline for filing an appeal of the Confirmation Order, then the Debtors may, defer the Effective Date until a date that is not later than fourteen (14) days following entry of a Final Order denying any motion under Federal Rules of Bankruptcy Procedure 9023 or 9024, or in the event of an appeal, fourteen (14) days after affirmance of the Confirmation Order, by filing a notice of such deferment in the Chapter 11 Cases. Nothing in this Plan shall limit the Debtors' right to oppose or waive any stay of the Confirmation Order or request the posting of a bond as condition to any such stay.

**"Eligible Bondholders"** means Bondholders that have complied with the procedures set forth in Section 4.3 of the Plan as required to receive distributions under the Plan.

7

"*Estate*" means, both individually and collectively as the context may require, the respective bankruptcy estates of Debtors.

"*Excess Net Cash Flow*" means, for any fiscal year, the net increase in Cash and Cash equivalents of the Reorganized Debtors and their subsidiaries on a consolidated basis for such fiscal year, as derived from the Reorganized Debtors' and their subsidiaries audited statement of cash flows prepared in accordance with generally accepted accounting principles, reflecting all operating activities, investing activities, and financing activities, including but not limited to all scheduled or required payments on debt instruments and all capital expenditures occurring during such fiscal year; provided, however, that there shall be deemed to be no "Excess Net Cash Flow" in a fiscal year if the average Days Cash on Hand for the final 180 days of such fiscal year is less than sixty (60).

"*Exculpated Parties*" means the Debtors, the Reorganized Debtors, the financial advisors and attorneys for the Debtors, the Debtors' directors and officers (including the chief restructuring officer) who are Released Parties, the Medical Clinic Board, the DIP Lender, the Creditors' Committee and members thereof, the financial advisors and attorneys for the Creditors' Committee, the Prepetition Secured Parties, and each of their respective Related Persons.

"*Executory Contract*" means any prepetition executory contract or unexpired lease governed by section 365 of the Bankruptcy Code.

"*Exit Documents*" shall have the meaning ascribed to it in Section 13.15.2 of the Plan.

"*Exit Facility*" means the loan facility in the amount of $75,000,000.00 to be issued by the Exit Lender to the Reorganized Debtors on the Effective Date, which shall include assumption of the Debtors' obligations to the DIP Lender under the DIP Facility, up to $25,000,000.00, and all amounts advanced by JIG to the Medical Clinic Board during the Chapter 11 Cases, and for the purpose of funding the specific items identified herein.

"*Exit Funding Amount*" means the Effective Date obligations of the Reorganized Debtors to (i) lend $500,000.00 to the GUC Trust pursuant to the treatment of Class 6, and (ii) pay $2,500,000.00 to the Prepetition Secured Parties pursuant to the treatment of Class 3, which amounts shall be funded from the Exit Facility.

"*Exit Lender*" means Jackson Investment Group, LLC.

"*Fee Application*" means an application or motion, as appropriate, for the allowance or payment of a Fee Claim.

"*Fee Claim*" means a Claim by a Professional made pursuant to sections 327, 328, 330, 331, 363, or 503(b) of the Bankruptcy Code or otherwise relating to services performed by a Professional after the Petition Date and prior to and including the Confirmation Date.

"*Final Decree*" means the final decree entered by the Bankruptcy Court pursuant to Bankruptcy Rule 3022.

"*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or

another court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court, which is in full force and effect and has not been reversed, vacated, stayed, modified, or amended and as to which (i) the time to appeal, petition for writ of certiorari, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for writ of certiorari, or other proceedings for a new trial, reargument, or rehearing shall then be pending, or (ii) if an appeal, petition for writ of certiorari, or motion for new trial, reargument, or rehearing has been filed in a timely manner, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or writ of certiorari shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for writ of certiorari, or move for a new trial, reargument, or rehearing shall have expired; provided, however, for the avoidance of doubt, an order or judgment that is subject to a timely appeal shall not constitute a Final Order even if a stay of such order or judgment pending resolution of the appeal has not been obtained; and, provided, further, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion or other pleading under Rules 59 or 60 of the Federal Rules of Civil Procedure or any analogous Bankruptcy Rule (including Bankruptcy Rule 9024(a)(3)) or sections 502(j) or 1144 of the Bankruptcy Code may be filed with respect to such order or judgment.

*"Financial Projections"* means the unaudited pro forma financial statements with regard to the Reorganized Debtors which include projections for certain fiscal years contained in the Plan Supplement.

*"General Unsecured Claim"* means a Claim that is not a Secured Claim, Administrative Claim, Priority Tax Claim, or Other Priority Claim.

*"Governing Authority"* means the governing authority that governs JP.

*"Grants"* means those certain grants and commitments from the State of Alabama, Montgomery County, and the City of Montgomery, in the approximate aggregate amount of $80,000,000.00, as described in Section 5.1 of this Plan.

*"GUC Fund Loan"* means a non-interest bearing loan from the Reorganized Debtors to the GUC Trust in the principal amount of $500,000.00 (funded with the Exit Funding Amount) to fund administrative fees and expenses of the GUC Trust, which shall be repaid in full as set forth in Section 4.6 of the Plan.

*"GUC Trust"* means the trust established for the benefit of Holders of Allowed Class 6 General Unsecured Claims, in accordance with Section 4.6.1 of the Plan.

*"GUC Trust Agreement"* means the agreement among the Debtors and the GUC Trustee to be executed on the Effective Date.

*"GUC Trust Assets"* means the GUC Fund Loan, the GUC Trust Causes of Action, and the resulting proceeds of the GUC Trust Causes of Action, as set forth in Section 4.6 of the Plan.

*"GUC Trust Causes of Action"* means all Claims and Causes of Action, if any, of the Debtors (i) against HumanityCorp. and its Related Persons; (ii) against Capta Health Partners, LLC and its Related Persons, including any claim of setoff or objection to their claims; (iii) against

9

auditors, officers and directors of the Debtors who were appointed prior to the Petition Date and are not employed or affiliated with the Debtors as of the Effective Date, and only after written approval from the Reorganized Debtors, which shall not be unreasonably withheld; (iv) arising under chapter 5 of the Bankruptcy Code (except for any such adversary proceedings that the Debtors have commenced, or may hereafter commence after consultation with the Creditors' Committee, prior to the Effective Date) against Persons that are not current vendors, trade partners or otherwise affiliated with JHC, and only after written approval from the Reorganized Debtors, which shall not be unreasonably withheld; (v) that, after consultation, the GUC Trustee and the Reorganized Debtors agree will be pursued by the GUC Trust. Notwithstanding clauses (i) through (v) above, the GUC Trust Causes of Action shall not include any Claims or Causes of Action (x) against any Exculpated Parties for any acts exculpated herein or Released Persons, or (y) against, involving, or relating to BCBS or its Related Persons.

*"GUC Trust Oversight Committee"* means the three-Person committee appointed pursuant to Section 4.6 of the Plan to oversee the activities of the GUC Trustee, one member of which shall be designated by the DIP Lender and two members of which shall be designated by the Creditors' Committee.

*"GUC Trustee"* means the Person to be chosen by the GUC Trust Committee to serve as trustee of the GUC Trust, or any successor trustee of the GUC Trust.

*"Holder"* means a Person who is the legal or beneficial owner of a Claim or Interest and, when used in conjunction with a class or type of Claim or Interest, means the legal or beneficial owner of a Claim or Interest in such class or of such type.

*"Impaired"* means, with respect to treatment of a Claim or Interest under the Plan, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

*"Impaired Class"* shall mean any Class whose members are Holders of Claims that are impaired within the meaning of section 1124 of the Bankruptcy Code.

*"Indemnification Obligations"* means the indemnification obligations of the Reorganized Debtors as defined in Section 6.7 of the Plan.

"*Insurers*" means any entity that is an issuer of an insurance policy.

*"Interest"* means the rights of the holders of the common stock, membership interests, or other equity interests issued by a Debtor and outstanding immediately prior to the Petition Date, including any options, warrants, or other rights with respect thereto, or any other instruments evidencing an ownership in the applicable Debtor and the rights of any Person to purchase or demand the issuance of the forgoing, and as defined in Bankruptcy Code § 101(16).

*"IRS"* means the Department of Treasury Internal Revenue Service.

*"JHC"* means Jackson Hospital & Clinic, Inc., a 501(c)(3) not for profit corporation, and a Debtor.

*"JHS"* means Jackson Hospital Services, Inc., a 501(c)(3) not for profit corporation.

10

*"JIG"* means Jackson Investment Group, LLC, a limited liability company, also referred to as the DIP Lender or Exit Lender.

*"JP"* means JHC Pharmacy, LLC, a limited liability company wholly owned by JHC, and a Debtor.

*"Lien"* has the meaning provided in Bankruptcy Code § 101(37) and shall include, without limitation, a "statutory lien" as defined in Bankruptcy Code § 101(53) and a "judicial lien" as defined in Bankruptcy Code § 101(36).

*"List of Executory Contracts to be Assumed"* shall have the meaning ascribed to it in Section 9.1.1 of the Plan.

*"List of Executory Contracts to be Rejected"* shall have the meaning ascribed to it in Section 9.2.1 of the Plan.

*"Master Indenture"* means the Amended and Restated Master Trust Indenture dated as of December 1, 2015 between JHC and Regions Bank, as predecessor to the Master Trustee.

*"Master Trustee"* means UMB Bank N.A., in its capacity as trustee under the Master Indenture.

*"Medical Clinic Board"* means The Medical Clinic Board of the City of Montgomery, Alabama.

*"MCB Bar Date"* shall have the meaning ascribed to it in Section 5.2 of the Plan.

*"MTI Debt"* means all the obligations under the MTI Documents, including the fees, expenses, or charges of the Series 2015 Trustee and the Master Trustee totaling approximately $81,593,167.28 as of the entry of the order approving the Disclosure Statement.

*"MTI Debt Deficiency Claim"* means the Allowed unsecured claim of the Eligible Bondholders and the Series 2019 Lender in the aggregate amount of $60,981,756.75.

*"MTI Documents"* means the Master Indenture, the Series 2015 Documents, the Series 2019 Credit Agreement, and all related mortgages, agreements, certificates, contracts, and UCC-1 filings, of any kind and issued or executed at any time relating to the MTI Debt.

*"MTI Secured Parties"* means the Bondholders, the Series 2015 Trustee, the Series 2019 Lender, and the Master Trustee.

*"New Notes"* shall have the meaning ascribed to it in Section 5.8.1 of the Plan.

"*Ordinary Course of Business"* shall have the meaning given to such term as utilized in section 363(b) of the Bankruptcy Code.

*"Other Priority Claim"* means any Claim that, if Allowed, would be entitled to priority in payment under Bankruptcy Code section 507(a) other than a Priority Tax Claim, an Administrative

11

Claim, or a Fee Claim.

*"Other Secured Claim"* means any Secured Claim against the Debtors, including any Secured Tax Claim (to the extent applicable) and any Secured Claim that is secured by a perfected first-priority purchase-money security interest (as defined in Section 9-103 of Article 9 of the Uniform Commercial Code, as enacted in the State of Alabama) in Assets of the Estate, other than (i) the Secured Claim of the DIP Lender, (ii) the Secured Claims of the Bridge Note Secured Parties, (iii) the Secured Claim of the Bridge Loan Lender, (iv) the Secured Claims of the MTI Secured Parties, and (v) the Secured Claims of Regions Bank.

*"Person"* means and includes natural persons, corporations, limited partnership, general partnerships, joint ventures, trusts, land trusts, business trusts, unincorporated organizations, or other organizations, irrespective of whether they are legal entities, governments and agencies and political subdivisions thereof or other entities, consistent with section 101(41) of the Bankruptcy Code.

*"Petition Date"* means February 3, 2025.

*"PIK Period"* shall have the meaning ascribed to it in Section 4.3 of the Plan.

*"Plan"* or *"Plan of Reorganization"* means this Plan of Reorganization either in its present form or as it may hereafter be altered, amended or modified from time to time.

*"Plan Documents"* means collectively this Plan, all documents submitted herewith, any Plan Supplement, the Confirmation Order, and all documents proposed to be executed to carry out the terms of this Plan.

*"Plan Proponents"* means JHC and JP.

*"Plan Supplement"* means the exhibits, schedules, agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, including but not limited to the Exit Documents, the Financial Projections, the List of Executory Contracts to be Assumed, the List of Executory Contracts to be Rejected, Causes of Action, the Released Parties, and the members of the GUC Trust Oversight Committee. All documents comprising the Plan Supplement shall be in form and substance acceptable to the Debtors.

*"Prepetition Secured Creditor Deficiency Claims"* means, collectively, the MTI Debt Deficiency Claim, the Bridge Note Deficiency Claim, and the Bridge Loan Deficiency Claim.

*"Prepetition Secured Debt"* means the MTI Debt and the Bridge Debt.

*"Prepetition Secured Parties"* means the MTI Secured Parties and the Bridge Secured Parties.

*"Priority Tax Claim"* means any Claim against the Debtors that, if Allowed, would be entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code.

12

*"Professional"* means any professional employed in accordance with a Final Order entered in the Chapter 11 Cases under sections 327 or 1103 of the Bankruptcy Code.

*"Pro Rata Share"* means, with respect to a General Unsecured Claim, a fractional interest with (i) the Allowed amount of the General Unsecured Claim as the numerator, and (ii) the total amount of all Allowed Claims in the same Class as the denominator. Claims that are Disallowed at the time a Pro Rata Share is calculated according to the terms of the Plan shall not be included in the calculation of the Pro Rata Share.

*"Regions Mortgages"* means, collectively, the Surgery Center Mortgage and the Imaging Center Mortgage securing the Regions Non-Debtor Loans, as described more specifically in Doc. No. 149.

*"Regions Non-Debtor Loans"* means the loans by Regions Bank to non-Debtors, Jackson Surgery Center, LLC, and Jackson Imaging Center, LLC, identified and described in (Doc. No. 149).

"*Rejection Bar Date*" means the deadline for filing Rejection Claims established pursuant to Section 9.2.2 of the Plan.

*"Rejection Claim"* means a Claim by a party to an Executory Contract with a Debtor that has been rejected by such Debtor pursuant to this Plan or a prior Final Order of the Bankruptcy Court entered in this case, as described in Section 9.2.2 of the Plan.

*"Rejected Executory Contract"* shall have the meaning ascribed to it in Section 9.2.1 of the Plan.

*"Related Persons"* means, with respect to any Person, such Person's predecessors, successors, assigns and present and former affiliates (whether by operation of law or otherwise) and each of their respective present and former members, partners, equity-holders, officers, directors, employees and representatives, acting in such capacity, and any Person claiming by or through any of them. With respect to Persons other than the Debtors and the Creditors' Committee, "Related Persons" shall also include such Person's advisors (whether engaged prior to or subsequent to the Petition Date), attorneys (whether engaged prior to or subsequent to the Petition Date), agents and professionals. No Insurers shall constitute a Related Person.

*"Released Party"* means, collectively and individually, with respect to their actions before, on, or after the Petition Date through the Effective Date: (i) JIG; (ii) all Persons who have served on or after November 1, 2025 as a member of the Board of Directors or as an officer of the Debtors, as set forth in greater detail in the Plan Supplement; (iii) the Prepetition Secured Parties; (iv) certain Persons who have been employed by the Debtors on or after the Petition Date, as set forth in greater detail in the Plan Supplement; (v) each Person identified in the Plan Supplement as a Released Party; (vi) the respective Related Persons of the Persons identified in the immediately preceding clauses (i) through (v); (vii) the Medical Clinic Board; (viii) all Persons who have served on or after November 1, 2025 as a member of the board of directors or as an officer of the Medical Clinic Board, as set forth in greater detail in the Plan Supplement; and (ix) the respective Related Persons of the Persons identified in clauses (vii) and (viii), but solely with respect to such Related Person's actions relating to the Medical Clinic Board.

13

*"Retained Causes of Action"* means all Causes of Action belonging to the Debtors or their Estates to the extent not released under the Plan.

*"Secured Claim"* means an Allowed Claim that is secured by a security interest in or a lien on Assets of the Estate to the extent of the value, as of the Effective Date or such other date established by the Bankruptcy Court, of such Claim Holder's interest in the Estate's interest in such Assets as determined by a Final Order of the Bankruptcy Court pursuant to section 506 of the Bankruptcy Code or as otherwise agreed upon in writing by the Debtors and the Claim Holder. Secured Claims shall include Allowed Claims secured by security interests or liens junior in priority to existing security interests or liens, whether by operation of law, contract, or otherwise, but solely to the extent of the value, as of the Effective Date or such other date established by the Bankruptcy Court, of such Claim Holder's interest in the Estate's interest in such Assets after giving effect to all security interests or liens senior in priority.

*"Secured Tax Claim"* means any Secured Claim which, absent its secured status, would be entitled to priority in right of payment under Bankruptcy Code section 507(a)(8).

*"Series 2015 Obligation"* means the $84,195,000.00 Direct Debt Obligation, Series 2015, of JHC, issued under the Master Indenture.

*"Series 2015 Bond Indenture"* means the Series 2015 Bond Trust Indenture, dated as of December 1, 2015, as amended, supplemented, restated and modified through the Petition Date, between the Medical Clinic Board and Regions Bank, as predecessor to the Series 2015 Trustee.

*"Series 2015 Documents"* means all documents executed in connection with the issuance of the Bonds, including the Series 2015 Bond Indenture, the Mortgage and Security Agreement dated as of December 1, 2015, and all related mortgages, agreements, certificates, contracts, and UCC-1 filings, of any kind and issued or executed at any time, as amended, supplemented, restated and modified through the Petition Date.

*"Series 2015 Trustee"* means UMB Bank N.A., in its capacity as trustee under the Series 2015 Bond Indenture.

*"Series 2019 Credit Agreement"* means the Credit Agreement (Revolving Line of Credit) dated July 12, 2019 between JHC and ServisFirst Bank.

*"Series 2019 Lender"* means ServisFirst Bank, in its capacity as Lender under the Series 2019 Credit Agreement.

*"Series 2019 Obligation"* means the obligation under the Series 2019 Credit Agreement between JHC and Regions Bank, as predecessor to the Master Trustee.

*"Schedules"* means the consolidated schedules of assets and liabilities and the statement of financial affairs filed by the Debtors in accordance with section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules and statement have been or may be supplemented or amended by the Debtors or Reorganized Debtors.

*"Special Recoveries"* shall have the meaning ascribed to it in Section 4.3 of the Plan.

14

*"Taylor Road Property"* means the real property owned by JHC that is the 29.33 acres site located on the east margin of Taylor Road and the south and west margins of Halcyon Park Drive.

*"UEC Notice"* shall have the meaning ascribed to it in Section 9.3 of the Plan.

*"Unexpired Lease"* means a lease to which one of the Debtors is a party that was unexpired as of the Petition Date.

*"Unidentified Executory Contract"* shall have the meaning ascribed to it in Section 9.3 of the Plan.

*"Unimpaired"* means, when used in reference to a Claim or a Class, a Claim or a Class that is not impaired within the meaning of Bankruptcy Code section 1124.

## ARTICLE II. UNCLASSIFIED CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified in the Plan. The treatment of such Claims is set forth in this Article II.

**2.1     Administrative Claims.**

### 2.1.1     Time for Filing Administrative Claims.

The Holder of any Administrative Claim that is incurred, accrued or in existence prior to the Confirmation Date, other than (i) a Fee Claim, or (ii) a liability incurred in the Ordinary Course of Business, must file with the Bankruptcy Court and serve on all parties required to receive such notice a request for the allowance of such Administrative Claim no later than forty-five (45) days after the Confirmation Date. Such request must be filed and served as required by applicable Bankruptcy Rules and include at a minimum (a) the name of the Holder of the Claim, (b) the amount of the Claim, and (c) the basis of the Claim. Failure to timely and properly file and serve the request required under this Section shall result in the Administrative Claim being forever barred and discharged.

### 2.1.2     Time for Filing Fee Claims.

Any Person who holds or asserts a Fee Claim shall be required to file with the Bankruptcy Court and serve on all parties required to receive such notice a Fee Application no later than forty-five (45) days after the Effective Date. Failure to timely and properly file and serve a Fee Application as required under this Section shall result in the Fee Claim being forever barred and discharged.

### 2.1.3     Allowance of Administrative Claims and Fee Claims

No Administrative Claim will be deemed Allowed until an order allowing such Claim becomes a Final Order. Objections to Administrative Claims must be filed and served pursuant to the Bankruptcy Rules on the Holder of such Claim and Debtors no later than thirty (30) days after the filing of the applicable request for allowance or payment of the Claim. Any Person who fails

15

to timely and properly file and serve an objection, motion, or claim according to the requirements of this Section of the Plan and applicable Bankruptcy Rules shall be forever barred, enjoined, and estopped from asserting any such objection, motion, or claim or otherwise challenging any Administrative Claim or Fee Claim arising on or before the Confirmation Date or otherwise challenging the payment or allowance of any fees of Professionals that were paid or allowed on or before the Confirmation Date.

### 2.1.4    Payment of Allowed Administrative Claims and Fee Claims.

Except to the extent that a Holder of an Allowed Administrative Claim has been paid prior to the Confirmation Date, or agrees to a different treatment, each Holder of an Allowed Administrative Claim (other than Fee Claims, and other than Allowed Administrative Claims incurred in the Ordinary Course of Business, which are paid pursuant to Section 2.1.5 below) shall receive in full satisfaction, release, and discharge of and exchange for such Administrative Claim, and after the application of any retainer or deposit held by such Holder, Cash equal to the Allowed amount of such Administrative Claim on the later of the Effective Date, or upon thirty (30) days after the entry of a Final Order allowing the Administrative Claim.

### 2.1.5    Administrative Claims Incurred in the Ordinary Course of Business.

Holders of Administrative Claims based on liabilities incurred in the Ordinary Course of Business of the Debtors during the Chapter 11 Cases (except for Claims of governmental units for taxes or Claims and/or penalties related to such taxes, alleged Administrative Claims arising in tort, or Rejection Claims) shall not be required to file any request for payment of such Claims; provided, however that any Administrative Claims based on liabilities incurred in the Ordinary Course of Business of the Debtors held by an "insider" (as such term is defined in the Bankruptcy Code) must be approved by the Bankruptcy Court. Each Administrative Claim incurred in the Ordinary Course of Business of the Debtors will be paid or otherwise resolved in accordance with the terms and conditions of the agreement, transaction, or applicable law giving rise to such Administrative Claim, and any Holder of such Administrative Claim need not file an application, motion, or request to protect its rights with respect to the Claim. The Debtors reserve and shall have the right to object to any Administrative Claim arising, or asserted as arising, in the Ordinary Course of Business, and shall withhold payment of such claim until such time as any objection is resolved pursuant to a settlement or a Final Order.

### 2.2    Priority Tax Claims.

Except to the extent that a holder of an Allowed Priority Tax Claim has been paid by the Debtors prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive, at the option of the Debtors, (a) a distribution of Cash in an amount equal to such Allowed Priority Tax Claim, without interest, on or as soon as practicable after (but in no event more than ninety (90) days after, unless extended by the Bankruptcy Court) the later of (i) the Effective Date; and (ii) the first Business Day after the date that is ninety (90) Business Days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim; or (b) equal annual Cash payments (commencing on or as soon as practicable after (but in no event more than ninety (90) days after, unless extended by the Bankruptcy Court) the later of the Effective Date and the first Business Day after the date that is ninety (90) Business Days after the

16

date such Priority Tax Claim becomes an Allowed Priority Tax Claim), in an aggregate amount equal to such Allowed Priority Tax Claim, together with interest at a fixed annual rate equal to six percent (6%) on the unpaid portion of such Allowed Priority Tax Claim, over a period not exceeding five (5) years after the date of assessment of such Allowed Priority Tax Claim, or upon such other terms determined by the Bankruptcy Court to provide the holder of such Allowed Priority Tax Claim deferred Cash payments having a value, as of the Effective Date, equal to such Allowed Priority Tax Claim. Each holder of an Allowed Secured Tax Claim shall retain the Lien securing its Allowed Secured Tax Claim as of the Effective Date until full and final payment of such Allowed Secured Tax Claim is made as provided herein, and upon such full and final payment, such Lien shall be deemed to have been satisfied and shall be null and void and unenforceable for all purposes.

## ARTICLE III. CLASSIFICATION OF CLAIMS AND INTERESTS

### 3.1    Introduction.

All Claims except Administrative Claims and Priority Tax Claims are placed in the Classes set forth below in this Article III. The Plan contemplates separate Classes of Claims for voting and distribution purposes. To the extent a Class contains one or more subclasses, each such subclass is deemed to be a separate Class for all purposes under the Bankruptcy Code and the Plan.

Except for the unclassified Claims discussed in Article II above, Section 3.2 of the Plan sets forth a designation of Classes of all Claims in accordance with Bankruptcy Code section 1122(a). A Claim is classified in a particular Class only to the extent any portion of the Claim qualifies within the description of the Class and is classified in a different Class to the extent any portion of the Claim qualifies within the description of that different Class. If a Claim is acquired or transferred, the Claim shall be placed in the Class in which it would have been placed if it were owned by the original Holder of such Claim. A Claim is also placed in a particular Class for the purpose of receiving Distributions only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, satisfied or released before the Effective Date.

17

**3.2**    **Classification of Claims and Interests.**

(a)    Class 1: Allowed Other Priority Claims (Unimpaired)

(b)    Class 2: Allowed Secured Claim of the DIP Lender (Impaired)

(c)    Class 3: Allowed Secured Claims of the Prepetition Secured Parties (Impaired)

Class 3(a): Allowed Secured Claims of the Bridge Note Secured Parties

Class 3(b): Allowed Secured Claims of the Bridge Loan Lender

Class 3(c): Allowed Secured Claims of the MTI Secured Parties

(d)    Class 4: Allowed Secured Claims of Regions Bank (Unimpaired)

(e)    Class 5: Allowed Other Secured Claims (Unimpaired)

(f)    Class 6: Allowed General Unsecured Claims (Impaired)

(g)    Class 7: Interests in JP (Impaired)

## ARTICLE IV. TREATMENT OF CLASSES OF CLAIMS AND INTERESTS

Other than as specifically set forth herein, the treatment of and consideration to be received by holders of Claims pursuant to this Article III shall be in full satisfaction, settlement, release and discharge of such holder's respective Claim or Interest. Except as expressly set forth herein or in the Confirmation Order, such discharge shall not affect the liability of any other entity on, or the Assets of any other entity encumbered to secure payment of, any such Claim or Interest; nor shall it affect the Reorganized Debtors' obligations pursuant to this Plan.

**4.1**    **Class 1: Other Priority Claims.**

Class 1 Claims are Unimpaired.

Class 1 consists of all Allowed Other Priority Claims. In full satisfaction of their Allowed Class 1 Claims, each Holder of such Allowed Claims shall receive either (a) if Class 1 has accepted the Plan, deferred cash payments of a value, as of the Effective Date of the Plan, equal to the amount of such Allowed Claims; or (b) if Class 1 has not accepted the Plan, cash on the Effective Date of the Plan equal to the allowed amount of such Claim, unless the Holder of an Allowed Class 1 Claim agrees to accept different treatment. Notwithstanding the foregoing, Allowed Other Priority Claims entitled to priority under sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code shall be paid in full in cash on the Effective Date or, if such Claim is not an Allowed Claim as of the Effective Date, within thirty (30) days after such Claim becomes an Allowed Claim, unless the Holder of such Claim agrees to accept different treatment.

18

**4.2    Class 2: Allowed Secured Claim of the DIP Lender.**

The Class 2 Claim is Impaired.

Class 2 consists of the Allowed Secured Claim of the DIP Lender. In full satisfaction of the DIP Lender's Allowed Secured Claim, which shall be Allowed in an amount equal to the sum of (i) all unpaid principal, interest, charges, and all other obligations under the DIP Facility outstanding on the Effective Date, (ii) all reasonable fees and expenses (including, without limitation, the fees and expenses of the DIP Lender that are owed pursuant to the DIP Facility), and (iii) any other charges that are owed to the DIP Lender, the DIP Lender shall receive (x) a lump sum payment in an amount equal to the amount of its Allowed Secured Claim that exceeds $25,000,000.00, paid from the Grants, and (y) assumption of up to $25,000,000.00 of the Debtors' DIP Facility obligations by the Exit Lender.

From and after the Effective Date, the DIP Lender shall, at the sole cost and expense of the Reorganized Debtors, take all action reasonably necessary and requested by the Reorganized Debtors to confirm the removal of any claims, security interests, and Liens that it holds in its capacity as DIP Lender, on the properties or assets of the Debtors or the Reorganized Debtors.

**4.3    Class 3: Allowed Secured Claims of the Prepetition Secured Parties.**

Class 3 Claims are Impaired.

The Class 3 Claims consist of (1) the Allowed Class 3(a) Claims of the Bridge Note Secured Parties, which are Allowed in the amount of $8,760,250.00 ("Allowed Class 3(a) Claim"), (2), the Allowed Class 3(b) Claims of the Bridge Loan Lender, which are Allowed in the amount of $3,760,435.67 ("Allowed Class 3(b) Claim"), and (3) the Allowed Class 3(c) Claims of the MTI Secured Parties, which are Allowed in the amount of $74,981,756.75 ("Allowed Class 3(c) Claim", and collectively with the Allowed Class 3(a) Claim and the Allowed Class 3(b) Claim, the "Allowed Class 3 Claims").  The Allowed Class 3 Claims shall constitute Allowed Claims on the Effective Date and, for the avoidance of doubt, on and after the Effective Date shall not be subject to the claims reconciliation process or further disallowance, reduction, disgorgement, or expungement.

In full satisfaction of their Allowed Class 3 Claims (but not including the corresponding Prepetition Secured Creditor Deficiency Claims, which claim shall be classified as a Class 6 Allowed General Unsecured Claim and shall receive the treatment provided for Class 6 Allowed General Unsecured Claims), the Prepetition Secured Parties shall receive the following (collectively, the "Class 3 Distributable Assets"): (i) a lump sum payment of $2,500,000.00 paid on the Effective Date (to the extent not available from Cash on hand with the Debtors, to be funded from the Exit Funding Amount) (the "Class 3 Cash Distribution"); (ii) unsecured promissory notes in the aggregate amount of $7,500,000.00 (the "Class 3 Senior Notes"), which in respect of the Allowed Class 3(a) Claims and Allowed Class 3(c) Claims shall be issued pursuant to the Class 3 Senior Note Issuance Agreement; and (iii) unsecured promissory notes in the aggregate principal amount of $10,000,000.00 (the "Class 3 Junior Notes"), which in respect of the Allowed Class 3(a) Claims and Allowed Class 3(c) Claims shall be issued pursuant to the Class 3 Junior Note Issuance Agreement.

Following entry of the Confirmation Order, holders of Allowed Class 3 Claims shall have sixty (60) days to supply the Class 3 Note Agent with the necessary forms and documentation to permit the distributions described herein. Submission of the required forms is necessary for the beneficial holder of a Class 3(c) Claim to be deemed an Eligible Bondholder. Failure to submit the required forms timely shall forever bar such holder from receiving any recovery under the Plan.

The Class 3 Senior Notes shall accrue interest, of which shall be added to the principal, at the rate of 5.0% per annum and be paid as follows: (1) for the first 60 months after the Effective Date (the "PIK Period"), the Class 3 Senior Notes shall be interest only, and interest shall be accrued and paid in kind, with all accrued interest capitalized and added to the outstanding principal balance of the Class 3 Senior Notes on a monthly basis; (2) commencing on the first day of the month following the PIK Period, and continuing monthly thereafter until the maturity date, the Reorganized Debtors shall make cash payments of principal and interest sufficient to fully amortize the then-outstanding principal balance of the Class 3 Senior Notes over a twenty (20) year amortization schedule; (3) the Class 3 Senior Notes shall have a maturity date on the fifteenth (15th) anniversary of the Effective Date, at which time all outstanding principal and accrued interest shall become due and payable in full in lump-sum. The Class 3 Senior Notes shall be pre-paid by (i) 50% of the sale proceeds, net of customary closing costs, of the Reorganized Debtors' sale or exchange of the Reorganized Debtors' interests in the Taylor Road Property within five (5) business days following the closing of any such transaction, and (ii) 20% of the net recovery available to the Reorganized Debtors pursuant to the BCBS Funding Agreement from the BCBS Litigation (collectively, the "Special Recoveries"). Within ninety (90) days following the Effective Date, the Reorganized Debtors will hire a broker to market the Taylor Road Property. The Reorganized Debtors shall consult with the Master Trustee, Bridge Noteholder Representative and Bridge Loan Lender as to the status of the Taylor Road Property marketing and sale process. The Class 3 Note Agent, and upon request any holder of Class 3 Senior Notes, shall receive the same reporting as provided to the lenders under the Exit Facility.

The Class 3 Junior Notes shall accrue interest, of which shall be paid in kind, capitalized, and added to the principal semi-annually, at the rate of 5.0% per annum, and have a maturity date on the fifteenth (15th) anniversary of the Effective Date, and upon such maturity, any unpaid principal or accrued interest remaining with respect to the Class 3 Junior Notes shall be automatically deemed fully satisfied, discharged, and extinguished without any further action by any party. The payment of interest and principal on the Class 3 Junior Notes shall only commence after satisfaction of the Exit Facility (as may be refinanced) and the Class 3 Senior Notes in full, and shall be paid exclusively from any amount of Special Recoveries remaining (after payment of the Class 3 Senior Notes) and from 20% of Excess Net Cash Flow of the Reorganized Debtors. Subject to the foregoing and to the extent of Special Recoveries remaining after payment of the Class 3 Senior Notes and to the extent of Excess Net Cash Flow of the Reorganized Debtors, the Reorganized Debtors shall make payment on the Class 3 Junior Notes semi-annually on or before the sixtieth (60th) day following June 30th and December 31st (or the first business day thereafter if the sixtieth day is not a business day). The Class 3 Note Agent, and upon request any holder of Class 3 Junior Notes, shall receive the same reporting as provided to the lenders under the Exit Facility.

The allocation of distributions of the Class 3 Distributable Assets shall be as follows:

20

- Allowed Class 3(a) Claims: each Bridge Noteholder shall receive its pro rata share of 21.33% of the Class 3 Distributable Assets (i.e., $533,250.00 of the Class 3 Cash Distribution, $1,599,750.00 in principal amount of the Class 3 Senior Notes, and $2,133,000.00 in principal amount of the Class 3 Junior Notes). The foregoing distribution together with the treatment of the Bridge Note Deficiency Claim as a General Unsecured Claim shall be in satisfaction of the Bridge Noteholders' Allowed Class 3(a) Claims.

- Allowed Class 3(b) Claims: the Bridge Loan Lender shall receive 8.67% of the Class 3 Distributable Assets (i.e., $216,750.00 of the Class 3 Cash Distribution, $650,250.00 in principal amount of the Class 3 Senior Notes, and $867,000.00 in principal amount of the Class 3 Junior Notes). The foregoing distribution together with the treatment of the Bridge Loan Deficiency Claim as a General Unsecured Claim shall be in satisfaction of the Bridge Loan Lender's Allowed Class 3(b) Claims.

- Allowed Class 3(c) Claims: Eligible Bondholders and the Series 2019 Lender shall each receive its pro rata share of 70% of the Class 3 Distributable Assets (i.e., $1,750,000.00 of the Class 3 Cash Distribution, $5,250,000.00 in principal amount of the Class 3 Senior Notes, and $7,000,000.00 in principal amount of the Class 3 Junior Notes). The foregoing distribution together with the treatment of the MTI Debt Deficiency Claim as a General Unsecured Claim shall be in satisfaction of the Bondholders' and Series 2019 Loan Lender's Allowed Class 3(a) Claims.

To effectuate the charging lien under the Bridge Note Documents and MTI Documents, respectively, an amount equal to the total of (x) the Allowed Class 3(a) Claim attributable to the Bridge Noteholder Representative, (y) the portion of the Allowed Class 3(c) Claim attributable to the fees and expenses of the Master Trustee and the Series 2015 Trustee, and (z) the post-petition fees and expenses of the Bridge Noteholder Representative, Master Trustee, and Series 2015 Trustee (the "Legacy Agent Fees") shall be payable ahead of all distributions of Class 3 Distributable Assets (and the payments thereunder and any other proceeds thereon) to the Bondholders, Bridge Noteholders, and Series 2019 Lender (and their respective successors and assigns), who will agree in the definitive documents for the Class 3 Senior Notes and Class 3 Junior Notes that the Class 3 Note Agent may offset any payments received from the Reorganized Debtors or recoveries from the Reorganized Debtors in order to satisfy the Legacy Agent Fees ahead of any principal and interest paid to the Bondholders, Bridge Noteholders, and Series 2019 Lender (and their respective successors and assigns); for the avoidance of doubt, the foregoing shall not affect distributions to the Bridge Loan Lender on account of its Allowed Class 3(b) Claims. The distribution of the Class 3 Distributable Assets in accordance with this paragraph shall be in satisfaction of all Allowed Class 3 Claims of the Bridge Noteholder Representative, the Master Trustee, and the Series 2015 Trustee.

The Class 3 Note Agent may reserve $50,000.00 from the Class 3 Cash Distribution allocable to Class 3(a) Claims and Class 3(c) Claims to fund a reserve account for the costs of administering the Class 3 Senior Notes and Class 3 Junior Notes.

In order to consummate the Plan and the substantive consolidation of the Medical Clinic Board assets pursuant to the Plan, the Confirmation Order shall authorize and direct that, on the Effective Date, the Bridge Noteholder Representative, Bridge Loan Lender, Master Trustee and

21

Bond Trustee shall release all of their Liens and security interests on the Debtors' Assets and Assets of the Medical Clinic Board that are being consolidated with the Assets of JHC pursuant to the terms of the Plan. The Debtors shall prepare and on and after the Effective Date are authorized to file all such termination statements, releases, instruments of satisfaction or other documents, and the Debtors shall pay all filing and recording fees for same.

**4.4     Class 4: Allowed Secured Claims of Regions Bank.**

Class 4 Claims are Unimpaired.

Class 4 consists of the Allowed Secured Claims of Regions Bank. In full satisfaction of its Class 4 Claims, Regions Bank shall retain all of its liens and security interests on the Debtors' Assets and Assets of the Medical Clinic Board that may, pursuant to this Plan, be consolidated with the Assets of JHC, to the same extent, validity, and priority existing as of the Petition Date, and shall further retain all of its rights and remedies under the terms of the Regions Non-Debtor Loans, including under the terms and conditions of the JHC guarantees of such loans. The Regions Non-Debtor Loans shall continue to be paid by the non-Debtor obligors of such loans (Jackson Surgery Center, LLC ("JSC"), and Jackson Imaging Center, LLC ("JIC"), respectively) pursuant to the terms and conditions of all applicable loan documents and the leases between the Medical Clinic Board and JSC and JIC, respectively, which shall be assumed. Nothing in this Plan, or in the Confirmation Order, shall impact, modify, or affect in any way the rights and liabilities of any party to the Regions Non-Debtor Loans, including the rights of Regions Bank under, and the first priority of, the Regions Mortgages on the real property on which JSC and JIC operate and on their respective leasehold interests. All rights and remedies of Regions Bank related to, arising from or associated with the Regions Non-Debtor Loans will be retained and preserved in full; provided, however, that Regions waives any default that may exist on the Regions Non-Debtor Loans solely based on JHC's filing of its petition to commence these Chapter 11 Cases.

**4.5     Class 5: Allowed Other Secured Claims.**

Class 5 Claims are Unimpaired.

Class 5 consists of all Allowed Other Secured Claims against the Debtors. In full satisfaction of their Class 5 Claims, except to the extent that a Holder of an Allowed Other Secured Claim agrees to a less favorable treatment of its Allowed Claim, each Holder of an Allowed Other Secured Claim shall receive at the option of the Debtors or Reorganized Debtors, as applicable (i) payment in full in cash, (ii) the return of the applicable collateral in satisfaction of the Allowed amount of such Other Secured Claim; or (iii) such other treatment sufficient to render such Allowed Other Secured Claim as Unimpaired. Notwithstanding the foregoing, to the extent that any Class 5 Claims arise as a result of the substantive consolidation with the Medical Clinic Board, such claims may be treated as either Unimpaired or Impaired pursuant to Section 5.2 of the Plan.

**4.6     Class 6: Allowed General Unsecured Claims.**

Class 6 Claims are Impaired.

Class 6 consists of all Allowed General Unsecured Claims against the Debtors. Class 6A consists of all Allowed General Unsecured Claims against JHC, including the Prepetition Secured

22

Creditor Deficiency Claims. The Prepetition Secured Creditor Deficiency Claims shall constitute Allowed Claims (the "Allowed Deficiency Claims") on the Effective Date and shall not be subject to the claims reconciliation process or further disallowance, reduction, disgorgement, or expungement. The Allowed Deficiency Claims shall be treated the same as any other Allowed Class 6 Claim, except as provided below. Class 6B consists of all Allowed General Unsecured Claims against JP.

In full satisfaction of their Class 6 Claims, the respective Holders of Class 6A and Class 6B Claims shall receive 100% of the proceeds of the GUC Trust after payment of all fees, costs, and expenses of the GUC Trust, as set forth in Section 4.6.1 of the Plan. The Class 6A and 6B creditors shall be combined and receive, from the GUC Trust Assets, the following:

- The first $1,000,000.00 of Distributions from the GUC Trust to Holders of Allowed General Unsecured Claims shall be made Pro Rata to each Holder of such Claims, including the Holders of Allowed Deficiency Claims.

- The next $2,000,000.00 of Distributions from the GUC Trust to Holders of Allowed General Unsecured Claims shall exclude Holders of Allowed Deficiency Claims.

- All subsequent Distributions from the GUC Trust to Holders of Allowed General Unsecured Claims shall be made Pro Rata to each Holder of such Claims, including the Holders of Allowed Deficiency Claims.

Distributions may be made at such times as the GUC Trustee may determine, in his sole discretion. The GUC Trustee shall use the Reorganized Debtors as the Disbursing Agent for any GUC Trust distributions.

Furthermore, in the event the Reorganized Debtors reach a settlement or obtain and execute a judgment in connection with their claims against BCBS prior to the fifth (5th) anniversary of the Effective Date that generates net proceeds in excess of the amounts necessary to satisfy the Exit Facility, the Class 3 Senior Notes, and the Class 3 Junior Notes, and such amounts are actually applied in full satisfaction of all amounts due thereunder, then such excess amount up to $4,000,000.00 shall be distributed by the Reorganized Debtors to Holders of Allowed Class 6 Claims as soon as reasonably practicable following the completion of the claim reconciliation process for Class 6 Claims.

The maximum amount of Distributions a Class 6 Holder may receive under the Plan is the Allowed amount of each such Holder's Class 6 Claim.

### 4.6.1    Establishment of the GUC Trust.

On the Effective Date, the Debtors and the GUC Trustee shall sign the GUC Trust Agreement, which shall be drafted by counsel for the Creditors' Committee and shall be in form and substance reasonably acceptable to the Debtors, the Creditors' Committee, the Master Trustee, Bridge Noteholder Representative, the Bridge Loan Lender, and the DIP Lender.

The GUC Trustee shall be selected by the Creditors' Committee, subject to approval by the Debtors, the Creditors' Committee, the Master Trustee, Bridge Noteholder Representative, the

23

Bridge Loan Lender, and the DIP Lender, such approval not to be unreasonably withheld. The GUC Trustee shall only be removed upon a Final Order of the Bankruptcy Court determining that the GUC Trustee engaged in gross negligence or willful misconduct.

The GUC Trust shall then be established to receive (i) the GUC Fund Loan and (ii) the GUC Trust Causes of Action, the proceeds of which shall be distributed in accordance with the Plan. On the Effective Date, the Debtors shall contribute the GUC Trust Assets to the GUC Trust. In no event shall any GUC Trust Assets of any kind be returned by, or otherwise transferred from, the GUC Trust to any Debtor, except for the repayment of the GUC Fund Loan to the Reorganized Debtors; provided, however, that following the Effective Date, the Reorganized Debtors and the GUC Trustee may agree, but are not required to, treat any GUC Trust Cause of Action as a Retained Cause of Action, and vice versa. The GUC Trust shall repay the GUC Fund Loan solely from proceeds of the GUC Trust Causes of Action, with the net proceeds of such causes of action (x) being first applied to repay $250,000.00 of the GUC Fund Loan to the Reorganized Debtors, and (y) being thereafter shared 50/50 between the Reorganized Debtors and the GUC Trust until the remaining $250,000.00 balance of the GUC Fund Loan has been paid in full, after which any remaining net proceeds of the GUC Trust Causes of Action shall belong 100% to the GUC Trust. For the avoidance of doubt, the net proceeds of the GUC Trust Causes of Action shall be the sole source of repayment to the Reorganized Debtors of the GUC Fund Loan, and the Reorganized Debtors shall have no recourse against the GUC Trust for repayment of that loan other than against the net proceeds of the GUC Trust Causes of Action as provided above.

The GUC Trust shall qualify as a liquidating trust as described in Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, and shall be treated as a grantor trust for United States federal income tax purposes. The GUC Trustee shall have the authority to manage the day-to-day operations of the GUC Trust, including, without limitation, by disposing of the assets of the GUC Trust, calculating distributions, paying taxes and such other matters as more particularly described herein and in the GUC Trust Agreement. The reasonable expenses of the GUC Trust, including the reasonable expenses of the GUC Trustee and its representatives and professionals, will be satisfied solely from the GUC Fund Loan or the proceeds of the GUC Trust Causes of Action.

On the Effective Date, the GUC Trust Assets shall vest automatically in the GUC Trust. The Plan shall be considered a motion pursuant to sections 105, 363 and 365 of the Bankruptcy Code for such relief. The transfer of the GUC Trust Assets to the GUC Trust shall be made for the benefit and on behalf of the holders of Allowed General Unsecured Claims in Class 6. The assets comprising the GUC Trust Assets will be treated for tax purposes as being transferred by the Debtors to the Holders of Class 6 Claims pursuant to the Plan in exchange for their Allowed Claims and then by such Holders to the GUC Trust in exchange for the interests in the GUC Trust. The Holders of Allowed General Unsecured Claims shall be treated as the grantors and owners of the GUC Trust. Upon the transfer of the GUC Trust Assets, the GUC Trust shall succeed to all of the Debtors' rights, title and interest in the GUC Trust Assets, and the Debtors will have no further interest in or with respect to the GUC Trust Assets. In pursuing the GUC Trust Causes of Action, the GUC Trustee shall be entitled to the tolling provisions provided under section 108 of the Bankruptcy Code and shall succeed to the Debtors' rights with respect to the time periods in which any of the GUC Trust Causes of Action may be brought under section 546 of the Bankruptcy Code. The GUC Trust Agreement will require consistent valuation of the GUC Trust Assets by the

24

Reorganized Debtors, the GUC Trustee, and the beneficiaries of the GUC Trust for all U.S. federal income tax and reporting purposes. The GUC Trust will not be permitted to receive or retain cash in excess of a reasonable amount to meet claims and contingent liabilities or to maintain the value of the GUC Trust Assets.

The privileges of the Debtors associated with the GUC Trust Causes of Action (including, but not limited to attorney client privilege) shall be shared with the GUC Trustee. The privileges are only shared to the extent necessary for the GUC Trust to pursue the GUC Trust Causes of Action. The privileges for the Retained Causes of Action are not shared with the GUC Trust. The GUC Trust cannot waive a shared privilege absent the consent of the Reorganized Debtors. For the avoidance of doubt nothing herein or in any document in furtherance of this settlement shall waive or otherwise limit attorney-client or other privileges available to the Debtors or Reorganized Debtors. To the extent that documents or testimony are requested from the Debtors or Reorganized Debtors by any person, including the GUC Trustee, which is protected by a privilege, or which if shared could constitute a waiver of a privilege, the Debtors or Reorganized Debtors shall provide or share such documents or testimony in their sole discretion, only the Debtors or Reorganized Debtors shall have the ability to waive such attorney-client or other privileges.

The GUC Trustee shall not subpoena or seek formal discovery from the Reorganized Debtors or any of their managers, members, directors, officers, employees or representatives. From and after the Effective Date, the Reorganized Debtors, and their managers, members, directors, officers, employees, agents, and professionals shall provide reasonable cooperation during normal business hours in responding to information requests of the GUC Trustee regarding the GUC Trust Causes of Action and related matters; provided, however, that such cooperation shall not exceed five (5) hours per month for six (6) months and shall not unreasonably interfere with or disrupt the operations, business, or affairs of the Reorganized Debtors, nor cause the Reorganized Debtors to incur unreasonable fees, costs or expenses.

The GUC Trustee and the Reorganized Debtors shall not subpoena or seek formal discovery from the DIP Lender, the Exit Lender, the Prepetition Secured Creditors, any beneficial Holders of the MTI Debt, any beneficial Holders of the Bridge Notes, or any Related Persons of the foregoing. No DIP Lender, Exit Lender, Prepetition Secured Creditor, beneficial Holder of the MTI Debt, or beneficial Holder of the Bridge Notes, or any of their Related Persons, shall be required to provide any information, documents or assistance to the Reorganized Debtors or the GUC Trustee in respect of investigation, prosecution, or settling any Retained Causes of Action or GUC Trust Causes of Action.

Except as otherwise ordered by the Bankruptcy Court, the expenses of the GUC Trust on or after the Effective Date shall be paid in accordance with the GUC Trust Agreement without further order of the Bankruptcy Court.

The GUC Trustee shall file annual reports regarding the liquidation or other administration of property comprising the GUC Trust Assets, the distributions made pursuant to it, and other matters required to be included in such report in accordance with the GUC Trust Agreement. In addition, the GUC Trust will file tax returns as a grantor trust pursuant to United States Treasury Regulation Article 1.671-4(a). The Reorganized Debtors shall prepare and file all post-confirmation quarterly reports, and the GUC Trustee shall reasonably cooperate with the

Reorganized Debtors to provide all information relating to the GUC Trust necessary for Reorganized Debtors' preparation of post-confirmation quarterly reports.

The interests in the GUC Trust are not intended to constitute "securities." To the extent such interests are deemed to be "securities," the issuance of such interests shall be exempt from registration under the Securities Act and any applicable state and local laws requiring registration of securities pursuant to section 1145 of the Bankruptcy Code or another available exemption from registration under the Securities Act. If the GUC Trustee determines, with the advice of counsel, that the GUC Trust is required to comply with registration or reporting requirements under the Securities Act, the Exchange Act or other applicable law, then the GUC Trustee shall take any and all actions to comply with such registration and reporting requirements, if any, and to file reports with the SEC to the extent required by applicable law.

The GUC Trust shall be dissolved as soon as practicable after the date that is the earlier to occur of: (a) the distribution of all proceeds from the GUC Trust Assets available for distribution pursuant to the Plan, or (b) the determination of the GUC Trustee that the continued prosecution of the GUC Trust Causes of Action is not likely to yield sufficient additional proceeds to justify further pursuit.

To the extent that the terms of the Plan with respect to the GUC Trust are inconsistent with the terms set forth in the GUC Trust Agreement, then the terms of the GUC Trust Agreement shall govern.

### 4.6.2    Powers.

The GUC Trustee shall administer the GUC Trust and its assets in accordance with this Plan and the GUC Trust Agreement. From and after the Effective Date and continuing through the date of entry of a Final Decree, the GUC Trustee shall have the authority to retain such personnel or professionals (including, without limitation, legal counsel, financial advisors or other agents) as it deems appropriate and compensate such personnel and professionals as it deems appropriate in accordance with the Plan, all without prior notice to or approval of the Bankruptcy Court. Professionals and personnel retained or employed by the GUC Trust or the GUC Trustee need not be disinterested as that term is defined in the Bankruptcy Code, and may include Professionals who had been employed by the Creditors' Committee or the Debtors.

The powers of the GUC Trustee shall include any and all powers and authority necessary or helpful to implement and carry out the provisions of the Plan and any applicable orders of the Bankruptcy Court relating to the GUC Trust Assets. The GUC Trustee shall be the representative of the Debtors' Estates with respect to the GUC Trust Assets appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.

Without limiting the foregoing, the GUC Trustee shall (a) hold, liquidate, invest, supervise, and protect the GUC Trust Assets; ; (b) investigate, prosecute, or resolve the GUC Trust Causes of Action, as appropriate; (c) pay all reasonable fees, expenses, debts, charges, and liabilities of the GUC Trust; (d) file tax returns for, pay taxes of (if any), and represent the interests of the GUC Trust before any taxing authority in all matters, including any action, suit, proceeding, or audit; (e) take any action necessary to administer the GUC Trust; and (f) file appropriate certificates of

26

dissolution of the GUC Trust, if any, pursuant to applicable state or provincial law.

The GUC Trustee shall not assign, sell or transfer any GUC Trust Causes of Action, judgments or recoveries related thereto.

### 4.6.3    GUC Trust Oversight Committee.

The GUC Trust Oversight Committee shall have the powers and authority set forth in the Plan and the GUC Trust Agreement, including (i) to select and designate a successor GUC Trustee, provided, however, that such selection and designation of a successor GUC Trustee shall be subject to the approval of the Debtors, the Reorganized Debtors, the DIP Lender and Exit Lender, as applicable, which approvals shall not be unreasonably withheld, and shall be subject to Bankruptcy Court approval; and (ii) to approve the GUC Trustee's retention of professionals.

### 4.6.4    Retention of GUC Trust Professionals.

The GUC Trustee shall have the right to retain the services of attorneys, accountants, and other professionals that, in the discretion of the GUC Trustee, are necessary to assist the GUC Trustee in the performance of its duties and prosecution of the GUC Trust Causes of Claims and administration of the other GUC Trust Assets; provided, however, that the GUC Trust Committee shall have consented to the retention of any professionals retained by the GUC Trustee. The reasonable fees and expenses of such professionals shall be paid only upon the monthly submission of statements to the GUC Trustee. The payment of the reasonable fees and expenses of the GUC Trustee's retained professionals shall not be subject to the approval of the Bankruptcy Court.

### 4.6.5    Indemnification, Insurance, and Liability Limitation.

The GUC Trustee and all professionals retained by the GUC Trustee, each in their capacities as such, shall be indemnified by the GUC Trust to the fullest extent permitted by applicable law from any claims or Causes of Action relating to or arising in connection with the performance of its duties hereunder or under the GUC Trust Agreement, except for Claims and Causes of Action related to any act or omission that is determined by Final Order of a court of competent jurisdiction to have constituted fraud, willful misconduct, or gross negligence. The GUC Trustee may obtain, at the expense of the GUC Trust and in accordance with the GUC Trust Agreement, commercially reasonable liability or other appropriate insurance with respect to the foregoing indemnification obligations. Any such insurance shall be paid solely from the GUC Trust Assets. The GUC Trustee may rely upon all written information previously generated by the Debtors.

Notwithstanding anything to the contrary contained herein, the GUC Trustee in its capacity as such, shall have no liability whatsoever to any party for the liabilities and/or obligations, however created, whether direct or indirect, in tort, contract, or otherwise, of the GUC Trust.

### 4.6.6    Tax Consequences in Relation to the GUC Trust.

As of the Effective Date, the GUC Trust will be established for the benefit of the Holders of certain Allowed unsecured Claims. The tax consequences of the Plan in relation to the GUC

27

Trust and the beneficiaries thereof are subject to uncertainties due to the complexity of the Plan and the lack of interpretative authority regarding certain changes in the tax law.

Allocations of taxable income of the GUC Trust (other than taxable income allocable to any claims reserves) among Holders of Claims will be determined by reference to the manner in which an amount of cash equal to such taxable income would be distributed (were such cash permitted to be distributed at such time) if, immediately prior to such deemed distribution, the GUC Trust had distributed all of its assets (valued at their tax book value) to the holders of the beneficial interests in the GUC Trust, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the GUC Trust. Similarly, taxable loss of the GUC Trust will be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating distribution of the remaining trust assets.

The tax book value of the trust assets for this purpose will equal their fair market value on the Effective Date, adjusted in accordance with tax accounting principles prescribed by the Internal Revenue Code, applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements. Uncertainties as to federal income tax consequences of the Plan may arise due to the inherent nature of estimates of value that will impact tax liability determinations.

For federal income tax purposes, it is intended that the GUC Trust be classified for federal income tax purposes as a "liquidating trust" within the meaning of Treasury Regulations Section 301.7701-4(d) and as a "grantor trust" within the meaning of sections 671 through 679 of the Internal Revenue Code. The Internal Revenue Service, in Revenue Procedure 94–45, 1994.28 I.R.B. 124, sets forth the general criteria for obtaining an Internal Revenue Service ruling as to the grantor trust status of a liquidating trust under a chapter 11 plan. The GUC Trust has been structured with the intention of complying with such general criteria. Pursuant to the Plan, and in conformity with Revenue Procedure 94-45, all parties to the GUC Trust (including, without limitation, the Debtors, the GUC Trustee, and the holders of beneficial interests in the GUC Trust) will be required to treat the transfer of the GUC Trust Assets to the GUC Trust as (1) a transfer of the GUC Trust Assets (subject to any obligations relating to those assets) directly to the holders of Allowed Claims receiving interests in the GUC Trust (other than to the extent any of the GUC Trust Assets are allocable to Disputed Claims), followed by (2) the transfer by such holders to the GUC Trust of the GUC Trust Assets in exchange for interests in the GUC Trust. Accordingly, except in the event of contrary definitive guidance, holders of Allowed Claims receiving interests in the GUC Trust (i.e., the beneficiaries of the GUC Trust) would be treated for U.S. federal income tax purposes as the grantors and owners of their respective share of the GUC Trust Assets transferred to the GUC Trust (other than such GUC Trust Assets as are allocable to Disputed Claims).

While the following discussion assumes that the GUC Trust will be treated as a liquidating trust for federal income tax purposes, no ruling has been requested from the Internal Revenue Service concerning the tax status of the GUC Trust as a grantor trust. Accordingly, there can be no assurance that the Internal Revenue Service would not take a contrary position to the classification of the GUC Trust as a grantor trust. If the Internal Revenue Service were to

28

successfully challenge such classification, the federal income tax consequences to the GUC Trust and the beneficiaries thereof could materially vary from those discussed herein.

The GUC Trustee shall, in its business judgment, make continuing best efforts not to unduly prolong the duration of the GUC Trust. All GUC Trust Assets held by the GUC Trust on the Effective Date shall be considered for federal income tax purposes to have been distributed by the Debtors on a Pro Rata basis to Holders of Allowed General Unsecured Claims and then contributed by such Holders to the GUC Trust in exchange for interests in the GUC Trust. Thus, such Holders (and any subsequent holders of interests in the GUC Trust) will be treated as the direct owners of an undivided beneficial interest in the assets of the GUC Trust for all federal income tax purposes. Accordingly, each Holder of an interest in the GUC Trust will be required to report on its federal income tax return(s) the Holder's allocable share of all income, gain, loss, deduction or credit recognized or incurred by the GUC Trust.

The GUC Trustee shall be responsible for filing any required federal, state, and local tax returns for the GUC Trust. The Disbursing Agent shall comply with all withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all Distributions made on account of Allowed Claims shall be subject to any such withholding and reporting requirements. The Disbursing Agent shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements including, without limitation, requiring that, as a condition to the receipt of a Distribution, GUC Trust beneficiaries complete the appropriate IRS Form W-8 or IRS Form W-9, as applicable to each GUC Trust beneficiary. Notwithstanding any other provision of the Plan, (a) each GUC Trust beneficiary that is to receive a Distribution from the Disbursing Agent shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income and other tax obligations, on account of such Distribution, and (b) no Distribution shall be made to or on behalf of such GUC Trust beneficiary under the Plan unless and until such GUC Trust beneficiary has made arrangements satisfactory to the Disbursing Agent to allow it to comply with its tax withholding and reporting requirements. Any property to be distributed by the Disbursing Agent shall, pending the implementation of such arrangements, be treated as an undeliverable Distribution to be held by the Disbursing Agent, until such time as the Disbursing Agent, is satisfied with the GUC Trust beneficiary's arrangements for any withholding tax obligations.

**THE U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ARE COMPLEX. THE FOREGOING SUMMARY OF CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND ADVICE BASED UPON THE INDIVIDUAL CIRCUMSTANCES PERTAINING TO YOU. ALL HOLDERS OF CLAIMS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS AS TO THE U.S. FEDERAL, STATE, LOCAL, NON-U.S., NON-INCOME, AND OTHER TAX CONSEQUENCES OF THE PLAN, INCLUDING THE APPLICABILITY AND EFFECT OF ANY STATE, LOCAL, OR FOREIGN TAX LAWS, AND OF ANY CHANGE IN APPLICABLE TAX LAWS, THE RECOGNITION OF GAIN OR LOSS AND THE ALLOCATION OF CONSIDERATION RECEIVED IN SATISFACTION OF THEIR CLAIMS.**

**4.7     Class 7: Interests in JP.**

Class 7 Interests are impaired.

Class 7 consists of the Interests of JP. Pursuant to Section 5.5 of the Plan, all of the Interests of JP shall be cancelled as of the Effective Date and JHS shall be appointed the sole member of JP.

## ARTICLE V. MEANS OF IMPLEMENTATION OF THE PLAN

**5.1     The Exit Facility and Grants.**

Before the Effective Date, JHC shall obtain the following grants or commitments from the State of Alabama, Montgomery County, and/or the City of Montgomery: (i) approximately $65,000,000.00 to fund hospital operations and infrastructure needs, and to pay down the balance of the DIP Loan to $25,000,000.00 on the Effective Date (the "Grants"), with an additional $15,000,000.00 in grant commitments during the first three years after the Effective Date; (ii) commitments to raise $20,000,000.00 to fund improvements to hospital infrastructure within the first two years after the Effective Date; and (iii) sales tax abatement for five (5) years after the Effective Date. The Grant funds shall first be used to pay down the balance of the DIP Loan to $25,000,000.00. The Grant funds may not be used to repay, satisfy, or otherwise address any indebtedness incurred by JHC prior to November 1, 2025, nor may they be used to pay or settle claims arising from or related to such indebtedness.

On the Effective Date, the Exit Lender shall extend a secured exit loan facility to the Reorganized Debtors of $75,000,000.00 (the "Exit Facility") to be used by the Debtors in an amount of up to $50,000,000.00 for infrastructure and deferred maintenance needs of the Reorganized Debtors following exhaustion of the Grants, providing that no portion of the Exit Facility shall be used to pay or satisfy any obligations that arose prior to the Effective Date, other than the Exit Funding Amount. The Exit Facility shall include assumption of up to $25,000,000.00 of DIP Loans made by the DIP Lender under the DIP Facility and all amounts advanced by JIG to the Medical Clinic Board during the Chapter 11 Cases. The Exit Facility shall be secured by a first priority lien and security interest in the Debtors' Assets. Immediately following the Effective Date, the Reorganized Debtors shall pay monthly interest in cash at the rate of 10% per annum to the Exit Lender on the outstanding balance of the Exit Facility. In addition to monthly interest payments, the Reorganized Debtors shall commence making principal payments to the Exit Lender at such time and for so long as the Reorganized Debtors achieve positive operational cashflow, as set forth in the Exit Documents, which shall govern the specific requirements for payment of interest and repayment of principal. In the event of any conflict between this Section and the terms and provisions of the Exit Documents, which will be provided in the Plan Supplement, the Exit Documents shall control and govern, as provided in Section 13.15.2 of the Plan. The Exit Facility shall be due ten (10) years following the Effective Date with a balloon payment for the outstanding amounts owed on the Exit Facility. The Exit Facility shall be prepaid to the extent set forth in the BCBS Funding Agreement.

JHC will market and sell the Taylor Road Property, and the portion of the Exit Facility

30

constituting the assumed obligations and the Exit Funding Amount shall be prepaid with 50% of the net sale proceeds of the Reorganized Debtors' sale of the Taylor Road Property.

**5.2     Substantive Consolidation with the Medical Clinic Board.**

On the Effective Date of the Plan, and pursuant to sections 105(a), 1123(a)(5)(C), and 1123(b)(3) of the Bankruptcy Code, (i) the Debtor JHC and the Medical Clinic Board (together, the "*Consolidated Entities*") shall be, and hereby are, substantively consolidated for all purposes related to the Plan, including, without limitation, for purposes of confirmation and distribution to creditors, and (ii) creditors of the Medical Clinic Board shall be considered Creditors of the Plan and subject to the terms and provisions of the Plan.

On the Effective Date of the Plan: (a) all assets and liabilities of the Consolidated Entities shall be deemed merged and treated as though they are assets and liabilities of Debtor JHC, and all intercompany claims among the Consolidated Entities shall be eliminated for all purposes; (b) any obligations of one Consolidated Entity shall be deemed to be obligations of the consolidated estate, and any claims against any Consolidated Entity shall be deemed claims against the consolidated estate; (c) all guarantees of a Consolidated Entity of the obligations of the other Consolidated Entity shall be deemed discharged, released, and of no further force or effect; and (d) all transfers, setoffs, and transactions by or between the Consolidated Entities shall be deemed to have been made by, to, or for the benefit of the consolidated estate.

The Debtor JHC and the Medical Clinic Board are authorized to take any and all actions and execute any and all documents necessary or appropriate to effectuate the substantive consolidation provided for herein, including, without limitation, the transfer of assets and liabilities as required to give effect to the consolidation; provided, however, that no such action or document shall become effective unless and until the Effective Date occurs. The Confirmation Order shall contain deadlines and processes necessary or appropriate to effectuate the substantive consolidation provided herein, including but not limited to a deadline for creditors of the Medical Clinic Board to file proofs of claim and a process for the assumption or rejection of executory contracts and unexpired leases of the Medical Clinic Board.

Subject to the terms of the Plan, the Assets of the Medical Clinic Board shall be combined with the Assets of Debtor JHC subject to their existing liens and security interests, which shall be treated subject to the terms of the Plan. The Reorganized Debtors shall have ninety (90) days following the Effective Date to propose treatment (Impaired or Unimpaired) for any Class 5 Claims that arise from the substantive consolidation with the Medical Clinic Board. Holders of such claims, or the Reorganized Debtors, may request the Bankruptcy Court to propose a schedule to adjudicate such proposed treatment.

To the extent any Person asserts any Liens, Claims, Causes of Action, charges and/or other encumbrances, purchase rights, options or rights of first refusal against Assets of the Medical Clinic Board that vest in Debtor JHC pursuant to the Plan, via substantive consolidation or otherwise, (i) the Reorganized Debtors retain all rights to: (a) challenge the validity, priority, extent, or perfection of any asserted Liens, Claims, Causes of Action, charges and/or other encumbrances, purchase rights, options or rights of first refusal; (b) seek the recharacterization of any executory contract and unexpired lease as a disguised financing agreement, or the reverse

thereof; (c) seek a determination of the value of any collateral securing any asserted Liens, Claims, Causes of Action, charges and/or other encumbrances, purchase rights, options or rights of first refusal, (ii) the Person expressly retains all rights to make an election under section 1111(b) of the Bankruptcy Code, to the extent such election is applicable to such Person, notwithstanding the timeliness requirements of Bankruptcy Rule 3014, pursuant to any deadline established by the Bankruptcy Court, and (iii) the Reorganized Debtors retain all rights to (y) object to any election under section 1111(b) of the Bankruptcy Code, except as to timeliness under Bankruptcy Rule 3014; and (z) propose treatment of any such election. Any dispute or unresolved issues with respect to the foregoing shall be submitted to the Bankruptcy Court for adjudication, scheduling, and resolution based on the issues requiring resolution.

Notwithstanding the substantive consolidation of the Consolidated Entities for Plan purposes, nothing herein shall affect the legal and corporate existence of the Medical Clinic Board or the Debtor JHC, except as specifically provided in the Plan, nor shall substantive consolidation affect any obligations or liabilities of any entity other than the Consolidated Entities.

Within thirty (30) days following the Effective Date, the Reorganized Debtors shall file and serve a Notice of MCB Proof of Claim Bar Date upon all known creditors of the Medical Clinic Board. The bar date for creditors of the Medical Clinic Board to file proofs of claim will be set for the ninetieth (90th) day following the Effective Date (the "MCB Bar Date"). Any creditor of the Medical Clinic Board that fails to file a proof of claim by the MCB Bar Date shall be forever barred, estopped, and enjoined from asserting such claim against the Reorganized Debtors, the Estates, the Medical Clinic Board, or any consolidated assets.

Within ninety (90) days following the Effective Date, the Reorganized Debtors shall file and serve the List of MCB Executory Contracts to be Assumed and the List of MCB Executory Contracts to be Rejected, which shall identify all executory contracts and unexpired leases that the Reorganized Debtors will assume and reject, respectively, and the related cure amounts owing under executory contracts and unexpired leases proposed to be assumed. Any objection to a proposed assumption, or any related cure amount, must be filed, served and actually received by the Reorganized Debtors on or prior to the thirtieth (30th) day following the service of the List of MCB Executory Contracts to be Assumed and the List of MCB Executory Contracts to be Rejected. Any counterparty to an executory contract or unexpired lease with the Medical Clinic Board that fails to object timely to the proposed assumption or cure amount will be deemed to have consented to such matters and will be deemed to have forever released and waived any objection to such proposed assumption and cure amount. The filing and service of the List of MCB Executory Contracts to be Assumed and the List of MCB Executory Contracts to be Rejected shall not obligate the Reorganized Debtors to assume any executory contract or unexpired lease set forth therein.

In the event of a dispute regarding the amount of any cure, the ability of the applicable Reorganized Debtor to provide "adequate assurance of future performance," or any other matter pertaining to assumption or cure required by § 365(b)(1) of the Bankruptcy Code, the Reorganized Debtors may elect, within thirty (30) days of the entry of such Final Order by the Bankruptcy Court resolving the dispute, to not assume the executory contract or unexpired lease at issue, and instead, will be deemed to reject the executory contract or unexpired lease.

32

If a Person believes that it is a party to an executory contract or unexpired lease with the Medical Clinic Board that is not listed on the List of MCB Executory Contracts to be Assumed or the List of MCB Executory Contracts to be Rejected, then such Person must, no later than thirty (30) days following the service of the List of MCB Executory Contracts to be Assumed and the List of MCB Executory Contracts to be Rejected, file with the Bankruptcy Court and serve on counsel for the Reorganized Debtors a written document with sufficient evidence to establish the existence of the unidentified executory contract and the basis for asserting that an executory contract exists and the amount of any cure payment asserted to be owing in connection with the assumption of such contract.

All claims, executory contracts, and unexpired leases filed or submitted in accordance with that process will be treated under the applicable terms and provisions of the Plan, Confirmation Order, and the Bankruptcy Code.

### 5.3    Continued Corporate Existence.

The Reorganized Debtors will continue to exist as separate corporate entities following confirmation and consummation of this Plan in accordance with the laws of their respective states of incorporation and pursuant to their respective certificates or articles of incorporation and bylaws in effect prior to the Effective Date, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and by-laws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and by-laws (or other formation documents) are amended under the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state, provincial, or federal law). As of the Effective Date, JHC shall be changed from a non-membership nonprofit corporation governed by the Board of Directors, to a member managed nonprofit corporation managed by JHS.

### 5.4    Management of Reorganized Debtors.

As of the Effective Date, the current members of the board of directors of the Debtors shall resign (including, for the avoidance of doubt, the Board of Directors and the Governing Authority), and JHS shall be appointed the sole member of the Reorganized Debtors. JHS may appoint such officers as it may from time to time deem appropriate. JHS shall provide management and consulting services to the Reorganized Debtors on a fair market basis, provided that one-third shall be paid current, and two-thirds of any earned management and consulting fees of JHS shall be deferred until there is positive cash flow, and all deferred maintenance and infrastructure needs have been addressed.

### 5.5    Cancellation of Existing Securities and Agreements.

Except for purposes of evidencing a right to distributions under this Plan or as otherwise provided therein, on the Effective Date, (a) all agreements and other documents (other than the Assumed Executory Contracts) evidencing (i) Claims or rights of any holder of a Claim against any of the Debtors or Reorganized Debtors, or (ii) Interests in any of the Debtors or Reorganized

33

Debtors, and (b) all notes and share certificates evidencing such Claims or Interests, and any agreements or guarantees related thereto, will be canceled and terminated and deemed null and void, satisfied and discharged and of no force and effect as against any of the Debtors or the Reorganized Debtors without further act or action under any applicable agreement, law, regulation, order or rule. Except as otherwise provided herein, all obligations of the Debtors and Reorganized Debtors under such agreements and other documents governing such Claims or Interests will be discharged. Holders of, or parties to, such cancelled instruments, securities, and other documentation will have no rights arising from or relating to such instruments, securities, and other documentation, or the cancellation thereof, except the rights provided for pursuant to this Plan.

**5.6    Vesting of Assets in the Reorganized Debtors.**

Except as otherwise provided for herein, on the Effective Date, and pursuant to § 1141(b) and (c) of the Bankruptcy Code, all Assets of the Debtors' Estates, together with any Assets of a Debtor that is not property of its Estate and that is not specifically disposed of pursuant to this Plan or by order of the Bankruptcy Court, including the Retained Causes of Action and the Assets of the Medical Clinic Board, will vest in the applicable Reorganized Debtor, free and clear of all Liens, Claims, Causes of Action, charges and/or other encumbrances, purchase rights, options or rights of first refusal. For the avoidance of doubt, the Assets of the Medical Clinic Board will vest in JHC as a Reorganized Debtor. Thereafter, the Reorganized Debtors may operate their businesses and may use, acquire and dispose of property, free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules.

**5.7    Rights of Action; Reservation of Rights.**

Except as otherwise provided pursuant to this Plan or the Confirmation Order, or any other order of the Bankruptcy Court, or in any contract, instrument, release, indenture or other agreement entered into in connection with this Plan, and except with respect to the Released Parties, in accordance with § 1123(b) of the Bankruptcy Code, the Reorganized Debtors will reserve and retain and may enforce, sue on, settle, compromise, transfer or assign (or decline to do any of the foregoing) all rights, claims, causes of action, rights of set off, suits, proceedings or other legal or equitable defenses accruing to the Debtors or their Estates pursuant to the Bankruptcy Code or pursuant to any statute or legal theory, including, without limitation, any avoidance or recovery actions under §§ 510, 542, 544, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code and, to the extent permissible under applicable non-bankruptcy law, any suits or proceedings for recovery under any policies of insurance issued to or on behalf of the Debtors or any judgment obtained on behalf of any of the Debtors. No entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors or the Reorganized Debtors, as applicable, will not pursue any and all available Causes of Action against it. Except as otherwise expressly set forth in this Plan, nothing contained in this Plan or the Confirmation Order will be deemed to be a waiver or the relinquishment of any right or Causes of Action that the Debtors or the Reorganized Debtors may have or which the Debtors or the Reorganized Debtors may choose to assert on behalf of their respective Estates under any provision of the Bankruptcy Code or any applicable non-bankruptcy law, including, without limitation, (i) any and all Claims against any Person, to the extent such Person asserts a cross-claim, counterclaim and/or Claim for setoff which seeks affirmative relief against any of the Debtors, the Reorganized Debtors, their officers, directors, members, or

34

representatives, and (ii) the turnover of any property of any of the Debtors' or the Reorganized Debtors' Estates.

**5.8     Effectuating Documents; Further Transactions.**

On the Effective Date, all actions contemplated under the Plan shall be deemed authorized and approved in all respects, including (1) the Reorganized Debtors' entry into and performance under the Exit Facility, the Class 3 Senior Note Issuance Agreement, the Class 3 Junior Note Issuance Agreement, the Class 3 Senior Notes, and the Class 3 Junior Notes; (2) vesting of assets into the Reorganized Debtors and the GUC Trust; (3) the rejection, assumption, or assumption and assignment, as applicable, of Executory Contracts; (4) execution and entry into the GUC Trust Agreement; and (5) substantive consolidation of Debtor JHC with the Medical Clinic Board, and all other acts or actions contemplated or reasonably necessary or appropriate to promptly consummate the transactions included therein. All matters provided for in the Plan involving the corporate structure of the Debtors or the Reorganized Debtors, and any corporate action required by the Debtors or the Reorganized Debtor, as applicable, in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors, members, or officers of the Debtors or the Reorganized Debtors, as applicable.

On the Effective Date, the chief executive officer, chief financial officer, or any other appropriate officer of the Debtors or the Medical Clinic Board, as the case may be, shall be authorized to execute, deliver, file or record such contracts, instruments, releases, indentures and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions herein. The secretary or assistant secretary of an applicable Debtor, as the case may be, shall be authorized to certify or attest to any of the foregoing actions. The authorizations and approvals contemplated by this Section shall be effective notwithstanding any requirements under non-bankruptcy law so long as such authorizations and approvals are in accordance with section 1129(a)(16) of the Bankruptcy Code.

**5.8.1     Exemption from Registration.**

Pursuant to section 1145 of the Bankruptcy Code, (1) the offering, issuance, and distribution of the Class 3 Senior Notes and the Class 3 Junior Notes (collectively, the "New Notes") shall be exempt from, among other things, the registration requirements of section 5 of the Securities Act of 1933, as now in effect or hereafter amended, and the rules and regulations of the United States Securities and Exchange Commission, and any other applicable U.S. state or local law requiring registration for the offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security, (2) the New Notes (a) are not "restricted securities" as defined in Rule 144(a)(3) under the Securities Act, and (b) are freely tradable and transferable by any initial recipient thereof that (w) is not an "affiliate" of the Reorganized Debtors as defined in Rule 144(a)(1) under the Securities Act, (x) has not been such an "affiliate" within ninety (90) calendar days of such transfer, (y) has not acquired the New Notes from an "affiliate" of the Reorganized Debtors within one year of such transfer, and (z) is not an entity that is an "underwriter" as defined in subsection (b) of section 1145 of the Bankruptcy Code, and (3) the New Notes will be freely tradable by the recipients thereof, subject to (i) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11)

of the Securities Act, (ii) compliance with applicable securities laws and any rules and regulations of the SEC, if any, applicable at the time of any future transfer of such securities or instruments, and (iii) the restrictions in the agreements governing the New Notes.

## ARTICLE VI. INJUNCTIONS, EXCULPATION OF LIABILITY AND RELEASES

### 6.1     Injunctions.

**Upon entry of the Confirmation Order, all Holders of Claims and Interests and their Related Persons shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.**

**Except as expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court, all persons or entities who have held, hold, or may hold Claims against or Interests in the Debtors (whether proof of such Claims or Interests has been filed or not and whether or not such entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan) and other parties in interest, along with their respective Related Persons are permanently enjoined, on and after the Effective Date, with respect to such Claims and Interests, from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative or other forum) against or affecting either of the Debtors, the GUC Trust, or the Medical Clinic Board or the property of the Debtors, the GUC Trust, or the Medical Clinic Board, (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against either of the Debtors, the GUC Trust, or the Medical Clinic Board or the property of the Debtors, the GUC Trust, or the Medical Clinic Board (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against either of the Debtors, the GUC Trust, or the Medical Clinic Board or the Assets of the Debtors, the GUC Trust, or the Medical Clinic Board (iv) asserting any right of setoff, directly or indirectly, against any obligation due from either of the Debtors, the GUC Trust, or the Medical Clinic Board or against Assets or interests in Assets of the Debtors, the GUC Trust, or the Medical Clinic Board; and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.**

**By accepting, or being eligible to accept, Distributions pursuant to the Plan, each Holder of an Allowed Claim extinguished or released pursuant to the Plan shall be deemed to have affirmatively and specifically consented to be bound by the Plan, including the injunctions set forth in this Section.**

**The injunctions in this Section shall extend to any successors of the Debtors, Reorganized Debtors, and their respective Assets and interests in Assets.**

### 6.2     Exculpation from Claims Related to the Chapter 11 Cases.

**The Exculpated Parties shall neither have nor incur any liability whatsoever to any**

Person for any act taken or omitted to be taken in good faith in connection with or related to the filing of the Debtors' Chapter 11 Cases, and the formulation, preparation, dissemination, negotiation, filing, solicitation, or confirmation of the Plan, the Disclosure Statement, any Plan Document, or any contract, instrument, release, or other agreement or document created or entered into, or any other act taken or omitted to be taken, in connection with the Plan or the Chapter 11 Cases, including, for the avoidance of doubt, the substantive consolidation of the Medical Clinic Board with JHC pursuant to this Plan; provided, however, that this exculpation from liability provision shall not be applicable to any liability found by a court of competent jurisdiction to have resulted from fraud or the willful misconduct or gross negligence of any such party. All Causes of Action based upon or arising out of all of the foregoing will be forever waived and released by any Person as of the Effective Date; provided, however, that nothing in this Section shall affect the liability (if any) of any Person that otherwise would result from any action or omission to the extent that such action or omission is determined in a Final Order to have constituted (i) a breach of any of its obligations under this Plan or any contract, release or other agreement or document entered into in connection herewith or (ii) intentional acts that constitute fraud or willful misconduct. With respect to the Professionals, the foregoing exculpation from liability provision shall also include claims of professional negligence arising from the services provided by such Professionals during the Chapter 11 Cases, but such exculpation from liability provision shall not alter the standard for review for such Professionals under sections 337 and 330 of the Bankruptcy Code. The rights granted hereby are cumulative with (and not restrictive of) any and all rights, remedies, and benefits that the Debtors, the GUC Trustee, and their respective agents have or obtain pursuant to any provision of the Code or other applicable law, or any agreement. This exculpation from liability provision is an integral part of the Plan and is essential to its implementation. Notwithstanding anything to the contrary contained herein, the provisions hereof shall not release or be deemed a release of any of the Causes of Action otherwise preserved by the Plan. The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such Distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such Distributions made pursuant to the Plan. The terms of this exculpation shall only apply to liability arising from actions taken on or prior to the Effective Date.

Notwithstanding the foregoing, (i) the Reorganized Debtors shall remain obligated to make payments to Holders of Allowed Claims and Interests as required pursuant to the Plan, and (ii) the Debtors' respective officers, shareholders, members, and director(s) shall not be relieved or released from any personal contractual liability except as otherwise provided in the Plan. For the avoidance of doubt, the Plan does not provide for any relief or release of any personal guarantees.

6.3    Releases.

Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on the Effective Date, each Released Party shall be deemed released and discharged by the Debtors, their Estates, and the Medical Clinic Board, in each case on

37

behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any Causes of Action, directly or derivatively (including the Creditors' Committee and the GUC Trustee through the derivative standing granted to it through any Final Order or otherwise), by, through, for, or because of the foregoing entities, from any and all Causes of Action (including, without limitation, Avoidance Actions), including any derivative claims, asserted on behalf of the Debtors, that the Debtors or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against a Debtor or other Entity, (i) based upon or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' in- or out-of- court restructuring efforts, intercompany transactions, commencement and prosecution of the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), entry into the Plan Documents and Exit Documents, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, (ii) based upon or arising from (a) the Medical Clinic Board's historical relationship with the Debtors; (b) the issuance, administration, or obligations related to the Bonds, the Series 2015 Bond Indenture, and the MTI Documents; (c) any guarantees, indemnities, or other obligations of the Medical Clinic Board in connection with the Prepetition Secured Debt or any other debt or obligation of the Debtors; (d) the Medical Clinic Board's role as a party to or in connection with the Chapter 11 Cases; (e) the substantive consolidation of the Medical Clinic Board with JHC pursuant to this Plan, including the release of liens required to effectuate such substantive consolidation; (f) any acts or omissions taken in connection with or in furtherance of this Plan and the transactions contemplated herein; and (g) any other act or omission of the Medical Clinic Board or any of its representatives at any time on or before the Effective Date, or (iii) based upon or arising from any other act or omission, transaction, agreement, event, or other occurrence that occurred on or before the Effective Date (whether pre-petition, on the Petition Date, or post-petition). This release is intended to be a general release that releases and discharges the Released Parties from any and all claims and Causes of Action, whether known or unknown, that the Debtors, their Estates, or the Medical Clinic Board may hold against the Released Parties based on or arising from acts or omissions of the Released Parties that occurred on or before the Effective Date (whether prepetition, on the Petition Date, or post-petition).

**6.4    Binding Effect.**

As of the Effective Date, the Plan shall bind all Holders of Claims and Interests, and their respective successor and assigns, notwithstanding whether any such Holders were (a) Impaired or Unimpaired under the Plan; (b) presumed to accept or deemed to reject the Plan; (c) failed to vote to accept or reject the Plan; (d) voted to reject the Plan; or (e) received any Distribution under the Plan.

**6.5     Compromise and Settlement of Claims, Interests, and Controversies.**

Pursuant to sections 363 and 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the Distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Claim or Interest or any Distribution to be made on account of an Allowed Claim or Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their respective Estates, and Holders of such Claims and Interests, and is fair, equitable, and reasonable; provided, however, that nothing in this Section shall have any impact on the allowance of any particular Claim or Interest, nor shall this Section be construed to alter or have any impact on the rights of the Debtors to file objections to Claims or Interests as set forth herein.

**6.6     Protections Against Discriminatory Treatment.**

To the maximum extent provided by section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Persons, including all Governmental Units, shall not discriminate against the Reorganized Debtors or the GUC Trustee, as applicable, or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtors or the GUC Trustee, as applicable, or another Person with whom the Reorganized Debtors or the GUC Trustee, as applicable, have been associated, solely because the relevant Debtor has been a debtor under chapter 11 of the Bankruptcy Code, was insolvent before the commencement of or during the Debtors' Chapter 11 Cases, or did not pay a debt that is discharged hereunder.

**6.7     Survival of Indemnification Obligations to Directors and Officers.**

As to Causes of Action arising from, or relating to, events taking place prior to, on, or subsequent to the Petition Date, the Debtors shall defend, indemnify, reimburse and limit the liability of any of the Debtors or the Medical Clinic Board's respective directors, members, and officers who served as directors, members, or officers at any time on or after November 1, 2025, to the fullest extent permitted under the applicable state law (collectively, the "Indemnification Obligations") for any liabilities asserted against such persons by reason of their service as directors, members, or officers of the Debtors or the Medical Clinic Board, other than in respect of any claims conclusively determined to have arisen by virtue of fraud or willful misconduct. Such Indemnification Obligations will survive confirmation of this Plan, remain unaffected thereby, and will not be discharged and shall, on the Effective Date, become obligations of the Reorganized Debtors; provided that such indemnification, defense, reimbursement or limitation will be limited to the extent such directors, members, or officers have been released pursuant to the Plan as Released Parties under this Plan, and provided further that the Debtors shall be required to indemnify a director, members, or officer in connection with a proceeding (or part thereof) initiated by such director, members, or officer only if such proceeding (or part thereof) was authorized by the Reorganized Debtors.

## ARTICLE VII. DISTRIBUTIONS UNDER THIS PLAN

**7.1    Distributions to Holders of Allowed Claims Only.**

Until a Claim becomes an Allowed Claim, distributions of Cash, securities and/or other instruments or property otherwise available to the holder of such Claim will not be made.

**7.2    Distribution Record Date.**

As of the close of business on the date the Clerk of the Bankruptcy Court enters the Confirmation Order or such other date as may be designated in the Confirmation Order (such date, the "Distribution Record Date"), the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtors or their agents will be deemed closed, and there will be no further changes in the record holders of any of the Claims or Interests. The Debtors will have no obligation to recognize any transfer of any Claims or Interests occurring on or after the Distribution Record Date. The Debtors or Reorganized Debtors, as applicable, will recognize only those record holders stated on the transfer ledgers as of the close of business on the Distribution Record Date. The Distribution Record Date is the record date for purposes of making distributions under this Plan.

In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, and if so completed will be deemed to have been completed as of the required date.

**7.3    Delivery of Distributions.**

Subject to Bankruptcy Rule 9010, all distributions to any holder of an Allowed Claim will be made at the address of such holder as set forth on the Schedules filed with the Bankruptcy Court unless the Debtors or any Disbursing Agent have been notified in writing of a change of address, including, without limitation, by the filing of a Proof of Claim by such holder that contains an address for such holder different from the address reflected on such Schedules for such holder.

In the event that any distribution to any holder is returned as undeliverable, the Reorganized Debtors will use reasonable efforts to determine the current address of such holder, but no distribution to such holder must be made unless and until the Reorganized Debtors have determined the then current address of such holder, at which time such distribution will be made to such holder without interest or accruals of any kind. Such distributions will be deemed unclaimed property under § 347(b) of the Bankruptcy Code on the one year anniversary of the Effective Date. After that date, all unclaimed property or interest in property will revert to the Reorganized Debtors and the Claim of any other holder to such property or interest in property will be discharged and forever barred.

**7.4    Manner of Payment Under this Plan.**

All distributions to the creditors of each of the Debtors under this Plan will be made by, or on behalf of, the applicable Debtor. At the sole option of the Debtors, any Cash payment to be made under this Plan may be made by a check or wire transfer or as otherwise required or provided

40

in the applicable agreement.

**7.5     Time Bar to Cash Payments.**

Checks issued by the Reorganized Debtors on account of Allowed Claims will be null and void if not negotiated within ninety (90) days from and after the date of issuance thereof. Holders of Allowed Claims shall make all requests for reissuance of checks to the Reorganized Debtors. Any Claim in respect of a voided check must be made on or before the one year anniversary of the date of issuance. After such date, all Claims and respective voided checks will be discharged and forever barred and the Reorganized Debtors will retain all moneys related thereto, or disburse such moneys to other Holders of Allowed Claims, in the case of distributions to Class 6 Claim Holders.

**7.6     Other Distributions.**

Unless required by applicable non-bankruptcy law or a specific written request is made by the holder of an Allowed Claim, no Cash payment of less than ten dollars ($10.00) will be made by the Reorganized Debtors on account of any Allowed Claim.

**7.7     Set-Offs.**

Other than with respect to the Claims of the DIP Lender, the Debtors or the Reorganized Debtors may, but are not required to, set off or recoup against any Allowed Claim, any claims, rights, or cause of action of any nature whatsoever that the Debtors or Reorganized Debtors may have against the holder of such Claim provided such set off or recoupment is in accordance with applicable law or agreed to by the holder of the Allowed Claim. Neither the failure to set-off nor the allowance of any Claim under this Plan will constitute a waiver or release by the Debtors or Reorganized Debtors of any such claim, right or cause of action.

**7.8     Compliance with Tax Requirements.**

To the extent applicable, the Reorganized Debtors will comply with all tax withholding and reporting requirements imposed on them by any governmental unit, and all distributions pursuant to this Plan will be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors shall be authorized to withhold Distributions pending receipt of information necessary to facilitate such Distributions, or establish any other mechanisms they believe are reasonable and appropriate. The Reorganized Debtors reserve the right to allocate all Distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

## ARTICLE VIII. PROCEDURES FOR DISPUTED CLAIMS

**8.1     Objections to Claims.**

On and after the Effective Date, except as to applications for allowances of compensation and reimbursement of expenses under §§ 328, 330 and 503 of the Bankruptcy Code, the Reorganized Debtors shall have the exclusive right to make and file objections to Administrative Claims, Claims or Interests that are not allowed as of the Effective Date, except with respect to

41

Capta Billing as provided in Section 4.6 of the Plan. After the Effective Date, the Reorganized Debtors shall have the authority to compromise, settle, otherwise resolve or withdraw any objections with respect to Disputed Claims, without approval of the Bankruptcy Court; provided, however, that if a compromise, settlement or resolution of a Disputed Claim results in an Allowed Claim greater than $2,500,000.00, such Disputed Claim shall not be Allowed without the GUC Trustee's prior written approval which shall not be unreasonably withheld. In pursuing Claims reconciliation and objections, the Reorganized Debtors shall administer Claims based on their validity, amount and priority consistent with the Bankruptcy Code and the Reorganized Debtors' fiduciary duties to maximize recoveries on Allowed Claims.

All objections to Claims must be filed and served on the holders of such Claims by the Claims Objection Deadline, as such deadline may be extended from time to time. However, nothing contained in this Plan will limit the rights of Reorganized Debtors to object to any Claims filed or amended after the Claims Objection Deadline.

An objection to a Claim will be deemed properly served on the Holder thereof if service is effected by any of the following methods: (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (b) to the extent counsel for a Holder is unknown, by first class mail, postage prepaid, on the signatory on the proof of Claim or other representative identified and designated on the proof of Claim or any attachment thereto for receipt of notices; (c) by first class mail, postage prepaid, on any counsel that has appeared on behalf of the Holder in the Chapter 11 Cases; or (d) if no proof of Claim has been filed, by first class mail, postage prepaid, on the Holder of such Claim at the address set forth in the Schedules.

Every Person who holds a Claim against any of the Debtors, whether the Claim is filed or not, is forever barred from pursuing such Claim against the Debtors in any forum other than the Bankruptcy Court unless the Plan, any documents implementing the Plan, or a further order of the Bankruptcy Court expressly provides otherwise.

This Plan constitutes a formal objection to the proof of claim filed by the State of Alabama, Department of Revenue in the amount of $37,470,686.73, of which $27,399,075.57 is asserted to be entitled to priority under section 507(a)(8) of the Bankruptcy Code, assigned as claim number 10 in the claims register.

**8.2    No Distributions Pending Allowance.**

Notwithstanding any other provision in this Plan, except as otherwise agreed by the Reorganized Debtors, no partial payments or distributions will be made with respect to a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by Final Order.

**8.3    Disputed Claims Reserve for General Unsecured Claims.**

Prior to making the first Distribution to Holders of Class 6 General Unsecured Claims, the Reorganized Debtors will calculate the amount of the reserve for General Unsecured Claims that are Disputed Claims (the "Disputed Claims Reserve") and shall withhold the lesser of (a) one hundred percent (100%) of the distributions to which holders of such Disputed Claims would be entitled under this Plan if such Disputed Claims were Allowed Claims, or (b) such other amount

as may be approved by the Bankruptcy Court; provided that the Reorganized Debtors will not reserve for any Claims that have been disallowed or expunged by an order of the Bankruptcy Court prior to the date of the first Distribution to Class 6 Holders.

**8.4    Distributions After Allowance.**

To the extent a Disputed Claim becomes an Allowed Claim, the Reorganized Debtors will distribute to the holder thereof the distributions, if any, to which such holder is then entitled under this Plan. Any such distributions will be made in accordance with, and at the time mandated by this Plan. No interest will be paid on any Disputed Claim that later becomes an Allowed Claim.

**8.5    Estimation of Claims.**

The Reorganized Debtors may at any time request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to § 502(c) of the Bankruptcy Code regardless of whether any Debtor previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, unliquidated or Disputed Claim, the amount so estimated will constitute either the Allowed amount of such Claim or a maximum limitation on the Allowed amount of such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the Allowed amount of such Claim, the Reorganized Debtors may pursue supplementary proceedings to object to the allowance of such Claim. All of these objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

**8.6    Disallowance of Claims.**

Any Claims held by entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code, or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any Distributions on account of such Claims until such time as such Causes of Action against that entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that entity have been turned over or paid to the Reorganized Debtors. All Claims filed on account of an indemnification obligation to a director, officer, member, or employee shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such indemnification obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to or action, order, or approval of the Bankruptcy Court.

Except as provided herein, pursuant to a Bankruptcy Court order or otherwise agreed, any and all Proofs of Claim filed after the bar date set by the Bankruptcy Court shall be deemed disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and holders of such Claims may not receive any Distributions

43

on account of such Claims, unless on or before the Confirmation Hearing such late Claim has been deemed timely filed by a Final Order.

**8.7    Amendments to Claims.**

On or after the Effective Date, a Claim may not be filed or amended without the prior authorization of the Bankruptcy Court or the Reorganized Debtors, as appropriate, or unless otherwise permitted pursuant to the terms of this Plan, and any such new or amended Claim filed shall be deemed disallowed in full and expunged without any further action.

## ARTICLE IX. EXECUTORY CONTRACTS

**9.1    Categories and Treatment of Executory Contracts to be Assumed**

**9.1.1    Executory Contracts to be Assumed.**

On the Effective Date, the Debtors shall be deemed to assume all Executory Contracts set forth in the List of Executory Contracts to be Assumed contained in the Plan Supplement, including any amendments thereto (collectively, the "Assumed Executory Contracts").

Subject to the occurrence of the Effective Date, the entry of the Confirmation Order by the Clerk of the Bankruptcy Court will constitute approval of such assumptions pursuant to § 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such assumption is in the best interest of each Debtor, its Estate, and all parties in interest in the Debtors' Reorganization Cases. Any motions to assume Executory Contracts pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date by a Final Order. Each Executory Contract assumed pursuant to this Section, or by any order of the Bankruptcy Court, that has not been assigned to a third party prior to the Confirmation Date, shall revest in and be fully enforceable by the Reorganized Debtors in accordance with its terms, except as such terms are modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law. Notwithstanding anything to the contrary in the Plan, the Debtors or the Reorganized Debtors, as applicable, reserve the right to alter, amend, modify, or supplement the List of Executory Contracts to be Assumed at any time through and including ninety (90) days after the Effective Date, as such deadline may be extended from time to time by order of the Bankruptcy Court.

**9.1.2    Cure Payments.**

With respect to each Assumed Executory Contract, any monetary amounts required as Cure Payments will be satisfied, pursuant to § 365(b)(1) of the Bankruptcy Code, by payment of the cure amount in Cash as soon as practicable after, and in no event later than thirty (30) days after, the latest of (a) the Effective Date; (b) the date following notice to the applicable Reorganized Debtor of the amount due; (c) the resolution by Final Order of any dispute between the applicable Reorganized Debtor and the other party to the Assumed Executory Contract as to such amounts due; or (d) upon such other terms as the parties to such Assumed Executory Contract may agree, or, in each case, as soon thereafter as is practicable. In the event of a dispute regarding (i) the amount of any Cure Payment, (ii) the ability of the applicable Debtor, Reorganized Debtor or any assignee to provide "adequate assurance of future performance" (within the meaning of § 365 of

44

the Bankruptcy Code) under the Assumed Executory Contract or (iii) any other matter pertaining to assumption or the Cure Payments required by § 365(b)(1) of the Bankruptcy Code, will be made following the entry of a Final Order resolving such dispute. If there is any such dispute, the Debtors may elect within thirty (30) days of the entry of such Final Order, to not assume the Executory Contract at issue, and instead, will be deemed to reject the Executory Contract.

**9.2     Categories and Treatment of Executory Contracts to be Rejected.**

### 9.2.1     Executory Contracts to be Rejected.

The Debtors shall reject all Executory Contracts identified on the List of Executory Contracts to be Rejected contained in the Plan Supplement, including any amendments, supplements or modifications thereto (the "Rejected Executory Contracts").

The Debtors will provide notice of any amendments to the List of Executory Contracts to be Rejected to the parties to the Executory Contracts affected by any such amendments. The listing of a document on the List of Executory Contracts to be Rejected will not constitute an admission by the Debtors that such document is an executory contract or that the Debtors have any liability thereunder. This Plan constitutes a motion to reject Rejected Executory Contracts. Any Allowed Claim related to a Rejected Executory Contract will be deemed a General Unsecured Claim except to the extent the holder of such Allowed Claim holds a valid security deposit. This Plan provides that entry of the Confirmation Order by the Clerk of the Bankruptcy Court will constitute approval of such rejections pursuant to § 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such Rejected Executory Contract is burdensome and that the rejection thereof is in the best interest of the applicable Debtor, its Estate, and all parties in interest in the Debtors' Reorganization Cases. Notwithstanding anything to the contrary in the Plan, the Debtors or the Reorganized Debtors, as applicable, reserve the right to alter, amend, modify, or supplement the List of Executory Contracts to be Rejected at any time through and including ninety (90) days after the Effective Date, as such deadline may be extended from time to time by order of the Bankruptcy Court.

### 9.2.2     Rejection Claims.

Claims arising from the rejection of the Rejected Executory Contracts ("Rejection Claims") must be filed with the Bankruptcy Court and served on the Debtors and their counsel within thirty (30) days after the service of the earlier of (i) notice of the Confirmation Order or (ii) other notice that the Rejected Executory Contract has been rejected (such date, the "Rejection Bar Date"). Upon the filing of any such Rejection Claims, the Debtors will have sixty (60) days in which to dispute said Rejection Claims. Any Claims for which a proof of a Rejection Claim is not filed and served within such time will be forever barred from assertion and will not be enforceable against the Debtors, Reorganized Debtors or their respective properties.

**9.3     Treatment of Unidentified Executory Contracts.**

Due to the large quantity of the Debtors' contractual relationships, it is possible that an agreement exists that could be an executory contract, but does not fall into one of the categories to assume or reject as set forth herein, and is not included on either the List of Executory Contracts to be Assumed or the List of Executory Contracts to be Rejected (an "Unidentified Executory

45

Contract"). If a Person believes that it is a party to such an Unidentified Executory Contract with any of the Debtors, then such Person must, no later than ten days prior to the Confirmation Hearing, file with the Bankruptcy Court and serve on counsel for the Debtors a written document with sufficient evidence to establish (i) the existence of the Unidentified Executory Contract and the basis for asserting that an Executory Contract exists and (ii) the amount of any Cure Payment asserted to be owing in connection with the assumption of such contract. Such filing and written notice must be received, no later than ten (10) days prior to the Confirmation Hearing, by:

> Derek Meek
> Burr & Forman LLP
> Counsel for Jackson Hospital and Jackson Pharmacy
> 420 N. 20th Street, Suite 3400
> Birmingham, Alabama 35203
>
> -- and –
>
> Stuart H. Memory
> Memory Memory & Causby, LLP
> 469 S. McDonough Street (36104)
> Post Office Box 4054
> Montgomery, Alabama 36103-4054

Upon the timely receipt of such notice by counsel for the Debtors, the Debtors shall determine whether (x) such agreement is executory, (y) the claimed or any other cure amount would in fact be due and owing upon assumption and (z) to assume or reject such Unidentified Executory Contract. Four (4) days prior to the Confirmation Hearing, the Debtors shall file a notice (which may be an omnibus notice for all such contracts), and serve such notice on all relevant counterparties, specifying whether the Debtors believe an Executory Contract exists, and if so, whether they propose to assume or to reject such contract, and, if the Debtors propose to assume such contract, what cure amount, if any, will be due upon assumption (the "UEC Notice"). If no Cure Payment amount is proposed by the Debtors in the UEC Notice, it will be presumed that the Debtors are asserting that no Cure Payment amount is required to be paid under § 365(b)(1) of the Bankruptcy Code. Any counterparty that does not (A) file an objection to the assertions contained in the UEC Notice (including any Cure Payment amount) one day prior to the Confirmation Hearing, (B) serve it on the Debtors, the DIP Lender, and the Creditors' Committee, and (C) appear at the Confirmation Hearing, shall be deemed conclusively to have agreed to the treatment and Cure Payment amount proposed by the Debtors in the UEC Notice.

All contracts proposed to be assumed in the UEC Notice will be deemed to have been assumed by the Confirmation Order, which will constitute approval of such assumption pursuant to § 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that the assumption of each such Unidentified Executory Contract is in the best interest of the applicable Debtor, its Estate, and all parties in interest in the Debtors' Reorganization Cases.

All contracts proposed to be rejected in the UEC Notice will be deemed to have been rejected by the Confirmation Order, which will constitute approval of such rejections pursuant to § 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such rejected

Unidentified Executory Contract is burdensome and that the rejection thereof is in the best interest of the applicable Debtor, its Estate, and all parties in interest in the Debtors' Reorganization Cases. Claims arising from any such rejections must be filed with the Bankruptcy Court and served on the Debtors and their counsel within thirty (30) days after the Confirmation Hearing. Upon the filing of any such rejection claims, the Debtors will have sixty (60) days in which to dispute said rejection claims. The holder of any such rejection Claim who fails to file a proof of claim on or before such date is forever barred, estopped and enjoined from (i) asserting any and all Claims that such holder possesses against the Debtors, their successors and assigns and (ii) voting upon, or receiving distributions under, this Plan on account of such Claim.

In the event the Debtors identify or are notified of an Unidentified Executory Contract after the Effective Date, the Debtors shall have sixty (60) days from such identification or notification to treat the Unidentified Executory Contract as either an Assumed Executory Contract or a Rejected Executory Contract.

### 9.4     Nonoccurrence of Effective Date.

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

### 9.5     Contracts and Leases Entered into After the Petition Date.

Contracts and leases entered into after the Petition Date by any Debtor, including any Executory Contracts assumed by such Debtor, will be performed by the applicable Debtor or the Reorganized Debtors liable thereunder in the ordinary course of their business. Accordingly, such contracts and leases (including any assumed Executory Contracts) will survive and remain unaffected by entry of the Confirmation Order.

### ARTICLE X. CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE

### 10.1    Conditions Precedent to Confirmation.

This Plan will not be confirmed and the Confirmation Order will not be entered until and unless each of the following conditions has occurred or has been waived in accordance with the terms of this Plan: (a) the Confirmation Order is acceptable to the Debtors, and reasonably acceptable to the DIP Lender, JHS, the Master Trustee, Bridge Noteholder Representative, and the Bridge Loan Lender; and (b) all of the Plan Documents are acceptable to the Debtors and, to the extent that any Plan Document affects the allowance or treatment of the Class 3 Claims such Plan Document is reasonably acceptable to the Master Trustee, Bridge Noteholder Representative, and the Bridge Loan Lender.

### 10.2    Conditions Precedent to the Effective Date.

The Effective Date of this Plan will not occur unless and until each of the following conditions has occurred or will occur prior to or with the consummation of this Plan:

(a)    the Confirmation Order shall have been entered, shall have become a Final Order, and shall be acceptable to the Debtors, the DIP Lender, JHS, and reasonably acceptable to the Master Trustee, Bridge Noteholder Representative, and the Bridge Loan Lender, and shall otherwise be in full force and effect;

(b)    all actions, documents and agreements (in form and substance satisfactory to JHS) necessary to implement this Plan and the transactions contemplated by this Plan shall have been effected or executed;

(c)    all assets of the Medical Clinic Board shall be contributed to, and vest in, Debtor JHC, via substantive consolidation or otherwise;

(d)    all authorizations, consents, regulatory approvals, rulings, or documents necessary to obtain Grant commitments from the State of Alabama, Montgomery County, and/or the City of Montgomery, Alabama, in the approximate aggregate amount of $80,000,000.00, shall be in effect for the benefit of the Debtors, and such Grant amount shall have actually been received by the Debtors;

(e)    the Alabama Department of Revenue shall waive any claim arising at any time prior to the Effective Date for any amounts owed by the Debtors for the quarterly six percent (6%) Hospital Assessment Fee found in Sections 40-26B-70 through 40-26B-88, Code of Alabama;

(f)    all authorizations, consents, regulatory approvals, rulings, or documents necessary to obtain an abatement of State, County, and City taxes for the Reorganized Debtors for a five (5) year period shall be in place;

(g)    the State of Alabama, Montgomery County, and/or the City of Montgomery, Alabama, have committed to provide (x) $20,000,000.00 to fund improvements of the Debtors' hospital infrastructure during two years immediately following the Effective Date and (y) sales tax abatement for a period of five years immediately following the Effective Date;

(h)    JHC shall renegotiate prior and future reimbursement rates with Blue Cross Blue Shield of Alabama on terms acceptable to the Debtors;

(i)    the Debtors and the Exit Lender shall have entered into such agreements and documents reasonably necessary to document the Exit Facility;

(j)    the forms of Class 3 Senior Note and Class 3 Junior Note are acceptable to the Master Trustee, Bridge Noteholder Representative, and the Bridge Loan Lender and the forms of Class 3 Senior Note Issuance Agreement and Class 3 Junior Note Issuance Agreement are acceptable to the Master Trustee and Bridge Noteholder Representative;

(k)    any alteration or interpretation of any term or provision of this Plan by the Bankruptcy Court shall be reasonably acceptable to the Debtors, the DIP Lender, and JHS and, to the extent that it affects the allowance or treatment of the Class 3 Claims such alteration or interpretation is reasonably acceptable to the Master Trustee, Bridge Noteholder Representative, and the Bridge Loan Lender.

48

**10.3    Waiver of Conditions to Confirmation and Effective Date.**

The Debtors, with the consent of JHS and the DIP Lender, may waive, in whole or in part, any of the conditions to the confirmation or effectiveness of this Plan; provided, however, that the condition precedent to confirmation in Section 10.1 clause (a) and the condition precedent to effectiveness in Section 10.2 clauses (a), (j), and (k) may only be waived with the prior written consent of the Master Trustee, Bridge Noteholder Representative, and the Bridge Loan Lender. Any such waiver of a condition may be effected at any time, without notice or leave or order of the Bankruptcy Court and without any formal action, other than the filing of a notice of such waiver with the Bankruptcy Court.

**10.4    Effect of Failure of Conditions of the Effective Date.**

Unless extended by the mutual agreement of the Debtors and the DIP Lender, in the event the conditions specified in Section 10.2 of this Plan have not been satisfied or waived in accordance with Section 10.3 of this Plan by the date that is the later of thirty (30) days after entry of the Confirmation Order, (i) the Confirmation Order will be vacated; (ii) no distributions under this Plan will be made; (iii) the Debtors and all holders of Claims and Interests will be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred; and (iv) all the Debtors' obligations with respect to the Claims and Interests will remain unchanged and nothing contained in this Plan will be deemed to constitute a waiver or release of any Claims or claims by or against the Debtors or any other entity or to prejudice in any manner the rights of the Debtors or any other entity in any proceedings further involving the Debtors.

## ARTICLE XI. EFFECT OF CONFIRMATION

**11.1    Discharge of Debtors.**

To the fullest extent permitted by applicable law, and except as otherwise provided herein, the Plan Documents, the Confirmation Order, or the Bankruptcy Code: (a) on the Effective Date, the Confirmation Order shall operate as a discharge under subsection 1141(d)(1) of the Bankruptcy Code, and as a release of any and all Claims, Causes of Action, Debts, Liens, Security Interests, and encumbrances of and against the Debtors and the Medical Clinic Board and all Assets of the Debtors and the Medical Clinic Board and the Debtors' Estates that arose before the Confirmation Date, including without limitation, any Claim of a kind specified in §§ 502(g), 502(h), or 502(i) of the Bankruptcy Code, and all principal and interest, whether accrued before, on, or after the Petition Date, regardless of whether (i) a Proof of Claim has been filed or deemed filed, (ii) such Claim has been listed on the Debtors' Schedules or the Disclosure Statement, (iii) such Claim has been Allowed pursuant to § 502 of the Bankruptcy Code, or (iv) the Holder of such Claim has voted on the Plan or has voted to reject the Plan; and (b) effective upon the occurrence of the Effective Date (i) all Holders of Claims shall be barred and enjoined from asserting against the Debtors, the Estates, the Medical Clinic Board, or any Assets thereof, any Claims, Causes of Action, Debts, Liens, Security Interests, and encumbrances of and against all Assets of the Estates that arose before the Confirmation Date, and (ii) the Debtors and the Medical Clinic Board shall be fully and finally discharged of any liability or obligation on a Disallowed Claim. The discharge shall be effective on the Effective Date, and except as expressly provided in the Plan or the

49

Confirmation Order, all consideration distributed under the Plan will be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims against the Debtors and the Medical Clinic Board of any nature whatsoever, whether known or unknown, or against the assets or properties of the Debtors and the Medical Clinic Board that arose before the Effective Date. Except as expressly provided in this Plan or the Confirmation Order, any Holder of a discharged Claim will be precluded from asserting against the Debtors or the Medical Clinic Board, or against any assets of the Debtors or the Medical Clinic Board, any other or further Claim based on any document, instrument, act, omission, transaction or other activity of any kind or nature that occurred before the Effective Date. Any default or "event of default" by the Debtors or the Medical Clinic Board with respect to any Claim that existed immediately prior to or on account of the filing of the Chapter 11 Cases shall be deemed cured on the Effective Date. Except as otherwise specifically provided herein, nothing in this Plan shall be deemed to waive, limit, or restrict in any manner the discharge granted upon Confirmation of the Plan pursuant to § 1141 of the Bankruptcy Code, including the Debtors' right to seek an early discharge. For the avoidance of doubt, this discharge applies to all of the Claims and Interests asserted against the Debtors and the Medical Clinic Board, respectively, that arose before the Confirmation Date.

Nothing in the Confirmation Order or this Plan shall release, discharge, enjoin, or preclude any environmental Claim of any governmental unit against the Debtors or the Medical Clinic Board (a) that had not arisen (and therefore could not have been asserted) as of the Effective Date or (b) under environmental statutes or regulations that any entity would be subject to subsequent to the Effective Date as the owner or operator of property after the Effective Date and cannot, as a matter of law, be discharged under the Bankruptcy Code. Moreover, nothing in the Confirmation Order or the Plan releases, nullifies, enjoins, or precludes any liability of non-Debtors to governmental units arising exclusively under environmental statutes or regulations.

## 11.2    Binding Effect.

Except as otherwise provided in § 1141(d)(3) of the Bankruptcy Code and subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of this Plan will bind any holder of a Claim against, or Interest in, the Debtors and such holder's respective successors and assigns, whether or not the Claim or Interest of such holder is impaired under this Plan and whether or not such holder has accepted this Plan. This Plan shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtors, the holders of Claims and Interests and their respective successors and assigns, including without limitation, the Reorganized Debtors.

## 11.3    Section 1146 Exemption.

Pursuant to § 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of notes or issuance of debt or equity securities under the Plan, the creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with this Plan, including, without limitation, any merger agreements or agreements of consolidation, deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under this Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, sales or other similar tax. Unless expressly provided otherwise, all sale transactions

consummated by the Debtors and approved by the Bankruptcy Court on and after the Petition Date through and including the Effective Date, including, without limitation, the sales, if any, by the Debtors of owned property or assets pursuant to § 363(b) of the Bankruptcy Code and the assumptions, assignments and sales, if any, by the Debtors of Unexpired Leases of non-residential real property pursuant to § 365(a) of the Bankruptcy Code, shall be deemed to have been made under, in furtherance of, or in connection with this Plan and, therefore, shall not be subject to any stamp, real estate transfer, mortgage recording, sales or other similar tax law.

**11.4    Compliance with Tax Requirements.**

In connection with the consummation of this Plan, the Debtors will comply with all withholding and reporting requirements imposed by any taxing authority, and all distributions thereunder will be subject to such withholding and reporting requirements.

**11.5    Severability of Plan Provisions.**

In the event that, prior to the Confirmation Date, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable in accordance with its terms.

**11.6    Term of Injunctions or Stays.**

Unless otherwise provided herein, all injunctions or stays arising under or entered during the Debtors' Chapter 11 Cases under § 105 or 362 of the Bankruptcy Code or otherwise and in existence on the Confirmation Date will remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

**11.7    Medical Malpractice Claims.**

Notwithstanding anything to the contrary in the Plan, all unliquidated claims against the Debtors arising out of or related to alleged negligence in connection with the rendering of medical care arising prior to the Effective Date may proceed only to the extent of any available insurance coverage of the Debtors. Other than as stated above, there shall be no further action taken by the medical malpractice claimant against the Debtors in any forum. The claimant shall look solely to the insurance coverage for the collection of any judgment against the Debtors and not the Estates for recovery. Moreover, the Debtors shall not be liable for, or charged, any deductible, self-insured retention or any other similar type of charge in connection with any such claim or litigation.

51

## ARTICLE XII. RETENTION OF JURISDICTION

### 12.1    Exclusive Jurisdiction.

Subject to the provisions of 12.2 hereof, on and after the Effective Date, the Bankruptcy Court will retain and have exclusive jurisdiction, to the fullest extent permissible under law, over all matters arising in, arising under, or related to the Debtors' Chapter 11 Cases, or that relate to any of the following:

(a)    To hear and determine all matters with respect to the Assumed Executory Contracts or Rejected Executory Contracts, the allowance of Rejection Claims, resolution of disputes pertaining to Cure Payment amounts, and the allowance of Claims resulting therefrom.

(b)    To hear and determine any application to modify this Plan in accordance with § 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in this Plan or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof.

(c)    To hear and determine any application under §§ 327, 328, 330, 331, 503(b), 1103 or 1129(a)(4) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred by professionals prior to the Effective Date; provided, however, that from and after the Effective Date, the payment of fees and expenses incurred from and after the Effective Date of the retained professionals of the Reorganized Debtors shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court.

(d)    To hear and determine any dispute or reconcile any inconsistency arising in connection with this Plan, any of the Plan Documents or the Confirmation Order or the interpretation, implementation or enforcement of this Plan, any of the Plan Documents, the Confirmation Order, any transaction or payment contemplated hereby or any agreement, instrument or other document governing or relating to any of the foregoing; provided, that with respect to disputes or inconsistencies relating to documents evidencing the Exit Facility, the issuance of new Interests under the Plan, or any post-Effective Date issue of corporate governance, the Bankruptcy Court shall have jurisdiction but not exclusive jurisdiction.

(e)    To hear and determine that Distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan, including the adjudication of any and all disputes arising from or relating to Distributions under the Plan.

(f)    To hear and determine any matter concerning state, local and federal taxes in accordance with §§ 346, 505 and 1146 of the Bankruptcy Code.

(g)    To hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and Title 28 of the United States Code.

(h)    To hear and determine any rights, claims or causes of action held by or accruing to the Debtors or the Reorganized Debtors pursuant to the Bankruptcy Code.

52

(i)     To hear and determine any dispute arising out of, and to enforce, any orders previously entered by the Bankruptcy Court.

(j)     To issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation or enforcement of this Plan, the Confirmation Order or any other order of the Bankruptcy Court.

(k)     To take any action, and issue such orders as may be necessary or appropriate, to construe, enforce, implement, execute and consummate this Plan or to maintain the integrity of this Plan following consummation.

(l)     To take any action to ensure that all distributions are accomplished as provided herein.

(m)     To allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim, Administrative Claim, or Interest.

(n)     To enter, implement or enforce such orders as may be necessary or appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified or vacated.

(o)     To take any action to recover all assets of the Debtors and property of the Debtors' Estates wherever located.

(p)     To enter a final decree closing the Debtors' Chapter 11 Cases.

(q)     To hear and determine any motion, adversary proceeding, application, contested matter and other litigated matter pending on or commenced after the Confirmation Date.

(r)     To enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Debtors' Chapter 11 Cases with respect to any Person.

(s)     To hear and determine all disputes involving the existence, nature or scope of the Debtors' discharge.

(t)     To hear and determine any other matter that may arise in connection with or is related to this Plan, the Disclosure Statement, the Confirmation Order, any of these Plan Documents or any other contract, instrument, release or other agreement or document related to this Plan or the Disclosure Statement; provided, that with respect to any post-Effective Date matter of corporate governance, the Bankruptcy Court shall have jurisdiction but not exclusive jurisdiction.

(u)     To hear and determine any other matter not inconsistent with the Bankruptcy Code.

53

### 12.2    Jurisdiction Prior to the Effective Date.

Prior to the Effective Date, the Bankruptcy Court shall retain jurisdiction with respect to each of the foregoing items and all other matters over which it may exercise jurisdiction pursuant to 28 U.S.C. §1334.

## ARTICLE XIII. MISCELLANEOUS PROVISIONS

### 13.1    Substantial Consummation.

On the Effective Date, this Plan shall be deemed to be substantially consummated under §§ 1101 and 1127(b) of the Bankruptcy Code.

### 13.2    Payment of Statutory Fees.

On the Effective Date, and thereafter as may be required, the Reorganized Debtors shall pay all fees required to be paid pursuant to § 1930 of title 28 of the United States Code.

### 13.3    Extension of Deadlines.

Notwithstanding anything to the contrary contained in the Plan, the Confirmation Order, or any other order of the Bankruptcy Court, the Bankruptcy Court may extend any deadline or time period prescribed by the Plan, the Confirmation Order, or any other order of the Bankruptcy Court upon request, subject to such notice as the Bankruptcy Court may direct.

### 13.4    Modifications and Amendments.

This Plan may be amended, modified or supplemented by the Debtors or Reorganized Debtors in the manner provided for by § 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to § 1125 of the Bankruptcy Code, except as the Bankruptcy Court may otherwise direct. In addition, after the Confirmation Date, so long as such action does not materially adversely affect the treatment of holders of Claims or Interests under this Plan, the Debtors may institute proceedings in the Bankruptcy Court, to remedy any defect or omission or reconcile any inconsistencies in this Plan or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of this Plan; provided, however, any material amendment or modification will require the consent of JHS, the DIP Lender, the Exit Lender, the Master Trustee, Bridge Noteholder Representative, and the Bridge Loan Lender.

### 13.5    Corrective Action.

Prior to the Effective Date, the Plan Proponents may make appropriate technical adjustments and modifications to this Plan without further order or approval of the Bankruptcy Court, provided that such technical adjustments and modifications do not adversely affect in a material way the treatment of Holders of Claims and Interests.

## 13.6    Plan Revocation, Withdrawal or Non-Consummation.

The Debtors reserve the right to revoke or withdraw this Plan at any time prior to the Confirmation Date and to file subsequent plans of reorganization. If the Debtors revoke or withdraw this Plan, the Effective Date does not occur, or if confirmation or consummation of this Plan does not occur, then (a) this Plan shall be null and void in all respects, (b) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), assumption or rejection of Executory Contracts or leases effected by this Plan, and any document or agreement executed pursuant to this Plan, shall be deemed null and void, and (c) nothing contained in this Plan and no acts taken in preparation for consummation of this Plan shall (i) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interest in, any Debtor or any other Person, (ii) prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving a Debtor, or (iii) constitute an admission of any sort by the Debtors or any other Person. None of the filing of this Plan, the taking by the Debtors or any other Person of any action with respect to this Plan or any statement or provision contained in this Plan or herein will be or be deemed to be an admission by any of the Debtors or any other Person against interest, or be deemed to be a waiver of any rights, claims or remedies that the Debtors or any other Person may have, and until the Effective Date all such rights and remedies are and will be specifically reserved. In the event this Plan is not confirmed and the Confirmation Order is not entered, this Plan and the Plan Documents, and any statement contained herein or therein, may not be used by any Person, party or entity against any the Debtors or any other Person.

## 13.7    Additional Exhibits.

Any and all exhibits to the Disclosure Statement or Plan or other lists or schedules not filed with the Disclosure Statement or Plan shall be filed with the Clerk of the Bankruptcy Court at least ten (10) Business Days prior to the Confirmation Hearing unless this Plan provides otherwise. Upon such filing, such documents may be inspected in the office of the Clerk of the Bankruptcy Court during normal court hours. Holders of Claims or Interests may obtain a copy of any such document upon written request to the Debtors. The Debtors explicitly reserve the right to modify or make additions to or subtractions from any schedule to this Plan or the Disclosure Statement and to modify any exhibit to this Plan or the Disclosure Statement prior to the Objection Deadline.

## 13.8    Governing Law.

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit or Plan Document provides otherwise, the rights, duties and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Alabama, without giving effect to the principles of conflict of laws thereof.

## 13.9    Time.

In computing any period of time prescribed or allowed by this Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply. With regard to all dates and periods of time set forth or referred to in this Plan, time is of the essence.

## 13.10   Section Headings.

The section headings and other captions contained in this Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of this Plan.

## 13.11   Effectuating Documents and Further Transactions.

Each of the officers of the Debtors and the Reorganized Debtors is authorized to execute, deliver, file or record such contracts, instruments, releases, indentures and other agreements or documents and take such actions as may be necessary, appropriate or desirable to effectuate and further evidence the terms and provisions of this Plan, the Plan Documents and any Plan Securities issued pursuant to this Plan.

## 13.12   Successors and Assigns.

The rights, benefits and obligations of any Person named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person.

## 13.13   Termination of Creditors' Committee.

On the Effective Date, the Creditors' Committee will dissolve and the members will be released and discharged from all rights and duties arising from or related to the Debtors' Chapter 11 Cases. The professionals retained by the Creditors' Committee and the members thereof shall not be entitled to compensation or reimbursement of expenses for any services rendered after the Effective Date, except for services rendered and expenses incurred, as permitted by the Bankruptcy Court, in connection with the preparation of any application for allowance of compensation and reimbursement of expenses pending on the Effective Date or filed and served after the Effective Date.

## 13.14   Notices.

All notices, requests and demands to or upon the Debtors or the Reorganized Debtors shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

Jackson Hospital Services, Inc.
Attn: Jay Mitchell, GC
2655 Northwinds Parkway
Alpharetta, Georgia 30009
Telephone: 770-643-5530

Email: jmitchell@jacksonhealthcare.com

56

with a copy to (which shall not constitute notice):

Kilpatrick Townsend & Stockton LLP
Attn: Paul Rosenblatt
1100 Peachtree Street NE
Suite 2800
Atlanta, GA 30309
E-mail: prosenblatt@ktslaw.com

and copies to counsel for the Debtors and the Reorganized Debtors:

Burr & Forman LLP
420 North 20th Street
Suite 3400
Attn:   Derek F. Meek
Telephone:     (205) 251-3000
Email:          dmeek@burr.com

-- and –

Memory Memory & Causby, LLP
Attn: Stuart H. Memory
469 S. McDonough Street (36104)
Post Office Box 4054
Montgomery, Alabama 36103-4054
Telephone: (334) 834-8000
Email:          smemory@memorylegal.com

Any delivery after 5:00 p.m., prevailing Central time, on a Business Day, or on a day that is not a Business Day, shall be deemed to have been made on the immediately following Business Day.

**13.15   Conflict Between Plan, Disclosure Statement and Plan Documents.**

**13.15.1     Plan Controls**.

Except as provided below, in the event of any conflict between the terms and provisions in this Plan and the terms and provisions in the Disclosure Statement, or this Plan and a Plan Document, the terms and provisions of this Plan shall control and govern.

**13.15.2     Exit Documents Control**.

In the event of any conflict between the terms and provisions of this Plan and the terms and

provisions in the documents executed to effectuate the terms and conditions of this Plan (the "Exit Documents"), the terms and provisions of the Exit Documents, as applicable, shall control and govern.

Birmingham, Alabama

March 5, 2026

Respectfully submitted,

COUNSEL:

BURR & FORMAN LLP                    As to legal matters contained within this Plan:
420 North 20th Street
Suite 3400
Birmingham, Alabama 35203            /s/ Derek F. Meek
Telephone: (205) 251-3000            Derek F. Meek
Facsimile: (205) 458-5100

MEMORY MEMORY & CAUSBY, LLP
469 S. McDonough Street (36104)
Post Office Box 4054
Montgomery, Alabama 36103-4054
Telephone: (334) 834-8000            /s/ Stuart H. Memory
                                     Stuart H. Memory


Counsel for the Debtors and Debtors-in-Possession

58

**Exhibit B**

Notice of Confirmation and Effective Date

67317610 v1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 25-30256 |
| JACKSON HOSPITAL & CLINIC, INC., *et al.*,[1] | Jointly Administered |
| Debtors. | |

### NOTICE OF CONFIRMATION AND EFFECTIVE DATE

Jackson Hospital & Clinic, Inc. ("JHC") and its affiliated debtor and debtor-in-possession, JHC Pharmacy, LLC, ("JP," and together with JHC, the "Debtors" and each, individually, a "Debtor"), by and through undersigned counsel, hereby file this Notice of Confirmation and Effective Date:

**PLEASE TAKE NOTICE** that, on April __, 2026, the United States Bankruptcy Court for the Middle District of Alabama (the "Court"), entered its *Findings of Fact, Conclusions of Law, and Order Confirming, Second Amended Joint Plan of Reorganization for Jackson Hospital & Clinic, Inc., and JHC Pharmacy, LLC* (Doc. No. ___) (the "Confirmation Order"), confirming the *Second Amended Joint Plan of Reorganization for Jackson Hospital & Clinic, Inc. and JHC Pharmacy, LLC* (Doc. No. 1547) (the "Plan").

**PLEASE TAKE FURTHER NOTICE** that the Effective Date of the Plan occurred on _____, 2026.[2] Each of the conditions precedent to the effectiveness of the Plan set forth in Section 10.2 of the Plan has been satisfied or waived.

---

[1] The Debtors in these cases are Jackson Hospital & Clinic, Inc. and JHC Pharmacy, LLC. *See* (Doc. No. 49).

[2] Capitalized terms not defined herein shall have the same meaning ascribed to them as in the Confirmation Order.

67317616 v1

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Confirmation Order, the injunction, exculpation, and release provisions in Article VI of the Plan are now in full force and effect.

**PLEASE TAKE FURTHER NOTICE** that requests for payment of Administrative Claims must be filed with the Court and served on all parties required to receive such notice <u>by no later than _____, 2026</u>.

**PLEASE TAKE FURTHER NOTICE** that requests for compensation or reimbursement of Fee Claims must be filed with the Court and served on all parties required to receive such notice <u>by no later than _____, 2026</u>.

**PLEASE TAKE FURTHER NOTICE** that the Reorganized Debtors shall file and serve on the applicable executory contract counterparties Final Notices identifying the Assumed Executory Contracts and Rejected Executory Contracts <u>by no later than _____, 2026</u>. Rejection Claims and Decision Period Administrative Claims created by the rejection of Executory Contracts must be filed within thirty (30) days after such Executory Contract becomes a Rejected Executory Contract.

**PLEASE TAKE FURTHER NOTICE** that the Reorganized Debtors shall file and serve on all known creditors of the Medical Clinic Board a Notice of MCB Proof of Claim Bar Date <u>by no later than _____, 2026</u>.

**PLEASE TAKE FURTHER NOTICE** that creditors of the Medical Clinic Board must file a proof of claim with the Court <u>by no later than _____, 2026</u>.

**PLEASE TAKE FURTHER NOTICE** that any election under section 1111(b) of the Bankruptcy Code by a creditor of the Medical Clinic Board must be made in writing and filed with

the Court, with a copy served on the Reorganized Debtors, the Exit Lender, the GUC Trust, and any other parties as the Court may direct, <u>by no later than _____, 2026</u>.

**PLEASE TAKE FURTHER NOTICE** that the Reorganized Debtors shall file and serve on the applicable executory contract counterparties the List of MCB Executory Contracts to be Assumed and the List of MCB Executory Contracts to be Rejected, which shall identify all executory contracts and unexpired leases that the Reorganized Debtors shall assume and reject, respectively, and the related cure amounts owing under executory contracts and unexpired leases proposed to be assumed. Any objection to a proposed assumption, or any related cure amount, must be filed, served, and actually received by the Reorganized Debtors on or prior to the thirtieth (30th) day following the service of the List of MCB Executory Contracts to be Assumed and the List of MCB Executory Contracts to be Rejected.

**PLEASE TAKE FURTHER NOTICE** that the Plan, the Plan Supplement, the Confirmation Order, and all pleadings and orders of the Court are publicly available at the Court's general website address: https://ecf.almb.uscourts.gov (a PACER account is required), or at Omni Agent Solutions, Inc.'s website: at https://omniagentsolutions.com/JacksonHospital.

**PLEASE TAKE FURTHER NOTICE** that the Plan and the Confirmation Order contain other provisions that may affect your rights. You are advised to read the Plan and the Confirmation Order in their entirety.

Dated: _____, 2026

**BURR & FORMAN LLP**

*/s/*_____
Derek F. Meek
Marc P. Solomon

67317616 v1

3

Catherine T. Via
Burr & Forman LLP
420 20th Street North, Suite 3400
Birmingham, Alabama 35203
(205) 251-3000
dmeek@burr.com
msolomon@burr.com
cvia@burr.com

*Counsel for Debtors and Debtors-in-Possession*